# EXHIBIT D

Tenant's Initials: _____

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | MDL No. 1917 |
| | Case No. C-07-5944 JST |
| This Order Relates To: | **ORDER GRANTING FINAL APPROVAL OF INDIRECT PURCHASER SETTLEMENTS** |
| ALL INDIRECT PURCHASER ACTIONS | |

In this large antitrust multidistrict litigation case ("MDL"), Lead Counsel for one of three sets of plaintiffs – the Indirect Purchaser Plaintiffs ("IPPs") – moves for final approval of the settlements reached between the IPPs and various defendants. The settlement agreements resolve claims against six different corporate families. Also before the Court is the allocation of eight different settlement funds. The Court previously referred the settlements and allocation issues to Special Master Martin Quinn. ECF No. 4077. He recommended approval in a Report and Recommendation issued on January 28, 2016. ECF No. 4351 ("R&R"). Various parties then filed objections to the R&R, which this order resolves. The Special Master also recommended that Lead Counsel make certain adjustments to the distribution of the settlement reached with defendant Chunghwa; Lead Counsel did so, and the Special Master recommended that the Court approve that plan as well. ECF No. 4445 ("Supplemental R&R"). Objections were filed to the Supplemental R&R, which are also before the Court.

The Court will overrule the objections to the six settlements, grant final approval of the six pending settlements, and approve the allocation with respect to all eight settlements. The Court will also adopt both the R&R and the Supplemental R&R, except as excluded here or as relates to those matters reserved for a future order. The Court reserves ruling on issues pertaining to

*United States District Court*
*Northern District of California*

attorneys' fees, expenses, and incentive awards, which will be the subject of a separate order.

## I.   BACKGROUND

The history of this case is well known to the parties, objectors, and interested states.  By way of summation, this case is predicated upon an alleged conspiracy to price-fix cathode ray tubes ("CRTs"), a core component of tube-style screens for common devices including televisions and computer monitors.[1]  This conspiracy ran from March 1, 1995 to November 25, 2007, involved many of the major companies that produced CRTs, and allegedly resulted in overcharges of millions, if not billions, of U.S. dollars to domestic companies that purchased and sold CRTs or finished products containing CRTs for purposes such as personal use.  A civil suit was originally filed in 2007, ECF No. 1, consolidated by the Joint Panel on Multidistrict Litigation shortly thereafter, see ECF No. 122, assigned as an MDL to Judge Samuel Conti, see id., and ultimately transferred to the undersigned, see ECF No. 4162.

Discovery leading up to the pending settlement agreements has been extensive, spanning millions of pages and hundreds of depositions taken over eight-plus years.  Motion practice has been extensive and hard-fought.  For example, the parties filed or responded in some way to 36 motions for summary judgment, ECF No. 4370 at 16, and 64 motions in limine, id. at 20.

Before this large, comprehensive settlement, there were two smaller ones.  The IPPs settled with Chunghwa for $10,000,000 in 2011,[2] and with LG for $25,000,000 in 2013.[3]  Both the Chunghwa settlement and LG settlement postponed approval of the allocation of the settlement funds pending additional settlements with the remaining defendants.

The Court originally set the case for trial in March 2015.  As the trial date approached or

---

[1] A more detailed set of facts and procedural history can be found in the Report and Recommendation at 1:8-3:27 and 5:4-17:2, and the Court incorporates those portions of the R&R as though fully set forth here.  See also ECF No. 4260 (summarizing the facts of the case as relates to the settlement of certain Direct Purchaser Plaintiffs ("DPPs")).

[2] "Chunghwa" includes Chunghwa Picture Tubes, Ltd.  See ECF Nos. 992 (preliminary approval, granted August 9, 2011), 1105 (final approval, granted March 22, 2011).

[3] "LG" includes LG Electronics, Inc.; LG Electronics USA, Inc.; and LG Electronics Taiwan Taipei Co., Ltd.  See ECF Nos. 2248 (preliminary approval, granted December 9, 2013), 2542 (final approval, granted April 18, 2014).

United States District Court
Northern District of California

United States District Court
Northern District of California

1  shortly after it was continued, the IPPs reached settlement agreements with six groups of

2  Defendants in the shadow of the pending motions.  The settlements included agreements with

3  Philips for $175,000,000,[4] Panasonic for $70,000,000,[5] Hitachi for $28,000,000,[6] Toshiba for

4  $30,000,000,[7] Samsung SDI for $225,000,000,[8] and Thomson and TDA (jointly) for

5  $13,750,000,[9] for a total of $541,750,000 .  Including the prior Chunghwa and LG settlements, the

6  total IPP settlement amount is $576,750,000.

7       Except for the funds from the Chunghwa settlement (which the Court addresses later), the

8  settlement agreements[10] propose to distribute the settlement  funds on a pro-rata basis based on the

9  number of claimants, with a proposed minimum recovery of $25 per person,[11] and a cap on

10  recovery of treble the damages a claimant has actually suffered.  See R&R at 56; ECF No. 4071 at

11  9.  There will be no *cy pres* distribution, no coupons, and no reversion to any defendant.  Money

12  will be paid to those claimants in states where the law permits recovery by indirect purchasers[12]

13

---

14  [4] "Philips" includes Koninklijke Philips N.V. (f/n/a Koninklijke Philips Electronics N.V.), Philips
    Electronics North America Corporation, Philips Taiwan Limited (fin/a Philips Electronics
15  Industries (Taiwan), Ltd.), and Philips do Brasil Ltda. (fin/a Philips da Amazonia Industria
    Electronica Ltda.).  The agreement was reached on January 26, 2015.  See R&R at 9.

16  [5] "Panasonic" includes Panasonic Corporation (flk/a Matsushita Electric Industrial Co., Ltd.),
    Panasonic Corporation of North America, and MT Picture Display Co., Ltd.  The agreement was
17  reached on January 28, 2015.  See R&R at 9.

18  [6] "Hitachi" includes Hitachi, Ltd., Hitachi Asia, Ltd., Hitachi America, Ltd., Hitachi Electronic
    Devices (USA), Inc., and Hitachi Displays, Ltd. (n/k/a Japan Display Inc.).  The agreement was
19  reached on February 15, 2015.  See R&R at 9.

20  [7] Toshiba includes Toshiba Corporation, Toshiba America, Inc., Toshiba America Information
    Systems, Inc., Toshiba America Consumer Products, L.L.C., and Toshiba America Electronic
21  Components, Inc.  The agreement was reached on March 6, 2015.  See R&R at 9.

22  [8] "Samsung" includes Samsung SDI Co. Ltd., Samsung SDI America, Inc., Samsung SDI Brasil,
    Ltd., Tianjin Samsung SDI Co. Ltd., Shenzhen Samsung SDI Co., Ltd., SDI Malaysia Sdn. Bhd.,
    and SDI Mexico S.A. de C.V.  The agreement was reached on April 1, 2015.  See R&R at 9.

23  [9] The settling Thomson and TDA entities include Technicolor SA (flk/a Thomson SA) and
    Technicolor USA, Inc. (flk/a Thomson Consumer Electronics, Inc.) and Technologies Displays
24  Americas LLC (f/k/a Thomson Displays Americas LLC).  The agreement was reached on June 10,
    2015.  See R&R at 9.  While certain filings regard this as two separate settlements, for purposes of
25  counting, the Court regards IPPs' agreement with Thomson and TDA as a single settlement.

26  [10] Except as noted, the operative language of the settlement agreements is materially identical.

27  [11] Lead Counsel will request approval of a minimum payment when all data from the claims
    process is available.  See ECF No. 3862 ¶ 48.

28  [12] In Illinois Brick Co. v. Illinois, 431 U.S. 720 (1977), the Supreme Court held that only direct
    purchasers could recover damages for price-fixing under Section 4 of the Clayton Act.  Id. at 735.

00039

1    (so-called "repealer states"). The nationwide class – including both those in repealer states, as

2    well as those in states whose laws do not provide for recovery to indirect purchasers ("non-

3    repealer states") – would agree to release all present and future claims for injunctive relief. The

4    Court previously granted preliminary approval of these settlements. ECF No. 3906.

5         On September 24, 2015, the Court appointed Special Master Martin Quinn to evaluate

6    whether the IPP Settlements were fair and reasonable, and to "assist[] the Court with the approval

7    of the pending settlements in the Indirect-Purchaser Cases, the determination of a fair, reasonable,

8    and adequate aggregate award of attorneys' fees and the reimbursement of expenses to all

9    plaintiffs' counsel, a fair and reasonable division of the aggregate award among plaintiffs'

10   counsel, and service awards to the named plaintiffs, including any objections to these matters[.]"

11   ECF No. 4077 at 3. Lead Counsel for the IPPs filed a motion for final approval of these

12   settlements before the Special Master on November 19, 2015. ECF No. 4370.

13        Special Master Quinn reviewed the proposed settlement, the moving papers filed in

14   support, the objections filed in opposition, the applications for an award of attorneys' fees, certain

15   records lodged in support of those fee applications, and other materials filed in support and

16   opposition. See, e.g., ECF Nos. 4363-68, 4370-73. He recommended that the settlement be

17   approved. R&R at 77.

18        In his R&R, Special Master Quinn noted certain problems with the plan of distribution for

19   the Chunghwa settlement, rejected the motion for approval of allocation of funds from that

20   settlement as originally framed, and recommended that Lead Counsel modify the plan of

21   distribution to address the Special Master's concerns. Lead Counsel made the requested changes,

22   and the Special Master approved the modified plan. Supplemental R&R at 7-8.

23   _____

24   As the Ninth Circuit has summarized, the Supreme Court "barred indirect purchasers' suits, and
     left the field of private antitrust enforcement to the direct purchasers." Royal Printing Co. v.

25   Kimberly Clark Corp., 621 F.2d 323, 325 (9th Cir. 1980). In response to the Illinois Brick
     decision, many states passed so-called "Illinois Brick repealer statutes," which give indirect

26   purchasers the right to sue when firms violate analogous state antitrust laws. See, e.g., Robert H.
     Lande, New Options for State Indirect Purchaser Legislation: Protecting the Real Victims of

27   Antitrust Violations, 61 Ala. L. Rev. 447, 448 (2010). Such states are referred to a "repealer
     states." A state which has not enacted such a statute is referred to as a "non-repealer state."

28

00040

Several parties filed objections to Special Master Quinn's original R&R,[13] and certain states filed Statements of Interest,[14] all of which the Court now considers. Various parties also objected to the Supplemental R&R,[15] and the Court considers those objections here as well. The Court held two fairness hearings, on March 15, 2016 and April 19, 2016.[16] No member of the public appeared at either hearing.

Because the Special Master has already opined regarding the fairness and adequacy of the settlements, this Court addresses only the objections to the R&R and the Supplemental R&R, and does not reach the panoply of other considerations that attend the approval of a class settlement *ab initio*.

## II.    JURISDICTION

The Court has jurisdiction pursuant to 28 U.S.C. § 1332(d)(2).

## III.   FINAL APPROVAL OF CLASS ACTION SETTLEMENT

### A.    Legal Standard

"The claims, issues, or defenses of a certified class may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e). Rule 23(e) "requires the district court to determine whether a proposed settlement is fundamentally fair, adequate, and reasonable." Hanlon v. Chrysler Corp.,

---

[13] Certain objections were withdrawn or stricken prior to publication of this order. Excluding those, the Court considered the materials at ECF Nos. 4400 ("IPP Obj."), 4401 ("Clifton Obj."), 4384 ("Saik Obj."), 4101 ("Hull Obj."); 4436 ("RU Obj."); 4437 ("C-S Obj."); 4439 ("St. John Obj."); 4440 ("Bonsignore Obj."); and 4466 ("Williams Obj."). The Hull objection is actually an objection litigated before Special Master Quinn but incorporated by reference and objections re-made in response to the publication of the R&R. See 4394 at 1. Three responses were filed. See ECF Nos. 4431 ("C-S Resp."), 4449 ("IPP Resp."), and 4479 ("IPP Williams Resp."). Two additional briefs were timely filed and will be considered, see ECF Nos. 4545-4, 4558, but relate only to attorneys' fees, expenses, or incentive awards and thus have no bearing on the subject matter of this order.

[14] The Attorneys General of Connecticut, Alabama, Arkansas, Colorado, Delaware, Georgia, Kentucky, Louisiana, Maryland, Ohio, Oklahoma, Pennsylvania, and Virginia jointly filed one Statement of Interest. See ECF No. 4462 ("Non-Repealer State SOI"). The Attorneys General of Massachusetts and Missouri jointly filed a second. See ECF No. 4463 ("MA & MO SOI"). New Hampshire, the third omitted repealer state, neither joined any Statement of Interest nor filed one of its own.

[15] ECF Nos. 4453 ("Plan Obj."), 4459 ("Plan Resp."), 4486 ("Alioto Plan Letter"), 4487 ("C-S Plan Letter").

[16] Pursuant to discussions held at the second fairness hearing, the Court ordered the IPPs to file support for Chunghwa's notice costs. See ECF No. 4584. The IPPs did so. See ECF No. 4592.

00041

150 F.3d 1011, 1026 (9th Cir. 1998). To assess a settlement proposal, the district court must balance a number of factors:

> (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

Churchill Vill., L.L.C. v. Gen. Elec., 361 F.3d 566, 575 (9th Cir. 2004) (citing Hanlon, 150 F.3d at 1026). While the Court considers each factor individually, "[i]t is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness . . . The settlement must stand or fall in its entirety." Hanlon, 150 F.3d at 1026 (citing Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco, 688 F.2d 615, 628 (9th Cir. 1982)).

When reviewing the R&R and the Supplemental R&R, the Court reviews the Special Master's findings of fact and conclusions of law *de novo*, and his rulings on procedural matters for abuse of discretion. Fed. R. Civ. P. 53(f); see also ECF No. 4077 at 7, amended by ECF No. 4298 at 3.

"There is a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." In re Syncor ERISA Litig., 516 F.3d 1095, 1101 (9th Cir. 2008) (citing Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992)). However, "settlement class actions present unique due process concerns for absent class members, and the district court has a fiduciary duty to look after the interests of those absent class members." Allen v. Bedolla, 787 F.3d 1218, 1223 (9th Cir. 2015) (internal quotations and citations omitted).

The Ninth Circuit "usually impose[s] the burden on the party objecting to a class action settlement." See United States v. Oregon, 913 F.2d 576, 581 (9th Cir. 1990).

### B. Analysis

In determining whether to approve a class action settlement, the Court's "threshold task is to ascertain whether the proposed settlement class satisfies the requirements of Rule 23(a) of the Federal Rules of Civil Procedure applicable to all class actions, namely: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation." Hanlon, 150 F.3d at 1019. The

6

00042

Court must also ensure that at least one of the three requirements of the Federal Rule of Civil Procedure 23(b) is met. Here, the Special Master found that the settlement meets each of the Rule 23(a) factors, and that the settlement class satisfies Rule 23(b)'s predominance requirement. <u>See</u> R&R at 17-21. No party objects to any of these findings except those related to adequacy of representation. The Court will discuss adequacy of representation at length in a later section related to allocation, and will there overrule the objections. The Court accordingly adopts the Special Master's Rule 23 analysis and incorporates it by reference as though fully set forth here (except as it relates to adequacy of representation). Accordingly, the Court finds that the settlement class meets the requirements for certification.

### C. Adequacy of Notice

At the preliminary approval stage, the Court approved the parties' proposed plan for providing notice to the class. ECF No. 3906 ¶¶ 11-13, 15. Objectors now raise several issues with regard to the notice program, including notice to foreign residents. Hull Obj. at 3; Bonsignore Obj. at 8-11. "Adequate notice is critical to court approval of a class settlement under Rule 23(e)." <u>Hanlon</u>, 150 F.3d at 1025.

Special Master Quinn described the notice to foreign residents who may have purchased a CRT in the United States, and his conclusions as to the adequacy of that notice, as follows:

> Foreign residents who were in position to purchase CRT products in the United States during the Class Period fall squarely within the notice efforts. The Summary Notice was published as a press release in foreign-based media outlets in 15 countries, including Canada and Mexico. *See* Fisher Decl., ¶ 3. Nonresidents living in border regions – particularly those capable of entering the United States for purposes of purchasing a television or computer – are likely to use the internet just like everyone else; thus, they were subject to digital outreach. The impact of these efforts is demonstrated by the fact that claims have already been submitted in this Proposed Settlements by non-U.S. persons with addresses in numerous foreign countries including Canada, Costa Rica, Germany, Great Britain, Israel, Iceland and Spain. Id., ¶ 3(c).

R&R at 45-56. Bonsignore objects that "there is insufficient evidence that the Notice reached foreign residents," Bonsignore Obj. at 10, but does nothing to meet his burden of showing that notice was inadequate. Without knowing, for example, the percentage of foreign purchasers of CRTs compared to the percentage of claimants, it simply is not possible to give Bonsignore's

7

Case 4:07-cv-05944-JST Document 5832-4 Filed 09/28/20 Page 9 of 38

1    objection any weight.

2         Special Master Quinn described the extent of the notice program and resolved objections

3    regarding (1) the age and income profile of recipients, (2) notice to foreign residents, (3) notice to

4    non-English speakers, (4) the supposed need for televised notice, and (5) the terms of notice

5    provided to the nationwide class. R&R 46-51. The Court adopts that discussion and reasserts it as

6    though set forth fully here. Objectors now raise two areas of concern: whom the notice program

7    targeted and how to properly calculate the reach of the notice program.

8         As to whom was targeted, the Special Master's findings show that the notice program did

9    target those in relevant demographics by age, income level, or location of residence. Objector

10   Hull argues that foreign residents received inadequate notice. See Hull Obj. at 3. But Objector

11   Hull does not explain why the Special Master's findings are wrong. See Hull Obj. at 3.[17]

12   Objector Bonsignore suggests that the Special Master's findings inaccurately assume that the

13   existence of claims filed by foreign residents constitutes dispositive evidence that notice reached a

14   sizable segment of that population. See Bonsignore Obj. at 9-10. Yet Bonsignore offers no

15   evidence or legal basis to conclude that the broadly published notice, which resulted in claims by

16   foreign residents, is insufficient. The burden rests with Bonsignore, as an objector, to demonstrate

17   that notice was inadequate. See Oregon, 913 F.2d at 581. This objection, and the remaining

18   objections related to whether the notice adequately targeted various demographics, are overruled.

19        Objectors also ask the Court to reject the Special Master's conclusion that the notice

20   program's reach was sufficiently broad. With regard to the digital media campaign, they ask the

21   Court to appoint an expert to (1) separately evaluate the reach of that campaign and (2) assist in

22   the creation of a more robust notice plan. See C-S Obj. at 9-10; Bonsignore Obj. at 9-11. The

23   Court concludes these steps are unnecessary. The evidence before the Special Master, and now

24   before this Court, included a report by claims administrator Joseph Fisher showing that the print

25

26   _____

27   [17] Objector Hull objects to the R&R, but merely re-urges and incorporates by reference all his
     original objections as made before the Special Master. The Court permits this tactic. See ECF
     No. 4430 at 2. However, as the underlying objections were addressed by Special Master Quinn,
28   merely re-urging the same objections provides no basis to disturb the Special Master's findings.

8

00044

United States District Court
Northern District of California

media campaign reached 57% of the targeted demographic and the digital media campaign reached 61%. See R&R at 49. When these rates are combined and filtered for overlap, they provide for an overall reach of 83%. Id. The Court credits these conclusions, which are supported by the strong response rate to the notices.

As previously noted, the Ninth Circuit "usually impose[s] the burden on the party objecting to a class action settlement." Oregon, 913 F.2d at 581. The Court will not indulge an effort to attempt to create the evidence that objectors themselves did not provide.

Accordingly, the Court overrules these objections and concludes that the parties have provided the best practicable notice to class members.

### D. Fairness, Adequacy, and Reasonableness

#### 1. Strength of Plaintiffs' case

Approval of a class settlement is appropriate when plaintiffs must overcome significant barriers to make their case. Chun-Hoon v. McKee Foods Corp., 716 F. Supp. 2d 848, 851 (N.D. Cal. 2010). Special Master Quinn recounts several hurdles IPPs would face absent a settlement, and concludes that this factor "weighs strongly in favor of approving the Proposed Settlements." R&R at 22. Hearing no objection to this conclusion and good cause appearing, the Court adopts the Special Master's analysis.

#### 2. Risk of continued litigation

Difficulties and risks in litigating weigh in favor of approving a class settlement. See Rodriguez v. W. Publ'g Corp., 563 F.3d 948, 966 (9th Cir. 2009). Special Master Quinn finds this factor weighs in favor of settlement, as there was "great risk" to IPPs in continuing to pursue litigation, including both uncertainty over the results of pending motions and challenges (and delay) in collecting any winnings. See R&R at 22-24. The Court further notes that its analysis of this factor with respect to the DPPs' case applies here with equal force. See ECF No. 4260 at 6-7. Hearing no objection and good cause appearing, the Court adopts the Special Master's analysis.

#### 3. Settlement amount

"In assessing the consideration obtained by the class members in a class action settlement, 'it is the complete package taken as a whole, rather than the individual component parts, that must

9

00045

1    be examined for overall fairness.'" Nat'l Rural Telecomms. Cooperative v. DIRECTV, Inc., 221

2    F.R.D. 523, 527 (C.D. Cal. 2004) (quoting Officers for Justice, 688 F.2d at 628.) "In this regard,

3    it is well-settled law that a proposed settlement may be acceptable even though it amounts to only

4    a fraction of the potential recovery that might be available to the class members at trial. Id. (citing

5    Linney v. Cellular Alaska Partnership, 151 F.3d 1234, 1242 (9th Cir. 1998)).

6          In assessing such a large settlement, it is tempting to evaluate its merits based on its  size

7    alone – and without a doubt, $576,750,000 is a significant amount of money.  The IPPs and

8    Special Master Quinn make much of the fact that this is the "second largest cash recovery ever

9    obtained on behalf of indirect purchasers." R&R at 24, 56; accord ECF No. 4370 at 1 (touting the

10   settlement as "one of the largest recoveries ever on behalf of indirect purchaser plaintiffs").  As

11   the Court has observed in reviewing other settlements, however, the relevant question is not how

12   large the total dollar amount of the settlement is, but how great a percentage of the potential

13   recovery it represents.[18]

14         The reason the settlement here is so large is not because – or at least not only because – the

15   settlement represents an "exceptional result for the class," as IPPs would have it, ECF No. 4071 at

16   11, but rather because the injury suffered by the class was even larger.  The alleged injury in the

17   case was $2.78 billion, see R&R at 56; the settlement represents 20% of that amount, without

18   accounting for the possibility of treble damages under the antitrust laws.  In the LCD case, by

19   contrast, the settlement returned 50% of the potential recovery.  In re TFT-LCD (Flat Panel)

20   Antitrust Litig., No. M 07-1827 SI, 2013 WL 1365900, at *7 (N.D. Cal. Apr. 3, 2013).

21         Nonetheless, while the settlement might not be as exceptional or extraordinary as its

22   proponents claim, the proposed aggregate settlement here is without question a good recovery and

23   firmly in line with the recoveries in other cases.[19]

24

25   [18] E.g., Betancourt v. Advantage Human Resourcing, Inc., No. 14-CV-01788-JST, 2016 WL
     344532, at *5 (N.D. Cal. Jan. 28, 2016); Smith v. Am. Greetings Corp., No. 14-CV-02577-JST,
26   2015 WL 4498571, at *8 (N.D. Cal. July 23, 2015); Dyer v. Wells Fargo Bank, N.A., 303 F.R.D.
     326, 331 (N.D. Cal. 2014).

27   [19] While the median average settlement among a survey of 71 settled cartel cases was 37% of
     single damages recovery, the weighted mean (weighting settlement according to their sales) was
28   19% of single damages recovery.  See John M. Connor & Robert H. Lande, Not Treble Damages:

United States District Court
Northern District of California

1    Objectors Cooper and Scarpulla note that the IPPs do not include the "likely recovery per

2  plaintiff under the terms of the settlement and the potential recovery if plaintiffs were to prevail on

3  each of their claims," as required by this judicial district's Procedural Guidance for Class Action

4  Settlements. C-S Obj. at 14. Special Master Quinn did not address this requirement. The IPPs

5  contend that the procedural guidance "is just that -- guidance for evaluating whether a settlement

6  is fair, reasonable, and adequate." See IPP Resp. at 28.

7    The Court agrees with IPP Counsel. The Northern District of California's Procedural

8  Guidance provides a useful checklist for attorneys and the Court, and this Court has previously

9  relied upon it in evaluating proposed settlements. Smith v. Am. Greetings Corp., No. 14-CV-

10  02577-JST, 2015 WL 4498571, at *10 (N.D. Cal. July 23, 2015). However, it is intended, as both

11  its title and the Court's introductory language[20] make clear, simply as guidance. In the end, what

12  is required is sufficient information for the Court to confidently determine that a settlement "taken

13  as a whole is fair, reasonable, and adequate." In re Bluetooth Headset Products Liab. Litig., 654

14  F.3d 935, 946 (9th Cir. 2011) (citing Fed. R. Civ. P. 23(e)(2)).

15    While additional information on average recoveries might be helpful, the nature of a pro

16  rata distribution makes such estimates difficult where the claims deadline is not yet passed for all

17  potential claimants. See ECF No. 4339 at 5. The information the IPPs have provided regarding

18  potential recovery, even though stated in the aggregate, is sufficient to permit the Court to review

19  the proposed settlement for fairness, reasonableness, and adequacy, when combined with the plan

20  of allocation that describes the minimum and maximum that can be recovered by each class

21  member. Accordingly, the Court overrules the objection.[21]

22    The Court agrees with the Special Master that this factor favors approval of the settlement.

23

24

25  _____

Cartel Recoveries Are Mostly Less Than Single Damages, 100 IOWA L. REV. 1997, 1998 (2015).

26  [20] The Northern District's Procedural Guidance for Class Action Settlements can be found at

27  http://www.cand.uscourts.gov/ClassActionSettlementGuidance.

28  [21] Objections related to the lack of a cy pres recipient are addressed (and overruled) later in this
order.

United States District Court
Northern District of California

00047

#### 4. Extent of discovery

"In the context of class action settlements, formal discovery is not a necessary ticket to the bargaining table where the parties have sufficient information to make an informed decision about settlement." In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 459 (9th Cir. 2000) (citation omitted). However, the extent of discovery completed supports approval of a proposed settlement, especially when litigation has "proceeded to a point at which both plaintiffs and defendants ha[ve] a clear view of the strengths and weaknesses of their cases." McKee Foods, 716 F. Supp. 2d 851-52 (internal quotation marks omitted). In this case, the Special Master summarized the parties' discovery efforts as follows:

> [S]ignificant discovery was already completed by the time the parties reached their settlement agreements. [The] IPPs and their experts had already searched, reviewed and analyzed millions of pages of documents and voluminous data sets produced by defendants, the DAPs and third parties, and various parties to the litigation had already taken over 250 depositions. In addition, the parties had already exchanged expert reports on liability and damages, including opening, opposition, rebuttal and sur-rebuttal reports from 17 expert witnesses, all of whom were deposed, often multiple times, regarding the reports that they had prepared.

R&R at 25. He further noted, "the parties had also exchanged trial exhibit lists, witness lists, deposition designations, jury instructions and special verdict forms. They had also filed motions in limine and other pretrial motions." Id. No party quarrels with the Special Master's finding that the parties were thoroughly prepared for trial and that this factor weighs in favor of settlement, and the Court adopts that finding.

#### 5. Counsel's experience

"The recommendations of plaintiffs' counsel should be given a presumption of reasonableness." See In re Omnivision, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2007) (citation omitted). As the Special Master notes, counsel for the IPPs has had a long and very successful career as an antitrust lawyer. See R&R at 25-26. No party having objected, the Court adopts the Special Master's finding that this factor favors settlement.[22]

---

[22] The Court considers this factor, as it must, but gives it little weight. "Although a court might give weight to the fact that counsel for the class or the defendant favors the settlement, the court

00048

United States District Court
Northern District of California

United States District Court
Northern District of California

### 6. Government Participation

The Class Action Fairness Act ("CAFA") requires notice of a settlement be given to affected states with time to comment prior to final approval of the settlement. See 28 U.S.C. § 1715(b). This allows the appropriate state or federal official the chance to "voice concerns if they believe that the class action is not in the best interest of their citizens." Non-Repealer State SOI at 3 (quoting S. REP. 109-14, 5, 2005 U.S.C.C.A.N. 3, 6). The notification procedure serves as a "check against inequitable settlements" and "deter[s] collusion between class counsel and defendants to craft settlements that do not benefit the injured parties." See id. (quoting S. REP. 109-14, 14-20, 28, 32-33, 35; 2005 U.S.C.C.A.N. 3, 17-21, 28, 31-32, 34).

Three Statements of Interest have been filed in total. The first, by the State of California, was filed in time for the Special Master's review. In response to that Statement of Interest, the Special Master recommended extending the claims deadline for California natural persons, ECF No. 4281, which the Court subsequently adopted as its order, ECF No. 4339. Otherwise, the Special Master overruled the State of California's objections. R&R at 26-28. No one objects to the Special Master's analysis – not even the State of California – and the Court need not address that Statement of Interest further. The Court adopts the R&R at 26:10-19, 26:24-28:5.

The second and third Statements of Interest are from thirteen non-repealer states and two omitted repealer states, respectively. Both Statements raise questions concerning the adequacy of representation based on a lack of consideration provided in exchange for the release of certain injunctive relief claims.[23] For reasons set forth later in this order, the Court will overrule the objections contained in these two Statements of Interest. Nevertheless, putting the specific

---

should keep in mind that the lawyers who negotiated the settlement will rarely offer anything less than a strong, favorable endorsement." Principles of the Law of Aggregate Litigation § 3.05 comment a (2010).

[23] Special Master Quinn did not address these Statements because they were filed after he had completed his review of the settlements. He concluded: "Other than the California Attorney General, who filed a Statement of Interest asserting various conditional objections, no other governmental official has raised any concern regarding the settlements. This fact favors approval of the Proposed Settlements." ECF No. 4351 at 34. The facts before this Court have now changed, and so the Court gives this finding by the Special Master no weight.

00049

objections to one side, the mere fact that the Attorneys General of 16 states[24] oppose the settlement in its current form weighs against its approval.  Cf. In re Linkedin User Privacy Litig., 309 F.R.D. 573, 589 (N.D. Cal. Sept. 15, 2015) (finding that this factor favored settlement where no government official appeared).

### 7. Reaction of the Class

Class members' positive reaction to a settlement weighs in favor of settlement approval; "the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement [] are favorable to the class members." In re Omnivision, 559 F. Supp. 2d at 1043.  "A low number of opt-outs and objections in comparison to class size is typically a factor that supports settlement approval."  In re Linkedin, 309 F.R.D. at 589 (citing Hanlon, 150 F.3d at 1027).

The Special Master summarized the reaction of the class as follows:

> IPP's Notice Program reached millions of consumers who purchased CRT televisions and computers.  Only 11 objections (with a total of 22 individual objectors) and five requests for exclusion were received.  Two objections have since been withdrawn, and two of the requests for exclusion were by DAPs that are already pursuing their own cases.  Moreover, two of the objections – those from Paul Palmer (which was withdrawn) and Douglas St. John – are directed at fees only; they do not challenge the sufficiency of the settlement.

R&R at 28.  This Court has received nine timely objections to the R&R, two Statements of Interest, and one letter from a class member.  See generally ECF No. 4484 (objecting to the amount of incentive awards).  Given that the class consists of millions of indirect purchasers – and even giving the Statements of Interest greater weight relative to other objections – this level of objection can fairly be described as enthusiastic approval.  See, e.g., Churchill Village LLC v. Gen. Elec., 361 F.3d 566, 577 (9th Cir. 2004) (affirming settlement with 45 objections out of 90,000 notices sent); In re Linkedin, 309 F.R.D. at 589 (finding "an overall positive reaction" by the class where only 57 class members opted out and six objected out of a class of 798,000);

---

[24] The Court includes California in this total because it filed a Statement of Interest before Special Master Quinn, although it has not filed any objection to the Special Master's R&R.  California appears to have acquiesced in the Special Master's resolution of the objection it filed before him.

14

United States District Court
Northern District of California

United States District Court
Northern District of California

Schuchardt v. Law Office of Rory W. Clark, No. 15-CV-01329-JSC, ___ F.R.D.___, 2016 WL 1701349, at *11 (N.D. Cal. Apr. 28, 2016) (finding that "the reaction of the Class strongly supports final approval" where 3% of the class opted out and no class member objected). The Court finds that this factor weighs in favor of approval.

### 8. Additional Concerns

Where a class has not already been certified prior to final approval of a settlement, the Court is required to look for "subtle signs that class counsel have allowed pursuit of their own self-interests . . . to infect the negotiations." Bluetooth, 654 F.3d at 947. These signs include:

> (1) when counsel receive a disproportionate distribution of the settlement; (2) when the parties negotiate a 'clear sailing' arrangement (i.e., an arrangement where defendant will not object to a certain fee request by class counsel); and (3) when the parties create a reverter that returns unclaimed fees to the defendant.

Allen, 787 F.3d at 1224 (quoting Bluetooth, 654 F.3d at 947).

The settlement agreements in this case do not attempt to allocate the portion of the settlement fund that counsel will receive, and there is no reversion clause, so the first and third Bluetooth signs are not at issue. The agreements do, however, contain a "clear sailing" provision: they provide that defendants "shall not oppose an application for . . . an award of attorneys' fees not in excess of one-third of the Settlement Fund" plus reimbursement of expenses. See, e.g., ECF No. 3862-1 at 11-12 (Phillips Settlement).[25] Objector Saik objects to the settlement on this ground. See Saik Obj. at 3. Special Master Quinn does not appear to address this issue.

The Court has reviewed the clear sailing provision and finds no cause for concern. The dominant risk with clear sailing provisions is that defendants might persuade class counsel to accept a lower payment to the class in exchange for a promise not to object to a (presumably higher) fee. See Staton v. Boeing Co., 327 F.3d 938, 954 (9th Cir. 2003). Therefore, "when confronted with a clear sailing provision, the district court has a heightened duty to peer into the provision and scrutinize closely the relationship between attorneys' fees and benefit to the class,

---

[25] Although the quoted language is from the Phillips Settlement, the other agreements are materially identical.

15

being careful to avoid awarding 'unreasonably high' fees simply because they are uncontested.

<u>Bluetooth</u>, 654 F.3d at 948 (citing <u>Staton</u>, 327 F.3d at 954). "Although clear sailing provisions are

not prohibited, they 'by [their] nature deprive . . . the court of the advantages of the adversary

process' in resolving fee determinations and are therefore disfavored." <u>Id.</u> at 949 (quoting

<u>Weinberger v. Great Northern Nekoosa Corp.</u>, 925 F.3d 518, 525 (1st Cir. 1991)). Even if a

district court finds a clear sailing provision exists but is severable, "a severable clause simply may

not be severed from the court's Rule 23(e) analysis." <u>Id.</u> at 948.

However, a "clear sailing provision does not signal the possibility of collusion where, as

here, Class Counsel's fee will be awarded by the Court from the same common fund as the

recovery to the class." <u>In re High-Tech Employee Antitrust Litigation</u>, 11-cv-02509-LHK, 2015

WL 5158730, at *14 (N.D. Cal. Sep. 2, 2015) (internal quotations omitted) (citing <u>Rodriguez</u>, 563

F.3d at 961 n.5); <u>see also</u> <u>Bayat v. Bank of the West</u>, No. C-13-2376 EMC, 2015 WL 1744342, at

*7 (N.D. Cal. Apr. 15, 2015) ("because any attorneys' fees award will come out of the common

fund, there is no 'clear sailing' agreement here that would warrant against settlement approval").

Accordingly, this objection is overruled.

### 9. Balancing the Factors

After reviewing <u>Churchill</u> and <u>Allen</u> factors, the Court finds that one factor favors rejection

of the settlement and the remainder support or strongly support approval.

## IV. THE PLAN OF ALLOCATION

"Approval of a plan of allocation of settlement proceeds in a class action . . . is governed

by the same standards of review applicable to approval of the settlement as a whole: the plan must

be fair, reasonable and adequate." <u>In re Omnivision</u>, 559 F. Supp. 2d at 1045 (internal quotation

marks and citation omitted); <u>see also</u> <u>In re Citric Acid Antitrust Litig.</u>, 145 F. Supp. 2d 1152, 1154

(N.D. Cal. 2001); <u>Vinh Nguyen v. Radient Pharms. Corp.</u>, No. 11-cv-00406, 2014 WL 1802293,

at *5 (C.D. Cal. May 6, 2014) ("[A]n allocation formula need only have a reasonable, rational

basis, particularly if recommended by experienced and competent counsel."). "It is reasonable to

allocate the settlement funds to class members based on the extent of their injuries or the strength

of their claims on the merits." <u>In re Omnivision</u>, 559 F. Supp. 2d at 1045. A settlement "can be

00052

United States District Court
Northern District of California

1  reasonable if it fairly treats class members by awarding a pro rata share to every Authorized

2  Claimant, but also sensibly makes interclass distinctions based upon, *inter alia*, the relative

3  strengths and weaknesses of class members' individual claims . . . ." In re Zynga Inc. Sec. Litig.,

4  No. 12-CV-04007-JSC, 2015 WL 6471171, at *12 (N.D. Cal. Oct. 27, 2015) (quoting Nguyen,

5  2014 WL 1802293 at *5).

6        The settlement in this case provides monetary compensation to class members in all

7  repealer states except Massachusetts, Missouri, and New Hampshire (the "omitted repealer

8  states"). It does not provide monetary compensation to class members in non-repealer states.

9  Members of the nationwide class in those states are nonetheless required to release their claims for

10  injunctive relief, equitable monetary relief, and damages without receiving any monetary

11  consideration. R&R at 31.

12        The plan of allocation here applies to all eight IPP settlements, which impacts every state

13  in the nation. Given the differences discussed above, the plan has a divergent impact on differing

14  sub-groups within the assorted settlements. To properly assess whether the plan is fair, adequate,

15  and reasonable, the Court thus considers each of four groups in turn: (A) class members in non-

16  repealer states; (B) class members in omitted repealer states; (C) class members in repealer states;

17  and (D) class members collecting pursuant to the Chunghwa settlement.

18      **A. Treatment of Class Members in Non-Repealer States**

19          **1.    Allocation in Light of the Proper Valuation of Injunctive Claims**

20        Several of the objectors and Attorneys General in several states object to the settlement on

21  the ground that it requires the release of the injunctive relief claims of class members in non-

22  repealer states and three omitted repealer states without providing monetary consideration. See

23  Non-Repealer State SOI at 1-4; MA & MO SOI at 1, 6-8; Hull Obj. at 4-5; RU Obj. at 15; C-S

24  Obj. at 1-2.

25        The objection takes two separate forms. Some objectors complain that the released

26  injunctive relief claims have value, and that it is unfair to release valuable claims without

27  receiving something in return. Other objectors, implicitly acknowledging that the released claims

28  are worthless, contend that the release of any claim should be compensated, even if the claim is

17

Case 3:07-cv-05944-JST Document 4712 Filed 07/07/16 Page 18 of 37

worth nothing. The Court considers these arguments in turn.

As a preliminary matter, objectors correctly state the general rule that "settling class members generally cannot validly release other class members' claims that they themselves do not possess, for no consideration." Davis v. J.P. Morgan Chase & Co., 827 F. Supp. 2d 172, 181 (W.D.N.Y. 2011) (citing Nat'l Super Spuds, Inc. v. New York Mercantile Exch., 660 F.2d 9, 19 (2d Cir. 1981)). However, "[i]t is fine to release a claim without compensation if the value of the claim is zero." WILLIAM B. RUBENSTEIN, NEWBERG ON CLASS ACTIONS § 13:60 (5th ed.). "A claim which cannot be proven is worth essentially nothing. Consideration of nothing for releasing a worthless claim is therefore fair, reasonable, and adequate." Parker v. Time Warner Entm't Co., L.P., 239 F.R.D. 318, 339 (E.D.N.Y. 2007); see also Nguyen v. Radient Pharmaceuticals Corp., 2014 WL 1802293, at *7 (C.D. Cal. May 6, 2014) (approving plan of allocation in a securities class action over objection that certain claims were released without compensation).

With regard to the first category of objectors, the question is therefore whether the released claims have any value. Even a minimal value would give some heft to objectors' complaints that the claims were released without consideration. See, e.g., Ferrington v. McAfee, Inc., No. 10-CV-01455-LHK, 2012 WL 1156399, at *9-10 (N.D. Cal. Apr. 6, 2012) (Koh, J.) ("While the Court agrees that the claims of the downloader subclass are relatively weak, that does not necessarily mean that the downloaders suffered *no* compensable harm. . . . [T]he claims of the downloader subclass are not so meritless that releasing the claims for no consideration is fair and reasonable.").

The Court concludes that the IPPs' claims for injunctive relief do not have value because, as the IPPs noted and the Special Master found, "the CRT market is dying and almost all manufacturers, including all of the alleged conspirators, have left the market, making it very unlikely that the alleged conduct could recur in the future." R&R at 34 (quoting ECF No. 4370 ("IPP Motion for Final Approval") at 32). "The sole function of an action for injunction is to forestall future violations" and therefore where "[t]he record discloses no threat or probability of resumption of the abandoned [practice]" injunctive relief is not available. United States v. Oregon State Med. Soc., 343 U.S. 326, 333-34 (1952) ("We agree with the trial court that conduct

18

00054

discontinued in 1941 does not warrant the issuance of an injunction in 1949.").  Here, the price-fixing conspiracy sought to be enjoined ended at least eight years ago.  In the meantime, the CRT business has largely died and the people who effectuated the CRT conspiracy moved on when CRT technology became obsolete.  See J.R. Raphael, Obsolete Technology: 40 Big Losers, PC WORLD (Jan. 13, 2016, 9:12 AM), http://www.pcworld.com/article/169863/obsolete_tech.html?page=2.  On these facts, the Special Master correctly concluded "[t]he unlikelihood of future violations makes an injunction basically worthless, and probably impossible to obtain."  See R&R at 34.

Objectors Cooper and Scarpulla suggest that the injunctive relief claims might have value if the Court ordered disgorgement upon the award of an injunction.  See C-S Obj. at 2-6.  These objectors cite Porter v. Warner Holding Co., 328 U.S. 395, 397-99 (1946) for the proposition that "unless otherwise explicitly restricted by statute, District Courts may exercise all inherent equitable powers to fashion relief, including ordering the payment of money."  C-S Obj. at 3. [26]

Porter was not an antitrust case; it was "concerned with the power of a federal court, in an enforcement proceeding under Section 205(a) of the Emergency Price Control Act of 1942, to order restitution of rents collected by a landlord in excess of the permissible maximums."  Porter, 328 U.S. at 396 (footnote omitted).   Objectors cite no case authorizing a federal court to order disgorgement or restitution in a private plaintiff antitrust case, which is not surprising given that such a result would work an end-run around Illinois Brick's prohibition on the recovery of damages by indirect purchasers.[27]

_____

[26] Given that these powers have been employed to permit remedies of disgorgement under the Federal Trade Commission Act and the Fair Labor Standards Act, Objectors Cooper and Scarpulla attempt to read three more recent cases as allowing disgorgement under Section 16 of the Clayton Act.  The Court agrees with the Special Master that the cases cited by objectors are inapposite.  See United States v. Keyspan Corp., 763 F. Supp. 2d 633, 639-640 (S.D.N.Y. 2011), In re TFT-LCD (Flat Panel) Antitrust Litig., No. C 10-4346 SI, 2011 WL 2790179, at *3-4 (N.D. Cal. July 12, 2011); In re Dynamic Random Access Memory (DRAM) Antitrust Litigation, No. M-02-1486-PJH (MDL No. 148), Docket No. 2132 at 84.  Keyspan and LCD are distinguishable because they were brought by the Government instead of a private party.  DRAM permits a party to include a request for such a remedy in a complaint, but does not reach the issue of whether private disgorgement could ever be awarded.

[27] Objectors do cite Oregon v. AU Optronics Corp. (In re TFT-LCD (Flat Panel) Antitrust Litig.), MDL No. 1827, 2011 WL 2790179 (N.D. Cal. July 11, 2011) for the proposition that such relief is

19

United States District Court
Northern District of California

There is good reason for this failure:  the Ninth Circuit disallows private use of Section 16 to pursue disgorgement.  See In re Multidistrict Vehicle Air Pollution, 538 F.2d 231, 234 (9th Cir. 1976) ("Recovery for past losses is properly covered under [Section] 4; it comes under the head of 'damages.' . . . [Section] 16 does not allow the claimed relief for past loss."); Coal. for ICANN Transparency Inc. v. VeriSign, Inc., 771 F. Supp. 2d 1195, 1202 (N.D. Cal. 2011) ("Disgorgement is a form of retrospective equitable relief. . . .  Such relief is unavailable under Section 16." (citing Multidistrict Vehicle, 538 F.2d at 234; FTC v. Mylan, 62 F. Supp. 2d 25, 41-42 (D.D.C. 1999)).  If a private theory of disgorgement were permitted, it would create an exception to Illinois Brick that would swallow the rule, allowing indirect purchasers to routinely recover damages in future antitrust cases.  Cf. Kansas v. UtiliCorp United, Inc., 497 U.S. 199, 216 (1990) ("The possibility of allowing an exception [to Illinois Brick], even in rather meritorious circumstances, would undermine the rule.").

The Court therefore turns to the objectors' second argument:  assuming the injunctive relief claims are worthless, some consideration is owed for their release, even if only for their value as nuisance claims.  The logic is that the Defendants insisted on a global release; that they would not have sought such a release unless it had value to them; and that some portion of the amount paid in settlement must therefore flow to the releasing parties.

As the Court noted earlier, no Ninth Circuit case holds that the release of a class action claim must be compensated in all instances, Nguyen, 2014 WL 1802293, at *7, and this Court will not break new ground by announcing one.  See also In re Mego, 213 F.3d at 461 (affirming denial of an objection to leaving a large portion of the class without recovery because the shareholders could have sold their stock for a greater price than the compensatory rate offered by the class).  Class counsel here were within their rights to allocate the settlement proceeds according to the degree of injury suffered by the class.  In re Omnivision, 559 F. Supp. 2d at 1045 ("It is reasonable to allocate the settlement funds to class members based on the extent of their injuries or the

---

available.  In a later order issued in the same case, however, Judge Illston recognized that a request for "restitution under federal law . . . would be barred."  In re TFT-LCD (Flat Panel) Antitrust Litig., 787 F. Supp. 2d 1036, 1040 (N.D. Cal. 2011).

00056

United States District Court
Northern District of California

strength of their claims on the merits.").  Certain class members were not injured in any manner

recognized by law, and accordingly did not receive compensation.  That Defendants insisted on a

global release does not change this analysis, since defendants typically insist on a global release in

*every* case.  Were the Court to place any weight on this latter fact, it would essentially be adopting

a *per se* compensation rule – which, as just explained, the Court is unwilling to do.  Nor is the

Court persuaded by the argument that plaintiffs with meritless claims should always be able to

extract nuisance value for them whenever those claims are part of a global settlement.  If such

claims actually have value, the affected plaintiffs can demonstrate that fact during the objection

process (or timely opt out).  If they fail in that effort, the Court will not have worked any injustice

in allowing claims with no value to go uncompensated. [28]

The Court finds Lead Counsel's valuation of the injunctive relief claims by class members

in non-repealer states and omitted repealer states was not unreasonable.  Accordingly, it was not

unreasonable to release these claims for no consideration.  As the allocation plan appears to have a

reasonable, rational basis, and fairly treats class members by awarding each a pro rata share after

making sensible interclass distinctions based on the strength of respective claims, the Court finds

the plan of allocation to be fair, reasonable, and adequate.  See Nguyen, 2014 WL 1802293, at *5;

In re Zynga, 2015 WL 6471171, at *12.

---

[28] Objectors rely on Nat'l Super Spuds, 660 F.2d at 9, to argue that the release of uncompensated
claims is not permitted.  The basis of the Second Circuit's holding there, however, was that the
claims being released had not been asserted in the complaint and were based on a different factual
predicate.  Super Spuds is inapposite to the present case.  Compare In re Auction Houses Antitrust
Litig., 42 F. App'x 511, 519 (2d Cir. 2002) ("In the twenty-one years since Super Spuds, we have
never affirmed the approval of a class action settlement which included the uncompensated
impairment of non-class claims unless the non-class claims were based on the identical factual
predicate as that underlying the claims in the settled class action . . . ." (emphasis in original)) with Reyn's Pasta Bella, LLC v. Visa USA,
Inc., 442 F.3d 741, 748 (9th Cir. 2006) ("The weight of authority holds that a federal court may
release not only those claims alleged in the complaint, but also a claim 'based on the identical
factual predicate as that underlying the claims in the settled class action . . . .'" (quoting Class
Plaintiffs, 955 F.2d at 1287-89)) and Lipuma v. Am. Express Co., 406 F. Supp. 2d 1298, 1317-19
(S.D. Fla. 2005) (distinguishing itself from Super Spuds and Auction House because there "the
claimants [we]re one and the same.").  Moreover, even if Super Spuds could be read to hold that
no class action claim can ever be released without compensation, the Ninth Circuit has never
adopted such a rule.  See Nguyen, 2014 WL 1802293, at *7 (C.D. Cal. May 6, 2014) ("The
Objector argues that any settlement that releases any claim without compensation is per se
unreasonable, but the Objector's authority does not bear this out.").

00057

Having so found, the Court now considers two concerns raised in connection with Lead Counsel's decision to release injunctive claims without consideration.

### 2.   Jurisdiction

Certain objectors suggest that if the released claims lack value, then the Court must lack jurisdiction to approve the settlement (or at least those portions pertaining to the release of the injunctive claims).  See RU Obj. at 14.  Objectors cite no authority for this creative argument and it requires little discussion.  Statutory authority exists to sue for injunctive relief "in any court of the United States having jurisdiction over the parties," 15 U.S.C. § 26, whether or not the claims have merit.  The Court has authority to enter judgment in favor of the party bringing those claims, or against that party.  Similarly, the Court has jurisdiction to approve the releases at issue here. That the IPPs would be very unlikely to prevail on the merits of their injunctive relief claims does not negate the existence of a "case or controversy" – this "confuses mootness with the merits." Chafin v. Chafin, 133 S. Ct. 1017, 1024 (2013); see also Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 189 (2000) (it is well settled that "a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." (citations omitted)).

The Court overrules this objection.

### 3.   Collusion and Adequacy of Representation

Several Objectors suggest that there is inadequate representation by counsel, the named plaintiffs, or both, due to the disparity between the compensation to those in repealer states and the absence of any recovery for those in non-repealer states.  See Clifton Obj. at 4-5, Hull Obj. at 4-5, RU Obj. at 3.

"Representation is adequate if: (1) the class representative and counsel do not have any conflicts of interest with other class members; and (2) the representative plaintiff and counsel will prosecute the action vigorously on behalf of the class."  Hopson v. Hanesbrands Inc., No. CV-08-0844 EDL, 2009 WL 928133, at *4 (N.D. Cal. Apr. 3, 2009).  "The primary responsibility of class counsel is to represent the entire class as it believes appropriate . . . .  Class counsel must make their own determinations about the appropriate course of action, taking full account of their

22

United States District Court
Northern District of California

fiduciary obligation to the class as a whole." <u>Rodriguez v. W. Pub. Corp.</u>, No. CV05-3222 R
(MCX), 2007 WL 2827379, at *14 (C.D. Cal. Sept. 10, 2007) <u>aff'd in part, rev'd in part sub nom.</u>
<u>Rodriguez</u>, 563 F.3d 948 (not reaching the quoted language).

There can be "no conflicts of interest between named parties and the class they seek to
represent." <u>Amchem Products, Inc. v. Windsor</u>, 521 U.S. 591, 594 (1997) (citations omitted).  Yet
"the fact that it is *possible* to draw a line between categories of class members" does not
necessarily mean that subclasses are required under <u>Amchem</u>.  <u>Shaffer v. Cont'l Cas. Co.</u>, 362 F.
App'x 627, 630-31 (9th Cir. 2010); <u>see also</u> <u>Staton</u>, 327 F.3d at 958 (finding adequate
representation where a class included both supervisors and rank-and-file employees).

Because the Court has already determined that the plan of allocation is fair and
appropriate, and found that the claims that were released without compensation did not have value,
it rejects the argument that the same plan is a basis on which to find counsel or the class
representatives inadequate.  The Court overrules this objection.

**B.** **Treatment of Class Members in Omitted Repealer States**

**1.** **Damages Claims by Omitted Repealer States Presently Lack Value**

Unlike class members in other repealer states, nationwide class members in Massachusetts,
Missouri, and New Hampshire receive no compensation in exchange for the release of their
claims, because the Complaint did not assert damages claims on their behalf.  Claims by
Massachusetts were originally included in the Complaint but dismissed twice.  Claims by Missouri
and New Hampshire were never brought in any version of the complaint due to lack of a named
plaintiff.  <u>See</u> R&R at 39-41.

Massachusetts faults Lead Counsel for failure to comply with a procedural rule leading to
the dismissal of that state's IPP class damages claims.  MA & MO SOI at 2-4.  Objectors also
claim that named plaintiffs from the omitted states were available to Lead Counsel, such that he
could and should have filed claims on their behalf.  RU Obj. at 11-13; Bonsignore Obj. at 2-7.

The Court has reviewed the evidence provided by objectors and finds that they have not
met their burden of demonstrating that named plaintiffs from the omitted states were available to
Lead Counsel.  <u>See</u> <u>Oregon</u>, 913 F.2d at 581.

00059

At this juncture, the Court cannot revive the abandoned or never-brought claims.  It also cannot approve the settlement only as to the remaining states, or the remaining repealer states, but not as to the omitted repealer states.  As the Ninth Circuit has stated:

> It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness.  Officers for Justice v. Civil Serv. Comm'n of San Francisco, 688 F.2d 615, 628 (9th Cir.1982).  Neither the district court nor this court have the ability to "delete, modify or substitute certain provisions."  Id. at 630.  The settlement must stand or fall in its entirety.  Id.

Hanlon, 150 F.3d at 1026.  The Court's role is limited to determining whether it is fair not to allocate any of the settlement fund to those states without monetary damages claims.  The Court concludes that it is fair, for the same reason that applied to the release of claims for injunctive relief.

The omitted repealer states suggest that they could instead be excluded from the nationwide class to pursue their own damages claims.  Such claims would not be timely.  For federal antitrust claims, the statute of limitations is four years.  15 U.S.C. §15b; see also Hexcel Corp. v. Ineos Polymers, Inc., 681 F.3d 1055, 1059-60 (9th Cir. 2012).  The statute is also four years for each of the three omitted repealer states.  See Mass Gen. Laws. 260 § 5A, Se. Missouri Hosp. v. C.R. Bard, Inc., No. 1:07CV0031 TCM, 2008 WL 4104534, at *4 (E.D. Mo. Aug. 27, 2008) (interpreting Mo. Rev. Stat. § 416.131.2); N.H. Rev. Stat. Ann. § 356:12(II) (as applied to N.H. Rev. Stat. Ann. § 356:11(II)).

It is true, as certain objectors note, see Bonsignore Obj. at 8; RU Obj. at 10, that filing a class action suit tolls the statute for all asserted members of the class (not just intervenors) who would be parties if the class were certified.  See Am. Pipe & Const. Co. v. Utah, 414 U.S. 538, 552 (1974); Crown, Cork & Seal Co. v. Parker, 462 U.S. 345, 350 (1983)).  A "putative class action only tolls the statute of limitations for putative class members until the trial court denies class certification, dismisses the lawsuit, or otherwise strips the action of its putative-class-action status."  Henson v. Fid. Nat. Fin. Inc., No. 2:14-CV-01240-ODW, 2014 WL 1246222, at *5 (C.D. Cal. Mar. 21, 2014).

Here, no form of tolling saves the claims of omitted repealer states.  American Pipe tolling

24

00060

1  cannot be used because Special Master Legge recommended Massachusetts claims be dismissed

2  with prejudice on September 30, 2010. ECF Nos. 597 at 29-30, 768 at 8, 12-14. No claims were

3  ever made on behalf of Missouri or New Hampshire. See R&R at 40. A stipulation adopting

4  Special Master Legge's Report and Recommendation and precluding any further attempts to add

5  the claims was signed by the Court on October 25, 2010. ECF No. 799. District courts do not

6  require separate notice to the class beyond the order of dismissal for the statute to resume running.

7  See In re Countrywide Fin. Corp. Mortgage-Backed Sec. Litig., No. 2:11-CV-07166-MRP, 2012

8  WL 1097244, at *4 (C.D. Cal. Mar. 9, 2012). Even if no time had run on the statute prior to the

9  adoption of the stipulation, over five years have passed since the case was dismissed.[29] Any new

10 damages claims on behalf of the omitted repealer states are now time-barred.

11        The Court overrules this objection.

12              **2.  Inadequate Notice of Exclusion from Settlement**

13        Certain objectors argue there was inadequate notice of exclusion from the settlement to

14 members of the omitted repealer states. See RU Obj. at 9-10. Objectors cite no legal authority for

15 such a requirement. Even if there were such a requirement, however, Lead Counsel provided

16 adequate notification in the settlement notices that were sent for both the Chunghwa and LG

17 settlements. See ECF Nos. 1063-1, 1063-2, 2511, 2512. The long form notice announced "money

18 for indirect purchasers in 24 states" and listed the states, see ECF No. 1063-1 at 1, and the short

19 form notice announced the same, minus a list of states, see ECF No. 1063-2. The notices were

20 published in a timely manner after the settlements to which they related. See ECF No. 1068

21 (listing when various forms of notices were published, largely in October and November 2011).

22        The Court overrules this objection.

23              **3.  Third Parties Could Have Filed New, Separate Actions**

24        As Special Master Quinn observed,

25

26 ───────────
   [29] Missouri's State Attorney General suggests they could have brought a case under Missouri's
   Merchandising Practices Act ("MMPA"), Mo. Rev. Stat. § 407.010, et seq. See MA & MO SOI at
27 4. The MMPA provides for a five year statute of limitations. See Owen v. Gen'l Motors Corp.,
   533 F.3d 913, 921 n.6 (8th Cir. 2008) (five year limitations period in § 516.120 applies to MMPA
28 claims). As over five years have passed, however, any MMPA claims would also be time-barred.

> As to potential clients who did not assert claims, nothing prevented [counsel for objectors] Mr. Bonsignore or Ms. Moore from proffering fully vetted and qualified plaintiffs to serve as class representatives. If Lead Counsel failed to include their proffered clients, they could themselves, within the almost two years remaining in the limitations period, have initiated direct actions that could have been joined with the MDL.

R&R at 39-40. Certain objectors argue that they could not have filed their own claims on behalf of the omitted repealer states because IPP Lead Counsel controlled the litigation, citing Kayes v. Pac. Lumber Co., 51 F.3d 1449, 1465 (9th Cir. 1995). See Bonsignore Obj. at 7-8; see also RU Obj. at 9. The issue in Kayes was whether plaintiffs' counsel in an ERISA class action had a conflict of interest because that counsel represented a fund and two individual named plaintiffs with respect to individual annuities not covered by the suit. Id. The district court ruled that Plaintiffs' counsel had to eliminate these potential conflicts by withdrawing from representing the fund and from representing the named plaintiffs in their individual suits. Id. The Kayes case has no bearing on the issue before the Court, and objectors have cited no other legal basis for the argument that they could have not have brought their own claims on behalf of any of the omitted repealer states.[30]

The Court overrules this objection.

## C. Allocation Among Repealer States (Excluding the Chunghwa Settlement)

The settlement provides that all class members in 21 repealer states and the District of Columbia will receive a pro rata share of the settlement fund upon filing a claim. Lead Counsel has proposed a minimum threshold value of $25, so that every claimant will receive this minimum value even if their pro rata share would otherwise be less. This ensures there is sufficient value to motivate every injured plaintiff to file a claim, even if he or she purchased a small number of CRT products.

Because the settlement distributions are meant to compensate only for the overcharge – not

---

[30] This includes Massachusetts, even though the Massachusetts claims were dismissed. Special Master Legge was clear that "certainly no procedural dismissal of this nature should bar the filing of a truly new suit." See ECF No. 768 at 13. Objectors were thus free (with notice of that freedom) to bring a new claim after the stipulation but prior to expiration of the statute of limitations.

00062

Case 3:07-cv-05944-JST Document 4712 Filed 07/07/16 Page 27 of 37

the entire price of purchased good – the claims administrator must assign different weights to various products to account for differences in the corresponding overcharged prices. Standard CRT televisions (thirty inches or smaller) will receive a weight of 1.0, large CRT televisions (anything larger than thirty inches) will receive a weight of 4.3, and computer monitors will receive a weight of 3.0. The Court will refer to these as "category multipliers."

To determine the value of any pro-rata share greater than the $25 minimum, a three-part formula is used. First, a numerator is established by taking the sum of devices a class member claims multiplied by the applicable category multipliers. Second, a denominator is established taking the sum of all devices claimed multiplied by the applicable category multipliers. Third, a value multiplier is established by taking the total amount in the settlement fund and subtracting approved fees, expenses, and incentive awards.[31]

Objectors raise two topics of concern, which the Court addresses in turn.

### 1. No *Cy Pres* Distribution

Certain Objectors argue that a potentially large residue will remain after the settlement fund is distributed, even though it is a claims-made settlement, because some of the claimants will not cash their checks. These objectors urge the settlement is defective because it does not include the designation of a *cy pres* recipient. Clifton Obj. at 8; Williams Obj. at 6.

Lead Counsel makes several responses to this argument. First, he argues that

> [n]o *cy pres* distribution is contemplated because there are already sufficient claims to exhaust the fund without any class member receiving anywhere close to three times their estimated damages. In these circumstances, if there are any residual funds due to uncashed checks, they are likely to be very small.

IPP Williams Resp. at 3. Second, even if the residue is not small, the Court can consider how to treat that residue if and when it knows the amount. Perhaps the parties will designate a *cy pres* recipient; perhaps there will a supplemental distribution; perhaps another approach will be most

---

[31] The formula is only approximate because the denominator (step two) will need to be adjusted to filter out the products that comprise the $25 minimum payment claims, and the value multiplier (step three) will need to be adjusted to subtract the $25 minimum payments from the money available for distribution.

00063

appropriate.[32]  See Rodriguez, 563 F.3d at 966 (declining to consider the propriety of *cy pres*

where "no *cy pres* distribution [was] imminent").  When and if the Court makes this decision, it

will bear in mind that *cy pres* is a disfavored substitute for distribution of benefits directly to class

members, id., a fact that objectors do not acknowledge in their presentation.

      The Court overrules this objection.

### 2. Differences in State Laws

      Certain objectors argue that differences in the strengths of claims of different states support

paying class members from each state differently, and that to pay them all using the same formula

results in "structural unfairness."  See Clifton Obj. at 3-5.

      "Approval of a plan of allocation of settlement proceeds in a class action . . . is governed

by the same standards of review applicable to approval of the settlement as a whole: the plan must

be fair, reasonable and adequate.  It is reasonable to allocate the settlement funds to class members

based on the extent of their injuries *or* the strength of their claims on the merits."  In re

Omnivision Techs., Inc., No. C-04-2297 SC, 2007 WL 4293467, at *7 (N.D. Cal. Dec. 6, 2007)

(emphasis added) (internal quotation marks and citations omitted); see also In re Oracle Sec.

Litig., No. 90-cv-00931-VRW, 1994 WL 502054, at *1 (N.D. Cal. June 18, 1994) ("A plan of

allocation that reimburses class members based on the extent of their injuries is generally

reasonable.").  The allocation plan distributes the settlement fund based on the extent of class

members' injuries.  Even if there are minor differences in the laws of the repealer states giving rise

to class members' claims – which no one identifies – using the extent of injury to divide the fund

is a reasonable choice.

      Another reading of this objection is that the problem lies not with differences among states

whose citizens will recover money but with the failure to allocate funds to omitted repealer or non-

repealer states.  See Clifton Obj. at 3 (referring to "the failure to include non-repealer states in the

damages class").  The Court has already overruled any objection on this ground.

---

[32] "Secondly, when that residue occurs and we know how much it is and we have a handle on it,
you can make supplemental claims distributions.  For example, to late claimants.  You can further
exhaust the amount."  ECF No. 4512 at 51.

United States District Court
Northern District of California

00064

The Court overrules this objection.

**D.    Allocation of the Chunghwa Settlement**

As previously noted, the IPPs settled earlier in the litigation with the Chunghwa Defendants for $10,000,000.  The terms of the settlement agreement provide that the net settlement funds will be distributed to claimants in 24 states *pro rata* in accordance with those states' respective populations in 2000.

These terms conflict with the notice sent to class members regarding the $576,750,000 aggregate settlement, which says that the funds will be distributed *pro rata* to all eligible claimants, without considering each state's population.  See R&R at 41-46; ECF Nos. 993 ¶¶ 10-11, 1105.  Special Master Quinn ordered Lead Counsel to submit a new proposal to cure any concern related to this discrepancy in how the Chunghwa settlement would be distributed, see R&R at 46, and Lead Counsel complied, see Plan R&R, ECF No. 4445 at 1.[33]

Two sets of objections now remain.  First, Objectors Cooper and Scarpulla filed a timely objection to the Plan R&R.[34]  See generally Plan Obj. ECF No. 4453; ECF No. 4459 (IPP Lead Counsel's response).  Second, after reviewing Lead Counsel's proposal to fix the inconsistency between the Chunghwa settlement and the class notice, Special Master Quinn recommended minor adjustments to the proposal, including additional information regarding notice and notice costs, and ordered Lead Counsel to supplement his plan accordingly.  Plan R&R at 7-8.  Lead Counsel complied with this order, see generally Alioto Plan Letter, ECF No. 4486, and Cooper and Scarpulla objected again, see generally ECF No. 4487.  Rather than submit Cooper and Scarpulla's most recent objection to the Special Master, this Court reviews it in the first instance.

Messrs. Cooper and Scarpulla make four objections.  First, they object to the proposed 50/50 split between resellers and consumers, arguing there is no empirical support that such a split is actually fair to the class or representative of the harm suffered by the respective groups within

---

[33] Given that Lead Counsel has submitted a new proposal which is the subject of the Plan R&R, the Court denies as moot any objection to the original Chunghwa allocation plan.  See ECF No. 4351 at 41-46; IPP Obj. at 9; Bonsignore Obj. at 12-14; Plan Resp. at 1 n.2.

[34] Theirs was the only timely objection.  See ECF No. 4494 (striking the objection at ECF No. 4470).

00065

the class.  ECF No. 4453 at 1-2.  Second, they object to the new notice and claims period, raising anew concerns over the claims rate and arguing that the claims period should be reopened for all claimants.  Id. at 2-4.  Third, they object to the inclusion of $500,000 in notice costs being attributed to the Chunghwa settlement instead of to the entire class.  ECF No. 4487 at 2.  Fourth, they request that the additional costs required to give adequate notice of the Chunghwa settlement be deducted from Lead Counsel's fee, instead of the attorneys' fee of all class counsel.  ECF No. 4453 at 3-4.  Finally, they request that Lead Counsel provide a complete accounting for the $500,000 in original Chunghwa notice costs.  ECF No. 4487 at 2 n.1.  The Court reviews each of these objections in turn.

### 1.  50/50 Split

Cooper and Scarpulla object to the 50/50 split between end users and resellers.  As they did before the Special Master, Plan R&R at 7, they do not argue that the split is unfair.  They argue only that it is arbitrary and lacks adequate factual support for Court approval.  Id.

Objectors argue that the Court should appoint independent counsel for the resellers and the consumers because if it did, those counsel might "be able to agree on a fair split," citing In re Dynamic Random Access Memory (DRAM) Antitrust Litig., 2013 U.S. Dist. LEXIS 188116, at *96-97 (N.D. Cal. Jan. 8, 2013), in which the court adopted such a procedure.  Since Objectors do not contend that the currently proposed division is not a "fair split," however, this proposal is not compelling.  It would entail substantial additional time, delaying recovery for all class members, as well as the expenditure of additional attorneys' fees -- which would be deducted from the class' recovery.  Objectors urge the Court to spend the class' money on this effort but do not even argue, much less demonstrate, that the expenditure would result in a better or fairer recovery for any segment of the class. This is a gamble not worth taking.  See In re Critical Path, Inc., No. C 01-00551 WHA, 2002 WL 32627559, at *7 (N.D. Cal. June 18, 2002) (rejecting a request for reallocation of a settlement fund where "the[] costs would eat further into [a] relatively small settlement fund" of $17.5 million); see also Plan R&R at 7 ("the proposed 50/50 split is likely to be as effective and fair as any other, [and] expending further counsel and Court time on this  issue is not cost-effective").)

00066

United States District Court
Northern District of California

Similarly, Objectors suggest that Lead Counsel should conduct a study to determine whether the expenses of fashioning a more precise allocation plan outweigh its benefits.  But Objectors offer no information about either the expenses or the benefits of such a study, only speculation.  Presumably they want Lead Counsel to undertake such a study and, if the benefits in distributive fairness are outweighed by the study's costs, discover that fact only after the class' money has been spent.  The burden is on the party objecting to a class settlement, and the Court finds that burden is not met here.  See id.  The standard of review does not call for the best possible plan of allocation, only for one that is based upon a "reasonable, rational basis, particularly if recommended by experienced and competent counsel."  Vinh Nguyen, 2014 WL 1802293, at *5.  Lead Counsel's 50/50 split meets this requirement.

Accordingly, the Court accepts a 50/50 split of the Chunghwa settlement as a fair, reasonable, and adequate allocation.  The objection to this split is overruled, and the Court adopts the Plan R&R at page 7.

### 2.    New Notice and Claims Period

Pursuant to Lead Counsel's modified notice proposal, the Court will order the claim period reopened for 120 days for resellers in the 24 Chunghwa settlement states.  Notice will be provided to resellers by e-mail and regular mail, press release, on the settlement website, and by print media.  Resellers will have 60 days to object to the settlement.  These provisions are appropriate because resellers have not been given notice of the plan or the opportunity to file claims.  See ECF No. 4339 (applying In re Gypsum Antitrust Cases, 565 F.2d 1123, 1128 (9th Cir. 1977) ("the district court had discretion to grant late claims[,]" and denial of an extension is reviewed for abuse of discretion)).  The Court agrees with Special Master Quinn's analysis on this issue, and adopts the Plan R&R at 4-5.

Cooper and Scarpulla argue that new notice should have been given to *all* class members, and a new claims period established, on the grounds that the prior notice was inadequate.  In support of this argument, they describe the claims rate – approximately 109,000 claims covering 19 million CRTs – as "anemic," but offer no persuasive basis for concluding that the claims rate would have been higher with a different notice.  As Lead Counsel argued and the Special Master

31

United States District Court
Northern District of California

1    found, "the claims period in this case stretches back 20 year and the product is obsolete."  It is

2    therefore not hard to imagine that many CRT indirect purchasers either did not remember what

3    CRT-containing products they purchased or were not motivated to claim a percentage of the

4    settlement fund.  Objectors respond that "all that is required . . . is a few moment's reflection to

5    remember how many CRT televisions and computer monitors were owned during the class

6    period," ECF No. 4453 at 3:3-5, but the Court agrees with Lead Counsel that "claimants [often

7    have] difficulty remembering how many qualifying products they [have] purchased and,

8    accordingly, [are] hesitant to file claims without being sure."  ECF No. 4459 at 6.  The staleness of

9    the claims at issue here exacerbates this problem.

10          Accordingly, this objection is overruled.  The Court approves reopening the claim period

11   for 120 days for all resellers within the states set to receive damages under the Chunghwa

12   settlement, and will accept objections during a 60-day period as described in the notice.

13          As new objections are still permitted based on a notice yet to be issued, the Court deems its

14   review of the notice, allocation, and distribution procedures here akin to a preliminary approval of

15   the revised Chunghwa settlement.  The notice must be updated to reflect the proper settlement

16   figure available for distribution.  Subject to that change, the Court finds that the forms of notice,

17   ECF Nos. 4488 at 10-28, are the best notice possible and meet the requirements as previously

18   described at ECF No. 992 ¶¶ 12-15.  The Court expressly approves the use of emails, banner ads,

19   and any other mechanism previously used in this case to ensure maximal reach to resellers who are

20   potential claimants within the Chunghwa class.  Lead Counsel is directed to cause the Summary

21   Notice to be published.

22          Objection procedures shall be the same as those used for other members of the Chunghwa

23   settlement, see id. ¶ 16.  Counsel will advise the Court in a timely manner of anticipated dates for

24   publication of notice and a new due date for objections.   Notice must be completed by August 1,

25   2016.  The Court will conduct a Fairness/Final Approval Hearing on November 14, 2016 at 9:30

26   a.m.

27          The Court will not delay final approval of the remainder of the settlement over this issue

28   and will determine attorneys' fees related to the Chunghwa settlement now instead of after

objections are received. However, the Court directs that distribution of the settlement funds to any

party or counsel is *not* authorized until after opportunity to object is complete and the Court finally

approves the distribution of the Chunghwa settlement.

### 3. Inclusion of $500,000 In Notice Costs

Although Lead Counsel originally proposed to deduct $2,500,000 in expenses from the

Chunghwa settlement, that amount has now been reduced to $632,369: the $500,000 spent on the

original Chunghwa notice; and Chunghwa Settlement's pro rata share of the $7,634,372.50 in total

litigation expenses, in the amount of $132,369. ECF No. 4486 at 2. In addition, attorneys' fees

and a pro-rata share of incentive awards will be deducted to the extent later approved by the Court.

Cooper and Scarpulla object that the $500,000 spent on the original notice actually

benefitted the entire class, because the Chunghwa settlement allowed Plaintiffs' counsel to create a

"war chest" for use in the litigation that followed. See ECF No. 4487 at 2. They ask that the

amount be deducted from the aggregate settlement and not the Chunghwa settlement.

Objectors' argument is not without some logical force, but it is unsupported by legal

authority. Also, the Court is wary of establishing a test that requires it to evaluate a settling

party's "real" motivations in achieving a class settlement when other claims remain to be litigated

or settled. Ordinarily, the class or subclass that receives notice of a settlement reimburses the cost

of that notice from the settlement fund. The Court sees no reason why this class should be treated

any differently, and overrules this objection.

### 4. Allocation of Additional Chunghwa Notice Costs

The cost of providing additional notice regarding the Chunghwa settlement is estimated to

be approximately $100,000. Objectors asked that the Special Master recommend that this cost be

deducted from the attorneys' fees awarded to Lead Counsel alone; the Special Master concluded

that the fairer approach was to deduct it from the fees of class counsel as a whole. His reasoning

was as follows:

> This is an issue of very little financial impact to either the settlement
> fund or in relation to Lead Counsel's likely fee. It is, however, a
> matter of fairness. First, it is relevant that the real added cost is very
> small. The estimated $100,000 in new costs is undoubtedly almost
> entirely due to notice to resellers since the proposed notice to end

United States District Court
Northern District of California

> users is virtually cost-free. Even if Lead Counsel had properly
> proposed notice to resellers as part of the original notice program,
> much of that cost would have been incurred anyway. Second, there
> is no evidence of genuine misconduct or bad faith by Lead Counsel.
> The Special Master has concluded that Lead Counsel made an error
> in judgment in determining that the Chunghwa distribution plan was
> so *de minimis* that it could be ignored. But there is no evidence that
> it was anything other than an error or oversight.

ECF No. 5944 at 5-6. In recommending that the cost be allocated against attorneys' fees globally, and not specifically against Lead Counsel's fee, the Special Master further noted further that "Lead Counsel was not in this alone; his faulty allocation plan was presumably known to and approved by numerous other class counsel." Id. at 6 n.3.

Cooper and Scarpulla now make the same objection they made to the Special Master. As the Special Master did, the Court finds the objection unpersuasive. The Court has nothing to add to the Special Master's analysis, and adopts it here. The Court overrules this objection.

### 5. Accounting of Original Chunghwa Notice Costs

Finally, Cooper and Scarpulla request that Lead Counsel provide a complete accounting of the $500,000 spent in Chunghwa notice costs. ECF No. 4487 at 2 n.1 (noting that $500,000 is a "remarkably even number"); see also ECF No. 992 ¶ 23 (approving "up to $500,000 of the [Chunghwa] settlement fund for payment of the cost of notice(s) to potential members . . . without the approval of the Court . . . ."). The Court raised this issue during the April 19, 2016 Fairness Hearing. Rather than grant this request and invite yet another round of briefing, the Court inquired whether all parties would be satisfied if instead the bills were lodged directly with the Court for review in camera, along with appropriate affidavits and a cover sheet listing the expenses, so that the Court could determine that at least $500,000 in administration and notice costs was actually paid. The parties agreed to this procedure. ECF No. 4618 (Apr. 19, 2016 Hearing Transcript) at 17-18.The materials were subsequently filed on the open docket. ECF No. 4592. The total amount actually spent by IPP Counsel was $500,000; the administrator incurred costs of $502,282.50, but credited back $2,282.50. To the extent this request can be characterized as an objection, the objection is overruled.

## V. RESOLUTION OF ADDITIONAL OBJECTIONS

IPPs raise two concerns not addressed elsewhere: whether Objectors Cooper and Scarpulla

34

United States District Court
Northern District of California

1  have standing to object, since they do not represent a specific class member, and IPP Lead

2  Counsel's objection to certain joinders  The Court addresses each in turn.

3       **A.**      **Standing To Object**

4       Lead Counsel for IPPs argues that Objectors Cooper and Scarpulla lack standing to object.

5  Formal objections may only be made by class members.  In re TracFone Unlimited Serv.

6  Plan Litig., 112 F. Supp. 3d 993, 1008 (N.D. Cal. 2015) (Chen, J.) (collecting cases)

7  reconsideration denied, No. C-13-3440 EMC, 2015 WL 4735521 (N.D. Cal. Aug. 10, 2015).  The

8  burden rests with objectors to establish their standing.  TracFone, 112 F. Supp. at 1008 (quoting In

9  re Hydroxycut Mktg. and Sales Practices Litig., No. 09-cv-1088 BTM, 2013 WL 5275618, at *2

10  (S.D. Cal. Sep. 17, 2013)).  "Simply being a member of a class is not enough to establish standing.

11  One must be an aggrieved class member."  In re First Capital Holdings Corp. Fin. Products Sec.

12  Litig., 33 F.3d 29, 30 (9th Cir. 1994).  One who "suffered no injury likely to be redressed by a

13  favorable decision" lacks standing.  Id. (citing Valley Forge Christian Coll. v. Americans United

14  for Separation of Church & State, Inc., 454 U.S. 464, 472 (1982); Lujan v. Defs. of Wildlife, 504

15  U.S. 555, 566-71 (1992)).  "[A]n amicus curiae is not a party to the litigation and technically has

16  no standing to object to the settlement."  San Francisco NAACP v. San Francisco Unified Sch.

17  Dist., 59 F. Supp. 2d 1021, 1033 (N.D. Cal. 1999) (Orrick, J.).  Even if a Court finds that a

18  putative objector lacks standing to object, it may still consider that putative objector's objections

19  to a class settlement, which may help the Court satisfy its fiduciary duties.  See Stetson v.

20  Grissom, No. 13-57061, 2016 WL 2731587, at *2 (9th Cir. May 11, 2016).  The objector therefore

21  needs only a procedural vehicle with which to place his arguments before the district court, which

22  is provided by Federal Rule of Civil Procedure 23(h)(2): "A class member, or a party from whom

23  payment is sought, may object to the motion [for class counsel's fees]."); see also TracFone, 112

24  F. Supp. 3d at 1008; San Francisco NAACP, 59 F. Supp. 2d at 1032-1033.

25       The Court finds that Scarpulla and Cooper do not have standing to object.  They do not

26  advance their objections on behalf of an aggrieved class member, and they do not claim to be class

27  members themselves, much less aggrieved class members.  TracFone, 112 F. Supp. 3d at 1008

28  ("Birner lacks standing to object to the proposed settlement because he is not a class member, and

certainly is not an aggrieved class member"). Nonetheless, they have participated in the case since its inception, and are knowledgeable regarding antitrust law and the intricacies of the settlement. The Court has treated Scarpulla and Cooper as *amici curiae* and given full consideration to their arguments.

### B. Improper Joinders

Several objectors ask the Court to incorporate by reference numerous arguments not made in their brief. See, e.g., RU Obj. at 15, Williams Obj. at 8. Many of these same objectors made similar requests in their motions before Special Master Quinn. See ECF Nos. 4113 at 10, 4144 at 1, 4128 at 2, 4125 at 1-2, 4429 at 1, 4112 at 13. Special Master Quinn did not address the issue, and Lead Counsel asks that the requests for incorporation be denied. See IPP Obj. at 6-7.

A district court has inherent authority to control its own docket and may enforce limitations on briefing or incorporation by reference. See Ready Transp., Inc. v. AAR Mfg., Inc., 627 F.3d 402, 404 (9th Cir. 2010) (collecting cases detailing a Court's inherent powers); Green v. California Court Apartments LLC, 321 F. App'x 589, 591 (9th Cir. 2009) (upholding a decision to strike a brief filed with pages exceeding the limit set by local rules); Swanson v. U.S. Forest Serv., 87 F.3d 339, 345 (9th Cir. 1996) (denial of incorporation by reference upheld). The Court has already stricken briefs where reference by incorporation would cause the brief to exceed the permitted page limitation. See ECF No. 4430 at 2 ¶ 1. Lead Counsel's objection is sustained.

## V. CONCLUSION

For the foregoing reasons, the Court orders as follows:

1. For the reasons set forth herein and in its July 9, 2015 order, ECF No. 3906, the Court certifies the proposed classes for settlement purposes only.

2. For the reasons set forth in its July 9, 2015 order, ECF No. 3906, the Court confirms its appointment of the law firm of Trump, Alioto, Trump & Prescott, LLP., as Class Counsel.

3. The Court finds the settlements are fair, adequate, and reasonable, and therefore grants final approval of the six proposed settlements.

4. The Court sustains the objections to the standing of Objectors Cooper and Scarpulla and to joinders that cause any brief to become too lengthy. All remaining objections to the final approval of the six proposed settlements are overruled.

5. The class members who made timely requests to opt out of the settlement are

United States District Court
Northern District of California

36

excluded from the class.  Objectors and States who suggested that a remedy to certain concerns might be to allow state residents to opt out are not excluded from the class by virtue of their Objection or SOI absent a timely request to opt out.

6.    The Court reserves all issues related to attorneys' fees, expenses, and incentive awards for a future order.

7.    The Court adopts the R&R to the extent consistent with this order.

8.    The Court grants final approval of the plan of allocation for all pending settlements, but finds with regard to the Chunghwa settlement that new notice is required with an opportunity for resellers to object.  The Court finds that the new Chunghwa notice, subject to a noted change, is the best possible notice and authorizes its distribution.  The Court overrules the objections related to the Chunghwa settlement and adopts the Plan R&R to the degree consistent with this order.

9.    The Court stays the distribution of funds from any of the eight settlements pending final approval of the Chunghwa settlement after hearing objections at a Fairness Hearing scheduled for November 14, 2016 at 9:30 a.m.  The cost of attorneys' fees, expenses, incentive awards, and legitimate claims may be determined during this interim period, but no monies may be paid from any common fund until this stay is lifted without prior permission of the Court.  The Court grants Lead Counsel permission to use up to $100,000 to effectuate notice to the Chunghwa class and settlement administration without need for further permission of the Court.

10.   As described above, notice related to the Chunghwa settlement must be completed by August 1, 2016, and the Court shall conduct a Fairness/Final Approval Hearing on November 14, 2016 at 9:30 a.m.

IT IS SO ORDERED.

Dated:  July 7, 2016

_____
JON S. TIGAR
United States District Judge

United States District Court
Northern District of California

37

00073