Guido Saveri (22349)
  *guido@saveri.com*
R. Alexander Saveri (173102)
  *rick@saveri.com*
Geoffrey C. Rushing (126910)
  *grushing@saveri.com*
Cadio Zirpoli (179108)
  *cadio@saveri.com*
Matthew D. Heaphy (227224)
  *mheaphy@saveri.com*
SAVERI & SAVERI, INC.
706 Sansome Street
San Francisco, CA 94111
Telephone:  (415) 217-6810
Facsimile:  (415) 217-6813

*Lead Counsel for Direct Purchaser Plaintiffs*

Mario N. Alioto (56433)
Lauren C. Capurro (241151)
TRUMP, ALIOTO, TRUMP & PRESCOTT LLP
2280 Union Street
San Francisco, CA 94123
Telephone: 415-563-7200
Facsimile: 415- 346-0679
Email: malioto@tatp.com
jpatane@tatp.com
laurenrussell@tatp.com

*Lead Counsel for the Indirect Purchaser Plaintiffs*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Master File No. 07-CV-5944-JST |
| | MDL No. 1917 |
| This Document Relates to: | **JOINT CASE MANAGEMENT STATEMENT PURSUANT TO CIVIL L.R. 16-10(d)** |
| *ALL DIRECT PURCHASER ACTIONS* *ALL INDIRECT PURCHASER ACTIONS* | Date:           January 12, 2021 Time:           2:00 p.m. Judge:          Honorable Jon S. Tigar Courtroom:   Courtroom 6 – 2nd Floor |

Pursuant to Civil Local Rule 16-10(d), Direct Purchaser Plaintiffs ("DPPs"), Indirect Purchaser Plaintiffs ("IPPs") (together, "Plaintiffs"), and Defendants Irico Group Corporation and Irico Display Devices Co., Ltd. (the "Irico Defendants" or "Irico")), by and through the undersigned counsel, hereby submit this Joint Case Management Statement:

### Plaintiffs' Statement

## I. INTRODUCTION

The two proposed pretrial schedules before the Court are far apart. Plaintiffs' joint proposal reflects the substantial work already accomplished by the parties and the Court's many rulings during this thirteen-year litigation, as well as the law governing Irico's belated reappearance in this case. Plaintiffs propose an efficient schedule that will bring this prolonged litigation to a close expeditiously, with the first of two trials commencing in November 2021. Irico's proposed schedule ignores and seeks to redo the work that the parties and this Court accomplished during Irico's self-imposed absence from the case, and will prolong this litigation for several more years. It also ignores the law, which requires that Irico show good cause to be relieved from this Court's long-standing scheduling orders. Irico's schedule would further prejudice Plaintiffs and encourage parties in future cases to adopt Irico's dilatory tactics.

Irico's extensive (and successful) efforts to delay the resolution of the case are detailed in previous submissions to the Court, *see, e.g.*, ECF No. 5653 at 4–8, and are briefly summarized here.

First, the Irico Defendants delayed asserting their Foreign Sovereign Immunities Act of 1976 ("FSIA") defense for over ten years:

- Pillsbury Winthrop Shaw Pittman LLP ("Pillsbury") appeared on June 24, 2008 on Irico's behalf (ECF No. 308), accepted service of all papers, and represented them vigorously for over two years, including by joining motions to dismiss. Irico failed to assert its FSIA defense during this period.

- Irico disappeared from the case in 2010 after which Pillsbury was required to continue to accept service of papers for forwarding purposes.

- Irico did not reappear or take any other action when defaults were entered against them in the Direct Purchaser and Indirect Purchaser Actions in July 2016, and did not reappear

to assert their FSIA defense until after DPPs had filed a motion for entry of a default judgment. *In re Cathode Ray Tube (CRT) Antitrust Litig.*, MDL No. 1917, Case No. C-07-5944 JST, 2018 WL 659084, at *8 (N.D. Cal. Feb. 1, 2018) ("Default Order") ("by refusing to appear and litigate the case, the Irico Defendants have delayed resolution of the jurisdictional question for ten years").[1]

Second, Irico repeatedly delayed the resolution of their FSIA defense after they reappeared:

- They ignored the Court's Default Order by failing to offer new facts and argument in their second motion to dismiss. *See* Order Regarding Motions to Dismiss for Lack of Jurisdiction at 12, ECF No. 5637 (Oct. 28, 2019) ("Second FSIA Order") (the Court did not invite "a belated motion for reconsideration").

- They provided dilatory and incomplete responses to jurisdictional discovery which required three Court orders to compel. *See* ECF Nos. 5320, 5331, 5332. The Irico Defendants' conduct also repeatedly delayed the depositions of their witnesses.

Third, Irico's now-abandoned appeal of the Second FSIA Order delayed the case by another full year:

- The parties fully briefed Irico's appeals of this Court's Second FSIA Order.

- Irico withdrew their appeals several weeks prior to scheduled oral argument before the Ninth Circuit, thereby abandoning their FSIA defense three full years after first asserting it. *See* ECF Nos. 5650, 5861. The Ninth Circuit dismissed the appeals with prejudice. ECF No. 5861 at 1.

After more than ten years of successfully delaying the case against them, Irico now proposes to start over from the beginning. They propose to spend almost two years on unnecessary full discovery and re-litigating class certification, another six months re-doing expert discovery, and at

---

[1] Irico speculates that Plaintiffs may not have moved against Irico if this Court had not ordered them to do so, and are to blame for the delay. This argument ignores that Plaintiffs could not move for a default *judgment* until the case against the other defendants was over. In addition, while it is true that Plaintiffs could have sought a clerk's default against Irico earlier, it is also true that entry of the clerk's default in 2016 did not cause Irico to reappear. Irico did not reappear until DPPs moved for a default judgment in late 2017. Thus, even if a default had been entered against Irico in 2010, it would not have led to Irico's reappearance in the case until Plaintiffs moved for a default judgment at the end of the case.

least another six months on dispositive motions, before finally moving to trial preparations at some undefined point, likely in 2024. Irico should not be permitted to further unnecessarily delay the resolution of this case. Discovery closed in this case in September 2014. Irico made a deliberate, tactical decision to default and ignore this litigation for over seven years. Pursuant to the Court's order requiring Pillsbury to serve Irico with all discovery and court filings, Irico was provided notice of this Court's scheduling orders, including the deadlines for responding to written discovery, depositions, expert discovery, class certification, the close of discovery, and filing dispositive motions. Yet Irico chose not to participate. While this Court declined to enter a default judgment against Irico, there must be some consequences for Irico's tactical decisions to ignore this case and its proceedings.

Irico's protestations that it has no desire to delay the case or relitigate any matters are illusory—nowhere does Irico provide a meaningful explanation of what exactly it intends to do, despite having had over 12 years to consider the issue. Among other things, Irico does not specify what dispositive motions it expects to bring, what discovery it needs against Plaintiffs, or what documents it still has and expects to be able to produce. Nor does Irico explain why it has not (apparently) already segregated and preserved documents responsive to discovery requests served years ago.

Plaintiffs respectfully submit that there are three main issues for the Court and the parties to address at the forthcoming Case Management Conference: 1) the pretrial and trial schedule; 2) the extent and timing for completion of all outstanding discovery; and 3) Irico's request to redo class certification in the Direct Purchaser Actions, as well as dispositive motions. Each issue is addressed below.

## II.     LEGAL STANDARDS

Pursuant to Rule 16(b) of the Federal Rules of Civil Procedure, "[a] schedule shall not be modified except upon a showing of good cause and by leave of the district judge." Fed. R. Civ. P. 16(b); *see also* N.D. Cal. Local Rule 16(d) (requiring party seeking relief from the case management schedule to file a motion pursuant to Civil L.R. 7 and "describe the circumstances which support the request."). "In determining 'good cause,' 'the focus of the inquiry is upon the moving party's reasons

for seeking modification . . . . If that party was not diligent, the inquiry should end.'" *Jules Jordan Video, Inc. v. Canadian Multimedia Entm't, Inc.*, No. CV 05-0517 DT (JTLX), 2006 WL 8432060, at *11 (C.D. Cal. Oct. 16, 2006) (citing *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992)). *See also* Fed. R. Civ. 16(b) Advisory Comm. Notes (The district court may modify the pretrial schedule "if it cannot reasonably be met despite the diligence of the party seeking the extension.").

Under the scheduling orders previously entered in this case, the deadlines to oppose class certification, exchange expert reports on liability and damages, and file dispositive motions passed long ago, and fact discovery has closed. *See* ECF Nos. 1127, 1267, 1595, 2459, 4628. In order to justify Irico's proposal that the Court reopen discovery and allow them to relitigate class certification and summary judgment, Irico must move this Court for relief from the prior case management schedule, and must show "good cause" and diligence. But Irico cannot do so. It is undisputable that Irico received actual notice of all scheduling orders, discovery, and court filings,[2] and chose to ignore them—for more than seven years. Given that Irico's failure to meet the deadlines set by the Court in its scheduling orders was the result of deliberate, tactical decisions, Irico cannot show that it was diligent in attempting to comply with the prior case management schedule. Accordingly, "the inquiry should end." *Jules Jordan Video, Inc.*, 2006 WL 8432060, at *11 (citing *Johnson v. Mammoth Recreations, Inc.,* 975 F.2d at 609) (denying defaulting defendants' motion to amend the scheduling order to allow additional time for discovery on the grounds that defendants failed to show diligence).

In addition, this Court has the power to impose limitations on the scope of a reopened suit to prevent prejudice to Plaintiffs, and should do so here. *See Falk v. Allen*, 739 F.2d 461, 463 (9th Cir. 1984) ("The trial court, however, has the power to impose conditions on the scope of the reopened suit to prevent prejudice."); *G Vincent Ltd. v. Dux Area Inc.*, No. C09-383RAJ, 2010 WL 11526894, at *3 (W.D. Wash. July 29, 2010) (concluding that, as a condition of setting aside default, "the court strikes [the defendant]'s non-infringement and invalidity defenses and counterclaims"); *In re*

---

[2] *See* ECF No. 732 at 2 (Order requiring Pillsbury to "continue to accept service of papers for the Irico Entities for forwarding purposes until substitute counsel appears on behalf of the Irico Entities").

*Stevenson*, 519 B.R. 881, 884 (D.D.C. 2014) (affirming bankruptcy court's decision that defaulting defendants' late-filed affirmative defenses were forfeited), *aff'd*, 789 F.3d 197 (D.C. Cir. 2015).[3]

It would be highly prejudicial to Plaintiffs to allow Irico to re-litigate this case from the beginning, and reopen issues already decided. This Court has recognized the substantial prejudice Plaintiffs have already suffered as a result of Irico's default.[4] And indeed, Irico's responses to Plaintiffs' jurisdictional discovery indicate that documents and data have in fact been lost, and witnesses are no longer available. For example, Irico claims to have no documents relating to 26 of the 70 meetings Plaintiffs have identified between Irico and their competitors.[5] The prejudice to Plaintiffs will be compounded if Plaintiffs are required to spend years responding to Irico's discovery requests, submitting to further depositions, re-litigating class certification and summary judgment, and re-opening costly expert discovery.

In deciding what limitations on the reopening of this case are appropriate, this Court should consider that Irico made a deliberate, strategic decision to default. Many courts have recognized that there should be consequences to such a decision. *See, e.g., Merial Ltd. v. Cipla Ltd.*, 681 F.3d 1283, 1297 (Fed. Cir. 2012) ("it is beyond dispute that [defendant] had actual notice of suit and chose to risk a default judgment, based on its subjective assessment of the complaint . . . . [Defendant] had the option of filing a pre-answer motion under Rule 12(b)(2) to settle all issues of personal jurisdiction up front. [Defendant] instead chose to do nothing, and it must bear the consequences of

---

[3] Irico asserts that any limitations on the scope of a reopened case can only be imposed at the same time default is set aside. But these cases do not hold that the district court's powers under Rule 55 are so limited. In addition, Irico's assertion ignores that this Court has inherent powers to limit discovery and manage the litigation, and may use those powers to prevent prejudice to Plaintiffs.

[4] *See In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. C-07-5944 JST, 2018 WL 659084, at *8 (N.D. Cal. Feb. 1, 2018) ("The Court concludes that the DPPs make out a strong case of prejudice. The DPPs were inarguably prejudiced by the Irico Defendants' decision to disappear from the case for ten years . . . . After the passage of so much time, it is likely that documents and data have been lost, that witnesses have become unavailable, or that important details have been forgotten." In addition, "not only will discovery of documents and witnesses from the Irico Defendants be hampered by the lengthy passage of time, but discovery against the remaining defendants which would likely benefit the DPPs' case against the Irico Defendants—to the extent it is even possible— will be hindered by the same memory and data loss.").

[5] ECF No. 5653-1, Ex. 2 (Declaration of Yunlong Yan in Support of Irico Defendants' Third Supplemental Objections and Responses to Direct Purchaser Plaintiff Studio Spectrum, Inc.'s First Set of Requests for Production of Documents, dated October 10, 2018).

that decision."). While this Court ultimately decided that entry of a default judgment against Irico was not appropriate, Irico should bear some consequences for its strategic decision to default and should not be permitted to further prejudice plaintiffs by reopening discovery and re-litigating this already amply-litigated case.

## III.      PRETRIAL AND TRIAL SCHEDULE

Attached hereto as Exhibit A is Plaintiffs' proposed pretrial schedule. Under Plaintiffs' proposed schedule, the parties would engage in limited discovery for approximately eight months, focused almost exclusively on Plaintiffs' discovery of Irico. Trial preparations would then begin soon after the close of fact discovery on August 30, 2021, with the first of two trials beginning on November 15, 2021. There would be no re-litigation of class certification and no dispositive motions, as further explained below.

Any attempt by Irico to continue to drag out these pretrial proceedings because of the Covid-19 pandemic should be rejected. While Plaintiffs are cognizant of the challenges posed by the pandemic, much of the work required for trial has already been done and is available to Irico, and large international corporations and law firms continue to operate effectively. Plaintiffs' schedule would avoid reopening discovery that has already closed, and re-litigating issues already decided—all of which Irico had notice of but chose to ignore. In contrast to the Irico Defendants' proposed schedule, Plaintiffs' proposal does not include time for redoing class certification in the Direct Purchaser Actions, expert discovery, or dispositive motions as these already occurred in the Irico Defendants' absence.

Plaintiffs' schedule recognizes and builds upon the fact that Plaintiffs were prepared to go to trial before settling with other defendants in 2015 and 2016. The parties can benefit from and build upon all of that work, and be ready to try the case against Irico by November 2021.

### A.      DISCOVERY

Under this Court's scheduling orders, all fact discovery and expert discovery in the Indirect Purchaser Actions closed on September 5, 2014 and October 31, 2014, respectively. *See* ECF No. 2459. Similarly, in the Direct Purchaser Actions, fact discovery closed on August 15, 2016 and expert discovery on December 2, 2016. ECF No. 4628. Prior to the close of discovery, the parties had

engaged in years of meet and confers regarding document productions and written discovery responses; conducted hundreds of depositions on class certification and the merits; engaged in extensive (and costly) expert discovery, including exchanging voluminous opening, rebuttal and sur-rebuttal expert reports on class certification, liability and damages, as well as depositions of those experts; and finished up with detailed contention interrogatories and RFAs. Irico received notice of all of this discovery and chose not to participate. Yet Irico's scheduling proposal would permit them to reopen discovery and spend more than three years pursuing whatever discovery they please. The Court should reject Irico's proposal because, as explained above, Irico cannot show good cause under Rule 16(b) to justify relieving them from the prior scheduling order.

The Court should not permit Irico to take discovery of Plaintiffs or take any depositions, other than of the four new IPP class representatives who were added to the case in September 2019. *See* ECF Nos. 5585, 5589. Nor should Irico be permitted to reopen expert discovery. Irico will not be prejudiced by these limitations since they will receive all of the discovery Plaintiffs previously produced in this litigation (including detailed responses to contention interrogatories providing Plaintiffs' evidence supporting their claims), all deposition transcripts and expert reports. In contrast, it would be highly prejudicial to Plaintiffs—the non-defaulting parties—to require them to spend three years responding to additional (likely duplicative) written discovery, sit for additional depositions, and reopen costly and burdensome expert discovery. The Court has the power to prevent this prejudice (*Falk*, 739 F.2d at 463), and should do so here.

Instead, as Plaintiffs have proposed, discovery should be limited to information that has not previously been discovered (*i.e.* discovery from Irico), and it should be expedited. Irico should respond to Plaintiffs' outstanding written discovery (served upon Irico in 2008 and 2010) by January 19, 2021, produce responsive documents by May 31, 2021, and provide their percipient witnesses for deposition in June and July 2021. This should not be burdensome for Irico since they have had three years to investigate since their reappearance in this case and hence should know by now what information they have. Moreover, pursuant to this Court's Pretrial Order No. 1, dated April 4, 2008 (ECF No. 230), Irico and their counsel should have identified and preserved all relevant documents

and data in 2008.[6] In addition, Irico recently searched and reviewed their documents and data for jurisdictional discovery, which—given the nature of the FSIA analysis—overlaps substantially merits discovery. Notably, Irico's sworn jurisdictional discovery responses indicate that Irico has not preserved conspiracy-related evidence or the documents of its key players, and has no electronic sales data.[7] Furthermore, much of Irico's counsel's work could be done remotely. *See* ECF No. 5352 at 6–7 (order granting DPPs' motion to compel against Irico, concluding that "the burden of having these documents scanned and produced electronically would appear fairly manageable for Irico, whose offices and employees are present on-site. In contrast, the burden of flying from San Francisco to three different locations in China with at least one or two legal professionals conversant in reading Chinese documents and arranging for scanning would be extremely onerous for the DPPs."). Finally, to be clear, all of Plaintiffs' discovery presently at issue was served on Irico over ten years ago. Accordingly, the parties need not spend an additional three years to determine that Irico has little or no relevant information.

Finally, Irico fails to provide any support for its belated and vague claim that the Chinese State Secrets Law justifies the length of their proposed discovery period. Irico has only recently indicated that its present searches in new—and presumably unsearched—repositories would be impeded by the State Secrets Law and has not made any showing excusing it from the requirements of the Federal Rules of Civil Procedure, as courts in this District and elsewhere have required. *See,*

---

[6] *See Zubulake v. UBS Warburg LLC*, 229 F.R.D. 422, 432 (S.D.N.Y. 2004) ("Once a 'litigation hold' is in place, a party and her counsel must make certain that all sources of potentially relevant information are identified and placed 'on hold,' to the extent required in *Zubulake IV*. To do this, counsel must become fully familiar with her client's document retention policies, as well as the client's data retention architecture. This will invariably involve speaking with information technology personnel, who can explain system-wide backup procedures and the actual (as opposed to theoretical) implementation of the firm's recycling policy. It will also involve communicating with the 'key players' in the litigation, in order to understand how they stored information.").

[7] ECF Nos. 5653-1, Ex. 2 (no documents related to competitor meetings located in response to RFP No. 10); 5440-15, Ex. 39 (Irico's Third Supplemental Objections and Responses to IPPs' First Set of RFPs, Supp. Resp. to RFP No. 18 (describing search for responsive information and stating that current and former employees had "discarded" old computers and otherwise failed to retain documents from the relevant period)); 5440-6, Ex. 5 (Zhang Dep. at 84:11-86:15) (Irico's Rule 30(b)(6) witness testifying that Irico did not implement a litigation hold in accordance with this Court's Pretrial Order No. 1, and disclaimed any knowledge of Irico's obligation to do so).

*e.g., Autodesk, Inc. v. ZWCAD Software Co. Ltd.*, Case No. 5:14-cv-01409-EJD, 2015 WL 1928184, at *3–5 (N.D. Cal. Mar. 27, 2015) ("Chinese companies may not avoid producing documents in United States litigation by citing to broad concerns that liability may be imposed under 'unclear' or 'amorphous' Chinese laws"). Furthermore, Irico has already produced, or agreed to produce, during jurisdictional discovery various categories of documents and data—including contacts with competitors, sales and export data, and corporate history, structures and investments—without standing on any objections based on the Chinese State Secrets Law.

### B.    RELITIGATION OF ISSUES

As described above, and outlined in their own case management statement, Irico seeks to restart this litigation as though it froze in time during their absence. It did not. During Irico's absence from the case, many important phases of this litigation—all of which Irico had notice ofwere completed, including class certification and summary judgment.

#### 1.    Class Certification

The parties engaged in extensive discovery relating to class certification, including expert discovery, as described above. Irico received notice of this discovery and chose not to participate. Irico concedes that the Court certified an Indirect Purchaser Class against them, but disputes that the Court's order certifying a Direct Purchaser Class applies to them.

The Irico Defendants' position regarding certification of the Direct Purchaser Class ignores the orders in this MDL and the purposes of multidistrict litigation. First, the Court entered its Order Re: Class Certification with Respect to the Thomson and Mitsubishi Defendants—the remaining defendants at the time the motion was filed—in "All Direct Purchaser Actions." ECF No. 3902 (caption). Second, the Court had already related the *Crago et al. v. Mitsubishi Electric Corp. et al.* case to the MDL. Case No. 14-cv-02058-JST, ECF No. 27 (June 4, 2014). Third, the notice of motion and motion for class certification identified the Irico Defendants as co-conspirators, ECF No. 2969 at 2 n.1, was filed on ECF system, and was served on their former counsel Pillsbury, ECF No. 2970, providing the best possible notice to them in their absence. Fourth, DPPs disseminated Court-ordered litigated class notice which identified the "Defendants and alleged Co-Conspirators," including the two Irico Defendants and a third Irico entity. ECF No. 4330, Ex. A at 2. Fifth, the underlying policy

of MDLs, including *CRT*, counsels against relitigating class certification. The Judicial Panel on Multidistrict Litigation transferred the pending *CRT* actions to this District in February 2008 in order to:

> serve the convenience of the parties and witnesses and promote the just and efficient conduct of this litigation. These actions share factual questions relating to allegations that defendants – manufacturers of cathode ray tubes (CRTs) and products containing CRTs – conspired to fix prices of CRT products in violation of the Sherman Antitrust Act. Centralization under Section 1407 will eliminate duplicative discovery; ***prevent inconsistent pretrial rulings, especially with respect to class certification***; and conserve the resources of the parties, their counsel and the judiciary.

ECF No. 122 at 1 (Mar. 10, 2008) (emphasis added). Among the defendants identified in the Transfer Order: Irico Display Devices Co, Ltd. and Irico Group Corp. *Id.* at 6. Providing the Irico Defendants with another "bite at the apple" with respect to class certification would undermine the purposes of MDLs and promote the waste of judicial and party resources. Irico's assertion that this issue is undisputed is incorrect.

Further, Irico had notice of and the opportunity to oppose DPPs' initial, near-identical motion for class certification. *See* ECF Nos. 1674 (notice of motion and motion, certificate of service including Irico's former counsel for forwarding), 1681 (certificate of service re: errata to expert report also to Irico's former counsel). Hitachi and Samsung SDI opposed the motion. ECF Nos. 1920, 1921.[8] Irico did not, and therefore it missed the deadline. To be relieved from this failure Irico must show good cause and diligence consistent with Rule 16.

### 2.     Summary Judgment

Similarly, multiple summary judgment motions were fully briefed in the Indirect Purchaser Actions and the Direct Action Plaintiffs cases. All defendants, including the Irico Defendants, were required to file their summary judgment motions by November 7, 2014. ECF No. 2459. Irico failed to file any summary judgment motions and thus missed the deadline. The Court subsequently ruled on a wide range of issues, many of them relevant to Irico's potential defenses, prior to the scheduled Direct Action Plaintiff trials. *See, e.g.*, ECF Nos. 4733 (state law claims), 4742 (standing and direct

---

[8] The Court vacated the hearing and did not rule on this motion after DPPs reached separate settlements with Hitachi and Samsung SDI. *See* ECF Nos. 2302, 2430 at 5, 12.

purchaser rule), 4786 (withdrawal and statute of limitations), 4910 (FTAIA), 4937 (Defendant Thomson Consumer "all-CRT" conspiracy liability), 5105 (TDA Defendants), 5111 (Hitachi Defendants), 5119 (Panasonic Defendants), 5120 (Philips Defendants), 5128 (Mitsubishi Electric Defendants). Plaintiffs respectfully submit that it would be unlikely that the Court would reach "inconsistent pretrial rulings" on the same issues if presented again by the Irico Defendants. Therefore, the Court should not permit dispositive motions in the absence of a showing of good cause. *See* ECF No. 4261 at 1 ("[T]he Court recognizes that in rare instances, discovery conducted after the prior motions deadline, rulings on existing motions, or other case events may provide good cause for the filing of an additional motion.").

## IV.     STATEMENT REGARDING ALTERNATIVE DISPUTE RESOLUTION

Pursuant to Local Rule 16-10(d), requiring that subsequent case management statements "must report the parties' views about whether using some form of ADR would be appropriate[,]" Plaintiffs state that they are always willing to consider ADR or mediation.

## V.     JOINDER BY ROBERT BONSIGNORE, ECF NO. 5866

On November 25, 2020, Robert Bonsignore purported to join in the parties' Administrative Motion for a Subsequent Case Management Conference (ECF No. 5865) on behalf of certain "Other Repealer State ('ORS') subclass members." ECF No. 5866. Since filing the Joinder, Mr. Bonsignore has not contacted the parties to meet and confer regarding the joint Case Management Conference Statement required by Local Rule 16-10(d). The parties have not contacted Mr. Bonsignore since his clients are not parties to this litigation. The only pending matter before the Court relating to Mr. Bonsignore is IPPs' Motion to Strike and for Sanctions, ECF No. 5781, filed on July 7, 2020 and taken under submission on August 4, 2020 (ECF No. 5808).

## VI.     CONCLUSION

For these reasons, Plaintiffs respectfully request that the Court adopt their proposed schedule, submitted herewith.

/ / /

/ / /

/ / /

### Irico Defendants' Statement

Irico is prepared to move expeditiously and has no intention to relitigate decisions in this case that apply to Irico.  However, DPPs and IPPs (together, "Plaintiffs") do not wish to embrace the realities of the litigation status of this case as to Irico.  Plaintiffs' proposal to skip over essential, unfulfilled steps in the litigation process and proceed almost immediately to trial inaccurately represents the state of the DPP and IPP cases and ignores the reality of the issues that remain to be addressed.  Plaintiffs' proposal is both unworkable and unjust, and due process does not allow for Plaintiffs' approach.

In the hopes of avoiding the work that they have not yet done in this case, Plaintiffs resort to a familiar and previously-rejected refrain, i.e., that Irico's prior absence from this case can justify automatic, extraordinary relief, but this approach would subvert due process and deprive Irico of its right to defend the case.  Plaintiffs loudly allege delays by Irico.  But they conveniently ignore the fact that this Court had to *order* Plaintiffs, after six years of complete inaction on their part, to address their case against Irico in some manner.  Absent that order, this case might still be in stasis.  As a result of Plaintiffs' years of inaction, many of the "accomplishments" that they assert – and undoubtedly *wish* applied to Irico – either do not exist or apply exclusively to other defendants, not to Irico.

Three years ago, this Court set aside the default and recognized Irico's "right to present their meritorious defenses, particularly given [Irico's] lack of bad faith."  (Dkt. 5240 at 19.)   In light of this Court's ruling, Plaintiffs' argument that Irico should be required to move to set aside previous scheduling orders makes no sense.  The scheduling orders Plaintiffs reference were established prior to the Court's decision setting aside default and, indeed, formed much of the basis of the default that was set aside.  Under those scheduling orders, the *trial* in this case already would have occurred prior to the motion for default judgment and Irico, having not appeared, would have defaulted.  So it would be inconsistent with the Court's Order Setting Aside the Default to bind Irico to previously-issued and now irrelevant scheduling orders.  (Order Setting Aside Default, Dkt. 5240 at 18 (setting aside default based on the Ninth Circuit's strong preference that "[a] case

1  should, whenever possible, be decided on the merits.") (quoting *Falk v. Allen*, 739 F.2d 461, 463

2  (9th Cir. 1984)).)

3        Plaintiffs, in a further attempt to relitigate their Motion for Default Judgment, also now seek

4  to impose, retroactively, conditions on the Court's order setting aside the default.  But any such

5  conditions on the setting aside of a default uniformly are imposed at the same time default is set

6  aside.  *See Powerserve Int'l, Inc. v. Lavi*, 239 F.3d 508, 515 (2d Cir. 2001) ("*In determining*

7  *whether to exercise its discretion to set aside a default*, . . . a district court has inherent power to

8  impose a reasonable condition on the vacatur in order to avoid undue prejudice to the opposing

9  party.") (emphasis added); *see also* Wright & Miller, Federal Practice & Procedure § 2700 (noting

10  that "the imposition of conditions *as part of granting a Rule 55(c) motion* can be used to rectify

11  any prejudice suffered") (emphasis added).  Plaintiffs requested no such conditions in their

12  opposition to Irico's motion to set aside the default (other than the right to take jurisdictional

13  discovery, *see* Dkt. 5221 at 17-18). Moreover, the cases they cite are limited to conditions either

14  consented to by the defendant or carefully crafted to the specific facts at play in each default

15  motion, but in all cases in connection with the order setting aside default.  *See Falk*, 739 F.2d at

16  463 (affirming setting aside of default while applying condition suggested by the defaulting

17  defendant); *G Vincent Ltd. v. Dux Area Inc.*, No. C09-383RAJ, 2010 WL 11526894, at *3 (W.D.

18  Wash. July 29, 2010) (conditions applied while setting aside an entry of default); *In re Stevenson*,

19  519 B.R. 881 (D.D.C. 2014) (affirmed as a condition of avoiding default).  Plaintiffs now come

20  forward with arguments that the setting aside of the Default should have come with conditions that

21  limit Irico's rights to defend itself in the case.  But this would not be a condition on setting aside

22  default, it would be a denial of process that is not warranted.

23        Plaintiffs' proposed schedule suffers from three overarching failures.  First, Plaintiffs'

24  schedule grossly underestimates the undertaking necessary for Irico to respond to their broad

25  discovery requests, which took all other defendants well over two years to comply with.  Second,

26  Plaintiffs (particularly DPPs) rely on a fallacy to cut out class certification consideration, which the

27  DPPs have not obtained in the case involving Irico.  DPPs obtained class certification against a

28  single defendant (Mitsubishi) in a separate action that did not name Irico, and which Irico

Defendants would not have had an opportunity to test even if they had been active in the litigation throughout.  Additionally, IPPs have put forward new class representatives that warrant discovery to determine whether the class previously certified is sustainable or should be reconsidered or decertified.

Third, Plaintiffs would forego any expert discovery and would seek to bar Irico from filing any expert reports or challenging Plaintiffs' expert work.  No merits expert reports were filed in the DPP case involving Irico.  DPPs apparently would rely on their expert report against Mitsubishi (i.e., the case not naming Irico as a defendant), but DPPs had only just begun to exchange merits expert reports with Mitsubishi when that defendant settled the case.  Moreover, the relationship of Irico to IPPs' expert work, as to the class that had been certified, has never been examined.  Putting aside the fact that Irico cannot be bound by the actions of different defendants in a different case, work remains to be done to address both the DPPs' and IPPs' merits and damages claims and Irico Defendants' defenses in preparation for trial.

Irico agrees that it is important (and sensible) to ensure that the case going forward does not re-litigate issues that have been resolved as to the Irico defendants.  Irico's scheduling proposal was crafted with this goal in mind and anticipates undertaking only those elements of the case that are not settled.   Due process considerations mandate that Irico should be afforded the opportunity to propound nonduplicative discovery on Plaintiffs, test DPPs' purported class, consider IPPs' new class representatives, prepare experts for trial through an exchange of merits reports, and narrow the potential issues for trial through dispositive motions on matters specific to Irico's defenses.  None of this would re-tread old ground, and Plaintiffs' apparent fatigue over this case does not justify elimination of required process.

### A.  Background

The history of this litigation is well-known to the Court, so Irico Defendants provide only a brief summary of events relating specifically to Irico.  This multidistrict litigation proceeding, originally filed in 2007, arises from alleged antitrust violations by more than 30 defendants relating to a purported conspiracy to fix the prices of cathode ray tubes ("CRTs").  Irico Defendants first appeared in the case in June 2008, represented by Pillsbury Winthrop Shaw Pittman LLP

14

1    ("Pillsbury").  (Dkt. 308.)  Irico joined motions to dismiss the DPP and IPP complaints filed on

2    May 18, 2009 (Dkt. 479), which the Court denied in large part on March 30, 2010 (Dkt. 665).  Irico

3    instructed Pillsbury to cease its representation in May 2009, and Pillsbury formally withdrew as

4    counsel on June 24, 2010.  (Dkt. 732 at 1.)

5           Neither DPPs nor IPPs prosecuted their claims against Irico, or took any other action

6    whatsoever, for the next six years.  Plaintiffs did not file motions to compel any discovery or take

7    other affirmative actions against Irico.  On June 28, 2016, the Court ordered any plaintiffs with

8    pending affirmative claims against Irico to advise the Court whether Irico had been served and

9    whether plaintiffs intended to proceed with a case against Irico.  (Dkt 4694 at 2.)  DPPs and IPPs

10   filed their responses on July 5, 2016 (Dkt. 4705, 4706), and defaults were entered against Irico on

11   July 22, 2016 (Dkt. 4727, 4729).  On August 3, 2017, DPPs applied for a default judgment against

12   Irico.  (Dkt. 5183.)  Irico reappeared at that point through its current counsel and filed an

13   opposition to DPPs' application along with a motion to set aside the entry of default on October 25,

14   2017.  (Dkt. 5214, 5215.)  On February 1, 2018, the Court granted Irico's motion to set aside the

15   entry of default, holding that Irico Defendants had the "right to present their meritorious defenses,

16   particularly given [Irico] Defendants' lack of bad faith" and denied DPPs' application for default

17   judgment as moot.  (Dkt. 5240 at 19.)  On April 6, 2018, the Court entered a stipulated order

18   vacating the entry of default against Irico in the IPP action.  (Dkt. 5271.)

19          Following the Court's orders setting aside the entries of default, the parties engaged in

20   jurisdictional discovery and Irico Defendants each filed motions to dismiss the DPP and IPP

21   complaints under the Foreign Sovereign Immunities Act ("FSIA") on July 18, 2020 (Dkt. 5312,

22   5313), which were amended and refiled on March 19, 2019 (Dkt. 5409, 5410, 5411, 5412).  On

23   October 28, 2019, the Court ruled that Irico Defendants were not immune from suit under the

24   FSIA. (Dkt. 5637.)  Irico appealed that ruling to the Ninth Circuit on November 22, 2019 (Dkt.

25   5650), and the Ninth Circuit granted voluntary dismissal of the appeal on October 27, 2020 (Dkt.

26   5861), returning the mandate to this Court for further proceedings.  Irico filed answers to the

27   operative DPP and IPP complaints on December 18, 2020.

28

## B. Discovery

Irico's proposed schedule is not based on Irico's attempt to seek duplicative discovery as Plaintiffs suggest.  Plaintiffs have propounded broad discovery requests on Irico Defendants, covering the full sweep of discovery demanded of other defendants, including three sets of interrogatories and five sets of requests for production in total from both Plaintiff groups.  These requests were recently re-served on Irico and go well beyond the documents and information that Irico searched for and produced during jurisdictional discovery.  Irico Defendants have located and gathered preliminary information on archive repositories of hard copy documents that are potentially responsive to Plaintiffs' discovery requests.  These hard copy document archives, which are all located at Irico Defendants' facilities in China, written in Chinese, and consist of millions of pages in total, will need to be searched, evaluated for responsiveness, relevant portions collected and scanned, and then produced.  Particularly given the complications of COVID-19 requiring extra safety precautions and making U.S.-based attorney travel to oversee this process infeasible for the near future, this massive undertaking and other discovery cannot be completed in just a few months as Plaintiffs propose.  Plaintiff's attempts to wave off the complications of COVID-19 as "dragging out" the proceedings, given the reality of these logistics, is particularly striking.  Indeed, Plaintiffs fought against Irico's invitation to inspect Irico's files in lieu of production during the jurisdictional discovery phase in 2018, and we seriously doubt they would be interested in such an offer at this time.

Given that Plaintiffs' outstanding discovery requests required over 24 months for other defendants to comply with—*not* during a global pandemic—the twelve months proposed in Irico's schedule is ambitious in all respects and appropriately reflects the steps Irico Defendants must take to identify and produce responsive materials to Plaintiffs.  (*See* Dkt. 590 at 2 (stay on non-deposition discovery from other defendants ended March 8, 2010); Dkt. 1008 at 2-3 (defendants reporting at prior case management conference that document productions would be "substantially complete" by the end of 2011); Dkt. 1092 at 4 (Special Master report recommending delaying the close of discovery due to the "large volume of necessary discovery"); Dkt. 1127 at 2 (scheduling order setting close of fact discovery for Aug. 1, 2013).)

1    In addition to discovery from Irico Defendants, Irico is entitled to seek unique discovery

2    from Plaintiffs relevant to the merits of Plaintiffs' claims or Irico's defenses.  Irico recognizes that

3    significant discovery has been taken previously of Plaintiffs by other defendants that have since

4    settled the claims against them and intends to seek only nonduplicative discovery relevant to the

5    claims against Irico Defendants.  Ironically, while Plaintiffs insist that the discovery period should

6    be reopened to allow Plaintiffs to take extensive discovery of Irico Defendants, they argue at the

7    same time that Irico should not be allowed to conduct any discovery of Plaintiffs (even non-

8    duplicative discovery) because fact discovery "closed" in 2014 and 2016 for the IPP and DPP

9    actions, respectively.  Plaintiffs provide no rationale for this uneven distinction.  Irico agrees that

10   any new discovery should not be redundant to that already taken, including by other defendants,

11   but this standard must allow for reciprocal discovery as well.  And far from giving Irico *carte*

12   *blanche* to propound discovery requests on Plaintiffs for three years as insinuated by Plaintiffs'

13   statement, Irico's proposed schedule simply lays out a logical phased approach to first complete

14   document productions and interrogatory responses in less than a year from now, followed by

15   discovery related specifically to class certification and then, depending on the outcome of class

16   certification, to merits experts.  This approach makes good sense given that information produced

17   in discovery will inform class certification issues, and the result of class certification will

18   fundamentally determine the scope of merits and damages expert reports and related discovery.

19       **C.  Class Actions and Certification**

20       The status of the IPP and the DPP cases warrants separate discussion as relates to class

21   certification.  Plaintiffs statement often conflates the issues relevant to each group of plaintiffs, as

22   well as to individual defendants.  This tactic obfuscates the failings of their arguments.

23       **1.  DPP Class**

24       Contrary to DPP's position, there is no certified DPP class in a case in which the Irico

25   entities are defendants.  DPPs never obtained class certification against Irico or any other defendant

26   in the case filed against Irico.  That is not disputed.  DPPs are attempting to rely on Judge Conti's

27   grant of class certification as to Mitsubishi obtained in a separate case in which DPPs filed a

28   complaint naming only the Mitsubishi and Thomson entities as defendants.  (*See* Direct Purchaser

17

1    Plaintiffs' Complaint Against Mitsubishi and Thompson, Dkt. 1 (14-cv-0258-SC) at ¶¶ 17-24

2    (defining "Defendants" as only certain Mitsubishi and Thomson entities); Motion for Class

3    Certification with Respect to the Mitsubishi and Thomson Defendants, Dkt. 2969 ("This Document

4    Relates to: *Crago, d/b/a Dash Computers, Inc.  v. Mitsubishi Electric Corporation, et al.,* Case No.

5    14-cv-0258 (SC)" and "[DPPs] Notice of Motion and Motion for Class Certification with Respect

6    to the Thomson and Mitsubishi Defendants").)  But Irico was not a party to that case, and the

7    decision did not relate to Irico.

8            The DPPs' proffered expert in the Mitsubishi case, Jeffrey Leitzinger, prepared an expert

9    report specific to Mitsubishi in which all other companies named as defendants in the main DPP

10   action were mentioned only as "co-conspirators."[9]  (*See* Dkt. 3902 at 4, 30.)  Judge Conti's order

11   further reinforced the limited nature of the class grant as applying only to that case and those

12   defendants.  (*See* Dkt. 3902 at 1 ("Now before the Court is a motion by the Direct Purchaser

13   Plaintiffs ("DPPs") for Class Certification with respect to the Defendants Mitsubishi and

14   Thomson"); 2 ("As explained below, the Court now GRANTS DPPs motion for class certification

15   with respect to Mitsubishi"); 50 ("Therefore, the Court now GRANTS the motion for class

16   certification against remaining Defendant Mitsubishi").)  DPPs invite the Court to run afoul of the

17   Supreme Court's well-established prohibition against non-party preclusion by suggesting the Court

18   bind Irico to a class certification decision in an action in which it was not a named defendant. *See*

19   *Taylor v. Sturgell,* 553 U.S. 880, 892-893 (2008).

20           Moreover, in this case in which Irico was named as a defendant,  DPPs asserted in their

21   motion for class certification (that was never decided) that that there were only two defendant

22   groups remaining at issue relevant to the class certification motion: Samsung SDI and Hitachi.

23   (*See* Memorandum of Points and Authorities, Dkt. 1731 at 3 ("Finally, only two family groups of

24   Defendants remain: Samsung and Hitachi. All other Defendants have settled.").)[10]  Thus, Plaintiffs

25   suggestion that Irico had notice and an opportunity to oppose the motion for class certification is

26

27   [9] Notably, neither the Thompson nor Mitsubishi defendants submitted an expert report in
     opposition to DPP's motion for class certification.

28   [10] Yet another indication that Plaintiffs literally had forgotten about the Irico Defendants until the
     Court's 2016 Order that plaintiffs take some action with respect to the Irico Defendants.

1  odd given that DPPs themselves told the Court that Irico was not relevant to that motion.  In any

2  event, class certification was never granted in this case.  DPPs should not be permitted to re-invent

3  the history of their lack of diligence in prosecuting a case against the Irico Defendants.  Finally, if

4  the Court chooses to accept the Plaintiffs' argument that a failure to take action under a previous

5  scheduling order precludes a party from taking such an action now, Plaintiffs' Statement at 9-10,

6  then DPPs likewise should be prohibited from seeking class certification as to the Irico Defendants

7  as all supposed deadlines for filing class certification have passed.

8      The Irico Defendants respectfully submit that the Court should reject DPPs' efforts at

9  avoiding their burden to seek class certification and that any schedule must include the time

10  necessary to allow DPPs to move for class certification, if they so choose, and for the Irico

11  Defendants to oppose that motion, including conducting expert discovery.  This is particularly

12  relevant as the Irico Defendants, unlike every other defendant, did not make "CRT Products" that

13  are the basis of DPP claims and which form the basis for DPPs' purported standing.  The Irico

14  Defendants' proposed schedule below, *infra* § E, reflects the time needed for the expeditious class

15  certification briefing, expert reports and related discovery, oral argument, and a decision by the

16  Court.  Of course, if DPPs choose not to move to certify a class against the Irico Defendants, the

17  schedule can be adjusted accordingly.

18          **2.  IPP Class**

19      The Irico Defendants agree that Judge Conti granted class certification as to 22 state classes

20  in the instant IPP action on September 24, 2013.  IPPs, however, have since substituted class

21  representatives for four of these states in the Fifth Consolidated Amended Complaint (ECF No.

22  5589), and the scope of IPP representation as to the remaining states is not certain.  The Irico

23  Defendants note, and IPPs appear to agree, that discovery from the newly named class

24  representatives is appropriate, and they also have accounted for this time in their proposed

25  schedule.  *See infra* § E.

26      The Irico Defendants cannot predict the outcome of the additional discovery involving

27  purported IPP class representatives and in any event reserve all rights as to the purported IPP

28

classes, including moving for reconsideration or decertification of some or all of the currently certified classes should circumstances warrant such a motion.

### D. Other Motions and Expert Procedures

Following discovery, Irico anticipates that it may file additional dispositive motions on factual and legal issues specific to Irico Defendants. Plaintiffs' argument to restrict dispositive motions rests on the notion that Irico would file duplicative motions to those already decided in the IPP and Direct Action Plaintiff actions, which is not accurate. Any dispositive motions filed by Irico would be limited to issues or facts unique to Irico Defendants and issues not already decided by prior motions practice. In addition, Irico Defendants should have the opportunity to respond to any merits expert reports submitted by Plaintiffs, to adduce unique expert discovery, and to submit reports for its own experts who may be called to testify at trial while affording Plaintiffs the right to conduct discovery of Irico experts.

In the case of DPPs, no merits expert reports were ever served on Irico Defendants and, as such, there is no colorable argument that the litigation could proceed immediately to trial while skipping expert procedures and discovery. Once again, DPPs' only merit-related expert reports related to only the Mitsubishi defendants—under a different complaint and case number— and were never served upon Irico. Mitsubishi settled the case before filing responsive reports or (as best Irico Defendants can tell) taking any expert-related discovery. (*See* Dkt. 5099 at ¶ 7 (noting that DPP "served four expert reports in [the Mitsubishi] action on September 1, 2016," and that Mitsubishi's own expert reports "would have been due . . . less than two weeks after the parties reached an agreement in principle to settle the case").).

In the case of IPPs, Irico acknowledges that IPPs completed their exchange of merits expert reports and discovery with other defendants in the case. Depending on the outcome of any possible class certification issues or challenges, Irico should at least be permitted to examine issues unique to Irico through targeted discovery and submit a responsive merits report from a testifying trial expert. Irico's proposed schedule reflects sufficient time to complete an exchange of merits expert reports and related expert discovery.

**E.  Scheduling**

Irico's proposed schedule includes time to complete only the essential steps to prepare this case for trial, including: (1) collecting, reviewing, and producing merits discovery from the Irico Defendants based on Plaintiffs' copious requests, and any necessary discovery from Plaintiffs, *see supra* § B; (2) resolving class certification issues, *see supra* § C; (3) expert reports and discovery; and (4) any additional dispositive motions, *see supra* § D.  As discussed above, none of these steps have been resolved as to the Irico Defendants.  Finally, given the necessary steps to get to pre-trial, Irico Defendants believe it is premature to set a trial date at this time; setting of a trial date is best left to a future case management conference.

Irico Defendants propose the following schedule:

| Event | Set by | Date |
|---|---|---|
| Case Management Conference | Dkt. 5867 | Jan. 12, 2021 |
| Irico's initial written responses to discovery due | Proposed by Irico | Jan. 19, 2021 |
| Irico to serve written discovery on Plaintiffs | Proposed by Irico | Mar. 19, 2021 |
| Plaintiffs to provide initial written responses to discovery | 30 days after service | Apr. 18, 2021 |
| Document discovery completed (all parties) | 12 months after Irico answers filed | Dec. 17, 2021 |
| Final responses to interrogatories (all parties) and completion of initial fact discovery | 12 months after Irico answers filed | Dec. 17, 2021 |
| Fact depositions commence | 30 days after substantial completion of discovery | Jan. 16, 2022 |
| Plaintiffs' assertion of class certification, through motion or otherwise, with supporting expert reports and exhibits | No earlier than 90 days after substantial completion of document discovery and interrogatory responses | Mar. 17, 2022 |
| Plaintiffs to make class certification expert available for deposition | 45-60 days after class certification motions filed | May 1-16, 2022 |
| Irico opposition to class certification and opposing expert reports | 90 days after class certification motions filed | June 15, 2022 |

JOINT CASE MANAGEMENT STATEMENT; Master File No. 07-CV-5944-JST

| Event | Set by | Date |
|---|---|---|
| Irico to make opposition class certification expert available for deposition | 20-30 days after class certification oppositions filed | July 5-15, 2022 |
| Plaintiffs replies on class certification and rebuttal expert reports | 45 days after class certification oppositions filed | July 30, 2022 |
| Hearing on class certification motion | 14 days after class certification replies filed, or later date set by the Court | Aug. 13, 2022 |
| Decision on class certification | As determined by the Court | TBD |
| Fact depositions conclude | 240 days after depositions commence | Sept. 13, 2022 |
| Discovery status conference to discuss any outstanding issues | 7 days after decision on class certification | TBD |
| Merit expert reports and expert discovery period | 6-month period following decision on class certification, specific deadlines TBD | TBD |
| *Daubert* motions and dispositive motions period | 6-month period following conclusion of merit expert period, specific deadlines TBD | TBD |
| Close of fact and expert discovery | 60 days after rebuttal merits expert reports served | TBD |
| Simultaneous exchange of exhibit lists, deposition designations and witness lists | 30 days after hearing on dispositive motions | TBD |
| Motions in limine period | 8-week period following decision on dispositive motions, specific deadlines TBD | TBD |
| Final pretrial conference | 7 days after hearings on motions in limine | TBD |
| Trial | 60 days after final pretrial conference | TBD |

## F.  Settlement and ADR

Irico is willing to consider options for mediation with Plaintiffs.

1    Dated: January 5, 2020                    Respectfully submitted,

2                                              /s/ R. Alexander Saveri

3                                              Guido Saveri (22349)
                                               R. Alexander Saveri (173102)
                                               Geoffrey C. Rushing (126910)
4                                              Cadio Zirpoli (179108)
                                               Matthew D. Heaphy (227224)
5                                              SAVERI & SAVERI, INC.
                                               706 Sansome Street
6                                              San Francisco, CA 94111
                                               Telephone: (415) 217-6810
7                                              Facsimile: (415) 217-6813

8                                              Lead Counsel for Direct Purchaser Plaintiffs

9

10   Dated: January 5, 2020                    /s/ Mario N. Alioto

11                                             Mario N. Alioto (56433)
                                               Joseph M. Patane (72202)
12                                             Lauren C. Capurro (241151)
                                               TRUMP, ALIOTO, TRUMP & PRESCOTT
13                                             LLP
                                               2280 Union Street
14                                             San Francisco, CA 94123
                                               Telephone: 415-563-7200
15                                             Facsimile: 415- 346-0679
                                               Email: malioto@tatp.com
16                                             jpatane@tatp.com
                                               laurenrussell@tatp.com

17                                             Lead Counsel for the
                                               Indirect Purchaser Plaintiffs
18

19   Dated: January 5, 2020                    /s/ John Taladay
20                                             BAKER BOTTS L.L.P.
                                               John M. Taladay
21                                             Thomas E. Carter
                                               Andrew L. Lucarelli
22                                             700 K Street, N.W.
                                               Washington, D.C. 20001
23                                             202.639.7700
                                               202.639.7890 (fax)
24                                             Email: john.taladay@bakerbotts.com
                                                      tom.carter@bakerbotts.com
25                                                    drew.lucarelli@bakerbotts.com

26                                             Jonathan Shapiro
                                               101 California Street, Suite 3600
27                                             San Francisco, CA 94111
                                               415.291.6200
28                                             415.291.6300 (fax)

1

Email: jonathan.shapiro@bakerbotts.com

2

*Attorneys for Defendants Irico Group Corp.
and Irico Display Devices Co., Ltd.*

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**ATTESTATION**

I, R. Alexander Saveri, hereby attest, pursuant to United States District Court, Northern District of California Civil Local Rule 5-1(i)(3), that concurrence in the filing of this document has been obtained from the other Signatory hereto.

By:   */s/ R. Alexander Saveri*
      R. Alexander Saveri

# EXHIBIT A

CRT – Direct Purchaser Plaintiffs' and Indirect Purchaser Plaintiffs' Proposed Schedule for Irico Defendants

| Category | Event | Set By | Date |
|---|---|---|---|
| Pleadings | Irico answers due | Stipulation | Friday, December 18, 2021 |
| Case Management | Joint CMC Statement due | ECF No. 5867 | Tuesday, January 5, 2021 |
| Case Management | Case Management Conference | ECF No. 5867 | Tuesday, January 12, 2021 at 2:00pm |
| Discovery | Irico responds to outstanding discovery | Irico | Tuesday, January 19, 2021 |
| Discovery | Irico to serve written discovery on IPPs' four new class representatives only | IPPs | Friday, January 29, 2021 |
| Discovery | IPPs to provide written responses to discovery | IPPs (30 days after service) | March 1, 2021 |
| Discovery | Document discovery completed (all parties) | Proposed by Plaintiffs (four and a half months after CMC) | Monday, May 31, 2021 |
| Discovery | Fact depositions completed (all parties) | Proposed by Plaintiffs (six and a half months after CMC) | Friday, July 30, 2021 |
| Discovery | Fact discovery cutoff | Proposed by Plaintiffs (seven and a half months after CMC) | Monday, August 30, 2021 |
| Pretrial | Simultaneous exchange of exhibit lists, deposition designations and witness lists | Proposed by Plaintiffs; JST SO re CJTs s. D: at least 21 days prior to PTC | Friday, September 10, 2021 |
| Pretrial | First simultaneous exchange of jury instructions and special verdict forms | Proposed by Plaintiffs; JST SO re CJTs s. F.4. requires the parties to submit an agreed-upon set of jury instructions | Friday, September 17, 2021 |
| Pretrial | Plaintiffs and Defendants serve counter-designations and objections to opposing parties' exhibits, depositions and witnesses | Proposed by Plaintiffs | Friday, September 24, 2021 |

CRT – Direct Purchaser Plaintiffs' and Indirect Purchaser Plaintiffs' Proposed Schedule for Irico Defendants

| Category | Event | Set By | Date |
|---|---|---|---|
| Pretrial | Second simultaneous exchange of jury instructions and special verdict forms | Proposed by Plaintiffs | Tuesday, September 28, 2021 |
| Pretrial | Plaintiffs and Defendants serve objections to opposing parties' counter-designations | Proposed by Plaintiffs | Friday, October 1, 2021 |
| Pretrial | Last day for parties to exchange final exhibits, deposition designations and witness lists | JST SO re CJTs s. D: at least 21 days prior to PTC | Friday, October 8, 2021 |
| Pretrial | M&C re settlement, Pretrial Order, pretrial disclosures, contested issues | JST SO re CJTs s. A: 21 days prior to PTC (and one month after close of discovery) | Friday, October 8, 2021 |
| Pretrial | Motions in Limine | JST SO re CJTs s. E: at least 10 days prior to PTC | Friday, October 15, 2021 |
| Pretrial | File Pretrial Statement and Order | JST SO re CJTs s. B: at least 7 days prior to PTC | Friday, October 22, 2021 |
| Pretrial | File Jury Materials | JST SO re CJTs s. F: at least 7 days prior to PTC | Friday, October 22, 2021 |
| Pretrial | MIL Oppositions (replies not permitted) | JST SO re CJTs s. E: at least 3 days prior to PTC | Monday, October 25, 2021 |
| Pretrial | MIL Hearing | JST SO re CJTs s. E: At PTC or as directed | Friday, October 29, 2021 at 1:30pm |
| Pretrial | Final Pretrial Conference | Proposed by Plaintiffs | Friday, October 29, 2021 at 1:30pm |
| Pretrial | Trial Briefs Due (optional) | JST SO re CJTs s. G: 7 days prior to trial | Monday, November 8, 2021 |
| Pretrial | Trial Exhibits Due to Court | JST SO re CJTs s. D.4: 7 days prior to trial | Monday, November 8, 2021 |
| First Trial | First Trial Begins | Judge Tigar (2.5 weeks after PTC) | Monday, November 15, 2021 |
| Second Trial | Second Trial Begins | Judge Tigar | TBD |

"JST SO re CJTs" refers to Judge Tigar's Standing Order for Civil Jury Trials (Aug. 26, 2019), available at: https://www.cand.uscourts.gov/wp-content/uploads/judges/tigar-jst/JST-Jury-Trial-Standing-Order.pdf