UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA     **ORIGINAL**

Before The Honorable JON S. TIGAR, Judge

In re: CATHODE RAY TUBE (CRT)  )      NO. C 07-05944 JST
ANTITRUST LITIGATION           )
                               )      MDL No. 1917
_____)
                                      Pages 1 - 19

**Show Cause Hearing**

Oakland, California
Wednesday, March 3, 2021

**REPORTER'S TRANSCRIPT OF ZOOM WEBINAR PROCEEDINGS**

APPEARANCES (VIA ZOOM WEBINAR):

| | |
|---|---|
| For Plaintiffs: | Becker Vissepo, PSC |
| | 1225 Ponce de Leon, Suite 1102 |
| | San Juan, Puerto Rico  00907 |
| BY: | JANE BECKER WHITAKER, ATTORNEY AT LAW |
| | |
| | Shindler, Anderson, Goplerud & |
| |  Weese, P.C. |
| | 5015 Grand Ridge Drive, Suite 100 |
| | West Des Moines, Iowa  50265 |
| BY: | J. BARTON GOPLERUD, ATTORNEY AT LAW |
| | |
| For Defendant Phillips North America, LLC: | Baker Botts LLP |
| | 1001 Page Mill Road, Suite 200 |
| | Palo Alto, California  94304 |
| BY: | ERIK T. KOONS, |
| | JOHN M. TALADY, ATTORNEYS AT LAW |

(APPEARANCES CONTINUED NEXT PAGE)

Reported By:       Raynee H. Mercado, CSR No. 8258

Proceedings reported by electronic/mechanical stenography; transcript produced by computer-aided transcription.

```
                    A P P E A R A N C E S  (CONT'D.)


     For Defendant Hitachi    Morrison & Foerster
     America, Ltd.:           425 Market Street
                              San Francisco, California  94105
                         BY:  ELIOT A. ADELSON, ATTORNEY AT LAW


     For Defendant LG         Eimer Stahl LLP
     Electronics USA, Inc.:   224 South Michigan Avenue
                              Suite 1100
                              Chicago, Illinois 60604
                         BY:  NATHAN P. EIMER, ATTORNEY AT LAW



     For Defendant Tatung     Gibson, Dunn & Crutcher LLP
     Company of America,      555 Mission Street, Suite 3000
     Inc.:                    San Francisco, California  94105-0921
                         BY:  RACHEL S. BRASS, ATTORNEY AT LAW


                                --o0o--
```

```
 1   Wednesday, March 3, 2021                          2:01 p.m.
 2                        P R O C E E D I N G S
 3                          (Zoom Webinar)
 4            THE CLERK:  Your Honor, now calling civil matter
 5   07-5944, MDL number 1917, In Re: Cathode Ray Tube Antitrust
 6   Litigation.
 7       If counsel could please state their appearances for the
 8   record -- pardon me -- starting with counsel for plaintiffs.
 9            MS. BECKER WHITAKER:  Jane Becker Whitaker for
10   plaintiff, the government of Puerto Rico.
11            MR. GOPLERUD:  Bart Goplerud for plaintiff government
12   of Puerto Rico.
13            MR. KOONS:  This is Erik Koons from Baker Botts on
14   behalf of Phillips North America, LLC.  And with me is my
15   partner John Taladay.
16            MR. EIMER:  Good afternoon, Your Honor.  Nate Eimer,
17   Eimer Stahl, on behalf of LG Electronics, USA.
18            MR. ADELSON:  Hi.  Good afternoon.  Eliot Adelson for
19   Hitachi America.
20            MS. BRASS:  And Rachel Brass from Gibson Dunn &
21   Crutcher, specially appearing only for Tatung Company of
22   America.
23            THE COURT:  All right.  It's sometimes hard to tell
24   with Zoom, but I think I've got an appearance from everybody.
25       Let's go ahead and get started.
```

1     Today's hearing is a hearing on an order to show cause
2  that I issued with regard to unserved defendants in
3  Puerto Rico's antitrust complaint.
4     Since I issued that order, the defendants have also filed
5  a case management statement requesting that I address two
6  other issues.  One of them is ministerial, really, and that is
7  just making sure that notices of dismissal that Puerto Rico
8  filed in this case are also reflected in case 20CV5606.  We
9  can address that I think in a -- just a minute or two.
10    And then they also asked that the court consider setting
11 deadlines for -- or schedules for motions to dismiss
12 Puerto Rico's complaint that various defendants might want to
13 file.
14    So what I'll do this afternoon is I'll just take argument
15 from anybody who wants to make it concerning the order to show
16 cause, and then I'll take that question under submission.  I
17 would expect to get a written order out very shortly.
18    And after I've taken argument on that, then we can address
19 these other two administrative issues.
20    Mr. Koons, it looked like you wanted to speak.
21         **MR. KOONS:**  Yes.  I'm sorry.  I didn't mean to step
22 on your sentence, Your Honor.
23    As I understand it -- I don't know if Your Honor saw
24 the -- saw Puerto Rico's -- styled as a joint case management
25 statement, but it was their individual statement filed last

1  night.
2      In that statement, they -- they say with respect to the
3  deadline to answer plaintiff's complaint that they agree with
4  defendants' proposal.  In defendants' proposal, we had -- we
5  had said that it was appropriate now that the deadline for
6  service for Puerto Rico has passed to set that 60-day deadline
7  now.
8      And I guess, the defendants' assumption was because
9  Puerto Rico said it is now time to start the clock on those
10 motions to dismiss, that they are no longer intending to serve
11 any unserved defendants and, therefore, the show cause may be
12 moot.
13         **THE COURT:**  I see.  I did see that statement.
14     But let me go ahead and hear from Puerto Rico --
15         **MS. BECKER WHITAKER:**  Okay.
16         **THE COURT:**  -- about where it thinks it is with
17 regard to the order to show cause, and then we can see what
18 happens after that.
19     Ms. Whitaker?
20         **MS. BECKER WHITAKER:**  Yeah.  This -- Your Honor, this
21 may be the last time, but we're in complete agreement with
22 defendants with respect to this.
23     And what I was going to say regarding what you were saying
24 before is that pretty much we think that the -- the order to
25 show cause is moot because of the notices of dismissal and

1  what you were discussing about housekeeping kind of dovetails
2  into that.
3      And, essentially, we think that all that's necessary to do
4  today would be to set the deadlines for the motions to
5  dismiss, their options, and potential replies.
6      **THE COURT:**  Thanks, Ms. Whitaker.
7      I am not sure that I'm following the bouncing ball with
8  regard to each defendant that might potentially be at issue.
9      So let me tell you -- I did see the notices of dismissal.
10 They are at ECF5887.  That's where there are 31 defendants
11 identified, and then there's an additional defendant at
12 ECF5909.
13     So it's my -- my notes tell me -- and they may or may not
14 be correct that -- there are four defendants at issue today
15 and perhaps they are subsumed in one of those notices of
16 dismissal I just identified or they're otherwise not at issue.
17     Of the four defendants I have in my notes, three of them
18 are Toshiba entities, and one of them is an LG entity.
19     The three Toshiba entities are Toshiba America, Inc.,
20 paren, USA, closed paren; Toshiba America Consumer Products,
21 LLC, paren, USA, closed paren; Toshiba America Info Systems,
22 Inc., paren, USA, closed paren.
23     And the LG entity is called LG Phillips Displays, comma,
24 LTD, all caps, paren, Hong Kong, closed paren.
25     So I guess my question for you is what do you -- what is

1   the status of those defendants in your litigation?
2           **MS. BECKER WHITAKER:**  Well, with respect to them,
3   we -- given that we have not been able to serve them as to
4   now, we will be filing notices of dismissal with respect to
5   them as well.
6           **THE COURT:**  I see.  So as -- as of this moment, while
7   we're conducting this hearing, those defendants are still
8   named in the case and not served so they're subject to the
9   court's order to show 'cause, but it would be your intent to
10  dismiss them.
11          **MS. BECKER WHITAKER:**  That is correct.
12          **THE COURT:**  For ease of administration and just to
13  make sure that we don't have a hanging thread, I would like to
14  simply just dismiss them without prejudice today.
15          **MR. KOONS:**  That makes perfect sense.  Excuse me.
16          **THE COURT:**  All right.  Then perhaps what the record
17  can reflect -- I don't need to even issue an order, then,
18  because this matter is no longer the subject of dispute.  And
19  that is I can simply order from the bench right now that those
20  four defendants --
21      Ms. Mercado, were you able to hear me clearly with respect
22  to those defendants?
23          **THE COURT REPORTER:**  Yes, Your Honor, I was.  Thank
24  you.
25          **THE COURT:**  Okay.  Very good.

So then, Ms. Lee, you can get those names from Ms. Mercado.

The minutes will reflect those defendants are -- that plaintiff has dismissed those defendants without prejudice in open court. And in light of that fact, the court determines that it's prior order to show cause is now moot.

**MR. KOONS:** Your Honor, I have -- this is Eric Koons -- one -- one other housekeeping thing. There are some defendants who are named in the Puerto Rico complaint who don't fall on your list of unserved or attempted to be served.

I don't have all of those names in front of Your Honor, but I do -- if it would be easy for you, we could supply either a list to you or a proposed order. And -- and more specifically, what -- what I'm trying to say is that given the passage of the February 3rd deadline that you'd set in your show cause order, it's our position that any defendant named in the Puerto Rico complaint who's not been served would similarly or should similarly be dismissed along the lines of those four that you had just identified.

**THE COURT:** Approximately how many such defendants are there?

**MR. KOONS:** Your Honor, it's -- don't hold me exactly to it, but I'd say approximately five or six defendants. One of them, I believe, is the Tatung entity, and -- and there are some others.

1       **THE COURT:** Okay.

2       **MR. KOONS:** -- easily get that list to you. And I
3  don't think there's -- there's a dispute that they have not
4  been served and, therefore, I think they would, you know, fall
5  in the same category as those who have been dismissed openly
6  in court today.

7       **THE COURT:** Well, I jumped the gun because it had
8  been my intention -- I got so excited about the prospect of
9  actually mooting a pending matter in dispute, that after
10 Ms. Whitaker told me she was going to voluntarily dismiss
11 those defendants, I forgot to ask the other persons present
12 whether my list was complete.

13      So perhaps I could suggest if Ms. Whitaker agrees that
14 Mr. Koons could circulate a proposed stipulation to
15 Ms. Whitaker and the other persons -- the other counsel
16 present in this hearing, and that by, say, a week from today,
17 either counsel would file -- and I say "counsel" loosely
18 because it may not need to be the subject of a stipulation.
19 It could be simply that Puerto Rico files a dismissal.

20      But one week from today, somebody will do something that
21 will cause those additional defendants to be identified and
22 dismissed. And if that has not happened, then Mr. Koons, also
23 by that day, you should file something saying we ask that the
24 court restore the order to show cause to calendar because
25 we're having a dispute either about the identity of the

1  defendants at issue or whether those defendants are properly
2  dismissed.
3      And I -- of course, I could ask Ms. Whitaker what her
4  position is about each of these defendants.  But it seems to
5  me the more efficient course will be for you and she to just
6  have that discussion offline and make sure that you're both on
7  the same page.
8      Ms. Whitaker, does that sound right to you also?
9          **MS. BECKER WHITAKER:**  It does.
10         **THE COURT:**  Okay.  So let's do that.
11     And then it sound like -- it sounds very likely that that
12 will put the order to show cause to bed.
13     So then that brings us to the notices of dismissal.  The
14 contention in defendants' case management statement was that
15 the defendants dismissed in the two documents I identified
16 were dismissed only in this larger MDL 5944 case and not in
17 the individual Puerto Rico case, which is 20-C.V.-5606.
18     In their case management statement that Puerto Rico filed
19 yesterday, and -- and by the way, Puerto Rico -- it's not that
20 big a deal in this case because there wasn't much to it and I
21 wasn't in the middle of a lot of other things.  But normally,
22 you have to file a case management statement a week in advance
23 because I have a lot going on.  And so that's what the rules
24 say.
25     Anyway, what it says in that case management statement is

1    that dismissals have now been filed in the Puerto Rico case,
2    but I just looked at the docket.  I did not see that.  So
3    unless there's an objection, I'm going to direct Ms. Lee to
4    look at, identify the names of the defendants who are listed
5    in MDL case -- excuse me -- MDL ECF numbers 5909 and 5887 and
6    cause them also to be dismissed in the 5606 case.
7        Does anyone have an objection to the court making that
8    order?
9            **MS. BECKER WHITAKER:**  No.
10           **THE COURT:**  Okay.  Not hearing an objection, that
11   will be the court's order.
12       So then that brings us to a scheduling of the motions to
13   dismiss.  And this is normally a matter that counsel are able
14   to work out based on their calendars and the complexity of the
15   papers they anticipate filing.
16       Why doesn't someone on the defense side make a proposal
17   and then we can hear from everyone else who's present about
18   whether that proposal works.
19           **MR. KOONS:**  Your Honor, we are prepared to stick with
20   the original suggestion.  We would be ready to file motions to
21   dismiss 60 days from today.
22       I'm looking at my calendar now.  That would, if I'm doing
23   this right, would -- would fall on the 5th of May, I believe.
24   Two months out, Wednesday May 5th.
25           **THE COURT:**  I now conduct my law and motion on

1   Thursdays.  And this particular case I sometimes specially set
2   so your case management conference and your motion days are
3   typically not on my ordinary case management and motion days.
4       But let's -- anyway, you're talking about a filing
5   deadline not a hearing date so --
6           **MR. KOONS:**  Yes.
7           **THE COURT:**  -- the proposal is May 5th.
8       Would you please indicate -- would counsel -- defense
9   counsel other than Mr. Koons indicate if they also intend to
10  file a motion to dismiss so we can get a sense of the volume.
11          **MR. EIMER:**  Yes, Your Honor.  This is Nate Eimer on
12  behalf of LG Electronics USA.
13      And we would also file a motion to dismiss based on res
14  judicata on the prior settlement agreement covering this case,
15  at least the -- the citizens of Puerto Rico.  We would file a
16  much shorter brief.  I would think a ten-page brief would be
17  more than adequate.
18          **THE COURT:**  Okay.  And will the contention in that
19  motion be that the citizens of Puerto Rico received notice of
20  the prior settlement and did not opt out?
21          **MR. EIMER:**  The Attorney General of Puerto Rico under
22  CAFA received notice, and there was no objection from the
23  Attorney General to that.
24      So under the CAFA notice provision under Judge Conti's
25  order, the nationwide settlement dismissing all claims of the

1    citizens of Puerto Rico was in effect as of 2014 and not
2    appealed.
3             **THE COURT:**  Interesting.
4        Does the -- you'd think I'd have a better recall of the
5    exact specifics of the non-repealer state releases that
6    bothered me so much.  But I have too many cases to keep all of
7    the facts straight sometimes.
8        Did -- did the citizens of Puerto Rico release their
9    claims as part of that settlement?
10            **MR. EIMER:**  Yes, they did?
11            **THE COURT:**  Did they receive any money in exchange
12   for those releases?
13            **MR. EIMER:**  They did not.
14            **THE COURT:**  You -- it won't surprise you, then, to
15   learn that I think the issue might be more complicated than
16   you think it is.
17            **MR. EIMER:**  It may be.  This was not part of the
18   settlements that were appealed, however.  This predated all of
19   those and was not appealed by Puerto Rico.
20                   (Simultaneous colloquy.)
21            **THE COURT:**  I see.
22       Well, I raise the concern that I just identified
23   sua sponte, so -- anyway, we don't need to get into it.  We
24   don't need to get into it in detail here.  I would just ask
25   that you please consider the court's prior expressed concerns

1   and that we not -- I mean --
2       Well, let me just say a few things 'cause I don't want to
3   be -- I do want to raise the issue, and I don't want to take
4   too much time.  But I also want to be so elliptical that it's
5   not useful.
6       As I'm sure you know, because it's been a big part of the
7   case, there was a settlement that I initially approved that
8   released the claims of certain non-repealer states but didn't
9   pay anything to the citizens of those states.
10      And after considering that question further and while that
11  settlement was on appeal, I set it in order because a
12  particular kind of motion was filed that allowed me to express
13  this opinion even though the case was on appeal that I
14  regretted approving the settlement and that I didn't think it
15  was appropriate for the court to require the release of claims
16  if the persons giving those releases didn't get any money.
17      Now, I also said in hearings that occurred later than that
18  I didn't think those claims had any value either, so the
19  problem -- you know, those are two separate pieces of the same
20  puzzle.
21      Now, I don't -- I'm not familiar with the intricacies of
22  Puerto Rico law, so nothing that I'm saying now should be
23  taken as the gospel as to what I think are the value of
24  Ms. Whitaker's clients' claims.
25      But I'm just anticipating that the question of

```
 1   res judicata might -- I don't say "will" but might beg the
 2   question -- beg the question that I just talked about.
 3        I'm -- I don't think I'm -- I don't think I know that --
 4   the details of your Attorney General argument, though.  So
 5   maybe everything I just said will turn out to be irrelevant.
 6        And with that -- with that incredibly anticlimactic note,
 7   the court will include its remarks about your impending
 8   motions.
 9             MR. EIMER:  Okay.  Thank you, Your Honor.
10             THE COURT:  So that's two motions so far.
11        Does anyone else anticipate filing a motion?
12             MR. ADELSON:  Hi.  This is Eliot Adelson for Hitachi.
13        We do as well.
14             THE COURT:  Okay.  And what will the grounds of that
15   motion be that are not also the grounds of Mr. Koons's motion?
16             MR. ADELSON:  It may be similar to some of them.
17   There were -- there are two entities for Hitachi, two American
18   entities, one of which was dismissed by Judge Conti in a
19   motion for summary judgment.  The other entity no longer
20   exists.
21             THE COURT:  You might have trouble filing a motion if
22   it doesn't exist.
23             MR. ADELSON:  It may --
24             THE COURT:  I would think.  I don't know.
25             MR. ADELSON:  It may.
```

1          These are things that we may discuss with the plaintiffs
2    in advance of the motions.
3          **THE COURT:**  So let me very strongly encourage any
4    lawyer who is thinking about filing a motion, the content of
5    which might overlap with the motion being filed by another
6    lawyer, to coordinate very closely with that lawyer.
7          **MR. ADELSON:**  Yeah.
8          **THE COURT:**  Because besides wasting the court's time,
9    which is a phrase I don't like to use very often, it just
10   diminishes the strength of your argument.  It just diminishes
11   the strength of both arguments.  And, of course, you have no
12   control over which brief the court's going to read first.
13         **MR. ADELSON:**  Yep.
14         **THE COURT:**  So it's just in everybody's interest to
15   coordinate whenever that is possible.
16         **MR. ADELSON:**  Yeah, we intend to do that.  I mean,
17   these are specific to these entities as opposed to just legal
18   principles of the case.
19         **THE COURT:**  Okay.
20         **MR. ADELSON:**  But to the extent there are other
21   entities that have similar issues, we'll absolutely coordinate
22   on that.
23         **THE COURT:**  Great.
24      Any other takers?
25         **MR. KOONS:**  Your Honor, for the sake of ringing the

```
 1   bell twice, I was originally speaking about a joint brief for
 2   all defendants on common issues for the 60 -- 60 days.  I
 3   guess that would apply to all motions.
 4       But Phillips is contemplating a motion as well based on,
 5   you know, prior summary judgment decision as well, along the
 6   lines of those that have been mentioned, but it's a very
 7   different decision.  Therefore, I think it warrants different
 8   argument.
 9       It won't be protracted or long, and we will absolutely
10   reach out to the plaintiffs and see if we can get some
11   resolution without padding more paper to your -- to your desk.
12           THE COURT:  That's fine.  And I should -- I hope I'm
13   not being heard to suggest that I mind doing the work I get
14   paid to do.  That's fine.  I just try to avoid unnecessary
15   work.
16       But you're, of course, free to file any meritorious motion
17   that you have on your desk.
18       So, Ms. Whitaker, now you know what's facing you.  Do you
19   want to suggest -- and let's say that we pick May 5th or
20   something thereabouts.
21       How long is a sensible period to file oppositions to those
22   motions?
23           MS. BECKER WHITAKER:  Well, Your Honor, I was going
24   to request 60 days, but I learned that 60 days puts us at
25   July 4th so I wonder if we could make that July 9th.
```

1  **THE COURT:** Wow.

2  I think we had -- we're facing a legal principle "sauce
3  for the goose."  Be a little hard for me to complain about
4  giving you 60 days if I've just given the defendant 60 days.

5  **MS. BECKER WHITAKER:** Well, I'm asking for 65.

6  **THE COURT:** Oh, my goodness.  I know.  Things --
7  things were going your way.  I don't know that I would have
8  jumped in if I were you, but, of course, everyone has
9  different strategies.

10  So anyway, just leaving it on the same day of the week
11  would make it July the 7th or July the 8th?  July 7th, okay?
12  So let's say we go to July 7th for the oppositions.

13  Mr. Koons, would you like to suggest a reply date for you
14  and your colleagues and then see if there's any objection?

15  **MR. KOONS:** Sure, Your Honor.  Perhaps we could have
16  30 days for a reply?

17  **THE COURT:** Four weeks would be August the 4th.
18  Let's do that.

19  Any objection by anybody to that as a reply date?

20                    (No responses)

21  **THE COURT:** All right.  Well, I hope you'll use this
22  lavish amount of time to condense each of your briefs until
23  each of them is a shining diamond.  I guess we'll see what
24  comes in.

25  Very good.  Do we have anything further to discuss this

```
1    afternoon?  Ms. Whitaker?
2            MS. BECKER WHITAKER:  Not from the government of
3    Puerto Rico.
4            THE COURT:  Mr. Koons?
5            MR. KOONS:  I don't believe so, Your Honor.
6            THE COURT:  Anyone else?
7            MR. EIMER:  No, Your Honor.
8            THE COURT:  All right.  Well, it's nice to see
9    everybody looking healthy.  We're still in the middle of a
10   pandemic.  Go get your vaccine if you can.  Stay healthy.
11           MR. EIMER:  Thank you, Your Honor.  You as well.
12           THE COURT:  We'll see you a little bit later this
13   year.  Thank you.  That concludes this hearing.
14              (Proceedings were concluded at 2:24 P.M.)
15                            --o0o--
```

**CERTIFICATE OF REPORTER**

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter. I further certify that I am neither counsel for, related to, nor employed by any of the parties to the action in which this hearing was taken, and further that I am not financially nor otherwise interested in the outcome of the action.

_____*Raynee H. Mercado*_____

Raynee H. Mercado, CSR, RMR, CRR, FCRR, CCRR

Sunday, April 11, 2021

*RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR, CCRR (510) 565-7228*