R. Alexander Saveri (173102)
   rick@saveri.com
Geoffrey C. Rushing (126910)
   grushing@saveri.com
Matthew D. Heaphy (227224)
   mheaphy@saveri.com
Sarah Van Culin (293181)
   sarah@saveri.com
SAVERI & SAVERI
706 Sansome Street
San Francisco, California 94111
Telephone: (415) 217-6810
Facsimile: (415) 217-6813

*Interim Lead Counsel for the*
*Direct Purchaser Plaintiffs*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Master File No. 07-CV-5944-JST |
| | MDL No. 1917 |
| This Document Relates to: | **DIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION WITH RESPECT TO THE IRICO DEFENDANTS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| *ALL DIRECT PURCHASER ACTIONS* | Date:   March 24, 2022<br>Time:   2:00 p.m.<br>Judge: Hon. Jon S. Tigar<br>Ctrm:   6, 2nd Floor |

# <u>REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED</u>

# **TABLE OF CONTENTS**

NOTICE OF MOTION AND MOTION ................................................................................ 1

MEMORANDUM OF POINTS AND AUTHORITIES ...................................................... 2

I.      INTRODUCTION ................................................................................................... 2

II.     PROPOSED CLASS TO BE CERTIFIED. ........................................................... 3

III.    THE FIRST LITIGATED CLASS CERTIFICATION ORDER ............................ 3

IV.     FACTUAL BACKGROUND. ................................................................................ 4

        A.  The Investigations by the DOJ and Other Governmental Authorities. .................................. 4

■ ████████████████████████████████████████████ █

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██ █████████████████████ ................................................................ 14

V.      ARGUMENT. ....................................................................................................... 15

        A.  Plaintiffs Satisfy the Requirements of FRCP 23(a). ................................. 16

        B.  This Action Meets the Requirements of FRCP 23(b)(3). ........................ 19

            1.  Common Questions of Law and Fact Predominate. ......................... 19

            2.  A Class Action Is Superior Here. .................................................... 25

VI.     CONCLUSION ................................................................................................... 25

i

DPPs' NOMAM FOR CLASS CERTIFICATION WITH RESPECT TO IRICO DEFS.; MEMORANDUM OF
POINTS & AUTHORITIES IN SUPPORT THEREOF; Master File No. 07-CV-5944-JST

1

## **TABLE OF AUTHORITIES**

2

## **CASES**

*Aberin v. Am. Honda Motor Co., Inc.*, No. 16-CV-04384-JST, 2021 WL 1320773 (N.D. Cal. Mar. 23, 2021)...................................................................................................... 24

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997)........................................................ 19

*Amgen Inc. v. Conn. Ret. Plans*, 568 U.S. 455 (2013) ................................................. 15, 19

*Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121 (9th Cir. 2017)...................................... 16

*Castillo v. Bank of America, NA*, 980 F.3d 723 (9th Cir. 2020)....................................... 17

*Comcast Corp. v. Behrend*, 569 U.S. 27 (2013)............................................................... 23

*Ellis v. Costco Wholesale Corp.*, 657 F.3d 970 (9th Cir. 2011)................................. 15, 16

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998)............................................... 17

*Hawaii v. Standard Oil Co.*, 405 U.S. 251 (1972) ........................................................... 15

*In re Catfish Antitrust Litig.*, 826 F. Supp. 1019 (N.D. Miss.1993)................................. 17

*In re Cathode Ray Tube (CRT) Antitrust Litig.*, 07-cv-05944-JST, 2020 WL 1873554 (N.D. Cal. Mar. 11, 2020)................................................................................................... 19

*In re Cathode Ray Tube (CRT) Antitrust Litig.*, 911 F. Supp. 2d 857, 872 (N.D. Cal. 2012).... 17, 23

*In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. C-07-5944-SC, 2013 WL 5391159 (N.D. Cal. Sept. 24, 2013) ............................................................................................ 3, 23

*In re Ethylene Propylene Diene Monomer (EPDM) Antitrust Litig.*, 256 F.R.D. 82 (D. Conn. 2009)..................................................................................................................... 21

*In re High-Tech Emp. Antitrust Litig.*, 289 F.R.D. 555, 570–73 (N.D. Cal. 2013).................. 21, 22

*In re Intuitive Surgical Sec. Litig.*, Case No. 5:13-cv-01920-EJD, 2016 WL 7425926 (N.D. Cal. Dec. 22, 2016)................................................................................................ 18

*In re Korean Ramen Antitrust Litig.*, No. 13-CV-04115-WHO, 2017 WL 235052 (N.D. Cal. Jan. 19, 2017) ...................................................................................................... 17

*In re Magnetic Audiotape Antitrust Litig.*, No. 99 CIV 1580, 2001 WL 619305 (S.D.N.Y. June 1, 2001) ............................................................................................................... 21

*In re Mego Financial Corp. Sec. Litig.*, 213 F.3d 454 (9th Cir. 2000) ............................ 18

*In re Online DVD Rental Antitrust Litig.*, No. M 09-2029 PJH, 2010 WL 5396064 (N.D. Cal. Dec. 23, 2010)................................................................................................. 18, 21

*In re Rubber Chems. Antitrust Litig.*, 232 F.R.D. 346 (N.D. Cal. 2005) ......................... 15

*In re Static Random Access (SRAM) Antitrust Litig.*, No. C 07-01819 CW, 2008 WL 4447592 (N.D. Cal. Sept. 29, 2008) ......................................................... 18, 20, 24, 25

*In re TFT-LCD (Flat Panel) Antitrust Litig.*, 267 F.R.D. 291 (N.D. Cal. 2010) ........ 20, 21

*In re Twitter Inc. Sec. Litig.*, 326 F.R.D. 619 (N.D. Cal. 2018) (Tigar, J.) .................. 18, 23

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*In re Urethane Antitrust Litig.*, No. 13-3215, 2014 WL 4801253 (10th Cir. Sept. 29, 2014) ......... 21

*Lambert v. Nutraceutical Corp.*, 870 F.3d 1170 (9th Cir. 2017) ...................................................... 24

*Leyva v. Medline Industries Inc.*, 716 F.3d 510 (9th Cir. 2013) ...................................................... 24

*Messner v. Northshore Univ. Health System*, 669 F.3d 802 (7th Cir. 2012)................................... 19

*Nguyen v. Nissan N. Am., Inc.*, 932 F.3d 811 (9th Cir. 2019) .......................................................... 24

*Reiter v. Sonotone Corp.*, 442 U.S. 330 (1979)................................................................................ 15

*Rodriguez v. West Publ'g Corp.*, 563 F.3d 948 (9th Cir. 2009)....................................................... 18

*Sarmiento v. Sealy, Inc.*, 18-cv-01990-JST, 2020 WL 4458915 (N.D. Cal. May 27, 2020)...... 16, 20

*Story Parchment Co. v. Paterson Parchment Paper Co.*, 282 U.S. 555 (1931) ............................. 23

*Terry v. Hoovestol, Inc.*, Case No. 16-cv-05183-JST, 2018 WL 6439167 (N.D. Cal. Dec. 7, 2018)............................................................................................................................................... 16

*Thomas & Thomas Rodmakers, Inc. v. Newport Adhesives & Composites, Inc.*, 209 F.R.D. 159 (C.D. Cal. 2002) ..................................................................................................................... 19

*Vaquero v. Ashley Furniture Industries, Inc.,* 824 F.3d 1150 (9th Cir. 2016) ............................... 24

*Wortman v. Air New Zealand*, 326 F.R.D. 549 (N.D. Cal. 2018) ................................................... 16

*Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100 (1969) ........................................... 20

## RULES

Federal Rule of Civil Procedure 23 ...................................................................................... *passim*

1

**NOTICE OF MOTION AND MOTION**

2

**TO THE PARTIES AND THEIR ATTORNEYS OF RECORD:**

3

      **PLEASE TAKE NOTICE** that on March 24, 2022 at 2:00 p.m., before the Honorable Jon

4

S. Tigar, District Judge of the United States District Court, Northern District of California, at the

5

Oakland Courthouse, Courtroom 6, 2nd Floor, 1301 Clay Street, Oakland, California, Direct

6

Purchaser Plaintiffs ("DPPs") will and hereby do move for class certification pursuant to Rule 23 of

7

the Federal Rules of Civil Procedure ("FRCP 23").

8

      DPPs seek certification of the following class for damages pursuant to FRCP 23(b)(3):

9

      All persons and entities who, between March 1, 1995 and November 25, 2007, directly

10

purchased a CRT Product in the United States from any Defendant or any subsidiary
or affiliate thereof, or any co-conspirator or any subsidiary or affiliate thereof.

11

Excluded from the class are defendants, their parent companies, subsidiaries or
affiliates, any co-conspirators, all governmental entities, and any judges or justices

12

assigned to hear any aspect of this action.

13

DPPs also move for appointment of Saveri & Saveri, Inc. as Class Counsel pursuant to FRCP 23(g).

14

      This motion is based on this Notice of Motion and Motion, the supporting Memorandum of

15

Points and Authorities, the Expert Report of Phillip M. Johnson, Ph.D. (November 19, 2021) filed

16

herewith, the Declaration of R. Alexander Saveri (previously filed in support of the DPPs' Motion

17

for Class Certification with Respect to the Thomson and Mitsubishi Defendants (ECF Nos. 2968-5

18

(unredacted version), 2969-2 (redacted version))), the Declaration of R. Alexander Saveri in Support

19

of DPPs' Motion for Class Certification Re: the Irico Defendants filed herewith, the Declaration of

20

R. Alexander Saveri in Support of DPPs' Application for Entry of Default Against the Irico

21

Defendants (previously filed as ECF No. 5191-1), the Declaration of R. Alexander Saveri in Support

22

of DPPs' Opposition to the Irico Defendants' Motion to Set Aside Default (previously filed as ECF

23

Nos. 5228-1 & 5228-2), the [Proposed] Order Granting Direct Purchaser Plaintiffs' Motion for Class

24

Certification filed herewith, all exhibits and appendices to such documents, any reply papers, any

25

argument made at the hearing, and all other papers and records on file in this matter.[1]

26

27

[1] Because the factual support for this motion is already in the Court's file, DPPs rely on previously
filed declarations. DPPs believe that this is more efficient for the Court and the parties. If the Court

28

desires DPPs to refile these documents, DPPs will do so.

1

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.     INTRODUCTION.

The Cathode Ray Tube ("CRT") litigation involves one of the most well-documented global price-fixing conspiracies in history.[2] It has been the subject of numerous enforcement proceedings by domestic and foreign competition authorities. ██████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████

The Irico Defendants are the sole remaining defendants in this litigation. They improperly and unilaterally ceased participation in the case after their motion to dismiss was denied in 2010, reappearing over seven years later only after DPPs filed a motion for default judgment. In so doing, in addition to stymying the general progress of the litigation against them, the Irico Defendants also avoided the Court's first order certifying a DPP class, necessitating this motion. Order in re Class Certification with Respect to the Thomson and Mitsubishi Defendants (July 8, 2015) (ECF No. 3902) ("Cert. Order"). Certification of another DPP class remains appropriate—the facts and the law are materially unchanged.

Indeed, the Court has already held three times that the critical issues on class certification— whether or not classwide issues predominate; whether or not impact can be proven on a classwide basis at the direct purchaser level—should be resolved in favor of class certification. In addition to the Cert. Order, on September 24, 2013, Judge Conti adopted the Interim Special Master's ("ISM")

---

[2] Cathode Ray Tubes or CRTs are color picture tubes ("CPTs") used in televisions; color display tubes ("CDTs") are used in computer monitors. CRT televisions and CRT monitors sold by Defendants will be referred to as "Finished Products."

June 20, 2013 recommendation (ECF No. 1742) that an Indirect Purchaser Plaintiffs' ("IPP") class be certified. *In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. C-07-5944-SC, 2013 WL 5391159 (N.D. Cal. Sept. 24, 2013) ("*CRT I*"). These two orders also required findings that impact and damages could be proved on a classwide basis at the direct purchaser level of distribution—the same issues presented here. *Id.* at *5-6.[3]

## II.   PROPOSED CLASS TO BE CERTIFIED.

The DPPs[4] are direct purchasers of CRTs and Finished Products from Defendants, their co-conspirators,[5] and/or their subsidiaries or affiliates. They have brought this action on behalf of themselves and a proposed class ("Class") defined as:

> All persons and entities who, between March 1, 1995 and November 25, 2007, directly purchased a CRT Product in the United States from any Defendant or any subsidiary or affiliate thereof, or any co-conspirator or any subsidiary or affiliate thereof. Excluded from the class are defendants, their parent companies, subsidiaries or affiliates, any co-conspirators, all governmental entities, and any judges or justices assigned to hear any aspect of this action.[6]

## III.   THE FIRST LITIGATED CLASS CERTIFICATION ORDER

The Cert. Order reflected, as required, a "rigorous" examination of the evidence and the law relating to DPPs' motion. Cert. Order at 8. In a 50-page order, Judge Conti found—after thorough analysis—all of the requirements of FRCP 23 satisfied. He examined the report of DPPs' expert economist Dr. Jeffrey Leitzinger in detail and rejected attacks on his findings.

Judge Conti found all of the requirements of FRCP 23(a) satisfied and rejected arguments that the class was not ascertainable. Cert. Order at 11-16. He also found predominance under FRCP 23(b)—i.e., that DPPs could prove their case—conspiracy, impact and damages—via class wide

---

[3] In addition, the Court has certified numerous DPP and IPP settlement classes. Declaration of R. Alexander Saveri in Support of Direct Purchaser Plaintiffs' Motion for Class Certification Re: The Irico Defendants ("Saveri 2021 Decl.") ¶ 3. Hereafter "Ex. __" with alphabetic exhibits refers to the Saveri 2021 Declaration.

[4] Arch Electronics, Inc.; Crago, d/b/a Dash Computers, Inc.; Meijer, Inc. and Meijer Distribution, Inc.; Nathan Muchnick, Inc.; Princeton Display Technologies, Inc.; Radio & TV Equipment, Inc.; Studio Spectrum, Inc.; and Wettstein and Sons, Inc., d/b/a Wettstein's. These representatives were approved by the Court in the Cert. Order (at 11) and for various settlement classes.

[5] The complete co-conspirator list is set forth in the Saveri 2021 Declaration. Saveri 2021 Decl. ¶ 2.

[6] The class definition is identical to the one certified by Judge Conti. Cert. Order at 6, 50. Judge Conti also required that "affiliates" be identified. *Id.*

3

DPPs' NOMAM FOR CLASS CERTIFICATION WITH RESPECT TO IRICO DEFS.; MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT THEREOF; Master File No. 07-CV-5944-JST

evidence. *See id.* at 43. As to the conspiracy, he stated:

> Upon its own inquiry the Court is satisfied that the quantity and quality of the evidence supports by a preponderance of the evidence that there was a price-fixing scheme and its existence and operations would be a question common to all class members.

Cert. Order at 37-8. As to impact, Judge Conti found that each category of proof offered by DPPs was common to the class. Thus, he found "contemporaneous evidence" of the conspiracy showed classwide impact:

> DPPs put forward evidence (as reviewed by Dr. Leitzinger) suggesting that all but a small fraction of the CRT market was impacted, that the conspiracy's price goals were achieved a significant portion of the time, and that conspirators were effective at monitoring and enforcing conspiratorial agreements.

*Id.* at 39-40. He found that Dr. Leitzinger's statistical analysis was sound and also proved classwide impact. *See id.* at 42. And he found that Dr. Leitzinger's analysis and conclusion that "structural factors" relating to the CRT market and the alleged conspiracy—e.g., the conspirators' control of the CRT market and capacity, the global nature of the conspiracy and its high level of organization, high barriers to entry into the CRT market, that the conspiracy set prices for over 90% of CRTs during the class period, etc. (*id.* at 30-31)—also proved classwide impact. *Id.* at 43 ("The Court's review of structural factors presented by Dr. Leitzinger shows, by a preponderance of the evidence that structural issues could be shown at trial to have generated class impact.").

Judge Conti also approved DPPs' damage study:

> Dr. Leitzinger's report is supported by both documentary facts and industry data, his approach to determining whether Mitsubishi was part of the conspiracy or sold CRT products in connection therewith is based on factual review of evidence, and his use of regression and correlation analysis is well established as a means of providing classwide proof of antitrust injury and damages.

*Id.* at 48; *see also id.* at 44-45.

Finally, Judge Conti found that DPPs had satisfied FRCP 23(b)(3) superiority. *Id.* at 49-50.

## IV.      FACTUAL BACKGROUND.

### A.       The Investigations by the DOJ and Other Governmental Authorities.

In

---

4

May of 2011, co-conspirator SDI pleaded guilty to participating in the CRT conspiracy.[7] The DOJ also indicted six former executives of co-conspirators SDI, Chunghwa, LGE, and LPD, alleging, *inter alia*, agreements on prices, output, and market allocation; exchange of sales, production, market share, and pricing data; auditing to verify compliance with conspiratorial agreements; and active concealment of the conspiracy. Exs. 5–8. When announcing the indictment of Chunghwa's President, C.Y. Lin, the DOJ was clear: "[t]his conspiracy harmed countless Americans who purchased computers and televisions using cathode ray tubes sold at fixed prices." Ex. 9.[8]

The existence and operation of the CRT conspiracy is the overwhelmingly predominant issue for purposes of this motion and can be established through common, classwide proof

---

[7] Declaration of R. Alexander Saveri in Support of Direct Purchaser Plaintiffs' Motion for Class Certification with Respect to the Thomson and Mitsubishi Defendants ("Saveri Decl.") (previously filed at ECF Nos. 2968-5 (unredacted version sealed per Order (ECF No. 3498)), 2969-2 (redacted version), Ex. 3. Hereafter "Ex. _" with numeric exhibits refers to exhibits to this previously filed Saveri Declaration.

[8] Foreign competition authorities have also fined CRT conspirators. The European Commission fined Chunghwa, Samsung, Philips, LGE, Panasonic, Toshiba, and Thomson, among others, 1.47 billion Euros ($1.9 billion). Ex. 10. The Japan Fair Trade Commission fined Panasonic, Samsung, and LGPD a total of $37.4 million. Ex. 11. The Korean Fair Trade Commission ("KFTC") fined Samsung, Chunghwa, and LGPD $23.5 million. Ex. 12. The KFTC also produced a detailed report on the workings of the conspiracy. A translated version of the report is Ex. 13. The Czech Competition Authority fined Chunghwa, Panasonic, Thomson, Toshiba, and others a total of 51.787 million CZK. Ex. 14. Thomson admitted liability in annual reports. Ex. 140.

[9]

---



DPPs' NOMAM FOR CLASS CERTIFICATION WITH RESPECT TO IRICO DEFS.; MEMORANDUM OF POINTS
& AUTHORITIES IN SUPPORT THEREOF; Master File No. 07-CV-5944-JST



[13] ████████████████████████████████████████████████ Ex. 13 at 16–17, ¶ 35 & Table 7 (KFTC Report (Statement of SDI General Manager I.H. Song)).

[14] ████████████████████████████████████ Ex. 13 at 18–19, ¶ 38 & Table 11 (KFTC Report (Statement of SDI General Manager I.H. Song)).

[15] ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ Ex. 13 at 17–18, Table 9 (KFTC Report (Statement of SDI General Manager I.H. Song)).

[16] ████████████████████████████████████████

"there is evidence of the Irico Defendants' participation in 'a single, overarching conspiracy.'"). Order Setting Aside Default at 16 (Feb. 1, 2018) (ECF No. 5240). Discovery to date discloses over ██████████████████████████████████████ *See* Order re DPPs' Mot. to Compel Interrog. Further Answers at 2 (Aug. 4, 2021) (ECF No. 5944) ("103 documents that the DPPs assert establish incriminating conduct and communications by Irico").[18]

For example, on November 6, 1998, Irico hosted a meeting with Chunghwa, Philips, Samsung SDI (SSDD), Orion, and BMCC where specific prices were set for Irico CPTs. ECF No. 5228-2, Ex. 12 at CHU00030686.01E. Chunghwa's notes emphasized the conspirators' agreement to fix prices:

> Therefore, the meeting attendees achieved a unified approach and a common understanding, hastening each sales department to deliver the message as follows: "It

[17] ████████████████████████████████████████████████

[18] In the proceedings relating to the default entered against Irico, DPPs submitted documents evidencing 26 such meetings. An index of these meetings was publicly filed as ECF No. 5228-1, Ex. 11, which includes docket citations to each meeting note as well as related deposition excerpts.

8

1

is impossible for the prices to drop. If there are signs of oversupply, then it will be
handled with reducing production."

2

*Id.* at CHU00030686.02E. Notes of a June 22, 1999 meeting between Irico, Orion and Chunghwa

3

disclose that:

4

5

They [Irico] very much appreciated the market information provided by CPT and
ORION and are willing to cooperate with the move to increase the price of 14" CPT,
except that July orders have already been received. They are willing to increase the
overall price beginning in August.

6

7

ECF No. 5228-2, Ex. 17 at CHU00029051E ¶ 3. Notes of an August 5, 1999 meeting between Irico,

8

Samsung SDI, Chunghwa, Philips, Orion and BMCC show discussion of "bottom price for key

9

accounts" both for export and domestic sales for 14", 15" and 17" CDTs, "based on MPR II." A

10

major topic was "Special lecture by MR. C.C.LIU ([Chunghwa] headquarters administrator)": "1)

11

The industry meetings should remain confidential considering the international regulation of

12

antitrust laws[;] 2) F[OLLOW]/UP on China regarding the top meeting decision[; and] 3)

13

Discussions focused on 14"/15" prices[.]" ECF No. 5228-2, Ex. 20 at SDCRT-0086672E; *see also*

14

ECF No. 5191-2, Ex. I.

15

Similarly, on August 9, 2001, Irico and Hitachi, BMCC, Chunghwa, Philips, LG and SDI

16

considered production reduction proposals for CPTs and "Suggested Price" whereby "[e]ach

17

company must follow the above pricing and must not sell at a lower price through any unfair

18

competition means." ECF No. 5191-2, Ex. L at SDCRT-0087701E.

19

On December 31, 2003, Irico met with Chunghwa in Shenzen, China to discuss future

20

production and plans. *See* ECF No. 5191-2, Ex. M. The report notes that Irico and Chunghwa "wish

21

to once more exchange views regarding CPT factory production capacities." *Id.* at

22

CHU00030067.03E ¶ 7.

23

An October 2005 meeting report documents Chunghwa's and Irico's "[h]ope [that] with both

24

sides' sufficient communication and no malicious competition, can hold the market price and create

25

a win-win opportunity." ECF No. 5228-2, Ex. 26 at CHU00040992E ¶ 4.

26

Other conspirators have testified to Irico's participation in the conspiracy. For example,

27

Chunghwa conspirator J.S. Lu testified regarding a July, 2001 meeting that Irico "said it is willing to

28

cooperate as I wrote it in this report" to "increase the overall price beginning in August." ECF

9

5228-2, Ex. 18 at 187:22–188:25. The Irico Defendants have confirmed attendance at competitor meetings: senior manager, Zhaojie Wang, admitted attending "many, many such meetings." Saveri 2021 Decl., Ex. B at 92:19–24.





DPPs' NOMAM FOR CLASS CERTIFICATION WITH RESPECT TO IRICO DEFS.; MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT THEREOF; Master File No. 07-CV-5944-JST



11



24 Ex. 13 at 19, Table 11 (KFTC Report (Statement of I.H. Song)).

25

26

27



DPPs' NOMAM FOR CLASS CERTIFICATION WITH RESPECT TO IRICO DEFS.; MEMORANDUM OF POINTS
& AUTHORITIES IN SUPPORT THEREOF; Master File No. 07-CV-5944-JST



1

2    ## V.      ARGUMENT.

3          The Supreme Court has long recognized that antitrust class actions are a vital component of

4    antitrust enforcement. *See Reiter v. Sonotone Corp.*, 442 U.S. 330, 344 (1979); *Hawaii v. Standard*

5    *Oil Co.*, 405 U.S. 251, 266 (1972). Consequently, as Judge Conti noted, courts "resolve doubts in

6    these actions in favor of certifying the class." Cert. Order at 6 (quoting *In re Rubber Chems.*

7    *Antitrust Litig.*, 232 F.R.D. 346, 350 (N.D. Cal. 2005) ("*Rubber Chems*).

8          To determine whether the DPPs have satisfied their burden under Rules 23(a) and (b), the

9    court must conduct a "rigorous analysis," which may require it to probe behind the pleadings. *Ellis*

10   *v. Costco Wholesale Corp.*, 657 F.3d 970, 980–81 (9th Cir. 2011). However, "Rule 23 grants courts

11   no license to engage in free-ranging merits inquiries at the certification stage. Merits questions may

12   be considered to the extent—but only to the extent—that they are relevant to determining whether

13   the Rule 23 prerequisites for class certification are satisfied." *Amgen Inc. v. Conn. Ret. Plans*, 568

14   U.S. 455, 465–66 (2013); Cert. Order at 8.

15         "The district court is required to examine the merits of the underlying claim in this context,

16   only inasmuch as it must determine whether common questions exist; not to determine whether class

17   members could actually prevail on the merits of their claims." *Ellis*, 657 F.3d at 983 n.8. Thus, it

18   would be improper to determine on a certification motion which of the parties' respective experts'

19

20   [34] ███████████████████████████████████████ *see also* Ex. 131 at SDCRT-

21   0086672E (August 5, 1999 meeting) ("Special lecture" that "[t]he industry meetings should remain
     confidential considering the international regulation of antitrust laws") (publicly filed as ECF No.
     5228-2, Ex. 20).

22   [35]

23

24   

25

26

27

28

findings and observations are more credible on the merits: "[t]o hold otherwise would turn class

certification into a mini-trial." *Id.* Plaintiffs need only show that they satisfy the prerequisites set

forth in FRCP 23(a) and one subsection of FRCP 23(b). *See Rubber Chems.*, 232 F.R.D. at 349–50.

There is also no requirement that the class be ascertainable under FRCP 23. "In 2017, however, the

Ninth Circuit ruled definitively that ascertainability is not a requirement under Rule 23." *Sarmiento*

*v. Sealy, Inc.*, 18-cv-01990-JST, 2020 WL 4458915, at n.3 (N.D. Cal. May 27, 2020) (Tigar, J.)

(citing *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1125 (9th Cir. 2017)).

    **A.**    **Plaintiffs Satisfy the Requirements of FRCP 23(a).**

    **Numerosity**. There "is no fixed numerical threshold class members must exceed to satisfy

the numerosity requirement." *Terry v. Hoovestol, Inc.*, Case No. 16-cv-05183-JST, 2018 WL

6439167, at *3 (N.D. Cal. Dec. 7, 2018) (Tigar, J.) (holding 39-member settlement class met

numerosity requirement). ██████████████████████████████████████████

████████████████████████████████████████████ Saveri Decl. ¶ 2.

Accordingly, as the Court has already held, the FRCP 23(a)(1) standard is satisfied. Cert. Order at 9.

    **Commonality**. FRCP 23(a)(2) requires that class members share common issues of law or

fact. Only one significant issue is necessary to satisfy the commonality prong. *Wal-Mart v. Dukes*,

564 U.S. 338, 359 (2011). Courts in this Circuit have repeatedly held that this prong is satisfied

where—as here—a price-fixing conspiracy is alleged. "[T]he very nature of a conspiracy antitrust

action compels a finding that common questions of law and fact exist." *Wortman v. Air New*

*Zealand*, 326 F.R.D. 549, 556 (N.D. Cal. 2018) (Breyer, J.)(quoting *In re Dynamic Random Access*

*Memory (DRAM) Antitrust Litig.*, No. M 02-1486 PJH, 2006 WL 1530166, at *3 (N.D. Cal. June 5,

2006) ("*DRAM*"). Other common questions include whether the conspiracy caused the prices of

CRTs to be set at supra-competitive levels, the measure of classwide damages and whether the

conspirators engaged in affirmative acts to conceal the conspiracy. As the Court has already found,

the FRCP 23(a)(2) standard is satisfied. *See* Cert. Order at 22.

    **Typicality**. "The typicality prerequisite of Rule 23(a) is fulfilled if 'the claims or defenses of

the representative parties are typical of the claims or defenses of the class.'. . . 'Under the rule's

permissive standards, representative claims are 'typical' if they are reasonably co-extensive with

16

those of absent class members; they need not be substantially identical.'" *Castillo v. Bank of America, NA*, 980 F.3d 723, 729 (9th Cir. 2020) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)). As Judge Conti explained, "[t]ypicality requirements are often satisfied 'wherein it is alleged that the defendants engaged in a common [price-fixing] scheme relative to all members of the class.'. . . In such cases, 'there is a strong assumption that the claims of the representative parties will be typical of the absent class members.'" Cert. Order at 10 (quoting *In re Catfish Antitrust Litig.*, 826 F. Supp. 1019, 1035 (N.D. Miss. 1993)).

Purported factual differences from Class members with respect to purchasing practices or dealings with defendants do not preclude typicality. "[T]here is substantial legal authority holding in favor of a finding of typicality in price fixing conspiracy cases, even where differences exist between plaintiffs and absent class members with respect to pricing, products, and/or methods of purchasing products." *In re Korean Ramen Antitrust Litig.*, No. 13-CV-04115-WHO, 2017 WL 235052, at *18 (N.D. Cal. Jan. 19, 2017) (quoting *DRAM*, 2006 WL 1530166, at *5).

As Judge Conti noted, the named DPPs' claims are typical of the claims of other putative Class members because "the pervasive nature and common impact of Defendants' alleged price-fixing scheme supports that the claims made by the DPPs 'stem from the same event, practice, or course of conduct that forms the basis of the claims of the class and are based on the same legal or remedial theory.'" Cert. Order at 3 (quoting *In re Citric Acid*, No. 95–1092, C–95–2963 FMS,1996 WL 655791 (N.D. Cal. Oct. 2, 1996). The alleged conspiracy set the supra-competitive prices all Plaintiffs and Class members paid and forms the linchpin of the claims of every Plaintiff and Class member. That some purchased CRTs in Finished Products does not undermine typicality. The Court has already held that Finished Products purchasers may seek the same overcharge as purchasers of CRTs. *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 911 F. Supp. 2d 857, 872 (N.D. Cal. 2012) ("*CRT II*").

**Adequacy**. Plaintiffs also satisfy FRCP 23(a)(4). "The proper resolution of this issue requires that two questions be addressed: (a) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (b) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *In re Mego Financial Corp. Sec. Litig.*, 213

17

F.3d 454, 462 (9th Cir. 2000). Adequacy requires that Plaintiffs (1) have no interests that are antagonistic to or in conflict with the interests of the class; and (2) retain counsel able to vigorously prosecute the interests of the class. *See SRAM*, 2008 WL 4447592, at *4. Only one class representative need meet this requirement. *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 961 (9th Cir. 2009) "'[T]he threshold of knowledge required to qualify a class representative is low; a party must be familiar with the basic elements of her claim . . . and will be deemed inadequate only if she is 'startlingly unfamiliar' with the case.'" *In re Twitter Inc. Sec. Litig.*, 326 F.R.D. 619, 628 (N.D. Cal. 2018) (Tigar, J.) (quoting *In re Intuitive Surgical Sec. Litig.*, Case No. 5:13-cv-01920-EJD, 2016 WL 7425926, at *7 (N.D. Cal. Dec. 22, 2016).

Courts have regularly found this requirement satisfied in price-fixing cases. Class representatives "will be found to be adequate when the attorneys representing the class are qualified and competent, and the class representatives are not disqualified by interests antagonistic to the remainder of the class." *In re Online DVD Rental Antitrust Litig.*, No. M 09-2029 PJH, 2010 WL 5396064, at *4 (N.D. Cal. Dec. 23, 2010)("*Online DVD Rental*"). "The mere potential for a conflict of interest is not sufficient to defeat class certification; the conflict must be actual, not hypothetical." *In re Static Random Access (SRAM) Antitrust Litig.*, No. C 07-01819 CW, 2008 WL 4447592, at *4 (N.D. Cal. Sept. 29, 2008). There is no conflict here. The named DPPs allege Class members were injured by the same conspiracy in the same way, seek the same relief in the form of overcharge damages, and share an identical interest in proving Defendants' liability.

The named DPPs have also retained skilled counsel with extensive experience in prosecuting antitrust class actions. The Court has appointed Saveri & Saveri, Inc. as Interim Lead Class Counsel. Order Appointing Interim Lead Counsel (May 9, 2008) (ECF No. 282). The Saveri firm has undertaken the responsibilities assigned to it and—with other able Plaintiffs' counsel—have vigorously pursued the litigation on behalf Plaintiffs and the proposed Class. Among other things, Plaintiffs have obtained nine settlements totaling over $212 million. The Saveri firm has devoted substantial time, resources, and leadership necessary to vigorously prosecute this action, and will continue to do so. As the Court has already held, Plaintiffs meet the adequacy requirement[36] *See*

---

[36] Saveri & Saveri, Inc. also seek appointment as Lead Counsel for the class pursuant to Rule 23(g).

1  Cert. Order at 22.

2  **B.      This Action Meets the Requirements of FRCP 23(b)(3).**

3  To qualify for certification under FRCP 23(b)(3) a class must meet two additional

4  requirements: "[c]ommon questions must predominate over any questions affecting only individual

5  members; and class resolution must be superior to other available methods for the fair and efficient

6  adjudication of the controversy." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615 (1997)

7  (internal quotations omitted). As noted by the Supreme Court: "[p]redominance is a test readily met

8  in certain cases alleging . . . violations of the antitrust laws." *Id.* at 625.

9  **1.      Common Questions of Law and Fact Predominate.**

10  Courts commonly find "predominance" under FRCP 23(b)(3) satisfied in direct purchaser

11  horizontal price fixing cases. *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 07-cv-05944-JST, 2020

12  WL 1873554, at *5 (N.D. Cal. Mar. 11, 2020) ("[I]n price-fixing cases, such as this, 'courts

13  repeatedly have held that the existence of the conspiracy is the predominant issue and warrants

14  certification even when significant individual issues are present.'" (quoting *Thomas & Thomas*

15  *Rodmakers, Inc. v. Newport Adhesives & Composites, Inc.*, 209 F.R.D. 159, 167 (C.D. Cal. 2002)).

16  The Rule "does *not* require a plaintiff seeking class certification to prove that each 'elemen[t] of

17  [her] claim [is] susceptible to classwide proof.' . . . What the rule does require is that common

18  questions '*predominate* over any questions affecting only individual [class] members.'" *Amgen*, 568

19  U.S. at 469 (brackets and emphasis in original). The inquiry is whether the class is "sufficiently

20  cohesive to warrant adjudication by representation." *Id.* (quoting *Amchem*, 521 U.S. at 623).

21           Rule 23(b)(3)'s predominance requirement is satisfied when "common questions
             represent a significant aspect of [a] case and . . . can be resolved for all members of [a]
22           class in a single adjudication." . . . Or, to put it another way, common questions can
             predominate if a "common nucleus of operative facts and issues" underlies the claims
23           brought by the proposed class. . . . Individual questions need not be absent. The text of
             Rule 23(b)(3) itself contemplates that such individual questions will be present. The
24           rule requires only that those questions not predominate over the common questions
             affecting the class as a whole.
25

26  *Messner v. Northshore Univ. Health System*, 669 F.3d 802, 815 (7th Cir. 2012) (internal citations

27  omitted). As Judge Conti noted in *CRT I*, "the Court's rigorous analysis overlaps with the merits of

28

---

19

the IPPs' claims and requires that the IPPs make an evidentiary case for predominance, . . . but Defendants are trying to push the ISM and the Court toward a full-blown merits analysis, which is forbidden and unnecessary at this point." 2013 WL 5391159, at *5 (citations omitted). "In determining whether common questions predominate, the Court identifies the substantive issues related to the plaintiffs' claims (both the causes of action and affirmative defenses), and then considers the proof necessary to establish each element of the claim or defense, and how these issues would be tried." *Sarmiento,* 2020 WL 4458915, at *5.

Here, common issues predominate with respect to DPPs' proof of the three elements of their claim: (1) that Defendants participated in a conspiracy to fix prices in violation of the antitrust laws; (2) that DPPs suffered antitrust injury (*i.e.*, "impact") caused by the conspiracy; and (3) the damages they sustained. *See* Cert. Order at 38, 43, & 48. Common questions predominate because the DPPs will establish these elements through "generalized proof" applicable to the Class as a whole.

**Existence and Nature of the Conspiracy.** If each Class member were required to prove its claim individually at trial, each would show that Defendants and their co-conspirators organized, participated in, and operated the same global price-fixing cartel. Each would submit the same type of proof detailed above in Section IV above, namely: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ This proof, along with economic evidence of the conspiracy, is common to the Class and supports a finding of predominance. *See SRAM*, 2008 WL 4447592, at *5 (common liability issues predominated because common evidence regarding alleged conspiracy, including written records of in-person, telephone, and email communications, would be necessary to prove claims of all class members).

**Classwide Proof of Impact**. Proof of antitrust injury requires a showing of some injury to "business or property" due to an antitrust violation. *See Reiter*, 442 U.S. at 337–41; *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 126 (1969) *superseded by statute on other grounds*.

"[O]n a motion for class certification, the Court only evaluates whether the method by which plaintiffs propose to prove class-wide impact could prove such impact, not whether plaintiffs in fact can prove class-wide impact." *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 267 F.R.D. 291, 313

20

(N.D. Cal. 2010) ("*LCD*") (quoting *In re Magnetic Audiotape Antitrust Litig.*, No. 99 CIV 1580, 2001 WL 619305, at *4 (S.D.N.Y. June 1, 2001)). Stated another way, all that is required is that plaintiffs present a "'plausible methodology to demonstrate that antitrust injury can be proven on a class-wide basis.'" *Id.* at 311. "'[T]he issue at class certification is not which expert is the most credible, or the most accurate modeler, but rather have the plaintiffs demonstrated that there is a way to prove a class-wide measure of [impact] through generalized proof." *Online DVD Rental*, 2010 WL 5396064, at *10 (quoting *In re Ethylene Propylene Diene Monomer (EPDM) Antitrust Litig.*, 256 F.R.D. 82, 100 (D. Conn. 2009) ("*EPDM*")

The DPPs present three types of "generalized proof." First, as Plaintiffs' expert economist, Dr. Johnson explains, the contemporaneous evidence of the conspiracy shows classwide impact. Second, Dr. Johnson presents statistical evidence of classwide harm. Third, Dr. Johnson concludes, based upon evidence of the structure of the CRT market and the operation of the CRT conspiracy, that the conspiracy caused classwide impact. Each of these categories of evidence is substantially identical to that presented to Judge Conti and each constitutes a "plausible methodology" to prove generalized harm. Together, they easily satisfy the requirements of FRCP 23(b)(3).

First, evidence of conspiratorial conduct can prove impact. *See, e.g. In re High-Tech Emp. Antitrust Litig.*, 289 F.R.D. 555, 570–73, 576 (N.D. Cal. 2013). Here, as explained above, there is abundant evidence common to the Class that Defendants' conspiracy had classwide impact. ▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

*See* Section IV.B.2 above.

> Proof of a conspiracy to establish a "base" price would establish at least the *fact* of damage, even if the extent of the actual damages suffered by the plaintiffs would vary. . . . [T]he proof with respect to the "base" price from which these negotiations began, or the structure of the conspiracy to affect individual negotiations, would be common to the class. Accordingly . . . the fact of damage is predominantly, if not entirely, a common question.

*EPDM*, 256 F.R.D. at 89 (quoting *In re NASDAQ Market-Makers Antitrust Litig.*, 169 F.R.D. 493, 523 (S.D.N.Y. 1996) ("*NASDAQ*")); *see also In re Urethane Antitrust Litig.*, No. 13-3215, 2014 WL 4801253, at *6 (10th Cir. Sept. 29, 2014) ("Under the prevailing view, price-fixing affects all market participants, creating an inference of class-wide impact even when prices are individually

21

negotiated. . . . The inference of class-wide impact is especially strong where, as here, there is

evidence that the conspiracy artificially inflated the baseline for price negotiations." (citations

omitted)).

*See* Section

IV.B.4 above. This also proves classwide impact.

*See High-Tech*, 289 F.R.D. at

572 (monitoring and enforcement of conspiratorial agreements shows "broad effects" on class).

Judge Conti found this evidence "has the ability to show impact through common evidence and

methods." Cert. Order at 40.

Second,

1  ██████████████████████████████████████████████ And although Dr.

2  Johnson was not required to do so under *Royal Printing* (*CRT II*, 911 F. Supp. 2d at 871), ████

3  █████████████████████████████████████████████████████

4  ███████████████████████████████ In these regards, Dr. Johnson's

5  statistical analysis and his conclusions are substantially identical to Dr. Leitzinger's.

6       Dr. Johnson has also performed additional statistical analyses further confirming his

7  conclusion of widespread impact. █████████████████████████████

8  ███████████████████████████████████████████████████████

9  ██████████████████████[37]

10      Third, economic analyses of the structure of an industry are another type of common proof

11  which courts have relied on to find that antitrust injury is susceptible to classwide proof within the

12  meaning of FRCP 23(b)(3). Cert. Order at 43 ("The Court's review of structural factors presented by

13  Dr. Leitzinger shows, by a preponderance of the evidence, that structural issues could be shown at

14  trial to have generated class impact."). Like Dr. Leitzinger, ███████████████████

15  ███████████████████████████████████████████████

16  ████████████████████████████████████████████████

17  ██████████████████████████████████████████████████████

18  ██████████ Judge Conti relied on a similar analysis by the IPPs' expert in affirming a

19  recommendation to certify a class of indirect purchasers of CRTs. *CRT I*, 2013 WL 5391159, at *3.

20      **Classwide Proof of Damages**. Dr. Johnson's damage model determines ██████████

21  █████████████████████████████████████████████████████████████

22  It is therefore tied closely to the DPPs' theory of liability.[38] Johnson Report ¶¶ 72-80. It is based on

───────────────

[37] ████████████████████████████████████████████████████
████████████████████████████████████

  The proposed method "need not be exact" but "must be consistent with [the plaintiffs'] liability
case." *Comcast Corp. v. Behrend*, 569 U.S. 27, 35 (2013) ("*Comcast*") (citing *Story Parchment Co.
v. Paterson Parchment Paper Co.*, 282 U.S. 555, 563 (1931)). "Plaintiffs' burden at this stage is only
to demonstrate that 'the questions of law or fact common to the class members *predominate* over
any questions affecting only individual members.' . . . Courts in this circuit have not interpreted
*Comcast* to 'require certification proponents to rely on a class-wide damages model to demonstrate
predominance.' . . . Rather, '[t]he Ninth Circuit reads *Comcast* to demand only that plaintiffs 'be

the well-established "before and after" method, which was previously approved by Judge Conti. Cert. Order at 43-48 ("[Dr. Leitzinger's] use of regression and correlation analysis is well established as a means of providing classwide proof of antitrust injury and damages.").

Dr. Johnson's model is designed to to Dr. Leitzinger's previously approved model. *See* ECF No. 5191-2, Ex. D.

This type of study is a standard of antitrust practice. Cert. Order at 44-45. The merits of this methodology "will be adjudicated at trial based upon economic theory, data sources, and statistical techniques that are entirely common to the class." *SRAM*, 2008 WL 4447592, at *6 (quoting *NASDAQ*, 169 F.R.D. at 521). It is well-established that a need for individualized damage calculations will not defeat class certification. *Vaquero v. Ashley Furniture Industries, Inc.,* 824 F.3d 1150, 1155 (9th Cir. 2016) ("Under *Tyson Foods* and our precedent, therefore, the rule is clear: the need for individual damages calculations does not, alone, defeat class certification."). "[U]ncertainty regarding class members' damages does not prevent certification of a class as long as a valid method has been proposed for calculating those damages." *Nguyen v. Nissan N. Am., Inc.*, 932 F.3d 811, 817 (9th Cir. 2019) (quoting *Lambert v. Nutraceutical Corp.*, 870 F.3d 1170, 1182 (9th Cir. 2017)." "At the class certification stage, Plaintiffs must show that damages can 'feasibly and efficiently be calculated once the common liability questions are adjudicated.'" *Aberin v. Am. Honda Motor Co., Inc.*, No. 16-CV-04384-JST, 2021 WL 1320773, at *11 (N.D. Cal. Mar. 23, 2021) (quoting *Leyva v.*

able to show that their damages stemmed from the defendant's actions that created the legal liability.'" *In re Twitter Inc. Sec. Litig.*, 326 F.R.D. at 630 (citations omitted).

[39] As Judge Conti confirmed, the use of average quarterly prices is proper. Cert. Order at 44-45.

1   *Medline Industries Inc.*, 716 F.3d 510, 513-14 (9th Cir. 2013).

2         Here, Dr. Johnson has presented a workable and widely accepted methodology for measuring

3   classwide damages. In doing so, moreover, Dr. Johnson has gone well beyond FRCP 23's

4   requirements and he has constructed a complete working model (though preliminary) that can

5   determine damages on a classwide basis. Johnson Rep. ¶¶ 87-88.

6                    **2.    A Class Action Is Superior Here.**

7         FRCP 23(b)(3) requires that a class action be "superior to other available methods for fairly

8   and efficiently adjudicating the controversy." Here, it would be incredibly inefficient to litigate the

9   predominating common issues in individual proceedings. In addition, "[i]n antitrust cases such as

10  this, the damages of individual direct purchasers are likely to be too small to justify litigation, but a

11  class action would offer those with small claims the opportunity for meaningful redress." *SRAM*,

12  2008 WL 4447592, at *7. The prosecution of separate actions would also create the risk of

13  inconsistent rulings and could result in prejudice to the named DPPs and Class members. As Judge

14  Conti noted in the Cert. Order: "[C]ontinuing in the form of a class action will promote judicial

15  efficiency, is likely the only means of recovery for many plaintiffs whose recovery would otherwise

16  be too low to justify the cost of individual litigation, and there seems to be little disagreement among

17  the proposed class regarding whether class treatment would be beneficial." Cert. Order at 49. Thus,

18  class certification remains plainly superior here to individual proceedings.

19  **VI.    CONCLUSION**

20        For the foregoing reasons, the DPPs respectfully request that the court grant class

21  certification and appoint Saveri & Saveri Class Counsel pursuant to FRCP 23(g).

23  Dated: November 19, 2020                    Respectfully submitted,

24                                              /s/ *R. Alexander Saveri*
25                                              R. Alexander Saveri (173102)
                                                Geoffrey C. Rushing (126910)
26                                              Matthew D. Heaphy (227224)
                                                Sarah Van Culin (293181)
27                                              SAVERI & SAVERI, INC.
                                                706 Sansome Street
28                                              San Francisco, CA 94111

Telephone: (415) 217-6810
Facsimile: (415) 217-6813

*Interim Lead Counsel for*
*Direct Purchaser Plaintiffs*

Joseph W. Cotchett
Adam J. Zapala
COTCHETT, PITRE & McCARTHY, LLP
840 Malcolm Road
Burlingame, CA 94010
Telephone: (650) 697-6000

Steven F. Benz
KELLOGG, HANSEN, TODD, FIGEL &
FREDERICK, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, DC 20036
Telephone: (202) 326-7900
Facsimile: (202) 326-7999

Douglas A. Millen
William H. London
FREED KANNER LONDON & MILLEN
2201 Waukegan Road, Suite 130
Bannockburn, IL 60015
Telephone: (224) 632-4500
Facsimile: (224) 632-4519

*Attorneys for Plaintiffs*

DPPs' NOMAM FOR CLASS CERTIFICATION WITH RESPECT TO IRICO DEFS.; MEMORANDUM OF POINTS
& AUTHORITIES IN SUPPORT THEREOF; Master File No. 07-CV-5944-JST