Vaughn R Walker
Law Office of Vaughn R Walker
Four Embarcadero Center, Suite 2200
San Francisco, CA  94111
Tel:  (415) 871-2888
Fax:  (415) 871-2890
vrw@judgewalker.com

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION<br><br>This Order Relates To:<br><br>ALL DIRECT AND INDIRECT PURCHASER PLAINTIFFS | MDL No 1917<br><br>Case No C-07-5944 JST<br><br>**ORDER RE DPPS' MOTION TO COMPEL INTERROGATORY FURTHER ANSWERS**<br><br>**RE ECF No 5301** |

       The Direct Purchaser Plaintiffs (DPPs) initially sought at virtual hearings on May 13 and July 28 to compel further responses to interrogatories propounded to defendants Irico Group Corporation and Irico Display Devices Co, Ltd (collectively "Irico").  The DPPs are now joined in this endeavor by the Indirect Purchaser Plaintiffs ("IPPs", who with the DPPs are collectively referred to herein as "PPs").  In the months after the May hearings, the parties conferred and submitted additional briefing.  The undersigned heard argument on the motion in a recorded video hearing on December 20, 2021 and now makes the order that follows.  As

used herein, "CRT" means Cathode Ray Tube and Cathode Ray Tube product (both singular and plural).

The interrogatories in question are:
- Interrogatory Nos 1, 2 and 4 of the IPPs' Third Set of Interrogatories and
- Interrogatory No 16 of the DPPs' First Set of Interrogatories.

The contested interrogatories and IRICO's responses, shorn of their rather extensive boilerplate objections and comments, follow:

INTERROGATORY No 1

State whether any Documents or information responsive to DPPs' Written Discovery and/or IPPs' Written Discovery were destroyed, discarded, erased, deleted, purged, or otherwise lost. If your answer is in any way in the affirmative: (a) describe in detail the contents of each such document or information and the date it was destroyed, discarded, erased, deleted, purged or lost; (b) identify each person or document custodian whose documents or information was destroyed, discarded, erased, deleted, purged or lost; (c) state the date on which each responsive document or information was destroyed, discarded, erased, deleted, purged or lost; (d) identify each person or document custodian who had any role or responsibility in destroying, discarding, erasing, purging, deleting, or losing of each such document or information; and (e) describe in detail the circumstances under which each such document or information was destroyed, discarded, erased, deleted, purged, or lost.

IRICO'S INITIAL RESPONSE TO INTERROGATORY No 1

Irico reasserts and incorporates each of the General Objections and Objections to the Definitions and Instructions set forth above. Irico further objects that this

interrogatory is duplicative and cumulative of other requests served on Irico, including but not limited to: Interrogatory No 16 of Direct Purchaser Plaintiffs' First Set of Interrogatories; Instruction Nos 8 and 9 of Direct Purchaser Plaintiffs' First, Second, and Third Sets of Requests for Production of Documents; Instruction No 8 of Indirect Purchaser Plaintiffs' First Request for Production of Documents from Defendants; and, Instruction Nos 10 and 11 of Indirect Purchaser Plaintiffs' Second Request for Production of Documents from Defendants.  Such duplicative and cumulative requests violate the Order Re Discovery And Case Management Protocol, ECF No 1128.  *See* Order Re Plaintiffs' Motions To Compel Supplemental Discovery From Toshiba And Panasonic, ECF No. 4128, at 4 ("The Discovery Protocol (ECF No 1128), requires parties to coordinate discovery and not file duplicative discovery. . . . The benefit redounds to all parties on both sides of the litigation, by conserving the efforts required by plaintiffs and protecting defendants against unnecessary duplication of effort.") (Report and Recommendation adopted in full at ECF No 4256). Subject to and without waiving the objections stated above, Irico refers Plaintiff to the following discovery responses previously served on Plaintiff: Irico's Supplemental Objections and Responses to Interrogatory No 16 as stated in Irico Defendants' Fourth Supplemental Objections and Responses to Direct Purchaser Plaintiffs' First Set of Interrogatories; and, Irico's Second Supplemental Objections and Responses to Interrogatory No 16 as stated in Irico Defendants' Fifth Supplemental Objections and Responses to Direct Purchaser Plaintiffs' First Set of Interrogatories.

DISCUSSION OF INTERROGATORY No 1

Irico's response to Interrogatory No 1 amounts to a lengthy objection or rather a string of objections.  First, Irico incorporates its general objections, its objections to definitions

and instructions.  Then, Irico objects that the interrogatory is duplicative of other interrogatories and requests for production. Irico thus seeks to take advantage of the court's discovery protocol which, in relevant part, provides:

> Defendants may refer to their previously produced discovery in response to any discovery propounded by the Individual Action Plaintiffs or State Attorneys General if, and to the extent that, the previously-produced materials are responsive to the Individual Action Plaintiffs' or State Attorney General's discovery requests.

ECF # 1128 ¶15 G at 15.

Interrogatory No 16 is discussed later herein.  Given the present status of this litigation, Interrogatory No 1 is essentially an unworkable inquiry at this juncture.  To be sure, the destruction of relevant documents is highly material, indeed powerful, evidence.  But first the relevant evidence needs to be identified.  As pointed out in what follows, Irico's responses at present do not do so.  Hence, the undersigned puts this interrogatory to one side until further development of the relevant facts, a task that may be accomplished by responses to the other interrogatories at issue and the PPs' presently pending motion to admit certain documents as admissible under FRE 801(d)(2)(E).

INTERROGATORY No 2

State whether Irico implemented a litigation hold to preserve potentially discoverable evidence relating to the alleged misconduct in this litigation. If your answer is in the affirmative: (a) state the date (or dates) that the litigation hold notice was issued; (b) state the date when the litigation hold was implemented; (c) describe in detail the scope of the litigation hold, including the categories of documents, electronically stored information (ESI), or other tangible evidence that are subject to the litigation hold; (d) identify the recipients of the litigation

hold notice; and (e) describe any steps taken to ensure compliance with the litigation hold.

IRICO'S INITIAL RESPONSE TO INTERROGATORY No 2

Irico reasserts and incorporates each of the General Objections and Objections to the Definitions and Instructions set forth above.  Irico further objects that this interrogatory to the extent that it requests the disclosure of information protected by the attorney-client privilege or attorney work product doctrine. Subject to and without waiving the objections stated above, Irico responds that, in summer 2008, the company orally instructed key employees to preserve documents related to sales of CRT to the United States.  It was determined that Irico possessed no such documents.  As discussed in more detail below, all documents required to be maintained under Chinese law were preserved at that time.  Around September 2017, when Irico reentered the litigation for the purposes of contesting jurisdiction and asserting a foreign sovereign immunity defense, Irico confirmed the need to preserve existing documents relevant to the litigation from the time period 1995 to 2007 with managers from each operational department, including finance and accounting, legal, HR, sales.  The managers conveyed this message orally to relevant employees under their supervision.  In addition to the preservation efforts described above, and as Irico has explained in other discovery responses, *see* Irico's Supplemental Objections and Responses to Interrogatory No 16 as stated in Irico Defendants' Fourth Supplemental Objections and Responses to Direct Purchaser Plaintiffs' First Set of Interrogatories, pursuant to Chinese law, the Ministry of Finance and State Archives Administration requires companies like Irico to maintain and preserve certain documents and materials, including but not limited to original invoices for sales, accounting books, general ledgers, financial accounting

reports, and bank statements.  *See* IRI-CRT-00000900.  Irico is not aware of such archived records from 1995-2007 being destroyed given the retention periods required by the Chinese government.  In addition, Irico's internal practices included the maintenance of additional archives of material related to operational documents, administrative documents, technical records and communications with agencies of the PRC government and Chinese Communist Party.  Irico is not aware of any such records from the 1995 to 2007 time period that were preserved in the various archives being destroyed.

DISCUSSION OF INTERROGATORY No 2

Irico's further objection to Interrogatory No 2 on grounds of the attorney-client privilege or work product doctrine is meritless as the interrogatory does not seek any attorney-client communication or otherwise privileged or protected information.  The statement that Irico "orally instructed key employees to preserve documents related to sales of CRTs to the United States" simply does not suffice as a reasonable or complete response in that the statement does not:

- Specify the content of the so-called preservation instruction
- Provide evidence that an instruction was given
- Identify the persons to whom the so-called instruction was directed
- Describe the scope of the preservation instruction
- Fix the time-period covered by the so-called instruction
- Allow the adequacy of the so-called instruction to be determined.

The response does not disclose the basis for the assertion that "Irico possessed no such documents."  The statement that Irico preserved "all documents required to be maintained under Chinese law" is essentially meaningless as the scope of what Chinese law required lacks any comparison to what is required by a litigation hold under United States federal practice.  The so-called confirmation with "managers from each operational department" lacks the

essential elements set forth above with respect to the so-called oral instruction.  In light of these deficiencies, the statement that Irico is not aware of documents "preserved in the various archives being destroyed" affords no reasonable assurance of the statement's veracity.

REQUIRED FURTHER RESPONSES TO INTERROGATORY No 2

Due to the inadequacy of Irico's response to Interrogatory No 2, Irico is directed to furnish supplemental responses to Interrogatory No 2 as set forth below.

1. With respect to the communications or work product that Irico objected to identifying in its response to Interrogatory No 2, Irico is directed to identify the dates of any such communications or work product, the parties thereto, the subjects thereof and sufficient information to enable the PPs and the undersigned to determine whether a claim of privilege or protection is warranted.

2. Identify by names and positions at Irico at all times from 2007 to the present the "key employees" referred to in Irico's response to Interrogatory No 2.

3. State how Irico determined that the persons identified in Irico's response to No 2, above, were determined to be "key employees."

4. Explain how the 2008 "oral instruction" referred to in Irico's response to Interrogatory No 2 was conveyed; specifically, Irico is required to identify by name and position all persons who conveyed the "oral instruction," the dates each such person conveyed the "oral instruction," the persons by names and positions at the time to whom the "oral instruction" was conveyed, the offices, facilities or other locations at which the "oral instruction" was conveyed, the content of the "oral instruction" and all reasons upon which Irico contends the "oral instruction" was effective if Irico so contends.

5. Identify the information that confirms, or the basis to believe, that the "oral instruction" referred to in Irico's response to Interrogatory No 2 was adequate to prevent the destruction of evidence that otherwise would have been preserved in compliance with an otherwise adequate litigation hold.

6. If the summer 2008 "oral instruction" referred to in Irico's response to Interrogatory No 2 had not been limited to "sales of CRT to the United States," but rather to sales of CRT without regard to location, identify all documents and information that otherwise would been preserved.

7. Identify by type all documents and information related to sales of CRT without regard to location during the period 1997 to 2007 that were required to be preserved in accordance with applicable Chinese law.

8. Identify by type all documents related to sales of CRT without regard to location during the period 1997 to 2007 that Irico generated, but was not required by Chinese authorities to preserve, and describe the information that such documents contained.

9. With respect to the 2017 "oral instruction" referred to in Irico's response to Interrogatory No 2, Irico is required to identify by name and position all persons who conveyed the "oral instruction," the dates each such person conveyed the "oral instruction," the persons by names and positions at the time to whom the "oral instruction" was conveyed, the offices, facilities or other locations at which the "oral instruction" was conveyed, the content of the "oral instruction" and all reasons upon which Irico contends the "oral instruction" was effective if Irico so contends.

10. Inasmuch as Irico's response to Interrogatory No 2 states that Irico is not aware of the destruction of "original invoices for sales, accounting books, general ledgers, financial accounting reports, and bank statements" from 1995 to 2007, Irico shall state whether it is prepared to produce all such materials to the PPs?  If not, why not?

11. Irico is directed to describe its "internal practices" for the maintenance of "material related to operational documents, administrative documents, technical records and communications with agencies of the PRC government and Chinese Communist Party."

//
//
//

INTERROGATORY No 4

State when and how You first learned of potential anticompetitive conduct concerning the pricing of Cathode Ray Tubes.

IRICO'S INITIAL RESPONSE TO INTERROGATORY No 4

Irico reasserts and incorporates each of the General Objections and Objections to the Definitions and Instructions set forth above.  Irico further objects to the undefined terms "potential," "concerning" and "pricing" as they render the interrogatory vague and ambiguous.  Irico also objects to the undefined term "anticompetitive conduct" on the grounds that it calls for a legal conclusion and is otherwise vague, ambiguous, and overbroad.  Subject to and without waiving the objections stated above, Irico responds that it first learned of the allegations in Plaintiff's Complaint on December 25, 2007, when it received a summons from the United States District Court for the Northern District of California in the matter *Figone v LG Electronics, Inc*, 07-cv-6381.

DISCUSSION OF INTERROGATORY No 4

Irico's vagueness objection is not well taken, but as its counsel pointed out in the December 20 hearing, the interrogatory is an argumentative inquiry.  A slight modification should eliminate that problem.

REQUIRED FURTHER RESPONSE TO INTERROGATORY No 2

State when Irico had reason to believe that manufacturers or distributors of CRT had at any time after 1997 communicated with one another about prices or output of CRT and how Irico came to this belief.

INTERROGATORY No 16

Please describe with particularity the basis for the contention, as stated in paragraph 9 of the Zhang Declaration, that "Irico Group directly appointed the management of Irico Display," including: a. The identity of all Persons with knowledge of the basis for the contention; and b. The identity of all Documents supporting the contention.

INITIAL RESPONSE TO INTERROGATORY No 16

Subject to and without waiving the objections stated above, Irico responds that it will conduct a reasonable search for information responsive to this Interrogatory, if any, and supplement its response as necessary.

IRICO'S SUPPLEMENTAL RESPONSE TO INTERROGATORY No 16

Subject to and without waiving the foregoing objections, Irico states as follows:

Hard-Copy Documents

Pursuant to Chinese law, the Ministry of Finance and State Archives Administration requires companies like Irico to maintain and preserve certain accounting archives, including but not limited to original invoices for sales,

accounting books, general ledgers, financial accounting reports, and bank statements.  See IRI-CRT-00000900.  Irico followed and continues to follow these requirements.  In addition, Irico's internal practices included the maintenance of additional archives of material related to operational documents, administrative documents, technical records and communications with agencies of the PRC government and Chinese Communist Party.  Irico is not aware of records from the 1995 to 2007 time period that were preserved in the various archives being destroyed.  Irico understands that hard copy documents not preserved in the archives were not required to be maintained in the ordinary course of business during the period 1995 to 2007.  Irico does not have records regarding the specific hard copy documents that would have existed at the time the complaint was served on Irico and were not preserved in the archives during the time of 1995 to 2007.

In its search for potentially responsive, hard copy files outside of the archives, Irico has learned of a few possible circumstances in which certain Irico hard copy files may have been unintentionally lost or destroyed.  Irico is not aware whether any of the documents lost in the events described below were: a) created in the time period 1995 through 2007, or b) relevant or responsive to any of the discovery requests issued to Irico during the course of this litigation.

The specific instances at issue include:
▪ A warehouse fire at the headquarters of Irico Group in 2017, which is believed to have resulted in the loss of some financial documents;
▪ The 2012 move of the offices of the Irico Sales Company2 from the Irico CRT Plant No. 1 to other offices at Irico Group's headquarters during which certain hard copy files may not have been transferred; and,

▪ A subsequent renovation of the offices housing the disbanded Irico Sales Company in 2014 in which historical records may have been lost.

Irico is continuing to review its hard copy files and will update its response to this interrogatory if it identifies additional responsive information.

Electronic Documents

Based on its present knowledge, Irico understands that electronic documents were not regularly maintained in an electronic format by the company in the ordinary course of business during the period 1995 to 2007.  There was no obligation under Chinese law to preserve electronic documents or data.  Because no such obligation existed and Irico had limited electronic storage capacity, any documents required to be maintained under Chinese law, including original invoices for CRT sales, accounting books, general ledgers, financial accounting reports, and bank statements, or in the Corporate Archives of Irico, were printed and transferred to the archives.  Irico further understands that it regularly overwrote existing electronic data due to limited storage capacity during that time period.  For example, Irico believes that its servers overwrote email data every three to five days on average due to storage limits for the period including and prior to 2007.

Irico has reviewed and produced all responsive data from relevant and available computers from the time period 1995 to 2007.  Irico is aware that computers of departed employees and/or older versions of computers were recycled.  Irico is not aware of whether any of the recycled computers contained: a) any data whatsoever; b) any documents created in the time period 1995 through 2007, or

c) any documents relevant or responsive to any of the discovery requests issued to Irico during the course of this litigation.

IRICO'S SECOND SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 16

Irico reasserts and incorporates each of the General Objections, Objections to the Definitions and Instructions, and specific objections to Interrogatory No. 16 set forth above.

Subject to and without waiving the foregoing objections, Irico states as follows: Irico is no longer in the CRT business and most employees and management from that line of business have since left the company.  Identifying specific documents that might have existed between 1995 and 2007 is not always possible given the limited knowledge of available resources.  Irico has provided information, and now provides additional information, some of which is beyond the scope of the specific requests in Interrogatory 16 to provide additional context regarding the available responsive information.

Hard-Copy Documents

Irico has not identified any specific, responsive hard-copy documents from the 1995 to 2007 period that were lost or destroyed after the complaint was served on Irico.  Based on its further investigation, Irico has determined that the following types of documents may have been created between 1995 to 2007 and not preserved in Irico's archives, but Irico is unable to determine whether any individual documents in these categories may have been responsive, whether or

how individual documents were lost or destroyed, or the date of such loss, if it occurred:

- Sales reports containing general CRT market information (see Wang Zhaojie Mar. 6, 2019 Dep. Tr. 37:20-38:18);
- CRT sales contracts with customers;
- Correspondence with customers regarding CRT sales; and
- Handwritten working notes taken by individual employees during the course of performing their job functions, including Wang Zhaojie and Wang Ximin.

Since the above categories of documents were not required to be preserved under the Chinese regulations nor under Irico's own internal practices, Irico does not believe that these records were maintained in any systematic format and employees have confirmed that they regularly discarded these materials.

Based on its further investigation, Irico has also determined the following regarding previously disclosed incidents of unintentional loss of hard copy documents:

- The warehouse fire at Irico headquarters occurred in August 2017 and resulted only in the loss of accounting receipts from transactions occurring between 2016 and 2017; and
- The 2012 office move and subsequent 2014 renovation of the Irico Sales Company offices did not result in the loss of any documents required to be preserved under Chinese law or Irico's internal practices, including any original copies of sales invoices or expense receipts.  The Irico Sales Company was closed in 2004.  At that time, records required to be preserved under Chinese regulations or Irico's internal practices were stored in the archives, pursuant to previously discussed practices. Records of the Irico Sales Company that were not required to be maintained under Chinese regulations or Irico's internal practices

were likely not preserved from the period preceding the closure of the Company in 2004, as Irico began a reduction in sales and administrative staff at that time and transitioned remaining staff to selling on behalf of Irico Electronics and Display.  If such records existed and were not destroyed in or soon after 2004, they may not have been maintained upon the office move in 2012.  At present, Irico has no way of knowing exactly what records, if any, might have remained in the former offices of Irico Sales Company, since several years had passed at the time of the office move since any such records were reviewed or utilized.

Irico is continuing to review its hard copy files and will update its response to this interrogatory if it identifies additional responsive information.

Email Systems

Irico began using email in approximately the 2004-2005 time period.  At first, Irico issued email addresses only at the departmental level rather than to individual employees.  Thus, for example, the Sales Department personnel would share a single email address issued to that department.  Over time, Irico expanded the issuance of individual emails according to business need and consistent with the available email storage capacity at that time.

At the time that Irico first introduced email through at least the end of 2007, electronic documents generally, and email specifically, were not widely used. At that time, the company had limited storage available to an individual user, whose accounts typically allowed for storage of only 1-2 MB of email.  As a result of this limited storage, email users, depending on the volume of email received,

would need to delete emails frequently in order to allow for the delivery of additional email.

In addition to limited individual account capacity, Irico's email server likewise had limited storage capacity.  Due to this limited capacity, the server itself would need to overwrite the oldest emails in order to keep the server from reaching its storage capacity.  The frequency of this process varied depending on the volume of email that the company received.  During periods of higher email activity, email would be overwritten every 3-5 days on average.  During periods of lower activity, such as during the Chinese New Year holiday, emails over a longer period may be stored, for example closer to 14 days.  In any event, Irico had a back-end server policy to delete all emails older than 20 days from the time that Irico started using email through at least the end of 2007.

Other Electronic Systems

Irico did not use a networked computer system during the period 1995 – 2007. Likewise, Irico did not have any centralized storage systems for electronic documents.

Handheld Devices

Irico did not issue electronic handheld devices to its employees, nor did Irico reimburse employees for a personal cell phone or expenses related to it.  If an employee chose to use a personal cell phone for business, Irico had no control or oversight regarding that device, and Irico did not deploy any enterprise software related to handheld devices.  Irico has asked remaining current employees who

may be relevant to the issues raised by DPPs whether they have any cell phone invoices from the 1995 to 2007 timeframe, but no such documents have been located.

DISCUSSION OF INTERROGATORY No 16

Repeatedly, the PPs note at the outset that Irico's response to Interrogatory No 16 is much less fulsome than those of other defendants in this litigation to analogous inquiries; in particular, the PPs observe that "the documents produced by those [other] defendants are the minutes of meetings attended by the co-conspirators, including Irico, in furtherance of the conspiracy," but "to date, Irico has produced none of its own notes of these meetings, and only a few documents referencing meetings or communications with the other defendants."  PP Ltr, Nov 8, 2021 at 1 -2.  By way of comparison, the PPs have compiled a wealth of documentation that appears to establish IRICO's presence at, and participation in, competitor meetings and discussions of CRT pricing.  This compilation is the subject of another discovery motion not yet fully briefed seeking to admit many of these documents pursuant to FRE 801(d)(2)(E).  Further consideration of the motion to compel regarding Interrogatory No 16 shall abide consideration of this discovery motion.

IT IS SO ORDERED.

Date:    December 22, 2021

_____
Vaughn R Walker
United States District Judge (Ret)

*(ORDER CONTINUES ON NEXT PAGE)*

The Recommended Order of the Special Master is Accepted and Ordered / ~~Denied / Modified and Recommendation re Admission Requested ____ Yes ____ No~~.

Date: January 6, 2022

 _____
 Honorable Jon S Tigar
 United States District Judge