Mario N. Alioto (56433)
Joseph M. Patane (72202)
Lauren C. Capurro (241151)
TRUMP, ALIOTO, TRUMP & PRESCOTT, LLP
2001 Union Street, Suite 482
San Francisco, CA 94123
Telephone: (415) 563-7200
Facsimile: (415) 346-0679
Email: malioto@tatp.com
       jpatane@tatp.com
       laurenrussell@tatp.com

***Lead Counsel for the Indirect
Purchaser Plaintiffs for the 22 States***

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | MASTER FILE NO. 4:07-cv-5944 JST |
| | MDL NO. 1917 |
| This Document Relates to: | **INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR DISTRIBUTION OF ATTORNEYS' FEES, EXPENSES, AND INCENTIVE AWARDS** |
| *INDIRECT PURCHASER ACTIONS* | |
| | Hearing Date: May 12, 2022 |
| | Time: 2:00 p.m. |
| | Courtroom: 6, 2nd Fl. (Oakland) |
| | Judge: Hon. Jon S. Tigar |

## <u>TABLE OF CONTENTS</u>

NOTICE OF MOTION AND MOTION .........................................................................

 I.  INTRODUCTION................................................................................ 1

 II.  THE COURT SHOULD ADOPT LEAD COUNSEL'S PROPOSED
    ALLOCATION OF THE FEE AWARD ............................................... 3

   A.  Legal Standard............................................................................ 3

   B.  The Settlement Agreements Provide for Lead Counsel's Good Faith
     Allocation of Fees ..................................................................... 4

   C.  Lead Counsel's Proposed Fee Allocation Uses an Objective Formula
     to Which the Vast Majority of Firms Have Agreed ..................... 5

   D.  Lead Counsel's Proposed Allocation to the Objectors Is Fair and
     Reasonable ................................................................................. 7

 III.  IPP COUNSEL SEEK IMMEDIATE DISTRIBUTION OF ATTORNEYS'
    FEES, EXPENSES, AND INCENTIVE AWARDS ............................ 11

 IV.  CONCLUSION ................................................................................. 11

1

## <u>TABLE OF AUTHORITIES</u>

2

**CASES**

3

*In re Cathode Ray Tube Antitrust Litig.*,
4
    No. 20-15697, 2021 WL 4306895 (9th Cir. Sept. 22, 2021) ................................................... 1, 2

5

*Class Plaintiffs v. Jaffe & Schlesinger, P.A.*,
6
    19 F.3d 1306 (9th Cir. 1994) ...................................................................................................... 3, 8

7

*In re FPI/Agretech Sec. Litig.*,
    105 F.3d 469 (9th Cir. 1997) .................................................................................................... 3, 4, 7-8
8

*Hartless v. Clorox Co.*,
9
    273 F.R.D. 630 (S.D. Cal. 2011) ...................................................................................................... 4

10

*Hartless v. Clorox Co.*,
11
    473 F.App'x 716 (9th Cir. 2012) ...................................................................................................... 4

12

*In re Initial Pub. Offering Sec. Litig.*,
    No. 21 MC 92, 2011 WL 2732563 (S.D.N.Y. July 8, 2011) ..................................................... 3, 8
13

*Lindy Bros. Builders, Inc. of Philadelphia v. Am. Radiator & Standard Sanitary Corp.*,
14
    540 F.2d 102 (3d Cir. 1976) ........................................................................................................... 3

15

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
16
    No. 07 MD 1827, 2013 WL 1365900 (N.D. Cal. Apr. 3, 2013) .................................................... 8

17

*In re Thirteen Appeals Arising Out of San Juan Dupont Plaza Hotel Fire Litig.*,
18
    56 F.3d 295 (1st Cir. 1995) ............................................................................................................. 4

19

*In re Vitamins Antitrust Litig.*,
    398 F. Supp. 2d 209 (D.D.C. 2005) ............................................................................................... 3

20

**RULES**

21

9th Cir. R. 36-3(a) ...................................................................................................................... 11
22

23

24

25

26

27

28

INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR DISTRIBUTION OF
ATTORNEYS' FEES, EXPENSES, AND INCENTIVE AWARDS

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## NOTICE OF MOTION AND MOTION

### TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on May 12, 2022 at 2:00 p.m., before the Honorable Jon S. Tigar, at the United States District Court for the Northern District of California, 1301 Clay Street, Oakland, California 94612, the Indirect Purchaser Plaintiffs ("IPPs") will move the Court to authorize IPP Lead Counsel to distribute the attorneys' fees, expenses, and incentive awards, as set forth in the July 13, 2020 Order Granting Final Approval, ECF No. 5786.

The grounds for this motion are that the Ninth Circuit affirmed this Court's approval of the IPPs' settlements, as well as the award of attorneys' fees, expenses, and incentive awards to class representatives (ECF No. 5786), and remanded to this Court "for further proceedings, including but not limited to, implementation of the settlements." *In re Cathode Ray Tube Antitrust Litig.*, No. 20-15697, 2021 WL 4306895, at *2 (9th Cir. Sept. 22, 2021).

This motion is based on this Notice of Motion and Motion, the supporting Memorandum of Points and Authorities, the accompanying Declarations of Mario N. Alioto in support of the motion, and any further papers filed in support of this motion, the argument of counsel, and all pleadings and records on file in this matter.

1    **I.    INTRODUCTION**

2         This case has been pending since November of 2007. This Court approved the original

3    settlements, attorneys' fees, expenses, and incentive awards in 2016. In July 2020, following the

4    Ninth Circuit's mandate to reconsider, this Court granted final approval to amended settlements and

5    approved a reduced aggregate fee award. It also reaffirmed its approval of the expenses and incentive

6    awards to the class representatives. ECF No. 5786.

7         On September 22, 2021, the Ninth Circuit affirmed this Court's approval of the amended

8    settlements and "remand[ed] [the case] to the district court for further proceedings, including but

9    not limited to, implementation of the settlements." *In re Cathode Ray Tube Antitrust Litig.*, 2021

10   WL 4306895, at *2. On December 23, 2021, the Ninth Circuit denied objector-appellants' petitions

11   for rehearing and rehearing en banc, ECF No. 5973, and issued its mandate shortly thereafter, ECF

12   No. 5975. Pursuant to that mandate, this Court has jurisdiction over the distribution of the settlement

13   funds and the fee award.

14        On March 4, 2022, the "Other Repealer States" ("ORS") and "Non-Repealer States"

15   ("NRS") objectors filed a Petition for a Writ of Certiorari to the United States Supreme Court

16   seeking to appeal the Ninth Circuit's ruling that the entry of final judgment moots their appeal of

17   the denial of their motions to intervene to allege their claims. ECF No. 5994.[1] Nevertheless, IPP

18   Counsel expects the amended settlements and the fee award to become final shortly, paving the way

19   for distribution of the settlement funds and the fee award.

20        To date, IPP Counsel and the settlement class representatives have received no compensation

21   for their 14+ years of work in this case, and no reimbursement of their expenses. By this motion,

22   Lead Counsel seeks the Court's authorization to distribute the $129,606,250 in Court-approved

23   attorneys' fees, $3,174,647.55 in expenses to IPP Counsel, and $450,000 in incentive awards to the

---

[1] *See* Declaration of Mario N. Alioto in Support of IPPs' Motion for Distribution of Attorneys' Fees, Expenses, and Incentive Awards ("Alioto Decl."), ¶ 2, Ex. A (copy of Petition for Writ of Certiorari).

INDIRECT PURCHASER PLAINTIFFS' MOTION FOR DISTRIBUTION OF
ATTORNEYS' FEES, EXPENSES, AND INCENTIVE AWARDS

class representatives, in accordance with the Final Approval Order (ECF No. 5786) as soon as that Order becomes final.[2]

To that end, Lead Counsel has worked with other core firms to devise an objective formula for allocating the new, reduced fee award. The formula starts with the fee allocation approved by this Court in 2017 (ECF No. 5122), adds additional lodestar for those firms that worked on negotiating and defending the amended settlements, calculates a pro-rata percentage for each firm, and applies the percentage to the new fee award plus interest.

Lead Counsel has worked to get universal agreement on the fee allocation, and 47 out of 50 firms—whose fees comprise approximately 98 percent of the amount to be distributed—have agreed to the allocation. The three firms that have not agreed are the same firms that have objected to every aspect of the settlements and fees throughout the past seven years of approval proceedings—The Law Offices of Francis O. Scarpulla ("Scarpulla"), Cooper & Kirkham, P.C. ("C&K"), and Theresa D. Moore ("Moore") (collectively referred to as "Objectors").

These intransigent counsel's continued efforts to unjustifiably extract more fees from this litigation—and further delay distribution—should be rejected. Not only did Objectors do nothing to help obtain the amended settlements that resulted in the new fee award, but they also opposed the amended settlements at every turn. They sought to disrupt and delay the finality of amended agreements that would pay members of the 22 State Classes (their former clients) hundreds of millions of dollars—despite having no standing to do so—in order to leverage a settlement for the ORS and NRS objectors and a larger fee award for themselves. As a result of Objectors' adverse actions, their relative contribution to the result achieved for the class vis-à-vis the contributions by other IPP firms is even lower now than it was in 2017, at the time of the original fee allocation. Accordingly, Lead Counsel seeks approval by this motion to reduce the Objectors' pro-rata allocation of the new fee award by 50%, as further explained below.

---

[2] Lead Counsel and the claims administrator are also working on finalizing claims and will be filing a separate motion to disburse the settlement funds to claimants. Alioto Decl. ¶ 3.

INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR DISTRIBUTION OF
ATTORNEYS' FEES, EXPENSES, AND INCENTIVE AWARDS

In addition, Lead Counsel respectfully requests that the Court approve reimbursement of expenses and payment of incentive awards to plaintiff representatives in the amount of $450,000, as previously ordered by the Court.

## II.   THE COURT SHOULD ADOPT LEAD COUNSEL'S PROPOSED ALLOCATION OF THE FEE AWARD

### A.  Legal Standard

In allocating an attorney fee award, courts examine "the relative efforts of, and benefits conferred upon the class by, co-counsel . . .." *In re FPI/Agretech Sec. Litig.*, 105 F.3d 469, 474 (9th Cir. 1997) (citing *Class Plaintiffs v. Jaffe & Schlesinger, P.A.*, 19 F.3d 1306, 1308 (9th Cir. 1994); *see also In re Initial Pub. Offering Sec. Litig.*, No. 21 MC 92, 2011 WL 2732563, at *9 (S.D.N.Y. July 8, 2011) ("determination of a reasonable and fair allocation of the aggregate award requires a focus on the relative contributions of each firm[]"). Courts also examine "whether the attorneys' 'specific services benefited the fund—whether they tended to create, increase, protect or preserve the fund.'" *Class Plaintiffs*, 19 F.3d at 1308 (quoting *Lindy Bros. Builders, Inc. of Philadelphia v. Am. Radiator & Standard Sanitary Corp.*, 540 F.2d 102, 112 (3d Cir. 1976)).

The weight of authority also holds that the district court should give "substantial deference" to Lead Counsel's proposed fee allocation. *In re Initial Pub. Offering*, 2011 WL 2732563, at *7 ("District courts routinely give lead counsel the initial responsibility of devising a fee allocation proposal 'as they deem appropriate, based on their assessments of class counsel's relative contributions.' District courts similarly acknowledge that, by working together and communicating daily, often from the case's inception, class counsel is best positioned to determine the 'weight and merit of each other's contributions.'") (quoting *In re Vitamins Antitrust Litig.*, 398 F. Supp. 2d 209, 224 (D.D.C. 2005) (listing cases in support)).

Since 2008, Lead Counsel has had the responsibility to, *inter alia*, "promote the orderly and efficient conduct of this litigation and to avoid unnecessary duplication and unproductive efforts;" "[t]o coordinate all motions, requests for discovery, experts, and other pretrial proceedings regarding the position of all Plaintiffs;" "[t]o record and administer all times and expenses of counsel and staff;" and "[t]o monitor the activities of Plaintiffs' counsel and to implement procedures to ensure

3

MDL NO. 1917

INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR DISTRIBUTION OF
ATTORNEYS' FEES, EXPENSES, AND INCENTIVE AWARDS

that schedules are met and unnecessary expenditures of time and funds are avoided[.]" Order Appointing Interim Lead Counsel at 5-6, ECF No. 282. Given these and other responsibilities, which are typical in large antitrust class actions, it is not surprising that "federal courts . . . have recognized that lead counsel are better suited than a trial court to decide the relative contributions of each firm and attorney." *Hartless v. Clorox Co.*, 273 F.R.D. 630, 646 (S.D. Cal. 2011) (citations omitted), *aff'd in part*, 473 F.App'x 716 (9th Cir. 2012).

Finally, the district court's discretion to allocate an attorney fee award is "extremely broad." *In re Thirteen Appeals Arising Out of San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295, 309 (1st Cir. 1995) (citation omitted); *see also In re FPI/Agretech Sec. Litig.*, 105 F.3d at 473 ("So long as the district court provides a 'concise but clear explanation' of its reasons, and those reasons are supported by the record, the reviewing court should accept its decision.") (citation omitted).

## B. The Settlement Agreements Provide for Lead Counsel's Good Faith Allocation of Fees

Pursuant to the settlement agreements that have been approved by the Court and upheld by the Ninth Circuit, "[t]he Fee and Expense Award, as approved by the Court, shall be paid solely from the Settlement Fund. After this Agreement becomes final . . . the Fee and Expense Award shall be paid to Class Counsel within ten (10) business days."[3] Those settlement agreements also expressly provide that it is Lead Counsel's duty to allocate the fees:

> Class Counsel shall allocate the attorneys' fees among Plaintiffs' counsel in a manner which Class Counsel in good faith believes reflects the contributions of such counsel to the prosecution and settlement of the Action.[4]

Thus, in addition to the legal authorities cited above, the Court-approved settlement agreements require Lead Counsel to allocate fees in accordance with his good faith views of the participating firms' contributions to the prosecution and settlement of this action. This is exactly what Lead Counsel has done here.

---

[3] ECF No. 3862-1, Ex. A, ¶ 23(b) (Philips Settlement Agreement). All other settlement agreements include the same or similar provisions. *See* ECF Nos. 3862-2 – 3862-5, 3876-1.

[4] ECF No. 3862-1, Ex. A, ¶ 23(b).

INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR DISTRIBUTION OF ATTORNEYS' FEES, EXPENSES, AND INCENTIVE AWARDS

### C.  Lead Counsel's Proposed Fee Allocation Uses an Objective Formula to Which the Vast Majority of Firms Have Agreed

Lead Counsel determined an amount of $134,254,667 to be distributed to IPP Counsel ("Total Fee Distribution"). Alioto Decl. ¶ 4. This amount consists of the Court's attorney fee award of $129,606,250 (23.66% of the settlement funds), plus an estimated amount of interest earned on the attorney fee award, less an amount being held back for settlements with other objectors. *Id.*[5]

The proposed fee allocation formula is simple and objective. It relies on two variables: (1) each firm's individual 2017 fee allocation ("Individual Firm 2017 Allocation"), as previously approved by this Court (ECF No. 5122), and (2) the firm's additional lodestar, if any, devoted to work on the amended settlements from March 1, 2019 through September 30, 2021 ("Amended Settlement Lodestar Amount"). Those two sums (Individual Firm 2017 Allocation + Amended Settlement Lodestar Amount) are combined to generate the numerator in the pro-rata calculation for each firm. Next, all firms' Individual 2017 Allocations + Amended Settlement Lodestar Amounts are combined to generate an All Firms' 2017 Allocation + All Firms' Amended Settlement Lodestar Amount, which serves as the denominator in the pro-rata calculation. The formula for calculating each individual firm's pro-rata allocation percentage is as follows:

| Individual Firm 2017 Allocation <br> + Amended Settlement Lodestar Amount <br> All Firms' 2017 Allocation <br> + All Firms' Amended Settlement Lodestar Amount | =  Individual Firm New Allocation Percentage |
|---|---|

The Individual Firm New Allocation Percentage is then applied to the Total Fee Distribution above to determine each firm's new fee allocation. Alioto Decl. ¶ 6.

In April of 2019, after the matter was remanded, the Court admonished all counsel that:

[M]ost of the issues are not going to be relitigated in this case. That's not to the benefit of this very old case. It's not to the benefit of class members. It's really not to anyone's benefit. So my goal is to identify the things that haven't been done, that

---

[5] As previously disclosed to the Court, four groups of objectors voluntarily dismissed their appeals of the original settlements pursuant to settlements with IPPs. *See* ECF No. 5587 at 9. These dismissals occurred before enactment of Fed. R. Civ. P. 23(e)(5)(B). No payment is due to those objectors until the amended settlements and all fee proceedings are final, at which time Lead Counsel intends to present these settlements to the Court. Alioto Decl. ¶ 5.

INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR DISTRIBUTION OF ATTORNEYS' FEES, EXPENSES, AND INCENTIVE AWARDS

1   need to be done; to identify the things that really do need to be done over, and do
2   those things over; and then proceed from there.

ECF No. 5444 (CMC Tr. at 5:14-17, April 9, 2019).

3       The above formula relies predominantly on the Court's 2017 "Order Re: Allocation of IPP
4   Attorneys' Fee Award" dated February 28, 2017, ECF No. 5122 ("2017 Allocation Order"). In 2016,
5   Special Master Martin Quinn extensively evaluated and recommended the allocation of the initial
6   2016 fee award in this case. *See* Corrected Special Master's Report & Recommendation Re
7   Allocation of IPP Class Counsel Attorneys' Fees, Oct. 24, 2016, ECF No. 4976. That Report &
8   Recommendation was reviewed again in detail by this Court, and a final allocation order was
9   entered. *See* 2017 Allocation Order.

10      Lead Counsel's proposed formula includes $6,103,876 in lodestar for work performed by
11  certain firms from March 1, 2019 through September 30, 2022 in negotiating the amended
12  settlements, obtaining approval of them, and defending them on appeal.[6] None of the extensive work
13  performed by IPP Counsel to defend the original settlements during the three and three-quarters
14  years from June 1, 2015 to February 28, 2019 is considered in this new allocation. Alioto Decl. ¶ 8.

15      The original fee of $158,606,250 was reduced to $129,606,250 to preserve the settlements
16  for class members. The allocation formula starts from the premise that all firms should share in that

---

18  [6] That work included, *inter alia*: efforts to bring Massachusetts, Missouri, and New Hampshire ("the
19  Three States") into the 2016 settlements after remand, which were rejected by the ORS objectors;
    preparation for, briefing, and attendance at multiple case management conferences; researching and
20  drafting a motion to set trial date; participation in mandatory settlement and discovery conferences
    before Judge Corley; provision of extensive trial and discovery materials to ORS and NRS counsel
21  pursuant to mediation before Judge Corley; opposing the ORS objectors' motions to vacate the 2016
    settlements; negotiating and drafting the amended settlements with Defendants; responding to ORS
22  and NRS objectors' motions to intervene for the purpose of alleging their claims; successfully
    moving for preliminary approval of the amended settlements and devising the notice plan, including
23  responding to ORS and NRS objections thereto; successfully opposing the ORS and NRS objectors'
    motion to stay settlement approval and successfully moving to dismiss their improper appeal of the
24  preliminary approval order; successfully moving and arguing for final approval of the amended
    settlements, including responding to ORS and NRS objections; successfully opposing the ORS/NRS
25  objectors' further motions to intervene for the purpose of objecting to and appealing settlement
    approval, and their motion to stay final approval; moving to dismiss objectors' appeals of settlement
26  approval for lack of standing; responding to the ORS/NRS objectors' appeals of this Court's denial
    of intervention for the purpose of bringing their claims; and, successfully defending the amended
27  settlements and fee award on appeal to the Ninth Circuit. *See* Alioto Decl. ¶ 7.

reduction in proportion to the amount they were to receive under the 2017 allocation. Thus, the formula—which Lead Counsel devised in consultation with the other core firms—starts with the 2017 allocation and then gives consideration to the additional work performed on the amended settlements that benefitted settlement class members and the other IPP firms. Lead Counsel also conferred with the non-lead firms regarding their allocations and the formula being used to ensure they understood how it works and why it is fair. As a testament to the equitable nature of the new allocation formula, 47 out of the 50 firms that were included in the 2017 allocation have agreed to their allocation amount generated by this formula. Alioto Decl. ¶ 9. These 47 firms represent approximately 98 percent of the fees being allocated here.

### D.  Lead Counsel's Proposed Allocation to the Objectors Is Fair and Reasonable

Three firms have objected to their proposed allocations.[7] As indicated, they are the same firms that have been objecting to virtually everything related to the original and amended settlements and fees for the last seven years. All three firms chose to stop representing the 22 State Classes and instead sought appointment as counsel for other class members. Scarpulla and Moore serve as counsel for the ORS objectors, while C&K serves as counsel for the NRS objectors. The fee amounts allocated to these three firms by the Court in the 2017 allocation represented a very small amount – approximately 2.3 percent – of the total fees allocated at that time. Alioto Decl. ¶ 10.

Lead Counsel proposes to use the same formula for the Objectors as for the other IPP firms, except that an additional 50 percent reduction is made to each Objector's pro-rata fee allocation. Lead Counsel made these downward adjustments to the Objectors' fee allocations on the grounds that (a) they *did not contribute* to the amended settlements, (b) their work sought to *undermine* those settlements, and (c) their work *harmed* the settlement class members by creating continued delay and expense.

As noted above, a fee allocation among class counsel assesses the "relative efforts of [counsel], and [the] benefits conferred upon the class . . .." *In re FPI/Agretech Sec. Litig.*, 105 F.3d

---

[7] IPP Counsel met and conferred with Objectors regarding their proposed allocations and objections but were unable to resolve this dispute. Alioto Decl. ¶ 11.

INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR DISTRIBUTION OF
ATTORNEYS' FEES, EXPENSES, AND INCENTIVE AWARDS

at 474 (citations omitted). Indeed, in its 2017 Allocation Order, the Court recognized that where a firm's "objections hurt, rather than helped the class[,]" that firm's fee allocation may be reduced. *See* 2017 Allocation Order at 7-8 ("The Special Master did not penalize C&K simply for making objections; rather, he considered whether C&K's actions benefited the class and concluded that certain of C&K's objections hurt, rather than helped the class."). The Court also recognized that a firm's fee allocation may be reduced where a firm shows "a lack of collaboration and a disregard of the interests of the Class[,]" by failing to take steps that would have avoided a dispute with the class, as well as by asserting "very weak" objections that lacked support. *Id*. at 8-9. *Accord In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 07 MD 1827, 2013 WL 1365900, at *9 (N.D. Cal. Apr. 3, 2013) ("Factors meriting a downward adjustment include . . . *failure to act professionally and collaboratively to prosecute the joint IPP effort* . . . .") (emphasis added).[8]

As described below, the "relative efforts" of the Objectors pertaining to the members of 22 State Classes since the Ninth Circuit's remand in 2019 have indisputably hurt class members by putting their recovery at risk and significantly delaying it. Once again, Objectors' "unhelpful actions," 2017 Allocation Order at 9, warrant a downward adjustment of their pro-rata fee allocation in favor of the 47 IPP firms that have worked together to "create, increase, protect [and] preserve the fund." *Class Plaintiffs*, 19 F.3d at 1308 (citation omitted).

The multiple ways in which Objectors have "hurt, rather than helped" the 22 State Classes since remand are too numerous to recount. A few are highlighted below.

*Refusal to Participate in and Preserve the 2016 Settlements.* After the Ninth Circuit remanded the case to this Court in February 2019, IPP Counsel proposed to: (1) appoint separate counsel for the Three States that had objected to the 2016 settlements, (2) allow class members from those states to opt out or, alternatively, to file claims, and (3) have the Court reduce IPP Counsel's

---

[8] *See also In re Initial Pub. Offering*, 2011 WL 2732563, at *4 (approving Lead Counsel's proposed reduction of certain firms' lodestars by half where they had abandoned the case); Alioto Decl. ¶ 12, Ex. B (Supplemental Report and Recommendation of Special Master Re Allocation of Attorneys' Fees in the Indirect-Purchaser Class Action, *In re TFT-LCD Antitrust Litig.*, No. 07 MD 1827 (N.D. Cal. Dec. 18, 2012), ECF No. 7375 at 6-10 (awarding lower multiplier due to firm's failure to act in the best interests of the class, and failure to work constructively with other firms)).

INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR DISTRIBUTION OF
ATTORNEYS' FEES, EXPENSES, AND INCENTIVE AWARDS

fee award by "whatever amount it deemed appropriate" to supplement the settlement fund (and prevent dilution of existing class members' claims) and pay objectors' counsel's fees. *See* Joint Case Management Conference Statement at 5-9, ECF No. 5416. Indirect purchasers from the Three States would have participated equally in the settlements under this proposal. Objectors refused this offer. Instead, they demanded, *inter alia*, that this Court "vacate the final approval order," appoint them as co-lead counsel for the IPPs, and set a schedule for re-litigating and trying the case. *Id.* at 19-31. This refusal risked the 22 State Classes' loss of $500+ million in settlements and millions of dollars in accrued interest.

*Motion to Vacate the Initial Settlements.* In July 2019, Scarpulla and Moore moved to vacate the order approving the 2016 settlements and final judgment. ECF No. 5527. While that motion was pending, Magistrate Judge Corley held a Court-ordered mediation at which IPPs in the 22 States and Defendants agreed in principle to amend the existing settlements. ECF No. 5531. IPP Counsel were then forced to oppose the motion to vacate to protect and preserve the settlements, arguing that approval of the amendments to the settlements would moot that motion, and that vacating the order and judgment before amended settlements were in place could prejudice IPP class members by requiring the return of hundreds of millions of dollars in escrowed settlement funds, including $13 million in interest accrued on those funds. *See generally* ECF No. 5537. Scarpulla and Moore thereafter administratively terminated the motion pending approval of the amended settlements. ECF No. 5551 at 2.

*Efforts to Delay and Overturn the Amended Settlements.* After IPP Counsel negotiated the amended settlements, which applied only to members of the 22 State Classes and did not include a release from a nationwide class, Objectors made repeated, failed attempts to challenge the amended settlements on behalf of their clients, both before this Court and in the Ninth Circuit, including:

- Opposing preliminary approval of the amended settlements (ECF No. 5607) even though, (1) their clients were not settlement class members and lacked standing to object, (2) the amended settlements would preserve $13 million in interest earned on the original settlements, and (3) their clients were not prejudiced by the amended settlements. *See* Order Granting Preliminary Approval at 7, 16, ECF No. 5695.

INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR DISTRIBUTION OF
ATTORNEYS' FEES, EXPENSES, AND INCENTIVE AWARDS

- Appealing from the preliminary settlement approval order in the Ninth Circuit (ECF No. 5695), despite the Ninth Circuit's clear lack of jurisdiction over preliminary approval orders. *See* ECF No. 5738.

- Objecting to final approval of the amended settlements (ECF No. 5732, 5756) despite the inability of their clients, as non-class members whose claims were not released by the amended settlements, to show that they suffered any "formal legal prejudice" as a result. *See* ECF No. 5786 at 8-9.

- Moving to intervene for the purposes of objecting to the amended settlements and appealing a final judgment if one were entered (ECF No. 5754), despite their inability to "cite a single case or make any argument concerning why the[ir clients] are entitled to intervene for the purpose of presenting their objections to the amended settlements." *See* ECF No. 5780 at 3 (citations omitted).

- Filing an "emergency" motion to stay this Court's Order granting final approval of the class settlement, which was denied, but only after expedited briefing by IPPs. Order, *In re: Indirect Purchaser Plaintiffs v. Toshiba Corp., et al.*, No. 20-15697 (9th Cir. July 22, 2020), ECF No. 29.

- Moving to intervene *again* in July 2020 (ECF No. 5792), this time for the purposes of appealing approval of the amended settlements, despite a continuing failure to "show a protectable interest in the [amended] settlement[s]." ECF No. 5823 at 6 (citation omitted).

- Appealing this Court's approval of the amended settlements and rejection of their objections, and its denial of their motion to intervene in order to object to the amended settlements, despite a continuing lack of standing and failure to show any "formal legal prejudice" resulting from the settlements. *See* Memorandum at 7-8, *In re: Indirect Purchaser Plaintiffs v. Toshiba Corp., et al.*, No. 20-15697 (9th Cir. Sept. 22, 2021), ECF No. 85-1.

- Filing a Petition for a Writ of Certiorari to the United States Supreme Court even though the Ninth Circuit Memorandum decision being challenged is unpublished and therefore not precedential, making it even less likely that certiorari will be granted. *See* 9th Cir. R. 36-3(a) ("Unpublished dispositions and orders of this Court are not precedent, except when relevant under the doctrine of law of the case or rules of claim preclusion or issue preclusion.").

All of these efforts were directly adverse to the interests of class members in the 22 States, and were pursued to: (a) delay the amended settlements and leverage settlements for ORS and NRS class members, and (b) generate more fees for Objectors.

Ultimately, Objectors have delayed the distribution of settlement funds to class members in the 22 States since early 2019, during which time two class representatives and one former named plaintiff have died and many other claimants have likely died. Other claimants have undoubtedly

INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR DISTRIBUTION OF ATTORNEYS' FEES, EXPENSES, AND INCENTIVE AWARDS

moved since filing their claims in 2015, making it difficult (or even impossible) to get them their share of the settlement funds. Alioto Decl. ¶ 13. As a result, Objectors' pro-rata fee allocation should be cut by 50 percent.

## III. IPP COUNSEL SEEK IMMEDIATE DISTRIBUTION OF ATTORNEYS' FEES, EXPENSES, AND INCENTIVE AWARDS

IPP Counsel request that, as soon as the settlements become final, the Court authorize immediate distribution of the $129,606,250 in attorneys' fees plus interest, the $3,174,647.55 in expenses, and the $450,000 incentive awards that it awarded in the Order Granting Final Approval (ECF No. 5786 at 26-27), with provision for hold back or repayment of contested amounts if necessary.

## IV. CONCLUSION

The Court should overrule the objections of the three firms to their proposed fee allocations and order the distribution of the attorneys' fees as proposed by Lead Counsel. The Court should also order that previously awarded expenses be reimbursed, and incentive awards be paid to Court-appointed class representatives.

Dated: March 22, 2022                    Respectfully submitted,

By:    */s/ Mario N. Alioto*
        MARIO N. ALIOTO (56433)
        JOSEPH M. PATANE (72202)
        LAUREN C. CAPURRO (241151)
        **TRUMP, ALIOTO, TRUMP & PRESCOTT, LLP**
        2001 Union Street, Suite 482
        San Francisco, California 94123
        Telephone: (415) 563-7200
        Facsimile: (415) 346-0679
        Email: malioto@tatp.com
              jpatane@tatp.com
              laurenrussell@tatp.com

*Lead Counsel for the Indirect Purchaser Plaintiffs for the 22 States*

INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR DISTRIBUTION OF ATTORNEYS' FEES, EXPENSES, AND INCENTIVE AWARDS