R. Alexander Saveri (173102)
   *rick@saveri.com*
Geoffrey C. Rushing (126910)
   *grushing@saveri.com*
Cadio Zirpoli (179108)
   *cadio@saveri.com*
Matthew D. Heaphy (227224)
   *mheaphy@saveri.com*
Sarah Van Culin (293181)
   *sarah@saveri.com*
SAVERI & SAVERI, INC.
706 Sansome Street
San Francisco, CA 94111
Telephone: (415) 217-6810
Facsimile: (415) 217-6813

*Lead Counsel for Direct Purchaser Plaintiffs*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Master File No. 07-CV-5944-JST<br><br>MDL No. 1917<br><br>**DIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR ORDER AUTHORIZING DISTRIBUTION OF SETTLEMENT FUNDS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date: May 26, 2022<br>Time: 2:00 p.m.<br>Judge: Honorable Jon S. Tigar<br>Courtroom: 6 - 2nd Floor |
| This Document Relates to:<br><br>*ALL DIRECT PURCHASER ACTIONS* | |

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ........................................................................................................... i

TABLE OF AUTHORITIES.....................................................................................................ii

NOTICE OF MOTION AND MOTION....................................................................................1

STATEMENT OF ISSUES TO BE DECIDED .........................................................................2

MEMORANDUM OF POINTS AND AUTHORITIES.............................................................2

I. INTRODUCTION ..........................................................................................................2

II. STATEMENT OF RELEVANT FACTS.......................................................................3

    A. Background of the Settlements...........................................................................3

    B. Notice to Class Members Regarding the Settlements ........................................5

    C. Notice to Class Members Regarding the Claims Process ..................................6

    D. The Settlement Administrator's Review of Claims............................................8

    E. Settlement Funds Available for Distribution....................................................11

    F. Calculations of Claimants' Pro Rata Shares.....................................................12

III. ARGUMENT ................................................................................................................13

IV. CONCLUSION .............................................................................................................17

# TABLE OF AUTHORITIES

**Cases**

*Downes v. Wisconsin Energy Corp. Ret. Account Plan*,
No. 09-C-0637, 2012 WL 1410023 (E.D. Wis. Apr. 20, 2012) .................................................. 16

*In re Anthem, Inc. Data Breach Litig.*,
327 F.R.D. 299 (N.D. Cal. 2018) ............................................................................................... 14

*In re Auto. Parts Antitrust Litig.*,
No. 12-MD-02311, 2019 WL 7877812 (E.D. Mich. Dec. 20, 2019) ......................................... 16

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
MDL No. 1917, Master Case No. C-07-5944 JST, Case No. 14-cv-2058 JST, 2017 WL 565003
(N.D. Cal. Feb. 13, 2017) ................................................................................................... 6, 7, 8

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
No. 14-CV-2058 JST, 2017 WL 2481782 (N.D. Cal. June 8, 2017) ........................................... 5

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
No. C 06-4333 PJH, 2013 WL 12333442 (N.D. Cal. Jan. 8, 2013), *report and recommendation
adopted by* 2014 WL 12879520 (N.D. Cal. June 27, 2014) ...................................................... 16

*In re Initial Pub. Offering Sec. Litig.*,
671 F. Supp. 2d 467 (S.D.N.Y. 2009) ....................................................................................... 16

*In re Ins. Brokerage Antitrust Litig.*,
297 F.R.D. 136 (D.N.J. 2013) ................................................................................................... 16

*In re Int'l Air Transp. Surcharge Antitrust Litig.*,
No. M 06-01793 CRB, 2011 WL 6337625 (N.D. Cal. Dec. 19, 2011), *aff'd*, 577 F. App'x 711
(9th Cir. 2014) ........................................................................................................................... 14

*In re Lithium Ion Batteries Antitrust Litig.*,
No. 13-md-02420-YGR, MDL No. 2420 (N.D. Cal. Dec. 14, 2020) (ECF No. 2684) .......... 15–16

*In re Optical Disk Drive Antitrust Litig.*,
No. 3:10-md-02143 RS (N.D. Cal. Sept. 16, 2019) (ECF Nos. 2906, 2906-1) ......................... 15

*Mehling v. New York Life Ins. Co.*,
248 F.R.D. 455 (E.D. Pa. 2008) ................................................................................................ 16

*Slipchenko v. Brunel Energy, Inc.*,
No. CIV.A. H-11-1465, 2015 WL 338358 (S.D. Tex. Jan. 23, 2015) ....................................... 16

*Standard Iron Works v. ArcelorMittal*,
No. 08 C 5214, 2015 WL 6165024 (N.D. Ill. Oct. 20, 2015) .................................................... 16

**Statutes**

Clayton Act, 15 U.S.C. § 15 .............................................................................................................. 4

Sherman Act, 15 U.S.C. § 1 ......................................................................................................... 3–4

**Treatises**

4 *Newberg on Class Actions* (5th ed.) ............................................................................................ 13

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on Thursday, May 26, 2022, at 2:00 p.m., or as soon thereafter as counsel can be heard, before the Honorable Jon S. Tigar, United States District Judge, at the United States Courthouse, 1301 Clay Street, Courtroom 6, Oakland, California, Direct Purchaser Plaintiffs ("Plaintiffs") will move this Court for an Order authorizing the distribution of settlement proceeds obtained in the Direct Purchaser Actions to class members who submitted valid claims.

Plaintiffs request that the Court enter an Order authorizing payment of all claims approved by the Settlement Administrator, KCC Class Action Services, LLC, the successor company of Gilardi & Co. LLC ("Settlement Administrator")—less funds reserved for claims administration costs, taxes and other issues—from the settlement funds according to the pro rata Plan of Allocation previously approved by the Court. Plaintiffs further request that the Court enter an Order authorizing payment to the Settlement Administrator for notice and claims administration costs incurred but not yet paid.

This Motion is based upon this Notice of Motion and Motion, the Memorandum of Points and Authorities in Support Thereof, the Declaration of Rachel Christman re: Claims Processing and Distribution of the Net Settlement Funds ("Christman Declaration" or "Christman Decl."), the [Proposed] Order Granting Direct Purchaser Plaintiffs' Motion for an Order Authorizing Distribution of Settlement Funds, submitted herewith, as well as the complete files and records in this case, and upon such argument at the hearing on this motion and in further pleadings as may be presented to the Court.[1]

---

[1] After Plaintiffs file this Motion, it will be posted, with all supporting materials, on the CRT settlement website (www.CRTDirectPurchaserAntitrustSettlement.com) maintained by the Settlement Administrator.

1

DIRECT PURCHASER PLAINTIFFS' MOTION FOR ORDER AUTHORIZING DISTRIBUTION OF SETTLEMENT FUNDS; Master File No. 07-CV-5944-JST

**STATEMENT OF ISSUES TO BE DECIDED**

1. Whether to adopt and approve the Settlement Administrator's recommendations regarding the ineligibility of the claims, as set forth in Exhibit B to the Christman Declaration.

2. Whether to authorize payment of all claims approved by the Settlement Administrator from the settlement funds according to the pro rata Plan of Allocation and as set forth in Exhibit D to the Christman Declaration.

3. Whether the Settlement Administrator shall be reimbursed for costs and expenses incurred in the amount of $1,291,445.86.

4. Whether to reserve $70,660.76 for the payment of additional claims administration costs and expenses, and $250,000.00 for potential tax liability and other issues.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.  INTRODUCTION**

Direct Purchaser Plaintiffs ("Plaintiffs") have settled this action with all Defendants, except the Irico Defendants, resulting in settlement proceeds of $212,200,000.00, plus accrued interest.[2]

---

[2] The "Settling Defendants" are: Chunghwa Picture Tubes, Ltd., Hitachi, Ltd., Hitachi Asia, Ltd., Hitachi America, Ltd., Hitachi Electronic Devices (USA), Inc., Hitachi Displays, Ltd. (n/k/a Japan Display Inc.), LG Electronics, Inc., LG Electronics USA, Inc., LG Electronics Taiwan Taipei Co., Ltd., Mitsubishi Electric Corporation, Mitsubishi Electric US, Inc., Mitsubishi Electric Visual Solutions America, Inc., Panasonic Corporation (f/k/a Matsushita Electric Industrial Co., Ltd.), Panasonic Corporation of North America, MT Picture Display Co., Ltd., Koninklijke Philips Electronics N.V., Philips Electronics North America Corporation, Philips Electronics Industries (Taiwan), Ltd., Philips da Amazonia Industria Electronica Ltda., Samsung SDI Co. Ltd., Samsung SDI America, Inc., Samsung SDI Brasil, Ltd., Tianjin Samsung SDI Co., Ltd., Samsung Shenzhen SDI Co., Ltd., SDI Malaysia Sdn. Bhd., SDI Mexico S.A. de C.V., Thomson SA (n/k/a Technicolor SA), Thomson Consumer Electronics, Inc. (n/k/a Technicolor USA, Inc.), Toshiba Corporation, Toshiba America Information Systems, Inc., Toshiba America Consumer Products, L.L.C., and Toshiba America Electronic Components, Inc. (together with Chunghwa Picture Tubes (Malaysia) Sdn. Bhd., Daewoo International Corporation, Daewoo Electronics Corporation (f/k/a Daewoo Electronics Company, Ltd.), Shenzhen SEG Hitachi Color Display Devices, Ltd., Irico Group Corporation, Irico Group Electronics Co., Ltd., Irico Display Devices Co., Ltd., LP Displays International, Ltd. (f/k/a LG.Philips Displays), Matsushita Electronic Corporation (Malaysia) Sdn. Bhd., Panasonic Consumer Electronics Co., Beijing-Matsushita Color CRT Company, Ltd., Philips Consumer Electronics Co., Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., Samtel Color, Ltd., Tatung Company of America, Inc., Technologies Displays Americas LLC (f/k/a Thomson Displays Americas LLC), Thai CRT Company, Ltd., Toshiba America, Inc., Toshiba America Consumer Products, Inc., Toshiba Display Devices (Thailand) Company, Ltd., and Videocon Industries, Ltd., "Defendants").

This Court has granted final approval of each of the settlement agreements and the time for appeal has expired. All settlement payments have been made and were placed in interest-earning escrow accounts. Notice of the settlements was sent to class members, certain class members opted out, and potential class members submitted claims to the settlement proceeds.

The Settlement Administrator has completed an extensive, fair, and reasonable review of the claims. As of March 31, 2022, the Net Settlement Funds, which include the settlement proceeds plus interest, less Court-ordered attorneys' fees, already-paid costs and expenses incurred by the Settlement Administrator, and incentive awards to Class Representatives, total approximately $143,930,610.22. Christman Decl. ¶ 29. After payment of unreimbursed notice and claims administration costs of $1,291,445.86, reserving funds for additional estimated administration costs of $70,660.76 and $250,000.00 for potential tax liability and other issues, Plaintiffs propose distribution now of $142,318,494.27. *Id.* ¶ 34, Ex. D.

As set forth in the pro rata Plan of Allocation previously approved by the Court, payments to class members will be based on the relative value of their purchases, determined by the cost of the Cathode Ray Tubes ("CRTs") and/or CRT Finished Products they purchased. Over 99% of the proceeds will be distributed to the top 113 claimants. *Id.* ¶ 34. The class will also benefit from Plaintiffs' proposal to make a minimum payment to every eligible class member of $10.00, even if those class members' strict pro rata share of the settlement funds would be less, thus conserving administrative costs.

Plaintiffs request that the Court enter the Proposed Order, submitted herewith, which authorizes payment of all claims approved by the Settlement Administrator—less funds reserved for claims administration costs, taxes and other issues—from the Net Settlement Funds according to the pro rata Plan of Allocation previously approved by the Court.

II.     **STATEMENT OF RELEVANT FACTS**

   A.     **Background of the Settlements**

This multidistrict litigation arises from an alleged worldwide conspiracy to fix prices of CRTs. CRTs are the primary components of CRT televisions and computer monitors. The first of many direct purchaser class actions was filed in November of 2007 alleging violations of Section 1

1  of the Sherman Act, 15 U.S.C. § 1, and Section 4 of the Clayton Act, 15 U.S.C. § 15. Defendants
2  denied Plaintiffs' allegations and asserted numerous affirmative defenses. In exchange for the
3  release of Plaintiffs' claims, Plaintiffs reached nine separate settlement agreements with Settling
4  Defendants. The settlements total $212,200,000.00.

5        The Court held final approval hearings on the settlements; determined that each settlement
6  was fair, adequate, and reasonable; approved each settlement; approved a pro rata Plan of
7  Allocation; found notice to the class for each settlement—all of which included the pro rata plan—
8  was adequate and satisfied the requirements of due process; and dismissed the litigation with
9  prejudice against Settling Defendants. *See* Order Granting Final Approval of Class Action
10 Settlements with CPT & Philips ¶¶ 7, 8, 11 (ECF No. 1412); Final J. of Dismissal with Prejudice as
11 to Defs. Koninklijke Philips Elecs. N.V., Philips Elecs. N. Am. Corp., Philips Elecs. Indus.
12 (Taiwan), Ltd., & Philips da Amazonia Industria Electronica Ltda. ¶¶ 3, 6, 9 (ECF No. 1413); Final
13 J. of Dismissal with Prejudice as to Defs. Chunghwa Picture Tubes (Malaysia) Sdn. Bhd. &
14 Chunghwa Picture Tubes, Ltd. ¶¶ 3, 6, 9 (ECF No. 1414); Order Granting Final Approval of Class
15 Action Settlement with Panasonic ¶¶ 7, 8, 11 (ECF No. 1508); Final J. of Dismissal with Prejudice
16 as to Defs. Panasonic Corp. (f/k/a Matsushita Elec. Indus. Co., Ltd.), Panasonic Corp. of N. Am., &
17 MT Picture Display Co., Ltd. ¶¶ 3, 6, 9 (ECF No. 1509); Final J. of Dismissal with Prejudice as to
18 Def. Beijing Matsushita Color CRT Co., Ltd. ¶¶ 3, 6, 9 (ECF No. 1510); Order Granting Final
19 Approval of Class Action Settlement with LG ¶¶ 7, 8, 11 (ECF No. 1621); Final J. of Dismissal
20 with Prejudice as to Defs. LG Elecs., Inc.; LG Elecs. USA, Inc.; & LG Elecs. Taiwan Taipei Co.,
21 Ltd. ¶¶ 3, 6, 9 (ECF No. 1622); Order Granting Final Approval of Class Action Settlement with
22 Toshiba ¶¶ 7, 8, 10, 11 (ECF No. 1791); Final J. of Dismissal with Prejudice as to Defs. Toshiba
23 Corp., Toshiba Am. Info. Sys., Inc., Toshiba Am. Consumer Prods., L.L.C., & Toshiba Am. Elec.
24 Components, Inc. ¶¶ 3, 6, 9 (ECF No. 1792); Order Granting Final Approval of Class Action
25 Settlements with Hitachi & Samsung SDI Defs. ¶¶ 7, 8, 10, 11 (ECF No. 3931); Final J. of
26 Dismissal with Prejudice as to Defs. Samsung SDI Co. Ltd. (f/k/a Samsung Display Devices Co.,
27 Ltd.); Samsung SDI Am., Inc.; Samsung SDI Brasil, Ltd.; Tianjin Samsung SDI Co., Ltd.;
28 Samsung Shenzhen SDI Co., Ltd.; SDI Malaysia Sdn. Bhd.; & SDI Mexico S.A. de C.V. ¶¶ 3, 6, 9

1  (ECF No. 3932); Final J. of Dismissal with Prejudice as to Defs. Hitachi, Ltd.; Hitachi Displays,
2  Ltd. (n/k/a Japan Display Inc.); Hitachi Am., Ltd.; Hitachi Asia Ltd.; & Hitachi Elec. Devices
3  (USA) Inc. ¶¶ 3, 6, 9 (ECF No. 3933); Order Granting Final Approval of Class Action Settlement
4  with Thomson & TDA Defs. 1, 11–12 (ECF No. 4260); Final J. of Dismissal with Prejudice as to
5  Defs. Thomson SA (now known as Technicolor SA) & Thomson Consumer Elecs., Inc. (now
6  known as Technicolor USA, Inc.) ¶¶ 3, 5 (ECF No. 4416); Final J. of Dismissal with Prejudice as
7  to Def. Technologies Displays Ams. LLC (formerly known as Thomson Displays Ams. LLC)
8  ("TDA") ¶¶ 3, 5 (ECF No. 4417); *In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. 14-CV-2058
9  JST, 2017 WL 2481782, at *1, *3–5 (N.D. Cal. June 8, 2017) ("Mitsubishi Final Approval
10 Order"); and Final J. of Dismissal with Prejudice as to the Mitsubishi Elec. Defs. ¶¶ 4, 6 (ECF No.
11 5170).

    **B.   Notice to Class Members Regarding the Settlements**

13    The Settlement Administrator sent notices to class members regarding the settlements and
14 created a settlement website which contained the notices and other relevant information and
15 documents, including the settlement agreements. *See* Declaration of Markham Sherwood re
16 Dissemination of Notice to Class Members and Requests for Exclusion [re Chunghwa and Philips]
17 ¶¶ 4–6 (ECF No. 1294) ("Chunghwa & Philips Notice Decl."); Declaration of Markham Sherwood
18 re Dissemination of Panasonic Notice to Class Members and Requests for Exclusion ¶¶ 4–6 (ECF
19 No. 1434) ("Panasonic Notice Decl."); Declaration of Markham Sherwood re Dissemination of LG
20 Notice to Class Members and Requests for Exclusion ¶¶ 4–6 (ECF No. 1541) ("LG Notice Decl.");
21 Declaration of Markham Sherwood re Dissemination of Toshiba Notice to Class Members and
22 Requests for Exclusion ¶¶ 4–6 (ECF No. 1696) ("Toshiba Notice Decl."); Declaration of Ross
23 Murray re Dissemination of Hitachi/Samsung Notice to Class Members and Requests for Exclusion
24 ¶¶ 4–6 (ECF No. 2650) ("Hitachi & Samsung Notice Decl."); Amended Declaration of Ross
25 Murray re Dissemination of Thomson/TDA Notice to Class Members and Requests for Exclusion
26 ¶¶ 4–6 (ECF No. 4020) ("Thomson Notice Decl."); Declaration of Rachel Christman re
27 Dissemination of Notice to Class Members re Mitsubishi Electric Settlement and Application for
28 Attorneys' Fees and Expenses and Incentive Awards ¶¶ 5–8 (ECF No. 5126) ("Mitsubishi Notice

Decl."). The notices informed class members that the Plan of Allocation provides for distribution of the Net Settlement Funds on a pro rata basis:

> [E]ach Settlement Class member's *pro rata* share of the Settlement Fund will be determined by computing each valid claimant's total CRT Product purchases divided by the total valid CRT Product purchases claimed. This percentage is multiplied to the Net Settlement Fund (total settlements minus all costs, attorneys' fees, and expenses) to determine each claimants *pro rata* share of the Settlement Fund. To determine your CRT Product purchases, CRT tubes (color display and color picture) are calculated at full value (100%) while CRT televisions are valued at 50% and CRT computer monitors are valued at 75%.

Chunghwa & Philips Notice Decl., Ex. A at 3. *See also* Panasonic Notice Decl., Ex. A at 3; LG Notice Decl., Ex. A at 3; Toshiba Notice Decl., Ex. A at 3; Hitachi & Samsung Notice Decl., Ex. A at 3; Thomson Notice Decl., Ex. A at 3; Mitsubishi Notice Decl., Ex. A at 3.

### C. Notice to Class Members Regarding the Claims Process

Potential class members were provided notice of two separate periods to submit claims. *See* Christman Decl. ¶¶ 3(g), (i). During the second claims period, potential class members were also permitted to supplement or amend their previous claims. *See In re Cathode Ray Tube (CRT) Antitrust Litig.*, MDL No. 1917, Master Case No. C-07-5944 JST, Case No. 14-cv-2058 JST, 2017 WL 565003, at *7 (N.D. Cal. Feb. 13, 2017) ("Mitsubishi Preliminary Approval Order"); Mitsubishi Notice Decl., Ex. A at 3.

The first claims period occurred following final approval of the Chunghwa, Philips, Panasonic, LG, Toshiba, Hitachi, and Samsung settlements. On September 11, 2015, pursuant to the Court's Order Approving Claim Form and Directing Notice to Class Members regarding Distribution of Settlement Fund at 1 (ECF No. 3934) ("Order Approving Claim Form"), the Settlement Administrator mailed, via U.S. Postal Service, Notice Regarding Claims and Proof of Claim forms to the 16,941 unique names and addresses on the class list. Declaration of Ross Murray re Dissemination of Notice and Claim Forms to Class Members and Lack of Objections to Plaintiff's Motion for Attorneys' Fees and Costs ¶ 4 (ECF No. 4114-2) ("Claim Form Notice Decl."). The Settlement Administrator updated the class list, including by researching company names lacking addresses, adding addresses where found, processing the names and addresses through the National Change of Address Database to update any addresses on file with the United

1   States Postal Service. *Id.* The Settlement Administrator also sent the Notice Regarding Claims to
2   the 873 unique email addresses on the class list, providing information about how to obtain Proof
3   of Claim forms and how to submit them by mail or through the CRT settlement website
4   (www.CRTDirectPurchaserAntitrustSettlement.com). *See id.* ¶¶ 5–7, Ex. A; Christman Decl.
5   ¶ 3(g). Summary notice was also provided by publication in the *Wall Street Journal*. Claim Form
6   Notice Decl. ¶ 10, Ex. C; Christman Decl. ¶ 4. Potential class members had ninety (90) days to
7   submit a Proof of Claim form; the deadline was December 10, 2015. Order Approving Claim Form
8   at 1; Claim Form Notice Decl., Ex. A.

9         The second claims period occurred following final approval of the remaining settlements.
10  On or before February 27, 2017, pursuant to the Mitsubishi Preliminary Approval Order, the
11  Settlement Administrator mailed, via U.S. Postal Service, notice to the 19,609 unique names and
12  addresses on the updated class list informing potential class members of a second opportunity to
13  submit claims, or to amend their previous claims, along with information on how to do so. *See*
14  Mitsubishi Notice Decl. ¶¶ 5, 7, Ex. A at 3; Christman Decl. ¶ 3(i). The Settlement Administrator
15  also sent the same notice to the 1,343 unique email addresses on the class list. Declaration of
16  Rachel Christman re Class Members' Response to Notice ¶ 4 (ECF No. 5163-2) ("Mitsubishi Final
17  Approval Decl."). Summary notice was also provided by publication in the *New York Times* and
18  the *Wall Street Journal*. Mitsubishi Notice Decl. ¶ 11, Exs. B, C; Christman Decl. ¶ 4. Potential
19  class members had ninety (90) days, or until May 29, 2017, to submit a new or amended Proof of
20  Claim form. Mitsubishi Preliminary Approval Order *7; Mitsubishi Notice Decl., Ex. A at 3.

21        The Settlement Administrator responded to inquiries and communications from claimants
22  by postal mail to an established Post Office Box, by email to a monitored account, and by
23  telephone calls to a dedicated toll-free telephone number. Christman Decl. ¶ 4; *see also id.* ¶ 28.
24  The Settlement Administrator also created and maintained a settlement website
25  (www.CRTDirectPurchaserAntitrustSettlement.com), which made available the settlement
26  agreements, the preliminary approval orders, the Final Approval Orders, the Final Judgments, the
27  notices, and a downloadable Proof of Claim form. *Id.* ¶ 4. In addition, claimants could submit their
28  Proof of Claim forms through the website from September 11, 2015 through December 10, 2015,

and from February 27, 2017 through May 29, 2017. *See* Order Approving Claim Form at 1; Claim Form Notice Decl., Ex. A; Mitsubishi Preliminary Approval Order *7; Mitsubishi Notice Decl., Ex. A at 3; Christman Decl. ¶ 6. The format of the Proof of Claim form was designed to be clear and simple so that potential claimants could easily fill out the form and provide information required in support of their claims. Christman Decl. ¶ 6.

### D. The Settlement Administrator's Review of Claims

The Settlement Administrator received and processed 4,080 Proof of Claim forms, including 73 received after the May 29, 2017 deadline. *Id.* ¶ 7. The total value of CRT claims received—tubes valued at 100%, monitors valued at 75%, and televisions valued at 50%, referred to as "Calculated CRT Purchases"—exceeded $19 billion. *Id.* For quality control purposes, each paper and electronic Proof of Claim form submitted was given a unique claim number and entered into a database. *Id.*

The Settlement Administrator reviewed each submitted Proof of Claim form, including late submissions, to determine whether it was complete. *Id.* ¶ 9. Proof of Claim forms included the following deficiencies: a) missing purchase information; b) missing signature; c) ineligible purchases; or d) missing or insufficient proof of authority to file on behalf of the claimant. *Id.* The Settlement Administrator sent a "Notice of Deficient Claim" to all such claimants, advising them of the deficiency and requesting a correction. *Id.* ¶ 10. The Settlement Administrator reviewed and corrected deficiencies that were provided, but did not perform any further outreach to insufficient responses unless requested by the claimant. *Id.*

The Settlement Administrator also reviewed all filed claims to determine if any were duplicative, or if any competing claims were submitted by different entities on behalf of the same claimant. *Id.* ¶ 9. As part of its review, the Settlement Administrator removed identical claims and consolidated partial duplicates. *Id.* ¶ 11. Where competing claims were filed, the Settlement Administrator defaulted to the claim filed by the claimant (where a competing claim had been filed by a Third Party Filer), or reached out to both parties to identify the master and duplicate claims. *Id.* The Settlement Administrator resolved all complete duplicate, partial duplicate and competing claims. *Id.*

1    The Settlement Administrator also reviewed all filed claims for potential fraud. *Id.* ¶ 12. It flagged claims where certain criteria were met, including: a) multiple claims filed using a single IP address; b) multiple claims filed with a pattern of slight variance in the claim name, email address, and/or mailing address; and c) claims filed by individuals who have been previously identified as fraudulent filers in other cases administered by the Settlement Administrator. *Id.* Claims determined to be fraudulent were rejected and sent a "Notice of Rejected Claim." *Id.* Claims identified as potentially fraudulent were sent a "Request for Documentation." *Id.* Where no response was provided, the potentially fraudulent claim was rejected without further outreach. *Id.* Where a response was provided, the Settlement Administrator reviewed the response and made a determination. *Id.*

The Settlement Administrator sent a total of 7,667 notifications and requests regarding all 4,080 claims on a rolling basis as determinations were made. *Id.* ¶ 13. To the extent multiple claims could be addressed in a single notification or request (for entities who filed claims on behalf of multiple claimants), or where a notification or request served multiple purposes (for example, outlining a deficiency and also requesting documentation), they were consolidated. *Id.* The deadline to respond or dispute for each notification or request has passed. *Id.*

All claims were subject to review and/or audit by the Settlement Administrator. *Id.* ¶ 14. All claims calculated to be valued over $100,000 in Calculated CRT Purchases[3]—which constituted 89.59% of the total dollar value of all claims—were audited and are referred to as "Top Claims." Christman Decl. ¶ 14. Claims which fell below the review threshold are referred to as "Basic Claims." *Id.* In total, 323 Top Claims were audited. *Id.* For the claims selected for audit, the purchase data provided by Defendants were compared to the purchase amounts submitted by the claimants. *Id.* ¶¶ 15–16. The Settlement Administrator approved Top Claims that were consistent with sales records produced by Defendants. *Id.* ¶ 15. For Top Claims that were greater than the amounts reflected in Defendants' records, or were not contained therein, the Settlement

---

[3] For the purposes of determining each approved claimant's pro rata allocation, claims for CRT tubes were valued at 100% of their purchase price, CRT computer monitors were valued at 75%, and CRT televisions were valued at 50%. *See, e.g.*, Chunghwa & Philips Notice Decl., Ex. A at 3.

Administrator requested and reviewed documentation submitted by the claimant to determine whether each claim was valid. *Id.* ¶¶ 15–16. The Settlement Administrator manually reviewed tens of thousands of line items across numerous Top Claims to determine eligibility. *Id.* ¶ 18. Where claimants did not respond to requests for documentation, they were notified that their claims were adjusted to the amount reflected in the Defendant data or, if there was no such data, that the claim was denied. *Id.* ¶ 15. The Settlement Administrator has sent letters to all claimants notifying them of its final determination of their claims. *Id.* ¶¶ 23, 28.

In sum, after the completion of audits, document and data review, communications with claimants, and processing of late claims, the total purchases by all approved claimants was $7,509,205,905.76 in Calculated CRT Purchases, approximately $11,521,511,132.69, or 60.54%, less than the total purchases claimed in the Proof of Claim forms as initially submitted. *See id.* ¶¶ 7, 26. A total of 577 claims were ineligible. *Id.* ¶ 27, Ex. B. The rejected claims break down as follows:

- 316 claims were rejected because the claimant's response to the Notice of Deficient Claim and/or the Request for Documentation did not provide sufficient information or documentation to substantiate the claim, or the claimant did not respond;
- 234 claims were rejected because the claim was deemed to be fraudulent;
- 23 claims were rejected because the entirety of the purchases claimed were either indirect purchases of CRTs or CRT Finished Products manufactured by the Defendants or Co-Conspirators, or were CRTs or CRT Finished Products manufactured by a non-Defendant or Co-Conspirator;
- 2 claims were rejected because the entirety of the purchases claimed were not CRTs or CRT Finished Products; and
- 2 claims were rejected because the claimant entities were subsidiaries and/or affiliates of Defendants or Co-Conspirators and thus are not members of the class.

*Id.* All claimants who submitted ineligible claims were notified of any deficiencies, were given the opportunity to cure the deficiencies, and failed to cure the deficiencies. *Id.* In addition, 307 were marked as duplicate claims and 1,362 were withdrawn by the claimant, the vast majority of which

were withdrawn in response to a request for documentation and/or Notice of Deficient Claim. *Id.* ¶ 25.

After the completion of processing and auditing claims, the Settlement Administrator has notified all claimants of the final determination of their claims. *Id.* ¶ 28. Attached as Exhibit D to the Christman Declaration is a list of the 1,834 approved claimants and their proposed pro rata payments from the Net Settlement Funds based on the dollar amount each class member paid to Defendants for direct purchases of CRTs and CRT Products during the Class Period. *Id.* ¶¶ 7 n.2, 32–34.

### E.     Settlement Funds Available for Distribution

The Settlement Administrator has performed a thorough audit of the individual settlement funds. *Id.* ¶ 29. As of March 31, 2022, approximately $143,930,610.22 remains in the Net Settlement Funds, which includes the settlement proceeds plus accrued interest, less Court-ordered attorneys' fees, costs and expenses, and incentive benefits to Class Representatives. *Id.* In addition, from September 11, 2015 through December 31, 2021, the Settlement Administrator has incurred claims administration and notice costs in the amount of $1,291,445.86 that have not yet been paid. *Id.* ¶ 30, Ex. C. The Settlement Administrator has also submitted an estimated budget of $70,660.76 for all remaining claims administration costs. *Id.* This figure includes the cost of providing reports and materials in support of the instant Motion, printing and mailing distribution checks to eligible claimants by prepaid first-class mail, issuing replacement checks for undeliverable mailings upon request by authorized claimants, and continuing to respond to inquiries from class members. *Id.* Plaintiffs also recommend reserving $250,000.00 of the Net Settlement Funds for potential tax liability and other issues that may arise. *Id.* ¶ 31.[4] Thus, $142,318,503.60 is available for distribution which is equal to the current Net Settlement Funds of $143,930,610.22, less $1,291,445.86 to be paid for notice and claims administration costs incurred and billed, and less $320,660.76 to be held in reserve of which $70,660.76 is for further unpaid

---

[4] To the extent this reserve is not required, these funds would be combined with the funds from uncashed checks and distributed in like manner in accordance with instructions provided by the Court for uncashed checks. *Id.* n.3.

administration costs and $250,000.00 is for potential tax liability and other issues. *See id.* ¶¶ 29–31.[5]

Accordingly, after accounting for administrative costs incurred ($1,291,445.86), and reserving for future administrative costs ($70,660.76), and tax liability or other issues ($250,000.00), a total of $142,318,503.60 Net Settlement Funds are available for distribution. Christman Decl. ¶ 31.

### F.   Calculations of Claimants' Pro Rata Shares

To calculate the payment amounts to approved claimants, the Settlement Administrator followed the Court-approved Plan of Allocation. *Id.* ¶¶ 32–33. The Settlement Administrator administered each settlement fund separately in accordance with the class definition of that settlement fund. *Id.* ¶ 32. Each claimant's approved purchases of CRT tubes, CRT computer monitors, and/or CRT color televisions were converted to Calculated CRT Purchases to arrive at the approved amount for each approved claim from each individual settlement fund from which the claimant was entitled to draw upon for those particular purchases. *Id.* ¶ 33. For example, a claimant that opted out of a particular settlement was not entitled to receive funds from that particular settlement fund, and purchases from those defendants did not count toward that claimant's total qualifying purchases for the purposes of determining that claimant's pro rata share of each settlement. *Id.* ¶ 32. Each claimant's approved purchases were then divided by the total number of claimed purchases eligible to receive funds from that particular settlement fund to calculate each eligible claimant's pro rata share (%) of each fund. *Id.* ¶ 33.

Once these percentages were established for each claimant, they were applied against the corresponding settlement funds to determine the claimant's strict pro rata share of each particular settlement fund. *Id.* ¶ 35, Ex. E. This process was performed for all claimants and across each of the nine settlement funds. Attached as Exhibit E to the Christman Declaration is a schedule of all claimants with each approved claimant's strict pro rata share of each Settlement Fund.

---

[5] Of the $142,318,503.60 total funds available for the proposed distribution, *id.* ¶ 31, $9.33 would not be distributed at this time due to rounding issues. *Id.* ¶ 34. These funds would be distributed at a later date. *See supra*, n.4.

Furthermore, as explained in greater detail below, Lead Counsel recommends that the Court set a payment "floor" such that each approved claimant is paid no less than $10.00. Accordingly, the Settlement Administrator re-calculated the payment for each of the claims that would have resulted in a payment of less than $10.00 under a strict pro rata distribution. *Id.* ¶ 34. Attached as Exhibit D to the Christman Declaration is a schedule of all claimants with each approved claimant's recommended total pro rata share of the total Settlement Funds after accounting for the $10.00 minimum payment for all approved claimants.

### III.   ARGUMENT

Plaintiffs request an Order authorizing the distribution of the Net Settlement Funds to the approved claimants in the amounts set forth in Exhibit D to the Christman Declaration. Entry of an Order permitting a distribution of the Net Settlement Funds to all approved claimants is proper and appropriate at this time because final judgments have been entered and the time to appeal the settlement agreements has expired. *See* 4 *Newberg on Class Actions*, § 12:19 (5th ed.). The Court has approved a pro rata Plan of Allocation. As set forth in the notices, the Settlement Funds will be allocated on a pro rata basis based on the dollar value of each class member's purchase(s) of CRTs and CRT Products in proportion to the total claims filed; purchases of CRTs are valued at 100% of their purchase price, computer monitors are valued at 75%, and televisions are valued at 50%. Chunghwa & Philips Notice Decl., Ex. A at 3; Panasonic Notice Decl., Ex. A at 3; LG Notice Decl., Ex. A at 3; Toshiba Notice Decl., Ex. A at 3; Hitachi & Samsung Notice Decl., Ex. A at 3; Thomson Notice Decl., Ex. A at 3; Mitsubishi Notice Decl., Ex. A at 3. To determine each claimant's pro rata share of the Net Settlement Funds, the Settlement Administrator calculated each valid claimant's total qualifying purchases and divided those purchases by the total qualifying purchases claimed; the resulting percentages were then each multiplied by each Net Settlement Fund in which the claimant is participating, i.e., is not a claimant who filed for payment from one of more settlement funds from which it requested exclusion (total settlement minus proportional share of all costs, attorneys' fees, and expenses). Christman Decl. ¶¶ 32–33; *see also id.*, Ex. A (list of requests for exclusion and Opt-Out Claimants). Attached as Exhibit E to the Christman Declaration is a schedule of all claimants with each approved claimant's strict pro rata share of

each settlement fund.

Distribution of the Net Settlement Funds, as set forth in Exhibit D to the Christman Declaration, will give effect to the approved pro rata Plan of Allocation compensating class members based on the extent of their injuries. *See In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 332 (N.D. Cal. 2018) ("A plan of allocation that reimburses class members based on the type and extent of their injuries is generally reasonable."). The proposed plan of distribution provides for a payment to all class members with valid claims and, as discussed above and further below, sets a "floor" such that each approved claimant is paid no less than $10.00.

The Settlement Administrator has completed a fair, reasonable, and adequate review of the claims. Courts typically give "deference" to decisions of an impartial settlement administrator who facilitates the implementation of a settlement agreement. *In re Int'l Air Transp. Surcharge Antitrust Litig.*, No. M 06-01793 CRB, 2011 WL 6337625, at *2 (N.D. Cal. Dec. 19, 2011), *aff'd,* 577 F. App'x 711 (9th Cir. 2014) ("The Settlement Administrator, who was involved in the mediation and negotiation of the settlement agreements, and has been administering the funds for three years, has direct and extensive knowledge of this case. . . . Thus, the Court must give some deference to his recommendation as to factual matters."). The Settlement Administrator established and followed quality control measures to ensure that each claim was properly tracked and notified claimants of potential deficiencies, including incomplete Proof of Claim forms that were not signed and certified, Proof of Claim forms that appeared potentially duplicative, and Top Claims that lacked supporting information. Christman Decl. ¶¶ 7, 9–10.

Claimants had adequate opportunity to cure any deficiencies by providing additional information or documentation. *See, e.g., id.* ¶¶ 10–13, 22–23, 28. The Settlement Administrator processed late claims, and also considered late responses to requests for information considered to be timely if relevant documentation and/or information was provided. *Id.* ¶¶ 7, 13. Additionally, where possible, the Settlement Administrator used data provided by Settling Defendants to help substantiate certain claims. *See id.* ¶¶ 15–16. Third, the Settlement Administrator and Lead Counsel spent a significant amount of time working with claimants and/or their representatives or counsel to resolve claim disputes. *Id.* ¶¶ 23, 28.

The efforts of the Settlement Administrator and Lead Counsel substantially increased eligible claimants' pro rata recoveries. At the start of the claims process, the value of all claims received was calculated to be in excess of $19 billion. *Id.* ¶ 7. After the completion of audits, document review, communications with claimants, and processing of late claims, the Settlement Administrator determined that total purchases by approved claimants was approximately $7.5 billion, over $11.5 billion less than the total value of the original Proof of Claim forms submitted. *Id.* ¶ 26.

Finally, Lead Counsel recommends that the Court set a payment "floor" such that each approved claimant is paid no less than $10.00. Of the 1,834 valid claims submitted, 374 approved claimants would receive payments of less than $10.00 under a strict pro rata distribution. *Id.* ¶ 34; *see also id.*, Ex. E. Although the proposed $10.00 payment is greater than the value of some individuals' claims, such a threshold would conserve administration funds and provide a greater net benefit to the class overall because:

- Issuing certain checks for amounts less than $10.00 would result in administrative costs greater than the amount of the payment;
- Checks of less than $10.00 are less likely to be cashed;
- Uncashed checks result in additional administrative expenses related to tracking uncashed, expired checks, and reissuing checks to replace them.

*Id.* ¶ 34.

Courts in this District and elsewhere have set minimum distribution payments for all approved claimants, thereby adjusting the pro rata plan of allocation in order to ensure meaningful participation in the settlements and conserve administration costs. For example, in the *ODD* direct purchaser action, Judge Seeborg authorized minimum payments of $10.00 to all class members who submitted valid claims. Order Granting Direct Purchaser Pls.' Mot. for Order Authorizing Distribution of Settlement Funds ¶ 8, Attachment 2, *In re Optical Disk Drive Antitrust Litig.*, No. 3:10-md-02143 RS (N.D. Cal. Sept. 16, 2019) (ECF Nos. 2906, 2906-1).

Similarly, in the *Lithium Ion Batteries* direct purchaser action, Judge Gonzalez Rogers approved a $10.00 "floor" payment for small claimants. Corrected Order Authorizing Distribution

15

of Settlement Funds (DPP Settlements) ¶ 1, *In re Lithium Ion Batteries Antitrust Litig.*, No. 13-md-02420-YGR, MDL No. 2420 (N.D. Cal. Dec. 14, 2020) (ECF No. 2684) ("In order to conserve administration costs and therefore provide a greater net benefit to the class overall, the Settlement Administrator shall distribute to each approved claimant with an eligible claim a minimum payment of $10.00 regardless of the value of the claimant's strict pro rata share of the total settlement funds."). *See also In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, No. M-02-1486-PJH, 2013 WL 12333442, at *13–14, 80–81, 91 n.250 (N.D. Cal. Jan. 8, 2013) (noting the court's broad powers in ensuring an equitable distribution of settlement proceeds and affirming the fairness, reasonableness and adequacy of plan of distribution that "adjusts all claimants' *pro rata* 'payments' by raising all of the claims . . . of less than $10.00 up to $10.00"), *report and recommendation adopted by* 2014 WL 12879520 (N.D. Cal. June 27, 2014); *In re Ins. Brokerage Antitrust Litig.*, 297 F.R.D. 136, 143 (D.N.J. 2013) ("as a matter of administrative efficiency, all Settlement Class members will receive a minimum payment of at least $10, and the payments to Settlement Class members that would otherwise receive less than $10 on a straight pro rata basis will be increased to $10"); *In re Initial Pub. Offering Sec. Litig.*, 671 F. Supp. 2d 467, 498 (S.D.N.Y. 2009) ("Each Authorized Claimant with a valid Recognized Claim will receive—at a minimum—ten dollars no matter how small his, her, or its Recognized Claim. . . . [A] minimum claim amount is required to enable class members with relatively small claims to participate meaningfully.") (footnote omitted); *Standard Iron Works v. ArcelorMittal*, No. 08 C 5214, 2015 WL 6165024, at *2 (N.D. Ill. Oct. 20, 2015) ($100 minimum); *In re Auto. Parts Antitrust Litig.*, No. 12-md-02311, 2019 WL 7877812, at *2 (E.D. Mich. Dec. 20, 2019) ($100 minimum); *Mehling v. New York Life Ins. Co.*, 248 F.R.D. 455, 463 (E.D. Pa. 2008) ($50 minimum); *Slipchenko v. Brunel Energy, Inc.*, No. H-11-1465, 2015 WL 338358, at *3 (S.D. Tex. Jan. 23, 2015) ($100 minimum); *Downes v. Wisconsin Energy Corp. Ret. Account Plan*, No. 09-C-0637, 2012 WL 1410023, at *3 (E.D. Wis. Apr. 20, 2012) ($250 minimum).

In sum, distributing the Net Settlement Funds to all approved claimants, as set forth above and in Exhibit D to the Christman Declaration, gives effect to the Plan of Allocation previously approved by the Court, and is fair, reasonable, and adequate.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court enter an Order: 1) approving the Settlement Administrator's recommendations regarding the ineligibility of claims set forth in Exhibit B to the Christman Declaration; 2) authorizing payment of all claims approved by the Settlement Administrator according to the pro rata Plan of Allocation, as set forth in Exhibit D to the Christman Declaration; 3) authorizing payment to the Settlement Administrator for unreimbursed costs and expenses incurred in the amount of $1,291,445.86; and 4) authorizing Plaintiffs to reserve in escrow $70,660.76 for the payment of additional claims administration costs, as well as $250,000 for potential tax liability or other issues.

Dated: March 31, 2022

Respectfully submitted,

/s/ *R. Alexander Saveri*
R. Alexander Saveri (173102)
Geoffrey C. Rushing (126910)
Cadio Zirpoli (179108)
Matthew D. Heaphy (227224)
Sarah Van Culin (293181)
SAVERI & SAVERI, INC.
706 Sansome Street
San Francisco, CA 94111
Telephone: (415) 217-6810
Facsimile: (415) 217-6813

*Lead Counsel for Direct Purchaser Plaintiffs*