1   R. Alexander Saveri (173102)
        *rick@saveri.com*
2   Geoffrey C. Rushing (126910)
        *grushing@saveri.com*
3   Matthew D. Heaphy (227224)
        *mheaphy@saveri.com*
4   Sarah Van Culin (293181)
        *sarah@saveri.com*
5   SAVERI & SAVERI, INC.
    706 Sansome Street
6   San Francisco, CA 94111
    Telephone:  (415) 217-6810
7   Facsimile:  (415) 217-6813

8   *Lead Counsel for Direct Purchaser Plaintiffs*

9

10              **UNITED STATES DISTRICT COURT**

11            **NORTHERN DISTRICT OF CALIFORNIA**

12                   **OAKLAND DIVISION**

13  | IN RE: CATHODE RAY TUBE (CRT) | Master File No. 07-CV-5944-JST |
    | ANTITRUST LITIGATION | |

14  | | MDL No. 1917 |

15  | This Document Relates to: | **DECLARATION OF RACHEL CHRISTMAN** |
    | | **RE: CLAIMS PROCESSING AND** |
16  | *ALL DIRECT PURCHASER ACTIONS* | **DISTRIBUTION OF THE NET** |
    | | **SETTLEMENT FUNDS** |
17

18

19

20

21

22

23

24

25

26

27

28

1    I, Rachel Christman, declare as follows:

2        1.    I am employed by KCC Class Action Services, LLC, the successor company of

3    Gilardi & Co. LLC (collectively "KCC"), located at 1 McInnis Parkway, Suite 250, San Rafael,

4    California. KCC was hired by Class Counsel as the Settlement Administrator in this matter.  I am

5    over 21 years of age and am not a party to this action.  Except as otherwise stated, I have personal

6    knowledge of the facts set forth herein and, if called as a witness, could and would testify

7    competently thereto.

8        2.    I make this declaration to report on: (a) a summary of Notice Procedures; (b) KCC's

9    processes for reviewing, analyzing, and validating the claims received; (c) calculating the total

10   qualifying purchases for the initial distribution of the Net Settlement Funds; and (d) calculating the

11   *pro rata* share of the Net Settlement Funds to be distributed to each approved claimant.

12                          **Summary of Notice Procedures**

13       3.    As further outlined in the *Declaration of Markham Sherwood re Dissemination of*

14   *Notice to Class Members and Requests for Exclusion*, filed August 6, 2012 (ECF No. 1294), the

15   *Declaration of Markham Sherwood re Dissemination of Panasonic Notice to Class Members and*

16   *Requests for Exclusion*, filed November 8, 2012 (ECF No. 1434), the *Declaration of Markham*

17   *Sherwood re Dissemination of LG Notice to Class Members and Requests for Exclusion*, filed

18   January 24, 2013 (ECF No. 1541), the *Declaration of Markham Sherwood re Dissemination of*

19   *Toshiba Notice to Class Members and Requests for Exclusion*, filed May 29, 2013 (ECF No. 1696),

20   the *Declaration of Ross Murray Re Dissemination of Hitachi/Samsung Notice to Class Members*

21   *and Requests for Exclusion*, filed June 26, 2014 (ECF No. 2650), the *Declaration of Ross Murray*

22   *re Dissemination of Thomson/TDA Notice to Class Members and Requests for Exclusion,* filed

23   August 24, 2015 (ECF No. 4017), the *Amended Declaration of Ross Murray re Dissemination of*

24   *Thomson/TDA Notice to Class Members and Requests for Exclusion,* filed August 26, 2015 (ECF

25   No. 4020), the *Declaration of Ross Murray re Dissemination of Notice and Claim Forms to Class*

26   *Members and Lack of Objections to Plaintiff's Motion for Attorneys' Fees and Costs,* filed October

27   8, 2015 (ECF No. 4114-2), the *Declaration of Ross Murray re Dissemination of Litigated Class*

28   *Notice to Class Members and Requests for Exclusion,* filed January 21, 2016 (ECF No. 4330), the

*Declaration of Rachel Christman re Dissemination of Notice to Class Members re Mitsubishi Electric Settlement and Application for Attorneys; Fees and Expenses and Incentive Awards,* filed March 6, 2017 (ECF No. 5126), and the *Declaration of Rachel Christman re Class Members' Response to Notice,* filed May 18, 2017 (ECF No. 5163-2),  KCC has performed outreach to potential Class Members in nine phases:

  a. Dissemination of notice relating to the Chunghwa and Philips Settlement Agreements ("Chunghwa/Philips Notice") took place on June 7, 2012. KCC mailed notice to 16,307 potential Class Members and sent notice via e-mail to 791 potential Class Members. The Chunghwa/Philips Notice provided Class Members with the opportunity to object to or request exclusion from the settlements with Defendants Chunghwa and Philips.

  b. Dissemination of notice relating to the Panasonic Settlement Agreement ("Panasonic Notice") took place on September 10, 2012. KCC mailed notice to 16,333 potential Class Members and sent notice via email to 872 potential Class Members. The Panasonic Notice provided Class Members with the opportunity to object to or request exclusion from the settlement with the Panasonic Defendants.

  c. Dissemination of notice relating to the LG Settlement Agreement ("LG Notice") took place on November 27, 2012. KCC mailed notice to 16,601 potential Class Members and sent notice via email to 872 potential Class Members. The LG Notice provided Class Members with the opportunity to object to or request exclusion from the settlement with the LG Defendants.

  d. Dissemination of notice relating to the Toshiba Settlement Agreement ("Toshiba Notice") took place on April 1, 2013. KCC mailed notice to 16,618 potential Class Members and send notice via email to 872 potential Class Members. The Toshiba Notice provided Class Members with the opportunity to object to or request exclusion from the settlement with Defendant Toshiba.

  e. Dissemination of notice relating to the Hitachi and Samsung SDI Settlement Agreements ("Hitachi/Samsung Notice") took place on April 28, 2014. KCC mailed notice to 16,895 potential Class Members and send notice via email to 873 potential Class Members. The

1    Hitachi/Samsung Notice provided Class Members with the opportunity to object to or request

2    exclusion from the settlements with Defendants Hitachi and Samsung SDI.

3         f.        Dissemination of notice relating to the Thomson/TDA Settlement Agreement

4    ("Thomson/TDA Notice") took place on June 26, 2015. KCC mailed notice to 16,914 potential

5    Class Members and send notice via email to 873 potential Class Members. The Thomson/TDA

6    Notice provided Class Members with the opportunity to object to or request exclusion from the

7    settlement with Defendant Thomson/TDA.

8         g.        The "Initial Claims Mailing" took place on September 11, 2015, wherein KCC

9    mailed a notice and Proof of Claim form to 16,941 potential Class Members and sent notice via e-

10   mail to 873 potential Class Members. The Initial Claims Mailing provided Class Members with the

11   opportunity to file a claim for payment from the Settlements with Defendants Chunghwa, Philips,

12   Panasonic, LG, Toshiba, Hitachi, and Samsung SDI by December 10, 2015.

13        h.        Dissemination of notice relating to the Litigated Class ("Litigated Class Notice")

14   took place on November 23, 2015. KCC mailed notice to 18,038 potential Class Members and sent

15   notice via email to 873 potential Class Members. The Litigated Class Notice provided Class

16   Members with the opportunity to object to or request exclusion from Litigated Class. Class

17   Members who excluded themselves from the Litigated Class are excluded from the settlement with

18   Defendant Mitsubishi.

19        i.        The "Second Claims Mailing" took place on February 27, 2017, wherein KCC

20   mailed a notice and Proof of Claim form to 19,609 potential Class Members and sent notice via

21   email to 1,343 unique email addresses on the updated Class List. The Second Claims Mailing

22   provided Class Members with the opportunity to object to the Settlement with Defendant

23   Mitsubishi and with the opportunity to file a claim for payment from the settlements with all

24   Defendants by May 29, 2017.[1]

25

26

27   _____

[1] Claimants who had previously filed claims in the Initial Claims Mailing were advised it was not
necessary to file a second claim in the Second Claims Mailing so long as no details on the claim
had changed. All claims received in the Initial Claims Mailing were considered for payment
28   alongside all claims submitted in the Second Claims Mailing.

DECLARATION OF RACHEL CHRISTMAN RE: CLAIMS PROCESSING AND DISTRIBUTION OF THE NET
SETTLEMENT FUNDS; Master File No. 07-CV-5944-JST

4.     In addition to the direct notice outreach described above, summary notice was published in the *Wall Street Journal* during each phase listed above, with an additional publication in the *New York Times* for the Thompson/TDA Settlement, the Litigated Class Notice, and the Second Claims Mailing. KCC also established a settlement website (www.CRTDirectPurchaserAntitrustSettlement.com), case dedicated email address (claims@CRTDirectPurchaserAntitrustSettlement.com), Post Office Box, and toll free number (877-224-3063), allowing potential Class Members access to additional information and documents about the settlements, including the settlement agreements, the Preliminary and Final Approval Orders, the Final Judgments, the Notices, Summary Notices, and a downloadable Proof of Claim Form.

### Requests for Exclusion

5.     Class Members were provided with the opportunity to request exclusion from individual settlements while maintaining their claims in the remaining settlements. KCC received requests for exclusion from 31 entities and 2 individual persons, a total of 33 requests. Of these, 8 also filed individual claims for payment from the Settlement Funds (referred to herein as "Opt-Out Claimants"). Attached hereto as Exhibit A is a list of all requests for exclusion along with detail from which settlement each request was made and identification of the 8 Opt-Out Claimants.

### Collection and Evaluation of Claim Forms

6.     Class Members who wished to file claims were able to do so by completing the Proof of Claim form in its entirety and mailing it to KCC no later than the postmark deadline of May 29, 2017. Class Members also had the option of visiting the settlement website and filing the Proof of Claim form electronically by May 29, 2017. The format of the Proof of Claim form was designed to be clear and simple so that potential claimants could easily fill out the form and provide information required in support of their claims. The Proof of Claim form requested a summary of all purchases of Cathode Ray Tubes ("CRTs") and Finished Products containing Cathode Ray Tubes ("CRT Finished Products") made directly from any Defendant or Co-Conspirator from March 1, 1995 through November 25, 2007 (the "Class Period").

7.      As of the date of this declaration, KCC has received 4,080 claims. For quality control purposes, each paper and electronic Proof of Claim form submitted was given a unique claim number and was entered into KCC's proprietary database. The total amount of claimed CRT and CRT Finished Product purchases is $28,354,000,987.99, with claimed Calculated CRT Purchases[2] of $19,030,717,038.45. Of the 4,080 claims filed, 73 were filed after the May 29, 2017 Claims Filing Deadline. To facilitate the greatest number of valid claims possible and maximize the benefit to the Class, KCC recommends approving without qualification all late claims which are otherwise valid; a total of 45 recommended approved late claims.

8.      As explained below, after extensive claims analysis, KCC has verified that 1,834 submitted claims are eligible and valid.

9.      KCC reviewed each Proof of Claim form submitted for completeness and determined that some claims were deficient or incomplete. Among the various types of deficiencies found were: (a) claimants failed to provide a purchase amounts for CRT and CRT Finished Products purchased from Defendants (or subsidiary or affiliate thereof) or Co-Conspirators on the Proof of Claim form or only partially completed this information when filling out the Proof of Claim form; (b) claimants failed to sign the Proof of Claim form; (c) claimants included ineligible purchases (such as indirect purchases at retail, purchases of electronics and/or other products which do not qualify as CRTs or CRT Finished Products, CRT and CRT Finished Product purchases made outside of the Class Period, CRT and CRT Finished Product purchases made from non-Defendants or Co-Conspirators, or CRT and CRT Finished Product purchases made outside of the United States; (d) a Third Party Filer (an entity that files a claim on behalf of a claimant pursuant to assignment or service agreement) failed to provide a signed Service Agreement demonstrating agency, or sufficient claim information or documentation of purchases by the assignor; (e) claimants submitted duplicate Proof of Claim forms (including instances of potential fraudulent filings where numerous Proof of Claim forms were submitted on behalf of a single entity, in many instances with an attempt to slightly vary the claimant contact information in an attempt to avoid

---

[2] To determine each approved claimant's "Calculated CRT Purchases", CRT tubes (CPTs/CDTs) are calculated at full value while televisions are valued at 50% and computer monitors are valued at 75%.

detection); or (f) claimants submitted competing Proof of Claim forms (two completed Proof of Claim forms were submitted on behalf of the same claimant by two separate entities).

10.     Deficiency Outreach: Where a claim exhibited one or more of the criteria addressed in ¶¶ 9(a) – 9(d) herein, KCC mailed and/or emailed a Notice of Deficient Claim which outlined the deficiencies in the claim and provided claimants with the opportunity to correct the deficiencies. Where no response was provided, the deficient claim was rejected and sent notice of such rejection. Where a response to the Deficiency Outreach was provided, KCC reviewed the response and corrected the deficiency accordingly. If the response was not sufficient to clear the deficiency(ies) on a claim, the claimant was so informed and no further outreach was performed by KCC unless requested by the claimant.

11.     Duplicate Review: Where a claim fell into one or more of the categories addressed in ¶¶ 9(e) – 9(f) herein, KCC reviewed the potential duplicate claims to remove complete duplicates (where a single claimant inadvertently filed more than one identical claim) and to consolidate partial duplicates (where a single claimant filed more than one claim with unique purchase information; in such cases the purchase information from both claims was consolidated into a single master claim with the second claim marked as a duplicate filing). Where competing claims were filed, KCC defaulted to the claim filed by the claimant (where a competing claim had been filed by a Third Party Filer) or reached out to both parties to identify the master and duplicate claims. All complete duplicate, partial duplicate and competing claims have been resolved.

12.     Fraud Review: KCC reviewed all filed claims and flagged submissions where certain criteria were met (multiple claims filed using a single IP address, multiple claims filed with a pattern of slight variance in the claim name, email address, and/or mailing address, or claims filed by individuals who have been previously identified as fraudulent filers in other cases which KCC has administered). Claims which were determined to be fraudulent were rejected and sent a Notice of Rejected Claim. Claims which were identified as potentially fraudulent were sent a Request for Documentation. Where no response was provided, the potentially fraudulent claim was rejected without further outreach. Where a response was provided, KCC reviewed the response and provided a determination.

13.     The notifications addressed in ¶¶ 10 – 12 above as well as the Requests for Documentation addressed in ¶ 15 and the final determination notices addressed in ¶ 28 below were sent on a rolling basis as determinations were made. To the extent multiple claims could be addressed in a single notice (for entities who filed claims on behalf of multiple claimants), or where a notice served multiple purposes (for example, outlining a deficiency and also requesting documentation), the notices were consolidated. All notices regarding the rejection (in whole or in part) of a claim contained a response deadline which could vary based on specific negotiations with the claimant, but in no event was less than 15 days. To the extent a claimant submitted a response within a reasonable time after a given deadline, KCC considered those responses to be timely if relevant documentation and/or information was provided. As of the date of this declaration, KCC has sent 7,667 such notices addressing all 4,080 filed claims, and the deadline to respond or dispute for each has passed.

**Claim Document Review**

14.     All claims were subject to review and/or audit by KCC. In collaboration with Class Counsel, KCC evaluated all filed claims to establish a threshold at which claimants would be required to submit documentation to support their claimed purchases. The threshold was set at $100,000 in Calculated CRT Purchases. Claims which fell at or above the review threshold are referred to herein as "Top Claims" where claims which fell below the review threshold are referred to as "Basic Claims." Of the 4,080 claims filed, 323 unique claims (or 7.92% of the total count of claims) were reviewed as Top Claims, accounting for 89.59% of the total amount of CRT Purchases being claimed.

15.     KCC received a summary compilation of purchase records from Class Counsel. These records (referred to herein as the "Defendant Purchase Records") are composed of a summary Excel spreadsheet listing known CRT and CRT Product purchases from the Defendants by Class Members during the Class Period. KCC has been informed that the Defendant Purchase Records do not represent a full and complete record of all qualifying purchases from all Defendants during the entire Class Period. As such, the Defendant Purchase Records are used for comparison against filed claims and to supplement claims where no documentation is able to be provided by

7

the Class Member. Where a Top Claim included claim purchase information consistent with the Defendant Purchase Records, the claim was approved. Where a Top Claim did not respond to Requests for Documentation or responded indicating documentation was not available, they have been notified that their claims were being adjusted to the amount reflected in the Defendant Purchase Records or, if there was no such data, that the claim was denied.

16.     Top Claims which include claimed purchases in excess of the Defendant Purchase Records were reviewed based on documentation submitted by the claimant. The claim documentation review was designed to confirm that claimed purchases were: 1) CRTs or CRT Finished Products; 2) purchased directly from a Defendant (or subsidiary or affiliate thereof) or Co-Conspirator; 3) purchased within the United States; and 4) purchased within the Class Period. The ideal form of documentation is a copy of a Class Member's internal recordkeeping in database format (such as Microsoft Excel), which allows KCC to run various queries and comparisons to efficiently evaluate the veracity of claimed purchases. The level of detail in database documentation can vary from simple (e.g., 3-4 columns providing only the amount of information necessary to validate a claim) to highly complex (e.g., multiple tabbed databases with thousands of line items over dozens of columns constituting the full unfiltered internal recordkeeping for a claimant).

17.     To the extent documentation submitted in support of a claim was not in a database format (additional documentation types submitted include internal recordkeeping in pdf format, purchase orders, invoices, screen shots of computer images, etc.), KCC attempted to review the documentation as submitted or reached out to the claimant to request documentation in a database format. However, where no such documentation was available, KCC manually transcribed purchase information from the documentation submitted. In some cases, claimants submitted thousands of pages of documents in support of their claims.

18.     Once a claim had documentation in a reviewable database format, KCC reviewed claimed purchases on a line-item basis. Some documents provided a description of the product purchased (i.e., "CRT", "TV", "Monitor", etc.), where others provided only product numbers or serial numbers. Where no detailed description was available, KCC manually reviewed the product

8

or serial numbers via online searches to determine if the product did, in fact, qualify. KCC manually reviewed tens of thousands of line items across numerous Top Claims to determine eligibility.

19.     KCC utilized a two-tier process to review claim documentation. Tier 1 included the initial review by a team of claims review agents and Tier 2 included a more in-depth review for certain claims by the case management team, who are equipped with a comprehensive knowledge of the numerous nuances of this matter. The Tier 1 review evaluated all documentation submitted within structured guidelines and provided one of the following three determinations:

- Approve at Claimed Amount: The claim is fully approved with no reduction in purchases.

- Approve at Reduced Amount: The claim is partially approved as some of the claimed purchases are ineligible based on documentation submitted.

- Insufficient Documentation: The documentation submitted in support of a claim is insufficient to substantiate claimed purchases. This includes claims with documentation such as bank records, bankruptcy documents, affidavits, and other such documentation which do not demonstrate direct purchases of CRT or CRT Products during the Class Period.

20.     Approve at Claimed Amount: Where a Tier 1 review resulted in the determination of "Approve at Claimed Amount", no further review of the claim was performed and a "Determination Letter" was sent to the claimant confirming the approved amount of claimed purchases and total CRT Purchases.

21.     Approve at Reduced Amount: Where a Tier 1 review resulted in the determination of "Approve at Reduced Amount", the claim progressed to Tier 2. If the Tier 2 review found any errors in the Tier 1 determination, the claim was returned to Tier 1 for re-review (or completed by the case management team, where appropriate).  If the Tier 2 review confirmed the Tier 1 determination, a Determination Letter was sent to the claimant providing the opportunity to dispute.

DECLARATION OF RACHEL CHRISTMAN RE: CLAIMS PROCESSING AND DISTRIBUTION OF THE NET SETTLEMENT FUNDS; Master File No. 07-CV-5944-JST

22.    Insufficient Documentation: Where a Tier 1 review resulted in the determination of "Insufficient Documentation", the claim progressed to Tier 2. If the Tier 2 review found any errors in the Tier 1 determination, the claim as returned to Tier 1 for re-review (or completed by the case management team, where appropriate). If the Tier 2 review confirmed the Tier 1 determination, KCC reached out to the claimant to request additional documentation that clearly demonstrated qualifying purchases.

23.    Determination Letters were mailed and/or emailed on a rolling basis to Top Claims as claim reviews were completed. All disputes received were reviewed with Class Counsel before a final dispute response was provided to the claimant. In some cases, Class Counsel was involved in communications with claimants and/or their representatives or counsel as well as the resolution of disputes.

24.    The final status of claims received by KCC as of the date of this declaration are detailed as follows:

25.    Withdrawn and Duplicate Claims: Of the 4,080 filed claims, 307 were marked as duplicate claims and 1,362 were withdrawn by the claimant, the vast majority of which were withdrawn in response to a request for documentation and/or Notice of Deficient Claim.

26.    Approved Claims:  KCC has identified 1,834 valid claims, with total qualifying and eligible purchases amounting to $7,509,205,905.76 in Calculated CRT Purchases. KCC's detailed and thorough review process therefore identified and eliminated invalid claims or portions of claims equaling $11,521,511,132.69 in Calculated CRT Purchases, or 60.54% of the Calculated CRT Purchases originally claimed.

27.    Rejected Claims: The 577 remaining claims have been rejected for the reasons identified below:

- 316 claims were rejected because the claimant's response to the Notice of Deficient Claim and/or the Request for Documentation did not provide sufficient information or documentation to substantiate the claim, or the claimant did not respond;

- 234 claims were rejected because the claim was deemed to be fraudulent;

- 23 claims were rejected because the entirety of the purchases claimed were either indirect purchases of CRTs or CRT Finished Products manufactured by the Defendants or Co-Conspirators, or were CRTs or CRT Finished Products manufactured by a non-Defendant or Co-Conspirator;

- 2 claims were rejected because the entirety of the purchases claimed were not CRTs or CRT Finished Products; and

- 2 claims were rejected because the claimant entities were subsidiaries and/or affiliates of Defendants or Co-Conspirators and thus are not members of the class.

All claimants whose claims were rejected were sent Notices of Deficient Claim and/or Notices of Rejected Claim and provided an opportunity to respond, as described in ¶ 10 and ¶ 12 above. A list of these 577 ineligible claims identifying the reason for ineligibility for each is attached hereto as Exhibit B.

28. During the course of the deficiency and documentation review, KCC had thousands of email exchanges and telephone conversations with claimants and/or their representatives or counsel and mailed over 3,000 letters in an effort to resolve deficiencies and anomalies on the filed claims and to complete the claim documentation review. KCC has notified, via mail, email, or both (where applicable), all filed claims of the final determination of their claims.

**Net Settlement Funds Amounts**

29. KCC has performed a thorough audit of the individual settlement funds and can confirm that after the addition of interest earned on the consolidated funds and after the deduction of Court-authorized attorneys' fees and expenses, litigation expenses and costs, and the class representative plaintiff awards proportionately from each settlement fund, the balance of Settlement Funds to be distributed is $143,930,610.22 as of the date of this declaration. This breaks out to:

- $5,185,958.08 from the Chunghwa Settlement (the "Chunghwa Fund")

- $9,809,088.96 from the Philips Settlement (the "Philips Fund")

- $11,986,717.96 from the Panasonic Settlement (the "Panasonic Fund")

- $17,167,472.94 from the LG Settlement (the "LG Fund")

11

- $9,287,035.41 from the Toshiba Settlement (the "Toshiba Fund")

- $9,274,837.82 from the Hitachi Settlement (the "Hitachi Fund")

- $22,787,892.66 from the Samsung SDI Settlement (the "Samsung Fund")

- $6,670,500.74 from the Thomson/TDA Settlement (the "Thomson Fund")

- $51,761,105.65 from the Mitsubishi Settlement (the "Mitsubishi Fund")

30.     To date, KCC has billed and been paid $485,513.73. This amount represents the cost to facilitate the six notice phases addressed in ¶ 3(a) - 3(e) herein. With the exception of some notice related costs, KCC has not been paid for additional notice costs and claims administration work performed from September 11, 2015 through December 31, 2021 in the amount of $1,291,445.86. This amount represents the cost of Collection and Evaluation of Claim Forms and Claim Documentation Review as discussed in ¶¶ 6 – 28 herein. Finally, KCC estimates that the remaining work will cost $70,660.76 in additional administration fees. This amount represents the cost of distribution to Class Members and the closing of the case in KCC's files. Attached hereto as Exhibit C is an accounting of the amounts incurred but not paid as well as the estimated amount of administration fees remaining.

31.     Additionally, a reserve of $250,000 is being held out of the Net Settlement Funds for any unforeseen concerns or tax liability. Should the requested administrative fees be approved, the funds remaining for distribution to approved claimants after withholding the reserve and administrative fees[3] will be $142,318,503.60.

**Calculation of Approved Claim Amounts**

32.     KCC administered each settlement fund separately in accordance with the class definition of that settlement fund. To calculate the payment amounts to approved claimants, KCC first evaluated each Approved Claim to remove ineligible purchases, as described above in ¶ 9. KCC also removed all purchases from Opt-Out Claimants of products purchased from the Defendant(s) from whose settlement an Opt-Out Claimant had excluded itself (*i.e., if an Opt-Out Claimant had excluded itself from the Panasonic Settlement, any Panasonic purchases included in*

---

[3] To the extent this reserve is not required, these funds would be combined with the funds from uncashed checks and distributed in like manner in accordance with the instructions provided by the Court for uncashed checks.

*the claim were removed*). Opt-Out Claimants likewise did not receive a *pro rata* share from the Settlement Fund from which the claimant opted out.

33.    After removal of ineligible purchases, the sum of eligible purchases of CRT tubes, CRT computer monitors, and/or CRT color televisions was converted to Calculated CRT Purchases to arrive at the approved amount for each approved claim. The sum of each claimant's Calculated CRT Purchases was then divided by the sum of all valid and approved Calculated CRT Purchases for each settlement fund, the result of which determined each claimant's *pro rata* share (%) of each settlement fund.

34.    A strict *pro rata* distribution of the Net Settlement Funds would result in 374 claimants receiving payments of less than $10.00, ranging from $0.19 to $9.93. Based on KCC's previous experience, checks of less than $10.00 are less likely to be cashed. In addition, the value of some checks issued according to a strict *pro rata* distribution would be less than the administration costs to issue and mail the check. Uncashed checks often result in additional delays as well as administration costs related to tracking uncashed, expired checks and reissuing checks to replace them. (The estimated future administration costs set forth in Exhibit C hereto are based on the issuance of checks valued at $10.00 or more; if checks of lesser value are issued, KCC's estimate for such costs would increase.) Class Counsel, therefore, has recommended that each claimant be paid at least $10.00. KCC thus re-calculated the payment for each of the 374 claims (20.39% of all approved claims) that would have resulted in a payment of less than $10.00 under a strict *pro rata* distribution. The proposed distribution amount for each approved claimant is listed in Exhibit D. The proposed distributions total $142,318,494.27, which is $9.33 less than the funds remaining for distribution to approved claimants referenced in ¶ 31 above due to rounding. The top 113 approved claimants (6.16% of all approved claims) would receive $140,932,053.89, or 99.03%, of the proposed distributions.

35.    A schedule of all claimants with each approved claimant's strict *pro rata* share of each Settlement Fund is attached hereto as Exhibit E. For each Settlement Fund, the schedule indicates the total amount of approved purchases claimed, in Calculated CRT Purchases calculated as described in footnote 2 above, as well as the proposed funds to be distributed from it:

1      •     $4,995,385.28 from the Chunghwa Fund

2      •     $9,564,189.78 from the Philips Fund

3      •     $11,829,645.65 from the Panasonic Fund

4      •     $17,001,459.93 from the LG Fund

5      •     $9,134,731.48 from the Toshiba Fund

6      •     $9,122,593.49 from the Hitachi Fund

7      •     $22,612,342.89 from the Samsung Fund

8      •     $6,522,667.16 from the Thomson Fund

9      •     $51,535,487.94 from the Mitsubishi Fund

10 These fund amounts, also listed in Exhibit E, total $142,318,503.60, which equal the funds

11 remaining for distribution to approved claimants referenced in ¶ 31 above.

12

13       I declare under penalty of perjury that the foregoing is true and correct, and that this

14 declaration was executed this 31st day of March 2022.

15

16                                 RACHEL CHRISTMAN

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF RACHEL CHRISTMAN RE: CLAIMS PROCESSING AND DISTRIBUTION OF THE NET
SETTLEMENT FUNDS; Master File No. 07-CV-5944-JST