Tracy R. Kirkham (69912)
John D. Bogdanov (215830)
Cooper & Kirkham, P.C.
357 Tehama Street, Second Floor
San Francisco, CA 94103
Telephone: (415)788-3030
Facsimile: (415) 882-7040
trk@coopkirk.com
jdb@coopkirk.com

*Lead Counsel for Indirect Purchaser Plaintiffs NRS Subclass*

Francis O. Scarpulla (41059)
Patrick B. Clayton (240191)
Law Offices of Francis O. Scarpulla
3708 Clay Street
San Francisco, CA 94118
Telephone: (415) 751-4193
Facsimile: (415) 751-0889
fos@scarpullalaw.com
pbc@scarpullalaw.com

*Co-Lead Counsel for Indirect Purchaser Plaintiffs ORS Subclass*

Theresa D. Moore (99978)
Law Office of Theresa D. Moore, PC
One Sansome Street, 35th Floor
San Francisco, CA 94104
Telephone: (415) 613-1414
tmoore@aliotolaw.com

*Co-Lead Counsel for Indirect Purchaser Plaintiffs ORS Subclass*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| **IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION** | Master File No. 4:07-cv-5944-JST |
| | MDL No. 1917 |
| This Document Relates to:<br><br>All Indirect Purchaser Actions | **SUBCLASS LEAD COUNSEL'S OPPOSITION TO INDIRECT PURCHASER PLAINTIFFS' MOTION FOR DISTRIBUTION OF ATTORNEYS' FEES, EXPENSES, AND INCENTIVE AWARDS**<br><br>Hearing Date: May 12, 2022_<br>Time:          2:00 p.m.<br>Judge:        Honorable Jon S. Tigar<br>Courtroom:  6, 2nd Floor |

## **TABLE OF CONTENTS**

MEMORANDUM OF POINTS AND AUTHORITIES ...................................................1

I.     INTRODUCTION ...............................................................................1

II.    ISSUE PRESENTED ..........................................................................3

III.   SUBCLASS LEAD COUNSEL NEVER ACTED WITH THE INTENT OR EFFECT OF HARMING OR IMPAIRING THE RIGHTS OF CLASS MEMBERS IN THE 22-STATE DAMAGE SETTLEMENT CLASSES .........................................................3

        A.    District Court Proceedings re Elevating NRS and ORS Subclass Plaintiff Representatives ...........................................................4

        B.    The Settlement Approval Process and Proceedings in the Ninth Circuit ......................................................................7

IV.   THE PROPOSED FEE ALLOCATIONS FOR SUBCLASS COUNSEL WOULD BE A PRECEDENT DETRIMENTAL TO FUTURE CLASS ACTIONS .....................12

V.    THE APPROPRIATE FEES FOR SUBCLASS COUNSEL ..........................................15

        A.    Background of IPP Lead Counsel's Proposed Fees...................................15

                  Cooper & Kirkham ...............................................................15
                  Law Offices of Francis O. Scarpulla .........................................17
                  Law Office of Theresa D. Moore .............................................18

        B.    Awarding Subclass Counsel Their 2017 Fee Awards...............................19

        C.    Modifying IPP Lead Counsel's Formula to Award Subclass Counsel Fees ...............................................................19

VI.   CONCLUSION...................................................................................22

i

SUBCLASS LEAD COUNSEL'S OPPOSITION TO INDIRECT PURCHASER PLAINTIFFS' MOTION FOR DISTRIBUTION OF ATTORNEYS' FEES, EXPENSES, AND INCENTIVE AWARDS - MDL No. 1917

# TABLE OF AUTHORITIES

**FEDERAL CASES**                                                                            **PAGE(S)**

*Allen v. Similasan Corp.,*
    96 F. Supp. 3d 1063 (S.D. Cal. 2015)........................................................................4

*Canatella v. California,*
    404 F.3d 1106 (9th Cir. 2005) ................................................................................10

*CE Design, Ltd. v. Cy's Crab House N., Inc.,*
    731 F.3d 725 (7th Cir. 2013) ............................................................................10, 11

*CVLR Performance Horses, Inc. v. Wynne,*
    792 F.3d 469 (4th Cir. 2015) ..................................................................................11

*DeOtte v. State,*
    20 F.4th 1055 (5th Cir. 2021) .................................................................................11

*FDIC v. Jennings,*
    816 F.2d 1488 (10th Cir. 1987) ..............................................................................12

*Immigration Assistance Project,*
    306 F.3d 842 (9th Cir. 2002) ....................................................................................4

*In re Gen. Motors Corp. Engine Interchange Litig.,*
    594 F.2d 1106 (7th Cir. 1979) ................................................................................13

*In re Online DVD-Rental Antitrust Litig.,*
    779 F.3d 934, 949 (9th Cir. 2015) ..........................................................................20

*In re Syntex Corp. Sec. Litig.,*
    95 F.3d 922 (9th Cir. 1996) ......................................................................................4

*In re Synthroid Mktg. Litig.,*
    264 F.3d 712 (7th Cir. 2001) ............................................................................10, 11

*In re Wash. Pub. Power Supply Sys. Sec. Litig.,*
    19 F.3d 1291 (9th Cir. 1994)   ................................................................................20

*Mausolf v. Babbitt,*
    125 F.3d 661 (8th Cir. 1997) ..................................................................................11

*Meyers v. Crouse Health Sys.,*
    274 F.R.D. 404 (N.D.N.Y. 2011)...........................................................................13

*Neidig v. Rendina,*
    298 Fed. Appx. 115 (3d Cir. 2008).........................................................................11

*Purcell v. BankAtlantic Fin. Corp.,*
    85 F.3d 1508 (11th Cir. 1996) ........................................................................... 12-13

*Sommers v. Bank of Am., N.A.,*
    835 F.3d 509 (5th Cir. 2016) ..................................................................................11

*Sullivan v. DB Invs., Inc.*,
    2008 WL 8747721, 2008-2 Trade Cas. (CCH) ¶76,304
    (D.N.J. May 22, 2008) ........................................................................................15

*Warren v. Xerox Corp.*,
    2004 WL 1562884 (E.D.N.Y. Jan. 26, 2004) ...................................................13

*Willner v. Manpower Inc.*,
    No. 11-cv-02846, 2014 WL 2939732 (N.D. Cal. June 30, 2014)........................4

**FEDERAL STATUES**

28 U.S.C. § 1407....................................................................................................13

**FEDERAL RULES**

Fed. R. App. P. 32.1(a) ..........................................................................................12

Fed. R. Civ. P. 15 .............................................................................................3, 4, 5

Fed. R. Civ. P. 23 ...............................................................................................3, 15

Fed. R. Civ. P. 23(c) ..............................................................................................13

Fed. R. Civ. P. 23(c)(4)..........................................................................................13

Fed. R. Civ. P. 23(c)(5)..........................................................................................13

Fed. R. Civ. P. 24....................................................................................................3

**ADDITIONAL AUTHORITY**

Cal. Rules of Professional Conduct, Rule 1.9 ........................................................5

15A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper,
    FEDERAL PRACTICE AND PROCEDURE § 3902.1, at 113 (2d ed. 1991) .......... 11-12

Elizabeth Y. McCuskey, Submerged Precedent, 16 Nev. L.J. 515, 583 (2016)............................12

## MEMORANDUM OF POINTS AND AUTHORITIES

I.    **INTRODUCTION**

The law firm of Cooper & Kirkham ("C&K"), the Law Offices of Francis O. Scarpulla ("LOFOS") and Law Offices of Theresa D. Moore ("Moore") (collectively, "Subclass Lead Counsel") oppose the proposed distribution of attorneys' fees to their firms for which Indirect Purchaser Plaintiffs ("IPP") Lead Counsel, Mario Alioto, seeks this Court's authorization.[1]  These fees are for the services that Subclass Lead Counsel rendered to the Nationwide Class in this litigation from its inception through May 31, 2015.  The proposed distribution represents a drastic reduction in the fees previously awarded by this Court as compensation for those services.  It is far greater than what would be Subclass Lead Counsel's *pro rata* share of either the reduction in the aggregate fee award or the new lodestar which IPP Lead Counsel contends should be added into the distribution calculation.

The justification for reducing the recommended fees for Subclass Lead Counsel to 50% of the fee that would result from the application of IPP Lead Counsel's distribution formula is that Subclass Lead Counsel undertook certain actions in providing representation to the Non-Repealer State ("NRS") Subclass and the Omitted Repealer State ("ORS") Subclass, which actions, IPP Lead Counsel contends, were harmful to the interests of the subclasses that he represents (those Nationwide Class members who reside in the 22 states that entered into the amended settlements).[2] He describes this "harm" as follows: "(a) they *did not contribute* to the amended settlements, (b) their work sought to *undermine* those settlements, and (c) their work *harmed* the settlement class members by creating continued delay and expense."  Motion at 7 (emphasis in original).

---

[1] "Indirect Purchaser Plaintiffs' Notice of Motion and Motion for Distribution of Attorneys' Fees, Expenses, and Incentive Awards," filed March 22, 2022 (ECF No. 6001), ("Motion").  IPP Lead Counsel admits that this Motion is premature until the pending petition for a writ of certiorari is resolved.  Motion at 1.  The defendants have received an extension and are currently scheduled to file an opposition to the petition on May 9, 2022.

[2] These class members have been certified as 22 separate statewide damage "classes," although they are really subclasses of the Nationwide Class, as are the NRS and ORS Subclasses.   These subclass members go by the self-designation "IPPs" even though they are less than half of the Indirect Purchaser Plaintiffs with claims alleged in the operative complaints.  Similarly, Mr. Alioto continues to use the designation, "IPP Lead Counsel" (a role to which he was appointed in 2008),

1

1    None of these assertions is true.  First, Subclass Lead Counsel did contribute to the

2   amended settlements through their work litigating on behalf of the Nationwide Class, a

3   contribution that was recognized by this Court in awarding both the original aggregate fee, based,

4   in part, on the lodestars of C&K, LOFOS and Moore, and the 2017 individual fee awards to each

5   of these firms.  Second, Subclass Lead Counsel never worked to "undermine" the settlements or

6   deprive the class members in the settling 22-state damage classes of the benefits or proceeds of the

7   settlements.  They never objected to the settlements being approved on any ground that related to

8   the benefits that would accrue to the settling class members; they only objected to the timing of

9   final approval because of the potential harm dismissing the defendants could do to the intervention

10   rights of the NRS and ORS Subclasses by mooting the pending appeals.  Third, no settling class

11   member's recovery is being reduced or delayed as a result of Subclass Lead Counsel's attempts to

12   prevent the amended settlements from mooting the intervention appeals.  IPP Lead Counsel has

13   not requested that the class members' settlement recovery be reduced by the additional lodestar he

14   asserts was incurred in connection with the amended settlements, and he states in the Motion at

15   fn.2, that claims administration is still in process and this Court has not yet been asked to give its

16   approval to a claims distribution accounting or procedures.

17    Subclass Lead Counsel acted solely to satisfy their court-appointed fiduciary and ethical

18   duties to provide zealous representation for the ORS and NRS Subclasses by positioning subclass

19   members as named plaintiffs to continue to press their claims against the defendants after the

20   amended settlements became final.   Had the schedule for settlement approval advanced by IPP

21   Lead Counsel not have had the potential (and later actual) effect of depriving the ORS and NRS

22   Subclasses of the right to have the Ninth Circuit Court of Appeals determine whether their plaintiff

23   representatives could intervene-as-of-right into the actions before this Court, Subclass Lead

24   Counsel would have never have objected to the amended settlements or attempted to prevent the

25   judgment dismissing the defendants from becoming final.

26

27   _____

28   although in the Motion caption, he refers to himself more accurately as "Lead Counsel for the
    Indirect Purchaser Plaintiffs for the 22 States."

IPPs Lead Counsel's proposed fee distributions to C&K, LOFOS and Moore should not be authorized by this Court, and he should be directed to distribute the fees for these firms in the manner set forth in Section V, below.

## II.     ISSUE PRESENTED

The issue presented by IPP Lead Counsel's request for authorization to make a punitive reduction to the compensation of C&K, LOFOS and Moore is whether Subclass Lead Counsel can and should be punished for doing the job that the Court appointed them to do on behalf of the ORS and NRS Subclasses.

## III.     SUBCLASS LEAD COUNSEL NEVER ACTED WITH THE INTENT OR EFFECT OF HARMING OR IMPAIRING THE RIGHTS OF CLASS MEMBERS IN THE 22-STATE DAMAGE SETTLEMENT SUBCLASSES

IPP Lead Counsel's negotiation in 2015, of a settlement that released the claims of over half the members of the Nationwide Class without compensation was the event that triggered the necessity for the Court to recognize the existence of three sets of divergent interests within the Nationwide Class.  Once recognized, to satisfy its constitutional duty to ensure that all absent class members are represented by competent counsel advocating for their interests, in 2019, the Court appointed LOFOS and Moore as Lead Counsel for the ORS Subclass and C&K as Lead Counsel for the NRS Subclass.  ECF No. 5518.  Because none of the named plaintiffs in any of the actions in these proceedings was a member of either of the newly recognized Subclasses, Rule 23, F.R.Civ.P., required that new class representatives come forward and assume the role of named plaintiffs.  Eleanor Lewis stepped forward to serve in that capacity for the NRS Subclass, as did a number of ORS Subclass members.

Subclass Lead Counsel never acted in any way that infringed on the interests of class members in the 22-state damage classes during the time that they attempted through Rules 15 and 24, F.R.Civ.P., to have ORS and NRS Subclass members become the named plaintiff subclass representatives that Rule 23, F.R.Civ.P, requires.  Later, when this process became protracted by the appeal of the intervention denial to the Ninth Circuit, Subclass Lead Counsel pointed out by way of an "objection" to preliminary approval, that certain provisions in the 22-state subclasses' amended settlements, particularly the timetable for approval, had the very real potential of

3

resulting in the dismissal of the defendants from the litigation before the Ninth Circuit could rule on the merits of the intervention denial.  This clearly alerted IPP Lead Counsel to the fact that advancing this schedule for settlement approval was positioning certain members of a class to whom he owed a fiduciary duty, to suffer significant harm by losing appeal, intervention, and relation-back rights as a result of the defendants' dismissal.  He did not seem to care and made no effort to explore whether some procedure could be worked out that would preserve the benefits of the amended settlements while avoiding the impairment of the NRS and ORS Subclass members' rights and claims.  Rather, IPP Lead Counsel minimized the harm the amended settlements could (and did) cause NRS and ORS Subclass members, denigrated Subclass Lead Counsel's concerns, and argued to both this Court and the Ninth Circuit that they should not even be addressed. This left Subclass Lead Counsel with no alternative but to employ the procedures available in the District Court, the Ninth Circuit and the U. S. Supreme Court to attempt to prevent the amended settlements from adversely affecting NRS and ORS Subclass members' rights.  Each of their actions in this regard was defensive, and none was designed to or motivated by a desire to impair the ability of class members in the 22-state damage settlement subclasses to enjoy the benefits of the settlements.

## A.    District Court Proceedings re Elevating NRS and ORS Subclass Plaintiff Representatives

Rule 15, F.R.Civ.P., clearly contemplates the use of amendment as a vehicle to add plaintiffs to ongoing litigation.  Courts have long recognized that "all putative class members [are] 'potential plaintiffs.'"  *Allen v. Similasan Corp.,* 96 F. Supp. 3d 1063, 1069 (S.D. Cal. 2015) (quoting *Willner v. Manpower Inc.,* No. 11-cv-02846, 2014 WL 2939732, at *5 and *Immigration Assistance Project,* 306 F.3d 842, 857-858 (9th Cir. 2002)).  In addition, an amendment adding a plaintiff relates back to the date of the original pleading when "(1) the original complaint gave the defendant adequate notice of the claims of the newly proposed plaintiff; (2) the relation back does not unfairly prejudice the defendant; and (3) there is an identity of interests between the original and newly proposed plaintiff."  *In re Syntex Corp. Sec. Litig.,* 95 F.3d 922, 935 (9th Cir. 1996)) (internal quotation marks omitted).  Accordingly, amendment has been used to add class member

1    named plaintiffs countless times in class actions over the last 50 years.  It was used here, multiple

2    times by IPP Lead Counsel, in exactly the situation the ORS and NRS Subclasses found

3    themselves: to remedy the absence of a plaintiff representative for a subclass.  *See, e.g.*, ECF Nos.

4    5585 (Stipulation), 5589 and 5600 (Complaints).

5            When the putative ORS and NRS Subclass representatives proposed to employ that simple

6    class action management tool here (ECF Nos. 5643 & 5645), IPP Lead Counsel objected and

7    refused to consent to the amendment of the only operative complaint in any of the coordinated

8    actions – the Consolidated Amended Complaint.  ECF No. 5593.  Assuming that absent class

9    members have no Rule 15 amendment rights to the complaint filed on their behalf, and IPP Lead

10   Counsel had an absolute right to veto any class member's attempt to become a plaintiff class

11   representative by amendment, why exercise that veto when its only effect was to foreclose to the

12   ORS and NRS Subclasses the most expeditious route to obtaining the representation necessary to

13   pursue the claims that he and the existing Nationwide Class representatives were abandoning in the

14   amended settlement.  While the state of the record as to Mr. Alioto's on-going representation of

15   the Nationwide Class is confusing, what is clear is that he continues to owe duties of care to all

16   class members, including those in the ORS and NRS Subclasses.  On May 9, 2008, this Court

17   appointed "Mario Alioto . . . as interim lead counsel for the putative nationwide class of indirect

18   purchasers," a position that carried the duty "[t]o otherwise advance and protect the interests of the

19   putative class in all respects."  ECF No. 282.  IPP Lead Counsel has never asked for that Order to

20   be vacated or amended.  He has simply treated the appointment of Subclass Lead Counsel in 2019

21   as a *de facto* reappointment of himself as subclass counsel *solely* for the 22-state damage

22   subclasses.  However, even if Subclass Lead Counsel's appointment acted to relieve Mr. Alioto of

23   his duties to the Nationwide Class under ECF No. 282, which it does not, Ethical Rules, such as

24   Rule 1.9 of the California Rules of Professional Conduct, contain prohibitions that, as the current

25   edition Comment notes, boil down to the fact that "[a]fter termination of a lawyer-client

26   relationship, the lawyer . . . may not (i) do anything that will injuriously affect the former client in

27   any matter in which the lawyer represented the former client."

28

1      IPP Lead Counsel knew in the fall of 2019, that facilitating Eleanor Lewis and the ORS

2 Subclass putative plaintiffs to assume positions from which they could continue litigating the

3 claims held by the non-settling portion of the Nationwide Class, whatever his view of the merits,

4 posed no threat to the amended settlements that he was negotiating on behalf of the 22-state

5 damage subclasses.  Nevertheless, IPP Lead Counsel claimed that the ORS and NRS Subclass

6 members efforts to become named plaintiffs by amendment was some nefarious plot to position a

7 new Consolidated Amended Complaint in some manner that would sabotage his settlement

8 renegotiations, but the claim is so vague that it cannot be evaluated.  ECF No. 5593 at 8-9.

9 Otherwise, his objections go to aspects of the proposed draft amendment, like pointing out that

10 Panasonic was not dismissed from the litigation as the ORS and NRS Subclass plaintiffs

11 erroneously thought.  If there were problems with the proposed amendment text, it would have

12 been in the best interests of all class members, if those concerns had been addressed by having all

13 the plaintiffs, named and putative, collaborate on the text of a consolidated amended complaint,

14 after the Court issued a tentative ruling recognizing the ability of NRS and ORS Subclass members

15 to become named plaintiffs.  It was not necessary to oppose the amending in of new plaintiffs to

16 protect any rational interest of the 22-state damage classes.[3]

17      IPP Lead Counsel's opposition to amendment emphasized the fact that Subclass Lead

18 Counsel did not consult with him before filing their motion.  ECF No. 5593 at 5.  It is true that

19 Subclass Lead Counsel could have solicited IPP Lead Counsel's agreement to amending in NRS

20 and ORS Subclass representative plaintiffs in a less formal way than by a motion, and we will

21 never know if that would have led to a different result.  It is equally true, however, that it was not

22 Subclass Lead Counsel's responsibility to follow a certain procedure to trigger IPP Lead Counsel's

23 duty (even if wearing his subclass counsel hat) to respond to the amendment request, however

24 made, in the manner most consistent with his overarching duty to the Nationwide Class as a whole.

25

26 [3]  However, IPP Lead Counsel does seem to have an aversion to being on the same complaint with
plaintiffs from the NRS and ORS Subclasses.  He filed a 5-page brief (ECF No. 5664) to oppose a
27 one line suggestion that appears in the Conclusion of Eleanor Lewis's renewed motion for
intervention (ECF No. 4643) that if intervention (not amendment) is granted, all plaintiffs should
28 meet and confer and file a single new Consolidated Amended Complaint.

1   As a practical matter, this broad duty to the Class is the glue that keeps the class action device

2   together after the need for subclassing is recognized, and means that subclass counsel must make

3   decisions adverse to the interests of another subclass only to the minimal degree necessary to

4   protect a material interest of the subclass represented.  Subclass Lead Counsel here have always

5   endeavored to conduct themselves in keeping with this principle.

6        If the Court is going to apply a 50% penalty cut to Subclass Lead Counsel's fees for actions

7   taken in what IPP Lead Counsel defines as opposition to the interests of the 22-state damage

8   subclasses, then Subclass Lead Counsel request that the Court impose a similar 50% penalty

9   reduction to IPP Lead Counsel's total fee for taking the following actions: (1) negotiating

10  settlements in 2015 that sacrificed the claims of over half the members of the Nationwide Class in

11  order to secure a monetary payment for class members who were residents of 22 states (ECF Nos.

12  4071-1 at ¶¶ 107-112; 5362); (2) refusing to facilitate or even cooperate when this Court ruled that

13  the interests of the rest of the Class required the recognition of the ORS and NRS Subclasses, and

14  therefore, independent representation by named plaintiff subclass members; and (3) structuring an

15  amended version of the 2015 settlements and repeatedly advocating for a final approval schedule

16  that (unless the Supreme Court reverses) has had the effect (as Subclass Lead Counsel warned it

17  might) of depriving the ORS and NRS Subclass of the benefits of having representatives intervene

18  and conclusively assert relation-back (ECF Nos. 5587-1 at ¶3 and Exhibits A-E at p.5; 5727;

19  5776).

20        If IPP Lead Counsel had agreed to the other putative plaintiff ORS and NRS Subclass

21  representatives becoming named plaintiffs in the fall of 2019, it would have changed absolutely

22  nothing about the terms of the amended settlements.  The 22-state settlement classes would have

23  had the same recovery, released the same claims, paid the same fees, and dismissed the same

24  defendants.  All that would have been different is that there would have been no threat that the

25  amended settlements could become final and the defendants be dismissed before the NRS and

26  ORS Subclasses could be represented by named plaintiffs.  Thus, there would have been no

27  occasion for the NRS and ORS Subclass putative plaintiffs to try to stop this threat from

28  materializing by objecting to the settlements, moving to intervene, or appealing the judgment

1    dismissing the defendants with prejudice, or filing a petition for writ of certiorari to the United

2    States Supreme Court.

3    **B.      The Settlement Approval Process and Proceedings in the Ninth Circuit**

4          All that Subclass Lead Counsel ever sought to achieve regarding the amended settlements

5    was to stop the clock on the dismissal of the defendants until the ORS and NRS Subclasses had

6    named plaintiffs representing their claims.  This simply required a reasonable delay in the entry of

7    the final judgment until the Ninth Circuit could rule.  One way or another, when the appellate

8    process was completed, the path to plaintiff class representative status would be set—either there

9    would be a ruling that intervention rights applied in an MDL, or that they did not and the NRS and

10   ORS Subclasses would then have to file "tag along cases" and fight the resultant challenges to

11   their ability to employ the relation-back doctrine to preserve the claims they had as Nationwide

12   Class members.  This is certainly not a frivolous issue.  Whether the availability of relation-back is

13   considered an aspect of due process or a tactical measure, its benefits are apparent and substantial.

14   The duty of adequate, zealous representation of the NRS and ORS Subclasses dictated that

15   Subclass Lead Counsel invest the time to pursue the intervention appeals to their conclusion.

16         Between denying the motions to intervene and denying the NRS and ORS Subclasses'

17   motions to alter or amend the intervention denial, which triggered the period for filing an appeal,

18   this Court granted preliminary approval of the 22-state damage subclasses' amended settlements.

19   ECF No. 5695.  Now the clock was ticking on the inevitable dismissal of the defendants by all of

20   the current named plaintiffs.  Accordingly, on May 6, 2020, shortly after filing notices of appeal

21   from the intervention denial, Subclass Lead Counsel moved this Court for a stay of the final

22   approval proceedings, which were scheduled to conclude in two months, until the Ninth Circuit

23   could decide the intervention issue.  ECF No. 5718.  It is true that the requested stay would have

24   put the final approval process on a different schedule from that IPP Lead Counsel had proposed,

25   and it certainly would have delayed the entry of judgment for the defendants, but it does not appear

26   that granting of the stay would have slowed down settlement class members getting paid.  The stay

27   motion was made nearly two years ago, and since then, the Ninth Circuit has ruled.  However, IPP

28   Lead Counsel reported in the Motion (fn. 2) that the process of preparing to distribute the

8

1   settlement proceeds is still ongoing.  This is not surprising.  It takes a long time to collect and audit

2   claims, and otherwise administer a 22-state claims-made, consumer distribution of hundreds of

3   millions of dollars.

4           However, both IPP Lead Counsel and the defendants opposed the 2020 stay request with

5   the same arguments that Subclass Lead Counsel's fears—that finality of settlement approval and

6   dismissal of the defendants would be held by the Ninth Circuit to moot their intervention

7   appeals—were total flights of fancy, and the ORS and NRS Subclasses were grasping at straws to

8   interject themselves into a settlement they had no business even commenting on.  IPP Lead

9   Counsel went so far as to argue that there was "no possibility" of a mootness ruling by the Ninth

10  Circuit. ECF Nos. 5726 at 8-9; 5727 at 5.  This Court agreed, finding the NRS and ORS

11  Subclasses' ultimately prescient mootness concerns to be "unfounded," and on that basis denied

12  the stay.  ECF No. 5774 at 7.

13          It is undeniable that the appellate proceedings would have been totally different if IPP Lead

14  Counsel had stopped before opposing the stay request and looked at the issue from the perspective

15  of what the NRS and ORS Subclass members (his current or former clients) had to lose if he were

16  wrong about mootness, and weighed that against what it would actually cost the 22-state

17  settlement subclasses to alter the approval schedule and eliminate any risk of injury to their fellow

18  Nationwide Class members.  The stay request was filed before the ORS and NRS Subclasses

19  interposed any formal objections to the amended settlements or moved to intervene to appeal the

20  entry of judgment, and neither of those filings would have occurred if the stay motion had resulted

21  in the final approval schedule being altered.  But there was no acknowledgement by IPP Lead

22  Counsel that the 22-state, ORS and NRS subclasses are fundamentally on the same team, and the

23  resolution of conflicts between subclasses require balance and equity, not scorched-earth

24  advocacy.  IPP Lead Counsel's response to the stay motion clearly indicated that he was perfectly

25  willing to just see what would happen to the ORS and NRS Subclasses if the defendants got

26  dismissed before the intervention issue could be resolved.  This left Subclass Lead Counsel with

27  no alternative but to move forward down other avenues in an attempt to protect the ORS and NRS

28  Subclasses' intervention rights.

9

1       The time period for filing objections to the amended settlements specified in the notice

2   came while the stay motion was still pending, and as insurance, Subclass Lead Counsel filed

3   timely objections, again stressing that their only concern was the potential effect of settlement

4   finality on their intervention appeals.  ECF No. 5732 at 4.  IPP Lead Counsel, along with the

5   defendants, argued against the Court's entertaining the substance of these concerns, asserting again

6   that the mootness fears were so unfounded and so insubstantial they did not constitute the threat of

7   injury that conveyed standing.  ECF Nos. 5757 at 7 and 5758 at 16.

8       While the objection was pending, Subclass Lead Counsel moved the Ninth Circuit for a

9   stay of the final approval schedule so that the defendants would still be in the litigation when the

10  intervention appeal was decided.  Dkt. 20-1, Ninth Circuit Case No. 20-15704 (July 9, 2020).[4]

11  Once again, IPP Lead Counsel and the defendants teamed up to argue that the mootness concerns

12  were "legally unsupportable."  Dkt. 24-1, Ninth Circuit Case No. 20-15704 (July 17, 2020) at 11;

13  Dkt. 25 at 8-9; Exhibits 2 and 3 to Kirkham Decl.  There was, however, in the opposition briefing

14  the recognition that in order to preserve the intervention appeal from mootness, an appeal from the

15  final judgment dismissing the defendants must also be pending.  *See, Canatella v. California*, 404

16  F.3d 1106, 1110 n. 1 (9th Cir. 2005).  *See, also, CE Design, Ltd. v. Cy's Crab House N., Inc.*, 731

17  F.3d 725,730 (7th Cir. 2013), and *In re Synthroid Mktg. Litig.* (MDL No. 1182), 264 F.3d 712, 716

18  (7th Cir. 2001) (a denied would be intervenor can avoid appellate mootness by "fil[ing] two

19  notices of appeal: one from the denial of intervention and a second springing or contingent appeal

20  from the final judgment").

21      Subsequently, this Court granted final approval of the settlement and entered judgment

22  dismissing the defendants, ruling that the ORS and NRS Subclasses' mootness fears, even if well

23  founded, did not convey standing for their objection to be considered (ECF No. 5786), and the

24  Ninth Circuit declined to stay of the schedule for dismissing the defendants.  ECF No. 5797.

25  Thereafter, Subclass Lead Counsel attempted to protect the Subclasses' intervention appeal rights

---

[4] A copy of this motion is attached as Exhibit 1 to the Declaration of Tracy R. Kirkham in Support of Opposition to Motion to Distribute Attorneys' Fees, Expenses and Incentive Awards," filed concurrently with this memorandum.

by following the procedures that the case law dictated: (1) moving to intervene for the purpose of appealing final approval and the entry of judgement (ECF No. 5792), which was opposed by IPP Lead Counsel (ECF No. 5806), and when intervention was denied (ECF No. 5823); (2) timely filing a notice of appeal from the denial of intervention and from the final approval and entry of judgment (ECF Nos. 5828 and 5831).

Subclass Lead Counsel were clear at all times during these proceedings that they posed no threat to the substance of the amended settlements and sought only to eliminate the threat that the dismissal of the defendants during the pendency of the intervention appeals posed to the interests of the ORS and NRS Subclasses.  Twice, Subclass Lead Counsel tried to obtain stays that, if granted, would have obviated the need for a formal objection to the amended settlements, and the filing of appeals from the final settlement judgment.  The relief requested by those motions—that judgment not be entered until the appellate process was concluded—was not intended to and would not have burdened any settling class members.

However, once those stays were denied, not objecting and not filing appeals from the settlement judgment were not options since failing to do so would have breached Subclass Lead Counsel's fiduciary duties to the ORS and NRS Subclasses.  Similarly, when the Ninth Circuit ruled that the finality of the amended settlements did in fact moot the intervention appeals (Dkt. 85-1, Ninth Circuit Case No. 20-15697 & ECF No. 5973), a decision that conflicted with the law of the Third, Fourth, Fifth, Seventh, Eighth, Tenth and Eleventh Circuits,[5] it would have been a

_____

[5] *See Neidig v. Rendina*, 298 Fed. Appx. 115, 116 n.1 (3d Cir. 2008) ("The fact that the civil rights action has been dismissed, however, does not render [the intervenor's] appeal of the denial of his motion to intervene in that suit moot."); *CVLR Performance Horses, Inc. v. Wynne*, 792 F.3d 469, 475 (4th Cir. 2015) ("We find more persuasive the reasoning of those courts holding that dismissal of the under- lying action does not automatically moot a preexisting appeal of the denial of a motion to intervene.");  *Sommers v. Bank of Am., N.A.*, 835 F.3d 509, 513 n.5 (5th Cir. 2016) ("Our caselaw does not forbid intervention as of right in a jurisdictionally and procedurally proper suit that has been dismissed voluntarily."); *accord DeOtte v. State*, 20 F.4th 1055, 1066 (5th Cir. 2021); *CE Design, Ltd. v. Cy's Crab House N., Inc.*, 731 F.3d 725, 730 (7th Cir. 2013) (a later-entered final judgment in the underlying case does not render moot an appeal from an order denying intervention if the would-be intervenor also appeals the final judgment); *see also In re Synthroid Mktg. Litig.*, 264 F.3d 712, 716 (7th Cir. 2001) (a denied would-be intervenor can avoid appellate mootness by "fil[ing] two notices of appeal: one from the denial of intervention and a

11

1   failure of adequate representation for Subclass Lead Counsel not to have petitioned the U.S.

2   Supreme Court to grant certiorari.  IPP Lead Counsel asserts in the Motion at 10, that no petition

3   should have been filed because the Ninth Circuit's decision is not for publication.  This has neither

4   legal nor practical significance to whether it reflects a split in the Circuits on a significant issue.

5   The published versus unpublished dichotomy is actually meaningless under the federal rules of

6   appellate procedure (FED. R. APP. P. 32.1(a); *see e.g.* Elizabeth Y. McCuskey, Submerged

7   Precedent, 16 Nev. L.J. 515, 583 (2016)).  The fact that the petition was from an unpublished

8   appellate opinion did not keep the well-respected SCOTUSblog from selecting it as one of their

9   "Featured Petitions" for the Next Conference.  *See*  https://www.scotusblog.com/case-

10  files/petitions-were-watching/ (webpage last accessed April 5, 2022).

11         Subclass Lead Counsel's appeals from the settlement judgment, and subsequent petition for

12  a writ of certiorari, provide no basis whatsoever to support a finding that they acted with the intent

13  or effect of depriving the 22-state settlement classes of the benefits of the amended settlements, or

14  in any way injuring the rights and interests of those class members.

15

16  ─────────────────

17  second springing or contingent appeal from the final judgment—which will kick in if [the
    intervenors] are successful on the first."); *Mausolf v. Babbitt*, 125 F.3d 661, 666 (8th Cir. 1997)

18  ("'If final judgment is entered with or after the denial of intervention, . . . the applicant should be
    permitted to file a protective notice of appeal as to the judgment, to become effective if the denial

19  of intervention is reversed.' A contrary rule would prevent a prospective intervenor who success-
    fully appeals the district court's denial of his intervention motion from securing the ultimate object

20  of such motion—party status to argue the merits of the litigation—if, as was the case here, the
    appellate court does not resolve the intervention issue prior to the district court's final decision on

21  the merits." (quoting 15A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper,
    FEDERAL PRACTICE AND PROCEDURE § 3902.1, at 113 (2d ed. 1991))); *FDIC v. Jennings*,

22  816 F.2d 1488, 1491 (10th Cir. 1987) ("To allow a settlement between parties to moot an extant

23  appeal . . . might well provide incentives for settlement that would run contrary to the interests of
    justice."); *Purcell v. BankAtlantic Fin. Corp.*, 85 F.3d 1508, 1511 n.3 (11th Cir. 1996) ("[the

24  intervenor] has standing to appeal the district court's denial of its motion to intervene. If we
    conclude that [the intervenor] is entitled to intervene as of right, then [the intervenor] has standing

25  as a party to appeal the district court's judgment based on the approved settlement agreement, and
    we would review that judgment.  If we determined that the district court abused its discretion in

26  approving the settlement agreement, then we would reverse the judgment, which included vacatur

27  of the jury verdict, and [the intervenor] would be granted the relief it seeks. Because we can
    potentially grant [the intervenor] effective relief, this appeal is not moot [based on entry of final

28  judgment].").

**IV.   THE PROPOSED FEE ALLOCATIONS FOR SUBCLASS LEAD COUNSEL WOULD BE A PRECEDENT DETRIMENTAL TO FUTURE CLASS ACTIONS**

The denial of intervention-of-right to a class member raises serious due process concerns, as does the elimination of the relation-back doctrine, potentially attendant to that denial.  This Court's ruling denying members of the ORS and NRS Subclasses the right to intervene to become named plaintiff class representatives was based solely upon two relatively recent district court cases holding that intervention is jurisdictionally foreclosed in cases coordinated for pretrial under Title 28 USC §1407, 50-year old statute.  This prohibition on intervention into MDL cases is not settled law, and the NRS and ORS Subclass members were completely within their rights to ask the Court of Appeals to weigh in on this issue of jurisdiction and its constitutional implications.

When the amended settlement terms were disclosed in the motion for preliminary approval, and it became apparent that certain provisions and the timetable for approval of the settlements, had the very real potential to dismiss the defendants and the moot the intervention appeals before the Ninth Circuit could rule on the merits, Subclass Lead Counsel did everything in their power to represent the interests of the ORS and NRS Subclasses, without impairing the interests of the 22-state settlement subclasses.  One purpose for the creation of subclasses is to have a vehicle for the resolution, through separate advocacy, of issues as to which subclass interest diverge.  *See, e.g., Meyers v. Crouse Health Sys*., 274 F.R.D. 404, 413 (N.D.N.Y. 2011) (court certified a single class containing four subclasses, noting that "[u]nder Rule 23(c), a court may divide a class into subclasses when all members of the class challenge the same conduct by a defendant but assert varying specific interests and legal theories.  See Fed. R. Civ. P. 23(c)(4)-(5); *Warren* [*v. Xerox Corp*]„ 2004 WL 1562884 [(E.D.N.Y. Jan. 26, 2004)], at \*17."  That situation, however, does not mean that the class itself is no more, having dissolved into warring factions, and bound no longer by commonality and interlaced obligations.  For example, forty-three years ago, the Seventh Circuit held in *In re Gen. Motors Corp. Engine Interchange Litig.,* 594 F.2d 1106, 1128-29 (7th Cir. 1979), that it was error for a district court to approve a subclass settlement without a full inquiry as to whether the settlement would have a compromising effect on the ability of the non-settling portion of the class to fully protect their claims, rights and interests.

13

SUBCLASS LEAD COUNSEL'S OPPOSITION TO INDIRECT PURCHASER PLAINTIFFS' MOTION FOR DISTRIBUTION OF ATTORNEYS' FEES, EXPENSES, AND INCENTIVE AWARDS - MDL No. 1917

Almost all the reasons advanced for cutting the fees of Subclass Lead Counsel concern actions taken after they assumed that role, and are discussed above.  But IPP Lead Counsel also inexplicably faults ORS Subclass Counsel for not participating in the 2016 settlements upon remand in 2019.  IPP Lead Counsel had vigorously opposed the objections raised to the original settlements and refused all requests to allow the objector Omitted Repealer States to participate in the settlements.  However, after the opening appellate briefs were filed, and while still opposing the appeals, IPP Lead Counsel filed documents in the district court showing there had been nine repealer states omitted from the settlements, and asserting that plaintiffs' expert had calculated damages for the omitted states of $580 million.[6]  This clearly highlighted the fact that no realistic value for the releases given by ORS class members had been accounted for in the settlement funds, and that simply participating in and diluting a settlement fund that contained no added compensation for their claims and releases would not be appropriate.  As this Court observed, "[t]he fact that the claims were required to be released meant that they had value." ECF No. 5362. Appointed counsel for the omitted states would have been remiss in their duty to proceed in any manner which did not consider the omitted states value, which was not reflected or included in the then current settlement. Multiple legal issues and potential conflicts arose and were analyzed and considered.  See also, EFC No. 5416 at 19-23.  As for moving to vacate the settlements, this was done in the good faith belief that the best process for the Nationwide Class would be for all the subclasses to negotiate together with the defendants to achieve a global settlement of the litigation, and then have a procedure for allocating the settlement proceeds among the subclasses.

However, the fee award at issue here is for services that Subclass Lead Counsel rendered to the Nationwide Class years before the ORS and NRS Subclasses were recognized.  Most of these services were directed toward developing the factual record of the defendants' alleged anticompetitive acts, facts that form the basis of every claim alleged by Nationwide Class members, regardless of subclass.  It is not unusual for class action plaintiffs' counsel, whose

---

[6] However, IPP economist, Dr. Janet Netz, had estimated damages for the 22-state settlement subclasses at $2.78 billion, and that damages for the 30 potential repealer states and the District of Columbia would be $3.36 billion.  ECF No. 5245.

1   clients may ultimately have divergent interests as to some aspect of the litigation, to work

2   cooperatively at the outset to conduct joint discovery and file joint briefs to harmonize and

3   streamline the pretrial process.  Indeed, it is desirable and commonly encouraged by the courts.

4   *See, e.g.*, Pretrial Order No. 1, entered in this litigation on April 4, 2008; ECF No. 230.

5         Since all class members and their counsel, regardless of later subclass status, have a

6   common interest in proving that the defendants violated the law, all counsel, whose efforts are

7   directed to common discovery and other universally applicable pretrial proceedings, have a

8   *quantum meruit* claim to be compensated fairly from any fund that is generated by those efforts.  It

9   is for this reason, that even in cases where subclasses litigate the division of settlement proceeds,

10   all counsel are nonetheless treated equally in the fee award process.  See, e.g., *Sullivan v. DB Invs.,*

11   *Inc.,* 2008 WL 8747721, 2008-2 Trade Cas. (CCH) ¶76,304 (D.N.J. May 22, 2008), at *27

12   (quoting R&R) ("The Settlement Fund will be allocated among the two classes (Direct and Indirect

13   Purchasers) and subclasses (Consumers and Resellers).  Plaintiffs' counsel seeks one award from

14   the total Settlement Fund for all counsel involved in representing the various plaintiff classes and

15   subclasses.")

16         Aside from the patent unfairness of punishing lawyers for performing their ethical and

17   fiduciary duties to zealously advocate for a subclass they are appointed to represent, there is a

18   precedential reason to reject IPP Lead Counsel's proposed 50% penalty reduction of Subclass

19   Lead Counsel's fees.  If there is a chance that a firm's fee could be devalued under these

20   circumstances, no firm which has invested years in discovery and litigation in a class action will

21   ever again take that risk by subsequently assuming the representation of a subclass since there is

22   always the possibility of getting into a conflict with another subclass.  That would mean that

23   subclasses, especially those identified late in litigation, as happened here, would always have

24   counsel appointed for them who are unfamiliar with the evidence and the factual record for the

25   representation that they are assuming.  The adequacy of representation required by Rule 23,

26   F.R.Civ.P., is one of the constitutional underpinnings of the class action device required to bind

27   absent class members to the outcome of the litigation.  A precedent that creates a gigantic financial

28   disincentive for the counsel with the best understanding of the case to take on the representation of

a subclass would make it difficult for courts to satisfy Rule 23's requirement that they ensure that all class members have "adequate representation" by counsel at all times.

## V.    THE APPROPRIATE FEES FOR SUBCLASS LEAD COUNSEL

### A.  Background of IPP Lead Counsel's Proposed Fees

**Cooper & Kirkham**. When the fee petition was filed in September 2015, C&K had the sixth-largest lodestar in the litigation, after devoting more than 5000 hours to advancing the claims of members of the Nationwide Class.  [ECF No. 4073-6 at ¶9 & Ex. 2.]  Special Master Martin Quinn complimented C&K's contribution, noting the work done by Tracy Kirkham in taking a lead role in creating the document database used to review, organize and annotate the documentary evidence, and by John Bogdanov "largely as the lead on document and deposition discovery against defendant Philips but also second-chairing 11-12 depositions, participating in drafting motions and some involvement in trial preparation."  ECF No. 4976 at 17.  *See also* ECF No. 4073-6 at 1-6.  Nonetheless, when Special Master Quinn asked IPP Lead Counsel to propose individual fee awards, Mr. Alioto proposed a fee award for C&K that would have been approximately 77% of the firm's lodestar.  ECF No. 4800 at 6.

The Special Master rejected the recommendation of a negative multiplier, and a majority of the arguments IPP Lead Counsel advanced to support it.  However, he found that aspects of C&K's objections to the 2015 settlements had been "unhelpful," and by appealing the Court's final approval of the settlements, C&K had acted against the interests of that portion of the class that was to receive monetary compensation.  Therefore, the Special Master recommended that a multiplier of 1.25 be applied to C&K's lodestar, rather than the 1.5 multiplier that he found the firm's contribution to the litigation otherwise would have merited.  ECF No. 4976 at 18.  The effect of this penalty was to reduce C&K's recommended fee by $690,408.  IPP Lead Counsel objected to the R&R and pressed his request that negative multiplier be imposed on C&K, which this Court rejected and awarded C&K the Special Master's recommended fee of $3,452,040.  ECF No. 5122 at 9.

Now, IPP Lead Counsel seeks authority to cut that award to $1,406,873.06.

16

SUBCLASS LEAD COUNSEL'S OPPOSITION TO INDIRECT PURCHASER PLAINTIFFS' MOTION FOR DISTRIBUTION OF ATTORNEYS' FEES, EXPENSES, AND INCENTIVE AWARDS - MDL No. 1917

Although the Motion only describes the methodology, and not the calculation of any of the fees that IPP Lead Counsel seeks authorization to distribute to the plaintiffs' firms, on January 25, 2022, Mr. Alioto sent Tracy Kirkham a letter via email stating that "Lead Counsel will make a distribution of attorneys' fees to your firm in the amount of $1,406,873.06," and requesting that Ms. Kirkham provide him with "a W-9 and wiring instructions" by January 31, 2022.  Exhibit 4 to Kirkham Decl.  After the Motion was filed describing the formula, C&K was able to replicate IPP Lead Counsel's computation.  This fee is arrived at by first adjusting C&K's 2017 Court award according to the proposed formula to account for the reduction in the aggregate fee award agreed to in the amended settlements, and to pay a lodestar of $6,103,876 for work done since March 1, 2019.  IPP Lead Counsel then took the result of that calculation and cut it in half.

This proposed fee would compensate C&K for a little less than 46% of its 2015 Fee Petition lodestar.  It is approximately 40% of the fee awarded by the Court in 2017.  The Motion, at fn. 7, claims that "IPP Counsel met and conferred with [C&K, LOFOS and Moore] regarding their proposed allocations and objections but were unable to resolve this dispute," citing to Mr. Alioto's Declaration at ¶11.  The Declaration provides no additional detail other than the fact that Mr. Alioto did not personally engage in the alleged meet and confer sessions.  This assertion, as to C&K, appears to be a materially inaccurate representation of a single telephone conversation on March 9, 2022, between Joseph Goldberg and Tracy Kirkham, during which there was no discussion of a potential compromise of C&K's refusal to agree to the offered fee.  See, Kirkham Decl. at ¶¶ 7-10.  The only apparent purpose of IPP Lead Counsel's mischaracterization of the March 9 call is to unfairly cast C&K as uncooperative and intransigent.

**Law Offices of Francis O. Scarpulla**.  In 2016, IPP Lead Counsel proposed a fee of $49,790.74 for LOFOS, significantly less than its reported lodestar of $232,750, which formed a basis for the Court's aggregate fee award.  ECF No. 4976 at 9.  This reduction and negative multiplier was proposed only Mr. Scarpulla's time that was summited for compensation by LOFOS, even though all of Mr. Scarpulla's time was incurred while he was the senior antitrust partner at Zelle, his former firm.  For all of the time incurred by Mr. Scarpulla's partners and associates at Zelle, IPP Lead Counsel suggested a multiplier of 1.9587.  *Id*.  There was no

17

1   principled basis for this distinction.  Splitting the time into two fee petitions was part of Mr.

2   Scarpulla's separation agreement with his former firm.  ECF No. 4976 at 10.  IPP Lead Counsel

3   also justified his proposal by disallowing portions of LOFOS's lodestar.

4          Special Master Quinn found that IPP Lead Counsel's proposal suggested an inappropriate

5   attempt at "payback for Scarpulla's many criticisms of Lead Counsel."  ECF No. 4976 at 12.

6   Nevertheless, while Special Master Quinn refused to disallow any of the LOFOS lodestar, he did

7   use a lower multiplier than he applied to Mr. Scarpulla's time in his former firm's petition.  In

8   addition, the Special Master confused the historical-rate and then current-rate lodestar amounts for

9   LOFOS, and used Mr. Scarpulla's lodestar at historical rates ($212,288.75) as the starting point for

10  his across-the-board 10% reduction, instead of the lodestar at current rates ($232,750).  In contrast,

11  the Special Master, and the Court used current-rate lodestars for awarding fees to all other IPP

12  counsel.  *See* ECF No. 4976-1 (column labeled "Current Rate Lodestar").  Applying a small

13  multiplier to the adjusted historical lodestar, the Special Master recommended a fee of

14  $208,223.31 for LOFOS.  *Id*. at 15.

15         Both LOFOS and IPP Lead Counsel objected to the Special Master's recommendation,

16  which this Court rejected.  The Court held that the quality multiplier on Mr. Scarpulla's time

17  should be the same as all other Zelle lawyers, regardless of which firm was being compensated.

18  However, while agreeing with the Special Master that IPP Lead Counsel appeared to hold an

19  "inadequately-supported belief that Scarpulla undermined the litigation of the case" (ECF No.

20  5122 at 7), the Court disallowed time spent first at the request of Judge Conti early in the litigation,

21  and later at the request of Special Master Vaughn Walker—requests that were prompted concerns

22  that the Class was not being adequately-served by IPP Lead Counsel.  Adjusting the lodestar in

23  this manner resulted in a fee award to LOFOS of $130,118.88.  ECF No. 5122 at 7.

24         Now, IPP Lead Counsel proposes to cut that fee to $53,029.73.  See, Alioto letter of

25  January 25, 2022; Exhibit A to the Declaration of Francis O. Scarpulla, filed herewith.  This

26  proposal represents a fee of less than 25% of the LOFOS lodestar, and is a reduction of $77,089 or

27  60% from its Court-awarded fee.  Contrary, to the assertions in the Motion and Mr. Alioto's

28

Declaration, IPP Lead Counsel did not discuss the matter after Mr. Scarpulla sent him a formal objection, and no meet-and-confer occurred. *Id.* at ¶ X.

**Law Office Of Theresa D. Moore.**  In 2016, IPP Lead Counsel proposed that Special Master Quinn reduce Moore's lodestar to $26,184.38 (an 88% reduction in lodestar), and apply a negative multiplier for a fee award of $19,625.28.  The Special Master reinstated some of the work Lead Counsel suggested be cut from the lodestar, and rejected IPP Lead Counsel's suggestion of a negative .75 multiplier, recommending instead that a 1.0 multiplier be applied to Moore's adjusted lodestar.  This resulted in a recommended fee of $64,025.28.  Upon review, the Court adopted the Special Master's adjusted lodestar recommendation, but placed Moore in the category of firms for which the Special Master had recommend a .75 multiplier.  The Court awarded Moore a fee of $48,018.96. ECF No. 5122 at 10.

IPP Lead Counsel is effectively reimposing its original 2016 proposal by seeking authorization to pay Moore a fee of $19,570.04, as described in a January 25, 2022, letter.  *See* Declaration of Theresa D. Moore Ex. 1.  As with the other Subclass Lead Counsel, this proposed fee is a 60% reduction from the fee that the Court awarded in 2017.  Moore responded with a formal rejection of IPP Lead Counsel's proposed allocation.  *Id.* at Exhibit 2.  However, no meet-and-confer occurred regarding this matter, although Moore did have a brief conversation with one of Mr. Alioto's co-counsel, who asked her position on the proposed fee, and stated he would be talking with her again, but no further conversation took place. *Id.* at ¶ 4.

**B.  Awarding Subclass Counsel Their 2017 Fee Awards**

There is a final Order of this Court (ECF No. 5122) awarding fees to Subclass Lead Counsel that establishes what the Court determined was fair compensation their efforts to develop the case against the defendants.  While it is true that the total of all firms' compensation in that Order exceeds the reduced aggregate fee award, Subclass Lead Counsel were not consulted regarding the decision to ask the Court to reduce the aggregate fee to facilitate the negotiations for the amended settlements.   Accordingly, it would be reasonable to allocate the reduction in the aggregate fee solely among the plaintiffs' firms who requested it and reconfirm the awards of $3,453,040 to C&K; $130,118.88 to LOFOS; and $48,018.96 to Moore.  Equity would also be

1  served by using the modified 2017 award calculations for C&K and LOFOS, discussed below, if

2  the Court elects to use its 2017 determination to award Subclass Lead Counsel's fees here.

3          **C.  Modifying IPP Lead Counsel's Formula to Award Subclass Counsel Fees**

4          In the alternative, the Court could elect to use IPP Lead Counsel's proposed allocation

5  formula with certain modifications.  First, for the reasons discussed above, Subclass Lead Counsel

6  request the Court to reject the 50% cut to the fees computed for their firms.  Second, Subclass

7  Lead Counsel request that their fees be computed without inserting the $6,103,876 in new

8  "Amended Settlement Lodestar" into the formula.

9          The Motion states that this additional lodestar is attributable to work performed by "certain

10  firms" during a 31-month period from "March 1, 2019, through September 30, 2021."  Motion at

11  5.  This lodestar is supported by nothing more than a single paragraph, and a reference in a

12  supporting declaration that collects ECF entries associated with the various filings leading up to

13  the amended settlements.  *See* ECF No. 6001-1 at ¶ 7.  The lawyers who performed this work, their

14  hourly rates and the nature of the services are not identified.

15          Based on Subclass Lead Counsel's first-hand knowledge, acquired by also being involved

16  in the district court and appellate proceedings during this time, this lodestar appears to be

17  excessive.  It represents an average expenditure of $196,899.23 in monthly legal services.  At a

18  blended hourly rate of $1000 for all counsel involved (which itself would be excessive) it

19  represents 6,103.9 hours, or an average of 196.9 hours each month, which is more than one person,

20  billing at $1000/hour, working 8 hours a day, five days a week, month in and month out for the

21  entire period.  While there are undoubtedly activities related to notice and claims administration

22  included in the lodestar, it is equally true that there were long stretches of time during the appeals

23  when there was nothing to do but wait for the Ninth Circuit.

24          Subclass Lead Counsel recognize that this new "Amended Settlement Lodestar" is being

25  used to shift money from plaintiffs' counsel to other plaintiffs' counsel so perhaps the lack of

26  supporting documentation is not as automatically fatal to a request to insert it into a proposed

27  allocation formula, as it would be if IPP Lead Counsel were asking the Court to make an additional

28  common fund award.  *See, e.g., In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291,

1   1305 (9th Cir. 1994) ("[t]he party petitioning for attorneys' fees bears the burden of submitting

2   detailed time records justifying the hours claimed to have been expended.") and *In re Online DVD-*

3   *Rental Antitrust Litig.*, 779 F.3d 934, 949 (9th Cir. 2015) ("The lodestar method requires

4   multiplying the number of hours the prevailing party reasonably expended on the litigation (as

5   supported by adequate documentation) by a reasonable hourly rate for the region and for the

6   experience of the lawyer." (internal quotation marks omitted)).

7          However, there are still equitable considerations of fairness attendant to determining a

8   firm's individual fee that cannot be satisfied without IPP Lead Counsel's supplying supporting

9   documentation and fulfilling the requirements of the applicable case law for the claimed lodestar

10  amount.  Accordingly, Subclass Lead Counsel object to including this lodestar in their fee

11  allocation computation.

12         Using IPP Lead Counsel's formula without inclusion of the "Amended Settlement

13  Lodestar" would result in fee awards to Subclass Lead Counsel as follows: C&K - $2,948,551.74;

14  LOFOS - $110,961.49; and Moore - $40,949.08.  However, LOFOS and C&K request that in

15  applying the formula, the Court use a modification of their 2017 awards that corrects the

16  computational error made by Special Master Quinn in the case of LOFOS and eliminates the

17  penalty multiplier reduction that the Special Master applied to C&K's adjusted lodestar for

18  objecting to and appealing the original settlements.

19         As described above, the Special Master simply chose the wrong lodestar for LOFOS, an

20  error that carried over into this Court's fee award.  That award was made by taking $66,431.25,

21  31.3% of LOFOS's historical lodestar, and applying a 1.9587 multiplier.  All other firms were

22  compensated based on a lodestar computed at then current rates.  Correcting this mistake by using

23  $72,850, 31.3% of LOFOS's lodestar at 2016 current rates, and applying the 1.9587 multiplier

24  results in an adjusted 2017 award number for use in IPP Lead Counsel's formula of $142,692.76,

25  and a resulting fee computation of $121,684.12.

26         Also as described above, the Special Master recommended and the Court adopted a

27  multiplier of 1.25, rather than 1.5, for C&K's lodestar solely based on a finding that its objecting

28  and appealing the original settlements was unhelpful to the Nationwide Class.  With the benefit of

21

SUBCLASS LEAD COUNSEL'S OPPOSITION TO INDIRECT PURCHASER PLAINTIFFS' MOTION FOR
DISTRIBUTION OF ATTORNEYS' FEES, EXPENSES, AND INCENTIVE AWARDS - MDL No. 1917

1    hindsight, it is clear the Special Master was wrong.  The objections to and appeals from the 2015

2    settlements caused this Court to conclude in 2018, "that it erred in approving the parties' original

3    settlement . . . [because] the fact that the claims [of NRS and ORS Subclass members] were

4    required to be released meant that they had value."  EFC No. 5362 at 1.  That is precisely the

5    argument that C&K made in objecting to the settlements.  It would seem that a settlement

6    objection that ultimately contributes to a court concluding that there are "problems with the current

7    settlement" (*Id*. at 2) such that it does not satisfy the Rule 23 criteria for approval, has as a matter

8    of law, benefitted class members, rather than being unhelpful to their interests.  Accordingly,

9    recomputing C&K's 2017 fee award with the 1.5 multiplier that both the Special Master and this

10   Court agreed it would have received had it never raised an objection to the original settlement

11   would be appropriate, fair and equitable.  This results in an adjusted 2017 award number for use in

12   IPP Lead Counsel's formula of $4,142,448, and a resulting fee computation for C&K of

13   $3,532,556.

14   **VI.    CONCLUSION**

15        It is instructive look at the list of actions which Mr. Alioto contends support punishing

16   Subclass Lead Counsel, and ask: what should these firms have done to avoid forfeiting millions of

17   dollars in compensation?  Should they have ignored the fact that the structure and timing of IPP

18   Lead Counsel's amended settlements had the potential to result in the defendants being dismissed

19   from the litigation before the Ninth Circuit could determine whether NRS and ORS Subclass

20   members had the right to intervene in the cases coordinated before this Court?  Should they not

21   have objected or sought to intervene in an attempt to be heard on the issue of whether the

22   settlements could potentially moot the intervention appeals?  Should they not have appealed the

23   denial of that intervention and the final settlement approval even though case law told them that

24   such an appeal was critical to any chance of keeping their original intervention appeals alive?  Or

25   perhaps when they saw the provisions of the amended settlements, C&K, LOFOS and Moore

26   should have asked the Court to relieve them of their duties as Subclass Lead Counsel, and find

27   other counsel to do the job; ones with no invested time to put at risk?  Undeniably, any one of

28   these actions would have shortened IPP Lead Counsel's list of reasons to punish them, but none

would have been appropriate.  All would have violated C&K's, LOFOS's and Moore's ethical obligations and fiduciary duties to ORS and NRS Subclass members.

IPP Lead Counsel's request for Court approval for his proposal for dividing the amended aggregate fee as it relates to C&K, LOFOS and Moore should be denied, and the Court should make awards to these counsel either by confirming modified versions of the 2017 fee awards, or by modifying IPP Lead Counsel's formula as described above.

Dated:  April 5, 2022

Respectfully submitted,

 /s/  *Tracy R. Kirkham*
Tracy R. Kirkham

Tracy R. Kirkham (69912)
John D. Bogdanov (215830)
Cooper & Kirkham, P.C.
357 Tehama Street, Second Floor
San Francisco, CA 94103
Telephone: (415) 788-3030
Facsimile: (415) 882-7040
Email:  trk@coopkirk.com
        jdb@coopkirk.com

*Lead Counsel for Indirect Purchaser Plaintiffs NRS Subclass*

/s/  *Theresa D. Moore*
Theresa D. Moore
Theresa D. Moore (99978)
Law Office Of Theresa D. Moore, PC
One Sansome Street, 35th Floor
San Francisco, CA 94104
Telephone: (415) 613-1414
tmoore@aliotolaw.com

*Co-Lead Counsel for Indirect Purchaser Plaintiffs ORS Subclass*

 /s/  *Francis O. Scarpulla*
Francis O. Scarpulla

Francis O. Scarpulla (41059)
Patrick B. Clayton (240191)
3708 Clay Street
San Francisco, CA  94118
Telephone:  (415) 751-4193
Facsimile:  (415) 751-0889
fos@scarpullalaw.com
pbc@scarpullalaw.com

*Co-Lead Counsel for Indirect Purchaser Plaintiffs ORS Subclass*

SUBCLASS LEAD COUNSEL'S OPPOSITION TO INDIRECT PURCHASER PLAINTIFFS' MOTION FOR DISTRIBUTION OF ATTORNEYS' FEES, EXPENSES, AND INCENTIVE AWARDS - MDL No. 1917

1

## __ATTESTATION__

2

I hereby attest pursuant to Civil Local Rule 5-1(i)(3) that concurrence in the filing of this

3

document has been obtained from all signatories.

4

5                                          /s/ *Tracy R. Kirkham*
                                           Tracy R. Kirkham

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SUBCLASS LEAD COUNSEL'S OPPOSITION TO INDIRECT PURCHASER PLAINTIFFS' MOTION FOR
DISTRIBUTION OF ATTORNEYS' FEES, EXPENSES, AND INCENTIVE AWARDS - MDL No. 1917