Tracy R. Kirkham (69912)
John D. Bogdanov (215830)
Cooper & Kirkham, P.C.
357 Tehama Street, Second Floor
San Francisco, CA 94103
Telephone:  (415)788-3030
Facsimile: (415) 882-7040
trk@coopkirk.com
jdb@coopkirk.com

*Lead Counsel for the Indirect Purchaser
Plaintiffs NRS Subclass*

Francis O. Scarpulla (41059)
Patrick B. Clayton (240191)
Law Offices of Francis O. Scarpulla
3708 Clay Street
San Francisco, CA 94118
Telephone:  (415) 751-4193
Facsimile:  (415) 751-0889
fos@scarpullalaw.com
pbc@scarpullalaw.com

*Co-Lead Counsel for the Indirect Purchaser
Plaintiffs ORS Subclass*

Theresa D. Moore (99978)
Law Office of Theresa D. Moore, PC
One Sansome Street, 35th Floor
San Francisco, CA 94104
Telephone: (415) 613-1414
tmoore@aliotolaw.com

*Co-Lead Counsel for the Indirect Purchaser
Plaintiffs ORS Subclass*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| **IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION** | Master File No. 4:07-cv-5944-JST<br><br>MDL No. 1917 |
| This Document Relates to:<br><br>All Indirect Purchaser Actions | **DECLARATION OF TRACY R. KIRKHAM IN SUPPORT OF SUBCLASS LEAD COUNSEL'S OPPOSITION TO INDIRECT PURCHASER PLAINTIFFS' MOTION FOR DISTRIBUTION OF ATTORNEYS' FEES, EXPENSES, AND INCENTIVE AWARDS**<br><br>Hearing Date: May 12, 2022_<br>Time:          2:00 p.m.<br>Judge:         Honorable Jon S. Tigar<br>Courtroom:   6, 2nd Floor |

I, Tracy R. Kirkham, declare as follows:

1.      I am a member in good standing of the State Bar of California, and licensed to practice in the states of California, Pennsylvania, and New Jersey.  I am a partner at Cooper & Kirkham, P.C. ("C&K"), and Lead Counsel for the Non-Repealer States (NRS) Subclass in this litigation.  I submit this Declaration in Support of Subclass Lead Counsel's Opposition to Indirect Purchaser Plaintiffs' Motion for Distribution of Attorneys' Fees, Expenses, and Incentive Awards, filed herewith.  I make this Declaration from my personal knowledge and, if called as a witness, I could and would testify competently to the facts set forth herein.

2.      Attached hereto as Exhibit 1 is a true and correct copy of Appellants' Joint Motion to Stay Pending Appeal; Emergency Motion Under Circuit Rule 27-3, Relief Requested By July 17, 2020 (dated July 9, 2020); Dkt. 20-1, Ninth Circuit Case No. 20-15704, *In Re: Cathode Ray Tube (CRT) Antitrust Litigation.*

3.      Attached hereto as Exhibit 2 is a true and correct copy of Defendants-Appellees' Response to Joint Motion to Stay Pending Appeal (dated July 17, 2020); Dkt. 24-1, Ninth Circuit Case No. 20-15704, *In Re: Cathode Ray Tube (CRT) Antitrust Litigation.*

4.      Attached hereto as Exhibit 3 is a true and correct copy of Appellee Indirect Purchaser Plaintiffs' Opposition to Appellants' Emergency Motion to Stay (dated July 17, 2020); Dkt. 25, Ninth Circuit Case No. 20-15704, *In Re: Cathode Ray Tube (CRT) Antitrust Litigation.*

5.      Attached hereto as Exhibit 4 is a true and correct copy of a letter that I received by email from IPP Lead Counsel on January 25, 2022.

6.      Attached hereto as Exhibit 5 is a true and correct copy of a letter that I sent via email to IPP Lead Counsel on January 31, 2022.

7.      On Friday, March 4, 2022, Joseph Goldberg, one of plaintiffs' counsel in this litigation, left me a message on my office voicemail, saying that he would like me to call him. After an exchange of scheduling emails, that call took place on Wednesday, March 9th.  Mr. Goldberg told me that he had been requested by IPP Lead Counsel, who had received no response to his January 25 letter, to call me and ask if I would agree to his proposed fee distribution.

1

8.   I told Mr. Goldberg that I did not agree, and that I had sent a letter back to Mr. Alioto stating my disagreement.  I told Mr. Goldberg that the fee in Mr. Alioto's letter was less than half of my firm's 2015 fee petition lodestar and a reduction of over $2 million from the fee my firm had been awarded by the Court.  I thought he seemed surprised by this, and he disavowed any personal participation in the decision to offer this fee to C&K.  I also told Mr. Goldberg that I believed that this punitive fee offer was just the latest in the vendetta that Mr. Alioto has had against my late partner, Josef Cooper, ever since Special Master Vaughn Walker submitted a recommendation to Judge Conti that Joe be appointed Co-Lead Counsel for the Nationwide Class.  While Mr. Goldberg did not respond directly to that statement, he did state that he had always liked and respected Joe.

9.   I also told Mr. Goldberg during that call, that Mr. Alioto did not have the authority to determine individual fee awards for plaintiffs' counsel, and that the September 24, 2015, Order appointing Martin Quinn as Special Master for fee award matters (ECF No. 4077) specifically referred to him all fee matters arising in any subsequent settlement, as well as those attendant to the 2015 settlements.  Mr. Goldberg also seemed surprised by this.  I told him that I had pointed this out in my letter of January 31st and had asked Mr. Alioto to confirm that he would comply with the Court's Order.  I stated that since I had not heard from Mr. Alioto, I was considering making a motion to enforce the Order of reference to Special Master Quinn.  I offered to email Mr. Goldberg a copy of my January 31 letter to Mr. Alioto and ECF No. 4077, which I did after the call.

10.   I received no further communications from Mr. Goldberg.  Other than the call with Mr. Goldberg, I received no communications on the subject of fees at any time from Mr. Alioto or any other person purporting to act on his behalf until service of the Motion For Distribution of Attorney's Fees and Expenses.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.   Executed this 5th day of April, 2022, at San Francisco, California.

/s/  *Tracy R. Kirkham*
Tracy R. Kirkham

2

# EXHIBIT 1

Nos. 20-15697 and 20-15704

_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

_____

In Re: Cathode Ray Tube (CRT) Antitrust Litigation,

*Indirect Purchaser Plaintiffs, et al. v. Toshiba Corporation, et al.*

On Appeal from the United States District Court
For the Northern District of California, Oakland Division
The Honorable Jon S. Tigar
Case No. 4:07-cv-05944-JST

_____

**APPELLANTS' JOINT MOTION TO STAY PENDING APPEAL;
EMERGENCY MOTION UNDER CIRCUIT RULE 27-3, RELIEF
REQUESTED BY JULY 17, 2020**

_____

Tracy R. Kirkham (69912)
John D. Bogdanov (215830)
Cooper & Kirkham, P.C.
357 Tehama Street, Second Floor
San Francisco, CA 94103
Telephone: (415) 788-3030
Facsimile: (415) 882-7040
trk@coopkirk.com
jdb@coopkirk.com

*Interim Lead Counsel for the Non-Repealer State Subclass*

[Additional Counsel on Following Page]

Francis O. Scarpulla (41059)
Patrick B. Clayton (240191)
Law Offices of Francis O. Scarpulla
456 Montgomery Street, 17ᵗʰ Floor
San Francisco, CA  94104
Telephone:  (415) 788-7210
Facsimile:  (415) 788-0706
  fos@scarpullalaw.com
  pbc@scarpullalaw.com

Theresa D. Moore (99978)
Law Offices of Theresa D. Moore
One Sansome Street, 35th Floor
San Francisco, CA 94104
Telephone: (415) 613-1414
tmoore@aliotolaw.com

*Interim Co-Lead Counsel for the ORS*

**TABLE OF CONTENTS**                                                    **PAGE**

I.     GROUNDS FOR THE MOTION AND RELIEF SOUGHT............1

II.    BACKGROUND ........................................................................1

    A.  Preliminary Procedural Matters ..........................................1

    B.  Post-Remand Activities In The District Court .....................2

    C.  The Genesis Of The Current Appeal ...................................5

    D.  The Effects Of The IPPs' Proposed Settlements the NRS/ORS Plaintiffs' Interests And Attempts To Secure A Stay At The Trial Court Level.......................................................................7

III.   LEGAL STANDARD ...............................................................9

IV.   A STAY IS NECESSARY ......................................................10

    A.  Likelihood of Success on the Merits...................................10

    B.  Irreparable Harm is Highly Likely Without a Stay ............12

    C.  The Members of the 22 State Subclasses Will Not be Harmed by a Stay, and Public Interest Factors Do Not Weigh Against a Stay ................19

CONCLUSION.............................................................................20

## TABLE OF AUTHORITIES                                    PAGE(S)

### <u>CASES</u>

*Al Otro Lado v. Wolf*,
952 F.3d 999 (9th Cir. 2020) .......................................................................13, 16

*Alliance for the Wild Rockies v. Cottrell*,
632 F.3d 1127 (9th Cir. 2011)). .................................................................10

*Arabian Gas & Oil Dev. Co. v. Wisdom Marines Lines, S.A.*,
16-CV-03801-DMR, 2017 WL 2378060 (N.D. Cal. June 1, 2017).......................11

*DBSI/TRI IV Ltd. P'ship v. United States*,
465 F.3d 1031 (9th Cir. 2006) ....................................................................16

*Immigrant Assistance Project v. I.N.S.*,
306 F.3d 842 (9th Cir. 2002) .....................................................................13

*In re Farmers Ins. Exch. Claims Representatives' Overtime Pay Litig.*,
2008 WL 4763029 (D. Or. Oct. 28, 2008)). ..............................................6, 12

*In re Korean Air Lines Co., Ltd.*,
642 F.3d 685 (9th Cir. 2011) .....................................................................11

*In re Mortgage Elec. Registration Sys. (MERS) Litig.*,
2016 WL 3931820 (D. Ariz. July 21, 2016)..............................................12, 19

*In re Takata Airbag Products Liab. Litig.*,
379 F. Supp. 3d 1333 (S.D. Fla. 2019) ........................................................12

*In re Yasmin & Yaz (Drospirenone) Mktg., Sales Practices & Products Liab. Litig.*,
3:09-MD-02100-DRH, 2011 WL 1375011 (S.D. Ill. Apr. 12, 2011) ...................12

*Leiva-Perez v. Holder*,
640 F.3d 962 (9th Cir. 2011) ............................................................10, 12, 16

*Mohamed v. Uber Techs., et al*,
115 F. Supp. 3d 1024 (N.D. Cal. 2015)........................................................10

*Morse v. Servicemaster Glob. Holdings, Inc.*,
C 08-03894, 2013 WL 123610 (N.D. Cal. Jan. 8, 2013).........................................11

*Nken v. Holder*,
556 U.S. 418 (2009) ...................................................................................................9

*O'Connor v. Uber Techs., Inc.*,
13-CV-03826-EMC, 2015 WL 9303979 (N.D. Cal. Dec. 22, 2015) .....................10

*Phillips v. E. I. Dupont de Nemours & Co. (In re Hanford Nuclear Reservation Litig.),*
521 F.3d 1028 (9th Cir. 2008) ................................................................................14

*United States v. City of Los Angeles, Cal.,*
288 F.3d 391 (9th Cir. 2002) ..................................................................................16

*United States v. Ford,*
650 F.2d 1141 (9th Cir. 1981)) ...............................................................................16

*W. Coast Seafood Processors Ass'n v. Nat. Res. Def. Council,*
643 F.3d 701 (9th Cir. 2011) ..................................................................................15

## Additional Authorities

Fed. R. App. P. 8(a)(2) ..........................................................................................1, 9

Fed. R. App. P. 27 .....................................................................................................1

Fed. R. Civ. P. 24 ..................................................................................................5, 6

Fed. R. Civ. P. 59(e) .................................................................................................6

Ninth Circuit Rule 27-3 ............................................................................................1

# I. GROUNDS FOR THIS MOTION AND RELIEF SOUGHT

Pursuant to Rules 8(a)(2) and 27 of the Federal Rules of Appellate Procedure, Appellants in Case Nos. 20-15697 and 20-15704, move to stay certain proceedings in *In re: Cathode Ray Tube (CRT) Antitrust Litigation,* No. 4:07-cv-5944-JST, MDL No. 1917 (N.D. Cal.) pending resolution of the appeals in those cases on the grounds described in this motion, including but not limited to the fact that Appellants are likely to succeed on the merits; to suffer irreparable harm absent a stay; a stay will not harm other parties to the underlying litigation; and public interest factors do not weigh against a stay. Accordingly, Appellants respectfully request that this Court stay the proceedings in the District Court.

Pursuant to Ninth Circuit Rule 27-3, Appellants also respectfully request that this Court rule on this motion to stay by July 17, 2020. In the alternative, Appellants request that this Court enter a temporary stay to preserve the *status quo* until this motion can be decided.

# II. BACKGROUND

## A. Preliminary Procedural Matters

In February 2019, this Court remanded a prior appeal that arose from the same underlying litigation: *In re Cathode Ray Tube (CRT) Antitrust Litig.*, Case No. 16-16368 (9th Cir.) (consolidating cases). In the prior appeal, objectors challenged on multiple bases the approval of a nationwide class action settlement between all

-1-

Indirect Purchaser Plaintiffs ("IPPs") and Defendants pursuant to which the residents of 22 IPP repealer states received consideration for their releases while no consideration was paid to the residents of 9 other repealer states ("ORS Subclass") or to the residents of all non-repealer states (some of whom comprise the "NRS Subclass").

While the prior appeal was pending, the District Court entered an order "conclud[ing] that it erred in approving the parties' original settlement" because it forced certain class members "to release their claims without compensation," stating that "with the benefit of hindsight," it should not have approved the IPPs' settlement. (*See* Declaration of Tracy R. Kirkham in Support of Response to Motion to Dismiss Appeal for Lack of Jurisdiction ("Kirkham Decl."), Ex. A). Recognizing the District Court's concession, this Court concluded that the settlement's unfairness "necessarily affect[ed] the remaining issues on appeal"— including IPP counsel's adequacy of representation and fee award—and, therefore, "remand[ed] th[e] case so that the district court [could] reconsider its approval of the settlement." (Kirkham Decl., Ex. B at 10-11).

## B. Post-Remand Activities In The District Court

After remand, the claims of the indirect-purchasers in the nationwide class continued to proceed on two parallel tracks, again wholly dependent on where in

the country that class member lives, and whether they were an IPP class member who had been omitted from consideration in the remanded settlement. None of the named plaintiffs was members of the NRS or ORS classes and IPP lead counsel had demonstrated a disinterest in protecting their rights. Therefore, in order to litigate their respective claims, additional counsel needed to be appointed and certain members of the NRS and ORS classes needed to become named plaintiffs and class representatives.

As an initial step, shortly after remand, the District Court appointed the undersigned as interim lead counsel for each of the NRS and ORS classes. (Dkt. 5518). Thereafter, the Defendants asserted that lead counsel's clients, the putative class representatives for these classes, needed to intervene and "obtain leave to amend" to prosecute the classes' long-pending, federal claims for equitable relief and attendant state-law damage claims. (Dkt. 5542 at 1). Although the court initially stated that it did not "have an opinion about whether there need[ed] to be a motion to intervene" for a class member to be designated a named plaintiff and putative class representative (Dkt. 5559 at 7), it ultimately ordered the filing of a motion to intervene and amend. (Dkt. 5551 at 1). Based on the Court's order, Appellants ("the NRS/ORS Plaintiffs") moved for leave to amend the operative indirect-purchaser complaints (which had included the NRS/ORS Plaintiffs as

-3-

putative class members since 2013) solely to add them as named plaintiffs and putative class representatives, or in the alternative, to intervene and make such an amendment. (Dkt. 5565; 1526).

Both the Defendants and IPP lead counsel opposed. Despite a multipronged attack, neither group anticipated the District Court's ultimate ruling or asserted that the District Court *lacked jurisdiction* to add parties during the pendency of an MDL through procedural means like amendment and intervention. (Dkt. 5591-5593). The District Court denied the intervention motion without prejudice, agreeing with IPP lead counsel's assertion that proposed the NRS/ORS Plaintiffs could not be granted the right to amend the indirect purchaser consolidated amended complaint because it was the "IPPs' complaint," (meaning the 22 repealer states) and not the NRS/ORS Plaintiffs' or class members' complaint, citing non-class action and non-MDL precedent that a stranger to litigation cannot just amend into a case without the consent of the current plaintiff. (Dkt. 5593, at 9-10 and Dkt. 5626 at 3). The District Court however stated that it was willing to entertain a renewed intervention motion that included the "separate pleading" in intervention required by Rule 24, F.R.Civ.P. (Dkt. 5626 at 3).

## C. The Genesis Of The Current Appeal

The NRS/ORS Plaintiffs did as the District Court ordered, and filed a renewed motion to intervene with proposed separate complaints in intervention as required by Rule 24. (Dkt. 5645). Latching onto the directive that they file a "separate pleading," Defendants raised a new argument that the district court lacked jurisdiction to "permit the filing of a 'separate' complaint in this MDL proceeding on behalf of someone who has never filed a lawsuit asserting those claims." (Dkt. 5663 at 27; 5662). Perhaps recognizing that among the 22 state IPP plaintiffs, there are a number of plaintiffs who had never filed a separate lawsuit asserting their respective state law damage claims, IPP lead counsel did not oppose the renewed motion for intervention.

The NRS/ORS Plaintiffs responded that they had always been putative (and later certified) members of a nationwide class of indirect purchasers that had been alleged in each of the complaints in each of the coordinated actions since at least the filing of the First Consolidated Amended Complaint, and that this class has always alleged federal equitable antitrust claims and IPP repealer state damage claims. Therefore, they asserted that they are "not seeking to start new litigation," but rather are simply "seeking to intervene to become a party in existing litigation

in which [they have] been a putative, and later, certified class member[s] for a decade." (Dkt. 5668 at 3).

The District Court, citing two district court orders as authority,[1] denied the renewed motion to intervene for lack of jurisdiction. (Dkt. 5684). The Court held that the NRS/ORS Plaintiffs were barred by 28 U.S.C. Section 1407, from intervening and filing the intervention pleading required by Rule 24 in any action that had been coordinated into an MDL proceeding. (*Id.*) According to the District Court, the only route for a class member to become a plaintiff is to file a new class action in an appropriate forum and obtain transfer (or consolidation) into the MDL pursuant to 28 U.S.C. Section 1407. *Id.* The NRS/ORS Plaintiffs asked the District Court to withdraw this ruling under Rule 59(e), F.R.Civ.P. (Dkt. 5695). When that motion was denied, they instituted these appeals.

### D. The Effects Of The IPPs' Proposed Settlements On The NRS/ORS Plaintiffs' Interests And Attempts To Secure A Stay At The Trial Court Level

While the NRS/ORS Plaintiffs were trying to intervene and represent their subclasses, the 22 state IPP subclass entered into *new* proposed settlements with the

---

[1] *In re Mortgage Elec. Registration Sys. (MERS) Litig.*, No. MD-09-02119-PHX-JAT, 2016 WL 3931820 (D. Ariz. July 21, 2016), and *In re Farmers Ins. Exch. Claims Representatives' Overtime Pay Litig.*, MDL No. 33-1439, 2008 WL 4763029 (D. Or. Oct. 28, 2008).

Defendants. They styled these as "amended" settlements, and sought district court approval by filing a "Motion Pursuant to Ninth Circuit Mandate to Reconsider and Amend Final Approval Order, Judgment and Fee Order." (Dkt. 5587). In their newly-proposed settlements, the IPPs and Defendants limited the release to the 22 states that were to receive compensation in the original settlement agreements (*i.e.*, removed the NRS and ORS states from the settlements), reduced the monetary compensation provided by the Defendants, and proposed to reduce class counsel's aggregate fee award commensurately. (*Id;* Dkt. 5585, 5589). However, the new settlements also provided for the filing of another amended consolidated complaint to drop the allegations of a nationwide class and the claims for relief previously asserted on its behalf. (*Id.*) No new notice to the class was proposed, even though the original notice had been appealed as seriously flawed.

The NRS/ORS Plaintiffs opposed the motion, noting that the 22 state IPP subclass was actually seeking preliminary approval of new settlements. (Dkt. 5607). They also raised various objections, not the least of which was that allowing the settlements to proceed before the NRS and ORS subclasses had plaintiffs and class representatives in place to prosecute the about-to-be abandoned claims would unduly and unfairly prejudice them. (*Id.*)

-7-

The District Court construed the 22 state IPPs' motion as triggering preliminary approval, and entered an order preliminarily approving the new settlements, yet eliminated the requirement of filing a new Motion for Final Approval (Dkt. 5695). However, it did not consider the NRS/ORS Plaintiffs' substantive objections, which it struck on the grounds that "the persons and entities in [the NRS and ORS] subclasses are not members of the amended settlement Class and have no standing to object to IPP Plaintiffs' motion for preliminary approval of the amended settlements." (*Id.* at 7). The District Court set a final approval hearing for July 8, 2020. Subsequently, the NRS/ORS Plaintiffs filed timely objections to final approval of the settlements, and moved to intervene for the limited purpose of presenting their objections and appealing from final approval of the settlements. However, on July 6, 2020, the district court denied their motion to intervene for the purpose of appeal as premature. (Dkt. 5780).

The NRS/ORS Plaintiffs also moved the District Court to stay the settlement proceedings below pending this appeal. (Dkt. 5718). They argued that final approval of the new settlements, which would permit an amendment dropping all but the 22 settling states from the litigation, could, among other problems, leave the NRS/ORS Plaintiffs (as well as the subclasses' members) without a case in which to intervene when and if this Court were to rule that they

-8-

are entitled to intervene as of right. (*Id.*). IPP lead counsel and the Defendants opposed. (Dkts. 5726 and 5727). The District Court denied the motion on June 25, 2020, concluding that the NRS/ORS Plaintiffs would not suffer irreparable harm in the absence of a stay because judgment approving the settlements would not end the MDL proceedings. (Kirkham Decl., Ex. 3, Dkt. 5774 at 6).

Having exhausted all options to protect the NRS and ORS subclass members' rights in the court below, the NRS/ORS Plaintiffs now seek a stay from this Court. *See* Fed. R. App. P. 8(a)(2). Contrary to the District Court's conclusion, without a stay the NRS and ORS Subclasses may be forever denied the opportunity to litigate their claims against the Defendants. This very real danger justifies staying the proceedings on the proposed settlements pending this appeal.

## III. LEGAL STANDARD

A court considers four factors when determining whether to issue a stay: (1) whether the stay applicant has made a strong showing that the applicant is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies. *Nken v. Holder*, 556 U.S. 418, 434 (2009). "The first two factors of the traditional standard are the most critical." *Id.* In applying these factors, the Ninth Circuit employs a "sliding scale" approach whereby "the elements of the ... test are balanced, so that a

stronger showing of one element may offset a weaker showing of another." *Leiva-Perez v. Holder*, 640 F.3d 962, 964 (9th Cir. 2011) (quoting *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011)).

## IV. A STAY IS NECESSARY

### A.  Likelihood of Success on the Merits

To demonstrate a likelihood of success on appeal, the party seeking a stay is not required to "show[ ] that success is more likely than not." *Leiva-Perez*, 640 F.3d at 967–68.  Instead, "a petitioner must show, at a minimum, that she has a substantial case for relief on the merits." *Id.*  This standard can be satisfied by a showing that the movant's "appeal raises 'serious legal questions' even if the moving party has only a minimum chance of prevailing on these questions," as long as the potential harm that could befall the movant absent a stay is serious. *O'Connor v. Uber Techs., Inc.*, 13-CV-03826-EMC, 2015 WL 9303979, at *1 (N.D. Cal. Dec. 22, 2015).

While this Court has not "exhaustively explained or defined what makes a question 'serious,'" several courts in this district have "shed light on the issue." *Mohamed v. Uber Techs., et al*, 115 F. Supp. 3d 1024, 1028 (N.D. Cal. 2015). The collective consensus is that a party can show that she has a substantial case for relief if her case "raises genuine matters of first impression within the Ninth

-10-

Circuit" or which may "otherwise address a pressing legal issue which urges that the Ninth Circuit hear the case." *Morse v. Servicemaster Glob. Holdings, Inc.*, C 08-03894, 2013 WL 123610, at *3 (N.D. Cal. Jan. 8, 2013); *see also Arabian Gas & Oil Dev. Co. v. Wisdom Marines Lines, S.A.*, 16-CV-03801-DMR, 2017 WL 2378060, at *3 (N.D. Cal. June 1, 2017) (same).

This appeal concerns uncharted areas of MDL law—namely whether a class member can intervene to become a named plaintiff in an action coordinated under 28 U.S.C. §1407, and amend pleadings already filed within an MDL, and, if not, then how and where such pleadings can be filed. While this Court has clearly stated that an MDL judge "inherits the entire pretrial jurisdiction that the transferor district judge[s] would have exercised if the [MDL] transfer had not occurred," (*In re Korean Air Lines Co., Ltd.*, 642 F.3d 685, 699 (9th Cir. 2011)) and lower courts have concluded that this includes the power to allow amendment of the transferred actions, the specific question raised in this appeal—whether there is a jurisdictional impediment on replacement class representatives intervening directly into one or more MDL actions—has not been addressed by this Court. Indeed, the novelty of the issue is illustrated quite clearly by the District Court's reliance entirely on two obscure district court decisions in justifying its denial of intervention. *See* Dkt. 5684 (citing *In re Mortgage Elec. Registration Sys. (MERS) Litig.*,

-11-

2016 WL 3931820 (D. Ariz. July 21, 2016), and *In re Farmers Ins. Exch. Claims Representatives' Overtime Pay Litig.*, 2008 WL 4763029 (D. Or. Oct. 28, 2008)).

A district court's novel determination of jurisdictional limits in an MDL proceeding is precisely the type of important issue that justifies a stay. This is especially true when, as here, there is directly contrary district court precedent. *See, e.g.*, *In re Takata Airbag Products Liab. Litig.*, 379 F. Supp. 3d 1333, 1338 (S.D. Fla. 2019) ("The Court notes that direct filing complaints in MDL proceedings is not uncommon, nor is it *per se* impermissible under the MDL statute, the JPML Rules of Procedure, or interpretive case law."); *In re Yasmin & Yaz (Drospirenone) Mktg., Sales Practices & Products Liab. Litig.*, 3:09-MD-02100-DRH, 2011 WL 1375011, at *5 (S.D. Ill. Apr. 12, 2011) (explaining that "direct filing orders are beneficial to both parties because they streamline the litigation and help to eliminate the judicial inefficiency involved in the MDL transfer process").

## B. Irreparable Harm is Highly Likely Without a Stay

To obtain a stay, a movant "must demonstrate that irreparable harm is probable if the stay is not granted." *Leiva-Perez*, 640 F.3d at 968. The analysis focuses on whether "irreparable injury is likely to occur during the period before the appeal is likely to be decided." *Al Otro Lado v. Wolf*, 952 F.3d 999, 1007 (9th Cir. 2020).

-12-

The harm at issue is clear: amending the nationwide class out of the operative complaints during the pendency of these appeals could potentially not only moot these appeals, but could prevent court-appointed subclass lead counsel from *ever* advancing the claims currently alleged on behalf of the NRS and ORS Subclasses regardless of how this Court might rule. (Dkt. 5718 at 8-9). Such harm could not be more serious or more irreparable.

To understand why a stay of IPPs' ongoing settlement proceedings is needed, a little background on the "relation back doctrine" as it relates to the situation is necessary. Since remand, the Defendants have made clear that they will seek dismissal of the NRS and ORS subclass claims on the basis that any attempts to press them now are untimely. (Dkt. 5592 at 12-15, 17-18). The NRS/ORS Plaintiffs have responded that even if their complaints in intervention are deemed to raise new claims, the relation back doctrine dooms that argument because an "amendment adding a party plaintiff relates back to the date of the original pleading" if certain conditions, which are clearly applicable to putative and certified class members, are present. (Dkt. 5645 at 17) (quoting *Immigrant Assistance Project v. I.N.S.*, 306 F.3d 842, 857 (9th Cir. 2002)). But the relation back doctrine (at least as the Defendants have argued) applies only to "amendments" of complaint within an already-pending action—not to *new* complaints commencing a

-13-

different action.  (Dkt. 5663).  So if the NRS/ORS Plaintiffs are required to "file

their claims in the appropriate forum(s) and seek transfer [into this MDL] from the

JMPL" as the District Court has held (Dkt. 5684 at 6), they could potentially (at

least under the Defendants' interpretation) be barred from employing the relation

back doctrine even though they have been class members in every one of the MDL

indirect purchaser class actions since their inception.[2]

 A finding by this Court that the NRS/ORS Plaintiffs are entitled to

intervene into one or more of the underlying MDL actions upon remand would

eliminate any danger that the relation back doctrine would not protect the NRS

and ORS Subclasses' claims.  Even if this Court were to instruct the NRS/ORS

Plaintiffs to file a new action, precedent would provide substantial protections as a

tag along case.  But each of those outcomes is contingent on there still being an

active action in the District Court in which the NRS/ORS Plaintiffs and class

members are included at the time this appeal is decided.   If the proposed

amendment cutting them out of the litigation is effectuated by reducing the

---

[2]  It should be noted that the Defendants' position is substantially undercut by this Court's ruling that "tag along" actions filed by members of a putative class are entitled to the benefits of class action tolling.  *Phillips v. E. I. Dupont de Nemours & Co. (In re Hanford Nuclear Reservation Litig.),* 521 F.3d 1028, 1038-39 (9th Cir. 2008). However, this does not conclusively establish the rights of other members of the NRS and ORS subclasses, and also leads back to the need for a stay pending this appeal of the District Court's order denying intervention.

-14-

proposed settlements to final judgments, that constitutes a fundamental alteration of the litigation landscape—a threat that justifies a stay pending these appeals. The District Court has already granted preliminary approval of IPPs' proposal to eliminate the NRS and ORS class members from all of the pending cases; struck the NRS/ORS Plaintiffs' objections for lack of standing; and refused to allow them to intervene for the limited purpose of advancing those objections. Further, at the July 8, 2020 fairness hearing, the District Court orally gave a tentative ruling that it intends to grant final approval to the proposed settlements. (Kirkham Declaration at Paragraph 5.)

In light of those ongoing settlement proceedings, it is unclear whether the cases alleging the still-certified *nationwide* class of indirect purchasers (which includes the NRS, ORS, and IPP members) will remain pending by the time the instant appeals are resolved. Without a case to intervene into, it is highly likely that the IPPs and Defendants would move to dismiss these appeals, and it is possible under those circumstances, for this Court to determine that they are moot.

This danger is not hypothetical. Indeed, this Court has dismissed appeals as moot on similar grounds. *See W. Coast Seafood Processors Ass'n v. Nat. Res. Def. Council, Inc.*, 643 F.3d 701, 704 (9th Cir. 2011) (dismissing an appeal as moot where the appellant appealed an order denying a motion to intervene and, during the appeal,

the underlying case "ran its course," explaining that "[a]n appeal is moot if there exists no present controversy as to which effective relief can be granted.") (internal citation omitted); *United States v. Ford*, 650 F.2d 1141, 1143 (9th Cir. 1981) (dismissing as moot an appeal of a denial of a motion to intervene where the underlying litigation was voluntarily dismissed, and explaining that "[s]ince there is no longer any action in which appellants can intervene, judicial consideration of the [intervention] question would be fruitless").

While there is conflicting precedent on mootness where the appellant can still obtain relief in the trial court,[3] such precedent—even if it creates a lack of certainty regarding mootness—does not undermine this motion for a stay. After all, the governing standard hardly requires *certainty* that irreparable harm will result without a stay. *Al Otro Lado*, 952 F.3d at 1007; *Leiva-Perez*, 640 F.3d at 968.

The District Court brushed aside the NRS/ORS Plaintiffs' irreparable harm argument because "the amended settlements will not terminate the MDL." (Dkt.

---

[3] *See DBSI/TRI IV Ltd. P'ship v. United States*, 465 F.3d 1031, 1037 (9th Cir. 2006) ("Although the district court entered final judgment in the underlying case during the pendency of the appeal, the intervention controversy is still alive because, if it were concluded on appeal that the district court had erred in denying the intervention motion, and that the applicant was indeed entitled to intervene in the litigation, then the applicant would have standing to appeal the district court's judgment.") (internal citation omitted); *United States v. City of Los Angeles, Cal.*, 288 F.3d 391, 404–05 (9th Cir. 2002) ("Any intervention order issued on remand shall allow the affected parties to intervene as of the date of the intervention order and to be treated as intervener parties from that date forward.").

5774 at 6).  But the continued existence of the MDL for purposes of administering the settlements is not an adequate remedy for the above-stated concerns.  As explained above, to use the relation back doctrine and class action tolling, the NRS/ORS Plaintiffs must bring their class action claims either by amendment or tag along action while they are class members in an ongoing action.  Further, logically, there's another side of the coin to consider: if the Defendants have already been dismissed with prejudice from the underlying litigation, then even if this Court rules that the NRS/ORS Plaintiffs satisfy the criteria to intervene as of right, and file a complaint in intervention as an amendment—naming the Defendants as parties after they have been dismissed with prejudice may amount to the initiation of a new case against the Defendants, to which the relation back doctrine may no longer apply.

Final approval of the pending settlements would not only summarily jettison the NRS and ORS Subclass members from the litigation, it would result in a final judgment that would terminate the indirect purchaser MDL class litigation *as to the Defendants*.  For purposes of the relation back doctrine, it does not matter if claims against other peripheral defendants or other settlement administration proceedings remain active in the MDL cases.  If all pending indirect purchaser class claims *against the Defendants* who are currently the target of the nationwide class action

-17-

allegations and equitable relief claims are dismissed with prejudice, regardless of their success on these appeals, the NRS/ORS Plaintiffs' ability to assert their subclasses' claims through subsequent intervention amendment or tag along actions will be substantially compromised, at minimum, to the extent of having to navigate a morass of unique and complex issues that could potentially take years to litigate.

Currently, these appeals present the relatively straight-forward issue of how class members in MDL cases become plaintiffs and class representatives when the current representatives have conflicts and voluntarily abandon their duties to protect subclass claims. Allowing a final judgment to be entered on the 22 state IPP settlements amending appellants out of the litigation while this appeal is pending would unnecessarily complicate the issues, and ensure that moving forward to implement whatever decision this Court reaches will be no simple matter.

### C. The Members of the 22 State Subclasses Will Not be Harmed by a Stay, and Public Interest Factors Do Not Weigh Against a Stay

A stay will not harm the IPPs. A stay will simply put the IPPs' proposed settlement approval process temporarily into abeyance, without compromising any of their substantive positions on its merits. Moreover, if this Court concludes that the District Court is correct and once cases have been coordinated into an MDL

proceeding, it lacks subject matter jurisdiction over parties and claims added by any means other than the filing of a new action, then logically, the District Court is without jurisdiction to approve the settlement of the substantial number of parties and claims that were added to the MDL through the IPP Lead Counsel's filing of amended consolidated complaints. A stay until this Court can make that determination would prevent unnecessary judicial labor adjudicating the settlement of claims which may not be properly before the District Court.

The District Court held that it could not exercise jurisdiction over the NRS/ORS Plaintiffs' claims because it could not exercise jurisdiction over the would-be intervenors themselves. In support, the District Court cited *In re Mortgage Elec. Registration Sys. (MERS) Litig.*, 2016 WL 3931820, at *10, for the proposition that where counsel seeks to add a new plaintiff to MDL litigation, the proper course is "to file their claims in the appropriate forums and to permit the MDL consolidation process to operate as intended." According to the District Court's order, unless a would-be plaintiff first filed a case that was then transferred (or if filed in the transferee district, consolidated) into the MDL, the court lacks jurisdiction over that plaintiff.

Yet many of the state-law class claims filed by the 22 state IPPs—now the subject of the preliminarily approved settlements—rest on pleadings that include

plaintiffs and claims added directly by amendment into actions already in the MDL without first filing in their respective resident states.  (*See* Dkts. 5585, 5589).  If the District Court is correct that it was without subject matter jurisdiction over such plaintiffs and claims, then the District Court is without jurisdiction to approve the IPPs' proposed settlements.  In light of that potential lack of jurisdiction, all parties and the judicial system will actually benefit from a stay until this Court can resolve the issue presented by these appeals.

## CONCLUSION

The Court should grant this motion for a stay of the settlement approval proceedings below pending the resolution of the NRS/ORS Plaintiffs' pending appeals.

Dated:  July 9, 2020                              Respectfully submitted,

                                                                  */s/ Tracy R. Kirkham*            _
                                                                  Tracy R. Kirkham

                                                                  Tracy R. Kirkham (69912)
                                                                  John D. Bogdanov (215830)
                                                                  Cooper & Kirkham, P.C.
                                                                  357 Tehama Street, Second Floor
                                                                  San Francisco, CA  94103
                                                                  Telephone:  (415) 788-3030
                                                                  Facsimile:   (415) 882-7040
                                                                  trk@coopkirk.com
                                                                  jdb@coopkirk.com

                                                                  *Interim Lead Counsel for the Non-Repealer State Subclass*

-20-

_/s/ Theresa D. Moore_
    Theresa D. Moore

Theresa D. Moore (99978)
Law Offices Of Theresa D. Moore
One Sansome Street, 35th Floor
San Francisco, CA 94104
Telephone: (415) 613-1414
tmoore@aliotolaw.com

_Interim Co-Lead Counsel_
_for the ORS_

Christopher A. Nedeau (81297)
Nedeau Law Firm
154 Baker Street
San Francisco, CA 94117
Telephone: (415) 516-4010
cnedeau@nedeaulaw.net

_Counsel for the ORS_

  _/s/ Francis O. Scarpulla_
    Francis O. Scarpulla

Francis O. Scarpulla (41059)
Patrick B. Clayton (240191)
Law Offices of Francis O. Scarpulla
456 Montgomery Street, 17th Floor
San Francisco, CA 94104
Telephone: 415-788-7210
fos@scarpullalaw.com
pbc@scarpullalaw.com

_Interim Co-Lead Counsel_
_for the ORS_

John G. Crabtree
Brian Tackenberg
Crabtree & Auslander
240 Crandon Boulevard, Suite 101
Key Biscayne, FL 33149
Telephone: (305) 361-3770
jcrabtree@crabtreelaw.com
btackenberg@crabtreelaw.com

_Counsel for the ORS_

Brian M. Torres
Brian M. Torres, P.A.
One S.E. Third Avenue, Suite 3000
Miami, FL 33131
Telephone: (305) 901-5858
btorres@briantorres.legal

_Counsel for the ORS_

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on July 9, 2020.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

*/s/ Tracy R. Kirkham*

-22-

Nos. 20-15697 and 20-15704

---

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

---

In Re: Cathode Ray Tube (CRT) Antitrust Litigation,

*Indirect Purchaser Plaintiffs, et al. v. Toshiba Corporation, et al.*

On Appeal from the United States District Court
For the Northern District of California, Oakland Division
The Honorable Jon S. Tigar
Case No. 4:07-cv-05944-JST

---

**DECLARATION OF TRACY R. KIRKHAM IN SUPPORT OF
APPELLANTS' JOINT MOTION TO STAY PENDING APPEAL;
EMERGENCY MOTION UNDER CIRCUIT RULE 27-3, RELIEF
REQUESTED BY JULY 17, 2020**

---

Tracy R. Kirkham (69912)
John D. Bogdanov (215830)
Cooper & Kirkham, P.C.
357 Tehama Street, Second Floor
San Francisco, CA 94103
Telephone: (415) 788-3030
Facsimile: (415) 882-7040
trk@coopkirk.com
jdb@coopkirk.com

*Interim Lead Counsel for the Non-Repealer State Subclass*

[Additional Counsel on Following Page]

Francis O. Scarpulla (41059)
Patrick B. Clayton (240191)
Law Offices of Francis O. Scarpulla
456 Montgomery Street, 17th Floor
San Francisco, CA  94104
Telephone:  (415) 788-7210
Facsimile:   (415) 788-0706
fos@scarpullalaw.com
pbc@scarpullalaw.com

Theresa D. Moore (99978)
Law Offices of Theresa D. Moore
One Sansome Street, 35th Floor
San Francisco, CA 94104
Telephone: (415) 613-1414
tmoore@aliotolaw.com

*Interim Co-Lead Counsel for the ORS*

I, Tracy R. Kirkham, declare as follows:

1.      I am an attorney licensed to practice before the courts of the State of California, and before the U.S. Ninth Circuit Court of Appeals.  I am a partner in Cooper & Kirkham, P.C., which is counsel for appellant Eleanor Lewis and interim lead counsel for the Non-Repealer State Subclass.  I have personal knowledge of the facts stated in this Declaration and, if called as a witness, I could and would testify competently to them.  I make this Declaration in support of Appellants' Joint Motion to Stay Pending Appeal; Emergency Motion Under Circuit Rule 27-3, Relief Requested by July 17, 2020.

2.      Attached hereto as Exhibit A is a true and correct copy of the district court's Order Denying Indirect Purchaser Plaintiffs' Motion Pursuant to Federal Rule of Civil Procedure 62.1 for an Indicative Ruling on Their Motion to Amend the IPP Fee Order and Amend the Plan of Distribution, dated November 8, 2018, Dkt. No. 5362.

3.      Attached hereto as Exhibit B is a true and correct copy of the Ninth Circuit's Order dated February 13, 2019, Dkt. 242 in Case No. 16-16378.

4.      Attached hereto as Exhibit C is a true and correct copy of the Order Denying Motion to Stay filed in the district court on June 25, 2020, Dkt. No. 5774.

5.      On July 8, 2020, the district court held a fairness hearing, at which it orally

-1-

gave a tentative ruling that it intends to grant final approval of the proposed settlements.

6.      On July 9, 2020, concurrent with this Motion, this Court's Form 16, Circuit Rule 27-3 Certificate for Emergency Motion was filed.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 9th day of July 2020 at San Francisco, California.

*/s/ Tracy R. Kirkham*
Tracy R. Kirkham

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | MDL No. 1917 |
| | Case No. 07-cv-5944-JST |
| | **ORDER DENYING INDIRECT PURCHASER PLAINTIFFS' MOTION PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 62.1 FOR AN INDICATIVE RULING ON THEIR MOTION TO AMEND THE IPP FEE ORDER AND AMEND THE PLAN OF DISTRIBUTION** |
| This Order Relates To: | |
| ALL INDIRECT PURCHASER ACTIONS | |
| | Re: ECF No. 5335 |

Now before the Court is the Indirect Purchaser Plaintiffs' motion pursuant to Federal Rule of Civil Procedure 62.1 for an indicative ruling on their motion to amend the IPP fee order and amend the plan of distribution. ECF No. 5335. The Court will deny the motion for the following reasons.

First, with the benefit of hindsight, the Court now concludes that it erred in approving the parties' original settlement. Most fundamentally, the Court erred in approving the provision that required class members in Massachusetts, Missouri, and New Hampshire (the "Omitted Repealer States") to release their claims without compensation. The fact that the claims were required to be released meant they had value.

Second, having now concluded that it erred in approving a settlement that provided no recovery to class members in the Omitted Repealer States, the Court has concerns about the adequacy of the counsel who negotiated that settlement or whether they may have faced a conflict of interest. Lead Counsel had an obligation to vigorously represent class members in the Omitted Repealer States. They told the Court when they presented the settlement, and they say now, that a

Case 3:07-cv-05944-JST Document 5362-1 Filed 04/05/22 Page 38 of 59
(34 of 59)
Case 3:07-cv-05944-JST Document 5362 Filed 11/30/18 Page 2 of 9

no-recovery settlement was fair to those class members because their claims were worthless. On this ground they argue there is no conflict. That argument does not explain, however, how negotiating a *release* of those class members' claims can be squared with the duty of zealous advocacy to all members of the class.

At argument before the Ninth Circuit, counsel for the IPPs suggested that they needed to include a release of some class members' claims to get compensation for other class members. ECF No. 5335-1 at 16 ("Then they go to negotiate, defendant's [sic] [want] global peace, they want, even though the claims of those people in those three states are worthless, they still want a sign off that they won't get any nuisance suits."). While the Court acknowledges Lead Counsel's efforts to obtain a favorable result for the majority of the class, pitting one set of clients' claims against those of another is a classic indication of a potential conflict of interest. Even now, Lead Counsel appears to be bargaining with the Court to reduce the perceived value of the claims of class members in the Omitted Repealer States.[1] And regardless of whether the issue is framed as one of conflict of interest or adequacy of counsel, it requires further exploration and potentially the appointment of separate counsel.[2] It may also suggest an adjustment to the fees awarded to Lead Counsel. These issues cannot be decided on the motion as currently framed.

Third, it is not clear that the IPPs' proposed amendments to the fee order and plan of distribution would cure all the problems with the current settlement. In fact, the Court is not convinced that all the potential problems with the proposed amended settlement have even been identified. The affected, proposed-to-be-newly-included class members in the Omitted Repealer States have not received notice, and they might identify additional problems with the settlement no party has yet discussed. Moreover, there appear to be other issues on appeal besides the lack of compensation to class members in the Omitted Repealer States. Lead Counsel acknowledge this when they contend that the proposed relief "will obviate [only] the *primary* issue on appeal." ECF

---

[1] ECF No. 5356 at 8 ("Moreover, the situation for Class Members in the Three States is potentially even more dire, given that this Court has held that the statutes of limitations have run on their claims. On remand, a likely scenario would be that their claims would be dismissed with prejudice and Class Members in the Three States would receive nothing.")

[2] The Court emphasizes that it reaches no conclusion now about this issue.

(35 of 59)

Case 4:07-cv-05944-JST Document 6087-25, Filed 04/05/22, Page 39 of 59
Case 3:07-cv-05944-JST Document 5362, Filed 11/08/18, Page 3 of 3

1  No. 5356 at 9 (emphasis added). If there are other issues to be decided on appeal, this Court would

2  rather have them decided before considering an amended settlement or plan of distribution.

3      Fourth, if class members in the Omitted Repealer States ultimately do receive a recovery

4  from the IPP settlement, it will have resulted from the efforts of one or more objectors. Those

5  objectors will then be entitled to apply for an award of attorneys' fees. *Rodriguez v. Disner*, 688

6  F.3d 645, 658 (9th Cir. 2012) (Attorneys for objectors who increase the fund or otherwise

7  substantially benefit class members "may be entitled to attorneys' fees from the fund created by

8  class action litigation.") Lead Counsel's proposal to reduce their own attorneys' fees to enhance the

9  settlement fund makes no provision for how such an award would be funded.

10      For these reasons, the IPPs' motion is denied.

11      **IT IS SO ORDERED.**

12  Dated: November 8, 2018



            _____
                    JON S. TIGAR
              United States District Judge

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California

3

# EXHIBIT B

**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

FEB 13 2019

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| In re: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION, | No.   16-16368 |
| | D.C. No. 3:07-cv-05944-JST |
| ------------------------------- | |
| INDIRECT PURCHASER PLAINTIFFS, | ORDER* |
|     Plaintiff-Appellee, | |
|  v. | |
| JOHN FINN; LAURA TOWNSEND FORTMAN, | |
|     Objectors-Appellants, | |
|  v. | |
| TOSHIBA CORPORATION; TOSHIBA AMERICA, INC.; TOSHIBA AMERICA INFORMATION SYSTEMS, INC.; TOSHIBA AMERICA CONSUMER PRODUCTS, LLC; TOSHIBA AMERICA ELECTRONIC COMPONENTS, INC.; SAMSUNG SDI CO., LTD.; SAMSUNG SDI AMERICA, INC.; SAMSUNG SDI (MALAYSIA) SDN BHD; SAMSUNG SDI MEXICO S.A. DE C.V.; SAMSUNG SDI BRASIL LTDA.; SHENZEN SAMSUNG SDI CO., LTD.; TIANJIN SAMSUNG SDI | |

---

\*      This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

(38 of 59)

Case: 4:07-cv-05944-JST Document 6007-5 Filed 01/03/22 Page 42 of 135
Case: 16-16874, 03/13/2019 Document 1138670, DktEntry 226, Page 2 of 135

CO., LTD.; HITACHI, LTD.; HITACHI
DISPLAYS, LTD., AKA Japan Display,
Inc.; HITACHI AMERICA, LTD;
HITACHI ASIA, LTD.; HITACHI
ELECTRONIC DEVICES (USA), INC.;
PANASONIC CORPORATION, FKA
Matsushita Electric Industrial Co., Ltd.
("MEI"), is a Japanese entity; PANASONIC
CORPORATION OF NORTH AMERICA;
MT PICTURE DISPLAY CO., LTD;
PHILIPS KONINKLIJKE N.V.; PHILIPS
ELECTRONICS NORTH AMERICA
CORPORATION; PHILIPS TAIWAN
LIMITED; PHILIPS DO BRASIL LTDA.;
THOMSON CONSUMER ELECTRONICS,
INC.; THOMSON SA,

          Defendants-Appellees.

---

In re:  CATHODE RAY TUBE (CRT)
ANTITRUST LITIGATION,

-------------------------------

 INDIRECT PURCHASER PLAINTIFFS,

         Plaintiff-Appellee,

  v.

SEAN HULL; GORDON B. MORGAN,

        Objectors-Appellants,

  v.

TOSHIBA CORPORATION; TOSHIBA
AMERICA, INC.; TOSHIBA AMERICA

No.    16-16371

D.C. No. 3:07-cv-05944-JST

2

(39 of 59)

Case: 4:07-cv-05944-JST Document 6007-5 Filed 04/08/22 Page 43 of 135
Case: 16-16373, 03/13/2019, ID: 11030470, DktEntry: 246, Page 3 of 135

INFORMATION SYSTEMS, INC.;
TOSHIBA AMERICA CONSUMER
PRODUCTS, LLC; TOSHIBA AMERICA
ELECTRONIC COMPONENTS, INC.;
SAMSUNG SDI CO., LTD.; SAMSUNG
SDI AMERICA, INC.; SAMSUNG SDI
(MALAYSIA) SDN BHD; SAMSUNG SDI
MEXICO S.A. DE C.V.; SAMSUNG SDI
BRASIL LTDA.; SHENZEN SAMSUNG
SDI CO., LTD.; TIANJIN SAMSUNG SDI
CO., LTD.; HITACHI, LTD.; HITACHI
DISPLAYS, LTD., AKA Japan Display,
Inc.; HITACHI AMERICA, LTD;
HITACHI ASIA, LTD.; HITACHI
ELECTRONIC DEVICES (USA), INC.;
PANASONIC CORPORATION, FKA
Matsushita Electric Industrial Co., Ltd.
("MEI"), is a Japanese entity; PANASONIC
CORPORATION OF NORTH AMERICA;
MT PICTURE DISPLAY CO., LTD;
PHILIPS KONINKLIJKE N.V.; PHILIPS
ELECTRONICS NORTH AMERICA
CORPORATION; PHILIPS TAIWAN
LIMITED; PHILIPS DO BRASIL LTDA.;
THOMSON CONSUMER ELECTRONICS,
INC.; THOMSON SA,

                Defendants-Appellees.

---

In re: CATHODE RAY TUBE (CRT)
ANTITRUST LITIGATION,

-------------------------------

  INDIRECT PURCHASER PLAINTIFFS,

             Plaintiff-Appellee,

No.    16-16373

D.C. No. 3:07-cv-05944-JST

3

v.


ANTHONY GIANASCA; GLORIA
COMEAUX; MINA ASHKANNEJHAD,
individually and as Administrator of the
Estate of the late R. Deryl Edwards, Jr.;
JEFFREY SPEAECT; ROSEMARY
CICCONE; JEFF CRAIG,

                Objectors-Appellants,


v.


TOSHIBA CORPORATION; TOSHIBA
AMERICA, INC.; TOSHIBA AMERICA
INFORMATION SYSTEMS, INC.;
TOSHIBA AMERICA CONSUMER
PRODUCTS, LLC; TOSHIBA AMERICA
ELECTRONIC COMPONENTS, INC.;
SAMSUNG SDI CO., LTD.; SAMSUNG
SDI AMERICA, INC.; SAMSUNG SDI
(MALAYSIA) SDN BHD; SAMSUNG SDI
MEXICO S.A. DE C.V.; SAMSUNG SDI
BRASIL LTDA.; SHENZEN SAMSUNG
SDI CO., LTD.; TIANJIN SAMSUNG SDI
CO., LTD.; HITACHI, LTD.; HITACHI
DISPLAYS, LTD., AKA Japan Display,
Inc.; HITACHI AMERICA, LTD;
HITACHI ASIA, LTD.; HITACHI
ELECTRONIC DEVICES (USA), INC.;
PANASONIC CORPORATION, FKA
Matsushita Electric Industrial Co., Ltd.
("MEI"), is a Japanese entity; PANASONIC
CORPORATION OF NORTH AMERICA;
MT PICTURE DISPLAY CO., LTD;
PHILIPS KONINKLIJKE N.V.; PHILIPS
ELECTRONICS NORTH AMERICA
CORPORATION; PHILIPS TAIWAN

4

(41 of 59)

Case: 4:07-cv-05944-JST Document 6007-25 Filed 04/08/22 Page 45 of 135
Case: 16-16374, 03/13/2018, Document 11558070, DktEntry: 24, Page 45 of 135

LIMITED; PHILIPS DO BRASIL LTDA.;
THOMSON CONSUMER ELECTRONICS,
INC.; THOMSON SA,

        Defendants-Appellees.

---

In re:  CATHODE RAY TUBE (CRT)
ANTITRUST LITIGATION,

------------------------------

 INDIRECT PURCHASER PLAINTIFFS,

        Plaintiff-Appellee,

 v.

DONNIE CLIFTON,

        Objector-Appellant,

 v.

TOSHIBA CORPORATION; TOSHIBA
AMERICA, INC.; TOSHIBA AMERICA
INFORMATION SYSTEMS, INC.;
TOSHIBA AMERICA CONSUMER
PRODUCTS, LLC; TOSHIBA AMERICA
ELECTRONIC COMPONENTS, INC.;
SAMSUNG SDI CO., LTD.; SAMSUNG
SDI AMERICA, INC.; SAMSUNG SDI
(MALAYSIA) SDN BHD; SAMSUNG SDI
MEXICO S.A. DE C.V.; SAMSUNG SDI
BRASIL LTDA.; SHENZEN SAMSUNG
SDI CO., LTD.; TIANJIN SAMSUNG SDI
CO., LTD.; HITACHI, LTD.; HITACHI
DISPLAYS, LTD., AKA Japan Display,
Inc.; HITACHI AMERICA, LTD;

No.   16-16374

D.C. No. 3:07-cv-05944-JST

Case: 4:07-cv-05944-JST Document 6007-25 Filed 01/03/22 Page 46 of 135
Case: 16-16378, 03/13/2019, ID: 11386470, DktEntry: 245, Page 66 of 125

(42 of 59)

HITACHI ASIA, LTD.; HITACHI
ELECTRONIC DEVICES (USA), INC.;
PANASONIC CORPORATION, FKA
Matsushita Electric Industrial Co., Ltd.
("MEI"), is a Japanese entity; PANASONIC
CORPORATION OF NORTH AMERICA;
MT PICTURE DISPLAY CO., LTD;
PHILIPS KONINKLIJKE N.V.; PHILIPS
ELECTRONICS NORTH AMERICA
CORPORATION; PHILIPS TAIWAN
LIMITED; PHILIPS DO BRASIL LTDA.;
THOMSON CONSUMER ELECTRONICS,
INC.; THOMSON SA,

                 Defendants-Appellees.

---

In re: CATHODE RAY TUBE (CRT)
ANTITRUST LITIGATION,

------------------------------

 INDIRECT PURCHASER PLAINTIFFS,

             Plaintiff-Appellee,

 v.

DAN L. WILLIAMS & CO.,

             Objector-Appellant,

 v.

TOSHIBA CORPORATION; TOSHIBA
AMERICA, INC.; TOSHIBA AMERICA
INFORMATION SYSTEMS, INC.;
TOSHIBA AMERICA CONSUMER
PRODUCTS, LLC; TOSHIBA AMERICA

No.   16-16378

D.C. No. 3:07-cv-05944-JST

ELECTRONIC COMPONENTS, INC.;
SAMSUNG SDI CO., LTD.; SAMSUNG
SDI AMERICA, INC.; SAMSUNG SDI
(MALAYSIA) SDN BHD; SAMSUNG SDI
MEXICO S.A. DE C.V.; SAMSUNG SDI
BRASIL LTDA.; SHENZEN SAMSUNG
SDI CO., LTD.; TIANJIN SAMSUNG SDI
CO., LTD.; HITACHI, LTD.; HITACHI
DISPLAYS, LTD., AKA Japan Display,
Inc.; HITACHI AMERICA, LTD;
HITACHI ASIA, LTD.; HITACHI
ELECTRONIC DEVICES (USA), INC.;
PANASONIC CORPORATION, FKA
Matsushita Electric Industrial Co., Ltd.
("MEI"), is a Japanese entity; PANASONIC
CORPORATION OF NORTH AMERICA;
MT PICTURE DISPLAY CO., LTD;
PHILIPS KONINKLIJKE N.V.; PHILIPS
ELECTRONICS NORTH AMERICA
CORPORATION; PHILIPS TAIWAN
LIMITED; PHILIPS DO BRASIL LTDA.;
THOMSON CONSUMER ELECTRONICS,
INC.; THOMSON SA,

        Defendants-Appellees.

---

In re:  CATHODE RAY TUBE (CRT)
ANTITRUST LITIGATION,

-------------------------------

 INDIRECT PURCHASER PLAINTIFFS,

        Plaintiff-Appellee,

 v.

ROCKHURST UNIVERSITY; GARY

No.    16-16379

D.C. No. 3:07-cv-05944-JST

7

Case: 4:07-cv-05944-JST Document 6007-25 Filed 01/03/22 Page 48 of 135
Case: 16-16399, 03/13/2019, ID: 11336770, DktEntry: 24, Page 8 of 12

(44 of 59)

TALEWSKY; HARRY GARAVANIAN,

           Objectors-Appellants,

 v.

TOSHIBA CORPORATION; TOSHIBA
AMERICA, INC.; TOSHIBA AMERICA
INFORMATION SYSTEMS, INC.;
TOSHIBA AMERICA CONSUMER
PRODUCTS, LLC; TOSHIBA AMERICA
ELECTRONIC COMPONENTS, INC.;
SAMSUNG SDI CO., LTD.; SAMSUNG
SDI AMERICA, INC.; SAMSUNG SDI
(MALAYSIA) SDN BHD; SAMSUNG SDI
MEXICO S.A. DE C.V.; SAMSUNG SDI
BRASIL LTDA.; SHENZEN SAMSUNG
SDI CO., LTD.; TIANJIN SAMSUNG SDI
CO., LTD.; HITACHI, LTD.; HITACHI
DISPLAYS, LTD., AKA Japan Display,
Inc.; HITACHI AMERICA, LTD;
HITACHI ASIA, LTD.; HITACHI
ELECTRONIC DEVICES (USA), INC.;
PANASONIC CORPORATION, FKA
Matsushita Electric Industrial Co., Ltd.
("MEI"), is a Japanese entity; PANASONIC
CORPORATION OF NORTH AMERICA;
MT PICTURE DISPLAY CO., LTD;
PHILIPS KONINKLIJKE N.V.; PHILIPS
ELECTRONICS NORTH AMERICA
CORPORATION; PHILIPS TAIWAN
LIMITED; PHILIPS DO BRASIL LTDA.;
THOMSON CONSUMER ELECTRONICS,
INC.; THOMSON SA,

           Defendants-Appellees.

| In re: CATHODE RAY TUBE (CRT) | No. 16-16399 |

ANTITRUST LITIGATION,

-------------------------------

 INDIRECT PURCHASER PLAINTIFFS,

                Plaintiff-Appellee,

  v.

ANTHONY GIANASCA; GLORIA
COMEAUX; MINA ASHKANNEJHAD,
individually and/or as Administrator of the
Estate of the Late R. Deryl Edwards, Jr.;
JEFFREY SPEAECT; ROSEMARY
CICCONE; JEFF CRAIG,

                Movants-Appellants,

  v.

 TOSHIBA CORPORATION; TOSHIBA
AMERICA, INC.; TOSHIBA AMERICA
INFORMATION SYSTEMS, INC.;
TOSHIBA AMERICA CONSUMER
PRODUCTS, LLC; TOSHIBA AMERICA
ELECTRONIC COMPONENTS, INC.;
SAMSUNG SDI CO., LTD.; SAMSUNG
SDI AMERICA, INC.; SAMSUNG SDI
(MALAYSIA) SDN BHD; SAMSUNG SDI
MEXICO S.A. DE C.V.; SAMSUNG SDI
BRASIL LTDA.; SHENZEN SAMSUNG
SDI CO., LTD.; TIANJIN SAMSUNG SDI
CO., LTD.; HITACHI, LTD.; HITACHI
DISPLAYS, LTD., AKA Japan Display,
Inc.; HITACHI AMERICA, LTD;
HITACHI ASIA, LTD.; HITACHI
ELECTRONIC DEVICES (USA), INC.;
PANASONIC CORPORATION, FKA

16-16400

D.C. No. 3:07-cv-05944-JST

(46 of 59)

Case 4:07-cv-05944-JST Document 5997-5 Filed 04/05/22 Page 50 of 135
Case 19-15974, 02/13/2019, ID: 11190740, DktEntry: 246, Page 50 of 125

Matsushita Electric Industrial Co., Ltd.
("MEI"), is a Japanese entity; PANASONIC
CORPORATION OF NORTH AMERICA;
MT PICTURE DISPLAY CO., LTD;
PHILIPS KONINKLIJKE N.V.; PHILIPS
ELECTRONICS NORTH AMERICA
CORPORATION; PHILIPS TAIWAN
LIMITED; PHILIPS DO BRASIL LTDA.;
THOMSON CONSUMER ELECTRONICS,
INC.; THOMSON SA,

                Defendants-Appellees.

Appeal from the United States District Court
for the Northern District of California
Jon S. Tigar, District Judge, Presiding

Argued and Submitted April 10, 2018
Submission Vacated April 30, 2018
Re-Submitted February 13, 2019
San Francisco, California

Before:  Kim McLane Wardlaw and Richard R. Clifton, Circuit Judges, and Gary
S. Katzmann,[*] Judge.

On November 8, 2018, in response to Indirect Purchaser Plaintiffs' motion

for an indicative ruling pursuant to Federal Rule of Civil Procedure 62.1, the

District Court stated that, "with the benefit of hindsight . . . it erred in approving

the parties' original settlement" now pending on appeal in our court.  The district

court recognized that it should have provided recovery to class members in the

---

[*]      The Honorable Gary S. Katzmann, Judge for the United States Court
of International Trade, sitting by designation.

Omitted Repealer States, Massachusetts, Missouri, and New Hampshire, which necessarily affects the remaining issues on appeal: 1) the adequacy of representation under Federal Rules of Civil Procedure 23(a)(4); and 2) the attorneys' fees awarded to Lead Counsel.

We therefore remand this case so that the district court may reconsider its approval of the settlement.

The Indirect Purchaser Plaintiffs' motion for a stay, filed October 1, 2018 (Dkt. No. 226), and the Objector-Appellants' motion for leave to file an enlarged response (Dkt. Nos. 223 & 224) are **DENIED** as moot.

The Indirect Purchaser Plaintiffs' Motion Requesting Remand with Instructions Regarding: (1) The Plan of Distribution for the Settlements; and (2) The Fee Order, filed January 9, 2019 (Dkt. No. 230), is **DENIED**.[1]

The Indirect Purchaser Plaintiffs' Motion for Leave to File Excess Pages, filed January 29, 2019 (Dkt. No. 233), is **GRANTED**. The Reply brief has already been filed (Dkt. No 234). The request of Objectors-Appellants to file a Surreply to that Reply, contained within their Opposition to the Motion for Leave to File Excess Pages (Dkt. 235), is **DENIED** as moot.

---

[1] Objector-Appellants' motion to supplement the record on appeal (Dkt. No. 120) and motion to strike Indirect Purchaser Plaintiffs' response to the same (Dkt. No. 150) are **DENIED** as moot. Objector-Appellants' and Defendant-Appellees' motions to take judicial notice (Dkt. Nos. 130, 197) are **DENIED** as moot.

(48 of 59)

Case: 4:07-cv-05944-JST Document 1900725 Filed 04/05/22 Page 52 of 135
Case: 18-16978, 02/13/2019, ID: 11180770, DktEntry: 246, Page 52 of 125

The motions to dismiss appeal voluntarily filed by Objectors-Appellants Sean Hull (Dkt. No. 198), John Finn and Laura Townsend Fortman (Dkt. No. 199), Donnie Clifton (Dkt. No. 200), and Josie Saik (Dkt. No. 222) are **GRANTED**.

We therefore **REMAND** to the District Court to reconsider its order on class certification and settlement approval. We do not vacate the order at this time.

The current panel will retain responsibility for future appeals in this case.

Each party shall bear its own costs of appeal.

**IT IS SO ORDERED.**

# EXHIBIT C

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION** | Case No. 07-cv-05944-JST |
| | **ORDER DENYING MOTION TO STAY** |
| | Re: ECF No. 5718 |

Before the Court is Other Repealer States' and Non-Repealer States' motion for a stay of the Court's March 11, 2020 order granting motion for preliminary approval. ECF No. 5718. The Court will deny the motion.

## I. BACKGROUND

The facts regarding this case are well known to the parties, and the Court summarizes them here only insofar as they bear on the present motions. In February 2008, the Judicial Panel on Multidistrict Litigation ("JPML") ordered the centralization of actions alleging that certain defendants conspired to fix prices of cathode ray tubes ("CRTs"). *See In re Cathode Ray Tube (CRT) Antitrust Litig.*, 536 F. Supp. 2d 1364 (J.P.M.L. 2008). In 2015, one group of plaintiffs – the Indirect Purchaser Plaintiffs ("IPP Plaintiffs") – reached class action settlements with six groups of corporate defendants: Philips, Panasonic, Hitachi, Toshiba, Samsung, and Thomson/TDA. ECF No. 4712 at 1; ECF No. 5695 at 2.

The settlements included a "Nationwide Class" of "[a]ll persons and or entities who or which indirectly purchased in the United States for their own use and not for resale, CRT Products manufactured and/or sold by the Defendants." *See* ECF No. 1526 at 59-60; ECF Nos. 3862-1, 3862-2, 3862-3, 3862-4, 3862-5; ECF No. 3876-1 (adopting the class definitions set forth in the

operative complaint). The agreements also included Statewide Damages Classes of indirect purchasers of CRT products seeking money damages under the laws of 21 states and the District of Columbia ("22 Indirect Purchaser State Classes"). *See id.* The settlements resolved all federal and state-law claims brought by the IPP Plaintiffs against the settling Defendants and provided monetary compensation for class members in the 22 Indirect Purchaser State Classes. *See* ECF No. 3862-1 at 8; ECF No. 3862-2 at 8; ECF No. 3862-3 at 8; ECF No. 3862-4 at 8; ECF No. 3862-5 at 8; ECF No. 3876-1 at 9-10. However, the agreements did not provide compensation for persons or entities in certain other states, which collectively are now denominated the Omitted Repealer[1] State subclass ("ORS Subclass").[2] The settlement also provided no compensation to persons or entities in states whose laws do not provide for recovery to indirect purchasers ("non-repealer states"), now denominated the Non-Repealer State subclass ("NRS Subclass").[3] *See* ECF Nos. 3862-1, 3862-2, 3862-3, 3862-4, 3862-5, 3876-1. Even though they received no compensation, the settlements required members of the ORS and NRS Subclasses to release their claims for injunctive relief, equitable monetary relief, and damages.

On July 7, 2016, this Court granted final approval of the six settlement agreements. ECF No. 4712 at 1. Two objectors sought appeal of this decision in the Ninth Circuit. ECF No. 4741.

---

[1] In *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977), the Supreme Court held that only direct purchasers could recover damages for price-fixing under Section 4 of the Clayton Act. *Id.* at 735. As the Ninth Circuit has summarized, the Supreme Court "barred indirect purchasers' suits, and left the field of private antitrust enforcement to the direct purchasers." *Royal Printing Co. v. Kimberly Clark Corp.*, 621 F.2d 323, 325 (9th Cir. 1980). In response to the Illinois Brick decision, many states passed so-called "Illinois Brick repealer statutes," which give indirect purchasers the right to sue when firms violate analogous state antitrust laws. *See, e.g.,* Robert H. Lande, New Options for State Indirect Purchaser Legislation: Protecting the Real Victims of Antitrust Violations, 61 Ala. L. Rev. 447, 448 (2010). Such states are referred to a "repealer states." A state which has not enacted such a statute is referred to as a "non-repealer state."

[2] The ORS Subclass in its current iteration consists of Indirect Purchaser Plaintiffs in the following states: Arkansas, Massachusetts, Missouri, Montana, New Hampshire, Oregon, Rhode Island, South Carolina, and Utah. ECF No. 5518 at 1; ECF No. 5645 at 2. The parties now use the "ORS" abbreviation to signify "other repealer states" rather than "omitted repealer states." ECF No. 5645 at 1 n.1.

[3] The NRS Subclass consists of Indirect Purchaser Plaintiffs in the following Non-Repealer States: Alabama, Alaska, Colorado, Connecticut, Delaware, Georgia, Idaho, Illinois, Indiana, Kentucky, Louisiana, Maryland, New Jersey, Ohio, Oklahoma, Pennsylvania, Texas, Virginia, Washington, and Wyoming. ECF No. 5518 at 2.

United States District Court
Northern District of California

On November 8, 2018, this Court issued an order in which it concluded that it erred in approving the settlement provision which required class members in the ORS Subclass to release their claims without compensation. *See* ECF No. 5362 at 1. The order expressed "concerns about the adequacy of the counsel who negotiated that settlement or whether they may have faced a conflict of interest." *Id.* at 1. In response, the Ninth Circuit remanded "this case so that the district court [could] reconsider its approval of the settlement." *See In re Cathode Ray Tube Antitrust Litig.*, No. 16-16368 (9th Cir. Feb. 13, 2009), ECF No. 238 at 11.

On remand, this Court confirmed the existing lead counsel for the IPP Plaintiffs and appointed separate counsel for the unnamed ORS Subclass and NRS Subclass. ECF Nos. 5535, 5518. The Court then referred the matter to Magistrate Judge Corley for settlement. ECF No. 5427. Thereafter, counsel for IPP Plaintiffs and seven defendants engaged in mediation sessions and agreed to amend the settlements. ECF No. 5531; ECF No. 5587-1 ¶¶ 2-3. In order to "remove potential conflicts of interests that could result from differences in claims and relief sought by the 22 Indirect Purchaser State Classes verses the ORS and NRS Subclasses," the amended settlements "narrow[ed] the settlement Class to include only the 22 Indirect Purchaser State Classes." ECF No. 5695 at 11; *see* ECF No. 5587 at 16; ECF No. 5587-1. Accordingly, the amended settlements only release the claims of members of the 22 Indirect Purchaser State Classes. ECF No. 5695 at 5; ECF No. 5587 at 16; ECF No. 5587-1. On September 16, 2019, the IPP Plaintiffs filed a motion for preliminary approval of the amended settlements. ECF No. 5587. The Court granted preliminary approval, provisionally certified the proposed class, approved the proposed notice procedure, and scheduled a final approval hearing for July 8, 2020. ECF No. 5695 at 19.

On August 23, 2019, NRS Subclass member Eleanor Lewis and several members of the ORS Subclass moved to intervene in this litigation and file an amended complaint. ECF Nos. 5565, 5567. The Court denied these motions without prejudice. ECF No. 5626 at 3; ECF No. 5628 at 3. In November 2019, Lewis and the ORS Subclass filed renewed motions to intervene. ECF Nos. 5643, 5645. The Court denied the renewed motions and directed movants to "file their claims in the appropriate forum(s) and seek transfer from the JPML or, if properly filed in the

United States District Court
Northern District of California

Northern District of California, 'request assignment of [their] actions to the Section 1407 transferee judge in accordance with applicable local rules.'" ECF No. 5684 at 6 (quoting J.P.M.L. R. 7.2(a)). Thereafter, Lewis and the ORS Subclass filed motions to alter or amend the Court's order denying their renewed motions to intervene. ECF No. 5688, 5689. The Court denied these motions. ECF No. 5708.

In April 2020, Lewis and the ORS Subclass appealed the following of this Court's orders to the United Sates Court of Appeal for the Ninth Circuit: (1) Order Denying Eleanor Lewis's Motion to Intervene and File an Amended Complaint, ECF No. 5626; (2) Order Denying Motion to Intervene and Amend Complaint to Allege State Law Claims for the Other Repealer States, ECF No. 5628; (3) Order Denying Renewed Motions to Intervene, ECF No. 5684; (4) Order Denying Motion to Alter or Amend the Court's Order, ECF No. 5708; and (5) Order Granting Preliminary Approval, ECF No. 5695.[4] ECF Nos. 5709, 5711, 5712, 5713. Then, the ORS and NRS Subclasses filed a motion to stay all approval proceedings for IPP Plaintiffs' amended settlements pending resolution of their appeals. ECF No. 5718. IPP Plaintiffs and the Samsung Defendants[5] oppose this motion. ECF Nos. 5726, 5727. The ORS and NRS Subclasses have filed a reply. ECF No. 5731.

## II.      JURISDICTION

The Court has jurisdiction pursuant to 28 U.S.C. § 1331.

## III.      LEGAL STANDARD

A court's "power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. North American Co.*, 299 U.S. 248, 254 (1936). A stay is "an exercise of judicial discretion, and the propriety of its issue is dependent upon the circumstances of the particular case." *Nken v. Holder*, 556 U.S. 418, 433 (2009) (internal

---

[4] On June 9, 2020, the Ninth Circuit issued an order concluding that it lacks jurisdiction to review this Court's order granting preliminary approval of the class settlement. ECF No. 5738 at 4.

[5] The Samsung Defendants consist of Samsung SDI Co., Ltd.; Samsung SDI America, Inc.; Samsung SDI Mexico S.A. De C.V.; Samsung SDI Brasil Ltda.; Shenzhen Samsung SDI Co., Ltd.; Tianjin Samsung SKI Co., Ltd.; and Samsung SDI (Malaysia) Sdn. Bhd. ECF No. 5726 at 1.

United States District Court
Northern District of California

alterations, citations, and quotations omitted). "The party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion." *Al Otro Lado v. Wolf*, 952 F.3d 999, 1006 (9th Cir. 2020) (quoting *Nken*, 556 U.S. at 433-34).

When deciding a motion to stay an order pending appeal, courts consider four factors: (1) "whether the stay applicant has made a strong showing that he is likely to succeed on the merits," (2) "whether the applicant will be irreparably injured absent a stay," (3) "whether issuance of the stay will substantially injure the other parties interested in the proceeding," and (4) "where the public interest lies." *Nken*, 556 U.S. at 426 (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)). "'The first two factors . . . are the most critical'; the last two are reached only '[o]nce an applicant satisfies the first two factors.'" *Al Otro Lado*, 952 F.3d at 1007 (quoting *Nken*, 556 U.S. at 434-35). "[I]f a stay applicant cannot show irreparable harm, 'a stay may not issue, regardless of the petitioner's proof regarding the other stay factors.'" *Doe #1 v. Trump*, 957 F.3d 1050, 1062 (9th Cir. 2020) (quoting *Leiva-Perez v. Holder*, 640 F.3d 962, 965 (9th Cir. 2011)).

## IV. DISCUSSION

Because the court may not issue a stay if the applicant fails to show irreparable harm, the Court begins its analysis with consideration of this factor. *See Doe #1*, 957 F.3d at 1058. "An applicant for a stay pending appeal must show that a stay is necessary to avoid likely irreparable injury to the applicant while the appeal is pending." *Al Otro Lado*, 952 F.3d at 1007 (citing *Nken*, 556 U.S. at 434). "'[S]imply showing some possibility of irreparable injury' is insufficient." *Id.* (quoting *Leiva-Perez*, 640 F.3d at 968). Rather, an applicant must show "that irreparable injury is likely to occur during the period before the appeal is likely to be decided." *Id.* (citing *Leiva-Perez*, 640 F.3d at 968).

The ORS and NRS Subclasses argue that a stay is warranted because, if IPP Plaintiffs' amended settlements become final during the appeals, "*it is possible* that there will be no 'action' in which they can intervene, even if the Ninth Circuit rules that they satisfy the criteria for intervention as of right in the cases now pending." ECF No. 5718 at 13 (emphasis added); *see* ECF No. 5731 at 2 (arguing that final approval of the amended settlements would "drop [their]

federal claims before the ORS and NRS Plaintiffs could intervene and amend the complaint"). The ORS and NRS Subclasses also note that there exits "*uncertainty* surrounding whether [their] pending appeal will be rendered moot" in the event that "this Court grant[s] final approval of the proposed settlement[s]." *Id.* at 13-14 (emphasis added). These statements of "some possibility of irreparable harm" are insufficient to meet the "minimum threshold showing" that "irreparable harm is likely to occur." *Al Otro Lado*, 952 F.3d at 1007.

Moreover, contrary to the ORS and NRS Subclasses' assertions, the Court's final approval of IPP Plaintiffs' amended settlements will not terminate the MDL. The amended settlements resolve the actions between the 22 Indirect Purchaser State Classes and seven groups of corporate defendants. ECF No. 5531; ECF No. 5587-1 ¶¶ 2-3. The settlements do not release any of the ORS or NRS Subclasses' claims[6] and do not resolve IPP Plaintiffs' claims against several remaining defendants within the MDL.[7] As such, the underlying MDL will not be eliminated upon final approval of the proposed settlement between a particular subset of the classes and defendants contained therein.

Neither will IPP Plaintiffs' operative Fifth Consolidated Amended Complaint ("CAC") disappear. ECF No. 5589. In addition to the settling 22 Indirect Purchaser State Classes, the CAC alleges a Nationwide Class, which includes the ORS and NRS Subclasses. ECF No. 5589 ¶ 243. It also includes several non-settling defendants. *See* ECF No. 5589 ¶¶ 95-98, 109-115. Thus, if the Ninth Circuit concludes that the ORS and NRS Subclasses are entitled to intervene in this action, both the MDL and the CAC which the Subclasses seek to amend[8] would likely still exist at

---

[6] The amended settlements "narrow[] the settlement Class to include only the 22 Indirect Purchaser State Classes." ECF No. 5695 at 11; *see* ECF No. 5587 at 16; ECF No. 5587-1. Accordingly, the settlements only release the claims of members of the 22 Indirect Purchaser State Classes. ECF No. 5695 at 5; ECF No. 5587 at 16; ECF No. 5587-1.

[7] IPP Plaintiffs continue to litigate their claims against Irico Group Corporation, Irico Display Devices Co., Ltd., and Mitsubishi Electric Corporation. *See* ECF No. 5589 ¶¶ 95-98, 109-115 (IPP Plaintiff's Fifth Consolidated Amended Complaint).

[8] In its order denying their initial motions to intervene, the Court found that the unnamed ORS and NRS Subclasses could not intervene in the MDL by attempting to amend the CAC. ECF No. 5626, 5628 ("[T]here is the practical reality that [NRS and ORS Movants] are attempting to amend someone else's complaint. They cite no authority permitting a proposed intervenor to take such a step, and the Court concludes it is not allowed.").

United States District Court
Northern District of California

1   that time.  While "it is possible that there will be no 'action' in which they can intervene," ECF

2   No. 5718 at 13, the ORS and NRS Subclasses make no showing that this outcome is "likely to

3   occur."  *Al Otro Lado*, 952 F.3d at 1007 ("[S]imply showing some possibility of irreparable injury

4   is insufficient.  The minimum threshold showing for a stay pending appeal requires that

5   irreparable injury is likely to occur during the period before the appeal is likely to be decided."

6   (internal quotation marks and citations omitted)).

7          Each remaining allegation of irreparable harm stems from the mistaken assertion that final

8   approval of the amended settlements will eliminate the action in which the ORS and NRS

9   Subclasses seek to intervene.  *See, e.g.,* ECF No. 5718 at 13 (arguing that the ORS and NRS

10  Subclasses' appeals may be dismissed as moot if there is no action in which they can intervene);

11  ECF No. 5718 at 8 (arguing that the ORS and NRS Subclasses' ability to invoke the relation back

12  doctrine in response to a timeliness challenge may be hindered if there is "no proceeding in which

13  to intervene" and no "complaint within an already-pending action").  Therefore, these alleged

14  injuries are unfounded.

15         Finally, the Court notes that the ORS and NRS Plaintiffs recently appealed to the Ninth

16  Circuit this Court's orders (1) denying their motions to intervene and (2) granting preliminary

17  approval of the IPP class settlement.  *See Indirect Purchaser Plaintiffs v. Toshiba Corp.*, Case No.

18  20-15697 (9th Cir.).   The Ninth Circuit concluded that it lacked jurisdiction over the order

19  preliminarily approving the settlement and dismissed that portion of the appeal.  *Id.*, ECF No. 20

20  (9th Cir. June 9, 2020).  In so doing, that court observed that the ORS and NRS Subclasses could

21  move to intervene after final approval for the purpose of appealing the denial of their objections to

22  the settlement.  *Id.* at 4.  If this Court were to deny that motion, the denial could be immediately

23  appealed.  *Id.*

24         The ORS and NRS Subclasses have failed to "show that a stay is necessary to avoid likely

25  irreparable injury . . . while the appeal is pending."  *Al Otro Lado*, 952 F.3d at 1007 (citation

26  omitted) ("The party requesting a stay bears the burden of showing that the circumstances justify

27  an exercise of that discretion.").  Accordingly, "a stay may not issue."  *Doe #1*, 957 F.3d at 1062

28  (internal quotation marks and citation omitted).

**CONCLUSION**

For the foregoing reasons, the Court denies the ORS and NRS Subclasses' motion to stay.

**IT IS SO ORDERED.**

Dated:  June 25, 2020



JON S. TIGAR
United States District Judge

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

### Form 16. Circuit Rule 27-3 Certificate for Emergency Motion

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form16instructions.pdf*

**9th Cir. Case Number(s)** | 20-15697 and 20-15704

**Case Name** | In Re: Cathode Ray Tube (CRT) Antitrust Litig.

I certify the following:

The relief I request in the emergency motion that accompanies this certificate is:

Stay of district court proceedings concerning approval of indirect-purchaser class action settlements.

Relief is needed no later than *(date)*: July 17, 2020

The following will happen if relief is not granted within the requested time:

Resolution of Appellants currently-pending appeal may be mooted, and the indirect-purchaser subclasses that Appellants represent may be forever denied the opportunity to litigate their claims against the defendants, if judgment of dismissal is entered by the district court in connection with the approval of certain indirect-purchaser class action settlements.

I could not have filed this motion earlier because:

On July 8, 2020, the district court held a 15-minute fairness hearing in connection with final approval of certain indirect-purchaser class actions settlements and orally indicated that it would overrule Appellants' objections and grant approval in a written order to be issued in the future. Appellants are filing this motion within 48 hours of the conclusion of the district court's hearing.

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 16** 1 *Rev. 11/21/2019*

I requested this relief in the district court or other lower court: ● Yes ○ No

If not, why not:

I notified 9th Circuit court staff via voicemail or email about the filing of this motion: ● Yes ○ No

If not, why not:

I have notified all counsel and any unrepresented party of the filing of this motion:

On *(date)*: July 9, 2020

By *(method)*: Email

Position of other parties: Will oppose this motion.

Name and best contact information for each counsel/party notified:

Mario Alioto, lead counsel for Indirect-Purchaser Plaintiffs:
Trump, Alioto, Trump & Prescott LLP
Tel. (415) 447-1650; malioto@tatp.com

Erik Koons, liaison counsel for defendants:
Baker Botts LLP
Tel. (202) 639-7973; erik.koons@bakerbotts.com

I declare under penalty of perjury that the foregoing is true.

**Signature** s/Patrick B. Clayton  **Date** July 9, 2020

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 16**                    2                    *Rev. 11/21/2019*

# EXHIBIT 2

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | No. 20-15697 |
| | D.C. No. 4:07-cv-05944-JST MDL No. 1917 (N.D. Cal., Oakland) |
| INDIRECT PURCHASER PLAINTIFFS, Plaintiff-Appellee, v. | **DEFENDANTS-APPELLEES' RESPONSE TO JOINT MOTION TO STAY PENDING APPEAL** |
| TOSHIBA CORPORATION, *et al*., Defendants-Appellees, v. | |
| TYLER AYRES, *et al*., Movants-Appellants. | |

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | No. 20-15704 |
| | D.C. No. 4:07-cv-05944-JST MDL No. 1917 (N.D. Cal., Oakland) |
| INDIRECT PURCHASER PLAINTIFFS, Plaintiff-Appellee, v. | |
| TOSHIBA CORPORATION, *et al*., Defendants-Appellees, v. | |
| ELEANOR LEWIS, Proposed Intervenor, Movant-Appellant. | |

[Caption Continues on Following Page]

ALLEN & OVERY LLP
ANDREW RHYS DAVIES
andrew.rhys.davies@allenovery.com
1221 Avenue of the Americas
New York, New York 10020
Tel: (212) 610-6300

JOHN ROBERTI
john.roberti@allenovery.com
ALLEN & OVERY LLP
1101 New York Avenue NW
Washington, DC 20005
Tel: (202) 683-3800

*Attorneys for Defendants-Appellees
Samsung SDI Co., Ltd., Samsung SDI
America, Inc., Samsung SDI Mexico
S.A. de C.V., Samsung SDI Brasil
Ltda., Shenzhen Samsung SDI Co.,
Ltd., Tianjin Samsung SDI Co., Ltd.,
and Samsung SDI (Malaysia) Sdn.
Bhd.*[1]

WHITE & CASE LLP
CHRISTOPHER M. CURRAN
ccurran@whitecase.com
LUCIUS B. LAU
alau@whitecase.com
DANA E. FOSTER
defoster@whitecase.com
MATTHEW N. FRUTIG
mfrutig@whitecase.com
701 Thirteenth Street, N.W.
Washington, DC 20005
Tel.: (202) 626-3600

*Attorneys for Defendants-Appellees
Toshiba Corporation, Toshiba
America, Inc., Toshiba America
Information Systems, Inc., Toshiba
America Consumer Products, L.L.C.,
and Toshiba America Electronic
Components, Inc.*

---

[1]     Samsung SDI Mexico S.A. de C.V., Samsung SDI Brasil Ltda., Shenzhen
Samsung SDI Co., Ltd., and Samsung SDI (Malaysia) Sdn. Bhd. have been
dissolved.

BAKER BOTTS LLP
JOHN M. TALADAY
john.taladay@bakerbotts.com
ERIK T. KOONS
erik.koons@bakerbotts.com
700 K Street, NW
Washington, DC 20001
Tel.: (202) 639-7700

*Attorneys for Defendants-Appellees*
*Koninklijke Philips, N.V., Philips North*
*America LLC, Philips Taiwan Limited,*
*and Philips do Brasil, Ltda*

SQUIRE PATTON BOGGS (US)
LLC
DONALD A. WALL
donald.wall@squirepb.com
1 East Washington Street
Suite 2700
Phoenix, AZ 85004
Tel.: (602) 528-4005

*Attorneys for Defendant-Appellee*
*Technologies Display Americas LLC*

FAEGRE DRINKER BIDDLE &
REATH LLP
KATHY L. OSBORN
kathy.osborn@faegredrinker.com
300 N. Meridian Street, Suite 2500
Indianapolis, IN 46204
Tel.: (317) 237-0300

JEFFREY S. ROBERTS
jeff.roberts@faegredrinker.com
1144 15th Street, Suite 3400
Denver, CO 80202
Tel.: (303) 607-3500

*Attorneys for Defendants-Appellees*
*Thomson SA and Thomson Consumer*
*Electronics, Inc.*

MORRISON & FOERSTER LLP
ELIOT A. ADELSON
eadelson@mofo.com
425 Market Street
San Francisco, CA 94105
Tel.: (415) 268-7000

KIRKLAND & ELLIS, LLP
JAMES H. MUTCHNIK, P.C.
300 North LaSalle
Chicago, IL 60654
Tel.: (312) 862-2000

*Attorneys for Defendants-Appellees*
*Hitachi Ltd., Hitachi Displays, Ltd.*
*(n/k/a Japan Display, Inc.), Hitachi*
*Asia, Ltd., Hitachi America, Ltd., and*
*Hitachi Electronic Devices (USA),*
*Inc.*

WINSTON & STRAWN LLP
JEFFREY L. KESSLER
jkessler@winston.com
EVA W. COLE
ewcole@winston.com
200 Park Avenue
New York, NY 10166
Tel.: (212) 294-6700

KEVIN B. GOLDSTEIN
kbgoldstein@winston.com
35 W. Wacker Drive
Chicago, IL 60622
Tel.: (312) 558-5600

WEIL, GOTSHAL & MANGES LLP
DAVID L. YOHAI
david.yohai@weil.com
ADAM C. HEMLOCK
adam.hemlock@weil.com
DAVID YOLKUT
david.yolkut@weil.com
767 Fifth Avenue
New York, NY 10153-0119
Tel.: (212) 310-8000

*Attorneys for Defendants-Appellees*
*Panasonic Corporation (f/k/a*
*Matsushita Electric Industrial Co., Ltd.),*
*Panasonic Corporations of North*
*America, and MT Picture Display Co.,*
*Ltd.*[2]

---

[2]     MT Picture Display Co., Ltd. has been dissolved and completed final liquidation proceedings in Japan on May 23, 2019.

## CORPORATE DISCLOSURE STATEMENT
## FOR THE SAMSUNG SDI DEFENDANTS-APPELLEES

Samsung SDI America, Inc., Samsung SDI (Malaysia) Sdn. Bhd., Samsung SDI Mexico S.A. De C.V., Samsung SDI Brasil Ltda., Shenzen Samsung SDI Co., Ltd. and Tainjin Samsung SDI Co., Ltd. are or were non-governmental corporate entities whose parent corporation is or was Samsung SDI Co., Ltd. ("SDI"). Samsung SDI Mexico S.A. de C.V., Samsung SDI Brasil Ltda., Shenzhen Samsung SDI Co., Ltd., and Samsung SDI (Malaysia) Sdn. Bhd. have been dissolved.

SDI is a nongovernmental Korean corporate entity with no parent corporation. SDI is publicly traded on the Korean stock exchange. Samsung Electronics Co., Ltd. owns approximately 20% of SDI stock. No other publicly traded entity owns more than 10% of SDI stock.

## CORPORATE DISCLOSURE STATEMENT
## FOR THE PHILIPS DEFENDANTS-APPELLEES

Koninklijke Philips N.V. (f/k/a Koninklijke Philips Electronics N.V.) ("KPNV") is a Dutch corporation that is publicly traded on the Amsterdam and New York Stock Exchanges. It has no parent corporation and no publicly held company owns 10% or more of its stock. Philips North America LLC (f/k/a Philips Electronics North America Corporation) ("PNA") is wholly owned, directly or indirectly, by KPNV. Other than KPNV, no publicly held company owns 10% or more of PNA's stock. Philips Taiwan Limited (f/k/a Philips Electronics Industries (Taiwan), Ltd.) is wholly owned, directly or indirectly, by KPNV. Other than KPNV, no publicly held company owns 10% or more of Philips Taiwan Limited's stock. Philips do Brasil, Ltda. (f/k/a Philips da Amazonia Industria Electronica Ltda.) is wholly owned, directly or indirectly, by KPNV. Other than KPNV, no publicly held company owns 10% or more of Philips do Brasil, Ltda.'s stock.

## CORPORATE DISCLOSURE STATEMENT
## FOR THE HITACHI DEFENDANTS-APPELLEES

Hitachi, Ltd. is a publicly held corporation. Its common stock is listed on Japanese Stock Exchanges. Hitachi, Ltd. has no parent corporation, and no corporation, entity or individual owns 10 percent or more of its stock.

Both Hitachi America, Ltd. and Hitachi Asia, Ltd. are wholly owned subsidiary of Hitachi Ltd. Hitachi Electronic Devices (USA) was merged into Hitachi America, Ltd.

Japan Display Inc. is a publicly held corporation. Its common stock is listed on Japanese Stock Exchanges. JDI has no parent corporation. Ichigo Asset Management and INCJ, Ltd. hold more than 10 percent of the outstanding shares of JDI.

**CORPORATE DISCLOSURE STATEMENT**
**FOR THE PANASONIC DEFENDANTS-APPELLEES**

Panasonic Corporation (f/k/a Matsushita Electric Industrial Co., Ltd.), a non-governmental corporate party, certifies that it has no parent corporation, and no publicly held corporation owns 10% or more of its stock. Panasonic Corporation of North America, a non-governmental corporate party, certifies that (a) Panasonic Holding (Netherlands) B.V. ("PHN") is its direct corporate parent; (b) Panasonic Corporation, through its ownership of PHN, is its indirect corporate parent; and (c) Panasonic Corporation indirectly owns 10% or more of its stock. MT Picture Display Co., Ltd. was a non-governmental corporation that has been dissolved and completed final liquidation in Japan; prior to its liquidation, Panasonic Corporation was its corporate parent and owned 10% or more of its stock.

**CORPORATE DISCLOSURE STATEMENT**
**FOR THE THOMSON DEFENDANTS-APPELLEES**

Thomson SA (n/k/a Technicolor SA) is a publicly-held corporation whose stock is traded on the New York and Paris stock exchanges.  Thomson SA has no parent corporation, and no corporation, entity or individual owns 10 percent or more of its stock.

Thomson Consumer, Inc. (n/k/a Technicolor USA, Inc.) is a wholly-owned subsidiary of Thomson SA.

**CORPORATE DISCLOSURE STATEMENT FOR DEFENDANT-APPELLEE TECHNOLOGIES DISPLAYS AMERICAS LLC**

Technologies Displays Americas LLC ("TDA") is a wholly-owned subsidiary of Eagle Corporation Ltd. Videocon Industries Limited, a publicly traded company undergoing a Corporate Insolvency Resolution Process under the provisions of The Insolvency Bankruptcy Code of India, is believed to own 10% or more of Eagle Corporation Ltd. No other publicly held corporation owns 10% or more of Eagle Corporation Ltd.'s shares.

## CORPORATE DISCLOSURE STATEMENT
## FOR THE TOSHIBA DEFENDANTS-APPELLEES

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, Defendant-Appellees Toshiba Corporation, Toshiba America, Inc., Toshiba America Information Systems, Inc., Toshiba America Consumer Products, L.L.C., and Toshiba America Electronic Components, Inc. make the following disclosure:

Toshiba America Consumer Products, L.L.C. no longer exists as a separate entity and has been merged into Toshiba America Information Systems, Inc. Toshiba America Information Systems, Inc. and Toshiba America Electronic Components, Inc. are wholly owned subsidiaries of Toshiba America, Inc.  Toshiba America, Inc. is a wholly owned subsidiary of Toshiba Corporation in Japan. Toshiba Corporation is a publicly held company traded in Japan, and no publicly held corporation owns 10% or more of Toshiba Corporation's stock.

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................... ii

INTRODUCTION ............................................................................1

BACKGROUND ..............................................................................2

    A.    The Prior Appeals and this Court's Remand Order .............................2

    B.    The Proceedings on Remand ................................................3

        1.    The district court appoints separate counsel for Movants, representing nine so-called omitted "repealer" states and eighteen non-repealer states .......................................3

        2.    The district court rules that Movants cannot intervene directly in the MDL proceeding, and invites them to file their claims in a proper forum and then seek transfer into the MDL proceeding ...............................................4

        3.    The district court approves amended settlements that preserve Movants' ability to assert their claims ........................7

        4.    The district court denies a stay because Movants fail to show that the amended settlements are likely to cause them irreparable injury ..............................................9

ARGUMENT ...............................................................................10

    THE SETTLEMENT-APPROVAL ORDER SHOULD NOT BE STAYED................................................................................10

    A.    Movants Have Not Shown that Approval of the Amended Settlements Is Likely to Cause Them Irreparable Injury ....................10

    B.    Movants Also Have Not Made the Required Strong Showing that They Are Likely to Succeed on the Merits of an Appeal from the Settlement-Approval Order ....................................13

    C.    Movants Have Not Shown that the Public Interest and Balance of Equities Support a Stay ...............................................18

CONCLUSION .............................................................................20

# TABLE OF AUTHORITIES

**Cases**      **Page(s)**

*Al Otro Lado v. Wolf*,
   952 F.3d 999 (9th Cir. 2020) ....................................................................*passim*

*Allen v. Bedolla*,
   787 F.3d 1218 (9th Cir. 2015) .................................................................18, 20

*Cal. Dep't of Toxic Substances Control v. Commercial Realty Projects, Inc.*,
   309 F.3d 1113 (9th Cir. 2002) ...............................................................20

*Canatella v. California*,
   404 F.3d 1106 (9th Cir. 2005) ...............................................................12

*China Agritech, Inc. v. Resh*,
   138 S. Ct. 1800 (2018)...........................................................................11

*Church of Scientology of Cal. v. United States*,
   506 U.S. 9 (2002) ..................................................................................12

*Class Plaintiffs v. City of Seattle*,
   955 F.2d 1268 (9th Cir. 1992) ...............................................................19

*Doe #1 v. Trump*,
   957 F.3d 1050 (9th Cir. 2020) ................................................................*passim*

*Gelboim v. Bank of Am. Corp.*,
   574 U.S. 405 (2015)..............................................................................16

*Illinois Brick Co. v. Illinois*,
   431 U.S. 720 (1977)................................................................................4

*In re Equity Funding Corp. of Am. Sec. Litig.*,
   603 F.2d 1353 (9th Cir. 1979) ...............................................................13

*In re Farmers Ins. Exch. Claims Representatives' Overtime Pay Litig.*,
   No. MDL 33-1439, 2008 WL 4763029 (D. Or. Oct. 28, 2008) ........................15

*In re FCA US LLC Monostable Elec. Gearshift Litig.*,
   No. 16-MD-02744, 2017 WL 6402992 (E.D. Mich. Mar. 21,
   2017), *reconsideration denied*, No. 16-MD-02744, 2017 WL
   6402991 (E.D. Mich. Mar. 23, 2017) ................................................15

*In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.*,
   33 F.3d 29 (9th Cir. 1994) ...................................................................13

*In re Hyundai & Kia Fuel Econ. Litig.*,
   926 F.3d 539 (9th Cir. 2019) ...............................................................18

*In re Korean Air Lines Co., Ltd.*,
   642 F.3d 685 (9th Cir. 2011) ...............................................................16

*In re Mortg. Elec. Registration Sys.* (*Mers*) *Litig.*,
   No. MD-09-02119-PHX-JAT, 2016 WL 3931820 (D. Ariz. July 21, 2016).....15

*In re Packaged Ice Antitrust Litig.*,
   No. 08-MDL-1952, 2011 WL 6178891 (E.D. Mich. Dec. 12, 2011) ...............15

*In re Syncor ERISA Litig.*,
   516 F.3d 1095 (9th Cir. 2008) .............................................................18

*In re Takata Airbag Prod. Liab. Litig.*,
   379 F. Supp. 3d 1333 (S.D. Fla. 2019).................................................17

*In re Yasmin & Yaz* (*Drospirenone*) *Mktg., Sales Practices & Prods. Liab. Litig.*, No. 3:09-MD-02100-DRH, 2011 WL 1375011 (S.D. Ill. Apr. 12, 2011) ...............................................................17

*Leiva-Perez v. Holder*,
   640 F.3d 962 (9th Cir. 2011) ........................................................10, 14

*Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*,
   523 U.S. 26 (1998)..............................................................................16

*Lidie v. California*,
   478 F.2d 552 (9th Cir. 1973) ................................................................4

*Mayfield v. Barr*,
   985 F.2d 1090 (D.C. Cir. 1993).........................................................14

*Nken v. Holder*,
   556 U.S. 418 (2009)...........................................................................13

*Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of San Francisco*,
   688 F.2d 615 (9th Cir. 1982) .........................................................18, 19

*United States v. Armour & Co.*,
402 U.S. 673 (1971) ................................................................19

*United States v. Ford*,
650 F.2d 1141 (9th Cir. 1981) ............................................12

*United States v. Sprint Commc'ns, Inc.*,
855 F.3d 985 (9th Cir. 2017) ............................................12

*W. Coast Seafood Processors Ass'n v. Nat. Res. Def. Council, Inc.*,
643 F.3d 701 (9th Cir. 2011) ............................................12

**Statutes**

28 U.S.C. § 1407 ...................................................................*passim*

**Other Authorities**

J.P.M.L. R. 7.2(a) ...........................................................6, 16, 17

# **INTRODUCTION**

Movants' request for an emergency stay of the approval of amended settlements in this long-running MDL proceeding should be denied because they cannot satisfy the cardinal requirement for a stay—that approval of the amended settlements is likely to cause them irreparable injury. Movants are not members of the amended settlement classes, and the amended settlements do not release their claims. Far from being irreparably injured, Movants now have what they have long demanded—the right to assert their claims, represented by separate counsel.

In support of their tactical attempt to disrupt the amended settlements, Movants offer only a speculative, baseless theory of irreparable injury—that approval of the amended settlements could "potentially" moot the appeals from the denial of their motions to intervene directly in the MDL proceeding. This Court's precedents are to the contrary. Settlement of a lawsuit does not necessarily moot an appeal from the denial of intervention, and certainly not when the lawsuit remains "alive" in this Court by virtue of an appeal from the judgment of dismissal. Movants have already moved to intervene for purposes of appealing the overruling of their objections to the amended settlements.

Further, Movants cannot satisfy any of the other requirements for a stay. They do not attempt to show that they are likely to succeed on the merits of an appeal from the settlement-approval order that they are asking this Court to stay. And they offer

only inadequate, unsupported challenges to the district court's order denying their motions to intervene directly into the MDL proceeding. Movants also fail to show that the public interest and the balance of equities favor a stay. To the contrary, a stay of the amended settlements would impair important public and private interests in finalizing the already long-delayed settlement of this thirteen-year-old matter and in distributing settlement funds to class members who first filed their claims thirteen years ago.

## **BACKGROUND**

### A.   **The Prior Appeals and this Court's Remand Order**

This appeal arises from a long-running MDL proceeding established for the pretrial coordination of actions that indirect purchasers ("IPPs") of cathode-ray tubes ("CRTs") began filing in 2007, alleging that Defendants-Appellees engaged in price fixing between 1995 and 2007. ECF No. 5786 (Davies Ex. 1) at 1-2.[3] In July 2016, the district court approved settlements in which a nationwide settlement class of IPPs released all claims against Defendants-Appellees in exchange for payments totaling $541,750,000. ECF Nos. 4712, 4717.

Settlement-class members from three states appealed the approval of the 2016 settlements, objecting to the release of their claims without compensation. Under the

---

[3]   Unless otherwise stated, "ECF" refers to the district court's docket. Exhibits to the accompanying Declaration of Andrew Rhys Davies dated July 17, 2020 are cited in the format "Davies Ex. _". The motion to stay is cited as "Mot."

plan of allocation prepared by lead counsel and approved by the district court, monetary compensation was limited to the twenty-two Indirect Purchaser State Classes whose state-law damages claims lead counsel actually prosecuted and that the district court had certified. ECF No. 5786 (Davies Ex. 1) at 3.[4] In February 2019, this Court remanded for the district court to reconsider its approval of the 2016 settlements, in light of the district court's subsequent statement that it "erred" in approving the 2016 settlements because they did not "provide[] recovery to class members in the Omitted Repealer States, Massachusetts, Missouri, and New Hampshire." *In re: Cathode Ray Tube* (*CRT*) *Antitrust Litig.*, No. 16-16368 (9th Cir. Feb. 13, 2019), ECF No. 238 at 10-12.

## B.  The Proceedings on Remand

### 1.  The district court appoints separate counsel for Movants, representing nine so-called omitted "repealer" states and eighteen non-repealer states

The district court declined to limit proceedings on remand to addressing claims from the three states that were the subject of the prior appeals and of the February 2019 remand order. In July 2019, the district court appointed separate

---

[4]  The twenty-two Indirect Purchaser State Classes comprise IPPs from Arizona, California, the District of Columbia, Florida, Hawaii, Iowa, Kansas, Maine, Michigan, Minnesota, Mississippi, Nebraska, Nevada, New Mexico, New York, North Carolina, North Dakota, South Dakota, Tennessee, Vermont, West Virginia, and Wisconsin. ECF No. 1526 ¶¶ 244-45; ECF No. 3906 at 1-2 ¶ 2; ECF No. 4712 at 36 ¶ 1.

3

counsel for purported plaintiffs from twenty-seven states that were not to receive monetary compensation under the 2016 settlements: nine purported "repealer" states (the "Omitted Repealer States" or "ORS"),[5] and eighteen non-repealer states (the "NRS").[6] ECF No. 5518. This motion to stay is filed by two of the three attorneys appointed to represent the ORS (Ms. Moore and Mr. Scarpulla) and the attorney appointed to represent the NRS (Ms. Kirkham).

### 2. The district court rules that Movants cannot intervene directly in the MDL proceeding, and invites them to file their claims in a proper forum and then seek transfer into the MDL proceeding

In August 2019, twenty-eight claimants from the nine ORS moved to intervene as plaintiffs and class representatives,[7] and to amend IPPs' complaint to

---

[5]      Under *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977), IPPs have no federal-law claim for monetary relief in a price-fixing case. The laws of some states (known as "repealer" states) may provide such relief. States that do not afford such relief are known as "non-repealer" states. ECF No. 5786 (Davies Ex. 1) at 3 & n.8.

     The "ORS" are Massachusetts, Missouri, and New Hampshire, plus Arkansas, Montana, Oregon, Rhode Island, South Carolina, and Utah. ECF No. 5518 at 1. Defendants-Appellees do not concede that the "ORS" are, in fact, repealer states. To the contrary, it has been established in this litigation that at least three of those states—Arkansas, Rhode Island, and Montana—do not afford IPPs a claim based on alleged price fixing, ECF No. 597 at 30-31; ECF No. 665 at 24, 26 ¶ 14; ECF No. 768 at 3-5, and the Attorney General of Arkansas even submitted a statement of interest in this litigation as a "Non-Repealer State," ECF No. 4462 at 1.

[6]      The "NRS" are Alabama, Alaska, Colorado, Connecticut, Delaware, Georgia, Idaho, Indiana, Kentucky, Louisiana, Maryland, New Jersey, Ohio, Oklahoma, Pennsylvania, Texas, Virginia, and Wyoming. ECF No. 5518 at 2; ECF No. 5646 at 2.

[7]      *See Lidie v. California*, 478 F.2d 552, 555 (9th Cir. 1973) (motion to add unnamed class members as class representatives is "actually a motion to intervene").

assert state-law damages claims that lead counsel did not prosecute to Movants' satisfaction or at all. ECF No. 5567. A claimant from Ohio—a non-repealer state—sought to intervene and to amend the IPPs' complaint to seek equitable monetary relief under federal law on behalf of purported plaintiffs in the eighteen NRS. ECF No. 5565. After the district court ruled that the proposed intervenors could not amend someone else's complaint, ECF Nos. 5626, 5628 (Davies Ex's 2, 3), in November 2019, Movants renewed their motions, this time seeking intervention and permission to file their own complaints directly in the MDL proceeding, ECF Nos. 5643, 5645.

Defendants-Appellees opposed intervention and amendment on several grounds, including that the motions were untimely because it has been clear for the better part of a decade that the IPPs were not (1) asserting state-law damages claims on behalf of the ORS or (2) seeking equitable monetary relief on behalf of the NRS. ECF No. 5663 (Davies Ex. 4) at 6-14, 27-29. Defendants-Appellees also showed that the threatened claims would not be viable even if intervention were permitted, because, *inter alia*, the relation-back doctrine does not save Movants' untimely claims from dismissal on time-bar grounds, and because the NRS claim for equitable monetary relief is barred by controlling authority. ECF No. 5663 (Davies Ex. 4) at 14-20, 24-26, 29-31. In a February 2020 order, the district court agreed with Defendants-Appellees that the MDL statute, 28 U.S.C. § 1407, does not permit

Movants to intervene and file new complaints directly in the MDL proceeding, and therefore did not reach Defendants-Appellees' other arguments. ECF No. 5684 (Davies Ex. 5).

As the district court held, the plain language of § 1407 limits the jurisdiction of an MDL court to actions that "*are pending*" in federal court *before* they are transferred into the MDL proceeding. 28 U.S.C. § 1407; *see* ECF No. 5684 (Davies Ex. 5) at 3; *infra* at 15-17. The district court further noted that it would be inconsistent with the statutory scheme to allow an action to be filed directly in an ongoing MDL proceeding, as such an action would have no "home federal court" to which it could be remanded for trial. *Id.* at 5; *see infra* at 16-17. Therefore, the district court invited Movants to "file their claims in the appropriate forum(s) and seek transfer from the JPML or, if properly filed in the Northern District of California, 'request assignment of [their] actions to the Section 1407 transferee judge in accordance with applicable local rules.'" ECF No. 5684 (Davies Ex. 5) at 6 (quoting J.P.M.L. R. 7.2(a)).

In April 2020, the district court declined to reconsider its February 2020 order denying intervention, refusing to permit Movants to present arguments on reconsideration that they failed to advance during briefing on the intervention

motions. ECF No. 5708 (Davies Ex. 6).[8] Movants now advance those same waived arguments in support of their motion to stay. Mot. at 10-12.

### 3. The district court approves amended settlements that preserve Movants' ability to assert their claims

In September 2019, a mediation process supervised by Magistrate Judge Jacqueline Scott Corley resulted in amended settlements that resolve and release *only* the claims of IPPs in the twenty-two Indirect Purchaser State Classes. Unlike the 2016 settlements, the amended settlement do not include a nationwide settlement class, and therefore do not release any of Movants' claims. ECF No. 5786 (Davies Ex. 1) at 5-6. To the contrary, Movants expressly are "not bound" by the amended settlements. ECF No. 5587-1, Ex. A ¶ 1; Ex. B. ¶ 1; Ex. C ¶ 1; Ex. D ¶ 1; Ex. E ¶ 1; Ex. F ¶ 1 (Davies Ex. 7).[9] In exchange for narrowing the release to preserve Movants' ability to assert their claims, Defendants-Appellees receive a refund of $29 million of the original $541,750,000 settlement amount. That refund is fully offset by a $29 million reduction in the award of attorney's fees. ECF No. 5786 (Davies Ex. 1) at 5-6. Defendants engaged in two post-remand mediations with the ORS, ECF No. 5416 at 5-6; ECF No. 5617, which did not result in a settlement.

---

[8]      In the briefing on Movants' renewed motions to intervene, Movants presented only partial and inadequate responses to Defendants-Appellees' arguments concerning the limited authority of an MDL court. ECF No. 5670 at 9, 18-19, n.8; ECF No. 5668 at 4-5.

[9]      The 2016 settlement agreements appear at ECF No. 3862-1, 3862-2, 3862-3, 3862-4, 3862-5, and ECF No. 3876-1.

Movants objected to the amended settlements. They objected to being carved out of the release (which would have allowed them to pursue their long-threatened claims), and sought instead to compel the settling parties to include them in a global settlement. ECF Nos. 5607, 5732. The district court overruled Movants' objections, holding that they lack standing because they are not members of the amended settlement classes and because the amended settlements do not release their claims. ECF No. 5695 at 6-7, 18-19; ECF No. 5786 (Davies Ex. 1) at 7-10. As the district court aptly noted, under the amended settlements, Movants "retain any claims that they previously possessed, if any, and they are free to pursue those claims against the Defendants." ECF No. 5695 at 19. Following a final approval hearing, on July 13, 2020, the district court entered an order vacating the 2016 settlements and approving the amended settlements. ECF No. 5786 (Davies Ex. 1).

In June 2020, this Court dismissed these appeals for lack of appellate jurisdiction insofar as Movants sought to appeal from preliminary approval of the amended settlements. *In re: Cathode Ray Tube* (*CRT*) *Antitrust Litig.*, No. 20-15697 (9th Cir. June 9, 2020), ECF No. 20. This Court noted that Movants may file a *post*-approval motion for intervention for purposes of appealing from the overruling of their objections and, if the district court denies that motion, they may appeal from such denial. *Id.* at 4. Movants have filed such a motion. ECF No. 5792.

8

### 4. The district court denies a stay because Movants fail to show that the amended settlements are likely to cause them irreparable injury

In May 2020, Movants moved to stay the settlement-approval proceedings pending the outcome of this appeal, advancing the same arguments that they make here. ECF No. 5718. In June 2020, the district court denied that motion because Movants did not show that the amended settlements are likely to cause them irreparable injury. ECF No. 5774 (Davies Ex. 8).

As the district court ruled, approval of the amended settlements would not moot the present appeal from the denial of their motions to intervene in the MDL proceeding. Due to the continued pendency of claims involving other parties, final judgment effectuating the amended settlements will neither end the MDL proceeding nor result in dismissal of the complaint that Movants wish to amend. ECF No. 5774 (Davies Ex. 8) at 5-6. Further confirming that the district court's approval of the amended settlements will not finally end the proceeding in which Movants seek to intervene, the district court noted that Movants would have an opportunity to seek appellate review of the overruling of their objections to the amended settlements by moving for intervention for purposes of appeal, ECF No. 5774 (Davies Ex. 8) at 7, which they have now done, ECF No. 5792.

# **ARGUMENT**

## **THE SETTLEMENT-APPROVAL ORDER SHOULD NOT BE STAYED**

### A. **Movants Have Not Shown that Approval of the Amended Settlements Is Likely to Cause Them Irreparable Injury**

A movant for a stay pending appeal "has the burden of showing that irreparable injury is *likely* to occur during the period before the appeal is decided." *Doe #1 v. Trump*, 957 F.3d 1050, 1059 (9th Cir. 2020) (emphasis added) (citing *Leiva-Perez v. Holder*, 640 F.3d 962, 968 (9th Cir. 2011)). Demonstrating that irreparable injury is "the more probable or likely outcome" represents the "minimum threshold showing for a stay pending appeal." *Al Otro Lado v. Wolf*, 952 F.3d 999, 1007 (9th Cir. 2020) (citing *Leiva-Perez*, 640 F.3d at 968). When—as here—that showing is not made, "a stay may not issue, regardless of the petitioner's proof regarding the other stay factors." *Doe #1*, 957 F.3d at 1058 (citing *Leiva-Perez*, 640 F.3d at 965).

Far from causing them irreparable injury, the amended settlements provide Movants what they have long demanded. As amended, the settlements do not release Movants' claims without compensation. To the contrary, Movants' right to assert their claims is preserved, and the district court has appointed separate counsel to prosecute them. *Supra* at 3-4, 7. Against this backdrop, Movants offer only a facially speculative, legally erroneous irreparable-injury argument that falls far short of meeting their burden.

10

Movants posit that approval of the amended settlements "could potentially" moot these appeals from the denial of their motions to intervene in the MDL proceeding, or, perhaps, create a "lack of certainty" as to whether these appeals are moot. Mot. at 13, 16. Contrary to Movants' position, however, a stay cannot be granted based on such "speculative arguments" of irreparable injury. *Doe #1*, 957 F.3d at 1059; *see also Al Otro Lado*, 952 F.3d at 1007-10 (rejecting irreparable-injury argument that was based on "speculation"). Movants go on to speculate further that such a "potential[]" future dismissal of their intervention appeals on mootness grounds "may," or "could potentially," undermine the relation-back argument that Movants advance in an effort to defend their stale claims from dismissal on time-bar grounds. Mot. at 13-14.[10] But Movants' claims are untimely, not because of the amended settlements, but because of their extended failure to assert those claims long after it was clear that IPPs were not doing so.

Moreover, Movants' "potential[]" mootness argument is legally unsupportable. Contrary to their contention, "the parties' settlement and dismissal of a case after the denial of a motion to intervene does not as a rule moot a putative-

---

[10] The district court has not reached the issue, but Defendants-Appellees have shown that Movants' relation-back argument is ill-founded and therefore would not save Movants' claims from dismissal on time-bar grounds even if they were permitted to intervene. ECF No. 5663 (Davies Ex. 4) at 14-20, 24-26. Movants also now correctly acknowledge, Mot. at 14 n.2 that they are not assisted by *American Pipe* tolling, which, even when it applies, tolls only *individual* claims, not *class* claims, *see China Agritech, Inc. v. Resh*, 138 S. Ct. 1800, 1804 (2018).

intervenor's appeal." *United States v. Sprint Commc'ns, Inc*., 855 F.3d 985, 990 (9th Cir. 2017). An appeal is moot only if it has become "impossible" for this Court to award a prevailing appellant "any effectual relief whatever." *Id*. (citing *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12 (1992)). And an appeal from a denial of intervention therefore is not moot if the underlying litigation remains "alive" in this Court because there is *also* an appeal pending from the final judgment. *Canatella v. California*, 404 F.3d 1106, 1110 n.1 (9th Cir. 2005).

As this Court noted in its recent Order, Movants can seek appellate review of the amended settlements by filing a post-approval motion to intervene for purposes of appealing the overruling of their objections to the amended settlements, and, if that motion is denied, appealing such denial to this Court. *In re: Cathode Ray Tube* (*CRT*) *Antitrust Litig*., No. 20-15697 (9th Cir. June 9, 2020), ECF No. 20 at 4. Movants now have availed themselves of this route to seek to ensure that the underlying litigation in which they wish to intervene remains "alive" in this Court while their intervention-related appeals are pending. ECF No. 5792. They are therefore not assisted by cases, Mem. at 15-16, in which intervention appeals had become moot because the actions in which the appellants sought to intervene were finally "over," *W. Coast Seafood Processors Ass'n v. Nat. Res. Def. Council, Inc*.,

643 F.3d 701, 704 (9th Cir. 2011), making it impossible for this Court to afford relief.[11]

### B. Movants Also Have Not Made the Required Strong Showing that They Are Likely to Succeed on the Merits of an Appeal from the Settlement-Approval Order

To secure a stay pending appeal, a movant must meet the "high standard of showing a *strong* likelihood of success on the merits." *Doe #1*, 957 F.3d at 1062 (emphasis in original); *see also Al Otro Lado*, 952 F.3d at 1010 ("An applicant for a stay pending appeal must make 'a strong showing that he is likely to succeed on the merits.'") (quoting *Nken v. Holder*, 556 U.S. 418, 434 (2009)). Movants fail to meet this high standard.

Tellingly, Movants make no attempt to show that they are likely to succeed in a challenge to the settlement-approval order that they are asking this Court to stay. Nor could they. Movants are not members of the amended settlement classes, they are "not bound" by the amended settlements, and their claims are not released thereby. As the district court correctly held, ECF No. 5786 (Davies Ex. 1) at 7-10, Movants have no cognizable objection to amended settlements that leave them free to litigate their claims. *In re First Capital Holdings Corp. Fin. Prod. Sec. Litig.*, 33

---

[11]    *See W. Coast Seafood Processors Ass'n v. Nat. Res. Def. Council, Inc.*, 643 F.3d 701 (9th Cir. 2011) (appeal was moot because the underlying case had been resolved on the merits and not appealed); *United States v. Ford*, 650 F.2d 1141 (9th Cir. 1981) (appeal was moot because petitioner had voluntarily dismissed the proceeding into which the appellant wished to intervene).

F.3d 29 (9th Cir. 1994) (appellant who was not an aggrieved settlement-class member lacked standing to object to proposed settlement or to appeal from the overruling of her objections); *In re Equity Funding Corp. of Am. Sec. Litig.*, 603 F.2d 1353 (9th Cir. 1979) (same). As the D.C. Circuit has put it, those who, like Movants, "fully preserve their legal rights cannot challenge an order approving an agreement resolving the legal rights of others." *Mayfield v. Barr*, 985 F.2d 1090, 1093 (D.C. Cir. 1993).

Unable to demonstrate that the settlement-approval order is likely to be vacated on appeal, Movants nonetheless contend that it should be stayed because a *different* order—the denial of their earlier motions to intervene in the MDL proceeding—raises serious legal questions for appeal, even if, in their words, they have "only a minimum chance of prevailing on these questions." Mot. at 10. Movants offer no support for their contention that the settlement-approval order can be stayed without a showing that *it* is likely to be vacated on appeal.[12] Nor are they correct that it is sufficient to show a "minimum" chance of success on appeal.[13] If—

---

[12] *Cf. Doe #1 v. Trump*, 957 F.3d 1050, 1062-68 (9th Cir. 2020) (evaluating whether movant had shown a likelihood of success on the merits of an appeal from the order sought to be stayed); *Al Otro Lado v. Wolf*, 952 F.3d 999, 1010-14 (9th Cir. 2020) (same); *Leiva-Perez v. Holder*, 640 F.3d 962, 971 (9th Cir. 2011) (same).

[13] This Court has acknowledged several verbal formulations of the "minimum quantum of likely success necessary to justify a stay," *Leiva-Perez*, 640 F.3d at 967, including "a reasonable probability," "fair prospect," "substantial probability," "reasonable likelihood," and "reasonable probability," *id*. at 967-68 & n.2 (citations

contrary to Defendants-Appellees' argument—this Court were to conclude that Movants have made a marginally sufficient showing on the irreparable-injury requirement, this Court's sliding-scale approach would require "a *commensurately strong* showing of a likelihood of success on the merits." *Al Otro Lado*, 952 F.3d at 1010 (emphasis added).

Movants do not meet the "high standard of showing a *strong* likelihood of success on the merits" of their intervention appeals. *Doe #1*, 957 F.3d at 1062 (emphasis in original). As the district court recognized in the course of denying their motions to reconsider, Movants waived the arguments that they now seek to present on appeal by not raising them until they sought reconsideration. *Supra* at 6. But even if those arguments were preserved, they are meritless.

The district court's ruling that Movants cannot intervene and file complaints directly in the MDL proceeding is mandated by the plain language of 28 U.S.C. § 1407, and consistent with four well-reasoned district-court decisions, two of them from this Circuit.[14] As all of those courts have recognized, § 1407 limits an MDL

---

omitted), but it has not endorsed Movants' suggestion that a "minimum chance" is sufficient.

[14]    *See In re FCA US LLC Monostable Elec. Gearshift Litig.*, No. 16-MD-02744, 2017 WL 6402992, at *1 (E.D. Mich. Mar. 21, 2017), *reconsideration denied*, No. 16-MD-02744, 2017 WL 6402991 (E.D. Mich. Mar. 23, 2017); *In re Mortg. Elec. Registration Sys.* (*Mers*) *Litig.*, No. MD-09-02119-PHX-JAT, 2016 WL 3931820, at *5-7 (D. Ariz. July 21, 2016); *In re Packaged Ice Antitrust Litig.*, No. 08-MDL-1952, 2011 WL 6178891, at *8 (E.D. Mich. Dec. 12, 2011); *In re Farmers Ins. Exch.*

15

court to adjudicating actions that "*are pending*" in federal court *before* they are transferred into the MDL proceeding. 28 U.S.C. § 1407(a) (emphasis added). As the district court noted, a plaintiff who wishes to join an ongoing MDL proceeding can either (a) file an action in another federal district court and request that the Judicial Panel on Multidistrict Litigation transfer it to the MDL court, or (b) file an action in the district where the MDL proceeding is pending and ask the district court to transfer it into the MDL proceeding pursuant to Judicial Panel on Multidistrict Litigation Rule 7.2(a). ECF No. 5684 (Davies Ex. 5) at 4-6. Section 1407 does not, however, permit a complaint to be filed directly in an ongoing MDL proceeding, bypassing the statutory requirement that an action be "pending" before it becomes part of the MDL proceeding.

The district court's ruling also is supported by several decisions of this Court and of the United States Supreme Court, which make clear that an MDL proceeding is a temporary grouping of "discrete cases" that must each be remanded to its "originating district" at the conclusion of pre-trial proceedings. *Gelboim v. Bank of Am. Corp.*, 574 U.S. 405, 413 (2015) (citing *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 37 (1998)).[15] As the district court correctly noted, it

---

*Claims Representatives' Overtime Pay Litig.*, No. MDL 33-1439, 2008 WL 4763029, at *5 (D. Or. Oct. 28, 2008).

[15]    *See also In re Korean Air Lines Co., Ltd.*, 642 F.3d 685, 700 (9th Cir. 2011) ("Within the context of MDL proceedings, individual cases that are consolidated or coordinated for pretrial purposes remain *fundamentally separate actions*, intended

would be inconsistent with that statutory scheme to permit an action to be initiated by direct filing in an ongoing MDL proceeding, because the resulting action would have no home court to which it could be returned for trial. ECF No. 5684 (Davies Ex. 5) at 4-5.

Movants are not assisted by two out-of-circuit cases in which district courts erroneously permitted the filing of actions directly in an ongoing MDL proceeding. Mot. at 12. One of those courts misunderstood J.P.M.L. Rule 7.2(a) as permitting such direct filings. *In re Takata Airbag Prod. Liab. Litig.*, 379 F. Supp. 3d 1333, 1338 (S.D. Fla. 2019). Rule 7.2(a) makes clear that an action must be "filed in the transferee district" *before* it is transferred into the MDL proceeding. In the other case, *In re Yasmin & Yaz* (*Drospirenone*) *Marketing Sales Practices & Products Liability Litigation*, No. 3:09-MD-02100-DRH, 2011 WL 1375011, at *5 (S.D. Ill. Apr. 12, 2011), the court entered several "agreed order[s]" that, by stipulation of the parties, permitted the filing of new actions directly into the MDL proceeding.[16] Crucially, neither court considered the statutory requirement that an action be "pending" *before* it is transferred into the MDL proceeding. 28 U.S.C. § 1407(a).

---

to resume their independent status once the pretrial stage of litigation is over.") (emphasis added).

[16]     *In re Yasmin & Yaz* (*Drospirenone*) *Mktg., Sales Practices & Prod. Liab. Litig.*, No. 3:09-MD-02100-DRH-PMF (S.D. Ill.), ECF Nos. 669 (Feb. 18, 2010), 1137 (Apr. 21, 2010), 1462 (Dec. 28, 2010).

### C. Movants Have Not Shown that the Public Interest and Balance of Equities Support a Stay

When deciding a motion to stay, the Court must consider "where the public interest lies" and "whether a stay will substantially injure other parties." *Doe #1*, 957 F.3d at 1068. Movants fail to show that these factors support a stay.

First, Movants' unadorned assertion that the public interest supports a stay of the amended settlements, Mot. at 18, ignores the "'strong judicial policy that favors settlements, particularly where complex class action litigation is concerned.'" *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 556 (9th Cir. 2019) (en banc) (quoting *Allen v. Bedolla*, 787 F.3d 1218, 1223 (9th Cir. 2015)).[17]

Movants miss the mark with their contention that, if this Court affirms the district court's denial of their intervention motions, then the district court lacks authority to approve the settlement of certain unidentified Indirect Purchaser State Class claims, *i.e.*, those, if any, that lead counsel added by amending the consolidated amended complaints during the pendency of this MDL proceeding. Mot. at 18-20. That argument is a strawman. There is no question that actions asserting nationwide federal claims were properly transferred into this MDL

---

[17] *See also In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008) ("'[V]oluntary conciliation and settlement are the preferred means of dispute resolution. This is especially true in complex class action litigation. . . .'") (ellipsis in original) (quoting *Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982)).

proceeding pursuant to 28 U.S.C. § 1407, and those claims are therefore properly before the district court. A federal district court may release state-law claims that arise from the same nucleus of operative fact as federal claims that are properly before it, regardless of whether it has an independent basis to exercise subject-matter jurisdiction over the state-law claims. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1288 (9th Cir. 1992).

Second, Movants ignore Defendants-Appellees' compelling interest in resolution of this long-running matter. As this Court has recognized, litigants settle disputes to promote strong, legitimate interests—to "'save themselves the time, expense, and inevitable risk of litigation.'" *Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615, 624 (9th Cir. 1982) (quoting *United States v. Armour & Co.*, 402 U.S. 673, 681 (1971)). Thus, the settlement agreements recite that Defendants-Appellees have agreed to settle "to put to rest with finality all claims" against them, and thereby "to avoid further expense, inconvenience, and the distraction of burdensome and protracted litigation."[18] The IPPs, too, have noted that a stay would impair the interests of the twenty-two Indirect Purchaser State Classes, whose already long-delayed settlement payments would be further delayed. ECF No. 5727 at 12-14.

---

[18]  ECF Nos. 3862-1 at 1-2; 3862-2 at 1-2; 3862-3 at 2; 3862-4 at 2; 3862-5 at 2; 3876-1 at 2.

Finally, this Court has repeatedly held that these strong public and private interests in settlement outrank the interests of tardy intervenors like Movants, who sat on their alleged claims for the better part of a decade before seeking to intervene. *Supra* at 5. In *Allen*, this Court affirmed the denial of a putative class member's intervention motion because it was filed "on the eve of settlement, and threatened to prejudice settling parties by potentially derailing settlement talks." *Allen*, 787 F.3d at 1222.[19] This Court should not countenance Movants' request to delay consummation of an already long-delayed settlement in a thirteen-year-old proceeding so that they can prosecute their untimely intervention motions.

## CONCLUSION

For the foregoing reasons, this Court should deny the motion for a stay pending appeal.

---

[19] *See also Cal. Dep't of Toxic Substances Control v. Commercial Realty Projects, Inc.*, 309 F.3d 1113, 1119 (9th Cir. 2002) (intervention motion was untimely when filed "after the parties settled, more than six years after litigation commenced").

July 17, 2020

Respectfully submitted,

/s/ *Andrew Rhys Davies*
ALLEN & OVERY LLP
Andrew Rhys Davies
andrew.rhys.davies@allenovery.com
1221 Avenue of the Americas
New York, New York 10020
Tel: (212) 610-6300

JOHN ROBERTI
john.roberti@allenovery.com
ALLEN & OVERY LLP
1101 New York Avenue NW
Washington, DC 20005
Tel: (202) 683-3800

*Attorneys for Defendants-Appellees*
*Samsung SDI Co., Ltd.; Samsung SDI*
*America, Inc.; Samsung SDI Mexico S.A.*
*De C.V.; Samsung SDI Brasil Ltda.;*
*Shenzhen Samsung SDI Co., Ltd.; Tianjin*
*Samsung SDI Co., Ltd.; and Samsung SDI*
*(Malaysia) Sdn. Bhd.*[20]

---

[20] Samsung SDI Mexico S.A. de C.V., Samsung SDI Brasil Ltda., Shenzhen Samsung SDI Co., Ltd., and Samsung SDI (Malaysia) Sdn. Bhd. have been dissolved.

*/s/ Jeffrey L. Kessler*
WINSTON & STRAWN LLP
JEFFREY L. KESSLER
jkessler@winston.com
EVA W. COLE
ewcole@winston.com
200 Park Avenue
New York, NY 10166
Tel.: (212) 294-6700

KEVIN B. GOLDSTEIN
kbgoldstein@winston.com
35 W. Wacker Drive
Chicago, IL 60622
Tel.: (312) 558-5600

WEIL, GOTSHAL & MANGES LLP
DAVID L. YOHAI
david.yohai@weil.com
ADAM C. HEMLOCK
adam.hemlock@weil.com
DAVID YOLKUT
david.yolkut@weil.com
767 Fifth Avenue
New York, NY 10153-0119
Tel.: (212) 310-8000

*Attorneys for Defendants-Appellees*
*Panasonic Corporation (f/k/a Matsushita*
*Electric Industrial Co., Ltd.), Panasonic*
*Corporations of North America, and MT*
*Picture Display Co., Ltd.*[21]

---

[21] MT Picture Display Co., Ltd. has been dissolved and completed final liquidation proceedings in Japan on May 23, 2019.

/s/ *John M. Taladay*

BAKER BOTTS LLP
JOHN M. TALADAY
john.taladay@bakerbotts.com
ERIK T. KOONS
erik.koons@bakerbotts.com
700 K Street, NW
Washington, DC 20001
Tel.: (202) 639-7700

*Attorneys for Defendants-Appellees*
*Koninklijke Philips, N.V., Philips North*
*America LLC, Philips Taiwan Limited,*
*and Philips do Brasil, Ltda*

/s/ *Kathy L. Osborn*

FAEGRE DRINKER BIDDLE &
REATH LLP
KATHY L. OSBORN
kathy.osborn@faegredrinker.com
300 N. Meridian Street, Suite 2500
Indianapolis, IN 46204
Tel.: (317) 237-0300

JEFFREY S. ROBERTS
jeff.roberts@faegredrinker.com
1144 15th Street, Suite 3400
Denver, CO 80202
Tel.: (303) 607-3500

*Attorneys for Defendants-Appellees*
*Thomson SA and Thomson Consumer*
*Electronics, Inc.*

/s/ *Donald A. Wall*

SQUIRE PATTON BOGGS (US) LLC
DONALD A. WALL
donald.wall@squirepb.com
1 East Washington Street
Suite 2700
Phoenix, AZ 85004
Tel.: (602) 528-4005

*Attorneys for Defendant-Appellee
Technologies Displays Americas LLC*


/s/ *Eliot A. Adelson*

MORRISON & FOERSTER LLP
ELIOT A. ADELSON
eadelson@mofo.com
JAMES R. SIGEL
jsigel@mofo.com
425 Market Street
San Francisco, CA 94105
Tel.: (415) 268-7000

KIRKLAND & ELLIS, LLP
JAMES H. MUTCHNIK, P.C.
300 North LaSalle
Chicago, IL 60654
Tel.: (312) 862-2000

*Attorneys for Defendants-Appellees
Hitachi Ltd., Hitachi Displays, Ltd. (n/k/a
Japan Display, Inc.), Hitachi Asia, Ltd.,
Hitachi America, Ltd., and Hitachi
Electronic Devices (USA), Inc.*

/s/ *Christopher M. Curran*

WHITE & CASE LLP
CHRISTOPHER M. CURRAN
ccurran@whitecase.com
LUCIUS B. LAU
alau@whitecase.com
DANA E. FOSTER
defoster@whitecase.com
MATTHEW N. FRUTIG
mfrutig@whitecase.com
701 Thirteenth Street, N.W.
Washington, DC  20005
Tel.: (202) 626-3600

*Attorneys for Defendants-Appellees
Toshiba Corporation, Toshiba America,
Inc., Toshiba America Information
Systems, Inc., Toshiba America Consumer
Products, L.L.C., and Toshiba America
Electronic Components, Inc.*

# EXHIBIT 3

**Appeal Nos. 20-15697, 20-15704**

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

_____

IN RE CATHODE RAY TUBE (CRT)
ANTITRUST LITIGATION

*Indirect Purchaser Plaintiffs, et al. v. Toshiba Corporation, et al.*
_____

On Appeal from The United States District Court
For the Northern District of California
The Honorable Jon S. Tigar
No. 07-CV-5944-JST
MDL No. 1917

_____

**APPELLEE INDIRECT PURCHASER PLAINTIFFS'
OPPOSITION TO APPELLANTS'
EMERGENCY MOTION TO STAY**

_____

Mario N. Alioto (56433)
Lauren C. Capurro (241151)
TRUMP, ALIOTO, TRUMP & PRESCOTT LLP
2280 Union Street
San Francisco, CA 94123
Telephone: (415) 563-7200
Facsimile: (415) 346-0679

*Lead Counsel for Indirect Purchaser Plaintiffs, Appellees*

# TABLE OF CONTENTS

INTRODUCTION ................................................................................1

ARGUMENT ......................................................................................2

I.    LEGAL STANDARD..................................................................2

II.   APPELLANTS HAVE NOT SATISFIED THE REQUIREMENTS
FOR A STAY ..............................................................................3

    A. Appellants Fail To Show Irreparable Injury Absent A Stay ..............3

       1.  Appellants Have Not Exhausted Their Other Remedies ...............3

       2.  Speculative Injury Does Not Constitute Irreparable Injury...........5

       3.  IPPs' Amended Settlements Do Not "Drop" The
Nationwide Class From IPPs' Complaint......................................6

       4.  Final Approval Of IPPs' Settlements Will Not Moot
Appellants' Appeals Of The Orders Denying Intervention...........8

       5.  Any Harm To Appellants Is Self-Inflicted ...................................9

       6.  Appellants May Not Raise New Arguments On Appeal..............12

    B. Appellants Fail to Make A Strong Showing Of Likely Success
On The Merits..........................................................................13

       1.  Appellants Rely on the Wrong Legal Standard ..........................14

       2.  Appellants Fail To Make An Especially Strong Showing of
Success On Appeal ....................................................................15

    C. A Stay Will Harm The IPP Settlement Class ...................................17

    D. The Public Interest Weighs Against A Stay .....................................19

III.   CONCLUSION ........................................................................20

# TABLE OF AUTHORITIES

## Cases

*Al Otro Lado v. Wolf*,
952 F.3d 999 (9th Cir. 2020)..........................................................................*Passim*

*Arabian Gas & Oil Dev. Co. v. Wisdom Marines Lines, S.A.*,
No. 16-CV-03801-DMR, 2017 WL 2378060 (N.D. Cal. June 1, 2017)............... 14

*In re Carrier IQ, Inc.*,
78 F. Supp. 3d 1051 (N.D. Cal. 2015)................................................................. 20

*Class Plaintiffs v. City of Seattle*,
955 F.2d 1268 (9th Cir. 1992)............................................................................. 20

*CVLR Performance Horses, Inc. v. Wynne*,
792 F.3d 469 (4th Cir. 2015)................................................................................. 8

*DBSI/TRI IV Ltd. P'ship v. United States*,
465 F.3d 1031 (9th Cir. 2006)............................................................................... 9

*Doe #1 v. Trump*,
957 F.3d 1050 (9th Cir. 2020)........................................................................ 3, 13

*In re Farmers Ins. Exch. Claims Representatives' Overtime Pay Litig.*,
MDL 1439, 2008 WL 4763029 (D. Or. Oct. 28, 2008) ...................................... 15

*Goldie's Bookstore v. Superior Ct.*,
739 F.2d 466 (9th Cir. 1984)................................................................................. 6

*Hawaii-Pac. Venture Capital Corp. v. Rothbard*,
564 F.2d 1343 (9th Cir. 1977)............................................................................. 11

*In re Katz*,
2:19-BK-10596-RK, 2019 WL 2896196
(Bankr. C.D. Cal. May 8, 2019) ........................................................................... 5

*Leiva-Perez v. Holder*,
640 F.3d 962 (9th Cir. 2011)............................................................................... 14

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
No. 11 CV 5450 (NRB), 2017 WL 4174925 (S.D.N.Y. Sept. 8, 2017) ............... 20

ii

*Melendres v. Arpaio*,
784 F.3d 1254 (9th 2015)....................................................................20

*In re Mercury Interactive Corp. Sec. Litig.*,
618 F.3d 988 (9th Cir. 2010)..............................................................13

*In re Mortgage Elec. Registration Sys. (MERS) Litig.*,
MDL 2119, 2016 WL 3931820 (D. Ariz. July 21, 2016)..............15, 16

*Nken v. Holder*,
556 U.S. 418 (2009).................................................................2, 3, 13

*Sammartano v. First Judicial Dist. Court*,
303 F.3d 959 (9th Cir. 2002)..............................................................19

*In re Syncor ERISA Litig.*,
516 F.3d 1095 (9th Cir. 2008)............................................................19

*In re Takata Airbag Products Liab. Litig.*,
379 F. Supp. 3d 1333 (S.D. Fla. 2019)..............................................16

*United States v. Ford*,
650 F.2d 1141 (9th Cir. 1981)..............................................................9

*United States v. Sprint Comm., Inc.*,
855 F.3d 985 (9th Cir. 2017)................................................................8

*W. Coast Seafood Processors Ass'n v. Natural Res. Def. Council, Inc.*,
643 F.3d 701 (9th Cir. 2011)................................................................9

*Weinberger v. Romero-Barcelo*,
456 U.S. 305 (1982)...........................................................................19

*In re Yasmin & Yaz (Drospirenone) Mktg., Sales
Practices & Products Liab. Litig.*,
3:09-MD-02100-DRH, 2011 WL 1375011 (S.D. Ill. Apr. 12, 2011)....16

**RULES**

J.P.M.L. Rule 1.1(h) ...........................................................................3

J.P.M.L. Rule 7.2(a)......................................................................4, 16

iii

N.D. Cal. Civ. L.R. 5-1(i)(3) ................................................................. 9

**OTHER AUTHORITIES**

15 Fed. Prac. & Proc. Juris. § 3865 (4th ed.)…………………………….…16

Appellees Indirect Purchaser Plaintiffs ("IPPs") oppose Appellants' Joint Motion to Stay Pending Appeal, Dkt. Entry 20 ("Mot.").

## INTRODUCTION

Appellants' motion borders on the frivolous: Appellants concede that they will not suffer irreparable harm absent a stay and do not establish likelihood of success on the merits. Indeed, they contend that they could file a "tag-along action" and benefit from class action tolling (Mot. at 14 & n.2), which would obviate the need for intervention, these appeals, and a stay of the district court's "Final Approval Order" (ECF No. 5786). Appellants can also appeal the district court's finding that they lack standing to object to the settlements, and prevent IPPs' settlements from becoming final until those appeals are resolved. By resolving those appeals, this Court will be able to protect the interests of all litigants without the need for a stay.

Further, the district court rejected as "unfounded" Appellants' speculative contentions that their claims will be dropped from IPPs' complaint if IPPs' settlements become final, that there may be no action in which to intervene, and that their appeals may be mooted. ECF No. 5774 at 6-7. Appellants fail to show that these findings were incorrect. A stay (which would severely prejudice IPPs) is therefore not required to protect Appellants' interests.

Appellants' dilemma is that even if they are allowed to intervene, their claims *may* be dismissed as time barred unless they relate back. But this possibility would

1

exist regardless of IPPs' settlements. Moreover, as Appellants concede, relation back only applies to amended complaints. Yet Appellants make *no* showing that this Court is likely to permit them to amend IPPs' complaint.

Appellants' counsel are motivated by their own "personal advantage."[1] They have deliberately delayed filing the claims they were appointed to pursue since those claims have turned out to be problematic. Instead, they have tried to scuttle and delay IPPs' $512 million settlements, in the hope that this might force some payment to them. The stay motion should be denied.

## ARGUMENT

## I. LEGAL STANDARD

A stay is a matter of "judicial discretion" and "[t]he party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion." *Al Otro Lado v. Wolf*, 952 F.3d 999, 1006 (9th Cir. 2020) (citations omitted).

In deciding whether to issue a stay pending appeal, courts must consider: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Id*. at 1006-07 (quoting *Nken*

---

[1] ECF No. 5444 (Apr. 9, 2019 Case Management Conf. Tr.), at 27:5-10.

*v. Holder*, 556 U.S. 418, 434 (2009)). "'The first two factors . . . are the most critical'; the last two are reached only '[o]nce an applicant satisfies the first two factors.'" *Id*. at 1007 (quoting *Nken*, 556 U.S. at 434-35).

## II. APPELLANTS HAVE NOT SATISFIED THE REQUIREMENTS FOR A STAY

### A. Appellants Fail To Show Irreparable Injury Absent A Stay

IPPs address the irreparable injury prong first because, where a stay applicant fails to make a sufficient showing regarding irreparable harm, "a stay may not issue, regardless of the [applicant's] proof regarding the other stay factors." *Doe #1 v. Trump*, 957 F.3d 1050, 1058 (9th Cir. 2020) (citations omitted). Moreover, "[s]imply showing some possibility of irreparable injury" absent a stay is insufficient. *Al Otro Lado*, 952 F.3d at 1007 (citation omitted). Instead, a stay applicant must show that irreparable injury "is the more probable or likely outcome." *Id.* at 1007 (citation omitted). Appellants fail to meet this high burden.

#### 1. Appellants Have Not Exhausted Their Other Remedies

Appellants' irreparable injury argument fails because Appellants themselves concede that other options exist for asserting their claims—options that do not require a stay of IPPs' settlements.

First, Appellants recognize that they could file a "tag-along action"[2] and assert

---

[2] "'Tag-along action' refers to a civil action pending in a district court which involves common questions of fact with . . . actions previously transferred to an existing

class action tolling. *See* Mot. at 14 & n.2. Since filing a tag-along action does not require intervention or amendment of IPPs' complaint, Appellants could have filed a tag-along action long ago—and could still do so today—obviating the need for these appeals. Indeed, the district court expressly instructed Appellants to file a tag-along action when it denied their motion to intervene.[3] Second, Appellants told the district court that they could move to amend one or more of the pre-MDL complaints. ECF Nos. 5688 at 2, n. 1; 5692 at 8. Appellants do not explain why they have not pursued these options before seeking this stay.

Lastly, Appellants can appeal the Final Approval Order, which will prevent IPPs' amended settlements from becoming final until those appeals are resolved. In fact, Appellants have already moved to intervene for the purpose of appealing. *See* ECF No. 5792. Appellants' requested stay appears intended to prevent the separate appeals of the Final Approval Order from proceeding, and require them to wait until the instant appeals are resolved. Sequencing the appeals in this manner is unnecessary and inefficient. This Court can protect the interests of all litigants without a stay simply by resolving the appeals of the Final Approval Order on an

---

MDL, and which the Panel would consider transferring under Section 1407." J.P.M.L. Rule 1.1(h).

[3] *See* ECF No. 5684 at 6 ("Movants may file their claims in the appropriate forum(s) and seek transfer from the JPML or, if properly filed in the Northern District of California, 'request assignment of [their] actions to the Section 1407 transferee judge in accordance with applicable local rules.'") (citing J.P.M.L. Rule 7.2(a)).

expedited basis.

Appellants cannot establish *irreparable* injury while these other options remain available to them. *See In re Katz*, 2:19-BK-10596-RK, 2019 WL 2896196, at *1-3 (Bankr. C.D. Cal. May 8, 2019) (irreparable harm cannot be established when opportunity for appellate review remains available).

## 2. Speculative Injury Does Not Constitute Irreparable Injury

Appellants speculate that they will suffer irreparable injury absent a stay because *if* the IPPs' amended settlements become final while their appeals are pending, it "*could potentially* not only moot these appeals, but *could* prevent court-appointed subclass lead counsel from ever advancing the claims currently alleged on behalf of the NRS and ORS Subclasses[.]" Mot. at 13 (emphasis added); *see also id*. at 15 ("unclear" whether there would be a case in which Appellants could intervene).

Appellants further claim that *if* there is no action in which they can intervene, their appeals *may* be dismissed as moot. *See id.* at 16 & n.3 (acknowledging a "lack of certainty" with respect to mootness). Alternatively, *if* this Court reverses the district court's intervention orders, Appellants assert they will have to file new actions, which *may* affect their ability to assert claims on behalf of the ORS and NRS subclasses. *See id.* at 13-14 & n.2 (speculating that they "*could potentially* . . . be barred from employing the relation back doctrine[,]" but contending they could file a "tag along" action and benefit from class action tolling) (emphasis added).

5

As the district court correctly found, Appellants' "statements of 'some possibility of irreparable harm' are insufficient to meet the 'minimum threshold showing' that 'irreparable harm is likely to occur.'" ECF No. 5774 at 6 (citing *Al Otro Lado*, 952 F.3d at 1007). "[S]peculative injury does not constitute irreparable injury." *Goldie's Bookstore v. Superior Ct.*, 739 F.2d 466, 472 (9th Cir. 1984) (citation omitted).

### 3. IPPs' Amended Settlements Do Not "Drop" The Nationwide Class From IPPs' Complaint

Appellants' claims of irreparable injury rest primarily on their incorrect assertion that "the new settlements also provided for the filing of another amended consolidated complaint to drop the allegations of a nationwide class and the claims for relief previously asserted on its behalf." Mot. at 7 (citing ECF Nos. 5585, 5589); *see also id.* at 8, 13 (asserting that IPPs' settlements "would permit an amendment dropping all but the 22 settling states from the litigation" and that "amending the nationwide class out of the operative complaints" could prevent Appellants from advancing the claims of the ORS/NRS).

Significantly, Appellants do not cite to any provision in IPPs' settlements purportedly requiring amendment of the complaint to drop the nationwide class.[4]

---

[4] Appellants cite ECF Nos. 5585 and 5589 (*see* Mot. at 7), but neither filing supports their assertions. ECF No. 5585 is a stipulated order amending the complaint for settlement purposes solely to substitute new plaintiffs for four of the 22 statewide damages classes. ECF No. 5589 is IPPs' Fifth Consolidated Amended Complaint,

That is because there is no such provision; rather, the Amendments to IPPs' settlements provide only that members of the nationwide class who are not also members of the 22 Indirect Purchaser State Classes (*i.e.*, Appellants) are excluded from the *settlement class*, and "are not bound by" the settlements.[5] The Amendments to the settlements say nothing about amending the complaint. *Id.*

Further, Appellants omit that the district court expressly rejected their baseless assertion. *See* ECF No. 5774 at 6 (finding that IPPs' operative complaint, ECF No. 5589, "alleges a Nationwide Class, which includes the ORS and NRS Subclasses") (citing ECF No. 5589 ¶ 243). The district court further found that the nationwide class allegations will remain pending after IPPs' settlements become final because the complaint includes allegations against several non-settling defendants. *Id.* (citing ECF No. 5589 ¶¶ 95-98, 109-115). Thus, the district court concluded that, "if the Ninth Circuit concludes that the ORS and ORS Subclasses are entitled to intervene in this action, both the MDL and the CAC which the Subclasses seek to amend would likely still exist at that time." *Id.* at 6-7. Accordingly, Appellants' concern that there will be no "action" in which they can intervene is "unfounded." *Id.* at 7.

---

filed pursuant to the stipulated order, which continues to allege a nationwide class claim for injunctive relief. *See id.* ¶ 243.

[5] *See, e.g.*, ECF No. 5587-1, Ex. A ¶ 1 (Amendment to Philips Settlement Agreement). *See also* ECF No. 5587-1, Exs. B-F (Amendments to other settlements).

### 4. Final Approval Of IPPs' Settlements Will Not Moot Appellants' Appeals Of The Orders Denying Intervention

The district court likewise correctly concluded that final approval of IPPs' settlements will not moot Appellants' appeals because the MDL will continue after final approval against non-settling defendants. ECF No. 5774 at 7. In addition, in any event, "the parties' settlement and dismissal of a case after the denial of a motion to intervene does not as a rule moot a putative-intervenor's appeal." *United States v. Sprint Comm., Inc.*, 855 F.3d 985, 990 (9th Cir. 2017). This is true where, as here, (i) the "resolution of an action between the original parties is not determinative of the defendant's liability with respect to [the intervenors]"; and (ii) the "disposition of the case does not provide the relief sought by the would-be intervenors," such that the appellate court "can provide an effective remedy on appeal." *Id.* (quoting *CVLR Performance Horses, Inc. v. Wynne*, 792 F.3d 469, 475 (4th Cir. 2015)). The circumstances here easily satisfy this test.

IPPs' amended settlements settle only the claims of the IPPs and class members in the 22 States. *See* ECF No. 5786 at 9. Consequently, final approval of the amended settlements and any final judgment resulting therefrom would "not [be] determinative of defendants' liability with respect to [Appellants]." *Sprint*, 855 F.3d at 990. Nor would final approval of the amended settlements (or any final judgments) "provide the relief sought by the [Appellants]"—namely, permission to intervene in order to assert their claims. *Id.* Because this Court could "provide an effective

remedy on appeal" (*id.*), final approval of IPPs' settlements will not moot Appellants' appeals.[6] Therefore, Appellants' stay motion should be denied.[7]

### 5. Any Harm To Appellants Is Self-Inflicted

"'Self-inflicted wounds are not irreparable injury.'" *Al Otro Lado*, 952 F.3d at 1008 (citations omitted). Any harm suffered by Appellants will be a result of their own tactical decisions, delay and inaction.

For example, the district court first denied Appellants' motions to intervene and amend IPPs' complaint nine months ago on October 15 and 17, 2019 (ECF Nos. 5626 and 5628).[8] Rather than immediately appealing these orders, or pursuing the other options described above, Appellants filed "renewed" motions to intervene. ECF Nos. 5643, 5645. When those motions were denied on February 4, 2020 (ECF

---

[6] *See, e.g., DBSI/TRI IV Ltd. P'ship v. United States*, 465 F.3d 1031, 1037 (9th Cir. 2006) ("Although the district court entered final judgment in the underlying case during the pendency of the appeal, 'the intervention controversy is still alive because, if it were concluded on appeal that the district court had erred in denying the intervention motion . . . then the applicant would have standing to appeal the district court's judgment.'") (internal citation omitted).

[7] Appellants' cases regarding mootness, *see* Mot. at 15-16 (citing *W. Coast Seafood Processors Ass'n v. Natural Res. Def. Council, Inc.*, 643 F.3d 701 (9th Cir. 2011) and *United States v. Ford*, 650 F.2d 1141 (9th Cir. 1981)), are distinguishable because in those cases, the underlying litigation ended. Here, the underlying litigation will continue against non-settling defendants.

[8] The district court denied Appellants' motion to amend, in part, because they filed a proposed amended IPP complaint without providing IPPs' Lead Counsel with a copy or seeking his concurrence in the filing, in violation of N.D. Cal. Civ. L.R. 5-1(i)(3). *See* ECF No. 5628 at 3 n.3.

No. 5684), Appellants again elected not to appeal, and instead filed motions for reconsideration. *See* ECF No. 5688, 5689. It was only after the district court denied these motions, on April 9, 2020 (ECF No. 5708)—and in so doing criticized Appellants for rearguing their prior motion and raising new arguments that they could have raised before (*id*. at 4-5)—that Appellants finally filed appeals on April 13 and 17, 2020. ECF Nos. 5711, 5713.

In other words, Appellants waited *six months* following the denial of their first motion to intervene in mid-October 2019 before they finally appealed in mid-April 2020. Had they appealed in October 2019 and moved to expedite their appeals under Circuit L.R. 27-12(3), they would likely have a decision by now. Even if they had moved to expedite the appeals filed in April, they would have been much closer to a decision than they are now. Instead, Appellants have sought to delay IPPs' settlements by making frivolous objections despite having no standing to do so,[9] and filing appeals of non-final orders.[10]

Moreover, the reason Appellants seek to intervene and amend IPPs' complaint to invoke relation back is because—again, due to their own delay—they failed to

---

[9] *See* ECF Nos. 5786 at 9-10 (Final Approval Order finding that Appellants lack standing because they are not class members and because they failed to demonstrate the "formal legal prejudice" necessary for non-party standing).

[10] *See* Dkt. Entry 20, Order dated June 9, 2020 (order dismissing appeal of preliminary approval order for lack of jurisdiction).

file their claims before the running of statutes of limitations.[11] This Court has affirmed denial of intervention where, as here, the statute of limitations may bar absent class members from bringing a separate action, because that "harm [is] not . . . attributable to the disposition of the class action suit. It is the appellants' own negligence and failure to raise the . . . claims for over seven years that bars them." *Hawaii-Pac. Venture Capital Corp. v. Rothbard*, 564 F.2d 1343, 1345 (9th Cir. 1977).

In addition, IPP Counsel spent over a year negotiating with Appellants' counsel and repeatedly proposed that they would give up a portion of their fee award to allow Appellants and the ORS/NRS classes they seek to represent to remain in the settlements and file claims for compensation.[12] But Appellants' counsel rejected this proposal, demanding instead that the settlements be vacated and re-negotiated, or

---

[11] Appellants' counsel have been counsel of record in this litigation since its inception. They knew no later than October 1, 2012, when IPPs moved to certify only the 22 Indirect Purchaser State Classes (ECF No. 1388), that IPPs were not pursuing injunctive relief for the nationwide class. Appellants' counsel also knew that several ORS claims were dismissed on the merits in 2009 or 2010, *before* class certification, and that other claims were never alleged. IPPs also notified putative class members and Appellants' counsel in 2011 and 2013 of the claims being pursued. *See* ECF Nos. 1063-1, 1063-2, 2511, 2512.

[12] *See, e.g.,* ECF No. 5416 at 5, 7-9 (IPPs' CMC Statement describing IPPs' motion to remand before this Court, and proposed solutions to resolve the objections).

the entire case re-litigated and tried.[13] IPPs were therefore left with no option but to negotiate amended settlements with Defendants.

In sum, the problems Appellants face are not caused by IPPs' amended settlements. They are the result of their own delay and tactical decisions. "That the [Appellants'] asserted harm is largely self-inflicted 'severely undermines' [their] claim for equitable relief." *Al Otro Lado,* 952 F.3d at 1008 (citations omitted).

### 6. Appellants May Not Raise New Arguments On Appeal

Appellants attempt to rebut the district court's finding of no irreparable injury by raising new arguments on appeal. They now contend that "the continued existence of the MDL . . . is not an adequate remedy[,]" because there are additional, previously unidentified problems. *See* Mot. at 17 (arguing without citation to authority that: (1) Appellants "must bring their class action claims by amendment or tag along action while they are class members in an ongoing action"; and (2) renaming settling defendants as parties "may amount to the initiation of a new case against the Defendants, to which the relation back doctrine may no longer apply.").

Appellants did not make these arguments in their stay motion in the district court. *See* ECF No. 5718 at 8-9 (arguing irreparable injury and focusing solely on the possibility that the litigation could end and moot their appeals). This Court

---

[13] *See id.* at 19-31 (Appellants' CMC Statement advocating that the district court should vacate settlement approval and decertify the settlement class).

should therefore decline to consider these arguments. *See In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 992 (9th Cir. 2010) ("We apply a 'general rule' against entertaining arguments on appeal that were not presented or developed before the district court.") (citation omitted).

Appellants' new arguments also do nothing to further their cause. They ignore the district court's finding that Appellants will remain "class members in an ongoing action" (Mot. at 17), since they will remain members of the nationwide class alleged in IPPs' operative complaint as part of the MDL. ECF No. 5774 at 6-7. According to Appellants' own reasoning, therefore, they may still file a tag-along action and benefit from class action tolling. *See* Mot. at 14 & n.2. Further, Appellants do not explain how the potential inconvenience they may encounter "navigat[ing] a morass of unique and complex issues" (*id*. at 18) constitutes irreparable harm.

In sum, Appellants have failed to demonstrate that irreparable injury absent a stay "is the more probable or likely outcome." *Al Otro Lado*, 952 F.3d at 1007 (citation omitted). For this reason alone, Appellants' stay motion must be denied. *See Trump*, 957 F.3d at 1058-59.

## B. Appellants Fail To Make A Strong Showing Of Likely Success On The Merits

Appellants' stay motion must also be denied because they have failed to make a "strong showing that [they are] likely to succeed on the merits" of their appeals. *Al Otro Lado*, 952 F.3d at 1010 (quoting *Nken*, 556 U.S. at 434).

13

## 1. Appellants Rely On The Wrong Legal Standard

According to Appellants, they have made a "strong showing" on the merits—not because their appeals are likely to succeed, but because the appeals supposedly involve serious legal questions and/or matters of first impression in the Ninth Circuit that relax the "strong showing" requirement. *See* Mot. at 10-11. But as Appellants' own authorities makes clear (*see id.*), this "lesser threshold" only applies where the applicant can also "demonstrate that the balance of hardships under the [irreparable injury and harm to other parties] factors tilts *sharply* in its favor." *Arabian Gas & Oil Dev. Co. v. Wisdom Marines Lines, S.A.*, No. 16-CV-03801-DMR, 2017 WL 2378060, at *3 (N.D. Cal. June 1, 2017) (emphasis added) (citation omitted).

Here, as discussed above, Appellants have failed to demonstrate that they will suffer *any* irreparable injury, let alone that their (non-existent) injury tilts the balance of the hardships "sharply" in their favor. Accordingly, Appellants cannot rely on this "lesser threshold" to satisfy their burden. They must instead make an "especially strong showing" of success on the merits given that "the[ir] showing of irreparable harm is weak at best." *Al Otro Lado*, 952 F.3d at 1010, 1011; *see also Leiva-Perez v. Holder*, 640 F.3d 962, 968 (9th Cir. 2011) (movant must make "a strong argument on which he could win"). Appellants fail to make such a showing.[14]

---

[14] Although IPPs did not oppose Appellants' request to intervene to file their complaint (ECF No. 5664), IPPs oppose Appellants' request for a stay. IPPs thus

## 2. Appellants Fail To Make An Especially Strong Showing of Success On Appeal

Appellants fall far short of making an "especially strong showing" of likely success on appeal. *Al Otro Lado*, 952 F.3d at 1011. Rather, they simply claim that the appeals of the orders denying intervention "concern[] uncharted areas of MDL law." Mot. at 11. Even assuming this were true, it would not satisfy Appellants' burden here, because a stay is unnecessary to prevent any irreparable injury to Appellants, while it will cause significant harm to the IPPs. *See* Sections II. A & C.

Contrary to Appellants' contention, moreover, the district court's order denying intervention was neither "novel" (Mot. at 12) nor improper. The district court relied upon the operative statute (28 U.S.C. § 1407), *In re Mortgage Elec. Registration Sys. (MERS) Litig.*, MDL 2119, 2016 WL 3931820 (D. Ariz. July 21, 2016), and *In re Farmers Ins. Exch. Claims Representatives' Overtime Pay Litig.*, MDL 1439, 2008 WL 4763029 (D. Or. Oct. 28, 2008). In *MERS,* the court dismissed claims for lack of jurisdiction because the claimant had never filed a lawsuit in federal court. *See* 2016 WL 3931820, at *5. *See also Farmers,* 2008 WL 4763029, at *3 (same).

respond to Appellants' basis for that stay, which necessarily implicates the merits of intervention.

Appellants contend that the district court's order was wrongly decided because in two out-of-circuit cases,[15] the plaintiffs filed directly in the MDL court.[16] But "direct filing" in an MDL court is merely "a way to eliminate the expense and delay of waiting for tag-along cases to be transferred by the Panel." 15 Fed. Prac. & Proc. Juris. § 3865 (4th ed.). It does not eliminate the requirement that a separate case be filed in the district court where the MDL is pending, in accordance with J.P.M.L. Rule 7.2(a). Here, as in *MERS*, Appellants have yet to file cases in the Northern District of California where the MDL is pending (or anywhere else), despite the district court's invitation to do so.[17]

Appellants suggest that they have not filed cases because their claims *may* not relate back, and that they need to amend IPPs' complaint in order to invoke relation back (while elsewhere asserting that they could file a tag-along action and assert class action tolling, obviating the need for relation back).[18] Yet, Appellants cite no

---

[15] *See* Mot. at 12, citing *In re Takata Airbag Products Liab. Litig.*, 379 F. Supp. 3d 1333 (S.D. Fla. 2019) and *In re Yasmin & Yaz (Drospirenone) Mktg., Sales Practices & Products Liab. Litig.*, 3:09-MD-02100-DRH, 2011 WL 1375011 (S.D. Ill. Apr. 12, 2011).

[16] *Yasmin,* 2011 WL 1375011, at *1 ("The MDL cases originate from three sources: (1) cases filed directly in this MDL that originated in this Court's judicial district ('local cases'")); *Takata,* 379 F. Supp. 3d at 1336 ("Plaintiffs directly filed three complaints in this MDL proceeding").

[17] *See* ECF No. 5684 at 6; *see also MERS,* 2016 WL 3931820, at *6 (plaintiff "never filed his own case or had his case transferred to the court by the Judicial Panel").

[18] *Compare* Mot. at 13-14 *with* Mot. at 14 & n.2.

16

authority for their position that they may intervene and amend IPPs' complaint. *See* Mot. at 13, 17-18. Thus, Appellants fail to make an especially strong showing that they will succeed on appeal. Accordingly, this factor too weighs against a stay.

### C.     A Stay Will Harm The IPP Settlement Class

Because Appellants "ha[ve] not 'satisfie[d] the first two factors,' we need not dwell on the final two factors—'harm to the opposing party' and 'the public interest.'" *Al Otro Lado,* 952 F.3d at 1014 (citation omitted). Even so, the "balance of equities" weighs strongly against a stay of final approval for IPPs' amended settlements. *Id.* at 1015.

As already demonstrated, Appellants will not suffer *any* injury, much less an irreparable injury, if IPPs' amended settlements are finally approved by this Court. Appellants' claims are not released by the amended settlements, and they are not otherwise adversely impacted. ECF No. 5786 at 9-10. In addition, IPPs' complaint will not be amended to drop the nationwide class; the MDL will not terminate if final judgments are entered; and Appellants' appeals of the intervention orders will not be mooted. The IPPs' amended settlements simply return Appellants to their original position, as if they had never been included in the IPPs' settlements.

In contrast to the Appellants' weak showing of harm if their stay motion is denied, the harm caused to IPPs and class members in the 22 States by a stay will be substantial. Claimants have been waiting for distribution of the funds for almost *five*

*years,* for injuries dating back to the mid-1990's. The district court has approved the amended settlements, concluding that the adequacy of representation concerns raised regarding the original settlements are moot (ECF No. 5786 at 17-18), and that the settlements otherwise satisfy Rule 23(e). *Id.* at 16-22. Appellants' requested stay would delay distribution to claimants for another lengthy and indefinite period.

IPP class members have already been prejudiced as a result of the five-year delay in distributing the settlement funds. Two IPP class representatives have passed away during this period and never benefited from the district court's award for their service. The same is likely true of many other claimants. Still other claimants will have moved during the long delay, making it difficult for the claims administrator to locate them. Any additional delay will only mean more claimants may not receive their share of the settlements.

The distribution issues caused by the delay are compounded by the difficult and financially uncertain times in which we are living. Many claimants are facing financial hardship and are in need of funds. Appellants' suggestion that these claimants are better off leaving their money in escrow making less than 1% interest demonstrates a callous disregard for their former clients' interests (Appellants' counsel previously represented clients and class members from the 22 States in this litigation). The substantial harm to IPPs caused by further delay weighs against the requested stay.

### D.     The Public Interest Weighs Against A Stay

"The public interest inquiry primarily addresses impact on non-parties rather than parties." *Sammartano v. First Judicial Dist. Court*, 303 F.3d 959, 974 (9th Cir. 2002). The Supreme Court directs that "in exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Weinberger v. Romero–Barcelo*, 456 U.S. 305, 312 (1982).

Appellants fail to articulate any public interest favoring a stay beyond an interest to themselves. *See* Mot. at 19-20. Indeed, they disregard the strong public interest favoring settlement of complex, class action litigation, which weighs strongly against a stay of this 13-year old case.[19] Appellants contrive a public interest by contending that many of the 22 states have the same jurisdictional problem they have because representatives for those claims were added through amendments to the operative MDL complaints. Mot. at 19-20 (citing ECF Nos. 5585, 5589). Appellants conclude, therefore, that staying IPPs' settlements until this Court can resolve this issue "would prevent unnecessary judicial labor[.]" *Id.* at 19.

Contrary to Appellants' contentions, all 22 of IPPs' state law claims were alleged by plaintiffs with standing in separate, pre-MDL actions. These actions were

---

[19] *See In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008) ("[T]here is a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned.") (citation omitted).

properly transferred to this Court by the JPML and consolidated in the MDL, or related to the MDL pursuant to L.R. 3-12(b). *See, e.g.*, ECF Nos. 13, 122, 149, 157, 253. The district court therefore has subject matter jurisdiction over IPPs' 22 state law claims.[20] IPPs' amendments to the consolidated complaints simply substituted new plaintiffs for claims that were already properly part of the MDL. *See* ECF Nos. 5585, 5589. This is accepted procedure in numerous MDL proceedings.[21]

In any event, a court need not "actually exercise subject matter jurisdiction over the claims to approve their release" where, as here, the state law claims arise from the same nucleus of operative facts as the federal claims properly before it. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1288 (9th Cir. 1992). Thus, there is no question that the district court has jurisdiction to approve IPPs' settlements.

## III.  CONCLUSION

For all of the foregoing reasons, Appellants' motion to stay the district court's final approval of IPPs' amended settlements should be denied.

---

[20] *See Melendres v. Arpaio*, 784 F.3d 1254, 1262 (9th Cir. 2015) ("[O]nce the named plaintiff demonstrates her individual standing to bring a claim, the standing inquiry is concluded, and the court proceeds to consider whether the Rule 23(a) prerequisites for class certification have been met.").

[21] *See, e.g.*, *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1125 (N.D. Cal. 2015) (permitting MDL plaintiffs to add plaintiffs to represent states alleged in the existing complaint); *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11 CV 5450 (NRB), 2017 WL 4174925, at *1 (S.D.N.Y. Sept. 8, 2017) (same).

Dated: July 17, 2020

Respectfully submitted,

_/s/ Mario N. Alioto_
Mario N. Alioto

Mario N. Alioto (56433)
Lauren C. Capurro (241151)
**TRUMP, ALIOTO, TRUMP &**
**PRESCOTT LLP**
2280 Union Street
San Francisco, CA 94123
Telephone: (415) 563-7200
Facsimile:(415) 346-0679

_Lead Counsel for Indirect Purchaser_
_Plaintiffs, Appellees_

# EXHIBIT 4

*Trump Alioto Trump & Prescott*
ATTORNEYS LLP
2001 Union Street, Suite 482
San Francisco, California 94123
(415) 563-7200
FAX (415) 346-0679

January 25, 2022

**_Via Email_**

Tracy Kirkham
COOPER & KIRKHAM, P.C.
357 Tehama St # 2
San Francisco, CA 94103
trk@coopkirk.com

**Re:**     **_In Re: Cathode Ray Tubes (CRT) Antitrust Litigation,_**
             **No. 07-cv-5944 JST, MDL No. 1917**

Dear Counsel:

        In accordance with the Court's orders approving the Settlement Agreements and awarding fees in this litigation, Lead Counsel will make a distribution of attorneys' fees to your firm in the amount of $1,406,873.06, plus Court awarded expenses of litigation.

        This fee distribution is based on the fee allocation ordered by Judge Tigar in 2017 (ECF No. 5122), plus the new lodestars for additional work done to obtain the amended settlements, and the new, reduced fee award.[1] To arrive at your firm's fee award, we calculated the pro rata shares of each firm based on the above amounts, applied these pro rata shares to the total fee award (including interest), and made a 50% downward adjustment to your fee award due to your unsuccessful efforts to challenge approval of the amended settlements.

        Please provide us with a W-9 and wiring instructions to laurenrussell@tatp.com by January 31, 2022.

                        Very truly yours,

                        /s/ Mario N. Alioto
                        Mario N. Alioto
                        Lead Counsel for the Indirect Purchaser Plaintiffs

---

[1] Lodestar for work done to defend the original settlements has not been included, although we reserve the right to include it and/or to propose an alternate fee allocation in any further fee allocation proceedings with your firm.

# EXHIBIT 5

Law Offices
## COOPER & KIRKHAM, P.C.

357 TEHAMA STREET, SECOND FLOOR
SAN FRANCISCO, CALIFORNIA 94103
(415) 788-3030
FAX (415) 882-7040

WRITER'S DIRECT CONTACT
(415) 788-3030 ext. 102
trk@coopkirk.com

January 31, 2022

<u>Via Email</u>

Mario Alioto
Trump Alioto Trump & Prescott, LLP
2001 Union Street, Suite 482
San Francisco, CA 94123

  Re: *In re Cathode Ray Tubes (CRT) Antitrust Litigation,*
    No. 07-CV-5944 JST, MDL No. 1917

Dear Counsel:

  Reference is made to your letter of January 25, 2022. I do not agree to the suggested fee allocation to my firm set forth in your letter. Pursuant to the Court's Order of September 24, 2015 (ECF 4077), which applies to all fee issues in this MDL proceeding and provides that "all aspects of such allocation [among counsel] must remain entirely subject to the Special Master's review . . . [and] Report and Recommendation," any suggestions you may have for allocation of any aggregate fee awarded in this matter must be submitted to Special Master Martin Quinn for his consideration. Please advise that you will comply with the Court's Order.

    Sincerely,

    Tracy R. Kirkham