Mario N. Alioto (56433)
Joseph M. Patane (72202)
Lauren C. Capurro (241151)
TRUMP, ALIOTO, TRUMP & PRESCOTT, LLP
2001 Union Street, Suite 482
San Francisco, CA 94123
Telephone: (415) 563-7200
Facsimile: (415) 346-0679
Email: malioto@tatp.com
         jpatane@tatp.com
         laurenrussell@tatp.com

***Lead Counsel for the Indirect
Purchaser Plaintiffs for the 22 States***

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | MASTER FILE NO. 4:07-cv-5944 JST |
| | MDL NO. 1917 |
| This Document Relates to: | **INDIRECT PURCHASER PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR DISTRIBUTION OF ATTORNEYS' FEES, EXPENSES, AND INCENTIVE AWARDS** |
| *INDIRECT PURCHASER ACTIONS FOR THE 22 STATES* | |
| | Hearing Date: May 12, 2022 |
| | Time: 2:00 p.m. |
| | Courtroom: 6, 2nd Fl. (Oakland) |
| | Judge: Hon. Jon S. Tigar |

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................................................ ii

I.  INTRODUCTION .......................................................................................................... 1

II. ARGUMENT................................................................................................................... 2

A.  Objectors' Negative Relative Contribution To The Result Achieved For The 22
    Indirect Purchaser States Classes Warrants A Reduced Fee Allocation ................. 2

B.  Objectors' Assertion That They Were Merely Vigorously Representing Their
    ORS/NRS Clients Is Pretextual And Refuted By The Record.................................. 5

    1.  Objectors Made Numerous Objections To The Substance Of The Amended
        Settlements, Not Merely The Timetable For Final Approval ............................ 6

    2.  Objectors Deliberately Delayed The Intervention Appeals Even Though
        Expediting Them Would Have Prevented Them From Becoming Moot............ 9

    3.  If Objectors Had Been Vigorously Representing The ORS/NRS, They
        Would Have Sought To Add Them To The Litigation Long Ago ................... 10

C.  Objectors' Alternative Fee Proposals Are Untenable Because They Would Result
    In Objectors Receiving More Than Their Pro Rata Share Of The Fee Award ........ 10

    1.  Objectors' First Fee Proposal Must Be Rejected .............................................. 11

    2.  Objectors' Alternative Fee Proposal Must Be Rejected.................................... 12

III. CONCLUSION ............................................................................................................. 15

INDIRECT PURCHASER PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR DISTRIBUTION OF
ATTORNEYS' FEES, EXPENSES, AND INCENTIVE AWARDS

# <u>TABLE OF AUTHORITIES</u>

**CASES**

*Class Plaintiffs v. Jaffe & Schlesinger, P.A.*,
   19 F.3d 1306 (9th Cir. 1994) ............................................................................................ 2

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
   No. 16-16368, 2017 WL 3468376 (9th Cir. Mar. 2, 2017) ............................................. 15

*In re Cathode Ray Tube Antitrust Litig.*,
   No. 20-16684, 2021 WL 799701 (9th Cir. Feb. 1, 2021) ............................................... 15

*In re FPI/Agretech Sec. Litig.*,
   105 F.3d 469 (9th Cir. 1997) ...................................................................................... 2, 12

*In re Initial Pub. Offering Sec. Litig.*,
   No. 21 MC 92, 2011 WL 2732563 (S.D.N.Y. July 8, 2011) .......................................... 2

*In re TFT-LCD(Flat Panel) Antitrust Litig.*,
   No. 07 MD 1827 SI, 2013 WL 1365900, at * 9 (N.D. Cal. Apr. 3, 2013) ..................... 2

*In re TFT-LCD(Flat Panel) Antitrust Litig.*,
   No. 07 MD 1827 (N.D. Cal. Dec. 18, 2012) ................................................................ 2

*In re Wells Fargo & Co. S'holder Derivative Litig.*,
   523 F. Supp. 3d 1108 (N.D. Cal. 2021) ...................................................................... 6

*Sullivan v. DB Invs., Inc.*,
   2008 WL 8747721, 2008-2 Trade Cas. (CCH) (D.N.J. May 22, 2008) ........................ 3

The Indirect Purchaser Plaintiffs ("IPPs") on behalf of the 22 Indirect Purchaser State Classes (also referred to as the "22 States") hereby respond to the Opposition to Indirect Purchaser Plaintiffs' Motion for Distribution of Attorneys' Fees, Expenses, and Incentive Awards ("Opp. Br.") filed by Cooper & Kirkham, P.C. ("C&K"), the Law Offices of Francis O. Scarpulla ("Scarpulla"), and Law Offices of Theresa D. Moore ("Moore") (collectively "Objectors") (ECF No. 6007).

## I.    INTRODUCTION

The history of this 14-year-old case has been presented on numerous occasions, most recently in IPPs' Response to Objections to Amended Settlements, ECF No. 5758. Half of the fourteen years was spent obtaining over half a billion dollars for the class. The other half has been spent trying to get this money to the class over the objections of the present Objectors.

These Objectors were counsel for the class in the early years of the case. However, at the fee award stage, they submitted fee requests to Lead Counsel which were not approved by the Fee Audit Committee, and thus were not supported by Lead Counsel. In retaliation, and in hope of obtaining more fees for themselves, these Objectors embarked on a program of objector blackmail, blocking settlements to leverage compensation for themselves. The objector blackmail has been extreme, evidenced by almost *2,000* new docket entries post settlement and the filing of twenty separate appeals challenging the settlements. This has caused tremendous expense for all counsel and the Court, and a seven-year delay in distributing the settlement proceeds to the class.

The underlying "ORS" claims of the Objectors have not been part of this litigation for over 12 years and are facially barred by the statutes of limitations. C&K's "NRS" claims are not even recognized under the law. Not surprisingly, Objectors have not conferred any benefit whatsoever on any class member as a result of their objections. Instead, Objectors have used their phantom claims as a pretext to pursue their objector blackmail.

Objectors' conduct, together with their pervasive lack of candor (as set forth below), requires that the Objectors be treated differently than all other IPP Counsel in the case, and that their fee allocations be reduced to the following amounts: C&K: $1,406,873; Scarpulla: $53,029; and Moore: $19,570.

INDIRECT PURCHASER PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR DISTRIBUTION OF
ATTORNEYS' FEES, EXPENSES, AND INCENTIVE AWARDS

## II.    ARGUMENT

### A.   Objectors' Negative Relative Contribution To The Result Achieved For The 22 Indirect Purchaser States Classes Warrants A Reduced Fee Allocation

In their opening brief, IPPs set forth the controlling legal standard for allocating an aggregate fee award amongst class counsel: "[T]he relative efforts of, and benefits conferred upon the class by, co-counsel," and "whether the attorneys' 'specific services benefited the fund—whether they tended to create, increase, protect or preserve the fund.'" ECF No. 6001 ("Mot.") at 3 (citing *In re FPI/Agretech Sec. Litig.*, 105 F.3d 469, 474 (9th Cir. 1997) and *Class Plaintiffs v. Jaffe & Schlesinger, P.A.,* 19 F.3d 1306, 1308 (9th Cir. 1994)); *see also In re Initial Pub. Offering Sec. Litig.*, No. 21 MC 92, 2011 WL 2732563, at *9 (S.D.N.Y. July 8, 2011) ("determination of a reasonable and fair allocation of the aggregate award requires a focus on the relative contributions of each firm. . .").

Objectors do not dispute that counsel's relative contribution to the result achieved is the controlling legal standard here. Indeed, they ignore the standard and controlling Ninth Circuit authorities, and make no effort to justify their requested fee allocations under those authorities. They also do not address cases in which courts (like this Court) have found it appropriate to reduce counsel's allocation where, as here, counsel engaged in behavior that negatively impacted the class. *See, e.g.*, *In re Initial Pub. Offering,* 2011 WL 2732563, at *4 (reducing certain counsel's lodestars by half because they had abandoned the case); *In re TFT-LCD,* No. 07 MD 1827 (N.D. Cal. Dec. 18, 2012), ECF No. 7375 at 6-10 (awarding lower multiplier due to firm's failure to act in the best interests of the class, and failure to work constructively with other firms); *In re TFT-LCD(Flat Panel) Antitrust Litig.*, No. M 07-1827 SI, 2013 WL 1365900, at * 9 (N.D. Cal. Apr. 3, 2013) ("Factors meriting a downward adjustment include: . . . failure to act professionally and collaboratively to prosecute the joint IPP effort . . .").

Objectors fail to address their "relative efforts [], and benefits conferred upon the class" because they recognize that their contribution to the result achieved *for the 22 States* (as opposed to the ORS/NRS), relative to the contributions of the other IPP firms, requires that their fee allocation

INDIRECT PURCHASER PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR DISTRIBUTION OF
ATTORNEYS' FEES, EXPENSES, AND INCENTIVE AWARDS

be reduced in favor of those other firms.[1] Objectors not only did nothing to help "create, increase, protect, or preserve" the amended settlements for the benefit of the 22 States, they also delayed approval of the amended settlements and the distribution to claimants by almost three years, and put the entire settlements at risk. Objectors chose to represent the interests of the ORS/NRS over those of the 22 States, and their conduct harmed class members in the 22 States. Even if they did not intend to harm and acted in good faith (which is disputed), they cannot now avoid the consequences of their actions. Their fee allocation must be reduced.

Objectors' argument that the delay they caused did not harm class members in the 22 States (Opp. Br. at 2) is disingenuous at best. First, Objectors ignore the time value of money. The claimants' share of the settlement fund would have been worth much more three years ago than it will be when they receive it—particularly considering recent inflationary trends. Second, Objectors entirely ignore IPPs' showing that during the delay they caused, one former and two current class representatives have passed away. *See* Mot. at 10-11. These class members will never receive their share of the settlement funds.[2] Many individual claimants have likely also passed away or moved,[3] making it much more difficult to pay their claims and increasing the costs of claims administration. Capurro Decl. ¶ 3. In addition, the Settlement Administrator has informed IPP Counsel that, due to both the excessive passage of time since claimants first filed their claims in 2015 (almost seven years ago), and the pandemic, a much higher proportion of business claimants than usual are now

---

[1] *Sullivan v. DB Invs., Inc.,* 2008 WL 8747721, 2008-2 Trade Cas. (CCH) ¶ 76,304 (D.N.J. May 22, 2008), Objectors' only cited case that mentions fee allocation (Opp. Br. at 15), is inapposite. The *Sullivan* court was only called upon to decide the aggregate fee, and expressly noted that it did not need to address allocation. *Id*. at *27 ("Plaintiffs' counsel are applying for an aggregate award of counsel fees . . . .  By agreement, the aggregate awards will be allocated and distributed among the various firms representing plaintiffs through a separate out-of-court procedure. Thus, the Court need not address the difficult task of assessing counsels' relative contributions.").

[2] One of the lawyers who contributed substantially to the result achieved for the 22 States also passed away and will never receive his share of the attorney fee award. *See* Declaration of Lauren C. Capurro Re: Reply ISO Motion for Distribution ("Capurro Decl.") ¶ 2, filed herewith.

[3] According to the Settlement Administrator, who has been trying to update claimants' addresses, many more people than usual moved during the pandemic. *Id.* ¶ 3.

INDIRECT PURCHASER PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR DISTRIBUTION OF ATTORNEYS' FEES, EXPENSES, AND INCENTIVE AWARDS

bankrupt or no longer exist. They can therefore never obtain their shares of the settlement funds either. *Id.* ¶ 4. Thus, as a direct result of Objectors delaying settlement approval, despite their clients lack of standing to object to the settlements, these members of the 22 Indirect Purchaser State Classes will receive nothing from the settlements.

Finally, Objectors' suggestion that they did not cause any delay because IPPs would not have been ready to distribute the settlement funds before now (Opp. Br. at 8-9) is likewise disingenuous. Under the terms of the settlement agreements, IPPs cannot distribute the settlement funds until the settlements are final, meaning the deadlines for all appeals have passed.[4] Accordingly, there was no point in expending the substantial resources necessary to finalize claims for distribution until now. If Objectors had not filed objections and appeals from final approval of the amended settlements, IPP Counsel would have worked to distribute the settlement funds in 2019 rather than having to oppose the meritless objections and appeals Objectors filed on behalf of their ORS/NRS clients.

In contrast to Objector's conduct, other IPP firms: (1) attempted to save the original settlements by offering to allow the ORS to file claims, and offered to give up their fees to supplement the fund for the benefit of the ORS;[5] (2) when Objectors rejected that option, worked to negotiate amended settlements with the defendants and gave up $29 million in attorneys' fees in

---

[4] *See, e.g.*, ECF No. 3862-1 (Philips Settlement Agreement) ¶ 11.

[5] Objectors' attempt to justify their rejection of IPP Counsel's offer to participate in the original settlements again relies on numerous falsehoods. First, it is not true that IPP Lead Counsel "refused all requests to allow the objector Omitted Repealer States to participate in the settlements." Opp. Br. at 14. As IPPs have repeatedly pointed out, IPP Lead Counsel offered to permit the ORS to participate in the original settlements during the January 5, 2016 hearing before Special Master Quinn. *See* Capurro Decl. ¶ 5, Ex. A (Jan. 5, 2016 Hearing Tr. at 26:6 – 29:15). Second, IPPs did not propose that the ORS/NRS should "participat[e] in and dilut[e] a settlement fund that contained no added compensation for their claims and releases[.]" Opp. Br. at 14. IPP Counsel proposed to give up a portion of the fee award—*in whatever amount the district court deemed reasonable*—to supplement the settlement fund for the benefit of ORS. *See* ECF No. 5416 at 5, 7-9 (March 2019 CMC Statement describing IPPs' alternative solutions to resolve the objections to the settlements). Finally, Objectors' reliance on the $580 million damages number as a basis for not participating in the original settlements fails to account for litigation risk, which is obviously significant for the ORS/NRS given the statutes of limitations issues and other legal hurdles they face.

INDIRECT PURCHASER PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR DISTRIBUTION OF
ATTORNEYS' FEES, EXPENSES, AND INCENTIVE AWARDS

order to secure the waiver of releases for the ORS/NRS, so that the ORS/NRS could separately pursue their claims; (3) briefed preliminary and final approval of the amended settlements; (4) defended the amended settlements on appeal; and (5) continue to work to distribute the settlement funds to claimants. Objectors' contributions to the result achieved for the 22 States pale in comparison to those of the other IPP firms. Thus, Objectors' fee allocation must be reduced in favor of these other firms.

Such a reduction would not be punitive, as Objectors argue; it merely applies controlling law to the facts. It recognizes that Objectors have spent at least the last *seven years* representing the interests of the ORS/NRS and working against the interests of the 22 States—roughly the same amount of time that they spent litigating the case against the defendants (2008-2015). Accordingly, a fifty percent reduction to what would otherwise be their pro rata share of the fee award is justified.

### B. Objectors' Assertion That They Were Merely Vigorously Representing Their ORS/NRS Clients Is Pretextual And Refuted By The Record

Objectors clearly subscribe to the view that, "If you repeat a lie often enough, it becomes accepted as truth." They repeatedly assert that they never objected to the substance of the amended settlements themselves, and "only objected to the timing of final approval" because they were concerned that dismissal of the defendants could moot their Intervention Appeals. *See, e.g.*, Opp. Br. at 2, 7, 8, 9, 10.[6] But Objectors' filings demonstrate that these assertions are false and expose their misrepresentations as pretextual. As shown below, Objectors indisputably objected to the substance of the settlements themselves—not merely the timetable for approval. Moreover, Objectors could have prevented the Intervention Appeals from becoming moot by seeking to have them decided before the settlement appeals. Instead, they deliberately delayed the Intervention Appeals and opposed IPPs' request to have them decided first. Finally, if Objectors had been vigorously representing the ORS/NRS claims, they would have filed those claims long ago. But they

---

[6] The "Intervention Appeals" refer to Objectors' appeals of the denial of their motions to intervene for the purpose of alleging their claims. *See* Appeal Nos. 20-15697, 20-15704, 20-16081.

INDIRECT PURCHASER PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR DISTRIBUTION OF ATTORNEYS' FEES, EXPENSES, AND INCENTIVE AWARDS

did not, and they still have not. Instead, they chose to insert themselves into the settlement approval process only after IPPs reached settlements.

The real reason Objectors objected to the amended settlements was because they recognized that the ORS/NRS claims were problematic,[7] and they hoped that by holding up the 22 States' settlements of more than half a billion dollars, the settling parties would pay them to go away. This "objector blackmail"[8] for their own personal gain was contrary to the interests of the 22 States and warrants a reduction in Objectors' fee allocations.

### 1. Objectors Made Numerous Objections To The Substance Of The Amended Settlements, Not Merely The Timetable For Final Approval

A review of Objectors' numerous filings relating to the amended settlements demonstrates that their objections went far beyond the possibility that the final judgment would moot their Intervention Appeals and "the timetable for approval of the settlements." Opp. Br. at 13. Contrary to Objectors' claims, they filed numerous objections to the substance of the amended settlements, and sought to prevent and delay settlement approval for their own personal gain.

First, Objectors filed objections to the amended settlements long before this Court denied their clients' first motion to intervene, and before the mooting of their intervention motion was even a possibility. ORS Counsel's July 31, 2019 letter to the Court complained that the ORS/NRS had been excluded "from any settlement negotiations," and argued that by entering into amended settlements on behalf of only the 22 States, IPP Lead Counsel had "violate[d] his fiduciary duties" to the ORS/NRS. ECF No. 5533. It further argued that IPPs should not be permitted to settle without

---

[7] This Court has stated that the federal equitable relief claims that Ms. Kirkham is pursuing on behalf of the NRS are "worthless." ECF No. 5444 (Apr. 9, 2019 CMC Hearing Tr.) at 12:15 ("Those claims strike me as actually worthless."). Likewise, this Court has held (and Objectors concede) that the statutes of limitations on the ORS claims have facially expired. *See, e.g.*, ECF No. 4712 at 24-25. And certain ORS claims were alleged and dismissed on the merits in this case. ECF No. 5486 at 2-6.

[8] *In re Wells Fargo & Co. S'holder Derivative Litig.*, 523 F. Supp. 3d 1108, 1113 (N.D. Cal. 2021) ("Objector blackmail is a well-known class and derivative action phenomenon whereby objectors 'use an appeal [of a class action or derivative settlement] as a means of leveraging compensation for themselves or their counsel.'").

INDIRECT PURCHASER PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR DISTRIBUTION OF
ATTORNEYS' FEES, EXPENSES, AND INCENTIVE AWARDS

the ORS/NRS. *Id.* Objectors had not even filed their motion to intervene in July 2019. *See* ECF Nos. 5565, 5567 (ORS/NRS Motions to Intervene and amend complaint, filed August 23, 2019). Thus, there was no prospect at that time that the intervention motion could be mooted by the final judgment.

Second, Objectors filed the ORS/NRS objections to preliminary approval of the amended settlements on September 30, 2019 (ECF No. 5607)—*before* the Court denied their first motions to intervene to allege their claims. *See* ECF Nos. 5626, 5628 (Orders Denying ORS and NRS Motions to Intervene, dated October 15 & 17, 2019). Significantly, this filing made no objection on potential mootness grounds; rather, it objected to the substance of the settlements themselves on multiple grounds. *See, e.g.,* ECF No. 5607 at 3-10 (arguing that "piecemeal settlements" violated the Ninth Circuit's mandate and FRCP 54(b); that the amended settlements violated Rule 23 and due process; that the settlements should be rejected because the ORS/NRS had not been adequately represented; and, that full notice to the class under Rule 23 was required). Accordingly, it is false that Objectors objected to preliminary approval of the amended settlements because "certain provisions and the timetable for approval of the settlements, had the very real potential to dismiss the defendants and moot the intervention appeals before the Ninth Circuit could rule on the merits." Opp. Br. at 13. Objectors did not even file the Intervention Appeals for another seven months. *See* ECF Nos. 5709, 5711 (notices of appeal dated April 9 & 13, 2020).

Third, Objectors attempted, in filing the September 30, 2019 objection, to improperly "reinstate" their previously-filed motion to vacate the original settlements, even though they knew that the amended settlements would no longer release the ORS/NRS claims. ECF No. 5607 at 11. Other than claiming they were acting in good faith (Opp. Br. at 14), Objectors fail to explain how vacating the original settlements could possibly have benefited class members in the 22 States. On the contrary, vacating the original settlements would have *prejudiced* the 22 States. As IPPs have explained, several of the settling defendants were bankrupt or were facing financial difficulties.[9]

---

[9] *See IPPs et al. v. Toshiba Corp. et al.*, No. 16-16368, ECF No. 230 (9th Cir. Jan. 9, 2019) (IPPs' Motion to Remand) at 4.

INDIRECT PURCHASER PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR DISTRIBUTION OF
ATTORNEYS' FEES, EXPENSES, AND INCENTIVE AWARDS

1    Thus, if the settlement funds were returned, they could have been lost forever. *Id*. Moreover,

2    vacating the settlements would have meant losing over $10 million in interest earned on the funds

3    since 2015. ECF No. 5537 at 6. Yet Objectors attempted to reinstate the motion to vacate anyway,

4    recklessly risking over half a billion dollars based on their ill-founded "good faith belief." Again,

5    this is a pretext. In reality, Objectors were simply trying—once again—to create leverage by putting

6    the 22 States' settlements at risk.[10]

7            Fourth, while Objectors' objections to final approval of the amended settlements did

8    reference the potential mooting of their Intervention Appeals, many objections pertained to the

9    settlements themselves. *See, e.g.*, ECF No. 5732 at 4-10 (arguing that the settlement class could not

10   be certified, and the settlement could not be approved because it was a partial settlement which

11   treated ORS/NRS class members inequitably, and ORS/NRS class members had been inadequately

12   represented); *id*. at 10-11 (arguing that the settlements could not be approved because multiple class

13   representatives did not have standing and the Court lacked subject matter jurisdiction); *id*. at 11-12

14   (arguing that by negotiating the $29 million reduction, IPP Lead Counsel had improperly negotiated

15   the value of the ORS/NRS claims without their input); *id*. at 12-13 (arguing that the notice was

16   legally defective); and *id*. at 13-14 (arguing that the attorneys' fee request was excessive).

17           Finally, even on appeal, Objectors did not limit their objections to the possibility that their

18   Intervention Appeals might be mooted. They continued to object to the settlements on adequacy of

---

[10] Objectors attempt to blame Lead Counsel for their conduct because he did not agree to their attempt to amend IPPs' complaint. *See* Opp. Br. at 4-8. They contend that IPP Lead Counsel "knew in the fall of 2019," that adding the ORS/NRS representatives and claims to the complaint "posed no threat to the amended settlements[.]" *Id*. at 6. But the September 2019 objections and motion to vacate demonstrate that nothing could be further from the truth. Objectors consistently argued that "piecemeal settlements" were improper and tried to block the separate approval of the amended settlements. *See, e.g.*, ECF No. 5607 at 3-4. Thus, Lead Counsel's opposition to amending IPPs' complaint was entirely justified. Moreover, even if Lead Counsel had agreed to amending IPPs' complaint, defendants would still have objected and the Court would likely have still denied the motion. There was also no guarantee that Objectors' invocation of relation back would have been successful. Thus, Objectors' attempts to blame IPP Lead Counsel for their conduct are baseless.

INDIRECT PURCHASER PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR DISTRIBUTION OF
ATTORNEYS' FEES, EXPENSES, AND INCENTIVE AWARDS

representation grounds and criticized this Court's approval of the settlements for the 22 States as "the district court's improper Balkanization of the litigation."[11]

In sum, as Objectors' filings demonstrate, their claim that their objections did not harm the 22 States because they were not directed at the substance of the settlements is false. The filings also demonstrate that their professed concerns regarding mootness are pretextual.

### 2. Objectors Deliberately Delayed The Intervention Appeals Even Though Expediting Them Would Have Prevented Them From Becoming Moot

Objectors' assertion that their "only concern was the potential effect of settlement finality on their intervention appeals" (Opp. Br. at 10) is further belied by their abject failure to expedite their Intervention Appeals, to ensure they were decided *before* the Settlement Appeals were decided and final judgment was affirmed. Indeed, Objectors *delayed* the Intervention Appeals as part of a deliberate strategy. First, they waited six months following the denial of their first motion to intervene, wasting time filing renewed motions to intervene (ECF Nos. 5643, 5645) and motions for reconsideration (ECF Nos. 5688, 5689) before finally appealing the denial of reconsideration in April 2020. *See* ECF Nos. 5709, 5711. Second, they sought several extensions of time on briefing.[12] Finally, Objectors opposed IPPs' request that the Ninth Circuit hear and decide the Intervention Appeals before the settlement appeals, arguing that oral argument in the Intervention Appeals should be delayed and heard together with the settlement appeals.[13] As a result, the Intervention Appeals were not heard until July 2021, despite having been filed in April 2020.

As IPPs pointed out in a letter to the Ninth Circuit panel, deciding the Intervention Appeals first would have ensured that they were not mooted by affirmance of the final judgment, and would have allowed them to be decided on the merits. *See In re Indirect Purchaser Plaintiffs v. Toshiba Corp., et al.*, Appeal No. 20-15697, ECF No. 71. Thus, Objectors' delay of the Intervention Appeals

---

[11] *See Ayres et al. v. Indirect Purchaser Plaintiffs, et al.,* Lead Appeal No. 20-16685, ECF No. 25 (Objectors' Opening Brief) at 32-38.

[12] *See* Lead Appeal No. 20-15697, ECF Nos. 30, 31, 58.

[13] *Id.*, ECF Nos. 69, 70, 71, 72.

INDIRECT PURCHASER PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR DISTRIBUTION OF ATTORNEYS' FEES, EXPENSES, AND INCENTIVE AWARDS

undermines their claim that they were solely concerned that the final judgment could moot intervention. It also exposes their real objective: to delay approval of the amended settlements in the hopes that holding up a half-billion dollars in settlements would lead the settling parties to pay them to dismiss their appeals.

### 3. If Objectors Had Been Vigorously Representing The ORS/NRS, They Would Have Sought To Add Them To The Litigation Long Ago

Finally, as IPPs have repeatedly pointed out, Objectors have been counsel in this litigation since its inception in 2007. They knew *no later than October 1, 2012* (when IPPs filed their class certification motion) that IPPs were pursuing damages claims on behalf of *only the 22 States*. *See* ECF No. 1388. They also knew that IPPs were not pursuing certification of the nationwide class and were not seeking equitable disgorgement. *Id*. Indeed, IPPs published nationwide notices in 2011 and 2013 describing the claims being pursued. Yet, Objectors took no action until IPPs had achieved $576 million in settlements—long after the statutes of limitations had run on the ORS claims. If Objectors had been concerned with vigorously representing the ORS/NRS, they would have sought to add them to the litigation long before the statutes of limitations had run. Again, Objectors' conduct undermines their claims of vigorous representation and exposes them as pretextual.

### C. Objectors' Alternative Fee Proposals Are Untenable Because They Would Result In Objectors Receiving More Than Their Pro Rata Share Of The Fee Award

IPPs have proposed that Objectors receive fifty percent of what their pro rata share of the aggregate fee would have been (under IPP Lead Counsel's objective formula)[14] if they had not objected to the amended settlements and delayed approval for almost three years. Lead Counsel's proposal is justified by the fact that Objectors have been litigating *against* the 22 States for approximately fifty percent of the time that this case has been pending.[15]

---

[14] Under Lead Counsel's objective formula, before the fifty percent cut, C&K's pro rata share of the aggregate fee award would have been $2,813,746; Scarpulla's pro rata share would have been $106,059; and Moore's pro rata share would have been $39,140. Capurro Decl. ¶ 6.

[15] This litigation was consolidated and assigned to this Court in February 2008. ECF No. 119. IPPs (including Objectors, although they played very limited roles) litigated against the defendants from (footnote continued)

INDIRECT PURCHASER PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR DISTRIBUTION OF
ATTORNEYS' FEES, EXPENSES, AND INCENTIVE AWARDS

1   Objectors object to the fifty percent cut to their 2017 fee allocations and make two alternative

2   fee proposals to the Court. First, Objectors propose that the Court simply award them their 2017 fee

3   allocation. Opp. Br. at 19-20. This would mean that Objectors' fee allocation would not be reduced

4   as a result of their meritless objections to the amended settlements, and that they alone would not

5   share in the $29 million reduction to the aggregate fee award that every other IPP firm has agreed

6   to. Objectors' alternative proposal likewise eliminates the proposed fifty percent cut to Objectors'

7   2017 fee allocations. *Id*. at 20. It further proposes that the Court modify IPP Lead Counsel's formula

8   to exclude the $6 million in additional lodestar incurred by IPP Counsel in negotiating the amended

9   settlements and defending them from Objectors' attacks. *Id*. Objectors also attempt to re-litigate the

10  Court's 2017 fee allocation. They request that the Court fix the Special Master's "computational

11  error" in Scarpulla's lodestar, and *increase* C&K's multiplier to 1.5, instead of the 1.25 multiplier

12  it was awarded in 2017. *Id.* at 21-22.

13  Objectors' proposals are untenable on a number of grounds, but primarily because (1) they

14  would result in Objectors receiving *more* than their pro rata share of the aggregate fee award, and

15  (2) Objectors' fee allocations would not be reduced as a result of them unjustifiably holding up the

16  amended settlements and delaying the distribution to class members for three years.

17  ## 1. Objectors' First Fee Proposal Must Be Rejected

18  It is ludicrous to suggest that Objectors should receive *more* from the 22 States' settlements

19  relative to other IPP firms, and that they should suffer no reduction in their fee allocation, given that

20  they did nothing to attain the amended settlements and have spent the last seven years litigating

21  *against* the interests of the 22 States, while other IPP firms have worked to get the amended

22  settlements approved. Not only would this result be contrary to controlling law, which requires the

23

24  _____

25  2008-2015 (seven years). *See* ECF No. 4976 at 13, 21-22 (Special Master's Oct. 24, 2016 R&R Re:
    Allocation of IPP Class Counsel's Attorneys' Fees ("Fee Allocation R&R"), finding that Scarpulla

26  did not perform "important case leadership" functions and had a "lack of meaningful involvement
    in the case," and that Moore did "extraordinarily little work in the case"). From 2015 to the present

27  (seven years), Objectors have been litigating against the 22 States and attempting to block their
    settlements.

28
    INDIRECT PURCHASER PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR DISTRIBUTION OF
    ATTORNEYS' FEES, EXPENSES, AND INCENTIVE AWARDS

Court to weigh "the relative efforts of, and benefits conferred upon the class, by co-counsel," *In re FPI/Agretech Sec. Litig.*, 105 F.3d at 474, it would also be grossly unfair to the other IPP firms.

Moreover, the $29 million reduction in the aggregate fee benefited class members in the 22 States because it prevented the original settlements from being vacated. If Objectors wish to share in the aggregate fee award, they must share in the reduction. In addition, Objectors were aware of the $29 million reduction in the aggregate fee and argued that it should have been further reduced. *See, e.g.,* ECF No. 5732 at 11-12 (arguing that "the far-too-low $29 million reduction" should be rejected, and that the Court "should reduce fees significantly to account for the value of the ORS and NRS claims . . ."). Objectors cannot be allowed to play both sides of the fence in this way, arguing that the aggregate fee should have been lower and then arguing that they should not have to share in the reduction.

## 2.  Objectors' Alternative Fee Proposal Must Be Rejected

Objectors' alternative fee proposal is likewise inequitable and must be rejected. First, their request to eliminate the fifty percent cut must be rejected for the reasons set forth above. Second, their request that the Court *increase* C&K's multiplier from 1.25 to 1.5 was already rejected by the Court in its February 28, 2017 "Fee Allocation Order." *See* ECF No. 5122 at 7-9. Moreover, the request is based—once again—upon numerous misrepresentations regarding the 2017 fee allocation and C&K's conduct. C&K claims that "[t]he Special Master rejected . . . a majority of the arguments IPP Lead Counsel advanced to support" C&K's reduced fee allocation. Opp. Br. at 16. This is false. Far from rejecting Lead Counsel's criticisms of C&K's conduct, the Special Master and the Court agreed that C&K (and Scarpulla and Moore): (a) raised objections which were "gratuitous," "unmeritorious," "very weak," "unhelpful," "counter-productive and potentially damaging to the Class" (Fee Allocation Order at 8-9; Fee Allocation R&R at 13-14, 18); (b) publicly asserted "procedural and speculative objections" which were "inexplicable" (*id*. at 14); (c) could have expressed concerns about the notice early on at the time of preliminary settlement approval—"not at the last moment when they merely stoked the fires of professional objectors" (*id*. at 14, 18; Fee Allocation Order at 8); (d) had a "running antagonism" with Lead Counsel (Fee Allocation R&R at

14); (e) failed repeatedly to provide legal support for their arguments (*id*. at 14-15, 18; Fee Allocation Order at 9); and (f) filed objections that "showed a lack of collaboration and disregard for the interests of the Class" (*id*. at 8; Fee Allocation R&R at 18), and "bordered on being frivolous." *Id*.

Furthermore, as this Court noted in rejecting C&K's argument that the Special Master created a penalty rule that could chill legitimate objections,[16] the Special Master expressly exempted C&K's "colorable" objections regarding "Chunghwa and the scope of the release" from his criticisms. *See* Fee Allocation Order at 8 (citing R&R at 17-18) ("the Special Master explicitly recognized that several of C&K's objections to the settlement did not 'deserve retribution in the form of an unfavorable multiplier' even though one of those objections, related to the scope of release, was ultimately overruled."). Thus, C&K's claim that "the Court adopted a multiplier of 1.25, rather than 1.5, for C&K's lodestar solely based on a finding that its objecting and appealing the original settlements was unhelpful to the Nationwide Class[,]" (Opp. Br. at 21) is also false. The Special Master was not "wrong" (*id.* at 22), and there is no basis for the Court to revisit its prior findings and increase C&K's multiplier to 1.5.[17]

Objectors are also incorrect that Special Master Quinn made a "computational error" in calculating Scarpulla's lodestar. Opp. Br. at 18. After criticizing "Scarpulla's multiple calculations of his lodestar and multiplier" as "inconsistent and confusing" (R&R at 10), the Special Master found that Scarpulla's $1,250 hourly rate for 2011-2015 was excessively high and capped his rate at $1,000/hour for that time period (still the highest rate of any IPP counsel). *Id*. at 10-11. Significantly, moreover, Scarpulla never raised any "computational error" with the Court. *See* ECF No. 5023. Thus, he has waived any objection to the calculation of his lodestar. This Court affirmed the Special Master's calculations and then reduced Scarpulla's lodestar further by eliminating

---

[16] C&K raises this baseless argument again now. *See* Opp. Br. at 15.

[17] Of note, the Special Master did not find that C&K's "contribution to the litigation otherwise would have merited" a 1.5 multiplier. Opp. Br. at 16. He found, "[b]ut for Cooper's unhelpful activities the Cooper firm would have fit comfortably at the top of the 1.3-1.5 tier of multipliers." Fee Allocation R&R at 19.

1   certain categories of time, but applied a higher multiplier to that reduced lodestar at arrive at a fee

2   of $130,118.88. Fee Allocation Order at 6-7. This is the number IPPs use as the starting point for

3   Scarpulla's new fee allocation. There is no basis for recalculating this number.

4        Finally, Objectors object to a pro rata fee decrease imposed to allow for the proposed $6

5   million in lodestar to other firms. Opp. Br. at 20. This is a minor issue in terms of the amount of

6   money involved but nevertheless raises important equitable concerns. Eliminating the $6 million in

7   additional lodestar from Lead Counsel's formula for Objectors, but maintaining the fifty percent

8   cut, results in a fee allocation of $1,460,959 to C&K—only $54,086 more than the $1,406,873.06

9   Lead Counsel proposes to allocate to C&K. Capurro Decl. ¶ 7. Likewise, Scarpulla's fee allocation

10  would increase by a mere $2,015 from $53,029.73 to $55,044.41. *Id.* ¶ 8. As for Moore, her fee

11  allocation would increase from $19,570.04 to $20,138.20—only $702 more. *Id.* ¶ 9.

12       The small amounts involved do not, as Objectors suggest, justify further, protracted fee

13  proceedings requiring the Court to waste time and resources reviewing time records. Nevertheless,

14  it would be inequitable to absolve Objectors from contributing their fair share to the additional

15  lodestar when (1) the vast majority of the work performed was necessary to defend the amended

16  settlements from Objectors' meritless attacks; and (2) all other IPP firms have agreed to a pro rata

17  reduction in their fees to compensate the firms that worked on the amended settlements. *Id.* ¶ 10.

18  Objectors' hypothetical of "one person, billing at $1000/hour, working 8 hours a day, five days a

19  week" (Opp. Br. at 20), is useless in evaluating this lodestar. There were long periods in 2019 and

20  2020 when IPP Counsel were working on multiple, back-to-back, and even overlapping motions;

21  and, in 2020 and 2021 before the Ninth Circuit, IPP Counsel were working on eight separate appeals,

22  motions to dismiss those appeals, voluminous 85-page answering briefs requiring a review of the

23  record dating back to 2007, and oral argument. During these periods, multiple attorneys and

24  paralegals were working full time on this case. Capurro Decl. ¶ 11.

25       Furthermore, Objectors fail to acknowledge that Lead Counsel has not included in the

26  formula any of the very substantial lodestar incurred by IPP Counsel for the period from September

27  2015 through February 2019. There have been almost *2,000* new docket entries in this litigation

28

INDIRECT PURCHASER PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR DISTRIBUTION OF
ATTORNEYS' FEES, EXPENSES, AND INCENTIVE AWARDS

1    since IPPs filed their original fee motion in September 2015. During that time, IPP Counsel

2    successfully defended the original settlements against numerous objections that went far beyond the

3    objection to the scope of the release. IPP Counsel have also litigated twenty separate appeals—nine

4    appeals of the original settlements (two of which they successfully moved to dismiss);[18] three

5    appeals of the 2017 fee allocation; three appeals of the preliminary approval order (which IPP

6    Counsel successfully moved to dismiss, ECF No. 5738) and the orders denying intervention; and

7    five appeals of the amended settlements (one of which they also successfully moved to dismiss).[19]

8    None of this time has been billed to the Class.

9         This represents objector blackmail at its most extreme. Under these circumstances, the Court

10    should exercise its broad discretion to reduce Objectors' fee allocations. This is especially

11    appropriate in the case of C&K. C&K objected to the original settlements without a client and over

12    the last several years has been representing a client from a non-repealer state who has no standing

13    to bring an indirect purchaser claim for damages. It is also appropriate in light of the pretextual

14    arguments and lack of candor exhibited in Objectors' opposition brief.

15   **III.    CONCLUSION**

16         For all of the foregoing reasons, IPPs respectfully request that the Court overrule Objectors'

17    objections to their proposed fee allocations, and order the immediate distribution of the attorneys'

18    fees, expenses, and incentive awards to class representatives as proposed by Lead Counsel.

19   Dated: April 12, 2022            Respectfully submitted,

20

21                       By:    */s/ Mario N. Alioto*

22   ───────────────────

23   [18] IPP Counsel successfully moved to dismiss two of the appeals filed by C&K and Scarpulla for lack of standing. *See In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. 16-16368, 2017 WL

24   3468376, at *1 (9th Cir. Mar. 2, 2017). C&K appealed without representing a client, and Scarpulla filed an appeal on behalf Eleanor Lewis (the sister of C&K partner, Josef Cooper), who had not

25   objected to the settlements in this Court. *Id.*

26   [19] Again, IPP Counsel successfully moved to dismiss the appeal of the amended settlements filed by Scarpulla in his personal capacity, and on behalf of his firm, because neither were class

27   members, and neither had objected to the amended settlements in this Court. *See In re Cathode Ray Tube Antitrust Litig.*, No. 20-16684, 2021 WL 799701 (9th Cir. Feb. 1, 2021).

28

15            MDL NO. 1917

INDIRECT PURCHASER PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR DISTRIBUTION OF
ATTORNEYS' FEES, EXPENSES, AND INCENTIVE AWARDS

MARIO N. ALIOTO (56433)
JOSEPH M. PATANE (72202)
LAUREN C. CAPURRO (241151)
**TRUMP, ALIOTO, TRUMP &**
**PRESCOTT, LLP**
2001 Union Street, Suite 482
San Francisco, California 94123
Telephone: (415) 563-7200
Facsimile: (415) 346-0679
Email: malioto@tatp.com
       jpatane@tatp.com
       laurenrussell@tatp.com

*Lead Counsel for the Indirect*
*Purchaser Plaintiffs for the 22 States*