Mario N. Alioto (56433)
Lauren C. Capurro (241151)
TRUMP, ALIOTO, TRUMP & PRESCOTT LLP
2001 Union Street, Suite 483
San Francisco, CA 94123
Telephone: 415-563-7200
Facsimile: 415- 346-0679
Email: malioto@tatp.com
jpatane@tatp.com
laurenrussell@tatp.com

***Lead Counsel for the Indirect
Purchaser Plaintiffs for the 22 States***

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | MASTER FILE NO. 4:07-cv-5944 JST<br>Case No. 13-cv-03234-JST |
| This Document Relates to:<br><br>INDIRECT PURCHASER ACTIONS FOR THE 22 STATES | MDL NO. 1917<br><br>**INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR ORDER APPOINTING FUND ADMINISTRATOR AND AUTHORIZING DISTRIBUTION OF SETTLEMENT FUNDS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Hearing Date: July 28, 2022<br>Time:  2:00 p.m.<br>Courtroom:  6, 2nd Fl. (Oakland)<br>Judge:  Hon. Jon S. Tigar |

# TABLE OF CONTENTS

**PAGE(S)**

I.     INTRODUCTION……………………………………………………………1

II.    STATEMENT OF RELEVANT FACTS……………………………...........3

    A.  The Settlements And Settlement Approval…………………………...........3

    B.  Notice To Class Members Regarding The Settlements And
       Filing Claims…………………………………………………………...4

    C.  The Two Plans Of Distribution………………………………………5

       1.   The Plan Of Distribution For All Settlements Except The
           Chunghwa Settlement……………………………………………5

       2.  The Plan of Distribution For The Chunghwa Settlement…………………………...6

    D.  Claims Administration………………………………………………7

       1.  Summary Of Settlement Administrators' Receipt And
          Review Of Claims………………………………………………7

       2.  The Settlement Administrator's Audit Criteria And
          Results………………………………………………...........................9

       3.  Proposal For Payment Of Late Claims………………………………11

    E.   The Net Settlement Funds Available For Distribution………………………12

       1.   The Amounts Recovered………………………………………12

       2.  Interest Accrued On The Fund………………………………13

       3.  Court-Authorized Payments From The Settlement
          Funds………………………………………………...13

       4.  Additional Costs And Expenses Incurred In Connection With The Prosecution
          And Settlement Of This
          Litigation………………………………………………...........14

       5.  Additional Payments Owed to the Settlement
          Administrator………………………………………………14

       6.  Reserves And the Amount Available For Distribution…………………………...14

    F.  Distribution Of The Net Settlement Fund………………….......................16

INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR ORDER APPOINTING
FUND ADMINISTRATOR AND AUTHORIZING DISTRIBUTION OF SETTLEMENT FUNDS

1

2

III.     ARGUMENT………………………………………………………………………...17

    A.   The Court Should Approve The Settlement Administrator's
        Recommendations Regarding Acceptance Or Rejection
        Of Claims……………………………………………………………………..18

    B.   The Court Should Adopt Lead Counsel's Recommendation
        Regarding Late, Amended And Placeholder Claims…………………………….19

    C.   The Court Should Approve The Reimbursement Of
        Expenses………………………………………………………………………21

        1.   The Court Should Authorize Payment Of The Settlement Administrator's
            Fees And Expenses………………………….................................................21

        2.   The Court Should Approve The Expenditures From The Future Expense Fund
            And Authorize The Reimbursement Of Litigation Expenses To IPP
            Counsel……………………………………………………………………23

IV.     CONCLUSION …………………………………………………………………...24

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ii                                                                MDL NO. 1917

INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR ORDER APPOINTING
FUND ADMINISTRATOR AND AUTHORIZING DISTRIBUTION OF SETTLEMENT FUNDS

# TABLE OF AUTHORITIES

**PAGE(S)**

Cases

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
No. 02-1486, ECF Nos. 2273, 2283 (N.D. Cal. 2016) .................................................. 20, 21

*In re Anthem, Inc. Data Breach Litig.*,
327 F.R.D. 299 (N.D. Cal. 2018) ............................................................................... 18

*In re Cathode Ray Tube Antitrust Litig.*,
No. 20-15697, 2021 WL 4306895 (9th Cir. Mem. Sept. 22, 2021) ....................................... 4

*In re Gypsum Antitrust Cases*,
565 F.2d 1123 (9th Cir. 1977) .................................................................................... 19

*In re Int'l Air Transp. Surcharge Antitrust Litig.*,
No. M 06-01793 CRB, 2011 WL 6337625 (N.D. Cal. Dec. 19, 2011),
*aff'd*, 577 F. App'x 711 (9th Cir. 2014) ........................................................................ 19

*In re Orthopedic Bone Screw Prods. Liab. Litig.*,
246 F.3d 315 (3d Cir. 2001) ....................................................................................... 19

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
No. 03-1827, ECF Nos. 9217, 9273 (N.D. Cal. 2014) ........................................................ 20

*In re Valdez*,
289 F. App'x 204 (9th Cir. 2008) ................................................................................. 20

*Welch & Forbes, Inc. v. Cendant Corp.* (*In re Cendant Corp. Prides Litig.*),
233 F.3d 188 (3d Cir. 2000) ....................................................................................... 20

*Willner v. Manpower Inc.*,
No. 11-cv-02846-JST, 2015 WL 3863625 (N.D. Cal. June 22, 2015) .............................. 24

Statutes

26 U.S.C. § 468B .......................................................................................................... 16

Fed. R. Civ. P. 23 subd. (h) ............................................................................................ 21

Treatises

4 William B. Rubenstein, *Newberg on Class Actions*, § 12:19 (5th ed.) (Westlaw 2018) ....... 18, 19

INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR ORDER APPOINTING
FUND ADMINISTRATOR AND AUTHORIZING DISTRIBUTION OF SETTLEMENT FUNDS

## **NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on July 28, 2022, at 2:00 p.m., or as soon thereafter as the matter may be heard, before the Honorable Jon S. Tigar, United States District Judge, Oakland Courthouse, located at 1301 Clay Street, Courtroom 6, 2nd Floor, Oakland, California, the Indirect Purchaser Plaintiffs ("IPPs") will and hereby do move the Court for an Order appointing The Notice Company as the Fund Administrator, and authorizing the distribution of settlement proceeds obtained in the Indirect Purchaser Actions to class members who submitted valid claims.

IPPs request that the Court enter an Order appointing The Notice Company as the Fund Administrator and approving the distribution of settlement funds in accordance with the Plans of Distribution previously approved by the Court (ECF No. 5040; 5786) to members of the 22 Indirect Purchaser State Classes whose claims have been approved by the Court-appointed Settlement Administrator, The Notice Company. In addition, IPPs seek an Order (1) authorizing payment to the Settlement Administrator for unreimbursed costs and expenses; (2) approving IPP Counsel's expenditures from the Future Expense Fund; (3) authorizing reimbursement to IPP Counsel of out-of-pocket expenses; and (4) authorizing IPPs to reserve funds in escrow for the payment of future claims administration costs, potential tax liability, and/or other issues.

This Motion is based on this Notice of Motion, the following Memorandum of Points and Authorities in support thereof, the accompanying Declarations of Joseph Fisher and Mario N. Alioto, the pleadings and papers on file in this action and such other matters as may be presented to the Court at or prior to the hearing on the Motion.

Dated: June 23, 2022

  /s/ Mario N. Alioto

Mario N. Alioto (56433)
Lauren C. Capurro (241151)
TRUMP, ALIOTO, TRUMP & PRESCOTT, LLP
2001 Union Street, Suite 483
San Francisco, CA  94123
Telephone: (415) 563-7200
Facsimile: (415) 346-0679

malioto@tatp.com
laurenrussell@tatp.com

**Lead Counsel for the Indirect Purchaser Plaintiffs**

INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR ORDER APPOINTING
FUND ADMINISTRATOR AND AUTHORIZING DISTRIBUTION OF SETTLEMENT FUNDS

**STATEMENT OF ISSUES TO BE DECIDED**

1.      Whether to authorize payment of all claims as approved by the Settlement Administrator from the Net Settlement Funds according to the weighted pro rata Plans of Distribution approved by the Court and set forth in Exhibits D and E to the Fisher Declaration.

2.      Whether to appoint The Notice Company as the Fund Administrator.

3.      Whether to adopt and approve IPP Lead Counsel's recommendation that the Court pay "Late Claims" to the extent, and in the manner, set forth herein.

4.      Whether to authorize the payment to the Settlement Administrator of fees, costs and expenses incurred, but as yet unpaid, in the amount of $99,240.13.

5.      Whether to approve IPP Counsel's expenditure of $2,330,710.87 from the Future Expense Fund during the period from September 2015 through the present for the prosecution and settlement of this litigation on behalf of indirect purchaser class members, as detailed herein.

6.      Whether to approve the reimbursement from the settlement funds of $345,171.76 in additional expenses incurred by IPP Counsel in the prosecution and settlement of this litigation on behalf of indirect purchaser class members, as detailed herein.

7.      Whether to reserve $10,000,000 on a pro rata basis, from funds distributed to claimants being awarded $1 million or more, for the payment of future claims administration fees, costs and expenses, potential tax liability, and other unforeseen issues.

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.      INTRODUCTION

The Indirect Purchaser Plaintiffs ("IPPs") have settled this action with certain Defendants (the "Settling Defendants"),[1] resulting in settlements totaling $547,750,000, plus accrued interest. The Court's Orders granting final approval to IPPs' settlements with the Settling Defendants and

---

[1] The "Settling Defendants" are the Chunghwa (ECF No. 1105), LG Electronics (ECF No. 2542), Panasonic, Philips, Hitachi, Toshiba, Samsung SDI, Thomson and TDA Defendants (ECF No. 5786 (Order Granting Final Approval, dated July 13, 2020) ("Final Approval Order") at 1-2).

INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR ORDER APPOINTING
FUND ADMINISTRATOR AND AUTHORIZING DISTRIBUTION OF SETTLEMENT FUNDS

1  the Final Judgments it entered thereafter have been affirmed by the Ninth Circuit in a decision that

2  is no longer subject to further appellate review.

3  Notice of the settlements was sent to class members, certain class members opted out, and

4  potential class members submitted claims to share in the settlement proceeds. The Settlement

5  Administrator has completed an extensive, fair, and reasonable review of all claims filed. Because

6  the Chunghwa Settlement includes resellers and required distributions to State Attorneys General,

7  the Court approved a slightly different Plan of Distribution that must be administered separately.

8  As of May 31, 2022, the Net Settlement Fund for the Chunghwa settlement is $6,341,556.68, and

9  the Net Settlement Fund for all other settlements is $414,143,781.42. These amounts include the

10  settlement proceeds plus interest, less Court-approved attorneys' fees, expenses, class representative

11  incentive awards, taxes, accounting fees, escrow fees, and amounts distributed from the Chunghwa

12  settlement to the Attorneys General of Illinois and Oregon. If the Court approves the Settlement

13  Administrator's unreimbursed fees and costs, the reimbursement of expenses to IPP Counsel, and

14  an appropriate reserve of $10,000,000 for future claims administration fees, costs, expenses, taxes

15  and other issues, there will be $6,137,693.41 remaining in the Chunghwa Net Settlement Fund and

16  $403,903,232.80 from all other settlements, for a total of $410,040,926.21.

17  As explained below and in the Declarations of Joseph Fisher (the "Fisher Decl.") and Mario

18  N. Alioto (the "Alioto Decl."), filed herewith, all the prerequisites to a prompt distribution of funds

19  to claimants have been satisfied. The funds to be distributed are already in hand, having been

20  deposited in escrow by the Settling Defendants in 2015 or earlier. The Court has adopted two Plans

21  of Distribution that, taken together, govern the distribution of funds. Alioto Decl. ¶ 2; Fisher Decl.

22  ¶ 9. Class member participation in the claims process has been robust. The Notice Company, the

23  Court-appointed Settlement Administrator for the indirect purchaser settlements (and proposed

24  Fund Administrator), has processed and approved a total of 143,374 valid claims for purchases of

25  144,203,637 CRT televisions, computer monitors and other products containing CRTs ("CRT

26  Products"). Fisher Decl. ¶¶ 10-11.

27

28

INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR ORDER APPOINTING
FUND ADMINISTRATOR AND AUTHORIZING DISTRIBUTION OF SETTLEMENT FUNDS

IPPs request that the Court enter the Proposed Order submitted herewith, which appoints The Notice Company as the Fund Administrator and authorizes it to pay all approved claims from the Net Settlement Funds, less funds reserved for future claims administration costs, taxes, and other issues, according to the weighted pro rata Plans of Distribution previously approved by the Court. The Proposed Order also incorporates IPPs' proposal that the Court approve payments to certain late claimants (who filed their claims after the Court-ordered deadlines but on or before May 5, 2020) at 50% of what they would otherwise have received had they timely filed their claims.

In conjunction with the distribution of funds, IPPs further request that the Court (1) authorize payment to the Settlement Administrator for unreimbursed fees and expenses; (2) approve IPP Counsel's expenditures from the Future Expense Fund; (3) authorize reimbursement to IPP Counsel of out-of-pocket expenses; and (4) authorize IPPs to reserve funds in escrow, on a pro rata basis, from funds distributed to claimants being awarded $1 million or more, for the payment of future claims administration costs, potential tax liability, and/or other issues. The accompanying Proposed Order reflects these payments as well.

## II.   STATEMENT OF RELEVANT FACTS

### A.   The Settlements And Settlement Approval

The Settlement Fund was created as a result of the following settlements (collectively, the "Settlements"):

(1) IPPs' settlement with the Chunghwa Defendants, which the Court finally approved (ECF No. 1105) and entered Final Judgment on March 22, 2012 (ECF No. 1106);

(2) IPPs' subsequent settlement with the LG Defendants, which the Court finally approved (ECF No. 2542) and entered a Final Judgment on April 18, 2014 (ECF No. 2543); and,

(3) IPPs' settlements with six additional groups of Defendants – the Phillips, Panasonic, Hitachi, Toshiba, Samsung and Thomson/TDA Defendants (the "2015 Settlements"),[2] which the Court initially approved on July 7, 2016 (ECF No. 4712), and later approved,

---

[2] The Court identified the defendant groups in its July 7, 2016 Order (ECF No. 4712) at 3, fn. 4-9.

INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR ORDER APPOINTING
FUND ADMINISTRATOR AND AUTHORIZING DISTRIBUTION OF SETTLEMENT FUNDS

as amended, in a "Final Approval Order" entered July 13, 2020 (ECF No. 5786), leading to the entry of Final Judgment on July 29, 2020 (ECF No. 5804).

Several groups of objectors ("Objectors") appealed the Court's approval of the amended Settlements.[3] The Ninth Circuit affirmed final approval of the amended settlements in a Memorandum Decision dated September 22, 2021,[4] and denied Objectors' petition for rehearing and rehearing *en banc* on December 23, 2021. ECF No. 5973. On June 13, 2022, the United States Supreme Court denied Objectors' Petition for Certiorari. ECF No. 6023. This Court's Final Approval Order and Final Judgment are therefore no longer subject to further appellate challenge. The case is ripe for a distribution of the settlement funds to class members, incentive awards to the class representatives, and attorneys' fees and expenses to the attorneys who prosecuted this case.[5]

### B. Notice To Class Members Regarding The Settlements And Filing Claims

IPPs have published five notices to class members regarding the Settlements, the plans of distribution, and the right to file claims to share in the settlement proceeds.[6] The notice published in August 2015 regarding the 2015 Settlements informed class members that they could submit claims against all settlements. *See generally* ECF No. 4371-1. The notice also provided instructions to class members filing electronic and paper claims, as well as the claim form, and set a deadline of December 7, 2015 for their submission. *Id*. ¶¶ 4-18.  This Court has approved each of these notices as constitutionally adequate notice consistent with due process.[7]

_____

[3] *Ayres et al. v. Indirect Purchaser Plaintiffs, et al*., Nos. 20-16685, 20-16686, 20-16691 and 20-16699.

[4] *In re Cathode Ray Tube Antitrust Litig*., No. 20-15697, 2021 WL 4306895 (9th Cir. Sept. 22, 2021).

[5] IPPs' Motion for Distribution of Attorneys' Fees, Expenses, and Incentive Awards (ECF No. 6001) is under submission.

[6] ECF Nos. 1063-1 (Fisher Decl., Ex. A, Chunghwa Detailed Notice); 2511 (Fisher Decl., Ex. A, LG Detailed Notice); 4371-1 (Fisher Decl., Ex. A, 2015 Settlements Detailed Notice); 4953-2 (Fisher Decl., Ex. A, Chunghwa Reseller Detailed Notice); 5758-1 (Fisher Decl., Ex. A, Amended Settlements Detailed Notice).

[7] ECF Nos. 1105 ¶ 6 (Chunghwa); 2542 ¶ 6 (LG); 4712 at 7-9 (2015 Settlements); 5040 at 2 (Chunghwa Reseller); 5786 at 14-16 (Amended Settlements).

INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR ORDER APPOINTING FUND ADMINISTRATOR AND AUTHORIZING DISTRIBUTION OF SETTLEMENT FUNDS

1	The December 7, 2015, deadline was later modified in two limited respects. First, at the

2	request of the California Attorney General, the Court extended the claims deadline to June 30,

3	2016, for California natural persons only, in light of a parallel California state-court *parens*

4	*patriae* settlement. ECF No. 4339. Second, the Court extended the claims deadline to November

5	29, 2016 for resellers to file claims against the Chunghwa settlement. ECF No. 4712 at 31-33.

6	The amended settlements reached in 2019 did not require additional notice to the entire class

7	because the Court concluded that members of 22 Indirect Purchaser State Classes affected by the

8	amended settlements had already received "'the best notice practicable under the circumstances,'"

9	and that the amendments did not adversely affect class members. Final Approval Order at 14-15.

10	While the Court did allow IPPs to send notice to certain class members, it merely advised the

11	recipients of their right to object to the amendments and the fee award, and appear at the fairness

12	hearing. *Id.* at 15-16. The notice did not reopen, or address any issues regarding, the filing of claims.

13	**C.  The Two Plans Of Distribution**

14	The Court has approved two different Plans of Distribution for the Net Settlement Funds –

15	one plan for the Net Settlement Funds for all settlements except the Chunghwa Settlement (ECF

16	No. 5786 at 20), and another for the Chunghwa Net Settlement Fund. ECF No. 5040.

17	**1.  The Plan Of Distribution For All Settlements Except The Chunghwa Settlement**

18	The Court-approved Plan of Distribution applicable to all settlements except the

19	Chunghwa settlement:

20	> [P]rovides for (1) a "weighted *pro-rata* distribution to all members of the 22
21	> Indirect Purchaser State Classes that filed valid claims," (2) a minimum
22	> payment of at least $25 per claimant, and (3) a maximum payment of "three
> times the estimated money damages per claimant."[8]

23	Based on data obtained during the course of the litigation, the Plan for Distribution assigned

24	weights to different types and sizes of CRT Products based on the overcharge evidence for each.

25	CRT Products were categorized as Standard CRT Televisions (screen size of less than 30 inches),

26	

27	_____

28	[8] Final Approval Order (ECF No. 5786) at 20.

INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR ORDER APPOINTING
FUND ADMINISTRATOR AND AUTHORIZING DISTRIBUTION OF SETTLEMENT FUNDS

Large CRT Televisions (screen size of 30 inches or larger), or CRT Computer Monitors. Weights were assigned as follows: claims for purchases of Standard CRT Televisions were weighted as 1; claims for purchases of Large CRT Televisions were weighted as 4.3; and claims for purchases of CRT Computer Monitors were weighted as 3. The Court approved these weightings, and the Plan of Distribution in which they were included, in its Final Approval Order on July 7, 2016 (ECF No. 4712), at 26-29, 37 ¶ 8, and reaffirmed that approval in its Final Approval Order as to the amended settlements on July 13, 2020 (ECF No. 5786) at 20.[9]

### 2.  The Plan Of Distribution For The Chunghwa Settlement

The Court approved a separate Plan of Distribution for the proceeds of the Chunghwa settlement. ECF No. 5040. That plan specifies the following allocation procedure for claimants who are members of the Chunghwa settlement class members, which includes indirect purchasers of CRT Products who resold those products ("Resellers") and those who purchased CRT Products for their own use and not for resale ("End Users"):

- The Chunghwa funds will first be allocated among 24 states (the 22 Indirect Purchaser States plus Illinois and Oregon) *pro rata* in accordance with those states' respective populations in 2000. ECF No. 4712 at 29; ECF No. 5040 at 4.

- The Attorneys General of Illinois and Oregon have been allocated 8.59% and 2.37% of the Net Settlement Fund, respectively, which the Attorneys General have distributed to residents of Illinois and Oregon (ECF No. 5040 at 4; *see also* ECF No. 5376 (Order Granting State of Illinois', State of Oregon's and Chunghwa Picture Tube Ltd.'s Motion to Disburse the Illinois and Oregon Shares of the Chunghwa Settlement Funds));

- For the remaining 22 States, each state's pro rata share will be divided 50/50 between Resellers and End Users, and then distributed to Reseller and End user

---

[9] The term "CRT Weighted Units" refers to the number of CRT Products calculated using the weights as described in this paragraph. Fisher Decl. ¶ 9. For example, a claimant who purchased one large CRT television would be assigned 4.3 CRT Weighted Units for the purpose of calculating their pro rata share of the Net Settlement Funds.

INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR ORDER APPOINTING
FUND ADMINISTRATOR AND AUTHORIZING DISTRIBUTION OF SETTLEMENT FUNDS

1   claimants on the same weighted pro rata basis described above and approved by the

2   Court (ECF No. 5040 at 4-5);

3   • Payment amounts will be based on the number of valid claims filed, as well as on

4   the number and type of CRT Product(s) purchased;

5   • If Reseller claimants do not exhaust a particular state's Reseller fund, the residue

6   will be distributed pro rata to existing End User claimants from that state. *Id.*

7   IPP Counsel proposes that, like the other settlements, the Court authorize a $25 minimum

8   payment for Reseller claimants (qualifying End User claimants will receive the $25 minimum

9   payment pursuant to the Plan of Distribution for the other settlements). The minimum payment

10   will help to reduce administration costs and will avoid issuing checks for very small amounts.

11   Alioto Decl. ¶ 15.

12   **D. Claims Administration**

13   **1. Summary Of Settlement Administrators' Receipt And Review Of Claims**

14   The Settlement Administrator received a total of 156,467 claims through May 5, 2020 (the

15   "Cutoff Date," discussed below).  The Settlement Administrator conducted an extensive review

16   and audit of those claims. Fisher Decl. ¶¶ 10-12.  As a result of that process, the Settlement

17   Administrator has approved a total of 143,374 claims for purchases of 285,602,057 CRT Products,

18   or 422,268,446 CRT Weighted Units.  *Id*. The approved claimants include individual consumers,

19   small and large businesses, and some multinational corporations, most of which purchased CRT

20   Products for their own use and not for resale.[10]  Individual claimants typically purchased

21   anywhere from one to ten CRT Products for their own use, while small and large businesses

22   purchased anywhere from a few CRT Products to thousands of CRT Products.

23   Of the claims received, 145,191 were Timely Claims (i.e., claims submitted by the Court-

24   ordered deadlines described above) by End Users of CRT Products, submitted as paper or

25   electronic Claim Forms; the number of CRT Weighted Units claimed was 399,331,586,327.

26

27

28   _____

[10] As indicated above, Reseller claimants may only participate in the Chunghwa settlement.

INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR ORDER APPOINTING
FUND ADMINISTRATOR AND AUTHORIZING DISTRIBUTION OF SETTLEMENT FUNDS

1   Another 5,263 claims were Timely Claims from Resellers; the number of CRT Weighted Units
2   claimed was 1,266,905,808. *Id.* ¶ 10.

3         Subsequent to the Court-approved deadlines for the submission of Timely Claims, the
4   Settlement Administrator continued to receive claim submissions both electronically and by mail
5   ("Late Claims"). The Settlement Administrator continued to process and review claims that were
6   submitted through the May 5, 2020 Cutoff Date. For End Users, the Settlement Administrator
7   received 4,901 Late Claims submitted by the Cutoff Date amounting to 43,373,930 Weighted
8   Units. For Resellers, the Settlement Administrator received 1,112 Late Claims submitted by the
9   Cutoff Date amounting to 10,675,846 Weighted Units. *Id.* ¶ 11.

10        The Settlement Administrator reviewed each Timely and Late Claim form received by the
11  Cutoff Date for compliance with the Settlements' requirements. Some claims were found to be
12  deficient or incomplete. Among the various types of deficiencies found were the following:

13       • claims that were clearly outliers representing numbers that appeared to be
14         anomalies or that materially deviated from an expected range, for example, an
15         individual claiming to have purchased billions of CRT Products ("Outlier Claims");

16       • claims submitted by a third-party representative or agent on behalf of a claimant
17         ("Claims Aggregator") who failed to provide purchase quantities for CRT Products
18         on the Claim Form or only partially completed this information so that the Claim
19         Form showed "N/A" or "TBD" or "0" or was blank or some combination thereof
20         (referred to as "Placeholder Claims");

21       • claimants who directly submitted (not through a Claims Aggregator) incomplete
22         claim forms, including missing name and/or contact information, missing claim
23         eligibility information, missing purchase quantities, or failure to sign the Proof of
24         Claim form;

25       • claims for ineligible purchases, such as purchases of CRT Products directly from
26         any of the Defendants, purchases of non-CRT Products, purchases of Sony-branded
27         products, purchases made outside of the Class Period, purchases made outside of

28

INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR ORDER APPOINTING
FUND ADMINISTRATOR AND AUTHORIZING DISTRIBUTION OF SETTLEMENT FUNDS

the United States, purchases made in a state that is not one of the eligible states under the Settlements, or multi-state purchases where central purchasing of all CRT Products was asserted to have occurred in one of the eligible states;

- claims submitted by a Claims Aggregator on behalf of a claimant without an agreement demonstrating the authority of the Claims Aggregator to act as the claimant's agent or representative;

- duplicate claims submitted by the same corporate claimant, for example, a parent corporation submitting a claim that was inclusive of the CRT purchases of a subsidiary, where the subsidiary had already submitted its own claim for those purchases;

- duplicate claims submitted by the same individuals, for example, the same individuals submitting multiple claims with slight variations in their contact information, or multiple claims from persons residing at the same address that appeared to represent duplicate purchases of CRT Products);

- "Competing Claims" submitted by Claims Aggregators, where two Claims Aggregators each submitted a claim on behalf of the same claimant;

- inflated claims where claimants asserted that all CRT televisions purchased were Large rather than Standard sized (for which the overcharge and assigned CRT Weighted Units were significantly higher) or that CRT Products were replaced at twice the industry average.

*Id*. ¶ 12. A detailed description of the Settlement Administrator's procedures for addressing these different categories of deficient claims is set forth in the Fisher Declaration. *Id*. ¶¶ 13-21.

### 2. The Settlement Administrator's Audit Criteria And Results

All claims were subject to review and/or audit by the Settlement Administrator. For claims submitted directly by Class members, an audit threshold was set at purchases of 30 CRT Products for individual claims, 100 CRT Products for small businesses, 250 CRT Products for medium businesses, and 1,000 CRT Products for large businesses, where business size was based on the

number of employees as reported by the claimant. Where business size could not be determined, the audit threshold was set at the purchase of 50 CRT Products. Claimants were selected and placed into an audit pool consisting of 2,190 entities. For claims submitted by Claims Aggregators, the Settlement Administrator began by auditing large claims, meaning the top 5% of claims submitted by each Claims Aggregator. If audits resulted in substantial reductions of claimed purchases of CRT Products for a Claims Aggregator, then other claims submitted by that Claims Aggregator were added to the audit list. The Settlement Administrator also selected additional claims for audit based on comparisons of claim submissions by comparable companies. Fisher Decl. ¶ 22.

Considering all submitted claims, including Outlier Claims, reviews and audits were performed on claims that represent over 99% of all CRT Weighted Units initially claimed. Excluding Outlier Claims, reviews and audits were performed on 53,589 claims that accounted for over 98% of claimed CRT Weighted Units. The audit process involved reviewing voluminous purchase data and multiple sources of documentation for numerous claims. Other claims had little or no contemporaneous purchase records available which required vetting by other means, such as investigations of publicly available records, CRT television and computer monitor industry data, and other third-party data sources. The Settlement Administrator reviewed and evaluated the claimed CRT Weighted Units as follows: 83% were directly reviewed or audited; 9% were submitted by a Claims Aggregator whose previous audits resulted in no (zero) reduction in units claimed, leading the Settlement Administrator to treat further audits of their claims as not justified; and over 6% were submitted by Claims Aggregators that previously resolved audits for other claims in a manner that demonstrated a reasonable process for validating the claims submission process and accepting the calculations utilized. *Id.* ¶ 23.

Audit notices were sent to all audited claims, providing instructions on how to respond to the audit and the deadline for responses.  If no response was received, a second-chance audit notice was sent, providing a new deadline for response and informing the claimant that if no response was received, then claimed purchases of numerous CRT Products would be reduced to a

1   claim for a $25 minimum payment. When the Settlement Administrator received responses with

2   sufficient support for the originally claimed units, or sufficient support for revised purchase

3   quantities submitted by the claimant or its authorized representative, the claims were accepted or

4   revised and the audit was closed. For those audits where questions remained after audit responses

5   were received and more information was required, the Settlement Administrator pursued follow-

6   up communications until the audit was resolved with the claimant. In some cases, Class Counsel

7   was involved in assisting and resolving disputed audits. *Id.* ¶ 24.

8       The detailed results of the Settlement Administrator's audit, by category of claim, is set

9   forth in the Fisher Declaration filed herewith. *Id.* ¶¶ 25-28. The Settlement Administrator's

10  thorough review process identified and eliminated invalid Outlier Claims for both End Users and

11  Resellers. Excluding Outlier Claims, the Settlement Administrator's review process identified and

12  eliminated 88% of the CRT Weighted Units claimed from end-user Timely Claims, 65% from End

13  User Late Claims, 20% of the CRT Weighted Units from Reseller Timely Claims and 27% of the

14  CRT Weighted Units from Reseller Late Claims. *Id.* ¶ 30.

15          **3.  Proposal For Payment Of Late Claims**

16      Lead Counsel and the Settlement Administrator, with substantial assistance from U.S.

17  District Judge Jacqueline Scott Corley, have devised a fair and balanced proposal for the partial

18  payment of Late Claims. Alioto Decl., ¶ 16; Fisher Decl. ¶ 38. Lead Counsel and the Settlement

19  Administrator recommend that the Court adopt the following approach:

20      •   Late Claims "on file" with the Settlement Administrator as of May 5, 2020, and

21          approved by the Settlement Administrator, shall be paid at 50%-unit value, as

22          compared with Timely Claims, which shall be paid at 100%-unit value;

23      •   Placeholder Claims which, as of May 5, 2020, did not provide a good-faith number of

24          CRT units purchased are not considered "on file" and shall not be paid;

25      •   Claims filed after May 5, 2020 are rejected.

26

27

28

- Application of the 50% reduction to Late Claims shall not reduce the value of any such claim to less than the minimum payment of $25 (unless the minimum payment is reduced to less than $25 for all claimants).

- If any residual remains in the Net Settlement Fund after distribution checks become stale, such residual will be shared as follows (i) if the residual is less than or equal to $12 million, it shall be share pro rata by the Late Claimants, subject to a minimum threshold set at the Settlement Administrator's discretion, and (ii) if the residual is more than $12 million, it shall be shared pro rata by all claimants, subject to a minimum threshold set at the Settlement Administrator's discretion.

Alioto Decl. ¶ 17; Fisher Decl. ¶ 38.

As further explained below, Lead Counsel and the Settlement Administrator believe this proposal properly balances the interests of all claimants. Alioto Decl. ¶ 18; Fisher Decl. ¶¶ 29, 38. The Settlement website continues to inform claimants that the Court has not yet decided whether Late Claims will be paid. The proposal to pay Late Claims at 50% value has been shared with the Claims Aggregators and this motion will be posted on the Settlement website. Fisher Decl. ¶ 38. Attached as Exhibit D to the Fisher Declaration is a schedule of the approved End User claimants showing the number of CRT Weighted Units approved for each claim, with the number of Weighted Units reduced by 50% for Late Claims submitted on or before the Cutoff Date. *Id.* ¶ 39. Attached as Exhibit E to the Fisher Declaration is a schedule of all Reseller claimants showing the number of CRT Weighted Units approved for each claim, where the number of CRT Weighted Units is reduced by 50% for Late Claims submitted on or before the Cutoff Date. *Id.* ¶ 40.

### E.  The Net Settlement Funds Available For Distribution

#### 1.   The Amounts Recovered

In or prior to the year 2015, pursuant to the original Settlement Agreements with IPPs, the Settling Defendants deposited $576,804,127[11] into multiple defendant-specific escrow accounts at

---

[11] Defendant Chunghwa paid its $10,000,000 in three installments. Thus, Lead Counsel required that it pay interest on those installments, which totaled $54,127. Alioto Decl. ¶ 2.

Union Bank and Citi Bank, under the supervision of the Court, with IPP Lead Counsel and an attorney for each defendant as Co-Escrow Agents on each account (the "Escrow Accounts"). Alioto Decl. ¶ 2. Subsequently, the Settlement Agreements were amended to reduce the settlement consideration by $29,000,000,[12] which amount was refunded to the Settling Defendants by Order dated July 13, 2020. ECF No. 5787.[13] The amended Settlements reduced the principal amount of the Settlement Fund to $547,804,127 plus accrued interest.[14]

## 2. Interest Accrued On The Fund

The Escrow Accounts have been invested in instruments backed by the full faith and credit of the United States Treasury (*i.e.*, T-Bills and T-Notes). These investments have yielded interest at various rates over the years. As of May 31, 2022, the net amount of interest earned on the settlement funds to be distributed to claimants was $17,471,780.40. Interest is continuing to accrue, thus the Net Settlement Funds available for distribution will continue to increase. Alioto Decl. ¶ 5.

## 3. Court-Authorized Payments From The Settlement Funds

The Court has previously authorized deductions totaling $149,993,268.44 to be made from the Escrow Accounts for the establishment of the Future Expense Fund (described below), the cost of providing notice of the various settlements, claims administration, attorneys' fees plus interest,[15] litigation expenses, incentive awards to class representatives, and distributions to the Attorneys General of Illinois and Oregon.[16] Alioto Decl. ¶ 6.

//

---

[12] Final Approval Order at 3, n.7.

[13] Defendant Hitachi has not yet withdrawn the $1,498,846.33 that the Court ordered be refunded to it. These funds are not available for distribution to claimants. Alioto Decl. ¶ 3.

[14] Final Approval Order at 5. IPP Counsel reduced their attorney fee request by $29,000,000 to ensure the reduction in the settlements would not adversely affect class members. *Id.* at 5-6.

[15] Pursuant to the Settlement Agreements and the Final Approval Order, IPP Counsel is entitled to interest on their attorney fee award. *See* ECF Nos. 3862-1 ¶ 23a, 5786 at 26. The attorney fee award is approximately 23.66% of the total $547,750,000 settlement fund. Thus, IPP Counsel is entitled to 23.66% of the total interest accrued on the fund, net of taxes.

[16] *See* ECF Nos. 993; 2248; 3906; 4712 at 34, 37; 5376; 5786 at 25-27; 6003.

INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR ORDER APPOINTING
FUND ADMINISTRATOR AND AUTHORIZING DISTRIBUTION OF SETTLEMENT FUNDS

**1**

### 4. <u>Additional Costs And Expenses Incurred In Connection With The Prosecution And Settlement Of This Litigation</u>

**2**

This Court previously approved the establishment of the Future Expense Fund with

**3**

withdrawals totaling $6,250,000 from the Escrow Accounts,[17] and approved the expenditure of

**4**

$4,495,878.02 from that fund for common litigation expenses. Final Approval Order at 25-27. A

**5**

total of $2,354,121.98 ($1,754,121.98 remaining from the $6,250,000, plus $600,000 received from

**6**

the Direct Action Plaintiffs[18]) was retained in the Future Expense Fund to fund the ongoing

**7**

litigation. Final Approval Order at 25; Alioto Decl. ¶ 7.

**8**

Since September 2015, when IPPs filed their motion for attorneys' fees and reimbursement

**9**

of expenses (ECF No. 4071), IPP Counsel have paid an additional $2,330,710.87 from the Future

**10**

Expense Fund and $345,171.76 in out-of-pocket expenditures for expenses incurred in the continued

**11**

prosecution and settlement of this case. Alioto Decl. ¶¶ 20-23. By this motion, and as further detailed

**12**

herein, IPPs request that the Court approve the $2,330,710.87 expenditure from the Future Expense

**13**

Fund, and authorize reimbursement to IPP Counsel of the $345,171.76 in out-of-pocket expenses.

**14**

### 5. <u>Additional Payments Owed To The Settlement Administrator</u>

**15**

The Settlement Administrator has incurred additional claims administration fees and

**16**

expenses in the amount of $99,240.13 that have not yet been paid.  Fisher Decl. ¶ 34. Lead Counsel

**17**

has reviewed these claims administration expenses and has determined them to be reasonable and

**18**

necessary for the claims administration in this case. Alioto Decl. ¶ 19. By this motion, IPP Counsel

**19**

seeks authorization to pay this amount from the Settlement Fund, as further detailed below.

**20**

### 6. <u>Reserves And The Amount Available For Distribution</u>

**21**

IPP Lead Counsel commissioned and oversaw a thorough audit of the individual Escrow

**22**

Accounts by a Certified Public Accountant. Alioto Decl. ¶ 4. Pursuant to this Court's Order

**23**

requiring that the Chunghwa settlement only be charged its pro rata share of litigation expenses

**24**

(ECF No. 4443 at 6-7), the $2.5 million withdrawal from the Chunghwa settlement fund for the

**25**

---

**26**

[17] ECF Nos. 1334, 2618, 2944, and 3524.

**27**

[18] The Direct Action Plaintiffs ("DAPs") paid these monies to IPPs when they joined the litigation in 2012 in exchange for access to IPP Counsel's extensive work product. Alioto Decl. ¶ 7.

**28**

MDL NO. 1917

INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR ORDER APPOINTING
FUND ADMINISTRATOR AND AUTHORIZING DISTRIBUTION OF SETTLEMENT FUNDS

Future Expense Fund was reallocated pro rata amongst all settlements. Alioto Decl. ¶ 7. Other common expenses were also reallocated to ensure that each Escrow Account only pays its pro rata share of common expenses. *Id*.

As of May 31, 2022, $6,341,556.68 is available for distribution from the Chunghwa Escrow Account and $414,143,781.42 from the other settlements' Escrow Accounts. *Id.* ¶ 9. These amounts include the settlement proceeds plus accrued interest, less taxes, escrow fees, accounting fees, and Court-approved attorneys' fees plus interest, costs, expenses, and incentive awards to Class Representatives. Interest is continuing to accrue. *Id*. If the Court approves the payment of an additional $99,240.13 to the Settlement Administrator, and $345,171.76 in out-of-pocket expenses to IPP Counsel, these amounts will also be deducted pro rata from the Escrow Accounts, leaving $6,321,228.55 in the Chunghwa Fund and $413,719,697.66 in the other funds.[19]

In addition, the Settlement Administrator has submitted an estimated budget of $500,000-$600,000 for future administration costs and fees. Fisher Decl. ¶ 34.  This figure includes the cost of providing reports and materials in support of this motion, costs and fees associated with distribution of payments to Class Members, reaching claimants who submitted claims nearly seven years ago, ongoing communications with claimants and their representatives, and the closing of the case in The Notice Company's files. *Id.*, Ex. B. Lead Counsel and the Settlement Administrator propose that a reserve of $10,000,000 be withheld, on a pro rata basis, from funds distributed to claimants being awarded $1 million or more for any contingencies that may arise with respect to claims, to pay for any other future fees or expenses authorized by the Court and incurred in connection with administering the Settlements, as well as any further escrow fees, taxes, and the costs of preparing appropriate tax returns. Alioto Decl. ¶ 11; Fisher Decl. ¶ 35.

Accordingly, $6,137,693.41 will be available for distribution now to End User and Reseller claimants from the Chunghwa settlement, and $403,903,232.80 will be available for

---

[19] Alioto Decl. ¶ 10; Fisher Decl. ¶ 32. The $6,250,000 for the Future Expense Fund has already been withdrawn from the Escrow Accounts, and has already been accounted for in the calculation of the Net Settlement Funds. Alioto Decl. ¶ .

INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR ORDER APPOINTING
FUND ADMINISTRATOR AND AUTHORIZING DISTRIBUTION OF SETTLEMENT FUNDS

1   distribution to End User claimants from the other settlements. Alioto Decl. ¶ 12. These amounts

2   are equal to the current Net Settlement Funds less $99,240.13 to be paid to the Settlement

3   Administrator, the $345,171.16 in out-of-pocket expenses to IPP Counsel, and $10,000,000 to be

4   held in reserve. *Id.* ¶¶ __. Any unused portion of the $10,000,000 reserve will be distributed to the

5   claimants from which it is withheld as part of a subsequent distribution. *Id.* ¶ __.

6           **F.  Distribution Of The Net Settlement Fund**

7           In order for The Notice Company to process the payments to claimants, the current Escrow

8   Agents (Citibank and Union Bank) must be ordered to transfer all funds from the Escrow

9   Accounts, including all accrued interest, to the account established for the Qualified Settlement

10  Fund ("QSF") at Western Alliance Bank and administered by The Notice Company. The Escrow

11  Agents also must transfer to The Notice Company the "administrator" role in accordance with

12  Section 468B of the Internal Revenue Code (26 U.S.C. § 468B) for the QSF, as outlined in the

13  Escrow Agreements. The Escrow Agents have agreed to cooperate with The Notice Company and

14  Lead Counsel in this transition. Alioto Decl. ¶ 13. The Notice Company will not distribute,

15  withdraw, or transfer any funds from the QSF account without written authorization ("Distribution

16  Notice") from Lead Counsel. *Id.* ¶ 14.

17          Upon the entry of an order appointing The Notice Company as the Fund Administrator and

18  approving the distribution of the Net Settlement Funds, the Fund Administrator will (a) transfer

19  the amount ordered by the Court into a Distribution Fund and (b) calculate each authorized

20  claimant's pro rata share of that Fund pursuant to the Court-approved Plans of Distribution for the

21  Chunghwa Net Settlement Fund and the Net Settlement Fund for the other settlements. Fisher

22  Decl. ¶¶ 36-37. The $25 minimum payment will be achieved by first calculating payments by

23  allocating funds based on each claimant's approved CRT Weighted Units, identifying those claims

24  that would receive less than $25, and then recalculating payments so that all claims are grossed up

25  to a $25 minimum payment. Subject to the minimum payment of $25, payments per claimant will

26  not exceed the allowable maximum amount so long as the Settlement Administrator calculates

27  payments utilizing the assigned weights associated with the purchased CRT Products. *Id.*

28

16                          MDL NO. 1917

INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR ORDER APPOINTING
FUND ADMINISTRATOR AND AUTHORIZING DISTRIBUTION OF SETTLEMENT FUNDS

The Settlement Administrator has already determined the approved CRT Weighted Units for each End User and Reseller claimant. *Id*. ¶¶ 39-40, Exs. D & E. The Settlement Administrator has also calculated the approximate dollar value of a CRT Weighted Unit for End Users (approximately $5.90) and Resellers (approximately $0.01)[20] by dividing the total approved CRT Weighted Units by the Net Settlement Funds set forth above. *Id*.

Once the Court has approved the Settlement Administrator's recommendations regarding the CRT Weighted Units claimed, the Settlement Administrator will calculate each claimant's pro rata share of the Net Settlement Funds by dividing each claimant's approved CRT Weighted Units by the total number of claimed CRT Weighted Units to calculate each eligible claimant's pro rata share (%) of each fund. *Id*. ¶¶ 36 -37. These percentages will then be applied against the Net Settlement Funds to determine each claimant's pro rata share of each fund. *Id*. Thus, for example, an individual End User claimant with an approved claim for one Large Television (4.3 CRT Weighted Units), one Standard Television (1 CRT Weighted Unit), and three computer monitors (9 CRT Weighted Units) would receive approximately $82.23 based on a total of 14.3 CRT Weighted Units. *Id*. ¶ 39. Finally, the Settlement Administrator will pay the claimants by check or electronically.  *Id*. ¶ 35.

## III.     **<u>ARGUMENT</u>**

IPPs request an Order authorizing the distribution of the Net Settlement Funds to the approved claimants based on the approved CRT Weighted Units set forth in Exhibits D and E to the Fisher Declaration. Entry of an Order permitting a distribution of the Net Settlement Funds to all approved claimants is proper and appropriate at this time because final judgments have been

---

[20] The difference between the CRT Weighted Unit value for End Users versus Resellers is due to the fact that Resellers are only members of the Chunghwa settlement class, and are only entitled to share in 50% of the Chunghwa Net Settlement Fund (approximately $3,068,000). In contrast, End User claimants may share in the Net Settlement Funds for all settlements. Additionally, the Chunghwa Plan of Distribution requires that the $3,068,000 be divided amongst the 24 states pro rata according to each state's respective population in 2000, before being distributed pro rata to claimants in each state. Thus, the value of a CRT Weighted Unit for Reseller claimants is not only much less than End Users, it will also differ for Resellers in different states depending on the population and the number of Reseller claimants. Fisher Decl. ¶¶ 37, 40.

entered and objectors have exhausted their appeals. *See* 4 William B. Rubenstein, *Newberg on Class Actions*, § 12:19 (5th ed.) (Westlaw 2018). As set forth above, the Court has approved two Plans of Distribution that allocate the Net Settlement Funds on a weighted pro rata basis based on each claimant's approved CRT Weighted Units as a percentage of the total CRT Weighted Units claimed. Distribution of the Net Settlement Funds, as set forth in Exhibits D and E to the Fisher Declaration, will give effect to the Court-approved pro rata Plans of Distribution, which compensate class members based on the extent of their injuries. *See In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 332 (N.D. Cal. 2018) ("A plan of allocation that reimburses class members based on the type and extent of their injuries is generally reasonable.").

### A.    The Court Should Approve The Settlement Administrator's Recommendations Regarding Acceptance Or Rejection Of Claims

The Court should adopt the Settlement Administrator's recommendations regarding the acceptance or rejection of claims submitted on or before the applicable Claims Deadline. As set forth above, the Settlement Administrator has conducted an extremely thorough and diligent review of claims in this complex case. Fisher Decl. ¶¶ 8-31. Where it found claims that were incomplete or deficient, it gave the claimants a fair opportunity to correct or supplement them. *Id*. ¶¶ 20-21, 24. Furthermore, its review of claims included an audit to confirm the eligibility of purchases. *Id*. ¶¶ 22-31. The Settlement Administrator processed late claims, and also considered late responses to requests for information if relevant documentation and/or information was provided. *Id.* ¶¶ 11, 26, 28. Additionally, where possible, the Settlement Administrator used publicly available data and worked with an expert economist to help audit certain claims. *Id.* ¶ 23. The Settlement Administrator and Lead Counsel also spent a significant amount of time working with claimants and/or their representatives or counsel to resolve claim disputes. *Id.* ¶¶ 23-24. Based on this process, the Settlement Administrator has determined that there are 143,723 claims that merit acceptance and payment. *Id*. ¶¶ 39-40, Exs. D & E. A class action settlement administrator's decision regarding class members' eligibility to participate in a distribution of settlement funds merits deference from the Court.  *In re Int'l Air Transp. Surcharge Antitrust*

INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR ORDER APPOINTING
FUND ADMINISTRATOR AND AUTHORIZING DISTRIBUTION OF SETTLEMENT FUNDS

1    *Litig.*, No. M 06-01793 CRB, 2011 WL 6337625, at \*2 (N.D. Cal. Dec. 19, 2011), *aff'd*, 577 F.

2    App'x 711 (9th Cir. 2014) ("The Settlement Administrator, who was involved in the mediation

3    and negotiation of the settlement agreements, and has been administering the funds for three years,

4    has direct and extensive knowledge of this case. . . . Thus, the Court must give some deference to

5    his recommendation as to factual matters.").

6    ## B. The Court Should Adopt Lead Counsel's Recommendation Regarding Late,
       Amended And Placeholder Claims

7

8    There have been a substantial number of Late Claims in this case. Lead Counsel's

9    recommended approach—under which Late Claims submitted before May 5, 2020 would be paid

10   at 50% of the value of Timely Claims, with the potential for an additional payment from any

11   residue—strikes a balance between disallowing Late Claims entirely and allowing all Late Claims

12   at full value despite the Court-ordered deadlines. Lead Counsel's approach is designed to avoid

13   the delay and expense of continuing litigation over Late Claims. Alioto Decl. ¶ 18.

14   "Settlement administration in a complex class action often requires courts to use their

15   equitable powers under Rule 23 to manage the disparate interests competing over a finite pool of

16   assets with which to satisfy the class …. A primary use of these equitable powers is balancing the

17   goals of expedient settlement distribution and the consideration due to late-arriving class

18   members. . .. Integral to this balancing, however, is the court's responsibility and inherent power

19   and duty to protect unnamed, but interested persons." *In re Orthopedic Bone Screw Prods. Liab.*

20   *Litig.*, 246 F.3d 315, 321 (3d Cir. 2001) (internal quotation marks and citations omitted).

21   Ultimately, "[t]he goal of any distribution method is to get as much of the available damages

22   remedy to class members as possible and in as simple and expedient a manner as possible." 4

23   William B. Rubenstein, *Newberg on Class Actions* § 12:15 (5th ed.) (Westlaw 2018).

24   The Court has discretion to allow claims submitted after its Claims Deadline. *In re*

25   *Gypsum Antitrust Cases*, 565 F.2d 1123, 1128 (9th Cir. 1977). Judicial discretion in that regard

26   flows from the court's traditional equity powers to protect interested parties and class members.

27   *Welch & Forbes, Inc. v. Cendant Corp.* (*In re Cendant Corp. Prides Litig.*), 233 F.3d 188, 194-97

28

INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR ORDER APPOINTING
FUND ADMINISTRATOR AND AUTHORIZING DISTRIBUTION OF SETTLEMENT FUNDS

1  (3d Cir. 2000) (quoting *Zients v. LaMorte,* 459 F.2d 628, 630 (2d Cir.1972)) ("'Until the fund

2  created by the settlement is actually distributed, the court retains its traditional equity powers ... to

3  protect unnamed, but interested persons.' A Court may assert this power to allow late-filed proofs

4  of claim and late-cured proofs of claim."). In the exercise of that discretion, courts have allowed

5  late claims in some circumstances and denied them in others. *See, e.g., In re Valdez*, 289 F. App'x

6  204, 206 (9th Cir. 2008). In many cases, courts approve the full payment of late claims.[21]

7        Here, there are considerations that militate both in favor of and in opposition to allowing

8  the payment of Late Claims, and which compel the conclusion that Lead Counsel's balanced

9  proposal is the best option for all claimants, both timely and late.  The Late Claims at issue in this

10  case are very large, both in terms of the number of claims, and the approximate value of those

11  claims. If all Late Claims were paid in full here, they would substantially dilute the value of

12  Timely Claims, leading to objections from timely claimants and likely appeals, and further

13  delaying the distribution to all claimants.  Fisher Decl. ¶ 29.

14        On the other hand, the large number and value of the Late Claims in this case also cuts in

15  favor of granting late claimants some relief. Not allowing *any* Late Claims in any amount would

16  deny thousands of class members with otherwise valid claims any share of the recovery; late

17  claimants are, like timely claimants, class members who were injured by defendants' conspiracy

18  and whose interests Lead Counsel has an obligation to represent and the Court has an obligation to

19  consider. Moreover, denying Late Claims outright would spur further litigation, which would

20  diminish the common fund and further delay the distribution to timely claimants. Conversely,

21  given the status of the case, allowing Late Claims under Lead Counsel's proposal has not and will

22  not delay the distribution of funds to timely claimants.

23

24  _____

25  [21] *See, e.g., In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 03-1827, ECF Nos. 9217, 9273 (N.D.
Cal. 2014) (approving class counsel's recommendation to pay late claims submitted over 18

26  months after the deadline the same as timely claims); *In re Dynamic Random Access Memory
(DRAM) Antitrust Litig.*, No. 02-1486, ECF Nos. 2273, 2283 (N.D. Cal. 2016) (class counsel

27  recommended and the court approved the payment of late claims filed up to approximately one
year after the deadline be paid in full).

28

INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR ORDER APPOINTING
FUND ADMINISTRATOR AND AUTHORIZING DISTRIBUTION OF SETTLEMENT FUNDS

In sum, Lead Counsel submits that paying Late Claims filed through May 5, 2020 at 50% of the value of Timely Claims with the opportunity for additional compensation from any residue, while denying claims filed after that date, strikes the proper balance. It gives late claimants sufficient compensation for their injuries, limits the dilution to Timely Claims, and avoids further litigation. Finally, other courts have struck a similar balance.[22] IPPs submit that this proposal is reasonable and urge the Court to adopt it.

### C.   The Court Should Approve The Reimbursement Of Expenses

"An attorney is entitled to 'recover as part of the award of attorney's fees those out-of-pocket expenses that would normally be charged to a fee paying client.'" Final Approval Order at 25 (quoting *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (internal quotation marks and citation omitted)); *see also* Fed. R. Civ. P. 23 subd. (h) ("In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement.").

### 1.   The Court Should Authorize Payment Of The Settlement Administrator's Unpaid Fees And Expenses

The Settlement Administrator has provided Lead Counsel with invoices detailing additional the $99,240.13 in fees and expenses it has incurred from September 1, 2021 through May 31, 2022 to administer claims submitted by the Class Members, prepare for the filing of this motion, and prepare to distribute the settlement funds to Class Members. Fisher Decl., ¶ 34 and Exhibit B.[23]   Lead Counsel has reviewed these invoices and based on Lead Counsel's first-hand

---

[22] For example, in *DRAM*, although the court ordered the payment in full of late claims filed before a certain date, for claims filed after that cut-off date, the court ordered they be paid *pro rata* from any uncashed checks, up to the full value of timely claims. *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.,* No. 02-1486, ECF No. 2283 at 5-6. Claims filed after a certain date were disallowed entirely. *Id.* at 6.

[23] A summary of all payments received by the Settlement Administrator for notice costs and claims administration from 2011 through August 2021 is attached as Exhibit B to the Fisher Declaration. This Court has already approved the payment of the Settlement Administrator's invoices that were paid from the Escrow Accounts. *See* ECF No. 6003 at 5. The Settlement Administrator's other invoices for work performed from 2015-2017 were paid from the Future Expense Fund, as further detailed below. Alioto Decl. ¶ 23, Ex. A.

1   knowledge of the work performed by the Settlement Administrator, recommends that the Court

2   approve the payment of this unpaid amount as fair, reasonable and necessary for the

3   administration of claims in this complex case.  Alioto Decl. ¶ 19.

4        The Settlement Administrator's work in this case has required a high level of skill,

5   dedication, and effort. The Settlement Administrator had to process and track over 150,000 claims,

6   over 40,000 of which were filed in paper form and had to be manually entered in a database.

7   Fisher Decl. ¶ 10. In addition, the Settlement Administrator audited over 50,000 claims, some

8   requiring the review of voluminous purchase data and other documentation, and others which had

9   little or no contemporaneous purchase records and had to be vetted by other means, such as

10  investigations of publicly available records, CRT television and monitor industry data, and other

11  third-party data. Id. ¶¶ 22-31.

12       Furthermore, complex factual and legal issues arose with regard to certain claims. For

13  example, some large claimants inflated their purchases of CRT Products and claimed, for example,

14  that they purchased large CRT televisions (for which the overcharge was significantly higher),

15  and/or that they replaced televisions at twice the industry average. Id. ¶ 12. The Settlement

16  Administrator substantially reduced these claims by investigating and procuring data regarding the

17  types and frequency of television purchases by certain types of business during the Class Period.

18  Id. ¶ 19. Other claimants sought to recover for purchases of CRT Products in states that were not

19  included in the settlement class, or for foreign purchases of CRT Products, by asserting that their

20  company purchased from a central office in one of the 22 States. Such claims required

21  investigation into whether the claimant did, in fact, purchase their CRT Products from a central

22  office located in one of the 22 States, requiring numerous communications with the claimant to

23  substantiate the claim, and legal research into whether the relevant state statutes permitted

24  recovery for such purchases. Id.

25       In sum, the Settlement Administrator substantially increased eligible claimants' pro rata

26  recoveries by investigating and reducing inflated claims. The Settlement Administrator should be

27

28

INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR ORDER APPOINTING
FUND ADMINISTRATOR AND AUTHORIZING DISTRIBUTION OF SETTLEMENT FUNDS

appropriately compensated for this work. IPPs request that the Court authorize the payment of $99,240.13 for fees and expenses incurred from September 2021 to May 2022.

### 2. The Court Should Approve The Expenditures From The Future Expense Fund And Authorize The Reimbursement Of Litigation Expenses To IPP Counsel

The Court should approve the expenses IPP Counsel have incurred since September 2015 in connection with the continued prosecution and settlement of this case on behalf of the 22 States.

As stated above, since September 2015 (when IPPs filed their motion for attorneys' fees and reimbursement of expenses), IPP Counsel has expended an additional $2,330,710.87 of the $2,354,121.98 remaining in the Future Expense Fund for expenses incurred in the continued prosecution and settlement of this litigation. Alioto Decl. ¶ 20. A detailed list of these expenses is attached to the Alioto Declaration as Exhibit A. The separate categories of expenses are as follows:

| CATEGORY | AMOUNT |
|---|---|
| Notice/Claims Administration | $1,846,125.41 |
| Experts/Consultants/Investigators | $194,686.32 |
| Special Masters/Mediators | $176,390.15 |
| Document Depository/Management | $33,970.86 |
| Translations | $20,416.82 |
| Court Reporters/Deposition Transcripts & Videos | $44,244.43 |
| Travel/Meals | $5,834.48 |
| Filing/Messengers | $1,089.19 |
| Computer Legal Research | $2,050.36 |
| Accounting/Taxes | $5,902.85 |
| **TOTAL:** | **$2,330,710.87** |

As of May 31, 2022, the balance of the Future Expense Fund was $40,375.83, including accrued interest on the fund. These funds are being retained in the Future Expense Fund for case expenses, including the ongoing litigation against the Irico Defendants. Alioto Decl. ¶ 21.

In addition, IPP Counsel has expended an additional $345,171.76 from the Litigation Fund (which is funded by assessments by IPP Counsel) for the continued prosecution and settlement of this litigation. *Id*. ¶ 22. These expenses are categorized as follows:

| CATEGORY | AMOUNT |
|---|---|
| Notice | $40,030.00 |
| Experts/Consultants/Investigators | $186,650.55 |
| Special Masters/Mediators | $90,310.81 |
| Outside Copies/Printing | $1,885.03 |
| Court Reporters/Deposition Transcripts | $5,287.52 |
| Witness/Service Fees | $4,770.48 |
| Travel | $1,252.15 |
| Filing Costs - Court Fees/Postage/Couriers | $2,193.22 |
| Computer Legal Research | $8,442.00 |
| Accounting Fees | $4,350.00 |
| **TOTAL:** | **$345,171.76** |

The foregoing expenditures from the Future Expense Fund and the Litigation Fund are reflected in the books and records maintained by Lead Counsel. Alioto Decl. ¶ 23. The expenses are set forth in detail in Exhibit A to the Alioto Declaration, and include claims administration, expert economists, appellate counsel, deposition transcripts and videos,[24] special masters, mediators, certified translations, online document depository, online legal research, filing and witness fees. *Id.* These expenses were reasonable and necessary for the prosecution and settlement of this action and are routinely approved by courts as proper litigation expenses. *See, e.g., Willner v. Manpower Inc.*, No. 11-cv-02846-JST, 2015 WL 3863625, at *7 (N.D. Cal. June 22, 2015) (attorney may recover from common fund the out-of-pocket expenses normally charged to a paying client, such as research, filing fees, travel, mediation, telephone charges, obtaining transcripts, copying, and mailing). IPPs request the Court approve the $2,330,710.87 expenditure from the Future Expenses Fund, and authorize reimbursement to IPP Counsel of the $345,171.76 in out-of-pocket expenses.

## IV.   CONCLUSION

For the foregoing reasons, IPPs respectfully request that the Court grant this motion and enter an Order: (1) appointing The Notice Company as the Fund Administrator; (2) authorizing

---

[24] The deposition video expenses were incurred before September 2015. These expenses were being reviewed with the vendor and thus were not submitted to the Court as part of IPPs' September 2015 motion. Alioto Decl. ¶ 23.

INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR ORDER APPOINTING
FUND ADMINISTRATOR AND AUTHORIZING DISTRIBUTION OF SETTLEMENT FUNDS

1   payment of all claims based on the CRT Weighted Units approved by the Settlement

2   Administrator and according to the Court-approved pro rata Plans of Distribution, as set forth in

3   Exhibits D and E to the Fisher Declaration; (3) authorizing payment to the Settlement

4   Administrator for unreimbursed costs and expenses incurred in the amount of $99,240.13; (4)

5   approving the $2,330,710.87 expenditure from the Future Expense Fund; (5) authorizing

6   reimbursement to IPP Counsel of the $345,171.76 in out-of-pocket expenses; and (6) authorizing

7   IPPs to reserve $10,000,000 on a pro rata basis, from funds distributed to claimants being awarded

8   $1 million or more, for the payment of future claims administration costs, potential tax liability,

9   and/or other issues.

10                                          Respectfully submitted,

11  Dated: June 23, 2022                      /s/ Mario N. Alioto

12                                          Mario N. Alioto (56433)
                                            Lauren C. Capurro (241151)
13                                          TRUMP, ALIOTO, TRUMP & PRESCOTT, LLP
                                            2001 Union Street, Suite 483
14                                          San Francisco, CA  94123
                                            Telephone:     (415) 563-7200
15                                          Facsimile:     (415) 346-0679
16                                          malioto@tatp.com
17                                          laurenrussell@tatp.com

18                                          **Lead Class Counsel for the Indirect Purchaser
19                                          Plaintiffs**

20

21

22

23

24

25

26

27

28
INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR ORDER APPOINTING
FUND ADMINISTRATOR AND AUTHORIZING DISTRIBUTION OF SETTLEMENT FUNDS