Mario N. Alioto (56433)
Lauren C. Capurro (241151)
TRUMP, ALIOTO, TRUMP & PRESCOTT LLP
2001 Union Street, Suite 482
San Francisco, CA 94123
Telephone: 415-563-7200
Facsimile: 415- 346-0679
Email: malioto@tatp.com
laurenrussell@tatp.com

*Lead Counsel for the Indirect Purchaser Plaintiffs for the 22 States*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Master File No. 4:07-cv-05944-JST<br>Case No. 13-cv-03234-JST<br><br>MDL No. 1917 |
| This Document Relates to:<br><br>INDIRECT PURCHASER ACTIONS FOR THE 22 STATES | **DECLARATION OF MARIO N. ALIOTO IN SUPPORT OF INDIRECT PURCHASER PLAINTIFFS' MOTION FOR ORDER APPOINTING FUND ADMINISTRATOR AND AUTHORIZING DISTRIBUTION OF SETTLEMENT FUNDS**<br><br>Hearing Date: July 28, 2022<br>Time: 2:00 p.m.<br>Courtroom: 6, 2nd Floor (Oakland)<br>Judge: Honorable Jon S. Tigar |

I, Mario N. Alioto, declare:

1. I am an attorney duly licensed by the State of California and am admitted to practice before this Court. I am a partner with the law firm Trump, Alioto, Trump & Prescott, LLP and my firm serves as Lead Counsel for the Indirect Purchaser Plaintiffs ("IPPs") in the above-captioned action. The matters set forth herein are within my personal knowledge and if called upon and sworn as a witness I could competently testify regarding them.

## THE NET SETTLEMENT FUNDS FOR DISTRIBUTION

2. In or prior to the year 2015, pursuant to the original Settlement Agreements with IPPs, the Settling Defendants deposited $576,804,127[1] into multiple defendant-specific escrow accounts at Union Bank and Citi Bank, under the supervision of the Court. I and an attorney for each defendant are Co-Escrow Agents on each account (the "Escrow Accounts").

3. Subsequently, the Settlement Agreements were amended to reduce the settlement consideration by $29,000,000, which amount was refunded to the Settling Defendants pursuant to Order dated July 13, 2020. ECF No. 5787. Defendant Hitachi has not yet withdrawn the $1,498,846.33 that the Court ordered be refunded to it. However, these funds are not available for distribution to claimants. The amended Settlements reduced the principal amount of the Settlement Fund to $547,804,127 plus accrued interest.

4. In preparation for distribution and this Motion, I commissioned and oversaw a thorough audit of the individual Escrow Accounts by a Certified Public Accountant.

5. The Escrow Accounts have been invested in instruments backed by the full faith and credit of the United States Treasury (*i.e.*, T-Bills and T-Notes). These investments have yielded interest at various rates over the years. As of May 31, 2022, the net amount of interest earned on the settlement funds to be distributed to claimants was $17,471,780.40. Interest is continuing to accrue, thus the Net Settlement Funds available for distribution will continue to increase.

---

[1] Defendant Chunghwa paid its $10,000,000 in three installments. Thus, I negotiated settlement terms requiring Chunghwa to pay interest on those installments, which totaled $54,127.

6. The Court has previously authorized deductions totaling $149,993,268.44 to be made from the Escrow Accounts for the establishment of the Future Expense Fund (described below), the cost of providing notice of the various settlements, claims administration, attorneys' fees plus interest,[2] litigation expenses, incentive awards to class representatives, and distributions to the Attorneys General of Illinois and Oregon.[3]

7. This Court previously approved the establishment of the Future Expense Fund with withdrawals totaling $6,250,000 from the Escrow Accounts,[4] and approved the expenditure of $4,495,878.02 from that fund for common litigation expenses. A total of $2,354,121.98 ($1,754,121.98 remaining from the $6,250,000, plus $600,000 received from the Direct Action Plaintiffs[5]) was retained in the Future Expense Fund to fund the ongoing litigation.

8. Pursuant to this Court's Order requiring that the Chunghwa settlement only be charged its pro rata share of litigation expenses (ECF No. 4443 at 6-7), the $2.5 million withdrawal from the Chunghwa settlement fund for the Future Expense Fund was reallocated pro rata amongst all settlements. Other common expenses were also reallocated to ensure that each Escrow Account only pays its pro rata share of common expenses.

9. As of May 31, 2022, $6,341,556.68 is available for distribution from the Chunghwa Escrow Account and $414,143,781.42 from the other settlements' Escrow Accounts. These amounts include the settlement proceeds plus accrued interest, less taxes, escrow fees, accounting fees, and Court-approved attorneys' fees plus interest, costs, expenses, and incentive awards to Class Representatives. Interest is continuing to accrue.

---

[2] Pursuant to the Settlement Agreements and the Final Approval Order, IPP Counsel is entitled to interest on their attorney fee award. *See* ECF Nos. 3862-1 ¶ 23a, 5786 at 26. The attorney fee award is approximately 23.66% of the total $547,750,000 settlement fund. Thus, IPP Counsel is entitled to 23.66% of the total interest accrued on the fund, net of taxes.

[3] *See* ECF Nos. 993; 2248; 3906; 4712 at 34, 37; 5376; 5786 at 25-27; 6003.

[4] ECF Nos. 1334, 2618, 2944, and 3524.

[5] The Direct Action Plaintiffs ("DAPs") paid these monies to IPPs when they joined the litigation in 2012 in exchange for access to IPP Counsel's extensive work product.

10. If the Court approves the payment of an additional $99,240.13 to the Settlement Administrator, and $345,171.76 in out-of-pocket expenses to IPP Counsel, these amounts will also be deducted pro rata from the Escrow Accounts, leaving a total of $420,040,926.21; $6,321,228.55 in the Chunghwa Fund and $413,719,697.66 in the other funds.[6]

11. In consultation with the Settlement Administrator, I propose that a reserve of $10,000,000 be withheld, on a pro rata basis, from funds distributed to claimants being awarded $1 million or more. This reserve would be for any contingencies that may arise with respect to claims, to pay for any other future fees or expenses that are authorized by the Court and incurred in connection with administering the Settlements, as well as any further escrow fees, taxes, and the costs of preparing appropriate tax returns.

12. Accordingly, $6,137,693.41 will be available for distribution now to End User and Reseller claimants from the Chunghwa settlement, and $403,903,232.80 will be available for distribution to End User claimants from the other settlements. These amounts are equal to the current Net Settlement Funds less $99,240.13 to be paid to the Settlement Administrator, the $345,171.16 in out-of-pocket expenses to IPP Counsel, and $10,000,000 to be held in reserve. Any unused portion of the $10,000,000 reserve will be distributed to the claimants from which it is withheld as part of a subsequent distribution.

**APPOINTING THE NOTICE COMPANY AS FUND ADMINISTRATOR**

13. In order for The Notice Company to process the payments to claimants, the current Escrow Agents (Citibank, Union Bank and Lead Counsel) should be ordered to transfer all funds from the Escrow Accounts, including all accrued interest, to the account established for the Qualified Settlement Fund ("QSF") at Western Alliance Bank and administered by The Notice Company. The Escrow Agents also must transfer to The Notice Company the "administrator" role in accordance with Section 468B of the Internal Revenue Code (26 U.S.C. §

---

[6] The $6,250,000 for the Future Expense Fund has already been withdrawn from the Escrow Accounts, and has already been accounted for in the calculation of the Net Settlement Funds.

4

DECL. OF MARIO N. ALIOTO IN SUPPORT OF INDIRECT PURCHASER PLAINTIFFS' MOTION FOR ORDER APPOINTING FUND ADMINISTRATOR AND AUTHORIZING DISTRIBUTION OF SETTLEMENT FUNDS; Master File No. 07-cv-05944-JST; MDL No. 1917

468B) for the QSF, as outlined in the Escrow Agreements. The Escrow Agents have agreed to cooperate with this transition.

14. The Notice Company will not distribute, withdraw, or transfer any funds from the QSF account without written authorization ("Distribution Notice") from me.

## CLAIMS ADMINISTRATION AND LATE CLAIMS

15. In consultation with the Settlement Administrator, I propose that, like the other settlements, the Court authorize a $25 minimum payment for Reseller claimants from the Chunghwa settlement (qualifying End User claimants will receive the $25 minimum payment pursuant to the Plan of Distribution for the other settlements). The minimum payment will help to reduce administration costs and will avoid issuing checks for very small amounts.

16. The Settlement Administrator and I, with substantial assistance from U.S. District Judge Jacqueline Scott Corley, have devised a fair and balanced proposal for the partial payment of Late Claims (claims filed after the applicable Court-ordered deadlines for filing claims).

17. I recommend that the Court adopt the following approach for Late Claims:

   a. Late Claims "on file" with the Settlement Administrator as of May 5, 2020, and approved by the Settlement Administrator, shall be paid at 50%-unit value, as compared with Timely Claims, which shall be paid at 100%-unit value;

   b. Placeholder Claims which, as of May 5, 2020, did not provide a good-faith number of CRT units purchased are not considered "on file" and shall not be paid;

   c. Claims filed after May 5, 2020 are rejected;

   d. Application of the 50% reduction to Late Claims shall not reduce the value of any such claim to less than the minimum payment of $25 (unless the minimum payment is reduced to less than $25 for all claimants);

   e. If any residual remains in the Net Settlement Fund after distribution checks become stale, such residual will be shared as follows (i) if the residual is less than or equal to $12 million, it shall be share pro rata by the Late Claimants,

     subject to a minimum threshold set at the Settlement Administrator's discretion, and (ii) if the residual is more than $12 million, it shall be shared pro rata by all claimants, subject to a minimum threshold set at the Settlement Administrator's discretion.

18.   I believe the foregoing proposal for the treatment of Late Claims properly balances the interests of all claimants. I am informed and believe that there have been a substantial number of Late Claims in this case. I believe that my recommended approach—under which Late Claims submitted before May 5, 2020 would be paid at 50% of the value of Timely Claims, with the potential for an additional payment from any residue—strikes a balance between disallowing Late Claims entirely and allowing all Late Claims at full value despite the Court-ordered deadlines. My approach is designed to avoid the delay and expense of continuing litigation over Late Claims.

## EXPENSES

19.   I have reviewed the Settlement Administrator's invoices for work performed from September 1, 2021 through May 31, 2022 and, based on my first-hand knowledge of the work performed by the Settlement Administrator, I recommend that the Court approve the payment of this unpaid amount as fair, reasonable and necessary for the administration of claims in this complex case.

20.   Since September 23, 2015 (when IPPs filed their motion for attorneys' fees and reimbursement of expenses), IPP Counsel has expended an additional $2,330,710.87 of the $2,354,121.98 remaining in the Future Expense Fund for expenses incurred in the continued prosecution and settlement of this litigation.

21.   As of May 31, 2022, the balance of the Future Expense Fund was $40,375.83, including accrued interest on the fund. These funds are being retained in the Future Expense Fund for case expenses, including the ongoing litigation against the Irico Defendants.

22.   In addition, IPP Counsel have expended an additional $345,171.76 from the Litigation Fund (which is funded by assessments by IPP Counsel) for the continued prosecution and settlement of this litigation.

23. The foregoing expenditures from the Future Expense Fund and the Litigation Fund are reflected in the books and records maintained by Lead Counsel. The expenses are set forth in detail in Exhibit A to this Declaration, and include claims administration, expert economists, appellate counsel, deposition transcripts and videos,[7] special masters, mediators, certified translations, online document depository, online legal research, filing and witness fees.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 23rd day of June 2022 at San Francisco, California.

/s/   *Mario N. Alioto*
      Mario N. Alioto

**Lead Counsel for the Indirect Purchaser Plaintiffs**

---

[7] The deposition video expenses were incurred before September 2015. These expenses were being reviewed with the vendor and thus were not submitted to the Court as part of IPPs' September 2015 motion.

# EXHIBIT A

**FUTURE EXPENSE FUND/LITIGATION FUND EXPENDITURES**
**Sept. 16, 2015 through May 31, 2022**

| EXPERTS/CONSULTANTS/INVESTIGATORS | FUTURE EXPENSE FUND | LITIGATION FUND | TOTAL |
|---|---|---|---|
| applEcon | $ 22,840.55 | $ 91,377.00 | |
| Moskovitz Appellate Team | $ 114,273.91 | | |
| Nathan & Associates | $ 57,571.86 | $ 77,081.35 | |
| Fishkin Slatter | | $ 142.20 | |
| Shaun P. Martin | | $ 17,550.00 | |
| Laura Hoehn | | $ 500.00 | |
| | | | |
| **Total Experts/Consultants** | $ 194,686.32 | $ 186,650.55 | $ 381,336.87 |
| | | | |
| **SPECIAL MASTERS/MEDIATORS** | | | |
| JAMS (Martin Quinn and Marlo Cohen) | $ 38,562.63 | $ 90,310.81 | |
| Federal Arbitration, Inc. (Judge Walker, Ret.) | $ 137,827.52 | | |
| | | | |
| **Total Special Masters/Mediators** | $ 176,390.15 | $ 90,310.81 | $ 266,700.96 |
| | | | |
| **NOTICE/CLAIMS ADMINISTRATION** | | | |
| The Notice Company | $ 1,827,247.24 | $ 40,030.00 | |
| Rust Consulting | $ 18,878.17 | | |
| | | | |
| **Total Notice/Claims Administration** | $ 1,846,125.41 | $ 40,030.00 | $ 1,886,155.41 |
| | | | |
| **TRANSLATIONS** | | | |
| Park IP Translations | $ 1,496.46 | | |
| Consortra Translations | $ 10,782.42 | | |
| Language Fish | $ 8,137.94 | | |
| | | | |
| **Total Translations** | $ 20,416.82 | | $ 20,416.82 |

**FUTURE EXPENSE FUND/LITIGATION FUND EXPENDITURES**
**Sept. 16, 2015 through May 31, 2022**

| COURT REPORTERS/DEPOSITION TRANSCRIPTS & VIDEOS | FUTURE EXPENSE FUND | LITIGATION FUND | TOTAL |
|---|---|---|---|
| Veritext | $ 43,787.81 | $ 5,256.92 | |
| US Legal Support | $ 407.12 | | |
| Kathleen Powell Sullivan | $ 49.50 | $ 30.60 | |
| | | | |
| **Total Court Reports/Deposition Transcripts & Videos** | $ 44,244.43 | $ 5,287.52 | $ 49,531.95 |
| | | | |
| **DOCUMENT DEPOSITORY/MANAGEMENT** | | | |
| Meta-Ediscovery | $ 33,970.86 | | |
| | | | |
| **Total Document Depository/Management** | $ 33,970.86 | | $ 33,970.86 |
| | | | |
| **COMPUTER LEGAL RESEARCH** | | | |
| Westlaw - Thomson Reuters | $ 2,050.36 | $ 8,442.00 | |
| | | | |
| **Total Computer Legal Research** | $ 2,050.36 | $ 8,442.00 | $ 10,492.36 |
| | | | |
| **FILING COSTS - FILING FEES/POSTAGE/COURIERS** | | | |
| Court Filings | $ 220.50 | $ 725.50 | |
| Postage/Couriers | $ 868.69 | $ 1,467.72 | |
| | | | |
| **Total Filing Costs - Fees/Postage/Couriers** | $ 1,089.19 | $ 2,193.22 | $ 3,282.41 |
| | | | |
| **WITNESS/SERVICE FEES** | | | |
| Witness Fees | | $ 253.10 | |
| Service of Process | | $ 4,517.38 | |
| | | | |
| **Total Witness/Service Fees** | | $ 4,770.48 | $ 4,770.48 |

**FUTURE EXPENSE FUND/LITIGATION FUND EXPENDITURES**
**Sept. 16, 2015 through May 31, 2022**

|  |  |  |  |
|---|---|---|---|
| **ACCOUNTING/TAXES** |  |  |  |
| CPA Fees | $ 5,485.14 | $ 4,350.00 |  |
| Taxes | $ 417.71 |  |  |
|  |  |  |  |
| **Total Accounting/Taxes** | $ 5,902.85 | $ 4,350.00 | $ 10,252.85 |
|  |  |  |  |
| **OUTSIDE COPIES/PRINTING** |  |  |  |
| Outside Copies/Printing |  | $1,885.03 |  |
|  |  |  |  |
| **Total Outside Copies/Printing** |  | $1,885.03 | $1,885.03 |
|  |  |  |  |
| **TRAVEL/MEALS** |  |  |  |
| Travel/Meals | $ 5,834.48 | $ 1,252.15 |  |
|  |  |  |  |
| **Total Travel/Meals** | $ 5,834.48 | $ 1,252.15 | $ 7,086.63 |
|  |  |  |  |
| **Total Expenditures from Future Expense Fund and Litigation Fund from Sept. 16, 2015 through May 31, 2022** |  |  | $ 2,675,882.63 |