MARIO N. ALIOTO (SBN 56433)
LAUREN C. CAPURRO (SBN 241151)
TRUMP, ALIOTO, TRUMP & PRESCOTT, LLP
2001 Union Street, Suite 482
San Francisco, CA 94123
Telephone: (415) 563-7200
Facsimile: (415) 346-0679
Email: malioto@tatp.com;
laurenrussell@tatp.com

*Lead Counsel for the Indirect Purchaser Plaintiffs*
*[Additional Counsel Listed on Signature Page]*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Master File No. 07-CV-5944-JST |
| | MDL No. 1917 |
| This Document Relates to: | **INDIRECT PURCHASER PLAINTIFFS' AND DIRECT PURCHASER PLAINTIFFS' OPPOSITION TO DEFENDANTS IRICO GROUP CORP. AND IRICO DISPLAY DEVICES CO., LTD.'S EMERGENCY MOTION FOR RELIEF FROM SCHEDULING ORDER** |
| *ALL DIRECT PURCHASER ACTIONS* *ALL INDIRECT PURCHASER ACTIONS* | |
| | Date: August 11, 2022 Time: 2:00 p.m. Judge: Hon. Jon S. Tigar Courtroom: 6, 2nd Floor |

1

## <u>TABLE OF CONTENTS</u>

2

<u>PAGE(S)</u>

3

I.      INTRODUCTION ...................................................................................................... 1

II.     STATEMENT OF FACTS ........................................................................................ 2

        A.      The Effort To Schedule Depositions In Hong Kong In December
                2021 ................................................................................................................ 4

        B.      Postponement Of The Hong Kong Depositions ........................................... 4

        C.      Further Postponement Of The Depositions And A Change Of Venue
                To Macau ........................................................................................................ 5

        D.      A Further Postponement Of The Depositions Results In Delays To
                IPPs' Schedule And Trial Date ..................................................................... 5

        E.      Irico Gives Notice That Mr. Su Has Resigned And Will Not Appear ...... 6

        F.      Irico Allows The June 30 Deadline To Pass And Files This
                Emergency Motion ........................................................................................ 7

III.    ARGUMENT ............................................................................................................. 8

        A.      Legal Standard ............................................................................................... 8

        B.      Irico Cannot Demonstrate Good Cause Justifying Relief From The
                Scheduling Order Because China's Quarantine Restrictions Are Not
                New And Irico Was Not Diligent In Seeking Relief .................................. 9

                1.      Neither The Quarantine Restrictions Nor The Witnesses'
                        Refusal To Travel Are Unexpected Difficulties ............................ 9

                2.      There Is No Reason To Believe That China's Quarantine
                        Restrictions Will Be Lifted In The Next Six Months Such
                        That These Witnesses Will Agree To Travel .............................. 11

                3.      Irico Fails To Explain Why It Waited Until The June 30,
                        2022 Deadline To Seek Relief From The Scheduling Order ...... 13

                4.      Irico's Motion Ignores The Prejudice To Plaintiffs Caused By
                        Its Seriatim Extensions Of The Schedule .................................... 15

        C.      Irico's Cavalier Attitude To Its Litigation Obligations Is A Recurrent
                Theme In This Case And Indicates That It Is Not Proceeding In Good
                Faith .............................................................................................................. 18

IV.     CONCLUSION ........................................................................................................ 19

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TABLE OF AUTHORITIES**

**PAGE(S)**

**CASES**

*Aileron Inv. Mgmt., LLC v. Am. Lending Ctr., LLC,*
No. 8:21-CV-146-MSS-AAS, 2022 WL 93573 (M.D. Fla. Jan. 10, 2022) .......................... 13, 14

*Est. of Boyles v. Gree USA, Inc.,*
No. 1:20-CV-276, 2021 WL 3292727 (M.D.N.C. Aug. 2, 2021) ......................................... 14, 16

*In re Cathode Ray Tube (CRT) Antitrust Litig.,*
No. C-07-5944-SC, 2014 WL 4954634 (N.D. Cal. Oct. 1, 2014)...................................... 8, 9, 18

*In re Twitter, Inc. Sec. Litig.,*
No. 16-CV-05314-JST,
2020 WL 4188787 (N.D. Cal. May 19, 2020)............................................. 8, 10, 11, 13

*Johnson v. Mammoth Recreations, Inc.,*
975 F.2d 604 (9th Cir. 1992) ............................................................................. 8, 9, 15

*Oracle Am., Inc. v. Hewlett Packard Enter. Co.,*
No. 16-CV-01393-JST, 2019 WL 468809 (N.D. Cal. Feb. 6, 2019) ..................................... 8, 16

*Sines v. Kessler,*
No. 3:17-cv-00072, 2021 WL 2309968 (W.D. Va. June 7, 2021) .............................................. 16

*United States v. Berglund,*
No. 20-cr-00200 (SRN/TNL), 2021 WL 1589548 (D. Minn. Apr. 23, 2021). .................. 2, 13, 14

*United States v. Tagliaferro,*
No. 19-CR-472 (PAC), 2021 WL 1225990 (S.D.N.Y. Mar. 31, 2021) .................................... 14

*Wong v. Regents of Univ. of Cal.,*
410 F.3d 1052 (9th Cir. 2005 ...............................................................................  8, 16

**STATUTES**

Fed. R. Civ. P. 16 .................................................................................................. 8, 9

Rule 30(b)(6) ................................................................................................. 14, 15, 16, 18

Indirect Purchaser Plaintiffs ("IPPs") and Direct Purchaser Plaintiffs ("DPPs") (together "Plaintiffs") hereby oppose Irico Group Corporation's and Irico Display Devices Co., Ltd.'s Emergency Motion for Relief from Scheduling Order, ECF No. 6027 (the "Motion").

## I.    INTRODUCTION

Irico fails to demonstrate good cause to modify the schedule. Irico's witnesses were under Court Order to appear for deposition by June 30, 2022—a date which Irico (and presumably the witnesses) agreed to, and which had already been extended by stipulation three times—yet they failed to appear and Irico waited until the eleventh hour to request relief.

As the Court observed at the July 5, 2022 Case Management Conference ("July 5 CMC"), the quarantine restrictions to which Irico's witnesses are objecting—and which Irico is attempting to use to justify its *fourth* extension of the schedule—have been in effect since July 2021. In other words, these quarantine restrictions were in effect on each of the three prior occasions that Irico agreed to produce these witnesses. Moreover, Irico has been aware all along that its witnesses were reluctant to subject themselves to China's quarantine restrictions, and it may even have known that Mr. Su would refuse to travel when it stipulated to produce him for deposition. In addition, even though Irico knew by at least June 8, 2022 that the witnesses were refusing to appear for their depositions, Irico inexplicably waited until the Court-ordered deadline for producing them to seek relief from the Court's scheduling Order. Thus, Irico fails to demonstrate good cause to modify the schedule because (1) the quarantine restrictions and the witnesses' refusal to travel are not "unexpected difficulties," (2) Irico cannot show that it was diligent in creating a workable schedule at the outset, and (3) Irico was not diligent in seeking relief from the Court's scheduling Order.

Irico's Motion should also be denied because it provides no reason to believe that China will eliminate its quarantine requirements in the next six months so that Irico's witnesses would agree to travel. In fact, if past is prologue, COVID-19 cases are likely to increase during the fall and winter months, as they did in 2020 and 2021, leading to even more stringent quarantine restrictions in the fall of this year than those which currently exist. Ultimately, as Irico's own authorities recognize, "[t]he COVID-19 uncertainties that pervade our society are reasons to accept

the status quo as the new normal and move ahead with [the litigation] now, as opposed to putting the [litigation] off indefinitely and wishing in earnest for a better future[.]" *United States v. Berglund*, No. 20-cr-00200 (SRN/TNL), 2021 WL 1589548, at *2 (D. Minn. Apr. 23, 2021).

Finally, Irico ignores the prejudice to Plaintiffs caused by their seriatim extensions of the schedule and the delay and additional expense they entail. As a result of Irico's delays, IPPs lost their January 2023 trial date; one of the only Irico witnesses with knowledge of the conspiracy has resigned; and, Plaintiffs have repeatedly lost time and money preparing for depositions, and held their schedules open to take the depositions, only to be informed at the last minute that the witnesses are refusing to appear.

In sum, Irico's Motion for relief from the Scheduling Order should be denied.

## II.    STATEMENT OF FACTS

Plaintiffs have sought the deposition testimony of Irico witnesses Wang Zhaojie ("Mr. Wang"), Su Xiaohua ("Mr. Su") and Yan Yunlong ("Mr. Yan") based on their personal knowledge and Irico's representations that they are the only current employees with relevant knowledge.[1] Irico has stated in its interrogatory answers that Messrs. Wang and Su have knowledge regarding three important affirmative defenses asserted in its Answer:

- Its Third Affirmative Defense, which asserts that Plaintiffs' claims are barred because the alleged conduct occurred outside the jurisdiction of the Court or was neither directed to nor affected persons, entities, trade or commerce in the U.S.;

- Its Eighth Affirmative Defense, which asserts that Irico's pricing of CRTs was compelled by the Chinese government; and

---

[1] Plaintiffs disagree that Messrs. Wang and Su are the only Irico employees with relevant knowledge. Plaintiffs noticed the depositions of three other current Irico executives. Irico refuses to produce them on the basis of the so-called "apex" doctrine. On January 26, 2022, Plaintiffs filed a motion to compel their depositions. It is fully briefed and pending before Judge Walker.

- Its Tenth Affirmative Defense, which asserts that Irico's conduct was "cost justified or otherwise economically justified and resulted from a good faith effort to meet competition or market conditions."[2]

Plaintiffs first requested the depositions of Messrs. Wang and Su on August 26, 2021.[3]

The testimony of Mr. Yan is likewise important. Irico identified him as the sole source of the information provided in its interrogatory answers regarding its failure to implement an adequate litigation hold after it was served with the IPPs' Complaint in December 2007, and its failure to preserve relevant information from loss or destruction[4] – a topic on which Plaintiffs intend to file a motion for sanctions.

Plaintiffs' efforts to depose these witnesses have been unsuccessful. Irico has repeatedly promised to produce them, but it has not done so. Irico's Motion is just the latest chapter in a long story of delay and frustration.

Indeed, this is the ***fourth*** time Irico has agreed to produce these witnesses but has failed to do so.  And it is the ***fourth*** time Irico has sought an extension of the deadline by which these witnesses were required to submit to a deposition. This time, however, Irico requests that the Court relieve it from any consequences of its failure to meet that deadline, and to extend IPPs' pretrial schedule, including the deadline to depose these witnesses, by approximately six months.

Each time Irico has sought an extension, it has done so on the grounds that COVID-19 and travel restrictions complicated the witnesses' ability or willingness to appear or prevented them from appearing. On each occasion, Plaintiffs worked in good faith to accommodate the asserted concerns and needs of Irico and the witnesses. But each time Plaintiffs agreed to the requested accommodation, Irico has shifted the goal posts.

---

[2] *See* Declaration of Lauren C. Capurro, filed herewith ("Capurro Decl."), ¶ 2, Ex. A (Irico Defs.' Obj. and Resps. To IPPs' Fourth Set of Interrogs., Resp. to Interrogatory No. 7).

[3] Declaration of Evan Werbel in Support of Emergency Motion for Relief from Scheduling Order ("Werbel Decl."), Ex. 1.

[4] *See* Capurro Decl. ¶ 3, Ex. B (Irico Defs.' Suppl. Objs. & Resps. to IPPs' Third Set of Interrogs., Resp. to No. 2, Issue No. 4).

A.      **The Effort To Schedule Depositions In Hong Kong In December 2021**

When Plaintiffs noticed the depositions of Messrs. Su and Wang for December 2021 in San Francisco, Irico's counsel, in a November 2, 2021 letter, argued that remote depositions in Hong Kong were more appropriate, and emphasized that the witnesses were willing to endure the required quarantine:

> To be clear, Mr. Wang and Mr. Su are willing to sit for the requested depositions if they are held in Hong Kong, **which would necessitate a mandatory two- to three-week quarantine upon their return to Mainland China.**

Werbel Decl., Ex. 2 (emphasis added). Based on these representations, Plaintiffs agreed to take the depositions remotely in Hong Kong in December 2021. But Irico delayed in providing dates for the depositions or in taking any steps to schedule the depositions. Werbel Decl. Ex. 4 (Nov. 18, 2021 letter stating that, ". . . Irico is working with Messrs. Wang Zhaojie and Su Xiaohua regarding their availability for depositions and will provide dates as soon as possible.").

B.      **Postponement Of The Hong Kong Depositions**

Then, on December 3, 2021—as soon as news about the Omicron variant hit the press, and even though the daily number of COVID-19 cases in Hong Kong was extremely low[5]—Plaintiffs received a letter from Irico's counsel stating that the witnesses were unwilling to travel to Hong Kong for their depositions. Werbel Decl. Ex. 5 (Dec. 3, 2021 letter at 1, stating: "As you know we had planned to offer these witnesses in Hong Kong for remote depositions in December. Both Mr. Wong [*sic*] and Mr. Su remain willing to be deposed **but are very concerned that travel may result in exposure to the coronavirus and about the severe quarantine requirements they would face.**") (emphasis added). Irico proposed a six-month extension of IPPs' pretrial schedule to "give the parties the best chance to complete these depositions, which is what all parties want. In that time, we hope to be able to either produce the witnesses in Hong Kong or to identify a way of conducting the depositions remotely and lawfully from China." *Id*. at 2.

---

[5] *See* https://www.info.gov.hk/gia/general/202112/03/P2021120300475.htm ("A total of 50 cases have been reported in the past 14 days (November 19, 2021 to December 2, 2021) and all of them are imported cases.")

Plaintiffs agreed to extend the January 14, 2022 discovery cut-off to March 18, 2022 to permit the depositions of Messrs. Wang and Su to be taken. The Court approved the stipulated extension. ECF No. 5980.

### C.   Further Postponement Of The Depositions And A Change Of Venue To Macau

Six weeks later, on February 24, 2022, Irico again informed Plaintiffs that the depositions could not proceed by the Court-ordered deadline because Messrs. Wang and Su were apparently unable to get visas for Hong Kong due to a COVID-19 surge. Werbel Decl. Ex. 6. Irico sought another extension of time and that the depositions would take place remotely in Macau rather than Hong Kong. Werbel Decl. Ex. 8. Once again, Plaintiffs cooperated, agreeing to extend the deadline to May 31, 2022. ECF No. 5997. Irico also agreed to add Mr. Yan to the list of those who would be deposed. *Id*. at 1; Werbel Decl., Ex. 7. Again, the Court approved the parties' stipulation and extended the deadline. ECF No. 5999.

### D.   A Further Postponement Of The Depositions Results In Delays To IPPs' Schedule And Trial Date

The May 31, 2022 deadline for the depositions likewise proved unworkable because Irico was apparently unable to timely obtain visas to Macau. Werbel Decl., Ex. 9. Irico had represented to Plaintiffs that it expected to be able to produce its witnesses beginning the third week of May. However, because of visa delays, Irico represented that it would not be able to do so until the beginning of June. Capurro Decl. ¶¶ 4-7, Exs. C-F.  Accordingly, Plaintiffs agreed ***once again*** to extend the deadline to take the depositions until June 30, 2022.  The parties submitted their stipulation to that effect on May 20, 2022. *See* ECF No. 6015.

The repeated continuances of the deposition deadline ultimately required the postponement of certain other deadlines. Thus, the parties' May 20, 2022 stipulation not only extended the deposition deadline, it also moved the dispositive motion deadline to July 25, 2022, and continued the trial date from January to February 2023. *Id*. However, the Court moved the trial date to March 2023 (ECF No. 6016), which conflicted with IPPs' lead trial counsel's trial in another case. ECF

No. 6020. The trial date was therefore continued to July 24, 2023, the earliest date suitable for both sides and the Court. ECF No. 6024.

In short, Irico persuaded Plaintiffs to agree to each of these extensions of the schedule by promising that the witnesses would appear by a date certain. Then, at the last minute that the witnesses could not appear, and that a further one- or two-month extension was required. Yet, here we are, *more than six months after the date when the depositions were supposed to take place*, and the witnesses still have not appeared.

### E.    Irico Gives Notice That Mr. Su Has Resigned And Will Not Appear

The ink was barely dry on the Stipulation and Order extending the deposition deadline to June 30, 2022 and continuing IPPs' trial date (ECF No. 6016) when Irico informed Plaintiffs on June 7, 2022 that Mr. Su had resigned and was no longer available to sit for a deposition. Werbel Decl. Ex. 9.

The Declaration of Zhang Wenkai, ECF No. 6027-3 ("Zhang Decl."), raises questions about whether Irico knew Mr. Su's resignation was imminent when the parties filed their May 20, 2022 stipulation extending the deposition deadline to June 30, 2022. ECF No. 6015. Mr. Zhang's attests that Mr. Su "formally resigned" on May 25th—only five days after the May 20th stipulation. Zhang Decl. ¶ 6. Notably, Mr. Zhang does not state when he first became aware that Mr. Su planned to resign or when he learned of Mr. Su's formal resignation. He does concede, however, that he was in contact with Su in May 2022. *See id*. ¶ 5. Irico's counsel was similarly vague when asked when Irico learned that Mr. Su intended to resign, stating only that Mr. Su had "expressed reservations about quarantine obligations" in April and May 2022.[6] In addition, Irico waited *over two weeks* after Su's formal resignation to inform Plaintiffs that he had resigned (Su formally resigned on May 25th (Zhang Decl. ¶ 6), but Irico did not inform Plaintiffs of the resignation until June 7 (Werbel Decl. Ex. 9)). Given this, and the fact that Mr. Zhang was in contact with Su, Irico may have known that Mr. Su's resignation was imminent when it entered into the May 20th stipulation extending IPPs' schedule, but chose not to disclose that fact to either Plaintiffs or the Court.

---

[6] *See* Capurro Decl. ¶ 8, Ex. G (June 22, 2022 email from Evan Werbel).

PLAINTIFFS' OPPOSITION TO DEFENDANTS IRICO GROUP CORP. AND IRICO DISPLAY DEVICES CO., LTD.'S EMERGENCY MOTION FOR RELIEF FROM SCHEDULING ORDER; Master File No. 07-CV-5944-JST; MDL No. 1917

6

Plaintiffs repeatedly pressed Irico to schedule the depositions, but Irico never provided Plaintiffs with any firm dates. *See, e.g.,* Werbel Decl. Ex. 7; Capurro Decl., ¶ 13. Despite not knowing when exactly the depositions would take place, Plaintiffs' counsel had to prepare to take the depositions, which included paying for certified translations of potential deposition exhibits. Plaintiffs' counsel held their schedules open from mid-May through August and canceled summer vacation travel to be available to take the depositions and respond to Irico's summary judgment motions, which are currently due by July 25th. *Id.* ¶¶ 13-14.

### F.    Irico Allows The June 30 Deadline To Pass And Files This Emergency Motion

On June 14, 2022, Irico's counsel informed Plaintiffs that Mr. Wang and Mr. Yan had refused to appear for a deposition by the June 30, 2022 deadline because they were unwilling to comply with China's COVID-19 quarantine restrictions. Werbel Decl. Ex. 10. Irico requested Plaintiffs agree to yet another six-month postponement of the deposition deadline. *Id.* Exs. 10 & 12.

Plaintiffs responded that they could not agree to a further six-month extension and demanded that Irico produce the witnesses by July 22, 2022. *Id.* Ex. 11. In a June 29, 2022 meet-and-confer call, Plaintiffs reiterated that they would not agree to a six-month extension but indicated that they *would* agree to a continuance of the June 30 deadline, but only if the stipulated order postponing the deadline (1) set specific dates within one to two months of June 30 for the depositions, and (2) provided that Irico would suffer adverse consequences if the witnesses did not appear on the specified dates.[7]  Irico demurred. On June 30, 2022, Irico filed its Emergency Motion seeking a six-month extension of the deadline that expired that very day.

///

///

---

[7] Capurro Decl. ¶ 9, Ex. H (June 29, 2022 email proposing that "that Wang and Yan could not testify at trial if they do not make themselves available by that date certain; and . . . that Irico may not move for summary judgment on issues about which Wang and Yan are knowledgeable unless and until they are deposed.").

### III.    ARGUMENT

### A.    Legal Standard

As this Court has previously held, it is well-settled that, pursuant to Fed. R. Civ. P. 16(b)(4), "[s]cheduling orders 'may be modified only for good cause and with the judge's consent[.]'" Pretrial scheduling orders may only be modified if the dates scheduled "'cannot reasonably be met despite the diligence of the party seeking the extension.' The focus of the good cause inquiry is 'on the moving party's reasons for seeking modification. If that party was not diligent, the inquiry should end.'" *In re Cathode Ray Tube (CRT) Antitrust Litig.,* No. C-07-5944-SC, 2014 WL 4954634, at *2 (N.D. Cal. Oct. 1, 2014) (quoting *Johnson v. Mammoth Recreations, Inc.,* 975 F.2d 604, 609 (9th Cir. 1992)).

This Court explained the rationale for the focus on the moving party's diligence thusly:

> The purpose of the good cause standard and the focus on diligence under Federal Rule of Civil Procedure 16(b)(4) is twofold. First, analyzing whether good cause exists to vary a deadline allows the court to balance the need for certainty in case management against the *unexpected difficulties* that often arise in complying with case scheduling. . . . Second, centering the good cause analysis on the moving party's diligence prevents parties from profiting from carelessness, unreasonability, or gamesmanship, while also not punishing parties for circumstances outside their control.  Accordingly, *if a party 'fails to heed repeated signals,' waits until the eleventh hour for tactical reasons, or otherwise acts carelessly or in bad faith*, courts are unlikely to vary the applicable schedule.

*CRT,* 2014 WL 4954634, at *2-3 (citations and internal quotation marks omitted; emphases added). *See also In re Twitter, Inc. Sec. Litig.,* No. 16-CV-05314-JST, 2020 WL 4188787, at *4 (N.D. Cal. May 19, 2020) (Tigar, J.) ("To demonstrate good cause under Rule 16, the party seeking leave to amend must show it was diligent in assisting the Court to create a workable schedule at the outset of litigation, that the scheduling order imposes deadlines that have become unworkable notwithstanding its diligent efforts to comply with the schedule, and that it was diligent in seeking the amendment once it became apparent that extensions were necessary.") (citations and internal quotation marks omitted); *Oracle Am., Inc. v. Hewlett Packard Enter. Co.,* No. 16-CV-01393-JST, 2019 WL 468809, at *4 (N.D. Cal. Feb. 6, 2019) (Tigar, J.) (quoting *Wong v. Regents of Univ. of Cal.,* 410 F.3d 1052, 1062 (9th Cir. 2005) (denying motion to extend discovery deadlines because

"the schedule was long known to all parties. A party's preference for a different schedule than the one actually imposed by the Court does not itself amount to 'substantial justification' for later amendments to expert reports served in accordance with deadlines set by the Court. Similarly, '[d]isruption to the schedule of the court and other parties in that manner is not harmless. Courts set such schedules to permit the court and the parties to deal with cases in a thorough and orderly manner, and they must be allowed to enforce them, unless there are good reasons not to.'").

Ultimately, "[a] scheduling order is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril." *Johnson v. Mammoth Recreations,* 975 F.2d at 610 (citation and internal quotation marks omitted). "Disregard of the order would undermine the court's ability to control its docket, disrupt the agreed-upon course of the litigation, and reward the indolent and the cavalier. Rule 16 was drafted to prevent this situation . . . ." *Id.* at 610. (citations omitted).

### B. Irico Cannot Demonstrate Good Cause Justifying Relief From The Scheduling Order Because China's Quarantine Restrictions Are Not New And Irico Was Not Diligent In Seeking Relief

Irico argues that there is good cause for its requested six-month extension of the schedule because Mr. Su has apparently resigned from Irico to avoid being deposed,[8] and Messrs. Wang and Yan "currently will not agree to travel to Macau to sit for remote depositions in [sic] midst of [sic] global pandemic given the severe quarantine restrictions that they will face upon their return to mainland China." Motion at 2. Irico claims that Wang and Su "have indicated . . . that they are prepared to travel to Macau for depositions once the quarantine conditions are lifted." *Id.*

#### 1. Neither The Quarantine Restrictions Nor The Witnesses' Refusal To Travel Are Unexpected Difficulties

Irico's witnesses' refusal to travel to Macau for their depositions due to China's quarantine restrictions—despite being required to do so by a Court Order to which Irico stipulated—falls far short of establishing good cause to modify the schedule under Fed. R. Civ. P. 16 because neither the quarantine restrictions nor the witnesses' refusal to travel because of those restrictions are "unexpected difficulties." *See In re Cathode Ray Tube (CRT) Antitrust Litig.,* 2014 WL 4954634,

---

[8] Capurro Decl. ¶ 8, Ex. G (Email dated June 22, 2022 from Evan Werbel).

at *2 ("[A]nalyzing whether good cause exists to vary a deadline allows the court to balance the need for certainty in case management against the *unexpected difficulties* that often arise in complying with case scheduling.") (emphasis added); *In re Twitter,* 2020 WL 4188787, at *4 ("To demonstrate good cause under Rule 16, the party seeking leave to amend must 'show it was diligent in assisting the Court *to create a workable schedule at the outset of litigation . . .*'") (emphasis added).

As Irico's counsel was forced to concede in response to the Court's astute questioning at the July 5 CMC, China's quarantine restrictions have been in effect throughout the period that the parties have been attempting to schedule these depositions. Indeed, they have been in effect since July 2021.[9] In other words, on each of the three occasions that Irico stipulated to a scheduling order requiring these witnesses to appear for deposition by a date certain (*see* ECF Nos. 5980, 5999, 6016), the exact same quarantine restrictions that Irico is now using to justify extending the deadline—for a *fourth* time—were in effect.

Moreover, Irico has been aware since at least November 2021 that its witnesses were reluctant to travel to be deposed and subject themselves to China's quarantine requirements. On December 3, 2021, Irico's counsel informed Plaintiffs that Messrs. Wang and Su were refusing to travel to Hong Kong for their depositions because they were "very concerned that travel may result in exposure to the coronavirus *and about the severe quarantine requirements they would face*." Werbel Decl. Ex. 5 (December 3, 2021 letter from Evan Werbel) (emphasis added).  Further, Irico's counsel has admitted that Mr. Su expressed concerns regarding the quarantine restrictions again in April and May 2022. *See* Capurro Decl. ¶ 8, Ex. G (Email dated June 22, 2022 from Evan Werbel to Plaintiffs' counsel, stating: "We understand that Mr. Su expressed reservations about quarantine obligations that would accompany traveling to Macau in April and May, but he continued to cooperate in the Visa application process during this time.").

---

[9] *See* Werbel Decl. Ex. 10 (Werbel letter dated June 14, 2022 citing http://sxwjw.shaanxi.gov.cn/sy/ztzl/fyfkzt/xwfbh/202107/t20210730_2185138_wap.html, which is a Chinese local government press release dated July 30, 2021 announcing a 21 + 7 day quarantine after travel for the area in which Irico is located).

Indeed, there is a significant question as to whether Irico *knew* that Mr. Su planned to resign to avoid being deposed when it stipulated on May 20, 2022 to producing Mr. Su for deposition by June 30, 2022. *See* ECF No. 6015. Mr. Zhang attests that he was in contact with Mr. Su (and the other witnesses) in May 2022, but conspicuously does not state whether Mr. Su informed him that he planned to resign, and if so, *when* he did so. Zhang Decl. ¶¶ 5-6. Irico's counsel was similarly vague in his June 22, 2022 email, and did not answer Plaintiff's question regarding when Irico learned that Mr. Su planned to resign. *See* Capurro Decl. Ex. G. It is hard to believe that a high-level employee such as Mr. Su, who had worked for Irico for over 40 years,[10] simply resigned without informing someone at Irico that he planned to do so—particularly when he was resigning to avoid being deposed in an important legal proceeding. Nor does Mr. Zhang state when he learned of Mr. Su's May 25, 2022 "formal resignation." *Id.* ¶ 6. This is significant because Irico inexplicably waited *two weeks* to inform Plaintiffs of Su's resignation—two weeks during which Irico knew that Plaintiffs' counsel believed they would be taking the deposition in mid-June and were preparing accordingly. Considering the fact that this was the *fourth* time that Irico had promised to produce these witnesses and then reneged at the eleventh hour, and that Irico is now proposing a *further* six-month extension to allow for depositions that it knows are unlikely to occur, these facts suggest that Irico is not proceeding in good faith.

In light of the foregoing, Irico can hardly claim it was "unexpected" that these witnesses would refuse to travel due to the quarantine restrictions, or that it "was diligent in assisting the Court to create a workable schedule at the outset of litigation . . .." *In re Twitter,* 2020 WL 4188787, at *4. Irico's Motion should be denied on this basis alone.

> 2. **There Is No Reason To Believe That China's Quarantine Restrictions Will Be Lifted In The Next Six Months Such That These Witnesses Will Agree To Travel**

Irico also fails to demonstrate good cause to modify the schedule because it provides no reason to believe that China will reduce its quarantine requirements sufficiently to induce these

---

[10] Capurro Decl. ¶ 10, Ex. I (Mr. Su's Personnel Record showing that he started working for Irico Main CRT Plant in 1981).

witnesses to travel in the next six months. Irico merely asserts repeatedly that the witnesses "have agreed to travel to Macau once the quarantine obligations are lifted" (*e.g.*, Motion at 2, 5, 7), but it is unclear what exactly that means. There are no declarations from the witnesses or other information regarding what quarantine restrictions they would be willing to subject themselves to (if any). Irico acknowledges that China's quarantine restrictions have recently been reduced from 21 to 14 days in a Chinese facility plus seven days at home, yet they are apparently still too restrictive for these witnesses because they are still refusing to travel. Motion at 7, n. 6.

Given that the quarantine restrictions have been in place for over a year, it is highly unlikely that the restrictions will be lifted entirely in the next six months. COVID-19 is not going anywhere and, as Irico concedes, "China continues to promote a 'Zero Covid' policy[.]" Motion at 4. The most likely scenario is that—due to China reopening and relaxing their quarantine restrictions somewhat, together with the natural increase in cases in the fall and winter months that occurred in 2020 and 2021—COVID-19 cases in China will rise again in the next six months, causing China to *increase* its quarantine restrictions again. In fact, the press is also reporting that Macau (where the depositions were supposed to take place) is experiencing its first COVID-19 surge and that it has shut down all businesses except for supermarkets and others providing essential services.[11] In other words, by refusing to proceed with the depositions in June, Irico and its witnesses have once again squandered one of the least risky windows to take the depositions.

Given all these uncertainties, it is difficult to judge the likelihood of whether these witnesses will ever agree to appear for their depositions, but it does not look favorable since it is unlikely that the quarantine restrictions will lift entirely. Despite this, Irico continues to push for *another* six-month extension of time to allow for these depositions. And even after this Court suggested at the July 5, 2022 CMC that there should be consequences if the witnesses continue to refuse to travel after any further extension of time, Irico will not agree to any such consequences, further demonstrating its disregard for Plaintiffs and the Court. Where, as here, "a party 'fails to

---

[11] *See* https://www.reuters.com/world/china/macau-shuts-down-casinos-race-curb-covid-spread-2022-07-11/.

heed repeated signals,' . . . or otherwise acts carelessly or in bad faith, courts are unlikely to vary the applicable schedule." *CRT,* 2014 WL 4954634, at *2-3 (citations omitted).

### 3.   Irico Fails To Explain Why It Waited Until The June 30, 2022 Deadline To Seek Relief From The Scheduling Order

"To demonstrate good cause under Rule 16, the party seeking leave to amend must 'show . . . that it was diligent in seeking the amendment once it became apparent that extensions were necessary.'" *In re Twitter,* 2020 WL 4188787, at *4; *CRT,* 2014 WL 4954634, at *2-3 ("Accordingly, if a party . . . waits until the eleventh hour for tactical reasons, or otherwise acts carelessly or in bad faith, courts are unlikely to vary the applicable schedule.") (citations omitted).

Here, Irico has been aware since at least May 25, 2022 when Su "formally resigned" that he would not appear for deposition. Zhang Decl. ¶ 6. Likewise, Irico has known since approximately June 8, 2022 that Wang and Yan were refusing to appear. *Id.* ¶¶ 8-9. As soon as Irico informed Plaintiffs on June 14, 2022 that the witnesses were refusing to travel, Plaintiffs made it very clear that they would not agree to yet another extension of the deadline without there being some consequences if the witnesses fail to appear again. *See, e.g.,* Werbel Decl. Ex. 11 (Plaintiffs' June 17, 2022 letter); Capurro Decl. Ex. H. Yet, Irico did not move for relief from the scheduling Order until the "eleventh hour"—the Court-ordered June 30, 2022 deadline for producing the witnesses for deposition. *See* ECF No. 6016. Irico inexplicably allowed the deadline to pass and is now in violation of the Court's Order. Irico's cavalier attitude to the Court's scheduling Orders and lack of diligence in seeking relief is further reason to deny this Motion.

### 4.   Irico's Authorities Are Distinguishable

Irico cites only two cases in support of its broad assertion that "[c]ourts have repeatedly recognized the legitimate concerns of witnesses regarding the COVID-19 pandemic and allowed for accommodations or necessary extensions." Motion at 8 (citing *Aileron Inv. Mgmt., LLC v. Am. Lending Ctr., LLC*, No. 8:21-CV-146-MSS-AAS, 2022 WL 93573, at *2 (M.D. Fla. Jan. 10, 2022) and *United States v. Berglund*, No. 20-cr-00200 (SRN/TNL), 2021 WL 1589548, at *2 (D. Minn. Apr. 23, 2021)). While it is true that both courts granted accommodations due to the witnesses' concerns regarding travel during the COVID-19 pandemic by ordering a remote deposition

(*Aileron*), and continuing the trial date (*Berglund*), both courts also required that the cases proceed with those accommodations.

Indeed, the *Berglund* court specifically rejected the defendant's request for an indefinite continuance of the trial in that case, finding that "the risk of contracting COVID-19 does not justify a continuance" because "the court has gone to great lengths to protect participants at all in-person judicial proceedings, and "the COVID-19 uncertainties that pervade our society are reasons to accept the status quo as the new normal and move ahead with trial now, as opposed to putting the trial off indefinitely and wishing in earnest for a better future. . .." *Berglund*, 2021 WL 1589548, at *1–2 (quoting *United States v. Tagliaferro*, No. 19-CR-472 (PAC), 2021 WL 1225990, at * 6 (S.D.N.Y. Mar. 31, 2021)).

Here, Plaintiffs and the Court have already accommodated Irico's witnesses' concerns regarding travel during the COVID-19 pandemic by agreeing to remote depositions and by agreeing to extend the schedule on *three separate occasions*. As in *Berglund* and *Tagliaferro*, the case cannot be stayed indefinitely in the hope that COVID-19 will disappear, China will lift its quarantine restrictions, and these witnesses will someday agree to travel and be deposed. That would be untenable; yet that is apparently what Irico is demanding. Rather, we must "accept the status quo as the new normal and move ahead" with the case. *Berglund*, 2021 WL 1589548, at *2.

*Est. of Boyles v. Gree USA, Inc.*, No. 1:20-CV-276, 2021 WL 3292727, at *5 (M.D.N.C. Aug. 2, 2021) is instructive. In that case, the court faced an almost identical situation to the present one: Chinese defendants were ordered to produce witnesses for remote deposition in Hong Kong several times and failed to do so due to the witnesses' objections to China's COVID-19 quarantine restrictions. *Id*. at *1-3. The court rejected the defendants' concerns about the quarantine restrictions, emphasizing that they are merely inconveniences, not impossibilities, and did not justify the witnesses' failure to appear for deposition:

> The Court has been mindful of the inconvenience posed by travel restrictions throughout this litigation, *see* Text Order 12/30/2021, *but as Judge Webster already determined, these restrictions are just that—inconveniences, not impossibilities.* Text Order 5/17/2021. As the Gree defendants acknowledged, a Rule 30(b)(6) witness could have travelled to Hong Kong or Singapore for

the requested depositions. It is incumbent upon the defendants, not the plaintiffs or the Court, to solve the problems arising from their decision to operate their business in China or to demonstrate impossibility, and the Gree defendants have done neither here.

*Id.* at *7 (emphasis added); *see also id.* at *5 ("[I]t is not an option for a corporate defendant in a foreign country to refuse to take the steps necessary to produce a Rule 30(b)(6) witness merely because it will be expensive, inconvenient, or difficult. . .. This is especially so when the court has been patient with the foreign corporation and extended the applicable deadline several times; here, the extensions totaled four months.").

Likewise here, Irico could have produced its witnesses in Hong Kong in December 2021, or Macau in June 2022. Despite being under a Court Order requiring the witnesses to be deposed by June 30, 2022, and despite having been granted a remote deposition accommodation and three extensions of time, Irico failed to produce the witnesses due to the inconvenience of having to submit to China's COVID-19 quarantine restrictions, not because it was impossible to travel and be deposed.

### 5.   Irico's Motion Ignores The Prejudice To Plaintiffs Caused By Its Seriatim Extensions Of The Schedule

Irico contends that its proposed six-month extension of the deadline to produce the witnesses and IPPs' schedule causes no prejudice to Plaintiffs. Motion at 10. Not so.

First, "[a]lthough the existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for seeking modification. If that party was not diligent, the inquiry should end." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d at 609. Here, as demonstrated above, Irico was not diligent in attempting to meet the Court-ordered deadlines or in seeking relief from the scheduling order. Thus, "the inquiry should end[,]" and Irico's motion should be denied.

Second, "'[d]isruption to the schedule of the court and other parties in that manner is not harmless. Courts set such schedules to permit the court and the parties to deal with cases in a thorough and orderly manner, and they must be allowed to enforce them, unless there are good

reasons not to.'" *Oracle Am., Inc. v. Hewlett Packard Enter. Co.,* 2019 WL 468809, at *4

(quoting *Wong v. Regents of Univ. of Cal.*, 410 F.3d at 1062).

Third, the *Est. of Boyles* court found prejudice to plaintiffs and awarded sanctions against

the defendant under very similar circumstances:

> The defendants' conduct has deprived the plaintiffs of the discovery needed
> to advance their case since at least November 2020. The plaintiffs have been
> unable to question a knowledgeable witness about the defendants'
> representations about the safety of its products to compliance organizations,
> the basis of their defenses, defense positions as to the plaintiffs' damages, and
> any related history of other product failures. . .. The defendants have
> prejudiced the plaintiffs' ability 'to resolve their claims in a just, speedy, and
> inexpensive manner,' and their unexcused failure to appear at multiple
> properly noticed Rule 30(b)(6) depositions leaves an evidentiary gap that
> justifies appropriate sanctions.") (quoting *Sines v. Kessler*, No. 3:17-cv-
> 00072, 2021 WL 2309968, at *7 (W.D. Va. June 7, 2021)).

Similarly here, Irico has deprived Plaintiffs of the discovery needed to advance their case

since at least December 2021. Plaintiffs have been unable to question the only witnesses Irico

claims have knowledge of the allegations in this case, and who Irico has specifically identified in

its discovery responses as knowledgeable regarding its meetings with competitors and several of its

affirmative defenses, as well as its failure to implement a proper litigation hold.  Capurro Decl. ¶¶

2-3, 11, Exs. A, B & J. Irico has prejudiced Plaintiffs' ability "to resolve their claims in a just,

speedy, and inexpensive manner," *Sines v. Kessler*, 2021 WL 2309968, at *7, and their failure to

appear at their Court-ordered depositions leaves an evidentiary gap that justifies appropriate

sanctions. Plaintiffs intend to move for sanctions by separate motion.

Finally, Irico's seriatim extensions of the schedule ostensibly to accommodate these

witnesses and allow their depositions to take place have most certainly prejudiced Plaintiffs. For

example:

- Plaintiffs' counsel have spent almost a year unsuccessfully attempting to negotiate the
  depositions of these witnesses, requiring innumerable meet and confers and multiple
  letters back and forth; negotiation and drafting of several stipulated scheduling orders;
  preparation for and appearance at Case Management Conferences to discuss scheduling,

only to have the schedule upended a few months later; and, now the research and drafting this opposition brief—all of which has caused additional time and expense for Plaintiffs. Capurro Decl. ¶ 12.

- As a result of Plaintiffs attempting to accommodate Irico's witnesses' concerns and extend the schedule to allow for the depositions to occur, IPPs lost their January 30, 2023 trial date, and now have a new trial date on July 24, 2023 (ECF No. 6024), which means six additional months of unnecessary and expensive litigation.

- An important witness, Mr. Su, has purportedly left Irico, and Irico apparently now refuses to produce him for deposition at all.

- Plaintiffs' counsel have had to prepare to take the depositions of these witnesses on four separate occasions (including identifying potential deposition exhibits; preparing deposition outlines; paying for certified translations of deposition exhibits; preparing a remote deposition protocol; working with court reporters, etc.), and hold their schedules open for long periods to be ready to take the depositions at Irico's convenience (without ever being given exact dates by Irico), only to be informed at the last minute that the depositions were not going to happen for various reasons. Plaintiffs' preparations for Mr. Su's deposition will be of no use even if Irico produces other witnesses. Capurro Decl. ¶ 13.

- Plaintiffs' counsel unnecessarily canceled summer vacation travel because the Court-ordered schedule (ECF No. 6016) provided that the period from June 2022 through August 2022 was to be spent taking depositions and responding to Irico's summary judgment motions. Capurro Decl. ¶ 14.

These concrete examples of prejudice to Plaintiffs and their counsel provide further reason to deny Irico's motion.

///

///

**C.      Irico's Cavalier Attitude To Its Litigation Obligations Is A Recurrent Theme In This Case And Indicates That It Is Not Proceeding In Good Faith**

Finally, Irico's cavalier attitude to its obligations to this Court and Plaintiffs is a recurrent theme in this case, and provides necessary context for the Court in considering whether Irico's conduct demonstrates bad faith. As demonstrated by the following examples, Irico's conduct indicates that it has little respect for this Court or the Plaintiffs, and that its primary goal is to delay the litigation and block Plaintiffs' attempts to prove their case. For example:

- Irico defaulted and disappeared from the litigation for over seven years and only reappeared in late 2017 to oppose the DPPs' motion for a default judgment. *In re Cathode Ray Tube (CRT) Antitrust Litig.*, MDL No. 1917, Case No. C-07-5944 JST, 2018 WL 659084, at *8 (N.D. Cal. Feb. 1, 2018) ("[B]y refusing to appear and litigate the case, the Irico Defendants have delayed resolution of the jurisdictional question for ten years.").

- After Irico reappeared and the Court denied the motion for a default judgment (*id.*), Irico wasted Plaintiffs' and the Court's time for eighteen months with their motions to dismiss on foreign sovereign immunity grounds, which simply reargued arguments this Court had already rejected. *See* ECF No. 5637 at 12 (criticizing Irico's motion as "a belated motion for reconsideration.").

- During jurisdictional discovery in 2018-2019, Irico Defendants successfully delayed the depositions of their witnesses for six months. The depositions were originally scheduled for September 2018 but were rescheduled for November 2018 because ten days before the depositions, Irico unexpectedly produced 2000 pages of Chinese language documents on which it intended to rely. *See* ECF No. 5653-1 ¶¶ 5-6, Exs. 3-4. The same depositions then had to be put off again to March 4, 2019 because Irico claimed it could not comply with the Court's orders compelling discovery before the initial rescheduled date. *Id.* ¶ 7, Ex. 5.

- Next, within days of Irico's March 2019 Rule 30(b)(6) deposition, Irico informed Plaintiffs that its designated witness (Mengquan Guo) was unable travel to Hong Kong

for his deposition, apparently due to illness. ECF No. 5408 at 1. Irico's substitute Rule 30(b)(6) witness (Zhaojie Wang) was unprepared and was unable to answer many of Plaintiffs' questions regarding the noticed topics. ECF No. 5640 at 24.

- Irico then appealed this Court's Order denying its motions to dismiss on FSIA grounds (ECF No. 5650) but voluntarily dismissed the appeal after it was fully briefed (ECF No. 5861), successfully wasting another year and requiring Plaintiffs to expend valuable resources.

- During merits discovery, Plaintiffs have discovered that Irico failed to implement an adequate litigation hold when it was served with the complaint in 2007 and, as a result, has destroyed most of its documents relevant to this litigation. Capurro Decl. ¶ 3, Ex. B.

- And most recently, as discussed herein, Irico has repeatedly induced Plaintiffs to agree to extend the schedule to permit the depositions of these witnesses, and allowed Plaintiffs to waste time preparing for the depositions, all while fully aware that the depositions were unlikely to ever take place because the witnesses are not willing to subject themselves to existing quarantine restrictions and China is very unlikely to lift the restrictions entirely.

- Finally, Irico's filed this Motion at the eleventh hour demanding a further six-month extension of time even though it is unlikely to result in the depositions taking place, and rejecting Plaintiffs' reasonable request for some consequence for Irico if the witnesses refuse to appear again.

## IV.    CONCLUSION

For all the foregoing reasons, the Court should deny Irico's Motion because it fails to demonstrate good cause to modify the scheduling order.

Respectfully submitted,

Dated: July 14, 2022                         /s/ Mario N. Alioto

Mario N. Alioto (56433)
Lauren C. Capurro (241151)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

TRUMP, ALIOTO, TRUMP & PRESCOTT, LLP
2001 Union Street, Suite 482
San Francisco, CA  94123
Telephone:     (415) 563-7200
Facsimile:      (415) 346-0679
malioto@tatp.com
laurenrussell@tatp.com

**Lead Counsel for the Indirect Purchaser Plaintiffs**

Dated: July 14, 2022

  /s/ *R. Alexander Saveri*
R. Alexander Saveri (173102)
Geoffrey C. Rushing (126910)
Matthew D. Heaphy (227224)
SAVERI & SAVERI, INC.
706 Sansome Street
San Francisco, CA 94111
Telephone: (415) 217-6810
Facsimile: (415) 217-6813

**Lead Counsel for Direct Purchaser Plaintiffs**