BAKER BOTTS L.L.P.
John M. Taladay (*pro hac vice*)
Evan J. Werbel (*pro hac vice*)
Thomas E. Carter (*pro hac vice*)
Andrew L. Lucarelli (*pro hac vice*)
700 K Street, N.W.
Washington, D.C. 20001
202.639.7700
202.639.7890 (fax)
Email: john.taladay@bakerbotts.com
        evan.werbel@bakerbotts.com
        tom.carter@bakerbotts.com
        drew.lucarelli@bakerbotts.com

*Attorneys for Defendants*
*Irico Group Corp. and Irico*
*Display Devices Co., Ltd.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Master File No.: 07-cv-05944-JST |
| | MDL No. 1917 |
| This document relates to: | **REPLY IN SUPPORT OF DEFENDANTS IRICO GROUP CORP. AND IRICO DISPLAY DEVICES CO., LTD.'S NOTICE OF MOTION AND EMERGENCY MOTION FOR RELIEF FROM SCHEDULING ORDER (CIV. L.R. 16-2(d)) (ECF NO. 6027)** |
| *ALL DIRECT PURCHASER ACTIONS* | |
| *ALL INDIRECT PURCHASER ACTIONS* | |
| | Date:        August 11, 2022 |
| | Time:        2:00 p.m. |
| | Judge:       Hon. Jon S. Tigar |
| | Courtroom:   6, 2nd Floor |

Plaintiffs' Opposition to Irico's Emergency Motion for Relief, ECF No. 6032 (the "Opposition"), is a distraction from the real issues that face the Court in the present motion.[1] Instead of addressing whether good cause exists to adjust the schedule as a result of the Covid pandemic, the Chinese quarantine obligations and the fact that Irico's proposal would not delay the current trial schedule, Plaintiffs – without basis – accuse Irico of not acting in good faith and spend a considerable portion of their Opposition repeating well-worn tropes attempting to portray Irico as dilatory and a bad faith actor. Plaintiffs' own recitation of the facts surrounding the depositions at issue confirm that Irico has taken every step it can to produce these witnesses for depositions. The reality is that Irico had no prescient information, including any awareness that the witnesses would balk at the planned deposition dates due to then-existing quarantine obligations, and in fact acted with nothing but good faith in its dealings with the Plaintiffs despite the unforeseen and protracted challenges of the global pandemic.

Irico has been working with Plaintiffs for months to find an answer to an unprecedented challenge of taking the depositions of employees of a Chinese state-owned entity while Covid was surging. Other parties and courts have often found a solution by using remote depositions that would not require any travel, but that solution is not available here because depositions, including remote depositions, are strictly prohibited in China. Irico has made every effort to facilitate these depositions by identifying other workable locations, and planned for the depositions to occur last month in Macau. But unexpectedly and for the first time, Irico was informed by these employees that they would not travel to Macau at that time because of the real (not imagined or hypothetical) concerns about their personal liberty and safety attendant to the government-imposed conditions on that travel. Irico now seeks additional time to conduct these depositions in light of recent and expected changes in travel conditions for Chinese nationals. While Irico fully understands that this litigation must move to conclusion and shares that desire, Irico's proposed schedule does not disrupt this goal in any way. The proposed schedule would not move the currently scheduled IPP trial date—it merely affords Irico the opportunity to produce witnesses and complete discovery as

---

[1] *See* Irico's Motion for Emergency Relief from Scheduling Order, ECF No. 6027 (the "Motion").

1   contemplated by the parties and the Court. Plaintiffs' Opposition fails to rebut the existence of

2   good cause to grant the Motion, and Irico respectfully requests that the Court so order.

3                                          **ARGUMENT**

4   **I.    THERE IS GOOD CAUSE TO SUPPORT IRICO'S EFFORTS TO SECURE THE
            WITNESSES' AGREEMENT TO TRAVEL**

5

6           There is no dispute that the testimony of these witnesses may be relevant to certain

7   important issues in the case and that the factual record would be advanced by their testimony. The

8   witnesses, Wang Zhaojie and Yan Yunlong, have expressed their willingness to testify in this case.

9   In fact, Mr. Wang and Mr. Yan have recently reconfirmed their agreement to testify. *See*

10  Declaration of Zhang Wenkai in Support of Defendants Irico Group Corp. and Irico Display

11  Devices Co., Ltd.'s Emergency Motion for Relief from Scheduling Order ¶¶ 8, 9, ECF No. 6027-3

12  ("Zhang Decl."). The witnesses, however, were not willing to undertake travel for the Macau

13  depositions planned for June due to the severe quarantine conditions then in place. *See id.*

14          There is a reasonable basis to believe that quarantine restrictions may improve. There have

15  already been positive changes in the quarantine regulations in the past month. Just before Irico

16  filed its Motion, Shaanxi Province, where Irico is headquartered, changed its quarantine policy for

17  travellers returning to mainland China from a minimum of 21 days of centralized quarantine plus 7

18  days of home quarantine (for a total of 28 days) to a requirement of 14 days of centralized

19  quarantine plus 7 days of home quarantine (for a total of 21 days). *See id.* ¶ 4. The central Chinese

20  government also recently adjusted its policy (that does not automatically apply at the provincial

21  level), from a minimum of 14 days of central quarantine and 7 days of home quarantine, to a

22  minimum of 7 days of central quarantine plus 3 days of home quarantine. It appears the local

23  policy in Shaanxi Province may be following suit. It is also hoped that further adjustments will be

24  made as Chinese Communist Party leaders meet in upcoming months.

25          As quarantine conditions continue to improve, Irico hopes that it will be able to convince

26  Mr. Wang and Mr. Yan to agree to travel for the depositions. Irico is asking the Court to give it

27  time to continue to work with the witnesses to secure their participation, and believes that it is in

28

the best interests of all parties for these depositions to proceed, particularly when an additional six-month extension could be granted without adjusting the existing trial schedule.

## II.   IRICO HAS VIGOROUSLY PURSUED THE PRODUCTION OF WITNESSES

As Plaintiffs' own timeline confirms, Irico has vigorously pursued the production of the agreed-upon witnesses, Wang Zhaojie and Yan Yunlong, and Plaintiffs' attempts to argue otherwise are a distortion of the record. *See* Opp. at 4-7.

*First*, Plaintiffs' repeated suggestions that Irico bears responsibility for the unexpected duration and resulting setbacks from Covid are nonsense. *See*, *e.g.*, Opp. at 10, 11. Starting with the initial discussions regarding the case schedule early last year, Irico urged the parties to build additional time into the schedule to account for delays due to Covid. *See*, *e.g.*, Joint Case Management Statement Pursuant to Civil L.R. 16-10(d) at 16, ECF No. 5877 ("Particularly given the complications of COVID-19 requiring extra safety precautions and making U.S.-based attorney travel to oversee this process infeasible for the near future, this massive undertaking and other discovery cannot be completed in just a few months as Plaintiffs propose."). Instead of being receptive to Irico's initial suggestions that the parties set a more reasonable schedule, Plaintiffs rebuffed Irico at nearly every possible opportunity. *See*, *e.g.*, *id.* at 6 ("Any attempt by Irico to continue to drag out these pretrial proceedings because of the Covid-19 pandemic should be rejected."). The delays stemming from the Covid situation in China should not be a basis to foreclose Irico from further discovery or expose it to potential sanctions.

In fact, Plaintiffs now largely ignore that there is a global pandemic that has been treated far differently by the government of China than it has in many other countries, including the United States. *See* Mot. at 3-4. To outside observers, China's Zero Covid policy may seem out-of-step with current realities elsewhere, but the opposite may be true in China. In any event, it remains the law of the land and the Chinese government has continued to react strongly to what would now be considered minor impacts by the standards of authorities in the United States. *See* Nectar Gan and Shawn Deng, *Xi'an Shuts Back Down as China Finds First Cases of New Omicron Subvariant*, CNN.com (July 6, 2022), https://www.cnn.com/2022/07/06/china/china-covid-xian-

new-omicron-variant-intl-hnk/index.html. Without doubt, the measures currently in place to prevent and squelch Covid outbreaks in China go far beyond the strictest mandates implemented at the height of the pandemic within the United States. As a result, the witnesses face the reality of forced quarantine for an indefinite period of time (the current policies are minimums, and the length of quarantine is determined at the sole discretion of Chinese authorities). This quarantine is under conditions that often raise the risk of exposure of those in quarantine to Covid. *See China: The Elderly People Struggling in Shanghai's Quarantine Centres*, BBC.com (Apr. 30, 2022), https://www.bbc.com/news/world-asia-china-61268090. Thus, these are very strong incentives to avoid quarantine conditions for reasons of both liberty and health, just as they would be for Plaintiffs' or Irico's counsel if they were so required.

*Second*, Plaintiffs inaccurately attempt to shift responsibility for the delays in scheduling the depositions to Irico. For example, as discussed in Irico's Motion, they ignore their own months-long insistence that the depositions take place in San Francisco, a location to which Irico's witnesses could not travel. *See* Mot. at 9. Plaintiffs' longtime refusal to agree to remote depositions meant that Irico could not pursue that option prior to late last year. *See id.* (*citing* Declaration of Evan J. Werbel in Support of Defendants Irico Group Corp. and Irico Display Devices Co., Ltd.'s Emergency Motion for Relief from Scheduling Order, ECF No. 6027-1 ("Werbel Decl."), Ex. 2 at 1-2). By the time Irico could start the necessary arrangements for the witnesses to travel to Hong Kong in earnest, Omicron cases began to rise and travel to Hong Kong was severely restricted, circumstances beyond Irico's control. *See* Mot. at 6. Plaintiffs also fail to acknowledge in the Opposition that one of the reasons for the most recent stipulation regarding the case schedule was the Indirect Purchaser Plaintiffs' inability to produce their own expert for deposition prior to the deadline for the close of expert discovery. *See* Stipulation and Order Re: Case Schedule, ECF No. 6016 ("WHEREAS, the parties were unable to schedule the deposition of IPPs' economic expert witness, Dr. Janet Netz, until June 9, 2022, which is after the close of expert discovery.").

*Third*, contrary to Plaintiffs' assertions, Irico has worked diligently with the witnesses to arrange for travel to Macau for depositions, and the witnesses participated fully in those efforts.[2] *See* Mot. at 9 (*citing* Zhang Decl. ¶ 5). There was no effort by Irico to deceive anyone regarding the status of the depositions—Irico acted reasonably in its reliance that the witnesses would travel once the visas for travel to Macau issued.[3] In fact, the witnesses fully cooperated with Irico's efforts to obtain the Macau travel visas and did not indicate that they would not travel during the effort to obtain the visas. *See* Zhang Decl. ¶¶ 5, 8, 9. In addition, once the visas issued and Mr. Wang and Mr. Yan informed Irico that they would not travel at that time, Irico attempted to secure their agreement by offering work-related assistance and significant financial incentives during both the travel and quarantine periods. *See* Zhang Decl. ¶ 10.

*Fourth*, Irico has been upfront in communicating the generalized concerns of the witnesses surrounding travel for depositions and the resulting quarantine obligations with all parties since the beginning of the deposition discussions, as Plaintiffs acknowledge in their Opposition. *See* Opp. at 10 ("On December 3, 2021, Irico's counsel informed Plaintiffs that Messrs. Wang and Su were refusing to travel to Hong Kong for their depositions because they were 'very concerned that travel may result in exposure to the coronavirus *and about the severe quarantine requirements they would face.*'") (emphasis in original). Indeed, given the severe quarantine conditions, it should not come as a surprise to anyone that the witnesses were unenthusiastic. However, Plaintiffs are wrong to suggest that Irico had any advance warning that the witnesses would refuse to travel under then-applicable quarantine conditions. Indeed, despite their general expressions of concerns, the witnesses had indicated a willingness to travel to Macau in June and, as noted above, provided full assistance during the visa application process. Only after the visas were actually granted did Mr.

---

[2] There is no validity in Plaintiffs' speculation that Irico somehow misled Plaintiffs and the Court when it entered into the Stipulation and [Proposed] Order re Case Schedule on May 20, 2022. *See* Opp. at 11. To remove any question, Irico hereby confirms that Irico's Deputy General Counsel handling this litigation did not learn of Mr. Su's resignation until May 31, 2022. *See* Second Decl. of Zhang Wenkai in Support of Defendants Irico Group Corp. and Irico Display Devices Co., Ltd.'s Emergency Motion for Relief from Scheduling Order, filed herewith, ¶ 4.

[3] In the prior efforts to schedule the depositions in Hong Kong, visas were not issued due to the city's Covid-related shutdowns following the emergence of Omicron earlier this year. *See* Werbel Decl., Ex. 2 at 1-2.

Wang and Mr. Yan inform Irico that they refused to travel at that time under applicable quarantine conditions.[4] *See* Mot. at 9-10.

*Fifth*, Plaintiffs criticize Irico for not providing dates for depositions (Opp. at 17), but the reality is that Irico could not provide dates for depositions prior to securing the necessary visas from Chinese authorities to authorize travel for those witnesses. In fact, it was after obtaining the Macau visas, when Irico was working with the witnesses to create a list of potential dates for the depositions, that the witnesses told Irico that they refused to travel. *See* Mot. at 9-10.

*Sixth*, after informing Plaintiffs of the refusals of Mr. Wang and Mr. Yan to travel to Macau at this time, Irico worked diligently with Plaintiffs to see if a resolution was possible prior to involving the Court—negotiation time that the Plaintiffs ascribe as Irico waiting until the "eleventh hour" to file this Motion. These efforts included exchanging numerous letters and emails, investigating and answering questions from Plaintiffs about the witnesses' positions, and meeting and conferring twice. *See generally*, Werbel Decl.; *see also* Declaration of Lauren C. Capurro, ECF No. 6032-1 ("Capurro Decl."), ¶¶ 5-9. Irico remained hopeful that an agreement could be reached, but Plaintiffs stood firm on their demand that Irico acquiesce to what would amount to automatic and extreme sanctions if the witnesses did not appear, regardless of any potential developments in China's quarantine requirements, Macau's travel restrictions, or any other factor. Given that Irico has done everything in its power to secure the witnesses' agreement to travel, including offering work-related assistance and significant financial incentives during both the travel and quarantine periods, Irico could not agree to hamstring its own defense as a result of circumstances outside of its control (*i.e.*, the sole reason that the depositions have not yet occurred). *See* Mot. at 9-10; *see also* Zhang Decl. at ¶ 10 (offering witnesses incentives to travel include assurances regarding work obligations and additional financial compensation for travel and quarantine time).

---

[4] Mr. Su resigned from the company rather than face the challenges of travelling to Macau during Covid and the resulting mandatory (then) 28-day quarantine upon his return. Irico informed Plaintiffs of Mr. Su's resignation from Irico as soon as Mr. Su could be reached, and the details could be confirmed. But to reiterate, even Mr. Su cooperated with the process of applying for visas to travel to Macau.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Contrary to Plaintiff's assertions, Irico did not intentionally wait until the "eleventh hour" to seek this extension or somehow try to game the system. Irico only learned that the witnesses would not travel for these depositions after the visas to Macau were granted on June 8, 2022. *See* Zhang Decl. ¶ 10. On June 14, 2022, Irico's counsel informed Plaintiffs that Mr. Wang and Mr. Yan were unwilling to travel at that time. *See* Werbel Decl., Ex. 10 at 1. Over the next two weeks, as described above, the parties exchanged numerous emails and letters and held two meet and confers regarding the depositions, including the final meet and confer on June 29, 2022. Only after it had exhausted efforts to reach an extension with Plaintiffs did Irico seek the Court's involvement.

For the reasons stated in Irico's Motion and above, it has established good cause for the requested extension of the deposition schedule for Messrs. Wang and Yan.

## III.   THE CASES CITED BY PLAINTIFFS ARE INAPPOSITE

The cases cited Plaintiffs in the Opposition do not rebut the conclusion that Irico has demonstrated good cause to grant Irico's Motion in this case. Indeed, Plaintiffs either misconstrue the holdings of cases that firmly support Irico's Motion or cite to cases that are inapposite or otherwise not applicable to Irico, a Chinese state-owned entity whose role is clearly different than a typical corporate defendant.

Plaintiffs primarily rely on *Est. of Boyles v. Gree USA, Inc.*, No. 1:20-CV-276, 2021 WL 3292727 (M.D.N.C. Aug. 2, 2021), which they claim is "instructive" regarding Irico's "nearly identical situation." *See* Opp. at 14-15. Although superficially similar in that the case involved a Chinese defendant, depositions, and Covid, the facts animating that court's decision were dramatically different. *First*, the defendant's significant and direct sales targeted at customers in the United States were at the heart of the lawsuit, whereas here Irico has no such sales. *See Boyles,* 2021 WL 3292727, at *1. The *Boyles* court explained the importance of a significant connection to the United States in language that Plaintiffs omitted from their Opposition:

> ***Corporations who sell products in the United States*** cannot avoid discovery by operating in a country that does not allow such discovery to take place, and they cannot refuse to produce a witness based on inconvenience.

*Id.* at *7 (emphasis added). The court's holding also relied upon the fact that the defendant's presence in China was a matter of convenience. *Id.* (citing the defendant's "decision to operate their business in China"). Here, Irico's deep-rooted origins as a Chinese state-owned entity show that it is not using its location in China as a strategic advantage in the litigation. *See In re Cathode Ray Tube (CRT) Antitrust Litig*, Case No. 07-cv-5994-JST, Slip Op. at 7, ECF No. 5637 (finding that Irico Group was "fully owned by the State Council"); *see also* Irico Group Corporation's Amended Motion to Dismiss Claims of Indirect Purchaser Plaintiffs for Lack of Subject Matter Jurisdiction at 4, ECF No. 5409 ("The PRC created Irico Group to provide valuable CRT technology to the people of China and the Chinese government mandated that Group provide a host of social services that benefitted the people of Xianyang City, Shaanxi Province, where Group is headquartered."). *Boyles* also involved a 30(b)(6) deposition where defendant could choose any witness to educate and send for deposition. *See* 2021 WL 3292727, at *5. In contrast, Irico must produce the specific witnesses chosen by Plaintiffs and does not have the luxury of searching for any employee – or non-employee – who was willing to sit as a 30(b)(6) witness.

Plaintiffs' citations to *Twitter*, *Oracle*, and *Wong* are similarly inapposite. *See* Opp. at 8-9, 15-16. Irico has already explained, *infra* at 4, why Plaintiffs' claims that Irico somehow misled the Court and Plaintiffs during the initial scheduling phase are patently false. *Twitter* also turned on the fact that "[Plaintiffs] do not 'offer any explanation for their failure to amend their complaints earlier' and make no assertion that they were diligent in seeking amendment." *In re Twitter, Inc. Sec. Litig.*, No. 16-CV-05314-JST, 2020 WL 4188787, at *4 (N.D. Cal. May 19, 2020) (Tigar, J.) (citations omitted). Here, Irico has both explained why it is moving for relief at this time and explained how it was diligent. *Oracle* and *Wong* both involve long-missed expert deadlines, where the moving party failed to establish a cognizable basis for good cause for missing the deadline. *See Oracle Am., Inc. v. Hewlett Packard Enter. Co.*, No. 16-CV-01393-JST, 2019 WL 468809, at *4 (N.D. Cal. Feb. 6, 2019) (Tigar, J.) (denying attempt to supplement expert report more than a year after the discovery deadline, five months after 30(b)(6) depositions, and two months after the last meet and confer with defendants); *Wong v. Regents of Univ. of Cal.*, 410 F.3d 1052, 1062 (9th Cir. 2005) (district courts

"must be allowed to enforce [pretrial scheduling orders], *unless there are good reasons not to*") (emphasis added). Unlike the parties in *Oracle* and *Wong*, Irico has provided justification for good cause through the unforeseen and last-minute decision of its witnesses not to travel due to concerns about Covid.

Plaintiffs' attempts to distinguish cases cited by Irico in the Motion – by pulling selective, non-representative quotes from those cases – fail to rebut the support these cases provide for a finding of good cause for the requested extension under the current Covid situation in China. The courts' decisions in *Berglund* and *Tagliaferro* both relied heavily on the strict Covid protocols set up by the respective courts to protect witnesses from exposure to Covid. *See United States v. Berglund*, No. 20CR00200SRNTNL, 2021 WL 1589548, at *1 (D. Minn. Apr. 23, 2021) (highlighting the "great lengths" that the court had "gone to protect participants at all in-person proceedings, in consultation with public health experts"); *United States v. Tagliaferro*, 531 F. Supp. 3d 844, 853 (S.D.N.Y. 2021) (holding that the court could not "discount the extraordinary lengths to which this District has gone to ensure a safe and effective re-opening to the general public"). Here, the witnesses would not be protected by any well-thought-out rules established by the Court. With the necessity of travel for depositions (in Macau or elsewhere) due to the prohibition on taking depositions in mainland China, there are many more variables that the Court cannot control such as exposure via airports, traveling to hotels, and especially exposure during the mandatory centralized quarantine upon return to mainland China. And the Court can do nothing to forestall the extensive quarantine requirements for Chinese citizens traveling abroad. Should any problems arise, the Court would be powerless to intervene on behalf of the witnesses within the borders of mainland China. And, despite the touted safeguards already in place, the *Berglund* court still granted a four-month continuance for the start of trial. *See* 2021 WL 1589548, at *2. In contrast (and as ignored in Plaintiffs' Opposition), Irico's scheduling proposal preserves the existing trial date in the IPP action.

Finally, Plaintiffs' citations to this Court's prior decision in this case regarding extensions to scheduling orders actually supports Irico's argument that good cause exists for the Motion. *See In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. C-07-5944-SC, 2014 WL 4954634, at *3 (N.D.

Cal. Oct. 1, 2014). In that decision, the Court confirmed that the "good cause analysis" to be applied when considering an extension should "not punish[] parties for circumstances outside their control." *Id*. Here, despite Irico's best efforts, it was not able to convince the witnesses to travel to Macau prior to the June 30 deadline due to the quarantine conditions that existed at that time. *See* Zhang Decl. ¶¶ 8-10. But Irico acted in good faith throughout.

## CONCLUSION

Irico has shown that good cause exists to support Irico's efforts to secure the participation of the witnesses by extending the current deposition deadline. This extension is reasonable to continue to allow for Chinese quarantine restrictions to improve. The schedule should be adjusted to maximize the opportunity to conduct the depositions, particularly where it will not affect the trial date. For the foregoing reasons, Irico respectfully requests that the Court grant Irico's Motion.

Dated: July 21, 2022

Respectfully submitted,

/s/ *John M. Taladay*
BAKER BOTTS LLP
JOHN M. TALADAY
EVAN J. WERBEL
THOMAS E. CARTER
ANDREW L. LUCARELLI
700 K Street, N.W.
Washington, D.C. 20001
202.639.7700
202.639.7890 (fax)
Email: john.taladay@bakerbotts.com
       evan.werbel@bakerbotts.com
       tom.carter@bakerbotts.com
       drew.lucarelli@bakerbotts.com

*Attorneys for Defendants Irico Group Corp. and Irico Display Devices Co., Ltd.*