1
2
3
4
5
6
7

Mario N. Alioto (56433)
Lauren C. Capurro (241151)
TRUMP, ALIOTO, TRUMP & PRESCOTT LLP
2001 Union Street, Suite 482
San Francisco, CA 94123
Telephone: 415-563-7200
Facsimile: 415- 346-0679
Email: malioto@tatp.com
laurenrussell@tatp.com

***Lead Counsel for the***
***Indirect Purchaser Plaintiffs***

8
9
10
11

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Master File No. 4:07-cv-05944-JST<br>Case No. 4:17-cv-04067-JST<br><br>MDL No. 1917 |
| This Document Relates to:<br><br>*Luscher, et al. v. Mitsubishi Electric Corp.,*<br>No. 4:17-cv-04067-JST | **INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT WITH DEFENDANT MITSUBISHI ELECTRIC CORPORATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Hearing Date: December 1, 2022<br>Time: 2:00 p.m.<br>Courtroom: 5, 2nd Floor<br>Judge:  Honorable Jon S. Tigar |

1

**TABLE OF CONTENTS**

2  NOTICE OF MOTION AND MOTION ..........................................................................................1

3  MEMORANDUM OF POINTS AND AUTHORITIES ....................................................................1

4  I.   INTRODUCTION ...............................................................................................................1

5  II.  FACTUAL AND PROCEDURAL BACKGROUND .........................................................3

6  III. SUMMARY OF SETTLEMENT TERMS .........................................................................6

7         A.   Proposed Settlement.................................................................................................6

8         B.   Settlement Discussions ............................................................................................9

9         C.   Consideration ...........................................................................................................9

10            1.   Cash..............................................................................................................9

11            2.   Cooperation..................................................................................................9

12        D.   Release .....................................................................................................................9

13 IV. ARGUMENT ....................................................................................................................10

14        A.   Legal Standards......................................................................................................10

15        B.   The Court Should Grant Preliminary Approval And Direct Notice To The Class......12

16            1.   The Class Has Been Adequately Represented ....................................................12

17            2.   The Proposed Settlement Is The Product Of Arm's Length Negotiations..........13

18            3.   The Proposed Settlement Provides Substantial Relief For The Class .................14

19                 a.   The Costs, Risks, And Delay Of Trial And Appeal Were
                         Significant..........................................................................................15

20                 b.   The Plan Of Distribution Is Fair, Adequate And Reasonable............18

21                 c.   IPP Counsel Will Seek Reasonable Attorneys' Fees .....................21

22                 d.   Other Related Agreements...................................................................22

23            4.   The Proposed Settlement Treats Class Members Equitably ...............................23

24            5.   The Proposed Settlement Satisfies The District's Procedural Guidance ............24

25                 a.   The Litigation And Settlement Class.......................................24

|   |   | b. | The Releases Track The Allegations In The Complaint…………..25 |
|   |   | c. | The Settlement Administrator Selection Process And Costs………..26 |
|   |   | d. | Costs And Expenses………………………………………………27 |
|   |   | e. | Service Awards……………………………………………………27 |
|   |   | f. | Past Distributions………………………………………………28 |

C.   The Proposed Settlement Class Satisfies Rule 23(a) ....................................30

    1.   The Class Is So Numerous That Joinder Is Impracticable..............................31

    2.   The Case Involves Questions Of Law and Fact Common to the Class ...........31

    3.   Plaintiffs' Claims Are Typical Of The Claims Of The Class .........................32

    4.   Plaintiffs Will Fairly And Adequately Represent The Interests
        Of The Class .................................................................................................23

D.   The Proposed Settlement Class Satisfies Rule 23(b)(3) .............................34

    1.   Common Questions Of Law Or Fact Predominate .........................................34

    2.   A Class Action Is Superior To Other Methods of Adjudication.....................34

V.   THE PROPOSED NOTICE PROGRAM PROVIDES THE BEST NOTICE
    PRACTICABLE UNDER THE CIRCUMSTANCES ...........................................35

VI.   THE COURT SHOULD SET A FINAL APPROVAL HEARING SCHEDULE..................34

VII.   CONCLUSION ...................................................................................35

ii

# TABLE OF AUTHORITIES

## CASES

*Amchem Prods. Inc. v. Windsor*
    521 U.S. 591 (1997)...............................................................................30, 34, 35

*Animal Sci. Prods. Inc. v. China Minmetals Corp.*
    654 F.3d 462 (3d Cir. 2011) ...........................................................................18

*Byrd v. Civil Serv. Comm' of City and County of San Francisco*
    459 U.S. 1217 (1983)......................................................................................11

*Churchill Vill., L.L.C. v. GE*
    361 F.3d 566 (9th Cir. 2004) ..............................................................11, 15, 35

*Comcast Corp. v. Behrend*
    569 U.S. 27 (2013).........................................................................................18

*ERI Max Entertainment, Inc. v. Streisand*
    690 A.2d 1351 (R.I. 1997)...............................................................................8

*Hanlon v. Chrysler Corp.*
    150 F.3d 1011 (9th Cir. 1988) .................................................................. 11-12

*Hefler v. Wells Fargo & Co.*
    No. 16-cv-05479-JST, 2018 WL 4207245 (N.D. Cal. Sept. 4, 2018) ....................13, 19

*In re AT&T Mobility Wireless Data Servs. Sales Litig.*
    270 F.R.D. 330 (N.D. Ill. 2010)......................................................................18

*In re Cathode Ray Tube (CRT) Antitrust Litig.*
    No. 07-cv-5944-JST, 2013 WL 5429718 (N.D. Cal. June 20, 2013)..............4, 30, 33, 35

*In re Cathode Ray Tube (CRT) Antitrust Litig.*
    No. 07-cv-5944-JST, 2013 WL 5391159 (N.D. Cal. Sept. 24, 2013) ....................4, 8

*In re Cathode Ray Tube (CRT) Antitrust Litig.*
    No. 07-cv-5944-JST, 2016 WL 3648478 (N.D. Cal. July 7, 2016)...............................20

*In re Cathode Ray Tube (CRT) Antitrust Litig.*
    No. 07-cv-5944-JST, 2016 WL 4126533 (N.D. Cal. Aug. 3, 2016) .............................33

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*
    516 F. Supp. 2d 1072 (N.D. Cal. 2007)............................................................8

*In re Flash Memory Antitrust Litig.*
    No. 07-cv-0086 SBA , 2010 WL 2332081 (N.D. Cal. June 9, 2010)...........................16

INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT WITH MITSUBISHI ELECTRIC CORPORATION
Case No. 17-cv-04067-JST; Master File No. 07-cv-05944-JST

*In re Graphics Processing Units (GPU) Antitrust Litig.*
    253 F.R.D. 478, 507 (N.D. Cal. 2008) ................................................................16

*In re Lithium Ion Batteries Antitrust Litig.*
    No. 13-MD-2420-YRG, 2017 WL 1391491 (N.D. Cal. Apr. 12, 2017) ..........16

*In re Mercury Interactive Corp. Securities Litig.*
    618 F.3d 988 (9th Cir. 2010) ............................................................................21

*In re National Collegiate Athletic Association Athletic Grant-in-Aid Cap Antitrust Litig.*
    No. 4:14-md-2541-CW, 2017 WL 6040065 (N.D. Cal. Dec. 6, 2017) ..............11

*In re Relafen Antitrust Litig.*
    221 F.R.D. 260, 275 (D.Mass. 2004) ..............................................................34

*In re Se. Milk Antitrust Litig.,*
    No. 2:07-CV 208, 2013 WL 2155387 (E.D. Tenn. May 17, 2013) .......................22

*In re Syncor ERISA Litig.*
    516 F.3d 1095 (9th Cir. 2008) ..........................................................................11

*In re Tableware Antitrust Litig.*
    484 F. Supp. 2d 1078 (N.D. Cal. 2007) ...........................................................35

*In re Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litig.*
    746 F. App'x 655, 657 (9th Cir. 2018) ............................................................11

*Lobatz v. U.S. West Cellular of California, Inc.,*
    222 F.3d 1142 (9th Cir. 2000) ......................................................................22

*Lotes Co., Ltd. v. Hon Hai Precision Industry Co.*
    753 F.3d 395 (2d Cir. 2014) ............................................................................18

*Minn-Chem Inc. v. Agrium Inc.*
    683 F.3d 845 (7th Cir. 2012) ............................................................................18

*Motorola Mobility LLC v. AU Optronics Corp.*
    775 F.3d 816 (7th Cir. 2015) ............................................................................18

*Officers for Justice v. Civil Serv. Comm'n of City and County of San Francisco*
    688 F.2d 615 (9th Cir. 1982) ............................................................................11

*Thomas & Thomas Rodmakers Inc. v. Newport Adhesives & Composites, Inc.*
    209 F.R.D 159 (C.D. Cal. 2002) .......................................................................34

*U.S. v. Hsiung*
    778 F.3d 738 (9th Cir. 2015) ............................................................................18

*Valentino v. Carter-Wallace, Inc.*
   97 F.3d 1227 (9th Cir. 1996) ...................................................................................34

*Van Bronkhorst v. Safeco Corp.*
   529 F.2d 943 (9th Cir. 2004) ...................................................................................11

*Viceral v. Mistras Group, Inc.*
   No. 15-cv-02198-EMC, 2016 WL 5907869 (N.D. Cal. Oct. 11, 2016) .........................13

*Wal-Mart Stores Inc. v. Dukes*
   564 U.S. 338 (2011)...................................................................................................18

*Wortman v. Air New Zealand*
   No. 07-cv-05634-CRB, 2018 WL 3753226 (N.D. Cal. Aug. 8, 2018)....................31, 32

**FEDERAL STATUTES**

15 U.S.C. § 6a ...................................................................................................................18

28 U.S.C. § 1715 ...............................................................................................................37


**FEDERAL RULES**

Fed. R. Civ. P. 23 ................................................................................................... *passim*

   Rule 23(a)(1)...................................................................................................30

   Rule 23(a)(2)...................................................................................................31

   Rule 23(a)(3)...................................................................................................31

   Rule 23(a)(4)...................................................................................................32

   Rule 23(b)(3)...................................................................................30, 33, 34

   Rule 23(c)(2)(B) .............................................................................................35

   Rule 23(e) ............................................................................................ *passim*

   Rule 23(f) ..........................................................................................................4

**STATE STATUTES**

Montana Code Ann. § 30-14-102 ........................................................................8

Montana Code Ann. § 30-14-133 ........................................................................8

Mo. Rev. Stat. § 407.025 .....................................................................................8

v

INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT WITH MITSUBISHI ELECTRIC CORPORATION
Case No. 17-cv-04067-JST; Master File No. 07-cv-05944-JST

R.I. Gen. Stat. § 6-13.1-5.2 ...............................................................................................................8

**OTHER AUTHORITIES**

Manual for Complex Litigation (Fourth)

   § 21.311 ......................................................................................................................................35

   § 21.632 ......................................................................................................................................30

Newberg on Class Actions (5th ed. 2014)

   § 8.32 ..........................................................................................................................................35

   § 11.53 ........................................................................................................................................35

Wright, Miller & Kane, Federal Practice and Procedure: Civil Procedure (3d. ed. 2004)

   § 1781 .........................................................................................................................................34

INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT WITH MITSUBISHI ELECTRIC CORPORATION
Case No. 17-cv-04067-JST; Master File No. 07-cv-05944-JST

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**NOTICE OF MOTION AND MOTION**

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that, on December 1, 2022 at 2:00 p.m., before the Honorable Jon S. Tigar, United States District Court for the Northern District of California, 1301 Clay Street, Oakland, California, Courtroom 6, 2nd Floor, San Francisco, California, the Indirect Purchaser Plaintiffs ("IPPs") will move the Court, pursuant to Federal Rule of Civil Procedure 23(e), for entry of an Order:

1. Finding that the Court will likely be able to approve the proposed class action settlement ("Proposed Settlement") with Defendant Mitsubishi Electric Corporation ("Mitsubishi Electric");

2. Finding that the Court will likely be able to certify the Proposed Settlement Class;

3. Finding that the Court will likely be able to approve the proposed plan of distribution;

4. Approving the proposed notice plan and the claim form, directing notice of the Proposed Settlement to the Proposed Settlement Class, and providing Class Members with an opportunity to opt out of or object to the Proposed Settlement;

5. Appointing plaintiffs Brian Luscher, Simon Lee, Jeffrey Figone, Steven Ganz, Lawyer's Choice Suites, Inc., David Rooks, Sandra Riebow, Travis Burau, Southern Office Supply, Inc., Kerry Lee Hall, Patrick Carleo, Jr., Lisa Reynolds, David Norby, Barry Kushner, Suzanne Cotter, Kathryn Gumm, Richard Jones, Steven Fink, Gregory Painter, John Murphy, Mary Ann Stephenson, Janet Ackerman, Louise Wood, Patricia Andrews, Gary Hanson, Angela Gardinier, Christine Longo, Chris Carrington, Donna Marie Ellingson, Alexander M. Nicholson, Jr., Richard Shew, Margaret Slagle, John Larch, and Brigid Terry (the "Named Plaintiffs") as representatives for the Proposed Settlement Class for purposes of disseminating notice;

6. Appointing Trump, Alioto, Trump & Prescott, LLP as Settlement Class Counsel;

7. Authorizing retention of The Notice Company as the notice and claims administrator; and

8.   Scheduling a hearing to determine whether the Proposed Settlement is fair, reasonable and adequate under Fed. R. Civ. P. 23(e)(2) and whether the Settlement Class should be certified.

This motion is brought pursuant to Fed. R. Civ. P. 23(e). The grounds for this motion are that the Proposed Settlement is within the range of reasonableness to justify issuing notice of the Proposed Settlement to Class Members and to schedule final approval proceedings, and the Proposed Settlement Class satisfies the certification requirements for such class action settlements.

This motion is based on this Notice of Motion and Motion, the supporting Memorandum of Points and Authorities, the accompanying Declarations of Mario N. Alioto and Joseph Fisher in support of the Motion, any further papers filed in support of this Motion, the argument of counsel, and all pleadings and records on file in this matter.

Dated:  August 18, 2022                          Respectfully submitted,

                                                */s/ Mario N. Alioto*
                                                Mario N. Alioto (56433)
                                                malioto@tatp.com
                                                Lauren C. Capurro (241151)
                                                laurenrussell@tatp.com
                                                TRUMP, ALIOTO, TRUMP & PRESCOTT LLP
                                                2001 Union Street, Suite 482
                                                San Francisco, CA 94123
                                                Telephone: 415-563-7200
                                                Facsimile: 415-346-0679

                                                *Lead Counsel for the Indirect Purchaser*
                                                *Plaintiffs*

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Pursuant to Fed. R. Civ. P. 23(e), the Indirect Purchaser Plaintiffs ("IPPs") move for an order finding that the Court will likely approve the proposed class action settlement (the "Proposed Settlement") with Defendant Mitsubishi Electric Corporation ("Mitsubishi Electric") and approving their proposed notice program. *See* Declaration of Mario N. Alioto In Support of Motion for Preliminary Approval of Class Action Settlement with Mitsubishi Electric Corporation ("Alioto Decl."), ¶ 2, Ex. A (Settlement Agreement) filed herewith.

The Proposed Settlement resolves all IPP claims against Mitsubishi Electric and obligates Mitsubishi Electric to pay Thirty Three Million Dollars cash ($33,000,000—the "Settlement Amount") in return for IPPs' releases of their claims against Mitsubishi Electric.[1]   If approved, this Proposed Settlement—along with the nine previously approved settlements[2]—will result in total settlement payments of Five Hundred Eighty Million Seven Hundred Fifty Thousand Dollars ($580,750,000) to indirect purchasers of Cathode Ray Tubes ("CRTs") and products containing CRTs, such as televisions and computer monitors ( "CRT Products").

The Proposed Settlement is contingent upon this Court's certification of a proposed settlement class consisting of statewide classes for 31 "Indirect Purchaser Jurisdictions" (collectively the "Proposed Settlement Class").[3] These classes include indirect purchasers of CRTs and CRT Products,

---

[1] The $33,000,000 Settlement Amount, plus interest, is referred to as the "Settlement Fund." Pursuant to the parties' agreement, this amount has already been paid into escrow and has been accruing interest for the benefit of Class members.  Alioto Decl. ¶ 3.

[2] The Court granted final approval to settlements with Chunghwa Picture Tubes Ltd. ("Chunghwa") on March 22, 2012 (ECF No. 1105) and the LG Electronics Defendants on April 18, 2014 (ECF No. 2542); and, the Amended Settlements with the Philips, Panasonic, Hitachi, Toshiba, Samsung SDI, Thomson and TDA Defendants on July 13, 2020 (ECF No. 5786). All nine settlements are collectively referred to as the "Prior Settlements." All defendants are collectively referred to as "Defendants."

[3] "Indirect Purchaser Jurisdictions," as defined in Paragraph 5 of the Settlement Agreement, means: Arizona, Arkansas, California, District of Columbia, Florida, Hawaii, Iowa, Kansas, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, Rhode Island, South Carolina, South Dakota, Tennessee, Utah, Vermont, West Virginia, and Wisconsin.

1  who or which seek money damages under the laws of 30 states and the District of Columbia. Alioto

2  Decl., Ex. A ¶¶ 5, 10. Each of the 31 statewide classes is the same in substance as the 22 statewide

3  settlement classes certified by the Court on July 13, 2020. *See* ECF No. 5786.  Each is also the same

4  in substance as the 22 statewide litigation classes certified in 2013. *See* ECF No. 1950. The Proposed

5  Settlement, however, also settles claims based on purchases in nine additional states.[4]

6       Under Fed. R. Civ. P. 23(e), the Court must consider whether it will likely be able to (1)

7  approve the Proposed Settlement, and (2) certify the class for purposes of settlement, such that notice

8  of the settlement to potential class members and scheduling final approval proceedings is warranted.

9  The Proposed Settlement easily meets the standards for preliminary approval.  The parties reached the

10  Proposed Settlement after extensive investigation and discovery into their claims and defenses, and

11  extensive arm's-length negotiations between experienced and informed counsel under the supervision

12  of then-Magistrate Judge Jacqueline Scott Corley ("Judge Corley").

13       IPPs propose to compensate members of the Proposed Settlement Class according to the same

14  plan of distribution that this Court approved in connection with the Prior Settlements. Under this plan,

15  all class members are eligible to receive a distribution from the Settlement Fund based on the number

16  and type of CRTs or CRT Products purchased.

17       IPPs have again retained Joseph Fisher of The Notice Company, who also designed the notice

18  programs approved by the Court for the Prior Settlements, to design the notice program for this

19  Proposed Settlement. *See* Declaration of Joseph Fisher Re: Mitsubishi Electric Notice Program

20  ("Fisher Decl.") at ¶ 3. The proposed notice program is a robust, multifaceted program that delivers

21  plain and easily understood information about the Proposed Settlement. It includes direct mail and

22  email notice, as well as published notice in print publications, on television, and an extensive online,

23  digital notice campaign. *Id*. ¶¶ 8-30. The proposed notice program is designed to provide the best

24  notice practicable under the circumstances and comports with the requirements of due process and

25  Rule 23. *Id*. at ¶ 31, 33.

26

27  ─────────────
   [4] The nine additional states are: Arkansas, Massachusetts, Missouri, Montana, New Hampshire,

28  Oregon, Rhode Island, South Carolina, and Utah.

1   For these reasons, the Proposed Settlement meets all requirements for preliminary approval,

2   and the IPPs respectfully request that the Court enter an order: (1) finding that it will likely be able to

3   certify the Proposed Settlement Class; (2) finding that it will likely be able to approve the Proposed

4   Settlement; (3) finding that it will likely approve the proposed plan of distribution; (4) approving the

5   notice program and the proposed claim form as complying with due process and Rule 23, and ordering

6   notice be disseminated to the Class; (5) appointing Trump, Alioto, Trump & Prescott, LLP as

7   Settlement Class Counsel; and (6) setting a schedule for a final approval hearing.[5]

8   ## II.   FACTUAL AND PROCEDURAL BACKGROUND

9   This Court has found that IPPs' action against Mitsubishi Electric relates to the above-

10   captioned *CRT* multidistrict litigation (the "MDL"), which has been pending since late 2007. ECF No.

11   5178. This action and the other MDL actions assert similar allegations of an international conspiracy

12   to fix the prices of CRTs from March 1, 1995 through November 25, 2007.

13   Mitsubishi Electric was not named as a defendant in any of the original complaints

14   consolidated in the MDL, or in IPPs' first three consolidated amended complaints ("CACs"). ECF

15   Nos. 437, 716, 827. Mitsubishi Electric had a small CRT market share and it was not a named target

16   of the DOJ's investigation into the CRT market, or of any foreign government's investigation into the

17   alleged CRT conspiracy. Alioto Decl. ¶ 4. In addition, Chunghwa, the DOJ's amnesty applicant with

18   which IPPs settled in April 2009—and which provided IPPs with cooperation, including an oral proffer

19   regarding the CRT conspiracy—did not implicate Mitsubishi Electric. *Id.*

20   As the litigation proceeded, however, IPPs continued to investigate Mitsubishi Electric's

21   involvement in the CRT conspiracy and entered into a tolling agreement with Mitsubishi Electric in

22   early November 2011. Pursuant to the tolling agreement, Mitsubishi Electric produced its CRT and

23   CRT Product sales data to IPPs. *Id.* ¶ 5. IPPs' Fourth CAC, filed on January 10, 2013, named

24   Mitsubishi Electric as a co-conspirator. ECF No. 1526.

25   In order to hold the other Defendants jointly and severally liable for the damages caused by

26

27   _____

28   [5] A Proposed Order granting preliminary approval is submitted herewith.

INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT WITH MITSUBISHI ELECTRIC CORPORATION
Case No. 17-cv-04067-JST; Master File No. 07-cv-05944-JST

1   Mitsubishi Electric, IPPs had to prove its participation in the CRT conspiracy. Alioto Decl. ¶ 6. As

2   part of IPPs' motion for class certification in the litigation against the other Defendants, IPPs' expert,

3   Dr. Netz, included Mitsubishi Electric's CRT sales data in her analyses of pass-through and damages

4   to the indirect purchaser classes. ECF No. 1388. Class Counsel also analyzed evidence of Mitsubishi

5   Electric's participation in the CRT conspiracy. Alioto Decl. ¶ 7. Following multiple rounds of briefing,

6   this Court adopted the Reports and Recommendations of Interim Special Master Martin Quinn[6] and

7   certified 22 statewide litigation classes of indirect purchasers of CRTs. *In Re CRT,* 2013 WL 5391159

8   (N.D. Cal. Sept. 23, 2013). The Ninth Circuit Court of Appeals denied the Defendants' petition to

9   appeal pursuant to Fed. R. Civ. P. 23(f). ECF No. 2283; Alioto Decl. ¶ 7.

10          In late 2013 and 2014, several direct action (opt-out direct purchaser) plaintiffs ("DAPs") and

11  the direct purchaser plaintiffs ("DPPs") filed suit against Mitsubishi Electric and certain subsidiaries.[7]

12  The Court granted in part and denied in part Mitsubishi Electric's motion to dismiss various DAP

13  complaints. ECF No. 2439. Mitsubishi Electric and its subsidiaries became parties to the *CRT* MDL,

14  and IPPs received the documents and data they produced. Alioto Decl. ¶ 8. The DAPs and DPPs also

15  deposed several Mitsubishi Electric witnesses. IPP Counsel assisted in preparing for many of these

16  depositions, and attended the depositions and/or reviewed the transcripts. *Id*. ¶ 9.

17          In 2014 and early 2015, IPPs and certain DAPs were preparing for trial, originally scheduled

18  to begin on March 9, 2015.[8] From April through September 2014, the parties exchanged expert reports

19  on liability and damages. These included opening, opposition, rebuttal and sur-rebuttal reports from

20  17 expert witnesses—including Mitsubishi Electric's expert. All of these experts were deposed, often

21  multiple times, regarding their reports. As noted, Dr. Netz included Mitsubishi Electric CRT data and

22  documents in her analyses of pass-through and damages to the indirect purchaser classes. Alioto Decl.

23

24  ---

25  [6] *In re Cathode Ray Tube (CRT) Antitrust Litig.,* No. 07-cv-5944-JST, MDL No. 1917, 2013 WL
    5429718 (N.D. Cal. June 20, 2013).

26  [7] *See, e.g., Interbond Corporation of America v. Technicolor SA (f/k/a Thomson SA), et al.,* Case No.
27  13-cv-05727-JST; *Crago, d/b/a Dash Computers, Inc., et al. v. Mitsubishi Electric Corp., et al.*, Case
    No. 14-cv-02058-JST.

28  [8] By Order dated February 9, 2015, the Court vacated the trial date (ECF No. 3515).

¶ 10.

On November 7, 2014, the Defendants (including Mitsubishi Electric and its subsidiaries) filed 36 motions for summary judgment. ECF No. 4071-1, Ex. 11 (list of summary judgment motions). Eleven of these were directed specifically against IPPs' claims. Mitsubishi Electric and its subsidiaries also moved for summary judgment on the DAPs' claims. ECF Nos. 3033-4, 3037. Around the same time, the parties exchanged trial exhibit lists, witness lists, deposition designations, jury instructions, and special verdict forms, and filed 64 motions *in limine* and other pretrial motions. Alioto Decl. ¶ 11.[9] In compiling the trial exhibits and designating deposition testimony, IPP Counsel assessed the evidence of Mitsubishi Electric's participation in the CRT conspiracy and prepared a trial memorandum detailing the evidence against Mitsubishi Electric. IPP Counsel also participated in mock trials during which evidence of Mitsubishi Electric's participation in the CRT conspiracy was presented to mock juries. *Id*. ¶ 12.

In early 2015, after the summary judgment motions were fully briefed, IPPs entered into their original settlements with the Philips, Panasonic, Hitachi, Toshiba, and Samsung SDI Defendants. Consequently, these defendants withdrew their summary judgment motions, motions *in limine*, and other pretrial motions relating to the IPP case pending final approval of their settlements. IPPs also entered into settlements with the Thomson/Technicolor defendants in June 2015. These original settlements were approved on July 7, 2016 (ECF No. 4712). Alioto Decl. ¶ 13.[10]

After approval of IPPs' settlements, the Court ruled on many of the Defendants' summary judgment motions as they related to the DAPs' claims against Defendants. The Court granted two Mitsubishi Electric subsidiaries' motion (ECF No. 4559), but denied Mitsubishi Electric's motion for summary judgment (ECF No. 5128). Alioto Decl. ¶ 14.

---

[9] IPPs incorporate by reference the description of the indirect purchaser litigation and the work performed by IPP Counsel contained in the Declaration of Mario N. Alioto in Support of IPPs' Motion for Attorneys' Fees and Reimbursement of Litigation Expenses, ECF No. 4071-1.

[10] On July 13, 2020, the Court finally approved IPPs' amended settlements with the Philips, Panasonic, Hitachi, Toshiba, Samsung SDI, Thomson and TDA Defendants. *See* ECF No. 5786 ("Final Approval Order"). On June 13, 2022, the United States Supreme Court denied objectors' Petition for Certiorari. ECF No. 6023.

IPPs filed their complaint against Mitsubishi Electric on July 20, 2017 alleging claims on behalf of 30 states plus the District of Columbia. *Id*. ¶ 15. With the assistance of Judge Corley, the IPPs and Mitsubishi Electric reached a settlement, and they executed their settlement agreement on October 25, 2017. *Id*. ¶ 16.

On February 6, 2020, pursuant to stipulated order (ECF No. 5679), IPPs filed their First Amended Complaint against Mitsubishi Electric. ECF No. 5687. The First Amended Complaint substituted new named plaintiffs for the States of Hawaii, New Mexico, and New Hampshire, and conformed the class definition to the Settlement Class definition agreed to by IPPs and Mitsubishi Electric Corp. in their settlement agreement. *See* ECF No. 5679. Alioto Decl. ¶ 18.[11]

## III.   SUMMARY OF SETTLEMENT TERMS

### A.   The Proposed Settlement

The Proposed Settlement resolves all claims by IPPs against Mitsubishi Electric for its alleged part in the alleged global conspiracy to fix prices of CRTs. Alioto Decl. ¶ 20.

The Proposed Settlement Class is limited to the thirty-one jurisdictions that the parties have identified as "Indirect Purchaser Jurisdictions." *See* n. 3, *supra* (listing the 31 jurisdictions).  The named plaintiffs include at least one representative from each of the Indirect Purchaser Jurisdictions. Alioto Decl. ¶ 21. The Proposed Settlement Class is defined to conform to the requirements of the applicable state laws.  The Proposed Settlement Class is defined as follows:

(a)   All persons or entities who or which indirectly purchased in an Indirect Purchaser Jurisdiction, other than Missouri, Montana, and Rhode Island, for their own use and not for resale, CRTs or CRT Products manufactured and/or sold by any Mitsubishi Electric Releasee, or any Alleged Co-Conspirator, where such purchase took place during the following time periods:

[11] IPPs and Mitsubishi Electric deferred renewing the motion for approval of this Settlement until the Prior Settlements were final because that finality resolved issues relating to this Settlement. Alioto Decl. ¶ 19.

1          1)      From March 1, 1995 through November 25, 2007 for purchases in

Arizona, Arkansas, California, District of Columbia, Florida, Iowa, Kansas, Maine,

Massachusetts, Michigan, Minnesota, Mississippi, New Hampshire, New Mexico,

New York, North Carolina, North Dakota, Oregon, South Carolina, South Dakota,

Tennessee, Utah, Vermont, West Virginia, and Wisconsin;

         2)      From June 25, 2002 through November 25, 2007 for purchases in

Hawaii;

         3)      From July 20, 2002 through November 25, 2007 for purchases in

Nebraska;

         4)      From February 4, 1999 through November 25, 2007 for purchases in

Nevada;

      (b)      All persons who or which indirectly purchased in Missouri from March 1,

1995 through November 25, 2007, for their own use and not for resale, and primarily for

personal, family or household purposes, CRTs or CRT Products manufactured and/or sold by

any Mitsubishi Electric Releasee, or any Alleged Co-Conspirator;

      (c)      All persons who or which indirectly purchased in Montana from March 1,

1995 through November 25, 2007, for their own use and not for resale, and primarily for

personal, family or household purposes, CRTs or CRT Products manufactured and/or sold by

any Mitsubishi Electric Releasee, or any Alleged Co-Conspirator;

      (d)      All natural persons who indirectly purchased in Rhode Island from March 1,

1995 through November 25, 2007, for their own use and not for resale, and primarily for

personal, family, or household purposes, CRTs or CRT Products manufactured and/or sold by

any Mitsubishi Electric Releasee, or any Alleged Co-Conspirator;

      (e)      Specifically excluded from the Settlement Class are Mitsubishi Electric

Releasees, Alleged Co-Conspirators, any federal, state or local government entities, and any

judicial officer presiding over this action and the members of his/her immediate family and

judicial staff.

1   Alioto Decl. ¶ 22 & Ex. A, Settlement Agreement ¶ 10 (as amended by Addendum).[12]

2     The Proposed Settlement Class is the same in substance to the settlement class this Court

3   approved on July 13, 2020. ECF No. 5786. It is also the same in substance to the 22 statewide

4   classes certified during the litigation. *See CRT,* 2013 WL 5391159 (N.D. Cal. Sept. 23, 2013). The

5   only difference is that this Proposed Settlement Class includes individuals and businesses who

6   purchased CRT Products in nine additional state classes that were not included in the Prior

7   Settlement class and were not previously eligible to file claims in the Prior Settlements. The nine

8   states are included in the Mitsubishi Electric Settlement Class because (1) IPPs entered into a tolling

9   agreement with Mitsubishi Electric that tolled the statute of limitations on all class member claims,

10   and (2) viable plaintiffs were willing to represent these additional state classes. Alioto Decl. ¶ 24.

11   Thus, the Court's prior analysis of Rule 23's requirements for class certification should apply

12   equally to the Proposed Settlement Class here.

13     **B.**  **Settlement Discussions**

14     The settlement negotiations with Mitsubishi Electric were hard-fought and highly adversarial.

15   The settlement was reached only after extensive investigation and discovery into the parties' claims

16   and defenses, and arm's-length negotiations between counsel for Mitsubishi Electric and IPPs. These

17   negotiations took place over many months. They involved multiple telephone conferences, an in-

18   person meeting attended by counsel for all parties and representatives of Mitsubishi Electric from the

19   United States and Japan, and an in-person mediation before Judge Corley. The final settlement was

---

22   [12] *See* Addendum to Settlement Agreement, Alioto Decl. Ex. A. The amended settlement class
23   definition is consistent with the consumer protection statutes in Missouri, Montana, and Rhode Island,
which require that the product at issue must have been purchased "primarily for personal, family, or
24   household purposes." Mo. Rev. Stat. §407.025; MCA §30-14-102, §30-14-133; R.I. Gen. Stat. §6-
13.1-5.2. *See also In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 516 F. Supp. 2d
25   1072, 1116 (N.D. Cal. 2007) (citing *ERI Max Entertainment, Inc. v. Streisand,* 690 A.2d 1351, 1354
(R.I. 1997)) ("the Rhode Island Supreme Court has construed the UTPCPA to require that only natural
26   persons are permitted to bring private rights of action under the statute, which natural persons must
have 'purchase[d] or lease[d] goods or services primarily for personal, family, or household
27   purposes.'"). The amendments are also consistent with the allegations of the original Complaint (17-
cv-04067-JST, ECF No. 1), ¶¶ 277-278, 285. Alioto Decl. ¶ 23.
28

the product of this mediation before Judge Corley. *Id.* ¶ 25. The parties initially executed the Settlement Agreement on October 25, 2017. *Id.* ¶ 16. They later modified the settlement class to describe the state classes more accurately, as described in n. 12, *supra*.

## C.   Consideration

### 1.   Cash

Under the Proposed Settlement, Mitsubishi Electric has paid Thirty-Three Million Dollars ($33,000,000) in cash (the Settlement Amount) to settle all indirect purchaser claims against the Mitsubishi Electric Releasees (defined in the Settlement Agreement). The Settlement Amount has been deposited into an escrow account and has been invested in United States Treasury bills and other instruments insured or guaranteed by the full faith and credit of the United States. If the Proposed Settlement is finally approved, any interest earned thereon (together with the Settlement Amount, net of taxes and escrow expenses) will become part of the Settlement Fund. Alioto Decl. ¶ 26, Ex. A ¶¶ 25-26.

### 2.   Cooperation

In addition to monetary consideration, the Proposed Settlement contains cooperation provisions requiring Mitsubishi Electric to authenticate documents and data used in the prosecution of any continuing litigation. Alioto Decl., Ex. A ¶ 31. The cooperation provisions are material and valuable terms of the Settlement, which could be triggered in the continued litigation against the Irico defendants. Alioto Decl. ¶ 27.

## D.   Release

If the Proposed Settlement becomes final, IPPs and class members will release all federal and state-law claims against Mitsubishi Electric "concerning the manufacture, supply, distribution, sales or pricing of CRTs or CRT Products . . . ." The release does not include claims for product defect, personal injury or breach of contract not related to the subject matter of the Complaint. In addition, the Proposed Settlement does not release claims arising under the laws of any jurisdiction not included in the Indirect Purchaser Jurisdictions. Alioto Decl. ¶ 28, Ex. A ¶¶ 22-23.

1

## IV.   **ARGUMENT**

2

### A.   **Legal Standards**

3

Rule 23(e) was amended in December 2018 to codify the factors to consider for approval of a

4

class action settlement. The Rule instructs a court to determine initially whether "it will likely be able

5

to" (i) approve the settlement as fair, reasonable and adequate; and (ii) "certify the class for purposes

6

of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B). Then, after potential class members are

7

given notice and an opportunity to object to the settlement or opt out of its coverage, the court must

8

hold a hearing on whether to approve the settlement and certify the settlement class. *See* Fed. R. Civ.

9

P. 23(e)(2), (4), (5). In deciding whether to approve a settlement, courts must consider whether:

10

(A) the class representatives and class counsel have adequately represented the class;

11

(B) the proposal was negotiated at arm's length;

12

(C) the relief provided for the class is adequate, taking into account:

13

(i) the costs, risks, and delay of trial and appeal;

14

(ii) the effectiveness of any proposed method of distributing relief to the class,

15

including the method of processing class member claims;

16

(iii) the terms of any proposed award of attorney's fees, including timing of

17

payment;

18

(iv) any agreement required to be identified under Rule 23(e)(3); and

19

(D) the proposal treats class members equitably relative to each other.  Fed. R. Civ. P. 23(e)(2).

20

Separately, this District's Procedural Guidance for Class Action Settlements ("Procedural

21

Guidance") requires class counsel to submit specific information regarding: (i) differences between

22

the settlement class and the class asserted in the complaint, and between claims to be released and the

23

claims alleged in the operative complaint; (ii) the anticipated class recovery under the settlement and

24

the potential class recovery if plaintiffs were to fully prevail; (iii) the proposed allocation plan; (iv)

25

expected participation by class members in the settlement; (v) the settlement administrator, the

26

selection process, and the anticipated administrative costs; (vi) the proposed notice, including

27

deadlines to opt out of or object to the settlements; (vii) attorneys' fees that counsel intend to request;

28

10

INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT WITH MITSUBISHI ELECTRIC CORPORATION
Case No. 17-cv-04067-JST; Master File No. 07-cv-05944-JST

1    (viii) incentive awards that the parties intend to request; (ix) the allocation of any unused settlement

2    funds, including a reversion, if any; (x) notice of and compliance with CAFA; and (xi) past

3    distributions in comparable class settlements.

4         The Ninth Circuit has recognized "an overriding public interest in settling litigation . . .

5    particularly . . . in class action suits." *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir.

6    1976). *See also In re Syncor ERISA Litig.,* 516 F.3d 1095, 1101 (9th Cir. 2008) (citing

7    *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992)) ("There is a strong judicial

8    policy that favors settlements, particularly where complex class action litigation is concerned.").

9    Courts have recognized that compromise is favored for antitrust litigation, which is notoriously

10   difficult and unpredictable.[13]

11        The approval of a proposed settlement of a class action is a matter of discretion for the trial

12   court. *See In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.,* 746 F. App'x

13   655, 657 (9th Cir. 2018) ("We review for abuse of discretion the district court's approval of the

14   settlement . . . ."); *Churchill Vill. L.L.C. v. Gen. Elec.,* 361 F.3d 566, 575 (9th Cir. 2004). Settlements

15   of disputed claims are encouraged and a settlement approval hearing "is not to be turned into a trial or

16   rehearsal for trial on the merits."[14] Further, courts must give "proper deference" to the settlement

17   agreement, because "the court's intrusion upon what is otherwise a private consensual agreement

18   negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned

19   judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the

20   negotiating parties, and the settlement, taken as a whole, is fair, reasonable and adequate to all

21   concerned." *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1027 (9th Cir. 1998) ("Settlement is the

22

23   _____

24   [13] *See, e.g., In re National Collegiate Athletic Association Athletic Grant-in-Aid Cap Antitrust Litig.*,
     No. 4:14-md-2541-CW, 2017 WL 6040065, at *3 (N.D. Cal. Dec. 6, 2017) (quoting *In re Optical*

25   *Disk Drive Prods. Antitrust Litig.*, No. 3:10-md-2143 RS, 2016 WL 7364803, at *4 (N.D. Cal. Dec.
     19, 2016)) ("An 'antitrust class action is arguably the most complex action to prosecute. The legal

26   and factual issues involved are always numerous and uncertain in outcome.'").

27   [14] *Officers for Justice v. Civil Serv. Comm'n of City and County of San Francisco,* 688 F.2d 615, 625
     (9th Cir. 1982), *cert. denied sub nom. Byrd v. Civil Serv. Comm'n of City and County of San*

28   *Francisco,* 459 U.S. 1217 (1983).

INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT WITH MITSUBISHI ELECTRIC CORPORATION
Case No. 17-cv-04067-JST; Master File No. 07-cv-05944-JST

1  offspring of compromise; the question we address is not whether the final product could be prettier,

2  smarter or snazzier, but whether it is fair, adequate and free from collusion.").

3  **B.   The Court Should Grant Preliminary Approval And Direct Notice To The Class**

4  Under Rule 23(e)(2), the Court at the preliminary approval stage is to decide whether it will

5  likely be able to approval the settlement and certify the settlement class. As demonstrated below, all

6  of the Rule 23(e) factors heavily favor approval of the Proposed Settlement. The Proposed

7  Settlement satisfies the requirements of Rule 23 as well as the Northern District of California's

8  guidelines on the topic. Accordingly, the Court will likely be able to approve the Proposed

9  Settlement and certify the settlement class.

10  **1.   The Class Has Been Adequately Represented**

11  Rule 23(e)(2)(A), in conjunction with subsection (B), requires the court to "identify matters

12  that might be described as 'procedural' concerns, looking to the conduct of the litigation and of the

13  negotiations leading up to the proposed settlement." Fed. R. Civ. P. 23(e)(2) Advisory Comm. Notes,

14  Paragraphs (A) and (B) (2018). As an "example, the nature and amount of discovery in this or other

15  cases, or the actual outcomes of other cases, may indicate whether counsel negotiating on behalf of

16  the class had an adequate information base." *Id.*

17  Here, the class representatives and counsel have vigorously represented the interests of class

18  members for almost fifteen years, including extensive pre-filing investigation; class certification; full

19  discovery; the exchange of expert reports on liability and damages; the filing of oppositions to defense

20  motions for summary judgment; other rigorous and fact-intensive motions; and full case development

21  for trial. Alioto Decl. ¶¶ 4-18, 29-33.[15] IPPs reviewed and analyzed millions of documents produced

22  by Mitsubishi Electric, the other Defendants, and third parties; took (or participated in taking) over

23  100 depositions of defense witnesses, including Mitsubishi Electric witnesses; and conducted

24  extensive economic analyses of the data produced by Mitsubishi Electric, the other Defendants, and

25  third parties. *Id.* ¶ 31. IPPs also participated in three mock trials and observed 11 mock juries. IPPs

26

27  [15] *See also* ECF No. 4071-1 (Alioto Decl. in support of September 23, 2015 motion for attorneys'
    fees and reimbursement of litigation expenses).

28

INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT WITH MITSUBISHI ELECTRIC CORPORATION
Case No. 17-cv-04067-JST; Master File No. 07-cv-05944-JST

were fully prepared to try this case to a jury. *Id*. ¶ 32. Thus, IPPs negotiated the Proposed Settlement with detailed knowledge of the factual and legal issues underlying the parties' claims and defenses, and their strengths and weaknesses. *Id*. ¶ 33.

In its recent Order Granting Final Approval of the amendments to the Prior Settlements, which was affirmed on appeal, this Court reaffirmed its findings that: (1) "IPPs and Class Counsel have vigorously prosecuted this action . . . through extensive discovery[,] including the "review of millions of documents and the taking of hundreds of depositions, all conducted over eight-plus years"; and (2) IPP Lead Counsel has 'invested considerable time in this case and has substantial experience with class action litigation." ECF No. 5786 at 17. The Court concluded, therefore, that "counsel 'possessed sufficient information to make an informed decision about settlement.'" *Id*. (quoting *Hefler v. Wells Fargo & Co.*, No. 16-cv-05479-JST, 2018 WL 6619983, at *6 (N.D. Cal. Dec. 18, 2018)). These findings apply with equal force to the Proposed Settlement.

In addition, the $33 million, all-cash settlement is consistent with the amounts obtained in previously approved settlements with the other, similarly-situated Japanese defendants. *See* Final Approval Order (ECF No. 5786), 5587-1 at 25-26 (amended Toshiba Settlement for approx. $28.4 million), 5587-1 at 19-20 (amended Hitachi Settlement for approx. $26.5 million). Further, the Mitsubishi Electric settlement amount is 5.6% of the total $580,750,000 Settlement Fund, which is roughly proportional to Mitsubishi Electric's less-than 5% market share. Alioto Decl. ¶ 34. As discussed below, $33 million is a good recovery in light of the expense, risk, and delay of continued litigation and trial.

## 2. The Proposed Settlement Is The Product Of Arm's Length Negotiations

Rule 23(e)(2)(B) instructs courts to consider whether "the proposal was negotiated at arm's length." A class action settlement is entitled to an initial presumption of fairness where it is the result of arm's-length negotiations among experienced counsel. *See, e.g., Viceral v. Mistras Group, Inc.*, No. 15-cv-02198-EMC, 2016 WL 5907869, at *8 (N.D. Cal. Oct. 11, 2016). Further, "the involvement of a neutral or court-affiliated mediator or facilitator in those negotiations may bear on whether they were conducted in a manner that would protect and further the class interests." Fed. R. Civ. P. 23(e)(2)

1   Advisory Comm. Notes, Paragraph (B) (2018).

2          Here, the Proposed Settlement was reached after months of hard-fought and highly adversarial

3   negotiations, including multiple telephone conferences, an in-person meeting attended by counsel for

4   all parties and representatives of Mitsubishi Electric from the United States and Japan, and an in-

5   person mediation before Judge Corley. A settlement in principle was reached during the mediation

6   before Judge Corley and indeed, was the result of a mediator's proposal. Alioto Decl. ¶ 25. These facts

7   demonstrate that the settlement was not the product of collusion. *See* Final Approval Order (ECF No.

8   5786) at 18 (mediation sessions supervised by a former judge are an indication of arm's length

9   negotiations).

10          As a final procedural consideration, courts should consider the "treatment of any award of

11   attorney's fees, with respect to both the manner of negotiating the fee award and its terms."[16] Here,

12   while the Proposed Settlement provides that Mitsubishi Electric will not object to attorneys' fees of

13   up to one-third of the Settlement Fund, there is no agreement on the amount of attorneys' fees Class

14   Counsel will receive.[17] Like the Prior Settlements, any award of attorneys' fees remains within the

15   discretion of the Court, and will be awarded from the common fund. *See* ECF No. 5786 at 19

16   ("Although the agreements contain a "clear sailing" provision, the Court finds no cause for concern

17   because Class Counsel's fee will be awarded from the same common fund as the recovery to the

18   class.") (citing *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 961 n.5 (9th Cir. 2009)).

19                    **3.      The Proposed Settlement Provides Substantial Relief For The Class**

20          Rule 23(e)(2)(C) instructs courts to consider whether "the relief provided for the class is

21   adequate" considering (i) the costs, risks, and delay of trial and appeal; (ii) the proposed distribution

22   plan; (iii) the terms of any proposed award of attorneys' fees; and (iv) any agreement required to be

23   identified under Rule 23(e)(3). The Proposed Settlement is fair when evaluated against these standards.

24   *//*

25

26

27   [16] *See* Fed. R. Civ. P. 23(e)(2) Advisory Comm. Notes, Paragraph (B) (2018).

28   [17] Alioto Decl. Ex. A, ¶ 34.

1

2

### a.    The Costs, Risks, And Delay Of Trial And Appeal Were Significant

3      The first factor—"the costs, risks, and delay of trial and appeal"[18]—is analogous to the Ninth

4  Circuit's traditional consideration of the risk, expense, complexity, and likely duration of further

5  litigation, while also examining the strength of plaintiffs' case, the risk of maintaining class action

6  status throughout the trial, and the amount offered in settlement.[19]

7      First, as noted, the $33 million settlement amount is consistent with the IPP settlements this

8  Court has approved for the other similarly-situated Japanese defendants. Indeed, Mitsubishi Electric

9  had a lesser role in the conspiracy than other Japanese defendants and a smaller market share. In

10  addition, Mitsubishi Electric has other colorable defenses, discussed in detail below. Yet, it is paying

11  slightly more to settle the claims against it than did Toshiba (approx. $28.4 million) or Hitachi (approx.

12  $26.5 million) (although this Settlement Class includes nine additional states). Alioto Decl. ¶ 34.

13      Second, when combined with the Prior Settlement amounts, the total recovery for indirect

14  purchasers is, to date, $580,750,000. In the context of indirect purchaser price-fixing cases, this total

15  recovery is significant. Recent litigation on behalf of indirect purchasers of Lithium Ion Batteries and

16  Optical Disk Drives garnered $106,950,000, and $205,000,000 respectively.[20] The indirect *LCD* case

17  is one of the rare cases to recover more than this case. However, the LCD conspiracy started more

18  recently (*i.e.*, 2001) and fewer producers had exited the industry than in this case. The *LCD* conspiracy

19  was therefore easier to prove because evidence and witnesses were available. In addition, most of the

20  *LCD* defendants had pled guilty to Sherman Act violations and admitted that their conduct had an

21  impact in the United States, leading to criminal fines totaling $894 million. Here, the conspiracy period

22  started over 20 years ago (*i.e.*, 1995), many of the alleged participants were bankrupt or no longer

23  existed, and employees had moved on, retired, or could not remember relevant facts; only one

24

25  [18] Fed. R. Civ. P. 23(e)(2)(C)(i).

26  [19] *See Churchill Vill.*, 361 F.3d at 575 (listing factors).

27  [20] *See In re Lithium Ion Batteries Antitrust Litig.,* 4:13-md-02420-YGR (N.D. Cal.), ECF No. 2566
   at 2; *In re Optical Disk Drive Products Antitrust Litig.,* 3:10-md-02143-RS (N.D. Cal.), ECF No.

28  2852 at 7.

INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT WITH MITSUBISHI ELECTRIC CORPORATION
Case No. 17-cv-04067-JST; Master File No. 07-cv-05944-JST

1   defendant pled guilty to fixing prices of one type of CRT, and only for sales to certain customers; and

2   the DOJ's single criminal fine of $32 million amounted to less than 3.5 percent of the fines assessed

3   in connection with LCD conspiracy. *See* Alioto Decl. ¶ 35.

4          Third, the value of the Proposed Settlement must also be assessed in light of the relevant

5   damage studies of IPPs' and Defendants' experts in the MDL. IPPs' expert, Dr. Netz, estimated single

6   damages to members of the 22 state classes to be $2.78 billion. *Id*. ¶ 36. For the purposes of assessing

7   the Proposed Settlement, this estimate must be adjusted to account for the nine additional states

8   included in the Proposed Settlement Class. Using the same general data and methodology, estimated

9   single damages to class members in the 30 states and the District of Columbia would be $3.36 billion.

10  *Id*. ¶ 37. However, Mitsubishi Electric would have strongly contested IPPs' damages claims.[21]

11         Using the $3.36 billion estimate, the damages attributable to Mitsubishi Electric would be

12  approximately $168 million (5% of $3.36 billion). Thus, the $33 million settlement is approximately

13  19.6% of the damages attributable to Mitsubishi Electric. *Id*. ¶ 39. Such a result represents a reasonable

14  compromise of the parties' positions, and is well within the range of possible final approval. *See CRT*,

15  2016 WL 3648478, at *6-7 (finding that 20% of single damages was "without question a good

16  recovery and firmly in line with the recovery in other cases"). When compared to other *indirect*

17  purchaser cases (some of which never make it past class certification[22]), this is an excellent result.

18         Fourth, the risks at trial (and on appeal) for the IPPs would be significant and support the

19  reasonableness of the Proposed Settlement. For example, Mitsubishi Electric would contend, and a

---

[21] The other Defendants' experts opined that indirect purchasers suffered little or no damages as a result of the alleged CRT conspiracy. They maintained that the alleged conspiracy was ineffective and unsuccessful, and that IPPs could not "link" any allegedly agreed-upon CRT price increases to allegedly increased prices of CRT Products purchased by class members. One defense expert estimated the total class damages to be approximately $61 million. Other defense experts maintained that the total class damages were zero.  *See* Alioto Decl. ¶ 38.

[22] *See, e.g.*, *In re Lithium Ion Batteries Antitrust Litig.*, No. 13-MD-2420 YGR, 2017 WL 1391491, at *1 (N.D. Cal. Apr. 12, 2017) (denying class certification to indirect purchasers of lithium ion batteries in part because they were unable to prove impact (*i.e.*, pass-through of the overcharge) on a class-wide basis); *In re Flash Memory Antitrust Litig.*, No. C 07-0086 SBA, 2010 WL 2332081, at *19 (N.D. Cal. June 9, 2010) (same); *In re Graphics Processing Units (GPU) Antitrust Litig.*, 253 F.R.D. 478, 507 (N.D. Cal. 2008) (same).

1    jury could agree, that it did not participate in the alleged conspiracy. Among other things, Mitsubishi

2    Electric would likely argue that it did not attend a single "glass" meeting; that it ceased manufacture

3    of CPTs in 1998 and CDTs in 2004; that most of the CDTs it manufactured utilized a different

4    technology and were marketed to different customers than those of the other alleged conspirators; that

5    its market share was very small (less than 5%); and, as a minor player in the market, it had little

6    incentive to join the conspiracy. The Court's prior ruling precluding use of Samsung SDI's litigation

7    statements against Mitsubishi Electric would have made IPPs' case more difficult to prove. ECF No.

8    4982. Alioto Decl. ¶ 40.

9         Mitsubishi Electric would also likely assert that even if it had participated in the conspiracy, it

10   withdrew from the conspiracy when it stopped manufacturing CRTs in 2004. *See* ECF No. 4786

11   (granting summary judgment motion of certain Philips defendants on withdrawal grounds). Mitsubishi

12   Electric would likely also contest IPPs' evidence of antitrust standing, pass-through of the overcharge

13   to indirect purchasers, and class certification. *See, e.g.,* ECF Nos. 3050, 3585 (motions filed by the

14   other Defendants). Alioto Decl. ¶ 41. Even assuming a favorable jury verdict at trial, IPPs could prevail

15   on liability and still obtain no net recovery given the large settlement offset that would be applied as

16   a result of the other settlements.[23] While IPPs remain confident in the strength of the evidence

17   supporting their claims, a successful jury verdict remained a risky proposition. *See In re NASDAQ*,

18   187 F.R.D. 465, 475-76 (S.D.N.Y. 1998) ("[T]he history of antitrust litigation is replete with cases in

19   which antitrust plaintiffs succeeded at trial on liability, but recovered no damages, or only negligible

20   damages, at trial, or on appeal.").

21        Moreover, any jury award would have to withstand appellate review. In this MDL, the

22   Defendants raised substantial arguments against the Court's class certification decision. *See* ECF No.

23

24   ─────────────────────

     [23] In *LCD*, for example, the jury awarded the direct purchaser class plaintiffs $87 million in damages

25   against Toshiba, but they recovered nothing because the award was offset by their $443 million

     obtained in settlements. Likewise, Best Buy recovered nothing at trial against Toshiba and Hannstar.

26   The jury found that Toshiba did not participate in the conspiracy and awarded only $7.5 million against

     Hannstar. Once Best Buy's settlements with the other defendants in *LCD* had been offset, Hannstar

27   owed nothing to Best Buy. Likewise here, if IPPs had gone to trial against Mitsubishi Electric, there

28   would have been an offset of $547,750,000. Alioto Decl. ¶ 42.

─────────────────────

1    2012 (Petition of Defendants for Permission to Appeal).[24] The Ninth Circuit rejected the Petition for

2    Interlocutory review of this order (ECF No. 2283), but that rejection provides no assurance that the

3    arguments would have carried the day on appeal at the end of the case. Class certification jurisprudence

4    has received heightened scrutiny from appellate courts in the wake of the Supreme Court's decisions

5    in *Wal-Mart Stores Inc. v. Dukes,* 564 U.S. 338 (2011) and *Comcast Corp. v. Behrend,* 569 U.S. 27

6    (2013).

7            Issues raised by the Foreign Trade Antitrust Improvements Act (15 U.S.C. §6a) ("FTAIA")

8    also posed significant risk, both at trial and on appeal. The statute has recently been the subject of

9    several major appellate decisions from the Second, Third, Seventh and Ninth Circuits,[25] and the other

10   Defendants attempted to dispose of many IPP claims on FTAIA grounds at summary judgment. *See*

11   ECF Nos. 3006 and 3008. Thus, even though this Court denied the other Defendants' motions for

12   summary judgment on FTAIA grounds, the FTAIA would still have been a major issue at trial, and

13   there remains substantial uncertainty surrounding any appellate review of a district court's FTAIA

14   analysis, no matter how careful or well-supported it may be.

15           Finally, even if IPPs were to win at every subsequent stage, continued litigation would delay

16   recovery for years, in a case where the damage period already extends back twenty-five years.

17   Settlement eliminates the risk of litigation, providing substantial and certain relief to the Settlement

18   Class now. *In re AT&T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 340, 347 (N.D. Ill.

19   2010) ("[A] future victory is not as valuable as a present victory."). In sum, the all-cash recovery of

20   $33,000,000 is a substantial result that avoids the meaningful risks IPPs faced at trial and on appeal.

21           **b.    The Plan Of Distribution Is Fair, Adequate And Reasonable**

22           Rule 23(e)(2)(C) also instructs courts to take into account the "effectiveness of any proposed

23   method of distributing relief to the class, including the method of processing class-member claims."

24

25   [24] The Toshiba Defendants also moved to decertify the IPP classes in early 2015. *See* ECF No. 3585.

26   [25] *See Lotes Co., Ltd. v. Hon Hai Precision Industry Co.,* 753 F.3d 395, 412-13 (2d Cir. 2014)*;
     Animal Sci. Prods. Inc. v. China Minmetals Corp.,* 654 F.3d 462 (3d Cir. 2011); *Minn-Chem Inc. v.*

27   *Agrium Inc.,* 683 F.3d 845 (7th Cir. 2012); *Motorola Mobility LLC v. AU Optronics Corp.,* 775 F.3d
     816 (7th Cir. 2015); and *U.S. v. Hsiung*, 778 F.3d 738 (9th Cir. 2015).

28

1    "Approval of a plan of allocation of settlement proceeds in a class action . . . is governed by the same

2    standards of review applicable to approval of the settlement as a whole: the plan must be fair,

3    reasonable and adequate." *Hefler v. Wells Fargo & Company*, 2018 WL 4207245, at *12 (citation

4    omitted)); *see also CRT*, 2016 WL 3648478, at *11. A plan of distribution that compensates class

5    members based on the type and extent of their injuries is generally considered reasonable. *See id.*

6         This Court has already approved a weighted pro-rata distribution to claimants for the Prior

7    Settlements.[26]  IPPs propose to use the same weighted pro rata distribution for the Mitsubishi Electric

8    Settlement. Settlement Class members who file valid claims will be eligible to receive their pro rata

9    share of the net Mitsubishi Electric settlement fund based on the total number of valid claims filed,

10   and the number and type of CRT Products each claimant purchased.[27] Class members who filed valid

11   claims against the Prior Settlements will automatically receive their pro-rata share of the Mitsubishi

12   Electric settlement without having to re-file their claim.[28] All other class members who submit

13   qualified claim forms will be entitled to recover. Alioto Decl. ¶ 44.

14        The Settlement Administrator received a total of 156,467 claims against the Prior Settlements

15   through May 5, 2020 (the "Cutoff Date"). After reviewing and auditing the claims received, the

16   Settlement Administrator ultimately approved a total of 143,373 valid claims for purchases of

17   95,277,199 CRT Products, representing 273,146,112 CRT Weighted Units. *See* ECF No. 6031.

18        The Court found that the claims rate for the Prior Settlements was "strong," and rejected

19   objections that the claims rate was too low. *CRT,* 2016 WL 3648478, at *9, 31-32. It concluded that

20   the reason the claims rate is somewhat lower than other indirect purchaser cases is because "the claims

---

[26] ECF No. 5786 at 20 (adopting reasoning from original order approving the Prior Settlements).

[27] As with the Prior Settlements, claims for Standard CRT Televisions (televisions with a screen size of less than 30 inches) will receive a weight of 1; Large CRT Televisions (televisions with a screen size of 30 inches or larger) will receive a weight of 4.3; and CRT Computer Monitors will receive a weight of 3. *See CRT*, 2016 WL 3648478, at * 18.

[28] All claims processed and approved as part of the Prior Settlements, including late claims, will be considered valid, timely claims for the Mitsubishi Electric Settlement and therefore, eligible to automatically receive a full pro-rata share of the Mitsubishi Electric Settlement without having to re-file their claim. Alioto Decl. ¶ 44.

period in this case stretches back 20 years and the product is obsolete." *Id.* at 32 ("The staleness of the claims at issue here exacerbates this problem.").

Based on historical claims data, IPPs anticipate that another 75,000 first-time claims will be filed against the Mitsubishi Electric settlement. Fisher Decl. ¶ 34. The majority of these new claims will likely come from class members who purchased CRT Products in the nine states that were not included in the settlement class for the Prior Settlements and were not eligible to file claims against the Prior Settlements. Class members who previously filed claims against the Prior Settlements may amend their claim for the Mitsubishi Electric Settlement to include CRTs purchased in the nine states. Because the claims period for the Prior Settlements is now closed, all such new claims will be paid solely from the Mitsubishi Electric settlement fund. Alioto Decl. ¶ 45.

It is expected that there will be sufficient funds to distribute a minimum payment of $10 to valid claimants. As this Court found in approving the minimum payment in connection with the Prior Settlements, it "ensures there is sufficient value to motivate every injured plaintiff to file a claim, even if he or she purchased a small number of CRT products." 2016 WL 3648478 at *26. The minimum payment amount of $10 represents IPPs' reasonable estimate at this time; the actual amount cannot be determined until all claims have been processed. The Court's approval for the minimum payment will be requested when the data from the actual claims process are available. Alioto Decl. ¶ 46.

Additionally, as before, subject to the minimum payment, a maximum payment amount of three times the estimated money damages per claimant will apply, although IPPs do not anticipate this will be an issue given the number of existing and anticipated claims. Upon final approval, none of the Settlement Fund will revert to Mitsubishi Electric. All Settlement Class members who seek payment from the Settlement Fund, and who have not already filed a valid claim in the Prior Settlements or who wish to file claims for additional CRT purchases, will be required to complete a claim form containing: (i) the class member's contact information; (ii) verification of membership in one of the Statewide Damages Classes; (iii) the number and type of each CRT Product purchased during the class period; and (iv) an attestation under penalty of perjury that the information provided is accurate. Alioto Decl. ¶ 47; Fisher Decl. ¶ 5 & Ex. E (proposed claim form).

1  All claimants will also be subject to auditing and requests for documentation of purchases by

2  the Settlement Administrator. The Settlement Administrator will use commercially reasonable efforts

3  to identify and investigate claims. Alioto Decl. ¶ 48.

4            **c.     IPP Counsel Will Seek Reasonable Attorneys' Fees**

5  A third factor to be considered under Rule 23(e)(2)(C) is "the terms of any proposed award of

6  attorney's fees, including timing of payment." Fed. R. Civ. P. 23(e)(2)(C)(iii); *see also* Procedural

7  Guidance, Preliminary Approval, subsection (6).

8  IPPs intend to request an award of one-third of the Mitsubishi Electric Settlement Fund in

9  attorneys' fees, or $11,000,000, plus interest. IPPs will file their motion with the Court and post it to

10  the website, www.CRTclaims.com, at least 14 days in advance of the deadline for objections to give

11  class members an opportunity to review the applications and either support or file objections to them.

12  *See In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 993-94 (9th Cir. 2010); Alioto Decl. ¶

13  54. The motion will be noticed for the same date as the final approval hearing.[29]

14  IPP Counsels' lodestar for work performed in prosecuting the case against Mitsubishi Electric

15  since June 2015 (the cut off for IPPs' first fee motion) is $2,433,461.66 (3287.1 hours).[30] However,

16  as indicated above, the work performed by IPPs during the almost eight years of litigation against the

17  other defendants (when Mitsubishi Electric was named as a co-conspirator, but not as a defendant)

18  was crucial to reaching the settlement with Mitsubishi Electric. Alioto Decl. ¶ 55. IPPs' prior lodestar

19  should therefore be included in the analysis of IPPs' requested fee award, and IPPs' requested fee

20  award should be viewed against the total settlements achieved in this case. *See Lobatz v. U.S. West*

21  *Cellular of California, Inc.,* 222 F.3d 1142, 1149-50 (9th Cir. 2000) (affirming fee award and

22   

23  [29] *See* Procedural Guidance, Final Approval (2) ("Regardless of when they are filed, requests for attorneys' fees must be noticed for the same date as the final approval hearing.").

24  [30] Alioto Decl. ¶ 55. This lodestar is calculated using IPP Counsel's current rates and includes all time

25  submitted to IPP Lead Counsel. This lodestar does not include the time spent by IPP Counsel litigating the objections lodged by certain putative class members to the Prior Settlements and the resulting

26  appeals, or the negotiation of the amendments to the Prior Settlements and subsequent briefing. Nor does it include any of the time spent litigating against the Irico defendants. The time spent by IPP

27  Counsel on these matters over the last five years is significant. If included, this time would substantially increase the lodestar and decrease the multiplier. *Id.*

28   

multiplier based on entire lodestar in case involving successive settlements against different defendants); *In re Se. Milk Antitrust Litig.,* No. 2:07-CV 208, 2013 WL 2155387, at *6 (E.D. Tenn. May 17, 2013) (same).

In connection with the Prior Settlements, the Court (with the assistance of Special Master Martin Quinn) reviewed and analyzed IPP Counsels' lodestar and the work they performed on behalf of indirect purchasers of CRTs, ultimately approving an adjusted lodestar of $81,067,569 for work performed up to September 2015. *See* ECF No. 5786 at 23-24. Together with the additional $2,431,481.66 in lodestar expended in prosecuting the case against Mitsubishi Electric, IPP Counsels' total lodestar is $83,499,050.66. Together with the $129,606,250 in attorneys' fees already awarded to IPP Counsel, IPPs' proposed $11,000,000 fee award would result in a total fee of $140,606,250, which constitutes 24.2% of the $580,750,000 total settlement fund, and an overall multiplier of 1.68.

As this Court recently noted, the Ninth Circuit has set the "benchmark for an attorneys' fee award in a successful class action [at] twenty-five percent of the entire common fund." ECF No. 5786 at 22-23 (quoting *Williams v. MGM-Pathe Commc'ns Co.*, 129 F.3d 1026, 1027 (9th Cir. 1997)). The Court also found that a multiplier of 1.6 is "well within the range of acceptable multipliers." *Id.* at 24. Thus, IPPs' requested fee would still be below the Ninth Circuit's 25% benchmark and would only increase the already-approved multiplier by less than 0.1 to 1.68—still well within the range of acceptable multipliers. *See, e.g., In re Hyundai & Kia Fuel Econ. Litig.,* 926 F.3d 539, 572 (9th Cir. 2019) (affirming "modest" multipliers of 1.22 and 1.5521 and citing cases affirming multipliers up to 3.65).

### d.   Other Related Agreements

Pursuant to Fed. R. Civ. P. 23(e)(2)(C)(iv), and as previously disclosed to the Court, in March and April 2018, four groups of objectors voluntarily dismissed their appeals of the original settlements in exchange for monetary consideration to be paid by IPP Counsel from their attorney fee award. *See* ECF Nos. 5587 at 9; 6001 at 5, n.5.  These agreements were entered into before the enactment of Rule 23(e)(2)(C)(iv), Rule 23(e)(5)(B), and the other amendments to Rule 23(e)(5) in December 2018. Nevertheless, Rule 23(e)(5)(B) now requires court approval of any payment to an objector "in

1  connection with: (i) forgoing or withdrawing an objection, or (ii) forgoing, dismissing, or abandoning

2  an appeal from a judgment approving the proposal."

3  In addition to providing that the objectors would dismiss their appeals of this Court's approval

4  of the Prior Settlements, the agreements provide that the objectors would not object to this Settlement.

5  No payment is due to those objectors until the Prior Settlements and all fee proceedings relating to the

6  Prior Settlements are final, at which time Lead Counsel intends to present these settlements to the

7  Court. Alioto Decl. ¶¶ 62-63, Exs. B - E (copies of objector settlement agreements).

8  **4.     The Proposed Settlement Treats Class Members Equitably**

9  Rule 23(e)(2)(D) requires that the Court consider whether the Proposed Settlement "treats class

10  members equitably relative to each other."  Matters of concern for the Court may include "whether the

11  apportionment of relief among class members takes appropriate account of differences among their

12  claims."  Fed. R. Civ. P. 23(e)(2) 2018 Advisory Committee Notes.

13  Here, the Proposed Settlement provides for a lump-sum cash payment to the Settlement Class.

14  Alioto Decl., Ex A, ¶ 25. The Proposed Settlement's terms do not distinguish between class members

15  in any way and treat all class members equally. As discussed, all class members are entitled to file

16  claims to receive their pro-rata share of the Settlement, and IPPs propose to distribute the settlement

17  funds to class members according to the same weighted pro-rata distribution that this Court already

18  examined and approved as fair, adequate and reasonable in connection with the Prior Settlements. As

19  this Court concluded, "[i]t is reasonable to allocate the settlement funds to class members based on . .

20  . the strength of their claims on the merits." ECF No. 5786 at 21 (quoting *In re Omnivision Techs.,*

21  *Inc.*, No. C-04-2297 SC, 2007 WL 4293467, at *7 (N.D. Cal. Dec. 6, 2007)).

22  In addition, the claims of class representatives will be treated no differently than the claims of

23  absent class members. While IPPs will seek modest incentive award for the class representatives, any

24  award will be within the Court's discretion.

25  **5.     The Proposed Settlement Satisfies The District's Procedural Guidance**

26  In accordance with the Procedural Guidance, IPPs have provided above relevant information

27  regarding (i) the anticipated class recovery under the Proposed Settlement and the potential class

28

23

1    recovery if IPPs were to fully prevail on their claims against Mitsubishi Electric, (ii) the plan of

2    distribution, (iii) expected participation by class members in the Proposed Settlement, and (iv)

3    attorneys' fees that IPP Counsel intend to request. The proposed notice and notice program are detailed

4    in Section V below. The remaining provisions of the Procedural Guidance are addressed here.

5                    **a.       The Litigation And Settlement Class**

6            As explained above, IPPs named Mitsubishi Electric as a co-conspirator (not as a defendant)

7    during the litigation against the other defendants. *See* ECF No. 1526 ¶ 109. In September 2017, IPPs

8    named Mitsubishi Electric as a defendant in a new complaint.[31] Unlike the earlier IPP complaints, the

9    complaint against Mitsubishi Electric did not allege a nationwide class, but did allege indirect

10   purchaser claims under the laws of 30 states and the District of Columbia on behalf of 31 statewide

11   classes—nine more than were certified during the litigation against the other defendants. Alioto Decl.

12   ¶ 14.[32]

13          During the settlement negotiations with Mitsubishi Electric, IPPs narrowed the Proposed

14   Settlement Class to limit the Missouri, Montana, and Rhode Island classes to purchasers of CRT

15   Products "primarily for personal, family, or household purposes," in conformance with the consumer

16   protection statutes of those states. *See* Mo. Rev. Stat. §407.025; MCA §30-14-102, §30-14-133; R.I.

17   Gen. Stat. §6-13.1-5.2. *See also DRAM*, 516 F. Supp. 2d at 1116. These amendments are also

18   consistent with the Complaint, which alleged claims on behalf of those who purchased "primarily for

19   personal, family or household purposes." 17-cv-04067-JST, ECF No. 1, ¶¶ 277-278, 285.

20          Finally, IPPs and Mitsubishi Electric also agreed to adjust the wording of the Settlement Class

21   definition to clarify that the CRT Product must have been *purchased in* one of the 30 states or the

22   District of Columbia. IPPs later amended the complaint so that the class alleged in the complaint

23   conforms with the Settlement Class. *See* ECF Nos. 5679, 5687.

24

25   ───────────────────

     [31] *Luscher et al. v. Mitsubishi Electric Corp.*, 17-cv-04067-JST (N.D. Cal.), ECF No. 1.

26   [32] As stated previously, IPPs added these nine statewide classes because (1) IPPs entered into an
     agreement with Mitsubishi Electric that tolled the statutes of limitations for all indirect purchaser
27   claims nationwide, and (2) viable plaintiffs were willing to represent these additional state classes.
     Alioto Decl. ¶ 24.
28

INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT WITH MITSUBISHI ELECTRIC CORPORATION
Case No. 17-cv-04067-JST; Master File No. 07-cv-05944-JST

### b.     The Releases Track The Allegations In The Complaint

Where a litigation class has not been certified, settling parties should explain any differences between the claims to be released and the claims asserted in the complaint.[33] Under the Proposed Settlement, IPPs and Settlement Class members will release all federal and state-law claims against Mitsubishi Electric:

> . . . concerning the manufacture, supply, distribution, sales or pricing of CRTs or CRT Products up to the Execution Date, and concerning any conduct alleged or that could have been alleged by Releasors, or causes of action asserted or that could have been asserted by Releasors, regarding the CRT conspiracy alleged in the Complaint[.]

Alioto Decl. ¶ 28, Ex. A ¶¶ 22-23. The release does not include claims for product defect, personal injury or breach of contract, or any other claim not related to the subject matter of the Complaint. In addition, the Proposed Settlement does not release claims arising under the laws of any jurisdiction not included in the Indirect Purchaser Jurisdictions. Ex. A, ¶ 23.

Thus, Settlement Class members will release not only the specific state law claims alleged in the complaint, but also any federal or state antitrust, consumer protection, unfair competition, or other claim that they could have alleged relating to the CRT conspiracy. Courts routinely permit the release of all actual and potential claims as part of a settlement class in order to grant the defendant "global peace," as long as the released claims are "based on the identical factual predicate." *Class Plaintiffs v. City of Seattle,* 955 F.2d 1268, 1287 (9th Cir. 1992) ("a federal court may release not only those claims alleged in the complaint, but also a claim 'based on the identical factual predicate as that underlying the claims in the settled class action even though the claim was not presented *and might not have been presentable in the class action*'") (citation omitted) (emphasis in original).[34] Thus, the Proposed Settlement's release of all class members' claims relating to the CRT conspiracy is reasonable.

---

[33] *See* Procedural Guidance, Preliminary Approval (1)(c). IPPs note that the Court did certify a similar litigation class in the MDL action. *See CRT,* 2013 WL 5391159.

[34] *See also Sullivan v. DB Investments Inc.,* 667 F.3d 273 (3d Cir. 2011) (recognizing defendants' interest in seeking global peace as part of class action settlement); *In re IPO Secs. Litig.,* 226 F.R.D. 186, 194 (S.D.N.Y. 2005), citing *Wal-Mart Stores, Inc.,* 396 F.3d at 121-22 ("[C]lass action settlements simply will not occur if the parties cannot set definitive limits on defendants' liability.").

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

c.      **The Settlement Administrator Selection Process and Costs**

The Procedural Guidance instructs parties to identify (1) the proposed settlement administrator, (2) the settlement administrator selection process, (3) the number of proposals submitted, (4) counsel's history of engagements with the settlement administrator over the last two years, (5) anticipated administration costs, (6) the reasonableness of those costs in relation to the value of the settlements, and (7) who will pay the costs. *See Procedural Guidance*, Preliminary Approval (2). The Guidance also instructs the parties to identify the methods of notice and claims payment proposed, which IPPs have done, in Section V, *supra*.

The Proposed Settlement Administrator: IPPs propose that the Court again appoint The Notice Company as the Settlement Administrator for the Proposed Settlement with Mitsubishi Electric. Alioto Decl. ¶ 49; Fisher Decl. ¶¶ 1-3 & Ex. A (detailing The Notice Company's experience).

The Settlement Administrator Selection Process: The Notice Company has successfully devised and implemented the Court-approved notice programs and administered the claims for all the Prior Settlements in this litigation. Prior to selecting The Notice Company to oversee this round of notice and settlement administration, IPP Counsel solicited and received proposals from three nationally recognized class action notice and claims administrators, in addition to The Notice Company. Each proposal included a comparable notice program for a comparable cost. Alioto Decl. ¶ 50.

Counsel's History of Engagements with The Notice Company: IPP Lead Counsel has had extensive experience with The Notice Company, which helped to provide notice of the Prior Settlements. *See* ECF Nos. 1063, 2511, 3863, 4953-1, 5587-2, 6029. IPP Counsel also engaged The Notice Company to devise a notice program for the Mitsubishi Electric Settlement presented to the Court in connection with the prior motion for preliminary approval in February 2018. Finally, IPP Counsel continues to work extensively with The Notice Company on issues relating to claims administration and the auditing of claims for the Prior Settlements. Alioto Decl. ¶ 51.

IPP Counsel has been impressed throughout these extensive interactions with The Notice Company's professionalism, responsiveness, and ability to resolve the many complex issues that have

arisen in this case. IPP Counsel believes the Class will benefit from The Notice Company's experience in this litigation administering the Prior Settlements, in that it will help to reduce the costs of administering this settlement. *Id*. ¶ 52.

<u>Anticipated Administration Costs</u>: The current estimated total cost of the notice program is approximately $500,000 to $950,000. Fisher Decl. ¶ 32. Mitsubishi Electric has agreed that up to $3 million of the Settlement Fund may be used for notice and administration costs, subject to Court approval. Alioto Decl. Ex. A ¶ 27.

### d.    Costs and Expenses

The Procedural Guidance instructs counsel to state whether and in what amounts they seek payment of costs and expenses, including expert fees. Here, IPPs anticipate requesting reimbursement of additional out-of-pocket litigation expenses of approximately $6,703.95. Other costs and expenses incurred in prosecuting the case against Mitsubishi Electric (*e.g.*, almost $6 million in expert fees) have already been approved and reimbursed by the Court. *See* ECF Nos. 5786 at 26, 4071-1 at 46. Alioto Decl. ¶ 56.

### e.    Service Awards

The Procedural Guidance instructs parties to include information about the amount of any service awards and evidence supporting the awards. IPPs anticipate seeking awards of $2,000 for each Class Representative. Incentive awards are designed to compensate class representatives for work performed on behalf of a class and are "'fairly typical in class action cases.'" *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 943 (9th Cir. 2015) (citation omitted). "In this district, a $5,000 payment is presumptively reasonable." *Moore v. Verizon Communications Inc.*, No. C 09–1823 SBA, 2013 WL 4610764, at *15 (N.D. Cal. Aug. 28, 2013) (citations omitted).[35]

Here, 21 of the 34 class representatives have already been granted $15,000 incentive award, and one has been granted a $5,000 incentive award in connection with the Prior Settlements. *See* ECF No. 5786 at 26; Alioto Decl. ¶ 57. In connection with the Mitsubishi Electric litigation and settlement,

---

[35] *See also, e.g., In re Online DVD,* 779 F.3d at 941, 947-48 (affirming incentive awards of $5,000 to each of nine class representatives).

they and the 13 new class representatives have reviewed and approved the original and amended complaints, searched for relevant documents, reviewed and approved the settlement agreement and amendments thereto, stayed in regular contact with their lawyers, and remained apprised of the material developments in the litigation. The class representatives have not, however, had to engage in formal discovery because IPPs settled with Mitsubishi Electric before formal discovery commenced. Accordingly, IPP Counsel intends to propose modest incentive awards of $2,000 for each class representative.  Alioto Decl. ¶ 58.

### f.      Past Distributions

The Procedural Guidance instructs parties to provide information for at least one past comparable settlement, including (i) the total settlement fund, (ii) the total number of class members, (iii) the total number of class members to whom notice was sent, (iv) the methods of notice, (v) the number of claim forms submitted, (vi) the average recovery per class member or claimant, (vii) the amounts distributed to *cy pres* recipients, (viii) administrative costs, and (ix) attorneys' fees and costs.[36] As shown below, the Proposed Settlement together with the Prior Settlements in this case compare favorably to similar settlements.[37]

| Case | *CRT* (IPPs) | *DRAM* (IPPs) | *TFT-LCD* (IPPs) |
|---|---|---|---|
| **Total Settlement Fund** | $580.75 million (including the Proposed Settlement) | $310.72 million | $1,082 billion |
| **Total Estimated Number of Class Members** | 175 million | 175 million | 175 million |
| **Total Number of Class Members to Whom Direct** | 14 million+ | 0 | 0 |

---

[36] *See* Procedural Guidance, Preliminary Approval (11).

[37] This chart shows information relating to settlements in the IPP action, compared to the settlements in (i) the IPP action in *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, No. 02-md-1486-PJH (N.D. Cal.); and (ii) the IPP settlements in *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 07-md-01827-SI (N.D. Cal.). These figures reflect best estimates based on publicly available records. Alioto Decl. ¶ 60 n. 9.

28

INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT WITH MITSUBISHI ELECTRIC CORPORATION
Case No. 17-cv-04067-JST; Master File No. 07-cv-05944-JST

| Case | CRT (IPPs) | DRAM (IPPs) | TFT-LCD (IPPs) |
|---|---|---|---|
| **Notice Was/Will Be Sent** | | | |
| **Method(s) of Notice** | Direct notice; indirect notice, including broadcast, digital media and press releases | Indirect notice, including broadcast, digital media, press releases | Indirect notice, including broadcast, digital media and press releases |
| **Number of Claims Submitted/To be Submitted** | 156,467 (prior claims) + 75,000 (estimated new claims) = 231,467 (0.13%) | 445,554 (0.25%) | 247,558 (0.14%) |
| **Mean Recovery Per End User Claimant**[38] | $3,034.90 | $423.90 | $3,155 |
| **Expected Residual** | $0 | $2,053,004.46 | $0 |
| **Attorneys' Fees** | $140,606,250 (24.2%) ($129,606,250 awarded; $11,000,000 now requested) | $78.3 million (25%) | $309.725 million (28.6%) |
| **Litigation Costs** | $8,460,252.79 (prior settlements)[39] + $6,703.95 (proposed settlement) | $11.8 million | $8,736,131.43 |

---

[38] As explained in IPPs' recent Motion to Distribute Settlement Funds to Claimants, ECF No. 6025, Reseller claimants, i.e., those who purchased CRTs or CRT Products for resale, were only included in the Chunghwa settlement class, and were only permitted to claim against half of the Net Chunghwa Settlement Fund, which is approximately $3.068 million—substantially less than the Net Settlement Funds for the other settlements. This means that Reseller claimants will receive less for each CRT Product purchased than End-User claimants. *See id.* at 17, n. 20. The mean recovery for class members who purchased in the nine new states will likewise be less because they may only claim against this Proposed Settlement. Because most claimants are End-User claimants who purchased in the 22 States, IPPs provide the mean recovery for those claimants for the purpose of comparing the mean recovery in this case to other similar indirect purchaser cases. Alioto Decl. ¶ 60.

[39] *See* ECF Nos. 5786 at 25, 6040 at 3. $1,886,155.41 of the recently approved $2,330,710.87 in expenditures from the Future Expense Fund were for notice and claims administration expenses. *See* ECF No. 6025-1 & Ex. A. Thus, $789,727.22 of IPPs' additional expenses are properly categorized as "litigation costs."

| Case | *CRT* (IPPs) | *DRAM* (IPPs) | *TFT-LCD* (IPPs) |
|---|---|---|---|
| **Administrative Costs** | $4,202,006.62 (prior case)[40] + $500,000 - $900,000 (estimated additional costs)[41] = $4,702,006.62 – $5,152,006.62 | $2.834 million | $3,276,539.13 |

Alioto Decl. ¶ 60.

### C.     The Proposed Settlement Class Satisfies Rule 23(a)

Before granting preliminary approval of a settlement and directing notice to the class, the Court must determine that it will likely be able to conclude that the proposed settlement presents a proper class for settlement purposes. *See* Fed. R. Civ. P. 23(e)(1)(B)(ii); MCL 4th § 21.632; *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997). Here, nearly identical litigated classes have already been certified by this Court. *See CRT*, 2013 WL 5429718, at *24-29.

Certification is appropriate where the proposed class and the proposed class representatives meet the four prerequisites of Rule 23(a)—numerosity, commonality, typicality, and adequacy of representation. In addition, certification of a class action for damages requires a showing that "questions of law and fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The Proposed Settlement Class here satisfies each of the Rule 23 criteria.

### 1.     The Class Is So Numerous That Joinder Is Impracticable

The first requirement for maintaining a class action is that its members are so numerous that joinder would be "impracticable."  Fed. R. Civ. P. 23(a)(1). Here, the Proposed Settlement Class consists of millions of consumers of CRTs and CRT Products in 30 states and the District of Columbia.

---

[40] *See* ECF No. 6029-2 (Amended Declaration of Joseph M. Fisher Re: Notice, Claims Processing and Distribution of Settlement Funds), ¶ 34 (the Settlement Administrator has billed and been paid $3,602,006.62 to date, and estimates that the remaining work to distribute the Prior Settlements to Class Members will cost between $500,000 and $600,000).

[41] Fisher Decl. ¶ 35 (the Settlement Administrator estimates that the administrative costs for the Proposed Settlement will be approximately $500,000 to $950,000).

Over 150,000 class members have already filed claims in connection with the Prior Settlements. "Numerosity" is easily established. *See* ECF No. 5695 at 8 (adopting prior findings that "millions of people in the United States purchased CRT products during the class period.").

### 2. The Case Involves Questions of Law and Fact Common to the Class

The second requirement for class certification is the existence of questions of law or fact common to the class. Fed. R. Civ. P. 23(a)(2). Here, all class members share numerous common questions of law and fact that go to the central issue in this matter—whether Mitsubishi Electric and other CRT manufacturers engaged in a price-fixing conspiracy which injured indirect purchasers when they paid more for CRTs and CRT Products than they would have paid absent the alleged conspiracy. These common questions of law or fact include:

> a. Whether Mitsubishi Electric and other CRT manufacturers engaged in a contract, combination, and/or conspiracy to fix, raise, maintain, or stabilize prices of CRTs sold in the United States;
>
> b. Whether the alleged conspiracy violates the antitrust, consumer protection or other similar laws of the 30 states and the District of Columbia;
>
> c. The duration of the alleged illegal contract, combination, and/or conspiracy;
>
> d. Whether Mitsubishi Electric and its alleged co-conspirators' alleged conduct resulted in an unlawful overcharge on the price of CRTs; and
>
> e. Whether the alleged unlawful overcharge on the price of CRTs was passed-through to the indirect purchasers of CRT Products, and if so, the appropriate class-wide measure of damages.

This Court recently found that these questions of law and fact satisfy the commonality requirement in this case. *See, e.g.,* ECF No. 5695 at 8. Moreover, similar common questions are routinely found to satisfy the commonality requirement in antitrust class actions. *See, e.g., Wortman v. Air New Zealand*, No. 07-cv-05634-CRB, 2018 WL 3753226, at *4 (N.D. Cal. Aug. 8, 2018).

### 3. Plaintiffs' Claims Are Typical Of The Claims Of The Class

The "claims . . . of the representative parties [must be] typical of the claims . . . of the class." Fed. R. Civ. P. 23(a)(3). Under Rule 23(a)(3), "representative claims are 'typical' if they are reasonably coextensive with those of absent class members; they need not be substantially identical." *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1116 (9th Cir. 2017) (citations omitted). "Like commonality,

31

1    there is substantial legal authority holding in favor of a finding of typicality in price fixing conspiracy

2    cases, even where differences exist between plaintiffs and absent class members with respect to

3    pricing, products, and/or methods of purchasing products." *Wortman v. Air New Zealand*, 2018 WL

4    3753226, at *4, quoting *DRAM*, 2006 WL 1530166, at *5.

5         Here, the Named Plaintiffs' assert the same legal claims on behalf of themselves and the

6    Proposed Settlement Class—that they indirectly purchased CRTs or CRT Products and that they were

7    overcharged as a result of the alleged conspiracy between Mitsubishi Electric and other CRT

8    manufacturers. Therefore, the Named Plaintiffs' claims are typical of the claims of the other class

9    members, and certification is appropriate. *See CRT,* 2013 WL 5391159, at *3 (finding that typicality

10   was satisfied, and noting that Defendants did not challenge typicality); ECF No. 5695 at 9-10 (adopting

11   prior finding that "the claims of the representative parties are typical of the claims of the class . . .

12   because they all indirectly purchased CRT products at supra-competitive levels as a result of the

13   alleged price-fixing conspiracy during the relevant time period.").

14        **4.      Plaintiffs Will Fairly And Adequately Represent The Interests Of The
             Class**

15

16        The final requirement of Rule 23(a)(4) is that the representative plaintiffs fairly and adequately

17   represent the interests of the class. "To determine whether named plaintiffs will adequately represent

18   a class, courts must resolve two questions: '(1) do the named plaintiffs and their counsel have any

19   conflicts of interest with other class members and (2) will the named plaintiffs and their counsel

20   prosecute the action vigorously on behalf of the class?'" *Ellis v. Costco Wholesale Corp.*, 657 F.3d

21   970, 985 (9th Cir. 2011) (citation omitted).

22        Here, each statewide class is represented by a Named Plaintiff who is a resident of that state,

23   has standing to assert a claim under that state's law, and has been thoroughly vetted by Class Counsel.

24   The interests of the Named Plaintiffs are not antagonistic to those of the Proposed Settlement Class

25   because they are all similarly interested in obtaining prompt and valuable relief from the Defendant.

26   They have a genuine interest in the litigation and understand the allegations in this case. The Named

27   Plaintiffs in the MDL reviewed the pleadings and produced documents regarding their purchases. Most

28   of them also responded to written discovery and were deposed by Defendants. They have also

32

1    reviewed the pleadings against Mitsubishi Electric, the settlement agreement and, in consultation with

2    their lawyers, have approved them on behalf of their respective states. Alioto Decl. ¶ 59.

3         The interests of all Named Plaintiffs and class members are aligned because they all allegedly

4    suffered similar injury in the form of claimed higher CRT Product prices due to the alleged conspiracy,

5    and they all seek the same relief.  By proving their own claims, the named plaintiffs will necessarily

6    be proving the claims of their fellow class members. *See* 2013 WL 5391159, *3 (concluding that the

7    named plaintiffs were adequate class representatives); ECF No. 5695 at 10-11 (Preliminary Approval

8    Order finding named plaintiffs are adequate class representatives).

9         Additionally, IPPs are represented by counsel who are highly qualified in class action litigation

10   and have competently and aggressively prosecuted this complex case. The Court appointed Trump,

11   Alioto, Trump & Prescott, LLP as Class Counsel on September 24, 2013, and as Settlement Class

12   Counsel for the Prior Settlements on June 9, 2015, and March 13, 2020.[42] Class Counsel have

13   undertaken the responsibilities assigned to them by the Court and have directed the efforts of other

14   IPP counsel in vigorously prosecuting this action. *See CRT*, 2016 WL 4126533, at *5 ("the entire

15   record of the litigation viewed fairly demonstrates that Class Counsel managed this case diligently and

16   efficiently for the benefit of the class[,]" and "Class Counsel was superb at coordinating the class

17   effort."); ECF No. 5695 at 10 ("IPP Lead Counsel has "invested considerable time in this case and

18   ha[s] substantial experience with class action litigation.").

19        **D.    The Proposed Settlement Class Satisfies Rule 23(b)(3)**

20        Once the four prerequisites of Rule 23(a) are met, as they are here, IPPs are entitled to proceed

21   with a class action under Rule 23(b)(3) if the Court finds that "questions of law or fact common to

22   class members predominate over any questions affecting only individual members, and that a class

23   action is superior to other available methods for fairly and efficiently adjudicating the controversy."

24   The Proposed Settlement Class meets both requirements.

25

26

27   ───────────────

     [42] *See* 2013 WL 5429718, at *10, 29; 2013 WL 5391159, at *2; ECF No. 3906 (Amended Order
28   Granting Preliminary Approval of Class Action Settlements) ¶ 9; ECF No. 5695 at 10.

### 1.      Common Questions Of Law Or Fact Predominate

"[I]n price-fixing cases, such as this, 'courts repeatedly have held that the existence of the conspiracy is the predominant issue and warrants certification even when significant individual issues are present.'" ECF No. 5695 at 8 (quoting *Thomas & Thomas Rodmakers Inc. v. Newport Adhesives & Composites Inc.,* 209 F.R.D 159, 167 (C.D. Cal. 2002)).

Here, as this Court has already recognized, the existence of the alleged CRT conspiracy and Mitsubishi Electric's and its alleged co-conspirators' acts in furtherance of that alleged conspiracy are the predominant common questions. *See id.* Likewise, issues regarding antitrust injury are "overriding issues" satisfying the predominance requirement. *See CRT,* 2013 WL 5391159, at *6 (finding common questions predominated and certifying twenty-two statewide classes of indirect purchasers of CRTs).

Moreover, the Court need not concern itself with questions of the manageability of a trial because the settlement disposes of the need for a trial as to Mitsubishi Electric. The Supreme Court has explained that the "predominance" inquiry is relaxed in the settlement context: "Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial." *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 620 (1997) (discussing manageability, which is a subpart of Rule 23(b)(3) predominance); *see also In re Relafen Antitrust Litig.,* 231 F.R.D. 52, 68 (D. Mass. 2005) (discussing settlement exception to rigorous analysis of predominance). Issues common to the class predominate in this case.

### 2.      A Class Action Is Superior To Other Methods Of Adjudication

The superiority prong of Rule 23(b)(3) requires balancing the merits of a class action against alternate available methods of adjudication. *See Valentino v. Carter-Wallace, Inc*., 97 F.3d 1227, 1234 (9th Cir. 1996). "[I]f common questions are found to predominate in an antitrust action, then courts generally have ruled that the superiority prerequisite of Rule 23(b)(3) is satisfied." Wright, Miller & Kane, *Federal Practice and Procedure: Civil Procedure* § 1781 at 254-55 (3d ed. 2004).

This type of case is precisely why the modern class action mechanism was developed. The damages alleged by individual members of the class in this case are relatively small, and the expense

1    and burden of individual litigation would make it impracticable for them to seek redress individually.

2    *See CRT,* 2013 WL 5429718, at *23. Moreover, the interests of class members in individually

3    controlling the prosecution of separate claims are outweighed by the efficiency of the class

4    mechanism. Finally, separate adjudication of claims creates a risk of inconsistent rulings and would

5    waste judicial resources, which further favors class treatment.

6    **V.    THE PROPOSED NOTICE PROGRAM PROVIDES THE BEST NOTICE
        PRACTICABLE UNDER THE CIRCUMSTANCES**

7

8            Rule 23(e)(1) states: "The claims, issues, or defenses of a certified class may be settled,

9    voluntarily dismissed, or compromised with the court's approval. . . .  The court must direct notice in

10   a reasonable manner to all class members who would be bound by the proposal."

11           Notice of a proposed settlement must inform class members of the following: (1) the nature of

12   the pending litigation; (2) the general terms of the proposed settlement; (3) that complete information

13   is available from the court files; and (4) that any class member may appear and be heard at the fairness

14   hearing.  *See Newberg* § 8.32. The notice must also indicate an opportunity to opt out, that the

15   judgment will bind all class members who do not opt out, and that any member who does not opt out

16   may appear through counsel. Fed. R. Civ. P. 23(c)(2)(B).

17           The form of notice is "adequate if it may be understood by the average class member"

18   (Newberg, § 11.53), and "generally describes the terms of the settlement in sufficient detail to alert

19   those with adverse viewpoints to investigate and to come forward and be heard." *In re Hyundai & Kia*

20   *Fuel Econ. Litig.,* 926 F.3d at 567 (quoting *Churchill Village LLC,* 361 F.3d at 575). Notice to the

21   class must be "the best notice practicable under the circumstances, including individual notice to all

22   members who can be identified through reasonable effort." *Amchem Prods.,* 521 U.S. at 617. This

23   standard does not require perfection in delivering notice, but rather reasonable efforts to reach as many

24   class members as possible through either individual or publication means. *See, e.g.,* Federal Judicial

25   Center, *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide* (2010),

26   at 3 ("It is reasonable to reach between 70-95%."). Publication notice is an acceptable method of

27   providing notice where the identity of specific class members is not reasonably available. *See In re*

28   *Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007), citing MCL 4th § 21.311.

        IPP Counsel have retained The Notice Company—the same experienced class action administrator that designed and implemented the Court-approved notice programs for all previously approved settlements—to give notice of this Proposed Settlement to the members of the Settlement Class. Fisher Decl. ¶ 2. As explained in the Fisher Declaration, IPPs propose to disseminate notice by, *inter alia,* (1) direct mail notice, (2) direct email notice, (3) extensive publication notice in print and online, including various social media websites, (4) television ads, (5) digital banner ads, (6) an earned media plan, (7) press releases in English and Spanish, (8) a case-specific website, and (9) a case-specific toll-free number. *Id.* ¶¶ 8-30. The direct mail and email addresses to be used for the direct notice were identified by The Notice Company from various third-party data sources. *Id.* ¶¶ 13-15. The Notice Company projects that the notice will reach at least 85% of adults aged 35+ who owned TVs or computers during the relevant period with an estimated frequency of 3.04 times. *Id.* ¶¶ 9, 31. This projected reach and frequency for the notice is well within the acceptable range.

        The Notices will advise putative class members of the Proposed Settlement and the plan of distribution, and the dates associated with exclusion, objection, and final approval. *Id.* ¶¶ 5-7, Exs. B (Detailed Notice) & C (Summary Notice). The Notices also include (1) contact information for class counsel to answer questions; (2) the address for the case website, maintained by the claims administrator, with links to the Notice, the settlement agreement, the motions for approval and for attorneys' fees, and other important case documents; and (3) instructions on how to access the case docket via PACER and in person at any of the court's locations.[43] *Id.*  In addition, the Notices advise that IPPs intend to apply for attorneys' fees in the amount of one-third of the Settlement Fund ($11,000,000), notice costs, and litigation expenses of approximately $6,703.95. Alioto Decl. ¶ 54. The Notices will further advise class members how to access the fee petition when it is filed. *Id.* The Notices are written in plain and easy-to-understand language. Fisher Decl. ¶ 7. They are substantially similar to the Notices previously approved by the Court, and clearly state the differences between the Settlement Class for the Proposed Settlement and the Prior Settlements.

---

[43] *See* Procedural Guidance, Preliminary Approval, (3) Notice.

The Notice Company's comprehensive notice program—which is similar to the notice programs approved by the Court in connection with the Prior Settlements, but which has been updated to emphasize digital notice methods instead of print publications given that most consumers now access media online—satisfies due process standards and represents the best notice practicable under the circumstances, consistent with Rule 23. Fisher Decl. ¶¶ 17-33; ECF No. 5786 at 15 (adopting finding that notice of the Prior Settlements "provided the best practicable notice to class members.").

Finally, pursuant to the Class Action Fairness Act, 28 U.S.C. §1715, Mitsubishi Electric will provide notice of the Settlement to the Attorney General of the United States and the Attorneys General of all 50 States within ten days of the filing of this motion. Alioto Decl. ¶ 61.

## VI.   THE COURT SHOULD SET A FINAL APPROVAL HEARING SCHEDULE

The last step in the settlement approval process is the final approval hearing, at which the Court may hear all evidence and argument necessary to evaluate the Proposed Settlement. At that hearing, proponents of the Proposed Settlement may explain and describe its terms and conditions and offer argument in support of settlement approval, and members of the Proposed Settlement Class, or their counsel, may be heard in support of or in opposition to the Proposed Settlement. IPPs respectfully suggest that the Court set the following final approval schedule, culminating in a final approval hearing:

| Event | Date |
| --- | --- |
| Notice Publication Date and Mailed Notice to Commence | Within 60 days of Order Granting Preliminary Approval |
| Exclusion Date | Within 60 days of Notice Publication Date |
| Objection Date | Within 60 days of Notice Publication Date |
| Final Hearing | 150 days from Order Granting Preliminary Approval |
| Claims Deadline | 120 days from Notice Publication Date |

1

## VII.    **CONCLUSION**

2

IPPs respectfully request that the Court enter an Order: (1) finding that the Proposed Settlement

3

is likely to be approved; (2) conditionally certifying the Settlement Class; (3) approving the proposed

4

notice plan as complying with due process and Rule 23 and directing dissemination of notice to the

5

Settlement Class; (4) appointing Trump, Alioto, Trump & Prescott, LLP as Settlement Class Counsel;

6

and (5) establishing a schedule for final approval.

7

Dated:  August 18, 2022                      Respectfully submitted,

8

9

 */s/ Mario N. Alioto*
Mario N. Alioto (56433)

10

malioto@tatp.com
Joseph M. Patane (72202)

11

jpatane@tatp.com
Lauren C. Capurro (241151)

12

laurenrussell@tatp.com
TRUMP, ALIOTO, TRUMP & PRESCOTT LLP

13

2280 Union Street

14

San Francisco, CA 94123
Telephone: 415-563-7200

15

Facsimile: 415-346-0679

16

*Lead Counsel for the Indirect Purchaser Plaintiffs*

17

18

19

20

21

22

23

24

25

26

27

28