Mario N. Alioto (56433)
Lauren C. Capurro (241151)
TRUMP, ALIOTO, TRUMP & PRESCOTT LLP
2001 Union Street, Suite 482
San Francisco, CA 94123
Telephone: 415-563-7200
Facsimile: 415- 346-0679
Email: malioto@tatp.com
laurenrussell@tatp.com

**Lead Counsel for the**
**Indirect Purchaser Plaintiffs**

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Master File No. 4:07-cv-05944-JST<br>Case No. 4:17-cv-04067-JST<br><br>MDL No. 1917 |
| This Document Relates to:<br><br>*Luscher, et al. v. Mitsubishi Electric Corp.,*<br>No. 4:17-cv-04067-JST | **DECLARATION OF JOSEPH M. FISHER RE:  MITSUBISHI NOTICE PROGRAM**<br><br>Hearing Date: September 22, 2022<br>Time: 2:00 p.m.<br>Courtroom: 5, 2nd Floor<br>Judge:  Honorable Jon S. Tigar |

1    I, Joseph M. Fisher, declare:

2                                      **INTRODUCTION**

3        1.    <u>Identification</u>.    I am the president of The Notice Company, Inc., a Massachusetts

4    corporation with offices at 94 Station Street, Hingham, MA 02043 ("The Notice Company"). The

5    Notice Company is principally engaged in the administration of class action settlements and lawsuits

6    pending in courts around the United States, including the dissemination of notice to class members,

7    administering the claims process, and distributing the proceeds of the litigation to the class.  I have

8    over 18 years of experience assisting attorneys with class action notices and claims administration.  I

9    am also a member in good standing of the bars of the Commonwealth of Massachusetts, the District

10   of Columbia, and the Commonwealth of Virginia.  I am over 21 years of age and not a party to this

11   action.  I have personal knowledge of the facts set forth herein and, if called as a witness, could and

12   would testify thereto under oath.  Attached as <u>Exhibit A</u> hereto is a true and correct listing of cases

13   where The Notice Company has implemented notice programs in cases throughout the United States.

14       2.    <u>Purpose of Declaration</u>.    The purpose of this Declaration is to propose a program for

15   providing notice of the Settlement Agreement dated October 25, 2017 (and the Addendum thereto)

16   with Mitsubishi Electric Corporation ("Mitsubishi Electric Settlement") to the Settlement Class,

17   including notice of the claims process available to members of the Settlement Class, in a manner that

18   effectively reaches the Settlement Class, that constitutes the best notice practicable under the

19   circumstances and that complies fully with the requirements of Rule 23 of the Federal Rules of Civil

20   Procedure ("Rule 23").

21       3.    <u>Prior Declarations and Notice Programs Approved by the Court in this Litigation</u>.

22           (a)    The Notice Company developed and implemented the notice programs for use

23   in the cathode ray tube ("CRT") indirect-purchaser plaintiffs ("IPP") settlements with Chunghwa

24   Picture Tubes, Ltd (the "Chunghwa Settlement").  In my declaration dated February 28, 2012 (ECF

25   Nos. 1063-1065), I reported on the class notice program for the Chunghwa Settlement, which this

26   Court found "constitutes the best notice practicable under the circumstances, is due and sufficient

27   notice to the Indirect Purchaser Settlement Class and complies fully with the requirements of Federal

28

1

Rule of Civil Procedure 23 and the due process requirements of the Constitution of the United States."

Order Granting Preliminary Approval of the Chunghwa Settlement, ¶ 13 (ECF No. 992).

(b)     In my declaration dated March 27, 2014 (ECF Nos. 2511-2514), I reported on the class notice program for the certified class and the settlement with defendants LG Electronics, Inc., LG Electronics U.S.A., Inc., and LG Electronics Taiwan Taipei Co., Ltd (the "LG Settlement").  This Court found that the notice program for the LG Settlement "constitutes the best notice practicable under the circumstances, is due and sufficient notice to the Indirect Purchaser Settlement Class and complies fully with the requirements of Federal Rule of Civil Procedure 23 and the due process requirements of the Constitution of the United States."  Revised Order Granting Preliminary Approval of the LG Settlement, ¶ 12 (ECF No. 2248).

(c)     In my declaration dated May 27, 2015 (ECF No. 3863), I described the notice program developed by The Notice Company for the settlements with:

(i)     Koninklijke Philips N. V. (f/k/a Koninklijke Philips Electronics N. V.); Philips Electronics North America Corporation; Philips Taiwan Limited (f/k/a Philips Electronics Industries (Taiwan), Ltd.); and Philips do Brasil, Ltda. (f/k/a Philips da Amazonia Industria Electronica Ltda.) (collectively "Philips");

(ii)     Panasonic Corporation (f/k/a Matsushita Electric Industrial Co., Ltd.); Panasonic Corporation of North America; MT Picture Display Co., Ltd.; and an affiliate of Panasonic Corporation, Beijing Matsushita Color CRT Co., Ltd. (collectively "Panasonic");

(iii)     Hitachi, Ltd.; Hitachi Displays, Ltd. (n/k/a Japan Display Inc.); Hitachi Electronic Devices (USA), Inc.; Hitachi Asia, Ltd.; and Hitachi America, Ltd. (collectively "Hitachi");

(iv)     Toshiba Corporation; Toshiba America Information Systems, Inc.; Toshiba America Consumer Products, L.L.C.; and Toshiba America Electronic Components, Inc. (collectively "Toshiba");

(v)     Samsung SDI Co. Ltd; Samsung SDI America, Inc.; Samsung SDI Brasil, Ltda.; Tianjin Samsung SDI Co., Ltd.; Shenzhen Samsung SDI Co., Ltd; Samsung SDI Malaysia Sdn. Bhd; Samsung SDI Mexico S.A. de C. V. (collectively "Samsung SDI");

1          (vi)    Technicolor SA (f/k/a Thomson SA) and Technicolor USA, Inc. (f/k/a

2  Thomson Consumer Electronics, Inc.) (collectively "Thomson"); and

3          (vii)   Technologies Displays Americas LLC (f/k/a Thomson Americas LLC)

4  ("TDA").

5  The settlements with Hitachi, Panasonic, Philips, Samsung, Toshiba, Thomson and TDA are

6  collectively referred to as the "2015 Settlements."

7          (d)    In my Declaration dated November 17, 2015 (ECF No. 4371), I reported on

8  implementation of the notice program for the 2015 Settlements. This Court found that the notice

9  program for the 2015 Settlements "provided the best practicable notice to class members."  Order

10  Granting Final Approval of Indirect Purchaser Settlements, ¶ III.C (ECF No. 4712).

11          (e)    In my Declaration dated September 16, 2019, I reviewed the notice program as

12  proposed in IPPs' Motion Pursuant to Ninth Circuit Mandate to Reconsider and Amend Final

13  Approval Order, Final Judgment and Fee Order, filed September 16, 2019 (ECF No. 5587), and

14  developed the details for its implementation (ECF No. 5587-2). The Court's Order Granting Motion

15  for Preliminary Approval filed March 11, 2020, approved IPPs' proposed notice program (ECF No.

16  5695).

17          (f)    In my Declaration dated June 12, 2020, I confirmed implementation of the

18  notice plan as approved in the Preliminary Approval Order of March 11, 2020. This Declaration was

19  filed in support of IPPs' Response to Objections to Amended Settlements (ECF No. 5758). The Court

20  granted final approval of the Amended Settlements in its Order dated July 13, 2020 (ECF No. 5786).

21  The Court made the following finding with respect to notice: "In light of the adequacy of the original

22  notice plan and IPP Plaintiffs' provision of additional notice of settlement amendments, the Court

23  finds that the parties have provided adequate notice to class members." Order at § IV.B.

24          (g)    In my Amended Declaration dated July 1, 2022, I reviewed The Notice

25  Company's implementation of notice programs for all aspects of the IPP settlements (ECF No. 6029).

26  This Declaration was filed in support of IPPs' Motion for Distribution of Settlement Funds (ECF No.

27

28

6025). The Court issued its Order Authorizing Distribution of Settlement Funds on July 29, 2022 (ECF No. 6040).

4.      <u>Proposed Settlement Class</u>.   The parties propose a "Settlement Class" defined as follows:

- All persons or business entities who or which indirectly purchased in Arizona, Arkansas, California, District of Columbia, Florida, Hawaii, Iowa, Kansas, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, South Carolina, South Dakota, Tennessee, Utah, Vermont, West Virginia, and Wisconsin, for their own use and not for resale, CRTs or CRT Products manufactured or sold by the Defendant or any Alleged Co-Conspirator;

- All persons or business entities who or which indirectly purchased in Missouri or Montana, for their own use and not for resale, and primarily for personal, family, or household purposes, CRTs or CRT Products manufactured or sold by the Defendant or any Alleged Co-Conspirator; and

- All natural persons who indirectly purchased in Rhode Island, for their own use and not for resale, and primarily for personal, family, or household purposes, CRTs or CRT Products manufactured or sold by the Defendant or any Alleged Co-Conspirator.

In order to qualify, claimants must have purchased the CRT Product(s) between March 1, 1995 and November 25, 2007 (the "Class Period"). However, Hawaii, Nebraska and Nevada have slightly shorter Class Periods:

- Purchases of CRT Products in Hawaii must have been made between June 25, 2002 and November 25, 2007.

- Purchases of CRT Products in Nebraska must have been made between July 20, 2002 and November 25, 2007.

- Purchases of CRT Products in Nevada must have been made between February 4, 1999 and November 25, 2007.

Specifically excluded from the Settlement Class are:

- The Defendant; its officers, directors or employees; any entity in which the Defendant has a controlling interest; and, any of the Defendant's affiliates, legal representatives, heirs or assigns;

- The Alleged Co-Conspirators, any federal, state or local government entities, any judicial officer presiding over this action and members of his/her immediate family and judicial staff, and any juror assigned to this action.

Members of the Settlement Class are referred to as "Class Members". The Mitsubishi Electric Settlement is limited to "End Users" defined as persons or entities who purchased CRT Products for their own use and not for resale.

## FORMS OF NOTICE

5.      <u>Notice and Claim Form Documents</u>.   Attached hereto as <u>Exhibits B, C, D and E</u>, respectively, are the Detailed Notice, Summary Notice, Email Notice and Claim Form in the forms agreed upon by the parties to the Settlement.  The Detailed Notice, Summary Notice and Email Notice each satisfy the requirements of Rule 23; they describe the nature of the pending litigation; they review the general terms of the proposed settlement; they state that complete information is available from the court files and from the "Settlement Website" at *www.crtclaims.com*; they inform Class Members that such members may appear and be heard at the fairness hearing; they provide the date and location of the fairness hearing; they inform class members of the right to request exclusion; they identify the deadline for submitting opt outs and objections; they inform Class Members that the judgment will bind all class members who do not opt-out, and that any Class Member who does not opt-out may appear through counsel; and they set forth the deadline and process for submitting claims for payment under the Settlement.  In addition, each form of notice provides a toll-free telephone number which Class Members may call to obtain additional information or to request a Claim Form.  Class Members

DECLARATION OF JOSEPH M. FISHER RE: NOTICE PROGRAM – CLASS ACTION SETTLEMENT WITH
MITSUBISHI ELECTRIC CORPORATION, Case No. 17-cv-04067-JST; Master File No. 07-cv-05944-JST

who request a Claim Form will have the opportunity to fill out a Claim Form and submit it online or by regular mail.

6.    <u>Spanish Language</u>.  The attached forms of the Detailed Notice, Summary Notice and Claim Form are in English, but they will also be translated into Spanish for use in Spanish-language media and on the Settlement Website.

7.    <u>Plain Language</u>.  The Detailed Notice, Summary Notice and Email Notice are written in a clear, plain and concise style appropriate for the target audience.  The Detailed Notice includes an overall summary of the notice, uses short bullet points that highlight the nature of the case and the purpose of the notice, includes a table of contents, organizes the topics into different sections and places the information in a logical order. The Summary Notice and Email Notice are short but comprehensive; they refer to all of the requirements of Rule 23 in a simple and clear summary fashion. The notices comport with the plain language standards for legal noticing.

## NOTICE PROGRAM

8.    <u>Summary of Notice Program</u>. The proposed Notice Program utilizes a combination of the following:

(a)    Direct Notice by mail and email;

(b)    Digital Media;

(c)    Print Media;

(d)    Press Release;

(e)    Magazine eNewsletters; and

(f)    Cable Television.

9.    <u>Target Audience</u>.  In order to build a Notice Plan that adheres to Rule 23, The Notice Company developed a target audience that closely matches the class definition to provide statistical

measurements of reach and frequency.[1]  With a Class Period that extends from 1995[2] to 2007[3], any young adult aged 18 in any year during the Class Period would now be at least 33 to 45 years of age. Using available data points in demographic software, The Notice Company selected the age qualifier of adults aged 35+ in order to capture the range of current ages for Class Members.  Thus, the "Target Audience" is a qualitative target of "adults 35 years and older in the United States that own a television or computer".

        (a)    <u>Televisions</u>:  According to the Nielsen Television Index (NTI), more than 98% percent of U.S. households had at least one television set throughout the period 1995 to 2007.[4]  CRT technology accounted for virtually all television sales in 1995, declining markedly to less than 27% by 2007.[5]  Sales of CRT televisions sold during the period 1995 to 2002 accounted for nearly 69% of all CRT TV sales from 1995 to 2007.[6]

        (b)    <u>Computer Monitors</u>: The percentage of households with computers ranged from approximately 37% in 1997 to nearly 70% in 2007.[7] Computer usage by businesses was also prevalent throughout the period.  For example, in 2003, 55.5% of all workers in the United States were using

---

[1] The Notice Company was assisted in its development work by Brandon Schwartz, Director of Notice at Postlethwaite & Netterville, APAC.

[2] Census Bureau data show that the median age of persons in 1995 was 34.2 years old, which corresponds to 61.2 years of age in 2022. *See* https://www2.census.gov/library/publications/2010/compendia/statab/130ed/tables/11s0007.xls.

[3] Census Bureau data show that the median age of persons in 2007 was 36.4 years old, which corresponds to 51.4 years of age in 2022. *See* https://www.census.gov/data/tables/2007/demo/age-and-sex/2007-age-sex-composition.html.

[4] Television Bureau of Advertising, Inc., *TV Basics*, p. 2 (2010).  *See also* The American Council for an Energy-Efficient Economy (ACEEE), *Televisions, Computers, and Set-top Boxes: The Big Three of 2010 Home Consumer Electronics Energy Consumption* (2012), p. 9-302 ("Televisions are the most widely owned consumer electronic device in the U.S. at 95-99% household penetration in 2010").

[5] ACEEE, *supra* note 4 at 9-305; U.S. EPA, *Electronics Waste Management in the United States Through 2009*, p. 11 (May 2011); Joseph A. Castellano, Stanford Resources, Inc., *Market Trends for Displays in Consumer Television* ("CRTs will account for 97.1% of televisions in 2000, slipping to 96.2% in 2004"). *See also* NPD DisplaySearch, *LCD TV Growth Improving, As Plasma and CRT TV Disappear*, (April 16, 2014) at http://www.displaysearch.com/cps/rde/xchg/displaysearch/hs.xsl/140415_lcd_tv_growth_improving_as_plasma_and_crt_tv_disappear.asp.

[6] U.S. EPA, *supra* note 5.

[7] U.S. Census Bureau, *Computer and Internet Use in the United States*, p. 2 (May 2013).

computers.[8]  Up until 2002, most computer displays sold were CRT monitors, declining steadily thereafter, with CRT sales during the period 1995 to 2002 accounting for approximately 85% of all CRT monitors sold from 1995 to 2007.[9]

(c)   Demographics:  Available data across MRI-Simmons (formerly GfK Mediamark Research, Inc.)[10] and comScore[11], which are leading resources in audience analysis, provide insight into the Target Audience. Due to the time period when CRTs were in use and the years covered by the Class Period, a significant segment of the Class is an older demographic.[12] Media and technology usage by seniors has changed considerably in recent years.[13] Key information about the Target Audience's access to the internet, reading consumption, and language highlights the necessity for notice placement across a diverse set of media channels that provide an opportunity to run notices in English and Spanish, and on both desktop and mobile platforms.

-   "Today, 93% of American adults use the internet."[14]

---

[8] U.S. Bureau of Labor Statistics, *Computer and Internet Use At Work*, http://www.bls.gov/news. release/ciuaw.nr0.htm (August 2, 2005).

[9] In 1995, 88% of computer display sales were CRT monitors; in 2000, 89% of computer display sales were CRT monitors; in 2002, two-thirds of computer display sales were CRT monitors.  The major shift away from CRTs occurred in 2003, when only 47% of computer display sales were CRT monitors; by 2007, CRT monitors had dropped to 2.4% of computer display sales. While sales during the period 1995 to 2002 accounted for about 85% of all CRT monitors sold from 1995 to 2007, the bulk of CRT monitor sales occurred in the earlier years.  Indeed, sales during the shorter period from 1995 to 2000 accounted for approximately two-thirds of all CRT monitors sold from 1995 to 2007. U.S. EPA, *supra* note 5, at 11.

[10] MRI-Simmons is a nationally-syndicated research tool. It is the leading supplier of multi-media audience research and provides comprehensive reports on demographic, lifestyle, product usage, and media exposure. MRI-Simmons conducts more than 30,000 personal interviews annually to gather information and is used by more than 450 advertising agencies as the basis for the majority of media and marketing campaigns in the U.S.

[11] comScore is a global internet information provider that leading companies and advertising agencies rely on for consumer behavior insight and internet usage data. comScore maintains a proprietary database of more than 2 million consumers who have given comScore permission to monitor their browsing and transaction behavior, including online and offline purchasing. comScore panelists also participate in survey research that captures and integrates consumer attitudes.

[12] See notes 2 and 3, *supra*.

[13] "Tech Usage Among Older Adults Skyrockets During Pandemic", AARP Press Room, April 21, 2021, https://press.aarp.org/2021-4-21-Tech-Usage-Among-Older-Adults-Skyrockets-During-Pandemic.

[14] Pew Research Center, Internet/Broadband Fact Sheet, April 7, 2021, https://www.pewresearch.org/internet/fact-sheet/internet-broadband/

8

1

2

- "Today around seven-in-ten Americans use social media to connect with one another, engage with news content, share information and entertain themselves."[15]

3

4

- "Latinos are using social media, mobile apps and other digital platforms at higher rates than the general U.S. population [following the start of the pandemic]."[16]

5

6

### Direct Notice

7

8

9

10

11

12

13

14

15

16

10.    Preference for Direct Notice.  Rule 23 requires the Court to direct to Class Members "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).  Class Members in the present litigation were all indirect purchasers.  A typical individual Class Member may have purchased a television or computer monitor from a retail store such as Best Buy or Costco.  Lists of the names and addresses of specific consumers who indirectly purchased CRT Products from 1995 to 2007 are not available to The Notice Company.  Nonetheless, given the fact that CRT televisions and computers were widely owned by personal and business consumers throughout this period, The Notice Company has used reasonable efforts to identify likely members of the Settlement Class in order to provide direct notice, as follows:

17

18

19

20

21

11.    Direct Notice to Claimants in the 2015 Settlements.  All persons and businesses who submitted indirect purchaser claims in the 2015 Settlements will be sent the Summary Notice (if sent by mail) or the Email Notice (if sent by email).  This includes claimants who (a) already submitted claims before or after the applicable claim submissions deadlines and (b) submitted claims regardless of whether or not those claims were determined to be eligible under the terms of the 2015 Settlements.

22

23

24

25

26

[15] Pew Research Center, Social Media Fact Sheet, April 7, 2021, https://www.pewresearch.org/internet/fact-sheet/social-media/

27

28

[16] "Latinos rely more on social media as a coronavirus lifeline, Nielsen report finds", NBC News, April 6, 2020, https://www.nbcnews.com/news/latino/latinos-rely-more-social-media-coronavirus-lifeline-nielsen-report-finds-n1235968.

9

1  These notices will be sent by email to all claimants with a known email address and by mail to all

2  other claimants.[17]

3      12.     Direct Notice to Persons with Interests in the Litigation.  The Notice Company will

4  send the Summary Notice or Email Notice to third-party claim submission companies that contacted

5  The Notice Company in connection with the 2015 Settlements and to persons identified by Class

6  Counsel who may have requested to be updated about this litigation.

7      13.     Direct Notice by Mail: Compiled Lists of Businesses and Organizations.  The Notice

8  Company has compiled the following lists of names and addresses for businesses and organizations

9  that are likely members of the Settlement Class, who likely purchased large quantities of CRT

10  televisions and/or computer monitors during the relevant period:

11          (a)     Every Fortune 500 Company for each year from 1995 to 2007;

12          (b)     400 largest Private Colleges and Universities in the United States located in the

13      31 Jurisdictions identified above;

14          (c)     665 largest Private Schools (secondary schools) in the United States located in

15      the 31 Jurisdictions identified above; and

16          (d)     52 largest Hospitals in the United States (not owned by any federal, state or

17      local governmental entity) located in the 31 Jurisdictions identified above.

18  The Notice Company proposes to send, by mail or email, the Summary Notice or Email Notice to each

19  entity on the list.

20      14.     Direct Notice by Email: List of Small Businesses.  In order to broaden the reach of

21  direct notice to encompass smaller businesses that may qualify under the Settlement to file a claim,

22  The Notice Company has identified a list of email addresses for small business owners (businesses

23  typically ranging from five to twenty-five employees) who will be sent the Email Notice.  The Notice

24  Company has narrowed the list to approximately 673,041 small businesses located in the 31

25

26  _____

27  [17] For claims submitted by third-party representatives on behalf of class members, such as by legal
counsel or by claim-submission companies, notice will be sent to such third-party representatives with
instructions to notify their clients.

28

DECLARATION OF JOSEPH M. FISHER RE: NOTICE PROGRAM – CLASS ACTION SETTLEMENT WITH
MITSUBISHI ELECTRIC CORPORATION, Case No. 17-cv-04067-JST; Master File No. 07-cv-05944-JST

Jurisdictions covered by the Mitsubishi Electric Settlement.[18] These are all opt-in email addresses, CAN-SPAM compliant,[19] which means that the companies have consented to the use of their emails by third parties.

15.     <u>Direct Notice by Email: List of Consumers</u>.  In order to reach individual consumers who may qualify to file a claim as members of the Settlement Class, The Notice Company has identified a list of email addresses for individual consumers who will be sent the Email Notice. The Notice Company has narrowed the list to approximately 13.7 million emails of nationwide consumers aged 30 and older with a high interest in computers, consumer electronics, and televisions. These are all opt-in email addresses, CAN-SPAM compliant.

16.     <u>Total Direct Notice</u>. Combined mail and email distribution of notice is expected to be sent to more than 14 million individual consumers and businesses.

<b><u>Digital Media</u></b>

17.     <u>Focus on Digital Media</u>. Digital media is digitized content that is transmitted via the internet or over computerized networks and mobile devices. Ads will be served across Google Display Network, Yahoo!, Facebook, YouTube, LinkedIn, and AARP. Ads will include a mix of segments that will target Class Members. Segmentation will include:

- Demographic Targeting
    - o   Targeting individuals that share demographic traits of our Target Audience such as age and ownership of a television or computer.
- Affinity Targeting
    - o   Targeting is determined by the user's behavior. This includes the types of websites they have visited and content they have consumed. Using the advanced algorithm of Google,

---

[18] Purchases made in Missouri, Montana and Rhode Island are limited to personal, family, or household purposes. However, notice to businesses located in those states is still appropriate since the businesses may have purchased CRT Products in other states which qualify under the Settlement (for example, a business located in Rhode Island making purchases in Massachusetts).

[19] CAN-SPAM Act is a law that sets the rules for commercial email, establishes requirements for commercial messages, gives recipients the right to have you stop emailing them, and spells out penalties for violations.

1             we can target specific audience categories that include electronics such as televisions

2             and computers.

3      -   Contextual Targeting

4           o   Users that visit a web page that has key terms such as "Cathode Ray Tube" and/or

5             words related to televisions, computers and other relevant electronics, we can serve

6             notice while they browse the sites content.

7      -   Interest-Based Targeting

8           o   Across social media channels, individuals that "like" content related to consumer

9             electronics, for example, can be segmented and served notice.

10     -   Engagement Targeting

11          o   Individuals that have interacted, liked, shared or commented on content related to

12            consumer electronics, for example, can be segmented and served notice.

13     -   Individuals who utilize either English or Hispanic websites.

14     -   Individuals on both desktop and mobile devices.

15        18.    <u>Google and Yahoo!</u> Across the display advertising networks (Google and Yahoo!) ads

16   will appear on high-performing sites that the demographic research has revealed the Target Audience

17   visits often, as well as alongside content that is relevant to the litigation. These sites may include the

18   following: Cnet.com, PCmag.com, USAToday.com, ESPN.com, Weather.com, WebMD.com,

19   CNN.com, FoxNews.com, USAToday.com, Univision.com, and many others. An estimated 254

20   million impressions will be served across the ad networks.

21        19.    <u>Facebook</u>. In the U.S. around seven-in-ten adults are Facebook users[20], which provides

22   an opportunity to reach a broad audience across a large footprint. Social media encourages users to

23   share content with their friends, which organically aides the reach of the notice and drives affected

24   individuals to the Settlement Website. Facebook ads will appear in a user's Newsfeed, along the right-

25   hand column, and include a short call to action and description, relevant imagery, and the Settlement

26

27

28   [20] https://www.pewresearch.org/fact-tank/2021/06/01/facts-about-americans-and-facebook/

Website that users can engage with, and click on, to learn more about the litigation. An estimated 127 million impressions will be served across these the social media platform.

20.   <u>LinkedIn</u>. LinkedIn is the largest professional and business networking website with 810 million members worldwide and approximately 185 million members in the United States.[21] An estimated 29 million impressions will be served across the platform.

21.   <u>YouTube</u>.  More adults in the US use YouTube than any other social network, with 81% of those on social media using YouTube.[22]  With such a wide and captive audience, YouTube provides an excellent opportunity to share class action notices to an engaged audience. An estimated 63 million impressions will be served across the platform using a mix of display and video.

22.   <u>AARP</u>. AARP.org has 20 million monthly unique visitors, with its network delivering 151 million monthly impressions.[23] AARP's visitor engagement is four-times higher than Forbes, Better Homes & Gardens, Everyday Health, and Travel + Leisure sites.[24] Visitors to AARP.org have a median age of 59 years, with 70% of viewers aged 50+. An estimated 754,000 impressions will be served across the platform.

23.   <u>Search Advertising</u>. Search-based advertising places notice in front of users that are actively researching a topic. Utilizing Google Ads, a select list of keywords will be developed that are relevant to the litigation. When a user enters those keywords into the Google search bar, a short descriptive notice may appear above the results that would direct users to the Settlement Website.

### **Print Media**

24.   <u>Summary of Paid Print Media</u>.  The notice program has shifted toward a greater emphasis on digital media and a reduced use of print media. There has been a "pronounced shift from

---

[21] https://www.omnicoreagency.com/linkedin-statistics/ (April 15, 2022).

[22] Pew Research Center, Social Media Use in 2021, April 7, 2021, https://www.pewresearch.org/internet/2021/04/07/social-media-use-in-2021/

[23] https://www.mediapost.com/publications/article/373806/aarp-makes-case-for-older-audiences.html.

[24] comScore Jan-Jun2020.

print to digital", with newspaper circulation falling by more than 55% from 2000 to 2020.[25]  The recent pandemic exacerbated the decline of print media.[26]  After a review of print titles that performed well against the Target Audience and cross referenced with each magazine's demography, cost per insertion, and publication schedule, The Notice Company determined that *People* magazine and *Readers Digest* will provide the best opportunity to reach the intended audience in a cost-effective manner.

25.     *People* Magazine. *People* magazine has a circulation of approximately 2.5 million and an estimated readership of 23.5 million.[27]  The median age of readers is 49 years old, with 73% of readers aged 35+.[28]

26.     *Reader's Digest*. *Reader's Digest* has a circulation of 3 million and an audience of 13.1 million, with 88% of its readers aged 35+.[29]  The median age of its readers is reported at 53.5 years.[30]

## Additional Notice

27.     Settlement Website.  The central focus of the online Notice Program will be the informational, interactive Settlement Website to be established at *www.CRTclaims.com*.  The website will be accessible to members of the Settlement Class and will include copies of the Summary Notice, the Detailed Notice, and relevant Court documents; and will provide answers to frequently asked questions, as well as a toll-free phone number for class members to call for additional information.

---

[25] "Internet Crushes Traditional Media: From Print to Digital: Service Annual Survey Shows Continuing Decline in Print Publishing Revenue", U.S. Census Bureau, June 7, 2022, https://www.census.gov/library/stories/2022/06/internet-crushes-traditional-media.html

[26] "Newspapers Have Been Struggling And Then Came The Pandemic", *Forbes*, August 20, 2021, https://www.forbes.com/sites/bradadgate/2021/08/20/newspapers-have-been-struggling-and-then-came-the-pandemic/

[27] The 2022 Media Kit for *People* shows a circulation of 3.4 million with a readership of 32 million. "Circulation" refers to the number of copies of each issue distributed to the public. "Readership" or "audience" captures pass-along readers and refers to the number of people who read each magazine copy. In mid-2022 *People*'s publisher, Dotdash Meredith, informed advertisers that magazine circulation had been reduced from 3.4 million to 2.5 million. See *New York Post* article at https://nypost.com/2022/05/16/peoples-print-magazine-faces-closure-sources/. Assuming that the relationship between readership and circulation remains at approximately 9.4-to-1, *People*'s readership would be 23.5 million.

[28] 2022 Media Kit for *People*.

[29] 2022 Media Kit for *Reader's Digest*.

[30] See https://lists.data-axle.com/market?page=research/datacard&id=355101.

Claimants will be able to complete the claims process online or they may elect to download a Claim Form and submit their claim by mail. Key dates will be posted on the "Dates to Remember" and the "Frequently Asked Questions" pages of the website, including the deadlines for opt outs, objections and claim submissions, as well as the date of the Fairness Hearing. The Settlement Website will also provide information in Spanish.

28.   <u>Press Release – English and Hispanic</u>.   A press release will be distributed across PR Newswire's US1 and Hispanic newslines to over 20,000 media contacts, to over 450 media contacts in the consumer electronics industry, and a message will be posted on PR Newswire's Twitter feed focused on consumer electronics. The press release will provide cost effective coverage across English, Hispanic, and consumer electronic channels and provide an opportunity to be "picked up" by media outlets.

29.   <u>Magazine eNewsletters</u>. A series of opt-in eNewsletters from magazines such as ***Better Homes & Gardens***, ***Family Handyman***, ***Golf Digest***, ***Southern Living***, and others index high among members of the Target Audience, meaning that the Target Audience is more likely to read those publications then the average adult. eNewsletters provide an excellent opportunity to get information about the litigation in front of potential class members as they check their emails each day.

30.   <u>Cable Television</u>. Approximately 65% or the Target Audience and 77% of adults 55+ are medium-to-heavy users of television. The Notice Program would include the following:

- Approximately 104 spots over a two-week period;
- A mix of 30-second and 60-second spots would run at different times throughout the day;
- Notices would run on networks such as FOX News Channel, MSNBC, Lifetime Movie, and others, to be determined on a programmatic basis;
- Exact schedule will be determined at the time of the media buy.

**SUMMARY OF NOTICE**

31.   <u>Reach and Frequency</u>. A media plan is often evaluated by its reach and frequency. Reach is the number or percent of persons expected to be exposed at least once to the notice. Frequency

15

DECLARATION OF JOSEPH M. FISHER RE: NOTICE PROGRAM – CLASS ACTION SETTLEMENT WITH MITSUBISHI ELECTRIC CORPORATION, Case No. 17-cv-04067-JST; Master File No. 07-cv-05944-JST

1  refers to the average number of times an individual is expected to be exposed to the notice.  The

2  proposed Notice Plan is designed to reach at least 85%, with a frequency of 3.04, of the Target

3  Audience across multiple channels.

4       32.   <u>Estimated Total</u>.  The estimated cost of the foregoing Notice Program is approximately

5  $900,000.

6       33.   <u>Best Notice Practicable</u>.  In my opinion, the foregoing Notice Program constitutes the

7  best notice practicable under the circumstances and complies fully with the requirements of Rule 23

8  of the Federal Rules of Civil Procedure.

9  **CLAIMS ADMINISTRATION**

10       34.   <u>Additional Claims</u>. The proposed notice program is expected to generate claims from

11  the following categories of claimants: (A) claimants who amend their previously-filed claims, based

12  primarily on purchases made in any of the nine states (the "New States") that were not included in

13  the settlement class for the Prior Settlements, (B) claimants who submit claims for the first time for

14  purchases made in any of the New States, and (C) claimants who would have qualified to submit

15  claims in the Prior Settlements but did not and now submit claims for the first time. Based on prior

16  claims experience and the relative populations of the states involved, I expect an estimated total of

17  75,000 claims to be submitted. This number of claims is in addition to the approximately 150,000

18  End-User claims submitted in the Prior Settlements that will automatically be included in the

19  proposed Settlement with Mitsubishi.

20       35.   <u>Estimated Costs of Administration</u>. Claims administration, including online claims

21  filings, claimant support and communications, reporting and project management, are estimated to

22  total approximately $500,000 to $950,000 for the Mitsubishi settlement.

23       I declare under penalty of perjury that the foregoing is true and correct to the best of my

24  knowledge.

25       Executed at Hingham, Massachusetts, this 18th day of August, 2022.

26

27  _____

    JOSEPH M. FISHER

28

16

**DECLARATION OF JOSEPH M. FISHER**

**EXHIBIT A**

*The Notice Company, Inc.*

94 Station Street, Hingham, MA 02043

---

www.notice.com      classact@notice.com      (888) 870-9530      (781) 740-1900      fax (781) 836-4297

August 18, 2022

## <u>Summary of Experience and Expertise</u>

The Notice Company provides notice and administrative services in connection with class action and collective action lawsuits pending in state and federal courts around the United States. Our services include the dissemination of notices of pendency, settlement or judgment to class members by mail, email, online, social media and print publication. We manage the updating of address information, handle exclusion requests and objections, administer the claims process, facilitate class communications, distribute approved payments to class members, and implement ***cy pres*** programs.

Over the years, The Notice Company has developed and implemented notice programs and served as settlement administrator in a wide variety of cases with class membership sizes ranging from a few hundred to many millions.  Our cases include the following:

### <u>Federal Courts</u>

* *Abasi v. HCA-The Health Care Company, Inc.* (C.D. CA)
* *Alani v. FC Harris Pavilion Apartments Limited Partnership* (N.D. CA)
* *Aramburu v. Healthcare Financial Services, Inc.* (E.D. NY)
* *Brenner v. I.C. System, Inc.* (D. CT)
* *Brewer v. Village of Old Field* (E.D. NY)
* *Cagler v. Papa John's USA, Inc.* (W.D. NC)
* *In Re: Cathode Ray Tube (CRT) Antitrust Litigation* (N.D. CA)
* *In Re: Chi-Chi's, Inc.* (Bankr. D. DE)
* *In Re: Chocolate Confectionary Antitrust Litigation* (E.D. PA)
* *Coco v. Village of Belle Terre* (E.D. NY)
* *Dixon v. Hibbett Sporting Goods, Inc.* (N.D. MS)
* *Duronslet v. Transworld Systems, Inc.* (C.D. CA)
* *EEOC v. Cintas Corp.* (E.D. MI)
* *Fainbrun v. Chex Systems, Inc.* (E.D. NY)
* *Fasten v. Dun & Bradstreet Receivable Management Services, Inc.* (E.D. NY)
* *Hurwitz v. Ameriquest Recovery Services, LLC* (E.D. NY)
* *Knott v. Dollar Tree Stores, Inc.* (N.D. AL)
* *McCarthy v. Exterra Credit Recovery, Inc.* (S.D. NY)
* *McClain, et al., v. Morning Star, LLC* (W.D. NC)
* *McKenzie Law Firm, P.A. v. Ruby Receptionists, Inc.* (D. OR)
* *Moore v. Sank* (D. CT)
* *In re OSB Antitrust Litigation* (E.D. PA)
* *In re Risk Management Alternatives, Inc. Fair Debt Collection Practices Act Litigation* (S.D. NY)
* *Rowell v. Voortman Cookies, Ltd* (N.D. IL)



*Notice.com*

\* *Segelnick v. Risk Management Alternatives, Inc.* (E.D. NY)
\* *Shimada v. Dun & Bradstreet* (C.D. CA)
\* *Vega v. CBE Group, Inc.* (E.D. NY)
\* *Weber v. Saint John's Health Center* (C.D. CA)
\* *Weiss v. Regal Collections* (D. NJ)
\* *Wood v. Village of Patchogue* (E.D. NY)

<u>State Courts</u>

\* *Adams & Associates, P.C. v. Helena's Adventures In Travel, Inc.*
       (Oklahoma County, OK)
\* *Aron v. U-Haul Co. of California & U-Haul International, Inc.*
       (Los Angeles County, CA)
\* *Baker v. Lvovskiy d/b/a Quiznos Subshop* (Suffolk County, MA)
\* *Beck v. Point Loma Patients Consumer Cooperative Corporation*
       (San Diego County, CA)
\* *Bellotti v. Smiley Brothers, Inc. d/b/a Mohonk Mountain House*
       (Ulster County, NY)
\* *Branch v. Princeton Park Homes, Inc.* (Cook County, IL)
\* *Boccia v. U.B. Vehicle Leasing, Inc.* (Miami-Dade, FL)
\* *Bonilla v. Starwood Hotels & Resorts Worldwide* (Los Angeles, CA)
\* *Busse v. Motorola, Inc.* (Cook County, IL)
\* *Calhoun v. Crossroads Hospitality, Inc.* (Cook County, IL)
\* *Coulson v. Waldrep* (Los Angeles, CA)
\* *Cuehlo v HNK, Sato v Genki Sushi USA* (1st Cir., HI)
\* *Fay v. The Wackenhut Corporation* (San Mateo County, CA)
\* *Fisher v. East Lake Management Group, Inc.* (Cook County, IL)
\* *Foster v. Friendly Ice Cream Corporation* (Middlesex County, MA)
\* *Friedman v. Samsung Electronics America, Inc.* (Bergen County, NJ)
\* *Gabiola v. S.R.O. Operating Company, LLC* (Cook County, IL)
\* *Gray v. Board of Education of The Township Of Hamilton, Mercer County*
       (Mercer County, NJ)
\* *Haney v. The Pinnacle Condominium Association, Inc.* (Miami-Dade, FL)
\* *Hill v. Hispanic Housing Development Corporation* (Cook County, IL)
\* *Hubbs v. Red Robin International, Inc.* (Greene County, MO)
\* *Johnson v. BH Management Services, LLC* (DuPage County, IL)
\* *Johnson v. Houlihan's Restaurants, Inc.* (Kane County, IL)
\* *Johnson v. RPH Management, Inc. d/b/a McDonald's Restaurant*
       (Tuscaloosa County, AL)
\* *Karbelashvili v. Extreme Learning, Inc.* (Santa Clara County, CA)
\* *Ketch, Inc. v. Royal Windows, Inc.* (Oklahoma County, OK)
\* *Kinoshita v. Makena Hawaii, Inc.* (1st Cir., HI)
\* *Kong v. Nova Cellular Co.* (Cook County, IL)
\* *Lajqi v. Bar Taco Port Chester, LLC* (Westchester County, NY)
\* *Liik v. New Jersey Civil Service Commission* (Mercer County, NJ)
\* *Lucca v. Delops, Inc., d/b/a D'Angelo's Sandwich Shops* (Bristol County, MA)
\* *Mavrikis v. MDwise Marketplace, Inc.* (Marion County, IN)
\* *McAuliffe v. Bay State Gas Co.* (Plymouth County, MA)
\* *Milex Electronics, Inc. v. Pitney Bowes Credit Corp.* (Suffolk County, NY)
\* *MLC Mortgage Corp. v. Extol Mortgage Services, Inc.* (Oklahoma County, OK)
\* *Novak v. Pacific Bioscience Laboratories, Inc.,* (Los Angeles County, CA)



*Notice.com*

* *Padron v. Universal Protection Services, Inc.* (Orange County, CA)
* *Palomino v. Shop-Vac Corporation* (Bergen County, NJ)
* *Parker v. Water Tower Realty Management Company* (Cook County, IL)
* *Patterson v. JKLM, Inc. d/b/a McDonalds* (Rock Island County, IL)
* *Plum v. Bayer A.G.* (Seminole County, FL)
* *Prescott v. GMRI, Inc. d/b/a The Olive Garden Italian Restaurant* (Cumberland County, NC)
* *Rovner v. Forest City Residential Management, Inc.* (Cook County, IL)
* *Sarris v. Akzo Nobel Car Refinishes B.V.* (Essex County, MA)
* *Schwab v. America Online, Inc.* (Cook County, IL)
* *Sells v. Boyland Auto Orlando, LLC, d/b/a Mercedes Benz of South Orlando* (Orange County, FL)
* *Serrano v. Woodrow Wilson Gaitor* (Hartford Judicial District, CT)
* *Shalman v. World Real Estate* (Cook County, IL)
* *Shorb v. Draper & Goldberg, PLLC* (Frederick County, MD)
* *Snuffer v. Wal-Mart Stores, Inc.* (Raleigh County, WV)
* *Springer v. State of New York* (Court of Claims, NY)
* *Stein v. The Lorali Company* (Cook County, IL)
* *Summer v. Toshiba America Consumer Products, Inc.* (Bergen County, NJ)
* *Turner v. Heartland Housing, Inc.* (Cook County, IL)
* *Wasulko v. eRentPayment*, LLC (Larimer County, CO)
* *Welch v. Jascor, Inc., d/b/a McDonald's Restaurant* (Seneca County, NY)
* *Werkmeister v. Hardee's Restaurants, LLC* (Spartanburg County, SC)
* *White v. East Lake Management Group, Inc.* (Cook County, IL)
* *Williams v. Williamsbridge Restaurant Inc. d/b/a New Hawaii Sea Restaurant* (Bronx County, NY)
* *Zimmerman v. Michigan Avenue Hotel, LLC*  (Cook County, IL)
* *Zmucki v. Extreme Learning, Inc.* (Santa Clara County, CA)

**DECLARATION OF JOSEPH M. FISHER**

**EXHIBIT B**

U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA

# If You Bought a Cathode Ray Tube (CRT) or a TV or Computer Monitor That Contained a CRT
## *You Could Get Money from a $33 Million Settlement.*

*A Federal Court authorized this notice. This is not a solicitation from a lawyer.*

## PLEASE READ THIS NOTICE CAREFULLY. YOUR LEGAL RIGHTS MAY BE AFFECTED WHETHER OR NOT YOU ACT.

- This is the fifth legal notice in this litigation involving alleged overcharges on the price of Cathode Ray Tube ("CRT") Products purchased indirectly from the Defendants. **A $33 million settlement has been reached with Mitsubishi Electric Corporation ("New Settlement").** This settlement is in addition to the previous nine settlements reached with Defendants Chunghwa, LG, Philips, Panasonic, Hitachi, Toshiba, Samsung SDI, Thomson, and Technologies Displays America (the "Prior Settlements").

- "CRT Products" include CRTs and products containing CRTs, such as televisions and computer monitors. "Indirectly" means that you purchased the CRT Product from someone other than the manufacturer of the CRT Product. For example, you bought a CRT television from a retailer, such as Best Buy, or a CRT monitor from Dell.

- You can make a claim for money if you indirectly purchased CRT Products, for your own use and not for resale, in Arizona, Arkansas, California, the District of Columbia, Florida, Hawaii, Iowa, Kansas, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, Rhode Island, South Carolina, South Dakota, Tennessee, Utah, Vermont, West Virginia or Wisconsin (the "Settlement Class"). The purchase must have been made in one of these states but you do not have to be a resident of these states. Purchases in Missouri, Montana and Rhode Island must have been made primarily for personal, family or household purposes.

- Purchasers in nine additional states are included in the New Settlement that were not included in the Prior Settlements. Those states are Arkansas, Massachusetts, Missouri, Montana, New Hampshire, Oregon, Rhode Island, South Carolina, and Utah.

- Sony Corporation is **not** a defendant and is **not** alleged to have participated in the conspiracy. Purchases of Sony® branded CRT Products are **not** eligible to be included in claims filed under the New Settlement. All other brands of CRT Products are eligible.

| YOUR LEGAL RIGHTS AND OPTIONS IN THE NEW SETTLEMENT | |
|---|---|
| **SUBMIT A CLAIM BY _____, 2023** | If you submitted a valid claim in the Prior Settlements and you do not submit a claim in the New Settlement, then your prior claim will automatically be submitted in the New Settlement. *See* Question 9 below. If you want to submit a claim for purchases of CRT Products that were **not** included in your valid claim in the Prior Settlements, you must submit a claim to receive a payment from the New Settlement. Your claim should include ALL eligible purchases of CRT Products including those you previously claimed in the Prior Settlements. |
| **OBJECT BY _____, 2023** | You can file an objection with the Court explaining why you disagree with the New Settlement, the plan of distribution, the requested attorneys' fees and litigation expenses, and/or the Class Representative awards. *See* Question 17. |
| **GO TO THE HEARING ON _____, 2023** | Ask to speak to the Court about the New Settlement. *See* Questions 18 and 20. |
| **EXCLUDE YOURSELF BY _____, 2023** | Excluding yourself from the Settlement Class is the only option that allows you to individually sue Mitsubishi Electric Corporation about the claims in this case. *See* Questions 12 and 13. |

VISIT www.CRTclaims.com OR CALL TOLL FREE 1-800-xxx-xxxx
PARA UNA NOTIFICACIÓN EN ESPAÑOL, VISITAR NUESTRO WEBSITE O LLAMAR

| | |
|---|---|
| **DO NOTHING** | If you submitted a valid claim in the Prior Settlements and you have no additional CRT Product purchases to claim, you need not do anything and your previously-submitted valid claim will automatically be submitted in the New Settlement.  If you did **not** submit a valid claim in the Prior Settlements, or if you have additional CRT Products not previously claimed, then you must submit a claim now. If you do nothing, then you will **not** receive payment from the New Settlement for CRT Products not previously claimed and you will give up any rights you currently have to separately sue Mitsubishi Electric for the conduct that is the subject of this litigation. |

These rights and options – **and the deadlines to exercise them** – are explained in this Notice.

2

VISIT www.CRTclaims.com OR CALL TOLL FREE 1-800-xxx-xxxx
PARA UNA NOTIFICACIÓN EN ESPAÑOL, VISITAR NUESTRO WEBSITE O LLAMAR

| WHAT THIS NOTICE CONTAINS | |
|---|---|

**BASIC INFORMATION** .................................................................................... Page 4
   1.  What is this Notice about?
   2.  What is a Cathode Ray Tube ("CRT")?
   3.  What is a CRT Product?
   4.  What is the lawsuit about?
   5.  What is a class action?

**WHO IS INCLUDED IN THE LAWSUIT** ....................................................... Page 6
   6.  Who are the Defendant and its alleged co-conspirators?
   7.  How do I know if I am in the Settlement Class?

**THE NEW SETTLEMENT'S BENEFITS** ....................................................... Page 7
   8.  What does the New Settlement provide?
   9.  How much money can I get?
   10.  When will I get a payment?

**HOW TO GET A PAYMENT** ....................................................................... Page 9
   11.  How can I get a payment?

**RIGHT TO EXCLUDE YOURSELF** ............................................................. Page 9
   12.  Do I have a right to exclude myself from the Settlement Class?
   13.  How do I exclude myself from the Settlement Class?

**REMAINING IN THE SETTLEMENT CLASS** ............................................. Page 10
   14.  What am I giving up if I stay in the Settlement Class?

**THE LAWYERS REPRESENTING YOU** ..................................................... Page 10
   15.  Do I have a lawyer representing me?
   16.  How will the lawyers be paid?

**OBJECTING OR COMMENTING ON THE NEW SETTLEMENT, PLAN OF DISTRIBUTION, ATTORNEYS' FEES AND LITIGATION EXPENSES, AND AWARDS TO CLASS REPRESENTATIVES** ................................. Page 11
   17.  How do I object or comment on the New Settlement?

**THE FAIRNESS HEARING** ....................................................................... Page 11
   18.  When and where will the Court consider the New Settlement, the plan of distribution, request for attorneys' fees and litigation expenses, and awards to Class Representatives?
   19.  Do I have to come to the hearing?
   20.  May I speak at the hearing?

**GET MORE INFORMATION** ..................................................................... Page 12
   21.  Where can I get more information?

3

## BASIC INFORMATION

### 1.  What is this Notice about?

This Notice is to inform you about a New Settlement that has been reached which may affect your rights, including your right  to  file  a  claim, object to, or exclude yourself from the New Settlement. You have the right to know about the New Settlement and about your legal rights and  options before the Court decides whether to approve the New Settlement.

**Settlement Class members are now eligible to file a claim to get a payment from the New Settlement (*see* Question 11).**

The Court in charge is the United States District Court for the Northern District of California. The case is called *In re: Cathode Ray Tube (CRT) Antitrust Litigation*, MDL No. 1917. The New Settlement relates to claims against Mitsubishi Electric Corporation i n  *Luscher, et al. v. Mitsubishi Electric Corp.,* Case No. 17-cv-04067-JST ("the Action").  The people and businesses that sued are called  the Plaintiffs, and the companies they sued are called the Defendants (*see* Question 6).

### 2.  What is a Cathode Ray Tube ("CRT")?

Cathode Ray Tubes ("CRTs") are a display technology that was widely used in televisions and computer monitors.  Before LCD, Plasma and LED display technologies became popular, CRTs were the main technology used in displays.  There are two main types of CRTs: Color Display Tubes ("CDTs" or "Monitor Tubes"), which were used to manufacture computer monitors, and Color Picture Tubes ("CPTs" or "TV Tubes"), which were used to manufacture televisions.  This is what a CRT looks like:



### 3. What is a CRT Product?

For the purposes of the lawsuit and the New Settlement, "CRT Products" means products containing Cathode Ray Tubes, such as televisions and computer monitors.  This is what a CRT Product looks like:

**CRT Monitor:**



**CRT Television:**



## 4. What is the lawsuit about?

The lawsuit claims that Mitsubishi Electric Corporation conspired with other CRT manufacturers to fix the prices of CRTs from March 1, 1995 to November 25, 2007, resulting in overcharges to people and businesses that bought CRT Products, such as televisions and computer monitors. Mitsubishi Electric and its alleged co-conspirators deny these claims. The Court has not decided who is right.

The Court previously approved settlements with Chunghwa Picture Tubes Ltd. on March 22, 2012, LG Electronics on April 18, 2014, and Philips, Panasonic, Hitachi, Toshiba, Samsung SDI, Thomson, and TDA on July 13, 2020. The total amount of these Prior Settlements is $547,750,000. The New Settlement with Mitsubishi Electric Corporation provides an additional $33,000,000. The Court still has to decide whether to approve the New Settlement. Based on IPP Counsel's experience and their knowledge of the law and the facts in this case, they believe the proposed New Settlement is fair and reasonable, and is in the best interests of class members.

## 5. What is a class action?

In a class action, one or more persons or businesses called class representatives sues on behalf of a group or

a "class" of others with similar claims. If the Court determines that a case should proceed as a class action, everyone's claims can be combined into a single proceeding, creating efficiencies for the parties and the courts. In a class action, the court resolves the issues for all class members except those who exclude themselves from the Class.

## WHO IS INCLUDED IN THE LAWSUIT?

### 6. Who are the Defendant and its alleged co-conspirators?

The "Defendant" is **Mitsubishi Electric Corporation**, a manufacturer and/or seller of CRTs.

The Defendant's alleged co-conspirators (the "Defendants" or "Alleged Co-Conspirators") are other CRT manufacturers that are alleged to have conspired with Defendant to fix CRT prices, and which Plaintiffs also sued:

- Chunghwa Picture Tubes Ltd.; Chunghwa Picture Tubes (Malaysia) SDN. BHD ("Chunghwa");

- LG Electronics Inc.; LG Electronics USA, Inc.; LG Electronics Taiwan Taipei Co., Ltd. ("LG");

- Koninklijke Philips N.V. (f/k/a Koninklijke Philips Electronics N.V.); Philips Electronics North America Corporation; Philips Taiwan Limited (f/k/a Philips Electronics Industries (Taiwan), Ltd.); Philips do Brasil, Ltda. (f/k/a Philips da Amazonia Industria Electronica Ltda.) (collectively "Philips");

- Panasonic Corporation (f/k/a Matsushita Electric Industrial Co., Ltd.); Panasonic Corporation of North America; MT Picture Display Co., Ltd.; and an affiliate of Panasonic Corporation, Beijing Matsushita Color CRT Co., Ltd. (collectively "Panasonic");

- Hitachi, Ltd.; Hitachi Displays, Ltd. (n/k/a Japan Display Inc.); Hitachi Electronic Devices (USA), Inc.; Hitachi Asia, Ltd.; Hitachi America, Ltd. ("Hitachi");

- Toshiba Corporation; Toshiba America Information Systems, Inc.; Toshiba America Consumer Products, L.L.C.; Toshiba America Electronic Components, Inc. ("Toshiba");

- Samsung SDI Co. Ltd; Samsung SDI America, Inc.; Samsung SDI Brasil, Ltda.; Tianjin Samsung SDI Co., Ltd.; Shenzhen Samsung SDI Co., Ltd; Samsung SDI Malaysia Sdn. Bhd; Samsung SDI Mexico S.A. de C.V. ("Samsung SDI");

- Technicolor SA (f/k/a Thomson SA); Technicolor USA, Inc. (f/k/a Thomson Consumer Electronics, Inc.) ("Thomson");

- Technologies Displays Americas LLC (f/k/a Thomson Americas LLC) ("TDA");

- LG.Philips Displays, a/k/a LP Displays International, Ltd.;

- IRICO Group Corporation; IRICO Display Devices Co., Ltd.; and IRICO Group Electronics Co., Ltd.;

- Thai CRT Company, Ltd.;

- Samtel Color, Ltd.;

- Orion Electric Company, Ltd.; and

- Videocon Industries, Ltd.

### 7. How do I know if I am in the Settlement Class?

The New Settlement has recovered money ("damages") for consumers who indirectly purchased CRT Products in 30 states and the District of Columbia (the "Settlement Class"). These states and the District of Columbia (together the "States") have antitrust and/or consumer protection laws permitting consumers to sue for damages for antitrust violations.

The "Settlement Class" includes:

- All persons or business entities who or which indirectly purchased in Arizona, Arkansas, California, District of Columbia, Florida, Hawaii, Iowa, Kansas, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, South Carolina, South Dakota, Tennessee, Utah, Vermont, West Virginia, and Wisconsin, for their own use and not for resale, CRTs or CRT Products manufactured or sold by the Defendant or any Alleged Co-Conspirator (listed in Question 6);
- All persons or business entities who or which indirectly purchased in Missouri or Montana, for their own use and not for resale, and primarily for personal, family, or household purposes, CRTs or CRT Products manufactured or sold by the Defendant or any Alleged Co-Conspirator (listed in Question 6);
- All natural persons who indirectly purchased in Rhode Island, for their own use and not for resale, and primarily for personal, family, or household purposes, CRTs or CRT Products manufactured or sold by the Defendant or any Alleged Co-Conspirator (listed in Question 6).

The purchase must have been made in one of the States.  You do not have to be a resident of one of the States to qualify as a member of the Settlement Class. Those who purchased CRTs or CRT Products for resale ("resellers") are **not** included in the Settlement Class.

IMPORTANT: The Settlement Class includes nine states that were not included in the settlement class for the Prior Settlements. The nine new states are: Arkansas, Massachusetts, Missouri, Montana, New Hampshire, Oregon, Rhode Island, South Carolina and Utah.

**The Class Period:** In order to bring a claim, you must have purchased the CRT Product(s) between March 1, 1995 and November 25, 2007.  However, Hawaii, Nebraska and Nevada have slightly shorter class periods.

- Purchases of CRT Products in Hawaii must have been made between June 25, 2002 and November 25, 2007.
- Purchases of CRT Products in Nebraska must have been made between July 20, 2002 and November 25, 2007.
- Purchases of CRT Products in Nevada must have been made between February 4, 1999 and November 25, 2007.

**Exclusions:**

- Specifically excluded from the Settlement Class are the Defendant; its officers, directors or employees; any entity in which the Defendant has a controlling interest; and, any of the Defendant's affiliates, legal representatives, heirs or assigns.
- Also excluded are the Alleged Co-Conspirators, any federal, state or local government entities, any judicial officer presiding over this action and members of his/her immediate family and judicial staff, and any juror assigned to this action.
- Sony Corporation is not a defendant and purchases of Sony® branded CRTs and CRT Products are excluded from the New Settlement.

The specific class definitions are available at www.CRTclaims.com.

## THE NEW SETTLEMENT'S BENEFITS

**8. What does the New Settlement provide?**

The  New Settlement provides that Mitsubishi Electric Corporation will pay Thirty Three Million Dollars ($33,000,000) to Plaintiffs in exchange for a release of the class claims against it. The New Settlement is being presented to the Court for approval. The Court has previously approved nine settlements totaling $547,750,000.

The Settlement Fund of $33,000,000 will be used to pay eligible claimants who purchased CRT Products in

the jurisdictions listed in Question 7 based on an allocation plan described in Question 9. Any interest earned on the Settlement Fund will be added to the Settlement Fund. The cost to administer the New Settlement as well as attorneys' fees, litigation expenses and payments to the Class Representatives will be paid from the Settlement Fund (*see* Question 16).

The Settlement Agreement and the papers filed in support of the New Settlement are available for review and download at www.CRTclaims.com, or you can request copies by calling 1-800-xxx-xxxx.

| 9. How much money can I get? |
| --- |

A plan has been submitted to the Court proposing a method for distributing the Settlement Fund to the Settlement Class Members.

- Settlement Class Members who submitted a valid claim in the Prior Settlements and do not submit a claim for additional CRT purchases in the New Settlement ("Prior Claimants") will be deemed to have filed a claim in the New Settlement without any further action taken by that claimant.

- If your claim in the Prior Settlements was denied, then it will not be automatically submitted in the New Settlement.

- If your claim in the Prior Settlements was only partially accepted, then your valid claim consists only of the accepted portion of your prior submission. Only valid claims from the Prior Settlements are automatically submitted in the New Settlement. For example, if you previously submitted a claim for six (6) CRT computer monitors and only four (4) monitors were accepted in the Prior Settlements, then only your valid claim for four (4) CRT computer monitors will be automatically submitted in the New Settlement.

- Reseller claims submitted in the Prior Settlements do not qualify; only end-user claims qualify to be submitted in the New Settlement.

- Settlement Class Members who submitted valid claims after the applicable claims deadlines passed for the Prior Settlements ("Late Claimants") will be treated the same as Prior Claimants for the purposes of the New Settlement.

- All other Class Members, including those who did not previously submit a claim in the Prior Settlements and those who did previously submit a claim and now want to claim for additional CRT purchases, should submit a claim in the New Settlement in order to receive their pro-rata share of the Settlement Fund.

- If you submit a claim for additional CRT purchases in the New Settlement, then your claim in the Prior Settlements will NOT be automatically submitted in the New Settlement. Any claim you submit in the New Settlement must include ALL of your qualifying CRT purchases: those previously claimed plus any additional purchases. Submitting a claim in the New Settlement will not replace or change your claim in the Prior Settlements.

As with the Prior Settlements, payments to claimants will be determined on an adjusted pro-rata basis. This means that payment amounts will be based on the number of valid claims filed and on the number and type of CRT Products purchased. Based on data obtained during the course of the litigation, claims for different types of CRT Products will be weighted as follows:

- Claims for purchases of Standard CPTs or CRT Televisions (screen size of less than 30 inches) will be weighted as 1 CRT unit;
- Claims for purchases of Large CPTs or CRT Televisions (screen size of 30 inches or larger) will be weighted as 4.3 CRT units; and
- Claims for purchases of CDTs or CRT Computer Monitors will be weighted as 3 CRT units.

Each new claim will be assigned a weighted CRT unit count based on the types of CRT Products purchased, as described above. For example, a Settlement Class Member that purchased two Standard CRT televisions (2 x 1 CRT unit) and one CRT monitor (3 CRT units) would have five CRT units (2 + 3 = 5). A Settlement Class Member that purchased five CRT monitors (5 x 3 = 15 CRT units) and two Large CRT televisions (4.3 x 2 = 8.6 CRT

units) would have 23.6 CRT units (15 + 8.6 = 23.6). This is the same methodology approved by the Court for the Prior Settlements.

At this time, it is unknown exactly how much money each Settlement Class Member will recover because it will depend on how many valid claims are submitted. It is expected that a minimum payment of $10 will be made to all Class Members who submit a valid claim, including claims that are simply carried over from the Prior Settlements.

The maximum payment will be three times the estimated money damages for each claimant, subject to a $10 minimum payment. The plan of distribution is subject to final Court approval and it is possible that the Court may order changes to the plan of distribution. Any changes to the plan of distribution may result in changes to the amount you ultimately receive from the New Settlement. Please continue to check the website for information about changes to the plan of distribution.

More details about the anticipated distribution of the Settlement Fund are available in the papers filed with the Court in support of settlement approval, which are available on the settlement website, www.CRTclaims.com.

The Claim Form provides additional details on how to submit a claim. Further information is available at www.CRTclaims.com or by calling 1-800-xxx-xxxx.

| **10. When will I get a payment?** |
| --- |

Payments will be distributed after the Court grants final approval to the New Settlement and after any appeals are resolved. If the Court approves the New Settlement after the hearing on **xxxxxx, 2023**, there may be appeals. We do not know how much time it could take to resolve any appeals that may be filed.

## HOW TO GET A PAYMENT

| **11. How can I get a payment?** |
| --- |

If you (i) are a member of the Settlement Class; (ii) did not submit a claim in connection with the Prior Settlements **or** did make a claim in connection with the Prior Settlements but want to make a new claim based on additional purchases of CRT Products not included in your original claim (for example, purchases you made in states not included in the Prior Settlements), you must complete and submit a Claim Form. We strongly encourage you to submit a claim online at www.CRTclaims.com because it reduces administrative costs, leaving more money for distribution to class members. If you do not file online, you can submit a claim by mail.

If you submitted a valid claim in connection with the Prior Settlements and you do not submit a claim in the New Settlement, then your valid claim in the Prior Settlements will be automatically submitted in the New Settlement without further action by you. *See* Question 9 above. Late Claims submitted after the deadline for the Prior Settlements but which are otherwise valid are considered a "valid claim" for the purposes of the New Settlement and need not be resubmitted unless you wish to submit a claim for additional purchases of CRT Products.

The Claim Form can be found and completed or downloaded at www.CRTclaims.com, or you can obtain a copy by calling, toll free, 1-800-xxx-xxxx. If you choose to submit your claim online, you must do so on or before **xxxxx, 2023**. If you choose to submit a Claim Form by mail, it must be postmarked by **xxxxx, 2023**, and mailed to:

CRT Claims
c/o The Notice Company
P.O. Box 778
Hingham, MA 02043

## RIGHT TO EXCLUDE YOURSELF

| **12. Do I have a right to exclude myself from the Settlement Class?** |
| --- |

Yes. If you are a Settlement Class Member and you wish to keep your right to sue Mitsubishi Electric Corporation

about the claims alleged and settled in this case (*see* Questions 4 and 7), you must exclude yourself from the Settlement Class.  You will not get any money from the New Settlement if you exclude yourself. You may not submit a Claim Form if you exclude yourself from the New Settlement. Requests for exclusion from the Settlement Class in the New Settlement will not result in exclusion from the Prior Settlements.

---

**13. How do I exclude myself from the Settlement Class?**

---

If you choose to exclude yourself from the Settlement Class in the New Settlement and keep your right to sue Mitsubishi Electric Corporation on your own, you must send a letter that includes the following:

- Your name, address and telephone number;
- A statement saying that you request exclusion from the Settlement Class and do not wish to participate in the settlement with Mitsubishi Electric Corporation in *Luscher, et al. v. Mitsubishi Electric Corp.*, Case No. 17-cv-04067-JST; and
- Your signature.

You must mail your exclusion request, postmarked no later than **xxxxx, 2031,** to:

CRT Indirect Exclusions
c/o The Notice Company
P.O. Box 778
Hingham, MA 02043

## REMAINING IN THE SETTLEMENT CLASS

---

**14. What am I giving up if I stay in the Settlement Class?**

---

If you do not exclude yourself from the Settlement Class, you will have given up your right to sue Mitsubishi Electric Corporation on your own  for the claims alleged and settled in this case (*see* Questions 4  and 7) and you will be bound by the New Settlement and all subsequent proceedings, orders and judgments in this lawsuit.  In consideration of the Settlement Amount (*see* Question 8), Settlement Class members will release Mitsubishi Electric Corporation (and certain related entities defined in the Settlement Agreement) from all claims arising under any federal law or under the laws of any of the 30 States or the District of Columbia relating to the facts underlying the  Action, as more fully described in the Settlement Agreement.

The  Settlement Agreement describes the released claims in detail, so read it carefully since the Settlement Agreement is binding on you. If you have any questions, you may call the toll-free number, **1-800-xxx-xxxx**, and speak to the Settlement Administrator for free. You may also consult your own lawyer at your own expense. The Settlement Agreement and the specific release are available at  www.CRTclaims.com.

## THE LAWYERS REPRESENTING YOU

---

**15. Do I have a lawyer representing me?**

---

The Court has appointed Trump, Alioto, Trump & Prescott LLP, 2001 Union Street, Suite 482, San Francisco, CA 94123, to represent you as "Class Counsel" for the Settlement Class. You do not have to pay Class Counsel separately. Class Counsel will seek compensation by asking the Court for a share of the settlement proceeds. If you want to be represented by your own lawyer, and have that lawyer appear in court for you in this case, you may hire one at your own expense.

---

**16. How will the lawyers be paid?**

---

Class Counsel will ask the Court for attorneys' fees based on their work on this litigation in the amount of one-third of the $33,000,000 Settlement Fund ($11,000,000), plus reimbursement of their litigation expenses. Class

Counsel will also request awards of $2,000 to each of the Class Representatives who helped the lawyers on behalf of the Classes. Any payment to the attorneys or the Class Representatives will be subject to Court approval, and the Court may award less than the requested amount. Any award of attorneys' fees, litigation expenses and Class Representative awards that the Court orders, plus the costs to administer the Settlements, will come out of the Settlement Fund and are subject to Court approval.

The attorneys' motion for fees, litigation expenses and Class Representative awards will be filed on or before **xxxxx, 2023**. The motion will be posted on the website at www.CRTclaims.com.

### OBJECTING T O OR COMMENTING ON THE NEW SETTLEMENT, PLAN OF DISTRIBUTION, ATTORNEYS' FEES AND LITIGATION EXPENSES, AND AWARDS TO CLASS REPRESENTATIVES

| **17. How do I object or comment on the New Settlement?** |
|---|

You can ask the Court to deny approval by filing an objection to the New Settlement. You cannot ask the Court to order a different settlement; the Court can only approve or reject the Settlement. If the Court denies approval, no settlement payments will be sent out and the lawsuit will continue. If that is what you want to happen, you must object.

If you decide to object to the New Settlement, you must do so in writing. The written objection must include the following information:

- Your name, address, telephone number, and if you are being assisted by a lawyer, their name, address and telephone number;
- The Action name and number (*Luscher, et al. v. Mitsubishi Electric Corp.*, Case No. 17-cv-04067-JST, MDL No. 1917);
- Proof of membership in the class;
- A brief but specific explanation of your reasons for objecting; and
- Your signature.

The objection must be submitted to the Court either by mailing it to the Class Action Clerk at the address below, or by filing it in person at any location of the United States District Court for the Northern District of California. **The objection must be filed with the Court or postmarked on or before xxxxx, 2023:**

| **COURT** |
|---|
| Class Action Clerk<br>United States District Court for the<br>Northern District of California<br>1301 Clay Street, Suite 400 S<br>Oakland, CA 94612 |

## THE FAIRNESS HEARING

| **18. When and where will the Court consider the New Settlement, the plan of distribution, request for attorneys' fees and litigation expenses, and awards to Class Representatives?** |
|---|

The Court is scheduled to hold a Fairness Hearing to consider the New Settlement at **xx:xx p.m**. on **xxxxx, 2023**, at the United States District Court for the Northern District of California, Courtroom 6, 2nd Floor, 1301 Clay Street, Oakland, CA 94612. The hearing may be conducted in person or it may be conducted

using a video-conferencing technology. The hearing may be moved to a different date or time without additional notice, so you should check the website www.CRTclaims.com for current information.

At this hearing the Court will consider whether the New Settlement is fair, reasonable, and adequate. The Court will also consider the plan of distribution, and the requests for attorneys' fees, litigation expenses and awards to Class Representatives. If there are objections or comments, the Court will consider them at this time. After the hearing, the Court will decide whether to approve the New Settlement, the plan of distribution and the requests for attorneys' fees, litigation expenses and awards to Class Representatives. We do not know how long these decisions will take.

## 19. Do I have to come to the hearing?

No. Class Counsel will answer any questions the Court may have. But you are welcome to come at your own expense. If you file a timely written objection, you may, but are not required to, appear at the Final Approval Hearing, either in person or through your own attorney. If you appear through your own attorney, you are responsible for hiring and paying that attorney. If you file an objection or comment, you do not have to come to Court to talk about it. As long as you filed your written objection on time, your objection will be presented to the Court for its consideration.

## 20. May I speak at the hearing?

You may ask the Court for permission to speak at the Fairness Hearing. To do so, you must file a "Notice of Intent to Appear in *In re: Cathode Ray Tube (CRT) Antitrust Litigation*, MDL No. 1917." Be sure to include your name, address, telephone number and your signature. Your Notice of Intent to Appear must be submitted to the Court either by mailing it to the Class Action Clerk at the address in Question 17, or by filing it in person at any location of the United States District Court for the Northern District of California no later than **xxxxx, 2023**. You cannot speak at the hearing if you excluded yourself from the Settlement Class.

>>   **If the hearing is conducted virtually, instructions for attending the hearing via Zoom will be available on the Court's web page: https://cand.uscourts.gov/judges/tigar-jon-s-jst/.**

## GET MORE INFORMATION

## 21. Where can I get more information?

This notice summarizes the New Settlement. For the precise terms and conditions of the New Settlement, please see the Settlement Agreement available at **www.CRTclaims.com**. We encourage you to check this website regularly for developments in this case. You can also get more information about the settlements in the litigation by:

- Calling 1-800-xxx-xxxx;
- Writing to CRT Questions, c/o The Notice Company, P.O. Box 778, Hingham, MA 02043;
- Accessing the Court docket in this case through the Court's Public Access to Court Electronic Records (PACER) system at https://ecf.cand.uscourts.gov; or
- Visiting the office of the Clerk of the Court for the United States District Court for the Northern District of California, 1301 Clay Street, Suite 400 S, Oakland, CA 94612, between 9:00 a.m. and 4:00 p.m., Monday through Friday, excluding Court holidays.

### ALL INQUIRIES CONCERNING THIS NOTICE
### SHOULD BE MADE TO THE SETTLEMENT ADMINISTRATOR

### PLEASE DO NOT TELEPHONE THE COURT OR THE COURT CLERK'S OFFICE

**DECLARATION OF JOSEPH M. FISHER**

**EXHIBIT C**

# If You Bought Cathode Ray Tubes
# or
# Products containing Cathode Ray Tubes

# Get Money from $33 Million Settlement

# Simple Online Claim Form Takes 3-5 Minutes

A class action Settlement has been reached with Mitsubishi Electric Corporation involving **Cathode Ray Tubes ("CRTs")**, a display device that was the main component in TVs and computer monitors. The lawsuit claims that Mitsubishi Electric conspired with other CRT manufacturers to fix the prices of CRTs, causing consumers to pay more for CRTs and products containing CRTs, such as TVs and computer monitors ("CRT Products").

## Who is included in the Settlement?

Individuals and businesses who or which:

- Indirectly purchased a CRT Product, such as a CRT television or CRT computer monitor, in AZ, AR, CA, FL, HI, IA, KS, MA, ME, MI, MN, MO, MS, MT, NE, NH, NV, NM, NY, NC, ND, OR, RI, SC, SD, TN, UT, VT, WV, WI, or the District of Columbia between March 1, 1995 and November 25, 2007 (HI, NE and NV have shorter claim periods);
- For their own use and not for resale.

Purchases in MO, MT and RI must have been made primarily for personal, family, or household purposes. Indirectly purchased means you purchased any brand of CRT Product (except Sony) from someone other than the manufacturer of the CRT Product, such as a retailer like Best Buy or Costco. Purchases made directly from Mitsubishi Electric or an alleged co-conspirator are not included (alleged co-conspirators are listed at **www.CRTclaims.com** or by calling 1-800-xxx-xxxx).

## What does the Settlement provide?

Mitsubishi Electric has agreed to pay $33 million to settle the claims against it. Qualifying individuals and businesses that purchased CRT Products in the above-listed states are eligible to file a claim. You must have purchased in one of those states, but you do not have to be a resident of one of those states.

The amount of money you will receive depends on the type and quantity of CRT Products you purchased and the total number of claims made. Eligible claimants are expected to receive a minimum payment of $10. More information is available at **www.CRTclaims.com** or by calling 1-800-xxx-xxxx.

## How can I get a payment?

Claim online or by mail by **XXXX xx, 2023.** The simple online Claim Form only takes 3-5 minutes for most individuals. If you previously submitted a valid claim as an end user for indirect purchases of CRT Products in related prior settlements (*In re: Cathode Ray Tube (CRT) Antitrust Litigation*, MDL No. 1917 (N.D. CA)), you do not have to resubmit your claim to benefit from this Settlement unless you have additional purchases to claim.

## What are my rights?

If you do nothing, you will be bound by the Court's decisions.  If you want to keep your right to sue Mitsubishi Electric, you must send a written request to the Class Administrator for exclusion from the Settlement Class by **XXXX xx, 2023.** The Court will exclude any class member who timely requests exclusion. If you stay in the Settlement Class, you may object to the Settlement by **XXXX xx, 2022.**

The Court will hold a hearing on **XXXX xx, 2023** at **xx:xx p.m.** to consider whether to approve the Settlement and a request for attorneys' fees up to one-third of the Settlement Fund, plus reimbursement of litigation expenses, and awards to Class Representatives. This date may change so please check the website. You or your own lawyer may appear and speak at the hearing at your own expense.

## For More Information:

For details on how to make a claim, exclude yourself, or object, visit the settlement website: **www.CRTclaims.com**. You may also write to:

CRT Class Administrator, c/o The Notice Company, P.O. Box 778, Hingham, MA 02043 or call 1-800-xxx-xxxx

Para una notificacion en Espanol, llamar o visitar nuestro website.

PLEASE DO NOT CONTACT THE COURT

**DECLARATION OF JOSEPH M. FISHER**

**EXHIBIT D**

# Email Notice

Subject:          Important Legal Notice - You Could Get Money from a Settlement
                  Involving TVs and Computer Monitors

This Notice is authorized by the U.S. District Court for the Northern District of
California in the case entitled *In re: Cathode Ray Tube (CRT) Antitrust Litigation*,
MDL No. 1917.  This is not a solicitation from a lawyer.

**For complete information visit the settlement website: www.CRTclaims.com**

A class action Settlement has been reached with Mitsubishi Electric Corporation
involving Cathode Ray Tubes ("CRTs"), a display device that was the main
component in TVs and computer monitors. The lawsuit claims that Mitsubishi
Electric conspired with other CRT manufacturers to fix the prices of CRTs, causing
consumers to pay more for CRTs and products containing CRTs, such as TVs and
computer monitors ("CRT Products").

If you indirectly bought televisions, computer monitors, or other products
containing CRTs, you could get money from this Settlement totaling $33 million.

"Indirectly" means that you purchased the CRT Product from someone other than
the manufacturer of the CRT Product. For example, you bought a CRT television
from a retailer, such as Best Buy, or a CRT monitor from Dell.

A Simple Online Claim Form and more detailed notice of the Settlements is available
online at <active link> www.CRTclaims.com </active link> or by calling toll-free at
1-800-xxx-xxxx.

If you previously submitted a valid claim as an end user for indirect purchases of
CRT Products in related prior settlements (In re: Cathode Ray Tube (CRT) Antitrust
Litigation, MDL No. 1917 (N.D. CA)), you do not have to resubmit your claim to
benefit from this Settlement unless you have additional purchases to claim.

The amount of money you will receive depends on the type and quantity of CRT
Products you purchased and the total number of claims made. Eligible claimants are
expected to receive a minimum payment of $10.

Please read the notice carefully. Your legal rights may be affected whether or not
you act.

You can make a claim for money if you indirectly purchased CRT Products, for your
own use and not for resale, in Arizona, Arkansas, California, the District of Columbia,
Florida, Hawaii, Iowa, Kansas, Maine, Massachusetts, Michigan, Minnesota,
Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Mexico,

New York, North Carolina, North Dakota, Oregon, Rhode Island, South Carolina, South Dakota, Tennessee, Utah, Vermont, West Virginia or Wisconsin (the "Settlement Class").

The purchase must have been made in one of these states but you do not have to be a resident of these states. Purchases in Missouri, Montana and Rhode Island must have been made primarily for personal, family or household purposes.

Purchasers in nine additional states are included in this Settlement with Mitsubishi Electric Corporation that were not included in prior settlements involving indirect purchases of CRT Products. The nine additional states are: Arkansas, Massachusetts, Missouri, Montana, New Hampshire, Oregon, Rhode Island, South Carolina, and Utah.

**Be sure to check your eligibility by going to <active link> www.CRTclaims.com </active link>.**

If you do nothing, you will be bound by the Court's decisions.  If you want to keep your right to sue Mitsubishi Electric, you must send a written request to the Class Administrator for exclusion from the Settlement Class by XXXX xx, 2023. The Court will exclude any class member who timely requests exclusion. If you stay in the Settlement Class, you may object to the Settlement by XXXX xx, 2022.

The Court will hold a hearing on XXXX xx, 2023 at xx:xx p.m. to consider whether to approve the Settlement and a request for attorneys' fees up to one-third of the Settlement Fund, plus reimbursement of litigation expenses, and awards to Class Representatives. This date may change so please check the website. You or your own lawyer may appear and speak at the hearing at your own expense.

**Questions? Visit the settlement website at www.CRTclaims.com**

You may also contact us as follows:

CRT Claims Administrator
c/o The Notice Company
P.O. Box 778
Hingham, MA 02043
1-800-xxx-xxxx

Para una notificacion en Espanol, llamar o visitar nuestro website.
PLEASE DO NOT CONTACT THE COURT

**DECLARATION OF JOSEPH M. FISHER**

**EXHIBIT E**

**In Re: Cathode Ray Tube (CRT) Antitrust Litigation (MDL No. 1917)**
(*U.S. District Court for the Northern District of California*)

## MITSUBISHI ELECTRIC SETTLEMENT
### CATHODE RAY TUBE (CRT) INDIRECT PURCHASER CLAIM FORM
#### Deadline for Submission is _____, 2023

## GENERAL INSTRUCTIONS & DEFINITIONS

This Claim Form is for the Mitsubishi Electric Settlement ("**New Settlement**") in the Cathode Ray Tube ("CRT") indirect purchaser litigation. Your claim must be submitted online, or mailed and postmarked, on or before _____, 2023. **Additional information is provided in the Detailed Notice of Settlement, available at www.CRTclaims.com.**

The New Settlement **includes** indirect purchases of **CRT Products manufactured by Mitsubishi AND by other companies**. Only Sony® branded CRT Products are NOT eligible to be included in this case. All other brands of CRT Products are eligible.

**What are CRT Products?** CRT Products include Cathode Ray Tubes ("CRTs") and products containing CRTs, such as televisions and computer monitors. **What is an "Indirect" Purchase?** "Indirect" means that you purchased the CRT Product from someone other than the manufacturer of the CRT Product. For example, you bought a CRT television from a retailer, such as Best Buy, or a CRT monitor from Dell. **See the Detailed Notice for additional information**.

**Who should submit a claim in the New Settlement?**

- **First-time Claimants:** If you did *not* submit a claim in prior settlements involving indirect purchases of CRT Products ("Prior Settlements") or you submitted a claim that was denied ("Invalid Claim"), then you are considered a "First-time Claimant." **You *must* complete and submit a Claim Form in order to get a payment from the New Settlement.**

- **Prior Claimants:** If you (or someone on your behalf) submitted a Claim that was not denied in the Prior Settlements ("Valid Claim") *and* you do not have any additional purchases on which to base claims in the New Settlement, you are considered a "Prior Claimant." **You do *not* need to submit a claim in the New Settlement.** Your Valid Claim from the Prior Settlements will be automatically submitted in the New Settlement without any further action taken by you, *unless* you make a New Claim Submission. If your claim in the Prior Settlements was only **partially accepted**, then your Valid Claim consists only of the accepted portion of your prior submission. *For example*, if you previously submitted a claim for 6 CRT computer monitors and only 4 monitors were accepted in the Prior Settlements, then your Valid Claim for 4 (and only 4) CRT computer monitors will be automatically submitted in the New Settlement.

- **Repeat Claimants:** If you already submitted a Valid Claim in connection with the Prior Settlements but you now want to submit a claim for purchases of **additional CRT Products that were not included in your prior Valid Claim ("Newly Claimed Units")**, you are considered a "Repeat Claimant." Repeat Claimants are expected because you can now claim for purchases in **nine states** that were not included in the Prior Settlements. The new states are Arkansas, Massachusetts, Missouri, Montana, New Hampshire, Oregon, Rhode Island, South Carolina, and Utah.

- **IMPORTANT: If you submit a claim in the New Settlement ("New Claim Submission"), then your previous claim in the Prior Settlements will NOT be submitted in the New Settlement.** Your New Claim Submission must include **ALL** of your qualifying CRT purchases, including those previously claimed *and* your additional purchases not previously claimed. Purchases claimed in the Prior Settlements will **NOT** be automatically included in a New Claim Submission.

## REMINDER

Please make sure that you:
1. Complete the entire Claim Form on page 1;
2. Sign and date the Claim Form;
3. Submit your Claim Form on or before _____, **2023**, online or by mail to:

| | | |
|---|---|---|
| **www.CRTsettlement.com** | **OR** | CRT Claims<br>c/o The Notice Company<br>P.O. Box 778<br>Hingham, MA 02043 |

4. Keep a copy of the completed Claim Form for your records;
5. Retain any proof of purchase documentation you may have for CRT Products until your claim is closed; You will be notified if you are required to provide this documentation during the claim verification process.
6. We urge you to check the website, **www.CRTclaims.com**, above regularly for further developments in this case.

**In Re: Cathode Ray Tube (CRT) Antitrust Litigation (MDL No. 1917)**
(*U.S. District Court for the Northern District of California*)

## MITSUBISHI ELECTRIC SETTLEMENT
### CATHODE RAY TUBE (CRT) INDIRECT PURCHASER CLAIM FORM
### Deadline for Submission is _____, 2021

**Which States and Consumers does the New Settlement cover?**

In order to make a valid claim, you must have been an "Eligible Consumer" who purchased your CRT Product(s) in an "Eligible State" during the specified timeframes ("Claims Periods") as follows:

| Eligible States | Eligible Consumers | Claims Periods |
|---|---|---|
| Arizona, Arkansas, California, District of Columbia, Florida, Iowa, Kansas, Maine, Massachusetts, Michigan, Minnesota, Mississippi, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, South Carolina, South Dakota, Tennessee, Utah, Vermont, West Virginia, and Wisconsin | All persons or entities (individual or business) that indirectly purchased CRT Products for their own use and not for resale | March 1, 1995 through November 25, 2007 |
| Hawaii | All persons or entities (individual or business) that indirectly purchased CRT Products for their own use and not for resale | June 25, 2002 through November 25, 2007 |
| Nebraska | All persons or entities (individual or business) that indirectly purchased CRT Products for their own use and not for resale | July 20, 2002 through November 25, 2007 |
| Nevada | All persons or entities (individual or business) that indirectly purchased CRT Products for their own use and not for resale | February 4, 1999 through November 25, 2007 |
| Missouri and Montana | All persons or entities (individual or business) that indirectly purchased CRT Products for their own use and not for resale, and primarily for personal, family or household purposes | March 1, 1995 through November 25, 2007 |
| Rhode Island | All **natural persons** who indirectly purchased CRT Products for their own use and not for resale, and primarily for personal, family, or household purposes | March 1, 1995 through November 25, 2007 |

The Claim Form must be dated and signed by the Class Member (or, if deceased, by an estate representative). Your signature affirms that your purchases meet the Eligibility Criteria (see below).

**ELIGIBILITY CRITERIA**: To qualify for compensation in this settlement, your claimed CRT purchases must:
1. Have been made in an Eligible State(s) within the relevant Claim Period(s) listed in the above chart;
2. Meet the Eligible Consumers restrictions for the Eligible State(s), paying particular attention to those purchases made in Missouri, Montana and Rhode Island;
3. Have been Indirect Purchases (see definition on page 2);
4. Not include any purchases of Sony® branded CRT Products; and
5. Not include purchases of CRT Products intended for resale to others.

**THIRD-PARTY SUBMISSIONS:**  If you are submitting a Claim Form on behalf of someone else, either an individual (natural person), an estate, or a business, you must register with the Settlement Administrator.  Please email audit@CRTclaims.com for directions.

**In Re: Cathode Ray Tube (CRT) Antitrust Litigation (MDL No. 1917)**

*(U.S. District Court for the Northern District of California)*

## MITSUBISHI ELECTRIC SETTLEMENT
### CATHODE RAY TUBE (CRT) INDIRECT PURCHASER CLAIM FORM
### Deadline for Submission is _____, 2023

**For INDIVIDUAL (NATURAL PERSONS) use only.  Not for business claims.**
*See pages 2-3 for General Instructions and Definitions*

☐ Check here if you are submitting this claim on behalf of someone else. If so, please email audit@CRTclaims.com for directions.

### PART 1:  CLAIMANT INFORMATION

First Name of Class Member | M.I.

Last Name of Class Member

Class Member's (or Estate Representative's) Mailing Address: Number and Street or P.O. Box

City | State | Zip Code

Email Address

Provide Last 4 Digits of Social Security Number      **X X - X X -**      ***OR***      Provide Date of Birth (Month and Year)      **/ X X /**

Did you submit a claim in the Prior Settlements?

*If yes, this claim form must include previously claimed CRT units as well as newly claimed CRT units.*

**Yes**     **No**

### PART 2:  PURCHASE INFORMATION

Provide the **total number** (*NOT amount paid*) of CRT Products purchased during the Claims Periods in eligible states (see pg. 3).

For example, if you purchased two 19" TVs & one 32" TV, you would put a 2 under Standard CRT TV & 1 under Large CRT TV.

| PRODUCT TYPE | Standard CRT Television (screen size less than 30 inches) | Large CRT Television (screen size 30 inches or larger) | CRT Computer Monitor | Other CRT Product(s) (Describe the products in the space below) |
|---|---|---|---|---|
| NUMBER OF CRT PRODUCTS PURCHASED | | | | |
| DESCRIPTION OF OTHER CRT PRODUCTS | | | | |

### PART 3: SIGN AND DATE CLAIM FORM

I declare under penalty of perjury under the laws of the United States of America, that the information provided in this Claim Form is true and correct to the best of my knowledge and belief. I declare that my purchases were made in eligible states, within the eligible Claims Periods, and that my purchases were NOT directly from Mitsubishi Electric nor an Alleged Co-Conspirator.

**REVIEW THE STATE AND CLAIMS PERIODS ON PAGE 3 TO CONFIRM YOUR PURCHASES ARE ELIGIBLE FOR COMPENSATION.**

Signature of Class Member (or Estate Representative) | Date (MM/DD/YYYY)   **/     /**

Print Name

*Claims may be audited and any false or fraudulent claim is subject to prosecution.*

**In Re: Cathode Ray Tube (CRT) Antitrust Litigation (MDL No. 1917)**

*(U.S. District Court for the Northern District of California)*

## MITSUBISHI ELECTRIC SETTLEMENT
### CATHODE RAY TUBE (CRT) INDIRECT PURCHASER CLAIM FORM
### Deadline for Submission is _____, 2023

**For BUSINESS use only.  Not for individual (natural persons) claims.**

*See pages 2-3 for General Instructions and Definitions*

☐ Check here if you are submitting this claim on behalf of someone else. If so, please email audit@CRTclaims.com for directions.

### PART 1:  CLAIMANT INFORMATION

Entity Name / Business Name of Class Member

Person to contact if there are questions regarding this claim

Class Member's Mailing Address: Number and Street or P.O. Box

City                                                                State        Zip Code

Email Address

Provide Federal Taxpayer Identification Number        Provide Date of Formation/Incorporation

[ ] - [     ]     **OR**     [  /  /  ]

Prior Settlements?

*If yes, this claim form must include previously claimed CRT units as well as newly claimed CRT units.*

During the Claims Period, provide the average number of *(Include Eligible States only):*

**Employees** [     ]   **AND**   **Locations** [     ]        **Yes** [ ]   **No** [ ]

### PART 2:  PURCHASE INFORMATION

Provide the **total number** (*NOT amount paid*) of CRT Products purchased during the Claims Periods in eligible states (see pg. 3).
For example, if you purchased two 19" TVs & one 32" TV, you would put a 2 under Standard CRT TV & 1 under Large CRT TV.

| PRODUCT TYPE | Standard CRT Television (screen size less than 30 inches) | Large CRT Television (screen size 30 inches or larger) | CRT Computer Monitor | Other  CRT Product(s) (Describe the products in the space below) |
|---|---|---|---|---|
| NUMBER OF CRT PRODUCTS PURCHASED | | | | |
| DESCRIPTION OF OTHER CRT PRODUCTS | | | | |

### PART 3: SIGN AND DATE CLAIM FORM

I declare under penalty of perjury under the laws of the United States of America, that the information provided in this Claim Form is true and correct to the best of my knowledge and belief. I declare that my purchases were made in eligible states, within the eligible Claims Periods, and that my purchases were NOT directly from Mitsubishi Electric nor an Alleged Co-Conspirator.

**REVIEW THE STATE AND CLAIMS PERIODS ON PAGE 3 TO CONFIRM YOUR PURCHASES ARE ELIGIBLE FOR COMPENSATION.**

Signature of Authorized Business Representative        Date (MM/DD/YYYY)

[  /  /  ]

Print Name of Authorized Business Representative

Title of Authorized Business Representative

*Claims may be audited and any false or fraudulent claim is subject to prosecution.*