1  MARIO N. ALIOTO (56433)
LAUREN C. CAPURRO (241151)
2  TRUMP, ALIOTO, TRUMP & PRESCOTT, LLP
2001 Union Street, Suite 482
3  San Francisco, CA  94123
Telephone: (415) 563-7200
4  Facsimile: (415) 346-0679
E-mail: malioto@tatp.com
5  laurenrussell@tatp.com
6
7  *Lead Counsel for the Indirect Purchaser Plaintiffs*

8  **UNITED STATES DISTRICT COURT**

9  **NORTHERN DISTRICT OF CALIFORNIA**

10  **OAKLAND DIVISION**

11

| 12 | IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Master File No. 07-cv-05944-JST Case No. 17-cv-04067-JST |
|---|---|---|
| 13 | | MDL No. 1917 |
| 14 | | |
| 15 | This Document Relates to: | **DECLARATION OF MARIO N. ALIOTO IN SUPPORT OF INDIRECT** |
| 16 | *Luscher, et al. v. Mitsubishi Electric Corp.,* 17-cv-04067-JST | **PURCHASER PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF** |
| 17 | | **CLASS ACTION SETTLEMENT WITH DEFENDANT MITSUBISHI ELECTRIC** |
| 18 | | **CORPORATION** |
| 19 | | Hearing Date:  December 1, 2022 |
| 20 | | Time: 2:00 p.m. Courtroom: 6, 2nd Floor |
| 21 | | Judge:  Honorable Jon S. Tigar |

22

23

24

25

26

27

28

1

I, Mario N. Alioto, declare:

1.      I am an attorney duly licensed by the State of California and am admitted to practice before this Court. I am a partner with the law firm Trump, Alioto, Trump & Prescott, LLP and my firm serves as the Court-appointed Lead Counsel for the Indirect Purchaser Plaintiffs ("IPPs") in the above-captioned action. I submit this Declaration in support of the IPPs' Motion for Preliminary Approval of Class Action Settlement with Defendant Mitsubishi Electric Corporation ("Mitsubishi Electric"), filed herewith. The matters set forth herein are within my personal knowledge and if called upon and sworn as a witness I could competently testify regarding them.

2.      Attached hereto as Exhibit A is a true and correct copy of the Settlement Agreement entered into by IPPs and Mitsubishi Electric on October 25, 2017.  Attached to the Settlement Agreement is the executed Addendum to the Settlement Agreement dated February 13, 2018. IPPs' settlement with Defendant Mitsubishi Electric is referred to as the "Proposed Settlement."

3.      The $33,000,000 Settlement Amount, plus interest, is referred to as the "Settlement Fund." Pursuant to the parties' agreement, this amount has already been paid into escrow and has been accruing interest for the benefit of Class members.

**Procedural History**

4.      The *Luscher* action and the MDL actions assert similar allegations of an international conspiracy to fix the prices of CRTs from March 1, 1995 through November 25, 2007. IPPs filed their original complaints in various federal courts throughout the country in late 2007 and early 2008. The JPML transferred all related actions to this Court on February 15, 2008, where they were coordinated with similar actions filed by direct purchaser plaintiffs ("DPPs"). ECF No. 122. On May 9, 2008, the Court appointed Mario N. Alioto of Trump, Alioto, Trump & Prescott, LLP as Interim Lead Class Counsel for the IPPs. ECF No. 282.

1   Mitsubishi Electric was not named as a defendant in any of these early complaints, including

2   IPPs' first three consolidated amended complaints ("CACs") in the MDL. *See* ECF Nos. 437,

3   716, 827. Mitsubishi Electric's CRT market share was very small and it was not a named target

4   of the DOJ's investigation, or of any foreign government's investigation into the alleged CRT

5   conspiracy. In addition, Chunghwa, the DOJ's amnesty applicant with which IPPs settled in April

6   2009—and which provided IPPs with substantial cooperation, including an oral proffer regarding

7   the CRT conspiracy— did not implicate Mitsubishi Electric.

8

9       5.      Nonetheless, IPPs continued to investigate Mitsubishi Electric's involvement in

10  the CRT conspiracy and entered into a tolling agreement with Mitsubishi Electric in early

11  November 2011. Pursuant to the tolling agreement, Mitsubishi Electric produced its CRT and

12  CRT Product sales data to IPPs.

13      6.      IPPs' Fourth CAC, filed on January 10, 2013, named Mitsubishi Electric as a co-

14  conspirator. ECF. No. 1526. In order to hold the other Defendants jointly and severally liable for

15  the damages caused by Mitsubishi Electric, IPPs had to prove its participation in the CRT

16  conspiracy.

17      7.      As part of IPPs' motion for class certification in the litigation against the other

18  Defendants, IPPs' expert, Dr. Netz, included Mitsubishi Electric's CRT sales data in her analyses

19  of pass-through and damages to the indirect purchaser classes. ECF No. 1388. Class Counsel also

20  analyzed evidence of Mitsubishi Electric's participation in the CRT conspiracy. Following

21  multiple rounds of briefing, this Court adopted the Reports and Recommendations of Interim

22  Special Master Martin Quinn[1] and certified 22 statewide classes of indirect purchasers of CRTs.

23  *CRT,* 2013 WL 5391159 (N.D. Cal. Sept. 23, 2013). The Ninth Circuit Court of Appeals denied

24  the Defendants' petition to appeal pursuant to Fed. R. Civ. P. 23(f). ECF No. 2283.

25      8.      In late 2013 and 2014, several Direct Purchaser Plaintiffs ("DAPs") and the DPPs

26

27  _____

28  [1] *In re Cathode Ray Tube (CRT) Antitrust Litig.,* No. 07-cv-5944-JST, MDL No. 1917, 2013 WL
    5429718 (N.D. Cal. June 20, 2013).

DECLARATION OF MARIO N. ALIOTO IN SUPPORT OF INDIRECT PURCHASER PLAINTIFFS' MOTION
FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 17-cv-04067-JST; Master File No. 07-cv-05944-JST

1    filed suit against Mitsubishi Electric and certain subsidiaries. *See, e.g., Interbond Corporation of*

2    *America v. Technicolor SA (f/k/a Thomson SA), et al.,* Case No. 13-cv-05727-JST; *Crago, d/b/a*

3    *Dash Computers, Inc., et al. v. Mitsubishi Electric Corporation, et al.*, Case No. 14-CV-2058-

4    JST. The Court granted in part and denied in part Mitsubishi Electric's motion to dismiss various

5    DAP complaints. ECF No. 2439. Mitsubishi Electric and its subsidiaries became formal parties to

6    the *CRT* MDL, and IPPs received the documents and data they produced in discovery.

7         9.    The DAPs and DPPs also deposed several Mitsubishi Electric witnesses. IPP

8    Counsel assisted in reviewing, translating and selecting exhibits for many of these depositions,

9    and attended the depositions and/or reviewed the transcripts.

10        10.    In 2014 and early 2015, IPPs and certain DAPs were preparing for trial, originally

11   scheduled to begin on March 9, 2015.[2] The parties exchanged expert reports on liability and

12   damages from April 2014 through September 2014. These included opening, opposition, rebuttal

13   and sur-rebuttal reports from 17 expert witnesses—including Mitsubishi Electric's expert,

14   Professor Dennis W. Carlton. All of these experts were deposed, often multiple times, regarding

15   their reports. Dr. Netz included Mitsubishi Electric CRT data and documents in her analyses of

16   pass-through and damages to the indirect purchaser classes.

17        11.    On November 7, 2014, the Defendants (including Mitsubishi Electric and its

18   subsidiaries) filed 36 motions for summary judgment. *See* ECF No. 4071-1, Ex. 11 (list of

19   summary judgment motions). Eleven of these were directed specifically against IPPs' claims.

20   Mitsubishi Electric and its subsidiaries also filed summary judgment motions against the DAPs'

21   claims. ECF Nos. 3033-4, 3037. Around the same time, the parties exchanged trial exhibit lists,

22   witness lists, deposition designations, jury instructions, and special verdict forms, and filed 64

23   motions *in limine* and other pretrial motions.

24        12.    In compiling the trial exhibits and designating deposition testimony, IPP Counsel

25   worked closely with the DAPs to assess the evidence of Mitsubishi Electric's participation in the

26

27   _____

28   [2] By Order dated February 9, 2015, the Court vacated the trial date (Dkt. No. 3515).

DECLARATION OF MARIO N. ALIOTO IN SUPPORT OF INDIRECT PURCHASER PLAINTIFFS' MOTION
FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 17-cv-04067-JST; Master File No. 07-cv-05944-JST

1  CRT conspiracy. IPP Counsel prepared a memorandum detailing the evidence of Mitsubishi
2  Electric's participation in the conspiracy. IPP Counsel also participated in mock trials during
3  which evidence of Mitsubishi Electric's participation in the CRT conspiracy was presented to
4  mock juries.

5          13.      In early 2015, after the summary judgment motions were fully briefed, IPPs
6  entered into their original settlements with the Philips, Panasonic, Hitachi, Toshiba, and Samsung
7  SDI Defendants. Consequently, these defendants withdrew their summary judgment motions,
8  motions *in limine*, and other pretrial motions relating to the IPP case pending final approval of
9  their settlements. IPPs also entered into settlements with the Thomson/Technicolor defendants in
10 June 2015. These original settlements were approved on July 7, 2016 (ECF No. 4712).

11         14.      After final approval of IPPs' settlements, the Court ruled upon many of the
12 Defendants' summary judgment motions as they related to the DAPs' claims against Defendants.
13 The Court granted the motion of two Mitsubishi Electric subsidiaries (ECF No. 4559) and denied
14 the motion of Mitsubishi Electric (ECF No. 5128).

15         15.      IPPs filed their complaint against Mitsubishi Electric on July 20, 2017. Unlike the
16 earlier IPP complaints, the complaint against Mitsubishi Electric did not allege a nationwide
17 class, but did allege indirect purchaser claims under the laws of 30 states and the District of
18 Columbia on behalf of 31 statewide classes—nine more than were certified during the litigation
19 against the other defendants.

20         16.      With the assistance of Judge Corley, the IPPs and Mitsubishi Electric reached a
21 settlement, and they executed their settlement agreement on October 25, 2017.

22         17.      The parties executed the addendum to the settlement agreement on February 13,
23 2018.

24         18.      On February 6, 2020, pursuant to stipulated order (ECF No. 5679), IPPs filed their
25 First Amended Complaint against Mitsubishi Electric. ECF No. 5687. The First Amended
26 Complaint substituted new named plaintiffs for the States of Hawaii, New Mexico, and New
27 Hampshire, and conformed the class definition to the Settlement Class definition agreed to by
28 IPPs and Mitsubishi Electric Corp. in their settlement agreement. *See* ECF No. 5679.

5

DECLARATION OF MARIO N. ALIOTO IN SUPPORT OF INDIRECT PURCHASER PLAINTIFFS' MOTION
FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 17-cv-04067-JST; Master File No. 07-cv-05944-JST

19.     Together with counsel for Mitsubishi Electric, I deferred renewing the motion for approval of this Settlement until the Prior Settlements were final because that finality resolved issues relating to this Settlement.

**The Proposed Settlement**

20.     The Proposed Settlement resolves all claims against Mitsubishi Electric for its alleged part in the alleged global conspiracy to fix prices of CRTs.

21.     The Proposed Settlement Class is limited to the thirty-one jurisdictions that the parties identified as "Indirect Purchaser Jurisdictions." The named plaintiffs include at least one representative from each of the Indirect Purchaser Jurisdictions.

22.     The Proposed Settlement Class is defined to conform to the requirements of the applicable state laws.  The proposed Settlement Class is defined as follows:

(a)     All persons or entities who or which indirectly purchased in an Indirect Purchaser Jurisdiction, other than Missouri, Montana, and Rhode Island, for their own use and not for resale, CRTs or CRT Products manufactured and/or sold by any Mitsubishi Electric Releasee, or any Alleged Co-Conspirator, where such purchase took place during the following time periods:

1)     From March 1, 1995 through November 25, 2007 for purchases in Arizona, Arkansas, California, District of Columbia, Florida, Iowa, Kansas, Maine, Massachusetts, Michigan, Minnesota, Mississippi, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, South Carolina, South Dakota, Tennessee, Utah, Vermont, West Virginia, and Wisconsin;

2)     From June 25, 2002 through November 25, 2007 for purchases in Hawaii;

3)     From July 20, 2002 through November 25, 2007 for purchases in Nebraska;

4)     From February 4, 1999 through November 25, 2007 for purchases in Nevada;

DECLARATION OF MARIO N. ALIOTO IN SUPPORT OF INDIRECT PURCHASER PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 17-cv-04067-JST; Master File No. 07-cv-05944-JST

    (b)     All persons who or which indirectly purchased in Missouri from March 1, 1995 through November 25, 2007, for their own use and not for resale, and primarily for personal, family or household purposes, CRTs or CRT Products manufactured and/or sold by any Mitsubishi Electric Releasee, or any Alleged Co-Conspirator;

    (c)     All persons who or which indirectly purchased in Montana from March 1, 1995 through November 25, 2007, for their own use and not for resale, and primarily for personal, family or household purposes, CRTs or CRT Products manufactured and/or sold by any Mitsubishi Electric Releasee, or any Alleged Co-Conspirator;

    (d)     All natural persons who indirectly purchased in Rhode Island from March 1, 1995 through November 25, 2007, for their own use and not for resale, and primarily for personal, family, or household purposes, CRTs or CRT Products manufactured and/or sold by any Mitsubishi Electric Releasee, or any Alleged Co-Conspirator;

    (e)     Specifically excluded from the Settlement Class are Mitsubishi Electric Releasees, Alleged Co-Conspirators, any federal, state or local government entities, and any judicial officer presiding over this action and the members of his/her immediate family and judicial staff.

Ex. A, Settlement Agreement ¶ 10 (as amended by Addendum, described below).

    23.    The parties agreed to amend the Settlement Class definition by an Addendum to Settlement Agreement. *See* Ex. A, attached hereto. The amended settlement class definition is consistent with the consumer protection statutes in Missouri, Montana, and Rhode Island, which require that the product at issue must have been purchased "primarily for personal, family, or household purposes." Mo. Rev. Stat. §407.025; MCA §30-14-102, §30-14-133; R.I. Gen. Stat. §6-13.1-5.2. *See also In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 516 F. Supp. 2d 1072, 1116 (N.D. Cal. 2007) (citing *ERI Max Entertainment, Inc. v. Streisand,* 690 A.2d 1351, 1354 (R.I. 1997)) ("the Rhode Island Supreme Court has construed the UTPCPA to require that only natural persons are permitted to bring private rights of action under the statute, which natural persons must have 'purchase[d] or lease[d] goods or services primarily for personal, family, or household purposes.'"). The amendments are also consistent with the

7

DECLARATION OF MARIO N. ALIOTO IN SUPPORT OF INDIRECT PURCHASER PLAINTIFFS' MOTION
FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 17-cv-04067-JST; Master File No. 07-cv-05944-JST

allegations of the original Complaint (17-cv-04067-JST, ECF No. 1), ¶¶ 277-278, 285.  For the Court's convenience, we have included the executed Addendum to the Settlement Agreement in Exhibit A hereto.

24.     The Proposed Settlement Class is the same in substance to the settlement class this Court approved on July 13, 2020. ECF No. 5786. It is also the same in substance to the 22 statewide classes certified during the litigation. *See CRT,* 2013 WL 5391159 (N.D. Cal. Sept. 23, 2013). The only difference is that this Proposed Settlement Class includes individuals and businesses who purchased CRTs or CRT Products in nine additional state classes that were not included in the Prior Settlement class and were not previously eligible to file claims in the Prior Settlements. The nine states are included in the Mitsubishi Electric Settlement Class because (1) I entered into a tolling agreement with Mitsubishi Electric that tolled the statute of limitations on all class member claims, and (2) viable plaintiffs were willing to represent these additional state classes.

25.     The settlement negotiations with Mitsubishi Electric were hard-fought and highly adversarial. The settlement was reached only after extensive, arm's-length negotiations between counsel for the Mitsubishi Electric and IPPs. These negotiations took place over many months. They involved multiple telephone conferences, an in-person meeting attended by counsel for all parties and representatives of Mitsubishi Electric from the United States and Japan, and an in-person mediation before Magistrate Judge Corley. The final settlement was the product of this mediation before Judge Corley and indeed, was the result of a mediator's proposal.

26.     Under the Proposed Settlement, Mitsubishi Electric has paid Thirty-Three Million Dollars ($33,000,000) in cash to settle all indirect purchaser claims against the Mitsubishi Electric Releasees (defined in the Settlement Agreement). The Settlement Amount has been deposited into an escrow account and has been invested in United States Treasury bills and other instruments insured or guaranteed by the full faith and credit of the United States. If the Proposed Settlement is finally approved, any interest earned thereon (together with the Settlement Amount, net of taxes and escrow expenses) will become part of the Settlement Fund. *See* Ex. A ¶¶ 25-26.

27.   In addition to monetary consideration, the Proposed Settlement contains cooperation provisions requiring Mitsubishi Electric to authenticate documents and data used in the prosecution of any continuing litigation. *See* Ex. A ¶ 31. The cooperation provisions are material and valuable terms of the Settlement, which could be triggered in the continued litigation against the Irico defendants.

28.   If the Proposed Settlement becomes final, IPPs and class members will release all federal and state-law claims against Mitsubishi Electric "concerning the manufacture, supply, distribution, sales or pricing of CRTs or CRT Products. . . ." The release does not include claims for product defect, personal injury or breach of contract not related to the subject matter of the Complaint. In addition, the Proposed Settlement does not release claims arising under the laws of any jurisdiction not included in the Indirect Purchaser Jurisdictions. *See* Ex. A ¶¶ 22-23.

29.   As explained above, the Proposed Settlement was informed by almost ten years of vigorous litigation in the CRT MDL, where the case was fully developed for trial.

30.   I negotiated this Proposed Settlement on behalf of IPPs after extensive pre-filing investigation, class certification, full discovery, the exchange of expert reports on liability and damages, the filing of oppositions to defense motions for summary judgment, and other rigorous and fact-intensive motions.

31.   I and my co-counsel had reviewed and analyzed millions of documents produced by Mitsubishi Electric, the other Defendants, and third parties; had taken (or participated in taking) over 100 depositions of defense witnesses—including Mitsubishi Electric witnesses; and, had conducted extensive economic analyses of the data produced by Mitsubishi Electric, the other Defendants, and third parties.

32.   I and my co-counsel also participated in three mock trials and observed 11 mock juries. IPPs were fully prepared to try this case to a jury.

33.   As a result of the work done by me and my co-counsel, I negotiated the Proposed Settlement with detailed knowledge of the factual and legal issues underlying the parties' claims and defenses, and a firm understanding of the strengths and weaknesses of those claims and defenses.

34.     Based on my extensive experience in indirect purchaser antitrust litigation, and my knowledge of the knowledge of the evidence and legal claims and defenses in this case, I believe that the Proposed Settlement is an excellent result for the class. The $33 million, all-cash settlement is consistent with the amounts obtained in previously approved settlements with the other, similarly situated Japanese defendants. *See* Final Approval Order (ECF No. 5786), 5587-1 at 25-26 (amended Toshiba Settlement for approx. $28.4 million), 5587-1 at 19-20 (amended Hitachi Settlement for approx. $26.5 million). Further, the Mitsubishi Electric settlement amount is 5.6% of the total $580,750,000 Settlement Fund, which is roughly proportional to Mitsubishi Electric's less-than 5% market share.

35.     When combined with the Prior Settlement amounts, the total recovery for indirect purchasers is, to date, $580,750,000. In the context of indirect purchaser price-fixing cases, I believe this total recovery is significant. Recent litigation on behalf of indirect purchasers of Lithium-Ion Batteries and Optical Disk Drives garnered $106,950,000, and $205,000,000 respectively.[3] The indirect *LCD* case is one of the rare cases to recover more than this case. However, the LCD conspiracy started more recently (*i.e.*, 2001) and fewer producers had exited the industry than in this case. The *LCD* conspiracy was therefore easier to prove because evidence and witnesses were available. In addition, most of the *LCD* defendants had pled guilty to Sherman Act violations and admitted that their conduct had an impact in the United States, leading to criminal fines totaling $894 million. Here, the conspiracy period started over 20 years ago (*i.e.*, 1995), many of the alleged participants were bankrupt or no longer existed, and employees had moved on, retired, or could not remember relevant facts; only one defendant pled guilty to fixing prices of one type of CRT, and only for sales to certain customers; and the DOJ's single criminal fine of $32 million amounted to less than 3.5 percent of the fines assessed in connection with LCD conspiracy.

---

[3] *See In re Lithium Ion Batteries Antitrust Litig.,* 4:13-md-02420-YGR (N.D. Cal.), ECF No. 2566 at 2; *In re Optical Disk Drive Products Antitrust Litig.,* 3:10-md-02143-RS (N.D. Cal.), ECF No. 2852 at 7.

36.     During the MDL, IPPs' expert, Dr. Netz, estimated single damages to members of the 22 state classes to be $2.78 billion.

37.     For the purposes of assessing this Proposed Settlement, Dr. Netz's estimate must be adjusted to account for the nine additional states included in the Settlement Class. Using the same general data and methodology, we estimate that single damages to class members in the 30 states and the District of Columbia would be $3.36 billion. However, I believe that Mitsubishi Electric would have strongly contested IPPs' damages claims.

38.     The other Defendants' experts opined that indirect purchasers suffered little or no damages as a result of the alleged CRT conspiracy. They maintained that the alleged conspiracy was ineffective and unsuccessful, and that IPPs could not "link" any allegedly agreed-upon CRT price increases to allegedly increased prices of CRT Products purchased by class members. One defense expert estimated the total class damages to be approximately $61 million. Other defense experts maintained that the total class damages were zero.

39.     Using the $3.36 billion estimate, the damages attributable to Mitsubishi Electric would be approximately $168 million (5% of $3.36 billion). Thus, the $33 million settlement is approximately 19.6% of the damages attributable to Mitsubishi Electric.

40.     Based on my knowledge of the strength of the parties' claims and defenses, I believe that the risks at trial (and on appeal) for the IPPs would be significant. For example, I believe that Mitsubishi Electric would likely contend, and the jury could agree, that it did not participate in the alleged conspiracy. Among other things, Mitsubishi Electric would likely argue that it did not attend a single "glass" meeting; that it ceased manufacture of CPTs in 1998 and CDTs in 2004; that most of the CDTs it manufactured utilized a different technology and were marketed to different customers than those of the other alleged conspirators; that its market share was very small (less than 5%); and, as a minor player in the market, it had little incentive to join the conspiracy. The Court's prior ruling precluding use of Samsung SDI's litigation statements against Mitsubishi Electric would have made IPPs' case more difficult to prove. ECF No. 4982.

41.     I believe Mitsubishi Electric would also likely assert that even if it had participated in the conspiracy, it withdrew when it stopped manufacturing CRTs in 2004. *See*

1  ECF No. 4786 (granting summary judgment motion of certain Philips defendants on withdrawal

2  grounds). It would likely also contest IPPs' evidence of antitrust standing, pass-through of the

3  overcharge to indirect purchasers, and class certification. *See, e.g.*, ECF Nos. 3050, 3585

4  (motions filed by the other Defendants).

5       42.     Even assuming a favorable jury verdict at trial, IPPs could prevail on liability and

6  still obtain no net recovery given the large settlement offset ($547,750,000) that would be

7  applied. In *LCD*, for example, the jury awarded the direct purchaser class plaintiffs $87 million in

8  damages against Toshiba, but they recovered nothing because the award was offset by their $443

9  million obtained in settlements. Likewise, Best Buy recovered nothing at trial against Toshiba

10 and Hannstar. The jury found that Toshiba did not participate in the conspiracy and awarded only

11 $7.5 million against Hannstar. Once Best Buy's settlements with the other defendants in *LCD* had

12 been offset, Hannstar owed nothing to Best Buy. Likewise here, if IPPs had gone to trial against

13 Mitsubishi Electric, there would have been an offset of $547,750,000.

14      43.     I have been litigating antitrust and consumer class actions—and specifically

15 indirect purchaser antitrust class actions—for over 40 years. It is my opinion, based on the

16 foregoing, that the Proposed Settlement is in the best interests of the class members.

17 **Proposed Plan of Distribution**

18      44.     This Court has already approved a weighted pro-rata distribution to claimants for

19 the Prior Settlements.[4]  We propose to use the same weighted pro rata distribution for the

20 Mitsubishi Electric Settlement. Settlement Class members who file valid claims will be eligible

21 to receive their pro rata share of the net Mitsubishi Electric settlement fund based on the total

22 number of valid claims filed, and the number and type of CRT Products each claimant

23 purchased.[5] Class members who filed valid claims against the Prior Settlements will

24

25  [4] ECF No. 5786 at 20 (adopting reasoning from original order approving the Prior Settlements).

26  [5] As with the Prior Settlements, claims for Standard CRT Televisions (televisions with a screen

27 size of less than 30 inches) will receive a weight of 1; Large CRT Televisions (televisions with a
   screen size of 30 inches or larger) will receive a weight of 4.3; and CRT Computer Monitors will

28 receive a weight of 3. *See CRT*, 2016 WL 3648478, at * 18.

1   automatically receive their pro-rata share of the Mitsubishi Electric settlement without having to

2   re-file their claim.[6] All other class members who submit qualified claim forms will be entitled to

3   recover.

4        45.    We believe that the majority of the new claims against the Mitsubishi Electric

5   Settlement will likely come from class members who purchased CRT Products in the nine states

6   that were not included in the settlement class for the Prior Settlements and were not eligible to

7   file claims against the Prior Settlements. Class members who previously filed claims against the

8   Prior Settlements may amend their claim for the Mitsubishi Electric Settlement to include CRTs

9   purchased in the nine states. Because the claims period for the Prior Settlements is now closed,

10  all such new claims will be paid solely from the Mitsubishi Electric settlement fund.

11       46.    It is expected that there will be sufficient funds to distribute a minimum payment

12  of $10 to valid claimants. The minimum payment amount of $10 represents IPPs' reasonable

13  estimate at this time; the actual amount cannot be determined until all claims have been

14  processed. The Court's approval for the minimum payment will be requested when the data from

15  the actual claims process are available. Additionally, as before, subject to the minimum payment,

16  a maximum payment amount of three times the estimated money damages per claimant will

17  apply, although we do not anticipate this will be an issue given the number of existing and

18  anticipated claims.

19       47.    All Settlement Class members who seek payment from the Settlement Fund, and

20  who have not already filed a valid claim in the Prior Settlements or who wish to file claims for

21  additional CRT purchases, will be required to complete a claim form containing: (i) the class

22  member's contact information; (ii) verification of membership in one of the Statewide Damages

23  Classes; (iii) the number and type of each CRT Product purchased during the class period; and

24  (iv) an attestation under penalty of perjury that the information provided is accurate. The

25  _____

26  [6] All claims processed and approved as part of the Prior Settlements, including late claims, will
    be considered valid, timely claims for the Mitsubishi Electric Settlement and therefore, eligible to
27  automatically receive a full pro-rata share of the Mitsubishi Electric Settlement without having to
    re-file their claim.
28

proposed claim form is attached as Exhibit E to the Declaration of Joseph M. Fisher Re: Mitsubishi Notice Program, filed herewith.

48.     All claimants will also be subject to auditing and requests for documentation of purchases by the Settlement Administrator. I have instructed the Settlement Administrator to use commercially reasonable efforts to identify and investigate claims.

**The Settlement Administrator Selection Process**

49.     I propose that the Court again appoint The Notice Company as the Settlement Administrator for the Proposed Settlement with Mitsubishi Electric.

50.     The Notice Company has successfully devised and implemented the Court-approved notice programs and administered the claims for all the Prior Settlements in this litigation. *See* ECF Nos. 1063, 2511, 3863, 4953-1, 5587-2, 6029. Prior to selecting The Notice Company to oversee this round of notice and settlement administration, my office solicited and received proposals from three nationally recognized class action notice and claims administrators, in addition to The Notice Company. Each proposal included a comparable notice program for a comparable cost.

51.     Members of my firm and I have extensive experience with The Notice Company, having now worked with them since 2009 on notice and claims administration for the Prior Settlements. IPP Counsel also engaged The Notice Company to devise a notice program for the Mitsubishi Electric Settlement presented to the Court in connection with the prior motion for preliminary approval in February 2018. Finally, members of my firm and I continue to work extensively with The Notice Company on issues relating to claims administration and the auditing of claims for the Prior Settlements.

52.     My partners and I have been impressed throughout these extensive interactions with The Notice Company's professionalism, responsiveness, and ability to resolve the many complex issues that have arisen in this case. I believe the Class will benefit from The Notice Company's experience in this litigation administering the Prior Settlements, in that it will help to reduce the costs of administering this settlement.

**Notice Costs, Attorneys' Fees And Litigation Expenses**

53.     The Proposed Settlement provides that IPP Counsel may apply to the Court for an award of attorneys' fees (not to exceed one-third of the Settlement Fund), and for payment of notice costs[7] and litigation expenses, all of which will come out of the Settlement Fund. Mitsubishi Electric has agreed that up to $3 million of the Settlement Fund can be used for notice costs and the costs of administration, and will not oppose IPP Counsel's application for attorneys' fees and litigation expenses so long as the request for attorneys' fees does not exceed one-third of the Settlement Amount. *See*, Ex. A, ¶¶ 27, 34.

54.     The Proposed Notices (attached as Exhibits B and C to the Fisher Declaration) advise that IPPs intend to apply for attorneys' fees of one-third of the Settlement Fund ($11,000,000), notice costs, and litigation expenses of approximately $6,703.95. The Notices will further advise class members how to access the fee petition when it is filed. The Proposed Notices also advise that IPPs may apply for individual incentive awards for the indirect purchaser class representatives, most of whom fully participated in the discovery phase of the MDL. These applications will be filed with the Court and posted to the website www.CRTclaims.com at least 14 days in advance of the deadline for objections to give class members an opportunity to review the applications and either support or file objections to them.

55.     IPP Counsels' lodestar for work performed in prosecuting the case against Mitsubishi Electric since June 2015 (the cut off for IPPs' first fee motion) is $2,433,461.66 (3287.1 hours).[8]  However, as indicated above, the work performed by IPPs during the almost eight years

---

[7] The Notice Company provides estimates of the notice costs in the Fisher Decl. ¶ 32.

[8] This lodestar is calculated using IPP Counsel's current rates and includes all time submitted to me. This lodestar does not include the time spent by IPP Counsel litigating the objections lodged by certain putative class members to the Prior Settlements and the resulting appeals, or the negotiation of the amendments to the Prior Settlements and subsequent briefing. Nor does it include any of the time spent litigating against the Irico defendants. The time spent by IPP Counsel on these matters over the last five years is significant. If included, this time would substantially increase the lodestar and decrease the multiplier.

1   of litigation against the other defendants (when Mitsubishi Electric was named as a co-conspirator,

2   but not as a defendant) was crucial to reaching the settlement with Mitsubishi Electric.

3          56.    I anticipate requesting reimbursement of additional out-of-pocket litigation

4   expenses of approximately $6,703.95. Other costs and expenses incurred in prosecuting the case

5   against Mitsubishi Electric (*e.g.,* almost $6 million in expert fees) have already been approved and

6   reimbursed by the Court. *See* ECF Nos. 5786 at 26, 4071-1 at 46.

7   **Class Representatives**

8          57.    21 of the 34 class representatives have already been granted $15,000 incentive

9   award, and one has been granted a $5,000 incentive award in connection with the Prior

10  Settlements. *See* ECF No. 5786 at 26.

11         58.    In connection with the litigation against Mitsubishi Electric and the settlement, the

12  21 original class representatives and the 13 new class representatives have reviewed and

13  approved the original and amended complaints, searched for relevant documents, reviewed and

14  approved the settlement agreement and amendments thereto, stayed in regular contact with their

15  lawyers, and remained apprised of the material developments in the litigation. The class

16  representatives have not, however, had to engage in formal discovery because IPPs settled with

17  Mitsubishi Electric before formal discovery commenced. Accordingly, I intend to propose

18  modest incentive awards of $2,000 for each class representative.

19         59.    The Named Plaintiffs have a genuine interest in the litigation and understand the

20  allegations in this case. The Named Plaintiffs in the MDL reviewed the pleadings and produced

21  documents regarding their purchases. Most of them also responded to written discovery and were

22  deposed by Defendants. They have also reviewed the pleadings against Mitsubishi Electric, the

23  settlement agreement and, in consultation with their lawyers, have approved them on behalf of

24  their respective states.

25  //

26  //

27

28

DECLARATION OF MARIO N. ALIOTO IN SUPPORT OF INDIRECT PURCHASER PLAINTIFFS' MOTION
FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 17-cv-04067-JST; Master File No. 07-cv-05944-JST

**Past Distributions and Comparisons with Comparable Cases**

60.     The Proposed Settlement together with the Prior Settlements in this case compare favorably to similar settlements:[9]

| Case | *CRT* (IPPs) | *DRAM* (IPPs) | *TFT-LCD* (IPPs) |
|---|---|---|---|
| **Total Settlement Fund** | $580.75 million (including the Proposed Settlement) | $310.72 million | $1,082 billion |
| **Total Estimated Number of Class Members** | 175 million | 175 million | 175 million |
| **Total Number of Class Members to Whom Direct Notice Was/Will Be Sent** | 14 million+ | 0 | 0 |
| **Method(s) of Notice** | Direct notice; indirect notice, including broadcast, digital media and press releases | Indirect notice, including broadcast, digital media, press releases | Indirect notice, including broadcast, digital media and press releases |
| **Number of Claims Submitted/To be Submitted** | 156,467 (prior claims) + 75,000 (estimated new claims) = 231,467 (0.13%) | 445,554 (0.25%) | 247,558 (0.14%) |
| **Mean Recovery Per End User Claimant**[10] | $3,034.90 | $423.90 | $3,155 |

---

[9] This chart shows information relating to settlements in the IPP action, compared to the settlements in (i) the IPP action in *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, No. 02-md-1486-PJH (N.D. Cal.); and (ii) the IPP settlements in *In re TFT-LCD (Flat Panel) Antitrust Litig.,* No. 07-md-01827-SI (N.D. Cal.). These figures reflect best estimates based on publicly available records.

[10] As explained in IPPs' recent Motion to Distribute Settlement Funds to Claimants, ECF No. 6025, Reseller claimants, i.e., those who purchased CRTs or CRT Products for resale, were only included in the Chunghwa settlement class, and were only permitted to claim against half of the Net Chunghwa Settlement Fund, which is approximately $3.068 million—substantially less than the Net Settlement Funds for the other settlements. This means that Reseller claimants will

| Case | CRT (IPPs) | DRAM (IPPs) | TFT-LCD (IPPs) |
|---|---|---|---|
| | | | |
| Expected Residual | $0 | $2,053,004.46 | $0 |
| Attorneys' Fees | $140,606,250 (24.2%) ($129,606,250 awarded; $11,000,000 now requested) | $78.3 million (25%) | $309.725 million (28.6%) |
| Litigation Costs | $8,460,252.79 (prior settlements)[11] + $6,703.95 (proposed settlement) | $11.8 million | $8,736,131.43 |
| Administrative Costs | $4,202,006.62 (prior case)[12] + $500,000 - $900,000 (estimated additional costs)[13] = $4,702,006.62 – $5,152,006.62 | $2.834 million | $3,276,539.13 |

receive less for each CRT Product purchased than End-User claimants. *See id.* at 17, n. 20. The mean recovery for class members who purchased in the nine new states will likewise be less because they may only claim against this Proposed Settlement. Because most claimants are End-User claimants who purchased in the 22 States, IPPs provide the mean recovery for those claimants for the purpose of comparing the mean recovery in this case to other similar indirect purchaser cases.

[11] *See* ECF Nos. 5786 at 25, 6040 at 3. $1,886,155.41 of the recently approved $2,330,710.87 in expenditures from the Future Expense Fund were for notice and claims administration expenses. *See* ECF No. 6025-1 & Ex. A. Thus, $789,727.22 of IPPs' additional expenses are properly categorized as "litigation costs."

[12] *See* ECF No. 6029-2 (Amended Declaration of Joseph M. Fisher Re: Notice, Claims Processing and Distribution of Settlement Funds), ¶ 34 (the Settlement Administrator has billed and been paid $3,602,006.62 to date, and estimates that the remaining work to distribute the Prior Settlements to Class Members will cost between $500,000 and $600,000).

[13] The Settlement Administrator estimates that the administrative costs for the Proposed Settlement will be approximately $500,000 to $950,000.

**CAFA Notice**

61.     Counsel for Mitsubishi Electric has informed me that, in accordance with the Class Action Fairness Act, 28 U.S.C. §1715 ("CAFA"), they will provide notice of the Proposed Settlement to the Attorney General of the United States and the Attorneys General of all 50 States within ten days of the filing of this motion.

**Related Agreements**

62.     Pursuant to Fed. R. Civ. P. 23(e)(2)(C)(iv), and as previously disclosed to the Court, in March and April 2018, four groups of objectors voluntarily dismissed their appeals of the original settlements in exchange for monetary consideration to be paid by IPP Counsel from their attorney fee award. See ECF Nos. 5587 at 9; 6001 at 5, n.5.  These agreements were entered into before the enactment of Rule 23(e)(2)(C)(iv), Rule 23(e)(5)(B), and the other amendments to Rule 23(e)(5) in December 2018. Nevertheless, Rule 23(e)(5)(B) now requires court approval of any payment to an objector "in connection with: (i) forgoing or withdrawing an objection, or (ii) forgoing, dismissing, or abandoning an appeal from a judgment approving the proposal."

63.     In addition to providing that the objectors would dismiss their appeals of this Court's approval of the Prior Settlements, the agreements provide that the objectors would not object to this Settlement. No payment is due to those objectors until the Prior Settlements and all fee proceedings relating to the Prior Settlements are final, at which time Lead Counsel intends to present these settlements to the Court. Attached hereto as Exhibits B - E are true and correct copies of the executed settlement agreements with the objectors to the Prior Settlements.

I declare under penalty of perjury that the foregoing is true and correct.  Executed this 18th day of August 2022 at San Francisco, California.

/s/ Mario N. Alioto
Mario N. Alioto

***Lead Counsel for the Indirect Purchaser Plaintiffs***

DECLARATION OF MARIO N. ALIOTO IN SUPPORT OF INDIRECT PURCHASER PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 17-cv-04067-JST; Master File No. 07-cv-05944-JST

# EXHIBIT A

## SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is made and entered into this **25**th day of October, 2017 (the "Execution Date"), by and between Mitsubishi Electric Corporation ("Mitsubishi Electric") and the indirect-purchaser plaintiff class representatives ("Plaintiffs"), both individually and on behalf of a proposed settlement class of indirect purchasers of Cathode Ray Tube (CRT) Products ("the Settlement Class") as more particularly defined below.

WHEREAS, Plaintiffs have prosecuted claims in *In Re Cathode Ray Tube (CRT) Antitrust Litigation,* MDL No. 1917 (N.D. Cal.) (the "MDL") on their own behalf and on behalf of other indirect purchaser classes, against other defendant manufacturers of CRTs;

WHEREAS, Plaintiffs have brought an additional class action, by filing a Class Action Complaint (the "Complaint") relating to the MDL claims against Mitsubishi Electric in *Luscher, et al., v. Mitsubishi Electric Corp.*, No. 17-cv-04067 (N.D. Cal.) ("the Action");

WHEREAS, Plaintiffs allege in the Complaint that Mitsubishi Electric participated in an unlawful conspiracy to raise, fix, maintain, or stabilize the price of CRTs at artificially high levels in violation of various state antitrust, unfair competition and consumer protection laws of the jurisdictions alleged in the Complaint, as defined below, and that, as a result of the alleged CRT conspiracy, Plaintiffs and similarly-situated indirect purchasers of CRT Products in those jurisdictions paid more for CRT Products than they would have paid in the absence of the conspiracy;

WHEREAS, Mitsubishi Electric denies Plaintiffs' allegations and is prepared to assert defenses to Plaintiffs' claims;

WHEREAS, Plaintiffs have conducted extensive discovery into the facts and extensive analysis of the law in the MDL regarding the subject matter of the Complaint and have concluded that resolving claims against Mitsubishi Electric according to the terms set forth below is in the best interest of Plaintiffs and the Settlement Class;

WHEREAS, Plaintiffs and Mitsubishi Electric exchanged their positions regarding the merits of the case, and have engaged in a mediation conducted with the assistance of U.S. Magistrate Judge Jacqueline Scott Corley;

WHEREAS, with Magistrate Judge Corley's assistance, the parties were able to reach agreement to resolve the claims of the Plaintiffs and the Settlement Class against Mitsubishi Electric without further litigation; and

WHEREAS, Mitsubishi Electric, despite its belief that it is not liable for the claims asserted and that it has good defenses thereto, has nevertheless agreed to enter into this Agreement to avoid further expense, inconvenience, and the distraction of burdensome and protracted litigation, to obtain the releases, orders, and judgment contemplated by this Agreement, and to put to rest with finality all claims that have been or could have been asserted against Mitsubishi Electric based on the allegations of the Complaint, as more particularly set out below;

NOW, THEREFORE, in consideration of the covenants, agreements, and releases set forth herein and for other good and valuable consideration, it is agreed by and among the undersigned that the Complaint and all claims against Mitsubishi Electric be settled, compromised, and dismissed on the merits with prejudice as to the Mitsubishi Electric Releasees, as defined below, and except as hereinafter provided, without costs as to

2

Plaintiffs, the Settlement Class, or Mitsubishi Electric, subject to the approval of the Court, on the following terms and conditions:

A.    Definitions.

1.    "Alleged Co-Conspirators" shall mean any and all entities alleged in the Complaint, or later alleged, to have participated in, the improper conduct alleged in the Complaint, as well as their past and present, direct and indirect, parents, subsidiaries, affiliates, joint ventures, unincorporated entities, divisions, and groups; the predecessors, successors and assigns of any of the above; and each and all of the present and former principals, partners, officers, directors, supervisors, employees, agents, representatives, insurers, attorneys, heirs, executors, administrators, and assigns of each of the foregoing.

2.    "Class Period" is defined as alleged in the Complaint, Paragraph 24.

3.    "Court" shall mean the United States District Court for the Northern District of California.

4.    "CRTs" and "CRT Products" are defined as alleged in the Complaint, Paragraph 21 through 23.

5.    "Indirect Purchaser Jurisdiction/s" shall mean Arizona, Arkansas, California, District of Columbia, Florida, Hawaii, Iowa, Kansas, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, Rhode Island, South Carolina, South Dakota, Tennessee, Utah, Vermont, West Virginia, and/or Wisconsin.

6.    "Mitsubishi Electric Releasees" means Mitsubishi Electric Corporation and all of its past and present, direct and indirect, parents, subsidiaries, affiliates, joint ventures, unincorporated entities, divisions, and groups; the predecessors, successors and assigns of

3

any of the above; and each and all of the present and former principals, partners, officers, directors, supervisors, employees, agents, representatives, insurers, attorneys, heirs, executors, administrators, and assigns of each of the foregoing. Without limiting the generality of this definition, the term "Mitsubishi Electric Releasees" shall be interpreted to include Mitsubishi Electric US, Inc. (MEUS) (f/k/a Mitsubishi Electric & Electronics USA, Inc.), individually and as successor to Mitsubishi Electronics America, Inc. (MELA); MELA; Mitsubishi Electric Visual Solutions America, Inc. (MEVSA); Mitsubishi Digital Electronics America, Inc. (MDEA), individually and as successor to Mitsubishi Consumer Electronics America, Inc. (MCEA); NEC-Mitsubishi Electric Visual Systems Corporation (NMV); and NEC-Mitsubishi Electronics Display of America, Inc. (NMDA).

7.      "Plaintiffs" shall mean the individual class representative plaintiffs listed in the Complaint.

8.      "Released Claims" means the claims released under this Settlement Agreement as defined below in Paragraph 22 of this Agreement.

9.      "Releasors" means the Plaintiffs and the Settlement Class Members, and their past and present principals, partners, officers, directors, supervisors, employees, agents, stockholders, attorneys, servants, representatives, parents, subsidiaries, affiliates, insurers and all other persons, partnerships or corporations with whom any of the former have been, or are now, affiliated, and the predecessors, successors, heirs, executives, administrators and assigns of any of the foregoing, as well as anyone claiming by, for, or through the Releasors.

10.     "Settlement Class" shall mean:

        (a)     all persons or entities who indirectly purchased in an Indirect Purchaser Jurisdiction, other than Rhode Island, for their own use and not for resale,

4

CRTs or CRT Products manufactured and/or sold by any Mitsubishi Electric Releasee, or any Alleged Co-Conspirator, where such purchase took place during the following time periods:

    1)  From March 1, 1995 through November 25, 2007 for purchases in Arizona, Arkansas, California, District of Columbia, Florida, Iowa, Kansas, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, South Carolina, South Dakota, Tennessee, Utah, Vermont, West Virginia, and Wisconsin;

    2)  From June 25, 2002 through November 25, 2007 for purchases in Hawaii;

    3)  From July 20, 2002 through November 25, 2007 for purchases in Nebraska;

    4)  From February 4, 1999 through November 25, 2007 for purchases in Nevada;

(b)    all natural persons who indirectly purchased in Rhode Island from March 1, 1995 through November 25, 2007, for their own use and not for resale, CRTs or CRT Products manufactured and/or sold by any Mitsubishi Electric Releasee, or any Alleged Co-Conspirator;

(c)    specifically excluded from the Settlement Class are Mitsubishi Electric Releasees, Alleged Co-Conspirators, any federal, state or local government

5

entities, and any judicial officer presiding over this action and the members of his/her immediate family and judicial staff.

11.    "Settlement Class Counsel" shall mean:

> Mario N. Alioto
> Trump, Alioto, Trump & Prescott LLP
> 2280 Union Street
> San Francisco, CA 94123

12.    "Settlement Class Member" means the Plaintiffs and each member of the Settlement Class who, after receiving notice of the settlement contemplated by this Agreement, does not timely elect to be excluded from the Settlement Class.

B.    Approval of this Agreement and Dismissal of Claims Against Mitsubishi Electric.

13.    Plaintiffs and Mitsubishi Electric shall use their best efforts to effectuate this Agreement, including cooperating in seeking the Court's approval for the establishment of procedures (including the giving of class notice under Federal Rules of Civil Procedure 23(c) and (e)) to secure the complete and final dismissal with prejudice of the Action, without undue delay.

14.    Plaintiffs shall, within a reasonable time after the Execution Date, submit to the Court a Preliminary Approval Motion or Motions ("Preliminary Approval Motion"), along with a Proposed Order requesting the following:

(a)    directing that proceedings on the Complaint be held in abeyance pending consideration of this Agreement, if not already entered;

(b)    approving the certification of the Settlement Class.    The parties agree to stipulate that the requirements of Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure are satisfied as to the Settlement Class;

6

(c) establishing procedures for the giving of notice to the Settlement Class of the Settlement provided for in this Agreement; defining the form and content of that notice; setting forth the method and timing of notice; directing that the Settlement Class be given notice of the date of the hearing at which the Court will consider whether finally to approve this Settlement Agreement; and authorizing Settlement Class Counsel to disseminate notice of the settlement and the proposed final judgment contemplated by this Agreement to the Settlement Class;

(d) granting preliminary approval to the Agreement; and

(e) setting a schedule for further proceedings in the case, including the schedule and procedure for any objections, for any motion for final approval of the Agreement, and for a hearing on that motion.

15. The text of the Preliminary Approval Motion, its exhibits, and the proposed form of order shall be agreed upon by Plaintiffs and Mitsubishi Electric before submission to the Court.

16. The Preliminary Approval Motion shall recite and ask the Court to find that the proposed form of and method for dissemination of the notice of settlement constitutes valid, due and sufficient notice to the Settlement Class, constitutes the best notice practicable under the circumstances, and complies fully with the requirements of due process, Federal Rule of Civil Procedure 23, and any applicable state laws.

17. If notice to the Settlement Class is given jointly with a notice of settlement(s) with any other settling defendant, for purposes of Paragraph 27 below, the costs of notice and claims administration shall be prorated with any other such defendant based on their respective settlement amounts.

7

18.     Notice to the Settlement Class shall advise the persons and entities in the Settlement Class of their right to seek exclusion from the Settlement Class, contain the date by which all requests for exclusion must be submitted ("Opt-out Deadline"), and set forth the procedure for requesting exclusion.

19.     Thereafter, in accordance with a schedule established by the Court, Plaintiffs shall file a motion in which they may seek the entry of an order and final judgment ("Final Approval Motion") to secure the complete, and final dismissal with prejudice of the Complaint, without undue delay, as to Mitsubishi Electric only. The Final Approval Motion shall include a proposed form of order. The text of the Final Approval Motion, its exhibits, and the proposed form of order shall be agreed upon by Plaintiffs and Mitsubishi Electric before submission of the Motion. The proposed order and final judgment sought in the Final Approval Motion will include, at a minimum, the substance of the following provisions:

        (a)     as to the Complaint, approving finally this settlement and its terms as being a fair, reasonable and adequate settlement as to the Settlement Class Members within the meaning of Rule 23 of the Federal Rules of Civil Procedure and directing its consummation according to its terms;

        (b)     as to Mitsubishi Electric, directing that the Complaint be dismissed with prejudice and, except as provided for in this Agreement, without costs and expenses;

        (c)     directing Settlement Class Counsel to implement this Settlement Agreement, including administering and distributing the settlement to the Settlement Class;

8

(d)      reserving exclusive jurisdiction over the settlement and this Agreement, including the administration and consummation of this settlement, to the Court, which shall be exclusive to the extent permitted by law; and

(e)      determining under Federal Rule of Civil Procedure 54(b) that there is no just reason for delay and directing entry of final judgment of dismissal as to Mitsubishi Electric.

20.      This Agreement shall become final when (i) the Court has entered a final order approving this Agreement under Federal Rule of Civil Procedure 23(e) and a final judgment dismissing the Complaint with prejudice as to Mitsubishi Electric against all Settlement Class Members and without costs other than those provided for in this Agreement, and (ii) the time for appeal or to seek permission to appeal from the Court's approval of this Agreement and entry of a final judgment as to the Mitsubishi Electric described in (i) hereof has expired or, if appealed, approval of this Agreement and the final judgment as to Mitsubishi Electric have been affirmed in their entirety by the court of last resort to which such appeal has been taken and such affirmance is no longer subject to further appeal or review. It is agreed that the provisions of Rule 60 of the Federal Rules of Civil Procedure shall not be taken into account in determining the above-stated times. On the Execution Date, Plaintiffs and Mitsubishi Electric shall be bound by the terms of this Agreement, and this Agreement shall not be rescinded except in accordance with Paragraph 36 of this Agreement.

21.      Neither this Agreement (whether or not it should become final) nor the final judgment, nor any and all negotiations, documents and discussions associated with them, shall be deemed or construed to be an admission by Mitsubishi Electric (or the Mitsubishi

9

Electric Releasees) or evidence of any violation of any statute or law or of any liability or wrongdoing whatsoever by Mitsubishi Electric (or the Mitsubishi Electric Releasees), or of the truth of any of the claims or allegations contained in the Complaint or any pleading by Plaintiffs filed in the MDL, and evidence thereof shall not be discoverable or used directly or indirectly, in any way, whether in the MDL or in any other action or proceeding. Neither this Agreement, nor any of its terms and provisions, nor any of the negotiations or proceedings connected with it, nor any other action taken to carry out this Agreement by any of the settling parties shall be referred to, offered as evidence or received in evidence in any pending or future civil, criminal, or administrative action or proceedings, other than in a proceeding to enforce this Agreement, or to defend against the assertion of Released Claims, or as otherwise required by law.

C.     Release, Discharge, and Covenant Not to Sue.

22.     In addition to the effect of any final judgment entered in accordance with this Agreement, upon this Agreement becoming final as set out in Paragraph 20 of this Agreement, and in consideration of payment of the Settlement Amount, as specified in Paragraph 25 of this Agreement, and for other good and valuable consideration identified in this Agreement, the Releasors shall completely release, acquit, and forever discharge the Mitsubishi Electric Releasees from any and all claims, demands, judgments, actions, suits, causes of action, whether class, individual, or otherwise (whether or not any Settlement Class Member has objected to the settlement or makes a claim upon or participates in the Settlement Fund, whether directly, representatively, derivatively, or in any other capacity) that Releasors, or each of them, ever had, now has, or hereafter can, shall, or may have on account of, or in any way arising out of, any and all known and unknown, foreseen and

10

unforeseen, suspected or unsuspected, actual or contingent, liquidated or unliquidated claims, injuries, damages, and consequences thereof in any way arising out of or relating in any way to any act or omission of the Mitsubishi Electric Releasees (or any of them) or any other entity concerning the manufacture, supply, distribution, sale, or pricing of CRTs or CRT Products up to the Execution Date, and concerning any conduct alleged or that could have been alleged by Releasors, or causes of action asserted or that could have been asserted by Releasors, regarding the CRT conspiracy alleged in the Complaint (that is, any conspiracy concerning the manufacture, supply, distribution, sale, or pricing of CRTs, whether sold separately or as part of CRT Products), arising under any federal law or under the laws of any Indirect Purchaser Jurisdiction (whether state antitrust, unfair competition, unfair practices, price discrimination, unitary pricing, unjust enrichment, contract, or trade practice or any other law of those jurisdictions) (the "Released Claims"). Releasors shall not, after the Execution Date, sue or otherwise seek to establish liability against any Mitsubishi Electric Releasee based, in whole or in part, upon any of the Released Claims or conduct at issue in the Released Claims, except that Releasors reserve the right, in pursuing claims in the MDL against defendants other than the Mitsubishi Electric Releasees, to assert that Mitsubishi Electric participated in the alleged conspiracy to fix prices. However, this paragraph shall not preclude Plaintiffs from pursuing any and all of their claims against other defendants, excepting the Mitsubishi Electric Releasees, for the sale of CRTs or CRT Products by those other defendants, or any subsidiary or affiliate thereof, or their alleged co-conspirators, including claims against those other defendants for sales of CRTs or CRT Products manufactured by Mitsubishi Electric.

11

23.     The release, discharge, and covenant not to sue set forth in Paragraph 22 of this Agreement does not include claims by any of the Settlement Class Members other than the Released Claims.  For example, those provisions do not include Settlement Class Members' claims arising out of product liability, personal injury, or breach of contract not related to the subject matter of the Complaint, or claims arising under the laws of any jurisdiction not included in the Indirect Purchaser Jurisdictions.  The release, discharge, and covenant not to sue set forth in Paragraph 22 of this Agreement also does not include claims by any person or entity that is not a member of the Settlement Class.

24.     In addition to the provisions of Paragraph 22 of this Agreement, Releasors hereby expressly waive and release, upon this Agreement becoming final, any and all provisions, rights, and benefits conferred by § 1542 of the California Civil Code, which states:

> CERTAIN CLAIMS NOT AFFECTED BY GENERAL RELEASE. A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR;

or by any law of any state of the United States, or principle of common law, which is similar, comparable, or equivalent to § 1542 of the California Civil Code and applicable to the Settlement Class Members. Each Releasor may hereafter discover facts other than or different from those which he, she, or it knows or believes to be true with respect to the claims which are the subject matter of the provisions of Paragraph 22 of this Agreement, but each Releasor hereby expressly waives and fully, finally, and forever settles and releases, upon this Agreement becoming final, any known or unknown, suspected or unsuspected,

12

contingent or non-contingent claim with respect to the subject matter of the provisions of Paragraph 22 of this Agreement, whether or not concealed or hidden, without regard to the subsequent discovery or existence of such different or additional facts.

D.    Settlement Amount.

25.    Subject to the provisions hereof, and in full, complete and final settlement of the matters asserted in the Complaint as provided herein, Mitsubishi Electric shall pay $33,000,000 (the "Settlement Amount") into an escrow account in United States Dollars to be administered in accordance with the provisions of Paragraph 26 of this Agreement (the "Escrow Account").    Mitsubishi Electric shall deposit the Settlement Amount into the Escrow Account within thirty (30) days after the later of (i) the Execution Date or (ii) the parties' execution of the Escrow Agreement described in Paragraph 26.    The amount deposited into the Escrow Account, plus any interest on that amount, less any expenses authorized to be paid from the Escrow Account, shall constitute the "Settlement Fund."

26.    Escrow Account.

(a)    The Escrow Account will be established pursuant to an Escrow Agreement with a bank agreed upon by Plaintiffs and Mitsubishi Electric, with such Bank serving as escrow agent ("Escrow Agent") subject to escrow instructions mutually acceptable to Settlement Class Counsel and Mitsubishi Electric, such escrow to be administered under the Court's continuing supervision and control.

(b)    The Escrow Agent shall cause the funds deposited in the Escrow Account to be invested in short-term instruments backed by the full faith and credit of the United States Government or fully insured in writing by the United States Government, or money market funds rated Aaa and AAA, respectively by Moody's Investor Services and

13

Standard and Poor's, invested substantially in such instruments, and shall reinvest any income from these instruments and the proceeds of these instruments as they mature in similar instruments at their then current market rates. Mitsubishi Electric will bear no risk of loss regarding the funds in the Escrow Account and shall discharge completely its obligation to pay under this Agreement by paying the Settlement Amount to the Escrow Account, as required in Paragraph 25.

(c)     All funds held in the Escrow Account shall be deemed and considered to be in *custodia legis* of the Court, and shall remain subject to the jurisdiction of the Court, until such time as such funds shall be distributed pursuant to this Agreement and/or further order(s) of the Court.

(d)     Plaintiffs and Mitsubishi Electric agree to treat the Settlement Fund as being at all times a qualified settlement fund within the meaning of Treas. Reg. §1.468B-1. In addition, the Escrow Agent shall timely make such elections as necessary or advisable to carry out the provisions of this Paragraph 26, including the relation-back election (as defined in Treas. Reg. §1.468B-1) back to the earliest permitted date. Such elections shall be made in compliance with the procedures and requirements contained in such regulations. It shall be the responsibility of the Escrow Agent to timely and properly prepare and deliver the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur.

(e)     For the purpose of § 468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, the administrator shall be the Escrow Agent. The Escrow Agent shall timely and properly file all informational and other tax returns necessary or advisable with respect to the Settlement Fund (including without

14

limitation the returns described in Treas. Reg. § 1.468B-2(k)(1)). Such returns (as well as the election described in Paragraph 26 (d)) shall be consistent with Paragraph 26 (d) and in all events shall reflect that all Taxes, as defined below (including any estimated Taxes, interest or penalties), on the income earned by the Settlement Fund shall be paid out of the Settlement Fund as provided in Paragraph 26 (f) hereof.

(f)     All (i) taxes (including any estimated taxes, interest or penalties) arising with respect to the income earned by the Settlement Fund, including any taxes or tax detriments that may be imposed upon Mitsubishi Electric or any other Mitsubishi Electric Releasee with respect to any income earned by the Settlement Fund for any period during which the Settlement Fund does not qualify as a qualified settlement fund for federal or state income tax purposes ("Taxes"); and (ii) expenses and costs incurred in connection with the operation and implementation of Paragraphs 26 (d) through 26 (f) (including, without limitation, expenses of tax attorneys and/or accountants and mailing and distribution costs and expenses relating to filing (or failing to file) the returns described in this Paragraph 26 (f) ("Tax Expenses")), shall be paid out of the Settlement Fund.

(g)     Neither Mitsubishi Electric nor any other Mitsubishi Electric Releasee nor their respective counsel shall have any liability or responsibility for the Taxes or the Tax Expenses. Taxes and Tax Expenses shall be treated as, and considered to be, a cost of administration of the Settlement Fund and shall be timely paid by the Escrow Agent out of the Settlement Fund without prior order from the Court and the Escrow Agent shall be obligated (notwithstanding anything herein to the contrary) to withhold from distribution to any claimants authorized by the Court any funds necessary to pay such amounts including the establishment of adequate reserves for any Taxes and Tax Expenses (as well as any

15

amounts that may be required to be withheld under Treas. Reg. § 1.468B-2(1)(2)). Neither Mitsubishi Electric nor any other Mitsubishi Electric Releasee is responsible nor shall they have any liability therefor. Plaintiffs and Mitsubishi Electric agree to cooperate with the Escrow Agent, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of Paragraphs 26 (d) through 26 (f).

(h)     If this Agreement does not receive final court approval, then the Settlement Fund shall be returned to Mitsubishi Electric from the Escrow Account by the Escrow Agent within thirty (30) calendar days.

27.     Payment of Expenses.

(a)     Subject to the proration provision in Paragraph 17, Mitsubishi Electric agrees to permit use of a maximum of $3,000,000 of the Settlement Fund towards reasonable notice to the Settlement Class and the costs of administration of the Settlement Fund set forth in Paragraphs 14 and 19. The $3,000,000, or the lesser prorated amount under Paragraph 17, in reasonable notice and administration expenses are not recoverable by Mitsubishi Electric if this Agreement does not become final pursuant to Paragraph 20, to the extent such funds are expended for notice and administration costs. Other than as set forth in this Paragraph 27 (a), each party shall be liable for its own costs or expenses of the litigation of the Action, including attorneys' fees; fees and expenses of expert witnesses and consultants; and costs and expenses associated with discovery, motion practice, hearings before the Court or any Special Master, appeals, trials or the negotiation of other settlements.

(b)     If Settlement Class Counsel have entered or subsequently enter into any other settlements on behalf of the Settlement Class, or some or all of their members, before notice of this Agreement is given to the Settlement Class, Settlement Class Counsel

16

shall use reasonable efforts to provide a single notice to prospective class members of all of the settlements.

E.    The Settlement Fund.

28.    Releasors shall look solely to the Settlement Fund for settlement and satisfaction against the Mitsubishi Electric Releasees of all Released Claims, and shall have no other recovery against Mitsubishi Electric or any other Mitsubishi Electric Releasee, directly or indirectly.

29.    After this Agreement becomes final within the meaning of Paragraph 20, the Settlement Fund shall be distributed in accordance with a plan to be submitted at the appropriate time by Plaintiffs, subject to approval by the Court. In no event shall Mitsubishi Electric or any Mitsubishi Electric Releasee have any responsibility, financial obligation, or liability whatsoever with respect to the investment, distribution, or administration of the Settlement Fund, including, but not limited to, the costs and expenses of such distribution and administration, with the sole exception of the provisions set forth in Paragraph 27 (a) of this Agreement. Mitsubishi Electric shall be dismissed from the Action prior to any distribution of this Settlement Fund.

30.    Plaintiffs and Settlement Class Counsel shall be reimbursed and indemnified solely out of the Settlement Fund for all expenses. Mitsubishi Electric and the other Mitsubishi Electric Releasees shall not be liable for any costs, fees, or expenses of any of Plaintiffs' or the Settlement Class's respective attorneys, experts, advisors, agents, or representatives, but all such costs, fees, and expenses as approved by the Court shall be paid out of the Settlement Fund.

17

F.    Cooperation

31.    Upon execution of the Agreement, Mitsubishi Electric shall reasonably cooperate with Settlement Class Counsel as set forth specifically below:

(a)    Mitsubishi Electric shall provide Settlement Class Counsel with copies of all discovery (including among other things, all documents, interrogatories, requests for admission, etc.) Mitsubishi Electric produces to any other party in the MDL, to the extent this discovery has not already been provided to Settlement Class Counsel;

(b)    Mitsubishi Electric agrees to provide a declaration to establish, to the best of its ability, the foundation and authenticity of Mitsubishi Electric's transactional data. In addition, Mitsubishi Electric agrees to provide a declaration to establish, to the best of its ability, the foundation of any Mitsubishi Electric document or data Settlement Class Counsel identifies as necessary for summary judgment and/or trial in the MDL;

(c)    If any document protected by the attorney-client privilege, attorney work product protection, joint defense or any other protection, privilege, or immunity is accidentally or inadvertently produced under this Paragraph, the document shall promptly be destroyed and/or returned to Mitsubishi Electric, and its production shall in no way be construed to have waived any privilege or protection attached to such document;

(d)    Releasors and Settlement Class Counsel agree they will not use the information provided by Mitsubishi Electric or the Mitsubishi Electric Releasees or their representatives under this paragraph for any purpose other than the pursuit of the MDL, and will not publicize the information beyond what is reasonably necessary for the prosecution of the MDL or as otherwise required by law. Any documents and other information provided

18

will be deemed "Highly Confidential" and subject to the protective order entered in the MDL as if they had been produced in response to discovery requests and so designated;

(e)     Notwithstanding any other provision in this Agreement, Plaintiffs agree that they and Settlement Class Counsel shall maintain all statements made by Mitsubishi Electric's counsel as strictly confidential; and that they shall not use directly or indirectly the information so received for any purpose other than the prosecution of the MDL. The parties and their counsel further agree that any statements made by Mitsubishi Electric's counsel in connection with and/or as part of this settlement, shall be protected by Federal Rule of Evidence 408, and shall in no event be discoverable by any person or treated as evidence of any kind.

G.     Requests for Exclusion

32.     The Notice of the settlement provided pursuant to Paragraphs 14 (c) and 18 shall advise members of the Settlement Class of their right, pursuant to Federal Rule of Civil Procedure 23, to request exclusion ("opt out") from the Settlement Class and shall advise members of the Settlement Class of the procedure for requesting exclusion from the Settlement Class and the Opt-Out Deadline. Subject to Court approval, any person or entity seeking exclusion from the Settlement Class must file a written request for exclusion by the Opt-Out Deadline. The notice of settlement and final judgment to be disseminated to the Settlement Class will require that all written requests for exclusion include the full name, address and telephone number of the member of the Settlement Class who is seeking exclusion, and a statement that the member wishes to be excluded from the Settlement Class. Any person or entity that files a valid request for exclusion shall be excluded from the Settlement Class and shall have no rights with respect to this settlement.

19

33.     Subject to Court approval, a request for exclusion that does not comply with all of the provisions set forth in the applicable Court approved notice of settlement and final judgment to be disseminated to the members of the Settlement Class will be invalid, and the person(s) or entity(ies) serving such an invalid request shall be deemed Settlement Class Member(s) and shall be bound by the Agreement upon final approval.

H.      Settlement Class Counsel's Attorneys' Fees And Reimbursement of Expenses.

34.     Settlement Class Counsel may submit an application or applications to the Court for payment of reasonable attorneys' fees and reimbursement of reasonable expenses (the "Fee and Expense Application") for distribution to them from the Settlement Fund.

(a)     Mitsubishi Electric agrees that it will take no position regarding such application(s) for: (i) an award of attorneys' fees not in excess of one-third of the Settlement Fund; plus (ii) reimbursement of reasonable expenses and costs incurred, or to be incurred, in connection with prosecuting the Action, plus interest on such attorneys' fees, costs and expenses at the same rate and for the same period as earned by the Settlement Fund (until paid) as may be awarded by the Court (the "Fee and Expense Award").

(b)     Settlement Class Counsel shall allocate the attorneys' fees among Plaintiffs' counsel in a manner which he in good faith believes reflects the contributions of such counsel to the prosecution and settlement of the Action, provided that if a court rules otherwise, Plaintiffs shall not have a right to rescind this Agreement based on that ruling. Settlement Class Counsel reserves the right to make additional applications for fees and expenses incurred, but in no event shall Mitsubishi Electric Releasees be responsible to pay any such additional fees and expenses except to the extent they are paid out of the Settlement

20

Fund. In addition, after final approval, Settlement Class Counsel may apply to use any amount paid by Mitsubishi Electric to pay the past or future expenses of this litigation.

(c)     The Fee and Expense Award, as approved by the Court, shall be paid solely from the Settlement Fund to any Plaintiffs' counsel seeking such payment within five (5) court days after all of the following conditions have been met: (i) the Court has entered an order awarding plaintiffs' counsel its fees; (ii) such order has been provided to the Escrow Agent;  (iii) the irrevocable letter of credit or other security described below has been provided to the Escrow Agent, Settlement Class Counsel and Mitsubishi Electric; and (iv) each such Plaintiff's counsel's law firm as a condition of receiving such fees, expenses and costs, on behalf of itself and each partner and/or shareholder of it, agrees before receiving funds that the law firm and its partners and/or shareholders are subject to the jurisdiction of the Court for the purpose of enforcing this Paragraph 34. Each such Plaintiffs' counsel as a condition to the receipt of payment of fees from the Settlement Fund prior to this Agreement becoming final as set forth in Paragraph 20 of this Agreement, shall deliver to the Escrow Agent, Settlement Class Counsel and Mitsubishi Electric either an irrevocable letter of credit or such other security as Mitsubishi Electric accepts in writing in advance of such payment. The security described in this paragraph shall be in favor of both Mitsubishi Electric and of the Settlement Fund.

(d)     Settlement Class Counsel shall be responsible for providing adequate notice of their aggregate fee request to the Settlement Class as required by Federal Rule of Civil Procedure 23.

(e)     For the avoidance of doubt, "Plaintiffs' counsel" as used in this Paragraph 34, shall include each attorney, sole practitioner and each law firm that receives

21

attorneys' fees or reimbursement of expenses from the Settlement Fund pursuant to Paragraph 34 (c) together jointly and severally with such attorney's law firm and all of their equity partners or equity owners. Mitsubishi Electric shall be entitled to enforce Paragraph 34 (c) and such related written undertakings in the Court. For the further avoidance of doubt, Mitsubishi Electric's obligation to fund the Settlement Fund will not be altered or increased if, for any reason, any Plaintiffs' counsel fails to repay to the Settlement Fund any sums due to be repaid pursuant to Paragraph 34.

(f)     Nothing in Paragraph 34 shall require Plaintiffs' counsel to accept payment prior to this Agreement becoming final as defined in Paragraph 20, and Plaintiffs' counsel may request the Escrow Agent to withhold payment until this Agreement is final. Plaintiffs' counsel may elect to receive partial payment of fees and of expenses. Plaintiffs' counsel electing to receive payment prior to such finality shall be subject to the terms in Paragraph 34 (c).

(g)     In the event that settlement approval is reversed on appeal or any portion of the Fee and Expense Award is vacated, reversed or reduced by the Court or on appeal, any Plaintiffs' counsel that received payments of any Fee and Expense Award that are subject to elimination or reduction shall, within ten (10) court days after receiving notice of the applicable court order, refund to the Settlement Fund the full amount of the Fee and Expense Award previously paid to such counsel pursuant to this Paragraph 34, or, if the Fee and Expense Award is reduced, a proportion of such full amount which shall be equal to the proportion of the reduced Fee and Expense Award to the original awards.

(h)     In the event such Plaintiffs' counsel fails to make a full refund of the applicable amount of expenses received under Paragraph 34 (c) within the 10-day period,

22

such Plaintiffs' counsel (and/or such attorney's law firm and all of their equity partners or equity owners) shall be liable to Mitsubishi Electric or, if applicable, the Settlement Fund. In the event such Plaintiffs' counsel fails to make a full refund of the applicable amount of fees received under Paragraph 34 (c) within the 10-day period, Mitsubishi Electric or, if applicable, the Settlement Fund shall have the right to execute on the security. In no event shall any law firm be liable for repayment of any amounts received by any other law firm.

(i)     The procedure for and the allowance or disallowance by the Court of the application by Settlement Class Counsel for attorneys' fees, costs and expenses to be paid out of the Settlement Fund are not part of this Agreement, and are to be considered by the Court separately from the Court's consideration of the fairness, reasonableness and adequacy of the Settlement, and any order or proceeding relating to the Fee and Expense Application, or any appeal from any such order shall not operate to terminate or cancel this Agreement, or affect or delay the finality of the judgment approving the settlement.

(j)     Neither Mitsubishi Electric nor any other Mitsubishi Electric Releasee under this Agreement shall have any responsibility for, or interest in, or liability whatsoever with respect to any payment to Plaintiffs' counsel of any Fee and Expense Award in the MDL.

(k)     Neither Mitsubishi Electric nor any other Mitsubishi Electric Releasee under this Agreement shall have any responsibility for, or interest in, or liability whatsoever with respect to the allocation among Plaintiffs' counsel, and/or any other person who may assert some claim thereto, of any Fee and Expense Award that the Court may make in the MDL.

23

I.      Effect of Exclusions

35.     Within ten (10) business days after the end of the period to request exclusion from the Settlement Class, Settlement Class Counsel will cause copies of timely requests for exclusion from the Settlement Class to be provided to counsel for Mitsubishi Electric. To the extent that Mitsubishi Electric determines in good faith that the volume of commerce in CRT Products attributable to purchasers who would otherwise be members of the Settlement Class but who timely and validly requested exclusion from the Settlement Class equals or exceeds ten percent (10%) of the total volume of commerce purchased by all Settlement Class members during the Class Period, Mitsubishi Electric may terminate the Agreement within thirty (30) days of receipt of the list of exclusions, pursuant to the procedure set forth in Paragraph 36. For purposes of this calculation, purchases by those indirect purchasers that excluded themselves from the Settlement Class will nonetheless be included in the total volume of commerce. In addition, the indirect purchases of the Direct Action Plaintiffs that separately sued Mitsubishi Electric will not be included in the volume of excluded commerce or in the total volume of commerce.

J.      Rescission if this Agreement is Not Approved, Final Judgment is Not Entered, or the Agreement is Terminated.

36.     If the Court refuses to approve this Agreement or any part hereof, or if such approval is modified or set aside on appeal, or if the Court does not enter the final judgment provided for in Paragraphs 19 and 20 of this Agreement, or if the Court enters the final judgment and appellate review is sought, and on such review, such final judgment is not affirmed in its entirety, or the Agreement is terminated by Mitsubishi Electric pursuant to Paragraph 35, then Mitsubishi Electric and Plaintiffs shall each, in their sole discretion, have the option to rescind this Agreement in its entirety, except as provided in Paragraph 27 (a).

24

Written notice of the exercise of any such right to rescind shall be made according to the terms of Paragraph 48. A modification or reversal on appeal of any amount of Settlement Class Counsel's fees and expenses awarded by the Court from the Settlement Fund or the plan of distribution of the Settlement Fund to Settlement Class members shall not be deemed a modification of all or a part of the terms of this Agreement or such final judgment.

37.    In the event that this Agreement does not become final pursuant to Paragraph 20, then the operative provisions of this Agreement shall be of no force or effect and any Settlement Fund shall be returned forthwith to Mitsubishi Electric less only disbursements already made in accordance with Paragraph 27 (a) of this Agreement. Plaintiffs expressly reserve all their claims and Mitsubishi Electric expressly reserves all of its rights and defenses if this Agreement does not become final within the meaning of Paragraph 20.

38.    Plaintiffs and Mitsubishi Electric agree that this Agreement, whether or not it shall become final, and any and all negotiations, documents, and discussions associated with it, shall not be deemed or construed to be an admission or evidence of any violation of any statute or law or of any liability or wrongdoing whatsoever by Mitsubishi Electric(or the Mitsubishi Electric Releasees), or of the truth of any of the claims or allegations contained in the Complaint or any other pleading filed in the MDL, or by any person or entity in any other action, or of the propriety of any class alleged in the Complaint, and evidence thereof shall not be discoverable or used directly or indirectly, in any way, whether in the MDL or in any other action or proceeding.

K.    Miscellaneous

39.    Mitsubishi Electric, Plaintiffs, and Settlement Class Counsel agree not to disclose publicly or to any other defendant in the MDL or third party the terms of this

25

Agreement until this Agreement is submitted to the Court for approval. A party may disclose the fact that it has settled the claims of the Settlement Class to the other parties in the MDL upon execution of this Settlement Agreement by both parties but not the terms of the settlement. The parties may, however, disclose the fact and amount of this Settlement to the Court.

40.     Mitsubishi Electric shall be responsible for effectuating the notice to governmental officials called for by the Class Action Fairness Act.

41.     This Agreement shall be construed and interpreted to effectuate the intent of the parties, which is to provide, through this Agreement, for a complete resolution of the relevant claims with respect to each Mitsubishi Electric Releasee as provided in this Agreement.

42.     This Agreement does not settle or compromise any claim by Plaintiffs or any Settlement Class Member against any defendant or alleged co-conspirator other than the Mitsubishi Electric Releasees. All rights against such other defendants or alleged co-conspirators are specifically reserved by Plaintiffs and the Settlement Class. Mitsubishi Electric sales to the Settlement Class shall not be removed from the MDL.

43.     The Court shall retain jurisdiction, which shall be exclusive to the extent permitted by law, over the implementation, enforcement, and performance of this Agreement, and shall have exclusive jurisdiction over any suit, action, proceeding, or dispute between the parties hereto arising out of or relating to this Agreement or the applicability of this Agreement that cannot be resolved by negotiation and agreement by Plaintiffs and Mitsubishi Electric. This Agreement shall be governed by and interpreted according to the

substantive laws of the State of California without regard to its choice of law or conflict of laws principles.

44.     This Agreement constitutes the entire, complete and integrated agreement among Plaintiffs and Mitsubishi Electric pertaining to the settlement of the Complaint against Mitsubishi Electric, and supersedes all prior and contemporaneous undertakings of Plaintiffs and Mitsubishi Electric in connection herewith. This Agreement may not be modified or amended except in writing executed by Plaintiffs and Mitsubishi Electric, and approved by the Court.

45.     This Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of Plaintiffs and Mitsubishi Electric. Without limiting the generality of the foregoing, each and every covenant and agreement made herein by Plaintiffs, Settlement Class Counsel or Mitsubishi Electric shall be binding upon, respectively, all Settlement Class Members, Releasors and Mitsubishi Electric. The Mitsubishi Electric Releasees (other than Mitsubishi Electric which is a party hereto) are third party beneficiaries of this Agreement and are authorized to enforce its terms applicable to them.

46.     This Agreement may be executed in counterparts by Plaintiffs and Mitsubishi Electric, and a facsimile signature shall be deemed an original signature for purposes of executing this Agreement.

47.     Neither Plaintiffs nor Mitsubishi Electric shall be considered to be the drafter of this Agreement or any of its provisions for the purpose of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter of this Agreement.

27

48.     Where this Agreement requires either party to provide notice or any other communication or document to the other, such notice shall be in writing, and such notice, communication, or document shall be provided by email, facsimile or letter by overnight delivery to the undersigned counsel of record for the party to whom notice is being provided.

49.     With respect to any person or entity that timely exercises its right to be excluded from the Settlement Class, Mitsubishi Electric reserves all its legal rights and defenses, including, but not limited to, any defenses relating to whether the excluded person or entity is an indirect purchaser of any allegedly price–fixed product and or has standing to bring any claim including under any antitrust, unfair competition, or consumer protection law.

50.     Each of the undersigned attorneys represents that he or she is fully authorized to enter into the terms and conditions of, and to execute, this Agreement, subject to Court approval.

Dated: October 24, 2017

Mario N. Alioto
malioto@tatp.com
Joseph M. Patane
jpatane@tatp.com
Lauren C. Capurro
laurenrussell@tatp.com
TRUMP, ALIOTO,TRUMP & PRESCOTT LLP
2280 Union Street
San Francisco, CA 94123
Telephone: (415) 563-7200

**Attorneys for Plaintiffs and Settlement Class Counsel**

Dated: October ___, 2017

28

48.     Where this Agreement requires either party to provide notice or any other communication or document to the other, such notice shall be in writing, and such notice, communication, or document shall be provided by email, facsimile or letter by overnight delivery to the undersigned counsel of record for the party to whom notice is being provided.

49.     With respect to any person or entity that timely exercises its right to be excluded from the Settlement Class, Mitsubishi Electric reserves all its legal rights and defenses, including, but not limited to, any defenses relating to whether the excluded person or entity is an indirect purchaser of any allegedly price–fixed product and or has standing to bring any claim including under any antitrust, unfair competition, or consumer protection law.

50.     Each of the undersigned attorneys represents that he or she is fully authorized to enter into the terms and conditions of, and to execute, this Agreement, subject to Court approval.

Dated: October __, 2017

_____
Mario N. Alioto
malioto@tatp.com
Joseph M. Patane
jpatane@tatp.com
Lauren C. Capurro
laurenrussell@tatp.com
TRUMP, ALIOTO,TRUMP & PRESCOTT LLP
2280 Union Street
San Francisco, CA 94123
Telephone: (415) 563-7200

**Attorneys for Plaintiffs and Settlement Class Counsel**

Dated: October **25**, 2017

28

Terrence J. Truax
ttruax@jenner.com
Michael T. Brody
mbrody@jenner.com
Gabriel A. Fuentes
gfuentes@jenner.com
JENNER & BLOCK LLP
353 N. Clark Street
Chicago, IL 60654
Telephone: (312) 222-9350

**Attorneys for Mitsubishi Electric Corporation**

29

**ADDENDUM TO SETTLEMENT AGREEMENT BETWEEN INDIRECT PURCHASER PLAINTIFFS AND MITSUBISHI ELECTRIC CORPORATION**

This Addendum to the Settlement Agreement dated October 25, 2017 ("Addendum"), entered into by and between Mitsubishi Electric Corporation ("Mitsubishi Electric") and the indirect purchaser plaintiff class representatives ("Plaintiffs"), both individually and on behalf of a proposed settlement class of indirect purchasers of Cathode Ray Tubes (CRTs) and CRT Products ("the Settlement Class") as more particularly described below, is made and entered into this 15th day of February 2018.

WHEREAS, Plaintiffs filed a class action complaint against Mitsubishi Electric (the "Complaint") on their own behalf and on behalf of 31 indirect purchaser state classes, alleging that Mitsubishi Electric participated in an unlawful conspiracy to raise, fix, maintain, or stabilize the price of CRTs at artificially high levels in violation of various state antitrust, unfair competition and consumer protection laws of the jurisdictions alleged in the Complaint;

WHEREAS, the Complaint alleges violations of Missouri's consumer protection statute (Mo. Rev. Stat. §407.020) on behalf of a class of Missouri indirect purchasers who or which, in accordance with the requirements of the Missouri statute, purchased CRTs or CRT Products "primarily for personal, family, or household purposes." Mo. Rev. Stat. §407.025, Complaint ¶¶ 244, 245, 277(a);

WHEREAS, the Complaint alleges violations of Montana's consumer protection statute (Montana Code §30-14-103) on behalf of a class of Montana indirect purchasers who or which, in accordance with the requirements of the Montana statute, purchased CRTs or

CRT Products "primarily for personal, family, or household purposes." Montana Code §§30-14-102, 30-14-133, Complaint ¶¶ 244, 245, 278(a);

WHEREAS, the Complaint alleges violations of Rhode Island's consumer protection statute (Rhode Island Gen. Laws § 6-13.1-1, *et seq.*) on behalf of a class of Rhode Island natural persons who, in accordance with the requirements of the statute, indirectly purchased CRTs or CRT Products "primarily for personal, family, or household purposes." R.I. Gen. Laws §6-13.1-5.2, Complaint ¶¶ 244, 245, 287(a);

WHEREAS, after arms-length negotiations in which Mitsubishi Electric and Plaintiffs were represented by counsel, and which included a mediation before U.S. Magistrate Judge Jacqueline Scott Corley on May 23, 2017, the parties negotiated and entered into a Settlement Agreement ("Agreement") pursuant to which Plaintiffs agreed to release all of their claims against Mitsubishi Electric in exchange for $33,000,000 in cash, which Agreement was executed by all parties on October 25, 2017, and in which Mitsubishi Electric made no admission of liability;

WHEREAS, the parties have met and conferred and agree that it is necessary to conform the definition of the Settlement Class in the Agreement to the requirements of the Missouri, Montana, and Rhode Island consumer protection statutes, and the allegations of the Complaint;

NOW, THEREFORE, it is agreed by and among the undersigned on behalf of the Mitsubishi Electric Releasees (as defined in Paragraph 6 of the Agreement) and Plaintiffs (as defined in Paragraph 7 of the Agreement) that the definition of the Settlement Class contained in Paragraph 10 of the Agreement is modified as follows:

1.      "Settlement Class" shall mean:

2

a)      all persons or entities who or which indirectly purchased in an Indirect Purchaser Jurisdiction, other than Missouri, Montana, and Rhode Island, for their own use and not for resale, CRTs or CRT Products manufactured and/or sold by any Mitsubishi Electric Releasee, or any Alleged Co-Conspirator, where such purchase took place during the following time periods:

1) From March 1, 1995 through November 25, 2007 for purchases in Arizona, Arkansas, California, District of Columbia, Florida, Iowa, Kansas, Maine, Massachusetts, Michigan, Minnesota, Mississippi, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, South Carolina, South Dakota, Tennessee, Utah, Vermont, West Virginia, and Wisconsin;

2) From June 25, 2002 through November 25, 2007 for purchases in Hawaii;

3) From July 20, 2002 through November 25, 2007 for purchases in Nebraska;

4) From February 4, 1999 through November 25, 2007 for purchases in Nevada;

b)      All persons who or which indirectly purchased in Missouri from March 1, 1995 through November 25, 2007, for their own use and not for resale, and primarily for personal, family or household purposes, CRTs or CRT Products

manufactured and/or sold by any Mitsubishi Electric Releasee, or any Alleged Co-Conspirator;

      c)     All persons who or which indirectly purchased in Montana from March 1, 1995 through November 25, 2007, for their own use and not for resale, and primarily for personal, family, or household purposes, CRTs or CRT Products manufactured and/or sold by any Mitsubishi Electric Releasee, or any Alleged Co-Conspirator;

      d)     All natural persons who indirectly purchased in Rhode Island from March 1, 1995 through November 25, 2007, for their own use and not for resale, and primarily for personal, family, or household purposes, CRTs or CRT Products manufactured and/or sold by any Mitsubishi Electric Releasee, or any Alleged Co-Conspirator;

      e)     specifically excluded from the Settlement Class are Mitsubishi Electric Releasees, Alleged Co-Conspirators, any federal, state or local government entities, and any judicial officer presiding over this action and the members of his/her immediate family and judicial staff.

2.     Other than the foregoing modification to the definition of the Settlement Class contained in Paragraph 10 of the Agreement, no other modification to the Agreement, or to the rights and obligations of the parties to the Agreement, is made or intended herein in this Addendum.

     3.      Each of the undersigned attorneys represents that he or she is fully authorized to enter into the terms and conditions of, and to execute, this Addendum, subject to Court approval.

Dated: February __, 2018

                                _____

                                  Mario N. Alioto
                                  malioto@tatp.com
                                  Joseph M. Patane
                                  jpatane@tatp.com
                                  Lauren C. Capurro
                                  laurenrussell@tatp.com
                                  TRUMP, ALIOTO, TRUMP & PRESCOTT LLP
                                  2280 Union Street
                                  San Francisco, CA 94123
                                  Telephone: (415) 563-7200

                                  **Attorneys for Plaintiffs and Settlement Class Counsel**

Dated: February 15, 2018

                                  _____
                                  Terrence J. Truax
                                  ttruax@jenner.com
                                  Michael T. Brody
                                  mbrody@jenner.com
                                  Gabriel A. Fuentes
                                  gfuentes@jenner.com
                                  JENNER & BLOCK LLP
                                  353 N. Clark Street
                                  Chicago, IL  60654
                                  Telephone:  (312) 222-9350

                                  **Attorneys for Mitsubishi Electric Corporation**

5

# EXHIBIT B

CONFIDENTIAL SETTLEMENT COMMUNICATION

# STRAUS & BOIES, LLP

### ATTORNEYS AT LAW
### 4041 UNIVERSITY DRIVE
### FIFTH FLOOR
### FAIRFAX, VIRGINIA 22030
### TELEPHONE: (703) 764-8700
### FACSIMILE: (703) 764-8704

April 9, 2018

**VIA E-MAIL**

Jan L. Westfall
29896 Blue Water Way
Menifee, CA 92584
jlwestfall.esq@gmail.com

RE:     *In re Cathode Ray (CRT) Antitrust Litigation*
        Case No. 16-16374 in the United States Court of Appeals for the Ninth Circuit

Dear Ms. Westfall:

This Letter Agreement ("**Agreement**") concerns Appeal No. 16-16374 ("**the Appeal**") brought by objector Donnie Clifton ("**Objector/Appellant**"), and pending in the United States Court of Appeals for the Ninth Circuit in the matter of *In re: Cathode Ray Tube (CRT) Antitrust Litigation* ("**the CRT Litigation Appeal**"). This Agreement is made and entered into by and between Objector/Appellant and his attorney, Jan Westfall, and Lead Counsel for Indirect Purchaser Plaintiffs ("**Lead Counsel**") in MDL No. 1917, Case No. 3:07-cv-05944-JST ("**the CRT Litigation**") (collectively the "**Parties**"). This Agreement memorializes the terms and conditions under which the Appeal shall be finally and fully compromised, settled and released, and the Appeal be dismissed with prejudice with no further adverse action taken, including objections filed or appeals taken in either the *CRT Litigation* Appeal or in matters arising in or from the *CRT*

1

CONFIDENTIAL SETTLEMENT COMMUNICATION

*Litigation*, including without limitation in the settlement of *Luscher v. Mitsubishi Electric Corp.,* Case No. 17-cv-04067-JST, by Objector/Appellant or his counsel.

Whereas the Parties have agreed to enter into this Agreement to avoid further expense, inconvenience, and the distraction of burdensome and protracted litigation, and in consideration of the covenants, agreements and releases set forth herein and for other good and valuable consideration, the Parties agree as follows:

1.  Within two (2) business days of the last execution date of this Agreement (**the "Execution Date"**), the undersigned Counsel for Objector/Appellant shall file a dismissal in the form of Exhibit A attached hereto with the United States Court of Appeals for the Ninth Circuit to dismiss the Appeal with prejudice and without costs and expenses. The Parties acknowledge dismissal of the Appeal lies within the discretion of the court and this Agreement is not contingent on the court's granting of the dismissal;

2.  Objector/Appellant hereby releases his claims in the *CRT Litigation* Appeal and the *CRT Litigation* on behalf of himself and his past and present employees, agents, attorneys, servants, representatives, affiliates, partners, insurers, and all other persons, partnerships or corporations with whom the former have been or are now affiliated; and the predecessors, successors, heirs, executives, administrators and assigns, as well as anyone claiming by, for or through Objector/Appellant or the foregoing. As stated above, neither Objector/Appellant nor his counsel will file any further objections or appeals in either the *CRT Litigation* Appeal or in matters arising in or from the *CRT Litigation*, including without limitation in the event of reversal and remand, or in the settlement of *Luscher v. Mitsubishi Electric Corp.,* Case No. 17-cv-04067-JST;

3.  In consideration for dismissal of the Appeal and the release of all claims relating to the *CRT Litigation*, Lead Counsel shall pay Two Hundred and Twenty Five Thousand Dollars ($225,000.00) (**the "Settlement Amount"**) to Objector/Appellant. The Settlement Amount consists of the following three components: a Thirty Thousand Dollars ($30,000) service payment to Objector/Appellant; Three Thousand Dollars ($3,000) in costs; and One Hundred and Ninety Two Thousand Dollars ($192,000) in attorneys' fees (the "**Attorney Fee Amount**"). Lead Counsel shall pay the Settlement Amount to Objector/Appellant via wire transfer pursuant to the instructions of Attorney Jan L. Westfall, at a time and under the conditions described below. Lead Counsel further agrees to release and forever hold harmless Objector/Appellant and his counsel from any and all claims or causes of action arising from either the objections or the proceedings in the district court in the CRT Litigation or arising in the course of the Appeal – whether presently known or unknown, vested or contingent, suspected or unsuspected, in law or in equity, up to the execution date;

2

CONFIDENTIAL SETTLEMENT COMMUNICATION

4.      The payment of the Settlement Amount by Lead Counsel to Attorney Jan L. Westfall on behalf of Objector/Appellant will occur within ten (10) business days of the finality of all of the following:

      (a) the "Order Granting Final Approval of Indirect Purchaser Settlements" (the *CRT Litigation*, Dkt. No. 4712), or subsequent like order;

      (b) the "Order on Attorneys' Fees, Expenses, and Incentive Awards Re: Indirect Purchaser Plaintiff Settlements" (the *CRT Litigation*, Dkt. No. 4740), or subsequent like order;

      (c) the "Order Re: Allocation of IPP Attorneys' Fee Award" (the *CRT Litigation*, Dkt. No. 5122), or subsequent like order; and

      (d) the entry of a final order, if any, directing payment of funds to Class Counsel (collectively, "the Orders").

5.      The Orders shall be determined to be Final by the occurrence of the first of the following events: (a) the dismissal of all pending appeals taken from any of the Orders; (b) a decision by the Court of Appeals in each of the then-pending cases in the *CRT Litigation* Appeal that affirms the District Court, and (i) the expiration of the period(s) for petitioning the United States Supreme Court to issue a writ of *certiorari*, or (ii) the denial of *certiorari* by the United States Supreme Court and of any petition for rehearing of such denial; or (c) a determination by the Supreme Court affirming the District Court, and the denial of any petition for rehearing that may be filed.

6.      In the event that the original Orders do not become Final, as defined above, and alternative orders and judgments are entered and ultimately become Final in the *CRT Litigation,* as set forth in paragraph 4, which orders provide for lower awards of attorneys' fees or expenses, the payment to the Objector/Appellant under this agreement shall be made within ten (10) days from the finality of these alternative orders (as finality is defined in paragraph 4) and the entry of any necessary order directing payment of said awards, provided however that the payment to Objector/Appellant of the Attorney Fee Amount pursuant to this Agreement shall be reduced in proportion to any reduction that may have been made to the aggregate awarded attorneys' fees and/or expense reimbursements. This reduction shall be computed by multiplying the Attorney Fee Amount by a fraction in which the reduced attorneys' fees and/or expense award is the numerator and the original attorneys' fees and/or expense award in the Orders is the denominator. That is, the Attorney Fee Amount paid to Objector/Appellant shall be reduced by the same percentage that the attorneys' fees and/or expenses are reduced.

7.      The Parties shall be bound on the Execution Date by the terms of this Agreement and it shall not be rescinded.

8.      Lead Counsel shall cause a Form 1099 to be issued to attorney Jan L. Westfall for the Settlement Amount.

CONFIDENTIAL SETTLEMENT COMMUNICATION

9.      Each attorney executing this Letter Agreement hereby warrants that such attorney has the full authority to do so.

10.     The provisions of this Agreement constitute the entire agreement between Lead Counsel and the Objector/Appellant, and no representations, warranties or inducements have been made to any person concerning the agreements referred to herein, other than those contained herein.  Any prior agreements or understandings between the Parties hereto are integrated into this Agreement. No changes, amendments or modifications shall be made to this Agreement, except those that are in writing, identified as a change, amendment or modification to the agreements contained herein, and signed by all of the signatories to this Agreement.

11.     In addition to the releases set forth in paragraphs 2 and 3, the Parties further expressly waive and release, upon this Agreement becoming Final, any and all provisions, rights, and benefits conferred by Section 1542 of the California Civil Code, which states:

>       CERTAIN CLAIMS NOT AFFECTED BY GENERAL RELEASE.   A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR,

or by any comparable law of any state or territory of the United States, or principle of common law. The Parties may hereafter discover facts other than or different from those which he knows or believes to be true with respect to the claims that are the subject matter of the releases contained herein, but the Parties hereby expressly waive and fully, finally, and forever settle and release, upon this Agreement becoming Final, any known or unknown, suspected or unsuspected, contingent or non-contingent claims with respect to the subject matter of the release, whether or not concealed or hidden, without regard to the subsequent discovery or existence of such different or additional facts.

12.     Neither this Agreement nor any and all negotiations, documents and discussions associated with them shall be deemed or construed to be an admission by Lead Counsel of the validity of any argument raised by Objector/Appellant, whether in the *CRT Litigation*, *the CRT Litigation* Appeal, or any other proceeding.

13.     This Agreement shall be construed and interpreted to effectuate the intent of the Parties, which is to provide, through this Agreement, for a complete resolution of the relevant claims as provided herein.

14.     This Agreement may be executed in one or more counterparts. A facsimile signature, PDF or JPG of a signature, or an electronic signature attested to by the signing party as authentic through email or other correspondence, shall be deemed an original signature for purposes

CONFIDENTIAL SETTLEMENT COMMUNICATION

of executing this Agreement.  All executed counterparts and each of them shall be deemed to be one and the same instrument.

15.   This Agreement is the product of negotiations and preparations by each party and his or her attorneys.  Therefore, the Parties agree that neither Objector/Appellant nor Lead Counsel shall be considered the drafter of this Agreement or any of its provisions for the purpose of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter of this Agreement.

16.   Objector/Appellant acknowledges that, in executing this Agreement, he has had the opportunity to seek the advice of counsel and has read and understood all of the terms and provisions of this Agreement.

17.   Pursuant to the Parties' agreement, Ninth Circuit Rule 33-1, the rules and procedures of the Ninth Circuit Mediation Office, and Fed. R. Evid. 408, the provisions of this Agreement are highly confidential, as are all communications regarding this Agreement, including those concerning the negotiation of the terms and conditions embodied herein, and none of these provisions or communications may be shared or discussed in any way with anyone except: a signatory hereto; the Court; persons designated by Lead Counsel; or as may be necessary in the enforcement of this Agreement.

18.   Any dispute arising under this Agreement shall be resolved by binding arbitration via ADR Services in San Francisco, California (**"ADR Services"**) under the Streamlined Arbitration Rules; and the parties hereto consent to the jurisdiction of ADR Services.  This Agreement shall be governed and interpreted according to the substantive laws of the State of California without regard to its choice of law or conflict of laws principles.

19.   The Parties agree that the prevailing party to any dispute arising under this Agreement shall be entitled to all of their attorneys' fees, costs, and expenses, including expert witness fees, from the non-prevailing party.

ON BEHALF OF LEAD COUNSEL:
Date:   4/9/18

_____
Timothy D. Battin   P.P.
Timothy D. Battin
Straus & Boies, LLP

Date:

_____
Jan L. Westfall

Date:

_____
Objector/Appellant Donnie Clifton

5

CONFIDENTIAL SETTLEMENT COMMUNICATION

of executing this Agreement. All executed counterparts and each of them shall be deemed to be one and the same instrument.

15.   This Agreement is the product of negotiations and preparations by each party and his or her attorneys. Therefore, the Parties agree that neither Objector/Appellant nor Lead Counsel shall be considered the drafter of this Agreement or any of its provisions for the purpose of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter of this Agreement.

16.   Objector/Appellant acknowledges that, in executing this Agreement, he has had the opportunity to seek the advice of counsel and has read and understood all of the terms and provisions of this Agreement.

17.   Pursuant to the Parties' agreement, Ninth Circuit Rule 33-1, the rules and procedures of the Ninth Circuit Mediation Office, and Fed. R. Evid. 408, the provisions of this Agreement are highly confidential, as are all communications regarding this Agreement, including those concerning the negotiation of the terms and conditions embodied herein, and none of these provisions or communications may be shared or discussed in any way with anyone except: a signatory hereto; the Court; persons designated by Lead Counsel; or as may be necessary in the enforcement of this Agreement.

18.   Any dispute arising under this Agreement shall be resolved by binding arbitration via ADR Services in San Francisco, California (**"ADR Services"**) under the Streamlined Arbitration Rules; and the parties hereto consent to the jurisdiction of ADR Services. This Agreement shall be governed and interpreted according to the substantive laws of the State of California without regard to its choice of law or conflict of laws principles.

19.   The Parties agree that the prevailing party to any dispute arising under this Agreement shall be entitled to all of their attorneys' fees, costs, and expenses, including expert witness fees, from the non-prevailing party.

ON BEHALF OF LEAD COUNSEL:
Date:   4/9/18

_____
Timothy D. Battin
Straus & Boies, LLP

Date:

_____
Jan L. Westfall

Date:

_____
Objector/Appellant Donnie Clifton

5

CONFIDENTIAL SETTLEMENT COMMUNICATION

of executing this Agreement. All executed counterparts and each of them shall be deemed to be one and the same instrument.

15.     This Agreement is the product of negotiations and preparations by each party and his or her attorneys. Therefore, the Parties agree that neither Objector/Appellant nor Lead Counsel shall be considered the drafter of this Agreement or any of its provisions for the purpose of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter of this Agreement.

16.     Objector/Appellant acknowledges that, in executing this Agreement, he has had the opportunity to seek the advice of counsel and has read and understood all of the terms and provisions of this Agreement.

17.     Pursuant to the Parties' agreement, Ninth Circuit Rule 33-1, the rules and procedures of the Ninth Circuit Mediation Office, and Fed. R. Evid. 408, the provisions of this Agreement are highly confidential, as are all communications regarding this Agreement, including those concerning the negotiation of the terms and conditions embodied herein, and none of these provisions or communications may be shared or discussed in any way with anyone except: a signatory hereto; the Court; persons designated by Lead Counsel; or as may be necessary in the enforcement of this Agreement.

18.     Any dispute arising under this Agreement shall be resolved by binding arbitration via ADR Services in San Francisco, California (**"ADR Services"**) under the Streamlined Arbitration Rules; and the parties hereto consent to the jurisdiction of ADR Services. This Agreement shall be governed and interpreted according to the substantive laws of the State of California without regard to its choice of law or conflict of laws principles.

19.     The Parties agree that the prevailing party to any dispute arising under this Agreement shall be entitled to all of their attorneys' fees, costs, and expenses, including expert witness fees, from the non-prevailing party.


ON BEHALF OF LEAD COUNSEL:
Date:                                          _____
                                               Timothy D. Battin
                                               Straus & Boies, LLP

Date:  4/9/2018                                _____
                                               Jan L. Westfall

Date:  4.9.2018                                _____
                                               Objector/Appellant Donnie Clifton

5

EXHIBIT A

Record No. 16-16374

## In The

# United States Court of Appeals

### For the Ninth Circuit



# In re : CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION,

### INDIRECT PURCHASER PLAINTIFFS, ET AL.
**Plaintiffs-Appellees**

v.

### TOSHSIBA CORPORATION, ET AL.
**Defendant-Appellees**

### Objector Donnie Clifton,
**Appellant**

On Appeal From The United States District Court For The Northern District Of California, Case No. 3:07-Cv-05944-JST

## APPELLANT'S MOTION TO VOLUNTARILY DISMISS APPEAL

Jan L. Westfall
29896 Blue Water Way
Menifee, CA 92584
Tel:  619.940.2880
Email : jlwestfall.esq@gmail.com

*Counsel for Appellant Donnie Clifton*

Pursuant to Federal Rule of Appellate Procedure 42(b), Appellant Donnie Clifton hereby moves the Court for an order dismissing Appeal No. 16-16374 with prejudice.  This motion is limited to Appeal No. 16-16374 and does not affect the pendency of the remaining appeals consolidated with this appeal pursuant to the court's order dated January 26, 2017 (i.e., Appeal Nos. 16-16368, 16-16371, 16-16373, 16-16377, 16-16378, 16-16379, 16-16395, 16-16399, 16-16400, and 16-16427).  The ground for this motion is that Appellant no longer desires to pursue this appeal.

Appellees do not oppose the motion.  The parties have agreed each shall bear its own costs and fees.

Dated: April [  ], 2018


*/s/ Jan L. Westfall*
Jan L. Westfall
29896 Blue Water Way
Menifee, CA 92584
Tel: 619.940.2880
jlwestfall.esq@gmail.com

*Counsel for Appellant Donnie Clifton*

## CERTIFICATE OF SERVICE

I hereby certify that on this day, April [  ], 2018, I electronically filed the foregoing APPELLANT'S MOTION TO VOLUNTARILY DISMISS APPEAL via the electronic docketing system for the U.S. Court of Appeals for the Ninth Circuit, thereby effecting service on all counsel of record.

*/s/Jan L. Westfal*
Jan L. Westfall
29896 Blue Water Way
Menifee, CA 92584
Tel: 619.940.2880
jlwestfall.esq@gmail.com

*Counsel for Appellant Donnie Clifton*

# EXHIBIT C

CONFIDENTIAL SETTLEMENT COMMUNICATION

# STRAUS & BOIES, LLP

ATTORNEYS AT LAW
**4041 UNIVERSITY DRIVE**
**FIFTH FLOOR**
**FAIRFAX, VIRGINIA 22030**
TELEPHONE: (703) 764-8700
FACSIMILE: (703) 764-8704

April 3, 2018

**VIA E-MAIL**

John C. Kress
The Kress Law Firm, LLC
4247 South Grand Blvd
St. Louis, MO 63111
jckress@thekresslawfirm.com

Steve A. Miller
Steve A. Miller, P.C.
1625 Larimer Street, Ste. 2905
Denver, CO 80202
sampc01@gmail.com

Jonathan E. Fortman
Law Office of Jonathan E. Fortman, LLC
250 St. Catherine Street
Florissant, MO 63031
jef@fortmanlaw.com

RE:    *In re Cathode Ray (CRT) Antitrust Litigation*
       Case No. 16-16368 in the United States Court of Appeals for the Ninth Circuit

Dear Mr. Bandas:

This Letter Agreement ("**Agreement**") concerns Appeal No. 16-16368 ("**the Appeal**")

brought by objectors John Finn and Laura Townsend Fortman ("**Objectors/Appellants**"), and

pending in the United States Court of Appeals for the Ninth Circuit in the matter of *In re: Cathode*

*Ray Tube (CRT) Antitrust Litigation* ("**the CRT Litigation Appeal**"). This Agreement is made and

entered into by and between Objectors/Appellants and Lead Counsel for Indirect Purchaser

1

CONFIDENTIAL SETTLEMENT COMMUNICATION

Plaintiffs ("Lead Counsel") in MDL No. 1917, Case No. 3:07-cv-05944-JST ("the *CRT Litigation*") (collectively the "Parties"). This Agreement memorializes the terms and conditions under which the Appeal shall be finally and fully compromised, settled and released, and the Appeal be dismissed with prejudice with no further adverse action taken, including objections filed or appeals taken in either the *CRT Litigation* Appeal or in matters arising in or from the *CRT Litigation*, including without limitation in the settlement of *Luscher v. Mitsubishi Electric Corp.*, Case No. 17-cv-04067-JST, by Objectors/Appellants or their counsel.

Whereas the Parties have agreed to enter into this Agreement to avoid further expense, inconvenience, and the distraction of burdensome and protracted litigation, and in consideration of the covenants, agreements and releases set forth herein and for other good and valuable consideration, the Parties agree as follows:

1. Within two (2) business days of the last execution date of this Agreement (the "Execution Date"), the undersigned Counsel for Objectors/Appellants shall file all necessary forms and papers with the United States Court of Appeals for the Ninth Circuit to dismiss the Appeal with prejudice and without costs and expenses;

2. Objectors/Appellants hereby release their claims in the *CRT Litigation* Appeal and the *CRT Litigation* on behalf of themselves and their past and present employees, agents, attorneys, servants, representatives, affiliates, partners, insurers, and all other persons, partnerships or corporations with whom the former have been or are now affiliated; and the predecessors, successors, heirs, executives, administrators and assigns, as well as anyone claiming by, for or through Objectors/Appellants or the foregoing. As stated above, Objectors/Appellants or their counsel will file no further objections or appeals in either the *CRT Litigation* Appeal or in matters arising in or from the *CRT Litigation*, including without limitation in the event of reversal and remand, or in the settlement of *Luscher v. Mitsubishi Electric Corp.*, Case No. 17-cv-04067-JST;

3. In consideration for dismissal of the Appeal and the release of all claims relating to the *CRT Litigation*, Lead Counsel shall pay Two Hundred and Twenty Five Thousand Dollars ($225,000.00) (the "Settlement Amount") to Objectors/Appellants via wire transfer pursuant to the instructions of Attorney John C. Kress, at a time and under the conditions described below;

2

## CONFIDENTIAL SETTLEMENT COMMUNICATION

4.  The payment of the Settlement Amount by Lead Counsel to Attorney John C. Kress on behalf of Objectors/Appellants will occur within ten (10) business days of the finality of all of the following:

    (a) the "Order Granting Final Approval of Indirect Purchaser Settlements" (the *CRT Litigation*, Dkt. No. 4712), or subsequent like order;

    (b) the "Order on Attorneys' Fees, Expenses, and Incentive Awards Re: Indirect Purchaser Plaintiff Settlements" (the *CRT Litigation*, Dkt. No. 4740), or subsequent like order;

    (c) the "Order Re: Allocation of IPP Attorneys' Fee Award" (the *CRT Litigation*, Dkt. No. 5122), or subsequent like order; and

    (d) the entry of a final order, if any, directing payment of funds to Class Counsel (collectively, "the Orders").

5.  The Orders shall be determined to be Final by the occurrence of the first of the following events: (a) the dismissal of all pending appeals taken from any of the Orders; (b) a decision by the Court of Appeals in each of the then-pending cases in the *CRT Litigation* Appeal that affirms the District Court, and (i) the expiration of the period(s) for petitioning the United States Supreme Court to issue a writ of *certiorari*, or (ii) the denial of *certiorari* by the United States Supreme Court and of any petition for rehearing of such denial; or (c) a determination by the Supreme Court affirming the District Court, and the denial of any petition for rehearing that may be filed.

6.  In the event that the original Orders do not become Final, as defined above, and alternative orders and judgments are entered and ultimately become Final in the *CRT Litigation,* as set forth in paragraph 4, which orders provide for lower awards of attorneys' fees or expenses, the payment to the Objectors/Appellants under this agreement shall be made within ten (10) days from the finality of these alternative orders (as defined in paragraph 4) and the entry of any necessary order directing payment of said awards, provided however that the payment to Objectors/Appellants pursuant to this Agreement shall be reduced in proportion to any reduction that may have been made to the aggregate awarded attorneys' fees and/or expense reimbursements. This reduction shall be computed by multiplying the Settlement Amount by a fraction in which the reduced attorneys' fees and/or expense award is the numerator and the original attorneys' fees and/or expense award in the Orders is the denominator. That is, the Settlement Amount paid to Objectors/Appellants shall be reduced by the same percentage that the attorneys' fees and/or expenses are reduced.

7.  The Parties shall be bound on the Execution Date by the terms of this Agreement and it shall not be rescinded.

8.  Lead Counsel shall cause a Form 1099 to be issued to attorney John C. Kress for the Settlement Amount.

3

## CONFIDENTIAL SETTLEMENT COMMUNICATION

9. Each attorney executing this Letter Agreement hereby warrants that such attorney has the full authority to do so.

10. The provisions of this Agreement constitute the entire agreement between Lead Counsel and the Objectors/Appellants, and no representations, warranties or inducements have been made to any person concerning the agreements referred to herein, other than those contained herein. Any prior agreements or understandings between the Parties hereto are integrated into this Agreement. No changes, amendments or modifications shall be made to this Agreement, except those that are in writing, identified as a change, amendment or modification to the agreements contained herein, and signed by all of the signatories to this Agreement.

11. Objectors/Appellants hereby expressly waive and release, upon this Agreement becoming Final, any and all provisions, rights, and benefits conferred by Section 1532 of the California Civil Code, which states:

> CERTAIN CLAIMS NOT AFFECTED BY GENERAL RELEASE. A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR,

or by any comparable law of any state or territory of the United States, or principle of common law. Objectors/Appellants may hereafter discover facts other than or different from those which they know or believe to be true with respect to the claims that are the subject matter of his release, but Objectors/Appellants hereby expressly waive and fully, finally, and forever settle and release, upon this Agreement becoming Final, any known or unknown, suspected or unsuspected, contingent or non-contingent claims with respect to the subject matter of the release, whether or not concealed or hidden, without regard to the subsequent discovery or existence of such different or additional facts.

12. Neither this Agreement nor any and all negotiations, documents and discussions associated with them shall be deemed or construed to be an admission by Lead Counsel of the validity of any argument raised by Objectors/Appellants, whether in the *CRT Litigation, the CRT Litigation* Appeal, or any other proceeding.

13. This Agreement shall be construed and interpreted to effectuate the intent of the Parties, which is to provide, through this Agreement, for a complete resolution of the relevant claims as provided herein.

14. This Agreement may be executed in one or more counterparts. A facsimile signature, PDF or JPG of a signature, or an electronic signature attested to by the signing party as authentic through email or other correspondence, shall be deemed an original signature for purposes of executing this Agreement. All executed counterparts and each of them shall be deemed to be one and the same instrument.

4

## CONFIDENTIAL SETTLEMENT COMMUNICATION

15. This Agreement is the product of negotiations and preparations by each party and his or her attorneys. Therefore, the Parties agree that neither Objectors/Appellants nor Lead Counsel shall be considered the drafter of this Agreement or any of its provisions for the purpose of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter of this Agreement.

16. Objectors/Appellants acknowledge that, in executing this Agreement, they have had the opportunity to seek the advice of counsel and have read and understood all of the terms and provisions of this Agreement.

17. Pursuant to the Parties' agreement, Ninth Circuit Rule 33-1, the rules and procedures of the Ninth Circuit Mediation Office, and Fed. R. Evid. 408, the provisions of this Agreement are highly confidential, as are all communications regarding this Agreement, including those concerning the negotiation of the terms and conditions embodied herein, and none of these provisions or communications may be shared or discussed in any way with anyone except: a signatory hereto; the Court; persons designated by Lead Counsel; or as may be necessary in the enforcement of this Agreement.

18. Any dispute arising under this Agreement shall be resolved by binding arbitration via ADR Services in San Francisco, California ("ADR Services") under the Streamlined Arbitration Rules; and the parties hereto consent to the jurisdiction of ADR Services. This Agreement shall be governed and interpreted according to the substantive laws of the State of California without regard to its choice of law or conflict of laws principles.

19. The Parties agree that the prevailing party to any dispute arising under this Agreement shall be entitled to all of their attorneys' fees, costs, and expenses, including expert witness fees, from the non-prevailing party.

ON BEHALF OF LEAD COUNSEL:
Date:

_____
Timothy D. Battin
Straus & Boies, LLP

Date: 4|5|18

_____
John C. Kress
The Kress Law Firm, LLC

Date: 4|5|18

_____
Steve A. Miller
Steve A. Miller, P.C.

5

**CONFIDENTIAL SETTLEMENT COMMUNICATION**

Date: 4/4/2018

Jonathan E. Fortman
Law Office of Jonathan E. Fortman, LLC

Date: 4/4/2018

Objector/Appellant John Finn

Date: 4/4/2018

Objector/Appellant Laura Townsend Fortman

6

CONFIDENTIAL SETTLEMENT COMMUNICATION

15.  This Agreement is the product of negotiations and preparations by each party and his or her attorneys. Therefore, the Parties agree that neither Objectors/Appellants nor Lead Counsel shall be considered the drafter of this Agreement or any of its provisions for the purpose of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter of this Agreement.

16.  Objectors/Appellants acknowledge that, in executing this Agreement, they have had the opportunity to seek the advice of counsel and have read and understood all of the terms and provisions of this Agreement.

17.  Pursuant to the Parties' agreement, Ninth Circuit Rule 33-1, the rules and procedures of the Ninth Circuit Mediation Office, and Fed. R. Evid. 408, the provisions of this Agreement are highly confidential, as are all communications regarding this Agreement, including those concerning the negotiation of the terms and conditions embodied herein, and none of these provisions or communications may be shared or discussed in any way with anyone except: a signatory hereto; the Court; persons designated by Lead Counsel; or as may be necessary in the enforcement of this Agreement.

18.  Any dispute arising under this Agreement shall be resolved by binding arbitration via ADR Services in San Francisco, California (**"ADR Services"**) under the Streamlined Arbitration Rules; and the parties hereto consent to the jurisdiction of ADR Services. This Agreement shall be governed and interpreted according to the substantive laws of the State of California without regard to its choice of law or conflict of laws principles.

19.  The Parties agree that the prevailing party to any dispute arising under this Agreement shall be entitled to all of their attorneys' fees, costs, and expenses, including expert witness fees, from the non-prevailing party.

ON BEHALF OF LEAD COUNSEL:
Date: 4/6/18

_____
Timothy D. Battin
Straus & Boies, LLP

Date:

_____
John C. Kress
The Kress Law Firm, LLC

Date:

_____
Steve A. Miller
Steve A. Miller, P.C.

# EXHIBIT D

CONFIDENTIAL SETTLEMENT COMMUNICATION

# STRAUS & BOIES, LLP

ATTORNEYS AT LAW
4041 UNIVERSITY DRIVE
FIFTH FLOOR
FAIRFAX, VIRGINIA 22030
TELEPHONE: (703) 764-8700
FACSIMILE: (703) 764-8704

August 31, 2018

**VIA E-MAIL**

George W. Cochran
Law Offices of George W. Cochran
1385 Russell Drive
Streetsboro, Ohio 44241
lawchrist@gmail.com

RE: *In re Cathode Ray (CRT) Antitrust Litigation*

Case No. 16-16377 in the United States Court of Appeals for the Ninth Circuit

Dear Mr. Cochran:

This Letter Agreement ("**Agreement**") concerns Appeal No. 16-16377 ("**the Appeal**") brought by objector Josie Saik ("**Objector/Appellant**"), and pending in the United States Court of Appeals for the Ninth Circuit in the matter of *In re: Cathode Ray Tube (CRT) Antitrust Litigation* ("**the *CRT Litigation* Appeal**"). This Agreement is made and entered into by and between Objector/Appellant and Lead Counsel for Indirect Purchaser Plaintiffs **("Lead Counsel")** in MDL No. 1917, Case No. 3:07-cv-05944-JST ("**the *CRT Litigation*"**) (collectively the "**Parties**"). This Agreement memorializes the terms and conditions under which the Appeal shall be finally and fully compromised, settled and released, and the Appeal be dismissed with prejudice with no further adverse action taken, including objections filed or appeals taken in either the *CRT Litigation* Appeal or in matters arising in or from the *CRT Litigation*, including without limitation in the

1

CONFIDENTIAL SETTLEMENT COMMUNICATION

settlement of *Luscher v. Mitsubishi Electric Corp.,* Case No. 17-cv-04067-JST, by Objector/Appellant or her counsel.

Whereas the Parties have agreed to enter into this Agreement to avoid further expense, inconvenience, and the distraction of burdensome and protracted litigation, and in consideration of the covenants, agreements and releases set forth herein and for other good and valuable consideration, the Parties agree as follows:

1.  Within two (2) business days of the last execution date of this Agreement (**the "Execution Date"**), the undersigned Counsel for Objector/Appellant shall file all necessary forms and papers with the United States Court of Appeals for the Ninth Circuit to dismiss the Appeal with prejudice and without costs and expenses;

2.  Objector/Appellant hereby releases her claims in the *CRT Litigation* Appeal and the *CRT Litigation* on behalf of herself and her past and present employees, agents, attorneys, servants, representatives, affiliates, partners, insurers, and all other persons, partnerships or corporations with whom the former have been or are now affiliated; and the predecessors, successors, heirs, executives, administrators and assigns, as well as anyone claiming by, for or through Objector/Appellant or the foregoing. As stated above, Objector/Appellant or her counsel will file no further objections or appeals in either the *CRT Litigation* Appeal or in matters arising in or from the *CRT Litigation*, including without limitation in the event of reversal and remand, or in the settlement of *Luscher v. Mitsubishi Electric Corp.,* Case No. 17-cv-04067-JST;

3.  In consideration for dismissal of the Appeal and the release of all claims relating to the *CRT Litigation*, Lead Counsel shall pay Seventy-Five Thousand Dollars ($75,000.00) (**the "Settlement Amount"**) to Objector/Appellant via wire transfer pursuant to the instructions of Attorney George W. Cochran, at a time and under the conditions described below;

4.  The payment of the Settlement Amount by Lead Counsel to Attorney George W. Cochran on behalf of Objector/Appellant will occur within ten (10) business days of the finality of all of the following:

    (a) the "Order Granting Final Approval of Indirect Purchaser Settlements" (the *CRT Litigation*, Dkt. No. 4712), or subsequent like order;

    (b) the "Order on Attorneys' Fees, Expenses, and Incentive Awards Re: Indirect Purchaser Plaintiff Settlements" (the *CRT Litigation*, Dkt. No. 4740), or subsequent like order;

CONFIDENTIAL SETTLEMENT COMMUNICATION

(c) the "Order Re: Allocation of IPP Attorneys' Fee Award" (the *CRT Litigation*, Dkt. No. 5122), or subsequent like order; and

(d) the entry of a final order, if any, directing payment of funds to Class Counsel (collectively, "the Orders").

5.      The Orders shall be determined to be Final by the occurrence of the first of the following events: (a) the dismissal of all pending appeals taken from any of the Orders; (b) a decision by the Court of Appeals in each of the then-pending cases in the *CRT Litigation* Appeal that affirms the District Court, and (i) the expiration of the period(s) for petitioning the United States Supreme Court to issue a writ of *certiorari*, or (ii) the denial of *certiorari* by the United States Supreme Court and of any petition for rehearing of such denial; or (c) a determination by the Supreme Court affirming the District Court, and the denial of any petition for rehearing that may be filed.

6.      In the event that the original Orders do not become Final, as defined above, and alternative orders and judgments are entered and ultimately become Final in the *CRT Litigation,* as set forth in paragraph 4, which orders provide for lower awards of attorneys' fees or expenses, the payment to the Objector/Appellant under this agreement shall be made within ten (10) days from the finality of these alternative orders (as defined in paragraph 4) and the entry of any necessary order directing payment of said awards, provided however that the payment to Objector/Appellant pursuant to this Agreement shall be reduced in proportion to any reduction that may have been made to the aggregate awarded attorneys' fees and/or expense reimbursements. This reduction shall be computed by multiplying the Settlement Amount by a fraction in which the reduced attorneys' fees and/or expense award is the numerator and the original attorneys' fees and/or expense award in the Orders is the denominator. That is, the Settlement Amount paid to Objector/Appellant shall be reduced by the same percentage that the attorneys' fees and/or expenses are reduced.

7.      The Parties shall be bound on the Execution Date by the terms of this Agreement and it shall not be rescinded.

8.      Lead Counsel shall cause a Form 1099 to be issued to attorney George W. Cochran for the Settlement Amount.

9.      Each attorney executing this Letter Agreement hereby warrants that such attorney has the full authority to do so.

10.     The provisions of this Agreement constitute the entire agreement between Lead Counsel and the Objector/Appellant, and no representations, warranties or inducements have been made to any person concerning the agreements referred to herein, other than those contained herein. Any prior agreements or understandings between the Parties hereto are integrated into this Agreement. No changes, amendments or modifications shall be made to this Agreement, except those that are in writing, identified as a change, amendment or modification to the agreements contained herein, and signed by all of the signatories to this Agreement.

3

CONFIDENTIAL SETTLEMENT COMMUNICATION

11.     Objector/Appellant hereby expressly waives and releases, upon this Agreement becoming Final, any and all provisions, rights, and benefits conferred by Section 1542 of the California Civil Code, which states:

        CERTAIN CLAIMS NOT AFFECTED BY GENERAL RELEASE. A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR,

or by any comparable law of any state or territory of the United States, or principle of common law. Objector/Appellant may hereafter discover facts other than or different from those which she knows or believes to be true with respect to the claims that are the subject matter of her release, but Objector/Appellant hereby expressly waives and fully, finally, and forever settles and releases, upon this Agreement becoming Final, any known or unknown, suspected or unsuspected, contingent or non-contingent claims with respect to the subject matter of the release, whether or not concealed or hidden, without regard to the subsequent discovery or existence of such different or additional facts.

12.     Neither this Agreement nor any and all negotiations, documents and discussions associated with them shall be deemed or construed to be an admission by Lead Counsel of the validity of any argument raised by Objector/Appellant, whether in the *CRT Litigation*, *the CRT Litigation* Appeal, or any other proceeding.

13.     This Agreement shall be construed and interpreted to effectuate the intent of the Parties, which is to provide, through this Agreement, for a complete resolution of the relevant claims as provided herein.

14.     This Agreement may be executed in one or more counterparts. A facsimile signature, PDF or JPG of a signature, or an electronic signature attested to by the signing party as authentic through email or other correspondence, shall be deemed an original signature for purposes of executing this Agreement. All executed counterparts and each of them shall be deemed to be one and the same instrument.

15.     This Agreement is the product of negotiations and preparations by each party and his or her attorneys. Therefore, the Parties agree that neither Objector/Appellant nor Lead Counsel shall be considered the drafter of this Agreement or any of its provisions for the purpose of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter of this Agreement.

16.     Objector/Appellant acknowledges that, in executing this Agreement, she has had the opportunity to seek the advice of counsel and has read and understood all of the terms and provisions of this Agreement.

CONFIDENTIAL SETTLEMENT COMMUNICATION

17.    Pursuant to the Parties' agreement, Ninth Circuit Rule 33-1, the rules and procedures of the Ninth Circuit Mediation Office, and Fed. R. Evid. 408, the provisions of this Agreement are highly confidential, as are all communications regarding this Agreement, including those concerning the negotiation of the terms and conditions embodied herein, and none of these provisions or communications may be shared or discussed in any way with anyone except: except: a signatory hereto; the Court (confidentially); persons designated by Lead Counsel; or as may be necessary in the enforcement of this Agreement.

18.    Any dispute arising under this Agreement shall be resolved by binding arbitration via ADR Services in San Francisco, California (**"ADR Services"**) under the Streamlined Arbitration Rules; and the parties hereto consent to the jurisdiction of ADR Services. This Agreement shall be governed and interpreted according to the substantive laws of the State of California without regard to its choice of law or conflict of laws principles.

19.    The Parties agree that the prevailing party to any dispute arising under this Agreement shall be entitled to all of their attorneys' fees, costs, and expenses, including expert witness fees, from the non-prevailing party.


ON BEHALF OF LEAD COUNSEL:

Date:                      _____

                           Timothy D. Battin
                           Straus & Boies, LLP


Date:     08/30/2018       *George W. Cochran*
                           _____
                           George W. Cochran
                           Law Offices of George W. Cochran


Date:                      _____

                           Objector/Appellant Josie Saik


5

CONFIDENTIAL SETTLEMENT COMMUNICATION

17. Pursuant to the Parties' agreement, Ninth Circuit Rule 33-1, the rules and procedures of the Ninth Circuit Mediation Office, and Fed. R. Evid. 408, the provisions of this Agreement are highly confidential, as are all communications regarding this Agreement, including those concerning the negotiation of the terms and conditions embodied herein, and none of these provisions or communications may be shared or discussed in any way with anyone except: except: a signatory hereto; the Court (confidentially); persons designated by Lead Counsel; or as may be necessary in the enforcement of this Agreement.

18. Any dispute arising under this Agreement shall be resolved by binding arbitration via ADR Services in San Francisco, California (**"ADR Services"**) under the Streamlined Arbitration Rules; and the parties hereto consent to the jurisdiction of ADR Services. This Agreement shall be governed and interpreted according to the substantive laws of the State of California without regard to its choice of law or conflict of laws principles.

19. The Parties agree that the prevailing party to any dispute arising under this Agreement shall be entitled to all of their attorneys' fees, costs, and expenses, including expert witness fees, from the non-prevailing party.

ON BEHALF OF LEAD COUNSEL:

Date: _____

Timothy D. Battin
Straus & Boies, LLP

Date:    08/30/2018    _____

George W. Cochran
Law Offices of George W. Cochran

Date: *August 31, 2018*    _____

Objector/Appellant Josie Saik

1

CONFIDENTIAL SETTLEMENT COMMUNICATION

17. Pursuant to the Parties' agreement, Ninth Circuit Rule 33-1, the rules and procedures of the Ninth Circuit Mediation Office, and Fed. R. Evid. 408, the provisions of this Agreement are highly confidential, as are all communications regarding this Agreement, including those concerning the negotiation of the terms and conditions embodied herein, and none of these provisions or communications may be shared or discussed in any way with anyone except: except: a signatory hereto; the Court (confidentially); persons designated by Lead Counsel; or as may be necessary in the enforcement of this Agreement.

18. Any dispute arising under this Agreement shall be resolved by binding arbitration via ADR Services in San Francisco, California (**"ADR Services"**) under the Streamlined Arbitration Rules; and the parties hereto consent to the jurisdiction of ADR Services. This Agreement shall be governed and interpreted according to the substantive laws of the State of California without regard to its choice of law or conflict of laws principles.

19. The Parties agree that the prevailing party to any dispute arising under this Agreement shall be entitled to all of their attorneys' fees, costs, and expenses, including expert witness fees, from the non-prevailing party.

ON BEHALF OF LEAD COUNSEL:

Date: 9/7/18

Timothy D. Battin
Straus & Boies, LLP

Date:

George W. Cochran
Law Offices of George W. Cochran

Date:

Objector/Appellant Josie Saik

# EXHIBIT E

CONFIDENTIAL SETTLEMENT COMMUNICATION

# STRAUS & BOIES, LLP

ATTORNEYS AT LAW
4041 UNIVERSITY DRIVE
FIFTH FLOOR
FAIRFAX, VIRGINIA 22030
TELEPHONE: (703) 764-8700
FACSIMILE: (703) 764-8704

April 3, 2018

**VIA E-MAIL**

Christopher A. Bandas
Robert W. Clore
BANDAS LAW FIRM, P.C.
500 N. Shoreline Boulevard
Suite 1020
Corpus Christi, Texas 78418
cbandas@bandaslawfirm.com
rclore@bandaslawfirm.com

RE:  *In re Cathode Ray (CRT) Antitrust Litigation*
       Case No. 16-16371 in the United States Court of Appeals for the Ninth Circuit

Dear Mr. Bandas:

This Letter Agreement ("**Agreement**") concerns Appeal No. 16-16371 ("**the Appeal**")
brought by objector Sean Hull ("**Objector/Appellant**"), and pending in the United States Court of
Appeals for the Ninth Circuit in the matter of *In re: Cathode Ray Tube (CRT) Antitrust Litigation*
("**the *CRT Litigation* Appeal**").  This Agreement is made and entered into by and between
Objector/Appellant and Lead Counsel for Indirect Purchaser Plaintiffs **("Lead Counsel")** in MDL
No. 1917, Case No. 3:07-cv-05944-JST ("**the *CRT Litigation*"**) (collectively the "**Parties**").  This
Agreement memorializes the terms and conditions under which the Appeal shall be finally and
fully compromised, settled and released, and the Appeal be dismissed with prejudice with no
further adverse action taken, including objections filed or appeals taken in either the *CRT Litigation*

**CONFIDENTIAL SETTLEMENT COMMUNICATION**

Appeal or in matters arising in or from the *CRT Litigation*, including without limitation in the settlement of *Luscher v. Mitsubishi Electric Corp.,* Case No. 17-cv-04067-JST, by Objector/Appellant or his counsel.

    Whereas the Parties have agreed to enter into this Agreement to avoid further expense, inconvenience, and the distraction of burdensome and protracted litigation, and in consideration of the covenants, agreements and releases set forth herein and for other good and valuable consideration, the Parties agree as follows:

1.    Within two (2) business days of the last execution date of this Agreement (**the "Execution Date"**), the undersigned Counsel for Objector/Appellant shall file all necessary forms and papers with the United States Court of Appeals for the Ninth Circuit to dismiss the Appeal with prejudice and without costs and expenses;

2.    Objector/Appellant hereby releases his claims in the *CRT Litigation* Appeal and the *CRT Litigation* on behalf of himself and his past and present employees, agents, attorneys, servants, representatives, affiliates, partners, insurers, and all other persons, partnerships or corporations with whom the former have been or are now affiliated; and the predecessors, successors, heirs, executives, administrators and assigns, as well as anyone claiming by, for or through Objector/Appellant or the foregoing. As stated above, Objector/Appellant or his counsel will file no further objections or appeals in either the *CRT Litigation* Appeal or in matters arising in or from the *CRT Litigation*, including without limitation in the event of reversal and remand, or in the settlement of *Luscher v. Mitsubishi Electric Corp.,* Case No. 17-cv-04067-JST;

3.    In consideration for dismissal of the Appeal and the release of all claims relating to the *CRT Litigation*, Lead Counsel shall pay Two Hundred and Twenty Five Thousand Dollars ($225,000.00) (**the "Settlement Amount"**) to Objector/Appellant via wire transfer pursuant to the instructions of Attorney Christopher A. Bandas, at a time and under the conditions described below;

4.    The payment of the Settlement Amount by Lead Counsel to Attorney Christopher A. Bandas on behalf of Objector/Appellant will occur within ten (10) business days of the finality of all of the following:

        (a) the "Order Granting Final Approval of Indirect Purchaser Settlements" (the *CRT Litigation*, Dkt. No. 4712), or subsequent like order;

2

CONFIDENTIAL SETTLEMENT COMMUNICATION

(b) the "Order on Attorneys' Fees, Expenses, and Incentive Awards Re: Indirect Purchaser Plaintiff Settlements" (the *CRT Litigation*, Dkt. No. 4740), or subsequent like order;

(c) the "Order Re: Allocation of IPP Attorneys' Fee Award" (the *CRT Litigation*, Dkt. No. 5122), or subsequent like order; and

(d) the entry of a final order, if any, directing payment of funds to Class Counsel (collectively, "the Orders").

5.      The Orders shall be determined to be Final by the occurrence of the first of the following events: (a) the dismissal of all pending appeals taken from any of the Orders; (b) a decision by the Court of Appeals in each of the then-pending cases in the *CRT Litigation* Appeal that affirms the District Court, and (i) the expiration of the period(s) for petitioning the United States Supreme Court to issue a writ of *certiorari*, or (ii) the denial of *certiorari* by the United States Supreme Court and of any petition for rehearing of such denial; or (c) a determination by the Supreme Court affirming the District Court, and the denial of any petition for rehearing that may be filed.

6.      In the event that the original Orders do not become Final, as defined above, and alternative orders and judgments are entered and ultimately become Final in the *CRT Litigation,* as set forth in paragraph 4, which orders provide for lower awards of attorneys' fees or expenses, the payment to the Objector/Appellant under this agreement shall be made within ten (10) days from the finality of these alternative orders (as defined in paragraph 4) and the entry of any necessary order directing payment of said awards, provided however that the payment to Objector/Appellant pursuant to this Agreement shall be reduced in proportion to any reduction that may have been made to the aggregate awarded attorneys' fees and/or expense reimbursements. This reduction shall be computed by multiplying the Settlement Amount by a fraction in which the reduced attorneys' fees and/or expense award is the numerator and the original attorneys' fees and/or expense award in the Orders is the denominator. That is, the Settlement Amount paid to Objector/Appellant shall be reduced by the same percentage that the attorneys' fees and/or expenses are reduced.

7.      The Parties shall be bound on the Execution Date by the terms of this Agreement and it shall not be rescinded.

8.      Lead Counsel shall cause a Form 1099 to be issued to attorney Christopher A. Bandas for the Settlement Amount.

9.      Each attorney executing this Letter Agreement hereby warrants that such attorney has the full authority to do so.

10.     The provisions of this Agreement constitute the entire agreement between Lead Counsel and the Objector/Appellant, and no representations, warranties or inducements have been made to any person concerning the agreements referred to herein, other than those contained herein.  Any prior agreements or understandings between the Parties hereto are

CONFIDENTIAL SETTLEMENT COMMUNICATION

integrated into this Agreement. No changes, amendments or modifications shall be made to this Agreement, except those that are in writing, identified as a change, amendment or modification to the agreements contained herein, and signed by all of the signatories to this Agreement.

11.     Objector/Appellant hereby expressly waives and releases, upon this Agreement becoming Final, any and all provisions, rights, and benefits conferred by Section 1532 of the California Civil Code, which states:

> <u>CERTAIN CLAIMS NOT AFFECTED BY GENERAL RELEASE</u>.  A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR,

or by any comparable law of any state or territory of the United States, or principle of common law. Objector/Appellant may hereafter discover facts other than or different from those which he knows or believes to be true with respect to the claims that are the subject matter of his release, but Objector/Appellant hereby expressly waives and fully, finally, and forever settles and releases, upon this Agreement becoming Final, any known or unknown, suspected or unsuspected, contingent or non-contingent claims with respect to the subject matter of the release, whether or not concealed or hidden, without regard to the subsequent discovery or existence of such different or additional facts.

12.     Neither this Agreement nor any and all negotiations, documents and discussions associated with them shall be deemed or construed to be an admission by Lead Counsel of the validity of any argument raised by Objector/Appellant, whether in the *CRT Litigation*, *the CRT Litigation* Appeal, or any other proceeding.

13.     This Agreement shall be construed and interpreted to effectuate the intent of the Parties, which is to provide, through this Agreement, for a complete resolution of the relevant claims as provided herein.

14.     This Agreement may be executed in one or more counterparts. A facsimile signature, PDF or JPG of a signature, or an electronic signature attested to by the signing party as authentic through email or other correspondence, shall be deemed an original signature for purposes of executing this Agreement.  All executed counterparts and each of them shall be deemed to be one and the same instrument.

15.     This Agreement is the product of negotiations and preparations by each party and his or her attorneys.  Therefore, the Parties agree that neither Objector/Appellant nor Lead Counsel shall be considered the drafter of this Agreement or any of its provisions for the purpose of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter of this Agreement.

**CONFIDENTIAL SETTLEMENT COMMUNICATION**

16.  Objector/Appellant acknowledges that, in executing this Agreement, he has had the opportunity to seek the advice of counsel and has read and understood all of the terms and provisions of this Agreement.

17.  Pursuant to the Parties' agreement, Ninth Circuit Rule 33-1, the rules and procedures of the Ninth Circuit Mediation Office, and Fed. R. Evid. 408, the provisions of this Agreement are highly confidential, as are all communications regarding this Agreement, including those concerning the negotiation of the terms and conditions embodied herein, and none of these provisions or communications may be shared or discussed in any way with anyone except: a signatory hereto; the Court; persons designated by Lead Counsel; or as may be necessary in the enforcement of this Agreement.

18.  Any dispute arising under this Agreement shall be resolved by binding arbitration via ADR Services in San Francisco, California (**"ADR Services"**) under the Streamlined Arbitration Rules; and the parties hereto consent to the jurisdiction of ADR Services.  This Agreement shall be governed and interpreted according to the substantive laws of the State of California without regard to its choice of law or conflict of laws principles.

19.  The Parties agree that the prevailing party to any dispute arising under this Agreement shall be entitled to all of their attorneys' fees, costs, and expenses, including expert witness fees, from the non-prevailing party.

ON BEHALF OF LEAD COUNSEL:

Date: _____        _____

Timothy D. Battin
Straus & Boies, LLP

Date: April 4, 2018        _____

Christopher A. Bandas
Bandas Law Firm, P.C.

Date: _____        _____

Robert W. Clore
Bandas Law Firm, P.C.

Date: _____        _____

Objector/Appellant Sean Hull

CONFIDENTIAL SETTLEMENT COMMUNICATION

16.    Objector/Appellant acknowledges that, in executing this Agreement, he has had the opportunity to seek the advice of counsel and has read and understood all of the terms and provisions of this Agreement.

17.    Pursuant to the Parties' agreement, Ninth Circuit Rule 33-1, the rules and procedures of the Ninth Circuit Mediation Office, and Fed. R. Evid. 408, the provisions of this Agreement are highly confidential, as are all communications regarding this Agreement, including those concerning the negotiation of the terms and conditions embodied herein, and none of these provisions or communications may be shared or discussed in any way with anyone except: a signatory hereto; the Court; persons designated by Lead Counsel; or as may be necessary in the enforcement of this Agreement.

18.    Any dispute arising under this Agreement shall be resolved by binding arbitration via ADR Services in San Francisco, California (**"ADR Services"**) under the Streamlined Arbitration Rules; and the parties hereto consent to the jurisdiction of ADR Services. This Agreement shall be governed and interpreted according to the substantive laws of the State of California without regard to its choice of law or conflict of laws principles.

19.    The Parties agree that the prevailing party to any dispute arising under this Agreement shall be entitled to all of their attorneys' fees, costs, and expenses, including expert witness fees, from the non-prevailing party.


ON BEHALF OF LEAD COUNSEL:
Date:

_____
Timothy D. Battin
Straus & Boies, LLP

Date: April 4, 2018

_____
Christopher A. Bandas
Bandas Law Firm, P.C.

Date:

_____
Robert W. Clore
Bandas Law Firm, P.C.

Date: April 4, 2019

_____
Objector/Appellant Sean Hull


5