R. Alexander Saveri (173102)
    rick@saveri.com
Geoffrey C. Rushing (126910)
    grushing@saveri.com
Matthew D. Heaphy (227224)
    mheaphy@saveri.com
SAVERI & SAVERI, INC.
706 Sansome Street
San Francisco, CA 94111
Telephone:  (415) 217-6810
Facsimile:  (415) 217-6813

*Lead Counsel for Direct Purchaser Plaintiffs*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# OAKLAND DIVISION

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Master File No. 07-CV-5944-JST |
| | MDL No. 1917 |
| This Document Relates to: | **NOTICE OF ENTRY OF ORDER BY SPECIAL MASTER** |
| *ALL DIRECT PURCHASER ACTIONS* | Judge:          Honorable Jon S. Tigar |
| *ALL INDIRECT PURCHASER ACTIONS* | Special Master:   Honorable Vaughn R. Walker (Ret.) |

TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE, pursuant to paragraph 5 of the Court's Order Appointing Special Master for Discovery (Dec. 17, 2013) (ECF No. 2272), that the Honorable Vaughn R. Walker (Ret.) entered the attached Special Master's Report and Recommendation re Admissibility of Coconspirator Documents and Statements.

Dated: September 20, 2022

Respectfully submitted,

/s/ *R. Alexander Saveri*

R. Alexander Saveri (173102)
Geoffrey C. Rushing (126910)
Matthew D. Heaphy (227224)
SAVERI & SAVERI, INC.
706 Sansome Street
San Francisco, CA 94111
Telephone: (415) 217-6810
Facsimile: (415) 217-6813

*Lead Counsel for Direct Purchaser Plaintiffs*

# ATTACHMENT

1  Vaughn R Walker
   Law Office of Vaughn R Walker
2  Four Embarcadero Center, Suite 2200
   San Francisco, CA  94111
3  Tel: (415) 871-2888
   Fax: (415) 871-2890
4  vrw@judgewalker.com

5

6                    IN THE UNITED STATES DISTRICT COURT

7                   FOR THE NORTHERN DISTRICT OF CALIFORNIA

8  IN RE CATHODE RAY TUBE (CRT)              MDL No 1917
   ANTITRUST LITIGATION
9                                             Case No C-07-5944 JST
   This Order Relates To:
10                                           **SPECIAL MASTER'S REPORT AND**
   ALL DIRECT AND INDIRECT PURCHASER         **RECOMMENDATION RE ADMISSIBILITY**
11 PLAINTIFFS                                **OF COCONSPIRATOR DOCUMENTS**
                                             **AND STATEMENTS**
12

13        The DPPs and IPPs (collectively "PPs") seek admission into evidence of numerous

14 documents that the PPs contend reflect Irico's participation in the conspiracy to fix and

15 manipulate prices and terms for the sale of CRTs that is the subject of this litigation.  As

16 summarized by Judge Tigar in his March 9, 2017 order with reference to another defendant:

17                 [T]his case is predicated upon an alleged conspiracy to fix the

18         prices of cathode ray tubes ("CRTs"), a component of tube-style screens

19         for common devises including televisions and computer monitors.  The

20         conspiracy ran from March 1, 1995 to November 25, 2007 (the

21         "Conspiracy Period"), involved many of the major companies that

22         produced CRTs and allegedly resulted in overcharges of billions of dollars

23         to domestic companies that purchased and sold CRTs or products

24         containing CRTs ("CRT Finished Products").  Conspirators allegedly met

25         all over the world in "Glass Meetings" to fix the prices of CRTs, which

26         served as the primary component of old-style televisions and computer

27         monitors.

28

ECF No 5128 at 2.[1]

The present dispute has a long history.  Its antecedent is the dispute last year between the PPs and Irico over the adequacy of Irico's interrogatory responses.  The details of that dispute need not be reprised here, suffice it to say that it led eventually to the compilation of the documents for which the PPs now seek an order of admissibility as coconspirator statements pursuant to FRE 801(d)(2)(E).  These documents show that Irico participated in many of the meetings referenced by Judge Tigar in ECF No 5128.  Irico is also mentioned in minutes and records of many other meetings in which it did not participate directly.  The documents at issue before the undersigned were created by Irico's alleged coconspirators.  The issue here is the admissibility of those documents against Irico.[2]

The undersigned picks up parties' dialogue with the PPs' submissions on March 21, 2022 as these post-date the undersigned's February 21, 2022 order, which sought to move the matter of Irico's interrogatory responses toward a resolution.  That order required the PPs to make the showing required for admission against Irico of statements by others pursuant to FRE 801(d)(2)(E).  Such a showing is made by evidence apart from the coconspirator statements themselves of: (1) the existence of a conspiracy; (2) Irico's knowledge of the conspiracy and (3) Irico's participation in the conspiracy.  *United States v Bowman*, 215 F 3d 951, 960-61 (9th Cir 2000).  These elements must be established by a preponderance of the evidence.  *Bourjaily v United States*, 483 US 171, 173 (1981).

This admissibility issue involved hearings before the undersigned on May 13 and July 28, 2021, and a great many meet-and-confer sessions among the parties.  Through this process, the parties have worked long, hard and ably to define the scope of the problem before the undersigned.  The context in which admissibility will be considered by the court has yet to emerge in view, however.  Despite the litigation's advanced age, summary judgment and trial are still some distance in the future.  As the former will almost certainly come first, admissibility

---

1 ECF references are to the docket of the present proceedings.
2 As used herein the term "Irico" refers to Irico Group Corporation and all the Irico entities identified in ECF No 5312-12 at 66.

1 for summary judgment would seem to be the appropriate standard for purposes of this report

2 and recommendation.

3    For purposes of the present assignment, the undersigned assumes that the PPs offer

4 the documents discussed herein in connection with a motion for, or more likely in opposition to

5 Irico's motion for, summary judgment.  The issue then is whether the court should consider that

6 the documents raise a triable issue of fact.  The undersigned concludes that most of the

7 documents are admissible for the purpose of raising a triable issue whether Irico participated in

8 the conspiracy described by Judge Tigar in ECF 5128. The wrinkle in all this is that because

9 these documents reflect statements by Irico's alleged coconspirators, the PPs must first present

10 some other evidence of Irico's involvement in the conspiracy. FRE 801(d)(2)(E).  The

11 undersigned turns to that question first.

12    Before doing so, a suggestion of Irico's counsel deserves comment.  Irico suggests that

13 the recommendations herein for or against admissibility may in some way be provisional.  In a

14 letter dated August 8, 2022, Irico's counsel stated that he understood the undersigned "is

15 considering admissibility based solely on the grounds advanced by Plaintiffs" and that Irico

16 reserves "other bases for, or exclusions to, admissibility * * * for later consideration."  Letter of

17 John Taladay, August 8, 2022, at 2.  Judge Tigar, of course, may accept, reject or modify any of

18 the recommendations herein.  But it appears to the undersigned that counsel labors under some

19 misapprehension.  When the PPs have made a prima-facie showing that a document is

20 admissible to support some fact, FRCP 56(c)(2) requires Irico to raise any objection to

21 admissibility.  In the absence thereof, the court may therefore consider the evidence on

22 summary judgment.  Because the PPs have made that prima-facie showing as to virtually each

23 document the PPs offer, Irico was obligated to raise an appropriate objection.  In the absence

24 thereof, the undersigned recommends that the court deem the document admissible evidence

25 on summary judgement.

26    This report and recommendation is divided into two parts.  The first part discusses the

27 PPs' reasons for offering the documents that they seek to admit and Irico's objections to

28 admission.  In the second part, the report turns to the documents offered one-by-one.

1

2                          PPs' OFFER AND IRICO'S GENERAL OBJECTIONS

3          An inventory or catalogue of the documents at issue sets the stage.  They are eighty-one

4   in number.    Of these, sixty-seven documents are identified as coming from Chungwha and

5   nine from Samsung SDI; BMCC produced three and Hitachi and MTPD produced one each.[3]

6   There is no dispute that all documents are accurate copies of what they purport to be.  Some of

7   these represent different accounts of the same event.  So, the documents reflect about seventy-

8   five events or communications purportedly relevant to the PPs' allegations herein.

9          The PPs prepared and submitted to the undersigned five binders containing copies of

10  the contested documents and a chart indexing the documents, each one individually tabbed and

11  numbered.  The chart and tab numbers have varied over the months the parties have been

12  engaged in meeting and conferring about this matter.  One such chart is dated December 16,

13  2021.  The parties used this chart in some of their correspondence about the motion and the

14  tabulation of the documents.  The parties' correspondence up to about year-end 2021 appears

15  to have referred to the December 16 chart.  It is that chart of documents and its tab numbers

16  that is contained in the binders submitted to the undersigned.  That chart was superseded,

17  however, by one dated March 20, 2022.  Consequently, the tab references in pre-2022

18  correspondence do not always coincide with the tabs in the binders.  The parties' revisions of

19  the chart continued through 2022.  Finally, the most recent version of the chart is dated July 13,

20  2022, but it was submitted in complete form to the undersigned in August 2022.  In preparing

21  this report and recommendation, the undersigned has used the tab numbers in the July 13 chart

22  (referred to herein as "Chart Tab #") and has included the Bates stamp numbers on the

23  documents under each tab.  In submitting binders to Judge Tigar, the parties will need to ensure

24  that the discussion herein correlates with the tab numbers in the binders provided to the judge.

25

26   _____

27   [3] A list of abbreviations for the various CRT entities is contained in an attachment to a letter
     dated September 7, 2022 to the undersigned from R Alexander Saveri.  A copy of the letter is
28   attached hereto.

Irico concedes that sixty-five of the documents are business records within the meaning of FRE 803(d)(6).  As to sixteen documents, Irico has not conceded they are business records. These are the documents at Tabs 12B, 18, 20, 22, 25, 56, 58, 65, 75, 80, 83, 91, 93, 94, 102B and 102C.  As explained in the second part of this report, each of these documents consist of contemporaneous notes of the events they record, are obvious as to their source and otherwise lack any suggestion of irregularity.  Despite being ordered to include in the chart of documents its arguments against admission, Irico failed to include any argument to explain why these sixteen documents do not on their face indicate the source of information, or the methods or circumstances of their preparation or any other reason to indicate a lack of trustworthiness. FRE 803(6)(E).  For purposes of summary judgment, therefore, Irico's failure in this regard prompts the undersigned to recommend that the entire inventory of eighty-one documents be deemed business records.

In response to the February 21 order, the PPs on May 21 augmented the March 20 chart detailing their grounds for admission of the documents at issue.  On July 13, Irico was directed to add its arguments to the chart individually addressing each document.  The PPs' grounds for admission and Irico's objections are highly repetitive.  For example, the PPs begin their arguments in support of admission of each document with an overall summary of the document's contents followed by recitals of specific items of information in the document that in the PPs' view have significant relevance.  Irico responds with up to a half dozen general objections to the admission of each document.  The general objections are repeated mostly verbatim throughout all of Irico's arguments against admission.  In some instances, Irico identifies specific statements that it contends are "glaring instances of hearsay-within-hearsay (of the many contained in this document)" and should, therefore, be excluded.  See, e g, Chart Tab #1 at 1.

As explained presently, the undersigned finds and recommends that Irico's general objections be overruled in their entirety.  Those objections are in one form or the other a version of Irico's "hearsay-within-hearsay" objection.  Irico repeats a litany that the documents the PPs

seek to admit contain multiple layers of hearsay and the PPs have failed to establish an

exception to warrant admission of each layer:

> Irico objects to the admissibility of all hearsay within hearsay
>
> statements in the document, which require a separate basis for
>
> admissibility.  Plaintiffs have failed to identify how each such statement
>
> satisfies an exception to the hearsay rule as required by FRE 805 (see
>
> Irico Response Br (Feb 1, 2022)), and further objects to the admissibility
>
> of the document as detailed below.

While doing so imposed a tiresome exercise on the parties, compelling the parties to

spell out their grounds for admission and objections individually with respect to each document

made apparent that there is much less to Irico's hearsay-within-hearsay objection than meets

the eyes.  Given its hearsay-within-hearsay objection – Irico's mainstay argument – the

undersigned anticipated that Irico would dissect the contents of the documents by voicing in

minute detail its objection to specific statements attributed to individuals or companies identified

in the documents.  But Irico made relatively few specific objections.  Where appropriate, these

are discussed in the second part of this report.  The paucity of Irico's specific objections appears

to the undesigned to stem from the fundamentally flawed premise of the hearsay-within-hearsay

objection.  As will be explained presently, the contents of the documents at issue are not

contained in a hearsay document.  But first, a more general and fundamental point deserves

mention.

The most important criterion for the admission of any evidence is relevance.  The

relevance of the offered documents is plain and requires comparatively little discussion.  The

documents are meeting minutes and records of meetings or contacts by representatives of

producers and sellers of CRTs.  A brief description of each document is contained in the second

part of this report.  The contents of the documents speak for themselves, however.  It is

sufficient to note that at these meetings and in these records, prices and quantities of CRTs are

discussed at length and in detail.  Plainly, evidence going to such matters is relevant to the

substantive allegations that the PPs assert herein.

As noted, most documents at issue are Chunghwa or Samsung SDI notes or records of meetings attended by CRT producers and sellers. Irico asserts that statements attributed to non-Chunghwa or SDI declarants in these documents do not meet the strict requirements of FRE 801(d)(2)(E) and cannot properly be admitted against Irico. This follows, in Irico's view, because the PPs "have not proven by a preponderance of the evidence that Irico participated in the conspiracy alleged" in the complaints. Irico makes the same argument with respect to the relatively few documents that are not Chunghwa or SDI meeting notes. See Documents at Tab ## 58, 75, 80, 83 and 102B.

The admission of coconspirator statements rests on three bases, the first being the existence of a conspiracy involving CRT producers and sellers. The court has heretofore satisfied itself that the "quantity and quality of the evidence supports by a preponderance of the evidence that there was a price-fixing scheme and its existence and operations would be a question common to all class members." *In re Cathode Ray Tube (CRT) Antitrust Litig*, 308 FRD 606, 625 (N D Cal 2015). The court's assessment is buttressed by many facts pertinent to the documents at issue. Because most of these documents are business records of Chungwha and SDI, the following take on especial significance:

- Samsung SDI entered a guilty plea to a CRT price-fixing scheme during the period January 1997 to March 2006. Case 3:11-cr-00162-WHA, Doc 29 (Samsung SDI).

- Chungwha's chairman and CEO, Cheng Yuan Lin, entered guilty plea to price-fixing of CRTs on behalf of his employer during the period March 12, 1997 to April 7, 2003. Case 3:09-cr-00131-WHA, Doc Nos 1, 29.

- Chung Cheng Yeh aka Lex Yeh, director of sales for Chungwha, entered a guilty plea for price-fixing of CRTs from May 1999 until at least March 2005. Case 3:10-cr-00231-WHA, Doc 1, 39.

- Wen Jun Cheng aka Tony Cheng, Chungwha Picture Tubes, Ltd director of sales, was indicted on August 18, 2009 for CRT price-fixing beginning as early as January 1997 and continuing until March 2006. Case 3:09-cr-00836-WHA, Doc 1.

- Seng-Kyu Lee aka Simon Lee was employed by Samsung and later by LG Philips Displays Co, Ltd, from January 2000 until at least December 2005 was indicted for CRT price-fixing on November 9, 2010.  Case No 3:10-cr-00817-WHA, Doc 1.

- Yeong-Ug-Yang aka Yeong-Wook Yang aka Yong-Shu Yang aka Yong-Shu Liang aka Young-Uk Yang aka Yeong-Eug Yang aka Albert Yang was employed by LG Philips Displays, Ltd, was responsible for CRT sales and was indicted for CRT price-fixing on November 9, 2010, Id.

- Jae-Sik Kim was employed by Samsung SDI from June 2002 until at least March 2006 and was indicted for CRT price-fixing on November 9, 2010.  Id.

The European Commission imposed fines against these producers plus many others, including LG Electronics, Philips, Panasonic and Toshiba, for price-fixing in the CRT market.  Rushing Decl, Exh G[4].  The Japan Fair Trade Commission also imposed fines for CRT price-fixing against the foregoing CRT producers and Sanyo, Orion and Sharp.  Rushing Decl, Exh H.

There can be no serious question that a conspiracy to fix the prices of CRTs existed. Whether there is sufficient evidence of Irico's participation to warrant admission of statements by these conspirators in proceedings against Irico comes next.  The PPs rely on the February 27, 2013 deposition testimony of Chungwha's J S Lu who testified that "[a]t every meeting prices were discussed.  I believe that was the major purpose of the meeting."  Rushing Decl, Exh I at 61.  Lu elaborated that "[e]very time, in every meeting, price agreement was reached." Id at 62.  In his testimony the next day, Lu was somewhat ambiguous about Irico's participation in the meetings.  Referring to a June 22, 1999 meeting, Lu testified that the meeting was "primarily for discussion about CPT prices."  Rushing Decl, Exh J at 185.  Specifically, Irico was asked "to cooperate and synchronize the process of 14" CPT price increases."  Id at 185-86. After referring to his notes of the meeting, Lu testified that Irico "agreed with the proposal [to coordinate CPT pricing] that Chungwha and Orion presented.  Id at 188.  Lu elaborated that at the time, "Irico was still a major manufacturer of CPTs in mainland China for its domestic

[4] Declaration of Geoffrey C Rushing, March 21, 2022, submitted to the undersigned in connection with the PPs' motion to admit.

market.  It remained quite isolated, without information or participation to regular meetings of other CPT or CRT makers.  So, it always took its own action on prices."  Thereafter, Irico was "invited to attend regular meetings or after every group meeting, either Orion or Chungwha could give them a briefing of the meeting results in either Hong Kong or Shenzhen."  Id at 189-90.

In a February 20, 2013 deposition, Chungwha's Chih Chun-Liu testified that Chungwha and other producers exchanged price and production information at meetings and thereafter "reached out" to Irico, among others, and he personally "visited Irico."  Id, Exh M at 329-30. Irico's Wang Zhaojie attended meetings of the China CPT Industry Association on November 6, 1998; April 2, 1999 and April 6, 2000.  Id, Exh V at 8.  These meetings were attended by "other producers of CRTs" and market information was discussed.  Id, Exh V at 9.  In addition to the foregoing meetings, Wang attended meetings on December 9, 1999, January 13. 2000 and September 14, 2000.  Id, Exh V at 8, 11.  Furthermore, Wang attended other meetings with CRT producers; he claimed inability to recall the specifics although he acknowledged the communications and meetings involved information on the Chinese CRT issues and market conditions.  Id, Exh V at 9-10.

Wang stated that in some meetings there would be one-on-one interactions with "other tube manufacturers."  Id, Exh U at 38.  He stated that normally at these meetings participants "would just play cards, or have drinks."  Id, Exh U at 38.  The participants liked to go to scenic places, have fun and sight see.  Id, Exh U at 43.  Oddly, Wang considered none of these individuals friends.  Id, Exh U at 41.

In considering the testimony of an obviously less than forthright witness, the reader of that testimony is entitled to draw the reasonable inferences.  Wang recalled meetings with Irico's competitors in Xian, Nanjing, Beijing and Shenzhen.  Id, Exh U at 42.  In several instances, Wang did not deny the accuracy of notes that recorded meetings with CRT producers in these and other locations. See Id, Exh U at 45-48 ("Whatever is written here, that's how it is"). All of this suffices to enable the reader to draw the reasonable inference that whatever their quotient of conviviality, these were price-fixing meetings and contacts.

There are several instances of Irico records showing that on dates on which meetings among CRT producers took place, Irico personnel traveled to the locations of these meetings. Id, Exh V at 12-13.  Irico's Wang Ximin also attended meetings with other producers of CRT and CRT products and these meetings involved information on Chinese CRT issues and market conditions.  Id, Exh V at 10-11.

In a March 8, 2019 deposition, Wang Zhaojie, who worked "for many years" for Irico, testified that he met with Chungwha personnel and people from Changsa LG and "normally just call Changsha LG, Beijing Panasonic or Shanghai Yonxin.["] Id, Exh U at 28, 34, 36.  Wang testified that he had "some interactions" with employees of other tube manufacturers which he characterized would consist of playing cards or having drinks in that "people in this tube industry, we all like to drink."  Id, Exh U at 38-9.

Under FRE 801(d)(2)(E), statements offered against an opposing party and "made by the party's coconspirator during and in furtherance of the conspiracy" do not constitute hearsay. This rule applies if "the [proponent of the statement] shows by a preponderance of the evidence that a conspiracy existed at the time the statement was made; the defendant had knowledge of, and participated in, the conspiracy; and the statement was made in furtherance of the conspiracy."  *United States v Bowman*, 215 F 3d 951, 960-61 (9th Cir 2000).  As to the first requirement, the existence of the conspiracy involving the declarant and non-offering party must be established by a preponderance of the evidence.  *Bourjaily v United States* 483 US 171, 175 -76 (1987) ("[W]hen the preliminary facts relevant to Rule 801(d)(2)(E) are disputed, the offering party must prove them by a preponderance of the evidence."). In deciding this question, "the court is not bound by evidence rules, except those on privilege." FRE104(a).  As a result, the co-conspirator statements at issue may be considered as there is evidence demonstrating a conspiracy beyond the statements themselves.  *Bourjaily*, 483 US at 181 (finding conspiracy established where evidence showed that the person described in the coconspirator statements showed up at the described spot at the described time to pick up the described drugs and a significant sum of money was found in his car); *United States v Silverman*, 861 F 2d 571, 578- 80 (9th Ci.1988) (finding standard was not met where independent evidence was minimal and

relied on Silverman's association with his sister, who was an alleged co-conspirator); *In re Korean Ramen Antitrust Litig*, 281 F Supp 3d 992, 933–34 (N D Cal. 2017) (finding conspiracy established where objected-to evidence of conspiracy was supported by defendants' own conduct and expert economic analyses).

As to the second requirement, "[i]n this Circuit, the prosecution need only show slight evidence connecting the defendant to the conspiracy, and this evidence may be circumstantial." United States *v Mason*, 658 F 2d 1263, 1269 (9th Cir 1981).  Evidence inconsistent with unawareness of the conspiracy cannot be used as corroborating evidence under FRE 801(d)(2)(E).  *In re Coord Pretrial Proc in Petroleum Prods Antitrust Litig*, 906 F 2d 432, 459 (9th Cir 1990).  Nonetheless, "[t]he Rules of Evidence are to be liberally construed in favor of admissibility."  *In re Domestic Drywall Antitrust Litig*, 163 F Supp. 3d 175, 203 (E D Pa 2016).  And courts have considerable discretion in determining whether to admit evidence under the hearsay rule.  *United States v Town of Colorado City*, 935 F 3d 804, 807 (9th Cir 2019) ("We review de novo the court's interpretation of the hearsay rule, but [we]review the court's admission of evidence for abuse of discretion.").

As to the third requirement, a wide range of statements can meet the "in furtherance" requirement for admissibility.  "[E]xpressions of future intent or statements that 'further the common objectives of the conspiracy or set in motion transactions that are an integral part of the conspiracy' are admissible."  *Bowman*, 215 F 3d at 961.  For example, "statements made to keep coconspirators abreast of an ongoing conspiracy's activities satisfy the 'in furtherance' of requirement."  United States *v Moran*, 493 F 3d 1002, 1010 (9th Cir 2007).

Judge Illston applied FRE 801(d)(2)(E) to find admissible conspiratorial meeting notes and other documents in the trial of one of the participants in the LCD conspiracy.  *United States v AU Optronics Corp*, 2012 WL 12036080 (N D Cal 2012) at *1.  The government sought admission ahead of trial of 30 documents it intended to use in its direct examination of a former executive of AU Optronics.  These documents included meeting notes for "Crystal Meetings" which resemble the "Glass Meetings" herein.  Judge Illston rejected the defendants' argument that the government had not sufficiently established that *each declarant* participated in the

conspiracy–particularly where individual speakers were identified by corporation rather than name:

> The government has established by a preponderance of the evidence that the declarants were members of the conspiracy.  The statements at issue are compelling evidence that such was the case. This conclusion is buttressed by the fact that the declarants' employers were members of the conspiracy. Because the declarants were all employees acting within the scope of their employment, the evidence that their employer participated in the conspiracy is strong independent evidence of their own participation.

*Id*. at *2.

Judge Illston also found that the statements were made in furtherance of the conspiracy and were therefore admissible under FRE 801(d)(2)(E).  *Id*. ("Having reviewed the documents the government intends to use in Mr Wong's testimony, the Court agrees that they were made in furtherance of the conspiracy.").

The evidence establishing the existence of the conspiracy here is overwhelming. Indeed, the court has already found the conspiracy existed according to the applicable standard:

> "Upon its own inquiry, the Court is satisfied that the quantity and quality of the evidence supports by a preponderance of the evidence that there was a price-fixing scheme and its existence and operations would be a question common to all class members."  *In re Cathode Ray Tube (CRT) Antitrust Litig*, 308 FRD 606, 625 (N D Cal 2015).

Six former executives of co-conspirators Samsung SDI, Chunghwa, LGE and LPD were indicted by the DOJ alleging, *inter alia,* agreements on prices, output and market allocation; exchange of sales, production, market share and pricing data; auditing to verify compliance with conspiratorial agreements; and active concealment of the conspiracy.  See discussion of indictments, supra.

1   Chunghwa executives who participated in the conspiracy, including authors of meeting

2   notes, testified to the existence of the conspiracy.  For example, Chunghwa's Senior Manager J

3   S Lu affirmed the conspiratorial nature of the meetings and the attendance of Irico:

4   Q. Okay, Mr Lu, my question goes beyond whether prices were

5   just discussed, but whether at the meetings you attended during this time

6   period the competitors actually agreed upon certain CDT prices to be

7   charged?

8   [. . .]

9   THE WITNESS: Almost every meeting reached such an

10   agreement.  The point is whether these agreements were actually

11   executed.  Every time, in every meeting, price agreement was reached.

12   Q. Can you describe for me, in your own words, the types of price

13   agreements that were reached in these meetings?

14   [. . .]

15   THE WITNESS: For different sizes, there would be one bottom

16   price for one size.  You could offer to your major customers the lowest

17   price, the bottom price, but for those non-major customers the price could

18   go up $1.00 or $2.00.  Agreements were generally of such a nature.

19   Saveri Decl, Ex 5 at 62:2–24.[5]

20   Mr. Lu further testified:

21   Q.  Now, Mr. Lu, you'll recall that you testified earlier about China

22   CDT maker meetings in mainland China through a number of meeting

23   reports, correct?

24   A.  Yes.

25   Q.  Now, I wanted to ask you a couple of general questions

26   regarding those meetings, okay?

27

28   [5] Declaration of R Alexander Saveri, December 16, 2021, submitted to the undersigned in connection with the PPs' motion to admit.

SM ORDER RE ADMISSIBILITY OF CO-CONSPIRATOR STATEMENTS          PAGE **13** OF **47**

A. Okay.

Q. From about when to when did those meetings last?

A. As far as I can remember, I arrived Fuzhou in November 1998, those meetings had started prior to my arrival. I don't know whether my memory is precise, those meetings might have ended in 2001.

Q. Thank you. Now, to the best of memory, who participated in those meetings?

A. Major – major participating companies were Chunghwa, SED (later SDI), Philips    mainly Huang Fei, Orion, LPD – LG, called LG before they were merged. Irico and Matsushita Beijing.

[. . .]

Q. Did Chunghwa inform the other participants at these meetings about CDT glass meetings that were held outside of China?

A. I remember that at meetings it was Philips who – which was briefing the group meeting status. Philips was the leader, that was that is my memory.

Saveri Decl, Ex 6 at 238:3–240:1.

Chunghwa's Director of Sales and Marketing, S J Yang, also testified that the companies met to reach agreements on price:

Q. Did the companies attending these working-level CPT meetings try to set prices for the CPT marketplace?

[. . .]

THE WITNESS: We would – we would hope to reach a price agreement.

Saveri Decl, Ex 7 at 62:15-21

Yang also identified Chunghwa, Samsung, LG, Orion, and Philips as attendees of the working-level CPT meetings in 1997; and Chunghwa, SDI, LPD, Thai CRT, and MTPD (the Toshiba and Matsushita joint venture) as attendees around 2002 or 2003. *Id* at 61:12-62:10.

Similarly, Chunghwa's former Vice President, C C Liu, explained that the purpose of the meetings was to set prices through group meetings:

> Right from one-on-one meetings, we hoped to see whether the prices could remain stable in order to keep our businesses and our career and the company's life going on. In order to prevent serious losses, to maintain long-term stability in the industry, the best way is for everyone to maintain a price.  The most effective way will be through group meetings.

Saveri Decl, Ex 8 at 51:9-17.

> Q.  So it was your intent when you went to the monthly meetings to exchange price information?
>
> A.  Yes
>
> Q.  And when you went to the monthly meetings, you expected to receive price information from the participants; is that correct?
>
> [. . .]
>
> THE WITNESS: Yes.
>
> Q.  At the monthly group meetings, did you come to an understanding of what prices you would charge customers?
>
> [. . .]
>
> THE WITNESS: That would be the purpose of our meeting. Of course we did it.
>
> Q. Okay.  So, is it your understanding then that you came to an agreement with the participants on the prices to be charged for CRTs during this period of time?
>
> [. . .]
>
> THE WITNESS: Yes.

*Id.* at 55:1-56:2.

Q.  So during the group meetings that you attended with

Samsung, is it your belief that you came to a common understanding with

Samsung as to the prices that would be charged to customers for CRTs?

[. . .]

THE WITNESS: Not only Samsung, all the participants I believe

reached somewhat consensus. We all – we, who were present there,

developed a common understanding.

*Id.* at 56:14‑24; *see also id.* at 57:16‑67:7

This testimony identified LG, Philips, LG Philips, Orion, Thai CRT, and MTPD, as attendees of the group "glass" meetings from 1995 to 2005 who reached common understandings on CRT prices.  See Saveri Decl., Ex 9 329:10‑330:17 (identifying Hitachi, Irico, Toshiba, and Matsushita as "companies that Chunghwa reached out to who were not participants in the group meetings.". Id.   Liu also explained the comprehensive nature of the pricing agreements.  See *Id* at 296:3‑24.

As noted above, Irico has taken the position that none of the meeting notes are admissible unless hearsay exceptions apply to all potential "double hearsay" statements in the notes.  Irico's position is incorrect because the overwhelming majority of what Irico contends are "double hearsay" statements are not hearsay at all.  Therefore, if the meeting note itself is within the confines of FRE 801(d)(2)(E) or is a business record, the entire document is admissible.

First, as explained, the meeting notes are non-hearsay under FRE 801(d)(2)(E). The purported "double hearsay" statements are also non-hearsay because they are statements of conspirators made in furtherance of the conspiracy.  They are therefore admissible on that ground.  This was the approach taken by Judge Illston in the LCD case.  *AU Optronics*, 2012 WL 12036080, at *2. The evidence shows that all other participants in the meetings, moreover, were also members of the conspiracy.

Second, statements not offered for their truth are admissible non-hearsay statements by meeting participants recorded in the meeting notes are not hearsay when offered to prove the fact that they were made or that participants exchanged information about production, sales,

manufacturing capacity, sales or prices or reached agreements to maintain or increase prices or reduce production.  Not all out-of-court statements are hearsay. Out-of-court statements constitute hearsay only when offered in evidence to prove the truth of the matter asserted." *Anderson v United States*, 417 US 211, 219 (1974).  To the extent the documents contain non-hearsay statements, those statements are admissible without requiring any further hearsay analysis.  For this reason, statements recorded in meeting notes are admissible to show what was said and done at the meetings.  *Drew v Equifax Info Servs, LLC*, 690 F 3d 1100, 1108 (9th Cir 2012) (noting that a statement offered to show that the statement was made is not hearsay); *Haddad v Lockheed California Corp*, 720 F 2d 1454, 1456 (9th Cir 1983) (upholding admission of complaints made against employee to demonstrate nondiscriminatory intent where complaints were offered to show complaints had been received rather than for the truth of the complaints themselves).

These facts are unquestionably relevant.  Among other things, the events recorded in each provides context for understanding the actions, intent and motives of conspiracy members, including their sharing of pricing and production levels of CRTs.  What was said and done at the conspiracy meetings also goes directly to Irico's understanding of the conspiracy and participation in it.

Third, statements made by Irico through its representatives are also admissible non-hearsay.  FRE 801(d)(2); *United States v Perez*, 658 F2d 654, 659 (9th Cir. 1981).  This non-hearsay definition extends to situations in which the statements are made by an employee of a corporate defendant on a matter within the scope of their employment.  FRE 801(d)(2)(D).  The statement is offered against an opposing party and was made by the party's agent or employee on a matter within the scope of that relationship and while it existed.  The statement does not need to be specifically authorized by the employer.  FRE 801(d)(2)(D) authorizes admission of any statement against a party if the statement is made within the scope of an employment or agency relationship.  *United States v Bonds*, 608 F 3d 495, 502 (9th Cir 2010).

In response to the PPs' effort to establish the predicate facts to admit the alleged conspirator statements pursuant to FRE 801(d)(2)(E), Irico raises several arguments.  First, Irico

argues that the facts fail to establish that Irico participated in the conspiracy alleged.  See Taladay Ltr, Apr 11, 2022 at 1-2.  Irico misreads the applicable law which Irico includes in a footnote to this argument.  The PPs are required to offer "some evidence" of Irico's participation. *In re Coordinated Pretrial Proc in Petroleum Prod Antitrust Litig*, 906 F 2d 432, 459 (9th Cir 1990).  Id at 2 n1.  Irico conflates the PPs' burden to prove liability and the burden to admit evidence.  A jury might conclude that the evidence the PPs have been able to marshal is too thin to hold Irico liable.  But that possibility should not foreclose the presentation of the evidence to allow the jury to weigh the evidence and decide the issue.  The evidence the PPs have presented at this point may fall short of what proves liability, but that is not the issue at present. There is adequate evidence of Irico's participation in the CRT conspiracy to let a jury review the documents the PPs offer and make an ultimate determination.

Second, Irico argues that the evidence the PPs present is directed to something other than the issues in the PPs' case against Irico.  Irico argues that Wang's testimony which is key to the PPs' position largely involved the China CPT Industry Association which Irico argues is collateral to the focus of the PPs' alleged conspiracy here.  It does appear that Irico was largely involved in the China market.  In a commodity product such as CRTs, Irico's interest and focus on part of the market does not negate the effects of its conduct on the entire market, again, an issue for trial and not one before the undersigned or likely one for summary judgment.

Participants in a price-fixing conspiracy seldom have wholly congruent interests, so such different interests have little bearing on the admission of statements made in the course of the alleged conspiracy.  Moreover, this argument also conflates liability and the threshold for admission of evidence.  Again. a jury looking at this evidence might conclude that Irico did not sufficiently affect the market to render Irico liable.  But the jury should not be denied the evidence to enable it to assess Irico's conduct.

Third, Irico's characterization of Wang's description of his encounters with others in the CRT industry as "largely for social reasons, but at worst involving a guarded exchange of largely false market information," asks the undersigned to cast skepticism aside.  Credulousness is not the standard by which evidence is weighed.  Nor is Wang's arguably low-level role at Irico a

1  reason to discount his testimony as it is such individuals who often are involved in competitor

2  contacts.

3        Irico makes a fair point that the governmental investigations did not spotlight Irico, but

4  largely focused on others.  But Irico need not be in the conspiracy's center for the undersigned

5  and the court to conclude that the PPs have presented enough to establish a conspiracy

6  involving Irico.  Nor is Irico's possible cheating, counsel's last point, a reason to turn a blind eye

7  to Irico's involvement and deny the jury the opportunity to assess evidence relevant to Irico's

8  conduct.  Cheating among antitrust conspirators is hardly unknown.

9        Irico's contention that it was unaware of the conspiracy and did not participate in it

10  strains credulity.  It is axiomatic that a conspiracy is seldom proved by direct evidence and still

11  less by forthright admissions by the conspirators.  The slippery character of Wang's testimony

12  should not, therefore, surprise nor deflect the reader from the obvious and most probable

13  conclusion that Irico in fact participated in the conspiracy in furtherance of it.  Irico's refusal to

14  admit participation may be understandable, but acceptance of Irico's denial would reflect a

15  surprising obliviousness.  The PPs have satisfied the fundamental elements of FRE

16  801(d)(2)(E) to admit into evidence the documents at issue here.  For these reasons, the

17  undersigned rejects Irico's hearsay-within-hearsay objection and its related argument under

18  FRE 801(d)(2)(E), except with respect to portions of the documents, which are discussed

19  hereafter.

20        Irico's able counsel has, however, another arrow in its quiver of contentions.  This is

21  Irico's insistence on punctilious application of hearsay rule whose exceptions far outweigh the

22  rule.  Irico styles this as its truth-of-the-matter-asserted objection.  Irico asserts this objection to

23  every document that the PPs seek to admit.  The argument misses an essential point about the

24  documents the PPs seek to admit.  By one interpretation, the statements the documents record

25  should not strictly be interpreted as hearsay as the truth of the recorded statement is less

26  important than the fact of the statement itself.  This, of course, is the point of the FRE

27  801(d)(2)(E) exception to the hearsay rule for co-conspirator statements.  Conspirators are not

28  renowned for their veracity either with reference to outsiders to the conspiracy or among

themselves.  What is important is that a conspirator made a statement in furtherance of the conspiracy.  If the statement was factually untrue, but made to further the conspiracy itself, it is the statement that matters and is relevant to establish the existence of the conspiracy and its participants.

As noted, the theme that runs through Irico's arguments against admission of the documents the PPs offer relies on the paradoxical provisions of the hearsay rule and focuses heavily on FRE 805.  This rule provides that hearsay within hearsay is not excluded "if each part of the combined statement conforms with an exception to the rule".  Irico accuses the PPs of lumping together indiscriminately bundles of hearsay without anchoring each hearsay statement in one of the numerous exceptions.  Irico would launch the PPs, the undersigned and the court on a sort of truffle hunt for exceptions to anchor each statement in the documents whose admission the PPs seek.  In demanding this exercise, Irico loses sight of important policies the FRE foster.  In any event, Irico did not raise more than a relatively few specific objections to the contents of the documents the PPs offer.

The noteworthy feature of the documents that the PPs seek to admit is the meticulousness, regularity and careful attention to detail that they reflect.  In garden variety conspiracy cases, participants seldom leave a detailed written record of their interactions.  The documents involved in the present motion stand as signal exceptions to the conventions of most conspiracies.  The documents at issue here appear to have been prepared at or about the time of the act, event, condition or opinion that they record.  They appear to have been prepared regularly in the course of the activities that they reflect and were prepared with an evident business purpose.  There is nothing that Irico has presented which suggests that the sources from which the documents were obtained or circumstances of their preparation lack trustworthiness.  These, of course, are the hallmarks of business records which are routinely admitted into evidence despite containing multiple layers of hearsay.  See FRE 803(6).  Due simply to the preparation of these documents as part of an illegal activity does not detract from their reliability as evidence to show Irico's participation in that illegal activity.

The general policy of the FRE and FRE 803(6) in particular "favors the admission of evidence rather than its exclusion if it has any probative value at all." *In re Ollag Construction Equipment Corp*, 665 F 2d 43, 46 (2d Cir 1981). In an antitrust conspiracy, which seldom produces direct evidence of conspiracy and the plaintiffs must rely on inferences from indirect proof, ascertainment of a party's concerted conduct should not be unduly constrained. In the case of the documents before the undersigned, the rules need not be bent, however. The undersigned concludes that the PPs have adequately established the prerequisites for admission under FRE 801(d)(2)(E) of the documents in the PPs' inventory. The documents the PPs seek to admit establish the occurrence of the meetings they reflect, the dates and the locations thereof and subjects addressed at such meetings. The undersigned, therefore, rejects Irico's truth-of-the-matter-asserted objection.

Finally, in the documents in the PPs' inventory, Irico is shown as having participated in forty-five of the meetings or contacts that the documents reflect. Having engaged directly in those meetings and contacts, Irico is charged with knowledge of what was said and done in those events. Admission of those documents is an easy decision, therefore. Only slightly more difficult is to decide to admit the documents reflecting meetings or contacts in which Irico was not physically present. As Judge Illston observed, once a party joins an antitrust conspiracy, that party is chargeable with the acts of its coconspirators even if such acts were done without the knowledge of other conspirators. *United States v AU Optronics Corp (In re TFT-CLD (Flat Panel) Antitrust Litig), 2011 US Dist LEXIS 42345 (N D Cal 2011)*(citing ABA Section of Antitrust Law, Model Jury instructions).

Literal application of this principle could warrant admission of virtually all the documents in the PPs' inventory. The court need not go that far, however. Excluding some of the documents of meetings and contacts in which Irico was not physically present does not materially weaken the point that Irico was an active participant in the conspiracy the PPs allege. Perhaps, Irico played a secondary role. For the documents that do not reflect Irico's physical presence, the court may wish to afford the PPs the opportunity to connect the events or circumstances recorded to Irico's activities and the undersigned so recommends.

SM ORDER RE ADMISSIBILITY OF CO-CONSPIRATOR STATEMENTS            PAGE **21** OF **47**

1

INDIVIDUAL DOCUMENTS[6]

2          In the following portion of the report each document is identified by the tab number in the

3    July 13, 2022 chart and its corresponding Bates stamp number:

4          1.      Chunghwa Meeting Note dated October 11, 1998; CHU0003 0679–83

5          The author of this admittedly authentic copy of a Chungwha business record appears to

6    be Guang-Hui Dai of Chungwha Picture Tube (Fushou)  Ltd ("CPTF") who, among other

7    matters, records two statements of Zheng-Er Shao of Phillips ("PHS") and a statement of Tae

8    Sik Kong of Orion at a meeting in Fuzhou attended by Irico's representative, Jian-She Wei.  Irico

9    specifically objects to these three statements.  Declarants of the statements to which Irico

10   objects appear to have made the statements at a meeting attended by Irico, the meeting

11   concerned CRT production and pricing, the meeting was recorded in a non-hearsay document

12   and the truth of the challenged statements is immaterial to the document's relevance.  The

13   document is relevant to show Irico's participation in a meeting of CRT producers concerning the

14   matters described in the document.  The document should be admitted.

15         2.      Chunghwa Meeting Note dated November 8, 1998; CHU00030684–87

16         This admittedly authentic copy of a Chungwha business document appears to be signed

17   by Guang-Hui Tai, Chung-Cheng (Alex) Yeh and Afan Tseng, all of CPTF.  The record does not

18   clarify that Guang-Hui Tai on this document is the same person as the Guang-Hui Dai on Doc 1.

19   The undersigned assumes that this change in spelling is product of English translation from a

20   phonetic language and is immaterial to admission of the document.  The document records a

21   meeting on November 6, 1998, at Xian attended by Irico's Jian-She Wei.  Irico makes specific

22   objection to a statement attributed to SSDD manager Myoung Sik Lee at CHU000306684.01E

23   and PHS's Zhen-Xi Shao at CHU00030684.02E.  As both individuals participated in the meeting

24   and Irico offers no reason to question that statement was made in the course of the meeting

25   without regard to its truth.  Hence, Irico's specific objections should be overruled and the

26   requested redactions denied.

27   _____

28

1

2    3.    Chunghwa Meeting Note dated December 11, 1998; CHU00030688–91

3    This admittedly authentic copy of a Chungwha business document is a report of a

4    business trip to Beijing signed by Chung-Cheng (Alex) Yeh and another.  Yeh is recorded as

5    having attended the meeting and, therefore, has reason to know who else attended the meeting.

6    The document itself is not hearsay.  Although the document indicates that Irico was represented

7    at the meeting, it is vague about who attended on Irico's behalf ("Irico: President Ma . . . etc).

8    This could be reference to Ma Jinquan.  See Doc #20.  Given the volume of other evidence that

9    Irico attended many such meetings, this ambiguity could support exclusion of this document on

10   cumulative grounds.  But the undersigned recommends instead affording the PPs the

11   opportunity to substantiate the identity of Irico's representative and upon substantiation would

12   recommend admission of the document.

13   4.    Chunghwa Meeting Note dated January 9, 1999; CHU00030695–97

14   This admittedly authentic copy of a Chungwha business record is another signed by

15   Chung-Cheng (Alex) Yeh and initialed by Jing-Song (Jason) Lu, both of CPTF and participants

16   in a meeting at Xiamen.  Irico's sales manager Wei-Sheng Li, its assistant manager Jun Yao

17   and Zhaao-Jie Wang attended.  Irico objects to a specific statements Zheng-Xi Shao of PHS at

18   CHU00030695.02E and an observation attributed by the authors to Shao participating on behalf

19   of PHS at CHU00030697.01E.  The document itself is not hearsay and the foregoing specific

20   objections by Irico should be overruled and the noted statements admitted as evidence of Irico'

21   attendance and participation in the meeting and knowledge of the statements noted.  Beijing

22   Matsushita Color CRT Co, Ltd ("BMCC") is not listed as an attendee at the meeting, but is

23   referred to at CHU00030697.01E, a reference to which Irico objects.  BMCC's participation

24   might be particularly relevant given that Irico had significant presence in the Chinese market

25   where BMCC presumably was also a player.  BMCC's participation in the meeting is not clear

26   from the document, however, so the reference to BMCC should be redacted if the PPs cannot

27   establish evidence of BMCC's connection with the events recorded.  See Doc #5.

28

5.   <u>Chunghwa Meeting Note dated February 4, 1999; CHU00030705–08</u>

This Chungwha document submitted by Guang-Hui Tai reports a February 2, 1999 meeting at Shenzhen.  Irico's Chao-Jie Wang is reported to have attended.  Irico specifically objects to statements at CHU00030706.01E attributed to Haufei, PHS and BMCC, all of which were represented at the meeting.   As the document is not itself hearsay, the document may be admitted as evidence of Irico's attendance at the meeting and reason to know of what was said at the meeting, including the foregoing statements.  BMCC's attendance and participation might be especially noteworthy for the reasons stated in connection with Doc #4.

6.   <u>Chunghwa Meeting Note dated April 5, 1999; CHU00030734–37</u>

This admittedly authentic copy of a Chunghwa document was business record submitted and signed by CPTF's Wei-Lie Yu and records a meeting in Nanjing on April 2, 1999 attended by Irico's Zhao-Jie Wang.  Irico objects to a statement at CHU00030735.01E attributed to Samsung's manager Li, a representative of one of the conspirators; this objection should be overruled as it constitutes a co-conspirator statement and hence non-hearsay within non-hearsay.  Irico objects to the references to Kitamatsu at CHU00030735.02E and CHU00030736.01E, but fails to substantiate its objection other than repeating its "hearsay within hearsay" objection.  In this instance, the Kitamatsu references may arguably be "hearsay within non-hearsay."  As the document does not show that Kitamatsu participated in the meeting, these statements may be redacted with no loss of evidentiary value to show that Irico participated in a meeting dealing with the subject matters noted in the document.

7.    <u>Chunghwa Meeting Note dated May 10,1999; CHU00030752–55</u>

This admittedly authentic copy of a Chungwha document was prepared by CPTF's Jing-Song (Jason) Lu and records a "Market Information Exchange" on May 6, 1999.  Irico's Wei-Sheng Li and Zhao-Jie Wang are shown to have attended the gathering.  Irico's objections to the statement about Shenzhen Samsung at CHU00030754.01E, the statements of Shao and Tae-Sik Kong at CHU00030754.02E should be overruled.  These individuals were participants in the meeting and Samsung an admitted co-conspirator.  The document is evidence of Irico

attendance at the meeting and its knowledge of the statements made at the meeting.  The

document should be admitted without redactions.

        8.    <u>Chunghwa Meeting Note dated May 24, 1999; CHU00029191–94</u>

        This admittedly authentic copy of a Chungwha document records minutes of a meeting

on May 10, 1999 at Seoul; the face of the document does not establish that Irico attended this

meeting.  For that reason, the document should not be admitted without further foundation tying

Irico to the events recorded in this meeting.  If that additional foundation is laid, Irico objects to

inclusion of statements of Samsung's Kim and OEC's Moon at CHU00029192E.  Kim's

statement appears to have been made at the meeting on behalf of a conspiracy participant, so

there would be no ground for excising Kim's statement.  Moon's statement, on the other hand,

may arguably be hearsay if offered for the truth of the statement.  But if Irico's presence at the

meeting can be established and Moon's statement is offered only for Irico's knowledge of

Moon's statement, but not for its truth, document may be admitted without redaction.

        9.    <u>Chunghwa Meeting Note dated May 24, 1999; CHU00030769–70</u>

        This admittedly authentic copy of a Chungwha business record is a handwritten note

dated May 5, 1999 to the director of the CPTC [sic] sales department signed by CPTC's Jing-

Song (Jason) Lu.  As the document is a statement by a conspiracy participant, it is not hearsay

and may be admitted for the purpose of showing that Irico received a request to "cooperate with

[Chungwha] to increase the 14" CPT sales price starting July 1st."  A request "to cooperate" from

a conspiracy participant is relevant itself without regard to how Irico responded to the request.

In the absence of further foundation, however, the reference to Irico's response that it "basically

agreed" should be redacted.  Because other evidence a favorable response to the request

would establish that the statement that "IRICO basically agreed" would constitute a statement

against interest or admission and overcome Irico's hearsay objection, the document in that case

should then be admitted without redaction.

        10.    <u>Chunghwa Meeting Note dated June 23, 1999; CHU00029050–51</u>

        This is admittedly authentic copy of a Chungwha business record is a report by CPTF's

Jing-Song (Jason) Lu of a "CPT Meeting" with CRT producers to which Irico has not lodged a

specific objection.  The document references contacts on June 22, 1999 among CPT Fuzhou,

Orion, CPT and Irico's Li and Sha.  Upon submission of evidence that the references to Li and

Sha are Wei-Sheng Li and Zhao-Jie Wang, the document may be admitted as evidence of

Irico's attendance at this meeting and knowledge of the contents of the document.

11.  <u>Chunghwa Meeting Note dated July 9, 1999; CHU00030797–98</u>

This admittedly authentic Chungwha business record is a "Contact Report" by CPTF's

Guang-Hui Dai dated July 9, 1999 of a meeting in Fuzhou of representatives of Orion,

Chunghwa, Samsung, Philips and Irico's Zhao-Jie Wang and Jun Yao.  Irico lodges objections

to the statements on CHU00030798.01E attributed to Philips, Orion and BMCC.  Because

representatives of Philips and Orion attended the meeting, statements attributed to these

entities may be deemed admissions or statements against interest recorded in a non-hearsay

document.  Because BMCC did not attend the meeting, the statement attributed to BMCC

should be redacted, but the document otherwise admitted.

12A.  <u>Chunghwa Meeting Note dated August 9, 1999; CHU00030819–22</u>

This admittedly authentic Chungwha business record is a report dated August 5, 1999

and signed by CPTF's Wei-Lie Yu concerning a meeting in Nanjing with participants in the

production and sale of CRTs, including Irico's Wei-Sheng Li and Zhao-Jie Wang.  Irico lodges

an objection to the statement of Shenzhen Samsung at CHU00030819.01E.  As a

coconspirator, the Samsung statement is not hearsay.  Both Orion and BMCC were represented

at and participated in the meeting.  Statements attributed to these parties at CHU00030819.02E

and CHU00030820.01E were admissions or statements against interest.  Irico's objections

should be overruled and the document admitted without redaction.

12B.  <u>Samsung SDI Meeting Note dated August 5, 1999; SDCRT-0086672–74</u>

This admittedly authentic copy of a Samsung business record relates to an industry

meeting at a restaurant in Nanjing on August 5, 1999.  It appears to be the same meeting

referred to in Doc #12A.  Doc #12B was prepared at the time of the event it records and

appears on its face to be a document maintained in the regular course of business.  As

previously noted, the document should be deemed a business record under FRE 803(6).  The

meeting was attended by Irico's Ui Seng Lee, So Kul Wang a Mr Sa.  At the meeting, CPT's C C

Liu reportedly said at SDCRT-0086672E that "industry meetings should remain confidential

considering the international regulation of antitrust laws."  Irico objects to statements of Philips,

BMCC and Orion at SDCRT-0086672E.  As all of these parties were present at the meeting,

along with Irico, and Liu's statement is not hearsay under FRE 801(d)(2)(E), these objections

should be overruled and the document admitted without redaction.

13.   Chunghwa Meeting Note dated September 6, 1999; CHU00030843–45

This admittedly authentic copy of a Chungwha business record relates to a meeting in

Xi'an on September 2, 1999 attended by Irico's Zhi-Yuan Wei, Zhao-Jie Wang and Jun Yao.

Irico objects to a coconspirator statement of Philips at CHU00030844.01E and a statement

against interest and/or admission by Orion's Qin Ying Park at CHU00030844.02E.  These

objections should be overruled.  As BMCC is not shown as having participated in this meeting,

the BMCC statement to which Irico objects at CHU00030844002E should be redacted.  The

document should otherwise be admitted.

14.   Chunghwa Meeting Note faxed on April 24, 2000; CHU00030979–84

This admittedly authentic copy of a Chungwha business record reports is a "Visitation

Report," the author of which is not clear from the document itself.  Although Irico is mentioned in

the document, the reference at CHU00030979E is oblique, suggesting that the evidentiary value

of the document is slight.  The undersigned recommends that it not be admitted.

15.   Chunghwa Meeting Note dated April 10, 2000; CHU00030992–94

This admittedly authentic copy of a Chungwha business record reports on a market

exchange meeting in Xiamen on April 6, 2000.  Deposition testimony of Zhao-Jie Wang

establishes that on Irico's behalf, he attended the meeting which he characterized as a "purely

information exchange meeting" and "not very important."  The fact-finder can consider Wang's

testimony about the document and give the document such weight as appropriate.  Irico lodges

specific objections to statements of Samsung's Myong Sik Lee about needing "to verify [SDI's

stopping production] with headquarters and Philips' Zheng-Fu Tian on CHU00030992.02E

about 15"/17" CDT inventory.  As the document shows that these individuals attended the

meeting on behalf of the respective entities and their comments recorded in a business record of a conspiracy participant, Irico's objections should overruled.  As the source of the statement about BMCC on CHU00030993.01E is not clear, that portion of the document should be redacted, but the document otherwise admitted.

16.   Chunghwa Meeting Note dated Meeting Note dated April 17, 2000

This admittedly authentic copy of a Chungwha business record summarizes "Market Information and Price Discussions" that Irico appears not to have attended although participants in the CRT conspiracy comment about Irico's conduct.  The document is not itself hearsay.  The observations about Irico's conduct appear to have been made by coconspirator CPT and admissible on that basis.  Nonetheless, the document appears of minimal evidentiary value regarding the PPs' allegations about Irico and on that basis may be excluded with little loss of evidentiary value.

17.   Chunghwa Meeting Note dated June 25, 2000; CHU0029110–15

This admittedly authentic copy of a Chungwha business record appears to summarize a telephone call involving Wen-Chun (Tony) Cheng and Philips' Jim Smith and Irico's SaTao on June 23 and 25, 2000, respectively.  Irico fails to advance a specific objection to any portion of this document and it should be admitted.

18.   Samsung SDI Meeting Note dated May 10/11/12, 2001; SDCRT-0087694

This admittedly authentic copy of a Samsung business record summarizes an industry meeting on May 10-12, 2001 attended by Irico's Gyu Doh and Gun Sul Wee.  Irico advances specific objections to statements against interest or admissions by BMCC on SDCRT-0087695E and Shanghai Yongxin on SDCRT-00876E and the coconspirator statement of LG on SDCRT-0087696E.  As these entities were represented at the meeting along with Irico, the objections should be overruled and the document admitted without redaction.

19.   Chunghwa Meeting Note dated July 26, 2001; CHU0003 6412–13

This admittedly authentic copy of a Chungwha business record reports on a Visitation" on July 24, 2001, but there is nothing on the face of the document to indicate that Irico was visited or otherwise had knowledge of the visitation or participated in the discussion recorded.

At most, the document might be evidence about the course and scope of the conspiracy, but the PPs should spell out document's relevance before being admitted.

20.    Samsung Meeting Note dated August 9, 2001; SDCRT-0087700–02

This admittedly authentic copy of a Samsung document summarizing an eight-hour business meeting on August 9, 2001 attended by Irico's Ma Jinquan, Yui GunSeol and Shin Hyo and should be admitted to show Irico's attendance and knowledge of the discussion recorded. Irico offers no specific objection.  Samsung SDI's interrogatory responses dated November 25, 2013, and verified by SDI's Yongtae Kim, substantiates that SDI met in Shenzhen, China on August 9, 2001 with numerous CRT producers and sellers, including Irico's Jinquan Ma, Kun Seol Wi, Hyo Lim Shin.  This document should, therefore, be deemed a business record under FRE 803(6); it is directly relevant to Irico's conduct.  The document should be admitted.

21.    Chunghwa Meeting Note dated January 2, 2004; CHU00030067

This admittedly authentic copy of a Chungwha business record references a December 31, 2003, meeting at Irico in Shenzhen.  Irico offers no specific objection and no basis for exclusion appears on the face of the document.  It should be admitted without redaction.

22.    Samsung SDI Meeting Note dated August 18, 2005; SDCRT-0091524–30

This admittedly authentic copy of a Samsung SDI document reflects a meeting on August 16-17, 2005 between Irico's Xing Daoqin, Guo Mengquan and Zhang Shaowen and SDI's Jae Shik Kim, Hoo Mok Ha and Chang Hwan Lee and Woon Sa.  The subjects discussed appear to relate to CDTs which are embraced in SDI's guilty plea.  Irico specifically objects to statements by "Shon" at SDCRT-0091527E and SDCRT-0091530E by Kim at SDCRT-0091528E.  The document appears to have been prepared shortly after the event it records as part of SDI's regular business practice.  In deposition testimony of Wang Zhao Jie, a copy of which was submitted to the undersigned, the witness identified the meeting reflected in this document as having been attended by Irico personnel; the document was prepared essentially contemporaneous with the events it records and should be deemed a business record under 803(6).  There is some ambiguity with reference to the identity of the individual "Shon," referred to in the document.  It appears that the identity of that individual is probably Zhang Shaowen,

who is mentioned in the document.  In any event, the document should be admitted in its entirety without redaction.

23. <u>Chunghwa Meeting Note dated October 25, 2005; CHU00040992–93</u>

This admittedly authentic copy of a Chunhwa business record reflects an October 18-19, 2005 meeting between representatives of Irico and Chungwha within the conspiracy period, so the document qualifies as non-hearsay under FRE 801(d)(2)(E).  Irico offers no specific objection and the document should be admitted without redaction.

24. <u>2006 Color Tube Presidents' Mtg Mins Nov 21, 2006; CHU00102752–54</u>

Irico is not shown as having attended this meeting. The PPs contend that a copy of this document was emailed to Chungwha by Irico's Liang Yuan, but the undersigned was unable to locate this email.  Upon laying that foundation, the document may be considered for admission, but otherwise should not be admitted.

25. <u>2007 Color Tube Presidents' Mtg Mins Jan 15, 2007; CHU00102864–65</u>

This document comes near the end of the conspiracy period as reflected in the guilty pleas and civil findings.  Irico is not shown as having attended this meeting, but there is a reference to coordination by participants in the conspiracy with Irico.  CHU00102864.02E. Evidence that Irico acted in accordance with the description of its conduct would warrant admission of the document.

26. <u>Display Search TV Flash Report, CHWA00226236–69</u>

PPs withdrew this document.

27A. <u>Chunghwa Meeting Note dated July 31, 1998; CHU00030668–69</u>

This admittedly authentic copy of a report about a "China CDT MAKER Coordination Meeting" on or about July 31, 1998 was signed and submitted by CPTF's Chung-Cheng (Alex) Yeh.  The document's only mention of Irico is possible meeting in Xian.  Evidence that Irico attended this meeting would support admission of this document.

27B. <u>Chunghwa Meeting Note dated August 5, 1998; CHU00030661–63</u>

This admittedly authentic business record of a "Mainland China CDT MAKER contact Meeting" on August 11, 1998 prepared by CPTF's Chung-Cheng (Alex) Yeh and attended by

Irico's Chao-Jie Wang is admissible under FRE 801(d)(2)(E) showing Irico's attendance at this meeting and the subject matters discussed there. Irico raises three specific objections to reported statements by Huafei and SSDD at CHU00030662.01E which are statements against interest or admissions. The document should be admitted without redaction.

28.   Chunghwa Meeting Note dated September 4, 1998; CHU00030665–67

This admittedly authentic copy of a "Mainland China CDT MAKER contact Meeting" in September 1998 was prepared by CPTF's Chung-Cheng (Alex) Yeh on September 4, 1998 and is admissible under FRE 801(d)(2)(E). Irico's Zheng-Yuan Wei and Chao-Jie Wang attended the meeting. Irico specifically objects to BMCC"s admission at CHU00030665.01E that BMCC has "given up the CDT market temporarily (because it is losing money)," but this statement appears in context to be a statement against interest or admission. Irico also objects to Huafei's sales assessments and Orion's observations at CHU00030666.01E about the market; these comments in the context of the discussion recorded in the document appear to be acquiescence in raising prices ("ORION was the first to lead the group in expressing suspicion that SSDD did not increase price according to the agreement." and "[T]his time [PHS'] Shao is trying to promote raising prices") and, therefore, admissions and statements against interest. The document should be admitted without redaction.

29.   No Document

30.   Chunghwa Meeting Note dated May 10, 1999; CHU00030756

This admittedly authentic copy of a Chungwha "Customer Contact Report" on May 7, 1999 was prepared three days later by CPTF's Fan Tseng. It appears to record a bilateral meeting between CPTF and Irico as Irico's comments are recorded at CHU00030756.02E. The document should be admitted under FRE 801(d)(2)(E) without redaction.

31.   Chunghwa Meeting Note dated June 7, 1999; CHU0003 0777–80

This admittedly authentic copy of a "Visitation Report" of a June 4, 1999, meeting attended by Irico's Zhao-Jie Wang. Numerous CRT producers attended and participated in the meeting discussing prices, among other matters. Irico specifically objects to comments of SDD, Orion and BMCC on CHU00030779.01E. The SDD comments are admissible under FRE

801(d)(2)(E) and the statements of Orion and BMCC admissible as statements against interest or admissions.  The document should be admitted in its entirety without redaction.

32.    Chunghwa Meeting Note dated June 25, 1999; CHU0003 0787–94

This admittedly authentic copy of a Chungwha business record of a business meeting on June 23, 1999 fails to report that Irico attended this meeting.  Hence, the document should not be admitted.

33.    Chunghwa Meeting Note dated August 6, 1999; CHU00030827–30

This admittedly authentic copy of a Chungwha customer contact report prepared by Jing-Song (Jason) Lu on August 6, 1999 reflects a meeting the previous day attended by Irico's Tao Sha and Wei-Sheng Li and is admissible without redaction under FRE 801(d)(2)(E) as reflecting communications by coconspirators.

34.    Chunghwa Meeting Note dated August 25, 1999; CHU00029179–84

This admittedly authentic Chungwha business record reflects a meeting that Irico is not shown as having attended, but whose comments are reported by Orion's Moon.  Although the document could be admitted to show the existence of the meeting and issues discussed, the document's connection to Irico is sufficiently attenuated that the undersigned recommends that the document not be admitted.

35.    Chunghwa Meeting Note dated September 16, 1999; CHU00029065–67

This admittedly authentic Chungwha business record reflects a meeting that Irico is not shown as having attended.  Unlike No 34, there appear to be no references to Irico and even less reason to consider admission.  The undersigned recommends that the document not be admitted.

36.    Chunghwa Meeting Note dated September 23, 1999; CHU00029175–78

This admittedly authentic Chungwha business record reflects a meeting that Irico is not shown as having attended.  The references to Irico at CHU00029175.02E appear to have been made by CPTF's Liu.  The undersigned recommends that the document not be admitted. Although the document could be admitted to show the existence of the meeting and issues discussed, the document's reference to Irico even in a non-hearsay document does not record

the source or reliability of Liu's comment to warrant admission.  The undersigned recommends that the document not be admitted.

37A.    Chunghwa Meeting Note dated October 4, 1999; CHU00029048–49

This admittedly authentic copy of a Chungwha business record reflects what the PPs contend is a "Glass Meeting" in Europe on October 2, 1999.  There is nothing to indicate that Irico attended this meeting and the reference to Irico was a request to CPT to contact Irico and "explain to Irico" what the group expected of Irico.  This is sufficiently attenuated from a coconspirator statement involving Irico to deny admission.

37B.    Chunghwa Meeting Note dated October 11, 1999; CHU00029046–47

This admittedly authentic copy of a Chungwha business records an October 1999 "glass meeting" with Irico, Philips and Chungwha.  Because this reflects a communication with Irico by a conspirator the document is admissible under FRE 801(d)(2)(E).  It appears to have substantial evidentiary value.  The undersigned recommends that it be admitted in its entirety without redaction.

38.    Chunghwa Meeting Note dated October 15, 1999; CHU00030881–84

This admittedly authentic copy of a Chungwha business record reflects communications at an October 12, 1999, meeting with Irico's Zhao-Jie Wang and other CRT producers.  The document thus qualifies for admission under FRE 801(d)(2)(E).  Irico raises specific objections to statements of Samsung's "Manager Lee" and Philips "Manager Tien" at CHU00030881.01E. These objections should be overruled and the document admitted in its entirety without redaction under FRE 801(d)(2)(E).

39.    Chunghwa Meeting Note dated October 30, 1999; CHU00030899–903

This admittedly authentic copy of a Chungwha business record reflects a meeting on October 27, 1999, although the document appears to be dated a few days later.  There is nothing to indicate that Irico attended this meeting and the reference to Irico by CPT's Liu at CHU00030899.03E reflects a second hand account of communications with Irico.  This is sufficiently attenuated from a coconspirator statement involving Irico to deny admission.

40.   <u>Minutes of Meeting November 5, 1999; CHU00030910-91.</u>

This admittedly authentic copy of a Chungwha business record reports minutes of a meeting on November 5, 1999 at Fuzhou.  Although Irico is not listed as an attendee at the meeting, the context suggests that Irico participated.  Hence, admission of the document should hinge on the PPs' presentation of other evidence of Irico's participation.  If the PPs can tie the comments attributed to Irico to Irico making those comments at the November 1999 meeting or, perhaps, in other contexts, the document may be admitted.

41.   <u>Chunghwa Meeting Note dated November 29, 1999; CHU00029163–70</u>

This admittedly authentic copy of Chungwha business record reflecting a November 25, 1999, meeting of CRT producers fails to identify Irico as a participant at the meeting.  For that reason, the undersigned recommends against admission of the document without evidence of Irico's conduct consistent with the contents of the document.

42.   <u>Chunghwa Meeting Note dated December 10, 1999; CHU00030941–43</u>

This admittedly authentic Chungwha business record of a meeting Irico hosted on November 6, 1998, and attended by Chunghwa, Philips, Samsung SDI and BMCC.  The contents of the document are admissible under FRE 801(d)(2)(E) as coconspirator statements of the attendees.  For that reason, Irico's specific objections to the statements of Samsung and Philips at CHU00030941.01E should be overruled and the statement of Orion at CHU00030942.01E redacted as Orion appears not to have attended the meeting.  The document should otherwise be admitted.

43A.   <u>Chunghwa Meeting Note dated November 20, 1999; CHU00030917–18</u>

This admittedly authentic Chungwha business record of a November 11, 1999 meeting with Philips, Orion, Samsung and LG qualifies for admission under FRE 801(d)(2)(E) and Irico's specific objections to the statements of LG and Philips at, respectively, CHU00030917.01E and CHU00030917.02E should be overruled and the document admitted in its entirety without redaction.

43B.   <u>Chunghwa Meeting Note signed December 20, 1999; CHU00030946–47</u>

This admittedly authentic Chungwha business record reflects a meeting on December 15, 1999 with Philips and Irico dealing with customers Vestel, Grundig and Beko, among other matters.  The document is admissible under FRE 801(d)(2)(E ).  Irico's specific objections at CHU0030947.01E and CHU00030947.02E should be overruled and the document admitted in its entirety without redaction.

44.   <u>Chunghwa Meeting Note dated January 17, 2000; CHU0003 0953–56</u>

This admittedly authentic Chungwha business record reflects a meeting on January 13, 2000 in Xian among Irico, CPTF, Samsung and Philips and is admissible under FRE 801(d)(2(E) and Irico's specific objections to the coconspirator statements at CHU00030953.01E and CHU00030953.02E should be overruled and the document admitted in its entirety and without redaction.

45.   <u>Chunghwa Meeting Note dated January 23, 2000; CHU00029155–62</u>

This admittedly authentic Chungwha business record was prepared by Chungwha's Sheng-Jen (S J) Yang on January 23 concerning a business meeting five days beforehand. Although the place of the meeting is not clear from the face of the document, the document appears to qualify for admission under FRE 801(d)(2)(E) in its entirety and without redaction.

46.   <u>Chunghwa Meeting Note dated March 8, 2000; CHU00030973–75</u>

This admittedly authentic business record of Chungwha was initiated by Chungwha's Jing-Song (Jason) Lu on March 8, 2000 to memorialize a meeting two days beforehand at Shenzhen attended by CRTF, SDD, Philips and Irico.  The document qualifies for admission and Irico's specific objections to the statement of Samsung's Myoung Sik Lee at CHU00330973.01E and to the statements of Philips Jerry Lin at CHO00030974.01E and CHU0030974.01E should be overruled under FRE 801(d)(2)(E) and the document admitted in its entirety without redaction.

47.   <u>No Document.</u>

48.   <u>Chunghwa Meeting Note dated May 11, 2000; CHU00031002–05</u>

This admittedly authentic Chungwha business record was submitted by Chungwha' Wei-Lie Yu shortly after a meeting in Nanjing and reflects a CDT market exchange and price review

on May 9, 2000 attended by Chungwha, Samsung, Irico, BMCC, LG, Philips and Orion. The document qualifies for admission under FRE 801(d)(2)(E) and also on that ground Irico's specific objections to Philips' statements at CHU00031002.02E and CHU00031014.01E should be overruled and the document admitted in its entirety and without redaction.

49. <u>Chunghwa Meeting Note dated April 28, 2000; CHU00029131–37</u>

This admittedly authentic Chungwha business record concerning a meeting on May 25, 2000 does not reflect that Irico attended this meeting and for that reason, the undersigned recommends that it not be admitted.

50. <u>Chunghwa Meeting Note dated June 13, 2000; CHU00031018–20</u>

This admittedly authentic Chungwha business record was submitted by CPTF's Wei-Lei Yu and initiated by Jing-Song (Jason) Lu reflecting a meeting in Beijing attended by representatives of CPTF, Irico, Samsung, BMCC, LG, Philips and Orion. The contents of the document reflect an exchange of price and production information rendering the document admissible under FRE 801(d)(2)(E), including the statements Samsung's "Department Manager Li [sic]" at CHU00031018.01E and Philips' Dong at CHU00031018.02E. To the extent that Orion's statement at CHU00031019.01E is not admissible under FRE 801(d)(2)(E), it should be admitted as an admission or statement against interest. The document should admitted in its entirety and without redaction.

51. <u>Chunghwa Meeting Note dated June 21, 2000; CHU00029116–23</u>

This admittedly authentic copy of a Chnagwha business record reflects market information exchange and price review "visitation". As the document does not reflect Irico's attendance at the visitation, the undersigned recommends that the document not be admitted.

52. <u>Chunghwa Meeting Note dated July 12, 2000; CHU00031032–35</u>

This admittedly authentic copy of a Chungwha business record initiated by CPTF's Jing-Song (Jason) Lu that reflects a market exchange at Xian by Chungwha, Samsung, Irico, Orion, Philips and LG on July 10, 2000. As such, the document is admissible under 801(d)(2)(E) and for reason Irico's specific objections to the statements of "Department Manager Yu and Philips

at CHU00031032.02E and LG at CHU00031033.01E should be overruled and the document admitted in its entirety and without redaction.

53.   <u>Chunghwa Meeting Note dated August 14, 2000; CHU00031040–43</u>

This admittedly authentic copy of a Chungwha business record initiated by CPTF's Jing-Song (Jason) Lu that reflects Mainland China CDT market exchange on August 11, 2000 attended by CPTF, Irico, Samsung, BMCC, LG, Philips and Orion.  The document itself qualifies for admission under FRE 801(d)(2)(E) and for that reason Irico's specific objections to the SDI representatives' statements at CHU00031040.01E should be overruled and, to the extent not otherwise admitted FRE 801(d)(2)(E) Orion's statement at CHU0031041E should be admitted as an admission or statement against interest.  The document should be admitted in its entirety and without redaction.

54.   <u>No Document.</u>

55.   <u>Chunghwa Meeting Note dated September 18, 2000; CHU00031044–46</u>

This admittedly authentic copy of a Chungwha business record initialed by CPTF's Jing-Song (Jason) Lu CDT market exchange meeting at Changsha on September 9, 2000 attended by CPTF, Irico, Samsung, BMCC, LG, Philips and Orion.  The document itself qualifies for admission under FRE 801(d)(2)(E) and for that reason Irico's specific objections to the comment of LG's representative at CHU00031045.01E should be overruled and to the extent not otherwise admitted FRE 801(d)(2)(E) Orion's statement at CHU0031045.01E should be admitted as an admission or statement against interest.  The document should be admitted in its entirety and without redaction.

56.   <u>Samsung SDI Meeting Note dated September 18, 2000; SDCRT-0087312–13</u>

This admittedly authentic Samsung document appears to have been produced about the time of the event it records, a business meeting in September 2000.  By its terms, it appears that the author contemporaneously prepares records of meetings of this kind and, therefore, bears the earmarks of a business record under FRE 803(6).  See SDCRT-0087313E.  Of possible interest, the document describes a "discussion prior to this meeting" in which "Irico expressed its intention to also join in the activities with all others."  SDCRT-0087312.02E.  The

document fails to reflect the participation of Irico in the meeting described and requires further foundation for its admission.

57.  <u>Chunghwa Meeting Note dated October 13, 2000; CHU00031070–74</u>

This admittedly authentic copy of a Chungwha business record initiated by CPTF's Jing-Song (Jason) Lu CDT market exchange meeting at Fuzhou on October 12, 2000 reflects a CDT market exchange attended by CPTF, Irico, Samsung, LG, Philips and Orion and, therefore qualifies for admission under FRE 801(d)(2)(E).  Irico's specific objections to the statements of SDI and LG at CHU00031070.01E and CHU0031071.01E should be overruled and the statements admitted and to the extent that Orion's statement at CHU0031071.01E is not admitted under FRE 801(d)(2)(E), it should be admitted as an admission or statement against interest.

58.  <u>Hitachi Email Meeting Report dated November 10, 2000; HDP-CRT00042019–23</u>

This admittedly authentic Hitachi document appears to reflect a memorandum of a plant tour by Hitachi personnel of an Irico CRT facility and does not constitute a conspirator statement.  The undersigned does not recommend the admission of this document.

59.  <u>Chunghwa Meeting Note dated November 10, 2000; CHU00031088–91</u>

This admittedly authentic copy of a Chungwha business record initiated by CPTF's Jing-Song (Jason) Lu that reflects a CPTF sales department visitation report on November 9, 2000 attended by CPTF, Irico, Samsung, LG, Orion, Philips and BMCC.  The document itself qualifies for admission under FRE 801(d)(2)(E) and for that reason Irico's specific objections to statements of Samsung and Philips at CHU00031088.01E and CHU31088.02E should be overruled and the document admitted in its entirety and without redaction.

60.  <u>Chunghwa Meeting Note dated December 11, 2000; CHU00031092–93</u>

This admittedly authentic copy of a Chungwha business record initialed by CPTF's Jing-Song (Jason) Lu reflects a meeting at Xi'an on December 7, 2000 attended by CPTF, Philips, Irico, Samsung and LG.  The document itself qualifies for admission under FRE 801(d)(2)(E) and for that reason Irico's specific objections to statements of Philips at CHU31092.01E and

CHU00031092.02E should be overruled and the document admitted in its entirety and without redaction.

61.    <u>No document.</u>

62.    <u>Chunghwa Meeting Note faxed February 20, 2001; CHU00031101–04</u>

This admittedly authentic copy of a Chungwha business record signed by CPTF's Wen-Chun (Tony) Cheng reflects communications between Chungwha and Irico concerning CRT prices and production.  Irico offers no specific objection and the document should be in its entirety and without redaction.

63.    <u>Chunghwa Meeting Note dated March 2, 2001; CHU00031107–09</u>

This admittedly authentic copy of a Chungwha business record submitted by CPTF's Shih-Ming (Maxim) Chen reflects a meeting on February 22, 2001 with representatives of Samsung, LG, Philips. BMCC, Irico and CPTF concerning data on production, sales and inventory of CDTs and therefore admissible under FRE 801(d)(2)(E).  Irico specifically objects to statements of Samsung and LG at CHU00031107.02E and CHU00031108.01E which should be overruled and the document admitted in its entirety and without redaction.

64.    <u>Chunghwa Meeting Note dated March 21, 2001; CHU00031113–14</u>

This admittedly authentic copy of a Chungwha business record of a market information exchange involving Samsung, LG, Orion and Philips, but fails to reflect the participation of Irico. For that reason, the undersigned recommends that the document not be admitted.

65.    <u>Samsung SDI Meeting Note dated April 24, 2001; SDCRT-0087340–42</u>

This admittedly authentic Samsung document pertaining to a meeting in Shenzhen City of representatives of BMCC, Samsung, LG, Gwangdong CPT, Irico, Philips, Shanghai Yungshin and Thomson.  Irico specifically objects to the statements of Shanghai Yungshin and Gwangdong CPT at SDCRT 0087341E.  The PPs having not established the connection of these entities to the conspiracy the PPs allege, these statements should be redacted, but the document otherwise admitted.

66.   No document.

67.   No document.

68.   Chunghwa Meeting Note dated August 24, 2001; CHU00036410–11

This admittedly authentic copy of a Chungwha business record of a market information exchange involving Samsung, LG, Orion and Thai-CRT, but fails to reflect the participation of Irico.  For that reason, the undersigned recommends that the document not be admitted.

69.   No document

70.   Chunghwa Meeting Note dated December 26, 2001; CHU00036390–91

This admittedly authentic copy of a Chungwha business record of a market information exchange and price and production report dated December 21, 2001 involving Samsung, LG and Orion, but fails to reflect the participation of Irico.  For that reason, the undersigned recommends that the document not be admitted.

71.   No document.

72.   No document.

73A.  Chunghwa Meeting Note dated February 18, 2003; CHU00124993–94

This admittedly authentic copy of a Chungwha business record submitted by Shih-Ming (Maxim) Chen on February 18, 2003 concerns a meeting with Irico on February 14.  Irico advances no specific objection and the undersigned recommends that the document be admitted in its entirety and without redaction.

73B.  Chunghwa Meeting Note dated February 18, 2003; CHU00030085–86

This admittedly authentic copy of a Chungwha business record submitted by Shih-Ming (Maxim) Chen on February 18, 2003 concerns a meeting with Irico on February 14.  Irico advances no specific objection and the undersigned recommends that the document be admitted in its entirety and without redaction.

74.   No document.

75.   Eight Major Color Tube Industry Association Fax dated May 9, 2003; BMCC-
      CRT000142063

This document is a one-page fax dated May 9, 2003 from Yang Guojun, "Secretary-General of the Eight Major Color Tube Industry Association" and formerly of Irico sales.  The recipients are listed as BMCC, Shaanxi IRICO (Jianshe Wei and Xiaolin Shen), Nanjing Huafei, Shanghai Yongxin (aka Novel), SEG-Hitachi, Guangdong Fortune, Changsha LG, and Samsung SDI Samsung with a copy to all general managers.  While the document bears the earmarks of a business record under FRE 803(6), the document fails to reflect the participation of Irico.  Its admission, therefore, requires further foundation.

76.   No document.

77.   Chunghwa Meeting Note dated August 25, 2003; CHU00125190–91

This admittedly authentic copy of a Chungwha business record submitted by CPTF's Shih-Ming (Maxim) Chen on August 25, 2003 concerns a meeting with Irico's Rong-Guo Gao and Yuan Liang at which CRT production was discussed and is admissible under FRE 801(d)(2)(E).  The undersigned recommends that the document be admitted in its entirety and without redaction.

78.   No document.

79.   No document.

80.   MTPD Meeting Note dated April 23, 2004; MTPD-0576449–52

This Matsushita document records a meeting of CRT producers on April 23, 2004, but does not indicate the involvement of Irico.  Although the document bears the earmarks of a business record under FRE 803(6), the undersigned recommends that the document not be admitted in the absence of addition foundation tying the document to the issues in this proceeding.

81.    No document.

82.    No document.

83.    Meeting Note dated November 25, 2004; BMCC-CRT000540532–36

This admittedly authentic copy of notes of a meeting in Shenshen of CRT producers, including Shanxi Irico.  Irico objects that the PPs have not established the author and provenance of the document.  The document is labeled Eight Major Color Tube Industry Association and dated November 24, 2005 and appears to record a meeting of CRT producers on the date indicated and reflects Irico's attendance and participation.  The document appears to constitute a business record of the events recorded.  FRE 803(6).  The document reflects collaboration of CRT producers and appears relevant to the issues herein.  Upon a showing of a connection between Irico and the Eight Major Color Tube Industry Association the document should be admitted under FRE 801(d)(2)(E).  Irico makes specific objection to statements of admitted conspirators Samsung and LPD which should be overruled under FRE 801(d)(2)(E) and to a statement attributed to Hitachi's Secretary General Yang Guojun at BMCC-CRT000540533E which should be admitted as an admission or statement against interest.

84.    Chunghwa Meeting Note dated December 4, 2004; CHU00030008–09

This admittedly authentic copy of a Chungwha business record signed by Chungwha's Shih-Ming (Maxim) Chen reflecting notes of a December 1, 2004 meeting in Shenzhen between Chungwha representatives and Irico's export manager Yuan Liang.  The document is admissible under FRE 801(d)(2)(E).  Irico specifically objects to the references to MTPD's Matsushita Beijing and Shanghai Evernew on CHU0003008.02E, but as these appear to be statements of Irico's representative at the meeting, there is no basis for their redaction or exclusion.  The document should be admitted in its entirety and without redaction.

85.    No document.

86.    No document.

87.    No document.

88.   Chunghwa Meeting Note dated April 25, 2005; CHU00029985–86

This admittedly authentic copy of a Chungwha business record signed by Chungwha's Shih-Ming (Maxim) Chen of a contact report on April 20, 2005 with Irico's [Yuan] Liang.  The document is admissible under FRE 801(d)(2)(E).  Irico specifically objects to references to Huafei and SEG-Hitachi on CHU00029985.02E.  These are included in a non-hearsay document, but even if considered to be hearsay, these statements are admissible for state of mind of the declarant.  The document should be admitted in its entirety and without redaction.

89.   No document.

90.   No document.

91.   Meeting Note dated September 16, 2005; SDCRT-0091569–72

This admittedly authentic Samsung document contemporaneously records a meeting attended by Irico's Xing Daoqian, Wang Wencheng and Shen Xiaoling representatives of numerous CRT producers on September 16, 2005 concerning the "industry situation," "2006 market prospects" and "agreements reached at this meeting" and is admissible under FRE 801(d)(2)(E) and as a business record under FRE 803(6).  Irico's specific objections to statements attributed to BMCC, Fan Wenqiang on SDCRT-0091569E and Thomson on SDCRT-0091571E should be overruled as these are admissible under FRE 801(d)(2)(E) or, to the extent, deemed hearsay, are admissible as admissions or statements against interest.  The document should be admitted in its entirety and without redaction.

92.   No document.

93.   Samsung SDI Meeting Note dated November 16, 2005; SDCRT-0091537–45

This admittedly authentic Samsung document reflects meetings in November 2005 by Samsung personnel with representatives of other CRT producers.  SDCRT-0091539E-540E records a meeting on November 16, 2005 and discussion by Samsung's Sung Duk Park K, Woon Sa K and Mee S Kim with Irico's Guo Wei and is, therefore, admissible under FRE 801(d)(2)(E), as well as a contemporaneous business record under FRE 803(6).  Irico raises no specific objection to any part of the document relating to the discussions with Irico.  Irico is not

shown as having attended any of the other meetings recorded in this document and on that basis SDCRT-0091537E-538E, 541E-545E should not be admitted.

94.    <u>Meeting Note dated November 18, 2005; SDCRT-0091584–88</u>

This admittedly authentic Samsung document reflects meetings on November 18, 2005 attended by CRT producers.  Irico is not shown as having attended and for that reason, this document should not be admitted although the document appears to be a contemporaneous record of the events recorded and maintained in the regular course of business.  With further foundation tying Irico to the November 18 meetings, the document should be admitted.

95.    <u>No document.</u>

96.    <u>No document.</u>

97.    <u>No document.</u>

98.    <u>No document.</u>

99.    <u>Chunghwa Meeting Note dated July 24, 2006; CHU00725770–72</u>

This admittedly authentic copy of a Chungwha business record reflects a meeting of "7 major color tube makers" on July 20-21, 2006.  The document was prepared by Chungwha's Chaw-Ping (Veronica) Yong.  Irico raises specific objections to statements attributed to LPD on CHU00725771.02E and CHU00725772.01E.  These statements are admissible under FRE 8201(d)(2)(E).  The document should be admitted in its entirety and without redaction.

100.    <u>No document.</u>

101.    <u>No document.</u>

102A.    <u>Chunghwa Email dated June 27, 2007; CHU00734728</u>

This admittedly authentic Chungwha document reflects email invitations to various CRT producers dated June 28, 2007.  This appears on its face to be a document generated in the regular course of business under FRE 803(6).  The record does not, however, reflect that the invitation was directed to Irico.  Hence, the document should not be admitted without additional foundation tying Irico the meeting for which this document served as an invitation.

102B.    <u>Meeting Note dated July 5, 2007; BMCC-CRT000105586–90</u>

This admittedly authentic BMCC document reflects a July 5, 2007 industry meeting attended by Irico's Wang Ximin, prepared contemporaneously with the event recorded in apparent compliance with regular business practices.  FRE 803(6).  The document reflects statements related to the conspiracy alleged herein and should be admitted under FRE 801(d)(2)(E).  Irico makes specific objection to comments attributed to Yang Guojun and general manager Chen Xi at BMCC-CRT000105586E and Samsung's Cheng Shengguo at BMC-CRT000105587E.  These objections should be overruled.

102C.  Email string from July 6, 2007, SDCRT-0105131E-134E

This admittedly accurate copy of an SDI document appears to be an email string typical of business exchanges and potentially therefore a business record under 803(6).  But the document lacks specific reference to Irico and without more foundation should not be admitted.

103.    No document.

CONCLUSION

Of the eighty-one documents that the PPs propose for admission, the undersigned recommends that fifty-one be admitted with no or limited redactions.  Fourteen of the eighty-one documents may be admitted if the PPs proffer additional evidence to link the contents to Irico's conduct.  The undersigned recommends that the court afford the PPs leave to make that additional proffer.

**(DATE AND SIGNATURE ON NEXT PAGE)**

IT IS SO ORDERED.

Date:      September 19, 2022

_____

Vaughn R Walker
United States District Judge (Ret)

The Recommended Order of the Special Master is Accepted and Ordered / Denied / Modified

Date: _____

_____

United States District Judge

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**LETTER OF R ALEXANDER SAVERI & LAUREN C CAPURRO**

**September 7, 2022**

**SAVERI & SAVERI, INC.**
706 SANSOME STREET
SAN FRANCISCO, CALIFORNIA 94111
TELEPHONE: (415) 217-6810
TELECOPIER: (415) 217-6813

*Trump Alioto Trump & Prescott*
ATTORNEYS LLP
2280 Union Street
San Francisco, California 94123
(415) 563-7200
FAX (415) 346-0679

September 7, 2022

*VIA EMAIL*

The Honorable Vaughn R. Walker
Law Office of Vaughn R. Walker
Four Embarcadero Center, Suite 2200
San Francisco, CA 94111
vrw@judgewalker.com

> Re:   *In re Cathode Ray Tube (CRT) Antitrust Litigation* – MDL No. 1917,
> Master File No. 07-CV-5944-JST

Dear Judge Walker:

In response to Your Honor's September 1, 2022 request for a glossary or key to the abbreviations used in documents under review in connection with the proceedings in the above-captioned action regarding the admissibility of defendants' documents regarding Irico competitor contacts, Direct Purchaser Plaintiffs ("DPPs") and Indirect Purchaser Plaintiffs ("IPPs") (together, "Plaintiffs") submit the enclosed chart. Should the Irico Defendants dispute any of the abbreviations or entity names, Plaintiffs are prepared to submit it to Your Honor for resolution.

In addition, Plaintiffs agree that Your Honor can assume that the name of Guang-Hui Dai of CPTF is sometimes spelled Guang-Hui Tai. They are translations of the same three Chinese characters.

Very truly yours,

*s/ R. Alexander Saveri*

R. Alexander Saveri
Lead Counsel for Direct Purchaser Plaintiffs

*s/ Lauren C. Capurro*

Lauren C. Capurro
Lead Counsel for Indirect Purchaser Plaintiffs

The Honorable Vaughn R. Walker
9/7/2022
Page 2


Cc:    Jay Weil (jay.weil@fedarb.com)
       John M. Taladay (john.taladay@bakerbotts.com)
       Evan J. Werbel (evan.werbel@bakerbotts.com)
       Thomas E. Carter (tom.carter@bakerbotts.com)
       Andrew L. Lucarelli (drew.lucarelli@bakerbotts.com)
       Daniel E. Birkhaeuser (dbirkhaeuser@bramsonplutzik.com)
       Alan Plutzik (aplutzik@bramsonplutzik.com)

The Honorable Vaughn R. Walker
9/7/2022
Page 3

| Abbreviation | Full Name of Entity |
|---|---|
| BMCC | Beijing-Matsushita Color CRT Company, Ltd. |
| CCIA | China Computer Industry Association |
| CPT | Chunghwa Pictures Tubes, Ltd. (Note: "CPT" may also refer to a color picture tube, a type of CRT) |
| CPT Malaysia or CPTM | Chunghwa Pictures Tubes (Malaysia) Sdn Bhd. |
| CPTF | Chunghwa Picture Tube (Fuzhou) Optronics Co., Ltd. |
| DOSA | Daewoo Orion S.A. (France) |
| EECA | European Display Industry Association |
| EECA-EDIA | European Display Industry Association |
| EECA-EDIA | European Component Manufacturers Association |
| EECA-EPIA | European Passive Components Industry Association |
| EECA-ESIA | European Semiconductor Industry Association |
| HAS | Hitachi Asia Ltd. |
| HEDUS | Hitachi Electronic Devices (USA), Inc. |
| HF | Huafei |
| HTC | Hitachi |
| HIT | Hitachi |
| Kitamatsu | Beijing-Matsushita Color CRT Company, Ltd. |
| LGD | LG Philips Display |
| LGE or LG | LG Electronics |
| LPD | LG.Philips Displays |
| LG-PH or LG/PHS | LG.Philips Displays |
| MEC | Matsushita Electric Corporation |
| MEI | Matsushita Electric Industrial Company, Ltd. |
| M-MEC | Matsushita Electronics Corporation (Malaysia) SDN BHD |
| MTPD | Matsushita Toshiba Picture Display Company, Ltd. |
| MTPDA | Matsushita Toshiba Picture Display America, Ltd. |
| MTPDM | Matsushita Toshiba Picture Display Co. Malaysia Sdn. Bhd. |
| MTPDT | Matsushita Toshiba Picture Display Co. Thailand |
| OEC or ORN | Orion Electric Company |
| OSTAF | Orion, SREC, TCE, AIWA, Funai |
| PH | Philips |
| PH(B) or (BR) | Philips Brazil |
| PHS | Philips Shenzhen |
| SDD | Samsung Display Device Company (former name of SDI) |
| SDD (m) | Samsung Malaysia |
| SDDM | Samsung Display Devices Malaysia |

The Honorable Vaughn R. Walker
9/7/2022
Page 4

| | |
|---|---|
| SSDD | Shenzhen Samsung Display Devices |
| SDI | Samsung SDI Co. Ltd. |
| SDIA | Samsung SDI America Co., Ltd. |
| SDIM | Samsung SDI (Malaysia) Sdn. Bhd. |
| SSDI | Shenzhen Samsung SDI Co., Ltd |
| SEC | Samsung Electronics Corp. |
| SEDM | Samsung Electronic Devices Malaysia |
| SEG or SEG-H | Shenzhen SEG Hitachi Color Display Devices, Ltd. |
| SREC | Sharp-Roxy Electronics |
| TCE | Thomson Consumer Electronics |
| TCL | TCL Corp. |
| TACP | Toshiba America Consumer Products, LLC |
| TAEC | Toshiba America Electronics Components, Inc. |
| TAIP | Toshiba America Information Systems, Inc. |
| TDDA | Toshiba Display Device America |
| TDD | Toshiba Display Devices |
| TDD(I) or TDDJ | Toshiba Display Devices Indonesia |
| TDDT | Toshiba Display Device (Thailand) Company, Ltd. |
| TEDI | P.T. Tosummit Electronic Devices Indonesia (Toshiba JV with Orion Electric) |
| TSB | Toshiba Corp. |
| TSED | Tianjin Samsung Electronics Display |
| TSDD | Tianjin Samsung Display Devices |
| TSDI | Tianjin Samsung SDI Co. Ltd. |
| TTE | TCL Thomson Electronics |
| WET | World Electronics Thailand |