MARIO N. ALIOTO (SBN 56433)
LAUREN C. CAPURRO (SBN 241151)
TRUMP, ALIOTO, TRUMP & PRESCOTT, LLP
2001 Union Street, Suite 482
San Francisco, CA 94123
Telephone: (415) 563-7200
Facsimile: (415) 346-0679
Email: malioto@tatp.com;
laurenrussell@tatp.com

*Lead Counsel for the Indirect Purchaser Plaintiffs*
*[Additional Counsel Listed on Signature Page]*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# OAKLAND DIVISION

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Master File No. 07-CV-5944-JST |
| | MDL No. 1917 |
| This Document Relates to: | **JOINT BRIEF RE: LEGAL CONSEQUENCES OF IRICO'S FAILURE TO PRODUCE SU XIAOHUA FOR A DEPOSITION** |
| *ALL DIRECT PURCHASER ACTIONS* | |
| *ALL INDIRECT PURCHASER ACTIONS* | Judge:    Honorable Jon S. Tigar |

As directed by the Court in its order denying Defendants Irico Group Corporation ("Irico Group") and Irico Display Devices Co., Ltd.'s ("Irico Display") (together, "Irico") Emergency Motion for Relief from Scheduling Order ("Emergency Motion"), *see* ECF No. 6047 (minute entry); Aug. 11, 2022 Mot. Hr'g Tr. 12:10-14:7 ("Order"), Direct Purchaser Plaintiffs ("DPPs"), Indirect Purchaser Plaintiffs ("IPPs"), and Irico, by and through the undersigned counsel, hereby submit the following joint submission.

## PLAINTIFFS' STATEMENT

The Court's August 11, 2022 Order instructed that if Irico failed to produce any of its witnesses for deposition, the parties should submit a joint brief addressing the legal consequences of that failure. Irico did not produce Su Xiaohua for deposition. Irico should suffer serious consequences for failing to produce Mr. Su for his Court-ordered deposition. Mr. Su was a 40-year employee whom Irico's interrogatory answers identified as one of *only two* current employees knowledgeable about its participation in the conspiracy and its key defenses. The Court should preclude Irico from pursuing, either on summary judgment or at trial, any affirmative defenses as to which it asserted in its sworn interrogatory answers that Mr. Su is a person with knowledge. Such legal consequences are appropriate for three reasons:

*First,* in failing to produce Mr. Su, Irico violated Court orders requiring it to make him available to be deposed by a date certain.[1] *Second,* Irico acted in bad faith. At the time Irico sought and obtained extensions of time to produce Mr. Su for deposition, it *knew*, but *did not disclose*, that he intended to resign his position at Irico and would not appear for a deposition because he viewed any participation in this case to be dishonorable. Thus, Irico misled both Plaintiffs and the Court.

*Third,* Plaintiffs have been seriously prejudiced both by Mr. Su's non-appearance and by Irico's failure to disclose that Mr. Su did not intend to appear for deposition. Had Irico disclosed Mr. Su's intention to resign, Plaintiffs would have opposed any extension of the deadline for him to appear, the calendar would not have changed, and IPPs would not have lost their trial date.[2] Mr.

---

[1] *See* Plfs' Opp. to Irico's Emergency Mtn for Relief from Scheduling Order, ECF No. 6032 at 7 ("Emergency Mtn Opp.").

[2] *See* ECF No. 6032 at 5-6.

Su's non-appearance has also severely impacted Plaintiffs' ability to gather information to prepare for summary judgment and trial, because (1) Mr. Su's work history and Irico's discovery responses indicate that he has information relevant to the claims and defenses in this case; and (2) Mr. Wang and Mr. Yan, the two witnesses Irico *did* produce for deposition, disclaimed either knowledge or recollection of key facts and events of critical importance to this case.

**Factual Background**

Plaintiffs incorporate by reference herein the recitation of many of the facts underlying this dispute set forth in their opposition to Irico's Emergency Motion, ECF No. 6032 ("Plfs' Opp."), at 2-7, and the supporting Declaration of Lauren Capurro (the "Capurro Decl.") (ECF No. 6032-1).

<u>Su Xiaohua Is An Important Witness:</u> As discussed in Plfs' Opp., Irico identified Mr. Su in its interrogatory answers as one of *only two* current employees with knowledge of the core issue in this case—whether Irico participated in the conspiracy.[3] Plaintiffs have also uncovered evidence of Su's participation in at least one meeting with Irico's co-conspirator Chunghwa, at which CRT pricing and future production levels were discussed.[4] The report of that meeting concludes: "Hope that with both sides' sufficient communication and no malicious competition, can hold the market price and create a win-win opportunity." *Id*. at CHU00040992E. Irico also identified Su as one of only two witnesses who are knowledgeable about most of its key affirmative defenses.[5]

Mr. Su worked in Irico's CRT Plant alongside many of Irico's regular attendees of competitor meetings and rose to become the "Vice General Manager, Planning, Irico Sales Company and Irico Sales Department" from 2005-2007.[6] He likely knew about Irico's coordinated

---

[3] *See* Capurro Decl. (ECF No. 6032-1) at 4-5 & Ex. J (Irico interrogatory response identifying Su as knowledgeable about Irico's meetings and communications with other producers of CRTs).

[4] *See* ECF No. 5228-2, Ex. 26; *see also* Ex. 1 to the Decl. of Alan R. Plutzik ISO Legal Consequences for Su's Failure to Appear (Dep. Ex. 1278, CHU00040992–93) (the "Plutzik Decl."). This entire document is admissible against Irico under the co-conspirator exception to the hearsay rule. *See* Special Master's R&R re Admissibility of Coconspirator Documents and Statements, ECF No. 6074 at 30 ("Special Master's R&R"). The Court adopted the Special Master's R&R in full. ECF No. 6093.

[5] *See* ECF No. 6032 at 2-3 (identifying defenses and relevant discovery responses).

[6] Capurro Decl., Ex. B at 18, & Ex. I (Su Xiaohua Employee Information Registration Form).

production cuts with competitors, which were among the cartel's primary methods of implementing the CRT conspiracy. Thus, he is an important witness to essential facts at issue.

Mr. Su Resigns And Irico Files Its Emergency Motion: On June 7, 2022, following *ten months* of negotiations regarding Mr. Su's deposition—including three extensions of time to produce him and three missed Court-ordered deadlines—Irico announced that Mr. Su had resigned from all Irico-related companies on May 25, 2022, due to the "COVID quarantine restrictions that he would face upon his return to China."[7] When Plaintiffs refused to agree to a *further* extension of the deadline to produce Irico's other witnesses (Wang Zhaojie and Yan Yunlong), Irico filed its Emergency Motion on June 30, 2022. ECF No. 6027. The Declaration of Zhang Wenkai filed in support of the Emergency Motion asserted that Mr. Su had resigned "because he refused to travel to Macau for a deposition given the severe quarantine requirements that he would face upon his return to mainland China … and his ongoing care of his elderly mother." ECF No. 6027-3.

On August 11, 2022, this Court denied the Emergency Motion and ordered Irico to produce its witnesses for deposition by September 9, 2022. ECF No. 6047. If Irico failed to produce any of its witnesses by the deadline, the Court ordered the parties to file a joint brief addressing the "legal consequences" of that failure. *Id.* The Court subsequently extended the deadlines for Mr. Wang's deposition until September 19, 2022, and for Mr. Yan's deposition to September 26, 2022. ECF No. 6056. The Wang and Yan depositions have now been taken.[8]

Irico's Supplemental Discovery Responses: On September 1, 2022, Irico supplemented its prior interrogatory answers to remove all references to Mr. Su as knowledgeable about Plaintiffs' claims and Irico's defenses.[9] Wherever an interrogatory answer had stated that Mr. Wang and Mr.

---

[7] Capurro Decl. Ex. G (Email dated June 7, 2022 from Evan Werbel to Plaintiffs' counsel).

[8] Plaintiffs are seeking an order from the Special Master requiring Irico to disclose communications with its prior counsel regarding evidence preservation. Plaintiffs have reserved the right to further question Mr. Yan further if they are given access to those materials, which they expect to be important for their forthcoming spoliation motion regarding Irico's failure to preserve evidence.

[9] *See* Plutzik Decl., Ex. 2 (Supp. Resps. to IPPs' Rog. No. 7 as to Affirmative Defenses 3, 8, 11, 12, 14 & 17; and IPPs' Rog No. 8 as to RFA No. 16); *id.*, Ex. 3 (Supp. Resps. to DPP Arch's Rog No. 1 as to RFA Nos. 1 and 3-7 and to DPP Arch's Rogs. Nos. 17-22).

1   Su were knowledgeable about a particular claim or defense, Irico changed its answer to identify
2   either Mr. Wang and Mr. Yan, or Mr. Wang alone, as the individuals with such knowledge. *Id*.
3       Deposition of Yan Yunlong: Plaintiffs took Mr. Yan's deposition from September 27-29,
4   2022. Because he was Irico's General Counsel, rather than a senior line manager or a sales and
5   marketing official like Mr. Su, Mr. Yan had no contemporaneous knowledge of Irico personnel's
6   meetings with its competitors, or the routine exchanges of confidential, internal information about
7   manufacturing capacity, production, inventories, or pricing that occurred in connection with those
8   meetings.[10] In sum, Mr. Yan's testimony revealed that even though Irico had belatedly designated
9   him as a person with broad knowledge of the relevant facts, his knowledge of those facts was
10  severely limited.
11      Furthermore, Mr. Yan testified—as Plaintiffs had suspected[11]—that Irico **knew**, long before
12  the May 20, 2022 Stipulation extending the deadline for Mr. Su to be deposed was filed (ECF No.
13  6015) that Mr. Su planned to resign and would not appear for deposition. Mr. Yan testified that Mr.
14  Su informed him in ***April 2022*** that he was unwilling to be deposed because it would not be
15  "honorable" to testify in a lawsuit, and that he intended to resign from Irico.[12] When prompted the
16  next day by his own counsel's improper, leading questions, Mr. Yan agreed, without foundation,
17  that Mr. Su was also "concerned" about COVID-19 and the related travel restrictions.[13] Yet his
18  testimony on cross-examination did not cast doubt on his testimony that Irico knew in April 2022
19  that Mr. Su intended to resign and would not submit to a deposition. Mr. Yan's testimony
20  establishes that Irico misled Plaintiffs and the Court by obtaining extensions of the deposition
21  deadline without disclosing that it knew Mr. Su intended imminently to resign and was not willing
22  to sit for a deposition. In its Statement, Irico claims it did not know Mr. Su had actually departed
23  from the company until May 31. Even if that questionable assertion were credited, Mr. Yan's

---

[10] *See* Plutzik Decl., Ex. 4 (Yan Dep. Tr. Vol. II, at 203:8-204:10, 206:2-208:20).

[11] *See* Plfs' Opp. at 6, 14.

[12] *See* Plutzik Decl., Ex. 4 (Yan Dep. Tr., Vol. II, at 230:15–231:2) ("At some point ***in April***, he informed us that he was going to leave Irico, and he told us that he was not able to make time to be deposed in this case as a witness….") (Emphasis added.)

[13] *See id*. (Yan Dep. Tr., Vol. III, at 323:18–324:11).

1   testimony that Irico knew he *planned* to resign and would refuse to testify would still be
2   unrebutted.
3          Deposition of Wang Zhaojie: Plaintiffs took the deposition of Wang Zhaojie for the second
4   time from September 20-22, 2022. The Special Master described Mr. Wang as "an obviously less
5   than forthright witness" in his deposition as Irico's Rule 30(b)(6) witness in 2019, and
6   characterized his prior testimony as "slippery."[14] Similar to his previous testimony, Mr. Wang
7   testified well over 300 times that he either did not remember, did not know, or could not answer
8   because he was "unclear" or "unsure" about the subject of a question.[15] He was unable or unwilling
9   to authenticate virtually any of the internal Irico documents about which he was questioned.[16] He
10  shed little, if any, light on such important matters as the membership, purpose, meetings,
11  information exchanges, agreements, or deliberations of the "CRT Industry Association," a key
12  instrumentality through which the co-conspirators advanced the goals of the conspiracy;[17] whether
13  Irico suspended production to prop up prices in early 2007 pursuant to an agreement with its
14  competitors;[18] whether Irico CRTs were included as components in television sets sold in the
15  United States, or whether Irico knew its customers were making televisions for sale in the U.S.;[19]
16  or business trips to the U.S. by Irico employees.[20] Mr. Su's memory, had he testified, may or may
17  not have been better than Mr. Wang's. But Plaintiffs were deprived of the opportunity to find out.
18  And there were apparently no other witnesses with any relevant knowledge *other than* Mr. Su.

19                                          **Argument**

20          Fed.R.Civ.P. 37(b)(2) and (d)(1)(A) set forth the legal consequences permitted when a party
21  disobeys a discovery order or fails to attend a deposition, including "prohibiting the disobedient

---

[14] Special Master's R&R, ECF No. 6074 at 19.
[15] Plutzik Decl. ¶ 7.
[16] *See, e.g., id*. Ex. 5 (Wang 2022 Dep. Tr., Vol. I, 82:23-83:1, 89:7-10, 109:10-110:23, 148:9-149:3).
[17] *See, e.g., id*. Ex. 5 (Wang 2022 Dep. Tr., Vol. I, at 67:13-76:12, 79:16-21 and 84:2-85:11; *id.*, Vol. II, at 9:6-10:15 and 15:19-16:16).
[18] *Id.,* Vol. II, at 14:3-16:21.
[19] *Id.,* Vol. II, at 208:2-214:18 and 209:24-217:23; Day 3, 391:15-393:21.
[20] *Id.,* Vol. III, at 377:1-385:20, 386:10-389:25 and 390:1-391:13.

party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence." Fed.R.Civ.P. 37(b)(2)(A)(ii).  In determining what remedies are appropriate under Rule 37, courts consider (1) whether the non-complying party acted in bad faith, (2) the prejudice suffered by the opposing party, (3) the need for deterrence, and (4) whether less drastic sanctions would have been effective.  *Belk v. Charlotte-Mecklenburg Bd. of Educ.*, 269 F.3d 305, 348 (4th Cir. 2001) (*en banc*).  Under this standard, courts have awarded evidentiary sanctions to address egregious conduct of the sort present here.

Thus, in *Boyles v. Gree USA, Inc.*, No. 1:20-CV-276, 2021 U.S. Dist. LEXIS 143632, 2021 WL 3292727 (M.D.N.C. Aug. 2, 2021), Chinese defendants were ordered to produce witnesses for remote depositions in Hong Kong but failed to do so due to the witnesses' concerns about COVID-19 quarantine restrictions.  *Id*. at *1-3.  The Court held that the defendants had deliberately disregarded their duty to produce witnesses.  Because plaintiffs had been prejudiced by being unable to question a knowledgeable witness about key issues relating to the claims and defenses in the case, the court precluded defendants from calling any corporate fact witnesses at trial (2021 U.S. Dist. LEXIS 143632, *18), and later struck their affirmative defenses and prohibited them from introducing any evidence at trial beyond the cross-examination of the plaintiffs' witnesses. 2021 U.S. Dist. LEXIS 151632, 2021 WL 3570413 (M.D.N.C. Aug. 12, 2021).

When defendants in *SEC v. Zhuobin Hong*, No. CV 20-04080-MCS (RAOx), 2021 U.S. Dist. LEXIS 202468, at *23 (C.D. Cal. Sept. 17, 2021), failed to appear for their depositions, citing fear of COVID-19, the Court (1) barred Defendants from using their testimony, statements or interrogatory responses at trial; (2) denied Defendants' summary judgment motion because it relied on Defendants' declarations; and (3) held it would instruct the jury that Defendants had violated an order to appear for depositions and that the jury could infer that, had they testified, such testimony would have been harmful to them.

Finally, *Beijing Choice Elec. Tech. Co. v. Contec Med. Sys. USA Inc.*, No. 18-cv-0825, 2021 U.S. Dist. LEXIS 260412 (N.D. Ill. 2021), presented facts strikingly similar to those here. There, the deposition of an important witness, Mr. Li, was twice delayed, and the discovery cutoff was twice extended, due to COVID-19.  Eventually, after the deposition had been rescheduled in

Macau, Defendants disclosed that Mr. Li had resigned and that defendants no longer controlled him.  It was then revealed that Mr. Li had told his employer that he would resign if he were required to travel abroad to give deposition testimony – but Defendants had not disclosed that fact to Plaintiffs or the Court.  The Magistrate Judge recommended that the Court grant the Plaintiffs' motion for sanctions; bar Defendants from calling Mr. Li as a witness; prohibit them from using any documents or communications authored by him in any motion, hearing or trial; and require them to pay Plaintiff's attorneys' fees and costs related to the sanctions motion. *Id*. at *9-*10.

Here, all four elements under *Belk*, *supra*, are satisfied. *First*, Irico violated multiple orders requiring its managerial employee, Mr. Su, to appear and submit to a deposition, and acted in bad faith in doing so.[21] Irico misled both Plaintiffs and the Court by seeking extensions of the deadline for Mr. Su to be deposed without disclosing that he would resign rather than appear for a deposition.  Had Irico been truthful, no extension would have been granted, the Court would likely have required Mr. Su to appear, Plaintiffs might have been able to take his deposition and IPPs would not have lost their January 2023 trial date.[22]

*Second,* Plaintiffs have suffered serious prejudice.  Irico identified Mr. Su as one of two people knowledgeable about facts relevant to both Plaintiffs' conspiracy allegations and Irico's defenses.  Mr. Wang, also so identified, was inadequate because he either didn't know or couldn't remember the events at issue. Mr. Yan, whom Irico attempted to "substitute" for Mr. Su, was deficient because his duties at Irico didn't give him personal, contemporaneous knowledge of the relevant facts.

*Third*, there is a strong need for deterrence in this case.  Mr. Su's unavailability means that there is **no** Irico witness with knowledge of key issues that will be contested at trial.  Furthermore,

---

[21] All that is required to show bad faith is "disobedient conduct not shown to be outside the control" of the noncompliant party.  *Henry v. Gill Indus. Inc*., 983 F.2d 943, 948 (9th Cir. 1993).

[22] None of the cases Irico cites involved facts even remotely comparable to those present here. In *Sali v. Corona Reg. Med. Ctr.*, 884 F.3d 1218, 1224 (9th Cir. 2018)*,* the Court *affirmed* an award of sanctions against plaintiffs who had failed to produce their expert witness for a deposition.  Neither *Bella+Canvas, LLC v. Fountain Set Ltd*., No. 2:21-cv-00758-ODW-MAA2022 U.S. Dist. LEXIS 154931, *8, 2022 WL 3697358 (C.D. Cal. 2022), *Falstaff Brewing Corp. v. Miller Brewing Co*., 702 F.2d 770, 784 n.8 (9th Cir. 1983) nor *Multiven, Inc. v. Cisco Sys*., No. C08-05391 JW (HRL), 2010 U.S. Dist. LEXIS 69557, *3, 2010-1 Trade Cas. (CCH) P77,063, 2010 WL 2557335 involved a violation of an order requiring a party to produce an officer or manager for a deposition.

in violation of its duties under this Court's Document Preservation Order (ECF No. 8, ¶13) and federal law, Irico did not adopt a litigation hold when the case was filed. Consequently, most relevant documents were destroyed. Indeed, Irico has a long history of flouting the Court's authority in this litigation, commencing with its fanciful theory that the Court lacked jurisdiction over the claims against it, then filing, and later abandoning, its appeal from the Court's ruling rejecting that theory.

*Finally*, the legal consequences flowing from Irico's misconduct – prohibiting Irico from pursuing any affirmative defenses as to which it identified Mr. Su as a person with knowledge – are appropriate under the facts and the law. Lesser relief such as an adverse jury instruction, permitting Plaintiffs to conduct further discovery despite the close of discovery, barring witnesses from testifying at trial, a finding of contempt or a monetary sanction would not suffice.[23] Since Irico's misconduct prevented Plaintiffs from obtaining Mr. Su's testimony, it is only fair that Irico should be foreclosed from prosecuting defenses that his testimony could have disproven. Plaintiffs have been foreclosed from obtaining either adequate deposition testimony or documentary discovery from Irico. The Court should not permit Irico to benefit from withholding relevant information from Plaintiffs in this fashion.

## IRICO'S STATEMENT

The Court's Order with respect to this Joint Statement was unmistakably clear: If "fewer than all the witnesses identified in [the Emergency Motion briefing] testify," the parties were to file a joint statement "setting forth their competing positions on what the ***legal consequence*** is of that witness' … failure to appear." Aug. 11, 2022 Mot. Hr'g Tr. 12:10-14:7 ("Order"), at 14:2-7 (emphasis added). The Court was equally clear that this joint statement should ***not*** be a motion for

---

[23] Irico cites *PeerMusic, III, Ltd. v. LiveUniverse, Inc.*, No. CV 09-6160-GW (PLAx), 2011 U.S. Dist. LEXIS 16701, 2011 WL 672585, at *9 (C.D. Cal. Jan. 26, 2011), for the proposition that a court can preclude a party from prosecuting certain affirmative defenses only where the party's failure to comply with discovery orders directly inhibited the opposing party's ability to discover evidence concerning those defenses. The case does not stand for that proposition. See *id*. at *30-*31 (citing with approval cases in which a court foreclosed a party from asserting affirmative defenses even when the noncompliant party's discovery deficiencies "[did] not necessarily concern the subject defenses"). In any event, Plaintiffs have amply shown that Irico's failure to produce Mr. Su directly inhibited them from being able to discover evidence regarding the numerous defenses as to which Irico identified Mr. Su as knowledgeable in its interrogatory answers.

sanctions: "*I don't say 'sanction.'* I say 'legal consequence.' … If the parties think that further briefing is necessary because there's been some bad faith or discovery failure on Irico's part, ***they can ask the Court for leave to file*** that, but for now, that's ***not*** what I'm asking for." Order at 13:20-14:1 (emphasis added). Plaintiffs not only ignore, but defy the Court's direction. Plaintiffs fail to discuss legal consequences at all, blatantly argue for sanctions and cite only to sanctions cases. Irico will instead attempt to adhere to the Court's request and discuss legal consequences.[24]

Plaintiffs' argument rests on a recasting of events that misstates facts and attempts to ascribe bad faith where none exists. The sole issue raised by plaintiffs is that one potential witness, Mr. Su, did not appear for deposition because he resigned from the company in part because he did not want to face the severe quarantine conditions that would have applied at the time. While Irico knew that Mr. Su – just like the other witnesses who appeared – was unhappy about these conditions, it did not know in advance that Mr. Su planned to resign. This was because Mr. Su – just like the other witnesses who appeared – cooperated fully with the process required to obtain the travel visas, discussed dates for depositions, and otherwise demonstrated a willingness to be deposed but for the quarantine conditions. When Irico's in-house counsel learned of Mr. Su's resignation on May 31, 2022, Irico tried to convince Mr. Su to reverse his decision; Irico informed Plaintiffs promptly once it was clear that he would not do so. Plaintiffs work hard to twist hearsay deposition statements of Mr. Yan into a response that reflects bad faith – their only basis for such an assertion – but that effort does not withstand scrutiny, as we will show.

Irico could not have prevented Mr. Su from resigning and could not force Mr. Su to appear once he resigned. Like many witnesses for other defendants in this 15-year-old matter, Mr. Su falls into the unremarkable category of a former employee who is not available for deposition. Irico believes that the legal consequence of Mr. Su's failure to appear is clear: Mr. Su is not susceptible of being identified by Irico as a witness at trial under FRCP 26(a)(3)(A)(i). No other legal consequences appertain to this situation, nor – had the Court asked for the issue to be addressed – are sanctions appropriate.

---

[24] If the plaintiffs should seek leave to file a motion and further briefing, Irico requests the opportunity to respond with full briefing under Local Rule 7-3. Irico has not done so here.

9
JOINT BRIEF RE LEGAL CONSEQUENCES OF IRICO'S FAILURE TO PRODUCE MR. SU
Master File No. 07-CV-5944-JST

1. **Relevant Factual Background**

The extensive efforts made to schedule the depositions in this matter are detailed in the Factual Background included in Irico's Emergency Motion. *See* ECF No. 6027 at 5-8. Here, Irico focuses on the salient facts of Mr. Su's decision to resign from the company, making him unavailable for his deposition, and addresses some of the gross misstatements by Plaintiffs in their convoluted effort to suggest that Irico acted in bad faith.

<u>Irico has not made any misrepresentations regarding Mr. Su</u>. Plaintiffs suggest that Irico acted in bad faith, relying solely on hearsay deposition statements of Mr. Yan as support.[25] Critically, Mr. Yan testified clearly that he "did not speak with Mr. Su directly," but rather was repeating what he recalled hearing from Mr. Zhang Wenkai, Irico's Deputy General Counsel. Yan Dep. 229:2-5. Mr. Zhang, who spoke to Mr. Su numerous times to arrange for his deposition, has provided the Court with two declarations that confirm his direct conversations with Mr. Su. *See* ECF Nos. 6027-3; 6036-1.

<u>Irico did not know Mr. Su intended to resign before it happened</u>. Mr. Zhang provided a declaration confirming that he first learned of Mr. Su's resignation on May 31, 2022. ECF No. 6036-1 at ¶ 4. This was six days after the Court signed the stipulation further extending the deposition deadline. Ignoring this first-hand evidence, Plaintiffs instead rely on the hearsay testimony from Mr. Yan's deposition, even falsely suggesting that it derived from a direct conversation between Mr. Yan and Mr. Su, despite Mr. Yan's clear denial of any such direct communications:

> Q: And then at some time **after** April of this year, did he **inform Irico** that he was unwilling to give a deposition in the case?
>
> A: At some point in April, he **informed us** that he was going to leave Irico …

Yan Dep. 230:16-20 (emphasis added). Mr. Yan clearly was not the direct source for any of this information. He was conveying his recollection of what Mr. Zhang told him, which was not accurate.

---

[25] We note that Mr. Yan has not as yet reviewed his deposition transcript.

1	Plaintiffs' reliance on Mr. Su's reluctance to testify is irrelevant. The fact that Mr. Su, like
2	the other witnesses, complained about the "severe quarantine requirements that he would face upon
3	his return to mainland China" do not indicate that Irico knew he would resign. ECF No. 6025-3 at
4	¶ 6. These same factors applied equally to Mr. Yan and Mr. Wang, both of whom appeared for
5	their depositions.  Indeed, Mr. Su had agreed in April to be deposed despite his reluctance. Yan
6	Dep. 229:24-230:7 ("[A]ccording to our understanding, he was reluctant even though – but he still
7	agreed to testify."); ECF No. 6027-3 at ¶ 5 (Mr. Su continued to cooperate with Macau visa
8	application process through May).  Most egregiously, Plaintiffs take general speculation made by
9	Mr. Yan and try to twist it into bad faith.  Mr. Yan testified: "In the minds of most Chinese people,
10	it's actually not an honorable thing to be involved in lawsuits."  Yan Dep. 229:21-23.  Plaintiffs
11	contort this into "Mr. Yan testified that Mr. Su informed him in April 2022 that he was unwilling to
12	be deposed because it would not be 'honorable' to do so and that he intended to resign from Irico."
13	But Plaintiffs knew that Mr. Yan *never even talked* to Mr. Su and that Mr. Yan's statement had
14	nothing to do with a refusal to be deposed or an intent to resign.
15	Irico has not missed three Court-ordered deadlines and IPPs did not lose their trial date
16	because of Mr. Su.  Irico acted in good faith throughout this process to secure the depositions of
17	Messrs. Yan, Wang and Su, and counsel for Irico constantly met and conferred with Plaintiffs
18	during the deposition scheduling process to keep them apprised of developments.  As deposition
19	deadlines approached and the pandemic and quarantine obligations persisted, Irico discussed
20	necessary extensions well in advance of those deadlines with Plaintiffs.  Until May of this year,
21	Plaintiffs agreed to file joint stipulations for timing extensions and the Court accepted each of these
22	extensions.  Similarly, any suggestion that the IPP trial date would not have been extended but for
23	Mr. Su's availability is inaccurate.  IPPs' trial date was extended largely because IPPs' own expert
24	was not able to sit for a deposition in the timeframe ordered by the Court and because IPP lead trial
25	counsel was not available on the extended dates proposed by the Court.  *See* ECF Nos. 6016 at 2;
26	6020 at 1.  Moreover, Mr. Yan's and Mr. Wang's depositions were just concluded in late
27	September, so a trial date in January 2023 would not have been possible in any event.
28

Mr. Su would not have been available to Plaintiffs for a deposition prior to his departure from Irico. As Plaintiffs acknowledge, conducting foreign depositions is illegal in mainland China, Mr. Su could not travel to Hong Kong, and he ultimately refused to travel to Macau while lengthy quarantine requirements were in place. Even if Irico *had* known in April that Mr. Su intended to resign as Plaintiffs assert (it did not), Plaintiffs do not explain how they would have overcome these obstacles, or the lack of an approved visa to Macau, to take Mr. Su's deposition. Any suggestion that they "might" have been able to do so is belied by the facts Plaintiffs acknowledge.

### 2.   Appropriate Legal Consequences

The Court's Order directed the parties to file a statement setting forth the proposed "legal consequence" of a witness' failure to appear. Order at 14:2-7. Plaintiffs' requests here ignore the fact that Mr. Su – as Plaintiffs knew – was a former employee at the time of the Court's Order. Because Mr. Su was (and remains) beyond the control of Irico following his resignation, Irico could not compel him to travel almost a thousand miles to Macau and sit for a deposition. *See Sali v. Corona Reg. Med. Ctr.*, 884 F.3d 1218, 1224 (9th Cir. 2018) ("Rule 37 … compels the party to use its best efforts to secure the nonparty's attendance at the deposition. But it doesn't demand the impossible."); *Bella+Canvas, LLC v. Fountain Set Ltd.*, No. 2:21-cv-00758-ODW-MAA, 2022 WL 3697358, at *8-*9 (C.D. Cal. June 29, 2022) (denying motion to compel deposition of former employee, despite prior "discussions of the parties through which it appeared that … Defendant was willing to produce th[at] person[] for deposition"). There also was no practical way for Irico to produce Mr. Su earlier in discovery given the global pandemic and the fact that it could not obtain a visa to Hong Kong for Mr. Su, and that its application for a visa to Macau had not been granted at the time of Mr. Su's departure.

The obvious and sole legal consequence for Mr. Su's refusal to sit for deposition is that Mr. Su is not susceptible of being identified by Irico as a witness at trial under FRCP 26(a)(3)(A)(1). That result would protect against any unfair surprise to Plaintiffs if Mr. Su unexpectedly reconsiders his lack of cooperation in the future. And unlike Plaintiffs' overbroad suggestion to strike entire defenses, this legal consequence would fairly allow all parties to appropriately use the sworn testimony of any and all other witnesses who have testified in relation to those defenses.

### 3. Plaintiffs Blatantly Ignore the Court's Instructions and Request Inappropriate Sanctions

The Court was clear that this statement should *not* be a de facto motion for sanctions.[26] The plaintiffs have not sought leave to file such a motion, as directed by the Court. Nonetheless, Plaintiffs plainly seek sanctions, including to strike Irico's defenses which is among "the most severe [discovery] sanctions" and, among other things, "require[s] a finding of willfulness to avoid being deemed an abuse of discretion." *Card Tech. Corp. v. DataCard Inc.*, 249 F.R.D. 567, 571 (D. Minn. 2008). Moreover, as Irico would prove if the issue were properly before the Court, Plaintiffs have failed to prove that sanctions are appropriate for a former employee's failure to appear for a deposition and instead simply seek to deprive Irico of its right to litigate the merits of its defenses.[27]

To warrant their requested sanctions, Plaintiffs would be required to show that Irico "fail[ed] to obey an order to provide or permit discovery" under Rule 37. Fed R. Civ. P. 37(b)(2)(A). Plaintiffs seem to suggest that the May 25, 2022 scheduling order directing that "[t]he depositions of Su Xiaohua, Wang Zhaojie, and Yan Yunlong shall be completed by no later than June 30, 2022" was violated by Irico. ECF No. 6016 at 3. That is not the case, as that deadline was later reset by the Court to September 9, 2022, well after Plaintiffs and the Court were aware that Mr. Su had resigned from Irico and was not within Irico's control. Order at 13:10-14 The September 9th deadline was finally vacated by stipulation in favor of specific dates for the depositions of Mr. Wang and Mr. Yan later in September 2022 to allow time for visa renewals for each witness. ECF No. 6056 at 2-3. Irico complied with that order by promptly obtaining the renewed visas for Messrs. Wang and Yan and producing those two witnesses.

Even if the Order or later stipulated scheduling order could be read to impliedly include Mr. Su, despite his prior departure from Irico, the Ninth Circuit has made clear that sanctions are inappropriate when, despite a party's efforts, a "recalcitrant nonparty witness" outside the party's

---

[26] On this basis alone the Court the court would be justified in rejecting Plaintiffs' requested relief.
[27] While Irico understands the Court's Order to plainly request that the parties *not* address discovery sanctions in this joint statement, Irico has included this brief analysis of the requirements for Rule 37 sanctions solely to demonstrate that Plaintiffs' attempt to substitute sanctions for "legal consequences" is inappropriate at this time and, as the Court indicated, would require seeking leave of court to file such a motion.

13
JOINT BRIEF RE LEGAL CONSEQUENCES OF IRICO'S FAILURE TO PRODUCE MR. SU
Master File No. 07-CV-5944-JST

control still refuses to appear under a Rule 30 deposition notice. *Sali*, 884 F.3d at 1224 ("[A] party won't incur Rule 37 sanctions if, despite its efforts, a recalcitrant nonparty witness refuses to attend an ordered deposition."); *see Bella+Canvas*, 2022 WL 3697358, at *8-9 (denying motion to compel depositions because person noticed was no longer employed by the defendant); *Multiven, Inc. v. Cisco Sys., Inc.*, No. C08-05391 JW (HRL), 2010 WL 2557335, at *2-*3 (N.D. Cal. June 21, 2010) (denying motion for Rule 37 sanctions despite party's failure to appear for deposition, when nonappearance was due to "a circumstance that was outside of their control"). Mr. Su became a nonparty witness on May 25, 2022 before the Court's Order. And Irico has demonstrated its efforts to produce him both before and after that time. Thus, no sanctions are justified.

Any allegation of bad faith or fault on the part of Irico is likewise baseless. Even before Irico filed its Emergency Motion regarding the deposition schedule on June 30, 2022, all parties had been aware for weeks that Mr. Su had resigned and was no longer within Irico's control to produce for deposition. As discussed, Plaintiffs rest their conclusion of bad faith on hearsay testimony and a mistaken recollection from Mr. Yan's deposition, *see supra*, § 1; however, as demonstrated by reliable evidence already in the record, in the form of Mr. Zhang's declaration, Irico only learned of Mr. Su's decision to depart on May 31, 2022, six days after the May 25th Order. ECF No. 6036-1 at ¶ 4.

Striking of specific defenses is only merited "when a party's failure to comply with discovery orders directly inhibits the opposing party's ability to discover evidence concerning the alleged defenses." *PeerMusic, III, Ltd. v. LiveUniverse, Inc.*, No. CV 09-6160-GW (PLAx), 2011 WL 672585, at *9 (C.D. Cal. Jan. 26, 2011). As described above, this request fails at the outset because Plaintiffs cannot show that Irico failed to comply with a discovery order.[28] Striking

---

[28] In any event, Plaintiffs cannot show that they were prevented from obtaining meaningful discovery on the defenses they seek to strike. Plaintiffs rely heavily on the fact that Mr. Su was listed in some of Irico's responses to Plaintiffs' interrogatories seeking to identify "each Person You contend has knowledge of facts that support" Irico's defenses. But that does not indicate that he was the key or sole witness such that his departure "inhibits [Plaintiffs'] ability to discover evidence concerning the alleged defenses." *Id.* The fact is that either Mr. Wang or Mr. Yan were identified as also having relevant information as to *every* affirmative defense for which Mr. Su was identified. Plaintiffs' characterizations of their disappointment in the knowledge or recollection of other witnesses does not mean that they were deprived of the opportunity to discovery the basis of Irico's defenses.

Irico's affirmative defenses also would have the perverse result of discarding highly relevant testimony on these defenses from its current employees who did testify, Mr. Wang and Mr. Yan.[29] These important defenses can and should be decided on their merits, not on the basis of one former employee's decision to resign. Indeed, every defendant invariably would face this problem in the course of a 15-year long litigation. But such relief is not routinely granted and is completely inappropriate in this case. *See Falstaff Brewing Corp. v. Miller Brewing Co.*, 702 F.2d 770, 784 n.8 (9th Cir. 1983) ("[I]t is improper to dismiss a claim or to exclude evidence if the failure to comply with a discovery order is due to circumstances beyond the disobedient party's control.")

Like the other cases it cites, Plaintiffs reliance on *Beijing Choice Elec. Tech. Co. v. Contec Med. Sys. USA Inc.*, No. 18-CV-0825, 2021 WL 9184385 (N.D. Ill. Dec. 17, 2021), is misplaced. It certainly does not support Plaintiffs' suggestion that striking Irico's affirmative defenses is appropriate. The court in *Beijing Choice* found that defendants had actively misled the court by delaying disclosure of the employee's departure for over six weeks and then failed to inform the court in a later status report discussing that very same witness. *Id.* at *3-4. Those are clearly not the facts here. Importantly even under the facts in *Beijing Choice,* the court rejected a more severe sanction of an adverse inference in favor of a more limited sanction preventing the party from producing the witness at trial or using evidence authored by that witness. *See id.* at *3-6.[30]

The appropriate "legal consequence" of Mr. Su refusing to be deposed, if any, is that he should not be available to Irico as witness at trial. No other consequence is appropriate given Mr. Su's status as a former employee over whom Irico has no control. Any effort by Plaintiffs to argue here, despite the Court's direction not to do so, or in later-filed briefs that sanctions against Irico are warranted is unsupported by the facts and the relevant caselaw.

---

[29] Irico notes that Plaintiffs seek to strike *affirmative* defenses. Because Irico bears the burden of proof on those defenses, it is principally Irico that suffers from any lack of relevant testimony from Mr. Su as to those defenses.

[30] The other cases on which Plaintiffs rely are similarly distinguishable. In *SEC v. Hong*, No. CV2004080MCSRAOX, 2021 WL 4803497, at *7 (C.D. Cal. Sept. 17, 2021), the defendants did not even argue that their failure to appear was not willful or in bad faith. Here, Irico has demonstrated that Irico did not act in bad faith. *Boyles v. Gree USA, Inc.*, No. 1:20-CV-276, 2021 WL 3292727 (M.D.N.C. Aug. 2, 2021), involved a party's failure to produce a 30(b)(6) witness, meaning the defendant had the option to choose *any* witness to educate and send for deposition, even a non-employee, *see* 2021 WL 3292727, at *5, whereas here Mr. Su's resignation made it impossible for Irico to compel him to testify since he was no longer subject to Irico's control.

Dated: October 26, 2022

/s/ *Mario N. Alioto*
Mario N. Alioto (56433)
Joseph M. Patane (72202)
Lauren C. Capurro (241151)
TRUMP, ALIOTO, TRUMP & PRESCOTT LLP
2001 Union Street, Suite 482
San Francisco, CA 94123
Telephone: 415-563-7200
Facsimile: 415- 346-0679
Email: malioto@tatp.com
jpatane@tatp.com
laurenrussell@tatp.com

*Lead Counsel for the Indirect Purchaser Plaintiffs*

/s/ *R. Alexander Saveri*
R. Alexander Saveri (173102)
Geoffrey C. Rushing (126910)
Matthew D. Heaphy (227224)
SAVERI & SAVERI, INC.
706 Sansome Street
San Francisco, CA 94111
Telephone: (415) 217-6810
Facsimile: (415) 217-6813

*Lead Counsel for Direct Purchaser Plaintiffs*

/s/ *John M. Taladay*
John M. Taladay (*pro hac vice*)
Evan J. Werbel (*pro hac vice*)
Thomas E. Carter (*pro hac vice*)
Andrew L. Lucarelli (*pro hac vice*)
BAKER BOTTS LLP
700 K Street, N.W.
Washington, D.C. 20001
(202) 639-7700
(202) 639-7890 (fax)
Email: john.taladay@bakerbotts.com
evan.werbel@bakerbotts.com
tom.carter@bakerbotts.com
drew.lucarelli@bakerbotts.com

*Attorneys for Defendants Irico Group Corp. and Irico Display Devices Co., Ltd.*

16
JOINT BRIEF RE LEGAL CONSEQUENCES OF IRICO'S FAILURE TO PRODUCE MR. SU
Master File No. 07-CV-5944-JST

**ATTESTATION**

I, Lauren C. Capurro, hereby attest, pursuant to United States District Court, Northern District of California Civil Local Rule 5-1(i)(3), that concurrence in the filing of this document has been obtained from the other Signatories hereto.

By:    */s/ Lauren C. Capurro*
        Lauren C. Capurro