**EXHIBIT 1**



consortra
translations

100 Park Ave.16th Fl.
NY, NY 10017

Toll-free: 877-GO-CONSORTRA
877-462-6676

Your legal translation partner.                                    www.consortra.com

STATE of NEW YORK        )
                         )          ss:
COUNTY of NEW YORK       )

### *CERTIFICATE OF ACCURACY*

This is to certify that the attached document, *"CHU00040992 - CHU00040993"*,
originally written in *Chinese* is, to the best of our knowledge and belief, a true, accurate,
and complete translation into *English*.

Dated: February 13, 2013

Seth Wargo
Consortra Translations

Sworn to and signed before ME this
13th day of February,
2013.

Notary Public

JAMES G MAMERA
Notary Public, State of New York
No. 01MA6157195
Qualified in New York County
Commission Expires Dec. 4, 2014



**EXHIBIT**

1278E

[Handwritten:] ——➤ *Ng/Eric/Ms lee/Marketing*  [Handwritten:] V
Market Contact Report

Date: October 18-19, 2005
Targets: Irico (*IRICO*) Group Electronics: Vice President *Mr.* Ximin Wang (in charge of sales)
   Irico Group: Sales company General Manager *Mr.* Xiaolin Shen, Vice General Managers *Mr.* Zhiyuan Wei,
     Mr. Xiaohua Su, Assistant to the General Manager Mr. Linghai Liu, Director *Ms.* Yuan Liang.

Contents:

1. Irico *CRT* production line:

| Plant 1 | | | | Plant 2 | | | | Plant 3 |
|---------|---------|-----------|----------|---------|---------|-----------|-----------|----------|
| *Line 1* | *Line 2* | *Line 3* | *Line 4* | *Line 1* | *Line 2* | *Line 3* | *Line 4* | *Line 1* |
| 14" | 14" | 15"/21"*FS* | 21"*RF* | 21"*FS* | 21"*FS* | 25"*FS/RF* | 25"/29"*RF* | 32"/34" |
| 180*k/m* | 180*k/m* | 160*k/m* | 170*k/m* | 170*k/m* | 170*k/m* | 130*k/m* | 120*k/m* | 80*k/m* |

a. The total planned annual production capacity is around 16 million.
b. Apart from Plant 2's 21"*FS* as *Mini Neck*, the rest are all *Narrow Neck*.
c. 32"/34" just started and are in the customer evaluation stage, production efficiency is poor.

2. After fighting for a half year, nearly all mainland's color tube makers have had losses, and those including *CDT* are
 still making money, and of those that are purely *CPT*, only *BMCC* is profitable. Various makers' profits from
 January-June are roughly as follows:

| | '05 Jan-Jun profit/loss | *Remark* |
|---|---|---|
| *BMCC* | + RMB 50 million | More are flat |
| Seg-Hitachi | - RMB 80 million | 21" major losses |
| Huafei | + RMB 140 million | Includes *CDT*, mostly *CDT* profitable |
| Yongxin | - RMB 180 million | 21" major losses |
| *THOMSON* | - RMB 700 million | Global *Thomson* |
| *LG* Shuguang | + RMB 170 million | Includes *CDT*, mostly *CDT* profitable |
| Samsung | + RMB 220 million | Mostly *CDT*. (Tianjin: 64 million, Shenzhen: *US*$19,430,000) |
| Irico | - RMB 32 million | 14" profitable, 21"*FS* major losses |

As far as we know, in July and August Hitachi, Yongxin, Irico, and *Thomson*'s losses were even bigger (in August Irico
lost RMB 30 million), and things didn't get a little better until September.

3. Irico's Jan-Aug *CRT* sales reached a total of 7.59 million (of which 3.8 million were exports), each *Type* is as follows:

| 14 | 15"*PF* | 21"*PF* | 21"*FS*(thick) | 21"*FS* | 25"*FS* | 25"*PF* | 29"*PF* |
|---|---|---|---|---|---|---|---|
| 3029*K* | 458*K* | 721*K* | 182*K* | 1861*K* | 728*K* | 592*K* | 15*K* |

In September mainland's demand for 21" grew greatly, and that month's sales reached over 1.5 million. With the
consumption during the past few months, the overall inventory volume dropped from this year's high of over 2.2
million to the healthy level of under 700,000 in 10/*M*.

4. Analyzing global 14" supply and demand, *IRICO* and *CPT*'s supply should be able to reach 12 million/year,
 accounting for over 30% of market demand. If we take out special markets such as Brazil, India, and Western Europe
 (14% customs duty), the supply volume ratio is even higher. Stressed that 14" should be the item with the most
 opportunities for the cooperation between the two. Especially in mainland region, general *CPT*'s price for 14" is about
 $0.5 greater than Irico. It is much greater in Southeast Asia. Hope with both sides' sufficient communication and no
 malicious competition, can hold the market price and create a win-win opportunity.

[Handwritten:]
1. Establish positive interaction, starting with 14"*CPT*.
2. Besides the product competetiveness, make strategic plan as an overall advantage.
    [Signed:] Hsiang-Kwei Chung 10/26/2005

---

English words found in the original text are *italicized*.
Translator's remarks are indicated in brackets [].

CONFIDENTIAL - GRAND JURY MATERIAL         CHU00040992E_Translation

5. Recent mainland's changes in the 21" market:

a. With the start of export sales order growth and domestic sales market production starting in September, 21" demand grew greatly in September and October. All *CRT* plants are producing at full capacity. Also, 21"*FS* market prices generally rose from $24-$25 to $25-$26 (some may be $27).

b. Irico believes that the domestic sales market reached a sales peak at the 10/1 National Day holiday, but all was quiet after that, and even though *TV* makers continued planning high production volumes up to December, poor Spring Festival sales will cause big troubles again.

c. As for whether there are increases again in November, apart from *SDI* being more active, most are adopting a conservative attitude. Irico also believes that there is not much chance of another price increase in November for 21" *FS*.

d. *CPT*'s current 21" *FS* price is already higher than mainland's sales price after the first wave of price increases. In regards to November 21" *FS* sales price, even though some discussed price increases with customers, we must respond carefully. It would be good to synchronize with mainland's color tube makers.

6. Summing up the views on next year's *TV* market demand and *CRT* supply and demand, all believe that next year's overall condition will be *slightly better than this year* for the following main reasons:

a. There were no major activities (like the Olympics) this year that stimulated consumption, but next year there is the 2006 World Cup in Germany, and past experience tells us this stimulates demand some.

b. Last year's market overheating caused high *TV* inventories at the beginning of this year, then *CRT* plants did not produce with restraint, causing severe oversupply for *TV* and *CRT*, and market prices fell drastically. Next year most people will have learned their lesson, and there will be less of an impact from high inventories, and production and sales order should be relatively normal.

c. With erosion from *LCD TV*s, everyone was bearish on Japanese, U.S., and European *CRT TV* demand, but still was positive about demand in emerging regions and countries such as Russia, Southeast Asia, India, the Middle East, Africa, and Brazil.

d. For supply, the production halt of *LPD* this year in Spain and the U.K. will have a clearer effect next year, and after the huge losses this year on the mainland for Yongxin, Hitachi, and *Thomson*, there are still variables as to whether they can survive next year. Therefore, on the whole, supply should be more stable. There won't be new capacity. Instead there will be effects from production stoppage and a decrease in the pass rates of *Slim types* produced by *CRT* makers. It is expected that the overall production will fall slightly. Even though supply will still exceed demand, the situation will be a little better than this year.

End of report
Respectfully submitted for approval.

[Handwritten:]
1. Make strategies with full understanding of the market information.
2. Using speed, flexibility and seizing the first opportunity as corner stone.

[Signed:] Hsiang-Kwei Chung 10/25 05

Respectfully submitted by Employee Sheng-Jen Yang
2005/10/25
[Signed:] Sheng-Jen Yang
10/25

English words found in the original text are *italicized*.
Translator's remarks are indicated in brackets [].

CONFIDENTIAL - GRAND JURY MATERIAL

Ng ( EPIC / Ms Lee / Markey )

## 市場接洽報告

日期：2005 年 10 月 18-19 日

對象：彩虹(IRICO)集團電子；副總裁 Mr.王西民 (主管銷售)

　　　彩虹集團：銷售公司總經理 Mr.申小琳、副總經理 Mr.純致遠、Mr.蘇曉華、

　　　總經理助理 Mr.劉麦海、部長 Ms.梁援

內容：

1. 彩虹 CRT 生產線：

| 一廠 | | | | 二廠 | | | | 三廠 |
|---|---|---|---|---|---|---|---|---|
| Line 1 | Line 2 | Line 3 | Line 4 | Line 1 | Line 2 | Line 3 | Line4 | Line 1 |
| 14" | 14" | 15"/21"FS | 21"RF | 21"FS | 21"FS | 25"FS/RF | 25"/29"RF | 32"/34" |
| 180k/m | 180k/m | 160k/m | 170k/m | 170k/m | 170k/m | 130k/m | 120k/m | 80k/m |

　　a. 規劃之年產能共約 1600 萬。

　　b. 除二廠之 21"FS 為 Mini Neck 外，餘均為 Narrow Neck。

　　c. 32"/34" 剛開始，處於客戶評估階段，生產效率差。

2. 大陸彩管廠在經過半年的廝殺後幾乎都在虧損狀況，含 CDT 的都還賺錢，單純 CPT
的只有 BMCC 有利潤。1-6月各廠利潤概略如下：

| | '05 1-6月 贏虧 | Remark |
|---|---|---|
| BMCC | 7 人民幣 5000 萬 | 平面多 |
| 賽格日立 | 一 人民幣 8000 萬 | 21"大虧 |
| 華飛 | 4 人民幣 1億 4千萬 | 含 CDT、主要是 CDT 賺錢 |
| 永新 | 一 人民幣 1億 8千萬 | 21"大虧 |
| THOMSON | 一 人民幣 7億 | 全球 Thomson |
| LG曙光 | 十 人民幣 1億 7千萬 | 含 CDT、主要是 CDT 賺錢 |
| 三星 | 十 人民幣 2億 2千萬 | 主要是 CDT。(天津：6400萬、深圳：US$1943 万) |
| 彩虹 | 一 人民幣 3200 萬 | 14"賺、21"FS 大虧 |

　　據了解 7、8 月日立、永新、彩虹、、Thomson 之虧損更大(彩虹 8 月份虧損 3000 萬
人民幣)，到 9 月才稍好轉。

3. 彩虹 1-8 月之 CRT 銷售共達 759 萬 (其中出口 380 萬)，各 Type 如下：

| 14 | 15"PF | 21"PF | 21"FS(扣) | 21"FS | 25"FS | 25"PF | 29"PF |
|---|---|---|---|---|---|---|---|
| 3029K | 458K | 721K | 182K | 1861K | 728K | 592K | 15K |

　　9 月份在大陸 21"需求大幅增加下，單月銷售達 150 萬以上，整體之庫存量在近數月的
消化上也自今年最高點 220 餘萬降至 10/M 之 70 萬以下之健康水準。

4. 分析全球 14"之供需 IRICO 與 CPT 供應可達 1200 萬/年，佔市場需求之 30%以上，如
扣除巴西、印度、西歐(14%關稅)等特殊市場，供應量比更更高。強調 14"應是兩家最
有機會合作的項目，尤其在大陸地區，14"一般 CPT 的價格比彩虹高S0.5 左右，東南
亞地區則高更多，希能在雙方充分溝通、不惡性競爭之下，守住市場價格，創造雙贏
的契機。

　　1)建立良性互動，先由 14"CPT 著力。

　　2)產品競爭力外，又策略規劃做全面优勢。



5. 近期大陸的 21" 市場變化:

   a. 在 9 月開始外銷訂單成長及內銷市場之生產啟動下,9、10 月之 21"需求大增,各 CRT 廠也全產能生產,同時 21"FS 之市場價格也普遍由$24-$25 回升到$25-$26 (部份有可能到$27)。

   b. 彩虹認為內銷市場在 10/1 國慶節時確有一波銷售高潮,但過後又是一片沉寂,雖 TV 廠商持續規劃高生產量到 12 月,但如春節銷售不住將又有太庫存。

   c. 對於 11 月是否再調漲現況除 SDI 較積極外,大都採保守態度,而彩虹也認為 11 月 21" FS 要再漲價可能性不高。

   d. CPT 之 21" FS 現價已比大陸之第一波漲價後之售價高,對 11 月之 21" FS 售價雖部份與客戶檢討漲價,仍需小心因應,與大陸彩管廠同步為宜。

6. 綜合對明年的 TV 市場需求、CRT 供需看法,皆認為明年整體狀況應比今年稍好,主要原因分析有:

   a. 今年沒有任何大型活動(如奧運)刺激消費,但明年有 2006 德國世界杯足球賽,按過去經驗當會刺激一些需求。

   b. 去年市場過熱造成今年初之 TV 高庫存,而後之 CRT 廠未節制生產,造成整體 TV、CRT 嚴重過於求市場價格慘跌。明年度至少大部份人會記取教訓,高庫存效應的影響減低,產銷秩序應會較正常。

   c. 受 LCD TV 之侵蝕,大家普遍對日本、美國、歐洲之 CRT TV 需求看淡,但仍看好新興地區、國家的需求,如蘇聯、東南亞、印度、中東、非洲、巴西等。

   d. 供應方面 LPD 今年在西班牙、英國之停產在明年效應會較明顯,且大陸的永新、日立、Thomson 在今年大虧後,明年能否持續存活仍有變數。故整體而言供應方面應會較穩定,沒有新產能開出,反而有停產效應加上部份 CRT 廠商生產 Slim type 良率降低,總產出預期會稍減,雖仍是供過於求但情況會比今年好一些。

以上報告
恭呈核示

1) 全面掌握市場情報 做策略

2) 以速變彈性 勇奪生機 佳努力為.

[手寫簽名]
10/5-5

職 楊勝仁敬呈
2005/10/25

[手寫簽名] 楊勝仁
10/6

CONFIDENTIAL - GRAND JURY MATERIAL

CHU00040993

**EXHIBIT 2**

BAKER BOTTS L.L.P.
John M. Taladay (*pro hac vice*)
Evan J. Werbel (*pro hac vice*)
Thomas E. Carter (*pro hac vice*)
Andrew L. Lucarelli (*pro hac vice*)
700 K Street, N.W.
Washington, D.C. 20001
(202)-639-7700
(202)-639-7890 (fax)
Email: john.taladay@bakerbotts.com
        evan.werbel@bakerbotts.com
        tom.carter@bakerbotts.com
        drew.lucarelli@bakerbotts.com

 *Attorneys for Defendants*
*IRICO GROUP CORP. and*
*IRICO DISPLAY DEVICES CO., LTD.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Master File No. 07-cv-05944-JST (N.D. Cal.) |
| | MDL No. 1917 |
| This Document Relates to: | **IRICO DEFENDANTS' SUPPLEMENTAL OBJECTIONS AND RESPONSES TO INDIRECT PURCHASER PLAINTIFFS' FOURTH SET OF INTERROGATORIES TO IRICO GROUP CORPORATION AND IRICO DISPLAY DEVICES CO., LTD.** |
| *ALL INDIRECT PURCHASER ACTIONS* | |

PROPOUNDING PARTY:     Indirect Purchaser Plaintiffs

RESPONDING PARTIES:     Irico Group Corporation
                                          Irico Display Devices Co., Ltd.

SET NUMBER:     Four

1    Pursuant to Federal Rules of Civil Procedure 26 and 33, Irico Group Corporation and Irico

2  Display Devices Co, Ltd. (collectively, "Irico" or "Irico Defendants") hereby provides these

3  supplemental responses to the Indirect Purchaser Plaintiffs' ("Plaintiffs") Fourth Set of

4  Interrogatories to Irico Group Corporation and Irico Display Devices Co., Ltd., dated December

5  14, 2021 ("Interrogatories"). Irico reserves the right to further amend or supplement these

6  Objections and Responses (the "Responses") to the extent allowed by the Federal Rules of Civil

7  Procedure and the Local Rules of Practice in Civil Proceedings before the United States District

8  Court for the Northern District of California ("Local Rules"). Subject to and without waiving any

9  of Irico's General and Specific Objections as set forth below, Irico is willing to meet and confer

10  with Plaintiffs regarding such General and Specific Objections.

11    The following Responses are made only for purposes of this case. The Responses are

12  subject to all objections as to relevance, materiality and admissibility, and to any and all

13  objections on any ground that would require exclusion of any response if it were introduced in

14  court. All evidentiary objections and grounds are expressly reserved.

15    These Responses are subject to the provisions of the Stipulated Protective Order issued by

16  the Court on June 18, 2008 ("Protective Order"). Irico's Responses are hereby designated

17  "Confidential" in accordance with the provisions of the Protective Order.

18                              **GENERAL OBJECTIONS**

19    Irico makes the following General Objections to Plaintiffs' Interrogatories:

20    1.    Irico's Responses are based upon information available to and located by Irico as

21  of the date of service of these Responses. In responding to Plaintiffs' Interrogatories, Irico states

22  that it has conducted a diligent search, reasonable in scope, of those files and records in its

23  possession, custody, or control believed to likely contain information responsive to Plaintiffs'

24  Interrogatories.

25    2.    No express, incidental, or implied admissions are intended by these Responses and

26  should not be read or construed as such.

27    3.    Irico does not intend, and its Responses should not be construed as, an agreement

28  or acquiescence with any characterization of fact, assumption, or conclusion of law contained in

---

IRICO'S SUPP. RESPONSES TO IPP'S          1          Master File No. 07-cv-05944-JST
FOURTH SET INTERROGATORIES                             MDL No. 1917

1   or implied by the Requests.

2         4.     Irico has made a good faith and reasonable attempt to ascertain whether

3   information responsive to Plaintiffs' Interrogatories exists and is properly producible, and has

4   produced or made available for examination non-privileged responsive materials located during

5   the course of that reasonable search.

6         5.     To the extent that Irico refers to any pleading, expert report, or other filing in its

7   Specific Responses, Irico incorporates by reference all exhibits and/or evidence cited therein.

8         6.     Irico objects to Plaintiffs' Interrogatories to the extent that they are overly broad,

9   unduly burdensome, oppressive, and duplicative to the extent that they seek information or

10   documents that are already in the possession, custody, or control of Plaintiffs.

11         7.     Irico objects to Plaintiffs' Interrogatories to the extent that they seek to impose

12   obligations on Irico beyond those of the Federal Rules of Civil Procedure, the Local Rules, or any

13   Order of this Court.

14         8.     Irico objects to Plaintiffs' Interrogatories to the extent that they request duplicative

15   discovery in violation of the Order Re Discovery And Case Management Protocol, ECF No.

16   1128. *See* Order Re Plaintiffs' Motions To Compel Supplemental Discovery From Toshiba And

17   Panasonic, ECF No. 4128, at 4 ("The Discovery Protocol (ECF No 1128), requires parties to

18   coordinate discovery and not file duplicative discovery. . . . The benefit redounds to all parties on

19   both sides of the litigation, by conserving the efforts required by Plaintiffs and protecting

20   defendants against unnecessary duplication of effort.") (Report and Recommendation adopted in

21   full at ECF No. 4256).

22         9.     Irico objects to Plaintiffs' Interrogatories to the extent they seek information that is

23   not relevant or disproportionate to the needs of the case.

24        10.    Irico objects to Plaintiffs' Interrogatories to the extent that they are vague,

25   ambiguous, or susceptible to more than one interpretation. Irico has attempted to construe such

26   vague or ambiguous Interrogatories so as to provide for the production of responsive information

27   that is proportionate to the needs of the case. If Plaintiffs subsequently asserts an interpretation of

28   any Interrogatory that differs from Irico's understanding, Irico reserves the right to supplement or

1  amend its Responses.

2      11.    Irico objects to Plaintiffs' Interrogatories to the extent that they contain terms that

3  are insufficiently or imprecisely defined. Irico shall attempt to construe such vague or ambiguous

4  Interrogatories so as to provide for the production of responsive information that is proportionate

5  to the needs of the case.

6      12.    Irico objects to Plaintiffs' Interrogatories to the extent that they seek information

7  that is protected from disclosure by the attorney-client privilege, work product doctrine, joint

8  defense or common interest privilege, self-evaluative privilege, or any other applicable privilege

9  or immunity. Irico provides only information that it believes to be non-privileged and otherwise

10 properly discoverable. Nothing in Irico's responses is intended nor should be construed as a

11 waiver of any such privilege or immunity. The inadvertent or mistaken provision of any

12 information or responsive documents subject to any such doctrine, privilege, protection or

13 immunity from production shall not constitute a general, inadvertent, implicit, subject-matter,

14 separate, independent or other waiver of such doctrine, privilege, protection or immunity from

15 production.

16     13.    Irico objects to Plaintiffs' Interrogatories to the extent that they call for

17 information that is not in the possession, custody, or control of Irico. Irico also objects to the

18 extent that any of Plaintiffs' Interrogatories seek information from non-parties or third parties,

19 including but not limited to any of Irico's subsidiary or affiliated companies.

20     14.    Irico objects to Plaintiffs' Interrogatories to the extent that responding would

21 require Irico to violate the privacy and/or confidentiality of a third party or confidentiality

22 agreement with a third party.

23     15.    Irico objects to Plaintiffs' Interrogatories to the extent that they seek information

24 that is publicly available, already in Plaintiffs' possession, custody, or control, or more readily

25 available from other sources.

26     16.    Irico objects to Plaintiffs' Interrogatories to the extent that they seek information

27 or documents concerning transactions outside the United States. Such Requests are unduly

28 burdensome and disproportionate to the needs of the case as Plaintiffs' class definition is confined

1    to "individuals and entities that indirectly purchased Cathode Ray Tube Products . . . in the United

2    States" (see Indirect Purchaser Plaintiffs' Fifth Consolidated Amended Complaint ("Complaint")

3    dated September 19, 2019).

4           17.    Irico objects to Plaintiffs' Interrogatories to the extent that compliance would

5    require Irico to violate the laws, regulations, procedures, or orders of a judicial or regulatory body

6    of foreign jurisdictions.

7           18.    Irico's responses pursuant to Plaintiffs' Interrogatories should not be construed as

8    either (i) a waiver of any of Irico's general or specific objections or (ii) an admission that such

9    information or documents are either relevant or admissible as evidence.

10          19.    Irico objects to Plaintiffs' Interrogatories to the extent that they are compound

11   and/or contain discrete subparts in violation of Federal Rule of Civil Procedure 33(a)(1).

12          20.    Irico objects to Plaintiffs' Interrogatories to the extent that they state and/or call for

13   legal conclusions.

14          21.    Irico objects to the Interrogatories to the extent that they contain express or implied

15   assumptions of fact or law with respect to the matters at issue in this case.

16          22.    Irico objects to the Interrogatories to the extent they seek information or

17   documents that cannot be removed or transmitted outside China without violating the laws and

18   regulations of that country, including but not limited to restrictions on the transmission of state

19   secrets or trade secrets as those terms are defined under Chinese law.

20          23.    Irico objects to the Interrogatories to the extent that they are premature based on

21   the current status of discovery in the case. *See Young v. Regis Corp.*, No. C 10-02634 SI, 2011

22   WL 9558055 (N.D. Cal. May 19, 2011). Irico further objects to each Interrogatory to the extent

23   that it: (a) conflicts with obligations that are imposed by the Federal Rules of Civil Procedure, the

24   Civil Local Rules of this Court, and/or any other applicable rule; and/or (b) seeks information that

25   is dependent on depositions that have not occurred.

26          24.    Irico reserves the right to assert additional General and Specific Objections as

27   appropriate to supplement these Responses.

28          These General Objections apply to each Interrogatory as though restated in full in the

---

IRICO'S SUPP. RESPONSES TO IPP'S          4          Master File No. 07-cv-05944-JST
FOURTH SET INTERROGATORIES                            MDL No. 1917

1   responses thereto. The failure to mention any of the foregoing General Objections in the specific

2   responses set forth below shall not be deemed as a waiver of such objections or limitations.

3   **GENERAL OBJECTIONS TO DEFINITIONS AND INSTRUCTIONS**

4   1.      Irico objects to the definitions of "Including" and "Relating" (Definition No. 1) on

5   the grounds that it calls for a legal conclusion and is otherwise vague, ambiguous, and overly

6   broad. Irico further objects to this definition to the extent that it attempts to impose burdens on

7   Irico beyond those imposed by the Federal Rules of Civil Procedure. Irico further objects to this

8   definition to the extent that it seeks information protected by the attorney client or other

9   applicable privilege, attorney work product doctrine, or otherwise seeks to violate rights of

10  privacy under U.S. or foreign law.

11  2.      Irico objects to the definitions of "You," "Your," and "Irico" (Definition No. 2) to

12  the extent that Plaintiffs defines those terms to include the Irico's "present and former members,

13  officers, agents, employees, and all other persons acting or purporting to act on their behalf,

14  including all present and former members, officers, agents, employees, and all other persons

15  exercising or purporting to exercise discretion, making policy, and make decisions." This

16  definition is overbroad, unduly burdensome, vague, and ambiguous. In particular, Irico objects to

17  this definition to the extent it purports to request information beyond the possession, custody, or

18  control of Irico Group or Irico Display, including but not limited to information in the possession

19  of non-parties and third parties where Irico lacks any duty to obtain or otherwise search for the

20  information and for whom the Court lacks personal jurisdiction. Irico also objects to the inclusion

21  of all "present or former employees, officers, directors, agents . . . or any other person acting on

22  [the] behalf [of]" Irico within this definition to the extent it purports to encompass information

23  that is protected by attorney-client privilege, work product protection or any other applicable

24  doctrine, privilege, protection or immunity or otherwise calls for a legal conclusion.

25  3.      Irico objects to the definition of "Identify" (Definition No. 3) on the grounds that

26  the definition is overly broad, unduly burdensome, and seeks information that is neither relevant

27  nor proportionate to the needs of the case.

28  4.      Irico objects to the definition of "Document" (Definition No. 5) to the extent it

1    seeks to impose requirements that are beyond those imposed by the Federal Rules of Civil

2    Procedure, the Local Rules, any Order of this Court, or any other applicable laws.

3         5.      Irico objects to the definition of "CRT" (Definition No. 6) on the grounds that it is

4    vague, ambiguous and overly broad.

5         6.      Irico objects to Instruction No. 1 (related to disclosure of additional information) to

6    the extent it purports to impose burdens or obligations broader than, inconsistent with, or not

7    authorized under the Federal Rules of Civil Procedure, including, without limiting the generality

8    of the foregoing, Rule 26(e).

9         7.      Irico objects to Instruction No. 2 (related to production of business records) to the

10   extent that it purports to impose burdens or obligations broader than, inconsistent with, or not

11   authorized under the Federal Rules of Civil Procedure, including, without limiting the generality

12   of the foregoing, Rule 33(d), Rule 26(b). Irico further objects to this Instruction to the extent that

13   it purports to impose burdens or obligations broader than, inconsistent with, or not authorized

14   under, the Local Rules and any Orders of the Court.

15        8.      Irico objects to Instruction No. 3 (related to privileged information) to the extent

16   that it purports to impose burdens or obligations broader than, inconsistent with, or not authorized

17   under the Federal Rules of Civil Procedure, including, without limiting the generality of the

18   foregoing, Rule 33(d), Rule 26(b)(5)(A) and Rule 26(e)(1). Irico further objects to this Instruction

19   to the extent that it purports to impose burdens or obligations broader than, inconsistent with, or

20   not authorized under, the Local Rules and any Orders of the Court, and on the grounds that it is

21   vague, ambiguous, and inconsistent with common usage. Irico further objects to this Instruction to

22   the extent it seeks information that would disclose personal confidential information and/or

23   violate any and all rights of privacy under the United States Constitution or Article I of the

24   Constitution of the State of California, or any other applicable law or state constitution, or that is

25   otherwise prohibited from disclosure because to do so would cause Irico to violate legal and/or

26   contractual obligations to any other persons or entities.

27                    **SPECIFIC RESPONSES TO INTERROGATORIES**

28   **INTERROGATORY NO. 7**

As to each of the Defenses set forth in Your Answers to IPPs' Fifth Consolidated

Complaint (ECF Nos. 5873, 5875):

    a.    State all facts that You rely on to support Your contention;

    b.    Identify each Person You contend has knowledge of facts that support Your

        contention; and

    c.    Identify each Document You contend supports Your contention

**RESPONSE TO INTERROGATORY NO. 7**

In addition to Irico's General Objections, which Irico incorporates by reference, Irico

specifically objects to this Interrogatory on the grounds that it is overbroad, unduly burdensome,

not proportional to the needs of the case, and seeks information that is maintained by and equally

available to Plaintiffs or stated in publicly available documents. Irico objects to this Interrogatory

on the grounds that it calls for a legal conclusion. Irico objects that the term "support" is vague

and ambiguous, rendering this Interrogatory overbroad, unduly burdensome, and not

proportionate to the needs of the case. Irico also objects to this Interrogatory on the grounds that it

contains impermissible subparts as Irico has identified forty-one defenses in its Answer to the

Plaintiffs' Complaint. Irico also objects to this Interrogatory to the extent it improperly tries to

shift the evidentiary burden that Plaintiffs alone carry to Irico. Irico further objects to Plaintiffs'

Interrogatories to the extent that they request duplicative discovery in violation of the Order Re

Discovery And Case Management Protocol, ECF No. 1128. *See* Order Re Plaintiffs' Motions To

Compel Supplemental Discovery From Toshiba And Panasonic, ECF No. 4128, at 4 ("The

Discovery Protocol (ECF No 1128), requires parties to coordinate discovery and not file

duplicative discovery. . . . The benefit redounds to all parties on both sides of the litigation, by

conserving the efforts required by Plaintiffs and protecting defendants against unnecessary

duplication of effort.") (Report and Recommendation adopted in full at ECF No. 4256). Plaintiffs'

request is duplicative, in part or in whole, of the following discovery requests: Interrogatory No. 7

of Indirect Purchaser Plaintiffs' First Set of Interrogatories; Interrogatory Nos. 17-20 of Direct

Purchaser Plaintiffs' First Set of Interrogatories; and, Interrogatory Nos. 16-23 of Direct

Purchaser Plaintiffs Arch Electronics, Inc.'s First Set of Interrogatories to Irico Group

1    Corporation and Irico Display Devices Co., Ltd.

2        Subject to and without waiving the foregoing objections, Irico responds as follows:

3    **INTERROGATORY RESPONSE AS TO IRICO'S SECOND DEFENSE**

4        Plaintiffs' claims for any foreign purchases, if any, should be dismissed to the extent that

5    they are barred, in whole or in part, because Plaintiffs have failed to allege facts sufficient to

6    support a claim under the Foreign Trade Antitrust Improvements Act, 15 U.S.C. § 6a.

7    **RESPONSE**

8        Irico further objects that this Interrogatory is premature given that no Irico witnesses have

9    been deposed relating to merits issues and expert analysis and disclosures have not yet begun. *See*

10   *Young v. Regis Corp.*, No. C 10-02634 SI, 2011 WL 9558055 (N.D. Cal. May 19, 2011). Irico

11   also objects to this interrogatory on the ground that it calls for a legal argument or legal

12   conclusion. Irico further objects to this interrogatory to the extent that it improperly tries to shift

13   the pleading and evidentiary burden that Plaintiffs alone carry to Irico.

14       Subject to and without waiving the objections stated above, Irico contends that Plaintiffs

15   have failed to allege facts sufficient to support a claim under the Foreign Trade Antitrust

16   Improvements Act ("FTAIA"), 15 U.S.C. § 6a. At all relevant times, the North American CRT

17   market was unique and separate from other foreign markets, including China. In supporting its

18   claims, Plaintiffs rely on alleged meetings and communications that occurred outside the United

19   States that discuss and relate to CRTs sold outside the United States. Plaintiffs have not

20   established how it is entitled to any relief under FTAIA based on their purchases of either CRT

21   products outside of the United States or their purchase of CRT products containing CRTs

22   manufactured and/or purchased outside the United States. Irico also identifies the following

23   evidence under FRCP 33(d): Irico Group Corporation's Amended Motion to Dismiss Claims of

24   Indirect Purchaser Plaintiffs for Lack of Subject Matter Jurisdiction (Fed. R. Civ. P. 12(b)(1)),

25   March 19, 2019; Irico Display Devices Co., Ltd.'s Amended Motion to Dismiss Claims of

26   Indirect Purchaser Plaintiffs for Lack of Subject Matter Jurisdiction (Fed. R. Civ. P. 12(b)(1)),

27   March 19, 2019; Irico Defendants' Reply in Support of Amended Motions to Dismiss Claims of

28   Indirect Purchaser Plaintiffs for Lack of Subject Matter Jurisdiction (Fed. R. Civ. P. 12(b)(1)),

1  May 13, 2019.

2  **SUPPLEMENTAL RESPONSE**

3  Irico further objects that this Interrogatory is premature given that no Irico witnesses have

4  been deposed relating to merits issues. *See Young v. Regis Corp.*, No. C 10-02634 SI, 2011 WL

5  9558055 (N.D. Cal. May 19, 2011). Irico also objects to this interrogatory on the ground that it

6  calls for a legal argument or legal conclusion. Irico further objects to this interrogatory to the

7  extent that it improperly tries to shift the pleading and evidentiary burden that Plaintiffs alone

8  carry to Irico. Irico does not intend, and its Response should not be construed as, an agreement or

9  acquiescence as to the admissibility of any document or fact contained in or implied by Irico's

10  Response.

11  Subject to and without waiving the objections stated above, Irico contends that Plaintiffs

12  have failed to allege facts sufficient to support a claim under the Foreign Trade Antitrust

13  Improvements Act ("FTAIA"), 15 U.S.C. § 6a. At all relevant times, the North American CRT

14  market was unique and separate from other foreign markets, including China. In supporting its

15  claims, Plaintiffs rely on alleged meetings and communications that occurred outside the United

16  States that discuss and relate to CRTs sold outside the United States. Plaintiffs have not

17  established how it is entitled to any relief under FTAIA based on their purchases of either CRT

18  products outside of the United States or their purchase of CRT products containing CRTs

19  manufactured and/or purchased outside the United States. Irico also identifies the following

20  evidence: Am. Wang. Decl. in Support of FSIA MTD (March 19, 2019); Clarke Decl. in Support

21  of FSIA MTD (March 19, 2019); Am. Plunkett Decl in Support of FSIA MTD (March 19, 2019);

22  Irico Group Corporation's Amended Motion to Dismiss Claims of Direct Purchaser Plaintiffs for

23  Lack of Subject Matter Jurisdiction (Fed. R. Civ. P. 12(b)(1)), March 19, 2019; Irico Display

24  Devices Co., Ltd.'s Amended Motion to Dismiss Claims of Direct Purchaser Plaintiffs for Lack of

25  Subject Matter Jurisdiction (Fed. R. Civ. P. 12(b)(1)), March 19, 2019; Irico Defendants' Reply in

26  Support of Amended Motions to Dismiss Claims of Direct Purchaser Plaintiffs for Lack of

27  Subject Matter Jurisdiction (Fed. R. Civ. P. 12(b)(1)), May 2, 2019; Deposition of Woong Rae

28  Kim (SDI, July 1-2, 2014), 386:15-387:21; Deposition of Kyung Chul Oh (SDI, November 19-22,

1   2013), pp. 229:18-231:13; Deposition of Dae Eui Lee (SDI, January 16-18, 2013), p. 80:2-82:6;

2   Deposition of Sheng-Jen Yang (Chunghwa, February 22, 25-26, 2013), pp. 440:16-24; Deposition

3   of Kazutaka Nishimura (Toshiba/MTPD, June 10-12, 2014), pp. 136:21-137:15, 353:18-354:7,

4   385:21-386:22; HEDUS-CRT00126016; CHU00029131E; CHU00030665E; CHU00029171E;

5   CHU00029191E; CHU00036410E; CHU00029131E; CHU00029179E; SDCRT-0002520E;

6   CHU00030537E; SDCRT-0091491; SDCRT-0005852

7   **INTERROGATORY RESPONSE AS TO IRICO'S THIRD DEFENSE**

8   Plaintiffs' claims and the claims of any putative class members are barred, in whole or in

9   part, because the alleged conduct of [Group or Display] that is the subject of the Complaint either

10  occurred outside the jurisdiction of the Court or was neither directed to nor affected persons,

11  entities, trade or commerce in the United States, or both.

12  **RESPONSE**

13  Irico further objects that this Interrogatory is premature given that no Irico witnesses have

14  been deposed relating to merits issues and expert analysis and disclosures have not yet begun.

15  *See Young v. Regis Corp.*, No. C 10-02634 SI, 2011 WL 9558055 (N.D. Cal. May 19, 2011).

16  Irico also objects to this interrogatory on the ground that it calls for a legal argument or legal

17  conclusion. Irico further objects to this interrogatory to the extent that it improperly tries to shift

18  the pleading and evidentiary burden that Plaintiffs alone carry to Irico.

19  Subject to and without waiving the objections stated above, and despite the Interrogatory's

20  demand for proof of facts and evidence of events that did not take place, Irico asserts no evidence

21  has been brought in the above captioned matter that indicates that Irico manufactured, sold, or

22  distributed CRTs in the United States during the class period. In particular, Irico will be

23  producing compilations of its sales records that demonstrate that Irico did not sell CRTs to the

24  United States. Irico also identifies the following evidence under FRCP 33(d): Direct Purchaser

25  Plaintiffs' Supplemental Objections and Responses to Defendants Irico Group Corp. and Irico

26  Display Devices Co., Ltd.'s First Set of Interrogatories to Direct Purchaser Plaintiffs, July 14,

27  2021; Irico Defendants' Sixth Supplemental Objections and Responses to Direct Purchaser

28  Plaintiffs' First Set of Interrogatories, January 7, 2022; Irico Defendants' Third Supplemental

Objections and Responses to Indirect Purchaser Plaintiffs' First Set of Interrogatories, January 7, 2022; Irico Defendants' Supplemental Objections and Responses to Indirect Purchaser Plaintiffs' Third Set of Interrogatories to Irico Group Corporation and Irico Display Devices Co., Ltd., January 21, 2022; Rule 30(b)(6) Deposition of Irico Group Corp. and Irico Display Devices Co., Ltd., March 6-8, 2019.

Irico identifies the following persons with knowledge regarding this Interrogatory: Wang Zhaojie and Su Xiaohua.

**SUPPLEMENTAL RESPONSE**

Irico further objects that this Interrogatory is premature given that no Irico witnesses have been deposed relating to merits issues. *See Young v. Regis Corp.*, No. C 10-02634 SI, 2011 WL 9558055 (N.D. Cal. May 19, 2011). Irico also objects to this interrogatory on the ground that it calls for a legal argument or legal conclusion. Irico further objects to this interrogatory to the extent that it improperly tries to shift the pleading and evidentiary burden that Plaintiffs alone carry to Irico. Irico does not intend, and its Response should not be construed as, an agreement or acquiescence as to the admissibility of any document or fact contained in or implied by Irico's Response.

Subject to and without waiving the objections stated above, and despite the Interrogatory's demand for proof of facts and evidence of events that did not take place, Irico asserts no evidence has been brought in the above captioned matter that indicates that Irico manufactured, sold, or distributed CRTs in the United States during the class period. In particular, Irico has produced summaries of its sales records that demonstrate that Irico did not sell CRTs to the United States. See Summary of Invoice Records produced by Irico on June 2, 2022. Irico also identifies the following evidence: Am. Wang. Decl. in Support of FSIA MTD, ¶¶ 12, 16-17 (March 19, 2019); Direct Purchaser Plaintiffs' Supplemental Objections and Responses to Defendants Irico Group Corp. and Irico Display Devices Co., Ltd.'s First Set of Interrogatories to Direct Purchaser Plaintiffs, July 14, 2021; Irico Defendants' Sixth Supplemental Objections and Responses to Direct Purchaser Plaintiffs' First Set of Interrogatories, at 17-18, 20-21, January 7, 2022; Irico Defendants' Third Supplemental Objections and Responses to Indirect Purchaser Plaintiffs' First

1    Set of Interrogatories, January 7, 2022; Irico Defendants' Supplemental Objections and

2    Responses to Indirect Purchaser Plaintiffs' Third Set of Interrogatories to Irico Group Corporation

3    and Irico Display Devices Co., Ltd., at 11-13, January 21, 2022; Wang Dep. Tr. (March 6, 2019)

4    94:3-97:1; 107:6-14; 109:2-12.

5         Irico identifies the following persons with knowledge regarding this Interrogatory: Wang

6    Zhaojie and Yan Yunlong.

7              **INTERROGATORY RESPONSE AS TO IRICO'S EIGHTH DEFENSE**

8         Plaintiffs' claims and the claims of any putative class members are barred, in whole or in

9    part, because the actions or practices of [Group or Display] that are the subject of the Complaint

10   were undertaken unilaterally for legitimate business reasons and in pursuit of [Group or

11   Display]'s independent interests and those of its customers, and were not the product of any

12   contract, combination or conspiracy between Group and any other person or entity.

13   **RESPONSE**

14        Irico further objects that this Interrogatory is premature given that no Irico witnesses have

15   been deposed relating to merits issues and expert analysis and disclosures have not yet begun. *See*

16   *Young v. Regis Corp.*, No. C 10-02634 SI, 2011 WL 9558055 (N.D. Cal. May 19, 2011). Irico

17   also objects to this interrogatory on the ground that it calls for a legal argument or legal

18   conclusion.

19        Subject to and without waiving the objections stated above, Irico contends that its acts or

20   practices were undertaken unilaterally for legitimate business reasons and in pursuit of Irico's

21   independent interests. In addition, Irico asserts no evidence has been brought in the above

22   captioned matter that indicates that its actions were not undertaken unilaterally for legitimate

23   business reasons and in pursuit of Irico's independent interests. Pursuant to Rule 33(d) of the

24   Federal Rules of Civil Procedure, Irico relies on the following evidence to support its contention

25   that at all times its acts or practices were undertaken unilaterally for legitimate business reasons

26   and in pursuit of Irico's independent interests: Reply Brief of Irico In Support of Motion to Set

27   Aside Default at 10-11, ECF No. 5229; Exs. A – F to the Declaration of Stuart C. Plunkett in

28   Support of Motion to Set Aside Default, ECF Nos. 5229-02 through -07; IRI-CRT-00010133;

1    IRI-CRT-00010449; IRI-CRT-00010468; IRI-CRT-00026812; IRI-CRT-00030226; IRI-CRT-

2    00030865; IRI-CRT-00031457; BMCC-CRT000002761; BMCC-CRT000002762;

3    CHU00029175E; CHU00029179E; CHU00029259E; CHU00030067E; CHU00030777E;

4    CHU00030941E; CHU00030973E; CHU00031018E; CHU00031032; CHU00031044E; and,

5    CHU00031070E.

6          Irico further contends that Irico's pricing-related conduct was compelled by the Chinese

7    government and based on duly enacted laws and/or regulations of the People's Republic of China.

8    Irico relies on the following evidence to support this contention:

9          • The State Planning Commission and the State Economic and Trade Commission

10             issued the "Regulations on Preventing Unfair Price Behavior of Low-Priced

11             Dumping of Industrial Products" – effective as of Nov. 25, 1998. *See* Ex. A to the

12             Declaration of Stuart C. Plunkett in Support of Motion to Set Aside Default, ECF

13             No. 5229-02.

14          • Notice of the State Planning Commission on Issuing the "Measures for the

15             Determination of the Cost of Dumping Industrial Products at Low Prices (for Trial

16             Implementation)" – effective as of March 1, 1999. *See*

17             https://law.lawtime.cn/d448076453170.html.

18          • Notice of the State Planning Commission and the Ministry of Information Industry

19             on the Trial Measures to Stop Unfair Price Competition of Color Picture Tubes and

20             Color TVs – effective as of April 1, 1999. *See* IRI-CRT-00031457 at 1460-64; Ex.

21             B to the Declaration of Stuart C. Plunkett in Support of Motion to Set Aside

22             Default, ECF No. 5229-03.

23          • Notice on submitting cost information of color TV and color tube industry issued

24             by the Ministry of Information Industry in 1999. *See* Ex. D to the Declaration of

25             Stuart C. Plunkett in Support of Motion to Set Aside Default, ECF No. 5229-05.

26          • Notice on the issuance of the average production cost of some types of color

27             picture tubes and color TV industries issued by the Ministry of Information

28             Industry on April 2, 1999. *See* IRI-CRT-00031457 at 1459-60, 1466-67; Ex. C to

1    the Declaration of Stuart C. Plunkett in Support of Motion to Set Aside Default,

2    ECF No. 5229-04.

3    •    Notice on the issuance of the average production cost of certain types of color TV

4    industries issued by the Ministry of Information Industry on August 25, 2000. *See*

5    Ex. E to the Declaration of Stuart C. Plunkett in Support of Motion to Set Aside

6    Default, ECF No. 5229-06.

7    •    Notice on the issuance of the average production cost of some industries of color

8    picture tubes issued by the Ministry of Information Industry on September 14,

9    2000. *See* Ex. F to the Declaration of Stuart C. Plunkett in Support of Motion to

10   Set Aside Default, ECF No. 5229-07.

11   Irico identifies the following employees as having knowledge regarding this Interrogatory:

12   Wang Zhaojie and Su Xiaohua.

13   **SUPPLEMENTAL RESPONSE**

14   Irico further objects that this Interrogatory is premature given that no Irico witnesses have

15   been deposed relating to merits issues. *See Young v. Regis Corp.*, No. C 10-02634 SI, 2011 WL

16   9558055 (N.D. Cal. May 19, 2011). Irico also objects to this interrogatory on the ground that it

17   calls for a legal argument or legal conclusion. Irico also objects to this interrogatory to the extent

18   that it attempts to ascribe an unlawful or anticompetitive purpose to Irico contacts with CRT

19   manufacturers that were mere exchanges of information, which are lawful in the absence of

20   additional evidence that an agreement to engage in unlawful conduct resulted from, or was a part

21   of, the information exchange. *See USA v. Penn et al* (Doc no. 1232, at ¶ 21, D. Colo. 1:20-cr-

22   00152-PAB).  Irico does not intend, and its Response should not be construed as, an agreement or

23   acquiescence as to the admissibility of any document or fact contained in or implied by Irico's

24   Response.

25   Subject to and without waiving the objections stated above, Irico contends that its acts or

26   practices were undertaken unilaterally for legitimate business reasons and in pursuit of Irico's

27   independent interests. In addition, Irico asserts no evidence has been brought in the above

28   captioned matter that indicates that its actions were not undertaken unilaterally for legitimate

1  business reasons and in pursuit of Irico's independent interests. Subject to and without waiving

2  the foregoing objections, Irico identifies the following evidence: Expert Report of Robert D.

3  Willig at ¶ 8, December 17, 2012; Expert Report of Robert D. Willig at ¶¶ 57-61, August 5, 2014;

4  Expert Report of Margaret E. Guerin-Calvert at ¶¶ 90-98, August 5, 2014; Expert Report of Prof.

5  Dennis W. Carlton at ¶¶ 64, 68, August 5, 2014; Wang Dep. Tr. (Mar. 8, 2019), at 43:5-15, 57:8-

6  10, 64:14-21, 75:7-11; Reply Brief of Irico In Support of Motion to Set Aside Default at 10-11,

7  ECF No. 5229; Exs. A – F to the Declaration of Stuart C. Plunkett in Support of Motion to Set

8  Aside Default, ECF Nos. 5229-02 through -07; Irico Response to Plaintiffs' Conspiracy Proffer to

9  Special Master at 2-8, (April 11, 2022); BMCC-CRT000113367; BMCC-CRT000113368;

10  BMCC-CRT000113372; BMCC-CRT000113374; BMCC-CRT000113378;  BMCC-

11  CRT000113379; BMCC-CRT000113380; BMCC-CRT000113381; BMCC-CRT000113382;;

12  BMCC-CRT000113389; BMCC-CRT000113392; BMCC-CRT000113393; BMCC-

13  CRT000113394;  BMCC-CRT000113395 to 416. Irico further identifies the following evidence

14  under FRCP 33(d): IRI-CRT-00010133; IRI-CRT-00010449; IRI-CRT-00010468; IRI-CRT-

15  00026812; IRI-CRT-00030226; IRI-CRT-00030865; IRI-CRT-00031457; IRI-CRT-00004673;

16  IRI-CRT-00008191; IRI-CRT-00008248; IRI-CRT-00008664; IRI-CRT-00018191; IRI-CRT-

17  00024165; IRI-CRT-00024204; IRI-CRT-00024613.

18      Irico further contends that Irico's pricing-related conduct was compelled by the Chinese

19  government and based on duly enacted laws and/or regulations of the People's Republic of China.

20  Irico relies on the following evidence to support this contention:

21      • The State Planning Commission and the State Economic and Trade Commission

22          issued the "Regulations on Preventing Unfair Price Behavior of Low-Priced

23          Dumping of Industrial Products" – effective as of Nov. 25, 1998. *See* Ex. A to the

24          Declaration of Stuart C. Plunkett in Support of Motion to Set Aside Default, ECF

25          No. 5229-02; Expert Report of Donald Clarke at ¶¶ 6-7, March 16, 2022.

26      • Notice of the State Planning Commission on Issuing the "Measures for the

27          Determination of the Cost of Dumping Industrial Products at Low Prices (for Trial

28          Implementation)" – effective as of March 1, 1999. *See*

1    https://law.lawtime.cn/d448076453170.html; Expert Report of Donald Clarke at ¶¶
2    6-7, March 16, 2022.

3    •   Notice of the State Planning Commission and the Ministry of Information Industry
4        on the Trial Measures to Stop Unfair Price Competition of Color Picture Tubes and
5        Color TVs – effective as of April 1, 1999. *See* IRI-CRT-00031457 at 1460-64; Ex.
6        B to the Declaration of Stuart C. Plunkett in Support of Motion to Set Aside
7        Default, ECF No. 5229-03; Expert Report of Donald Clarke at ¶¶ 6-7, March 16,
8        2022.

9    •   Notice on submitting cost information of color TV and color tube industry issued
10       by the Ministry of Information Industry in 1999. *See* Ex. D to the Declaration of
11       Stuart C. Plunkett in Support of Motion to Set Aside Default, ECF No. 5229-05;
12       Expert Report of Donald Clarke at ¶¶ 6-7, March 16, 2022.

13   •   Notice on the issuance of the average production cost of some types of color
14       picture tubes and color TV industries issued by the Ministry of Information
15       Industry on April 2, 1999. See IRI-CRT-00031457 at 1459-60, 1466-67; Ex. C to
16       the Declaration of Stuart C. Plunkett in Support of Motion to Set Aside Default,
17       ECF No. 5229-04; Expert Report of Donald Clarke at ¶¶ 6-7, March 16, 2022.

18   •   Notice on the issuance of the average production cost of certain types of color TV
19       industries issued by the Ministry of Information Industry on August 25, 2000. *See*
20       Ex. E to the Declaration of Stuart C. Plunkett in Support of Motion to Set Aside
21       Default, ECF No. 5229-06; Expert Report of Donald Clarke at ¶¶ 6-7, March 16,
22       2022.

23   •   Notice on the issuance of the average production cost of some industries of color
24       picture tubes issued by the Ministry of Information Industry on September 14,
25       2000. *See* Ex. F to the Declaration of Stuart C. Plunkett in Support of Motion to
26       Set Aside Default, ECF No. 5229-07; Expert Report of Donald Clarke at ¶¶ 6-7,
27       March 16, 2022.

28   Irico identifies the following employees as having knowledge regarding this Interrogatory:

1  Wang Zhaojie and Yan Yunlong.

2  **INTERROGATORY RESPONSE AS TO IRICO'S TENTH DEFENSE**

3  Plaintiffs' claims and claims of any putative class members are barred, in whole or in part,

4  because any acts or practices of [Group or Display] that are the subject of the Complaint were

5  cost justified or otherwise economically justified and resulted from a good faith effort to meet

6  competition or market conditions.

7  **RESPONSE**

8  Irico further objects that this Interrogatory is premature given that no Irico witnesses have

9  been deposed relating to merits issues and expert analysis and disclosures have not yet begun. *See*

10  *Young v. Regis Corp.*, No. C 10-02634 SI, 2011 WL 9558055 (N.D. Cal. May 19, 2011). Irico

11  also objects to this interrogatory on the ground that it calls for a legal argument or legal

12  conclusion.

13  Subject to and without waiving the objections stated above, Irico contends that its acts or

14  practices were cost justified or otherwise economically justified, and resulted from a good faith

15  effort to meet competition or market conditions. In addition, Irico asserts no evidence has been

16  brought in the above captioned matter that indicates any action or practice of Irico was not cost

17  justified, otherwise economically justified, or did not result from a good faith effort to meet

18  competition or market conditions. Pursuant to Rule 33(d) of the Federal Rules of Civil Procedure,

19  Irico relies on the following evidence to support its contention that at all times its acts or practices

20  were cost justified or otherwise economically justified, and resulted from a good faith effort to

21  meet competition or market conditions: Reply Brief of Irico In Support of Motion to Set Aside

22  Default at 10-11, ECF No. 5229; Exs. A – F to the Declaration of Stuart C. Plunkett in Support of

23  Motion to Set Aside Default, ECF Nos. 5229-02 through -07; IRI-CRT-00010133; IRI-CRT-

24  00010449; IRI-CRT-00010468; IRI-CRT-00026812; IRI-CRT-00030226; IRI-CRT-00030865;

25  IRI-CRT-00031457; BMCC-CRT000002761; BMCC-CRT000002762; CHU00029175E;

26  CHU00029179E; CHU00029259E; CHU00030067E; CHU00030777E; CHU00030941E;

27  CHU00030973E; CHU00031018E; CHU00031032; CHU00031044E; and, CHU00031070E.

28

1  Irico identifies the following employees as having knowledge regarding this Interrogatory: Wang

2  Zhaojie and Su Xiaohua.

3  **SUPPLEMENTAL RESPONSE**

4  Irico further objects that this Interrogatory is premature given that no Irico witnesses have

5  been deposed relating to merits issues. *See Young v. Regis Corp.*, No. C 10-02634 SI, 2011 WL

6  9558055 (N.D. Cal. May 19, 2011). Irico also objects to this interrogatory on the ground that it

7  calls for a legal argument or legal conclusion. Irico does not intend, and its Response should not

8  be construed as, an agreement or acquiescence as to the admissibility of any document or fact

9  contained in or implied by Irico's Response.

10  Subject to and without waiving the objections stated above, Irico contends that its acts or

11  practices were cost justified or otherwise economically justified, and resulted from a good faith

12  effort to meet competition or market conditions. In addition, Irico asserts no evidence has been

13  brought in the above captioned matter that indicates any action or practice of Irico was not cost

14  justified, otherwise economically justified, or did not result from a good faith effort to meet

15  competition or market conditions.  Subject to and without waiving the foregoing objections, Irico

16  identifies the following evidence: Expert Report of Robert D. Willig at ¶ 8, December 17, 2012;

17  Expert Report of Robert D. Willig at ¶¶ 57-61, August 5, 2014; Expert Report of Margaret E.

18  Guerin-Calvert at ¶¶ 90-98, August 5, 2014; Expert Report of Prof. Dennis W. Carlton at ¶¶ 64,

19  68, August 5, 2014; Wang Dep. Tr. (Mar. 8, 2019), at 43:5-15, 57:8-10, 64:14-21, 75:7-11; Reply

20  Brief of Irico In Support of Motion to Set Aside Default at 10-11, ECF No. 5229; Exs. A – F to

21  the Declaration of Stuart C. Plunkett in Support of Motion to Set Aside Default, ECF Nos. 5229-

22  02 through -07; Irico Response to Plaintiffs' Conspiracy Proffer to Special Master at 2-8, (April

23  11, 2022); BMCC-CRT000113367; BMCC-CRT000113368; BMCC-CRT000113372; BMCC-

24  CRT000113374; BMCC-CRT000113378;  BMCC-CRT000113379; BMCC-CRT000113380;

25  BMCC-CRT000113381; BMCC-CRT000113382; BMCC-CRT000113389; BMCC-

26  CRT000113392; BMCC-CRT000113393; BMCC-CRT000113394;  BMCC-CRT000113395 to

27  416. Irico further identifies the following evidence under FRCP 33(d): IRI-CRT-00010133; IRI-

28  CRT-00010449; IRI-CRT-00010468; IRI-CRT-00026812; IRI-CRT-00030226; IRI-CRT-

1   00030865; IRI-CRT-00031457; IRI-CRT-00004673; IRI-CRT-00008191; IRI-CRT-00008248;

2   IRI-CRT-00008664; IRI-CRT-00018191; IRI-CRT-00024165; IRI-CRT-00024204; IRI-CRT-

3   00024613.

4         Irico further contends that Irico's pricing-related conduct was compelled by the Chinese

5   government and based on duly enacted laws and/or regulations of the People's Republic of China.

6   Irico relies on the following evidence to support this contention:

- The State Planning Commission and the State Economic and Trade Commission issued the "Regulations on Preventing Unfair Price Behavior of Low-Priced Dumping of Industrial Products" – effective as of Nov. 25, 1998. *See* Ex. A to the Declaration of Stuart C. Plunkett in Support of Motion to Set Aside Default, ECF No. 5229-02; Expert Report of Donald Clarke at ¶¶ 6-7, March 16, 2022.

- Notice of the State Planning Commission on Issuing the "Measures for the Determination of the Cost of Dumping Industrial Products at Low Prices (for Trial Implementation)" – effective as of March 1, 1999. *See* https://law.lawtime.cn/d448076453170.html; Expert Report of Donald Clarke at ¶¶ 6-7, March 16, 2022.

- Notice of the State Planning Commission and the Ministry of Information Industry on the Trial Measures to Stop Unfair Price Competition of Color Picture Tubes and Color TVs – effective as of April 1, 1999. *See* IRI-CRT-00031457 at 1460-64; Ex. B to the Declaration of Stuart C. Plunkett in Support of Motion to Set Aside Default, ECF No. 5229-03; Expert Report of Donald Clarke at ¶¶ 6-7, March 16, 2022.

- Notice on submitting cost information of color TV and color tube industry issued by the Ministry of Information Industry in 1999. *See* Ex. D to the Declaration of Stuart C. Plunkett in Support of Motion to Set Aside Default, ECF No. 5229-05; Expert Report of Donald Clarke at ¶¶ 6-7, March 16, 2022.

- Notice on the issuance of the average production cost of some types of color picture tubes and color TV industries issued by the Ministry of Information

1    Industry on April 2, 1999. See IRI-CRT-00031457 at 1459-60, 1466-67; Ex. C to

2    the Declaration of Stuart C. Plunkett in Support of Motion to Set Aside Default,

3    ECF No. 5229-04; Expert Report of Donald Clarke at ¶¶ 6-7, March 16, 2022.

4    • Notice on the issuance of the average production cost of certain types of color TV

5    industries issued by the Ministry of Information Industry on August 25, 2000. *See*

6    Ex. E to the Declaration of Stuart C. Plunkett in Support of Motion to Set Aside

7    Default, ECF No. 5229-06; Expert Report of Donald Clarke at ¶¶ 6-7, March 16,

8    2022.

9    • Notice on the issuance of the average production cost of some industries of color

10   picture tubes issued by the Ministry of Information Industry on September 14,

11   2000. *See* Ex. F to the Declaration of Stuart C. Plunkett in Support of Motion to

12   Set Aside Default, ECF No. 5229-07; Expert Report of Donald Clarke at ¶¶ 6-7,

13   March 16, 2022.

14   Irico identifies the following employees as having knowledge regarding this Interrogatory:

15   Wang Zhaojie and Yan Yunlong.

16   **INTERROGATORY RESPONSE AS TO IRICO'S ELEVENTH DEFENSE**

17   Plaintiffs' claims are barred, in whole or in part, because the alleged conduct of [Group or

18   Display] that is the subject of the Complaint was caused by, due to, based upon, or in response to

19   directives, laws, regulations, policies, and/or acts of governments, governmental agencies and

20   entities, and/or regulatory agencies, and such is non-actionable or privileged.

21   **RESPONSE**

22   Irico further objects that this Interrogatory is premature given that no Irico witnesses have

23   been deposed relating to merits issues and expert analysis and disclosures have not yet begun. *See*

24   *Young v. Regis Corp.*, No. C 10-02634 SI, 2011 WL 9558055 (N.D. Cal. May 19, 2011). Irico

25   also objects to this interrogatory on the ground that it calls for a legal argument or legal

26   conclusion.

27   Subject to and without waiving the objections stated above, Irico contends that Irico's

28   pricing-related conduct was compelled by the Chinese government and based on duly enacted

---

IRICO'S SUPP. RESPONSES TO IPP'S        20        Master File No. 07-cv-05944-JST
FOURTH SET INTERROGATORIES                        MDL No. 1917

laws and/or regulations of the People's Republic of China. Irico relies on the following evidence to support this contention:

- The State Planning Commission and the State Economic and Trade Commission issued the "Regulations on Preventing Unfair Price Behavior of Low-Priced Dumping of Industrial Products" – effective as of Nov. 25, 1998. *See* Ex. A to the Declaration of Stuart C. Plunkett in Support of Motion to Set Aside Default, ECF No. 5229-02.

- Notice of the State Planning Commission on Issuing the "Measures for the Determination of the Cost of Dumping Industrial Products at Low Prices (for Trial Implementation)" – effective as of March 1, 1999. *See* https://law.lawtime.cn/d448076453170.html..

- Notice of the State Planning Commission and the Ministry of Information Industry on the Trial Measures to Stop Unfair Price Competition of Color Picture Tubes and Color TVs – effective as of April 1, 1999. *See* IRI-CRT-00031457 at 1460-64; Ex. B to the Declaration of Stuart C. Plunkett in Support of Motion to Set Aside Default, ECF No. 5229-03.

- Notice on submitting cost information of color TV and color tube industry issued by the Ministry of Information Industry in 1999. *See* Ex. D to the Declaration of Stuart C. Plunkett in Support of Motion to Set Aside Default, ECF No. 5229-05.

- Notice on the issuance of the average production cost of some types of color picture tubes and color TV industries issued by the Ministry of Information Industry on April 2, 1999. *See* IRI-CRT-00031457 at 1459-60, 1466-67; Ex. C to the Declaration of Stuart C. Plunkett in Support of Motion to Set Aside Default, ECF No. 5229-04.

- Notice on the issuance of the average production cost of certain types of color TV industries issued by the Ministry of Information Industry on August 25, 2000. *See* Ex. E to the Declaration of Stuart C. Plunkett in Support of Motion to Set Aside Default, ECF No. 5229-06.

- Notice on the issuance of the average production cost of some industries of color picture tubes issued by the Ministry of Information Industry on September 14, 2000. *See* Ex. F to the Declaration of Stuart C. Plunkett in Support of Motion to Set Aside Default, ECF No. 5229-07.

Irico identifies the following employees as having knowledge regarding this Interrogatory: Wang Zhaojie and Su Xiaohua.

**SUPPLEMENTAL RESPONSE**

Irico further objects that this Interrogatory is premature given that no Irico witnesses have been deposed relating to merits issues. *See Young v. Regis Corp.*, No. C 10-02634 SI, 2011 WL 9558055 (N.D. Cal. May 19, 2011). Irico also objects to this interrogatory on the ground that it calls for a legal argument or legal conclusion. Irico does not intend, and its Response should not be construed as, an agreement or acquiescence as to the admissibility of any document or fact contained in or implied by Irico's Response.

Subject to and without waiving the objections stated above, Irico contends that Irico's pricing-related conduct was compelled by the Chinese government and based on duly enacted laws and/or regulations of the People's Republic of China. Irico relies on the following evidence to support this contention:

- The State Planning Commission and the State Economic and Trade Commission issued the "Regulations on Preventing Unfair Price Behavior of Low-Priced Dumping of Industrial Products" – effective as of Nov. 25, 1998. *See* Ex. A to the Declaration of Stuart C. Plunkett in Support of Motion to Set Aside Default, ECF No. 5229-02; Expert Report of Donald Clarke at ¶¶ 6-7, March 16, 2022.

- Notice of the State Planning Commission on Issuing the "Measures for the Determination of the Cost of Dumping Industrial Products at Low Prices (for Trial Implementation)" – effective as of March 1, 1999. *See* https://law.lawtime.cn/d448076453170.html; Expert Report of Donald Clarke at ¶¶ 6-7, March 16, 2022.

- Notice of the State Planning Commission and the Ministry of Information Industry on the Trial Measures to Stop Unfair Price Competition of Color Picture Tubes and Color TVs – effective as of April 1, 1999. *See* IRI-CRT-00031457 at 1460-64; Ex. B to the Declaration of Stuart C. Plunkett in Support of Motion to Set Aside Default, ECF No. 5229-03; Expert Report of Donald Clarke at ¶¶ 6-7, March 16, 2022.

- Notice on submitting cost information of color TV and color tube industry issued by the Ministry of Information Industry in 1999. *See* Ex. D to the Declaration of Stuart C. Plunkett in Support of Motion to Set Aside Default, ECF No. 5229-05; Expert Report of Donald Clarke at ¶¶ 6-7, March 16, 2022.

- Notice on the issuance of the average production cost of some types of color picture tubes and color TV industries issued by the Ministry of Information Industry on April 2, 1999. See IRI-CRT-00031457 at 1459-60, 1466-67; Ex. C to the Declaration of Stuart C. Plunkett in Support of Motion to Set Aside Default, ECF No. 5229-04; Expert Report of Donald Clarke at ¶¶ 6-7, March 16, 2022.

- Notice on the issuance of the average production cost of certain types of color TV industries issued by the Ministry of Information Industry on August 25, 2000. *See* Ex. E to the Declaration of Stuart C. Plunkett in Support of Motion to Set Aside Default, ECF No. 5229-06; Expert Report of Donald Clarke at ¶¶ 6-7, March 16, 2022.

- Notice on the issuance of the average production cost of some industries of color picture tubes issued by the Ministry of Information Industry on September 14, 2000. *See* Ex. F to the Declaration of Stuart C. Plunkett in Support of Motion to Set Aside Default, ECF No. 5229-07; Expert Report of Donald Clarke at ¶¶ 6-7, March 16, 2022.

Irico identifies the following employees as having knowledge regarding this Interrogatory: Wang Zhaojie and Yan Yunlong.

1

### INTERROGATORY RESPONSE AS TO IRICO'S TWELFTH DEFENSE

2

Plaintiffs' claims are barred, in whole or in part, because the alleged conduct of [Group or

3

Display] that is the subject of the Complaint was caused by or in response to duly enacted laws

4

and/or regulations of the People's Republic of China and is therefore protected under the foreign

5

sovereign compulsion doctrine, the act of state doctrine, and international comity.

6

### RESPONSE

7

Irico further objects that this Interrogatory is premature given that no Irico witnesses have

8

been deposed relating to merits issues and expert analysis and disclosures have not yet begun. *See*

9

*Young v. Regis Corp.*, No. C 10-02634 SI, 2011 WL 9558055 (N.D. Cal. May 19, 2011). Irico

10

also objects to this interrogatory on the ground that it calls for a legal argument or legal

11

conclusion.

12

Subject to and without waiving the objections stated above, Irico contends that Irico's

13

pricing-related conduct was compelled by the Chinese government and based on duly enacted

14

laws and/or regulations of the People's Republic of China. Irico relies on the following evidence

15

to support this contention:

16

- The State Planning Commission and the State Economic and Trade Commission

17

issued the "Regulations on Preventing Unfair Price Behavior of Low-Priced

18

Dumping of Industrial Products" – effective as of Nov. 25, 1998. *See* Ex. A to the

19

Declaration of Stuart C. Plunkett in Support of Motion to Set Aside Default, ECF

20

No. 5229-02.

21

- Notice of the State Planning Commission on Issuing the "Measures for the

22

Determination of the Cost of Dumping Industrial Products at Low Prices (for Trial

23

Implementation)" – effective as of March 1, 1999. *See*

24

https://law.lawtime.cn/d448076453170.html.

25

- Notice of the State Planning Commission and the Ministry of Information Industry

26

on the Trial Measures to Stop Unfair Price Competition of Color Picture Tubes and

27

Color TVs – effective as of April 1, 1999. *See* IRI-CRT-00031457 at 1460-64; Ex.

28

B to the Declaration of Stuart C. Plunkett in Support of Motion to Set Aside
Default, ECF No. 5229-03.

- Notice on submitting cost information of color TV and color tube industry issued
  by the Ministry of Information Industry in 1999. *See* Ex. D to the Declaration of
  Stuart C. Plunkett in Support of Motion to Set Aside Default, ECF No. 5229-05.

- Notice on the issuance of the average production cost of some types of color
  picture tubes and color TV industries issued by the Ministry of Information
  Industry on April 2, 1999. *See* IRI-CRT-00031457 at 1459-60, 1466-67; Ex. C to
  the Declaration of Stuart C. Plunkett in Support of Motion to Set Aside Default,
  ECF No. 5229-04.

- Notice on the issuance of the average production cost of certain types of color TV
  industries issued by the Ministry of Information Industry on August 25, 2000. *See*
  Ex. E to the Declaration of Stuart C. Plunkett in Support of Motion to Set Aside
  Default, ECF No. 5229-06.

- Notice on the issuance of the average production cost of some industries of color
  picture tubes issued by the Ministry of Information Industry on September 14,
  2000. *See* Ex. F to the Declaration of Stuart C. Plunkett in Support of Motion to
  Set Aside Default, ECF No. 5229-07.

Irico identifies the following employees as having knowledge regarding this Interrogatory: Wang
Zhaojie and Su Xiaohua.

**<u>SUPPLEMENTAL RESPONSE</u>**

Irico further objects that this Interrogatory is premature given that no Irico witnesses have
been deposed relating to merits issues. *See Young v. Regis Corp.*, No. C 10-02634 SI, 2011 WL
9558055 (N.D. Cal. May 19, 2011). Irico also objects to this interrogatory on the ground that it
calls for a legal argument or legal conclusion. Irico does not intend, and its Response should not
be construed as, an agreement or acquiescence as to the admissibility of any document or fact
contained in or implied by Irico's Response.

1        Subject to and without waiving the objections stated above, Irico contends that Irico's

2  pricing-related conduct was compelled by the Chinese government and based on duly enacted

3  laws and/or regulations of the People's Republic of China. Irico relies on the following evidence

4  to support this contention:

5          • The State Planning Commission and the State Economic and Trade Commission

6              issued the "Regulations on Preventing Unfair Price Behavior of Low-Priced

7              Dumping of Industrial Products" – effective as of Nov. 25, 1998. *See* Ex. A to the

8              Declaration of Stuart C. Plunkett in Support of Motion to Set Aside Default, ECF

9              No. 5229-02; Expert Report of Donald Clarke at ¶¶ 6-7, March 16, 2022.

10         • Notice of the State Planning Commission on Issuing the "Measures for the

11              Determination of the Cost of Dumping Industrial Products at Low Prices (for Trial

12              Implementation)" – effective as of March 1, 1999. *See*

13              https://law.lawtime.cn/d448076453170.html; Expert Report of Donald Clarke at ¶¶

14              6-7, March 16, 2022.

15         • Notice of the State Planning Commission and the Ministry of Information Industry

16              on the Trial Measures to Stop Unfair Price Competition of Color Picture Tubes and

17              Color TVs – effective as of April 1, 1999. *See* IRI-CRT-00031457 at 1460-64; Ex.

18              B to the Declaration of Stuart C. Plunkett in Support of Motion to Set Aside

19              Default, ECF No. 5229-03; Expert Report of Donald Clarke at ¶¶ 6-7, March 16,

20              2022.

21         • Notice on submitting cost information of color TV and color tube industry issued

22              by the Ministry of Information Industry in 1999. *See* Ex. D to the Declaration of

23              Stuart C. Plunkett in Support of Motion to Set Aside Default, ECF No. 5229-05;

24              Expert Report of Donald Clarke at ¶¶ 6-7, March 16, 2022.

25         • Notice on the issuance of the average production cost of some types of color

26              picture tubes and color TV industries issued by the Ministry of Information

27              Industry on April 2, 1999. See IRI-CRT-00031457 at 1459-60, 1466-67; Ex. C to

28

1   the Declaration of Stuart C. Plunkett in Support of Motion to Set Aside Default,

2   ECF No. 5229-04; Expert Report of Donald Clarke at ¶¶ 6-7, March 16, 2022.

3   • Notice on the issuance of the average production cost of certain types of color TV

4   industries issued by the Ministry of Information Industry on August 25, 2000. *See*

5   Ex. E to the Declaration of Stuart C. Plunkett in Support of Motion to Set Aside

6   Default, ECF No. 5229-06; Expert Report of Donald Clarke at ¶¶ 6-7, March 16,

7   2022.

8   • Notice on the issuance of the average production cost of some industries of color

9   picture tubes issued by the Ministry of Information Industry on September 14,

10   2000. *See* Ex. F to the Declaration of Stuart C. Plunkett in Support of Motion to

11   Set Aside Default, ECF No. 5229-07; Expert Report of Donald Clarke at ¶¶ 6-7,

12   March 16, 2022.

13   Irico identifies the following employees as having knowledge regarding this Interrogatory:

14   Wang Zhaojie and Yan Yunlong.

15   **INTERROGATORY RESPONSE AS TO IRICO'S FOURTEENTH DEFENSE**

16   Plaintiffs' claims and claims of any putative class members are barred, in whole or in part,

17   because any alleged injuries and/or damages were not legally or proximately caused by any acts

18   or omissions of [Group or Display] and/or were caused, if at all, solely and proximately by the

19   conduct of third parties including, without limitations, the prior, intervening or superseding

20   conduct of such third parties.

21   **RESPONSE**

22   Irico further objects that this Interrogatory is premature given that no Irico witnesses have

23   been deposed relating to merits issues and expert analysis and disclosures have not yet begun. *See*

24   *Young v. Regis Corp.*, No. C 10-02634 SI, 2011 WL 9558055 (N.D. Cal. May 19, 2011). Irico

25   also objects to this interrogatory on the ground that it calls for a legal argument or legal

26   conclusion.

27   Subject to and without waiving the objections stated above, Irico contends that Irico's

28   pricing-related conduct was compelled by the Chinese government and based on duly enacted

laws and/or regulations of the People's Republic of China. Irico relies on the following evidence to support this contention:

- The State Planning Commission and the State Economic and Trade Commission issued the "Regulations on Preventing Unfair Price Behavior of Low-Priced Dumping of Industrial Products" – effective as of Nov. 25, 1998. *See* Ex. A to the Declaration of Stuart C. Plunkett in Support of Motion to Set Aside Default, ECF No. 5229-02.

- Notice of the State Planning Commission on Issuing the "Measures for the Determination of the Cost of Dumping Industrial Products at Low Prices (for Trial Implementation)" – effective as of March 1, 1999. *See* https://law.lawtime.cn/d448076453170.html.

- Notice of the State Planning Commission and the Ministry of Information Industry on the Trial Measures to Stop Unfair Price Competition of Color Picture Tubes and Color TVs – effective as of April 1, 1999. *See* IRI-CRT-00031457 at 1460-64; Ex. B to the Declaration of Stuart C. Plunkett in Support of Motion to Set Aside Default, ECF No. 5229-03.

- Notice on submitting cost information of color TV and color tube industry issued by the Ministry of Information Industry in 1999. *See* Ex. D to the Declaration of Stuart C. Plunkett in Support of Motion to Set Aside Default, ECF No. 5229-05.

- Notice on the issuance of the average production cost of some types of color picture tubes and color TV industries issued by the Ministry of Information Industry on April 2, 1999. *See* IRI-CRT-00031457 at 1459-60, 1466-67; Ex. C to the Declaration of Stuart C. Plunkett in Support of Motion to Set Aside Default, ECF No. 5229-04.

- Notice on the issuance of the average production cost of certain types of color TV industries issued by the Ministry of Information Industry on August 25, 2000. *See* Ex. E to the Declaration of Stuart C. Plunkett in Support of Motion to Set Aside Default, ECF No. 5229-06.

1  • Notice on the issuance of the average production cost of some industries of color

2  picture tubes issued by the Ministry of Information Industry on September 14,

3  2000. *See* Ex. F to the Declaration of Stuart C. Plunkett in Support of Motion to

4  Set Aside Default, ECF No. 5229-07.

5  Irico identifies the following employees as having knowledge regarding this Interrogatory: Wang

6  Zhaojie and Su Xiaohua.

7  **SUPPLEMENTAL RESPONSE**

8  Irico further objects that this Interrogatory is premature given that no Irico witnesses have

9  been deposed relating to merits issues. *See Young v. Regis Corp.*, No. C 10-02634 SI, 2011 WL

10  9558055 (N.D. Cal. May 19, 2011). Irico also objects to this interrogatory on the ground that it

11  calls for a legal argument or legal conclusion. Irico does not intend, and its Response should not

12  be construed as, an agreement or acquiescence as to the admissibility of any document or fact

13  contained in or implied by Irico's Response.

14  Subject to and without waiving the objections stated above, Irico contends that Irico's

15  pricing-related conduct was compelled by the Chinese government and based on duly enacted

16  laws and/or regulations of the People's Republic of China. Irico relies on the following evidence

17  to support this contention:

18  • The State Planning Commission and the State Economic and Trade Commission

19  issued the "Regulations on Preventing Unfair Price Behavior of Low-Priced

20  Dumping of Industrial Products" – effective as of Nov. 25, 1998. *See* Ex. A to the

21  Declaration of Stuart C. Plunkett in Support of Motion to Set Aside Default, ECF

22  No. 5229-02; Expert Report of Donald Clarke at ¶¶ 6-7, March 16, 2022.

23  • Notice of the State Planning Commission on Issuing the "Measures for the

24  Determination of the Cost of Dumping Industrial Products at Low Prices (for Trial

25  Implementation)" – effective as of March 1, 1999. *See*

26  https://law.lawtime.cn/d448076453170.html; Expert Report of Donald Clarke at ¶¶

27  6-7, March 16, 2022.

28

- Notice of the State Planning Commission and the Ministry of Information Industry on the Trial Measures to Stop Unfair Price Competition of Color Picture Tubes and Color TVs – effective as of April 1, 1999. *See* IRI-CRT-00031457 at 1460-64; Ex. B to the Declaration of Stuart C. Plunkett in Support of Motion to Set Aside Default, ECF No. 5229-03; Expert Report of Donald Clarke at ¶¶ 6-7, March 16, 2022.

- Notice on submitting cost information of color TV and color tube industry issued by the Ministry of Information Industry in 1999. *See* Ex. D to the Declaration of Stuart C. Plunkett in Support of Motion to Set Aside Default, ECF No. 5229-05; Expert Report of Donald Clarke at ¶¶ 6-7, March 16, 2022.

- Notice on the issuance of the average production cost of some types of color picture tubes and color TV industries issued by the Ministry of Information Industry on April 2, 1999. See IRI-CRT-00031457 at 1459-60, 1466-67; Ex. C to the Declaration of Stuart C. Plunkett in Support of Motion to Set Aside Default, ECF No. 5229-04; Expert Report of Donald Clarke at ¶¶ 6-7, March 16, 2022.

- Notice on the issuance of the average production cost of certain types of color TV industries issued by the Ministry of Information Industry on August 25, 2000. *See* Ex. E to the Declaration of Stuart C. Plunkett in Support of Motion to Set Aside Default, ECF No. 5229-06; Expert Report of Donald Clarke at ¶¶ 6-7, March 16, 2022.

- Notice on the issuance of the average production cost of some industries of color picture tubes issued by the Ministry of Information Industry on September 14, 2000. *See* Ex. F to the Declaration of Stuart C. Plunkett in Support of Motion to Set Aside Default, ECF No. 5229-07; Expert Report of Donald Clarke at ¶¶ 6-7, March 16, 2022.

Irico identifies the following employees as having knowledge regarding this Interrogatory: Wang Zhaojie and Yan Yunlong.

**INTERROGATORY RESPONSE AS TO IRICO'S SEVENTEENTH DEFENSE**

Plaintiffs' claims are barred, in whole or in part, to the extent they are based on alleged acts, conduct or statements that are specifically permitted by law.

**RESPONSE**

Irico further objects that this Interrogatory is premature given that no Irico witnesses have been deposed relating to merits issues and expert analysis and disclosures have not yet begun. *See Young v. Regis Corp.*, No. C 10-02634 SI, 2011 WL 9558055 (N.D. Cal. May 19, 2011). Irico also objects to this interrogatory on the ground that it calls for a legal argument or legal conclusion.

Subject to and without waiving the objections stated above, Irico contends that Irico's pricing-related conduct was compelled by the Chinese government and based on duly enacted laws and/or regulations of the People's Republic of China. Irico relies on the following evidence to support this contention:

- The State Planning Commission and the State Economic and Trade Commission issued the "Regulations on Preventing Unfair Price Behavior of Low-Priced Dumping of Industrial Products" – effective as of Nov. 25, 1998. *See* Ex. A to the Declaration of Stuart C. Plunkett in Support of Motion to Set Aside Default, ECF No. 5229-02.

- Notice of the State Planning Commission on Issuing the "Measures for the Determination of the Cost of Dumping Industrial Products at Low Prices (for Trial Implementation)" – effective as of March 1, 1999. *See* https://law.lawtime.cn/d448076453170.html.

- Notice of the State Planning Commission and the Ministry of Information Industry on the Trial Measures to Stop Unfair Price Competition of Color Picture Tubes and Color TVs – effective as of April 1, 1999. *See* IRI-CRT-00031457 at 1460-64; Ex. B to the Declaration of Stuart C. Plunkett in Support of Motion to Set Aside Default, ECF No. 5229-03.

- Notice on submitting cost information of color TV and color tube industry issued by the Ministry of Information Industry in 1999. *See* Ex. D to the Declaration of Stuart C. Plunkett in Support of Motion to Set Aside Default, ECF No. 5229-05.

- Notice on the issuance of the average production cost of some types of color picture tubes and color TV industries issued by the Ministry of Information Industry on April 2, 1999. *See* IRI-CRT-00031457 at 1459-60, 1466-67; Ex. C to the Declaration of Stuart C. Plunkett in Support of Motion to Set Aside Default, ECF No. 5229-04.

- Notice on the issuance of the average production cost of certain types of color TV industries issued by the Ministry of Information Industry on August 25, 2000. *See* Ex. E to the Declaration of Stuart C. Plunkett in Support of Motion to Set Aside Default, ECF No. 5229-06.

- Notice on the issuance of the average production cost of some industries of color picture tubes issued by the Ministry of Information Industry on September 14, 2000. *See* Ex. F to the Declaration of Stuart C. Plunkett in Support of Motion to Set Aside Default, ECF No. 5229-07.

Irico identifies the following employees as having knowledge regarding this Interrogatory: Wang Zhaojie and Su Xiaohua.

**SUPPLEMENTAL RESPONSE**

Irico further objects that this Interrogatory is premature given that no Irico witnesses have been deposed relating to merits issues. *See Young v. Regis Corp.*, No. C 10-02634 SI, 2011 WL 9558055 (N.D. Cal. May 19, 2011). Irico also objects to this interrogatory on the ground that it calls for a legal argument or legal conclusion. Irico does not intend, and its Response should not be construed as, an agreement or acquiescence as to the admissibility of any document or fact contained in or implied by Irico's Response.

Subject to and without waiving the objections stated above, Irico contends that Irico's pricing-related conduct was compelled by the Chinese government and based on duly enacted

1  laws and/or regulations of the People's Republic of China. Irico relies on the following evidence

2  to support this contention:

3  • The State Planning Commission and the State Economic and Trade Commission

4    issued the "Regulations on Preventing Unfair Price Behavior of Low-Priced

5    Dumping of Industrial Products" – effective as of Nov. 25, 1998. *See* Ex. A to the

6    Declaration of Stuart C. Plunkett in Support of Motion to Set Aside Default, ECF

7    No. 5229-02; Expert Report of Donald Clarke at ¶¶ 6-7, March 16, 2022.

8  • Notice of the State Planning Commission on Issuing the "Measures for the

9    Determination of the Cost of Dumping Industrial Products at Low Prices (for Trial

10    Implementation)" – effective as of March 1, 1999. *See*

11    https://law.lawtime.cn/d448076453170.html; Expert Report of Donald Clarke at ¶¶

12    6-7, March 16, 2022.

13  • Notice of the State Planning Commission and the Ministry of Information Industry

14    on the Trial Measures to Stop Unfair Price Competition of Color Picture Tubes and

15    Color TVs – effective as of April 1, 1999. *See* IRI-CRT-00031457 at 1460-64; Ex.

16    B to the Declaration of Stuart C. Plunkett in Support of Motion to Set Aside

17    Default, ECF No. 5229-03; Expert Report of Donald Clarke at ¶¶ 6-7, March 16,

18    2022.

19  • Notice on submitting cost information of color TV and color tube industry issued

20    by the Ministry of Information Industry in 1999. *See* Ex. D to the Declaration of

21    Stuart C. Plunkett in Support of Motion to Set Aside Default, ECF No. 5229-05;

22    Expert Report of Donald Clarke at ¶¶ 6-7, March 16, 2022.

23  • Notice on the issuance of the average production cost of some types of color

24    picture tubes and color TV industries issued by the Ministry of Information

25    Industry on April 2, 1999. See IRI-CRT-00031457 at 1459-60, 1466-67; Ex. C to

26    the Declaration of Stuart C. Plunkett in Support of Motion to Set Aside Default,

27    ECF No. 5229-04; Expert Report of Donald Clarke at ¶¶ 6-7, March 16, 2022.

28

1    • Notice on the issuance of the average production cost of certain types of color TV

2        industries issued by the Ministry of Information Industry on August 25, 2000. *See*

3        Ex. E to the Declaration of Stuart C. Plunkett in Support of Motion to Set Aside

4        Default, ECF No. 5229-06; Expert Report of Donald Clarke at ¶¶ 6-7, March 16,

5        2022.

6    • Notice on the issuance of the average production cost of some industries of color

7        picture tubes issued by the Ministry of Information Industry on September 14,

8        2000. *See* Ex. F to the Declaration of Stuart C. Plunkett in Support of Motion to

9        Set Aside Default, ECF No. 5229-07; Expert Report of Donald Clarke at ¶¶ 6-7,

10       March 16, 2022.

11       Irico identifies the following employees as having knowledge regarding this Interrogatory:

12   Wang Zhaojie and Yan Yunlong.

13   **INTERROGATORY NO. 8**

14       If Your response to any of the IPPs' Requests for Admissions served concurrently

15   herewith is anything other than an unqualified admission:

16       a.    State all facts supporting Your denial;

17       b.    Identify each Person who provided facts relating to Your response;

18       c.    Identify each Document You consulted to formulate Your response

19   **RESPONSE TO INTERROGATORY NO. 8**

20       Irico reasserts and incorporates each of the General Objections and Objections to the

21   Definitions and Instructions set forth above. Irico also reasserts and incorporates each of the

22   General Objections, Objections to the Definitions and Instructions, and objections in each of its

23   Specific Responses to Requests for Admission as set forth in Irico Defendants' Objections and

24   Responses to Indirect Purchaser Plaintiffs' First Set of Requests for Admission, served herewith.

25   Irico further objects to this interrogatory as overbroad and unduly burdensome, as Plaintiffs has

26   not demonstrated how the benefit of such information outweighs the significant burden to Irico of

27   responding to each denial of the 119 RFAs (including subparts) propounded by Plaintiffs.

28       Subject to and without waiving the foregoing objections, Irico responds as follows:

## RESPONSE RE: REQUEST FOR ADMISSION NO. 16

Irico further objects to this Interrogatory on the grounds that it is overbroad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and seeks information that is maintained by and equally available to Plaintiffs or stated in publicly available documents. Irico also objects to this Interrogatory on the grounds that it calls for a legal argument or legal conclusion. Irico further objects to the use of the terms "unqualified" and "supporting" because they are vague and ambiguous, rendering this Interrogatory overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Irico also objects to this Interrogatory to the extent it improperly tries to shift the evidentiary burden that Plaintiffs alone carry to Irico. Irico further objects to this Interrogatory as it requests Irico to provide facts and evidence of events that did not take place.

Subject to and without waiving its foregoing objections, Irico refers Plaintiffs to the following evidence under FRCP 33(d): Irico Defendants' Sixth Supplemental Objections and Responses to Direct Purchaser Plaintiffs' First Set of Interrogatories, January 7, 2022; Irico Defendants' Third Supplemental Objections and Responses to Indirect Purchaser Plaintiffs' First Set of Interrogatories, January 7, 2022; Irico Defendants' Supplemental Objections and Responses to Indirect Purchaser Plaintiffs' Third Set of Interrogatories to Irico Group Corporation and Irico Display Devices Co., Ltd., January 21, 2022; Rule 30(b)(6) Deposition of Irico Group Corp. and Irico Display Devices Co., Ltd., March 6-8, 2019.

Irico identifies the following persons with knowledge regarding this Interrogatory: Wang Zhaojie and Su Xiaohua.

## SUPPLEMENTAL RESPONSE RE: REQUEST FOR ADMISSION NO. 16

Irico further objects to this Interrogatory on the grounds that it is overbroad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and seeks information that is maintained by and equally available to Plaintiffs or stated in publicly available documents. Irico also objects to this Interrogatory on the grounds that it calls for a legal argument or legal conclusion. Irico further objects to the use of the terms "unqualified" and "supporting" because they are vague and ambiguous, rendering this Interrogatory overbroad, unduly

1  burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Irico

2  also objects to this Interrogatory to the extent it improperly tries to shift the evidentiary burden that

3  Plaintiffs alone carry to Irico. Irico further objects to this Interrogatory as it requests Irico to provide

4  facts and evidence of events that did not take place. Irico does not intend, and its Response should

5  not be construed as, an agreement or acquiescence as to the admissibility of any document or fact

6  contained in or implied by Irico's Response.

7  Subject to and without waiving the objections stated above, and despite the Interrogatory's

8  demand for proof of facts and evidence of events that did not take place, Irico asserts no evidence

9  has been brought in the above captioned matter that indicates that Irico manufactured, sold, or

10  distributed CRTs in the United States during the class period. In particular, Irico has produced

11  summaries of its sales records that demonstrate that Irico did not sell CRTs to the United States.

12  *See* Summary of Invoice Records produced by Irico on June 2, 2022. Irico also identifies the

13  following evidence: Am. Wang. Decl. in Support of FSIA MTD, ¶¶ 12, 16-17 (March 19, 2019);

14  Direct Purchaser Plaintiffs' Supplemental Objections and Responses to Defendants Irico Group

15  Corp. and Irico Display Devices Co., Ltd.'s First Set of Interrogatories to Direct Purchaser

16  Plaintiffs, July 14, 2021; Irico Defendants' Sixth Supplemental Objections and Responses to Direct

17  Purchaser Plaintiffs' First Set of Interrogatories, at 17-18, 20-21, January 7, 2022; Irico Defendants'

18  Third Supplemental Objections and Responses to Indirect Purchaser Plaintiffs' First Set of

19  Interrogatories, January 7, 2022; Irico Defendants' Supplemental Objections and Responses to

20  Indirect Purchaser Plaintiffs' Third Set of Interrogatories to Irico Group Corporation and Irico

21  Display Devices Co., Ltd., at 11-13, January 21, 2022; Wang Dep. Tr. (March 6, 2019) 94:3-97:1;

22  107:6-14; 109:2-12.

23  Irico identifies the following persons with knowledge regarding this Interrogatory: Wang

24  Zhaojie and Yan Yunlong.

25  ///

26  ///

27  ///

28  ///

1    Dated:  September 1, 2022                    BAKER BOTTS L.L.P.

2

3                                                 */s/ John M. Taladay*

4                                                 John M. Taladay (*pro hac vice*)
                                                  Evan J. Werbel (*pro hac vice*)
5                                                 Thomas E. Carter (*pro hac vice*)
                                                  Andrew L. Lucarelli (*pro hac vice*)
6                                                 700 K Street, N.W.
                                                  Washington, D.C. 20001
7                                                 (202)-639-7700
                                                  (202)-639-7890 (fax)
8                                                 Email: john.taladay@bakerbotts.com
                                                          evan.werbel@bakerbotts.com
9                                                         tom.carter@bakerbotts.com
                                                          drew.lucarelli@bakerbotts.com
10

11                                                *Attorneys for Defendants*
                                                  *IRICO GROUP CORP. and*
12                                                *IRICO DISPLAY DEVICES CO., LTD.*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

IRICO'S SUPP. RESPONSES TO IPP'S              37              Master File No. 07-cv-05944-JST
FOURTH SET INTERROGATORIES                                   MDL No. 1917

**EXHIBIT 3**

BAKER BOTTS L.L.P.
John M. Taladay (*pro hac vice*)
Evan J. Werbel (*pro hac vice*)
Thomas E. Carter (*pro hac vice*)
Andrew L. Lucarelli (*pro hac vice*)
700 K Street, N.W.
Washington, D.C. 20001
(202)-639-7700
(202)-639-7890 (fax)
Email: john.taladay@bakerbotts.com
        evan.werbel@bakerbotts.com
        tom.carter@bakerbotts.com
        drew.lucarelli@bakerbotts.com

*Attorneys for Defendants*
*IRICO GROUP CORP. and*
*IRICO DISPLAY DEVICES CO., LTD.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Master File No. 07-cv-05944-JST (N.D. Cal.) |
| | MDL No. 1917 |
| This Document Relates to: | **IRICO DEFENDANTS' SUPPLEMENTAL OBJECTIONS AND RESPONSES TO DIRECT PURCHASER PLAINTIFF ARCH ELECTRONICS INC.'S FIRST SET OF INTERROGATORIES TO IRICO GROUP CORPORATION AND IRICO DISPLAY DEVICES CO, LTD.** |
| ALL DIRECT PURCHASER ACTIONS | |

PROPOUNDING PARTY:          ARCH ELECTRONICS, INC.

RESPONDING PARTIES:          Irico Group Corporation
                                           Irico Display Devices Co., Ltd.

SET NUMBER:                       One

1    Pursuant to Federal Rules of Civil Procedure 26 and 33, Irico Group Corporation and Irico

2  Display Devices Co, Ltd. (collectively, "Irico" or "Irico Defendants") hereby provides these

3  supplemental responses to Direct Purchaser Plaintiff Arch Electronics, Inc.'s ("Plaintiff") First

4  Set of Interrogatories to Irico Group Corporation and Irico Display Devices Co., Ltd., dated

5  December 13, 2021 ("Interrogatories"). Irico reserves the right to further amend or supplement

6  these Objections and Responses (the "Responses") to the extent allowed by the Federal Rules of

7  Civil Procedure and the Local Rules of Practice in Civil Proceedings before the United States

8  District Court for the Northern District of California ("Local Rules"). Subject to and without

9  waiving any of Irico's General and Specific Objections as set forth below, Irico is willing to meet

10  and confer with Plaintiff regarding such General and Specific Objections.

11    The following Responses are made only for purposes of this case. The Responses are

12  subject to all objections as to relevance, materiality and admissibility, and to any and all

13  objections on any ground that would require exclusion of any response if it were introduced in

14  court. All evidentiary objections and grounds are expressly reserved.

15    These Responses are subject to the provisions of the Stipulated Protective Order that the

16  Court issued on June 18, 2008 ("Protective Order"). Irico's Responses are hereby designated

17  "Confidential" in accordance with the provisions of the Protective Order.

18                    **GENERAL OBJECTIONS**

19  Irico makes the following General Objections to Plaintiff's Interrogatories:

20    1.    Irico's Responses are based upon information available to and located by Irico as

21  of the date of service of these Responses. In responding to Plaintiff's Interrogatories, Irico states

22  that it has conducted a diligent search, reasonable in scope, of those files and records in its

23  possession, custody, or control believed to likely contain information responsive to Plaintiff's

24  Interrogatories.

25    2.    No express, incidental, or implied admissions are intended by these Responses and

26  should not be read or construed as such.

27    3.    Irico does not intend, and its Responses should not be construed as, an agreement

28  or acquiescence with any characterization of fact, assumption, or conclusion of law contained in

1   or implied by the Interrogatories.

2        4.      Irico objects to Plaintiff's Interrogatories to the extent that they are overly broad,

3   unduly burdensome, oppressive, and duplicative to the extent that they seek information or

4   documents that are already in the possession, custody, or control of Plaintiff.

5        5.      Irico objects to Plaintiff's Interrogatories to the extent that they seek to impose

6   obligations on Irico beyond those of the Federal Rules of Civil Procedure, the Local Rules, or any

7   Order of this Court.

8        6.      Irico objects to Plaintiff's Interrogatories to the extent that they request duplicative

9   discovery in violation of the Order Re Discovery And Case Management Protocol, ECF No.

10  1128. *See* Order Re Plaintiffs' Motions To Compel Supplemental Discovery From Toshiba And

11  Panasonic, ECF No. 4128, at 4 ("The Discovery Protocol (ECF No 1128), requires parties to

12  coordinate discovery and not file duplicative discovery. . . . The benefit redounds to all parties on

13  both sides of the litigation, by conserving the efforts required by plaintiffs and protecting

14  defendants against unnecessary duplication of effort.") (Report and Recommendation adopted in

15  full at ECF No. 4256).

16       7.      Irico objects to Plaintiff's Interrogatories to the extent they seek information that is

17  not relevant or disproportionate to the needs of the case.

18       8.      Irico objects to Plaintiff's Interrogatories to the extent that they are vague,

19  ambiguous, or susceptible to more than one interpretation. Irico shall attempt to construe such

20  vague or ambiguous Interrogatories so as to provide for the production of responsive information

21  that is proportionate to the needs of the case. If Plaintiff subsequently asserts an interpretation of

22  any Interrogatory that differs from Irico's understanding, Irico reserves the right to supplement or

23  amend its Responses.

24       9.      Irico objects to Plaintiff's Interrogatories to the extent that they contain terms that

25  are insufficiently or imprecisely defined. Irico shall attempt to construe such vague or ambiguous

26  Interrogatories so as to provide for the production of responsive information that is proportionate

27  to the needs of the case.

28       10.     Irico objects to Plaintiff's Interrogatories to the extent that they seek information

IRICO'S SUPP. RESPONSES TO DPP ARCH            2            Master File No. 07-cv-05944-JST
ELECTRONICS INC.'S FIRST SET                               MDL No. 1917
INTERROGATORIES

that is protected from disclosure by the attorney-client privilege, work product doctrine, joint defense or common interest privilege, self-evaluative privilege, or any other applicable privilege or immunity. Irico has provided only information that it believes to be non-privileged and otherwise properly discoverable. Nothing in Irico's responses is intended nor should be construed as a waiver of any such privilege or immunity. The inadvertent or mistaken provision of any information or responsive documents subject to any such doctrine, privilege, protection or immunity from production shall not constitute a general, inadvertent, implicit, subject-matter, separate, independent or other waiver of such doctrine, privilege, protection or immunity from production.

11.   Irico objects to Plaintiff's Interrogatories to the extent that they call for information that is not in the possession, custody, or control of Irico. Irico also objects to the extent that any of Plaintiff's Interrogatories seek information from non-parties or third parties, including but not limited to any of Irico's subsidiary or affiliated companies.

12.   Irico objects to Plaintiff's Interrogatories to the extent that responding would require Irico to violate the privacy and/or confidentiality of a third party or confidentiality agreement with a third party.

13.   Irico objects to Plaintiff's Interrogatories to the extent that they seek information that is publicly available, already in Plaintiffs' possession, custody, or control, or more readily available from other sources.

14.   Irico objects to Plaintiff's Interrogatories to the extent that they seek information or documents concerning transactions outside the United States. Such Interrogatories are unduly burdensome and irrelevant to this pending action as Plaintiffs' class definition is confined to "all persons . . . who directly purchased a Cathode Ray Tube Product . . . in the United States" (see Direct Purchaser Plaintiffs' Consolidated Amended Complaint dated March 16, 2009).

15.   Irico objects to Plaintiff's Interrogatories to the extent that compliance would require Irico to violate the laws, regulations, procedures, or orders of a judicial or regulatory body of foreign jurisdictions.

16.     Irico's responses, whether now or in the future, pursuant to Plaintiff's Interrogatories should not be construed as either (i) a waiver of any of Irico's general or specific objections or (ii) an admission that such information or documents are either relevant or admissible as evidence.

17.     Irico objects to Plaintiff's Interrogatories to the extent that they are compound and/or contain discrete subparts in violation of Federal Rule of Civil Procedure 33(a)(1).

18.     Irico objects to Plaintiff's Interrogatories to the extent that they state and/or call for legal conclusions.

19.     Irico objects to the Interrogatories to the extent that they contain express or implied assumptions of fact or law with respect to the matters at issue in this case.

20.     Irico objects to the Interrogatories to the extent they seek information or documents that cannot be removed or transmitted outside China without violating the laws and regulations of that country, including but not limited to restrictions on the transmission of state secrets or trade secrets as those terms are defined under Chinese law.

21.     Irico objects to the Interrogatories to the extent that they are "contention interrogatories" regarding issues implicated by expert analysis and disclosures. *See Young v. Regis Corp.*, No. C 10-02634 SI, 2011 Wl 9558055 (N.D. Cal. May 19, 2011). Irico objects to each Interrogatory to the extent that it is premature and/or to the extent that it: (a) conflicts with obligations that are imposed by the Federal Rules of Civil Procedure, the Civil Local Rules of this Court, and/or any other applicable rule; (b) seeks information that is the subject of expert testimony; and/or (c) seeks information that is dependent on depositions that have not occurred.

22.     Irico reserves the right to assert additional General and Specific Objections as appropriate to supplement these Responses.

These General Objections apply to each Interrogatory as though restated in full in the responses thereto. The failure to mention any of the foregoing General Objections in the specific responses set forth below shall not be deemed as a waiver of such objections or limitations.

## GENERAL OBJECTIONS TO DEFINITIONS AND INSTRUCTIONS

1.     Irico objects to the definitions of "Defendant," "You," and "Your" (Definition

1    Nos. 1 and 2) to the extent that Plaintiff defines those terms to include Irico's "subsidiaries,

2    affiliates, agents, employees, attorneys, consultants, representatives and any other person or entity

3    acting on their behalf or at their direction." This definition is overbroad, unduly burdensome,

4    vague, and ambiguous. Irico also objects to the inclusion of all "agents, employees, attorneys,

5    consultants, representatives and any other person or entity acting on [Irico's] behalf or at [Irico's]

6    direction" within this definition to the extent it purports to encompass information that is

7    protected by attorney-client privilege, work product protection or any other applicable doctrine,

8    privilege, protection or immunity or otherwise calls for a legal conclusion.

9         2.    Irico objects to the definitions of "CRT" and "CRT Product" (Definition Nos. 4

10   and 5) on the grounds that they are vague, ambiguous and overly broad. Irico further objects to

11   the use of the term "CRT Products" to the extent that it is inconsistent with the definition of

12   "CRT Products" as set forth in Plaintiff's pleadings

13        3.    Irico objects to the definition of "Person" (Definition No. 12) on the grounds that it

14   calls for a legal conclusion and is otherwise vague, ambiguous, and overly broad. Irico further

15   objects to this definition to the extent that it attempts to impose burdens on Irico beyond those

16   imposed by the Federal Rules of Civil Procedure. Irico further objects to this definition to the

17   extent that it seeks information protected by the attorney client or other applicable privilege,

18   attorney work product doctrine, or otherwise seeks to violate rights of privacy under U.S. or

19   foreign law.

20        4.    Irico objects to the definition of "Document" (Definition No. 13) to the extent it

21   seeks to impose requirements that are beyond those imposed by the Federal Rules of Civil

22   Procedure, the Local Rules, or any other applicable laws.

23        5.    Irico objects to the definition of "Identify" (Definition No. 14) to the extent it

24   seeks to impose requirements that are beyond those imposed by the Federal Rules of Civil

25   Procedure, the Local Rules, or any other applicable laws.

26        6.    Irico objects to the Instructions (related to the production of business records in

27   response to an interrogatory pursuant to Federal Rule of Civil Procedure 33(d)) on the grounds

28   that it is unduly burdensome and purports to impose burdens and obligations upon Irico beyond

those required by the Federal Rules of Civil Procedure or other applicable rule or Order of this Court.

## SPECIFIC RESPONSES TO INTERROGATORIES

### INTERROGATORY NO. 1

To the extent that your answer to any of DPP Arch Electronics Inc.'s First Set of Requests for Admission to Irico Group Corporation and Irico Display Devices, Co. Ltd, served herewith, is anything other than an unqualified admission:

      (a)      State the facts that You rely on to support Your denial or partial denial;

      (b)      Identify each Person You contend has knowledge of facts that support Your denial or partial denial; and

      (c)      Identify each Document You contend supports Your denial or partial denial.

### RESPONSE TO INTERROGATORY NO. 1

Irico reasserts and incorporates each of the General Objections and Objections to the Definitions and Instructions set forth above. Irico also reasserts and incorporates each of the General Objections, Objections to the Definitions and Instructions, and objections in each of its Specific Responses to Requests for Admission as set forth in Irico Defendants' Objections and Responses to Direct Purchaser Plaintiff Arch Electronic, Inc.'s First Set of Requests for Admission, served herewith. Irico further objects to this interrogatory as overbroad and unduly burdensome, as Plaintiff has not demonstrated how the benefit of such information outweighs the significant burden to Irico of responding to each denial of the 167 RFAs propounded by Plaintiffs.

Subject to and without waiving the foregoing objections, Irico responds as follows:

### RESPONSE RE: REQUEST FOR ADMISSION NO. 1

In addition to Irico's General Objections, which Irico incorporates by reference, Irico specifically objects to this Interrogatory on the grounds that it is overbroad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and seeks information that is maintained by and equally available to Plaintiffs or stated in publicly available documents. Irico also objects to this Interrogatory on the grounds that it calls for a legal argument or legal

1   conclusion. Irico further objects to the use of the terms "unqualified," "knowledge," and

2   "support" because they are vague and ambiguous, rendering this Interrogatory overbroad, unduly

3   burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Irico

4   also objects to this Interrogatory to the extent it improperly tries to shift the evidentiary burden

5   that Plaintiffs alone carry to Irico. Irico further objects to this Interrogatory as it requests Irico to

6   provide facts and evidence of events that did not take place.

7        Subject to and without waiving the objections stated above and pursuant to FRCP 33(d)

8   and not limited to the following, Irico states that despite the Interrogatory's demand for proof of

9   facts and evidence of events that did not take place, Irico relies on the following evidence:

10  Irico Defendants' Second Supplemental Objections and Responses to Direct Purchaser Plaintiffs'

11  First Set of Interrogatories, May 3, 2021; Rule 30(b)(6) Deposition of Irico Group Corp. and Irico

12  Display Devices Co., Ltd., March 6-8, 2019; Expert Report of Robert D. Willig, December 17,

13  2012; Expert Report of Janusz A. Ordover, Ph.D., (IPP Report), August 5, 2014; Expert Report of

14  Janusz A. Ordover, Ph. D., (Various DAP Reports); Expert Report of Robert D. Willig, August 5,

15  2014; Expert Report of Margaret E. Guerin-Calvert, August 5, 2014; and Expert Report of Prof.

16  Dennis W. Carlton, August 5, 2014.

17        Irico identifies the following employees as having knowledge regarding this Interrogatory:

18  Wang Zhaojie and Su Xiaohua.

19        **SUPPLEMENTAL RESPONSE RE: REQUEST FOR ADMISSION NO. 1**

20        In addition to Irico's General Objections, which Irico incorporates by reference, Irico

21  specifically objects to this Interrogatory on the grounds that it is overbroad, unduly burdensome,

22  that is maintained by and equally available to Plaintiffs or stated in publicly available documents.

23  Irico also objects to this Interrogatory on the grounds that it calls for a legal argument or legal

24  conclusion. Irico further objects to the use of the terms "unqualified," "knowledge," and "support"

25  because they are vague and ambiguous, rendering this Interrogatory overbroad, unduly burdensome,

26  and not reasonably calculated to lead to the discovery of admissible evidence. Irico also objects to

27  this Interrogatory to the extent it improperly tries to shift the evidentiary burden that Plaintiffs alone

28  carry to Irico. Irico further objects to this Interrogatory as it requests Irico to provide facts and

1    evidence of events that did not take place. Irico does not intend, and its Response should not be

2    construed as, an agreement or acquiescence as to the admissibility of any document or fact

3    contained in or implied by Irico's Response.

4         Subject to and without waiving the objections stated above and not limited to the following,

5    Irico states that despite the Interrogatory's demand for proof of facts and evidence of events that did

6    not take place, Irico relies on the following evidence: Irico Response to Plaintiffs' Conspiracy

7    Proffer to Special Master at 2-8, (April 11, 2022); Wang Dep. Tr. (Mar. 8, 2019), at 60:3-21, 69:8-

8    14; Expert Report of Robert D. Willig at ¶ 12, December 17, 2012; Expert Report of Janusz A.

9    Ordover, Ph.D., (IPP Report) at ¶ 8, August 5, 2014; Expert Report of Janusz A. Ordover, Ph. D.,

10   (Various DAP Reports) at ¶ 7, August 5, 2014; Expert Report of Robert D. Willig at ¶ 9, August 5,

11   2014; Expert Report of Margaret E. Guerin-Calvert at ¶¶ 8-16, August 5, 2014; and Expert Report

12   of Prof. Dennis W. Carlton at ¶ 29, August 5, 2014.

13        Irico identifies the following employees as having knowledge regarding this Interrogatory:

14   Wang Zhaojie.

15   **RESPONSE RE: REQUEST FOR ADMISSION NO. 3**

16        In addition to Irico's General Objections, which Irico incorporates by reference, Irico

17   specifically objects to this Interrogatory on the grounds that it is overbroad, unduly burdensome,

18   not reasonably calculated to lead to the discovery of admissible evidence, and seeks information

19   that is maintained by and equally available to Plaintiffs or stated in publicly available documents.

20   Irico also objects to this Interrogatory on the grounds that it calls for a legal argument or legal

21   conclusion. Irico further objects to the use of the terms "unqualified," "knowledge," and

22   "support" because they are vague and ambiguous, rendering this Interrogatory overbroad, unduly

23   burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Irico

24   also objects to this Interrogatory to the extent it improperly tries to shift the evidentiary burden

25   that Plaintiffs alone carry to Irico. Irico further objects to this Interrogatory as it requests Irico to

26   provide facts and evidence of events that did not take place.

27        Subject to and without waiving the objections stated above, and despite the Interrogatory's

28   demand for proof of facts and evidence of events that did not take place, Irico asserts no evidence

1  has been brought in the above captioned matter that indicates that Irico manufactured, sold, or

2  distributed CRTs in the United States during the class period. In particular, Irico will be

3  producing compilations of its sales records that demonstrate that Irico did not sell CRTs to the

4  United States. Irico also identifies the following evidence under FRCP 33(d): Direct Purchaser

5  Plaintiffs' Supplemental Objections and Responses to Defendants Irico Group Corp. and Irico

6  Display Devices Co., Ltd.'s First Set of Interrogatories to Direct Purchaser Plaintiffs, July 14,

7  2021; Irico Defendants' Sixth Supplemental Objections and Responses to Direct Purchaser

8  Plaintiffs' First Set of Interrogatories, January 7, 2022; Irico Defendants' Third Supplemental

9  Objections and Responses to Indirect Purchaser Plaintiffs' First Set of Interrogatories, January 7,

10  2022; Irico Defendants' Supplemental Objections and Responses to Indirect Purchaser Plaintiffs'

11  Third Set of Interrogatories to Irico Group Corporation and Irico Display Devices Co., Ltd.,

12  January 21, 2022; Wang Dep. Tr. (March 6, 2019) 94:3-97:1; 107:6-14; 109:2-12.

13       Irico identifies the following persons with knowledge regarding this Interrogatory: Wang

14  Zhaojie and Su Xiaohua.

15  **SUPPLEMENTAL RESPONSE RE: REQUEST FOR ADMISSION NO. 3**

16       In addition to Irico's General Objections, which Irico incorporates by reference, Irico

17  specifically objects to this Interrogatory on the grounds that it is overbroad, unduly burdensome,

18  not reasonably calculated to lead to the discovery of admissible evidence, and seeks information

19  that is maintained by and equally available to Plaintiffs or stated in publicly available documents.

20  Irico also objects to this Interrogatory on the grounds that it calls for a legal argument or legal

21  conclusion. Irico further objects to the use of the terms "unqualified," "knowledge," and

22  "support" because they are vague and ambiguous, rendering this Interrogatory overbroad, unduly

23  burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Irico

24  also objects to this Interrogatory to the extent it improperly tries to shift the evidentiary burden that

25  Plaintiffs alone carry to Irico. Irico further objects to this Interrogatory as it requests Irico to provide

26  facts and evidence of events that did not take place. Irico does not intend, and its Response should

27  not be construed as, an agreement or acquiescence as to the admissibility of any document or fact

28  contained in or implied by Irico's Response.

1    Subject to and without waiving the objections stated above, and despite the Interrogatory's

2    demand for proof of facts and evidence of events that did not take place, Irico asserts no evidence

3    has been brought in the above captioned matter that indicates that Irico manufactured, sold, or

4    distributed CRTs in the United States during the class period. In particular, Irico has produced

5    summaries of its sales records that demonstrate that Irico did not sell CRTs to the United States.

6    *See* Summary of Invoice Records produced by Irico on June 2, 2022. Irico also identifies the

7    following evidence: Am. Wang. Decl. in Support of FSIA MTD, ¶¶ 12, 16-17 (March 19, 2019);

8    Direct Purchaser Plaintiffs' Supplemental Objections and Responses to Defendants Irico Group

9    Corp. and Irico Display Devices Co., Ltd.'s First Set of Interrogatories to Direct Purchaser

10   Plaintiffs, July 14, 2021; Irico Defendants' Sixth Supplemental Objections and Responses to

11   Direct Purchaser Plaintiffs' First Set of Interrogatories, at 17-18, 20-21, January 7, 2022; Irico

12   Defendants' Third Supplemental Objections and Responses to Indirect Purchaser Plaintiffs' First

13   Set of Interrogatories, January 7, 2022; Irico Defendants' Supplemental Objections and

14   Responses to Indirect Purchaser Plaintiffs' Third Set of Interrogatories to Irico Group

15   Corporation and Irico Display Devices Co., Ltd., at 11-13, January 21, 2022; Wang Dep. Tr.

16   (March 6, 2019) 94:3-97:1; 107:6-14; 109:2-12.

17   Irico identifies the following persons with knowledge regarding this Interrogatory: Wang

18   Zhaojie and Yan Yunlong.

19   **RESPONSE RE: REQUEST FOR ADMISSION NO. 4**

20   In addition to Irico's General Objections, which Irico incorporates by reference, Irico

21   specifically objects to this Interrogatory on the grounds that it is overbroad, unduly burdensome,

22   not reasonably calculated to lead to the discovery of admissible evidence, and seeks information

23   that is maintained by and equally available to Plaintiffs or stated in publicly available documents.

24   Irico also objects to this Interrogatory on the grounds that it calls for a legal argument or legal

25   conclusion. Irico further objects to the use of the terms "unqualified," "knowledge," and

26   "support" because they are vague and ambiguous, rendering this Interrogatory overbroad, unduly

27   burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Irico

28   also objects to this Interrogatory to the extent it improperly tries to shift the evidentiary burden

1   that Plaintiffs alone carry to Irico. Irico further objects to this Interrogatory as it requests Irico to

2   provide facts and evidence of events that did not take place.

3           Subject to and without waiving the objections stated above, and despite the Interrogatory's

4   demand for proof of facts and evidence of events that did not take place, Irico asserts no evidence

5   has been brought in the above captioned matter that indicates that Irico manufactured, sold, or

6   distributed CRTs in the United States during the class period. In particular, Irico will be

7   producing compilations of its sales records that demonstrate that Irico did not sell CRTs to the

8   United States. Irico also identifies the following evidence under FRCP 33(d): Direct Purchaser

9   Plaintiffs' Supplemental Objections and Responses to Defendants Irico Group Corp. and Irico

10  Display Devices Co., Ltd.'s First Set of Interrogatories to Direct Purchaser Plaintiffs, July 14,

11  2021; Irico Defendants' Sixth Supplemental Objections and Responses to Direct Purchaser

12  Plaintiffs' First Set of Interrogatories, January 7, 2022; Irico Defendants' Third Supplemental

13  Objections and Responses to Indirect Purchaser Plaintiffs' First Set of Interrogatories, January 7,

14  2022; Irico Defendants' Supplemental Objections and Responses to Indirect Purchaser Plaintiffs'

15  Third Set of Interrogatories to Irico Group Corporation and Irico Display Devices Co., Ltd.,

16  January 21, 2022; Wang Dep. Tr. (March 6, 2019) 94:3-97:1; 107:6-14; 109:2-12.

17          Irico identifies the following persons with knowledge regarding this Interrogatory: Wang

18  Zhaojie and Su Xiaohua.

19          **SUPPLEMENTAL RESPONSE RE: REQUEST FOR ADMISSION NO. 4**

20          In addition to Irico's General Objections, which Irico incorporates by reference, Irico

21  specifically objects to this Interrogatory on the grounds that it is overbroad, unduly burdensome,

22  not reasonably calculated to lead to the discovery of admissible evidence, and seeks information

23  that is maintained by and equally available to Plaintiffs or stated in publicly available documents.

24  Irico also objects to this Interrogatory on the grounds that it calls for a legal argument or legal

25  conclusion. Irico further objects to the use of the terms "unqualified," "knowledge," and

26  "support" because they are vague and ambiguous, rendering this Interrogatory overbroad, unduly

27  burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Irico

28  also objects to this Interrogatory to the extent it improperly tries to shift the evidentiary burden

1  that Plaintiffs alone carry to Irico. Irico further objects to this Interrogatory as it requests Irico to

2  provide facts and evidence of events that did not take place. Irico does not intend, and its

3  Responses should not be construed as, an agreement or acquiescence as to the admissibility of

4  any document or fact contained in or implied by Irico's Response.

5      Subject to and without waiving the objections stated above, and despite the Interrogatory's

6  demand for proof of facts and evidence of events that did not take place, Irico asserts no evidence

7  has been brought in the above captioned matter that indicates that Irico manufactured, sold, or

8  distributed CRTs in the United States during the class period. In particular, Irico has produced

9  summaries of its sales records that demonstrate that Irico did not sell CRTs to the United States.

10  *See* Summary of Invoice Records produced by Irico on June 2, 2022. Irico also identifies the

11  following evidence: Am. Wang. Decl. in Support of FSIA MTD, ¶¶ 12, 16-17 (March 19, 2019);

12  Direct Purchaser Plaintiffs' Supplemental Objections and Responses to Defendants Irico Group

13  Corp. and Irico Display Devices Co., Ltd.'s First Set of Interrogatories to Direct Purchaser

14  Plaintiffs, July 14, 2021; Irico Defendants' Sixth Supplemental Objections and Responses to

15  Direct Purchaser Plaintiffs' First Set of Interrogatories, at 17-18, 20-21, January 7, 2022; Irico

16  Defendants' Third Supplemental Objections and Responses to Indirect Purchaser Plaintiffs' First

17  Set of Interrogatories, January 7, 2022; Irico Defendants' Supplemental Objections and

18  Responses to Indirect Purchaser Plaintiffs' Third Set of Interrogatories to Irico Group

19  Corporation and Irico Display Devices Co., Ltd., at 11-13, January 21, 2022; Wang Dep. Tr.

20  (March 6, 2019) 94:3-97:1; 107:6-14; 109:2-12.

21      Irico identifies the following persons with knowledge regarding this Interrogatory: Wang

22  Zhaojie and Yan Yunlong.

23          **RESPONSE RE: REQUEST FOR ADMISSION NO. 5**

24      In addition to Irico's General Objections, which Irico incorporates by reference, Irico

25  specifically objects to this Interrogatory on the grounds that it is overbroad, unduly burdensome,

26  not reasonably calculated to lead to the discovery of admissible evidence, and seeks information

27  that is maintained by and equally available to Plaintiffs or stated in publicly available documents.

28  Irico also objects to this Interrogatory on the grounds that it calls for a legal argument or legal

1    conclusion. Irico further objects to the use of the terms "unqualified," "knowledge," and

2    "support" because they are vague and ambiguous, rendering this Interrogatory overbroad, unduly

3    burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Irico

4    also objects to this Interrogatory to the extent it improperly tries to shift the evidentiary burden

5    that Plaintiffs alone carry to Irico. Irico further objects to this Interrogatory as it requests Irico

6    provide facts and evidence of events that did not take place.

7         Subject to and without waiving the objections stated above, and despite the Interrogatory's

8    demand for proof of facts and evidence of events that did not take place, Irico asserts no evidence

9    has been brought in the above captioned matter that indicates that Irico manufactured, sold, or

10   distributed CRTs in the United States during the class period. In particular, Irico will be

11   producing compilations of its sales records that demonstrate that Irico did not sell CRTs to the

12   United States. Irico also identifies the following evidence under FRCP 33(d): Direct Purchaser

13   Plaintiffs' Supplemental Objections and Responses to Defendants Irico Group Corp. and Irico

14   Display Devices Co., Ltd.'s First Set of Interrogatories to Direct Purchaser Plaintiffs, July 14,

15   2021; Irico Defendants' Sixth Supplemental Objections and Responses to Direct Purchaser

16   Plaintiffs' First Set of Interrogatories, January 7, 2022; Irico Defendants' Third Supplemental

17   Objections and Responses to Indirect Purchaser Plaintiffs' First Set of Interrogatories, January 7,

18   2022; Irico Defendants' Supplemental Objections and Responses to Indirect Purchaser Plaintiffs'

19   Third Set of Interrogatories to Irico Group Corporation and Irico Display Devices Co., Ltd.,

20   January 21, 2022; Wang Dep. Tr. (March 6, 2019) 94:3-97:1; 107:6-14; 109:2-12.

21        Irico identifies the following persons with knowledge regarding this Interrogatory: Wang

22   Zhaojie and Su Xiaohua.

23        **SUPPLEMENTAL RESPONSE RE: REQUEST FOR ADMISSION NO. 5**

24        In addition to Irico's General Objections, which Irico incorporates by reference, Irico

25   specifically objects to this Interrogatory on the grounds that it is overbroad, unduly burdensome,

26   not reasonably calculated to lead to the discovery of admissible evidence, and seeks information

27   that is maintained by and equally available to Plaintiffs or stated in publicly available documents.

28   Irico also objects to this Interrogatory on the grounds that it calls for a legal argument or legal

1   conclusion. Irico further objects to the use of the terms "unqualified," "knowledge," and

2   "support" because they are vague and ambiguous, rendering this Interrogatory overbroad, unduly

3   burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Irico

4   also objects to this Interrogatory to the extent it improperly tries to shift the evidentiary burden

5   that Plaintiffs alone carry to Irico. Irico further objects to this Interrogatory as it requests Irico to

6   provide facts and evidence of events that did not take place. Irico does not intend, and its

7   Response should not be construed as, an agreement or acquiescence as to the admissibility of any

8   document or fact contained in or implied by Irico's Response.

9          Subject to and without waiving the objections stated above, and despite the Interrogatory's

10   demand for proof of facts and evidence of events that did not take place, Irico asserts no evidence

11   has been brought in the above captioned matter that indicates that Irico manufactured, sold, or

12   distributed CRTs in the United States during the class period. In particular, Irico has produced

13   summaries of its sales records that demonstrate that Irico did not sell CRTs to the United States.

14   *See* Summary of Invoice Records produced by Irico on June 2, 2022. Irico also identifies the

15   following evidence: Am. Wang. Decl. in Support of FSIA MTD, ¶¶ 12, 16-17 (March 19, 2019);

16   Direct Purchaser Plaintiffs' Supplemental Objections and Responses to Defendants Irico Group

17   Corp. and Irico Display Devices Co., Ltd.'s First Set of Interrogatories to Direct Purchaser

18   Plaintiffs, July 14, 2021; Irico Defendants' Sixth Supplemental Objections and Responses to

19   Direct Purchaser Plaintiffs' First Set of Interrogatories, at 17-18, 20-21, January 7, 2022; Irico

20   Defendants' Third Supplemental Objections and Responses to Indirect Purchaser Plaintiffs' First

21   Set of Interrogatories, January 7, 2022; Irico Defendants' Supplemental Objections and

22   Responses to Indirect Purchaser Plaintiffs' Third Set of Interrogatories to Irico Group

23   Corporation and Irico Display Devices Co., Ltd., at 11-13, January 21, 2022; Wang Dep. Tr.

24   (March 6, 2019) 94:3-97:1; 107:6-14; 109:2-12.

25          Irico identifies the following persons with knowledge regarding this Interrogatory: Wang

26   Zhaojie and Yan Yunlong.

27          **RESPONSE RE: REQUEST FOR ADMISSION NO. 6**

28          In addition to Irico's General Objections, which Irico incorporates by reference, Irico

1  specifically objects to this Interrogatory on the grounds that it is overbroad, unduly burdensome,

2  not reasonably calculated to lead to the discovery of admissible evidence, and seeks information

3  that is maintained by and equally available to Plaintiffs or stated in publicly available documents.

4  Irico also objects to this Interrogatory on the grounds that it calls for a legal argument or legal

5  conclusion. Irico further objects to the use of the terms "unqualified," "knowledge," and

6  "support" because they are vague and ambiguous, rendering this Interrogatory overbroad, unduly

7  burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Irico

8  also objects to this Interrogatory to the extent it improperly tries to shift the evidentiary burden

9  that Plaintiffs alone carry to Irico. Irico further objects to this Interrogatory as it requests Irico to

10 provide facts and evidence of events that did not take place.

11         Subject to and without waiving the objections stated above, and despite the Interrogatory's

12 demand for proof of facts and evidence of events that did not take place, Irico asserts no evidence

13 has been brought in the above captioned matter that indicates that Irico manufactured, sold, or

14 distributed CRTs in the United States during the class period. In particular, Irico will be

15 producing compilations of its sales records that demonstrate that Irico did not sell CRTs to the

16 United States. Irico also identifies the following evidence under FRCP 33(d): Direct Purchaser

17 Plaintiffs' Supplemental Objections and Responses to Defendants Irico Group Corp. and Irico

18 Display Devices Co., Ltd.'s First Set of Interrogatories to Direct Purchaser Plaintiffs, July 14,

19 2021; Irico Defendants' Sixth Supplemental Objections and Responses to Direct Purchaser

20 Plaintiffs' First Set of Interrogatories, January 7, 2022; Irico Defendants' Third Supplemental

21 Objections and Responses to Indirect Purchaser Plaintiffs' First Set of Interrogatories, January 7,

22 2022; Irico Defendants' Supplemental Objections and Responses to Indirect Purchaser Plaintiffs'

23 Third Set of Interrogatories to Irico Group Corporation and Irico Display Devices Co., Ltd.,

24 January 21, 2022; Wang Dep. Tr. (March 6, 2019) 94:3-97:1; 107:6-14; 109:2-12.

25         Irico identifies the following persons with knowledge regarding this Interrogatory: Wang

26 Zhaojie and Su Xiaohua.

27         **SUPPLEMENTAL RESPONSE RE: REQUEST FOR ADMISSION NO. 6**

28

In addition to Irico's General Objections, which Irico incorporates by reference, Irico specifically objects to this Interrogatory on the grounds that it is overbroad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and seeks information that is maintained by and equally available to Plaintiffs or stated in publicly available documents. Irico also objects to this Interrogatory on the grounds that it calls for a legal argument or legal conclusion. Irico further objects to the use of the terms "unqualified," "knowledge," and "support" because they are vague and ambiguous, rendering this Interrogatory overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Irico also objects to this Interrogatory to the extent it improperly tries to shift the evidentiary burden that Plaintiffs alone carry to Irico. Irico further objects to this Interrogatory as it requests Irico to provide facts and evidence of events that did not take place. Irico does not intend, and its Response should not be construed as, an agreement or acquiescence as to the admissibility of any document or fact contained in or implied by Irico's Response.

Subject to and without waiving the objections stated above, and despite the Interrogatory's demand for proof of facts and evidence of events that did not take place, Irico asserts no evidence has been brought in the above captioned matter that indicates that Irico manufactured, sold, or distributed CRTs in the United States during the class period. In particular, Irico has produced summaries of its sales records that demonstrate that Irico did not sell CRTs to the United States. *See* Summary of Invoice Records produced by Irico on June 2, 2022. Irico also identifies the following evidence: Am. Wang. Decl. in Support of FSIA MTD, ¶¶ 12, 16-17 (March 19, 2019); Direct Purchaser Plaintiffs' Supplemental Objections and Responses to Defendants Irico Group Corp. and Irico Display Devices Co., Ltd.'s First Set of Interrogatories to Direct Purchaser Plaintiffs, July 14, 2021; Irico Defendants' Sixth Supplemental Objections and Responses to Direct Purchaser Plaintiffs' First Set of Interrogatories, at 17-18, 20-21, January 7, 2022; Irico Defendants' Third Supplemental Objections and Responses to Indirect Purchaser Plaintiffs' First Set of Interrogatories, January 7, 2022; Irico Defendants' Supplemental Objections and Responses to Indirect Purchaser Plaintiffs' Third Set of Interrogatories to Irico Group

1  Corporation and Irico Display Devices Co., Ltd., at 11-13, January 21, 2022; Wang Dep. Tr.

2  (March 6, 2019) 94:3-97:1; 107:6-14; 109:2-12.

3      Irico identifies the following persons with knowledge regarding this Interrogatory: Wang

4  Zhaojie and Yan Yunlong.

5          **RESPONSE RE: REQUEST FOR ADMISSION NO. 7**

6      In addition to Irico's General Objections, which Irico incorporates by reference, Irico

7  specifically objects to this Interrogatory on the grounds that it is overbroad, unduly burdensome,

8  not reasonably calculated to lead to the discovery of admissible evidence, and seeks information

9  that is maintained by and equally available to Plaintiffs or stated in publicly available documents.

10  Irico also objects to this Interrogatory on the grounds that it calls for a legal argument or legal

11  conclusion. Irico further objects to the use of the terms "unqualified," "knowledge," and

12  "support" because they are vague and ambiguous, rendering this Interrogatory overbroad, unduly

13  burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Irico

14  also objects to this Interrogatory to the extent it improperly tries to shift the evidentiary burden

15  that Plaintiffs alone carry to Irico. Irico further objects to this Interrogatory as it requests Irico to

16  provide facts and evidence of events that did not take place.

17      Subject to and without waiving the objections stated above, and despite the Interrogatory's

18  demand for proof of facts and evidence of events that did not take place, Irico asserts no evidence

19  has been brought in the above captioned matter that indicates that Irico manufactured, sold, or

20  distributed CRTs in the United States during the class period. In particular, Irico will be

21  producing compilations of its sales records that demonstrate that Irico did not sell CRTs to the

22  United States. Irico also identifies the following evidence under FRCP 33(d): Direct Purchaser

23  Plaintiffs' Supplemental Objections and Responses to Defendants Irico Group Corp. and Irico

24  Display Devices Co., Ltd.'s First Set of Interrogatories to Direct Purchaser Plaintiffs, July 14,

25  2021; Irico Defendants' Sixth Supplemental Objections and Responses to Direct Purchaser

26  Plaintiffs' First Set of Interrogatories, January 7, 2022; Irico Defendants' Third Supplemental

27  Objections and Responses to Indirect Purchaser Plaintiffs' First Set of Interrogatories, January 7,

28  2022; Irico Defendants' Supplemental Objections and Responses to Indirect Purchaser Plaintiffs'

1   Third Set of Interrogatories to Irico Group Corporation and Irico Display Devices Co., Ltd.,

2   January 21, 2022; Rule 30(b)(6) Deposition of Irico Group Corp. and Irico Display Devices Co.,

3   Ltd., March 6-8, 2019.

4        Irico identifies the following persons with knowledge regarding this Interrogatory: Wang

5   Zhaojie and Su Xiaohua.

6        **SUPPLEMENTAL RESPONSE RE: REQUEST FOR ADMISSION NO. 7**

7        In addition to Irico's General Objections, which Irico incorporates by reference, Irico

8   specifically objects to this Interrogatory on the grounds that it is overbroad, unduly burdensome,

9   not reasonably calculated to lead to the discovery of admissible evidence, and seeks information

10  that is maintained by and equally available to Plaintiffs or stated in publicly available documents.

11  Irico also objects to this Interrogatory on the grounds that it calls for a legal argument or legal

12  conclusion. Irico further objects to the use of the terms "unqualified," "knowledge," and

13  "support" because they are vague and ambiguous, rendering this Interrogatory overbroad, unduly

14  burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Irico

15  also objects to this Interrogatory to the extent it improperly tries to shift the evidentiary burden

16  that Plaintiffs alone carry to Irico. Irico further objects to this Interrogatory as it requests Irico to

17  provide facts and evidence of events that did not take place. Irico does not intend, and its

18  Response should not be construed as, an agreement or acquiescence as to the admissibility of any

19  document or fact contained in or implied by Irico's Response.

20       Subject to and without waiving the objections stated above, and despite the Interrogatory's

21  demand for proof of facts and evidence of events that did not take place, Irico asserts no evidence

22  has been brought in the above captioned matter that indicates that Irico manufactured, sold, or

23  distributed CRTs in the United States during the class period. In particular, Irico has produced

24  summaries of its sales records that demonstrate that Irico did not sell CRTs to the United States.

25  *See* Summary of Invoice Records produced by Irico on June 2, 2022. Irico also identifies the

26  following evidence: Am. Wang. Decl. in Support of FSIA MTD, ¶¶ 12, 16-17 (March 19, 2019);

27  Direct Purchaser Plaintiffs' Supplemental Objections and Responses to Defendants Irico Group

28  Corp. and Irico Display Devices Co., Ltd.'s First Set of Interrogatories to Direct Purchaser

1  Plaintiffs, July 14, 2021; Irico Defendants' Sixth Supplemental Objections and Responses to

2  Direct Purchaser Plaintiffs' First Set of Interrogatories, at 17-18, 20-21, January 7, 2022; Irico

3  Defendants' Third Supplemental Objections and Responses to Indirect Purchaser Plaintiffs' First

4  Set of Interrogatories, January 7, 2022; Irico Defendants' Supplemental Objections and

5  Responses to Indirect Purchaser Plaintiffs' Third Set of Interrogatories to Irico Group

6  Corporation and Irico Display Devices Co., Ltd., at 11-13, January 21, 2022; Wang Dep. Tr.

7  (March 6, 2019) 94:3-97:1; 107:6-14; 109:2-12.

8        Irico identifies the following persons with knowledge regarding this Interrogatory: Wang

9  Zhaojie and Yan Yunlong.

10 **INTERROGATORY NO. 2**

11       Describe Irico's relationship with former employees including any obligations owed by

12 former employees to Irico, conditions imposed on severance or retirement benefit eligibility, or

13 similar policies and procedures.

14 **RESPONSE TO INTERROGATORY NO. 2**

15       Irico reasserts and incorporates each of the General Objections and Objections to the

16 Definitions and Instructions set forth above. Irico further objects to this interrogatory as

17 overbroad and unduly burdensome, as Plaintiff has not demonstrated how the benefit of such

18 information outweighs the significant burden to Irico of requiring the company to search through

19 historical records for such information. Irico also objects to this interrogatory to the extent it

20 purports to request information beyond the possession, custody, or control of Irico Group or Irico

21 Display, including but not limited to information in the possession of non-parties where Irico

22 lacks any duty to obtain or otherwise search for the information and for whom the Court lacks

23 personal jurisdiction. Irico further objects that this interrogatory is duplicative and cumulative of

24 other requests served on Irico, including but not limited to: Interrogatory No. 6 of Indirect

25 Purchaser Plaintiffs' Third Set of Interrogatories. Such duplicative and cumulative requests

26 violate the Order Re Discovery And Case Management Protocol, ECF No. 1128. *See* Order Re

27 Plaintiffs' Motions To Compel Supplemental Discovery From Toshiba And Panasonic, ECF No.

28 4128, at 4 ("The Discovery Protocol (ECF No 1128), requires parties to coordinate discovery and

1   not file duplicative discovery. . . . The benefit redounds to all parties on both sides of the

2   litigation, by conserving the efforts required by plaintiffs and protecting defendants against

3   unnecessary duplication of effort.") (Report and Recommendation adopted in full at ECF No.

4   4256).

5        Subject to and without waiving the objections stated above, Irico responds that no

6   relationship exists with former employees. When an employee ends his employment with Irico,

7   his/her employment files are transferred to either the employees' new employer or, in the case of

8   employees who retire from Irico, the archive management agency of the government of the

9   People's Republic of China. When an employee retires from Irico, and his/her pension and other

10  benefits are paid directly by the government of the People's Republic of China. Irico cannot

11  impose conditions on severance or retirement benefit eligibility.

12  **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 2**

13       Irico reasserts and incorporates each of the General Objections and Objections to the

14  Definitions and Instructions set forth above. Irico further objects to this interrogatory as

15  overbroad and unduly burdensome, as Plaintiff has not demonstrated how the benefit of such

16  information outweighs the significant burden to Irico of requiring the company to search through

17  historical records for such information. Irico also objects to this interrogatory to the extent it

18  purports to request information beyond the possession, custody, or control of Irico Group or Irico

19  Display, including but not limited to information in the possession of non-parties where Irico

20  lacks any duty to obtain or otherwise search for the information and for whom the Court lacks

21  personal jurisdiction. Irico further objects that this interrogatory is duplicative and cumulative of

22  other requests served on Irico, including but not limited to: Interrogatory No. 6 of Indirect

23  Purchaser Plaintiffs' Third Set of Interrogatories. Such duplicative and cumulative requests

24  violate the Order Re Discovery And Case Management Protocol, ECF No. 1128. See Order Re

25  Plaintiffs' Motions To Compel Supplemental Discovery From Toshiba And Panasonic, ECF No.

26  4128, at 4 ("The Discovery Protocol (ECF No 1128), requires parties to coordinate discovery and

27  not file duplicative discovery. . . . The benefit redounds to all parties on both sides of the

28  litigation, by conserving the efforts required by plaintiffs and protecting defendants against

IRICO'S SUPP. RESPONSES TO DPP ARCH     20     Master File No. 07-cv-05944-JST
ELECTRONICS INC.'S FIRST SET     MDL No. 1917
INTERROGATORIES

1    unnecessary duplication of effort.") (Report and Recommendation adopted in full at ECF No.

2    4256). As discussed in its June 23, 2022 Letter to Direct Purchaser Plaintiffs, Irico is agreeing to

3    provide this supplement in response to specific questions raised in Direct Purchaser Plaintiffs'

4    May 19, 2022 Letter, but Irico denies that its original response was in any way deficient, or that

5    the information contained in the supplement is in any way responsive to this Interrogatory.

6         Subject to and without waiving the foregoing objections, Irico is providing additional

7    information regarding two groups listed as the "current department" of certain former Irico

8    employees in previously produced personnel records. Specifically, Plaintiffs requested

9    information regarding the role of the Job Transfer and Settlement Group at Irico New Energy and

10   the Office for Managing Retirees and Former Employees at China National Electronics Import &

11   Export Caihong Co. ("CNEIECC"). Irico has confirmed that the employees at issue are not

12   currently employed by the Transfer and Settlement Group nor the Office for Managing Retirees;

13   they are all former employees of Irico and have never worked for or in one of these groups.

14   Rather, when an employee retires from Irico, his or her internal records may indicate that he has

15   been assigned to one of these groups to reflect the nature of his or her separation from Irico.

16   Neither of these groups has any role in managing retiree pensions or other benefits.

17        The Job Transfer and Settlement Group is a temporary working group established at Irico

18   New Energy (formerly Irico Electronics) to handle significant employee disruption in 2018 due to

19   a restructuring of the business. As a result of this restructuring, the Job Transfer and Settlement

20   Group was responsible for identifying new roles within Irico, potential transfers to non-Irico

21   companies, or early retirement for affected employees. A listing of the Job Transfer and

22   Settlement Group as the "current department" on a former employee's personnel record indicates

23   that the Group was involved in planning and facilitating his or her departure from Irico. This

24   Group has no ongoing relationship with or responsibilities relating to departed Irico employees.

25        The Office for Managing Retirees and Former Employees (the "Office") was initially

26   formed under Irico Group, with its functions transferred to CNEIECC in the past few years after

27   CNEIECC was acquired by Irico Group. The Office has no relation to the export business

28   conducted by CNEIECC prior to 2004 while it was an independent company. The Office is

1   designated by Irico Group's Human Resources department to post notices and announcements
2   received from the Chinese government social security agency for the benefit of the local retiree
3   community. A listing of the Office for Managing Retirees and Former Employees as the "current
4   department" on a former employee's personnel record indicates that the employee retired from
5   Irico Group or one of its subsidiaries, rather than leaving for another company or separating for
6   other reasons, such as disability or termination.

7   **INTERROGATORY NO. 3**

8       Do you contend that the market for CPTs was the same market, or a separate market,
9   from the market for CDTs?

10      (a)     State the facts that You rely on to support Your contention;

11      (b)     Identify each Person You contend has knowledge of facts that support
12              Your contention; and

13      (c)     Identify each Document You contend supports Your contention.

14   **RESPONSE TO INTERROGATORY NO. 3**

15      Irico reasserts and incorporates each of the General Objections and Objections to the
16   Definitions and Instructions set forth above. Irico further objects that this Interrogatory is a
17   contention interrogatory, served before fact depositions and/or expert analysis and disclosures.
18   Irico asserts that such discovery is premature given that no Irico witnesses have been deposed
19   relating to merits issues and expert analysis and disclosures are not contemplated by the Court's
20   schedule at this time. *See Young v. Regis Corp.*, No. C 10-02634 SI, 2011 WL 9558055 (N.D.
21   Cal. May 19, 2011). In particular, this Interrogatory concerning market definition for CRTs
22   particularly implicates antitrust law and expert analysis, and is not ripe for a response at this stage
23   of the litigation. Irico reserves all rights to further supplement its responses at an appropriate time
24   following the substantial completion of other fact and expert discovery. Irico also objects to this
25   Interrogatory to the extent it improperly tries to shift the evidentiary burden that Plaintiffs alone
26   carry to Irico.

27      Subject to and without waiving the foregoing objections, Irico identifies the following
28   evidence under FRCP 33(d): Expert Report of Robert D. Willig, December 17, 2012; Expert

IRICO'S SUPP. RESPONSES TO DPP ARCH        22        Master File No. 07-cv-05944-JST
ELECTRONICS INC.'S FIRST SET                        MDL No. 1917
INTERROGATORIES

1  Report of Janusz A. Ordover, Ph.D., (IPP Report), August 5, 2014; Expert Report of Janusz A.

2  Ordover, Ph. D., (Various DAP Reports); Expert Report of Robert D. Willig, August 5, 2014;

3  Expert Report of Margaret E. Guerin-Calvert, August 5, 2014; and Expert Report of Prof. Dennis

4  W. Carlton, August 5, 2014.

5  **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 3**

6         Irico reasserts and incorporates each of the General Objections and Objections to the

7  Definitions and Instructions set forth above. Irico further objects that this Interrogatory is a

8  contention interrogatory, served before fact depositions and/or expert analysis and disclosures.

9  Irico asserts that such discovery is premature given that no Irico witnesses have been deposed

10  relating to merits issues and expert analysis and disclosures are not contemplated by the Court's

11  schedule at this time. *See Young v. Regis Corp.*, No. C 10-02634 SI, 2011 WL 9558055 (N.D.

12  Cal. May 19, 2011). In particular, this Interrogatory concerning market definition for CRTs

13  particularly implicates antitrust law and expert analysis, and is not ripe for a response at this stage

14  of the litigation. Irico reserves all rights to further supplement its responses at an appropriate time

15  following the substantial completion of other fact and expert discovery. Irico also objects to this

16  Interrogatory to the extent it improperly tries to shift the evidentiary burden that Plaintiffs alone

17  carry to Irico. Irico does not intend, and its Responses should not be construed as, an agreement

18  or acquiescence as to the admissibility of any document or fact contained in or implied by Irico's

19  Response.

20         Subject to and without waiving the foregoing objections, Irico contends that there were

21  separate markets for CPTs and CDTs. Irico identifies the following supporting evidence for this

22  contention: Wang Dep. Tr. (March 7, 2019) 73:5-79:3; Heiser (Hitachi) Dep. 46:24-47:23;

23  Michael Son (SDI) Dep. 318:20-319:9; Jae In Lee (SDI) Dep. 212:1-213:2; Chih Chun Liu

24  (Chunghwa) Dep. 502:2-19; Expert Report of Robert D. Willig at ¶ 16, August 5, 2014; Expert

25  Report of Guerin-Calvert at ¶¶ 17-20, August 5, 2014; Expert Report of Jeffrey J. Leitzinger at ¶¶

26  64-81, November 6, 2014; Expert Report of Jeffrey J. Leitzinger at ¶¶ 16-21, September 1, 2016;

27  Expert Report of Phillip M. Johnson at ¶¶ 72-92, November 19, 2021.

28         Irico identifies the following persons with knowledge regarding this Interrogatory:  Wang

1   Zhaojie.

2   **INTERROGATORY NO. 6**

3        Do you contend that Your contacts with other CRT manufacturers had lawful,

4   competitive purposes, for each contact? If so:

5           (a)     State the facts that You rely on to support Your contention;

6           (b)     Identify each Person You contend has knowledge of facts that support Your

7                    contention; and

8           (c)     Identify each Document You contend supports Your contention.

9   **RESPONSE TO INTERROGATORY NO. 6**

10        Irico reasserts and incorporates each of the General Objections and Objections to the

11   Definitions and Instructions set forth above. Irico further objects that this Interrogatory is a

12   contention interrogatory, served before fact depositions and/or expert analysis and disclosures.

13   Irico asserts that such discovery is premature given that no Irico witnesses have been deposed

14   relating to merits issues and expert analysis and disclosures are not contemplated by the Court's

15   schedule at this time. *See Young v. Regis Corp.*, No. C 10-02634 SI, 2011 WL 9558055 (N.D.

16   Cal. May 19, 2011). Irico also objects to this interrogatory on the ground that it calls for a legal

17   argument or legal conclusion. Irico further objects to this interrogatory to the extent that it

18   improperly tries to shift the pleading and evidentiary burden that Plaintiffs alone carry to Irico.

19        Subject to and without waiving the foregoing objections, Irico identifies the following

20   evidence under FRCP 33(d): Expert Report of Robert D. Willig, December 17, 2012; Expert

21   Report of Janusz A. Ordover, Ph.D., (IPP Report), August 5, 2014; Expert Report of Janusz A.

22   Ordover, Ph. D., (Various DAP Reports); Expert Report of Robert D. Willig, August 5, 2014;

23   Expert Report of Margaret E. Guerin-Calvert, August 5,/* 2014; and Expert Report of Prof.

24   Dennis W. Carlton, August 5, 2014; Rule 30(b)(6) Deposition of Irico Group Corp. and Irico

25   Display Devices Co., Ltd., March 6-8, 2019; Reply Brief of Irico In Support of Motion to Set

26   Aside Default at 10-11, ECF No. 5229; Exs. A – F to the Declaration of Stuart C. Plunkett in

27   Support of Motion to Set Aside Default, ECF Nos. 5229-02 through -07; IRI-CRT-00031457.

28

IRICO'S SUPP. RESPONSES TO DPP ARCH     24     Master File No. 07-cv-05944-JST
ELECTRONICS INC.'S FIRST SET                           MDL No. 1917
INTERROGATORIES

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 6**

Irico reasserts and incorporates each of the General Objections and Objections to the Definitions and Instructions set forth above. Irico further objects that this Interrogatory is a contention interrogatory, served before fact depositions and/or expert analysis and disclosures. Irico asserts that such discovery is premature given that no Irico witnesses have been deposed relating to merits issues and expert analysis and disclosures are not contemplated by the Court's schedule at this time. *See Young v. Regis Corp.*, No. C 10-02634 SI, 2011 WL 9558055 (N.D. Cal. May 19, 2011). Irico also objects to this interrogatory on the ground that it calls for a legal argument or legal conclusion. Irico further objects to this interrogatory to the extent that it improperly tries to shift the pleading and evidentiary burden that Plaintiffs alone carry to Irico. Irico also objects to this interrogatory to the extent that it attempts to ascribe an unlawful or anticompetitive purpose to Irico contacts with CRT manufacturers that were mere exchanges of information, which are lawful in the absence of additional evidence that an agreement to engage in unlawful conduct resulted from, or was a part of, the information exchange. *See USA v. Penn et al* (Doc no. 1232, at ¶ 21, D. Colo. 1:20-cr-00152-PAB). Irico does not intend, and its Response should not be construed as, an agreement or acquiescence as to the admissibility of any document or fact contained in or implied by Irico's Response.

Subject to and without waiving the foregoing objections, Irico identifies the following evidence: Expert Report of Robert D. Willig at ¶ 8, December 17, 2012; Expert Report of Robert D. Willig at ¶¶ 57-61, August 5, 2014; Expert Report of Margaret E. Guerin-Calvert at ¶¶ 90-98, August 5, 2014; Expert Report of Prof. Dennis W. Carlton at ¶¶ 64, 68, August 5, 2014; Expert Report of Donald Clarke at ¶¶6-7, March 16, 2022; Wang Dep. Tr. (Mar. 8, 2019), at 43:5-15, 57:8-10, 64:14-21, 75:7-11; Reply Brief of Irico In Support of Motion to Set Aside Default at 10-11, ECF No. 5229; Exs. A – F to the Declaration of Stuart C. Plunkett in Support of Motion to Set Aside Default, ECF Nos. 5229-02 through -07; Irico Response to Plaintiffs' Conspiracy Proffer to Special Master at 2-8, (April 11, 2022); BMCC-CRT000113367; BMCC-CRT000113368; BMCC-CRT000113372; BMCC-CRT000113374; BMCC-CRT000113378;  BMCC-CRT000113379; BMCC-CRT000113380; BMCC-CRT000113381; BMCC-CRT000113382;

1  BMCC-CRT000113389; BMCC-CRT000113392; BMCC-CRT000113393; BMCC-

2  CRT000113394;  BMCC-CRT000113395 to 416. Irico further identifies the following evidence

3  under FRCP 33(d): IRI-CRT-00010133; IRI-CRT-00010449; IRI-CRT-00010468; IRI-CRT-

4  00026812; IRI-CRT-00030226; IRI-CRT-00030865; IRI-CRT-00031457; IRI-CRT-00004673;

5  IRI-CRT-00008191; IRI-CRT-00008248; IRI-CRT-00008664; IRI-CRT-00018191; IRI-CRT-

6  00024165; IRI-CRT-00024204; IRI-CRT-00024613.

7  **INTERROGATORY NO. 16**

8      As to Your contention in the Second Defense set forth in Your Answer that Direct

9  Purchaser Plaintiffs' claims are barred because Plaintiffs have failed to allege facts sufficient to

10  support a claim under the Foreign Trade Antitrust Improvements Act, 15 U.S.C. § 6a:

11      (a)    State the facts that You rely on to support Your contention;

12      (b)    Identify each Person You contend has knowledge of facts that support Your

13              contention; and

14      (c)    Identify each Document You contend supports Your contention; and

15      (d)    Identify the damages, if any, Plaintiffs claim based on sales outside of the United

16              States

17  **RESPONSE TO INTERROGATORY NO. 16**

18      Irico reasserts and incorporates each of the General Objections and Objections to the

19  Definitions and Instructions set forth above. Irico further objects that this Interrogatory is a

20  contention interrogatory, served before fact depositions and/or expert analysis and disclosures.

21  Irico asserts that such discovery is premature given that no Irico witnesses have been deposed

22  relating to merits issues and expert analysis and disclosures are not contemplated by the Court's

23  schedule at this time. *See Young v. Regis Corp.*, No. C 10-02634 SI, 2011 WL 9558055 (N.D.

24  Cal. May 19, 2011). Irico also objects to this interrogatory on the ground that it calls for a legal

25  argument or legal conclusion. Irico further objects to this interrogatory to the extent that it

26  improperly tries to shift the pleading and evidentiary burden that Plaintiffs alone carry to Irico.

27  Irico also objects to this Interrogatory to the extent it improperly tries to shift the evidentiary

28  burden that Plaintiffs alone carry to Irico.

1    Subject to and without waiving the objections stated above, Irico contends that Plaintiffs

2  have failed to allege facts sufficient to support a claim under the Foreign Trade Antitrust

3  Improvements Act ("FTAIA"), 15 U.S.C. § 6a. At all relevant times, the North American CRT

4  market was unique and separate from other foreign markets, including China. In supporting its

5  claims, Plaintiffs rely on alleged meetings and communications that occurred outside the United

6  States that discuss and relate to CRTs sold outside the United States. Plaintiffs have not

7  established how it is entitled to any relief under FTAIA based on their purchases of either CRT

8  products outside of the United States or their purchase of CRT products containing CRTs

9  manufactured and/or purchased outside the United States. Irico also identifies the following

10  evidence under FRCP 33(d): Irico Group Corporation's Amended Motion to Dismiss Claims of

11  Direct Purchaser Plaintiffs for Lack of Subject Matter Jurisdiction (Fed. R. Civ. P. 12(b)(1)),

12  March 19, 2019; Irico Display Devices Co., Ltd.'s Amended Motion to Dismiss Claims of Direct

13  Purchaser Plaintiffs for Lack of Subject Matter Jurisdiction (Fed. R. Civ. P. 12(b)(1)), March 19,

14  2019; Irico Defendants' Reply in Support of Amended Motions to Dismiss Claims of Direct

15  Purchaser Plaintiffs for Lack of Subject Matter Jurisdiction (Fed. R. Civ. P. 12(b)(1)), May 2,

16  2019.

17  **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 16**

18    Irico reasserts and incorporates each of the General Objections and Objections to the

19  Definitions and Instructions set forth above. Irico further objects that this Interrogatory is a

20  contention interrogatory, served before fact depositions and/or expert analysis and disclosures.

21  Irico asserts that such discovery is premature given that no Irico witnesses have been deposed

22  relating to merits issues and expert analysis and disclosures are not contemplated by the Court's

23  schedule at this time. *See Young v. Regis Corp.*, No. C 10-02634 SI, 2011 WL 9558055 (N.D.

24  Cal. May 19, 2011). Irico also objects to this interrogatory on the ground that it calls for a legal

25  argument or legal conclusion. Irico further objects to this interrogatory to the extent that it

26  improperly tries to shift the pleading and evidentiary burden that Plaintiffs alone carry to Irico.

27  Irico also objects to this Interrogatory to the extent it improperly tries to shift the evidentiary

28  burden that Plaintiffs alone carry to Irico. Irico does not intend, and its Response should not be

1   construed as, an agreement or acquiescence as to the admissibility of any document or fact

2   contained in or implied by Irico's Response.

3         Subject to and without waiving the objections stated above, Irico contends that Plaintiffs

4   have failed to allege facts sufficient to support a claim under the Foreign Trade Antitrust

5   Improvements Act ("FTAIA"), 15 U.S.C. § 6a. At all relevant times, the North American CRT

6   market was unique and separate from other foreign markets, including China. In supporting its

7   claims, Plaintiffs rely on alleged meetings and communications that occurred outside the United

8   States that discuss and relate to CRTs sold outside the United States. Plaintiffs have not

9   established how it is entitled to any relief under FTAIA based on their purchases of either CRT

10  products outside of the United States or their purchase of CRT products containing CRTs

11  manufactured and/or purchased outside the United States. Irico also identifies the following

12  evidence: Am. Wang. Decl. in Support of FSIA MTD (March 19, 2019); Clarke Decl. in Support

13  of FSIA MTD (March 19, 2019); Am. Plunkett Decl in Support of FSIA MTD (March 19, 2019);

14  Irico Group Corporation's Amended Motion to Dismiss Claims of Direct Purchaser Plaintiffs for

15  Lack of Subject Matter Jurisdiction (Fed. R. Civ. P. 12(b)(1)), March 19, 2019; Irico Display

16  Devices Co., Ltd.'s Amended Motion to Dismiss Claims of Direct Purchaser Plaintiffs for Lack

17  of Subject Matter Jurisdiction (Fed. R. Civ. P. 12(b)(1)), March 19, 2019; Irico Defendants'

18  Reply in Support of Amended Motions to Dismiss Claims of Direct Purchaser Plaintiffs for Lack

19  of Subject Matter Jurisdiction (Fed. R. Civ. P. 12(b)(1)), May 2, 2019; Deposition of Woong Rae

20  Kim (SDI, July 1-2, 2014), 386:15-387:21; Deposition of Kyung Chul Oh (SDI, November 19-

21  22, 2013), pp. 229:18-231:13; Deposition of Dae Eui Lee (SDI, January 16-18, 2013), p. 80:2-

22  82:6; Deposition of Sheng-Jen Yang (Chunghwa, February 22, 25-26, 2013), pp. 440:16-24;

23  Deposition of Kazutaka Nishimura (Toshiba/MTPD, June 10-12, 2014), pp. 136:21-137:15,

24  353:18-354:7, 385:21-386:22; HEDUS-CRT00126016; CHU00029131E; CHU00030665E;

25  CHU00029171E; CHU00029191E; CHU00036410E; CHU00029131E; CHU00029179E;

26  SDCRT-0002520E;  CHU00030537E; SDCRT-0091491; SDCRT-0005852.

27  **INTERROGATORY NO. 17**

28        As to Your contention in the Third Defense set forth in Your Answer that Direct

---

Purchaser Plaintiffs' claims are barred because the alleged conduct occurred outside the

jurisdiction of the Court or was neither directed to nor affected persons, entities, trade or

commerce in the United States, or both:

      (a)    State the facts that You rely on to support Your contention;

      (b)    Identify each Person You contend has knowledge of facts that support Your

            contention; and

      (c)    Identify each Document You contend supports Your contention.

**RESPONSE TO INTERROGATORY NO. 17**

Irico reasserts and incorporates each of the General Objections and Objections to the

Definitions and Instructions set forth above. Irico further objects that this Interrogatory is a

contention interrogatory, served before fact depositions and/or expert analysis and disclosures.

Irico asserts that such discovery is premature given that no Irico witnesses have been deposed

relating to merits issues and expert analysis and disclosures are not contemplated by the Court's

schedule at this time. *See Young v. Regis Corp.*, No. C 10-02634 SI, 2011 WL 9558055 (N.D.

Cal. May 19, 2011). Irico also objects to this interrogatory on the ground that it calls for a legal

argument or legal conclusion. Irico further objects to this interrogatory to the extent that it

improperly tries to shift the pleading and evidentiary burden that Plaintiffs alone carry to Irico.

Subject to and without waiving the objections stated above, and despite the Interrogatory's

demand for proof of facts and evidence of events that did not take place, Irico asserts no evidence

has been brought in the above captioned matter that indicates that Irico manufactured, sold, or

distributed CRTs in the United States during the class period. In particular, Irico will be

producing compilations of its sales records that demonstrate that Irico did not sell CRTs to the

United States. Irico also identifies the following evidence under FRCP 33(d): Direct Purchaser

Plaintiffs' Supplemental Objections and Responses to Defendants Irico Group Corp. and Irico

Display Devices Co., Ltd.'s First Set of Interrogatories to Direct Purchaser Plaintiffs, July 14,

2021; Irico Defendants' Sixth Supplemental Objections and Responses to Direct Purchaser

Plaintiffs' First Set of Interrogatories, January 7, 2022; Irico Defendants' Third Supplemental

Objections and Responses to Indirect Purchaser Plaintiffs' First Set of Interrogatories, January 7,

IRICO'S SUPP. RESPONSES TO DPP ARCH      29      Master File No. 07-cv-05944-JST
ELECTRONICS INC.'S FIRST SET                MDL No. 1917
INTERROGATORIES

1    2022; Irico Defendants' Supplemental Objections and Responses to Indirect Purchaser Plaintiffs'

2    Third Set of Interrogatories to Irico Group Corporation and Irico Display Devices Co., Ltd.,

3    January 21, 2022; Rule 30(b)(6) Deposition of Irico Group Corp. and Irico Display Devices Co.,

4    Ltd., March 6-8, 2019.

5         Irico identifies the following persons with knowledge regarding this Interrogatory: Wang

6    Zhaojie and Su Xiaohua.

7    **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 17**

8         Irico reasserts and incorporates each of the General Objections and Objections to the

9    Definitions and Instructions set forth above. Irico further objects that this Interrogatory is a

10   contention interrogatory, served before fact depositions and/or expert analysis and disclosures.

11   Irico asserts that such discovery is premature given that no Irico witnesses have been deposed

12   relating to merits issues and expert analysis and disclosures are not contemplated by the Court's

13   schedule at this time. *See Young v. Regis Corp.*, No. C 10-02634 SI, 2011 WL 9558055 (N.D.

14   Cal. May 19, 2011). Irico also objects to this interrogatory on the ground that it calls for a legal

15   argument or legal conclusion. Irico further objects to this interrogatory to the extent that it

16   improperly tries to shift the pleading and evidentiary burden that Plaintiffs alone carry to Irico.

17   Irico does not intend, and its Response should not be construed as, an agreement or acquiescence

18   as to the admissibility of any document or fact contained in or implied by Irico's Response.

19         Subject to and without waiving the objections stated above, and despite the Interrogatory's

20   demand for proof of facts and evidence of events that did not take place, Irico asserts no evidence

21   has been brought in the above captioned matter that indicates that Irico manufactured, sold, or

22   distributed CRTs in the United States during the class period. In particular, Irico has produced

23   summaries of its sales records that demonstrate that Irico did not sell CRTs to the United States.

24   See Summary of Invoice Records produced by Irico on June 2, 2022. Irico also identifies the

25   following evidence: Am. Wang. Decl. in Support of FSIA MTD, ¶¶ 12, 16-17 (March 19, 2019);

26   Direct Purchaser Plaintiffs' Supplemental Objections and Responses to Defendants Irico Group

27   Corp. and Irico Display Devices Co., Ltd.'s First Set of Interrogatories to Direct Purchaser

28   Plaintiffs, July 14, 2021; Irico Defendants' Sixth Supplemental Objections and Responses to

Direct Purchaser Plaintiffs' First Set of Interrogatories, at 17-18, 20-21, January 7, 2022; Irico

Defendants' Third Supplemental Objections and Responses to Indirect Purchaser Plaintiffs' First

Set of Interrogatories, January 7, 2022; Irico Defendants' Supplemental Objections and

Responses to Indirect Purchaser Plaintiffs' Third Set of Interrogatories to Irico Group

Corporation and Irico Display Devices Co., Ltd., at 11-13, January 21, 2022; Wang Dep. Tr.

(March 6, 2019) 94:3-97:1; 107:6-14; 109:2-12.

Irico identifies the following persons with knowledge regarding this Interrogatory: Wang

Zhaojie and Yan Yunlong.

**INTERROGATORY NO. 18**

As to Your contention in the Eighth Defense set forth in your Answer that Irico's actions

or practices were undertaken unilaterally for legitimate business reasons and in pursuit of Irico's

independent interests and those of its customers:

(a)     State the facts that you rely on to support your contention;

(b)     Identify each Person You contend has knowledge of facts

        that support Your contention; and

(c)     Identify each Document You contend supports Your

        contention.

**RESPONSE TO INTERROGATORY NO. 18**

Irico reasserts and incorporates each of the General Objections and Objections to the

Definitions and Instructions set forth above. Irico further objects that this Interrogatory is a

contention interrogatory, served before fact depositions and/or expert analysis and disclosures.

Irico asserts that such discovery is premature given that no Irico witnesses have been deposed

relating to merits issues and expert analysis and disclosures are not contemplated by the Court's

schedule at this time. *See Young v. Regis Corp.*, No. C 10-02634 SI, 2011 WL 9558055 (N.D.

Cal. May 19, 2011). Irico also objects to this interrogatory on the ground that it calls for a legal

argument or legal conclusion.

Subject to and without waiving the objections stated above, Irico contends that its acts or

practices were undertaken unilaterally for legitimate business reasons and in pursuit of Irico's

1  independent interests. In addition, Irico asserts no evidence has been brought in the above

2  captioned matter that indicates that its actions were not undertaken unilaterally for legitimate

3  business reasons and in pursuit of Irico's independent interests. Pursuant to Rule 33(d) of the

4  Federal Rules of Civil Procedure, Irico relies on the following evidence to support its contention

5  that at all times its acts or practices were undertaken unilaterally for legitimate business reasons

6  and in pursuit of Irico's independent interests: Reply Brief of Irico In Support of Motion to Set

7  Aside Default at 10-11, ECF No. 5229; Exs. A – F to the Declaration of Stuart C. Plunkett in

8  Support of Motion to Set Aside Default, ECF Nos. 5229-02 through -07; IRI-CRT-00010133;

9  IRI-CRT-00010449; IRI-CRT-00010468; IRI-CRT-00026812; IRI-CRT-00030226; IRI-CRT-

10  00030865; IRI-CRT-00031457; BMCC-CRT000002761; BMCC-CRT000002762;

11  CHU00029175E; CHU00029179E; CHU00029259E; CHU00030067E; CHU00030777E;

12  CHU00030941E; CHU00030973E; CHU00031018E; CHU00031032; CHU00031044E; and,

13  CHU00031070E.

14      Irico identifies the following employees as having knowledge regarding this Interrogatory:

15  Wang Zhaojie and Su Xiaohua.

16  **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 18**

17      Irico reasserts and incorporates each of the General Objections and Objections to the

18  Definitions and Instructions set forth above. Irico further objects that this Interrogatory is a

19  contention interrogatory, served before fact depositions and/or expert analysis and disclosures.

20  Irico asserts that such discovery is premature given that no Irico witnesses have been deposed

21  relating to merits issues and expert analysis and disclosures are not contemplated by the Court's

22  schedule at this time. *See Young v. Regis Corp.*, No. C 10-02634 SI, 2011 WL 9558055 (N.D.

23  Cal. May 19, 2011). Irico also objects to this interrogatory on the ground that it calls for a legal

24  argument or legal conclusion. Irico does not intend, and its Response should not be construed as,

25  an agreement or acquiescence as to the admissibility of any document or fact contained in or

26  implied by Irico's Response.

27      Subject to and without waiving the objections stated above, Irico contends that its acts or

28  practices were undertaken unilaterally for legitimate business reasons and in pursuit of Irico's

1    independent interests. In addition, Irico asserts no evidence has been brought in the above

2    captioned matter that indicates that its actions were not undertaken unilaterally for legitimate

3    business reasons and in pursuit of Irico's independent interests. Subject to and without waiving

4    the foregoing objections, Irico identifies the following evidence: Expert Report of Robert D.

5    Willig at ¶ 8, December 17, 2012; Expert Report of Robert D. Willig at ¶¶ 57-61, August 5, 2014;

6    Expert Report of Margaret E. Guerin-Calvert at ¶¶ 90-98, August 5, 2014; Expert Report of Prof.

7    Dennis W. Carlton at ¶¶ 64, 68, August 5, 2014; Wang Dep. Tr. (Mar. 8, 2019), at 43:5-15, 57:8-

8    10, 64:14-21, 75:7-11; Reply Brief of Irico In Support of Motion to Set Aside Default at 10-11,

9    ECF No. 5229; Exs. A – F to the Declaration of Stuart C. Plunkett in Support of Motion to Set

10   Aside Default, ECF Nos. 5229-02 through -07; Irico Response to Plaintiffs' Conspiracy Proffer to

11   Special Master at 2-8, (April 11, 2022); BMCC-CRT000113367; BMCC-CRT000113368;

12   BMCC-CRT000113372; BMCC-CRT000113374; BMCC-CRT000113378;  BMCC-

13   CRT000113379; BMCC-CRT000113380; BMCC-CRT000113381; BMCC-CRT000113382;

14   BMCC-CRT000113389; BMCC-CRT000113392; BMCC-CRT000113393; BMCC-

15   CRT000113394;  BMCC-CRT000113395 to 416. Irico further identifies the following evidence

16   under FRCP 33(d): IRI-CRT-00010133; IRI-CRT-00010449; IRI-CRT-00010468; IRI-CRT-

17   00026812; IRI-CRT-00030226; IRI-CRT-00030865; IRI-CRT-00031457; IRI-CRT-00004673;

18   IRI-CRT-00008191; IRI-CRT-00008248; IRI-CRT-00008664; IRI-CRT-00018191; IRI-CRT-

19   00024165; IRI-CRT-00024204; IRI-CRT-00024613.

20           Irico further contends that Irico's pricing-related conduct was compelled by the Chinese

21   government and based on duly enacted laws and/or regulations of the People's Republic of China.

22   Irico relies on the following evidence to support this contention:

23                •   The State Planning Commission and the State Economic and Trade Commission

24                    issued the "Regulations on Preventing Unfair Price Behavior of Low-Priced

25                    Dumping of Industrial Products" – effective as of Nov. 25, 1998. *See* Ex. A to the

26                    Declaration of Stuart C. Plunkett in Support of Motion to Set Aside Default, ECF

27                    No. 5229-02; Expert Report of Donald Clarke at ¶¶ 6-7, March 16, 2022.

28

1  • Notice of the State Planning Commission on Issuing the "Measures for the
2     Determination of the Cost of Dumping Industrial Products at Low Prices (for Trial
3     Implementation)" – effective as of March 1, 1999. *See*
4     https://law.lawtime.cn/d448076453170.html; Expert Report of Donald Clarke at ¶¶
5     6-7, March 16, 2022.
6  • Notice of the State Planning Commission and the Ministry of Information Industry
7     on the Trial Measures to Stop Unfair Price Competition of Color Picture Tubes
8     and Color TVs – effective as of April 1, 1999. *See* IRI-CRT-00031457 at 1460-64;
9     Ex. B to the Declaration of Stuart C. Plunkett in Support of Motion to Set Aside
10    Default, ECF No. 5229-03; Expert Report of Donald Clarke at ¶¶ 6-7, March 16,
11    2022.
12 • Notice on submitting cost information of color TV and color tube industry issued
13    by the Ministry of Information Industry in 1999. *See* Ex. D to the Declaration of
14    Stuart C. Plunkett in Support of Motion to Set Aside Default, ECF No. 5229-05;
15    Expert Report of Donald Clarke at ¶¶ 6-7, March 16, 2022.
16 • Notice on the issuance of the average production cost of some types of color
17    picture tubes and color TV industries issued by the Ministry of Information
18    Industry on April 2, 1999. See IRI-CRT-00031457 at 1459-60, 1466-67; Ex. C to
19    the Declaration of Stuart C. Plunkett in Support of Motion to Set Aside Default,
20    ECF No. 5229-04; Expert Report of Donald Clarke at ¶¶ 6-7, March 16, 2022.
21 • Notice on the issuance of the average production cost of certain types of color TV
22    industries issued by the Ministry of Information Industry on August 25, 2000. *See*
23    Ex. E to the Declaration of Stuart C. Plunkett in Support of Motion to Set Aside
24    Default, ECF No. 5229-06; Expert Report of Donald Clarke at ¶¶ 6-7, March 16,
25    2022.
26 • Notice on the issuance of the average production cost of some industries of color
27    picture tubes issued by the Ministry of Information Industry on September 14,
28    2000. *See* Ex. F to the Declaration of Stuart C. Plunkett in Support of Motion to

1          Set Aside Default, ECF No. 5229-07; Expert Report of Donald Clarke at ¶¶ 6-7,

2          March 16, 2022.

3      Irico identifies the following employees as having knowledge regarding this Interrogatory:

4  Wang Zhaojie and Yan Yunlong.

5  **INTERROGATORY NO. 19**

6      As to Your contention in the Eighth Defense set forth in your Answer that Irico's actions

7  and practices were not the product of any contract, combination or conspiracy with any other

8  person or entity:

9          (a)      State the facts that you rely on to support your contention;

10         (b)      Identify each Person You contend has knowledge of facts

11                  that support Your contention; and

12         (c)      Identify each Document You contend supports Your

13                  contention.

14  **RESPONSE TO INTERROGATORY NO. 19**

15     Irico reasserts and incorporates each of the General Objections and Objections to the

16  Definitions and Instructions set forth above. Irico further objects that this Interrogatory is a

17  contention interrogatory, served before fact depositions and/or expert analysis and disclosures.

18  Irico asserts that such discovery is premature given that no Irico witnesses have been deposed

19  relating to merits issues and expert analysis and disclosures are not contemplated by the Court's

20  schedule at this time. *See Young v. Regis Corp.*, No. C 10-02634 SI, 2011 WL 9558055 (N.D.

21  Cal. May 19, 2011). Irico also objects to this interrogatory on the ground that it calls for a legal

22  argument or legal conclusion.

23     Subject to and without waiving the objections stated above, Irico contends that Irico's

24  pricing-related conduct was compelled by the Chinese government and based on duly enacted

25  laws and/or regulations of the People's Republic of China. Irico relies on the following evidence

26  to support this contention:

27         •      The State Planning Commission and the State Economic and Trade Commission

28                issued the "Regulations on Preventing Unfair Price Behavior of Low-Priced

1    Dumping of Industrial Products" – effective as of Nov. 25, 1998. *See* Ex. A to the

2    Declaration of Stuart C. Plunkett in Support of Motion to Set Aside Default, ECF

3    No. 5229-02.

4    • Notice of the State Planning Commission on Issuing the "Measures for the

5    Determination of the Cost of Dumping Industrial Products at Low Prices (for Trial

6    Implementation)" – effective as of March 1, 1999. *See*

7    https://law.lawtime.cn/d448076453170.html.

8    • Notice of the State Planning Commission and the Ministry of Information Industry

9    on the Trial Measures to Stop Unfair Price Competition of Color Picture Tubes and

10   Color TVs – effective as of April 1, 1999. *See* IRI-CRT-00031457 at 1460-64; Ex.

11   B to the Declaration of Stuart C. Plunkett in Support of Motion to Set Aside

12   Default, ECF No. 5229-03.

13   • Notice on submitting cost information of color TV and color tube industry issued

14   by the Ministry of Information Industry in 1999. *See* Ex. D to the Declaration of

15   Stuart C. Plunkett in Support of Motion to Set Aside Default, ECF No. 5229-05.

16   • Notice on the issuance of the average production cost of some types of color

17   picture tubes and color TV industries issued by the Ministry of Information

18   Industry on April 2, 1999. *See* IRI-CRT-00031457 at 1459-60, 1466-67; Ex. C to

19   the Declaration of Stuart C. Plunkett in Support of Motion to Set Aside Default,

20   ECF No. 5229-04.

21   • Notice on the issuance of the average production cost of certain types of color TV

22   industries issued by the Ministry of Information Industry on August 25, 2000. *See*

23   Ex. E to the Declaration of Stuart C. Plunkett in Support of Motion to Set Aside

24   Default, ECF No. 5229-06.

25   • Notice on the issuance of the average production cost of some industries of color

26   picture tubes issued by the Ministry of Information Industry on September 14,

27   2000. *See* Ex. F to the Declaration of Stuart C. Plunkett in Support of Motion to

28   Set Aside Default, ECF No. 5229-07.

1   Irico identifies the following employees as having knowledge regarding this Interrogatory:

2   Wang Zhaojie and Su Xiaohua.

3   **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 19**

4   Subject to and without waiving the objections stated above, Irico contends that Irico's

5   pricing-related conduct was compelled by the Chinese government and based on duly enacted laws

6   and/or regulations of the People's Republic of China. Irico relies on the following evidence to

7   support this contention:

8   • The State Planning Commission and the State Economic and Trade Commission

9   issued the "Regulations on Preventing Unfair Price Behavior of Low-Priced

10   Dumping of Industrial Products" – effective as of Nov. 25, 1998. *See* Ex. A to the

11   Declaration of Stuart C. Plunkett in Support of Motion to Set Aside Default, ECF

12   No. 5229-02; Expert Report of Donald Clarke at ¶¶ 6-7, March 16, 2022.

13   • Notice of the State Planning Commission on Issuing the "Measures for the

14   Determination of the Cost of Dumping Industrial Products at Low Prices (for Trial

15   Implementation)" – effective as of March 1, 1999. *See*

16   https://law.lawtime.cn/d448076453170.html; Expert Report of Donald Clarke at ¶¶

17   6-7, March 16, 2022.

18   • Notice of the State Planning Commission and the Ministry of Information Industry

19   on the Trial Measures to Stop Unfair Price Competition of Color Picture Tubes and

20   Color TVs – effective as of April 1, 1999. *See* IRI-CRT-00031457 at 1460-64; Ex.

21   B to the Declaration of Stuart C. Plunkett in Support of Motion to Set Aside Default,

22   ECF No. 5229-03; Expert Report of Donald Clarke at ¶¶ 6-7, March 16, 2022.

23   • Notice on submitting cost information of color TV and color tube industry issued

24   by the Ministry of Information Industry in 1999. *See* Ex. D to the Declaration of

25   Stuart C. Plunkett in Support of Motion to Set Aside Default, ECF No. 5229-05;

26   Expert Report of Donald Clarke at ¶¶ 6-7, March 16, 2022.

27   • Notice on the issuance of the average production cost of some types of color picture

28   tubes and color TV industries issued by the Ministry of Information Industry on

1   April 2, 1999. See IRI-CRT-00031457 at 1459-60, 1466-67; Ex. C to the

2   Declaration of Stuart C. Plunkett in Support of Motion to Set Aside Default, ECF

3   No. 5229-04; Expert Report of Donald Clarke at ¶¶ 6-7, March 16, 2022.

4   • Notice on the issuance of the average production cost of certain types of color TV

5   industries issued by the Ministry of Information Industry on August 25, 2000. *See*

6   Ex. E to the Declaration of Stuart C. Plunkett in Support of Motion to Set Aside

7   Default, ECF No. 5229-06; Expert Report of Donald Clarke at ¶¶ 6-7, March 16,

8   2022.

9   • Notice on the issuance of the average production cost of some industries of color

10   picture tubes issued by the Ministry of Information Industry on September 14, 2000.

11   *See* Ex. F to the Declaration of Stuart C. Plunkett in Support of Motion to Set Aside

12   Default, ECF No. 5229-07; Expert Report of Donald Clarke at ¶¶ 6-7, March 16,

13   2022.

14   Irico identifies the following employees as having knowledge regarding this Interrogatory:

15   Wang Zhaojie and Yan Yunlong.

16   **INTERROGATORY NO. 20**

17   As to Your contention in the Tenth Defense set forth in your Answer that Your acts or

18   practices that are the subject of the complaint were cost justified or otherwise economically

19   justified and resulted from a good faith effort to meet competition or market conditions:

20   (a)   State the facts that you rely on to support your contention;

21   (b)   Identify each Person you contend has knowledge of facts that

22   support Your contention; and

23   (c)   Identify each Document You contend supports Your

24   contention.

25   **RESPONSE TO INTERROGATORY NO. 20**

26   Irico reasserts and incorporates each of the General Objections and Objections to the

27   Definitions and Instructions set forth above. Irico further objects that this Interrogatory is a

28   contention interrogatory, served before fact depositions and/or expert analysis and disclosures.

Irico asserts that such discovery is premature given that no Irico witnesses have been deposed relating to merits issues and expert analysis and disclosures are not contemplated by the Court's schedule at this time. *See Young v. Regis Corp.*, No. C 10-02634 SI, 2011 WL 9558055 (N.D. Cal. May 19, 2011). Irico also objects to this interrogatory on the ground that it calls for a legal argument or legal conclusion.

Subject to and without waiving the objections stated above, Irico contends that its acts or practices were cost justified or otherwise economically justified, and resulted from a good faith effort to meet competition or market conditions. In addition, Irico asserts no evidence has been brought in the above captioned matter that indicates any action or practice of Irico was not cost justified, otherwise economically justified, or did not result from a good faith effort to meet competition or market conditions. Pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, Irico relies on the following evidence to support its contention that at all times its acts or practices were cost justified or otherwise economically justified, and resulted from a good faith effort to meet competition or market conditions: Reply Brief of Irico In Support of Motion to Set Aside Default at 10-11, ECF No. 5229; Exs. A – F to the Declaration of Stuart C. Plunkett in Support of Motion to Set Aside Default, ECF Nos. 5229-02 through -07; IRI-CRT-00010133; IRI-CRT-00010449; IRI-CRT-00010468; IRI-CRT-00026812; IRI-CRT-00030226; IRI-CRT-00030865; IRI-CRT-00031457; BMCC-CRT000002761; BMCC-CRT000002762; CHU00029175E; CHU00029179E; CHU00029259E; CHU00030067E; CHU00030777E; CHU00030941E; CHU00030973E; CHU00031018E; CHU00031032; CHU00031044E; and, CHU00031070E.

Irico identifies the following employees as having knowledge regarding this Interrogatory: Wang Zhaojie and Su Xiaohua.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 20**

Irico reasserts and incorporates each of the General Objections and Objections to the Definitions and Instructions set forth above. Irico further objects that this Interrogatory is a contention interrogatory, served before fact depositions and/or expert analysis and disclosures. Irico asserts that such discovery is premature given that no Irico witnesses have been deposed relating to merits issues and expert analysis and disclosures are not contemplated by the Court's

1    schedule at this time. *See Young v. Regis Corp.*, No. C 10-02634 SI, 2011 WL 9558055 (N.D.

2    Cal. May 19, 2011). Irico also objects to this interrogatory on the ground that it calls for a legal

3    argument or legal conclusion. Irico does not intend, and its Response should not be construed as,

4    an agreement or acquiescence as to the admissibility of any document or fact contained in or

5    implied by Irico's Response.

6            Subject to and without waiving the objections stated above, Irico contends that its acts or

7    practices were cost justified or otherwise economically justified, and resulted from a good faith

8    effort to meet competition or market conditions. In addition, Irico asserts no evidence has been

9    brought in the above captioned matter that indicates any action or practice of Irico was not cost

10   justified, otherwise economically justified, or did not result from a good faith effort to meet

11   competition or market conditions.  Subject to and without waiving the foregoing objections, Irico

12   identifies the following evidence: Expert Report of Robert D. Willig at ¶ 8, December 17, 2012;

13   Expert Report of Robert D. Willig at ¶¶ 57-61, August 5, 2014; Expert Report of Margaret E.

14   Guerin-Calvert at ¶¶ 90-98, August 5, 2014; Expert Report of Prof. Dennis W. Carlton at ¶¶ 64,

15   68, August 5, 2014; Wang Dep. Tr. (Mar. 8, 2019), at 43:5-15, 57:8-10, 64:14-21, 75:7-11; Reply

16   Brief of Irico In Support of Motion to Set Aside Default at 10-11, ECF No. 5229; Exs. A – F to

17   the Declaration of Stuart C. Plunkett in Support of Motion to Set Aside Default, ECF Nos. 5229-

18   02 through -07; Irico Response to Plaintiffs' Conspiracy Proffer to Special Master at 2-8, (April

19   11, 2022); BMCC-CRT000113367; BMCC-CRT000113368; BMCC-CRT000113372; BMCC-

20   CRT000113374; BMCC-CRT000113378;  BMCC-CRT000113379; BMCC-CRT000113380;

21   BMCC-CRT000113381; BMCC-CRT000113382; BMCC-CRT000113389; BMCC-

22   CRT000113392; BMCC-CRT000113393; BMCC-CRT000113394;  BMCC-CRT000113395 to

23   416. Irico further identifies the following evidence under FRCP 33(d): IRI-CRT-00010133; IRI-

24   CRT-00010449; IRI-CRT-00010468; IRI-CRT-00026812; IRI-CRT-00030226; IRI-CRT-

25   00030865; IRI-CRT-00031457; IRI-CRT-00004673; IRI-CRT-00008191; IRI-CRT-00008248;

26   IRI-CRT-00008664; IRI-CRT-00018191; IRI-CRT-00024165; IRI-CRT-00024204; IRI-CRT-

27   00024613.

28

1    Irico further contends that Irico's pricing-related conduct was compelled by the Chinese

2  government and based on duly enacted laws and/or regulations of the People's Republic of China.

3  Irico relies on the following evidence to support this contention:

4    • The State Planning Commission and the State Economic and Trade Commission

5      issued the "Regulations on Preventing Unfair Price Behavior of Low-Priced

6      Dumping of Industrial Products" – effective as of Nov. 25, 1998. *See* Ex. A to the

7      Declaration of Stuart C. Plunkett in Support of Motion to Set Aside Default, ECF

8      No. 5229-02; Expert Report of Donald Clarke at ¶¶ 6-7, March 16, 2022.

9    • Notice of the State Planning Commission on Issuing the "Measures for the

10     Determination of the Cost of Dumping Industrial Products at Low Prices (for Trial

11     Implementation)" – effective as of March 1, 1999. *See*

12     https://law.lawtime.cn/d448076453170.html; Expert Report of Donald Clarke at ¶¶

13     6-7, March 16, 2022.

14   • Notice of the State Planning Commission and the Ministry of Information Industry

15     on the Trial Measures to Stop Unfair Price Competition of Color Picture Tubes

16     and Color TVs – effective as of April 1, 1999. *See* IRI-CRT-00031457 at 1460-64;

17     Ex. B to the Declaration of Stuart C. Plunkett in Support of Motion to Set Aside

18     Default, ECF No. 5229-03; Expert Report of Donald Clarke at ¶¶ 6-7, March 16,

19     2022.

20   • Notice on submitting cost information of color TV and color tube industry issued

21     by the Ministry of Information Industry in 1999. *See* Ex. D to the Declaration of

22     Stuart C. Plunkett in Support of Motion to Set Aside Default, ECF No. 5229-05;

23     Expert Report of Donald Clarke at ¶¶ 6-7, March 16, 2022.

24   • Notice on the issuance of the average production cost of some types of color

25     picture tubes and color TV industries issued by the Ministry of Information

26     Industry on April 2, 1999. See IRI-CRT-00031457 at 1459-60, 1466-67; Ex. C to

27     the Declaration of Stuart C. Plunkett in Support of Motion to Set Aside Default,

28     ECF No. 5229-04; Expert Report of Donald Clarke at ¶¶ 6-7, March 16, 2022.

- Notice on the issuance of the average production cost of certain types of color TV industries issued by the Ministry of Information Industry on August 25, 2000. *See* Ex. E to the Declaration of Stuart C. Plunkett in Support of Motion to Set Aside Default, ECF No. 5229-06; Expert Report of Donald Clarke at ¶¶ 6-7, March 16, 2022.

- Notice on the issuance of the average production cost of some industries of color picture tubes issued by the Ministry of Information Industry on September 14, 2000. *See* Ex. F to the Declaration of Stuart C. Plunkett in Support of Motion to Set Aside Default, ECF No. 5229-07; Expert Report of Donald Clarke at ¶¶ 6-7, March 16, 2022.

Irico identifies the following employees as having knowledge regarding this Interrogatory: Wang Zhaojie and Yan Yunlong.

**INTERROGATORY NO. 21**

As to Your contention in the Eleventh Defense set forth in your Answer that Your conduct that is the subject of the Complaint was caused by, due to, based upon, or in response to directives, laws, regulations, policies, and/or acts of governments, governmental agencies and entities, and/or regulatory agencies, and such is non-actionable or privileged:

(a)     State the facts that you rely on to support your contention;

(b)     Identify each Person you contend has knowledge of facts that support Your contention; and

(c)     Identify each Document You contend supports Your contention.

**RESPONSE TO INTERROGATORY NO. 21**

Irico reasserts and incorporates each of the General Objections and Objections to the Definitions and Instructions set forth above. Irico further objects that this Interrogatory is a contention interrogatory, served before fact depositions and/or expert analysis and disclosures. Irico asserts that such discovery is premature given that no Irico witnesses have been deposed relating to merits issues and expert analysis and disclosures are not contemplated by the Court's schedule at this time. *See Young v. Regis Corp.*, No. C 10-02634 SI, 2011 WL 9558055 (N.D.

1   Cal. May 19, 2011). Irico also objects to this interrogatory on the ground that it calls for a legal

2   argument or legal conclusion.

3        Subject to and without waiving the objections stated above, Irico contends that Irico's

4   pricing-related conduct was compelled by the Chinese government and based on duly enacted

5   laws and/or regulations of the People's Republic of China. Irico relies on the following evidence

6   to support this contention:

7        •  The State Planning Commission and the State Economic and Trade Commission

8          issued the "Regulations on Preventing Unfair Price Behavior of Low-Priced

9          Dumping of Industrial Products" – effective as of Nov. 25, 1998. *See* Ex. A to the

10         Declaration of Stuart C. Plunkett in Support of Motion to Set Aside Default, ECF

11         No. 5229-02.

12       •  Notice of the State Planning Commission on Issuing the "Measures for the

13         Determination of the Cost of Dumping Industrial Products at Low Prices (for Trial

14         Implementation)" – effective as of March 1, 1999. *See*

15         https://law.lawtime.cn/d448076453170.html.

16       •  Notice of the State Planning Commission and the Ministry of Information Industry

17         on the Trial Measures to Stop Unfair Price Competition of Color Picture Tubes and

18         Color TVs – effective as of April 1, 1999. *See* IRI-CRT-00031457 at 1460-64; Ex.

19         B to the Declaration of Stuart C. Plunkett in Support of Motion to Set Aside

20         Default, ECF No. 5229-03.

21       •  Notice on submitting cost information of color TV and color tube industry issued

22         by the Ministry of Information Industry in 1999. *See* Ex. D to the Declaration of

23         Stuart C. Plunkett in Support of Motion to Set Aside Default, ECF No. 5229-05.

24       •  Notice on the issuance of the average production cost of some types of color

25         picture tubes and color TV industries issued by the Ministry of Information

26         Industry on April 2, 1999. *See* IRI-CRT-00031457 at 1459-60, 1466-67; Ex. C to

27         the Declaration of Stuart C. Plunkett in Support of Motion to Set Aside Default,

28         ECF No. 5229-04.

IRICO'S SUPP. RESPONSES TO DPP ARCH      43      Master File No. 07-cv-05944-JST
ELECTRONICS INC.'S FIRST SET                    MDL No. 1917
INTERROGATORIES

1     • Notice on the issuance of the average production cost of certain types of color TV

2     industries issued by the Ministry of Information Industry on August 25, 2000. *See*

3     Ex. E to the Declaration of Stuart C. Plunkett in Support of Motion to Set Aside

4     Default, ECF No. 5229-06.

5     • Notice on the issuance of the average production cost of some industries of color

6     picture tubes issued by the Ministry of Information Industry on September 14,

7     2000. *See* Ex. F to the Declaration of Stuart C. Plunkett in Support of Motion to

8     Set Aside Default, ECF No. 5229-07.

9     Irico identifies the following employees as having knowledge regarding this Interrogatory:

10  Wang Zhaojie and Su Xiaohua.

11  **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 21**

12     Subject to and without waiving the objections stated above, Irico contends that Irico's

13  pricing-related conduct was compelled by the Chinese government and based on duly enacted

14  laws and/or regulations of the People's Republic of China. Irico relies on the following evidence

15  to support this contention:

16     • The State Planning Commission and the State Economic and Trade Commission

17     issued the "Regulations on Preventing Unfair Price Behavior of Low-Priced

18     Dumping of Industrial Products" – effective as of Nov. 25, 1998. *See* Ex. A to the

19     Declaration of Stuart C. Plunkett in Support of Motion to Set Aside Default, ECF

20     No. 5229-02; Expert Report of Donald Clarke at ¶¶ 6-7, March 16, 2022.

21     • Notice of the State Planning Commission on Issuing the "Measures for the

22     Determination of the Cost of Dumping Industrial Products at Low Prices (for Trial

23     Implementation)" – effective as of March 1, 1999. *See*

24     https://law.lawtime.cn/d448076453170.html; Expert Report of Donald Clarke at ¶¶

25     6-7, March 16, 2022.

26     • Notice of the State Planning Commission and the Ministry of Information Industry

27     on the Trial Measures to Stop Unfair Price Competition of Color Picture Tubes

28     and Color TVs – effective as of April 1, 1999. *See* IRI-CRT-00031457 at 1460-64;

IRICO'S SUPP. RESPONSES TO DPP ARCH     44     Master File No. 07-cv-05944-JST
ELECTRONICS INC.'S FIRST SET                 MDL No. 1917
INTERROGATORIES

1   Ex. B to the Declaration of Stuart C. Plunkett in Support of Motion to Set Aside

2   Default, ECF No. 5229-03; Expert Report of Donald Clarke at ¶¶ 6-7, March 16,

3   2022.

4   • Notice on submitting cost information of color TV and color tube industry issued

5   by the Ministry of Information Industry in 1999. *See* Ex. D to the Declaration of

6   Stuart C. Plunkett in Support of Motion to Set Aside Default, ECF No. 5229-05;

7   Expert Report of Donald Clarke at ¶¶ 6-7, March 16, 2022.

8   • Notice on the issuance of the average production cost of some types of color

9   picture tubes and color TV industries issued by the Ministry of Information

10   Industry on April 2, 1999. See IRI-CRT-00031457 at 1459-60, 1466-67; Ex. C to

11   the Declaration of Stuart C. Plunkett in Support of Motion to Set Aside Default,

12   ECF No. 5229-04; Expert Report of Donald Clarke at ¶¶ 6-7, March 16, 2022.

13   • Notice on the issuance of the average production cost of certain types of color TV

14   industries issued by the Ministry of Information Industry on August 25, 2000. *See*

15   Ex. E to the Declaration of Stuart C. Plunkett in Support of Motion to Set Aside

16   Default, ECF No. 5229-06; Expert Report of Donald Clarke at ¶¶ 6-7, March 16,

17   2022.

18   • Notice on the issuance of the average production cost of some industries of color

19   picture tubes issued by the Ministry of Information Industry on September 14,

20   2000. *See* Ex. F to the Declaration of Stuart C. Plunkett in Support of Motion to

21   Set Aside Default, ECF No. 5229-07; Expert Report of Donald Clarke at ¶¶ 6-7,

22   March 16, 2022.

23   Irico identifies the following employees as having knowledge regarding this

24   Interrogatory: Wang Zhaojie and Yan Yunlong.

25   **INTERROGATORY NO. 22**

26   As to your contention in the Twelfth Defense set forth in your Answer that Your conduct

27   that is the subject of the Complaint was caused by or in response to duly enacted laws and/or

28

1   regulations of the People's Republic of China and is therefore protected under the foreign

2   sovereign compulsion doctrine, the act of state doctrine, and international comity:

3       (a)     State the facts that you rely on to support your contention;

4       (b)     Identify each Person you contend has knowledge of facts that support Your

5               contention; and

6       (c)     Identify each Document You contend supports Your contention.

7   **RESPONSE TO INTERROGATORY NO. 22**

8       Irico reasserts and incorporates each of the General Objections and Objections to the

9   Definitions and Instructions set forth above. Irico further objects that this Interrogatory is a

10  contention interrogatory, served before fact depositions and/or expert analysis and disclosures.

11  Irico asserts that such discovery is premature given that no Irico witnesses have been deposed

12  relating to merits issues and expert analysis and disclosures are not contemplated by the Court's

13  schedule at this time. *See Young v. Regis Corp.*, No. C 10-02634 SI, 2011 WL 9558055 (N.D.

14  Cal. May 19, 2011). Irico also objects to this interrogatory on the ground that it calls for a legal

15  argument or legal conclusion.

16      Subject to and without waiving the objections stated above, Irico contends that Irico's

17  pricing-related conduct was compelled by the Chinese government and based on duly enacted

18  laws and/or regulations of the People's Republic of China. Irico relies on the following evidence

19  to support this contention:

20      •   The State Planning Commission and the State Economic and Trade Commission

21          issued the "Regulations on Preventing Unfair Price Behavior of Low-Priced

22          Dumping of Industrial Products" – effective as of Nov. 25, 1998. *See* Ex. A to the

23          Declaration of Stuart C. Plunkett in Support of Motion to Set Aside Default, ECF

24          No. 5229-02.

25      •   Notice of the State Planning Commission on Issuing the "Measures for the

26          Determination of the Cost of Dumping Industrial Products at Low Prices (for Trial

27          Implementation)" – effective as of March 1, 1999. *See*

28          https://law.lawtime.cn/d448076453170.html.

1
2
3
4
5

- Notice of the State Planning Commission and the Ministry of Information Industry on the Trial Measures to Stop Unfair Price Competition of Color Picture Tubes and Color TVs – effective as of April 1, 1999. *See* Ex. IRI-CRT-00031457 at 1460-64; Ex. B to the Declaration of Stuart C. Plunkett in Support of Motion to Set Aside Default, ECF No. 5229-03.

6
7
8

- Notice on submitting cost information of color TV and color tube industry issued by the Ministry of Information Industry in 1999. *See* Ex. D to the Declaration of Stuart C. Plunkett in Support of Motion to Set Aside Default, ECF No. 5229-05.

9
10
11
12
13

- Notice on the issuance of the average production cost of some types of color picture tubes and color TV industries issued by the Ministry of Information Industry on April 2, 1999. *See* IRI-CRT-00031457 at 1459-60, 1466-67; Ex. C to the Declaration of Stuart C. Plunkett in Support of Motion to Set Aside Default, ECF No. 5229-04.

14
15
16
17

- Notice on the issuance of the average production cost of certain types of color TV industries issued by the Ministry of Information Industry on August 25, 2000. *See* Ex. E to the Declaration of Stuart C. Plunkett in Support of Motion to Set Aside Default, ECF No. 5229-06.

18
19
20
21

- Notice on the issuance of the average production cost of some industries of color picture tubes issued by the Ministry of Information Industry on September 14, 2000. *See* Ex. F to the Declaration of Stuart C. Plunkett in Support of Motion to Set Aside Default, ECF No. 5229-07.

22   Irico identifies the following employees as having knowledge regarding this Interrogatory:
23   Wang Zhaojie and Su Xiaohua.

24   **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 22**

25   Subject to and without waiving the objections stated above, Irico contends that Irico's
26   pricing-related conduct was compelled by the Chinese government and based on duly enacted laws
27   and/or regulations of the People's Republic of China. Irico relies on the following evidence to
28   support this contention:

- The State Planning Commission and the State Economic and Trade Commission issued the "Regulations on Preventing Unfair Price Behavior of Low-Priced Dumping of Industrial Products" – effective as of Nov. 25, 1998. *See* Ex. A to the Declaration of Stuart C. Plunkett in Support of Motion to Set Aside Default, ECF No. 5229-02; Expert Report of Donald Clarke at ¶¶ 6-7, March 16, 2022.

- Notice of the State Planning Commission on Issuing the "Measures for the Determination of the Cost of Dumping Industrial Products at Low Prices (for Trial Implementation)" – effective as of March 1, 1999. *See* https://law.lawtime.cn/d448076453170.html; Expert Report of Donald Clarke at ¶¶ 6-7, March 16, 2022.

- Notice of the State Planning Commission and the Ministry of Information Industry on the Trial Measures to Stop Unfair Price Competition of Color Picture Tubes and Color TVs – effective as of April 1, 1999. *See* IRI-CRT-00031457 at 1460-64; Ex. B to the Declaration of Stuart C. Plunkett in Support of Motion to Set Aside Default, ECF No. 5229-03; Expert Report of Donald Clarke at ¶¶ 6-7, March 16, 2022.

- Notice on submitting cost information of color TV and color tube industry issued by the Ministry of Information Industry in 1999. *See* Ex. D to the Declaration of Stuart C. Plunkett in Support of Motion to Set Aside Default, ECF No. 5229-05; Expert Report of Donald Clarke at ¶¶ 6-7, March 16, 2022.

- Notice on the issuance of the average production cost of some types of color picture tubes and color TV industries issued by the Ministry of Information Industry on April 2, 1999. See IRI-CRT-00031457 at 1459-60, 1466-67; Ex. C to the Declaration of Stuart C. Plunkett in Support of Motion to Set Aside Default, ECF No. 5229-04; Expert Report of Donald Clarke at ¶¶ 6-7, March 16, 2022.

- Notice on the issuance of the average production cost of certain types of color TV industries issued by the Ministry of Information Industry on August 25, 2000. *See* Ex. E to the Declaration of Stuart C. Plunkett in Support of Motion to Set Aside

1    Default, ECF No. 5229-06; Expert Report of Donald Clarke at ¶¶ 6-7, March 16,

2    2022.

3    •   Notice on the issuance of the average production cost of some industries of color

4    picture tubes issued by the Ministry of Information Industry on September 14, 2000.

5    *See* Ex. F to the Declaration of Stuart C. Plunkett in Support of Motion to Set Aside

6    Default, ECF No. 5229-07; Expert Report of Donald Clarke at ¶¶ 6-7, March 16,

7    2022.

8        Irico identifies the following employees as having knowledge regarding this Interrogatory:

9    Wang Zhaojie and Yan Yunlong.

10

11   Dated:  September 1, 2022                  BAKER BOTTS L.L.P.

12

13                                              */s/ John M. Taladay*

14                                              John M. Taladay (*pro hac vice*)
                                                Evan J. Werbel (*pro hac vice*)
15                                              Thomas E. Carter (*pro hac vice*)
                                                Andrew L. Lucarelli (*pro hac vice*)
16                                              700 K Street, N.W.
                                                Washington, D.C. 20001
17                                              (202)-639-7700
                                                (202)-639-7890 (fax)
18                                              Email: john.taladay@bakerbotts.com
                                                        evan.werbel@bakerbotts.com
19                                                      tom.carter@bakerbotts.com
                                                        drew.lucarelli@bakerbotts.com
20

21                                              *Attorneys for Defendants*
                                                *IRICO GROUP CORP. and*
22                                              *IRICO DISPLAY DEVICES CO., LTD.*

23

24

25

26

27

28

IRICO'S SUPP. RESPONSES TO DPP ARCH          49          Master File No. 07-cv-05944-JST
ELECTRONICS INC.'S FIRST SET                             MDL No. 1917
INTERROGATORIES

**EXHIBIT 4**

1                  UNITED STATES DISTRICT COURT

2                 NORTHERN DISTRICT OF CALIFORNIA

3                       OAKLAND DIVISION

4

5    IN RE: CATHODE RAY TUBE (CRT)  ) MASTER FILE NO.
     ANTITRUST LITIGATION            ) CV-07-5944 JST
6    _____)
                                     )
7    THIS DOCUMENT RELATES TO:       )
                                     )
8    ALL INDIRECT PURCHASER ACTIONS  )
     ALL DIRECT PURCHASER ACTIONS    )
9                                    )
               DEFENDANTS.           )
10   _____)

11

12

13

14

15          VIDEOTAPED DEPOSITION OF YAN YUNLONG

16                       VOLUME I

17            TUESDAY, SEPTEMBER 27, 2022

18               MACAU S.A.R., CHINA

19

20

21

     FILE NO.  SF 5436473

22

     REPORTED BY  MARK McCLURE, CRR

23               CAL CSR 12203

24

25

                                        Page 1

```
 1   STATE OF CALIFORNIA      )

 2   COUNTY OF SANTA BARBARA  )   ss.

 3

 4        I, Mark McClure, C.S.R. No. 12203, in and for

 5   the State of California, do hereby certify:

 6        That prior to being examined, the witness

 7   named in the foregoing deposition was by me duly sworn

 8   to testify to the truth, the whole truth, and nothing

 9   but the truth;

10        That said deposition was taken down by me in

11   shorthand at the time and place therein named and

12   thereafter reduced to typewriting under my direction,

13   and the same is a true, correct, and complete transcript

14   of said proceedings;

15        That if the foregoing pertains to the original

16   transcript of a deposition in a Federal Case, before

17   completion of the proceedings, review of the transcript

18   { } was { } was not required.

19        I further certify that I am not interested in

20   the event of the action.

21        Witness my hand this 12 day of October,

22   2022.

23

24                 Certified Shorthand Reporter

                   State of California

25                 CSR No. 12203
```

Page 146

```
 1                UNITED STATES DISTRICT COURT

 2               NORTHERN DISTRICT OF CALIFORNIA

 3                     OAKLAND DIVISION

 4

 5   IN RE: CATHODE RAY TUBE (CRT) ) MASTER FILE NO.

     ANTITRUST LITIGATION          ) CV-07-5944 JST

 6   _____)

                                   )

 7   THIS DOCUMENT RELATES TO:     )

                                   )

 8   ALL INDIRECT PURCHASER ACTIONS )

     ALL DIRECT PURCHASER ACTIONS   )

 9                                 )

               DEFENDANTS.         )

10   _____)

11

12

13

14

15        VIDEOTAPED DEPOSITION OF YAN YUNLONG

16                     VOLUME II

17           WEDNESDAY, SEPTEMBER 28, 2022

18               MACAU S.A.R., CHINA

19

20

21

22   FILE NO.  SF 5436476

23   REPORTED BY  MARK McCLURE, CRR

24               CAL CSR 12203

25
```

Page 150

1  BY MR. RUSHING:                                    11:06
2      Q.  Do you know what type of products          11:06
3  Irico -- strike that.                              11:06
4          Do you know what types of CRTs Group produced     11:06
5  at that time?                                      11:06
6      A.  I need a specific time frame.              11:06
7      Q.  Okay.  Strike that.                        11:07
8          What I really want to know is, during your     11:07
9  time at the tech center, were you involved in decisions     11:07
10 about the levels of production of particular products.     11:07
11     MR. CARTER:  Object to form.                   11:07
12         THE WITNESS:  I would not be involved.  I only     11:07
13 handle the administrative matters for the Group.  I     11:07
14 would not get involved in the specific production and     11:07
15 research and development of products.              11:07
16 BY MR. RUSHING:                                    11:07
17     Q.  And were you involved in any aspect of the     11:08
18 sales of CRTs by Group during your time at the tech     11:08
19 center?                                            11:08
20     A.  No.                                        11:08
21     Q.  And so, did you talk with anyone during your     11:08
22 time at tech center who -- strike that.            11:08
23         Did you have any knowledge of anyone attending     11:08
24 meetings with competitors from Group during your time at     11:08
25 the tech center?                                   11:08
                                        Page 203

1          MR. CARTER:  Object to form.               11:08
2          THE WITNESS:  No.                          11:09
3  BY MR. RUSHING:                                    11:09
4      Q.  So during your time at the tech center, did     11:09
5  you -- strike that.                               11:09
6          During your time at the tech center, were you     11:09
7  involved in any way in the sales or marketing or pricing     11:09
8  of CRTs by Group?                                  11:09
9          MR. CARTER:  Object to form.               11:09
10         THE WITNESS:  No, I did not, and I would not.     11:09
11 BY MR. RUSHING:                                    11:09
12     Q.  When you were working -- is it correct to say     11:09
13 that you worked on the floor of the factory between 1991     11:09
14 and 1995, before you joined the tech center?      11:10
15     A.  Yes.  I worked in the workshop of the factory.     11:10
16     Q.  And I believe you testified there were four     11:10
17 lines in the workshop at the time you worked on the     11:10
18 floor?                                             11:10
19         MR. CARTER:  Form.                         11:10
20         THE WITNESS:  My memory is not very precise.     11:10
21 I cannot be sure that it was exactly four -- four lines,     11:10
22 because, at that time, the lines at the factory had gone     11:11
23 through restructuring.                             11:11
24 BY MR. RUSHING:                                    11:11
25     Q.  When you say they'd gone through            11:11
                                        Page 204

1  restructuring, do you mean that the products that the     11:11
2  lines produced were changed?                       11:11
3      A.  Yes.                                       11:11
4      Q.  Were any changed in 1995?                  11:11
5      A.  1995?                                      11:11
6          I do not recall clearly.                   11:11
7      Q.  Were any of the lines -- were you aware that     11:12
8  any of the lines at Group Factory No. 1 was capable of     11:12
9  making different sizes of CRTs at the same time?  11:12
10         MR. CARTER:  Object to form.               11:12
11         THE WITNESS:  No.                          11:12
12         For example, if we had a line that used to     11:13
13 produce 22 inches, after restructuring that line is --     11:13
14 or could manufacture, for example, the size of 14 inches     11:13
15 or 21 inches, then that's what it can produce only,     11:13
16 meaning the 14-inch or the 21-inch.               11:13
17 BY MR. RUSHING:                                    11:13
18     Q.  What about different types of CRTs, like the     11:13
19 round or flat?                                     11:13
20         MR. CARTER:  Object to form.               11:13
21 BY MR. RUSHING:                                    11:13
22     Q.  Could a single line make both round and flat     11:13
23 tubes at the same time?                            11:13
24         MR. CARTER:  Object to form.               11:13
25         THE WITNESS:  No.                          11:14
                                        Page 205

1  BY MR. RUSHING:                                    11:14
2      Q.  So you testified yesterday that in March of --     11:14
3  strike that.                                       11:14
4          You testified that in March of 2001, you left     11:14
5  the technology center and became -- and went to the     11:14
6  Irico Group legal affairs office, is that correct?     11:14
7          MR. CARTER:  Object to form.               11:14
8          THE WITNESS:  No, I went to work in the Irico     11:15
9  Group office.                                      11:15
10 BY MR. RUSHING:                                    11:15
11     Q.  Okay.  During this time, which was -- strike     11:15
12 that.                                              11:15
13         You stayed there until November 2003, is that     11:15
14 correct?                                           11:15
15     A.  Correct.                                   11:15
16     Q.  And during this time -- I have the same     11:15
17 questions as before.                               11:15
18         Did you have involvement with the production     11:15
19 of CRTs in your job at the Group office?          11:15
20         MR. CARTER:  Object to form.               11:15
21         THE WITNESS:  No.                          11:16
22 BY MR. RUSHING:                                    11:16
23     Q.  So you were not involved -- strike that.   11:16
24         Do you have any information or involvement     11:16
25 regarding decisions to -- about, for example, how many     11:16
                                        Page 206

**15 (Pages 203 - 206)**

1 of a certain kind of CRT would be produced?                 11:16

2      A.  No.                                                 11:16

3      Q.  Did you have any information or involvement in      11:16

4 decisions to shut down production of certain types of        11:16

5 CRTs?                                                        11:16

6          MR. CARTER:  Form.                                  11:16

7          THE WITNESS:  No.                                   11:17

8 BY MR. RUSHING:                                              11:17

9      Q.  And did you have any knowledge or involvement       11:17

10 in the sales activity for CRTs at that time?                11:17

11          MR. CARTER:  Object to form.                       11:17

12          THE WITNESS:  I did not have knowledge.            11:17

13 BY MR. RUSHING:                                             11:17

14     Q.  Did you have any knowledge or involvement           11:17

15 between March 2001 to November 2003 of any meetings that    11:17

16 Irico personnel were having with Irico's competitors        11:17

17 about CRTs?                                                 11:17

18          MR. CARTER:  Object to form.                       11:17

19          THE WITNESS:  I did not have knowledge.            11:18

20 BY MR. RUSHING:                                             11:18

21     Q.  Did you have any knowledge or involvement           11:18

22 between March 2001 to November 2003 of any of the           11:18

23 considerations that went into the pricing of any CRTs       11:18

24 sold by Group or Display?                                   11:18

25          MR. CARTER:  Object to form.                       11:18

                                                    Page 207

---

1          THE WITNESS:  I did not know about that.           11:18

2 BY MR. RUSHING:                                              11:18

3      Q.  And then after that, you went to work on the       11:19

4 Chang An project from November of 2003 through September     11:19

5 of 2004, is that correct?                                   11:19

6      A.  Yes.                                                11:19

7      Q.  And during that time, did you have any             11:19

8 knowledge or involvement in decisions regarding the         11:19

9 production of CRTs by Group?                                11:19

10          MR. CARTER:  Object to form.                       11:19

11          THE WITNESS:  I did not know about that.          11:19

12 BY MR. RUSHING:                                             11:19

13     Q.  And during that time while you were working on     11:19

14 the Chang An project from November 2003 through            11:19

15 September of 2004, did you have any knowledge or            11:20

16 involvement of the decisions relating to the sales,        11:20

17 marketing or pricing of CRTs by Group?                     11:20

18          MR. CARTER:  Object to form.                       11:20

19          THE WITNESS:  I did not have knowledge and I      11:20

20 was not involved.                                          11:20

21 BY MR. RUSHING:                                             11:20

22     Q.  Okay.  I want to jump now to the time -- or        11:20

23 when you were involved on the litigation task force, I     11:20

24 guess, beginning in 2007.                                  11:21

25          MR. CARTER:  Object to form.                       11:21

                                                    Page 208

---

1 BY MR. RUSHING:                                              11:21

2      Q.  I believe you testified that you were involved      11:21

3 in the retention -- in the decision to retain the law        11:21

4 firm of -- strike that.                                      11:21

5          I believe you testified that you were involved      11:21

6 in the decision to retain the Pillsbury law firm in this     11:21

7 matter, is that correct?                                     11:21

8          MR. CARTER:  Object to form.                        11:21

9          THE WITNESS:  I was not involved in the            11:22

10 decision-making process or the decision.  I was aware of    11:22

11 this and I was involved in the process, but I did not       11:22

12 have a say in the final decision.                           11:22

13 BY MR. RUSHING:                                             11:22

14     Q.  Did there come a time when the Pillsbury law       11:22

15 firm -- strike that.                                        11:22

16          Did there come a time when Group dismissed the     11:22

17 Pillsbury law firm?                                         11:22

18          MR. CARTER:  Object to form.                       11:22

19          THE WITNESS:  Yes.                                 11:22

20 BY MR. RUSHING:                                             11:22

21     Q.  And when was that?                                 11:22

22     A.  I do not recall clearly.                            11:22

23     Q.  What's your best recollection?                     11:23

24     A.  It was probably around the second half of         11:23

25 2008.                                                       11:23

                                                    Page 209

---

1      Q.  And was that the same -- strike that.              11:23

2          And did Irico make a decision at the same time     11:23

3 to withdraw from participating in this litigation?          11:23

4          MR. CARTER:  Objection.  Calls for potentially     11:23

5 attorney-client privileged information.  I instruct the     11:24

6 witness that he can answer but not to reveal any            11:24

7 privileged discussions regarding any legal advice or       11:24

8 litigation strategy.                                        11:24

9          THE WITNESS:  To put it more precisely, we         11:24

10 were waiting.                                               11:24

11 BY MR. RUSHING:                                             11:24

12     Q.  So you're saying Irico did not -- strike that.     11:25

13          Are you saying that Irico did not withdraw        11:25

14 from the litigation?                                       11:25

15     A.  That's correct.                                    11:25

16     Q.  But Irico stopped participating in the            11:25

17 litigation at that time, correct?                          11:25

18     A.  I said earlier that Irico was waiting for the     11:25

19 plaintiff -- or plaintiffs to file a separate lawsuit      11:26

20 against just Irico.  Then we will make corresponding       11:26

21 responses.                                                 11:26

22     Q.  Do you recall that, at that time, the             11:26

23 plaintiffs had served discovery on Irico?                 11:26

24          Strike that.                                      11:26

25          Do you recall that at the time Irico stopped      11:26

                                                    Page 210

---

16 (Pages 207 - 210)

1    MR. RUSHING:  Okay.  We can go off the record.    12:11
2  We are going to reboot -- the thing is going to reboot    12:11
3  again at 10:15 so let's come back at 10:20, okay?  Does    12:11
4  that make sense, Mr. Carter?    12:11
5    MR. CARTER:  It may depend how much you have    12:12
6  left because we are getting to the time of Mr. Yan's    12:12
7  lunch break.    12:12
8    MR. RUSHING:  Oh, we're going to lunch.    12:12
9    MR. CARTER:  So you're talking about 10:20    12:12
10  Pacific would be 1:20 Eastern.  That works.    12:12
11    MR. RUSHING:  I'm just saying we will go for a    12:12
12  little more than an hour because I know the witness    12:12
13  would like a little more time to eat his lunch, and that    12:12
14  will hopefully avoid the usual evening kerfuffle about    12:12
15  the reboot of our machine so the virus software can run.    12:12
16    MR. CARTER:  It works for me.    12:12
17    THE WITNESS:  Yes, that works for me.    12:12
18    MR. RUSHING:  Okay.  So we'll see you in an    12:12
19  hour and eight minutes.    12:12
20    THE WITNESS:  Okay.    12:13
21    THE VIDEOGRAPHER:  We are off the record.    12:13
22  It's 12:12 p.m.    12:13
23    (The lunch recess was taken.)    12:13
24    THE VIDEOGRAPHER:  We are back on the record.    13:25
25  It's 1:24 p.m.    13:25

Page 227

1  BY MR. RUSHING:    13:25
2    Q.  Mr. Yan, can you hear me?    13:25
3    A.  Yes.    13:25
4    Q.  Okay.  Mr. Yan, do you know Mr. Su Xiaohua?    13:25
5    A.  Yes.    13:26
6    Q.  How do you know him?    13:26
7    A.  I think we met at work and it was quite early    13:26
8  on.    13:26
9    Q.  When you say "early on," do you mean years    13:26
10  ago?    13:26
11    A.  Yes.    13:26
12    Q.  Do you remember the first time you met him?    13:26
13    A.  I don't remember.    13:27
14    Q.  Did you ever work with Mr. Su?    13:27
15    MR. CARTER:  Object to form.    13:27
16    THE WITNESS:  No.    13:27
17  BY MR. RUSHING:    13:27
18    Q.  Were you ever in the same department where he    13:27
19  was?    13:27
20    A.  No.    13:27
21    Q.  Now, you recall that Mr. Su was going to be --    13:27
22  had agreed to testify in this matter, is that correct?    13:27
23    MR. CARTER:  Object to form.    13:27
24    THE WITNESS:  Yes.    13:27
25    13:27

Page 228

1  BY MR. RUSHING:    13:27
2    Q.  Did you talk to him about his intentions to    13:27
3  testify in the case?    13:27
4    A.  I think the talk was done by our director,    13:27
5  Zhang Wenkai.  I did not speak with Mr. Su directly.    13:28
6    Q.  Was it your understanding in April of this    13:28
7  year that Mr. Su had agreed to testify in this matter,    13:28
8  to travel to Macau and testify in this matter?    13:28
9    MR. CARTER:  Object to form.    13:28
10    THE WITNESS:  At that time, it was agreed that    13:28
11  he would travel to Hong Kong.    13:29
12  BY MR. RUSHING:    13:29
13    Q.  And it was your understanding that Mr. Su had    13:29
14  agreed to do that, or was he expressing reservations?    13:29
15    A.  He was reluctant to agree to do that, and with    13:29
16  a lot of reservations.    13:29
17    Q.  And why -- what was your understanding of why    13:29
18  he was reluctant to agree to testify?    13:29
19    A.  I think it was because of cultural background    13:30
20  and the traditions in Chinese society.  No one would    13:30
21  agree to get themselves involved in such a matter.  In    13:30
22  the minds of most Chinese people, it's actually not an    13:30
23  honorable thing to be involved in lawsuits.    13:30
24    Q.  So is it your testimony that in April of this    13:30
25  year -- I guess the question is, had he actually agreed    13:31

Page 229

1  to testify in April, or was he still expressing    13:31
2  reservations?    13:31
3    MR. CARTER:  Object to form.    13:31
4    THE WITNESS:  He did not give a very    13:31
5  straightforward "yes" or a consent to agree to    13:31
6  testifying, but according to our understanding, he was    13:32
7  reluctant even though -- but he still agreed to testify.    13:32
8  BY MR. RUSHING:    13:32
9    Q.  And then at some point, he informed you that    13:32
10  he would not agree to testify, is that correct?    13:32
11    When I say "you," I mean someone at Irico who    13:32
12  was involved in the scheduling of his deposition.    13:32
13    MR. CARTER:  Object to form.    13:32
14  BY MR. RUSHING:    13:32
15    Q.  Strike that.  Let me re-ask the question.    13:32
16    And then at some time after April of this    13:32
17  year, did he inform Irico that he was unwilling to give    13:32
18  a deposition in the case?    13:33
19    A.  At some point in April, he informed us that he    13:33
20  was going to leave Irico, and he told us that he was not    13:33
21  able to make time to be deposed in this case as a    13:33
22  witness.    13:33
23    Also, he repeatedly emphasized that he himself    13:34
24  personally did not have anything to do with the CRT    13:34
25  antitrust litigation, and he did not have any    13:34

Page 230

21 (Pages 227 - 230)

1  understanding about the circumstances surrounding the        13:34
2  situation.                                                   13:34
3     Q.  And then, did he, in fact -- strike that.             13:34
4         He did, in fact, leave Irico, is that correct?        13:34
5     A.  Yes.                                                  13:34
6     Q.  And do you know where he is now?                      13:34
7     A.  I heard that he's now working in a private            13:35
8  company in a city or town called Nanxun.  I'm not sure       13:35
9  if you know that place.                                      13:35
10        And I'm not sure if that's in Zhejiang or             13:35
11 Jiangsu province.                                            13:35
12    Q.  So he resigned from all Irico-related                 13:35
13 companies, is that correct?                                  13:35
14    A.  Correct.                                              13:36
15    Q.  Do you know what the job transfer and                 13:36
16 settlement group at IGE-Irico New Energy -- the office       13:36
17 for managing retirees and former employees at CNEIEC --      13:36
18 strike that.                                                 13:36
19        Do you know what the job transfer and                 13:36
20 settlement group at IGE-Irico New Energy is?                 13:36
21        MR. CARTER:  Object to form.                          13:36
22        MAIN INTERPRETER:  Counsel, do you mind               13:36
23 repeating that question for the interpreter?                 13:36
24 BY MR. RUSHING:                                              13:36
25    Q.  Is there a company affiliated with Irico known        13:36
                                                        Page 231

1  as the job transfer and settlement group, or similar        13:36
2  name?                                                        13:36
3        MR. CARTER:  Object to form.                           13:36
4        THE WITNESS:  I do not know.                           13:37
5  BY MR. RUSHING:                                              13:37
6     Q.  Do you know what the office for managing              13:37
7  retirees and former employees at CNEIEC is?                  13:37
8     A.  I don't know.                                         13:37
9     Q.  Is there a department or group that manages           13:37
10 retirees and former employees?                               13:37
11        MR. CARTER:  Object to form.                          13:38
12        THE WITNESS:  Are you talking about an                13:38
13 internal department at Irico Group or just any               13:38
14 department or division having that responsibility            13:38
15 generally in society?                                        13:38
16 BY MR. RUSHING:                                              13:38
17    Q.  I'm talking about something affiliated with           13:38
18 Irico Group, and I don't know if it's a department or a      13:38
19 division or a subsidiary of some sort.                       13:38
20    A.  There is an Office for Retiree and Departing          13:39
21 Employees.  That's the name of the office under Irico        13:39
22 Group.                                                       13:39
23    Q.  And what is the purpose of that office?               13:39
24    A.  It is to manage the people who have retired           13:39
25 prior to the implementation of the labor contract and        13:40
                                                        Page 232

1  labor employment system for enterprises in China.           13:40
2     Q.  How does it manage the people?  Does it pay           13:40
3  them a pension or do anything like that?                     13:40
4        MR. CARTER:  Object to form.                           13:40
5        THE WITNESS:  I'm not clear about the                  13:41
6  specifics of the management.                                 13:41
7  BY MR. RUSHING:                                              13:41
8     Q.  Do you know if Mr. Su is entitled to any sort         13:41
9  of pension or retirement payments from Irico?                13:41
10    A.  He cannot be entitled to that.                        13:41
11    Q.  Why is that?                                          13:41
12    A.  Mr. Su opted to join the country's labor              13:41
13 society insurance system, so all his pensions and            13:41
14 retirement payment would have to come from that social       13:42
15 system.                                                      13:42
16    Q.  And Irico has no -- there's no -- strike that.        13:42
17        So Group -- strike that.                              13:42
18        So there were no Irico companies that have any        13:42
19 responsibility for making any payment to Mr. Su or to        13:42
20 the labor society insurance system on behalf of Mr. Su,      13:42
21 is that correct?                                             13:42
22        MR. CARTER:  Object to form.                          13:42
23        THE WITNESS:  That's correct.                         13:43
24 BY MR. RUSHING:                                              13:43
25    Q.  Does Irico have a pension system for some of          13:43
                                                        Page 233

1  its workers?                                                 13:43
2        MR. CARTER:  Form.                                     13:43
3        THE WITNESS:  Regarding this question, it's           13:44
4  not easy to explain.  China adopted this labor social        13:44
5  insurance system in the 1990s, so retirees who are           13:44
6  gradually retiring since the implementation of that          13:44
7  social system would draw their pension from the social       13:44
8  insurance system.                                            13:44
9        But prior to the implementation of that system         13:44
10 before the 1990s, anyone who did not opt into that, any      13:44
11 social system, and who have retired from their               13:44
12 employment in enterprises would be managed by the            13:44
13 Retiree and Departing Employees' office.                     13:44
14 BY MR. RUSHING:                                              13:44
15    Q.  Thank you.                                            13:45
16        Last week, Mr. Wang Zhaojie was deposed, as I         13:45
17 think you know, and he indicated that his office -- that     13:45
18 he worked in the same group as you and Mr. Zhang.            13:45
19        Is that correct?                                      13:45
20        MR. CARTER:  Object to form.                          13:45
21        THE WITNESS:  I never worked with Mr. Wang,           13:46
22 Wang Zhaojie.                                                13:46
23 BY MR. RUSHING:                                              13:46
24    Q.  Are your offices nearby, presently?                   13:46
25        MR. CARTER:  Object to form.                          13:46
                                                        Page 234

22 (Pages 231 - 234)

1 this report was written, to the best of your knowledge,　17:50
2 in 2005?　17:50
3　　　MR. RUSHING:  Objection to form.  Lacks　17:50
4 foundation.　17:50
5　　　MR. BIRKHAEUSER:  Objection.  Leading.　17:50
6　　　THE WITNESS:  It was accurate.　17:50
7 BY MR. CARTER:　17:50
8　　Q.  That paragraph concludes with: "At present,　17:50
9 Caihong Limited has formally handled the procedures　17:50
10 related to import and export business in the first half　17:50
11 of 2005, from then on Caihong Limited's import and　17:50
12 export business is completed independently by itself."　17:50
13　　　Do you see that?　17:50
14　　A.  I see it.　17:50
15　　Q.  Is this related to the restructuring of　17:51
16 Irico's import and export business that happened that　17:51
17 you discussed regarding the IPO of Irico Electronics?　17:51
18　　　MR. RUSHING:  Objection to the form.  Lacks　17:51
19 foundation.　17:51
20　　　MR. BIRKHAEUSER:  Objection.  Leading.　17:51
21　　　THE WITNESS:  Yes.  Yes.　17:51
22　　　MR. CARTER:  Could we get the time on the　17:51
23 record, please.　17:52
24　　　THE VIDEOGRAPHER:  We are at seven hours and　17:52
25 seven minutes.　17:52

Page 307

---

1　　　MR. CARTER:  Okay.  Shall we adjourn here for　17:52
2 the day, Geoff?　17:52
3　　　MR. RUSHING:  Yes.　17:52
4　　　MR. CARTER:  All right.　17:52
5　　　THE VIDEOGRAPHER:  We are off the record.　17:52
6 It's 5:51 p.m.　17:52
7　　　(The deposition concluded at 5:51 p.m.,
8　　　China Standard Time.)
9　　　　　--oOo--
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

Page 308

---

1　　　　　DEPONENT'S DECLARATION
2
3　　　I, YAN YUNLONG, hereby declare:
4　　　I have read the foregoing deposition
5 transcript and identify it as my own and approve same.
6　　　I declare under penalty of perjury under the
7 laws of the State of California that the foregoing
8 testimony is true and correct.
9　　　Dated this _____ day of _____, 2022,
10 at _____, California.
11
12
13　　　_____
14　　YAN YUNLONG
15
16
17
18
19
20
21
22
23
24
25

Page 309

---

1 STATE OF CALIFORNIA　　　)
2 COUNTY OF SANTA BARBARA  )  ss.
3
4　　　I, Mark McClure, C.S.R. No. 12203, in and for
5 the State of California, do hereby certify:
6　　　That prior to being examined, the witness
7 named in the foregoing deposition was by me duly sworn
8 to testify to the truth, the whole truth, and nothing
9 but the truth;
10　　　That said deposition was taken down by me in
11 shorthand at the time and place therein named and
12 thereafter reduced to typewriting under my direction,
13 and the same is a true, correct, and complete transcript
14 of said proceedings;
15　　　That if the foregoing pertains to the original
16 transcript of a deposition in a Federal Case, before
17 completion of the proceedings, review of the transcript
18 { } was {X} was not required.
19　　　I further certify that I am not interested in
20 the event of the action.
21　　　Witness my hand this 12th day of October,
22 2022.
23
24　　　Certified Shorthand Reporter
　　　State of California
25　　　CSR No. 12203

Page 310

---

41 (Pages 307 - 310)

```
 1              UNITED STATES DISTRICT COURT

 2             NORTHERN DISTRICT OF CALIFORNIA

 3                    OAKLAND DIVISION

 4

 5    IN RE: CATHODE RAY TUBE (CRT)  ) MASTER FILE NO.

      ANTITRUST LITIGATION           ) CV-07-5944 JST

 6    _____ )

                                     )

 7    THIS DOCUMENT RELATES TO:      )

                                     )

 8    ALL INDIRECT PURCHASER ACTIONS )

      ALL DIRECT PURCHASER ACTIONS   )

 9                                   )

                    DEFENDANTS.      )

10    _____ )

11

12

13

14

15         VIDEOTAPED DEPOSITION OF YAN YUNLONG

16                    VOLUME III

17          THURSDAY, SEPTEMBER 29, 2022

18              MACAU S.A.R., CHINA

19

20

21

22    FILE NO.  SF 5436477

23

24    REPORTED BY  MARK McCLURE, CRR

25               CAL CSR 12203
```

                                              Page 308

1  BY MR. CARTER:                            08:19:13
2      Q.  Has Irico Group continued to act on behalf of   08:19:13
3  Irico Display in responding to the CRT lawsuit since   08:19:15
4  this time, in 2017?                         08:19:18
5          MR. RUSHING:  Objection.  Form.        08:19:22
6          THE WITNESS:  Yes.                 08:19:36
7  BY MR. CARTER:                            08:19:37
8      Q.  And to your knowledge, has anyone at Irico   08:19:38
9  Display ever contacted Baker Botts to inform them that   08:19:42
10 they wished for Baker Botts to withdraw as counsel for   08:19:46
11 Irico Display?                             08:19:49
12         MR. RUSHING:  Objection to form.  Lacks   08:19:51
13 foundation.                               08:19:52
14         THE WITNESS:  Nobody.               08:20:13
15 BY MR. CARTER:                            08:20:15
16     Q.  Mr. Yan, you also testified yesterday that the   08:20:17
17 litigation working group at Irico Group searched for   08:20:22
18 responsive documents in the possession of Irico Display   08:20:26
19 for this litigation.                         08:20:29
20     Do you recall that?                     08:20:53
21     A.  Yes.                             08:20:53
22     Q.  To the best of your knowledge, did the     08:20:53
23 litigation working group ensure that responsive     08:20:56
24 documents were searched for and collected from the files   08:20:59
25 of Irico Display for this litigation?           08:21:02

Page 321

1          MR. RUSHING:  Objection to form.       08:21:07
2          MR. BIRKHAEUSER:  Objection.  Very leading.   08:21:08
3          THE WITNESS:  Yes, we tried our very best.   08:21:36
4  BY MR. CARTER:                            08:21:40
5      Q.  Mr. Yan, do you also recall testifying     08:21:43
6  yesterday that Mr. Zhang Wenkai served as your primary   08:21:45
7  assistant with regard to the collection of documents for   08:21:48
8  this litigation since 2017?                  08:21:51
9      A.  Yes.                             08:22:10
10     Q.  Was part of Mr. Zhang's role to gather     08:22:11
11 information on potential locations of relevant documents   08:22:14
12 for collection?                            08:22:17
13         MR. RUSHING:  Objection to form.       08:22:20
14         MR. BIRKHAEUSER:  Objection.  Leading.   08:22:22
15         THE WITNESS:  Yes.                 08:22:40
16 BY MR. CARTER:                            08:22:41
17     Q.  Was part of Mr. Zhang's role to assist with   08:22:42
18 searching those locations for relevant documents for   08:22:44
19 collection?                               08:22:47
20         MR. RUSHING:  Objection to form.       08:22:49
21         MR. BIRKHAEUSER:  Objection.  Leading.   08:22:53
22         THE WITNESS:  Yes.                 08:23:05
23 BY MR. CARTER:                            08:23:05
24     Q.  Was part of Mr. Zhang's role to communicate   08:23:06
25 with Baker Botts regarding plaintiffs' information   08:23:10

Page 322

1  request in this litigation?                  08:23:13
2          MR. RUSHING:  Object to form.         08:23:17
3          MR. BIRKHAEUSER:  Objection.  Leading.   08:23:19
4          THE WITNESS:  Yes, he was the only contact   08:23:43
5  person that we assigned to communicate with Baker Botts.   08:23:45
6  BY MR. CARTER:                            08:23:45
7      Q.  Was part of Mr. Zhang's role to gather     08:23:51
8  information to respond to plaintiffs' information     08:23:54
9  requests and provide that information to Baker Botts?   08:23:56
10         MR. BIRKHAEUSER:  Leading.           08:24:07
11         THE WITNESS:  Yes.                 08:24:30
12 BY MR. CARTER:                            08:24:31
13     Q.  And did you, Mr. Yan, authorize Mr. Zhang to   08:24:31
14 undertake all the roles that I just listed?     08:24:34
15         MR. RUSHING:  Object to form.         08:24:38
16         THE WITNESS:  Yes.                 08:24:47
17 BY MR. CARTER:                            08:24:51
18     Q.  Mr. Yan, do you recall being asked some     08:24:56
19 questions about Mr. Su Xiaohua what yesterday?   08:24:58
20     A.  Yes.                             08:25:09
21     Q.  You testified you thought he might be     08:25:09
22 reluctant to testify because of a Chinese cultural   08:25:11
23 notion that participation in lawsuits is not honorable.   08:25:15
24     Did I get that right?                   08:25:20
25         MR. RUSHING:  Objection.  Asked and answered.   08:25:21

Page 323

1          THE WITNESS:  Yes.                 08:25:41
2  BY MR. CARTER:                            08:25:41
3      Q.  To your knowledge, was Mr. Su also concerned   08:25:44
4  about the COVID-19 pandemic and required COVID-19   08:25:47
5  quarantines for travel outside Mainland China?   08:25:51
6          MR. RUSHING:  Objection to form.  Lacks   08:25:54
7  foundation.                               08:25:56
8          MR. BIRKHAEUSER:  Objection.  Very, very   08:25:56
9  leading.                                 08:25:57
10         THE WITNESS:  Yes, like me, I'm also very   08:26:24
11 concerned.                               08:26:27
12 BY MR. CARTER:                            08:26:27
13     Q.  Mr. Yan, going back to your work history, when   08:26:30
14 you were working in the Irico Group Enterprise     08:26:35
15 Management Department, did you have an understanding of   08:26:40
16 the corporate structure of Irico Group?         08:26:42
17     And by that, I mean the subsidiary and       08:26:45
18 affiliate companies that reported up to Irico Group.   08:26:48
19         MR. RUSHING:  Object to form.         08:26:51
20         THE WITNESS:  Yes.                 08:27:13
21 BY MR. CARTER:                            08:27:13
22     Q.  Was it important for your job in the Irico   08:27:15
23 Group Enterprise Management Department to have a good   08:27:21
24 understanding of Irico Group's corporate structure?   08:27:22
25         MR. RUSHING:  Object to form.  Lacks   08:27:27

Page 324

5 (Pages 321 - 324)

1  very difficult circumstances and we appreciate that.        12:49:30
2        MS. CAPURRO:  I'll second that motion.        12:49:53
3        MS. YANG:  Yes, thank you very much.        12:49:53
4        THE VIDEOGRAPHER:  We are now going off the        12:49:58
5  record.  The time is 12:50.        12:49:59
6        (The deposition concluded at 12:50 p.m.,
7        China Standard Time.)
8                --oOo--
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

Page 397

1  STATE OF CALIFORNIA        )
2  COUNTY OF SANTA BARBARA  )  ss.
3
4        I, Mark McClure, C.S.R. No. 12203, in and for
5  the State of California, do hereby certify:
6        That prior to being examined, the witness
7  named in the foregoing deposition was by me duly sworn
8  to testify to the truth, the whole truth, and nothing
9  but the truth;
10        That said deposition was taken down by me in
11  shorthand at the time and place therein named and
12  thereafter reduced to typewriting under my direction,
13  and the same is a true, correct, and complete transcript
14  of said proceedings;
15        That if the foregoing pertains to the original
16  transcript of a deposition in a Federal Case, before
17  completion of the proceedings, review of the transcript
18  { } was { X } was not required.
19        I further certify that I am not interested in
20  the event of the action.
21        Witness my hand this 13th day of October, 2022.
22
23
24        Certified Shorthand Reporter
        State of California
25        CSR No. 12203

Page 399

1        DEPONENT'S DECLARATION
2
3        I, YAN YUNLONG, hereby declare:
4        I have read the foregoing deposition
5  transcript and identify it as my own and approve same.
6        I declare under penalty of perjury under the
7  laws of the State of California that the foregoing
8  testimony is true and correct.
9        Dated this _____ day of _____, 2022,
10  at _____, California.
11
12
13        _____
14  YAN YUNLONG
15
16
17
18
19
20
21
22
23
24
25

Page 398

1  THOMAS E. CARTER, ESQ.
2  TOM.CARTER@BAKERBOTTS.COM
3        OCTOBER 13, 2022
4  RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION
5  SEPTEMBER 28, 2022, YAN YUNLONG, VOL. III, JOB NO. 5436477
6  The above-referenced transcript has been
7  completed by Veritext Legal Solutions and
8  review of the transcript is being handled as follows:
9  __ Per CA State Code (CCP 2025.520 (a)-(e)) – Contact Veritext
10  to schedule a time to review the original transcript at
11  a Veritext office.
12  __ Per CA State Code (CCP 2025.520 (a)-(e)) – Locked .PDF
13  Transcript - The witness should review the transcript and
14  make any necessary corrections on the errata pages included
15  below, notating the page and line number of the corrections.
16  The witness should then sign and date the errata and penalty
17  of perjury pages and return the completed pages to all
18  appearing counsel within the period of time determined at
19  the deposition or provided by the Code of Civil Procedure.
20  __ Waiving the CA Code of Civil Procedure per Stipulation of
21  Counsel - Original transcript to be released for signature
22  as determined at the deposition.
23  __ Signature Waived – Reading & Signature was waived at the
24  time of the deposition.
25

Page 400

24 (Pages 397 - 400)

**EXHIBIT 5**

1          UNITED STATES DISTRICT COURT

2         NORTHERN DISTRICT OF CALIFORNIA

3               OAKLAND DIVISION

4

5  IN RE: CATHODE RAY TUBE (CRT)  ) MASTER FILE NO.
   ANTITRUST LITIGATION           ) CV-07-5944 JST
6  _____)
                                   )
7  THIS DOCUMENT RELATES TO:      )
                                   )
8  ALL INDIRECT PURCHASER ACTIONS )
   ALL DIRECT PURCHASER ACTIONS   )
9                                  )
            DEFENDANTS.            )
10 _____)

11

12

13       VIDEOTAPED DEPOSITION OF WANG ZHAOJIE

14                    VOLUME I

15          TUESDAY, SEPTEMBER 20, 2022

16             MACAU S.A.R., CHINA

17

18

19

20  JOB NO. 5436453

21

22  REPORTED BY  MARK McCLURE, CRR

23            CAL CSR 12203

24

25

                                          Page 1

```
 1    BY MS. CAPURRO:                                     11:35:25

 2         Q.   Do you remember hearing that this association   11:35:29

 3    would have its founding meeting in July 1995?       11:35:31

 4         A.   I am not clear.                            11:35:43

 5         Q.   What's not clear, Mr. Wang?               11:35:46

 6         A.   I am not clear about what you're talking about  11:35:49

 7    in your question.  In 1995, forming something, I do not   11:36:00

 8    know about that matter.                             11:36:08

 9         Q.   Did you ever hear that employees of Irico were  11:36:13

10    attending the CRT Industry Association meetings in July  11:36:20

11    of 1995?                                            11:36:25

12         A.   I'm not clear about it.                   11:36:27

13         Q.   Did you ever attend any meeting of the CRT  11:36:46

14    Industry Association?                               11:36:54

15         A.   I have.                                   11:36:54

16         Q.   When did you attend meetings of the CRT  11:37:00

17    Industry Association?                               11:37:09

18         A.   First of all, let me explain.  The       11:37:09

19    association -- what you're saying, this is not something  11:37:32

20    that is clear to me, because I've never joined the  11:37:36

21    association.  I feel that their description of this is  11:37:42

22    not clear.                                          11:37:47

23         Q.   You testified just a minute ago that you had  11:37:58

24    attended meetings of the CRT Industry Association, and  11:38:00

25    my question to you is:  When did you attend those  11:38:05
```

Page 67

```
 1   meetings?                                          11:38:08

 2        A.   Well, first of all, let me reiterate.  I did   11:38:08

 3   say that I have attended the meeting, but I don't know   11:38:54

 4   whether or not it was the meeting of the -- what's   11:39:00

 5   called "the association," because the question is not   11:39:04

 6   clear and it is not specific enough, so it's very easy   11:39:08

 7   to cause me to get confused.                        11:39:13

 8        Q.   I'm referring, Mr. Wang, to the CRT Industry   11:39:19

 9   Association that is referred to on the first two lines   11:39:23

10   of this document.                                   11:39:25

11        Can you read that for me.                      11:39:25

12        A.   You mean this paragraph?  Do I read No. 2?   11:39:27

13        Q.   No, the one that says No. 1, at the top of the   11:40:18

14   page.                                               11:40:22

15        MAIN INTERPRETER:  Mr. Wang just finished the   11:40:27

16   first two lines.                                    11:40:30

17        MS. CAPURRO:  Can you interpret it, please?   11:40:30

18   What did he say?                                    11:40:32

19        MAIN INTERPRETER:  He just read the statement.   11:40:34

20   Wu Yingzhong; Wu Yingzhong attended the preparation   11:40:49

21   meeting in Beijing on July 17th.  The formation meeting   11:40:50

22   will be in the beginning of August.                 11:41:08

23   BY MS. CAPURRO:                                     11:41:08

24        Q.   Okay.  What is your understanding of the CRT   11:41:17

25   Industry Association referred to in that paragraph,   11:41:24
```

Page 68

| | | |
|---|---|---|
| 1 | Mr. Wang? | 11:41:27 |
| 2 | A.   I am not clear about it. | 11:41:30 |
| 3 | Q.   When you testified that you had attended | 11:41:45 |
| 4 | meetings of the CRT Industry Association, about five | 11:41:47 |
| 5 | minutes ago, what association were you referring to? | 11:41:50 |
| 6 | A.   I said that I have participated in the -- at | 11:41:52 |
| 7 | the meeting of the association.  However, I do not know | 11:42:30 |
| 8 | the relationship between the association -- the meeting | 11:42:34 |
| 9 | of the association that I have attended and the | 11:42:40 |
| 10 | association you are referring to here today. | 11:42:43 |
| 11 | Q.   Okay.  That's -- that's fair. | 11:42:48 |
| 12 | But I want to know about the association that | 11:42:52 |
| 13 | you meant when you said you attended CRT Industry | 11:42:55 |
| 14 | Association meetings. | 11:42:59 |
| 15 | Do you recall when the first meeting of the | 11:43:13 |
| 16 | CRT Industry Association was that you attended? | 11:43:16 |
| 17 | A.   I cannot remember the specific time. | 11:43:20 |
| 18 | Q.   Do you remember anything about the meeting? | 11:43:36 |
| 19 | Perhaps, who else attended from Irico? | 11:43:39 |
| 20 | MR. LUCARELLI:  Object to form. | 11:43:41 |
| 21 | THE WITNESS:  I cannot remember. | 11:43:51 |
| 22 | BY MS. CAPURRO: | 11:43:51 |
| 23 | Q.   Do you remember whether the other members of | 11:43:55 |
| 24 | the CRT Industry Association were other manufacturers of | 11:43:57 |
| 25 | CRTs? | 11:44:02 |

Page 69

```
 1              MAIN INTERPRETER:  May interpreter have read      11:44:04

 2      back the question?  I'm sorry.                            11:44:33

 3              (Record read by reporter:                         11:44:33

 4                "QUESTION:  Do you remember whether             11:43:55

 5                the other members of the CRT Industry           11:43:56

 6                Association were other manufacturers of         11:43:59

 7                CRTs?")                                         11:44:02

 8              THE WITNESS:  I'm not very clear about that.      11:44:34

 9      BY MS. CAPURRO:                                           11:44:34

10         Q.   Do you remember any of the other attendees of    11:44:39

11      the CRT Industry Association's meetings?                  11:44:42

12         A.   I feel that you should ask -- your question       11:45:10

13      should be more specific, more narrow because your         11:45:12

14      question is too broad.  I do not know how to answer it.   11:45:18

15         Q.   Did Beijing Matsushita Color CRT Company          11:45:23

16      attend the CRT Industry Association meetings?             11:45:27

17         A.   Beijing Matsushita, yes.                          11:45:30

18         Q.   Did Samsung SDI attend the CRT Industry           11:45:49

19      Association meetings?                                     11:45:54

20         A.   I believe so.                                     11:45:54

21         Q.   Did Hua Fei attend the CRT Industry               11:46:04

22      Association meetings?                                     11:46:09

23              MAIN INTERPRETER:  I'm sorry, the name is?        11:46:09

24              MS. CAPURRO:  Hua Fei.                            11:46:15

25              THE WITNESS:  It seems to me it did.              11:46:21
```

Page 70

```
 1    BY MS. CAPURRO:                                  11:46:21

 2        Q.   Did LG Changsha attend the CRT Industry    11:46:24

 3    Association meetings?                            11:46:31

 4        A.   Yes.                                    11:46:31

 5        Q.   Did SEG Hitachi attend the CRT Industry    11:46:37

 6    Association meetings?                            11:46:43

 7             MR. HWU:  Hitachi is translated as Ri Li.   11:47:02

 8    Hitachi is Ri Li.                                11:47:10

 9             THE WITNESS:  I do not know.            11:47:26

10    BY MS. CAPURRO:                                  11:47:26

11        Q.   SEG Hitachi?                            11:47:30

12        A.   Are you referring to Sai Ge?           11:47:44

13        Q.   Yes.                                    11:47:51

14        A.   Yes, there was such a company.         11:47:55

15        Q.   Did Chunghwa attend the CRT Industry   11:47:59

16    Association meetings?                            11:48:03

17             MAIN INTERPRETER:  May the interpreter have   11:48:07

18    the spelling?                                    11:48:08

19             MS. CAPURRO:  C-h-u-n-g-h-w-a.          11:48:09

20             THE WITNESS:  What is it?               11:48:23

21             Yes, it seems that it did.  I cannot remember   11:48:40

22    clearly.  I am aware of this Chunghwa.           11:48:44

23    BY MS. CAPURRO:                                  11:48:47

24        Q.   All of these companies that we've just listed,   11:48:47

25    they were all Irico's competitors during the relevant   11:48:50
```

Page 71

```
 1   period, isn't that right?                           11:48:53

 2        A.   So from the broad sense, I believe so.    11:48:55

 3        Q.   What was the purpose of the CRT Industry  11:49:27

 4   Association meetings?                               11:49:30

 5        A.   It has past 11:30.                        11:49:34

 6             After this question, can we take a break? 11:49:47

 7        Q.   I'd like to finish my line of questioning. 11:49:50

 8   I'm nearly done.                                    11:49:53

 9        A.   How long does it take?                    11:50:02

10             I hope this series of questions will not drag  11:50:12

11   on too long because earlier we were talking about 11:30.  11:50:14

12        Q.   Mr. Wang, can you please answer my question?  11:50:21

13             We can take a break when we're done.  I'll try  11:50:23

14   to be as quick as I can.                            11:50:28

15        A.   That's fine, but I hope it will not take too  11:50:37

16   long because it is lunchtime over here.             11:50:41

17        Q.   Can you answer my question:  What was the  11:50:46

18   purpose of the CRT Industry Association meetings?   11:50:48

19        A.   I am not clear about its purpose, but I just  11:50:51

20   attended this meeting a few times.  During the meeting,  11:51:15

21   we would communicate about some information.  Sometimes  11:51:21

22   we would communicate about the market information.  11:51:26

23        Q.   What kind of market information would you  11:51:34

24   discuss?                                            11:51:40

25        A.   Generally speaking, the supply and demand  11:51:40
```

Page 72

| | | |
|---|---|---|
| 1 | issues and relationship. | 11:51:59 |
| 2 | Q.   Would you discuss CRT production levels? | 11:52:02 |
| 3 | A.   Are you talking about the cost? | 11:52:06 |
| 4 | Q.   No. | 11:52:26 |
| 5 | I'm talking about production levels, | 11:52:26 |
| 6 | production of CRT, how many each company was producing. | 11:52:28 |
| 7 | A.   We would.  But, however, I would not -- I | 11:52:48 |
| 8 | would not think that that information was true. | 11:52:55 |
| 9 | MS. CAPURRO:  I'd like to strike that last | 11:53:02 |
| 10 | part as nonresponsive. | 11:53:04 |
| 11 | MR. LUCARELLI:  Opposed. | 11:53:05 |
| 12 | BY MS. CAPURRO: | 11:53:12 |
| 13 | Q.   Did you discuss CRT pricing levels at the CRT | 11:53:13 |
| 14 | Industry Association meetings? | 11:53:19 |
| 15 | A.   I'm not clear about that. | 11:53:22 |
| 16 | Q.   What are you not clear about? | 11:53:31 |
| 17 | A.   I am not clear about whether we would discuss | 11:53:34 |
| 18 | the pricing or not, but based on my knowledge, we did | 11:53:51 |
| 19 | not. | 11:53:56 |
| 20 | Q.   Did anyone from Irico go with you to these CRT | 11:53:58 |
| 21 | Industry Association meetings? | 11:54:02 |
| 22 | A.   I believe so. | 11:54:04 |
| 23 | Q.   Who went with you to these meetings? | 11:54:17 |
| 24 | A.   It has been too long.  I really cannot | 11:54:24 |
| 25 | remember clearly.  I remember once -- only one time that | 11:54:37 |

Page 73

| | | |
|---|---|---|
| 1 | Shizheng Song went with me. | 11:54:53 |
| 2 | MAIN INTERPRETER:  The name spelling is | 11:54:55 |
| 3 | S-h-i-z-h-e-n-g, last name S-o-n-g. | 11:54:56 |
| 4 | THE WITNESS:  Shizheng Song took me there | 11:55:05 |
| 5 | once. | 11:55:06 |
| 6 | BY MS. CAPURRO: | 11:55:06 |
| 7 | Q.   Anyone else? | 11:55:10 |
| 8 | A.   Okay, after this question we'll break, okay? | 11:55:11 |
| 9 | Q.   Okay. | 11:55:18 |
| 10 | A.   I cannot remember clearly.  I hope your | 11:55:28 |
| 11 | questions can be more specific, okay? | 11:55:31 |
| 12 | MS. CAPURRO:  Okay.  Let's go off the record. | 11:55:36 |
| 13 | We'll break for lunch. | 11:55:38 |
| 14 | THE VIDEOGRAPHER:  We are off the record at | 11:55:39 |
| 15 | 11:55 a.m. | 11:55:41 |
| 16 | (The lunch recess was taken.) | 11:55:46 |
| 17 | THE VIDEOGRAPHER:  We are back on the record | 13:00:02 |
| 18 | at 1:00 p.m. | 13:00:11 |
| 19 | BY MS. CAPURRO: | 13:00:13 |
| 20 | Q.   Good afternoon, Mr. Wang. | 13:00:15 |
| 21 | Before the break, you testified that you could | 13:00:17 |
| 22 | not remember clearly anyone else who attended the CRT | 13:00:21 |
| 23 | Industry Association meetings with you. | 13:00:26 |
| 24 | Do you remember anyone who attended with you? | 13:00:28 |
| 25 | A.   I cannot be sure because it has been a long | 13:00:32 |

Page 74

| | |
|---|---|
| 1 | time. For sure, there would be some other people, but I | 13:01:11 |
| 2 | just cannot remember. | 13:01:16 |
| 3 | Q. But as I informed you at the beginning when we | 13:01:19 |
| 4 | were discussing the rules, I'm entitled to your best | 13:01:21 |
| 5 | recollection, so if you remember at all, I'm entitled to | 13:01:24 |
| 6 | that testimony. | 13:01:27 |
| 7 | Would you please tell me whether or not you | 13:01:29 |
| 8 | remember anyone else who attended these meetings with | 13:01:32 |
| 9 | you? | 13:01:36 |
| 10 | MR. LUCARELLI: Object to form. | 13:01:36 |
| 11 | THE WITNESS: It has been a long time. I | 13:01:56 |
| 12 | cannot remember clearly. | 13:01:59 |
| 13 | BY MS. CAPURRO: | 13:01:59 |
| 14 | Q. So it's your testimony that you don't remember | 13:02:02 |
| 15 | at all anyone else, other than the individual you | 13:02:04 |
| 16 | mentioned, Mr. Song? You don't remember anyone else who | 13:02:07 |
| 17 | attended these meetings with you, is that correct? | 13:02:14 |
| 18 | MR. LUCARELLI: Object to form. | 13:02:16 |
| 19 | THE WITNESS: I do not remember very clearly. | 13:02:31 |
| 20 | BY MS. CAPURRO: | 13:02:31 |
| 21 | Q. Mr. Wang, do you remember who told you to go | 13:02:39 |
| 22 | to the CRT Industry meetings? | 13:02:42 |
| 23 | A. I cannot remember clearly because it has been | 13:02:46 |
| 24 | such a long time and I have had so many supervisors. | 13:03:01 |
| 25 | Q. But you would have been instructed by your | 13:03:06 |

Page 75

| | | |
|---|---|---|
| 1 | supervisor to attend these meetings, correct? | 13:03:08 |
| 2 | A.   Correct. | 13:03:14 |
| 3 | Q.   Would your supervisor have gone with you to | 13:03:26 |
| 4 | the meetings? | 13:03:29 |
| 5 | A.   I cannot remember very clearly. | 13:03:31 |
| 6 | Q.   Can you remember whether Wei Jianshe went to | 13:03:39 |
| 7 | these meetings with you? | 13:03:44 |
| 8 | MS. YANG:  Ms. Tan, it's Wei Jianshe. | 13:03:55 |
| 9 | THE WITNESS:  I cannot remember clearly. | 13:04:03 |
| 10 | BY MS. CAPURRO: | 13:04:03 |
| 11 | Q.   Do you remember at all? | 13:04:07 |
| 12 | A.   I cannot remember clearly. | 13:04:10 |
| 13 | Q.   Do you remember whether Li Weisheng attended | 13:04:19 |
| 14 | any of these meetings with you? | 13:04:23 |
| 15 | A.   I cannot remember clearly.  I cannot remember | 13:04:28 |
| 16 | very clearly. | 13:04:50 |
| 17 | Q.   Mr. Wang, how many CRT Industry Association | 13:04:52 |
| 18 | meetings would you say you attended during the relevant | 13:04:55 |
| 19 | period? | 13:04:57 |
| 20 | A.   A few times.  I cannot remember clearly. | 13:05:15 |
| 21 | Q.   Can you please give me your best estimate? | 13:05:18 |
| 22 | Would it have been 15 meetings?  20 meetings?  50 | 13:05:21 |
| 23 | meetings? | 13:05:27 |
| 24 | A.   In my recollection, three or four times.  I | 13:05:28 |
| 25 | don't remember the specific number but I did attend the | 13:05:54 |

Page 76

| | | |
|---|---|---|
| 1 | matter. | 13:10:42 |
| 2 | BY MS. CAPURRO: | 13:10:42 |
| 3 | Q. So what are you not clear about, Mr. Wang? | 13:10:46 |
| 4 | MR. LUCARELLI: Object to the form. | 13:10:53 |
| 5 | THE WITNESS: The event you are talking about, | 13:10:57 |
| 6 | I'm not clear about those events. | 13:11:00 |
| 7 | BY MS. CAPURRO: | 13:11:02 |
| 8 | Q. I'm referring to documents that have been | 13:11:03 |
| 9 | produced in this litigation by Irico's competitors that | 13:11:05 |
| 10 | show that Irico representatives attended over 100 | 13:11:08 |
| 11 | meetings with their competitors, and I asked if you | 13:11:13 |
| 12 | reviewed any of those documents. | 13:11:18 |
| 13 | MR. LUCARELLI: Object to form. | 13:11:25 |
| 14 | THE WITNESS: I've not seen this document. | 13:11:48 |
| 15 | BY MS. CAPURRO: | 13:11:51 |
| 16 | Q. Okay. Do you know how often the CRT Industry | 13:11:51 |
| 17 | Association met? | 13:12:02 |
| 18 | A. I'm not very clear about that. | 13:12:05 |
| 19 | Q. Would it have been once a month? Once a | 13:12:20 |
| 20 | quarter? | 13:12:25 |
| 21 | A. I'm not clear about that. I cannot remember. | 13:12:32 |
| 22 | MS. CAPURRO: I'm going to mark the next | 13:12:37 |
| 23 | exhibit. Bear with me a second. | 13:12:38 |
| 24 | For the record, this is the next exhibit in | 13:13:30 |
| 25 | order, Exhibit 8559. | 13:13:32 |

Page 79

```
 1        A.    I see that.                            13:24:09

 2        Q.    Irico Group Sales Company is how Irico Group   13:24:26

 3   referred to its sales department, isn't that right?   13:24:30

 4        A.    Correct.                               13:24:33

 5        Q.    And Irico Group Sales Company's sign-off at   13:24:44

 6   the end of this document indicates that this document   13:24:48

 7   was authored by someone at Irico Sales Company, isn't   13:24:50

 8   that?                                             13:24:53

 9        A.    I cannot guess about this.  Whatever is   13:25:19

10   written on this document, then it stands.          13:25:22

11        Q.    What other explanation is there for it saying   13:25:27

12   "Irico Group Sales Company," at the bottom of this   13:25:31

13   document?                                         13:25:34

14             MR. LUCARELLI:  Object to form.          13:25:36

15             THE WITNESS:  I'm not clear about that because   13:25:41

16   I've never seen this document.                     13:25:54

17   BY MS. CAPURRO:                                    13:25:54

18        Q.    But Irico Group Sales Company would have put   13:25:58

19   "Irico Group Sales Company" at the end of their    13:26:00

20   documents, right?                                 13:26:03

21        A.    Whatever is written here, then that is what it   13:26:04

22   is.                                               13:26:23

23        Q.    Do you have any reason to doubt that this is   13:26:23

24   an Irico document?                                13:26:26

25        A.    I have never seen this document.  I cannot   13:26:28
```

Page 82

1    evaluate it.                                          13:26:45

2        Q.   Is this the type of document that Irico Group    13:26:48

3    Sales Company prepared in advance of the CRT Industry    13:26:53

4    meetings?                                             13:26:57

5            MR. LUCARELLI:  Object to form.                13:27:00

6            THE WITNESS:  I'm not clear about this matter.   13:27:12

7    BY MS. CAPURRO:                                        13:27:28

8        Q.   Are you not clear about the question,         13:27:28

9    Mr. Wang?                                             13:27:30

10       A.   Please repeat the question.                  13:27:31

11       Q.   The question was:  Is this the type of       13:27:42

12   document that Irico Group Sales Company prepared in    13:27:44

13   advance of the CRT Industry meetings?                 13:27:47

14       A.   I am not clear about this.  I am not aware of   13:27:49

15   this kind of matter.                                  13:28:09

16       Q.   But you said you attended the CRT Industry    13:28:11

17   Association meetings, correct?                         13:28:15

18       A.   Correct.                                     13:28:21

19       Q.   Were you aware of Irico Group Sales Company   13:28:24

20   preparing documents in advance of the CRT Industry    13:28:28

21   Association meetings?                                  13:28:33

22           MR. LUCARELLI:  Object to form.                13:28:37

23           THE WITNESS:  For those meetings that I have   13:28:50

24   attended, there was no such type of document.         13:28:52

25                                                         13:28:52

Page 83

```
 1    BY MS. CAPURRO:                                    13:28:52

 2         Q.   Were you aware of members of the CRT Industry   13:29:07

 3    Association exchanging materials in advance of the    13:29:12

 4    meetings?                                          13:29:19

 5         A.   I'm not clear about that.                 13:29:21

 6         Q.   What are you not clear about, Mr. Wang?   13:29:35

 7         A.   The matter you are referring to.          13:29:42

 8         Q.   Did you -- did the members of the CRT Industry   13:29:48

 9    Association exchange meeting materials or not?      13:29:52

10         MR. LUCARELLI:  Object to form.                13:29:56

11         THE WITNESS:  What time are you referring to?  13:30:13

12    BY MS. CAPURRO:                                     13:30:13

13         Q.   I'm referring to any of the times that you   13:30:17

14    attended CRT Industry Association meetings.         13:30:19

15         A.   There would be oral exchanges of information.   13:30:35

16         Q.   Mr. Wang, I'm asking you whether there were   13:30:41

17    written materials exchanged prior to the meeting.   13:30:44

18              Are you telling me you don't remember whether   13:30:49

19    there were written materials exchanged or something   13:30:52

20    else?                                               13:30:54

21         MR. LUCARELLI:  Object to form.                13:30:55

22         THE WITNESS:  Based on my understanding of     13:31:08

23    this, I do not know.                                13:31:11

24    BY MS. CAPURRO:                                     13:31:11

25         Q.   You do not know whether you don't remember?   13:31:16
```

Page 84

| | | |
|---|---|---|
| 1 | Is that your testimony? | 13:31:18 |
| 2 | MR. LUCARELLI:  Object to form. | 13:31:22 |
| 3 | THE WITNESS:  I don't know, because when I was | 13:31:44 |
| 4 | asked to attend the meeting, I would attend the meeting, | 13:31:46 |
| 5 | but the issue that you were mentioning earlier, I am not | 13:31:49 |
| 6 | clear about. | 13:31:54 |
| 7 | BY MS. CAPURRO: | 13:31:56 |
| 8 | Q.   Were written materials exchanged at the CRT | 13:31:57 |
| 9 | Industry Association meetings? | 13:32:01 |
| 10 | A.   As I remember, no.  When I was attending, | 13:32:03 |
| 11 | there wasn't any. | 13:32:21 |
| 12 | Q.   Mr. Wang, directing your attention to the | 13:32:22 |
| 13 | bottom part here of this last page of the document, it | 13:32:25 |
| 14 | says:  "To this point, we hope our CRT Industry peers | 13:32:30 |
| 15 | will unite, act in concert and face our foreign enemies | 13:32:34 |
| 16 | together." | 13:32:38 |
| 17 | MR. LUCARELLI:  Objection. | 13:33:08 |
| 18 | BY MS. CAPURRO: | 13:33:08 |
| 19 | Q.   Do you see that, Mr. Wang? | 13:33:22 |
| 20 | A.   I see it. | 13:33:24 |
| 21 | Q.   Was this the purpose of the CRT Industry | 13:33:27 |
| 22 | Association, for Irico to unite with their CRT | 13:33:32 |
| 23 | competitors and act in concert? | 13:33:37 |
| 24 | A.   I cannot guess randomly.  Whatever the | 13:33:39 |
| 25 | language is here, then that is what it is, because I do | 13:34:08 |

Page 85

| | | |
|---|---|---|
| 1 | Q.   And below that, it says:  "Next year we plan | 13:44:15 |
| 2 | to produce 6.5 million CRTs, consisting of the | 13:44:17 |
| 3 | following," and then it lists the numbers for different | 13:44:21 |
| 4 | sizes and types of CDTs and CPTs. | 13:44:24 |
| 5 | Do you see that? | 13:44:29 |
| 6 | A.   I see that. | 13:44:30 |
| 7 | Q.   And this is Irico's future production plans, | 13:44:50 |
| 8 | isn't that right? | 13:44:55 |
| 9 | A.   That I don't know.  This is a matter of 1995. | 13:44:56 |
| 10 | I don't know this is the production plan or not. | 13:45:13 |
| 11 | Q.   Irico's future production plans would have | 13:45:18 |
| 12 | been highly confidential, isn't that right? | 13:45:20 |
| 13 | A.   I believe so. | 13:45:23 |
| 14 | Q.   Is this the type of information that was | 13:45:36 |
| 15 | exchanged at the CRT Industry Association meetings that | 13:45:39 |
| 16 | you attended? | 13:45:42 |
| 17 | A.   One more time. | 13:45:44 |
| 18 | MS. CAPURRO:  Mr. Court Reporter, if you | 13:46:11 |
| 19 | would, please. | 13:46:14 |
| 20 | (Record read by reporter: | 13:46:15 |
| 21 | "QUESTION:  Is this the type of | 13:45:37 |
| 22 | information that was exchanged at the CRT | 13:45:38 |
| 23 | Industry Association meetings that you | 13:45:41 |
| 24 | attended?") | 13:45:42 |
| 25 | THE WITNESS:  So, well, as far as production | 13:46:43 |

Page 89

| | | |
|---|---|---|
| 1 | Bates number CHU0012479 to 85. | 15:00:24 |
| 2 | (Exhibit 8564 marked for identification.) | 15:00:24 |
| 3 | BY MS. CAPURRO: | 15:00:24 |
| 4 | Q.   Mr. Wang, this is a very long document.  You | 15:00:45 |
| 5 | can look through it, but there's no need to read the | 15:00:47 |
| 6 | entire document.  I'll read to you portions of the | 15:00:51 |
| 7 | document that I want to ask you about. | 15:00:56 |
| 8 | A.   Okay, allow me to take a look first. | 15:01:09 |
| 9 | Okay, I'm ready. | 15:02:37 |
| 10 | Q.   Okay.  This is a document entitled "Market | 15:02:39 |
| 11 | Alert," "Issue 0518." | 15:02:42 |
| 12 | At the top here, it says "Irico Group Sales | 15:02:47 |
| 13 | Company," "March 09, 2005," isn't that right? | 15:02:52 |
| 14 | A.   Correct. | 15:02:55 |
| 15 | Q.   At this time, on March 9, 2005, you would have | 15:03:12 |
| 16 | been the director of Irico Sales Company, isn't this | 15:03:15 |
| 17 | right? | 15:03:19 |
| 18 | A.   That's not correct. | 15:03:20 |
| 19 | Q.   You were a director of the sales department | 15:03:40 |
| 20 | within Irico Group Sales Company in March 2005, isn't | 15:03:43 |
| 21 | that right? | 15:03:51 |
| 22 | A.   I think that should be my role, around that | 15:03:51 |
| 23 | time, pretty much around that time, but I don't recall | 15:04:13 |
| 24 | clearly. | 15:04:16 |
| 25 | Q.   This document appears to have been produced by | 15:04:19 |

Page 109

```
 1    Irico Group Sales Company, isn't that right?          15:04:23

 2              MR. LUCARELLI:  Object to form.              15:04:33

 3              THE WITNESS:  I do not know where it came    15:04:44

 4    from.                                                  15:04:46

 5    BY MS. CAPURRO:                                        15:04:46

 6        Q.   Does this look like the type of report that  15:04:48

 7    Irico Group Sales Company prepared during this time   15:04:51

 8    period?                                                15:04:54

 9        A.   I don't quite remember.                      15:04:57

10        Q.   You testified in your last deposition that   15:05:15

11    your sales representative who worked for you, you had 15:05:17

12    them prepare reports.                                  15:05:21

13              Is this the type of report you were referring 15:05:24

14    to?                                                    15:05:27

15        A.   The sales people would only provide          15:05:27

16    information.  As to market alerts or market news such as 15:06:04

17    this, perhaps, they would also prepare this, but I don't 15:06:10

18    quite remember.                                        15:06:14

19        Q.   So is it your testimony that you don't know  15:06:18

20    who at Irico Sales Company would have prepared this type 15:06:21

21    of report?                                             15:06:25

22        A.   I only said that with respect to this        15:06:30

23    document.  Right now, I don't remember clearly.        15:06:47

24        Q.   Do you remember whether Irico Group Sales    15:06:54

25    Company produced documents referred to as market alerts? 15:06:59
```

Page 110

1      Q.   He was your supervisor at that time, too, was      17:14:01

2  he not?                                                      17:14:08

3      A.   Correct.                                            17:14:09

4      Q.   He would have had to authorize Liang Yuan to        17:14:14

5  send this information to Chunghua, would he not?             17:14:19

6      A.   That's again a leading question and, also, I        17:14:27

7  do not know about this matter, and it all sounded very       17:14:42

8  strange to me.                                               17:14:49

9      Q.   Directing your attention to the next document       17:14:59

10  that was attached to the email, this is another regular     17:15:03

11  sales and marketing meeting report.  I'll get to the        17:15:14

12  Chinese version.                                            17:15:28

13          At the top of the document, it says "Regular        17:15:56

14  Sales and Marketing Meeting."                               17:15:59

15      A.   Are you talking about the small print on this      17:16:10

16  page?                                                       17:16:12

17      Q.   No, I'm talking about right here where I'm         17:16:13

18  indicating at the top of the page.                          17:16:15

19      A.   It only says "Sales and Marketing," "Regular."     17:16:22

20      Q.   Okay.  And the date here is March 22, 2006, on     17:16:29

21  the right-hand side here, isn't that right?                 17:16:36

22      A.   That's what's shown on the document.               17:16:45

23      Q.   And again, it says "Sales and Marketing            17:16:47

24  Department," isn't that right?                              17:16:50

25      A.   That's what it shows.                              17:16:57

Page 148

```
 1        Q.    And again, it shows "For internal use only.      17:17:03
 2   Confidential," isn't that right?                            17:17:06
 3        A.    That's what the document shows.                  17:17:09
 4        Q.    But yet, Liang Yuan sent it to SJ Yang at        17:17:17
 5   Chunghwa, isn't that right?                                 17:17:23
 6        A.    I don't know about that.                         17:17:26
 7        Q.    Well, isn't that what the email shows that we    17:17:32
 8   looked at, at the beginning of this exhibit?                17:17:35
 9        A.    I do not know about that matter.  I'm not        17:17:38
10   clear about that, including these details, the content,     17:17:55
11   the authenticity of the content.  I do not know about       17:17:59
12   any of those.                                               17:18:03
13        Q.    Directing your attention to the final page of    17:18:15
14   the document CHU00505513 --                                 17:18:17
15        A.    I see it.                                        17:18:46
16        Q.    -- it says "Irico Sales and Marketing            17:18:46
17   Department, March 22, 2006," isn't that right?              17:18:48
18        A.    Yes.                                             17:18:53
19        Q.    So does that tell you that this was a document   17:19:04
20   prepared by Irico sales and marketing department on or      17:19:06
21   around March -- March 22nd, 2006?                           17:19:10
22        A.    Actually, this looks very unfamiliar to me.  I   17:19:16
23   do not know why it's phrased or called as the sales and     17:19:42
24   marketing department.  We usually do not call them in       17:19:47
25   that way, so I cannot recall.                               17:19:51
```

Page 149

1   STATE OF CALIFORNIA        )

2   COUNTY OF SANTA BARBARA   )   ss.

3

4        I, Mark McClure, C.S.R. No. 12203, in and for

5   the State of California, do hereby certify:

6        That prior to being examined, the witness

7   named in the foregoing deposition was by me duly sworn

8   to testify to the truth, the whole truth, and nothing

9   but the truth;

10        That said deposition was taken down by me in

11   shorthand at the time and place therein named and

12   thereafter reduced to typewriting under my direction,

13   and the same is a true, correct, and complete transcript

14   of said proceedings;

15        That if the foregoing pertains to the original

16   transcript of a deposition in a Federal Case, before

17   completion of the proceedings, review of the transcript

18   { } was {X} was not required.

19        I further certify that I am not interested in

20   the event of the action.

21        Witness my hand this 3rd day of October, 2022.

22

23

24        Certified Shorthand Reporter
          State of California

25        CSR No. 12203

Page 161

```
 1              UNITED STATES DISTRICT COURT

 2            NORTHERN DISTRICT OF CALIFORNIA

 3                   OAKLAND DIVISION

 4

 5   IN RE: CATHODE RAY TUBE (CRT)  ) MASTER FILE NO.
     ANTITRUST LITIGATION           ) CV-07-5944 JST
 6   _____)
                                     )
 7   THIS DOCUMENT RELATES TO:       )
                                     )
 8   ALL INDIRECT PURCHASER ACTIONS  )
     ALL DIRECT PURCHASER ACTIONS    )
 9                                   )
                 DEFENDANTS.         )
10   _____)

11

12

13        VIDEOTAPED DEPOSITION OF WANG ZHAOJIE

14                    VOLUME II

15          WEDNESDAY, SEPTEMBER 21, 2022

16             MACAU S.A.R., CHINA

17

18

19

20

21

22

23   JOB NO.  5436467

24   REPORTED BY  MARK McCLURE, CRR

25               CAL CSR 12203
```

Page 1

```
 1                    WANG ZHAOJIE,

 2            having been sworn, was examined

 3               and testified as follows:

 4

 5                    EXAMINATION

 6   BY MS. CAPURRO:

 7       Q.   Good morning, Mr. Wang.  I hope you got some      08:07:01

 8   good sleep.                                                08:07:05

 9       A.   Thank you.                                        08:07:11

10       Q.   So, yesterday, when we finished up, we were       08:07:12

11   discussing Exhibit No. 8568.                               08:07:18

12            Can you go back to that exhibit again.  I have    08:07:20

13   that on my screen here and I'll share it, but if you       08:07:23

14   would pull it up on your screen as well, I think that      08:07:28

15   would be helpful.                                          08:07:31

16            Do you have it?                                   08:07:49

17       A.   I'm trying to find it.                            08:07:51

18       Q.   It would have been the very last exhibit.         08:07:57

19       A.   I see it.                                         08:08:04

20       Q.   Okay.  So, yesterday, you testified that you      08:08:05

21   attended CRT Industry Association meetings, isn't that     08:08:07

22   right?                                                     08:08:07

23       A.   Correct.                                          08:08:21

24       Q.   But you testified that you did not attend the     08:08:22

25   November 21st, 2006, meeting, reflected in Exhibit 8568,   08:08:25
```

Page 9

```
 1   correct?                                               08:08:31

 2        A.    Correct.                                     08:08:41

 3        Q.    Were there separate meetings of the CRT      08:08:43

 4   Industry Association for different levels of employees? 08:08:46

 5              MR. LUCARELLI:  Object to the form.          08:09:00

 6              THE WITNESS:  I do not know.                 08:09:03

 7   BY MS. CAPURRO:                                         08:09:05

 8        Q.    Let me give you an example.                  08:09:05

 9              So when you were the assistant head or head of 08:09:07

10   the sales department, would you have attended meetings  08:09:10

11   with employees of IRICO's competitors of a similar level 08:09:13

12   to you?                                                 08:09:17

13              MR. LUCARELLI:  Object to form.              08:09:32

14              THE WITNESS:  It has been too long.  I cannot 08:09:44

15   remember well.                                          08:09:49

16   BY MS. CAPURRO:                                         08:09:49

17        Q.    But the title of the meeting reflected in    08:09:51

18   Exhibit 8568 is "Meeting Minutes of 2006 Color Tube     08:09:54

19   Industry Presidents' Meeting."                          08:10:03

20              Do you see that, at the top of the page?     08:10:03

21        A.    I see it.                                    08:10:06

22        Q.    So were there -- strike that.                08:10:20

23              On the attendees of this meeting reflected in 08:10:24

24   8568, all of these were high-level executives from IRICO 08:10:28

25   and other -- and its competitors, isn't that right?     08:10:34
```

Page 10

```
 1              THE WITNESS:  I do not know.           08:19:07

 2    BY MS. CAPURRO:                                  08:19:08

 3         Q.   Directing your attention to the page Bates   08:19:09

 4    labeled CHU00102753.                             08:19:12

 5         A.   What page?                             08:19:32

 6              Let me take a look.                    08:19:32

 7         Q.   I'm showing you on the screen here.    08:19:34

 8         A.   Give me a moment.  You're talking about the   08:19:44

 9    page ending with --                              08:19:47

10         Q.   Yes.                                   08:19:52

11         A.   I see it.                              08:19:53

12         Q.   Okay.  I'm showing you with the cursor the   08:19:55

13    passage that I want to ask you about.  It's the one   08:19:57

14    beginning "Chief Secretary Yang."                08:20:00

15              Do you see that?                       08:20:13

16              It says -- no?                         08:20:27

17         A.   I see it.  Okay.                       08:20:28

18         Q.   It says:  "As for CPTF," that refers to   08:20:32

19    Chunghwa's Fuzhou factory, isn't that right?     08:20:36

20         A.   I'm not clear about that.  I do not know what   08:20:41

21    he's talking about.                              08:20:59

22         Q.   Have you ever seen the acronym "CPTF" to refer   08:20:59

23    to Chunghwa's Fuzhou factory?                    08:21:04

24         A.   I have some memory of it.              08:21:08

25         Q.   It says:  "As for CPTF, the country was   08:21:23
```

Page 14

```
 1    exporting all CDT made initially, now Fuzhou can do CPT    08:21:23

 2    business, and is a major shareholder of Huaxia."          08:21:34

 3          Can you translate that?                            08:21:35

 4      A.   I see this sentence.                              08:21:56

 5      Q.   It continues:  "The industry hopes to be able     08:21:57

 6    to send a representative to discuss with them and invite 08:21:59

 7    them into the industry to unify standards."              08:22:03

 8          Do you see that?                                   08:22:06

 9      A.   I see it.                                         08:22:07

10      Q.   So prior to this meeting in November 2006,        08:22:18

11    Chunghwa was not a member of the CRT Industry            08:22:23

12    Association, isn't that right?                           08:22:26

13      A.   That is your guess.  I cannot guess on this       08:22:27

14    matter.  I don't know.                                   08:22:47

15      Q.   That's what the document shows, Mr. Wang,         08:22:48

16    isn't that right?                                        08:22:51

17      A.   First of all, the text says what the text         08:22:52

18    says.  As for the content, I don't know about it.        08:23:06

19      Q.   Was the focus of the CRT Industry Association      08:23:12

20    meetings CPTs and not CDTs?                              08:23:15

21      A.   I don't know.                                     08:23:18

22      Q.   But you attended CRT Industry Association          08:23:32

23    meetings, isn't that right?                              08:23:39

24      A.   Correct.                                          08:23:45

25      Q.   And so, is it your testimony that you don't        08:23:48
```

Page 15

| | | |
|---|---|---|
| 1 | know whether you talked about CPTs or CDTs at those | 08:23:50 |
| 2 | meetings? | 08:23:54 |
| 3 |    MR. LUCARELLI:  Object to form. | 08:24:01 |
| 4 |    THE WITNESS:  I feel the question is too | 08:24:18 |
| 5 | broad. | 08:24:20 |
| 6 |    Can you ask it from another perspective, make | 08:24:21 |
| 7 | it more specific, please? | 08:24:25 |
| 8 | BY MS. CAPURRO: | 08:24:27 |
| 9 |  Q.   I'm not sure how to make that question more | 08:24:27 |
| 10 | specific. | 08:24:29 |
| 11 |    You testified that you -- go ahead. | 08:24:39 |
| 12 |  A.   Please continue. | 08:24:45 |
| 13 |    The questions you have been asking are too | 08:24:48 |
| 14 | broad.  I cannot answer your questions.  I only know the | 08:25:00 |
| 15 | things that I have experienced during my career.  As for | 08:25:04 |
| 16 | the things I have not experienced, I cannot answer. | 08:25:09 |
| 17 |  Q.   Based on your experience, Mr. Wang, do you | 08:25:18 |
| 18 | recall that Chunghwa manufactured only CDTs until late | 08:25:20 |
| 19 | in 2006? | 08:25:27 |
| 20 |    MR. LUCARELLI:  Object to form. | 08:25:30 |
| 21 |    THE WITNESS:  I don't remember it. | 08:25:45 |
| 22 | BY MS. CAPURRO: | 08:25:45 |
| 23 |  Q.   So the passage I just read you about CPTF | 08:25:47 |
| 24 | suggesting that the reason that Chief Secretary Yang | 08:25:52 |
| 25 | wants to invite Chunghwa into the CRT Industry | 08:25:56 |

Page 16

```
 1          A.    Okay.  I'm ready.                         10:05:59

 2          Q.    Okay.  Have you seen this document before,  10:09:05

 3   Mr. Wang?                                              10:09:12

 4          A.    I have not seen this document before.     10:09:13

 5          Q.    I'm directing your attention to the top of the  10:09:21

 6   page.  It's entitled "Information Weekly," and it states  10:09:24

 7   "Sales Company, 70th Issue, July 8-15, 2005."          10:09:28

 8                Do you see that?                          10:09:33

 9          A.    I see it.                                 10:09:52

10          Q.    This is another one of the weekly reports that  10:09:53

11   you previously testified you instructed your sales reps  10:09:56

12   to compile every week, isn't it?                       10:09:59

13          A.    Yes, we have compiled weekly -- information  10:10:14

14   weekly reports.                                        10:10:17

15          Q.    And this is one of those reports, isn't that  10:10:18

16   right?                                                 10:10:26

17          A.    I'm not sure.                             10:10:26

18          Q.    Does it look like the reports that you asked  10:10:28

19   your sales reps to compile during the relevant period?  10:10:33

20          A.    First of all, it looks like one of those  10:10:36

21   reports, but I'm not sure if it is actually one of those  10:11:08

22   reports.  I'm talking about the "Information Weekly."   10:11:12

23          Q.    Is that what you called the reports,       10:11:17

24   "Information Weekly"?                                   10:11:20

25          A.    Call what?                                10:11:21
```

Page 208

```
 1       Q.    The weekly reports that you had your sales      10:11:30

 2   reps compile, did you call those "Information Weekly"?    10:11:32

 3       A.    Correct.                                        10:11:38

 4       Q.    And where it says -- do you see where it says   10:11:45

 5   "70th Issue"?                                             10:11:49

 6       A.    I see it.                                       10:11:52

 7       Q.    Does that indicate that there were 69 prior     10:11:56

 8   Information Weeklys before this one?                      10:11:59

 9       A.    I cannot be certain about that.                 10:12:01

10       Q.    But these reports were produced every week, is  10:12:16

11   that right?                                               10:12:19

12       A.    I believe so.                                   10:12:25

13       Q.    And they were -- so they were produced as part  10:12:27

14   of the regular course of business in IRICO's Sales        10:12:30

15   Company, isn't that right?                                10:12:33

16       A.    I think so.                                     10:12:34

17       Q.    Down the side here, in the left column, it      10:12:50

18   says "TCL," "Skyworth," "Konka," "Chang Hong,"            10:12:53

19   "Hisense," "Haier," and other Chinese entities.           10:13:01

20             Those are IRICO's customers, isn't that right?  10:13:07

21             MR. LUCARELLI:  Object to form.                 10:13:17

22             THE WITNESS:  Correct.                          10:13:30

23   BY MS. CAPURRO:                                           10:13:30

24       Q.    And directing your attention to the third       10:13:34

25   column in the TCL row entitled "Color TV Market," at the  10:13:36
```

Page 209

| | | |
|---|---|---|
| 1 | top here, it says:  "On July 14th, TCL Multimedia Group | 10:13:42 |
| 2 | issued an announcement that they incorporated sales and | 10:13:47 |
| 3 | marketing rights of TCL-Thomson Electronics Limited | 10:13:50 |
| 4 | (TTE) in North America and Europe held by Thomson at a | 10:13:56 |
| 5 | price of 107.1 million Hongkong dollars." | 10:14:01 |
| 6 | Do you see that? | 10:14:07 |
| 7 | A.   I see it. | 10:14:31 |
| 8 | Q.   So IRICO was aware that one of its major | 10:14:32 |
| 9 | competitors, TCL, was expanding its presence in North | 10:14:37 |
| 10 | America, is that right? | 10:14:41 |
| 11 | A.   I only speak for myself and I don't know about | 10:14:42 |
| 12 | this. | 10:15:07 |
| 13 | Q.   Directing your attention to the first column | 10:15:12 |
| 14 | and the row for Haier -- it's at the bottom of | 10:15:16 |
| 15 | CHU00124397 -- I'm showing it on my screen here. | 10:15:20 |
| 16 | A.   I see it. | 10:15:48 |
| 17 | Q.   And in the column -- the first column -- I'm | 10:15:49 |
| 18 | sorry, the second column stating -- entitled "Operating | 10:15:53 |
| 19 | Conditions," it says:  "For 21" PF (new AK) produced for | 10:15:56 |
| 20 | exporting to the United States, preparations for the | 10:16:04 |
| 21 | early stage are being intensified." | 10:16:08 |
| 22 | Do you see that? | 10:16:11 |
| 23 | A.   I see it. | 10:16:12 |
| 24 | Q.   And then in the third column it says:  "Sample | 10:16:40 |
| 25 | tubes of IRICO 21" (new AK) have a low luminance and | 10:16:43 |

Page 210

| | | |
|---|---|---|
| 1 | American engineers have arrived at Qingdao Haier by air | 10:16:49 |
| 2 | on the 15th day for consultation." | 10:16:53 |
| 3 | Do you see that? | 10:16:55 |
| 4 | A.   I see it. | 10:16:56 |
| 5 | Q.   So your sales reps are reporting on a new | 10:17:12 |
| 6 | 21-inch CRT television that IRICO's customer Haier is | 10:17:15 |
| 7 | producing for export to the United States, is that | 10:17:22 |
| 8 | right? | 10:17:25 |
| 9 | A.   I don't know that. | 10:17:49 |
| 10 | Q.   But that's what this says here, Mr. Wang, | 10:17:49 |
| 11 | isn't that right? | 10:17:52 |
| 12 | A.   The text says what it says, but I don't know | 10:18:01 |
| 13 | about the content. | 10:18:05 |
| 14 | Q.   Is it your testimony that you don't understand | 10:18:06 |
| 15 | the weekly reports that your sales reps were preparing | 10:18:08 |
| 16 | for you? | 10:18:11 |
| 17 | MR. LUCARELLI:  Object to form. | 10:18:12 |
| 18 | THE WITNESS:  I'm not clear about that. | 10:18:28 |
| 19 | BY MS. CAPURRO: | 10:18:28 |
| 20 | Q.   Your sales reps are further reporting to you | 10:18:31 |
| 21 | that IRICO's tubes are being tested so that IRICO can | 10:18:33 |
| 22 | supply those 21-inch tubes to Haier and that American | 10:18:36 |
| 23 | engineers from Haier America had traveled to Qingdao | 10:18:40 |
| 24 | because there was a quality issue with the tubes, isn't | 10:18:44 |
| 25 | that right? | 10:18:47 |

Page 211

```
 1      A.   No.                                          10:18:47

 2           According to my recollection, I don't think  10:19:27

 3  this happened, but I'm not sure about the description 10:19:30

 4  here.                                                 10:19:33

 5      Q.   Directing your attention to the final page   10:19:34

 6  where it says -- can you read that?  That final row on 10:19:51

 7  the bottom there where it says "Summary"?             10:19:58

 8      A.   Which one?                                   10:20:00

 9      Q.   The last row of the table, on the page Bates 10:20:12

10  numbered CHU00124398.  I'm showing you on the screen. 10:20:15

11      A.   Can you make it bigger?                      10:20:51

12      Q.   I'm looking in the third column here.  It    10:20:51

13  says:  "Supplier of color picture tube of most OEM color 10:20:54

14  TV is determined by the customer in advance."         10:20:58

15           Do you see that?                             10:21:01

16           MR. LUCARELLI:  Object.                      10:21:16

17           THE WITNESS:  I cannot see this.  I cannot see 10:21:20

18  this clearly.  I cannot see this clearly.  It's shaded. 10:21:23

19  BY MS. CAPURRO:                                       10:21:23

20      Q.   Mr. Wang, isn't it true that -- are you      10:21:35

21  familiar with the term "OEM"?                         10:21:37

22      A.   I'm aware of that.                           10:21:43

23      Q.   It stands for "original equipment            10:21:49

24  manufacturer," isn't that right?                      10:21:52

25      A.   Can you say that again, please.              10:22:11
```

                                                    Page 212

| | | |
|---|---|---|
| 1 | Q.   Let's move on. | 10:22:13 |
| 2 | OEMs manufacture televisions and monitors for | 10:22:14 |
| 3 | sale under another company's brand, isn't that right? | 10:22:18 |
| 4 | A.   I'm not so sure about the explanation of -- or | 10:22:21 |
| 5 | the definition of OEM, but it should be -- there should | 10:22:50 |
| 6 | be a standard explanation for the term "OEM," but I'm | 10:22:54 |
| 7 | not particularly clear about it. | 10:22:58 |
| 8 | Q.   When one of your customers was manufacturing | 10:23:02 |
| 9 | televisions for another customer of theirs, the ultimate | 10:23:06 |
| 10 | customer would have been involved in testing IRICO's | 10:23:13 |
| 11 | tubes, isn't that right? | 10:23:16 |
| 12 | MR. LUCARELLI:  Object to form. | 10:23:39 |
| 13 | THE WITNESS:  I don't know.  Usually no, and | 10:23:42 |
| 14 | this is the part that I don't quite understand. | 10:24:00 |
| 15 | Usually, you sell your tubes to your customers and they | 10:24:03 |
| 16 | sell it to other people, but they would not tell you | 10:24:07 |
| 17 | about that part because that's their business secret or | 10:24:10 |
| 18 | confidential information.  So usually, we would not know | 10:24:16 |
| 19 | about that part. | 10:24:19 |
| 20 | BY MS. CAPURRO: | 10:24:19 |
| 21 | Q.   Looking back at the row relating to Haier, | 10:24:23 |
| 22 | that -- in the first column where it says "For 21" PF | 10:24:28 |
| 23 | (new AK) produced for exporting to the United States, | 10:24:35 |
| 24 | preparation for the early stage are being intensified," | 10:24:38 |
| 25 | and in the third column, "Sample tubes of IRICO 21" (new | 10:24:40 |

Page 213

| | | |
|---|---|---|
| 1 | AK) have a low luminance and American engineers have | 10:24:43 |
| 2 | arrived at Qingdao Haier by air on 15th day for | 10:24:46 |
| 3 | consultation." | 10:24:51 |
| 4 | That indicates, does it not, that the U.S. | 10:24:52 |
| 5 | customer was traveling to China to test IRICO's tubes | 10:24:55 |
| 6 | for compatibility with the television, isn't that right? | 10:24:59 |
| 7 | A.   You referenced two portions earlier, but I | 10:25:02 |
| 8 | only heard the second one. | 10:26:00 |
| 9 | What was the first part you read? | 10:26:01 |
| 10 | Q.   The first column in the row for Haier says: | 10:26:10 |
| 11 | "For 21" PF (new AK) produced for exporting to the | 10:24:31 |
| 12 | United States, preparation for the early stage are being | 10:24:36 |
| 13 | intensified." | 10:24:39 |
| 14 | A.   Okay.  And what was the question? | 10:26:46 |
| 15 | Q.   Does this refresh your recollection that IRICO | 10:26:55 |
| 16 | knew its customers were making televisions for the | 10:26:58 |
| 17 | United States market with IRICO tubes? | 10:27:01 |
| 18 | A.   No, I don't know it. | 10:27:04 |
| 19 | MS. CAPURRO:  You can set that document aside. | 10:27:27 |
| 20 | Let's mark the next exhibit. | 10:27:30 |
| 21 | (Exhibit 8572 marked for identification.) | 10:28:12 |
| 22 | MS. CAPURRO:  Mr. Wang, we marked the next | 10:28:12 |
| 23 | exhibit in order, 8572.  Please take a minute to review | 10:28:13 |
| 24 | the document and let me know when you're ready. | 10:28:18 |
| 25 | I have very limited questions on this document | 10:28:22 |

Page 214

```
 1   STATE OF CALIFORNIA        )

 2   COUNTY OF SANTA BARBARA  )   ss.

 3

 4         I, Mark McClure, C.S.R. No. 12203, in and for

 5   the State of California, do hereby certify:

 6             That prior to being examined, the witness

 7   named in the foregoing deposition was by me duly sworn

 8   to testify to the truth, the whole truth, and nothing

 9   but the truth;

10             That said deposition was taken down by me in

11   shorthand at the time and place therein named and

12   thereafter reduced to typewriting under my direction,

13   and the same is a true, correct, and complete transcript

14   of said proceedings;

15             That if the foregoing pertains to the original

16   transcript of a deposition in a Federal Case, before

17   completion of the proceedings, review of the transcript

18   { } was {X} was not required.

19             I further certify that I am not interested in

20   the event of the action.

21             Witness my hand this 3rd day of October, 2022.

22

23

24             Certified Shorthand Reporter

               State of California

25             CSR No. 12203
```

Page 326

```
 1              UNITED STATES DISTRICT COURT
 2            NORTHERN DISTRICT OF CALIFORNIA
 3                   OAKLAND DIVISION
 4
 5   IN RE: CATHODE RAY TUBE (CRT)  ) MASTER FILE NO.
     ANTITRUST LITIGATION           ) CV-07-5944 JST
 6   _____ )
                                    )
 7   THIS DOCUMENT RELATES TO:      )
                                    )
 8   ALL INDIRECT PURCHASER ACTIONS )
     ALL DIRECT PURCHASER ACTIONS   )
 9                                  )
                DEFENDANTS.         )
10   _____ )
11
12
          VIDEOTAPED DEPOSITION OF WANG ZHAOJIE
13
                    VOLUME III
14
           THURSDAY, SEPTEMBER 22, 2022
15
                MACAU S.A.R., CHINA
16
17
18
19
20   FILE NO.  SF 5436468
21
22   REPORTED BY  MARK McCLURE, CRR
23             CAL CSR 12203
24
25
```

Page 322

```
 1              (Exhibit 8598 marked for identification.)      20:24:11

 2    BY MS. CAPURRO:                                          20:24:11

 3         Q.   Mr. Wang, for the record, I'm introducing the  20:24:13

 4    next exhibit, Exhibit No. 8598.  It's a document Bates   20:24:15

 5    stamped IRI-CRT-00033400 to 02.                          20:24:21

 6              Mr. Wang, please take a minute to review the   20:24:28

 7    document and let me know when you're ready.              20:24:31

 8         A.   Sure.  I'm ready.                              20:24:47

 9         Q.   Okay.  Directing your attention to the first   20:25:44

10    page of the document, Bates stamped IRI-CRT-00033400.    20:25:55

11              At the top of the document, it says:  "IRICO   20:26:03

12    Color Picture Tube Main Plant.  Account Transfer         20:26:07

13    Voucher."                                                20:26:07

14              Isn't that right?                              20:26:13

15              MAIN INTERPRETER:  Counsel, is there going to  20:26:31

16    be an objection?                                         20:26:33

17              MR. TALADAY:  Yes, I'm going to object to this 20:26:34

18    document and all testimony related to it on the basis    20:26:36

19    that that goes beyond the scope of our examination of    20:26:39

20    the witness.                                             20:26:42

21              THE WITNESS:  What did my counsel just say?    20:26:43

22              MR. TALADAY:  So, Madam Translator, I'll state 20:27:20

23    my objection again and then maybe you can translate it   20:27:24

24    for Mr. Wang, if he didn't hear it.                      20:27:28

25              I object to the use of this document as going  20:27:29
```

                                                        Page 377

| | | |
|---|---|---|
| 1 | beyond the scope of our direct examination and to all | 20:27:32 |
| 2 | testimony related to it. | 20:27:36 |
| 3 | MAIN INTERPRETER:  The interpreter did | 20:27:37 |
| 4 | translate the objection previously, but I'll do it | 20:27:39 |
| 5 | again. | 20:27:42 |
| 6 | THE WITNESS:  Do I need to answer? | 20:27:42 |
| 7 | BY MS. CAPURRO: | 20:28:03 |
| 8 | Q.  Yes. | 20:28:04 |
| 9 | The question was, Mr. Wang, do you see, at the | 20:28:05 |
| 10 | top of the page, where it says "IRICO Color Picture Tube | 20:28:07 |
| 11 | Main Plant.  Account Transfer Voucher"? | 20:28:11 |
| 12 | A.  I see it. | 20:28:22 |
| 13 | Q.  And do you see it's dated August 23rd, 2001? | 20:28:25 |
| 14 | A.  It shows what it shows. | 20:28:31 |
| 15 | Q.  It's a "yes" or "no" answer, Mr. Wang. | 20:28:42 |
| 16 | MR. TALADAY:  Object to form.  He doesn't have | 20:28:47 |
| 17 | to answer "yes" or "no." | 20:28:49 |
| 18 | BY MS. CAPURRO: | 20:29:01 |
| 19 | Q.  Mr. Wang, directing your attention to the box | 20:29:01 |
| 20 | that I'm indicating here on the screen, it says: | 20:29:03 |
| 21 | "Transfer:  Expenses for Ma Jinquan and others for going | 20:29:06 |
| 22 | abroad." | 20:29:11 |
| 23 | Do you see that? | 20:29:12 |
| 24 | A.  I see it. | 20:29:24 |
| 25 | Q.  You testified yesterday, did you not, that | 20:29:25 |

Page 378

```
 1    Mr. Ma was your superior, isn't that correct?          20:29:27

 2             MR. TALADAY:  Object to form and               20:29:39

 3    mischaracterization of the testimony.                  20:29:41

 4             THE WITNESS:  Yes.                             20:29:51

 5    BY MS. CAPURRO:                                         20:29:52

 6        Q.   This document appears to be an expense        20:29:53

 7    reimbursement to Mr. Ma for expenses incurred on a trip 20:29:59

 8    abroad, isn't that correct?                            20:30:04

 9             MR. TALADAY:  Object to form and               20:30:07

10    mischaracterization of the document.                   20:30:08

11             THE WITNESS:  I don't have an understanding    20:30:25

12    about it.                                              20:30:26

13    BY MS. CAPURRO:                                         20:30:26

14        Q.   Turning your attention to the next page of the 20:30:34

15    document, Bates stamped IRI-CRT-00033401 --            20:30:36

16        A.   Okay.                                         20:30:54

17        Q.   -- do you see here, at the top, it says, "For  20:30:54

18    5 people including Ma Jinquan for their trip to the U.S. 20:31:01

19    for the technical exchange."                           20:31:06

20             Do you see that?                              20:31:08

21        A.   I see it.                                     20:31:09

22        Q.   And do you see here where I'm indicating on    20:31:22

23    the screen, that is a signature by Zhang Shaowen, isn't 20:31:27

24    that right?                                            20:31:33

25             MR. TALADAY:  Object to form.                 20:31:34
```

                                                     Page 379

```
1              THE WITNESS:  I'm not sure.              20:31:43

2    BY MS. CAPURRO:                                    20:31:43

3        Q.   Do you know who Zhang Shaowen is?         20:31:45

4        A.   I know or know of Shaowen Zhang.          20:31:49

5        Q.   Do you recall that he was one of the leaders  20:32:01

6    of IRICO Group or IRICO'S plant in May 2001?       20:32:02

7              MR. TALADAY:  Object to form.  Lack of   20:32:19

8    foundation and characterization.                   20:32:21

9              THE WITNESS:  I don't quite remember.  It has  20:32:34

10   been too long.  I don't remember the circumstances 20:32:36

11   around that time frame.                            20:32:40

12   BY MS. CAPURRO:                                     20:32:40

13       Q.   Do you see here on the left, next to      20:32:47

14   Mr. Zhang's signature it says "Approval by Leader"? 20:32:50

15       A.   That's what it shows.                     20:33:04

16       Q.   You submitted many, many business trip expense  20:33:07

17   reimbursement forms to Group during the relevant period,  20:33:11

18   isn't that right, Mr. Wang?                         20:33:15

19       A.   No, my reimbursement forms were with -- to the  20:33:16

20   Sales Company.                                      20:33:40

21       Q.   But Sales Company was, as you testified   20:33:46

22   yesterday, a division of Group, isn't that right?  20:33:51

23             MR. TALADAY:  I object to the            20:34:07

24   mischaracterization of the testimony.              20:34:11

25             THE WITNESS:  Correct, the Sales Company is a  20:34:23
```

Page 380

```
 1    department or a division of the Group company.          20:34:26

 2    BY MS. CAPURRO:                                         20:34:26

 3        Q.   And doesn't this document appear to be an      20:34:31

 4    expense reimbursement request for a trip to the United  20:34:34

 5    States by five people, including Ma Jinquan, in May of  20:34:38

 6    2001?                                                   20:34:43

 7            MR. TALADAY:  Objection.  Lack of foundation.   20:34:59

 8            THE WITNESS:  I do not know.                    20:35:04

 9    BY MS. CAPURRO:                                         20:35:04

10        Q.   It's your testimony, Mr. Wang, that despite    20:35:12

11    the fact that you've worked for IRICO Group for         20:35:15

12    30 years, that you don't recognize an IRICO Group       20:35:20

13    expense reimbursement request?                          20:35:23

14            MR. TALADAY:  Object to the character --        20:35:26

15    mischaracterization of the testimony and the document.  20:35:28

16            THE WITNESS:  First of all, for the different   20:36:05

17    time periods and for different departments or units, the 20:36:08

18    format of the reimbursement request forms would be      20:36:13

19    different, and for this one, I have not seen -- seen     20:36:18

20    that before.  I do not know if it's the same as the form 20:36:22

21    I used before.                                          20:36:26

22    BY MS. CAPURRO:                                         20:36:26

23        Q.   Doesn't it say here, at the top of the         20:36:32

24    document "CAIHONG Electronics Group Corporation Payment  20:36:34

25    Request Form"?                                          20:36:52
```

                                                    Page 381

```
 1        A.   The text shows what it shows.              20:36:52

 2        Q.   And didn't IRICO Group used to refer to itself  20:36:55

 3   as CAIHONG Electronics Group Corporation?           20:36:59

 4             MR. TALADAY:  Object to the characterization.  20:37:03

 5             THE WITNESS:  The text shows what it shows.  I  20:37:32

 6   have not seen this document before.  I do not know what  20:37:35

 7   the circumstance was.                                20:37:38

 8   BY MS. CAPURRO:                                       20:37:38

 9        Q.   Mr. Wang, I didn't ask you to tell me what the  20:37:41

10   document shows.                                       20:37:44

11             I asked you, didn't IRICO Group used to refer  20:37:45

12   to itself as CAIHONG Electronics Group Corporation?  20:37:48

13             MR. TALADAY:  Same objection.              20:37:55

14             THE WITNESS:  That's correct, for a certain  20:38:10

15   period of time.                                       20:38:12

16   BY MS. CAPURRO:                                       20:38:12

17        Q.   And didn't you testify that Ma Jinquan was one  20:38:15

18   of your bosses during the time that you worked for IRICO  20:38:19

19   Group?                                                20:38:32

20             MR. TALADAY:  Object to form.              20:38:32

21             THE WITNESS:  That's correct.              20:38:35

22   BY MS. CAPURRO:                                       20:38:36

23        Q.   Directing your attention to the final page of  20:38:39

24   the document, it says, at the top here:  "Form for    20:38:41

25   Foreign Exchange Details for Write-off of Overseas Trip  20:38:41
```

Page 382

| | | |
|---|---|---|
| 1 | Expenses of Organizations, Groups and Enterprises." | 20:39:01 |
| 2 | Do you see that? | 20:39:01 |
| 3 | A.   The text shows what it shows. | 20:39:02 |
| 4 | Q.   Can you read for me the names of the | 20:39:18 |
| 5 | individuals listed here at the top, in addition to Ma | 20:39:20 |
| 6 | Jinquan, who it says was the head of the delegation. | 20:39:25 |
| 7 | MR. TALADAY:  Object to the characterization. | 20:39:35 |
| 8 | THE WITNESS:  You're talking about those | 20:39:46 |
| 9 | handwritten names, right? | 20:39:47 |
| 10 | BY MS. CAPURRO: | 20:39:47 |
| 11 | Q.   Correct, the handwritten names on the top | 20:39:49 |
| 12 | right of the document. | 20:39:52 |
| 13 | A.   The first name is Wu Yingzhong.  The second | 20:40:41 |
| 14 | name is Gao something.  Maybe it's Gao Yingjun.  And the | 20:40:45 |
| 15 | third one starts with Su, but I cannot quite tell what | 20:40:50 |
| 16 | the other two characters are.  And maybe the fourth one | 20:40:55 |
| 17 | is Gao Rongguo, but the handwriting is hard to read. | 20:41:01 |
| 18 | Q.   You testified yesterday that Gao Rongguo was, | 20:41:12 |
| 19 | at different times, an employee of IRICO Group and an | 20:41:17 |
| 20 | employee of CNEIEC, is that correct? | 20:41:21 |
| 21 | MR. TALADAY:  Object to the form and the | 20:41:24 |
| 22 | characterization. | 20:41:27 |
| 23 | THE WITNESS:  Whatever I said previously is | 20:41:47 |
| 24 | what I said. | 20:41:50 |
| 25 | | 20:41:50 |

Page 383

```
 1   BY MS. CAPURRO:                                    20:41:50

 2       Q.   And looking down the document to the middle  20:41:52

 3   where it lists various dates, down the side, the venues,  20:41:55

 4   on June 6th to June 8th, it says that this group of    20:42:01

 5   people from IRICO visited San Francisco, isn't that   20:42:05

 6   right?                                            20:42:10

 7            MR. TALADAY:  Object to the             20:42:28

 8   mischaracterization of the document.              20:42:29

 9            THE WITNESS:  The text says what it says.  20:42:49

10   BY MS. CAPURRO:                                    20:42:42

11       Q.   And they also, on June 9th, visited Silicon  20:42:42

12   Valley, isn't that right, Mr. Wang?               20:42:45

13            MR. TALADAY:  Same objection.           20:42:51

14            THE WITNESS:  What's shown on the document  20:42:59

15   would be what the document said.  I don't know about it.  20:43:01

16   BY MS. CAPURRO:                                    20:43:01

17       Q.   And the document also shows that they visited  20:43:05

18   Los Angeles and Las Vegas, isn't that right?      20:43:07

19            MR. TALADAY:  Object to the             20:43:12

20   mischaracterization.                              20:43:13

21            THE WITNESS:  I don't know.             20:43:24

22   BY MS. CAPURRO:                                    20:43:24

23       Q.   Did you ever remember hearing that Ma Jinquan  20:43:26

24   and Gao Rongguo and Wu Yingzhong and others visited the  20:43:28

25   United States in May 2001 -- or, sorry, June 2001?  20:43:35
```

Page 384

```
 1                MR. TALADAY:  Object to form.              20:43:57

 2                THE WITNESS:  I don't know.                20:43:59

 3     BY MS. CAPURRO:                                       20:43:59

 4          Q.   That wasn't my question.                   20:44:04

 5               I asked, do you remember hearing that these 20:44:05

 6     individuals visited the United States in June 2001?  20:44:11

 7                MR. TALADAY:  Same objection.              20:44:17

 8                THE WITNESS:  I don't remember.  I was not 20:44:35

 9     aware of that.  I don't recall.                       20:44:37

10     BY MS. CAPURRO:                                       20:44:37

11          Q.   So you don't remember what happened in      20:44:39

12     June 2001, is that right?                             20:44:42

13                MR. TALADAY:  Object to form.              20:44:51

14                THE WITNESS:  I do not know how to answer that 20:45:29

15     question.  Perhaps you can rephrase the question.  But 20:45:32

16     the way it sounds right now, you're asking me about the 20:45:35

17     things that happened during that one month in June in 20:45:40

18     2001.  I don't think I will be able to remember all the 20:45:44

19     things that happened within that one month, so I do not 20:45:48

20     know how to answer the question.                      20:45:51

21     BY MS. CAPURRO:                                       20:45:51

22          Q.   Okay.  Mr. Wang, directing your attention to 20:45:54

23     the bottom of the page and this seal here.            20:45:58

24               It says "Reimbursement approved," and the   20:46:01

25     signature of Zhang Zhankui, dated July 3rd, 2001, and 20:46:05
```

Page 385

| | | |
|---|---|---|
| 1 | then the seal is of IRICO Color Picture Tube Main Plant, | 20:46:12 |
| 2 | isn't that right? | 20:46:17 |
| 3 | A.   It shows what it shows. | 20:46:52 |
| 4 | Q.   Mr. Wang, do you recognize that seal as the | 20:46:57 |
| 5 | IRICO Color Picture Tube Main Plant seal? | 20:46:59 |
| 6 | A.   I can only say that it looks like it, but if | 20:47:31 |
| 7 | you want me to confirm if it is actually the seal, I | 20:47:36 |
| 8 | cannot confirm that.  I can only say that it's similar, | 20:47:41 |
| 9 | it looks similar. | 20:47:45 |
| 10 | MS. CAPURRO:  Thank you, Mr. Wang.  You can | 20:47:49 |
| 11 | set that document aside. | 20:47:51 |
| 12 | I'll mark the next exhibit. | 20:47:53 |
| 13 | For the record, this is Exhibit No. 8599, | 20:48:44 |
| 14 | Bates stamped IRI-CRT-00025756 to 765. | 20:48:48 |
| 15 | (Exhibit 8599 marked for identification.) | 20:48:48 |
| 16 | BY MS. CAPURRO: | 20:48:48 |
| 17 | Q.   Mr. Wang, please take a minute to review the | 20:48:58 |
| 18 | document and let me know when you're ready. | 20:49:01 |
| 19 | A.   Sure. | 20:49:17 |
| 20 | MR. TALADAY:  I'm going to object to this | 20:51:40 |
| 21 | document and all questions related to it as beyond the | 20:51:42 |
| 22 | scope of our examination, | 20:51:45 |
| 23 | THE WITNESS:  This is a long document.  I'm | 20:51:47 |
| 24 | not going to use more time, so you can go ahead with the | 20:53:16 |
| 25 | questions. | 20:53:20 |

Page 386

```
 1   BY MS. CAPURRO:                                    20:53:20

 2       Q.   Okay.  Thank you, Mr. Wang.              20:53:24

 3            What is your understanding of this document?  20:53:26

 4       A.   I don't know.                            20:53:32

 5       Q.   The title -- directing your attention to the  20:53:38

 6   first page of the document, IRI-CRT-00025756.    20:53:44

 7       A.   Okay, I see it.                           20:54:23

 8       Q.   It says, at the top of the page:  "Summary  20:54:24

 9   Table of Main Plant's Overseas Delegations in 1997."  20:54:27

10            Isn't that right?                         20:54:33

11       A.   The text says what it says.              20:54:34

12       Q.   And on the next page, Bates stamped      20:54:49

13   IRI-CRT-000 -- sorry, it's the same page.         20:54:55

14            Further down on that page, it shows that  20:55:01

15   people, or employees, of IRICO'S main plant visited the  20:55:07

16   United States on four occasions, isn't that right?  20:55:11

17            MR. TALADAY:  Object to the              20:55:19

18   mischaracterization of the document.              20:55:20

19            THE WITNESS:  I don't know.  That's a lot of  20:55:49

20   entries.  I didn't have enough time to read this  20:55:52

21   through.  I don't know.                           20:55:56

22   BY MS. CAPURRO:                                    20:55:57

23       Q.   Okay.  Mr. Wang, directing your attention to  20:55:58

24   rows No. 14, 17, 30, and 31, those all say that the  20:56:00

25   country, or countries, visited was the United States, is  20:56:14
```

Page 387

```
 1    that right?                                       20:56:20

 2         A.   Whatever the text shows is what it shows.   20:56:20

 3         Q.   Putting aside the document, Mr. Wang, were you   20:56:43

 4    aware -- strike that.                             20:56:49

 5              Putting aside this document, Mr. Wang, based   20:56:50

 6    on your experience and the fact that you worked for   20:56:52

 7    IRICO Group during this time, did you know that IRICO   20:56:55

 8    sent employees on overseas business trips?        20:56:59

 9              MR. TALADAY:  Object to form.            20:57:05

10              THE WITNESS:  I do not know.             20:57:32

11    BY MS. CAPURRO:                                    20:57:34

12         Q.   So you were not aware of IRICO ever sending   20:57:37

13    its employees on business trips to the United States, is   20:57:40

14    that your testimony?                              20:57:43

15              MR. TALADAY:  Objection.  Mischaracterizes the   20:57:45

16    testimony.  Object to form.                       20:57:47

17              THE WITNESS:  I did not know that.       20:58:05

18    BY MS. CAPURRO:                                    20:58:05

19         Q.   So you did not know that IRICO sent its   20:58:13

20    employees on business trips to the United States, is   20:58:17

21    that right?                                       20:58:21

22              MR. TALADAY:  Same objection.            20:58:22

23              THE WITNESS:  Are you talking about '97?   20:58:36

24    BY MS. CAPURRO:                                    20:58:36

25         Q.   Correct.                                20:58:39
```

Page 388

| | | |
|---|---|---|
| 1 | A.   I don't know that. | 20:58:42 |
| 2 | Q.   Directing your attention to the page Bates | 20:58:55 |
| 3 | labeled IRI-CRT-00025758, and the table is entitled | 20:58:59 |
| 4 | "Summary Table of Main Plant's Overseas Delegations in | 20:59:08 |
| 5 | 1998." | 20:59:12 |
| 6 | A.   What page? | 20:59:29 |
| 7 | Q.   I'm showing you on the screen, | 20:59:33 |
| 8 | IRI-CRT-00025758. | 20:59:40 |
| 9 | A.   Okay. | 21:00:04 |
| 10 | Q.   And in that -- on that page, on rows 3, 6, 18 | 21:00:04 |
| 11 | and 22, it shows that IRICO employees traveled to the | 21:00:12 |
| 12 | United States on business, isn't that right? | 21:00:19 |
| 13 | MR. TALADAY:  Same objection. | 21:00:22 |
| 14 | THE WITNESS:  The text shows what it shows. | 21:00:40 |
| 15 | BY MS. CAPURRO: | 21:00:40 |
| 16 | Q.   Were you aware, Mr. Wang, of IRICO sending its | 21:00:49 |
| 17 | employees on business trips to the United States in | 21:00:54 |
| 18 | 1998? | 21:00:57 |
| 19 | A.   I was not aware of that.  I do not remember | 21:00:58 |
| 20 | this clearly.  I don't know that. | 21:01:15 |
| 21 | Q.   Were you ever aware of IRICO sending its | 21:01:27 |
| 22 | employees on business trips to the United States? | 21:01:30 |
| 23 | MR. TALADAY:  Object to form. | 21:01:35 |
| 24 | THE WITNESS:  I have no memory of it.  I do | 21:01:52 |
| 25 | not recall. | 21:01:55 |

Page 389

```
 1    BY MS. CAPURRO:                                    21:01:55

 2         Q.   Directing your attention to the next page,   21:02:02

 3    Bates stamped IRI-CRT-00025759, and the table is    21:02:05

 4    entitled "Summary Table of Main Plant's Overseas    21:02:12

 5    Delegations in 1999."                               21:02:20

 6         A.   I see it.                                 21:02:36

 7         Q.   And in line No. 5, it says, does it not, that   21:02:37

 8    they visited the United States -- there were two people   21:02:46

 9    who visited the United States on February 1st, 1999, for   21:02:49

10    five days to attend an SID meeting.                 21:02:53

11              Do you know what that means, Mr. Wang?    21:02:56

12              MR. TALADAY:  Object to form.             21:02:59

13              THE WITNESS:  I don't know.               21:03:22

14    BY MS. CAPURRO:                                     21:03:24

15         Q.   Is the SID meeting an electronics exhibit,   21:03:28

16    Mr. Wang?                                           21:03:33

17              MR. TALADAY:  Object to form.             21:03:33

18              THE WITNESS:  I've heard that there was an   21:03:50

19    electronic show, but I do not quite recall what the   21:03:53

20    abbreviation was.                                   21:04:03

21    BY MS. CAPURRO:                                     21:04:04

22         Q.   Did you ever hear that the SID meeting was in   21:04:05

23    the United States?                                  21:04:09

24              MR. TALADAY:  Object to form.  Foundation.   21:04:16

25              THE WITNESS:  I don't know.               21:04:20
```

                                                     Page 390

```
 1   BY MS. CAPURRO:                                        21:04:21

 2        Q.   You don't know if you heard, is that right?  21:04:24

 3             MR. TALADAY:  Same objection.                21:04:29

 4             THE WITNESS:  I don't know.  Isn't SID -- like 21:04:36

 5   you said, was an electronics show?                     21:04:40

 6   BY MS. CAPURRO:                                        21:04:40

 7        Q.   I believe so, Mr. Wang.  I'm just trying to  21:04:46

 8   make sure your testimony is clear.                     21:04:48

 9             Is it your testimony that you don't know if  21:04:50

10   you heard that people from IRICO attended the SID      21:04:53

11   meeting?                                               21:04:57

12             MR. TALADAY:  Object to form.                21:05:00

13             THE WITNESS:  I do not remember this clearly. 21:05:24

14   BY MS. CAPURRO:                                        21:05:24

15        Q.   Mr. Wang, directing your attention to page   21:05:33

16   Bates labeled IRI-CRT-00025763.  I'm showing you the   21:05:43

17   page on my screen.                                     21:06:05

18             Do you see near the bottom of the page, it   21:06:18

19   says "Philips"?                                        21:06:22

20             Sorry, it's not the bottom of the page, it's 21:06:29

21   more like the middle of the page.  My translation is   21:06:32

22   different.  I'm sharing it with you on my screen,      21:06:37

23   Mr. Wang.                                              21:06:54

24             Can you see where I'm pointing with --       21:06:55

25        A.   I see it.                                    21:06:58
```

Page 391

```
 1        Q.   I'm sorry, I'm going to have to direct you to    21:07:05
 2   the top of the page before we do that.                     21:07:07
 3            It says, at the top of the page, does it not,     21:07:09
 4   "Summary Table of Groups Received in 1998."                21:07:13
 5            Do you see that?                                  21:07:18
 6            MR. TALADAY:  What page are we talking about,     21:07:24
 7   Lauren?                                                    21:07:26
 8            MS. CAPURRO:  The confusion, John, is because     21:07:28
 9   the English translation is much longer than the Chinese    21:07:31
10   original, and so in our translations it covers several     21:07:35
11   pages.                                                     21:07:40
12            MR. TALADAY:  Got it.  Thank you.  Yeah, I        21:07:40
13   see.                                                       21:07:43
14            MS. CAPURRO:  The Bates number where the title    21:07:46
15   is is IRI-CRT-00025762.  It's right here.                  21:07:49
16   BY MS. CAPURRO:                                            21:08:20
17        Q.   Do you see that title at the top of the page,    21:08:21
18   Mr. Wang, "Summary Table of Groups Received in 1998"?      21:08:24
19        A.   Yes.                                             21:08:30
20        Q.   Okay.  Now, go down to the next page where it    21:08:41
21   says "Philips."  I'm pointing with my cursor again.        21:08:43
22            It shows that Philips Brazil, France,             21:08:55
23   Netherlands and the United States -- six people from       21:08:59
24   those companies visited IRICO June 17th to June 19th of    21:09:02
25   1998.                                                      21:09:08
```

Page 392

```
1              MR. TALADAY:  Object to the characterization.    21:09:22

2              THE WITNESS:  The text shows what it shows.      21:09:40

3    BY MS. CAPURRO:                                            21:09:40

4        Q.   Do you recall representatives of Philips U.S.     21:09:45

5    visiting IRICO Group's factory in 1998?                    21:09:48

6              MR. TALADAY:  Object to form.                    21:10:04

7              THE WITNESS:  I don't know.  I don't know it.    21:10:09

8    No recollection about it.  I don't know it.                21:10:11

9    BY MS. CAPURRO:                                            21:10:11

10       Q.   You never remember hearing about                  21:10:15

11   representatives from Philips United States visiting        21:10:17

12   IRICO, is that correct?                                    21:10:22

13             MR. TALADAY:  Same objection.                    21:10:25

14             THE WITNESS:  That's correct, no memory of it.   21:10:35

15   BY MS. CAPURRO:                                            21:10:35

16       Q.   Why would representatives of Philips from the     21:10:41

17   United States be visiting IRICO, if IRICO did not sell     21:10:44

18   products to the United States?                             21:10:48

19             MR. TALADAY:  Object to form.  Lack of           21:10:50

20   foundation.                                                21:10:55

21             THE WITNESS:  I don't know.                      21:11:06

22             MS. CAPURRO:  Mr. Wang, you can set that         21:11:07

23   document aside.                                            21:11:37

24             THE WITNESS:  Can we take a break, please?       21:11:39

25             MS. CAPURRO:  Yes.                               21:11:42
```

Page 393

```
 1   STATE OF CALIFORNIA       )
 2   COUNTY OF SANTA BARBARA  )   ss.
 3
 4        I, Mark McClure, C.S.R. No. 12203, in and for
 5   the State of California, do hereby certify:
 6           That prior to being examined, the witness
 7   named in the foregoing deposition was by me duly sworn
 8   to testify to the truth, the whole truth, and nothing
 9   but the truth;
10           That said deposition was taken down by me in
11   shorthand at the time and place therein named and
12   thereafter reduced to typewriting under my direction,
13   and the same is a true, correct, and complete transcript
14   of said proceedings;
15           That if the foregoing pertains to the original
16   transcript of a deposition in a Federal Case, before
17   completion of the proceedings, review of the transcript
18   { } was { X } was not required.
19           I further certify that I am not interested in
20   the event of the action.
21           Witness my hand this 4th day of October, 2022.
22
23
24           Certified Shorthand Reporter
             State of California
25           CSR No. 12203
```

Page 397