Vaughn R Walker
ADR/Law Office of Vaughn R Walker
Four Embarcadero Center, Suite 2200
San Francisco, CA  94111
Tel:  (415) 871-2888
vrw@judgewalker.com

IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| IN RE CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION<br><br>This Relates to:<br><br>*ALL DIRECT PURCHASER ACTIONS*<br><br>*ALL INDIRECT PURCHASER ACTIONS* | Master Case No 07-cv-05944-JST<br><br>MDL No 1917<br><br>**SPECIAL MASTER'S REPORT & RECOMMENDATION ON PLAINTIFFS' MOTION TO COMPEL EVIDENCE PRESERVATION DOCUMENTS** |

On April 15, 2022, the DPPs and the IPPs (together, "Plaintiffs") submitted their Motion to Compel Defendants Irico Display Devices Co, Ltd and Irico Group Corporation (collectively "Irico") to produce documents responsive to Request No 1 of IPPs' Third Request for Production of Documents:  "[a]ll Documents relating or referring to preservation of Documents relevant to this litigation."  Irico responded by producing a privilege log identifying communications with their former counsel regarding evidence preservation.  But Plaintiffs contend that that they are entitled to the actual documents on the privilege log, hence this motion.

SPECIAL MASTER'S REPORT & RECOMMENDATION RE EVIDENCE PRESERVATION

1

The undersigned issues this discovery report and recommendation pursuant to the court's appointments.  *See* ECF 5301, 6107.

**BACKGROUND**

On December 25, 2007, Irico received service of the complaint.

On January 24, 2008, Irico retained its first counsel, Pillsbury Winthrop Shaw Pittman LLP ("Pillsbury").

From February 15, 2008 through August 18, 2008, there were five communications between Irico's Yan Yunlong and other Irico employees and Pillsbury attorneys.  4/15/22 Plaintiffs' Motion at 5.  These 2008 communications are reflected in Irico's privilege log.  *See* 5/9/22 Irico's Response at 3; *see also* 4/15/22 Capurro Dec, Ex A.

On August 18, 2008, Pillsbury sent an email with an attached memorandum regarding evidence preservation.   See 5/23/22 Plaintiffs' Reply at 2; 4/15/22 Capurro Dec, Ex A (privilege log).  According to Plaintiffs, this is likely a litigation hold notice with instructions for implementing the litigation hold and there may be similar communications in Pillsbury's files not identified on Irico's privilege log.  5/23/22 Plaintiffs' Reply at 2.

Irico confirms that it never issued a written litigation hold notice and, instead in the summer of 2008, Irico orally instructed key employees to preserve documents related to sales of CRT to the United States.   5/9/22 Irico Response at 2 and 8 ("no written litigation hold was issued by Irico"); 4/15/22 Capurro Decl, Exh I at 7 (Irico's Supp Response to Interrogatory No 2).  Irico has admitted that it failed to implement a litigation hold until more than eight months after its duty to preserve was triggered by service of the complaint on December 25, 2007.  See 4/15/22 Capurro Decl, ¶11, Ex I at 10-11.  Irico also stated in its discovery response that "Irico acknowledges that at the time [of its oral instructions in 2008] it misunderstood the scope of document preservation in connection with the litigation in the United States and cannot be certain that all documents related to Irico's global sales of CRTs were preserved."  5/23/22 Plaintiffs' Reply at 4, citing 4/15/22 Capurro Dec, Ex I at 11 (Irico's Supplemental Response to Issue No 4).

Unlike other defendants in this multi-district litigation, Irico produced no emails and none of its weekly sales and marketing reports. 4/15/22 Plaintiffs' Motion at 8. Irico confirmed its non-production, explaining that it "only retained emails for several days, or in rare cases a week or two, due to acute limitations in storage capacity" and "Irico believes that [documents related to the sales of CRTs, including the types cited by Plaintiffs] would not have been retained in the ordinary course of business." 5/9/2022 Irico Response at 5.

**PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS RELATING TO IRICO'S EVIDENCE PRESERVATION EFFORTS**

A. Relevant Law

A party's duty to preserve evidence which it knows or reasonably should knows is relevant to litigation arises as soon as "a potential claim is identified" or litigation is reasonably foreseeable." *Apple v Samsung*, 888 F Supp 2d 976, 991 (ND Cal 2012). Once a party's duty to preserve takes effect, it is "required to suspend any existing policies related to deleting or destroying files and preserve all relevant documents related to the litigation." *Id*. In *Apple*, Samsung never stopped its 14-day automatic email destruction policy, even as to key custodians, nor presented any evidence that Samsung employees had complied with the instructions they were given. These facts, in the court's view, supported a finding that Samsung's document preservation efforts fell far short of its duty. *Id* at 992. Courts recognize that failure to implement a litigation hold to ensure preservation of relevant documents can result in "spoliation of evidence," defined as "destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence, in pending or future litigation." *Al Otro Lado, Inc v Wolf*, 2021 WL 4432026 at *2 (SD Cal July 31, 2020). Oral litigation holds have been held insufficient to prevent spoliation of evidence. *See Borum v Brentwood Vill, LLC*, 332 FRD 38, 46 (DDC 2019) (oral litigation hold is insufficient to prevent spoliation of evidence). Communications regarding evidence preservation are usually protected by the attorney-client privilege. But if a moving party makes a preliminary showing of spoliation, courts have allowed discovery of litigation hold communications. *Al Otro Lado,* at

SPECIAL MASTER'S REPORT & RECOMMENDATION RE EVIDENCE PRESERVATION

*2; *Thomas v Cricket Wireless, LLC*, 2021 WL 1017114, *5-6 (ND Cal Mar 16, 2021); *City of Colton v American Promotional Events, Inc*, 2011 WL 13223880, *2 (CD Cal Nov 22, 2011); *Major Tours Inc, v Colorel*, 2009 WL 2413631, *2 (DNJ Aug 4, 2009).

### B. Plaintiffs' Arguments

Plaintiffs contend that they are entitled to Irico's documents relating to preservation of documents relevant to this litigation because they have made a preliminary showing of spoliation of evidence. Plaintiffs note that they need not prove spoliation at this stage, but make only a "preliminary showing" of spoliation, citing *Al Otro Lado*, 2020 WL 4432026, at *2; *Thomas v Cricket Wireless, LLC*, 2021 WL 1017114 at *5 (ND Cal Mar 16, 2021). 5/23/22 Plaintiffs' Reply at 5.

Irico failed to implement any litigation hold until more than eight months after service of Plaintiffs' complaint on December 25, 2007, an event that certainly triggered the duty to preserve.[1] These facts suffice to make a preliminary showing of spoliation adequate to overcome the attorney-client privilege. 5/23/22 Plaintiffs' Reply at 3; Capurro Decl, ¶11, Ex I at 10-11. In *Al Otro Lado*, the employee's admission that he had not been instructed to preserve documents until over a year after litigation was initiated, was alone sufficient to make a preliminary showing of spoliation. 5/23/22 Plaintiffs' Reply at 3, citing *Al Otro Lado* at *2.

Noting that courts typically find oral litigation holds insufficient, Plaintiffs contend that Irico's 2008 oral litigation hold was inadequate to prevent spoliation, citing *Borum v Brentwood Vill, LLC*, 332 F R D 38, 46 (DDC 2019) (well recognized than an oral litigation hold is insufficient to reasonably protect against spoliation of evidence). 4/15/22 Plaintiffs' Motion at 4-5.

Plaintiffs argue that the scope of Irico's litigation hold was too narrow to preserve all relevant documents. Plaintiffs cite Irico's response to IPPs' Interrogatory No 6, that

---

[1] Plaintiffs have reserved the right to establish an earlier date triggering Irico's duty to preserve relevant evidence, such as November 2007 when government investigations into CRT manufacturers was announced or in 2006 when investigations into the LCD industry were announced. 4/15/22 Plaintiffs' Motion at 8, n 12. But for purposes of this motion, the complaint service date suffices.

4
SPECIAL MASTER'S REPORT & RECOMMENDATION RE EVIDENCE PRESERVATION

it "consulted with its former counsel, Pillsbury Winthrop Shaw & Pittman, LLP, regarding document preservation, but not on the specific decision in determining to preserve only documents relating to sales of CRTs to the United States in mid-2008." 4/15/22 Plaintiffs' Motion at 6 (citing 4/15/22 Capurro Dec, Ex J at 15). Because Irico's oral preservation instruction only included documents relating to non-existent CRT sales directly to the United States, Plaintiffs argue that Irico effectively implemented no litigation hold until it re-entered the case in late 2017, by which time only archived documents remained.

Plaintiffs note that it is customary for United States counsel to advise on litigation hold communications as soon as retained but Irico's privilege log does not have any correspondence regarding evidence preservation until seven months after Pillsbury was retained. Irico's claim to have "misunderstood its obligation to preserve relevant evidence,"[2] "puts Pillsbury's instructions to Irico regarding its litigation hold directly at issue." 5/23/22 Plaintiffs' Reply at 2, 6. Because Irico failed to preserve any written record of its evidence preservation efforts, the only way to test Irico's claim is to review any written litigation hold Pillsbury drafted, as well as any instructions Pillsbury gave regarding implementation. *See* 4/15/22 Plaintiffs' Motion at 6.

Specifically, Plaintiffs request that Irico be ordered to produce Pillsbury's August 18, 2008 email and memorandum regarding evidence preservation and all other communications reflecting Pillsbury's instructions regarding evidence preservation, including any communications that may be stored in Pillsbury's files. 5/23/22 Plaintiffs' Reply at 11.

### C. Irico's Arguments

Irico disputes that plaintiffs have made a preliminary showing of spoliation of documents because there is no evidence that such documents authored by Irico employees and produced by other defendants earlier in this litigation "existed in Irico's files at the time a duty to preserve arose." 5/9/22 Irico's Response at 4. Irico contends that the mere fact that other defendants had copies of alleged conspiracy meeting notes does not mean that Irico regularly

---

[2] 5/9/23 Irico's Response at 6

SPECIAL MASTER'S REPORT & RECOMMENDATION RE EVIDENCE PRESERVATION

5

took or maintained meeting notes. *Id*. Irico responded to discovery requests related to the sales of CRTs, including the types cited by Plaintiffs that "would not have been retained in the ordinary course of business." 5/9/22 Irico Response at 5. Further, due to "acute limitations in storage capacity," Irico's emails in the first half of 2007 "would have long since been overwritten in the ordinary course of Irico's business and would not have been in Irico's control in late-2007." *Id.* Irico cites to *Point Blank*, 2011 WL 1456029 at *21, that a court cannot simply assume that such documents must have existed and were not produced. 5/9/22 Irico's Response at 6.

Irico further contends that its "confusion around document preservation does not provide evidence of spoliation," because Irico had a "limited understanding of the law and customs of the United States." *Id.* "As a Chinese State-Owned Entity, Irico was not experienced with litigation in courts in the United States," and "undertook measures that it believed to be appropriate under the circumstances," including focusing on "documents related to sales of CRTs to the United States." *Id* at 6.

Irico asserts that the cases Plaintiffs rely upon[3] require only production of the litigation hold notices themselves or instructions given to employees regarding implementation of a litigation hold, not allowing discovery of other communications surrounding a party's litigation hold efforts. *Id* at 7-8.

**D. Preliminary Showing of Spoliation**

The undersigned finds that Plaintiffs have made a preliminary showing of spoliation sufficient to overcome the privilege generally afforded to litigation hold communications. Despite hiring a reputable United States law firm one month after being served with the complaint on December 25, 2007, Irico waited more than eight months before holding a meeting of the "2008 Litigation Committee" in August 2008 at which "key employees" were charged with providing verbal instructions to other employees to preserve documents

---

[3] *Al Otro Lado, Major Tours Inc v Colorel*, 2009 WL 2413631 (D NJ Aug 4, 2009); *City of Colton v Am Promotional Events, Inc*, 2011 WL 13223880 (CD Cal Nov 22, 2011) and *Thomas v Cricket Wireless, LLC*, 2020 WL 7344742 at *5.

SPECIAL MASTER'S REPORT & RECOMMENDATION RE EVIDENCE PRESERVATION

6

related to United States sales of CRT products. 4/15/22 Capurro Dec, Ex I at 10-11 (Irico's Response to Issue No 4). Irico's more than eight-month delay before issuing any litigation hold is sufficient to establish a preliminary showing of spoliation. *See Al Otro Lado* at *2; *Apple Inc v Samsung,* 888 F Supp 2d 976, 999 (ND Cal 2012) (party's failure to issue a litigation hold notice or take other precautionary measures to ensure preservation of relevant evidence for twelve months after its duty to preserve arose violated its duty to preserve). Irico's failure to suspend its automatic email destruction practice as soon as its duty to preserve arose further supports a finding that Irico's document preservation efforts were inadequate. *See Apple v Samsung*, 888 F Supp 2d at 992 (court found that party fell well short of its duty to preserve by failing to suspend its bi-weekly automatic email destruction policy, even as to key custodians). Irico's implementation of an oral litigation hold without documentation further suggests that spoliation occurred.

      The inadequacy of Irico's 2008 oral litigation hold is further confirmed by its various discovery responses stating that it conducted a search for documents and information relating to Irico's sales of CRTs in the United States, as opposed to Irico's sales of CRTs globally. Irico stated that in August 2008, it understood that "the focus of the litigation was on sales of CRTs to the United States," and members of the "2008 Litigation Committee" "were tasked to search for documents and to identify other employees under their supervision and instruct them to search for documents that might relate to the Irico sales in the United States and to preserve such documents, if any existed." 4/15/22 Capurro Dec, Ex I at 10-11. Irico "acknowledges that at the time it misunderstood the scope of document preservation in connection with the litigation in the United States and cannot be certain that all documents related to Irico's global sales of CRTs were preserved."[4] This evidences that the narrow scope of Irico's preservation did not address the full scope of relevant documents. Irico's response to Issue No 6, identifying "specific documents and information that might have been preserved if the 'oral instruction' in 2008 had not been limited to the United States," included "documents regarding Irico's global sales of CRTs that are more likely to have existed in the summer of

---

[4] 4/15/22 Capurro Dec, Ex I at 11.

2008" but would not have been preserved in the archives, such as "sales reports containing general CRT market information; CRT sales contracts with customers; [r]ecent correspondence with customers regarding CRT sales; and [h]andwritten working notes regarding recent internal and customer meetings attended by members of Irico's sales team."  4/15/22 Capurro Dec, Ex I at 12-13.

Despite its duty to preserve evidence, Irico recycled computers of departing employees, undoubtedly including the "key employees" who attended competitor meetings during the class period, and "is not aware of whether any of the recycled computers contained: a) any data whatsoever; b) any documents created in the time period 1995 through 2007, or c) any documents relevant or responsive to any of the discovery requests issued to Irico during the course of this litigation."  4/15/22 Capurro Dec, Ex H at 8-9 (Irico's Fourth Supp Objections and Responses to DPP's First Set Interrogatories).  These "key employees" were "appointed to oversee Irico's response to the litigations in the above referenced action (the '2008 Litigation Committee') in June 2008" and have since left the company.  4/15/22 Capurro Dec, Ex I at 8-10 (Irico's Responses to Issues Nos 2, 3, 4).  Against this backdrop, Irico's failure to produce any emails, any of its weekly sales and marketing reports, and any "documents from the relevant period from any of its employees' files, including those employees who attended price-fixing meetings with Irico's competitors,"[5] creates a strong inference that many highly relevant documents existed at the time Irico was served with the complaint in this action and were lost or destroyed due to Irico's inadequate evidence preservation efforts.  Hence the undersigned finds that an adequate preliminary showing of spoliation has been made, warranting discovery into Irico's evidence preservation documents including those between Irico and its inside and outside counsel.

Irico contends that its email system had already destroyed all relevant documents before its duty to preserve arose.  Irico cites its discovery responses and testimony that through the end of 2007, individual employee email accounts typically allowed for storage of only about 1-2 MB of email, Irico's central email server would overwrite older emails every 3-

---

[5] 12/7/22 Plaintiffs' Reply re Supplemental Brief at 2.

SPECIAL MASTER'S REPORT & RECOMMENDATION RE EVIDENCE PRESERVATION

5 days on average and Irico had a back-end server policy to delete all emails older than 20 days during the relevant period. 11/29/22 Irico's Response to 11/4/22 Plaintiffs' Supplemental Brief at 4. But Irico presents no information about investigating custodial files of "key employees" who may have printed relevant emails, forwarded emails to their personal email accounts or downloaded emails to their work or personal computers or to portable hard-drives. In contrast, Plaintiffs point to emails from an email address ending in @163.com that were authored by Liang Yuan, Irico's Head of Overseas Department and sent to defendant Chunghwa attaching Irico meeting notes and production data in June to July 2007. 5/23/22 Plaintiffs' Reply at 4-5. Irico had identified Liang Yuan as one of the "key employees" who was a member of the "2008 Litigation Committee" appointed to oversee Irico's discovery responses to this litigation. 5/23/22 Plaintiffs' Reply at 5, n 8. According to Plaintiffs, these emails were sent only four months before the November 2007 government raids on CRT makers and therefore it was unlikely that they and all relevant emails in Liang Yuan's and others' files would have been discarded by the time the duty to preserve arose. 5/23/22 Plaintiffs' Reply at 5. On balance, it appears highly likely that relevant evidence was destroyed or lost due to Irico's long-delayed and inadequately implemented litigation hold efforts. Irico's position, supported by its Rule 30(b)(6) witness' testimony, that weekly sales and marketing reports and notes of competitor meetings were not important and not likely to be kept[6] appears implausible.

    Irico's effort to limit discovery to just the litigation hold itself is also not persuasive. Attorney-client communications regarding litigation holds, in addition to the hold itself, have been ordered to be produced by courts when a preliminary showing of spoliation has been made. *See Apple v Samsung*, 881 F Supp 2d 1132, 1142-1144 (ND Cal 2012) (numerous inside and outside counsel communications regarding evidence preservation are described, not just the litigation hold itself); *Thomas v Cricket Wireless*, 2021 WL 1017114 at *6 (all letters "that address litigation hold and/or preservation issues" ordered produced or submitted for court's *in camera* review); *Point Blank Solutions Inc v Toyobo America*, 2011 WL 1456029 at *18-20 (SD Fla Apr 5, 2011) (court considered counsel's communication to

---

[6] 11/29/22 Irico's Response to Plaintiffs' Supplemental Brief at 4.

9
SPECIAL MASTER'S REPORT & RECOMMENDATION RE EVIDENCE PRESERVATION

defendants re documents to gather and scope of an earlier litigation hold); *Keir v Unumprovident Corp*, 2003 WL 21997747 at *6-9 (SD NY Aug 22, 2003) (court addresses counsels' emails regarding defendant's preservation efforts).

Accordingly, Plaintiffs' motion is GRANTED. Irico is ordered to produce to the undersigned for *in camera* review, no later than January 25, 2023, the following: Pillsbury's August 18, 2008 email and memorandum regarding evidence preservation and all documents or communications regarding or relating to Irico's evidence preservation efforts and Pillsbury's instructions regarding evidence preservation, including any such communications that may be stored in Pillsbury's files, electronic or physical.[7]

**PLAINTIFFS' MOTION TO COMPEL THE FURTHER DEPOSITION OF YAN YUNLONG**

Due to inconsistent, shifting testimony from the General Counsel of Irico Group, Yan Yunlong, on Irico's evidence preservation efforts, Plaintiffs further request that Irico be ordered to produce Mr Yan for further deposition questioning regarding such topics, including Pillsbury's evidence preservation instructions and Irico's implementation of those instructions. 11/4/22 Plaintiffs' Supplemental Brief at 6.

On November 18, 2022, Yan Yunlong signed his declaration regarding his deposition testimony and input into Irico's interrogatory responses. In it, he notes that he has been involved in the management of this litigation since June 2008 when he served as Legal Affairs Manager. 11/18/22 Yan Yunlong Declaration. He was deposed from September 27 through September 29, 2022, and provided input for Irico's Responses to IPPs' 3rd and 4th Sets of Interrogatories served by Irico on August 13, 2021, January 21, 2022 and February 23, 2022. Since then, he "realized that [he] was confused regarding some questions and gave inaccurate testimony contained within pages 123 through 139 of the transcript, as well as inaccurate input for the interrogatory responses listed above. This information related to certain events in 2008

---

[7] Irico's representation that its "counsel searched and reviewed the case file received from Pillsbury before responding to Plaintiffs' discovery requests" (11/29/22 Irico Response at 5-6, n 2), does not specify the name(s) of the counsel who received or reviewed the case file, when the case file was received from Pillsbury and which discovery requests were addressed.

following the formation of the Litigation Committee, specifically relating to Irico's efforts to preserve documents for the litigation." 11/18/22 Yan Yunlong Declaration, ¶¶ 2-4.

Yan states: "While the Litigation Committee members did receive copies of and discuss the privileged document from Pillsbury, I do not recall whether the Litigation Committee members discussed the specific categories of documents that each Litigation Committee member would preserve and instruct other employees to preserve. It is my understanding that each Litigation Committee member determined independently which subordinates should be contacted regarding the preservation efforts and what information regarding preservation should be relayed to each employee. Any statement to the contrary in my testimony or Irico's interrogatory responses is inaccurate." *Id*, ¶9. Thus, Yan Yunlong and Irico seek to change Irico's discovery responses (which were based on Yan Yunlong's recollections) and his prior sworn deposition testimony regarding: (1) whether there was a written litigation hold in 2008 and (2) the scope of the 2008 Litigation Committee members' litigation hold.

In light of the preliminary showing of spoliation and Irico and Yan Yunlong's attempt to recast his prior testimony and Irico's discovery responses, Plaintiffs' motion to compel Yan Yunlong's further deposition regarding Pillsbury's evidence preservation instructions and Irico's efforts to implement its litigation hold is GRANTED. Having made a preliminary showing of spoliation, Plaintiffs may question Mr Yan on Irico's document preservation efforts and attorney communications regarding the same without instructions by Irico's counsel not to answer questions on these subjects. Irico shall present Yan Yunlong for further deposition no later than February 15, 2023 or a later date that is acceptable to Plaintiffs.

SO ORDERED.

Date:   January 11, 2023

_____
Vaughn R Walker
United States District Judge (Ret)

The Recommended Order of the Special Master is Accepted and Ordered / Denied / Modified.

Date:  _____

                                                                  _____
                                                                  Honorable Jon S Tigar
                                                                  United States District Judge

SPECIAL MASTER'S REPORT & RECOMMENDATION RE EVIDENCE PRESERVATION