Mario N. Alioto (56433)
Lauren C. Capurro (241151)
TRUMP, ALIOTO, TRUMP & PRESCOTT LLP
2001 Union Street, Suite 482
San Francisco, CA 94123
Telephone: 415-563-7200
Facsimile: 415- 346-0679
Email: malioto@tatp.com
laurenrussell@tatp.com

***Lead Counsel for the***
***Indirect Purchaser Plaintiffs***

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Master File No. 4:07-cv-05944-JST<br>Case No. 4:17-cv-04067-JST<br><br>MDL No. 1917 |
| This Document Relates to:<br><br>*Luscher, et al. v. Mitsubishi Electric Corp.,*<br>No. 4:17-cv-04067-JST | **INDIRECT PURCHASER PLAINTIFFS' SECOND MOTION FOR AN AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES AND INCENTIVE AWARDS FOR CLASS REPRESENTATIVES:**<br><br>1. **NOTICE OF MOTION AND MOTION; AND**<br>2. **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF.**<br><br>Hearing Date: June 1, 2023<br>Time: 2:00 p.m.<br>Courtroom: 5, 2nd Floor<br>Judge:  Honorable Jon S. Tigar |

# TABLE OF CONTENTS

**PAGE(S)**

I.      INTRODUCTION ...................................................................................................1

II.     SUMMARY OF THE LITIGATION ....................................................................4

    A.      The Original MDL Complaints and Motions to Dismiss..............................4

    B.      Discovery ......................................................................................................5

    C.      Class Certification .........................................................................................6

    D.      Summary Judgment .......................................................................................7

    E.      Trial Preparations..........................................................................................8

    F.      Settlements With Other Defendants...............................................................9

    G.      IPPs File Suit Against Mitsubishi Electric And The Parties Enter Into Settlement Discussions .................................................................................9

    H.      IPPs And Mitsubishi Electric Enter Into A Settlement................................10

    I.      IPPs' First Motion For Preliminary Approval .............................................11

    J.      IPPs Prepare To Renew The Motion For Preliminary Approval In Conjunction With A Motion For Approval Of Amendments To The Prior Settlements ................12

    K.      The Court Grants IPPs' Second Motion for Preliminary Approval And IPPs Publish Notice Of The Mitsubishi Electric Settlement To Class Members...........................14

III.    THE COURT SHOULD AWARD THE REQUESTED FEES ............................14

    A.      The Court Should Judge The Requested Fee Against The Total Settlement Fund And IPP Counsel's Lodestar For The Entire Litigation ......................................15

    B.      The Requested Fee Is An Appropriate Percentage Of The Total Settlement Fund.....16

        C.      The Circumstances Here Justify the Requested Fee Award ...........................18

        1.      IPP Counsel Achieved An Excellent Result For The Class...........................19

        2.      This Litigation Has Been Exceptionally Risky, Complex, And Expensive to Prosecute…………………………………………………….……22

        3.      A High Level of Skill Was Required To Prosecute This Case And IPP Counsel's Work Was Of High Quality……………………………………25

        4.      The Contingent Nature of the Fee…………………………...…………26

i

5.       The Award Sought Comports With Awards in Similar Cases.………..….….27

D.      A Lodestar Cross-Check Confirms That The Requested Fee Is Reasonable ….……..28

IV.     THE COURT SHOULD APPROVE THE REIMBURSEMENT OF EXPENSES ...............32

V.      THE COURT SHOULD APPROVE THE REQUESTED INCENTIVE AWARDS ...........33

VI.     CONCLUSION ...........................................................................................................34

**TABLE OF AUTHORITIES**

**PAGE(S)**

**CASES**

*Alpine Pharmacy, Inc. v. Chas. Pfizer & Co.*,
  481 F.2d 1045 (2d Cir. 1973), *cert. denied*, 414 U.S. 1092 (1973)................................18

*Arenson v. Board of Trade*,
  372 F. Supp. 1349 (N.D. Ill. 1974) ..........................................................................23

*Boeing Co. v. Van Gemert*,
  444 U.S. 472 (1980)...........................................................................................16, 34

*Brewer v. Southern Union Co.*,
  607 F. Supp. 1511 (D. Col. 1984)...............................................................................30

*Buccellato v. AT&T Operations, Inc.*,
  No. C10-00463-LHK, 2011 WL 3348055 (N.D. Cal. June 30, 2011).................................33

*Gustafson v. Valley Ins. Co.*,
  No. CV 01-1575-BR, 2004 WL 2260605 (D. Or. Oct. 6, 2004) ......................................26

*In re Activision Secs. Litig.*,
  723 F. Supp. 1373 (N.D. Cal. 1989) ...........................................................................18

*In re Auto. Parts Antitrust Litig.*,
  No. 12-MD-02311, 2020 WL 5653257 (E.D. Mich. Sept. 23, 2020)............................16, 31

*In re Bluetooth Headset Prods. Liab. Litig.*,
  654 F. 3d 935 (9th Cir. 2011) ...................................................................................19

*In Re CRT,* 2013 WL 5391159 (N.D. Cal. Sept. 23, 2013) ...............................................7

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
   No. M-02-1486-PJH, 2007 WL 2416513 (N.D. Cal. Aug. 16, 2007) ..............................17

*In re High-Tech Emp. Antitrust Litig.*,
  No. 11-CV-02509-LHK, 2015 WL 5158730 (N.D. Cal. Sept. 2, 2015)...........................31

*In re Hyundai & Kia Fuel Econ. Litig.*,

926 F.3d 539 (9th Cir. 2019) ........................................................................................17, 32

*In re King Res. Co. Secs. Litig.*,

420 F. Supp. 610 (D. Colo. 1976) ................................................................................23

*In re Linerboard Antitrust Litig.*,

No. A-98-5055, MDL No. 1261, 2004 WL 1221350  (E.D. Pa. June 2, 2004) ..............22

*In re Lithium Ion Batteries Antitrust Litig.*,

No. 13MD02420YGRDMR, 2020 U.S. Dist. LEXIS 233607 (N.D. Cal. Dec. 10, 2020),

*aff'd*, No. 21-15120, 2022 WL 16959377 (9th Cir. Nov. 16, 2022)..................15, 20, 28

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,

187 F.R.D. 465 (S.D.N.Y. 1998) ......................................................................23, 25, 30

*In re Omnivision Techonologies*,

559 F. Supp. 2d 1036 (N.D. Cal. 2008) ..............................................................17, 18, 19

*In re Online DVD-Rental Antitrust Litig.*,

779 F.3d 934 (9th Cir. 2015) .........................................................................22, 27, 34

*In re Southeastern Milk Antitrust Litig.*,

No. 2:07-CV 208, 2013 WL 2155379  (E.D. Tenn. May 17, 2013) ................................15

*In re Superior Beverage/Glass Container Consol. Pretrial*,

133 F.R.D. 119 (N.D. Ill. 1990) ....................................................................................23

*In re TFT-LCD (Flat Panel) Antitrust Litig.* ("*LCD II*"),

No. 07-md-01827, 2013 WL 149692 (N.D. Cal. Jan. 14, 2013) ...............................17, 28

*In re TFT-LCD Antitrust Litig.* ("*LCD I*"),

No. 07-md-01827, 2011 WL 7575003 (N.D. Cal. Dec. 27, 2011); ............................17, 28

*In re TFT-LCD Antitrust Litig.* ("*LCD III*"),

No. 07-md-01827, 2013 WL 1365900 (N.D. Cal. Apr. 3, 2013) ...................17, 20, 28, 30

*In re Veeco Instruments Inc. Sec. Litig.*,

No. 05 MDL 01695(CM), 2007 WL 4115808,  (S.D.N.Y. Nov. 7, 2007) ......................27

*In re Visa Check/Mastermoney Antitrust Litig.*,

iv

INDIRECT PURCHASER PLAINTIFFS' SECOND MOTION FOR AN AWARD OF ATTORNEYS' FEES,
REIMBURSEMENT OF EXPENSES, AND INCENTIVE AWARDS FOR CLASS REPRESENTATIVES
Case No. 17-cv-04067-JST; Master File No. 07-cv-05944-JST

297 F. Supp. 2d 503 (E.D.N.Y. 2003) ....................................................................30

*In re Wash. Pub. Power Supply Sys. Sec. Litig.,*

19 F.3d 1291 (9th Cir. 1994) ...............................................................................27

*In re Wells Fargo & Co. S'holder Derivative Litig.,*

445 F. Supp. 3d 508 (N.D. Cal. 2020), *aff'd*, 845 F. App'x 563 (9th Cir. 2021)....................28, 29

*Lobatz v. U.S. West Cellular of California, Inc.,*

222 F.3d 1142 (9th Cir. 2000) ........................................................................15, 31

*Moore v. Verizon Communications Inc.,*

No. C 09–1823 SBA, 2013 WL 4610764 (N.D. Cal. Aug. 28, 2013) ..............................34

*Perma Life Mufflers, Inc. v. Int'l Parts Corp.,*

392 U.S. 134 (1968).............................................................................................18

*Pillsbury Co. v. Conboy,*

459 U.S. 248 (1983).............................................................................................18

*Pokorny v. Quixtar, Inc.,*

No. C 07-0201 SC, 2013 WL 3790896 (N.D. Cal. July 18, 2013)................................18, 29

*Reiter v. Sonotone Corp.,*

442 U.S. 330 (1979).............................................................................................18

*Rodriguez v. W. Pub. Corp.,*

563 F.3d 948 (9th Cir.2009) ...............................................................................34

*Staton v. Boeing Co.,*

327 F.3d 938 (9th Cir. 2003) ..............................................................................34

*Vincent v. Hughes Air W., Inc.,*

557 F.2d 759 (9th Cir. 1977) ..............................................................................17

*Vizcaino v. Microsoft Corp.,*

290 F.3d 1043 (9th Cir. 2002) .......................................................................passim

*Wakefield v. Wells Fargo & Co.,*

No. 3:13-cv-05053 LB, 2015 WL 3430240 (N.D. Cal. May 28, 2015) ...........................32

*Williams v. MGM-Pathe Commc'ns Co.*,

    129 F.3d 1026 (9th Cir. 1997) ........................................................................................17

*Willner v. Manpower Inc.*,

    No. 11-cv-02846-JST, 2015 WL 3863625 (N.D. Cal. June 22, 2015) ............................33

## **STATUTES**

Fed. R. Civ. P. 23 ...........................................................................................1, 7, 13, 32

Massachusetts Consumer Protection Statute, M.G.L. c. 93A §§ 2 and 9 ............................10

## **OTHER AUTHORITIES**

IIA Areeda et al., Antitrust Law ¶ 396 (3d ed. 2006) ...........................................................23

Eisenberg, Miller & Germano, *Attorneys' Fees in Class Actions: 2009-2013*, 92 N.Y.U. L. Rev. 937

    (2017)..............................................................................................................................29

Ronald W. Davis, Amchem *and Antitrust: Have the Ground Rules for Antitrust Class Actions*

    *Changed?*, 12 Antitrust 39, 44 (Fall 1997) ...................................................................23

## NOTICE OF MOTION AND MOTION

### TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on June 1, 2023 at 2:00 p.m., before the Honorable Jon S. Tigar, United States District Court for the Northern District of California, 1301 Clay Street, Oakland, California, Courtroom 6, 2nd Floor, the Indirect Purchaser Plaintiffs ("IPPs") will move the Court, pursuant to Federal Rule of Civil Procedure 23(e), for an Order awarding attorneys' fees in the amount of $11,000,000 which, when combined with the prior fee award, constitutes 24.2% of the total settlement fund in this MDL litigation, or 33.3% of the $33,000,000 Settlement with Mitsubishi Electric Corporation ("Mitsubishi Electric"), plus interest, reimbursement of litigation expenses in the amount of $13,122.10, and payments to the Class Representatives for their time and effort representing the Class throughout the litigation.

This motion is brought pursuant to Federal Rules of Civil Procedure 23(h), 54(b) and 54(d)(2).  The grounds for the motion are that: (a) such fees are fair and reasonable in light of IPP Counsel's efforts in creating the Settlement Fund; (b) the requested fees comport with the Ninth Circuit case law in common fund cases; (c) the expenses for which reimbursement is sought were reasonably and necessarily incurred in connection with the prosecution of this action; and (d) a reasonable payment to each Class Representative for their efforts on behalf of the Class is warranted and appropriate.

This motion is based on this Notice of Motion and Motion; the supporting Memorandum of Points and Authorities; the accompanying Declaration of Mario N. Alioto ("Second Alioto Fee Decl."); the Compendium of IPP Counsel Declarations ("Compendium Decl."); and any further papers filed in support of this motion, the argument of counsel, and all pleadings and records on file in this matter.

## ISSUES TO BE DECIDED

1.    Whether to award attorneys' fees amounting to 24.2% of the total settlement fund, or 33.3% of the Mitsubishi Electric settlement fund ($11,000,000), plus interest.

2.    Whether to reimburse litigation expenses in the amount of $13,122.10.

**3.**     Whether to make payments of $2,000 to Class Representatives for their time and

effort representing the class in connection with the Mitsubishi Electric case.

Dated:  March 10, 2023                          Respectfully submitted,

                                                 */s/ Mario N. Alioto*
                                                Mario N. Alioto (56433)
                                                malioto@tatp.com
                                                Lauren C. Capurro (241151)
                                                laurenrussell@tatp.com
                                                TRUMP, ALIOTO, TRUMP & PRESCOTT LLP
                                                2001 Union Street, Suite 482
                                                San Francisco, CA 94123
                                                Telephone: 415-563-7200
                                                Facsimile: 415-346-0679

                                                *Lead Counsel for the Indirect Purchaser Plaintiffs*

INDIRECT PURCHASER PLAINTIFFS' SECOND MOTION FOR AN AWARD OF ATTORNEYS' FEES,
REIMBURSEMENT OF EXPENSES, AND INCENTIVE AWARDS FOR CLASS REPRESENTATIVES
Case No. 17-cv-04067-JST; Master File No. 07-cv-05944-JST

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   <u>INTRODUCTION</u>

The Indirect Purchaser Plaintiffs ("IPPs") and their counsel ("IPP Counsel") respectfully submit this Memorandum of Points and Authorities in Support of IPPs' Second Motion for an Award of Attorneys' Fees, Reimbursement of Expenses, and Incentive Awards for Class Representatives. Pursuant to the Court's Order Granting Preliminary Approval of Class Action Settlement With Mitsubishi Electric Corporation ("Mitsubishi Electric"), IPPs are filing this Motion thirty-five (35) days before objections to the Proposed Settlement are due. ECF No. 6014 ("Preliminary Approval Order"), ¶ 22. IPPs will also post this brief and all supporting papers on the website, www.CRTclaims.com. *Id.*

This is IPPs' second motion for attorneys' fees, reimbursement of expenses and incentive awards in this MDL litigation. In July 2016, following approval of settlements with nine defendant groups totaling $576,750,000 (the "Prior Settlements"), the Court granted in part IPPs' first motion and awarded $158,606,250 in attorneys' fees, approved and/or awarded $7,670,525.57 in litigation expenses, and approved incentive awards of $15,000 for each of the Court-appointed class representatives and $5,000 for an additional 15 named plaintiffs.[1] The Court's fee award amounted to 27.5% of the settlement fund and a multiplier of 1.96 on IPP Counsel's lodestar. *Id.* at *10. The Court found the fee award appropriate because, *inter alia*, "the settlement represent[ed] a good result[,]" and because of the significant risk, expense and complexity of the litigation:

> This was a sprawling, eight-year litigation defended vigorously by aggressive, competent antitrust counsel. Most of the defendants did not plead guilty to any antitrust violation and most were prepared to prove that they did not participate in any conspiracy and that whatever conspiracy was proven inflicted no damage on the class. In other words, the actual litigation risks borne by Class Counsel . . . were significant, and the out-of-pocket costs of undertaking and maintaining the litigation were unusually high. . . .[2]

---

[1] *See In re Cathode Ray Tube (CRT) Antitrust Litig.,* No. 07-cv-5944-JST, 2016 WL 4126533, at *12 (N.D. Cal. Aug. 3, 2016) (ECF No. 4740) ("First Fee Order").

[2] *Id.* at *5; *see also id.* at *4-6 (adopting Special Master Quinn's detailed analysis of the risk, expense, and complexity of the litigation, ECF No. 4351 ("R&R") at 59-60).

1

INDIRECT PURCHASER PLAINTIFFS' SECOND MOTION FOR AN AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND INCENTIVE AWARDS FOR CLASS REPRESENTATIVES
Case No. 17-cv-04067-JST; Master File No. 07-cv-05944-JST

However, appeals were taken from the Court's approval of the Prior Settlements and the fee award. The settling parties ultimately amended their settlements, resulting in a $29 million reduction in the settlement amount. IPPs reduced their fee request by a commensurate $29 million.[3] By doing so, IPP Counsel fully offset the settlement fund reduction, so that the net settlement funds available for the class remained the same. The Court approved IPPs' reduced fee request, which equated to 23.66% of the reduced settlement fund, and a 1.6 multiplier on IPP Counsel's lodestar.[4] As the Court noted, the reduced fee award was "below the Ninth Circuit's 25 percent benchmark for a reasonable fee award[,]" and the 1.6 multiplier was "well within the range of acceptable multipliers." *Id.*

While the Prior Settlements were still on appeal, IPPs filed a complaint against Mitsubishi Electric on behalf of the same 22-state classes of indirect purchasers who had sued the other MDL defendants, plus putative class members in nine new states. The Complaint against Mitsubishi Electric was based on evidence IPP Counsel had developed during the case against the other defendants. Following several months of negotiations mediated by then-U.S. Magistrate Judge Jacqueline Scott Corley, IPPs entered into a $33 million settlement with Mitsubishi Electric. Together with the amounts recovered in the Prior Settlements, the total settlement amount IPPs have now recovered for indirect purchasers of Cathode Ray Tubes ("CRTs") is **Five Hundred Eighty Million Seven Hundred Fifty Thousand ($580,750,000)**—an amount totaling almost 20 percent of the estimated single damages to the class. Moreover, IPPs are continuing to aggressively pursue the litigation against the Irico Defendants. As in the Prior Settlements, the consideration provided by Mitsubishi Electric is all cash; there are no coupons or vouchers and there will be no reversion or refund to Mitsubishi Electric under any circumstances. No *cy pres* distribution is contemplated.

As reflected in the accompanying declarations, and the Declaration of Mario N. Alioto filed in support of IPPs' first motion for attorneys' fees (ECF No. 4071-1),[5] IPP Counsel have expended tremendous amounts of time and resources litigating this complex case and have done so strictly on a

---

[3] ECF No. 5587. The reduced fee request amounted to $129,606,250.

[4] ECF No. 5786 at 24 ("Second Fee Order").

[5] Referred to hereinafter as "First Alioto Fee Decl."

contingency basis. This litigation began in November 2007, yet IPP Counsel received their only attorney fee award to date in October 2022—*15 years later*—following the Supreme Court's denial of certiorari regarding the Prior Settlements on June 13, 2022 (ECF No. 6023) and this Court's September 27, 2022 Order approving the allocation of the aggregate fee award. ECF No. 6078.[6]

IPP Counsel now move for an additional award of:

(1) $11,000,000 in attorneys' fees plus interest, which together with the $129,606,250 fee that the Court previously awarded, equates to 24.2% of the total MDL settlement fund to date, or 33.3% of the Mitsubishi Electric Settlement Fund, and a reasonable multiplier of 1.735 on IPP Counsel's lodestar for the entire litigation (not including the substantial time spent defending and re-negotiating the Prior Settlements);

(2) reimbursement of $13,122.10 in litigation expenses;[7] and

(3) modest incentive awards of $2,000 each to the Class Representatives for their service.

As explained below, it is appropriate in a case like this involving successive settlements with different defendants to award attorneys' fees based on the total settlement fund and class counsel's lodestar for the entire litigation. An award of 24.2% of the total settlement fund would still be *below* the Ninth Circuit's 25% benchmark, and the 1.735 multiplier still "well within the range of acceptable multipliers[,]"[8] in a case where IPP Counsel have faced far more risk, delay and complexity than occurs in the average antitrust class action. Further, throughout this litigation, IPP Counsel worked efficiently, avoided duplication, and prudently managed expenses, at all times coordinating the prosecution of the case with the three other plaintiff groups—Direct Purchaser Plaintiffs ("DPPs"),

---

[6] This Order has also been appealed, by previous objectors in the MDL litigation. *See* ECF Nos. 6079, 6080, 6081 (notices of appeal).

[7] Other costs and expenses incurred in prosecuting the case against Mitsubishi Electric (including, for example, almost $6 million in expert fees) have already been approved for reimbursement by the Court. *See* Second Fee Order at 26, First Alioto Fee Decl. ¶¶ 128-136.

[8] Second Fee Order at 24.

Direct Action Plaintiffs ("DAPs"), and governmental entities.[9] *See* First Alioto Fee Decl. and the accompanying Second Alioto Fee Decl., describing these efforts in detail. Finally, the extensive amount of work by IPP Counsel during the litigation against the other defendants enabled IPPs to reach a favorable settlement with Mitsubishi Electric very quickly—with limited need for additional discovery and motion practice.

As this Court has already found, "the entire record of the litigation viewed fairly demonstrates that [IPP] Counsel managed this case diligently and efficiently for the benefit of the class[,]" and were "superb at coordinating the class effort."[10] These findings remain true and justify this second fee request. The fees sought are fair and reasonable in light of the substantial investment of time and money by IPP Counsel, the great risks that the litigation presented (and continues to present), and the excellent result achieved. Likewise, the expenses to be reimbursed are reasonable, and the incentive awards are warranted.

## II.    SUMMARY OF THE LITIGATION[11]

### A.    The Original MDL Complaints and Motions to Dismiss

This highly complex litigation has been ongoing for over fifteen years. IPPs filed their original complaints in various federal courts throughout the country beginning in November 2007. The Judicial Panel on Multidistrict Litigation transferred all related indirect purchaser actions to the Northern District of California, where they were consolidated with similar class actions by DPPs, and assigned to this Court as MDL No. 1917. First Alioto Fee Decl. ¶¶ 9-10.

IPP Counsel prepared and filed four Consolidated Amended Complaints ("CAC") between March 16, 2009, and January 12, 2013 (ECF Nos. 437, 716, 827 and 1526) asserting claims under the

---

[9] The DPPs filed suit at the same time as the IPPs in 2007. In late 2011/early 2012, 13 DAPs and the Attorneys General of California, Florida, Illinois, Washington, and Oregon also filed suit. The DAPs consisted of corporate plaintiffs that purchased CRT Products from Defendants, primarily directly. The DAPs and the Florida Attorney General filed suit in the MDL. The other State Attorneys General filed suit in their respective state courts. First Alioto Fee Decl. ¶ 5.

[10] First Fee Order, 2016 WL 4126533, at *5.

[11] The history of the litigation is more fully described in the First Alioto Fee Decl., ECF No. 4071-1.

laws of 22 States. Defendants asserted dozens of complex legal and factual defenses, including the applicability of the FTAIA; lack of antitrust standing; and jurisdictional and statute of limitations defenses. It took almost two years and two rounds of motions to dismiss before Defendants finally answered the Third CAC on January 26, 2011. First Alioto Fee Decl. ¶¶ 13-21.

Mitsubishi Electric was not named as a defendant in any of the original complaints consolidated in the MDL, or in IPPs' first three consolidated amended complaints ("CACs"). ECF Nos. 437, 716, 827. Mitsubishi Electric had a small CRT market share and it was not a named target of the DOJ's investigation into the CRT market, or of any foreign government's investigation into the alleged CRT conspiracy. Second Alioto Decl. ¶ 3. In addition, Chunghwa, the DOJ's amnesty applicant with which IPPs settled in April 2009—and which provided IPPs with cooperation, including an oral proffer regarding the CRT conspiracy—did not implicate Mitsubishi Electric. *Id*.

As the litigation proceeded, however, IPPs continued to investigate Mitsubishi Electric's involvement in the CRT conspiracy and entered into a tolling agreement with Mitsubishi Electric in early November 2011. Pursuant to the tolling agreement, Mitsubishi Electric produced its CRT and CRT Product sales data to IPPs. *Id*. ¶ 4. IPPs' Fourth CAC, filed on January 10, 2013, named Mitsubishi Electric as a co-conspirator. ECF No. 1526.

In late 2013 and 2014, several direct action (opt-out) plaintiffs ("DAPs") and the direct purchaser plaintiffs ("DPPs") filed suit against Mitsubishi Electric and certain subsidiaries. The Court granted in part and denied in part Mitsubishi Electric's motion to dismiss various DAP complaints. ECF No. 2439. Mitsubishi Electric and its subsidiaries thus became parties to this MDL.

**B.    Discovery**

Discovery demanded a massive effort at both the class certification and the merits stages.  The discovery effort was complicated by the global nature of the CRT business and the fact that the alleged conspiracy began more than 20 years ago. The meet and confers with Defendants regarding their document productions lasted for more than two years. The document review process consisted of analysis of tens of thousands of documents—some hundreds of pages long and many handwritten. The most important of these documents were in Korean, Japanese or Chinese and required certified

translations. In total, over 250 depositions were taken, many in other countries and requiring the use of official interpreters. IPP Counsel had to coordinate discovery with other plaintiff groups asserting claims not only in this MDL, but also in state courts, adding further complexity.[12]

Because Mitsubishi Electric was a party to the DAP and DPP cases from 2013, IPPs received the documents and data they produced. The DAPs and DPPs also deposed several Mitsubishi Electric witnesses. IPP Counsel assisted in reviewing, translating and selecting exhibits for many of these depositions, and attended the depositions and/or reviewed the transcripts.[13]

In addition to the massive document and deposition discovery, this case also entailed extensive expert discovery. From April through September 2014, the parties exchanged expert reports on liability and damages. These included opening, opposition, rebuttal, and sur-rebuttal reports from 17 expert witnesses—including Mitsubishi Electric's expert. These reports contained complex economic analyses relating to liability, damages, and defenses specific to each Defendant. As with her class certification report, IPPs' expert Dr. Netz included Mitsubishi Electric CRT data and documents in her analyses of pass-through and damages to the indirect purchaser classes. All 17 experts were deposed, often multiple times, regarding their reports. IPP Counsel and Dr. Netz had to be fully informed on all expert reports—not only those which pertained to the IPPs—because other parties' reports involved issues that impacted the IPP case.[14]

## C.    Class Certification

Preparation for class certification took over two years. It involved the taking of over 50 depositions (including depositions of class representatives, Defendants, third-parties, and experts); the translation, review and analysis of thousands of documents relating specifically to impact and other Rule 23 requirements; and the work of experts conducting highly sophisticated economic analyses of Defendants' and third parties' data. In addition, IPPs also had to defend against Defendants' motion

---

[12] First Alioto Fee Decl. ¶¶ 25-59.

[13] Second Alioto Fee Decl. ¶ 7.

[14] First Alioto Fee Decl. ¶¶ 60-65; Second Alioto Fee Decl. ¶ 8.

to strike IPPs' expert reports. All told, the parties' briefings and expert reports consisted of over 6,000 pages. The motions themselves took over a year to resolve.[15]

By the time of IPPs' class certification motion, IPPs had named Mitsubishi Electric as a co-conspirator in their Fourth CAC. ECF No. 1526. In order to hold the other Defendants jointly and severally liable for the damages caused by Mitsubishi Electric, IPPs had to prove its participation in the CRT conspiracy. IPPs' expert, Dr. Netz, thus included Mitsubishi Electric in her analyses of pass-through and damages to the indirect purchaser classes in her report in support of class certification. ECF No. 1388. IPP Counsel also identified and analyzed evidence of Mitsubishi Electric's participation in the CRT conspiracy for the class certification motion.[16]

Following multiple rounds of briefing, this Court adopted the Reports and Recommendations of Interim Special Master Martin Quinn,[17] certified 22 statewide classes of indirect purchasers of CRTs, and denied Defendants' motion to strike IPPs' expert report. *In Re CRT,* 2013 WL 5391159 (N.D. Cal. Sept. 23, 2013). The Ninth Circuit Court of Appeals denied the Defendants' petition to appeal pursuant to Fed. R. Civ. P. 23(f). ECF No. 2283; First Alioto Fee Decl. ¶ 72.

**D.    Summary Judgment**

On November 7, 2014, the Defendants (including Mitsubishi Electric and its subsidiaries) filed 36 motions for summary judgment. *See* First Alioto Fee Decl., Ex. 11 (list of summary judgment motions). Eleven of these were directed specifically against IPPs' claims. These motions raised difficult and complex legal and factual issues regarding the FTAIA, antitrust standing and other

---

[15] First Alioto Fee Decl. ¶¶ 66-72; Second Alioto Fee Decl. ¶ 9.

[16] Second Alioto Fee Decl. ¶ 10; *see also, e.g.,* ECF No. 1388 (Decl. of Mario N. Alioto ISO IPPs' Motion for Class Certification) ¶ 17, Ex. 16 (identifying conspiratorial meeting between Samsung SDI and Mitsubishi Electric regarding, *inter alia,* "CDT price maintenance"); *id.* ¶ 40, Ex. 39 at 10 (Samsung SDI's Obj. & Resps. To DPPs' Interrog. No. 4, identifying SDCRT-0006041-42, the meeting with Mitsubishi Electric, as a document reflecting an agreement with a competitor); *id.* ¶ 41, Ex. 40 at 17, 39, 40 (Toshiba Corps.' Obj. and Resps. To DPPs' Interrog. Nos. 4 & 5, identifying multiple meetings between Toshiba and Mitsubishi Electric representatives regarding "CRT customers," "CRT sales," and "CRT prices.").

[17] *In re Cathode Ray Tube (CRT) Antitrust Litig.,* No. 07-cv-5944-JST, MDL No. 1917, 2013 WL 5429718 (N.D. Cal. June 20, 2013).

dispositive issues. IPP Counsel also coordinated with the other plaintiffs on the responses to the remaining motions, because rulings on those motions could have affected IPPs' case.[18]

Mitsubishi Electric joined in several of these motions, including the motions based on the FTAIA and antitrust standing, because they also pertained to the DAPs' claims.[19] IPP Counsel was primarily responsible for drafting the oppositions to these motions (*see, e.g.*, ECF Nos. 3254, 3287), which the Court ultimately denied in rulings very favorable to IPPs. *See* ECF Nos. 4742, 4910. Mitsubishi Electric and its subsidiaries also moved for summary judgment on the DAPs' claims. ECF Nos. 3033-4, 3037. This Court granted two Mitsubishi Electric subsidiaries' motions for summary judgment on these claims (ECF No. 4559) but denied Mitsubishi Electric's motion for summary judgment (ECF No. 5128). Second Alioto Fee Decl. ¶ 13.

### E.   Trial Preparations

In 2014 and early 2015—during the same time that the parties were preparing for and briefing the summary judgment motions—IPPs and certain DAPs were preparing for trial, originally scheduled to begin on March 9, 2015.[20] This effort—which entailed analyzing the best evidence garnered in eight years—required the preparation of a trial exhibit list containing thousands of potential trial exhibits, jury instructions, designations of testimony from approximately 250 deposition transcripts, video clips of deposition testimony, the Pretrial Statement, and witness lists; authentication of documents; the briefing of 64 motions *in limine* and other trial-related issues; preparing expert and class representative witnesses to testify at trial; mock trials; and of course preparing IPPs' case-in-chief.  First Alioto Fee Decl. ¶¶ 86-93; Second Alioto Fee Decl. ¶ 14.

In compiling the trial exhibits and designating deposition testimony, IPP Counsel assessed the evidence of Mitsubishi Electric's participation in the CRT conspiracy and prepared a trial memorandum detailing the evidence against Mitsubishi Electric. IPP Counsel also prepared for and

---

[18] *Id.* ¶¶ 73-80. For example, Defendants also filed motions against certain DAPs regarding state law claims that overlapped with IPPs' claims. Second Alioto Fee Decl. ¶ 12.

[19] *See, e.g.,* ECF Nos. 3005-3, 3006, 3008.

[20] By Order dated February 9, 2015, the Court vacated the trial date (ECF No. 3515).

participated in three mock trials in coordination with the DAPs during which DAP Counsel presented evidence of Mitsubishi Electric's participation in the CRT conspiracy to eleven mock juries. IPPs were fully prepared to try this case to a jury. Second Alioto Fee Decl. ¶ 15.

### F.     Settlements With Other Defendants

IPPs reached two settlements, before class certification, with Defendants Chunghwa Picture Tubes, Ltd. ("Chunghwa") and LG Electronics, Inc. and LG Electronics USA, Inc. (collectively "LG"), which the Court finally approved in 2013 and 2014, respectively. ECF Nos. 1105 and 2542. In early 2015, after the summary judgment motions were fully briefed, IPPs entered into their original settlements with the Philips, Panasonic, Hitachi, Toshiba, and Samsung SDI Defendants. Consequently, these defendants withdrew their summary judgment motions, motions *in limine*, and other pretrial motions relating to the IPP case pending final approval of their settlements. In June 2015, IPPs also entered into settlements with the Thomson/Technicolor defendants—like Mitsubishi Electric, these entities had not been previously named as defendants in the IPP case, but IPPs had been developing implicating evidence in coordination with the DAPs. The Court approved these original settlements on July 7, 2016.[21] Second Alioto Fee Decl. ¶ 16.

On July 13, 2020, following years of objections and appeals, the Court finally approved IPPs' amended settlements with the Philips, Panasonic, Hitachi, Toshiba, Samsung SDI, Thomson and TDA Defendants, and awarded IPPs a reduced fee of $129,606,250.[22] Following two years of further appeals, the United States Supreme Court denied objectors' petition for certiorari on June 13, 2022. ECF No. 6023. Second Alioto Fee Decl. ¶ 17.

### G.     IPPs File Suit Against Mitsubishi Electric And The Parties Enter Into Settlement Discussions

After the Court granted final approval to the Prior Settlements in July 2016 and awarded attorneys' fees to IPP Counsel, and while the appeals of those orders were pending, IPP Counsel

---

[21] *In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. 07-CV-5944, 2016 WL 3648478, at *7 (N.D. Cal. July 7, 2016) ("2016 Final Approval Order").

[22] *See* Second Fee Order, ECF No. 5786.

returned their attention to Mitsubishi Electric. IPP Counsel conducted an in-depth review of the evidence against Mitsubishi Electric, including review of the summary judgment briefing, the various "hot document" lists and memoranda previously prepared by IPPs regarding Mitsubishi Electric, and the deposition transcripts of important witnesses and the exhibits thereto. In addition, IPP Counsel conducted extensive legal research regarding the indirect purchaser laws of all 50 states, which had evolved since IPPs had moved for class certification in 2012. Second Alioto Fee Decl. ¶ 18.

On March 3, 2017, IPPs served a pre-suit demand on Mitsubishi Electric pursuant to the Massachusetts Consumer Protection Statute, M.G.L. c. 93A §§ 2 and 9. IPP Counsel and counsel for Mitsubishi Electric engaged in preliminary settlement negotiations shortly thereafter but were unable to reach a settlement. Second Alioto Fee Decl. ¶ 19.

Thereafter, IPPs continued researching and drafting their complaint against Mitsubishi Electric. IPPs filed the complaint on July 20, 2017, alleging claims on behalf of 31 "Indirect Purchaser Jurisdictions."[23] These alleged classes include indirect purchasers of CRTs seeking money damages under the laws of 30 states and the District of Columbia. The Mitsubishi Electric Complaint and the other MDL actions assert identical allegations regarding an international conspiracy to fix the prices of CRTs from March 1, 1995 through November 25, 2007.[24] This Court found that IPPs' action against Mitsubishi Electric relates to the *CRT* MDL litigation. ECF No. 5178.

### H.     IPPs And Mitsubishi Electric Enter Into A Settlement

IPPs and Mitsubishi Electric continued to discuss settlement during this period. The parties reached a settlement following extensive and arm's-length negotiations, including an in-person meeting attended by representatives of Mitsubishi Electric from the United States and Japan, as well as numerous telephone and email discussions. The negotiations took place over many months. Finally, following an all-day mediation before Judge Corley, the parties reached a settlement in principle. The

---

[23] *Luscher et al. v. Mitsubishi Electric Corp.,* 17-cv-04067-JST (N.D. Cal.), ECF No. 1, ¶ __ ("Mitsubishi Electric Complaint").

[24] *Compare* the Mitsubishi Electric Complaint *with* IPPs' Fourth Consolidated Amended Complaint, ECF No. 1526.

parties continued to negotiate and finally executed an agreement (the ("Settlement Agreement") on October 25, 2017. Second Alioto Fee Decl. ¶ 21.

IPP Counsel also negotiated a necessary Addendum to the Settlement Agreement, dated February 15, 2018. The Addendum revised the definition of the Settlement Class in the Settlement Agreement to conform to the requirements of the Missouri, Montana and Rhode Island consumer protection statutes and the allegations of the Complaint (ECF No. 5247). *Id.* ¶ 22.

Upon execution of the Settlement Agreement, Mitsubishi Electric paid Thirty-Three Million Dollars ($33,000,000) in cash (the "Settlement Amount") to settle all indirect purchaser claims alleged in the Mitsubishi Electric Complaint. The Settlement Amount was deposited into an escrow account and invested in United States Treasury bills and other instruments insured or guaranteed by the full faith and credit of the United States. If the Settlement Agreement is finally approved, the substantial net interest earned on the Settlement Amount will become part of the Settlement Fund. *Id.* ¶ 23.

In addition to monetary consideration, the Settlement Agreement contains cooperation provisions requiring Mitsubishi Electric to authenticate documents and data used in the prosecution of any continuing litigation. ECF No. 6053-2, Ex. A ¶ 31. The cooperation provisions are material and valuable terms of the settlement. They enhance IPPs' prospects for success at trial in the ongoing litigation against the Irico Defendants because they obligate Mitsubishi Electric to provide cooperation to IPPs, including authentication of documents, production of witnesses for interviews, depositions and/or trial, and other assistance. Second Alioto Fee Decl. ¶ 24.[25]

After executing the Settlement Agreement, IPP Counsel spent substantial time obtaining Court approval and providing class notice, as further described below. *Id.* ¶ 25.

## I.     IPPs' First Motion For Preliminary Approval

IPPs filed their first motion for preliminary approval of the Settlement Agreement on February 14, 2018. ECF No. 5245. On February 15, 2018, IPPs filed the Addendum. ECF No. 5247. The motion included a proposed notice program, which IPP Counsel devised in cooperation with The Notice

---

[25] IPPs are scheduled to go to trial against the Irico Defendants on January 8, 2024. ECF No. 6135.

Company, the Court-appointed Claims Administrator. Second Alioto Fee Decl. ¶ 26.

Financial Recovery Strategies ("FRS"), a third-party claims aggregator, objected to IPPs' preliminary approval motion. ECF No. 5252. FRS complained that claimants that had filed claims after the Court-ordered claims deadline against the Prior Settlements ("Late Claimants"), were being unfairly excluded, and that the plan of distribution for the Mitsubishi Electric Settlement was unfair to Late Claimants because it only permitted them to file claims against the $33,000,000 Mitsubishi Electric Settlement, and not the larger fund available under the Prior Settlements. *Id*. Another third-party claims aggregator, Spectrum Settlement Recovery, LLC, then filed a letter brief opposing FRS's request to extend the claims deadline for Late Claimants, ECF No. 5256. IPPs responded to these and other arguments. *See, e.g.,* ECF Nos. 5255, 5267. IPPs also submitted revised versions of the Detailed Notices (ECF No. 5267) to which FRS also objected. ECF No. 5269. Pursuant to Court Order, IPPs entered mediation with the claims aggregators. ECF No. 5296. Second Alioto Fee Decl. ¶ 27.

On April 10, 2018, the Ninth Circuit Court of Appeals heard oral argument on objections to the Prior Settlements. The panel members expressed concerns regarding several objectors' claim that certain so-called "repealer" state claims were being released without compensation. Accordingly, IPPs mediated with the objectors to attempt to resolve the issue. Because the resolution of the appeal could have impacted the Mitsubishi Electric Settlement and the notice to class members, IPP Lead Counsel requested that the Court defer ruling on preliminary approval while the mediation played out. ECF No. 5279. Ultimately, on August 28, 2018, the Court administratively terminated IPPs' motion. ECF No. 5326. Second Alioto Fee Decl. ¶ 28. As the Court acknowledged, IPPs and Mitsubishi Electric advised the Court that they intended to wait to pursue approval of their settlement until the appeals of the Prior Settlements were resolved.[26]

### J.   IPPs Prepare To Renew The Motion For Preliminary Approval In Conjunction With A Motion For Approval Of Amendments To The Prior Settlements

In the Fall of 2019, IPPs moved for approval of the amendments to the Prior Settlements. ECF No. 5587. As part of that motion, IPPs argued it was unnecessary to provide full notice to the

---

[26] ECF No. 5558 (Aug. 8, 2019 CMC Transcript) at 37:17-38:10.

settlement class members because the Amendments did not adversely affect their rights and interests. *Id*. at 25-30. In case the Court agreed with objectors that full notice was required, however, IPP Counsel prepared to re-file the motion for preliminary approval of the Mitsubishi Electric Settlement so that notice of all settlements could be issued simultaneously. Second Alioto Fee Decl. ¶ 29.

IPP Counsel could not simply re-file the prior motion for preliminary approval because, in the interim, Fed. R. Civ. Pro. 23(e) had been amended,[27] and the Northern District of California had revised its Procedural Guidance for Class Action Settlements.[28] Thus, IPP Counsel had to modify the prior motion substantially to comply with the new standards. For example, IPP Counsel had to obtain competing bids from potential settlement administrators, and had to modify the language of the Notices to comply with the Procedural Guidance. In addition, two named plaintiffs had recently passed away and another withdrew, requiring that IPPs amend the Mitsubishi Electric Complaint to substitute new named plaintiffs. Second Alioto Fee Decl. ¶ 30.

On February 6, 2020, pursuant to a stipulated order, IPPs filed their First Amended Complaint against Mitsubishi Electric, substituting new named plaintiffs for the States of Hawaii, New Mexico, and New Hampshire, and conforming the class definition to that agreed to by IPPs and Mitsubishi Electric in the Settlement Agreement. ECF No. 5679. Second Alioto Fee Decl. ¶ 31.

On March 11, 2020, the Court granted IPPs' motion for preliminary approval of the Amendments to the Prior Settlements. ECF No. 5695. The Court agreed with IPPs that full notice of the amended settlements was not necessary and approved IPPs' limited notice program. *Id*. at 18-19. However, this Order was immediately appealed. ECF Nos. 5709, 5711. Thus, IPP Counsel and counsel for Mitsubishi Electric subsequently determined that it was better to defer the motion for preliminary approval until after the Prior Settlements became final because any changes to the Prior Settlements could have impacted the Mitsubishi Electric Settlement. Due to the continuing unmeritorious objections and appeals by objectors to the Prior Settlements, those settlements did not become final

---

[27] Fed. R. Civ. Pro. 23(e), amended Dec. 1, 2018.

[28] Procedural Guidance for Class Action Settlements | United States District Court, Northern District of California (uscourts.gov), published November 1, 2018.

1   until June 13, 2022 when the United States Supreme Court denied objectors' petition for certiorari.

2   ECF No. 6023. Second Alioto Fee Decl. ¶ 32.

3       **K.    The Court Grants IPPs' Second Motion for Preliminary Approval And IPPs**
            **Publish Notice Of The Mitsubishi Electric Settlement To Class Members**

4

5       IPPs were finally able to renew their motion for preliminary approval of the Mitsubishi Electric

6   Settlement on August 18, 2022. ECF No. 6053. The motion was unopposed, and the Court granted it

7   on October 31, 2022. ECF No. 6104 (Preliminary Approval Order). The Court set the Fairness Hearing

8   for June 1, 2023 at 2:00 p.m. *Id.* at ¶ 21. On November 21, 2022, pursuant to stipulation of the parties,

9   the Court extended the deadline to provide notice to the class by forty-five (45) days to February 13,

10  2023. ECF No. 6114. Second Alioto Fee Decl. ¶ 33.

11      In accordance with the Court's Orders, The Notice Company, the Court-appointed Settlement

12  and Claims Administrator, published the Detailed and Summary Notices (the "Notices") online and in

13  various publications throughout the United States. The Notice Company also directly mailed and

14  emailed the Notices to over 14 million unique addressees. The Notices advised Class Members of the

15  material terms of the proposed settlement, including IPP Counsel's intent to apply to the Court for an

16  award of attorneys' up to one-third of the Mitsubishi Electric Settlement Fund ($11,000,000), plus

17  reimbursement of expenses and incentive awards for the class representatives.[29]

18  **III.   THE COURT SHOULD AWARD THE REQUESTED FEES**

19      IPPs respectfully request that the Court award IPP Counsel $11,000,000 in attorneys' fees plus

20  a proportionate share of the accrued interest on the fund. When combined with the prior fee award,

21  the proposed fee award constitutes 24.2% of the $580,750,000 total settlement fund in this MDL

22  litigation, or 33.3% of the $33,000,000 Mitsubishi Electric Settlement, and would result in an overall

23  multiplier on IPP Counsel's lodestar for the entire litigation of 1.735. This amount is well within the

24  acceptable range of attorney fee awards in this Circuit. IPPs also respectfully request reimbursement

25  of litigation expenses in the amount of $13,122.10, and payments of $2,000 to each Class

26  Representative for their time and effort representing the Class throughout the litigation.

27  _____

28  [29] *Id.* ¶ 34; *see also* Detailed Notice of Settlement (crtclaims.com).

1

2

### A.   The Court Should Judge The Requested Fee Against The Total Settlement Fund And IPP Counsel's Lodestar For The Entire Litigation

The Court should judge IPPs' requested fee award against the total settlements achieved in this case rather than the Mitsubishi Electric Settlement alone. In instances where, as here, there are successive settlements against different defendants as part of the same litigation, courts award attorneys' fees based on the total settlement fund and counsel's entire lodestar. *See Lobatz v. U.S. West Cellular of California, Inc.,* 222 F.3d 1142, 1149-50 (9th Cir. 2000) (affirming fee award and multiplier based on entire lodestar in case involving successive settlements against different defendants, and rejecting objections that the district court should have limited the lodestar to the time spent following the prior settlement); *In re Southeastern Milk Antitrust Litig.,* No. 2:07-CV 208, 2013 WL 2155379, at *7-8 (E.D. Tenn. May 17, 2013) (rejecting objection that the calculation of class counsel's lodestar should be limited to work performed after the period covered by a prior fee award, and awarding attorney fee based on entire lodestar).[30]

As the court in the *In re Auto. Parts Antitrust Litigation*—another sprawling indirect purchaser antitrust class action involving successive settlements—recently noted, "[i]n calculating the lodestar for purposes of the cross-check, it would be impractical to compartmentalize and isolate the work that EPP [Indirect Purchaser] Class Counsel did in any particular case at any particular time because all of their work assisted in achieving all of the settlements and has provided and will continue to provide a significant benefit to all of the EPP classes." *In re Auto. Parts Antitrust Litig.*, No. 12-MD-02311, 2020 WL 5653257, at *3 (E.D. Mich. Sept. 23, 2020). The same is true here.

As described above, the work performed by IPP Counsel during the almost eight years of litigation against the other defendants (when Mitsubishi Electric was named as a co-conspirator) was crucial in achieving the settlement with Mitsubishi Electric. For example, during settlement

---

[30] *See also In re Lithium Ion Batteries Antitrust Litig.*, No. 13MD02420YGRDMR, 2020 U.S. Dist. LEXIS 233607 (N.D. Cal. Dec. 10, 2020), *aff'd*, No. 21-15120, 2022 WL 16959377 (9th Cir. Nov. 16, 2022) (awarding 30 percent of the total settlement fund "(less the $4,495,000.00 from the Interim Award)," and calculating multiplier based on counsel's lodestar for the entire litigation, in a case involving three rounds of settlements).

15

INDIRECT PURCHASER PLAINTIFFS' SECOND MOTION FOR AN AWARD OF ATTORNEYS' FEES,
REIMBURSEMENT OF EXPENSES, AND INCENTIVE AWARDS FOR CLASS REPRESENTATIVES
Case No. 17-cv-04067-JST; Master File No. 07-cv-05944-JST

negotiations, IPPs were able to point to their successful litigation of the other Defendants' motions for summary judgment on FTAIA and antitrust standing grounds—two major issues in IPPs' case. IPPs were also able to convince Mitsubishi Electric that IPPs were prepared to go to trial and prove not only Mitsubishi Electric's participation in the conspiracy, but also the existence of the CRT conspiracy and the other Defendants' participation in it. IPP Counsel filed oppositions to summary judgment and performed the work necessary to prepare for trial prior to June 2015. Second Alioto Fee Decl. ¶ 21. Thus, IPP Counsel's lodestar for the entire litigation should be included in the analysis of IPPs' requested fee award, and IPPs' requested fee award should be viewed against the total settlements achieved in this MDL.

## B. The Requested Fee Is An Appropriate Percentage Of The Total Settlement Fund

Under the "common fund doctrine," attorneys who recover a fund for the benefit of the class are "entitled to a reasonable attorney's fee from the fund as a whole."[31] "It is well established that 'a private plaintiff, or his attorney, whose efforts create, discover, increase or preserve a fund to which others also have a claim is entitled to recover from the fund the costs of his litigation, including attorneys' fees.'"[32]

In the Ninth Circuit, courts may choose either the "percentage-of-the-fund" or the "lodestar" method in calculating the appropriate fee award.[33] However, "the primary basis of the fee award remains the percentage method."[34] In this District, virtually all courts awarding fees in recent common fund cases—including this Court—have applied the percentage-of-recovery approach with a lodestar

---

[31] *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980).

[32] *In re Omnivision Techonologies*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008) (Conti, J.), citing *Vincent v. Hughes Air W., Inc.,* 557 F.2d 759, 769 (9th Cir. 1977).

[33] *See Vizcaino v. Microsoft Corp. ("Vizcaino II"),* 290 F.3d 1043, 1047 (9th Cir. 2002).

[34] *Vizcaino II*, 290 F.3d at 1050; *see also Wal-Mart Stores, Inc. v. Visa U.S.A., Inc*., 396 F.3d 96, 122 (2d Cir. 2005) ("*Wal-Mart*") (endorsing the percentage-of-the-recovery method because it "directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation[.]").

cross-check.[35] As this Court recently noted, the Ninth Circuit has set the "benchmark for an attorneys' fee award in a successful class action [at] twenty-five percent of the entire common fund." Second Fee Order at 22-23 (quoting *Williams v. MGM-Pathe Commc'ns Co.*, 129 F.3d 1026, 1027 (9th Cir. 1997)). The Court also found that a multiplier of 1.6 on IPPs' lodestar is "well within the range of acceptable multipliers." *Id.* at 24. Thus, IPPs' requested fee would still be *below* the Ninth Circuit's 25% benchmark and would increase the already-approved multiplier by only a small amount (1.60 vs. 1.735)—still well within the range of acceptable multipliers. *See, e.g., In re Hyundai & Kia Fuel Econ. Litig.,* 926 F.3d 539, 572 (9th Cir. 2019) (affirming "modest" multipliers of 1.22 and 1.5521 and citing cases affirming multipliers up to 3.65).

Indeed, the 25% benchmark rate in common fund cases is merely "a starting point for analysis." *Vizcaino II*, 290 F.3d at 1048. In determining the correct percentage, the court takes into account such factors as the results obtained, the complexity of the case, the length of the case, and the risk taken by plaintiffs' counsel. *Id.* at 1049. "[I]n most common fund cases, the award exceeds [the 25%] benchmark."[36] The Ninth Circuit has emphasized that the standard is not whether a district court should or should not apply a particular percentage, but rather "whether in arriving at its percentage it

---

[35] *See, e.g.,* First Fee Order, 2016 WL 4126533, at *6 (awarding IPPs 27.5% of the then-settlement fund); Second Fee Order at 25 (awarding IPPs 23.66% of the settlement fund); *In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. 07-CV-5944-JST, 2016 WL 183285 (N.D. Cal. Jan. 14, 2016) (awarding DPPs 30% of the settlement fund); *In re Capacitors Antitrust Litig.*, No. 14-cv-3264, ECF No. 2364 (N.D. Cal. June 25, 2019); *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, No. M-02-1486-PJH, 2007 WL 2416513, at *1 (N.D. Cal. Aug. 16, 2007); *In re TFT-LCD Antitrust Litig. ("LCD I")*, No. 07-md-01827, 2011 WL 7575003, at *1-2 (N.D. Cal. Dec. 27, 2011); *In re TFT-LCD (Flat Panel) Antitrust Litig. ("LCD II")*, No. 07-md-01827, 2013 WL 149692, at *1-2 (N.D. Cal. Jan. 14, 2013); *In re TFT-LCD Antitrust Litig. ("LCD III")*, No. 07-md-01827, 2013 WL 1365900, at *7-8 (N.D. Cal. Apr. 3, 2013).

[36] *In re Omnivision*, 559 F. Supp. 2d at 1047; *see also Pokorny v. Quixtar, Inc.*, No. C 07-0201 SC, 2013 WL 3790896, at *1 (N.D. Cal. July 18, 2013) ("30% award the norm absent extraordinary circumstances that suggest reasons to lower or increase the percentage"); *In re Flonase Antitrust Litig.,* 951 F. Supp. 2d 739, 748 (E.D. Pa. 2013) (noting that "in the last two-and-a-half years, courts in eight direct purchaser antitrust actions approved one-third fees" and citing cases); *In re Activision Secs. Litig.*, 723 F. Supp. 1373, 1375, 1377 (N.D. Cal. 1989) (observing that "the benchmark is closer to 30%" and that the fee award in common fund cases "almost always hovers around 30% of the fund created by the settlement").

considered all the circumstances of the case and reached a reasonable percentage." *Vizcaino II*, 290 F.3d at 1048.

Finally, reasonable fee awards promote private enforcement of—and compliance with—the antitrust laws, an important public good. Private antitrust litigation is essential to the enforcement of the antitrust laws.[37] "In the absence of adequate attorneys' fee awards, many antitrust actions would not be commenced. . . ."[38] IPPs' private enforcement of the antitrust laws on behalf of U.S. indirect purchasers of CRTs is particularly important here given that the United States Department of Justice only pursued criminal charges against one defendant, Samsung SDI Co., Ltd.

IPPs respectfully submit that an award of 24.2% of the total settlement fund is warranted here, given: (a) the excellent results obtained for the Class; (b) the exceptional nature and complexity of the case, as well as its long duration; and (c) the enormous financial risks that prosecuting a case of this size has entailed. The reasonableness of the award is also confirmed by a lodestar cross-check —it equates to a modest 1.735 multiplier —and by a comparison with fee awards in similar cases.

**C.     The Circumstances Here Justify the Requested Fee Award**

In determining IPP Counsel's entitlement to their first fee award, "the Court conducted a benchmark analysis by examining: '(1) the results achieved for the class; (2) the complexity of the case and the risk of and expense to counsel of litigating it; (3) the skill, experience, and performance of counsel (both sides); (4) the contingent nature of the fee; and (5) fees awarded in comparable cases.'"[39] "The most important factor is the results achieved for the class." First Fee Order at 6.

After reviewing these factors in 2016 as to the Prior Settlements, this Court concluded that, "Class Counsel's multi-year litigation effort . . . produced the settlement in this case," and that "the

---

[37] *See, e.g., Pillsbury Co. v. Conboy*, 459 U.S. 248, 262–63 (1983); *Reiter v. Sonotone Corp.*, 442 U.S. 330, 344 (1979); *Hawaii v. Standard Oil Co. of Cal.*, 405 U.S. 251, 262 (1972); *Perma Life Mufflers, Inc. v. Int'l Parts Corp.*, 392 U.S. 134, 139 (1968).

[38] *Alpine Pharmacy, Inc. v. Chas. Pfizer & Co.*, 481 F.2d 1045, 1050 (2d Cir. 1973), *cert. denied*, 414 U.S. 1092 (1973).

[39] Second Fee Order at 23-24 (citing First Fee Order at *5-9, *Vizcaino II*, 290 F.3d at 1043, and *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F. 3d 935, 941-42 (9th Cir. 2011)).

actual litigation risks borne by Class Counsel as chronicled by [Special Master Quinn's] R&R were significant[.]" First Fee Order at *8-9. The Court awarded attorneys' fees constituting 27.5% of the settlement fund. *Id.* at *9. These findings remain true and justify the requested 24.2% fee award.

### 1. IPP Counsel Achieved An Excellent Result For The Class

"The overall result and benefit to the class from the litigation is the most critical factor in granting a fee award." *Omnivision*, 559 F. Supp. 2d at 1046 (citation omitted); *see also Vizcaino v. Microsoft Corp.*, 142 F. Supp. 2d 1299, 1302 (W.D. Wash. 2001) ("*Vizcaino I*") (noting that in a common fund case, "'size of the recovery constitutes a suitable measure of the attorneys' performance'").

This Court previously found IPPs' Prior Settlements, which represented approximately 20 percent of the single damages suffered by the class, were "without question a good recovery and firmly in line with the recoveries in other cases."[40] The Court concluded that the result achieved supported a "modest increase over the Ninth Circuit benchmark." First Fee Order at *7. In 2020, this Court reaffirmed its prior findings, holding that "these settlements remain a 'good recovery' in light of the costs, risks, and delay of trial and appeal." Second Fee Order at 20. IPPs have now recovered *an additional* $33 million for class members and are seeking a fee award *below* the Ninth Circuit's 25% benchmark. Moreover, the case is not over. IPPs are continuing to litigate against the Irico Defendants to recover additional amounts for class members, demonstrating their resolve to maximize the recovery for the class.

When combined with the Prior Settlement amounts, the total recovery for indirect purchasers is, to date, $580,750,000. In the context of indirect purchaser price-fixing cases, this total recovery is significant. Recent litigation on behalf of indirect purchasers of Lithium-Ion Batteries, Optical Disk Drives, and Capacitors garnered $113,450,000, $205,000,000, and $80,790,000, respectively.[41] In

---

[40] *In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. 07-CV-5944, 2016 WL 3648478, at *7 (N.D. Cal. July 7, 2016) ("2016 Final Approval Order").

[41] *See In re Lithium Ion Batteries Antitrust Litig.*, 2019 WL 3856413, at *19 (N.D. Cal. Aug. 16, 2019); *In re Optical Disk Drive Products Antitrust Litig.*, 3:10-md-02143-RS (N.D. Cal.), ECF No. 2889 at 13; *In re Capacitors Antitrust Litig.*, No. 14-cv-3264-JD (N.D. Cal.), ECF No. 2973 at 2.

*Batteries,* Judge Gonzales-Rogers concluded that settlements on behalf of indirect purchasers amounting to 11.7 percent of single damages were an "excellent" result for the class.[42] The indirect *LCD* case is one of the rare cases to recover more than this case. However, the LCD conspiracy started more recently (*i.e.*, 2001) and fewer producers had exited the industry than in this case. The *LCD* conspiracy was therefore easier to prove because evidence and witnesses were available. In addition, most of the *LCD* defendants had pled guilty to Sherman Act violations and admitted that their conduct had an impact in the United States, leading to criminal fines totaling $894 million.[43]

Here, the conspiracy period started over 25 years ago (*i.e.*, 1995), and many of the alleged participants were bankrupt or no longer existed—including one of the main participants in the conspiracy with the largest market share—LG.Philips Displays.[44] Two other major participants in the conspiracy—Orion Electric Company and Thai CRT Company, Ltd.—also declared bankruptcy before the litigation began and could not be served. This meant not only that IPPs could not collect damages from these entities, but also that most of their documents, data, and witnesses regarding the conspiracy were gone and could not be used against the remaining Defendants. Even for the remaining Defendants, employees had moved on, retired, or could not remember relevant facts, and many had colorable withdrawal defenses because they had exited the CRT business during the class period.[45] In addition, only one Defendant pled guilty to fixing prices of one type of CRT sold to certain customers,

---

[42] *In re Lithium Ion Batteries Antitrust Litig.*, 2019 U.S. Dist. LEXIS 139327, at *53 (noting that ". . . [t]he action was risky," and that Class Counsel had litigated it on a contingency basis for 6.5 years). Notably, IPPs in this case shouldered these risks and costs on a contingency basis for 15 years.

[43] *See LCD III*, 2013 WL 1365900, at *7 (recognizing that class counsel's risk is diminished when civil litigation has the benefit of parallel criminal price-fixing charges and guilty pleas).

[44] LG.Philips Displays (often referred to as "LPD"), a Netherlands-based joint venture formed in June 2001 by defendants LG Electronics and Koninklijke Philips Electronics, was the largest manufacturer of CRTs in the world before it entered bankruptcy in January 2006. First Alioto Fee Decl. ¶ 7.

[45] Multiple defendants moved for summary judgment on the grounds that they withdrew from the conspiracy and that the statutes of limitations had expired. *See, e.g.*, ECF Nos. 3027 (Philips), 2995 (Toshiba), 2972 (Hitachi), 3043 (LG Electronics).

and the DOJ's single criminal fine of $32 million amounted to less than 3.5 percent of the fines assessed against the LCD defendants. Second Alioto Fee Decl. ¶ 37.

Viewed on its own, the $33 million, all-cash settlement with Mitsubishi Electric is also a "good recovery." Mitsubishi Electric manufactured Color Picture Tubes ("CPTs") only for the first four years of the alleged conspiracy, stopping in 1998. And, Mitsubishi Electric's annual CDT market share was usually less than 3% and always less than 5% during the class period.[46] As explained in the preliminary approval motion, IPPs' expert's single damages estimate of $2.78 billion must be adjusted to $3.36 billion to account for the nine additional states included in the Mitsubishi Electric Settlement Class.[47] Five percent of this $3.36 billion single damages estimate is $168 million. Thus, IPPs' settlement with Mitsubishi Electric is approximately 19.6% of the single damages attributable to Mitsubishi Electric. Second Alioto Fee Decl. ¶ 40. As noted, this Court has already found that settlements amounting to 20% of single damages were "without question a good recovery and firmly in line with the recovery in other cases."[48]

The Settlement Amount is also 5.6% of the total $580,750,000 Settlement Fund, which is more than Mitsubishi Electric's less-than-5% market share, and it is consistent with the amounts obtained in previously approved settlements with similarly-situated Japanese defendants. Mitsubishi Electric had a lesser role in the conspiracy than other Japanese defendants and a smaller market share. In addition, Mitsubishi Electric has other colorable defenses, discussed in detail below.  Second Alioto

---

[46] *See* ECF No. 4966-4 at 22–23 ("worldwide CRT production by Mitsubishi Electric from 2000 to 2006 of 0–2%").

[47] Second Alioto Fee Decl. ¶ 38. Mitsubishi Electric would have strongly contested IPPs' damages estimate. The other Defendants' experts opined that indirect purchasers suffered little or no damages as a result of the alleged CRT conspiracy. They maintained that the alleged conspiracy was ineffective and unsuccessful, and that IPPs could not "link" any allegedly agreed-upon CRT price increases to allegedly increased prices of CRT Products purchased by class members. One defense expert estimated the total class damages to be approximately $61 million. Other defense experts maintained that the total class damages were zero. *Id.* ¶ 39.  Indeed, the Irico Defendants recently filed a motion to exclude IPPs' expert's damages report. ECF No. 6149.

[48] 2016 Final Approval Order at *6-7.

1  Fee Decl. ¶ 41. Further, as also discussed below, $33 million is a good recovery in light of the expense,

2  risk, and delay of continued litigation and trial.

3      In sum, the total settlements achieved by IPP Counsel on behalf of indirect purchasers of CRTs

4  are excellent, both in absolute terms and in the circumstances of this case. IPP Counsel should be

5  compensated in an amount commensurate with the result achieved.

6          **2.      This Litigation Has Been Exceptionally Risky, Complex, And
                      Expensive To Prosecute**

7

8      Risk is another important factor in determining a fair fee award. ; *In re Online DVD-Rental*

9  *Antitrust Litig.*, 779 F.3d 934, 954–55 (9th Cir. 2015) ("*Online DVD*"),. This factor also supports the

10  requested 24.2% fee.

11      "'An antitrust class action is arguably the most complex action to prosecute. . . . The legal

12  and factual issues involved are always numerous and uncertain in outcome.'" *In re Linerboard*

13  *Antitrust Litig.,* No. A-98-5055, MDL No. 1261, 2004 WL 1221350 at *10 (E.D. Pa. June 2, 2004)

14  (citations omitted); *see also In re NASDAQ Mkt.-Makers Antitrust Litig.*, 187 F.R.D. 465, 475

15  (S.D.N.Y. 1998) ("Antitrust litigation in general, and class action litigation in particular, is

16  unpredictable."); *In re Superior Beverage/Glass Container Consol. Pretrial*, 133 F.R.D. 119, 127

17  (N.D. Ill. 1990) ("The 'best' case can be lost and the 'worst' case can be won, and juries may find

18  liability but no damages. None of these risks should be underestimated.").

19      It is no exaggeration to say that this case represents antitrust litigation, and multi-district

20  litigation, at its most risky and complex. Indeed, the sheer duration of the litigation—15 years and

21  counting—is exceptional and more than justifies the requested fee award. As shown by the summary

22  of IPP Counsel's efforts provided herein, as well as the summaries in the First and Second Alioto

23  Fee Declarations and the other IPP Counsels' declarations, this case required IPP Counsel to

24  confront many novel and/or difficult legal and factual issues that made this case exceptionally risky,

25  complex, and expensive to prosecute. First Alioto Fee Decl. ¶¶ 6-7; Second Alioto Decl. ¶ 42.

26      Among other things, Defendants asserted: that the alleged conspiracy, to the extent it existed,

27  was limited to CDTs in Asia; that it caused little or no harm to Plaintiffs; that the FTAIA barred some

28  or all of Plaintiffs' damages; that Plaintiffs lacked antitrust standing; and that some or all of the

Defendants either did not participate in the alleged conspiracy or withdrew from it. First Alioto Fee Decl. ¶¶ 6-8, 73-80. Due to Defendants' enormous resources and the skill and experience of their counsel, they aggressively litigated these and other issues at the motion to dismiss stage, at class certification, and again at summary judgment.[49] In addition, the complexity of the case was increased because it involved indirect purchaser claims under the laws of 30 States and the District of Columbia, brought by 40 class representatives and 50 law firms located throughout the United States;[50] and, it required IPP Counsel to coordinate the prosecution of the litigation with three other groups of Plaintiffs, which sometimes held interests adverse to IPPs. First Alioto Fee Decl. ¶¶ 81-85, 126.

Upon review of the risks faced by IPP Counsel in 2016, this Court adopted the Special Master's finding that they "weigh[] strongly in favor of an increase from the Ninth Circuit 25% benchmark." First Fee Order at *9. As the Court found:

> This was a sprawling, eight-year litigation defended vigorously by aggressive, competent antitrust counsel. Most of the defendants did not plead guilty to any antitrust violation, and most were prepared to prove that they did not participate in any conspiracy and that whatever conspiracy was proven inflicted no damage on the class. In other words, the actual litigation risks borne by Class Counsel as chronicled by the R&R were significant, and the out-of-pocket costs of undertaking and maintaining the litigation were unusually high, justifying the Special Master's conclusion that 'this factor weighs strongly in favor of an increase from the Ninth Circuit's 25% benchmark for attorneys' fees.

---

[49] *Id.* at ¶¶ 14-21, 71, 73-80. The caliber of opposing counsel is another important factor in assessing the quality of IPP Counsel's work. *See, e.g., In re King Res. Co. Secs. Litig.*, 420 F. Supp. 610, 634 (D. Colo. 1976); *Arenson v. Board of Trade*, 372 F. Supp. 1349, 1354 (N.D. Ill. 1974).

[50] *Id.* at ¶¶ 6-8, 43-45. Prosecuting indirect purchaser antitrust claims is widely recognized to be riskier and more complex than prosecuting direct purchaser claims because indirect purchasers must prove pass-through of the overcharge—often through several levels of the distribution chain—to end consumers. *See, e.g.*, IIA Areeda et al., Antitrust Law ¶ 396 (3d ed. 2006) (illustrating the "complexity" and "practical problems of proof" in indirect-purchaser suits); Ronald W. Davis, *Amchem and Antitrust: Have the Ground Rules for Antitrust Class Actions Changed?*, 12 Antitrust 39, 44 (Fall 1997) ("[T]he cold fact remains that, in order to recover, the indirect purchasers must prove something about the facts and/or the law which . . . direct purchasing . . . class members do not need to prove. That means the indirect purchaser has a harder row to hoe than the direct purchaser.").

*Id.* at *8-9; *see also* 2016 Final Approval Order at *9 (noting that there was a "great risk to IPPs in continuing to pursue litigation, including both uncertainty over the results of pending motions and challenges (and delay) in collecting any winnings.").

In 2020, the Court reaffirmed these findings, noting:

> If anything, the litigation that has taken place since the Court's prior order, and the accompanying passage of time, serve to underscore the Court's findings about risk and delay.

Second Fee Order at 20. Notably, the risk, delay, and expense continued for IPPs for *another* two years after the Court's July 13, 2020 Second Fee Order. Objectors to the Prior Settlements pursued their objections to the settlements and IPPs' fee award all the way to the United States Supreme Court, which finally put an end to their appeals on June 13, 2022 when it denied certiorari. *See* ECF No. 6023. IPP Counsel received their first fee award in October 2022—15 years after the case began— following this Court's September 27, 2022 Order regarding the allocation of the fee award. ECF No. 6078.  Second Alioto Fee Decl. ¶ 44.

IPPs' case against Mitsubishi Electric was no less risky. For example, Plaintiffs faced a substantial risk that the jury would find Mitsubishi Electric did not participate in the alleged conspiracy. Among other things, Mitsubishi Electric would have argued at trial that it did not attend a single "glass meeting"; that it ceased manufacture of CPTs in 1998 and CDTs in 2004; that most of its CDTs used a different technology and were marketed to different customers than those of the other alleged conspirators; and that because its market share was very small—substantially less than 5%— it was therefore always a minor player in the market, with little incentive to join the conspiracy. The Court's ruling precluding Samsung SDI's litigation statements against Mitsubishi Electric would also have made IPPs' case more difficult to prove. ECF No. 4982. Second Alioto Fee Decl. ¶ 45.

Mitsubishi Electric would also likely have asserted that even if it had participated in the conspiracy, it withdrew when it stopped manufacturing CRTs in 2004.[51] It would also have contested IPPs' evidence of antitrust standing, pass-through of the overcharge to indirect purchasers, and class

---

[51] *See* ECF No. 4786 (granting Philips' summary judgment motion on withdrawal grounds).

INDIRECT PURCHASER PLAINTIFFS' SECOND MOTION FOR AN AWARD OF ATTORNEYS' FEES,
REIMBURSEMENT OF EXPENSES, AND INCENTIVE AWARDS FOR CLASS REPRESENTATIVES
Case No. 17-cv-04067-JST; Master File No. 07-cv-05944-JST

1    certification. *See, e.g.,* ECF Nos. 3050, 3585 (motions filed by the other Defendants). Even assuming

2    a favorable jury verdict at trial, IPPs could prevail on liability and still obtain no net recovery given

3    the large settlement offset that would be applied as a result of the Prior Settlements.[52] While IPPs

4    remain confident in the strength of the evidence supporting their claims, a successful jury verdict

5    remained a risky proposition. *See In re NASDAQ*, 187 F.R.D. at 476 ("[T]he history of antitrust

6    litigation is replete with cases in which antitrust plaintiffs succeeded at trial on liability, but recovered

7    no damages, or only negligible damages, at trial, or on appeal.").

8         In short, the risks and complexities of this case were enormous and more than justify the 24.2%

9    requested fee.

10        **3.    A High Level of Skill Was Required To Prosecute This Case And IPP
              Counsel's Work Was Of High Quality**

11

12        The skill of IPP Counsel and the high quality of their work in this case also support the

13   requested fee award. *See Gustafson v. Valley Ins. Co.*, No. CV 01-1575-BR, 2004 WL 2260605, at *2

14   (D. Or. Oct. 6, 2004). After conducting a thorough review of the work performed by IPP Counsel,

15   Special Master Quinn concluded that IPP Counsel did a "generally superb job . . . in this case." ECF

16   No. 4351 ("R&R") at 74. This Court agreed that "the entire record of the litigation viewed fairly

17   demonstrates that Class Counsel managed this case diligently and efficiently for the benefit of the

18   class." First Fee Order at *7 (citing R&R at 60). The Court also adopted the Special Master's finding

19   that, "prosecution of the case was divided in a sensible way among class counsel law firms, both by

20   defendant and by task[,]" and "[IPP] Counsel was superb at coordinating the class effort so that the

21   team remained united in its objectives, and avoided squabbling over strategy, finances, personalities,

22   and the like." *Id.* at *8 (citing R&R at 61).

23

24   ───────────────
     [52] Second Alioto Fee Decl. ¶ 46. In *LCD*, for example, the jury awarded the direct purchaser class
25   plaintiffs $87 million in damages against Toshiba, but they recovered nothing because the award was
     offset by their $443 million obtained in settlements. Likewise, Best Buy recovered nothing at trial
26   against Toshiba and Hannstar. The jury found that Toshiba did not participate in the conspiracy and
     awarded only $7.5 million against Hannstar. Once Best Buy's settlements with the other defendants
27   in *LCD* had been offset, Hannstar owed nothing to Best Buy. Likewise here, if IPPs had gone to trial
     against Mitsubishi Electric, there would have been an offset of $547,750,000. *Id.* ¶ 47.
28

25

INDIRECT PURCHASER PLAINTIFFS' SECOND MOTION FOR AN AWARD OF ATTORNEYS' FEES,
REIMBURSEMENT OF EXPENSES, AND INCENTIVE AWARDS FOR CLASS REPRESENTATIVES
Case No. 17-cv-04067-JST; Master File No. 07-cv-05944-JST

IPP Counsel respectfully submit that the work they have performed has been of the highest quality and of great benefit to the Class. The Court is familiar with the history of this case, having presided over more than eight years of contentious litigation, represented by more than six thousand docket entries. The First and Second Alioto Fee Declarations provide a comprehensive description of the substantial work IPP Counsel undertook including the various substantive motions, procedural matters, discovery requests and disputes, depositions, and other work necessary to build a case of this magnitude.[53] Courts have recognized the need to confront novel and difficult legal and factual issues as a significant factor to be considered in making a fee award. *See, e.g.*, *Vizcaino I*, 142 F. Supp. 2d at 1303, 1306.  The high caliber of opposing counsel also supports this conclusion. *Id.*

As this Court has recognized, "it was Class Counsel's multi-year litigation effort . . . that produced the settlement[s] in this case." First Fee Order at *8. Thus, this factor also supports the requested fee award.

### 4.    The Contingent Nature of the Fee

The contingent nature of the fee, where there is no assurance of attorneys' fees or reimbursement of expenses, also supports the requested fee award. *See, e.g.*, *Vizcaino II*, 290 F.3d at 1050; *Online DVD*, 779 F.3d at 954–55 & n.14. The commencement of a class action is no guarantee of success. "[T]he risk of non-payment in complex cases, such as this one, is very real." *In re Veeco Instruments Inc. Sec. Litig.*, No. 05 MDL 01695(CM), 2007 WL 4115808, at *6 (S.D.N.Y. Nov. 7, 2007). It is well-established that attorneys who take on the risk of a contingency case should receive a premium to compensate for that risk when they are successful:

> It is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases. *See* Richard Posner, *Economic Analysis of Law* § 21.9, at 534–35 (3d ed. 1986). Contingent fees that may far exceed the market value of the services if rendered on a non-contingent basis are accepted in the legal profession as a legitimate way of assuring competent representation for plaintiffs who could not afford to pay on an hourly basis regardless whether they win or lose.

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1299 (9th Cir. 1994) ("*WPPSS*").

---

[53] *See* First Alioto Fee Decl. ¶¶ 9-115 & Exhibits 1-12 thereto; Second Alioto Fee Decl. ¶¶ 2-49.

IPP Counsel have been litigating this case for more than 15 years, incurring a total of 186,540.8 hours, amounting to $83,876,218.50 in lodestar, and $10,359,530.30 in expenses on behalf of the class, and taking the chance that they might not be compensated at all. Due to the complexity of this case and the amount of work involved, certain lead attorneys have been working full time on this case for years and have been unable to take on other work. All of this time and expense was performed on a wholly contingent basis with the risk of nonpayment continuing until June 13, 2022, when objectors' petition for certiorari was denied. Indeed, IPP Counsel waited 15 years (until October 2022) to receive their first fee award and reimbursement of expenses in this case.[54] *See Vizcaino II*, 290 F.3d at 1050 (finding it relevant that "counsel's representation of the class—on a contingency basis—extended over eleven years, entailed hundreds of thousands of dollars of expense, and required counsel to forgo significant other work. . . ."). Moreover, the work will continue as there is still much to be done to administer the Prior Settlements and the Mitsubishi Electric Settlement and complete the distribution of funds to class members. Second Alioto Fee Decl. ¶ 49.

As this Court previously concluded, "the actual litigation risks borne by Class Counsel as chronicled by the R&R were significant, and the out-of-pocket costs of undertaking and maintaining the litigation were unusually high, justifying the Special Master's conclusion that 'this factor weighs strongly in favor of an increase from the Ninth Circuit 25% benchmark for attorney's fees.'" First Fee Order at *9 (citing R&R at 67).

### 5.    The Award Sought Comports with Awards in Similar Cases

"In setting a fee, district courts are instructed to 'examine lawyers' reasonable expectations, which are based on the circumstances of the case and the range of fee awards out of common funds of comparable size.'" *In re Wells Fargo & Co. S'holder Derivative Litig.*, 445 F. Supp. 3d 508, 525–26 (N.D. Cal. 2020), *aff'd*, 845 F. App'x 563 (9th Cir. 2021) (citations omitted).

IPPs seek an attorney fee award of $11,000,000, which together with the $129,606,250 fee already awarded, would constitute 24.2% of the $580,750,000 total settlement fund, or 33.3% of the Mitsubishi Electric Settlement. It is appropriate to measure IPPs' fee request against the total

---

[54] Second Alioto Fee Decl. ¶ 48.

settlement fund in this case. *See* Section III. A, *supra*. The 24.2% requested fee would be *less than* the awards in similar antitrust cases and is warranted here. Courts in this District have recently awarded fees ranging between 25% and 33.3% of the common fund in similar antitrust cases, with most awards at 30% of the total fund.[55] This is consistent with Judge Conti's observation that a "30% award [is] the norm absent extraordinary circumstances that suggest reasons to lower or increase the percentage."[56] In this case, the Court has awarded DPP counsel 30% of the total DPP settlements in attorneys' fees,[57] and the Court awarded IPP Counsel 27.5% of the then-settlement amount in 2016 prior to the amendments. First Fee Order at *2, 9 & 16.

Given the exceptional complexity and risks of this case, the results achieved, the duration and contingent nature of the case, as described herein, a 24.2% fee award is more than reasonable.

**D.  A Lodestar Cross-Check Confirms That The Requested Fee Is Reasonable**

Courts relying on the percentage method often apply a lodestar cross-check. *See Vizcaino II*, 290 F.3d at 1050 (calculating the lodestar to measure the attorneys' investment of time in the case "provides a check on the reasonableness of the percentage award"). The lodestar is obtained by multiplying the total number of attorney hours by a reasonable hourly rate. A lodestar multiplier is

---

[55] *See, e.g., In re Lithium Ion Batteries,* 2020 U.S. Dist. LEXIS 233607 at *47 (just under 30% of $113,450,000); *In re Optical Disk Drive Antitrust Litig.,* Case No. 10-md-2143 RS (N.D. Cal. July 23, 2015) (ECF No. 1658) (30% of $37,900,000)*; id.,* ECF No. 1851 (N.D. Cal. April 14, 2016) (30% of $37,000,000); *In re Static Random Access Memory (SRAM) Antitrust Litig.,* No. 4:07-md-01819, Dkt. 1407 ¶A (N.D. Cal. Oct. 14, 2011) (33.3% of $41,322,000); *LCD I,* 2011 WL 7575003 (30% of $405,022,242); *LCD II,* 2013 WL 149692 (30% of $68 million); *LCD III,* 2013 WL 1365900, at *8 & n.11 (28.6% of $1.082 billion). In *LCD III,* the Court awarded IPP counsel 28.6% in fees but also awarded 1.4% to Settling States, for a total fee award of 30%. *See id.* at *14.

[56] *Pokorny v. Quixtar, Inc.,* 2013 WL 3790896, at *1. *See also* Eisenberg, Miller & Germano, *Attorneys' Fees in Class Actions: 2009-2013,* 92 N.Y.U. L. Rev. 937, 952 (2017) ("EMG Study") (finding that out of 19 antitrust settlements between 2009 and 2013 with a mean recovery of $501.09 million and a median recovery of $37.3 million, the mean and median percentages awarded were 27 percent and 30 percent, respectively.).

[57] *In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. 07-CV-5944-JST, 2016 WL 183285 (N.D. Cal. Jan. 14, 2016) (first DPP fee order awarding 30% of $127,450,000 settlement fund); ECF No. 5169 (second DPP fee order awarding 30% of $84,750,000 settlement fund).

28

INDIRECT PURCHASER PLAINTIFFS' SECOND MOTION FOR AN AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND INCENTIVE AWARDS FOR CLASS REPRESENTATIVES
Case No. 17-cv-04067-JST; Master File No. 07-cv-05944-JST

obtained by dividing the amount of fees sought by the lodestar. *See In re Flonase Antitrust Litig.,* 951 F. Supp. 2d at 749-50.

Courts may exercise their discretion to enhance or reduce the lodestar through the use of multipliers. Multipliers of two to four are frequently applied in common fund cases when the lodestar method is applied. For example, in *Vizcaino II,* the Ninth Circuit approved a fee award amounting to 28% of a $96.9 million settlement fund, corresponding to a multiplier of 3.65. *See Vizcaino II,* 290 F.3d at 1051-54 & n.6 (in a majority of cases where the common fund was $50-200 million, the multiplier was in the 1.3 – 3.0 range); *see also In re Wells Fargo*, 445 F. Supp. 3d at 532 (awarding a multiplier of 2.7, "which is within the range other courts have found reasonable"). Comparable multipliers have been applied in antitrust actions. *See, e.g., In re Flonase Antitrust Litig.*, 951 F. Supp. 2d at 750-51 (awarding 33.3% of $150 million common fund, equal to a 2.99 lodestar multiplier); *Brewer v. Southern Union Co.*, 607 F. Supp. 1511, 1533 (D. Col. 1984) (the multiplier in antitrust cases "has ranged from 2.0 to 4.0"); ECF No. 5169 at 5 (DPP fee order awarding multiplier of 2.152).

Multipliers applied in recent antitrust cases involving large settlement funds are similar as well. *See, e.g., LCD III*, 2013 WL 1365900, at *8 ($308 million fee award, equating to 2.4-2.6 multipliers); *In re Tricor Direct Purchaser Antitrust Litig.*, No. 05-cv-00340 (E. D. Pa.), Dkt. 543 ¶ 11(l) ($83,333,333 fee award, equaling a 3.93 lodestar multiplier); *In re Visa Check/Mastermoney Antitrust Litig.*, 297 F. Supp. 2d 503, 524 (E.D.N.Y. 2003) ($220 million fee award, equaling a 3.5 lodestar multiplier); *see also In re NASDAQ*, 187 F.R.D. at 489 ("The percentage fee award in this case represents a multiplier of approximately 3.97 times Class Counsel's lodestar of $36,191,751. A multiplier of 3.97 is not unreasonable in this type of case. Indeed, as noted by the Honorable Leonard B. Sand, 'In recent years multipliers of between 3 and 4.5 have become common.'").

Here, a lodestar cross-check confirms the reasonableness of the requested award. Plaintiffs submitted 183,000 hours amounting to an adjusted, current rate lodestar of $81,067,569 in connection with their first fee application.[58] IPP Counsel now submit an additional 3,540.8 hours for time incurred

---

[58] IPP Counsel's current rate lodestar submitted to the Court was $90,075,076.50. *Id.* at 23. The Court adopted the Special Master's 10 percent across-the-board reduction to the lodestar and

29

prosecuting the case against Mitsubishi Electric after June 2015 (the cut off for IPPs' first fee motion). This time amounts to a lodestar of $2,471,753.50 at historical rates, and $2,808,649.50 at current rates.[59] As explained in Plaintiffs' first fee application and above, this time was reasonable and necessary for the prosecution of this action.[60] Among other things, work was assigned by Lead Counsel among IPP Counsel to avoid duplication; counsel kept contemporaneous time records; and, where possible, IPPs worked with the DPPs and DAPs to avoid duplication of effort.[61] In addition, IPP Counsel's historical hourly rates are reasonable, ranging from $350 to $985. The current hourly rates are likewise reasonable, ranging from $375 to $1,200 (applied to only one hour of work). Each firm avers that the rates charged are that firm's usual and customary rates at the time the work was performed.[62] Courts in this District, including this one, have repeatedly approved billing rates in this range.[63]

As also explained above, the work performed by IPP Counsel during the eight years of litigation against the other Defendants (when Mitsubishi Electric was named as a co-conspirator) was crucial to reaching the settlement with Mitsubishi Electric. IPP Counsels' prior lodestar should therefore be included in the lodestar cross-check of IPPs' requested fee award. *See Lobatz,* 222 F.3d at 1149-50 (affirming fee award and multiplier based on entire lodestar in case involving successive

---

reduced the lodestar to $81,067,569. *Id.* However, it should be noted that the Special Master also found IPP Counsel's rates were low compared to rates approved in similar cases in this district (R&R at 69-70); that the 183,000 hours spent by IPP Counsel compared favorably to the time spent by counsel for the indirect purchaser plaintiffs in LCD, who spent 313,000 hours over six years—70 percent more (*id.* at 70); and that "[t]he billing entries here showed that for the most part the case was staffed in a reasonably 'lean and mean' manner." *Id.* at 72.

[59] Second Alioto Fee Decl. ¶ 52; *see also* Compendium of IPP Counsel Fee Declarations, Ex. 2

[60] *See* First Alioto Fee Decl. ¶¶ 124-127; Second Alioto Fee Decl. ¶ 53; IPP Counsel's Fee Declarations, filed herewith.

[61] Second Alioto Fee Decl. ¶ 53.

[62] *See* IPP Counsels' Fee Declarations, filed herewith.

[63] *See* First Fee Order, at *7 (approving rates from $350 to $875); *In re High-Tech Emp. Antitrust Litig.,* No. 11-CV-02509-LHK, 2015 WL 5158730, at *9 (N.D. Cal. Sept. 2, 2015) (approving rates for attorneys ranging from about $310 to $975); *In re Wells Fargo,* 445 F. Supp. 3d at 527 (approving non-contract attorney rates ranging from $250 to $1,075).

settlements against different defendants); *In re Southeastern Milk Antitrust Litig.,* 2013 WL 2155387, at *6 (same); *In re Auto. Parts,* 2020 WL 5653257, at *3 (same). As in *Auto Parts,* "it would be impractical to compartmentalize and isolate the work that [IPP] Counsel did in any particular case at any particular time because all of their work assisted in achieving all of the settlements and has provided and will continue to provide a significant benefit to all of the EPP classes." *Id.*

The total current rate lodestar of all IPP Counsel, minus the lodestars of three firms that are no longer involved in the prosecution of this case,[64] is $81,021,971.50.[65] IPPs' proposed $11,000,000 fee award, plus the $129,606,250 already awarded, would result in a total fee of $140,606,250, which constitutes 24.2% of the $580,750,000 total settlement fund, and a modest overall multiplier of 1.735 on IPP Counsel's current rate lodestar. This Court already approved a multiplier of 1.6 on IPPs' lodestar as "well within the range of acceptable multipliers." *Id.* at 24. IPPs' requested fee would only increase the already-approved multiplier by a small amount (1.60 vs. 1.735)—still well within the range of acceptable multipliers. *See, e.g., In re Hyundai & Kia Fuel Econ. Litig.,* 926 F.3d at 572 (affirming "modest" multipliers of 1.22 and 1.5521 and citing cases affirming multipliers up to 3.65).

Finally, IPP Counsel have performed substantial work in this case that is not captured in this fee motion. IPP Counsel have **not** included in their lodestar the time spent litigating the objections lodged to the Prior Settlements and the resulting appeals, or the negotiation of the amendments to the Prior Settlements and subsequent briefing or appeals. Nor does the lodestar include time spent litigating against the Irico Defendants, or any of the time spent administering the Prior Settlements, moving for distribution of the settlement funds, or distributing the funds to claimants. IPP Counsel have spent thousands of hours amounting to millions of dollars in lodestar on these matters over the last seven years. Second Alioto Fee Decl. ¶ 48. IPP Lead Counsel's firm alone has spent 11,357 hours

---

[64] Cooper & Kirkham, P.C., the Law Offices of Francis O. Scarpulla, and the Law Office of Theresa Moore. Second Alioto Fee Decl. ¶ 54.

[65] This lodestar was calculated as follows: prior Court-approved, current rate lodestar ($81,067,569) plus new current rate lodestar ($2,808,649.50), minus the prior, current rate lodestar of three firms ($2,854,247). Second Alioto Fee Decl. ¶ 54.

1  amounting to $8,764,114 in lodestar (at current rates) on these matters in the almost eight years since

2  June 2015.[66]

3  **IV.    THE COURT SHOULD APPROVE THE REIMBURSEMENT OF EXPENSES**

4         "Class counsel are entitled to reimbursement of reasonable out-of-pocket expenses." *Wakefield*

5  *v. Wells Fargo & Co.*, No. 3:13-cv-05053 LB, 2015 WL 3430240, at *6 (N.D. Cal. May 28, 2015);

6  *see also* Fed. R. Civ. P. 23 subd. (h) ("In a certified class action, the court may award reasonable

7  attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement."). Out-

8  of-pocket expenses that are reasonable, necessary, directly related to the litigation, and normally

9  charged to a fee-paying client are recoverable. *See, e.g., Willner v. Manpower Inc.*, No. 11-cv-02846-

10  JST, 2015 WL 3863625, at *7 (N.D. Cal. June 22, 2015) (attorney may recover from common fund

11  the out-of-pocket expenses normally charged to a paying client, such as research, filing fees, travel,

12  mediation, telephone charges, obtaining transcripts, copying, and mailing); *Buccellato v. AT&T*

13  *Operations, Inc.*, No. C10-00463-LHK, 2011 WL 3348055, at *2 (N.D. Cal. June 30, 2011) (litigation

14  costs and expenses incurred by class counsel that are adequately documented and reasonably incurred

15  for the benefit of the class are recoverable).

16         Here, IPP Counsel previously incurred expenses totaling $7,670,525.57 ($2,405,000 from the

17  Litigation Expense Fund, plus $4,495,878.02 from the Future Expense Fund, plus $769,647.55

18  individual unreimbursed expenses). The Court approved the $4,495,878.02 expenditure from the

19  Future Expense Fund and the reimbursement of IPP Counsel's out-of-pocket expenses totaling

20  $3,174,647.55 in July 2016.[67]  The Court reaffirmed these findings in July 2020.[68] After the United

21  States Supreme Court denied certiorari on June 13, 2022, the Court ordered the immediate distribution

22  to IPP Counsel of their $3,174,647.55 in expenses.[69]

23

24

25  [66] *See* Declaration of Lauren C. Capurro ¶ 6, filed herewith.

26  [67] First Fee Order, at *19.

27  [68] Second Fee Order at 25.

28  [69] ECF No. 6046 (Order dated Aug. 9, 2022); Second Alioto Fee Decl. ¶ 57.

1    In addition, in connection with IPPs' motion to distribute the settlement funds to class

2 members, the Court approved a further $2,330,710.87 expended from the Future Expense Fund and

3 granted IPP Counsel's request for reimbursement of additional out-of-pocket expenses in the amount

4 of $345,171.76.[70]

5    IPP Counsel have separately incurred an additional $13,122.10 in reasonable and necessary

6 expenses in connection with the prosecution of the case against Mitsubishi Electric for which they

7 now also seek reimbursement. These expenses include expert fees, travel, photocopies, overnight mail,

8 computer research, and filing fees. These expenses are supported by each firm's separate declaration

9 in support of fees and  expenses.[71] None of these expenditures has been included in IPP Counsels'

10 previous requests for reimbursement of expenses. All of these expenses are of a type routinely charged

11 to paying clients in a case of this size, and they were necessary to the litigation of this action.[72] IPPs

12 respectfully request that the Court reimburse them in full.

13 **V.     THE COURT SHOULD APPROVE THE REQUESTED INCENTIVE AWARDS**

14    "[N]amed plaintiffs, as opposed to designated class members who are not named plaintiffs, are

15 eligible for reasonable incentive payments." *Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003).

16 Incentive awards are designed to compensate class representatives for work performed on behalf of a

17 class and are "'fairly typical in class action cases.'" *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d

18 at 943 (citation omitted); *see also Rodriguez v. W. Pub. Corp.*, 563 F.3d 948, 958-59 (9th Cir.2009)

19 ("Incentive awards are discretionary . . . and are intended to compensate class representatives for work

20 done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the

21 action, and, sometimes, to recognize their willingness to act as a private attorney general.").

22    "In this district, a $5,000 payment is presumptively reasonable." *Moore v. Verizon*

23 *Communications Inc.*, No. C 09–1823 SBA, 2013 WL 4610764, at *15 (N.D. Cal. Aug. 28, 2013)

24

25

---

26 [70] ECF No. 6040 (Order Granting Motion for Order Authorizing Distribution of Settlement Funds).

27 [71] IPP Counsel Fee Declarations, Ex. 3.

28 [72] Second Alioto Fee Decl. ¶ 59.

1  (citations omitted); *see also, e.g., In re Online DVD,* 779 F.3d at 941, 947-48 (affirming incentive

2  awards of $5,000 to each of nine class representatives).

3  　　　　Here, 21 of the 34 class representatives have already been granted a $15,000 incentive award,

4  and one has been granted a $5,000 incentive award in connection with the Prior Settlements.[73] In

5  connection with the Mitsubishi Electric litigation and settlement, they and the 13 new class

6  representatives have reviewed and approved the original and amended complaints, searched for

7  relevant documents, reviewed and approved the settlement agreement and amendments thereto,

8  stayed in regular contact with their lawyers, and remained apprised of the material developments in

9  the litigation. The class representatives have not, however, had to engage in formal discovery

10  because IPPs settled with Mitsubishi Electric before formal discovery commenced. Accordingly, IPP

11  Counsel respectfully request that the Court award modest incentive payments of $2,000 for each

12  class representative named in IPPs' First Amended Complaint against Mitsubishi Electric.

13  **VI.　　CONCLUSION**

14  　　　　IPPs respectfully request that the Court: (1) grant IPPs' motion for attorneys' fees in the

15  amount of $11,000,000, or 24.2% of the total settlement fund, plus interest accrued on the amount

16  while on deposit; (2) award IPP Counsel reimbursement of $13,122.10 in litigation expenses; and (3)

17  approve the requested incentive awards to Class Representatives in the amounts of $2,000 each, all

18  as described herein.

19

20  Dated:  March 10, 2023　　　　　　　　　　Respectfully submitted,

21  　　　　　　　　　　　　　　　　　　　　 */s/ Mario N. Alioto*　　　　　
22  　　　　　　　　　　　　　　　　　　　　Mario N. Alioto (56433)
　　　　　　　　　　　　　　　　　　　　malioto@tatp.com
23  　　　　　　　　　　　　　　　　　　　　Joseph M. Patane (72202)
　　　　　　　　　　　　　　　　　　　　jpatane@tatp.com
24  　　　　　　　　　　　　　　　　　　　　Lauren C. Capurro (241151)
　　　　　　　　　　　　　　　　　　　　laurenrussell@tatp.com
25  　　　　　　　　　　　　　　　　　　　　TRUMP, ALIOTO, TRUMP & PRESCOTT LLP
26  　　　　　　　　　　　　　　　　　　　　2001 Union Street, Suite 482

27  ───────────────
[73] *See* Second Fee Order at 26; Second Alioto Fee Decl. ¶ 60. By Order dated August 9, 2022, the
28  Court ordered the immediate distribution of these payments. ECF No. 6046.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

San Francisco, CA 94123
Telephone: 415-563-7200
Facsimile: 415-346-0679

*Lead Counsel for the Indirect Purchaser Plaintiffs*

INDIRECT PURCHASER PLAINTIFFS' SECOND MOTION FOR AN AWARD OF ATTORNEYS' FEES,
REIMBURSEMENT OF EXPENSES, AND INCENTIVE AWARDS FOR CLASS REPRESENTATIVES
Case No. 17-cv-04067-JST; Master File No. 07-cv-05944-JST