MARIO N. ALIOTO (56433)
LAUREN C. CAPURRO (241151)
TRUMP, ALIOTO, TRUMP & PRESCOTT, LLP
2001 Union Street, Suite 482
San Francisco, CA  94123
Telephone: (415) 563-7200
Facsimile: (415) 346-0679
E-mail: malioto@tatp.com
laurenrussell@tatp.com

*Lead Counsel for the Indirect Purchaser Plaintiffs*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION<br><br>This Document Relates to:<br><br>*Luscher, et al. v. Mitsubishi Electric Corp.,* 17-cv-04067-JST | Master File No. 07-cv-05944-JST<br>Case No. 17-cv-04067-JST<br><br>MDL No. 1917<br><br>**DECLARATION OF MARIO N. ALIOTO IN SUPPORT OF SECOND MOTION FOR AN AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES AND INCENTIVE AWARDS FOR CLASS REPRESENTATIVES**<br><br>Hearing Date:  June 1, 2023<br>Time: 2:00 p.m.<br>Courtroom: 6, 2nd Floor<br>Judge:  Honorable Jon S. Tigar |

1    I, Mario N. Alioto, declare:

2    1.    I am an attorney duly licensed by the State of California and am admitted to

3    practice before this Court. I am a partner with the law firm Trump, Alioto, Trump & Prescott,

4    LLP and my firm serves as the Court-appointed Lead Counsel for the Indirect Purchaser

5    Plaintiffs ("IPPs") in the above-captioned action. I submit this Declaration in support of the IPPs'

6    Second Motion For An Award of Attorneys' Fees, Reimbursement of Expenses, and Incentive

7    Awards For Class Representatives, filed herewith. The matters set forth herein are within my

8    personal knowledge and if called upon and sworn as a witness I could competently testify

9    regarding them.

10    **SUMMARY OF THE LITIGATION**

11    2.    IPP Counsel prepared and filed four Consolidated Amended Complaints ("CAC")

12    between March 16, 2009, and January 12, 2013 (ECF Nos. 437, 716, 827 and 1526) asserting

13    claims under the laws of 22 States. Defendants asserted dozens of complex legal and factual

14    defenses, including applicability of the FTAIA; lack of antitrust standing; and jurisdictional and

15    statute of limitations defenses. It took almost two years and two rounds of motions to dismiss

16    before Defendants finally answered the Third CAC on January 26, 2011.

17    3.    My co-counsel and I decided not to name Mitsubishi Electric as a defendant in any

18    of the original complaints consolidated in the MDL, or in IPPs' first three consolidated amended

19    complaints ("CACs"). ECF Nos. 437, 716, 827. Mitsubishi Electric had a small CRT market

20    share and it was not a named target of the DOJ's investigation into the CRT market, or of any

21    foreign government's investigation into the alleged CRT conspiracy. In addition, Chunghwa, the

22    DOJ's amnesty applicant with which IPPs settled in April 2009—and which provided IPPs with

23    cooperation, including an oral proffer regarding the CRT conspiracy—did not implicate

24    Mitsubishi Electric.

25    4.    As the litigation proceeded, however, my firm and other IPP firms continued to

26    investigate Mitsubishi Electric's involvement in the CRT conspiracy and decided to enter into a

27    tolling agreement with Mitsubishi Electric in early November 2011. Pursuant to the tolling

28    agreement, Mitsubishi Electric produced its CRT and CRT Product sales data to IPPs.  IPPs'

DECLARATION OF MARIO N. ALIOTO IN SUPPORT OF INDIRECT PURCHASER PLAINTIFFS' SECOND
MOTION FOR AN AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND INCENTIVE
AWARDS FOR CLASS REPRESENTATIVES; Case No. 17-cv-04067-JST; Master File No. 07-cv-05944-JST

1   Fourth CAC, filed on January 10, 2013, named Mitsubishi Electric as a co-conspirator. ECF No.

2   1526.

3       5.      In late 2013 and 2014, several direct action (opt-out) plaintiffs ("DAPs") and the

4   direct purchaser plaintiffs ("DPPs") filed suit against Mitsubishi Electric and certain subsidiaries.

5   The Court granted in part and denied in part Mitsubishi Electric's motion to dismiss various DAP

6   complaints. ECF No. 2439. Mitsubishi Electric and its subsidiaries thus became parties to this

7   MDL.

8   **Discovery**

9       6.      Discovery demanded a massive effort at both the class certification and the merits

10   stages.  The discovery effort was complicated by the global nature of the CRT business and the

11   fact that the alleged conspiracy began more than 20 years ago. The meet and confers with

12   Defendants regarding their document productions lasted for more than two years. The document

13   review process consisted of analysis of tens of thousands of documents—some hundreds of pages

14   long and many handwritten. The most important of these documents were in Korean, Japanese or

15   Chinese and required certified translations. In total, over 250 depositions were taken, many in

16   other countries and requiring the use of official interpreters. IPP Counsel had to coordinate

17   discovery with other plaintiff groups asserting claims not only in this MDL, but also in state

18   courts, adding further complexity.

19       7.      Because Mitsubishi Electric was a party to the DAP and DPP cases from 2013,

20   IPPs received the documents and data they produced. The DAPs and DPPs also deposed several

21   Mitsubishi Electric witnesses. Members of my firm worked with other IPP and DAP firms to

22   assist in reviewing, translating and selecting exhibits for many of these depositions, and attended

23   the depositions and/or reviewed the transcripts.

24       8.      In addition to the massive document and deposition discovery, this case also

25   entailed extensive expert discovery. From April through September 2014, the parties exchanged

26   expert reports on liability and damages. These included opening, opposition, rebuttal, and sur-

27   rebuttal reports from 17 expert witnesses—including Mitsubishi Electric's expert. These reports

28   contained complex economic analyses relating to liability, damages, and defenses specific to each

3

Defendant. As with her class certification report, IPPs' expert Dr. Netz included Mitsubishi Electric CRT data and documents in her analyses of pass-through and damages to the indirect purchaser classes. All 17 experts were deposed, often multiple times, regarding their reports. IPP Counsel and Dr. Netz had to be fully informed on all expert reports—not only those which pertained to the IPPs—because other parties' reports involved issues that impacted the IPP case. I worked closely with Dr. Netz on her reports and defended her depositions.

**Class Certification**

9.      Preparation for class certification took over two years. It involved the taking of over 50 depositions (including depositions of class representatives, Defendants, third-parties, and experts); the translation, review and analysis of thousands of documents relating specifically to impact and other Rule 23 requirements; and the work of experts conducting highly sophisticated economic analyses of Defendants' and third parties' data. My firm took the lead on all aspects of this work and coordinated other IPP firms' work. My firm also took and defended depositions (including that of Dr. Netz relating to her expert report in support of class certification), reviewed and analyzed documents and selected evidence for inclusion in the motion, and drafted the class certification motion. In addition to moving for class certification, IPPs also had to defend against Defendants' motion to strike IPPs' expert reports. All told, the parties' briefings and expert reports consisted of over 6,000 pages. The motions themselves took over a year to resolve.

10.      By the time of IPPs' class certification motion, IPPs had named Mitsubishi Electric as a co-conspirator in their Fourth CAC. ECF No. 1526. In order to hold the other Defendants jointly and severally liable for the damages caused by Mitsubishi Electric, IPPs had to prove its participation in the CRT conspiracy. Therefore, I instructed IPPs' expert, Dr. Netz, to include Mitsubishi Electric in her analyses of pass-through and damages to the indirect purchaser classes in her report in support of class certification. ECF No. 1388. IPP Counsel also identified

4

1    and analyzed evidence of Mitsubishi Electric's participation in the CRT conspiracy for the class

2    certification motion.[1]

3              11.      Following multiple rounds of briefing, this Court adopted the Reports and

4    Recommendations of Interim Special Master Martin Quinn[2] and certified 22 statewide classes of

5    indirect purchasers of CRTs and denied Defendants' motion to strike IPPs' expert report. *In Re*

6    *CRT,* 2013 WL 5391159 (N.D. Cal. Sept. 23, 2013). The Ninth Circuit Court of Appeals denied

7    the Defendants' petition to appeal pursuant to Fed. R. Civ. P. 23(f). ECF No. 2283.

8    **Summary Judgment**

9              12.      On November 7, 2014, the Defendants (including Mitsubishi Electric and its

10   subsidiaries) filed 36 motions for summary judgment. As described in detail in the First Alioto

11   Fee Declaration, ECF No. 4071-1, eleven of these motions were directed specifically against

12   IPPs' claims. These motions raised difficult and complex legal and factual issues regarding the

13   FTAIA, antitrust standing and other dispositive issues. My firm took the lead in coordinating

14   with other the DAPs on responses to the remaining motions, because rulings on those motions

15   could have affected IPPs' case. For example, Defendants also filed motions against certain DAPs

16   regarding state law claims that overlapped with IPPs' claims.

17             13.      Mitsubishi Electric joined in several of these motions, including the motions based

18   on the FTAIA and antitrust standing, because they also pertained to the DAPs' claims.[3] My firm

19   and other IPP firms were primarily responsible for drafting the oppositions to these motions (*see,*

20

21   _____

22   [1] *See, e.g.,* ECF No. 1388 (Decl. of Mario N. Alioto ISO IPPs' Motion for Class Certification) ¶
     17, Ex. 16 (identifying conspiratorial meeting between Samsung SDI and Mitsubishi Electric

23   regarding, *inter alia*, "CDT price maintenance"); *id*. ¶ 40, Ex. 39 at 10 (Samsung SDI's Obj. &
     Resps. To DPPs' Interrog. No. 4, identifying SDCRT-0006041-42, the meeting with Mitsubishi

24   Electric, as a document reflecting an agreement with a competitor); *id.* ¶ 41, Ex. 40 at 17, 39, 40
     (Toshiba Corps.' Obj. and Resps. To DPPs' Interrog. Nos. 4 & 5, identifying multiple meetings

25   between Toshiba and Mitsubishi Electric representatives regarding "CRT customers," "CRT

26   sales," and "CRT prices.").

     [2] *In re Cathode Ray Tube (CRT) Antitrust Litig.,* No. 07-cv-5944-JST, MDL No. 1917, 2013 WL

27   5429718 (N.D. Cal. June 20, 2013).

28   [3] *See, e.g.,* ECF Nos. 3005-3, 3006, 3008.

1    *e.g.*, ECF Nos. 3254, 3287), which the Court ultimately denied in rulings very favorable to IPPs.

2    *See* ECF Nos. 4742, 4910. Mitsubishi Electric and its subsidiaries also moved for summary

3    judgment on the DAPs' claims. ECF Nos. 3033-4, 3037. This Court granted two Mitsubishi

4    Electric subsidiaries' motions for summary judgment on these claims (ECF No. 4559) but denied

5    Mitsubishi Electric's motion for summary judgment (ECF No. 5128).

6    **Trial Preparations**

7           14.    In 2014 and early 2015—during the same time that the parties were preparing for

8    and briefing the summary judgment motions—IPPs and certain DAPs were preparing for trial,

9    originally scheduled to begin on March 9, 2015.[4] This effort—which entailed analyzing the best

10   evidence garnered in eight years—required the preparation of a trial exhibit list containing

11   thousands of potential trial exhibits, jury instructions, designations of testimony from

12   approximately 250 deposition transcripts, video clips of deposition testimony, the Pretrial

13   Statement, and witness lists; authentication of documents; the briefing of 64 motions *in limine*

14   and other trial-related issues; preparing expert and class representative witnesses to testify at trial;

15   mock trials; and of course preparing IPPs' case-in-chief.

16          15.    In compiling the trial exhibits and designating deposition testimony, IPP Counsel

17   assessed the evidence of Mitsubishi Electric's participation in the CRT conspiracy and prepared a

18   trial memorandum detailing the evidence against Mitsubishi Electric. IPP Counsel also prepared

19   for and participated in three mock trials in coordination with the DAPs during which DAP

20   Counsel presented evidence of Mitsubishi Electric's participation in the CRT conspiracy to

21   eleven mock juries. IPPs were fully prepared to try this case to a jury.

22   **Settlements With Other Defendants**

23          16.    IPPs reached two settlements before class certification with Defendants

24   Chunghwa Picture Tubes, Ltd. ("Chunghwa") and LG Electronics, Inc. and LG Electronics USA,

25   Inc. (collectively "LG"), which the Court finally approved in 2013 and 2014, respectively. ECF

26

27   _____

28   [4] By Order dated February 9, 2015, the Court vacated the trial date (ECF No. 3515).

DECLARATION OF MARIO N. ALIOTO IN SUPPORT OF INDIRECT PURCHASER PLAINTIFFS' SECOND
MOTION FOR AN AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND INCENTIVE
AWARDS FOR CLASS REPRESENTATIVES; Case No. 17-cv-04067-JST; Master File No. 07-cv-05944-JST

Nos. 1105 and 2542. In early 2015, after the summary judgment motions were fully briefed, IPPs entered into their original settlements with the Philips, Panasonic, Hitachi, Toshiba, and Samsung SDI Defendants. Consequently, these defendants withdrew their summary judgment motions, motions *in limine*, and other pretrial motions relating to the IPP case pending final approval of their settlements. In June 2015, IPPs also entered into settlements with the Thomson/Technicolor defendants—like Mitsubishi Electric, these entities had not been previously named as defendants in the IPP case, but IPPs had been developing implicating evidence in coordination with the DAPs. The Court approved these original settlements on July 7, 2016.[5]

17.     On July 13, 2020, following years of objections and appeals, the Court finally approved IPPs' amended settlements with the Philips, Panasonic, Hitachi, Toshiba, Samsung SDI, Thomson and TDA Defendants, and awarded IPPs a reduced fee of $129,606,250.[6] Following two years of further appeals, the United States Supreme Court denied objectors' Petition for Certiorari on June 13, 2022. ECF No. 6023.

**IPPs File Suit Against Mitsubishi Electric And The Parties Enter Into Settlement Discussions**

18.     After the Court granted final approval to the Prior Settlements in July 2016 and awarded attorneys' fees to IPP Counsel, and while the appeals of those orders were pending, IPP Counsel returned their attention to Mitsubishi Electric. My firm and other IPP firms conducted an in-depth review of the evidence against Mitsubishi Electric, including review of the summary judgment briefing, the various "hot document" lists and memoranda previously prepared by IPPs and DAPs regarding Mitsubishi Electric, and the deposition transcripts of important witnesses and the exhibits thereto. In addition, my firm and other IPP firms conducted extensive legal research regarding the indirect purchaser laws of all 50 states, which had evolved since IPPs had moved for class certification in 2012.

---

[5] *In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. 07-CV-5944, 2016 WL 3648478, at *7 (N.D. Cal. July 7, 2016) ("2016 Final Approval Order").

[6] *See* Second Fee Order, ECF No. 5786.

19.     On March 3, 2017, my firm drafted and served a pre-suit demand on Mitsubishi Electric pursuant to the Massachusetts Consumer Protection Statute, M.G.L. c. 93A §§ 2 and 9. I engaged in preliminary settlement negotiations with counsel for Mitsubishi Electric shortly thereafter but we were unable to reach a settlement.

20.     Thereafter, my firm worked with a couple of other IPP firms to continue researching and drafting IPPs' complaint against Mitsubishi Electric. IPPs filed their complaint against Mitsubishi Electric on July 20, 2017, alleging claims on behalf of 31 "Indirect Purchaser Jurisdictions."[7] These alleged classes include indirect purchasers of CRTs seeking money damages under the laws of 30 states and the District of Columbia. The complaint against Mitsubishi Electric and the other MDL actions assert identical allegations regarding an international conspiracy to fix the prices of CRTs from March 1, 1995 through November 25, 2007.[8]  This Court found that IPPs' action against Mitsubishi Electric relates to the *CRT* MDL litigation. ECF No. 5178.

**IPPs And Mitsubishi Electric Enter Into A Settlement**

21.     I continued to discuss settlement with Mitsubishi Electric's counsel during this period. We reached a settlement following extensive and arm's-length negotiations, including an in-person meeting attended by representatives of Mitsubishi Electric from the United States and Japan, as well as numerous telephone and email discussions. The negotiations took place over many months. Finally, following an all-day mediation before Judge Corley, we reached a settlement in principle. During the settlement negotiations, I was able to point to IPPs' successful litigation of the other defendants' motions for summary judgment on FTAIA and antitrust standing grounds—two major issues in IPPs' case. I was also able to convince Mitsubishi Electric that IPPs were prepared to go to trial and prove not only Mitsubishi Electric's participation in the conspiracy, but also the existence of the CRT conspiracy and the other

---

[7] *Luscher et al. v. Mitsubishi Electric Corp.,* 17-cv-04067-JST (N.D. Cal.), ECF No. 1, ¶ __ ("Mitsubishi Electric Complaint").

[8] *Compare* Mitsubishi Electric Complaint *with* IPPs' Fourth Consolidated Amended Complaint, ECF No. 1526.

1   defendants' participation in it. As described herein, IPP Counsel filed the oppositions to summary

2   judgment and performed the work necessary to prepare for trial prior to June 2015. The parties

3   finally executed an agreement (the "Settlement Agreement") on October 25, 2017.

4         22.   I also negotiated a necessary Addendum to the Settlement Agreement, dated

5   February 15, 2018. ECF No. 5247. The Addendum revised the definition of the Settlement Class

6   in the Settlement Agreement to conform to the requirements of the Missouri, Montana and Rhode

7   Island consumer protection statutes and the allegations of the Complaint.

8         23.   Upon execution of the Settlement Agreement, Mitsubishi Electric paid Thirty-

9   Three Million Dollars ($33,000,000) in cash (the "Settlement Amount") to settle all indirect

10   purchaser claims alleged in the Complaint. I caused the Settlement Amount to be deposited into

11   an escrow account and invested in United States Treasury bills and other instruments insured or

12   guaranteed by the full faith and credit of the United States. If the Settlement Agreement is finally

13   approved, the substantial net interest earned on the Settlement Amount will become part of the

14   Settlement Fund.

15         24.   In addition to monetary consideration, the Settlement Agreement contains

16   cooperation provisions requiring Mitsubishi Electric to authenticate documents and data used in

17   the prosecution of any continuing litigation. ECF No. 6053-2, Ex. A ¶ 31. The cooperation

18   provisions are material and valuable terms of the settlement. They enhance IPPs' prospects for

19   success at trial in the ongoing litigation against the Irico Defendants because they obligate

20   Mitsubishi Electric to provide cooperation to IPPs, including authentication of documents,

21   production of witnesses for interviews, depositions and/or trial, and other assistance.[9]

22         25.   After executing the Settlement Agreement, my firm, with some assistance from

23   other IPP firms, spent substantial time obtaining Court approval and providing class notice, as

24   further described below.

25   //

26

27   _____

[9] IPPs are scheduled to go to trial against the Irico Defendants on January 8, 2024. ECF No.
28   6135.

DECLARATION OF MARIO N. ALIOTO IN SUPPORT OF INDIRECT PURCHASER PLAINTIFFS' SECOND
MOTION FOR AN AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND INCENTIVE
AWARDS FOR CLASS REPRESENTATIVES; Case No. 17-cv-04067-JST; Master File No. 07-cv-05944-JST

**IPPs' First Motion For Preliminary Approval**

26.    IPPs filed their first motion for preliminary approval of the Settlement Agreement on February 14, 2018. ECF No. 5245. On February 15, 2018, IPPs filed the Addendum. ECF No. 5247. The preliminary approval motion included a proposed notice program, which IPP Counsel had devised in cooperation with The Notice Company, the Court-appointed Claims Administrator.

27.    Financial Recovery Strategies ("FRS"), a third-party claims aggregator, objected to IPPs' preliminary approval motion. ECF No. 5252. FRS complained that claimants that had filed claims after the Court-ordered claims deadline against the Prior Settlements ("Late Claimants"), were being unfairly excluded, and that the plan of distribution for the Mitsubishi Electric Settlement was unfair to Late Claimants because it only permitted them to file claims against the $33,000,000 Mitsubishi Electric Settlement, and not the larger fund available under the Prior Settlements. *Id*. IPPs responded to these and other arguments. *See, e.g.,* ECF Nos. 5255, 5267. Another third-party claims aggregator, Spectrum Settlement Recovery, LLC, then filed a letter brief opposing FRS's request to extend the claims deadline for Late Claimants, ECF No. 5256. IPPs also submitted revised versions of the Detailed Notices (ECF No. 5267) to which FRS also objected. ECF No. 5269. Pursuant to Court Order, IPPs entered mediation with the claims aggregators. ECF No. 5296.

28.    On April 10, 2018, the Ninth Circuit Court of Appeals heard oral argument on objections to the Prior Settlements. The panel members expressed concerns regarding several objectors' claim that certain so-called "repealer" state claims were being released without compensation. Accordingly, IPPs mediated with the objectors to attempt to resolve the issue. Because the resolution of the appeal could have impacted the Mitsubishi Electric Settlement and the notice to class members, IPP Lead Counsel requested that the Court defer ruling on preliminary approval while the mediation played out. ECF No. 5279. Ultimately, on August 28, 2018, the Court administratively terminated IPPs' motion. ECF No. 5326. As the Court

acknowledged, IPPs and Mitsubishi Electric advised the Court that they intended to wait to pursue approval of their settlement until the appeals of the Prior Settlements were resolved.[10]

**IPPs Prepare To Renew Motion For Preliminary Approval In Conjunction With Motion For Approval Of Amendments To Prior Settlements**

29.    In the Fall of 2019, IPPs moved for approval of the amendments to the Prior Settlements. ECF No. 5587. As part of that motion, IPPs argued it was unnecessary to provide full notice to the settlement class members because the Amendments did not adversely affect the rights and interests of class members. *Id*. at 25-30. In case the Court agreed with objectors that full notice was required, however, I decided to prepare to re-file the motion for preliminary approval of the Mitsubishi Electric Settlement so that notice of all settlements could be issued simultaneously.

30.    We could not just re-file the prior motion for preliminary approval because, in the interim, Fed. R. Civ. Pro. 23(e) had been amended,[11] and the Northern District of California had issued its Procedural Guidance for Class Action Settlements.[12] Thus, my firm worked with our co-counsel to modify the prior motion substantially to comply with the new standards. For example, we had to get competing bids from potential settlement administrators, and the language of the Notices had to be modified to comply with the Procedural Guidance. In addition, two named plaintiffs had recently passed away and another withdrew, requiring that IPPs amend the Complaint to substitute new named plaintiffs.

31.    On February 6, 2020, pursuant to a stipulated order, IPPs filed their First Amended Complaint against Mitsubishi Electric, substituting new named plaintiffs for the States of Hawaii, New Mexico, and New Hampshire, and conforming the class definition to that agreed to by IPPs and Mitsubishi Electric in the Settlement Agreement. ECF No. 5679.

---

[10] ECF No. 5558 (Aug. 8, 2019 CMC Transcript) at 37:17-38:10.

[11] Fed. R. Civ. Pro. 23(e), amended Dec. 1, 2018.

[12] Procedural Guidance for Class Action Settlements | United States District Court, Northern District of California (uscourts.gov), published November 1, 2018.

32.     On March 11, 2020, the Court granted IPPs' motion for preliminary approval of the Amendments to the Prior Settlements. ECF No. 5695. The Court agreed with IPPs that full notice of the amended settlements was not necessary and approved IPPs' limited notice program. *Id*. at 18-19. However, this Order was immediately appealed. ECF Nos. 5709, 5711. Thus, IPP Counsel and counsel for Mitsubishi Electric subsequently determined that it was better to defer the motion for preliminary approval until after the Prior Settlements became final because any changes to the Prior Settlements could have impacted the Mitsubishi Electric Settlement. Due to the continuing unmeritorious objections and appeals by objectors to the Prior Settlements, those settlements did not become final until June 13, 2022 when the United States Supreme Court denied objectors' petition for certiorari. ECF No. 6023.

**The Court Grants IPPs' Second Motion Preliminary Approval And IPPs Publish Notice Of The Mitsubishi Electric Notice To Class Members**

33.     IPPs were finally able to renew their motion for preliminary approval of the Mitsubishi Electric Settlement on August 18, 2022. ECF No. 6053. The motion was unopposed, and the Court granted it on October 31, 2022. ECF No. 6104 (Preliminary Approval Order). The Court set the Fairness Hearing for June 1, 2023 at 2:00 p.m. *Id*. at ¶ 21. On November 21, 2022, pursuant to stipulation of the parties, the Court extended the deadline to provide notice to the class by forty-five (45) days to February 13, 2023. ECF No. 6114.

34.     In accordance with the Court's Orders, The Notice Company, the Court-appointed Settlement and Claims Administrator, published the Detailed and Summary Notices (the "Notices") online and in various publications throughout the United States. I am informed and believe that The Notice Company also directly mailed and emailed the Notices to over 14 million unique addressees. The Notices advised Class Members of the material terms of the proposed settlement, including IPP Counsel's intent to apply to the Court for an award of attorneys' up to one-third of the Mitsubishi Electric Settlement Fund ($11,000,000), plus reimbursement of expenses and incentive awards for the class representatives. *See* Detailed Notice of Settlement (crtclaims.com).

**The Result Achieved For The Class**

35.     Based on my experience in this litigation and others, and my in-depth knowledge of the claims and defenses of the parties herein, I believe the total recovery for indirect purchasers to date of $580,750,000 is an excellent result for the class. Recent litigation on behalf of indirect purchasers of Lithium-Ion Batteries, Optical Disk Drives, and Capacitors garnered $113,450,000, $205,000,000, and $80,790,000, respectively.[13] In *Batteries,* Judge Gonzales-Rogers concluded that settlements on behalf of indirect purchasers amounting to 11.7 percent of single damages were an "excellent" result for the class.[14]

36.     The indirect *LCD* case is one of the rare cases to recover more than this case. However, the LCD conspiracy started more recently (*i.e.*, 2001) and fewer producers had exited the industry than in this case. The *LCD* conspiracy was therefore easier to prove because evidence and witnesses were available. In addition, most of the *LCD* defendants had pled guilty to Sherman Act violations and admitted that their conduct had an impact in the United States, leading to criminal fines totaling $894 million.

37.     In this case, the conspiracy period started over 25 years ago (*i.e.*, 1995), and many of the alleged participants were bankrupt or no longer existed—including one of the main participants in the conspiracy with the largest market share—LG.Philips Displays.[15] Two other major participants in the conspiracy—Orion Electric Company and Thai CRT Company, Ltd.—also declared bankruptcy before the litigation began and were not able to be served. This meant

---

[13] *See In re Lithium Ion Batteries Antitrust Litig.*, 2019 WL 3856413, at *19 (N.D. Cal. Aug. 16, 2019); *In re Optical Disk Drive Products Antitrust Litig.,* 3:10-md-02143-RS (N.D. Cal.), ECF No. 2889 at 13; *In re Capacitors Antitrust Litig.*, No. 14-cv-3264-JD (N.D. Cal.), ECF No. 2973 at 2.

[14] *In re Lithium Ion Batteries Antitrust Litig.*, 2019 U.S. Dist. LEXIS 139327, at *53 (noting that ". . . [t]he action was risky," and that Class Counsel had litigated it on a contingency basis for 6.5 years). Notably, IPPs in this case shouldered these risks and costs on a contingency basis for 15 years.

[15] LG.Philips Displays (often referred to as "LPD"), a Netherlands-based joint venture formed in June 2001 by defendants LG Electronics and Koninklijke Philips Electronics, was the largest manufacturer of CRTs in the world before it entered bankruptcy in January 2006.

1  not only that IPPs could not collect damages from these entities, but also that most of their

2  documents, data, and witnesses regarding the conspiracy were gone and could not be used against

3  the remaining Defendants. Even for the remaining Defendants, employees had moved on, retired,

4  or could not remember relevant facts, and many had colorable withdrawal defenses because they

5  had exited the CRT business during the class period.[16] In addition, only one defendant pled guilty

6  to fixing prices of one type of CRT sold to certain customers, and the DOJ's single criminal fine

7  of $32 million amounted to less than 3.5 percent of the fines assessed against the LCD

8  defendants.

9        38.    I also believe that the $33 million, all-cash settlement with Mitsubishi Electric is

10  an excellent recovery. Mitsubishi Electric manufactured Color Picture Tubes ("CPTs") only for

11  the first four years of the alleged conspiracy, stopping in 1998. In addition, Mitsubishi Electric's

12  annual CDT market share was usually less than 3% and always less than 5% during the class

13  period.[17] As explained in the preliminary approval motion, IPPs' expert's single damages

14  estimate of $2.78 billion must be adjusted to $3.36 billion to account for the nine additional states

15  included in the Mitsubishi Electric Settlement Class. However, I believe Mitsubishi Electric

16  would have strongly contested IPPs' damages estimate.

17        39.    The other Defendants' experts opined that indirect purchasers suffered little or no

18  damages as a result of the alleged CRT conspiracy. They maintained that the alleged conspiracy

19  was ineffective and unsuccessful, and that IPPs could not "link" any allegedly agreed-upon CRT

20  price increases to allegedly increased prices of CRT Products purchased by class members. One

21  defense expert estimated the total class damages to be approximately $61 million. Other defense

22  experts maintained that the total class damages were zero. Indeed, the Irico Defendants recently

23  filed a motion to exclude IPPs' expert's damages report. ECF No. 6149.

---

[16] Multiple defendants moved for summary judgment on the grounds that they withdrew from the conspiracy and that the statutes of limitations had expired. *See, e.g.*, ECF Nos. 3027 (Philips), 2995 (Toshiba), 2972 (Hitachi), 3043 (LG Electronics).

[17] *See* ECF No. 4966-4 at 22–23 ("worldwide CRT production by Mitsubishi Electric from 2000 to 2006 of 0–2%").

40.    Five percent of this $3.36 billion single damages estimate is $168 million. Thus, IPPs' settlement with Mitsubishi Electric is approximately 19.6% of the single damages attributable to Mitsubishi Electric.

41.    The Settlement Amount is also 5.6% of the total $580,750,000 Settlement Fund, which is more than Mitsubishi Electric's less-than 5% market share, and it is consistent with the amounts obtained in previously approved settlements with similarly-situated Japanese defendants. Mitsubishi Electric had a lesser role in the conspiracy than other Japanese defendants and a smaller market share. In addition, Mitsubishi Electric has other colorable defenses, discussed in detail below.

**The Risks And Complexities Of The Case**

42.    The risks and complexities faced by IPP Counsel in litigating this case on a contingency basis for the past 15 years have been significant. This case has required IPP Counsel to confront many novel and/or difficult legal and factual issues that have made this case exceptionally risky, complex, and expensive to prosecute.

43.    Among other things, defendants asserted: that the alleged conspiracy, to the extent it existed, was limited to CDTs in Asia; that it caused little or no harm to Plaintiffs; that the FTAIA barred some or all of Plaintiffs' damages; that Plaintiffs lacked antitrust standing; and that some or all of the defendants either did not participate in the alleged conspiracy or withdrew from it. Due to defendants' enormous resources and the skill and experience of their counsel, they aggressively litigated these and other issues at the motion to dismiss stage, at class certification, and again at summary judgment. In addition, the complexity of the case was increased because it involved indirect purchaser claims under the laws of 30 States and the District of Columbia, brought by 40 class representatives and 50 law firms located throughout the United States; and it required IPP Counsel to coordinate the prosecution of the litigation with three other groups of Plaintiffs, which sometimes held interests adverse to IPPs.[18]

---

[18] *See further* First Alioto Fee Decl. ¶¶ 6-7, 81-85, 126.

44.     Notably, the risk, delay, and expense continued for IPPs for *another* two years after the Court's July 13, 2020 Second Fee Order. Objectors to the Prior Settlements pursued their objections to the settlements and IPPs' fee award all the way to the United States Supreme Court, which finally put an end to their appeals on June 13, 2022 when it denied certiorari. *See* ECF No. 6023. IPP Counsel finally received their first fee award in October 2022—15 years after the case began—following this Court's September 27, 2022 Order regarding the allocation of the fee award. ECF No. 6078.

45.     IPPs also faced a substantial risk that the jury would find Mitsubishi Electric did not participate in the alleged conspiracy. I believe Mitsubishi Electric would have argued at trial that it did not attend a single "glass meeting"; that it ceased manufacture of CPTs in 1998 and CDTs in 2004; that most of the CDTs it made used a different technology and were marketed to different customers than those of the other alleged conspirators; and that its market share was very small—substantially less than 5%—and it was therefore always a minor player in the market with little incentive to join the conspiracy. The Court's prior ruling precluding use of Samsung SDI's litigation statements against Mitsubishi Electric would also have made IPPs' case more difficult to prove. ECF No. 4982.

46.     I believe Mitsubishi Electric would also likely have asserted that even if it had participated in the conspiracy, it withdrew when it stopped manufacturing CRTs in 2004.[19] It would also have contested IPPs' evidence of antitrust standing, pass-through of the overcharge to indirect purchasers, and class certification. *See, e.g.,* ECF Nos. 3050, 3585 (motions filed by the other Defendants). Even assuming a favorable jury verdict at trial, IPPs could prevail on liability and still obtain no net recovery given the large settlement offset that would be applied as a result of the Prior Settlements. While IPPs remain confident in the strength of the evidence supporting their claims, a successful jury verdict remained a risky proposition.

---

[19] *See* ECF No. 4786 (granting Philips' summary judgment motion on withdrawal grounds).

47.     In *LCD*, for example, the jury awarded the direct purchaser class plaintiffs $87 million in damages against Toshiba, but they recovered nothing because the award was offset by their $443 million obtained in settlements. Likewise, Best Buy recovered nothing at trial against Toshiba and Hannstar. The jury found that Toshiba did not participate in the conspiracy and awarded only $7.5 million against Hannstar. Once Best Buy's settlements with the other defendants in *LCD* had been offset, Hannstar owed nothing to Best Buy. Likewise here, if IPPs had gone to trial against Mitsubishi Electric, there would have been an offset of $547,750,000.

48.     My co-counsel and I have been litigating this case for more than 15 years, incurring a total of 186,540.8 hours, amounting to $83,877,648.50 in lodestar, and $10,359,530.30 in expenses (as further detailed below and in the accompanying IPP Counsel Fee Declarations) on behalf of the class, and taking the chance that they might not be compensated at all. Due to the complexity of this case and the amount of work involved, I and members of my firm have been working full time on this case for years and have been unable to take on other work. All of this time and expense was performed on a wholly contingent basis with the risk of nonpayment continuing until June 13, 2022, when objectors' petition for certiorari was denied. Indeed, IPP Counsel waited 15 years (until October 2022) to receive their first fee award and reimbursement of expenses in this case.

49.     My firm continues to work on this case because there is still much to be done to administer the Prior Settlements and the Mitsubishi Electric Settlement and complete the distribution of funds to class members. My firm and several other IPP firms are also continuing to litigate the case against the Irico Defendants, also on a contingency basis.

**IPP COUNSELS' FEE DECLARATIONS**

50.     Lead Counsel is filing along with this Motion a Compendium of IPP Firm Declarations regarding their work in this case, their lodestar, and the expenses for which they are seeking reimbursement.

51.     Plaintiffs submitted 183,000 hours in connection with their first fee application, and the Court approved an adjusted, current rate lodestar of $81,067,569. ECF No. 5786. IPP Counsel's current rate lodestar submitted to the Court was $90,075,076.50. *Id*. at 23. The Court

17

1    adopted the Special Master's 10 percent across-the-board reduction to the lodestar and reduced

2    the lodestar to $81,067,569. *Id.*

3        52.    IPP Counsel now submit an additional 3,540.8 hours for time incurred prosecuting

4    the case against Mitsubishi Electric after June 2015 (the cut off for IPPs' first fee motion).[20] This

5    time amounts to a lodestar of $2,471,753.50 at historical rates, and $2,808,649.50 at current rates.

6        53.    As explained in Plaintiffs' first fee motion and above, this time was reasonable

7    and necessary for the prosecution of this action. I employed several measures to ensure that the

8    lodestar figure is not improperly inflated. For example, I assigned work among IPP Counsel to

9    avoid duplication; I instructed counsel to keep contemporaneous time records; and, where

10   possible, I instructed IPP firms to work with the DPPs and DAPs to avoid duplication of effort.

11       54.    The total current rate lodestar of all IPP Counsel for the entire litigation, minus the

12   lodestars of three firms that are no longer involved in the prosecution of this case,[21] is

13   $81,021,971.50. This lodestar was calculated as follows: prior Court-approved, current rate

14   lodestar ($81,067,569) plus new current rate lodestar ($2,808,649.50), minus the prior, current

15   rate lodestar of three firms ($2,854,247), equals $81,021,971.50.

16       55.    IPPs' proposed $11,000,000 fee award, plus the $129,606,250 already awarded,

17   would result in a total fee of $140,606,250. This amount constitutes 24.2% of the $580,750,000

18   total settlement fund, and an overall multiplier of 1.735 on IPP Counsels' current rate lodestar for

19   the entire litigation.

20       56.    My firm and certain other IPP firms have performed substantial work in this case

21   that is not captured in this fee motion. We have **not** included in the lodestar submitted here the

22   time spent litigating the objections lodged to the Prior Settlements and the resulting appeals, or

23   the negotiation of the amendments to the Prior Settlements and subsequent briefing or appeals.

24   Nor does the lodestar include time spent litigating against the Irico Defendants, or any of the time

[20] *See* Compendium of IPP Counsel Fee Declarations, filed herewith.

[21] Cooper & Kirkham, P.C., the Law Offices of Francis O. Scarpulla, and the Law Office of Theresa Moore.

18

spent administering the Prior Settlements, moving for distribution of the settlement funds, or distributing the funds to claimants. My firm and the IPP firms have spent thousands of hours amounting to millions of dollars in lodestar on these matters over the last seven years.

**EXPENSES**

57.     IPP Counsel previously incurred expenses totaling $7,670,525.57 ($2,405,000 from the Litigation Expense Fund, plus $4,495,878.02 from the Future Expense Fund, plus $769,647.55 individual unreimbursed expenses). The Court approved the $4,495,878.02 expenditure from the Future Expense Fund and the reimbursement of IPP Counsel's out-of-pocket expenses totaling $3,174,647.55 in July 2016.[22]  The Court reaffirmed these findings in July 2020.[23] After the United States Supreme Court denied certiorari on June 13, 2022, the Court ordered the immediate distribution to IPP Counsel of their $3,174,647.55 in expenses.[24]

58.     In connection with IPPs' motion to distribute the settlement funds to class members, the Court approved a further $2,330,710.87 expended from the Future Expense Fund and granted IPP Counsel's request for reimbursement of additional out-of-pocket expenses in the amount of $345,171.76.[25]

59.     IPP Counsel have separately incurred an additional $13,122.10 in reasonable and necessary expenses in connection with the prosecution of the case against Mitsubishi Electric for which they now also seek reimbursement. These expenses include expert fees, travel, photocopies, overnight mail, computer research, and filing fees. These expenses are supported by each firm's separate declaration in support of fees and  expenses, filed herewith.[26]

---

[22] First Fee Order, at *19.

[23] Second Fee Order at 25.

[24] ECF No. 6046 (Order dated Aug. 9, 2022).

[25] ECF No. 6040 (Order Granting Motion for Order Authorizing Distribution of Settlement Funds).

[26] IPP Counsel Fee Declarations, Ex. 3.

60.    None of these expenditures has been included in IPP Counsels' previous requests for reimbursement of expenses. All of the expenses are of a type routinely charged to paying clients in a case of this size, and they were necessary to the litigation of this action.

## **INCENTIVE AWARDS**

61.    21 of the 34 class representatives have already been granted a $15,000 incentive award, and one has been granted a $5,000 incentive award in connection with the Prior Settlements. In connection with the Mitsubishi Electric litigation and settlement, they and the 13 new class representatives have reviewed and approved the original and amended complaints, searched for relevant documents, reviewed and approved the settlement agreement and amendments thereto, stayed in regular contact with their lawyers, and remained apprised of the material developments in the litigation. The class representatives have not, however, had to engage in formal discovery because IPPs settled with Mitsubishi Electric before formal discovery commenced. Accordingly, I believe that modest incentive payments of $2,000 for each class representative named in IPPs' First Amended Complaint against Mitsubishi Electric are appropriate.

I declare under penalty of perjury that the foregoing is true and correct.  Executed this 10th day of March 2023 at San Francisco, California.


                                            /s/ Mario N. Alioto
                                              Mario N. Alioto

                                            ***Lead Counsel for the Indirect Purchaser Plaintiffs***