Mario N. Alioto (56433)
Lauren C. Capurro (241151)
TRUMP, ALIOTO, TRUMP & PRESCOTT LLP
2001 Union Street, Suite 482
San Francisco, CA 94123
Telephone: 415-563-7200
Facsimile: 415- 346-0679
Email: malioto@tatp.com
laurenrussell@tatp.com

***Lead Counsel for the***
***Indirect Purchaser Plaintiffs***

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Master File No. 4:07-cv-05944-JST<br>Case No. 4:17-cv-04067-JST<br><br>MDL No. 1917 |
| This Document Relates to:<br><br>*Luscher, et al. v. Mitsubishi Electric Corp.,*<br>No. 4:17-cv-04067-JST | **INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT WITH DEFENDANT MITSUBISHI ELECTRIC CORPORATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Hearing Date: June 1, 2023<br>Time: 2:00 p.m.<br>Courtroom: 5, 2nd Floor (via Zoom)<br>Judge:  Honorable Jon S. Tigar |

# TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION.................................................................................i

STATEMENT OF ISSUE TO BE DECIDED....................................................................iii

MEMORANDUM OF POINTS AND AUTHORITIES.............................................................1

I.      INTRODUCTION .................................................................................................1

II.     FACTUAL AND PROCEDURAL HISTORY .......................................................2

    A.  Factual History..................................................................................................2

    B.  The Settlement Agreement ................................................................................3

III.    ARGUMENT ........................................................................................................4

    A.  The Class Action Settlement Approval Procedure.............................................4

    B.  Legal Standard For Final Approval of Class Action Settlements.......................4

    C.  The Notice Program Comports With Due Process...............................................6

    D.  The Court Should Finally Certify The Settlement Class......................................8

        1.      The Settlement Class Satisfies The Requirements of Rule 23(a)....................8

        2.      The Settlement Class Satisfies The Requirements of Rule 23(b)(3)..............10

        3.      The Court Should Appoint Trump, Alioto, Trump & Prescott, LLP As
        Settlement Class Counsel For Final Approval................................................11

    E.  The Court Should Grant Final Approval of the Proposed Settlement.............................12

        1.      The Class Has Been Adequately Represented...................................................12

        2.      The Proposed Settlement Is The Product of Arm's Length Negotiations.......13

        3.      The Proposed Settlement Provides Substantial Relief For The Class............14

            a.      The Costs, Risks, And Delay of Trial And Appeal Were
            Significant..................................................................................15

            b.      The Plan of Distribution Is Fair, Adequate And Reasonable..............17

|  | | c. | IPP Counsel's Unopposed Attorneys' Fee Request is Reasonable.....18 |
|  | | d. | Other Related Agreements....................................................................22 |
|  | 4. | | The Settlement Treats Class Members Equitably...........................................22 |
|  | 5. | | There Are No Objections To The Settlement Or The Attorney Fee Request.........................................................................................................23 |
|  | 6. | | The Settlement Satisfies This District's Procedural Guidance.......................23 |
|  | | a. | The Number of Undeliverable Class Notices And Claim Packets.....24 |
|  | | b. | The Number Of Valid Claims To Date.............................................24 |
|  | | c. | The Number Of Opt Outs..................................................................24 |
|  | | d. | The Number Of Objections Or Comments On the Settlement...........25 |
| IV. | CONCLUSION | | ....................................................................................................25 |

INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF
CLASS ACTION SETTLEMENT WITH MITSUBISHI ELECTRIC CORPORATION
Case No. 17-cv-04067-JST; Master File No. 07-cv-05944-JST

# TABLE OF AUTHORITIES

**Federal Cases**                                                                      **Page(s)**

*Amchem Prods. v. Windsor*,
   521 U.S. 591 (1997) ....................................................... 8, 10, 11

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
   568 U.S. 455 (2013) ............................................................. 10

*Animal Sci. Prods. v. China Minmetals Corp.*,
   654 F.3d 462 (3d Cir. 2011) ..................................................... 17

*In re AT&T Mobility Wireless Data Servs. Sales Litig.*,
   270 F.R.D. 330 (N.D. Ill. 2010) ................................................. 18

*Bellinghausen v. Tractor Supply Co.*,
   303 F.R.D. 611 (N.D. Cal. 2014) .................................................. 9

*In re Bluetooth Headset Prods. Liab. Litig.*,
   654 F. 3d 935 (9th Cir. 2011) .................................................... 5

*Castillo v. Bank of Am., NA*,
   980 F.3d 723 (9th Cir. 2020) .................................................... 10

*In re Catfish Antitrust Litig.*,
   826 F. Supp. 1019 (N.D. Miss. 1993) ............................................. 9

*In re Cathode Ray Tube Antitrust Litig.*,
   308 F.R.D. 606 (N.D. Cal. 2015) ................................................. 9

*In re Cathode Ray Tube Antitrust Litig.*,
   No. 07-cv-5944-JST, 2013 WL 5429718 (N.D. Cal. June 20, 2013) ................... 11

*In re Cathode Ray Tube Antitrust Litig.*,
   No. 07-cv-5944-JST, 2013 WL 5391159 (N.D. Cal. Sept. 24, 2013) ............. 8, 10, 11

*In re Cathode Ray Tube Antitrust Litig.*,
   No. 07-cv-5944-JST, 2016 WL 3648478 (N.D. Cal. July 7, 2016) .............. 11, 15, 17

*Churchill Vill., L.L.C. v. GE*,
   361 F.3d 566 (9th Cir. 2004) ................................................ 4, 6, 23

*Ellis v. Costco Wholesale Corp.*,
   657 F.3d 970 (9th Cir. 2011) .................................................... 9

*Espinosa v. Ahearn (In re Hyundai & Kia Fuel Econ. Litig.)* ,
   926 F.3d 539 (9th Cir. 2019) (en banc) .................................... 6, 8, 19

*In re Flash Memory Antitrust Litig.*,
   No. C 07-0086 SBA, 2010 WL 2332081 (N.D. Cal. June 9, 2010) ................................ 16

*In re Graphics Processing Units Antitrust Litig.*,
   253 F.R.D. 478 (N.D. Cal. 2008) ................................................................................ 16

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ................................................................ 4, 8, 10

*Hefler v. Wells Fargo & Co.*,
   No. 16-cv-05479-JST, 2018 WL 4207245 (N.D. Cal. Sept. 4, 2018) .........................17-18

*Hefler v. Wells Fargo & Co.*,
   No. 16-cv-05479-JST, 2018 WL 6619983 (N.D. Cal. Dec. 18, 2018) ..........................13

*In re Lithium Ion Batteries Antitrust Litig.*,
   No. 13-MD-2420 YGR, 2017 WL 1391491 (N.D. Cal. Apr. 12, 2017) ........................16

*In re Lithium Ion Batteries Antitrust Litig.*, No. 4:13-md-02420-YGR (MDL),
   2019 U.S. Dist. LEXIS 139327 (N.D. Cal. Aug. 16, 2019) ........................................16

*Lotes Co. v. Hon Hai Precision Indus. Co.*,
   753 F.3d 395 (2d Cir. 2014) ........................................................................ 16

*Mazza v. Am. Honda Motor Co.*,
   666 F.3d 581 (9th Cir. 2012) ........................................................................ 10

*In re Mego Fin. Corp. Sec. Litig.*,
   213 F. 3d 454 (9th Cir. 2000) ......................................................................... 5

*Minn-Chem, Inc. v. Agrium Inc.*,
   683 F.3d 845 (7th Cir. 2012) ........................................................................ 16

*Motorola Mobility L.L.C. v. AU Optronics Corp.*,
   775 F.3d 816 (7th Cir. 2014) ........................................................................ 16

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
   187 F.R.D. 465 (S.D.N.Y. 1998) ................................................................... 17

*Officers for Just. v. Civil Serv. Com.*,
   688 F.2d 615 (9th Cir. 1982) .......................................................................... 6

*In re Omnivision Techs., Inc.*,
   No. C-04-2297-SC, 2007 WL 4293467 (N.D. Cal. Dec. 6, 2007) ..............................23

*In re Online DVD-Rental Antitrust Litig.*,
   779 F.3d 934 (9th Cir. 2015) ................................................................. 1, 4, 23

*Rodriguez v. W. Publ'g Corp.*,
   563 F.3d 948 (9th Cir. 2009) ........................................................................ 14

v

INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF
CLASS ACTION SETTLEMENT WITH MITSUBISHI ELECTRIC CORPORATION
Case No. 17-cv-04067-JST; Master File No. 07-cv-05944-JST

*Silber v. Mabon*,
   18 F.3d 1449 (9th Cir. 1994) ................................................................................. 6

*In re Tableware Antitrust Litig.*,
   484 F. Supp. 2d 1078 (N.D. Cal. 2007) .................................................................. 6

*Thomas & Thomas Rodmakers, Inc. v. Newport Adhesives & Composites, Inc.*,
   209 F.R.D. 159 (C.D. Cal. 2002) .......................................................................... 11

*Theodore Broomfield v. Craft Brew All., Inc.*,
   No. 17-cv-01027-BLF, 2020 U.S. Dist. LEXIS 74801 (N.D. Cal. Feb. 5, 2020) ........................... 5

*U.S. v. Hsiung*,
   778 F.3d 738 (9th Cir. 2015) ............................................................................... 16

*Viceral v. Mistras Grp., Inc.*,
   2016 WL 5907869, No. 15-cv-02198-EMC (N.D. Cal. Oct. 11, 2016) ......................................... 13

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) ........................................................................................ 9

*Williams v. MGM-Pathe Commc'ns Co.*,
   129 F.3d 1026 (9th Cir. 1997) ............................................................................. 19

**Federal Statutes**

6 U.S.C. § 15 ................................................................................................. 16

**Rules**

Fed. R. Civ. P. 23 ..................................................................................... *passim*

Fed. R. Civ. P. 54 ........................................................................................... i

**Other**

*Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide*
   Fed. Judicial Center (2010) ................................................................................ 6

*Manual for Complex Litigation, 4th ed.*
   (2004) ..................................................................................................... 4

4 Newberg on Class Actions (5th ed. 2015) .................................................................. 4

INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF
CLASS ACTION SETTLEMENT WITH MITSUBISHI ELECTRIC CORPORATION
Case No. 17-cv-04067-JST; Master File No. 07-cv-05944-JST

**NOTICE OF MOTION AND MOTION**

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that, on June 1, 2022 at 2:00 p.m., before the Honorable Jon S. Tigar, United States District Court for the Northern District of California, 1301 Clay Street, Oakland, California, Courtroom 6, 2nd Floor, San Francisco, California, via Zoom, the Indirect Purchaser Plaintiffs ("IPPs") will move the Court, pursuant to Fed. R. Civ. 23 (e), for entry of an Order:

1.  Granting final class certification of the Settlement Class;

2.  Granting final approval of the proposed class action settlement ("Settlement") with Defendant Mitsubishi Electric Corporation ("Mitsubishi Electric");

3.  Granting final approval of IPPs' plan of distribution for the Mitsubishi Electric Settlement ("Plan of Distribution") among the eligible certified settlement class members ("Class Members"); and

4.  Dismissing with prejudice IPPs' claims against Mitsubishi Electric from the IPP MDL actions ("Actions") and entering a Final Judgment, with findings under Fed. R. Civ. P. 54(b) as to Mitsubishi Electric.

The Court should grant this motion because (a) the Settlement is fair, reasonable, and adequate and satisfies Rule 23(e); (b) the Settlement is the product of arm's-length negotiations; (c) the Court-approved notice program satisfies Due Process and Rule 23; and (d) the Plan of Distribution is fair, reasonable, and adequate.

This motion is based on this Notice of Motion and Motion; the supporting Memorandum of Points and Authorities; the accompanying Declarations of Mario N. Alioto and Joseph Fisher in support of the Motion; the Court's October 31, 2022 Order Granting Preliminary Approval of Class Action Settlement with Defendant Mitsubishi Electric Corporation, ECF No. 6104; the [Proposed] Orders submitted herewith; any further papers filed in support of this Motion; the argument of counsel; and all pleadings and records on file in this matter.

1     Pursuant to the Court's Order Granting Preliminary Approval of Class Action Settlement

2  With Defendant Mitsubishi Electric Corporation, ECF No. 6104 ¶12(a), the Fairness Hearing will be

3  conducted via Zoom, with the link available at https://cand.uscourts.gov/judges/tigar-jon-s-jst/.

4
5  Dated:  May 11, 2023                    Respectfully submitted,

6                                          /s/ Mario N. Alioto
                                           Mario N. Alioto (56433)
7                                          malioto@tatp.com
                                           Lauren C. Capurro (241151)
8                                          laurenrussell@tatp.com
                                           TRUMP, ALIOTO, TRUMP & PRESCOTT LLP
9                                          2001 Union Street, Suite 482
                                           San Francisco, CA 94123
10                                         Telephone: 415-563-7200
                                           Facsimile: 415-346-0679
11
12                                         *Lead Counsel for the Indirect Purchaser*
                                           *Plaintiffs*
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF
CLASS ACTION SETTLEMENT WITH MITSUBISHI ELECTRIC CORPORATION
Case No. 17-cv-04067-JST; Master File No. 07-cv-05944-JST

## **STATEMENT OF ISSUE TO BE DECIDED**

Whether this Court should certify the Proposed Settlement Class and grant final approval of the unopposed Settlement with Mitsubishi Electric and the Plan of Distribution given that it is fair, reasonable, and adequate, satisfies all applicable requirements and, after proper notice to the proposed settlement class ("Settlement Class") in accordance with Due Process and Rule 23, no Class Member has objected.

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

**I.    INTRODUCTION**

3       Pursuant to Rule 23(e) and the Court's Order granting preliminary settlement class

4  certification, preliminary approval of the Settlement, and approval of the notice program to potential

5  Class Members (the "Notice Program"), IPPs submit this memorandum in support of final approval

6  of the Settlement with Mitsubishi Electric Corporation ("Mitsubishi Electric"). This memorandum

7  also further supports IPPs' unopposed Second Motion for an Award of Attorneys' Fees,

8  Reimbursement of Expenses, and Incentive Awards for Class Representatives, ECF No. 6177.

9       The Settlement is "fair, reasonable, and adequate," *In re Online DVD-Rental Antitrust Litig.*,

10  779 F.3d 934, 945 (9th Cir. 2015), and represents an excellent recovery for the Settlement Class given

11  the amount of Mitsubishi Electric's CRT commerce involved as compared to the overall commerce at

12  issue in the Action, and the substantial risks and delay IPPs would have faced if this case had

13  proceeded to trial. The Settlement provides for a settlement fund of $33,000,000 ("Settlement Fund").

14  Together with the nine previously-approved settlements (the "Prior Settlements"), the total settlement

15  amount recovered for indirect purchasers of Cathode Ray Tubes ("CRTs") totals Five Hundred Eighty

16  Million Seven Hundred Fifty Thousand ($580,750,000)—one of the largest recoveries ever on behalf

17  of indirect purchasers. Consistent with the Prior Settlements, there are no coupons or vouchers and

18  there will be no reversion or refund to Mitsubishi Electric. No *cy pres* distribution is contemplated.

19       The Settlement also includes a substantial cooperation requirement that will assist IPPs in the

20  prosecution of their claims against the Irico Defendants. The Settlement provides considerable relief

21  for the Settlement Class, whose members would otherwise face uncertainty and additional delay in

22  this Action. Despite the strength of IPPs' claims, the class continues to face litigation risk in the form

23  of summary judgment motions, trial, and potential appeals.

24       In addition to the excellent recovery this Settlement represents, the reaction of the Settlement

25  Class has been overwhelmingly and uniformly positive. Despite the large size of the Settlement Class

26  and a comprehensive, Court-approved Notice Program that included direct notice to all Prior

27

28

INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF
CLASS ACTION SETTLEMENT WITH MITSUBISHI ELECTRIC CORPORATION
Case No. 17-cv-04067-JST; Master File No. 07-cv-05944-JST

Claimants[1]—many of which are sophisticated multinational corporations represented by counsel—not a single Class Member has objected to the Settlement. Likewise, no one has objected to IPPs' requested attorneys' fee award, reimbursement of expenses, or the requested service awards for the Class Representatives.[2] In addition, only one individual class member opted out of the Settlement Class.[3] The lack of objections and opt outs is a strong indication that the Settlement and the requested attorney fee are fair, reasonable, adequate, and warrant final approval.

## II.  FACTUAL AND PROCEDURAL HISTORY

### A.  Factual History

For a complete factual history regarding this Action, IPPs refer to the Court to the Declaration of Mario N. Alioto in Support of IPPs' Second Motion for Attorneys' Fees, Expenses, and Service Awards (ECF No. 6177-1) ¶¶ 2-56 (detailing IPPs' efforts in this Action),[4] submitted in connection with these final approval proceedings. This Action arises from alleged conspiracies by Defendants to fix, raise, maintain, and/or stabilize the price of CRTs sold in the United States. All parties have heavily litigated this Action, as evidenced by the more than 6,000 docket entries. The Settlement is therefore the result of a fair evaluation of the merits of the Action after over fifteen years of extensive litigation and discovery, as well as extensive arm's-length negotiations between IPP Counsel and Mitsubishi Electric's counsel.  *See* Alioto Fee Decl. ¶¶ 18-24.

On October 31, 2022, this Court entered an Order preliminarily certifying the Settlement Class, preliminarily approving the Settlement and the Notice Program, and setting a deadline by which class members could opt-out or object. ECF No. 6104 ("Preliminary Approval Order"). Notice was

---

[1] "Prior Claimants" includes all class members who submitted valid claims in the Prior Settlements.

[2] In accordance with the Preliminary Approval Order, ¶ 22, ECF No. 6104, IPPs' Second Motion for Attorneys' Fees, Reimbursement of Expenses, and Service Awards, ECF No. 6177, was posted on the website, www.CRTClaims.com, on March 10, 2023, the same day it was filed. *See* Decl. of Joseph M. Fisher Re: Mitsubishi Electric Notice Program and Claims Administration ¶ 7 ("Fisher Decl.").

[3] *See* Fisher Decl. ¶ 25, Ex. T.

[4] That Alioto Declaration is referred to herein as the "Alioto Fee Decl." IPPs submit herewith the separate Decl. of Mario N. Alioto ISO Motion For Final Approval of this Settlement ("Alioto Decl.").

thereafter published in accordance with the Preliminary Approval Order. Publication consisted of the following actions:

- Publication on the CRT settlement website, www.CRTClaims.com, which has received more than 1,228,574 unique visitors since February 8, 2023.
- Digital notice via paid advertisements on Google, Facebook, and other popular websites;
- Print publication notice in magazines and newspapers with collective readership of more than 43 million;
- English and Spanish press releases carried by 457 domestic and foreign websites with a total potential audience of approximately 203,600,000;
- Television ads on various popular cable TV networks; and
- Direct mailed/emailed notice to almost thirteen million unique addresses, including all Prior Claimants, many of which are large, corporate end-users of CRTs in the 31 States;

Collectively, these efforts reached an estimated 87% of class members with an estimated frequency of 3.02, which is well-within the acceptable range. *See generally* Fisher Decl. ¶¶ 4-24. Despite the breadth of the Notice Program, only one Class Member has opted out of the Settlement Class (*id.* at Ex. T), and even more significantly, no Class Member has objected.

**B.    The Settlement Agreement**

The terms of the Settlement are described in detail in IPPs' preliminary approval motion (ECF No. 6053) and the Court's Preliminary Approval Order (ECF No. 6104), incorporated herein by reference. To summarize, in exchange for $33,000,000 from Mitsubishi Electric, and substantial cooperation in the further prosecution of the Action against the non-settling Defendants, the Settlement Class releases claims under the laws of 30 States and the District of Columbia for alleged price-fixing of CRTs sold indirectly to IPPs. ECF No. 6053-1 ¶¶ 20-28, Ex. A. The Court found that it "would likely be able to approve the proposed Settlement Agreement under Fed. R. Civ. P. 23(e)(2)" and it would "likely be able to certify the Settlement Class[.]" ECF No. 6104. Thus, it directed IPPs to implement the Notice Program.

3

INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF
CLASS ACTION SETTLEMENT WITH MITSUBISHI ELECTRIC CORPORATION
Case No. 17-cv-04067-JST; Master File No. 07-cv-05944-JST

III.   **ARGUMENT**

A.   **The Class Action Settlement Approval Procedure**

"The claims, issues, or defenses of a certified class may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e). The settlement approval procedure includes three steps: (1) conditional certification of a settlement class and preliminary approval of the proposed settlement; (2) dissemination of notice to affected class members; and (3) a formal fairness or final approval hearing, at which class members may be heard regarding the settlement, and at which counsel may present argument concerning the fairness, adequacy, and reasonableness of the settlements. *See Manual for Complex Litigation, 4th ed.* § 23.63 (2004); 4 Newberg on Class Actions § 13:1 *et seq.* (5th ed. 2015) ("*Newberg*") (describing class action settlement procedure). This procedure safeguards class members' Due Process rights and enables the Court to fulfill its role as the guardian of class interests. *See id.* §§ 13:39–40.

The Court completed the first step in the settlement approval procedure when it granted preliminary approval to the Proposed Settlement. As discussed below, the second step in the process has been completed as well: The Court-approved Notice Program was fully implemented. IPPs now request that the Court take the final steps of holding a formal Fairness Hearing, granting final approval of the Proposed Settlement, and entering Final Judgment.

B.   **Legal Standard For Final Approval Of Class Action Settlements**

Fed. R. Civ. P. 23(e) "requires the district court to determine whether a proposed settlement is fundamentally fair, adequate, and reasonable." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). To assess a settlement proposal, the Ninth Circuit uses a multi-factor balancing test:

> (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and view of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement.

*In re Online DVD*, 779 F.3d at 944 (quoting *Churchill Vill., L.L.C. v. GE*, 361 F.3d 566, 575 (9th Cir. 2004)).

"'Recent amendments to Rule 23 require the district court to consider a similar list of factors before approving a settlement.'" ECF No. 5786 ("2020 Final Approval Order") at 13-14 (quoting *Theodore Broomfield v. Craft Brew All., Inc.*, No. 17-cv-01027-BLF, 2020 U.S. Dist. LEXIS 74801, at *16-17 (N.D. Cal. Feb. 5, 2020) "These factors include whether: (1) 'the class representatives and class counsel have adequately represented the class;' (2) 'the proposal was negotiated at arm's length;' (3) 'the relief provided for the class is adequate;' and (4) 'the proposal treats class members equitably relative to each other.'" *Id.* at 14 (quoting Fed. R. Civ. P. 23(e)(2)). The "specific factors added to Rule 23(e)(2) are not intended to 'displace' any factors currently used by the courts, but instead aim to focus the court and attorneys on 'the core concerns of procedure and substance that should guide the decision whether to approve the proposal.'" *Id.* (quoting Advisory Committee Notes to 2018 Amendments, Fed. R. Civ. P. 23(e)(2)). Thus, in analyzing final approval of the Prior Settlements in its 2020 Final Approval Order, this Court applied the framework set forth in Rule 23 with guidance from the Ninth Circuit's precedent. *Id.*

Settlements occurring before formal class certification "require a higher standard of fairness." *In re Mego Fin. Corp. Sec. Litig.*, 213 F. 3d 454, 458 (9th Cir. 2000). In reviewing such settlements, the court must ensure that "the settlement is not the product of collusion among the negotiating parties." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F. 3d 935, 946-47 (9th Cir. 2011).

Finally, this District's Procedural Guidance for Class Action Settlements ("Procedural Guidance") provides that "[t]he motion for final approval briefing should include information about the number of undeliverable class notices and claim packets, the number of class members who submitted valid claims, the number of class members who opted out, and the number of class members who objected to or commented on the settlement. In addition, the motion for final approval should respond to any objections."[5]

---

[5] [Procedural Guidance for Class Action Settlements | United States District Court, Northern District of California (uscourts.gov)](). The Procedural Guidance also includes requirements for class counsel's attorneys' fee motion and requests for service awards for class representatives. *Id.* In compliance with the Procedural Guidance, IPPs separately filed their motion for attorneys' fees, which included a request for service awards, thirty-five (35) days before the objection deadline. *See* ECF No. 6177.

INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF
CLASS ACTION SETTLEMENT WITH MITSUBISHI ELECTRIC CORPORATION
Case No. 17-cv-04067-JST; Master File No. 07-cv-05944-JST

C.      **The Notice Program Comports With Due Process**

A court must "direct notice [of a proposed class settlement] in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). "The class must be notified of a proposed settlement in a manner that does not systematically leave any group without notice." *Officers for Just. v. Civil Serv. Com.*, 688 F.2d 615, 624 (9th Cir. 1982) (citation omitted). "Notice is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" *Espinosa v. Ahearn* (*In re Hyundai & Kia Fuel Econ. Litig.),* 926 F.3d 539, 567 (9th Cir. 2019) (en banc) (quoting *Churchill Vill., L.L.C. v. GE, 361* F.3d at 575). This standard does not require perfection, but rather reasonable efforts to reach as many class members as possible through either individual or publication means. *See, e.g.,* Federal Judicial Center, *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide* (2010) ("FJC Checklist"), at 3 ("It is reasonable to reach between 70-95%"); *Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994). Publication notice is an acceptable method of providing notice where the identity of specific class members is not reasonably available. *See In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007).

The Court has held that the content of the Detailed Notice and the Summary Notice (the "Notices"), as well as the Notice Program proposed by IPP Counsel, "meet the requirements of Rule 23 and due process, and are the best notice practicable under the circumstances and shall constitute due and sufficient notice to all persons entitled thereto." Preliminary Approval Order, ¶ 13.

The Court-appointed Settlement Administrator, The Notice Company (*id*. ¶ 11), implemented the Notice Plan in accordance with the Preliminary Approval Order. Fisher Decl. ¶ 4. Pursuant to that Order, ¶¶ 12-13, indirect purchasers of CRTs were notified of the Settlement through a carefully designed combination of (1) a case-specific website, www.CRTClaims.com, which has received more than 1,228,574 unique visitors since notice was published on February 8, 2023, (2)  extensive publication notice in print and online, including various popular social media websites and eMagazines, (3) digital banner ads resulting in more than 471,570,000 impressions, (4) an earned media plan, (5) press releases in English and Spanish carried by 457 domestic and foreign websites

with a total potential audience of 203,600,000, (6) television ads on various popular cable TV networks, (7) direct mail notice to 22,243 individual and corporate addresses, including Prior Claimants, and including many of the largest institutional end-users of CRTs, many of whom are represented by counsel who also received direct notice of the Proposed Settlement via ECF, (8) direct email notice to almost thirteen million email addresses, including Prior Claimants, and (9) a case-specific toll-free number. *Id.* ¶¶ 4-24. The notice reached at least 87% of adults aged 35+ who owned TVs or computers during the relevant period with an estimated frequency of 3.02 times. *Id.* ¶¶ 4, 37. This reach and frequency for the notice is well within the acceptable range.

Moreover, the reach and frequency of the notice to Class Members was effectively greater since the calculated numbers ignore so-called "organic" notices that cannot be directly traced to a paid activity. For example, a search result showing the CRT Settlement Website as a paid advertisement would be included in the calculated reach; but a search result showing the CRT Settlement Website as an unpaid search result is not included. Both results effectively reach the viewer, but only the paid search result is counted. Likewise, none of the direct notices by mail or email are included in the reach and frequency numbers because they only measure paid media-outreach programs. Fisher Decl. ¶ 37.

The Notices also advised Class Members that IPPs intended to apply for attorneys' fees in the amount of one-third of the Settlement Fund ($11,000,000), notice costs, litigation expenses, and $2,000 incentive awards for the each of the Class Representatives. *Id.*, Ex. D (Detailed Notice) at 10-11; Alioto Decl. ¶ 2. The Notices further advised how to access the fee petition. *Id.* IPPs posted the fee petition (ECF No. 6177) to the settlement website, www.CRTclaims.com, on March 10, 2023—the same day it was filed, and 35 days before the deadline to object. *Id.* ¶ 3; Fisher Decl. ¶ 7. To date, no Class Member has objected to IPP Counsel's attorney fee request, the reimbursement of $13,122.10 in expenses, or the $2,000 incentive awards for each Class Representative. Alioto Decl. ¶ 4.

The Notice Program comports with due process and was the best notice practicable under the circumstances. Fisher Decl. ¶¶ 35-37.

//

//

1

### D.    The Court Should Finally Certify The Settlement Class

2        In its Preliminary Approval Order, the Court analyzed the requirements for class certification

3   of a Settlement Class under Fed. R. Civ. P. 23(a) and (b) and found that "it is likely to be able to certify

4   the Settlement Class." Preliminary Approval Order, ¶¶ 2-9. The grounds for certification articulated

5   in the Preliminary Approval Order are unchanged, and final certification is warranted. In 2020, the

6   Court finally approved a similarly defined Settlement Class for IPPs' Prior Settlements (ECF No.

7   5786), and in 2013, certified 22 state classes which are defined similarly to the Settlement Class

8   proposed here. *See In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. 07-cv-5944-JST, 2013 WL

9   5391159 (N.D. Cal. Sept. 24, 2013).

10        The Court may certify a settlement class where plaintiffs demonstrate that the proposed class

11   and proposed class representatives meet the four prerequisites listed in Fed. R. Civ. P. 23(a)—

12   numerosity, commonality, typicality, and adequacy of representation—and one of the three

13   requirements of Rule 23(b). *Hanlon*, 150 F.3d at 1019. Class certification under Rule 23(b)(3) requires

14   a showing that "questions of law and fact common to the members of the class predominate over any

15   questions affecting only individual members, and that a class action is superior to other available

16   methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). In

17   certifying a settlement class, the Court is not required to determine whether the action, if tried, would

18   present intractable management problems, "for the proposal is that there be no trial." *Amchem Prods.*

19   *v. Windsor*, 521 U.S. 591, 620 (1997). *See also In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d at

20   556 (instructing that "[t]he criteria for class certification are applied differently in litigation and

21   settlement classes.").

22        ### 1.    The Settlement Class Satisfies The Requirements Of Rule 23(a)

23        The requirements of Fed. R. Civ. P. 23(a), which this Court extensively examined at

24   preliminary approval, are satisfied here.[6] *First*, it is undisputed that the members of the Settlement

25

26

27   ───────────────
     [6] IPPs' motion for preliminary approval contains a detailed discussion of the requirements of Rule
28   23(a) (ECF No. 6053), which IPPs incorporate herein by reference.

INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF
CLASS ACTION SETTLEMENT WITH MITSUBISHI ELECTRIC CORPORATION
Case No. 17-cv-04067-JST; Master File No. 07-cv-05944-JST

Class number in the millions,[7] making joinder impracticable.[8] *Second*, the claims of the proposed Settlement Class are common, as they "depend upon a common contention . . . of such a nature that it is capable of classwide resolution."[9] Here, as this Court has found, a central, common, question underlying each of IPPs' claims in this case is "whether Mitsubishi Electric violated the antitrust and/or various other laws of the [31] states . . . ."[10] *Third*, the claims of the class representatives are "typical of the claims . . . of the class." Rule 23(a)(3). The typicality requirement is easily satisfied where, as here, "it is alleged that the defendants engaged in a common [price-fixing] scheme relative to all members of the class."[11] The Class Representatives have no interests that conflict with the Settlement Class and have a common interest in obtaining compensation for a shared injury.[12]

*Finally*, the Named Plaintiffs have fairly and adequately represented the Settlement Class and should be confirmed as Settlement Class Representatives. Fed. R. Civ. P. 23(a)(4). A representative plaintiff is an adequate representative of the class if he or she: (1) does not have interests antagonistic to or in conflict with the interests of the class; and (2) is represented by qualified counsel who will vigorously prosecute the class's interests.[13] Here, the interests of Named Plaintiffs and Class Members are aligned because (a) they all claim similar injury in the form of higher CRT Product prices due to

---

[7] *See* ECF No. 5695 at 8 (adopting prior findings that "millions of people in the United States purchased CRT products during the class period.").

[8] *See Bellinghausen v. Tractor Supply Co.*, 303 F.R.D. 611, 616 (N.D. Cal. 2014) (where "general knowledge and common sense" indicate a large class, "numerosity is satisfied.").

[9] *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011); Fed. R. Civ. P. 23(a)(2).

[10] ECF No. 6104 ¶ 5; *see also* ECF No. 4351 at 18 ("there are undeniably questions of law and fact common to the Class, including whether the Defendants engaged in a price-fixing conspiracy that injured Plaintiffs when they paid more for CRT Products than they would have absent the alleged price-fixing conspiracy."); ECF No. 5695 at 8 (same).

[11] *In re Cathode Ray Tube Antitrust Litig.*, 308 F.R.D. 606, 613 (N.D. Cal. 2015) (quoting *In re Catfish Antitrust Litig.*, 826 F. Supp. 1019, 1035 (N.D. Miss. 1993))

[12] *See* ECF No. 5695 at 9-10 (granting preliminary approval of Prior Settlements and adopting prior finding that "the claims of the representative parties are typical of the claims of the class . . . because they all indirectly purchased CRT products at supra-competitive levels as a result of the alleged price-fixing conspiracy during the relevant time period.").

[13] *Hanlon*, 150 F.3d at 1020; *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011).

the alleged conspiracy, and (b) they each seek the same relief as the class members in their state under their respective state statutes. By proving their own claims, representative Plaintiffs would necessarily prove the claims of their fellow Class Members. The Named Plaintiffs understand the allegations in this Action and have reviewed pleadings, responded to discovery, and produced the documents requested. The majority of them have been actively involved in the Action for more than fifteen years,[14] and have previously been found to be adequate representatives of their respective state classes.[15] The thirteen new Class Representatives have likewise been found to be adequate representatives. ECF No. 6104, ¶ 7. Nothing has changed in the interim to alter these findings.

In sum, the Settlement Class satisfies the requirements of Rule 23(a).

### 2.     The Settlement Class Satisfies The Requirements Of Rule 23(b)(3)

"Under Rule 23(b)(3), a plaintiff must demonstrate the superiority of maintaining a class action and show 'that the questions of law or fact common to class members predominate over any questions affecting only individual members.'" *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 596 (9th Cir. 2012) (quoting Fed. R. Civ. P. 23(b)(3)). "[T]he focus of the predominance inquiry" is whether "a proposed class is 'sufficiently cohesive to warrant adjudication by representation.'" *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds, 56*8 U.S. 455, 469 (2013) (quoting Amch*em Prods. v. Windsor, 52*1 U.S. 591, 623 (1997)). "But the rule 'does not require a plaintiff seeking class certification to prove that each element of their claim is susceptible to classwide proof,' so long as one or more common questions predominate." *Castillo v. Bank of Am., NA*, 980 F.3d 723, 730 (9th Cir. 2020) (citing *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 469 (2013)). As this Court previously noted, "in price-fixing cases, such as this, 'courts repeatedly have held that the existence of the conspiracy is the predominant issue and warrants certification even when significant individual issues are present.'"

---

[14] ECF No. 6053-1, ¶¶ 57-59 (Alioto Declaration ISO Preliminary Approval, describing how 21 of the 34 class representatives have been involved in this MDL since inception and were appointed as representatives of the litigated class and settlement class for the Prior Settlements).

[15] *See In re CRT*, 2013 WL 5391159, at *3 (concluding that the named plaintiffs were adequate class representatives); ECF No. 5695 at 10-11 (Preliminary Approval Order for Prior Settlements finding named plaintiffs are adequate class representatives); ECF No. 6104, ¶ 7 (same).

INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF
CLASS ACTION SETTLEMENT WITH MITSUBISHI ELECTRIC CORPORATION
Case No. 17-cv-04067-JST; Master File No. 07-cv-05944-JST

ECF No. 5695 at 8 (quoting *Thomas & Thomas Rodmakers, Inc. v. Newport Adhesives & Composites, Inc.*, 209 F.R.D. 159, 167 (C.D. Cal. 2002)); *see also Amchem Prods.*, 521 U.S. at 625 (predominance under Rule 23(b)(3) is "readily met" in antitrust cases).

Resolution of IPPs' claims here depends principally on whether Defendants participated in a price-fixing conspiracy that increased the price of CRT Products. This Court has already found that the predominance requirement of Fed. R. Civ. P. 23(b)(3) was met for an almost identical class during the litigation,[16] an almost identical Settlement Class in connection with the Prior Settlements (ECF No. 5695 at 8), and in its Order preliminarily approving this Proposed Settlement. ECF No. 6104 ¶ 8.

In addition, resolution of IPPs' claims through a class action is unquestionably superior. Litigating every Class Member's claims separately would waste judicial and party resources, given that the vast majority of evidence would be identical.[17] Further, individual Class Members would lack incentive to bring their own cases given that their alleged damages are small relative to the enormous costs necessary to litigation complex antitrust cases. Thus, the requirements of Rule 23(b)(3) are also satisfied here.

### 3. The Court Should Appoint Trump, Alioto, Trump & Prescott, LLP As Settlement Class Counsel For Final Approval

Fed. R. Civ. P. 23(g) separately requires this Court to appoint class counsel to represent the Settlement Class. Considering IPP Lead Counsel's work in this action, its expertise and experience in handling this Action for the past fifteen years, and the resources it has committed to representing the class, it should be appointed as class counsel for the proposed Settlement Class under Rule 23(g)(3) and confirmed under Rule 23(g)(1), as this Court already ordered.[18]

---

[16] *See In re CRT*, 2013 WL 5391159, at *6 (finding common questions predominated and certifying twenty-two statewide classes of indirect purchasers of CRTs).

[17] *See In re Cathode Ray Tube Antitrust Litig.*, No. 07-cv-5944-JST, 2013 WL 5429718, at *23 (N.D. Cal. June 20, 2013).

[18] *See* ECF No. 6104, ¶ 9 (finding that Mario N. Alioto and Trump, Alioto, Trump & Prescott, LLP have protected and will continue to fairly and adequately protect the interests of the Settlement Class."); *In re Cathode Ray Tube Antitrust Litig.*, No. 07-cv-5944-JST, 2016 WL 3648478, at *5 (N.D. Cal. July 7, 2016) ("the entire record of the litigation viewed fairly demonstrates that Class Counsel

### E.     The Court Should Grant Final Approval Of The Proposed Settlement

Under Rule 23(e)(2), the Court "may approve [a class action settlement] only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:

(A)  The class representatives and class counsel have adequately represented the class;

(B)  The proposal was negotiated at arm's length;

(C)  The relief provided for the class is adequate, taking into account:

    i.     The costs, risks, and delay of trial and appeal;

    ii.    The effectiveness of any proposed method of distributing relief to the class, including the method of processing class member claims;

    iii.   The terms of any proposed award of attorneys' fees, including timing of payment; and

    iv.    Any agreement required to be identified under Rule 23(e)(3); and

(D)  The proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). In granting preliminary approval of the Settlement, this Court concluded that these Rule 23(e)(2) factors had been satisfied, and that it would likely be able to approve the Settlement. ECF No. 6104 ¶ 1. No contrary evidence has emerged.

As demonstrated below, all the Rule 23(e)(2) factors favor final approval of the Settlement, which also satisfies the Northern District of California's guidelines. Thus, the Court should approve the Settlement as fair, reasonable, and adequate.

### 1.     The Class Has Been Adequately Represented

Rule 23(e)(2)(A), in conjunction with subsection (B), requires the court to "identify matters that might be described as 'procedural' concerns, looking to the conduct of the litigation and of the negotiations leading up to the proposed settlement." Fed. R. Civ. P. 23(e)(2) Advisory Comm. Notes, Paragraphs (A) and (B) (2018). As an "example, the nature and amount of discovery in this or other

---

managed this case diligently and efficiently for the benefit of the class[,]" and "Class Counsel was superb at coordinating the class effort."); ECF No. 5695 at 10 ("IPP Lead Counsel has "invested considerable time in this case and ha[s] substantial experience with class action litigation.").

1  cases, or the actual outcomes of other cases, may indicate whether counsel negotiating on behalf of

2  the class had an adequate information base." *Id.*

3       Here, as detailed in the preliminary approval motion (ECF No. 6053) and fee motion (ECF No.

4  6177), the class representatives and counsel have vigorously represented the interests of class members

5  for more than fifteen years, including full case development for trial. *See* Alioto Fee Decl. ¶¶ 4-49.[19]

6  Thus, IPPs negotiated the Settlement with detailed knowledge of the factual and legal issues

7  underlying the parties' claims and defenses, and their strengths and weaknesses. *Id.* ¶¶ 35-41.

8       In its July 2020 Final Approval Order (affirmed on appeal), this Court reaffirmed its findings

9  that: (1) "IPPs and Class Counsel have vigorously prosecuted this action . . . through extensive

10 discovery[,] including the "review of millions of documents and the taking of hundreds of depositions,

11 all conducted over eight-plus years"; and (2) IPP Lead Counsel has 'invested considerable time in this

12 case and has substantial experience with class action litigation." ECF No. 5786 at 17. The Court

13 concluded, therefore, that "counsel 'possessed sufficient information to make an informed decision

14 about settlement.'" *Id.* (quoting *Hefler v. Wells Fargo & Co.*, No. 16-cv-05479-JST, 2018 WL

15 6619983, at *6 (N.D. Cal. Dec. 18, 2018)). These findings apply with equal force to the Settlement

16 with Mitsubishi Electric. Thus, the Court should affirm its finding in its Preliminary Approval Order

17 that "[t]he class representatives and counsel have vigorously represented the interests of the Settlement

18 Class." ECF No. 6104 ¶ 1(a).

19           **2.     The Proposed Settlement Is The Product Of Arm's Length Negotiations**

20      Fed. R. Civ. P. 23(e)(2)(B) instructs courts to consider whether "the proposal was negotiated

21 at arm's length."  A class action settlement is entitled to an initial presumption of fairness where it is

22 the result of arm's-length negotiations among experienced counsel. *See, e.g., Viceral v. Mistras Grp.,

23 Inc.*, No. 15-cv-02198-EMC, 2016 WL 5907869, at *8 (N.D. Cal. Oct. 11, 2016). Further, "the

24 involvement of a neutral or court-affiliated mediator or facilitator in those negotiations may bear on

25 whether they were conducted in a manner that would protect and further the class interests." Fed. R.

26

27

28

---

[19] *See also* ECF No. 4071-1 (Alioto Decl. in support of September 23, 2015 attorney fee motion).

1   Civ. P. 23(e)(2) Advisory Comm. Notes, Paragraph (B) (2018).

2       The Settlement with Mitsubishi Electric was reached after months of hard-fought and highly

3   adversarial negotiations, including multiple telephone conferences, an in-person meeting attended by

4   counsel for all parties and representatives of Mitsubishi Electric from the United States and Japan, and

5   an in-person mediation before Judge Corley. A settlement in principle was reached during that

6   mediation and indeed, was the result of the mediator's proposal. Alioto Fee Decl. ¶ 21. Thus, the

7   settlement was not the product of collusion. *See* Final Approval Order (ECF No. 5786) at 18

8   (mediation sessions supervised by a former judge are an indication of arm's length negotiations).

9       Courts should also consider the "treatment of any award of attorney's fees, with respect to both

10  the manner of negotiating the fee award and its terms." R. 23(e). Advisory Comm. Notes, Para. (B)

11  (2018). While the Settlement provides that Mitsubishi Electric will not object to attorneys' fees of up

12  to one-third of the Settlement Fund, there is no agreement on the amount of attorneys' fees Class

13  Counsel will receive. ECF No. 6053-1, Ex. A, ¶ 34.   As in the Prior Settlements, any award of

14  attorneys' fees remains within the discretion of the Court and will be awarded from the common fund.

15  See ECF No. 5786 at 19 ("Although the agreements contain a "clear sailing" provision, the Court finds

16  no cause for concern because Class Counsel's fee will be awarded from the same common fund as the

17  recovery to the class.") (citing *Rodriguez v. W. Publ'g Corp.,* 563 F.3d 948, 961 n.5 (9th Cir. 2009)).

18      Based on the foregoing, this Court concluded that "[t]he Settlement Agreement was negotiated

19  by arm's-length, informed, and non-collusive negotiations between counsel for IPPs and Mitsubishi

20  Electric under the supervision of a Magistrate Judge." ECF No. 6104 ¶ 1(b). No class member has

21  objected to this conclusion and no contrary evidence has emerged.

### 3.    The Proposed Settlement Provides Substantial Relief For The Class

23      Rule 23(e)(2)(C) instructs courts to consider whether "the relief provided for the class is

24  adequate" considering (i) the costs, risks, and delay of trial and appeal; (ii) the proposed distribution

25  plan; (iii) the terms of any proposed award of attorneys' fees; and (iv) any agreement required to be

26  identified under Rule 23(e)(3). As this Court has already concluded, the Proposed Settlement is fair

27  when evaluated against these standards. ECF No. 6104 ¶ 1(c).

28

1

2

###### a.    The Costs, Risks, And Delay Of Trial And Appeal Were Significant

3

The first factor—"the costs, risks, and delay of trial and appeal" (Rule 23(e)(2)(C)(i))—is

4

analogous to the Ninth Circuit's traditional consideration of the risk, expense, complexity, and likely

5

duration of further litigation, while also examining the strength of plaintiffs' case, the risk of

6

maintaining class action status throughout the trial, and the amount offered in settlement. *See In re*

7

*Online DVD-Rental,* 779 F.3d at 944 (listing factors).

8

First, as explained in detail at preliminary approval and in IPPs' fee motion, the $33 million

9

settlement amount is 5.6% of the total $580,750,000 Settlement Fund, which is more than Mitsubishi

10

Electric's market share (less than 5%) and is consistent with the previously-approved IPP settlements

11

with other similarly situated Japanese defendants. Alioto Fee Decl. ¶ 41. Second, based on the damage

12

study by IPPs' expert, Dr. Netz,[20] the damages attributable to Mitsubishi Electric would be

13

approximately $168 million (5.6% of $3.36 billion).[21] Thus, the $33 million settlement is

14

approximately 19.6% of the damages attributable to Mitsubishi Electric. *Id*. ¶¶ 38-40. Such a result

15

represents a reasonable compromise of the parties' positions and is well within the range of possible

16

final approval. *See In re CRT*, 2016 WL 3648478, at *6-7 (finding that 20% of single damages was

17

"without question a good recovery and firmly in line with the recovery in other cases"). Likewise,

18

when combined with the Prior Settlement amounts, the total recovery to date is $580,750,000, which

19

is almost 20% of the $3.36 billion in single damages. When compared to other *indirect* purchaser cases

20

21

22

23

---

[20] IPPs' expert, Dr. Netz, estimated single damages to members of the 22 state classes to be $2.78

24

billion. *Id*. ¶ 36. After adjusting this estimate to account for the nine additional states included in the

25

Proposed Settlement Class, the single damages to class members in the 30 states and the District of Columbia would be $3.36 billion. *Id.* ¶ 37.

26

[21] Mitsubishi Electric would have strongly contested IPPs' damages claims. The other Defendants'

27

experts opined that indirect purchasers suffered little or no damages as a result of the alleged CRT conspiracy. One defense expert estimated the total class damages to be approximately $61 million. Other defense experts maintained that the total class damages were zero. *See* Alioto Fee Decl. ¶ 39.

28

INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF
CLASS ACTION SETTLEMENT WITH MITSUBISHI ELECTRIC CORPORATION
Case No. 17-cv-04067-JST; Master File No. 07-cv-05944-JST

1  (some of which never make it past class certification[22]), this is an excellent result.[23]

2  Third, the risks to IPPs at trial and on appeal would have been significant and support the

3  reasonableness of the Settlement. For example, IPPs faced a substantial risk that the jury would find

4  Mitsubishi Electric did not participate in the alleged conspiracy. Among other things, Mitsubishi

5  Electric would have argued at trial that it did not attend a single "glass meeting"; that it ceased

6  manufacture of CPTs in 1998 and CDTs in 2004; that most of its CDTs used a different technology

7  and were marketed to different customers than those of the other alleged conspirators; and that because

8  its market share was very small—substantially less than 5%— it was therefore always a minor player

9  in the market, with little or no incentive to join the conspiracy. The Court's ruling precluding Samsung

10 SDI's litigation statements against Mitsubishi Electric would also have made IPPs' case more difficult

11 to prove. ECF No. 4982. Alioto Fee Decl. ¶ 45.

12 Mitsubishi Electric would also likely have asserted that even if it had participated in the

13 conspiracy, it withdrew when it stopped manufacturing CRTs in 2004, [24] and that the majority of IPPs'

14 damages are barred by the Foreign Trade Antitrust Improvements Act, 6 U.S.C. § 15 ("FTAIA").[25] It

15 would also have contested IPPs' evidence of antitrust standing, and pass-through of the overcharge to

16

17 _____

18 [22] *See, e.g.,* In re Lithium Ion Batteries Antitrust Litig., No. 13-MD-2420 YGR, 2017 WL 1391491, at
   *1 (N.D. Cal. Apr. 12, 2017) (denying class certification to indirect purchasers of lithium ion batteries

19 in part because they were unable to prove impact (i.e., pass-through of the overcharge) on a class-wide
   basis); *In re Flash Memory Antitrust Litig.*, No. C 07-0086 SBA, 2010 WL 2332081, at *19 (N.D. Cal.

20 June 9, 2010) (same); *In re Graphics Processing Units Antitrust Litig.*, 253 F.R.D. 478, 507 (N.D.
   Cal. 2008) (same).

21 [23] *See In re Lithium Ion Batteries Antitrust Litig.*, No. 4:13-md-02420-YGR (MDL), 2019 U.S. Dist.

22 LEXIS 139327, at *53 (N.D. Cal. Aug. 16, 2019) (finding indirect purchaser settlements amounting
   to 11.7 percent of single damages were an "excellent result" for the class).

23
   [24] *See* ECF No. 4786 (granting Philips' summary judgment motion on withdrawal grounds).
24
   [25] The other Defendants moved for summary judgment on IPPs' claims on FTAIA grounds. *See* ECF
25 Nos. 3006 and 3008. Even though the Court denied these motions in the DAP case, the FTAIA would
   still have been an issue at trial and is frequently an issue on appeal. *See, e.g., Lotes Co. v. Hon Hai*
26 *Precision Indus. Co.,* 753 F.3d 395, 412-13 (2d Cir. 2014); *Animal Sci. Prods. v. China Minmetals*
   *Corp.*, 654 F.3d 462 (3d Cir. 2011); *Minn-Chem, Inc. v. Agrium Inc.*, 683 F.3d 845 (7th Cir. 2012);
27 *Motorola Mobility L.L.C. v. AU Optronics Corp.*, 775 F.3d 816 (7th Cir. 2014); and *U.S. v. Hsiung*,
   778 F.3d 738 (9th Cir. 2015).
28

indirect purchasers.[26] Moreover, IPPs could prevail on liability and still obtain no net recovery given the large settlement offset ($547,750,000) that would be applied as a result of the other settlements.[27] And, any jury award would also have to withstand appellate review. While IPPs remain confident in the strength of the evidence supporting their claims, a successful jury verdict remained a risky proposition. *See In re NASDAQ Mkt.-Makers Antitrust Litig.*, 187 F.R.D. 465, 475-76 (S.D.N.Y. 1998) ("[T]he history of antitrust litigation is replete with cases in which antitrust plaintiffs succeeded at trial on liability, but recovered no damages, or only negligible damages, at trial, or on appeal.").

Finally, even if IPPs were to win at every subsequent stage, continued litigation would delay recovery for years, in a case where the damage period already extends back twenty-five years. Settlement eliminates the risk of litigation, providing substantial and certain relief to the Settlement Class now. *AT&T Mobility Wireless Data Servs. Sales Litig., 27*0 F.R.D. 330, 347 (N.D. Ill. 2010) ("[A] future victory is not as valuable as a present victory"). In sum, the all-cash recovery of $33,000,000 is a substantial result that avoids the meaningful risks IPPs faced at trial and on appeal.

### b.    The Plan Of Distribution Is Fair, Adequate And Reasonable

Rule 23(e)(2)(C) also instructs courts to take into account the "effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims." "Approval of a plan of allocation of settlement proceeds in a class action . . . is governed by the same standards of review applicable to approval of the settlement as a whole: the plan must be fair, reasonable and adequate." *Hefler v. Wells Fargo & Co., No.* 16-cv-05479-JST, 2018 WL 4207245, at *12 (N.D. Cal. Sept. 4, 2018) (citation omitted)); *see also In re CRT*, 2016 WL 3648478, at *11. A

---

[26] *See, e.g.,* ECF Nos. 2012, 3050, 3585 & 3585 (motions relating to these issues filed by the other Defendants).

[27] Alioto Fee Decl. ¶ 46. In *LCD*, for example, the jury awarded the direct purchaser class plaintiffs $87 million in damages against Toshiba, but they recovered nothing because the award was offset by their $443 million obtained in settlements. Likewise, Best Buy recovered nothing at trial against Toshiba and Hannstar. The jury found that Toshiba did not participate in the conspiracy and awarded only $7.5 million against Hannstar. Once Best Buy's settlements with the other defendants in *LCD* had been offset, Hannstar owed nothing to Best Buy. Likewise here, if IPPs had gone to trial against Mitsubishi Electric, there would have been an offset of $547,750,000. *Id.* ¶ 47.

1    plan of distribution that compensates class members based on the type and extent of their injuries is

2    generally considered reasonable. *See id.*

3        IPPs will use the same weighted pro rata distribution for the Settlement that the Court approved

4    for the Prior Settlements,[28] and which the Court has preliminarily approved for this Settlement. ECF

5    No. 6104 ¶ 1(c). The Detailed Notice provided a detailed description of the Plan of Distribution,

6    including how each claimant's pro rata share of the net settlement fund would be calculated, the

7    proposed $10 minimum payment, instructions for how to file a claim, and a link to the Court-approved

8    online Claim Form. Alioto Decl. ¶ 5; Fisher Decl., Exs. D & E (Detailed Notice). Millions of potential

9    claimants received direct notice of the Plan of Distribution, including many large corporations which

10   are represented by counsel. *Id.* ¶¶ 16-20. To date, no objection to the proposed Plan of Distribution

11   has been received (Alioto Decl. ¶ 5), and nothing has changed since the Court's previous conclusions.

12   Thus, the Court should finally approve the Plan of Distribution.

13                    **c.    IPP Counsel's Unopposed Attorneys' Fee Request Is Reasonable**

14       A third factor to be considered under Rule 23(e)(2)(C) is "the terms of any proposed award of

15   attorney's fees, including timing of payment." Fed. R. Civ. P. 23(e)(2)(C)(iii).

16       At preliminary approval, IPPs informed the Court that they intended to request an attorney fee

17   award of $11,000,000, which together with the IPP Counsel's first fee award, would equate to 24.2%

18   of the total settlement fund, or one-third of the Mitsubishi Electric Settlement Fund. *See* ECF No. 6053

19   at 21. The Court concluded that "the reasonableness of the anticipated request for an award of

20   attorneys' fees and reimbursement of litigation expenses," supported the finding that the relief

21   provided for the Settlement Class is adequate. ECF No. 6104 ¶ 1(c).

22       Since then, IPPs have filed their motion for attorneys' fees requesting an award of $11,000,000,

23   or 24.2% of the total settlement fund. *See generally* ECF No. 6177. Pursuant to the Preliminary

24   Approval Order, ECF No. 6104 ¶ 22, IPPs filed their motion with the Court on March 10, 2023 (ECF

25   No. 6177) and posted it to the website, www.CRTclaims.com, thirty-five (35) days before the deadline

26

27

28   ───────────────
[28] ECF No. 5786 at 20 (adopting reasoning from original order approving the Prior Settlements).

INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF
CLASS ACTION SETTLEMENT WITH MITSUBISHI ELECTRIC CORPORATION
Case No. 17-cv-04067-JST; Master File No. 07-cv-05944-JST

for objections to give Class Members an opportunity to review the attorney fee motion and either support or file objections to it. Alioto Decl. ¶ 3. The motion is noticed for June 1, 2023, the same date as the final approval hearing.[29] To date, despite the comprehensive notice program—including direct mail, email and ECF notice to Prior Claimants, many of which are sophisticated corporate claimants represented by counsel—no one has objected to IPPs' fee motion, the request for reimbursement of litigation expenses, or the requested incentive awards for the Class Representatives. Alioto Decl. ¶ 4.

As demonstrated in IPPs' fee motion, the requested fee award is reasonable under the circumstances of this case. Together with the $129,606,250 in attorneys' fees already awarded to IPP Counsel, IPPs' proposed $11,000,000 fee award would result in a total fee of $140,606,250, which constitutes 24.2% of the $580,750,000 total settlement fund, and an overall multiplier of 1.735. As this Court has noted, the Ninth Circuit has set the "benchmark for an attorneys' fee award in a successful class action [at] twenty-five percent of the entire common fund."[30] The Court also found that a multiplier of 1.6 is "well within the range of acceptable multipliers." *Id.* at 24. Thus, IPPs' requested fee would still be *below* the Ninth Circuit's 25% benchmark and would only increase the already-approved multiplier by a small amount to 1.735—still well within the range of acceptable multipliers. *See, e.g., In re Hyundai & Kia Fuel Econ. Litig.,* 926 F.3d at 572 (affirming "modest" multipliers of 1.22 and 1.5521 and citing cases affirming multipliers up to 3.65). A lodestar cross-check also confirms the reasonableness of the requested fee award. *See* ECF No. 6177 at 28-32.

In the Preliminary Approval Order, the Court stated that it "will typically withhold between 10% and 25% of the attorney's fees granted at final approval until after the post-distribution accounting has been filed. The final approval motion should specify what percentage class counsel believes it is appropriate to withhold and why." ECF No. 6104 ¶ 27. This language is echoed by the Court's Standing Order.[31]

---

[29] *See* Procedural Guidance, Final Approval (2) ("Regardless of when they are filed, requests for attorneys' fees must be noticed for the same date as the final approval hearing.").

[30] ECF No. 5786 at 22-23 (quoting *Williams v. MGM-Pathe Commc'ns Co.*, 129 F.3d 1026, 1027 (9th Cir. 1997)).

[31] Standing Order for All Civil Cases Before District Judge Jon S. Tigar (uscourts.gov).

INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF
CLASS ACTION SETTLEMENT WITH MITSUBISHI ELECTRIC CORPORATION
Case No. 17-cv-04067-JST; Master File No. 07-cv-05944-JST

The Advisory Committee's Notes to Rule 23 provide that in some cases deferral of "some portion" of an attorney fee award "may be appropriate" where the relief to the class is composed of "future payments" and "may not result in significant actual payments to class members."[32] These concerns are not present here. This Settlement does not involve coupons or vouchers, and it is not a "claims made" settlement, wherein the settling defendant only pays the claims that are made. In such cases, it makes sense to defer the award of attorneys' fees until after the claims process so that the court knows the value of the settlement. Here, the value of the Settlement is known—it is an all-cash settlement for $33 million, which was paid into escrow by Mitsubishi Electric in 2017 and has been earning interest for the benefit of the Settlement Class since then. In addition, most of the claimants are already known because Prior Claimants' valid claims were automatically submitted against this Settlement.[33] Thus, their claims have already been vetted and approved by the Claims Administrator.

Moreover, these Prior Claimants have recently cashed their checks from the Prior Settlements so there is little concern that they will not cash their checks for this Settlement. To date, claimants in the Prior Settlements have cashed $402,666,291.52 of the $410,503,806.60 net settlement fund available for distribution, with 21,114 checks remaining uncashed.[34] Because the residual is less than $12 million, it will be distributed to Late Claimants whose claims in the Prior Settlements were

---

[32] *See* Fed. R. Civ. P. 23(h), Advisory Committee's Notes to 2003 Amendment ("In many instances, the court may need to proceed with care in assessing the value conferred on class members. Settlement regimes that provide for future payments, for example, may not result in significant actual payments to class members. In this connection, the court may need to scrutinize the manner and operation of any applicable claims procedure. In some cases, it may be appropriate to defer some portion of the fee award until actual payouts to class members are known. Settlements involving nonmonetary provisions for class members also deserve careful scrutiny to ensure that these provisions have actual value to the class. On occasion the court's Rule 23(e) review will provide a solid basis for this sort of evaluation, but in any event it is also important to assessing the fee award for the class.").

[33] Only valid claims by end user claimants were submitted in this Settlement; reseller claims were excluded because resellers are not included in the Settlement Class.  Fisher Decl. ¶ 28.

[34] Fisher Decl. ¶ 30. A $10 million reserve fund was withheld from high-value claims, with remaining amounts to be distributed at the conclusion of the administration process. ECF No. 6040 ¶ 14.

discounted by 50%.[35] Accordingly, this is not a case where the Court need be concerned that anything other than a *de minimis* portion of the net settlement fund will remain unclaimed. Alioto Decl. ¶ 6.

Deferral of a portion of the attorneys' fees could also be appropriate if there is a concern that, once paid, class counsel may no longer be incentivized to serve the class through final distribution. Here again, there is no basis for concern. IPP Counsel are well-funded, experienced class action litigators who are continuing to prosecute this case against the Irico Defendants. In this case and others, they have served the Class's interests through final distribution with no need for deferral of fees. Indeed, IPP Counsel filed the motion to distribute the net settlement fund for the Prior Settlements to claimants *within ten days* of the United States Supreme Court's denial of certiorari and the Prior Settlements becoming final.[36] The same will be true here – IPP Counsel will devote whatever time is necessary to ensure the distribution is completed accurately and in a timely fashion. Alioto Decl. ¶ 7.

However, the post-distribution accounting is dependent upon the completion of the claims processing, which is largely beyond the control of IPP Counsel. Claims processing is handled primarily by the Claims Administrator. It is not uncommon for issues to arise between the Claims Administrator and claimants that delay the completion of claims processing. Oftentimes, large claimants and large groups of claimants are represented by claims aggregators and counsel. That is the case here. It is also not uncommon for such claimants to litigate (and appeal) claims determinations, further delaying completion of the claims process. For example, in this Action, claims aggregators objected to the treatment of late claims in the Prior Settlements necessitating mediations before Special Master Walker and Judge Corley. ECF Nos. 5296 & 5715. As to matters within their control, IPP Counsel have every incentive to complete the claims process as soon as possible since counsel will continue to incur fees and expenses in claims processing, which usually go uncompensated. Alioto Decl. ¶ 8.

---

[35] ECF No. 6040 ¶ 8. Late Claimants' claims were automatically submitted in the Settlement and are therefore timely and will be paid in full.

[36] *Compare* ECF No. 6023 *with* ECF No. 6025 (IPPs' Motion for Order Appointing Fund Administrator and Authorizing Distribution of Settlement Funds).

The case could be made—based on the foregoing, IPP Counsel's performance, and the results achieved to date—that the Court should not withhold a portion of the attorney fee award. If, however, the Court is inclined to do so, IPP Counsel believes that the withholding should be no more than 5%.

### d.    Other Related Agreements

Pursuant to Fed. R. Civ. P. 23(e)(2)(C)(iv), IPPs disclosed in the motion for preliminary approval[37] agreements whereby certain objectors voluntarily dismissed their appeals of the original settlements in March and April 2018 in exchange for monetary consideration to be paid by IPP Counsel from their attorney fee award. These agreements also provided that the objectors would not object to this Settlement.[38] No payment is due to the objectors until all fee proceedings relating to the Prior Settlements are final,[39] at which time Lead Counsel will present these agreements to the Court.

### 4.    The Settlement Treats Class Members Equitably

Rule 23(e)(2)(D) requires that the Court consider whether the Settlement "treats class members equitably relative to each other."  Matters of concern for the Court may include "whether the apportionment of relief among class members takes appropriate account of differences among their claims."  Fed. R. Civ. P. 23(e)(2) 2018 Advisory Committee Notes.

Here, the Settlement provides for a lump-sum cash payment to the Settlement Class. ECF No. 6053-1, Ex A, ¶ 25. The Settlement's terms do not distinguish between class members in any way and treat all class members equally. All Class Members are entitled to file claims to receive their pro-rata share of the Settlement, and IPPs propose to distribute the settlement funds to Class Members according to the same weighted pro-rata distribution that this Court already examined and approved as fair, adequate, and reasonable in connection with the Prior Settlements. *See* ECF No. 5786 at 21 (quoting *In re Omnivision Techs., Inc.*, No. C-04-2297 SC, 2007 WL 4293467, at *7 (N.D. Cal. Dec. 6, 2007)) ("It is reasonable to allocate the settlement funds to class members based on . . . the strength of

---

[37] *See* ECF No. 6053 at 22-23; *see also* ECF Nos. 5587 at 9; 6001 at 5, n.5.

[38] ECF No. 6053-1 (Alioto Decl.) ¶¶ 62-63, Exs. B - E (copies of objector settlement agreements).

[39] This Court's Order approving the allocation of the aggregate fee award, ECF No. 6078, has been appealed by settlement objectors Cooper & Kirkham, P.C. and the Law Offices of Francis O. Scarpulla. *See* ECF Nos. 6079, 6080, 6081. Thus, the fee proceedings are not yet final.

their claims on the merits."). In addition, class representatives will be treated no differently than absent class members. While IPPs have sought modest $2,000 incentive award for the Class Representatives, and no one has objected to the proposed awards, any such award will be within the Court's discretion.

**5.      There Are No Objections To The Settlement Or The Attorney Fee Request**

In ruling on final approval of a class action settlement, the Court should also consider "the reaction of the class members of the proposed settlement." *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d at 944 (quoting *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d at 575). Here, as noted, there are no objections to the Settlement or the attorney fee request. The Court should give this factor more weight than usual because large numbers of claimants in this case are represented by claims aggregators, each with their own separate counsel, or are represented directly by their own counsel. These claimants represent approximately 95% of the dollar value of all claims in the Prior Settlements and will likely represent a similar percentage in this Settlement. *See* Fisher Decl. ¶ 29.  These claimants have had extensive contact with IPP Lead Counsel through their counsel, have formally appeared and filed motions and other briefs in the case,[40] and have participated in mediations before the Hon. Vaughn Walker (Ret.) and the Hon. Jacqueline Scott Corley on a wide variety of issues. *See* ECF Nos. 5296 & 5715. Indeed, IPP Lead Counsel provided the settlement papers to counsel for these claimants in advance of the formal notice. In addition, they received direct formal notice via mail and/or email, and their counsel was served with all filings via the Court's ECF system. Alioto Decl. ¶ 10.

Thus, approximately 95% of the total prior claims by value are represented by informed counsel who have no objection to this Settlement or the fee request. This should weigh strongly in favor of final approval of the Settlement and the fee request.

**6.      The Settlement Satisfies This District's Procedural Guidance**

As noted, this District's Procedural Guidance provides that "[t]he motion for final approval briefing should include information about the number of undeliverable class notices and claim packets, the number of class members who submitted valid claims, the number of class members who opted

---

[40] *See, e.g.,* ECF Nos. 5252, 5256, 5269, 5588, 5608, 5609, 5696, 5697, 5698, 5706.

out, and the number of class members who objected to or commented on the settlement. In addition, the motion for final approval should respond to any objections."

### a.    The Number Of Undeliverable Class Notices And Claim Packets

The Claims Administrator mailed or emailed notice directly to 84,571 Prior Claimants, of which 3,556 bounced or were returned undeliverable. Fisher Decl. ¶¶ 17-18. In addition, 54,098 claimants representing 95% of the value of all prior claims were reached indirectly via their third-party representative or legal counsel, none of which were returned. *Id.* ¶¶ 16 & 18. The Claims Administrator also mailed the notice directly to 1,755 large businesses, academic institutions, and hospitals, of which 71 were returned undeliverable. *Id.* ¶ 19. Direct email notice was sent to a list of approximately 12.9 million email addresses for consumers and small businesses with a high interest in computers, consumer electronics, and televisions, resulting in a deliverability rate of 94%. *Id.* ¶ 20.

### b.    The Number Of Valid Claims To Date

After reviewing and auditing the claims received in the Prior Settlements, the Settlement Administrator ultimately approved a total of 143,373 valid claims for purchases of 95,277,199 CRT Products, representing 273,146,112 CRT Weighted Units. *See* ECF No. 6031. All eligible end-user claims (resellers are not included in this Settlement Class) were automatically submitted in this Settlement and the claimants will receive their pro rata share of the Settlement.

The deadline to file a claim against the Settlement is June 13, 2023. As of May 3, 2023, the Claims Administrator has received 1,022,192 new claim submissions, of which 135,130 have passed an initial screening for validity. Fisher Decl. ¶ 30. To date, the Claims Administrator has identified 9,515 duplicate claims and 640,902 potentially invalid claims, as well as an additional 225,310 claims that warrant further review. *Id.* & ¶¶ 31-32. After the claims deadline passes and at the conclusion of its claims review, the Settlement Administrator will propose, for the Court's review and approval, appropriate processes for managing and excluding invalid claim submissions. Fisher Decl. ¶ 33.

### c.    The Number Of Opt Outs

The Claims Administrator received one opt out request from one individual: Ali Ratzel of Jefferson City, Missouri. Fisher Decl. ¶ 25.

1

#### d. The Number Of Objections Or Comments On The Settlement

2

3

To date, no objections or comments on the Settlement have been received or filed with the Court. Alioto Decl. ¶ 11; Fisher Decl. ¶ 26.

4

## IV.  CONCLUSION

5

6

7

8

9

IPPs respectfully request that the Court enter an Order: (1) finally approving the Settlement; (2) certifying the Settlement Class; (3) finally approving the Notice Plan as complying with due process and Rule 23, and constituting "the best notice practicable under the circumstances"; (4) appointing Trump, Alioto, Trump & Prescott, LLP as Settlement Class Counsel; and (5) appointing the Named Plaintiffs as Settlement Class Representatives for their respective state classes.

10

11

12

13

14

IPPs also respectfully request that the Court grant IPPs' unopposed motion for attorneys' fees, reimbursement of expenses and incentive awards for the Class Representatives, ECF No. 6177, and award IPP Counsel attorneys' fees in the amount of $11,000,000 plus interest, $13,122.10 in reimbursement of expenses, and $2,000 to each of the Settlement Class Representatives for their time and effort representing the Class throughout the litigation.

15

16

Dated:  May 11, 2023

Respectfully submitted,

17

 */s/ Mario N. Alioto*
Mario N. Alioto (56433)
malioto@tatp.com

18

19

Lauren C. Capurro (241151)
laurenrussell@tatp.com

20

TRUMP, ALIOTO, TRUMP & PRESCOTT LLP
2001 Union Street, Suite 482
San Francisco, CA 94123
Telephone: 415-563-7200
Facsimile: 415-346-0679

21

22

23

*Lead Counsel for the Indirect Purchaser Plaintiffs*

24

25

26

27

28