Mario N. Alioto (56433)
Lauren C. Capurro (241151)
TRUMP, ALIOTO, TRUMP & PRESCOTT LLP
2001 Union Street, Suite 482
San Francisco, CA 94123
Telephone: 415-563-7200
Facsimile: 415- 346-0679
Email: malioto@tatp.com
laurenrussell@tatp.com

*Lead Counsel for the
Indirect Purchaser Plaintiffs*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# OAKLAND DIVISION

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | MASTER FILE NO. 4:07-cv-5944-JST<br>Case No.: 4:17-cv-04067-JST |
| This Document Relates to: | MDL NO. 1917 |
| *Luscher, et al. v. Mitsubishi Electric Corp.,* No. 4:17-cv-04067-JST | **DECLARATION OF JOSEPH M. FISHER RE:  MITSUBISHI ELECTRIC NOTICE PROGRAM AND CLAIMS ADMINISTRATION**<br><br>Hearing Date:  June 1, 2023<br>Time:  2:00 p.m.<br>Courtroom: 5, 2nd Floor<br>Judge: Honorable Jon S. Tigar |

I, Joseph M. Fisher, declare:

## INTRODUCTION

1. <u>Identification</u>.  I am the president of The Notice Company, Inc., a Massachusetts corporation with offices at 94 Station Street, Hingham, MA 02043 ("The Notice Company" or "Settlement Administrator"). The Notice Company is principally engaged in the administration of class action settlements and lawsuits pending in courts around the United States, including the dissemination of notice to class members, administering the claims process, and distributing the proceeds of the litigation to the class.  I have over 19 years of experience assisting attorneys with class action notices and claims administration.  I am also a member in good standing of the bars of the Commonwealth of Massachusetts, the District of Columbia, and the Commonwealth of Virginia.  I am over 21 years of age and not a party to this action.  I have personal knowledge of the facts set forth herein and, if called as a witness, could and would testify thereto under oath.

2. <u>Purpose of Declaration</u>.  On October 31, 2022, the Court approved the Notice Plan and appointed The Notice Company as the Settlement and Claims Administrator. *Order Granting Preliminary Approval of Class Action Settlement with Defendant Mitsubishi Electric Corporation* ("Preliminary Approval Order", ECF 6104). This Declaration confirms the implementation of the Notice Program for the proposed settlement with Mitsubishi Electric Corporation ("Mitsubishi Electric") as authorized by the Court and reports on exclusion requests and claims.

3. <u>Settlement Class</u>. For purposes of the proposed Settlement, the Court determined that it is likely to be able to certify a "Settlement Class" defined as follows:

    a. All persons or entities who or which indirectly purchased in an Indirect Purchaser Jurisdiction,[1] other than Missouri, Montana, and Rhode Island, for their own use and not for resale, CRTs or CRT Products manufactured and/or sold by any Mitsubishi

---

[1] "Indirect Purchaser Jurisdictions," as defined in Paragraph 5 of the Settlement Agreement, means: Arizona, Arkansas, California, District of Columbia, Florida, Hawaii, Iowa, Kansas, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, Rhode Island, South Carolina, South Dakota, Tennessee, Utah, Vermont, West Virginia, and Wisconsin. *See* Preliminary Approval Order ¶ 2.a at note 1.

1

DECLARATION OF JOSEPH M. FISHER RE: MITSUBISHI ELECTRIC NOTICE PROGRAM AND CLAIMS ADMINISTRATION – Master File No. 4:07-cv-5944-JST

    Electric Releasee, or any Alleged Co-Conspirator, where such purchase took place during the following time periods:

    i. From March 1, 1995 through November 25, 2007 for purchases in Arizona, Arkansas, California, District of Columbia, Florida, Iowa, Kansas, Maine, Massachusetts, Michigan, Minnesota, Mississippi, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, South Carolina, South Dakota, Tennessee, Utah, Vermont, West Virginia, and Wisconsin;

    ii. From June 25, 2002 through November 25, 2007 for purchases in Hawaii;

    iii. From July 20, 2002 through November 25, 2007 for purchases in Nebraska;

    iv. From February 4, 1999 through November 25, 2007 for purchases in Nevada;

  b. All persons who or which indirectly purchased in Missouri from March 1, 1995 through November 25, 2007, for their own use and not for resale, and primarily for personal, family or household purposes, CRTs or CRT Products manufactured and/or sold by any Mitsubishi Electric Releasee, or any Alleged Co-Conspirator;

  c. All persons who or which indirectly purchased in Montana from March 1, 1995 through November 25, 2007, for their own use and not for resale, and primarily for personal, family or household purposes, CRTs or CRT Products manufactured and/or sold by any Mitsubishi Electric Releasee, or any Alleged Co-Conspirator; and

  d. All natural persons who indirectly purchased in Rhode Island from March 1, 1995 through November 25, 2007, for their own use and not for resale, and primarily for personal, family, or household purposes, CRTs or CRT Products manufactured and/or sold by any Mitsubishi Electric Releasee, or any Alleged Co-Conspirator;

  e. Specifically excluded from the Settlement Class are Mitsubishi Electric Releasees, Alleged Co-Conspirators, any federal, state or local government entities, and any judicial officer presiding over this action and the members of his/her immediate family and judicial staff.

# NOTICE PROGRAM RESULTS

4. <u>Summary</u>.  In the *Declaration of Joseph M. Fisher Re: Mitsubishi Notice Program* ("Fisher Declaration-2022," ECF 6059-1) filed on August 23, 2022, I proposed a Notice Program in compliance with Rule 23 of the Federal Rules of Civil Procedure ("FRCP 23") that consisted of the following elements:

    (a)    Settlement Website;

    (b)    Digital Media;

    (c)    Print Media;

    (d)    Press Release;

    (e)    Magazine eNewsletters;

    (f)    Cable Television; and

    (f)    Direct Notice by mail and email;

The proposed Notice Program was designed to reach a high percentage of the Target Audience[2] across multiple channels.[3] As implemented, the Notice Program delivered a calculated reach of 87% with an average frequency of 3.02.[4]

5. <u>Prior Settlements</u>. As described below, the Notice Program for the Settlement with Mitsubishi Electric included a direct outreach to those members of the Settlement Class who had previously been identified in connection with the prior settlements with Chunghwa, LG, Hitachi, Panasonic, Philips, Samsung, Toshiba, Thomson and TDA involving indirect purchasers of CRT products (collectively the "Prior Settlements"). Claimants in the Prior Settlements are referred to as "Prior Claimants".

---

[2] The Target Audience is a qualitative target of adults 35 years and older in the United States that own a television or computer. Fisher Declaration-2022 at ¶ 9.

[3] Fisher Declaration-2022 at ¶ 31. The Notice Company was assisted by Postlethwaite & Netterville, APAC, including Brandon Schwartz, its Director of Notice, in the Notice Program's development and implementation.

[4] This reach exceeds the standard set out by the Federal Judicial Center, which states that a notice plan that reaches at least 70% of class members is one that reaches a "high percentage" and is within the "norm." Barbara J. Rothstein & Thomas E. Willging, Federal Judicial Center, "Managing Class Action Litigation: A Pocket Guide or Judges," at 27 (3d ed. 2010).

**Settlement Website**

6. <u>Updated Website</u>.  On February 8, 2023, the Settlement Administrator updated the existing website for the Prior Settlements, at www.CRTClaims.com ("Settlement Website"), to focus on the Mitsubishi Electric Settlement, while retaining key updates and documents for the Prior Settlements.  The Settlement Website provides information about the Settlement and the Plan of Distribution, including key dates, the class definition, guidance on how to file a claim (including the option to submit a claim online), guidance on how to exclude/opt-out of the Settlement and how to object to the Settlement, information on attending the Fairness Hearing, answers to Frequently Asked Questions (FAQs), Spanish translation documents, and contact information for the Settlement Administrator. A copy of the Settlement Website's home page is attached hereto as Exhibit A.

7. <u>Website Documents</u>. The Settlement Website provides access to several documents, including the Summary (Short-Form) Notice of Settlement in the form attached hereto as Exhibit B (English) and Exhibit C (Spanish), Detailed (Long-Form) Notice of Settlement in the form attached hereto as Exhibit D (English) and Exhibit E (Spanish), mail-in Claim Form and Instructions for Individuals (Natural Persons) in the form attached hereto as Exhibit F (English) and Exhibit G (Spanish), and mail-in Claim Form and Instructions for Businesses in the form attached hereto as Exhibit H (English) and Exhibit I (Spanish). Also available on the Settlement Website are the Motion for Preliminary Approval (ECF 6053), Order Granting Preliminary Approval (ECF 6104) and Stipulation and Order Extending Deadline to Publish Notice (ECF 6114). On March 10, 2023, the Motion for Award of Attorneys' Fees, Reimbursement of Litigation Expenses, and Incentive Awards to Class Representatives (ECF 6177) was posted to the Settlement Website. A copy of the Settlement Website's page for Settlement Documents is attached hereto as Exhibit J.

8. <u>Website Visits</u>.  For the period commencing on February 8, 2023, when the Settlement Website began to focus on the Mitsubishi Electric Settlement, through May 3, 2023, the Settlement Website has been visited by 1,228,574 unique visitors who made 5,395,698 page views.[5]

---

[5] The Settlement Website's home page focuses on the Settlement with Mitsubishi Electric, although visitors may click through to obtain information on the Prior Settlements as well.

**Paid Media - Digital**

9. <u>Digital Campaign</u>. Beginning on February 8, 2023, and continuing through March 15, 2023, the Settlement Administrator caused digital media notices to run across Google Display Network, Yahoo!, Facebook, YouTube, LinkedIn, and AARP as well as search ads on Google.com. The digital notices were targeted to the Target Audience[6] and allowed website visitors to identify themselves as potential Class Members and click through to the Settlement Website.  In addition, digital banner notices were translated into Spanish and served to users that chose Spanish as their preferred browser language and/or appeared on language appropriate websites. More than 471,570,000 impressions were generated during the campaign, which is substantially consistent with anticipated total impressions.[7]

| Table 1:  Summary of Digital Media | | |
|---|---:|---:|
| | **Expected Impressions** | **Actual Impressions** |
| *Google Display Network* | 186,200,000 | 193,717,521 |
| *Yahoo* | 67,800,000 | 61,203,208 |
| *Facebook* | 127,000,000 | 122,170,359 |
| *LinkedIn* | 29,000,000 | 30,216,189 |
| *YouTube* | 63,000,000 | 61,387,593 |
| *Google Ads* | TBD | 85,531 |
| *AARP* | 754,000 | 2,791,839 |
| *Total:* | 473,754,000 | 471,572,240 |

Screenshots of the digital media notices are attached as Exhibit K.

**Paid Media - Print**

10. <u>Print Publications</u>. The Settlement Administrator originally proposed publication of Summary Notice in two magazines: *People* Magazine and *Readers Digest*.[8] In order to accommodate publishers' ad-submission schedules and to enhance the Notice Program, a third major print

---

[6] Digital media audiences were targeted as described in the Fisher Declaration-2022 at ¶17.

[7] *See* Fisher Declaration-2022 at ¶¶ 17 to 23.

[8] Fisher Declaration-2022 at ¶¶ 24 to 26.

publication was added: *Us Weekly*. On February 10, 2023, the Settlement Administrator caused the Summary Notice to appear in *People* Magazine and *Us Weekly*.[9] On April 18, 2023, the Settlement Administrator caused the Summary Notice to appear in *Readers Digest*.[10] A copy of the print notice as it appeared in each publication is attached hereto as Exhibit L. Table 2 below summarizes the circulation and readership of these print publications.[11]

| Table 2: Summary of Print Publications | | |
|---|---|---|
| Magazine | Circulation | Readership |
| *People* | 2,500,000 | 25,393,000 |
| *Us Weekly* | 1,950,000 | 7,052,000 |
| *Readers Digest* | 3,000,000 | 14,200,000 |

**Press Release**

11. <u>National Distribution</u>. On February 13, 2023, the Settlement Administrator disseminated a nationwide release in English and Spanish over Cision's PR Newswire US1 & National Hispanic Newsline. The press release was also distributed across Cision's consumer electronics microlist of influencers and posted on Cision's Twitter feed focused on consumer electronics. The release resulted in 457 pickups by media outlets and a total potential audience of 203,600,000. A copy of the release in English and Spanish as well as the visibility report is attached hereto as Exhibit M.

---

[9] Summary Notice was published in the February 20, 2023, edition of *People* Magazine and *Us Weekly*, which were on sale to the public as of February 10, 2023.

[10] Summary Notice appeared in the May edition of *Readers Digest* which was available to the public on April 18, 2023. *Readers Digest* did not publish a stand-alone April 2023 edition. Instead, it earlier published a combined March-April edition with a December closing date for advertising submissions that preceded our submission of the Summary Notice. Thus, notice publication in *Readers Digest* was helpful for promoting claim submissions by Class Members but did not factor into my analysis for informing Class Members of their exclusion and objection rights.

[11] Circulation refers to the number of copies of the magazine that are distributed. Readership refers to the number of people who read the magazine. The readership number is an estimate of how many hands a copy of the magazine goes into. For example, if a household subscribes to a magazine, it is read by multiple people in that household.

**Magazine eNewsletters**

12. <u>Digital Dissemination</u>. Commencing on February 13, 2023, the Settlement Administrator disseminated notice through the digital newsletter publications of *Dotdash Meredith* (magazine titles include *Better Homes & Gardens* and *Southern Living*), *Golf Magazine*, and *Kiplinger*.

13. <u>Digital Program</u>. Notice in *DotDash Meredith* digital newsletter was provided by a custom email and was sent to an average opt-in audience of 252,857 over seven newsletters. Notice in *Golf Magazine* digital newsletter was provided by 300x250, 970x250, and 300x600 ad units as well as a companion digital banner in the same ad sizes that ran on www.golfmagazine.com. In total, 1,008,404 impressions ran over a one-month period across all channels. Notice in *Kiplinger* ran four times in *Kiplinger Today* and three times in *A Step Ahead* digital newsletters for a total of seven insertions. Notice was provided by custom created content alongside a 600x400 image and was sent to an average opt-in audience of 600,547 and 603,192 for *Kiplinger Today* and *A Step Ahead*, respectively.

14. <u>Screenshots</u>. Screenshots of the digital newsletter notices and companion banners are attached hereto as Exhibit N.

**Cable Television**

15. <u>TV Ads</u>. Beginning on February 13, 2023 and continuing through March 3, 2023, the Settlement Administrator caused notice via television ads on cable TV networks including MSNBC, Hallmark, The Weather Channel, COMET, and The Action Channel, among others. The cable television ads aired 604 times, which was 500 more airings than originally anticipated.[12]

**Direct Notice**

16. <u>Direct Notice to Claimant Representatives</u>. On February 10, 2023, the Settlement Administrator sent the Summary Notice to 68 representatives from third-party claim submission companies or law firms that had contacted the Settlement Administrator in connection with the Prior Settlements. Claims received from such entities accounted for approximately 95% of the dollar value

---

[12] *See* Fisher Declaration-2022 at ¶ 30.

7

DECLARATION OF JOSEPH M. FISHER RE: MITSUBISHI ELECTRIC NOTICE PROGRAM AND CLAIMS ADMINISTRATION – Master File No. 4:07-cv-5944-JST

1  of all claims submitted by claimants in the Prior Settlements. Summary Notice was sent via email substantially in the form attached hereto as Exhibit O, which included directions for notice distribution by the third-party claim submission companies and law firms to their respective clients.

17.  <u>Direct Notice to Claimants in the Prior Settlements</u>. Commencing on March 1, 2023, and continuing through March 10, 2023, the Settlement Administrator sent the Summary Notice in the form attached hereto as Exhibit P, or the Email Notice in the form attached hereto as Exhibit Q, to all other persons and businesses who had submitted indirect purchaser claims in the Prior Settlements. The Email Notice was used when an email address was available for the claimant. The Summary Notice was mailed when email addresses were not available or when an attempted email was returned as undeliverable.

18.  <u>Summary of Direct Notice</u>. Table 3 below summarizes the results of the direct notice sent to Prior Claimants.

| Table 3: Summary of Direct Notice to Prior Claimants | | |
|---|---|---|
| Description | Volume of Notices Sent (#) | Percentage of Notices Sent (%) |
| *Email Notice - Prior Claimants* | | |
| Total Email Notices Sent | 64,083 | 75.8% |
| Total Email Notices Delivered | 62,519 | 73.9% |
| Total Email Notices Bounced/Undeliverable | 1,564 | 1.8% |
| *Mail Notice - Prior Claimants* | | |
| Total Notices Mailed | 20,488 | 24.2% |
| Total Notices Delivered | 18,496 | 21.9% |
| Total Notices Returned as Undeliverable | 1,992 | 2.4% |
| *Direct Notice Program Reach – Prior Claimants* | | |
| Received Direct Notice | 81,015 | 95.8% |
| Did Not Receive Direct Notice | 3,556 | 4.2% |

In addition to the totals reported above, 54,098 Prior Claimants were reached indirectly via their third-party representative or legal counsel.[13]

19.  <u>Direct Notice by Mail: Compiled Lists of Businesses and Organizations</u>. Commencing on March 10, 2023, the Settlement Administrator sent the Summary Notice in postcard format,

---

[13] *See* ¶ 16, *supra*.

substantially in the form attached hereto as Exhibit R, to the businesses, academic institutions and hospitals identified as follows:[14]

(a) Every Fortune 500 Company for each year from 1995 to 2007;

(b) 406 largest Private Colleges and Universities in the United States located in the Indirect Purchaser Jurisdictions;

(c) 666 largest Private Schools (secondary schools) in the United States located in the Indirect Purchaser Jurisdictions; and

(d) 48 largest Hospitals in the United States (not owned by any federal, state or local governmental entity) located in the Indirect Purchaser Jurisdictions.

The results of this direct-notice outreach is summarized in Table 4 below.

| Table 4: Summary of Direct Notice by Mail to Compiled List of Businesses and Organizations | | |
|---|---|---|
| **Description** | **Volume of Notices Sent (#)** | **Percentage of Notices Sent (%)** |
| Total Notices Mailed | 1,755 | 100.0% |
| Total Notices Delivered | 1,550 | 88.3% |
| Total Notices Returned as Undeliverable | 205 | 11.7% |

20. <u>Direct Notice by Email: Lists of Small Businesses and Consumers</u>: The Settlement Administrator identified a list of email addresses for small business owners (businesses typically ranging from five to twenty-five employees) consisting of 673,041 entries, and a list of consumers aged 30 and older with a high interest in computers, consumer electronics, and televisions comprised of 13,711,043 entries.[15] The combined email list totaled approximately 14.3 million. As a first step, the Settlement Administrator "scrubbed" the list to improve deliverability by removing emails that could readily be identified as bad,[16] resulting in an email list of approximately 12.9 million. The

---

[14] *See* Fisher Declaration-2022 at ¶ 13. Before mailing, the lists were processed to remove entities that otherwise were receiving notice as Prior Claimants.

[15] Fisher Declaration-2022 at ¶¶ 14 & 15.

[16] The Emailable platform was used to remove bad emails and improve email deliverability. https://emailable.com/. Bad or invalid email addresses may arise due to data-entry typos or improper formatting. Other examples of invalid email addresses include use of an expired domain name extension or use of an Internet Service Provider (ISP) that is no longer in business.

Settlement Administrator commenced on March 10, 2023, sending the Email Notice, substantially in the form of Exhibit S attached hereto, to these addresses with a resulting deliverability rate of 94%.

**Email Support**

21.   <u>Dedicated Email Address</u>.  The Settlement Administrator continues to use the established info@crtclaims.com email address to provide email support to Class Members, including answering specific questions and requests to the Administrator.  The email address is included in all Notices and displayed on the Settlement Website.

**Settlement Post Office Box**

22.   <u>Dedicated P.O. Box</u>.  The Settlement Administrator continues to use its established Post Office Box ("P.O. Box") for purposes of the Mitsubishi Electric Settlement:

CRT Claims
c/o The Notice Company
P.O. Box 778
Hingham, MA 02043

23.   <u>Mail Service</u>.  The P.O. Box serves as a location for Class Members to submit Claim Forms, exclusion request forms, and other Settlement related correspondences.  The P.O. Box appears on all Notices and in multiple locations on the Settlement Website.  The Settlement Administrator monitors the P.O. Box daily.

**Dedicated Toll-Free Hotline**

24.   <u>Telephone Service</u>. The Settlement Administrator continues to use the established toll-free hotline, 1-800-649-0962, dedicated to this Settlement.  The toll-free hotline is accessible 24 hours per day, seven days per week and utilizes an interactive voice response ("IVR") system where Class Members can obtain essential information regarding the Settlement and be provided responses to frequently asked questions. Class Members have the option to leave a voicemail and receive a call back from the call center representative. The toll-free hotline appeared in all Notices and in multiple locations on the Settlement Website. For the period commencing on February 8, 2023, when the Notice Program commenced with the Settlement Website focusing on the Mitsubishi Electric Settlement, through May 3, 2023, the toll-free hotline has received 1,895 calls and 425 voicemails, totaling 15,909 minutes.

**Objections and Exclusion Requests**

25.  <u>Exclusion Requests</u>. The deadline for Class Members to request exclusion from the Settlement was April 14, 2023.  The Settlement Administrator received one (1) request for exclusion from the Settlement.  A copy of the exclusion request is attached as Exhibit T.

26.  <u>No Objections</u>. The deadline for Class Members to object to the Settlement was April 14, 2023.  Consistent with the Court's orders, the notice documents directed that objections must be filed with the Court.  The Settlement Administrator has not received notice of any objections to the Settlement.

**Claim Form Submissions**

27.  <u>Ongoing Claim Submissions</u>. The deadline for claim submissions is June 13, 2023. Claims are continuing to be received and claim review is ongoing.  A supplemental declaration will be filed with the Court once claim review is complete.

28.  <u>Prior Claimants</u>.  As described in the Detailed Notice of Settlement and Summary Notice of Settlement,[17] all eligible End-User claimants from the Prior Settlements were automatically entered into the Mitsubishi Electric Settlement.  As described at ¶ 9, *supra*, the Settlement Administrator sent direct notice to these claimants and informed them of their previously-approved quantities.  If a claimant had additional units to add to their claim, they were instructed to submit a new claim with a full report of all units claimed for the New Settlement.  Once the claims deadline has passed, the Settlement Administrator will review all claims submitted to ensure that eligible Prior Claimants have a timely, non-duplicated claim submission.

29.  <u>Claimants Represented by Third-Party Claim Submission Companies</u>. As previously noted,[18] claims submitted through third-party claim submission companies or law firms accounted for approximately 95% of the dollar value of all claims submitted by claimants in the Prior Settlements. Although the claims process remains ongoing for the Mitsubishi Electric Settlement, I expect that such

---

[17] *See* Exhibits B through E attached hereto.

[18] Fisher Declaration-2022 at ¶ 16.

claims will account for between 85% and 95% of the dollar value of claims submitted in the Mitsubishi Electric Settlement.

30. <u>Amounts Paid to Prior Claimants</u>. As of May 3, 2023, claimants in the Prior Settlements have cashed $402,666,291.52 of the $410,503,806.60 net settlement fund available for distribution, with 21,114 checks remaining uncashed. In addition, a $10 million reserve fund was withheld from high-value claims with remaining amounts to be distributed at the conclusion of the administration process. *See* Order Granting Motion for Order Authorizing Distribution of Settlement Funds ¶ 14 (ECF 6040).

31. <u>New Claimants</u>. New claimants have the option of submitting a paper claim via USPS or completing the online claim form available at www.CRTClaims.com. As of May 3, 2023, The Notice Company has received 1,022,192 new claim submissions of which 135,130 have passed an initial screening for validity. Table 5 below provides a summary of the claims received to date.

| Table 5: Claims Statistics (as of May 3, 2023) | |
|---|---|
| **Description** | **Volume (#)** |
| **Total Claims Received** | **1,022,192** |
| (-) Duplicate Claims Identified | 9,515 |
| (-) Potentially Invalid Claims: Likely Bot Generated | 877,547 |
| **Net Claims** | **135,130** |

32. <u>Claim Review</u>. In reviewing the claims received, the Settlement Administrator has identified duplicate claims and potentially invalid claims. Duplicate claims currently identified are limited to claims where the claimant name, address, email and phone number are exact match duplicates. A broader duplicate analysis will be completed after the claims deadline.

33. <u>"Bot" Submissions</u>. The Settlement Administrator suspects that many claims have been and are being programmatically generated and submitted by "bots" (short for robots).[19] The Settlement Administrator has been identifying characteristics of these suspected bot-generated claims

---

[19] *See* Merriam-Webster, Inc.: "bot" is defined as "(1) Robot; (2) a computer program that performs automatic, repetitive, and sometimes harmful tasks; (3) a computer program or character that mimics human actions." https://www.merriam-webster.com/dictionary/bot (last visited May 4, 2023).

in order to detect potentially invalid submissions.[20] The Settlement Administrator promptly took the following three steps to minimize the impact of bot-generated submissions:

    a.    A reCAPTCHA (Completely Automated Public Turing test to tell Computers and Humans Apart) ("reCAPTCHA verification") was added to the claim form and required of claimants prior to claim submission.[21]

    b.    Five (5) IP addresses with over 3,000 submissions each were blocked from accessing the claim form.

    c.    Attempts to access the Settlement Website from IP addresses located outside of the United States and Canada were presented with a challenge as a condition to gaining access to the claim form. These are dynamically-generated challenge chosen by software based on the characteristics of the request received. Challenges may be passive (completed by JavaScript in the user browser), a simple checkbox or require a short puzzle to complete.[22]

To date, the Settlement Administrator has identified 877,547 potentially invalid claims that warrant further review.

34.    <u>Recommended Next Steps</u>. After the claims deadline passes and the conclusion of its claims review, the Settlement Administrator will present a report to the Court with recommended courses of action concerning bot-generated deficient or invalid claims.

## Notice and Administration Costs

35.    <u>Settlement Administrator's Costs</u>. The Settlement Administrator has incurred $979,000 in fees and costs for completing the Notice Program. Further administration of the Settlement, including claims review and issuing payments to claimants, is estimated to cost an additional $700,000 to $950,000.

---

[20] Guidance in recognizing Bot behavior is offered in "Social Media Bots", Cybersecurity and Infrastructure Security Agency, U.S. Department of Homeland Security. https://www.cisa.gov/sites/default/files/publications/social_media_bots_infographic_set_508.pdf (last visited May 4, 2023).

[21] *See* Google reCAPTCHA at https://www.google.com/recaptcha/about/ (last visited May 4, 2023).

[22] *See* Cloudflare challenge documentation at https://developers.cloudflare.com/fundamentals/get-started/concepts/cloudflare-challenges/#js-challenge (last visited May 4, 2023).

**Conclusion**

36. <u>The Notice Program Satisfies Due Process Requirements</u>. In class action notice planning, execution, and analysis, the Settlement Administrator has been guided by due process considerations as dictated by the FRCP 23. In my opinion, the above-described Notice Program satisfies the requirements of due process.

37. <u>Reach and Frequency of the Notice Program</u>. In total, the Notice Program delivered an 87% reach with an average frequency of 3.02.[23] The measurable reach of the Notice Program ignores unpaid or "organic" forms of notice.[24] The measurable reach also excludes the impact of digital newsletters and other forms of direct notice, cable TV, the Settlement Website, toll-free hotline and press release, as it is difficult to quantify the impact of such activity on the reach and frequency numbers. Those media vehicles, however, meaningfully strengthened the reach and frequency of the Notice Plan and enhanced claim submissions.

38. <u>Best Notice Practicable</u>. It is my opinion, based on my expertise and experience and that of my team, that the methods of notice dissemination implemented by the Notice Program provided effective notice of the Settlement, provided the best notice that is practicable, adhered to FRCP 23, is consistent with the "Procedural Guidance for Class Action Settlements" as published by the United States District Court for the Northern District of California, followed the orders of the Court in this action and met the requirements of due process.

---

[23] As noted at footnote 10, *supra*, publication of notice in *Readers Digest* was helpful for promoting claim submissions but did not factor into my analysis of the effectiveness of the Notice Program. Addition of *Readers Digest* to the notice calculation would have increased the estimated reach of the Notice Program from 87% to 88% with a frequency of 3.06.

[24] Examples of organic contributions to notice are: (A) online searches on Google or Bing that show the Settlement Website as an unadvertised search result, (B) unpaid Facebook posts that discuss or point to CRT settlements, and (C) unsolicited email blasts and website features that highlight the Mitsubishi Electric Settlement; *see, e.g.,* https://openclassactions.com/settlement_crt.php (last visited May 8, 2023).

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed at Hingham, Massachusetts, this 11th day of May, 2023.

_____
JOSEPH M. FISHER