*Trump Alioto Trump & Prescott*
ATTORNEYS LLP
2001 Union Street, Suite 482
San Francisco, California 94123
(415) 563-7200
FAX (415) 346-0679

**BAKER BOTTS** LLP
700 K STREET, NW
WASHINGTON, D.C.
20001-5736

TEL  +1 202.639.7700
FAX  +1 202.639.7890

July 5, 2023

<u>**VIA ECF**</u>

Hon. Jon S. Tigar
United States District Court for the
Northern District of California
Oakland Courthouse
Courtroom 6, 2nd Floor
1301 Clay Street
Oakland, CA 94612

***Re***:     *In re Cathode Ray Tube* (***CRT***) *Antitrust Litigation*, **Master File No. 4:07-cv-05944-JST, MDL No. 1917**

Your Honor:

        Pursuant to ECF Nos. 5907 and 5925, the Irico Defendants ("Irico") informed the Indirect Purchaser Plaintiffs ("IPPs") of four topics for its proposed motion for summary judgment. After conferring several times, IPPs informed Irico that they believed that two of those proposed topics were not in compliance with the Court's guidance. Irico disagrees. The parties conferred further but could not agree. Therefore, the parties submit this joint letter to the Court, seeking the Court's guidance.

<u>**IRICO'S POSITION**</u>

**A.      Introduction**

        Irico is preparing its summary judgment motion fully mindful of the Court's admonition that it does not want to consider Irico summary judgment motions "duplicative of dispositive motions already decided as to other defendants." *See* Case Management Order at 1, ECF No. 5907. Irico has done its diligence and is confident that all issues raised in its motion for summary judgment have not previously been decided and has described these issues to the IPPs. Despite Irico's repeated efforts, IPPs have refused to accept that these arguments are undecided, either because they refuse to rationally assess the bases for the motion, or because they are effectively seeking two chances to defeat these arguments rather than one. In Irico's view, the present submission is a needless waste of the Court's and the parties' time and attention.[1] In concocting their

---

[1] Irico's dispositive motions are due, at present, on July 28, 2023.  Irico highlights the late timing of IPPs' objections, which may be designed to disrupt the preparation of Irico's

Hon. Jon S. Tigar
July 5, 2023
Page 2 of 9

objections, the IPPs are either distorting the grounds on which Irico will move for summary judgment, or attempting to vastly expand past decisions of the Court to cover areas of the law, or procedural circumstances, that those decisions did not address. In reality, Irico's motion is straight down the middle with respect to issues that are unique and specific to Irico's defense of this case or remain untouched in previous decisions on dispositive motions.

The IPPs dispute two issues on which Irico intends to move for summary judgment. The first is Irico's argument that, following the development of the record of the case *after* the Court's 2019 decision asserting jurisdiction over the Irico entities, the Court should dismiss the IPPs' claims pursuant to the principle of international comity, as recognized by the Ninth Circuit and as recently applied by the Second Circuit to dismiss antitrust price-fixing claims against Chinese entities. The second is that the IPPs have failed to develop sufficient facts to support application of jurisdiction under certain state laws consistent with constitutional protections, state law requirements and applicable Ninth Circuit precedent. In both instances, as discussed below, these issues definitively were not addressed in prior rulings of the Court.

IPPs will have a full opportunity to confront the merits of these arguments in their opposition to Irico's motion for summary judgment. Their unreasonable attempt to preclude the filing of a motion on these bases should be rejected. Indeed, to amplify the unreasonable nature of IPP's position, Irico also will be forced to seek summary judgment on IPP's claim seeking *injunctive* relief – IPPs have refused to relinquish this claim despite the fact that the IPP counsel has repeatedly and emphatically represented to this Court, and to the Ninth Circuit (in seeking to undermine the ORS and NRS plaintiffs), that the IPP's injunctive relief claims are moot, worthless and could not possibly form the basis for relief. For the following reasons, Irico respectfully asks that the Court reject IPPs' efforts and judge the issues on the merits through Irico's forthcoming dispositive motion.

## B.     International Comity

IPPs have represented that they object to Irico's inclusion of international comity arguments at summary judgment on two bases. First, IPPs claim that the comity issues were already decided by the Court in its Order Regarding Motions to Dismiss for Lack of Jurisdiction (ECF No. 5637) ("FSIA Order"). Second, IPPs claim that the argument is untimely because Irico did not raise the issue of international comity in its FSIA motion. Neither of these arguments is accurate or relevant to summary judgment.

As the Court is well aware, the FSIA addresses the threshold issue of whether the Court has jurisdiction to preside over a case involving Irico. *See* FSIA Order at 5-7. International comity, on the other hand, is a legal determination as to whether the laws of the United States should be applied based on seven factors, including the existence of a

_____

motion.  In the event the Court determines to schedule a hearing on this matter, Irico reserves the right to request an extension of time to submit dispositive motions.

Hon. Jon S. Tigar
July 5, 2023
Page 3 of 9

conflict between U.S. laws and the laws of another nation, in this case the People's Republic of China. *See Timberlane Lumber Co. v. Bank of America, N.T. and S.A.*, 549 F.2d 597, 614 (9th Cir. 1976); *Mujica v. AirScan Inc.*, 771 F.3d 580, 602 (9th Cir. 2014). The comity doctrine and factors are legally and factually distinct from the FSIA and the jurisdictional issues decided by the Court in 2019. *Compare Timberlane*, 549 F.2d at 614 *with* FSIA Order at 5-7.

International comity could only be relevant after the Court had satisfied itself it had jurisdiction over the Irico defendants, and Irico properly raised the international comity defense in its answers to IPPs' operative complaint. *See* ECF Nos. 5873 at 45-46 and 5875 at 45-46. Irico appropriately developed the necessary record with respect to this defense through the completion of discovery and depositions, without which the issue would not have been ripe for determination. Despite repeated requests at the time of the filing of this letter, IPPs have refused to provide any explanation as to how Irico could or would have brought the comity issue forward at the FSIA stage. Moreover, it is axiomatic that Irico does not have an obligation to raise every anticipated defense at the pleadings stage in a motion to dismiss. *See, e.g., Montgomery v. Risen*, 197 F. Supp. 3d 219, 239 (D.D.C. 2016) (holding no waiver of a "potential evidence- or merits-based defense of falsity" in failing to include in motion to dismiss); *see also Senne v. Vill. of Palatine*, 6 F. Supp. 3d 786, 790 (N.D. Ill. 2013) (holding that argument of forfeiture of summary judgment based on failure to raise in motion to dismiss does "not pass the straight-face test").

Finally, even if the Court were to find some validity in IPPs' arguments, which it should not, the Second Circuit's recent 2021 landmark decision in the *In re Vitamin C Antitrust Litig.*, which was decided after the Court's 2019 FSIA decision, would provide a sound basis for Irico to raise the issue anew. At the time that the Court decided the FSIA issues in 2019, the Second Circuit was still considering *Vitamin C*, following remand from the Supreme Court in 2018. *See Animal Sci. Prods., Inc. v. Hebei Welcome Pharm. Co.*, __ U.S. __, 138 S. Ct. 1865 (2018) (accord. *In re Vitamin C Antitrust Litig.*, 8 F.4th 136, 140 (2nd Cir. 2021)). Therefore, it would not have been possible for Irico to raise, nor for the Court to consider, Irico's comity arguments based on the 2021 *Vitamin C* decision and related analogous legal and factual developments in its FSIA Order.

## C.    State Law Issues

Irico plans to ask the Court to determine that the IPPs have not developed sufficient facts to support application of certain state laws as required by certain specific state laws as well as under the Due Process Clause of the Fourteenth Amendment, as reflected in Ninth Circuit case precedents and the rulings of this Court.[2] These issues were previously briefed by other defendants in prior motions for summary judgment in

---

[2] Irico also intends to ask the Court to enforce its prior decision in the DAP cases to dismiss claims under New York Law prior to December 3, 1998. *See In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. 07-md-5944-JST, 2013 WL 4505701, at *13 (N.D. Cal. Aug. 21, 2013).

Hon. Jon S. Tigar
July 5, 2023
Page 4 of 9

2014, but the Court *never ruled* on the merits of those motions, only addressing some of them as moot once settlement occurred or granting them in part as unopposed. *See* ECF Nos. 2973 (Chunghwa motion); 2984 at 17-19 (TDA motion); 3029 (joint defendants' motion); 4596 at 1 (denying Chunghwa motion as moot); 4733 at 1 (denying joint defendants' motion as moot); 5105 at 3 (granting state law portion of TDA motion as unopposed). Irico intends to raise these issues in its motion, bolstered by the further development of the factual record. IPPs offer two alternative bases for their opposition: 1) that the "sufficient contacts" issues were resolved by the Court in its rulings on motions filed under Rule 12(b) of the Federal Rules of Civil Procedure; and, 2) similar to their argument on comity, that these issues were decided by the Court in its FSIA Order. Neither argument is relevant.

The first basis is clearly erroneous and expressly undermined by the very decision IPPs cite in support. The decision on which the IPPs purportedly rely is the Court's 2013 Order on the Direct Action Purchasers' ("DAP") Motions to Dismiss. This decision related only to the DAP complaints and, more importantly, only addressed the sufficiency of the DAPs' pleadings on these issues. *See In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. C-07-5944-SC, 2013 WL 4505701, at *7 (N.D. Cal. Aug. 21, 2013) (assessing the sufficiency of the allegations in DAPs' complaints "for Rule 12(b)(6) purposes"). Moreover, in ruling on the motion to dismiss, the Court explicitly stated that that future summary judgment motions on this issue would not be precluded by the decision: "***This does not mean that future due process challenges are foreclosed, pending the discovery of additional facts.***" *Id.* (emphasis added).

IPPs' argument that the FSIA decision forecloses this argument is equally unavailing. The FSIA decision, in which the Court concluded that it could assert jurisdiction over the Irico defendants, merely placed Irico on the same footing as the other defendants in the case who were expressly permitted to raise a challenges to jurisdiction under specific state laws, as reflected in the Court's decision on the DAP motions to dismiss above. In any event, these issues clearly are not ripe for resolution via this informal letter briefing process, particularly when IPPs have refused to provide any case law or other substantive argument supporting this position to Irico. IPPs will be able to fully brief their opposition to Irico's motion.

## D.      Injunctive Relief

As noted, in addition to their unwarranted opposition to two of Irico's proposed summary judgment issues, IPPs' have declined to withdraw their claim for injunctive relief under Section 16 of the Clayton Act, and are forcing Irico to waste a portion of its limited briefing space to include this argument. IPPs have admitted to the Court that this claim is baseless on numerous instances because there is no longer any CRT-related activity to enjoin. Indirect Purchaser Plaintiffs' Mot. for Final Approval of Class Settlements at 32, ECF No. 4370 ("No one disputes that the CRT market is dying and almost all manufacturers, including all of the alleged conspirators, have left the market making it very unlikely that the alleged conduct could reoccur in the future."); *see also id.* at 33 ("Here, proving the injunction claim *is* likely impossible.") (emphasis in

original); Indirect Purchaser Plfs.' Reply re: Final Approval of Settlements at 5 (N.D. Cal. Dec. 25, 2015) (confirming that injunctive relief claim "would have faced dubious prospects on the merits") (internal citations omitted); Joint Case Mgmt. Conf. Stmt. at 3, ECF No. 5416 (defending decision to pursue only 22 state class damages claim because "the injunctive relief claim . . . [was not] viable"). Indeed, the Court itself has agreed with these positions in prior rulings. *See In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. 07-md-5944-JST, 2016 WL 3648478, at *12 (N.D. Cal. Jul. 7, 2016) (holding that injunctive relief claims were valueless given the alleged conspirators had left the CRT market and the alleged conduct was unlikely to recur in the future), *vacated on other grounds In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. 07-md-5944-JST, slip op., (N.D. Cal. Jul. 13, 2020) (ECF No. 5786).

IPP counsel remained obdurate in refusing to dismiss the claims as to the 22 states, even while admitting that no potential nationwide class remains.[3]

**E.     Conclusion**

For the foregoing reasons, Irico respectfully requests that the Court reject IPPs' assertions. Further, given the late-arising nature of IPPs' objections, Irico reserves the right to petition the Court for relief from the July 28, 2023 due date.

**IPPS' POSITION**

Irico defaulted and disappeared from this litigation for more than seven years, during which time many important issues were decided. When this Court was setting the pretrial schedule in early 2021 following the denial of Irico's motion to dismiss based on the Foreign Sovereign Immunity Act ("FSIA") (ECF No. 5637), IPPs sought to prevent Irico from relitigating issues already decided by the Court. *See* ECF No. 5877 at 1-11.

In recognition of the potential prejudice to IPPs, this Court ordered Irico to "identify the dispositive motions they plan to file" to IPPs by May 6, 2022. ECF Nos. 5907 at 2, 5925 at 2. The Court further ordered the parties to "meet and confer regarding the proposed motions and, if they cannot agree, the parties shall seek a conference with the Court to resolve any issues, which shall include consideration of whether the motion is duplicative of dispositive motions already decided by the Court." ECF No. 5907.

On May 6, 2022, Irico sent a letter to IPPs informing them of their intent to file three dispositive motions seeking summary judgment on the following topics:

- IPPs' claim for federal injunctive relief;
- The insufficiency of Irico's contacts with relevant states to sustain IPPs' state law claims; and,

---

[3] Irico notes that it does not appear that IPPs are authorized under the class certification to pursue this injunctive relief claim for "the 22 states." *See* ECF No. 1742 at 2 (IPPs sought to certify only "22 separate statewide damages classes"); 1950 at 4 (adopting report and recommendation).

Hon. Jon S. Tigar
July 5, 2023
Page 6 of 9

- Irico's lack of participation in IPPs' alleged conspiracy prior to 1998.

Shortly thereafter, the pretrial schedule was modified and the deadline for filing (but not designating) dispositive motions was continued to July 28, 2023. ECF No. 6198.

On June 1, 2023, Irico wrote to IPPs again notifying them of Irico's intent to file *four* motions for summary judgment—the three original motions and one more regarding "International comity." Following several meet and confers, IPPs have concluded that Irico's international comity motion, and its motion regarding "insufficiency of Irico's contacts with relevant states" are duplicative of dispositive motions already decided by the Court. Irico also failed to timely notify IPPs of the international comity motion in accordance with this Court's Order, ECF No. 5925. Thus, IPPs object to the filing of these motions and respectfully request that the Court prohibit Irico from filing these motions.[4]

## I.   Irico's "International Comity" Motion Is Duplicative Of Dispositive Motions Already Decided By This Court

Based on the parties' meet and confers, IPPs understand that Irico intends to file a summary judgment motion asserting that (1) Chinese pricing regulations required it to conspire with its competitors to fix prices and limit production of CRTs, (2) there is a conflict between those Chinese laws and the state laws alleged in this case, and (3) therefore, principles of international comity require this Court to defer to China's laws to regulate commerce in China, and to dismiss the action against Irico.

The issues raised by this motion are duplicative of issues already decided by this Court in its two Orders denying Irico's motions to dismiss based on the FSIA (ECF Nos. 5240 & 5637)—the second of which came after extensive jurisdictional discovery. They are also duplicative of the 2016 Order denying summary judgment based on the Foreign Trade Antitrust Improvements Act ("FTAIA"), ECF No. 4910.

International comity "shares certain considerations with international principles of sovereignty and territoriality; constitutional doctrines such as the political question doctrine; principles enacted into positive law such as ***the Foreign Sovereign Immunities Act of 1976***, 28 U.S.C. §§ 1330, 1602, 1611 (2006); and judicial doctrines such as *forum non conveniens* and prudential exhaustion." *Mujica v. AirScan Inc.*, 771 F.3d 580, 598 (9th Cir. 2014) (emphasis added). The Ninth Circuit holds that international comity requires the consideration of several elements, including "the nationality or allegiance of the parties and the locations or principal places of business of corporations, . . . the relative significance of effects on the United States as compared with those elsewhere, the extent to which there is explicit purpose to harm or affect American commerce, [and] the

---

[4] The parties exchanged their individual submissions in this letter in advance of filing but agreed not to change the text of their submissions in response to each other's submissions. Thus, the parties are not responding directly to each other's submissions. As a result, there may be arguments in Irico's submission that are not addressed by IPPs' submission.

Hon. Jon S. Tigar
July 5, 2023
Page 7 of 9

foreseeability of such effect. . . ." *Metro Indus. v. Sammi Corp.*, 82 F.3d 839, 846 (9th Cir. 1996) (emphasis added) (citing *Timberlane Lumber Co. v. Bank of America*, 549 F.2d 597, 614 (9th Cir. 1976)). Several of these elements have already been decided by the Court in its FSIA and FTAIA decisions based on an extensive evidentiary record.

For example, this Court has found that while Irico Group is an "agency or instrumentality of China" (ECF No. 5240), Irico Display "functioned as an ordinary profit-making entity that happened to partially make profits for the Chinese government." ECF No. 5637 at 10. The Court further concluded that "'the Irico Defendants' activities in setting prices and manufacturing schedules for CRTs w[ere] clearly commercial in nature.'" *Id*. at 11 (citing ECF No. 5240 at 9).

In addition, this Court has extensively considered the significance and foreseeability of the CRT conspiracy's effects in the United States, as well the purpose of the conspiracy, in both the FSIA Orders and the FTAIA Order. *See, e.g., id*. at 12 (relying on DPPs' expert report which "showed that the U.S. was the second largest market for CRTs at 18% of the market," and "that the conspiracy resulted in higher prices, including in the United States, because the CRT accounted for up to 50 percent of the cost of manufacturing a television or computer monitor.' 'These facts,'. . . 'support a finding that the Irico Defendant's commercial activities had a direct effect in the United States.'") (quoting ECF No. 5240 at 11); *see also* ECF No. 4910 ("The United States was the world's largest market for CRTs during the relevant time frame, and Defendants were well aware of the effect their price-fixing agreements were having on the prices paid for CRTs and products containing CRTs. . .. The same evidence can fairly be read to demonstrate that one goal of the conspiracy was to maintain these prices at an artificially high level. In short, there is at least a triable issue of material fact regarding whether Defendants' conduct had a direct effect on United States commerce.").

In sum, Irico's international comity motion would be effectively asking this Court, once again, to decline to exercise jurisdiction over this case. But the Court has already found it has jurisdiction over Irico and this case, and in reaching that conclusion made particularized findings that Irico will necessarily be requiring this Court to address again in Irico's international comity motion. IPPs respectfully request that the Court decline to revisit issues already decided and prohibit Irico from filing this motion.

## II.     Irico's "Insufficient State Contacts" Motion Is Duplicative Of Dispositive Motions Already Decided By This Court

Irico's also proposes to file a summary judgment motion based on alleged "insufficiency of Irico's contacts with relevant states to sustain IPPs' state law claims." During the meet and confers, Irico asserted that this motion is based on "substantive due process" and that "the case law suggests" there must be specific conduct by Irico in the states at issue. Like the international comity motion, this motion will inevitably raise issues already decided in the FSIA and FTAIA Orders, as well as the Court's Orders denying other defendants' motions to dismiss the DAPs' state law claims.

Hon. Jon S. Tigar
July 5, 2023
Page 8 of 9

Irico's suggestion that IPPs have failed to show specific conduct by Irico within certain states, and that subjecting Irico to those states' laws would violate its right to due process, is a rehash of Irico's arguments in its FSIA motion. Irico raised subject matter and personal jurisdiction issues in that motion and argued that IPPs must show direct sales of its price-fixed CRTs into the U.S. in order to show a direct effect on U.S. commerce. *See, e.g.*, ECF Nos. 5411, 5514. As described above, this Court twice rejected these arguments, finding that "the Irico Defendants' commercial activities had a direct effect in the United States." ECF No. 5240 at 11; 5637 at 12; *see also* ECF No. 4910 at 8-9.

In addition, in granting IPPs' motion for class certification, this Court appointed class representatives for each of the 22 States based on evidence that they were residents of their respective State and purchased products containing CRTs manufactured by the Defendants in that State. *See* ECF Nos. 1950 & 1742 at 14-19, 40-48.

This Court has denied other defendants' substantive due process motions based on defendants' "direction of price-fixed goods into certain states," and on the DAP's purchases of products containing price-fixed CRTs in those states. *See In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. 07-cv-5944-SC, MDL No. 1917, 2013 U.S. Dist. LEXIS 119598, at *87-88 (N.D. Cal. Aug. 21, 2013) (denying motion to dismiss because "Defendants' direction of price-fixed goods into certain states renders Defendants subject to those states' antitrust and consumer protection laws."); *In re Cathode Ray Tube CRT Antitrust Litig.*, No. 07-cv-5944-SC, MDL No. 1917, 2014 U.S. Dist. LEXIS 35391, at *106 (N.D. Cal. Mar. 13, 2014) ("Thomson SA's alleged conduct resulted in a New York-based company being harmed, and this is sufficient to give New York an interest in applying its own law to the controversy, especially given *Allstate's* "modest restrictions on the application of forum law" and "highly permissive standard.") (quoting *Experience Hendrix LLC v. Hendrixlicensing.com L.L.C.*, 742 F.3d 377, Nos. 11-35858, 11-35872, 2014 WL 306600, at *4 (9th Cir. 2014).[5]

As this Court has recognized, the Ninth Circuit's decision in *AT&T Mobility LLC v. AU Optronics Corp.*, 707 F.3d 1106 (9th Cir. 2013) "does not mean . . . that a purchase alone is insufficient to merit application of a state's law despite a due process challenge." *In re CRT*, 2013 U.S. Dist. LEXIS 119598, at *86-87 ("*AT&T* did not hold that an in-state sale alone could not satisfy due process, especially when, in context, it would be proper under due process to subject a defendant to the rules of that state.") (citations omitted). *See also In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 11-2225 SI, 2014 WL 2905131, at

---

[5] Irico argues that these orders should not bar their motion because they are orders denying motions to dismiss rather than summary judgment motions. But a motion to dismiss is a dispositive motion, and the Court's Order provides that it will consider "whether [Irico's proposed motion] is duplicative of dispositive motions already decided by the Court." ECF No. 5907. Irico also ignores that these orders set forth the legal standard for dispositive motions based on substantive due process, as well as the facts necessary to satisfy due process, and that the FSIA, FTAIA, and Class Certification Orders have already made findings on those facts which apply to Irico.

*2 (N.D. Cal. June 26, 2014) ("Although the place of purchase is not dispositive, neither is it alone insufficient to merit application of the law of the state where the allegedly price-fixed goods were purchased.") (citations omitted).

In sum, this Court has already made findings based on extensive evidentiary records that (1) Irico's commercial activities in selling price-fixed CRTs into the United States had a direct effect on the United States—which includes the 22 States at issue in IPPs' case—in the form of higher prices for products containing CRTs; and (2) that IPPs purchased products containing those price-fixed CRTs in the 22 States. Thus, IPPs request that the Court prohibit Irico from filing its proposed "insufficient state contacts" motion because it is "duplicative of dispositive motions already decided by the Court." ECF No. 5907.

## III.     IPPs Are Not Required To Withdraw Their Injunctive Relief Claim

Irico contends that it should not have to bring a summary judgment motion relating to IPPs' injunctive relief claim because IPPs have admitted the claim is not viable and they have not certified a nationwide class. But nothing in the Court's Case Management Orders require IPPs to withdraw their injunctive relief claim in response to Irico's threatened summary judgment motion or to justify at this stage IPPs' opposition to any such motion. It is up to Irico to determine whether it has the basis to file its motion as to IPPs' injunction claim. If Irico files such a motion, IPPs will respond appropriately.

IPPs are seeking an injunction as to Irico on behalf of the individual indirect purchaser class representatives for the 22 States. IPPs are not seeking to represent a nationwide class.

Thank you for your time and attention to this matter.

Very truly yours,

/s/ John M. Taladay
John M. Taladay
Counsel for Defendants Irico Group Corp. and
Irico Display Devices Co., Ltd.

/s/ Mario N. Alioto
Mario N. Alioto
Lead Counsel for the Indirect Purchaser Plaintiffs

cc.     All Counsel via ECF