# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# OAKLAND DIVISION

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Master File No.: 07-cv-05944 JST<br><br>MDL No. 1917 |
| This document relates to:<br><br>*ALL INDIRECT PURCHASER ACTIONS* | **DECLARATION OF DONALD CLARKE IN SUPPORT OF IRICO GROUP CORP. AND IRICO DISPLAY DEVICES CO., LTD.'S MOTION FOR SUMMARY JUDGMENT** |

I, Donald Clarke, declare as follows:

1. I make this declaration in support of the motion for summary judgment filed by Irico Group Corporation ("Irico Group") and Irico Display Devices Co., Ltd. ("Irico Display" and, together with Irico Group, the "Irico Defendants").

2. I am a Professor of Law and the David A. Weaver Research Professor at the George Washington University Law School, where I have been employed since 2005. My academic specialization is the law of the People's Republic of China in general and the legal regime of Chinese economic reform in particular.

3. From 1988 through 2004, I was on the faculty of the University of Washington School of Law ("UWLS"), and I have been a visiting professor at New York University Law School, University of California at Los Angeles School of Law, and Duke Law School. From 1995 to 1998, I was on a leave of absence from UWLS and worked as an attorney at Paul, Weiss, Rifkind, Wharton & Garrison ("Paul, Weiss"), a large United States law firm with a substantial China business practice. During that period, I visited China and Hong Kong approximately twice a year in the course of my work, a substantial amount of which was related to China. From 1998 through 2003, I regularly worked with Paul, Weiss as a consultant on Chinese law matters. Since that time I have maintained an independent consulting practice.

4. I have published widely in the field of Chinese law. I am fluent in Mandarin Chinese (speaking, reading, and writing).

5. I graduated *cum laude* from Harvard Law School in 1987, where my studies focused on East Asian legal systems and I served as an editor of the *Harvard Law Review*. I earned a graduate degree (M.Sc. with Honours) in the Government and Politics of China from the School of Oriental and African Studies at the University of London in 1983. I also studied Chinese history

for two years at Beijing University and Nanjing University in China from 1977 to 1979. I earned my undergraduate degree from Princeton University in 1977.

6. I have served as adviser or consultant on Chinese law matters to a number of bodies, including the Asian Development Bank, the Agency for International Development, and the World Bank's Financial Sector Reform and Strengthening Initiative. I have testified on aspects of the Chinese legal system before the Congressional-Executive Commission on China and the United States-China Economic and Security Review Commission. In 2005, I was appointed to the Academic Advisory Group to the US-China Working Group of the United States Congress. I was admitted to practice in the State of New York in 1988, and am a member of the Council on Foreign Relations and the National Committee on U.S-China Relations.

7. In this declaration, I provide my opinions on the enforceability of foreign judgments in general and U.S. judgments in particular in China; authenticate documents cited in the Irico Defendants' motion for summary judgment; and provide opinions on the existence of an enforced pricing regulatory framework in China involving cathode ray tubes ("CRTs") and color televisions ("TVs").

8. In the course of preparing this declaration, I have considered the documents specifically referred to in this declaration.

## The Enforceability of U.S. and Other Foreign Judgments in China

9. Chinese courts are generally reluctant to recognize U.S. judgments and, to my knowledge, have never recognized or enforced a judgment from a U.S. class action proceeding, antitrust case, or case involving treble damages.

10. The rule of recognition of foreign judgments is stated in Article 289 of China's Civil Procedure Law:

Having received an application or a request for recognition and execution of a legally effective judgment or ruling of a foreign court, a people's court shall review such judgment or ruling pursuant to international treaties concluded or acceded to by the People's Republic of China or in accordance with the principle of reciprocity. If, upon such review, the people's court considers that such judgment or ruling neither contradicts the basic principles of the law of the People's Republic of China nor violates State sovereignty, security and the public interest, it shall rule to recognize its effectiveness. If execution is necessary, it shall issue an order of execution, which shall be implemented in accordance with the relevant provisions of the Law. If such judgment or ruling contradicts the basic principles of the law of the People's Republic of China or violates State sovereignty, security or the public interest, the people's court shall refuse to recognize and execute the judgment or ruling.[1]

11.     Article 289 provides that a Chinese court may only recognize and enforce a foreign judgment in two circumstances: (1) if there is an applicable treaty that provides for recognition and enforcement of the foreign judgment; or (2) under the principle of reciprocity, if it is the practice of the relevant foreign country to enforce Chinese judgments.

12.     There is at present no applicable treaty between the United States and China, so recognition, if it happens at all, must be on the basis of reciprocity. The overall prospects of a Chinese court recognizing and enforcing a U.S. judgment are low.

13.     Chinese courts are generally reluctant to recognize foreign judgments. Chinese courts are particularly reluctant to enforce U.S. judgments. As of August 2022, no Chinese court had to my knowledge granted recognition or enforcement to a judgment from a U.S. class action,

---

[1] The current version of China's Civil Procedure Law was amended in 2021, became effective in 2022, and is accessible in Chinese at the following government website: https://flk.npc.gov.cn/detail2.html?ZmY4MDgxODE3ZWQ3NjZlYTAxN2VlNmFiOTlhZDFjYmM%3D (http://bit.ly/chinacpl2022). Article 289 was previously Article 282 in, and remained unchanged from, the prior version of China's Civil Procedure Law, which is accessible in English at the following government website: https://cicc.court.gov.cn/html/1/219/199/200/644.html (https://bit.ly/chinacpl2017).

antitrust case, or case involving treble damages.[2] As of July 26, 2023, that remains true to the best of my knowledge.[3]

14. Finally, given the recent strain in U.S.-China relations and the heavy influence of politics in the Chinese court system, there is little reason to think that Chinese courts will be more inclined to recognize U.S. judgments in the future, and every reason to think they will be less so.

15. For the reasons set forth above, the prospects that a Chinese court will recognize and enforce a U.S. judgment are very low, particularly a judgment from a U.S. antitrust class action.

**Authenticity of Documents**

16. In addition to the "Pricing Documents" that I authenticated in my expert report dated March 16, 2022, I have independently verified the following additional documents to be authentic and valid, in the same way the Pricing Documents are authentic and valid. I have also confirmed the existence of each of the following documents on the public websites of the Chinese governmental bodies identified or other verified source:

   a. Notice on Earnestly Stopping Price Dumping and Carrying out Inspection of Price Dumping（关于认真做好制止低价倾销工作及开展对低价倾销进行检查的通知）, Jan. 16, 1999, from the website of the Guangdong Provincial Development and Reform Commission (attached as an exhibit to the Declaration of Evan Werbel, dated July 28, 2023 and submitted in support of the Irico Defendants' motion for summary judgment ("Werbel Declaration"));

---

[2] Guodong Du & Meng Yu, *August 2022 Update: List of China's Cases on Recognition of Foreign Judgments*, CHINA JUSTICE OBSERVER, Aug. 21, 2022, *available at* https://perma.cc/9Y75-BZ4L.

[3] I reviewed the above-cited analysis from August 2022, *see* Du & Yu, *supra* note 2, and also looked for any further updates at that site, which I did not locate. I then searched for more recent cases on pkulaw.cn, a legal database operated by Peking University, looking for any cases since that time that mentioned the terms "Civil Procedure Law" (民事诉讼法), "Article 289" (第二百八十九条), and "implementation" (执行). I found none.

    b. Price Law of the People's Republic of China (中华人民共和国价格法), promulgated Dec. 29, 1997, from the website of China's central government (attached as an exhibit to the Werbel Declaration);

    c. Interpretation of the Price Law of the People's Republic of China (中华人民共和国价格法释义), Nov. 25, 2000, from the official website of the National People's Congress, China's highest legislative body (attached as an exhibit to the Werbel Declaration);

    d. *Premier of the State Council, Zhu Rongji, Issued Instructions to Firmly Prevent Unfair Low-price Dumping Behaviors* (国务院总理朱镕基对坚决制止采取不正当手段低价倾销行为做出批示), 1999:3 GUANGXI ECON. AND TRADE 4 (1999), from the China National Knowledge Infrastructure journal database (attached as an exhibit to the Werbel Declaration);

    e. *Stop Unfair Price Behavior*（制止不正当价格行为）, SECOND ROUND OF SHANDONG PROVINCIAL ANNALS PRICE CHRONICLES (1997-2005)), BOOK IV, CHAPTER I, SECTION 3, https://perma.cc/5GXE-5LJP, from what appears to be a website of the Shandong provincial government (attached as an exhibit to the Werbel Declaration); and

    f. National Development and Reform Commission, *The State Planning Commission Issued Eight Measures to Inspect Prices and Charges* (国家计委出台八项价格、收费检查措施) (Jan. 6, 2000), https://perma.cc/P9T5-GMEG, from the website of the National Development and Reform Commission (attached as an exhibit to the Werbel Declaration).

**<u>Evidence of Enforcement of the Pricing Documents</u>**

17. My research found evidence that the Pricing Documents (the Chinese regulations and notices attached to my March 2022 expert report) were enforced. I also believe there are probably enforcement actions that I did not find. Among other things, it is likely that not all investigations and other enforcement actions by Chinese governmental authorities were made public.

    a. Some investigations are deliberately kept non-public.

    b. Even for investigations that could in principle be made public, there was not in the late 1990s and early 2000s, when the Internet was new in China, a practical way to publicize them.

18. The best-known case of enforcement involved a number of color television manufacturers each accusing the other of dumping.[4] That case was investigated by central government authorities, but local governments were also active in conducting other investigations.

19. Several articles describe these local government investigation and enforcement actions. These governments included Beijing, Hangzhou, Guangzhou, and Shandong.[5]

20. In addition to the above specific actions, reports and documents from the time in question leave little doubt that government authorities were concerned with low-price dumping and determined to take moves to prevent it, both in the CRT and TV industries and across the Chinese economy more generally.

---

[4] 程行云 (CHENG Xingyun), 深入开展依法制止低价倾销工作 (*Deepen the Lawful Deterrence of Low-Price Dumping*), 2000 中国物价年鉴 (PRICE YEARBOOK OF CHINA) 45, 47 (2000).

[5] *See* 北京市物价局 (Beijing Price Bureau), 关于立即停止低于进货价格销售彩电行为的函 (*Letter on Immediate Cessation of Selling Color TVs Below the Purchase Price*) (Apr. 19, 2001) (reported by 110 Net at www.110.com/fagui/law_284807.html) (last visited June 12, 2023) (describing an investigation carried out by the Beijing Price Bureau, prompted by reporting tips from the public, against certain consumer retailers for selling color televisions below their purchase cost); 王永明, 杭州市市长 (WANG Yongming, Mayor of Hangzhou), 政府工作报告 （1999 年 1 月 23 日在杭州市第九届人民代表大会第四次会议上） (*Government Working Report (On January 23, 1999, at the Fourth Session of the Ninth Hangzhou People's Congress*), 1999 Supp. No. 1 HANGZHOU POL. NEWS 3, 9, 16 (1999), https://perma.cc/ALV7-CRW2 (stating that in 1999 the Hangzhou Municipal Government will focus on, *inter alia*, "investigat[ing] and handl[ing] unfair price behaviors, such as industry price monopoly and low-price dumping"); 刘伯饶 & 陶小淳 (LIU Borao and TAO Xiaochun), 广州惊爆"超低价" (*Shocking "Ultra-low Prices" in Guangzhou*), 人民日报 (副刊) (PEOPLE'S DAILY (Supplement)), Jan. 13, 2003 (describing efforts of Guangdong provincial and Guangzhou municipal authorities respectively to investigate and suppress low-price dumping of many products, including color televisions); 制止不正当价格行为 (*Stop Unfair Price Behavior*), 二轮山东省志 物价志 (1997-2005) (SECOND ROUND OF SHANDONG PROVINCIAL ANNALS PRICE CHRONICLES (1997-2005)), Book IV, Chapter I, Section 3, https://perma.cc/5GXE-5LJP ("From 1997 to the first half of 1998, the provincial Price Bureau focused on inspecting products sold below the average industry cost, such as flat glass, steel, color cathode ray tubes, color TVs, and sugar, and maintained the market price competition order in related industries.").

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 27th day of July, 2023 in Washington, DC.

_____

Donald Clarke