# **EXHIBIT 1**

1                    UNITED STATES DISTRICT COURT

2                   NORTHERN DISTRICT OF CALIFORNIA

3                          OAKLAND DIVISION

4

5    IN RE: CATHODE RAY TUBE (CRT)  ) MASTER FILE NO.
     ANTITRUST LITIGATION            ) CV-07-5944 JST
6    _____)
                                     )
7    THIS DOCUMENT RELATES TO:       )
                                     )
8    ALL INDIRECT PURCHASER ACTIONS  )
     ALL DIRECT PURCHASER ACTIONS    )
9                                    )
             DEFENDANTS.             )
10   _____)

11

12

13

14

15        VIDEOTAPED DEPOSITION OF YAN YUNLONG

16                      VOLUME I

17           TUESDAY, SEPTEMBER 27, 2022

18              MACAU S.A.R., CHINA

19

20

21

     FILE NO.  SF 5436473

22

     REPORTED BY  MARK McCLURE, CRR

23              CAL CSR 12203

24

25

                                          Page 1

```
 1         A.   I think it was Mr. Xing Daoqin of the Group      14:46
 2    company.                                                   14:46
 3         Q.   Were you involved in the decision to retain      14:46
 4    Pillsbury?                                                 14:46
 5         A.   I was involved.                                  14:46
 6         Q.   Did you meet with Pillsbury lawyers about the    14:46
 7    issue of retaining Pillsbury?                              14:46
 8         A.   We met.                                          14:47
 9         Q.   Did you meet with Pillsbury before they were     14:47
10    actually retained to represent Irico?                      14:47
11         A.   No.                                              14:47
12              MR. BIRKHAEUSER:   Okay.  We're about to run     14:47
13    out of videotape, so why don't we go off the record.      14:47
14              THE VIDEOGRAPHER:   We are now going off the     14:47
15    record.  The time is 2:48.                                 14:47
16              (Discussion off the record.)                     14:48
17              THE VIDEOGRAPHER:   We are now back on the       15:01
18    record.  The time is 3:01.                                 15:01
19    BY MR. BIRKHAEUSER:                                        15:01
20         Q.   All right, Mr. Yan, after Irico received a       15:01
21    copy of the complaint in this matter, did it conduct any   15:01
22    investigation into the facts that are alleged in the       15:01
23    complaint?                                                 15:01
24         A.   No.                                              15:01
25         Q.   Did Pillsbury ever tell Irico that it should     15:02
```

Page 110

1    investigate the facts that are alleged in the complaint?        15:02

2            MR. CARTER:  Objection.  Calls for                      15:02

3    attorney-client privileged information.  Instruct the           15:02

4    witness not to answer to the extent it would reveal any         15:02

5    legal advice given or received by Pillsbury.                    15:02

6            THE WITNESS:  I will take back my earlier               15:03

7    answer.                                                         15:03

8    BY MR. BIRKHAEUSER:

9        Q.   I don't know what you're saying.                       15:03

10           When you said you'd take back your earlier              15:03

11   answer, are you -- strike that.                                 15:03

12           Did Irico conduct an investigation into the             15:03

13   facts alleged in plaintiffs' complaint?                         15:03

14           MR. CARTER:  Objection.  Asked and answered.            15:03

15   BY MR. BIRKHAEUSER:                                             15:04

16       Q.   You can answer.                                        15:04

17       A.   Okay.  After we received this complaint from           15:05

18   the U.S., we consulted our attorneys and we also felt           15:05

19   that it was quite strange that the U.S. would conduct a         15:05

20   CRT antitrust investigation against us, but at that time        15:05

21   our focus was on whether or not Irico had any products          15:05

22   that were sold in the U.S., and we also later clarified         15:05

23   on that issue, and indeed, we did not have any                  15:05

24   mass-produced products sold in the U.S., so the                 15:05

25   complaint against us was entirely baseless.                     15:05

                                                    Page 111

```
 1        Q.    What kind of investigation did you conduct to          15:05

 2   reach the conclusion that the complaint against Irico            15:05

 3   was baseless?                                                     15:06

 4        A.    We contracted a company to search the database         15:06

 5   of Chinese customs for the data of our products -- of            15:06

 6   our export products during the relevant period, and the          15:06

 7   investigation scope covered all of those products we             15:07

 8   exported in that time frame, and the data showed that we         15:07

 9   did not export any products to the U.S. market, so it            15:07

10   made no sense to file such a complaint against us.               15:07

11        Q.    When did you contract with a company to search         15:07

12   the database of Chinese customs?                                  15:07

13        A.    It was around the beginning of 2008.                   15:07

14        Q.    What was the name of the company?                      15:07

15        A.    I don't remember the name, but I think it's in         15:07

16   our document production.  That company also issued a             15:08

17   certificate to prove the search result.                          15:08

18        Q.    As best as you can recall, as you sit here             15:08

19   today, what was the name of that company?                        15:08

20        A.    I really cannot recall.  It has been a very            15:08

21   long time.                                                        15:08

22        Q.    What exactly did you tell that company to              15:08

23   search for?                                                       15:08

24        A.    I was not the person who approached that               15:08

25   company.  It was the staff of the Irico Group Sales              15:09
```

Page 112

| | | |
|---|---|---|
| 1 | the complaint other than this report by the person that | 15:21 |
| 2 | Irico contracted with? | 15:21 |
| 3 | MR. CARTER:  Object to form. | 15:21 |
| 4 | THE WITNESS:  No. | 15:22 |
| 5 | BY MR. BIRKHAEUSER: | 15:22 |
| 6 | Q.   At the time you were investigating the facts | 15:22 |
| 7 | of the complaint, did any Irico employee tell you that | 15:22 |
| 8 | they had attended meetings with Irico's competitors? | 15:22 |
| 9 | A.   They did. | 15:22 |
| 10 | Q.   And what kind of investigation did you do as | 15:23 |
| 11 | to the meetings that Irico had with its competitors? | 15:23 |
| 12 | A.   We did not conduct any special investigation. | 15:23 |
| 13 | We simply confirmed whether or not there was such a | 15:23 |
| 14 | fact. | 15:23 |
| 15 | Q.   Who told you that Irico employees attended | 15:23 |
| 16 | meetings with Irico's competitors? | 15:23 |
| 17 | A.   At that time, it was Liu Maihai, Shen Xiaolin, | 15:23 |
| 18 | and there was another person who used to work for CEIEC, | 15:24 |
| 19 | and that person's name was Liang Yuan.  That's it. | 15:24 |
| 20 | Q.   Did Shen Xiaolin tell you that Mr. Shen had | 15:25 |
| 21 | attended a meeting of CEOs and presidents of CRT | 15:25 |
| 22 | competitors in Shanghai in November of 2006? | 15:25 |
| 23 | MR. CARTER:  Object to form. | 15:25 |
| 24 | THE WITNESS:  It was not as detailed as to | 15:25 |
| 25 | exactly which meeting. | 15:25 |

Page 117

1  BY MR. BIRKHAEUSER:

2      Q.   Did anyone tell you how many meetings that          15:25

3  Irico employees had had with Irico's competitors?           15:25

4      A.   No.                                                 15:26

5      Q.   Were you preliminary responsible for gathering     15:26

6  information to give to Pillsbury after you were served      15:26

7  with the complaint?                                         15:26

8          MR. CARTER:  Object to form.                        15:26

9          THE WITNESS:  No.  Actually, after we were          15:27

10  served the complaint, we did several things.               15:27

11          The first one was -- we formed an internal         15:27

12  working group to lead the work of conducting the           15:28

13  investigation with respect to this litigation.  It was a   15:28

14  task force working group.                                  15:28

15          Secondly, we engaged Pillsbury as the counsel      15:28

16  to represent us, but at that time several law firms were   15:28

17  pitching us for the case, and we later talked with them    15:28

18  and engaged Pillsbury as our outside counsel.              15:28

19          The third one we did -- the third thing we did     15:28

20  was that we conducted an investigation to see if we        15:28

21  actually sold any products in the U.S. market, and the     15:28

22  information we got was no.  So we asked Pillsbury to try    15:28

23  to talk and reason with the plaintiffs that it was a       15:28

24  mistake to sue Irico, and we asked them to remove us       15:28

25  from the defendants.                                       15:28

Page 118

| | | |
|---|---|---|
| 1 | The fourth thing that we did was to notify all | 15:29 |
| 2 | the relevant people based on the request from Pillsbury, | 15:29 |
| 3 | and those people were asked to preserve all the | 15:29 |
| 4 | information and documents related to the case. | 15:29 |
| 5 | During that process, Pillsbury related a very | 15:30 |
| 6 | important piece of information to us.  It told us that | 15:30 |
| 7 | it was actually a class action and the plaintiffs in the | 15:30 |
| 8 | case were trying to form a group of plaintiffs to | 15:30 |
| 9 | conduct the litigation, and the defendants were also | 15:30 |
| 10 | trying to form a group, and Pillsbury's advice to us was | 15:30 |
| 11 | that we join the defendants group.  So, internally, in | 15:30 |
| 12 | the company, we also held some discussions on that | 15:30 |
| 13 | advice. | 15:30 |
| 14 | And the company held several rounds of | 15:31 |
| 15 | discussions on that issue in order to understand the | 15:31 |
| 16 | situation, but the situation with Irico is different | 15:31 |
| 17 | from that with other companies in the defendants' group. | 15:31 |
| 18 | Those other companies were big multinational companies | 15:31 |
| 19 | and the U.S. market was their main market.  They not | 15:31 |
| 20 | only had CRT products in the U.S. market, they also had | 15:31 |
| 21 | the TV whole sets in the U.S. market, and Irico, at that | 15:31 |
| 22 | time, had neither, so it was to the disadvantage of | 15:32 |
| 23 | Irico to join and form the defendants group. | 15:32 |
| 24 | And also, at that time, the U.S. government | 15:32 |
| 25 | was conducting, actually, criminal investigations in the | 15:32 |

Page 119

```
1                   UNITED STATES DISTRICT COURT

2                  NORTHERN DISTRICT OF CALIFORNIA

3                        OAKLAND DIVISION

4

5    IN RE: CATHODE RAY TUBE (CRT) ) MASTER FILE NO.

     ANTITRUST LITIGATION          ) CV-07-5944 JST

6    _____)

                                    )

7    THIS DOCUMENT RELATES TO:      )

                                    )

8    ALL INDIRECT PURCHASER ACTIONS )

     ALL DIRECT PURCHASER ACTIONS   )

9                                   )

                   DEFENDANTS.      )

10   _____)

11

12

13

14

15             VIDEOTAPED DEPOSITION OF YAN YUNLONG

16                         VOLUME III

17                THURSDAY, SEPTEMBER 29, 2022

18                   MACAU S.A.R., CHINA

19

20

21

22    FILE NO.  SF 5436477

23

24    REPORTED BY  MARK McCLURE, CRR

25                 CAL CSR 12203
```

Page 308

```
 1   foundation.  Improper legal opinion.                09:50:51

 2         THE WITNESS:  My understanding is that the    09:51:25

 3   ex-factory prices of our Irico CRT products should not  09:51:28

 4   be below the average production cost published by the  09:51:34

 5   national government agencies, as referenced earlier;   09:51:41

 6   which means that for each of the 20-inch color picture  09:52:07

 7   tube that we manufacture, the price cannot go lower than  09:52:10

 8   440 RMB, and the price of the 25-inch color picture tube  09:52:18

 9   should not go lower than 720 RMB.                  09:52:25

10   BY MR. CARTER:                                     09:52:25

11      Q.   Mr. Yan, looking back at page 460, with the  09:52:45

12   newspaper clipping --                              09:52:48

13      A.   Okay.                                      09:52:54

14      Q.   -- the table at the bottom of that clipping is  09:52:55

15   titled "Industrial Average Production Cost," correct?  09:52:58

16         MR. RUSHING:  Objection to form.             09:53:10

17         THE WITNESS:  Yes.                           09:53:11

18   BY MR. CARTER:                                     09:53:11

19      Q.   To your understanding, if Irico Group's     09:53:17

20   production costs were lower than the industry average,  09:53:21

21   could Irico Group lawfully price its CRTs below these  09:53:27

22   levels?                                            09:53:32

23         MR. RUSHING:  Objection to form.  Lack of    09:53:33

24   foundation.  Calls for an improper legal opinion.   09:53:36

25         THE WITNESS:  No.                            09:54:10
```

Page 350

| | | |
|---|---|---|
| 1 | MR. BIRKHAEUSER:  Objection on the grounds | 09:54:10 |
| 2 | that it mischaracterizes the document. | 09:54:12 |
| 3 | Objection.  Objection on the ground that it | 09:54:15 |
| 4 | mischaracterizes the document. | 09:54:18 |
| 5 | BY MR. CARTER: | 09:54:28 |
| 6 | Q.   What's your understanding of what would happen | 09:54:28 |
| 7 | if Irico Group sold CRTs at prices below these published | 09:54:30 |
| 8 | industrial average production costs? | 09:54:35 |
| 9 | MR. RUSHING:  Objection to form.  Lacks | 09:54:38 |
| 10 | foundation.  Calls for an improper legal opinion. | 09:54:42 |
| 11 | THE WITNESS:  According to my understanding, | 09:55:23 |
| 12 | our company would have to bear legal liabilities and it | 09:55:25 |
| 13 | will face punishments, and those people at the company | 09:55:31 |
| 14 | at the leadership level who have direct responsibility | 09:55:37 |
| 15 | regarding this would also face personal punishment. | 09:55:40 |
| 16 | MR. BIRKHAEUSER:  Objection on the ground that | 09:55:47 |
| 17 | it mischaracterizes the very language of the document | 09:55:48 |
| 18 | itself. | 09:55:51 |
| 19 | BY MR. CARTER: | 09:55:51 |
| 20 | Q.   Mr. Yan, you can set that document aside, and | 09:56:00 |
| 21 | I have one other document that I'm going to introduce, | 09:56:03 |
| 22 | if you give me a moment. | 09:56:06 |
| 23 | Mr. Yan, I'm introducing what was previously | 09:56:29 |
| 24 | marked as Exhibit 8551.  Please refresh your page and | 09:56:32 |
| 25 | let me know when you see that. | 09:56:36 |

Page 351

```
 1        A.   8551, right?                              09:56:51

 2        Q.   Correct.                                  09:56:53

 3        A.   I see it.                                 09:56:55

 4        Q.   Could you please take a moment to review  09:56:58

 5   Exhibit 8551 and let me know when you're ready.  There's  09:57:00

 6   an English translation on pages 1 through 5 of the  09:57:09

 7   document, and then the Chinese original starts on page  09:57:15

 8   6.                                                 09:57:17

 9        A.   Okay, I see it.                           09:57:32

10        Q.   Looking at the red stamp and handwriting in  09:57:34

11   the bottom left of the page, what does that say?   09:57:41

12             MR. RUSHING:  Objection to form.  Lacks  09:57:57

13   foundation.                                        09:57:59

14             THE WITNESS:  The first page, right?      09:58:04

15   BY MR. CARTER:                                     09:58:04

16        Q.   The first page in Chinese, yes.          09:58:06

17        A.   I do not see a red box -- I see it now.  My  09:58:21

18   bad.  I'm sorry.                                   09:58:27

19             The first line in the box says "Electronic  09:58:28

20   industry archive," and the second line says "Copy  09:58:41

21   2017052 number."                                  09:58:47

22        Q.   Do you have an understanding of what the  09:58:54

23   presence of that stamp indicates about the document?  09:58:56

24        A.   This indicates that the source of this   09:58:58

25   document comes from the archive of the archive library  09:59:27
```

Page 352

# **<u>EXHIBIT 2</u>**

```
1              UNITED STATES DISTRICT COURT
2            NORTHERN DISTRICT OF CALIFORNIA
3                   OAKLAND DIVISION
4
5  IN RE: CATHODE RAY TUBE (CRT)  ) MASTER FILE NO.
   ANTITRUST LITIGATION           ) CV-07-5944 JST
6  _____ )
                                   )
7  THIS DOCUMENT RELATES TO:       )
                                   )
8  ALL INDIRECT PURCHASER ACTIONS  )
   ALL DIRECT PURCHASER ACTIONS    )
9                                  )
            DEFENDANTS.            )
10 _____ )
11
12
13
14
15         VIDEOTAPED DEPOSITION OF LI MIAO
16                   VOLUME III
17            THURSDAY, MARCH 9, 2023
18                   HONG KONG
19
20
21
22
23
   FILE NO.  SF 5759557
24
   REPORTED BY  MARK McCLURE, CRR
25              CAL CSR 12203
```

Page 234

| | | |
|---|---|---|
| 1 | Q.   Okay.  In any event, the safety standard that | 16:43:01 |
| 2 | the tube was manufactured to would be reflected in the | 16:43:08 |
| 3 | model number? | 16:43:12 |
| 4 | A.   Yes. | 16:43:29 |
| 5 | Q.   I believe, yesterday, you referred to | 16:43:32 |
| 6 | something called the reinforcement band, is that right? | 16:43:36 |
| 7 | A.   What did you say? | 16:43:58 |
| 8 | Q.   Do you recall -- strike that. | 16:44:02 |
| 9 | Is there something called a reinforcement band | 16:44:05 |
| 10 | that's part of the manufacturing process of the tube? | 16:44:08 |
| 11 | A.   It's called explosion-prevention band. | 16:44:28 |
| 12 | Q.   Is that something that a customer would | 16:44:33 |
| 13 | specify, also? | 16:44:36 |
| 14 | A.   The structure, the type and the manufacturing | 16:44:37 |
| 15 | processes regarding the explosion-prevention band are | 16:45:00 |
| 16 | very closely related to the safety standards. | 16:45:05 |
| 17 | Q.   In your role as the plant chief, did you | 16:45:26 |
| 18 | communicate with Irico's customers? | 16:45:34 |
| 19 | A.   We need to communicate with the users | 16:45:35 |
| 20 | regarding how to match the circuit with the tube when | 16:46:03 |
| 21 | they use our products.  Also, we provide after-sales | 16:46:08 |
| 22 | services to our users after they purchase our products. | 16:46:35 |
| 23 | Q.   What type of communications would you have | 16:46:45 |
| 24 | with customers before you manufactured a tube for them? | 16:46:49 |
| 25 | A.   It's mainly the discussions regarding how to | 16:46:55 |

Page 253

| | | |
|---|---|---|
| 1 | match the circuitry with a certain tube. | 16:47:13 |
| 2 | Q.   And then, was that part of your responsibility | 16:47:18 |
| 3 | as the plant chief, to speak with the customers? | 16:47:22 |
| 4 | A.   Generally speaking, I would not handle that | 16:47:27 |
| 5 | directly.  I have engineers who would communicate with | 16:47:48 |
| 6 | the customers regarding the design and providing | 16:48:08 |
| 7 | services. | 16:48:12 |
| 8 | Q.   Okay.  Would any other category of employee, | 16:48:14 |
| 9 | other than engineers, communicate with customers? | 16:48:21 |
| 10 | MR. CARTER:  Object to form. | 16:48:34 |
| 11 | THE WITNESS:  We would also send people to | 16:48:42 |
| 12 | provide guidance to the users as to the way to operate | 16:49:13 |
| 13 | our products after they started to use our products. | 16:49:16 |
| 14 | But that's only for the time when they just start to use | 16:49:32 |
| 15 | the products.  After they have used the product for a | 16:49:37 |
| 16 | while, we will not provide such guidance anymore. | 16:49:40 |
| 17 | BY MR. BIRKHAEUSER: | 16:49:40 |
| 18 | Q.   What customers do you remember purchasing | 16:49:47 |
| 19 | Irico tubes while you were in Plant No. 1? | 16:49:51 |
| 20 | A.   Almost all domestic TV makers have purchased | 16:49:55 |
| 21 | Irico tubes.  Regarding the overseas purchasers, based | 16:50:21 |
| 22 | on what I remember, they were from Thailand, Britain, | 16:51:05 |
| 23 | Turkey, and either Russia or Belarus.  I don't quite | 16:51:10 |
| 24 | remember. | 16:51:20 |
| 25 | Q.   Do you recall any other countries that | 16:51:21 |

Page 254

| | | |
|---|---|---|
| 1 | purchased tubes manufactured in Plant 1? | 16:51:25 |
| 2 | MR. CARTER:  Object to form. | 16:51:30 |
| 3 | THE WITNESS:  From the perspective of | 16:51:58 |
| 4 | providing technical communication and customer services, | 16:52:01 |
| 5 | I don't recall other countries. | 16:52:06 |
| 6 | BY MR. BIRKHAEUSER: | 16:52:06 |
| 7 | Q.  Do you know about customers that purchased | 16:52:09 |
| 8 | tubes from Irico manufacturing facilities other than | 16:52:16 |
| 9 | Plant 1? | 16:52:23 |
| 10 | A.  I don't understand the question. | 16:52:40 |
| 11 | Q.  Do you know about customers that bought tubes | 16:52:44 |
| 12 | manufactured by other Irico plants, other than Plant 1? | 16:52:50 |
| 13 | A.  Plant No. 1 manufactured the tubes, and Irico | 16:53:00 |
| 14 | also has Plant No. 2 and the factory of Irico Display | 16:53:41 |
| 15 | Devices.  They also manufacture the tubes.  So it's | 16:53:48 |
| 16 | quite normal for the customers to purchase the tubes | 16:53:51 |
| 17 | from Plant No. 1, as well as from Plant No. 2 and Irico | 16:53:54 |
| 18 | Display Devices. | 16:54:03 |
| 19 | It's also normal for the customers to purchase | 16:54:03 |
| 20 | the tubes from other manufacturers inside China, because | 16:54:05 |
| 21 | there are also other tube makers in China.  That's also | 16:54:09 |
| 22 | quite normal. | 16:54:13 |
| 23 | Am I misunderstanding your question? | 16:54:22 |
| 24 | Q.  Can you tell me the identity of customers | 16:54:29 |
| 25 | purchasing tubes from Plant 2? | 16:54:32 |

Page 255

# **<u>EXHIBIT 3</u>**

1               UNITED STATES DISTRICT COURT

2             NORTHERN DISTRICT OF CALIFORNIA

3                   OAKLAND DIVISION

4

5   IN RE: CATHODE RAY TUBE (CRT)  ) MASTER FILE NO.

    ANTITRUST LITIGATION          ) CV-07-5944 JST

6   _____)

                                   )

7   THIS DOCUMENT RELATES TO:      )

                                   )

8   ALL INDIRECT PURCHASER ACTIONS )

    ALL DIRECT PURCHASER ACTIONS   )

9                                  )

            DEFENDANTS.            )

10  _____)

11

12

13         VIDEOTAPED DEPOSITION OF WANG ZHAOJIE

14                     VOLUME I

15            TUESDAY, SEPTEMBER 20, 2022

16               MACAU S.A.R., CHINA

17

18

19

20  JOB NO. 5436453

21

22  REPORTED BY  MARK McCLURE, CRR

23            CAL CSR 12203

24

25

                                          Page 1

| | | |
|---|---|---|
| 1 | (Exhibit 8559 marked for identification.) | 13:13:32 |
| 2 | MS. CAPURRO: | 13:13:32 |
| 3 | Q.   Mr. Wang, do you see the document? | 13:13:39 |
| 4 | Would you please take a minute to review the | 13:13:41 |
| 5 | document.  You don't need to read the whole thing.  I | 13:13:43 |
| 6 | only have a few questions about limited sections, which | 13:13:46 |
| 7 | I'll direct you to. | 13:13:51 |
| 8 | Let me know when you're ready, Mr. Wang. | 13:14:17 |
| 9 | The Chinese portion of the document starts on | 13:14:22 |
| 10 | page 5 of the PDF.  Sorry, on page 4. | 13:14:25 |
| 11 | A.   Okay. | 13:14:53 |
| 12 | MS. CAPURRO:  Can the interpreter see the | 13:14:54 |
| 13 | screen okay? | 13:14:56 |
| 14 | MAIN INTERPRETER:  I would appreciate if you | 13:14:57 |
| 15 | can make it larger. | 13:15:00 |
| 16 | MS. CAPURRO:  Better? | 13:15:02 |
| 17 | MAIN INTERPRETER:  That's fine. | 13:15:04 |
| 18 | BY MS. CAPURRO: | 13:15:04 |
| 19 | Q.   Mr. Wang, have you seen this document before? | 13:15:08 |
| 20 | A.   No. | 13:15:13 |
| 21 | Q.   Do you see, in the top of the document, it's | 13:15:16 |
| 22 | entitled "December CRT Industry Meeting Exchange"?  Do | 13:15:20 |
| 23 | you see that? | 13:15:25 |
| 24 | A.   I see that. | 13:15:28 |
| 25 | Q.   Have you seen documents like this before? | 13:15:39 |

Page 80

```
 1        A.    No.                                      13:15:49

 2        Q.    Did reviewing this document, sitting here    13:15:50

 3   today, refresh your recollection regarding the exchanges  13:15:56

 4   of information amongst the members of the CRT Industry    13:15:58

 5   Association?                                     13:16:04

 6              MR. LUCARELLI:  Object to form.        13:16:04

 7              THE WITNESS:  I do not dare to guess, but  13:16:29

 8   whatever is written on this document, then it is what it  13:16:32

 9   is.                                              13:16:36

10              MR. HWU:  Can we go off the record?     13:16:51

11        I think our examining counsel's computer just  13:16:54

12   restarted by itself.  Apologies.                 13:16:57

13              MR. LUCARELLI:  Not a problem.          13:17:00

14              THE VIDEOGRAPHER:  We are off the record at  13:17:02

15   1:17 p.m.                                        13:17:03

16              (Discussion off the record.)            13:17:07

17              THE VIDEOGRAPHER:  We are back on the record  13:22:19

18   at 1:23 p.m.                                     13:23:02

19   BY MS. CAPURRO:                                  13:23:05

20        Q.    Okay.  Mr. Wang, we were talking about   13:23:09

21   Exhibit 8559 before my computer died.            13:23:15

22              Directing your attention to the final page of  13:23:27

23   the document, Bates stamped BMCC-CRT000113391, do you  13:23:33

24   see here at the bottom of the document where it states  13:24:00

25   "Irico Group Sales Company, November 30, 1995"?   13:24:05
```

Page 81

```
1          A.   I see that.                              13:24:09

2          Q.   Irico Group Sales Company is how Irico Group   13:24:26

3     referred to its sales department, isn't that right?   13:24:30

4          A.   Correct.                                 13:24:33

5          Q.   And Irico Group Sales Company's sign-off at   13:24:44

6     the end of this document indicates that this document   13:24:48

7     was authored by someone at Irico Sales Company, isn't   13:24:50

8     that?                                               13:24:53

9          A.   I cannot guess about this.  Whatever is   13:25:19

10    written on this document, then it stands.           13:25:22

11         Q.   What other explanation is there for it saying   13:25:27

12    "Irico Group Sales Company," at the bottom of this   13:25:31

13    document?                                           13:25:34

14              MR. LUCARELLI:   Object to form.          13:25:36

15              THE WITNESS:   I'm not clear about that because   13:25:41

16    I've never seen this document.                      13:25:54

17    BY MS. CAPURRO:                                     13:25:54

18         Q.   But Irico Group Sales Company would have put   13:25:58

19    "Irico Group Sales Company" at the end of their     13:26:00

20    documents, right?                                   13:26:03

21         A.   Whatever is written here, then that is what it   13:26:04

22    is.                                                 13:26:23

23         Q.   Do you have any reason to doubt that this is   13:26:23

24    an Irico document?                                  13:26:26

25         A.   I have never seen this document.  I cannot   13:26:28
```

Page 82

1                UNITED STATES DISTRICT COURT

2              NORTHERN DISTRICT OF CALIFORNIA

3                     OAKLAND DIVISION

4

5   IN RE: CATHODE RAY TUBE (CRT)  ) MASTER FILE NO.
    ANTITRUST LITIGATION           ) CV-07-5944 JST
6   _____ )
                                    )
7   THIS DOCUMENT RELATES TO:       )
                                    )
8   ALL INDIRECT PURCHASER ACTIONS  )
    ALL DIRECT PURCHASER ACTIONS    )
9                                   )
            DEFENDANTS.             )
10  _____ )

11

12

            VIDEOTAPED DEPOSITION OF WANG ZHAOJIE

13

                          VOLUME III

14

              THURSDAY, SEPTEMBER 22, 2022

15

                  MACAU S.A.R., CHINA

16

17

18

19

20  FILE NO.  SF 5436468

21

22  REPORTED BY  MARK McCLURE, CRR

23               CAL CSR 12203

24

25

                                        Page 322

```
 1    sentence.                                           17:57:25

 2           MR. TALADAY:  I'm sorry, could the interpreter  17:57:27

 3    repeat the answer.                                  17:57:29

 4           MAIN INTERPRETER:  "I am not, and there was  17:57:34

 5    none."                                              17:57:35

 6           MR. TALADAY:  Thank you.                     17:57:36

 7           MR. RUSHING:  The second sentence is not     17:57:36

 8    responsive.                                         17:57:38

 9    BY MR. TALADAY:                                      17:57:46

10       Q.   Mr. Wang, are the references to Haier here  17:57:48

11    references to CPT products or CDT products?         17:57:51

12           MR. RUSHING:  Object to form.                17:57:55

13           THE WITNESS:  According to the text that's   17:58:29

14    shown, I believe it should refer to CPT.            17:58:32

15    BY MR. TALADAY:                                      17:58:32

16       Q.   Mr. Wang, am I correct that you testified   17:58:39

17    yesterday that, at some point, IRICO stopped        17:58:43

18    manufacturing CDT products?                         17:58:47

19           MR. RUSHING:  Object to form.  Lacks         17:58:50

20    foundation.                                         17:58:53

21           THE WITNESS:  That's correct.                17:59:09

22    BY MR. TALADAY:                                      17:59:10

23       Q.   And do you see in this document any references  17:59:10

24    to CDT products?                                    17:59:13

25           MR. RUSHING:  Object to the form.            17:59:16
```

Page 345

| | | |
|---|---|---|
| 1 | THE WITNESS:  No. | 17:59:25 |
| 2 | BY MR. TALADAY: | 17:59:26 |
| 3 | Q.   Does that help refresh your recollection as to | 17:59:28 |
| 4 | whether IRICO stopped producing CDT products prior to | 17:59:32 |
| 5 | July 2005? | 17:59:39 |
| 6 | MR. RUSHING:  Object to the form.  Lacks | 17:59:41 |
| 7 | foundation. | 17:59:44 |
| 8 | MR. BIRKHAEUSER:  Objection.  Leading. | 17:59:48 |
| 9 | THE WITNESS:  2005? | 18:00:12 |
| 10 | More or less around that time.  As for the | 18:00:24 |
| 11 | exact time frame, I think it should be around that time | 18:00:27 |
| 12 | frame. | 18:00:31 |
| 13 | BY MR. TALADAY: | 18:00:31 |
| 14 | Q.   Do you recall -- strike that. | 18:00:34 |
| 15 | To the best of your information, to what | 18:00:42 |
| 16 | extent did IRICO ever sell CDT products to U.S. | 18:00:46 |
| 17 | customers or to U.S. locations? | 18:00:52 |
| 18 | MR. RUSHING:  Object to form.  Lacks | 18:00:58 |
| 19 | foundation. | 18:01:01 |
| 20 | THE WITNESS:  There was not -- there was none. | 18:01:41 |
| 21 | The reason is that when CDT just came out, I was the | 18:01:48 |
| 22 | person in charge of the sales in that regard, and the | 18:01:53 |
| 23 | Sales Company did not have any product that was sold to | 18:01:58 |
| 24 | the U.S., so I believe it was impossible. | 18:02:02 |
| 25 | | 18:02:08 |

Page 346

```
 1    BY MR. TALADAY:                                    18:02:08

 2        Q.   Why was it impossible?                    18:02:08

 3            MR. RUSHING:  Object to the form.  Lacks   18:02:10

 4    foundation.                                        18:02:14

 5            THE WITNESS:  Two reasons.  One is that at 18:02:41

 6    IRICO, this CDT product was an experimental product. 18:02:43

 7    The quality of it was not stable, it was not good. 18:02:48

 8            The second reason was that the range or the 18:02:53

 9    scope of the magnetic field was narrow.  It was not easy 18:02:58

10    to adjust to an appropriate magnetic field range for the 18:03:03

11    North America market, so we did not have -- we were not 18:03:09

12    selling this product to North America.             18:03:15

13    BY MR. TALADAY:                                    18:03:15

14        Q.   So did the range of the magnetic field impact 18:03:22

15    whether the CDT could be sold to North America?    18:03:29

16            MR. RUSHING:  Object to form.  Lack of     18:03:36

17    foundation.                                        18:03:49

18            THE WITNESS:  For a CDT product, the magnetic 18:03:49

19    field and the range of it has to be adjusted to    18:04:16

20    different fields according to different regions, and it 18:04:20

21    was not easy to make the appropriate adjustment for the 18:04:24

22    North America market, so it was not sold to North  18:04:29

23    America.                                           18:04:36

24    BY MR. TALADAY:                                    18:04:36

25        Q.   Are you certain of that?                  18:04:40
```

Page 347

```
 1            MR. RUSHING:  Object to form.  Lack of        18:04:42

 2    foundation.                                           18:04:47

 3            THE WITNESS:  I'm certain about that because  18:05:06

 4    even within China, Chinese soil, even in the south part  18:05:09

 5    of China and the north part of China, we can still see  18:05:17

 6    the impact on Chinese soil.                           18:05:22

 7            MS. YANG:  Excuse me, this is Kaylee.  I think  18:05:32

 8    translation should be "Even within China, different   18:05:35

 9    territory will impact the magnetic field and make it  18:05:38

10    hard to adjust the magnetic field of the CDT          18:05:42

11    manufactured by IRICO."                               18:05:47

12            MR. TALADAY:  Kaylee, I think the question was  18:05:50

13    about CDT.                                            18:05:52

14            MS. YANG:  CDT.  Sorry.  My mistake.          18:05:55

15    BY MR. TALADAY:                                       18:06:16

16       Q.   Mr. Wang, let's move on again.               18:06:17

17            Mr. Wang, when you were being asked questions  18:06:28

18    by the plaintiffs, they showed you a number of documents  18:06:30

19    that were prepared by employees of other companies, such  18:06:38

20    as Chunghwa and Samsung.                              18:06:47

21            Do you recall that?                           18:06:50

22            MR. RUSHING:  Object to form.                 18:06:51

23            THE WITNESS:  I remember some.                18:07:16

24    BY MR. TALADAY:                                       18:07:16

25       Q.   And do you remember that, in a number of     18:07:18
```

Page 348

| | | |
|---|---|---|
| 1 | cases, Ms. Capurro would read certain words from those | 18:07:21 |
| 2 | documents? | 18:07:28 |
| 3 | MR. RUSHING:  Object to the form. | 18:07:31 |
| 4 | THE WITNESS:  I remember. | 18:07:53 |
| 5 | BY MR. TALADAY: | 18:07:53 |
| 6 | Q.   And in a number of cases, you responded with | 18:07:55 |
| 7 | some version of the words "it is as the document says." | 18:07:59 |
| 8 | Do you recall that? | 18:08:04 |
| 9 | MR. RUSHING:  Object to form. | 18:08:05 |
| 10 | THE WITNESS:  I remember. | 18:08:20 |
| 11 | BY MR. TALADAY: | 18:08:20 |
| 12 | Q.   So I want to make sure we don't have any | 18:08:23 |
| 13 | uncertainty because of the interpretation of your | 18:08:26 |
| 14 | answer. | 18:08:29 |
| 15 | MR. RUSHING:  Objection. | 18:08:42 |
| 16 | Is that a question? | 18:08:43 |
| 17 | MR. TALADAY:  No, I'm getting to the question. | 18:08:46 |
| 18 | BY MR. TALADAY: | 18:08:46 |
| 19 | Q.   So my question is, Mr. Wang, if you answered | 18:08:53 |
| 20 | with some version of the words "it is as the document | 18:08:58 |
| 21 | says," you were -- strike that. | 18:09:01 |
| 22 | Do you know whether the information that was | 18:09:05 |
| 23 | written by the employee of the other company was | 18:09:09 |
| 24 | accurate? | 18:09:12 |
| 25 | MR. RUSHING:  Objection.  This is terribly | 18:09:13 |

Page 349

# **<u>EXHIBIT 4</u>**



STATE of NEW YORK        )
                         )        ss:
COUNTY of NEW YORK       )


### *CERTIFICATE OF ACCURACY*

This is to certify that the attached document, *"IRI-CRT-00003490 – IRI-CRT-0003497"*, originally written in *Chinese*, is to the best of our knowledge and belief, a true, accurate and complete translation into *English*.


Dated: December 17, 2018

Seth Wargo
Consortra Translations

Sworn to and signed before ME this
1 7th day of *December* ,
2018.

Notary Public

JAMES G MAMERA
Notary Public - State of New York
No. 01MA6157195
Qualified in New York County
My Commission Expires Dec. 4, 2022

D☐P☐ Exhibit 8392
Deponent ZHANG
Date 3/4/19 Rptr AT

Your
legal
translation
partner

006

# IRICO Group Corporation
# Auditing Department Document

IRICO Auditing (2001) No.1

### A Brief on Auditing Results for IRICO (USA) Inc.

To IRICO Group Corporation,

Under the instructions from IRICO Group Corporation leadership, our department assembled a three-person audit team led by department head ZHANG Xingxi and we served an audit notice to IRICO (USA) Inc. via fax on 27 April 2001. The audit team arrived in Fremont, California, USA on 27 May shortly before commencing field audit work. First of all, the audit team requested LIU Feng, General Manager of IRICO (USA) Inc., to supply documents and filings that are required to perform the audit, such as accounting documents, accounting books, and financial statements dating back to the year when the company was incorporated. However, the company's General Manager LIU Feng claimed that, before 1998, the company's finance function had been controlled by HUANG Xueli, the shareholder acting on behalf of the company's US investors and they didn't hand over accounting records when they pulled out of the company in 1998, and hence he could not supply such records. With regard to accounting records dated after 1998, General Manager LIU Feng alleged because the company was transferred to INB on 10 April 2001, which meant that all property of the original company including such records are in the possession of the acquirer and the acquirer's consent is required in order to access such records. After repeated negotiations initiated by the audit team, LIU Feng only provided records as follows:

1

IRI-CRT-00003490 - Translation

007

    1.  Stubs of checks written by the company to external parties from 1 January 1998 to 30 April 2001;

    2. Bank statements from 1 January 2000 to 30 April 2001;

    3. IRICO (USA) Inc.'s Sale and Purchase Agreement;

    4. A photocopy of the Resolutions of the 2nd-term Board of Directors, IRICO (USA) Inc.

    Given that IRICO (USA) Inc. was already sold to US-based INB by LIU Feng without authorization on 10 April 2001, LIU Feng refused to provide accounting records required for the performance of the proposed audit, such as annual financial reports and accounting documents that are related to the company's business operations. As a result, the basic requirements for the performance of an audit could not be met. And given limitations on auditor's statutory duties and powers as well as means of inspection, the financial statements of IRICO (USA) Inc. under the audit, which would truly reflect its accounting information and lead to complete and accurate audit results, could not be revealed, making it impossible for the audit team to duly carry out its audit work. As a result, the audit team could only conduct some partial investigations over IRICO (USA) Inc. based on limited materials provided by LIU Feng, such as check stubs, some bank statements, and IRICO (USA) Inc.'s Sale and Purchase Agreement.

    In carrying out the investigations, the audit team has mainly performed the following tasks in relation to the materials provided by LIU Feng:

    1. Recorded each stub of checks written by the company since 1998;

    2. Categorized the expenses by economic activity in line with the available stubs of checks;

    3. Checked bank statements from 1 January 2000 to 30 April 2001 one by one;

    4. Checked corporate credit card expenses with transaction value above 1,000 US dollars since 1998;

    5. Reviewed IRICO (USA) Inc.'s Sale and Purchase Agreement signed by LIU and sought advice from a local law firm in relation to the content of the agreement;

    6. Conducted inquiries and consultations with relevant US authorities in relation to company profile, shareholder identities, and corporate credit profile of the acquirer INB Co..

2

008

I. Company Profile

Based in Fremont, California, USA, IRICO (USA) Inc. was initially established as a joint venture between IRICO Group Corporation and its US partners. Incorporated in July 1995, the company had registered capital of 1.75 million US dollars. In particular, China National Electronics Imp & Exp Caihong Co. had a 34.3% stake in the company by contributing 600,000 US dollars in cash; Caihong (Hong Kong) Co. had a 45.7% stake in the company by contributing 800,000 US dollars in cash; HUANG Xueli had a 10% stake (including awarded performance shares worth 50,000 US dollars) by contributing 125,000 US dollars in cash, totalling 175,000 US dollars in cash; HUANG Maike had a 10% stake by contributing 175,000 US dollars in cash. In October 1995, IRICO Group Corporation dispatched LIU Feng and ZHU Jian to the US. ZHU Jian hasn't been to the US since March 1997 due to visa issues.

According to LIU Feng, an agreement was reached on 26 February 1998 for the US investors MS HUANG Xueli and MR HUANG Maike to unload their shareholdings in the company as collaboration with the siblings had been allegedly extremely difficult. And the brother and the sister refunded capital in the amount of 1 million US dollars to the company in 1998. Since then, the company has been entirely run by us, with LIU Feng solely in charge. During the audit, it was found that LIU Feng obtained permanent resident visa (green card) in the US on 20 July 2000. On 10 April 2001, the company was sold by its general manager LIU Feng to US-based INB Co. without authorization.

II. Company revenue and expenditures

1. Situation Prior to 1998

As LIU Feng failed to supply accounting documents for the company dated before 1998, the audit team could not verify the company's operational results prior to 1998.

2. Situation since 1998

① Based on check stubs provided by LIU Feng, the company posted expenditures of 914,670.45 US dollars cumulatively from 1 January 1998 to 30 April 2001;

3

009

    ② Based on check stubs from the company's opening bank as supplied by LIU Feng, the company procured fixed assets worth 40,417.48 US dollars cumulatively from 1 January 1998 to 30 April 2001;

    ③ As the company did not provide bank statements for 1998 and 1999, the audit team could not verify its operating revenue, fund investment gains or interest income during both years. Based on bank statements from the company's opening bank as supplied by LIU Feng, the company posted operating revenue of 122,943.00 US dollars and operating costs of 112,896.00 US dollars from 1 January 2000 to 30 April 2001, respectively.

    ④ Based on bank statements from the company's opening bank as supplied by LIU Feng, the company posted interest income of 12,105.59 US dollars from 1 January 2000 to 30 April 2001, including:

    10,444.06 US dollars in 2000

    1,661.53 US dollars in 2001.

    ⑤ Based on bank statements and fixed asset lists, the company had net assets of 119,581.42 US dollars as of 30 April 2001, including:

        Net value of fixed assets of 30,364.17 US dollars

        Bank deposits of 89,217.25 US dollars.

    III. Investigations over Sale and Purchase Agreement

    IRICO (USA) Inc. was sold to US-based INB Co. by LIU Feng on 10 April 2001. As far as the Sale and Purchase Agreement provided by LIU Feng is concerned, the audit team entrusted Mr. SHI Xiaodong, General Manager of San Francisco-based container service unit of China Ocean Shipping (Group) Company, to seek legal consultation with law firm Morrison and Foerster LLP.

4

CONFIDENTIAL                                                    IRI-CRT-00003493 - Translation

010

According to Cedric C. Chao, a lawyer at Morrison and Foerster LLP, the signing process and basis of the agreement itself complied with US laws.

Taking into account the lawyer's opinions, the audit team believes that the Sale and Purchase Agreement signed by LIU Feng violated the parent company's intent and damaged the parent company's interests in the following ways:

1. It is against the spirit and intent of the resolutions reached by the IRICO (USA) Inc.'s Board of Directors on 9 March 2000. IRICO (USA) Inc.'s Board of Directors fully entrusted LIU Feng to sell the company on 9 March 2000 under the conditions that the transaction price shall be 1 million US dollars and total consideration for the deal shall be delivered by 31 December 2000 at the latest. The Board of Directors did not authorize the provision in the agreement signed by LIU Feng that IRICO Group Corporation shall support the company to realize annual net profit of 700,000 US dollars as a condition. That was tantamount to selling the company for free and resulted in asset losses on the part of IRICO (USA) Inc.

2. As the company name IRICO (USA) Inc. was also transferred to the acquirer as part of the deal, the acquirer would continue to use the corporate name IRICO (USA) Inc. to conduct business. In case the acquirer is engaged in any improper or illegal operating activity, it would damage the reputation of IRICO Group Corporation to some extent. And in case that IRICO Group Corporation plans to start a subsidiary again in the US, it would not be able to use the name IRICO (USA) Inc. any longer.

As far as the agreement signed by LIU Feng is concerned, Cedric C. Chao advised that we could sue LIU Feng and the acquirer INB Co. on the ground that "LIU Feng signed the Sale and Purchase Agreement against the spirit and intent of the resolutions reached by the IRICO (USA) Inc.'s Board of Directors on 9 March 2000", demanding to terminate the performance of the agreement.

Nonetheless, if the dispute concerning the selling of IRICO (USA) Inc. is to be resolved via a lawsuit in the US, IRICO Group Corporation would have to pay legal fees of a significant amount. According to Cedric C. Chao, a lawsuit that costs 100,000 US dollars in legal fees is commonplace in the US.

5

011

In order to appropriately handle this issue, the audit team sought consultations with Mr. SHI Xiaodong, General Manager of San Francisco-based container service unit of China Ocean Shipping (Group) Company and the latter's Financial Director, MS ZHOU Yuzhen. They think it is fairly easy to register a company in the US and pursuing a lawsuit in the US that involves hefty legal fees would be meaningless and unworthy since currently IRICO (USA) Inc. was only a shell company without property investments or any debt dispute in the country.

In order to get more information about the acquirer, the audit team visited a number of agencies of the California government to make inquiries about INB Co.. Incorporated on 24 October 1997, INB's registered address is 3695 STEVENSON BLVD BLD STE 236 FREMONT, CA 94538. According to a corporate filing with the California state government dated 12 January 1998, INB had only one shareholder, LIU Feng, with equity capital of 50,000 US dollars. In a corporate filing dated 18 March 1998, INB's CEO, secretary, and financial director positions were all assumed by LIU Feng. In a corporate filing dated 7 May 2001, the person assuming general manager, secretary, and financial director positions at INB changed into SUN Xiaolin.

According to LIU Feng, he initially established INB Co. and held a stake in the company on behalf of Hong Kong resident SUN Xiaolin, before having the company transferred to SUN Xiaolin on 30 March 2001. Later on, LIU Feng, on behalf of IRICO Group Corporation, signed the IRICO (USA) Inc.'s Sale and Purchase Agreement with SUN Xiaolin on 10 April.

IV. Outstanding issues

1. LIU Feng sold IRICO (USA) Inc. without authorization and refused to provide materials requested by the auditing department for the performance of the proposed audit, such as annual financial reports and accounting documents related to the company's business operations, making it impossible for the audit team to duly carry out its audit work. Such actions constituted serious violation of the company's rules and policies.

2. By reviewing the stubs of checks written by the company since 1998, the audit team found that the company paid 400,000 US dollars in three batches in April 1999, for the purposes of short-term fund investments and expenses related to the company's electronics, tooling, and other businesses in 1998 and 1999.

6

012

However, the audit team could not verify related revenue as LIU Feng refused to provide relevant financial statements.

3. As the general manager of IRICO (USA) Inc., LIU Feng sold the company to US-based INB Co. without approval from IRICO Group Corporation, resulting in losses of state-owned assets. Such an action constituted the violation of regulations related to supervision and management of state-owned enterprises' assets.

4. IRICO (USA) Inc.'s Sale and Purchase Agreement hurt the interests of IRICO Group Corporation. First of all, pursuant to the resolutions of the 2nd-term Board of Directors, IRICO (USA) Inc., LIU Feng was entrusted to sell the company for 1 million US dollars, but the terms of the agreement dictate that IRICO Group Corporation shall support the company to realize annual net profit of 700,000 US dollars as a condition, which not only runs contrary to the original intention of the resolutions but also results in asset losses on the part of IRICO Group Corporation. Second, in case the acquirer is engaged in any improper or illegal operating activity, it would damage the reputation of IRICO Group Corporation to some extent as the company name IRICO (USA) Inc. was also transferred to the acquirer as part of the deal and the acquirer continues to use the corporate name IRICO (USA) Inc. to conduct business.

5. In a corporate filing with California state government dated 18 March 1998, the acquirer INB's CEO, secretary, and financial director positions were all assumed by LIU Feng and the person assuming general manager, secretary, and financial director positions at INB was changed into SUN Xiaolin in a corporate filing dated 7 May 2001.

V. Suggestions

LIU Feng was apparently involved in suspected violations of laws and discipline, though there is insufficient evidence for now. To investigate LIU Feng's wrongdoings, there exist two major challenges: first, LIU Feng lives in the US, he holds a Green Card, it is impossible he would return to China; second, evidence collection would involve US laws, which suggests too many big obstacles and hefty costs, making it hard to do. To pursue a civil case, IRICO Group Corporation would have to pay a significant amount of US dollars for legal fees, which makes little sense as the potential gains could not make up for the losses.

CONFIDENTIAL                                                IRI-CRT-00003496 - Translation

013

If IRICO Group Corporation takes administrative actions against LIU Feng in accordance with relevant management processes, such as removing LIU Feng's employee status, it could be the best outcome for him as such a scenario is what he desires. Therefore, if there exist other potential solutions, any immediate administrative actions should be refrained.

Given the above reasoning, we have following recommendations in relation to IRICO (USA) Inc. and LIU Feng's situation:

1. As LIU Feng sold IRICO (USA) Inc. without an approval from IRICO Group Corporation, which was against the parent company's intent and damaged the parent company's interests, it is advisable to not acknowledge IRICO (USA) Inc.'s Sale and Purchase Agreement signed between LIU Feng and INB while awaiting an opportunity to pursue and reserve the rights to pursue legal action against LIU Feng;

2. Continue to negotiate with LIU Feng, urging him to immediately terminate the Sale and Purchase Agreement he signed with INB Co. and execute the resolutions reached by the IRICO (USA) Inc.'s Board of Directors on 9 March 2000 by selling the company at the price of 1 million US dollars.

3. IRICO Group Corporation should take administrative actions against LIU Feng in accordance with relevant management processes at an appropriate time.

4. As efforts aimed at dealing with IRICO (USA) Inc. and LIU Feng's situation would involve cross-border issues and any international legal actions would be confronted with deep policy implications and too many thorny obstacles, coupled with limitations on statutory duties and powers as well as means of inspection, it would be very hard for IRICO Group Corporation to pursue this case. It is recommendable to seek advices from relevant higher-level authorities on how to deal with it.

27 July 2001
Auditing Department
(Chop) IRICO Group Corporation

| CC: Supervisory Office | Archive (2) |
| --- | --- |
| Auditing Office | Printed and Distributed on 27 July 2001 |
| Printed by: QING Bei      Reviewed by: ZHANG Xingxi | No. of Copies: 4 |

8

IRI-CRT-00003497 - Translation

# 彩 虹 集 团 公 司
# 审 计 部 文 件

彩审[2001]1号

## 关于彩虹（美国）公司审计情况汇报

彩虹集团公司：

根据集团公司领导的指示，我部组成了以部长仉兴喜为组长的三人审计小组，2001年4月27日我部以传真的方式向彩虹（美国）公司下达了审计通知。审计小组于5月27日到达美国加利福尼亚州福利蒙特市，随即展开审计工作。首先审计小组要求公司总经理刘丰提供自公司成立以来历年的会计凭证、帐簿和财务报告等实施审计所必需的资料。但刘丰总经理称，1998年以前，公司的财务是由美方股东黄雪莉控制，98年美方撤股时，未将会计资料移交我方，因而无法提供；98年以后的会计资料因公司已在2001年4月10日转让给INB公司，原公司的一切物品归受让方所有，若要求提供须经受让方同意。经过审计小组多次交涉，刘丰仅提供了以下资料：

1

由 扫描全能王 扫描创建

CONFIDENTIAL

1. 1998年1月1日至2001年4月30日公司对外开具的支票存根;

2. 2000年1月1日至2001年4月30日的银行对帐单;

3. 彩虹（美国）公司转让合同;

4. 彩虹（美国）公司第二届董事会决议（复印件）;

由于刘丰将彩虹（美国）公司已在2001年4月10日擅自转让给美国INB公司，刘丰对审计所需的与经营活动有关的财务决算报表、会计凭证等会计资料不予提供，无法满足审计最基本的条件，受法定职责、权限和检查手段的局限，无法揭示被审计的彩虹（美国）公司会计报表反映会计信息的真实情况，作出完整、正确的审计结果，使正常的审计工作无法进行。审计小组只能根据刘丰所提供的支票存根和部分银行对帐单、彩虹（美国）公司转让合同等资料对彩虹（美国）公司的一些情况进行调查了解。

在调查了解实施过程中审计小组主要对其提供的资料进行了以下工作:

1. 对其所提供1998年以来支出的支票存根进行了逐一登记;

2. 对登记的支出按支票存根所列的经济内容进行了分类;

3. 对2000年1月1日至2001年4月30日银行对帐单进行了逐一核查;

4. 对98年以来1000美元以上的公司信用卡支出进行了核查。

5. 对其所签定的公司转让合同进行了审查，并就合同内容咨询了当地的律师行。

6. 对受让方 INB 公司的基本情况以及股东、公司资信等情况

2

 由 扫描全能王 扫描创建

CONFIDENTIAL                                                          IRI-CRT-00003491

向美国政府有关部门进行了调查咨询。

一、 公司基本情况

彩虹（美国）公司是集团公司与美方合资成立的合资公司，地址位于美国加利福尼亚州福利蒙特市。公司成立于1995年7月，注册资本175万美元，其中：彩虹进出口公司投资60万美元现金，占34.3%股权；彩虹（香港）公司投资80万美元现金，占45.7%股权；黄雪莉投资12.5万美元现金，送其干股5万美元，合计17.5万美元，占10%股权；黄麦克投资17.5万美元现金，占10%股权。1995年10月彩虹集团公司派刘丰、竺简赴美。1997年3月以后竺简因签证问题在没有去美国。

据刘丰反映由于与合资外方黄氏兄妹的合作极为困难，1998年2月26日与外方达成协议，美方从公司撤股，并在1998年一年内归还我方100万美元资本金。自此，该公司转由我方独自经营，由刘丰一人负责，审计调查时得知刘丰于2000年7月20日取得美国永久居住身份（绿卡）。2001年4月10日公司被总经理刘丰擅自转让给美国INB公司。

二、公司财务收支情况

1． 1998年以前的情况

由于刘丰未能提供 1998 年以前的公司会计资料，因此，无法对1998年以前的经营情况进行核实。

2． 1998年以来的情况

① 据刘丰提供的支票存根资料，公司自 1998 年 1 月 1 日

3

 由 扫描全能王 扫描创建

IRI-CRT-00003492

至 2001 年 4 月 30 日累计发生费用 914,670.45 美元。

　② 根据刘丰提供的公司开户银行支票存根，公司自 1998 年 1 月 1 日至 2001 年 4 月 30 日累计购置固定资产 40,417.48 美元。

　③ 由于公司未提供 98、99 年度的银行对账单，其 98、99 年度的经营收入、基金投资收益和利息收入等无法核实。依据刘丰提供的公司开户银行 2000 年和 2001 年银行对账单，公司 2000 年 1 月 1 日至 2001 年 4 月 30 日累计主营业务收入 122,943.00 美元，累计主营业务成本　112,896.00 美元。

　④ 依据刘丰提供的公司开户银行 2000 年和 2001 年银行对账单，公司 2000 年 1 月 1 日至 2001 年 4 月 30 日利息收入 12,105.59 美元。其中：

　　2000 年　10,444.06 美元

　　2001 年　　1,661.53 美元

　⑤ 依据刘丰提供的公司开户银行对账单和固定资产清单，截止 2001 年 4 月 30 日，公司净资产 119,581.42 美元。其中：

　　固定资产净值　　　30,364.17 美元

　　银行存款　　　　　89,217.25 美元

三、 合同调查情况

　2001 年 4 月 10 日彩虹（美国）公司被刘丰转让给美国 INB 公司。根据刘丰所提供的转让合同书，审计小组委托中国远洋运输（集团）总公司在旧金山所设的集装箱服务有限公司总经理石小东先生，找到美国美富律师事务所对该合同进行了法律方面的

4

由 扫描全能王 扫描创建

CONFIDENTIAL

咨询。该律师事务所赵启民律师认为就合同本身来讲，合同签定的程序、依据均符合美国的法律。

综合律师的意见，审计小组认为刘丰所签订的转让合同有以下方面是违背了集团公司意愿并损害了集团公司利益的：

1、不符合彩虹（美国）公司2000年3月9日董事会决议精神和意愿。彩虹（美国）公司2000年3月9日董事会全权委托刘丰出让彩虹（美国）公司，是以100万美金的价格出让，且转让资金收回最迟应在2000年12月31日前，并没有象刘丰所签订的合同中所写的同时要彩虹集团公司每年支持其70万美金利润作为前提。这实际上是变相将公司无偿转让了，并造成彩虹（美国）公司资产的损失。

2、由于彩虹（美国）公司转让的同时"彩虹（美国）公司"的名称也被转让了，受让方继续使用彩虹（美国）公司来做生意，如有不正当或非法经营行为将会给彩虹集团的声誉造成一定的损害。例如彩虹集团再来美国投资注册公司将不能使用"彩虹（美国）公司"这个名称。

对于刘丰转让彩虹（美国）公司所签定的合同，美国律师事务所赵启民律师认为可按"刘丰没有按照彩虹（美国）公司2000年3月9日董事会决议精神和意愿签定了本转让合同"为理由起诉刘丰和买方INB公司，终止其合同的执行。

但如在美国通过法律诉讼打官司解决彩虹（美国）公司转让一事，彩虹集团将要支付一笔相当数额的美金，按美国律师赵启

5

 由 扫描全能王 扫描创建

IRI-CRT-00003494

民所说，在美国打一场官司花10万美金是一件很平常的事。

就此问题审计小组又专门与中国远洋运输（集团）总公司在旧金山所设的集装箱服务有限公司总经理石小东先生、财务总监周玉珍女士进行了交谈咨询。他们认为在美国注册公司是一件很容易的事情，如目前彩虹（美国）公司在美国没有不动产投资，没有债权债务纠纷，仅仅是一个空壳公司，在美国起诉打官司花上一大笔律师费，意义不大，得不偿失。

为了解受让方公司的情况，审计小组先后到加州政府多个部门查询 INB 公司的情况。IBN 公司成立于1997年10月24日，注册地点是 3695 STEVENSON BLVD BLD STE 236  FREMONT, CA 94538 。1998年1月12日上报州政府的公司资料显示只有一名股东为刘丰，股本 50,000 美元。1999年3月18日上报资料中公司 CEO、秘书、财务总监均为刘丰，2001年5月7日公司上报的资料将总经理、秘书、财务总监变更为孙晓林。

据刘丰讲：INB 公司是香港人孙晓林委托他注册成立并持股，直到2001年3月30日才被其转到孙晓林名下的。4月10日他又代表彩虹与孙晓林签定了转让彩虹（美国）公司的。

四、存在的问题

1、刘丰将彩虹（美国）公司擅自转让并拒绝向审计部门提供所需的与经营活动有关的财务决算报表、会计凭证等审计资料，使正常的审计工作无法进行，是严重的违规违纪行为。

2、从刘丰所提供的1998年以来支出的支票存根中审计小组发

6

 由 扫描全能王 扫描创建

CONFIDENTIAL

IRI-CRT-00003495

012

现，公司99年4月分三次支付40万美元，用于短期基金投资和98、99年度经营电子产品、模具等业务的费用支出，因刘丰不提供有关财务帐目，所以无法对此收益情况进行核实。

3、公司总经理刘丰未经集团公司同意，于 2001 年 4 月 10 日擅自将彩虹（美国）公司转让给美国 INB 公司，造成国有资产流失，违反了国有企业财产监督管理的有关规定。

4、转让公司的合同中，损害了彩虹集团公司的利益。首先，第二届董事会决议委托其以 100 万美元转让，而合同中却以彩虹集团须每年支持其获得 70 万美元的利润为条件，不仅违背了董事会决议的原意，而且使公司资产造成损失；其次，在转让的同时"彩虹（美国）公司"的名称也被转让了，受让方继续以彩虹（美国）公司的名称经营，如有不正当或非法经营行为将会给彩虹集团的声誉造成一定的损害。

5、在 1999 年 3 月 18 日上报加州政府资料中受让方 INB 公司的 CEO、秘书、财务总监均为刘丰，2001 年 5 月 7 日公司上报的资料才将总经理、秘书、财务总监变更为孙晓林。

五、建议

刘丰涉嫌违法违纪问题明显，但目前证据不足。刘丰问题如要查证有两大难点：一是刘丰在美国，持有绿卡，不可能再回国；二是取证涉及到美国的法律问题，障碍太大太多，费用也不会少，很难做到。作为民事案子，可打民事官司，但彩虹集团将要支付一笔相当数额的美金，意义不大，得不偿失。

7

 由 扫描全能王 扫描创建

IRI-CRT-00003496

013

集团公司依据有关管理制度对刘丰其作出行政处理,如开除厂籍,这可能是刘丰最好的结局,也是刘丰所希望的。所以,在还有其他解决问题的可能情况下,不宜立即作出行政处理。

签于上述情况,对彩虹(美国)公司及刘丰问题的处理建议如下:

1、刘丰未经集团公司同意擅自转让彩虹(美国)公司,违背了集团公司意愿并严重损害了集团公司的利益,对其与美国 INB 公司所签定的彩虹(美国)公司的转让合同不予承认,等待机会,追究和保留追究对刘丰的法律责任。

2、继续和刘丰交涉,要求其立即终止与美国 INB 公司所签定的转让合同,执行彩虹(美国)公司 2000 年 3 月 9 日董事会决议,按 100 万美金的价格转让。

3、集团公司应依据有关管理制度在适当时候对其作出行政处理。

4、由于彩虹(美国)公司及刘丰问题的处理涉外跨国,而涉外案件政策性强,障碍太大太多,集团公司受法定职责、权限和检查手段的局限,很难查处此案,建议请示上级机关由有关部门处理。

二00一年七月二十七日

抄送:监察处                                          档(2)

审计办公室                              2001 年 7 月 27 日印发

打印:庆蓓          校对:仇兴喜          份数:4

8

 由 扫描全能王 扫描创建

CONFIDENTIAL                                                    IRI-CRT-00003497

# <u>EXHIBIT 5</u>

# (FILED UNDER SEAL)

# **EXHIBIT 6**

Mario N. Alioto, Esq. (56433)
Lauren C. Capurro, Esq. (241151)
TRUMP, ALIOTO, TRUMP & PRESCOTT, LLP
2280 Union Street
San Francisco, CA 94123
Telephone:   (415) 563-7200
Facsimile:    (415) 346-0679
malioto@tatp.com
laurenrussell@tatp.com

*Lead Counsel for the Indirect Purchaser Plaintiffs*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Master File No. 4:07-cv-05944-JST (N.D. Cal.)<br><br>MDL No. 1917 |
| This Document Relates to:<br><br>ALL INDIRECT PURCHASER ACTIONS | **INDIRECT PURCHASER PLAINTIFF DONNA ELLINGSON-MACK'S OBJECTIONS AND RESPONSES TO DEFENDANTS IRICO GROUP CORP. AND IRICO DISPLAY DEVICES CO., LTD.'S FIRST SET OF INTERROGATORIES** |

**PROPOUNDING PARTY:**     **IRICO GROUP CORP. AND IRICO DISPLAY DEVICES CO., LTD.**

**RESPONDING PARTY:**     **INDIRECT PURCHASER PLAINTIFF DONNA ELLINGSON-MACK**

**SET NUMBER:**     **ONE**

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Indirect Purchaser Plaintiff Donna Ellingson-Mack ("Plaintiff Ellingson-Mack") hereby responds and objects to the First Set of Interrogatories propounded by Defendants Irico Group Corp. and Irico Display Devices Co., Ltd. ("Defendants"), as set forth below.

1

### **PRELIMINARY STATEMENT**

2      Each of the following responses is subject to all objections of and concerning relevance,

3  materiality, and admissibility, as well as to all and any other objections on any ground requiring

4  exclusion of any response if introduced in Court. All evidentiary objections and grounds

5  accordingly are expressly reserved. Furthermore, Plaintiff Ellingson-Mack's decision, now or in

6  the future, to provide information notwithstanding the objectionable nature of the Interrogatories

7  shall not be construed as (a) an admission that she agrees with any of Defendants' definitions or

8  characterizations contained therein, (b) an admission that the information sought likely will lead

9  to the discovery of admissible evidence, or (c) an agreement that requests for similar information

10  will be treated in a similar manner.

11      For purposes of these Interrogatories, Plaintiff Ellingson-Mack defines the term "CRT

12  Products" as televisions and computer monitors containing CRTs.

13      Plaintiff Ellingson-Mack's responses to the First Set of Interrogatories are made without

14  prejudice to her right to introduce any or all evidence of any kind in this case.

15      The specific responses and objections set forth below are based upon information now

16  known. Plaintiff Ellingson-Mack has not yet completed discovery or preparation for trial in this

17  case, and, therefore, reserves the right to amend, modify, or supplement any general or specific

18  objection or response.

19      Nothing in her responses to these Interrogatories shall be construed as an admission by

20  Plaintiff Ellingson-Mack going to the competence, admissibility, relevance, or materiality of any

21  fact or document, or as an admission of the truth or accuracy of any characterization of any

22  information of any kind sought by these Interrogatories.

23      Plaintiff Ellingson-Mack reserves her right to object to use of her responses herein, or the

24  subject matter thereof, on any ground in this or in any subsequent proceeding, including, without

25  limitation, the right to object on any ground at any time to the use of such responses in any

26  discovery procedures in this or any proceeding, and/or at trial.

27

28

Plaintiff Ellingson-Mack's responses to the Interrogatories are subject to the provisions of the Stipulated Protective Order entered by the Court June 18, 2008 (Document 306) (the "Protective Order"). Plaintiff Ellingson-Mack's Interrogatory Responses hereby are designated "Confidential" in accordance with the provisions of the Protective Order.

Each of the General Objections herein is considered applicable to and is hereby incorporated into each and every response by Plaintiff Ellingson-Mack to the Interrogatories, and each response is given without waiving any of the General Objections. The assertion of any General Objection in response to any Interrogatory should not be considered a waiver of the remaining General Objections. By making the responses herein, Plaintiff Ellingson-Mack does not concede that the information provided is relevant to the claims or defenses of any party or reasonably calculated to lead to the discovery of admissible evidence.

## GENERAL OBJECTIONS

1.      Plaintiff Ellingson-Mack objects to, and will not answer, the Interrogatories to the extent they seek discovery of information, legal analysis, and/or strategies concerning any Class Certification motion Indirect Purchaser Plaintiffs may file under Rule 23 of the Federal Rules of Civil Procedure. Such information, legal analysis, and/or strategies are protected from disclosure by the attorney-client privilege and/or the work-product doctrine.

2.      Plaintiff Ellingson-Mack objects to, and will not answer, the Interrogatories to the extent Defendants intend or purport to impose obligations beyond those required or permitted by the Federal Rules of Civil Procedure and the Local Rules of the Northern District of California, or to the extent they are outside the scope of any order or opinion of this Court or of the Special Master, or contrary to any applicable rules of law.

3.      Plaintiff Ellingson-Mack objects to, and will not answer, the Interrogatories to the extent they comprise premature "contention interrogatories," the answers to which are dependent on merits and/or expert discovery. Pursuant to Rule 33(a)(2) of the Federal Rules of Civil Procedure, Plaintiff Ellingson-Mack, as necessary or appropriate, will respond to proper "contention interrogatories" after merits and expert discovery is complete, and/or after some

3

other time as directed by the Court or Special Master. *See, e.g., In re Convergent Technologies Securities Litigation*, 108 F.R.D. 328, 336 N.D. Cal. 1985) ("There is considerable recent authority for the view that the wisest general policy is to defer propounding and answering contention interrogatories until near the end of the discovery period."); *In re eBay Seller Antitrust Litigation*, No. C 07-1882 JF (RS), 2008 WL 5212170, at *1 (N.D. Cal. Dec. 11, 2008) ("Courts using their Rule 33(a)(2) discretion generally disfavor contention interrogatories asked before discovery is undertaken.").

4.     Plaintiff Ellingson-Mack objects to the Interrogatories, including the Definitions and Instructions set forth therein, to the extent (a) they seek to elicit information relating or referring to matters not raised by the pleadings, (b) they seek to elicit information that is not relevant to the claims or defenses of the parties to this action, (c) they seek to elicit information that is not within Plaintiff Ellingson-Mack's possession, custody, or control, or (d) they seek to elicit information not reasonably calculated to lead to the discovery of admissible evidence.

5.     Plaintiff Ellingson-Mack objects to, and will not answer, the Interrogatories to the extent they seek information protected by the attorney-client privilege, work-product doctrine, or any other applicable privilege, protection, immunity, or rule (collectively, "Privileged Information"), including, without limitation, information concerning communications between Plaintiff Ellingson-Mack's attorneys, and/or between Plaintiff Ellingson-Mack and her attorneys, made during, or in anticipation of, litigation. Any inadvertent disclosure of such information is not intended to, and shall not, constitute a general or specific waiver, in whole or in part, of the foregoing privileges or immunities, or the subject matter thereof. Relatedly, any inadvertent disclosure of such information is not intended to, nor shall it, constitute a waiver of the right to object to any use of such information, and any such disclosure shall be treated as specified in Rule 26(b)(5)(B) of the Federal Rules of Civil Procedure.

6.     Plaintiff Ellingson-Mack objects to, and will not answer, the Interrogatories to the extent that (a) they seek the premature disclosure of expert material subject to Rule 26(a)(2)(C) of the Federal Rules of Civil Procedure, and/or (b) they seek disclosure of information

4

concerning any person or entity whom Indirect Purchaser Plaintiff Donna Ellingson-Mack will not designate as an opinion or other witness at trial.

7.      Plaintiff Ellingson-Mack objects to the Interrogatories, including the Definitions and Instructions set forth therein, to the extent they seek information that is equally accessible to Defendants as it is to Plaintiff Ellingson-Mack, or that has been provided by other parties or witnesses.

8.      Plaintiff Ellingson-Mack objects to the Interrogatories, including the Definitions and Instructions set forth therein, to the extent they are cumulative to or duplicative of other Interrogatories.

9.      Plaintiff Ellingson-Mack objects to, and will not answer, the Interrogatories to the extent that they seek confidential or proprietary business information and research.

10.      Plaintiff Ellingson-Mack objects to the purported definition of the terms "You" and "Your" because they are vague, ambiguous, overly broad, and unduly burdensome, as they seek information that is neither relevant nor reasonably calculated to lead to the discovery of admissible information. Plaintiff Ellingson-Mack further objects to the inclusion of "attorneys, agents, and representatives of any of the above, and all persons acting or purporting to act on their behalf," within this Definition to the extent it purports to encompass information that is protected by attorney-client privilege and/or work-product doctrine, or any other applicable privilege, protection, immunity, or rule.

11.      Plaintiff Ellingson-Mack objects to the purported definition of the term "Document(s)" to the extent it attempts to impose burdens on her greater than or inconsistent with those imposed by the Federal Rules of Civil Procedure or the Local Rules for the United States District Court for the Northern District of California.

12.      Plaintiff Ellingson-Mack objects to the Interrogatories, including the Definitions and Instructions set forth therein, to the extent they purport to require Plaintiff Ellingson-Mack to identify documents supportive of a response on the ground that any such information is subject to the attorney-client privilege and/or work product doctrine at this stage of this case.

13.     Plaintiff Ellingson-Mack objects to the Interrogatories, including the Definitions and Instructions set forth therein, to the extent any one or more or all of them assume disputed facts or legal conclusions. Any response or objection herein is without prejudice to this objection and Plaintiff Ellingson-Mack's right to dispute such purported facts or legal conclusions.

## SPECIFIC OBJECTIONS AND RESPONSES

**INTERROGATORY NO. 1:**

Identify all Persons who participated or assisted in the preparation of Your responses to these interrogatories.

**RESPONSE NO. 1:**

In addition to her General Objections listed above, Plaintiff Ellingson-Mack objects to Interrogatory No. 1 because it calls for the disclosure of privileged information, including without limitation, information subject to the attorney-client privilege and/or the work product doctrine. Plaintiff Ellingson-Mack also objects to Interrogatory No. 1 because it seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waving the objections stated above, Plaintiff Ellingson-Mack responds that her counsel participated or assisted in the preparation of these responses.

**INTERROGATORY NO. 2:**

Separately identify each acquisition of a CRT or CRT Product upon which You base any claim in this action, including without limitation the date and place of acquisition, the type and manufacturer of each CRT acquired, and the Identity of each Person involved in the acquisition and the time period and nature of each Person's involvement.

As part of Your response, Identify each Document that supports Your response.

**RESPONSE NO. 2:**

In addition to the General Objections listed above, Plaintiff Ellingson-Mack objects to Interrogatory No. 2 because the term "acquisition" is vague, ambiguous, and overly broad.

6

1   Subject to and without waiving the objections stated above, Plaintiff Ellingson-Mack

2   responds by stating that she purchased an emachines eView 17f2 Flat CRT Monitor from Best

3   Buy (Store #861) in Rapid City, South Dakota 57701 on March 6, 2004. A friend (Russ Penning)

4   assisted her in making the purchase. Plaintiff Ellingson-Mack also purchased a Sharp Color

5   Television Model 27L-S180 from Rex TV on October 18, 1999. Plaintiff Ellingson-Mack refers

6   Defendants to CRT000075-103 and CRT000525-561.

7   Plaintiff Ellingson-Mack's discovery and investigation is ongoing, and she reserves the

8   right to supplement this response as appropriate.

9   **INTERROGATORY NO. 3:**

10   For each acquisition of a CRT or CRT Product identified in Interrogatory No. 2, state all

11   terms and conditions that were a part of the acquisition, including without limitation all terms

12   and conditions Relating To pricing, taxes, tariffs, duties, freight charges, or any other fees paid

13   by any Person in connection with the acquisition.

14   As part of Your response, Identify each Document that supports Your response.

15   **RESPONSE NO. 3:**

16   In addition to the General Objections listed above, Plaintiff Ellingson-Mack objects to

17   Interrogatory No. 3 because the term "acquisition" is vague, ambiguous, and overly broad.

18   Subject to and without waiving the objections stated above, Plaintiff Ellingson-Mack

19   responds by stating that she paid South Dakota sales tax for both purchases. Plaintiff Ellingson-

20   Mack refers Defendants to CRT000075 and CRT000525.

21   **INTERROGATORY NO. 4:**

22   For each acquisition of a CRT or CRT Product identified in Interrogatory No. 2, state

23   whether the CRT or CRT Product was acquired as part of a system or other bundled product

24   (e.g., a CRT computer monitor acquired in conjunction with a computer, keyboard, speakers,

25   warranty, service plan, or other services) and, if so, the value of each component of such system

26   or bundled product.

27   As part of Your response, Identify each Document that supports Your response.

28

1 **RESPONSE NO. 4:**

2      In addition to the General Objections listed above, Plaintiff Ellingson-Mack objects to

3 Interrogatory No. 4 because the term "acquisition" is vague, ambiguous, and overly broad.

4 Plaintiff Ellingson-Mack further responds that the information sought by Interrogatory No. 4 is

5 irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.

6      Subject to and without waiving the objections stated above, Plaintiff Ellingson-Mack

7 responds by stating that the emachines eView 17f2 Flat CRT Monitor was purchased as part of a

8 system, and she paid $209.99 for it. (*See* CRT000075.) The Sharp Color Television Model 27L-

9 S180 was not acquired as part of a system or other bundled product.

10 **INTERROGATORY NO. 5:**

11      For each acquisition of a CRT or CRT Product identified in Interrogatory No. 2, identify

12 any warranties, servicing plans or agreements, membership rewards, or other benefits received

13 by You Relating To the acquisition.

14      As part of Your response, Identify each Document that supports Your response.

15 **RESPONSE NO. 5:**

16      In addition to the General Objections listed above, Plaintiff Ellingson-Mack objects to

17 Interrogatory No. 5 because the term "acquisition" is vague, ambiguous, and overly broad.

18 Plaintiff Ellingson-Mack further objects that the terms "membership rewards" and "other

19 benefits received by You" are vague, ambiguous, overly broad, irrelevant, and not reasonably

20 calculated to lead to the discovery of admissible evidence.

21      Subject to and without waiving the objections stated above, Plaintiff Ellingson-Mack

22 responds by stating that she did not purchase an extended warranty or service plan in connection

23 with her acquisition of the emachines eView 17f2 Flat CRT Monitor or the Sharp Color

24 Television Model 27L-S180.

25 //

26 //

27 //

28

**INTERROGATORY NO. 6:**

Identify the purpose(s) for which You acquired each CRT or CRT Product during the Relevant Period, including without limitation whether the CRT was acquired for resale and, if so, whether and under what terms and conditions it was resold.

**RESPONSE NO. 6:**

In addition to the General Objections listed above, Plaintiff Ellingson-Mack objects to Interrogatory No. 6 because the term "acquired" is vague, ambiguous, and overly broad.

Subject to and without waiving the objections stated above, Plaintiff Ellingson-Mack responds by stating that she purchased both the emachines eView 17f2 Flat CRT Monitor and the Sharp Color Television Model 27L-S180 for personal use and not for resale.

**INTERROGATORY NO. 7:**

Identify in detail every Communication between You and any actual or potential member of the putative class relating to Your potential service as a class representative in this action, including without limitation the Identity of each Person with whom You have so Communicated, whether each such Person has consented, refused to consent, or otherwise responded to Your purported authority to institute this action or serve as a class representative, and the date, time, place, and content of the Communication.

As part of Your response, Identify each Document that supports Your response.

**RESPONSE NO. 7:**

In addition to the General Objections listed above, Plaintiff Ellingson-Mack objects to Interrogatory No. 7 because it calls for the disclosure of privileged information, including without limitation, information subject to the attorney-client privilege and/or the work product doctrine. Plaintiff Ellingson-Mack also objects to Interrogatory No. 7 because it seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving the objections stated above, Plaintiff Ellingson-Mack has had no such Communication.

**INTERROGATORY NO. 8:**

Identify each civil action, excluding this action, in which You have participated or are currently participating, including without limitation whether You provided deposition, trial, or other testimony in a civil or criminal action, including the date, location, and case number of the action in which the testimony was provided and whether any motion was filed to certify or decertify a class and, if so, the disposition of any such motion.

**RESPONSE NO. 8:**

In addition to the General Objections listed above, Plaintiff Ellingson-Mack objects to Interrogatory No. 8 because it is overly broad and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving the objections stated above, Plaintiff Ellingson-Mack responds that she will identify (a) any putative or certified class actions in which she served as a Class Representative, and (b) any other litigation in which she has been involved relating to her purchases of CRT(s) and/or CRT Products.

Plaintiff Ellingson-Mack responds by stating that there are no such civil actions.

**INTERROGATORY NO. 9:**

Describe in detail how, when, the manner in which, and the extent to which You believe You have been damaged as a result of the conduct alleged in the Complaint, including the total dollar amount by which You allege You were overcharged. As part of Your answer, Identify each Person with whom You have consulted, and each Document that You contend supports Your response.

**RESPONSE NO. 9:**

In addition to the General Objections listed above, Plaintiff Ellingson-Mack objects to Interrogatory No. 9 because (a) it calls for the premature disclosure of expert material subject to Rule 26(a)(2)(C) of the Federal Rules of Civil Procedure, and (b) it seeks disclosure of privileged information, including, without limitation, information subject to the attorney-client privilege and/or work product doctrine. Plaintiff Ellingson-Mack further objects that this Interrogatory is a

premature contention interrogatory, served before Defendants have provided fact discovery and/or expert analysis and disclosures. *See In re Convergent Technologies Securities Litig.*, 108 F.R.D. 328, 332-38 (N.D. Cal. 1985).

Subject to and without waiving the objections stated above, Plaintiff Ellingson-Mack responds that she suffered damages by paying higher CRT Product prices than she would have in the absence of Defendants' conduct. Plaintiff Ellingson-Mack refers Defendants to (1) the Expert Report of Janet S. Netz Ph.D. dated April 15, 2014, (2) the Errata to the Expert Report of Janet S. Netz Ph.D. dated July 3, 2014, (3) the Rebuttal Report of Janet S. Netz Ph.D. dated September 26, 2014, (4) the Indirect Purchaser Plaintiffs' Objections and Responses to Defendant Hitachi Ltd.'s First Request Set of Interrogatories to the Indirect Purchaser Plaintiffs, Attachment A, and (5) the productions of documents and written discovery responses by the other defendants in this action.

Plaintiff Ellingson-Mack's discovery and investigation is ongoing, and she reserves the right to supplement this response as appropriate.

**INTERROGATORY NO. 10:**

Describe in detail and in narrative form (including by Identifying each Document, Person or other evidentiary source that You rely upon) the factual basis for your allegation that Irico Group Corp. manufactured, marketed, sold and/or distributed CRT Products directly or indirectly throughout the United States, as alleged in paragraph 95 of the Complaint.

**RESPONSE NO. 10:**

In addition to the General Objections listed above, Plaintiff Ellingson-Mack objects to Interrogatory No. 10 because it is a premature contention interrogatory, served before Defendants have provided fact discovery and/or expert analysis and disclosures. *See In re Convergent Technologies Securities Litig.*, 108 F.R.D. 328, 332-38 (N.D. Cal. 1985).

Subject to and without waiving the foregoing objections, Plaintiff Ellingson-Mack responds by referring Defendants to (1) the Indirect Purchaser Plaintiffs' Opposition to the Irico Defendants' Amended Motions to Dismiss Claims of Indirect Purchaser Plaintiffs For Lack of

Subject Matter Jurisdiction (Fed. R. Civ. P. 12(b)(1)), ECF No. 5440 at 4-10, (2) the Declaration of Mario N. Alioto in Support of Indirect Purchaser Plaintiffs' Opposition to Irico Defendants' Amended Motion to Dismiss for Lack of Subject Matter Jurisdiction, ECF No. 5440-1, Exs. 1-39, and (3) the Declaration of R. Alexander Saveri in Support of Direct Purchaser Plaintiffs' Opposition to the Irico Defendants' Amended Motion to Dismiss for Lack of Subject Matter Jurisdiction, ECF No. 5419-1 & 5460-2, Exs. 12, 15, 16, 17 & 22.

Pursuant to Plaintiff Ellingson-Mack's obligations under Federal Rule of Civil Procedure 26(e), she will supplement her response to this Interrogatory at the appropriate time following completion of other fact discovery.

**INTERROGATORY NO. 11:**

Describe in detail and in narrative form (including by Identifying each Document, Person or other evidentiary source that You rely upon) the factual basis for your allegation that Irico Display Devices, Co., Ltd. manufactured, marketed, sold and/or distributed CRT Products directly or indirectly, including through its subsidiaries or affiliates, throughout the United States, as alleged in paragraph 96 of the Complaint.

**RESPONSE NO. 11:**

*See* Plaintiff Ellingson-Mack's Objections and Responses to Interrogatory No. 10.

**INTERROGATORY NO. 12:**

Describe in detail and in narrative form (including by Identifying each Document, Person or other evidentiary source that You rely upon) the factual basis for your allegation that Irico Group Corp. was an active participant in the alleged conspiracy, or participated through Display or Electronics, as alleged in paragraph 185 of the Complaint.

**RESPONSE NO. 12:**

In addition to the General Objections listed above, Plaintiff Ellingson-Mack objects to Interrogatory No. 12 because it is a premature contention interrogatory, served before Defendants have provided fact discovery and/or expert analysis and disclosures. *See In re Convergent Technologies Securities Litig.*, 108 F.R.D. 328, 332-38 (N.D. Cal. 1985). Plaintiff

Ellingson-Mack further objects that information responsive to this interrogatory is equally accessible to Defendants as it is to Plaintiff Ellingson-Mack because it has been provided by other parties or witnesses.

Subject to and without waiving the foregoing objections, Plaintiff Ellingson-Mack refers Defendants to (1) the Indirect Purchaser Plaintiffs' Objections and Responses to Defendant Hitachi Ltd.'s First Request Set of Interrogatories to the Indirect Purchaser Plaintiffs, Attachment A, (2) the productions of documents and written discovery responses by the other defendants in this action, (3) the Indirect Purchaser Plaintiffs' Opposition to the Irico Defendants' Amended Motions to Dismiss Claims of Indirect Purchaser Plaintiffs For Lack of Subject Matter Jurisdiction (Fed. R. Civ. P. 12(b)(1)), ECF No. 5440 at 4-6, (4) the Declaration of Mario N. Alioto in Support of Indirect Purchaser Plaintiffs' Opposition to Irico Defendants' Amended Motion to Dismiss for Lack of Subject Matter Jurisdiction, ECF No. 5440-1, Exs. 1-39, and (5) Declaration of R. Alexander Saveri In Support of Direct Purchaser Plaintiffs' Opposition to Irico Defendants' Motion to Set Aside Default, ECF No. 5226-1, Exs. 11-32 (identifying meetings attended by Irico personnel).

Pursuant to her obligations under Federal Rule of Civil Procedure 26(e), Plaintiff Ellingson-Mack will supplement her response to this Interrogatory at the appropriate time following completion of other fact discovery.

**<u>INTERROGATORY NO. 13:</u>**

Describe in detail and in narrative form (including by Identifying each Document, Person or other evidentiary source that You rely upon) the factual basis for your allegation that Irico Display Devices, Co., Ltd. was an active participant in the alleged conspiracy, or participated through Group, as alleged in paragraph 185 of the Complaint.

**<u>RESPONSE NO. 13:</u>**

*See* Plaintiff Ellingson-Mack's Objections and Responses to Interrogatory No. 12.

//

//

13

INDIRECT PURCHASER PLAINTIFF DONNA ELLINGSON-MACK'S OBJECTIONS AND RESPONSES TO DEFENDANTS IRICO GROUP CORP. AND IRICO DISPLAY DEVICES CO., LTD.'S FIRST SET OF INTERROGATORIES CASE NO. 4:07-CV-05944-JST

**INTERROGATORY NO. 14:**

Separately Identify each meeting or communication with a competitor or competitors not previously disclosed in Supplemented Attachment A to the Indirect Purchaser Plaintiffs' Objections and Responses to Defendant Koninklijke Philips N.V.'s First Set of Interrogatories to Indirect Purchaser Plaintiffs, dated September 5, 2014, including the Irico employee(s) associated with each meeting or communication, in which you contend Irico participated, as alleged in paragraph 185 of the Complaint.

**RESPONSE NO. 14:**

*See* Plaintiff Ellingson-Mack's Objections and Responses to Interrogatory No. 12.

Dated: April 19, 2021                    By:    */s/ Mario N. Alioto*

Mario N. Alioto (56433)
Lauren C. Russell (241151)
TRUMP, ALIOTO, TRUMP & PRESCOTT, LLP
2280 Union Street
San Francisco, CA 94123
Telephone:   (415) 563-7200
Facsimile:    (415) 346-0679
malioto@tatp.com
laurenrussell@tatp.com

*Lead Counsel for the*
*Indirect Purchaser Plaintiffs*

# **EXHIBIT 7**

Guido Saveri (22349)
  *guido@saveri.com*
R. Alexander Saveri (173102)
  *rick@saveri.com*
Geoffrey C. Rushing (126910)
  *grushing@saveri.com*
Cadio Zirpoli (179108)
  *cadio@saveri.com*
Matthew D. Heaphy (227224)
  *mheaphy@saveri.com*
SAVERI & SAVERI, INC.
706 Sansome Street
San Francisco, California 94111
Telephone: (415) 217-6810
Facsimile: (415) 217-6813

*Lead Counsel for Direct Purchaser Plaintiffs*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Master File No. 07-CV-5944-JST |
| | MDL No. 1917 |
| This Document Relates To: | **DIRECT PURCHASER PLAINTIFFS' SUPPLEMENTAL OBJECTIONS AND RESPONSES TO DEFENDANTS IRICO GROUP CORP. AND IRICO DISPLAY DEVICES CO., LTD.'S FIRST SET OF INTERROGATORIES TO DIRECT PURCHASER PLAINTIFFS** |
| *ALL DIRECT PURCHASER ACTIONS* | |

| | |
|---|---|
| PROPOUNDING PARTIES: | IRICO GROUP CORP.; IRICO DISPLAY DEVICES CO., LTD. |
| RESPONDING PARTIES: | ARCH ELECTRONICS, INC.; CRAGO, D/B/A DASH COMPUTERS, INC.; MEIJER, INC.; MEIJER DISTRIBUTION, INC.; NATHAN MUCHNICK, INC.; PRINCETON DISPLAY TECHNOLOGIES, INC.; RADIO & TV EQUIPMENT, INC.; STUDIO SPECTRUM, INC.; WETTSTEIN AND SONS, INC. D/B/A WETTSTEIN'S |
| SET NO.: | ONE |

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Direct Purchaser Plaintiffs Arch Electronics, Inc.; Crago, d/b/a Dash Computers, Inc.; Meijer, Inc.; Meijer Distribution, Inc.; Nathan Muchnick, Inc.; Princeton Display Technologies, Inc.; Radio & TV Equipment, Inc.; Studio Spectrum, Inc.; and Wettstein and Sons, Inc. d/b/a Wettstein's (together, "Plaintiffs"), by their attorneys, hereby provide the following objections to Defendants Irico Group Corp. and Irico Display Devices Co., Ltd.'s First Set of Interrogatories to Direct Purchaser Plaintiffs (the "Interrogatories") as follows:

## **GENERAL OBJECTIONS**

Each of the following objections is incorporated by reference into each of the responses herein:

1.      Plaintiffs and their counsel have not completed their (1) investigation of the facts relating to this case, (2) discovery in this action, or (3) preparation for trial. The following responses are therefore based upon information known at this time and are provided without prejudice to Plaintiffs' right to supplement these responses prior to trial or to produce evidence based on subsequently discovered information. Likewise, Plaintiffs' responses are based upon, and therefore limited by, Plaintiffs' present knowledge and recollection, and consequently, Plaintiffs reserve the right to make any changes to these responses if it appears at any time that inadvertent errors or omissions have been made.

2.      Plaintiffs generally object to the Interrogatories, including the Instructions and Definitions, on the ground that they purport to enlarge, expand or alter in any way the plain

meaning and scope of any interrogatory or to impose any obligations on Plaintiffs' responses in excess of those required by the Federal Rules of Civil Procedure. Plaintiffs will respond to these Interrogatories in accordance with their understanding of the obligations imposed by the Federal Rules of Civil Procedure.

3.     Plaintiffs object to the Interrogatories, including the Instructions and Definitions, on the ground that the information sought is protected by the attorney-client privilege, the attorney work product doctrine, the settlement privilege, the mediation privilege or is otherwise privileged and/or immune from discovery. By responding to these Interrogatories, Plaintiffs do not waive, intentionally or otherwise, any attorney-client privilege, any settlement privilege, any mediation privilege, attorney work-product or any other privilege, immunity or other protection that may be asserted to protect any information from disclosure. Accordingly, any response or production of documents or disclosure of information inconsistent with the foregoing is wholly inadvertent and shall not constitute a waiver of any such privilege, immunity or other applicable protection.

4.     Plaintiffs object to these Interrogatories on the ground that they are compound, conjunctive or disjunctive.

5.     Plaintiffs object to the Interrogatories on the ground that they duplicate other requests, in whole or in part, made in MDL No. 1917 in violation of the Court's Order Re Discovery and Case Management Protocol (April 2, 2012) (Dkt. 1128). Plaintiffs will not reproduce any material that has been previously produced by another party to MDL No. 1917. *See* Case Management Order, 2 (Feb. 16, 2021) (Dkt. 5907).

6.     Plaintiffs object to the Interrogatories on the ground that they are overly broad and unduly burdensome.

7.     Plaintiffs object to the Interrogatories on the ground that they are vague, ambiguous, redundant, harassing or oppressive.

8.     Plaintiffs object to the Interrogatories on the ground that they require Plaintiffs to draw legal conclusions.

9.     Plaintiffs object to the Interrogatories on the ground that the information requested is neither relevant nor proportional to the needs of the case.

10. Plaintiffs object to the Interrogatories on the ground that they, or any portion of them, seek production of any information within the possession, custody, or control of any Defendant, or of publicly available information such that the information is obtainable from some other source that is more convenient, less burdensome or less expensive, or the production of the information will impose undue burden, inconvenience, or expense upon Plaintiffs.

11. Plaintiffs reserve the right to modify their allegations based on additional discovery, additional analysis of existing discovery, discovery not yet completed and/or expert discovery, and Plaintiffs reserve the right to supplement and/or delete the responses given in light of further evidence and further analysis of present and subsequently acquired evidence.

12. In addition, in accordance with the Federal Rules of Civil Procedure, Plaintiffs reserve the right to introduce evidence not yet identified herein supporting Plaintiffs' allegations, including evidence that Plaintiffs expect to further develop through the course of discovery and expert analysis.

13. In providing responses to the Interrogatories, Plaintiffs reserve all objections as to competency, relevance, materiality, privilege, or admissibility as evidence in any subsequent proceeding in, or trial of, this or any other action for any purpose whatsoever.

14. No incidental or implied admissions are intended in these responses. Plaintiffs' response to all or any part of any interrogatory should not be taken as an admission that: (a) Plaintiffs accept or admit the existence of any fact(s) set forth or assumed by the interrogatory; or (b) Plaintiffs have in their possession, custody or control documents or information responsive to that interrogatory; or (c) documents or information responsive to that interrogatory exist. Plaintiffs' response to all or any part of an interrogatory also is not intended to be, and shall not be, a waiver by Plaintiffs of all or any part of its objection(s) to that interrogatory.

15. Plaintiffs object to the Interrogatories on the ground that the cumulative requests by Defendants and Co-Conspirators in this litigation exceed the permissible number set forth in the Federal Rules.

## OBJECTIONS TO CERTAIN DEFINITIONS AND INSTRUCTIONS

1. Plaintiffs object to the definition of "Claim Form(s)" on the grounds that the term

"or similar forms approved by the Court and sent to or otherwise made available to potential Class Members" is vague and ambiguous and requires Plaintiffs to refer to multiple documents.

2.      Plaintiffs object to the definition of "Complaint" as vague and ambiguous. Plaintiffs understand this definition to refer to DPPs' Consolidated Amended Complaint at ECF No. 436 and as modified by the Stipulation and Order at ECF No. 996.

3.      Plaintiffs object to the definition of "Control" to the extent it requires Plaintiffs to draw legal conclusions.

4.      Plaintiffs object to the definition of "Co-Conspirators" on the grounds that it is vague, ambiguous, and unintelligible. Paragraphs 105-111 of DPP's Consolidated Amended Complaint (ECF No. 436) describe CRT technology and products and do not enumerate entities.

5.      Plaintiffs object to the definition of "Document(s)" on the ground that it is overbroad boilerplate that includes irrelevant examples, such as "package inserts or other information accompanying medications." Plaintiffs further object to the extent that the definition exceeds the scope of the Federal Rules of Civil Procedure.

6.      Plaintiffs object to the definition of "Irico CRTs" as vague, ambiguous, and unintelligible. Paragraphs 37-39 of the Complaint identify the Irico entities named as Defendants to this litigation and allege that those entities manufactured, sold, and distributed CRT Products either directly or through their subsidiaries or affiliates throughout the United States. The phrase "including without limitation any Claim Form(s) that reflects purchases from Irico in Sections A, B, or C of the form" is inconsistent with the preceding language in the definition and renders the definition unintelligible.

7.      Plaintiffs object to the definition of "Verified" as vague, ambiguous, and incomplete. The citation provided does not define the term "Verified."

8.      Plaintiffs object to the definition of "You" and "Your" as vague and ambiguous as it relies on the undefined, capitalized term "Plaintiffs." If "Plaintiffs" is intended to mean the parties identified as "Responding Parties" in the Interrogatories, Plaintiffs object to the definition as overbroad in seeking discovery of class members who are not current Named Plaintiffs and have not served as Class Representatives and further object on the grounds that this definition seeks the

production of documents outside Plaintiffs' possession, custody, and control. Plaintiffs further object on the ground that attorneys and agents are included in this definition, and any response or production of documents that may subsequently occur pursuant to these Interrogatories shall not include any documents protected by the attorney-client privilege, work product doctrine, the settlement privilege, or any other applicable privileges or doctrines. Plaintiffs further object to this definition to the extent that it refers to any entity other than Plaintiffs.

9.     Plaintiffs object to the Instructions to the extent they seek to expand the requirements of the Federal Rules of Civil Procedure. Plaintiffs will respond in accordance with the Federal Rules.

## **RESPONSES**

## **INTERROGATORY NO. 1**

Identify any Document(s) that summarize, analyze, evaluate or otherwise compile any information contained in Claim Forms.

## **RESPONSE TO INTERROGATORY NO. 1**

In addition to Plaintiffs' General Objections and Objections to Certain Definitions and Instructions, each of which is incorporated by this reference as though fully set forth herein, Plaintiffs object to this Interrogatory on the grounds that it calls for materials that are protected by the attorney-client privilege, the work product rule, and/or other evidentiary privilege. Plaintiffs further object to this Interrogatory on the grounds that it is vague and ambiguous including in its use of the terms "summarize," "analyze," "evaluate," and "otherwise compile." Plaintiffs further object to this Interrogatory on the grounds that it is overbroad and duplicative, and harassing in that it will interfere with the ongoing claims process as to which Defendants have no interest. Plaintiffs further object to this Interrogatory on the ground that the burden on Plaintiffs to describe such an overbroad group of documents outweighs any likely benefit and is not proportional to the needs of the case. Plaintiffs further object to this Interrogatory on the grounds that it seeks discovery of absent class members and serves as an inappropriate end-run around the prohibition on discovery of absent class members. Plaintiffs further object to this Interrogatory on the grounds that it seeks irrelevant information that is not necessary or proportional. Plaintiffs further object to this

1   Interrogatory on the grounds that it seeks confidential information of absent class members in

2   violation of their privacy rights. Plaintiffs also object to this Interrogatory on the ground that it is

3   compound.

4   **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 1**

5         Plaintiffs hereby incorporate their previous objections and response to this interrogatory,

6   *supra*. Subject to, and without waiving the foregoing objections, Plaintiffs provide the following

7   supplemental response pursuant to an agreement with the Irico Defendants whereby the Irico

8   Defendants "will narrow the scope of the outstanding discovery requests to the information

9   provided in Paragraphs 1(a), (b) and (c) in our proposed stipulation" provided that Plaintiffs

10  provide this information and, subject to the Irico Defendants' reservation of rights, represent to

11  Plaintiffs "that at this time Irico does not intend to serve further discovery regarding the claims

12  process, the claims administrator or the absent class members." *See* Rushing July 7, 2021 Ltr.;

13  Werbel July 9, 2021 Ltr. Subject to the foregoing agreement and without waiving the foregoing

14  objections, Plaintiffs provide the following supplemental response:

15       a.    To date, Direct Purchaser Plaintiffs have identified 1,816 valid claim forms

16            submitted by settlement class members for the direct purchase of CRTs, Televisions

17            or Monitors in the United States. Of the 1,816 valid claim forms, 334 identified

18            purchases of CRTs, 1,549 identified purchases of Televisions, and 992 identified

19            purchases of Monitors.

20       b.    To date, Direct Purchaser Plaintiffs have identified no valid claims for purchases of

21            a CRT, Television or Monitor by a settlement class member from any of the Irico

22            Defendants.

23       c.    Direct Purchaser Plaintiffs have no records from any third party documenting direct

24            purchases of Irico CRTs or televisions or monitors containing Irico CRTs in the

25            United States.

26  Plaintiffs will supplement this response in accordance with Rule 26(e) of the Federal Rules of Civil

27  Procedure.

28

1    **INTERROGATORY NO. 2**

2         Separately, for each Defendant or Co-Conspirator listed on the Claim Form, Identify:

3         a.    The total number of submitted and Verified Claim Forms that include purchases

4                from that Defendant or Co-Conspirator in Section A of the Claim Forms;

5         b.    The total dollar amount of purchases from that Defendant or Co-Conspirator

6                detailed in Section A of the submitted and Verified Claim Forms;

7         c.    The total number of submitted and Verified Claim Forms from that Defendant or

8                Co-Conspirator that include purchases in Section B of the Claim Forms;

9         d.    The total dollar amount of purchases from that Defendant or Co-Conspirator

10               detailed in Section B of the submitted and Verified Claim Forms;

11        e.    The total number of submitted and Verified Claim Forms that include purchases

12               from that Defendant or Co-Conspirator in Section C of the Claim Forms; and,

13        f.    The total dollar amount of purchases from that Defendant or Co-Conspirator

14               detailed in Section C of the submitted and Verified Claim Forms.

15   **RESPONSE TO INTERROGATORY NO. 2**

16        In addition to Plaintiffs' General Objections and Objections to Certain Definitions and

17   Instructions, each of which is incorporated by this reference as though fully set forth herein,

18   Plaintiffs further object to this Interrogatory on the ground that it is vague and ambiguous as to the

19   meaning of "Identify," "Co-Conspirator," "Verified," and "submitted." Plaintiffs further object to

20   this Interrogatory on the ground that the burden on Plaintiffs to provide this analysis of the claims

21   process outweighs its likely benefit and is not proportional to the needs of the case. Plaintiffs object

22   to this Interrogatory on the ground that it is compound. Plaintiffs further object to this Interrogatory

23   on the grounds that it calls for (or could be construed to call for) materials that are protected by the

24   attorney-client privilege, the work product rule or other evidentiary privilege. Plaintiffs further

25   object to this Interrogatory on the grounds that Defendants' sales information is more easily

26   available to Defendants from their own records and from discovery already produced in this

27   litigation. Plaintiffs further object to this Interrogatory on the grounds that it seeks discovery of

28   absent class members and serves as an inappropriate end-run around the prohibition on discovery

of absent class members. Plaintiffs further object to this Interrogatory on the grounds that it seeks irrelevant information that is not necessary or proportional. Plaintiffs further object to this Interrogatory on the grounds that it seeks confidential information of absent class members in violation of their privacy rights. Plaintiffs further object to this Interrogatory on the grounds that it is overbroad and duplicative, and harassing in that it will interfere with the ongoing claims process as to which Defendants have no interest.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 2**

Plaintiffs hereby incorporate their previous objections and response to this interrogatory, *supra*. Subject to, and without waiving the foregoing objections, Plaintiffs supplement their response as follows:

*See* supplemental response to Interrogatory No. 1, *supra*.

**INTERROGATORY NO. 3**

Identify any claims submitted involving Irico CRTs not Identified in Your response to Interrogatory No. 2.

**RESPONSE TO INTERROGATORY NO. 3**

In addition to Plaintiffs' General Objections and Objections to Certain Definitions and Instructions, each of which is incorporated by this reference as though fully set forth herein, Plaintiffs further object to this Interrogatory on the ground that it is vague and ambiguous in its use of terms "claims submitted," "Irico CRTs," and "involving." Plaintiffs further object to this Interrogatory on the grounds that it calls for (or could be construed to call for) materials that are protected by the attorney-client privilege, the work product rule or other evidentiary privilege. Plaintiffs further object to this Interrogatory on the grounds that it seeks individualized discovery of absent class members and serves as an inappropriate end-run around the prohibition on discovery of absent class members. Plaintiffs further object to this Interrogatory on the grounds that it seeks information about individualized claims that are not necessary or proportional at this stage of the litigation. Plaintiffs further object to this Interrogatory on the grounds that it seeks confidential information of absent class members in violation of their privacy rights. Plaintiffs

1   further object to this Interrogatory on the grounds that it is overbroad and duplicative, and

2   harassing in that it will interfere with the ongoing claims process as to which Defendants have no

3   interest.

4   **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 3**

5           Plaintiffs hereby incorporate their previous objections and response to this interrogatory,

6   *supra*. Subject to, and without waiving the foregoing objections, Plaintiffs supplement their

7   response as follows:

8           *See* supplemental response to Interrogatory No. 1, *supra*.

9

10  DATED: July 14, 2021              By: */s/ R. Alexander Saveri*

11                                        Guido Saveri
                                          R. Alexander Saveri
12                                        Geoffrey C. Rushing
                                          Cadio Zirpoli
13                                        Matthew D. Heaphy
                                          SAVERI & SAVERI, INC.
14                                        706 Sansome Street
                                          San Francisco, California 94111
15                                        Telephone: (415) 217-6810
                                          Facsimile: (415) 217-6813
16

17

18

19

20

21

22

23

24

25

26

27

28

# **EXHIBIT 8**

| MEETING DATE | LOCATION | CPT | LG | OEC/DW | SDI | HIT | MEC | MIT | TSB | PHS | LPD | MTPD | TCRT | BMCC | IRI | SMTL | TAT | SONY | THOM | INDIVIDUAL PARTICIPANTS | BEG BATES | DEPONENTS | DEPOSITION TESTIMONY |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1995-1998 | Taiwan: Taipei | X | X | X | X | | | | | X | | | | | | | | | | PHS: David Chang<br>PHS: Jerry Lin<br>CPT: CC Liu<br>SDI: Mr. Ha<br>SDI: Mr. Lee<br>LG: Pil Jae Lee | n/a | Pil Jae Lee | 29<br>37<br>79-88 |
| 1995-1998 | Taiwan: Taipei | X | X | | | | | | | | | | | | | | | | | LG: PJ Lee<br>CPT: CC Liu | n/a | Pil Jae Lee | 105-107 |
| 2/14/1995 | | | X | X | X | | | | | | | | | | | | | | | SDI - Hoo Mok Ha, Sung Kook Sung, Rak Jin Kim<br>LG - Choong Bae Kim, Chang Gi Kim, Moon Bong Choi<br>Orion - Wol Sub Kim, Sang Chul Yoon, Yong Gyu Oh | SDCRT-0086208 | Dae Eui Lee | 141:2-144:21 |
| 3/13/1995 | Korea | | | X | X | | | | | | | | | | | | | | | SDI - Oh Sung Kwon, Dae Eui Lee<br>Orion - Young Jae Kim, Jin Sung Kim | SDCRT-0086211 | Dae Eui Lee | 146:3-150:18 |
| 3/22/1995 | | X | | | X | | | | | | | | | | | | | | | CPT: J.S. Lu<br>CPT: Chun-Mei Hsieh<br>CPT: Section Chief Dong | CHU00028877-878 | J.S. Lu | J.S. Lu, Dep. 2, 203-206 |
| 5/29/1995 | Malaysia | X | X | | X | | | | | | | | | | | | | | | CPT: J.S. Lu<br>CPT: Vincent Lee<br>LGI: Mr. B.K. Jeon<br>LGI: Mr. Kim<br>LGI: Mr. Tam | CHU00028933-945 | J.S. Lu | J.S. Lu, Dep. Vol. 1, 74-78<br>Dep. Vol. 2, 247-250<br>Dep. Vol. 2, 262-263 |
| 6/22/1995 | Amsterdam, Netherlands | | | | | | | | | X | | | | | | | | | X | THOM: Alain Clement<br>THOM: Wright<br>PHS: Pelters<br>PHS: Jef J.H. Pos | HDP-CRT00055626 | | |
| 7/17/1995 | | X | | | X | | | | | | | | | | | | | | | CPT: C.C. Liu<br>CPT:Tony Chien<br>CPT: C.Y. Lin<br>CPT: Tony Cheng<br>SDD: Specialist Yin<br>SDD: Generalist Qingxing Yin<br>Taipei President Li<br>Department Manager Luo | CHU00028873 | C.C. Liu | C.C. Liu, Dep. Vol. 1, 110-112 |
| 8/16/1995 | Malaysia | X | | | X | | | | | | | | | | | | | | | CPT: J.S. Lu<br>CPT: Christina Hsieh (Chun Mei)<br>CPT: Vincent Lee<br>SED: Mr. D.H. Lee<br>SED: Mr. Moon<br>SED: Mr. Goo<br>SED: Mr. Kun | CHU00028869-872 | J.S. Lu | J.S. Lu, Dep. Vol. 1, 78-85 |
| 9/7/1995 | | X | | | | | | | X | | | | | | | | | | | CPT: Michael Du<br>CPT: C.C. Liu<br>CPT: Tony Cheng<br>TSB: Section Chief Kon Chun Yeu<br>TSB: Director Yun-Peng Hong | CHU00028311-313 | C.C. Liu | C.C. Liu, Dep. Vol. 1, 112-114 |
| 10/5/1995 | Taiwan | X | X | | X | | | | | | | | | | | | | | | CPT: Ching-Yuan Du<br>CPT: Mingjing Peng<br>LG: PJ Lee<br>SDI: Myoung Sik Lee | CHU00028851<br>CHU00028856 | Pil Jae Lee | 206 |
| 11/13/1995 | Madrid, Spain | | | | | | | | | X | | | | | | | | | X | THOM: John Neville<br>THOM: Alain Clement<br>PHS: Jacques Bouyer<br>PHS: Gerard<br>PHS: Kleisterlee<br>PHS: Jef J.H. Pos | HDP-CRT00055593 | | |

| MEETING DATE | LOCATION | CPT | LG | OEC/DW | SDI | HIT | MEC | MIT | TSB | PHS | LPD | MTPD | TCRT | BMCC | IRI | SMTL | TAT | SONY | THOM | INDIVIDUAL PARTICIPANTS | BEG BATES | DEPONENTS | DEPOSITION TESTIMONY |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 12/4/1995 | | X | | | | | | X | | | | | | | | | | | | CPT: Michael Du<br>MIT: Assistant Vice President Chien-Jen Wang<br>MIT: Head of Division Wen-Hsian Tseng | CHU00028558 | C.C. Liu | C.C. Liu, Dep. Vol. 1, 114-115 |
| 12/5/1995 | | X | X | | | | | | | | | | | | | | | | | CPT: Jason Lu<br>CPT: Tony Du<br>CPT: General Manager Export Dept. Mr. C.G. Kim<br>CPT: Rep. from Singapore B.K. Jeon<br>CPT: Rep. from K.L. Mr. Mark Tam | CHU00028930-931 | C.C. Liu<br>J.S. Lu | C.C. Liu, Dep. Vol. 1, 115-116<br>J.S. Lu, Dep. Vol. 2, 263-263 |
| 1/00/1996 | | | | | X | X | | | | | | | | | | | | | | HIT: Kobayashi<br>SDI: Kim | HDP-CRT00025646 | Nobuhiko Kobayashi | 205 (Nobuhiko Kobayashi) |
| 2/2/1996 | SEDM | X | | | X | | | | | | | | | | | | | | | CPT: J.S. Lu<br>CPT: Christina Hsieh<br>SED: Mr. Park | CHU00028841-843 | J.S. Lu | J.S. Lu, Dep. Vol. 1, 85-86<br>Dep. Vol. 2, 250-251 |
| 2/9/1996 | | X | | | | | | | X | | | | | | | | | | | CPT: President<br>TSB: Mr. Fujiwara<br>TSB: Mr. Sunaga<br>TSB: Mr. Yasukawa | CHU00028302-304 | C.C. Liu | C.C. Liu, Dep. Vol. 2, 334-336 |
| 4/23/1996 | Malaysia | X | | | X | | X | | | | | X | | | | | | | | CPT: Lu (Direcor)<br>CPT: Hsieh, Chun-Mei (Christina)<br>MEC: Tomori, (Mr.)<br>MEC: Vasu, (Mr.) | CHU00028524 | Jason Lu | at 86-89 |
| 4/29/1996 | | X | | | | | | | X | | | | | | | | | | | CPT: Michael Du<br>TSB: Mr. Fukunaga<br>TSB: Mr. Kon Chun Yeu | CHU00028300-301 | C.C. Liu | C.C. Liu, Dep. Vol. 1, 117-118 |
| 5/6/1996 | Taiwan | X | | | | | X | | | | | | | | | | | | | MEC: Hsu<br>MEC: Chang<br>MEC: Huang<br>CPT: Liu<br>CPT: Cheng<br>CPT: Du<br>CPT: Liu (Director)<br>CPT: Cheng (Head of Division)<br>CPT: Du, Ching-Yuan (Michael)<br>MEC: Hsu, Chi-Yen (Section Chief)<br>MEC: Chang, Yu-Hau | CHU00028521 | Allen Chang (Zhang)<br>Michael Hsu | Chang at 78<br>Hsu at 102 |
| 5/17/1996 | | X | X | X | X | | | | | | | | | | | | | | | CPT: J.S. Lu<br>CPT: Christina Hsieh<br>SED: Mr. Park (Sales Senior Manager) | CHU00028809-810 | J.S. Lu | J.S. Lu, Dep. Vol. 2, 222-225 |
| 5/24/1996 | CPT Malaysia | X | | X | | | | | | | | | | | | | | | | CPT: J.S. Lu<br>Orion: Mr. H.C. Moon<br>Orion: Mr. M.J. Lee | CHU0002968-969 | J.S. Lu | J.S. Lu, Dep. Vol. 2, 225-230 |
| 6/12/1996 | CPT Malaysia | X | X | | | | | | | | | | | | | | | | | CPT: J.S. Lu<br>CPT: Christina Hsieh<br>LG: Mr. Bak et al | CHU00028912-914 | J.S. Lu | J.S. Lu, Dep. Vol. 1, 90-96<br>Dep. Vol. 2, 263-263 |
| 7/19/1996 | TDDT | X | | | | | | | X | | | | | | | | | | | CPT: J.S. Lu<br>CPT: Ms. Christina Hsieh<br>TSB: Mr. Sunaga | CHU00028295-296 | J.S. Lu | J.S. Lu, Dep. Vol. 1, 96-99<br>Dep. Vol. 2, 264-267 |

| MEETING DATE | LOCATION | CPT | LG | OEC /DW | SDI | HIT | MEC | MIT | TSB | PHS | LPD | MTPD | TCRT | BMCC | IRI | SMTL | TAT | SONY | THOM | INDIVIDUAL PARTICIPANTS | BEG BATES | DEPONENTS | DEPOSITION TESTIMONY |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 8/21/1996 | | X | | | X | | | | | | | | | | | | | | | CPT: C.C. Liu<br>CPT: Michael Du<br>CPT: C.Y. Lin<br>CPT: Tony Chien<br>SDD: Mr. D.Y. Kim<br>SDD: Mr. Hoo Mok Ha | CHU00028803-804 | C.C. Liu | C.C. Liu, Dep. Vol. 1, 120-122 |
| 9/23/1996 | Hitachi Asia Taipei office | X | | | | X | | | | | | | | | | | | | | HIT: Senior Manager Chang Chien Chang<br>CPT: Director Liu, Senior Manager Cheng, Ching-Yuan (Michael) Du | CHU00028400.01E | C.C. Liu; Kazuhiro Sakashita | 276:01 (Kazuhiro Sakashita) |
| 10/9/1996 | | X | | | | | | | X | | | | | | | | | | | CPT: Liu (Director): Du, Ching-Yuan (Michael)<br>TSB: Wakayama (Department Manager): Yamamoto (Section Chief): Dasen (Assistant Vice President): Lu (Section Chief) | CHU00028291 | Yasuki Yamamoto | 152:2-161:25 |
| 10/17/1996 | | | X | X | X | | | | | | | | | | | | | | X | SDI - Dong Hun Lee, Dae Eui Lee, Hun Sul Chu<br>Orion - Bok Il Jung, Sang Chul Yoon, Dae Sik Lee<br>LG - Chang Ki Kim, Chul Ho Lee | SDCRT-0086221 | Dae Eui Lee | 151:8-155:13 |
| 10/24/1996 (Taiwan) | | X | X | | | | | | | | | | | | | | | | | CPT: Mr. Liu<br>CPT: Ching-Yuan Du<br>LG: KS Huh<br>LG: JM Park<br>LG: PJ Lee | CHU00028909<br>CHU00032068 | Pil Jae Lee | 111 |
| 10/30/1996 | Taiwan | X | | | | | X | | | | | | | | | | | | | MEC:  Hsu<br>MEC: Chang<br>CPT: Cheng (Edward)<br>CPT: Du          CPT: Du, Ching-Yuan (Michael)<br>CPT: Cheng, Ling-Yun (Edward)<br>MEC: Hsu, Chih-Yen (Section Manager)<br>MEC: Chang, Yu-Hao (Head of Department) | CHU0002B51 4 | Michael Hsu | at 132 |
| 11/21/1996 | | X | | | X | | | | | | | | | | | | | | | CPT: Michael Du<br>CPT: Tony Cheng | CHU00028398-399 | S.J. Yang | S.J. Yang, Dep. Vol. 1, 69-71 |
| 11/21/1996 | | X | | | X | | | | | | | | | | | | | | | CPT: Michael Du<br>CPT: Tony Cheng<br>HIT: Taiwan Branch Senior Manager Chien-Lung Chang | CHU00028398-399 | C.C. Liu | C.C. Liu, Dep. Vol. 1, 122-123 |
| 11/21/1996 | HAS Taiwan | X | | | X | | | | | | | | | | | | | | | HIT: Chang Chien Chang<br>CPT: Ching-Yuan (Michael) Du, Ling-Yun (Edward) Cheng | CHU00028398.01E | Kazuhiro Sakashita | 289:23 (Kazuhiro Sakashita) |
| 11/23/1996 | | X | | X | X | | | | | | | | | | | | | | | CPT: Chairman Lin<br>CPT: Director C.C. Liu<br>CPT: Jason Lu<br>CPT: President Fang<br>SDD: CEO Sun et al<br>Orion: CEO Yan et al | CHU00028791-793 | C.C. Liu | C.C. Liu, Dep. Vol. 2, 353-362 |
| 11/23/1996 | | X | X | X | X | X | | | | X | | | | | | | | | | CPT: J.S. Lu<br>CPT: President CPTM Fang<br>CPT: C.Y. Lin<br>CPT: C.C. Liu<br>SDD: Mr. Sun et al<br>Orion: Mr. Yan et al | CHU00028786-788 | J.S. Lu | J.S. Lu, Dep. Vol. 1, 99-105<br>Dep. Vol. 2, 252-260 |
| 11/25/1996 | | X | | | X | X | | | | | | | | | | | | | | HIT: Mr. Kimura, Kazuhiro Sakashita<br>SDI:  Mr. Na<br>CPT:  Director Chi-Chun (C.C.) Liu, Jason (King-Song) Lu | CHU00028784.01E | Kazuhiro Sakashita | 238:10 (Kazuhiro Sakashita) |
| 11/25/1996 | | | X | | X | | | | X | | | | | | | | | | | | SDCRT-0086224 | Hoon Choi | 98:13 |

| MEETING DATE | LOCATION | CPT | LG | OEC /DW | SDI | HIT | MEC | MIT | TSB | PHS | LPD | MTPD | TCRT | BMCC | IRI | SMTL | TAT | SONY | THOM | INDIVIDUAL PARTICIPANTS | BEG BATES | DEPONENTS | DEPOSITION TESTIMONY |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 11/25/1996 | | X | | | X | X | | X | X | | | | | | | | | | | CPT: C.C. Liu<br>CPT: Jason Lu<br>HTC: Mr. Sakashita<br>HTC: Mr. Kimura<br>SDD: Mr. Na | CHU00028396-397 | C.C. Liu<br>J.S. Lu | C.C. Liu, Dep. Vol. 1, 83-86<br>J.S. Lu, Dep. Vol. 2, 252-260 |
| 11/26/1996 | | X | | | X | X | | | | | | | | | | | | | | CPT: Jason Lu; CPT: C.C. Liu: HIT: Kazuhiro Sakashita: HIT: Mr. Kimura: SDI: Mr. Na | CHU00028396.01, CHU0028784.01 | | |
| 11/26/1996 | | | | | X | | | X | | | | | | | | | | | | | SDCRT-0086224 | Hoon Choi | 98:13 |
| 1997 | | | X | X | X | | | | | | | | | | | | | | | SDI - Mungwoo Lee, Donghoon Lee, Changhee Jang, Dae Eui Lee<br>LG - Mr. Kim, Moonbong Choi, Youngik Jung, Hochul Lee<br>Orion - Bool Jung, Mr. Sangchul Yoon, Yongkyu Oh | SDCRT-0086238 | Dae Eui Lee | 156:1-158:7 |
| 35440 | HIT Asia Plant, Taipei | X | | | X | | | | | | | | | | | | | | | CPT: Michael Du: CPT: Edward Cheng: CPT: C.C. Liu: CPT: Tony Cheng: HIT: Chiang-Lung Chang | CHU00028394 | | |
| 1/15/1997 | | X | X | | | | | | | | | | | | | | | | | CPT: Mr. Lin<br>CPT: Wen-Chun Cheng<br>LG: Kyoung Soo Hue<br>LG: Zong Mei Lin<br>LG: Zhen-Zi Lin<br>LG: PJ Lee | CHU00028394 | Pil Jae Lee | 119 |
| 1/28/1997 | | X | | X | X | | | | | X | | | | | | | | | | CPT: C.C. Liu<br>CPT: Michael Du<br>CPT: C.Y. Lin<br>CPT: Tony Cheng<br>SDD: Mr. Na<br>SDD: Mr. Ha<br>SDD: Mr. Lee<br>PHS: President Yu<br>Orion: Mr. Moon<br>Orion: Mr. Hee Kil Moon | CHU00028768 | C.C. Liu | C.C. Liu, Dep. Vol. 3, 515-517 |
| 2/24/1997 | Taiwan: Taipei | X | X | | | | | | | | | | | | | | | | | CPT: Mr. Liu<br>CPT: Yu-Shuen Liu<br>CPT: Ching-Yuan Du<br>LG: PJ Lee | CHU00028907 | Pil Jae Lee | 210 |
| 2/24/1997 | | X | | | X | | | | | X | | | | | | | | | | CPT: C.C. Liu<br>CPT: Michael Du<br>SDD: Taipei President Da-Wan Ra<br>SDD: Manager Joon Yeul Yoon<br>SDD: AVP Lee | CHU00032057-058 | C.C. Liu | C.C. Liu, Dep. Vol. 2, 371-373 |

| MEETING DATE | LOCATION | CPT | LG | OEC/DW | SDI | HIT | MEC | MIT | TSB | PHS | LPD | MTPD | TCRT | BMCC | IRI | SMTL | TAT | SONY | THOM | INDIVIDUAL PARTICIPANTS | BEG BATES | DEPONENTS | DEPOSITION TESTIMONY |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2/25/1997 | | X | X | | X | | | | | X | | | | | | | | | | CPT: C.C. Liu<br>CPT: Michael Du<br>CPT: President Lin<br>CPT: Plant Manager Chen<br>CPT: Senior Manaager Cheng<br>SDD: Ming-Pei Song<br>SDD: Mr. Yoon<br>SDD: Mr. Na<br>SDD: all together 7 members<br>LG: Taipei President Lin<br>PHS: Market Sales Senior Manager Tseng | CHU00028760-762 | C.C. Liu | C.C. Liu, Dep. Vol. 1, 123-125 |
| 3/4/1997 | | X | | | | | X | | | | | | | | | | | | | MEC: Hsu<br>MEC: Chang<br>CPT: Cheng (Edward)<br>CPT: Cheng (Tony)<br>CPT: Du<br>+V154CPT: Cheng (Senior Manager)<br>CPT: Du, Ching-Yuan (Michael)<br>CPT: Cheng, Ling-Yun (Edward)<br>MEC: Xu, Zhi-Yan (Section Chief)<br>MEC: Zhang, Yu-Hao (Director) | CHU000285O7 | Allen Chang (Zhang)<br>Michael Hsu | Chang at 94<br>Hsu at 140 |
| 3/5/1997 | | | | | X | | | | | | X | | | | | | | | | PHS: Fred Hovey and<br>Patrick Canavan.<br>SDI: L. J. Kim,<br>SDI: H. H. Hwang and<br>SDI: C. M. Son. | FOX00207286 | Patrick Canavan | Patrick Canavan Dep. Vol. 1, 91:25-102:17 |
| 3/12/1997 | Samsung's Taiwan office | X | X | X | X | X | X | | | X | | | | X | | | | | | MEC: Zhang (Chang)<br>LG: Lee<br>Daewoo: Moon<br>PHS: Zeng<br>HIT: Chang                    CPT: Cheng, Wen-Chun (Tony)          CPT: Ching-Yuan Du<br>HIT: Jian-Long Zhang<br>HIT: Zhang, Jian-Long<br>LG: Lee, Pil Jae<br>MEC: Zhang, Yur-Hao<br>OEC: Moon, Jong Hee<br>PHS: Zeng, Huan-Rong<br>SDI: Ha, Hoo Mok<br>SDI: Lee, Myoung Sik<br>SDI: Lee, Gae Min | CHU00028755 | Allen Chang (Zhang) | Allen Chang (Zhang)at 103: Pil Jae Lee at 211 |
| 3/19/1997 | | X | X | X | X | | | | | X | | | | | | | | | | CPT: C.C. Liu<br>CPT: Michael Du<br>CPT: President Lin<br>SDD: Mr. H.S. Lee<br>SDD: Mr. Otto Lee<br>PHS: Mr. Milan Bala<br>PHS: Mr. Tseng<br>Orion: Mr. Moon<br>LG: Mr. Ahn | CHU00028752-754 | C.C. Liu | C.C. Liu, Dep. Vol. 1, 96-99 |
| 3/26/1997 | | X | | | X | | | | | X | | | | | | | | | | CPT: C.C. Liu<br>CPT: Director Yang<br>CPT: Michael Du<br>SDD: Mr. Na<br>SDD: Mr. Ha<br>SDD: Mr. Lee<br>PHS: Director Zeng | CHU00028746-748 | C.C. Liu<br>S.J. Yang | C.C. Liu, Dep. Vol. 1, 125-126<br>S.J. Yang, Dep. Vol. 1, 71-80 |

| MEETING DATE | LOCATION | CPT | LG | OEC/DW | SDI | HIT | MEC | MIT | TSB | PHS | LPD | MTPD | TCRT | BMCC | IRI | SMTL | TAT | SONY | THOM | INDIVIDUAL PARTICIPANTS | BEG BATES | DEPONENTS | DEPOSITION TESTIMONY |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 4/7/1997 | | X | | | | | | | X | | | | | | | | | | | CPT: C.C. Liu<br>CPT: Michael Du<br>TSB: Mr. Fu-Yong<br>TSB: Mr. Hong<br>TSB: Mr. Song | CHU00028283-285 | C.C. Liu | C.C. Liu, Dep. Vol. 1, 126-128 |
| 4/23/1997 | | X | X | | X | | X | | X | X | | | | | | | | | | CPT: Yang<br>CPT: Liu, Chih-Chun (C.C.) (Director)<br>CPT: Yang, Sheng-Jen (S.J.) (Director)<br>CPT: Du, Ching-Yuan (Michael)<br>MEC: Ya, Xu-Zhu (Section Head)<br>MEC: Koga, (Mr.) | CHU00028503 | Y.J. Yang | S.J. Yang, Dep. Vol. 1, 80-83<br>Vol. 3, 417-420 |
| 4/23/1997 | | X | X | X | X | X | X | | | X | | X | | | | | | | | CPT: C.C. Liu<br>CPT: Michael Du<br>SDD: Mr. Na<br>SDD: Mr. Ha<br>SDD: Mr. M.S. Lee<br>SDD: Mr. Otto Lee<br>PHS: Mr. Song<br>Orion: Mr. Moon | CHU00028740-743 | C.C. Liu<br>S.J. Yang | C.C. Liu, Dep. Vol. 1, 128-129<br>S.J. Yang, Vol. 3, 414-417 |
| 4/29/1997 | | X | | | X | | | | | | | | | | | | | | | CPT: C.C. Liu<br>CPT: C.Y. Lin<br>CPT:Edward Cheng<br>HTC: Chien-Lung Chang | CHU00028393 | C.C. Liu | C.C. Liu, Dep. Vol. 1, 129-131 |
| 4/29/1997 | | X | | | | | X | | | | | | | | | | | | | MEC: Hsu<br>CPT: Cheng (Edward)<br>CPT: Du | CHU00028505 | Michael Hsu | at 147 |
| 4/29/1997 | | X | | | X | | | | | | | | | | | | | | | HIT: Chang Chien Chang<br>CPT: Ching-Yuan (Michael) Du, Ling-Yun (Edward) Cheng | CHU00028393.01E | Kazuhiro Sakashita | 279:12 (Kazuhiro Sakashita) |
| 5/2/1997 | | X | | | X | | | | | | | | | | | | | | | CPT: Senior Manager Cheng<br>CPT:Edward Cheng<br>CPT: Michael Du<br>SDI: Mingzhi Li<br>SDI: Jiemin Li | CHU00028734-735 | C.C. Liu | C.C. Liu, Dep. Vol. 1, 131-132 |
| 5/9/1997 | | X | X | X | X | | | | | X | | | | | | | | | | CPT: C.C. Liu<br>CPT: Michael Du<br>SDD: D.Y. Kim<br>SDD: Mr. Ha<br>SDD: Mr. H.S. Lee<br>LG: Mr. Lim<br>Orion: Mr. Moon<br>PHS: Mr. Zeng | CHU00028730-733 | C.C. Liu | C.C. Liu, Dep. Vol. 1, 100-102 |
| 5/20/1997 | | X | X | | X | | | | | X | | | | | | | | | | CPT: C.C. Liu<br>CPT: Michael Du<br>SDD: Mr. Na<br>SDD: Mr. Ha<br>SDD: Mr. Yeon<br>PHS: President Song<br>PHS: Director Tseng<br>LG: AVP Lu | CHU00028725-727 | C.C. Liu | C.C. Liu, Dep. Vol. 1, 132-133 |
| 5/20/1997 | | X | | | X | | | | X | | | | X | | | | | | | CPT: Miss Hsieh<br>SED: Mr. Park<br>SED: Mr. Moon<br>SED: Mr. Joseph JQ<br>SED: Ms. Dran | CHU00028723-724 | J.S. Lu | J.S. Lu, Dep. Vol. 1, 109-113 |
| 5/23/1997 | | X | | | | | X | | X | | | | | | | | | | | CPT: J.S. Lu<br>CPT: Christina Hsieh<br>M-MEC: Mr. Tomori | CHU00028501-502 | J.S. Lu | J.S. Lu, Dep. Vol. 1, 113-117 |

| MEETING DATE | LOCATION | CPT | LG | OEC /DW | SDI | HIT | MEC | MIT | TSB | PHS | LPD | MTPD | TCRT | BMCC | IRI | SMTL | TAT | SONY | THOM | INDIVIDUAL PARTICIPANTS | BEG BATES | DEPONENTS | DEPOSITION TESTIMONY |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 5/27/1997 | | | X | | | | | | X | | | | | | | | | | | Toshiba - Wakayama Kimura<br>SDI - Dae Eui Lee | SDCRT-0086245 | Dae Eui Lee | 158:21-162:16 |
| 7/8/1997 | | X | | | X | | | | | | | | | | | | | | | CPT: Director S.J. Yang<br>CPT: Michael Du<br>CPT: Ms. Hsieh<br>SDD: Mr. Ha<br>SDD: AVP Mr. Lee | CHU00028711-712 | S.J. Yang | S.J. Yang, Dep. Vol. 1, 83-87 |
| 7/9/1997 | Versailles, France | | | | | | | | | X | | | | | | | | | X | THOM: Alain Clement<br>PHS: Jef J.H. Pos<br>PHS: Palzers | HDP-CRT00055190 | | |
| 7/16/1997 | | X | | | X | | | | X | X | | | | | | | | | | CPT: C.C. Liu<br>CPT: S.J. Yang<br>CPT: Michael Du<br>TSB: Mr. Matsuda<br>TSB: Mr. Ohmori<br>TSB: Mr. Fukunaka | CHU00028277 | C.C. Liu | C.C. Liu, Dep. Vol. 3, 514-515 |
| 7/16/1997 | | X | | | X | | | | X | | | | | | | | | | | CPT: Director C.C. Liu<br>CPT: S.J. Yang<br>CPT: Michael Du<br>TSB: Mr. Matsuda<br>TSB: Mr. Ohmori<br>TSB: Mr. Fukunaka | CHU00028277-278 | S.J. Yang | S.J. Yang, Dep. Vol. 1, 87-90 |
| 7/18/1997 | | X | | | X | | | | | | | | | | | | | | | CPT: C.C. Liu<br>CPT: Michael Du<br>SDD: Taipei President Ha<br>SDD: AVP Lee<br>SDD: Ga Gie Lee | CHU00028707-710 | C.C. Liu | C.C. Liu, Dep. Vol. 1, 134-135 |
| 8/18/1997 | | X | | | X | | | | | | | | | | | | | | | CPT: C.Y. Lin<br>CPT: C.C. Liu<br>CPT: S.J. Yang<br>SDD: Mr. Na<br>SDD: Mr. Ha<br>SDD: Mr. Lee<br>SDD: Mr. Kim | CHU00028701-703 | C.C. Liu | C.C. Liu, Dep. Vol. 1, 135-137 |
| 8/19/1997 | | X | | | X | | | | | | | | | | | | | | | Sang Kyu Park (SDI): J. Lu: Chistina: Soungseop Moon | SDCRT-0086247 | SK Park | |
| 9/12/1997 | | X | | | | | X | | | | | | | | | | | | | MEC: Hsu<br>MEC: Chang<br>CPT: Cheng (Edward)<br>CPT: Du | CHU00026497 | Allen Chang (Zhang) Michael Hsu | Chang at 119: Hsu at 150 |
| 9/29/1997 | | X | | | | | | | X | | | | | | | | | | | CPT: J.S. Lu<br>TSB: Mr. Sunaga<br>TSB: Mr. Nino<br>TSB: Mr. Sato | CHU00028273-274 | J.S. Lu | J.S. Lu, Dep. Vol. 1, 117-123 |
| 10/9/1997 | | X | | | X | | | | | X | | | | | | | | | | CPT: Director S.J. Yang<br>CPT: Director C.C. Liu<br>CPT: Michael Du<br>SDD: Mr. H.S. Lee<br>SDD: Mr. Na<br>SDD: Mr. Fang Ming Lee<br>PHS: Jerry Lin | CHU00028691-693 | S.J. Yang | S.J. Yang, Dep. Vol. 1, 90-98 |
| 10/20/1997 | | X | | | X | | | | | | | | | | | | | | | CPT: Director C.C. Liu<br>CPT: Michael Du<br>CPT: President C.Y. Lin<br>CPT: Factory Manager chen<br>CPT: Head of Division S.J. Yang<br>SDD: CEO Shon<br>SDD: Hong Kong Branch President Zheng<br>SDD: Mr. D.Y. Kim<br>SDD: Mr. Ha<br>SDD: Mr. Lee | CHU00028689-690 | C.C. Liu | C.C. Liu, Dep. Vol. 1, 137-139 |

| MEETING DATE | LOCATION | CPT | LG | OEC/DW | SDI | HIT | MEC | MIT | TSB | PHS | LPD | MTPD | TCRT | BMCC | IRI | SMTL | TAT | SONY | THOM | INDIVIDUAL PARTICIPANTS | BEG BATES | DEPONENTS | DEPOSITION TESTIMONY |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 10/30/1997 | SDD Taipei | X | | | X | | | | | X | | | | | | | | | | CPT: Director C.C. Liu<br>CPT: Director Du<br>CPT: Director S.J. Yang<br>SDD: Taipei President Ha<br>SDD: AVP Lee<br>PHS: President Song | CHU00028687-688 | C.C. Liu | C.C. Liu, Dep. Vol. 1, 139-141 |
| 10/31/1997 | | X | | | | | X | | | | | | | | | | | | | MEC: Chang, Hsu, Bo-Chang Lee (Matsushitaa Taiwan - LCD): CPT: Du, Cheng (Edward), Ms. Lin | CHU00028495 | Allen Chang (Zhang) Michael Hsu | Chang at 121, 129: Hsu at 153 |
| 11/7/1997 | [Matsushita's Taipei office] | X | | | | | X | | | | | X | | | | | | | | MEC: Chang, Hsu: CPT: Du, Liu, Yang<br>CPT: Liu (Director)<br>CPT: Yang (Director)<br>CPT: Du, Ching-Yuan (Michael)<br>MEC: Xu, Zhiyan (Assistant Manager)<br>MEC: Zhang, Yu-Hao (Director) | CHU00028490-492 | C.C. Liu: Allen Chang (Zhang): Hsu | Liu at 141-42: Chang at 129-30: Hsu at 156 |
| 11/21/1997 | | X | | | X | | | | | | | | | | | | | | | CPT: Director C.C. Liu<br>CPT: Director S.J. Yang<br>CPT: Michael Du<br>SDD: Taipei President Ha<br>PHS: Senior Manager Xiu-Li Lin<br>LG: Mr. J.M. Park<br>LG: VP Bi-Cai Li | CHU00028674-676 | C.C. Liu | C.C. Liu, Dep. Vol. 1, 142-144 |
| 12/00/1997 | | | | | X | | | | X | | | | | | | | | | | | HDP-CRT00025612 | Nobuaki Ito Nobuhiko Kobayashi | 254:12 (Nobuaki Ito): 221 (Nobuhiko Kobayashi) |
| 12/3/1997 | | X | X | X | X | | X | | X | | | | X | | | | | | | CPT: J.S. Lu<br>CPT: Director C.C. Liu | CHU00020779-781 | J.S. Lu | J.S. Lu, Dep. Vol. 1, 123-131 |
| 12/9/1997 | | X | | X | X | | | | | | | | | | | | | | | CPT: C.C. Liu<br>CPT: Michael Du<br>CPT: S.J. Yang<br>SDD: Mr. Ha<br>SDD: Mr. H.S. Lee<br>Orion: Mr. Moon | CHU00028670 | C.C. Liu | C.C. Liu, Dep. Vol. 3, 517-518 |
| 12/9/1997 | | X | | X | X | | | | | | | | | | | | | | | CPT: Director S.J. Yang<br>CPT: Director C.C. Liu<br>CPT: Michael Du<br>SDD:Mr. Ha<br>SDD: Mr. Lee<br>SDD: Mr. H.S. Lee<br>Orion Taipei: Mr. Moon | CHU00028670-671 | S.J. Yang | S.J. Yang, Dep. Vol. 1, 98-103 |
| 12/16/1997 | Korea | | X | X | X | | | | | | | | | | | | | | | Orion - Bok Il Jung, Hong Kyu Oh, Dae Shik Lee Yong Il Jung, Seung Yeul Shin<br>SDI - Dong Hoon Lee, Change Hee Change, Dae Eui Lee | SDCRT-0086248; SDCRT-0086249 | Dae Eui Lee | 163:1-167:15: 167:25-169:17 |
| 12/24/1997 | | X | | | | | X | | | | | | | | | | | | | MEC: Chang, Hsu<br>CPT: Hsu, Chih-Yen (Assistant Manager)<br>CPT: Chang, Yu-Hao (Head of Division)<br>MEC: | CHU00028487 | Allen Chang (Zhang) Michael Hsu | Chang II at 150: Hsu at 158 |
| 12/29/1997 | | | X | X | X | | | | | | | | | | | | | | | SDI - Dae Eui Lee | SDCRT-0086253 | Dae Eui Lee | 170:5-175:9 |
| 1998-2001 | | X | X | X | X | | | | | X | | | | | | | | | | Kwang Ho Lee (SDI): Song, Michael (SDI): Dae Eui Lee (SDI): Jae In Lee (SDI) | N/A | J.I. Lee | Jae In Lee Vol 1 25:24-26:2, 28:10-29:1, 29:14-30:20, 37:12-37:13, 62:5-62:9: 65:11-66:3, 66:7-66:11 |
| 1998/1999 | Taiwan | X | | | X | | | | | | | | | | | | | | | J.Y. Youn | | J.Y. Youn | 43:01:00 |
| 1998 | Cheju Island, South Korea | | | | X | | | | X | | | | | | | | | | | Toshiba: Yamamoto, Yasuki: Yoshino<br>SDI: D.Y. Kim: another SDI employee | | Yasuki Yamamoto | 117:22-121:23: 137-21-141:14 |

| MEETING DATE | LOCATION | CPT | LG | OEC /DW | SDI | HIT | MEC | MIT | TSB | PHS | LPD | MTPD | TCRT | BMCC | IRI | SMTL | TAT | SONY | THOM | INDIVIDUAL PARTICIPANTS | BEG BATES | DEPONENTS | DEPOSITION TESTIMONY |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1998 | Hakone, Japan | | | | X | | | | X | | | | | | | | | | | Toshiba: Yamamoto, Yasuki: Yoshino SDI: D.Y. Kim: another SDI employee | | Yasuki Yamamoto | 117:22-121:23; 137-21-141:14 |
| 1998 | Taiwan | X | X | X | X | | | | | X | | | | | | | | | | J.Y. Youn | | J.Y. Youn | 50:10, 51:8 |
| 1998 | | | X | | | X | | | | | | | | | | | | | X | | HEDUS-CRT00159915 | Tom Heiser | 55:19 (Tom Heiser) |
| 1/19/1998-1/24/1998 | Taiwan | | | | | | | | | | | | | | | | | | | D.Y. Kim | SDCRT-0086373 | | |
| 1/15/1998 | | X | | | | | | | X | | | | | | | | | | | CPT: President C.Y. Lin CPT: Michael Du TSB: Mr. Hamano TSB: Mr. Oshima TSB: Mr. Yang-Chang Li | CHU00028263-264 | C.C. Liu | C.C. Liu, Dep. Vol. 3, 404-411 |
| 2/20/1998 | | X | | X | | | | | | | | | | | | | | | | CPT: Director C.C. Liu CPT: Michael Du OEC: Taipei VP Moon | CHU00028955-957 | C.C. Liu | C.C. Liu, Dep. Vol. 1, 144-145 |
| 2/24/1998 | | X | | | X | | | | | | | | | | | | | | | CPT: S.J. Yang CPT: C.C. Liu CPT: Michael Du SDD: Mr. C.W. Luo SDD: Mr. Yoon SDD: Mr. Lee | CHU00028656-657 | S.J. Yang | S.J. Yang, Dep. Vol. 2, 190-192 |
| 3/3/1998 | n/a | | | | X | | | | | | | | | | | | | | X | THOM: Kevin Trompack HIT: Tom Heiser | HEDUS-CRT00126627 | | |
| 3/4/1998 | Taiwan | X | | X | X | | | | | X | | | | | | | | | | CPT: S.J. Yang CPT: Michael Du CPT: C.C. Liu SDD: Mr. Na SDD: Mr. Ha SDD: Mr. Lee SDD: Mr. H.S. Lee PHS: Mr. Jeong Lin Orion: Mr. Moon | CHU00028654-655 | S.J. Yang | S.J. Yang, Dep. Vol. 1, 103-106 |
| 3/11/1998 | Tokyo, Japan | | | | | | | | | X | | | | | | | | | X | THOM: Giles Taldu THOM: Christian Lissorgues PHS: Jacques Bouyer PHS: Frans A. de Bruunr PHS: Job Mensink | HDP-CRT00055091; HDP-CRT00055172 | | |
| 3/12/1998 | Hitachi Greenville, S.C. Factory | | | | X | | | | | | | | | | | | | | X | HIT: Tom Heiser, Thom Schmitt THOM: P. Kevin Trompak | HEDUS-CRT00126627 | Tom Heiser | 169:06 (Tom Heiser) |
| 3/13/1998 | | | | | X | | | X | | | | | | | | | | | | MIT: Mr. Hasegawa: HIT: Mr. Oda: HIT: Mr. Komiri | HDP-CRT00025601 | | |
| 3/25/1998 | | X | X | | X | | | | X | | | | | | | | | | | CPT: S.J. Yang CPT: C.C. Liu CPT: Michael Du SDD: Mr. Chi-Hsiao Ra SDD: Mr. Gae Min Lee | CHU00028648-650 | S.J. Yang | S.J. Yang, Dep. Vol. 2, 274-278 |
| 3/30/1998 | Taipei office | X | X | X | X | | | | | | | | | | | | | | | CPT: S.J. Yang CPT: Michael Du SDD: Mr. Na SDD: Mr. Ha SDD: Mr. Lee LG Taipei: Mr. Lim LG Taipei: Mr. Park Orion: Mr. Moon | CHU00028645-646 | S.J. Yang | S.J. Yang, Dep. Vol. 1, 107-110 |
| 4/9/1998 | Busan | X | | | X | | | | | | | | | | | | | | | CPT: Director C.C. Liu CPT: Michael Du SDD: President Qiwan Luo | CHU00028642-644 | S.J. Yang | S.J. Yang, Dep. Vol. 1, 110-115 |

| MEETING DATE | LOCATION | CPT | LG | OEC/DW | SDI | HIT | MEC | MIT | TSB | PHS | LPD | MTPD | TCRT | BMCC | IRI | SMTL | TAT | SONY | THOM | INDIVIDUAL PARTICIPANTS | BEG BATES | DEPONENTS | DEPOSITION TESTIMONY |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 4/14/1998 | | X | X | X | X | | | | | | | | | | | | | | | CPT: Senior Manager S.J. Yang<br>CPT: President C.Y. Lin<br>CPT: Director C.C. Liu<br>CPT: Michael Du<br>SDD: Mr. Sun<br>SDD: Mr. Na<br>SDD: Mr. He<br>SDD: Mr. Jin<br>SDD: Mr. Li | CHU00028651-652 | S.J. Yang | S.J. Yang, Dep. Vol. 1, 115-122 |
| 4/27/1998 | | | | | | X | | X | | | | | | | | | | | X | | HEDUS-CRT00002105 | Tom Heiser | 174:06 (Tom Heiser) |
| 05/00/1998 | | | | | | X | | X | | | | | | | | | | | | | HDP-CRT00025584 | Kazumasa Hirai | 130:16 (Kazumasa Hirai) |
| 05/00/1998 | | | | | | X | | | X | | | | | | | | | | X | | HIT: Tom Heiser Thom Schmitt | HEDUS-CRT00002107 | Tom Heiser | 184:12 (Tom Heiser) |
| 5/18/1998 | Taiwan | X | | | | | | | X | | | | | | | | | | | | CPT: Director C.C. Liu<br>CPT: Manager Yang<br>CPT: Michael Du<br>TSB: Mr. Michihiro Yoshino<br>TSB: Taipei Mr. Yong Fu<br>TSB: Section Chief Yun-Peng Hong | CHU00028252-253 | C.C. Liu | C.C. Liu, Dep. Vol. 1, 145-147 |
| 5/18/1998 | | X | | X | | | | | | | | | | | | | | | | | CPT: Director C.C. Liu<br>CPT: Senior Manager Yang<br>CPT: Michael Du<br>OEC: Mr. Moon<br>OEC: Mr. Kang | CHU00028952-954 | C.C. Liu | C.C. Liu, Dep. Vol. 1, 147-148 |
| 5/18/1998 | Taiwan | X | | | | | | | X | | | | | | | | | | | | CPT: S.J. Yang<br>CPT: C.C. Liu<br>CPT: Michael Du<br>TSB: Mr. Michihiro Yoshino<br>TSB: Mr. Fukunaka<br>TSB: Mr. Yun-Peng Hong<br>TSB: Mr. Yong Fu | CHU00028252-253 | S.J. Yang | S.J. Yang, Dep. Vol. 3, 429-433 |
| 6/1/1998 | Future meeting planned for Taiwan | X | X | X | X | | | | | | | | | | | | | | | | CPT: S.J. Yang<br>CPT: C.C. Liu<br>CPT: Michael Du<br>SDD: Na<br>SDD: Ha<br>SDD: Lee<br>Orion: Moon<br>Orion: Kang | CHU00026832-634 | S.J. Yang | S.J. Yang, Dep. Vol. 1, 122-130 |
| 6/3/1998 | EIAJ/EECA Meeting in Osaka | | | | | X | X | X | | | | | | | | | | | | | TSB: Wakiyama: MIT: Tsukamoto: HIT: Uchida: MEC: Shimoda | HDP-CRT00055114 | | |
| 6/4/1998 | Korea | X | X | X | X | | | | | | | | | | | | | | | | CPT: S.J. Yang<br>CPT: C.C. Liu | CHU00028638 | S.J. Yang | S.J. Yang, Dep. Vol. 1, 130-134 |
| 7/8/1998 | White Columns Golf Club, Alpharetta, GA | | | | | X | | | | | | | | | | | | | | X | HIT: Tom Heiser<br>THOM: Rick Love, Hans Braun | HEDUS-CRT00166576 | Tom Heiser | 92:03 (Tom Heiser) |
| 7/13/1998 | Third Serve Sports Grill, Norcross, GA | | | | | X | | | | X | | | | | | | | | | | HIT Tom Heiser, Thom Schmitt, GL, JS<br>PHS: Jeff Johnson, Pat Canavan, | HEDUS-CRT00166576 | Tom Heiser | 92:03 (Tom Heiser) |
| 7/13/1998 | Hitachi Office, Norcross, GA | | | | | X | | | | X | | | | | | | | | | | HIT:Tom Heiser Thom Schmitt<br>PHS: Geert Lievens, Pat Canavan, Jeff Johnson | PHLP-CRT-081748 | Tom Heiser | 100:18 (Tom Heiser) |
| 7/15/1998 | Hitachi, Norcross, GA | | | | | X | | | | X | | | | | | | | | | | PH: Pat Canavan<br>PH: Jeff Johnson<br>HIT: Tom Heiser<br>HIT: Thom Schmitt<br>HIT: Geert Lievens | PHLP-CRT-081748 | Jim Smith | Jim Smith Dep. Vol. 1, 249-255 |
| 7/16/1998 | Matsushita | | | | | X | X | | | | | | | | | | | | | | SDI: Lee (possibly) | SDCRT-0086416 | Jae In Lee | Lee I at 88-94 |

| MEETING DATE | LOCATION | CPT | LG | OEC/DW | SDI | HIT | MEC | MIT | TSB | PHS | LPD | MTPD | TCRT | BMCC | IRI | SMTL | TAT | SONY | THOM | INDIVIDUAL PARTICIPANTS | BEG BATES | DEPONENTS | DEPOSITION TESTIMONY |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 7/18/1998 | | | | | X | | | | | | | X | | | | | | | | Jae In Lee (SDI) | SDCRT-0086416 | J.I. Lee | |
| 7/30/1998-8/1/1998 | Taiwan | | | | | | | | | | | | | | | | | | | D.Y. Kim | SDCRT-0086270 | | |
| 7/31/1998 | | X | X | X | X | | | | | X | | | | | | | | | | | SDCRT-0086419 | | |
| 8/00/1998 | | X | X | X | X | | | | | X | | | | | | | | | | Kwang Ho Lee (SDI): Song, Michael (SDI): Dae Eui Lee (SDI): Jae In Lee (SDI) | N/A | J.I. Lee | Jae In Lee Vol 1 25:24-26:2, 28:10-29:1, 29:14-30:20, 37:12-37:13, 62:5-62:9; 65:11-66:3, 66:7-66:11 |
| 8/21/1998 | | X | | | | X | | | | | | | | | | | | | | HIT: Jian-Lung Zhang: CPT: C.C. Liu: CPT: Michael Du | HDP-CRT00055114 | | |
| 8/25/1998 | [Matsushita's Taipei office] | X | | | | | X | | | | | X | | | | | | | | MEC: Chang, Hsu: CPT: Liu, Du<br>CPT: Liu (Director)<br>CPT: Du, Ching-Yuan (Michael)<br>MEC: Hsu (Assistant Manager)<br>MEC: Chang, Yu Tai (Senior Manager) | CHU00028463 | Allen Chang (Zhang); Michael Hsu; C.C. Liu | Chang at 157: Hsu at 160 |
| 8/25/1998 | | X | X | | X | | | | | | | | | | | | | | | CPT: J.S. Lu<br>SED: Mr. S.K. Park<br>SED: Mr. Y.S. Moon<br>SED: Mr. P.K. Jeon | CHU00028613-614 | J.S. Lu | J.S. Lu, Dep. Vol. 1, 131-132 |
| 8/27/1998 | | X | | | X | | | | | | | | | | | | | | | CPT: C.C. Liu<br>CPT: Michael Du<br>HTC: Manager Chien-Lung Chang | CHU00028385-387 | C.C. Liu | C.C. Liu, Dep. Vol. 1, 151-153 |
| 9/00/1998 | EIAJ | | | | X | | X | | | | | | | | | | | | | | HDP-CRT00025568 | Nobuaki Ito Nobuhiko Kobayashi | 314:19 (Nobuaki Ito): 230 (Nobuhiko Kobayashi) |
| 9/7/1998 | | X | X | X | X | | | | | | | | X | | | | | | | SDI - Michael Son, In Kim, K.H. Lee, D.H. Lee, D.E. Lee | CHU00029316 | Michael Son | 124:11-133:8 |
| 9/7/1998 | | X | X | X | X | | | | | | | | X | | | | | | | SDI - Dae Eui Lee | SDCRT-0086460 | Dae Eui Lee | 201:21-205:9 |
| 9/7/1998 to 9/8/1998 | | X | X | X | X | | | | | | | | X | | | | | | | CPT: C.C. Liu<br>CPT: Michael Du<br>SDD: Mr. Inn Kim<br>SDD: Mr. K.H. Lee<br>SDD: Mr. D.H. Lee<br>SDD: Mr. D.E. Lee<br>SDD: Mr. Son<br>LG: Mr. Choi<br>LG: Mr. C.G. Kim<br>LG: Mr. P.Y. Jeong<br>LG: Mr. Y.I. Jeong<br>LG: Mr. D.E. Lee<br>Orion: Mr. H.C. Moon<br>Orion: Mr. B.I. Jeong<br>Orion: Mr. Karl Min<br>Orion: Mr. H.S. Oh<br>TCRT: Mr. Thanasak Chaiyavech | CHU00029316-320 | C.C. Liu | C.C. Liu, Dep. Vol. 1, 102-104 |

| MEETING DATE | LOCATION | CPT | LG | OEC /DW | SDI | HIT | MEC | MIT | TSB | PHS | LPD | MTPD | TCRT | BMCC | IRI | SMTL | TAT | SONY | THOM | INDIVIDUAL PARTICIPANTS | BEG BATES | DEPONENTS | DEPOSITION TESTIMONY |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 9/9/1998 | | X | X | X | X | | | | | | | | X | | | | | | | SDI - Dae Eui Lee | SDCRT-0086480 | Dae Eui Lee | 205:20-209:9 |
| 9/26/1998 | | X | X | X | X | | | | | | | | X | | | | | | | CPT: J.S. Lu<br>CPT: Michael Du<br>SDD: Mr. K.H. Lee<br>SDD: Mr. S.K. Park<br>SDD: Mr. Moon<br>SDD: Mr. Son<br>LG: Mr. Cho<br>LG: Mr. C.S. Jeon<br>LG: Mr. Y.I. Jeong<br>LG: Mr. K.Y. Kuo<br>Orion: Mr. H.C. moon<br>Orion: Mr. B.C. Jeon<br>Orion: Mr. D.S. Lee<br>Orion: Mr. S.K. Oh<br>TCRT: Mr. Boonchoo | CHU00029262-264 | J.S. Lu | J.S. Lu, Dep. Vol. 1, 133-137 |
| 9/26/1998 | Taiwan | X | X | X | X | | | X | | | | | X | | | | | | | | SDCRT-0086481 | Dae Eui Lee | 209:21-214:22 |
| 9/26/1998 | | | | | | | | | | | | | | | | | | | | SDI - Michael Son | CHU00029281 | Michael Son | 144:12-145:2 |
| 10/9/1998 | Fuzhou | X | X | X | X | | | | | X | | | | | X | | | | | CPT: J.S. Lu<br>CPT: Dai Huang-Kuei<br>CPT: Alex Yeh<br>CPT: Guang-Hui Dai<br>CPT: Wei-Lie Yu<br>PHS: Zheng-Er Shao<br>PHS: President Jian-Zhong Sheng<br>PHS: Manager Bing Ma<br>SSDD: Manager Myoung-Sik Lee<br>SSDD: Zhen Yang<br>Orion: Tae Sik Kong<br>LG: J.B. Park<br>IRI: VP Jian-She Wei | CHU00030679-683 | J.S. Lu | J.S. Lu, Dep. Vol. 2, 170-176 |
| 10/9/1998 | | X | | | X | | | | | X | | | | | | | X | | | Jae In Lee (SDI) | SDCRT-008642 | J.I. Lee | |
| 10/13/1998 | Ruth's Chris Scottsdale, AZ | | | | X | | | | | | | | | | | | | | X | HIT:  Tom Heiser<br>THOM: Mr. Sterling Owens | HEDUS-CRT00160563 | Tom Heiser | 191:05 (Tom Heiser) |
| 10/15/1998 | | X | | | | | X | | | | | | | | | | | | | MEC: Chang, Hsu, Kuo-Wei Kuo: CPT: Du, Ms. Lin<br>CPT: Du, Ching-Yuan (Michael)<br>CPT: Hsieh, Chun-Mei (Christina)<br>CPT: Lin, Fang-Yi<br>SDI: Assistant Vice President<br>SDI: Lee, Jie-Min<br>SDI: Lee, Jia Chih | CHU00028459 | Michael Hsu | Hsu II at 183 |
| 11/00/1998 | | | | | | X | X | | | | | | | | | | | | | HIT: Nobuaki Ito:<br>MEC: K. Shimoda | HDP-CRT00023360 | Nobuaki Ito | 343:08 (Nobuaki Ito) |
| 11/4/1998 | Taiwan | X | X | X | X | | | | | X | | | | | | | | | | Jae In Lee (SDI) | SDCRT-0086440 | J.I. Lee | |
| 11/16/1998 | Singapore | | X | X | X | X | | | | | | | | | | | | | | SDI - Sang Kyu Park, Executive Vice President Kim, Senior Vice President Kim | | Dae Eui Lee | 215:6-220:3 |

| MEETING DATE | LOCATION | CPT | LG | OEC /DW | SDI | HIT | MEC | MIT | TSB | PHS | LPD | MTPD | TCRT | BMCC | IRI | SMTL | TAT | SONY | THOM | INDIVIDUAL PARTICIPANTS | BEG BATES | DEPONENTS | DEPOSITION TESTIMONY |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 11/16/1998 | Singapore | | X | X | X | X | | | | | | | | | | | | | | SDI - Sang Kyu Park, Executive Vice President Kim, Senior Vice President Kim | SDCRT-0086482 | | |
| 11/20/1998 | HIT Asia Plant, Taipei | X | | | X | | | | | | | | | | | | | | | HIT: Chiang-Lung Zhang; CPT: C.C. Liu; CPT: Michael Du | CHU00028383 | | |
| 11/24/1998 | Korea | | X | X | X | | | | | | | | | | | | | | | SDI - Michael Son, D.E. Lee | SDI rog responses: SDCRT-0086485 | Michael Son | 101:15-102:14; 151:15-163:11 |
| 11/27/1998 | | X | X | X | X | | | | | | | | | X | | | | | | CPT: C.C.Liu<br>CPT: Tony Chien<br>CPT: Michael Du<br>SDD: Mr. K. H. Lee<br>SDD: Mr. D.E. Lee<br>SDD: Mr. Son<br>LG: Mr. Choi<br>LG: Mr. Y.I. Jeong<br>LG: Mr. K.Y. Ko<br>Orion: Mr. H.C. Moon<br>Orion: Mr. B.I. Jeong<br>Orion: Mr. Karil Min<br>Orion: Mr. H.S. Oh<br>TCRT: Mr. Boonchoo | CHU00029259-261 | C.C. Liu | C.C. Liu, Dep. Vol. 1, 149-151 |
| 11/27/1998 | Korea | X | X | X | X | | | | | | | | | X | | | | | | SDI - Michael Son, D.E. Lee, K.H. Lee: Orion - H.C. Moon, B.I. Chung, K.Y Ko: CPT - C.C. Ryu: TCRT - Boonchoo | SDI rog responses: SDCRT-0086487 | Michael Son | 36:25 - 37:3 : 39:17 - 42:9: 102:16-103:6: 163:21-176:23 |
| 11/27/1998 | Korea | X | X | X | X | | | | | | | | | X | | | | | | SDI - Kwang Ho Lee, Dae Eui Lee, Michael Sohn LG - Kyu In Choi, Yong Ik Chung, Kyu Young Ko Orion - Hee Chul Moon, Bok Il Chung, Sang Ryun Byun, Sum Kwang Oh, Dae Sik Lee Chunghwa - C.C. Ryu, Michael Du Thai CRT - Mr. Boonchoo | SDCRT-0086487 (Ex. 665) | Dae Eui Lee | 221:1-227:19 |
| 12/8/1998 | Beijing, China | X | X | X | X | | | | | X | | | | | X | X | | | | | CPT: J.S. Lu<br>CPT: Tony Cheng<br>CPT: Michael Du<br>CPT: Alex Yeh<br>PHS: Shou-Li Li<br>PHS: Cheng-Er Shao<br>PHS: Dong Liu<br>SDD: Mr. D.Y. Kim<br>SDD: M.S. Lee et al<br>Orion: Mr. Moon<br>Orion: Mr. Kong et al<br>IRI: President Ma et al<br>BMCC: Wen-Chiang Fan<br>BMCC: Hsin-Wen Huang | CHU00030688-691 | J.S. Lu | J.S. Lu, Dep. Vol. 1, 139-140 |
| 12/11/1998 | | X | | | | | X | | | | | | | | | | | | | | MEC: Chang, Hsu: CPT: Du, Cheng (Tony)<br>CPT: Cheng, Wen-Chun (Tony) (Manager)<br>CPT: Du, Ching-Yuan (Michael)<br>MEC: Hsu, Chih- Yen (Assistant Manager)<br>MEC: Chang, Yu-Hao (Assistant Section Chief) | CHU00026457 | Allen Chang (Zhang) Michael Hsu | Chang II at 170; Hsu II at 177 |
| 12/17/1998 | | X | X | | | | | | | | | | | | | | | | | | CPT: S.J. Yang<br>LG: Mr. B.K. Jeon | CHU00028887-888 | S.J. Yang | S.J. Yang, Dep. Vol. 1, 139-143 |

| MEETING DATE | LOCATION | CPT | LG | OEC/DW | SDI | HIT | MEC | MIT | TSB | PHS | LPD | MTPD | TCRT | BMCC | IRI | SMTL | TAT | SONY | THOM | INDIVIDUAL PARTICIPANTS | BEG BATES | DEPONENTS | DEPOSITION TESTIMONY |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 12/21/1998 | | | X | X | X | | | | | | | | | | | | | | | SDI - Dae Eui Lee | SDCRT-0086473 | Dae Eui Lee | 228:2-229:25 |
| 1999 | | X | | | | | | | | | | | | | | | | | | | HEDUS-CRT00152622 | Tom Heiser | 435:16 (Tom Heiser) |
| 1/00/1999 | | | | | X | X | | | | | | | | | | | | | | | HDP-CRT00051345 | Nobuhiko Kobayashi | 252 (Nobuhiko Kobayashi) |
| 1/6/1999 | Rosewood Grill, Las Vegas, NV | | | | | X | | | | X | | | | | | | | | | HIT: Tom Heiser, Thom Schmitt, BK<br>PHS: Joe Snyder, Emmanual Corney, | HEDUS-CRT00166472 | Tom Heiser | 107:23 (Tom Heiser) |
| 1/7/1999 | Terrace Point, Las Vegas, NV | | | | | X | | | | X | | | | | | | | | | HIT: Tom Heiser, Thom Schmitt<br>PHS: J. Johnson, P. Canavan | HEDUS-CRT00166472 | Tom Heiser | 107:23 (Tom Heiser) |
| 1/7/1999 | Terrace Point, Las Vegas, NV | | | | | X | | | | X | | | | | | | | | | HIT: Thom Schmitt, YN<br>PHS: Pat Canavan, Jeff Johnson, Hiyoshi Kashimura | HEDUS-CRT00098394 | Tom Heiser | 110:14 (Tom Heiser) |
| 1/8/1999 | Xiamen, China | X | | X | X | | | | | X | | | | | X | | | | | CPT: J.S. Lu<br>CPT: Guang-Hui Tai<br>CPT: Wei-Lie Yu<br>SDD: Ming-Zhi Li<br>SDD: Yang Zhen<br>PHS: Zheng-Xi Shao<br>PHS: Bing Ma (Hua Fei Manager)<br>Orion: Tae Sik Kong<br>IRI: Wei-Sheng Li<br>IRI: Jun Yao<br>IRI: Zhao-Jie Wang | CHU00030695-697 | J.S. Lu | J.S. Lu, Dep. Vol. 1, 137-138 |
| 1/12/1999 | U.S. | | | X | X | X | | X | | X | | | | | | | | | X | SDI: Chul Hong Im | SDCRT-0002526 | | |
| 1/13/1999 | (CPT) | X | X | X | X | | | | | X | | | | | | | | | | CPT: Senior Manager Cheng<br>CPT: Miss Hsieh<br>SDD: Mr. Ha<br>SDD: Ms. Betty<br>PHS: Mr. Frank Shao<br>Orion: Mr. Moon<br>LG: Mr. Park | CHU00030698-700 | C.C. Liu | C.C. Liu, Dep. Vol. 1, 153-154 |
| 1/18/1999 | | X | X | X | X | X | | | | X | | | | | | | | | | CPT: C.C. Liu<br>CPT: Miss Hsieh<br>SDD: Mr. Inn Kim<br>SDD: Mr. D.Y. Kim<br>SDD: Mr. Na<br>SDD: Mr. Ha<br>SDD: Mr. J.I. Lee<br>LG: Mr. S.Y. Choi<br>LG: Mr. C.S. Jeon<br>LG: Mr. K.Y. Ko<br>LG: Mr. J.M. Park<br>Orion: Mr. H.C. Moon<br>Orion: Mr. K.H. Kang<br>Orion: Mr. J.H. Moon<br>PHS: Mr. David Chang<br>PHS: Mr. Jerry Lin<br>PHS: Ms. Rosa Hu | CHU00030701-704 | C.C. Liu | C.C. Liu, Dep. Vol. 1, 154-157 Dep. Vol. 3, 411-417 |
| 1/18/1999 | | X | X | | X | | | | | X | | | | | | | | | | | SDCRT-0086557 | | |
| 1/19/1999 | | | | | | X | | | | X | | | | | | | | | | HIT: Thom Schmitt, Tom Heiser, KF, SI, YN,<br>PHS: Ben Matengee Joe Snyder | HEDUS-CRT00098394 | Tom Heiser | 110:14 (Tom Heiser) |

| MEETING DATE | LOCATION | CPT | LG | OEC/DW | SDI | HIT | MEC | MIT | TSB | PHS | LPD | MTPD | TCRT | BMCC | IRI | SMTL | TAT | SONY | THOM | INDIVIDUAL PARTICIPANTS | BEG BATES | DEPONENTS | DEPOSITION TESTIMONY |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1/22/1999 | | X | | | | | | | X | | | | | | | | | | | CPT: S.J. Yang<br>TSB: Mr. Yushino<br>TSB: Mr. Kawano<br>TSB: Mr. Jiye<br>TSB: Mr. Heye | CHU00028240 | S.J. Yang | S.J. Yang, Dep. Vol. 1, 163-166 Dep. Vol. 3, 420-423 |
| 1/22/1999 | | | X | | | X | | | | | | | | | | | | | | HIT: Thom Schmitt<br>LG: Bruce Lee, Ji Woo. | HEDUS-CRT00098394 | Tom Heiser | 110:14 (Tom Heiser) |
| 1/22/1999 | Philips Monitor Facility, Raleigh, N.C. | | | | | X | | | | X | | | | | | | | | | HIT: Dan Mead<br>PHS: Paul Toma | HEDUS-CRT00158744 | Tom Heiser | 426:05 (Tom Heiser) |
| 2/5/1999 | | X | | | | | | | | | | | | | | | | | | C.C. Liu<br>CPT: C.Y. Lin<br>CPT: Michael Du | CHU00021289 | C.C. Liu | C.C. Liu, Dep. Vol. 1, 106-109 |
| 2/10/1999 | | X | X | X | X | | | | | X | | | | | | | | | | Jae In Lee (SDI) | SDCRT-0086561 | J.I. Lee | |
| 2/11/1999 | email | | | | X | | | | | X | X | | | | | | | | | | PIC-00007637 | Patrick Canavan | Patrick Canavan Dep. Vol. 1, 102:25-122:20 |
| 2/12/1999 | | | | | | | | | | X | | | | | | | | X | | Sony: Abbott<br>Sony: Rigby<br>Sony: Inuoe<br>Sony: Mckie<br>Sony: Yamano<br>PH: J. Smith<br>PH: S. Longley<br>PH: S. Akass | PTC-00009040 | Jim Smith | Jim Smith Dep. Vol. 1, 255-260 |
| 2/12/1999 | | X | X | X | X | | | | | X | | | | | | | | | | CPT: Senior Manager Tony Cheng<br>CPT: Miss Hsieh<br>SDD: Mr. Ha<br>SDD: Mr. J.I. Lee<br>SDD: Ms. Betty<br>PHS: Mr. Jerry Lin<br>PHS: Ms. Rosa Hu<br>Orion: Mr. Moon<br>Orion: Mr. Jimmy Kim<br>LG: Mr. Park<br>LG: Mr. I.H. Song | CHU00030713-716 | C.C. Liu | C.C. Liu, Dep. Vol. 1, 157-158 |
| 3/1/1999 | | | X | | | X | | | | | | | | | | | | | | HIT: Thom Schmitt, RYN, TS<br>LG: Daniel Lee, Gary Michak, | HEDUS-CRT00098394 | Tom Heiser | 110:14 (Tom Heiser) |
| 3/3/1999 | | X | X | X | X | | | | | X | | | | | | | | | | CPT: C.C. Liu<br>CPT: Miss Hsieh<br>SDI: Mr. Youn<br>SDI: Mr. Otto<br>PHS: Mr. Jerry Lin<br>PHS: Mr. Limay<br>LG: Mr. Lu<br>LG: Mr. Song<br>Orion: Mr. Justin Park | CHU00030720-727 | C.C. Liu | C.C. Liu, Dep. Vol. 1, 158-160 |

| MEETING DATE | LOCATION | CPT | LG | OEC/DW | SDI | HIT | MEC | MIT | TSB | PHS | LPD | MTPD | TCRT | BMCC | IRI | SMTL | TAT | SONY | THOM | INDIVIDUAL PARTICIPANTS | BEG BATES | DEPONENTS | DEPOSITION TESTIMONY |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 3/7/1999 | | X | X | X | X | | | | | X | | | X | | | | | | | CPT: C.C. Liu<br>CPT: Michael Du<br>SDD: Mr. K.H. Lee<br>SDD: D.H. Lee<br>SDD: D.E. Lee<br>SDD: H.S. Chu<br>SDD: S.E. Lee<br>LG: Mr. Choi<br>LG: Mr. P.Y. Jeong<br>LG: Mr. K.Y. Ko<br>Orion: Mr. H.C. Moon<br>Orion: Mr. S.Y. Byun<br>Orion: Mr. Karl Min<br>Orion: Mr. H.S. Oh<br>TCRT: Mr. Boonchoo<br>TCRT: Mr. Wuttinun | CHU00029245-247 | C.C. Liu | C.C. Liu, Dep. Vol. 1, 160-165 |
| 3/7/1999 | | X | X | X | X | | | | | X | | | X | | | | | | | CPT: C.C. Liu<br>CPT: Michael Du<br>SDD: Mr. K.H. Lee | CHU00029245-247 | C.C. Liu | C.C. Liu, Dep. Vol. 1, 160-165 |
| 3/7/1999 | | X | X | X | X | | | | | X | | | X | | | | | | | CPT: C.C. Liu<br>CPT: Michael Du<br>SDD: Mr. K.H. Lee<br>SDD: D.H. Lee<br>SDD: D.E. Lee<br>SDD: H.S. Chu<br>SDD: S.E. Lee | CHU00029245-247 | C.C. Liu | C.C. Liu, Dep. Vol. 1, 160-165 |
| 3/16/1999 | | X | X | X | X | | | | | X | | | | | | | | | | CPT: Michael Du<br>CPT: Senior Manager Cheng<br>SDD: Mr. Ha<br>SDD: Mr. J.I. Lee<br>LG: Mr. Lim<br>LG: Mr. Park<br>LG: Mr. Kon Chun Yeu | CHU00030731-733 | C.C. Liu | C.C. Liu, Dep. Vol. 1, 165-167 |
| 3/16/1999 | | X | X | X | X | | | | | X | | | | | | | | | | CPT: Michael Du<br>CPT: Senior Manager Cheng<br>SDD: Mr. Ha<br>SDD: Mr. J.I. Lee<br>LG: Mr. Lim<br>LG: Mr. Park<br>LG: Mr. Kon Chun Yeu<br>LG: Mr. Ko<br>Orion: Mr. Moon | CHU00030731-733 | C.C. Liu | C.C. Liu, Dep. Vol. 1, 165-167 |
| 3/16/1999 | | X | X | X | X | | | | | X | | | | | | | | | | CPT: Michael Du<br>CPT: Senior Manager Cheng<br>SDD: Mr. Ha<br>SDD: Mr. J.I. Lee<br>LG: Mr. Lim<br>LG: Mr. Park<br>LG: Mr. Kon Chun Yeu<br>LG: Mr. Ko<br>Orion: Mr. Moon<br>Orion: Mr. Jimmy Kim<br>PHS: Mr. Jerry Lin<br>PHS: Ms. Rosa Hu | CHU00030731-733 | C.C. Liu | C.C. Liu, Dep. Vol. 1, 165-167 |

| MEETING DATE | LOCATION | CPT | LG | OEC /DW | SDI | HIT | MEC | MIT | TSB | PHS | LPD | MTPD | TCRT | BMCC | IRI | SMTL | TAT | SONY | THOM | INDIVIDUAL PARTICIPANTS | BEG BATES | DEPONENTS | DEPOSITION TESTIMONY |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 3/16/1999 | | X | X | X | X | | | | | X | | | | | | | | | | CPT: C.C. Liu<br>CPT: Michael Du<br>SDD: Mr. Ha<br>SDD: Mr. J.I. Lee<br>LG: Mr. Lim<br>LG: Mr. Park<br>LG: Mr. Kon Chun Yeu<br>LG: Mr. Ko<br>Orion: Mr. Moon<br>Orion: Mr. Jimmy Kim<br>PHS: Mr. Jerry Lin<br>PHS: Ms. Rosa Hu | CHU00030731-733 | C.C. Liu | C.C. Liu, Dep. Vol. 2, 373-377 |
| 3/20/1999 | | X | X | X | X | | X | | X | | | | X | | | | | | X | | CHU00123746 | | |
| 3/24/1999 | Korea | | X | X | X | | | | | | | | | | | | | | | SDI - Michael Son, J.I. Lee, J.H. Lee: Orion - K.T. Min, J.M. Kim: LG - S.H. Cho, G.Y. Ko | SDI rog responses: SDCRT-0086537 | Michael Son | 103:20-104:9: 176:25-179:8 |
| 3/25/1999 | Paris, France | | | | X | | | | | | | | | | | | | | X | THOM: Christian Lissorgues<br>THOM: Giles Taldu<br>THOM: Bob Lorch<br>THOM: P. Combes<br>SDI: Yoon Yang<br>SDI: Lak Jin Kim | SDCRT-0086490 | | |
| 3/31/1999 | | X | X | X | X | | | | | X | | | | | | | | | | SDI - Dae Eui Lee<br>Chunghwa - C.C. Liu, Mr. Du<br>Phillips - Jerry Lin | SDCRT-0086569 | | |
| 4/2/1999 | | | X | | X | | | | | | | | | | | | | | | HIT: Yoshi, Kou:<br>LG: Ro, Chon | HDP-CRT00025934 | Nobuhiko Kobayashi | 320 (Nobuhiko Kobayashi) |
| 4/2/1999 | LGE Gumi Plant | | X | | X | | | | | | | | | | | | | | | LG: Yeo: HIT: Nobuhiko Kobayashi | HDP-CRT00025934 | | |
| 4/8/1999 | LG Indonesia | X | X | X | X | | | | X | | | | X | | | | | | | CPT: S.J. Yang<br>SDDM: S.K. Park<br>LG: Mr. B.K. Jeon<br>LG: Mr. M.J. Kim | CHU0028606-608 | S.J. Yang | S.J. Yang, Dep. Vol. 1, 143-151 |
| 4/8/1999 | Huntsville, Alabama | | X | | | X | | | | | | | | | | | | | | HIT: CH SB Thom Schmitt<br>LG: Joseph Kim Joseph Woo, | HEDUS-CRT00098394 | Tom Heiser | 110:14 (Tom Heiser) |
| 4/10/1999 | | X | X | X | X | | | | | X | | | | | | | | | | Jae In Lee (SDI): D.Y. Kim (SDI): C.C. Liu (CPT): Jerry Lin (Philips) | SDCRT-0086584 | J.I. Lee | |
| 4/13/1999 | Seoul | X | | | X | | | | | | | | | | | | | | | C.Y. Lin (CPT): Jae In Lee | SDCRT-008656B6 | J.I. Lee | |
| 4/15/1999 | | X | X | X | X | | | | | | | | | | | | | | | CPT: C.C. Liu<br>CPT: Michael Du<br>SDD: Mr. Inn Kim<br>SDD: Mr. K.H. Lee<br>SDD: Mr. D.H. Lee<br>SDD: Mr. Michael Son<br>LG: Mr. Choi<br>LG: Mr. G.I. Choi<br>LG: Mr. C.H. Lee<br>LG: Mr. S.H. Jo<br>Orion: Mr. H.C. Moon<br>Orion: Mr. S.Y. Byun<br>Orion: Mr. Karl Min<br>Orion: Mr. J.W. Moon | CHU00029235-237 | C.C. Liu | C.C. Liu, Dep. Vol. 1, 167-168 |

| MEETING DATE | LOCATION | CPT | LG | OEC/DW | SDI | HIT | MEC | MIT | TSB | PHS | LPD | MTPD | TCRT | BMCC | IRI | SMTL | TAT | SONY | THOM | INDIVIDUAL PARTICIPANTS | BEG BATES | DEPONENTS | DEPOSITION TESTIMONY |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 4/15/1999 | | X | X | X | X | | | | | X | | | | | | | | | | Jae In Lee (SDI) | SDCRT-0086593 | J.I. Lee | |
| 4/15/1999 | Korea | X | X | X | X | | | | | | | | X | | | | | | | SDI - Michael Son, In Kim, K.H. Lee, D.H. Lee, Mikial Sohn: Orion - H.C. Moon, I.B. Chung, J.O. Moon, S.K. Oh: LG - S.Y. Choi, I.K. Choi, S.H. Cho, C.H. Lee, CPT - C.Y. Lin, C.C. Ryu, Michael Du: TCRT - Tanasak, Boonchoo | SDI rog responses: SDCRT-0086541 | Michael Son | 104:11-17: 179:9-187:18 |
| 4/15/1999 | | X | X | X | X | | | | | | | | X | | | | | | | SDI - Dae Eui Lee | SDCRT-0086545 | Dae Eui Lee | 233:19-236:15 |
| 4/15/1999 | Brussels, Belgium | | | | X | | X | | | X | | | | | | | | X | X | THOM: Serafinski SDI: Yoong Yang SDI: Hak-Jin Kim PHS: Jim Smith PHS: Jef Pos MEC: E. Nill MEC: J. Krauss DOSA: H.K. Kin DOSA: G. Nam SDI: T.S. Park SDI: Y. Yang | SDCRT-0086500 | | |
| 4/21/1999 | Philips Monitors Juarez | | | | | X | | | | X | | | | | | | | | | HIT: Tom Heiser, Genichi Watanabe, Akira Ookubo | HEDUS-CRT00152273 | Kenichi Hazuku Tom Heiser | 122:8 (Kenichi Hazuku): 327, 429 (Tom Heiser) |
| 4/22/1999 | | | | | | | | | | X | | | | | | | | | | PH: Pat Canavan | PTC-00007239 | Jim Smith | Jim Smith Dep. Vol. 1, 269-286 |
| 4/22/1999 | Cafe Lousianne, Norcross, GA | | | | | X | | | | X | | | | | | | | | | HIT: Tom Heiser TN SI PHS: Pat Canavan | HEDUS-CRT00160568 | Tom Heiser | 124:10 (Tom Heiser) |
| 4/27/1999 | Taiwan | X | X | X | X | | | | | X | | | | | | | | | | J.Y. Youn: Senior Lim: C.C. Liu: Deputy General Park | SDCRT-0086597 | | |
| 4/28/1999 | | X | X | X | X | | | | | X | | | | | | | | | | CPT: C.C. Liu CPT: Michael Du SDD: Mr. Ha SDD: Mr. Youn SDD: Ms. Betty Lee LG: Mr. Lim LG: Mr. Song LG: Mr. Ko Orion: Mr. Moon Orion: Mr. Cho PHS: Mr. Frank Shoo PHS: Ms. Rosa Hu | CHU00030749-751 | C.C. Liu | C.C. Liu, Dep. Vol. 1, 168-170 |
| 4/30/1999 | Taiwan | X | X | X | X | | | | | | | | X | | | | | | | J.Y. Youn | | J.Y. Youn | 112:25 |
| 5/11/1999 | | X | X | X | X | | | | | | | | | | | | | | | CPT: Senior Manager Yang CPT: Michael Du | CHU00029228-230 | C.C. Liu | C.C. Liu, Dep. Vol. 1, 170-171 |
| 5/12/1999 | Taiwan | X | X | X | X | | | | | | | | X | | | | | | | J.Y. Youn | | J.Y. Youn | 132:10 |
| 5/12/1999 | Taiwan | X | X | X | X | | | | | X | | | | | | | | | | J.Y. Youn | SDCRT-0086605 | J.I. Lee: J.Y. Youn | 360:14 : 453:18 |

HIGHLY CONFIDENTIAL
EXHIBIT  A

| MEETING DATE | LOCATION | CPT | LG | OEC /DW | SDI | HIT | MEC | MIT | TSB | PHS | LPD | MTPD | TCRT | BMCC | IRI | SMTL | TAT | SONY | THOM | INDIVIDUAL PARTICIPANTS | BEG BATES | DEPONENTS | DEPOSITION TESTIMONY |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 5/14/1999 | | X | X | X | X | | | | | X | | | | | | | | | | CPT: Section Chief Du<br>CPT: Section Chief Yu<br>CPT: Chun-Mei Hsieh<br>SDD: Mr. D.Y. Kim<br>SDD: Mr. Yoon<br>PHS: Mr. Jerry Lin<br>PHS: Ms. Rosa Hu<br>PHS: Mr. Frank Shao<br>Orion: Mr. Cho<br>LG: Mr. Lin<br>LG: Mr. Park<br>LG: Mr. Lu | CHU00030757-762 | C.C. Liu | C.C. Liu, Dep. Vol. 1, 171-173 |
| 5/20/1999 | | X | X | X | X | | | | | | | | | X | X | | | | | CPT: C.C.Liu<br>CPT: Miss Chun-Mei Hsieh<br>SDD: Mr. I. Kim<br>SDD: Mr. Michael Son<br>SDD: Mr. Ha<br>OEC: Mr. H. C. Moon | CHU00029191-194 | C.C. Liu | C.C. Liu, Dep. Vol. 1, 109-110 |
| 5/21/1999 | | X | X | X | X | | | | | X | | | | | | | | | | CPT: J.S. Lu | CHU00030766-767 | J.S. Lu | J.S. Lu, Dep. Vol. 2. |
| 6/2/1999 | | X | X | X | X | | | | | | | | X | | | | | | | CPT: President C.Y. Lin<br>CPT: Director C.C. Liu<br>CPT: Michael Du<br>OEC: Mr. Moon et al<br>SDD: Mr. Lee et al<br>LG: Mr. Choi et al<br>TCRT: Mr. Chaovalit et al | CHU00029189-190 | C.C. Liu | C.C. Liu, Dep. Vol. 1, 173-174 |
| 6/4/1999 | mainland China (China Shenzhen) | X | | X | X | | X | | | X | X | | | X | X | | | | | CPT: Lu, Jing-Song (Jason) 9Senior Manager)<br>CPT: Dai, Guang-Hui<br>IRI: Wang, Zhao-jie<br>MEC: Huang, Xin-wen (Senior Manager)<br>OEC: Kong, Tae Sik (Section Chief)<br>PHS: Shao, Zheng-xi (Senior Manager of Operations)<br>PHS: Liu (Director)<br>PHS: Ma, Bing<br>SDI: Li, Ming-zhi (Department Manager)<br>SDI: Yang, Zhen | CHU00030777 | Jason lu | Lu II at 179-83 |
| 6/7/1999 | Philips Singapore | | | | | X | | | | X | | | | | | | | | | HIT: Thom Schmitt,<br>PHS: John Tan Arrisato-san Rickey Chian | HEDUS-CRT00098394 | Tom Heiser | 110:14 (Tom Heiser) |
| 6/8/1999 | Philips Suzhou | | | | | X | | | | X | | | | | | | | | | HIT: Thom Schmitt | HEDUS-CRT00098394 | Tom Heiser | 110:14 (Tom Heiser) |
| 6/15/1999 | email | | | | | | | | | | X | | | | | | | X | | | PTC-00007204: PTC-00007205 | Patrick Canavan | Patrick Canavan Dep. Vol. 1, 159:16-161:8: 161:15-172:21 |
| 6/17/1999 | Brussels, Belgium | | | X | X | | X | | | X | | | | | | | | X | X | THOM: Serafinski<br>SDI: Joe Colvin<br>PHS: Jef Pos<br>PHS: Leo Mink<br>MEC: Krauss<br>DW: Nam<br>SONY: Kurebayashi | SDCRT-0086496 | | |

| MEETING DATE | LOCATION | CPT | LG | OEC/DW | SDI | HIT | MEC | MIT | TSB | PHS | LPD | MTPD | TCRT | BMCC | IRI | SMTL | TAT | SONY | THOM | INDIVIDUAL PARTICIPANTS | BEG BATES | DEPONENTS | DEPOSITION TESTIMONY |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 6/21/1999 | | X | X | X | X | | | | X | | | | X | | | | | | | CPT: S.J. Yang<br>CPT: Michael Du<br>SDI: S.K. Park<br>SDI: S.W. Lee<br>LG: G.I. Choi<br>LG: S.H. Jo<br>Orion: D.S. Lee<br>Orion: Karl Min<br>TCRT: Thanasakoo<br>TCRT: Boonchoo | CHU00029185-188 | S.J. Yang | S.J. Yang, Dep. Vol. 1, 152-163 |
| 6/21/1999 | | X | X | X | X | | | | | | | | X | | | | | | | SDI- Dae Eui Lee | SDCRT-0086546 | Dae Eui Lee | 237:3-239:1 |
| 6/22/1999 | Fuzhou | X | | X | | | | | | | | | | | X | | | | | CPT: J.S. Lu<br>CPT: Director C.C. liu<br>Orion: Director Moon<br>IRI: Manager Li<br>IRI: Manager Sha | CHU00029050-051 | J.S. Lu | J.S. Lu, Dep. Vol. 2, 183-190 |
| 6/23/1999 | Taiwan | X | X | X | X | | | | | X | | | | | | | | | | Jae In Lee (SDI) | SDCRT-0086641 | J.I. Lee | |
| 6/28/1999 | | | | X | X | | | | | X | X | X | | | | | | X | X | SDD: J. Colvin,<br>SDD: M. Son.<br>SDD: P. Peeters,<br>SDD: M. Schoonderwoert,<br>SDD: R. Tabaksblat. | PHLP-CRT-080623 | Bob O'Brien | Bob O'Brien Dep. Vol. 1,: 113:24-121:1 |
| 6/28/1999 | | X | X | X | X | | | | | X | | | | | | | | | | CPT: President C.Y. Lin<br>CPT: Manager Tony Cheng<br>CPT: Michael Du<br>CPT: Mx. Chun-Mei Hsieh<br>SDD: Mr. Inn Kim<br>SDD: Mr. D.Y. Kim<br>SDD: Mr. J.I. Lee<br>SDD: Mr. Ha<br>PHS: Mr. David Chang<br>PHS: Mr. Jerry Lin<br>PHS: Ms. Rosa Hu<br>Orion: Mr. H.C. Moon<br>Orion:Mr. K.H. Kang<br>Orion:Mr. J.H. Moon<br>Orion:Mr. Jimmy Kim<br>LG: Mr. K.S. Cho<br>LG: Mr. C.S. Jeon<br>LG: Mr. J.M. Park<br>LG: Mr. K.Y. Ko | CHU00030787-794 | C.C. Liu | C.C. Liu, Dep. Vol. 1, 174-176 |
| 6/28/1999 | Netherlands | | | | X | | | | | X | | | | | | | | | | SDI - Michael Son, Joe Colvin | PHLP-CRT080623 | Michael Son | 331:19-334 |
| 7/13/1999 | Tianjin | X | | | X | | | | | | | | | | | | | | | CPT: J.S. Lu<br>CPT: Wei-Lie Yu<br>TSDD: Yu-Huan Wu<br>TSDD: Jun Cui<br>TSDD: Gang Li | CHU00030799-800 | J.S. Lu | J.S. Lu, Dep. Vol. 1, 138-139 |
| 7/16/1999 | | | | X | X | | | | | | | | | | | | | | X | THOM: Christian Lissorgues | SDCRT-0086506 | | |
| 7/20/1999 | | X | | | | | X | | | | | | | | | | | | | MEC: Chang, Hsu, Kuo-Wei Kuo: CPT: Du, Ms. Lin | CHU00030803 | Allen Chang (Zhang)<br>Michael Hsu | Chang II at 179; Hsu II at 183 |

| MEETING DATE | LOCATION | CPT | LG | OEC /DW | SDI | HIT | MEC | MIT | TSB | PHS | LPD | MTPD | TCRT | BMCC | IRI | SMTL | TAT | SONY | THOM | INDIVIDUAL PARTICIPANTS | BEG BATES | DEPONENTS | DEPOSITION TESTIMONY |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 7/23/1999 | | X | X | X | X | | | | | X | | | | | | | | | | CPT: President C.Y. Lin<br>CPT: Manager Tony Cheng<br>CPT: Michael Du<br>CPT: Mx. Chun-Mei Hsieh<br>SDD: Mr. Inn Kim<br>SDD: Mr. D.Y. Kim<br>SDD: Mr. J.I. Lee<br>SDD: Mr. Ha<br>PHS: Mr. David Chang<br>PHS: Mr. Jerry Lin<br>PHS: Ms. Rosa Hu<br>Orion: Mr. H.C. Moon<br>Orion:Mr. K.H. Kang<br>Orion:Mr. J.H. Moon<br>Orion:Mr. Jimmy Kim<br>LG: Mr. S.Y. Choi<br>LG: Mr. C.S. Jeon<br>LG: Mr. Johnny Song<br>LG: Mr. K.Y. Ko | CHU00030809-814 | C.C. Liu | C.C. Liu, Dep. Vol. 1, 176-177 |
| 7/28/1999 | | X | X | | X | | | | | X | | | | | | | | | | CPT: C.C. Liu<br>CPT: Ms. Fang-Yi Lin<br>CPT: Michael Du<br>SDD: Mr. Youn<br>SDD: Mr. Otto Lee<br>LG: Mr. Lin<br>LG: Mr. Xong<br>PHS: Mr. Milan<br>PHS: Ms. Rosa Hu | CHU00030807-808 | C.C. Liu | C.C. Liu, Dep. Vol. 1, 177-179 |
| 7/28/1999 | Taiwan | X | X | X | X | | | | | X | | | | | | | | | | C.C. Liu: Senior Lim: Deputy General Manager Moon: J.Y. Youn | SDCRT-0086662 | J.Y. Youn | 141:5: 458:7 |
| 8/00/1999 | | X | X | X | X | | | | | X | | | | | | | | | | CPT: C.C. Liu<br>CPT: C.Y. Lin<br>OEC: Young Nam Kim<br>OEC: Hee Chul Moon<br>SDI: In Kim<br>SDI: Duk Yun Kim<br>LG: Ki Song Cho<br>LG: Sang Ryong Choi<br>PH: President David<br>PH: Jerry Lin<br>PH: Kyung Ho Kang<br>PH: Jae Ho Bae<br>PH: Jung Sik Lim<br>PH: Seung Pyung Koo<br>PH: Yong Ro Song<br>PH: Han Ku Cho | SDCRT-0086675 | Jim Smith | Jim Smith Dep. Vol. 1, 192-198 |
| 8/3/1999 | Japan: Kanagawa | | | | | X | X | | | | | | | | | | | | | | HIT: Junji Kaneko: MEC: Takadera | HDP-CRT00025918 | | |
| 8/4/1999 | Taiwan | X | X | X | X | | | | | X | | | | | | | | | | J.Y. Youn | | J.Y. Youn | 145:7 |

| MEETING DATE | LOCATION | CPT | LG | OEC/DW | SDI | HIT | MEC | MIT | TSB | PHS | LPD | MTPD | TCRT | BMCC | IRI | SMTL | TAT | SONY | THOM | INDIVIDUAL PARTICIPANTS | BEG BATES | DEPONENTS | DEPOSITION TESTIMONY |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 8/5/1999 | Nanjing, China | X | | X | X | | | | | X | | | | X | X | | | | | CPT: J.S. Lu<br>CPT: Yu Wei-Lieh<br>CPT: C.C. Liu<br>SDD: Myoung Sik Lee<br>SDD: Zhen Yang<br>BMCC: Xin-Wen Huang<br>Orion: Jung Saong Park<br>IRI: Wei-Sheng Li<br>IRI: Zhao-Jie Wang<br>PHS: Zheng-Xi Shao<br>PHS: Xiu-Hua Li<br>PHS: Si-Quan Li<br>PHS: Dong Liu | CHU00030819-822 | J.S. Lu | J.S. Lu, Dep. Vol. 2, 157-158 |
| 8/9/1999 | | X | | | X | | | | | | | | | | | | | | | PH: David Chang<br>SDI: D.Y. Kim | SDCRT-0086690 | Jim Smith | Jim Smith Dep. Vol. 1,  44-61 |
| 8/16/1999 | | | X | | X | | | | | | | | | | | | | | | Hwa Gyu Lee (LG): Chang Seon Choi (LG): Seung Hwa Baek (LG): Woon Gyu Lee (LG): Young Sup Moon (SDI): Jung Hoon Choi (SDI): Hun Sul Chu (SDI) | SDCRT-0086772 | HS Chu | |
| 8/20/1999 | | X | X | X | X | | | | | X | | | | | | | | | | CPT: Lin (President)<br>CPT: Liu (Director)<br>CPT: Du, Ching-Yuan (Michael)<br>LG: Cho, S.Y.<br>LG: Jeon, C.S.<br>LG: Ko, K.Y.<br>OEC: Moon, H.C.<br>OEC: Cho, Han-Koo<br>OEC: Kang, K.H.<br>OEC: Kim<br>PHS: Chang, David<br>PHS: Smith, J.M.<br>PHS: Lin, Jerry<br>PHS: Pei, J.H.<br>SDI: Kim, In<br>SDI: Kim, D.Y.<br>SDI: Ha<br>SDI: Lee, Jae In | CHU00030835 & CHU00030835.01E | Jim Smith | Jim Smith Dep. Vol. 1, 61-79 |
| 8/20/1999 | | X | | | | | | | | | | | | | | | | | | CPT: President Lin<br>CPT: C.C. Liu<br>CPT: Michael Du<br>SDD: Mr. In Kim<br>SDD: Mr. D.Y. Kim<br>SDD: Mr. Ha<br>SDD: Mr. Lee Jae In<br>LG: Mr. S.Y. Cho<br>LG: Mr. C.S. Jeon<br>LG: Mr. K.Y. Ko<br>Orion: Mr. H.C. Moon<br>Orion: Mr. Han-Koo cho<br>Orion: Mr. K.H. Kang<br>Orion: Mr. Kim<br>PHS: Mr. David Chang<br>PHS: Mr. J.M. Smith<br>PHS: Mr. Jerry Lin<br>PHS: Mr. J.H. Pei | CHU00030835-838 | C.C. Liu | C.C. Liu, Dep. Vol. 1, 179-180 |

| MEETING DATE | LOCATION | CPT | LG | OEC /DW | SDI | HIT | MEC | MIT | TSB | PHS | LPD | MTPD | TCRT | BMCC | IRI | SMTL | TAT | SONY | THOM | INDIVIDUAL PARTICIPANTS | BEG BATES | DEPONENTS | DEPOSITION TESTIMONY |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 8/23/1999 | Future meeting planned for Taiwan and Malaysia | X | X | X | X | | | | | X | | | X | X | X | X | | | | CPT: S.J. Yang<br>CPT: Michael Du<br>CPT: Tony Cheng<br>SDI: Mr. In Kim<br>SDI: D.E. Lee<br>SDI: Y.S. Moon<br>SDI: Michael Son<br>LG: S.Y. Choi<br>LG: G.I. Choi<br>LG: Hwa-Kyu Lee<br>LG: C.S. Choi<br>LG: K.J. Park<br>Orion: Mr. H.C. Moon<br>Orion: Mr. H.K. Cho<br>Orion: Mr. Karl Min<br>TCRT: Mr.Thanasakoo<br>TCRT: Mr. Boonchoo | CHU00029179-184 | S.J. Yang | S.J. Yang, Dep. Vol. 1, 166-172 |
| 8/23/1999 | Taiwan | | | | X | | | | | | | | | | | | | | | SDI - Michael Son, In Kim | CHU00029179 | Michael Son | 337:21-339:22 |
| 8/26/1999 | | X | X | X | X | | | | | | | | | | | | | | | CPT: Michael Du<br>CPT: Chu Xiangguo (TOK)<br>LG: Mr. Mok-Hyeon Seong<br>SDD: Mr. Kim Young Gon<br>Orion: Mr. Sung-Bae Kim | CHU00030839-840 | C.C. Liu | C.C. Liu, Dep. Vol. 3, 401-404 |
| 8/27/1999 | | X | X | X | X | | | | | | | | X | | | | | | | CPT: Michael Du<br>CPT: Senior Manager Cheng<br>CPT: Senior Manager Yang<br>SDD: Mr. Inn Kim<br>SDD: Mr. D.E. Lee<br>SDD: Mr. Y.S. Moon<br>SDD: Mr. Michael Son<br>LG: Mr. S.Y. Choi<br>LG: Mr. G.I. Choi<br>LG: Mr. Hwa-Kyu Lee<br>LG: Mr. C.S. Choi<br>LG: Mr. K.J. Park<br>Orion: Mr. H.C. Moon<br>Orion: Mr. H.K. Cho<br>Orion: Mr. Karl Min<br>TCRT: Mr. Thanasa<br>TCRT: Mr. Boonchoo | CHU00029179-184 | C.C. Liu | C.C. Liu, Dep. Vol. 1, 180-182 |
| 09/00/1999 | | | | | X | X | | | | X | | | | | | | | | | | HDP-CRT00025915 | Kazumasa Hirai Nobuhiko Kobayashi | 283:23 (Kazumasa Hirai); 260, 471 (Nobuhiko Kobayashi) |
| 9/2/1999 | | X | X | X | X | | | | | X | | | | | | | | | | CPT: Director C.C. Liu<br>CPT: Ms. Hsieh<br>CPT: Senior Manager Cheng<br>SDD: Mr. Youn<br>PHS: Mr. Jerry Lin<br>Orion: Mr. Moon<br>LG: Mr. Lin<br>LG: Mr. Song | CHU00030846-850 | C.C. Liu | C.C. Liu, Dep. Vol. 1, 182-183 |
| 9/2/1999 | | X | X | X | X | | | | | X | | | | | | | | | | J.Y. Youn | | J.Y. Youn | 152:8 |

| MEETING DATE | LOCATION | CPT | LG | OEC /DW | SDI | HIT | MEC | MIT | TSB | PHS | LPD | MTPD | TCRT | BMCC | IRI | SMTL | TAT | SONY | THOM | INDIVIDUAL PARTICIPANTS | BEG BATES | DEPONENTS | DEPOSITION TESTIMONY |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 9/7/1999 | | X | | | | | X | | | | | | | | | | | | | CPT: Yang, Sheng-Jen (S.J.)<br>MEC: Tomori, (Mr.) (Sales Manager) | CHU00028438 | S.J. Yang; Y.J Yang | Yang at 172-73 |
| 9/13/1999 | | X | X | X | X | | | | | | | | X | | | | | | | CPT: C.C. Liu<br>CPT: S.J. Yang<br>SDD: Mr. Park et al<br>LG: Mr. Jeon et al<br>Orion: Mr. Kim et al<br>TCRT: Mr. Boonchoo | CHU00029065-067 | S.J. Yang | S.J. Yang, Dep. Vol. 2, 192-198 |
| 9/14/1999 | | X | | | | | X | | | | | | | | | | | | | MEC: Chang, Hsu, Kuo    CPT: Liu (Sales Director)<br>CPT: Yang, Sheng-Jen (S.J.)<br>MEC: Songbon (Department Manager) | CHU00028439 | Allen Chang (Zhang); Y.J Yang | Chang II at 183: Yang at 192-203 |
| 9/14/1999 | M-MEC Malaysia factory | X | | | | | X | | | | | | | | | | | | | CPT: S.J. Yang<br>CPT: Director Liu<br>M-MEC: Mr. Matsumoto<br>M-MEC: Mr. Songben | CHU00028441-446 | S.J. Yang | S.J. Yang, Dep. Vol. 2, 198-203 |
| 9/20/1999 | | X | X | X | X | | | | | X | | | X | | | | | | | CPT: Liu, Chih-Chun (C.C.) (Director)<br>CPT: Cheng, Wen-Chun (Tony) (Senior Manager)<br>CPT: Yang, Sheng-Jen (S.J.) (Senior Manager)<br>CPT: Du, Ching-Yuan (Michael)<br>SDI: Kim, Inn (In)<br>SDI: Kim, D.Y.<br>SDI: Lee, Jae In<br>SDI: Ha<br>LG: Choi, S.Y.<br>LG: C.S. Jeon<br>LG: Lim<br>LG: Ko, K.Y.<br>OEC: Cho, H.K.<br>OEC: Moon<br>OEC: Kang, K.H.<br>OEC: Kim, Jimmy<br>PHS: Smith, Jim<br>PHS: Jerry Lin<br>PHS: Hu, Rosa | CHU00030855 & CHU00030855.01E | Jim Smith | Jim Smith Dep. Vol. 1,  79-98 |
| 9/20/1999 | | X | X | X | X | | | | | X | | | | | | | | | | CPT: Liu, Chih-Chun (C.C.) (Director)<br>CPT: Chen (Manager)<br>CPT: Yang, Sheng-Jen (S.J.) (Senior Manager)<br>CPT: Du, Ching-Yuan (Michael)<br>SDI: Kim, Inn (In)<br>SDI: Son, Michael<br>SDI: Ha<br>LG: Choi, S.Y.<br>LG: Choi, G.I.<br>LG: Lee, Hwa-Kyu<br>LG: Ko, K.Y.<br>LG: Park. K.J.<br>OEC: Cho, H.K.<br>OEC: Moon, J.H.<br>OEC: Min, Karl<br>PHS: Mink, Leo<br>PHS: Hu, Rosa | CHU00029175 & CHU00029175.01E | Jim Smith | Jim Smith Dep. Vol. 1,  98-106 |

| MEETING DATE | LOCATION | CPT | LG | OEC/DW | SDI | HIT | MEC | MIT | TSB | PHS | LPD | MTPD | TCRT | BMCC | IRI | SMTL | TAT | SONY | THOM | INDIVIDUAL PARTICIPANTS | BEG BATES | DEPONENTS | DEPOSITION TESTIMONY |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 9/20/1999 | | X | X | X | X | | | | | X | | | | | | | | | | CPT: C.C. Liu<br>CPT: C.Y. Lin<br>CPT: Tony Cheng<br>CPT: S.J. Yang<br>CPT: Michael Du<br>SDD: Mr In Kim<br>SDD: Mr D.Y. Kim<br>SDD: Mr. Lee Jae In<br>SDD: Mr. Ha<br>LG: Mr. S.Y Choi<br>LG: Mr. C.S. Jeon<br>LG: Mr. K.Y. Ko<br>LG: Mr. Lim<br>Orion: Mr. Han-Koo Cho<br>Orion: Mr. K.B. Kang<br>Orion: Mr. Jimmy Kim<br>Orion: Mr. Moon<br>PHS: Mr. Jim Smith<br>PHS: Mr. Jerry Lin<br>PHS: Ms. Rosa Hu | CHU0003855-868 | C.C. Liu | C.C. Liu, Dep. Vol. 1, 183-185 |
| 9/20/1999 | Taipei | | X | X | X | | | | | X | | | | | | | | | | | | | 109:6 |
| 9/20/1999 | Taiwan | X | X | X | X | | | | | X | | | | | | | | | | Jae In Lee (SDI) | SDCRT-0086700 | J.I. Lee | |
| 9/21/1999 | | X | | X | X | | | | | X | | | | X | | | | | | CPT: C.C. Liu<br>CPT: Michael Du<br>CPT: Senior Manager Tony Cheng<br>CPT: S.J. Yang<br>SDD: Mr Inn Kim<br>SDD: Mr. Michael Son<br>SDD: Mr. Ha<br>LG: S.Y Choi<br>LG: G.I. Choi<br>LG: Mr. Hwa-Kyu Lee,<br>LG: Mr. K.Y. Ko,<br>LG: Mr. K.J. Park<br>Orion: Mr H.K. Cho<br>Orion: Mr. J.H. Moon<br>Orion: Mr. Karl Min<br>PHS: Mr. Leo Mink<br>PHS: Ms. Rosa Hu | CHU00029175-178 | C.C. Liu | C.C. Liu, Dep. Vol. 1, 185-187<br>Dep. Vol. 3, 421-424<br>Dep. Vol. 3, 539-541 |
| 9/23/1999 | | | | | X | | X | | | X | | | | | | | | X | X | PHS: Jef Pos<br>PHS: Leo Mink<br>SDI: Colvin<br>THOM: P. Serafinski<br>THOM: M. Kris<br>MEC: J. Krauss<br>SONY: M. Kurebayashi<br>OEC: Heechul Moon<br>OEC: Gil Nam | SDCRT-0086508 | | |
| 9/27/1999 | Taiwan | X | X | X | X | | | | | X | | | | | | | | | | Jae In Lee (SDI) | SDCRT-0086700 | J.I. Lee | |
| 9/28/1999 | Email | | | | X | X | | | | | | | | | | | | | | HIT: Koyabashi, Hirai, Ito | HDP-CRT00025915 | Nobuhiko Kobayashi | 260 (Nobuhiko Kobayashi) |

| MEETING DATE | LOCATION | CPT | LG | OEC /DW | SDI | HIT | MEC | MIT | TSB | PHS | LPD | MTPD | TCRT | BMCC | IRI | SMTL | TAT | SONY | THOM | INDIVIDUAL PARTICIPANTS | BEG BATES | DEPONENTS | DEPOSITION TESTIMONY |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 9/29/1999 | Toshiba Thailand | X | | | | | | | X | | | X | | | | | | | | S.J. Yang, C.C. Liu: Toshiba-Mr. Kanno, Mr. Kawashima, Mr. Nishimura, Mr. Yuasa | CHU00028228 | S.J. Yang: Kazutaka Nishimura | |
| Late 1999 | | | | | X | | X | | | | | | | | | | | | | | SDCRT-0087291 | HS Chu | |
| 10/00/1999 | | | | | X | X | | | | | | | | | | | | | | | HDP-CRT00023305 | Nobuhiko Kobayashi | 285 (Nobuhiko Kobayashi) |
| 10/1/1999 | | X | | | | | X | | | | | | | | | | | | | MEC: Chang, Yi-Feng Huang | CHU00028432 | Allen Chang (Zhang) | Chang II at 185 |
| 10/4/1999 | Taiwan | X | | | X | | | | | | | | | | | | | | | J.Y. Youn | | J.Y. Youn | 260:25 |
| 10/11/1999 | | X | | | X | | | | | | | | | | | | | | | SDI- Dae Eui Lee Chunghwa - S.J. Yang | SDCRT-0086553 | Dae Eui Lee | 239:12-241:17 |
| 10/13/1999 | | X | X | X | X | | | | | | | | | | | | | | | CPT: President Lin CPT: Director C.C. Liu CPT: Section Chief Du CPT: Ms. Hsieh SDD: Mr. Lee PHS: Mr. Jerry Lin PHS: Ms. Limay Liu Orion: Mr. Moon LG: Mr. Lin LG: Mr. Charles Lu | CHU00030888-893 | C.C. Liu | C.C. Liu, Dep. Vol. 1, 187-188 |
| 10/15/1999 | Fax | X | X | X | X | | | | | | X | | | | | | | | | CPT: Michael Du CPT: C.Y. Lin CPT: C.C. Liu CPT: Tony Cheng SDI: H. M. Ha SDI: In Kim SDI: D.Y. Kim SDI: J. I. Lee SDI: H.M. Ha LG: J. S. Rim LG: S.Y. Choi LG:K.Y. Ko LG: C.S. Jeon OEC: J.H. Moon OEC: H. K. Cho OEC: H.S. Lee OEC: K. H. Kang OEC: Jimmy Kim PH: Jim Smith PH: Jerry Lin PH: Limay Liu | CHU00021272 | Jim Smith | Jim Smith Dep. Vol. 1, 234-249 |
| 10/20/1999 | | X | X | | | | | | X | | | | | | | | | | | CPT: S.J. Yang TSB: Mr. Yasukawa | CHU00028229-330 | S.J. Yang | S.J. Yang, Dep. Vol. 2, 208-216 |
| 10/26/1999 | Taiwan | X | X | X | X | | | | | X | | | | | | | | | | Jae In Lee (SDI) | SDCRT-0086703 | J.I. Lee | |

| MEETING DATE | LOCATION | CPT | LG | OEC/DW | SDI | HIT | MEC | MIT | TSB | PHS | LPD | MTPD | TCRT | BMCC | IRI | SMTL | TAT | SONY | THOM | INDIVIDUAL PARTICIPANTS | BEG BATES | DEPONENTS | DEPOSITION TESTIMONY |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 10/27/1999 | | X | X | X | X | | | | | | | | X | | | | | | | CPT: C.C. Liu<br>CPT: Michael Du<br>CPT: Senior Manager Yang<br>SDD: Mr. Inn Kim,<br>SDD: Mr. S.K Park<br>SDD: Mr. Y.S. Moon<br>LG: Mr. S. Y Choi,<br>LG: Mr. G.I. Choi,<br>LG: Mr. Hwa-Kyu Lee,<br>LG: Mr. H.W. Jeon,<br>LG: Mr. E.J. Kim<br>Orion: Mr. H.K. Cho,<br>Orion: Mr. J.H. Moon,<br>Orion: Mr. Karl Min<br>TCRT: Mr. Chovali<br>TCRT: Mr.Thanasa<br>TCRT: Mr. Boonchoo | CHU00030899-903 | C.C. Liu | C.C. Liu, Dep. Vol. 1, 188-189 Dep. Vol. 2, 362-370 |
| 10/29/1999 | Paris, France | | | | X | | | | | | | | | | | | | | X | THOM: Christian Lissorgues<br>SDI: Y. Yang<br>SDI: L.J. Kim | SDCRT-0086511 | | |
| 10/29/1999 | | | | X | X | | X | | | X | | | | | | | | X | X | PHL: J. Pos<br>PHL: L. Mink<br>PHL: G. Staal<br>SDI: Ma. Matthes<br>SDI: Lak Jin Kim<br>SDI: Colvin<br>MEC: J. Krauss<br>SONY: Kurebayashi<br>OEC: G. Nam<br>THOM: Serafinski<br>THOM: K. Mortier | SDCRT-0086514 | | |
| 11/3/1999 | | X | | | | | | | | | | | | | | | | | | CPT: C.C. Liu<br>CPT: Senior Manager Cheng<br>CPT: Michael Du<br>SDD: Mr. Youn<br>LG: Mr. Lim<br>LG: Mr. Lu<br>PHS: Mr. Jerry Lin<br>PHS: Mr. Milan Balan<br>PHS: Ms. Limay Liu | CHU00030904-909 | C.C. Liu | C.C. Liu, Dep. Vol. 1, 189-191 |
| 11/3/1999 | | X | X | | X | | | | | X | | | | | | | | | | | | J.Y. Youn | 269:13 |
| 11/9/1999 | SDD Korea | X | X | X | X | | | | | X | | | | | | | | | | CPT: S.J. Yang<br>SDD: Mr. Y.S. Moon<br>SDD: Mr. Michael Son<br>SDD: Mr. T.R. Park<br>LG: Mr. Choi<br>Orion: Mr. Oh<br>Orion: Mr. Karl Min | CHU00029059-061 | S.J. Yang | S.J. Yang, Dep. Vol. 2, 216-223 |
| 11/9/1999 | | | | | | X | | | X | | | | | | | | | | | HIT: Saito; TSB: Amano | MTPD-0016566 | | |
| 11/9/1999 | Taiwan | X | X | X | X | | | | | X | | | | | | | | | | J.Y. Youn: Mr. Ha | | J.Y. Youn | 158:3: 320:13 |
| 11/14/1999 | | X | X | | | X | X | | | | | | | | | | | | | CPT: C.C. Liu<br>CPT: S. J. Yang<br>M-MEC: Department Manager Songhen | CHU00028441 | C.C. Liu | C.C. Liu, Dep. Vol. 3, 518-519 |

| MEETING DATE | LOCATION | CPT | LG | OEC /DW | SDI | HIT | MEC | MIT | TSB | PHS | LPD | MTPD | TCRT | BMCC | IRI | SMTL | TAT | SONY | THOM | INDIVIDUAL PARTICIPANTS | BEG BATES | DEPONENTS | DEPOSITION TESTIMONY |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 11/25/1999 | | X | X | X | X | | | | | X | | | X | | | | | | | CPT: Liu (Director)<br>CPT: Cheng (Manager)<br>CPT: Yang (Manager)<br>CPT: Du (Section Chief)<br>CPT: Hsieh, Chun-Mei (Christina)<br>LG: Choi, S.Y.<br>LG: Choi, G.I.<br>LG: Park, K.J.<br>LG: Ko, K.Y.<br>OEC: Cho, H.K.<br>OEC: Kang<br>OEC: Min, Karl<br>PHS: Smith, Jim<br>PHS: Hu, Rosa<br>SDI: Song, Michael<br>SDI: Park, J.Y.<br>T-CRT: Chaovalit<br>T-CRT: Boonchoo | CHU00029163 &<br>CHU00029163.01E | Jim Smith | Jim Smith Dep.<br>Vol. 1, 106-114 |
| 11/25/1999 | | X | X | X | X | | | | | X | | | | | X | X | | | | CPT: Director C.C. Liu<br>CPT: Manager Yang<br>CPT: Section Chief Du<br>CPT: Ms. Hsieh<br>SDD: Mr. Michael Song<br>SDD: Mr. J.Y. Park<br>PHS: Mr. Jim Smith<br>PHS: Ms. Rosa Hu<br>LG: Mr. S.Y. Choi<br>LG: Mr. G.I. Choi<br>LG: Mr. K.J. Park<br>LG: Mr. K.Y. Ko<br>Orion: Mr. H.K. Cho<br>Orion: Mr. Kang<br>Orion: Mr. Karl Min<br>TCRT: Mr. Chaovalit<br>TCRT: Mr. Boonchoo | CHU00029163-170 | C.C. Liu | C.C. Liu, Dep. Vol. 1,<br>191-192<br>Dep. Vol. 2,<br>382-384<br>Dep. Vol. 3.<br>424-433 |
| 11/26/1999 | Brussels, Belgium | | | X | X | | X | | | X | | | | | | | | | X | Philips: Pos Mink, Staal:<br>Thomson:<br> Mortier:<br>Samsung: Colvin,<br>Samsung: Matthes,<br>Samsung: Lak Jin Kim:<br>Europe Matsushita Electronics Co.<br>J. Krauss:<br>Orion: G. Nam | Samsung 2nd<br>Supplemental Response<br>p 35 | Kris Mortier | Kris Mortier Dep.Vol.<br>2, 537-550 |
| 11/26/1999 | | X | X | X | X | | X | | | | | | | | | | | | | Jae In Lee (SDI) | SDCRT-0086722 | J.I. Lee | |
| 11/26/1999 | Taiwan | | | | X | | | | | | | | | | | | | | | SDI - Michael Son | SDCRT-0086889 | | |
| 12/9/1999 | | | | X | X | | X | | | X | | | | | | | | X | X | OEC: Moon<br>MEC: Nill<br>MEC: Krauss<br>THOM: Lissorgues<br>SDI: Park<br>SDI: Yang<br>SONY: Sekiya<br>PHS: Smith<br>PHS: Pos | SDCRT-0086233 | | |
| 12/10/1999 | Malaysia | | | | X | | | | | | | | | | | | | | | SDI - Michael Son | SDCRT-0086893 | | |

| MEETING DATE | LOCATION | CPT | LG | OEC/DW | SDI | HIT | MEC | MIT | TSB | PHS | LPD | MTPD | TCRT | BMCC | IRI | SMTL | TAT | SONY | THOM | INDIVIDUAL PARTICIPANTS | BEG BATES | DEPONENTS | DEPOSITION TESTIMONY |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 12/13/1999 | | X | | | | | X | | | | | | | | | | | | | MEC: Chang;<br>CPT: Du, Ching-Yuan (Michael)<br>CPT: Lin, Fang-Yi<br>MEC: Chang, Yu-Hao | CHU00028434 | Allen Chang (Zhang) | Chang II at 189 |
| 12/16/1999 | Hitachi's Greenville plant | | | | | X | | | | X | | | | | | | | | | HIT: Fukuzawa, Saito, Toyama,<br>PHS: Schaffer, Gotje | JLI-00001286 | Noboru Toyama | 115 (Noboru Toyama) |
| 12/17/1999 | | X | X | X | X | X | X | | | X | | | | | | | | | | Jae In Lee (SDI) | SDCRT-0086722 | J.I. Lee | |
| 12/22/1999 | | | | | | | X | | | X | | | | | | | | | | MEC: Nishiyama<br>PHS: Canavan | MTPD-0212628 | Nishiyama | |
| 12/22/1999 | | X | X | X | X | | | | | X | | | | | | | | | | J.Y. Youn | | J.Y. Youn | 162:22 |
| 12/31/1999 | | X | | X | X | | | | X | X | | | | | | X | | | | CPT: C.C. Liu<br>CPT: S. J. Yang<br>TSB: Mr. Yasukawa | CHU00029039-041 | C.C. Liu | C.C. Liu, Dep. Vol. 2, 332-334<br>Dep. Vol. 3, 433-436 |
| 2000 | | | | | | X | | | | X | | | | | | | | | | | HEDUS-CRT00026591 | Kazumasa Hirai | 253:7 (Kazumasa Hirai) |
| 2000 | | | | | X | X | | | | X | | | | | | | | | | | HDP-CRT00044868 | Kenichi Hazuku | 149:1, 168 (Kenichi Hazuku) |
| 2000 | | | | | X | X | | | X | | | | | | | | | | | | HDP-CRT00052500 | Kenichi Hazuku | 138:1 (Kenichi Hazuku) |
| 2000/2001 | | X | X | | X | | | | | | | | | | | | | | | LG: Mr. Han<br>LG: Sang Jong Han<br>Other unnamed competitors | n/a | Duk Chul Ryu | 113<br>119<br>170-173 |
| 2000-2001 | n/a | | | X | X | | | | | | | | | | | | | | X | THOM: James Hanrahan | TDA00705 | | |
| 1/1/2000 | Philips' Ottowa plant | | | | | X | | | | X | | | | | | | | | | HIT: Toyama, Enomoto | JLI-00002601 | Noboru Toyama | 155 (Noboru Toyama) |
| 1/3/2000 | | | | | | X | | | | | | | | | | | | | | HIT: Saito: TSB: Amano | MTPD-0016566 | | |
| 1/18/2000 | | X | X | X | X | | | | | X | | | X | | | | | | | CPT: S.J. Yang<br>SDD: Mr. Park<br>SDD: Mr. Yang<br>SDD: Mr. Michael Son<br>LG: Mr. Choi<br>LG: Mr. Ko et al<br>Orion: Mr. Won<br>Orion: Mr. Oh<br>Orion: Mr. Karl Min<br>TCRT: Mr. Boonchoo<br>TCRT: Mr. Naratip<br>PHS: Ms. Rosa Hu | CHU00029155-162 | S.J. Yang | S.J. Yang, Dep. Vol. 2, 223-228 |

| MEETING DATE | LOCATION | CPT | LG | OEC /DW | SDI | HIT | MEC | MIT | TSB | PHS | LPD | MTPD | TCRT | BMCC | IRI | SMTL | TAT | SONY | THOM | INDIVIDUAL PARTICIPANTS | BEG BATES | DEPONENTS | DEPOSITION TESTIMONY |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1/24/2000 | | X | X | X | X | | | | | X | | | | | | | | | | CPT: C.C. Liu<br>CPT: Michael Du<br>CPT: President Lin<br>CPT: Senior Manager Cheng<br>LG: Choi, S.Y.<br>LG: Lee, S.K.<br>LG: Ko, K.Y.<br>LG: Lim<br>OEC: Cho, Han-Koo<br>OEC: Lee, H.S.<br>OEC: Moon, J.H.<br>OEC: Oh, S.G.<br>PHS: Smith, Jim<br>PHS: Lin, Jerry<br>PHS: Liu, Limay<br>SDI: Kim, In<br>SDI: Kim, D.Y. | CHU00030960 & CHU00030960.01E | Jim Smith: Duk Chul Ryu: C.C. Liu | Jim Smith Dep. Vol. 1, 126-135: DC Ryu 200: C.C. Liu, Dep. Vol. 1, 194-195 |
| 1/24/2000 | | X | X | X | X | | | | | X | | | X | | | | | | | CPT: Liu (Director)<br>CPT: Yang (Senior Manager)<br>CPT: Michael Du<br>LG: Choi, S.Y.<br>LG: Choi, G.I.<br>LG: Lee,Hwa-Kyu<br>LG: Ko, K.Y.<br>LG: Son, Jonny<br>OEC: Cho, H.K.<br>OEC: Min, Karl<br>PHS: Smith Jim<br>PHS: Hu, Rosa<br>SDI: Kim, Inn<br>SDI: Son, Michael<br>SDI: Ha<br>T-CRT: Thanasa<br>T-CRT: Boonchoo | CHU00029152 & CHU00029152E | Jim Smith: C.C. Liu | Jim Smith Dep. Vol. 1, 114-125; C.C. Liu, Dep. Vol. 1, 192-193 |
| 1/24/2000 | | X | X | X | X | X | X | | | | | | | | | | | | | Jae In Lee (SDI) | SDCRT-0086733 | J.I. Lee | |
| 1/24/2000 | Taiwan | | | | X | | | | | | | | | | | | | | | SDI - Michael Son, In Kim, Mr. Ha | SDCRT-0087008: CHU00029152 | Michael Son | 321:4-323:10 |
| 1/25/2000-1/28/2000 | | | | | | | | | | | | | | | | | | | | | SDCRT-0087015 | Hoon Choi | 111:03:00 |
| 1/26/2000 | | X | X | X | X | | | | | X | | | | | | | | | | Jae In Lee (SDI) | SDCRT-0086733 | J.I. Lee | |
| 1/29/2000 | Mitsubishi Mexico | | | | | X | | X | | X | | | | | | | | | X | HIT: Ryuuichi Ueda,<br>MIT: Sales Department General Manager | HDP-CRT00025965 | Kazumasa Hirai | 116:21 (Kazumasa Hirai) |
| 2/2/2000 | | | | X | X | | | | | X | | | | | | | | | X | PHS: Leo Mink<br>THOM: Christian Lissorgues<br>DOSA: Hee Chul Moon<br>DOSA: Gil Name<br>SDI: Lak Jin Kim | SDCRT-0087301 | | |
| 2/22/2000 | HIT Asia Plant, Taipei | X | | | X | | | | | | | | | | | | | | | CPT: Michael Du: CPT: C.C. Liu: HIT: Chiang-Lung Chang | CHU00028382 | | |
| 2/23/2000 | Japan: Fujisawa | | | | | X | X | | | | | | | | | | | | | HIT: Junki Kaneko | HDP-CRT00025970 | | |

| MEETING DATE | LOCATION | CPT | LG | OEC /DW | SDI | HIT | MEC | MIT | TSB | PHS | LPD | MTPD | TCRT | BMCC | IRI | SMTL | TAT | SONY | THOM | INDIVIDUAL PARTICIPANTS | BEG BATES | DEPONENTS | DEPOSITION TESTIMONY |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2/23/2000 | | | | | X | | | | | X | | | | | | | | | | | SDCRT-0087405 | J.I. Lee | |
| 2/25/2000 | N/A | X | | | X | | X | | | X | | | | | | | | | X | Philips: J. Pos, Philips: L. Mink, G. Staal; EMEC: J. Krauss; Dosa: G. Nam; Chunghwa: D. Ross; Thomson: A. Martin, Thomson: K. Mortier; Samsung: L.J. Kim | Samsung 2nd Supplemental Response p 37 | Kris Mortier | Kris Mortier Dep.Vol. 2, 537-550 |
| 3/00/2000 | | X | X | | X | X | | X | | | | | | | | | | | | HIT: Watanabe / LG, CPT, SDI, MIT: Unspecified employees | HDP-CRT00025985 | Nobuhiko Kobayashi | 268 (Nobuhiko Kobayashi) |
| 3/00/2000 | | | | | X | X | | | | | | | | | | | | | | | HDP-CRT00051348 | Nobuhiko Kobayashi | 289 (Nobuhiko Kobayashi) |
| 3/2/2000 | | | | | | X | | | X | | | | | | | | | | | HIT: Saito; TSB: Amano | MTPD-0016566 | | |
| 3/3/2000 | | | | | X | | | | X | | | | | | | | | | | KC Oh (SDI): Wakiyama (Toshiba) | SDCRT-0005813 | KC Oh | |
| 3/6/2000 | Indonesia | X | | | | | | | X | | | | | | | | | | | CPT: S.J. Yang / CPT: C.C. Liu / CPT: Michael Du / TSB: Mr. Kazuteru Yasukawa | CHU0028224-225 | S.J. Yang | S.J. Yang, Dep. Vol. 2, 228-231 |
| 3/6/2000 to 3/10/2000 | Indonesia, Thailand | X | | X | X | | | | X | | | | | | | | | | | CPT: Director C.C. Liu / CPT: Manager Yang / CPT: Michael Du / TSB: Mr. Katzuteru Yasukawa | CHU00028215-216 | C.C. Liu | C.C. Liu, Dep. Vol. 2, 330-332 |
| 3/7/2000-3/8/2000 | | X | X | X | X | | | | | X | | | X | | | | | | | CPT: Liu (Director) / CPT: Yang (Manager) / CPT: Du, Ching-Yuan (Michael) / LG: Choi, S.Y. / LG: Choi, G.I. / LG: Jeon, B.K. / LG: Ko, K.Y. / LG: Park, K.J. / OEC: Cho, H.K. / OEC: Lee, H.S. / OEC: Jeon, B.C. / OEC: Min, Karl / PHS: Smith, Jim / PHS: Knippenberg, Janvan / SDI: Lee, D.E. / SDI: Park, S.K. / SDI: Song, Y.K. / SDI: Lee, S.W. / T-CRT: Chaovalit / T-CRT: Boonchoo | CHU00030979 & CHU00030979E | Jim Smith: C.C. Liu | Jim Smith Dep. Vol. 1, 135-145; C.C. Liu, Dep. Vol. 1, 195-200 |
| 3/19/2000 | Philips | X | X | X | X | | | | | X | | | | | | | | | | | SDCRT-0087408 | J.I. Lee | |

| MEETING DATE | LOCATION | CPT | LG | OEC/DW | SDI | HIT | MEC | MIT | TSB | PHS | LPD | MTPD | TCRT | BMCC | IRI | SMTL | TAT | SONY | THOM | INDIVIDUAL PARTICIPANTS | BEG BATES | DEPONENTS | DEPOSITION TESTIMONY |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 3/24/2000 | | X | X | X | X | | | | | X | | X | | | | | | | | CPT: Michael Du<br>CPT: S.J. Yang<br>SDD: Mr. Park<br>SDD: Mr. Ahn<br>SDD: Mr. Son<br>SDD: Mr. Lee<br>LG: Mr. Choi<br>LG: Mr. Park<br>Orion: Mr. Lee<br>Orion: Mr. Jeon<br>Orion: Mr. Min<br>TCRT: Mr. Boonchoo<br>PHS: Rosa Hu | CHU00029144-146 | S.J. Yang | S.J. Yang, Dep. Vol. 2, 231-238 |
| 3/28/2000 | | | | | X | | | | | | | X | | | | | | | | Matsushita - Shimizu Matsumoto<br>SDI - Dae Eui Lee, Sr. Vice President Kim., Dir. Lee, General Mgr. Park, G.M. Song, Manager Cho. | SDCRT-0087314 | Dae Eui Lee | 242:22-245:15 |
| 3/29/2000 | | X | | | X | | | | | | | | | | | | | | | SDI - Dae Eui Lee, President Kim<br>Chunghwa - President Hwang | SDCRT-0087316 | Dae Eui Lee | 246:1-249:3 |
| 3/30/2000 | Japan | | | | | X | | | | | | | | | | | | | | HIT: Genichi Watanabe (meets with competitor who he won't name in email) | HDP-CRT00025985 | | |
| 3/31/2000 | | X | X | X | X | | | | | X | | | | | | | | | | CPT: J.S. Lu<br>CPT: Hsieh Chun-Mei | CHU00030985-990 | J.S. Lu | J.S. Lu, Dep. Vol. 2, 190-196 |
| 4/00/2000 | | | | | | X | X | | | | | | | | | | | | | HIT: Yuuichi Kumazawa | HDP-CRT00049231 | Nobuaki Ito Yuuichi Kumazawa | 445:08 (Nobuaki Ito): 128 (Yuuichi Kumazawa) |
| 4/00/2000-6/00/2003 | Korea | | | | X | | | | X | | | | | | | | | | | TSB: Fujita, Norio<br>SDI: Lee, Justin | | Norio Fujita | |
| 4/00/2000-6/00/2003 | Korea | | | | X | | | | X | | | | | | | | | | | TSB: Fujita, Norio<br>SDI: Lee, Justin | | Norio Fujita | |
| 4/00/2000-6/00/2003 | Korea | | | | X | | | | X | | | | | | | | | | | TSB: Fujita, Norio<br>SDI: Lee, Justin | | Norio Fujita | |
| 4/00/2000-6/00/2003 | Korea | | | | X | | | | X | | | | | | | | | | | TSB: Fujita, Norio<br>SDI: Lee, Justin | | Norio Fujita | |
| 4/00/2000-6/00/2003 | Korea | | | | X | | | | X | | | | | | | | | | | TSB: Fujita, Norio<br>SDI: Lee, Justin | | Norio Fujita | |
| 4/00/2000-6/00/2003 | Korea | | | | X | | | | X | | | | | | | | | | | TSB: Fujita, Norio<br>SDI: Lee, Justin | | Norio Fujita | |
| 4/00/2000-6/00/2003 | Korea | | | | X | | | | X | | | | | | | | | | | TSB: Fujita, Norio<br>SDI: Lee, Justin | | Norio Fujita | |
| 4/00/2000-6/00/2003 | Korea | | | | X | | | | X | | | | | | | | | | | TSB: Fujita, Norio<br>SDI: Lee, Justin | | Norio Fujita | |
| 4/00/2000-6/00/2003 | Korea | | | | X | | | | X | | | | | | | | | | | TSB: Fujita, Norio<br>SDI: Lee, Justin | | Norio Fujita | |
| 4/00/2000-6/00/2003 | Korea | | | | X | | | | X | | | | | | | | | | | TSB: Fujita, Norio<br>SDI: Lee, Justin | | Norio Fujita | |
| 4/00/2000-6/00/2003 | Korea | | X | | | | | | X | | | | | | | | | | | TSB: Fujita, Norio<br>LG: Chung, A. H. | | Norio Fujita | |
| 4/00/2000-6/00/2003 | Korea | | X | | | | | | X | | | | | | | | | | | TSB: Fujita, Norio<br>LG: Chung, A. H. | | Norio Fujita | |
| 4/00/2000-6/00/2003 | Korea | | X | | | | | | X | | | | | | | | | | | TSB: Fujita, Norio<br>LG: Chung, A. H. | | Norio Fujita | |
| 4/00/2000-6/00/2003 | Korea | | X | | | | | | X | | | | | | | | | | | TSB: Fujita, Norio<br>LG: Chung, A. H. | | Norio Fujita | |
| 4/00/2000-6/00/2003 | Korea | | X | | | | | | X | | | | | | | | | | | TSB: Fujita, Norio<br>LG: Chung, A. H. | | Norio Fujita | |

| MEETING DATE | LOCATION | CPT | LG | OEC /DW | SDI | HIT | MEC | MIT | TSB | PHS | LPD | MTPD | TCRT | BMCC | IRI | SMTL | TAT | SONY | THOM | INDIVIDUAL PARTICIPANTS | BEG BATES | DEPONENTS | DEPOSITION TESTIMONY |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 4/00/2000-6/00/2003 | Korea | | X | | | | | | X | | | | | | | | | | | TSB: Fujita, Norio<br>LG: Chung, A. H. | | Norio Fujita | |
| 4/00/2000-6/00/2003 | Korea | | | X | | | | | X | | | | | | | | | | | TSB: Fujita, Norio<br>Orion: Cho | | Norio Fujita | |
| 4/00/2000-6/00/2003 | Korea | | | X | | | | | X | | | | | | | | | | | TSB: Fujita, Norio<br>Orion: Cho | | Norio Fujita | |
| 4/00/2000-6/00/2003 | Korea | | | X | | | | | X | | | | | | | | | | | TSB: Fujita, Norio<br>Orion: Cho | | Norio Fujita | |
| 4/6/2000 | Xiamen, China | X | X | X | X | | | | | X | | | | X | X | | | | | CPT: J.S. Lu<br>CPT: Wei-Lie Yu<br>SDD: Myong Sik Lee<br>SDD: Zhen Yang<br>SDD: Xiao-Mei Yu<br>IRI: Zhao-Jie Wong<br>BMCC: Xin-Wen Huang<br>LG: Zong-Wen Park<br>PHS: Zheng-Fu Tian<br>PHS: Dong Liu<br>Orion: Myong Doek Pak | CHU00030992-994 | J.S. Lu | J.S. Lu, Dep. Vol. 2, 158-160 |
| 4/6/2000 | | | | | | X | X | | | | | | | | | | | | | HIT: Yuici Kuamazawa | HDP-CRT00049232 | | |
| 4/11/2000 | HIT Asia Plant, Taipei | X | | | | X | | | | | | | | | | | | | | CPT: Michael Du; CPT: C.C. Liu: HIT: Chiang-Lung Chang | CHU00028380 | | |
| 4/11/2000 | | | | | | X | X | | | | | | | | | | | | | HIT: Yuici Kuamazawa | HDP-CRT00049231 | | |
| 4/12/2000 | | X | | | X | | | | | | | | | | | | | | | CPT: J.S. Lu<br>CPT: Jiang Xuexing | CHU00030998 | J.S. Lu | J.S. Lu, Dep. Vol. 2, 197-203 |
| 4/14/2000 | | | | | | X | | | X | | | | | | | | | | | HIT: Saito: TSB: Amano | MTPD-0016566 | | |
| 4/14/2000 | | X | X | X | X | | | | | X | | | | | | | | | | CPT: C.C. Liu<br>CPT: Michael Du<br>CPT: Manager Yang<br>SDD: Mr. K.H. Lee<br>SDD: Mr. S.K. Park<br>SDD: Mr. Michael Son<br>SDD: Mr. S.W. Lee<br>LG: Mr. S.Y. Choi<br>LG: Mr. G.I. Choi<br>LG: Mr. D.Y. Ko<br>LG: Mr. K.J. Park<br>Orion: Mr. H.K. Choo<br>Orion: Mr. Y.J. Kim<br>Orion: Mr. Karl Min<br>PHS: Mr. Jim Smith<br>PHS: Mr. Jerry Lim<br>PHS: Mr. Ney<br>PHS: M. Corsino | CHU00030995-997 | C.C. Liu | C.C. Liu, Dep. Vol. 2, 218-219 |
| 4/13/2000 | | | X | | | | | | X | | | | | | | | | | | LG: A.H. Chung<br>Toshiba: Norio Fujita | TSB-CRT-00042493 | Kazuhiro Nishimaru:<br>Norio Fujita | Nishimaru: 255:24-265:2 |

| MEETING DATE | LOCATION | CPT | LG | OEC /DW | SDI | HIT | MEC | MIT | TSB | PHS | LPD | MTPD | TCRT | BMCC | IRI | SMTL | TAT | SONY | THOM | INDIVIDUAL PARTICIPANTS | BEG BATES | DEPONENTS | DEPOSITION TESTIMONY |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 4/14/2000 | | X | X | X | X | | | | | X | | | | | | | | | | LG: Choi, S.Y.<br>LG: Choi, G.I.<br>LG: Ko, D.Y.<br>LG: Park, K.J.<br>OEC: Choa, H.K.<br>OEC: Kim, Y.J.<br>OEC: Min, Karl<br>PHS: Smith, Jim<br>PHS: Lim, Jerry<br>PHS: Ney<br>PHS: Corsino, M.<br>SDI: Lee, K.H.<br>SDI: Park, S.K.<br>SDI: Son, Michael<br>SDI: Lee, S.W. | CHU00030995 & CHU00030995.01E | Jim Smith | Jim Smith Dep. Vol. 1, 286-295; 335-340 |
| 4/19/2000 | LG Office | X | X | X | X | | | | | X | | | | | | | | | | | SDCRT-0087411 | J.I. Lee | |
| 4/21/2000 | | | | | | X | | | | | | | | | | | | | | HIT: Genichi Watanabe (meets with Korean CRT competitor who we won't name) | HDP-CRT00043292 | | |
| 5/2/2000 | | X | | | | | X | | | | | | | | | | | | | MEC: Chang | CHU00025427 | Allen Chang (Zhang) | Chang II at 194 |
| 5/15/2000 | | | X | | | | | | X | | | | | | | | | | | TSB: Yamamoto, Yasuki<br>LG: Hoshinori, Kane: Noh | TSB-CRT-00041620 | Shinichiro Tsuruta: Norio Fujita | Tsuruta: 139:12-149:7 |
| 5/17/2000 | N/A - Fax | | X | X | X | | | | | | X | | | | | | | | | | FOX00207394 | Patrick Canavan | Patrick Canavan Dep. Vol. 1, 213:16-221:22 |
| 5/25/2000 | China: Shanghai | X | X | X | X | | | | | X | | | | | | X | X | | | | CPT: Liu (Director)<br>CPT: Michael Du<br>LG: Choi, S.Y.<br>LG: Choi, G.I.<br>LG: Ko, D.Y.<br>LG: Park, K.J.<br>OEC: Cho, H.K.<br>OEC: Lee, H.S.<br>OEC: Min, Karl<br>PHS: Smith, Jim<br>PHS: Qiang, Jin<br>PHS: Lim, Jerry<br>SDI: Kim, Inn<br>SDI: Lee, K.H.<br>SDI: Park, S.K. | CHU00029131 & CHU00029131.01E | Jim Smith: C.C. Liu | Jim Smith Dep. Vol. 1, 145-148; 283-286; C.C. Liu, Dep. Vol. 2, 219-220 |

| MEETING DATE | LOCATION | CPT | LG | OEC /DW | SDI | HIT | MEC | MIT | TSB | PHS | LPD | MTPD | TCRT | BMCC | IRI | SMTL | TAT | SONY | THOM | INDIVIDUAL PARTICIPANTS | BEG BATES | DEPONENTS | DEPOSITION TESTIMONY |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 5/25/2000 | | X | X | X | X | | | | | X | | | X | | | | | | | CPT: S.J. Yang<br>CPT: C.C. Liu<br>CPT: Michael Du<br>SDD: Mr. Inn Kim<br>SDD: Mr. K.H. Lee<br>SDD: Mr. S.K. Park<br>SDD: Mr. Michael Son<br>LG: Mr. S.Y. Choi<br>LG: Mr. G.I. Choi<br>LG: Mr. D.Y. Ko<br>LG: Mr. K.J. Park<br>Orion: Mr. H.K. Cho<br>Orion: Mr. H.S. Lee<br>Orion: Mr. Karl Min<br>PHS: Mr. Jim Smith<br>PHS: Mr. Jin Qiang<br>PHS: Mr. Jerry Lim | CHU00029135-137 | S.J. Yang | S.J. Yang, Dep. Vol. 3, 392-409 |
| 5/26/2000 | | X | X | X | X | | | | | X | | | | | | | | | | CPT: Liu (Director)<br>CPT: Lu, Jing-Song (Jason) (Manager)<br>CPT: Yang (Manager)<br>CPT: Du, Ching-Yuan (Michael)<br>LG: Choi, S.Y.<br>LG: Lee, S.K.<br>LG: Ko, K.Y.<br>LG: Lim<br>OEC: Cho, Han-Koo<br>OEC: Moon, J.H.<br>PHS: Smith, Jim<br>PHS: Lin, Jerry<br>SDI: Kim, In<br>SDI: Kim, D.Y.<br>SDI: Lee, Jae In | CHU00031006 & CHU00031006.01E | Jim Smith: J.S. Lu | Jim Smith Dep. Vol. 1, 148-158: J.S. Lu, Dep. Vol. 2, 160-162 |
| 5/26/2000 | N/A | | | X | X | | X | | | | | | | | | | | | X | EMEC: J. Krauss:<br>Philips: J. Pos,<br>Philips: L. Mink,<br>Philips: G. Staal:<br>Thomson: K. Mortier:<br>SDI: L.J. Kim,<br>SDI: M.A. Matthes:<br>Orion:  G. Nam r | Samsung 2nd Supplemental Response p 39 | Kris Mortier | Kris Mortier Dep.Vol. 2,  537-550 |
| 5/26/2000 | China | | | | X | | | | | | | | | | | | | | | SDI - Michael Son | SDCRT-0087069: CHU00029131 | Michael Son | 215:16-217:3 |
| 5/31/2000 | Nanjing | X | | | | | | | | X | | | | | | | | | | CPT: J.S. Lu<br>CPT: Director C.C. Liu<br>PHS: VP Yao Zong<br>PHS: VP Jin<br>PHS: Xiu-Hua Li<br>PHS: Dong Liu | CHU00031015-016 | J.S. Lu | J.S. Lu, Dep. Vol. 2, 162-163 |
| 6/8/2000 | Taiwan, Taipei | X | | | | | X | | | | | | | | | | | | | MEC: Hsu (Vice Manager)<br>MEC: Chang, Yu-Hao (Director)<br>CPT: Cheng (Sr. Manager)<br>CPT: Du, Ching-Yuan (Michael) | CHU00028425 | Allen Chang (Zhang) Michael Hsu | Chang II at 200: Hsu II 187 |
| 6/9/2000 | Taiwan | X | | | | | | | X | | | | | | | | | | | CPT: Liu, C.C.: Cheng, Tony: Du, Michael<br>Toshiba:  Suzuki, Satoshi: Fukunaga, Seeichi: Yun-Peng, Hong | TSB-CRT-00039414 | Yasuki Yamamoto: Norio Fujita | Yamamoto:  316:3-325:10: 338:2-354:2 |

| MEETING DATE | LOCATION | CPT | LG | OEC /DW | SDI | HIT | MEC | MIT | TSB | PHS | LPD | MTPD | TCRT | BMCC | IRI | SMTL | TAT | SONY | THOM | INDIVIDUAL PARTICIPANTS | BEG BATES | DEPONENTS | DEPOSITION TESTIMONY |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 6/9/2000 | | X | | | | | | | X | | | | | | | | | | | CPT: C.C. Liu<br>CPT: Manager Cheng<br>CPT: Michael Du<br>TSB: Mr. Fukunaka<br>TSB: Mr. Suzuki<br>TSB: Mr. Yun-Peng Hong | CHU00028209-210 | C.C. Liu | C.C. Liu, Dep. Vol. 2, 220-222 |
| 6/16/2000 | | X | | | X | | | | | | | | | | | | | | | CPT: C.C. Liu<br>CPT: Michael Du<br>CPT: Manager Cheng<br>TSB: Manager Chien-Lung Chang | CHU00031028-030 | C.C. Liu | C.C. Liu, Dep. Vol. 2, 222-223 |
| 6/20/2000 | Malaysia: The Mines Resort & Golf Club | X | X | X | X | | | | | X | | | X | | | | | | X | CPT: Liu (Director)<br>CPT: Yang (Senior Manager)<br>CPT: Du, Ching-Yuan (Michael)<br>LG: Choi, S.Y.<br>LG: Park, K.J.<br>OEC: Cho, H.K.<br>OEC: Lee, H.S.<br>OEC: Min, Karl<br>PHS: Smith, Jim<br>PHS: Lim, Jerry<br>SDI: Kim, Inn<br>SDI: Lee, K.H.<br>SDI: Park, S.K.<br>SDI: Son, Michael<br>T-CRT: Thanasak<br>T-CRT: Sirichai | CHU00021262 & CHU00021262.01E; CHU00029116 & CHU00029116.01E | Jim Smith: C.C. Liu | Jim Smith Dep. Vol. 1, 158-181; C.C. Liu, Dep. Vol. 2, 223-227 |
| 6/20/2000 | Malaysia | X | X | X | X | | | | | X | | | | | | | | | | CPT: President Lin<br>CPT: C.C. Liu<br>CPT: Michael Du<br>CPT: Senior Manager Yang<br>SDI: Mr. S.T. Kim<br>SDI: Mr. Inn Kim<br>SDI: Mr. Lee Jae In<br>SDI: Mr. D.Y. Kim<br>LG: Mr. K.S. Cho<br>LG: Mr. S.Y. Choi<br>LG: Mr. S.K. Lee<br>LG: Mr. K.Y. Ko<br>LG: Mr. Lim<br>Orion: Mr. H.K. Cho<br>Orion: Mr. Y.N. Kim<br>Orion: Mr. J.H. Moon<br>Orion: Mr. Jimmy Kim<br>PHS: Mr. Jim Smith<br>PHS: Mr. Jerry Lin | CHU00031010-012 | C.C. Liu: Duk Chul Ryu | C.C. Liu, Dep. Vol. 2, 227-229; DC Ryu 209 |

| MEETING DATE | LOCATION | CPT | LG | OEC/DW | SDI | HIT | MEC | MIT | TSB | PHS | LPD | MTPD | TCRT | BMCC | IRI | SMTL | TAT | SONY | THOM | INDIVIDUAL PARTICIPANTS | BEG BATES | DEPONENTS | DEPOSITION TESTIMONY |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 6/20/2000 | | X | X | X | X | | X | | | X | | X | | | | | | | | CPT: S.J. Yang<br>CPT: C.Y. Lin<br>CPT: C.C. Liu<br>CPT: Michael Du<br>SDI: Mr. S.T. Kim<br>SDI: Mr. In Kim<br>SDI: Mr. D.Y. Kim<br>SDI: Mr. Lee Jae In<br>LG: Mr. K.S. Cho<br>LG: Mr. S.Y. Choi<br>LG: Mr. S.K. Lee<br>LG: Mr. K.Y. Ko<br>LG: Mr. Lim<br>OEC: Mr. Y.N. Kim<br>OEC: Mr. Han-Koo Cho<br>OEC: Mr. J.H. Moon<br>OEC: Mr. Jimmy Kim<br>PHS: Mr. Jim Smith<br>PHS: Mr. Jerry Lin | CHU0003101-012 | S.J. Yang | S.J. Yang, Dep. Vol. 3, 423-429 |
| 6/20/2000 | Shenzhen | X | X | X | X | | | | | X | | | | | | | | | | CPT: J.S. Lu<br>CPT: Michael Du<br>SDI: Mr. S.T. kim<br>SDI: Mr. In Kim<br>SDI: Mr. D.Y. Kim<br>SDI: Mr. Lee Jae In<br>LG: Mr. K.S. Cho<br>LG: Mr. S.Y. Choi<br>LG: Mr. S.K. Lee<br>LG: Mr. K.Y. ko<br>LG: Mr. Lim<br>OEC: Mr. Y.N. Kim<br>OEC: Mr. Han-Koo Cho<br>OEC: Mr. J.H. Moon<br>OEC: Mr. Jimmy Kim<br>PHS: Mr. Jim Smith<br>PHS: Mr. Jerry Lin | CHU00031010-012 | J.S. Lu | J.S. Lu, Dep. Vol. 2, 163-165 |
| 6/20/2000 | Malaysia | | | | X | | | | | | | | | | | | | | | SDI - Michael Son, In Kim, S.K. Park, K.H. Lee | SDI rog responses:<br>SDCRT-0087103;<br>CHU00021262;<br>CHU00029116 | | |
| 6/21/2000 | M-MEC Malaysia | X | | | | X | X | | | | | | | | | | | | | CPT: Yang<br>CPT: Liu (Director)<br>CPT: Yang: (Manager)<br>CPT: Du, Ching-Yuan (Michael)<br>MEC: Shimizu (Managing Director)<br>MEC: Matsumoto, Mitsuhiro (Gen Mgr) | CHU00028424 | Y.J. Yang | S.J. Yang, Dep. Vol. 2, 238-244<br>Dep. Vol. 3, 368-379 |
| 6/21/2000 | Japan | | | | | X | | | | X | | | | | | | | | | HIT: Genichi Watanabe; PHS: Nico Veenstra;<br>PHS:Jasper Staaden: PHS:Reinoud Selbeck:<br>PHS:Rober Lu | HDP-CRT00052474 | | |
| 6/23/2000-6/25/2000 | | X | | | | | | | | X | | | | | X | | | | | CPT: Cheng, Wen-Chun (Tony)<br>IRI: Tao, Sa (SaTao) (Sales President)<br>PHS: Smith, Jim<br>PHS: Mink, Leo | CHU00029110.01E | Jim Smith | Jim Smith Dep. Vol. 1,  290-295 |
| 6/27/2000 | | X | | X | X | | | | | | X | | | | | | | | | | SDCRT-0087417 | J.I. Lee | |

| MEETING DATE | LOCATION | CPT | LG | OEC /DW | SDI | HIT | MEC | MIT | TSB | PHS | LPD | MTPD | TCRT | BMCC | IRI | SMTL | TAT | SONY | THOM | INDIVIDUAL PARTICIPANTS | BEG BATES | DEPONENTS | DEPOSITION TESTIMONY |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 6/28/2000 | | X | X | X | X | | | | | X | | | | | | | | | | CPT: Cheng (Director)<br>CPT: C. Y. (Michael) Du<br>SDI: Ha<br>SDI: Anita Tsai<br>LG: Lim<br>LG: Lu<br>OEC: Kang<br>PH: Jerry Lin<br>PH: Milan Baran<br>PH: Limay Liu | CHU00031013 & CHU00031013.01E | Jim Smith: C.C. Liu | Jim Smith Dep. Vol. 1, 181-184: C.C. Liu, Dep. Vol. 2, 229-230 |
| 7/3/2000 | | | | | X | X | | | | | | | | | | | | | | HIT: Nobuaki Ito<br>SDI: General Manager Lee | HDP-CRT00019426 | Nobuaki Ito | 123:04 (Nobuaki Ito) |
| 7/3/2000 | | | | | X | X | | | | | | | | | | | | | | HIT: Kobayashi,<br>SDI: Kim | HDP-CRT00051354 | Nobuhiko Kobayashi | 277 (Nobuhiko Kobayashi) |
| 7/4/2000 | | | | | X | | | | | X | | | | | | | | | | | HAS-CRT00066386 | Kawashima | 76-98, 82-84 (Kawashima) |
| 7/13/2000 | | X | X | X | X | | | | | X | | | | | | | | | | CPT: S.J. Yang<br>CPT: Michael Du<br>CPT: C.C. Liu<br>SDI: Mr. Kim<br>SDI: Mr. Lee<br>SDI: Mr. Park<br>SDI: Mr. Son<br>LG: Mr. Choi<br>LG: Mr. Park<br>Orion: Mr. Cho<br>Orion: Mr. Kim<br>Orion: Mr. Min<br>PHS: Mr. Lim<br>PHS: Mr. Park | CHU00029108-109 | S.J. Yang | S.J. Yang, Dep. Vol. 2, 244-249 |
| 7/18/2000 | | X | | | X | | | | | | | | | | | | | | | CPT: Fang-Yi Lin<br>CPT: Michael Du<br>HTC: Assistant Manager Chien-Lung Chang | CHU00028376 | C.C. Liu | C.C. Liu, Dep. Vol. 2, 230-232 |
| 7/18/2000 | HIT Asia Plant, Taipei | X | | | X | | | | | | | | | | | | | | | CPT: Michael Du: CPT: C.C. Liu: CPT: Tony Cheng: CPT: Fang-Yi Ling: HIT: Chiang-Lung Chang | CHU00028376 | | |
| 7/26/2000 | Shanghai | X | | | X | | | X | | | | | | | | | | | | | SDCRT-90322 | J.I. Lee | |
| 7/28/2000 | U.S. | X | | | X | | | | | X | | | | | | | | | X | SDI: C.H. Im<br>SDI: Yoon Yang<br>PHS: Cor Saris<br>PHS: Jeff Johnson | SDCRT-0002506 | | |
| 8/7/2000 | | | | | | X | X | | | | | | | | | | | | | | HDP-CRT00023416 | Nobuaki Ito Yuuichi Kumazawa | 58.5 (Nobuaki Ito): 132 (Yuuichi Kumazawa) |

| MEETING DATE | LOCATION | CPT | LG | OEC /DW | SDI | HIT | MEC | MIT | TSB | PHS | LPD | MTPD | TCRT | BMCC | IRI | SMTL | TAT | SONY | THOM | INDIVIDUAL PARTICIPANTS | BEG BATES | DEPONENTS | DEPOSITION TESTIMONY |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 8/7/2000 | Email | | X | | | X | | | | | | | | | | | | | | HIT: Kaneko, Kawamu;<br>LG: Choi | HDP-CRT00026001 | Noboru Toyama | 231 (Noboru Toyama) |
| 8/9/2000 | | | | | X | X | | | | | | | | | | | | | | HIT: Yuichi Kumazawa (codes for other competitors (Toshiba or Thomson; and Matsushita or Mitsubishi) | HDP-CRT00023414 | | |
| 8/10/2000 | | | | | | X | X | | X | X | | | | | | | | X | | HIT: Nobuaki Ito.<br>SONY: Shogo Urata<br>MEC: K. Shimoda<br>PHS: Mr. POS<br>TSB: Keisuke Wakiyama | HDP-CRT00022897 | Nobuaki Ito | 405:05 (Nobuaki Ito) |
| 8/21-8/26/2000 | Taiwan | X | X | X | X | | | | | X | | | | | | | | | | Sang Kyu Park (SDI) | SDCRT-0087107 | SK Park | |
| 8/22/2000 | | X | X | X | X | | | | | X | | | | | | | | | | CPT: Liu (Vice President)<br>CPT: Yang (Director)<br>CPT: Ching-Yu. Michael Du<br>LG: Choi, S.Y.<br>LG: Choi, G.I.<br>LG: Son, Johnny<br>OEC: Cho, H.K.<br>OEC: Lee<br>OEC: Min, Karl<br>OEC: Kang<br>PHS: Smith, Jim<br>PHS: Lim, Jerry<br>PHS: Hu, Rosa (Ms.)<br>SDI: Kim, Inn<br>SDI: Park, S.K.<br>SDI: Son, Michael<br>SDI: Ha | CHU00029105 &<br>CHU00029105.01E | Jim Smith: C.C. Liu | Jim Smith Dep. Vol. 1, 184-192: C.C. Liu, Dep. Vol 2, 232-233 |
| 8/24/2000 | Beijing, China | X | X | | X | X | | | | X | | | | X | | | | | X | BMCC: Shing Chung Yang<br>BMCC: Moon Gang Beom<br>SEG/HIT: Sung Jeon Son<br>SEG/HIT: Kuk Kyun Yang<br>LG: Ah Pyung Yang<br>CPT: Chun Kyu Ha<br>CPT: Wie Hun Oh<br>Caihong: Geon Chung Ma<br>Caihong: Geon Seol Wei<br>PHS: Cheol Ahn Kye<br>Sanghai Yongxing: Ok Mae Hu<br>THOM: Geg Wang<br>SDI: Kwan Tae Choi<br>SDI: Lim Bong Wang | SDCRT-0087334 | | |
| 8/28/2000 | Japan | | | | X | X | | | | | | | | | | | | | | SDI - Michael Son | SDCRT-0087112 | | |
| 8/29/2000 | Nihon Building | | | | X | X | | | | | | | | | | | | | | SDI:  Director Lee | HDP-CRT00023416 | Nobuaki Ito Yuuichi Kumazawa | 58:5 (Nobuaki Ito); 132 (Yuuichi Kumazawa) |
| 8/30/2000 | | | | | X | | X | | | | | | | | | | | | | Jae In Lee (SDI): Alex Kinoshita (MEC) | SDCRT-0087381 | J.I. Lee | |

| MEETING DATE | LOCATION | CPT | LG | OEC /DW | SDI | HIT | MEC | MIT | TSB | PHS | LPD | MTPD | TCRT | BMCC | IRI | SMTL | TAT | SONY | THOM | INDIVIDUAL PARTICIPANTS | BEG BATES | DEPONENTS | DEPOSITION TESTIMONY |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 9/21/2000 | | X | X | X | X | | | | | X | | | | | | | | | | CPT: V.P. Liu<br>CPT: Director Cheng<br>CPT: Director Yang<br>CPT: Director Ching-Yuan Du<br>SDI: In Kim<br>SDI: D.Y. Kim<br>SDI: Lee, Jae In<br>SDI: Ha<br>LG: S.Y. Choi<br>LG: S.K. Lee<br>LG: Lim<br>LG: K.Y. Ko<br>OEC: Cho<br>OEC: J.H. Moon<br>OEC: Jimmy Kim<br>OEC: Kang<br>PH: Jerry Lin | CHU00031051 & CHU00031051.01E | Jim Smith: C.C. Liu | Jim Smith Dep. Vol. 1, 198-200: C.C. Liu, Dep. Vol. 2, 320-323 |
| 9/21/2000 | | X | X | X | X | | | | | X | | | | | | | | | | CPT: VP Liu<br>CPT: Director Cheng<br>CPT: Director Yang<br>CPT: Ching-Yuan (Michael) Du<br>SDI: In Kim<br>SDI: D.E. Lee<br>SDI: S. K. Park<br>SDI: Michael Son<br>LG: S.Y. Choi<br>LG:K.J. Park<br>LG: K.Y. Ko<br>OEC: Cho<br>OEC: Lee<br>OEC: Karl Min<br>OEC: Kang<br>PH: Jim Smith<br>PH: Jerry Lin<br>PH: Rosa Hu | CHU00031056.01E | Jim Smith | Jim Smith Dep. Vol. 1, 295-302 |
| 9/21/2000 | | X | | | | | | | | | | | | | | | | | | CPT: S.J. Yang<br>CPT: Tony Cheng<br>SDI: Mr. In Kim<br>SDI: Mr. D.Y. Kim<br>SDI: Mr. Lee Jae In<br>SDI: Mr. Ha<br>LG: Mr. S.Y. Choi<br>LG: Mr. J.H. Moon<br>LG: Mr. Lim<br>LG: Mr. K.Y. Ko<br>Orion: Mr. Cho<br>Orion: Mr. J.H. Moon<br>Orion: Mr. Kim<br>Orion: Mr. Kang<br>PHS: Mr. Jerry Lin | CHU00030151-155 | S.J. Yang | S.J. Yang, Dep. Vol. 2, 249-251<br>Dep. Vol. 3, 423-423 |
| 9/29/2000 | U.S. | | | | X | | | | | X | | | | | | | | | X | SDI: Chul Hong Im<br>SDI: Woongrae Kim<br>PHS: Cor Saris | SDCRT-0002488 | | |
| 10/00/2000 | CEA Convention | | | | | X | | | | | | | | | | | | | X | HIT: Tom Heiser Thom Schmitt,<br>THOM: Alex Hepburn | HEDUS-CRT00161617 | Tom Heiser | 408:20 (Tom Heiser) |
| 10/3/2000 | | X | | | | | | | X | | | | | | | | | | | Toshiba: Seeiichi Fukunaga | TSB-CRT-00039829 | Norio Fujita | |

| MEETING DATE | LOCATION | CPT | LG | OEC/DW | SDI | HIT | MEC | MIT | TSB | PHS | LPD | MTPD | TCRT | BMCC | IRI | SMTL | TAT | SONY | THOM | INDIVIDUAL PARTICIPANTS | BEG BATES | DEPONENTS | DEPOSITION TESTIMONY |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 10/6/2000 | | | | | X | X | | | | | | | | | | | | | | HIT: Kumazawa, Ito, Kubo | HTP-CRT00023427 | Yuuichi Kumazawa | 141:9-25,142:8-13 (Yuuichi Kumazawa) |
| 10/15/2000 | | X | | X | X | | | | | X | | | | | | | | | | | SDCRT-0087427 | J.I. Lee | |
| 10/18/2000 | | | | | | X | X | | | X | | | X | X | | | | X | | | HDP-CRT00042019 | Kazumasa Hirai | 327:6 (Kazumasa Hirai) |
| 10/22/2000 | Irico Displays Group Corporation Cathode ray tube Plant | | | | X | | | | | | | | | | X | | | | | | HDP-CRT00042019 | Kazumasa Hirai | 327:6 (Kazumasa Hirai) |
| 10/24/2000 | | | | | X | | | | X | | | | | | | | | | | | TSB-CRT-00041721 | Yasuki Yamamoto | 203:13-209:12 |
| 10/25/2000 | | | X | | | | | | X | | | | | | | | | | | Toshiba: Norio Fujita<br>LG: Chun | TSB-CRT-00042610 | Norio Fujita | |
| 10/25/2000 | | X | X | X | X | | | | | X | | | X | | | | | | | CPT: Liu (Vice President)<br>CPT: Yang (Director)<br>CPT: Michael Du<br>LG: Choi, S.Y.<br>LG: Choi, G.I.<br>LG: Park, K.J.<br>OEC: Cho<br>OEC: Kim<br>OEC: Min, Karl<br>OEC: Lee<br>PHS: Smith, Jim<br>PHS: Hu, Rosa<br>SDI: Kim, In<br>SDI: Park, S.K.<br>SDI: Son, Michael<br>T-CRT: Thanasa<br>T-CRT: Sirichai | CHU00031075 & CHU00031075.01E; CHU00028975 & CHU00028975.01E | Jim Smith: C.C. Liu | Jim Smith Dep. Vol. 1, 200-203: Jim Smith Dep. Vol. 1, 203-205: C.C. Liu, Dep. Vol. 2, 233-236 |
| 11/00/2000 | | | | | X | X | X | X | | | | | | | | | | X | | | HDP-CRT00004416 | Nobuaki Ito | 346:14 (Nobuaki Ito) |
| 11/1/2000 | | | | | | X | | | | | | | | | | | | | X | HIT: Tom Heiser Thom Schmitt<br>THOM: Alex Hepburn | HEDUS-CRT00161617 | Tom Heiser | 408:20 (Tom Heiser) |
| 11/3/2000 | | X | | | | X | | | | | | | | | | | | | | CPT: VP C.C. Liu<br>CPT: Michael Du<br>HTC: AVP Chien-Lung Chang | CHU00028374-375 | C.C. Liu | C.C. Liu, Dep. Vol. 2, 236-237 |
| 3/19/2001 | | X | X | X | X | | | | | X | | | | | | | | | | CPT: VP C.C. Liu<br>CPT: Edward Cheng<br>CPT: Director Yang<br>CPT: Fang-Yi Lin<br>SDD: Mr. D.Y. Kim<br>SDD: Mr. Ha<br>SDD: Mr. J.I. Lee<br>LG: Mr. S.Y. Choi<br>LG: Mr. S.K. Lee<br>LG: Mr. J.K. Han<br>LG: Mr. K.Y. Ko<br>Orion: Mr.Cho<br>Orion: Mr. J.H. Moon<br>Orion: Mr. Jimmy Kim<br>Orion: Mr. Kang<br>PHS: Mr. Jim Smith<br>PHS: Mr. Jerry Lin<br>PHS: Mr. Milan Baran | CHU00031111-112 | C.C. Liu | C.C. Liu, Dep. Vol. 2, 237-239 |

| MEETING DATE | LOCATION | CPT | LG | OEC/DW | SDI | HIT | MEC | MIT | TSB | PHS | LPD | MTPD | TCRT | BMCC | IRI | SMTL | TAT | SONY | THOM | INDIVIDUAL PARTICIPANTS | BEG BATES | DEPONENTS | DEPOSITION TESTIMONY |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 11/8/2000 | Philips offices conference room | | | | | X | | | | X | | | | | | | | | | HIT: Wata, Ooku, Chen, Chang, Kuma, Ooyama, PHS: Wente, Selbeck, Lu, Huang, Lee | HDP-CRT00007139 | Nobuhiko Kobayashi | 427 (Nobuhiko Kobayashi) |
| 11/8/2000 | | | | | | X | | | | | | | | | | | | | X | HIT: Tom Heiser, Thom Schmitt, Kazumasa Hirai, Ryoji Hirai, THOM: Alex Hepburn | HEDUS-CRT00164814 | Tom Heiser | 193:23 (Tom Heiser) |
| 11/8/2000 | U.S. | | | | | X | | | | | | | | | | | | | X | HIT: Thom Schmitt, HIT: Tom Heiser, THOM: Alex Hepburn | HEDUS-CRT00164814: HEDUS-CRT00164816 | Lloyd Heiser | 193 |
| 11/27/2000 | | | | | | X | | | | X | X | | | | | | | | | HIT: Dan Mead, PHS: Luke Chiang | HEDUS-CRT00183630 | Tom Heiser | 126:22 (Tom Heiser) |
| 11/27/2000-12/01/2000 | Malaysia | X | X | X | X | | | | | X | | | | | | | | | | Sang Kyu Park (SDI) | SDCRT-0087178 | SK Park | |
| 11/29/2000 | | | | | X | | | | | | | X | | | | | | | | SDI - Jae In Lee, Mr. Park, Ki Young Chung, Dae Eui Lee, Matsushita - B. Tomori, K. Matsumoto | SDCRT-0087331 | Dae Eui Lee | 251:1-253:7 |
| 12/14/2000 | Japan | | | | | X | | | | X | | | | | | | | | | HIT: Taku Yamanaka, PHS: George Chou, PHS: Hardy Lin | HDP-CRT00052436 | | |
| 12/7/2000 | U.S. | | | | | X | | | | | | | | | | | | | X | HIT: Thom Schmitt, HIT: Tom Heiser, THOM: Alex Hepburn | HEDUS-CRT00168774 | Thomas Schmitt | 274:18 (Thom Schmitt) |
| 12/13/2000 | | | | | X | X | | | | | | | | | | | | | | HIT: Ooku, Ueda, Kumazawa, SDI: Seung Cheol Kim, Sun, Korasaki | HTP-CRT00023426-23427 | Yuuichi Kumazawa, Nobuhiko Kobayashi | 146:17-25,147:6-25, 148:9-23 (Yuuichi Kumazawa) 474 (Nobuhiko Kobayashi) |
| 12/22/2000 | China | X | X | | X | | | | | X | | | | X | | | | | X | MII: Won Bang Lim<br>MII: Geon Chung Hwang<br>BMCC: Dae Lim Lee<br>SEC: Kuk Kyun Yang<br>LG Changsha: Ah Pyung Yang<br>Guangdong CPT: Chung Hae Ryu<br>Caihong: Hyo Rim Shin<br>PHS: Ho Joo<br>Sanghai Yongxing: Moon Eui Bun<br>THOM: Geg Wang<br>THOM: Ji Up Hwang<br>SDI: Kwan Tae Choi<br>SDI: Lim Bong Wang | SDCRT-0087336 | | |
| 2001 | Bangkok | | | | | | | | X | X | | | | | | | | | | Toshiba: Nishimaru, Kazuhiro | | Kazuhiro Nishimaru | 115:23-121:21 |
| 2001 | | | | | | X | X | | X | X | | | | | | | | | | | HEDUS-CRT00005869 | Tom Heiser | 354:09 (Tom Heiser) |
| 2001 | | | | | X | X | | | | | | | | | | | | | | | HDP-CRT00005044 | Kenichi Hazuku | 165:2 (Kenichi Hazuku) |
| 2001 | | | | | X | X | | | X | X | | | | | | | | X | X | | HDP-CRT00027193 | Kazumasa Hirai, Nobuhiko Kobayashi, Noboru Toyama | 69 (Kazumasa Hirai): 332, 478 (Nobuhiko Kobayashi); Noboru Toyama (69) |
| 2001 | | X | | X | X | X | X | X | X | X | X | | | | | | | X | | | HDP-CRT00027174 | Kazumasa Hirai | 214:4 (Kazumasa Hirai) |
| Early 2001 | South Korea | | | | | X | | | | X | | X | | | | | | | | Toshiba: Yamamoto, Yasuki; Kawano; Wakiyama SDI: Lee; Lee LG: Fairly high ranking employee | | Yasuki Yamamoto | 117:22-121:23; 122:12-134:8 |
| Early 2001-1/2003 | South Korea | | | | | X | | | | X | | X | | | | | | | | Toshiba: Yamamoto, Yasuki; Kawano; Wakiyama | | Yasuki Yamamoto | 117:22-121:23; 136:17-137:3 |
| Early 2001-1/2004 | South Korea | | | | | X | | | | X | | X | | | | | | | | Toshiba: Yamamoto, Yasuki; Kawano; Wakiyama | | Yasuki Yamamoto | 117:22-121:23; 136:17-137:3 |

| MEETING DATE | LOCATION | CPT | LG | OEC/DW | SDI | HIT | MEC | MIT | TSB | PHS | LPD | MTPD | TCRT | BMCC | IRI | SMTL | TAT | SONY | THOM | INDIVIDUAL PARTICIPANTS | BEG BATES | DEPONENTS | DEPOSITION TESTIMONY |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Early 2001-1/2005 | South Korea | | | | X | | | | X | | X | | | | | | | | | Toshiba: Yamamoto, Yasuki: Kawano: Wakiyama | | Yasuki Yamamoto | 117:22-121:23; 136:17-137:3 |
| Early 2001-1/2006 | South Korea | | | | X | | | | X | | X | | | | | | | | | Toshiba: Yamamoto, Yasuki: Kawano: Wakiyama | | Yasuki Yamamoto | 117:22-121:23; 136:17-137:3 |
| Early 2001-1/2007 | South Korea | | | | X | | | | X | | X | | | | | | | | | Toshiba: Yamamoto, Yasuki: Kawano: Wakiyama | | Yasuki Yamamoto | 117:22-121:23; 136:17-137:3 |
| 1/9/2001 | | | | | | X | | | | | | | | | | | | | X | HIT: Thom Schmitt, Tom Heiser, THOM: Alex Hepburn | HEDUS-CRT00187137 | Tom Heiser | 4/09:17 (Tom Heiser) |
| 1/10/2001 | Toshiba Booth | | | | | X | | | X | | | | | | | | | | | HIT: Thom Schmitt, BK, TSB: Scott Ramirez | HEDUS-CRT00187137 | Tom Heiser | 4/09:17 (Tom Heiser) |
| 1/11/2001 | | X | X | X | X | X | | | X | X | | | X | | | | | | | | HAS-CRT00065403 | Kenichi Hazuku | 210:18 (Kenichi Hazuku) |
| 1/15/2001 | | | | | X | | | | X | | | | | | | | | | | | TSB-CRT-00041746 | Yasuki Yamamoto | 209:15-221:10 |
| 1/26/2001 | England | | X | | X | | | | | X | | | | | | | | X | X | PHS: Leo Mink THOM: Christian Lissorgues SDI: Lockjin Kim DOSA: Kyounghoon Choi | SDCRT-0087662 | | |
| 1/30/2001 | Sony's Osaki Office | | | | X | | | | | | | | | | | | | X | | HIT: Junji Kaneko SONY: Ikeda SONY: Tsukii | HDP-CRT00026045 | | |
| 1/30/2001 | Taiwan | X | X | X | X | | | | X | | | | | | | | | | | Sang Kyu Park (SDI) | SDCRT-0087464 | SK Park | |
| 02/00/2001 | | | | | X | X | X | | | | | | | | | | | | | HIT: Nobuaki Ito | HDP-CRT00049280 | Nobuaki Ito Yuuichi Kumazawa | 83:24, 325 (Nobuaki Ito): 175 (Yuuichi Kumazawa) |
| 02/00/2001 | | | | | X | | | | | | | | | | | | | X | | | HDP-CRT00049270 | Nobuaki Ito Noboru Toyama | 277:5, 349 (Nobuaki Ito): 195 (Noboru Toyama) |
| 2/15/2001 | Nihon Building, Tokyo, Japan | | X | | X | | | | | | | | | | | | | | | HIT: Maruyama HIT: Watanabe HIT: Sakamoto LG: Kim Sung-Bun | HDP-CRT00026050, HDP-CRT00027948 | | |
| 2/15/2001 | | | X | | X | | | | | | | | | | | | | | | LG: In Kim LG: Pyung Goo Jeon LG: Mr. Ryu SDI: Mr. Lee | SDCRT0087679 | Duk Chul Ryu | 125 |
| 2/20/2001 | n/a | | | | X | | | | | | | | | | | | | | X | HIT: Kazumasa Hirai HIT: Thom Schmitt HIT: Tom Heiser HIT: Ryoji Hirai HIT: Yosuke Nakanishi HIT: Tetsuo Asano HIT: Keith Brown HIT: Ed Paige HIT: Patrick Watson HIT: Kawamura Katsuyuki HIT: Nobuhiko Kobayashi HIT: Kiyoshi Kubo | HEDUS-CRT00188826 | | |
| 2/21/2001 | | | | | X | | | | | X | | | | | | | | | | | HEDUS-CRT00004617 | Tom Heiser | 457:04 (Tom Heiser) |

| MEETING DATE | LOCATION | CPT | LG | OEC /DW | SDI | HIT | MEC | MIT | TSB | PHS | LPD | MTPD | TCRT | BMCC | IRI | SMTL | TAT | SONY | THOM | INDIVIDUAL PARTICIPANTS | BEG BATES | DEPONENTS | DEPOSITION TESTIMONY |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2/23/2001 | | | | | | X | X | | | | | | | | | | | | | HIT: Nobuaki Ito | HDP-CRT00049280 | | |
| 2/23/2001 | Matsushita in Fujisawa, Kanagawa, Japan | | | | | X | X | | | | | | | | | | | | | HIT: Kiyoshi Kubo MEC: Takadera | HDP-CRT00049226 | | |
| 2/26/2001 | | | | | X | X | | | | | | | | | | | | | | HIT: Yuuichi Kumazawa | HDP-CRT00056186 | Nobuaki Ito Yuuichi Kumazawa | 129,398 (Nobuaki Ito): 282, 424 (Yuuichi Kumazawa) |
| 03/00/2001 | | X | | X | X | X | X | X | X | X | X | | X | | | | | X | X | | HDP-CRT00023625 | Nobuaki Ito | 360:01 (Nobuaki Ito) |
| 3/00/2001 | | | | | X | | | | | X | X | | | | | | | X | X | | HEDUS-CRT00188863 | Tom Heiser Thom Schmitt Noboru Toyama | 219:7, 405 (Tom Heiser): 201 (Thom Schmitt): 222 (Noboru Toyama) |
| 3/3/2001 | SDI San Diego | | | | X | | X | | | | | | | | | | | | | Jae In Lee (SDI): Moon Il Bae (SDI): CH Lim (SDI): K.C. Oh (SDI): Woong Rae K Kim (SDI): Alex Kinoshita (MEC) | SDCRT-0002585 | J.I. Lee | |
| 3/7/2001 | | | | | X | | | | | X | | | | | | | | | | | HEDUS-CRT00004710 | Tom Heiser Kazumasa Hirai | 133:3 (Tom Heiser): 263, 423 (Kazumasa Hirai) |
| 3/8/2001 | email | | | | | | | | | X | | | | | | | | | | PDC: J. Killen, LPD: P. Canavan Okuda, Hongoh, Ino | PTC-00006569 | Patrick Canavan | Patrick Canavan Dep. Vol. 1, 205:10-213:4 |
| 3/10/2001 | SDI San Diego | | | | X | | | | | X | | | | | | | | | | Jae In Lee (SDI): Moon Il Bae (SDI): CH Lim (SDI): K.C. Oh (SDI): Kyu In Choi (LPD) | SDCRT-0002588 | J.I. Lee | |
| 3/13/2001 | Email | | | | X | | | | X | | | | | | | | | | | | PHLP-CRT-030092 | Kris Mortier | Kris Mortier Dep.Vol. 2, 402-410 |
| 3/14/2001 | Singapore | | | | | X | | | | | | | | | | | | | | HIT: Mike Chen Teco: Martni Hsei | HAS-CRT00078245 | | |
| 3/16/2001 | | | | X | X | X | | | X | | | | | | | | | | | HIT: Nobuaki Ito | HDP-CRT00049348 | Nobuaki Ito Yuuichi Kumazawa | 372:22 (Nobuaki Ito) |

| MEETING DATE | LOCATION | CPT | LG | OEC /DW | SDI | HIT | MEC | MIT | TSB | PHS | LPD | MTPD | TCRT | BMCC | IRI | SMTL | TAT | SONY | THOM | INDIVIDUAL PARTICIPANTS | BEG BATES | DEPONENTS | DEPOSITION TESTIMONY |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 3/16/2001 | | | | | | X | X | X | X | | | | | | | | | X | | HIT: Nobuaki Ito, Sony: Mayumi Kuroyanagi, Takayoshi Kitawaki, Yoichi Tamamura, Masayuki Watanabe MEC: K. Shimoda, Mitsubishi: Norikazu Nakanishi TSB: Keisuke Wakiyama | HDP-CRT00022911 | Nobuaki Ito | 353:10 (Nobuaki Ito) |
| 3/19/2001 | | X | X | X | X | | | | | X | | | | | | | | | | CPT: Mr. Liu CPT: Mr. Cheng LG: S.Y. Choi LG: S.K. Lee LG: J.K. Han LG: K.Y. Ko OEC: Mr. Cho OEC: JH Moon OEC: Jimmy Kim OEC: Mr. Kang PHS: Jerry Lin PHS: Jim Smith PHS: Milan Baran SDI: DY Kim SDI: Mr. Ha SDI: J.I. Lee | CHU00031111 | Duk Chul Ryu | 213 |
| 3/19/2001 | | X | X | X | X | | | | | X | | | X | | | | | | | CPT: Liu (Vice President) CPT: Cheng (Director) LG: Choi, S.Y. LG: Lee, S.K. LG: Han, J.K. LG: Ko, K.Y. OEC: Cho OEC: Moon, J.H. OEC: Kim, Jimmy OEC: Kang PHS: Lin, Jerry PHS: Smith, Jim PHS: Baran, Milan SDI: Kim, D.Y. SDI: Ha SDI: Lee, J.I. | CHU00031111 & CHU00031111.01E | Jim Smith | Jim Smith Dep. Vol. 1,  205-208 |
| 3/20/2001 | | X | X | X | X | | | | X | | | | X | | X | | | | | CPT: VP C.C. Liu CPT: Edward Cheng CPT: Director S.J. Yang SDI: Mr. S.K. Park SDI: Mr. J.Y. Yuan LG: Mr. S.Y. Choi LG: Mr. G.I. Choi LG: Mr. K.J. Park Orion: Mr. S.H. Cho Orion: Mr. Kung Orion: Mr. Y.J. Kim Orion: Mr. Choe PHS: Mr. Jerry Lin PHS: Ms. Rosa Hu | CHU00031113-114 | C.C. Liu | C.C. Liu, Dep. Vol. 2, 239-240 Dep. Vol. 3, 418-421 Dep. Vol. 3, 541-544 |
| 3/19/2001-3/20/2001 | Taiwan | X | X | X | X | | | | | X | | | | | | | | | | Sang Kyu Park (SDI) | SDCRT-0087467 | SK Park | |
| 3/20/2001 | Detroit, Michigan | | | | | X | | | | X | | | | | | | | | | HIT: Tom Heiser TS PHS: Pat Canavan Jeff Johnson Daren Ivy | HEDUS-CRT00004705 | Thom Schmitt | 257:05 (Thom Schmitt) |

| MEETING DATE | LOCATION | CPT | LG | OEC /DW | SDI | HIT | MEC | MIT | TSB | PHS | LPD | MTPD | TCRT | BMCC | IRI | SMTL | TAT | SONY | THOM | INDIVIDUAL PARTICIPANTS | BEG BATES | DEPONENTS | DEPOSITION TESTIMONY |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 3/22/2001 | | | X | | | | | | | | X | | | | | | | | | | PTC-00002381 | Patrick Canavan | Patrick Canavan Dep. Vol. 1, 34:7-49:13 |
| 3/22/2001 | email | | | | | | | | | | X | | | | | | | | X | | PHLP-CRT-089918 | Patrick Canavan | Patrick Canavan Dep. Vol. 1, 123:7-136:4 |
| 3/22/2001 | | | | | X | | | | | | | | | | | | | | | | HDP-CRT00005257 | Nobuaki Ito Nobuhiko Kobayashi | 425:12 (Nobuaki Ito): (Nobuhiko Kobayashi) 401 |
| 4/12/2001 | | | X | | | | | | X | | | | | | | | | | | | LG: PJ Lee PHS: F. Albertazzi | PHLP-CRT-026830 | Pil Jae Lee | |
| 4/14/2001 | | | | | X | X | | | | | | | | | | | | | | | HIT: Nobuaki Ito | HDP-CRT00048694 | Nobuaki Ito Yuuichi Kumazawa | 134:2, 190 (Nobuaki Ito): 65 (Yuuichi Kumazawa) |
| 4/17/2001 | Philips-Chungli | | | | | X | | | | X | | | | | | | | | | | HIT: Watanabe PHS: A. Wente PHS: R. Selbeck PHS: A. Lee PHS: R. Lu | HDP-CRT0029634 | | |
| 4/19/2001 | | X | X | X | X | | | | | X | | | | | | | | | | | CPT: S.J. Yang CPT: C.C. Liu CPT: Edward Cheng SDI: Mr. D.Y. Kim SDI: Mr. Ha SDI: Mr. J.I. Lee LG: Mr. S.K. Lee LG: Mr. J.K. Han LG: Mr. K.Y. Ko OEC: Mr. J.H. Moon OEC: Mr. Jimmy Kim PHS: Mr. Jerry Lin PHS: Mr. J.K. Park | CHU00031123-125 | S.J. Yang | S.J. Yang, Dep. Vol. 2, 251-252 |
| 4/20/2001 | Shanghai | X | | | | | | | X | | | | | | | | | | | | CPT: VP Liu CPT: Alex Yeh TSB: Ekihiro Yoshino TSB: AVP Suzuki TSB: Manager Du | CHU00028203 | C.C. Liu | C.C. Liu, Dep. Vol. 2, 240-242 |
| 4/24/2001 | N/A - email | | | | X | | | | | | X | | | | | | | | X | | | PHLP-CRT-090140 | Bob O'Brien | Bob O'Brien Dep. Vol. 1,: 105:7-108:18 |
| 4/24/2001 | Shenzhen City, China | X | X | | X | X | | | | | | | | | X | X | | | | X | BMCC: Dae Lim Lee SEG/HIT: Kook Kyun Yang LG Changsha: Ah Pyung Yang Gwangdong CPT: Ui Hun Oh IRI: Hyo Rim Shin PHS: Soo Hwa Lee Shanghai Yunshin: Mr. Chang Shanghai Yunshin: Moon Oi Bun THOM: Hyang Gul Yang THOM: Ji Up Hwang SDI: Lim Bong Wang | SDCRT-0087340 | | |
| 4/26-4/27/2001 | China | X | X | X | X | | | | | X | | | | | | | | | | | Sang Kyu Park (SDI) | SDCRT-0089035 | SK Park | |

| MEETING DATE | LOCATION | CPT | LG | OEC/DW | SDI | HIT | MEC | MIT | TSB | PHS | LPD | MTPD | TCRT | BMCC | IRI | SMTL | TAT | SONY | THOM | INDIVIDUAL PARTICIPANTS | BEG BATES | DEPONENTS | DEPOSITION TESTIMONY |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 5/00/2001 | Taipei, Taiwan | X | | | | | | | | | | | | | | | | | X | | CHU00121161 | | |
| 5/3/2001 | email | | | | X | | | | | | X | | | | | | | | X | | PHLP-CRT-090221 | Patrick Canavan | Patrick Canavan Dep. Vol. 1, 173:5-177:8 |
| 5/6/2001 | Sushi Taro, Washington D.C. | | | | | X | X | | X | | | | | | | | | | | MEC: Nishiyama: HIT: Hirai: TSB: Kimura | MPDA_SEC-0896104 | Kazumasa Hirai: Nishiyama | 180:3 (Kazumasa Hirai): Nishiyama I at 162-66 |
| 5/7/2001 | Grand Hyatt - Washington D.C. | | | | | X | X | | X | X | | | | | | | | | X | HIT: Kazumasa Hirai, Tom Heiser<br>PHS: Jeff Johnson<br>TSB: John Webster<br>MEC: Harry Nishiyama<br>THOM: Alex Hepburn, Tom Carson, Tom Hallowell | PHLP-CRT-077930 | Kazumasa Hirai, Tom Heiser | 146:17 (Kazumasa Hirai) 147:13 (Tom Heiser) |
| 5/7/2001 | | | | | | X | | | | X | | | | | | | | | X | HIT: Heiser, K. Hirai | HEDUS-CRT00162777 | Tom Heiser Kazumasa Hirai Thom Schmitt Noboru Toyama | 140:3 (Tom Heiser) 347(Kazumasa Hirai) 224(Thom Schmitt) 213 (Noboru Toyama) |
| 5/8/2001 | email | X | X | X | X | | X | X | X | X | | | | | | | | X | | | PHLP-CRT-026590 | Patrick Canavan | Patrick Canavan Dep. Vol. 1, 222:9-227:7 |
| 5/17/2001 | Berlin, Germany | | | | X | | | | | X | | | | | | | | | X | THOM: Christian Lissorgues<br>DOSA: Hee Cheol Moon<br>DOSA: Kyung Hoon Choi<br>SDI: Rak Jin Kim<br>SDI: Jeong Sik Yoon<br>PHS: Leo Mink | SDCRT-0087667 | | |
| 5/23/2001 - 5/24/2001 | Taiwan | X | | X | X | | | | | | X | | | | | | | | | | | SDCRT-0087414 | J.I. Lee | |
| 5/23/2001 | Email | | | | | | | | | | X | | | | | | | | | X | | PHLP-CRT-02656 | Kris Mortier | Kris Mortier Dep.Vol. 2, 492-499 |
| 5/24/2001 | | | | | X | X | | | | | | | | | | | | | | | HIT: Genichi Watanabe<br>SDI: Arimoto | HDP-CRT00049291, HEDUS-CRT00027271 | | |
| 5/24/2001 | Hitachi | | | | X | X | | | | | | | | | | | | | | | HIT: Genichi Watanabe<br>SDI: Tokyo President | HDP-CRT00049291 | Kazumasa Hirai Noboru Toyama Yuuichi Kumazawa | 294:3 (Kazumasa Hirai): 65 (Noboru Toyama) 400 (Yuuichi Kumazawa) |
| 5/30/2001 | email | | | X | | | | | X | | X | | | | | | | | | | | PHLP-CRT-01642 | Patrick Canavan | Patrick Canavan Dep. Vol. 2, 427:21-444:12 |
| 5/30/2001 | | | | | X | X | | | | | | | | | | | | | | | HIT: Nobuaki Ito: Oohashi, Kuma, Kubo | HDP-CRT00048797 | Nobuaki Ito Yuuichi Kumazawa | 167:16 (Nobuaki Ito): 193 (Yuuichi Kumazawa) |

| MEETING DATE | LOCATION | CPT | LG | OEC/DW | SDI | HIT | MEC | MIT | TSB | PHS | LPD | MTPD | TCRT | BMCC | IRI | SMTL | TAT | SONY | THOM | INDIVIDUAL PARTICIPANTS | BEG BATES | DEPONENTS | DEPOSITION TESTIMONY |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 5/31/2001 | | X | | | | | | | | | | | | | | | | | X | CPT: Mr. Liu<br>CPT: Sheng-Jen Yang<br>CPT: Director Chen<br>CPT: Vice President Chen<br>CPT: C.C. Liu<br>CPT: Wen-Chun (Tony) Cheng<br>CPT: Mei-Que Wang<br>THOM: Mr. Fabac<br>THOM: Peter Ho<br>THOM: Anthony Lee<br>THOM: Tony Liu | CHU00031136; CHU00031136E | C.C. Liu | C.C. Liu, Dep. Vol. 2, 242-244 Dep. Vol. 3, 545-548 |
| 6/4/2001 | Spain | | | X | X | | | | | X | X | | | | | | | | X | SDI - Sung Deok Park<br>Philips - L. Mlin, Kris Mortier<br>Thomson - A. Martin<br>Orion - Jae Suk Kim | SDCRT-0006510 | | |
| 6/6/2001 | U.S. | | | | X | | | | | X | | | | | | | | | | X | SDI: Cheol Hong Lim<br>PHS: Joe Killen | SDCRT-0002582 | Joseph Killen | 148 |
| 6/6/2001 | | X | | | | | X | | | | | | | | | | | | | | CPT: Yvonne Yun<br>CPT: Edward Cheng<br>MEC: Sales Section Chief Youhao Zhang | CHU00031137 | C.C. Liu | C.C. Liu, Dep. Vol. 3, 531-536 |
| 6/7/2001 | | X | | | X | | | | | | | | | | | | | | | | CPT: J.S. Lu<br>CPT: C.C. Liu<br>SDI: President Huang<br>SDI: Mr. Xi | CHU00031138-139 | J.S. Lu | J.S. Lu, Dep. Vol. 2, 210-212 |
| 6/9/2001 | Thomson Mexico Color picture tube Factory | | | | | X | | X | | | | | | | | | | | | X | HIT: Ryoji Hashimoto | HEDUS-CRT00027270 | Tom Heiser | 201 (Tom Heiser) |
| 6/11/2001 | | | X | | | X | X | | X | X | | | | | | | | | X | X | HIT: Tom Heiser<br>PHS: Pat Canavan | PHLP-CRT-090736 | Tom Heiser | 150:22, 397 (Tom Heiser) |
| 6/15/2001 | Greenville, S.C. | | | | | X | | | | X | | | | | | | | | | | HIT: Kazumasa Hirai<br>PHS: Daniel den Engelsen, Hemant Betrabet | PHLP-CRT-090934 | Kazumasa Hirai | 271:12 (Kazumasa Hirai) |
| 6/22/2001 | | | | | X | X | | | | | | | | | | | | | | | HIT: Kumazawa | HDP-CRT00026180 | Nobuaki Ito Yuuichi Kumazawa | 191:5 (Nobuaki Ito): 311 (Yuuichi Kumazawa) |
| 6/26/2001 | | X | X | X | X | | | | | | | | | | | | | | | | CPT: VP C.C. Liu<br>CPT: Director S.J. Yang<br>CPT: Edward Cheng<br>SDI: Mr. Lee<br>SDI: Mr. Park<br>SDI: Mr. Michael Son<br>LG: Mr. S.Y. Choi<br>LG: Mr. K.J. Park<br>Orion: Mr. Cho<br>Orion: Mr. Kim | CHU00036414-415 | C.C. Liu | C.C. Liu, Dep. Vol. 2, 244-245 |
| 6/26/2001 | | | | | X | | | | | | | | | | | | | | | | SDI - Michael Son | SDCRT-0005830; CHU00036414 | Michael Son | |
| 6/26/2001 | China | | | | | | | | | | | | | | | | | | | | | SDCRT-0007599 | | |
| 6/27/2001 | | | X | X | X | | | | | | | | | | | | | | | | | | | 117:3-7 |

| MEETING DATE | LOCATION | CPT | LG | OEC/DW | SDI | HIT | MEC | MIT | TSB | PHS | LPD | MTPD | TCRT | BMCC | IRI | SMTL | TAT | SONY | THOM | INDIVIDUAL PARTICIPANTS | BEG BATES | DEPONENTS | DEPOSITION TESTIMONY |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 6/27/2001 | | X | X | X | X | | | | | | | | | | | | | | | CPT: VP C.C. Liu<br>CPT: Director Yang<br>CPT: Edward Cheng<br>SDI: Mr. D.Y. Kim<br>SDI: Mr. J.I. Lee<br>SDI: Mr. Choi<br>LG: Mr. S.Y. Choi<br>LG: Mr. S.K. Lee<br>LG: Mr. J.K. Han<br>LG: Mr. K.Y. Ko<br>Orion: Mr. Lee<br>Orion: Mr. Kang<br>Orion: Mr. Jimmy Kim | CHU00031142-147 | C.C. Liu | C.C. Liu, Dep. Vol. 2, 245-248<br>Dep. Vol. 3, 454-455 |
| 07/00/2001 | Philips Atlanta | | | | X | X | | | | X | X | | | | | | | | | HIT: Thom Schmitt, Biff Kinney<br>PHS: Christian Haring, Sukrit Mitra, | HEDUS-CRT00147432 | Tom Heiser | 359:04 (Tom Heiser) |
| 7/0/2001 | | X | X | X | X | | | | | X | | | | | | | | | | | CHU00660395-407 | C.C. Liu | C.C. Liu, Dep. Vol. 3, 451-461 |
| 7/1/2001 | | X | X | X | X | | | | | | X | | | | | | | | | | CHU00660454 | Duk Chul Ryu | 219 |
| 7/4/2001 | | X | X | X | X | | | | X | X | | | | | | | | | | | TSB-CRT-00035348; TSB-CRT-00035350 | Yasuki Yamamoto; Kazuhiro Nishimaru; Norio Fujita | Yamamoto: 233:10-246:23<br>Nishimaru: 149:14-178:7 |
| 7/5/2001 | Luxembourg | | | | X | | | | | X | | | | | | | | | | X | PHS: Leo Mink<br>THOM: Christian Lissorgues<br>SDI: Lockjin Kim<br>SDI: Jungsik Yoon<br>DOSA: Heechul Moon<br>DOSA: Kyounghoon Choi | SDCRT-0087664 | | |
| 7/6/2001 | | | | | | X | | | | X | | | | | | | | | | | HIT: Taku Yamanaka<br>PHS: Reinoud Selbeck<br>PHS: Hardy Lin<br>PHS: AleX Lee<br>PHS: George Chou<br>PHS: Sala Liu | HDP-CRT00051624 | | |
| 7/9/2001 | Email | | | | X | | | | | | X | | | | | | | | | | | PHLP-CRT-028034 | Kris Mortier | Kris Mortier Dep.Vol. 2, 406-410 |
| 7/24/2001 | | X | X | X | X | | | | | | | | | | | | | | | CPT: VP C.C. Liu<br>CPT: Edward Cheng<br>CPT: Director Yang<br>SDI: Mr. D.Y. Kim<br>SDI: Mr. J.I. Lee<br>SDI: Mr. Choi<br>SDI: Mr. Park<br>LG: Mr. S.Y. Choi<br>LG: Mr. S.K. Lee<br>LG: Mr. K.Y. Ko<br>Orion: Mr. Cho<br>Orion: Mr. Kang<br>Orion: Mr. Jimmy Kim | CHU00031150-152 | C.C. Liu | C.C. Liu, Dep. Vol. 2, 248-250 |

| MEETING DATE | LOCATION | CPT | LG | OEC /DW | SDI | HIT | MEC | MIT | TSB | PHS | LPD | MTPD | TCRT | BMCC | IRI | SMTL | TAT | SONY | THOM | INDIVIDUAL PARTICIPANTS | BEG BATES | DEPONENTS | DEPOSITION TESTIMONY |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 7/24/2001 | | X | X | X | X | | | | | | | | X | | | | | | | CPT: VP C.C. Liu<br>CPT: Edward Cheng<br>CPT: Director Tony Cheng<br>CPT: Director S.J. Yang<br>SDI: Mr. Michael Son<br>SDI: Mr. J.I. Lee<br>SDI: Mr. Park<br>LG: Mr. S.Y. Choi<br>LG: Mr. H.K. Lee<br>LG: Mr. J.S. Kim<br>Orion: Mr. Cho<br>Orion: Mr. Adam<br>Orion: Mr. Kim<br>TCRT: Mr. Thanasak | CHU00036412-413 | C.C. Liu | C.C. Liu, Dep. Vol. 2, 250-251 |
| 7/24/2001 | | | | | X | X | | | | X | | | | | | | | | X | HIT: Yuji Mitsumoto | HEDUS-CRT00162931 | Tom Heiser Kazumasa Hirai (2387) Thom Schmitt (1838) | 211:16 (Tom Heiser): 298, 320 (Kazumasa Hirai) 249:16 (Thom Schmitt) |
| 7/24/2001 | Taiwan | | | | X | | | | | | | | | | | | | | | | SDI - Michael Son | SDCRT-0087557 | | |
| 8/00/2001 | N/A: Admits to glass meeting participation | X | X | X | X | | | | | X | | | | | | | | | | Jae In Lee (SDI): S.K. Park (SDI) | N/A | J.I. Lee | 137:5 |
| 8/00/2001 | | X | | X | X | X | | | | | X | | | | | | | | | HIT: Watanabe | HDP-CRT00035179 | Nobuhiko Kobayashi | 309 (Nobuhiko Kobayashi) |
| 8/0/2001 | | X | X | X | X | | | | | X | | | | | | | | | | | CHU00660408 | C.C. Liu | C.C. Liu, Dep. Vol. 3, 471-473 |
| 8/2/2001 | email | | | | X | | | X | | | | X | | | | | | X | X | | PHLP-CRT-0938 13 | Patrick Canavan | Patrick Canavan Dep. Vol. 2, 382:25-387:10 |
| 8/2/2001 | N/A - email | | | X | | | | | | | X | | | | | | | X | | | JLI-00004273 | Bob O'Brien | Bob O'Brien Dep Vol. 1,: 128:6-131:18 |
| 8/21/2001 | | X | X | X | X | | | | | | | | X | | | | | | | CPT: VP C.C. Liu<br>CPT: Edward Cheng<br>CPT: Director S.J. Yang<br>SDI: Mr. Michael Son<br>SDI: Mr. D.H. Lee<br>LG: Mr. Lim<br>LG: Mr. Edmond Park<br>LG: Mr. J.S. Kim<br>Orion: Mr. Adam<br>Orion: Mr. Kim<br>TCRT: Mr. Sirichai | CHU00036410-411 | C.C. Liu | C.C. Liu, Dep. Vol. 2, 251-253 |
| 8/24/2001 | Email & PPT | | | | | | | | | | X | | | | | | | | | | PHLP-CRT-091383 & Attachments (PHLP-CRT-091386; PHLP-CRT-091387; PHLP-CRT-091388) | Kris Mortier | Kris Mortier Dep.Vol. 1, 152-165 |
| 8/26/2001-8/31/2001 | Germany | | | | X | | | | | | | | | | | | | | X | SDI: Michael Son | SDCRT-0087609 | | |

| MEETING DATE | LOCATION | CPT | LG | OEC/DW | SDI | HIT | MEC | MIT | TSB | PHS | LPD | MTPD | TCRT | BMCC | IRI | SMTL | TAT | SONY | THOM | INDIVIDUAL PARTICIPANTS | BEG BATES | DEPONENTS | DEPOSITION TESTIMONY |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 8/29/2001 | email | | | | | | | | | | X | X | | | | | | | | | PHLP-CRT-091401 | Bob O'Brien | Bob O'Brien Dep. Vol. 2.; 416:10-419:14 |
| 8/29/2001 | | X | | | X | X | X | X | X | X | X | | | | | | | | X | HIT: Nobuaki Ito | HDP-CRT00026189 | Nobuaki Ito Yuuichi Kumazawa | 204:8, 524 (Nobuaki Ito): 317,369 (Yuuichi Kumazawa) |
| 09/00/2001 | | | | | X | X | | | | | | | | | | | | | | | HDP-CRT00026193 | Nobuaki Ito | 221:25 (Nobuaki Ito) |
| 09/00/2001 | Email | | | | X | X | | | | | | | | | | | | | | HIT: Nobuaki Ito, Yuuichi Kumazawa, Kazuo Oohashi SDI: Chong Woo Lee | HDP-CRT00026197 | Nobuaki Ito Yuuichi Kumazawa | 213:14 (Nobuaki Ito): 259 (Yuuichi Kumazawa) |
| 09/00/2001 | | | | | X | X | | | X | | X | | | | | | | X | | | JLI-00003298 | Tom Heiser | 158:14 (Tom Heiser) |
| 9/1/2001 | email but references Brazil | | X | | X | | | | | | X | | | | | | | | | | PHLP-CRT-91465 | Patrick Canavan | Patrick Canavan Dep. Vol. 1, 234:6-239:8 |
| 9/4/2001 | | | | | X | X | | | | | | | | | | | | | | HIT: Nobuaki Itou SDI: Choong Woo Lee | HDP-CRT00026197 | | |
| 9/5/2001 | Hitachi's Greenville plant | | | | | X | | | | X | | | | | | | | | | HIT: Toyama.  PHS: Gotje | PHLP-CRT-091563 | Noboru Toyama | 134 (Noboru Toyama) |
| 9/13/2001 | Conference Room 856 | | | | X | X | | | | | | | | | | | | | | HIT: Kumazawa SDI:  Oyangi & Lee | HTO-CRT00051298 | Yuuichi Kumazawa | 251:9-17 (Yuuichi Kumazawa) |
| 9/20/2001 | Email | | | | X | | | | | | X | | | | | | | | | | PHLP-CRT-043139 & Attachment | Kris Mortier | Kris Mortier Dep.Vol. 2.; 417-422 |
| 9/26/2001 | email | | | | X | X | | | | | X | | | | | | | | | | PHLP-CRT-091703 | Patrick Canavan | Patrick Canavan Dep. Vol. 2, 459:8-471:3; 504:4-508:25 |
| 10/4/2001 | | | | | X | X | | | | | | | | | | | | | | HIT: Yuuichi Kumazawa | HDP-CRT00049201 | Nobuaki Ito Yuuichi Kumazawa | 237:21 (Nobuaki Ito): 296 (Yuuichi Kumazawa) |
| 10/4/2001 | n/a | | | | | | X | | | | | | | | | | | | | X | MEC: Yuji Mitsumoto | HDP-CRT00026209 | | |

| MEETING DATE | LOCATION | CPT | LG | OEC/DW | SDI | HIT | MEC | MIT | TSB | PHS | LPD | MTPD | TCRT | BMCC | IRI | SMTL | TAT | SONY | THOM | INDIVIDUAL PARTICIPANTS | BEG BATES | DEPONENTS | DEPOSITION TESTIMONY |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 10/12/2001 | Mobara, Japan | | X | | | X | | | | X | | | | | | | | | | HIT: Watanabe<br>HIT: Yoshiwara<br>HIT: Yoshimi<br>HIT: Shirai<br>HIT: Sato | HDP-CRT00036262 | | |
| 10/15/2001 | | X | X | X | X | | | | | | | | | | | | | | | CPT: C.C. Liu<br>CPT: Edward Cheng<br>SDI: Mr. Ahn<br>SDI: Mr. Michael Son<br>LG: Mr. Lim<br>LG: Mr. Edmond Park<br>LG: Mr. J.S. Kim<br>Orion: Mr. Kim<br>Orion: Mr. Yang<br>Orion: Mr. Adam | CHU00660366-368 | C.C. Liu | C.C. Liu, Dep. Vol. 2, 253-254 |
| 10/16/2001 | La Quinta Resort, La Quinta, California | | | | X | | | | | X | | | | | | | | | X | HIT: Thom Schmitt, Kazumasa Hirai, Thomas Heiser<br>THOM: Alex Hepburn<br>PHS: Jeff Johnson<br>LPD: Bob O'Brien<br>MEC: Harry Nishiyama | HEDUS-CRT00186930 | Thom Schmitt | 265:13 (Thom Schmitt) |
| 10/18/2001 to 10/19/2001 | China | X | | | | | | | | | | | | | X | | | | | CPT: S.J. Yang<br>IRI: VP Ximin Wang<br>IRI: Mr. Xiolin Shen<br>IRI: Mr. Zhiyuan Wei<br>IRI: Mr. Xiaohua Su<br>IRI: Mr. Linghai Liu<br>IRI: Ms. Yuan Liang | CHU00040992-993 | S.J. Yang | S.J. Yang, Dep. Vol. 2, 305-309 |
| 10/23/2001 | | X | | | X | | | | | | X | | | | | | | | | CPT: Tony Cheng<br>CPT: C.Y. Lin<br>SDI: Director Kim In<br>SDI: Kim Doek-Yoen<br>SDI: Park Sang-Kyu<br>LPD: Director Joe<br>LPD: Lee Seung-Kyu | CHU00028589-590 | C.C. Liu | C.C. Liu, Dep. Vol. 2, 254-256 |
| 10/24/2001 | Email | | | | X | | | | | | X | | | | | | | | | | PHLP-CRT-033435 | Kris Mortier | Kris Mortier Dep.Vol. 2, 410-413 |
| 10/25/2001 | Korea | | X | X | X | | | | | | | | | | | | | | | SDI - Michael Son | SDCRT-0087243 | | |
| 10/26/2001 | Brussels, Belgium | X | | | X | | | | | X | | | | | | | | X | X | THOM: Giles Taldu<br>THOM: Christian Lissorgues<br>PHS: Mr. Mint (Leo Mink)<br>PHS: Mr. Pos<br>SDI: Mr. Neinke<br>SDI: Lockjin Kim<br>CPT: Mr. D. Ross<br>SONY: Heechul Moon<br>Schott: Mr. Raster<br>BME: Mr. Zipfel<br>ZVEI: Mr. Stoppok<br>FEI: Mr. Faterhouse<br>Sitelese: Mr. Oliver<br>ANIE: Ms. Dr. Quattrocchi | SDCRT-0087670 | | |

| MEETING DATE | LOCATION | CPT | LG | OEC /DW | SDI | HIT | MEC | MIT | TSB | PHS | LPD | MTPD | TCRT | BMCC | IRI | SMTL | TAT | SONY | THOM | INDIVIDUAL PARTICIPANTS | BEG BATES | DEPONENTS | DEPOSITION TESTIMONY |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 10/28/2001 | n/a | X | X | X | | X | X | | X | X | | | X | | X | X | | X | X | | PHLP-CRT-095826 | | |
| 11/00/2001 | | | | | | X | | | | X | | | | | | | | | | HIT: Biff Kinney PHS: Sukrit Mitra PHS: Helene Tacquet | HEDUS-CRT00006768 | | |
| 11/5/2001 | Hong Kong | | | | X | | | | | | | | | | | | | | | SDI - Michael Son | SDCRT-0087652 | | |
| 11/20/2001 | Taiwan | X | | | X | | | | | | | | | | | | | | | SDI - Michael Son | SDCRT-0087542 | | |
| 11/20/2001 | | X | | | X | | | | | | | | | | | | | | | | | | 120:21 |
| 11/26/2001 | Email | | | | | | | | | | X | | | | | | | | X | | PHLP-CRT-092571 | Kris Mortier | Kris Mortier Dep.Vol. 2, 499-502 |
| 11/26/2001 | N/A - email | | | | | | | | | | X | | | | | | | | X | | PHLP-CRT-092571 | Bob O'Brien | Bob O'Brien Dep. Vol.: 1: 226:18-229:21 |
| 11/27/2001 | | X | | X | X | | | | X | | X | | | | | | | | | Toshiba:  Michael Du | TAEC-CRT-00087224 | Shinichiro Tsuruta; Dan Ryan | Tsuruta: 358:1-359:18 Ryan: 173:2-183:15 |
| 11/29/2001 | | | | | X | X | | | | | | | | | | | | | | HIT: Yuuichi Kumazawa | HTP-CRT00051340 | Yuuichi Kumazawa | 301:10-15 (Yuuichi Kumazawa) |
| 11/30/2001 - 11/30/2003 | North America | | | | X | | | | | | | | | | | | | | X | Market Allocation Agreement concerning 34" CPTs (HIT & THOM) | HDP-CRT00052643 | | |
| 12/4/2001 | Email | X | X | X | X | | X | | X | | X | | | | | | | X | | | PHLP-CRT-094627 | Kris Mortier; Bob O'Brien | Kris Mortier Dep.Vol. 1, 165-183: Bob O'Brien Dep. Vol. 1.: 159:9-181:18: Vol. 2.: 427:6-431:13 |
| 12/4/2001 | Email | | | | | | | | | | X | | | | | | | | | | PHLP-CRT-094627 | Kris Mortier | Kris Mortier Dep.Vol. 2, 581-589 |
| 12/10/2001 | email | | | | X | | | | | | X | | | | | | | | | | JU-00004606 | Patrick Canavan | Patrick Canavan Dep. Vol. 2., 387:22-390:13 |

| MEETING DATE | LOCATION | CPT | LG | OEC/DW | SDI | HIT | MEC | MIT | TSB | PHS | LPD | MTPD | TCRT | BMCC | IRI | SMTL | TAT | SONY | THOM | INDIVIDUAL PARTICIPANTS | BEG BATES | DEPONENTS | DEPOSITION TESTIMONY |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 12/11/2001 | email | | | | X | | | | | | X | | | | | | | | | | PHLP-CRT-094860 | Patrick Canavan | Patrick Canavan Dep. Vol. 1, 136:14-141:16 |
| 12/17/2001 | | X | | X | X | | | | | | X | | | | | | | | | CPT: VP C.C. Liu<br>CPT: Edward Cheng<br>SDI: Mr. D.Y. Kim<br>SDI: Mr. Park<br>SDI: Mr. J.I. Lee<br>LPD: Mr. S.Y. Choi<br>LPD: Mr. Milan<br>LPD: Mr. S.K. Lee<br>LPD: Mr. K.Y. Ko<br>Orion: Mr. Kang<br>Orion: Mr. Yang<br>Orion: Mr. Jimmy Kim | CHU00031172-173 | C.C. Liu | C.C. Liu, Dep. Vol. 2, 256-257 |
| 12/17/2001 | | X | | | X | | | | X | | X | | | | | | | | | | TAEC-CRT-00088054 | Yasuki Yamamoto; Shinichiro Tsuruta; Dan Ryan; Norio Fujita | Yamamoto: 284:21-294:22 Tsuruta: 352:20-357:14 Ryan: 168:6-172:17 |
| 12/21/2001 | | X | X | X | X | | | | | | | | X | | X | | | | | CPT: S.J. Yang<br>CPT: Maxim Chen<br>SDI: Mr. D.E. Lee<br>SDI: Mr. Park<br>SDI: Mr. Ahn<br>SDI: Mr. Son<br>LG: Mr. Lim<br>LG: Mr. Park<br>Orion: Mr. Choe | CHU00036390-391 | S.J. Yang | S.J. Yang, Dep. Vol. 2, 301-305 |
| 12/25/2001 | | X | | | X | | | | X | | X | | | | | | | | | Toshiba:  Michael Du | TAEC-CRT-00088432 | Shinichiro Tsuruta; Dan Ryan | Tsuruta: 359:20-363:1 Ryan: 156:16-168:5 |
| 12/26/2001 | Toshiba offices in Fukaya, Japana | | | | | X | | | X | | | | | | | | | | | HIT: Hideharu Sakamoto<br>TSB: Imai<br>TSB: Kuroki | HEDUS-CRT00185474 | | |
| After 2001 | Bangkok | | | | | | | | X | | | X | X | | | | | | | Toshiba or MTPD:  Nishimaru, Kazuhiro Thai-CRT:  Montri Sirichai | | Kazuhiro Nishimaru | 122:10-129:9 |
| After 2001 | Bangkok | | | | | | | | X | | | | X | | | | | | | Toshiba or MTPD:  Nishimaru, Kazuhiro Thai-CRT:  Montri | | Kazuhiro Nishimaru | 131:4-132:5 |
| 2002 | | | | | | | | | | | | | | | | | | | | | SDCRT-0087291 | KC Oh | |
| 2002 | | X | | X | X | | | | | | X | | | | | | | | | | SDCRT-0087963 | I.H. Song | 183:21-186:19 |
| 2002-2004 | Korea | | | | X | | | | | | X | X | | | | | | | | LPD: PJ Lee<br>LPD: Mr. Yang<br>LPD: HK Lee<br>SDI: Mr. Lee<br>MTPD: Mr. Kawano | n/a | Pil Jae Lee | 128-148 |
| 2002-2004 | Japan | | | | X | | | | | | X | X | | | | | | | | LPD: PJ Lee<br>LPD: Mr. Yang<br>LPD: HK Lee<br>SDI: Mr. Lee<br>MTPD: Mr. Kawano | n/a | Pil Jae Lee | 128-148 |

| MEETING DATE | LOCATION | CPT | LG | OEC/DW | SDI | HIT | MEC | MIT | TSB | PHS | LPD | MTPD | TCRT | BMCC | IRI | SMTL | TAT | SONY | THOM | INDIVIDUAL PARTICIPANTS | BEG BATES | DEPONENTS | DEPOSITION TESTIMONY |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2002-2004 | Japan | | | | X | | | | | | X | X | | | | | | | | LPD: PJ Lee<br>LPD: Mr. Yang<br>LPD: HK Lee<br>SDI: Mr. Lee<br>MTPD: Mr. Kawano | n/a | Pil Jae Lee | 128-148 |
| 2002-2006 | U.S. (Ohio: Detroit; Washington, DC) | | | | | | X | | | | | | | | | | | | X | MEC: Shinchi Iwamoto<br>THOM: James Hanrahan | | Shinichi Iwamoto | 45-55, 81, 262-64, 359-62 |
| 1/4/2002 | | X | X | X | X | | | | | X | X | | | | | | | | | CPT: J.S. Lu<br>SDI: Park Sang Kyu<br>SDI: Anita<br>LPD: L.S. Kyu<br>OEC: Manager Han | CHU00031176 | J.S. Lu | J.S. Lu, Dep. Vol. 2, 155-157 |
| 1/7/2002 | | X | | | X | | | | X | | X | | | | | | | | | Toshiba:  Michael Du | TAEC-CRT-00088715 | Yasuki Yamamoto; Shinichiro Tsuruta; Dan Ryan; Norio Fujita | Yamamoto: 295:17-306:17; Tsuruta:  363:4-367:23; Ryan:  187:19-191:21 |
| 1/9/2002 | | | | | | X | | | | | X | | | | | | | | | HIT: Thom Schmitt | HEDUS-CRT00187137 | Tom Heiser | 409:17 (Tom Heiser) |
| 1/9/2002 | | X | | | X | | | | | | X | | | | | | | | | SDI - Dae Eui Lee<br>Chunghwa - S.J. Yang | SDCRT-0006266 | Dae Eui Lee | 257:11-259:2 |
| 1/11/2002 | U.S. | | | | | | X | | | | X | | | | | | | | X | LPD: Ney Corsino<br>THOM: Tom Carson<br>MEC: Nakamoto | JIU-00004807 | Patrick Canavan | Patrick Canavan Dep. Vol. 1, 262:12-270:18 |
| 1/14/2002 | | | | | X | | | | | | X | | | | | | | | | | PHLP-CRT-084379 | Kris Mortier | Kris Mortier Dep.Vol. 1, 184-188 |
| 1/15/2002 | Email | | | | | X | | X | | | | | | | | | | | | HIT: Kumazawa, Ito<br>TSB: Wakiyama | HTP-CRT00026227 | Yuuichi Kumazawa | 199:9-25, 200:1-12 (Yuuichi Kumazawa) |
| 1/18/2002 | N/A - email | | | | X | | | | | | X | | | | | | | | | | PHLP-CRT-095739 | Bob O'Brien | Bob O'Brien Dep. Vol. 1,: 137:5-141:6 |
| 1/18/2002 | | X | | X | X | | | | | | X | | | | | | | | | CPT: VP C.C. Liu<br>CPT: Edward Cheng<br>SDI: Mr. D.Y. Kim<br>SDI: Mr. Park<br>SDI: Mr. Choi<br>LPD: Mr. S.Y. Choi<br>LPD: Mr. Milan<br>LPD: Mr. S.K. Lee<br>LPD: Mr. K.Y. Ko<br>Orion: Mr. Lee<br>Orion: Mr. Kang<br>Orion: Mr. Yang<br>Orion: Mr. Jimmy Kim | CHU00031178-179 | C.C. Liu | C.C. Liu, Dep. Vol. 2, 257-259 |
| 1/18/2002 | | X | | X | X | | | | | | X | | | | | | | | | CPT: C.C. Liu<br>CPT: Edward Cheng<br>SDI: Mr. Lee<br>SDI: Mr. Park<br>SDI: Mr. Ahn<br>LPD: Mr. Choi<br>LPD: Mr. Lim<br>LPD: Mr. Edmond Park<br>Orion: Mr. Lee<br>Orion: Mr. Kim<br>Orion: Mr. Adam Choe | CHU00036392-393 | C.C. Liu | C.C. Liu, Dep. Vol. 2, 259-260 |

| MEETING DATE | LOCATION | CPT | LG | OEC/DW | SDI | HIT | MEC | MIT | TSB | PHS | LPD | MTPD | TCRT | BMCC | IRI | SMTL | TAT | SONY | THOM | INDIVIDUAL PARTICIPANTS | BEG BATES | DEPONENTS | DEPOSITION TESTIMONY |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1/18/2002 | | | | | X | X | | | | | | | | | | | | | | HIT: Nobuaki Ito, SDI: Chong Woo Lee | HDP-CRT00049440 | Nobuaki Ito | 228:09 (Nobuaki Ito) |
| 1/21/2002 | | X | | X | X | | | | X | | X | | | | | | | | | Toshiba: Michael Du | TAEC-CRT-00089342 | Shinichiro Tsuruta; Dan Ryan | Tsuruta: 368:1-370:16; Ryan: 192:2-195:24 |
| 1/23/2002 | | X | | X | X | | | | | X | X | | | | | | | | | CPT: C.C. Liu CPT: Edward Cheng CPT: Tony Cheng CPT: Edward Cheng SDI: Mr. Park LPD: Mr. S.K. Lee LPD: Mr. Han Orion: Mr. Park | CHU00031180-181 | C.C. Liu | C.C. Liu, Dep. Vol. 2, 317-319 |
| 1/29/2002 | | X | | | X | | | | X | | X | | | | | | | | | Toshiba: Michael Du | TAEC-CRT-00089968 | Yasuki Yamamoto; Shinichiro Tsuruta; Dan Ryan; Norio Fujita | Yamamoto: 306:19-314:1; Tsuruta: 370:19-377:9; Ryan: 196:1-201:18 |
| 1/30/2002 | | X | X | | | | | | | X | X | | | | | | | | | CPT: VP C.C. Liu CPT: Edward Cheng CPT: Director Tony Cheng LPD: Xiang-Long Cui LPD: Seung Kyu Lee | CHU00031182 | C.C. Liu | C.C. Liu, Dep. Vol. 2, 260-262 |
| 2/4/2002 | | X | | | | | | | X | | | | | | | | | | | Toshiba: Michael Du | TAEC-CRT-00090127 | Shinichiro Tsuruta; Dan Ryan | Tsuruta: 298:14-309:15; Ryan: 201:19-207:18 |
| 2/6/2002 | | | | | X | | | | | | | X | | | | | | | | Hun Sul Chu (SDI): Sanogawaya (MTPD) | SDCRT-0007277 | KC Oh | |
| 2/8/2002 | Nippon Building | X | | | X | X | X | | | | | | | | | | | | | HIT: Nobuaki Ito | HDP-CRT00026234 | Nobuaki Ito | 382:21 (Nobuaki Ito) |
| 2/12/2002 | Email | | | | | | | | | | X | | | | | | | | | | PHLP-CRT-096369 & Attachment (PHLP-CRT-096371) | Kris Mortier | Kris Mortier Dep.Vol. 1, 188-193 |
| 2/22/2002 | | X | | X | X | | | | | | X | | | | | | | | | SDI: Ahn, Park and SDI: Lee; LPD: Lim, E. Park; Orion: Kim and Orion: Nan; CPT: S. Jen, Y. Shih-Ming, CPT: C. Ling-Yun, CPT: C. Ling-Yuan and CPT: Yun. | CHU00036394 | Patrick Canavan | Patrick Canavan Dep. Vol. 1, 310:4-320:18 |
| 2/25/2002 | | | | | X | | | | X | | | | | | | | | | | Toshiba: Yasuki Yamamoto SDI: Jo, J. | TSB-CRT-00041862 | Yasuki Yamamoto | 247:1-250:19; 261:2-271:7 |
| 2/25/2002 | | X | | X | X | | | | X | | X | | | | | | | | | Toshiba: Michael Du | TAEC-CRT-00056158; TAEC-CRT-00091751 | Dan Ryan | 219:25-22 |
| 3/1/2002 | email | | | | X | | | | | | X | | | | | | | | | | PHLP-CRT-097351 | Joseph Killen | Joseph Killen Dep. 167:4-186:1; 205:10-208:12; 269:19-270:4 |
| 3/4/2002 | N/A - email | | | | X | | | | | | X | | | | | | | | | | PHLP-CRT-097351 | Bob O'Brien | Bob O'Brien Dep. Vol. 1,: 141:11-143:16: Vol. 2,: 423:15-427:4 |
| 3/13/2002 | | | | | X | X | X | X | X | X | | | | | | | | X | X | | HDP-CRT00004413 | | |
| 3/14/2002 | CSO Office | | X | | | | | | | X | X | | | | | | | | | | PHLP-CRT-014609 | Patrick Canavan | Patrick Canavan Dep. Vol. 1, 302:16-309:13 |

| MEETING DATE | LOCATION | CPT | LG | OEC /DW | SDI | HIT | MEC | MIT | TSB | PHS | LPD | MTPD | TCRT | BMCC | IRI | SMTL | TAT | SONY | THOM | INDIVIDUAL PARTICIPANTS | BEG BATES | DEPONENTS | DEPOSITION TESTIMONY |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 3/18/2002 | | | | | X | | | | | | X | | | | | | | | | LPD: PJ Lee | PHLP-CRT 098241 | Pil Jae Lee | 190 |
| 3/19/2002 | Email | | | | X | | | | | | X | | | | | | | | | | PHLP-CRT098241 | Kris Mortier | Kris Mortier Dep.Vol. 1, 309-313 |
| 3/19/2002 | email | | | | X | | | | | | X | | | | | | | | | | JLJ-00005511 | Patrick Canavan | Patrick Canavan Dep. Vol. 1, 142:9-148:12 |
| 3/19/2002 | email attachment | X | X | X | X | X | | X | X | | X | X | | | | | | X | X | | JLJ-00005514 | Patrick Canavan | Patrick Canavan Dep. Vol. 1, 149:6-159:6 |
| 3/25/2002 | | X | | X | X | | | X | | | X | | | | | | | | | Toshiba:  Michael Du | TAEC-CRT-00093312 | Shinichiro Tsuruta; Dan Ryan | Tsuruta:  378:9-381:20 Ryan:  227:10-23 |
| 3/26/2002 | | | | | X | X | | | | | | | | | | | | | | HIT: Kumazawa SDI: Lee | HTP-CRT00049313 | Yuuichi Kumazawa | 266:22-25, 267:1 (Yuuichi Kumazawa) |
| 3/26/2002 | Changsa City, Hunan Province, China | X | X | | X | | | | | X | | | | | | | | | | | SDCRT-0087944 | Hoon Choi | 122:08 |
| 3/27/2002 | | | | | X | X | | | | | | | | | | | | | | HIT: Kumazawa SDI: Lee | HDP-CRT00026272 | Yuuichi Kumazawa | 270:6-25 (Yuuichi Kumazawa) |
| 3/28/2002 | Email | | | | X | X | | | | | | | | | | | | | | HIT: Kumazawa SDI: Lee | HTP-CRT00056188 | Yuuichi Kumazawa | 277:9-22, 279:14-18, 280:20-24 (Yuuichi Kumazawa) |
| Q4 2002 | | | | | X | | | | | | | X | | | | | | | | | SDCRT-0007279 | HS Chu | |
| 4/00/2002 | | | | | | X | | X | | | | | | | | | | | | HIT: Kumazawa TSB: Wakiyama | HDP-CRT00051407 | Yuuichi Kumazawa | 386:3-14 (Yuuichi Kumazawa) |
| 4/1/2002 | | | | | X | | X | | | | | | | | | | | | | MEC: Kinoshita; SDI: Kim | MTPD-0426017 | Kinoshita | Kinoshita II at 318-24 |

| MEETING DATE | LOCATION | CPT | LG | OEC/DW | SDI | HIT | MEC | MIT | TSB | PHS | LPD | MTPD | TCRT | BMCC | IRI | SMTL | TAT | SONY | THOM | INDIVIDUAL PARTICIPANTS | BEG BATES | DEPONENTS | DEPOSITION TESTIMONY |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 4/17/2002 | | | | | | X | | | X | | | | | | | | | | | HIT: Yuuichi Kumazawa<br>TSB: Wakiyama | HDP-CRT00051358 | | |
| 4/18/2002 | | | | | | X | | | X | | | | | | | | | | | HIT: Yuuichi Kumazawa<br>TSB: Wakiyama | HDP-CRT00051407 | | |
| 4/18/2002 | | | | | X | | | | X | | | | | | | | | | | SDI: Jo (CDT Sales GM)<br>Toshiba: Yamamoto, Yasuki | TSB-CRT-00041870 | Yasuki Yamamoto; Kazuhiro Nishimaru | Yamamoto: 221:13-227:10<br>Nishimaru: 271:1-273:23 |
| 4/19/2002 | | | | | X | | | | X | | X | | | | | | | | | LPD: Phil Lee | PHLP-CRT-012646 | Pil Jae Lee | 291 |
| 4/22/2002 | | X | | X | X | | | | | | X | | X | | | | | | X | | CHU00660373 | C.C. Liu | C.C. Liu, Dep. Vol. 3, 474-478 |
| 4/24/2002 | | X | | X | X | | | | | | X | | | | | | | | | CPT: Edward Cheng<br>CPT: Yvonne Yun<br>SDI: Mr. Kevin Park<br>LPD: Mr. Edmond Park<br>Orion: Mr. Nam<br>Orion: Mr. Adam Choe | CHU00030406-407 | C.C. Liu | C.C. Liu, Dep. Vol. 2, 262-264 |
| 4/29/2002 | Email | | | | | | X | | X | | X | | | | | | | | X | LPD: Kris Mortier<br>LPD: Leo Mink<br>Toshiba: Keisuke Wakiyama<br>Toshiba: Kurosawa<br>Thomson: Martina<br>Panasonic: Norikazu Nakanishi<br>Sony: Takayoshi Kitawaki<br>Sony: Toshiya Shiga<br>Sony: Yoko Hayashi | MTPD-0331740 | Kris Mortier | Kris Mortier Dep.Vol. 2, 437-439 |
| 4/30/2002 | | X | | X | X | | | | X | | X | | | | | | | | | Toshiba: Michael Du | TAEC-CRT-00095236 | Dan Ryan | 234:8-238:6 |
| 5/13/2002 | | | | | X | X | | | | | | | | | | | | | | HIT: Watanabe<br>SDI: Pak, Kim, Rhee | HDP-CRT00049470 | Noboru Toyama | 204 (Noboru Toyama) |
| 5/16/2002 | Email | | | | X | | | | | | X | | | | | | | | X | | PHLP-CRT-14431 & Attachment (PHLP-CRT-134432) | Kris Mortier | Kris Mortier Dep.Vol. 1, 194-202 |
| 5/22/2002 | Indonesia | X | | | X | | | | X | | X | X | X | | | | | | | LPD - B. Jeon, B. Lee, Kyu Hwa, Yong Joon, K. Park<br>SDI - C. Ahn, C. Lee, S.K. Park, D. Bae, Dae Eui Lee, Chunghwa Yang, Chen<br>Thai CRT - Montri<br>Toshiba/MPTD - Yasukawa | | Dae Eui Lee | 268:10-274:1 |

| MEETING DATE | LOCATION | CPT | LG | OEC/DW | SDI | HIT | MEC | MIT | TSB | PHS | LPD | MTPD | TCRT | BMCC | IRI | SMTL | TAT | SONY | THOM | INDIVIDUAL PARTICIPANTS | BEG BATES | DEPONENTS | DEPOSITION TESTIMONY |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 5/22/2002 | Indonesia | X | | | X | | | | X | | X | X | X | | | | | | | LPD - B. Jeon, B. Lee, Kyu Hwa, Yong Joon, K. Park<br>SDI - C. Ahn, C. Lee, S.K. Park, D. Bae, Dae Eui Lee, Chunghwa Yang, Chen<br>Thai CRT - Montri<br>Toshiba/MPTD - Yasukawa | SDCRT-0088715 | | |
| 5/27/2002 | | X | X | X | X | X | X | X | X | X | X | | X | | X | | | X | X | LPD: PJ Lee | PHLP-CRT-014816<br>PHLP-CRT-014272 | Pil Jae Lee | 203<br>287 |
| 5/27/2002 | | X | | | X | | | | X | | X | | | | | | | | | Toshiba: Michael Du | TAEC-CRT-00096166 | Shinichiro Tsuruta; Dan Ryan | Tsuruta: 382:22-384:22<br>Ryan: 243:11-24 |
| 5/28/2002 | Korea | X | | X | X | | | | | | X | | | | | | | | | SDI - Joon Seok Ahn, Sung Doek Park, Bo Kyung Lee<br>LPD - Sung Dae Lim, Joon Yong Park<br>Orion - Young Jae Kim, Gil Nam, Gyu Chul Choi, Jae Suk Kim<br>Chunghwa - S.J. Yang | SDCRT-0007585 (Ex. 675) | Dae Eui Lee | 260:15-264:1 |
| 5/30/2002 | Email | | | | X | | | | X | | X | | | | | | | | | | PHLP-CRT-014272 | Kris Mortier | Kris Mortier Dep.Vol. 1, 313-317 |
| 06/00/2002 | | | | | X | X | | | | | | | | | | | | | | | HDP-CRT00004468 | Nobuaki Ito | 211:03 (Nobuaki Ito) |
| 6/6/2002 | | X | | | X | | | | | | | | | | | | | | | SDI - Dae Eui Lee<br>Chunghwa - S.J. Yang | SDCRT-0007602 | Dae Eui Lee | 264:11-266:7 |
| 6/6/2002 | Thailand | X | | | | | | | | | | | | | | | | | X | Thompson - Peter Ho<br>Chunghwa - S.J. Yang | SDCRT-0007602 | | |
| 6/11/2002, 7/11/2002 | Tokyo, Osaka | | | | | | | | | | X | X | | | | | | | X | TSB: S. Trinker,<br>TSB: K. Mortier. | JLI-0000189 9 | Patrick Canavan | Patrick Canavan Dep. Vol. 2, 396:10-398:21 |
| 6/13/2002 | | X | | | X | | | | X | | X | | | | | | | | | Toshiba: Michael Du | TAEC-CRT-00096935 | Shinichiro Tsuruta; Dan Ryan: Norio Fujita | Tsuruta: 384:24-387:22<br>Ryan: 265:3-277:9 |
| 6/13/2002 | phone call | | | | | | X | | X | | | | | | | | | | | MEC: Sanogawaya | MTPD-0024384 | Sanogawaya | Sanagowaya III at 407-12 |
| 6/14/2002 | Samsung's Tijuana factory | | | | X | | | | | | | | | | | | | | | MEC: Kinoshita | MTPD-0042010 | Kinoshita | Kinoshita I at 67-77 |
| 6/27/2002 | Rome, Italy | | | | X | | | | | | X | | | | | | | | X | LPD: Leo Mink<br>THOM: Emeric Charamel<br>SDI: Rak Jin Kim<br>DOSA: Kyung Hoon | SDCRT-0087705 | | |
| 7/3/2002 | | | | | X | X | | | | | | | | | | | | | | HIT: Yuuichi Kumazawa<br>HIT: Nobuaki Itou | HDP-CRT00051412 | | |
| 7/7/2002 | n/a | X | | X | X | | X | | | | X | | | | | | | X | X | | LPD_00042916 | | |
| 7/18/2002 | Email | | | | X | | | | | | X | | | | | | | | | LPD: Kris Mortier<br>LPD: Jun Yong Park<br>SDI: Jae In Lee<br>SDI: Sung Deok Park | SDCRT-0006799-6800 | Kris Mortier | Kris Mortier Dep.Vol. 1, 318-323 |
| 7/19/2002 | | X | X | X | X | X | X | X | X | X | | | X | | X | X | | X | X | LPD: PJ Lee | PHLP-CRT-020282 | Pil Jae Lee | 158 |

| MEETING DATE | LOCATION | CPT | LG | OEC /DW | SDI | HIT | MEC | MIT | TSB | PHS | LPD | MTPD | TCRT | BMCC | IRI | SMTL | TAT | SONY | THOM | INDIVIDUAL PARTICIPANTS | BEG BATES | DEPONENTS | DEPOSITION TESTIMONY |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 8/15/2002 | U.S. | | | | X | | | | | X | | X | | X | | | | | X | MTPD: Shigkazu Shibata<br>MTPD: Shinichi Iwamoto<br>MTPD: Ayumu Kinoshita<br>MTPD: Mike Nakamoto<br>MTPD: Takaki Kokado<br>THOM: J.P. Hanrahan | MTPD-0223790 | | |
| 8/16/2002 | | | | | | | X | | | | | | | | | | | | X | MEC: Iwamoto | MTPD-0223790 | Iwamoto | Iwamoto I at 190-97 |
| 8/28/2002 | Mobara, Japan | X | | | X | | | | | | | | | | | | | | | HIT: Yoshiichi Arita<br>CPT: S.C. Chen | HDP-CRT00037711 | | |
| 9/00/2002 | Paris, France | | | | X | | | | | | | | | | | | | | X | HIT: K. Hirai<br>HIT: Garry Gwaltney<br>PHS: Sukrit Mitra<br>PHS: Christian Haring | HEDUS-CRT00007566 | | |
| 9/00/2002 | | | | | X | | | | | X | | | | | | | | | X | HIT: K. Hirai<br>HIT: Garry Gwaltney<br>PHS: Sukrit Mitra<br>PHS: Christian Haring | HEDUS-CRT00007566 | | |
| 9/3/2002 | N/A - email | | | | | | | | X | | X | | | | | | | | | | PHLP-CRT-087780 | Bob O'Brien | Bob O'Brien Dep. Vol. 1.; 258:7-263:25 |
| 9/13/2002 | | X | | | | | | | X | | | | | | | | | | | CPT: Maxim Chen<br>CPT: Jeff Yue | CHU00030414-018 | S.J. Yang | S.J. Yang, Dep. Vol. 2, 252-255<br>Dep. Vol. 3, 362-365 |
| 9/27/2002 | Brussels, Belgium | X | | X | X | | X | | | | X | | | | | | | X | X | THOM: Didier Trutt<br>THOM: Christian Lissorgues<br>Ekranas: Alain Clement<br>Schott: Max Raster<br>Schott: Stefan Georgi<br>SDI: Helmut Meinke<br>LPD: Felice Albertazzi<br>LPD: Leo Mink<br>EECA EDIA: Anne-Marie Leclercq | PHLP-CRT-010790 | | |
| 10/4/2002 | Email | | | | X | X | | | | | | | | | | | | | | HIT: Kazumasa Hirai<br>SDI: unspecified | HDP-CRT00038398 | Noboru Toyama | 187 (Noboru Toyama) |
| 10/8/2002 | Parmesano Dayton Marriott Hotel | | | | | X | X | | | | | | | | | | | | | HIT: Kazumasa Hirai<br>MEC: Shinichi Iwamoto | MTPD-0036413 | Kazumasa Hirai | 152:4, 170, 435 (Kazumasa Hirai) |
| 10/16/2002 | | | | | X | | X | | | | | | | | | | | | | Hun Sul Chu (SDI): | SDCRT-0007266 | HS Chu | |
| 10/22/2002 | U.S. | | | | X | | | | X | | X | | X | | | | | X | THOM: Tom Carson<br>THOM: Alex Carson<br>LPD: Jeff Johnson<br>LPD: Bob O'Brien<br>HIT: Thom Schmitt<br>HIT: Jake Spengler<br>BMCC: Elaine Sears | PHLP-CRT-087372 | | |

| MEETING DATE | LOCATION | CPT | LG | OEC /DW | SDI | HIT | MEC | MIT | TSB | PHS | LPD | MTPD | TCRT | BMCC | IRI | SMTL | TAT | SONY | THOM | INDIVIDUAL PARTICIPANTS | BEG BATES | DEPONENTS | DEPOSITION TESTIMONY |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 10/23/2002 | email | | | | X | | | | | | X | | | | | | | | | SDI: C. Bycon,<br>SDI: B. Lee,<br>SDI: S. Kim:<br>LPD: N. Corsino,<br>LPD: C. Kim,<br>LPD: E. Park | PHLP-CRT-087304 | Patrick Canavan | Patrick Canavan Dep. Vol. 2.,<br>390:22-395:22: 489:3-499:11 |
| 11/4/2002 | Email | | | | X | | | | | | X | | | | | | | | | | PHLP-CRT-010267 | Kris Mortier | Kris Mortier Dep.Vol. 2, 413-417 |
| 11/5/2002 | Email | X | | | | | | | | | X | | | | | | | | | | PHLP-CRT-012917 | Kris Mortier | Kris Mortier Dep.Vol. 1, 247-249 |
| 11/8/2002 | | | | X | | X | X | | X | | X | | X | | | | | | | | | JLJ-0001899 &<br>Attachment JLJ-00001901 | Kris Mortier | Kris Mortier Dep.Vol. 1, 323-326 |
| 11/12/2002 | Email | | | | | X | | | X | | X | X | | | | | | | | | | PHLP-CRT-087420 | Kris Mortier | Kris Mortier Dep.Vol. 1, 326-330: Bob O'Brien Dep. Vol. 1,: 152:13-155:13 |
| 11/14/2002 - 11/15/2002 | Jungli, China | X | | | X | | | | | | | | | | | | | | | | HIT: Shouji Shirai<br>CPT: K.C. Chen | HDP-CRT00038725, HDP-CRT00038733 | | |
| 11/14/2002 | Longwy, France | | | X | X | | | | | | | | | | | | | | | | Sung Won Ahn (OEC): Kyung Hoon Choi (OEC): Rak Jin Kim (SDI): Sung Deok Park (SDI) | SDCRT-0006632 | J.I. Lee: KC Oh | |
| 11/15/2002 | Paris | | | | X | | | | | | | | | | | | | | | X | Agnes (Thomson): Francoise (Thomson): SD Park (SDI) | SDCRT-0006632 | J.I. Lee: KC Oh | |
| 11/17/2002 - 11/18/2002 | China: Zhangjiajie | | X | | X | X | | | | X | | | | X | X | | | | | | BMCC: Chae-hong<br>HIT: Yongxin<br>BMCC: Fan<br>PHS: Zhang, Dezhu | SDCRT-0006674, SDCRT-0006675 | | |
| 11/18/2002 | Japan | | | | | | | | X | | | | | | | | | | | X | THOM: Christian Lissorgues<br>THOM: Emeric Charamel<br>THOM: J.P. Hanrahan<br>THOM: Jack Brunk<br>THOM: A. Konuma<br>TSB: T. Onda<br>TSB: K. Ehara<br>TSB: K. Nakana<br>TSB: M. Mashinoto | TDA02994 | | |
| 11/20/2002 | | | | | X | | | | | X | | | | | | | | | | | | SDCRT-0006442 | KC Oh | |
| 11/20/2002 | Paris, France | | | | X | | | | | | | | | | | | | | | X | SDI: Sung Deok Park<br>THOM: Ms. Agnes<br>THOM: Ms. Francoise | SDCRT-0006632 | KC Oh: Jae In Lee | Oh 477: Lee 569 |

| MEETING DATE | LOCATION | CPT | LG | OEC/DW | SDI | HIT | MEC | MIT | TSB | PHS | LPD | MTPD | TCRT | BMCC | IRI | SMTL | TAT | SONY | THOM | INDIVIDUAL PARTICIPANTS | BEG BATES | DEPONENTS | DEPOSITION TESTIMONY |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 11/25/2002 | Email | | | | | X | | | X | | | | | | | | | | | HIT: Yuuichi Kumazawa, Nobuaki Ito TSB: Keisuke Wakiyama | HDP-CRT00026077 | Nobuaki Ito Yuuichi Kumazawa | 262:4 (Nobuaki Ito): 207, 387 (Yuuichi Kumazawa) |
| 11/28/2002 | | X | | | X | | | | | | X | | | | | | | | | | SDCRT-0006043E | I.H. Song: Hoon Choi | Song: 195:19-198:24; Choi: 124:16 |
| 12/6/2002 | | | | | X | | | | X | | X | | | | | | | | | | SDCRT-0087934 | | |
| 12/10/2002 | Mexico | | | | X | | | | | | X | | | | | | | | | | SDCRT-0087934 | | |
| 12/15/2002 | | | | | X | | | | | | X | | | | | | | | | | PHLP-CRT-005637 | Pil Jae Lee | 311 |
| 12/16/2002 | | X | | | X | | | | | | X | | | | | | | | | | SDCRT-0088832 | I.H. Song | 238:19-241:1 |
| 12/17/2002 | | X | | X | | | | | | | X | | | | | | | | | CPT: S.J. Yang CPT: Maxim Chen | CHU00030559-562 | S.J. Yang | S.J. Yang, Dep. Vol. 2, 255-259 Dep. Vol. 3, 365-368 |
| 12/18/2002 | Email | | | | | | | | | | X | | | | | | | | | | PHLP-CRT-014413 & Attachment (PHLP-CRT-014414) | Kris Mortier | Kris Mortier Dep.Vol. 1, 202-212 |
| 12/22/2002 | | X | | | X | | | | | | X | | | | | | | | | Tony Cheng | SDCRT-0087953 | I.H. Song | 174:7-176:14, 178:14-23, 181:13-182:1, 183:4-19 |
| 12/27/2002 | | | | | X | | X | | | | | | | | | | | | | MEC: Nishiyama | SDCRT-0006670 | Nishiyama | Nishiyama III at 407-10 |
| 12/27/2002 | | | | | X | | X | | | | | | | | | | | | | MEC: Sanogawaya | MTPD-0222758 | Sanogawaya | Sanogawaya III at 472-77 |
| 2003 | n/a | | | | X | | | | | | | | | | | | | | X | | SDCRT-0088604 | | |
| 2003 | n/a | | | | X | | | | | | | | | | | | | | X | THOM: CL (Christian Lissorgues) | TDA01365 | | |
| 2003-2004 | | | | | X | | | | | | X | X | | | | | | | | MTPD: Yamamoto, Yasuki | | Yasuki Yamamoto | 83:22-86:9 |
| 2003-2004 | | | | | X | | | | | | X | X | | | | | | | | MTPD: Yamamoto, Yasuki | | Yasuki Yamamoto | 83:22-86:9 |
| 2003-2004 | | | | | X | | | | | | X | X | | | | | | | | MTPD: Yamamoto, Yasuki | | Yasuki Yamamoto | 83:22-86:9 |
| 1/00/2003-3/00/2003 | South Korea | | | | X | | | | X | | X | | | | | | | | | Toshiba: Yamamoto, Yasuki; Kawano; Wakiyama | | Yasuki Yamamoto | 117:22-121:23; 136:3-137:3 |
| 1/00/2003 | | | | | X | | | | | | | | | | | | | | | | SDCRT-0007280 | KC Oh | |
| 1/1/2003 | | X | | | X | | | | | | X | | | | | | | | | CPT: C.C. Liu CPT: Yvonne Yuan CPT: VP Chan CPT: Alex Yeh | CHU00031804 | C.C. Liu | C.C. Liu, Dep. Vol. 2, 264-267 |
| 1/8/2003 | N/A - email | X | | X | | | | | | | X | | | | | | | | | | PHLP-CRT-013964 | Bob O'Brien | Bob O'Brien Dep. Vol. 1.; 200:4-214:24 |
| 1/8/2003 | Garden Cafe, Harrah's Las Vegas | | | | | X | | | | X | | | | | | | | | | HIT: Tom Heiser, Thom Schmitt, JS, SB, PHS: C. Haring, S. Little | HEDUS-CRT00166481 | Tom Heiser | 244:06 (Tom Heiser) |
| 1/8/2003 | La Playa Lounge, Harrah's Las Vegas | | | | | X | | | | | | | | | | | | | | X | HIT: Tom Heiser, Thom Schmitt, AP SB THOM: G. O'Donnel, J.P. Colin | HEDUS-CRT00166481 | Tom Heiser | 244:06 (Tom Heiser) |

| MEETING DATE | LOCATION | CPT | LG | OEC /DW | SDI | HIT | MEC | MIT | TSB | PHS | LPD | MTPD | TCRT | BMCC | IRI | SMTL | TAT | SONY | THOM | INDIVIDUAL PARTICIPANTS | BEG BATES | DEPONENTS | DEPOSITION TESTIMONY |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1/9/2003 | email | | | | X | | | | | | | | | | | | | | | IDC: B. O'Donnell / SDI: J. Lee and / SDI: H. Choi / SRI: S. Nebrich, | SDCRT-0005172_CT | Patrick Canavan | Patrick Canavan Dep. Vol. 1, 183:6-197:2 |
| 1/9/2003 | U.S. | | | | X | | | | | | X | | | | | | | | | LPD - Chang Hoo Kim | SDCRT-0087934 | | |
| 1/10/2003 | email | | | | X | | | | | | X | | | | | | | | | LPD: P. Canavan, / LPD: R. O'Brien: / SDI: J. Lee and / SDI: H. Choi | SDCRT-0005170_CT | Patrick Canavan | Patrick Canavan Dep. Vol. 1, 183:6-197:2 |
| 1/13/2003 | N/A - email | | | | | | | | | | X | X | | | | | | | | | MTPD-0197518 | Bob O'Brien | Bob O'Brien Dep. Vol. 1,: 267:9-272:-24 |
| 1/29/2003 | Email | | | | X | | | | | | X | | | X | X | | | X | X | | PHLP-CRT-014465 & Attachments (PHLP-CRT-014469: 14470) | Kris Mortier | Kris Mortier Dep.Vol. 1, 212-224 |
| 2/00/2003 | | | | | X | | | X | | | X | | | | | | | | | | SDCRT-0087934 | | |
| 2/3/2003 | Ann Arbor, MI | | | | X | | | | | | X | | | | | | | | | | PTC-00004295 | Bob O'Brien | Bob O'Brien Dep. Vol. 1,: 251:20-258:2 |
| 2/10/2003 | email | X | | X | X | X | | X | X | X | X | X | | | | | | X | X | | PHLP-CRT-015233 | Joseph Killen | Joseph Killen Dep. 208:17-219:6: 269:19-270:4 |
| 2/10/2003 | | | | | X | | | | | | X | X | | | | | | | | | SDCRT-0088705 | J.I. Lee | |
| 2/19/2003 | | | | | X | | | | | | X | | | | | | | | | Moon Jin Choi (LPD): Eui Seob Jo (SDI) | SDCRT-0005933 | KC Oh | |
| 2/21/2003 | | X | | | | | | X | | | X | | X | | | | | | | CPT: S.J. Yang / CPT: Maxim Chen | CHU00020660 | S.J. Yang | S.J. Yang, Dep. Vol. 2, 259-262 |
| 2/24/2003 | Marriott Hotel, Korea | X | | | X | | | | | | X | | | | | | | | | | SDCRT-0091605 | | |
| 2/24/2003 | EIA meeting | | | | X | | X | | | | | | | | | | | | | MEC: Nishiyama | PHLP-CRT-089887: SDCRT-0007282 | Nishiyama | Nishiyama I at 96-98 |
| 2/26/2003 | Taiwan | X | | | | | X | | | | | | | | | | | | | CPT: Liu, Chih-Chun (C.C.) (Vice President): Yang, Sheng-Jen (S.J.)(Assistant Vice President): Chen, Shih-Ming (Maxim) / MEC: Tomori (CPT Sales Manager, MDDM): Koga (Sales Manager. MDDM) | CHU00020661 CHU00030080 CHU00030553 | | |
| 2/27/2003 | Taiwan | X | | | | | | | | | | | X | | | | | | | CPT: Liu, Chih-Chun (C.C.) (Vice President): Yang, Sheng-Jen (S.J.)(Assistant Vice President): Chen, Shih-Ming (Maxim) / T-CRT: Kanet (Managing Director): Montri (Sales & Marketing Manager) | CHU00020661 CHU00030080 CHU00030553 | | |
| 2/28/2003 | Taiwan | X | | | | | | | X | | | | | | | | | | | CPT: Liu, Chih-Chun (C.C.) (Vice President): Yang, Sheng-Jen (S.J.)(Assistant Vice President): Chen, Shih-Ming (Maxim) / TSB: Ohmori (Sales & Marketing Senior Manager, TDDT): Nishimaru (Sales & Marketing Manager, TDDT) | CHU00020661 CHU00030080 CHU00030553 | Kazuhiro Nishimura | 274:22-278:9 |

| MEETING DATE | LOCATION | CPT | LG | OEC /DW | SDI | HIT | MEC | MIT | TSB | PHS | LPD | MTPD | TCRT | BMCC | IRI | SMTL | TAT | SONY | THOM | INDIVIDUAL PARTICIPANTS | BEG BATES | DEPONENTS | DEPOSITION TESTIMONY |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2/28/2003 | N/A - email | | X | | | | | | | | X | X | | | | | | | | | MTPD-0218782 | Bob O'Brien | Bob O'Brien Dep. Vol. 1.; 273:11-277:16 |
| 3/00/2003 | | | | | X | | | | X | | X | | | | | | | | | | SDCRT-0087934 | | |
| 3/3/2003 | SDI Conference Room | | | | X | | | X | | | | | | | | | | | | | Deok Yeon Kim (SDI): Eui-sub Cho (SDI): Jae-in Lee (SDI): Nakashima (Mitsubishi): Katou (Koshida-tech) | SDCRT-0006041 | I.H. Song | 221:22-223:11 |
| 3/3/2003 3/11/2003 | San Diego: Mexico | | | | X | | | | | | X | X | | | | | | | | X | KC Oh (SDI) | SDCRT-0076953: SDCRT-0076954 | KC Oh | 82:18-83:11 |
| 3/5/2003 | N/A - email | | | | | | | X | | | X | | | | | | | | | | JLJ-00001928 | Bob O'Brien | Bob O'Brien Dep. Vol. 1.; 264:5-266:25 |
| 3/7/2003 | email | | | | | | | | | | X | X | | | | | | | | | | MTPD-0198889 | Bob O'Brien | Bob O'Brien Dep. Vol. 1.; 277:21-281:7 |
| 3/7/2003 | email | | | | | | | | | | X | X | | | | | | | | | | MTPD-0226478 | Bob O'Brien | Bob O'Brien Dep. Vol. 1.; 281:12-285:11 |
| 3/10/2003 | | | | | X | | | | | | | X | | | | | | | | | MTPD: Kinoshita | MTPD-0223553:MTPD-0025531 | Kinoshita | Kinoshita I at 150-51 |
| 3/12/2003 | | | | | | X | | | | | | X | | | | | | | | | HIT: Nobuaki Ito MTPD: Mr. Nishimura | HDP-CRT00026082 | Nobuaki Ito | 93:09 (Nobuaki Ito) |
| 3/12/2003 | | | | | X | | | | | | | | | | | | | | | | Sang Cheol Yoon (DOMEX): CH Im (SDI) | SDCRT-0002514 | KC Oh | |
| 3/23/2003 | | | | | X | | | | | | | | | | | | | | X | | | SDCRT-0002515 | KC Oh | |
| 3/24/2003 | Atlanta, GA | | | | | X | X | | | | | | | | | | | | | | HIT: Kazumasa Hirai, Nakanishi MEC: Shinichi, (Steve) Iwamoto, President Mike Nakamoto | MTPD-0025523 | Kazumasa Hirai | 183:06 (Kazumasa Hirai) |
| 3/24/2003 | Atlanta, GA | | | | | X | X | | | | | | | | | | | | | | HIT: Kazumasa Hirai Yosuke Nakanishi, Kumiko Wilson, MEC: Shinichi (Steve) Iwamoto, President Mike Nakamoto | MTPD-0042965 | Kazumasa Hirai | 194:13, 435 (Kazumasa Hirai) |
| 3/24/2003 | Atlanta, GA | | | | | X | X | | | | | | | | | | | | | | HIT: Kazumasa Hirai MEC: Shinichi (Steve) Iwamoto | MTPD-0041033 | Kazumasa Hirai | 202:3 (Kazumasa Hirai) |
| 3/27/2003 | Shenzhen | X | | | X | | | | | | X | | | | | | | | | | CPT: J.S. Lu SSDI: Zhen Yang LPD: Yu Tian LPD: VP Shenglie Xin LPD: Minghui Xu LPD: Jiangnan Yu | CHU00031822 | J.S. Lu | J.S. Lu, Dep. Vol. 2, 166-167 |
| After March 2003 | Bangkok | X | | | | | | | | | | X | | | | | | | | | MTPD: Nishimaru, Kazuhiro: Omori | | Kazuhiro Nishimaru | 130:2-131:2: 132:16-132:23 |
| After March 2003 | Bangkok | | | | | | | | | | X | X | | | | | | | | | MTPD: Nishimaru, Kazuhiro | | Kazuhiro Nishimaru | 131:20-132:15 |
| April 2003-March 2005 | | X | | | X | | | | | | X | X | X | | | | | | | | MTPD: Nishimura, Kazutaka | | Kazutaka Nishimura | |
| April 2003-March 2005 | | X | | | X | | | | | | X | X | X | | | | | | | | MTPD: Nishimura, Kazutaka | | Kazutaka Nishimura | |

| MEETING DATE | LOCATION | CPT | LG | OEC/DW | SDI | HIT | MEC | MIT | TSB | PHS | LPD | MTPD | TCRT | BMCC | IRI | SMTL | TAT | SONY | THOM | INDIVIDUAL PARTICIPANTS | BEG BATES | DEPONENTS | DEPOSITION TESTIMONY |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| April 2003-March 2005 | | X | | | X | | | | | | X | X | X | | | | | | | MTPD: Nishimura, Kazutaka | | Kazutaka Nishimura | |
| 4/10/2003 | Email | | | | X | | | X | | | X | | | | | | | X | X | | PHLP-CRT-022244 [Attachments at -022245 and 022246] | Kris Mortier | Kris Mortier Dep.Vol. 1, 249-256 |
| 4/10/2003 | | | | | X | | | | | | X | | | | | | | | X | SDI: KC Oh<br>SDI: KH Kim<br>SDI: Gabriel LJ Kim<br>Ekranas: Mr. Zvybas<br>Ekranas: Mr. Clement  LPD: Mun Bong Choi  Thomson: Charamel | SDCRT-0006903 | KC Oh | 206 |
| 4/14/2003 | Japan: Sony Osaki Office | | | | | X | X | X | | | | | | | | | | X | | SONY: Toshiya Shiga<br>HIT: Nobuaki Itou<br>HIT: Kawamura Katsuyuki<br>MIT: Norikazu Nakanishi | HDP-CRT00022991, HDP-CRT00022994, HDP-CRT00022995, HDP-CRT00022996 | | |
| 4/25/2003 | | | | | X | | | | | | X | X | | | | | | | | MTPD: Kawano: Sanogawaya: Tanaka: Nishimura<br>SDI: Lee, Dong Hoon: Ahn, John S.: Jo, E.K.: Lee, Seungmin<br>LPD: Yang, Yeong-Ug: Lee, Hwa-Kyu: Lim, Sung-Dai: Park, Edmond | MTPD-0423675 | Kazutaka Nishimura | |
| 4/25/2003 | | X | | | X | | | | | | | | | | | | | | X | | SDCRT-0088713 | | |
| 4/25/2003 | | | | | X | | | | | | X | X | | | | | | | | LPD: Yang, Yeong-Ug<br>LPD: Lee, Hwa-Kyu<br>LPD: Lim, Sung-Dai<br>LPD: Park, Edmond<br>MTPD: Kawano<br>MTPD: Sanogawaya<br>MTPD: Tanaka<br>MTPD: Nishimura<br>MTPD: Nakanishi<br>SDI: Lee, Dong Hoon<br>SDI: Ahn, John S.<br>SDI: Jo, E.K.<br>SDI: Lee, Seungmin | MTPD-0423675: MTPD-0573683 | Sanogawaya Nishimura | Sangowaya II at 210-13 Nishimura II at 172-84 |
| 4/29/2003 | | | | | X | | | | | | X | | | | | | | | | Joel Garbi (LPD): Joao Gordo (LPD): Sung Shik Kim (SDI): Francisco (SDI) | SDCRT-0093913 | KC Oh | |
| 4/30/2003 | | X | | | X | | | | | | X | | | | | | | | | CPT: S.J. Yang<br>SDI: VP Dong-Shun Lee<br>SDI: Jun-Zhe An<br>SDI: Zai-Ren Lee<br>LPD: VP Yong-Shu Liang<br>LPD: Hua-Sheng Lee<br>LPD: Sheng-Da Lin | CHU00123742 | S.J. Yang | S.J. Yang, Dep. Vol. 3, 350-355 |
| 4/30/2003 | | | | | X | | | | | | X | | | | | | | | | Joel Garbi (LPD): Joao Gordo (LPD): Sung Shik Kim (SDI): Francisco (SDI) | SDCRT-0093913 | KC Oh | |

| MEETING DATE | LOCATION | CPT | LG | OEC /DW | SDI | HIT | MEC | MIT | TSB | PHS | LPD | MTPD | TCRT | BMCC | IRI | SMTL | TAT | SONY | THOM | INDIVIDUAL PARTICIPANTS | BEG BATES | DEPONENTS | DEPOSITION TESTIMONY |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 5/1/2003 | email | | | | X | | | X | | | X | X | | | | | | | X | | MTPD-0011040 | Bob O'Brien | Bob O'Brien Dep. Vol. 1.; 286:6-294:13; Dep. Vol. 2.; 437:6-438:7 |
| 5/2/2003 | U.S. | | | | X | | | | | | | | | | | | | | X | SDI: Woongrae Kim SDI: Dong Suk Lee THOM: J.P. Hanrahan THOM: Jack Brunk | SDCRT-0007239 | KC Oh | 445 |
| 5/9/2003 | | | | | X | X | | | | | | | | X | X | | | | | Wenqiang Fan: Jianshe Wei: Xiaolin Shen: Xiuhua Li: Zhiping Xu: Guojun Yang: Weixian Wu: Yaping Yang: S.K. Sung | BMCC-CRT000142063 | | |
| 5/13/2003 | email | | | | X | | | | | | X | X | | | | | | | | | MTPD-0276153 | Bob O'Brien | Bob O'Brien Dep. Vol. 2.; 329:17-335:15; 438:11-18 |
| 5/20/2003 | | X | | | X | | | | | | X | | | | | | | | | | SDCRT-0088791 | I.H. Song | 209:3-210:25, 217:14-221:3 |
| 5/21/2003 | | | | | X | | | | | | | X | | | | | | | | Hun Sul Chu (SDI) | SDCR T-0070524 | HS Chu | |
| 6/2-4/2003 | | | | | | | | | | | X | X | | | | | | | X | MTPD: Nakamoto MTPD: Shibata | MTPD-0013872 | | |
| 6/4/2003 | Spain | | | | X | | | | | X | | | | | | | | | X | (SDI): S. D. Park: EECA: Anne-Marie Leclercq: Philips: Leo Mink, Philips: Kris Mortier: Thomson: A. Martin: EIAK: Hong Sik Kang, and EIAK: In Su Lee | Samsung 2nd Supplemental Response p 63 | Kris Mortier | Kris Mortier Dep.Vol. 2, 537-550 |
| 6/5/2003 - 6/9/2003 | | | | | X | | | | | | X | | | | | | | | | Woo Seok Huh (SDI) | SDCRT-0006927 | KC Oh | |
| 6/6/2003 | email | | | | X | | | | | | X | X | | | | | | | | | MTPD-0276234 | Bob O'Brien | Bob O'Brien Dep. Vol. 2.; 338:9-343:19; 439:24-440:6 |
| 6/9/2003 | email and attachment | | | | X | | | | | | X | | | | | | | | | | SDCRT0006927: SDCRT0006928 | Bob O'Brien | Bob O'Brien Dep. Vol. 2.; 358:14-360:16; 442:3-442:17; Vol. 2.; 360:18-362:2 |
| 6/9/2003 | | | | | | | | | | | | X | | | | | | | X | MTPD: Shigkazu Shibata | MTPD-0011066 | | |
| 6/10/2003 | n/a | | | | X | | | | | | | | | | | | | | X | THOM: James Hanrahan THOM: Jack Brunk THOM: Christian Lissorgues | TDA01360 | | |
| 6/12/2003 | | X | | | X | | | | | | X | | | | | | | | | | SDCRT-0088798 | I.H. Song | 224:21-226:24 |

| MEETING DATE | LOCATION | CPT | LG | OEC /DW | SDI | HIT | MEC | MIT | TSB | PHS | LPD | MTPD | TCRT | BMCC | IRI | SMTL | TAT | SONY | THOM | INDIVIDUAL PARTICIPANTS | BEG BATES | DEPONENTS | DEPOSITION TESTIMONY |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 6/13/2003 | | | | | X | | | | | | X | | | | | | | | X | EECA: Anne-Marie Leclerq LPD: Leo Mink LPD: Kris Mortier THOM: A. Martin SDI: Kevin Park | SDCRT-0006510 & SDCRT-0006510E | Kris Mortier | Kris Mortier Dep.Vol. 2, 434-437 |
| 6/25/2003 | | | | | | | | | | | X | X | | | | | | | | LPD: B. O'Brien. MTPD: S. Lammers, MTPD: N. Bray, MTPD: S. Iwamoto, MTPD: M. Nakamoto, MTPD: C. Read. | MTPD-0016475 | Bob O'Brien | Bob O'Brien Dep. Vol. 2.: 335:19-338:5; 438:21-439:23 |
| July 2003-June 2006 | U.S. (California) | | | | X | | | | | | | X | | | | | | | | MTPD: Fujita, Norio SDI: Kim, Ray | | Norio Fujita | |
| July 2003-June 2006 | U.S. (California) | | | | X | | | | | | | X | | | | | | | | MTPD: Fujita, Norio SDI: Kim, Ray | | Norio Fujita | |
| July 2003-June 2006 | U.S. (California) | | | | X | | | | | | | X | | | | | | | | MTPD: Fujita, Norio SDI: Kim, Ray | | Norio Fujita | |
| July 2003-June 2006 | U.S. (California) | | | | X | | | | | | | X | | | | | | | | MTPD: Fujita, Norio SDI: Kim, Ray | | Norio Fujita | |
| July 2003-June 2006 | U.S. (California) | | | | X | | | | | | | X | | | | | | | | MTPD: Fujita, Norio SDI: Kim, Ray | | Norio Fujita | |
| July 2003-June 2006 | U.S. (California) | | | | X | | | | | | | X | | | | | | | | MTPD: Fujita, Norio SDI: Kim, Ray | | Norio Fujita | |
| July 2003-June 2006 | U.S. (California) | | | | X | | | | | | | X | | | | | | | | MTPD: Fujita, Norio SDI: Kim, Ray | | Norio Fujita | |
| July 2003-June 2006 | U.S. (California) | | | | X | | | | | | | X | | | | | | | | MTPD: Fujita, Norio SDI: Kim, Ray | | Norio Fujita | |
| 7/2/2003 | Thomson Mexicali factory | | | | | | | | | | | X | | | | | | | | X | MTPD: Alex Kinoshita MTPD: Kazutaka Nishimura | MTPD-0035375 | Kazutaka Nishimura: Ayumu Kinoshita 30(b)(6): Shinichi Iwamoto 30(b)(6) | Kinoshita 30(b)(6) 121, 393: Iwamoto 30(b)(6) 332: Nishimura II at 185-89 |
| 7/14/2003 | | | | | | X | | | | | | X | | | | | | | | | HIT: Nobuaki Ito MTPD: Kazutaka Nishimura | HDP-CRT00026313 | Nobuaki Ito | 265:14 (Nobuaki Ito) |
| 7/17/2003 | | | | | | X | | | | | | X | | | | | | | | | HIT: Nobuaki Ito MTPD: Kazutaka Nishimura | HDP-CRT00026313 | Nobuaki Ito | 265:14 (Nobuaki Ito) |
| 7/18/2003 | U.S. | | | | X | | | | | | X | | | | | | | | | X | LPD: Quin Choi SDI: KC Oh THOM: Jack Brunk | SDCRT-0007173 | KC Oh | 210 |
| 7/22/2003 | MIT's Mexico factory | | | | | X | | X | | | | | | | | | | | | | HIT: Shibuya MIT: Shinagawa | HEDUS-CRT00000531 | Noboru Toyama | 183 (Noboru Toyama) |
| 7/25/2003 | | | | | X | | | | | | X | X | | | | | | | | | | SDCRT-0088720 | J.I. Lee | |
| 7/26/2003 | Santee, CA | | | | X | | | | | | X | | | | | | | | | X | | SDCRT-0007173 | KC Oh | |
| 8/5/2003 | | | | | X | | | | | | X | X | | | | | | | | | Eisaburo Himano (MTPD): Hisashi Matsuda (MTPD): Tomoyuki Kawano (MTPD): Chang Hu Kim (LPD) | SDCRT-0088726 | J.I. Lee | |

| MEETING DATE | LOCATION | CPT | LG | OEC /DW | SDI | HIT | MEC | MIT | TSB | PHS | LPD | MTPD | TCRT | BMCC | IRI | SMTL | TAT | SONY | THOM | INDIVIDUAL PARTICIPANTS | BEG BATES | DEPONENTS | DEPOSITION TESTIMONY |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 8/6/2003 | | | | | | | | | | X | | X | | | | | | X | X | MTPD: Shigkazu Shibata | MTPD-0426070 | | |
| 8/19/2003 | U.S. | | | | | | | | | | | X | | | | | | | X | THOM: J.P. Hanrahan<br>THOM: J.R. Hirschler<br>MTPD: President Shibata<br>MTPD: Iwamoto<br>MTPD: Usuda | MTPD-0576483 | | |
| 8/28/2003 | | X | | | X | | | | | | X | | | | | | | | | | CHU00660606 | C.C. Liu | C.C. Liu, Dep. Vol. 3, 478-485 |
| 9/5/2003 | Bangkok, Thailand | X | | | X | | | | | | X | X | X | | | | | | | D.E. Lee (SDI): Jae In Lee (SDI): Byung Koo Jeong (LPD): Yong Ik Jeong (LPD): Joon Young Park (LPD): Yang (CPT): Chen (CPT): Montri (TCRT): Cirichai (TCRT): Yasukawa (MTPD) | SDCRT-0088732 | J.I. Lee | |
| 9/5/2003 | Thailand | X | | | X | | | | | | X | X | X | | | | | | | SDI - Dae Eui Lee, Jae In Lee<br>LPD - Byung Koo Jeong, Yong Ik Jeong, Joon Young Park<br>Chunghwa - Mr. Yang, Mr. Chen<br>Thai CRT - Mr. Montri, Mr. Cirichai<br>MTPD - Yasukawa | SDCRT-0088732 | Dae Eui Lee | 276:12-279:24 |
| 9/5/2003 | | X | | | X | | | | | | X | X | X | | | | | | | CPT: S.J. Yang<br>CPT: Maxim Chen | CHU00030060-063 | S.J. Yang | S.J. Yang, Dep. Vol. 2, 262-263 |
| 9/19/2003 | email | | | | X | | | | | | X | X | | | | | | | | | MTPD-0183877 | Bob O'Brien | Bob O'Brien dep. 343:24-346:15; 440:7-11 |
| 10/00/2003 | Korea | | | X | X | | | | | X | X | | | | | | | X | | | SDCRT-0006510 | | |
| 10/8/2003 | n/a | | X | | X | X | | | | | X | | | | | | | | | MTPD: Muramatsu<br>MTPD: Nakamoto<br>MTPD: Iwamoto<br>MTPD: Nishiyama | MTPD-0314102 | | |
| 10/17/2003 | n/a | | | | | | | | | | X | | | | | | | | X | MTPD: Tom Fote<br>MTPD: Iwamoto<br>THOM: Alex Hepburn | MTPD-0184084 | | |
| 10/28/2003 | TASHEE, Ming Garden Restaurant | X | | | X | | | | | | X | | | | | | | | | | CHU00660626 | C.C. Liu | C.C. Liu, Dep. Vol. 3, 485-487 |
| 10/30/2003 | Pittsburgh, PA | | | | | X | | | | X | | | | | | | | | X | MEC: S. Iwamoto, Tom Fote<br>THOM: Alex Hepburn<br>LPD: Bob O'Brien | HEDUS-CRT00164095 | Thom Schmitt | 272:21 (Thom Schmitt) |
| 10/31/2003 | U.S. | | | X | X | | | | | | X | X | | | | | | X | X | MTPD: Alex Kinoshita | MTPD-0426066 | Ayumu Kinoshita 30(6)(b) | 397 |
| 10/31/2003 | USA, San Diego: Matsushita Offices | | | | | | | | | | | X | | | | | | | | MTPD: Kinoshita | MTPD-0426066 | Kinoshita | Kinoshita II at 397-98 |
| 11/6/2003 - 11/9/2003 | Irico offices in Xianyang | | | | | X | | | | | | | | | X | | | | | HIT: Satoshi Mutou<br>HIT: Watanabe Mitsuru<br>IRI: Takenaga | HDP-CRT00047354 | | |
| 11/7/2003 | Brussels, Belgium | | | | X | | | | | | X | | | | | | | X | X | THOM: Emeric Charamel<br>SDI: Helmut Meinke<br>SDI: Gabriel Kim<br>Buckbee Mears Europe: Frank Sandtmann<br>Ekranas: Michael Leipold<br>SONY: Goro Sekiya<br>Tesla Ecimex: Michal Mlka<br>Tesla Ecimex: Zdenek Stuchlik<br>LPD: Leo Mink<br>ANIE: Marcella Quattrocchi<br>EECA EDIA: Anne-Marie Leclercq | SDCRT-0088629 | | |

HIGHLY CONFIDENTIAL
EXHIBIT A

| MEETING DATE | LOCATION | CPT | LG | OEC/DW | SDI | HIT | MEC | MIT | TSB | PHS | LPD | MTPD | TCRT | BMCC | IRI | SMTL | TAT | SONY | THOM | INDIVIDUAL PARTICIPANTS | BEG BATES | DEPONENTS | DEPOSITION TESTIMONY |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 11/11/2003 | n/a | | | X | | X | | | | | X | X | | | | | | X | X | | SDCRT-0005709 | | |
| 11/12/2003 | | X | | | X | X | | | | | X | X | X | | | | | | | CPT: S.J. Yang<br>CPT: Maxim Chen | CHU00030058-059 | S.J. Yang | S.J. Yang, Dep. Vol. 2, 263-267 |
| 11/18/2003 | | | | | X | | | | | | | X | | | | | | | | MTPD: Kinoshita<br>MTPD: Kinoshita, Alex<br>SDI: Lee, Jaein<br>SDI: Kim: Woongrae<br>SDI: Hur, Woo Suk | MTPD-0141811; SDCRT-0005645 | Kinoshita | Kinoshita II at 218-28 |
| 11/21/2003 | Netherlands | | X | | X | | | | | | X | | | | | | | | X | THOM: Emeric Charamel<br>SDI: Gabriel<br>LPD: MB | SDCRT-0088635 | | |
| 11/28/2003 | | | | | X | | | | | | X | X | | | | | | | | MTPD: Kinoshita<br>SDI: Kim | MTPD-0038856 | Kinoshita<br>Nishimura | Kinoshita I at 88-99<br>Nishimura II at 191-96 |
| 12/1/2003 | | | | | X | | | | | | | X | | | | | | | | MTPD: Nishimura | MTPD-0426042 | | |
| 12/4/2003 | Paris, France | | X | | X | | | | | | X | X | | | | | | X | X | | SDCRT-0088661 | | |
| 12/4/2003 | | | | | X | | | | | | X | X | | | | | | | X | SDI: Dong Hoon Lee<br>SDI: Lak Jin Kim<br>LPD: Moon Bong Choi<br>THOM: Emeric Charamel | SDCRT-0088661 | | |
| 12/5/2003 | | X | | X | X | | | | | X | X | | | | | | | | | CPT: C.C. Liu<br>CPT: Tony Cheng<br>CPT: Alex Yeh<br>CPT: Yvonne Yuan | CHU00031214-220 | C.C. Liu | C.C. Liu, Dep. Vol. 2, 275-276 |
| 12/6/2003 | U.S. | | | | | | | X | | | | X | | | | | | | X | MTPD: Shigkazu Shibata<br>THOM: J. Hanrahan<br>THOM: Christian Lissorgues | MTPD-0026563 | | |
| 12/10/2003 | | | | | X | | | | | | | X | | | | | | | | Hun Sul Chu (SDI): Nishiyama (MTPD); Sanogawaya (MTPD) | SDCRT-0088431 | HS Chu | |
| 12/17/2003 | email | | | | X | | | | | | X | X | | | | | | | | | MTPD-00140013 | Bob O'Brien | Bob O'Brien Dep. Vol. 2.: 351:11-358:2; 440:19-441:24 |
| 12/17/2003 | U.S. | | | | | | | | | | | X | | | | | | | X | MTPD: Shigkazu Shibata<br>THOM: J. Hanrahan<br>THOM: Christian Lissorgues<br>THOM: Didier Trutt | MTPD-0043577 | | |
| 12/18/2003 | Shangri-La Hotel, Singapore | X | | | X | | | | | | | | | | | | | | | CPT: S.J. Yang<br>CPT: Maxim Chen<br>SDI: Mr. D.E. Lee | CHU00030064-065 | S.J. Yang | S.J. Yang, Dep. Vol. 2, 267-271 |
| Late 2003 | Korea | | | | X | | | | | | X | X | | | | | | | | MTPD: Nishimura, Kazutaka: Tanaka: Kawano | | Kazutaka Nishimura | |
| 2004 | | X | | | X | | | | | | X | | | | | | | | | LPD: IH Han | n/a | Jim Kang Jung | 70-71 |
| 2004 | | X | | | X | | | | | | | | | | | | | | | I.H. Song: Yvonne Yun | | I.H. Song | 245:4-19 |
| 2004 | | X | | | X | | | | | | X | | | | | | | | | I.H. Song | | I.H. Song | 305:1-307:22 |
| 2004 | LPD Taipei Office | X | | | X | | | | | | X | | | | | | | | | Alex Yeh (CPT): Yvone Yun (CPT) | SDCRT-0090312 | I.H. Song | 315:12-317:11 |

| MEETING DATE | LOCATION | CPT | LG | OEC/DW | SDI | HIT | MEC | MIT | TSB | PHS | LPD | MTPD | TCRT | BMCC | IRI | SMTL | TAT | SONY | THOM | INDIVIDUAL PARTICIPANTS | BEG BATES | DEPONENTS | DEPOSITION TESTIMONY |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2004 | | | | | X | | | | | | X | | | | | | | | | I.H. Song; Cesar Jung (LPD) | | I.H. Song | 349:11-15 |
| 2004 | | X | | | X | | | | | | | | | | | | | | | I.H. Song | SDCRT-0096624E | I.H. Song | 358:3-359:12 |
| 2004 | U.S. | | | | | | | | | | | | | | | | | | X | THOM: Christian Lissorgues | MTPD-0014992; MTPD-0573840 | | |
| 2004 | | | | | | X | | | | | X | | | | | | | | X | | HEDUS-CRT00164378 | Tom Heiser | 254:04 (Tom Heiser) |
| 2004-2005 | Yangmei Factory, Taiwan | X | | | X | | | | | | | | | | | | | | | | | | 77:20-21 |
| 2004-2005 | | | | | X | | | | | | X | | | | | | | | | | | | 78:1-2 |
| 2004-2005 | LPD Office | X | | | X | | | | | | X | | | | | | | | | | | | 78:05:00 |
| 1Q 2004 | | | | | X | | | | | | X | | | | | | | | | | SDCRT-0066803 | KC Oh | |
| 1/0/2004 | | X | | | X | | | | | | X | | | | | | | | | | CHU00660671 | C.C. Liu | C.C. Liu, Dep. Vol. 3, 487-491 |
| 1/7/2004 - 1/10/2004 | Various meetings and locations | | | | X | | | | | | X | X | | | | | | | X | Thom: Trutt, Thom: Lissorgues, Thom: J. Dumas. LPD: A, White, LPD: P. Canavan, LPD: A. Leunis, LPD: D. Ivey, LPD: R. Stafford, LPD: B. O'Brien, LPD: Q. Choi, LPD: R. Silva, LPD: H. Kashimura, LPD: W. Kim, LPD: P. Lee, SDI: J. Kim, SDI: D. Lee, SDI: K. Oh, SDI: C. Bae, SDI: C. Lee, SDI: K. Park. Orion: Yano, Itakura. TSB: Y. Kimura. | LPD-0000280 | Bob O'Brien | Bob O'Brien Dep. Vol. 1,; 246:18-251:15 |
| 1/9/2004 | Europe | | | | X | | | | | | X | | | | | | | | X | LPD: Munbong Choi THOM: Emeric Charamel SDI: Junghwan Seo SDI: Lockjin Kim | SDCRT-0090077 | | |
| 1/12/2004 | email | | | | X | | | | | | X | X | | | | | | | | | MTPD-0027781 | Bob O'Brien | Bob O'Brien Dep. Vol. 2,; 364:25-369:6; 442:19-443:2; 443:22-446:3 |
| 1/27/2004 to 1/30/2004 | Xiamen, China "Fuzhou" | X | | X | X | | X | | | | X | | | | | | | | | CPT: C.C. Liu CPT: Alex Yeh CPT: Yvonne Yuan | CHU00031227-231 | C.C. Liu | C.C. Liu, Dep. Vol. 2, 276-277 |
| 2/7/2004 | | | | | X | | | | | | | X | | | | | | | | MTPD: Kinoshita | MTPD-0042034 | Kinoshita | Kinoshita II at 302-08 |

| MEETING DATE | LOCATION | CPT | LG | OEC /DW | SDI | HIT | MEC | MIT | TSB | PHS | LPD | MTPD | TCRT | BMCC | IRI | SMTL | TAT | SONY | THOM | INDIVIDUAL PARTICIPANTS | BEG BATES | DEPONENTS | DEPOSITION TESTIMONY |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2/16/2004 | | X | | | X | | | | | | X | X | X | | | | | | | MTPD: Yasukawa<br>MTPD: Tomor<br>MTPD: Nishimura | MTPD-0423651 | Nishimura | Nishimura II at 203-15 [See also Nishimura III at 345-54] |
| 2/16/2004 | Singapore | X | | | X | | | | | | X | X | X | | | | | | | SDI:  Lee, D.E.: Park, Kevin<br>LPD:  Joon, B.K.: Park, Edmond<br>CPT:  Liu, C.C.: Yang, S.J.: Ming, Chen Shih<br>Thai-CRT:  Montri: Sirichai<br>MTPD: Yasukawa: Tomori: Nishimura | MTPD-0423641 | Kazutaka Nishimura | |
| 2/16/2004 | Singapore | X | | | X | | | | | | X | X | X | | | | | | | SDI - Dae Eui Lee, Sung Duk Park<br>LPD - Byung Goo Jeon, Joon Yong Park<br>MTPD - Yasukawa, Tomori, Nishimura<br>Chunghwa - C.C. Liu, Mr. Yang, Mr. Chen<br>Thai CRT - Mr. Montri, Mr. Sirichai | SDCRT-0090157 | Dae Eui Lee | 282:6-285:13 |
| 2/16/2004 to 2/17/2004 | | X | X | X | X | | | | | | X | X | X | | X | | | | | CPT: C.C. Liu<br>CPT: Tony Chen | CHU00030036-039 | C.C. Liu | C.C. Liu, Dep. Vol. 2, 277-279 |
| 2/19/2004 | email | | | | | | | | | X | | | | | | | | | | LPD: P. Canavan:<br>Pansonic: M. Kamoto | MTPD-0015858 | Patrick Canavan | Patrick Canavan Dep. Vol. 2., 380:6-381:6 |
| 2/23/2004 | LPD Taipei Office | X | | | X | | | | | | X | | | | | | | | | | SDCRT-0090253 | Hoon Choi | 137:10 |
| 2/26/2004 | Amsterdam, Netherlands | | | | X | | | | | | X | | | | | | | | X | LPD: Felice Albertazzi<br>LPD: Leo Mink<br>THOM: Emeric Charamel<br>SDI: Lockjin Kim | SDCRT-0090098 | | |
| 3/1/2004 | Novel, Shanghai | X | | | | | | | | | | | | | | | | | | CPT: S.J. Yang<br>CPT: Maxim Chen<br>CPT: Jeff Yue<br>CPT:Tony Cheng<br>CPT: C.C. Liu | CHU00030056 | S.J. Yang | S.J. Yang, Dep. Vol. 3, 410-414 |
| 3/2/2004 | | | | | | | | | | | | | | | | | | | | | SDCRT-0090253 | Hoon Choi | 137:10: 145:9 |
| 3/2/2004 | | X | | | X | | | | | | X | | | | | | | | | | SDCRT-0090275 | I.H. Song | 248:1-250:20 |
| 3/3/2004 | Shenzhen | X | | X | | | | | | | | | | | | | | | | CPT: S.J. Yang<br>CPT: Maxim Chen<br>Korea Orion: Mr. Kim | CHU00030051 | S.J. Yang | S.J. Yang, Dep. Vol. 2, 271-274 |
| 3/12/2004 | email | | | | X | | | | | | X | X | | | | | | | | | MTPD-0024653 | Bob O'Brien | Bob O'Brien Dep. Vol. 2.: 362:11-364:13 |
| 3/15/2004 | | X | | | X | | | | | | X | | | | | | | | | | SDCRT-0090280 | I.H. Song | 255:4-24, 256:21-258:19 |
| 3/16/2004 | Singapore | X | | | X | | | | | | X | X | X | | | | | | | | SDCRT-0090157 | | |
| 3/16/2004 | Singapore | X | | | X | | | | | | X | X | X | | | | | | | SDI - Dae Eui Lee, Sung Duk Park<br>LPD - Sung Dae Im, Joon Yong Park<br>MTPD - Yasukawa, Nishimura<br>Chunghwa - Mr. Yang, Mr. Chen<br>Thai CRT - Mr. Montri | SDCRT-0090163 | Dae Eui Lee | 286:9-289:9 |
| 3/17/2004 | Budapest NH Hotel Conference Room, Hungary | | | | X | | | | | | X | | | | | | | | X | SDI: Lak Jin Kim<br>SDI: Tae Ryong Park<br>SDI: Dr. Glowik<br>PH: Kris Mortier<br>PH: Leo Mink<br>THOM: Emeric Charamel | SDCRT-0090100 & SDCRT-0090100E: Samsung 2nd Supplemental Response p 69 | Kris Mortier | Kris Mortier Dep.Vol. 2, 353-356, 537-550 |

| MEETING DATE | LOCATION | CPT | LG | OEC/DW | SDI | HIT | MEC | MIT | TSB | PHS | LPD | MTPD | TCRT | BMCC | IRI | SMTL | TAT | SONY | THOM | INDIVIDUAL PARTICIPANTS | BEG BATES | DEPONENTS | DEPOSITION TESTIMONY |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 3/21/2004 | Singapore | X | X | | | | | | | | | | | | | | | | X | CPT: S.J. Yang | CHU00030449-457 | S.J. Yang | S.J. Yang, Dep. Vol. 2, 299-301 |
| 3/21/2004 | Singapore | X | | | X | | | | | | X | X | | | | | | | X | CPT: S.J. Yang | CHU00123358.1 | | |
| 3/22/2004 | phone call | | | | | | | | | | X | X | | | | | | | | MTPD: Tanaka | MTPD-0419572 | Nishimura | Nishimura II at 217 on |
| 3/22/2004 | phone call | | | | X | | | | | | | X | | | | | | | | MTPD: Tanaka | MTPD-0419572 | Nishimura | Nishimura II at 217 on |
| 3/31/2004 | | | | | | X | | | | | | | | | | | | | X | HIT: Heiser, Wen, Guojun, Shibuya, Toyama, Komori, Schmitt, Sakamoto | HEDUS-CRT00184595 | Noboru Toyama | 108 (Noboru Toyama) |
| 3/31/2004 | Email | | | | | X | | | | X | | | | | | | | | | HIT: Heiser, Wen, Guojun, Shibuya, Toyama, Komori, Schmitt, Sakamoto | HEDUS-CRT00184595 | Tom Heiser Noboru Toyama | 273:24 (Tom Heiser); 230 (Noboru Toyama) |
| 3/31/2004 | Korea | X | X | X | | | X | | | X | X | | | | | | | | | | CPT: C.C. Liu<br>CPT: Tony Cheng<br>CPT: Alex Yeh<br>CPT: Yvonne Yun | CHU00031240-247 | C.C. Liu | C.C. Liu, Dep. Vol. 2, 279-280 |
| 4/1/2004 | San Diego | | | | X | | | | | | | X | | | | | | | | | MTPD: Fujita, Norio; Yoshikawa; Usuta  SDI: Oh, Patrick; Kim, Ray | MTPD-0027035 | Fujita | Fujita II at 298 |
| 4/1/2004 | | X | | | X | | | | | | X | X | X | | | | | | | | MTPD: Ohmori<br>MTPD: Tomori<br>MTPD: Nishimura | MTPD-0576449 | Nishimura | Nishimura II 221-25 |
| 4/6/2004-4/7/2004 | Budapest | | | | X | | | | | | X | | | | | | | | | | LPD: Oterloo<br>LPD: Felice<br>LPD: Kris<br>SDI: D.S. Kim<br>SDI: Meinke<br>SDI: Rockow | SDCRT-00990102 & attachment | Kris Mortier | Kris Mortier Dep.Vol. 2, 374-391 |
| 4/20/2004 | Delafoil - Perrysburg, OH | | | | X | | | | | | X | | | | | | | | | X | HIT:  Tom Heiser, Tom Schmitt<br>LPD:  Pat Canavan, Bob O'Brien<br>MTPD:  Steve Lammers, Tom Fote, Steve Iwamoto<br>THOM:  Alex Hepburn | MTPD-0009514 | Tom Heiser | 222:21 (Tom Heiser) |
| 4/23/2004 | Thailand | X | | | X | | | | | | X | X | X | | | | | | | | CPT: Yan, S. J. (Assistant VP, Sales & Marketing, Taiwan): Ming, Chen Shih (Director, Malaysia)<br>LPD: Kang, II-Gyu (CPT Export Team, Korea): Park, Edmond (Marketing Asia Pacific, Korea)<br>MTPD: Ohmori (Thailand): Tomori (Malaysia): Nishimura, K. (Takatsuki)<br>SDI: Lee, D.E. (Sales, Malaysia): Park, Kevin (Marketing, Korea)<br>T-CRT: Montri (Senior Manager, Sales, Thailand): Sirichai (Manager, Sales) | MTPD-0576449 | Kazutaka Nishimura | |
| 4/23/2004 | Bangkok | X | | | X | | | | | | X | X | X | | | | | | | | | SDCRT-0090163 | | |

| MEETING DATE | LOCATION | CPT | LG | OEC/DW | SDI | HIT | MEC | MIT | TSB | PHS | LPD | MTPD | TCRT | BMCC | IRI | SMTL | TAT | SONY | THOM | INDIVIDUAL PARTICIPANTS | BEG BATES | DEPONENTS | DEPOSITION TESTIMONY |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 4/23/2004 | Bangkok | X | | | X | | | | | | X | X | X | | | | | | | SDI - Dae Eui Lee, Sung Duk Park<br>LPD - Joon Yong Park, Il Gyu Kang<br>MTPD - Omori, Tomori, Nishimura<br>Chunghwa - Mr. Yang, Mr. Chen<br>Thai CRT - Mr. Montri | SDCRT-0090167 | Dae Eui Lee | 292:11-294:7 |
| 4/26/2004 | | X | | | X | | | | | | X | | | | | | | | | | | I.H. Song | 261:2-20 |
| 4/26/2004 | SDI's San Diego Office | | | | X | | | | | | | X | | | | | | | | MTPD: Kawano: Tobinaga | MTPD-0637815 | Tsuruta | Tsuruta II at 230-34 |
| 4/28/2004 | LGE's Offices | | X | | | | | | | | X | | | | | | | | | LGE: Duk Chul Ryu<br>LPD: PKAM Group | LGE00092293 | | |
| 5/6/2004 | SDI's San Diego office | | | | X | | | | | | | X | | | | | | | | MTPD: Yoshikawa, Masakazu: Fujita, Norio<br>SDI: Kim, C.W.: Choi, H.W.: Lee, J.I.: Kim, R. | MTPD-0260906 | Norio Fujita | Fujita II at 303 |
| 5/6/2004 | LPD Taiwan Office | X | | | X | | | | | | X | | | | | | | | | | SDCRT-0090299 | Hoon Choi | 147:11 |
| 5/6/2004 | | X | | | X | | | | | | X | | | | | | | | | | | Hoon Choi | 369:9 |
| 5/12/2004 | | | | | X | | | | | | X | X | | | | | | | | | MTPD-0260262 | Norio Fujita | |
| 5/13/2004 | Czech Republic | | | | X | | | | | | X | | | | | | | X | X | SDI: Helmut Meinke:<br>LG Philips: Felice Albertazzi,<br>LG Philips: Kris Mortier:<br>Thomson: Emeric Charamel:<br>Schott Glass: Stefan Georgi,<br>Schott Glass: Peter Schreiner:<br>Ekranas: Aydin Giz,<br>Ekranas: Michael Leipold:<br>Ecimex: Michael Minka:<br>Sony: Goro Sekiya:<br>BME: Frank Sandtmann:<br>EECA EDIA: Leo Mink, and<br>EECA EDIA: Anne-Marie Leclercq | Samsung 2nd Supplemental Response p 71 | Kris Mortier | Kris Mortier Dep.Vol. 2, 537-550 |
| 5/18/2004 | Malaysia, Kuala Lumpur | X | | | X | | | | | | X | X | X | | | | | | | SDI: Lee, D. E. (Sales, Malaysia), Park, Kevin (Marketing, Korea)<br>LPD: Kang, Il-Gyu (CPT Export Team, LPD Korea), Park, Edmond (Marketing Asia Pacific, Korea)<br>CPT: Yang, S. J. (Assistant VP, Sales & Marketing, Taiwan), Chen, Shih Ming (Director, Malaysia)<br>T-CRT: Montri (Senior Manager, Sales, Thailand), Sirichai (Manager, Sales)<br>MTPD: Yasukawa (Indonesia), Tomori (Malaysia), Nishimura K. (Takatsuki) | MTPD-0497049;CHU00030530 | Yasuki Yamamoto: Kazuhiro Nishimaru: Kazutaka Nishimura | Yamamoto: 423:2-431:20; 433:24-435:18 Nishimaru: 417:24-442:18; Nishiyama II at 317-20, 323-30 Nishimura III at 417-27 Nishimura II at 226-236 Nishimura II at 318-36 |
| 5/18/2004 | | X | | | X | | | | | | X | X | X | | | | | | | CPT: S.J. Yang | CHU00030530 | S.J. Yang | S.J. Yang, Dep. Vol. 3, 355-357 |
| 5/18/2004 | | X | | | X | | | | | | X | X | X | | | | | | | | SDCRT-0090167 | | |
| 5/18/2004 | Malaysia | X | | | X | | | | | | X | X | X | | | | | | | MTPD- Yasukawa, Nishimura, Tomori<br>Chunghwa - Mr. Yang, Mr. Chen<br>Thai CRT - Montri, Sirichai<br>LPD - D. Park, D. Kang<br>SDI - Sung Duk Park, Seung Min Lee, Dae Eui Lee | SDCRT-0090174 | Dae Eui Lee | 294:13-298:21 |

| MEETING DATE | LOCATION | CPT | LG | OEC/DW | SDI | HIT | MEC | MIT | TSB | PHS | LPD | MTPD | TCRT | BMCC | IRI | SMTL | TAT | SONY | THOM | INDIVIDUAL PARTICIPANTS | BEG BATES | DEPONENTS | DEPOSITION TESTIMONY |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 5/23-24/2004 | | X | | | X | | | | | | X | | | | | | | | | | | Hoon Choi | 147:11:00 |
| 5/23-24/2004 | | X | X | | X | | | | | X | | | | | | | | | | | SDCRT-0090312 | Hoon Choi | 168:13:00 |
| 5/23-24/2004 | | X | X | | X | | | | | X | | | | | | | | | | | | Hoon Choi | 168:13:00 |
| 5/23-24/2004 | | X | | | X | | | | | | X | | | | | | | | | | SDCRT-0090299 | Hoon Choi | 147:11:00 |
| 5/24-5/26/2004 | Taiwan | X | X | X | X | | | | | X | | | | | | | | | | Sang Kyu Park (SDI) | SDCRT-0089060 | SK Park | |
| 6/2/2004 | | | | | X | | | | | | | X | | | | | | | | MTPD: Nishimura, Kazutaka | MTPD-0236375 | Shinichiro Tsuruta | 244:13-248:2 |
| 6/14/2004 | email | | | | | | | | | X | X | | | | | | | | | LPD: J. Son, LPD: P. Van Bommel, LPD: W. Vaartjes. PHS: J. Lombaerde | PHLP-CRT-001000 | Wiebo Jan Vaartjes | Wiebo Jan Vaartjes Dep. 190:4-204:14 |
| 6/18/2004 | Thailand | X | | | X | | | | | | X | X | X | | | | | | | MTPD: Nishimura, Kazutaka: Yasukawa, Kazuteru | MTPD-0493549 | Yasuki Yamamoto | 404:6-422:20 |
| 6/18/2004 | Thailand | X | | | X | | | | | | X | X | X | | | | | | | | MTPD-0493549 | Kazutaka Nishimura | |
| 6/18/2004 | | X | | | X | | | | | | X | X | X | | | | | | | SDI - Dai Eui Lee, S.K. Park Chunghwa - Yang, Chen MTPD - Yasukawa, Nishimura Thai CRT - Montri LPD - Sung Dae Im, D. Park, Joon Yong | SDCRT-0090180 | Dae Eui Lee | 299:2-301:13 |
| 6/18/2004 | Thailand | X | | | X | | | | | | X | X | X | | | | | | | | MTPD-0493549: | Yamamoto Sanogawaya Nishimura | Yamamoto III at 404-12 Sanogawaya II at 303-05 Nishimura II at 238-45 |
| 6/24/2004 | Thailand | X | | | X | | | | | | X | X | X | | | | | | | | SDCRT-0090174 | | |
| 6/28/2004 | | | | | | X | | | | | | | | | | | | | X | | HEDUS-CRT00164492 | Tom Heiser | 297:23 (Tom Heiser) |
| After June 2004 | | X | | | X | | | | | | X | X | X | | | | | | | MTPD: Yamamoto: Yasuki | | Yasuki Yamamoto | 358:5-362:1; 420:1-421:1 |
| After June 2004 | | X | | | X | | | | | | X | X | X | | | | | | | MTPD: Yamamoto: Yasuki | | Yasuki Yamamoto | 358:5-362:1 |
| 7/2/2004 | | X | | | | | | | | | | | | | | | | | | CPT: Alex Yeh | CHU00031254 | C.C. Liu | C.C. Liu, Dep. Vol. 2, 377-379 |
| 7/5/2004 | | X | | X | X | X | | | | | X | | | | X | | | X | X | | MTPD-0580871 | | |

| MEETING DATE | LOCATION | CPT | LG | OEC/DW | SDI | HIT | MEC | MIT | TSB | PHS | LPD | MTPD | TCRT | BMCC | IRI | SMTL | TAT | SONY | THOM | INDIVIDUAL PARTICIPANTS | BEG BATES | DEPONENTS | DEPOSITION TESTIMONY |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 7/7/2004 | Email | | | | X | | | | | | X | | | | | | | | | | PHLP-CRT-011458 | Kris Mortier | Kris Mortier Dep.Vol. 2, 422-424 |
| 7/14/2004 | email | | | | | | | | | | X | | | | | | | | | X | | PHLP-CRT-012615 | Wiebo Jan Vaartjes | Wiebo Jan Vaartjes Dep. 215:6-218:5 |
| 7/16/2004 | | X | | | | | | | | | | | | | | | | | | X | CPT: C.C. Liu<br>CPT: Hsiang-Kwei Chung<br>CPT: Sheng-Jen Yang | CHU00030040 | | |
| 7/22/2004 | Singapore Conrad Hotel | X | X | | X | | | | | X | | X | X | | | | | | | | CPT: Chen, Shih-Ming (Maxim): Yang, S.J.<br>LPD: Lim, S.D.: Park, Edmond<br>MTPD: Yasukawa, K.<br>SDI: Jaya<br>T-CRT: Montri: Shirlachai | MTPD-0486918 | Kazuhiro Nishimaru | 484:1-491:21 |
| 7/22/2004 | Singapore: Hotel Conrad | X | | | X | | | | | | X | X | X | | | | | | | | MTPD: Tomori<br>MTPD: K. Yasukawa<br>SDI: Mr. Jaya<br>LPD:Mr. S.D. Lim, Mr. Edmond Park<br>CPT: Shih-Ming (Maxim) Chen, Mr. S.J. Yang<br>TCRT: Mr. Montori, Mr. Shirlachai | SDCRT-0090180: MTPD-0486917: MTPD-0485511 | Nishiyama | Nishiyama III at 419-26 |
| 7/26/2004 to 7/27/2004 | Renaissance Hotel | X | | | X | | | | | | X | | | | | | | | | | | CHU00660709 | C.C. Liu | C.C. Liu, Dep. Vol. 3, 491-492 |
| 7/26-7/27/2004 | China | X | X | X | X | | | | | X | | | | | | | | | | | Sang Kyu Park (SDI) | SDCRT-0089076 | SK Park | |
| 7/26/2004 | | X | | | X | | | | | X | X | | | | | | | | | | CPT: VP C.C. Liu<br>CPT: VP Chung | CHU00031262-267 | C.C. Liu | C.C. Liu, Dep. Vol. 2, 280-281 Dep. Vol. 2, 379-382 |
| 7/28/2004 | | X | | | X | | | | | X | | | | | | | | | | | | SDCRT-0090319: SDCRT-0090233 | SK Park | |
| 8/4/2004 | email | | | | X | | | | | | X | | | | | | | | | | | PHLT-CRT-014085 | Wiebo Jan Vaartjes | Wiebo Jan Vaartjes Dep. 218:10-225:11: 232:13-235:9 |
| 8/13/2004 | email | | | | X | | | | | | X | | | | | | | | | | | MTPD-0483335 & MTPD-0483335E_Translation | Patrick Canavan | Patrick Canavan Dep. Vol. 2, 407:23-411:15 |
| 8/13/2004 and 8/16/2004 | CPT | X | | | X | | | | | | X | | | | | | | | | | CPT: C.C. Liu<br>CPT: Yvonne Yun<br>CPT: Alex Yeh | CHU00031268-269 | C.C. Liu | C.C. Liu, Dep. Vol. 2, 281-283 |
| 8/17/2004 | Japan | X | | | X | | | | | | X | | | | | | | | | | CPT: C.C. Liu | CHU00660717-727 | C.C. Liu | C.C. Liu, Dep. Vol. 2, 285-288 |
| 8/17/2004 | | | X | | | | | | | | | X | | | | | | | | | LG: P.J. Lee<br>LG: Ian Song<br>MTPD: Kazuhiro Nishimaru | MTPD-0613379 | Pil Jae Lee | 217 |
| 8/17/2004 | MTPD Thailand | | | | | | | | | | X | X | | | | | | | | | LPD: Lee, Phil J.: Song, Ian<br>MTPD: Ohmori (SM): Nishimaru | MTPD-0490549 | Kazuhiro Nishimaru | 280:1-291:7 |
| 8/17/2004 to 8/18/2004 | | X | | | X | | | | | | X | | | | | | | | | | | CHU00660717 | C.C. Liu | C.C. Liu, Dep. Vol. 3, 492-496 |
| 8/17/2004 to 8/18/2004 | Japan | X | | | X | | | | | | X | | | | | | | | | | CPT: C.C. Liu<br>CPT: Alex Yeh | CHU00031272-273 | C.C. Liu | C.C. Liu, Dep. Vol. 2, 283-285 |

| MEETING DATE | LOCATION | CPT | LG | OEC /DW | SDI | HIT | MEC | MIT | TSB | PHS | LPD | MTPD | TCRT | BMCC | IRI | SMTL | TAT | SONY | THOM | INDIVIDUAL PARTICIPANTS | BEG BATES | DEPONENTS | DEPOSITION TESTIMONY |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 8/17-8/18/2004 | Japan | X | | | X | | | | | X | | | | | | | | | | Sang Kyu Park (SDI) | SDCRT-0089091: SDCRT-0090328 | SK Park | |
| 8/17/2004 | MTPD Offices | | | | | | | | | | X | X | | | | | | | | LPD: Mr. Phil J. Lee: Mr. Ian Song  MTPD: Ohmori SM, Nishimaru | MTPD0490551 | Nishimaru | Nishimaru Ii at 288-91 |
| 8/18/2004 | | | | | | | | | | | | X | | | | | | | | | MTPD-0490549 | Nishimaru | Nishimaru II at 279-87 |
| 8/20/2004 | Belgium | | | | X | | | | | | X | | | | | | | X | X | SDI: Helmut Meinke; LG Philips: Felice Albertazzi, LG Philips: Kris Mortier: Thomson: Emeric Charamel: Schott Glass: Stefan Georgi, Schott Glass: Peter Schreiner: Ekranas: Aydin Giz, Ekranas: Michael Leipold: Tesla Ecimex: Michal Mika, Tesla Ecimex: Zdenek Stuchlich: Sony: Goro Sekiya: BME: Michael Sillmann: EECA EDIA: Leo Mink, and EECA EDIA: Anne-Marie Leclercq | Samsung 2nd Supplemental Response p 73 | Kris Mortier | Kris Mortier Dep.Vol. 2, 537-550 |
| 8/30/2004 | Email | | | | | | | | | | X | | | | | | | | | | PHLP-CRT-015346 | Kris Mortier | Kris Mortier Dep.Vol. 1, 259-265 |
| 8/30/2004 | email | | | | | | | X | | | X | | | | | | | | | MIT: R. Haarst (CRT Mkt Mgr) LPD: K. Lam | PHLP-CRT-015923 | Wiebo Jan Vaartjes: Kris Mortier | Wiebo Jan Vaartjes Dep. 225:20-232:10: Kris Mortier Dep.Vol. 2, 502-506 |
| 9/0/2004 | | X | | | X | | | | | | X | | | | | | | | | | CHU00660729 | C.C. Liu | C.C. Liu, Dep. Vol. 3, 496-497 |
| 9/3/2004 | | | | | | X | | | | | | X | | | | | | | | MTPD: Ohmori SM: Nishimaru | MTPD-0267083 | Fujita | Fujita II at 320 |
| 9/3/2004 | | | | | X | | | | | | | X | | | | | | | | MTPD:  Fujita, Norio SDI:  Kim, Ray | MTPD-0267083 | Shinichiro Tsuruta: Norio Fujita | Tsuruta:  415:8-420:2 |
| 9/4/2004 | email | X | X | X | X | X | | X | X | | | X | | | | | | X | X | | PHLP-CRT-091458 | Patrick Canavan | Patrick Canavan Dep. Vol. 1, 227:17-233:21 |
| 9/9/2004 | | | | | X | | | | | | X | X | | | | | | | X | | PHLP-CRT-017120 & attachment PHLP-CRT-017121 | Kris Mortier | Kris Mortier Dep.Vol. 2, 464-472 |
| 9/13/2004 | | | | | X | | | | | | X | X | | | | | | | | | MTPD-0483334 | Nishimura | Nishimura II at 247-51 |

| MEETING DATE | LOCATION | CPT | LG | OEC /DW | SDI | HIT | MEC | MIT | TSB | PHS | LPD | MTPD | TCRT | BMCC | IRI | SMTL | TAT | SONY | THOM | INDIVIDUAL PARTICIPANTS | BEG BATES | DEPONENTS | DEPOSITION TESTIMONY |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 9/23/2004 | Korea | X | X | | X | | | | | | X | | | | | | | | | CPT: Yvonne Yun<br>CPT: AVP Jin-Yao Yang<br>CPT: Alex Yeh | CHU00031274-277 | C.C. Liu | C.C. Liu, Dep. Vol. 2, 288-290 |
| 9/24/2004 | | X | | | | | | | | | | X | | | | | | | | MTPD: Kazutaka Nishimura<br>CPT:  Maxim Chen | MTPD-0492286 | Yasuki Yamamoto; Kazuhiro Nishimaru; Kazutaka Nishimura | Yamamoto:  182:17-195:20<br>Nishimaru:  292:1-299:21 |
| 9/27/2004 | | X | | | | | | | | | | X | | | | | | | | MTPD: Nishimura | MTPD-0492286 | Kinoshita, Nishiyama, Nishimura | Kinoshita II at 389-91, Nishiyama II at 364-66; Nishimaru II at 252, 292-302 |
| 10/1/2004 | | | | | X | | | | | | | X | | | | | | | | MTPD:  Fujita, Norio<br>SDI:  Kim, Ray | MTPD-0230970 | Shinichiro Tsuruta; Norio Fujita | Fujita II at 322-23; Tsuruta:  420:5-424:5 |
| 10/4/2004 | Email | X | | X | X | | | | | | X | X | | | | | | X | X | | PHLP-CRT-019008 | Kris Mortier | Kris Mortier Dep.Vol. 2,  449-458 |
| 10/18/2004 | Email | | | | X | | | | | | X | | | | | | | | | | PHLP-CRT-020159 & Attachment PHLP-CRT-02016 | Kris Mortier | Kris Mortier Dep.Vol. 2,  391-397 |
| 10/19/2004 | Email | | | | X | | | | | | X | | | | | | | | X | | PHLP-CRT-019930 & Attachments (PHLP-CRT-19933: -19934: -19935: -19936: -19937: -19938: -19939: -19940: -19941: -19942) | Kris Mortier | Kris Mortier Dep.Vol. 1,  224-247 |
| 10/27/2004 | email | | | | | | | | | | X | X | | | | | | | X | | PHLP-CRT-021673 | Wiebo Jan Vaartjes | Wiebo Jan Vaartjes Dep. 235:13-242:18 |
| 11/2/2004 | | X | X | | X | | | | | | X | | | | | | | | | CPT: AVP J.S. Lu<br>CPT: Mei Da-Peng<br>SDI: Mr. Jae In Lee | CHU00033227-228 | J.S. Lu | J.S. Lu, Dep. Vol. 2, 167-170 |
| 11/3/2004 | Paris, France | | | | X | | | | | X | | | | | | | | | X | LPD: MB Choi<br>LPD: PJ Lee<br>THOM: Christian Lissorgues<br>SDI: DH Lee | PHLP-CRT-022741 | | |
| 11/4/2004 | LPD Taipei Office | X | | | X | | | | | | X | | | | | | | | | | SDCRT-0090350 | Hoon Choi | 214:11 |
| 11/5/2004 | | | | | | | | | | | X | | | | | | | | | Joon Suk Kim<br>CPT: Jim Kang Jung | CHU00646035 | Jim Kang Jung | 113 |

| MEETING DATE | LOCATION | CPT | LG | OEC /DW | SDI | HIT | MEC | MIT | TSB | PHS | LPD | MTPD | TCRT | BMCC | IRI | SMTL | TAT | SONY | THOM | INDIVIDUAL PARTICIPANTS | BEG BATES | DEPONENTS | DEPOSITION TESTIMONY |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 11/5/2004 | Telephone / MTPD's Ohio factory | | | | X | X | | | | | | X | | | | | | | | HIT: Kawamura<br>MTPD: Totoku | HEDUS-CRT00028552 | Noboru Toyama | 178 (Noboru Toyama) |
| 11/9/2004 | Email | | | X | X | | | | | | X | | | | | | | | X | | PHLP-CRT-024274 & Attachments (PHLP-CRT0436734) | Kris Mortier | Kris Mortier Dep.Vol. 1, 265-268 |
| 11/11/2004 | | X | | | X | | | | | | | | | | | | | | | SDI: Hoon Choi | CHU00645177 | Jim Kang Jung | 122 |
| 11/15/2004 | Taiwan: Taipei. LPD offices | X | | | X | | | | | | X | X | | X | | | | | | CPT: Ling Yuan Yun<br>CPT: Sheng Bo Yang<br>LPD: Qinqxie Han<br>LPD: Zhonkang Zheng<br>SDI: Yinhuan Song<br>SDI: Xun Cui | CHU00578883 | Jim Kang Jung | 134 |
| 11/15/2004 | | X | | | X | | | | | | X | | | | | | | | | | n/a | Jim Kang Jung | 133 |
| 11/15/2004 | | X | | | X | | | | | | X | | | | | | | | | LPD: Gyeong Seop Han<br>LPD: Jin Gan Jeong<br>CPT: Yvone Yun<br>SDI: Hwan Song<br>SDI: Hoon Choi | SDCRT0090350 | Jim Kang Jung | 142 |
| 11/15/2004 | | X | | | X | | | | | | X | | | | | | | | | | | Hoon Choi | 214:11 |
| 11/15/2004 | LPD Taipei Office | X | | | X | | | | | | X | | | | | | | | | Gyeong Seop Han (LPD Branch Manager): Jin Gang Jeong (LPD Section Chief): Yvone Yun (CPT): Hwan Song (SDI Branch Manager): Hun Choi (SDI Section Chief) | SDCRT-0090350E | I.H. Song | 350:14-351:15 |
| 11/16/2004 | | X | | | X | | | | | | X | | | | | | | | | | SDI: Hoon Choi<br>SDI: Sam Song<br>LPD: Kenny Han<br>CPT: Mr. Yang | CHU00645156 | Jim Kang Jung | 149 |
| 11/19/2004 | email | | | | X | | | | | | X | | | | | | | | X | | PHLP-CRT-023513 | Wiebo Jan Vaartjes | Wiebo Jan Vaartjes Dep. Vol. 1, 286:8-293:2 |
| 11/19/2004 | Amsterdam, Netherlands | | | | X | | | | | | X | | | | | | | | X | SDI: Lockjin Kim<br>THOM: Emeric Charamel | SDCRT-0090144 | | |
| 11/24/2004 | | X | | | X | | | | | | X | | | | | | | | | | SDI: Hoon Choi<br>SDI: Sam Song<br>LPD: Kenny Han<br>CPT: Mr. Yang | CHU00644987<br>CHU00644988 | Jim Kang Jung | 152 |
| 11/24/2004 | | X | | | X | | | | | | X | | | | | | | | | | | Hoon Choi | 221:23 |
| 12/1/2004 | email | | | | | | | | | X | X | | | | | | | | | | PHLP-CRT-024736 | Wiebo Jan Vaartjes | Wiebo Jan Vaartjes Dep. 113:11-121:6 |
| 12/2/2004 | | X | X | | | | | | | | X | | | | | | | | | | LG: Jim Kang Jung<br>CPT: Yang Sheng-po | CHU00638344 | Jim Kang Jung | 167 |

| MEETING DATE | LOCATION | CPT | LG | OEC/DW | SDI | HIT | MEC | MIT | TSB | PHS | LPD | MTPD | TCRT | BMCC | IRI | SMTL | TAT | SONY | THOM | INDIVIDUAL PARTICIPANTS | BEG BATES | DEPONENTS | DEPOSITION TESTIMONY |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 12/2/2004 | | | | | X | | | | | | X | X | | | | | | | | | MTPD-0455847; MTPD-0521744 | Shinichiro Tsuruta | 109:12-115:6 |
| 12/6/2004 | Korea | X | | | X | | | | | X | X | | | | | | | | | CPT: Director Alex Yeh CPT: Yvonne Yun | CHU00031279-282 | C.C. Liu | C.C. Liu, Dep. Vol. 2, 290-291 |
| 12/6/2004 | | X | | | X | | | | | | X | | | | | | | | | LG: Jim Kang Jung SDI: Hoon Choi | CHU00651590 | Jim Kang Jung | 94 |
| 12/6/2004 | Email | | | X | X | | | | | | X | | | | | | | X | X | | PHLP-CRT-024999 | Kris Mortier | Kris Mortier Dep.Vol. 1, 256-259 |
| 12/6/2004 | Takatsuki | | | | | | | | | | | | | | | | | | | LPD: W. Vaartjes, LPD: K. Kortekaas, LPD: K. Mortier, LPD: N. Corsino, LPD: W. Brouwer, LPD: M. Smits, LPD: H. Kashimura. Unknown: D. Engelsen. | PHLP-CRT-027718 | Wiebo Jan Vaartjes | Wiebo Jan Vaartjes Dep. 242:22-249:24 |
| 12/21/2004 | email | | | | | | | | | | X | X | | | | | | | | | PHLP-CRT-027715 | Wiebo Jan Vaartjes | Wiebo Jan Vaartjes Dep. Vol. 2, 449:5-457:1 |
| 12/28/2004 | | X | | | X | | | | | | X | | | | | | | | | | CHU00649654 | Jim Kang Jung | Jung, 170 |
| 12/28/2004 | Singapore | X | | | X | | | | | | X | X | X | | | | | | | MTPD: Nishimura CPT: Shih-Ming (Maxim) Chen: Sheng-Jen (S.J) | MTPD-0479660 - MTPD-0479661 | Kazutaka Nishimura | Nishimura II at 252-56 |
| 12/28/2004 | | | | | | | | | | | | | | | | | | | | | | | |
| 12/29/2004 | | X | | | | | | | | | X | | | | | | | | | SDI - SK Sung | SDCRT-0066803 | | |
| 2005 | | X | | | X | | | | | | X | | | | | | | | | LPD: Jim Kang Jung CPT: KS Han | n/a | Jim Kang Jung | 70-71 |
| 2005 | Seoul, South Korea | | | | X | | | | | | X | X | | | | | | | | MTPD: Tsuruta, Shinichiro: Nishimaru, Kazuhiro | | Shinichiro Tsuruta | 25:2-37:19; 43:3-52:14 |
| 2005 | Takatsuki, Japan | | | | X | | | | | | X | X | | | | | | | | MTPD: Tsuruta, Shinichiro | | Shinichiro Tsuruta | 25:2-37:19; 42:1-12 |
| 2005 | | | | | X | | | | | | X | X | | | | | | | | MTPD: Tsuruta, Shinichiro | | Shinichiro Tsuruta | 25:2-37:19 |
| 2005 | | | | | X | | | | | | X | X | | | | | | | | MTPD: Tsuruta, Shinichiro | | Shinichiro Tsuruta | 25:2-37:19 |
| 2005 | Email | | | | X | | | | | | X | | | | | | | | X | | PHLP-CRT-009416 | Kris Mortier | Kris Mortier Dep.Vol. 2, 506-510 |

| MEETING DATE | LOCATION | CPT | LG | OEC /DW | SDI | HIT | MEC | MIT | TSB | PHS | LPD | MTPD | TCRT | BMCC | IRI | SMTL | TAT | SONY | THOM | INDIVIDUAL PARTICIPANTS | BEG BATES | DEPONENTS | DEPOSITION TESTIMONY |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1/7/2005 | Los Angeles | | | | X | | | | | | X | | | | | | | | | LPD: W. Vaartjes, LPD: N. Corsino, LPD: K. Nam Je, LPD: C. Gyu. | SDCRT 0007539E | Wiebo Jan Vaartjes | Wiebo Jan Vaartjes Dep. Vol. 1, 263:12-283:18 |
| 1/7/2005 | | | | | X | | | | | X | | | | | | | | | | Wiebo Vaartjes (LPD): Ney Corsino (LPD): Nam Je Ko (LPD): Gyu In Choi (LPD): Jae Shik Kim (SDI): Yeo Chang Yoon (SDI) | SDCRT-0007547 | SK Park | |
| 1/10/2005 | | X | | | X | | | | | | X | | | | | | | | | LG: Jim Kang Jung CPT: Mr. Yang SDI: Hoon Choi | CHU00637563 CHU00637566 | Jim Kang Jung | 216 |
| 1/12/2005 | Email | | | | X | | | | | | X | | | | | | | | X | | PHLP-CRT-023189 | Kris Mortier | Kris Mortier Dep.Vol. 2, 439-442 |
| 1/19/2005 | Taiwan: Taipei | X | | | X | | | | | | X | | | | | | | | | CPT: Mr. Yang CPT: Alex Yeh CPT: Yvonne Yun CPT: Sam Yang LPD: Simon Lee LPD: Kenny Han LPD: J.S. Kim SDI: SK Park SDI: Sam Song SDI: JH Choi | CHU00648816 CHU00648817 CHU00648818 | Jim Kang Jung | 207 |
| 1/19/2005 | | X | | | X | | | | | | X | | | | | | | | | CPT: S.P. Yang CPT: JJ Yeh CPT: LY Yun LPD: JK Jung LPD: Kenny Han SDI: Hoon Choi SDI: Sam Song | CHU00648741 | Jim Kang Jung | 232 |
| 1/20/2005 | | | | X | X | | | | | | X | | | | | | | | X | SDI: L.J. (Gabriel) Kim Thom: E. Charamel LPD: M.B. Choi | PHLP-CRT-023135 | Kris Mortier | Kris Mortier Dep.Vol. 2, 442-449 |
| 1/20/2005 | email | | | | X | | | | | | X | | | | | | | | X | | PHLP-CRT-023137 | Wiebo Jan Vaartjes | Wiebo Jan Vaartjes Dep. Vol. 1, 254:23-257:7 |
| 1/27/2005 | | | | | | X | | | | | | X | | | | | | | | HIT: Ryouji Hirai, MTPD: Muramatsu | HDP-CRT00033831 | Noboru Toyama | 170 (Noboru Toyama) |
| 1/28/2005 | n/a | | | | | | | | | | X | | | | | | | | X | THOM: Christian Lissorgues PHS: Rik Dombrecht PHS: Jan De Lombaerde | PHLP-CRT069798; PHLP-CRT069800 | | |
| 2/2/2005 | | | | | X | | | | | | | X | | | | | | | | MTPD: Yoshikawa: Fujita SDI: Jin, Sean: Kim, Ray | MTPD-0235157 | Norio Fujita | |

| MEETING DATE | LOCATION | CPT | LG | OEC/DW | SDI | HIT | MEC | MIT | TSB | PHS | LPD | MTPD | TCRT | BMCC | IRI | SMTL | TAT | SONY | THOM | INDIVIDUAL PARTICIPANTS | BEG BATES | DEPONENTS | DEPOSITION TESTIMONY |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2/2/2005 | San Diego | | | | X | | | | | | | X | | | | | | | | MTPD: Yoshikawa, Masakazu | SDI 2nd Supp Interrogatory Responses | | |
| 2/2/2005 | San Diego | | | | X | | | | | | | X | | | | | | | | MTPD: Fujita; SDI: Kim, Ray | MTPD-0235157 | Fujita | Fujita II at 326-27 |
| 2/2/2005 | email | | | | | | | | | | X | | | | | | | | | | LPD-NL00249890 | Wiebo Jan Vaartjes | Wiebo Jan Vaartjes Dep. Vol. 1, 293:3-301:7 |
| 2/4/2005 | | | | | X | | | | | | X | X | | | | | | | | MTPD: Nishimura, Kazutaka | MTPD-0258403 | Norio Fujita | |
| 2/16/2005 | | X | | | X | | | | | | X | | | | | | | | | CPT: SP Yang; CPT: JJ Yeh; LPD: JK Jung; SDI: Hoon Choi | CHU00735251 CHU00735253 | Jim Kang Jung | 195 |
| 2/16/2005 | Belgium | | | | X | | | | | | X | | | | | | | | X | SDI: Helmut Meinke, SDI: Gabriel Kim; Thomson: Emeric Charamel; Schott: Stefan Georgi; Ekranas: Michael Leipold; Tesla Ecimax: Michael Minka, Tesla Ecimax: Zdenel Stuchlich; BME: Michael Stillmann; LG Philips: Kris Mortier; Wickeder: Bruno Streb; EECA EDIA: Leo Mink, and EECA EDIA: Anne-Marie Leclercq | Samsung 2nd Supplemental Response p 77 | Kris Mortier | Kris Mortier Dep.Vol. 2, 537-550 |
| 2/18/2005 | Hong Kong | | | | | | | | | | X | | | | | | | | X | PHS: A. Huijser, PHS: Y.S. Kwon, PHS: Y.B. Na, PHS: H. Bolhaar, PHS: M. McHugh. LPD: J.I. Son, LPD: P. Van Bommel, LPD: W. Vaartjes and LPD: D.S. Moon. | LPD-NL00228337 | Wiebo Jan Vaartjes | Wiebo Jan Vaartjes Dep. 82:5-94:8 |
| 2/22/2005-2/25/2005 | Malaysia | X | | | X | | | | | X | | | | | | | | | | Sang Kyu Park (SDI) | SDCRT-0091742 | SK Park | |
| 2/24/2005 | Palm Garden Golf Club, Marriott Hotel, Goongjun | X | | | X | | | | | | X | | | | | | | | | | CHU00647932-940 | C.C. Liu | C.C. Liu, Dep. Vol. 3, 497-500 |
| 2/25/2005-2/26/2005 | | | | | X | | | | | | X | X | | | | | | | | | CHU00030499 & CHU00030499.01E | Patrick Canavan | Patrick Canavan Dep. Vol. 1, 340:25-346:18 |

| MEETING DATE | LOCATION | CPT | LG | OEC /DW | SDI | HIT | MEC | MIT | TSB | PHS | LPD | MTPD | TCRT | BMCC | IRI | SMTL | TAT | SONY | THOM | INDIVIDUAL PARTICIPANTS | BEG BATES | DEPONENTS | DEPOSITION TESTIMONY |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2/25/2005 | | X | | | X | | | | | | X | X | X | | | | | | | MTPD - Yasukawa, Tmori, Ohmori Chunghwa - Yang, Chen Thai CRT - Montri, Sirichai LPD - K Lim SDI - Dae Eui Lee, S.K. Park | SDCRT-0091351 | Dae Eui Lee | 299:22-304:1 |
| 3/2/2005 | Malaysia | X | | | X | | | | | | X | | | | | | | | | CPT: VP C.C. Liu CPT: Yvonne Yuan | CHU00608095-105 | C.C. Liu | C.C. Liu, Dep. Vol. 2, 291-292 |
| 3/7/2005 | Email | | | | | | | | | | X | | | | | | | | | | PHLP-CRT-031189 | Kris Mortier | Kris Mortier Dep.Vol. 2, 589-598 |
| 3/15/2005 | | | | X | X | | | | | | X | X | | | | | | | X | | SDCRT-0002998 | | |
| 3/17/2005 | Email | | | | | | | | | | X | | | | | | | | X | | PHLP-CRT-031643 & Attachment PHLP-CRT-031644 | Kris Mortier | Kris Mortier Dep.Vol. 2, 472-477 |
| 3/22/2005 | Amsterdam, Netherlands | | | | X | | | | | | X | | | | | | | | X | | SDCRT-0002984 | | |
| 3/29/2005 | | X | | | X | | | | | | X | | | | | | | | | | SDCRT-0091616; ESDCRT-0091616 | I.H. Song: Choi | Song: 647, 647E: 359:14-18, 360:3-361:3: Choi: 369:20 |
| 3/29/2005 3/30/2005 | Taiwan: Taoyuan, Chinatrust Landmark Hotel | X | | | X | | | | | | X | | | | | | | | | CPT: Ling-Yuan Yun CPT: Ling-Yun Cheng CPT: Chih-Chun Liu CPT: Mr. Chiu LPD: Cesar Jung SDI: Hoon Choi | CHU00363404 | Jim Kang Jung | 221 |
| 3/29-30/2005 | | X | | | X | | | | | | X | | | | | | | | | | SDCRT-0091616 | Hoon Choi | 252:25:00 |
| 4/00/2005 | | | | | X | | | | | | X | | | | | | | | | Seong Shik Kim (SDI): | SDCRT-0006868 | KC Oh | |
| 4/5/2005 | Email | | | | X | | | | | | X | | | | | | | | X | | PHLP-CRT-027540 | Kris Mortier | Kris Mortier Dep.Vol. 2, 424-428 |
| 4/11/2005 | | | | | X | | | | | | | X | | | | | | | | Hun Sul Chu (SDI): Yamamoto (MTPD) | SDCRT-0007257 | HS Chu | |
| 4/12/2005 | | | | | | | | | | | | | | | | | | | | | SDCRT-0091628 | Hoon Choi | 259:19 |
| 4/21/2005 | | | | | X | | | | | | X | | | | | | | | | | PHLP-CRT-028048 | Kris Mortier | Kris Mortier Dep.Vol. 2, atpp. 477-484 |
| 4/29/2005 | Indonesia | X | | | X | | | | | | X | X | X | | | | | | | Sung Dae Im (LPD): Joon Yong Park (LPD): Yasukawa (MTPD): Nishimura (MTPD): Yang (CPT): Chen (CPT): Montri (Thai CRT): Shirichai (Thai CRT): Dae Oi Lee (SDI): Sung Duk Park (SDI) | SDCRT-0091364 | KC Oh | |

| MEETING DATE | LOCATION | CPT | LG | OEC /DW | SDI | HIT | MEC | MIT | TSB | PHS | LPD | MTPD | TCRT | BMCC | IRI | SMTL | TAT | SONY | THOM | INDIVIDUAL PARTICIPANTS | BEG BATES | DEPONENTS | DEPOSITION TESTIMONY |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 4/29/2005 to 4/30/2005 | | X | | | | | | | | | X | X | X | | | | | | | CPT: S.J. Yang | CHU00030495 | S.J. Yang | S.J. Yang, Dep. Vol. 3, 357-359 |
| 5/00/2005 | Korea | | | | X | | | | | | X | X | | | | | | | | MTPD: Nishimaru, Kazuhiro SDI: Park, Kevin LPD: Park, Edmond | | Kazuhiro Nishimaru | 101:23-109:23 |
| 5/6/2005 | Email | | | | X | | | | | | X | | | | | | | | X | | PHLP-CRT-033503 & Attachment | Kris Mortier | Kris Mortier Dep.Vol. 1, 285-289 |
| 5/12/2005 | Email | | | | X | | | | | | X | X | | | | | | | X | X | | PHLP-CRT-10067 | Kris Mortier | Kris Mortier Dep.Vol. 1, 276-285 |
| 5/25/2005 | | X | | | X | | | | | | X | | | | | | | | | | | SDCRT-009 1643 | SK Park | |
| 5/26/2005 | | | | | | X | | | | | | X | | | | | | | | | MTPD: Iwamota, Murumatsu | MTPD-0479804 | Murumatsa | Murumatsa at |
| 5/30/2005 | | X | | | X | | | | | | X | | | | | | | | | | CPT: J.S. Lu | CHU00607732-735 | J.S. Lu | J.S. Lu, Dep. Vol. 2, 219-221 |
| 5/31/2005 | U.S. (California) | | | | X | | | | | | | X | | | | | | | | | MTPD: Fujita, Norio SDI: Kim, Ray | MTPD-0479837 | Shinichiro Tsuruta; Norio Fujita | Tsuruta: 208:7-221:2; Fujita II at 336-38 |
| 6/3/2005 | | | | | | X | | | | | | | | | | | | | | | HIT: Isao Yoshimi | HDP-CRT00034133 | | |
| 6/9/2005 | Malaysia | X | | | X | | | | | | X | X | X | | | | | | | | MTPD: Yamamota, Yasuki | MTPD-0517734 | Yamamoto | Yamamoto III at 367-77 |
| 6/9/2005 | Malaysia | X | | | X | | | | | | X | X | X | | | | | | | | | MTPD-0517734 | Yasuki Yamamoto; Shinichiro Tsuruta | Yamamoto: 367:10-377:22 Tsuruta: 406:18-409:1 |
| 6/9/2005 | | X | | | X | | | | | | X | X | X | | | | | | | | SDI - S.K. Park, Dae Eui Lee MTPD - Yasukawa, Tommori, Nishimura, Yamamoto Thai CRT - Montri LPD - Edmond Park Chunghwa - Yang Chen, Jimmy Chen | SDCRT-0091377 | Dae Eui Lee | 304:16-307:5 |
| 6/9/2005-6/10/2005 | Kuala Lumpur | | | | | | | | | | | | | | | | | | | | MTPD: Yasukawa: Tomori: Nishimura: Yamamoto SDI: Lee, D.E.: Park, Kevin LPD: Lim: Park, Edmond CPT: Yang, S.J.: Chen, S.M. Thai-CRT: Damri: Kanet: Montri: Sirichai: Pangsun | MTPD-0517540 | Yasuki Yamamoto | 362:9-367:8 |
| 6/13/2005 | | X | | | X | | | | | | X | | | | | | | | | | CPT: S.P. Yang CPT: JJ Yeh CPT: LY Yun LPD: J.K. Jung LPD: Kenny Han SDI: Hoon Choi | CHU00646730 CHU00646732 | Jim Kang Jung | 224 |
| 6/13/2005 | Email | | | | | | | | | | X | | | | | | | | | | | PNV0007136 & Attachment PNV0007138 | Kris Mortier | Kris Mortier Dep.Vol. 1, 300-306 |

| MEETING DATE | LOCATION | CPT | LG | OEC /DW | SDI | HIT | MEC | MIT | TSB | PHS | LPD | MTPD | TCRT | BMCC | IRI | SMTL | TAT | SONY | THOM | INDIVIDUAL PARTICIPANTS | BEG BATES | DEPONENTS | DEPOSITION TESTIMONY |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 6/13/2005 | | | | | X | | | | | | X | | | | | | | X | X | EECA: Anne-Marie Leclerq    EDIA: Leo Mink  LPD: Felice Albertazzi  THOM: Emeric Charamel  Sony: Goro Sekiya  Sony: Tetsuro Shibasaki  SDI: Helmut Meinke | PHLP-CRT-037126 & Attachments | Kris Mortier | Kris Mortier Dep.Vol. 2, 428-433 |
| 6/17/2005 | Email | | | | | | | | | | X | | | | | | | | | | PHLP-CRT-029020 | Kris Mortier | Kris Mortier Dep.Vol. 1, 292-300 |
| 6/19/2005 | email | | | | | | | | | | | | | | | | | | | LPD: J. Son and  LPD: LPD Team  PHS: M. McHugh and  PHS: PCE team. | PHLP-CRT-064261 | Wiebo Jan Vaartjes | Wiebo Jan Vaartjes Dep. 183:1-189:24 |
| 6/20/2005 | China | | | | | X | | | | | | | | | | | | | X | HIT: Tom Heiser  HIT: Hirai Ryouji  HIT: Yang Ziming  Meachael Bougia | HEDUS-CRT00161054 | | |
| 6/21/2005 | Taiwan | X | X | X | X | | | | | X | | | | | | | | | | J.Y. Youn | | J.Y. Youn | 51:18 |
| 6/22/2005 | Email | | | | X | | | | | | X | | | | | | | | | | PHLP-CRT-06200 & attachment PHLP-CRT-036202 | Kris Mortier | Kris Mortier Dep.Vol. 2, 397- |
| 6/22/2005 | Taiwan | X | X | X | X | | | | | X | | | | | | | | | | J.Y. Youn | | J.Y. Youn | 51:22 |
| 6/23/2005 | email | | | | X | | | | | | X | | | | | | | | X | | PHLP-CRT-038073 | Wiebo Jan Vaartjes | Wiebo Jan Vaartjes Dep. Vol. 2, 448:20-492:11 |
| 6/23/2005 | | X | X | X | X | | | | | X | | | X | | | | | | | | CHU00660383 | C.C. Liu | C.C. Liu, Dep. Vol. 3, 461-465 |
| 6/27/2005 | | X | | X | | | | | | X | | | | | | | | | | | CHU00125895 | J.S. Lu | J.S. Lu, Dep. Vol. 2, 216-217 |
| 6/27/2005 | | X | | | | | | | | | | | | | | | | | | J.S. Lu | CHU00125849-858 | J.S. Lu | |
| 6/28/2005 | Taiwan | X | | | X | | | | | | X | | | | | | | | | I.H. Song: SK Park | | I.H. Song | 368:13-369:13 |
| 6/29/2005 | Email | | | | X | | | | | | X | X | | | | | | | X | X | | PHLP-CRT-035894 & PPT Attachment | Kris Mortier | Kris Mortier Dep.Vol. 1, 306-318 |

| MEETING DATE | LOCATION | CPT | LG | OEC /DW | SDI | HIT | MEC | MIT | TSB | PHS | LPD | MTPD | TCRT | BMCC | IRI | SMTL | TAT | SONY | THOM | INDIVIDUAL PARTICIPANTS | BEG BATES | DEPONENTS | DEPOSITION TESTIMONY |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 6/30/2005 | | | | | X | | | | | | X | X | | | | | | | | MTPD: Yamamoto | MTPD-0479738; MTPD-0479739 | Yamamoto | Yamamoto III at 377-91 |
| 7/1/2005 | | X | | X | X | X | X | X | | | X | | X | | | | | X | X | | CHU00125257 | | |
| 7/4/2005 | | X | | | X | | | | | | X | | | | | | | | | | SDCRT-0091656E | I.H. Song | 367:3-24 |
| 7/4/2005 | n/a | | | | | | | | | X | | | | | | | | X | X | PHS: Rik Dombrecht<br>PHS: Jan De Lombaerde | PHLP-CRT-062325; PHLP-CRT-062493 | | |
| 7/11/2005 | Amsterdam | | X | | | | | | | | X | | | | | | | | | PHS: A. Huijser,<br>PHS: Y.S. Kwon,<br>PHS: M. McHugh,<br>PHS: Y.B. Na and<br>PHS: H. Olde Bolhaar.<br>LPD: J.I. Son,<br>LPD: P. vanBommel,<br>LPD: W. Vaartjes,<br>LPD: S.D. Han and<br>LPD: D.S. Moon. | LPD-NL00263838 | Wiebo Jan Vaartjes | Wiebo Jan Vaartjes Dep. 94:14-100:14 |
| 7/12/2005 | | | | | X | | | | | | X | | | | | | | | | | LPD NL00214835 | Wiebo Jan Vaartjes | Wiebo Jan Vaartjes Dep. Vol. 1, 301:9-306:5 |
| 7/19/2005 | | | | | | | | | | | X | X | | | | | | | | MTPD: Tsuruta, Shinichiro<br>LPD: Kang | MTPD-0403729 | Shinichiro Tsuruta | 431:12-436:3 |
| 7/22/2005 | | X | | | X | | | | | | X | | | | | | | | | | SDCRT-0091668 | I.H. Song | 364:20-367:1 |
| 8/00/2005 | Thailand | | | | X | | | | | | X | X | | | | | | | | MTPD: Nishimaru, Kazuhiro: Yamamoto, Yasuki<br>SDI: Park, Kevin<br>LPD: Park, Edmond | | Kazuhiro Nishimaru | 101:23-102:3: 137:1-143:5 |
| 8/00/2005 | Bangkok, Thailand | X | | | X | | | | | | X | X | X | | | | | | | | MTPD: Nishimaru, Kazuhiro: Yamamoto, Yasuki: Tomori, Yasukawa<br>Thai-CRT: Montri<br>LPD: Park, Edmond<br>SDI: Park, Kevin | | Kazuhiro Nishimaru | 145:15-148:24: 213:6-215:20 |
| 8/1/2005 | Thailand | X | | | X | | | | | | X | X | X | | | | | | | | MTPD: Nishimaru | MTPD-0400553 | Nishimaru | Nishimaru II at 332-37 |

| MEETING DATE | LOCATION | CPT | LG | OEC/DW | SDI | HIT | MEC | MIT | TSB | PHS | LPD | MTPD | TCRT | BMCC | IRI | SMTL | TAT | SONY | THOM | INDIVIDUAL PARTICIPANTS | BEG BATES | DEPONENTS | DEPOSITION TESTIMONY |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 8/3/2005 | n/a | | | | | | | | | | X | | | | | | | | | X | LPD: Felice Albertazzi<br>LPD: MB Choi<br>THOM: Christian Lissorgues | PHLP-CRT-037654: PHLP-CRT-037940 | | |
| 8/5/2005 | | X | | | X | | | | | | X | X | X | | | | | | | | | MTPD-0400553 | Kazuhiro Nishimaru | 332:9-341:4 |
| 8/18/2005 | U.S. (California) | | | | X | | | | | | | X | | | | | | | | | MTPD: Fujita, Norio<br>SDI: Kim, Ray | MTPD-0303225 | Shinichiro Tsuruta: Norio Fujita | Tsuruta: 235:15-244:9 |
| 8/18/2005 | phone call | | | | X | | | | | | | X | | | | | | | | | MTPD: Fujita; SDI: Kim, Ray | MTPD-0303225 | Fujita, Tsuruta | Fujita III at 353-55, Tsuruta II at 235-39 |
| 8/19/2005 | | X | | | X | | | | | | X | X | X | | | | | | | | | MTPD-0518803 | | |
| 8/31/2005 | email | | | | X | | | | | | X | | | | | | | | | | | PHLP-CRT-007921 | Wiebo Jan Vaartjes | Wiebo Jan Vaartjes Dep. Vol. 1, 308:12-313:15 |
| 9/00/2005 | | X | | | X | | | | | X | | | | | | | | | | | | SDCRT-0091687 | J.I. Lee | |
| 9/3/2005 | | | | | X | | | | | | X | | | | | | | | | | | SDCRT-0007609 | KC Oh | |
| 9/3/2005 | China | | | | X | | | | | | X | | | | | | | | | | SDI - SK Sung; LPD - Yang | SDI rog responses | SK Sung | 148:4-149:15 |
| 9/5/2005 | | X | | | X | | | | | | X | X | X | | | | | | | | Thai-CRT: Mahaplerkpong, Montri: Rujirat, M., K. Pongsun, Sirichai, S.<br>MTPD: Yamamoto, Yasuki: Nishimaru, Kazuhiro: Nishimura, Kazutaka; Omori, Masaru: Tomori, Yasuaki<br>CPT: Yang, S.J.<br>LPD: Lim S.D.: Edmond<br>SDI: Lee, D.E.: Park, Kevin | MTPD-0622464 | Kazuhiro Nishimaru | 314:24-318:7 |
| 9/9/2005 | email | | | | X | | | | | | X | | | | | | | | | | | PHLP-CRT-008353 | Wiebo Jan Vaartjes | Wiebo Jan Vaartjes Dep. Vol. 2, 405:1-410:15 |
| 9/20/2005 | U.S. | | | | X | | | | | | | | | | | | | | | X | SDI: K.C. Oh<br>THOM: Alonso Pando<br>THOM: Li Yuguo<br>THOM: ES Shuy<br>THOM: Michael Bourgerie | SDCRT-0016638 | | |
| 9/21/2005 | email | | | | X | | | | | | X | | | | | | | | | | | PHLP-CRT-010256 | Wiebo Jan Vaartjes | Wiebo Jan Vaartjes Dep. 127:16-152:1: 284:25-291:2 |

| MEETING DATE | LOCATION | CPT | LG | OEC/DW | SDI | HIT | MEC | MIT | TSB | PHS | LPD | MTPD | TCRT | BMCC | IRI | SMTL | TAT | SONY | THOM | INDIVIDUAL PARTICIPANTS | BEG BATES | DEPONENTS | DEPOSITION TESTIMONY |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 9/22/2005 | Jakarta | X | | | X | | | | | | X | X | X | | | | | | | MTPD: Yasakawa, Chen, Hwang-Yun (Henry)<br>TCRT: Chen, Mu-Lin (Jimmy) | MTPD-0479726 | | |
| 9/28/2005 - 9/29/2005 | | X | | | X | | | | | | X | | | | | | | | | CPT: LY Yun<br>CPT: JS Kim<br>LPD: Simon Lee<br>LPD: JK Jung<br>LPD: Kenny Han<br>SDI: John Ha | CHU00014223 | Jim Kang Jung | 241 |
| 9/29/2005 | | | | | X | | | | | | X | X | | | | | | | | MTPD: Tanaka | MTPD-0479721 | Nishiyama | Nishiyama II at 291-300 |
| 9/29/2005 | email | | | | X | | | | | | X | | | | | | | | | | PHLP-CRT-038897 | Wiebo Jan Vaartjes | Wiebo Jan Vaartjes Dep. Vol. 1, 313:16-316:10 |
| 10/21/2005 | Taiwan | X | | | X | | | | | | X | X | X | | | | | | | | MTPD-0479728 | Kazuhiro Nishimaru | 318:12-326:6 |
| 10/21/2005 | Taiwan | X | | | X | | | | | | X | X | X | | | | | | | MTPD: Nishiyama, Nishimaru<br>MTPD: Mr. Yasukawa<br>MTPD: Mr. Tomori<br>MTPD: Mr. Nishimura<br>MTPD: Mr. Yamamoto<br>MTPD: Mr. Omori<br>SDI: Mr. D.E. Lee<br>SDI:  Mr. Kevin Park<br>LG: Mr. Lim<br>LG: Mr. Edmond Park<br>LG: Mr. Ian Song<br>CPT: Mr. S.J. Yang<br>CPT:  Mr. Jimmy Chen<br>T-CRT: Mr. Montri<br>T-CRT: Mr. Sirichai<br>T-CRT: Mr. Pongsun | MTPD-0479728 | Nishiyama, Nishimaru | Nishiyama II at 367-69, Nishimaru II at 318-26 |
| 10/25/2005 | email | | | | X | | | | | | X | | | | | | | | | | PHLP-CRT-039666 | Wiebo Jan Vaartjes | Wiebo Jan Vaartjes Dep. Vol. 2, 501:9-505:2 |
| 11/00/2005 | | | | | X | | | | | | X | X | | | | | | | | MTPD:  Nishimaru, Kazuhiro<br>SDI:  Park, Kevin<br>LPD:  Park, Edmond | | Kazuhiro Nishimaru | 101:23-102:3; 216:8-235:13 |
| 11/1/2005 | LPD | | | | X | | | | | | X | X | | | | | | | | MTPD: Nishimaru | | Nishimaru | Nishimaru II at 216-31 |
| 11/2/2005 | Taipei | X | | | X | | | | | | X | | | | | | | | | CPT: J.S. Lu<br>CPT: Lin<br>LPD-Taipei President Han<br>SDI-Taipei President Song | CHU00014218 | J.S. Lu | J.S. Lu, Dep. Vol. 2, 206-209 |
| 11/21/2005 | | X | X | | X | | | | | | X | X | | | | | | | | CPT: J.S. Lu<br>SDI: Mr. S.K. Park<br>SDI: Mr. Sam Song<br>LPD: Mr. S.K. Lee<br>LPD: Mr. Hang | CHU00014227-229 | J.S. Lu | J.S. Lu, Dep. Vol. 2, 242-247 |
| 11/30/2005 | U.S. (California) | | | | X | | | | | | | X | | | | | | | | MTPD: Fujita, Norio<br>SDI:  Kim, Ray | MTPD-0291761 | Yasuki Yamamoto; Norio Fujita | Yamamoto:  478:6-481:19 |
| 12/1/2005 | | | | | X | | | | | | X | X | | | | | | | | MTPD:  Tsuruta, Shinichiro | MTPD-0297131 | Norio Fujita | |
| 12/2/2005 | | | | | X | | | | | | | X | | | | | | | | MTPD: Fujita, Shibata<br>SDI: Kim, Ray | MTPD-0291761 | Yamamoto, Fujita | Yamamoto III at 478-81, Fujita III at 359-63 |

| MEETING DATE | LOCATION | CPT | LG | OEC/DW | SDI | HIT | MEC | MIT | TSB | PHS | LPD | MTPD | TCRT | BMCC | IRI | SMTL | TAT | SONY | THOM | INDIVIDUAL PARTICIPANTS | BEG BATES | DEPONENTS | DEPOSITION TESTIMONY |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 12/12/2005 | Korea | | | | X | | | | | | X | X | | | | | | | X | MTPD: Yamamoto, Yasuki: Kawano, Tomoyuki: Tanaka, Yasuo | MTPD-0410018: MTPD-0410020 | Yasuki Yamamoto | 392:16-404:5, 392, 399 |
| 12/14/2005 | email | | | | X | | | | | | X | | | | | | | | | | PHLP-CRT-005669 | Wiebo Jan Vaartjes | Wiebo Jan Vaartjes Dep. Vol. 1, 316:12-312:20 |
| 12/15/2005 | Korea | | | | X | | | | | | X | X | | | | | | | | MTPD: Yamamoto, Tsuruta, Fujita | MTPD-0410018: MTPD-0410020: MTPD-0521744: TSB-CRT-00041620 | Yamamoto, Fujita | Yamamoto III at 392-404, Fujita III at 364-70 |
| 12/20/2005 | Taoyuan | X | | | X | | | | | | X | | | | | | | | | | CPT: J.S. Lu | CHU00014232 | J.S. Lu | J.S. Lu, Dep. Vol. 2, 217-219 |
| 12/20/2005-12/23/2005 | Taiwan | X | X | X | X | | | | | X | | | | | | | | | | | Sang Kyu Park (SDI) | SDCRT-0091852 | SK Park | |
| Late 2005 | | X | X | | X | | | | | | | | | | | | | | | Jae In Lee (SDI) | SDC RT-009 1692 | J.I. Lee | |
| 3/00/2006 | Singapore | | | | X | | | | | | X | X | | | | | | | | MTPD: Nishimaru, Kazuhiro LPD: Park, Edmond | | Kazuhiro Nishimaru | 101:23-102:3: 243:9-247:7 |
| 3/00/2006 | Singapore | X | | | X | | | | | | X | X | X | | | | | | | MTPD: Nishimaru, Kazuhiro: Tomori: Yasukawa Thai-CRT: Montri | | Kazuhiro Nishimaru | 238:11-243:8 |
| 3/1/2006 | | | | | X | | | | | | X | X | | | | | | | | MTPD: Nishimaru | | Nishimaru | Nishimaru II at 243-48 |
| 3/1/2006 | | | | | X | | | | | | | X | | | | | | | | | MTPD-0504767: MTPD-0504768 | Tobinaga, Kinoshita | Tobinaga I at 100-01, Kinoshita I at 169-81 |
| 3/9/2006 | Singapore Marriott | X | | | X | | | | | | X | X | X | | | | | | | CPT: Yang: Jimmy LPD: Lim, S.D. SDI: Jaya Thai-CRT: Montri MTPD: Yasukawa: Nishimaru: Tomori | MTPD-0479732: CHU00030458 | Shinichiro Tsuruta | 276:4-297:21 |
| 3/10/2006 | Singapore | X | | | X | | | | | | X | X | X | | | | | | | MTPD: Nishimaru,Yakazowa | MTPD-0400555 | Nishiyama, Nishimaru | Nishiyama III at 452-58, Nishimaru II at 239-43 |
| 3/13/2006 | | X | | | X | | | | | | X | | | | | | | | | | SDCRT-0091715E | I.H. Song | 362:19-364:9 |
| 3/14/2006 | | | | | X | | | | | | X | | | | | | | | | | CHU00014215E & CHU00014215 | Wiebo Jan Vaartjes | Wiebo Jan Vaartjes Dep. Vol. 1, 321:22-330:7 |

| MEETING DATE | LOCATION | CPT | LG | OEC/DW | SDI | HIT | MEC | MIT | TSB | PHS | LPD | MTPD | TCRT | BMCC | IRI | SMTL | TAT | SONY | THOM | INDIVIDUAL PARTICIPANTS | BEG BATES | DEPONENTS | DEPOSITION TESTIMONY |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 3/22/2006 | n/a | | | | X | | | | | | | | | | | | | | X | SDI: Woongrae Kim<br>SDI: Mr. Seong<br>THOM: Jack Brunk | SDCRT-0007240 | | |
| 3/31/2006 | n/a | X | | | X | | | | | | X | X | | | X | X | | | X | MTPD: Tsuruta Shinichiro | MTPD-0479599 | | |
| 4/26/2006 | | | | | X | | | | | | | X | | | | | | | | Hun Sul Chu (SDI): Sanogawaya (MTPD) | SDCRT-0007261 | HS Chu | |
| 5/19/2006 | n/a | X | | X | X | | | | | | X | X | | | X | X | | | | MTPD: Tsuruta Shinichiro | MTPD-0468623 | Hirokazu Nishiyama 30(b)(6) 124: Nishiyama 125, 232, 243, 265: Nishiyama: Tatsuo Tobinaga 30(b)(6) | Nishiyama 30(b)(6) 124: Nishiyama 125, 232, 243, 265: Tobinaga 30(b)(6) 125, 235 |
| 6/00/2006 | | | X | | X | | | | | X | | X | | | | | | | X | | SDCRT-0005949 | KC Oh | |
| 6/00/2006 | Osaka, Japan | | | | X | | | | | | | X | X | | | | | | | | MTPD:  Nishimaru, Kazuhiro<br>LPD:  Park, Edmond<br>SDI:  Park, Kevin | | Kazuhiro Nishimaru | 101:23-102:3: 250:7-251:17 |
| 6/1/2006 | | | | | X | | | | | | | X | X | | | | | | | | | | Nishimaru | Nishimaru II at 329-31 |
| 6/1/2006 | Osaka | | | | X | | | | | | | X | X | | | | | | | | | MTPD-047968l | Nishimaru | Nishimaru II at 341-47 |
| 6/5/2006 | | | | | X | | | | | | | X | X | | | | | | | X | MTPD: Tsuruta Shinichiro<br>MTPD: Komori<br>MTPD: Nishimura | MTPD-0479681 | Shinichiro Tsuruta: Kazuhiro Nishimaru | Tsuruta 62, 80, 96: Nishimaru 341 |
| 6/12/2006 | | | | | | | | | | | | X | X | | | | | | | | MTPD: Tsuruta<br>LPD: Park, Edmond (SBI Manager, Strategy Business intelligence)<br>LPD: Qian, Philip (Assistant Manager)<br>SDI: Lee, Mokyung (Assistant Manager, Marketing Team)<br>MTPD: Ueda, TL<br>MTPD: Nishimaru, SA<br>MTPD: Kitamura, SJ<br>MTPD: Komori SJ, | MTPD-0094874 | Iwamoto, Shinichi | |
| 6/19/2006 | | | | | X | | | | | | | X | X | | | | | | | | LPD: Edmund Park<br>LDP: Philip Qian<br>SDI: Mokyung Lee<br>MTPD: Ueda TL<br>MTPD: Nishimaru SA<br>MTPD: Kitamura SJ<br>MTPD: Komori SJ | MTPD-0479668, MTPD-0479669, MTPD-0479670 | | |
| 6/19/2006 | | | | | X | | | | | | | X | X | | | | | | | | LPD: Park, Edmond: Qian, Philip<br>SDI: Lee, Bokyung<br>MTPD: Ueda: Nishimaru: Kitamura: Kobayashi: Tsuruta | MTPD-0094874 | Kazuhiro Nishimaru: Shinichiro Tsuruta | Nishimaru: 326:20-331:20 Tsuruta: 399:10-405:23 |
| 6/19/2006 | | X | | X | X | X | | | | | | X | X | | | X | X | | | X | LPD: Edmond Park<br>LPD: Philip Qian<br>SDI: Bokyulg Lee<br>MTPD: TL Ueda<br>MTPD: Sa Nishimaru<br>MTPD: SJ Kitamura<br>MTPD: SJ Komoro<br>MTPD: Tsuruta | MTPD-0479670 | | |

| MEETING DATE | LOCATION | CPT | LG | OEC /DW | SDI | HIT | MEC | MIT | TSB | PHS | LPD | MTPD | TCRT | BMCC | IRI | SMTL | TAT | SONY | THOM | INDIVIDUAL PARTICIPANTS | BEG BATES | DEPONENTS | DEPOSITION TESTIMONY |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 7/6/2006 | China | | | | X | | | | | | X | | | | | | | | | SDI - SK Sung: LPD - Choi | SDI rog responses | SK Sung | 149:25-150:10 |
| 7/7/2006 | | | | | X | | | | | | | X | | | | | | | | Hun Sul Chu (SDI): Nishimura (MTPD) | SDCRT-0091901 | HS Chu | |
| 7/21/2006 | | | | | X | | | | | | X | X | | | | | | | X | SDI: Sa Woon K / SDI: Mi Kim S / SDI: Kyu Seok Park D. / THOM: Mr. Xin Feng | SDCRT-0091871 | | |
| 9/5/2006 | | X | | | X | | | | | | X | X | X | | | | | | | MTPD: Yasukawa, Kinoshita | MTPD-0479714: CHU00030449: PHLP-CRT-089987: MTPD-0533137 | Nishiyama, Sanogawaya | Nishiyama III at 397-403, Sanogawaya II at 297-301 |
| 9/5/2006 9/6/2006 | Hotel Equatorial, Kuala Lampur, Malaysia | X | | X | X | | | | | | X | X | X | | | | | | | CPT: S.J. Yang / CPT: Jimmy Chen | CHU00030449-457 | S.J. Yang | S.J. Yang, Dep. Vol. 2, 278-299 Dep. Vol. 3 359-362 |
| 10/11/2006 | Email | | | | X | X | | | | | | | | | | | | | | HIT: Kumazawa / SDI: C.W. Lee | HTP-CRT00056159 | Yuuichi Kumazawa | 244:1-11 (Yuuichi Kumazawa) |
| 10/24/2006 | Tenchi Shunsen Yakichi, Akihabara, Washington Hotel Restaurant | | | | X | X | | | | | | | | | | | | | | HIT: Kumazawa, Ito / SDI: C.W. Lee | HTP-CRT00056159 | Yuuichi Kumazawa Nobuhiko Kobayashi | 245:12-23 (Yuuichi Kumazawa) 451 (Nobuhiko Kobayashi) |
| 10/24/2006 | Tenchi Shunsen Yakichi, Akihabara, Washington Hotel Restaurant, Tokyo, Japan | | | | X | X | | | | | | | | | | | | | | HIT: Nobuaki Itou / SDI: CW Lee | HDP-CRT00056218 | | |
| 11/14/2006 | | | | | X | | | | | | | | | | | | | | X | THOM: Petriat / THOM: Emeric Charamel / SDI: Meinke / SDI: Jung Hwan Suh | SDCRT-0091875 | | |
| 11/21/2006 | Huaxia Hotel, Shanghai, China | | | | X | X | | | | | X | | | X | X | | | | X | BMCC: Wenchiang Fan, Heng Zheng Guang Ze, Dalin Li, Yongchun Chi, Liman Lu, Hai Huang / IRI: Xiaolin Shen / HIT: Guojun Yang, Jianmin Huang, Peng Guo | CHU00102752 | | |
| 11/21/2006 | | | | | X | X | | | | | X | | | X | | | | | X | LGP: Joel Garbi / SDI: Francisco Mario / SDI: Min Kyu Suh / second meeting: | SDCRT-0091855 | | |
| 1/23/2007 | China | X | | | X | X | | | | | X | | | X | | | | | X | | CHU00033243 | | |
| 1/23/2007 | Tang Paradise Hotel, Xi'an, China | | X | | | X | | | | | | | | X | | | | | X | | CHU00033243, CHU00047657, CHU00047658, CHU00047663. SDCRT- | | |
| 2/7/2007 | | X | | | X | | | | | | X | X | | | | | | | | | MTPD-0543148 | | |

| MEETING DATE | LOCATION | CPT | LG | OEC /DW | SDI | HIT | MEC | MIT | TSB | PHS | LPD | MTPD | TCRT | BMCC | IRI | SMTL | TAT | SONY | THOM | INDIVIDUAL PARTICIPANTS | BEG BATES | DEPONENTS | DEPOSITION TESTIMONY |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2/17/2007-2/18/2007 | | X | | | X | | | | | | X | X | | | | | | | | CPT: Sheng-Jen<br>CPT: Mr. Yang<br>CPT: Mu-Lin Chen | CHU00030437 | Pil Jae Lee | 254 |
| 3/00/2007 | Mexico | | | X | X | | | | | | | | | | | | | | | John Choi (OEC): KC Oh (SDI) | SDCRT-0031594 | KC Oh | |
| 3/6/2007 | | | | X | | | | | | | | | | | | | | | | KC Oh (SDI) | SDCRT-0031662 | KC Oh | |
| 3/8/2007 | | X | | | X | | | | | | | | | | | | | | | Tae Gyun Oh (SDI), Chen Lishan (SDI): Li Huabin (SDI): Bruce Liu (CPT): Mark Lin (CPT) | SDCRT-0139342 | J.I. Lee | |
| 3/14/2007 | | | X | | X | | | | | | | | | | | | | | | Jeong Yun Shin (SDI) | SDCRT-0031662 | KC Oh | |
| 3/14/2007 3/17/2007 | Fujian Intercontinental Hotel, Fuzhou, China | | X | | X | | | | | | X | | | X | X | | | | X | first meeting:<br>BMCC: Huang Hai<br>HIT: Guo Peng<br>CPT: Hu Mei-Fang<br>LPD: Yu Jiangnan<br>SDI: Park Kyu, Kim, Kim Jung Kil<br>THOM: Xin Peng, Wang Zhiwei<br><br>second meeting:<br>BMCC: Huang Hai<br>HIT: Guo Peng: CPT: Hu Mei-Fang<br>LPD: Yu Jiangnan<br>Samsung SDI:Park Kyu, Kim , Kim Jung Kil<br>THOM: Xin Peng,  Wang Zhiwei<br>SEG Samsung: Wang Dong,  Liang Zhehan | BMCC-CRT000002761, BMCC-CRT000002762, CHU00032940, CHU00032948, CHU00045142, CHU00045143, CHU00046291, CHU00046340, CHU00046354, CHU00046887, CHU00046888, CHU00665186, CHU00665187, CHU00734335, CHU00734336, CHU00734338, CHU00734342, CHU00734344, CHU00734345, CHU00734772 | | |
| 3/15/2007 -3/16/2007 | Fujian, China | X | X | | X | X | | | | | X | | | X | X | | | | X | THOM: Xin Peng<br>THOM: Wang Zhiwei | CHU00734336: CHU00032940 | | |
| 3/26/2007 | China | | | | X | | | | | | X | | | | | | | | | SDI - SK Sung: LPD - JM Park | SDI rog responses | SK Sung | 150:12-150:25 |
| 4/1/2007 | | | X | | | | | | | | | X | | | | | | | | Hun Sul Chu (SDI): | SDCRT-0189859 | HS Chu | |
| 4/6/2007 | | X | | X | X | X | | X | | | X | X | X | | X | X | | X | | LPD: DC Ryu | LGE00067201 LGE00067202 | Duk Chul Ryu | 247 |
| 4/19/2007 | | | | | X | | | | | | | | | | | X | | | | Mikami (Sharp): Takashima (Sharp): D.E. Lee (SDI) | SDCRT-0141398 | J.I. Lee | |
| 4/27/2007 | | | | | X | | | | | | | X | | | | | | | | MTPD: Sanogawaya | MTPD-0438871 | Sanogawaya | Sanogawaya III at 425-31 |
| 6/1/2007 | China: Qingdao, Aizunke Hotel | | | | X | X | | | | | X | | | X | | | | | X | BMCC: Huang, Hai: Chi, Qi-Chang<br>HIT: Guo, Peng<br>LPD: Yu, Jang-Nan<br>SDI: Park, Guixi: Kim, Mei<br>THOM: Xin, Peng | CHU00082287 | | |
| 7/5/2007 | Dongguan, China | | | | X | X | | | | | | | | X | X | | | | X | BMCC: Chen, Xi: Li, Dalin<br>IRI: Wang, Ximin<br>SDI: Sung, SK<br>HIT: Wang, Yufeng | BMCC-CRT000105586, CHU00734728, SDCRT-0105131 | | |

| MEETING DATE | LOCATION | CPT | LG | OEC /DW | SDI | HIT | MEC | MIT | TSB | PHS | LPD | MTPD | TCRT | BMCC | IRI | SMTL | TAT | SONY | THOM | INDIVIDUAL PARTICIPANTS | BEG BATES | DEPONENTS | DEPOSITION TESTIMONY |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 7/5/2007 | China | | | | X | X | | | | | X | | | X | X | | | | X | SDI - SK Sung, ES Hwang, Yun Xie, Mei Jin: Thomson - Saurahb Dhoot, Kumar Neeraj, Prakash Rajeev, Xiangjie Yang, Xhiye Huang, Yongjie Zhu, Peng Xin, Zhiwei Wang, Shanshan Wu: BMCC - Xi Chen, Dalin Li, Hai Huang: Hitachi - Guojun Yang, Yufeng Wang, Ying Dai, Peng Guo: LPD - Jianzhong Sheng, Tao Jiang, Minghui Xu, Jiangnan Yu, Changqi Jin, Yaping Yang, Jing Fang: Irico - Ximin Wang, Zhengrong Yuan | SDCRT-0105131 | | |
| 7/7/2007 | San Diego | | | | X | | | | | | X | | | | | | | | | | Woong Rae Kim: KC Oh (SDI): Quinn Choi (LPD): | SDCRT-0007615 | KC Oh | |
| 7/12/2007 | | | | | X | | | | | | X | | | | | | | | | | Jae In Lee (SDI): Dong Hoon Lee (SDI): Kee Choi (SDI): | SDCRT-0170843 | KC Oh | |
| 7/12/2007 | | | | | X | | | | | | X | | | | | | | | | | SDI - DH Lee, Kee Choi: LPD - JM Park, KY Ko, SK Lee | SDCRT-0170843 | | |
| 7/16/2007 | | | | | X | | | | | | X | X | | | | | | | | | SDI - DE Lee | SDCRT-0081019 | | |
| 8/6/2007 | Korea | | | | X | | | | | | X | | | | | | | | | | SDI - DH Lee: LPD - JU Park | SDCRT-0198856 | | |
| 8/6/2007 | China | X | | | | | | | | | X | | | | | | | | | | SDI - SK Sung: LPD - Park, CK Kim | SDI rog responses: SDCRT-0198856 | SK Sung | 120:7-134:3 |
| 9/3/2007 | San Diego | | | | X | | | | | | X | | | | | | | | | | Woong Rae Kim: KC Oh (SDI): Quinn Choi (LPD): | SDCRT-0199834 | KC Oh | |
| 9/11/2007 | | X | X | | X | | | | | | X | | | | | | | | | | LPD: DC Ryu | LGE00086914 | Duk Chul Ryu | 275 |
| 9/11/2007 | China | | | | X | | | | | | X | | | | | | | | | | SDI - SK Sung | SDCRT-0110475 | | |
| 9/12/2007 | Yeouido | | | | X | | | | | | X | | | | | | | | | | | SDCRT-0160057 | Hoon Choi | 278:2 |
| 9/12/2007 | Yeouido | | | | X | | | | | | X | | | | | | | | | | | | Hoon Choi | 278:2 |
| 10/12/2007 | | | | | X | | | | | | X | | | | | | | | | | Hun Sul Chu (LPD): Lee (LPD) | SDCRT-0185053 | HS Chu | |
| 11/00/2007 | | | | | | | | | | | | | | | | | | | | | | SDCRT-0180438 | H.S. Chu | |
| 11/2/2007 | China | X | | | X | | | | | | X | | | | | | | | | | SDI - IH Oh, JH Jung, TG Oh, SM Nam, Chen Lishan | SDCRT-0139342 | | |
| 11/2/2007 | | X | | | X | | | | | | | | | | | | | | | | Tae Gyun Oh (SDI), Chen Lishan (SDI): Ik Hwan Oh (SDI): Jae Hwan Jung (SDI): Seong Meen Nam (SDI): Bruce Liu (CPT): Mark Lin (CPT): Jason Lu (CPT) | SDCRT-0139342 | J.I. Lee | |
| 11/13/2007 | | X | | | X | | | | | | X | | | | | | | | | | | LGE00080007 | Duk Chul Ryu | 280 |
| 3/22/0000 | | | | | X | | | | | | X | X | | | | | | | | | MTPD: Tanaka; Nishimura | MTPD-0419572 | Kazuhiro Nishimaru; Kazutaka Nishimura | Nishimaru: 443:7-456:8 |

| MEETING DATE | LOCATION | CPT | LG | OEC/DW | SDI | HIT | MEC | MIT | TSB | PHS | LPD | MTPD | TCRT | BMCC | IRI | SMTL | TAT | SONY | THOM | INDIVIDUAL PARTICIPANTS | BEG BATES | DEPONENTS | DEPOSITION TESTIMONY |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 6/20/200 | | X | X | X | X | | | | | X | | | X | | | | | | | CPT: Liu (Director)<br>CPT: Yang (Senior Manager)<br>LG: Choi, S. Y.<br>LG: Park, K.J.<br>OEC: Cho, H.K.<br>OEC: Lee, H.S.<br>OEC: Min, Karl<br>OEC: Lim, Jerry<br>PHS: Smith, Jim<br>SDI: Kim, Inn<br>SDI: Lee, K.H.<br>SDI: Park, S.K.<br>SDI: Son, Michael<br>T-CRT: Thanasak<br>T-CRT: Sirichai | CHU00031010 & CHU00031010.01E | Jim Smith | Jim Smith Dep. Vol. 1, 168-173 |
| 9/7/0000 to 9/8/0000 | | X | X | X | X | | | | | | | | X | | | | | | | CPT: C.C. Liu<br>CPT: Michael Du<br>SDD: Mr. Inn Kim<br>SDD: Mr. K.H. Lee<br>SDD: Mr. D.H. Lee<br>SDD: Mr. D.E. Lee<br>SDD: Mr. Son<br>LG: Mr. Choi<br>LG: Mr. C.G. Kim<br>LG: Mr. P.Y. Jeong<br>LG: Mr. Y.I. Jeong<br>LG: Mr. D.E. Lee<br>Orion: Mr. H.C. Moon<br>Orion: Mr. B.L. Jeong<br>Orion: Mr. Karl Min<br>Orion: Mr. H.S. Oh<br>TCRT: Mr. Thanasak Chaiyavech | CHU0002923-927 | C.C. Liu | C.C. Liu, Dep. Vol. 3, 436-446 |
| | | X | X | X | X | | | | | X | | | | | | | | | | | CHU00060408-418 | C.C. Liu | C.C. Liu, Dep. Vol. 2, 323-327 |
| | | X | X | X | X | | | | | | | | | | | | | | | CPT: S.J. Yang<br>CPT: C.C. Liu<br>CPT: Michael Du<br>LG: Mr. Park<br>LG: Mr. Yeu<br>LG: Mr. Kim | CHU00028889-892 | S.J. Yang | S.J. Yang, Dep. Vol. 1, 134-139 |
| Unknown | | X | X | X | X | | | | | X | X | | | | | | | | | CPT: C.C. Liu | CHU00031194-201 | C.C. Liu | C.C. Liu, Dep. Vol. 2, 267-274<br>Dep. Vol. 3, 399-401 |
| Unknown | | X | X | X | | | X | | | | X | | | | | | | | | CPT: C.C. Liu | CHU00031209-213 | C.C. Liu | C.C. Liu, Dep. Vol. 2, 274-275 |
| Unknown | | | | | X | | | | | | | X | | | | | | | | MTPD: Nishimura, Kazutaka<br>SDI: Osaka representative | MTPD-0426042 | Kazutaka Nishimura | |
| unknown | email | | | | X | | | | | X | X | | | | | | | | | | SD-CRT-0002562 & SD-CRT-00002562E | Joseph Killen | Joseph Killen Dep. 118:1-127:20 |
| unknown | email | | | | X | | | | | X | X | | | | | | | | | | SDCRT-002582 | Joseph Killen | Joseph Killen Dep. 148:20-159:6 |
| unknown | email | | | | X | | | | | X | X | | | | | | | | | | PHLP-CRT-082771 | Joseph Killen | Joseph Killen Dep. 231:25-234:15 |
| unknown | Powerpoint | | | | X | | | | | X | | | | | | | | | X | | PHLP-CRT-009599 | Kris Mortier | Kris Mortier Dep.Vol. 1, 289-292 |

HIGHLY CONFIDENTIAL
EXHIBIT A

| MEETING DATE | LOCATION | CPT | LG | OEC /DW | SDI | HIT | MEC | MIT | TSB | PHS | LPD | MTPD | TCRT | BMCC | IRI | SMTL | TAT | SONY | THOM | INDIVIDUAL PARTICIPANTS | BEG BATES | DEPONENTS | DEPOSITION TESTIMONY |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| unknown | | | | | X | | | | | | X | | | | | | | | X | | PHLP-CRT-015909 | Kris Mortier | Kris Mortier Dep.Vol. 2, 458-464 |
| unknown | | | | | X | | | | | | X | | | | | | | | X | | PHLP-CRT-035906 & attachment PHLP-CRT-035907 | Kris Mortier | Kris Mortier Dep.Vol. 2, 484-492 |
| Unknown | | X | | | X | | | | | | X | | | | | | | | | LPD: Mr. Lee | n/a | Jim Kang Jung | 88 |
| Unknown | | X | X | | X | | | | | | | | | | | | | | | | n/a | Duk Chul Ryu | 170-173 |
| Unknown | | X | X | | X | | | | | | | | | | | | | | | | n/a | Duk Chul Ryu | 184 |
| Unknown | | | | | | | X | | | | | | | | | | | | X | MEC: Hirokazu Nishiyama | | Hirokazu Nishiyama | 76, 98-100 |
| Unknown | U.S. | | | | | | | | | X | | | | | | | | | X | PHS: Joe Killen | | Pat Canavan | 112-130, 194 |
| Unknown | | | | | | | | | | | | | | | | | | | X | | TDA00355 | | |
| Unknown | | X | | X | X | | | | | X | | | | | | | | | X | | CHU00022689 | | |

# **EXHIBIT 9**

7/28/2023

Case 4:07-cv-05944-JST   Document 6226-1   Filed 07/28/23   Page 170 of 379
Exhibit 9 to Declaration of Evan J. Werbel in Support of Irico Defendants' Motion for Summary Judgment

| MEETING DATE | LOCATION | CPT | LG | OEC/DW | SDI | HIT | MEC | MIT | TSB | PHS | LPD | MTPD | TCRT | BMCC | IRI | SMTL | TAT | SONY | THOM | INDIVIDUAL PARTICIPANTS | BEG BATES | DEPONENTS | DEPOSITION TESTIMONY |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 3/12/1998 | Hitachi Greenville, S.C. Factory | | | | | X | | | | | | | | | | | | | X | HIT: Tom Heiser, Thom Schmitt<br>THOM: P. Kevin Trompak | HEDUS-CRT00126627 | Tom Heiser | 169:06 (Tom Heiser) |
| 7/8/1998 | White Columns Golf Club, Alpharetta, GA | | | | | X | | | | | | | | | | | | | X | HIT: Tom Heiser<br>THOM: Rick Love, Hans Braun | HEDUS-CRT00166576 | Tom Heiser | 92:03 (Tom Heiser) |
| 7/13/1998 | Third Serve Sports Grill, Norcross, GA | | | | | X | | | | X | | | | | | | | | | HIT: Tom Heiser, Thom Schmitt, GL, JS<br>PHS: Jeff Johnson, Pat Canavan, | HEDUS-CRT00166576 | Tom Heiser | 92:03 (Tom Heiser) |
| 7/13/1998 | Hitachi Office, Norcross, GA | | | | | X | | | | X | | | | | | | | | | HIT:Tom Heiser Thom Schmitt<br>PHS: Geert Lievens, Pat Canavan, Jeff Johnson | PHLP-CRT-081748 | Tom Heiser | 100:18 (Tom Heiser) |
| 7/15/1998 | Hitachi, Norcross, GA | | | | | X | | | | X | | | | | | | | | | PH: Pat Canavan<br>PH: Jeff Johnson<br>HIT: Tom Heiser<br>HIT: Thom Schmitt<br>HIT: Geert Lievens | PHLP-CRT-081748 | Jim Smith | Jim Smith Dep. Vol. 1, 249-255 |
| 10/13/1998 | Ruth's Chris Scottsdale, AZ | | | | | X | | | | | | | | | | | | | X | HIT: Tom Heiser<br>THOM: Mr. Sterling Owens | HEDUS-CRT00160563 | Tom Heiser | 191:05 (Tom Heiser) |
| 1/6/1999 | Rosewood Grill, Las Vegas, NV | | | | | X | | | | X | | | | | | | | | | HIT: Tom Heiser, Thom Schmitt, BK<br>PHS: Joe Snyder, Emmanual Corney, | HEDUS-CRT00166472 | Tom Heiser | 107:23 (Tom Heiser) |
| 1/7/1999 | Terrace Point, Las Vegas, NV | | | | | X | | | | X | | | | | | | | | | HIT: Tom Heiser, Thom Schmitt<br>PHS: J. Johnson, P. Canavan | HEDUS-CRT00166472 | Tom Heiser | 107:23 (Tom Heiser) |
| 1/7/1999 | Terrace Point, Las Vegas, NV | | | | | X | | | | X | | | | | | | | | | HIT: Thom Schmitt, YN<br>PHS: Pat Canavan, Jeff Johnson, Hiyoshi Kashimura | HEDUS-CRT00098394 | Tom Heiser | 110:14 (Tom Heiser) |
| 1/12/1999 | U.S. | | X | X | X | X | | | X | X | | | | | | | | | X | SDI: Chul Hong Im | SDCRT-0002526 | | |
| 1/22/1999 | Philips Monitor Facility, Raleigh, N.C. | | | | | X | | | | X | | | | | | | | | | HIT: Dan Mead,<br>PHS: Paul Toma | HEDUS-CRT00158744 | Tom Heiser | 426:05 (Tom Heiser) |
| 4/8/1999 | Huntsville, Alabama | | X | | | X | | | | | | | | | | | | | | HIT: CH SB Thom Schmitt<br>LG: Joseph Kim Joseph Woo, | HEDUS-CRT00098394 | Tom Heiser | 110:14 (Tom Heiser) |
| 4/22/1999 | Cafe Lousianne, Norcross, GA | | | | | X | | | | X | | | | | | | | | | HIT: Tom Heiser TN SI<br>PHS: Pat Canavan | HEDUS-CRT00160568 | Tom Heiser | 124:10 (Tom Heiser) |
| 12/16/1999 | Hitachi's Greenville plant | | | | | X | | | | X | | | | | | | | | | HIT: Fukuzawa, Saito, Toyama,<br>PHS: Schaffer, Gotje | JLI-00001286 | Noboru Toyama | 115 (Noboru Toyama) |
| 7/28/2000 | U.S. | | | | X | | | | | X | | | | | | | | | X | SDI: C.H. Im<br>SDI: Yoon Yang<br>PHS: Cor Saris<br>PHS: Jeff Johnson | SDCRT-0002506 | | |
| 9/29/2000 | U.S. | | | | X | | | | | X | | | | | | | | | X | SDI: Chul Hong Im<br>SDI: Woongrae Kim<br>PHS: Cor Saris | SDCRT-0002488 | | |
| 11/8/2000 | U.S. | | | | | X | | | | | | | | | | | | | X | HIT: Thom Schmitt<br>HIT: Tom Heiser<br>THOM: Alex Hepburn | HEDUS-CRT00164814; HEDUS-CRT00164816 | Lloyd Benson | 193 |
| 12/7/2000 | U.S. | | | | | X | | | | | | | | | | | | | X | HIT: Thom Schmitt<br>HIT: Tom Heiser<br>THOM: Alex Hepburn | HEDUS-CRT00168774 | Thomas Schmitt | 274:18 (Thom Schmitt) |
| 3/3/2001 | SDI San Diego | | | | X | | X | | | | | | | | | | | | | Jae In Lee (SDI); Moon Il Bae (SDI); CH Lim (SDI); K.C. Oh (SDI); Woong Rae K Kim (SDI); Alex Kinoshita (MEC) | SDCRT-0002585 | J.I. Lee | |
| 3/10/2001 | SDI San Diego | | | | X | | | | | | X | | | | | | | | | Jae In Lee (SDI); Moon Il Bae (SDI); CH Lim (SDI); K.C. Oh (SDI); Kyu In Choi (LPD) | SDCRT-0002588 | J.I. Lee | |
| 3/20/2001 | Detroit, Michigan | | | | | X | | | | X | | | | | | | | | | HIT: Tom Heiser TS<br>PHS: Pat Canavan Jeff Johnson Daren Ivy | HEDUS-CRT00004705 | Thom Schmitt | 257:05 (Thom Schmitt) |
| 5/6/2001 | Sushi Taro, Washington D.C. | | | | | X | X | | X | | | | | | | | | | | MEC: Nishiyama; HIT: Hirai; TSB: Kimura | MPDA_SEC-0896104 | Kazumasa Hirai; Nishiyama | 180:3 (Kazumasa Hirai); Nishiyama I at 162-66 |
| 5/7/2001 | Grand Hyatt - Washington D.C. | | | | | X | X | | X | X | | | | | | | | | X | HIT: Kazumasa Hirai, Tom Heiser<br>PHS: Jeff Johnson<br>TSB: John Webster<br>MEC: Harry Nishiyama<br>THOM: Alex Hepburn, Tom Carson, Tom Hallowell | PHLP-CRT-077930 | Kazumasa Hirai, Tom Heiser | 146:17 (Kazumasa Hirai) 147:13 (Tom Heiser) |
| 6/6/2001 | U.S. | | | | X | | | | | X | | | | | | | | | X | SDI: Cheol Hong Lim<br>PHS: Joe Killen | SDCRT-0002582 | Joseph Killen | 148 |
| 6/15/2001 | Greenville, S.C. | | | | | X | | | | X | | | | | | | | | | HIT: Kazumasa Hirai<br>PHS: Daniel den Engelsen, Hemant Betrabet | PHLP-CRT-090934 | Kazumasa Hirai | 271:12 (Kazumasa Hirai) |

Case 4:07-cv-05944-JST Document 6226-1 Filed 07/28/23 Page 171 of 379
Exhibit 9 to Declaration of Evan J. Werbel in Support of Irico Defendants' Motion for Summary Judgment

7/28/2023

| MEETING DATE | LOCATION | CPT | LG | OEC/DW | SDI | HIT | MEC | MIT | TSB | PHS | LPD | MTPD | TCRT | BMCC | IRI | SMTL | TAT | SONY | THOM | INDIVIDUAL PARTICIPANTS | BEG BATES | DEPONENTS | DEPOSITION TESTIMONY |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 07/00/2001 | Philips Atlanta | | | | X | X | | | | X | X | | | | | | | | | HIT: Thom Schmitt, Biff Kinney<br>PHS: Christian Haring, Sukrit Mitra, | HEDUS-CRT00147432 | Tom Heiser | 359:04 (Tom Heiser) |
| 9/5/2001 | Hitachi's Greenville plant | | | | X | | | | | X | | | | | | | | | | HIT: Toyama. PHS: Gotje | PHLP-CRT-091563 | Noboru Toyama | 134 (Noboru Toyama) |
| 10/16/2001 | La Quinta Resort, La Quinta, California | | | | X | | | | | X | | | | | | | | | X | HIT: Thom Schmitt, Kazumasa Hirai, Thomas Heiser<br>THOM: Alex Hepburn<br>PHS: Jeff Johnson<br>LPD: Bob O'Brien<br>MEC: Harry Nishiyama | HEDUS-CRT00186930 | Thom Schmitt | 265:13 (Thom Schmitt) |
| 2002-2006 | U.S. (Ohio; Detroit; Washington, DC) | | | | | | X | | | | | | | | | | | | X | MEC: Shinichi Iwamoto<br>THOM: James Hanrahan | | Shinichi Iwamoto | 45-55, 81, 262-64, 35962 |
| 1/11/2002 | U.S. | | | | | | X | | | | X | | | | | | | | X | LPD: Ney Corsino<br>THOM: Tom Carson<br>MEC: Nakamoto | JU-00004807 | Patrick Canavan | Patrick Canavan Dep. Vol. 1, 262:12-270:18 |
| 8/15/2002 | U.S. | | | | X | | | | | X | | X | | X | | | | | X | MTPD: Shigkazu Shibata MTPD: Shinichi Iwamoto MTPD: Ayumu Kinoshita MTPD: Mike Nakamoto MTPD: Takaki Kokado THOM: J.P. Hanrahan | MTPD-0223790 | | |
| 10/8/2002 | Parmesano Dayton Marriott Hotel | | | | | X | X | | | | | | | | | | | | X | HIT: Kazumasa Hirai<br>MEC: Shinichi Iwamoto | MTPD-0036413 | Kazumasa Hirai | 152:4, 170, 435 (Kazumasa Hirai) |
| 10/22/2002 | U.S. | | | | X | | | X | | X | | X | | X | | | | | X | THOM: Tom Carson<br>THOM: Alex Carson<br>LPD: Jeff Johnson<br>LPD: Bob O'Brien<br>HIT: Thom Schmitt<br>HIT: Jake Spengler<br>BMCC: Elaine Sears | PHLP-CRT-087372 | | |
| 1/8/2003 | Garden Cafe, Harrah's Las Vegas | | | | X | | | | | X | | | | | | | | | | HIT: Tom Heiser, Thom Schmitt, JS, SB,<br>PHS: C. Haring, S. Little | HEDUS-CRT00166481 | Tom Heiser | 244:06 (Tom Heiser) |
| 1/8/2003 | La Playa Lounge, Harrah's Las Vegas | | | | X | | | | | | | | | | | | | | X | HIT: Tom Heiser, Thom Schmitt, AP SB<br>THOM: G. O'Donnel, J.P. Colin | HEDUS-CRT00166481 | Tom Heiser | 244:06 (Tom Heiser) |
| 1/9/2003 | U.S. | | | | X | | | | | | X | | | | | | | | | LPD - Chang Hoo Kim | SDCRT-0087934 | | |
| 2/3/2003 | Ann Arbor, MI | | | | X | | | | | | X | | | | | | | | | | PTC-00004295 | Bob O'Brien | Bob O'Brien Dep. Vol. 1,; 251:20-258:2 |
| 3/3/2003-3/11/2003 | San Diego; Mexico | | | | X | | | | | | X | X | | | | | | | X | KC Oh (SDI) | SDCRT-0076953; SDCRT-0076954 | KC Oh | 82:18-83:11 |
| 3/24/2003 | Atlanta, GA | | | | | X | X | | | | | | | | | | | | | HIT: Kazumasa Hirai, Nakanishi<br>MEC: Shinichi, (Steve) Iwamoto, President Mike Nakamoto | MTPD-0025523 | Kazumasa Hirai | 183:06 (Kazumasa Hirai) |
| 3/24/2003 | Atlanta, GA | | | | | X | X | | | | | | | | | | | | | HIT: Kazumasa Hirai Yosuke Nakanishi, Kumiko Wilson,<br>MEC: Shinichi (Steve) Iwamoto, President Mike Nakamoto | MTPD-0042965 | Kazumasa Hirai | 194:13, 435 (Kazumasa Hirai) |
| 3/24/2003 | Atlanta, GA | | | | | X | X | | | | | | | | | | | | | HIT: Kazumasa Hirai<br>MEC: Shinichi (Steve) Iwamoto | MTPD-0041033 | Kazumasa Hirai | 202:3 (Kazumasa Hirai) |
| 5/2/2003 | U.S. | | | | X | | | | | | | | | | | | | | X | SDI: Woongrae Kim<br>SDI: Dong Suk Lee<br>THOM: J.P. Hanrahan<br>THOM: Jack Brunk | SDCRT-0007239 | KC Oh | 445 |
| July 2003-June 2006 | U.S. (California) | | | | X | | | | | | | X | | | | | | | | MTPD: Fujita, Norio<br>SDI: Kim, Ray | | Norio Fujita | |
| July 2003-June 2006 | U.S. (California) | | | | X | | | | | | | X | | | | | | | | MTPD: Fujita, Norio<br>SDI: Kim, Ray | | Norio Fujita | |
| July 2003-June 2006 | U.S. (California) | | | | X | | | | | | | X | | | | | | | | MTPD: Fujita, Norio<br>SDI: Kim, Ray | | Norio Fujita | |
| July 2003-June 2006 | U.S. (California) | | | | X | | | | | | | X | | | | | | | | MTPD: Fujita, Norio<br>SDI: Kim, Ray | | Norio Fujita | |
| July 2003-June 2006 | U.S. (California) | | | | X | | | | | | | X | | | | | | | | MTPD: Fujita, Norio<br>SDI: Kim, Ray | | Norio Fujita | |
| July 2003-June 2006 | U.S. (California) | | | | X | | | | | | | X | | | | | | | | MTPD: Fujita, Norio<br>SDI: Kim, Ray | | Norio Fujita | |
| July 2003-June 2006 | U.S. (California) | | | | X | | | | | | | X | | | | | | | | MTPD: Fujita, Norio<br>SDI: Kim, Ray | | Norio Fujita | |
| July 2003-June 2006 | U.S. (California) | | | | X | | | | | | | X | | | | | | | | MTPD: Fujita, Norio<br>SDI: Kim, Ray | | Norio Fujita | |

7/28/2023

Case 4:07-cv-05944-JST   Document 6226-1   Filed 07/28/23   Page 172 of 379
Exhibit 9 to Declaration of Evan J. Werbel in Support of Irico Defendants' Motion for Summary Judgment

| MEETING DATE | LOCATION | CPT | LG | OEC /DW | SDI | HIT | MEC | MIT | TSB | PHS | LPD | MTPD | TCRT | BMCC | IRI | SMTL | TAT | SONY | THOM | INDIVIDUAL PARTICIPANTS | BEG BATES | DEPONENTS | DEPOSITION TESTIMONY |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 7/18/2003 | U.S. | | | | X | | | | | | X | | | | | | | | X | LPD: Quin Choi<br>SDI: KC Oh<br>THOM: Jack Brunk | SDCRT-0007173 | KC Oh | 210 |
| 7/26/2003 | Santee, CA | | | | X | | | | | | X | | | | | | | | X | | SDCRT-0007173 | KC Oh | |
| 8/19/2003 | U.S. | | | | | | | | | | | X | | | | | | | X | THOM: J.P. Hanrahan<br>THOM: J.R. Hirschler<br>MTPD: President Shibata<br>MTPD: Iwamoto<br>MTPD: Usuda | MTPD-0576483 | | |
| 10/30/2003 | Pittsburgh, PA | | | | | X | | | | X | | | | | | | | | X | MEC: S. Iwamoto, Tom Fote<br>THOM: Alex Hepburn<br>LPD: Bob O'Brien | HEDUS-CRT00164095 | Thom Schmitt | 272:21 (Thom Schmitt) |
| 10/31/2003 | U.S. | | | X | X | | | | | | X | X | | | | | | X | X | MTPD: Alex Kinoshita | MTPD-0426066 | Ayumu Kinoshita 30(6)(b) | 397 |
| 10/31/2003 | USA, San Diego: Matsushita Offices | | | | | | | | | | | X | | | | | | | | MTPD: Kinoshita | MTPD-0426066 | Kinoshita | Kinoshita II at 397-98 |
| 12/6/2003 | U.S. | | | | | | | | X | | | X | | | | | | | X | MTPD: Shigkazu Shibata<br>THOM: J. Hanrahan<br>THOM: Christian Lissorgues | MTPD-0026563 | | |
| 12/17/2003 | U.S. | | | | | | | | | | | X | | | | | | | X | MTPD: Shigkazu Shibata<br>THOM: J. Hanrahan<br>THOM: Christian Lissorgues<br>THOM: Didier Trutt | MTPD-0043577 | | |
| 2004 | U.S. | | | | | | | | | | | | | | | | | | X | THOM: Christian Lissorgues | MTPD-0014992; MTPD-0573840 | | |
| 4/1/2004 | San Diego | | | | X | | | | | | | X | | | | | | | | MTPD: Fujita, Norio; Yoshikawa; Usuta SDI: Oh, Patrick; Kim, Ray | MTPD-0027035 | Fujita | Fujita II at 298 |
| 4/20/2004 | Delafoil - Perrysburg, OH | | | | | X | | | | | X | | | | | | | | | HIT: Tom Heiser, Tom Schmitt<br>LPD: Pat Canavan, Bob O'Brien<br>MTPD: Steve Lammers, Tom Fote, Steve Iwamoto<br>THOM: Alex Hepburn | MTPD-0009514 | Tom Heiser | 222:21 (Tom Heiser) |
| 4/26/2004 | SDI's San Diego Office | | | | X | | | | | | | X | | | | | | | | MTPD: Kawano; Tobinaga | MTPD-0637815 | Tsuruta | Tsuruta II at 230-34 |
| 5/6/2004 | SDI's San Diego office | | | | X | | | | | | | X | | | | | | | | MTPD: Yoshikawa, Masakazu; Fujita, Norio SDI: Kim, C.W.; Choi, H.W.; Lee, J.I.; Kim, R. | MTPD-0260906 | Norio Fujita | Fujita II at 303 |
| 11/5/2004 | Telephone / MTPD's Ohio factory | | | | | X | | | | | | X | | | | | | | | HIT: Kawamura<br>MTPD: Totoku | HEDUS-CRT00028552 | Noboru Toyama | 178 (Noboru Toyama) |
| 1/7/2005 | Los Angeles | | | | X | | | | | | X | | | | | | | | | LPD: W. Vaartjes,<br>LPD: N. Corsino,<br>LPD: K. Nam Je,<br>LPD: C. Gyu. | SDCRT 0007539E | Wiebo Jan Vaartjes | Wiebo Jan Vaartjes Dep. Vol. 1, 263:12-283:18 |
| 2/2/2005 | San Diego | | | | X | | | | | | | X | | | | | | | | MTPD: Yoshikawa, Masakazu | SDI 2nd Supp Interrogatory Responses | | |
| 2/2/2005 | San Diego | | | | X | | | | | | | X | | | | | | | | MTPD: Fujita<br>SDI: Kim, Ray | MTPD-0235157 | Fujita | Fujita II at 326-27 |
| 5/31/2005 | U.S. (California) | | | | X | | | | | | | X | | | | | | | | MTPD: Fujita, Norio<br>SDI: Kim, Ray | MTPD-0479837 | Shinichiro Tsuruta; Norio Fujita | Tsuruta: 208:7-221:2; Fujita II at 336-38 |
| 8/18/2005 | U.S. (California) | | | | X | | | | | | | X | | | | | | | | MTPD: Fujita, Norio<br>SDI: Kim, Ray | MTPD-0303225 | Shinichiro Tsuruta; Norio Fujita | Tsuruta: 235:15244:9 |
| 9/20/2005 | U.S. | | | | X | | | | | | | | | | | | | | X | SDI: K.C. Oh<br>THOM: Alonso Pando<br>THOM: Li Yuguo<br>THOM: ES Shuy<br>THOM: Michael Bourgerie | SDCRT-0016638 | | |
| 11/30/2005 | U.S. (California) | | | | X | | | | | | | X | | | | | | | | MTPD: Fujita, Norio<br>SDI: Kim, Ray | MTPD-0291761 | Yasuki Yamamoto; Norio Fujita | Yamamoto: 478:6481:19 |
| 7/7/2007 | San Diego | | | | X | | | | | | X | | | | | | | | | Woong Rae Kim; KC Oh (SDI); Quinn Choi (LPD); | SDCRT-0007615 | KC Oh | |
| 9/3/2007 | San Diego | | | | X | | | | | | X | | | | | | | | | Woong Rae Kim; KC Oh (SDI); Quinn Choi (LPD); | SDCRT-0199834 | KC Oh | |
| Unknown | U.S. | | | | | | | | X | | | | | | | | | | X | PHS: Joe Killen | | Pat Canavan | 112-130, 194 |

# EXHIBIT 10

MARIO N. ALIOTO, ESQ. (56433)
LAUREN C. CAPURRO, ESQ. (241151)
TRUMP, ALIOTO, TRUMP & PRESCOTT, LLP
2001 Union Street, Suite 482
San Francisco, CA 94123
Telephone: (415) 563-7200
Facsimile: (415) 346-0679
E-mail: malioto@tatp.com
laurenrussell@tatp.com

*Lead Counsel for Indirect Purchaser Plaintiffs*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Master File No. 3:07-cv-5944-JST |
| | MDL No. 1917 |
| This Document Relates to:<br><br>ALL INDIRECT PURCHASER ACTIONS | **INDIRECT PURCHASER PLAINTIFFS' OBJECTIONS AND RESPONSES TO THE IRICO DEFENDANTS' SECOND SET OF INTERROGATORIES** |

PROPOUNDING PARTY:   Defendants Irico Group Corp. and Irico Display Devices Co., Ltd.

RESPONDING PARTY:      Indirect Purchaser Plaintiffs: Brian Luscher, Jeffrey Figone, Carmen Gonzalez, Dana Ross, Steven Ganz, Law Suites, Sandra Riebow, Travis Burau, Southern Office Supply, Inc., Kerry Lee Hall, Lisa Reynolds, David Norby, Barry Kushner, Ryan Rizzo, Charles Jenkins, Misti Walker, Steven Fink, Gregory Painter, Marylou Hillberg, in her capacity as the Personal Representative for the Estate of William Craig Stephenson, Conrad Carty, Janet Ackerman, Louise Wood, Patricia Andrews, Gary Hanson, Donna Ellingson-Mack, Frank Warner, Albert Sidney Crigler , Margaret Slagle, John Larch, Brigid Terry, David Rooks

SET:                              Two

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure and the June 18, 2008 Stipulated Protective Order, the Indirect Purchaser Plaintiffs Brian Luscher, Jeffrey Figone, Carmen Gonzalez, Dana Ross, Steven Ganz, Law Suites, Sandra Riebow, Travis Burau, Southern Office Supply, Inc., Kerry Lee Hall, Lisa Reynolds, David Norby, Barry Kushner, Ryan Rizzo, Charles Jenkins, Misti Walker, Steven Fink, Gregory Painter, Marylou Hillberg, in her capacity as the Personal Representative for the Estate of William Craig Stephenson, Conrad Carty, Janet Ackerman, Louise Wood, Patricia Andrews, Gary Hanson, Donna Ellingson-Mack, Frank Warner, Albert Sidney Crigler , Margaret Slagle, John Larch, Brigid Terry, David Rooks ("Plaintiffs") hereby respond to the Second Set of Interrogatories (the "Interrogatories") propounded by Defendants Irico Group Corp. and Irico Display Devices Co., Ltd. (collectively, "Irico" or the "Irico Defendants"), as follows:

## PRELIMINARY STATEMENT

Plaintiffs' responses to the Interrogatories are made solely for the purpose of, and in relation to, this action.  The responses set forth herein, while based on a diligent investigation and reasonable inquiry, reflect, and therefore are necessarily limited by, information now known and the records or information still in existence available to plaintiffs, presently recollected and thus far discovered in the course of preparing these responses.  Plaintiffs have not yet completed discovery or preparation for trial in this case.  Their investigation concerning this matter is still ongoing, and further discovery may be necessary from defendants as well as from third parties.  Plaintiffs reserve the right to amend, modify or supplement these responses to incorporate any evidence, facts, documents or other information not yet discovered, or the relevance of which has not yet been identified.

These responses are given without prejudice to plaintiffs' right to rely on or use at trial any or all evidence of any kind in this case, including without limitation documents or other evidence subsequently discovered or omitted from these responses as a result of mistake, error or inadvertence.  Plaintiffs do not waive and specifically reserve the right to produce additional documents or other evidence at trial, and to object on appropriate grounds to the introduction of all or any part of these responses.

1

By making the objections and responses herein, Plaintiffs do not concede that the information provided is relevant to the claims or defenses of any party or reasonably calculated to lead to the discovery of admissible evidence.  Nothing in their objections and responses to these Interrogatories shall be construed as an admission by Plaintiffs with respect to the competence, admissibility, relevance, or materiality of any fact or document, or as an admission of the truth or accuracy of any characterization of any information any kind sought by the Interrogatories.  Thus, each of the following responses is subject to all objections of and concerning relevance, materiality, and admissibility, as well as to all and any other objections on any ground requiring exclusion of any response if introduced in Court.  Plaintiffs reserve their right to object to use their objections and responses herein, or the subject matter thereof, including, without limitation, the right to object on any ground at any time to the use of such responses in any discovery procedures in this or any proceeding, and/or at trial.  All evidentiary objections and grounds accordingly are expressly reserved.

Plaintiffs further incorporate by reference any evidence identified by the Direct Purchaser Plaintiffs in response to any and all of the Interrogatories.

## **GENERAL OBJECTIONS**

Each of the following General Objections is considered applicable to, and is hereby incorporated into, each and every response by Plaintiffs to the Interrogatories, and each response is given without waiving any of the General Objections. The assertion of any General Objection in the Response to any Interrogatory should not be considered a waiver of the remaining General Objections. Plaintiffs' objections to the Interrogatories, whether general or specific, do not serve as an admission by Plaintiffs that responsive information exists and otherwise would have been provided by Plaintiffs absent such objections.

1.      Plaintiffs object to the Interrogatories, and each of them, to the extent that they are premature.  Plaintiffs' investigation is ongoing and Plaintiffs have not completed discovery of the facts relevant to this case.  These responses are made for the sole purpose of this action and are based on information and/or documents known and available and are limited by Plaintiffs' present

2

knowledge, information, and belief.  Plaintiffs reserve the right to supplement and/or modify any and all of their responses and objections as they become aware of additional information and/or documents which warrant such action.  Plaintiffs further reserve the right to complete their investigation and discovery of the facts and to rely at trial or in other proceedings upon information and documents in addition to that which is provided herein, regardless of whether such information is newly discovered or newly in existence.

2.      Plaintiffs object to the Interrogatories, and each of them, as unduly burdensome and unfair to the extent they seek to have counsel for Plaintiffs present evidentiary support for the allegations in the Complaint without having completed discovery.

3.      The prematurity of the Interrogatories and the unfairness and undue burden of responding to them is attributable in significant part to delays caused by the Irico Defendants' themselves.  Although the fact discovery cutoff is imminent, the Irico Defendants have not completed their production of documents responsive to Plaintiffs' requests for production.  Among other things, they have produced neither sales invoices nor a spreadsheet summarizing relevant information from them.  Moreover, many of the documents the Irico Defendants have produced were only produced recently, and Plaintiffs are still reviewing, translating, and analyzing them.  Furthermore, as the Special Master has determined, the Irico Defendants have failed to provide adequate responses to Plaintiffs' interrogatories requesting core information in this case regarding their attendance at and participation in meetings with competitors and their involvement in the operation of the conspiracy.  In addition, the Irico Defendants have yet to make two key witnesses available for deposition, and has refused to produce three others, thereby requiring Plaintiffs to bring a motion to compel their attendance.

4.      To compound the unfairness and undue burden of responding to the Interrogatories, they seek information and the identification of documents that the Irico Defendants themselves destroyed, lost or otherwise failed to preserve, notwithstanding their clear legal duty to do so.  The Irico Defendants did not create, publicize to its executives or employees or implement an appropriate litigation hold for at least nine years after this lawsuit was served on them.  Thus, the Irico

3

Defendants themselves are responsible for the fact that much of the evidence that would be responsive to the Interrogatories is no longer in existence, because they themselves destroyed it or allowed it to be destroyed or lost.

5. Plaintiffs object to the Interrogatories, and each of them, to the extent they seek documents or information (i) not relevant to the subject matter of this action; (ii) not relevant to any claim or defense in this action; (iii) not reasonably calculated to lead to the discovery of admissible evidence; (iv) different from, inconsistent with, or in addition to what is required to be produced under the Federal Rules of Civil Procedure, the Civil Local Rules of the United States District Court for the Northern District of California, any existing Court Order in this case, or any other applicable rule or law.

6. Plaintiffs object to the Interrogatories to the extent that they are vague, ambiguous and require speculation to determine their meanings. Plaintiffs respond to these Interrogatories as they interpret and understand them. If the Irico Defendants subsequently assert an interpretation of any Interrogatory or response that differs from Plaintiffs' understanding, Plaintiffs reserve the right to supplement or amend their objections and/or responses.

7. Plaintiffs object to the Interrogatories, and each of them, to the extent they call for the disclosure of information protected by the attorney-client privilege, the attorney work-product doctrine, or any other applicable law, privilege or protection. Any inadvertent production of privileged information shall not constitute a waiver of Plaintiffs' right to assert the applicability of any privilege or protection to any related information, and any such document and all copies or images thereof shall be promptly returned, sequestered or destroyed upon demand pursuant to Fed. R. Civ. P. 26(b)(5)(B).

8. Plaintiffs object to, and will not answer, the Interrogatories, and each of them, to the extent that (a) they seek the premature disclosure of expert material subject to Rule 26(a)(2)(C) of the Federal Rules of Civil Procedure, and/or (b) they seek disclosure of information concerning any person or entity whom Plaintiffs will not designate as an opinion or other witness at trial.

9. Plaintiffs object to the Interrogatories, and each of them, to the extent they impose an undue burden on Plaintiffs by requiring Plaintiffs to search for documents that are equally available to the Irico Defendants and/or already in their possession, custody, control, or which are publicly available or otherwise readily accessible to them.

10. Plaintiffs object to the Interrogatories to the extent they require Plaintiffs to compartmentalize evidence as proof of allegations in the Complaint instead of looking at it as a whole, which is in contravention of well-established legal principles. *See In re CRT Antitrust Litigation,* Master Docket No. 3:07-cv-05944 SC, Dkt. No. 2747, Order Adopting Recommended Order of the Special Master, dated August 15, 2014; *Continental Ore Co. v. Union Carbide & Carbon Corp.*, 370 U.S. 690, 699 (1962) ("The character and effect to a conspiracy are not to be judged by dismembering it and viewing its separate parts, but only by looking at it as a whole."). *See also Beltz Travel Service, Inc. v. Int'l Air Trans. Assoc.*, 620 F.2d 1360, 1366-67 (9th Cir. 1980) (citing *United States v. Patten*, 226 U.S. 525, 544 (1913)). All conspirators are jointly liable for the acts of their co-conspirators and the actions of any of the conspirators in furtherance of the conspiracy are, in law, the actions of all. *Id.*

11. Plaintiffs object to the Interrogatories to the extent they seek information relating to any period beyond the period for which Defendants have provided discovery.

12. Plaintiffs object to Defendant's definition of the term "Identify" as overbroad, unduly burdensome, and seeking information that is irrelevant and not reasonably calculated to lead to admissible evidence.

13. Plaintiffs hereby incorporate each of the foregoing General Objections into each of the individual responses set forth below, whether or not stated separately therein.  No Specific Objection is a waiver of any of the General Objections.

14. Plaintiffs reserve their right to try their case as Plaintiffs determine is best at trial. This includes by not using facts stated herein or using facts in addition to those stated herein.

15. Plaintiffs reserve the right to object to and/or challenge any information provided in response to the Interrogatories on the grounds of competency, relevance, materiality, privilege, or admissibility at trial or at any hearing or proceeding.

16. Plaintiffs object to, and expressly disclaim, any need or intent to prove any fact listed herein as a prerequisite to proving their claims at trial.

17. Plaintiffs object to these Interrogatories to the extent that the underlying Requests for Admission are propounded improperly or are not relevant to any claim or defense.

## RESPONSES AND SPECIFIC OBJECTIONS

## INTERROGATORY NO. 1

If Your response to any Request for Admission was anything other than an unqualified admission, separately for each Request for Admission:

(a) state the number of the request for admission;

(b) state all facts upon which You base Your response;

(c) Identify all Evidence upon which You intend to rely to support Your response; and

(d) Identify each Person who has knowledge of the facts upon which You base Your response.

## RESPONSE TO INTERROGATORY NO. 1:

Plaintiffs incorporate by reference the General Objections set forth in the preceding paragraphs. Plaintiffs object to the definition of "Evidence From Other Parties" contained in Irico's RFAs upon which this Interrogatory is based, and the Irico Defendants' attempt to limit Plaintiffs' response this Interrogatory to particular sources of evidence. It is improper to limit an RFA under Fed. R. Civ. P. 36(a)(1), which permits a party to seek an admission relating to "(A) facts, the application of law to fact, or opinions about either, or (B) the genuineness of any described document." Plaintiffs will not limit their responses to these RFA's to "Evidence From Other Parties," and will respond to the RFA's as to evidence from any source, including evidence produced by Irico or its wholly owned subsidiary China National Electronics Import & Export Caihong Company ("CNEIECC"). Irico has acknowledged that Irico "exported products exclusively through"

1  CNEIECC prior to the formation of Irico Electronics ("Electronics") in September 2004. *See* January

2  15, 2009 Response of Irico Group Corporation and Irico Display Devices Co., Ltd. to Plaintiffs'

3  Information Requests (the "2009 Response"), ECF No. 5220-10 at 1. In addition, a "Master Plan"

4  created by Irico Group near the end of 2022 describes CNEIECC as "actually serv[ing] as Irico

5  Group Corporation's import and export business management department[,]" and "actual assets,

6  personnel and business all belong to Irico Group Corporation." IRI-CRT-00002105E. Finally, a

7  2004 submission to China's Ministry of Finance that shows CNEIECC as a "wholly-owned"

8  subsidiary of Irico Group. *See* Dep. Ex. 8394.

9      Plaintiffs further object to this Interrogatory on the grounds that it is premature, and that it

10  seeks to impose an undue burden on Plaintiffs to state their case on an incomplete record and review

11  and analyze all information obtained in discovery thus far at this stage of this litigation.  Plaintiffs

12  object that this Interrogatory improperly requires Plaintiffs to marshal all evidence in support of their

13  case, including all testimony, in responses to written discovery, but particularly while discovery is

14  ongoing and in advance of the applicable deadlines set by the Court for disclosure of pretrial

15  information. The Irico Defendants have not completed their production of documents responsive to

16  Plaintiffs' requests for production. Among other things, they have produced neither sales invoices

17  nor a spreadsheet summarizing relevant information from them. Many of the documents the Irico

18  Defendants have produced were only produced recently, and Plaintiffs are still reviewing,

19  translating, and analyzing them. In addition, as the Special Master has determined, the Irico

20  Defendants have failed to provide adequate responses to Plaintiffs' interrogatories requesting core

21  information regarding their attendance at and participation in meetings with competitors and their

22  involvement in the operation of the conspiracy. The Irico Defendants have yet to make two key

23  witnesses available for deposition, and have refused to produce three others, thereby requiring

24  Plaintiffs to bring a motion to compel their attendance.

25      Plaintiffs also object to this Interrogatory to the extent it requires Plaintiffs to

26  compartmentalize evidence as proof of allegations in the Complaint instead of looking at it as a

27  whole, which is in contravention of well-established legal principles. *See In re CRT Antitrust*

28

1   *Litigation,* Master Docket No. 3:07-cv-05944 SC, Dkt. No. 2747, Order Adopting Recommended

2   Order of the Special Master, dated August 15, 2014; *Continental Ore Co. v. Union Carbide &*

3   *Carbon Corp.*, 370 U.S. 690, 699 (1962) ("The character and effect to a conspiracy are not to be

4   judged by dismembering it and viewing its separate parts, but only by looking at it as a whole.").  *See*

5   *also Beltz Travel Service, Inc. v. Int'l Air Trans. Assoc.*, 620 F.2d 1360, 1366-67 (9th Cir. 1980)

6   (citing *United States v. Patten*, 226 U.S. 525, 544 (1913)). All conspirators are jointly liable for the

7   acts of their co-conspirators and the action of any of the conspirators in furtherance of the conspiracy

8   is, in law, the action of all. *Id.*

9          Plaintiffs further object that the individuals involved in the conspiracy did not always identify

10  their affiliation to a specific corporate entity or their job title in a manner that allows Plaintiffs to

11  sufficiently respond to this Interrogatory. Plaintiffs also object to this Interrogatory to the extent it

12  seeks to attribute a particular action to a specific Irico entity when all the Irico entities named as

13  defendants were owned and controlled and acted pursuant to the overall strategy and direction of

14  Irico Group Corporation.

15         Finally, Plaintiffs object to this Interrogatory on the grounds that the distinction Irico

16  attempts to draw in their Requests for Admissions and the subject Interrogatories between "Glass

17  Meetings," "Green Meetings," "Top Meetings," "Management Meetings," "Working Level

18  Meetings" and the like is artificial and is of no moment in determining Irico's liability in this case.

19  Binder Documents 1-103, and the chart summarizing many of those documents which Plaintiffs filed

20  with the Special Master on December 16, 2021 (the "Admissibility Chart"), summarize in great

21  detail Irico's knowledge of, attendance at, and participation in meetings in furtherance of the

22  conspiracy with its co-conspirators to discuss and fix CRT prices, control CRT production, and

23  exchange material, non-public information over a lengthy period of time. They also show that even

24  where Irico did not send a representative to a particular meeting, it was kept apprised of, and

25  participated in, those meetings and the agreements reached through other co-conspirators, notably

26  Chunghwa. Plaintiffs incorporate both Binder Documents 1-103 themselves and the Admissibility

27  Chart by reference in response to each and every one of Irico's Interrogatories.

28

8

Subject to and without waiving the foregoing objections, Plaintiffs respond as follows:

**RFA No. 1:**  Evidence that Irico attended at least one Green Meeting includes, but is not limited to, the documents bearing Bates Numbers: TSA-CRT00156567; TSA-CRT00156568.

**RFA No. 2:**  Evidence that Irico's high level executives attended meetings with Irico's competitors, which meetings fall within the definition of "Top Meetings" in Plaintiffs' Complaint, includes, but is not limited to, the documents bearing the following Bates Numbers: CHU00030688-91;  IRI-CRT-00024215;  BMCC-CRT000540532;  CHU00047658-62;  CHU00734728;  BMCC-CRT000105586;  SDCRT-0093977-91;  SDCRT-0105131-34;  CHU00016621;  CHU00016622;  CHU00102751;  CHU00102752;  CHU00102864;  CHU00447509;  CHU00447510;  SDCRT-0087340;  SDCRT-0090225;  SDCRT-0091569;  SDCRT-0091980;  SDCRT-0091925;  SDCRT-0091950; CHU00102863; CHU00102864.

**RFA No. 3:**  Evidence that Irico's high level sales managers attended meetings with Irico's competitors, which meetings fall within the definition of "Management Meetings" in Plaintiff's Complaint, includes, but is not limited to, the documents bearing the following Bates Numbers: CHU00102752-54; CHU00030665-67; CHU00030679-83; CHU00030684-87; CHU00030692-94; CHU00030695-97; CHU00030705-08; CHU00030752-55; SDCRT-0086599-600; CHU00029050-51; CHU00030797-98; CHU00030819-22; CHU00030823-26; CHU00030827-30; CHU00030843-45;  SDCRT-0086698-99;  SDCRT-0086672;  CHU00029046;  CHU00030941;  CHU00030946; CHU00030953; CHU00030973; CHU00031018; CHU00029110; CHU00031032; CHU00031070; CHU00031088; CHU00031092; CHU00031113; SDCRT-0087694; SDCRT-0087700; SDCRT-0006674;  BMCC-CRT000142063;  SDCRT-0091409;  SDCRT-0091573;  SDCRT-0091584; SDCRT-0091942; SDCRT-0091957; BMCC-CRT000105586; SDCRT-0105131; CHU00029131; CHU00029138; IRI-CRT-00024212-15.

**RFA No. 4:**  Evidence that Irico attended Glass Meetings with its competitors prior to July 31, 1998 includes, but is not limited to, the documents bearing the following Bates Numbers: BMCC-CRT000113384; BMCC-CRT000113389; IRI-CRT-00004817; IRI-CRT-00004821; IRI-CRT-00008236; IRI-CRT-00008241-42.

9

1    **RFA No. 5:** Evidence that Irico attended Working Level Meetings with its competitors prior

2    to July 31, 1998 includes, but is not limited to, the documents bearing the following Bates Numbers:

3    BMCC-CRT000113384;  BMCC-CRT000113389;  BMCC-CRT000113394;  IRI-CRT-00008236;

4    IRI-CRT-00008242.

5    **RFA No. 6:** Plaintiffs incorporate their objections to this RFA and will not respond to this

6    Interrogatory at this time. Plaintiffs will respond at the close of discovery.

7    **RFA No. 7:** Evidence of meetings between Irico and a Defendant or Co-Conspirator prior to

8    July 31, 1998 includes, but is not limited to, the documents bearing the following Bates Numbers:

9    BMCC-CRT000113367;     BMCC-CRT000113368;     BMCC-CRT000113372;     BMCC-

10   CRT000113374;   BMCC-CRT000113378;   BMCC-CRT000113379;   BMCC-CRT000113380;

11   BMCC-CRT000113381;     BMCC-CRT000113382;     BMCC-CRT000113384;     BMCC-

12   CRT000113389;   BMCCRT000113392;   BMCC-CRT000113393;   BMCC-CRT000113394;

13   BMCC-CRT000113395-416;  IRI-CRT-00008236;  IRI-CRT-00008242;  IRI-CRT-00004746  &

14   4751;   IRI-CRT-00004761-64;   IRI-CRT-00004769-4773;   IRI-CRT-00008316-18;   IRI-CRT-

15   00008340; IRI-CRT-00008358-8360.

16   **RFA No. 8:** Evidence that Irico attended meetings with a Defendant or Co-Conspirator

17   outside of China includes, but is not limited to, the documents bearing the following Bates Numbers:

18   IRI-CRT-00024207-08;  IRI-CRT-00024317-19;  IRI-CRT-00024628;  TSA-CRT00216188;  TSA-

19   CRT00216189;   TSA-CRT00216190;   IRI-CRT-00004757;   IRI-CRT-00004761-64;   IRI-CRT-

20   00004769-4772;  TCE-CRT  0021183;  IRI-CRT-00018199;  IRI-CRT-00008802-03;  IRI-CRT-

21   00024205-06;  IRI-CRT-00024259-60;  TCE-CRT  0022550;  TSA-CRT00036206;  TCE-CRT

22   0021189;   TSA-CRT00036954;   IRI-CRT-00024320-21;   IRI-CRT-00024328-30;   IRI-CRT-

23   00024345-47;   TSA-CRT00153053;   TSA-CRT00187175;   IRI-CRT-00024628-32;   IRI-CRT-

24   00024657-58; IRI-CRT-00024678-4680; IRI-CRT-00024166.

25   **RFA No. 9:** Evidence that Irico sold CDTs after 2003 includes, but is not limited to, the

26   documents bearing the following Bates Numbers: IRI-CRT-00031184-88.

27   **RFA No. 10:** Plaintiffs incorporate their objections to this RFA and will not respond to this

28

Interrogatory at this time. Plaintiffs are willing to meet and confer regarding this response.

**RFA No. 11:** Plaintiffs incorporate their objections to this RFA and will not respond to this Interrogatory at this time. Plaintiffs are willing to meet and confer regarding this response.

**RFA No. 12:** Plaintiffs incorporate their objections to this RFA and will not respond to this Interrogatory at this time. Plaintiffs are willing to meet and confer regarding this response.

**RFA No. 13:** Plaintiffs incorporate their objections to this RFA and will not respond to this Interrogatory at this time. Plaintiffs are willing to meet and confer regarding this response.

**RFA No. 14:** Plaintiffs incorporate their objections to this RFA and will not respond to this Interrogatory at this time. Plaintiffs are willing to meet and confer regarding this response.

**RFA No. 15:** Plaintiffs incorporate their objections to this RFA and will not respond to this Interrogatory at this time. Plaintiffs are willing to meet and confer regarding this response.

Plaintiffs have not completed their discovery and preparation in this matter and their investigation of the case is ongoing. Plaintiffs reserve the right to change or supplement the responses to this Interrogatory.

## INTERROGATORY NO. 2

If You contend that Irico joined the alleged conspiracy prior to July 31, 1998, Identify the date on which You contend that Irico joined the conspiracy, Describe the facts that You rely on to support Your contention, Identify each Document and all Testimony or responses to discovery in this action that You contend supports such a contention, and Identify each Person who has knowledge concerning each contention.

## RESPONSE TO INTERROGATORY NO. 2:

Plaintiffs object to this Interrogatory on the grounds that it is premature, and that it seeks to impose an undue burden on Plaintiffs to state their case on an incomplete record and review and analyze all information obtained in discovery thus far at this stage of this litigation. Plaintiffs object that this Interrogatory improperly requires Plaintiffs to marshal all evidence in support of their case, including all testimony, in responses to written discovery, but particularly while discovery is ongoing and in advance of the applicable deadlines set by the Court for disclosure of pretrial

11

information. The Irico Defendants have not completed their production of documents responsive to Plaintiffs' requests for production. Among other things, they have produced neither sales invoices nor a spreadsheet summarizing relevant information from them. Many of the documents the Irico Defendants have produced were only produced recently, and Plaintiffs are still reviewing, translating, and analyzing them. In addition, as the Special Master has determined, the Irico Defendants have failed to provide adequate responses to Plaintiffs' interrogatories requesting core information regarding their attendance at and participation in meetings with competitors and their involvement in the operation of the conspiracy. The Irico Defendants have yet to make two key witnesses available for deposition, and have refused to produce three others, thereby requiring Plaintiffs to bring a motion to compel their attendance.

Plaintiffs further object to this Interrogatory to the extent it requires Plaintiffs to compartmentalize evidence as proof of allegations in the Complaint instead of looking at it as a whole, which is in contravention of well-established legal principles. *See In re CRT Antitrust Litigation,* Master Docket No. 3:07-cv-05944 SC, Dkt. No. 2747, Order Adopting Recommended Order of the Special Master, dated August 15, 2014; *Continental Ore Co. v. Union Carbide & Carbon Corp.*, 370 U.S. 690, 699 (1962) ("The character and effect to a conspiracy are not to be judged by dismembering it and viewing its separate parts, but only by looking at it as a whole."). *See also Beltz Travel Service, Inc. v. Int'l Air Trans. Assoc.*, 620 F.2d 1360, 1366-67 (9th Cir. 1980) (citing *United States v. Patten*, 226 U.S. 525, 544 (1913)). All conspirators are jointly liable for the acts of their co-conspirators and the action of any of the conspirators in furtherance of the conspiracy is, in law, the action of all. *Id.*

Plaintiffs further object that the individuals involved in the conspiracy did not always identify their affiliation to a specific corporate entity or their job title in a manner that allows Plaintiffs to sufficiently respond to this Interrogatory.

Plaintiffs object to this Interrogatory on the grounds that it is compound in that it compiles several interrogatories into one. Plaintiffs object to this Interrogatory on the grounds that it is vague and ambiguous as to the meaning of the undefined capitalized term "Describe." Plaintiffs further

12

object to this interrogatory on the grounds that that it is vague and ambiguous as to the meaning of "joined," "each contention," and any intended difference between "alleged conspiracy" and "conspiracy." Plaintiffs further object to this interrogatory on the grounds that it is overbroad in requiring Plaintiffs to identify "each Person" with knowledge of each contention.

Subject to and without waiving the foregoing objections, Plaintiffs respond as follows: Plaintiffs contend that Irico joined the CRT conspiracy at its inception in March 1995. Documents produced by defendant Beijing Matsushita Color CRT Co., Ltd. contain tables dated February 1995 and March 14, 1995 detailing the CRT production data of various CRT manufacturers including Irico (referred to as "4400"), for the period from 1993-1998. *See* BMCC-CRT000134418-19, BMCC-CRT00011394. These documents indicate that Irico was exchanging non-public, future production data with its competitors as early as February 1995. These were acts in furtherance of the conspiracy because, as many other documents show, the conspirators often agreed to limit production in order to fix, raise, or maintain CRT prices.

Irico's minutes of an internal Irico Group Corporation administrative meeting on July 10, 1995 note that Wu Yingzhong referenced a "preparatory meeting" for the "CRT Industry Association" to be held on July 17th, and that the "founding meeting will be held in early August." IRI-CRT-00004821.

Other documents demonstrate that these CRT Industry Association meetings were part of the conspiracy. For example, a document dated November 30, 1995, produced by defendant Beijing Matsushita Color CRT Co., Ltd., is entitled "December CRT Industry Meeting exchange" and was authored by "Irico Group Sales Company." BMCC-CRT000113389. The document contains detailed figures showing Irico's CRT output, sales, and inventory from January-November 1995, as well as Irico's planned production of CRTs for 1996. The last paragraph states, "I hope that our CRT fellow makers should unite together and act in unison." *Id.*

Irico's internal minutes of a December 11, 1997 meeting of the plant's leaders, reflect that Secretary Tao stated: "An industry meeting was held last week. Each tube maker set the price of 21" at 620 yuan." IRI-CRT-00005040. According to Irico's minutes of a December 1, 1998

13

1  administrative meeting (IRI-CRT-00008425), Ma Jinquan reported the tube sales situation and

2  referenced, "The industry meeting, once every month. The November meeting concluded to discuss

3  with Changhong again about pricing issues." IRI-CRT-00008427. *See further* Response to RFA No.

4  4.

5  Plaintiffs believe the following individuals have knowledge relating to the foregoing: Wu

6  Yingzhong; Zhang Wenyi, Wang Lichang, Wu Weiren, J.S. Lu, S.J. Yang, C.C. Liu, Sha Tao, Ma

7  Jinquan, Tao Kui, Xing Daoqin, Mu Haoping, Ma Shitai, Niu Wenjun, Li Zhuotai, and anyone else

8  listed in the documents referred to above, as well as the listed attendees or participants in any of the

9  contacts in the Binder Documents.

10  Plaintiffs have not completed their discovery and preparation in this matter and their

11  investigation of the case is ongoing. Plaintiffs reserve the right to change or supplement this

12  response.

13  **INTERROGATORY NO. 3**

14  If You contend that Irico joined the alleged conspiracy with knowledge of the prior acts of

15  the conspiracy, Describe the facts that You rely on to support Your contention, Identify each

16  Document and all Testimony or responses to discovery in this action that You contend supports such

17  a contention, and Identify each Person who has knowledge concerning each contention.

18  **RESPONSE TO INTERROGATORY NO. 3:**

19  Plaintiffs object to this Interrogatory on the grounds that it is premature, and that it seeks to

20  impose an undue burden on Plaintiffs to state their case on an incomplete record and review and

21  analyze all information obtained in discovery thus far at this stage of this litigation.  Plaintiffs object

22  that this Interrogatory improperly requires Plaintiffs to marshal all evidence in support of their case,

23  including all testimony, in responses to written discovery, but particularly while discovery is

24  ongoing and in advance of the applicable deadlines set by the Court for disclosure of pretrial

25  information. The Irico Defendants have not completed their production of documents responsive to

26  Plaintiffs' requests for production. Among other things, they have produced neither sales invoices

27  nor a spreadsheet summarizing relevant information from them. Many of the documents the Irico

28

14

1    Defendants have produced were only produced recently, and Plaintiffs are still reviewing,

2    translating, and analyzing them. In addition, as the Special Master has determined, the Irico

3    Defendants have failed to provide adequate responses to Plaintiffs' interrogatories requesting core

4    information regarding their attendance at and participation in meetings with competitors and their

5    involvement in the operation of the conspiracy. The Irico Defendants have yet to make two key

6    witnesses available for deposition, and have refused to produce three others, thereby requiring

7    Plaintiffs to bring a motion to compel their attendance.

8        Plaintiffs further object to this Interrogatory to the extent it requires Plaintiffs to

9    compartmentalize evidence as proof of allegations in the Complaint instead of looking at it as a

10   whole, which is in contravention of well-established legal principles. *See In re CRT Antitrust*

11   *Litigation,* Master Docket No. 3:07-cv-05944 SC, Dkt. No. 2747, Order Adopting Recommended

12   Order of the Special Master, dated August 15, 2014; *Continental Ore Co. v. Union Carbide &*

13   *Carbon Corp.*, 370 U.S. 690, 699 (1962) ("The character and effect to a conspiracy are not to be

14   judged by dismembering it and viewing its separate parts, but only by looking at it as a whole."). *See*

15   *also Beltz Travel Service, Inc. v. Int'l Air Trans. Assoc.*, 620 F.2d 1360, 1366-67 (9th Cir. 1980)

16   (citing *United States v. Patten*, 226 U.S. 525, 544 (1913)). All conspirators are jointly liable for the

17   acts of their co-conspirators and the action of any of the conspirators in furtherance of the conspiracy

18   is, in law, the action of all. *Id.*

19       Plaintiffs further object that the individuals involved in the conspiracy did not always identify

20   their affiliation to a specific corporate entity or their job title in a manner that allows Plaintiffs to

21   sufficiently respond to this Interrogatory.

22       Plaintiffs further object to this interrogatory on the grounds that it is vague and ambiguous

23   as to the meaning of the undefined capitalized term "Describe." Plaintiffs further object to this

24   interrogatory on the grounds that it is vague and ambiguous as to the meaning of "joined,"

25   "knowledge," "prior acts," "each contention," and any intended difference between "alleged

26   conspiracy" and "conspiracy." Plaintiffs further object to this interrogatory on the grounds that it is

27   overbroad in demanding Plaintiffs identify "each Person" with knowledge of "each contention."

28

15

1  Plaintiffs further object to this interrogatory on the grounds that it is duplicative where it overlaps

2  with Interrogatory No. 2.

3        Subject to and without waiving the foregoing objections, Plaintiffs respond as follows:

4  Plaintiffs contend that, based on the documents cited in Plaintiffs' response to Interrogatory No. 2,

5  Irico joined the conspiracy at its inception in or around March 1995. These documents show that

6  Irico was meeting with its competitors "once every month" (IRI-CRT-00008427) from at least

7  August 1995—the date of the "founding meeting" of the "CRT Industry Association." IRI-CRT-

8  00004821. These documents further show that the participants at these meetings discussed and

9  agreed upon prices and exchanged sensitive future CRT production data. *See, e.g.*, IRI-CRT-

10 00008236; IRI-CRT-00008427. Given the evidence showing that Irico participated in the conspiracy

11 from its inception, Irico is jointly and severally liable for all acts of the conspiracy, Plaintiffs need

12 not show that Irico was aware of all other acts of the conspiracy prior to July 31, 1998.

13       In addition, numerous documents show that Irico regularly met bilaterally with its

14 competitors prior to July 31, 1998. *See* Response to RFA No. 7. These included meetings with

15 admitted conspirator Chunghwa Picture Tubes, Ltd.'s Chinese subsidiary Chunghwa Picture Tubes

16 Fuzhuo, Ltd., and show that Irico was considering joint ventures or other forms of technological

17 cooperation with defendants Toshiba and Thomson. Thus, even aside from Irico's attendance at the

18 monthly CRT Industry Meetings, Irico's regular contacts with members of the conspiracy ensured

19 that it was well informed regarding the global CRT market, and would have had knowledge of the

20 other CRT meetings that were occurring outside of China.

21       Plaintiffs believe the following individuals have knowledge relating to the foregoing: Wu

22 Yingzhong, Zhang Wenyi, Wang Lichang, Wu Weiren, JS Lu, SJ Yang, CC Liu, Sha Tao, Ma

23 Jinquan, Tao Kui, Xing Daoqin, Mu Haoping, Ma Shitai, Niu Wenjun, Li Zhuotai, and anyone else

24 listed in the documents referred to above, as well as the listed attendees or participants in any of the

25 contacts in the Binder Documents.

26       Plaintiffs have not completed their discovery and preparation in this matter and their

27 investigation of the case is ongoing. Plaintiffs reserve the right to change or supplement this

28

response.

Dated: February 23, 2022                    By: */s/ Mario N. Alioto*

                                            Mario N. Alioto (56433)
                                            Lauren C. Capurro (241151)
                                            TRUMP, ALIOTO, TRUMP & PRESCOTT LLP
                                            2001 Union Street, Suite 482
                                            San Francisco, CA 94123
                                            Telephone: (415) 563-7200
                                            Facsimile: (415) 346-0679
                                            malioto@tatp.com
                                            laurenrussell@tatp.com

                                            *Lead Counsel for Indirect Purchaser Plaintiff*

---

17

INDIRECT-PURCHASER PLAINTIFFS' OBJECTIONS AND RESPONSES TO THE IRICO DEFENDANTS'
SECOND SET OF INTERROGATORIES – MASTER FILE NO. CV-07-5944-JST, MDL NO. 1917

# EXHIBIT 11

# (FILED UNDER SEAL)

# EXHIBIT 12

# (FILED UNDER SEAL)

# EXHIBIT 13

# (FILED UNDER SEAL)

# EXHIBIT 14

# (FILED UNDER SEAL)

# EXHIBIT 15

# (FILED UNDER SEAL)

# EXHIBIT 16

# (FILED UNDER SEAL)

# EXHIBIT 17

# (FILED UNDER SEAL)

# EXHIBIT 18

# (FILED UNDER SEAL)

# EXHIBIT 19

# (FILED UNDER SEAL)

# EXHIBIT 20

# (FILED UNDER SEAL)

# EXHIBIT 21

# (FILED UNDER SEAL)

# EXHIBIT 22

# (FILED UNDER SEAL)

# EXHIBIT 23

# (FILED UNDER SEAL)

# EXHIBIT 24

# (FILED UNDER SEAL)

# EXHIBIT 25

# (FILED UNDER SEAL)

# EXHIBIT 26

# (FILED UNDER SEAL)

# EXHIBIT 27

# (FILED UNDER SEAL)

# EXHIBIT 28

# (FILED UNDER SEAL)

# EXHIBIT 29

# (FILED UNDER SEAL)

# EXHIBIT 30

# (FILED UNDER SEAL)

# EXHIBIT 31

# (FILED UNDER SEAL)

# EXHIBIT 32

## (FILED UNDER SEAL)

# EXHIBIT 33

# (FILED UNDER SEAL)

# EXHIBIT 34

# (FILED UNDER SEAL)

# EXHIBIT 35

# (FILED UNDER SEAL)

# EXHIBIT 36

# (FILED UNDER SEAL)

# **EXHIBIT 37**

# **(FILED UNDER SEAL)**

# EXHIBIT 38

# (FILED UNDER SEAL)

# EXHIBIT 39

# (FILED UNDER SEAL)

# EXHIBIT 40

# (FILED UNDER SEAL)

# EXHIBIT 41

# (FILED UNDER SEAL)

# EXHIBIT 42

# (FILED UNDER SEAL)

# EXHIBIT 43

# (FILED UNDER SEAL)

# EXHIBIT 44



July 24, 2023

**Certification**

**Welocalize Translations**

**TRANSLATOR'S DECLARATION:**

I, **Ann Chen**, hereby declare:

That I possess advanced knowledge of the Chinese and English languages. The attached Chinese into English translation has been translated by me and to the best of my knowledge and belief, it is a true and accurate translation of the document with bates number: IRI-CRT-00004673-74; IRI-CRT-00004746-52; IRI-CRT-00004757-64.

*(Digital or printed signature here above the line)*

*Ann Chen*

_____

**Ann Chen**

Project Number: <u>BBLLP_2307_P0029</u>

15 W. 37th Street 4th Floor
New York, NY 10018
212.581.8870



Fonds Number

Catalog Number

[Illegible] Company

[Illegible]

[Illegible]

Year

95

[Illegible]

Indefinite period

Docket Number

[Illegible]

| [illegible] | [illegible] | [illegible] |
|---|---|---|
| | | |

# Irico Group Co., Ltd.

## B01 Administrative Affairs

## Minutes of Administrative Work Meetings for 1995

| From January 1995 to October 1995 | Retention Period | Indefinite period |
|---|---|---|
| The volume has a total of 167 papers | File No. | |

| Fonds Number | Catalog Number | Docket Number |
|---|---|---|
| | | |

Confidential                    IRI-CRT-00004674_E Translation

069

# **Minutes of Meeting**

Name of Meeting: Administrative Work Meeting

Time: March 20, 1995

Venue: Conference room on the sixth floor of Irico Hotel

Chairman: Zhang Wenyi

Participants: Wu Yingzhong, Ji Qing, Wu Weiren, Wang Liguang, Tao Kui

Attendance without voting rights: Zhou Chen

Topic:

Recorded by: Li Wenfu

Confidential                                   IRI-CRT-00004746_E Translation

070

# Irico Electronics Group Co., Ltd.

Zhang Wenyi: In the morning of Last Friday, I received a fax and call from the Ministry of Electronics Industry about the issue of those factories in the south. The Ministry is going to have a meeting to discuss the issue about transferring MAC to Irico. Irico is going to move its headquarters to Beijing, so it is also possible to transfer the China Electronic Devices Industry Corporation to Irico. We're going to talk about this at today's meeting, and Wu Weiren and I will report to the Ministry tomorrow.

Wu Weiren: MAC is useless to us. I prefer Zhongkang ["中康", transliteration, the same below].

Zhang Wenyi: Is it possible to propose this under the modern enterprise system? Is it possible to give Irico the treatment as a joint venture when we acquire MAC? Will the income tax be reduced from 33% to 15%; Dare we acquire MAC under the premise that the interests payments are suspended and the payments will be made on yearly installment? Meanwhile, we are going to take all the shares of Zhongkang held by the Ministry of Electronics Industry, and request Shenzhen Municipal Government to establish the Shenzhen branch of Irico for us.

Ji Qing: The state has introduced a policy for enterprises running under deficit, so I think it's feasible.

    03556*945            Code       Page

Confidential                                IRI-CRT-00004747_E Translation

071

# Irico Electronics Group Co., Ltd.

Zhang: Glass bulbs are the only advantage of the Shenzhen factory, but we need to consider the influence of "Joining GATT". What should we do after (China) joining GATT?

I wonder, if the state approves our request, the renovation of MAC is still a great challenge after it being transferred to us. Under the worst scenario, can we move our 14" refurbish product production line there? Another choice is to do the renovation based on the original conditions.

Wu Yingzhong: I think we'd better give up MAC. I don't want us to carry this burden. Institute No. 6 ["六所", transliteration, the same below] has many good projects, which also requires us to increase capital investment and to strengthen the management. I believe that the Yellow River Factory in Shaanxi is going to be merged sooner and later, so I think we'd better give up MAC but Zhongkang is acceptable. Secondly, if the state offers a very favorable policy and requires no funding from Irico, we may give it a try.

03556*945                    Code            Page

Confidential                                IRI-CRT-00004748_E Translation

072

# Irico Electronics Group Co., Ltd.

Zhang Wenyi: Another issue is to complete the CI design in the second half of this year, so it is necessary to publicize Irico more extensively while acquiring Institute No. 6 and the factories in the south. As the group expands, the spending on social affairs will increase, including that on education (about RMB1 million), and that on art – to enhance the cultural taste of Irico. Buying famous Chinese paintings may be feasible.

In addition, we will review the profits and benefits this June. If we have constructive performance in the first half of this year, we may do something for the employees, such as renovating the balcony, etc., which is to be discussed by the labor union after June.

We have invested RMB20 million in Institute No. 6, so we may need to establish a team. Director Wu and I will have a trip to Beijing to work on this and push it forward, and in the meanwhile, Beijing headquarters may also work on it.

Ji Qing: The planning meeting of Institute No. 6 may be brought forward, which will be held from March 30 to April 1.

03556*945                        Code                Page

Confidential                                        IRI-CRT-00004749_E Translation

# Irico Electronics Group Co., Ltd.

Zhang: The planning meeting of Institute No. 6 is mainly going to address two   issues: one is the concept of industrial expansion and the other is to solve the problem of financial decentralization.

Director Wu: A visit to Chengdian ["成电", transliteration, the same below] may be arranged for Director Zhang to check and manage the projection tube issue.

Zhang: An announcement should be circulated to define the division of responsibilities of our heads after Factory Manager Ma leaves. Factory Manager Ji is responsible for import & export, the glass factory and the power station; Liguang is responsible for the sales company; Secretary Tao, Factory Manager Ji and Liguang, three of them are responsible for the business of the Xianyang headquarters.

I discussed the issue of the glass factory with HEG in Hong Kong. HEG will establish a joint venture in Xianyang to work on the post process of glass bulb, and the Xiangyang headquarters will be the major shareholder. We concluded a Letter of Intent and decided the schedule.

Factory Manager Ji and Liguang will be in charge of the internal renovation, for which the general principle is to minimize capital input to reduce future risks.

Wang Liguang: Firstly, we are going to apply for the certification of AAA Safety Enterprise this year, so we have, in the name of Director Zhang, invited Zhang Jinqiang, the Deputy Minister of the Ministry of Electronics Industry to pay a visit to our factory. Secondly, we have started to move the coils production equipment to the new site, but can we just move the convergent magnetic parts directly to Shenzhen, instead of transit at the new site? Otherwise, the current factory will not be large enough for CDT coils production during future expansion.

03556*945                          Code           Page

074

# Irico Electronics Group Co., Ltd.

Zhang: Liguang and Secretary Tao may discuss this issue (the coils and the convergent magnetic parts) to decide an appropriate place for them.

Director Wu: Mr. Harauchi (原内) of Toshiba is about to retire. He wants to visit Irico and requests an invitation letter from us.

Zhang: It's ok to send him an invitation letter.

Wu: The second thing, we have made the payment of RMB2 million for the projection tube project to Chengdian, so our technicians can patriciate in it now. I am thinking about sending some people from Irico and Institute No. 6 to Chengdian.

Zhang: It works.

Wu: Is Beijing headquarters going to be placed in Institution No.6?

Zhang: Yes, the headquarters is going to be placed in Institute No. 6. In principle, no headquarters building will be built in Beijing.

03556*945                          Code            Page

Confidential                                              IRI-CRT-00004751_E Translation

075

# Irico Electronics Group Co., Ltd.

<u>Tao Kui: Toshiba</u>

Name of Meeting: Irico Group & Institute No. 6 Joint Work Meeting

Time: April 2, 1995

Venue: Xiaotangshan Air Force Guest House, Beijing

Chairman: Zhang Wenyi

Participants: Zhang Wenyi, Xue Baoming, Li Manjun, Wu Yingzhong, Ji Qing, Xi Chengshan, Hu Lianjin, Liu [illegible]fu, Wen Lianglin

Attendance without voting rights: Xiong Guangqian, Li Wenfu

Topics: 1. Work contacts between the functional departments of Irico and Institute No. 6

2. Outline of the information engineering development plan

Recorded by: Li Wenfu

03556*945                              Code        Page

Confidential                              IRI-CRT-00004752_E Translation

080

# Minutes of Meeting

Name of Meeting: Administrative Work Meeting

Time: April 5, 1995 9:00

Venue: Conference room on the sixth floor of Irico Hotel

Chairman: Zhang Wenyi

Participants: Wu Yingzhong, Ji Qing, Wang Liguang, Tao Kui, Li Zuoting

Attendance without voting rights: Zhou Chen, Sun Shuili, Wang Jun

Topics: 1. Determination of the CIS design scheme and publicity
      2. House building plan reported by the labor union
      3. External development

Recorded by: Li Wenfu

Confidential                           IRI-CRT-00004757_E Translation

081

# Irico Electronics Group Co., Ltd.

Topic 1: Report on CIS design and determination of the logo of Irico Group.

There were 119 design schemes, and 10 were ultimately selected. Experts prefer No. 15 and No. 21.

It is agreed that experts may decide between No. 15 and No. 21.

Shuili: More work should be done on CI introduction and publicity. For the time being, Irico is "a barely-known industry leader".

I. Focuses of this year's publicity are the four aspects as follows:

1. "Start well and end well" – to get the CIS project well done;

2. To prepare publicity materials;

3. To prepare name cards, labels, suits, etc. when the CI design is done in September;

4. To hold a press conference, as well as a CI seminar lectured by experts.

II. We should make full use of news media to publicize ourselves.

1. To place advertisements on CCTV for three to six months;

2. To pose reports on People's Daily, China Electronics News, Shaanxi Daily and other three newspapers, which will cost RMB600,000 in total;

3. Erect semi-permanent advertising boards in Xi'an or Beijing;

4. To release short advertisements.

Confidential                                      IRI-CRT-00004758_E Translation

082

# Irico Electronics Group Co., Ltd.

III. We should join in some influencing social events:

    1. The World Conference on Women in September;

    2. The National Conference on Tourism, which will cost RMB1.5 million;

    3. The logo of "Irico City";

    4. Signs of the factory should be unified.


Zhang Wenyi: CI design should be accelerated. The determined logo should be most extensively publicized. A general scheme and the budget should be determined, which should be included in our budget plan.

Li Zuoting: Report the house building plan.

Principles: 1. 1,268 houses, including 632 commercial ones and 636 discounted ones;

    2. Employees without a house should be given priority to;

    3. The Administrative Department does not participate in determining house distribution plan in principle.


    176 houses of $67.19m^2$

    24 houses of $88.3m^2$

    72 houses of $93.5m^2$

    28 houses of $78.92m^2$

    142 houses of $88.3m^2$

    The house distribution plan and the queueing plan are to be determined by the labor union committee without the engagement of the Administrative Department.

Confidential                           IRI-CRT-00004759_E Translation

083

# Irico Electronics Group Co., Ltd.

Zhang Wenyi:

We performed excellently in the first quarter – in both sales and profits. The sale of 25" products picked up, and we expect that more than 500,000 will be sold by the end of the year. The profit tax for April is estimated to be around RMB250 million. Considering the circumstances of joining GATT, we will continue to export 14" products, and will increase the unit price of 14" products by RMB30 to RMB490 and the unit price of 18" products by RMB20. We are going to export 21" products, for real. Our 21" products are going to go global, and their unit price will be close to the global price of USD83. The 21" market will be boosted by export, and we should consider addition of 30,000 to 50,000 pieces of 21" products for export.   The key of sales is to focusing on several big clients.

External development:

1. The taking over and planning seminar of Institute No. 6 was successfully held.

Topics include: (1) Development of industrial control (up to RMB2 billion by 2000);

(2) Workstations;

(3) Displays will be a new growth point (up to RMB1 million sets by 2000);

(4) SPC exchanges and user-level and local exchanges (RMB2 million sets);

(5) Sales agency of microcomputers.

By 2000, the total income from sales will reach RMB6 to 7 billion and the profit tax will reach RMB1.6 to 1.7 billion. It will become the second primary business of the group.

2. The Ministry has discussed with us about the three factories in Shenzhen:

(1) MAC: The Ministry of Electronics Industry will hold 40% of the shares, and the liability amounts to USD70 million;

Confidential                                                           IRI-CRT-00004760_E Translation

084

# Irico Electronics Group Co., Ltd.

(2) Zhongkang: The loan totals RMB2.3 billion, and 40% of the shares were held;

(3) SEG-Hitachi: It has been performing well up to date.

On the whole, we are thinking about rejecting it as far as possible or forcing down the price as much as possible if it's unavoidable. We prefer MAC to go bankrupt and we taking over Zhongkong and SEG-Hitachi only. We are now in an uncertain situation, and it may take long.

3. The three factories in the province

We maintain a positive attitude toward the three factories in the province and suggest step-by-step actions and wait for opportunity. We may talk to the heads after the report comes out.

It is enough for Xianyang to have tubes, and the communication part will be developed in Institute No. 6. Whole machine is the only part we are lacking now. Director Wu (武总) and I will go to Japan and discuss with Toshiba about this issue. We can build a new joint-venture for producing whole machine, and it is less burdensome than taking over an old factory.

4. The cooperation with Chengdian on projection tubes has been concluded

It is a product for future and we'd better keep it confidential for now as the school is under pressure. We entered into an agreement this time, and Liguang is going to take equipment management personnel there to check it on. Technology personnel should participate in it for early technical integration. If the products can be launched in the market one or two years later, they will be our new generation of products.

Wang Liguang: I retain the contact information of Fujitsu on my last trip to Japan.

Zhang: Send the name card to Director Li Manjun so that they can get in touch.

Confidential                                      IRI-CRT-00004761_E Translation

085

# Irico Electronics Group Co., Ltd.

Wang Liguang: 1. Report on the progress of the 14" refurbish product production line.

2. As to the assessment of AAA Safety Enterprise from April 9 to 11, Li Yuxiang of the Department of Economic Operations, Ministry of Electronics Industry is appointed as the team leader. Preparations are complete.

3. The current daily output is 21,000 to 22,000 CPTs on average, and the yield rate is 96.3%. It is estimated that the annual output will be 5.6 million this year. The quality and user first pass rate will be 99.3%.

4. About the deflection coil project in Changsha:

(1) It is commenced ahead of schedule; (2) So as the second phase.

Zhang Wenyi:

Lin Guoliang proposed us to build a new production line in Fujian for him and to build another line in the Philippines. A Greek businessman   wants us to invest in a 14" post-process line in Greece. Communications on the above may start now, and the picture will be clear after we complete the 14" refurbish product production line. It will help us to be known around the world.

Wu Yingzhong:

We can take 15% of the technological shares of the Changsha project, and contribute to invest 10% more shares to make our shares up to 25%.

- I agree that we may not be a controlling shareholder but we can take some of the technological shares and contribute a little more.

- The other opinion is that we may sell technology and contract projects.

Tao Kui:

Report on the last talk with Toshiba about the jointly-invested fluorescent powder project.

Zhang: I disagree to the joint investment in the fluorescent powder project with Toshiba since the project is highly profitable.

Confidential                                              IRI-CRT-00004762_E Translation

# Irico Electronics Group Co., Ltd.

Foreign investors can only become the minority shareholders in this project if we introduce foreign investment, and we must be in control of the manufacturing and operation. We should also include the foreign companies of our own in the foreign investment.

In addition, we can discuss with Toshiba for a lamp powder joint venture, because we already have the technology for CPT powder.

Tao Kui:

The issue with Hongtian ["虹天", transliteration] has been addressed, and we have got the RMB500,000 back.

The project in Kunshan is to undergo acceptance inspection in April, and preparations have been done.

Zhang:

With the appreciation of the Japanese Yen, we should tell the Import & Export Company to explore the American or European markets for the equipment that we ordered from Japan before. We can arrange a field survey and gradually transfer the orders from Japan.

Ji Qing:

Concerning the issue of signing contracts with externals and the regulation on employees going abroad, the power and technical center has something to do with that.

Zhang: Equipment contract and the appointment of employees going abroad can't be combined for signing. We can only sign equipment contract now, and the issue of employees going abroad should be addressed separately. And it should be discussed with the HR department whether internship is needed for the same equipment newly purchased.

Confidential                                      IRI-CRT-00004763_E Translation

# Irico Electronics Group Co., Ltd.

Wu:

There have been a lot of issues concerning development recently, so we need to decide the priorities. In my opinion, the priorities should be given to the base in Xianyan and the information business of Institute No. 6. In addition, the projection tube, the whole machine business and glass business should be developed. We should preserve some lands in Xianyang, and add colored glass bulb business in Xianyang. I think we'd better submit a report to the state now.

(1) There have been quite a lot of demands for CDTs, and the price rebounds. We should take this opportunity to boost the growth of mass production output of CDTs. The step-by-step implementation of CDT will be discussed during this visit to Toshiba.

(2) With regard to the projection tube issue, Factory Manager Ji and Wang Liguang, please discuss the dispatching of staff and make a decision on the personnel.

Zhang: When Director Wu (武总) and I are out, Wang and Tao are the responsible persons for the factory and the (key focuses) are still quality and safety.

Confidential                                          IRI-CRT-00004764_E Translation

# EXHIBIT 45



**TRANSPERFECT**

City of New York, State of New York, County of New York

I, Dan McCourt, hereby certify that the document "**IRI-CRT-00004769-773**" is, to the best of my knowledge and belief, a true and accurate translation from Chinese into English.

_____
Dan McCourt

Sworn to before me this
September 14, 2022

_____
Signature, Notary Public



_____
Stamp, Notary Public

Exhibit
Wang 8557
Wang Zhaojie - V1



City of New York, State of New York, County of New York

I, Dan McCourt, hereby certify that the document "**IRI-CRT-00004673_769**" is, to the best of my knowledge and belief, a true and accurate translation from Chinese into English.

Dan McCourt

Sworn to before me this
September 6, 2022

Signature, Notary Public



Stamp, Notary Public

*091*

**Minutes of Meeting**

| | |
|---|---|
| Name of Meetings: | *Administrative meeting* |
| Time: | *April 28, 1995* |
| Venue: | *Conference room on the sixth floor of Caihong Hotel* |
| Chairman: | *Zhang Wenyi* |
| Participants: | *Xue Baoming, Wu Yingzhong, Ji Qing, Wang Liguang, Tao Kui, Li Zuoting* |
| Attendance without voting rights: | *Niu Wenjun, Li Wenfu* |
| Topic: | |
| Recorded by: | *Li Wenfu* |

*092*

**Caihong Electronics Group Corp.**
**CAIHONG ELECTRONICS GROUP CORP.**

*Zhang Wenyi: We are holding a meeting. The factory is in an excellent position, and we have passed the special safety assessment.*

*The output this month is 540,000, and we reported 510,000. On the whole, the situation at the headquarters is great, so the publicity effort for Caihong headquarters should be stepped up. The achievements that we have made would not have been possible without everybody's hard work. As for the internal imbalance of management and the different levels of different units, we should inform our employees through various channels.*

*Each unit should learn from the Plant No. 2 and set a progressive example for our management. Management cannot relent by any means; the achievements that we have made this year, in spite of the fact that our leaders have been busy running around outside, indicate that our mechanism adjustment is successful.*

*Internal management is our basis. Our experience for success over the past few years can be summed up in two points: 1. strict internal management; 2. continuous technological transformation.*

*All leaders, now I will report on Chief Wu's and my visit to Japan this time. Toshiba indeed wants to cooperate with Caihong and thinks highly of Caihong. The results of our negotiations with Toshiba were excellent: we signed two agreements, one about whole sets, and the other about technical aid relating to tubes, including 16:9, CDT.*

*In addition, we also talked about a joint venture on fluorescent powder as well as the SAW filter project in Zhuzhou. If Toshiba wants to establish a joint venture on fluorescent powder, it must be expanded to cover powder for power-saving lamps and then be extended to power-saving lamp projects.*

*092*

### Caihong Electronics Group Corp.
### CAIHONG ELECTRONICS GROUP CORP.

*Zhang Wenyi: We are holding a meeting. The factory is in an excellent position, and we have passed the special safety assessment.*

*The output this month is 540,000, and we reported 510,000. On the whole, the situation at the headquarters is great, so the publicity effort for Caihong headquarters should be stepped up. The achievements that we have made would not have been possible without everybody's hard work. As for the internal imbalance of management and the different levels of different units, we should inform our employees through various channels.*

*Each unit should learn from the Plant No. 2 and set a progressive example for our management. Management cannot relent by any means; the achievements that we have made this year, in spite of the fact that our leaders have been busy running around outside, indicate that our mechanism adjustment is successful.*

*Internal management is our basis. Our experience for success over the past few years can be summed up in two points: 1. strict internal management; 2. continuous technological transformation.*

*All leaders, now I will report on Chief Wu's and my visit to Japan this time. Toshiba indeed wants to cooperate with Caihong and thinks highly of Caihong. The results of our negotiations with Toshiba were excellent: we signed two agreements, one about whole sets, and the other about technical aid relating to tubes, including 16:9, CDT.*

*In addition, we also talked about a joint venture on fluorescent powder as well as the SAW filter project in Zhuzhou. If Toshiba wants to establish a joint venture on fluorescent powder, it must be expanded to cover powder for power-saving lamps and then be extended to power-saving lamp projects.*

**Caihong Electronics Group Corp.**
**CAIHONG ELECTRONICS GROUP CORP.**

*Lastly, we held talks with Asahi Glass Company for half a day, during which they proposed setting up a joint venture with us to develop glass bulbs. Asahi Glass Company is prepared to set up two joint ventures in China: one has been determined with Shanghai, and it plans to set up the other with Xianyang. As the prospect with Zhongkang, among others, is not yet clear, I have not agreed to it.*

*We also exchanged opinions with Marubeni, Nichimen and other companies this time. Japan is now developing rapidly in communications, so we can have contact with them on that front as well.*

*The third issue pertains to the tasks that the Ministry and Province plan to assign to us.*

*All in all, having some external enterprises assigned to us is an opportunity for us, but we need to adhere to two principles: 1. the interests of our headquarters cannot be affected; 2. we need to further develop and expand Caihong. Only under these two conditions can we discuss the issue with the Ministry and Province.*

*The Ministry has made it clear that it will assign China Electronic Device Company to Caihong, and the official document will be issued very soon. The main business of China Electronic Device Company is in Shenzhen, with MAC accounting for 40% and Zhongkang and SEG Hitachi being dormant shareholders. One thing that the Ministry has clarified for the time being is that it will assign the shares of China Electronic Device Company to Caihong, and the second step is to transfer the shares of CEC to Caihong. Besides, some trading companies will also be involved.*

*MAC has a total of RMB1.25 billion (equity capital + liabilities) × 40% = RMB500 million to be transferred to Caihong.*

*Operation schemes: 1. Continue to develop CRT business;*

*094*

**Caihong Electronics Group Corporation**
**CAIHONG ELECTRONICS GROUP CORP.**

*2. Establish a joint venture with Toshiba in the factory of MAC to develop TV sets;*

*3. Continue to negotiate with South Korean company Samsung on the MAC matter to sell it to Samsung;*

*This actually means getting rid of MAC and then cooperating with Toshiba to develop CTV and CRT business in Dalian.*

*The fourth issue concerns the three TV set factories that the Province plans to assign.*

*Firstly, we should put forward conditions to the Province. (1) Can the Province approve our joint-venture glass bulb factory? And the product structure must be adjusted. Deploy a project in the Ruyi Factory or facilitate the formation of a joint venture between Konka and Ruyi. The problem with the Huanghe Factory is the most troublesome, as it is a listed company with strong strength. The fridge business of Huanghe should be transferred out of our hands, so that we can focus on developing CTVs; meanwhile, the technology of Toshiba should be imported. The nationwide sales network of China Materials and Equipment Corporation should be integrated as the exclusive sales network of Caihong.*

*As for the Haiyan Factory, we can simply let it go bankrupt. If not, we can develop it into a Pianzhuan Factory worth RMB4 million.*

*Dear leaders, please digest all the material first. A leadership meeting will soon be held for two and a half days, from the afternoon of May 3 through May 5. We will strive to hold a plenary meeting for all middle-level cadres around May 10, if possible.*

*1.   The operations of projects;*

*2.   The organizational guarantee and cadre support for completing such operations; Headquarters relocation to Beijing, [illegible] cadres; provincial organizational leadership, and negotiations on southern matters.*

091

# 会 议 记 录

会议名称：行政办公会

会议时间：1995年4月28日

会议地点：新虹宾馆六楼会议室

主 持 人：张文戎

出席人员：薛宝明．武英忠、吉状、王季广
陶魁，李作亭

列席人员：牛文军，李恩夫

会议议题：

记 录 人：李恩夫

IRI-CRT-00004769

# 彩虹电子集团公司

## CAIHONG   ELECTRONICS   GROUP   CORP.

张众义：开了会。厂里的形势仍旧不错，安全特评已通过。

本月产量54万，上报51万，总的来说大本营的形势仍旧好，所以对彩虹大本营的宣传要加强。现在取得的成绩也是大家辛苦干这事的；管理上内部不平衡，各单位水平不一样，我们要通过今年理顺又抓公正评。

各单位要向二厂去学习，树立我们的管理先进样板。管理绝对不能松懈；从今年来看我们的领导能长时间的在外面跑，厂内还能取得这样的成绩，说明我们的机制设调整是成功的。

内部的管理是我们的基础，这几年的成功经验主要是两条：一个是内部的严格管理，二是不断的进行技术改造。

这次我和武总去日本的情况向各位领导汇报一下。东芝确实想和彩虹合作，对彩虹的运作相当了。和东芝谈的结果相当好，签订了两个协议书，一个是整机，另一个是管子方面的技术援助，包括16:9, CDT。

除此之外，又谈了荧光粉的合资和株洲的声表滤波器项目。东芝如要投荧光粉合资必须扩大至节能灯用粉，再延伸至节能灯项目。

Confidential

# 彩虹电子集团公司

## CAIHONG ELECTRONICS GROUP CORP.

张效义：开了会。厂里的形势仍然不错，安全特评已通过。

本月产量54万，上报51万。总的来说大本营的形势仍然好，所以对彩虹大本营的宣传要加强。现在取得的成绩也是大家辛苦干出来的；管理上内部不平衡、各单位水平不一样，我们要通过多种渠道又搞点工评。

各单位要向二厂去学习，树立我们的管理先进样板。管理绝对不能松懈；从今年来看我们的领导能花时间的在外面跑，厂内还能取得这样的成绩，说明我们的机制（改）调整是成功的。

内部的管理是我们的基石，这几年的成功归根就是两条：一是内部的严格管理，二是不断的进行技术改造。

这次我和武总去日本的情况向各位领导汇报一下。东芝确实想和彩虹合作，对彩虹的评价很高了。和东芝谈的结果相当好，签订了两个协议书，一个是整机，一个是电子方面的技术援助，包括16：9、CDT。

除此之外，又谈了荧光粉的合资，和稀土的声表滤波器。东芝如要搞荧光粉合资必须扩大至节能灯用粉，再建电至节能灯工项目

Confidential



CAIHONG   ELECTRONICS   GROUP   CORP.

最后同旭硝子又谈了半天，提出来同我们合资持股
走项目。旭硝子准备在中国投两家，同上海的已确定，另
一家就准备同咸阳合投。因中康方面不明朗，所以我还
未同意。

此次还同丸红、旧佛其商社交换了意见，日本现在
走通讯方面发展很快，也可以联合。

第三了就是部。有信我们的任务。

总的来说外国的一些企业交给我们是一个机遇，
但是对我们来说要把握两条：一不能影响大本营的利
益；二是要进一步发展，壮大利也。只有在这两个条件下，
才去同部，有去误。

部里已明确要把中国电子器件公司交给彩虹，交件
很快要下来。器件公司主要的产业在深圳，MAC占40%，
中康是暗股，赛格日立也是暗股。部里暂时明确的
一季是把器件公司的股份交给彩虹，第二季是把CEC
的股份交给彩虹。除此之外还有一些贸易公司。
MAC共12.5亿元（股本金十债务）×40%＝5.亿元
要划给彩虹。
操作方案：一是继续做彩管。



**CAIHONG ELECTRONICS GROUP CORP.**

二是在MAC工房同东芝合资的TV；

三、MAC继续同南韩三星去谈，卖给三星公司；

实际将MAC又卖出去，然后在大连同东芝搞CTV和彩管。

第四项了就是省里提出的三个电视机厂的了。

一、对有些要条件，①省里能否把我们的合资玻壳厂，其结构一定要调整。盘如意厂放一了顺，或使成康佳和如意的合资。黄河厂的问题最麻烦，因是一个上市公司，但实力还是弱的。把黄河的冰箱卖出去，集中力量去搞CTV，同时把东芝的技术拿进来。把中国物资器材公司的全国销售网并入世华，专销彩虹的销售网。

海燕厂就让他破产算了，实在不行去海燕搞400万的偏转厂。

请各位领导先简化一下资料。5月3日下午至5月5日开1两天半的领导会，力争至5月10日左右开全体中层干部会。

一是项目的运做；

二是完成这些运做的组织保证，干部问题。

总部班子，干层干部：省里但位班子，南方的问题没判问题。

# EXHIBIT 46



July 24, 2023

**Certification**

**Welocalize Translations**

**TRANSLATOR'S DECLARATION:**

I, **Ann Chen**, hereby declare:

That I possess advanced knowledge of the Chinese and English languages. The attached Chinese into English translation has been translated by me and to the best of my knowledge and belief, it is a true and accurate translation of the document with bates number: IRI-CRT-00008248; IRI-CRT-00008316-332; IRI-CRT-8340-8360; IRI-CRT-00008425-8432.

*(Digital or printed signature here above the line)*

_____

**Ann Chen**

Project Number: *BBLLP_2307_P0029*

15 W. 37th Street 4th Floor
New York, NY 10018
212.581.8870



**Irico Color Picture Tube General Factory**

**B01 Administrative Affairs**

**Minutes of General Factory**

**Administrative Work Meeting for 1998**

| | | |
|---|---|---|
| From January 1998 to December 1998 | Retention Period | Indefinite period |
| The volume has a total of 179 papers | File No. | |

| Fonds Number | Catalog number | Docket Number |
|---|---|---|
| | | |

# Minutes of Meeting

**Name of Meetings:** Administrative Work Meeting

**Time:** May 15, 1998 15:30 PM

**Venue:** Conference room on the sixth floor of Irico Hotel

**Chairman:** Wu Weiren

**Participants:** Xue Baoming, Wu Yingzhong, Ma Jinquan, Tao Kui, Xing Daoqin, Li Zuoting, Mu Haoping, Ma Shitai

**Attendance without voting rights:**

**Topics of the meeting:** 1. Report the user visits situation (Ma Jinquan)

2. Report the recent situation related to technology and quality (Wu Yingzhong)

3. Report the Audit Commissioner-related information (Mu Haoping)

4. Report the US trip-related situation (Ma Shitai)

**Recorded by:**

CONFIDENTIAL                                        IRI-CRT-00008316_E Translation

**Irico Group Corporation**
**Irico Color Picture Tube General Factory**

Factory Manager Ma: Recently (I) visited Furi Company and XOCECO. Tube supply to these factories has been cut off these few years. They keep our past problems in mind freshly, especially both parties lacking communication. Some issues we have solved, but they don't know. It seems that sales cannot be focusing on the sales only, instead sales should enhance [illegible] and the communications with quality control department. We need to go out, and invite other people in, inviting user's technical department to our factory for discussion.

We talked to the top leaders and the technical departments this time. The next step is to increase the supply to them. Many of their products are for export.

In addition, we went to Chunghwa. Factory A has been put into production and there are still B and C. The output of CDT alone reached 10 million. Black and white picture tube, 3 to 4 million. Color picture tubes, 10 million to 14 million. There is production line in Malaysia, and they have highly automatic mode. The factory is very clean. You don't need to change the clothes and shoes by using the visitor's path . ITC is semi-automatic adjustment. We should also consider automation. We have brought 15 electron guns back to the factory for testing.

The relationship between XOCECO and our factory is okay. (They) ordered 90,000 pieces from us last year and have ordered 380,000 pieces this year (several types). The production output of this year is 1 million. When we arrived there, they were negotiating about cooperation in terms of cellphone processing with Changhong (长虹).

Page 1

CONFIDENTIAL                                          IRI-CRT-00008317_E Translation

**Irico Group Corporation**
**Irico Color Picture Tube General Factory**

XOCECO added 3,000 pieces of 14" this month, and also added some of 21" and 25". It is not optimistic about [illegible]. But price cannot be changed. The quantity must be ensured. In these several months, Konka is our main user. Changhong demands 50,000 per month from May. [illegible] ordered 25".

Accounting records show there are 15,000 0.39 CDT, but in reality there are only more than 1,000. Guangli has submitted a report. Samsung also wants them. But we are a little worried about the quality. They are using Chunghwa [illegible]. Whether to continue the supplies in the next step, we need to consider and analyze whether the production of 0.39 CDT can be restored.

14" has basically reached the balance of production and sales. Sales of 21" increases. The production of 25" may be less than 100,000. Price reduction may be required if the goods cannot be sold. Konka proposed a price of 860. What we execute now is 960.

With regard of sales, recently we should take advantage of the low season to enhance the communication with our clients. We will go to Dalian on Sunday to join the commencement ceremony of Toshiba.

We need to pay visits to any potential users. No matter how few is the quantity, we still need to consider it. Many a little makes a mickle. The market situation is relatively severe, and we must do everything possible to increase sales. For the users having no payment ability (cash), we need to keep [illegible]. Also, sales should be expanded by sales through the operation company.

Page 2

IRI-CRT-00008318_E Translation

**Irico Group Corporation**
**Irico Color Picture Tube General Factory**

065

The sales volume by the end of the month is 130,000 and in June is 100,000.

Director Wu (吴总): Being able to maintain the price of 25" at RMB900 is not bad. If unable, we shall decrease the price in advance so as to sell more.

Director Wu (武总): The quality of April is stable. There are a few problems. From May 20 to 22, Changhong will hold a meeting in Mian Yang and request all parts factories to attend. During the meeting, the product quality of each factory will be announced, and factories are required to sign a technology, quality and compensation agreement. In addition, [illegible] is invited there to certify the color picture tubes. The 25" of our factory has not gone through certification. So we can invite [illegible] come to our factory to do spot checking on color picture tubes. For technology and quality, agreements will be entered into by these two departments. The quality reward and punishment agreement will not be entered into at present, but we need to get prepared. If other peers sign such agreement, we need to do so as well (signing by sales companies). We need to designate team to Changhong to participate in the meeting. We'll decide on who will go.

Factory Manager Ma: I recommend Director Wu (武总) go to participate in the meeting.

Page 3

CONFIDENTIAL                    IRI-CRT-00008319_E Translation

**Irico Group Corporation**
**Irico Color Picture Tube General Factory**

Director Wu (武总): The second issue is that Changhong is our main client and they reported two problems. The first one is the purity of color. We adjust and test it in a reverse way. The current problems can be solved but not thoroughly. It is proposed to restore the AD work process. The proposal has been reported to the Economic and Legal department (the investment is about RMB8 million). My advice is to make the decision soon and get it done as quick as possible (there are space available). And mainly because the spending is reasonable.

Director Wu (吴总): Factory Manager Ma please follow through the implementation of the proposal. [illegible].

Director Wu (武总): Hold a meeting to unify the thoughts. If we want to guarantee sales, we need to solve the problems raised by the users. It will take four months to complete the matter. The second problem, UFO (unidentified flying objects). When you open the machine, there are little spot glittering and it will disappear after 3 or 5 seconds. We have solved it basically by adjusting the process. Shanghai Novel has such a problem too and they didn't solve the problem well. Changhong has removed their products. With regard to our tubes, Changhong thinks such problem still exists. But the overall situation is better. Spot glittering for 1 second exist in some individual tubes and the glittering may exist for 3 to 4 seconds if the problem is serious. Graphite and a bit of phosphor were found while solving the problem. We need to send someone to Changhong to take a look. I think we didn't communicate enough with the users about the information. We can pre-select the tubes in our factory before selling to Changhong. The second is black spot. I feel for the interest of the general factory, we should check them thoroughly and make the use of them as much as possible.

Page 4

CONFIDENTIAL                                    IRI-CRT-00008320_E Translation

**Irico Group Corporation**
**Irico Color Picture Tube General Factory**

Director Wu (吴总): Check all of them thoroughly.

Factory Manager Xing: The main issue of Glass is that 50 tubes were exploded during the evening shift. Morning shift is better. Originally, we thought about recoding the batch number of stained sand production. The main problem is that dust prevention cannot be solved.

Director Wu (武总): We should take the use of 21" as much as possible. General factory production department and assessment department need to take this special factor into consideration.

Factory Manager Xing: For the glass, we can offer more profit to Factory 2.

Director Wu (武总): Fourthly, the issue of 14" and 0.29 export to Philips. Xiao Wei thinks that we should choose one to sell to Philips. In this way, the remaining one will be hard to sell. The sample tube has been sent. Taiwan and Japan also did and the sample tubes are also qualified.

Factory Manager Ma: We have to do this (2000 pieces). They have already bought DY.

Director Wu (武总): Import and Export (company) hopes to do this. Factory One has to arrange two shifts. The risk they have to bear is high. There are two tubes with low air pressure not up to the standards and we cannot do the test We need to think about this and reject it if it doesn't work.

Page 6

CONFIDENTIAL

IRI-CRT-00008321_E Translation

**Irico Group Corporation**
**Irico Color Picture Tube General Factory**

Factory Manager Ma: There is no problem with sample tubes. The main problem is price.

Director Wu (武总): About poor conduction of Factory One [illegible], the main issue is that the device introduced from Hitachi has been discarded 2 years ago. The problem only appeared in the initial stage after we introduced device and it didn't appear again. The Toshiba device has a high current in a short period of time. We transformed to Toshiba device. But recently it appeared again. I think the testing condition should not be changed. It is requested to restore to the device introduced from Hitachi (20,000 times, 30,000 times), which has a small current and high frequency. RMB50,000 is planned for this device.

It actually is a large factory after we centralized management of electron gun. The cadres worked very hard. But currently there are still many problems. The technology and quality personnel are insufficient in the management level. After the routine meeting, it has been improved but not too much. It is not easy to have no big issue during the movement of electron gun (factory). Currently there are still problems with electron gun. In terms of the quality control, we need to figure out a way for assessment. It is suggested that one of the Factory Managers can be chosen from technical staff. Who can be the one? That one can be chosen either from electron gun factory or from technical center. If we choose one who wants to leave the technical center as the candidate, then he can work as an assistant manager from the beginning. The candidate can also be chosen from electron gun factory.

Page 7

CONFIDENTIAL

IRI-CRT-00008322_E Translation

**Irico Group Corporation**
**Irico Color Picture Tube General Factory**

Director Ma: After [illegible] left, there is no one in the technology department. Originally, we wanted Liu Wendi to take the position but he himself wanted to leave. Is it possible to move him to electron gun (factory) because he reported that he wanted to go to the electron gun (factory).

Factory Manager Ma: [illegible] has a good influence on Liu Wendi. I think we can prompt him to be the assistant first.

Director Wu (武总): I agree to prompt Liu Wendi.

Director Wu (吴总): If everyone agrees, that will be OK. We need to talk to Factory Manager Ma and Director Wu (武总).

Director Wu (武总): Another issue is about the 700 line patents. Zhao Xia　and Xiao Peng went to Jiao Tong University for the cooperation on 25". 21" is developed by ourselves and is not a joint project. They submitted the patent application and our factory approved. Now they want to leave. Jiao Tong University raised concerns on it and requested for a joint application.

Director Ma: The originally approved patent applications were returned because the materials are not completed. So far, the materials have not been completed yet. Jiao Tong University proposed joint application (Mainly worry about that Zhao Xia will submit the application first in Shenzhen) and I have approved it and stamped it with company seal.

Secretary Xue, Factory Manager Ma, we should follow up after submitting the application

Director Wu (武总): The projection lens ordered from the U.S has arrived. The effect [illegible].

Page 8

CONFIDENTIAL                                        IRI-CRT-00008323_E Translation

**Irico Group Corporation**
**Irico Color Picture Tube General Factory**

Director Ma: Next week, all the managers will take a look at it together.

Director Wu (武总): Details will not be reported. We will determine after seeing it. It mainly involves in the direction of next step.

About the 700 line tube, mold has been ordered. Due to our [illegible], [illegible] ordered from SEG first.

Director Ma: From April 22 to May 2, the situation of USPL's visit. They introduced design, quality, market and other issues. Domestic factories are all manual workshops, but American factories are all automated, computer-controlled, and [we] powerful. But four [illegible] machine are all two meters to three meters. The quantity is big at one time.

I explained our requirements (3" lens). We have gone through all the parameters. The effect, firstly, they have the capability to do it. Secondly, price and quantity. Now their price is RMB150/unit. Mold fee needs to be shared. Mold is required for order of over 1,000 sets, the cost can be amortized or can be paid in one time. For order of only hundreds of sets, no payment verification is required, however the unit price is higher. We order 3 sets first for trial use, which will be delivered in July. Because their leader who is in charge of technology is not here, the contract will not be signed until he returns.

Page 9

CONFIDENTIAL                    IRI-CRT-00008324_E Translation

**Irico Group Corporation**
**Irico Color Picture Tube General Factory**

We discussed the market issues with them as well. Firstly, he didn't know much about the China market, and he hopes to visit China soon in 1998. Secondly, he is interested in the Chinese market. Thirdly, we can start from the cooperation on 3" lens. I already faxed to them to invite them to come here.

The cheapest projector is USD900 (46"). There are lots on the market priced at more than 1,000 or more than 2,000.

Factory Manager Ma: Furi 52", RMB28,000-RMB29,000.

Director Ma: Furi (product) has good quality. The tube is from Hitachi-America. USPL Company thinks the development of LCD and PDP has a great effect on projector. The sales volume is slowing down in recent years.

Director Mu: From April 28 to May 4. HR department holds a training class. About the situation of the audit commissioner.

There are 21 audit commissioners in total. This time, the state puts a high value on implementing this management method. In fact, it is the board of supervisors assigned by the State Council to enterprises. In 1994, the state issued regulations, but they were not implemented, and now the state is determined to implement them.

Page 10

CONFIDENTIAL                              IRI-CRT-00008325_E Translation

**Irico Group Corporation**
**Irico Color Picture Tube General Factory**

Their responsibilities include the four aspects: 1. audit the financial status of the enterprises 2. Manage the loss of state assets 3. Audit the rick management of the enterprises 4. Evaluation Leadership Team

Method: check balance book, [illegible] does not involve the sales.

Key of the audit: group companies, main companies, overseas companies Before the audit commissioners arrive: The enterprise shall prepare and submit the accounting vouchers and materials (they arrive on July 25th) (according to western audit standards). Departments involved are financial, sales, administrative office and technology, which is complex.

Preliminary arrangement: Have a meeting on next Wednesday and Thursday to make sure we submit the materials before June 30th. The Group, the General Factory, Devices Company (Display Devices), Inner Mongolia (TV factory) are requested to submit all the materials. Caizhu, No.1 Radio Factory of Xi'an, [illegible], Supplementary business company [illegible] are requested to submit main materials. We are going to submit 10 sets of materials.

Factory Manager Xing: Production arrangement of 15" CDT. The related department repeatedly advanced the planned arrangement, the loss should be controlled under 100 million. We set up a preliminary plan.

Page 11

CONFIDENTIAL                                  IRI-CRT-00008326_E Translation

**Irico Group Corporation**
**Irico Color Picture Tube General Factory**

June, 22,000. July, 18,000. August, 18,000. [illegible], loss of more than 103,750,000 for the whole year.

If the quantity can go up with a better yield rate, it may lose less.

Adjustments can be made only after the plan is released. Taking quality control, adding investment control (shadow mask, electron gun and etc.) and reversed screen control.

About the supporting components, it has been reported according to the condition of the annual plan. After the glass bulb and two production line [illegible]. We began to produce 21" screen. 135,000 per production line has reached in September. 15" screen has not been considered yet[illegible]. [illegible] Cone 21" 250,000/line to ensure self-supply. [illegible]. 25" cone target [illegible]190,000/line, realizing complete self-supply. 15" cone will be determined later.

[illegible]: In May, 220,000 21" were sold. [illegible]. It will reach 100% self-supply in November and we will try to push the date forward. 0 25" reached 40,000 in May and 80,000 in August. 20% of 25" were purchased from externals. The general management office will calculate the deficiency in the late every month and material company is responsible for the purchase.

Shadow mask: Except for the guarantee for 14", all the rest are used for producing 21". Generating a mass production report.

Electron gun: 120,000 25" [illegible] in July. 15" CDT for certification.

Page 12

CONFIDENTIAL                                        IRI-CRT-00008327_E Translation

**Irico Group Corporation**
**Irico Color Picture Tube General Factory**

SR [illegible] needs renovation, processed to produce.

Renovation of the furnace for screen: transformation Refractory material on May 11 and 17. Tao proposed [illegible] May 20 during transformation. Another meeting will be held next week to discuss arrangement.

Natural gas. From last week, [illegible] begins to switch the gun (glass). The actual usage is more accurate than the test. Next week, 202 furnace will switch for use. The full switch will be done in June. The remaining will be switched after cooling down.

Director Mu: The cost is a little bit higher by using natural gas.

Factory Manager Xing: Only after the quantity goes up, we can tell whether it is stable.

Secretary Xue: Don't post information we shouldn't post.

Chairman Li: The approval procedures for the third phase of the Rainbow Residential District Project have been completed. [illegible] takes 6 units. In principle, 78 m² two rooms face the south, and one room faces the north. We can also build some 3-bedroom units of 78 m². 88 m² is the plan and it has been improved in phase 1 and 2. We take the samples of recent years from the province as the reference and will not ask for further opinion from lower level.

Secretary Xue: That is OK to make a decision, no need to ask for opinions.

Page 13

CONFIDENTIAL                          IRI-CRT-00008328_E Translation

**Irico Group Corporation**
**Irico Color Picture Tube General Factory**

Li Zuoting: 1,000 units, 3:7 (88, 78)

Director Wu (吴总): 5.5 (78 m$^2$: 88 m$^2$)

Secretary Tao: 3:7
Li Zuoting: Separate queues.

Director Wu (吴总): Build more units with big square footage.

Secretary Tao: Not [illegible] line up.
Director Ma: Put the room of 88 m$^2$ together with 78 m$^2$ on the waiting list and distribute them together [illegible].
Secretary Xue: 4:6. Some units should be saved for the technology personnel. Some units should be saved for introduced experts and some units should be saved for future (One building).
Secretary Tao: We need to analyze the personnel situation.

Director Wu (吴总): There are a lot of personnel changes. You can discuss this issue, so there is no need to discuss it here.

Director Wu (武总): That will be OK as long as you can come up with one proposal.
Li Zuoting: [illegible] HR can hold a meeting and comes up with a proposal. held by the [illegible].

Page 14

CONFIDENTIAL                    IRI-CRT-00008329_E Translation

**Irico Group Corporation**
**Irico Color Picture Tube General Factory**

Director Wu (吴总): 2,000,000 bonus per year [illegible]. Original and current [illegible] are not needed. Currently we divide and send out the 2 million bonuses among people, this is not [illegible].

[illegible]. Don't divide and send out the 2 million, if we can use it up, use it up, if we cannot use it up, leave it there.

Secretary Tao: in order to change the assessment standards, it still needs to be used.

Secretary Xue: The technology is okay; the amount is a bit high for management

Director Wu (吴总): Delete management.

Director Wu (武总): Factory Manager Xing: The standards can be adjusted.

Factory Manager Xing: Management bonus should focus more on individuals, and less focus on groups.

Director Wu (武总): Reduce categories.

Director Wu (吴总): Should keep Advanced Worker and Excellent Management Team category.

Secretary Tao: It has been upside down several times, we can discuss this after the plan has been made.

Director Wu (吴总): Regarding the situation of Xi'an No.1 Radio Factory, we should ask them to have a worker congress to decide. Whether to sell the land or not. If not sell the land, some of the employees will be laid off. During the period, output of 20,000 will be arranged from 20 of this month to July.

Page 15

CONFIDENTIAL                    IRI-CRT-00008330_E Translation

**Irico Group Corporation**
**Irico Color Picture Tube General Factory**

078

It depends on the situation.

The Inner Mongolia factory owes 10 million loans and 100 million net assets. It has than 30,000 sets of TVs and among them and 20,000 sets are sellable, and more than 10,000 sets are not good. I told Niu Xinan to sell the 20,000 sets and get loans again, get as much loans as possible. Production can't be stopped, and the group will cover the wage. The main problem now is the loan, but I think the credit loan risk of the Group is also very high. We should give them such kind of pressure, and it is not bad at all.

Recently, the situation of the whole country is not good and the arrangement of the laid off employees is a big issue. We should do a good job of switching positions, and don't let the people leave the factory to the society.

Due to the slowness of the economy development and increasement of the unemployed population, the security becomes poor. The police department of our factory did a good job in the past and we should continue pay attention to this work and do a good job.

With regards to the Audit Commissioners issue, a board meeting will be held on 27 and 28 of this month to mainly discuss the things about overseas company Secretary Xue leads a team to clean it up and a conclusion has been reached basically. Xiao Mu please make a preparation on that so we can form a resolution on the meeting.

Page 16

CONFIDENTIAL                    IRI-CRT-00008331_E Translation

**Irico Group Corporation**
**Irico Color Picture Tube General Factory**

With regard to the issue of Institution No.6, Secretary Xue and I went to the Ministry and Minister. Liu said that it is impossible for Institution No. 6 to leave Irico. (Although Institution No. 6 didn't say so but their behaviors show that they want to be separated from Irico).

As for the sales, if it is good in July and August, this year will be in good condition. If 25" cannot hold 900, then the price must come down. If the price has to be reduced, we'd better reduce it first. Factory Manager Ma is the one to make the decision. Don't report it. Take selling out the tubes as a principal.

Director Wu（武总）: Economy and Legal Department. The cost of 25" renovation is high. It has not been determined when to begin the renovation. 14" can reduce the price to boost the sale.

Director Wu (吴总): We can cut the price of 14". How about cut it to 290.

Factory Manager Xing: 14" is mainly for overseas market. It is okay if reducing the price can increase our market share.

Director Xing: Now [illegible].

Director Wu (吴总): exchange 1 for 2 or exchange 1 for 1.2 [illegible]. It is estimated [illegible].

Page 17

CONFIDENTIAL                                        IRI-CRT-00008332_E Translation

# Minutes of Meeting

**Meeting name:** Administrative Work Meeting

**Time:** June 4, 1998 8:00AM

**Venue:** Meeting room on the sixth floor in Hotel

**Chairman:** Wu Weiren

**Participants:** Xue Chengming, Wu Yingzhong, Ma Jinquan, Tao Kui, Xing Daoqin, Li Zuoting, Mu Haoping, Ma Shitai

**Attendance without voting rights:**

**Topics of the meeting:** 1. Report on Vice Governor Gong's visit to the factory (Ma Jinquan)

2. Report the recent production situation and natural gas investigation situation (Xing Daoqin)

3. Report the situation of employee turnover rate(Ma Jinquan)

4. Discuss the method to retain the talents

5. Report on issues related to Xi'an No.1 Radio Factory and Inner Mongolia TV Factory (Tao Kui)

6. Report on Attending Guangzhou Exhibition (multimedia)    (Ma Shitai)

**Recorded by:** [illegible]

CONFIDENTIAL                                    IRI-CRT-00008340_E Translation

**Irico Group Corporation**
**Irico Color Picture Tube General Factory**

Factory Manager Ma:

The day before yesterday, we received the notice from the government of the province at around 3pm, and   we made the preparation accordingly. Yesterday, we made a report on how we focus on the management and the development of new products under the severe situation. The development may not be able to speed up this year, but it will speed up the next year and the year after. Although the price decreased a lot, it got better in April, and we have profit in May. The provincial leaders are a little reassured after hearing our situation. In addition, the provincial leaders are very concerned about the problem about the employee layoffs. Our factory currently has no problems. Our factory solves the employee position issue by diversion, increasing the production and doesn't add the burden to the society.

The main purpose for provincial leaders' visit this time is to learn the production and operation situation. They are relieved to hear that the situation in our factory has improved.

Secretary Tao:

The provincial leaders were very worried after they saw the statement from January to March but they became reassured after hearing that the situation kept stable and became better in April.

Director Wu (吴总):

The development speed of our factory in this year is 3%, mainly affected by CDT.

CONFIDENTIAL                                        IRI-CRT-00008341_E Translation

**Irico Group Corporation**
**Irico Color Picture Tube General Factory**

It decreased from 550,000/year to 100,000/year. We should be practical and realistic and not be bound to pursue the fast development speed.

Director Mu:

  The formally reported statement of our factory is RMB2 million to 3 million. No negative numbers were reported, which has a great influence on the general factory and there will be problems with the bank loans.

Director Wu (吴总):

  We can definitely reach the goal of RMB105 million this year and it is definitely not a fake number. Things got better in May, earlier than I expected in October. We should do what we can do in this year and follow our original goal to do a good work. We won't pursue the development speed blindly if it is unachievable.

  Now there are not many companies nationwide in a good position as we are now, we should be confident. .

Page 2

CONFIDENTIAL

IRI-CRT-00008342_E Translation

**Irico Group Corporation**
**Irico Color Picture Tube General Factory**

Secretary Xue and Li Zuoting:

We should be practical and realistic. First, we need to solve the problem of food.

Secretary Tao:

For the Poverty Alleviation Fund, the provincial leaders said that it is related to the salary, which means if your salary is low then you are not required to donate to the fund. I don't know whether the provincial leaders think we give too much salary.

Factory Manager Xing:

For the transformation of 14", it was originally set in July with a month to do the transformation. If the transformation is postponed now, the production should be rearranged. After the sales company and the import and export company discussed together, 170,000/per month. Currently the inventory is 400,000. 200,000 leftovers from last year, 1,300,000 (the later 7 months) deduct the 200,000. Arranged as 1,100,000.

After the plan adjustment, there is not enough screen to use. [illegible] discuss with Director Mu. We weigh the advantages and disadvantages. 14"

Page 3

CONFIDENTIAL                                        IRI-CRT-00008343_E Translation

**Irico Group Corporation**
**Irico Color Picture Tube General Factory**

Now we have 400,000 inventory and 120,000 that need re-inspection. We can take the weekends to do the re-inspection gradually. We request the sales company to try their best sell the previous produced products first.

The second problem is about the production of bare tube. Originally it was managed by each production unit itself and the upper level will not take care of this. But now it has a problem. The self-production of each unit brings problems to the unified arrangement of production of the tube factory and the material supply. It is not beneficial to the inventory management and product coordination. Therefore, we are thinking about letting each unit propose their bare tube plan and report it to the general management office and let the general management office to have a unified arrangement. Because previously we didn't do it in this way, we would like to propose it for discussion by everyone.

Director Wu (武总):

We cannot only produce bare tube and we should pay attention to the specific situation. There should be basic management to support. If a problem occurs, we should be able to find out the time and find out the person.

Factory Manager Xing:

If there is no problem, we can do it in this way.

Page 4

CONFIDENTIAL                                    IRI-CRT-00008344_E Translation

**Irico Group Corporation**
**Irico Color Picture Tube General Factory**

Director Wu (武总):

I always feel that the quality of our products is always "on the edge". There are some problems with the tubes provided to Konka. They have a special report .

The product problems involve in the product standards. Our product standards need to satisfy the user's requirements. We need to attach great importance to the user's information. Otherwise, it will be difficult for us to make the request when the others do not want our products. Electron gun [illegible].

Secretary Xue:

In our factory, the quality control department should dare to say the truth.

Factory Manager Xing:

For the investigation of natural gas supply situation, we mainly [illegible] solve the supply [illegible], stability and equipment situation. Talk about our factory's requirements for the natural gas supply. We went there on 31st and had a talk on the 1st, especially about our requirements. Changqing oilfield (长庆油田) was explored since 1995. It has 43 wells and has reserved 0.3 billion cubic.

Page 5

CONFIDENTIAL                                   IRI-CRT-00008345_E Translation

**Irico Group Corporation**
**Irico Color Picture Tube General Factory**

The pressure and the situation of the quality are basically matching with each other. [illegible] 300 million m$^3$/year (the output volume). According to international standards, it is to guaranteed to meet the life use requirement for 30 years and to meet the production use requirement for 20 years. They can guarantee to meet the requirements. With regard to the pressure, it is 400 kilograms for underground and 240 kilograms for Wellhead static pressure. By using the initial pressure, the gas can be sent. Purification plant, the first station can reach 45kg. The production of the first station belongs to Shaanxi, but the device leasing [illegible] company. [illegible] pressure 32kg. Tong Chuan station 30kg. The pressure loss is not so much in the current situation that the using amount is not so large. If the using amount is large and less than 8kg, sending to Xianyang 5kg. By that time, they can be pressurized as needed.

It is expected to pressurize after 15 years. For the quality of the natural gas, the quality of each part is the same because they are connecting to each other. There are 95% or more methane. Currently, calorific value is 8 kcal with the lowest as 7.9 kcal. When reaches 700,000 cubic meters of consumption, a large purification plant can be built. At this time, the calorific value will no longer escalate to 8.2 kcal. Thus, the experts thought there is no problem with the calorific value.

With regard to the internal management, we visited pump station, the first station of purification plant first station etc. The devices we saw are clean, and the environment is also very clean. The system can be checked on computer

Page 6

CONFIDENTIAL                                    IRI-CRT-00008346_E Translation

**Irico Group Corporation**
**Irico Color Picture Tube General Factory**

The duty log [illegible] is completed in regular script. We feel that the management is strict. After the visiting, we feel that the supply will have no problem. But the equipment for long distance delivery. For instance, pipeline damage caused by natural phenomena such as landslides. Will it affect customer use during emergency repairing? Currently they think they can use the side pipeline method to reduce the time of impact on customer use.

Factory Manager Ma:

[illegible] using natural gas can reduce the costs, but the problem is that whether it is reliable or not.

Director Wu (吴总):

Just saying whether it is reliable or not.

Factory Manager Xing:

Judging from the current situation, Xianyang has 4 tanks and we have 2 tanks, which can be used as security (but not for normal use). From the perspective of external gas settlement, both stability and quality can be satisfied. We have [illegible].

Page 7

CONFIDENTIAL                                     IRI-CRT-00008347_E Translation

**Irico Group Corporation**
**Irico Color Picture Tube General Factory**

There have been security facility. The time is a little more than 48 hours. Now Beijing does not use much. Our factory is the biggest user in Xianyang and there are many uncertainties, so it is hard to say. But after this visit, we have more confidence than before.

Factory Manager Ma:

After using the glass, it feels cut in half. We have let the Economy and Legal department to make further investigation to design the use of natural gas for our factory. To cancel the original unreasonable projects. 103 million will be the normal use.

For the production of Factory One in the next half year, renovation project preparations are on schedule, with. the cost of 14" falling and market picking up. The renovation work was postponed and suspended. In the second half of the year, two production lines will be used for production.

Director Wu (吴总):

Get the design right first, and that's it. Factory Manager Ma please talk about the HR related issue.

Factory Manager Ma:

Page 8

CONFIDENTIAL

IRI-CRT-00008348_E Translation

**Irico Group Corporation**
**Irico Color Picture Tube General Factory**

With regard to the fact that some people from technology and equipment departments want to leave the factory, we have granted approvals to some of them. As for the remaining ones, we are trying to keep them. Daoqing and I are talking to them, trying to persuade them from personal, Irico and moral point of views, but they still wanted to go.

Yesterday the provincial governor also said we should retain the talents, but currently it seems like the attempt to persuade failed now. They would jump into it even if it was a trap. In such case, we either let them go or they would just go without taking anything. After we let them go, there may still be more people who want to leave.

Director Wu (武总):

The competitions between or among enterprises are the competitions for talents.

Factory Manager Ma:

Hisense has 49 employees holding doctoral degrees, whose annual salary is RMB100,000, and each of them are provided with a residence of 120 m$^2$. Regarding the compensation to technical talents, heavy reward should and must be given to those who make outstanding contributions to their work. As long as one can really solve problem, it is okay to award this kind of person RMB50,000–RMB100,000 a year. We should emancipate our minds.

Page 9

CONFIDENTIAL                                    IRI-CRT-00008349_E Translation

097

**Irico Group Corporation**
**Irico Color Picture Tube General Factory**

Director Wu (武总):

 We should really realize the importance of talents and should change our ideas. PDP wants to have two people with doctoral degrees but cannot get them. The future is the competition for talents, so talents should be respected and cherished.

 Second, we should retain outstanding talents. We can cultivate new people after we have "seeds". For some [illegible] positions that [illegible], we shouldn't require too [illegible], but their morality should be good, and they should focus on making contributions to Irico. We should employ persons of seeds, for equipment or technologies. And then we can retain people by means of rewards, provision of residence, etc. If all of these measures taken fail to help us retain people, let them go. We should follow rules and provisions, don't set obstacles intentionally. [illegible] backbones in the field of [illegible] all want to go, we need to study the causes. And no one can take over their responsibilities. We can connect Irico's history with the present, and we should retain the seeds.

 Third, we will restate it again, that we should retain those "seeds" if we can, and let the people go if they cannot be retained. We can attract talents only if we have our own good business.

Page  10

CONFIDENTIAL                                    IRI-CRT-00008350_E Translation

**Irico Group Corporation**
**Irico Color Picture Tube General Factory**

Director Wu (吴总):

Ma Shitai, Director Ma, please share your opinion.

Chairman Li:

The current issue is about pays. Persuasion only won't do. I agree on what Director Wu said. One more thing, the real backbones should have better pay. Our residences of 88m$^2$ [illegible] average [illegible] among intellectuals [illegible]. We should pay well to those people who make outstanding contributions to their work and shouldn't treat all people equally or try to balance the pays in a wide range. Instead, we should focus on contributions, and give rewards that make the other people envious. Don't consider it from the welfare perspective, but from the perspective of the profits that can be brought by the input. The investment of the talents is actually the input into enterprise's development.

Factory Manager Ma:

Give reward to those who really make contributions. [illegible] agree.

Director Wu (吴总): How to give rewards of RMB2 million?

Page 11

CONFIDENTIAL                                    IRI-CRT-00008351_E Translation

**Irico Group Corporation**
**Irico Color Picture Tube General Factory**

~~[illegible]~~

Director Wu (武总):

We should award according to achievements. This point is true. It takes some time for an outcome to come to fruition. We should have something to retain employees holding master degree and doctoral degree, and such difference should be recognized. We shouldn't wait for fruition before we award to retain people. It is right that we should award our employees for their achievements. But without attractive conditions, we cannot retain well-educated people. Few graduates of Jiaotong University submit resume to our factory. We employed 5 postgraduates last year and now 3 people have left. 5 out of 10 graduates have left.

Chairman Li:

[illegible], upon which I agree, but they can't be retained at once. Incentives should be provided. There should be a live assessment.

Ma Shitai:

I agree on the above opinions of the leaders. For the people who want to go away, there are various causes, such as pays, environment, lack of confidence on our company, etc. [Illegible] has left and [illegible] also wants to go.

Page 12

CONFIDENTIAL                                        IRI-CRT-00008352_E Translation

**Irico Group Corporation**
**Irico Color Picture Tube General Factory**

According to the situation now, we should do a good job on the reasonable use of intellectuals. People should be promoted if they are suitable for management positions, but the use should be reasonable. [illegible] returned to the technology center and became the vice director to be in charge of technology, it's not very reasonable.

Director Wu (吴总): it is an issue of internal division of responsibilities. We hire people to work.

Director Wu (武总):

[illegible] holders of doctoral degrees.

Director Wu (吴总):

How to retain people. China is all about money right now. If we always do like this, we'll be finished. The weak technology of China is caused by the problem with education. It's a big question for Irico about how to handle it.

In Xianyang, if we hire 10 holders of doctoral degrees and put them in each department, it is possible that the technical staff in each unit still look down on those doctors, so those doctors are still going to quit even if they are hired.

Page 13

CONFIDENTIAL            IRI-CRT-00008353_E Translation

**Irico Group Corporation**
**Irico Color Picture Tube General Factory**

My idea is that the people who want to leave are determined to go away. Whatever Factory Manager Ma does will not change the fact. Now it looks like the reason is definitely not the pay. Ma Shitai and Director Wu should make policies to encourage technicians. For example, we can award Yang Ming for developing the lens of, to set the example. We should raise pay for outstanding talents. We should come up with some measures, and start to implement. We don't need many, and don't raise compensation for all, but on individual approval basis. Can we build some units with bigger square meters? How about a residence of $120m^2$?

Chairman Li: We can also buy units from outside as the reward.

Secretary Xue:

Technicians' minds are very complicated and the situation is different. They don't necessarily want to move to the units that we buy from outside. We can build some big units as the rewards. Some technicians don't say their thoughts. We should think about what to do if those people leave. The middle-level management should pay attention to the technicians. In the past, it was planned economy, we focused more on administration and didn't pay enough attention to[ technicians. In particular, the technicians working on production lines also have personal development requirements. We should care about them and promote those people who should be promoted.

Page 14

CONFIDENTIAL                                                  IRI-CRT-00008354_E Translation

**Irico Group Corporation**
**Irico Color Picture Tube General Factory**

Director Wu (吴总):

That is in the charge of Ma Shitai. [illegible]. In the past administrators' career development was fast, while technicians' career development was slow. How to speed up the career development of technicians, the real difference between chief or deputy chief engineer and administrative staff on salary is certainly great. If raise the salary for all , the base will be too big. We should research on how to improve the bonus for technicians. It is okay to give Yang Ming the reward right away to show the effect of appreciation talents. Technicians in Institution No. 6 used to have very high pays, but now the institution is insolvent.

Our pay can be improved, but shouldn't be too high. It can be high for some individuals but it should be on average for most people. Education level can be considered as one element, but the achievements should also be counted in. One side is the price, the other side is the achievement, we should take both sides into consideration. We should learn about the conditions from technicians and we can discuss it again when we have time. Now let some people go if they want to do that. The longer the time is, the less people can do the work.

Page  15

CONFIDENTIAL                                    IRI-CRT-00008355_E Translation

**Irico Group Corporation**
**Irico Color Picture Tube General Factory**

103

Ma Shitai:

> 700 production line. Zhao Xia has left and Wen Peng has also left.

Director Wu (吴总):

> People from the two units left the company has something to do with their managers.

Factory Manager Ma:

> On one hand, we can reward the achievements. On the other hand, we can tender for projects. CDT project we plan to call for tenders.

~~Chief Wu:~~

Secretary Tao:

> Xi'an No.1 Radio Factory. Two meetings were held. There is no problem with the cadres and the there is also no problem with the Union President. It looks stable. On the 25th, Clinton will visit Xi'an and Bei Lin District hopes that Xi'an No.1 Radio Factory will not hold workers' congress. I think it depends. If we are confident to control the situation, the meeting can be held; if not, the meeting can be held after the 25th.

Director Wu (吴总): Let's have the meeting after the 25th.

Page 16

CONFIDENTIAL

IRI-CRT-00008356_E Translation

**Irico Group Corporation**
**Irico Color Picture Tube General Factory**

I will head to Inner Mongolia today. Discuss with the leadership first and then have a meeting with the middle level managers. We are going to contact the government, including loans. TV, CDT, we will first get the factory going.

Director Wu (吴总):

 We do not advance funds.

Secretary Tao:

[Hisense] To keep the Inner Mongolia factory going, we should get some orders. We should keep the key staff. [Illegible]. In this stage, we are doing the preparation work for the producing of TV sets. We can keep the factory going if we have orders for 10,000 sets per month.

How to deal with Hisense?

Director Wu (吴总):

It will take one year for the assessment.

[illegible]:

Consider cooperation after November.

Factory Manager Ma:

Page 17

CONFIDENTIAL

IRI-CRT-00008357_E Translation

**Irico Group Corporation**
**Irico Color Picture Tube General Factory**

Hisense mainly wants to separate the bad assets from the good assets, and to take out 1/2 of the good asset, and then find 5 enterprises to set up a joint venture.

Director Wu (吴总):

I feel that it is difficult to operate. For the two TV set factories, for the next step, the sales can be more than RMB10 million per year. So we should do it by ourselves. Our Xi'an No.1 Radio Factory is the main sales channel and Inner Mongolia Factory is the base for assembling TVs. There are more than 1 million [illegible] in the year of 2000, and it is mainly for sales. [illegible] will be in 2 years. Currently we are using their sales channel. Xi'an No.1 Radio factory is keeping on producing, Inner Mongolia will stop production in August. We should give the employees an explanation. We should be considerate. With regard to the Inner Mongolia Factory, we should tell Niu Xinan to unite the local key workers and find 1-2 persons to be the deputy chief. We will try to transfer the Inner Mongolia Factory next year if it possible and appoint their people for replacement, but the transfer cannot be too urgent, which needs calculation.

Secretary Tao:

If replacement is required, only two years can be accepted. Let's see and make decision later.

Ma Shitai:

We will talk about participating in exhibition in Guangzhou. ~~Report on it.~~

Page 18

CONFIDENTIAL                         IRI-CRT-00008358_E Translation

**Irico Group Corporation**
**Irico Color Picture Tube General Factory**

106

It was a multimedia display exhibition. [illegible] receive [illegible]. 29", 32", 38" (700) multimedia project. They believed that the minimum size was 29". Niu Shao Mei also went there and took some information for translation after the return, for technicians to learn from it. The vice president of Thomson discussed several things with us together. First, 14" export cooperation. That is, our color picture tubes to be labeled with their brands for selling to Europe. Second, 29" products, they can produce and label with our brand, which means that they produce the products and label with our brand.

Director Wu (吴总):

I approve.

Director Ma:

Multimedia, electron gun and deflection coil, [illegible] can provide us [illegible]. Third, can transfer large screen technology; fourth, invite Irico people to their factory in European for visit. It's also hoped that they can pay a visit to our factory.

Page 19

CONFIDENTIAL                                       IRI-CRT-00008359_E Translation

**Irico Group Corporation**
**Irico Color Picture Tube General Factory**

Director Wu (吴总):

> We can take a look at their production of multimedia and can invite them to come here. After the visit, we will have a good understanding. Directors Ma and Wu can discuss on that and we can pay the visit in August or September. External technology information is very important. We must keep close contact with peers. We can bring the technical staff with us for the visit.

Secretary Tao:

> Dongguan is negotiating with Jiaotong University for cooperation. We can talk to Jiaotong University. Jiaotong University is developing 29" and we can use it. Director Ma and Director Wu please have a discussion on the Dongguan issue and notify the other party. After power [illegible] stopped, we are not considering supply the heat to external

Page  20

CONFIDENTIAL                                    IRI-CRT-00008360_E Translation

# Administrative Work Meeting

Time: December 1, 14:00
Venue: Conference room on the sixth floor of Irico Hotel
Topics:
1. PDP equipment ordering (Wu Yingzhong)
2. Sales (Ma Jinquan)
3. Housing reform (Tao Kui, Li Zuoting)
4. Production (Xing Daoqin)
5. Projection TV progress (Ma Shitai)
6. Report on the technical renovations and technical measures (Xu Quancheng of the Legal Division)
7. Report on the forecast of achievements of 1999 (Liu Zhenzhu of the Finance Division)

Chairman: Wu Weiren.
Participants: Xue Baoming, Wu Yingzhong, Ma Jinquan, Tao Kui, Xing Daoqin, Li Zuoting, Mu Haoping, Ma Shitai
Attendance without voting rights: Liu Zhenzhu, Xu Quancheng, Zhang Fengzhen
Recorded by: Niu Wenjun

CONFIDENTIAL                                    IRI-CRT-00008425_E Translation

**Irico Group Corporation**
**Irico Color Picture Tube General Factory**

Wu Yingzhong: Report on PDP equipment ordering.

PDP production line equipment of about RMB100 million was introduced. The design was based on 32,000 sets. The equipment fee was USD14 million. RMB1,900 million is outstanding. there will be 100,000 units global production of this year.

Guo Cailin:

The total expense of [illegible] equipment and Retina printer is USD8 million. Sintering furnace, Wind platform equipment, slurry equipment, water purifier, testing equipment, [illegible] cleaning [illegible] drying equipment.

Wu Yingzhong:

Currently there are 3 test lines, and in fact there are 3 labs, so that every purchased single machine is for test only. By this way, the equipment expense is about USD5 million.

Mu Haoping:

The labs only cover 400 pieces. The key issue is how sure we are on this, and the investment is the next to it.

Guo Cailin; Wu Yingzhong:

The construction period needs half a year.

Tao Kui:

In terms of volume, it's a great gap from 400 to 5,000.

Page 1

CONFIDENTIAL                                          IRI-CRT-00008426_E Translation

**Irico Group Corporation**
**Irico Color Picture Tube General Factory**

If there is no big difference from technical perspective, the cost will certainly be lower with a bigger quantity. If it's sure and the funds is affordable [illegible], I'll be in favor of increasing the quantity and get everything in place in one step.

Ma Jinquan:

If you want to be more stable, do it in the laboratory first, test 400 to 500 pieces to master the technology. Then do 5,000 to 10,000 in the second step.

Xue Baoming:

I agree on the opinions of Factory Manager Ma. Master the technologies first and improve the quality, and to lay a foundation first.

Wu Weiren:

As for equipment, we should buy good equipment. We can do the things in two steps. Firstly, lay a foundation, and then increase the scale of production.

Ma Jinquan: Report on the sales of tubes

1. Industry meeting, once every month. In the November meeting, it was agreed to discuss the price issue with Changhong again. It has been analyzed that the price of imported 21" is RMB620, while the Changhong price is RMB580–590. (RMB895). Changhong's opinion is to agree on the price increase, but the tube factories should sell 95% of their tubes to Changhong. The shipments to Changhong in January next year will be carried out according to the shipments in November and December.

Page 2

CONFIDENTIAL                                        IRI-CRT-00008427_E Translation

**Irico Group Corporation**
**Irico Color Picture Tube General Factory**

Tao Kui: [illegible] house reform

Li [illegible]:

The reform will be completed at the end of September according to the city government requirements. The factory has reported to the city government, 4,688 units. Transforming, reported some families' special conditions, first floor, motorcycle accident.

Giving double subsidies

20% can be added and will be given with salaries.

8 buildings in new district for the families with difficulties, the square meters of the unit will increase by 2 m$^2$. If it can be done by communicating with the city government, we will do it. If not, just give it up

The houses of some managers and staff are participating in the house reform according to their registered residence's location (Director Wu's house is considered as borrowed house and is not involved in the local house reform; for the other people's houses, a part of the money will be refunded)

Money should be paid out of pocket for the excess of allowable unit square meters.

Tao Kui:

1. Report the issue of Xi'an No.1 Radio Factory purchasing 10[illegible] mu of land . The title of 15 mu of land has been held by People's Insurance Company of China.

Ultimately the land cannot be sold. [illegible] the employees are making trouble on this. We need to make some compensation to the other party for the losses if we do not sell the land.

Page 3

CONFIDENTIAL                                        IRI-CRT-00008428_E Translation

**Irico Group Corporation**
**Irico Color Picture Tube General Factory**

  2. Report on the production issues of Xi'an No.1 Radio Factory. Last week, Niu Xinan started working there as the deputy general manager of the Irico CPT general factory. The leading group rescinded.

Xing Daoqin:

  Report on the production of 14" color picture tubes, the production of 25" deflection coil, the production of 15" CDT deflection (coil) and the production and use of natural gas.

Wu YingZhong:

  1. Report on the product quality, No.1 factory had blue screen issue for a while. Now the situation is basically under control.

  2. It's said that there are some problems with 25" spring leaves. Now the problems are being corrected.

Ma Shitai:

  1. Report on the progress of projection TV development

  2. Place of production on the projection machine package: Xianyang, Shaanxi, [illegible] both are okay.

  3. Report on the progress of cooperation on projector development with Hu County

Wu Yingzhong:

  1. The cooperation with Hu County continues, we should stick to them

Page 4

CONFIDENTIAL               IRI-CRT-00008429_E Translation

**Irico Group Corporation**
**Irico Color Picture Tube General Factory**

2.    The cooperation on projector with Chengdian shall also be promoted

Xu Quancheng:

Report on the technical renovations and technical measures

158 technical renovations and technical measures, and the amount of funds is RMB2,126.968 billion. After the review and approval, the implementations of 54 technical renovations and technical measures are approved, and the amount of funds is RMB17,852,100.

As for automation of coating, we will begin with one line. First to work on the feasibility of semi-automatization of compression molding, then do further demonstration. The technical renovations with large inputs can follow international standards.

Liu Zhenzhu:

Report on the forecast of achievements of next year

Based on 7.60 million pieces, current price : 14", RMB200

21", RMB400; 25", RMB500 (all excluding tax)

14", 2.40 million pieces, RMB220–260, RMB256–300

21", 3.18 million pieces, RMB427–550

15", 686,000 pieces, RMB470–555

Measurement result:

Sales revenue: RMB3.9 billion

15" CDT loss RMB55 million

Glass RMB50 million

Page 5

CONFIDENTIAL                                    IRI-CRT-00008430_E Translation

**Irico Group Corporation**
**Irico Color Picture Tube General Factory**

Electron guns: more than RMB16 million

Phosphors: RMB17.20 million

Power plant: RMB27.00 million

Stencil factory: RMB9.48 million

Machinery factory: RMB3.36 million

Tool factory: RMB230,000

Material company: RMB11.80 million

Sales company Balanced (breakeven)

Profit: RMB328.95 million (RMB60 million digested out of 240 million)

Profit of next year: RMB180 million. Digest the burden

Zhang Fengzhen:

Report the principle and target of 1999

Return rate is determined as 4‰

Wu Yingzhong:

Report on the 1999 work plan for new products

Wu Weiren:

1. Make efforts for work safety

2. Secretary Tao should hurry up with requisition of the two lands

3. The technology management system should be strengthened and perfected in the next year

Page 6

CONFIDENTIAL                    IRI-CRT-00008431_E Translation

**Irico Group Corporation**
**Irico Color Picture Tube General Factory**

4. General management and performance management should be strengthened, especially the management of import and export company, which mustn't be done by employees of inferior level

5. The finance director issues a notice on stopping smuggling.

6. The economy situation still remains severe, which poses some threat to consumables.

7. Appropriate increase in investment next year. If Xianyang factory stops investing in the renovation, the factory will stop development. To renovate or build a new line, CDT or big screen tube (CRT), which needs investment of more money, up to more than RMB1 billion. The time will be around two and half years. We should strengthen our Xianyang base. Where does the money come from? The first is the listing company. We can make good use of the money from the factory branch that listed in 1998. We should pool the money together, so we can control at least RMB1 billion if the total number cannot reach RMB2 billion. The equipment should be advanced, and then use both ends to push the middle. We are going to open up the second battlefield in Xianyang next year. The first battlefield is for production.

CONFIDENTIAL                                    IRI-CRT-00008432_E Translation

# EXHIBIT 47





info@certifiedtranslate.com
www.certifiedtranslate.com

2425 Olympic Blvd., Suite 4000W
Santa Monica, CA 90404

usa  1-888-856-2228
int  +1-310-684-3153
fax  +1-310-564-1944

**A member of the American
Translators Association
ATA Member Number: 248719**

# CERTIFIED TRANSLATION

*Description of Document(s):*

| |
|---|
| **MEETING MINUTES RE:** |
| **CAIHONG ELECTRONICS GROUP CORPORATION** |
| **IRI-CRT-00004817 through IRI-CRT-00004823** |
| |

| Source Language:   **CHINESE** | Target Language:   **ENGLISH** |
|---|---|

WITH REFERENCE TO THE ABOVE MENTIONED MATERIALS/DOCUMENTS, we at Language Fish LLC (doing business as www.certifiedtranslate.com), a professional document translation company, attest that the language translation completed by Language Fish's certified professional translators, represents, to the best of our judgment, an accurate and correct interpretation of the terminology/content of the source document(s). **This is to certify the correctness of the translation only.** We do not guarantee that the original is a genuine document or that the statements contained in the original document(s) are true.

IN WITNESS WHEREOF, Language Fish LLC has caused the Certificate to be signed by its duly authorized officer(s).

**By:**    Sean Kirschenstein, Director          **Date:**   March 18, 2022

A copy of the translated version(s) is attached to this statement of certification.

**Exhibit
Wang 8558**

Wang Zhaojie - V1

certifiedtranslate

www.certifiedtranslate.com

138

# Meeting Minutes

Meeting title: [Handwritten:] Group Corporation Administrative Meeting
Meeting time: [Handwritten:] July 10, 1995, 8:30
Meeting location: [Handwritten:]: Caihong Hotel, 6th Floor Meeting Room
Chairperson: [Handwritten:] Zhang Wenyi
Attendees: [Handwritten:] Wu Yingzhong, Wang Liguang, Wu Weiren, and Li Zuoting.

Observers: [Handwritten:] Niu Wenjun and Li Wenfu

Meeting topics: [Handwritten:]
1. Regarding cadre training
2. The subsidizing of retired workers and staff
3. Regarding an opinion on handling the Yellow River factory's TV set quality incident

Minutes taker: [Handwritten:] Li Wenfu.

---

English words found in the original text are *italicized*.
Translator's remarks are indicated in brackets [].

certifiedtranslate                                                                                    www.certifiedtranslate.com

139

# CAIHONG ELECTRONICS GROUP CORPORATION
*CAIHONG ELECTRONICS GROUP CORP.*

[Handwritten:]

Zhang Wenyi: We have some matters requiring this meeting.

1. Regarding the issue of cadre training and learning

The training at Xi'an Jiaotong University is mainly for technology cadres. They are master's degree students after graduation. The personnel department reported a list of 30 people.

The training at Renmin University is mainly for finance and trade. Reported 10 people. This is mainly training for high-level management cadres, including factory-level leaders.

2. This year's benefits are pretty good. All current workers are receiving these benefits. The issue is what to do about the retired workers and staff.

I think the issue with retired workers and staff is very complicated because of different years of employment. I suggest a one-size-fits-all approach where we give retired workers and staff a price subsidy. That is, we give retired workers and staff a subsidy of 15% of the average salary. Each would get a subsidy of approximately 40-50 yuan per month.

Another approach is to set the retiree subsidies at 30% of the salary increase for the current workers and staff.

03556X945                                                      No.            Page

_____

English words found in the original text are *italicized*.
Translator's remarks are indicated in brackets [].

certified translate

www.certifiedtranslate.com

140

# CAIHONG ELECTRONICS GROUP CORPORATION

### *CAIHONG ELECTRONICS GROUP CORP.*

[Handwritten:]

△ All agreed to set the subsidies for retired workers and staff at 30% of the ^ average [inserted] salary increase. The subsidies will start in February 1995. The targets are workers and staff who are officially retiring. Caihong, the Sixth Institute, and the Devices Corporation are covered in this decision.

3. About closing the balcony and building the residential buildings

Regarding the balcony closure's incoming materials and project supervision, let's have the discipline inspection commission or the supervision send personnel in to participate. The office will send notification.

Regarding the spaces in the residential buildings being a bit small, some workers and staff have spoken up about this. However, the state's policy is below 4 $m^2$ per capita for poor households. Therefore, the 60 $m^2$ housing we built this time should not be too small. Explain this to workers and staff.

Regarding the remaining piece of land, we'll do the budgeting and planning in 1996 based on the actual situation.

English words found in the original text are *italicized*.
Translator's remarks are indicated in brackets [].

certifiedtranslate                                                                                    www.certifiedtranslate.com

141

# CAIHONG ELECTRONICS GROUP CORPORATION
### *CAIHONG ELECTRONICS GROUP CORP.*

[Handwritten:]

4. The quality issue with the Yellow River factory's TV sets.

On July 3, when we visited users, we found that some of the 21" color TVs produced by the Yellow River factory had burned and damaged CRT cathodes. The designed voltage on the filament of this batch of color TVs exceeded the limit, which accelerated the aging of the CRTs. More than 260K sets were produced in this batch. Replacing all of these would cost more than approximately 260 million yuan.

Currently, it's clear that the Yellow River factory is liable for this. My opinion is that this matter needs to be reported because Caihong was entrusted to manage the Yellow River factory. The second thing we need to do is to take steps to recall these 260K TV sets. The third is to find out who was responsible. --- The Yellow River factory will draft a report to be submitted. Caihong Group will do the same. Will submit the reports to the provincial government and a copy to the Technology Supervision Bureau.

_____

English words found in the original text are *italicized*.
Translator's remarks are indicated in brackets [].



142

# CAIHONG ELECTRONICS GROUP CORPORATION

### *CAIHONG ELECTRONICS GROUP CORP.*

[Handwritten:]

Wu Yingzhong: 1. The CRT Industry Association will be holding a preparatory meeting in Beijing on July 17, and the founding meeting will be held in early August.

2. Beijing headquarters building. There is a tower building next to Hangtian Bridge in Beijing. It costs approximately 180 million yuan. The space is approximately 15,000 $m^2$. Does Caihong want to purchase the entire building or some floors?

△ Purchase the entire building.

3. Report on the projection tube project. Went to visit the Sichuan Provincial Planning Commission with Plant Director Ji to discuss. Also visited two factory locations. Currently, three projection tubes have been integrated. Everything is progressing smoothly. Production will be finalized next year.

Wang Liguang: There has been no breakthrough in technology. We're still a ways from mass production. Therefore, I think we can discuss but hold off on acting.

Zhang Wenyi: As far as technology, we're actively advancing. However, it will take some time to go from batch production and marketing to building factories.

03556X945                                                    No.            Page

_____

English words found in the original text are *italicized*.

Translator's remarks are indicated in brackets [].

CONFIDENTIAL                                                    IRI-CRT-00004821E_TRANSLATION


www.certifiedtranslate.com

143

# CAIHONG ELECTRONICS GROUP CORPORATION
### *CAIHONG ELECTRONICS GROUP CORP.*

[Handwritten:]

4. Regarding Devices Corporation: Right now, the finances are being comprehensively straightened out. Will return to Beijing on the 12th to sort out materials. The plan for increasing salaries will be ready for launch after the report to the Group. Set up a team for phase II construction of the building to strictly control the fund. Preparing to hold a development and planning seminar in August. However, I think Devices Corporation's only promising area going forward is trade. Is organizing our import and export company, material supply, overseas companies, etc., into a Caihong Corporation a path forward? Regarding building a CRT project in Dalian, after visiting Caihong's factories, the representatives of the Dalian City government think that Caihong has great strength and that it is appropriate to work with Caihong. On the 18th, will go to Dalian to discuss setting up some teams. General team: Lu Xiyi. Whole set: Zhang Ningjing. CRT: Ding Wenhui. Power: Zhang Yuyan.

Wang Liguang:

For the second half of the year, I diagnose that one of the management issues at Caihong's Xianyang base is the unevenness in personnel labor and time and the unreasonable personnel quota. Let's make it a goal to enhance cost management and labor

03556X945                                                            NO.            Page

_____
English words found in the original text are *italicized*.
Translator's remarks are indicated in brackets [].

144

# CAIHONG ELECTRONICS GROUP CORPORATION
### CAIHONG ELECTRONICS GROUP CORP.

[Handwritten:]
productivity and make this known to the lower levels.

Zhang Wenyi: The imbalance in management that Liguang brought up is a very important issue. We still need to work hard on further improving the management. Think about and draft a report on some measures that can be taken, including rewards to teams doing an exemplary job in basic management, cadre training, etc.

Wang Liguang: We've had a ~~successful trial production~~ of 21" thick neck tubes on the 25" line. Next year, we'll be able to produce 21", 22" and 25" on the 25" line and will be able to reduce the loss of 25" line capacity.

Zhang Wenyi: In 1996, our huge external and internal investments need to be reduced; we need to pause and regroup. Internally, we need to focus on tapping latent potentials and making modifications.

---

English words found in the original text are *italicized*.
Translator's remarks are indicated in brackets [].

# 会 议 记 录

会议名称：集团公司行政并公会

会议时间：1995年7月10日 8:30

会议地点：新世宾馆三楼会议室

主 持 人：张文义

出席人员：武英忠、卫孝宁、吴维仁、李作亭、

列席人员：华文军、李温夫

会议议题： 1. 关于干部培训问题；
　　　　　　 2. 经离退休职工补贴问题；
　　　　　　 3. 关于黄河了电视机质量事故问题的
　　　　　　　　处理意见。

记 录 人：李温夫

Confidential

139



CAIHONG ELECTRONICS GROUP CORP.

继义：有几个了开户会。

一、关于干部的培训和学习问题。

西安交通大学的培训主要是技术干部的培训，毕业生都是硕士生。人事部报了30个人的名单。

人民大学的培训主要是金融、贸易，报了10人。这个主要是高层次的管理干部，包括厂级领导的培训。

二、今年效益不错，在职工人都享受到了。问题是退休的职工怎么办？

我认为退休职工因年限不同情况很复杂，我建议采取一刀切的办法，给予退休职工以物价补贴。即年的工资的15%补给退休职工。每人每月可补40—50元左右。

另外一种办法是按在职职工工资增长的30%

编号    页

Confidential                                                                                    IRI-CRT-00004818



# 彩虹电子集团公司
## CAIHONG ELECTRONICS GROUP CORP.

补贴给退休职工。出现的问题如下

△ 大家同意按工资增长的30%补给退休职工，
从1995年2月份开始补起。对象是正式办理离
退休职工。范围：彩虹、云研、器件公司。

三．封阳台和卖家属楼的了。

封阳台的进料和工程监督让纪委或监察
派人进入，参与进去。一由办公室通知。

关于卖家属楼的面积十一些，有些职工有房
住，但国家的政策是贫困户人均4m²以下，所
以我们这次卖的60m²的房应该是不卖的了，给
职工解释一下。

剩下的一块地96年再根据情况进行预算、规划。

Confidential



CAIHONG ELECTRONICS GROUP CORP.

四、黄河厂电视机出质量问题沟了。

7月3日我们去进行用户走访时发现黄河厂出厂的一部分21″彩电将彩管阴极烧坏的现象。这批彩电在设计上加在灯丝上的电压超过了极限值，彩管加速老化。这批电视一共生产了26万变台。若全部更换的话约需2.6亿元以上。

现在责任是黄河厂沟了实已分清。我的看法是这件子要上报。因黄河厂委托我们彩虹管理了。第二个措施是采取办法收回26万台电视机。第三个是要追查责任人。～～由黄河厂起草文件上报。彩虹集团也起草一个报告上报，报市政府、抄报市技术监督局。



CAIHONG  ELECTRONICS  GROUP  CORP.

表态：1.7月17日彩管行业纪念会在北京开筹备会，成立

大会放至八月初召开。

　2.北京总部大楼，在北京航天桥旁边有一栋楼

楼，约需1.8亿元，面积约1.5万m²。彩虹是整栋

楼买下，还是买几层？

△整栋楼都买下来。

　3.投影管项目汇报。这次同志告诉我们计委

误了一下，还有了两处厂址。川东三个投影管已完成

了，进口很顺利，哪怕投生产定型。

建厂：技术上还没有突破，离量产还有一段距离，

所以我认为建厂可以议而不决。

敬义：在技术上我们积极推进，但批量生产，市场，

和建厂问题还有一个时间过程。

Confidential　　　　　　　　　　　　　　　　　　　　IRI-CRT-00004821



**CAIHONG ELECTRONICS GROUP CORP.**

6. 关于器件公司。现正在进行全面财务清理，12月底回北京整理材料。发工资的方案报集团后决定后办了。二期工程走抽成立了班子，对资金进行严格控制。八月份准备开一次发展规划研讨会，但器件公司有发展前途的，我认为只有贸易上还可以，将来把我们的进出口公司、物资、海外、调节他成剥削商就是不是一条路子。大连也剥管项目了，大连市政府代表团参观剥虹工厂后，认为剥虹实力很强，认为同剥虹搞是合适的。18日去大连谈，准备成立几个组：综合组一吕希罡；整机一张宁静；剥管一丁文辉；动力一张玉艳。

李广：

下半年我主诊断剥虹咸阳基地的管理问题，一个是人员上的劳时不均，定员不合理；成本管理和劳

Confidential　　　　　　　　　　IRI-CRT-00004822



CAIHONG ELECTRONICS GROUP CORP.

动生产率的提子. 做为一个目标下达下去。

张文义：李宁提出的管理上的不均衡是一个非常重要的问题，管理上的进一步深化还需要继续努力，包括基础管理中的模范班组的奖励，干部培训等方面想一些办法，拿出一个报告。

李宁：现在在25"线上试割成功了 21"粗管颈管，明年可在25"线上可生产 21"，22"，25"，可以减少25"线能力的损失。文字 李陵夫

张文义：96年我们对外和内部大的投入要减少了. 要休整一下，内部以挖潜改造为主。

IRI-CRT-00004823

# EXHIBIT 48

# (FILED UNDER SEAL)

# EXHIBIT 49

# (FILED UNDER SEAL)

# EXHIBIT 50



**TRANSPERFECT**

City of New York, State of New York, County of New York

I, Dan McCourt, hereby certify that the document "**IRI-CRT-00008236-239**" is, to the best of my knowledge and belief, a true and accurate translation from Chinese into English.

_____
Dan McCourt

Sworn to before me this
September 14, 2022

_____
Signature, Notary Public



_____
Stamp, Notary Public

LANGUAGE AND TECHNOLOGY SOLUTIONS FOR GLOBAL BUSINESS
1250 BROADWAY, 32ND FLOOR, NEW YORK, NY 10001  |  T 212.400.8840  |  F 212.689.1059  |  WWW.TRA
OFFICES IN 90 CITIES WORLDWIDE

**Exhibit
Wang 8561**
Wang Zhaojie - V1

**IRICO Group Corporation**

044

**IRICO Color Picture Tube General Plant**

*Brief Meeting of Plant Leaders*

*Time: December 11, 1997 4:00 PM*

*Venue: Small Meeting Room No. 3*

*Participants: Ma Jinquan, Tao Kui, Xing Daoqin, Li Zuoting, Ma Shitai, Mu Haoping, Niu Wenjun*

*Factory Director Ma: Factory Director Wang has gone to do studies and handed over the work to me before leaving. I'm afraid that I can't handle the work properly, so I think we can communicate with each other once a week, cooperate with each other and put heads together, in order to properly fulfill the work given to us by Factory Director Wang.*

*Secretary Tao: The current operation situation is not favorable. An industry meeting was held last week, and all tube makers set the price of 21"" at RMB620. Although this meeting plays a minor role, it has an impact on the sectors outside and also has a certain effect. The Party office should stabilize employees' thoughts with the cooperation of the public security office. Due to financial strains, money should only be spent on the most important things and should be saved as much as possible with payment delayed if possible, and the leaders of all units should be informed of this policy. Here I report that the personnel, funds and material resources of Xi'an No.1 Radio Factory are incorporated into the General Plant. To pay a visit to inspect the leadership team next week. The inspection group will be composed of 7 people from the Organization Department, the Human Resource Department, etc., to be mainly led by Director Tao. In addition, the document of medical reform was issued these days*

Page_____

CONFIDENTIAL

**IRICO Group Corporation**

045

**IRICO Color Picture Tube General Plant**

*and should be implemented from January 1 next year.*

*Chief Mu: With respect to financial affairs, payments should be delayed if possible in principle. Materials Supply Company already has a debt of RMB150 million. At present, there is no problem with the cash flow, but the conditions after April next year is worrisome.*

*Factory Director Ma: I have been at work for more than one week and am in charge of the technology and quality. In terms of technology, I don't think we have products with high technology. Right now we could focus on two varieties, namely 15"" CDT and the 700 line. There is a rather large demand for 15"", so there will be a large impact once we get hold of it. Chen Dezhi said 8,000 pieces could be available in January. We could provide good services and increase rewards. There will be a great promotion effect in the aspect of display tubes after the 15" is available. Besides, 25" and 29" will be the best choice for 700 line, which are marketable. We should strive hard and move forwards quickly so that the development of the General Plant is promising. The development of PDP should also be stepped up. The personnel that have gone to Samsung should try to stay for as long as possible. It is required that personal difficulties should be solved if possible. It is hoped that we can care for technical personnel and recruit more undergraduates. The technical persons can act as the team leader concurrently, and decisions on matters in the technology sector should be made by them. Third, a technology meeting was held with strong responses. In terms of quality, the Quality Department, which represents users internally and the General Plant externally, makes plans for the quality work for next year. It is also suggested that the top leaders of all units should participate in the quality analysis meeting held at the end of each quarter. We can only provide high quality with low costs.*

Page_____

**IRICO Group Corporation**

046

**IRICO Color Picture Tube General Plant**

> *We should increase the severity of penalties in case of quality problems. In terms of sales, as Changhong doesn't take tubes, the sales volume has declined to some extent. It will be unfavorable for us if we go to Changhong to communicate about the sales now. Our visit to Changhong this time is solely for quality purposes. Don't talk about prices with them actively.*

*Factory Director Xing: The production has been limited for the past two months. It is rather difficult for units to organize production. We had no choice but to extend the working time to 24 hours during weekends. In addition, it is difficult to stabilize the mindset of staff and workers. Cadres at lower levels can't guide employees very effectively. There are many relevant comments at those levels. The parts and components factory not only needs to adjust the structure, but also needs to develop new products, which is a tough task. The internal supply factories said that they can decrease the price by 5% under the condition of ensuring the same quality, but who can guarantee more than 75% of their products are used in the Plant at least? I'll ask Materials Supply Company to coordinate it. Moreover, the natural gas station problem hasn't been formally reported to the Group. At present, the capital for 300 thousand cubic meters is RMB200 million, which exceeds RMB100 million no matter how we make a calculation. The plan for a liquefied gas station for standby use is dropped, and the progress of low-voltage section is slowing down. At that time, we didn't expect that the delivery fee would be so expensive, reaching RMB90 million. Now we should do a good job in three aspects. First, the General Office and Power Office should make a new feasibility report. Second, the General Office should contact Japanese Zhongwailu (transliteration). Third, the General Office should continue to contact relevant personnel of Xianyang City. We will simply not use it for the time being.*

*Chief Ma: I think more about the intellectuals. I would like to talk about three ideas. First, the General Plant*

Page_____

**IRICO Group Corporation**

047

**IRICO Color Picture Tube General Plant**

*is now solving such problems as the remuneration of intellectuals. Second, our employees just work in Samsung and MAC temporarily, and they won't be allowed to participate in the technology development. Third, it is not easy for technical personnel to leave. 15" CDT should be launched next year, and we must focus on the internal supply of components. We don't plan to discuss on 25" electron gun parts for the new product plan of next year. We held two meetings for the 700 line recently and clarified the problems of 700 line. Arrangements have been made for the status quo, technology, equipment problems, plans of the next step and requirements of the General Plant. What matters most is the invar shadow masks. Do we develop the mold by ourselves or buy the finished products? I think the conditions for independent development are not mature. It is best to buy the finished products.*

*Factory Director Ma: Buy the two sets. Don't develop the mold by ourselves. Let's draw the meeting to a close today.*

Page_____

CONFIDENTIAL

IRI-CRT-00008239E
Translation

Case 4:07-cv-05944-JST   Document 6226-1   Filed 07/28/23   Page 330 of 379

044

**彩虹集团公司**
**彩虹彩色显像管总厂**
IRICO

### 厂 领 导 碰 头 会

时间：97. 12. 11.  下午 4:00

地点：三小会议室

人员：马金泉、陶魁、邢道钦、李作宗、马世太、程治平、牛文军

马厂长：王厂长学习去了，走之前把工作交给权，权抱心工作干不好，所以权想，咱们几个每周沟通一次，相互配合，集思广议，把王厂长交给咱们的工作干好。

陶书记：现在的经营形式不好，上周开了个行业会，各个窗厂把21"价格定在620元，虽然比收会议起作用不大，但给外界一个影响，还是有一定作用的。在稳定职工身想方面多办做一下工作，公安处面合，财务是金紧张，钱只能用在最重要的事上，能不出的别不出，能拖的别拖，给各单位领导通知一下。权通报一下，西无一厂的人、财、物整体划归总厂，下周去考查领导班子，组织部、人事处牵了人去一下，主要由陶部长牵阵。还有医疗改革的文这两天发了，

第    页



045

彩虹集团公司
**彩虹彩色显像管总厂**

明年元月一日起执行。

韩总：财务这边原则上是能抱则抱他，物资公司已欠别人1.5亿。资金上前还转得出来，担心的是明年四月份以后。

厂长：我上班一周多了，主管技术质量，在技术方面，我觉得咱们没有技术含量高的产品，目前首两个品种要下手，即15"CDT和100瓦，15"需要量较大，只要拿下来，作用就很大。除德管庆元月份能干出8000只，我们几个版好务，已挤里后方面，可加大力度，15"出来后，以此在显示管方面起到很大的促进作用。再就是100瓦（最好是25"、29"），很有市场，努力拼博，很快上去，给总厂的发展带很好前景。PDP也应该赶紧上。到三是去的人员不要走，个人困难，要帮助解决的可以解决，希望大家都能关心技术人员，应该比较多的启用大学生，可以让技术人员兼顾处，在技术领域上要所技术人员的。第三是开了一个技术口的会，大家反映较强烈。 质量方面，质量处对内对用户，对外对客户厂，为明年的质量工作做出计划，乐建议每一季度组织的质量分析会由各单位"一把手"参加。我们只能高质量，低级率，

CONFIDENTIAL

IRI-CRT-00008237



**彩虹集团公司**
**彩虹彩色显像管总厂**

在数量上出现的问题应加大处罚力度。销售方面 因长虹不要管子，销售额有所下降，我们现在去长虹谈销售对咱们不利，这段去长虹只提质量走访，不要主动和他们谈价格。

厂长：这两个月处于限产状态，单位组织生产较难，只好把周末时间延长至24小时，另外 职工的思想难以稳定，下面的干部又面子太在职工中做有欠妥的指示，下面的说法很多。零部件厂既要调整结构，又要搞新品开发，比较难办。内配厂还可以保证质量按同样的下价格下降5%。但维能厂是用他们最少几万以上的产品。我让物贸公司协调一下。还有天然气站的问题，向集团没有正式报告，目前30万立方米的资金是两个亿，怎么算也得超过一亿，翻新的炭化气站不重了，假正部分电缓一下，当时我们没想到运而上要会多少年，9000万，现在我们要做好三方面的工作。一是综合处和动力做出新的可行性报告。二是由综合处和日本申办事（签证）联系。三是综合处速来和感阳市联系，干脆/咱们暂时不用。

马局：叙对知识分子的事考虑多一些，我谈三个看法。一是启天厂对。

CONFIDENTIAL

047

彩虹集团公司
**彩虹彩色显像管总厂**



好好解决过率问题正在做工作，二是自己的人走三是，技术，2是打工，并不会让你高技术开发，三是技术人员要走也并不容易。厂"可能重搞上去，必须抓好自们的内配。明年的新品计划不准备做些小好花费件。700 钢最近开了两次会，把700 我问题明确一下，把现在的现状、技术、设备方面的问题以及下一步打算和对务厂的要求等做了部署，最要紧的是高股钢节量，模具是自己要研制还是买成品，现免得自行研制条件还不成报，还是买为好。

习厂长：两副都买，不要自己研制。今天会就到这里吧。

第　　页



044

彩虹集团公司
彩虹彩色显像管总厂
IRICO

## 厂领导碰头会

时间：97.12.11. 下午4:00

地点：三小会议室

人员：马全录、陶魁、邢道钦、李作亭、马世太、褚治平、牛文军

马厂长：王厂长学习去了，走之前把工作交给我，我把这工作干不好，所以我想·咱们几个每周沟通一次，相互配合，集思广义，把王厂长交给咱们的工作干好。

陶书记：现在的经营形式不好，上周开了个行业会，各个管厂把21"价格定在620元，虽然比以会议起作用不大，但给外界一个影响还是有一定作用的。在稳定职工上想办法多办做一下工作，公安处面合。财务是全录抓，钱只能用在最重要的事上，能不出的别不出，能拖的别拖，给各单位领导通知一下。我通报一下，面无一厂的人，财、物整体划归总厂，下周去考查领导班子，组织部、人事处差了人去一下，主要由陶部长坐阵。还有医疗改革的文这两天发了，

第   页



045

彩虹集团公司
彩虹彩色显像管总厂

明年元月一日起执行。

魏总：财务这边原则上是能抱则抱，物资公司已欠别人1.5亿。资金比
前还转得出来，担心的是明年四月份以后。

厂长：我上班一月多了，主管技术质量，在技术方面，我觉得咱们
没有技术含量高的产品，目前首两个品种了上手，即15"CDT和700仮，
15"需要量较大，只要拿下来，作用就很大。除德管后元月份能干出
8000只，我们几个版好务，已搭建局方面，可加大力度，15"出来后，
可以在显示管方面起到很大的促进作用。再就是700仮（最好是25"、
29"），很有市场，努力拼搏，很快上去，给咱厂的发展带来很好前景。
PDP也应该赶紧上。到三是去的人尽量不要走，个人困难，要帮助解决
的可以解决，希望大家都能关心技术人员，应该也缺多的启用大学
生，可以让技术人员兼职做，在技术领域上要所技术人员的。第三是
开了一个技术口的会，大家反映较强烈。质量方面，质量处对内对
用户，对外对客户厂，为明年的质量工作做出计划，东建以每一季度对
的质量分析会由各单位"一把手"参加。我们只能高质量，低成本，

第　页

046

**彩虹集团公司**
**彩虹彩色显像管总厂**
IRICO

在数量上出现的问题应加大处罚力度。销售方面 因长虹不拿管子，销售额有所下降，我们现在去长虹谈销对咱们不利，这次去长虹只是质量走访，不要主动和他们谈价格。

厂长：这两个月处于限产状态，单化组织生产较难，只好把周末时间延长至24小时，另外 职工的思想难以稳定，下面的干部又不太在职工中做有效的指导，下面的说法很多。要靠件厂既要调整结构，又要搞新品开发，比较难办。内配厂也可以保证质量把同管价下价格下降5%。但难能保证厂里用他们最少2万台以上的产品。我让物贸公司协调一下。还有天然气站的问题，向集团没有正式报告，目前30万立方米的资金是两个亿，怎么算也得超过一亿，融的液化气站不重要，你正部分电疫一下，当时我们认识想到运而且会变成么多，9000万，现在我们要做好三方面的工作。一是综合处和动力做出新的可行性报告。二是由综合处和日本中村录（音译）联系，三是综合处持续来市感阳市联系，干脆/咱们暂时不用。

马局：叙对知识分子的事考虑多一些，我谈三个看法。一是岛厂对B。

CONFIDENTIAL

IRI-CRT-00008238

047

**彩虹集团公司**
**彩虹彩色显像管总厂**



好好抓过年问题正在做工作，二是自们的人走三是，是克，2是打工，并不会让你搞技术开发，三是技术人员要走也不个容易。厂可呢，硬搞上去，必须抓好自们的内配。明年的新品计划不准备做生产好花零件。700级最近开了两次会，把700我问题咽磋一下，把现在的现状、技术，设备方面的问题以及下一步打算和对为厂的更进步做了部署。最要紧的是画股钢节阜，模具是自己应研制还是买成品，现免得自行研制条件还不成熟，还是买为好。

3厂长：两副都买，不要由自己研制。今天会就到这里吧。

第　页

# EXHIBIT 51



**TRANSPERFECT**

City of New York, State of New York, County of New York

I, Dan McCourt, hereby certify that the document "**IRI-CRT-00008241-245**" is, to the best of my knowledge and belief, a true and accurate translation from Chinese into English.

_____
Dan McCourt

Sworn to before me this
September 14, 2022

_____
Signature, Notary Public



_____
Stamp, Notary Public

LANGUAGE AND TECHNOLOGY SOLUTIONS FOR GLOBAL BUSINESS
1250 BROADWAY, 32ND FLOOR, NEW YORK, NY 10001  |  T 212.400.8840  |  F 212.689.1059  |  WWW.TRA...
OFFICES IN 90 CITIES WORLDWIDE

**Exhibit
Wang 8562**
Wang Zhaojie - V1

**IRICO Group Corporation**

049

**IRICO Color Picture Tube General Plant**

*Administrative Meeting*

Time: December 31, 1997 8:30 AM

Venue: Small Meeting Room No. 3

Participants: Wang Liguang, Ma Jinquan, Tao Kui, Xing Daoqin, Li Zuoting, Ma Shitai, Mu Haoping, Niu Wenjun

Factory Director Wang: I want to start with two outside matters. First, a meeting will be held for top leaders at 2:00 PM to ask them to do some thinking during the New Year's Day. After the New Year's Day, a panel discussion will be conducted with each unit and middle-level cadres. There is no way to retreat. The difficulty that we face is mainly in this year and the next year. We need to fight and get through it.

Factory Director Ma: I would like to report on the recent work and put forward the plan for the next year. A general meeting for technical personnel was held to give them a chance to voice their opinions. At present, the condition has been stabilized, but there is still some room for improvement in our work. Through learning, I think the work of the technical center should be enhanced. We should learn from the experience of Haier. In terms of quality, I think the top leader of each unit should participate in the regular quality meeting at the end of each quarter, and the quality should be improved to a certain level.

Page *1*

CONFIDENTIAL

IRI-CRT-00008241E
Translation

**IRICO Group Corporation**

050

**IRICO Color Picture Tube General Plant**

*The after-sales service should be improved, and a certain part can be increased for them. Besides, there is a problem about B tubes, which were always sold by Wei Jianshe (equivalent to an agent) previously, but they didn't sell well recently. If we sell the tubes by ourselves, what should we do as we don't have the trademark? We need to come up with a solution. In terms of sales, first we have paid a visit to Changhong in the name of quality interview. We think the price of 25"should be no less than RMB1,150. Second, Zhongshanglong under the electronic chamber of commerce can take 500 thousand pieces of 21" and 100 thousand pieces of 25" in one year. Third, XOCECO has a good financial situation and can take 10,000 pieces first. Some time ago, they gave us RMB8 million, equivalent to a repayment of RMB3 million. Fourth, Konka hopes that they can use our 14" for all their products, but the export tax rebate must be calculated for us. The price we calculate for 14" is USD34.5. Fifth, the leadership of Meile is unstable. The parts factory hopes a promotion team can be organized for 25" electron guns. The Deputy Chief (Zhao) can take the lead and play the role of the Deputy Chief. This is a common problem which involves matters in the entire internal supply of component factories, and should be in charge by Factory Director Xing.*

*Factory Director Wang: Products are stored in different places with carrot and stick approaches. A surplus of employees of Xi'an No. 1 Radio Factory can be given living allowance and be asked to sell TVs for commissions. 14" and 18" are marketable, but we must change the marketing strategy. We should set a sales policy for 15" and the 700 line. Sales with price concession can be allowable, but a debt is absolutely unacceptable. An industry meeting will be held on the 4th day [of next month], and we will first*

Page *2*

**IRICO Group Corporation**

**IRICO Color Picture Tube General Plant**

> give RMB50 thousand. As for the listing of the key school for children of employees, we have given a reward of RMB30,000, but the money shouldn't be given out all at once.

*Factory Director Xing: I would like to talk about four things. The first one is the production conditions. Inventory: 14": 620 thousand, 21": 304 thousand, 25": 65 thousand, total: 1.1 million (including 0.28 CDT); 14" screen: 400 thousand, 14" funnel: 670 thousand, 21" screen: 460 thousand, 21" funnel: 148 thousand, 25" funnel: 50 thousand; 14" shadow masks: 400 thousand, 21" shadow masks: 210 thousand; 14" gun parts: about the volume for half a month to a month; explosion-proof straps: no inventory; red powder: 7 tons, green powder: 6 tons, blue powder: 8 tons; 14" electron guns: 110 thousand, 25": 49 thousand, 21": 90 thousand; Plant No. 2's low-melting glass powder: 21 tons; glass: 28 tons; Materials Supply Company: 47 tons.*

*(Note: 20 tons can be used in a month.)*

> *Daily production of the glass factory:*
> *14" screen: 6,000 pieces/day, 21" screen: 2,500 pieces/ day, 21" funnel: 7,000 pieces/day, 25" funnel: about 300 pieces/shift.*
> *The work of the electron gun factory before and after the relocation has been relatively smooth, but the yield of 21" has decreased to some extent. At present, they are required to restore the level before the relocation as soon as possible.*
> *The second is the technical reform, cold repair and transformation of the screen furnace. The materials will be discharged on May 1, 1998 (it may be advanced for half a month), and the production will start on August 25. The total investment of the natural gas station is RMB197 million. The delivery fee was expected to be*

Page *3*

**IRICO Group Corporation**

**IRICO Color Picture Tube General Plant**

> *RMB100 million previously, and it is RMB79 million at present, so RMB170 million should be enough. We would like to report it to the provincial government in written form, and have the provincial government decrease the cost, or otherwise we may postpone it. Third, we should try to shorten the contract cycle, make achievements in material supply and lower prices. Fourth, the cost-centered management system is now geared towards highlighting the internal market economy. We will discuss the feasibility report of natural gas at the technical reform meeting. Plant No. 2 and the joint-stock company will not have a holiday on New Year's Day. During the Chinese New Year, they will have a holiday from January 24 to February 8. Plant No. 1 will be on holiday until February 8th.*

*Factory Director Wang: The thinking for 1998 is not a principle, but some ideas about some specific jobs. Everybody can have a look and make a conclusion about it after New Year's Day. The basic principle is to plan strictly, but also have a definite aim. We break down the cost indicators and solve them one by one. I suggest Chief Mu lead the discussion. You have our support. Materials and equipment must be put into one department to enhance efficiency, expand capital, and reduce expenditure. All units must implement the "One Pen" system.*

*Chief Ma: I spent the last two days attending provincial-level meetings about the electronic industry of Shaanxi Province, with the topic of the integration of three electric appliances, namely the TV sets, computers and communication machines.*

*Chief Mu: I want to talk about the fund problem. There are financial constraints. By the end of this year, loans have not*

Page *4*

IRI-CRT-00008244E
Translation

**IRICO Group Corporation**

053

**IRICO Color Picture Tube General Plant**

*increased, with RMB120 million loans available in January at an interest rate 3% lower than normal. Arrearage is common all across the country, and we are in arrears, too. Materials Supply Company must owe RMB200 million next year, and if it fails to do so, the amount will be treated as a loan. In 1998, the internal monetary policy will be tightened. In some cases, it will be difficult for certain branch factories to pay employees' wages. I hope all leaders are mentally prepared. Next year, the effective director responsibility system will be implemented for the directors of all factories. In addition, we have established a cost management system. The price of the supporting factories is 8% lower than that of elsewhere. Materials Supply Company focuses on dealing with prices that cannot be lowered. We won't be partial with the backward, and we will choose whoever has the lower price.*

*Factory Director Wang: I will hold a meeting ("the top leaders") in the afternoon, in which I would like to analyze the situation for everyone and explain the challenges thoroughly. In 1998, we must succeed, not fail. We should make everyone aware that opportunities come with challenges and give them time to think about it during the New Year's Day holiday. After the holiday, we will put our direction and requirements in place. Then we will hold a meeting for all middle-level cadres to help them understand the situation, get psyched up and gain confidence to work hard and achieve our goals.*

*Page 5*

彩虹集团公司
**彩虹彩色显像管总厂**

049

行政办公会

时间：97.12.31. 上午8:30.

地点：三小会议室.

人员：王季广. 马金泉. 陶魁. 邢道钦. 李作亭.

马世太. 穆治平. 牛文军.

王厂长：我先谈两件局外事，一是下午2:00召开一个"一把手"会议，提出要求，让大家在元旦期间思考一下，过完元旦后和各个单位座谈，和中干谈谈，我们没有退路，背水一战，再难也得今. 明两年我们一定要闯过去。

马厂长：我把最近一段的工作汇报一下，并提出明年的打算。召开了一次技术人员大会，让大家有一个发表意见的机会，目前已经新招定，但不能排除咱们做的不够的地方。通过学习，我觉得技术中心的工作还应加强，应学李海亦的经验。质量方面，我认为每季度末的质量例会由各单位"一把手"参加，把质量提高到一定高

第　页

CONFIDENTIAL

IRI-CRT-00008241

彩虹集团公司
**彩虹彩色显像管总厂**

---

度。售后服务要加强，可以给他们增加一部分日。经营B管问题，以前一直是由魏建设经销（相当于代理商），但最近他们不好销，如果让咱们自己销，无商标，看咋办？咱们拿出个办法来。销售方面，一是以质量走仿名义去了一趟长虹，我们认为25"不能低于1150元，二是电子商会下面的中南龙，可以一年拿21"50万只，25"10万只，三是厦华，他们资金较好，先拿1万只，后段时他们给咱们800万，相当于还了300万元；四是建佳，他们希望14"全用咱们的，但必须给咱们算出口退税，14"我们算34.5美元；五是美乐，他们领导班子欠稳定。要工厂希望把25"研究搞个推进小组，可以让副总（表）牵头，发挥副总的作用，要那这是一个共性的问题，牵涉到整个网面LT的事，邮厂快抓一下。

王厂长：产品异地库底，软硬兼施。而另一厂赢亲职工可以发生话费，让他们去卖电视，提成。14"、18"还是有利润的，但我们必须改变营销策略。15"和700铥应该定出个销售政策来，价格上可以让价销售，但绝对不能让对方欠款。4日开行业会，我们生

CONFIDENTIAL                                                                IRI-CRT-00008242

051

彩虹集团公司
**彩虹彩色显像管总厂**

把5万元打过去。至于子校重点中学挂牌的事，奖类30000元，但让他们不要一次发完。

矿长：叙讲四个方面，一是生产情况，库存 14" 62万，21" 30.4万，25" 6.5万，再加上0.76 CDT等共110万；14"屏 40万，14"锥 6万，21"屏 46万，21"锥 14.8万，25"锥 5万；14"前罩 40万，21"前罩 24万；14"枪零件大概是半个月一个月的量，防爆带无库存；红粉 7吨，绿粉 6吨，蓝粉 8吨，14"电子枪 11万，25" 4.9万，21" 9万；低玻粉二厂用 21吨，玻璃 28吨，物资调 470吨。

(注：一个月可用 20 吨)。

玻璃厂每天生产：
14"屏每 60000只/天，21"屏 2500只/天，21"锥 7000只/日，25"锥 300只左右/班。

电子枪厂搬迁和搬迁后的工作都较顺利，但良品率 21" 有所下降，目前要求他们尽量恢复到搬迁前的水平。

二是技改：黑炉窑修改造，98.5.1.放料可能能提前半月，8.25.开始生产；天然气钻总投发 1.97亿元，但以前预计输西气

052

**彩虹集团公司**
**彩虹彩色显像管总厂**

1亿，目前0.79亿，所以1.7亿元即可。咱们想以书面形式报省政府，由省政府出面费用下降一些，要不咱们就往后推。

三是订合同的周期要缩短，在物贸供应方面做出成绩，压价。

四是以成本为中心的管理体系已经准备好，突出内部的市场经济。

天然气的可行性报告，我们放在技改会上讨论一下。二厂和股份公司元旦不放假，春节时从元月24日至2月8日放假，一厂一直放假到2月8日。

订厂长：98年思路不是原则，只是具体工作上的一些想法，大家可以看一下，元旦后定下来，基本原则是严格计划，但又要有的放矢，成本指标分解下去，一个个解决。由穆总、吉总，我们支持你。物贸、设备必须归口到一个部门，增效、增资、节流；各单位实行"一支笔"制度。

马总：前两天到省里开了两天会，讨论陕西省的IT产业，电视机、计算机、通讯机三机合一，三电合一。

穆总：我想谈的是资金问题，资金紧张，截止今年年底使款非贷

CONFIDENTIAL

IRI-CRT-00008244



彩虹集团公司
彩虹彩色显像管总厂

053

增加，习价份可望1.2亿，利息比工年的3各。全因整个形式都
是久款，我们也久，物资公司每年还久两个亿，还子利，以挖现
款处理。98年的部是缩银根，个别情况下划下划到分厂发工资有困
难，希望合作、改是有个思想准备，明年对各厂厂长实行有效的厂长
负责制。另外我们定了一个成本管理体系，配套厂内外面价格低
8%，物资词对降不下来的价格责反出来，我们不必应合进，修
价格低利要缩的。

厂长，下午开个会（一把手），我想把形式给大家分析一下，把困
难讲透，98年只求成功，不许失败。要让大家认识到前面难，但
也有机遇，让大家利用元旦时间好好思考一下，元旦后要把他
们的方向和思想带重下去。元旦后开一次全体中干会，从形式
式，做好10课准备会，树立信心，艰苦奋斗，实现目标。

CONFIDENTIAL
IRI-CRT-00008245

# EXHIBIT 52

# (FILED UNDER SEAL)

# EXHIBIT 53



June 20, 2012


**Certification**

**Park IP Translations**


This is to certify that the attached translation is, to the best of
my knowledge and belief, a true and accurate translation from Chinese
into English of the document with bates numbers range:
CHU00029050E – CHU00029051E.


Abraham I. Holczer

Project Manager



Park                         Case                          #                    29567

[TRANSLATION]

[Fax header illegible]
[Entire Document Handwritten]

[Illegible] (*File CPT*)
To Section Chief Du      1/2

CPT Fuzhou Co., Ltd. Sales Department

<u>Customer Contact Report</u>

Contact Date:  6/22 '99

Name of Customer:      *CPT MEETING*

Contact Personnel:      *ORION*: Director Moon
                                   *IRICO*: Manager Li, Manager Sha
                                   *CPT*: Director Liu, Jing-Song (Jason) Lu

I.     *CPT* production status in China:

    1.   <u>In '99, it is estimated that the 8 major tube makers will produce about 32</u>
       <u>million units.   Among these: 14"x 3M units (*IRICO* x 2.5M, *BMCC* x 0.5M),</u>
       <u>21"x 14.5-15M units (*BMCC* x 2.1M, *HF* x 1.30M, *LG* x 1.5M, *HTC* x 2.6M,</u>
       <u>*IRICO* x 3M, Evernew x 1.5M, *SDD* x 2.1M, Fortune x 0.45M), 25"x 8M</u>
       <u>units, 29"x 6M</u> [Underlined by hand].

    2.   Export status:

       14" x 2.6M units (*IRICO* x 2.2M, *BMCC* x 0.4M)
       21" x 2M units (*SDD* and *LG* as the main.   In addition, *HTC*, *BMCC*, *HF*,
       *IRICO* also have a small amount to export.)
       25"/29" are basically not enough for self-use.

    3.   '99 China *CTV* production volume is estimated to be around 34-35M.

II.   Market status and price increases:

1.   Director Liu and Director Moon both explained the status of market supply and
    demand for 14"/20"/21".   Based on the fact that *CDT* has successfully
    maintained stable prices and that in the second half of the year demand has grown
    and production capacity has decreased, they asked *IRICO* to cooperate and
    synchronize the process of 14" *CPT* price increases.

2.   *IRICO* explained that the current 14" *CPT* sales price (*ITC* tube) to *VESTEL*
    [Circled by hand] is @*USD* 27 and to other customers is @*USD* 28↑.   They
    frankly admitted that their

---

English words found in the original text are *italicized*.
Translator's remarks are indicated in brackets [  ].

CONFIDENTIAL – GRAND JURY MATERIAL           CHU00029050E

[Illegible] (*File CPT*)

2/2

CONTENT                              CONTACT ITEMS

pricing is based on their real cost and that they seldom refer to the price of the industry.   They also claimed that the reason they sold to Turkey *VESTEL* at such a low price was because *SDD* (Shenzhen) was competing for the orders.   (*SDD* Shenzhen produced about 0.3M units of 14" *CPT* during the initial stage after starting production).   Since it has a significant ability to self-make accessories materials for 14" *CPT*, there is still some profit with the current sales price.

3.  They very much appreciated the market information provided by *CPT* and *ORION* and are willing to cooperate with the move to increase the price of 14"*CPT*, except that July orders have already been received.   They are willing to increase the overall price beginning in August.    In addition, their basic selling price is slightly lower than that of the big factories by *USD* 1-2.   That was understood by everyone.

4.  Their 21" *ITC* export price quote is *USD* 50, which is a little bit low.   They were asked to review the price and make an appropriate increase.

5.  To enhance *IRICO*'s interactions and information exchange with the outside, temporary agreement was reached that IRICO would be invited to participate in the regular *meeting*s or the irregular meetings arranged by *ORION* and *CPT* in Hong Kong or Shenzhen.

-   End of report –

Submitted respectfully to the President

[Submitted and Signed:] Employee Jing-Song (Jason) Lu
6/23 '99

[Initialed:] Y. M. Peng, *Jun* 24, '99

---

English words found in the original text are *italicized*.
Translator's remarks are indicated in brackets [  ].

**CONFIDENTIAL – GRAND JURY MATERIAL**                    CHU00029051E
                                                          Translation

# EXHIBIT 54

# CHINA'S INDUSTRIES IN TRANSITION:
## ORGANIZATIONAL CHANGE, EFFICIENCY GAINS, AND GROWTH DYNAMICS

JIANG XIAOJUAN
(EDITOR)

Nova Science Publishers, Inc.
*Huntington, New York*

Senior Editors:       Susan Boriotti and Donna Dennis
Office Manager:       Annette Hellinger
Graphics:             Wanda Serrano and Dorothy Marczak
Information Editor:   Tatiana Shohov
Book Production:      Cathy DeGregory, Jennifer Vogt and Lynette Van Helden
Circulation:          Ave Maria Gonzalez, Ron Hedges and Andre Tillman

*Library of Congress Cataloging-in-Publication Data*
available upon request

ISBN 1-56072-906-6

Copyright © 2001 by Nova Science Publishers, Inc.
227 Main Street, Suite 100
Huntington, New York 11743
Tele. 631-424-6682      Fax 631-425-5933
e-mail: Novascience@earthlink.net
Web Site: http://www.nexusworld.com/nova

All rights reserved. No part of this book may be reproduced, stored in a retrieval system or transmitted in any form or by any means: electronic, electrostatic, magnetic, tape, mechanical photocopying, recording or otherwise without permission from the publishers.

The authors and publisher have taken care in preparation of this book, but make no expressed or implied warranty of any kind and assume no responsibility for any errors or omissions. No liability is assumed for incidental or consequential damages in connection with or arising out of information contained in this book.

This publication is designed to provide accurate and authoritative information with regard to the subject matter covered herein. It is sold with the clear understanding that the publisher is not engaged in rendering legal or any other professional services. If legal or any other expert assistance is required, the services of a competent person should be sought. FROM A DECLARATION OF PARTICIPANTS JOINTLY ADOPTED BY A COMMITTEE OF THE AMERICAN BAR ASSOCIATION AND A COMMITTEE OF PUBLISHERS.

*Printed in the United States of America*

# CONTENTS

**About the Editor**                                                      vii

**Chapter 1**   **Economic Transition and Industrial Development:**        1
                **Relevance, Rationale, and Significance to Theories on**
                **Economic Transition**
                *Jiang Xiaojuan*

**Chapter 2**   **The Chinese Television Industry: An Example of**         57
                **Gradual Transition**
                *Tomoo Marukawa*

**Chapter 3**   **Formation of Chinese-type Industrial Organization and Its**   83
                **Changes in the Process of Transition: A Case Study of**
                **Light-duty Truck Industry**
                *Tajima Toshio*

**Chapter 4**   **Low-Efficiency Competition in Transition Process: A Case**   129
                **Study of Textile Industry**
                *Jiang Xiaojuan*

**Chapter 5**   **Industrial Development and Industrial Policy in Economic**   167
                **Transition: A Case Study of Household Electrical Appliance**
                **Industry**
                *Jiang Xiaojuan*

**Chapter 6**   **Telecommunications: Changing Economic System and**       199
                **Industrial Organization**
                *Chen Xiaohong*

**Index**                                                                  229

McMillan John and Barry Naughton (1992): "How to Reform a Planned Economy: Lessons from China", *Oxford Review of Economic Policy*, Vol. 8, issue No. 1.

Murrell P. (1992): "Evolutionary and Radical Approaches to Economic Reform", *Economics of Planning*, p. 25.

Naughton Barry (1994a): "Growing Out of the Plan: Chinese Economic Reform (1978-1993)", *Cambridge University Press*.

-----(1994b): "Chinese Institutional innovation and Privatization from Below", *American Economic Review*, Vol. 84, issue No. 2.

-----(1992): "Implication of the State Monopoly of Over Industry and Its Relaxation", *Modern China*, Vol. 18, issue No. 1.

Ronald I. McKinnon (1993): "Gradual versus Rapid Liberalization in Socialist Economies: The Problem of Macroeconomic Control, in Proceedings of the World Bank Annual Conference on Developing Economics 1993", Washington D.C., The World Bank.

Sachs Jeffrey and Wing Thye Woo (194): "Reform in China and Russia", *Economic Policy*, Vol. 9, No. 18.

Singh, I., Ratha, D., and Xiao, G. (1993): "Non-State Enterprises as an Engine of Growth: An Analysis of Provincial Industrial Growth I Post-Reform China", *World Bank Research Paper Serie*s, CH-RPS#20.

*Chapter 2*

# THE CHINESE TELEVISION INDUSTRY: AN EXAMPLE OF GRADUAL TRANSITION

*Tomoo Marukawa*

Institute of Developing Economies, Japan

This case study on Chinese television industry is intended to refute the basic proposition which lay behind the argument for "big-bang" policy: the government must have a comprehensive reform plan, including freeing trade and prices, privatizing the state sector and so on, in order to successfully accomplish the transition to market economy. I will show that there is no need for the government to have such a plan. It may be even unnecessary for the government to be reform-minded either. Transition to market economy can be accomplished even if the government doesn't have a comprehensive picture of market economy in their mind, nor a clear-cut intention to move to such a system, and keeps on implementing 'market-unfriendly' policies. If it is not the government, then what force drives the economic system towards market economy? What actually is a transition to market economy? Is it just freeing trade, prices, and privatization? These questions will be discussed after a description of the transition process of the Chinese television industry.

## 2.1: THE TRANSITION OF CHINESE TELEVISION INDUSTRY

**Performance**. The prices, production, investment and distribution of television sets and their components were under strict control of the state until 1970s. Then from 1980, some parts of state control were relaxed, but it was not until 1993 that all of the government controls were abolished. The period between 1980 and 1992, therefore, can be characterized as a period of partial reform. Partial reform has been criticized by the proponents of "big-bang" reform that it will cause a severe loss of welfare (Murphy, Shleifer and Vishny, 1992), but let us see the magnificent performance attained during the period of partial reform (See Figure 2-1): The domestic production volume of television sets increased from 2.49 million units (1980) to 28.68 million units (1992); The

58                                    Tomoo Marukawa

price of a 20 inch color television set was 2,000 yuan in 1980 and 2068 yuan in early 1993, while the general retail price index more than doubled during the same period; In 1980 only a half of urban households had a monochrome television set and only 0.6% of urban households had a color TV set, but in 1992 75% of urban households had color TV sets, which was one of the most prominent indications of the improvement in national welfare. The growth of television production even accelerated after 1993. The domestic television industry not only succeeded in substituting imports but also has become a competitive export industry since the 1990s (Figure 2-1).

**Creation of a Dispersed Market Structure**. The first TV set was produced in China in 1958, but it was not until the 1970s that the government seriously considered of setting up television manufacturing to provide TV sets for the people. After the split with the Soviet Union in 1960, China focused its investments into the creation of military industry and heavy industry base, while ignoring consumer products industry. When the relationship with the Soviet Union had become even tenser in the late 1960s, Chinese Communist Party transferred the central government's authority over many industrial firms to local governments, and expanded local governments' autonomy in finance, investment and the allocation of industrial materials. This was, on the one hand, an attempt to ameliorate the problems caused by an over-centralized planned economy, and on the other hand it was intended as preparation for the war against the Soviet Union. (Ishihara, 1990; Zhou, 1984). In 1970, Chinese leaders divided the country into ten large districts, and planned to let each of them have a complete set of industries, which would make them capable of waging war independently.

Lin Biao, the vice-chairman of Communist Party at that time, insisted that the preparation for the coming war must be given top priority in national policy. Regarding the electronics technology as the key to modernize Chinese military power, Lin called for a "Warfare for electronics [Dianzi dahuizhan]," demanding firms and local governments to start producing electronic goods. Local governments, with their larger autonomy, reacted to this call and set up many factories. Most of them produced electronic parts. The number of electronic factories rapidly increased from 1600 in 1969 to 5200 in 1970, but since the newly set up factories lacked the preconditions and technology to produce useful electronic goods, most of them were shut down in a year or two. The number of factories decreased to 2600 in 1972.

Nevertheless there still remained the problem of overcapacity. Since 1973 the central government tried to utilize the excess capacity of electronics industry by encouraging the firms to produce consumer electronic end products such as radio receivers and TV sets. These turned out to be the first group of entrants into the television industry. The central government tried to plan and guide the development of television production after 1973 (Hao, 1991), but since local governments controlled the firms, the attempt was not successful.



Figure 1: Production, Import and Export, Sales of Color and Monochrome TV sets

(Source) China Statistical Yearbook, China Customs Statistics Yearbook, ZDB, etc.

Another group of firms began to enter the television industry from the late 1970s. Those were the firms that produced military electronic goods before then. Most of these firms were under the direct control of the Ministry of Electronics Industry at that time.[1] In order to deal with the diminishing demand for munitions, they started to diversify their production by producing consumer goods. Major television makers of today such as Changhong Electric Ltd., Tianjin Tongguang Corporation, Xiongmao Electronics Group Corporation were producers of military radars or military radio equipment formerly.

With the local firms, which entered the industry in the early 1970s, and military electronics firms, which entered the industry in the late 1970s, the market structure of television industry was very dispersed in the late 1970s. There were 63 firms producing television sets in 1978, when annual national production of TVs in China was only 0.51 million units, most of which were monochrome TV sets. McMillan and Naughton[1992] emphasized that rampant entry of non-state firms after the reform created competition among firms, but, while acknowledging the importance of entry, it should be noted at the same time that in many Chinese industries including the television industry 'competitive' market structure was the initial condition of reform rather than the outcome of it.

The government at that time, however, didn't regard this market structure as beneficial to the improvement of efficiency. The central government rather regarded that the structure was an indication of duplicative investment, waste of resources, and lack of division of labor, which should be rectified by the government. The government tried to reorganize TV makers into a nationwide division of labor by assigning some TV makers to change themselves into component makers. The government also tried to control the import of technology in order to avoid further duplication of investments and to let the industry take advantage of scale economy (Liu 1984, pp.186-191). However, it was difficult for the central government to reorganize the industrial organization since most of the TV makers were local firms. The attempt turned out little results in the case of monochrome TV sets.

But in the case of color TVs, there were only a few manufacturers with limited production capacity at that time (annual production in 1978 was 3800 units). So the central government was able to plan the division of labor and importation of technology for color TVs from scratch. The government appointed three firms in Beijing, Tianjin and Shanghai as assemblers of color TV sets, and imported production lines with annual capacity of 150 to 200 thousand units to each of them from Japanese electronics companies. Cathode-ray tubes (CRTs) for color TV sets were to be produced and supplied nationwide solely by a state-owned factory in Xianyang (Shaanxi Color CRT Works), which was set up by central government's investment. Dandong Tuner Works, which was renovated from a monochrome TV set factory, was designated as the sole supplier of tuners. Flyback transformers were to be produced by two firms located in Beijing and Suzhou (Aoyagi, 1990, Ministry of Machine Building and Electronics

[1] The ministry was called Fourth Ministry of Machine Building at that time and renamed the Ministry of Electronics Industry in the 1980s. From 1988 to 1993 it was merged with another ministry to become Ministry of Machine and Electronics Industry. After 1993, the latter ministry was split into two and the Ministry of Electronics Industry came to existence again. It will be referred to as the 'Ministry of Electronics Industry' or just 'the central government' in this paper.

Industry, 1991). The government intended to set up a color TV industry that was consisted of large scale, specialized and technologically advanced factories with high local content.

But this plan too was frustrated by rampant entry of local firms and military electronics firms into the color TV set production. Given financial autonomy by the reform of 1980, local television firms imported many color TV production lines with the support of local governments, mostly during the period of 1983 to 1985. Military electronics firms also entered the color TV production in the former half of 1980s. In 1986, the number of firms producing color TVs amounted to 75, while production lines with total capacity of 17 million units a year were under construction. This was far more than the expected domestic demand at that time. There were little prospects of color TV exports either, considering the high production costs in China at that time. Moreover the capacity of color TV assembly far exceeded the domestic production capacity of CRTs for color TVs, which was no more than 2 million in the 1980s. In order to keep the color TV assembly lines in operation China had to import a lot of CRTs, which aggravated the chronic trade deficit problem of China in the late 1980s.

The rapid entry of firms was driven by the motivation of state-owned enterprises to increase profits, and for the local governments to increase fiscal revenue. With highly set prices and rapidly growing demand, color TV production would surely generate a big profit to the investor. The central government stipulated that importation of production lines of color TV needed the approval of Ministry of Electronics Industry, but it was difficult for the Ministry to control small investments like color television assembly lines which cost only 1.5 to 7 million US dollars each, especially when they were funded by local governments. Besides, the central government's plan itself had defects. The capacity of Shaanxi Color CRT Works was 0.96 units annually at the first stage, but the capacity of three color TV assemblers only amounted to 0.5 million, leaving a room for others to assemble nearly 0.5 million units of color television. Moreover, the plan meant that the government estimated the domestic demand for color TVs to be 0.5 to 1 million in 1985 but it turned out that the actual demand was far greater than this estimation. Domestic consumption of color TVs amounted to 2.6 million in 1984.

There appeared a surge of imports of production lines of color TVs and other household electrical appliances lines in 1985. The State Council, recognizing the extraordinary situation, imposed a strict restriction on their import, which finally put an end to the surge.

**Liberalizing the prices of monochrome TV sets.** Since the beginning of economic reform, the Chinese government promoted the popularization of television in an attempt to raise the standard of living of the people and also to let them serve as a Party's channel of propaganda to the public. Besides this, in 1979, faced with the problem of monetary overhang, which had been created by overheating investment, the government decided to absorb money from the public by selling consumer durables including TV sets. From that year the production of monochrome television sets expanded rapidly while many TV sets were imported from Japan and Eastern Europe (Fig.1). Ministries of central government and local governments found a lucrative market in import trade of television sets and entered the business without the approval of the trade authority of the central

government. Import of monochrome television went out of control. As a result, more than 1 million TVs were piled up in warehouses in 1980.

Before 1980 the supply of monochrome TV set was chronically insufficient, but suddenly it became an oversupplied commodity. This caused a change in the distribution system of monochrome TV sets. Formerly, consumers had to acquire a rationing ticket, which was distributed to consumers through their workplaces or local communities once in a while, before going to the shop. The ticket stipulates the brand of television set it can afford to buy. This marketing system can work as a means to meet supply and demand for each brand of TV set, only when the consumer who is rationed a ticket will go to buy a TV set with a very high probability. But when supply exceeds demand, this rationing system will no longer work. Since consumers who got the ticket will not necessarily go to buy TV sets, TV makers and shops will have difficulty in selling their products if they only sell to those customers who have rationing tickets. In order to lessen the burden of stockpiles, makers and shops will sell TV sets to whoever comes to buy, regardless of tickets. Thus in 1980, the rationing system of monochrome TVs was abolished and the distribution was liberalized.

Because at that time only a few domestic makers were able to produce good quality TV sets, there appeared a big difference in the sales volume between good producers and average producers after the liberalization. Faced with this situation, the government decided in January 1981 to dissolve the unified price of 12 inch monochrome TVs and introduced price discrimination among different brands. The prices of a few famous makers' TV sets remained tightly controlled, while for TV sets produced by other makers, price supervision bureaus of local governments could set their prices below the official price within the limit of 10%. This policy was expanded in the next year to 14 and 16 inch TV sets and the lower limit was further lowered (WWX, 1986, 1987). Only the local governments and neither makers nor retailers were given the right to set prices.

The purpose of this policy was to promote the sales of average makers by diminishing the price competitiveness of good producers. This policy clearly shows that at least until 1981 the Chinese government didn't think that market competition would have beneficial effects.

From 1984 to 1985, the economy overheated and demand for monochrome TV sets increased rapidly, which brought about sellers' market. Faced with lucrative markets some TV makers sold their products to black-market peddlers who bid higher prices than state wholesalers, while selling second-rate TV sets to state wholesalers or not selling at all to them. This led to the deterioration of the relationship between TV makers and wholesalers. In the latter half of 1985 the government launched an austerity policy, which led the demand for monochrome TV sets to shrink sharply. 2.5 million units of monochrome TV sets were piled up in the warehouses of makers and wholesalers in the next year. This time the wholesalers refused to abide by the contracts with makers, and coerced agency contracts to makers, which imposed marketing risk only on the makers' side. In order to get rid of the huge stockpiles, makers sold their products at low prices. The government lowered the official price and allowed the firms to set prices by themselves if they were lower than official price. Thus the price of monochrome TV sets was virtually liberalized (GDB, November 27, 1986).

**Liberalizing the prices of color television**. Demand for color TV sets was weak in the first half of 1980s because their prices were way above the reach of ordinary citizens. The government tried to stimulate demand by lowering the prices in 1981 and 1982 (See Table 2-1). Since the overheating of economy in 1984 and 1985, demand for color TVs started to grow rapidly in the cities. Especially in 1985 the demand exploded, with import striking 4.99 million units and domestic production 4.3 million units (Fig.1). Since the latter half of 1985, the government restricted the import of color TV sets, which led to the aggravation of shortage after 1986.

Before describing the market situations after 1986, let us take a look at the process of distribution of TV sets. There were three routes of distribution. In the first route (A of Fig.2), state wholesalers in the makers vicinity (a) buy TV sets from makers, then TV sets are resold to the provincial wholesalers of consuming area (c), and then they are resold to city or county level wholesalers (d) and finally to retailers. This was the orthodox distribution system under planned economy. In the 1980s Ministry of Electronics Industry set up wholesalers (b) and joined the first stage of the above route (B). Besides these, in the post-reform era, makers started to skip the state wholesalers and sell directly to wholesalers or retailers of the consuming place (C), or even directly to consumers (D).[2] Until 1980 makers had to sell their products only through route A, but since 1980, in theory makers and state wholesalers became equal trading partners and makers were given the right to choose partners. However in practice wholesalers (a) and (b) could exercise their administrative power to force the makers to sell them as many TVs as they wanted (ZDB, September 6, 1987). In the retailing of color TV sets, a distribution system using rationing tickets, which I described earlier, was maintained until early 1990s.

Because of the rising income of urban households, severe shortage of color TV sets appeared after 1986. Rationing tickets were sold in black markets at several hundred yuan. Even having rationing tickets, it was difficult to afford a color TV set through normal channels, because state wholesalers sold TV sets which they obtained through official distribution channels to black markets. While in the supply side, official prices of color TV sets remained unchanged since 1982 while the production cost rose sharply because of the rising wages and the rising import prices of CRTs caused by the devaluation of yuan. In 1987 many TV makers ran in the red. The official prices were so low that it discouraged the makers to produce TV sets, while causing excess demand on the other hand. Thus in 1988, the government dissolved the unified prices of color TV sets and introduced 'float pricing,' which allowed local authorities to raise the prices of TV sets sold in their locality within the limit of official price plus 20% (Table 2-1). Prices of nine popular brands were set 30 to 50 yuan higher than other brands (ZWN, 1989). Although this policy stimulated the makers to produce more, the gap between supply and demand even widened since rampant inflation in 1988 led the consumers to a buying spree. The black market price of an 18 inch color TV set rose above 3000 yuan while the official price was 1700 yuan. TV sets were delivered out of provinces where price

---

[2] According to GDB, November 27, 1986, in the former half of 1986, 52.8% of total sales of monochrome and color TV sets were sold through route A, 39.6% through route C, 5.2% through route D and 2.5% were exported. Route B is not mentioned in this source.

Case 4:07-cv-05944-JST   Document 6226-1   Filed 07/28/23   Page 362 of 379

supervision was strict into provinces where black markets were overlooked. Makers, wholesalers and retailers of normal channels were not allowed to raise prices by their own, therefore they tried to earn rent by tie-in sales, demanding rebates, or selling to black markets. TV makers were motivated by the rent to expand production, but expansion was constrained by the supply of CRTs, the allocation of which was monopolized by the government. TV makers sought to procure CRTs outside the allocation, and thus black market of CRTs emerged (Wang Bingwu, 1988; *JJCK*, January 21, 1989).

**FIGURE 2    THE DISTRIBUTION PROCESS OF TV SETS**



Maker's Locality                        Consumer's Locality

Source: By the author. Chen Daisun (ed.) *Zhongguo jingji baike quanshu*, [Encyclopedia of Chinese Economy] (Beijing: Zhongguo Jingji Chubanshe, 1991) pp.670-671, pp.679-680; *ZDB*, September 6, 1987; *GDB*, November 27, 1986.

In January 1989, the government, in order to eradicate black market, announced a new policy, which restricted the distribution of color TVs only to state wholesalers and retailers who were given licenses by the government. The prices were fixed to the upper limit of 'float prices,' while the right to set prices was again monopolized by the central government. Besides this, special consumption tax of 600 yuan and 'localization development fund' (a kind of tax) of 300 yuan for each purchase of color TV set (it was altogether 500 yuan for 14 inch TVs) were introduced in order to check the extraordinary surge of demand (Table 2-1).

**Table 2-1 Prices of domestic color TV sets**

| | Before July 1981 | July 1981 | Dec. 1982 | April 1985 | May 1988 | Jan. 1989 | March 1990 | July 1992 | Jan. 1993 |
|---|---|---|---|---|---|---|---|---|---|
| | | Revision of official price | Revision of official price | Enforcement of supervision | Introduction of float pricing | Introduction of special tax | Revision of price and tax | Retail price in Chongqing | Retail price |
| 14 inch | 1,400 | 1,200 | 998 | 998 | 998-1,190 | 1,190 (+100) | 1,250 | 1,180 | 1,150 |
| 20 inch | 2,000 | 1,800 | 1,500 | 1,500 | 1,500-1,900 | 1,900 (+900) | 2,100 | 1,830 | 2,068 |
| 22 inch | 2,200 | 2,000 | 1,700 | 1,700 | 1,700-2,100 | 2,100 (+300) | 2,300 | 2,060 | 2,350 |
| 18 inch | | | | 1,330 | 1,330-1,700 | 1,700 (+300) | 1,900 | 1,790 | 1,800 |
| 21 inch with flat-squared CRTs | | | | | | 2,700* (+550) | 2,250 | 2,200 | |

**(Source):** Official prices are from WWX [1986]; ZWN [1989, 1990, 1991] Retail prices are from the author's field survey.
Notes: 1. The prices until March 1990 indicated in the table are 'official retail prices at producer's locality.'
2. TVs with additional functions were priced higher. This table indicates the prices of the most basic model.
3. The figures in the parentheses indicate special consumption tax plus 'localization development fund.' The 'fund' was abolished before March 1990.
4. * The official price of 21 inch color TVs before March 1990 was 2400 yuan, plus 900 yuan of tax and fund.

Figure 3: Production, Import and Export of Monochrome CRTs



(Source) Same as Figure 1

Figure 4 Production, imports and exports of color CRTs



(Source) Same as Figure 1

These restrictive measures and taxes, together with the austerity policy since the autumn of 1988, which affected the expectations of the people towards inflation, cooled down the buying spree of consumers. Since May 1989, sales of color TVs suddenly stopped and makers were flooded with stockpiles. In August a state-owned TV maker named Changhong Electric Ltd., stranded with 200 thousand units of stockpiles, lowered their selling price by 350 yuan without the permission from the government. Changhong's sales grew, but this act infuriated the other makers. They demanded the government to punish Changhong. However, faced with shrinking demand, it was inevitable to reduce price. Fifty days later the government reduced the official price of color TV sets (ZDB, June 2, 1991). Even with this price-cutting, the demand didn't recover and makers began to suffer from low operation and increasing costs. Thus in March 1990, the official retail price of color TVs were lifted by 5 to 12%, while 'localization development fund' was abolished and special consumption tax reduced. Retail prices including tax were reduced by 50 to 600 yuan (Table2-1). Local governments were ceded the right to set the price within the limit of 10% plus or minus the official price.

The demand, however, shrank further, because consumers expected that there would be more discounts. In 1991, domestic production of color TVs stood at 12.05 million units, while domestic sales was only 5.42 million and export was 2.6 million. With stockpiles amounting to 4 million units, makers and wholesalers ignored the price regulation and started to discount (ZWN, 1991; CD, August 30, 1992). In some districts, 18-inch TV sets, the official price of which was 1900 yuan (plus 300 yuan of special consumption tax), were sold at 1200 yuan. Thus in 1991 the prices of color TVs were virtually liberalized. Although the prices were out of control, the government still insisted on controlling them. In April 1992, the government let the 'China Audio-visual Association' set 'standard prices' of color TVs, but this had no effect. [1]

As in the case of monochrome TV sets, oversupply of color TV sets led to the abolishment of rationing tickets, and local governments, in order to promote sales of TVs, ceased to levy special consumption tax on them since around 1990, before it was formally abolished in April 1992 (JJRB, April 8, 1992; ZDB, April 15, 1992). Moreover, the distribution route of color TVs changed dramatically. State wholesalers (a) and (b) (See Fig.2), who forced TV makers to provide TV sets in the 1980s, voluntarily stopped forcing the TV makers, because TV set trade was no more profitable. Makers had to pave their way to the market by themselves. Since wholesalers and retailers in consumers' locality had more information on the market, makers strengthened their approach to them, and thus route C became the main route of distribution. Wholesalers (a) and (b) had no function of transmitting market information or sharing the risk of makers. They were just rent seekers using their administrative power to grab a share of the rent that accrued from the shortage of color TV sets. When the rent disappeared under excess supply, these wholesalers voluntarily threw away their administrative power and left the TV trade. During the period of shortage, makers had no rights to select their trade partners, but that

also meant that they didn't have to worry about marketing. Some makers didn't even have a marketing division. But since the market changed into excess supply, makers started to establish marketing divisions and put a large proportion of their resources into marketing. [2] TV makers started to put stress on consumer relations and advertising, while making efforts to turn up with new products.

**Liberalization of production.** As we have seen in the former section, prices of color TVs were liberalized in 1991, and those of monochrome TVs in 1986. It was not enough, however, to create real competition, because central planning regulated the production volume of each maker. The regulation was not abolished until 1991 in the case of color TV sets, and until 1990 in the case of monochrome TV sets. The reason why the government could hold control on production while its control on investment had been so weak was because CRTs, the most important component of TVs, were in short supply and the central government monopolized the allocation of them. [3] The Ministry of Electronics Industry held meetings twice a year gathering TV makers and CRT makers to determine the allocation plan of CRTs of the following period. Based on each maker's capacity and production plan the Ministry determined who sold how many CRTs to whom. After this meeting, makers directly traded with each other according to the plan. The government also determined the price. Occasionally some TV makers might actually buy less than the plan. In those occasions CRT makers were allowed to sell to other TV makers.

The shortage of CRTs was caused by small domestic production compared to the domestic production of TVs (See Fig.3, 4), and the restriction on the import of CRTs. If TV makers wanted more CRTs than allocated, they had to resort to black market trade or smuggling, which cost the makers dearly. The government could hold control of TV production as long as there was excess demand for CRTs, which was caused by excess demand for TVs. As duplicated imports of color TV production lines was regarded as a major policy failure, the Ministry of Electronics Industry tried to recover this failure by using their power over TV makers, which accrued from the monopoly of CRTs, as a means to adjust the dispersed structure of color TV industry. In 1985, the Ministry of Electronics Industry nominated 58 firms as "qualified color TV makers (Dingdian chang)", to which they gave the rights to receive allocation of CRTs. The unqualified makers were to be eradicated. However, since there were smuggling and black market of CRTs, more than 30 unqualified TV makers survived until the 1990s. [4] To restrict the number of makers to 58 still seems to be too many, since most of them are now facing difficulty to survive under the current international and domestic competition. But because the Ministry of Electronics Industry had to care for the interests of each province and other ministries, the Ministry didn't have a freehand to qualify makers. In the list of

---

[1] From interviews with officials of Changhong Electric Ltd., July 2, 1992; ZDB April 17, 1992, August 21, 1992; JJRB, January 15, 1992.

[2] From interviews with officials of Fujian-Hitachi Television Ltd., September 18-19, 1992; ZDB August 30, 1991.

[3] Other important components, such as flyback transformers and tuners, were also centrally allocated until 1989. The allocations of these components, however, were unimportant to the makers, because there were many makers of these components and the supply was no more in shortage in the latter half of 1980s. Setting up these factories needed much less investment than CRTs.

[4] From interviews with officials at the Ministry of Machine and Electronics Industry, February 25, 1993.

58 qualified makers, we find that almost every province, including poor provinces with only small markets, had at least one qualified maker. The Ministry neither had freehand on the allocation of CRTs. They had to let all qualified makers to have a share of the lucrative color TV market. These facts indicate that the central allocation of CRTs and the nomination of qualified makers worked as a protective policy of inefficient makers rather than being a measure to reorganize the dispersed structure.

The production of CRTs for monochrome TV grew rapidly after 1984, when many plants were imported and set up. In 1986, when the sales of monochrome TV sets sharply declined, production volume of CRTs became very close to that of monochrome TVs (See Fig. 3). In this year, as we have seen before, oversupply of monochrome TV sets had led to the liberalization of their prices. It also weakened the demand for CRTs, and as a result, the prices of CRTs for monochrome TV were also liberalized. Sales of monochrome TV sets, however, recovered in the next year, and so did the demand for CRTs, therefore central allocation of them was maintained.

But during the economic stagnation after 1989, the demand for monochrome TV sets diminished sharply, which led to the drop of the production of monochrome TV sets (See Fig. 1). Thus the demand for CRTs also shrank. On the other hand, production of CRTs grew, which led to the oversupply of CRTs in 1990. Because the TV set market was stagnant, it was difficult for the TV makers to buy CRTs according to the allocation plan. This made CRT makers to lose confidence in the allocation plan, and they started to pay more attention on direct contracts with TV makers. In 1991, the government ceased to make allocation plans, and the 26 monochrome CRT makers were thrown out in the market economy, which resulted in a fierce competition. Under the sellers' market before 1989, CRT makers would take on an opportunistic attitude towards buyers, breaching contracts and schedules of delivery. Now in the buyers' market, it was hard to recover the trust of buyers, so the CRT makers had to resort to discounts in order to promote sales. The price of 17-inch monochrome CRT, which was 350 yuan around 1987 and 1988, declined to 110 yuan in 1991. Under the fierce competition, some makers started to diversify to monitor displays, or expanded exports [5].

The central allocation of CRTs for color TV also collapsed during the stagnation after 1989. As we have seen before, CRTs for color TV were in severe shortage until 1988, with only one maker in China. But since 1989, Beijing-Matsushita Color CRT Ltd. and other companies started their operations, which boosted the supply. In 1991, domestic production of color CRTs was almost enough to supply for the color TV sets produced for domestic sales (See Fig.4). While in the same year demand for color TV sets plunged, causing oversupply of CRTs. In the summer of 1991, trades of 18-inch color CRTs were in effect liberalized.[6]

Nevertheless, the Ministry of Electronics Industry tried to hold control on color TV production. The Ministry regarded that, in order to eliminate the oversupply of color TV sets, the number of makers had to be reduced. In the summer of 1991, the Ministry ranked the 58 qualified makers into three groups. Five makers were ranked A, and another 7 or so were ranked B, which would enjoy preferential treatment in the allocation of CRTs and finance. The rest of the qualified makers were ranked C, which were encouraged to change business, and among them 16 makers would not receive allocations of CRTs any more.[7] This policy shows the government's intention to select the 'proper' firms to be left by means of the allocation of CRTs, a policy measure of planned economy, rather than leaving it to the market to decide who should survive.

But it is impossible to use the allocation as a means to adjust the market structure when supply exceeds demand. The preferential firm who receives a large amount of CRTs may not be able to use them all because the firm faces fierce competition in TV set market. In that case, CRT makers will sell those CRTs which the preferential makers failed to buy to other 'unpreferential' TV makers. It is also impossible to adjust the allocation plan, which is made every half year, to fit to the ever-fluctuating market structure. Thus, even though the government may manage to make allocation plan, it will be unreliable to the CRT makers and TV makers.

In 1992, Changhong Electric Ltd. and Shaanxi Color CRT Works, who were the most influential state-owned TV and CRT makers, signed a contract of CRT trade, without waiting for the government to make the allocation plan. Other makers followed this practice, and eventually the government gave up making allocation plan in that year. No allocation plans were made after this, with the exception of 29-inch color CRTs, which were in short supply for some more years.

**Competition among TV makers.** The abolishment of allocation plan opened up a free competition among TV set makers, which led to a major change in the market structure. There were 57 qualified makers and more than 30 unqualified makers in the early 1990s, each of which having a small market share with their own brand. After seven to eight years of competition, only 15 out of 57 qualified makers keep on producing with their original brand names today, and the rest either became subsidiaries of other makers or just stopped producing TV sets. At the same time, many new makers were established after 1992, and some have become top makers. Besides this, major household electrical appliance makers of Japan, Korea and Europe have entered the market by establishing joint ventures with some declining domestic makers. And to make the competition even fiercer, imported color TV sets have become cheaper. The Chinese government restricts imports of TV sets by quota and high tariff, but smuggling became rampant in the 1990s. The amount of smuggled color TV sets is estimated to be 3.5 million sets in 1995, 2 million sets in 1996, one million sets in 1997, five to six times more than official import figures (ZDB, March 10, 1998).

Because of entry of many new TV makers and imports, color TV set industry as a whole has a huge amount of over-capacity. According to the national industrial census in 1995, the capacity of color TV production was 44.7 million units annually, while the actual production of the same year was 20.6 million. Production volume reached 32.7 million in 1998, but there still remains unutilized capacity of more than 12 million units.

---

[5] From interviews with officials at Wuxi Electric Tube Works, September 10, 1993.
[6] From interviews with officials at Beijing-Matsushita Color CRT Ltd., September 16, 1992; interviews with Fujian Hitachi Color Television Ltd., September 18-19, 1992.

---

[7] From interviews with officials at Ministry of Machine and Electronics Industry, February 25, 1993; CD, July 11, 1991.

Through competition, some makers expanded their share to such level which had been unimaginable during the days when CRTs were allocated. Table 2-2 shows the concentration indexes of top TV makers. The first row indicates Herfindah's coefficients[8] calculated from the market shares of top 20 makers, and the second row shows the coefficients calculated from top 48 makers. From 1986 to 1989, as many color TV makers started operation, the concentration index declines, but since 1989, the index shows a tendency to rise. From Table 2-3, we can see that the market share of top ten makers has increased to 80% since 1996.

### Table 2-2 Market Concentration Indexes to the top makers (Herfindahl's coefficient)

| Year | 1986 | 1989 | 1990 | 1991 | 1992 | 1993 | 1994 | 1995 | 1996 | 1997 |
|------|------|------|------|------|------|------|------|------|------|------|
| Among top 20 makers | 0.060 | 0.056 | 0.057 | 0.059 | 0.085 | 0.073 | 0.086 | 0.089 | 0.096 | 0.103 |
| Among top 48 makers | | | 0.030 | 0.032 | 0.035 | 0.055 | 0.051 | | | |

(**Source**): Calculated by the author with the data of ZDGN and ZDB.

There have been many changes in the TV market since free competition began in 1992. In 1993 and 94, as we can see from Table 2-3, Japanese brands, such as Matsushita (Panasonic) and Sony, had large shares. Then in 1996, Changhong Electric Ltd. cut the prices of its products by 8 to 18%, triggering a price war among domestic TV makers (*ZDB*, April 16, 1996; May 16, 1997). This helped Changhong to expand its market share from around 10% in 1995 to 20.5% in 1996, and 25% in 1997, and to expand its production from 2.9 million color TV sets in 1995 to 4.8 million in 1996, 6.7 million in 1997 and 9.3 million in 1998. The share of domestic brands as a whole also expanded from 73.6% in 1995 to 81.5% in 1998, while Japanese brands' share diminished (*ZDB*, April 30, 1999).

**New entrants**. Even with severe over-capacity and competition still there are many new entrants in color TV market. There emerged several new TV makers in Guangdong since 1992. Among them the most successful must be TCL Group of Huizhou city. TCL was first established as a telephone equipment maker and entered the color TV production in 1993. In the beginning TCL relied on a factory located in Huizhou city that was owned by Hong Kong's Changcheng Electronic International Ltd. for the production of color TV sets, and TCL didn't produce TV sets by itself. TCL just put their brands on the color TV sets bought from this factory and sold them to the domestic market.

### Table 2-3 Market shares of top color TV brands

| Brand | Maker | 1993 | 1994 | 1996 | 1997 | 1998 |
|-------|-------|------|------|------|------|------|
| Changhong | Changhong Electric | 4.2 | 5.0 | 20.5 | 25.0 | 33.7 |
| Konka | Kangjia Electronic | 13.4 | 11.0 | 12.2 | 15.1 | 13.7 |
| Haier | Haier Group | - | - | - | - | 7.9 |
| TCL | TCL Group | - | - | 6.2 | 9.5 | 7.8 |
| Panda | Panda Group | 11.2 | 11.0 | 4.6 | 3.9 | 5.6 |
| Hisense | Haixin Electronic | 1.9 | - | - | 3.1 | 5.6 |
| Gaoshida | Guangdong Gaoshida | - | - | - | - | 3.6 |
| RGB | Chuangwei-RGB | - | - | - | 4.4 | 2.6 |
| Philips | Suzhou Philips, imports | - | - | - | 4.5 | 2.4 |
| Matsushita | Shandong Matsushita, imports | 10.7 | 14.7 | 13.3 | 6.7 | 2.3 |
| Sony | Shanghai Suoguang, imports | - | 3.5 | 5.5 | - | 2.3 |
| Toshiba | Dalian Toshiba, imports | 2.1 | - | 4.2 | - | 2.1 |
| Jinxing | Shanghai Guangdian | 4.2 | 3.7 | 2.7 | 4.5 | 2.0 |
| Xodeco | Xiahua Electronic | 3.3 | - | 2.7 | 3.8 | 2.0 |
| Beijing | Tianjin Tongguang Company | 5.4 | 4.0 | 7.1 | - | - |
| Share of top ten brands | | 56.5 | 52.8 | 79.0 | 80.5 | 85.2 |

(**Source**): The data for 1993 and 94 are from ZSTN for 96, 97, 98 from ZDB.

This factory owned by Changcheng was a factory to assemble TV sets for export. This type of operation, which falls into the category of "export processing and assembling," may enjoy a privilege to import the parts and components without paying customs duty, if all of its products are exported. Because of this tax exemption, the factory of Changcheng must be able to produce color TV sets much cheaper than other domestic companies. TCL, in order to sell domestically the TV sets assembled by the factory, set up a nominal joint venture with Shaanxi Color CRT Works, which had a license to sell color TV sets to the domestic market, and sold the color TV sets through this joint venture (Institute of Industrial Economics, 1998, pp.394-395). It was not until 1996 that TCL acquired its own factory by buying another factory in Shenzhen. TCL, utilizing its price competitiveness, initiated a price war in 1998 along with Kangjia[9] of Shenzhen, and became the third largest color TV producer in China next to Changhong and Kangjia in 1998, producing 2.8 million units of color TV sets that year (*ZDB*, April 30, 1999).

Shenzhen's Chuanwei(Skyworth)-RGB Electronic Ltd. is also a new maker that was established in 1994. Chuanwei also made use of its price competitiveness and entered the top ten makers in 1998. Besides these companies of Guangdong, major makers of other household electrical appliances entered the market. Haier Group, a major maker in

---

[8] We calculated Herfindahl's coefficient by $HI_n = \Sigma(S_i \ \Sigma S_j)^2$, $n$=20, 48. $S_i$ denotes the sales volume of firm i. The increase of this coefficient means market concentration to small number of firms.

[9] Kangjia was a Sino-Hong Kong joint venture established in 1979. It became a listed company in 1992, and the Hong Kong partner that established Kangjia sold most its shares to mainland-related companies in Hong Kong.

refrigerators, washing machines and air-conditioners in China, entered color TV market in 1997 by relying on Hefei Huangshan Electronics Ltd., a state-owned color TV maker in Anhui province, for producing color TV sets (*ZDB*, December 11, 1998). Haier, taking advantage of its brand image and its retailer network, expanded its market share in a short period (See Table 2-3). Chunlan Refrigerating Equipment Co. Ltd., a major air-conditioner and vacuum cleaner maker in China, also entered color TV market in 1998 by putting production out to two state-owned color TV makers in Wuxi and Tianjin (*ZDB*, August 20, 1999).

While these new entrants expanded their shares, most of the qualified makers in the 1980s disappeared from the scene. Let us look at the fate of the aforementioned top five makers in early 1990s that were ranked A by the Ministry of Electronics industry in 1991. Shanghai No.1 Television Works was merged with two other large state-owned TV makers of Shanghai, and they formed Shanghai Guangdian Group. The three firms ranked No. 1, No.2, and No.3 in 1986 in the sales ranking of the whole electronics industry, but during the 1990s, Shanghai Guangdian Group gradually lost its share in the color TV market. Shanghai Guangdian still occupies No.3 in the sales ranking of electronics industry, but a substantial share of their sales comes from their joint ventures with Sony, Sharp and JVC. Beijing Mudan Group is a company formed by the merger of two state-owned TV makers of Beijing, both of which having the longest experience in producing TV sets in China, which dates back to the early 1970s. Beijing Mudan was always in the top ten before 1994, but it disappeared from the list since then. Tianjin Tongguang Corporation, which is also the oldest TV maker in China, turned itself into a joint venture with Samsung of Korea in 1994. Xiongmao Electronics Group Corporation, or Panda Group, is running in the red since 1997. The only enterprise among the five that received preferential treatment in the early 1990s that still shows vitality is Changhong.

Among the 57 qualified makers in the early 1990s, 19 enterprises became subsidiaries or subcontractors of domestic companies. Qingdao's Haixin acquired 3 of them, while both Kangjia and Changhong acquired two (*ZDB*, various issues). Six former qualified makers turned themselves into a joint venture with foreign companies in order to elicit financial and managerial assistance from the foreign partners. There is no record of production on another 19 former qualified makers. It is very likely that they stopped producing color TV sets.

It has always been the government's wish to reorganize the electronics industry into a small number of competitive firms since the late 1970s. As we have seen in this section, the government, in an attempt to let the industry concentrate, used policy measures such as appointing color TV production bases, allocation of CRTs, and ranking the TV makers. Ironically enough, it was only after the government lost control on the industry and gave up these measures that concentration started. It also turned out that most of the enterprises that the government selected as preferential ones were uncompetitive when they faced real competition.

**Price wars.** Since Changhong opened up a price war in 1996, price wars happened almost every year. The war in 1997 was initiated by Guangdong's Korowa, which started selling cheap color TV sets. In 1998, Kangjia and TCL started selling a series of cheap

color TV sets, triggering another round of price war (*ZDB*, April 30, 1999). In November 1998, Changhong suddenly declared that they already bought 70% of domestically produced color CRTs, which they secretly started buying from summer, in order to monopolize more than 50% of domestic color TV market. This action, coinciding with the government's crackdown on smuggling of color CRTs, led to the shortage of color CRTs and rises of their prices (*ZDB*, December 1, 4, 1998). Changhong's challenge to dominate the domestic market failed, however. From April 1999, Changhong, in order to get rid of huge stockpiles, started to reduce the prices of its color TV sets by 15% in average, which led to another price war. The government issued The decree on banning unfair price competition in color TV sets and color CRTs," in order to stop the dumping and monopolistic behaviors of Changhong and other makers (*ZDB*, April 15, 1998). It is noteworthy, however, that Changhong and other companies entered into a price war just a week after this decree took effect.

The price war in color TV market led to the collapse of CRT prices. A 21-inch color CRT cost 980 yuan in 1996, but it fell below 500 yuan after price war broke out in April 1999. With two million units of stockpiles, color CRT makers ran in the red. In June 1999, eight major color CRT makers, including sino-foreign joint ventures, made a joint declaration to stop operation for a month to cease the collapse of CRT prices (*ZDB*, May 4, 1999). At the moment (February 2000), the price war in color TV market is still continuing. In January 2000, Changhong, in order to attack some of its rivals, sold 21-inch color TV sets at the price of 990 yuan in Qingdao.

Because the basic reason of price wars is over-capacity and over-production, it won't cease until some makers stop producing TV sets. The exit process in China is much slower than ordinary market economy, because loose implementation of bankruptcy law allows enterprises to keep on operation even when they are insolvent. Color TV makers can postpone payments to the CRT makers until they have sold their TV sets by drawing bills. And CRT makers in turn can postpone payments for their materials and bank loans. Therefore it is possible to continue producing TV sets for a while even when there are no sales of TV sets. There were four rounds of price wars since 1996, but there still remain more than 90 makers that produce color TV sets in China at present.

Undoubtedly, price wars have brought about a huge increase in consumer welfare. From Table2- 4, we can see that the price of a 21-inch color TV set fell 60% in ten years since 1989. TV makers also competed in the variety and quality of products and after-sales service, further enhancing consumer welfare. In this sense we can say that the transition to market economy of Chinese television industry was a success. But, at the same time, it is true that many people in Chinese television industry and the government are worried about the future of the industry. Price wars may force all enterprises to get into the red, depriving them of the ability to improve technology. The Chinese government still may not call the transition a success, because no maker has become a world giant yet.

Case 4:07-cv-05944-JST   Document 6226-1   Filed 07/28/23   Page 368 of 379

**Table2-4 Retail price of 21-inch color TV**

| Year | Yuan |
|------|------|
| 1989 | 3300 |
| 1990 | 3250 |
| 1992 | 2400 |
| 1994 | 2972 |
| 1995 | 2835 |
| 1996 | 2386 |
| 1997 | 1798 |
| 1998 | 1650 |
| April 1999 | 1280 |

**(Source):** ZDB, various issues

## 2.2: UNDERSTANDING TRANSITION

With the rapid growth of production, a constant decline of prices, and improvement in quality, we can fairly judge that the transition of Chinese television industry was a success. This experience, I believe, tells us many things about transition.

**It is not necessary for the government to have a comprehensive reform plan.** Proponents of "big-bang" insisted that there must be a reform-minded government that has the capability to implement reform thoroughly and a comprehensive reform plan in order to make the transition successful (See, for example, Lipton and Sachs, 1990). But in the story of Chinese television industry, we cannot find a reform-minded government, nor comprehensive reform plan, and the government's capability was limited. Rather, most of the Ministry of Electronics Industry's policies on television industry since the reform reflected their intention to maintain and strengthen their control on production, price and distribution. The plan to create a nationwide division of labor for color TV production in the early 1980s, the policy to qualify color TV makers since 1985, the central allocation of CRTs and the tightening of price and distribution control in 1989 are the examples of "market-unfriendly" policies. We can see from the policies that whenever the government faced some kinds of problems, they always thought that planning and control might lead to a better solution than just leaving it to the market.

This is not say, however, that all of the Chinese government's policies after the reform were anti-market. Delegations of rights to local governments and enterprises, price reforms, and enterprise reforms have market orientations. The Communist Party's decision on the establishment of "socialist market economy" in 1993 may be regarded as a comprehensive reform plan. But the study of television industry tells us that when the comprehensive plan appeared the process of transition was already in its final stage. It is noteworthy that major breakthroughs in transition proceeded during the period which the conservatives became politically powerful, propagating anti-liberalization or planning-oriented ideologies, namely 1986, 1989 to 1991.

We can say that the decentralization and reforms provided the precondition of transition, but the liberalization of prices and production, the most conspicuous mark of transition, were not the act of the government. It was the oversupply of products that forced the government to abandon its control on price and production.

**Institutional changes under surplus economy.** When we review the transition process of monochrome TV sets, color TV sets and CRTs, we find a common pattern as follows: (1) Decentralization induces rampant entry to the industry, which boosts the production capacity of the industry; (2) The macroeconomic austerity policy leads to oversupply and overcapacity of the product. Oversupply makes it difficult and meaningless for the government to hold control on price and production. If the period of oversupply lasts long enough the government will give up its attempt to resume control, and prices and production will be liberalized; (3) At the same time, the distribution system of planned economy collapses. Firms start to develop distribution networks among themselves, which will be more efficient than the system of planned economy.

The emergence of oversupply is the dividing ridge in transition. In a shortage economy, price liberalization will lead to inflation, liberalization of distribution may lead to rampant rent-seeking activities, and the liberalization of the allocation of materials may also lead to inflation or a contraction in the production of end products. Therefore there is a reason for the government to control prices, distribution and the allocation of materials. For example, the rationing system of TV sets using tickets can be regarded as a measure for the equal distribution of products. If the price elasticity of supply is small, the repression of prices and rationing system may increase consumer surplus.

But after the emergence of oversupply, these controls lose their meanings. Price controls become difficult and meaningless, since the prices start to decline. If the materials of production also turn into oversupply, central allocation of them will lose its meaning and collapse. It will become very difficult to earn profit just by changing hands, so the rent-seekers will voluntarily leave the business, and the makers will acquire full autonomy in marketing. The makers will be liberalized from restrictions on production and marketing, but it means that the makers have to pave their way to the market by themselves under unfavorable market conditions. Makers will be pressed to open up marketing routes that will expand their sales and transmit the information of the market most effectively. Makers need to establish their reputation as reliable suppliers, by abiding by contracts and delivery schedules, providing after-sales services, if they want to expand sales. After the collapse of the allocation of materials, makers must find a way to ensure the supply of materials by themselves, and to find the most efficient and reliable material maker. The new networks of distribution of end products, the new relationships between materials suppliers and vendors, and the customs of business, including the most efficient way of payment, which will be developed among enterprises, are the institutions that make market economy work efficiently. Interviews with TV set makers and CRT makers reveal that the formation of these new institutions, or to use the term by McMillan and Naughton (1992), institutional tatonnement, was a time-consuming and troublesome process. These institutions will only be developed by the voluntary action of enterprises. Enterprises will be most likely to take action during the period of oversupply.

The creation of these institutions will help to make the transition process irreversible. Because, by the creation of an efficient distribution network, makers will be sensitive to the changes in market, and the creation of an efficient network of materials and components suppliers will increase the price elasticity of supply of industries. Therefore, with the exception of such products as agricultural products that may be affected by weather, it is unlikely that the shortage of supply will emerge many times in the future. Even if shortage should appear in some sectors, it is unlikely that the distribution system of planned economy will be restored, because it will be less efficient than the existing distribution network.

The creation of the above institutions is an important part of transition. Market economy, unlike the model that is described in textbooks of microeconomics, consists not only of free prices and free trade, but also of various institutions among economic entities.

## Transformation of Shortage Economy to a Surplus Economy

### 1. Preconditions.

Not everything in planned economy is in short supply. Shortage and oversupply coexist in a planned economy. Oversupply in some industries in planned economies, however, will not initiate the transition to market economy. In the case of Chinese electronics industry, the oversupply of electronic parts in the early 1970s did not lead to their liberalization. In both the former Soviet Union and China, the machinery industry usually had huge amounts of production capacity during the era of planned economy, but the industry didn't transfer into market economy. Some preconditions are necessary for oversupply to initiate a process of transition.

First, firms must have the incentive to increase profits or diminish deficits. Otherwise, firms won't care much even if there is no market for their products, and they won't take the trouble to create new institutions. Therefore, decentralization and enterprise reform are the necessary conditions of transition.

Secondly, demand must have price elasticity. If the price level has no relation with demand, the seller won't cut the price even under oversupply. And if cutting prices and cutting distribution costs have no relation with the amount of sales, firms may not cut prices and seek new distribution channels, and destroy the system of planned economy.

The second precondition tells us why the process of transition won't start from capital goods industry. The demand for capital goods is not so elastic, because it mostly comes from state-owned enterprises, which are under soft-budget constraints. By contrast, consumer demand is price elastic even in planned economies. Especially in the case of non-staple consumer goods, such as durables, price elasticity is always quite large. Therefore, under the condition that firms have incentives to increase demand, the oversupply of durables may easily lead to price competition, and hence price liberalization.

### 2. The creation of surplus economy

In a planned economy, consumer goods are usually in short supply but their prices are high. Therefore by giving firms and local governments incentives and autonomy, investments to the consumer goods industry may be attracted quite easily. Hence the production capacity of consumer goods may expand quickly. But the surge of investments to consumer goods industry may lead to the expansion of aggregate demand, aggravate the shortage of capital goods, and even trigger inflation. Therefore, after successfully increasing investments to consumer goods industry, the government is often forced to adopt macroeconomic retrenchment policy. Retrenchment policy will lead to the oversupply of some consumer goods, which eventually will lead to liberalization of prices and production. After several cycles of overheating and retrenchment, more and more products will come out of shortage. Liberalization of consumer goods industry will stimulate the development of related capital goods industry. The capital goods industry will also, after several cycles of overheating and retrenchment, come out of shortage. Since 1995, almost every industry in China has been facing the problem of over-capacity and over-production. This means that China has already turned into a 'surplus economy.' In real-life market economy, not the market economy in textbooks, surplus capacities and surplus products are very commonplace. It seems, however, that present problem of over-capacity in China is severer than ordinary capitalist economy. The reason of this is that the exit process of inefficient firms is retarded.

It should be noted, however, that the above course of transition is not without risks. Liberalizing investment under distorted prices may lead to the aggravation of shortage of inputs, which may result in the limited expansion in the actual capacity of consumer goods industry. Furthermore, if we liberalize not only entry but also exit, then the supply of capital goods, which are usually priced low, may be reduced by exit of firms from capital goods industries, which makes the shortage even more serious. Therefore, in process of transition, the government must make efforts to ameliorate the imbalance between various industrial sectors. To relieve the bottlenecks of development, the government can make direct investments, or promote investments, strengthen control by using plans and rectify the distorted price structure. These measures, it is true, are not 'market-oriented,' but these, by helping the economy to get rid of shortage, will prepare the preconditions for the economy to move to a surplus economy.

The proponents of "big-bang" also insist the necessity to reform "shortage economy," but they only talk about suppressing the excess demand and don't talk about stimulating investment and increase supply. They think that stimulating investments under distorted price structure will necessarily aggravate the imbalance of industrial structure. But the Chinese experience tells us that by stimulating investments the imbalance of industrial structure can be improved, and the shortage of consumer goods can be ameliorated. Suppression of excess demand may be necessary, but if there is no increase in supply at the same time, it will lead to the contraction of production and reduce the welfare of the people.

The proponents of "big-bang" believe that without the rectification of distorted price structure by a reform-minded, clever and powerful government, market economy cannot develop healthily. But market economy is something more robust. It can develop even

under distorted prices and interference of the government. The main actors that create market economy are the firms and consumers, not the government.

The government, however, can enhance the function of markets. The current peril of Chinese television industry is caused by the slow exit process of inefficient enterprises. Loose and unclear bankruptcy rules, slow state-owned enterprise reforms and underdeveloped social security system are the reasons that cause the slowness. The government can enhance the effect of market competition by creating rules and systems.

## BIBLIOGRAPHY

Aoyagi, Hideyo [1990], *Watashi no ayunda chugoku jigyo*,[My experiences in China business (in Japanese)] (Osaka: Hedeyo Aoyagi)

CD, *China Daily*

Chinese CRT Makers Association for Democratic Management,[1992] (ed.) *Zhongguo xianxiangguan gongye fazhan shi*(Beijing: Dianzi Gongye Chubanshe)

GDB, *Guoji dianzi bao* (International Electronics News)

Hao Yanshu [1991] "Chugoku terebi sangyo ni okeru gijutsu iten",[Technology transfer in China's television industry] *Kikan chugoku kenkyu*, [China Studies Quarterly] No.22, p.180.

Institute of Industrial Economics, Chinese Academy of Social Sciences, [1998], *Zhongguo gongye fazhan baogao*, Beijing, Jingji guanli chubanshe.

Ishihara, Kyoichi,[1990] "1970 nendai madeno chugoku keizai kanri [Economic management of China until the 1970s] in Kazuko Mouri ed. *Moutakuto jidai no chugoku* [China in Mao Era: in Japanese], (Tokyo: Nihon kokusai mondai kenkyusho)

JJCK, *Jingji Cankao* [Economic Information]

JJRB, *Jingji Ribao* [Economic Daily]

David Lipton and Jeffrey Sachs, [1990], "Creating a Market Economy in Eastern Europe: The Case of Poland," *Brookings Papers on Economic Activity,* No. 1.

Liu Yin (eds.) [1986], *Dangdai zhongguo de dianzi gongye*, Beijing, Zhongguo shehui kexue chubanshe.

McMillan, John and Barry Naughton,[1992] "How to Reform a Planned Economy: Lessons from China" *Oxford Review of Economic Policy,* Vol. 8, No.1.

Ministry of Machine Building and Electronics Industry,[1991] *Zhongguo jidian gongye gugan zhongdian qiye huibian*, [Directory of major industrial firms in the Chinese machine building and electronics industry] (Beijing: Dianzi Gongye Chubanshe)

Murphy, Kevin M., Andrei Shleifer and Robert W. Vishny, [1992] "The Transition to a Market Economy: Pitfalls of Partial Reform," *Quarterly Journal of Economics*, Vol.107, No.3.

Wang Bingwu,[1988] "Gong muqian caidian shichang cunzai de wenti kan caidian jiage zhengce yingyu tiaozheng de biyaoxing," *Jiage Yuekan*, No.4.

WWX, Institute of Prices, State Pricing Bureau, [1986] *Wujia wenjian xuanbian 1979-1983* (Beijing: Zhongguo caizheng jingji chubanshe).

------, Institute of Prices, State Pricing Bureau,[1987] *Wujia wenjian xuanbian 1984-1985*, (Beijing: Zhongguo wuzi chubanshe).

------, Institute of Prices, State Pricing Bureau,[1990] *Wujia wenjian xuanbian 1989*, (Beijing:Zhongguo Wujia Chubanshe)

ZDB, *Zhongguo dianzi bao* [China Electronics News]

ZDGN, *Zhongguo dianzi gongye nianjian*, [Annual], [China Electronics Industry Yearbook], (Beijing, Dianzi gongye chubanshe).

ZSTN, *Zhongguo shichang tongji nianjian*, [Annual], [China Market Statistics Yearbook], (Beijing, Zhongguo tongji chubanshe),

ZWN, *Zhongguo wujia nianjian*,[Annual] [China Prices Yearbook] (Beijing: Zhongguo Wujia Chubanshe) .

Zhou Taihe (ed.)[1984] *Dangdai zhongguo de jingji tizhi gaige* [Economic Systems Reform of Modern China] (Beijing: Zhongguo shehui kexue chubanshe) pp.134-144.

# EXHIBIT 55



**ENGLISH.GOV.CN**
THE STATE COUNCIL
THE PEOPLE'S REPUBLIC OF CHINA

App | 中文 | 19 July 2023

HOME     NEWS     INSTITUTIONS     POLICIES     ARCHIVE     中文

# Price Law of the People's Republic of China

english.mofcom.gov.cn
Updated: Jan 19,2017 10:29 AM



### SERVICES

## Chapter I General Provisions

Article 1 This Law is enacted with a view to standardizing the price acts, giving play to the role of price in the rational allocation of resources, stabilizing the overall price level of the market, protecting the lawful rights and interests of the consumers and operators and promoting the sound development of the socialist market economy.

Article 2 This Law shall be applicable to price acts taking place within the territory of the People's Republic of China.

The prices referred to in this Law include the prices of commodities and the prices of services.

The prices of commodities mean the prices of all kinds of visible products and invisible assets. The prices of services mean collection of fees for all kinds of paid-for services.

Article 3 The State practises and gradually perfects the price mechanism shaped mainly by the market under macroeconomic regulation and control. Determination of prices shall be in line with the law of value, prices of most commodities and services shall be the market-regulated prices and prices of an extremely small number of commodities and services shall be the government-guided prices or the government-set prices.

Market-regulated prices mean those prices determined autonomously by the operators and formed through market competition.

The operators referred to in this Law mean the legal persons, other organizations or individuals engaging in the production and management of commodities or provision of paid services.

Government-guided prices mean those prices determined to guide the operators by the competent departments of price of the government or other departments concerned, the baseline prices and their range of fluctuations in accordance with the pricing authority and scope in pursuance of the provisions of this Law.

Government-set prices mean those prices determined by the competent departments of price of the government or other departments concerned in accordance with the pricing authority and scope in pursuance of the provisions of this Law.

Article 4 The State supports and promotes fair, open and lawful market competition, maintains normal price order and carries out administration, supervision and necessary regulation and control over price activities.

Article 5 The competent department of price under the State Council shall be uniformly responsible for the work related to prices nation wide. Other departments concerned under the State Council shall be responsible for the work related to prices concerned within their respective functions, responsibilities and scope.

The competent departments of price under local people's governments at or above the county level shall be responsible for the work related to prices within their respective administrative areas. Other departments concerned under local people's governments at or above the county level shall be responsible for the work related to prices concerned within their respective functions and responsibilities.

## Chapter II Price Acts of the Operators

Article 6 Market regulated prices shall be practised and determined autonomously by the operators in pursuance of this Law for commodity prices and services prices except those to which government-guided prices and government-set prices shall apply pursuant to the provisions of Article 18 of this Law.

Article 7 The operators shall, in determining prices, abide by the principle of fairness, being in conformity with law, honesty and credibility.

Article 8 Production and management costs and market supply and demand situation shall be the fundamental basis for the determination of prices by the operators.

Article 9 The operators shall exert efforts to improve the administration of production and management, reduce the cost of production and management, provide commodities and services for the consumers at reasonable prices and gain lawful profits in market competition.

Article 10 The operators shall, in accordance with their management conditions, establish and perfect internal price control system, accurately record and verify the production and management costs of commodities and services and must not indulge in fraudulent practices.

Article 11 The operators have the following rights in the conduct of price activities:

(1)autonomous determination of prices under market regulation;

(2)determination of prices within the range prescribed by government guided prices;

(3)determination of prices for trial sale of new products within the scope of products of government-guided prices and government-set prices with the exception of specific products; and

(4)report or filing a charge against acts infringing on his/her right of autonomous determination of prices in accordance with law.

Article 12 The operators shall, in conducting price activities, abide by laws and regulations, and observe the intervention measures and emergency measures of government-guided prices, government-set prices and legal prices determined in accordance with law.

Article 13 The operators shall, in selling, procuring commodities and providing services, display the clearly marked price in accordance with the provisions of the competent departments of price of the government, annotate relevant information such as the name, place of manufacture, specifications, grade, unit of price calculation and price of a commodity or the services item and rates.

The operators shall not sell commodities with additional price besides the marked price and shall not collect any fee not indicated.

Article 14 The operators shall not commit the following unfair price acts:

(1)manipulation of market price in collusion to the detriment of the lawful rights and interests of other operators or consumers;

(2)dumping at the lower-than-the-cost price and disrupting the normal production and management order to the;

(2)dumping at the lower-than-the-cost price and disrupting the normal production and management order to the detriment of national interests or the lawful rights and interests of other operators for the purpose of squeezing out other competitors or of sole occupancy of the market in addition to the disposal of such commodities as fresh and living commodities, seasonal commodities and overstocked commodites at reduced prices in accordance with law;

(3)concoction and spreading of price-hike information, jacking up prices and pushing up over rise in commodities prices;

(4)luring consumers or other operators to conclude transactions with it by employing falsified or misleading price means;

(5)practising price discrimination towards other operators with identical trading conditions in providing identical commodities or services;

(6)procuring, selling commodities or providing services at prices raised or reduced in disguised form by adopting such means as raising or lowering the grade;

(7)seeking exorbitant profits in violation of the provisions of laws and regulations; and

(8)other unfair price acts prohibited by laws and administrative regulations.

Article 15 All types of intermediate agencies shall abide by the provisions of this Law in the collection of fees in providing paid-for services. Where laws have other provisions, the relevant provisions shall be observed.

Article 16 The operators shall abide by the relevant provisions of this Chapter and maintain the order of the domestic market in selling import commodities and procuring export commodities.

Article 17 Industries organizations shall abide by price laws, regulations and strengthen price self-discipline and accept the guidance in the work by the competent departments of price of the government.

## Chapter III The Government's Pricing Act

Article 18 The government may enforce government-guided prices or government-set prices when necessary for the prices of the following commodities and services:

(1)the prices of an extremely small number of commodites vital for the development of the national economy and people's life;

(2)the prices of a small number of commodities the resources of which are rare or short;

(3)the prices of commodities under natural monopoly management;

(4)the prices of essential public utilities; and

(5)the prices of essential non-profit services.

Article 19 The pricing catalogs of the Central Government and local governments shall be the basis for the pricing authority and specific applicable scope of government-guided prices and government-set prices.

The Central Pricing Catalog shall be compiled and revised by the competent department of price under the State Council and published upon approval of the State Council after submission.

Local Pricing Catalogs shall be compiled by the competent departments of price of people's governments of the provinces, autonomous regions and municipalities directly under the Central Government in pursuance of the pricing authority and specific applicable scope provided for in the Central Pricing Catalog and published upon examination and finalization of the competent department of price under the State Council after the verification and approval of the people's governments at the corresponding level.

Local people's governments at all levels below people's governments of the provinces, autonomous regions and municipalities under the Central Government shall not compile pricing catalogs.

Article 20 The competent department of price and other departments concerned under the State Council shall determine the government-guided prices and government-set prices in pursuance of the pricing authority and the specific applicable scope provided for in the Central Pricing Catalog; among which the government-guided prices and government-set prices of the prices of essential commodities and services shall be submitted to the State Council for approval in accordance with provisions.

The competent departments of price and other departments concerned of people's governments of the provinces, autonomous regions and municipalities directly under the Central Government shall determine the government-guided prices and government-set prices for implementation in their respective areas in pursuance of the pricing authority and specific applicable scope provided for in Local Pricing Catalogs.

Municipal and county people's governments may, in accordance with the authorization of people's governments of the provinces, autonomous regions and municipalities directly under the Central Government and in pursuance of the pricing authority and specific applicable scope provided for in Local Pricing Catalogs, determine the government-guided prices and government-set prices for implementation in their respective areas.

Article 21 Determination of the government-guided prices and government set prices shall be based on the average costs of society and market supply and demand situation of relevant commodities or services, requirements of national economic and social development and tolerance of society and difference in prices in procurement and marketing, wholesale and retail, regions and seasons shall be followed.

Article 22 Competent departments of price and other departments concerned of the government shall, in determining the government-guided prices and government-set prices, conduct price and cost survey and solicit the views of the consumers, operators and the quarters concerned.

When the competent departments of price of the government conduct price and cost survey of the government-guided prices and government-set prices, the units concerned shall truthfully report the information and provide necessary account books, documents as well as other materials.

Article 23 The system of testimony shall be established under the chairmanship of the competent departments of price of the government to solicit the views of the consumers, operators and the quarters concerned to authenticate its necessity and feasibility in determining the government guided prices and government-set prices of the prices of public utilities, prices of nonprofit services and prices of commodities under natural monopoly management which involve the vital interests of the masses.

Article 24 The government-guided prices and government-set prices shall, upon determination, be released by the department determining the prices to the consumers and operators.

Article 25 The specific applicable scope and price level of the government-guided prices and government-set prices shall be adjusted at an appropriate time in the light of the economic performance and in pursuance of the pricing authority and procedures provided for.

The consumers and operators may come up with proposals for adjustment of the government-guided prices and government-set prices.

**Chapter IV Regulation and Control of Overall Price Level**

Article 26 Stabilization of the overall market price level constitutes an important macro-economic policy goal of the State. The State determines the regulatory goals of the overall market price level on the basis of the requirements of the development of the national economy and tolerance of society, integrate them into the national economic and social development plan and bring about their realization through comprehensive employment of monetary, fiscal, investment, import-export and other policies and measures.

Article 27 The government may establish essential commodities reserve system and establish the price regulatory fund to regulate prices and stabilize the market.

Article 28 To keep up with the requirements of price regulation and administration, the competent departments of price of the government should establish the price monitoring system to monitor the change in prices of essential commodities and services.

Article 29 The government may bring into effect the protective prices in procurement when the market purchasing prices of such essential farm produce as food grains and other produce are too low, and adopt corresponding economic measures to guarantee its realization.

Article 30 When there is a marked rise in the prices of essential commodities and services or there exists the possibility of a marked rise, the State Council and people's governments of the provinces, autonomous regions And municipalities directly under the Central Government may take such intervention measures as restricting the price differential ratio or profit ratio, prescribe the restricted price, practise the price rise submission system and the price adjustment record system with respect to part of the prices.

People's governments of the provinces, autonomous regions and municipalities directly under the Central Government shall, in adopting the intervention measures prescribed in the preceding paragraph, submit the same to the State Council for the record.

Article 31 When drastic fluctuations and other abnormal conditions occur in the overall market price level, the State Council may take emergency measures of temporarily concentrated pricing authority, partial or comprehensive price freeze nationwide or in parts of the regions.

Article 32 Upon elimination of the circumstances for the implementation of the intervention measures and emergency measures in pursuance of the provisions of Articles 30 and 31 of this Law, the intervention measures and emergency measures shall be lifted in time.

**Chapter V Price Supervision and Inspection**

Article 33 The competent departments of price of people's governments at or above the county level shall conduct supervision and inspection over price activities in

accordance with law and impose administrative sanctions against law-breaking acts in price in pursuance of the provisions of this Law.

Article 34 The competent departments of price of the government may, in conducting price supervision and inspection, exercise the following powers:

(1)inquire the interested party or the person involved and demand that he/she provides testimonial materials and other information relating to law-breaking acts in price;

(2)inquire into and duplicate the account books, invoices, vouchers, documents and other materials relating to law-breaking acts in price, and check the bank information relating to law-breaking acts in price;

(3)investigate the properties relating to law-breaking acts in price, and may order the interested party to suspend the relevant business when necessary; and

(4)may register for safekeeping in advance under circumstances that the evidences may be destroyed and lost or may be difficult to obtain later, the interested party and the person involved must not transfer, conceal or destroy the same.

Article 35 When subject to the supervision and inspection of the competent departments of price of the government, the operators should truth fully provide the account books, invoices, vouchers, documents and other materials necessary for supervision and inspection.

Article 36 Functionaries in charge of price of government departments must not use the materials or information obtained in accordance with law for any purposes other than price control in accordance with law and must not divulge the business secrets of the interested party.

Article 37 Consumer organizations, price supervision organizations of workers and staff members, neighborhood committees, villagers' committees and other organizations as well as the consumers have the right to conduct social supervision over price activities. The competent departments of price of the government should give full play to the supervisory role of the masses in price.

Media units have the right to exercise supervision over price through public opinion.

Article 38 The competent departments of price of the government should establish the reporting system of law-breaking acts in price.

All units and individuals have the right to report on law-breaking acts in price. The competent departments of price of the government should give encouragement to the informants and be responsible to keep the secret for the informants.

**Chapter VI Legal Liability**

Article 39 Any operator who fails to implement the government-guided prices, government-set prices and legal price intervention measures and emergency measures shall be ordered to make a rectification, confiscated of the illegal gains and may be concurrently imposed a fine of less than five times of the illegal gains; where there is no illegal gains, a fine may be imposed; where the circumstances are serious, an order shall be issued for the suspension of business operations for consolidation.

Article 40 Any operator who commits any of the acts listed in Article 14 of this Law shall be ordered to make a rectification, confisticated of the illegal gains and may be concurrently imposed a fine of less than five times of the illegal gains; where there is no illegal gains, a warning shall be administered and a fine may be imposed; where the circumstances are serious, an order shall be issued for the suspension of business operations for consolidation, or the business license revoked by the agency of industry and commerce administration. In the case of separate provisions of relevant

laws on penalties and penalty authorities for acts listed in Article 14 of this Law, the provisions of relevant laws may be observed.

Acts listed in Item (1) and Item (2) of Article 14 of this Law national in nature shall be confirmed by the competent department of price under the State Council; those of the provinces and below the provinces regional in nature shall be confirmed by the competent departments of price of people's governments of the provinces, autonomous regions and municipalities directly under the Central Government.

Article 41 Any operator who causes consumers or other operators to pay more prices for illegal price acts should refund the portion overpaid; where damage has been caused, liability for compensation shall be borne according to law.

Article 42 Any operator who violates the provision of clearly marking prices shall be ordered to make a rectification, confisticated of the illegal gains and may be concurrently imposed a fine of less than RMB 5,000 Yuan.

Article 43 Any operator who has been ordered to suspend relevant business operations but does not suspend the operations, or transfers, conceals and destroys properties registered for safekeeping in accordance with law shall be imposed a fine of more than 100% less than three times of the relevant business revenue or of the value of the properties transferred, concealed or destroyed.

Article 44 Whoever refuses to provide information required for supervision and inspection in accordance with the provisions or provides false information shall be ordered to make a rectification and administered a warning; whoever fails to make a rectification on expiry of the specified time period may be imposed a fine.

Article 45 Local people's governments at all levels or the departments concerned of people's governments at all levels that violate the provisions of this Law, overstep the pricing authority and scope in determining and adjusting prices without authorization or fail to implement the legal price intervention measures and emergency measures shall be ordered to make a rectification and may be criticized in a circular; the person-in-charge held directly responsible and other persons directly responsible shall be given administrative sanctions according to law.

Article 46 Any functionary in charge of price who divulges state secrets, business secrets and abuses power, indulges in self-seeking misconducts, neglects duties, extorts and accepts bribes constituting a crime shall be investigated of the criminal liability in accordance with law; where a crime has not been constituted, sanctions shall be imposed according to law.

## Chapter VII Supplementary Provisions

Article 47 Fee collection by state administrative agencies should be effected in accordance with law, items for fee collection put under stringent control and scope of fee collection and rates restricted. Specific control measures for fee collection shall be worked out separately by the State Council.

Provisions of relevant laws and administrative regulations apply to interest rates, exchange rates, premium rates, and securities and futures prices, and this Law shall not be applicable thereto.

Article 48 This Law shall enter into force as of May 1, 1998.

*(All information published in this website is authentic in Chinese. English is provided for reference only.)*

Copyright© www.gov.cn | About us | Contact us

Registration Number: 05070218

All rights reserved. The content (including but not limited to text, photo, multimedia information, etc) published in this site belongs to www.gov.cn.

Without written authorization from www.gov.cn, such content shall not be republished or used in any form.