# EXHIBIT 2



STATE of NEW YORK        )
                         )          ss:
COUNTY of NEW YORK       )

### *CERTIFICATE OF ACCURACY*

This is to certify that the attached document, *"IRI-CRT-00003490 – IRI-CRT-0003497"*, originally written in *Chinese*, is to the best of our knowledge and belief, a true, accurate and complete translation into *English*.

Dated: December 17, 2018

Seth Wargo
Consortra Translations

Sworn to and signed before ME this
1 7th day of December ,
2018.

Notary Public

JAMES G MAMERA
Notary Public - State of New York
No. 01MA6157195
Qualified in New York County
My Commission Expires Dec. 4, 2022

D☐ P☐ Exhibit 8392
Deponent ZHANG
Date 3/4/19 Rptr AT

Your
legal
translation
partner

006

# IRICO Group Corporation
# Auditing Department Document

IRICO Auditing (2001) No.1

A Brief on Auditing Results for IRICO (USA) Inc.

To IRICO Group Corporation,

      Under the instructions from IRICO Group Corporation leadership, our department assembled a three-person audit team led by department head ZHANG Xingxi and we served an audit notice to IRICO (USA) Inc. via fax on 27 April 2001. The audit team arrived in Fremont, California, USA on 27 May shortly before commencing field audit work. First of all, the audit team requested LIU Feng, General Manager of IRICO (USA) Inc., to supply documents and filings that are required to perform the audit, such as accounting documents, accounting books, and financial statements dating back to the year when the company was incorporated. However, the company's General Manager LIU Feng claimed that, before 1998, the company's finance function had been controlled by HUANG Xueli, the shareholder acting on behalf of the company's US investors and they didn't hand over accounting records when they pulled out of the company in 1998, and hence he could not supply such records. With regard to accounting records dated after 1998, General Manager LIU Feng alleged because the company was transferred to INB on 10 April 2001, which meant that all property of the original company including such records are in the possession of the acquirer and the acquirer's consent is required in order to access such records. After repeated negotiations initiated by the audit team, LIU Feng only provided records as follows:

1

IRI-CRT-00003490 - Translation

007

1. Stubs of checks written by the company to external parties from 1 January 1998 to 30 April 2001;

2. Bank statements from 1 January 2000 to 30 April 2001;

3. IRICO (USA) Inc.'s Sale and Purchase Agreement;

4. A photocopy of the Resolutions of the 2nd-term Board of Directors, IRICO (USA) Inc.

Given that IRICO (USA) Inc. was already sold to US-based INB by LIU Feng without authorization on 10 April 2001, LIU Feng refused to provide accounting records required for the performance of the proposed audit, such as annual financial reports and accounting documents that are related to the company's business operations. As a result, the basic requirements for the performance of an audit could not be met. And given limitations on auditor's statutory duties and powers as well as means of inspection, the financial statements of IRICO (USA) Inc. under the audit, which would truly reflect its accounting information and lead to complete and accurate audit results, could not be revealed, making it impossible for the audit team to duly carry out its audit work. As a result, the audit team could only conduct some partial investigations over IRICO (USA) Inc. based on limited materials provided by LIU Feng, such as check stubs, some bank statements, and IRICO (USA) Inc.'s Sale and Purchase Agreement.

In carrying out the investigations, the audit team has mainly performed the following tasks in relation to the materials provided by LIU Feng:

1. Recorded each stub of checks written by the company since 1998;

2. Categorized the expenses by economic activity in line with the available stubs of checks;

3. Checked bank statements from 1 January 2000 to 30 April 2001 one by one;

4. Checked corporate credit card expenses with transaction value above 1,000 US dollars since 1998;

5. Reviewed IRICO (USA) Inc.'s Sale and Purchase Agreement signed by LIU and sought advice from a local law firm in relation to the content of the agreement;

6. Conducted inquiries and consultations with relevant US authorities in relation to company profile, shareholder identities, and corporate credit profile of the acquirer INB Co..

2

008

I. Company Profile

Based in Fremont, California, USA, IRICO (USA) Inc. was initially established as a joint venture between IRICO Group Corporation and its US partners. Incorporated in July 1995, the company had registered capital of 1.75 million US dollars. In particular, China National Electronics Imp & Exp Caihong Co. had a 34.3% stake in the company by contributing 600,000 US dollars in cash; Caihong (Hong Kong) Co. had a 45.7% stake in the company by contributing 800,000 US dollars in cash; HUANG Xueli had a 10% stake (including awarded performance shares worth 50,000 US dollars) by contributing 125,000 US dollars in cash, totalling 175,000 US dollars in cash; HUANG Maike had a 10% stake by contributing 175,000 US dollars in cash. In October 1995, IRICO Group Corporation dispatched LIU Feng and ZHU Jian to the US. ZHU Jian hasn't been to the US since March 1997 due to visa issues.

According to LIU Feng, an agreement was reached on 26 February 1998 for the US investors MS HUANG Xueli and MR HUANG Maike to unload their shareholdings in the company as collaboration with the siblings had been allegedly extremely difficult. And the brother and the sister refunded capital in the amount of 1 million US dollars to the company in 1998. Since then, the company has been entirely run by us, with LIU Feng solely in charge. During the audit, it was found that LIU Feng obtained permanent resident visa (green card) in the US on 20 July 2000. On 10 April 2001, the company was sold by its general manager LIU Feng to US-based INB Co. without authorization.

II. Company revenue and expenditures

1. Situation Prior to 1998

As LIU Feng failed to supply accounting documents for the company dated before 1998, the audit team could not verify the company's operational results prior to 1998.

2. Situation since 1998

① Based on check stubs provided by LIU Feng, the company posted expenditures of 914,670.45 US dollars cumulatively from 1 January 1998 to 30 April 2001;

3

009

    ② Based on check stubs from the company's opening bank as supplied by LIU Feng, the company procured fixed assets worth 40,417.48 US dollars cumulatively from 1 January 1998 to 30 April 2001;

    ③ As the company did not provide bank statements for 1998 and 1999, the audit team could not verify its operating revenue, fund investment gains or interest income during both years. Based on bank statements from the company's opening bank as supplied by LIU Feng, the company posted operating revenue of 122,943.00 US dollars and operating costs of 112,896.00 US dollars from 1 January 2000 to 30 April 2001, respectively.

    ④ Based on bank statements from the company's opening bank as supplied by LIU Feng, the company posted interest income of 12,105.59 US dollars from 1 January 2000 to 30 April 2001, including:

    10,444.06 US dollars in 2000

    1,661.53 US dollars in 2001.

    ⑤ Based on bank statements and fixed asset lists, the company had net assets of 119,581.42 US dollars as of 30 April 2001, including:

        Net value of fixed assets of 30,364.17 US dollars

        Bank deposits of 89,217.25 US dollars.

    III. Investigations over Sale and Purchase Agreement

    IRICO (USA) Inc. was sold to US-based INB Co. by LIU Feng on 10 April 2001. As far as the Sale and Purchase Agreement provided by LIU Feng is concerned, the audit team entrusted Mr. SHI Xiaodong, General Manager of San Francisco-based container service unit of China Ocean Shipping (Group) Company, to seek legal consultation with law firm Morrison and Foerster LLP.

4

CONFIDENTIAL                                       IRI-CRT-00003493 - Translation

010

According to Cedric C. Chao, a lawyer at Morrison and Foerster LLP, the signing process and basis of the agreement itself complied with US laws.

Taking into account the lawyer's opinions, the audit team believes that the Sale and Purchase Agreement signed by LIU Feng violated the parent company's intent and damaged the parent company's interests in the following ways:

1. It is against the spirit and intent of the resolutions reached by the IRICO (USA) Inc.'s Board of Directors on 9 March 2000. IRICO (USA) Inc.'s Board of Directors fully entrusted LIU Feng to sell the company on 9 March 2000 under the conditions that the transaction price shall be 1 million US dollars and total consideration for the deal shall be delivered by 31 December 2000 at the latest. The Board of Directors did not authorize the provision in the agreement signed by LIU Feng that IRICO Group Corporation shall support the company to realize annual net profit of 700,000 US dollars as a condition. That was tantamount to selling the company for free and resulted in asset losses on the part of IRICO (USA) Inc.

2. As the company name IRICO (USA) Inc. was also transferred to the acquirer as part of the deal, the acquirer would continue to use the corporate name IRICO (USA) Inc. to conduct business. In case the acquirer is engaged in any improper or illegal operating activity, it would damage the reputation of IRICO Group Corporation to some extent. And in case that IRICO Group Corporation plans to start a subsidiary again in the US, it would not be able to use the name IRICO (USA) Inc. any longer.

As far as the agreement signed by LIU Feng is concerned, Cedric C. Chao advised that we could sue LIU Feng and the acquirer INB Co. on the ground that "LIU Feng signed the Sale and Purchase Agreement against the spirit and intent of the resolutions reached by the IRICO (USA) Inc.'s Board of Directors on 9 March 2000", demanding to terminate the performance of the agreement.

Nonetheless, if the dispute concerning the selling of IRICO (USA) Inc. is to be resolved via a lawsuit in the US, IRICO Group Corporation would have to pay legal fees of a significant amount. According to Cedric C. Chao, a lawsuit that costs 100,000 US dollars in legal fees is commonplace in the US.

5

011

In order to appropriately handle this issue, the audit team sought consultations with Mr. SHI Xiaodong, General Manager of San Francisco-based container service unit of China Ocean Shipping (Group) Company and the latter's Financial Director, MS ZHOU Yuzhen. They think it is fairly easy to register a company in the US and pursuing a lawsuit in the US that involves hefty legal fees would be meaningless and unworthy since currently IRICO (USA) Inc. was only a shell company without property investments or any debt dispute in the country.

In order to get more information about the acquirer, the audit team visited a number of agencies of the California government to make inquiries about INB Co.. Incorporated on 24 October 1997, INB's registered address is 3695 STEVENSON BLVD BLD STE 236 FREMONT, CA 94538. According to a corporate filing with the California state government dated 12 January 1998, INB had only one shareholder, LIU Feng, with equity capital of 50,000 US dollars. In a corporate filing dated 18 March 1998, INB's CEO, secretary, and financial director positions were all assumed by LIU Feng. In a corporate filing dated 7 May 2001, the person assuming general manager, secretary, and financial director positions at INB changed into SUN Xiaolin.

According to LIU Feng, he initially established INB Co. and held a stake in the company on behalf of Hong Kong resident SUN Xiaolin, before having the company transferred to SUN Xiaolin on 30 March 2001. Later on, LIU Feng, on behalf of IRICO Group Corporation, signed the IRICO (USA) Inc.'s Sale and Purchase Agreement with SUN Xiaolin on 10 April.

IV. Outstanding issues

1. LIU Feng sold IRICO (USA) Inc. without authorization and refused to provide materials requested by the auditing department for the performance of the proposed audit, such as annual financial reports and accounting documents related to the company's business operations, making it impossible for the audit team to duly carry out its audit work. Such actions constituted serious violation of the company's rules and policies.

2. By reviewing the stubs of checks written by the company since 1998, the audit team found that the company paid 400,000 US dollars in three batches in April 1999, for the purposes of short-term fund investments and expenses related to the company's electronics, tooling, and other businesses in 1998 and 1999.

6

012

However, the audit team could not verify related revenue as LIU Feng refused to provide relevant financial statements.

3. As the general manager of IRICO (USA) Inc., LIU Feng sold the company to US-based INB Co. without approval from IRICO Group Corporation, resulting in losses of state-owned assets. Such an action constituted the violation of regulations related to supervision and management of state-owned enterprises' assets.

4. IRICO (USA) Inc.'s Sale and Purchase Agreement hurt the interests of IRICO Group Corporation. First of all, pursuant to the resolutions of the 2nd-term Board of Directors, IRICO (USA) Inc., LIU Feng was entrusted to sell the company for 1 million US dollars, but the terms of the agreement dictate that IRICO Group Corporation shall support the company to realize annual net profit of 700,000 US dollars as a condition, which not only runs contrary to the original intention of the resolutions but also results in asset losses on the part of IRICO Group Corporation. Second, in case the acquirer is engaged in any improper or illegal operating activity, it would damage the reputation of IRICO Group Corporation to some extent as the company name IRICO (USA) Inc. was also transferred to the acquirer as part of the deal and the acquirer continues to use the corporate name IRICO (USA) Inc. to conduct business.

5. In a corporate filing with California state government dated 18 March 1998, the acquirer INB's CEO, secretary, and financial director positions were all assumed by LIU Feng and the person assuming general manager, secretary, and financial director positions at INB was changed into SUN Xiaolin in a corporate filing dated 7 May 2001.

V. Suggestions

LIU Feng was apparently involved in suspected violations of laws and discipline, though there is insufficient evidence for now. To investigate LIU Feng's wrongdoings, there exist two major challenges: first, LIU Feng lives in the US, he holds a Green Card, it is impossible he would return to China; second, evidence collection would involve US laws, which suggests too many big obstacles and hefty costs, making it hard to do. To pursue a civil case, IRICO Group Corporation would have to pay a significant amount of US dollars for legal fees, which makes little sense as the potential gains could not make up for the losses.

7

013

If IRICO Group Corporation takes administrative actions against LIU Feng in accordance with relevant management processes, such as removing LIU Feng's employee status, it could be the best outcome for him as such a scenario is what he desires. Therefore, if there exist other potential solutions, any immediate administrative actions should be refrained.

Given the above reasoning, we have following recommendations in relation to IRICO (USA) Inc. and LIU Feng's situation:

1. As LIU Feng sold IRICO (USA) Inc. without an approval from IRICO Group Corporation, which was against the parent company's intent and damaged the parent company's interests, it is advisable to not acknowledge IRICO (USA) Inc.'s Sale and Purchase Agreement signed between LIU Feng and INB while awaiting an opportunity to pursue and reserve the rights to pursue legal action against LIU Feng;

2. Continue to negotiate with LIU Feng, urging him to immediately terminate the Sale and Purchase Agreement he signed with INB Co. and execute the resolutions reached by the IRICO (USA) Inc.'s Board of Directors on 9 March 2000 by selling the company at the price of 1 million US dollars.

3. IRICO Group Corporation should take administrative actions against LIU Feng in accordance with relevant management processes at an appropriate time.

4. As efforts aimed at dealing with IRICO (USA) Inc. and LIU Feng's situation would involve cross-border issues and any international legal actions would be confronted with deep policy implications and too many thorny obstacles, coupled with limitations on statutory duties and powers as well as means of inspection, it would be very hard for IRICO Group Corporation to pursue this case. It is recommendable to seek advices from relevant higher-level authorities on how to deal with it.

27 July 2001
Auditing Department
(Chop) IRICO Group Corporation

| CC: Supervisory Office | Archive (2) |
|---|---|
| Auditing Office | Printed and Distributed on 27 July 2001 |
| Printed by: QING Bei     Reviewed by: ZHANG Xingxi | No. of Copies: 4 |

8

CONFIDENTIAL                                                        IRI-CRT-00003497 - Translation

# 彩 虹 集 团 公 司
# 审 计 部 文 件

彩审[2001]1号

## 关于彩虹（美国）公司审计情况汇报

彩虹集团公司：

　　根据集团公司领导的指示，我部组成了以部长仇兴喜为组长的三人审计小组，2001年4月27日我部以传真的方式向彩虹（美国）公司下达了审计通知。审计小组于5月27日到达美国加利福尼亚州福利蒙特市，随即展开审计工作。首先审计小组要求公司总经理刘丰提供自公司成立以来历年的会计凭证、帐簿和财务报告等实施审计所必需的资料。但刘丰总经理称，1998年以前，公司的财务是由美方股东黄雪莉控制，98年美方撤股时，未将会计资料移交我方，因而无法提供；98年以后的会计资料因公司已在2001年4月10日转让给INB公司，原公司的一切物品归受让方所有，若要求提供须经受让方同意。经过审计小组多次交涉，刘丰仅提供了以下资料：

1

由 扫描全能王 扫描创建

CONFIDENTIAL

IRI-CRT-00003490

007

1. 1998年1月1日至2001年4月30日公司对外开具的支票存根;

2. 2000年1月1日至2001年4月30日的银行对帐单;

3. 彩虹（美国）公司转让合同;

4. 彩虹（美国）公司第二届董事会决议（复印件）;

由于刘丰将彩虹（美国）公司已在2001年4月10日擅自转让给美国INB公司,刘丰对审计所需的与经营活动有关的财务决算报表、会计凭证等会计资料不予提供,无法满足审计最基本的条件,受法定职责、权限和检查手段的局限,无法揭示被审计的彩虹（美国）公司会计报表反映会计信息的真实情况,作出完整、正确的审计结果,使正常的审计工作无法进行。审计小组只能根据刘丰所提供的支票存根和部分银行对帐单、彩虹（美国）公司转让合同等资料对彩虹（美国）公司的一些情况进行调查了解。

在调查了解实施过程中审计小组主要对其提供的资料进行了以下工作:

1. 对其所提供1998年以来支出的支票存根进行了逐一登记;

2. 对登记的支出按支票存根所列的经济内容进行了分类;

3. 对2000年1月1日至2001年4月30日银行对帐单进行了逐一核查;

4. 对98年以来1000美元以上的公司信用卡支出进行了核查。

5. 对其所签定的公司转让合同进行了审查,并就合同内容咨询了当地的律师行。

6. 对受让方INB公司的基本情况以及股东、公司资信等情况

2

 由 扫描全能王 扫描创建

CONFIDENTIAL

IRI-CRT-00003491

008

向美国政府有关部门进行了调查咨询。

一、 公司基本情况

彩虹（美国）公司是集团公司与美方合资成立的合资公司，地址位于美国加利福尼亚州福利蒙特市。公司成立于1995年7月，注册资本175万美元，其中：彩虹进出口公司投资60万美元现金，占34.3%股权；彩虹（香港）公司投资80万美元现金，占45.7%股权；黄雪莉投资12.5万美元现金，送其干股5万美元，合计17.5万美元，占10%股权；黄麦克投资17.5万美元现金，占10%股权。1995年10月彩虹集团公司派刘丰、竺简赴美。1997年3月以后竺简因签证问题在没有去美国。

据刘丰反映由于与合资外方黄氏兄妹的合作极为困难，1998年2月26日与外方达成协议，美方从公司撤股，并在1998年一年内归还我方100万美元资本金。自此，该公司转由我方独自经营，由刘丰一人负责，审计调查时得知刘丰于2000年7月20日取得美国永久居住身份（绿卡）。2001年4月10日公司被总经理刘丰擅自转让给美国INB公司。

二、公司财务收支情况

1． 1998年以前的情况

由于刘丰未能提供 1998 年以前的公司会计资料，因此，无法对1998年以前的经营情况进行核实。

2． 1998年以来的情况

① 据刘丰提供的支票存根资料，公司自 1998 年 1 月 1 日

3

 由 扫描全能王 扫描创建

CONFIDENTIAL                                                   IRI-CRT-00003492

至 2001 年 4 月 30 日累计发生费用 914,670.45 美元。

　　② 根据刘丰提供的公司开户银行支票存根，公司自 1998 年 1 月 1 日至 2001 年 4 月 30 日累计购置固定资产 40,417.48 美元。

　　③ 由于公司未提供 98、99 年度的银行对账单，其 98、99 年度的经营收入、基金投资收益和利息收入等无法核实。依据刘丰提供的公司开户银行 2000 年和 2001 年银行对账单，公司 2000 年 1 月 1 日至 2001 年 4 月 30 日累计主营业务收入 122,943.00 美元，累计主营业务成本 112,896.00 美元。

　　④ 依据刘丰提供的公司开户银行 2000 年和 2001 年银行对账单，公司 2000 年 1 月 1 日至 2001 年 4 月 30 日利息收入 12,105.59 美元。其中：

　　　　2000 年　10,444.06 美元

　　　　2001 年　 1,661.53 美元

　　⑤ 依据刘丰提供的公司开户银行对账单和固定资产清单，截止 2001 年 4 月 30 日，公司净资产 119,581.42 美元。其中：

　　　　固定资产净值　　　30,364.17 美元

　　　　银行存款　　　　　89,217.25 美元

　　三、　合同调查情况

　　2001 年 4 月 10 日彩虹（美国）公司被刘丰转让给美国 INB 公司。根据刘丰所提供的转让合同书，审计小组委托中国远洋运输（集团）总公司在旧金山所设的集装箱服务有限公司总经理石小东先生，找到美国美富律师事务所对该合同进行了法律方面的

4

由 扫描全能王 扫描创建

CONFIDENTIAL

IRI-CRT-00003493

咨询。该律师事务所赵启民律师认为就合同本身来讲，合同签定的程序、依据均符合美国的法律。

综合律师的意见，审计小组认为刘丰所签订的转让合同有以下方面是违背了集团公司意愿并损害了集团公司利益的：

1、不符合彩虹（美国）公司 2000 年 3 月 9 日董事会决议精神和意愿。彩虹（美国）公司 2000 年 3 月 9 日董事会全权委托刘丰出让彩虹（美国）公司，是以 100 万美金的价格出让，且转让资金收回最迟应在 2000 年 12 月 31 日前，并没有象刘丰所签订的合同中所写的同时要彩虹集团公司每年支持其 70 万美金利润作为前提。这实际上是变相将公司无偿转让了，并造成彩虹（美国）公司资产的损失。

2、由于彩虹（美国）公司转让的同时"彩虹（美国）公司"的名称也被转让了，受让方继续使用彩虹（美国）公司来做生意，如有不正当或非法经营行为将会给彩虹集团的声誉造成一定的损害。例如彩虹集团再来美国投资注册公司将不能使用"彩虹（美国）公司"这个名称。

对于刘丰转让彩虹（美国）公司所签定的合同，美国律师事务所赵启民律师认为可按"刘丰没有按照彩虹(美国)公司 2000 年 3 月 9 日董事会决议精神和意愿签定了本转让合同"为理由起诉刘丰和买方 INB 公司，终止其合同的执行。

但如在美国通过法律诉讼打官司解决彩虹（美国）公司转让一事，彩虹集团将要支付一笔相当数额的美金，按美国律师赵启

5


由 扫描全能王 扫描创建

民所说，在美国打一场官司花10万美金是一件很平常的事。

就此问题审计小组又专门与中国远洋运输（集团）总公司在旧金山所设的集装箱服务有限公司总经理石小东先生、财务总监周玉珍女士进行了交谈咨询。他们认为在美国注册公司是一件很容易的事情，如目前彩虹（美国）公司在美国没有不动产投资，没有债权债务纠纷，仅仅是一个空壳公司，在美国起诉打官司花上一大笔律师费，意义不大，得不偿失。

为了解受让方公司的情况，审计小组先后到加州政府多个部门查询INB公司的情况。IBN公司成立于1997年10月24日，注册地点是3695 STEVENSON BLVD BLD STE 236  FREMONT, CA 94538。1998年1月12日上报州政府的公司资料显示只有一名股东为刘丰，股本50,000美元。1999年3月18日上报资料中公司CEO、秘书、财务总监均为刘丰，2001年5月7日公司上报的资料将总经理、秘书、财务总监变更为孙晓林。

据刘丰讲：INB公司是香港人孙晓林委托他注册成立并持股，直到2001年3月30日才被其转到孙晓林名下的。4月10日他又代表彩虹与孙晓林签定了转让彩虹（美国）公司的。

四、存在的问题

1、刘丰将彩虹（美国）公司擅自转让并拒绝向审计部门提供所需的与经营活动有关的财务决算报表、会计凭证等审计资料，使正常的审计工作无法进行，是严重的违规违纪行为。

2、从刘丰所提供的1998年以来支出的支票存根中审计小组发

6

 由 扫描全能王 扫描创建

现，公司99年4月分三次支付40万美元，用于短期基金投资和98、99年度经营电子产品、模具等业务的费用支出，因刘丰不提供有关财务帐目，所以无法对此收益情况进行核实。

3、公司总经理刘丰未经集团公司同意，于2001年4月10日擅自将彩虹（美国）公司转让给美国INB公司，造成国有资产流失，违反了国有企业财产监督管理的有关规定。

4、转让公司的合同中，损害了彩虹集团公司的利益。首先，第二届董事会决议委托其以100万美元转让，而合同中却以彩虹集团须每年支持其获得70万美元的利润为条件，不仅违背了董事会决议的原意，而且使公司资产造成损失；其次，在转让的同时"彩虹（美国）公司"的名称也被转让了，受让方继续以彩虹（美国）公司的名称经营，如有不正当或非法经营行为将会给彩虹集团的声誉造成一定的损害。

5、在1999年3月18日上报加州政府资料中受让方INB公司的CEO、秘书、财务总监均为刘丰，2001年5月7日公司上报的资料才将总经理、秘书、财务总监变更为孙晓林。

五、建议

刘丰涉嫌违法违纪问题明显，但目前证据不足。刘丰问题如要查证有两大难点：一是刘丰在美国，持有绿卡，不可能再回国；二是取证涉及到美国的法律问题，障碍太大太多，费用也不会少，很难做到。作为民事案子，可打民事官司，但彩虹集团将要支付一笔相当数额的美金，意义不大，得不偿失。

7

 由 扫描全能王 扫描创建

CONFIDENTIAL                                                                IRI-CRT-00003496

013

集团公司依据有关管理制度对刘丰其作出行政处理，如开除厂籍，这可能是刘丰最好的结局，也是刘丰所希望的。所以，在还有其他解决问题的可能情况下，不宜立即作出行政处理。

签于上述情况，对彩虹（美国）公司及刘丰问题的处理建议如下：

1、刘丰未经集团公司同意擅自转让彩虹（美国）公司，违背了集团公司意愿并严重损害了集团公司的利益，对其与美国 INB 公司所签定的彩虹（美国）公司的转让合同不予承认，等待机会，追究和保留追究对刘丰的法律责任。

2、继续和刘丰交涉，要求其立即终止与美国 INB 公司所签定的转让合同，执行彩虹（美国）公司 2000 年 3 月 9 日董事会决议，按 100 万美金的价格转让。

3、集团公司应依据有关管理制度在适当时候对其作出行政处理。

4、由于彩虹（美国）公司及刘丰问题的处理涉外跨国，而涉外案件政策性强，障碍太大太多，集团公司受法定职责、权限和检查手段的局限，很难查处此案，建议请示上级机关由有关部门处理。

二00一年七月二十七日

| | |
|---|---|
| 抄送：监察处 | 档（2） |
| 审计办公室 | 2001 年 7 月 27 日印发 |
| 打印：庆蓓 | 校对：仇兴喜　　份数：4 |

8

由 扫描全能王 扫描创建

CONFIDENTIAL　　　　　　　　　　　　　　　　　　　　　　　IRI-CRT-00003497