John M. Taladay (*pro hac vice*)
Evan J. Werbel (*pro hac vice*)
Thomas E. Carter (*pro hac vice*)
Andrew L. Lucarelli (*pro hac vice*)
BAKER BOTTS LLP
700 K Street, N.W.
Washington, DC 20001
Telephone:    (202) 639-7700
Facsimile:    (202) 639-7890
Email: john.taladay@bakerbotts.com
            evan.werbel@bakerbotts.com
            tom.carter@bakerbotts.com
            drew.lucarelli@bakerbotts.com

*Attorneys for Defendants Irico Group Corp.
and Irico Display Devices Co., Ltd.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Master File No. 4:07-cv-05944-JST (N.D. Cal.) |
| | MDL No. 1917 |
| This Document Relates to:<br><br>ALL INDIRECT PURCHASER ACTIONS | **DEFENDANTS IRICO GROUP CORP. AND IRICO DISPLAY DEVICES CO., LTD.'S OPPOSITION TO INDIRECT PURCHASER PLAINTIFFS' MOTION *IN LIMINE* NO. 7: TO LIMIT ARGUMENT THAT PRICE-FIXING WAS PRO-COMPETITIVE OR NECESSARY**<br><br>Date: December 15, 2023<br>Time: 2:00 pm<br>Judge: Hon. Jon S. Tigar<br>Courtroom: 6, 2nd Floor |

1    Defendants Irico Group Corp. and Irico Display Devices Co., Ltd. (collectively, "Irico" or
2 "Irico Defendants") oppose Motion in Limine No. 7: To Limit Argument that Price-Fixing was Pro-
3 Competitive or Necessary (ECF No. 6245) ("Motion") filed by the Indirect Purchaser Plaintiffs'
4 ("IPPs"), and submit the following response in opposition.

5                                                    **ARGUMENT**

6    IPPs' Motion attempts to circumvent this Court's previous order and seek a more expansive
7 restriction than the Court previously permitted.  This Court previously held that "evidence and
8 argument of procompetitive effects is relevant insofar as it is probative of whether Defendants'
9 information exchanges served a legitimate business purpose."  Order on Motions in Limine
10 Regarding the Alleged Conspiracy's Operation (ECF No. 4982) ("Order").  Though purporting to
11 ask for a "similar" order here, IPPs seek a broader order that would preclude all evidence regarding
12 any procompetitive effect or legitimate business purposes. That is not the law and not what this
13 Court previously ordered. The Court should preclude IPPs from seeking exclusion of large swaths
14 of relevant evidence and argument that this Court has already determined the Irico Defendants are
15 legally entitled to present as part of their defense, and should deny the instant Motion.

16    In 2015, IPPs filed a motion in limine that essentially sought the same relief it appears to
17 seek here—evidence and argument regarding "purportedly pro-competitive justification for
18 Defendants' agreements relating to the price, supply, production, or customers of CRT."  *See* Notice
19 of Motions and Motions in Limine (Nos. 1-18) (ECF No. 3558) ("2015 MIL) at 57-59.  The
20 Defendants objected, arguing that the evidence they intend to offer, "that some or all of their
21 activities are consistent with normal business behavior and not participation in a conspiracy," would
22 have been excluded if the Court granted IPPs' 2015 MIL.  Defendants' Joint Opposition to Direct
23 Action Plaintiffs' Motions in Limine Nos. 1-18 and Indirect Purchaser Plaintiffs' Motions in Limine
24 Nos. 2, 3, 8, 9, 12, 13, 15, 16, & 18 (ECF No. 3681) at 60-62.  Defendants argued that "one of the
25 key questions for the jury will be whether Defendants engaged in a per se price-fixing conspiracy."
26 *Id.* at 61.

27    This Court agreed with the Defendants in its Order, reasoning that:

28

IRICO DEFENDANTS' OPPOSITION TO            1           Master File No. 4:07-cv-05944-JST
IPPS' MOTION *IN LIMINE* NO. 7                                              MDL No. 1917

> DAPs are likely to present evidence that Defendants exchanged competitive information. They are also likely to ask the jury to infer an underlying agreement to fix prices based in part on those information exchanges. If they do, Defendants are entitled to rebut that inference by presenting evidence and argument showing that their information exchanges were for legitimate business purposes unrelated to any conspiracy to fix prices. *In other words, Defendants are entitled to submit evidence and argument, not to show that the alleged price fixing agreement was justified, but to show that the alleged information exchanges are not necessarily indicative of a price fixing agreement.*

Order at 14 (emphasis added). The Court then concluded that:

> The DAPs' motion is therefore *DENIED to the extent it seeks to prevent Defendants from providing evidence or argument to rebut the DAPs' claim that the existence of information exchanges is indicative of an underlying agreement to fix prices*. It is GRANTED, however, in all other respects.

*Id.* (emphasis added).

For the same reasons that IPPs' 2015 MIL was partially denied, this instant Motion also fails. Here, IPPs again presume that they have already met their burden to prove that the conspiracy existed and therefore a *per se* analysis is required. But the evidence and arguments that IPPs attempt to preclude here are not justifications for a *per se* violation, but instead defenses as to whether there *was a per se violation in the first instance* based on circumstantial evidence of the Irico Defendants' conduct. IPPs have not established that there was a *per se* violation by the Irico Defendants or what the scope of any such violation may have been. Here, the Irico defendants dispute whether the conspiracy existed as alleged and whether the Irico Defendants ever joined the purported conspiracy. Thus, the factual issues at trial will include whether some or all of the Irico Defendants' conduct regarding its information exchanges or communications with competitors were undertaken as a result of independent, legitimate business decisions or due to the purported price-fixing agreement, and the Irico Defendants should not be precluded from presenting rebuttal evidence on these key issues. *See In re Citric Acid Litig.*, 191 F.3d 1090, 1094 (9th Cir. 1999) ("the defendant can 'rebut an allegation of conspiracy by showing a plausible and justifiable reason for its conduct that is consistent with proper business practice'" before the burden shifts back to the plaintiff "to provide specific evidence tending to show that the defendant was not engaging in permissible competitive behavior"); *see also, United States v. Patel*, No. 21-cr-00220 (D. Conn.

Dec. 15, 2021), Ruling and Order on Pretrial Motions (ECF No. 457) at 15-18 (denying in part the government's motion in limine to preclude evidence regarding the "supposed commercial benefits" of the conspiracy because the evidence was relevant as "relat[ing] to whether Defendants joined the charged conspiracy, whether the conspiracy existed as alleged, and whether Defendants had the requisite intent to join such a conspiracy").  This is especially true in light of the Chinese pricing regulations that set floor prices for CRTs that Chinese manufacturers could not charge below, which were tied to the average cost of its Chinese competitors.

Much of the evidence that IPPs say supports their claim of a conspiracy consists of communications among CRT manufacturers involving information exchanges.  The motive and purpose of these communications is central to both IPPs' allegations and the Irico Defendants' defenses.  IPPs undoubtedly will attempt to portray to the jury that such communications were connected to or indicative of a price-fixing agreement.  This Court has already ruled that the Irico Defendants are entitled to counter such evidence for the purpose of showing "the alleged information exchanges are not necessarily indicative of a price fixing agreement."  Order at 14-15.  Other courts have supported this Court's conclusion.  *See In re Static Random Access Memory (SRAM) Antitrust Litig.*, No. 07-MD-01819 CW, 2010 WL 5138859, at *8 (N.D. Cal. Dec. 10, 2010) ("a court must consider a defendant's pro-competitive explanation for its exchange of price and other critical business information when a plaintiff relies on circumstantial evidence") (citing and quoting *In re Coordinated Pretrial Proc. In Petroleum Prod. Antitrust Litig.*, 906 F.2d 432, 440 (9th Cir. 1990)); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986) ("conduct as consistent with permissible competition as with illegal conspiracy does not, standing alone, support an inference of antitrust conspiracy").  The Court should not limit its prior ruling.

Similar to exchanging pricing information, other conduct at issue in this case, such as the Irico Defendants' participation in trade associations or in joint ventures or merger discussions, are also not *per se* illegal and are merely probative.  *See In re Citric Acid Litig.*, 191 F.3d at 1099 (finding that participation in trade organizations that collected and audited productions and sales

figures is legitimate business behavior); *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 709-710 (7th Cir. 2011) (the exchange of competitively sensitive information during merger talks does not, standing alone, constitute anticompetitive conduct).  If IPPs present such conduct to the jury and ask the jury to infer an agreement to fix prices based in part on such conduct, then the Irico Defendants are entitled to rebut by presenting evidence that such conduct was undertaken for a legitimate business purpose, unrelated to any conspiracy to fix prices. *Id.*

The cases cited by IPPs often confirm the Irico Defendants' position.  Indeed, the authorities cited by IPPs expressly recognize that, as laid out in *In re Citric Acid* and *Matsushita* above, the Irico Defendants are entitled to offer any and all justifications at trial for purposes of rebutting any inference of an agreement in a *per se* case.  *See, e.g., In re Sulfuric Acid Antitrust Litig.*, 743 F. Supp. 2d 827, 857-61 (N.D. Ill. 2010) (finding genuine issues of fact for trial as to whether Defendants' decisions to shut down plants and outsource distribution were rational business behavior in a declining market of the type that does not run afoul of antitrust laws); *New York v. Rattenni*, 81 N.Y.2d 166, 171-73 (1993) (stating that Defendant would be entitled to present facts regarding the business necessity of a covenant not to compete at trial as a defense to indictment for *per se* violation of the Donnelly Act).

This Court should therefore deny IPPs' efforts to limit the allowable evidence supporting the Irico Defendants' defenses, including those related to pro-competitive justifications for some of its conduct, that the Irico Defendants may offer at trial.  To limit such evidence would be tantamount to striking these defenses, which is the essence of Plaintiffs' request.

## **CONCLUSION**

For all the foregoing reasons, the Irico Defendants respectfully request that the Court deny IPPs' Motion in Limine No. 7: To Limit Argument that Price-Fixing was Pro-Competitive or Necessary.

///

///

///

| | |
|---|---|
| Dated: September 1, 2023 | Respectfully submitted, |
| | */s/ John M. Taladay*<br>BAKER BOTTS LLP<br>John M. Taladay (*pro hac vice*)<br>Evan J. Werbel (*pro hac vice*)<br>Thomas E. Carter (*pro hac vice*)<br>Andrew L. Lucarelli (*pro hac vice*)<br>700 K Street, N.W.<br>Washington, D.C. 20001<br>202.639.7700<br>202.639.7890 (fax)<br>Email: john.taladay@bakerbotts.com<br>even.werbel@bakerbotts.com<br>tom.carter@bakerbotts.com<br>drew.lucarelli@bakerbotts.com |
| | *Attorneys for Defendants Irico Group Corp. and Irico Display Devices Co., Ltd.* |