MARIO N. ALIOTO, ESQ. (56433)
LAUREN C. CAPURRO, ESQ. (241151)
TRUMP, ALIOTO, TRUMP & PRESCOTT, LLP
2001 Union Street, Suite 482
San Francisco, CA 94123
Telephone: (415) 563-7200
Facsimile: (415) 346-0679
E-mail:    malioto@tatp.com
           laurenrussell@tatp.com

*Lead Counsel for the Indirect-Purchaser Plaintiffs*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# OAKLAND DIVISION

| | |
|---|---|
| IN RE CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | MDL NO. 1917 |
| | Case No. 07-cv-5944-JST |
| This Document Relates to: | **INDIRECT PURCHASER PLAINTIFFS' RESPONSE TO IRICO DEFENDANTS' MOTION *IN LIMINE* NO. 4:** |
| Indirect Purchaser Class Action | |
| | **TO PRECLUDE THE PARTIES FROM CONFLATING CNEIECC WITH ANY IRICO ENTITY** |
| | Hearing Date: December 15, 2023 |
| | Time: 2:00 p.m. |
| | Courtroom: 6, 2nd Floor |
| | The Honorable Jon S. Tigar |

Indirect Purchaser Plaintiffs ("IPPs") submit this Response to Irico Defendants' Motion *in Limine* to preclude the parties from "conflating" China National Electronics Import & Export Caihong Co. ("CNEIECC") with any Irico entity ("Defs.' MIL No. 4," ECF No. 6256). IPPs oppose Irico's motion because (1) the relief sought is impermissibly vague and (2) it improperly seeks to resolve disputed factual issues.

I.   ARGUMENT

  A.  The Court Should Deny Irico's Motion as Impermissibly Vague

Irico seeks to preclude IPPs from "conflating" CNEIECC with "any Irico entity" at trial and to preclude IPPs from "referring to or implying a corporate affiliation between CNEIECC and any Irico entity." *See* Irico [Proposed] Order at 1. The motion should be denied as impermissibly vague.

Motions *in limine* cannot be so vague that the evidence a party seeks to exclude is unidentifiable. *See Grouse River Outfitters Ltd. v. Oracle Corp.*, No. 16-cv-02954-LB, 2019 WL 8918902, at *3 (N.D. Cal. June 21, 2019) ("To serve the[ir] purposes effectively, however, motions in limine must identify the evidence at issue and state with specificity why such evidence is inadmissible." (quoting *Colton Crane Co., LLC v. Terex Cranes Wilmington, Inc.*, No. CV 08-8525PSG(PJWx), 2010 WL 2035800, at *1 (C.D. Cal. May 19, 2010))). However, Irico fails to identify precisely what evidence it seeks to exclude or what testimony it considers objectionable. Such imprecise relief should result in the denial of Irico's motion. *See, e.g.*, *Freezor v. Golden Bear Rest. Grp., Inc.*, No. 2:09-cv-03324-GEB-CMK, 2012 WL 2873353, at *1, *3 (E.D. Cal. July 12, 2012) (denying motions *in limine* as vague and overbroad where it was "unclear what evidence [was] involved" and there was "no particular testimony or documents . . . sought to be excluded"). "[M]otions *in limine* should rarely seek to exclude broad categories of evidence, as the court is almost always better situated to rule on evidentiary issues in their factual context during trial." *Colton Crane*, 2010 WL 2035800, at *1. Irico's request to exclude a vague universe of evidence goes against the very purpose of a motion *in limine* "to admit or preclude *specific documents*." *M.H. v. Cnty. of Alameda*, No. 11-cv-02868-JST, 2015 WL 894758 at *9 (N.D. Cal. Jan. 2, 2015).

### B. The Court Should Deny Irico's Motion Because It Seeks to Resolve Facts That Are in Dispute

By asking this Court to preclude evidence that Irico had any "affiliation" with CNEIECC, Irico seeks a ruling upon disputed issues of fact in the guise of a motion *in limine*. Irico argues it has proven "beyond any reasonable dispute" that, during the relevant time period, CNEIECC was a separate legal entity and that, in arguing otherwise, IPPs have "latched on to a few loose strands of evidence." Defs' MIL No. 4 at 1.

While courts have broad discretion when ruling on motions *in limine*, such motions are not an appropriate avenue to resolve factual disputes or to weigh evidence. *Miranda v. U.S. Sec. Assocs., Inc.*, No. 18-CV-00734-LHK, 2019 WL 2929966, at *5 (N.D. Cal. July 8, 2019). "[I]t is inappropriate for the Court to make factual determinations as to disputed questions of fact through an in limine order." *Tyco Thermal Controls, LLC v. Redwood Indus.*, No. 06-cv-07164 NC, 2012 WL 12919843, at *4 (N.D. Cal. Sept. 28, 2012); *see also Jackson v. Cnty. of San Bernardino*, 194 F. Supp. 3d 1004, 1008 (C.D. Cal. 2016) ("[A] motion in limine should not be used to resolve factual disputes or weigh evidence. That is the province of the jury.") (internal quotations and citations omitted).

Irico's own documents contradict its assertion that it had no corporate relationship with CNEIECC. According to a 2002 "Master Plan" for restructuring Irico Group's business, under the heading, "China National Import & Export Caihong Company," Irico stated that even though CNEIECC "does business as China National Electronics Import and Export Company; actual assets, personnel, and business all belong[ed] to IRICO Group Corporation. It actually serves as IRICO Group Corporation's import and export business management department."[1] The corporate relationship is confirmed by a 2004 Irico Group submission to China's Ministry of Finance containing an "IRICO Group Company Organization Chart" showing "China Electronics Import

---

[1] Declaration of Gerard A. Dever, Ex. 1 (Dep. Ex. 8401, IRI-CRT-00002041–2105 at '2105).

and Export IRICO Company" as Group's "wholly owned company."[2] Although Irico may claim that these documents are "mistaken"—an implausible claim, as this Court has previously noted[3]—that is the essence of a factual determination that is inappropriate to resolve in a motion *in limine*.

Irico's "affiliation" with CNEIECC is also demonstrated by the formation of Irico USA. Irico USA, a California corporation, was jointly held by CNEIECC, Irico Group, and two American citizens.[4] The purpose of Irico USA was to "expand provincial exports of electromechanical products to North America and to develop trade, investments, and cooperation between China and the United States."[5] "At the time Irico USA was established, Irico and CNEIECC respectively held 45.7% and 34.3% shares in the company."[6] Due to Irico's spoliation of documents, the evidence regarding Irico USA's business in the United States is not extensive. There is, however, evidence that from 1996-1999, Group and Display sold millions of dollars' worth of Irico-brand CRTs, CRT televisions, monitors, and parts such as electron guns to Irico USA and other customers in the United States through CNEIECC.[7]

Moreover, documents from Irico's and other defendants' files "conflate" CNEIECC and Irico and further demonstrate that CNEIECC *functioned* as Group's import and export department.

---

[2] *Id.* Ex. 2 (Dep. Ex. 8394, IRI-CRT-00000956–1010 at '999).

[3] *See* ECF No. 5503 (May 30, 2019 Hearing Tr. at 9:17-10:15 ("What possible motivation could someone have had to sit in a room and say, "I know what I'll do. I'll put CNEIECC in an org. chart where it doesn't belong.")).

[4] *Id.* Ex. 3 at 10 (Irico Defs.' Suppl. Objs. and Resps. to IPPs' Second Set of Interrogs., Suppl. Resp. to Interrog. No. 4).

[5] *Id.*; *see also id.* Ex. 4 (IRI-CRT-00003498-99E) (Reply on Approving the Application for Establishing IRICO (USA) Inc. in the United States, approving "scope of business as follows: exports of color display tubes, color TV sets and other home appliance products and related technologies").

[6] *Id.* Ex. 3 at 10 (Irico's Suppl. Resp. to Interrog. No. 4).

[7] *See, e.g., id.* Ex. 5 (IRI-CRT-00003546) (excerpts of DBF file showing CPT and CTV sales from CNEIECC to Irico USA and other U.S. customers); *id.* Ex. 6 (IRI-CRT-00003578-79E) (April 1999 invoice for the sale of 2400 Irico brand 21" CPTs to Irico USA for Hisense); *id.* Ex. 7 (IRI-CRT-00003576-77E) (July 22, 2002 invoice showing "discharging port" at Long Beach, CA); *id.* Ex. 8 (IRI-CRT-00003574) (March 30, 1998 invoice showing "discharging port" of USA).

An IRICO Group Electronics' 2010 Annual Report identifies Ma Jianchao as simultaneously holding positions as the Chief Financial Officer of CNEIECC and the Vice Director of the Audit Department of Irico Group from 2001-2002.[8] Irico purchase orders from June and July 2002 refer interchangeably to "CNEICC" and "IRICO Group Co., Ltd. IRICO Import and Export Company" as the "purchaser" in the same transaction.[9] The purchase orders are signed by Gao Rongguo as the Legal Representative for the purchaser. *Id.* Mr. Gao's business card (found in Chunghwa's files) identifies him as the General Manager of "Irico Group, Irico Import and Export Company."[10]

Mr. Gao's business card and other CNEIECC business cards found in Chunghwa's files show that Group's "Import and Export Company" and CNEIECC shared the same business address ("No. 1 Caihong Road, Xianyang, Shaanxi, China"), the same facsimile numbers ((0910) 3313101), the same domain name for their email addresses (@irico.com.cn), and the same website (www.irico.com.cn), indicating that they were functioning as the same unit within Group.[11] Mr.

---

[8] *Id*. Ex. 9 (IRICO Group Electronics' 2010 Annual Report at 25, https://www1.hkexnews.hk/listedco/listconews/sehk/2011/0411/ltn20110411882.pdf) (Ma Jianchao "served as chief financial officer of China National Electronics Imp. & Exp Caihong Company（中國電子進出口彩虹公司）from March 1999 to March 2005, **during which he served** as vice director of Audit Department of IRICO Group Corporation from April 2001 to March 2002") (emphasis added).

[9] *Id.* Ex. 10 (IRI-CRT-00001154E); *id.* Ex. 11 (IRI-CRT-00001155E).

[10] *Id.* Ex. 12 (Dep. Ex. 8584, CHU00030303) (business card of Gao Rongguo, "General Manager, Irico Group, Irico Import and Export Company").

[11] *See id*. Ex. 12 (copies of the front and back (Chinese on one side, English on the other) of the business cards, of Gao Rongguo, "General Manager, Irico Group, Irico Import and Export Company," and Hao Xiaojing and Hong-Da Yang of CNEIECC, showing the same business address, facsimile numbers, email domains, and website for Irico Import and Export Company and CNEIECC). The handwritten note "20/8/03" on these cards indicates that these Group and CNEIECC employees attended a meeting with Chunghwa together on August 20, 2003. *Id.* Irico's witness, Wang Zhaojie, confirmed that the business address, facsimile number, email domain, and website were indeed the same as Irico Group Sales Company's. Mr. Wang had no explanation for why they were the same if they were, as he claimed, simply customer and supplier. *Id*. Ex. 13 (Wang Zhaojie Vol II (9/21/2022) at 266:20–273:8).

Sha Tao was appointed by Group as General Manager of "IRICO Import and Export Co."[12] But his business card identifies him as the General Manager of CNEIECC.[13]

Group even granted performance bonuses to CNEIECC employees. The evidence shows that Group granted a "Special Contribution" award to Liang Yuan, who purportedly worked for CNEIECC, for representing Group in the European Commission's anti-dumping proceeding.[14] Ms. Yuan's business card (found in BMCC's files) states that she was an employee of CNEIECC.[15] Irico's witness, Mr. Wang, could not explain why Group would award Ms. Yuan such a large financial sum when she was a CNEIECC employee.[16]

Irico seeks to exclude evidence of its relationship with CNEIECC so that it can portray itself to the jury as focused solely on the domestic Chinese market, and claim its conduct had no impact on U.S. consumers. IPPs must be permitted to rebut this false portrayal with the evidence of Irico's ownership of CNEIECC and its sales of Irico's CRTs to the United States.

## II. CONCLUSION

For the foregoing reasons, the Court should deny in its entirety Irico's MIL No. 4.

---

[12] *Id*. Ex. 14 (Dep. Ex. 8586, IRI-CRT-00023923-24E) (appointing Sha Tao as the general manager of IRICO Import and Export Co.).

[13] *Id.* Ex. 15 (Dep. Ex. 8587, CHU00016169-70) (copies of Sha Tao's business card found in Chunghwa's files identifying him as the General Manager of CNEIECC, but the business address and facsimile number are the same as Group's, and his email address is an Irico email address).

[14] *See id*. Ex. 16 (Dep. Ex. 8589, IRI-CRT-00033206-09) (Irico document entitled "Summary of evaluation for various awards of the General Plant in 2000"; at '07, it lists "Import and Export Company: Liang Yuan under the heading "Special Contribution Award," and at '09, it provides that Liang Yuan is to receive an award of 20,000 yuan); *Id.* Ex. 17 (Dep. Ex. 8396) (*People's Daily*, Nov. 20, 2000 article describing Liang Yuan's testimony at the anti-dumping proceeding; the article notes that the anti-dumping notice was served on CNEIECC "belonging to IRICO," but was defended by Irico Group).

[15] *See id.* Ex. 18 (Dep. Ex. 8590, BMCC-CRT-000306758) (Liang Yuan business card found in defendant BMCC's files identifies her as an employee of the Sales & Marketing Department of CNEIECC, but her business address and facsimile number are the same as Group's and her email address is an Irico email address; a handwritten date "2002.6.5" on the business card suggests that Liang Yuan provided this business card to BMCC in May or June 2002).

[16] *Id*. Ex. 13 (Wang Zhaojie Vol. II (9/21/2022) at 291:7–23).

Dated:  September 1, 2023

By:  */s/ Mario N. Alioto*

Mario N. Alioto (56433)
Lauren C. Capurro (241151)
TRUMP, ALIOTO, TRUMP & PRESCOTT LLP
2001 Union Street, Suite 482
San Francisco, CA 94123
Telephone:  (415) 563-7200
Facsimile:   (415) 346-0679
Email:         malioto@tatp.com
                   laurenrussell@tatp.com

*Lead Counsel for Indirect Purchaser Plaintiffs*