# EXHIBIT 1

**SAVERI & SAVERI, INC.**

706 SANSOME STREET
SAN FRANCISCO, CALIFORNIA 94111
TELEPHONE: (415) 217-6810
TELECOPIER: (415) 217-6813

*Trump Alioto Trump & Prescott*
ATTORNEYS LLP
2001 Union Street, Suite 482
San Francisco, California 94123
(415) 563-7200
FAX (415) 346-0679

March 20, 2023

*VIA EMAIL*

The Honorable Vaughn R. Walker
Law Office of Vaughn R. Walker
Four Embarcadero Center, Suite 2200
San Francisco, CA 94111
vrw@judgewalker.com

**Re:**   *In re Cathode Ray Tube (CRT) Antitrust Litigation* **– MDL No. 1917, Master File No. 07-CV-5944-JST**

Dear Judge Walker:

## INTRODUCTION

Direct Purchaser Plaintiffs ("DPPs") and Indirect Purchaser Plaintiffs ("IPPs") (together "Plaintiffs") submit this Motion for Terminating or Alternative Sanctions Against Defendants Irico Group Corporation and Irico Display Devices Co., Ltd. (collectively, "Irico" or the "Irico Defendants"). Plaintiffs submit this motion in accordance with the Court's order of December 6, 2022, ECF No. 6115 ("Su Order"). The Su Order invited Plaintiffs to "submit motions for sanctions for any discovery misconduct throughout the history of this case. . . . In particular, [Plaintiffs] may submit their motion for sanctions for Irico's failure to comply with the court's orders that Su's deposition be taken." *Id*. at 13.

The Court has the power under Fed. R. Civ. P. 37 and its inherent authority to issue terminating or other severe sanctions for Irico's intentional spoliation of evidence, its repeated violations of Court Orders, and its attempts to evade responsibility for those derelictions by misleading Plaintiffs and the Court.

As the Court has noted, the Irico Defendants are the last defendants in this litigation. They are last for a reason—their plain strategy to delay the case and to destroy or withhold evidence. From the very beginning, Irico has acted with breathtaking disregard for the law and this Court's authority.

First, Irico intentionally violated its legal obligations and defied this Court's Pretrial Order No. 1 (ECF No. 230) ("PTO No. 1") by choosing not to implement a litigation hold at the outset of the case. For years, Irico claimed that its failure to do so was due to an innocent misunderstanding of American law. However, the recent production of its former

The Honorable Vaughn R. Walker
3/20/2023
Page 2

counsel's clear and repeated explanations of its duty to preserve evidence demonstrates that Irico's persistent claims of innocence were false and that its failure to adopt a litigation hold was deliberate. Dire consequences ensued: Irico destroyed virtually *all* evidence relating to its participation in the conspiracy and its CRT pricing and production levels, including *all* emails and other documents from the files of those employees who participated in the conspiracy. This outrageous conduct has unnecessarily delayed this litigation and has severely prejudiced Plaintiffs and the just outcome of this case. This conduct alone merits harsh sanctions.

Second, Irico's disappearance from this litigation for over seven years has destroyed Plaintiffs' ability to obtain testimony from Irico witnesses with knowledge of its wrongful conduct. Virtually all of those who attended conspiracy meetings on Irico's behalf have left its employ, rendering them unavailable for deposition, and Irico has resisted producing those that remain. Most recently, Irico induced Plaintiffs to stipulate to a third extension of time to produce Su Xiaohua for his Court-ordered deposition when it *knew* he planned to resign to avoid being deposed. Mr. Su was one of only two remaining Irico employees who attended competitor meetings. As this Court found, the loss of his testimony "is highly detrimental to resolution of this litigation on its merits." Su Order at 12. Moreover, Irico's failure to produce Mr. Su violated two Court orders requiring him to appear.

Third, as this Court is aware, in 2010, Irico made a calculated, tactical decision to default and disappeared from the case for over seven years. Irico's default violated Court orders, constituted a fundamental and improper rejection of the Court's authority, and needlessly delayed this case. Further, Plaintiffs have recently discovered that Irico induced the Court to lift the defaults against it based on a false representation that its withdrawal was founded on a good faith belief that it was immune from suit.

Finally, Irico has brazenly violated several other discovery orders and has generally abused the discovery process throughout this case.

The Court should not countenance Irico's bad faith conduct. Its misconduct has deprived Plaintiffs and this Court of access to virtually all of its records and witnesses with personal knowledge of its participation in the conspiracy. Irico has defied the Court's authority and seriously impaired the Court's ability to reach a fair resolution of this case. Its conduct has caused years of delay and vast amounts of unnecessary work by the Court and Plaintiffs. Any one of the foregoing instances of misconduct should result in a severe sanction. Collectively, they justify the most severe sanction available to the Court— striking the answers of the Irico Defendants. Anything less would reward them for their conduct and encourage its continuation.

Alternatively, Plaintiffs request that the Court:

The Honorable Vaughn R. Walker
3/20/2023
Page 3

1.  Deem Irico's participation in the alleged conspiracy, and the other activities of the conspiracy alleged in the Complaint, as established as against the Irico Defendants and so instruct the jury;

2.  Instruct the Jury that the Irico Defendants failed to preserve relevant evidence and that it ***must*** infer that the evidence lost or destroyed by the Irico Defendants would have been unfavorable to them had it been produced and offered in evidence, and apply such an inference where the Court is the factfinder;

3.  Instruct the Jury that Irico was ordered to produce Su Xiaohua for a remote deposition in Macau and that it failed to do so, and that the Jury must infer based on Irico's failure to produce him, that Mr. Su's testimony would have been harmful to Irico, and apply such an inference where the Court is the factfinder;

4.  Strike the affirmative defenses of the Irico Defendants;

5.  Order that all meeting notes produced by other defendants are deemed authentic and admissible; and

6.  Order that all documents produced by the Irico Defendants are deemed authentic under FRE 901 and admissible as business records pursuant to FRE 803(6).

## RELEVANT FACTUAL AND PROCEDURAL HISTORY

**I.      Irico's Deliberate Decision Not To Implement A Litigation Hold Has Resulted In The Wholesale Spoliation Of Relevant Evidence**

Irico failed to implement a proper litigation hold on relevant documents and electronically stored information (ESI) at the outset of this case as required by well-established law, an order of the Court, and the explicit and detailed advice of its experienced U.S. counsel. This decision was no mistake. Rather, it was taken after careful consideration by the committee established to manage Irico's response to this litigation (the "Litigation Committee") and calculated to avoid liability for its wrongful participation in the alleged conspiracy.

**A.      Irico Deliberately Defied Its Former Counsel's Instructions Regarding Evidence Preservation**

The Court is familiar with the facts relating to Irico's failure to implement a litigation hold.[1] Since that Order, Irico has produced its former counsel's[2] communications relating to evidence preservation. The communications confirm that Irico had the benefit

---

[1] *See* Order Approving Special Master's Report & Recommendation On Plaintiffs' Motion to Compel Evidence Preservation Documents (ECF No. 6146) ("Lit. Hold Order").

[2] Irico's former counsel is Pillsbury Winthrop Shaw Pittman LLP ("Pillsbury").

The Honorable Vaughn R. Walker
3/20/2023
Page 4

of a clear explanation of its duty to preserve relevant evidence. They refute Irico's claim that its failure to preserve evidence was due to a good faith misunderstanding of the law.

In the Lit. Hold Order, the Court found that Irico failed to implement the required document preservation notice when it received IPPs' summons and complaint in December 2007 alleging a global CRT conspiracy, despite hiring Pillsbury a month later. *Id.* at 2.[3] The Court explained:

> Irico confirms that it never issued a written litigation hold notice and, instead in the summer of 2008, Irico orally instructed key employees to preserve documents related to sales of CRT to the United States. 5/9/22 Irico Response at 2 and 8 ("no written litigation hold was issued by Irico"); 4/15/22 Capurro Decl, Exh I at 7 (Irico's Supp Response to Interrogatory No 2). Irico has admitted that it failed to implement a litigation hold until more than eight months after its duty to preserve was triggered by service of the complaint on December 25, 2007. *See* 4/15/22 Capurro Decl, ¶11, Ex I at 10-11. Irico also stated in its discovery response that "Irico acknowledges that at the time [of its oral instructions in 2008] it misunderstood the scope of document preservation in connection with the litigation in the United States and cannot be certain that all documents related to Irico's global sales of CRTs were preserved." 5/23/22 Plaintiffs' Reply at 4, citing 4/15/22 Capurro Dec, Ex I at 11 (Irico's Supplemental Response to Issue No 4).

Lit. Hold Order at 2. The Court also explained that Irico's purported "oral instruction" was not only inexcusably tardy but also grossly deficient. Among other things, Irico "failed to suspend its automatic email destruction practice," and, by limiting its application to sales of CRTs in the United States, failed to address "the full scope of relevant documents." *Id.* at 7.[4] The Court also noted Irico's excuse for the narrowness of its purported preservation efforts was that "it misunderstood the scope of document preservation." *Id.*

Irico's (redacted) communications with Pillsbury demonstrate, however, that Irico did not "misunderstand" its obligations. Rather, they irrefutably show that Irico **deliberately** defied this Court's PTO No.1 (and black-letter law) requiring it to provide companywide written instructions to preserve evidence relating to its worldwide CRT

---

[3] *See also* Declaration of Lauren C. Capurro ("Capurro Decl."), ¶ 2, Ex. A (Irico's Suppl. Objs. & Resps. To IPPs' Third Set Interrogs., Resp. to Interrog. No. 4) at 23–24.

[4] Irico's Legal Affairs Director, Yan Yunlong, also testified that he does not recall or is not aware of Irico (1) creating a back-up or "mirror image" of its computer system or querying its computer system to discover relevant documents in 2008, (2) creating a catalog of relevant documents, or (3) instructing its IT employees to turn off its email system's auto-delete function. Capurro Decl., ¶ 3, Ex. B (Yan Yunlong Dep. Tr. Vol. II at 158:21–165:23).

The Honorable Vaughn R. Walker
3/20/2023
Page 5

business. Pillsbury first advised Irico to preserve potentially relevant evidence shortly after it was retained. By email dated February 15, 2008, Pillsbury advised Yan Yunlong that "it is essential that Irico does not destroy or dispose of any potentially relevant documents, whether in paper, electronic or any other form."[5] Pillsbury further told Irico to "issue written instructions to the members of your company to retain all such documents as soon as possible[,]" and offered to "advise on appropriate written instructions." *Id.* That same day, Yan Yunlong forwarded the email to "Secretary Tao" (Tao Kui) and "Mr. Gao" (likely Gao Rongguo).[6] By its own admission, Irico ignored these instructions and did nothing until August 2008.[7]

On June 23, 2008, Pillsbury sent another email to Mr. Yan, enclosing a translation of the Court's Pretrial Order No. 1 requiring evidence preservation.[8] Pillsbury explained:

> The court issued its first pretrial order on April 4, 2008, with Article 13 being the most critical to Irico, which sets out the court's requirements for preservation of evidence (including information in electronic form). ***As we have discussed with Irico, this is an extremely important statutory requirement. If some potentially relevant information is lost or destroyed, this could have very serious consequences for Irico.***

*Id.* at IRI-SUPP-000012E (emphasis added). The email's reference to prior discussions about the importance of evidence preservation indicates that Pillsbury attorneys had previously spoken to Mr. Yan about evidence preservation in between the February and June 2008 emails, and possibly before the February email.[9] Yet, Irico still took no action to preserve relevant evidence.

Then, on August 18, 2008, Pillsbury sent another email to Yan Yunlong, this time attaching a memorandum to Irico regarding evidence preservation and a written litigation

---

[5] Capurro Decl. ¶ 4, Ex. C (IRI-SUPP-000001E–005E, at 01E).

[6] *Id.* ¶ 5, Ex. D (IRI-SUPP-000006-011E). Tao Kui, who was the Deputy General Manager of Irico Group at the time, was the most senior member of the Litigation Committee. *Id.* ¶ 6, Ex. I (Yan Yunlong Dep. Tr. Vol. I at 125:3–7). Mr. Yan also sat on the Litigation Committee and is the only remaining member. *Id.* Ex. A (Irico's Suppl. Objs. & Resps. to IPPs' Third Set of Interrogs., Interrog. No. 2, Resp. to Issue No. 4) at 11.

[7] *Id.* Ex. A (Irico Suppl. Resp. to Interrogatory No. 2, Issue Nos. 3 & 4) at 10–11 (describing the formation of the Litigation Committee in June 2008 and a meeting in August 2008 to discuss searching for and preserving evidence)).

[8] *Id.* ¶ 7, Ex. F (IRI-SUPP-000012–021E).

[9] *Id.* As further discussed below, neither the February 2008 email nor the June 2008 email was identified on Irico's privilege log as relating to evidence preservation. *See id.* ¶ 9 Ex. G (Irico Defs' Log of Privileged Documents).

The Honorable Vaughn R. Walker
3/20/2023
Page 6

hold notice entitled "Information Preservation Notice," all in Chinese.[10] The memorandum references Pillsbury's "previous communications and the Court's Order regarding preservation of evidence (a copy of which [they again] attach)," and states:

> [W]e believe that Irico Group Corporation and Irico Display Devices Co., Ltd. (collectively, "Irico") have notified the appropriate Irico personnel regarding the retention of information potentially relevant to the subject matter of the CRT Antitrust Litigation at issue. The purpose of this memorandum is to advise Irico to distribute forms and documents to employees in addition to the notifications already previously made, which are intended to remind Irico personnel of the importance of complying with U.S. law requiring the preservation of potentially relevant information.[11]

The attached "Information Preservation Notice" ("Notice") describes specific categories of "potentially relevant" information relating to Irico's "worldwide" CRT business that should be preserved for the period beginning January 1, 1995, including, *inter alia*, "communications, agreements, or meetings with competitors . . . relating to CRTs or CRT Products sold in the U.S. or worldwide."[12] The Notice also describes in detail the types of hard copy and electronic documents that should be preserved and where they are likely to be found.[13] Pillsbury instructed Irico to distribute the Notice to its employees,

---

[10] *Id.* ¶ 9, Ex. H (IRI-SUPP-000022E and IRI-SUPP-000023–028E). Irico also produced two different English-language memoranda dated August 7, 2008 (*id.* ¶ 10, Ex. I, IRI-SUPP-000029–30, & *id.* ¶ 11, Ex. J, IRI-SUPP-000034–36), and an English version of the Information Preservation Notice ¶ 12, (Ex. K, IRI-SUPP-0000000031–33). Irico's counsel states that these documents were "found in Pillsbury's internal casefile, and we have no indication [they were] ever sent to Irico." *Id.* ¶ 13, Ex. L (Werbel Letter dated Feb. 13, 2023). Plaintiffs believe that these memoranda were the original versions drafted by Pillsbury attorney Joseph Tiffany on August 7, 2008, and then transmitted to Pillsbury's Chinese-speaking attorneys for translation and transmittal to Irico. *Id.* ¶ 13.

[11] *Id.* Ex. H (IRI-SUPP-000023E). In the original August 7, 2008 memorandum (Ex. I, IRI-SUPP-000029–30), Pillsbury attorney Joseph R. Tiffany II wrote, ". . . we *assume* that Irico Group Corporation and Irico Display Devices … have already instructed appropriate IRICO personnel regarding the requirement to retain information. . . ." *Id.* at IRI-SUPP-000029 (emphasis added).

[12] *Id.*, Ex. H (IRI-SUPP-000026–28E).

[13] *Id.* at IRI-SUPP-000026E ("This Information Retention Notice applies to information and documents stored in personal offices, shared file cabinets, and outside locations. It also includes digital or electronic information retained in all locations (including desktop computers, laptops, home computers, personal digital assistants, server files, removable devices, cell phones, etc.").

The Honorable Vaughn R. Walker
3/20/2023
Page 7

including "persons most knowledgeable"[14] and others who "are reasonably likely to have documents or electronic information relating to any of the subjects identified in the Notice[,]" as well as those responsible for IT and records management. *Id.* Pillsbury further advised that Irico employees should sign the Notice to "remind [them] of the importance of retaining such information. The Information Preservation Notice should be supplemented by periodic oral instructions to appropriate IRICO personnel and careful monitoring of compliance." *Id.*

The Notice refers to "attached instructions for retaining electronic information[,]" but no such Chinese language instructions have been produced. Irico did produce a separate English-language Pillsbury memorandum, also dated August 7, 2008, entitled "Preservation of Documents and Electronically Stored Information."[15] This memorandum provides specific instructions on identifying and preserving "email and other electronically stored information ('ESI')[,]" and instructs Irico to suspend any automatic deletion of ESI, emphasizing that "it is very important for IRICO to take proper steps to preserve ESI, as well as information in other forms."[16] It also notes that Pillsbury "will need to have a thorough understanding of IRICO's computer system" and references a separate memorandum that it planned to provide on this subject.[17] No such memorandum has been produced. *Id.*

In short, Pillsbury's communications demonstrate that Irico has no excuse for its failure to implement a proper litigation hold. Irico was fully informed of its obligations to preserve documents, including (1) the Court's Order requiring it to do so; (2) that it was required to do so immediately; (3) that it was required to do so in a writing distributed to all individuals potentially possessing relevant materials; and (4) that relevant documents were not limited to its United States sales, but included documents relating to its worldwide CRT business. Irico made a conscious and fully informed decision to disobey the Court's clear order to preserve documents, well-established law, and the advice of its counsel.

---

[14] *Id.* at IRI-SUPP-000023E (emphasis added). The memorandum references an earlier July 14, 2008 memorandum entitled "Request for Information Pertaining to CRT Antitrust Litigation," which it says Irico should use to identify the employees who should receive the Notice. *Id.* This memorandum has not been produced and does not appear on Irico's privilege log.

[15] *Id.*, Ex. J (IRI-SUPP-000034–36). Irico's current counsel states that this memorandum was found in Pillsbury's casefile but there is "no indication it was sent to Irico." *Id.,* Ex. L (Werbel Letter dated Feb. 13, 2023). Given Irico's wholesale destruction of evidence and lack of candor on this issue, this assertion should be viewed with skepticism.

[16] *Id.* at IRI-SUPP-000035.

[17] *Id.*

The Honorable Vaughn R. Walker
3/20/2023
Page 8

> **B.**   **Irico's Repeated Claims That It Misunderstood U.S. Law Were Deliberate Falsehoods**

The Pillsbury communications also make clear that Irico has engaged in a years-long effort to conceal its failure to preserve relevant evidence via false assertions that it innocently misunderstood its obligations.

In March 2019, Zhang Wenkai, as Irico's Fed. R. Civ. P. 30(b)(6) corporate representative on evidence preservation,[18] falsely testified that Irico did not issue a litigation hold notice because, "We did not aware that it is something we need to do."[19] In January 2022, Irico falsely claimed in an interrogatory response that its failure to implement a proper litigation hold was because it "misunderstood the scope of document preservation in connection with the litigation in the United States. . . ."[20] And in May 2022, Irico falsely asserted that it "undertook measures that it believed to be appropriate under the circumstances" and that its failures were due to its "limited understanding of the law and customs of the United States." Irico Response 5/9/22 at 6; Lit. Hold Order at 6.

Irico admitted that Pillsbury had sent an email and "memorandum regarding evidence preservation" to Irico's legal counsel, Yan Yunlong, on August 18, 2008 ("Pillsbury's August Instructions").[21] However, Irico refused to produce Pillsbury's August Instructions on privilege grounds for several months, forcing Plaintiffs to move to compel.[22] Irico also failed to identify the February and June 2008 emails on its privilege log as relating to evidence preservation. The descriptions of both emails misleadingly state that they "contain[] legal advice . . . regarding CRT litigation status and strategy."[23] There is also no indication on the privilege log that the June 23, 2008 email attached PTO No. 1. *Id.* PTO No. 1 is clearly not privileged. Thus, Irico should have produced the redacted email with PTO No. 1 attached. Its failure to do so is likely because doing so immediately would have revealed that Irico had ignored Pillsbury's instructions regarding evidence preservation. Thus, this is *yet another* example of Irico's (and its counsel's) attempts to mislead Plaintiffs and the Court and conceal its wrongful conduct.

---

[18] Capurro Decl. ¶ 14, Ex. M (Zhang Wenkai Deposition Notice, including the topic: "The preservation, or not, of evidence by Group and/or Display relevant to their FSIA defenses or the merits of this case, from 2008 to present.")

[19] *Id.* ¶ 15, Ex. N (Zhang Wenkai Dep. Tr. Vol. I at 84:11–24).

[20] *Id.* Ex. A (Irico's Suppl. Objs. & Resps. To IPPs' Third Set Interrogs., Resp. to Interrog. Nos. 2 & 4) at 11.

[21] Capurro Decl., Ex. G (Irico Defs.' Log of Privileged Documents identifying August 18, 2008 email and memorandum).

[22] *See* Capurro Decl. ¶ 16, Ex. O (April 15, 2022 Motion to Compel).

[23] *Id.*, Ex. G (Irico Defs.' Log of Privileged Documents).

The Honorable Vaughn R. Walker
3/20/2023
Page 9

In late September 2022—following months of delays by Irico—Plaintiffs deposed Yan Yunlong. Mr. Yan is "the only remaining Irico employee with knowledge of the dissemination of the oral instruction in 2008."[24] He is also the only Irico employee who communicated with Pillsbury and is the sole source for Irico's discovery responses regarding evidence preservation.[25] Mr. Yan initially testified that—consistent with Irico's interrogatory responses—Irico directed employees in 2008 to preserve only documents relating to U.S. sales.[26] But he later changed his testimony to claim that—contrary to Irico's interrogatory responses—the 2008 oral instruction was *not* limited to U.S. sales, and in fact extended to competitor meetings.[27] Irico had also insisted in response to Plaintiffs' motion to compel that there was no written litigation hold document to produce because it had only issued an "oral instruction" to employees.[28] But Mr. Yan testified that he provided Pillsbury's August Instructions to other Litigation Committee members.[29] He did not, however, personally instruct any other Irico employees to preserve relevant evidence.[30] Rather, he admitted that he relied on the other committee members (all of whom participated in the conspiracy) to do so, and that he does not know what instructions (if any) they gave to their subordinates.[31]

Almost two months after Mr. Yan's deposition—after the close of discovery, fifteen months of meet and confers, two motions to compel, and only after Plaintiffs pointed out the inconsistencies between his testimony regarding the 2008 litigation hold and Irico's discovery responses—Irico attempted to shift its story once again. On November 23, 2022, Irico amended its responses to IPPs' interrogatories and served an unsworn declaration

---

[24] Capurro Decl. Ex. A (Irico's Suppl. Objs. & Resps. to IPPs' Third Set of Interrogs., Interrog. No. 2, Resp. to Issue No. 4) ("All of the members of the 2008 Litigation Committee other than Yan Yunlong have retired or otherwise departed the company.")

[25] Capurro Decl. ¶ 17, Ex. P (Irico's Objs. & Resps. to IPPs' Fourth Set of Interrogs., Resp. to No. 4) at 14; Ex. A (Irico's Third Suppl. Objs. & Resps. to IPPs' Interrog. No. 2, Resp. to Issue No. 4) at 11 (Irico's "answers are based on the recollections of Yan Yunlong").

[26] *Id*., Ex. E (Yan Yunlong Dep. Tr. Vol. I at 129:22–23) ("Q. And the instruction that was conveyed in 2008 was to preserve documents relating to U.S. sales, is that right? A. Yes."); *id*. at 136:21–24 ("Q. And the instruction that emanated from the committee in August of 2008 was to preserve documents relating to U.S. sales, correct? A. Yes.").

[27] *Id*. at 136:25–137:20.

[28] *See e.g., id*. ¶ 18, Ex. Q (Irico's May 9, 2022 Opp. to Plaintiffs' Motion to Compel) (arguing Plaintiffs' motion should be denied because the cases "prescribe only the production of a litigation hold notice and . . . Irico has confirmed that it did not issue a written litigation hold notice.").

[29] *Id.* Ex. E (Yan Yunlong Dep. Tr. Vol. I at 132:16–133:7).

[30] *Id.* at 130:20–23.

[31] *Id.* at 137:21–139:14.

The Honorable Vaughn R. Walker
3/20/2023
Page 10

from Mr. Yan that purported to re-write 17 pages of his deposition testimony regarding Irico's inadequate litigation hold.[32]

Setting aside for now that Mr. Yan cannot credibly contradict his sworn testimony, his new story purports to change two key facts: (1) Irico no longer contends that it only gave an oral litigation hold instruction because it now admits that Pillsbury's Instructions were distributed to Litigation Committee members;[33] and (2) Irico "no longer contends that its initial efforts to preserve documents in August 2008 were limited solely to documents regarding sales of CRTs to the United States[.]"[34] Critically, although Irico never expressly says so, *its supplemental responses also no longer claim that it "misunderstood" its document preservation obligations.* However, the supplemental responses now provide *no* information about what categories of information (if any) Litigation Committee members were instructed to preserve, whether any search took place, whether anything was found, or whether anything was preserved as a result.[35] In addition, both Irico and Mr. Yan disclaim any knowledge of whether the Litigation Committee members in fact instructed anyone else to preserve anything, or whether anything was preserved, because it was left up to each member to determine which subordinates to contact and what information should be relayed, and no effort was made to monitor implementation.[36]

In sum, Irico's recent and improper alterations of Mr. Yan's testimony and its previous interrogatory responses are far from exculpatory. Rather, they merely confirm— after 15 months of discovery—that (1) Irico did *nothing* to disseminate a written litigation hold in 2008; (2) it did so willfully, with a full understanding of its document preservation obligations and in defiance of its counsel's instructions; and (3) Irico has offered up a series of intentional misrepresentations to conceal these facts.

---

[32] *Id.* ¶ 19, Ex. R (Declaration of Yan Yunlong ("Unsworn Yan Decl.") dated Nov. 18, 2022, claiming he "was confused regarding some questions and gave inaccurate testimony . . . , as well as inaccurate input for the interrogatory responses . . . ."); *id.* ¶ 20, Ex. S (Irico's Third Suppl. Objs. And Resps. To IPPs' Third Set of Interrogs.); ¶ 21, Ex. T (Irico's Second Suppl. Objs. And Resps. To IPPs' Fourth Set of Interrogs.).

[33] *Id.*, Ex. S (Irico's Third Suppl. Resp. to IPPs' Interrog. No. 2) at 24–25 ("At this August 2008 meeting, the 2008 Litigation Committee *was provided with a copy of the Pillsbury legal advice. . . .*") (emphasis added); Ex. R (Yan Unsworn Decl.) ¶ 7.

[34] *Id.* Ex. S (Irico's Third Suppl. Resp. to Interrog. No. 2, Issue No. 5) at 26.

[35] *Id.* Ex. S (Irico's Third Suppl. Resp. to Interrog. No. 2) at 25–26; Ex. R (Unsworn Yan Decl.) ¶¶ 7–9.

[36] *Id.* Ex. S (Irico's Third Suppl. Resp. to Interrog. No. 2) at 24–26; Ex. R (Unsworn Yan Decl.) ¶¶ 8–10.

The Honorable Vaughn R. Walker
3/20/2023
Page 11

### C.     Irico Has Intentionally Spoliated Entire Categories Of Critical Evidence

Irico's willful failure to implement a litigation hold has resulted in Irico intentionally spoliating entire categories of evidence critical to this litigation. During the class period, Irico was the largest CPT manufacturer in China.[37] Yet, it has produced only 33,462 pages, a small fraction of the volume of documents produced by other similarly-sized defendants.[38] Indeed, the Court has already found, after a review of the evidence and consideration of Irico's arguments, that "[o]n balance, it appears highly likely that relevant evidence was destroyed or lost due to Irico's long-delayed and inadequately implemented litigation hold efforts." Lit. Hold Order at 9.

Irico has conceded that it failed to preserve relevant evidence. Irico's discovery responses concede that it does "not contend that the oral instruction in 2008 was effective in preserving all documents relating to its global sales of CRTs[,]" and it "cannot be certain that all documents relating to Irico's global sales of CRTs were preserved[.]"[39] In response to the Court's question about what documents would have been preserved if the oral instruction not been limited, Irico listed several types of documents "regarding Irico's global sales of CRTs that are more likely to have existed in the summer of 2008[,]" including sales reports, CRT sales contracts with customers, recent correspondence with customers, and handwritten notes regarding recent meetings.[40]

Irico has also admitted that emails were deleted from its server every 3 to 5 days;[41] that it did not turn off its automatic deletion of emails when it received notice of the

---

[37] *Id*. ¶ 22, Ex. U (Irico Electronics 2004 Annual Report) at 8. By 2007, Irico had increased its market share to 13.8% of the global market, making it the third largest CPT maker in the world. *Id*. ¶ 23, Ex. V (Irico Electronics 2007 Annual Report) at 13.

[38] For example, Beijing Matsushita Color CRT Co., Ltd. ("BMCC"), a much smaller Chinese CRT manufacturer, produced 598,701 pages and Taiwanese manufacturer, Chunghwa Picture Tubes, Ltd., produced 996,514 pages. *Id*. ¶ 24.

[39] Capurro Decl., Ex. S (Irico Third Suppl. Resps. to IPPs' Third Set of Interrogs., Resp. to Issue Nos. 4 & 5) at 11–12.

[40] *Id*. (Irico Resp. to Issue No. 6) at 12–13. Irico improperly limited this response to what would have existed in Summer 2008. Irico's duty to preserve relevant evidence was triggered no later than December 25, 2007, when it received IPPs' complaint. Thus, Irico should have stated what documents would have existed in December 2007.

[41] *Id*. (Resp. to Issue No. 8) at 16; *id*. ¶ 25, Ex. W (Irico Defs.' Fifth Suppl. Objs. & Resps. to DPPs' First Set Interrogs., Suppl. Resp. to Interrog. No. 16) at 11 ("Irico believes that its servers overwrote email data every three to five days on average due to storage limits for the period including and prior to 2007.").

The Honorable Vaughn R. Walker
3/20/2023
Page 12

litigation, or at any point thereafter;[42] that it recycled the computers of departing employees long after its duty to preserve was triggered;[43] and, that none of its "key employees"— namely, its high-level current and former employees, including the Litigation Committee members and others who attended conspiratorial meetings—"maintained any additional electronic or paper documents from the relevant period" other than what was preserved in Irico's archives pursuant to Chinese law.[44]

Irico has identified the types of documents it generated during the relevant period, including, *inter alia*, weekly and monthly sales reports containing "information regarding customers, competitors and general market information," and emails regarding CRT production and "the scheduling and planning of the China CPT Industry Association, a trade organization for manufacturers of CPTs[,]"[45] through which anticompetitive agreements were reached and enforced. But Irico has produced *none* of these highly relevant documents. Indeed, Irico has failed to produce entire categories of critically relevant documents, including:

- No emails from the relevant period from the files of *any* employees or executives—this includes no emails from the files of the 2008 Litigation Committee members who attended numerous meetings with competitors, and who received Pillsbury's August 2008 Instructions to preserve specific categories of documents, and none from Wang Zhaojie ("Mr. Wang"), who admitted to attending "many, many meetings" with Irico's competitors;
- No other electronic or hard copy documents from the relevant period from the files of any of its employees, including the Litigation Committee members;
- Virtually no documents relating to the more than 100 conspiratorial meetings that Irico representatives attended during the relevant period, as reflected by the other defendants' notes of those meetings;
- No correspondence between Irico and its customers regarding CRT sales;
- No CRT sales contracts with customers;
- No weekly or monthly sales and marketing reports, which Irico has admitted were generated on a regular basis;[46]
- No production reports from Irico's CRT factories; and

---

[42] *Id*. Ex. B (Yan Yunlong Dep. Tr. Vol. II at 165:2–23).

[43] *Id*., Ex. W (Irico's Fifth Suppl. Objs. & Resps. To DPPs' First Set Interrogs.) at 8.

[44] *Id*. ¶ 26, Ex. X (Irico's Fourth Suppl. Resps. to DPPs' FSIA RFPs, Resp. to No. 9) at 9.

[45] *Id*. Ex. S (Irico Third Suppl. Resps. to IPPs' Third Set Interrogs., Resp. to Issue No. 8) at 13–17.

[46] *Id*. (Resp. to Issue No. 8) at 14 (stating that Irico's "sales department prepared weekly- and monthly-summaries of information collected by its employees").

The Honorable Vaughn R. Walker
3/20/2023
Page 13

- Virtually no documents reflecting how Irico determined the prices it would charge for its products.[47]

Irico attempts to explain away its deficient production by claiming it is "unable to determine whether" these documents would have existed in late 2007, or with unsupported and self-serving claims that such documents "would not have been retained in the ordinary course of business and were unlikely to have existed at the end of 2007."[48] Irico relies on its purported limited server capacity and routine deletion of emails to claim that it is "not able to determine whether email created during the relevant time period existed at the end of 2007[.]"[49] But, as Your Honor noted, "Irico presents no information about investigating custodial files of 'key employees' who may have printed relevant emails, forwarded emails to their personal email accounts or downloaded emails to their work or personal computers or to portable hard drives." Lit. Hold Order at 9. In fact, Mr. Yan testified that he downloaded and saved his emails with Pillsbury to his hard drive.[50] It is therefore likely that other Irico employees did the same with important documents they received.

Significantly, as Your Honor recounted, Plaintiffs have identified Irico emails, meeting notes, sales and marketing reports, and other Irico documents (which should have been preserved and produced by Irico) in other defendants' productions. Lit. Hold Order at 9. Moreover, these documents date from 2006 and 2007—*i.e.*, not long before the November 2007 government raids on CRT makers, or when Irico received IPPs' complaint on December 25, 2007. *Id.* (discussing emails authored by Litigation Committee member and Irico's Head of Overseas Sales Department, Liang Yuan, to Chunghwa in 2006 and 2007, and attaching "meeting notes and production data").[51] As Your Honor concluded, "it was unlikely that they and all relevant emails in Liang Yuan's and others' files would have been discarded by the time the duty to preserve arose." Lit. Hold Order at 9.

Irico has likewise admitted that numerous sales and marketing reports found in Chunghwa's production—many of which contain highly sensitive, confidential information about Irico's future business plans, and reference competitor agreements on

---

[47] *Id.* ¶ 27. For example, in response to DPPs' interrogatory about CRT price increases or decreases during the class period, Irico identified only *eight* Irico documents. *Id.* ¶ 28, Ex. Y (Irico's Sixth Suppl. Objs. & Resps. to DPPs' First Set of Interrogs., Resp. to Interrog. No. 6) at 14. Moreover, the documents identified are voluminous collections of internal "Administrative Meetings," containing only sporadic, vague references to CRT prices.

[48] Ex. S (Irico Third Suppl. Resps. to IPPs' Third Set of Interrogs., Resp. to Issue No. 8) at 13-14.

[49] *Id.* Ex. S (Irico Resp. to Issue No. 8) at 16.

[50] *Id.* Ex. E (Yan Yunlong Dep. Tr. Vol. I at 93:15–95:13); Ex. B (Vol. II at 168:25–169:5).

[51] *See also, e.g., id.* ¶¶ 29-31, Exs. Z–BB (additional examples of Irico emails with competitors from 2007 that were found in Chunghwa's files).

The Honorable Vaughn R. Walker
3/20/2023
Page 14

CRT prices and production levels—were authored by Irico employees.[52] One such report, entitled "Regular Marketing Meeting Report," dated June 13, 2005, which Chunghwa produced, contains Irico's analysis of the CRT and CRT television markets including, *inter alia*, CRT and TV makers' production, sales, pricing, inventory, and export data.[53] A table details "CRT Makers' Production Suspension/Limitation Plans for June 2005," *i.e.*, their *future* plans to suspend or limit CRT production *in concert with each other*.[54] Another table details, "**CPT pricing: Industry's Settled Price Range in Recent Months**," including a "Prediction for Jun 05."[55] Other similar weekly reports show that, contrary to Irico's claims, Irico knew its customers were using Irico's CRTs to manufacture CRT televisions for sale in the United States.[56] Mr. Wang admitted that reports like these were produced by Irico's sales department on a weekly or monthly basis,[57] making it likely that at least some such reports existed in December 2007.

After reviewing the foregoing evidence, Your Honor concluded that, "[o]n balance, it appears highly likely that relevant evidence was destroyed or lost due to Irico's long-delayed and inadequately implemented litigation hold efforts. Irico's position, supported by its Rule 30(b)(6) witness' testimony, that weekly sales and marketing reports and notes of competitor meetings were not important and not likely to be kept appears implausible." Lit. Hold Order at 9.

---

[52] *See id.* ¶ 32, Ex. CC (Irico Defs.' Objs. & Resps. to IPPs' RFA No. 4).

[53] *Id.* ¶ 33, Ex. DD (Dep. Ex. 8566, CHU00123502–17E).

[54] *Id.* at CHU00123506E.

[55] *Id.* at CHU001235010E (emphasis added). *See also id.* ¶¶ 34-36, Exs. EE–GG (additional highly confidential Irico marketing and sales reports found in Chunghwa's files).

[56] *See, e.g., id.* ¶ 37, Ex. HH (Dep. Ex. 8571, CHU00124396–99: an Irico report produced by Chunghwa entitled "Information Weekly, Sales Company, 70th Issue, July 8-15, 2005." At CHU00124397, in the first column of the table, the row relating to Haier, it states: "**For 21"PF (new AK) produced for exporting to the United States, preparations for the early stage are being intensified.**" In the third column it states: "**Sample tubes of Irico 21" (new AK) have a low luminance and American engineers have arrived at Qingdao Haier by air on 15th day for consultation.**" ); *id.* ¶ 38, Ex. II (Dep. Ex. 8572, CHU00124400–02: an Irico report produced by Chunghwa entitled "Information Weekly" dated August 6-12, 2005, states "**Irico 21" PF has been recognized by American customers and can be supplied**."); *id.* ¶ 39, Ex. JJ (Dep. Ex. 8573, CHU00124417–19: an Irico weekly report produced by Chunghwa entitled "Information Weekly" dated May 8–14, 2006: "**It is reported from Konka's U.S. customers that the 15" PF has an issue of barrel distortion, and Irico technical personnel are investigating and negotiating countermeasures with Shenzhen Konka R&D personnel . . .**").

[57] Capurro Decl. ¶ 40, Ex. KK (Wang Zhaojie 3/7/19 Rule 30(b)(6) Depo. Tr. at 79:4–82:22) (discussing weekly reports); *id.* ¶ 41, Ex. LL (Wang Zhaojie 9/20/22 Depo. Tr., at 119:7–120:9) (authenticating minutes of a sales/marketing meeting).

The Honorable Vaughn R. Walker
3/20/2023
Page 15

## II.   <u>Irico Has Failed To Produce Witnesses In Violation Of Court Orders</u>

Irico has also improperly denied Plaintiffs evidence by refusing to produce witnesses. Irico has used its withdrawal and delaying tactics to render most witnesses to its conduct unavailable to testify. At least 17 individuals—who attended scores of competitor meetings—left Irico's employ during the period of its withdrawal or during jurisdictional discovery.[58] Irico has thus claimed that it cannot produce these individuals for deposition, even though it interviewed a number of them as part of its investigation into the alleged conspiracy.[59]

### A.   Su Xiaohua

Most recently, Irico failed to produce Su Xiaohua for deposition after ten months of delays, and in violation of Court Orders requiring it to produce him.[60] As the Court recounted in the Su Order, Mr. Su is an important witness whom Irico identified as one of only two persons knowledgeable regarding "matters that are highly relevant to this litigation and is likely the only Irico witness with personal knowledge of key facts and events." Su Order at 10. Irico identified Mr. Su as one of only two witnesses knowledgeable about Irico's meetings and communications with its competitors and three affirmative defenses.[61] After three stipulated extensions of Court-ordered deadlines, Irico failed to produce Mr. Su for deposition, claiming he had resigned on May 25, 2022, in part "because he refused to travel to Macau for a deposition given the severe quarantine requirements that he would face upon his return to mainland China . . . ." ECF No. 6027-3; Su Order at 5-7, 12 (reciting chronology and noting that it "paints an unflattering picture of Irico.").

The Court identified three disputed issues relevant to this sanctions motion: (1) whether Irico's failure to produce Su Xiaohua violated a Court Order (*id*. at 7–8); (2) Irico's awareness of Mr. Su's intent to resign and resignation (*id*. at 8–9); and (3) whether Mr. Su's failure to appear was outside of Irico's control. *Id.* at 10. To inform the latter two issues, the Court ordered "targeted discovery" of documents relating to Mr. Su's

---

[58] Capurro Decl. ¶ 42, Ex. MM (2018-06-05 Irico Resp. to Letter re Potential Deponents (listing departed employees)); *id.* Ex. S (Irico Third Suppl. Objs. & Resps. to IPPs Third Set Interrogs., Resp. to Issue No. 2) at 9 (Wang Ximin departed in November 2013).

[59] Among others, Irico interviewed Guo Mengquan, Liang Yuan, Shen Xiaolin and Wei Jian-She during jurisdictional discovery. *Id.*, Ex. X (Irico's Fourth Suppl. Objs. & Resps. to DPP FSIA RFPs) at 9.

[60] *See further* ECF Nos. 6032 at pp. 2–7 & 6101 at pp. 2–5.

[61] *See* ECF No. 6032-1, ¶ 2, Ex. A (describing Irico's interrogatory responses identifying Mr. Su as knowledgeable about Irico's Third, Eighth and Tenth Affirmative Defenses, and attaching responses), & ¶ 11, Ex. J (describing Irico's interrogatory responses identifying Mr. Su as knowledgeable about Irico's meetings and communications with competitors and attaching responses).

The Honorable Vaughn R. Walker
3/20/2023
Page 16

deposition, his resignation (including when any Irico employee first learned of his intention to resign), his relationship(s) with Irico or its related entities, his employment status, Irico's efforts to comply with the order to produce Mr. Su for deposition, and Irico's continuing control of Mr. Su. *Id.* at 12–13. Irico produced responsive documents to Plaintiffs on December 22, 2022, along with an extensive privilege log.[62]

Irico's failure to produce Su Xiaohua violated Court Orders: As the Court recited in the Su Order, Irico waited until the June 30, 2022 deadline[63] for the depositions of Mr. Su and the other Irico witnesses to move for emergency relief from the May 25 Order. Su Order at 7. In addition, the Court denied the emergency motion because Irico failed to show good cause for relief from the May 25 Order. *Id.* at 8 (citing ECF No. 6047 at 12:10–36). "On this record," Your Honor correctly concluded that "Irico did violate the court's order (ECF No. 6016) by not producing witnesses for depositions by June 30, 2022 and by failing to demonstrate good cause to set aside that order." Su Order at 8.

Irico has contended that it did not violate the May 25 Order because the Court reset the deposition deadline for September 9, 2022, and that the August 22, 2022 Stipulated Order (ECF No. 6056) somehow vacated that deadline for Mr. Su. Not so. The August 11, 2022 Order (ECF No. 6047) did not [a]excuse Mr. Su from appearing for deposition or excuse Irico's violation of the May 25 Order. Indeed, the Court expressly stated that "if fewer than all of the witnesses testify," the parties could file a brief setting forth "the legal consequence of the witness' failure to appear." ECF No. 6047 at 13:10–14:7. Thus, the Court did not excuse the violation of the May 25 Order. In addition, the August 22, 2022 Stipulated Order only pertained to Messrs. Wang and Yan (*see* ECF No. 6056 at 1:7–8), as Your Honor correctly concluded. Su Order at 6. The parties never contemplated vacating the deadline for Mr. Su, much less agreed to do so, as confirmed by the parties' correspondence relating to the stipulation, which makes no mention of Mr. Su.[64] Thus, Irico's failure to produce Mr. Su violated both the May 25 Order and the August 11, 2022 Order requiring him to appear for deposition by September 9, 2022.

Irico was aware of Mr. Su's intent to resign by at least early April 2022: Yan Yunlong testified that Irico knew "[a]t some point in April" 2022 that Mr. Su was not willing to be deposed and intended to resign.[65] Irico has dismissed Mr. Yan's testimony as "hearsay" and "inaccurate," and claims it did not know that Mr. Su planned to resign before it happened. ECF No. 6101 at 10. But the only support for these statements is the Declaration of Zhang Wenkai, which the Court concluded "only speaks to his personal

---

[62] Capurro Decl. ¶ 43, Ex. NN (Irico Defendants' Log of Privileged Documents Responsive to December 6, 2022 Order).

[63] *See* ECF No. 6016 (the "May 25 Order") (setting June 25, 2022 deadline).

[64] Capurro Decl. ¶ 46. *See also id.* ¶ 44, Ex. OO (Plaintiffs' Aug. 19, 2022 Letter to Taladay); *id.* ¶ 45, Ex. PP (Taladay's Aug. 19, 2022 Letter to Plaintiffs).

[65] Capurro Decl. Ex. B (Yan Yunlong Dep. Tr. Vol. II at 230:15–231:2).

The Honorable Vaughn R. Walker
3/20/2023
Page 17

knowledge" and "cannot be considered 'reliable evidence' that Irico only learned of Mr. Su's decision to depart on May 25, 2022." Su Order at 9.

Irico is also attempting to re-write Mr. Yan's sworn testimony from "*in* April" to "*after* April" by way of erratum, asserting that he "mis-spoke."[66] This is plainly improper.[67] However, even if Mr. Yan's testimony is changed from "*in* April" to "*after* April," it would not exonerate Irico. Irico continued to assure Plaintiffs and the Court of Mr. Su's willingness to appear—and received extensions of the Court-ordered deadline to produce him—through May 20, 2022. ECF No. 6015. Indeed, IPPs lost their trial date because of this *third* extension of time. ECF Nos. 6016, 6024.[68] Yet, Irico did not disclose Mr. Su's resignation and unwillingness to appear until June 7, 2022.

Moreover, a document produced by Irico in response to the Court's targeted discovery corroborates Mr. Yan's original testimony that Irico knew "*in* April" that Mr. Su would be unavailable. The redacted minutes of an April 7, 2022 meeting show that Irico approved Mr. Su's request to take *early* retirement on April 7, 2022, without requiring him to appear for deposition when it likely had the power to do so.[69] The meeting minutes state:

> **Regarding matters related to Su Xiao Hua reaching retirement age and departure**
>
> . . . Su Xiao Hua, the regional general manager for the Huanan area of Xianyang Irico Industrial Group Co., Ltd., has reached the upper age limit for employment in March 2022, and will leave his position as manager at the end of December to retire and rest. **Because he himself submitted a request to leave the position ahead of schedule, after discussion, it has been agreed that Su Xiao Hua may leave the position ahead of schedule** after reaching upper age limit for employment.

IRI-SU-000139E (emphasis added). At IRI-SU-000140E, it states "Copy: Relevant leaders of the Group company. Printed and distributed on April 8, 2022."

Thus, there is no doubt that Irico knew no later than *early* April that Mr. Su planned to resign early. The meeting minutes are ambiguous, however, as to when exactly he would

---

[66] Capurro Decl. ¶ 47, Ex. QQ (Yan Yunlong Deposition Errata 2022-09-28).

[67] *Id.* ¶ 48, Ex. RR (Plaintiffs' Letter re Errata, dated Jan. 27, 2023). Irico has refused to withdraw the erratum. *Id.* ¶ 49, Ex. SS (Email dated Feb. 16, 2023 from Evan Werbel). Thus, Plaintiffs will be presenting yet another dispute to the Special Master for resolution.

[68] Irico has claimed that IPPs lost their trial date because their expert could not be deposed before the close of expert discovery. This is false. Dr. Netz was deposed a mere two weeks after the close of expert discovery. Moreover, extending the close of expert discovery to depose Dr. Netz did not require any other pretrial dates to be moved.

[69] *Id.* ¶ 50, Ex. TT (IRI-SU-000137–40E).

The Honorable Vaughn R. Walker
3/20/2023
Page 18

resign. They state that Su "reached the upper age limit for employment in March 2022 and will leave his position as manager at the end of December[,]" but they also state that Su had "submitted a request to leave the position *ahead of schedule*[,]" which Irico approved. IRI-SU-000139E (emphasis added). It is unclear what "ahead of schedule" means.

Only one other pre-June 7, 2022[70] Irico document mentions Mr. Su's resignation. The document is entitled "Resignation Report" and is signed and dated by hand by Mr. Su, but the date is ambiguous: it is either dated 3/25/2022 or 5/25/2022.[71] After explaining that he is concerned about caring for his elderly mother, Mr. Su states:

> At this time, I have reached the upper limit of the employment age for managers. Due to the above personal reasons, *I would like to apply for early resignation* from my position as a manager and terminate my employment relationship with the company. Please be advised.

IRI-SU-000141E (emphasis added). Mr. Su's statement that he "would like to *apply* for early resignation" indicates that his Resignation Report was sent *before* the April 7, 2022 meeting at which Irico approved Mr. Su's early resignation. It makes no sense that Mr. Su would submit an application to resign early on May 25, 2022 when his early resignation had already been approved over a month before. Moreover, Irico has told Plaintiffs and the Court that May 25, 2022 is the date that Mr. Su "formally resigned."[72] Why then would Mr. Su be only applying for early resignation on that date? It is more logical that Mr. Su submitted the application on March 25, 2022 and that application was then approved at the April 7, 2022 meeting. However, only Irico knows the truth.[73]

Regardless of whether the Resignation Report is dated 3/25/2022 or 5/25/2022, Irico still knew by at least April 7, 2022 that Mr. Su intended to resign early, yet they concealed that fact from Plaintiffs and the Court.

---

[70] June 7, 2022 is the date Irico informed Plaintiffs of Mr. Su's resignation.

[71] *Compare* Mr. Su's handwritten date on IRI-SU-000141 (Capurro Decl. ¶ 51, Ex. UU) *with* Mr. Su's handwritten date on IRI-SU-000053. *Id.* ¶ 52, Ex. VV. The handwritten number "5" on IRI-SU-000053 is quite different from the number on IRI-SU-000141.

[72] ECF No. 6027-3 (Decl. of Wenkai Zhang) ¶ 6.

[73] The only other documents that mention Su's resignation are emails from June 7, 2022 onwards, *i.e.*, after his resignation, which appear to be Irico's counsel forwarding Plaintiffs' counsel's emails to Irico. Irico has withheld a substantial number of communications on privilege grounds. *See* Capurro Decl., Ex. NN (Irico Defendants' Log of Privileged Documents Responsive to December 6, 2022 Order). It is doubtful that there are only two documents relating to Mr. Su's resignation. Other such documents likely exist but are being withheld on privilege grounds.

The Honorable Vaughn R. Walker
3/20/2023
Page 19

<u>Irico has failed to demonstrate that Su Xiaohua's failure to appear was outside of its control.</u> Irico has asserted that it should not be sanctioned for its failure to produce Mr. Su because Mr. Su's non-appearance was outside of its control. ECF No. 6101 at 14. But, as the Court noted, "Irico provides no information supporting its assertions that Su Xiaohua's nonappearance was outside of its control or that Irico made efforts to persuade Su Xiaohua to appear for his deposition as Irico did for the two other witnesses." Su Order at 10. Thus, the Court ordered Irico to produce documents relating to "Irico's efforts to comply with the order to produce Su for deposition," and "Irico's continuing control or persuasive influence with respect to Su Xiaohua." *Id*. at 13.

None of Irico's recently produced documents demonstrate any effort by Irico to persuade Mr. Su to appear for his deposition. Indeed, the April 7, 2022 meeting minute suggests that far from attempting to persuade Mr. Su to appear for his deposition, Irico approved Mr. Su's request to "leave the position ahead of schedule[,]" without conditioning that approval on appearing for his deposition when it likely had the power to do so. IRI-SU-000139E (emphasis added). Thus, Irico has failed to demonstrate that Su Xiaohua's failure to appear was outside of its control.

### B.     Guo Mengquan

Irico's failure to produce Mr. Su for deposition is not the first time that Irico has failed to produce a witness for deposition in violation of a Court order. Irico engaged in similar tactics in connection with the deposition of Guo Menguan in 2018. Mr. Guo was a senior Group executive during the relevant period and thereafter who submitted a declaration in support of Irico's renewed motion to dismiss on FSIA grounds. ECF Nos. 5312-1, 5313-1, 5392-1, 5393-1. Mr. Guo also attended at least six competitor meetings.[74] Thus, Plaintiffs sought to depose him beginning in July 2018.

As with Mr. Su, Irico's misconduct required Mr. Guo's deposition to be rescheduled twice: the first time because Irico produced 2,200 pages of Chinese-language documents 10 days before the deposition was due to begin (ECF No. 5340), leaving Plaintiffs insufficient time to review and translate documents; and the second time because it failed to timely comply with Orders compelling production of documents.[75] The deposition was finally scheduled for March 4, 2019. But, one week before his deposition, Irico informed Plaintiffs that Mr. Guo—a former employee—would not appear due to an unspecified illness.[76]

---

[74] Capurro Decl. ¶ 53, Ex. WW (DPPs' May 27, 2021 Letter to Judge Walker re Irico Competitor Contacts) at 4–5.

[75] *Id.* ¶ 54, Ex. XX (10/9/18 DPP Email to Irico); *id.* ¶ 55, Ex. YY (2/5/19 DPP Ltr to Irico).

[76] *Id*. ¶ 56, Ex. ZZ (2/25/19 Irico email to Plaintiffs).

The Honorable Vaughn R. Walker
3/20/2023
Page 20

### III.   <u>Irico Motion To Lift The Prior Default Was Based On False Testimony</u>

The Court is also familiar with Irico's improper default. Shortly after it (and the other defendants) failed to obtain dismissal of Plaintiffs' claims, Irico disappeared from this litigation. For approximately seven years, Irico ignored Plaintiffs' discovery requests as well as the Court's various scheduling orders. After a motion for a default judgment was filed, Irico reappeared and prevailed on its motion to lift the defaults entered against it.[77] However, the Court made clear that Irico's withdrawal was improper and caused Plaintiffs significant prejudice through, *inter alia,* the loss of evidence and inordinate delay.[78]

It is now clear that the evidence Irico submitted to contend that its default was not in "bad faith" was a misrepresentation. As the Court characterized that evidence in its Default Order:

> According to a declaration by Wenkai Zhang, the legal counsel at Irico Group, Irico decided not to answer the complaint "because it believed that Irico Group and Irico Display were immune from suit in the United States," ECF No. 5215-1 ¶ 5.  The Irico entities . . . believed they were immune from DPPs' suit under notion of foreign sovereign immunity and accordingly did not participate in this action beyond joining a motion to dismiss."

ECF No. 5214 at 8.[79] However, the recent deposition testimony of Yan Yunlong makes clear that Mr. Zhang's declaration was false.

Irico's decision to cease participation in this lawsuit was not based on a belief in Irico's (non-existent) immunity under the FSIA, but rather was calculated to gain advantage. Mr. Yan, who was a member of the Litigation Committee, was examined over multiple days of deposition, including direct examination by his counsel, yet never identified immunity under the FSIA as playing any role in Irico's decision to default. Rather, he testified that Irico was concerned by the prospect of defending the case in conjunction with the other defendants, many of whom had been publicly identified by law enforcement as conspirators, and believed that Irico would be at a "disadvantage" if it did so.[80] He also explained: "I said earlier that Irico was waiting for the plaintiff – or plaintiffs to file a separate lawsuit against just Irico. Then we will make corresponding responses."[81]

---

[77] *In re Cathode Ray Tube* (*CRT*) Antitrust Litig., MDL No. 1917, No. C-07-5944-JST, 2018 WL 659084, at *8 (N.D. Cal. Feb. 1, 2018) (the "Default Order").

[78] *Id.* (DPPs "inarguably prejudiced by the Irico Defendants' decision to disappear from the case").

[79] Default Order, 2018 WL 659084, at *1.

[80] *See* Capurro Decl. Ex. E (Yan Yunlong Dep. Tr. Vol. I, at 118:5–120:21).

[81] *Id.*, Ex. B (Yan Yunlong Dep. Tr. Vol. II at 210:2–21). *See also id*., Ex. E Yan Yunlong Dep. Tr. Vol. I at 120:10–21 ("We also knew that it would be a long process for the

The Honorable Vaughn R. Walker
3/20/2023
Page 21

In sum, nothing in Mr. Yan's testimony supports the previous assertion that Irico's decision not to participate in this MDL litigation was based on belief in legal immunity. Rather, his testimony reveals that the reason for Irico's 2010 decision to disappear was a litigation strategy seeking to defend in a more advantageous context.

## IV.   Irico Has Repeatedly Flouted The Court's Authority Throughout The Litigation

Finally, Irico has also violated the Court's orders and discovery and other obligations throughout the case. *See* Su Order at 1–7 (describing "unflattering" chronology). Among many other things, Irico has refused to comply with at least three Court orders compelling discovery. First, during jurisdictional discovery, Irico defied the Court's order compelling it to produce documents relating to its attendance at competitor meetings and its U.S. sales, and to identify documents Zhang Wenkai reviewed in connection with his declaration. *See* ECF No. 5331 (enforcing order).

Second, Irico violated the Court's enforcement Order by falsely representing that it had performed an extensive search and found no documents relating to the (26) competitor meetings[82] when, in fact, it possessed travel and expense records corroborating at least seven of these meetings. This fact was confirmed when in October 2021—almost three years later—Irico finally produced these records.[83]

Third, as the Court is aware, Irico has also failed to comply with the Court's order requiring it to respond to interrogatories regarding its meetings and agreements with its competitors. ECF No. 5919. Following assurances that it would provide full responses, Irico failed to do so.[84] ECF No. 5944 at 2 ("No fair appraisal of Irico's responses to the interrogatories at issue can conclude that these responses are not plainly deficient.").

---

plaintiffs and the defendants to form the litigation groups and to actually go through the proceeding, so we were waiting for the plaintiffs to file an independent, separate lawsuit against Irico, and we wanted to wait until that time before we conducted any relevant investigation."); *id.* at 127:6–18 ("[W]e came to the conclusion that we would give up responding to the litigation before the plaintiffs filed any independent lawsuit against us.").

[82] Capurro Decl. ¶ 57, Ex. AAA (2018-10-10 Yan Declaration ISO Third Supp Resp DPPs FSIA RFPs); *see also* ECF No. 5228-1, Ex. 11 (chart summarizing 26 meetings).

[83] Capurro Decl., Ex. Y (Irico's Sixth Suppl. Objs. & Resps. To DPPs' First Set Interrogs., Third Suppl. Resp. to Interrog. No. 5) at 11–13 (admitting that Irico's travel reimbursement records show that Irico employees traveled to seven of the meetings with competitors alleged by Plaintiffs in ECF No. 5228-1, Ex. 11).

[84] *See* Capurro Decl. ¶ 58, Ex. BBB (Irico's Third Suppl. Objs. & Resps. to DPPs' First Set of Interrogs.) at 7.

The Honorable Vaughn R. Walker
3/20/2023
Page 22

## ARGUMENT

**I.**      **Irico Had A Legal Duty To Preserve Evidence And Avoid Spoliation**

"Spoliation" is the destruction or failure to preserve documents, ESI, or other property for another's use as evidence.[85] All litigants have an affirmative common-law duty to preserve evidence that is potentially relevant, or may lead to the discovery of relevant evidence, and to avoid spoliation.[86]

From the moment litigation is filed or reasonably anticipated, a party "must suspend its routine document retention/destruction policy and put in place a 'litigation hold' to ensure the preservation" of all documents and ESI "that [are] relevant to the claims or defenses of any party, or which [are] relevant to the subject matter involved in the action."[87] That includes an obligation to identify and locate such information as well to preserve it.[88] It is well-established that an oral litigation hold "is insufficient to reasonably protect against the spoliation of evidence."[89] The litigation hold must be in writing.[90]

Once a corporate party has put a litigation hold into place, it must take affirmative steps to make certain that all sources of potentially relevant information are identified and placed "on hold," and that they *remain* "on hold." As part of that process, the party must communicate with "key players" in the litigation to understand how they stored information and to ensure that it is located and preserved.[91] With respect to ESI, such as electronically stored documents, data and emails, the company must consult with IT personnel to ensure that its document retention policies, data retention architecture, and

---

[85] *Apple Inc. v. Samsung Elecs. Co., Ltd.*, 888 F. Supp. 2d 976, 989 (N.D. Cal. 2012) ("*Apple II*").

[86] *Compass Bank v. Morris Cerullo World Evangelism*, 104 F. Supp. 3d 1040, 1051 (S.D. Cal. May 8, 2015) ("*Compass Bank*").

[87] *Zubulake v. UBS Warburg*, 220 F.R.D. 212, 218 (S.D.N.Y. 2003).

[88] *Apple Inc. v. Samsung Elecs. Co.*, 881 F. Supp. 2d 1132, 1137 (N.D. Cal. 2012) ("*Apple I*")

[89] *Borum v. Brentwood Vill., LLC*, 332 F.R.D. 38, 46 (D.D.C. 2019).

[90] *See GenOn Mid-Atlantic, LLC v. Stone & Webster, Inc.*, 282 F.R.D. 346, 357 (S.D.N.Y. 2012) (finding "a degree of culpability sufficient to permit the imposition of sanctions" where company failed to issue written litigation hold after it contemplated litigation); *Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*, 685 F. Supp. 2d 456 ("*Pension Comm.*"), at 471 (S.D.N.Y. 2010) (it is "gross negligence not to issue a written litigation hold . . . .").

[91] *See Pension Comm.*, 685 F. Supp. 2d at 465 ("[T]he failure to collect records – either paper or electronic – from key players constitutes gross negligence or willfulness as does the destruction of email or certain backup tapes after the duty to preserve has attached.")

The Honorable Vaughn R. Walker
3/20/2023
Page 23

system-wide backup procedures are understood and harmonized with the document preservation regime.[92] The auto-deletion of emails must be terminated immediately.[93] Furthermore, if necessary, ESI must be preserved by creating backup tapes together with a mirror image of the company's computer system.[94] Finally, the organization must *publicize* the litigation hold to its managers and employees, *train* them in how to comply with it, and *monitor* their conduct to ensure that they comply.[95] The failure to do any or all of these things "constitutes gross negligence or willfulness as does the destruction of email or certain backup tapes after the duty to preserve has attached."[96]

Thus, for example, in *Apple I,* the court sanctioned defendant Samsung for spoliation and ordered that an adverse inference instruction be given to the jury.[97] Although Samsung had issued a written litigation hold, it did not train its employees how to comply with it, did not verify their compliance, and failed to disable the auto-delete function on its proprietary email system, so that most of the emails on that system were lost. *Id*. The court held that Samsung acted in "conscious disregard" of its obligations. *Id.*

In addition to the *common-law duty* to preserve evidence, the Court's Pretrial Order No. 1 required Irico to preserve documents and data that either "may be relevant to this action" or were "potentially relevant to the subject matter of this litigation." ECF No. 230.

## II.     The Court's Authority To Impose Sanctions For Spoliation And For Irico's Failure To Produce Su Xiaohua In Violation Of Court Orders

"There are two sources of authority under which a district court can sanction a party who has despoiled evidence and/or engaged in bad faith conduct: the inherent power of federal courts to levy sanctions in response to abusive litigation practices, and the availability of sanctions under [Fed.R.Civ.P.] 37[.]"[98]

---

[92] *Zubulake v. UBS Warburg LLC*, 229 F.R.D. at 432.

[93] *Pension Comm.*, 685 F. Supp. 2d at 471. *See DR Distribs., LLC v. 21 Century Smoking, Inc*., 513 F. Supp. 3d 839, 979 (N.D. Ill. 2021) ("[D]isabling an autodeletion function is universally understood to be one of the most basic and simple functions a party must do to preserve ESI.").

[95] *Apple I,* 881 F. Supp.2d at 1145–46, 1150.

[96] *Id.*; *Pension Comm.,* 685 F. Supp. 2d at 465.

[97] *Apple I,* 881 F. Supp. 2d at 1147.

[98] *Leon v. IDX Sys. Corp*., 464 F.3d 951, 958 (9th Cir. 2006) ("*Leon*") (internal quotation marks omitted).

The Honorable Vaughn R. Walker
3/20/2023
Page 24

### A.  Sanctions Pursuant to the Court's Inherent Authority

"[C]ourts have the inherent power to impose sanctions for abusive litigation practices,"[99] including "the authority to impose sanctions for the . . . spoliation of evidence"[100] and violations of court orders.[101] The policy underlying that inherent power is "the need to preserve the integrity of the judicial process in order to retain confidence that [it] works to uncover the truth."[102]

Available sanctions include giving an adverse inference jury instruction, precluding evidence, or imposing case-dispositive sanctions of dismissal or judgment.[103] The party seeking sanctions must show that (1) the party that lost the information had a duty to preserve it when it was destroyed; (2) the destruction was accompanied by a culpable state of mind; and (3) the spoliated information was relevant to the claims or defenses of the party that sought the discovery.[104] "A party's destruction of evidence qualifies as willful spoliation if the party has 'some notice that the documents were potentially relevant to the litigation before they were destroyed.'"[105]

While the court has discretion to impose spoliation sanctions, it must determine which sanction best (1) deters parties from future spoliation; (2) places the risk of an erroneous judgment on the spoliating party; and (3) restores innocent parties to their rightful litigation position.[106] The choice of appropriate sanctions should be commensurate to the spoliating party's motive or degree of fault in destroying the evidence. *Id.*

---

[99] *Young v. Off. of U.S. Senate Sergeant at Arms*, 217 F.R.D. 61, 65 (D.D.C. 2003).

[100] *Leon*, 464 F.3d at 958.

[101] *Harry & David v. Pathak*, No. CV 09-3013-CL, 2010 U.S. Dist. LEXIS 59837, *12, 2010 WL 2432071 (D. Or. 2010).

[102] *Pension Committee*, 685 F. Supp. 2d at 465.

[103] *Compass Bank*, 104 F.Supp.3d at 1052.

[104] *See Steves and Sons, Inc. v. JELD-WEN, Inc.*, 327 F.R.D. 96, 104 (E.D. Va. 2018); *Moore v. Gilead Scis., Inc.*, No. C 07-03850 SI, 2012 WL 669531, at *3 (N.D. Cal. Feb. 29, 2012).

[105] *Leon*, 464 F.3d at 959 (quoting *United States v. Kitsap Physicians Serv.*, 314 F.3d 995, 1001 (9th Cir. 2002)). *See also Fink v. Gomez*, 239 F.3d 989, 993 (9th Cir. 2001) (sanctions pursuant to the Court's inherent authority "are available if the court specifically finds bad faith or conduct tantamount to bad faith").

[106] *Internmatch, Inc., v. Nxtbigthing*, LLC, No. 14-cv-05438-JST, 2016 WL 491483, at *4 (N.D. Cal. Feb. 8, 2016) ("*Internmatch*"); *Apple I,* 881 F. Supp. 2d at 1136.

The Honorable Vaughn R. Walker
3/20/2023
Page 25

### B.  Sanctions Under Rule 37

Two subsections of Rule 37 provide additional authority for the imposition of sanctions for the imposition of sanctions here.

#### 1.  Rule 37(b)(2)(A)

*First,* sanctions can be imposed under Rule 37(b)(2)(A), which provides that if a party "fails to obey an order to provide or permit discovery," the Court "may issue further just orders . . . ."[107] In determining what remedies are appropriate under Rule 37, courts consider (1) whether the non-complying party acted in bad faith, (2) the prejudice suffered by the opposing party, (3) the need for deterrence, and (4) whether less drastic sanctions would have been effective.[108]

Sanctions under Rule 37(b)(2)(A) may include, but are not limited to, "(i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims; (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence; (iii) striking pleadings in whole or in part; . . . [or] (vi) rendering a default judgment against the disobedient party." Under Rule 37(b)(2)(A), disobedient conduct "not shown to be outside [a litigant's] control" can support a finding of willfulness, bad faith or fault that can justify entering a severe sanction against that party, up to and including the entry of a default judgment.[109]

#### 2.  Rule 37(e)

*Second,* sanctions are available under Fed. R. Civ. P. 37(e) "if electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery . . . ." The severity of the sanction available under Rule 37(e) depends, in large part, on whether the spoliator "acted with the *intent* to deprive another party of the information's use in the litigation." Fed. R. Civ. P. 37(e)(2) (emphasis

---

[107] *Leon,* 464 F.3d at 958. *See also WeRide Corp. v. Kun Huang,* No. 5:18-cv-07233-EJD, 2020 WL 1967209, at *11–12 (N.D. Cal. Apr. 24, 2020) ("*WeRide*") (awarding terminating sanctions under Rule 37(b) where defendants spoliated evidence in violation of a Court order); *Facebook, Inc. v. OnlineNIC Inc.,* No. 19-CV-07071-SI (SVK), 2022 WL 2289067, at *1 (N.D. Cal. Mar. 28, 2022) ("*Facebook*") (recommending terminating sanctions under Rules 37(b) and 37(e), where, *inter alia,* parties deleted and withheld ESI), *Report and Recommendation adopted,* 2022 WL 17371092 (N.D. Cal. Oct. 17, 2022).

[108] *Belk v. Charlotte-Mecklenburg Bd. of Educ.,* 269 F.3d 305, 348 (4th Cir. 2001) (*en banc*).

[109] *Fair Housing of Marin v. Combs,* 285 F.3d 899, 905 (9th Cir. 2001); *Internmatch,* 2016 WL 491483, at *4.

The Honorable Vaughn R. Walker
3/20/2023
Page 26

added). In the absence of a finding of intent, the Court is limited to assessing sanctions "no greater than necessary to cure the prejudice" under Rule 37(e)(1). However, "[i]f the party that lost the evidence acted with the intent to deprive another party of the information's use in the litigation, more severe sanctions are available under Rule 37(e)(2), including a presumption that the lost information was unfavorable to the party, instructing the jury that it may or must apply such a presumption or even dismissing the action entirely."[110]

Notably, where the despoiling party has acted with intent, no showing is required that the spoliation has caused prejudice to the other party, "because the finding of intent . . . can support not only an inference that the lost information was unfavorable to the party that intentionally destroyed it, but also an inference that the opposing party was prejudiced by the loss of information that would have favored its position."[111] A party deprived of ESI by spoliation need only demonstrate the adverse party's intent by *a preponderance of the evidence*.[112] Moreover, "[i]ntentional destruction and bad faith may be proved inferentially and with circumstantial evidence, and [the] Court need not leave experience and commonsense at the courthouse door when making its determination."[113] Thus, in *Moody v. CSX Transp., Inc*., 271 F. Supp. 3d 410, 431 (W.D.N.Y. 2017) ("*Moody*"), key evidence was lost when the defendants destroyed or recycled an employee's laptop. Given the importance of the evidence, the court found the defendants' conduct was "so stunningly derelict as to evince intentionality." *Id*. at 432.

### III.   The Legal Prerequisites For The Imposition Of Sanctions Are Present

The legal prerequisites for the imposition of sanctions under the Court's inherent authority are present here. Irico had a duty to preserve relevant evidence when it was destroyed, and the spoliated evidence was highly relevant to the claims or defenses in the case.[114] In addition, the destruction of evidence was intentional, willful, and in bad faith

---

[110] *Matthew Enter., Inc. v. Chrysler Grp. LLC*, No. 13-CV-04236-BLF, 2016 WL 2957133, at *3 (N.D. Cal. May 23, 2016) (citing Fed. R. Civ. P. 37(e)(2)).

[111] Advisory Committee Note to Fed. R. Civ. P. 37(e)(2) – 2015 Amendment.

[112] *Torgersen v. Siemens Bldg. Tech., Inc.*, No. 19-cv-4975, 2021 WL 2072151, at *4 (N.D. Ill. May 24, 2021) ("*Torgersen*").

[113] *Id.* at *4 (quoting *Sonrai Systems, LLC v. Anthony Romano, et al*., No. 16 C 3371, 2021 WL 1418405, at *13 (N.D. Ill. Jan. 20, 2021)); *accord Estate of Bosco v. Cnty. of Sonoma*, No. 20-cv-04859-CRB, 2022 WL 16927796, at *9 (N.D. Cal. Nov. 14, 2022) ("Because courts are unable to ascertain precisely what was in a person's head at the time spoliation occurred, they must look to circumstantial evidence to determine intent.")

[114] Defendants should not escape sanctions because the exact identity of the documents that were destroyed or lost cannot be determined. Their wholesale destruction of entire categories of evidence is the reason it is not possible to determine precisely what evidence has been lost. *Pension Comm.,* 685 F. Supp. 2d at 479–480. *See also Kronisch v. United States*, 150 F.3d 112, 128 (2d Cir. 1998) ("[H]olding the prejudiced party to too strict a

The Honorable Vaughn R. Walker
3/20/2023
Page 27

because Irico had been served with Complaints detailing Plaintiffs' claims and had received detailed instructions from counsel that it ignored. Thus, Irico was on notice that the evidence was potentially relevant to this case before it was destroyed.[115]

The requirements for sanctions under both Rule 37(b)(2)(A) and Rule 37(e) are also satisfied. Defendants' willful failure to impose a litigation hold and to locate and preserve potentially relevant evidence violated PTO No. 1 and Irico's common-law duties, including its duty to locate and ensure the preservation of ESI. That evidence was lost because Irico failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery. Irico's failure to produce Mr. Su for his Court-ordered deposition and its lack of candor with Plaintiffs and the Court have exacerbated the harm to Plaintiffs. Irico's improper withdrawal from the case, its violations of other orders, and its repeated misrepresentations to the Court also support the issuance of sanctions.

## A.     Irico Acted With Intent To Deprive Plaintiffs Of Relevant Evidence

Abundant evidence supports a finding that Irico's failure to take reasonable measures to preserve documents and ESI, and its other conduct, was intentional within the meaning of Rule 37(e). By not adopting prompt and reasonable measures to put potentially relevant evidence "on hold"—by not searching for it and not preserving it—Irico acted with the intent to deny that evidence to Plaintiffs.

The strongest evidence of Irico's intent is the gross inadequacy of its efforts. Irico waited *eight months* to do anything at all despite being instructed by Pillsbury as early as February 15, 2008 and on several occasions thereafter to preserve "any potentially relevant evidence." Then, instead of implementing a robust program to identify, locate and preserve relevant evidence, all Irico (allegedly) did was give Pillsbury's August 2008 Instructions to members of the "Litigation Committee." And there, for all we know, the matter was dropped. There is no evidence that anything was done to identify, find or preserve relevant documents or ESI. The auto-deletion of emails continued unabated—clear evidence of intent, under the caselaw[116]—resulting in the wholesale destruction of all Irico emails from the relevant period. To make such a tardy and transparently inadequate attempt to identify

---

standard of proof regarding the likely contents of the destroyed evidence would subvert the prophylactic and punitive purposes of the adverse inference, and would allow parties who have intentionally destroyed evidence to profit from that destruction."); *Gutman v. Klein*, No. 03 CV 1570 (BMC) (RML), 2008 WL 4682208, at *7 (E.D.N.Y. Oct. 15, 2008) ("bad faith alone is sufficient circumstantial evidence from which a reasonable fact finder could conclude that the missing evidence was unfavorable to that party.") (internal quotation marks and citation omitted).

[115] *Leon*, 464 F.3d at 959.

[116] Failure to disable auto-delete functionality ***itself*** satisfies the intent requirement of Rule 37(e)(2). *See Glaukos Corp. v. Ivantis, Inc.*, No. SACV18620JVSJDEX, 2020 WL 10501850, at *4 (C.D. Cal. June 17, 2020); *WeRide*, 2020 WL 1967209, at *15–16.

The Honorable Vaughn R. Walker
3/20/2023
Page 28

evidence and save it from destruction, Irico cannot have been seriously trying to find the evidence and preserve it. Irico's conduct was "so stunningly derelict as to evince intentionality."[117] Moreover, the insufficiency of Irico's efforts was not a result of a "misunderstanding," because we now know its counsel instructed it—as early as February, 2008, if not earlier—precisely how to satisfy its legal duties, and even wrote out instructions to be transmitted to Irico's employees.

The *magnitude* of the failure to preserve evidence also militates in favor of a finding of intent. That *all* of the key players' emails and other relevant documents and ESI were destroyed or lost suggests a thoroughness indicative of intent. Irico's misrepresentations regarding its evidence preservation efforts also bespeaks a desire to dissemble and conceal what happened, which itself is circumstantial evidence of intent and bad faith.[118] That the decision to disregard its obligation to preserve evidence was made by a Litigation Committee dominated by the very people who participated in the alleged conspiracy also demonstrates that Irico's conduct was intended to deprive Plaintiffs of evidence. As explained above, there is also little question that Irico's failure to produce Mr. Su, its withdrawal from the case, and its repeated violations of the Courts' orders were intentional.

## B.      Plaintiffs Have Suffered Severe Prejudice

Although a finding of prejudice is not necessary to support severe sanctions where a party has despoiled evidence with intent to deny an opposing party the use of that evidence, the loss of entire categories of critical evidence—and Irico's other conduct—has substantially prejudiced Plaintiffs here.

*First,* in the absence of any Irico-produced documents regarding its participation in anticompetitive meetings, communications and agreements, Plaintiffs will have to rely on documents from the files of other defendants to prove Irico's involvement. Almost all of those documents were not only *produced* by other defendants but also *authored* by them. Only a very limited number of documents authored by Irico were produced by the other defendants. And while the other defendants' meeting minutes provide strong evidence of Irico's participation in the conspiracy, Irico-authored documents would be stronger, because they would include direct admissions by Irico personnel.

*Second,* Irico has indicated that it intends to rely on the purported defense that the Chinese government compelled it to charge the prices it charged. But Irico has produced

---

[117] *Moody*, 271 F. Supp. 3d at 432. *See also John v. Cty. of Lake*, No. 18-cv-06935-WHA (SK), 2020 WL 3630391, at *7 (N.D. Cal. July 3, 2020) (intent found where, as here, the court had expressly instructed defendants to put in place policies to preserve evidence and to stop any policy of destruction, but defendants did not do so; "even without that warning, Defendants' failure to comply with the basic rules requiring that they preserve evidence after the claim shows their intent.").

[118] *Internmatch*, 2016 WL 491483 at *11; *Torgersen*, 2021 WL 2072151, at *5.

The Honorable Vaughn R. Walker
3/20/2023
Page 29

virtually no documents from the relevant period showing how it priced its CRTs.[119] If the files and emails of those responsible for pricing decisions had been preserved and produced instead of being destroyed, and Su Xiaohua had been produced for deposition, Plaintiffs might have been able to discover evidence showing that pricing was based on other factors, not on government compulsion. Likewise, Irico intends to assert that Plaintiffs claims are barred on jurisdictional grounds or because its conduct was neither directed to nor affected purchasers in the U.S. If Irico's internal communications and communications with its customers had been preserved and produced, and Su Xiaohua had been produced for deposition, Plaintiffs would likely have direct evidence showing that Irico knew its price-fixed CRTs were impacting the U.S. market.[120] Because Irico willfully failed to preserve documents relevant to these affirmative defenses and did not produce Mr. Su, Plaintiffs have been denied the opportunity to properly test them. The absence of this evidence makes it much more difficult for Plaintiffs to "prove a negative."[121]

 *Finally*, Irico's spoliation of evidence, its failure to produce Mr. Su for a deposition, and its lack of candor about both of those instances of discovery misconduct, especially when considered in light of its prior manipulative and dilatory conduct in this litigation, has impeded the forward progress of this case and has materially postponed its fair and just resolution. The trial date is currently set for January 2024—more than *sixteen years* after this case was filed. The vast majority of that delay is attributable to Irico's misconduct. As this Court held in *Bernstein v. Virgin America, Inc.*, No. 15-cv-02277-JST, 2018 WL 6199679, at *5 (N.D. Cal Nov. 28, 2018), "[d]isruption to the schedule of the court and other parties . . . is not harmless." (citations, internal quotation marks and ellipsis omitted).

## IV. **Irico's Misconduct Warrants Terminating Sanctions**

 As this Court has explained, the Court's power under its inherent authority, Rule 37(b), and Rule 37(e), includes imposing terminating sanctions. *See., e.g., Internmatch, Inc.*, 2016 WL 491483, at *4 (reciting standard and collecting cases). Irico's long-running campaign to obstruct and delay this proceeding warrants a terminating sanction.

---

[119] *See, e.g.,* Capurro Decl. ¶ __, Ex. Y (Irico's Sixth Suppl. Objs. & Resps. to DPPs' First Set of Interrogs., Suppl. Resp. to Interrog. No. 6) at 14 (listing only eight documents in response to interrogatory about pricing); Ex. X (Irico's Fourth Suppl. Objs. & Resps. To IPPs' First Set of Interrogs., Suppl. Resp. to Interrog. No. 7) at 12–14 (listing primarily documents produced by other defendants, and non-contemporaneous documents from the internet and government documents rather than Irico's own documents from the relevant period as support for Irico's affirmative defenses, including its defense that its "pricing-related conduct was compelled by the Chinese government").

[120] As noted, some of the Irico sales and marketing reports found in Chunghwa's files show that Irico was aware that its customers were manufacturing televisions containing its CRTs for the U.S. market. *See* fn. 56, *supra*, and Capurro Decl., Exs. HH–JJ.

[121] *Williams v. Russ*, 167 Cal. App. 4th 1215, 1222 (2008) ("How do we know what was destroyed? How do you prove a negative?")

The Honorable Vaughn R. Walker
3/20/2023
Page 30

Irico's wholesale destruction of entire categories of important evidence in direct and knowing violation of this Court's order to preserve relevant evidence is sufficient by itself to justify a terminating sanction.[122] In addition, Irico refused to produce Mr. Su in violation of this Court's orders, has unreasonably delayed proceedings, has lied to Plaintiffs and the Court about critical matters, and attempted to cover up its misdeeds. In sum, Irico has "willfully deceived the Court and engaged in conduct utterly inconsistent with the orderly administration of justice." *See Wyle,* 709 F. 2d at 589. Such conduct also justifies striking Irico's answers.

The factors the Ninth Circuit has enunciated for the imposition of terminating sanctions supports such a sanction. Those factors are:

> (1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions.

*Internmatch*, 2016 WL 491483, at *4.

The first two factors, as several courts have noted, weigh in favor of terminating sanctions where, as here, the circumstances involve the violation of court orders.[123] These factors weigh even more heavily in favor of terminating sanctions in this case given the years' long delays occasioned by Irico's conduct, the multiple orders Irico has violated, and its attempts to cover up its misconduct with misrepresentations.[124]

The third factor—prejudice to the opposing party—is the "'most critical [factor] for case-dispositive sanctions,' because it goes to 'whether the discovery violations

---

[122] *See, e.g., WeRide*, 2020 WL 1967209, at *10, *12; *Facebook,* 2022 WL 2289067, at *1; *Jones v. Riot Hosp. Grp. LLC*, 2022 WL 3682031, at *10–13 (D. Ariz. Aug. 24, 2022) ("*Jones*").

[123] *See, e.g., Fair Hous. of Marin v. Combs*, 285 F.3d at 906 (affirming imposition of default judgment sanction where defendant repeatedly flouted basic discovery obligations and violated court orders); *WeRide,* 2020 WL 1967209 at *10 (terminating sanctions were required to remedy prejudice to plaintiff and to address defendant's demonstrated disregard for the court's orders); *Jones,* 2022 WL 3682031, at *10–13 (terminating sanctions for intentional destruction of text messages and concluding that lesser sanctions would be ineffective given plaintiff's disregard of court orders and undermining of the evidentiary record).

[124] Irico's conduct during the jurisdictional phase of this case confirms its improper intent to delay the case. Among other things, Irico submitted no new arguments in support of immunity after the completion of one and a half years of jurisdictional discovery. *See* FSIA Order at 12 (Court did not invite "a belated motion for reconsideration."). Its appeal of the Court's order denying immunity also appears to have been instituted solely for delay inasmuch as it was dismissed shortly before oral argument. *See* ECF No. 5861.

The Honorable Vaughn R. Walker
3/20/2023
Page 31

threaten to interfere with rightful decision of the case.'" *WeRide*, 2020 WL 1967209, at
*10 (citing *Valley Engineers Inc. v. Elec. Eng'g Co.*, 158 F.3d 1051, 1057 (9th Cir. 1998)).
This factor also weighs heavily in favor of terminating sanctions. While Plaintiffs possess
strong evidence of Irico's liability, Plaintiffs' ability to rebut Irico's defenses herein, as in
*WeRide,* has been "irredeemably" compromised by the egregious destruction and loss of
virtually all of the documentary evidence in Irico's possession, including virtually all of
the witnesses with knowledge of the core issue in this case.

Irico contends that despite its attendance at numerous allegedly conspiratorial
meetings, it never ***agreed*** to fix CRT prices; that the meetings themselves were, to the
extent anyone can even remember, primarily social occasions; and that whatever
information was exchanged was false.[125] Irico also seizes on a handful of statements in the
voluminous meeting notes to assert that, even to the extent the other attendees fixed prices,
Irico was a "disruptor" and fierce competitor. *Id.* There is no question that Irico has
destroyed, improperly lost or put beyond the reach of discovery a vast amount of evidence
that is not only unquestionably relevant to these contentions but would also likely disprove
them. It would be a gross injustice if the factfinder herein were to credit any of them due
to the absence of that evidence.

Irico's misconduct, moreover, goes directly to the core issue in the case. Again,
Irico disregarded the Court's preservation order and destroyed virtually all of its records
relating to the over 100 competitor meetings the evidence shows it attended. Its improper
withdrawal from the case facilitated the destruction of these records and also resulted in
the "unavailability" for deposition of virtually all of the Irico meeting attendees. Indeed,
the Court has already found "inarguabl[e] prejudice" resulting from Irico's "decision to
disappear from the case" *See* Default Order at 15.[126] Its misrepresentations about its
intentions to produce Mr. Su and failure to compel his attendance at deposition resulted in
the further loss of testimony of one of only two remaining meeting attendees.

The fourth factor—public policy favoring disposition of cases on their merits—
weighs against terminating sanctions. But this is true in every case, and it cannot outweigh
the other factors by itself. *See, e.g., Internmatch*, 2016 WL 491483, at *12. Courts granting
terminating sanctions have found such sanctions appropriate where, as here, the loss of
evidence brings into question whether a decision "on the merits" is even possible. *See, e.g.,
WeRide*, 2020 WL 1967209, at *11 ("AllRide's destruction of evidence was so sweeping
that this case cannot be resolved on its merits"). As noted, the Court has already suggested

---

[125] *See, e.g.,* Capurro Decl. ¶ 59, Ex. CCC (Irico's Response to Plaintiffs' Conspiracy
Proffer, dated Apr. 11, 2022) at 3–5.

[126] The close relationship between Irico's wrongful conduct and the core issues in the case
amply satisfies any "due process" issues associated with terminating sanctions. *See
Internmatch*, 2016 WL 491483 at *4.

The Honorable Vaughn R. Walker
3/20/2023
Page 32

that the absence of testimony from Irico attendees at the competitor meetings "is highly detrimental to resolution of this litigation on its merits." Su Order at 12.

The fifth factor—the availability of less severe sanctions—also weighs heavily in favor of terminating sanctions. As this Court has explained:

> To evaluate this factor, the Court examines: "(1) whether the district court explicitly discussed the feasibility of less drastic sanctions and explained why such alternate sanctions would be appropriate; (2) whether the district court implemented alternative sanctions before ordering dismissal; and (3) whether the district court warned the party of the possibility of dismissal before ordering dismissal."

*Internmatch*, 2016 WL 491483, at *12. In *Internmatch*, a trademark infringement case, the Court declined to enter terminating sanctions in favor of an evidentiary sanction precluding any evidence of the apparently dispositive issue of prior use. *Id.* at *13–14. The sanctioned party's conduct, moreover, was apparently confined to that issue. *Id.* Plaintiffs respectfully submit that an alternative sanction—short of deeming Irico's liability established—would be insufficient here.

This case requires proof of Irico's participation in a conspiracy to fix prices over a 12-year period. Plaintiffs' proof is strong, but it is also voluminous and complex and Irico will attack every piece of it. As in *WeRide,* "any jury instruction or exclusion of evidence would be inappropriate here because the spoliation occurred on such a massive scale." 2020 WL 1967209, at *11. A jury instruction requiring a presumption "would leave [Plaintiffs] helpless to rebut any material that [Irico] would use to overcome that presumption." *Id.* To the extent Irico is able to exploit any potential gap in Plaintiffs' proof, exclude evidence, or deny or reduce its liability in any way would be a grave injustice given that Irico has destroyed or denied access to evidence that would likely rebut its arguments. Indeed, it would reward Irico for its wrongful conduct.

Other considerations also weigh heavily in favor of terminating sanctions. Unlike in *Internmatch,* Irico has repeatedly and intentionally defied Court Orders, including the Order to preserve evidence. *WeRide*, 2020 WL 1967209, at *11. Terminating sanctions would fulfill the important policy of deterring similar conduct. *See, e.g., Internmatch*, 2016 WL 491483, at *4. Additionally, alternative sanctions cannot rectify the years of delay caused by Irico's wrongful conduct—it has been over 12 years since Irico "disappeared" from this litigation. Irico had also been warned that its conduct could lead to severe sanctions. Among other things, Pillsbury notified Irico in 2008 that "*[i]f some potentially relevant information is lost or destroyed, this could have very serious consequences for Irico.*" Capurro Decl., Ex __ (IRI-SUPP-000012E).

Finally, a default judgment is appropriate because it would directly remedy the fact that Irico obtained the lifting of the defaults herein under false pretenses. In *Google LLC v. Starovikov*, No. 21cv10260-DLC, 2022 WL 16948296, at *6 (S.D.N.Y. Nov. 15, 2022),

The Honorable Vaughn R. Walker
3/20/2023
Page 33

after lifting a default, the Court imposed a default judgment sanction where defendants acted with an intent to deprive plaintiff of discoverable information and abused the court system and discovery rules. Like Irico, defendants used the default to facilitate the loss of evidence and misrepresented key facts in connection with their application to lift the default. *Id.* at *6, *10. The court concluded the default judgment sanction was "particularly appropriate" given that the original default was lifted based on false representations. *Id*. at *12.

## V.    If the Court Does Not Grant Terminating Sanctions, It Should Impose Severe Alternative Sanctions on Irico

If the Court decides not to impose terminating sanctions, it should grant alternative relief that attempts to fully remedy the prejudice Irico's misconduct has caused and is commensurate with the seriousness of Irico's misconduct. Several separate and distinct alternative sanctions are both necessary and appropriate.

*First*, the Court should:

(1) Deem Irico's participation in the alleged conspiracy, and the other activities of the alleged conspiracy as set forth in the other defendants' meeting notes as established as against Irico, as the Special Master suggested as a sanction at the hearing held on May 13, 2021;

(2) Order that all documents produced by the Irico Defendants are deemed authentic under FRE 901, and are admissible as business records pursuant to FRE 803(6); and

(3) Order that all meeting notes produced by other defendants are deemed authentic and admissible. The meeting notes and other documents that the Court should deem admissible, should include, but not be limited to, (a) those that the Special Master, in his Report & Recommendation Re: Admissibility of Coconspirator Documents and Statements, ECF No. 6074, adopted by the Court by Order entered October 14, 2022 (ECF No. 6093) (the "Admissibility R&R"), recommended should be admitted for purposes of summary judgment, as well as (b) those considered by the Special Master in his Admissibility R&R but not yet admitted pending the submission of additional information specified by the Special Master, where Plaintiffs later proffer the additional information requested and the Special Master concludes that it is sufficient to demonstrate their admissibility.

Because Irico spoliated nearly all of its documents and ESI, there are very few Irico-produced documents on which Plaintiffs could rely to establish Irico's participation in the conspiracy, the authenticity of the few documents Irico produced, and the admissibility of meeting notes and documents produced by other Defendants. Moreover, Irico's wrongful failure to produce Messrs. Su and Guo, and other witnesses with contemporaneous knowledge, has left Plaintiffs unable to elicit testimony from Irico witnesses regarding

The Honorable Vaughn R. Walker
3/20/2023
Page 34

these matters. An order granting these sanctions would therefore help to cure the prejudice Plaintiffs have suffered due to Irico's misconduct.

*Second*, the Court should instruct the jury that it must infer that, had the documentary and electronic evidence been preserved and introduced at trial, and the witnesses had testified, it would have been unfavorable to Irico, and the Court should make a similar finding insofar as it acts as the factfinder.

Courts have imposed a strong adverse inference jury instruction where a party has engaged in intentional spoliation. This Court granted such relief in *Internmatch,* where, as here, defendants, ignoring their counsel's instructions, took no steps to preserve relevant information, and did not instruct their employees to do so.[127] Similarly, in *Torgersen*, where the plaintiff deleted his Facebook page, which might have shown him engaging in physical activities he claimed were no longer possible due to his alleged injuries, the court held it would instruct the jury that plaintiff had spoliated the evidence despite having been requested to produce it and having been instructed by counsel to preserve it, and that the evidence must be presumed to have been adverse to him had it been retained and produced. *Id.* at *6.[128]

The harshness of the instruction should be determined based on the nature of the spoliating party's conduct—the more egregious the conduct, the harsher the instruction. "In its most harsh form, when a spoliating party has acted willfully or in bad faith, a jury can be instructed that certain facts are deemed admitted and must be accepted as true. At the next level, when a spoliating party has acted willfully or recklessly, a court may impose a mandatory presumption."[129]

Because Irico's conduct here has been egregious, a strong adverse inference and a jury instruction that imposes a mandatory presumption is appropriate. Such a remedy would deter future spoliation, and it would place the risk of an erroneous judgment caused by the absence of the spoliated evidence on the parties that caused it to be destroyed or lost. Most importantly, an adverse inference and instruction would protect Plaintiffs from the

---

[127] *Internmatch*, 2016 WL 491483, at *4.

[128] *See also BenShot, LLC* v. *2 Monkey Trading LLC*, 2022 U.S. Dist. LEXIS 77422, *2 (E.D. Wisc. Apr. 28, 2022) (adverse inference instruction imposed where a party intentionally failed to preserve the emails of an important employee); *Fast*, 340 F.R.D. at 337 (adverse inference instruction given where plaintiff failed to preserve Facebook posts, emails, and text messages with intent to deprive defendants of their use in the litigation); *see also Sec. & Exch. Comm'n v. Hong*, No. CV2004080MCSRAOX, 2021 WL 4803497, at *7 (C.D. Cal. Sept. 17, 2021)*, report and recommendation adopted,* No. 220CV04080MCSRAO, 2021 WL 4923310 (C.D. Cal. Oct. 21, 2021) (where defendants failed to appear for deposition, the court held, *inter alia*, it would instruct the jury that had they testified, their testimony would have been harmful to them).

[129] *Pension Comm.*, 685 F. Supp. 2d at 470.

The Honorable Vaughn R. Walker
3/20/2023
Page 35

prejudice caused by the unavoidable fact that their proof at trial will be almost completely devoid of any Irico witnesses, or any Irico-*produced* documents or Irico-*authored* documents (except for the handful of such documents produced by other defendants) that address Irico's participation in conspiratorial meetings and agreements. Because that evidence is missing, Plaintiffs will be severely handicapped in proving their case. It is not possible to reconstruct what the missing evidence might have said, thus there is no satisfactory way to compensate for its absence.[130] Moreover, without a strong adverse inference instruction, the jury might wonder why so few Irico documents demonstrating its attendance at meetings and participation in the conspiracy are offered in evidence. An adverse inference instruction would explain to the jury members why so little Irico evidence has been shown to them.

*Finally*, the Court should strike Irico's affirmative defenses, but especially those as to which it identified Su Xiaohua as knowledgeable. In addition to preventing Plaintiffs from questioning Mr. Su regarding these defenses, Irico has spoliated documentary evidence relating to them, denying Plaintiffs the opportunity to fully discover the facts relating to them. To allow Irico to assert these defenses when it has destroyed the evidence Plaintiffs would need to rebut them would be fundamentally unfair. Courts have ordered similar issue sanctions in comparable situations. For example, in *Bernstein v. Virgin America, Inc.*, this Court held that merely excluding the withheld documents but allowing defendant Virgin America, Inc. to litigate its affirmative defense of waiver "would be an insufficient sanction, because Plaintiffs were not permitted to fully discover[] the facts of that defense during the discovery period."[131] Accordingly, the Court struck Virgin America's waiver defense. Similarly, in *Glaukos v. Invantis,* where, as here, Defendant failed to turn off the autodeletion of emails, the court granted not only an adverse inference instruction but also an issue sanction.[132] This Court should grant an issue sanction here and strike Irico's affirmative defenses.

---

[130] *See, e.g., id.* at 479–480 (holding that a rebuttable presumption arose that responsive, relevant documents were lost or destroyed, and that prejudice resulted, where parties failed to institute a timely written litigation hold, failed to adequately collect or preserve ESI, did not request documents from key players, delegated search efforts without any supervision from management, destroyed backup data and submitted misleading or inaccurate declarations).

[131] 2018 WL 6199679, at *5 (footnote omitted).

[132] 2020 WL 10501850, at *4; *see also Est. of Boyles v. Gree USA, Inc.,* No. 1:20-CV-276, 2021 WL 3570413, at *3 (M.D.N.C. Aug. 12, 2021) (where defendants violated order to produce witnesses for remote depositions in Hong Kong, the court precluded them from calling any corporate fact witnesses, struck their affirmative defenses, and prohibited them from introducing any evidence at trial beyond the cross-examination of plaintiffs' witnesses).

The Honorable Vaughn R. Walker
3/20/2023
Page 36

## CONCLUSION

In sum, Irico's spoliation of all ESI and almost every document relevant to the key issues in this case, its failure to produce Su Xiaohua in violation of Court Orders, its failure to make key discovery available in violation of numerous Court orders, its blatant attempts to conceal its misconduct, and its egregious delays of the case, have subjected Plaintiffs to severe prejudice. This is the rare case in which terminating sanctions are warranted. Alternatively, a strong adverse inference instruction and issue sanctions precluding Irico from asserting its affirmative defenses and the other relief requested herein would level the playing field for trial and impose appropriate punishment on Irico for its deliberate derelictions of duty.

Very truly yours,

/s/ Lauren C. Capurro

Lauren C. Capurro
Lead Counsel for Indirect Purchaser Plaintiffs

/s/ R. Alexander Saveri

R. Alexander Saveri
Lead Counsel for Direct Purchaser Plaintiffs

Cc:    Jay Weil (jay.weil@fedarb.com)
       John M. Taladay (john.taladay@bakerbotts.com)
       Evan J. Werbel (evan.werbel@bakerbotts.com)
       Thomas E. Carter (tom.carter@bakerbotts.com)
       Andrew L. Lucarelli (drew.lucarelli@bakerbotts.com)
       Kaylee Yang (kaylee.yang@nortonrosefulbright.com)