# EXHIBIT A

MARIO N. ALIOTO, ESQ. (56433)
LAUREN C. CAPURRO, ESQ. (241151)
TRUMP, ALIOTO, TRUMP & PRESCOTT, LLP
2001 Union Street, Suite 482
San Francisco, CA 94123
Telephone: (415) 563-7200
Facsimile:  (415) 346-0679
E-mail:     malioto@tatp.com
            laurenrussell@tatp.com

*Lead Counsel for the Indirect-Purchaser Plaintiffs*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# OAKLAND DIVISION

| | |
|---|---|
| IN RE CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | MDL NO. 1917 |
| | Case No. 07-cv-5944-JST |
| This Document Relates to: | **INDIRECT PURCHASER PLAINTIFFS' [PROPOSED] SURREPLY IN OPPOSITION TO IRICO GROUP CORP. AND IRICO DISPLAY DEVICES CO., LTD.'S MOTION FOR SUMMARY JUDGMENT** |
| ALL INDIRECT PURCHASER ACTIONS | |
| | Hearing Date: December 14, 2023 |
| | Time: 2:00 p.m. |
| | Courtroom: 6, 2nd Floor |
| | The Honorable Jon S. Tigar |

**TABLE OF CONTENTS**

I.  INTRODUCTION ...........................................................................................................1

II. ARGUMENT .................................................................................................................1

    A.  The Relevant Question At Summary Judgment Is Whether The Evidence Could Be Presented In An Admissible Form At Trial ...............................................1

    B.  The Exhibits To Which Irico Objects Are Authentic And Admissible Or Could Be Presented In Admissible Form At Trial ...................................................3

        1.  Exhibits 4, 5, 8 and 10 ..................................................................................5

        2.  Exhibit 9 .......................................................................................................8

        3.  Exhibits 14, 16 and 17 ..................................................................................8

        4.  Exhibit 20 ...................................................................................................10

        5.  Exhibit 25 ...................................................................................................11

    C.  Irico Should Not Be Permitted to Benefit From Any Evidentiary Issues That It Created By Its Default and Spoliation of Evidence ......................................12

III. CONCLUSION .............................................................................................................14

# TABLE OF AUTHORITIES

**Federal Cases**                                                                                                                   **Page(s)**

*Anand v. BP W. Coast Prods. L.L.C.,*
   484 F. Supp. 2d 1086 (C.D. Cal. 2007) ……………………………………………….……4

*Burch v. Regents of the Univ. of Cal.*,
   433 F. Supp. 2d 1110 (E.D. Cal. 2006) ................................................................................. 3, 4

*City of Lincoln v. Cty. of Placer*,
   No. 2:18-cv-00087-KJM-AC, 2023 U.S. Dist. LEXIS 59206 (E.D. Cal. Apr. 3, 2023) .......... 3

*Del Campo v. Am. Corrective Counseling Serv.*,
   718 F. Supp. 2d 1116 (N.D. Cal. 2010) ..................................................................................... 4

*Dzung Chu v. Oracle Corp. (In re Oracle Corp. Sec. Litig.)*,
   627 F.3d 376 (9th Cir. 2010) ................................................................................................. 3, 5

*Hodges v. Hertz Corp.*,
   351 F. Supp. 3d 1227 (N.D. Cal. 2018) ..................................................................................... 2

*Harlow v. Chaffey Cmty. Coll. Dist.*,
   No. 21-55349, 2022 U.S. App. LEXIS 25357 (9th Cir. Sept. 6, 2022)…………………………..2

*Lew v. Kona Hosp.*,
   754 F.2d 1420 (9th Cir. 1985) ……………………………………………………………………3

*Maurer v. Indep. Town*,
   870 F.3d 380 (5th Cir. 2017) …………………………………………………………………….2

*O'Connor v. Uber Techs.*,
   82 F. Supp. 3d 1133 (N.D. Cal. 2015) ..................................................................................... 10

*Scharf v. U.S. Att'y Gen.*,
   597 F.2d 1240 (9th Cir. 1979) .................................................................................................. 3

*SMS Audio, LLC v. Belson, No.*
   16-81308-CIV, 2017 U.S. Dist. LEXIS 118942 (S.D. Fla. Mar. 17, 2017) ............................... 9

*Stowers v. Macias*,
   No. EDCV 18-1530 ODW (PVC), 2020 U.S. Dist. LEXIS 86166 (C.D. Cal. Apr. 16, 2020)
   ............................................................................................................................................ 12, 13

*United States v. Carolina Liquid Chemistries, Corp.*,
   No. 13-cv-01497-JST, 2022 U.S. Dist. LEXIS 242770 (N.D. Cal. Dec. 20, 2022) ................. 2

*United States v. Tank*,
   200 F.3d 627 (9th Cir. 2000) ..................................................................................................... 4

*Welenco, Inc. v. Corbell*,
   126 F. Supp. 3d 1154 (E.D. Cal. 2015) ..................................................................... 12, 4, 5, 9


**Rules**

Fed. R. Civ. P. 37 ......................................................................................................................... 14

Fed. R. Civ. P. 56 ........................................................................................................................... 2

Fed. R. Evid. 801 ......................................................................................................................... 10

Fed. R. Evid. 803 ....................................................................................................................... 5, 8

Fed. R. Evid. 901 ....................................................................................................................... 4, 8

**Other**

1 Moore's AnswerGuide: Federal Civil Motion Practice § 9.08 ................................................... 2

## I. INTRODUCTION

In their Reply in support of their Motion for Summary Judgment, Defendants Irico Group Corporation and Irico Display Devices Co., Ltd. (collectively, "Irico") objected to certain exhibits cited by IPPs in their Opposition to the summary judgment motion, arguing that the Court should not consider them on the grounds that the exhibits are inadmissible because they have not been authenticated and/or they contain hearsay. *See* ECF No. 6231 at 5-7. The Court should reject Irico's evidentiary objections for two reasons.

*First*, at the summary judgment stage, courts do not focus on the admissibility of the evidence's form, but rather on the admissibility of its content. As demonstrated herein, the cited exhibits are authentic and admissible, or they can be presented in a form that would be admissible at trial.

*Second*, Irico should not be permitted to benefit from any evidentiary issues that it created by its default and spoliation of evidence. Due to Irico's default and disappearance from the litigation for over seven years, IPPs were denied the opportunity to develop and authenticate the evidence against Irico while its co-conspirators were still part of the litigation. Moreover, the prejudice to IPPs is compounded by Irico's near-total spoliation of its own documents and data relating to its sales of CRTs, which has forced IPPs to rely upon documents authored by witnesses who are no longer subject to this Court's jurisdiction, and produced by entities that are no longer parties to the litigation and some of which no longer exist. As such, IPPs have requested in the Motion for Sanctions currently pending before Judge Walker that documents produced by Irico and the other defendants be deemed authentic and admissible. IPPs respectfully request that the Court overrule Irico's evidentiary objections as a sanction for its spoliation of relevant evidence.

## II. ARGUMENT

### A. The Relevant Question At Summary Judgment Is Whether The Evidence Could Be Presented In An Admissible Form At Trial

Irico relies upon outdated and unpublished authorities to argue that the Court should not consider much of IPPs' evidence in opposition to summary judgment. It incorrectly asserts that

1

"only admissible evidence may be properly considered by the trial court in ruling on a motion for summary judgment." Irico Reply at 6. Irico mis-states the appropriate legal standard. "At the summary judgment stage, the focus is not on 'the admissibility of the evidence's form,' but rather 'the admissibility of its contents.'" *United States v. Carolina Liquid Chemistries, Corp.*, No. 13-cv-01497-JST, 2022 U.S. Dist. LEXIS 242770, at *9 n.1 (N.D. Cal. Dec. 20, 2022) (quoting *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003)). In addition, following the 2010 amendments to Fed. R. Civ. P. 56, courts have held that evidence submitted in support of or in opposition to summary judgment need not be authenticated. *See Harlow v. Chaffey Cmty. Coll. Dist.,* No. 21-55349, 2022 U.S. App. LEXIS 25357, at *2-3 (9th Cir. Sept. 6, 2022) ("But in 2010, Federal Rule of Civil Procedure 56 changed. Courts must now consider unauthenticated evidence at summary judgment if the evidence can 'be presented in a form that would be admissible' at trial.") (emphasis added); 1 *Moore's AnswerGuide: Federal Civil Motion Practice* § 9.08, citing *Maurer v. Indep. Town*, 870 F.3d 380, 384 (5th Cir. 2017) ("At the summary judgment stage, evidence need not be authenticated or otherwise presented in an admissible form."). "Accordingly, district courts in this circuit have routinely overruled authentication and hearsay challenges at the summary stage where the evidence could be presented in an admissible form at trial, following *Fraser.*" *Hodges v. Hertz Corp.*, 351 F. Supp. 3d 1227, 1232 (N.D. Cal. 2018).

Moreover, "[m]any courts have now held that authentication is required *only if* a question is raised about whether the document can be authenticated at trial. This is the correct result based on the 2010 amendment, and it appears that the old approach has been superseded. This shift in practice streamlines the summary-judgment process both for the submitting party and for the court, eliminating what was mostly a formalistic requirement easily satisfied in practice and substituting a common-sense mechanism for the court to address authentication issues when there is a need to do so." 1 Moore's Answer Guide: Federal Civil Motion Practice, § 9.08 (emphasis added) (citing *Maurer*, 870 F.3d at 384 ("This flexibility allows the court to consider the evidence that would likely be admitted at trial—as summary judgment is trying to determine if the evidence admitted at trial would allow a jury to find in favor of the nonmovant—without imposing on parties the time

and expense it takes to authenticate everything in the record.")). If the opposing party objects, the proponent of the evidence should direct the court to "authenticating documents, deposition testimony, deposition testimony bearing on attribution, hearsay exceptions and exemptions, or other evidentiary principles under which the evidence in question could be deemed admissible." *Dzung Chu v. Oracle Corp.* (*In re Oracle Corp. Sec. Litig.*), 627 F.3d 376, 385-86 (9th Cir. 2010).

Finally, "if [the] evidence falls short of the 'formalities of Rule 56,' a district court may nonetheless exercise its discretion 'to be somewhat lenient.'" *City of Lincoln v. Cty. of Placer*, No. 2:18-cv-00087-KJM-AC, 2023 U.S. Dist. LEXIS 59206, at *3 (E.D. Cal. Apr. 3, 2023) (quoting *Sch. Dist. No. 1J v. ACandS, Inc.*, 5 F.3d 1255, 1261 (9th Cir. 1993)). This is particularly true for the non-movant at summary judgment. *See Burch v. Regents of the Univ. of Cal.*, 433 F. Supp. 2d 1110, 1120-21 (E.D. Cal. 2006) ("a non-movant in a summary judgment setting is not attempting to prove its case, but instead seeks only to demonstrate that a question of fact remains for trial. Recognizing the significance of this difference, the Ninth Circuit long ago adopted 'a general principle' whereby it 'treat[s] the opposing party's papers more indulgently than the moving party's papers.'") (quoting *Lew v. Kona Hosp.*, 754 F.2d 1420, 1423 (9th Cir. 1985)). *See also Scharf v. U.S. Att'y Gen.*, 597 F.2d 1240, 1243 (9th Cir. 1979) ("courts generally are much more lenient with the affidavits of a party opposing a summary judgment motion.").

Here, IPPs are the non-movant on this motion for summary judgment. Thus, the Court should treat IPPs' "papers more indulgently" than it does Irico's. *Lew,* 754 F.2d at 1423. As demonstrated below, however, all of the challenged exhibits are authentic and admissible or could be presented in admissible form at trial.

### B. The Exhibits To Which Irico Objects Are Authentic And Admissible Or Could Be Presented In Admissible Form At Trial

Irico objects to Exhibit Nos. 2, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 16, 17, 20, 24 and 25 of the Declaration of Mario N. Alioto filed in support of IPPs' Opposition to Irico's summary judgment motion, ECF No. 6307 ("Alioto Decl.") on the grounds that they have not been authenticated and are inadmissible hearsay. *See* Irico Reply, ECF No. 6321 at 6.

Under Fed. R. Evid. 901(a), "[t]he foundational 'requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." *United States v. Tank*, 200 F.3d 627, 630 (9th Cir. 2000) (citation omitted). The proponent of the evidence need only make a "prima facie showing of authenticity, as 'the rule requires only that the court admit evidence if sufficient proof has been introduced so that a reasonable juror could find in favor of authenticity or identification.'" *Id.* (citation omitted).

All of the exhibits to which Irico objects, except Exhibit 25 (addressed below), were produced in this litigation by various parties (mostly defendants) in response to discovery requests. *See* Alioto Decl. ¶¶ 3, 5, 6, 7, 8, 9, 10, 12, 13, 14, 15, 17, 18, 21, and 25. "Documents produced in response to discovery requests are admissible on a motion for summary judgment since they are self-authenticating and constitute the admissions of a party opponent." *Welenco, Inc. v. Corbell*, 126 F. Supp. 3d 1154, 1163 (E.D. Cal. 2015) (quoting *Anand v. BP W. Coast Prods. L.L.C.*, 484 F. Supp. 2d 1086, 1092 (C.D. Cal. 2007)).

Moreover, other than the Insignia television manual (Exhibit 14, addressed below), Irico provides no reason to doubt the authenticity of the exhibits. *See Del Campo v. Am. Corrective Counseling Serv.*, 718 F. Supp. 2d 1116, 1123 n.10 (N.D. Cal. 2010) ("Since Defendants do not specify any reason to doubt the authenticity of documents that they themselves produced in discovery, the Court finds the documents properly authenticated under Fed. R. Evid. 901."); *Burch*, 433 F. Supp. 2d at 1118-24 ("Again, Rule 56(e) requires only that evidence 'would be admissible', not that it presently be admissible. Such an exception to the authentication requirement is particularly warranted in cases such as this where the objecting party does not contest the authenticity of the evidence submitted but nevertheless makes an evidentiary objection based on purely procedural grounds.").

Indeed, Irico has stipulated—and the Court has ordered—that two of the documents to which it objects (Alioto Declaration Exhibits 9 and 20), and many other documents produced by Chunghwa, MT Picture Display Co., Ltd. ("MTPD") and several other defendants are authentic

and qualify as business records under Fed. R. Evid. 803(6), such that they are admissible for the truth of the matters stated therein. *See* ECF Nos. 6190, 6268. Irico fails to explain why a different, more stringent standard should be applied to the other documents produced by these same defendants.

In addition, as part of IPPs' settlement agreements with former defendants Chunghwa, Panasonic Corp./MT Picture Display Co., Ltd. and Philips, those entities have agreed to cooperate with IPPs in the prosecution of the case against Irico and to authenticate documents and lay the foundation for their admissibility at trial.[1] Philips cooperated with IPPs on this surreply by providing an Authenticity Declaration regarding documents it produced, as described below. Thus, IPPs will likely be able to present the evidence from other defendants' documents in a form that would be admissible at trial.

"Even absent authentication, authentication may be inferred . . . from the contents of the documents." *Welenco, Inc.*, 126 F. Supp. 3d at 1163-64 ("authenticity may be satisfied by the '[a]ppearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances'") (citing Fed. R. Evid. 901(b)(4)). Here, the appearance and content of the challenged exhibits indicate that they are what IPPs claim they are, was well as the fact that they were produced in discovery by party-opponents.

In addition, IPPs present the following "authenticating documents, deposition testimony, deposition testimony bearing on attribution, hearsay exceptions and exemptions, or other evidentiary principles under which the evidence in question could be deemed admissible." *In re Oracle Corp. Sec. Litig.*, 627 F.3d at 385-86.

   1. **Exhibits 4, 5, 8 and 10**

Exhibits 4, 5 and 10 are emails produced by Philips in this litigation in response to IPPs' discovery requests. The emails in Exhibits 4, 5 and 10 show that Chinese television manufacturer

---

[1] *See* Declaration of Lauren C. Capurro In Support of IPPs' Surreply ("Capurro Decl."), Exhibits 1 - 3 (copies of settlement agreements). IPPs have similar agreements with the other settling defendants. Capurro Decl. ¶ 5.

1  TCL manufactured CRT televisions as an OEM for Philips, and that Philips approved Irico CRTs
2  for use in televisions to be sold in the "NAFTA" region. Exhibit 5 shows that Philips also approved
3  Irico as one of the CPT suppliers for a specific 14″ CRT Philips Magnavox television model,
4  "14MS2331/17 RF," for sale in the United States. Sales data produced by Philips, Best Buy and
5  Circuit City, to which Irico raises no objection, confirm that this Philips Magnavox television
6  model was sold throughout the United States. *See* Declaration of Janet S. Netz, Ph.D, in Support
7  of Indirect Purchaser Plaintiffs' Opposition to Irico Group Corp. and Irico Display Devices Co.,
8  Ltd.'s Motion for Summary Judgment, ECF No. 6306-1 ("Netz Summ. J. Decl."), ¶¶ 3-5, 7-8.

9  One of the authors and recipients of the emails in Exhibits 4, 5 and 10 is Jan De Lombaerde,
10 who was the "General Manager SBMT CRT Displays" for Philips in July 2005.[2] Mr. De
11 Lombaerde was deposed in 2014 but was not questioned about Exhibits 4, 5 and 10 because Irico
12 had defaulted and IPPs were not actively litigating against Irico at that time. Mr. De Lombaerde
13 did, however, confirm that from January 2001 until October 2007, he was the "supply-base
14 manager of displays," with responsibility for purchasing CRTs for Philips televisions.[3]

15 Submitted herewith is a Declaration from Mr. De Lombaerde dated October 31, 2023 ("De
16 Lombaerde Decl."), in which he declares under penalty of perjury that he is a former employee of
17 Philips Consumer Electronics ("Philips"), and that he worked for Philips from 1973 until his
18 retirement in 2009. De Lombaerde Decl., ¶ 1. Mr. De Lombaerde was the General Manager of
19 Supply Based Management CRT Displays for Philips. In that role, he was the global head of CRT
20 purchasing for Philips' television business. *Id.* Mr. De Lombaerde is the author or recipient of the
21 emails reflected in Exhibits 4, 5 and 10. *Id.* ¶ 3. Mr. De Lombaerde attests that the emails appear
22 to be true and correct copies of emails he sent or received in the regular course of business, at or
23 near the time of the occurrence of the matters set forth in the emails, and that he kept and
24 maintained the emails in his file as a regular practice as part of his job at Philips. *Id.* In addition,

---

[2] Alioto Decl., Ex. 4 at PHLP-CRT-154897.

[3] *See* Capurro Decl., Exhibit 4 (Jan De Lombaerde Dep. Tr. at 36:24 – 41:08).

Mr. De Lombaerde attests, *inter alia*, that (a) from approximately 2003 to 2007, Philips had an OEM agreement with Chinese television manufacturer, TCL; (b) Irico was one of the CRT manufacturers which supplied CRTs for the Philips Magnavox-brand televisions manufactured by TCL; (c) Philips employees communicated directly with Irico and informed Irico which television models its CRTs were incorporated into by TCL and the country to which the televisions would be sold; (d) Irico supplied CRTs for Philips Magnavox televisions manufactured for the United States market; and (e) TCL sold those televisions containing Irico's CRTs to Philips and Philips sold the televisions to retailers and other customers throughout the United States. *Id.* ¶¶ 4-10.

Also submitted herewith is the Authenticity Declaration of Spencer Ramsay dated October 17, 2023 ("Ramsay Decl."). Mr. Ramsay is a current employee of Philips North America, LLC. *See* Authenticity Declaration of Spencer Ramsay, ¶ 1. He attests that Exhibits 4, 5, 8, and 10 are true and correct duplicate copies of original records maintained by Philips in Philips' files, were maintained by Philips in the regular course of business and were produced in this litigation by Philips in response to discovery requests propounded by Plaintiffs. *Id.* ¶¶ 2-5.

In addition, another Philips witness, Jim Smith, was questioned at his deposition about Exhibit 8 (marked as Deposition Exhibit 2262) and the emails to which it was attached, which bear the Bates number PHLP-CRT-010945-47 and are marked as Deposition Exhibit 2263.[4] While Mr. Smith testified that he did not remember Exhibit 8, he confirmed that he was copied on the email in Dep. Ex. 2263, that the email "appears to come from business information[,]" which was a section within LPD, and that he knew Mr. Johnson—the author of the email forwarding the PowerPoint to him—well.[5]

---

[4] A copy of Dep. Ex. 2263 is attached to the Ramsay Declaration. Ramsay Decl. ¶2, Attachment A. Mr. Ramsay attests that Dep. Ex. 2263 is a true and correct duplicate copy of the original record maintained by Philips in Philips' files, was maintained by Philips in the regular course of business, and was produced in this litigation by Philips in response to discovery requests propounded by Plaintiffs. *Id.* ¶¶ 2-5.

[5] *See* Capurro Decl., Exhibit 5 (Jim Smith Dep. Tr. at 303:2 – 307:20).

The De Lombaerde and Ramsay Declarations together with the deposition testimony of Messrs. De Lombaerde and Smith demonstrate that Exhibits 4, 5, 8 and 10 are authentic under Fed. R. Evid. 901, and admissible for the truth of the matters contained therein under the business records exception to the hearsay rule. *See id.* Rule 803(6).

### 2. **Exhibit 9**

Exhibit 9 to the Alioto Declaration is a document produced by defendant Chunghwa Picture Tubes, Ltd. in this litigation. *See* Alioto Decl. ¶ 10, Ex. 9. It is Bates-stamped CHU00029191-94E and is marked as Deposition Exhibit 1108.[6] As noted, Irico has stipulated to the authenticity of this document and that it is a business record. *See* ECF No. 6190, Appendix at 3.

In addition, Chunghwa's C.C. Liu testified that he attended the meeting reflected in Exhibit 9 on behalf of Chunghwa, that he signed and dated the meeting report as accurately reflecting the content of the meeting in accordance with Chunghwa's internal business procedures, that the report was made and submitted to him in the ordinary course of business at Chunghwa, and that it was kept and maintained in Chunghwa's files in the ordinary course of business.[7] Mr. Liu thus authenticated this document as a business record and it is admissible for the truth of the matters contained therein under the business records exception to the hearsay rule, Fed. R. Evid. 803(6).

### 3. **Exhibits 14, 16 and 17**

Exhibit 14 is an Insignia Color Television Service Manual for television model IS-TV040919 and Exhibits 16 and 17 are Haier Color Television Service Manuals (*see* Alioto Decl. ¶¶ 15, 17 and 18), each of which show that Irico was one of the suppliers for the CRT contained in that television model. Irico challenges the authenticity of these documents on the grounds that (1) "Insignia" does not appear anywhere in Exhibit 14, (2) IPPs make no showing of the source or authenticity of the document and fail to lay any foundation for admissibility, and (3) the IPP class

---

[6] IPPs inadvertently attached a version of this document that is not marked with the Deposition Exhibit number. Deposition Exhibit 1108 is filed herewith as Exhibit 6 to the Capurro Declaration.

[7] *See* Capurro Decl., Exhibit 7 (C.C. Liu Dep. Tr. at 109:22 – 110:23).

representatives could not have been a source for this manual because no class representative claims to have purchased an Insignia or Haier television. *See* Irico Reply at 6.

The Insignia Color Television Service Manual in Exhibit 14 was downloaded from https://adjuntos.yoreparo.com/default/0006/55/4924c3ec920af531ed8dbc2530d2381ff034a239.pdf (last accessed on Nov. 2, 2023) in August 2022. Capurro Decl. ¶ 10. That Exhibit 14 is in fact an Insignia television manual is demonstrated by a data file produced by Best Buy in this litigation, which maps SKUs to the manufacturer product number (BBYCRT000080) and shows that the TV model IS-TV040919 is listed as having a Manufacturer Name of "INSIGNIA", and a Brand Owner Name of "Insignia." *Id*. In addition, Best Buy's sales data shows that this Insignia television model was sold by Best Buy throughout the United States, including in all 20 of the States challenged by Irico on due process grounds. Netz Summ. J. Decl. ¶ 6.

The Haier Color Television Manual published by Haier America Trading, LLC in Exhibit 16 was downloaded from https://www.manualslib.com/products/Haier-Tv-8888-36-12474362.html (last accessed on Nov. 2, 2023). Capurro Decl. ¶ 11. Likewise, the Haier Color Television Manual published by Haier America Trading, LLC in Exhibit 17 was downloaded from https://www.manualslib.com/manual/1029851/Haier-Tn201auv.html (last accessed on Nov. 2, 2023). Capurro Decl. ¶ 12.

"Multiple courts have permitted authentication of a web posting's source and accuracy by testimony of the witness who printed it, combined with circumstantial indicia of authenticity, such as the posting's web address." *SMS Audio, LLC v. Belson*, No. 16-81308-CIV, 2017 U.S. Dist. LEXIS 118942, at *11 (S.D. Fla. Mar. 17, 2017) (citing cases). In addition, "authenticity may be satisfied by the '[a]ppearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances.'" *Welenco, Inc.*, 126 F. Supp. 3d at 1163-64 (citing Fed. R. Evid. 901(b)(4)). Here, based on the appearance, contents, substance, and characteristics of Exhibits 14, 16 and 17, taken in conjunction with the fact that they were downloaded from online manual libraries, these documents appear to be CRT television service manuals. They are lengthy documents containing detailed technical specifications and components

1  of the televisions including, *inter alia*, the receiver, the power supply, the chassis, and—of course—the cathode ray tube contained in the television. Irico points to nothing in the manuals themselves to suggest they are not authentic documents.

Finally, these manuals can also be authenticated for use at trial by witnesses with personal knowledge of Insignia and Haier television manuals. In addition, the content of the manuals and the fact that these televisions contained Irico CRTs can be presented at trial by a witness with personal knowledge. *See O'Connor v. Uber Techs.*, 82 F. Supp. 3d 1133, 1137 n.6 (N.D. Cal. 2015) ("But the relevant legal question on summary judgment is whether the challenged evidence "could be presented in an admissible form at trial." …. If so, the Court may consider such evidence on summary judgment. Id. It is only where the evidence could never be presented in admissible form that such evidence should be excised from the summary judgment record. See Fed. R. Civ. P. 56(c)(2).") (emphasis in original).

### 4. Exhibit 20

Exhibit 20 is another document produced by defendant Chunghwa in this litigation. It is Bates-stamped CHU00124400–02E and is marked as Deposition Exhibit 8572. *See* Alioto Decl. ¶ 21, Ex. 20. This document is a report entitled "Information Weekly" dated August 6-12, 2005, which states that, "Irico 21" PF has been recognized by American customers and can be supplied." CHU00124401. Irico admitted that this document was authored by an Irico employee in its response to IPPs' Request for Admission No. 4. *See* Alioto Decl. ¶ 19, Ex. 18 (Irico Group Corp. and Irico Display Devices Co., Ltd.'s Response to IPPs' RFA's) at 13-14. Therefore, the statements therein are admissible non-hearsay as statements of a party opponent. *See* Fed. R. Evid. FRE 801(d)(2)(A), (B), (C) and (D). Irico also stipulated and the Court ordered that Exhibit 20 is authentic and qualifies as a business record. *See* ECF No. 6268.

In addition, Irico's Wang Zhaojie admitted that Irico's Sales Company's weekly reports were entitled "Information Weekly." Alioto Decl. ¶ 23, Ex. 22 (Wang Zhaojie Dep. Tr. at 207:15-209:22). Mr. Wang also testified that he instructed his sales representatives to compile the Information Weekly reports every week, that they did in fact produce them every week, and that

they were produced in the regular course of business at Irico. *Id.* Further, Mr. Wang admitted that Alioto Declaration Exhibit 19—which is marked as Deposition Exhibit 8571 and is another "Information Weekly" report that is titled and formatted identically to Exhibit 20—"looks like one of those [Information Weekly] reports" that he asked his sales representatives to compile. *Id.* at 208:10 – 22. Notably, Irico does not object to the admissibility of Exhibit 19.

### 5. **Exhibit 25**

Exhibit 25 is excerpts of the Irico Group Electronics Co. Ltd. Global Offering Prospectus, dated December 8, 2004 (the "Prospectus"). This Irico-authored Prospectus was publicly available on Irico's website as of April 2019, http://www.irico.com.cn/en/wp-content/uploads/2014/04/LTN20041208000.pdf. Capurro Decl. ¶ 13. IPPs downloaded Irico's 2004 Prospectus from Irico's website in connection with Irico's motion to dismiss on FSIA grounds and filed it with the Court as Exhibit 18 to the Alioto Declaration filed in support of IPPs' opposition to Irico's motion. *Id.*; *see also* ECF No. 5440-1 ¶ 18. The Prospectus is no longer available on Irico's website. Capurro Decl. ¶ 13.

Irico should have produced the Prospectus to IPPs in discovery because it is responsive to IPPs' discovery requests seeking documents relevant to Irico's sales of CRTs, including its indirect sales to the United States during the Class Period. Irico still had a copy of the Prospectus when this litigation began because it was posted on its website until at least April 2019. Irico's failure to produce the Prospectus is yet another example of its discovery misconduct in this case.[8] The Court should order Irico to produce its copy of the Prospectus. If Irico produces the Prospectus it will be "self-authenticating and constitute the admissions of a party opponent." *Welenco, Inc.,* 126 F. Supp. 3d at 1163.

---

[8] *See, e.g.*, Order Adopting Special Master's Report & Recommendation on Plaintiffs' Motion for Discovery Sanctions, ECF No. 6264 (recounting Irico's "numerous discovery failures, most notably, Irico's spoliation of evidence by failing to implement a litigation hold in 2008 and its more recent failure to produce its now former employee Su Xiaohua for deposition.").

Notably, Irico provides no reason to doubt the authenticity of the Prospectus presented in Exhibit 25. It merely makes a procedural objection that it has not been properly authenticated. *See* Reply at 6. Since Irico authored this document and likely has its own copy, it should have been able to explain any concerns about authenticity. The fact that it has not done so indicates it has none. "Even if a party fails to authenticate a document properly or to lay a proper foundation, the opposing party is not acting in good faith in raising such an objection if the party nevertheless knows that the document is authentic." *Stowers v. Macias*, No. EDCV 18-1530 ODW (PVC), 2020 U.S. Dist. LEXIS 86166, at *4 n.4 (C.D. Cal. Apr. 16, 2020).

### C. Irico Should Not Be Permitted to Benefit From Any Evidentiary Issues That It Created By Its Default and Spoliation of Evidence

Irico argues that IPPs "had ample opportunity" to authenticate the cited exhibits at deposition. Reply at 6-7. This argument is disingenuous at best. As this Court is aware, Irico defaulted and disappeared from this litigation for over seven years, only reappearing in 2017 after all of its co-conspirators and the other plaintiffs were no longer parties. Irico then successfully delayed the commencement of merits discovery until early 2021 through its motion to dismiss on Foreign Sovereign Immunity grounds and related appeal, which it voluntarily dismissed shortly before oral argument. *See* ECF No. 5861. As a result, IPPs' ability to take discovery of these third parties and to develop and authenticate evidence of Irico's participation in the conspiracy and its sales of CRTs to the United States has been prejudiced.

For example, when IPPs deposed Mr. De Lombaerde in 2014, counsel was unaware of Exhibits 4, 5 and 10 or their significance in demonstrating that Irico knew and intended that its CRTs would be used to manufacture televisions for the U.S. market. Thus, IPPs did not question Mr. De Lombaerde about those documents or facts at his deposition. Similarly, IPPs were unable to depose Chunghwa witnesses regarding the various Chunghwa and MTPD-authored emails and other documents showing that Irico was supplying CRTs for televisions to be sold in the United States. *See, e.g.*, Alioto Decl. Exs. 11, 12, 13, 19, 20, 21, and 24.

Moreover, the prejudice to IPPs is compounded by Irico's near-total spoliation of its own documents and data relating to its sales of CRTs, and its failure to produce one of its only remaining witnesses with knowledge, Su Xiaohua.[9] Irico did not preserve or produce *any* documents or electronically stored information (ESI) showing communications or contracts with its customers, or any of its regularly generated sales and marketing reports.[10] Such evidence likely would have confirmed—consistent with the Irico "Information Weekly" reports found in Chunghwa's files, the De Lombaerde Declaration, and other defendants' business documents presented in IPPs' opposition to summary judgment—that Irico knew its customers were functioning as OEMs for U.S. customers, that it communicated with customers in the U.S., that it was involved in testing its CRTs for compatibility with specific models of CRT televisions and monitors to be sold in the U.S., and that it knew large quantities of televisions and monitors containing its CRTs were shipped to the relevant states. *Id.*

Irico's spoliation of evidence has forced IPPs to rely upon documents found online and documents authored by witnesses who are no longer subject to this Court's jurisdiction, and produced by entities that are no longer parties to the litigation, some of which no longer exist. For example, several of the documents upon which IPPs rely were produced by former defendant Chunghwa. But Chunghwa is bankrupt and is no longer represented by U.S. counsel, making it difficult for IPPs to authenticate documents it produced. Accordingly, one form of relief that IPPs have requested in the pending sanctions motion before Judge Walker is that documents produced by Irico and the other defendants be deemed authentic and admissible. *See* Alioto Decl. Ex. 1 at 3.

In sum, Irico's motion for summary judgment on due process grounds and its evidentiary objections seek to exploit gaps in the evidence and evidentiary issues that it wrongfully created through its disappearance from the litigation and spoliation of the evidence. Irico should not be

---

[9] *See, e.g.,* ECF Nos. 6115, 6146, 6264, and 6275; Alioto Decl., Ex. 1 (Plaintiffs' Motion for Sanctions).

[10] *See id.* at 11-14 (detailing Irico's wholesale spoliation of relevant evidence).

permitted to benefit in this way from its wrongful conduct and further prejudice IPPs. IPPs respectfully request that, pursuant to Fed. R. Civ. P. 37(e), Rule 37(b)(2)(A), and the Court's inherent powers, the Court overrule Irico's evidentiary objections as a sanction for its deliberate spoliation of evidence. *See* Alioto Decl. Ex. 1 at 23-26 (describing Court's authority to sanction Irico).

### III. CONCLUSION

For all of the foregoing reasons, the Court should overrule Irico's objections to IPPs' evidence in opposition to Irico's motion for summary judgment and deny Irico's motion for summary judgment.

Dated: November 3, 2023                By:  /s/ Mario N. Alioto

Mario N. Alioto (56433)
Lauren C. Capurro (241151)
TRUMP, ALIOTO, TRUMP & PRESCOTT LLP
2001 Union Street, Suite 482
San Francisco, CA 94123
Telephone: (415) 563-7200
Facsimile: (415) 346-0679
Email: malioto@tatp.com; laurenrussell@tatp.com

*Lead Counsel for Indirect Purchaser Plaintiffs*