MARIO N. ALIOTO, ESQ. (56433)
LAUREN C. CAPURRO, ESQ. (241151)
TRUMP, ALIOTO, TRUMP & PRESCOTT, LLP
2001 Union Street, Suite 482
San Francisco, CA 94123
Telephone: (415) 563-7200
Facsimile:  (415) 346-0679
E-mail:     malioto@tatp.com
            laurenrussell@tatp.com

*Lead Counsel for the Indirect Purchaser Plaintiffs*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| IN RE CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Master File No. 07-cv-5944-JST<br>Case No.: 4:17-cv-04067-JST<br><br>MDL No. 1917 |
| This Document Relates to:<br><br>*Luscher, et al. v. Mitsubishi Electric Corp.,* No. 4:17-cv-04067-JST | **INDIRECT PURCHASER PLAINTIFFS' ADMINISTRATIVE MOTION FOR APPROVAL OF PROCEDURES AND COSTS FOR PROCESSING "BOT" CLAIMS**<br><br>The Honorable Jon S. Tigar |

Pursuant to Civil Local Rule 7-11, the Indirect Purchaser Plaintiffs ("IPPs") move the Court for an Order approving the Settlement Administrator's proposal for processing large numbers of suspected bot[1]-submitted claims, and the costs associated therewith, in connection with IPPs' Settlement with defendant Mitsubishi Electric Corp. ("Mitsubishi Electric").

## I.   RELEVANT FACTUAL BACKGROUND

This Court finally approved IPPs' Settlement with Mitsubishi Electric on November 6, 2023. ECF No. 6335. To date, the Settlement Administrator has received 3,087,112 claims against the Mitsubishi Electric Settlement.[2] Under the approved Plan of Distribution, all valid claims from the Prior Settlements were automatically entered into the Mitsubishi Electric Settlement. *Id*. ¶ 4. The Settlement Administrator has completed an initial screening of these claims for validity and has identified duplicate claims and potentially invalid claims. *Id*. ¶¶ 4-7. The table below provides a summary of the claims received to date.[3]

| Table 3: Claims Statistics (as of September 11, 2023) | |
|---|---|
| **Description** | **Volume (#)** |
| **Total Claims Received** | **3,087,112** |
| (-) Duplicate Claims Identified | 41,363 |
| (-) Potentially Invalid Claims | 2,793,839 |
| **Net Claims** | **251,910** |

*Id.* ¶ 7.

The Settlement Administrator has identified 2,793,839 claims that appear to have been programmatically generated and submitted by computer-created "bots" (short for robots) and not

---

[1] *See* Merriam-Webster, Inc.: "bot" is defined as "(1) Robot; (2) a computer program that performs automatic repetitive tasks . . . [especially] one designed to perform a malicious action; (3) a computer program or character (as in a game) designed to mimic the actions of a person." https://www.merriam-webster.com/dictionary/bot (last visited February 23, 2024).

[2] Declaration of Joseph M. Fisher Re: Mitsubishi Electric Claims Processing and Recommendation for Claim Verification ("Fisher Decl.") ¶ 3.  The deadline to submit claims was June 13, 2023. The data reported herein include both timely and late claims received as of December 31, 2023. *Id.*

[3] Claims remain under review, and additional duplicate claims or invalid claims may be identified as the Settlement Administrator completes the various claim verification processes described below or as additional information becomes available. *Id*. ¶ 7.

by legitimate claimants. The Settlement Administrator has been identifying characteristics of these suspected bot-generated claims to determine if they are potentially invalid. *Id*. ¶ 8.[4]

The Settlement Administrator has implemented the following three steps to minimize the impact of bot-generated submissions:

1. A reCAPTCHA (Completely Automated Public Turing test to tell Computers and Humans Apart) ("reCAPTCHA verification") was added to the claim form and required of claimants prior to claim submission.[5]

2. IP addresses[6] that individually generated over 3,000 submissions were blocked from accessing the claim form. This resulted in five (5) IP addresses being blocked.

3. Attempts to access the Settlement website, www.CRTclaims.com, from IP addresses located outside of the United States and Canada were presented with a "challenge" as a condition to gaining access to the claim form. These are dynamically-generated challenges chosen by software based on the characteristics of the request received. Challenges may be passive (completed by JavaScript in the user browser), a simple checkbox or require a short puzzle to complete.[7] *Id*. ¶ 9.

---

[4] Guidance in recognizing Bot behavior is offered in "Social Media Bots", Cybersecurity and Infrastructure Security Agency, U.S. Department of Homeland Security. https://www.cisa.gov/sites/default/files/publications/social_media_bots_infographic_set_508.pdf (last visited February 21, 2024).

[5] "reCAPTCHA is a free service from Google that helps protect websites from spam and abuse. A 'CAPTCHA' is a turing test to tell human and bots apart. It is easy for humans to solve, but hard for 'bots' and other malicious software to figure out. By adding reCAPTCHA to a site, you can block automated software while helping your welcome users to enter with ease." https://support.google.com/recaptcha/answer/6080904 (last visited February 23, 2024).

[6] "An IP address is a unique address that identifies a device on the internet or a local network. IP stands for 'Internet Protocol,' which is the set of rules governing the format of data sent via the internet or local network." https://usa.kaspersky.com/resource-center/definitions/what-is-an-ip-address (last visited February 23, 2024).

[7] *See* Cloudflare challenge documentation at https://developers.cloudflare.com/fundamentals/get-started/concepts/cloudflare-challenges/ (last visited February 23, 2024).

To further protect the Settlement funds for valid claimants, the IPPs and the Settlement Administrator propose to initiate a claim verification process, as further described below.

## II. THE COURT SHOULD APPROVE A CLAIM VERIFICATION PROCESS TO PROTECT THE SETTLEMENT FUNDS FOR VALID CLAIMANTS

IPPs and the Settlement Administrator respectfully request that the Court approve the following claim verification process to identify and eliminate fraudulent, bot-generated claims and ensure the Settlement funds are distributed to valid claimants. This process would be applied to claims identified by the following four criteria (the "Identified Claims"):

- A claim submitted from an IP address used to submit 20 or more claims; or
- A claim submitted from an IP address used to submit 15 or more claims AND where all such claim submissions request a digital payment; or
- A claim submitted with an email domain used for 15 or more claims AND where all such claim submissions request a digital payment; or
- A claim submitted with an "Other CRT" description on the claim form that follows a repeated pattern identified across claims.

Fisher Decl. ¶ 10.

The first step in the claim verification process requires screening out those Identified Claims that were submitted from fake or "non-sendable"[8] email addresses. These would be email addresses that could not be used for further communications and where the Identified Claims sent from those email addresses would be presumptively treated as invalid. *Id*. ¶ 11.

Next, for each Identified Claim, including all duplicates related to Identified Claims and excluding those submitted from non-sendable email addresses, the Settlement Administrator will send an email explaining the reason for the verification process and specifying the options available to validate the claim. The options will include:

---

[8] Emails should not be sent where the address is a "spam trap" (for example, an email address that was artificially created by an Internet service provider to detect spammers), the address cannot be verified (for example, the domain of the email address does not exist or is not functioning) or the address is otherwise invalid. *Id*. ¶ 11.

3
INDIRECT PURCHASER PLAINTIFFS' ADMINISTRATIVE MOTION FOR APPROVAL OF
PROCEDURES AND COSTS FOR PROCESSING BOT CLAIMS
MDL NO. 1917; CASE NO. 07-CV-5944-JST

- A direct link to a form on the Settlement Website, www.crtclaims.com, requesting confirmation of the claimant's name and address, and requiring the upload of documentation to substantiate the claimant's identity, such as:
    - Proof of address where claimants provide an image of their name and address on postmarked mail where the postmark processing is visible;
    - Magazine subscriptions or renewal notices;
    - Utility or other bills;
    - Government issued cards;
    - Property tax receipts;
    - Lease agreements or mortgage statements;
    - Vehicle registrations; or
    - Voter registration cards.
- Mailing to the settlement P.O. Box a copy of the above documentation or a handwritten note attesting to identity; or
- Calling the settlement toll-free line and requesting a reply postcard be sent to their address, which they can complete and return to the P.O. Box via Business Reply Mail.

*Id.* ¶ 12.

Recipients of the validation email will be afforded 21 days to complete the above steps. The Settlement Administrator will review the responses received to the initial notice, and may, depending upon the characteristics identified by those responses and subject to the budget proposed below, issue a second email notice to some or all of the identified recipients who did not respond to the initial notice. Identified Claimants that do not take one of the actions above will have their claim denied. Those that respond will have their response reviewed and will receive a confirmation once that review process is complete. *Id.* ¶ 13.

The Settlement Administrator has completed a Request for Proposal (RFP) process to identify a third-party vendor with the capabilities of (a) verifying if an email address is potentially sendable and (b) sending out claim verification notices to sendable email addresses. *Id.* ¶ 15.

The Settlement Administrator worked with the selected vendor to conduct a detailed email-address verification analysis. This analysis identified 853,388 email addresses, or 31% of the total, as not sendable. IPPs propose that claims received from those email addresses be deemed invalid without the need to send a verification notice. All remaining email addresses will be sent claim verification notices as described above. *Id.* ¶ 16.

### III. IPPS REQUEST COURT APPROVAL OF THE PROJECTED COST TO IMPLEMENT THE CLAIM VERIFICATION PROCESS

IPPs also request that the Court approve the projected costs to implement the claims verification process. The Settlement Administrator has incurred time and expenses in developing the bot-related claim verification program described above.[9] Fees and costs for the program to date total $36,640.98, including the RFP process and the email-address verification analysis. Additional costs for the claim verification program will be based on the number and type of responses received as the program moves forward. Fisher Decl. ¶ 17.

If nearly all the email addresses prove to be bot-generated and if the verification process succeeds in creating hurdles that the bots are unable to overcome, then the remaining costs for the claim verification program will be under $40,000. However, if many of the Identified Claims prove to be associated with genuine claimants who identify themselves with appropriate responses, or if the bots are sufficiently adaptive to overcome the verification program's hurdles, then there will be significantly more work involved with the verification program, with additional costs possibly reaching $100,000. *Id.*

### IV. CONCLUSION

In sum, IPPs respectfully request that the Court approve (1) the claim verification process described herein, (2) the payment of $36,640.98 to the Settlement Administrator for fees and costs incurred to develop the claim verification process, and (3) the payment to the Settlement Administrator of up to $100,000 for fees and costs to implement the claim verification process.

---

[9] Only fees and expenses for claims verification related to bot-generated claims are addressed here. Fees and expenses for other tasks will be covered in a subsequent motion. *Id.* ¶ 17.

Respectfully submitted,

Dated: February 29, 2024

By: */s/ Mario N. Alioto*

Mario N. Alioto (56433)
Lauren C. Capurro (241151)
TRUMP, ALIOTO, TRUMP & PRESCOTT LLP
2001 Union Street, Suite 482
San Francisco, CA 94123
Telephone: (415) 563-7200
Facsimile: (415) 346-0679
Email:    malioto@tatp.com
          laurenrussell@tatp.com

*Lead Counsel for Indirect Purchaser Plaintiffs*