1

2

3

4

5

Mario N. Alioto (56433)
Lauren C. Capurro (241151)
TRUMP, ALIOTO, TRUMP & PRESCOTT LLP
2001 Union Street, Suite 482
San Francisco, CA 94123
Telephone: 415-563-7200
Facsimile: 415- 346-0679
Email: malioto@tatp.com
laurenrussell@tatp.com

6

7

*Lead Counsel for the*
*Indirect Purchaser Plaintiffs*

8

9

10

11

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

12

13

14

15

16

17

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | MASTER FILE NO. 4:07-cv-5944-JST<br>Case No.: 4:17-cv-04067-JST |
| This Document Relates to: | MDL NO. 1917 |
| *Luscher, et al. v. Mitsubishi Electric Corp.,* No. 4:17-cv-04067-JST | **DECLARATION OF JOSEPH M. FISHER RE:  MITSUBISHI ELECTRIC CLAIMS PROCESSING AND BOT CLAIM VERIFICATION**<br><br>Judge: Honorable Jon S. Tigar |

18

19

20

21

22

23

24

25

26

27

28

I, Joseph M. Fisher, declare:

**INTRODUCTION**

1.     <u>Identification</u>.  I am the president of The Notice Company, Inc., a Massachusetts corporation with offices at 94 Station Street, Hingham, MA 02043 ("The Notice Company" or "Settlement Administrator"). The Notice Company is principally engaged in the administration of class action settlements and lawsuits pending in courts around the United States, including the dissemination of notice to class members, administering the claims process, and distributing the proceeds of the litigation to the class.  I have over 19 years of experience assisting attorneys with class action notices and claims administration.  I am also a member in good standing of the bars of the Commonwealth of Massachusetts, the District of Columbia, and the Commonwealth of Virginia.  I am over 21 years of age and not a party to this action.  I have personal knowledge of the facts set forth herein and, if called as a witness, could and would testify thereto under oath.

2.     <u>Purpose of Declaration</u>. I make this declaration to report on the Settlement Administrator's processing of claims received in the proposed settlement with Mitsubishi Electric Corporation ("Mitsubishi Electric") and to present the procedures and costs associated with handling large numbers of bot[1]-submitted claims. In my prior declaration dated May 11, 2023, I reported on implementation of the Notice Program as authorized by the Court. ECF 6192 and 6195.

**SUMMARY OF THE CLAIMS PROCESS**

3.     The Settlement Administrator has received 3,087,112 claims.[2]  *See* Table 1 below.

| Table 1: Claim Submission Overview | | | |
|---|---|---|---|
| **Claim Description** | **Timely** | **Late** | **Total** |
| New Non-Represented Claim Submissions | 2,946,883 | 14 | 2,946,897 |
| Prior Non-Represented Claim Submissions | 82,780 | - | 82,780 |
| New Represented Claim Submissions | 3,336 | 4 | 3,340 |
| Prior Represented Claim Submissions | 54,095 | - | 54,095 |
| **Total Claim Submissions** | **3,087,094** | **18** | **3,087,112** |

[1] *See* Merriam-Webster, Inc.: "bot" is defined as "(1) Robot; (2) a computer program that performs automatic repetitive tasks . . . [especially] one designed to perform a malicious action; (3) a computer program or character (as in a game) designed to mimic the actions of a person." https://www.merriam-webster.com/dictionary/bot (last visited February 23, 2024).

[2] The deadline to submit claims was June 13, 2023. The data reported herein include both timely and late claims received as of December 31, 2023.

DECLARATION OF JOSEPH M. FISHER RE: MITSUBISHI ELECTRIC CLAIMS PROCESSING AND RECOMMENDATION FOR CLAIM VERIFICATION – Master File No. 4:07-cv-5944-JST

4.      As described in the Detailed Notice of Settlement and Summary Notice of Settlement (ECF 6195), all eligible End-User claimants from the Prior Settlements were automatically entered into the Mitsubishi Electric Settlement. The Settlement Administrator sent direct notice to these claimants and informed them of their previously approved quantities. If a claimant had additional units to add to their claim, they were instructed to submit a new claim with a full report of all units claimed for the New Settlement. The Settlement Administrator identified 3,114 claimants from the Prior Settlement who submitted claims in the New Settlement. Each of those claims from the Prior Settlement has been flagged as a duplicate claim and the newly-submitted claim will take precedence.

5.      The Settlement Administrator received 252 updated prior claims submitted through law firm or third-party submission companies and 3,114 updated prior claims submitted directly by claimants.

6.      The Settlement Administrator identified 37,997 exact match duplicate new claim submissions, where all identifying information available (name, address, phone and/or email) are the same.  The Settlement Administrator removed the duplicate claim, leaving the most recent submission as the remaining claim.  Table 2 below summarizes the duplicate claims identified to date.

| Table 2: Duplicate Claim Overview | |
|---|---|
| Total Claim Submissions | 3,087,112 |
| Non-Represented Prior Claimant with Duplicate New Claim Submission | 3,114 |
| Represented Prior Claimant with Duplicate New Claim Submission | 252 |
| Additional Currently Identified Duplicate Submissions (Both new claims) | 37,997 |
| Total Claim Submissions, After Removal of Currently Identified Duplicates | 3,045,749 |

7.      The Settlement Administrator has completed an initial screening of claims for validity. In reviewing the claims received, the Settlement Administrator identified duplicate claims and potentially invalid claims.  Table 3 below provides a summary of the claims received to date.

| Table 3: Claims Statistics (as of September 11, 2023) | |
|---|---|
| Description | Volume (#) |
| Total Claims Received | 3,087,112 |
| (-) Duplicate Claims Identified | 41,363 |
| (-) Potentially Invalid Claims | 2,793,839 |
| Net Claims | 251,910 |

1   Claims remain under review, and additional duplicate claims or invalid claims may be identified as

2   the Settlement Administrator completes the various claim verification processes described below or

3   as additional information becomes available.

4          8.      The Settlement Administrator has identified 2,793,839 claims that appear to have been

5   programmatically generated and submitted by computer-created "bots" (short for robots) and not by

6   legitimate claimants. The Settlement Administrator has been identifying characteristics of these

7   suspected bot-generated claims in order to determine if they represent potentially invalid submissions.[3]

8          9.      In the course of settlement administration the Settlement Administrator implemented

9   the following three steps to minimize the impact of bot-generated submissions:

10         a.      A reCAPTCHA (Completely Automated Public Turing test to tell Computers

11                 and Humans Apart) ("reCAPTCHA verification") was added to the claim form and required

12                 of claimants prior to claim submission.[4]

13         b.      IP addresses[5] that individually generated over 3,000 submissions were blocked

14                 from accessing the claim form. This resulted in five (5) IP addresses being blocked.

15         c.      Attempts to access the Settlement website, www.CRTclaims.com, from IP

16                 addresses located outside of the United States and Canada were presented with a "challenge"

17                 as a condition to gaining access to the claim form.  These are dynamically-generated challenges

18                 chosen by software based on the characteristics of the request received.  Challenges may be

19

20

21

22   [3] Guidance in recognizing Bot behavior is offered in "Social Media Bots", Cybersecurity and Infrastructure Security Agency, U.S. Department of Homeland Security. https://www.cisa.gov/sites/default/files/publications/social_media_bots_infographic_set_508.pdf (last visited February 21, 2024).

23

24   [4] "reCAPTCHA is a free service from Google that helps protect websites from spam and abuse. A 'CAPTCHA' is a turing test to tell human and bots apart. It is easy for humans to solve, but hard for 'bots' and other malicious software to figure out. By adding reCAPTCHA to a site, you can block automated software while helping your welcome users to enter with ease." https://support.google.com/recaptcha/answer/6080904 (last visited February 23, 2024).

25

26

27   [5] "An IP address is a unique address that identifies a device on the internet or a local network. IP stands for 'Internet Protocol,' which is the set of rules governing the format of data sent via the internet or local network." https://usa.kaspersky.com/resource-center/definitions/what-is-an-ip-address (last visited February 23, 2024).

28

DECLARATION OF JOSEPH M. FISHER RE: MITSUBISHI ELECTRIC CLAIMS PROCESSING AND RECOMMENDATION
FOR CLAIM VERIFICATION – Master File No. 4:07-cv-5944-JST

1    passive (completed by JavaScript in the user browser), a simple checkbox or require a short

2    puzzle to complete.[6]

3                                    **PLAN FOR CLAIM VERIFICATION**

4          10.     In order to protect the Settlement funds for valid claimants and to ensure funds are not

5    diverted to fraudulent or bot-generated claims, the Settlement Administrator proposes to initiate a

6    claim verification process. This process would be applied to claims (the "Identified Claims") identified

7    by the following four criteria:

8    - A claim submitted from an IP address used to submit 20 or more claims; or

9    - A claim submitted from an IP address used to submit 15 or more claims AND where

10        all such claim submissions request a digital payment; or

11    - A claim submitted with an email domain used for 15 or more claims AND where all

12        such claim submissions request a digital payment; or

13    - A claim submitted with an "Other CRT" description on the claim form that follows a

14        repeated pattern identified across claims.

15          11.     The first step in the claim verification process requires screening out those Identified

16    Claims that were submitted from fake or "non-sendable"[7] email addresses. These would be email

17    addresses that could not be used for further communications and where the Identified Claims sent from

18    those email addresses would be presumptively treated as invalid.

19          12.     For each of the Identified Claims, including all identified duplicates related to

20    Identified Claims and excluding those submitted from non-sendable email addresses, the Settlement

21    Administrator will send an email that includes an explanation of the reason for the verification process

22    and that specifies the options available to the claimant (an "Identified Claimant")  in order to validate

23    its claim.  The options will include:

24

---

25    [6] *See* Cloudflare challenge documentation at https://developers.cloudflare.com/fundamentals/get-started/concepts/cloudflare-challenges/ (last visited February 23, 2024).

26

27    [7] Emails should not be sent where the address is a "spam trap" (for example, an email address that was artificially created by an Internet service provider to detect spammers), the address cannot be verified (for example, the domain of the email address does not exist or is not functioning) or the address is

28    otherwise invalid.

1

- A direct link to a form on the Settlement Website, www.crtclaims.com, requesting
  confirmation of the claimant's name and address, and requiring the upload of
  documentation to substantiate the claimant's identity, such as:

  o Proof of address where claimants provide an image of their name and address
    on postmarked mail where the postmark processing is visible;

  o Magazine subscriptions or renewal notices;

  o Utility or other bills;

  o Government issued cards;

  o Property tax receipts;

  o Lease agreements or mortgage statements;

  o Vehicle registrations; or

  o Voter registration cards.

- Mailing, to the settlement P.O. Box a copy of the above documentation or a handwritten
  note attesting to identity; or

- Calling the settlement toll-free line and requesting that a reply postcard be sent to their
  address, which they can complete and return to the P.O. Box via Business Reply Mail.

13.     Recipients of the validation email will be afforded 21 days to complete the above steps. The Settlement Administrator will review the responses received to the initial notice, and may, depending upon the characteristics identified by those responses and subject to the budget proposed below, issue a second email notice to some or all of the identified recipients who did not respond to the initial notice.  Identified Claimants that do not take one of the actions above will have their claim denied.  Those that respond will have their response reviewed and will receive a confirmation once that review process is complete.

14.     The validation process will be implemented with the goal of allowing legitimate claimants to identify themselves while screening out fraudulent or bot-generated claims.

DECLARATION OF JOSEPH M. FISHER RE: MITSUBISHI ELECTRIC CLAIMS PROCESSING AND RECOMMENDATION
FOR CLAIM VERIFICATION – Master File No. 4:07-cv-5944-JST

15.     The Settlement Administrator has completed a Request for Proposal (RFP) process that identified a third-party vendor with the capabilities of (a) verifying if an email address is potentially sendable and (b) sending out claim verification notices to sendable email addresses.

16.     The Settlement Administrator worked with the selected third-party vendor to conduct a detailed email-address verification analysis. This analysis identified 853,388 email addresses, or 31% of the total, as not sendable. Claims received from those email addresses will be deemed invalid without the need to send a verification notice. All remaining email addresses will be sent claim verification notices as described above.

## SUMMARY OF ADMINISTRATION COSTS

17.     The Settlement Administrator has incurred time and expenses in developing the bot-related claim verification program described above.[8]  Fees and costs for the program to date total $36,640.98, including the RFP process and the email-address verification analysis. Additional costs for the claim verification program will be based on the number and type of responses received as the program moves forward. If nearly all of the email addresses prove to be bot-generated and if the verification process succeeds in creating hurdles that the bots are unable to overcome, then the remaining costs for the claim verification program will be under $40,000. However, if many of the Identified Claims prove to be associated with genuine claimants who identify themselves with appropriate responses, or if the bots are sufficiently adaptive to overcome the verification program's hurdles, then there will be significantly more work involved with the verification program, with additional costs possibly reaching $100,000.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed at Hingham, Massachusetts, this 28th day of February, 2024.

_____
JOSEPH M. FISHER

---

[8] This declaration covers only fees and expenses for claims verification related to suspected bot-generated claims. Fees and expenses for other administrative tasks will be covered in a subsequent declaration.

DECLARATION OF JOSEPH M. FISHER RE: MITSUBISHI ELECTRIC CLAIMS PROCESSING AND RECOMMENDATION FOR CLAIM VERIFICATION – Master File No. 4:07-cv-5944-JST