1   Vaughn R Walker
    Jackie N Nakamura
2   Law Office of Vaughn R Walker
    Four Embarcadero Center, Suite 2200
3   San Francisco, CA  94111
    Tel:  (415) 871-2888
4   vrw@judgewalker.com

5

6

7                   IN THE UNITED STATES DISTRICT COURT

8                   NORTHERN DISTRICT OF CALIFORNIA

9                          OAKLAND DIVISION

10

11  IN RE CATHODE RAY TUBE (CRT) ANTITRUST          Master Case No 4:07-cv-5944-JST
    LITIGATION
12
                                                    MDL No 1917
13

14  This Relates to:

15  ALL DIRECT PURCHASER ACTIONS

16  ALL INDIRECT PURCHASER ACTIONS                  SPECIAL MASTER'S REPORT &
                                                    RECOMMENDATION ON PLAINTIFFS'
17                                                  MOTION FOR TERMINATING SANCTIONS

18

19          In the motions before the undersigned, the Direct Purchaser Plaintiffs and the

20  Indirect Purchaser Plaintiffs ("plaintiffs") allege defendants (Irico Display Devices Co, Ltd and

21  Irico Group Corporation, collectively "Irico") committed willful spoliation of evidence, violated

22  multiple court orders, abused the litigation process by disappearing for more than eight years

23  and setting aside default based on false representations, and repeatedly failed to produce its

24  employee, Su Xiaohua, for deposition while making false representations to the court about its

25  lack of control after his resignation.  Plaintiffs thus seek the severest sanctions available in civil

26  litigation – terminating sanctions.  Specifically, plaintiffs request the court to strike defendants'

27  answer, enter default judgment against defendants without trial, and award damages to the

28

plaintiff classes and their attorneys.  The relief plaintiffs seek is extraordinary.  No less extraordinary are the facts and circumstances giving rise to plaintiffs' motion.

Eight years ago, the court entered Irico's default in favor of the plaintiffs.[1] Irico's default followed in the wake of its eight-year disappearance from the litigation.  Upon reappearing in 2017 with new counsel, Irico argued that the default should be set aside for three reasons:  (1) the plaintiffs had not suffered prejudice from Irico's disappearance; (2) Irico had meritorious defenses; and (3) the default was not the result of Irico's culpable conduct.[2]

Noting that Irico needed to prevail on all three factors to prevail on its motion, the court rejected the first of these contentions, finding that plaintiffs had indeed been prejudiced by Irico's disappearance because of the loss of evidence during Irico's absence.[3] The court also expressed skepticism that Irico could show that it had not participated in the conspiracy that plaintiffs allege given the copious evidence from other CRT producers (the other defendants in this litigation) showing Irico's participation in numerous conspiratorial meetings.  While the court acknowledged some questions regarding jurisdiction remained, the case could proceed against Irico Group and Irico Display with any issues of jurisdiction resolved later.  Regarding the third factor, the court, relying on the assertion of Irico's new counsel and its employee affidavit claiming that Irico lacked culpability, the court resolved the matter in favor of setting aside Irico's default and allowing Irico to proceed with litigation.

Discovery in the years since the court set aside Irico's default shows that the court's reliance on Irico's professed lack of culpability was misplaced.  Irico's misconduct at the outset of the litigation has continued unabated notwithstanding the second chance the court afforded Irico to participate and defend the litigation in good faith and on the merits.

Now, six years after Irico was given a second chance, plaintiffs' prejudice from Irico's misconduct remans unassailable.  The court's skepticism that Irico had not participated in

---

[1] ECF Nos 4727 (7/20/16 Entry of Default), 4729.
[2] ECF No 5215.
[3] ECF No 5240.

conspiratorial meetings with other defendants has been fortified by substantial evidence developed in the years since Irico's default.  That evidence has been described in detail in prior reports and recommendations of the undersigned and is more fully discussed herein.

Irico's strategy throughout this litigation has been more serious than neglecting to defend the case and claiming ignorance of its opportunity to defend the case on the legal and factual merits.  Advised by able and experienced counsel, Irico knew at the outset of the litigation of its right to challenge the jurisdiction of the court to proceed with the case.  Rather than raise that defense and give the court the opportunity to consider that issue and Irico's possible liability while evidence and witnesses were still available, Irico abandoned the litigation.  In doing so, Irico evinced not only contempt for this court, but also defied the basic responsibilities of a civil litigant in the United States.  The evidence establishes that Irico knew within months of being named a defendant that it had a right to complete its defense in a timely manner.  Instead, Irico instructed its attorneys to abandon responding to the lawsuit.

When in 2017, Irico belatedly returned to the case, it was the sole remaining defendant, all other defendants having settled or otherwise resolved the litigation.  The default judgment Irico faced when re-entering the case was not, however, produced by the audacity of plaintiffs' counsel.  It was instead produced by operation of joint and several liability under the antitrust laws.  Nor should the possibility of a judgment in comparable amount deter the court this time.  The size of any judgment that may follow re-entry of Irico's default is immaterial to whether default should be entered.  The prospect of a large judgment should not, therefore, impede the re-entry of that default and a prove up of damages to the classes and a final reckoning of the long deferred jurisdictional issue.  When the last remaining defendant has thwarted and evaded its opportunity to defend the case on law and the merits, there is no unfairness in the prospect of imposing on that last remaining defendant the full amount of treble damages suffered by the plaintiff classes not otherwise recovered from the defendants that did participate in this litigation.

Irico's strategy of abandoning the litigation was largely created by the same individuals who on Irico's behalf attended the conspiratorial meetings with other defendants. These individuals were members of the so-called 2008 Litigation Committee.  In his videotaped deposition on September 27, 2022, a member of the committee, Yan Yunlong,[4] described how Irico reacted to receiving the plaintiffs' complaint:

> [W]e formed a task force group to respond to the litigation.  In that group, it had two colleagues from the sales department, so we did talk to them about some of the background and situation of the litigation, including the main allegations involved in the case.
>
> Q: Did Pillsbury interview Irico employees after the complaint was served on Irico?
> A: Yes.
>
> Q. Did Pillsbury speak with the employees in the sales department?
>
> A.  No.
>
> Q. Did it speak with employees in the overseas sales department?
> * * *
> A. No
>
> Q. Was there any written report prepared about Irico's investigation of facts about the allegations of the complaint other than this report by the person that Irico contracted with?
> * * *
> A. No.
>
> Q.  At the time you were investigating the facts of the complaint, did any Irico employee tell you that they had attended meetings with Irico's competitors?
> A. They did.
>
> Q. And what kind of investigation did you do as to the meetings that Irico had with its competitors?
> A. We did not conduct any special investigation. We simply confirmed whether or not there was such a fact.

_____

[4] Yan Yunlong was deputy general counsel of Irico Group from 2011-2020 and deputy director of administration and legal affairs department from 2013-2016 and director of Irico Group legal affairs department from 2016 to present. 3/20/22 Declaration of Lauren Capurro ("Capurro Dec"), Ex E at 90 (9/27/22 Yan Yunlong Deposition Transcript excerpt).

Q. Who told you that Irico employees attended meetings with Irico's competitors?
A. At that time, it was Liu Maihai, Shen Xiaolin, and there was another person who used to work for CEIEC, and that person's name was Liang Yuan.  That's it.
* * *

Q.  Were you preliminary [sic] responsible for gathering information to give to Pillsbury after you were served with the complaint?
* * *
A. No.  Actually, after we were served the complaint, we did several things.

The first one was -- we formed an internal working group to lead the work of conducting the investigation with respect to this litigation. It was a task force working group.

Secondly, we engaged Pillsbury as the counsel to represent us, but at that time several law firms were pitching us for the case, and we later talked with them and engaged Pillsbury as our outside counsel.

The third one we did -- the third thing we did was that we conducted an investigation to see if we actually sold any products in the U.S. market, and the information we got was no.  So we asked Pillsbury to try to talk and reason with the plaintiffs that it was a mistake to sue Irico, and we asked them to remove us from the defendants.

The fourth thing that we did was to notify all the relevant people based on the request from Pillsbury, and those people were asked to preserve all the information and documents related to the case.

During that process, Pillsbury related a very important piece of information to us.  It told us that it was actually a class action and the plaintiffs in the case were trying to form a group of plaintiffs to conduct the litigation, and the defendants were also trying to form a group, and Pillsbury's advice to us was that we join the defendants group.  So, internally, in the company, we also held some discussions on that advice.

And the company held several rounds of discussions on that issue in order to understand the situation, but the situation with Irico is different from that with other companies in the defendants' group.  Those other companies were big multinational companies and the U.S. market was their main market.  They  not only had CRT products in the U.S. market, they also had the TV whole sets in the U.S. market, and Irico, at that time, had neither, so it was to the disadvantage of Irico  to join and form the defendants [sic] group.

And also, at that time, the U.S. government was conducting, actually, criminal investigations in the antitrust litigation proceeding against those companies. Some of them already even pleaded guilty, and Irico conducted some self-evaluation, and we believed that we have not done anything to violate the antitrust law in the U.S.

So for us to join and form the defendants group would be what the Chinese would say "down the drain with them," and we rejected the proposal or suggestion from Pillsbury.

We also knew that it would be a long process for the plaintiffs and the defendants to form the litigation groups and to actually go through the proceeding, so we were waiting for the plaintiffs to file an independent, separate lawsuit against Irico, and we wanted to wait until that time before we conducted any relevant investigation.

It would be unnecessary or pointless for us to conduct any investigation before a separate or independent lawsuit was filed against us by the plaintiffs.

That's it.[5]

Notably, Yan Yunlong, who was a member of the 2008 Litigation Committee and the sole Irico employee who interacted with outside counsel and supervised the litigation, never once mentioned that Irico believed it was immune from suit.

Irico cloaked a succinct recounting of this narrative, the so-called "Yan Document," found in Yan's office files, under a claim of non-relevance and attorney-client privilege. The document containing this account was never disclosed on a privilege log until 2023. Yan testified that he believed the document was not relevant,[6] but the court found that it was responsive to two requests for production of documents.[7] Although the plaintiffs' motion to compel was denied based on the attorney work product and a lack of showing of

---

[5] 3/20/23 Declaration of Lauren Capurro ("Capurro Dec") at ¶6, Ex E at 116-120 (9/27/22 Yan Yunlong Deposition Transcript Excerpts).

[6] Capurro Dec, Ex E at 131-132.

[7] ECF 6215, 7/6/23 Order Approving Special Master's Report & Recommendation ("R&R") re Yan Document at 2-3 (citing ECF 6172 at 2).

compelling need, the undersigned recommends reversing that order pursuant to the court's

inherent power in light of the overall review of defendants' discovery misconduct and finds

that:  (1) by delaying disclosure of this document for years, defendants waived their claim to

attorney work product; (2) defendants' testimony about this document further waived any

attorney work product; (3) defendants' assertion that their failure to answer was due to a belief

that they were immune from suit put into issue their state of mind when abandoning this

litigation in 2008, (4) the Yan Document is the only contemporaneous document explaining

defendants' true reasons for abandoning this litigation and defendants should not benefit from

their intentional concealment of a relevant document and (5) the portions of the Yan Document

relevant to its reasons for abandoning this litigation are not work product but only business

decisions.

   Early in the life of this litigation, Irico was aware that its personnel had

participated in meetings with other defendants yet was aware that it could raise any

jurisdictional defenses that it might have to insulate itself from liability.  Irico had planned to

file a jurisdictional motion within 45 days of its receipt of the complaint, and then decide

whether to abandon responding to the lawsuit depending on the progress of the case.[8]  Irico

tried to obtain  plaintiffs' agreement to omit Irico from an amended complaint on the condition

that if plaintiffs later discover Irico's "involvement in monopoly," the agreement would be

rescinded.[9]  When plaintiffs declined to agree to Irico's plan, Irico decided to "abandon

responding to the lawsuit" and "let nature take its course," to "reduce the damage" of the

"expensive" litigation.[10]  The litigation proceeded against the other defendants while the

evidence of Irico's participation in the conspiracy grew stale and Irico's own witnesses to its

---

[8] This plan to abandon the lawsuit after losing a jurisdictional motion would not have been a strategy created with reputable counsel's advice or agreement and therefore is neither privileged nor work product.

[9] This statement relates to facts regarding Irico's interactions with plaintiffs' counsel and also cannot be characterized as work product.

[10] This statement also does not reveal any attorney client privileged communication or work product since no reputable lawyer would condone abandonment of a lawsuit merely to save legal fees.

1   conduct disappeared behind a veil of "off duty and rest."  The undersigned recommends that

2   the court not permit this malign strategy to succeed.

3          This report first takes up the legal standards plaintiffs must satisfy to obtain the

4   relief they request.  Plaintiffs seek sanctions under Rule 37 and the court's inherent authority

5   for "Irico's intentional spoliation of evidence, its repeated violations of Court Orders and its

6   attempts to evade responsibility for those derelictions by misleading Plaintiffs and the Court."[11]

7   The report then turns to the facts and circumstances that the undersigned finds warrant the

8   extraordinary relief plaintiffs seek and the legal analysis.  Finally, the report recommends

9   appropriate measures of relief.

10

11  **I.      LEGAL STANDARDS**

12         Federal courts derive their authority to sanction a party for discovery misconduct

13  from their inherent power to sanction parties for abusive litigation practices and Rule 37 of the

14  Federal Rules of Civil Procedure.  *See Chambers v NASCO, Inc,* 501 U S 32, 50 (1991) (noting that

15  if the Rules are not up to the task, the court may safely rely on its inherent power).  The

16  *Chambers* court noted that where there is bad faith litigation misconduct that could be

17  adequately sanctioned under the Rules, courts should ordinarily rely on the Rules rather than

18  the inherent power.  When certain types of litigation misconduct are expressly covered by one

19  of the Rules, the applicable rules govern the court's analysis and decision.  When other types of

20  misconduct are not covered by the Rules, the court's inherent power should govern.  *Leon v IDX*

21  *Systems Corp*, 464 F 3d 951, 958 (9th Cir 2006) (court relied on "inherent authority" to impose

22  terminating sanction because misconduct did not involve violation of discovery governed by

23  Rule 37).

24         For terminating sanctions, courts in the Ninth Circuit generally apply a

25  preponderance of the evidence standard.  *Facebook, Inc v OnlineNIC Inc*, 2022 WL 2289067, at

26

27  ───────────────
    [11] Plaintiffs' 3/20/23 Motion for Sanctions at 1.

28

1    *6 (ND Cal Mar 28, 2022); *WeRide Corp v Kun Huang*, 2020 WL 1967209, at *9 (ND Cal Apr 16,

2    2020).  This, of course, is the same standard that applies to find liability in a civil case.

3            On appeal, terminating sanctions are reviewed for abuse of discretion.  *North*

4    *American Watch Co v Princess Ermine Jewels*, 786 F 2d 1447, 1450 (9th Cir 1986).  Absent a

5    "definite and firm conviction that it was clearly outside the acceptable range of sanctions," the

6    Ninth Circuit will not overturn a terminating sanction.  *See In re Phenylpropanolamine (PPA)*

7    *Products Liability Litig*, 460 F 3d 1217, 1226 (9th Cir 2006) (dismissal for failure to comply with

8    MDL case management order); *Malone v US Postal Service*, 833 F 2d 128, 130 (9th Cir 1987)

9    (dismissal under Federal Rules for violation of pretrial order requiring complete witness list and

10   questions).  Findings of fact related to a motion for discovery sanctions are reviewed under the

11   clearly erroneous standard.  If the district court fails to make factual findings, the decision on a

12   motion for sanctions is reviewed *de novo*.  *United States for the Use and Benefit of Wiltec*

13   *Guam, Inc v Kahaluu Construction Co*, 857 F 2d 600, 603 (9th Cir 1988).

14

15          **A.      Federal Courts' Inherent Power to Sanction**

16          Courts are "vested, by their very creation, with power to impose silence, respect,

17   and decorum, in their presence, and submission to their lawful mandates."  *Chambers v NASCO,*

18   *Inc*, 501 US at 43.  Such inherent powers, not conferred by rule or statute, are necessary for

19   courts "to manage their own affairs so as to achieve the orderly and expeditious disposition of

20   cases."  *Goodyear Tire & Rubber Co v Haeger*, 581 US 101, 107 (2017).  That authority includes

21   "the ability to fashion an appropriate sanction for conduct which abuses the judicial process."

22   *Goodyear*, 581 US at 107; *Chambers*, 501 US at 44-45.   "[C]ourts have inherent power to

23   dismiss an action when a party has willfully deceived the court and engaged in conduct utterly

24   inconsistent with the orderly administration of justice."  *Anheuser-Busch, Inc v Natural*

25   *Beverage Distributors*, 69 F 3d 337, 348 (9th Cir 1995) (citing a number of cases dismissing or

26   entering default as a sanction under inherent powers).  The inherent power includes imposing

27   terminating (case-dispositive) sanctions to dismiss an action against a plaintiff or enter a default

28

judgment against a defendant to ensure the orderly administration of justice and the integrity of court orders.  *AECOM Energy & Constr Inc v Topolewski*, 2022 WL 595937 at *3 (CD Cal Feb 25, 2022).

In the Ninth Circuit, courts have regularly relied on the court's inherent power to impose terminating sanctions for abusive litigation tactics.  *See e g, Leon,* 464 F 3d at 963 (court relied on "inherent authority" to impose terminating sanction due to willful spoliation); *Anheuser-Busch*, 69 F 3d at 355 (affirming court's dismissal of counterclaim under its inherent powers as sanction for egregious misconduct of falsely denying existence of and suppressing information clearly relevant to opponents' defense); *Sun World Inc v Lizarazu Olivarria,* 144 F R D 384, 391-92 (ED Cal 1992) (court exercised inherent power to strike defendant's answer, dismiss counterclaim, enter default judgment and order all costs and attorneys' fees paid resulting from fraudulent document); *Pray v M/Y NO BAD DAYS*, 303 Fed Appx 563, 2008 WL 5244907 (9th Cir Dec 17, 2008) (terminating sanctions against defendant imposed under inherent powers); *AECOM Energ & Construction Inc v Topolewski*, 2022 WL 595937 (CD Cal Feb 25, 2022) (terminating sanctions granted pursuant to court's inherent powers); *Alutiiq Intern Solutions, LLC v OIC Marianas Ins Corp*, 305 F R D 618, 629 (D Nevada 2015) (answer stricken and default entered against defendant pursuant to Rule 37 and court's inherent power).

When "a party has engaged deliberately in deceptive practices that undermine the integrity of judicial proceedings," dismissal is an available sanction because "courts have inherent power to dismiss an action when a party has willfully deceived the court and engaged in conduct utterly inconsistent with the orderly administration of justice."  *Leon*, 464 F 3d 958 (quoting *Anheuser-Busch*, 69 F 3d at 348).  Knowing he was under a duty to preserve all data on his laptop, the party in *Leon* intentionally deleted many files (over 2,200) and then wrote a program to write over deleted documents, claiming they were "personal." *Leon,* 464 F 3d at 959.  Finding that the deleted "personal" files included communications that were relevant to his ADA claim, the court imposed case-dispositive sanctions and attorney fee sanctions pursuant to its inherent power.  *Leon*, 464 F 3d at 959-961.  Before awarding such case-

dispositive sanctions, a court must make an express finding that the sanctioned party's behavior constituted bad faith, which can be demonstrated by "delaying or disrupting the litigation or hampering enforcement of a court order."  *Id.*

### B.        Terminating Sanctions under Rule 37(b):  Failure to Comply with Discovery Order

Rule 37(b)(2)(A) provides that a court may sanction a party or its officer, director, or managing agent, for failure to comply with an order to provide or permit discovery.[12] Sanctions under Rule 37 for violating a discovery order include issue or fact establishment, evidence or issue preclusion, striking pleadings in whole or in part, dismissal and entry of default judgment against the disobedient party.  Rule 37 (b)(2)(A)(i-vi).  Where the sanction results in default, the sanctioned party's violations must be due to the "willfulness, bad faith or fault" of the disobedient party.  Rule 37(b)(2)(A)(iii); *see Hester v Vision Airlines, Inc*, 687 F 3d 1162, 1169 (9th Cir 2012) (affirming sanction of default judgment for failure to produce documents, misrepresenting discovery to court and willfully violating court orders).

The Ninth Circuit has affirmed terminating sanctions pursuant to Rule 37(b) for a variety of discovery violations, including failure to comply with case management or other discovery orders, failure to produce documents, failure to respond fully to interrogatories, failure to appear for a deposition and failure to pay monetary sanctions for discovery violations. *See e g, In re Phenylpropanolamine Products Liability Litig*, 460 F 3d 1217, 1233 (9th Cir 2006) (failure to comply with MDL case management order for more than five weeks warranted terminating sanctions under Rule 37); *Malone v U S Postal Service*, 833 F 2d 128 (9th Cir 1987) (failure to comply with pretrial order requiring a complete list of witnesses and questions resulted in dismissal sanction); *Adriana Intern Corp v Thoeren*, 913 F 2d 1406 (9th Cir 1990) (failures to appear for deposition, to produce documents, to obey court orders resulted in

---

[12] Under Rule 16(f), a court may issue any just order, including sanctions under Rule 37 (b)(2)(A)(ii)-(vii) if a party or its attorney fails to obey a scheduling or other pretrial order.  *See Meta Platforms, Inc v BrandTotal Ltd,* 605 F Supp 3d 1218, 1236 (ND Cal 2022) (spoliation warranted a permissive adverse instruction).

terminating sanction of default judgment pursuant to Fed R Civ P 37(b) and (d) in the amount of $8.5 million and monetary sanctions); *Computer Task Group, Inc v Brotby*, 364 F 3d 1112 (9th Cir 2004) (failure to produce documents, failure to provide clear answers to interrogatories and giving contradictory responses resulted in terminating sanction of default under Rule 37); *Dreith v Nu Image*, 648 F 3d 779 (9th Cir 2011) (failure to sign and return a Joint Stipulation re Discovery, providing incomplete discovery responses and failure to produce documents followed by late production of newly discovered documents resulted in default judgment under Rule 37(b)); *Connecticut General Life Ins Co v New Images of Beverly Hills*, 482 F 3d 1091 (9th Cir 2007) (failures to produce requested documents and respond fully to interrogatories in violation of court order resulted in Rule 37 terminating sanction of default judgment); *Henry v Gill Industries, Inc*, 983 F 2d 943 (9th Cir 1993) (dismissal sanction for failures to appear for deposition, produce documents and pay sanctions under Rule 37); *Hyde & Drath v Baker*, 24 F 3d 1162 (9th Cir 1994) (dismissal and monetary sanctions for failures to appear for court-ordered depositions); *Stars' Desert Inn Hotel & Country Club, Inc v Hwang*, 105 F 3d 521 (9th Cir 1997) (default sanction for repeated failures to appear for deposition, violations of court orders).

   In evaluating whether sanctions are proper, a court looks "at all incidents of a party's misconduct." *Adriana Intern*, 913 F 2d at 1411-12.


## C. Terminating Sanctions under Rule 37(e):  Failure to Preserve ESI

   Rule 37(e) provides that a court may sanction a party for failure to preserve Electronically Stored Information (ESI).[13]  Under Rule 37(e), spoliation occurs when:  (1) there is ESI that "should have been preserved in the anticipation or conduct of litigation"; (2) that ESI is

---

[13] In 2015, Rule 37(e) was amended to eliminate the court's reliance on inherent authority as a basis for sanctions under this section.  *See* Committee Notes; *Newberry v County of San Bernardino*, 750 F App'x 534, 537 (9th Cir 2018) (Rule 37(e) forecloses reliance on inherent authority to determine whether terminating sanctions are appropriate where ESI that should have been preserved is lost).  Due to the adequacy of Rule 37, there is no need to rely on the court's inherent authority in this analysis of spoliation of ESI and violations of court discovery orders.  But for litigation misconduct that does not fit squarely under Rule 37, the court's inherent power applies.

1  lost because a party failed to take reasonable steps to preserve it, and (3) it cannot be restored

2  or replaced through additional discovery.  If so, the court: (1) upon finding prejudice to another

3  party from loss of the information, may order measures no greater than necessary to cure the

4  prejudice.  Only upon finding that the party acted with the intent to deprive another party of

5  the information's use in the litigation may the court:  (A) presume that the lost information was

6  unfavorable to the party; (B) instruct the jury that it may or must presume the information was

7  unfavorable to the party; or (C) dismiss the action or enter a default judgment.  Under Rule

8  37(e) (2), only if court finds that a party "acted with the intent to deprive another party of

9  the information's use in the litigation," may it enter a default judgment.  Rule 37 (e) (2).

10       Courts have found intent when the evidence shows or it is reasonable to infer,

11  that the party purposefully destroyed evidence to avoid its litigation obligations.  *See e g,*

12  *Facebook, Inc v OnlineNIC Inc*, 2022 WL 2289067 at *6 (Mar 28, 2022) (Report &

13  recommendation that terminating sanctions be granted under Rules 37(b), 37 (c) and 37(e));

14  *Porter v City and County of San Francisco*, 2018 WL 4215602 at *3 (ND Cal Sep 5, 2018).  Intent

15  may be evidenced by a party's deliberate disobedience of a court order.  *FaceBook*, at *8*; see*

16  *also John v County of Lake*, 2020 WL 3630391 at *7 (ND Cal July 3, 2020) (intent was clear when

17  defendants blatantly defied a detailed, explicit court order).  There is no requirement that the

18  court find prejudice to the non-spoliating party under Rule 37(e )(2).  *WeRide Corp v Kun*

19  *Huang*, 2020 WL 1967209 at *9 (ND Cal Apr 24, 2020).

20       Magistrate Judge Spero of this court applied a three-part test to determine

21  whether spoliation had occurred:  (1) the party having control over the evidence had an

22  obligation to preserve it at the time it was destroyed; (2) the records were destroyed with a

23  "culpable state of mind," and (3) the evidence was "relevant" to the party's claim or defense

24  such that a reasonable trier of fact could find that it would support that claim or defense.  *Meta*

25  *Platforms, Inc v BrandTotal*, 605 F Supp 3d at 1236.  If spoliation is found, courts consider three

26  factors in determining whether and what type of sanctions to impose:  (1) the degree of fault of

27  the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the

28

opposing party; and (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party. *Meta Platforms*, 605 F Supp 3d at 1237 (because Meta failed to prove that BrandTotal acted with intent to deprive it of the information's use in the litigation, as required by Rule 37(e)(2), court imposed the lesser sanction of a permissive jury instruction).

In *Facebook Inc v OnelineNIC Inc*, 2022 WL 17371092 (ND Cal Oct 17, 2022), Judge Illston overruled objections to the special master's Report & Recommendation ("R&R") and adopted its findings that: (1) defendants failed to preserve responsive ESI pre-litigation, post complaint filing and during discovery; (2) defendants deleted ESI and withheld ESI during the litigation; and (3) defendants used underhanded tactics to avoid producing responsive documents. The defendants objected, arguing that the R&R failed to consider adequately that some documents were deleted prior to the litigation and for others, the special master could not determine when the documents were deleted. *Facebook* at *6. Judge Illston rejected this argument because it was due to defendants' spoliation that such information was not available to the special master. In *Facebook,* the court noted that it had "no way of knowing what evidence was destroyed that would support plaintiffs' case." *Id* at *8. Judge Illston adopted the R&R and ordered sanctions against defendants in the form of striking their answer, entering default judgment, statutory damages, reimbursement of costs related to the special master, additional briefing and documentation to supplement plaintiffs' request for attorneys' fees and additional briefing on the issue of entry of default judgment.

In *Omnigen Research v YongQiang Wang*, 321 F R D 367 (D Ore 2017), the court ordered, pursuant to Rule 37(b)(2), Rule 37(e) and its inherent authority, the sanction of default judgment where defendants deleted files from their laptop in violation of court orders and donated their desktop computer, after receiving preservation letters and an injunction from the court. The defendants admitted that they used a desktop computer during the relevant period and donated it, asserting that while a technical violation of the court's order, it was inconsequential because it was only purchased for their son to use and did not contain any relevant materials. *Omnigen,* 321 F R D at 376-77. The court rejected these arguments

because during the relevant period, their son was a three-year-old so it was "inconceivable that a toddler would need a desktop computer" and it was "unbelievable" that they did not use this computer for purposes relevant to the litigation, considering they did not acquire another computer until years later. *Id.* The court also rejected as "disingenuous" the defendants' suggestion that their "understanding of the English language may have been the cause of the problems and that their actions, as a result, were unintentional." *Omnigen,* 321 F R D at 377.

**D.     Terminating Sanctions Require a Finding of Willfulness, Bad Faith or Fault**

Whether imposed under Rule 37 or the court's inherent power, a terminating sanction may only be warranted if the court finds "willfulness, bad faith and fault." *See Connecticut General Life,* 482 F 3d 1091, 1096 (9th Cir 2007) (affirming case-dispositive sanction under Rule 37(b)(2)); *Dreith v Nu Image, Inc,* 648 F 3d 779, 788 (9th Cir 2011).

"Disobedient conduct not shown to be outside the control of the litigant is sufficient to demonstrate willfulness, bad faith, or fault." *Jorgensen v Cassiday*, 320 F 3d 906, 912 (9th Cir 2003) (sanctioned parties claimed that their failure to produce requested documents was beyond their control but failed to present any evidence in support); *Henry v Gill Indus, Inc*, 983 F 2d 942, 948 (9th Cir 1993) (excuses of being out of town and misunderstandings were not outside the litigant's control). In other words, "[t]he willfulness standard is met by disobedient conduct that is within the offending party's control." *Bump Babies Inc v Baby The Bump*, 2011 WL 5037070 at *4 (CD Cal Sept 7, 2011) (terminating sanctions for willful disobedience of multiple court orders, citing *Fair Housing of Marin v Combs*, 285 F 3d 899-905 (9th Cir 2002)). Bad faith may also be inferred from misrepresentations to the court and other misconduct, hence courts look at all incidents of misconduct in considering sanctions. *See Adriana Intern*, 913 F 2d at 1411-12.

1      **E.      The Ninth Circuit's Five Factors for Terminating Sanctions**

2              Whether under Rule 37 or the courts' inherent power, courts in the Ninth Circuit

3      must weigh five factors in determining whether to impose terminating sanctions for a party's

4      litigation misconduct:

5                      (1)  the public's interest in expeditious resolution of litigation;

6                      (2)  the court's need to manage its docket;

7                      (3)  the risk of prejudice to the other party;

8                      (4)  the public policy favoring disposition of cases on their merits; and

9                      (5)  the availability of less drastic sanctions.[14]

10             The Ninth Circuit has stated that it "may affirm a dismissal where at least four

11     factors support dismissal, or where at least three factors strongly support dismissal." *Dreith*,

12     648 F 3d at 788.  When a court order is violated, the first two factors support sanctions and the

13     fourth factor cuts against a default, so in that situation, the third and fifth factors are decisive.

14     *Adriana*, 913 F 2d at 1412.

15             Concerning the fifth factor of availability of less drastic sanctions, the Ninth

16     Circuit asks three questions:  "(1) did the district court explicitly discuss the feasibility of less

17     drastic sanctions and explain why alternative sanctions would be inappropriate, (2) did the

18     court implement alternative sanctions before ordering dismissal, and (3) did the court warn the

19     party of the possibility of dismissal before actually ordering dismissal?"  *Adriana*, 913 F 2d at

20     1412-13.  Because explicit warnings need not always be required and alternative sanctions

21     always considered in every case, these questions serve as guideposts for decision rather than

22     requirements.  *Adriana*, 913 F 2d at 1413.  Under "egregious circumstances, it is unnecessary

23     (although still helpful) for a district court to discuss why alternatives to dismissal are infeasible."

24     *Dreith v Nu Image, Inc*, 648 F 3d 779, 788-89 (9th Cir 2011) (quoting *Malone*, 833 F 2d at 132).

25

26             [14] *See e g, Leon,* 464 F 3d at 958 (terminating sanctions for spoliation of evidence based on
       court's inherent power); *Adriana Intern Corp v Thoeren,* 913 F 2d 1406, 1412 (9th Cir 1990) (affirming
27     Rule 37 default sanction for failure to appear at deposition, failing to produce documents in violation of
       orders).

28

In determining whether to impose terminating sanctions, the most critical factor under both the discovery rules and the court's inherent power is a practical one: "whether a party's discovery violations make it impossible for a court to be confident that the parties will ever have access to the true facts" and thus, "threaten to interfere with the rightful decision of the case." *Connecticut General Life Ins Co v New Images of Beverly Hills*, 482 F 3d 1091, 1097 (9th Cir 2007). A terminating sanction is warranted where a party has engaged deliberately in deceptive practices that undermine the integrity of the judicial proceedings. *Anheuser-Busch*, 69 F 3d at 348. "Where a party so damages the integrity of the discovery process that there can never be assurance of proceeding on the true facts, a case-dispositive sanction may be appropriate." *Connecticut General*, 482 F 3d at 1097 (party's pattern of deception and discovery abuse made it impossible for the court to conduct trial with any reasonable assurance that the truth would be available); *Valley Engineers Inc v Electric Eng'g Co*, 158 F 3d 1051, 1058 (9th Cir 1998). In *Valley Engineers* and in *Anheuser-Busch*, the party's discovery violations made it impossible for the courts to be confident that the parties would ever have access to the true facts and thus, a fair and just resolution on the merits was not possible and no alternative sanction less than a case-dispositive sanction could be effective. *Valley Engineers*, 158 F 3d at 1058.

A review of Irico's misconduct demonstrates that these legal principles apply to this case, a task to which the undersigned now turns.

## II.   CHRONOLOGY OF IRICO'S MISCONDUCT

This multi-district antitrust litigation[15] involves an alleged worldwide conspiracy to fix prices of cathode ray tubes ("CRTs"), components of computer monitors and televisions. The litigation is now well into its second decade and has outlived the useful life of the products

---

[15] Plaintiffs consist of two classes certified by the court: the Direct Purchaser Plaintiffs (DPPs) and the Indirect Purchaser Plaintiffs (IPPs). *See In re Cathode Ray Tube (CRT) Antitrust Litig,* 308 F R D 606 (ND Cal 2015) (DPP class certification); *In re Cathode Ray Tube (CRT) Antitrust Litig*, No 07-CV-05944-JST, 2020 WL 1873554 at *1 (ND Cal March 11, 2020) (IPP class certification).

involved.  CRTs became obsolete by the advent of liquid crystal display (LCD) technology and other products.  A chronology helps to place key events in context.

In November 2007, the United States Department of Justice announced its criminal investigation and prosecution of multiple foreign corporations that, from 1995 to 2007, conspired to fix prices of CRTs used in the manufacture of televisions and computer monitors sold in the United States and elsewhere in violation of Section 1 of the Sherman Act.[16]

From March 1, 1995 to November 25, 2007 (the "Conspiracy Period" or "relevant period"), many of the major producers of CRTs used in televisions and computer monitors at the time, met at "Glass Meetings" throughout the world, allegedly to fix the prices of CRTs, resulting in overcharges of billions of dollars to companies in the United States that purchased and sold CRTs or products containing CRTs.[17]

The present litigation followed on behalf of classes of direct and indirect purchasers of CRT products.  When this litigation started in 2007, it was brought against numerous defendants including the two current Irico defendants, two state-owned Chinese electronics manufacturers that produced CRT products during the relevant period.  All the other defendants have long since settled or otherwise exited.   This litigation continues solely against the Irico defendants.  At the time the litigation commenced in 2008, Irico's annual report proclaimed its market share in the commerce involved was the "third largest globally."[18]

Plaintiffs allege that Irico conspired with other foreign corporations to fix prices and restrict production of products containing CRTs.  Specifically, plaintiffs allege that Irico participated in several dozen meetings between 1998 and 2006 at which Irico and its co-conspirators agreed on price, output and customer and market allocations of CRTs and that Irico made, sold and distributed CRT Products directly or through affiliates throughout the

---

[16] ECF No 5457 at 1 (4/23/19 United States Statement of Interest).

[17] *See In re Cathode Ray Tube (CRT) Antitrust Litig*, 2017 WL 11237000 at *1 (ND Cal March 9, 2017); ECF No 5128 at 2.

[18] 3/20/23 Declaration of Lauren Capurro ("Capurro Dec"), ¶23, Ex V at 13.

United States.[19]   During its many years of litigation, Irico's co-defendants produced copious quantities of evidence, much of which disclose Irico's participation in the alleged conspiracy.

On December 25, 2007, Irico received service of the IPPs' complaint alleging Irico's involvement in this global CRT conspiracy.[20]

### A.   Irico Retained Pillsbury and Received Detailed Advice on Evidence Preservation

On January 24, 2008, Irico retained Pillsbury Winthrop Shaw Pittman LLP ("Pillsbury") to represent it in this litigation.[21]  Yan Yunlong, of Irico's legal affairs department, was the primary contact person between Irico and Pillsbury.[22]  On June 24, 2008, the Pillsbury firm appeared on behalf of Irico in this litigation.[23]

From February 15, 2008 through August 18, 2008, there were at least four written communications from Pillsbury to Irico, as well as an unknown number of teleconferences, warning Irico of its duty to preserve documents potentially relevant to this litigation.[24]

On February 15, 2008, Pillsbury sent an email to Irico's Yan Yunlong, stating:

> *[I]it is essential that Irico does not destroy or dispose of any potentially relevant documents, whether in paper, electronic or any other form.  We*

---

[19] DPPs' 3/16/2009 Consolidated Amended Complaint, ECF No 436 at ¶¶5, 37-39, 159.

[20] Capurro Dec, ¶17, Ex P at 14 (Irico's Objections & Responses to IPP's Fourth Set of Interrogatories).

[21] Capurro Dec, ¶17, Ex P at 13-14 (Irico's Objections & Responses to IPPs' Fourth Set of Interrogatories).

[22] Capurro Dec, Ex P at 14 and Ex E at 121.

[23] ECF No 308 (6/24/08 Notice of Appearance of Pillsbury), ECF No 5191 at 4:15-17.

[24] The court found an adequate showing of spoliation and ordered Irico to produce for *in camera* review Pillsbury's August 18, 2008 email regarding evidence preservation and all documents relating to Irico's preservation efforts.  ECF No 6146 at 8-10 (1/27/23 Order Approving Special Master's R&R re Evidence Preservation Documents).  After an *in camera* review, the court ordered Irico to produce those documents and confirm that they included documents requested from its former counsel, Pillsbury on or after January 12, 2023.  ECF No 6166 at 2 (2/24/23 Order Approving Special Master's R&R on Irico's Documents Submitted for *In Camera* Review).  Thus, it was only after this order, that Irico produced these documents, revealing that its outside counsel had repeatedly advised it to preserve evidence and that Irico had made representations to its counsel that it was doing so.

> ***recommend that you issue written instructions to the members of your
> company to retain all such documents as soon as possible***.[25] (emphasis added).

This email was in Chinese, sent by a Pillsbury partner in its Shanghai office, and offered help in drafting the written instructions.[26]

On April 4, 2008, the court issued Pretrial Order No 1 ("PTO No 1"), ordering, *inter alia*, that "each party shall take reasonable steps to preserve all documents, data, and tangible things containing information potentially relevant to the subject matter of this litigation."[27]

On June 23, 2008, Pillsbury sent a copy of PTO No 1 to Irico by email, stating:

> The court issued its first pretrial order on April 4, 2008, with Article 13 being the most critical to Irico, which sets out the court's requirements for preservation of evidence (including information in electronic form).  ***As we have discussed with Irico, this is an extremely important statutory requirement.  If some potentially relevant information is lost or destroyed, this could have very serious consequences for Irico.***  The pretrial order is attached for your review.  ***We have also attached a Chinese translation of Article 13 for your reference.*** (emphasis added).[28]

On August 18, 2008, Pillsbury sent an email to Irico's Yan Yunlong, stating:  "As stated on the phone, attached is a memorandum and notice of information retention from the U.S. Court regarding the preservation of evidence requirements."[29]  The attached August 7, 2008 Pillsbury memo addressed to Yan Yunlong,[30] stated:

> Based on our prior communications and the Court Order on Preservation of Evidence (see Attachment I), ***we believe that Irico Group Corporation and Irico***

---

[25] Capurro Dec, Ex C (IRI-SUPP-000001E, Feb 15, 2008 email from Joseph Chan of Pillsbury to Yan Yunlong, with copy to Secretary Tao, Mr Gao, re CRT Litigation).

[26] Capurro Dec, Ex C (IRI-SUPP-000001-05E).

[27] ECF No 230, PTO No 1 at 6:1-4.

[28] Capurro Dec, Ex F (IRI-SUPP-000012E – 21E) (June 23, 2008 email from Kevin Xi, Pillsbury, to Yan Yunlong, attaching Pretrial Order No 1 (ECF 230)).

[29] Capurro Dec, Ex H (IRI-SUPP-000022E) (August 18, 2008 email from Kevin Xi, Pillsbury, to Yan Yunlong).

[30] *Id* (IRI-SUPP-000023E) (August 7, 2008 Memo from Joseph R Tiffany II of Pillsbury to Yan Yunlong).

> *Display Devices Co, Ltd. (collectively, "Irico") have notified the appropriate Irico personnel regarding the retention of information potentially relevant* to the subject matter of the CRT Antitrust Litigation at issue*. The purpose of this memorandum is to advise Irico to distribute forms and documents to employees in addition to the notifications already previously made, which are intended to remind Irico personnel of the importance of complying with U.S. law requiring the preservation of potentially relevant information*. (emphasis added).

By August 7, 2008, Pillsbury evidently believed, based on previous communications with Irico and the Court's Order on preservation of evidence, that Irico had already instructed its employees to preserve all information potentially relevant to the CRT Antitrust Litigation.  The August 7, 2008 memo advised Irico to issue the attached written litigation hold to the employees most knowledgeable "that we asked you to identify in our July 14, 2008, memorandum entitled "Request for Information Regarding the CRT Antitrust Litigation," and have the employees sign the litigation hold notice.[31]  The litigation hold notice outlined specific criteria for preserving and not discarding or deleting information and documents, including the time period and topics, including documents regarding communications or meetings between Irico employees and competitors "regarding CRTs or CRT products sold in the United States or worldwide." [32]  This litigation hold notice further warned that:  "Failure to preserve evidence may subject Irico or its employees to potentially severe sanctions."[33]  Pillsbury's emails were forwarded to Irico's highest executives, including Secretary Tao, Mr Gao, and Yan Yunlong, members of the 2008 Litigation Committee formed to oversee Irico's participation in this litigation.[34]

---

[31] Capurro Dec, Ex H (Aug 7, 2008 Memo from Joseph R Tiffany II to Yan Yunlong, IRI-SUPP-000023E).

[32] Capurro Dec, Ex H (Annex II to Aug 7, 2008 Memo from Joseph R Tiffany II to Yunlong Yan, IRI-SUPP-000026-27E) (identifying market research, communications or meetings with competitors, distributor and buyer communications re CRTs or CRT Products sold "in the United States or worldwide").

[33] Capurro Dec, Ex H at IRI-SUPP-000027E.

[34] Capurro Dec, Ex D (Feb 15, 2008 email from Joseph Chan of Pillsbury to Yan Yunlong, who forwarded it to Secretary Tao and Mr Gao, IRI-SUPP000006-11E); Ex E at 121-125 (Yan Yunlong testimony re names of members of 2008 Litigation Committee, including Tao Kui and Gao Rongguo).

Another Pillsbury memo from Joseph R Tiffany II to Yan Yun Long, dated August 7, 2008, entitled Preservation of Documents and Electronically Stored Information, advised "in further detail IRICO's obligations regarding the preservation of documents, email and other electronically stored information."[35]  This Pillsbury memo described "Special Requirements for the Preservation of ESI":

> As e-mail and other forms of ESI have become the principal sources of business information, the requirement to preserve and product [sic] ESI in litigation has become one of the most significant and complicated issues in the discovery process in U.S. courts***. It has also become one of the most contentious aspects of current U.S. litigation and has led to the imposition of substantial sanctions and penalties for parties who are found to have failed to take proper measures to preserve and produce relevant ESI.  Accordingly, it is very important for IRICO to take proper steps to preserve ESI, as well as information in other forms.*** IRI-SUPP-000035 (emphasis added).

This Pillsbury memo also advised Irico to suspend any automatic deletion of ESI that is potentially relevant to the CRT Antitrust Litigation "as quickly as possible."  IRI-SUPP-000035.  Evidently based on information from Irico, its present counsel contends that: "[t]his document was found in Pillsbury's internal casefile and we have no indication it was ever sent to Irico."[36]  In light of the totality of facts, the undersigned finds this statement unreliable since Irico's spoliation is the likely reason why its counsel labors under a belief that there is "no indication it was ever sent to Irico."

**B.      Ignoring Counsel's Advice, Irico Failed to Issue a Litigation Hold and Preserve Documents and ESI**

Yan Yunlong testified that he communicated with Pillsbury in 2008 regarding its oral and email instructions on evidence preservation and conveyed Pillsbury's instructions to the litigation committee.[37]  On March 4, 2019, Irico's 30(b)(6) witness, Zhang Wenkai, of Irico's

---

[35] Capurro Dec, Ex J (IRI-SUPP-000034-36) ("Pillsbury Preservation Memo").

[36] Capurro Dec, Ex L (Feb 13, 2023 Evan Werbel/Baker Botts Letter to Plaintiffs' counsel).

[37] Capurro Dec, Ex E (Yan Yunlong Depo Tr Vol I, at 132-133).

legal affairs department, testified that Irico did not issue a litigation hold notice, believing that it was not necessary:

> Q.  In connection with this litigation, did Irico issue a litigation hold notice requesting its employees do not destroy any potentially discoverable documents or data?
> A.  In what time frame are you referring to regarding this notice?
> Q.  I'm referring to when Irico was served with the plaintiff's complaints.
> A.  We did not aware that is something we need to do.[38]

Zhang testified that from around 2007 or 2008 to 2017, he was not involved in the case and had no knowledge about any notice requesting employees not to destroy any potentially discoverable documents or data, and after he joined the case in 2017, Irico never issued an official litigation hold notice, although in early September 2017, he attended a meeting during which a discussion ensued about asking everyone to maintain existing documents and not deleting those document.[39]   Zhang testified that during the time between 1995 and 2008, Irico had a protocol for retaining documents printed or written on paper but had no policy for maintaining electronically stored information because that was not required by the government.[40]  Despite having seen a written document retention policy, Zhang could not recall its date or whether the policy changed between 1995 and 2008.[41]  Irico actually maintained four categories of physical documents under its policy:  external documents from the government, manufacturing technology information, functions of the Communist Party, administrative management and original financial documents.[42]

Yan Yunlong testified that in June 2008, Irico formed a litigation committee to oversee Irico's response to this litigation, after it was served with the complaint and the

---

[38] Capurro Dec, Ex N (March 4, 2019 Deposition of Irico's 30(b)(6) witness, Zhang Wenkai, at 17, 84) ("[A]fter I joined the case from 2017, we never issue an official notice with that regard.  However, in various meeting, we did mention something like that.")
[39] Capurro Dec, Ex N at 84-86.
[40] Capurro Dec, Ex N at 75-77.
[41] Capurro Dec, Ex N at 77-78.
[42] Capurro Dec, Ex N at 80-81.

members included Tao Kui (deputy general manager of Irico Group), Wang Ximin, Shen Xiolin, Liu Maihai, Liang Yuan, Gao Rongguo, Director, Corporate Management Department, and Yan Yunlong, Legal Affairs Manager.[43]  Responding to the question if the committee members ever communicated with each other by email, Yan testified that he probably had email exchanges with Liu Maihai and Gao Rongguo.[44]  Yan testified that Wang Ximin, Shen Xiaolin and Ms Liang Yuan informed the committee that they had attended meetings with competitors.[45]

Yan also testified that in 2008, Irico had companywide email, and that Irico did not convey the instruction to preserve documents in an email to all employees.[46]  In the August 2008 meeting of the litigation committee, Yan spoke to the committee members and told them to preserve documents relating to United States sales but never talked with anyone who was not a member of the committee, telling them to preserve documents.[47]

Yan testified that in August 2008, "the focus of the committee was on the core issue as to whether or not Irico sold any products in the U.S.," and "the instruction that emanated from the committee in August of 2008 was to preserve documents relating to U.S. sales."[48]  Yan testified that he gave very clear instructions to the litigation committee to preserve information and evidence but he could not notify each of  Irico's 14,000 employees and had to rely on the committee members, the senior leadership of the company, "to reach out to the relevant people that they were aware of in order to keep the relevant information and documents related to the case."[49]

In response to an interrogatory on whether Irico implemented a litigation hold in this litigation, Irico stated:

---

[43] Capurro Dec, Ex E at 121-125 (names of members of 2008 Litigation Committee).
[44] Capurro Dec, Ex E at 127-128.
[45] Capurro Dec, Ex B at 134-135.
[46] Capurro Dec, Ex E at 129.
[47] Capurro Dec, Ex E at 130.
[48] Capurro Dec, Ex E at 136.
[49] Capurro Dec, Ex E at 138.

> [I]n summer 2008, the company orally instructed key employees to preserve documents related to sales of CRT to the United States.  It was determined that Irico possessed no such documents.
>
> * * *
>
> Around September 2017, when Irico reentered the litigation . . ., Irico confirmed the need to preserve existing documents relevant to the litigation from the time period 1995 to 2007 with managers from each operational department, . . .. The managers conveyed this message orally to relevant employees under their supervision. [50]

Despite providing input for Irico's responses to IPPs' Third and Fourth Sets of Interrogatories served by Irico on August 13, 2021, January 21, 2022, and February 23, 2022, and testifying at his deposition on September 27-28, 2022, Yan Yunlong later changed Irico's story and declared that he:

> realized that [he] was confused regarding some questions and gave inaccurate testimony within pages 123 through 139 of the transcript, as well as inaccurate input for the interrogatory responses listed above.  This information related to certain events in 2008 following the formation of the Litigation Committee, specifically relating to Irico's efforts to preserve documents for the litigation.
>
> * * *
>
> In a subsequent meeting of the Litigation Committee in August 2008, I printed and provided copies of the privileged document [regarding preservation of documents] to each of the Litigation Committee members.  The Litigation Committee members reviewed the document and discussed the legal advice provided by Pillsbury.  Following this discussion, the Litigation Committee members were tasked with the responsibility of identifying any relevant documents in their possession and preserving any such materials, as well as notifying subordinates who might have any relevant documents to preserve those materials, if any existed.  This instruction was given orally.[51]

Essentially, Yan Yunlong attempted to change his testimony and Irico's discovery responses to state that he issued a written litigation hold to the members of the 2008 Litigation Committee.   In light of the repeated affirmations of his earlier testimony and the self-serving, last-minute nature of Yan Yunlong's effort to change his testimony and Irico's discovery

---

[50] Capurro Dec, Ex A at 6-7 (Response to Interrogatory No 2, Irico's Jan 21, 2022 Suppl Objections and Responses to IPPs' Third Set of Interrogatories).

[51] Capurro Dec, Ex R at 1-2 (Nov 18, 2022 unsworn Yan Yunlong Dec re Deposition Testimony and Interrogatory Responses).

responses, including the change discussed below, the undersigned finds that Irico's attempted change is not credible.

**C.      In 2008, Irico Limited Its Inquiry to Documents Related to  CRT Sales in the United States, Rather than its Global CRT Sales as Instructed by Counsel**

In discovery responses regarding how its 2008 "oral instruction" for a litigation hold was conveyed, Irico stated:

> The 2008 Litigation Committee held a meeting in August 2008 at Irico Group's headquarters building in Xianyang City during which the instructions to preserve documents were discussed.  The instructions were conveyed to the employees identified in Irico's Response to Interrogatory No. 2 [Tao Kui (Irico Group, Party Secretary and Deputy General Manager), Wang Ximin (Irico Display, General Manager), Shen Xiaolin (Irico Group, Sales Company, General Manager), Liu Maihai (Irico Group Electronics Co, Ltd, Sales Director), Liang Yuan (Irico Group Electronics Co, Ltd, Head of Overseas Department and Assistant to General Manager of Marketing), Gao Rongguo (Director, Corporate Management Department, Irico Group)] at this and subsequent meetings.  ***At that time Irico understood that, given the instant litigation arose under the antitrust laws of the United States, the focus of the litigation was on sales of CRTs to the United States.***  The individuals identified [above] were tasked to search for documents and to identify other employees under their supervision and instruct them to ***search for documents that might related to the Irico sales in the  United States and preserve such documents, if any existed.***  Irico believes that these efforts to search for and preserve documents would have occurred immediately after the above-referenced meeting of the 2008 Litigation Committee in August or September 2008.
>
> * * *
>
> [Irico] ***cannot find documents detailing the specific information and its answers are based on the recollections of Yan Yunlong, the only remaining Irico employee with knowledge of the dissemination of the oral instruction in 2008.*** All of the members of the 2008 Litigation Committee other than Yan Yunlong have retired or otherwise departed the company.  Yan Yunlong recalls that the employees identified in the Response to Issue No. 2 contacted relevant employees and searched for documents, but that ***no documents relevant to the sales of CRTs by Irico to the United States were identified at that time.***
>
> * * *
>
> Irico believes that the oral instructions provided at the time were sufficient to preserve ***documents related to potential sales by Irico to the United States.  Irico acknowledges that at the time it misunderstood the scope of document preservation in connection with the litigation in the United States***

***and cannot be certain that all documents related to Irico's global sales of CRTs were preserved.*** (emphasis added).[52]

Irico further admitted that:

***Irico does not contend that the oral instruction in 2008 was effective in preserving all documents related to its global sales of CRTs, however, because Irico did not sell CRTs to the United States, Irico's search at the time did not identify any documents concerning Irico's sales of CRTs to the United States and thus no documents on this topic were lost or destroyed.***[53] (emphasis added).

In its discovery responses, Irico further stated that it "consulted with its former counsel, Pillsbury Winthrop Shaw & Pittman, LLP, regarding document preservation, ***but not on the specific decision in determining to preserve only documents related to sales of CRTs to the United States in mid-2008***." (emphasis added).[54]

Had its 2008 oral document preservation instruction not been restricted to sales of CRTs to the United States, but rather had included global CRT sales, Irico would have identified:  the following types of documents regarding Irico's global sales of CRTs that are more likely to have existed in the summer of 2008:

- Sales reports containing general CRT market information;

- CRT sales contracts with customers;

- Recent correspondence with customers regarding CRT sales; and

- Handwritten working notes regarding recent internal and customer meetings attended by members of Irico's sales team."[55]

In his September 27, 2022 deposition, Yan Yunlong testified that Irico confined its inquiry to whether "***we actually sold any products in the U.S. market, and the information***

---

[52] Capurro Dec, Ex A at 8-11 (Irico's Jan 21, 2022 Supplemental Objections and Responses to IPPs' Third Set of Interrogatories).

[53] *Id*, Ex A at 11-12.

[54] Capurro Dec, Ex P at 15 (Irico's February 23, 2022, Response to IPPs' Fourth Set of Interrogatories, Interrogatory No 6).

[55] Capurro Dec, Ex A at 12-13.

*we got was no."*  Capurro Dec, Ex E at 118 (Sept 27, 2022, Depo Yan Yunlong Vol I) (emphasis added).

As discussed above, Yan Yunlong later attempted to change his deposition testimony and change Irico's discovery responses by submitting his unsworn November 18, 2022 Declaration re Deposition Testimony and Irico's Interrogatory Responses.[56]  After providing input to three Irico responses to IPPs' Third and Fourth Sets of Interrogatories served by Irico on August 13, 2021, January 21, 2022, and February 23, 2022, he "realized that [he] was confused regarding some questions and gave inaccurate testimony" and gave "inaccurate input for the interrogatory responses."[57]  In his November 18, 2022 declaration, Yan Yunlong declared:

> While the Litigation Committee members did receive copies of and discuss the privileged document from Pillsbury, ***I do not recall whether the Litigation Committee members discussed the specific categories of documents that each Litigation Committee member would preserve and instruct other employees to preserve.***  It is my understanding that each Litigation Committee member determined independently which subordinates should be contacted regarding the preservation efforts and what information regarding preservation should be relayed to each employee.  Any statement to the contrary in my testimony or Irico's interrogatory responses is inaccurate.  Nov 18, 2022, unsworn Yan Yunlong Dec at ¶9.

After providing input on three interrogatory responses regarding Irico's evidence preservation in 2008, Yan Yunlong suddenly changed his story:  (1) recalling that he provided copies of Pillsbury's document advising Irico regarding preservation of documents for the litigation to the Litigation Committee members in August 2008, and (2) not recalling whether the Litigation Committee members discussed specific categories of documents to preserve and instruct other employees to preserve.  This stark backtracking on his earlier repeated

---

[56] Capurro Dec, Ex R (Nov 18, 2022, Yan Yunlong Dec, changing his testimony to state that he printed Pillsbury's legal advice on preservation of documents and provided copies to each of the Litigation Committee members in their meeting in August 2008 and that he did not recall whether they "discussed the specific categories of documents that each Litigation Committee member would preserve and instruct other employees to preserve.").

[57] *Id* at 1.

1  statements that the Litigation Committee misunderstood the scope of the preservation to be

2  limited to documents regarding Irico's CRT sales to the United States, is simply not credible.  To

3  suddenly say "I do not recall" events that had been previously affirmed on four separate

4  occasions, renders Yan Yunlong an unreliable witness.  Since only one note of the Litigation

5  Committee meetings was preserved, there is no evidentiary support for this s changed version

6  of events.

7        Contrary to the detailed, written advice of its counsel Pillsbury in 2008, Irico

8  limited its search and preservation efforts to Irico's sales of CRTs to the United States, which it

9  asserted were not made at the time.  In 2008, Irico ignored its counsel's clear, written advice to

10 search for and preserve information and documents related to "Agreements or Meetings with

11 Competitors" "regarding CRTs or CRT products sold in the United States or worldwide,"

12 "[c]ommunications, agreements or understandings between two or more distributors or

13 resellers of CRTs or CRT products or two or more buyers of CRTs or CRT Products for sale in the

14 United States or worldwide."[58]  As a result, Irico found no need to preserve any documents

15 potentially relevant to this litigation.

16       At first, Irico's reliance on its claimed "misunderstanding" appeared plausible.

17 But after the court found a preliminary showing of spoliation had been made and ordered Irico

18 to produce all attorney-client communications regarding litigation hold and  other  document

19 preservation efforts, including correspondence in its former counsel's files,[59] Irico was forced to

20 produce Pillsbury's 2008 detailed instructions regarding Irico's evidence  preservation

21 obligations.[60]  The Pillsbury communications revealed that Irico had no basis for claiming that

22 from 2008 onward, it misunderstood its duty to preserve potentially relevant documents

23

24        [58] Capurro Dec, Ex H (Annex II to Aug 7, 2008 Memo from Joseph R Tiffany II to Yunlong Yan, IRI-SUPP-000026-27E) (identifying market research, communications or meetings with competitors, distributor and buyer communications re CRTs or CRT Products sold "in the United States or worldwide").

25

26        [59] ECF No 6146 at 10 (1/27/23 Order Approving Special Master's Report & Recommendation on Plaintiffs' Motion to Compel Evidence Preservation Documents).

27        [60] ECF 6148 (2/9/23 Special Master's Report & Recommendation on Irico's Documents Submitted for *In Camera* Review).

28

because from February 15, 2008 through August 18, 2008, Pillsbury provided verbal and detailed written instructions, including a copy of the court's Pre-Trial Order No 1, a comprehensive litigation hold document and instruction that potentially relevant documents included information regarding Irico's global sales of CRTs.[61]  The Pillsbury communications also revealed that Irico's representations to the court and in written interrogatory responses claims that it misunderstood its discovery obligations by not issuing a written litigation hold and by not preserving potentially relevant documents from February 15, 2008 onward, were false.

In November 2022, apparently realizing how damaging this looked, Irico changed its story and filed its Third Supplemental Objections and Responses to IPPs' Third Set of Interrogatories to state:  "Irico no longer contends that its initial efforts to preserve documents in August 2008 were limited solely to documents regarding sales of CRTs to the United States."[62]  The undersigned finds Irico's blatant attempt to change its discovery responses and Yan Yunlong's sworn deposition testimony to be disrespectful of the court and the integrity of these proceedings.

### D.    From 2008 and Throughout This Litigation, Irico Failed to Preserve and Spoliated Its Electronically Stored Information

In 2008, when Irico was forming its Litigation Committee, Yan Yunlong did not instruct Irico to create a mirror image of its computer system and could not recall the Litigation Committee or anyone instructing Irico to create a mirror image[63] or backup of its computer system.[64]  Yan Yunlong also could not recall Irico querying its computer system in 2008 to discover whether any documents existed that were potentially relevant to this litigation.[65]  In 2017, Yan Yunlong did not instruct anyone at Irico to query its computer system to discover

---

[61] Capurro Dec, ¶¶ 4, 5, 7, 9-12 and Exs C, D, F, H-K.

[62] Capurro Dec, Ex S at 26-27 (Nov 23, 2022 Irico's Third Supplemental Objections and Responses to IPPs' Third Set of Interrogatories).

[63] A mirror image of a computer system is an exact copy of everything on the computer's hard drive, including the operating system, applications, data files, user settings and hidden files, used to prevent loss of original data.

[64] Capurro Dec, Ex B at 158-160 (Sept 28, 2002 Yan Yunlong Deposition excerpts).

[65] Capurro Dec, Ex B at 160.

information potentially relevant to this case and did not recall anyone else doing so.[66]  He never instructed anyone at Irico to take a mirror image of Irico's computer system in 2017 and did not know whether anyone else did in 2017.[67]  He was also not aware of any instruction to Irico's IT employees to turn off any auto-delete function on Irico's email system in 2007 and 2008.[68]  Thus, from 2008 to 2017, Irico's head of legal affairs and the primary Irico employee responsible for communications with Pillsbury, Yan Yunlong, never instructed anyone at Irico to search for or preserve potentially relevant Electronically Stored Information on Irico's computer system.

In discovery responses prepared with Yan Yunlong's input, Irico stated that it did not maintain electronic documents in the ordinary course of business during the period 1995 to 2007 because there was no obligation under Chinese law to preserve electronic documents or data.[69]  It should be noted that Chinese law does not displace the requirements of United States law regarding preservation of evidence in this litigation.

Irico admitted that it "regularly overwrote existing electronic data due to limited storage capacity during that time period" and "believes that its servers overwrote email data every three to five days on average due to storage limits for the period including and prior to 2007."[70]  Irico "had a back-end server policy to delete all emails older than 20 days from the time that Irico started using email through at least the end of 2007."[71]  Yan Yunlong testified he was not aware whether Irico's email system had an auto-delete function in 2007, nor did he know whether Irico instructed its IT employees in 2007, 2008 or 2017 to turn off any auto-delete function of its email system.[72]

---

[66] Capurro Dec, Ex B at 163-164.
[67] Capurro Dec, Ex B at 161-162.
[68] Capurro Dec, Ex B at 164.
[69] April 21, 2023 Declaration of Thomas Carter in Support of Irico's Opposition to Plaintiffs' Motion for Sanctions ("Carter Dec"), Ex F at 8 (Irico's July 7, 2021 Fifth Supp Objections and Responses to DPPs' First Set of Interrogatories).
[70] Carter Dec, Ex F at 8.
[71] Carter Dec, Ex F at 11.
[72] Capurro Dec, Ex B at 165.

During the period 1995 to 2007, Irico did not use a networked computer system and did not have any centralized storage systems for electronic documents.[73]  Yan Yunlong testified that the computer that Irico issued to him before 2008 and which he used to draft his meeting minute of the 2008 Litigation Committee, was not connected to the Irico computer network or to any other computers.[74]  The first time Yan Yunlong searched his files for documents to produce in this case was in 2018 when "working on the motion for state sovereign immunity that we were looking for documents for production" and that he looked at his computer hard drive and also paper documents in his personal office files.[75]   Yan testified that before that time, his "computer was actually already disposed of" and he had "kept the hard drive of that computer," "did not have time to look at [the hard drive itself" and "turned over all the information and files kept on [his] hard drive" to Baker Botts, Irico's outside counsel.[76]

Irico admitted that "computers of departed employees and/or older versions of computers were recycled"[77] and "Irico is not aware of whether any of the recycled computers contained:  a) any data whatsoever, b) any documents created in the time period 1995 through 2007, or c) any documents relevant or responsive to any of the discovery requests issued to Irico during the course of this litigation."[78]

Thus, the record reflects that Irico made no efforts to preserve any potentially relevant evidence including ESI from 2008 to the present, failed to search key employees' offices or computers for potentially relevant emails or other ESI, recycled or wiped the

---

[73] Carter Dec, Ex F at 11; Capurro Dec, Ex W at 11 (July 7, 2021 Irico's Fifth Suppl Objections and Responses to DPP's First Set of Interrogatories) ("Irico had a back-end server policy to delete all emails older than 20 days from the time that Irico started using email through at least the end of 2007.").

[74] Capurro Dec, Ex B at 211-212.

[75] Capurro Dec, Ex E at 93-94.

[76] Capurro Dec, Ex E at 94-95.

[77] Capurro Dec, ¶10, Ex H at 8 (Irico's Fifth Supp Objections & Responses to DPPs' First Set Interrogatories).

[78] Carter Dec, Ex F at 8-9.

computers of key departing employees while this litigation was pending and allowed the loss or destruction of ESI that Irico concedes likely existed in 2008.

Irico's failure to preserve also extended to physical evidence.  Yan Yunlong testified that when investigating the facts of the complaint, certain Irico employees told him that they had attended meetings with Irico's competitors, including Liu Maihai, Shen Xiaolin and Liang Yuan.[79]  But Irico "did not conduct any special investigation" into these competitor meetings but rather "simply confirmed whether or not there was such a fact."[80]  At the time when Yan was learning that certain Irico employees had attended meetings with competitors, he failed to conduct any search or investigation of those employees' files, electronic or hard copy, which in 2008, may have contained meeting minutes or notes of Irico's attendance at competitor meetings.  Moreover, Irico in 2008 "conducted an investigation to see if [Irico] actually sold any products in the U.S. market, and the information we got was no," so in 2008, Irico never bothered to do a proper search for potentially relevant documents.  Irico determined that sales reports containing CRT market information, CRT sales contracts, correspondence with customers regarding CRT sales and handwritten working notes by individual employees, including Wang Zhaojie and Wang Ximin, may have been created between 1995 and 2007, were "not preserved in Irico's archives" and that "Irico does not believe that these records were maintained in any systematic format and employees have confirmed that they regularly discarded these materials."[81]

### E.    In 2009, Irico Fired Its Counsel and Disappeared from this Litigation

For eight years, from May 2009 to October 2017, Irico stopped participating in this litigation, directed its counsel to stop representing it and failed to answer or defend against the allegations.[82]  Yan Yunlong testified that Irico dismissed the Pillsbury law firm during the

---

[79] Capurro Dec, Ex B at 117.

[80] Capurro Dec, Ex B at 117.

[81] Capurro Dec, Ex W at 9-10 (Irico's Fifth Suppl Objections and Responses to DPPs' First Set of Interrogatories).

[82] ECF 4725, 4727, 5191 at 2, 730 ¶2 (June 23, 2010 Declaration of Joseph Tiffany, "Pillsbury ceased its representation of the Irico Entities in May 2009.").

second half of 2008.[83]   Meanwhile, this multidistrict litigation proceeded with the nine other

separate defendant groups.  ECF 5191 at 2.

In 2022, answering questions about Irico's 2008 decision to withdraw from this

litigation, Yan Yunlong testified that "Irico was waiting for the plaintiff – or plaintiffs to file a

separate lawsuit against just Irico.  Then we will make corresponding responses."[84]  As

previously noted, Yan Yunlong further testified at length about gathering information to give to

Pillsbury and Irico's thoughts on participating in the litigation.[85]  Irico rejected Pillsbury's advice

to join the defendants group.  Instead, Irico delayed conducting any relevant investigation in

2008 because it believed it would be "unnecessary or pointless" "to conduct any investigation

before a separate or independent lawsuit was filed against [them] by the plaintiffs."[86]  Irico

then withdrew from this litigation because it did not want to be grouped with the other

defendants, who had CRT products in the United States market and a few of whom had pled

guilty to criminal antitrust charges.


### F.   In 2017, Irico Reappeared to Move to Set Aside Default

After years of intensive litigation with the other nine separate defendant groups,

including class certifications, summary judgment motions and approval of settlements with the

nine separate defendant groups, the case was essentially over except with respect to Irico.[87]

---

[83] Capurro Dec, Ex B at 209 (Sept 28, 2022 Yan Yunlong Depo).

[84] Capurro Dec, Ex B at 209-210 (Sept 28, 2022 Yan Yunlong Depo).

[85] Capurro Dec, Ex E at 118-120 (Sept 27, 2022 Yan Yunlong Deposition Vol I).

[86] Capurro Dec, Ex E at 118-120 (Sept 27, 2022 Yan Yunlong Depo Vol I).

[87] *See* ECF 5191 at 6-7 (Aug 14, 2017 DPPs' Application for Default Judgment Against Irico).

1   Due to Irico's long disappearance from the case, Pillsbury's June 23, 2016

2   request that it no longer be required to forward pleadings in this case to Irico and Irico's failure

3   to file an answer, the Clerk entered the default of Irico.[88]

4   On August 14, 2017, plaintiffs filed their motion for entry of default judgment,

5   requesting single damages of $876 million over the twelve-year class period, which when

6   trebled was $2.628 billion.  After subtracting the $212.2 million settlements of the other

7   defendants, Irico's damages liability was $2.4158 billion.[89]

8   Irico returned only after the court's entry of default and a default judgment

9   threatened, by filing a Notice of Appearance by its counsel on September 8, 2017.[90]

10   On October 25, 2017, Irico filed its Motion to Set Aside Default with the Oct 25,

11   2017 Declaration of Wenkai Zhang in support.[91]  Wenkai Zhang declared:

> 2.  From January 2, 2017, through the present, I have served as legal counsel at Irico Group.  My responsibilities include handling litigation and related legal matters.
>
> * * *
>
> 5.  After the Joint Motion to Dismiss was decided, Irico did not file an answer to the DPP's complaint.  Irico's decision not to answer the complaint was not motivated by any intention of taking advantage of the DPPs, of interfering with this Court's decision making, or otherwise manipulating the legal process*.  Irico declined to answer because it believed that Irico Group and Irico Display were immune from suit in the United States.*
>
> * * *
>
> 11.  *I understand that the Class Period in this matter is from March 1, 1995, to November 25, 2007.  Irico is not aware of any sales by Irico of CRT products, including CPT or CDT products, to customers in the United States, either directly or indirectly through a distributor.* (emphasis added)*.[92]*

---

[88] ECF 4727; *In re Cathode Ray Tube (CRT) Antitrust Litigation*, 2018 WL 659084 at *1-2 (ND Cal Feb 1, 2018) (detailed description of events relating to entry of default and Irico's reappearance on September 8, 2017).

[89] *See* ECF 5191 at 7.

[90] ECF 5200.

[91] ECF 5216, 5216-1.

[92] ECF 5215-1 (Oct 24, 2017 Declaration of Wenkai Zhang).

1    But Wenkai Zhang testified that he had no knowledge about events in 2007-

2  2008:  "I involve this – this case since 2017.  So back in 2007 and 2000 – or 2008, whether we

3  have issued such notice, I have no knowledge about it."[93]  Zhang's statement to the court

4  regarding why Irico declined to answer the complaint appears completely at odds with the

5  sworn testimony of his supervisor, Yan Yunlong, who was present during the 2007-2008 period

6  and testified at length about Irico's reasons for exiting the litigation.  *See supra*.  Irico relied on

7  Zhang's statement in arguing its default was not due to bad faith or culpable conduct.[94]  Given

8  the lack of evidentiary support for Wenkai Zhang's assertion in paragraph 5 of his Oct 25, 2017

9  declaration and the conflicting evidence of record,[95] the undersigned finds that Wenkai Zhang's

10  statement that "Irico declined to answer because it believed that [it was] immune from suit in

11  the United States," was without a reasonable basis and a false representation to the court.

12    In paragraph 11 of Wenkai Zhang's sworn Declaration, he states:  "Irico is not

13  aware of any sales by Irico of CRT products, including CPT or CDT products, to customers in the

14  United States, either directly or indirectly through a distributor."  Zhang's statement turned out

15  to be false, in light of Irico's production of documents regarding Caihong sales of Irico's CRT

16  products in the United States during the class period, which it tried to claw back.  ECF 5324 at 4

17  (Aug 20, 2018, Court Order Approving Special Master's Order re DPPs' Motion for Jurisdictional

18  Discovery).  Irico did not dispute the DPP's assertion that the Zhang declaration was

19  "untrustworthy."  *Id.*  This is yet another example of Irico making a false representation to the

20  court.  By August 20, 2018, "there [was] no dispute that United States sales of Irico's CRTs

21  occurred during the class period and these sales [were] relevant to jurisdiction."  ECF 5324 at

22  4:1-2.

---

[93] Capurro Dec, Ex N at 84-85 (Mar 4, 2019 Deposition of Wenkai Zhang).

[94] ECF 5215 at 13-14 (Irico's Motion to Set Aside Default:  "Irico decided not to answer the Complaint after the motion was decided based on a belief that it was immune from suit as a foreign sovereign.  That does not constitute culpable conduct." Citations omitted).

[95] Yan Yunlong's testimony about Irico's 2008 Litigation Committee's decision to abandon the litigation and the Yan Document. Supra, at 4 et seq.

On February 1, 2018, in reliance on Irico's misrepresentations, the court granted Irico's motion, set aside the default and ordered that the DPPs were free to undertake jurisdictional discovery.  ECF 5240.

### G.    Irico Lost Its 2018 Motion to Dismiss for Lack of Jurisdiction and Dropped Its Appeal in 2020

Further skirmishes on Irico's jurisdictional discovery ensued, requiring multiple motions and orders to compel Irico to comply with discovery requests and a discovery order re jurisdictional discovery.  See ECF 6115 at 2-4 (Order Adopting Special Master's Report & Recommendation on Irico's Failure to Produce Su Xiaohua for Deposition, citing ECF 5320, 5331, 5332).

On October 28, 2018, the court denied Irico's motion to dismiss the claims for lack of jurisdiction, holding that the "Court's exercise of jurisdiction over the Irico Defendants is not barred by the Foreign Sovereign Immunities Act."  ECF 5637 at 13.

On November 22, 2019, Irico filed its notice of appeal and moved for a stay pending appeal, which was granted.  ECF 5650, 5651, 5682.

On Oct 27, 2020, Irico filed the Order of the United States Court of Appeals, stating:

> ***Defendants-Appellants filed an unopposed motion to dismiss the appeal (Dkt. 56) on October 23, 2020.***  The motion is GRANTED*.  **Oral argument previously scheduled for December 9, 2020, in San Francisco, California, is hereby VACATED.***   This appeal is DISMISSED with prejudice, and each party shall bear its own costs and fees." (emphasis added) ECF 5861.

By filing its notice of appeal and dropping its appeal weeks before the scheduled oral argument, Irico delayed this litigation an additional year.

On December 18, 2020, the Irico Defendants filed their Answers to the Amended Complaint.  ECF 5872-75.

### H. In 2021, Irico Continued Its Non-compliance with Discovery Obligations

Discovery on the merits proceeded, with numerous discovery motions.  On August 4, 2021, DPPs' motion to compel interrogatory further answers was addressed.  ECF 5944 ("No fair appraisal of Irico's responses to the interrogatories at issue can conclude that these responses are not plainly deficient.").  On January 6, 2022, plaintiffs' motion to compel Irico to provide further responses to interrogatories was granted, identifying multiple inadequacies in Irico's responses.  ECF 5978.  On September 20, 2022, the undersigned recommended granting plaintiffs' motion to admit into evidence eighty-one documents created by Irico's alleged coconspirators for purposes of summary judgment.  ECF 6074 at 8:1-12.  On October 14, 2022, the court overruled Irico's objections and adopted the undersigned's recommendation regarding admissibility of coconspirator documents and statements.  ECF 6093.  On January 13, 2023, plaintiffs' motion to compel depositions of Irico employees Li Miao, Xue Shaowen and Si Yuncong was granted.  ECF 6141.

### I. Irico's Meager Document Productions

After resuming its participation in the litigation in 2017, Irico, under the guidance of new counsel, produced a paltry quantity of document discovery:  33,462 pages of discovery, less than 6% of the pages produced by other similarly sized defendants, such as Beijing Matsushita Color CRT Co Ltd ("BMCC"), a smaller Chinese CRT manufacturer (produced 598,701 pages) and only about 3% of the quantity produced by Chunghwa Picture Tubes, Ltd, which produced 996,514 pages in this litigation.[96]

In contrast to the other CRT defendants, Irico failed to produce entire categories of relevant documents, including:

● no emails from the relevant period from the files of any employees,

● no electronic or hard copy documents from the relevant period from the files of any of its employees,

---

[96] Capurro Dec, ¶24.

1    • virtually no documents relating to the more than 100 meetings that Irico

2    representatives attended during the relevant period, as reflected by other defendants' notes of

3    those meetings;

4    • no correspondence between Irico and its customers regarding CRT sales, no

5    CRT sales contracts with customers,

6    • no weekly or monthly sales and marketing reports that Irico admitted

7    generating on a regular basis;

8    • no production reports from Irico's CRT factories and

9    • virtually no documents reflecting how Irico determined the prices it would

10   charge for its products.[97]

11   Irico's failure to preserve and spoliation of ESI and other information as well as

12   its long absence from this litigation has resulted in loss of virtually all relevant documents

13   bearing on the claims at issue.

14

15   **J.      Irico Repeatedly Failed to Produce Employee Su Xiaohua for Deposition**

16   Irico identified its employee Su Xiaohua as one of the only two employees still at

17   the company who was knowledgeable about:  (1) three of Irico's affirmative defenses and (2)

18   Irico's meetings with competitors during the class period.[98]   At that time and until his

19   "retirement," Su Xiaohua was the regional general manager for the Huanan area of Xianyang

20   Irico Industrial Group Co Ltd.  Su had held high-level positions during the class period, such as

21   Irico Group Sales Deputy General Manager (April 2005 to March 2007), Irico Group Electronics

22   Purchasing Department Deputy and General Manager (March 2007 to August 2013),[99] and was

23   ───────────────
     [97] Capurro Dec at ¶27; ECF 6146 at 8:15-20; ECF 6140 at 3.

24   [98] ECF No 6032-1, July 14, 2022, Capurro Dec, ¶2, Ex A (Irico's Feb 23, 2022, Objections and
     Response to IPPs' Fourth Set of Interrogatories identifying Su as knowledgeable about Irico's Third,
25   Eighth and Tenth Affirmative Defenses) and ¶11, Ex J (Irico's interrogatory responses identifying Su
     Xiaohua as knowledgeable about Irico's meetings and communications with competitors); *see also*
26   Carter Dec, ¶7, Ex G (2/23/22 Irico's Responses to DPP Arch First Set of Interrogatories, Su Xiaohua
     identified as knowledgeable in Responses to Nos 1, 3, 4, 5, 6, 7, 17, 18, 19, 20, 21, 22, 25).

27   [99] Carter Dec, ¶25, Ex Y (Su Xiaohua's Employee Information Registration Form, IRI-CRT-
     00031562_FTE_TRANSLATION).

28

1  named as attending an event hosted by Skyworth and interacting with other CRT

2  manufacturers.[100]

3        On August 26, 2021, plaintiffs requested the deposition of Su Xiaohua.[101]

4        On January 10, 2022, March 18, 2022, and May 25, 2022, the court, pursuant to

5  the parties' stipulation, ordered the deposition of Su Xiaohua and other witnesses.[102]  The May

6  25, 2022, Order specified that the depositions of Su Xiaohua, Wang Zhaojie and Yan Yunlong

7  shall be completed by no later than June 30, 2022.  ECF 6016.

8        Twice before May 25, 2022, Irico had requested and obtained stipulated

9  extensions of the depositions of Su Xiaohua and two other Irico employees.  ECF 6016.  On May

10  20, 2022, Irico submitted a stipulation to the court requesting, *inter alia*, an extension of the

11  deadline for the deposition of Su Xiaohua to June 30, 2022, stating:

12        the Parties previously agreed to modify the existing schedule given the
13        complications arising from the COVID-19 pandemic and to accommodate the
        good faith efforts of the parties, including the deadline to complete the
14        depositions of Irico employees Su Xiaohua, Wang Zhaojie, and Yan Yunlong, and
        the Court approved two such stipulations [ECF Nos. 5980; 5999]; WHEREAS, due
15        to ongoing complications from the COVID-19 pandemic and related controls in
        China, Irico requires additional time to obtain visas to Macau, where the
16        deposition will need to occur via videoconference, and arrange for its
        employees' travel to Macau for depositions.[103]
17

18

19        The May 25, 2022, Stipulated Order, set the new deadline for Su Xiaohua's

20  deposition for no later than June 30, 2022.[104]  The August 22, 2022, Stipulated Order (ECF 6056)

21  nowhere mentioned Su Xiaohua and therefore did not alter the May 25, 2022, Order with

22  respect to Su Xiaohua.

23

24        _____

    [100] ECF 6032-1 at 180:10-17.
25    [101] ECF 6032 at 6:4 (July 14, 2022, Plaintiffs' Opposition to Irico's Emergency Motion for Relief
    from Scheduling Order); ECF 6027 at 6:12-15.
26    [102] ECF 5980, ECF 5999 and ECF 6016, respectively.
    [103] ECF 6015 at 2.
27    [104] ECF 6016 at 1.

28

On June 7, 2022, after four extensions of time, a change of venue and extensive negotiations due to COVID-19 quarantine restrictions, Irico informed plaintiffs that Mr Su had resigned and "Irico has no ability to require Mr. Su to travel to Macau for the deposition."[105]

**K.      Irico's Emergency Motion for Relief from Scheduling Order on Last Day for Su's Deposition**

On June 30, 2022, the day specified in the May 25, 2022 Order as the last day for Su Xiaohua's deposition, Irico filed its Emergency Motion for Relief from the May 25, 2022 Scheduling Order, explaining that "Mr Su recently resigned from Irico and has indicated that he is not willing to travel to Macau for a deposition."[106]   In support of its motion, Irico filed the Declaration of Zhang Wenkai (ECF No 6027-3) (Zhang Dec), attesting that Su "formally resigned from Irico on May 25, 2022" and that Zhang Wenkai "contacted Mr. Su and learned that Mr. Su resigned because he refused to travel to Macau for a deposition given the severe quarantine requirements that he would face upon his return to mainland China (21+7 Policy) and his ongoing care of his elderly mother."[107]

On August 11, 2022, the court heard oral argument on Irico's emergency motion and ruled from the bench, finding that (1) Irico failed to establish good cause for emergency relief from the May 25, 2022, order and (2) Irico's delay in producing these witnesses "unquestionably causes injury to plaintiffs and also injury and inconvenience to the Court."[108] The Court ordered that if the witnesses do not appear for deposition by September 9, 2022, the parties shall file a document setting forth the legal consequences of those witnesses' failure to appear.[109]  Thus, the Court denied Irico's motion for relief.  Thereafter, Irico never produced Su Xiaohua for deposition.

---

[105] ECF 6027-1, Declaration of Evan Werbel, ¶11, ECF 6027-2, Ex 9 (June 7, 2022 email).
[106] ECF 6027 at 2, n 2.
[107] ECF 6027-3 at ¶6.
[108] ECF 6027, page 12:24 – page 13:1.
[109] ECF 6027

In light of the court's August 11, 2022 order, the undersigned finds that Irico's failure to produce Su for deposition by June 30, 2022, violated the court's May 25, 2022, order.[110]  Because Irico also did not present Mr Su for his deposition by September 9, 2022, as ordered by the court on August 11, 2022, the undersigned finds that Irico violated the court's August 11, 2022 order as well.[111]

**L.**     **Legal Consequences for Irico's Failure to Produce Su Xiaohua for Deposition**

On October 26, 2022, the parties submitted their joint brief regarding the legal consequences of Irico's failure to present Su Xiaohua for deposition.  ECF 6101.  Their joint brief acknowledged that the court's August 11, 2022 order denied Irico's emergency motion for relief from scheduling order.

Noting that Su was a 40-year Irico employee that Irico's interrogatory answers identified as one of only two current employees knowledgeable about its participation in the conspiracy and its key defenses, plaintiffs requested the court  to preclude Irico from pursuing any affirmative defenses as to which it asserted in sworn interrogatory answers that Su is a person with knowledge.[112]  Plaintiffs argued that:  (1) Irico violated multiple court orders requiring Su to be deposed by a date certain, (2) Irico acted in bad faith by seeking extensions of time for Su's deposition while knowing but not disclosing that he intended to resign, and (3) plaintiffs were severely prejudiced because Su's work history and Irico's discovery responses indicate that he has information relevant to the claims and defenses in this case and Mr Wang and Mr Yan, the two witnesses Irico did produce for deposition, disclaimed knowledge or recollection of key events and facts of critical importance in this case.  ECF 6101 at 1:17-2:5.

In its part of the joint brief, Irico contended that plaintiffs' argument "misstates facts and attempts to ascribe bad faith where none exists."  Irico further argued:

---

[110] ECF 6016.

[111] ECF 6047 at 13: 10-14.

[112] ECF 6101 at 1:11-16.

> ***While Irico knew that Mr. Su – just like the other witnesses who appeared – was unhappy about these conditions, it did not know in advance that Mr. Su planned to resign.*** This was because Mr. Su – just like the other witnesses who appeared – cooperated fully with the process required to obtain the travel visas, discussed dates for depositions, and otherwise demonstrated a willingness to be deposed but for the quarantine conditions.  When Irico's in-house counsel learned of Mr. Su's resignation on May 31, 2022, ***Irico tried to convince Mr. Su to reverse his decision***; Irico informed Plaintiffs promptly once it was clear that he would not do so. ECF 6101 at 9:7-17 (emphasis added).

On November 1, 2022, the court issued its order referring the parties' dispute on the legal consequences of Irico's failure to produce "Su Xiaohua, a former Irico employee, to appear for deposition" to the undersigned.[113]

On December 6, 2022, the court ordered additional discovery into Su Xiaohua's "retirement" from Irico due to "Irico's failure to support with evidence its argument that Su Xiaohua was outside of Irico's control or has no ongoing relationship with Irico or any of its related entities."[114]  The Su Order also stated:  "the parties may submit motions for sanctions for any discovery misconduct throughout the history of this case," in particular "for Irico's failure to comply with the court's orders that Su's deposition be taken."[115]

On December 20, 2022, Irico produced electronically 32 documents totaling 141 pages in response to the Su Order.[116]

On March 20, 2023, Plaintiffs filed their Motion for Sanctions, asserting four principal grounds:  (1) Irico's violation of the court's Pretrial Order No 1 (ECF No 230) requiring a litigation hold on documents at the outset of the case; (2) Irico's disappearance from the litigation for eight years during which the litigation proceeded against other defendants and plaintiffs' inability to obtain discovery from Irico personnel who had personal knowledge of Irico's conduct during the relevant time period; (3) false representations to the court that

---

[113] ECF 6107.

[114] ECF 6115 at 11-13 ("Su Order").

[115] ECF 6115 at 13.

[116] Nov 15, 2023 Plaintiffs' Letter at 4 (citing Nov 16, 2023 Declaration of David Y Hwu ("Hwu Dec"), ¶4).

persuaded the court to lift a default order for Irico's disappearance from the litigation; and (4) violations of discovery orders.[117]  Irico responded that "[w]hen the thick layer of hyperbole that envelopes Plaintiffs' motion is peeled away and the fact and legal precedents are closely examined, there is no factual basis for to support Plaintiffs' extraordinary request."  Apr 21, 2023 Taladay Letter at 1.

On July 19, 2023, a hearing was held on Irico's compliance with the Su Order.  In response to the Su Order, Irico had produced only two documents shedding light on when Irico first knew of Su's resignation:  (1) Su's "Resignation Report" dated either March or May 25, 2022, and (2) an Irico Group Meeting Minute approving Su's request to leave his position "ahead of schedule," dated April 7, 2022.  ECF 6264, at 5:10-6:23.  Irico did not dispute that these two were the only documents they produced that mentioned Su's resignation and were dated before June 7, 2022, the date Irico informed Plaintiffs of Su's resignation.  ECF 6264 at 6:15-23.  In colloquy between the undersigned and Irico's counsel, it became apparent that Irico's counsel believed, to the best of their knowledge, that all documents responsive to the categories in the Su Order had been produced, based exclusively on asking Irico for such documents and it was United States counsel's understanding that no other documents existed.[118]  Further, Irico's United States counsel expressed that Su had given them every reason to believe he intended to travel to Macau to be deposed since he was cooperating with them on efforts to obtain his visa and that his resignation and departure on May 25, 2022, was a "huge surprise."  ECF 6264 at 7:5-10.

**M.     Irico's Failures to Comply with the Su Order and the First Interim Order**

On August 4, 2023, the undersigned found that Irico had failed to comply with the Su Order and ordered Irico's lead United States counsel, Baker Botts, to supervise a proper document search at Irico, to take possession of, for forensic analysis and recovery, all of Su's

---

[117] Plaintiffs' March 20, 2023 Sanctions Letter.
[118] ECF 6264 at 7:1-5.

electronic devices used during his employment at Irico by no later than September 1, 2023, and to provide a declaration based on personal knowledge regarding steps taken and persons involved.[119]  Irico was warned that its "continuing failure to comply with discovery orders risks terminating sanctions as well as less severe sanctions."[120]

On August 29, 2023, two days before its deadline to produce Su's laptop to its United States counsel, Irico informed the undersigned that it had not provided Su's computer and devices to its United States counsel for review and instead placed the responsibility with Chinese counsel and a Chinese forensic technology vendor.[121]

On September 1, 2023, the undersigned issued a report and recommendation warning Irico that its proposal would place discovery in the hands of unqualified, unnamed individuals with no known understanding of United States discovery and legal standards and would constitute a violation of the First Interim Order.[122]  Irico was "again warned that the consequence of repeatedly violating court orders includes terminating sanctions and lesser but still severe sanctions."  ECF 6324 at 6.

On October 9, 2023, Irico's counsel provided an update on Irico's compliance with the First and Second Interim Orders, and requested a further extension of time for completion of Irico's response to the Orders, to October 23, 2023.  Oct 9, 2023, Taladay Ltr at 1. Irico's counsel stated that since the Second Interim Order (dated September 1, 2023), a Baker Botts attorney of record traveled to China with a bilingual United States-based forensic collection specialist from a United States discovery vendor, took physical custody of Su's former laptop and oversaw the imaging and forensic analysis of all recovered files.  Oct 9, 2023 Taladay Letter at 2.

---

[119] First Interim Order ECF 6264 at 6 - 9.

[120] ECF 6264 at 7.

[121] August 29, 2023 Young Letter re Irico's steps to comply with the Order's September 1, 2023 requirements; *see also* Second Interim Order, ECF 6324 at 4.

[122] Second Interim Order, ECF 6324 at 4.

By August 4, 2023, Irico knew that the court had ordered Baker Botts to take possession of Su's laptop by September 1, 2023, but ignored that order and devised its alternative plan to have the laptop analyzed by unknown individuals with unknown qualifications, and informed the undersigned a few days before the deadline, asking for clarification.  Aug 29, 2023 G Young Letter.  For the first time, Irico raised the concern about screening the documents for Chinese "state secrets" before production, causing months of delays.  *Id.*

The undersigned finds that Irico intentionally flouted the court's Su Order by producing only a few curated documents and the First Interim Order directing it to provide physical possession of all of Su's electronic devices used during his employment to its United States counsel, and intentionally caused further delays in the production of relevant documents that should have been produced months ago.  These documents, regarding Irico's first awareness of Su's resignation, Irico's efforts to comply with the order to produce Su for deposition and Irico's continuing control or persuasive influence with Su Xiaohua, should have been searched for and produced in response to the Su Order, issued on December 6, 2022, more than eight months before the September 1, 2023 First Interim Order.  *See* ECF 6115, at 11-13.  But Irico chose not to produce the documents ordered in the Su Order and instead told its United States counsel that only a few documents existed.  Due to the paucity of documents produced, the undersigned doubted that Irico had produced all responsive documents.  Only after Irico's United States counsel was ordered to conduct proper searches, including of Su's laptop, did Irico find and produce more responsive documents shedding light on whether Irico had control over Su in June 2022 when his deposition was scheduled.  The undersigned finds that Irico willfully and in bad faith violated the Su Order (ECF 6115) and the First Interim Order (ECF 6264) with the intention of concealing the truth from the court and plaintiffs.

N.     **Irico's Newly Produced Documents Reveal Its Prior Misrepresentations About Su's Resignation**

After conducting further court-ordered searches, Irico's United States counsel discovered additional documents and produced them.  On October 13, 2023, Irico produced 135 documents totaling 233 pages, containing Bates-stamped documents IRI-SU-000142 through IRI-SU-000374.[123]  On October 23, 2023, Irico produced electronically 484 documents totaling 1,171 pages, containing Bates-stamped documents IRI-SU-00375 through IRI-SU-001545.[124]  On March 25, 2024, Irico produced more documents pursuant to the court's orders regarding Irico's failure to produce Su Xiaohua for his court-ordered deposition in June 2022. ECF No 6351, as modified and adopted by ECF No 6357.

These newly discovered documents disclose that Irico made a number of false or misleading representations to the court regarding its failure to produce Su for his deposition in June 2022.

First, on June 30, 2022, Zhang Wenkai, Irico's Deputy General Counsel for Irico Group submitted his declaration in support of Irico's Motion for Relief (ECF 6027-3), declaring:

> 6. *Su Xiaohua formally resigned from Irico on May 25, 2022.  I contacted Mr. Su and learned that Mr. Su resigned because he refused to travel to Macau for a deposition given the severe quarantine requirements that he would face upon his return to mainland China (21+7 Policy) and his ongoing care of his elderly mother.*
> 7.  On June 8, 2022, Irico received visas authorizing Wang Zhaojie, Su Xiaohua and Yan Yunlong to travel to Macau for the depositions.  (emphasis added) ECF 6027-3 at ¶¶6-7.

Second, Irico's counsel represented that:  "After applying for visas for its witnesses to travel to Macau in the midst of the pandemic, one of its potential witnesses, Su Xiaohua, resigned from the company rather than endure the required quarantine."  ECF 6027 at 3 (citing Zhang Declaration).

Third, Irico represented to the undersigned:

---

[123] Hwu Dec, ¶5.
[124] *Id.*

The reality is that Irico never violated a court order and worked cooperatively with Plaintiffs and Mr. Su to arrange for his deposition *right up to the time he resigned – months earlier than anticipated – and terminated all relationships with Irico.  At that point, Mr. Su became a former employee outside of Irico's control, and Irico's determined efforts to convince him to appear for deposition were unavailing.*  (emphasis added).[125]

To test Irico's assertions that Su resigned on May 25, 2022 and terminated all relationships with Irico such that Su became a "former employee outside of Irico's control" and that Irico made efforts to convince him to appear for his deposition, the undersigned repeatedly ordered Irico to produce documents relating to its assertions.[126]

But Irico's documents produced after multiple court orders and extensions of time reveal that Su did not resign and terminate all relationships with Irico on May 25, 2022. Instead, Su continued his work at Irico with other Irico employees in June and July 2022.[127]  It was not until June 17, 2022, that Irico identified Su's successor and July 28, 2022, when the Shareholders' Meeting of Irico (Foshan) Flat Panel Display Co, Ltd resolved "to dismiss Su

---

[125] April 21, 2023 Irico Opposition to Plaintiffs' Motion for Sanctions at 27.

[126] ECF 6115 (12/6/22 Order re Irico's Failure to Produce Su Xiaohua for Deposition, "Su Order"), ECF 6264 (8/21/23 Order re Interim Report & Recommendation on Plaintiffs' Motion for Sanctions, "First Interim Order") (finding that Irico did not adequately comply with the Su Order, having produced only two documents dated before June 7, 2022, mentioning Su's resignation), ECF 6324 (10/3/23 Order Approving as Modified Special Master's Second Interim Report & Recommendation on Plaintiffs Motion for Discovery Sanctions, "Second Interim Order") (stating that Irico's failure to produce Su's laptop to Irico's lead United States counsel, Baker Botts, for forensic analysis and recovery by October 13, 2023 would be a violation of the First Interim Order), and  ECF 6357 (2/20/24 Order re Discovery Search Terms and Extension of Time).

[127] *See* Hwu Dec, Ex R (IRI-SU-001454E_TRANSLATION) (on June 7, 2022, Irico employee Zhu Quilan requested "GM [General Manager] Su" approve applying the company seal for a digital certificate application and Su replied "Okay"); Ex P (IRI-SU-000177E_TRANSLATION) (on June 16, 2022, a Chat Message between an unspecified Irico employee and Su Xiaohua discussed drinks and a dinner reservation for 4 people that evening at a seafood restaurant in Jida, Zhuhai); Ex Q  (IRI-SU-000188E_TRANSLATION) (a July 15, 2022 chat message between Su and General Manager Wang, in which Su stated:  "GM Wang, my secretary sent out the financial authorization slip last Friday.  It should arrive by tomorrow.  Please pay attention to check and accept." GM Wang replied:  "Okay, GM Su."). Thus, Su continued to work at Irico with his secretary and other employees, including General Manager Wang, through June and July 2022.

Xiaohua from his position as a company director."[128]  Thus, it appears that Su remained in

Irico's employ through June and July of 2022.  As late as September 20, 2022, Su received a text

from an Irico employee who sent a "Draft Reply for the South China Region.zip 473.8KB," to

which Su replied: "Received, thank you!"[129]  Later exchanging text with the same employee, Su

texted a document entitled "Situation Explanation (1).docx 16.3KB  *WeChat desktop version"

and wrote:  "Check if that's okay."[130]  Thus, Su was not only employed by Irico past his

scheduled deposition date in June of 2022, but he was within Irico's control.  Irico's false

representations to the contrary demonstrate its flagrant bad faith, its intentional concealment

of the truth and its callous disregard for this court and the litigation process.

Irico also stated that "Irico did everything that it could to secure the testimony of

Mr. Su and had every expectation that he would appear for a deposition up until the time of his

resignation."  April 21, 2023 Taladay Letter at 3.  Irico's evidence of doing everything it could

was merely to work with Su to obtain his visa for the Macau deposition up until May 25, 2022.

Irico has produced no evidence to support that it did everything it could to secure Su's

testimony after his purported resignation on May 25, 2022.  There are no documents

requesting Su to appear for his deposition or offering any incentives or bonuses for Su to

appear for his deposition, such as those Irico offered to its two other witnesses, Wang and Yan,

as set forth in Zhang Wenkai's Declaration.[131]  Contrary to Irico's representation of surprise,  its

recently produced internal documents reveal that its top executives, Chairman Si Yun-Cong and

General Manager Yang Yuan Jiang, both approved on April 7, 2022, Su's request for early

retirement ("ahead of schedule") before December 2022,[132] and also approved the legal

---

[128] November 16, 2023 Taladay Letter at 3, Att J (IRI-SU-000208_E – IRI-SU-000210E).

[129] Hwu Dec, Ex O (IRI-SU-000199E_TRANSLATION and IRI-SU-000165E_TRANSLATION).

[130] Hwu Dec, Ex O (IRI-SU-000199E_TRANSLATION and IRI-SU-000165E_TRANSLATION).

[131] ECF 6027-3 at ¶10 (June 30, 2022 Declaration of Zhang Wenkai, describing Irico's offer to double the witnesses' normal pay rate and a bonus financial incentive for over one-month).

[132] Capurro Dec, ¶50, Ex TT (IRI-SU-000137-140E, certified translation of IRI-SUPP-40 entitled "Irico Group Co., Ltd. Meeting Minutes," listing attendees as including "Chairman Si Yun-Cong" and "Chief Executive Officer Yang Yuan Jiang" at a meeting on April 7, 2022, and stating:  "Because he himself submitted a request to leave the position ahead of schedule, after discussion, it has been agreed

department's January 2022 request for Su to travel abroad for his deposition.[133]  Thus, it appears that Irico's top executives knew full well that they would allow Su to "resign" early and had no intention of requiring him to be deposed, despite their control over Su throughout his employment, including through June and July of 2022.

The undersigned finds that Irico's misrepresentations to the court reflect an intentional effort to conceal the true facts regarding Irico's control over Su and ability to present him for deposition, resulting in extensive delays, unnecessary time, effort, briefing, hearings and court orders to uncover the falsity of Irico's representations and bad faith litigation misconduct.  The undersigned finds that Irico's multiple violations of court orders in failing to produce Su for deposition and in failing to produce documents regarding Su has caused significant prejudice to plaintiffs and the court.

Contrary to Irico's contention that Su "was in no way a key witness to the relevant facts of the case such that a determination on the merits is made impossible by his absence,"[134] this court has already found that "Su Xiaohua was an Irico Group general manager of purchasing and sales for at least eight years during the class period, has personal knowledge of matters that are highly relevant to this litigation and is likely the only Irico witness with personal knowledge of key facts an events," including attending a competitor meeting hosted by Skyworth.[135]  Su was also one of only two remaining Irico employees designated by Irico as having knowledge about Irico's defenses.  Irico's bad faith misconduct deprived plaintiffs of the testimony of an important Irico witness whose testimony would have provided information regarding Irico's CRT sales and attendance at competitor meetings during the class period, which go to the heart of the claims here.

---

that Su Xiao Hua may leave the position ahead of schedule after reaching upper age limit for employment [March 2022]."); *see also* Nov 11, 2023 Taladay Letter at 1, Att B (April 7, 2022 meeting note of Irico Group's leadership, IRI-SU-001254E at 278E).

[133] May 26, 2023 Saveri Decl ISO Plaintiffs' Reply Motion for Sanctions, ¶¶19-20, Exs 17 and 18 (IRI-SU-000129 and 130)

[134] Nov 28, 2023 Taladay Suppl Letter Brief re Plaintiffs' Motion for Sanctions at 1.

[135] ECF 6115 (Dec 6, 2022 Su Order).

1          Irico's argument that "there was no moment in time at which Mr. Su was both

2   willing and legally able to travel for his deposition such that Irico refused to produce him for

3   deposition" is nonsensical because Su was employed by and within Irico's control in June 2022,

4   when his deposition was to be held, and by which time, Irico had received Su's visa to travel to

5   Macau for his deposition.

6          The undersigned finds that Irico violated the court's May 25, 2022 order[136]

7   requiring Su's deposition by June 30, 2022,[137] by not producing Su for deposition by that date

8   and by failing to demonstrate good cause to set aside that order.[138]  The undersigned concludes

9   that the court's resetting of the deposition deadline to September 9, 2022, was a practical

10  order that did not excuse Irico's violation of the May 25, 2022 order, in light of the court's

11  finding that "the delay in the production of these witnesses unquestionably causes injury to the

12  plaintiffs and also injury and inconvenience to the Court."[139]

13         The undersigned finds that Irico also violated the court's August 11, 2022 order

14  requiring the depositions of Irico witnesses to occur by September 9, 2022.[140]

15         The undersigned finds that Irico's repeated failures to produce Su Xiaohua for

16  deposition in violation of multiple court orders were fully within Irico's control and are yet

17  another example of Irico's bad faith strategy to obstruct plaintiffs' ability to discover key

18  underlying facts necessary to prove their case.

19         These newly produced documents reveal that Su did not leave his employment

20  at Irico on May 25, 2022, as represented by Irico's counsel.  Su was not dismissed as a director

21  of Irico (Foshan) Flat Panel Display Co, Ltd until after July 28, 2022, well after his purported

22  departure, well after the scheduled date of his deposition (in June 2022) and receipt of a visa to

23  travel to Macau for his deposition.  Su continued to work for Irico, as late as September 2022,

---

[136] ECF 6027.

[137] See ECF 6115 (12/6/22 Order at 8)

[138] ECF 6047 (8/11/22 Order in Transcript of Zoom Proceedings at 12:10-13:6).

[139] ECF 6047 at 12:24-13:1.

[140] ECF 6047 at 13:10-22.

when he exchanged documents with an Irico employee.  Irico's human resources employee considered Su "in-service" despite having "officially retired in July."[141]

Irico continued paying Su well after July 2022.  In January 2023, Irico paid Su an annual award and holiday bonus for 2022.[142]  In August 2023, Irico paid Su a salary as a business manager and "Mid-Long Term Contract Worker[s]."[143]  In August 2023, Su is described as serving as director of Sichuan Century Shuanghong Display Devices Co Ltd, a company that appears related to Irico.[144]

Based on these Irico documents, the undersigned finds that:

(1) Irico could have required Su to remain on duty until December 2022, his legally appropriate rest period, but instead facilitated Su's purported "early retirement," by approving his request on April 7, 2022.

(2) Irico failed to produce any evidence after May 25, 2022 in support of its claim to have attempted to persuade Su to have his deposition taken in this case.

(3) Irico considered Su "in-service" and continued paying Su through at least August 2023.

---

[141] Nov 16, 2023, Hwu Dec, Ex F (IRI-SU-0001356E) (February 24, 2023, text messages between Irico Foshan Admin and Human Resources Director Xu Jinmei indicate that Su was believed to have "officially retired in July," but he was "still considered in-service.").

[142] Nov 16, 2023 Hwu Dec, Ex J (IRI-SU-000421-23E_TRANSLATION) (January 16, 2023 document with Annual Awards and Holiday Bonus amounts paid to Su Xiaohua for 2022, noting that "Su Xiaohua left his post on June 17, 2022.").

[143] Nov 16, 2023, Hwu Dec, Ex K (IRI-SU-0001467E_TRANSLATION) (A document titled "Managers and Business Managers of the Comprehensive Department II and Finance Staff, South China Region – Mid-Long Term Contract Workers Salary Sheet 1 for August 2023," provided amounts of Su's Gross Salary, Education Allowance for In-Service, Seniority Pay, Communication Expenses, Housing Subsidy, a Living Allowance and Health Care for Su Xiaohua with a "Performance Score" listed as "Departure from Post.").

[144] Nov 16, 2023, Hwu Dec, Ex S (IRI-SU-001450E_TRANSLATION) (On August 18, 2023, there are communications among Guo Xiaojun, Shi Feng, reporting that:  "Currently, Ye Shuangxi serves as the supervisor of Hefei IRICO Epilight Industry Co., Ltd.; . . . Su Xiaohua serves as a director of Sichuan Century Shuanghong Display Devices Co., Ltd." ).  In 2014, Irico Group Corp agreed to acquire a 20% stake in Sichuan Century Shuanghong Display Devices Co., Ltd from Irico Group Electronics Co Ltd on May 30, 2014. May 30, 2014, S&P Capital IQ article on MarketScreener website; https://www.marketscreener.com/quote/stock/IRICO-GROUP-NEW-ENERGY-CO-6165884/news/IRICO-Group-Corporation-entered-into-an-agreement-to-acquire-a-20-stake-in-Sichuan-Century-Shuangho-38703041/.

(4) By the date of Su's scheduled deposition in June 2022, Su was still employed by Irico and Irico could have required him to appear for his deposition but did not to do so.

(5) Irico intentionally submitted to the court a false sworn declaration that Su formally resigned on May 25, 2022, and attorney representations that Irico had no control over Su due to his resignation from Irico on May 25, 2022.

(6) Irico intentionally failed to comply with its discovery obligations and numerous court orders to delay the litigation, obstruct discovery and hide the true facts regarding its employment of and control over Su at the time of his scheduled deposition in June 2022;

(7) Only after being ordered to have its United States counsel take primary control over and responsibility for a search for responsive documents set forth in the Su Order, did Irico finally produce documents showing that Su continued working for Irico well after May 25, 2022, after his scheduled deposition of June 30, 2022, was never provided any inducements to attend his deposition, and by August 2023, Su appears to have found employment as a director in a company related to Irico.

These facts disclose in full color the systematic nature of Irico's bad faith and willful flouting of its obligations to conduct this litigation in a manner that would allow a fair trial in this case. With Su's failure to appear for deposition, there is no one left at Irico who was present at Irico during the class period who can testify about Irico's participation at competitor meetings. The only other remaining Irico employee who admittedly attended many competitor meetings, Zhao-Jie Wang, was extremely evasive during his deposition and repeatedly claimed that he did not remember or did not know many facts, even that he had attended meetings with Chunghwa, a topic that he had discussed in his prior deposition.[145]

---

[145] May 8, 2023 David Y Hwu Declaration in support of Plaintiffs' Supplemental Submission re Admissibility of Co-Conspirator Documents and Statements, ¶4, Ex 2 at 12:11-25, 13:1-10, 15:19-16:21, 18: 5-19:23 (September 21, 2022, Wang Zhao-Jie Deposition Transcript).

1    Irico's many delays, misrepresentations, and spoliation or concealment of

2   relevant documents have frustrated the entire litigation process, to Irico's benefit.  There are

3   no Irico documents or witnesses available to shed light on Irico's participation in many

4   meetings with competitors during the class period.  The undersigned finds that given Irico's

5   ongoing, systematic spoliation of documents, failures to search for relevant documents,

6   misrepresentations to the court, unnecessary and inappropriate delays and repeated violations

7   of court orders, Irico's litigation misconduct renders a fair trial in this case impossible.

8

9        **O.    Irico's Spoliation of Evidence**

10    Irico failed to issue a litigation hold of any kind for eight months after being

11   served with the complaint and six months after its outside counsel specifically advised it to

12   preserve evidence relating to this litigation.  Irico never attempted to make a backup or mirror

13   image of its computers in order to preserve ESI.   Irico never suspended its email system's

14   overwriting of existing emails.  Throughout this litigation, Irico "recycled" computers used by its

15   key employees who had knowledge of CRT sales and production during the relevant period

16   when they left the company.  Recycling entails wiping the computer clean and either assigning

17   it to a new employee or discarding it.  Irico did not search the offices of its key employees and

18   preserve any of their documents before they left the company.  Now only one percipient

19   witness to Irico's attendance at competitor meetings remains and his deposition testimony was

20   not forthright.  Irico's claim of being unfamiliar with United States discovery is unbelievable,

21   especially in light of the documents produced regarding Irico's evidence preservation efforts.

22   These documents reveal that in February 2008, Irico's outside counsel, Pillsbury, specifically

23   warned it about the severe consequences of failing to preserve evidence, and shortly

24   thereafter, Pillsbury forwarded a copy of the court's Pretrial Order No 1, setting forth the

25   parties' duties to preserve evidence.  But Irico did nothing until August 2008 when its Litigation

26   Committee met to discuss the case.  And Irico's witness from the time period testified that in

27

28

1    2008, there was no need to conduct an investigation until Irico was separately served in a

2    complaint identifying them as defendants.  How they came up with that idea is mystifying.

3            Even when Irico's Litigation Committee met in August 2008 regarding Pillsbury's

4    instructions to search for and preserve evidence, Irico's implementation failed to follow

5    Pillsbury's advice to issue a written litigation hold notice to all employees who may have

6    potentially relevant information.  Instead, at best, a copy of Pillsbury's draft litigation hold

7    notice was handed to Litigation Committee members and they were tasked with speaking with

8    their colleagues, with no apparent follow up since the legal affairs employee never knew what

9    happened regarding the Litigation Committee's evidence preservation efforts after that.  They

10   also failed to follow Pillsbury's instruction to search for and preserve documents regarding

11   communications or meetings between Irico employees and competitors "regarding CRTs or CRT

12   products sold in the United States or worldwide." [146]  Instead, Irico's original sets of discovery

13   responses and witness testimony indicated that Irico interpreted the scope of the litigation hold

14   to relate to its sales of Irico's CRTs into the United States, which at the time, Irico did not do.

15           As a result of Irico's ongoing failures to preserve evidence, it is not surprising

16   that their document productions have been so sparse and unhelpful.  The undersigned finds

17   that Irico intentionally and in bad faith rejected its outside counsel's advice to preserve

18   evidence, rejected the court's Pretrial Order No 1, knowingly permitted the ongoing destruction

19   of evidence by recycling computers of departing employees,[147] failing to preserve documents

20   from the offices and electronic devices of departing key employees, failing to issue a written

21   litigation hold to all key employees, and failing to implement a litigation hold of appropriate

22   scope to include global sales of Irico's CRTs.  Irico's repeated claims of lack of understanding of

23   United States discovery obligations are belied by the clear, written instructions of its counsel in

---

24   [146] Capurro Dec, Ex H (Annex II to Aug 7, 2008 Memo from Joseph R Tiffany II to Yunlong Yan, IRI-
25   SUPP-000026-27E) (identifying market research, communications or meetings with competitors,
       distributor and buyer communications re CRTs or CRT Products sold "in the United States or
26   worldwide").
       [147] Irico continued its policy of recycling computers of departing employees as recently as June
27   15, 2022, when it reformatted Su Xiaohua's laptop and repurposed it for his successor.  Hwu Dec, Ex A,
       10/23/23 Taladay Declaration, ¶10.

28

2008. By ignoring its duty to preserve, Irico spoliated entire categories of highly relevant documents that are known to have existed, such as minutes or summaries of competitor meetings drafted by Irico sales managers and other attendees during the relevant period. Irico's attempt to change its discovery responses and witness testimony after production of 2008 documents from Pillsbury reveals a bad faith attempt to cover up its spoliation with yet a new story.

**P.    Summary of Irico's Violations of Court Orders**

The undersigned finds that Irico violated at least five court orders:

(1) Pretrial Order No 1, ECF 230, by failing to take reasonable steps to preserve evidence, waiting eight months to discuss a litigation hold and failing to issue a written litigation hold, not taking a mirror image of computers or stopping automatic overwriting of emails, recycling computers and discarding them throughout this litigation, and not preserving evidence regarding Irico's global sales of CRTs, resulting in mass spoliation of relevant evidence.

(2) The Stipulated Scheduling Order, ECF 6016, by failing to present employee Su Xiaohua for his deposition on June 30, 2022, as specified in the order.

(3) The court's August 11, 2022, ruling from the bench, ECF 6047, that the three Irico witnesses (including Su Xiaohua) "will appear within four weeks of today for their deposition . . . We will make it by September 9, 2022," by failing to present Su Xiaohua for his deposition by that date.

(4) The Su Order, ECF 6115, ordering discovery into Su's "retirement" from Irico due to Irico's failure to support with evidence its argument that Su Xiaohua was outside of its control or has no ongoing relationship with Irico or any of its related entities, by producing only 32 documents that failed to

1   shed light on Irico's first awareness of Su's plan to retire and whether Su

2   was truly outside of Irico's control.

3       (5)   The First Interim Order, ECF 6264, ordering Irico to produce to its counsel,

4   Baker Botts, for forensic analysis and recovery, all of Su's electronic devices

5   used during his employment at Irico no later than September 1, 2023, by

6   blatantly and intentionally refusing to comply until being ordered to do so

7   with a warning that repeated violations of court orders risked terminating

8   sanctions.

9

10   **Q.**    **Facts regarding Irico's Involvement in the CRT Conspiracy**

11       As discussed above, in 2007, the United States Department of Justice

12   investigated a number of international producers of CRTs for their participation in a wide-

13   ranging conspiracy.   By May 2011, Samsung SDI pled guilty to CRT price-fixing from January

14   1997 to March 2006.[148]  On February 10, 2009, Chunghwa's chairman and CEO, Cheng Yuan Lin,

15   was charged in a two-count indictment for conspiring between 1997 and 2003 to fix prices,

16   reduce output, and allocate market shares of CRTs in violation of Section 1 of the Sherman

17   Act.[149]  On November 17, 2015, Chunghwa's director of sales, Chung Cheng Yeh (aka Alex Yeh),

18   pled guilty to CRT price-fixing.[150]  Former executives of co-conspirators Chunghwa, Chunghwa

19   Picture Tubes, Ltd, Samsung SDI  and LG Philips Displays Co, Ltd were indicted for CRT price-

20   fixing:  Wen Jung Chen aka Tony Cheng, indicted August 18, 2009;[151] Seng-Kyu Lee aka Simon

21   Lee, indicted on November 9, 2010;[152] Yeong-Ug-Yang aka Albert Yang, indicted November 9,

22   2010;[153] and Jae-Sik Kim, indicted November 9, 2010.[154]  *See* ECF 6074 at 10-11.

----

23      [148] Case 3:11-cr-00162-WHA, ECF No 29.

24      [149] Case 3:09-cr-00131-WHA, ECF no 18, filed 4/7/14.

25      [150] *United States v Chung Cheng Yeh, a k a Alex Yeh*, Case 3:10-cr-00231-WHA, ECF No 28 (Court accepted defendants' guilty plea to Count One of the Indictment).

26      [151] Case 3:09-cr-00836-WHA, ECF No 1.

   [152] Case 3:10-cr-00817-WHA, ECF No 1.

27      [153] Case 3:10-cr-00817-EXE, ECF No 1.

   [154] Case 3:10-cr-00817-WHA, ECF No 1.

28

In 2012, the European Commission fined seven international groups of TV and computer monitor tubes 1.47 billion euros for fixing prices of CRTs, allocating customers and restricting output and exchanging commercially sensitive information.  European Commission Press Release, December 5, 2012 (fining Chunghwa, LG Electronics, Philips, Samsung SDI, Panasonic, Toshiba and Technicolor (formerly Thomson)).   These international companies were also defendants in this litigation and all have settled.  These investigations, prosecutions with guilty pleas and fines reflect that there was a wide-ranging conspiracy among international CRT manufacturers to fix prices, restrict output and allocate markets for CRTs and CRT Products.

While there is a paucity of Irico-produced documents tying Irico to the CRT price-fixing conspiracy, there are more than 28 documents produced by defendants Chunghwa and Samsung SDI that summarize CRT competitor meetings and list Irico as participating (CRT meeting summaries).  These documents are addressed in the undersigned's September 19, 2022, Report and Recommendation re Admissibility of Coconspirator Documents and Statements, ECF 6074, which the court adopted after rejecting Irico's objection.  ECF 6093.  These CRT meeting summaries identify dates and locations of CRT competitor meetings that Irico attended from August 1998 through July 2007.  *See* ECF 6093.  Because Irico representatives attended these competitor meetings regularly to share information, Irico would have known in 2007 about the United States Department of Justice antitrust investigation into CRT manufacturers.  Thus, even before December 2007, when Irico was served with the complaint in this action, it was undoubtedly aware of the likelihood of this litigation.

These CRT meeting summaries name a number of Irico's employees as attending, including:  Zhao-Jie Wang, Zheng-Yuan Wei, Zhi-Yuan Wei, Jian-She Wei ("Wei Jianshe as deputy manager of the sales company of the IRICO Color Picture Tube General Plant"), President Ma Jinquan, Wei-Sheng Li ("first manager of the sales company of the IRICO Color Picture Tube General Plant"), Jun Yao, Tao Sha or Sa Tao ("general manager of IRICO Import and Export Co"), Ui Seng Lee, Gyu Doh, Gun Sul Wee, Yui Gun Seol, Shin Hyo, Rong-Guo Gao, Yuan Liang (export manager), Xing Daoqin, Guo Mengquan, Zhang Shaowen ("plant manager of CPT Plant Number

1 of the IRICO Color Picture Tube General Plant"), Wang Wencheng, Shen Xiaoling, Guo Wei and Wang Ximin.[155]

One meeting note relates to a CRT meeting among Chunghwa, Orion and Irico on CPT (Color Picture Tube) market information exchange (CHU00029050).  On February 28, 2018, Jing Song Lu, a Chunghwa employee, testified at his deposition that he drafted the report of a "June 22, 1999" "meeting on CPT market information exchange among Chunghwa, Orion and Irico" that stated:

> Director Liu and Director Moon both explained the status of market supply and demand for 14", 20" and 21".  Based on the act that CDT has successfully maintained stable prices and that in the second half of the year demand has grown and production capacity has decreased ***they asked Irico to cooperate and synchronize the process of 14" CPT price increases.***  Feb 28, 2018 Lu Deposition ("Lu Depo") at 183-186 (emphasis added).

Lu explained the meaning of this paragraph:

> The first part is correct, after that I meant to say that after glass meeting CDT prices have successfully maintained.  ***For CPTs in the second half the demand is going up and the capacity is decreasing so it is hoped that Irico can take the same action with Chunghwa and Orion to maintain 14 inches CPT prices.***  Lu Depo at 186:4-12 (emphasis added).

Lu further testified regarding paragraph 3 of the same document:

> They [Irico] very much appreciated the market information provided by CPT and Orion and are ***willing to cooperate with the move to increase the price of 14" CPT, except that July orders have already been received.  They are willing to increase the overall price beginning in August.***  In addition their basic selling price is slightly lower than that of the big factories by US$1-2.  That was understood by everyone.  Lu Depo at 187:14- 188:8 (emphasis added).

When asked if it was fair to say that Irico agreed with the proposal that Chunghwa and Orion presented with respect to the CPT prices, Lu replied:

> Yes.  It said it is willing to cooperate as I wrote it in this report.  Lu Depo at 188:16-25.

---

[155] May 8, 2023, Declaration of David Y Hwu, ¶7, Ex 5 1998 IRICO Group Corporation Notice Regarding the Appointment and Dismissal of Li Weisheng and Others (1998) (IRI-CRT-00023923E-24E Translation) (names and titles of Irico employees).

Other attendees testified that the CRT meetings were scheduled to share price information on CRTs, both CPTs and CDTs, agree on price ranges, allocate customers, and coordinate on output or production levels to maintain stable pricing.  For example, Chunghwa's senior manager J S Lu confirmed that the major participating companies in the price meetings were "Chunghwa, SED (later SDI), Philips mainly Huang Fei, Orion, LPD-LG, called LG before they were merged. Irico and Matsushita Beijing"[156]  and that "[e]very time, in every meeting, price agreement was reached" including a "bottom price for one size" and that "[a]greements were generally of such a nature."[157] As another example, Chunghwa's former Vice President CC Liu explained that it was his intent to exchange price information at the monthly meetings and come to an agreement with the participants on the prices to be charged for CRTs during this period of time.  ECF 6074 at 15.  Liu testified that at the group meetings, "all the participants I believe reached somewhat consensus.  We all – we, who were present there, developed a common understanding."  ECF 6074 at 19.

Irico does not deny that its employees attended these monthly CRT meetings during the class period.  Irico's sales manager Wang Zhaojie testified that he "attended CRT Industry Association meetings," including "a meeting called Cyberlead, in Shenzhen" and "one attendee was Guojun Yang as the attendee or attendees from IRICO." Hwu Dec, Ex 2 (Sept 21, 2022, Wang Zhaojie Deposition Tr at 9:20-23, 11: 8-23).

While there are documents produced by other defendants that establish Irico's attendance at around thirty CRT competitor meetings, Irico has objected to their admissibility and asserted a number of defenses, including that they never agreed to participate in the conspiracy.  Due to Irico's spoliation of ESI and physical documents, [158] failure to produce Su for his deposition and almost a decade of delays resulting in loss of percipient witnesses, it appears

---

[156] ECF 6074 at 17.
[157] ECF 6047 at 13.
[158] *See also* ECF 6146 (January 27, 2023 Order Approving Special Master's Report & Recommendation on Plaintiffs' Motion to Compel Evidence Preservation Documents).

that even the availability of co-conspirator meeting summaries  would not allow a fair trial on the merits.  The prejudice to plaintiffs appears irremediable.

Due to Irico's bad faith misconduct in this litigation, as reflected in its repeated violations of court orders, its failures to preserve evidence and its spoliation of evidence,  its intentional, systematic delays caused by its decision to disappear from this litigation, its appeal from the court's denial of its motion to dismiss that was dropped shortly before oral argument and ongoing delays in producing documents and witnesses, and the lack of remaining Irico witnesses and documents, the undersigned finds that Irico's misconduct precludes a fair trial on the merits.

III.    ANALYSIS

   A.    Rule 37 (e) and (b):  Irico's Spoliation of ESI and Ongoing Violation of Pre-Trial Order No 1

The undersigned makes the following findings.  On or about December 25, 2007, Irico received service of the IPPs' complaint alleging Irico's involvement in a global CRT conspiracy.  No later than December 25, 2007 and possibly earlier, due to the anticipation of litigation, Irico's duty to preserve ESI and other information potentially relevant to this litigation arose.  But Irico failed to preserve its emails, failed to stop its computer servers from overwriting emails and failed to preserve emails and other ESI from the computers used by any of its key employees, including those who had attended the monthly CRT competitor meetings and the members of the 2008 Litigation Committee.  As a result, Irico has produced no emails or ESI from the class period, whereas other defendants have produced substantial numbers of ESI documents.  Irico claims that its email servers only had limited space and therefore, emails were overwritten on a regular basis and therefore, by the time its duty to preserve arose, all potentially relevant emails had already been overwritten and no longer existed.

Even apart from emails on its computer server, Irico failed to preserve downloaded copies of emails or copies of competitor meeting minutes and sale reports from

the computers used by its key employees in 2007-2008.  Irico never bothered to search the computer files of its employees who attended competitor meetings or the members of its 2008 Litigation committee.  Irico has produced no emails or any copies of competitor meeting invitations, minutes or follow up communications that must have existed in Irico's files in December 2007 because it was so close to the relevant class period.  Such documents have been produced by other defendants, listing Irico employees as attending and participating in competitor meetings from 1998 to 2006.  Emails, competitor meeting minutes and communications and many other types of relevant ESI should have been preserved in early 2008 when the duty to preserve arose have now been lost because Irico failed to take reasonable steps to preserve them.  Now, sixteen years later, they cannot be restored or replaced through additional discovery.  Plaintiffs have undeniably been prejudiced from the loss of highly relevant information tying Irico employees to the competitor meetings regarding CRT production, sales and pricing.

Irico retained United States counsel, Pillsbury, on January 24, 2008, about one month after receiving service of the complaint in this action and received at least four written communications from Pillsbury warning Irico of its duty to preserve potentially relevant documents.   On February 15, 2008, Pillsbury sent an email in Chinese to Irico's Yan Yunlong advising that it "is essential that Irico does not destroy or dispose of any potentially relevant documents, whether in paper, electronic or any other form," and recommending that Irico issue written instructions to the members of the company to retain "all such documents as soon as possible."  Certainly no later than February 15, 2008, Irico was on notice that it had a duty to preserve potentially relevant documents for this litigation.  On June 23, 2008, Pillsbury forwarded a copy of Pretrial Order No 1, ordering that each party "preserve all documents, data and tangible things containing information potentially relevant to the subject matter of this litigation."  On August 18, 2008, Pillsbury sent an email to Irico's Yan Yunlong, attaching a memorandum and notice of information retention from the United States court regarding the requirement to preserve documents.  By August 7, 2008, Pillsbury advised Irico to issue an

attached written litigation hold notice to employees most knowledgeable that Pillsbury had asked Irico to identify in Pillsbury's July 14, 2008 memo.  The litigation hold notice warned that "[f]ailure to preserve evidence may subject Irico or its employees to potentially severe sanctions."

On March 4, 2019, Irico's Rule 30(b)(6) witness, Zhang Wenkai, testified that Irico did not issue a litigation hold notice because it was not aware that it was necessary.  Later, in interrogatory responses, Irico claimed that in summer of 2008, the company orally instructed key employees to preserve documents related to sales of CRT to the United States, which did not exist because at the time, Irico did not sell CRTs directly to the United States.  More recently, Irico changed its story to claim that in summer of 2008, Yan Yunlong handed out copies of Pillsbury's litigation hold notice to members of the 2008 Litigation Committee at the August 2008 meeting and relied on those members to communicate with their teams about the litigation hold notice.  In updated discovery responses, Irico noted that it "cannot find documents detailing the specific information and its answers are based on recollections of Yan Yunlong, the only remaining Irico employee with knowledge of the oral instruction in 2008.  All other members of the 2008 Litigation Committee other than Yan Yunlong have retired or otherwise departed the company.

Irico admits that several types of documents that were likely to have existed in the summer of 2008 no longer exist:  sales reports of general CRT market information, CRT sales contracts, correspondence with customers regarding CRT sales and handwritten notes regarding recent internal and customer meetings attended by members of Irico's sales teams. Capurro Dec, Ex A at 12-13 (Irico's Jan 21, 2022, Supp Responses to IPPs' Third set of Interrogatories, Issue No 6.  I find that these types of documents would have been highly relevant to the claims alleged here of conspiracy to fix prices, production levels and market allocation among Irico and the co-defendants.  Thus, Irico's spoliation is directly tied to the lack of relevant documents in Irico's document productions in this matter.

In light of Irico's evolving discovery responses that appear designed to paint Irico in a more favorable light, Irico's complete failure to produce emails and other relevant ESI from the 2006-2008 time period in contrast to far greater productions of ESI from other defendants, Irico's false representations that they were unaware of their duty to preserve and their United States discovery obligations when in fact Irico had been repeatedly advised of their duties by their outside counsel, Pillsbury, in 2008,[159] and Irico's admission that it has been recycling computers of departing employees – deleting their contents, wiping them clean, and discarding or reissuing them -- throughout the pendency of this litigation, the undersigned finds that Irico has been spoliating evidence throughout the pendency of this litigation in bad faith with the intent to deprive plaintiffs of relevant information in violation of Rule 37(e ).

The deposition testimony of Yan Yunlong, the only remaining Irico employee who worked with Pillsbury in 2008 on this litigation and was a member of Irico's 2008 Litigation Committee is highly probative.  Yan Yunlong's response to the question was he responsible for gathering information to give to Pillsbury after Irico was served with the complaint:

> No.  Actually, after we were served with the complaint we did several things.
>
> * * *
>
> So for us to join and form the defendants group would be what the Chinese would say 'down the drain with them,' and we rejected the proposal or suggestion from Pillsbury.  ***We also knew that it would be a long process for the plaintiffs and the defendants to form the litigation groups and to actually go through the proceeding, so we were waiting for the plaintiffs to file an independent, separate lawsuit against Irico, and we wanted to wait until that time before we conducted any relevant investigation.  It would be unnecessary or pointless for us to conduct any investigation before a separate or independent lawsuit was filed against us by plaintiffs.  That's it.[160]***

---

[159] These documents had not been produced until Irico was ordered to produce all their communications with Pillsbury regarding document preservation and litigation holds.

[160] Capurro Dec, Ex E at 118-120 (Sept 27, 2022 Yan Yunlong Depo Vol I).

Irico's dismissive attitude about its obligations to preserve and search for potentially relevant documents promptly is probative of its bad faith, willfulness and fault in its spoliation of relevant ESI and other information.

The undersigned finds that by June 2008, Irico was aware of and had received a copy of Pretrial Order No 1 (ECF 230) from Pillsbury but ignored both the court's order and its counsel's repeated advice to comply with the order's direction to preserve all potentially relevant information. Irico's claim that its computer system had limited storage space and overwrote emails within weeks so that any relevant emails no longer existed by the time the duty to preserve arose, was never supported with any credible evidence. Nor did Irico ever present evidence of searching key employees' computers or office files for downloaded emails or other potentially relevant information. The complete lack of any emails in Irico's document productions contrasts sharply with the other defendants' document productions.

Due to Irico's ongoing practice of "recycling" computers when employees left[161] as well as its failure to make backup copies of key employees' computer drives or its own servers to preserve potentially relevant evidence and its failure to search key employees' offices for potentially relevant information, the undersigned finds that Irico continued throughout this litigation to violate Pretrial Order No 1 knowingly and with intent to deprive plaintiffs of access to the true facts.

Irico's complete disregard for complying with its United States counsel's advice and the discovery obligations set forth in Pretrial Order No 1 is consistent with Irico's litigation misconduct throughout this case. Irico apparently made no effort to comply with Pretrial Order No 1, and even when it first convened the 2008 Litigation Committee to discuss Pillsbury's recommended litigation hold notice in August 2008, Irico intentionally chose to disobey the court order by not making any serious attempt to search for or preserve potentially relevant

---

[161] In *WeRide Corp v Kun Huang*, 2020 WL 1967209 (ND Cal April 24, 2020), Judge Davila of this court imposed terminating sanctions under Rule 37(b) and (3) due to defendants' spoliation of ESI and violation of court order. Defendant wiped departing employees' laptops and deleted their email accounts pursuant to an exit policy employed during the litigation. *Id* at *8.

1   information.  This violation led to the huge gaps of highly probative documents in Irico's

2   document productions.  All of these violations were within Irico's control, hence the

3   undersigned finds that the evidence of bad faith is clear and convincing.

4              Due to the loss of percipient witnesses and documents from the class period,

5   which are due to Irico's calculated decision not to preserve evidence, not to issue a written

6   litigation hold, and not to search for ESI and documents relating to Irico's CRT sales globally

7   during the class period, plaintiffs have been substantially prejudiced.  The wholescale loss of ESI

8   and other documents that were once in Irico's possession and control and have now been

9   spoliated, leaves the undersigned with the firm conviction that a fair trial would not be possible

10  in this case.  Irico's spoliation has resulted in so few documents and only two remaining

11  witnesses that the undersigned finds that the rightful decision of the case will be impossible.

12  Irico's deliberately deceptive practices have so undermined the integrity of these proceedings

13  that the possibility of a fair trial based on access to true facts appears to have been destroyed.

14  Accordingly, a case dispositive sanction in this case appears the only appropriate outcome.

15             The undersigned finds that Irico possessed in early 2008, ESI that should have

16  been preserved in anticipation or conduct of litigation, due to Irico's failure to take reasonable

17  steps to preserve that ESI, it was lost or destroyed and cannot be restored or replaced through

18  additional discovery.  Thus Irico spoliated documents in violation of Rule 37(e).  Irico was

19  advised repeatedly by its counsel in February 2008 to preserve potentially relevant information

20  and ESI, including a description of the scope of such ESI.  It was within Irico's control to follow

21  the advice of its outside counsel and Irico chose not to do so.  The undersigned finds that:  (1)

22  Irico's spoliation has caused tremendous prejudice to plaintiffs who are missing entire

23  categories of highly relevant documents such that their ability to conduct a fair trial has been

24  jeopardized, and (2) in spoliating evidence throughout the course of the litigation, Irico acted

25  with intent to deprive plaintiffs of the use of its evidence of CRT sales and production levels and

26  Irico's participation in competitor meetings during the class period.  Pursuant to Rule 37 (e ),

27  the undersigned finds that default judgment is the sanction necessary to cure the prejudice.

28

1

**B.**      **Irico's Misconduct in Disappearing and Setting Aside Default**

2        As discussed above, Irico intentionally chose to fire its counsel and abandon this

3   litigation in around October 2008.  Irico's Yan Yunlong, the only remaining member of the 2008

4   Litigation Committee, testified about the 2008 meeting of the committee at which they

5   discussed abandoning this litigation.  In his testimony, he never once stated that Irico decided

6   to abandon the litigation due to its belief that it was immune from suit.  Moreover, the only

7   remaining contemporaneous document regarding Irico's decision to abandon this litigation, the

8   Yan Document, dated October 2008, was submitted to the undersigned *in camera*.  The Yan

9   Document does not state that Irico decided to abandon based on its belief that it was immune

10  from suit.[162]  Rather, far more mundane reasons are expressed.

11        The undersigned finds that:  (1) Irico was culpable for its own default in 2017 by

12  abandoning this litigation from 2009 to 2017, (2) Irico misrepresented to the court its alleged

13  lack of culpability in claiming that it failed to answer because it believed that it was immune

14  from suit in Irico's motion to set aside default and its Wenkai Zhang Declaration in support, (3)

15  Yan Yunlong's testimony that although he drafted the Yan Document and stored it in his office

16  files since its creation in October 2008, he did not believe the Yan Document was relevant,

17  reveals Irico's blatant disregard for its discovery obligations, and (4) Irico concealed for many

18  years in Yan Yunlong's office files the existence of the Yan Document, despite making

19  inconsistent statements to the court in 2017 regarding its reasons for abandoning the lawsuit.

20  Indeed, the court had already found that the Yan Document was responsive to two different

21  discovery requests, despite Irico's assertions to the contrary.[163]

22

[162] Having reread the Yan Document in light of Irico's misstatements in its motion to set aside,
23   the undersigned recommends reversing the order denying plaintiffs' motion to compel the Yan
Document (ECF 6215).  A court has inherent power to reverse its nonfinal orders in the proper
24   administration of justice.  The undersigned finds that Irico put into issue its reasons for abandoning the
litigation and therefore waived its work product claim as to the Yan Document.  Further, Yan Yunlong's
25   deposition testimony about the Yan Document also waives any claim to work product as to its contents.
The court had already held that the Yan Document was not entitled to attorney-client privilege but did
26   contain work product.  Moreover, as discussed above, the portions of the Yan Document that relate to
Irico's reasons for abandoning this litigation in 2008 reflect Irico's business decisions and are not work
27   product since no reputable United States counsel would have made such a recommendation.
[163] ECF 6215 at 2-3; ECF 6172.

28

Irico's decision to abandon the lawsuit in 2008 was completely consistent with its 2008 decisions not to issue a written litigation hold, not to make efforts to preserve ESI or other potentially relevant information, not to search for potentially relevant documents regarding Irico's sales of CRTs globally during the class period, and to destroy all documents that were not required to be kept by the Chinese government. Such egregious conduct rarely comes to light, but in this case, due to plaintiffs' diligent motion practice and many court orders, it finally has.

Irico's eight-year abandonment of this litigation was in bad faith, in violation of Pre-Trial Order No 1, and part of Irico's overall strategy to delay and not be involved in this litigation with the other co-conspirators. Irico's abandonment and misrepresentations about its culpability in its motion to set aside default were within its control and reflect a cavalier disregard for the proper administration of justice. This misconduct is directly related to the issues in this case because it led to an eight-year delay and loss of relevant ESI, hard copy documents and percipient witnesses within Irico's possession and control in 2008-2018.

### C. Rule 37(b): Irico's Repeated Failures to Produce Employee Su for Deposition in Violation of Multiple Discovery Orders

As discussed above, Irico violated two orders directing Irico to present its employee Su Xiaohua for deposition. ECF 6016 (Su deposition deadline of June 30, 2022), ECF 6047 (Su deposition deadline of September 9, 2022). The court's August 11, 2022 order of a new date of September 8, 2022 for Su's deposition did not absolve Irico of its violation of the Scheduling Order. Irico's claim that Su had left Irico's employ and was no longer under Irico's control also did not absolve Irico of violating the court's order setting a new date for Su's deposition (ECF 6047) because Irico misrepresented and concealed the true facts regarding Su's availability for his deposition, its lack of control over Su and its efforts to persuade Su to appear for his deposition.

In *Beijing Choice Electronic Tech Co, Ltd v Contec Medical Systems USA Inc*, 2021 WL 9184385 (ND Ill Dec 17, 2021), the court imposed sanctions under Rule 37(b) against a

company defendant that for 18 months failed to produce its executive most knowledgeable on topics at issue in the case and failed to inform the court that he threatened to terminate his employment if required to travel from mainland China to Macau for his deposition until after he resigned.   *Beijing Choice*, at *3.  Like Mr Su, the Contec employee was a C-suite executive named by the company's outside counsel as the most knowledgeable person on topics at issue in the litigation.  *Id*.  Like in *Beijing Choice*, the undersigned finds that plaintiffs were severely prejudiced by defendants' failure to inform them or the court as soon as they learned of the employee's intention to leave because it wasted 18 months and was an abuse of process.  *Id* at *4.  Here, defendants failed to inform the court of their own executives' April 7, 2022 approval of Su's request for early retirement ahead of schedule, while leaving the court with the misimpression that defendants would continue trying to produce Su for his deposition.  The facts here are worse because Irico misrepresented that Su had resigned on May 25, 2022 and had terminated all relationship with Irico, when in fact, Su continued to work for Irico through at least the end of July 2022 and later.  These misrepresentations reveal Irico's egregious bad faith and willful non-compliance with court orders.[164]  The harm plaintiffs suffered here is irreparable because due to Irico's concealment and misrepresentations, plaintiffs have lost the ability to depose a key witness with knowledge of Irico's CRT sales and attendance at competitor meetings during the class period. .  *See Beijing Choice*, at *4.  The *Beijing Choice* court imposed the Rule 37(b) lesser sanction of barring the use of the former employee as a witness, finding that the plaintiff "may still be able to adequately prove its damages through documentary evidence and testimony from [defendant's] designated 30(b)(6) witness" such that this sanction was "sufficient to cure the violation in this case."  *Id* at *5.  In contrast, that sanction would not be adequate to redress the harm Irico created here because due to its

---

[164] As in *SEC v Hong*, 2021 WL 4803497 at *4-5 (CD Cal September 17, 2021), defendants here failed to provide any evidence that Su and any concerns regarding Covid-19 quarantine were outside of their control, thus establishing bad faith disobedience of the court's orders. Both *SEC v Hong* and *Beijing Choice* courts granted Rule 37(b) sanctions against defendants who failed to appear for their depositions, but found lesser sanctions to be adequate.  Neither case involved the egregious misconduct including misrepresentations and concealment of evidence that occurred here with the Su deposition.

eight-year abandonment of this litigation, Irico lacks any other witness with comparable personal knowledge of Irico's CRT sales and participation at competitor meetings during the class period.

The undersigned finds that: (1) Irico knowingly, willfully and in bad faith disobeyed the May 25, 2022, order requiring Su Xiaohua's deposition no later than June 30, 2022, and the August 11, 2022, order requiring Su Xiaohua to be deposed no later than September 9, 2022; (2) Irico made false representations to the court that Su had terminated all relationship with Irico as of May 25, 2022, that as of that date, Irico had no control over Su and that it made efforts to persuade Su to appear for his deposition; (3) Irico flagrantly disobeyed court orders requiring production of documents regarding Su's resignation, requiring repeated court orders for compliance; and (4) the repeated failures to present Su for his court-ordered depositions and Irico's failures to comply with the orders compelling production of documents relating to Su's termination were within Irico's control.[165]  All of this misconduct was done in bad faith with the intent to deprive plaintiffs and the court of the testimony of a witness with personal knowledge of Irico's CRT sales and competitor meetings during the class period.

### D. Whether Terminating Sanctions are Warranted under the Ninth Circuit's Five Factor Test

Having found that Irico willfully and in bad faith spoliated ESI and other relevant information, intentionally delayed this litigation by disappearing for eight years, and violated multiple court orders setting deadlines for Mr Su's deposition, the undersigned next weighs the five factors relevant to determine whether terminating sanction are warranted.

#### 1. Factors 1 and 2

The first two factors are the public's interest in expeditious resolution of litigation and the court's need to manage its docket.  Both weigh strongly in favor of sanctions.

---

[165] *See Fair Housing of Marin v Combs*, 285 F 3d 899, 905-906 (9th Cir 2002) (failures to produce documents that allegedly did not exist was not outside defendants control because they were later found hidden in his apartment); *Computer Task Group, Inc v Brotby*, 364 F 3d 1112, 1115 (9th Cir 2004) (willfulness found where defendant consistently and intentionally obstructed discovery by not complying with repeated court orders and no heeding multiple court warnings).

1   Courts consider the extent of delay and fault of the disobedient party in contributing to the

2   delay.[166]

3          Irico's failure to preserve ESI and hard copy documents at the outset of this case

4   in 2008 violated the court's Pre-Trial Order No 1 and Rule 37(e ).  Irico's ongoing failure to

5   preserve ESI by recycling computers of departing employees, especially those members of the

6   2008 Litigation Committee with knowledge of Irico's participation at competitor meetings

7   during the class period constituted spoliation of ESI in violation of the court's Pre-Trial Order No

8   1 and Rule 37(e ).  Irico's large-scale spoliation led to its paltry document productions in

9   response to valid discovery requests and to extensive motion practice that impeded the

10  expeditious resolution of this litigation and the court's management of its docket.  The broader

11  record of discovery motion practice in this case reveals that Irico has repeatedly failed to

12  comply with discovery and lost a number of motions to compel.[167]

13         Irico's eight-year disappearance and its intentional decision not to litigate with

14  the other defendants in this multi-district litigation led to a substantial delay that inarguably

15  prejudiced plaintiffs.[168]  Irico's delaying tactics with respect to discovery, its intentional eight-

16  year absence from this litigation, its failure to proceed with its appeal from the Court's dismissal

17  of its jurisdictional defense (dropping the appeal weeks before oral argument was scheduled to

18  occur),[169] were Irico's fault and have led to the substantially delayed resolution of this matter,

19  which has been pending for fifteen years.

20         Based on the facts revealed and discussed above, the undersigned finds that the

21  years-long delays in extending Mr Su's deposition and repeated failures to produce him were

22  within Irico's control and were part of Irico's bad faith strategy to frustrate plaintiffs' efforts to

23  discover facts from one of the last remaining Irico employees with personal knowledge of

---

[166] *SEC v Hong*, at *5.

[167] *See* Section II.H. above.

[168] See ECF 5240 (February 1, 2018 Order Setting Aside Default at 15) ("The DPPs were inarguably prejudiced by the Irico Defendants' decision to disappear from the case for ten years.").

[169] ECF 5861 (10/27/20 Ninth Circuit Order granting Irico's motion to dismiss and vacating oral argument scheduled for December 9, 2020).

competitor meetings, sales and production of CRT during the class period, issues central to this case.  While it is true that in 2021, there may have been valid concerns about traveling from Irico's main offices to Hong Kong or Macau due to the COVID-19 pandemic restrictions, by spring of 2022, the health concerns were waning.  Irico's intentional delays were its own fault. Irico first notified the Court of Su's purported resignation as of May 25, 2022 in its June 30, 2022, emergency motion for relief from the May 25, 2022 Stipulated Order.  Irico's continuing attempts to hide information regarding the circumstances of Su's resignation as reflected in the limited documents produced in response to the December 6, 2022, Order, further delayed the litigation by precluding resolution of the Court-ordered determination of legal consequences of the failure to produce Mr Su for deposition in compliance with the August 11, 2022 Order. ECF 6027.  This record reflects that Irico impeded the expeditious resolution of this action and prevented the Court from managing its docket by flagrantly disobeying the orders to present Mr Su for deposition, by making false representations to the court about Su's resignation date and its loss of control over Su and by violating court orders requiring production of documents pertaining to those issues.

The first two factors weigh strongly in favor of granting terminating sanctions against Irico.

### 2.   Factor 3:  Risk of Prejudice to Plaintiffs

The issue here is whether the disobeying party's actions impair plaintiffs' ability to try their case or threaten to interfere with the rightful decision of the case.

The grist for rightful decisions in civil litigation comprise documents and witnesses.  Irico has frustrated plaintiffs' efforts to obtain testimony from Irico's own employees and thus the first-hand witnesses to Irico's conduct.  These witnesses are now unavailable for testimony to answer the allegations against Irico which secured this unavailability willfully.  Irico has destroyed most, nay perhaps all, of its own documents that bear on its conduct during the relevant time period.  This destruction was undertaken knowingly.  From outset, Irico has had the benefit of the advice and counsel of highly

experienced and able counsel who provided Irico appropriate advice on Irico's legal obligations as a defendant in litigation under the Federal Rules.  Irico flouted and ignored this counsel.

Irico's spoliation of ESI and other information from the beginning of this case forward has led to wide-scale loss of documents pertaining to Irico's sales of CRTs globally, Irico's production levels of CRTs and its participation in competitor meetings throughout the class period.  These types of documents are critical to the claims in this case.  While relevant documents reflecting Irico's participation in meetings with other CRT manufacturers were produced by other defendants who have long since settled, such documents are far less compelling than if they had come from Irico's files with Irico's witnesses able to testify regarding them.  Irico's ongoing failures to preserve, destruction of documents and meager document productions have substantially impaired plaintiffs' ability to prove their case and interfere with the rightful decision of this case.

For eight years, Irico departed the litigation.  It returned only after the court found Irico in default.  When Irico returned to the litigation, it had the benefit of other experienced counsel.  Yet Irico has made discovery and pretrial preparation in the normal course impossible.  The Court already found "inarguabl[e] prejudice" resulting from Irico's decision to disappear from the case for eight years.[170]  The undersigned finds that Irico's misrepresentations to the court regarding its culpability in failing to answer and litigate also severely prejudiced plaintiffs.  If Irico had not misrepresented that its reason for failing to answer was due to its belief that it was immune from suit, the court would not have granted Irico's motion set aside the default in 2018.  Had the court denied Irico's motion to set aside the default, plaintiffs would not have had to spend the next six years attempting to obtain discovery from and otherwise litigating against defendants.

The court has already found that Irico's repeated delays and failures to produce Mr Su for his deposition "unquestionably causes injury to plaintiffs and also injury and

---

[170] ECF 5240 at 15 (February 1, 2018 Order Setting Aside Default).

inconvenience to the Court."[171]  As discussed above, Su was one of only two remaining Irico

employees with knowledge of Irico's meetings with other CRT manufacturers, Irico's

manufacturing and sales of CRTs during the relevant period, as reflected in Irico's responses to

discovery requests naming Mr Su as knowledgeable.[172]  The other witness identified as having

knowledge of Irico's meetings with other CRT manufacturers during the relevant period, Irico's

sales manager Wang Zhaojie, was deposed and repeatedly answered that he could not

remember.[173]  Irico's thin document production, coupled with a lack of any emails and the lack

of knowledgeable Irico witnesses from the class period leads to the conclusion that there are no

other sources of information from which Plaintiffs could obtain the discovery it would have

obtained from Mr Su's deposition.  Irico's misleading conduct regarding Su's resignation and

failures to produce ESI and other documents in violation of court orders also caused prejudice

to plaintiffs by causing yet further delays.  On this record, the factor of prejudice to plaintiffs

weighs strongly in favor of granting terminating sanctions.

### 3.  Factor 4:  Public Policy Favoring Disposition of Cases on Their Merits

This fourth factor by its very nature weighs in favor of not granting terminating

sanctions.  That said, when the discovery violations are extensive, willful and in bad faith, as

found here, the amount of lost evidence, witnesses and recollections is so great as to preclude

a fair disposition of this case on its true merits.   The undersigned finds that Irico's litigation

misconduct in this case bears directly on whether this case may be tried with any confidence in

a fair outcome in the normal course.  Here, however, substantial admissible evidence from

other defendants points to Irico's role in the conspiracy plaintiffs allege.

### 4.  Factor 5:  Availability of Less Drastic Sanctions

Before granting terminating sanctions, a district court must first consider the

impact of the default and the availability of less drastic sanctions.  The most critical factor to be

---

[171] ECF 6027, 12:24 – 13:1.

[172] ECF 6032-1 at 4-5 and Ex J (Irico interrogatory response identifying Su as knowledgeable
about Irico's meetings and communications with other CRT producers).

[173] *See* Hwu Dec, Ex 2 (September 21, 2022 Wang Zhaojie Deposition Transcript).

considered in case-dispositive sanctions is whether "a party's discovery violations make it impossible for a court to be confident that the parties will ever have access to the true facts." *Connecticut General Life Ins Co v New Images of Beverly Hills*, 482 F 3d 1091, 1097 (9th Cir 2007) (Where a party so damages the integrity of the discovery process that there can never be assurance of proceeding on the true facts, a case dispositive sanction may be appropriate).  The Ninth Circuit has set forth a three-part analysis to assess the adequacy of less drastic sanctions: "(1) did the district court explicitly discuss the feasibility of less drastic sanctions and explain why alternative sanctions  would be inappropriate, (2) did the court implement alternative sanctions before ordering dismissal, and (3) did the court warn the party of the possibility of dismissal before actually ordering dismissal?" *Adriana*, 913 F 2d at 1412-13; *Connecticut General Life Ins*, 482 F 3d at 1096.

In light of Irico's misconduct throughout this litigation, reflecting repeated, systematic and intentional flouting of discovery obligations and court orders, the undersigned finds that Irico's misconduct has demonstrated its flagrant bad faith, willful conduct and fault. Irico's failures to preserve ESI, failures to preserve hard copy documents and things, failures to conduct investigations into the existence of potentially relevant documents, recycling of employee computers and purposeful delays such as its eight-year absence from the litigation, its year-long frivolous appeal that was dropped with no explanation, and its repeated delays in discovery compliance, in the face of multiple warnings and advice from its counsel Pillsbury in 2008, lead to the inevitable conclusion that Irico has been manipulating the court system to delay and allow relevant information to be lost and destroyed in office moves, warehouse fires and retirements of virtually all employees with knowledge of Irico's CRT sales, production and competitor meetings from 1995-2007.

Compared to other defendants in this litigation, Irico has produced practically nothing of relevance.  Irico's massive spoliation, eight-year disappearance and other delays, flouting of court orders and discovery obligations, failures to produce a key witness knowledgeable about CRT sales and competitor meetings during the class period and repeated

misrepresentations have so damaged the integrity of this litigation that the undersigned has no

confidence that a fair trial could be conducted under these circumstances.  Less drastic

sanctions such as monetary sanctions alone would not remedy the destruction of highly

relevant evidence or the long delays resulting in loss of virtually all witnesses and other relevant

information.  Monetary sanctions alone would not adequately compensate plaintiffs for having

the ability to prove their case essentially destroyed.  A jury instruction to presume that the

evidence lost would have been unfavorable to defendants would not be an adequate remedy in

light of the vast swaths of missing and highly relevant information that Irico should have

preserved and produced.  No adverse jury instruction would suffice to overcome the massive

loss of documents and overcome the obstacles plaintiffs would face in making their case

through the usual course of litigation.  Issue or fact preclusion on liability issues would similarly

be inadequate.  By Irico's spoliation, long delays and violations of court orders, the regular

course of legal process has been frustrated.  Imposing a sanction of attorney fees and costs

would be appropriate but it alone would not put the class plaintiffs where they would have

been had Irico not spoliated evidence, delayed for almost a decade and repeatedly flouted

discovery orders, requiring repeated court intervention and ordering of further searches and

productions.

The undersigned has analyzed the feasibility of less drastic sanctions and for the

reasons stated above, finds that none of the lesser sanctions would suffice to remedy the

consequences of Irico's systematic and egregious spoliation, violations of court orders and

dilatory and bad faith litigation tactics.

The fact that the court has not implemented alternative sanctions before striking

the answer is of minor consequence.[174]  Due to Irico's repeated and flagrant

misrepresentations, delays and obstructions of discovery, there is no reason to expect Irico to

change course.  Irico already received the opportunity to litigate and defend its case when the

---

[174] *See Hester v Vision Airlines, Inc*, 687 F 3d 1162, 1170 (9th Cir 2012) ("fact that a court does not
implement a lesser sanction before striking an answer is not dispositive.  It is just one factor.")

court granted its motion to set aside default in 2018.  But rather than doing so in good faith, Irico continued its dilatory and egregious litigation misconduct.  Thus, the imposition of a lesser sanction earlier would have been pointless.  The court has already warned Irico in two interim orders that noncompliance would risk terminating sanctions for discovery abuse.[175]

In weighing the Ninth Circuit's five factors, the undersigned finds that factors 1, 2, 3 and 5 weigh strongly in favor of terminating sanctions and therefore, recommends that the court impose terminating sanctions against defendants.

The recommendation of terminating sanctions is further supported because:  (1) the evidence of Irico's bad faith discovery and other litigation misconduct is clear and convincing and (2) the evidence that is available from other defendants establishes by a preponderance that Irico was an active and knowing participant in the wrongdoing plaintiffs allege.  Despite Irico's efforts to frustrate the operation of the machinery of justice, the evidence of Irico's participation in the wrongdoing alleged by plaintiffs cannot be mistaken.  Such evidence comes almost entirely from the records of the settling defendants.  The evidence available establishes by the required preponderance that Irico repeatedly met, conferred and agreed to coordinate pricing, output and distribution of CRTs with the setting defendants.  This evidence is sufficiently compelling to leave no other reasonable conclusion than that Irico fully participated in the conspiracy plaintiffs allege.  This evidence demonstrates that terminating sanctions and an award of relief to plaintiffs are entirely consistent with "the rightful decision of the case."  *Anheuser-Busch Inc*, 69 F 3d at 348; *Conn Gen Life Ins,* 482 F 3d at 1097.

## IV.    CONCLUSION

The undersigned recommends that the court grant plaintiffs' motion for terminating sanctions pursuant to Rules 37(b) and 37(e) and its inherent power, and order that:

---

[175] *See* ECF 6264 at 7 and ECF 6324 at 6.

1.   Irico be required to pay monetary sanctions to plaintiffs, including attorney's fees and expenses incurred due to Irico's ongoing spoliation of evidence, its disappearance from this litigation and motion to set aside default, its dropped appeal, its repeated failures to produce Mr Su for deposition and its violations of court orders, including those in which it lost a motion to compel;

2.   If the court approves monetary sanctions, plaintiffs submit their briefs and declarations with supporting evidence of their fees and costs incurred due to defendants' Rule 37 violations and litigation abuses;

3.   The parties submit their joint proposal for a briefing and hearing on the amount of damages;

4.   After monetary sanctions are imposed and damages determined,  Irico's Answer and Defenses be stricken; and

5.   Default judgment be entered against Irico.

SO ORDERED.

Date:   May 14, 2024

_____

Vaughn R Walker
United States District Judge (Ret)

The Recommended Order of the Special Master is Accepted and Ordered / Denied / Modified.

Date:  _____

_____

Honorable Jon S Tigar
United States District Judge