**NORTON ROSE FULBRIGHT US LLP**
JEFFREY MARGULIES (BAR NO. 126002)
KAYLEE YANG (BAR NO. 303464)
555 California Street
Suite 3300
San Francisco, California 94104
Telephone:     (213) 892-9200
Facsimile:      (213) 892-9494
jeff.margulies@nortonrosefulbright.com
kaylee.yang@nortonrosefulbright.com

**NORTON ROSE FULBRIGHT US LLP**
GERALDINE YOUNG (admitted *pro hac vice*)
1301 McKinney, Suite 5100
Houston, Texas 77010
Telephone:     (713) 651-5151
Facsimile:      (213) 651-5246
geraldine.young@nortonrosefulbright.com

Attorneys for Defendants
IRICO GROUP CORP. AND
IRICO DISPLAY DEVICES CO., LTD

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Case No. 4:07-cv-05944-JST |
| | MDL No.: 1917 |
| | **DEFENDANTS IRICO GROUP CORP. AND IRICO DISPLAY DEVICES CO., LTD.'S OBJECTIONS TO SPECIAL MASTER'S REPORT & RECOMMENDATION ON PLAINTIFFS' MOTION FOR TERMINATING SANCTIONS** |
| This Documents Relates to: | |
| ALL ACTIONS | |

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT.................................................................................. 1

STATEMENT OF FACTS ....................................................................................... 4

    A.   1998-2007: Irico's Conduct Related to CRTs and CRT Pricing............................ 4

    B.   2008 and prior: Irico's Email Systems, Storage of Electronic Information, and Document Preservation. ......................................................................... 4

    C.   2016-18: Irico's Successful Motion to Set Aside Default. ................................. 7

    D.   2022: Mr. Su's Resignation from Irico and Refusal to Sit for Deposition in "Zero Covid" China. ......................................................................................... 9

    E.   The Parties' Expert Discovery and Trial Preparations........................................ 12

    F.   The R&R. .............................................................................................................. 13

LEGAL STANDARDS............................................................................................. 15

    A.   Review is De Novo. ............................................................................................. 15

    B.   Terminating Sanctions Are Reserved for the Most Extreme, Irreparably Prejudicial Misconduct...................................................................................... 15

ARGUMENT ............................................................................................................ 16

I.    Terminating Sanctions Are Not Warranted........................................................... 16

    A.   Plaintiffs' Contentions Regarding Electronically Stored Information And Irico's Litigation Hold Do Not Warrant Terminating Sanctions. ...................... 16

        1.   No intentional destruction of evidence occurred. ..................................... 17

        2.   None of the alleged misconduct forecloses the prospect of a fair trial on the merits. ....................................................................................... 20

    B.   Plaintiffs' Contentions Regarding The Setting Aside of Default Do Not Warrant Terminating Sanctions. ........................................................................ 23

        1.   No record evidence supports the Special Master's suggestion that Irico deceived the Court. ......................................................................... 23

        2.   The R&R violates this Court's prior Order by quoting, characterizing, and relying on a document this Court has already held to be privileged................................................................................... 26

DOCUMENT PREPARED
ON RECYCLED PAPER

3. The set-aside issue is a red herring that has nothing to do with the discovery conduct on which the R&R purports to be based. ..................... 28

C. Plaintiffs' Contentions Regarding the Su Deposition Do Not Warrant Terminating Sanctions. ......................................................... 29

1. Irico had no control over Mr. Su's failure to appear. ................................ 29

2. Mr. Su's failure to appear does not prevent a trial on the merits or significantly prejudice Plaintiffs. .............................................. 31

3. Any delays in imaging the Su laptop were nonculpable, nonprejudicial, and utterly peripheral to Plaintiffs' claims. ...................... 31

II. To The Extent The Court Finds Any Misconduct, Any Remedy Should Be Appropriately Tailored ......................................................... 32

A. Lesser Sanctions Would Sufficiently Remedy Any Prejudice to Plaintiffs. .......... 33

B. None Of The Challenged Conduct Bears On The Meritorious, Complete Defenses Irico Has Advanced And Will Proffer At Trial. ..................... 34

C. At A Bare Minimum, Irico Should Be Permitted To Contest Damages. .............. 34

CONCLUSION ........................................................................ 35

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Advantacare Health Partners v. Access IV*,
   2004 WL 1837997 (N.D. Cal. Aug. 17, 2004) ................................................................. 20, 22

*Ahcom, Ltd. v. Smeding*,
   2011 WL 3443499 (N.D. Cal. Aug. 8, 2011) ......................................................................... 22

*Al Otro Lado, Inc. v. Wolf*,
   2021 WL 631789 (S.D. Cal. Feb. 18, 2021), *report & rec'n adopted sub nom.*
   *Al Otro Lado, Inc. v. Mayorkas*, 2021 WL 1170212 (Mar. 29, 2021) .............................. 21, 22

*Apple Inc. v. Samsung Elecs. Co.*,
   881 F. Supp. 2d 1132 (N.D. Cal. 2012) ................................................................................. 33

*Apple Inc. v. Samsung Elecs. Co.*,
   888 F. Supp. 2d 976 (N.D. Cal. 2012) ...................................................................... 21, 33, 34

*Beijing Choice Elec. Tech. Co. v. Contec Med. Sys. USA Inc.*,
   2021 WL 9184385 (N.D. Ill. Dec. 17, 2021) ........................................................................ 30

*Bella+Canvas, LLC v. Fountain Set Ltd.*,
   2022 WL 3697358 (C.D. Cal. June 29, 2022) ....................................................................... 29

*Celgard, LLC v. Shenzhen Senior Tech. Material Co. Ltd. (US) Research Inst.*,
   2021 WL 11714935 (N.D. Cal. Dec. 7, 2021) ....................................................................... 27

*ChromaDex, Inc. v. Elysium Health, Inc.*,
   535 F. Supp. 3d 906 (C.D. Cal. 2021) ................................................................................... 16

*Facebook, Inc. v. OnlineNIC Inc.*,
   2022 WL 2289067 (N.D. Cal. Mar. 28, 2022) ...................................................................... 19

*Faerfers v. Caviar Creator, Inc.*,
   359 F. App'x 739 (9th Cir. 2009) .......................................................................................... 28

*Fast v. GoDaddy.com LLC*,
   340 F.R.D. 326 (D. Ariz. 2022) ...................................................................................... 22, 34

*Fjelstad v. Am. Honda Motor Co., Inc.*,
   762 F.2d 1334 (9th Cir. 1985) ........................................................................... 16, 22, 28, 35

*In re Google Play Store Antitrust Litig.*,
   664 F. Supp. 3d 981 (N.D. Cal. 2023) ................................................... 2, 3, 16, 20, 33, 34

*Halaco Eng'g Co. v. Costle*,
   843 F.2d 376 (9th Cir. 1988) ................................................................................................ 16

*Hester v. Vision Airlines, Inc.*,
   687 F.3d 1162 (9th Cir. 2012) .............................................................................................. 35

Document Prepared
on Recycled Paper

- iv -

*Inventus Power v. Shenzhen Ace Battery*,
    339 F.R.D. 487 (N.D. Ill. 2021)................................................................. 10

*Io Grp. Inc. v. GLBT Ltd.*,
    2011 WL 4974337 (N.D. Cal. Oct. 19, 2011)............................................. 34

*Jacob v. City of New York*,
    315 U.S. 752 (1942)...................................................................................... 35

*Juul Labs, Inc. v. Chou*,
    2022 WL 2161063 (C.D. Cal. May 6, 2022) ............................................... 29

*Leon v. IDX Systems Corp.*,
    464 F.3d 951 (9th Cir. 2006)........................................................................ 19

*Malone v. USPS*,
    833 F.2d 128 (9th Cir. 1987)........................................................................ 19

*Med. Lab'y Mgmt. Consultants v. Am. Broad. Cos.*,
    306 F.3d 806 (9th Cir. 2002)........................................................................ 22

*Microvention, Inc. v. Balt USA, LLC*,
    2023 WL 7476998 (C.D. Cal. Oct. 5, 2023) ............................................... 23

*In re Napster, Inc. Copyright Litig.*,
    462 F. Supp. 2d 1060 (N.D. Cal. 2006) ......................................... 16, 19, 20

*Nursing Home Pension Fund v. Oracle Corp.*,
    254 F.R.D. 559 (N.D. Cal. Sept. 2, 2008)...................................... 16, 20, 22

*In re Oracle Corp. Sec. Litig.*,
    627 F.3d 376 (9th Cir. 2010)........................................................................ 21

*Parra v. Life Ins. Co. of N. Am.*,
    258 F. Supp. 2d 1058 (N.D. Cal. 2003) ...................................................... 26

*In re Phenylpropanolamine (PPA) Products Liability Litigation*,
    460 F.3d 1217 (9th Cir. 2006) (en banc).................................................... 19

*Phoceene Sous-Marine, S. A. v. U.S. Phosmarine, Inc.*,
    682 F.2d 802 (9th Cir. 1982)........................................................................ 28

*Porter v. City & County of San Francisco*,
    2018 WL 4215602 (N.D. Cal. Sept. 5, 2018) ............................................. 19

*Reinsdorf v. Skechers U.S.A., Inc.*,
    296 F.R.D. 604 (C.D. Cal. 2013) ................................................................ 21

*In re Rubin*,
    769 F.2d 611 (9th Cir. 1985)..................................................................... 2, 3

*Rundquist v. Vapiano SE*,
    277 F.R.D. 205 (D.D.C. 2011)............................................................. 29, 30

Document Prepared
on Recycled Paper

- v -

*Sali v. Corona Reg'l Med. Ctr.*,
    884 F.3d 1218 (9th Cir. 2018).........................................................................29, 31

*Scott v. Chuhak & Tecson, P.C.*,
    725 F.3d 772 (7th Cir. 2013).................................................................................26

*SEC v. Hong*,
    2021 WL 4803497 (C.D. Cal. Sept. 17, 2021).....................................................29

*SEC v. Mercury Interactive LLC*,
    2012 WL 3277165 (N.D. Cal. Aug. 9, 2012)........................................................34

*Shenzhenshi Haitiecheng Sci. & Tech. Co., Ltd. v. Rearden LLC*,
    2016 WL 5930289 (N.D. Cal. Oct. 11, 2016)......................................................22

*Stern v. Marshall*,
    564 U.S. 462 (2011)..............................................................................................15

*Sullivan v. SII Investments, Inc.*,
    2018 WL 1367340 (N.D. Cal. Mar. 16, 2018)......................................................26

*United States v. Hatfield*,
    2010 WL 183522 (E.D.N.Y. Jan. 8, 2010) ..........................................................27

*United States v. Saunders*,
    641 F.2d 659 (9th Cir. 1980).................................................................................15

*United States v. Signed Pers. Check No. 730 of Yubran S. Mesle*,
    615 F.3d 1085 (9th Cir. 2010)...............................................................................25

*Vollmer v. Publishers Clearing House*,
    248 F.3d 698 (7th Cir. 2001).................................................................................26

*WeRide Corp. v. Huang*,
    2020 WL 1967209 (N.D. Cal. Apr. 24, 2020) ......................................................19

*Wilson v. Volkswagen of Am., Inc.*,
    561 F.2d 494 (4th Cir. 1977).............................................................................2, 35

*United States ex rel. Wiltec Guam, Inc. v. Kahaluu Const. Co., Inc.*,
    857 F.2d 600 (9th Cir. 1988).............................................................................28, 32

*Womack v. Gibbons*,
    2023 WL 4311622 (9th Cir. July 3, 2023) ...........................................................16

*Wyle v. R.J. Reynolds Indus., Inc.*,
    709 F.2d 585 (9th Cir. 1983).................................................................................16

**Constitutional Provisions**

U.S. Const., Amend. VII .......................................................................16, 34, 35

U.S. Const., Art. III .............................................................................................15

DOCUMENT PREPARED
ON RECYCLED PAPER

**Rules and Statutes**

Fed. R. Civ. P. 26(a)(3)(A)(i) .................................................................................... 33

Fed. R. Civ. P. 30(b)(6) .............................................................................................. 8

Fed. R. Civ. P. 33(e)(1) .............................................................................................. 7

Fed. R. Civ. P. 37 ............................................................................................... 19, 29

Fed. R. Civ. P. 37(d)(1)(A) ....................................................................................... 29

Fed. R. Civ. P. 37(e)(2) ............................................................................................. 33

Fed. R. Civ. P. 53(f)(3)-(4) ....................................................................................... 15

Fed. R. Civ. P. 72(b)(3) ............................................................................................. 15

Fed. R. Evid. 502 ...................................................................................................... 27

**Other Authorities**

BBC, *Why Email Loses Out to Popular Apps in China* (July 9, 2020),
     https://www.bbc.com/worklife/article/20200707-why-email-loses-out-to-
     popular-apps-in-china ........................................................................................ 17

Civil Procedure Law (adopted by 7th Nat'l People's Cong., April 9, 1991,
     effective as of the date of issuance, last amended June 27, 2017), pt. 4, art. 277 ................... 10

Law on Guarding State Secrets (promulgated by Standing Comm. Nat'l People's
     Cong., Sept. 5, 1988, rev'd Apr. 29, 2010, effective Oct. 1, 2010), art. 9 ............................. 14

DOCUMENT PREPARED
ON RECYCLED PAPER

1

## OBJECTIONS TO SPECIAL MASTER'S REPORT AND RECOMMENDATION

2      Defendants Irico Group Corp. and Irico Display Devices Co., Ltd. ("Irico" or "Irico

3   Defendants") respectfully request that the Court decline to adopt the Special Master's Report &

4   Recommendation (ECF 6382) (the "R&R") on the Motion for Terminating Sanctions (Ex. 1)

5   ("Mot.," or the "Motion") filed by the Indirect Purchaser Plaintiffs ("IPPs") and Direct Purchaser

6   Plaintiffs ("DPPs") (collectively, "Plaintiffs").[1]

7

## PRELIMINARY STATEMENT

8      More than six years ago, the DPPs represented to this Court that "the evidence

9   demonstrating the existence of the . . . conspiracy [they allege], the harm to Plaintiffs, and the

10  participation of the Irico Defendants is overwhelming." ECF 5191 at 8. More recently, Plaintiffs

11  have admitted to possessing "massive document and deposition discovery," including testimony

12  from over 250 witnesses and "tens of thousands" of relevant, non-privileged documents. ECF 6177

13  at 14-15. Even now, they maintain that their case on the merits is "strong," Mot. 31, and the R&R

14  concluded that they possess "copious quantities of evidence, m[uch] of which" directly implicates

15  Irico, R&R 2, 19. Yet despite those repeated assertions, Plaintiffs have sought (and the R&R

16  recommends) the most severe civil sanction that exists—entry of judgment without regard to the

17  merits—on the theory that possible loss of evidence over a decade ago will make "the rightful

18  decision of th[is] case . . . impossible." *Id.* at 66.

19      The R&R is entitled to no deference, and its reasoning is effectively self-disproving. Its

20  stated "conviction that a fair trial would not be possible in this case," *cf.* R&R 66, cannot be

21  reconciled with Plaintiffs' many assertions about the extent of the evidentiary record, much less

22  with the R&R's own suggestion that Plaintiffs would *win* on the merits if the case were tried today.

23  As this Court recently explained—in declining to impose terminating sanctions despite conduct far

24  worse than anything even arguably present here—"[p]roportionality is the governing concept"

25  when evaluating a request for sanctions, and termination is a last resort to be employed only when

---

[1] All citations to "Ex." are to exhibits attached to the accompanying Declaration of Jeffrey B.
Margulies in Support of Defendants Irico Group Corporation and Irico Display Devices Co., Ltd.'s
Objections to Special Master's Report & Recommendation on Plaintiffs' Motion for Terminating
Sanctions.

26

27

28

DOCUMENT PREPARED
ON RECYCLED PAPER

no other remedy is possible. *In re Google Play Store Antitrust Litig.*, 664 F. Supp. 3d 981, 994 (N.D. Cal. 2023); *see also, e.g.*, *In re Rubin*, 769 F.2d 611, 619 (9th Cir. 1985) ("[A] court should not go beyond the necessities of the situation to foreclose the merits of controversies as punishment for general misbehavior."); *Wilson v. Volkswagen of Am., Inc.*, 561 F.2d 494, 504 (4th Cir. 1977) (restating "the normal rule that the proper sanction must be no more severe than is necessary to prevent prejudice to the movant"). The R&R contravenes that foundational principle, and it does so in a case assertedly worth many billions of dollars in which the two defendants—Chinese entities, one of which is an instrumentality of China's government—have defended on the ground not only that they did not participate in the alleged conspiracy, but also, *inter alia*, that their challenged conduct (which took place entirely in China) was affirmatively required by Chinese law.

The R&R would therefore warrant rejection even if the findings underlying its recommendation were sound. But few of those findings withstand scrutiny. First, the R&R posits that Irico destroyed evidence "in bad faith with the intent to deprive plaintiffs of relevant information," R&R 64, but fails to identify *a single instance* in which Irico deviated from its standard document-retention practices. At worst, what occurred is that the two Irico entities—which had little or no U.S. presence, no U.S. customers, no U.S. sales, and exceedingly limited experience in U.S. litigation—misunderstood the scope of their responsibilities with respect to a U.S. litigation hold and failed to immediately update primitive electronic systems and Chinese-law-compliant document-retention policies to conform to U.S. practice. Even assuming that amounts to wrongdoing, it certainly does not warrant the drastic remedy the R&R recommends, especially when it is largely undisputed that the vast majority of any potentially relevant documents would have been lost for innocuous reasons months or years before any preservation obligation arose.

There is also no evidence to support the R&R's second core premise, which is that Irico lied to this Court about having believed it was immune from suit and withdrawn from this case based on that belief. *Cf.* R&R 67-68. The record demonstrates that Irico's beliefs and motivations were genuinely held and accurately described to this Court. Moreover, the R&R reaches a contrary conclusion only by interpreting—and then selectively quoting and publicizing—the contents of a

DOCUMENT PREPARED
ON RECYCLED PAPER

1    document (the "Yan Document") this Court has already said is privileged work product. *See* ECF

2    6215. The R&R attempts to justify that invasion by recommending that the Court reconsider its

3    privilege ruling. *E.g.*, R&R 67 n.162. But that recommendation is unsupportable, and in any event,

4    a special master's mere recommendation cannot justify violating a duly-issued order of this Court.

5         The third and final purported basis for the R&R's recommendation is that Irico is somehow

6    culpable for its inability to produce for deposition a former employee, Su Xiaohua, who retired

7    from Irico *precisely because* Irico was trying to compel him to travel to Macau to be deposed. R&R

8    68-70. It is undisputed that depositions may not be taken in mainland China; that the events relevant

9    to this issue all occurred in mainland China at the height of the global COVID-19 pandemic; and

10   that traveling from, to, and within that country was at the time extremely burdensome to the extent

11   it was possible at all. Nor does any evidence contradict Irico's explanation that "Mr. Su resigned

12   because he refused to travel to Macau for a deposition given the severe quarantine requirements

13   that he would face upon his return to mainland China (21+7 Policy) and his ongoing care of his

14   elderly mother." R&R 41 (quoting ECF 6027-3 ¶ 6). The R&R had no basis to discredit that

15   explanation, much less to fault Irico for Mr. Su's personal decision to retire rather than submit to a

16   deposition and a weekslong quarantine. In all events, Mr. Su is at most a tangential witness, and as

17   with the other factors the R&R invokes, loss of access to his testimony does not come close to

18   warranting terminating sanctions.

19        In addition to those various errors, the R&R also errs in recommending, with neither support

20   nor analysis, that Irico be deprived not only of its right to defend against Plaintiffs' case-in-chief,

21   but also of its entitlement to try its affirmative defenses and the issue of damages. *See, e.g.*, R&R

22   78. Irico should at minimum be permitted to try those defenses, and there is no credible argument

23   that the conduct the Motion alleges would prejudice Plaintiffs' damages case. For that reason alone,

24   the R&R's recommendation that this Court abrogate Irico's jury and due process rights by entering

25   default stands in clear contravention of black-letter law and this Court's most recent published

26   decision on the issues presented here. *See, e.g.*, *Rubin*, 769 F.2d at 619; *Google Play*, 664 F. Supp.

27   3d at 994.

28        The R&R should be rejected, and the Motion should be denied.

**STATEMENT OF FACTS**

**A.      1998-2007: Irico's Conduct Related to CRTs and CRT Pricing.**

The Irico Defendants are Chinese companies, one of which is wholly state-owned, whose business focus has always been on China. ECF 6225 at 12. They are headquartered in China, their CRT production occurred exclusively in China, and they have never had any office, real property, manufacturing or sales facility, bank account, mailing address, telephone listing, or employees in the United States. *Id.* at 12-13.

Irico's conduct with respect to CRT pricing was mandated by duly enacted laws and regulations of the People's Republic of China. After a price war in the color TV industry in the mid-1990s that led to the collapse of CRT prices in China, the Chinese government intervened by passing laws and regulations to establish CRT price floors and prevent the dumping of low-price CRTs. *Id.* at 14. The laws and regulations took effect in 1998 and were binding and enforceable on Chinese manufacturers, including Irico. *Id.* All of the alleged conspiracy meetings that Plaintiffs assert involved Irico took place in China after the law was in effect. *Id.* at 15. None occurred in the United States, and many directly involved coordination by, cost reporting to, and price guidance from the Chinese government, whose active involvement extended to efforts to enforce the regulations, including by punishing companies for failure to comply. *Id.*

**B.      2008 and prior: Irico's Email Systems, Storage of Electronic Information, and Document Preservation.**

When this lawsuit was initially filed in 2007, Irico maintained documents under Chinese legal requirements and in a manner typical of Chinese state-owned enterprises. Ex. 2, Irico's Resps. to IPPs' 3rd Rogs., at 9-11. This included the observance of specific Chinese laws and regulations governing the retention of hard copies in a physical archive. Ex. 3, Irico's Supp. Resps. to IPPs' 3rd Rogs., at 20-23. Irico's electronic systems were nascent and rudimentary even in comparison to the electronic systems used by typical Western or other Asian companies 17 years ago, such as the other former defendants in this litigation. *Id.* at 15-16.

Email was not a primary communication method at Irico. Instead, when not meeting in person, "the primary communication channels [were] either telephone or fax." *See* Ex. 4, Mar. 8,

DOCUMENT PREPARED
ON RECYCLED PAPER

2019 Dep. of Wang Zhaojie, at 36:4-19; *see id.* at 37:24-38:2. It is undisputed that Irico first introduced email around 2004 or 2005, and that even then, email accounts and passwords were so scarcely used that they were assigned to whole departments, rather than individuals. *E.g.*, Ex. 5, Mar. 4, 2019 Dep. of Zhang Wenkai, at 105:24-106:11.

Individual Irico employees confirmed that their use of email and computers in general was minimal. Wang Zhaojie, a salesperson and later sales director for Irico Group during the relevant period, testified that despite frequent work travel, he "never had a laptop computer" and instead "d[id] business . . . over the phone." Ex. 6, Sept. 20, 2022 Dep. of Wang Zhaojie, at 43:13-44:14. Irico's current General Counsel Yan Yunlong testified that Irico employees "would communicate face-to-face or over the phone, because in 2008, email was quite a new communication tool and people were not used to using it, so email communication would be rare." Ex. 7, Sept. 27, 2022 Dep. of Yan Yunlong, at 65:7-10. Mr. Yan continued: "Also, at that time, computers *were [not] often seen*, and we were not able to issue one computer to one employee." *Id.* at 65:11-13 (emphasis added). When Irico senior executive Li Miao was asked about his computer and email use while Vice President of Irico Electronics, a position he held starting in late 2004, he testified that he "never reviewed emails" on his computer. Ex. 8, Mar. 7, 2023 Dep. of Li Miao, at 95:21-96:12 (objections omitted). This limited email use by Irico employees during the relevant period is uncontradicted, and it is confirmed by the near-total lack of emails to or from Irico employees in the discovery materials produced by other defendants.

Irico's rudimentary systems also were forced to quickly overwrite email server and individual mailbox data due to storage limitations. Indeed, at least through the end of 2007, Irico implemented a policy of retaining emails on its back-end server for a maximum of twenty days. *See* Ex. 9, Irico's 5th Supp. Resps. to DPPs' 1st Rogs., at 11. In practice, Irico's severely limited front-end email capacity (only 1 to 2 MB of storage per mailbox during the relevant period) resulted in emails being deleted or overwritten every four to five days. *See id.* at 8, 11; *see also* Ex. 5 at 109:19-111:2. There was no general legal requirement to retain this electronically stored information ("ESI") in the ordinary course of business. *See* Ex. 5 at 77:2-10. Likewise, Irico did not back up its email system "because there is no rule or requirement regarding the [r]etention of

DOCUMENT PREPARED
ON RECYCLED PAPER

electronic files." *Id.* at 108:2-8. Thus, it is undisputed that at the time this case was filed, Irico had not issued computers to its individual employees; had not issued email accounts to all of its employees; did not use email or computers for daily work with customers; and retained a maximum of 20 (but often fewer) days' worth of email.

In early 2008, after Irico received notice of the lawsuit, it retained the law firm Pillsbury Winthrop Shaw Pittman LLP ("Pillsbury"). Ex. 7 at 118:15-18. Before that time, Irico had little background in U.S. litigation and none in U.S. antitrust litigation. Over the next several months, as Irico worked to understand the allegations against it in an unfamiliar forum, Irico received three emails from Pillsbury that referenced document retention: (1) an email dated February 15, 2008 that included (among other topics) a statement that Irico should "not destroy or dispose of any potentially relevant documents, whether in paper, electronic, or any other form," Ex. 10, IRI-SUPP-000001E, at -001E; (2) several months later, a forwarded copy of the Court's Pretrial Order No. 1 that "reminded" parties "of their duty to preserve evidence that may be relevant to this action" and listed various types of media, but left the determination of what was "relevant" up to each party, Ex. 11, IRI-SUPP-000012E, at -021E; and (3) another two months later, a memorandum and draft litigation hold notice, Ex. 12, IRI-SUPP-000022E, at -026-027E.

More than a decade later, when discovery into Irico's preservation efforts in 2008 was propounded, Irico based its responses on the years-old recollections of Mr. Yan, who (in addition to currently being Irico Group's General Counsel) was a member of Irico's Litigation Committee at the relevant times. One thing Mr. Yan recalled was a meeting of the Litigation Committee in August 2008 at which the topic of document preservation was discussed. Ex. 3 at 10-11. He recalled that the Committee focused as a threshold issue on whether Irico had made any U.S. sales, and that it issued oral instructions to search for and preserve any documents relevant to that subject. *Id.* After those recollections were included in interrogatory responses, Mr. Yan further recalled at his deposition that the Litigation Committee also discussed searching for and preserving any documents related to competitor meetings. Ex. 7 at 117:6-120:21. And following his deposition, Mr. Yan recalled that he had shared a copy of Pillsbury's memorandum and draft notice with the Litigation Committee at this same meeting. Ex. 13, Yan Decl. ¶ 7 (Nov. 18, 2022). As Mr. Yan

DOCUMENT PREPARED
ON RECYCLED PAPER

1    recalled additional details, Irico supplemented its interrogatory responses as the Federal Rules of

2    Civil Procedure require. *See* Fed. R. Civ. P. 33(e)(1); Ex. 14, Irico's 3rd Supp. Resps. to IPPs' 3rd

3    Rogs. at 24-25. Plaintiffs were offered the opportunity to depose Mr. Yan a second time in light of

4    his additional recollections, but declined to do so. *See* ECF 6146 at 11.

5         **C.    2016-18: Irico's Successful Motion to Set Aside Default.**

6         In June 2010, Pillsbury requested permission to withdraw from representation of Irico,

7    which the Court granted. ECF 729, 732. Approximately six years later, Pillsbury moved the Court

8    to dissolve its forwarding and service obligations to Irico, ECF 4681, which Plaintiffs opposed,

9    ECF 4690 at 2. Around the same time, the Court ordered "any plaintiff with pending affirmative

10   claims against the Irico Entities" to "show good cause why it has not previously requested entry of

11   default as to the Irico Entities." ECF 4694 at 2. After Plaintiffs responded, ECF 4705, 4706, the

12   Court further ordered them to apply promptly for entry of default against Irico, ECF 4709, 4722,

13   and then granted their applications, ECF 4727, 4729. IPPs then filed a letter with the Court

14   indicating that they did not intend to "seek a default judgment against the Irico Entities at this time"

15   because such a judgment "would not be enforceable in China," and withdrew their opposition to

16   Pillsbury's motion. ECF 4734.

17        In August 2017, DPPs moved for default judgment against Irico. ECF 5183. Irico

18   reappeared through new counsel at Baker Botts, opposed the motion for default judgment, and

19   simultaneously moved to set aside the entry of default. ECF 5209, 5214, 5215. The Court held a

20   hearing, denied the motion for default judgment, and granted Irico's set-aside motion. ECF 5240.

21   In its order setting aside the default, the Court recognized that the passage of years likely meant

22   that "documents and data have been lost, that witnesses have become unavailable, or that important

23   details have been forgotten," but found that any "prejudice argument [was] substantially undercut

24   by [DPPs'] own delay in seeking entry of default." *Id.* at 15. The Court then recognized that Irico's

25   "strongest potential meritorious defense . . . is that the Court lacks jurisdiction over them." *Id.* at

26   17. Finally, noting that the Ninth Circuit standard for culpability in setting aside a default requires

27   more than "simply . . . having made a conscious choice not to answer," the Court held that Irico's

28   belief that "Irico Group and Irico Display were immune from suit in the United States" rendered

the default non-culpable. *Id.* at 18-19. Weighing these factors, the Court held that "whatever prejudice the DPPs suffered does not outweigh the Irico Defendants' right to present their meritorious defenses" and ordered that "DPPs are free to undertake jurisdictional discovery" in order to resolve the jurisdictional question. *Id.* at 19-20.

Later in 2017, the Court held a hearing on Plaintiffs' motion to compel merits discovery despite the unsettled jurisdictional issues, at which it noted that "if it was very important to [Plaintiffs] that they get this discovery from these entities, I think they would have" done so "a little earlier." ECF 5275 at 12:2-6. The Court denied the motion, holding that "only jurisdictional discovery [was] appropriate" at that time. ECF 5277 at 2. The parties then engaged in jurisdictional discovery for approximately one year, after which Irico renewed its jurisdictional motions to dismiss. *See* ECF 5409, 5410, 5411, 5412. The Court denied Irico's motions to dismiss in October 2019, and Irico filed an interlocutory appeal. ECF 5637, 5650. After Irico voluntarily dismissed its appeal, *see* ECF 5861, the parties proceeded with merits discovery.

As part of that merits discovery, Irico has searched through and produced vast quantities of hard-copy information. Irico has produced, and Plaintiffs have accessed accounting books, general ledgers, financial accounting reports, and sales invoices (for CRTs and other products); a full data summary of all Irico's CRT sales for the entire relevant period; and (among other things) expense records that Plaintiffs allege corroborate evidence of Irico's attendance at competitor meetings. Ex. 3 at 7, 19-20; Ex. 15, Werbel Ltr. to Saveri & Capurro (Mar. 10, 2022), at 3. Plaintiffs have also deposed five Irico employees, three of whom worked at Irico during the relevant period, one of whom was a Rule 30(b)(6) corporate representative, and one of whom worked for a CRT competitor of Irico at the relevant time. *See* Margulies Decl. ¶ 17.[2] However, Irico has been forthright that

---

[2] Other materials reviewed include operational documents relating to strategic plans, development plans, management changes, financial planning, annual production and sales reports, procurement reports, updates to corporate structure, and communications with the government related to operational matters; administrative documents related to annual work summaries and plans, administrative and board meetings, approval requests for corporate development and investments, government approvals, personnel appointment and removal notices, and human-resource policies; materials related to Irico's social-service obligations as a state-owned entity; technical records relating to quality management, labor, energy, security, and environmental issues; and documents

- 8 -

DOCUMENT PREPARED
ON RECYCLED PAPER

some potentially relevant materials may have been lost for various reasons, including a 2012 office move, a renovation, and a 2017 warehouse fire. *See* Ex. 9 at 8-10.

### D.  2022: Mr. Su's Resignation from Irico and Refusal to Sit for Deposition in "Zero Covid" China.

Su Xiaohua was an employee of Irico Group or its subsidiaries from June 1981 through June 2022. During the approximately 12.5-year relevant period for this case, Mr. Su spent over ten years working in the Irico Group Human Resources department, where he had no role in product sales or procurement. Ex. 16, IRI-CRT-00031561E, at -562E. In April 2005, he transferred to the Irico Group Sales Company and for the first time served as a deputy general manager in charge of planning. *Id.*; Ex. 17, Irico's 6th Supp. Resps. to DPPs' 1st Rogs., at 10. As part of an interrogatory response in 2021, Irico informed Plaintiffs that Mr. Su recalled that during his brief tenure in the Irico Group Sales Company (which lasted only until March 2007), he attended a single event organized and "hosted by Skyworth," a customer—not competitor—of Irico's, "at which he interacted with other CRT manufacturers." Ex. 17 at 10. He did not recall any discussion of CRT pricing, production, or other competitively sensitive issues at that event or any other. *Id.* After his time at Irico Group, and just eight months before the end of the relevant period in this case, Mr. Su moved to the Purchasing department of Irico Electronics, then a subsidiary of Irico Group. Ex. 16 at -562E. In subsequent years, Mr. Su worked at a number of Irico subsidiaries involved in non-CRT businesses, ending his career as the general manager of a handful of small subsidiaries in the South China region. *Id.*

As of the time Irico served its interrogatory responses, Mr. Su was one of only a few individuals remaining at Irico with any experience in the CRT business. Accordingly, despite his limited tenure in that business, Mr. Su was listed in Irico's interrogatory responses as an employee—never the sole employee—having some knowledge regarding certain of Irico's affirmative defenses. Ex. 18, Irico's Resps. to IPPs' 4th Rogs., at 19, 22, 25, 27, 29, 33, 36, 40. Based on that disclosure, Irico agreed to make Mr. Su available for deposition when COVID-19

related to Chinese Community Party matters, including meeting minutes, public relations documents, and personnel discipline records. Ex. 3 at 20-23.

DOCUMENT PREPARED
ON RECYCLED PAPER

pandemic conditions allowed. However, conducting foreign depositions in Mainland China is a criminal offense, *see* Civil Procedure Law (adopted by 7th Nat'l People's Cong., April 9, 1991, effective as of the date of issuance, last amended June 27, 2017), pt. 4, art. 277; *see also, e.g.*, *Inventus Power v. Shenzhen Ace Battery*, 339 F.R.D. 487, 500 (N.D. Ill. 2021), and the Chinese government's strict "Zero Covid" policies made obtaining required travel visas for Mr. Su (and other witnesses) exceptionally difficult and unpredictable. At their peak in 2022, these policies mandated tremendously burdensome, multi-week quarantines for both outgoing and return travel. Ex. 19, Zhang Decl. ¶ 4 (June 30, 2022). Changes in these travel regulations in early 2022 led the parties to agree to extend the time to complete the deposition until March 18, 2022. *See* ECF 5980. But when it became apparent that Irico's original plan of traveling to Hong Kong was simply infeasible due to the emergence of the omicron variant of COVID-19, Irico proposed a change of venue to Macau, *see* ECF 6027-2, ex. 8 at 1, and the parties agreed to extend the deposition deadline to May 31 to allow for witnesses to obtain the necessary travel visas, *see* ECF 5999.

Irico then worked to obtain Macau travel approvals and visas for its witnesses, including Mr. Su. Irico Group's Legal Affairs Department was responsible for coordinating travel approvals and working with all witnesses to obtain necessary information for travel visas and to plan travel for the depositions. Zhang Wenkai, Assistant General Counsel for Irico Group and a member of the Legal Affairs Department, was the sole person in contact with Mr. Su regarding the planning of Mr. Su's deposition. Mr. Zhang's discussions with Mr. Su included repeated efforts in May 2022 to gather necessary information to obtain a travel visa for Mr. Su. On May 6, in response to a request from Mr. Zhang, Mr. Su provided an initial copy of a vaccination card to show that he was properly inoculated prior to traveling for his deposition, but did so in a format that was "not acceptable" for the visa application. Ex. 20, IRI-SU-000103E, at -106-109E. On May 7, after further exchanges with Mr. Zhang and consultation with a local hospital, Mr. Su sent a revised "[c]ertificate of vaccination record." *Id.* at -110E. On May 9, Mr. Su provided a copy of his "household registration" form and an "identification photo" needed for the visa in response to a request from Mr. Zhang. *Id.* at -111E, -115-119E. However, Mr. Su's photo was noncompliant with visa requirements, so Mr. Zhang worked with him over two weeks to understand the specific requirements for the "Macao

DOCUMENT PREPARED
ON RECYCLED PAPER

pass." *Id.* at -111E, -113E, -120-123E. Following continued urging from Mr. Zhang that "the time is very tight," Mr. Su sent a copy of his visa photos in the correct format to Mr. Zhang on May 24. *Id.* at -124-127E. Mr. Zhang and Mr. Su continued to communicate regarding the deposition on May 25 and 26. *Id.* at -128E. Because Mr. Su's visa did not issue in time, the parties agreed on May 25 to extend the deposition deadline to June 30. ECF 6016.

Despite these repeated contacts in May, Mr. Su never disclosed to Mr. Zhang that he in fact had no intention of traveling for his deposition. Instead, Mr. Su had submitted a request earlier that year under a program designed to allow managers to resign their positions up to two years before their legal retirement at age 60. Ex. 21, IRI-SU-000137E, at -139E. Unbeknownst to Mr. Zhang and the Legal Affairs Department, that request had been approved in April, and Mr. Su had provided a resignation letter to the Irico Group Human Resources on May 25, indicating his request to "terminate [his] employment relationship with the company." *Id.*; Ex. 22, IRI-SU-000141E. When (on May 31) Mr. Zhang learned of Mr. Su's intent to depart, he promptly contacted Mr. Su, who informed Mr. Zhang that he now refused to travel to Macau for a deposition, citing the "severe quarantine requirements" then in effect and "his ongoing care for his elderly mother." Ex. 19 ¶ 6. Mr. Su was dismissed from all of his Irico positions effective June 17. Ex. 23, IRI-SU-000208E. Pursuant to standard Irico personnel policies and Chinese government regulations, Mr. Su was entitled to receive a set monthly living expense allowance until reaching age 60 as well as certain social insurance benefits. Ex. 24, IRI-SU-001473E; Ex. 25, IRI-SU-001470E. Following his dismissal, Mr. Su responded to several messages from other Irico employees regarding his former obligations and participated in a "departure audit." Ex. 26, IRI-SU-000199 & IRI-SU-000165E; Ex. 27, IRI-SU-000166E.

Irico informed Plaintiffs of Mr. Su's resignation and refusal to sit for deposition on June 7, 2022 and informed the Court in connection with Irico's Emergency Motion for Relief from Scheduling Order on June 30. ECF 6027 at 6-7; ECF 6027-2, ex. 9. Following the Court's August 11, 2022, order for Irico witnesses to appear for deposition within four weeks, ECF 6047, *see* ECF 6063 at 13:10-14, the parties stipulated to vacate the deadline and set a new deadline for two other Irico witnesses who remained current employees, Mr. Wang and Mr. Yan, to renew their travel

visas and appear for deposition later in September 2022. ECF 6056. Those two witnesses then appeared for their depositions as scheduled. *See* Ex. 6; Ex. 7.

### E.      The Parties' Expert Discovery and Trial Preparations.

Before Irico produced any documents in this case, IPPs determined that to prove any damages against Irico, they would rest on their existing economic expert report (produced by Dr. Janet Netz) rather than generate a new one based on information that Irico might produce. ECF 5906 ¶ 3. Dr. Netz's expert disclosures relied on hundreds of documents and data files produced by other parties, cited across 380 footnotes and 84 supporting exhibits, to opine on an IPP damages estimate of approximately $3 billion. ECF 6150-1 at 2 ff. Following exchanges of supplemental and rebuttal expert reports, IPPs had opportunities to depose Irico's economic expert and Irico's expert on Chinese law, but declined to do so. In the direct purchaser case, DPPs proffered the testimony of Dr. Phillip Johnson, who similarly relied on hundreds of documents and data files, with the addition of documents and CRT sales data produced by Irico, to opine on a DPP damages estimate of approximately $1 billion.

Following expert disclosures and the close of fact discovery, Irico and the IPPs engaged in extensive efforts over several months to reduce a massive discovery record to the documentary and testimonial evidence that would be presented at trial. In April 2023, the parties filed a stipulation regarding authenticity and admissibility of several hundred documents that IPPs indicated they were likely to use at trial, ECF 6190, which the parties expanded in August 2023 to include a total of 626 documents. ECF 6268. In June 2023, Irico and the IPPs exchanged initial trial exhibit lists, deposition designations, and witness lists for trial. ECF 6236 at 2. IPPs' exhibit list included 1,621 entries, 137 of which were documents produced by Irico in discovery. Margulies Decl. ¶ 30; Ex. 28, IPPs' Trial Exhibit List. IPPs' initial deposition designations included testimony from 79 separate depositions, including 358 designated excerpts from the testimony of five Irico witnesses. Margulies Decl. ¶ 31. IPPs' proposed witness list included 85 individuals, including the same five Irico witnesses. *Id.* ¶ 32; Ex. 29, IPPs' Trial Witness List. The parties also exchanged counter-designations in August 2023, with IPPs' counter-designations covering 21 depositions, including five Irico depositions. Margulies Decl. ¶ 33; Ex. 30, Capurro Ltr. to Taladay (Aug. 18, 2023).

Document Prepared
on Recycled Paper

While these trial preparations were underway, Irico filed a motion for summary judgment, ECF 6225, the IPPs filed a motion for partial summary judgment, ECF 6231, and the parties filed motions in limine and oppositions thereto, ECF 6239-6260, 6271-6274, 6276-6287, 6289-6295. The parties also cooperated in over a dozen meet-and-confer sessions and exchanges to resolve outstanding objections to deposition designations, jury instructions, and certified translations of foreign language trial exhibits, all of which were ongoing when the IPP pretrial calendar was suspended in November 2023 in response to the Special Master's Status Report on Plaintiffs' Sanctions Motion, *see* ECF 6345, 6346. At the time the IPP schedule was vacated, the case was approximately three months from trial. ECF 6340.

**F.     The R&R.**

In the Court's August 2022, order regarding Irico depositions, the Court ordered the parties to submit, in the event "fewer than all the witnesses identified in these papers testify, . . . a document . . . setting forth their competing positions on what the legal consequence is of that witness' . . . failure to appear." ECF 6063 at 14:2-7. The parties filed a joint statement in October 2022 regarding Su Xiaohua's failure to appear, in which Plaintiffs argued for striking Irico's affirmative defenses and Irico argued for a "legal consequence" of preventing Mr. Su from offering testimony at trial. ECF 6101 at 1, 9.

The Court referred the dispute to Special Master Walker for resolution. ECF 6107. The Special Master first ordered "targeted discovery" of documents relating to Mr. Su's departure, deposition, and ongoing status. ECF 6115 at 12-13. Irico made a production in response to this order in December 2022. Then, in March 2023, Plaintiffs filed the Motion. After initial briefing and a hearing, the Special Master issued an Interim Order (which the Court approved) requiring broader discovery regarding Mr. Su, including forensic collection of his electronic devices, interviews and forensic collection of files from numerous Irico custodians, and application of document search terms to be proposed by Plaintiffs. ECF 6264 (the "First Interim Order").

The expanded scope of the First Interim Order required electronic collection of years of more recent communications from Irico's current executives, which implicated Chinese laws on the protection of state secrets that prohibit U.S. individuals (including U.S.-based outside counsel)

DOCUMENT PREPARED
ON RECYCLED PAPER

1  from viewing recent state-owned enterprise documents that have not gone through a clearance

2  process. *See* Law on Guarding State Secrets (promulgated by Standing Comm. Nat'l People's

3  Cong., Sept. 5, 1988, rev'd Apr. 29, 2010, effective Oct. 1, 2010), art. 9, 2010 P.R.C. Laws 71.75

4  (China). In order to comply with both the First Interim Order and its obligations under Chinese law,

5  Irico proposed a process involving Chinese counsel and a globally qualified e-Discovery firm, BDO,

6  to conduct this preliminary state secrets review under instruction from Norton Rose Fulbright, co-

7  counsel for Irico. Ex. 31, Young Ltr. to Special Master (Aug. 9, 2023). The Special Master rejected

8  this proposal and issued another Interim Order, this time (i) requiring that an attorney of record

9  from Baker Botts personally supervise the collection efforts in China and (ii) expanding the

10  requirements for Irico's collection, review, and reporting of the process. ECF 6324 (the "Second

11  Interim Order") at 4-6.

12       Irico scrupulously followed the two Interim Orders' requirements, ultimately producing

13  responsive documents in October 2023. Ex. 32, Taladay Decl. (Oct. 23, 2023). In January 2024,

14  after further briefing and another hearing, the Special Master issued yet another order relating to an

15  outstanding dispute over the search terms proposed for Irico's productions in response to the First

16  and Second Interim Orders. ECF 6351 (the "Search Terms Order"), *adopted with modified deadline*

17  ECF 6357. The Search Terms Order required Irico to expand the search terms applied for its

18  October 2023 productions. Irico complied fully with the Search Terms Order, reviewed tens of

19  thousands of additional documents, and made a supplemental production in March 2024.

20       The Special Master issued the R&R on May 14, 2024. ECF 6382. Despite repeatedly touting

21  the supposed strength of Plaintiffs' case on the merits, *e.g.*, R&R 2-3, 19, 57-60, 77, the R&R

22  recommends granting the Motion, terminating the case, awarding Plaintiffs fees and costs,

23  resolving damages issues through briefing and a hearing rather than a trial, striking Irico's Answer

24  and Defenses, and entering default judgment against Irico, *id.* at 78. In support of those

25  recommendations, and as discussed in more detail below, the R&R suggests the Court rule, *inter*

26  *alia*, that (1) Irico's adherence to its preexisting document-retention policies reflected "intent to

27  deprive" Plaintiffs of critical evidence; (2) Irico lied to the Court when, in its successful motion to

28  lift default, it asserted that it had initially withdrawn from this litigation based on a belief that it

1   was immune; (3) Mr. Su's failure to appear for deposition was attributable to "bad faith misconduct"

2   by Irico, which "deprived plaintiffs of the testimony of an important Irico witness" whose testimony

3   "go[es] to the heart of the claims here"; and (4) for those reasons, "a fair trial in this case" will be

4   "impossible."

5                                   **LEGAL STANDARDS**

6       **A.      Review is De Novo.**

7           The R&R recommends dispositive relief and must therefore be reviewed without deference.

8   Fed. R. Civ. P. 53(f)(3)-(4) (legal conclusions and factual findings of special masters reviewed de

9   novo); *see id.* 72(b)(3) (dispositive recommendations of magistrate judges reviewed de novo); *see*

10  *also* N.D. Cal. Civ. Loc. R. 72-3 (same).

11          Plaintiffs have suggested they will argue for deferential review, pointing to the fact that the

12  Order appointing the Special Master (the "Referral") mentions the Civil Local Rule specifying the

13  procedures for review of non-dispositive orders of a magistrate judge. *See* Ex. 33, Heaphy Email

14  to Young (May 16, 2023), at 1 (citing Dkt. 2272 at 4). But that offhand "*see*" citation, in a paragraph

15  titled "Time Limits for Review," does not purport to alter the standard of review. Nor could it. The

16  Special Master is not a magistrate judge, the Rules would require de novo review for his dispositive

17  recommendations even if he were, *see* Fed. R. Civ. P. 72(b)(3); *see also* N.D. Cal. Civ. Loc. R. 72-

18  3, and in all events, deferring to the R&R would contravene Article III, *see, e.g.*, *Stern v. Marshall,*

19  564 U.S. 462, 484 (2011) (the Constitution assigns "issues of fact as well as issues of law" to Article

20  III courts); *United States v. Saunders*, 641 F.2d 659, 663 (9th Cir. 1980) (delegation to non-Article

21  III judges is constitutional only where their rulings are subject "to de novo determination by a

22  federal district judge"). Moreover, for reasons explained below, the R&R should be rejected under

23  any standard.

24      **B.      Terminating Sanctions Are Reserved for the Most Extreme, Irreparably**

25              **Prejudicial Misconduct.**

26          Terminating sanctions are the most severe sanctions that exist in civil litigation. They are a

27  "'drastic substitute for the adversary process of litigation,'" and therefore cannot be imposed except

28  when "absolutely necessary to protect the orderly administration of justice and integrity of judicial

proceedings." *ChromaDex, Inc. v. Elysium Health, Inc.*, 535 F. Supp. 3d 906, 912 (C.D. Cal. 2021) (quoting *Halaco Eng'g Co. v. Costle*, 843 F.2d 376, 382 (9th Cir. 1988)). They are inappropriate absent a finding of intentionally "disobedient conduct," *Womack v. Gibbons*, 2023 WL 4311622, at *1 (9th Cir. July 3, 2023), and even then can be imposed only for conduct that "eclipse[s] entirely the possibility of a just result" on the merits, *Nursing Home Pension Fund v. Oracle Corp.*, 254 F.R.D. 559, 564 (N.D. Cal. Sept. 2, 2008) (cleaned up); *see also, e.g.*, *In re Napster, Inc. Copyright Litig.*, 462 F. Supp. 2d 1060, 1071 (N.D. Cal. 2006). Where "lesser measures . . . would be sufficient to redress" the conduct at issue, or where that conduct does "not threaten to interfere with the rightful decision of the case," imposing termination as a sanction violates due process and (where applicable) the Seventh Amendment. *See Fjelstad v. Am. Honda Motor Co., Inc.*, 762 F.2d 1334, 1338 (9th Cir. 1985) (quoting *Wyle v. R.J. Reynolds Indus., Inc.*, 709 F.2d 585, 591 (9th Cir. 1983)); *Google Play*, 664 F. Supp. 3d at 994 (rejecting terminating sanctions, despite defendant's bad faith, because case "w[ould] not be decided on the basis of" the lost evidence). Before imposing termination, a court must also consider "the public's interest in expeditious resolution of litigation" and "the court's need to manage its dockets." *Nursing Home*, 254 F.R.D. at 563 (cleaned up).

## ARGUMENT

### I.   Terminating Sanctions Are Not Warranted.

The R&R is based on three categories of supposed wrongdoing. None warrants the draconian remedy the R&R recommends.

#### A.   Plaintiffs' Contentions Regarding Electronically Stored Information And Irico's Litigation Hold Do Not Warrant Terminating Sanctions.

The R&R vastly overstates both the cause and the effect of any lost evidence in this case. As discussed in detail below, there is no basis for the R&R's recommended conclusion that Irico engaged in an intentional effort to suppress the truth or interfere with the judicial process. Moreover, Plaintiffs have repeatedly conceded that whatever evidence was lost will not come anywhere near preventing them from fairly trying this case on the merits.

DOCUMENT PREPARED ON RECYCLED PAPER

### 1.  *No intentional destruction of evidence occurred.*

As the R&R's own discussion makes clear, this is not a case in which a party purposefully destroyed evidence to avoid its litigation obligations or suppress the truth. *See, e.g.*, R&R 61-66. Instead, the record at most demonstrates that in the early 2000s, Irico—Chinese entities (one state-owned) that were not sophisticated U.S. litigants and maintained rudimentary electronic systems—failed adequately to alter their otherwise legally compliant document-maintenance systems in order to implement an effective U.S. litigation hold.

The R&R fails to take into account the reality of Irico's electronic systems at the relevant times. It is undisputed that little or no relevant ESI existed at the time Pretrial Order #1 was issued. *See supra* at 4-7. To the extent any ESI was subsequently lost, it was lost as a result of ordinary document-retention policies associated with Irico's rudimentary electronic systems—not as a result of some scheme to deprive the Plaintiffs of information. At least through 2007, Irico's policy was to retain emails on its back-end server for a maximum of 20 days, and in practice Irico's severely limited front-end email capacity necessitated that emails be deleted much sooner. *See supra* at 5-6. Because Pretrial Order #1 was not issued within 20 days of the initiation of the suit, it is likely that any emails the R&R speculates were lost no longer existed when the Order was issued. And by the time Irico's past counsel Pillsbury sent its February 15, 2008 email mentioning retention, any relevant material would almost certainly have been deleted in the ordinary course of business. *See supra* at 6. In any event, with the exception of a pilot program in the early 2000s from which no data was retained past 2004, Irico as an entity did not have *any* email until 2004 at the earliest, long after the alleged conspiracy began or Irico allegedly joined it in 1998; even then, computer use was uncommon, and email was not a primary communication channel. *See supra* at 4-6. Though this may not comport with Western expectations (particularly in 2024), and contrasts with the situation of other Defendants, Irico's slow adoption of computers and limited email use mirrored the overall technological development of China, which "leapfrogged" the "computer age" in favor of "mobile connectivity" and thus lagged far behind the rest of the world at the relevant time. *See, e.g.*, BBC, *Why Email Loses Out to Popular Apps in China* (July 9, 2020), https://www.bbc.com/worklife/article/20200707-why-email-loses-out-to-popular-apps-in-china.

DOCUMENT PREPARED
ON RECYCLED PAPER

The record of intentional wrongdoing is just as thin when it comes to physical documents. As a Chinese state-owned entity operating in China, Irico looked principally to Chinese laws and regulations regarding what documents it needed to maintain in the ordinary course of business. *See supra* at 4. Chinese law specified certain categories of documents—including but not limited to financial records, operational documents, and administrative documents—to be retained in hard copy in Irico's archives, and Irico's own policies required retention of additional categories of hard copy documents. *Id*. In accordance with Chinese law and its own policies, Irico preserved these hard copy documents, which have been searched for materials responsive to Plaintiffs' requests for production, and responsive, non-privileged materials have been produced—including documents Irico would never have produced if it were the bad actor the R&R describes. *See supra* at 8-9. There is nothing to support the R&R's inference that Irico destroyed documents it would have preserved if this lawsuit had never happened.

Despite all that, and based largely on Irico's purportedly lackluster response to Pillsbury's February 2008 instruction to preserve "potentially relevant information," the R&R suggests that the Court should find that Irico acted "with intent to deprive plaintiffs of access to the true facts." R&R 65-66. As explained, that recommendation fails to grapple with the reality of Irico's standard retention practices. Nor does the R&R—or the Motion itself—provide any reason to think that when Irico received the Pillsbury instruction, it had any idea what the unelaborated phrase "potentially relevant" meant in the context of a massive U.S. antitrust claim from which Irico believed it was immune and which it expected would be voluntarily dismissed. R&R 64-65. Unlike other Defendants, Irico is a Chinese company that had virtually no experience with U.S. litigation and had not even directed any conduct toward the United States. The R&R faults Irico for "never bother[ing] to do a proper search for potentially relevant documents" after determining that it had never "actually sold any products in the U.S. market," R&R 33, but ignores the fact that upon concluding that it had never made U.S. sales, Irico determined in good faith that no further inquiry was necessary. Ex. 7 at 111:12-112:10.

The R&R disregards the actual—and ample—evidence of Irico's good faith. In 2008, when Irico came to appreciate that evidence of CRT sales in the United States would have been relevant,

DOCUMENT PREPARED
ON RECYCLED PAPER

1   Irico went to substantial lengths to determine whether such evidence existed with the specific aim

2   of preserving it. *See supra* at 6-7. That is not to say, of course, that all of Irico's conduct was a

3   model for future litigants. But to warrant the severe punishment the R&R recommends, that conduct

4   would need to support a finding that Irico "purposefully destroyed evidence *to avoid its litigation*

5   *obligations*." *WeRide Corp. v. Huang*, 2020 WL 1967209, at *12 (N.D. Cal. Apr. 24, 2020)

6   (quoting *Porter v. City & County of San Francisco*, 2018 WL 4215602, at *3 (N.D. Cal. Sept. 5,

7   2018)) (emphasis added); *Napster*, 462 F. Supp. 2d at 1072 (similar). There simply is no evidence

8   to support that conclusion, and all evidence is to the contrary. Indeed, the pertinent Federal Rule

9   comes with a warning that in assessing cases such as this one, "[t]he court should be sensitive to

10  the party's sophistication with regard to litigation," because "some litigants . . . may be less familiar

11  with preservation obligations than others." *See* Fed. R. Civ. P. 37 advisory comm. note to 2015

12  amend. To the extent Irico's efforts were misplaced, unduly narrow, or otherwise inadequate, what

13  they reflect is a run-of-the-mill failure to properly implement a litigation hold—not anything

14  resembling a refusal to do so with specific intent to destroy relevant evidence.

15          The authority the R&R invokes only confirms what is missing here. *Cf.* R&R 9-13. In *Leon*

16  *v. IDX Systems Corp.*, 464 F.3d 951, 956, 959 (9th Cir. 2006), sanctions were imposed on a party

17  who "wiped" data on a laptop with the specific "inten[t] to destroy information" relevant to pending

18  claims. In *Facebook, Inc. v. OnlineNIC Inc.*, 2022 WL 2289067, at *7-9 (N.D. Cal. Mar. 28, 2022),

19  the sanctioned party "admit[ted] to deleting vast amounts of ESI after the filing of the Complaint,

20  during discovery, and after the Special Master's appointment," and the "evidence demonstrate[d]

21  that Defendants redoubled their efforts to delete data after th[e] suit was filed," including by

22  creating "scripts specifically designed to delete database records." And in *Malone v. USPS*, 833

23  F.2d 128, 130 (9th Cir. 1987), and *In re Phenylpropanolamine (PPA) Products Liability Litigation*,

24  460 F.3d 1217, 1226 (9th Cir. 2006) (en banc), sanctions were imposed based on parties' outright,

25  no-excuse-offered refusal to file documents the Court required. For reasons already explained, none

26  of those cases has any bearing here.

27

28

### 2. *None of the alleged misconduct forecloses the prospect of a fair trial on the merits.*

Terminating sanctions are also unwarranted because none of the supposed evidence loss "eclipse[s] entirely the possibility of a just result." *Nursing Home*, 254 F.R.D. at 564; *see also, e.g.*, *Napster*, 462 F. Supp. 2d at 1071; *Advantacare Health Partners v. Access IV*, 2004 WL 1837997, at *5-7 (N.D. Cal. Aug. 17, 2004). Indeed, this Court's most recent published opinion on terminating sanctions—which the R&R does not cite—confirms that even conduct much worse than anything present here is insufficient to warrant termination if a trial on the merits remains possible. In *Google Play*, 664 F. Supp. 3d at 981, the defendant was "a well-known and 'really big' company . . . frequently a party to government proceedings and private litigation," and its employees were "no strangers to document production and discovery obligations." *Id.* at 982-83. The Court determined that it had "intended to subvert the discovery process" by "intentionally deciding not to" preserve ESI and then falsely representing to the Court that it had taken all reasonable steps to do so. *Id.* at 993. Nevertheless, the Court determined that terminating sanctions would be improper, because the "lost Chat communications" would not "decide[]" the case, and "the principle of proportionality demands that the remedy fit the wrong." *Id.* at 994.

The same principle governs here, as Plaintiffs' own assertions demonstrate. Throughout this litigation—and even before discovery was taken from Irico—Plaintiffs have described their evidence against Irico as "overwhelming." *See, e.g.*, ECF 5191 at 12. They claim to possess the fruits of "massive document and deposition discovery," including "tens of thousands of documents," over 250 depositions, and (according to them) an outright admission of "the existence of the conspiracy" and Irico's "participation in it." Ex. 34, Pls.' Ltr. Br. to Special Master (Mar. 21, 2022), at 3; *see also* ECF 6177 at 14-15. They also have obtained (over Irico's preserved objections) rulings that much of the third-party discovery in their possession, which they claim shows Irico's participation, is admissible for summary judgment purposes against Irico. ECF 6093; *see also* Mot. 28, 31 (describing minutes as "strong evidence of Irico's participation in the conspiracy," and overall evidence as not merely "strong," but "overwhelming"). Finally, in discovery against Irico,

DOCUMENT PREPARED ON RECYCLED PAPER

Plaintiffs have accessed massive quantities of archival material, data summaries, and expense reports, and have deposed five Irico employees. *See supra* at 8-9.

Irico of course disagrees with Plaintiffs' contention that the evidence demonstrates that it participated in the alleged conspiracy. But if Plaintiffs lose at trial, a lack of discovery from Irico will not be the reason why. And courts routinely deny terminating sanctions on similar records, particularly when the requesting party's cries of prejudice are contradicted by their own prior statements. *E.g.*, *Al Otro Lado, Inc. v. Wolf*, 2021 WL 631789, at *7 (S.D. Cal. Feb. 18, 2021) (party's assertion that they were forced to rely on "incomplete and spotty evidence" was in "obvious tension" with their motion for summary judgment, "which they presumably brought because they believe[d] the evidence in the case [was] . . . so overwhelmingly in their favor as to warrant judgment as a matter of law"), *report & rec'n adopted sub nom. Al Otro Lado, Inc. v. Mayorkas*, 2021 WL 1170212 (Mar. 29, 2021).[3]

In this case, moreover, Plaintiffs' statements are backed by the R&R's own observations. Indeed, the R&R concedes that much of the supposedly missing evidence—emails and copies of competitor meeting invitations, minutes, and follow-up communications—was already "produced by other defendants, listing Irico employees as attending and participating in competitor meetings from 1998 to 2006." R&R 62. In the R&R's stated view, there exists "*copious evidence* from other CRT producers (the other defendants in this litigation) showing Irico's participation in numerous conspiratorial meetings." *Id.* at 2 (emphasis added). And according to the R&R, that already-extensive record has been "fortified by substantial evidence developed in the years since" Irico's default was set aside. *Id.* at 3.

If the R&R is right that the evidence on the merits is "copious," that means the case must be *tried*, not that it should be resolved via a sanctions order that precludes Irico from raising its

---

[3] *See also, e.g.*, *Reinsdorf v. Skechers U.S.A., Inc.*, 296 F.R.D. 604, 631 (C.D. Cal. 2013) (concluding plaintiff was not prejudiced by defendant's failure to produce marketing binder where defendant "produced other, and in some instances, identical or better evidence" of its alleged wrongdoing and plaintiff "already possessed evidence of the same alleged" conduct); *Apple Inc. v. Samsung Elecs. Co.*, 888 F. Supp. 2d 976, 994 (N.D. Cal. 2012) ("*Apple II*") ("[T]he Court finds it difficult to conclude that Apple's 'ability to go to trial' was significantly hampered where discovery in this case has been so voluminous." (citing, *inter alia*, *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 386 (9th Cir. 2010))).

DOCUMENT PREPARED
ON RECYCLED PAPER

defenses. "Due process limits the imposition of the severe sanctions of dismissal or default to extreme circumstances," and "prevents their imposition merely for punishment of an infraction that *did not threaten to interfere with the rightful decision of the case*." *Fjelstad*, 762 F.2d at 1338 (cleaned up, emphasis added). The R&R fails to explain why the evidence that has apparently persuaded the Special Master on liability, *e.g.*, R&R 2-3, would stand so little chance of persuading a jury.

Plaintiffs' assertion that "documents from the files of other defendants" are not as "strong[]" as Irico-produced documents, Mot. 38, also rings hollow. Plaintiffs do not even attempt to square that complaint with their prior statements that the evidence in their possession is "overwhelming." *See supra* at 20.[4] And in any event, the question for terminating sanctions is not whether there is *some* prejudice—as there will be in virtually every case in which *any* sanction can be imposed— but instead whether that prejudice rises to the level of warranting outright default. Under that standard, the question is not merely whether the Plaintiff's case could have been stronger, but instead whether it is "impossible for [the] court to be confident that the parties will ever have access to the true facts." *Shenzhenshi Haitiecheng Sci. & Tech. Co., Ltd. v. Rearden LLC*, 2016 WL 5930289, at *10 (N.D. Cal. Oct. 11, 2016).[5] For reasons explained, that standard is not satisfied here. By Plaintiffs' own admission, any lost materials were "not the only source of evidence in support of [Plaintiffs'] claims." *See Al Otro Lado*, 2021 WL 631789, at *7. That alone is dispositive, because even in cases involving "reprehensible" failures to produce important documents, terminating sanctions are "excessive" when "secondary sources" exist and can be used to prove the key facts. *Ahcom, Ltd. v. Smeding*, 2011 WL 3443499, at *9 (N.D. Cal. Aug. 8, 2011) (citing *Med. Lab'y Mgmt. Consultants v. Am. Broad. Cos.*, 306 F.3d 806, 825 (9th Cir. 2002)); *see Nursing*

---

[4] The R&R's speculation that certain Irico employees' files "may have contained meeting minutes or notes of Irico's attendance at competitor meetings," R&R 33, is unsupported. This case had ten groups of defendants; only two regularly maintained such detailed notes. *See* ECF 6150-1 at 275-79 (listing documents evidencing competitor meetings, almost all from either Chunghwa or Samsung). And *those defendants produced them*, so any prejudice is minimal if it exists at all.

[5] *Cf. Fast v. GoDaddy.com LLC*, 340 F.R.D. 326, 354 (D. Ariz. 2022) (terminating sanctions improper where conduct did "not foreclose a meaningful" adjudication, even though it "deprive[d]" opponent "of evidence that would be favorable to their case"); *Advantacare*, 2004 WL 1837997, at *5-7 (similar).

DOCUMENT PREPARED ON RECYCLED PAPER

1    *Home*, 254 F.R.D. at 564; *see also, e.g.*, *Microvention, Inc. v. Balt USA, LLC*, 2023 WL 7476998,

2    at \*28-29 (C.D. Cal. Oct. 5, 2023) (no terminating sanctions where moving party "still ha[d] some

3    evidence relevant to" issue on which evidence was lost), *report & rec'n adopted*, 2023 WL

4    7634109 (Nov. 13, 2023).

5    **B.    Plaintiffs' Contentions Regarding The Setting Aside of Default Do Not**

6    **Warrant Terminating Sanctions.**

7    The R&R also posits that in setting aside an earlier default, Irico intentionally

8    misrepresented its reasons for defaulting. R&R 67-68. That suggestion is wrong and should be

9    rejected, not least because in order to make it, the R&R violated a Court order by quoting,

10   characterizing, and relying on the Yan Document even though this Court already determined that

11   document to be protected work product. The R&R recommends that the Court reconsider its work-

12   product ruling, but it provides no valid basis for the Court to do so. In all events, a mere

13   recommendation, whatever its merits, cannot justify violating this Court's ruling, which remains

14   valid and binding unless and until *this Court* says otherwise. In relying on privileged content not

15   properly in the record, the R&R not only erred, but also severely prejudiced Irico, which cannot

16   address the Yan Document's merits without risking a privilege waiver.

17   **1.   *No record evidence supports the Special Master's suggestion that Irico***

18   ***deceived the Court.***

19   At the time the default was lifted, Irico argued—and the Court agreed—that Irico had

20   multiple potentially meritorious defenses, including that (i) it did not knowingly participate in the

21   overarching conspiracy the Plaintiffs alleged; (ii) the scope of its participation in any conspiracy

22   was limited; and (iii) Irico possessed jurisdictional immunity. ECF 5240 at 16-18. Irico further

23   argued, and the Court agreed, that Irico's belief in its immunity defenses rendered its default non-

24   culpable. *Id.* at 18-19 (quoting ECF 5215-1 ¶ 5).

25   No evidence supports the R&R's suggestion that Irico misled this Court by asserting that

26   its belief in its own immunity explained its initial decision to withdraw from this lawsuit in 2008.

27   R&R 67-68. As discussed below, *see infra* at 26-27, the Yan Document is not properly in the record.

28   And the only record evidence the R&R cites, Mr. Yan's deposition testimony, *see* R&R 4-6, 67-

68, does not come anywhere close. Although the R&R suggests it is a smoking gun that Mr. Yan did not say at his deposition "that Irico decided to abandon the litigation due to its belief that it was immune from suit," R&R 67, *see also id.* at 5-6, the R&R fails to note that Mr. Yan also did not say otherwise. Indeed, Mr. Yan was never asked any question that would have called for such a response. To the contrary, the meandering, page-long deposition answer the R&R faults for not addressing immunity was given in response to the completely unrelated question whether Mr. Yan was "preliminar[il]y responsible for gathering information to give to Pillsbury after [Irico] w[as] served with the complaint." *Id.* at 5 (quoting Ex. 7 at 118:5-7). It is completely unsurprising—and not at all inculpatory—that in answering that question, Mr. Yan did not address Irico's immunity defenses.

The rest of Mr. Yan's deposition is either irrelevant or affirmatively contrary to the R&R's suggestions. For instance, Mr. Yan made clear that Irico believed its lack of U.S. connections differentiated it from other defendants who were clearly subject to U.S. jurisdiction. In language the R&R itself quotes, Mr. Yan explained that in considering whether to abandon the litigation, Irico relied on its observation that all the "other companies were big multinational companies" that "not only had CRT products in the U.S. market," but also had "whole [TV] sets in the U.S. market," while "Irico, at that time, had neither[.]" R&R 5 (quoting Ex. 7 at 119:18-22). Mr. Yan went on to explain that Irico abandoned the litigation in part based on a worry that if Irico formed a group with those other defendants, the distinction would go "down the drain." Ex. 7 at 120:6-9. That explanation, fairly construed, is precisely what the R&R says was missing. At minimum, it strongly indicates what the answer would have been if Plaintiffs had asked the question.

Further, to the extent the R&R finds it significant that Mr. Yan mentioned other considerations as well—including that Irico "knew that it would be a long process for the plaintiffs and the defendants to form the litigation groups and to actually go through the proceeding, so . . . [it] wait[ed] for the plaintiffs to file an independent, separate lawsuit against Irico," R&R 66-67 (quoting Ex. 7 at 120:10-14)—it wrongly assumes that a corporate entity can have only one truthful reason for a particular course of conduct. That assumption is directly contrary to this Court's prior rulings in this case. *Cf.* ECF 5240 at 18 (holding that "a defendant's conduct [is]

culpable" only when "there is *no* explanation of the default inconsistent with a devious, deliberate, willful, or bad faith failure to respond") (quoting *United States v. Signed Pers. Check No. 730 of Yubran S. Mesle*, 615 F.3d 1085, 1092 (9th Cir. 2010)). Nor is a concern about lengthy, expensive litigation in any way inconsistent with a simultaneous belief in immunity; indeed, such concerns are largely why immunity exists. *See* ECF 5237 at 38:12-16 ("Immune people don't have to deal with anything, because they're immune. They don't need to deal with me, they don't need to deal with you, they don't need to deal with United States courts, because they're immune."). Put simply, nothing Mr. Yan might have said about Irico's *other* possible motivations sheds any light on the relevant question, which is whether Irico believed in its immunity defenses and abandoned the litigation at least partly because of them.

The R&R also errs in suggesting that Irico misled the Court as to whether it actually believed that it lacked sales to U.S. customers, so as to support immunity from suit. *See* R&R 35-36. In 2017, when Irico filed its Motion to Set Aside and the supporting Zhang Declaration, Irico was not "aware of any sales by Irico of CRT products . . . to customers in the United States, either directly or indirectly through a distributor." ECF 5215 at 12 (quoting ECF 5215-1 ¶ 11). Even now, with full hindsight, it is clear that Irico had no direct sales of CRTs or CRT products into the United States. The examples of supposedly contrary evidence actually confirm the point, including the small number of sales through an unaffiliated distributor that were billed to a U.S. customer but shipped elsewhere, and the single shipment (of 2016 units) that was sold and shipped by that unaffiliated distributor into the United States. Ex. 35, Irico's 3rd Supp. Resp. to DPPs' 1st Rogs., at 12-13; Ex. 17 at 16-17; ECF 5421, ex. 17.[6] These sales were not reported to Irico at the time they were made. Ex. 35 at 9. In any case, this later factual development does not show that Motion or the Declaration was misleading, much less intentionally so. Moreover, any effort to show prejudice on this basis would fail from the outset, because the Court's Order Setting Aside Default stated

---

[6] The R&R wrongly states that "there [was] no dispute" that these distributor sales were "relevant to jurisdiction." R&R 36 (citing ECF 5324 at 4:1-2). In fact, Irico argued that indirect sales cannot establish the "direct effect" required for jurisdiction. *See* ECF 5312 at 16-20. Accordingly, even if Irico knew of the existence of these indirect sales in 2010, that knowledge would not have negated or rendered unreasonable its belief that it was immune from suit.

1   explicitly that the Zhang Declaration "is not sufficient evidence and the Court has not considered

2   it" for its evidentiary value. ECF 5240 at 8. Instead, the Court considered the Zhang Declaration

3   only insofar as it contained "factual allegations" sufficient to raise a potentially meritorious defense.

4   *Id.* 17-18. It is not sanctionable conduct to make factual allegations that the trier of fact ultimately

5   concludes are contrary to the evidence. But even that has not happened here; instead, this Court

6   ruled on the jurisdictional issue without even reaching the question whether any Irico CRTs were

7   sold into the United States, ECF 5637 at 12.

8   ### 2. The R&R violates this Court's prior Order by quoting, characterizing, and
9   ### relying on a document this Court has already held to be privileged.

10   The existing record being insufficient, the R&R bases its recommended finding of

11   misconduct largely on a single non-record writing dubbed the Yan Document. R&R 67; *see supra*

12   at 23. That is error for various reasons. To begin, it is improper to rely on evidence not in the record,

13   *e.g.*, *Parra v. Life Ins. Co. of N. Am.*, 258 F. Supp. 2d 1058, 1068 (N.D. Cal. 2003), whether in the

14   context of sanctions or otherwise, *e.g.*, *Vollmer v. Publishers Clearing House*, 248 F.3d 698, 710

15   (7th Cir. 2001) (vacating sanctions order that "inappropriate[ly]" used information not "presented

16   in the record").

17   Moreover, in publicly quoting and characterizing the Yan Document, R&R 67, the R&R

18   contravenes this Court's prior ruling that the Yan Document is privileged work product, ECF 6215

19   at 9-10. The R&R attempts to excuse that intrusion by recommending that the prior order be

20   reversed. R&R 7, 67 n.162. But to state the obvious, a special master lacks the power to nullify this

21   Court's orders. Intentionally disclosing Irico's privileged materials would warrant sanctions if done

22   by a litigant, *e.g.*, *Scott v. Chuhak & Tecson, P.C.*, 725 F.3d 772, 779 (7th Cir. 2013), and provides

23   ample basis not just to reject the R&R's recommendation, but to withdraw the Referral.

24   In all events, the R&R provides no reasoned basis to reconsider the Court's privilege order.

25   Reconsideration is inappropriate in the absence of clear error or manifest injustice. *Sullivan v. SII*

26   *Investments, Inc.*, 2018 WL 1367340, at *2 (N.D. Cal. Mar. 16, 2018). The R&R points to no

27   "newly discovered evidence" demonstrating the prior ruling to be wrong; no "intervening change

28   in controlling law"; no "material difference in fact" since the time of the previous ruling; and no

DOCUMENT PREPARED
ON RECYCLED PAPER

"manifest failure by the Court to consider material facts or dispositive legal arguments which were presented to the Court" before the previous ruling. *Celgard, LLC v. Shenzhen Senior Tech. Material Co. Ltd. (US) Research Inst.*, 2021 WL 11714935, at *1-2 (N.D. Cal. Dec. 7, 2021). Those are the prerequisites to reconsideration, *id.*, and not one of them is satisfied here.

The reasons the R&R does give for disclosing information from the Yan Document are unsupportable. The R&R states that it reached its new view after the Special Master "reread the Yan Document in light of Irico's misstatements in its motion to set aside," and after concluding that Irico may have waived privilege through its motion to lift default and Mr. Yan's deposition testimony. R&R 67 n.162. But as explained, there were no "misstatements." *Cf. id.* In any event, Irico filed that motion in *2017*, and Mr. Yan's deposition was in *2022*. Neither provides any basis to reconsider the *2023* Order in which the Court determined—based on the Special Master's own recommendation—that the Yan Document is privileged work product and cannot be ordered disclosed. Nor does the R&R demonstrate that this Court's prior order was even wrong, much less manifestly so. And there is no support for the R&R's suggestion, R&R 67 n.162, that work-product protection applies only to legal advice that turns out to be meritorious. *See, e.g.*, *United States v. Hatfield*, 2010 WL 183522, at *5 n.7 (E.D.N.Y. Jan. 8, 2010).

In sum, the R&R's invasion of Irico's work product protection was both uninvited and unjustifiable. Irico therefore urges the Court to reject the R&R's recommendation to reconsider the privilege ruling and, instead, to appropriately remedy the R&R's improper disclosure of certain of the Yan Document's contents. *See, e.g.*, Fed. R. Evid. 502. At a bare minimum, if the Court is inclined to accept the R&R's recommendation to reconsider the privilege ruling, Irico requests an opportunity for limited supplemental briefing to address Irico's disagreements with the R&R's characterization of the Yan Document. To the extent those disagreements are not briefed here, it is due to privilege concerns and should not be construed as acceptance of any of the R&R's characterizations.

DOCUMENT PREPARED
ON RECYCLED PAPER

**3.   *The set-aside issue is a red herring that has nothing to do with the discovery conduct on which the R&R purports to be based.***

In all events, the R&R errs in assigning any relevance to the question whether Irico believed in its FSIA defense. As explained, due process requires that in order to warrant termination, challenged conduct must "*relate*[] *to the matters in controversy*'" and "threaten to interfere with the rightful decision of the case." *Fjelstad*, 762 F.2d at 1338 (cleaned up, emphasis added). The set-aside issue fails that test on its face, because it relates only to a procedural matter—Irico's default and the lifting thereof—that is by definition "wholly unrelated to the merits of the controversy." *See Phoceene Sous-Marine, S. A. v. U.S. Phosmarine, Inc.*, 682 F.2d 802, 806 (9th Cir. 1982) (reversing terminating sanctions based on deception regarding a "peripheral matter").

In concluding otherwise, the R&R reasons that the conduct surrounding the lifting of default in 2017 is "directly related" to the loss of evidence "in 2008-2018." R&R 68. But nothing that happened in 2017 *caused* anything that happened in 2008. Nor is there any basis to find that the lifting of default caused any loss of evidence in 2017 or thereafter. And even assuming the conduct in question delayed the trial, "delay alone" is insufficient to warrant dismissal when, as here, the conduct in question does not "prejudice the outcome." *United States ex rel. Wiltec Guam, Inc. v. Kahaluu Const. Co., Inc.*, 857 F.2d 600, 604 (9th Cir. 1988). That is especially so given the Court's prior ruling that Plaintiffs' inaction as to Irico was partly to blame for any prejudice arising from this case's slow progress. ECF 5240 at 15.[7] At bottom, the R&R invokes the set-aside issue not because it has hampered Plaintiffs' case on the merits, but instead to "elevate" wholly unrelated discovery issues, *see supra* at 16 ff., *infra* at 29 ff., "to a level that would allow" terminating sanctions. *Cf. Faerfers v. Caviar Creator, Inc.*, 359 F. App'x 739, 741-42 (9th Cir. 2009). In so doing, it contravenes due process, which prohibits imposing termination for conduct lacking a clear "nexus" to the "matters in controversy" and "[t]he merits of the dispute." *Id.*

---

[7] As the IPPs have openly conceded (when they declined to pursue default in the first instance), any default judgment against Irico would likely be non-executable in China and therefore render much of this proceeding a waste of resources. *See* ECF 4734.

DOCUMENT PREPARED ON RECYCLED PAPER

**C.     Plaintiffs' Contentions Regarding the Su Deposition Do Not Warrant Terminating Sanctions.**

The R&R also errs in recommending terminating sanctions based on Mr. Su's failure to appear for deposition. *Cf.* R&R 68-70. Black-letter law and the undisputed record foreclose any finding that Irico was culpable for that failure. In any event, Mr. Su is not remotely the critical witness the R&R suggests.

### 1.   Irico had no control over Mr. Su's failure to appear.

A Rule 37 order "compels [a] party to use its best efforts to secure [a] nonparty's attendance at [a] deposition." *Sali v. Corona Reg'l Med. Ctr.*, 884 F.3d 1218, 1224 (9th Cir. 2018). It does not, however, "demand the impossible." *Id.*; *see also, e.g.*, Fed. R. Civ. P. 37(d)(1)(A) (nonparty witness's failure to appear cannot generally be attributed to party). An organization "cannot be compelled to produce" a *former* employee for deposition "absent extraordinary circumstances" demonstrating that the former employee remains within the organization's control. *Rundquist v. Vapiano SE*, 277 F.R.D. 205, 208 (D.D.C. 2011). No such circumstances are present here, and in suggesting otherwise, the R&R errs.

To begin, the R&R errs in suggesting that Irico "failed to provide any evidence that . . . any concerns regarding Covid-19 were outside of their control." R&R 69 n.164. As Plaintiffs do not dispute—but the Report fails to mention—depositions are prohibited in mainland China, requiring deponents to travel to foreign jurisdictions. *See supra* at 10. In 2022, such travel was inevitably "affected by the pandemic and its resulting and evolving travel regulation," in ways Irico could not possibly have controlled. *Juul Labs, Inc. v. Chou*, 2022 WL 2161063, at *8 (C.D. Cal. May 6, 2022) (denying sanctions for failure of a defendant to appear for deposition due to covid-related travel restrictions); *see also, e.g.*, *Bella+Canvas, LLC v. Fountain Set Ltd.*, 2022 WL 3697358, at *18 (C.D. Cal. June 29, 2022) (emphasizing logistical and safety concerns surrounding travel from China to foreign jurisdictions for depositions).

The R&R is thus wrong to equate Irico's situation to that of parties who made no effort whatsoever to obtain a nonparty's appearance. *See* R&R 69 n.164 (citing *SEC v. Hong*, 2021 WL 4803497, at *4 (C.D. Cal. Sept. 17, 2021), *report & rec'n adopted*, 2021 WL 4923310 (Oct. 21,

DOCUMENT PREPARED
ON RECYCLED PAPER

2021) (sanctioning defendants who failed to "provide any evidence that they even attempted" to travel to the scheduled place of deposition)). The record confirms that Irico undertook substantial, good-faith efforts to arrange witness depositions in foreign jurisdictions, and that Mr. Su's deposition (and his deposition alone) was prevented by circumstances beyond Irico's control. *See supra* at 10-11. The R&R appears to fault Irico for the "four extensions of time, a change of venue and extensive negotiations due to COVID-19 quarantine restrictions" that occurred before Mr. Su left Irico and thus became unavailable. R&R 41. But those were unavoidable, Covid-related delays, and all occurred when Irico's in-house counsel had no knowledge that Mr. Su would leave the company. Nor were they remotely prejudicial, because, as subsequent events made clear (but Irico did not know at the time), Mr. Su was *never* going to be willing to travel outside mainland China during the height of Covid. *See supra* at 11. Moreover, the R&R's apparent skepticism of Mr. Su's reasons for retiring is neither relevant nor supportable. *Cf.* R&R 69. Even if the R&R were right that Mr. Su's travel-related concerns in Spring 2022 were not "valid," *id.*, which is a doubtful proposition, they were *Mr. Su's* concerns, and there is no basis to sanction *Irico* for them.

The R&R also errs in analogizing to a case where a party failed promptly to disclose that a witness intended to resign. *See* R&R 68-69 (citing *Beijing Choice Elec. Tech. Co. v. Contec Med. Sys. USA Inc.*, 2021 WL 9184385, at *4 (N.D. Ill. Dec. 17, 2021) (imposing non-terminating sanctions), *report & rec'n adopted* 2022 WL 3053550 (May 12, 2022)). Unlike the party in *Beijing Choice*, Irico had no advance warning that Mr. Su would refuse to travel for deposition—indeed, every indication was to the contrary, as Mr. Su appeared to be fully cooperating with Irico's efforts to obtain the requisite travel permissions. After Irico's in-house counsel learned of Mr. Su's retirement on May 31, 2022, Irico gave prompt notice to Plaintiffs. *See supra* at 11-12.

Finally, the R&R's suggestion that Irico lied about Mr. Su's resignation, *see, e.g.*, R&R 48-54, is also baseless. Mr. Su did not continue to act as a managing agent of Irico after his resignation. *See, e.g.*, *Rundquist*, 277 F.R.D. at 208 (deposition by notice permissible only for individuals who are "managing agents" at time of deposition). The fact that he responded to Irico on a few various housekeeping items and received a standard government-mandated living expense stipend after his resignation, *see supra* at 11, comes nowhere close to establishing that Irico could have forced him

DOCUMENT PREPARED
ON RECYCLED PAPER

to travel to Macao for a deposition that he had just retired from the company to avoid. *See, e.g.*, *Sali*, 884 F.3d at 1224 (no sanctions where "despite [party's] best efforts, a recalcitrant nonparty witness refuse[d] to attend an ordered deposition").

### 2. Mr. Su's failure to appear does not prevent a trial on the merits or significantly prejudice Plaintiffs.

Mr. Su is also not the key witness the R&R makes him out to be. Plaintiffs sought Mr. Su's deposition because Irico listed him as having "knowledge of facts that support" *Irico's defenses*. *See supra* 9. But he is not the key or sole witness, even as to those defenses. To the contrary, as to every affirmative defense for which Mr. Su was identified as having relevant information, Mr. Wang or Mr. Yan was also listed. *Id*. Plaintiffs not only deposed both of them, but did so with the knowledge that Mr. Su was no longer within Irico's control. *See supra* at 12. Further, the R&R's recommended finding that Mr. Su "was an Irico Group general manager of purchasing and sales for at least eight years during the class period," R&R 50, is both wrong and directly contradicted by Mr. Su's employment record, which shows that Mr. Su worked *in Human Resources* for most of the 1995-2007 period relevant to this case, and was transferred to a commercial role only in April of 2005, after CRT monitor sales in the U.S. were dead and CRT television sales nearly so. *See supra* at 9. Mr. Su recalls having attended only *one* meeting with competitors present—a *customer*-sponsored event which the R&R inaccurately labels a "competitor meeting," R&R 50—and neither CRT prices nor production levels were discussed there. *See supra* at 9. At most, the lack of access to such a tangential witness warrants barring Mr. Su from testifying at trial.

### 3. Any delays in imaging the Su laptop were nonculpable, nonprejudicial, and utterly peripheral to Plaintiffs' claims.

The R&R also errs in faulting Irico for alleged delays in the production of ESI from Mr. Su's laptop. Among other issues, the R&R faults Irico for (1) failing to produce all of its documents in response to the first order regarding discovery of documents related to Mr. Su's departure, when that first order demanded a "targeted" collection on seven discrete issues within a two-week timeframe, and the later orders that generated additional documents demanded a broader forensic collection of ESI requiring months of intensive work to complete; (2) complying with legally

DOCUMENT PREPARED
ON RECYCLED PAPER

obligatory Chinese state secret laws implicated by that broader forensic collection; (3) failing to raise the state-secret concern earlier, even though the concern did not arise until the broader collection was ordered; and (4) proposing in good faith a procedure for imaging Mr. Su's laptop that the Special Master later clarified, in the Second Interim Order, was not the procedure he had in mind when he issued the First Interim Order. R&R 46; *see supra* 13-14; ECF No. 6275 at 2 (construing proposed imaging procedure as arguable effort to "seek clarification" of First Interim Order). In short, the R&R faults Irico—potentially to the tune of billions of dollars—for responding reasonably to shifting discovery obligations.

Even if that were not error (which it is), any delays relating to Mr. Su's laptop are irrelevant to the sanctions issue, because they worked no prejudice whatsoever. The laptop was ultimately imaged eleven days after the Special Master's Second Interim Order, its contents were reviewed, and there is no suggestion that any relevant documents were lost during the supposed delay. Again, "delay alone" cannot warrant terminating sanctions. *Kahaluu Const.*, 857 F.2d at 604. Further, this entire issue—which was the subject of *four of the five orders* on which the R&R's recommendation is based, *see* R&R 56-57—concerned an entirely peripheral matter, namely, whether Irico can be faulted for Mr. Su's refusal to appear for deposition. As discussed above, Irico was not, and the documents produced did not show otherwise. *See supra* at 29 ff. But in all events, the issue is far too attenuated from the merits to support the notion that a fair trial in this case would be impossible.

## II.     To The Extent The Court Finds Any Misconduct, Any Remedy Should Be Appropriately Tailored.

As explained, the conduct the Motion alleges is insufficient to warrant any sanctions, much less the severe sanction the R&R recommends. Any loss of evidence at the litigation's outset was non-culpable or negligent at worst; this Court already made clear that the blame for any subsequent loss lay partly at Plaintiffs' feet; and most of the conduct the R&R relies on has no bearing on whether this case can be fairly tried. But if the Court is inclined to order sanctions, it should consider lesser sanctions such as precluding Irico from calling certain witnesses or challenging the admissibility of certain documents, or, at most, instructing the jury that it may draw an adverse inference is the most that could be warranted. Furthermore, and at a bare minimum, Irico should be

1    permitted to litigate both its meritorious defenses and damages even in the event the R&R's

2    recommendation with respect to Plaintiffs' case in chief is accepted.

3            **A.      Lesser Sanctions Would Sufficiently Remedy Any Prejudice to Plaintiffs.**

4            A trial court's discretion to order sanctions is not unlimited. *Apple Inc. v. Samsung Elecs.*

5    *Co.*, 881 F. Supp. 2d 1132, 1135-36 (N.D. Cal. 2012) ("*Apple I*") (footnotes omitted). To the

6    contrary, it is error to order sanctions beyond what is necessary to remedy the actual prejudice

7    caused by the conduct in question. *See, e.g.*, *Google Play*, 664 F. Supp. 3d at 994; *Apple II*, 888 F.

8    Supp. 2d at 992-93. "Courts should choose the least onerous sanction corresponding to the

9    willfulness of the [party's conduct] and the prejudice suffered by the victim," and any sanction

10   ordered "should be commensurate" to the alleged wrongdoer's "motive or degree of fault." *Apple*

11   *II*, 888 F. Supp. 2d at 992-93 (cleaned up). In choosing a sanction, "[p]roportionality is the

12   governing concept." *Google Play*, 664 F. Supp. 3d at 994; Fed. R. Civ. P. 37(e)(2) advisory comm.

13   note to 2015 amend. (explaining that the "severe measures authorized by [subdivision (e)(2)] should

14   not be used when . . . lesser measures such as those specified in subdivision (e)(1) would be

15   sufficient to redress the loss").

16           Terminating sanctions are the most severe penalty there is. *See* R&R 75-76. And as

17   explained, *supra* at 16 ff., none of the conduct Plaintiffs allege would prevent this case from being

18   tried. Indeed, the IPPs and Irico have worked the case up almost to trial, including exchanging

19   exhibit lists (including over 1600 plaintiff exhibit designations, with more to come from the DPPs),

20   witness lists (including 85 witnesses), deposition designations, and jury instructions. *See supra* at

21   12-13. And Plaintiffs continue to maintain not just that they *can* win at trial, but that they will. *See*

22   *supra* at 20. In such circumstances, termination is categorically improper. To the extent any

23   sanction is warranted—and again, none is—it must be proportional. For instance, to the extent the

24   Court determines that ESI or other documents from the relevant period were lost in a manner that

25   warrants a remedy, the Court could order that all documents produced by Irico, or all meeting notes

26   produced by other defendants, be deemed admissible at trial. Similarly, to the extent the Court

27   determines that Mr. Su's failure to appear for deposition warrants a remedy, Irico could be barred

28   from calling Mr. Su as a witness at trial pursuant to Federal Rule of Civil Procedure 26(a)(3)(A)(i).

1    Additionally, the Court could award costs and fees associated with Plaintiffs' Motion, a remedy

2    courts often find sufficient even when experienced U.S. litigants (unlike Irico) commit intentional

3    discovery violations (unlike Irico). *E.g.*, *Google Play*, 664 F. Supp. 3d at 994.

4            To the extent the Court is inclined to go further than that, yet another alternative less

5    draconian than terminating sanctions would be an adverse-inference instruction informing the trier

6    of fact of any conduct that might warrant an adverse finding. Such an instruction would be more

7    than sufficient to remedy any potential prejudice. *See, e.g.*, *Io Grp. Inc. v. GLBT Ltd.*, 2011 WL

8    4974337, at *8 (N.D. Cal. Oct. 19, 2011); *Fast*, 340 F.R.D. at 353-54 (no terminating sanctions

9    where an "adverse inference instruction . . . allow[ing] the jury to infer that the information

10   intentionally deleted" was "unfavorable" would "help alleviate the prejudice"). That sanction is far

11   from a mere slap on the wrist. It is well-established that adverse-inference instructions are among

12   the harshest sanctions available, *see, e.g.*, *Apple II*, 888 F. Supp. 2d at 993-94 (collecting cases),

13   and "plac[e] the risk of an erroneous judgment on the" sanctioned party. *SEC v. Mercury Interactive*

14   *LLC*, 2012 WL 3277165, at *10 (N.D. Cal. Aug. 9, 2012).

15           **B.      None Of The Challenged Conduct Bears On The Meritorious, Complete**

16           **Defenses Irico Has Advanced And Will Proffer At Trial.**

17           It would also be error—and clearly disproportional—to categorically strike Irico's defenses.

18   For instance (and *inter alia*), Irico has argued on summary judgment that the conduct Plaintiffs seek

19   to challenge was required by Chinese laws and regulations, such that international comity requires

20   rejection of Plaintiffs' claims as a matter of law, ECF 6225 at 25-35; that Irico lacks sufficient

21   contacts with certain states to be subject to certain of IPPs' state-law claims, *id.* at 16-19; and that

22   IPPs have failed to identify sufficient intrastate conduct to establish a claim under certain other

23   state laws, *id.* at 19-21. There is no basis to strike those defenses, which could not even arguably

24   be overcome by any of the supposedly missing evidence. Indeed, if the R&R were followed, it

25   would be the *sanction*, not Irico's conduct, that made a fair result in this case impossible.

26           **C.      At A Bare Minimum, Irico Should Be Permitted To Contest Damages.**

27           The R&R also errs by extending its recommendation to the damages phase. *E.g.*, R&R 3.

28   Both Defendants are entitled to due process, and Irico Display has an additional Seventh

DOCUMENT PREPARED
ON RECYCLED PAPER

Amendment right to a damages trial before a jury. *See, e.g.*, ECF 6070, 6100 (providing that claims against Irico Display will be tried to jury, while claims against Irico Group will be tried before Court simultaneously). Yet despite making no finding that any of the supposed wrongdoing would hamper a fair trial on damages, the R&R suggests doing away with a that trial entirely, even on damages issues. R&R 78.

For reasons already explained, *see supra* at 33 ff., that is error. The jury-trial right is "fundamental and sacred," *Jacob v. City of New York*, 315 U.S. 752, 752 (1942), which is part of why due process precludes issuance of terminating sanctions when a fair trial remains possible, *see Fjelstad*, 762 F.2d at 1338. Indeed, courts have a "narrower range of discretion" with respect to terminating sanctions than with respect to others, because they "represent[] in effect an infringement upon a party's right to trial by jury under the seventh amendment and run[] counter to sound public policy of deciding cases on their merits, and against depriving a party of his fair day in court." *Wilson*, 561 F.2d at 503-04 (cleaned up). The law thus requires a trial on damages, even if liability is resolved by default. *See, e.g.*, *Hester v. Vision Airlines, Inc.*, 687 F.3d 1162, 1173 (9th Cir. 2012). That is especially so given the lack of prejudice. The IPPs chose not to submit a new expert report on damages after Irico's re-entry into the case, instead relying on the IPPs' prior, pre-Irico damages report based on information discovered from other defendants. Nor has the DPPs' damages expert claimed to be lacking in any information from Irico in conducting his analysis. And as this Court has already recognized—contrary to the R&R's recommendation, *see* R&R 3—the "size of Plaintiffs' prayer" for relief is directly relevant to whether it would be prudent or permissible to resolve this entire case through an entry of default. ECF 5240 at 19.

## CONCLUSION

For all the foregoing reasons, Irico respectfully requests that the Court deny the Motion and decline to adopt the R&R.

DOCUMENT PREPARED
ON RECYCLED PAPER

1    Dated: June 13, 2024                              **NORTON ROSE FULBRIGHT US LLP**

2

3                                                      /s/ *Jeffrey B. Margulies*
                                                       JEFFREY B. MARGULIES (BAR NO. 126002)
4                                                      KAYLEE YANG (BAR NO. 303464)
                                                       Norton Rose Fulbright US LLP
5                                                      555 California Street, Suite 3300
                                                       San Francisco, California 94104
6                                                      Telephone: (213) 892-9200
                                                       Facsimile: (213) 892-9494
7                                                      jeff.margulies@nortonrosefulbright.com
8                                                      kaylee.yang@nortonrosefulbright.com

9                                                      GERALDINE YOUNG (admitted *pro hac vice*)
                                                       1301 McKinney, Suite 5100
10                                                     Houston, Texas 77010
                                                       Telephone: (713) 651-5151
11                                                     Facsimile: (213) 651-5246
                                                       geraldine.young@nortonrosefulbright.com
12

13

14                                                     *Attorneys for Defendants Irico Group Corp.*
                                                       *and Irico Display Devices Co., Ltd.*

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DOCUMENT PREPARED
ON RECYCLED PAPER

**CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the foregoing **DEFENDANTS IRICO GROUP CORP. AND IRICO DISPLAY DEVICES CO., LTD.'S OBJECTIONS TO SPECIAL MASTER'S REPORT & RECOMMENDATION ON PLAINTIFFS' MOTION FOR TERMINATING SANCTIONS**  was filed via CM/ECF on June 13, 2024, and as a result has been served on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

By: *Matthew Park*
Matthew Park