# Exhibit 1

**SAVERI & SAVERI, INC.**
706 SANSOME STREET
SAN FRANCISCO, CALIFORNIA 94111
TELEPHONE: (415) 217-6810
TELECOPIER: (415) 217-6813

*Trump Alioto Trump & Prescott*
ATTORNEYS LLP
2001 Union Street, Suite 482
San Francisco, California 94123
(415) 563-7200
FAX (415) 346-0679

March 20, 2023

*VIA EMAIL*

The Honorable Vaughn R. Walker
Law Office of Vaughn R. Walker
Four Embarcadero Center, Suite 2200
San Francisco, CA 94111
vrw@judgewalker.com

**Re:**   *In re Cathode Ray Tube (CRT) Antitrust Litigation* – **MDL No. 1917, Master File No. 07-CV-5944-JST**

Dear Judge Walker:

## INTRODUCTION

Direct Purchaser Plaintiffs ("DPPs") and Indirect Purchaser Plaintiffs ("IPPs") (together "Plaintiffs") submit this Motion for Terminating or Alternative Sanctions Against Defendants Irico Group Corporation and Irico Display Devices Co., Ltd. (collectively, "Irico" or the "Irico Defendants"). Plaintiffs submit this motion in accordance with the Court's order of December 6, 2022, ECF No. 6115 ("Su Order"). The Su Order invited Plaintiffs to "submit motions for sanctions for any discovery misconduct throughout the history of this case. . . . In particular, [Plaintiffs] may submit their motion for sanctions for Irico's failure to comply with the court's orders that Su's deposition be taken." *Id*. at 13.

The Court has the power under Fed. R. Civ. P. 37 and its inherent authority to issue terminating or other severe sanctions for Irico's intentional spoliation of evidence, its repeated violations of Court Orders, and its attempts to evade responsibility for those derelictions by misleading Plaintiffs and the Court.

As the Court has noted, the Irico Defendants are the last defendants in this litigation. They are last for a reason—their plain strategy to delay the case and to destroy or withhold evidence. From the very beginning, Irico has acted with breathtaking disregard for the law and this Court's authority.

First, Irico intentionally violated its legal obligations and defied this Court's Pretrial Order No. 1 (ECF No. 230) ("PTO No. 1") by choosing not to implement a litigation hold at the outset of the case. For years, Irico claimed that its failure to do so was due to an innocent misunderstanding of American law. However, the recent production of its former

The Honorable Vaughn R. Walker
3/20/2023
Page 2

counsel's clear and repeated explanations of its duty to preserve evidence demonstrates that Irico's persistent claims of innocence were false and that its failure to adopt a litigation hold was deliberate. Dire consequences ensued: Irico destroyed virtually *all* evidence relating to its participation in the conspiracy and its CRT pricing and production levels, including *all* emails and other documents from the files of those employees who participated in the conspiracy. This outrageous conduct has unnecessarily delayed this litigation and has severely prejudiced Plaintiffs and the just outcome of this case. This conduct alone merits harsh sanctions.

Second, Irico's disappearance from this litigation for over seven years has destroyed Plaintiffs' ability to obtain testimony from Irico witnesses with knowledge of its wrongful conduct. Virtually all of those who attended conspiracy meetings on Irico's behalf have left its employ, rendering them unavailable for deposition, and Irico has resisted producing those that remain. Most recently, Irico induced Plaintiffs to stipulate to a third extension of time to produce Su Xiaohua for his Court-ordered deposition when it *knew* he planned to resign to avoid being deposed. Mr. Su was one of only two remaining Irico employees who attended competitor meetings. As this Court found, the loss of his testimony "is highly detrimental to resolution of this litigation on its merits." Su Order at 12. Moreover, Irico's failure to produce Mr. Su violated two Court orders requiring him to appear.

Third, as this Court is aware, in 2010, Irico made a calculated, tactical decision to default and disappeared from the case for over seven years. Irico's default violated Court orders, constituted a fundamental and improper rejection of the Court's authority, and needlessly delayed this case. Further, Plaintiffs have recently discovered that Irico induced the Court to lift the defaults against it based on a false representation that its withdrawal was founded on a good faith belief that it was immune from suit.

Finally, Irico has brazenly violated several other discovery orders and has generally abused the discovery process throughout this case.

The Court should not countenance Irico's bad faith conduct. Its misconduct has deprived Plaintiffs and this Court of access to virtually all of its records and witnesses with personal knowledge of its participation in the conspiracy. Irico has defied the Court's authority and seriously impaired the Court's ability to reach a fair resolution of this case. Its conduct has caused years of delay and vast amounts of unnecessary work by the Court and Plaintiffs. Any one of the foregoing instances of misconduct should result in a severe sanction. Collectively, they justify the most severe sanction available to the Court—striking the answers of the Irico Defendants. Anything less would reward them for their conduct and encourage its continuation.

Alternatively, Plaintiffs request that the Court:

The Honorable Vaughn R. Walker
3/20/2023
Page 3

1.  Deem Irico's participation in the alleged conspiracy, and the other activities of the conspiracy alleged in the Complaint, as established as against the Irico Defendants and so instruct the jury;

2.  Instruct the Jury that the Irico Defendants failed to preserve relevant evidence and that it ***must*** infer that the evidence lost or destroyed by the Irico Defendants would have been unfavorable to them had it been produced and offered in evidence, and apply such an inference where the Court is the factfinder;

3.  Instruct the Jury that Irico was ordered to produce Su Xiaohua for a remote deposition in Macau and that it failed to do so, and that the Jury must infer based on Irico's failure to produce him, that Mr. Su's testimony would have been harmful to Irico, and apply such an inference where the Court is the factfinder;

4.  Strike the affirmative defenses of the Irico Defendants;

5.  Order that all meeting notes produced by other defendants are deemed authentic and admissible; and

6.  Order that all documents produced by the Irico Defendants are deemed authentic under FRE 901 and admissible as business records pursuant to FRE 803(6).

## RELEVANT FACTUAL AND PROCEDURAL HISTORY

**I.    Irico's Deliberate Decision Not To Implement A Litigation Hold Has Resulted In The Wholesale Spoliation Of Relevant Evidence**

Irico failed to implement a proper litigation hold on relevant documents and electronically stored information (ESI) at the outset of this case as required by well-established law, an order of the Court, and the explicit and detailed advice of its experienced U.S. counsel. This decision was no mistake. Rather, it was taken after careful consideration by the committee established to manage Irico's response to this litigation (the "Litigation Committee") and calculated to avoid liability for its wrongful participation in the alleged conspiracy.

**A.    Irico Deliberately Defied Its Former Counsel's Instructions Regarding Evidence Preservation**

The Court is familiar with the facts relating to Irico's failure to implement a litigation hold.[1] Since that Order, Irico has produced its former counsel's[2] communications relating to evidence preservation. The communications confirm that Irico had the benefit

---

[1] *See* Order Approving Special Master's Report & Recommendation On Plaintiffs' Motion to Compel Evidence Preservation Documents (ECF No. 6146) ("Lit. Hold Order").

[2] Irico's former counsel is Pillsbury Winthrop Shaw Pittman LLP ("Pillsbury").

The Honorable Vaughn R. Walker
3/20/2023
Page 4

of a clear explanation of its duty to preserve relevant evidence. They refute Irico's claim that its failure to preserve evidence was due to a good faith misunderstanding of the law.

In the Lit. Hold Order, the Court found that Irico failed to implement the required document preservation notice when it received IPPs' summons and complaint in December 2007 alleging a global CRT conspiracy, despite hiring Pillsbury a month later. *Id.* at 2.[3] The Court explained:

> Irico confirms that it never issued a written litigation hold notice and, instead in the summer of 2008, Irico orally instructed key employees to preserve documents related to sales of CRT to the United States. 5/9/22 Irico Response at 2 and 8 ("no written litigation hold was issued by Irico"); 4/15/22 Capurro Decl, Exh I at 7 (Irico's Supp Response to Interrogatory No 2). Irico has admitted that it failed to implement a litigation hold until more than eight months after its duty to preserve was triggered by service of the complaint on December 25, 2007. *See* 4/15/22 Capurro Decl, ¶11, Ex I at 10-11. Irico also stated in its discovery response that "Irico acknowledges that at the time [of its oral instructions in 2008] it misunderstood the scope of document preservation in connection with the litigation in the United States and cannot be certain that all documents related to Irico's global sales of CRTs were preserved." 5/23/22 Plaintiffs' Reply at 4, citing 4/15/22 Capurro Dec, Ex I at 11 (Irico's Supplemental Response to Issue No 4).

Lit. Hold Order at 2. The Court also explained that Irico's purported "oral instruction" was not only inexcusably tardy but also grossly deficient. Among other things, Irico "failed to suspend its automatic email destruction practice," and, by limiting its application to sales of CRTs in the United States, failed to address "the full scope of relevant documents." *Id.* at 7.[4] The Court also noted Irico's excuse for the narrowness of its purported preservation efforts was that "it misunderstood the scope of document preservation." *Id.*

Irico's (redacted) communications with Pillsbury demonstrate, however, that Irico did not "misunderstand" its obligations. Rather, they irrefutably show that Irico **deliberately** defied this Court's PTO No.1 (and black-letter law) requiring it to provide companywide written instructions to preserve evidence relating to its worldwide CRT

---

[3] *See also* Declaration of Lauren C. Capurro ("Capurro Decl."), ¶ 2, Ex. A (Irico's Suppl. Objs. & Resps. To IPPs' Third Set Interrogs., Resp. to Interrog. No. 4) at 23–24.

[4] Irico's Legal Affairs Director, Yan Yunlong, also testified that he does not recall or is not aware of Irico (1) creating a back-up or "mirror image" of its computer system or querying its computer system to discover relevant documents in 2008, (2) creating a catalog of relevant documents, or (3) instructing its IT employees to turn off its email system's auto-delete function. Capurro Decl., ¶ 3, Ex. B (Yan Yunlong Dep. Tr. Vol. II at 158:21–165:23).

The Honorable Vaughn R. Walker
3/20/2023
Page 5

business. Pillsbury first advised Irico to preserve potentially relevant evidence shortly after it was retained. By email dated February 15, 2008, Pillsbury advised Yan Yunlong that "it is essential that Irico does not destroy or dispose of any potentially relevant documents, whether in paper, electronic or any other form."[5] Pillsbury further told Irico to "issue written instructions to the members of your company to retain all such documents as soon as possible[,]" and offered to "advise on appropriate written instructions." *Id.* That same day, Yan Yunlong forwarded the email to "Secretary Tao" (Tao Kui) and "Mr. Gao" (likely Gao Rongguo).[6] By its own admission, Irico ignored these instructions and did nothing until August 2008.[7]

On June 23, 2008, Pillsbury sent another email to Mr. Yan, enclosing a translation of the Court's Pretrial Order No. 1 requiring evidence preservation.[8] Pillsbury explained:

> The court issued its first pretrial order on April 4, 2008, with Article 13 being the most critical to Irico, which sets out the court's requirements for preservation of evidence (including information in electronic form). ***As we have discussed with Irico, this is an extremely important statutory requirement. If some potentially relevant information is lost or destroyed, this could have very serious consequences for Irico.***

*Id.* at IRI-SUPP-000012E (emphasis added). The email's reference to prior discussions about the importance of evidence preservation indicates that Pillsbury attorneys had previously spoken to Mr. Yan about evidence preservation in between the February and June 2008 emails, and possibly before the February email.[9] Yet, Irico still took no action to preserve relevant evidence.

Then, on August 18, 2008, Pillsbury sent another email to Yan Yunlong, this time attaching a memorandum to Irico regarding evidence preservation and a written litigation

---

[5] Capurro Decl. ¶ 4, Ex. C (IRI-SUPP-000001E–005E, at 01E).

[6] *Id.* ¶ 5, Ex. D (IRI-SUPP-000006-011E). Tao Kui, who was the Deputy General Manager of Irico Group at the time, was the most senior member of the Litigation Committee. *Id.* ¶ 6, Ex. I (Yan Yunlong Dep. Tr. Vol. I at 125:3–7). Mr. Yan also sat on the Litigation Committee and is the only remaining member. *Id.* Ex. A (Irico's Suppl. Objs. & Resps. to IPPs' Third Set of Interrogs., Interrog. No. 2, Resp. to Issue No. 4) at 11.

[7] *Id.* Ex. A (Irico Suppl. Resp. to Interrogatory No. 2, Issue Nos. 3 & 4) at 10–11 (describing the formation of the Litigation Committee in June 2008 and a meeting in August 2008 to discuss searching for and preserving evidence)).

[8] *Id.* ¶ 7, Ex. F (IRI-SUPP-000012–021E).

[9] *Id.* As further discussed below, neither the February 2008 email nor the June 2008 email was identified on Irico's privilege log as relating to evidence preservation. *See id.* ¶ 9 Ex. G (Irico Defs' Log of Privileged Documents).

The Honorable Vaughn R. Walker
3/20/2023
Page 6

hold notice entitled "Information Preservation Notice," all in Chinese.[10] The memorandum references Pillsbury's "previous communications and the Court's Order regarding preservation of evidence (a copy of which [they again] attach)," and states:

> [W]e believe that Irico Group Corporation and Irico Display Devices Co., Ltd. (collectively, "Irico") have notified the appropriate Irico personnel regarding the retention of information potentially relevant to the subject matter of the CRT Antitrust Litigation at issue. The purpose of this memorandum is to advise Irico to distribute forms and documents to employees in addition to the notifications already previously made, which are intended to remind Irico personnel of the importance of complying with U.S. law requiring the preservation of potentially relevant information.[11]

The attached "Information Preservation Notice" ("Notice") describes specific categories of "potentially relevant" information relating to Irico's "worldwide" CRT business that should be preserved for the period beginning January 1, 1995, including, *inter alia*, "communications, agreements, or meetings with competitors . . . relating to CRTs or CRT Products sold in the U.S. or worldwide."[12] The Notice also describes in detail the types of hard copy and electronic documents that should be preserved and where they are likely to be found.[13] Pillsbury instructed Irico to distribute the Notice to its employees,

---

[10] *Id.* ¶ 9, Ex. H (IRI-SUPP-000022E and IRI-SUPP-000023–028E). Irico also produced two different English-language memoranda dated August 7, 2008 (*id.* ¶ 10, Ex. I, IRI-SUPP-000029–30, & *id.* ¶ 11, Ex. J, IRI-SUPP-000034–36), and an English version of the Information Preservation Notice ¶ 12, (Ex. K, IRI-SUPP-0000000031–33). Irico's counsel states that these documents were "found in Pillsbury's internal casefile, and we have no indication [they were] ever sent to Irico." *Id.* ¶ 13, Ex. L (Werbel Letter dated Feb. 13, 2023). Plaintiffs believe that these memoranda were the original versions drafted by Pillsbury attorney Joseph Tiffany on August 7, 2008, and then transmitted to Pillsbury's Chinese-speaking attorneys for translation and transmittal to Irico. *Id.* ¶ 13.

[11] *Id.* Ex. H (IRI-SUPP-000023E). In the original August 7, 2008 memorandum (Ex. I, IRI-SUPP-000029–30), Pillsbury attorney Joseph R. Tiffany II wrote, ". . . we *assume* that Irico Group Corporation and Irico Display Devices … have already instructed appropriate IRICO personnel regarding the requirement to retain information. . . ." *Id.* at IRI-SUPP-000029 (emphasis added).

[12] *Id.*, Ex. H (IRI-SUPP-000026–28E).

[13] *Id.* at IRI-SUPP-000026E ("This Information Retention Notice applies to information and documents stored in personal offices, shared file cabinets, and outside locations. It also includes digital or electronic information retained in all locations (including desktop computers, laptops, home computers, personal digital assistants, server files, removable devices, cell phones, etc.").

The Honorable Vaughn R. Walker
3/20/2023
Page 7

including "persons most knowledgeable"[14] and others who "are reasonably likely to have documents or electronic information relating to any of the subjects identified in the Notice[,]" as well as those responsible for IT and records management. *Id.* Pillsbury further advised that Irico employees should sign the Notice to "remind [them] of the importance of retaining such information. The Information Preservation Notice should be supplemented by periodic oral instructions to appropriate IRICO personnel and careful monitoring of compliance." *Id.*

The Notice refers to "attached instructions for retaining electronic information[,]" but no such Chinese language instructions have been produced. Irico did produce a separate English-language Pillsbury memorandum, also dated August 7, 2008, entitled "Preservation of Documents and Electronically Stored Information."[15] This memorandum provides specific instructions on identifying and preserving "email and other electronically stored information ('ESI')[,]" and instructs Irico to suspend any automatic deletion of ESI, emphasizing that "it is very important for IRICO to take proper steps to preserve ESI, as well as information in other forms."[16] It also notes that Pillsbury "will need to have a thorough understanding of IRICO's computer system" and references a separate memorandum that it planned to provide on this subject.[17] No such memorandum has been produced. *Id.*

In short, Pillsbury's communications demonstrate that Irico has no excuse for its failure to implement a proper litigation hold. Irico was fully informed of its obligations to preserve documents, including (1) the Court's Order requiring it to do so; (2) that it was required to do so immediately; (3) that it was required to do so in a writing distributed to all individuals potentially possessing relevant materials; and (4) that relevant documents were not limited to its United States sales, but included documents relating to its worldwide CRT business. Irico made a conscious and fully informed decision to disobey the Court's clear order to preserve documents, well-established law, and the advice of its counsel.

---

[14] *Id.* at IRI-SUPP-000023E (emphasis added). The memorandum references an earlier July 14, 2008 memorandum entitled "Request for Information Pertaining to CRT Antitrust Litigation," which it says Irico should use to identify the employees who should receive the Notice. *Id.* This memorandum has not been produced and does not appear on Irico's privilege log.

[15] *Id.*, Ex. J (IRI-SUPP-000034–36). Irico's current counsel states that this memorandum was found in Pillsbury's casefile but there is "no indication it was sent to Irico." *Id.*, Ex. L (Werbel Letter dated Feb. 13, 2023). Given Irico's wholesale destruction of evidence and lack of candor on this issue, this assertion should be viewed with skepticism.

[16] *Id.* at IRI-SUPP-000035.

[17] *Id.*

The Honorable Vaughn R. Walker
3/20/2023
Page 8

    **B.**    **Irico's Repeated Claims That It Misunderstood U.S. Law Were Deliberate Falsehoods**

    The Pillsbury communications also make clear that Irico has engaged in a years-long effort to conceal its failure to preserve relevant evidence via false assertions that it innocently misunderstood its obligations.

    In March 2019, Zhang Wenkai, as Irico's Fed. R. Civ. P. 30(b)(6) corporate representative on evidence preservation,[18] falsely testified that Irico did not issue a litigation hold notice because, "We did not aware that it is something we need to do."[19] In January 2022, Irico falsely claimed in an interrogatory response that its failure to implement a proper litigation hold was because it "misunderstood the scope of document preservation in connection with the litigation in the United States. . . ."[20] And in May 2022, Irico falsely asserted that it "undertook measures that it believed to be appropriate under the circumstances" and that its failures were due to its "limited understanding of the law and customs of the United States." Irico Response 5/9/22 at 6; Lit. Hold Order at 6.

    Irico admitted that Pillsbury had sent an email and "memorandum regarding evidence preservation" to Irico's legal counsel, Yan Yunlong, on August 18, 2008 ("Pillsbury's August Instructions").[21] However, Irico refused to produce Pillsbury's August Instructions on privilege grounds for several months, forcing Plaintiffs to move to compel.[22] Irico also failed to identify the February and June 2008 emails on its privilege log as relating to evidence preservation. The descriptions of both emails misleadingly state that they "contain[] legal advice . . . regarding CRT litigation status and strategy."[23] There is also no indication on the privilege log that the June 23, 2008 email attached PTO No. 1. *Id.* PTO No. 1 is clearly not privileged. Thus, Irico should have produced the redacted email with PTO No. 1 attached. Its failure to do so is likely because doing so immediately would have revealed that Irico had ignored Pillsbury's instructions regarding evidence preservation. Thus, this is *yet another* example of Irico's (and its counsel's) attempts to mislead Plaintiffs and the Court and conceal its wrongful conduct.

---

[18] Capurro Decl. ¶ 14, Ex. M (Zhang Wenkai Deposition Notice, including the topic: "The preservation, or not, of evidence by Group and/or Display relevant to their FSIA defenses or the merits of this case, from 2008 to present.")

[19] *Id.* ¶ 15, Ex. N (Zhang Wenkai Dep. Tr. Vol. I at 84:11–24).

[20] *Id.* Ex. A (Irico's Suppl. Objs. & Resps. To IPPs' Third Set Interrogs., Resp. to Interrog. Nos. 2 & 4) at 11.

[21] Capurro Decl., Ex. G (Irico Defs.' Log of Privileged Documents identifying August 18, 2008 email and memorandum).

[22] *See* Capurro Decl. ¶ 16, Ex. O (April 15, 2022 Motion to Compel).

[23] *Id.*, Ex. G (Irico Defs.' Log of Privileged Documents).

The Honorable Vaughn R. Walker
3/20/2023
Page 9

In late September 2022—following months of delays by Irico—Plaintiffs deposed Yan Yunlong. Mr. Yan is "the only remaining Irico employee with knowledge of the dissemination of the oral instruction in 2008."[24] He is also the only Irico employee who communicated with Pillsbury and is the sole source for Irico's discovery responses regarding evidence preservation.[25] Mr. Yan initially testified that—consistent with Irico's interrogatory responses—Irico directed employees in 2008 to preserve only documents relating to U.S. sales.[26] But he later changed his testimony to claim that—contrary to Irico's interrogatory responses—the 2008 oral instruction was *not* limited to U.S. sales, and in fact extended to competitor meetings.[27] Irico had also insisted in response to Plaintiffs' motion to compel that there was no written litigation hold document to produce because it had only issued an "oral instruction" to employees.[28] But Mr. Yan testified that he provided Pillsbury's August Instructions to other Litigation Committee members.[29] He did not, however, personally instruct any other Irico employees to preserve relevant evidence.[30] Rather, he admitted that he relied on the other committee members (all of whom participated in the conspiracy) to do so, and that he does not know what instructions (if any) they gave to their subordinates.[31]

Almost two months after Mr. Yan's deposition—after the close of discovery, fifteen months of meet and confers, two motions to compel, and only after Plaintiffs pointed out the inconsistencies between his testimony regarding the 2008 litigation hold and Irico's discovery responses—Irico attempted to shift its story once again. On November 23, 2022, Irico amended its responses to IPPs' interrogatories and served an unsworn declaration

---

[24] Capurro Decl. Ex. A (Irico's Suppl. Objs. & Resps. to IPPs' Third Set of Interrogs., Interrog. No. 2, Resp. to Issue No. 4) ("All of the members of the 2008 Litigation Committee other than Yan Yunlong have retired or otherwise departed the company.")

[25] Capurro Decl. ¶ 17, Ex. P (Irico's Objs. & Resps. to IPPs' Fourth Set of Interrogs., Resp. to No. 4) at 14; Ex. A (Irico's Third Suppl. Objs. & Resps. to IPPs' Interrog. No. 2, Resp. to Issue No. 4) at 11 (Irico's "answers are based on the recollections of Yan Yunlong").

[26] *Id.*, Ex. E (Yan Yunlong Dep. Tr. Vol. I at 129:22–23) ("Q. And the instruction that was conveyed in 2008 was to preserve documents relating to U.S. sales, is that right? A. Yes."); *id.* at 136:21–24 ("Q. And the instruction that emanated from the committee in August of 2008 was to preserve documents relating to U.S. sales, correct? A. Yes.").

[27] *Id.* at 136:25–137:20.

[28] *See e.g., id.* ¶ 18, Ex. Q (Irico's May 9, 2022 Opp. to Plaintiffs' Motion to Compel) (arguing Plaintiffs' motion should be denied because the cases "prescribe only the production of a litigation hold notice and . . . Irico has confirmed that it did not issue a written litigation hold notice.").

[29] *Id.* Ex. E (Yan Yunlong Dep. Tr. Vol. I at 132:16–133:7).

[30] *Id.* at 130:20–23.

[31] *Id.* at 137:21–139:14.

The Honorable Vaughn R. Walker
3/20/2023
Page 10

from Mr. Yan that purported to re-write 17 pages of his deposition testimony regarding Irico's inadequate litigation hold.[32]

Setting aside for now that Mr. Yan cannot credibly contradict his sworn testimony, his new story purports to change two key facts: (1) Irico no longer contends that it only gave an oral litigation hold instruction because it now admits that Pillsbury's Instructions were distributed to Litigation Committee members;[33] and (2) Irico "no longer contends that its initial efforts to preserve documents in August 2008 were limited solely to documents regarding sales of CRTs to the United States[.]"[34] Critically, although Irico never expressly says so, ***its supplemental responses also no longer claim that it "misunderstood" its document preservation obligations.*** However, the supplemental responses now provide *no* information about what categories of information (if any) Litigation Committee members were instructed to preserve, whether any search took place, whether anything was found, or whether anything was preserved as a result.[35] In addition, both Irico and Mr. Yan disclaim any knowledge of whether the Litigation Committee members in fact instructed anyone else to preserve anything, or whether anything was preserved, because it was left up to each member to determine which subordinates to contact and what information should be relayed, and no effort was made to monitor implementation.[36]

In sum, Irico's recent and improper alterations of Mr. Yan's testimony and its previous interrogatory responses are far from exculpatory. Rather, they merely confirm— after 15 months of discovery—that (1) Irico did *nothing* to disseminate a written litigation hold in 2008; (2) it did so willfully, with a full understanding of its document preservation obligations and in defiance of its counsel's instructions; and (3) Irico has offered up a series of intentional misrepresentations to conceal these facts.

---

[32] *Id*. ¶ 19, Ex. R (Declaration of Yan Yunlong ("Unsworn Yan Decl.") dated Nov. 18, 2022, claiming he "was confused regarding some questions and gave inaccurate testimony . . . , as well as inaccurate input for the interrogatory responses . . . ."); *id*. ¶ 20, Ex. S (Irico's Third Suppl. Objs. And Resps. To IPPs' Third Set of Interrogs.); ¶ 21, Ex. T (Irico's Second Suppl. Objs. And Resps. To IPPs' Fourth Set of Interrogs.).

[33] *Id*., Ex. S (Irico's Third Suppl. Resp. to IPPs' Interrog. No. 2) at 24–25 ("At this August 2008 meeting, the 2008 Litigation Committee *was provided with a copy of the Pillsbury legal advice*. . . .") (emphasis added); Ex. R (Yan Unsworn Decl.) ¶ 7.

[34] *Id*. Ex. S (Irico's Third Suppl. Resp. to Interrog. No. 2, Issue No. 5) at 26.

[35] *Id*. Ex. S (Irico's Third Suppl. Resp. to Interrog. No. 2) at 25–26; Ex. R (Unsworn Yan Decl.) ¶¶ 7–9.

[36] *Id*. Ex. S (Irico's Third Suppl. Resp. to Interrog. No. 2) at 24–26; Ex. R (Unsworn Yan Decl.) ¶¶ 8–10.

The Honorable Vaughn R. Walker
3/20/2023
Page 11

### C.   Irico Has Intentionally Spoliated Entire Categories Of Critical Evidence

Irico's willful failure to implement a litigation hold has resulted in Irico intentionally spoliating entire categories of evidence critical to this litigation. During the class period, Irico was the largest CPT manufacturer in China.[37] Yet, it has produced only 33,462 pages, a small fraction of the volume of documents produced by other similarly-sized defendants.[38] Indeed, the Court has already found, after a review of the evidence and consideration of Irico's arguments, that "[o]n balance, it appears highly likely that relevant evidence was destroyed or lost due to Irico's long-delayed and inadequately implemented litigation hold efforts." Lit. Hold Order at 9.

Irico has conceded that it failed to preserve relevant evidence. Irico's discovery responses concede that it does "not contend that the oral instruction in 2008 was effective in preserving all documents relating to its global sales of CRTs[,]" and it "cannot be certain that all documents relating to Irico's global sales of CRTs were preserved[.]"[39] In response to the Court's question about what documents would have been preserved if the oral instruction not been limited, Irico listed several types of documents "regarding Irico's global sales of CRTs that are more likely to have existed in the summer of 2008[,]" including sales reports, CRT sales contracts with customers, recent correspondence with customers, and handwritten notes regarding recent meetings.[40]

Irico has also admitted that emails were deleted from its server every 3 to 5 days;[41] that it did not turn off its automatic deletion of emails when it received notice of the

---

[37] *Id*. ¶ 22, Ex. U (Irico Electronics 2004 Annual Report) at 8. By 2007, Irico had increased its market share to 13.8% of the global market, making it the third largest CPT maker in the world. *Id*. ¶ 23, Ex. V (Irico Electronics 2007 Annual Report) at 13.

[38] For example, Beijing Matsushita Color CRT Co., Ltd. ("BMCC"), a much smaller Chinese CRT manufacturer, produced 598,701 pages and Taiwanese manufacturer, Chunghwa Picture Tubes, Ltd., produced 996,514 pages. *Id*. ¶ 24.

[39] Capurro Decl., Ex. S (Irico Third Suppl. Resps. to IPPs' Third Set of Interrogs., Resp. to Issue Nos. 4 & 5) at 11–12.

[40] *Id*. (Irico Resp. to Issue No. 6) at 12–13. Irico improperly limited this response to what would have existed in Summer 2008. Irico's duty to preserve relevant evidence was triggered no later than December 25, 2007, when it received IPPs' complaint. Thus, Irico should have stated what documents would have existed in December 2007.

[41] *Id*. (Resp. to Issue No. 8) at 16; *id*. ¶ 25, Ex. W (Irico Defs.' Fifth Suppl. Objs. & Resps. to DPPs' First Set Interrogs., Suppl. Resp. to Interrog. No. 16) at 11 ("Irico believes that its servers overwrote email data every three to five days on average due to storage limits for the period including and prior to 2007.").

The Honorable Vaughn R. Walker
3/20/2023
Page 12

litigation, or at any point thereafter;[42] that it recycled the computers of departing employees long after its duty to preserve was triggered;[43] and, that none of its "key employees"—namely, its high-level current and former employees, including the Litigation Committee members and others who attended conspiratorial meetings—"maintained any additional electronic or paper documents from the relevant period" other than what was preserved in Irico's archives pursuant to Chinese law.[44]

Irico has identified the types of documents it generated during the relevant period, including, *inter alia*, weekly and monthly sales reports containing "information regarding customers, competitors and general market information," and emails regarding CRT production and "the scheduling and planning of the China CPT Industry Association, a trade organization for manufacturers of CPTs[,]"[45] through which anticompetitive agreements were reached and enforced. But Irico has produced *none* of these highly relevant documents. Indeed, Irico has failed to produce entire categories of critically relevant documents, including:

- No emails from the relevant period from the files of *any* employees or executives—this includes no emails from the files of the 2008 Litigation Committee members who attended numerous meetings with competitors, and who received Pillsbury's August 2008 Instructions to preserve specific categories of documents, and none from Wang Zhaojie ("Mr. Wang"), who admitted to attending "many, many meetings" with Irico's competitors;
- No other electronic or hard copy documents from the relevant period from the files of any of its employees, including the Litigation Committee members;
- Virtually no documents relating to the more than 100 conspiratorial meetings that Irico representatives attended during the relevant period, as reflected by the other defendants' notes of those meetings;
- No correspondence between Irico and its customers regarding CRT sales;
- No CRT sales contracts with customers;
- No weekly or monthly sales and marketing reports, which Irico has admitted were generated on a regular basis;[46]
- No production reports from Irico's CRT factories; and

---

[42] *Id*. Ex. B (Yan Yunlong Dep. Tr. Vol. II at 165:2–23).

[43] *Id*., Ex. W (Irico's Fifth Suppl. Objs. & Resps. To DPPs' First Set Interrogs.) at 8.

[44] *Id*. ¶ 26, Ex. X (Irico's Fourth Suppl. Resps. to DPPs' FSIA RFPs, Resp. to No. 9) at 9.

[45] *Id*. Ex. S (Irico Third Suppl. Resps. to IPPs' Third Set Interrogs., Resp. to Issue No. 8) at 13–17.

[46] *Id*. (Resp. to Issue No. 8) at 14 (stating that Irico's "sales department prepared weekly- and monthly-summaries of information collected by its employees").

The Honorable Vaughn R. Walker
3/20/2023
Page 13

- Virtually no documents reflecting how Irico determined the prices it would charge for its products.[47]

Irico attempts to explain away its deficient production by claiming it is "unable to determine whether" these documents would have existed in late 2007, or with unsupported and self-serving claims that such documents "would not have been retained in the ordinary course of business and were unlikely to have existed at the end of 2007."[48] Irico relies on its purported limited server capacity and routine deletion of emails to claim that it is "not able to determine whether email created during the relevant time period existed at the end of 2007[.]"[49] But, as Your Honor noted, "Irico presents no information about investigating custodial files of 'key employees' who may have printed relevant emails, forwarded emails to their personal email accounts or downloaded emails to their work or personal computers or to portable hard drives." Lit. Hold Order at 9. In fact, Mr. Yan testified that he downloaded and saved his emails with Pillsbury to his hard drive.[50] It is therefore likely that other Irico employees did the same with important documents they received.

Significantly, as Your Honor recounted, Plaintiffs have identified Irico emails, meeting notes, sales and marketing reports, and other Irico documents (which should have been preserved and produced by Irico) in other defendants' productions. Lit. Hold Order at 9. Moreover, these documents date from 2006 and 2007—*i.e.*, not long before the November 2007 government raids on CRT makers, or when Irico received IPPs' complaint on December 25, 2007. *Id.* (discussing emails authored by Litigation Committee member and Irico's Head of Overseas Sales Department, Liang Yuan, to Chunghwa in 2006 and 2007, and attaching "meeting notes and production data").[51] As Your Honor concluded, "it was unlikely that they and all relevant emails in Liang Yuan's and others' files would have been discarded by the time the duty to preserve arose." Lit. Hold Order at 9.

Irico has likewise admitted that numerous sales and marketing reports found in Chunghwa's production—many of which contain highly sensitive, confidential information about Irico's future business plans, and reference competitor agreements on

---

[47] *Id.* ¶ 27. For example, in response to DPPs' interrogatory about CRT price increases or decreases during the class period, Irico identified only *eight* Irico documents. *Id.* ¶ 28, Ex. Y (Irico's Sixth Suppl. Objs. & Resps. to DPPs' First Set of Interrogs., Resp. to Interrog. No. 6) at 14. Moreover, the documents identified are voluminous collections of internal "Administrative Meetings," containing only sporadic, vague references to CRT prices.

[48] Ex. S (Irico Third Suppl. Resps. to IPPs' Third Set of Interrogs., Resp. to Issue No. 8) at 13-14.

[49] *Id.* Ex. S (Irico Resp. to Issue No. 8) at 16.

[50] *Id.* Ex. E (Yan Yunlong Dep. Tr. Vol. I at 93:15–95:13); Ex. B (Vol. II at 168:25–169:5).

[51] *See also, e.g., id.* ¶¶ 29-31, Exs. Z–BB (additional examples of Irico emails with competitors from 2007 that were found in Chunghwa's files).

The Honorable Vaughn R. Walker
3/20/2023
Page 14

CRT prices and production levels—were authored by Irico employees.[52] One such report, entitled "Regular Marketing Meeting Report," dated June 13, 2005, which Chunghwa produced, contains Irico's analysis of the CRT and CRT television markets including, *inter alia*, CRT and TV makers' production, sales, pricing, inventory, and export data.[53] A table details "CRT Makers' Production Suspension/Limitation Plans for June 2005," *i.e.*, their *future* plans to suspend or limit CRT production *in concert with each other*.[54] Another table details, "**CPT pricing: Industry's Settled Price Range in Recent Months**," including a "Prediction for Jun 05."[55] Other similar weekly reports show that, contrary to Irico's claims, Irico knew its customers were using Irico's CRTs to manufacture CRT televisions for sale in the United States.[56] Mr. Wang admitted that reports like these were produced by Irico's sales department on a weekly or monthly basis,[57] making it likely that at least some such reports existed in December 2007.

After reviewing the foregoing evidence, Your Honor concluded that, "[o]n balance, it appears highly likely that relevant evidence was destroyed or lost due to Irico's long-delayed and inadequately implemented litigation hold efforts. Irico's position, supported by its Rule 30(b)(6) witness' testimony, that weekly sales and marketing reports and notes of competitor meetings were not important and not likely to be kept appears implausible." Lit. Hold Order at 9.

---

[52] *See id*. ¶ 32, Ex. CC (Irico Defs.' Objs. & Resps. to IPPs' RFA No. 4).

[53] *Id*. ¶ 33, Ex. DD (Dep. Ex. 8566, CHU00123502–17E).

[54] *Id*. at CHU00123506E.

[55] *Id*. at CHU001235010E (emphasis added). *See also id*. ¶¶ 34-36, Exs. EE–GG (additional highly confidential Irico marketing and sales reports found in Chunghwa's files).

[56] *See, e.g., id*. ¶ 37, Ex. HH (Dep. Ex. 8571, CHU00124396–99: an Irico report produced by Chunghwa entitled "Information Weekly, Sales Company, 70th Issue, July 8-15, 2005." At CHU00124397, in the first column of the table, the row relating to Haier, it states: "**For 21"PF (new AK) produced for exporting to the United States, preparations for the early stage are being intensified**." In the third column it states: "**Sample tubes of Irico 21" (new AK) have a low luminance and American engineers have arrived at Qingdao Haier by air on 15th day for consultation**." ); *id*. ¶ 38, Ex. II (Dep. Ex. 8572, CHU00124400–02: an Irico report produced by Chunghwa entitled "Information Weekly" dated August 6-12, 2005, states "**Irico 21" PF has been recognized by American customers and can be supplied**."); *id*. ¶ 39, Ex. JJ (Dep. Ex. 8573, CHU00124417–19: an Irico weekly report produced by Chunghwa entitled "Information Weekly" dated May 8–14, 2006: "**It is reported from Konka's U.S. customers that the 15" PF has an issue of barrel distortion, and Irico technical personnel are investigating and negotiating countermeasures with Shenzhen Konka R&D personnel . . .**").

[57] Capurro Decl. ¶ 40, Ex. KK (Wang Zhaojie 3/7/19 Rule 30(b)(6) Depo. Tr. at 79:4–82:22) (discussing weekly reports); *id*. ¶ 41, Ex. LL (Wang Zhaojie 9/20/22 Depo. Tr., at 119:7–120:9) (authenticating minutes of a sales/marketing meeting).

The Honorable Vaughn R. Walker
3/20/2023
Page 15

## II.    Irico Has Failed To Produce Witnesses In Violation Of Court Orders

Irico has also improperly denied Plaintiffs evidence by refusing to produce witnesses. Irico has used its withdrawal and delaying tactics to render most witnesses to its conduct unavailable to testify. At least 17 individuals—who attended scores of competitor meetings—left Irico's employ during the period of its withdrawal or during jurisdictional discovery.[58] Irico has thus claimed that it cannot produce these individuals for deposition, even though it interviewed a number of them as part of its investigation into the alleged conspiracy.[59]

### A.    Su Xiaohua

Most recently, Irico failed to produce Su Xiaohua for deposition after ten months of delays, and in violation of Court Orders requiring it to produce him.[60] As the Court recounted in the Su Order, Mr. Su is an important witness whom Irico identified as one of only two persons knowledgeable regarding "matters that are highly relevant to this litigation and is likely the only Irico witness with personal knowledge of key facts and events." Su Order at 10. Irico identified Mr. Su as one of only two witnesses knowledgeable about Irico's meetings and communications with its competitors and three affirmative defenses.[61] After three stipulated extensions of Court-ordered deadlines, Irico failed to produce Mr. Su for deposition, claiming he had resigned on May 25, 2022, in part "because he refused to travel to Macau for a deposition given the severe quarantine requirements that he would face upon his return to mainland China . . . ." ECF No. 6027-3; Su Order at 5-7, 12 (reciting chronology and noting that it "paints an unflattering picture of Irico.").

The Court identified three disputed issues relevant to this sanctions motion: (1) whether Irico's failure to produce Su Xiaohua violated a Court Order (*id*. at 7–8); (2) Irico's awareness of Mr. Su's intent to resign and resignation (*id*. at 8–9); and (3) whether Mr. Su's failure to appear was outside of Irico's control. *Id.* at 10. To inform the latter two issues, the Court ordered "targeted discovery" of documents relating to Mr. Su's

---

[58] Capurro Decl. ¶ 42, Ex. MM (2018-06-05 Irico Resp. to Letter re Potential Deponents (listing departed employees)); *id.* Ex. S (Irico Third Suppl. Objs. & Resps. to IPPs Third Set Interrogs., Resp. to Issue No. 2) at 9 (Wang Ximin departed in November 2013).

[59] Among others, Irico interviewed Guo Mengquan, Liang Yuan, Shen Xiaolin and Wei Jian-She during jurisdictional discovery. *Id.,* Ex. X (Irico's Fourth Suppl. Objs. & Resps. to DPP FSIA RFPs) at 9.

[60] *See further* ECF Nos. 6032 at pp. 2–7 & 6101 at pp. 2–5.

[61] *See* ECF No. 6032-1, ¶ 2, Ex. A (describing Irico's interrogatory responses identifying Mr. Su as knowledgeable about Irico's Third, Eighth and Tenth Affirmative Defenses, and attaching responses), & ¶ 11, Ex. J (describing Irico's interrogatory responses identifying Mr. Su as knowledgeable about Irico's meetings and communications with competitors and attaching responses).

The Honorable Vaughn R. Walker
3/20/2023
Page 16

deposition, his resignation (including when any Irico employee first learned of his intention to resign), his relationship(s) with Irico or its related entities, his employment status, Irico's efforts to comply with the order to produce Mr. Su for deposition, and Irico's continuing control of Mr. Su. *Id*. at 12–13. Irico produced responsive documents to Plaintiffs on December 22, 2022, along with an extensive privilege log.[62]

Irico's failure to produce Su Xiaohua violated Court Orders: As the Court recited in the Su Order, Irico waited until the June 30, 2022 deadline[63] for the depositions of Mr. Su and the other Irico witnesses to move for emergency relief from the May 25 Order. Su Order at 7. In addition, the Court denied the emergency motion because Irico failed to show good cause for relief from the May 25 Order. *Id*. at 8 (citing ECF No. 6047 at 12:10–36). "On this record," Your Honor correctly concluded that "Irico did violate the court's order (ECF No. 6016) by not producing witnesses for depositions by June 30, 2022 and by failing to demonstrate good cause to set aside that order." Su Order at 8.

Irico has contended that it did not violate the May 25 Order because the Court reset the deposition deadline for September 9, 2022, and that the August 22, 2022 Stipulated Order (ECF No. 6056) somehow vacated that deadline for Mr. Su. Not so. The August 11, 2022 Order (ECF No. 6047) did not [a]excuse Mr. Su from appearing for deposition or excuse Irico's violation of the May 25 Order. Indeed, the Court expressly stated that "if fewer than all of the witnesses testify," the parties could file a brief setting forth "the legal consequence of the witness' failure to appear." ECF No. 6047 at 13:10–14:7. Thus, the Court did not excuse the violation of the May 25 Order. In addition, the August 22, 2022 Stipulated Order only pertained to Messrs. Wang and Yan (*see* ECF No. 6056 at 1:7–8), as Your Honor correctly concluded. Su Order at 6. The parties never contemplated vacating the deadline for Mr. Su, much less agreed to do so, as confirmed by the parties' correspondence relating to the stipulation, which makes no mention of Mr. Su.[64] Thus, Irico's failure to produce Mr. Su violated both the May 25 Order and the August 11, 2022 Order requiring him to appear for deposition by September 9, 2022.

Irico was aware of Mr. Su's intent to resign by at least early April 2022: Yan Yunlong testified that Irico knew "[a]t some point in April" 2022 that Mr. Su was not willing to be deposed and intended to resign.[65] Irico has dismissed Mr. Yan's testimony as "hearsay" and "inaccurate," and claims it did not know that Mr. Su planned to resign before it happened. ECF No. 6101 at 10. But the only support for these statements is the Declaration of Zhang Wenkai, which the Court concluded "only speaks to his personal

---

[62] Capurro Decl. ¶ 43, Ex. NN (Irico Defendants' Log of Privileged Documents Responsive to December 6, 2022 Order).

[63] *See* ECF No. 6016 (the "May 25 Order") (setting June 25, 2022 deadline).

[64] Capurro Decl. ¶ 46. *See also id*. ¶ 44, Ex. OO (Plaintiffs' Aug. 19, 2022 Letter to Taladay); *id*. ¶ 45, Ex. PP (Taladay's Aug. 19, 2022 Letter to Plaintiffs).

[65] Capurro Decl. Ex. B (Yan Yunlong Dep. Tr. Vol. II at 230:15–231:2).

The Honorable Vaughn R. Walker
3/20/2023
Page 17

knowledge" and "cannot be considered 'reliable evidence' that Irico only learned of Mr. Su's decision to depart on May 25, 2022." Su Order at 9.

Irico is also attempting to re-write Mr. Yan's sworn testimony from "***in*** April" to "***after*** April" by way of erratum, asserting that he "mis-spoke."[66] This is plainly improper.[67] However, even if Mr. Yan's testimony is changed from "***in*** April" to "***after*** April," it would not exonerate Irico. Irico continued to assure Plaintiffs and the Court of Mr. Su's willingness to appear—and received extensions of the Court-ordered deadline to produce him—through May 20, 2022. ECF No. 6015. Indeed, IPPs lost their trial date because of this *third* extension of time. ECF Nos. 6016, 6024.[68] Yet, Irico did not disclose Mr. Su's resignation and unwillingness to appear until June 7, 2022.

Moreover, a document produced by Irico in response to the Court's targeted discovery corroborates Mr. Yan's original testimony that Irico knew "***in*** April" that Mr. Su would be unavailable. The redacted minutes of an April 7, 2022 meeting show that Irico approved Mr. Su's request to take *early* retirement on April 7, 2022, without requiring him to appear for deposition when it likely had the power to do so.[69] The meeting minutes state:

> **Regarding matters related to Su Xiao Hua reaching retirement age and departure**
> . . . Su Xiao Hua, the regional general manager for the Huanan area of Xianyang Irico Industrial Group Co., Ltd., has reached the upper age limit for employment in March 2022, and will leave his position as manager at the end of December to retire and rest. **Because he himself submitted a request to leave the position ahead of schedule, after discussion, it has been agreed that Su Xiao Hua may leave the position ahead of schedule** after reaching upper age limit for employment.

IRI-SU-000139E (emphasis added). At IRI-SU-000140E, it states "Copy: Relevant leaders of the Group company. Printed and distributed on April 8, 2022."

Thus, there is no doubt that Irico knew no later than ***early*** April that Mr. Su planned to resign early. The meeting minutes are ambiguous, however, as to when exactly he would

---

[66] Capurro Decl. ¶ 47, Ex. QQ (Yan Yunlong Deposition Errata 2022-09-28).

[67] *Id*. ¶ 48, Ex. RR (Plaintiffs' Letter re Errata, dated Jan. 27, 2023). Irico has refused to withdraw the erratum. *Id.* ¶ 49, Ex. SS (Email dated Feb. 16, 2023 from Evan Werbel). Thus, Plaintiffs will be presenting yet another dispute to the Special Master for resolution.

[68] Irico has claimed that IPPs lost their trial date because their expert could not be deposed before the close of expert discovery. This is false. Dr. Netz was deposed a mere two weeks after the close of expert discovery. Moreover, extending the close of expert discovery to depose Dr. Netz did not require any other pretrial dates to be moved.

[69] *Id.* ¶ 50, Ex. TT (IRI-SU-000137–40E).

The Honorable Vaughn R. Walker
3/20/2023
Page 18

resign. They state that Su "reached the upper age limit for employment in March 2022 and will leave his position as manager at the end of December[,]" but they also state that Su had "submitted a request to leave the position *ahead of schedule*[,]" which Irico approved. IRI-SU-000139E (emphasis added). It is unclear what "ahead of schedule" means.

Only one other pre-June 7, 2022[70] Irico document mentions Mr. Su's resignation. The document is entitled "Resignation Report" and is signed and dated by hand by Mr. Su, but the date is ambiguous: it is either dated 3/25/2022 or 5/25/2022.[71] After explaining that he is concerned about caring for his elderly mother, Mr. Su states:

> At this time, I have reached the upper limit of the employment age for managers. Due to the above personal reasons, *I would like to apply for early resignation* from my position as a manager and terminate my employment relationship with the company. Please be advised.

IRI-SU-000141E (emphasis added). Mr. Su's statement that he "would like to *apply* for early resignation" indicates that his Resignation Report was sent *before* the April 7, 2022 meeting at which Irico approved Mr. Su's early resignation. It makes no sense that Mr. Su would submit an application to resign early on May 25, 2022 when his early resignation had already been approved over a month before. Moreover, Irico has told Plaintiffs and the Court that May 25, 2022 is the date that Mr. Su "formally resigned."[72] Why then would Mr. Su be only applying for early resignation on that date? It is more logical that Mr. Su submitted the application on March 25, 2022 and that application was then approved at the April 7, 2022 meeting. However, only Irico knows the truth.[73]

Regardless of whether the Resignation Report is dated 3/25/2022 or 5/25/2022, Irico still knew by at least April 7, 2022 that Mr. Su intended to resign early, yet they concealed that fact from Plaintiffs and the Court.

---

[70] June 7, 2022 is the date Irico informed Plaintiffs of Mr. Su's resignation.

[71] *Compare* Mr. Su's handwritten date on IRI-SU-000141 (Capurro Decl. ¶ 51, Ex. UU) *with* Mr. Su's handwritten date on IRI-SU-000053. *Id*. ¶ 52, Ex. VV. The handwritten number "5" on IRI-SU-000053 is quite different from the number on IRI-SU-000141.

[72] ECF No. 6027-3 (Decl. of Wenkai Zhang) ¶ 6.

[73] The only other documents that mention Su's resignation are emails from June 7, 2022 onwards, *i.e.*, after his resignation, which appear to be Irico's counsel forwarding Plaintiffs' counsel's emails to Irico. Irico has withheld a substantial number of communications on privilege grounds. *See* Capurro Decl., Ex. NN (Irico Defendants' Log of Privileged Documents Responsive to December 6, 2022 Order). It is doubtful that there are only two documents relating to Mr. Su's resignation. Other such documents likely exist but are being withheld on privilege grounds.

The Honorable Vaughn R. Walker
3/20/2023
Page 19

        <u>Irico has failed to demonstrate that Su Xiaohua's failure to appear was outside of its control.</u> Irico has asserted that it should not be sanctioned for its failure to produce Mr. Su because Mr. Su's non-appearance was outside of its control. ECF No. 6101 at 14. But, as the Court noted, "Irico provides no information supporting its assertions that Su Xiaohua's nonappearance was outside of its control or that Irico made efforts to persuade Su Xiaohua to appear for his deposition as Irico did for the two other witnesses." Su Order at 10. Thus, the Court ordered Irico to produce documents relating to "Irico's efforts to comply with the order to produce Su for deposition," and "Irico's continuing control or persuasive influence with respect to Su Xiaohua." *Id*. at 13.

        None of Irico's recently produced documents demonstrate any effort by Irico to persuade Mr. Su to appear for his deposition. Indeed, the April 7, 2022 meeting minute suggests that far from attempting to persuade Mr. Su to appear for his deposition, Irico approved Mr. Su's request to "leave the position ahead of schedule[,]" without conditioning that approval on appearing for his deposition when it likely had the power to do so. IRI-SU-000139E (emphasis added). Thus, Irico has failed to demonstrate that Su Xiaohua's failure to appear was outside of its control.

### B.    Guo Mengquan

        Irico's failure to produce Mr. Su for deposition is not the first time that Irico has failed to produce a witness for deposition in violation of a Court order. Irico engaged in similar tactics in connection with the deposition of Guo Menguan in 2018. Mr. Guo was a senior Group executive during the relevant period and thereafter who submitted a declaration in support of Irico's renewed motion to dismiss on FSIA grounds. ECF Nos. 5312-1, 5313-1, 5392-1, 5393-1. Mr. Guo also attended at least six competitor meetings.[74] Thus, Plaintiffs sought to depose him beginning in July 2018.

        As with Mr. Su, Irico's misconduct required Mr. Guo's deposition to be rescheduled twice: the first time because Irico produced 2,200 pages of Chinese-language documents 10 days before the deposition was due to begin (ECF No. 5340), leaving Plaintiffs insufficient time to review and translate documents; and the second time because it failed to timely comply with Orders compelling production of documents.[75] The deposition was finally scheduled for March 4, 2019. But, one week before his deposition, Irico informed Plaintiffs that Mr. Guo—a former employee—would not appear due to an unspecified illness.[76]

---

[74] Capurro Decl. ¶ 53, Ex. WW (DPPs' May 27, 2021 Letter to Judge Walker re Irico Competitor Contacts) at 4–5.

[75] *Id.* ¶ 54, Ex. XX (10/9/18 DPP Email to Irico); *id.* ¶ 55, Ex. YY (2/5/19 DPP Ltr to Irico).

[76] *Id*. ¶ 56, Ex. ZZ (2/25/19 Irico email to Plaintiffs).

The Honorable Vaughn R. Walker
3/20/2023
Page 20

## III.    Irico Motion To Lift The Prior Default Was Based On False Testimony

The Court is also familiar with Irico's improper default. Shortly after it (and the other defendants) failed to obtain dismissal of Plaintiffs' claims, Irico disappeared from this litigation. For approximately seven years, Irico ignored Plaintiffs' discovery requests as well as the Court's various scheduling orders. After a motion for a default judgment was filed, Irico reappeared and prevailed on its motion to lift the defaults entered against it.[77] However, the Court made clear that Irico's withdrawal was improper and caused Plaintiffs significant prejudice through, *inter alia,* the loss of evidence and inordinate delay.[78]

It is now clear that the evidence Irico submitted to contend that its default was not in "bad faith" was a misrepresentation. As the Court characterized that evidence in its Default Order:

> According to a declaration by Wenkai Zhang, the legal counsel at Irico Group, Irico decided not to answer the complaint "because it believed that Irico Group and Irico Display were immune from suit in the United States," ECF No. 5215-1 ¶ 5.  The Irico entities . . . believed they were immune from DPPs' suit under notion of foreign sovereign immunity and accordingly did not participate in this action beyond joining a motion to dismiss."

ECF No. 5214 at 8.[79] However, the recent deposition testimony of Yan Yunlong makes clear that Mr. Zhang's declaration was false.

Irico's decision to cease participation in this lawsuit was not based on a belief in Irico's (non-existent) immunity under the FSIA, but rather was calculated to gain advantage. Mr. Yan, who was a member of the Litigation Committee, was examined over multiple days of deposition, including direct examination by his counsel, yet never identified immunity under the FSIA as playing any role in Irico's decision to default. Rather, he testified that Irico was concerned by the prospect of defending the case in conjunction with the other defendants, many of whom had been publicly identified by law enforcement as conspirators, and believed that Irico would be at a "disadvantage" if it did so.[80] He also explained: "I said earlier that Irico was waiting for the plaintiff – or plaintiffs to file a separate lawsuit against just Irico. Then we will make corresponding responses."[81]

---

[77] *In re Cathode Ray Tube* (*CRT*) Antitrust Litig., MDL No. 1917, No. C-07-5944-JST, 2018 WL 659084, at *8 (N.D. Cal. Feb. 1, 2018) (the "Default Order").

[78] *Id.* (DPPs "inarguably prejudiced by the Irico Defendants' decision to disappear from the case").

[79] Default Order, 2018 WL 659084, at *1.

[80] *See* Capurro Decl. Ex. E (Yan Yunlong Dep. Tr. Vol. I, at 118:5–120:21).

[81] *Id.*, Ex. B (Yan Yunlong Dep. Tr. Vol. II at 210:2–21). *See also id.*, Ex. E Yan Yunlong Dep. Tr. Vol. I at 120:10–21 ("We also knew that it would be a long process for the

The Honorable Vaughn R. Walker
3/20/2023
Page 21

In sum, nothing in Mr. Yan's testimony supports the previous assertion that Irico's decision not to participate in this MDL litigation was based on belief in legal immunity. Rather, his testimony reveals that the reason for Irico's 2010 decision to disappear was a litigation strategy seeking to defend in a more advantageous context.

## IV.   Irico Has Repeatedly Flouted The Court's Authority Throughout The Litigation

Finally, Irico has also violated the Court's orders and discovery and other obligations throughout the case. *See* Su Order at 1–7 (describing "unflattering" chronology). Among many other things, Irico has refused to comply with at least three Court orders compelling discovery. First, during jurisdictional discovery, Irico defied the Court's order compelling it to produce documents relating to its attendance at competitor meetings and its U.S. sales, and to identify documents Zhang Wenkai reviewed in connection with his declaration. *See* ECF No. 5331 (enforcing order).

Second, Irico violated the Court's enforcement Order by falsely representing that it had performed an extensive search and found no documents relating to the (26) competitor meetings[82] when, in fact, it possessed travel and expense records corroborating at least seven of these meetings. This fact was confirmed when in October 2021—almost three years later—Irico finally produced these records.[83]

Third, as the Court is aware, Irico has also failed to comply with the Court's order requiring it to respond to interrogatories regarding its meetings and agreements with its competitors. ECF No. 5919. Following assurances that it would provide full responses, Irico failed to do so.[84] ECF No. 5944 at 2 ("No fair appraisal of Irico's responses to the interrogatories at issue can conclude that these responses are not plainly deficient.").

---

plaintiffs and the defendants to form the litigation groups and to actually go through the proceeding, so we were waiting for the plaintiffs to file an independent, separate lawsuit against Irico, and we wanted to wait until that time before we conducted any relevant investigation."); *id.* at 127:6–18 ("[W]e came to the conclusion that we would give up responding to the litigation before the plaintiffs filed any independent lawsuit against us.").

[82] Capurro Decl. ¶ 57, Ex. AAA (2018-10-10 Yan Declaration ISO Third Supp Resp DPPs FSIA RFPs); *see also* ECF No. 5228-1, Ex. 11 (chart summarizing 26 meetings).

[83] Capurro Decl., Ex. Y (Irico's Sixth Suppl. Objs. & Resps. To DPPs' First Set Interrogs., Third Suppl. Resp. to Interrog. No. 5) at 11–13 (admitting that Irico's travel reimbursement records show that Irico employees traveled to seven of the meetings with competitors alleged by Plaintiffs in ECF No. 5228-1, Ex. 11).

[84] *See* Capurro Decl. ¶ 58, Ex. BBB (Irico's Third Suppl. Objs. & Resps. to DPPs' First Set of Interrogs.) at 7.

The Honorable Vaughn R. Walker
3/20/2023
Page 22

# ARGUMENT

## I.   Irico Had A Legal Duty To Preserve Evidence And Avoid Spoliation

"Spoliation" is the destruction or failure to preserve documents, ESI, or other property for another's use as evidence.[85] All litigants have an affirmative common-law duty to preserve evidence that is potentially relevant, or may lead to the discovery of relevant evidence, and to avoid spoliation.[86]

From the moment litigation is filed or reasonably anticipated, a party "must suspend its routine document retention/destruction policy and put in place a 'litigation hold' to ensure the preservation" of all documents and ESI "that [are] relevant to the claims or defenses of any party, or which [are] relevant to the subject matter involved in the action."[87] That includes an obligation to identify and locate such information as well to preserve it.[88] It is well-established that an oral litigation hold "is insufficient to reasonably protect against the spoliation of evidence."[89] The litigation hold must be in writing.[90]

Once a corporate party has put a litigation hold into place, it must take affirmative steps to make certain that all sources of potentially relevant information are identified and placed "on hold," and that they *remain* "on hold." As part of that process, the party must communicate with "key players" in the litigation to understand how they stored information and to ensure that it is located and preserved.[91] With respect to ESI, such as electronically stored documents, data and emails, the company must consult with IT personnel to ensure that its document retention policies, data retention architecture, and

---

[85] *Apple Inc. v. Samsung Elecs. Co., Ltd.*, 888 F. Supp. 2d 976, 989 (N.D. Cal. 2012) ("*Apple II*").

[86] *Compass Bank v. Morris Cerullo World Evangelism*, 104 F. Supp. 3d 1040, 1051 (S.D. Cal. May 8, 2015) ("*Compass Bank*").

[87] *Zubulake v. UBS Warburg*, 220 F.R.D. 212, 218 (S.D.N.Y. 2003).

[88] *Apple Inc. v. Samsung Elecs. Co*., 881 F. Supp. 2d 1132, 1137 (N.D. Cal. 2012) ("*Apple I*")

[89] *Borum v. Brentwood Vill., LLC*, 332 F.R.D. 38, 46 (D.D.C. 2019).

[90] *See GenOn Mid-Atlantic, LLC v. Stone & Webster, Inc*., 282 F.R.D. 346, 357 (S.D.N.Y. 2012) (finding "a degree of culpability sufficient to permit the imposition of sanctions" where company failed to issue written litigation hold after it contemplated litigation); *Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*, 685 F. Supp. 2d 456 ("*Pension Comm.*"), at 471 (S.D.N.Y. 2010) (it is "gross negligence not to issue a written litigation hold . . . .").

[91] *See Pension Comm.*, 685 F. Supp. 2d at 465 ("[T]he failure to collect records – either paper or electronic – from key players constitutes gross negligence or willfulness as does the destruction of email or certain backup tapes after the duty to preserve has attached.")

The Honorable Vaughn R. Walker
3/20/2023
Page 23

system-wide backup procedures are understood and harmonized with the document preservation regime.[92] The auto-deletion of emails must be terminated immediately.[93] Furthermore, if necessary, ESI must be preserved by creating backup tapes together with a mirror image of the company's computer system.[94] Finally, the organization must *publicize* the litigation hold to its managers and employees, *train* them in how to comply with it, and *monitor* their conduct to ensure that they comply.[95] The failure to do any or all of these things "constitutes gross negligence or willfulness as does the destruction of email or certain backup tapes after the duty to preserve has attached."[96]

Thus, for example, in *Apple I,* the court sanctioned defendant Samsung for spoliation and ordered that an adverse inference instruction be given to the jury.[97] Although Samsung had issued a written litigation hold, it did not train its employees how to comply with it, did not verify their compliance, and failed to disable the auto-delete function on its proprietary email system, so that most of the emails on that system were lost. *Id*. The court held that Samsung acted in "conscious disregard" of its obligations. *Id.*

In addition to the *common-law duty* to preserve evidence, the Court's Pretrial Order No. 1 required Irico to preserve documents and data that either "may be relevant to this action" or were "potentially relevant to the subject matter of this litigation." ECF No. 230.

## II.    The Court's Authority To Impose Sanctions For Spoliation And For Irico's Failure To Produce Su Xiaohua In Violation Of Court Orders

"There are two sources of authority under which a district court can sanction a party who has despoiled evidence and/or engaged in bad faith conduct: the inherent power of federal courts to levy sanctions in response to abusive litigation practices, and the availability of sanctions under [Fed.R.Civ.P.] 37[.]"[98]

---

[92] *Zubulake v. UBS Warburg LLC*, 229 F.R.D. at 432.

[93] *Pension Comm.*, 685 F. Supp. 2d at 471. *See DR Distribs., LLC v. 21 Century Smoking, Inc*., 513 F. Supp. 3d 839, 979 (N.D. Ill. 2021) ("[D]isabling an autodeletion function is universally understood to be one of the most basic and simple functions a party must do to preserve ESI.").

[95] *Apple I,* 881 F. Supp.2d at 1145–46, 1150.

[96] *Id.*; *Pension Comm.,* 685 F. Supp. 2d at 465.

[97] *Apple I,* 881 F. Supp. 2d at 1147.

[98] *Leon v. IDX Sys. Corp*., 464 F.3d 951, 958 (9th Cir. 2006) ("*Leon*") (internal quotation marks omitted).

The Honorable Vaughn R. Walker
3/20/2023
Page 24

### A.  Sanctions Pursuant to the Court's Inherent Authority

"[C]ourts have the inherent power to impose sanctions for abusive litigation practices,"[99] including "the authority to impose sanctions for the . . . spoliation of evidence"[100] and violations of court orders.[101] The policy underlying that inherent power is "the need to preserve the integrity of the judicial process in order to retain confidence that [it] works to uncover the truth."[102]

Available sanctions include giving an adverse inference jury instruction, precluding evidence, or imposing case-dispositive sanctions of dismissal or judgment.[103] The party seeking sanctions must show that (1) the party that lost the information had a duty to preserve it when it was destroyed; (2) the destruction was accompanied by a culpable state of mind; and (3) the spoliated information was relevant to the claims or defenses of the party that sought the discovery.[104] "A party's destruction of evidence qualifies as willful spoliation if the party has 'some notice that the documents were potentially relevant to the litigation before they were destroyed.'"[105]

While the court has discretion to impose spoliation sanctions, it must determine which sanction best (1) deters parties from future spoliation; (2) places the risk of an erroneous judgment on the spoliating party; and (3) restores innocent parties to their rightful litigation position.[106] The choice of appropriate sanctions should be commensurate to the spoliating party's motive or degree of fault in destroying the evidence. *Id.*

---

[99] *Young v. Off. of U.S. Senate Sergeant at Arms*, 217 F.R.D. 61, 65 (D.D.C. 2003).

[100] *Leon*, 464 F.3d at 958.

[101] *Harry & David v. Pathak*, No. CV 09-3013-CL, 2010 U.S. Dist. LEXIS 59837, *12, 2010 WL 2432071 (D. Or. 2010).

[102] *Pension Committee*, 685 F. Supp. 2d at 465.

[103] *Compass Bank*, 104 F.Supp.3d at 1052.

[104] *See Steves and Sons, Inc. v. JELD-WEN, Inc*., 327 F.R.D. 96, 104 (E.D. Va. 2018); *Moore v. Gilead Scis., Inc*., No. C 07-03850 SI, 2012 WL 669531, at *3 (N.D. Cal. Feb. 29, 2012).

[105] *Leon*, 464 F.3d at 959 (quoting *United States v. Kitsap Physicians Serv*., 314 F.3d 995, 1001 (9th Cir. 2002)). *See also Fink v. Gomez*, 239 F.3d 989, 993 (9th Cir. 2001) (sanctions pursuant to the Court's inherent authority "are available if the court specifically finds bad faith or conduct tantamount to bad faith").

[106] *Internmatch, Inc., v. Nxtbigthing*, LLC, No. 14-cv-05438-JST, 2016 WL 491483, at *4 (N.D. Cal. Feb. 8, 2016) ("*Internmatch*"); *Apple I,* 881 F. Supp. 2d at 1136.

The Honorable Vaughn R. Walker
3/20/2023
Page 25

### B. **Sanctions Under Rule 37**

Two subsections of Rule 37 provide additional authority for the imposition of sanctions for the imposition of sanctions here.

#### 1. **Rule 37(b)(2)(A)**

*First,* sanctions can be imposed under Rule 37(b)(2)(A), which provides that if a party "fails to obey an order to provide or permit discovery," the Court "may issue further just orders . . . ."[107] In determining what remedies are appropriate under Rule 37, courts consider (1) whether the non-complying party acted in bad faith, (2) the prejudice suffered by the opposing party, (3) the need for deterrence, and (4) whether less drastic sanctions would have been effective.[108]

Sanctions under Rule 37(b)(2)(A) may include, but are not limited to, "(i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims; (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence; (iii) striking pleadings in whole or in part; . . . [or] (vi) rendering a default judgment against the disobedient party." Under Rule 37(b)(2)(A), disobedient conduct "not shown to be outside [a litigant's] control" can support a finding of willfulness, bad faith or fault that can justify entering a severe sanction against that party, up to and including the entry of a default judgment.[109]

#### 2. **Rule 37(e)**

*Second,* sanctions are available under Fed. R. Civ. P. 37(e) "if electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery . . . ." The severity of the sanction available under Rule 37(e) depends, in large part, on whether the spoliator "acted with the *intent* to deprive another party of the information's use in the litigation." Fed. R. Civ. P. 37(e)(2) (emphasis

---

[107] *Leon*, 464 F.3d at 958. *See also WeRide Corp. v. Kun Huang*, No. 5:18-cv-07233-EJD, 2020 WL 1967209, at *11–12 (N.D. Cal. Apr. 24, 2020) ("*WeRide*") (awarding terminating sanctions under Rule 37(b) where defendants spoliated evidence in violation of a Court order); *Facebook, Inc. v. OnlineNIC Inc*., No. 19-CV-07071-SI (SVK), 2022 WL 2289067, at *1 (N.D. Cal. Mar. 28, 2022) ("*Facebook*") (recommending terminating sanctions under Rules 37(b) and 37(e), where, *inter alia*, parties deleted and withheld ESI), *Report and Recommendation adopted*, 2022 WL 17371092 (N.D. Cal. Oct. 17, 2022).

[108] *Belk v. Charlotte-Mecklenburg Bd. of Educ*., 269 F.3d 305, 348 (4th Cir. 2001) (*en banc*).

[109] *Fair Housing of Marin v. Combs*, 285 F.3d 899, 905 (9th Cir. 2001); *Internmatch,* 2016 WL 491483, at *4.

The Honorable Vaughn R. Walker
3/20/2023
Page 26

added). In the absence of a finding of intent, the Court is limited to assessing sanctions "no greater than necessary to cure the prejudice" under Rule 37(e)(1). However, "[i]f the party that lost the evidence acted with the intent to deprive another party of the information's use in the litigation, more severe sanctions are available under Rule 37(e)(2), including a presumption that the lost information was unfavorable to the party, instructing the jury that it may or must apply such a presumption or even dismissing the action entirely."[110]

Notably, where the despoiling party has acted with intent, no showing is required that the spoliation has caused prejudice to the other party, "because the finding of intent . . . can support not only an inference that the lost information was unfavorable to the party that intentionally destroyed it, but also an inference that the opposing party was prejudiced by the loss of information that would have favored its position."[111] A party deprived of ESI by spoliation need only demonstrate the adverse party's intent by *a preponderance of the evidence*.[112] Moreover, "[i]ntentional destruction and bad faith may be proved inferentially and with circumstantial evidence, and [the] Court need not leave experience and commonsense at the courthouse door when making its determination."[113] Thus, in *Moody v. CSX Transp., Inc.*, 271 F. Supp. 3d 410, 431 (W.D.N.Y. 2017) ("*Moody*"), key evidence was lost when the defendants destroyed or recycled an employee's laptop. Given the importance of the evidence, the court found the defendants' conduct was "so stunningly derelict as to evince intentionality." *Id.* at 432.

## III.   The Legal Prerequisites For The Imposition Of Sanctions Are Present

The legal prerequisites for the imposition of sanctions under the Court's inherent authority are present here. Irico had a duty to preserve relevant evidence when it was destroyed, and the spoliated evidence was highly relevant to the claims or defenses in the case.[114] In addition, the destruction of evidence was intentional, willful, and in bad faith

---

[110] *Matthew Enter., Inc. v. Chrysler Grp. LLC*, No. 13-CV-04236-BLF, 2016 WL 2957133, at *3 (N.D. Cal. May 23, 2016) (citing Fed. R. Civ. P. 37(e)(2)).

[111] Advisory Committee Note to Fed. R. Civ. P. 37(e)(2) – 2015 Amendment.

[112] *Torgersen v. Siemens Bldg. Tech., Inc.*, No. 19-cv-4975, 2021 WL 2072151, at *4 (N.D. Ill. May 24, 2021) ("*Torgersen*").

[113] *Id.* at *4 (quoting *Sonrai Systems, LLC v. Anthony Romano, et al.*, No. 16 C 3371, 2021 WL 1418405, at *13 (N.D. Ill. Jan. 20, 2021)); *accord Estate of Bosco v. Cnty. of Sonoma*, No. 20-cv-04859-CRB, 2022 WL 16927796, at *9 (N.D. Cal. Nov. 14, 2022) ("Because courts are unable to ascertain precisely what was in a person's head at the time spoliation occurred, they must look to circumstantial evidence to determine intent.")

[114] Defendants should not escape sanctions because the exact identity of the documents that were destroyed or lost cannot be determined. Their wholesale destruction of entire categories of evidence is the reason it is not possible to determine precisely what evidence has been lost. *Pension Comm.,* 685 F. Supp. 2d at 479–480. *See also Kronisch v. United States*, 150 F.3d 112, 128 (2d Cir. 1998) ("[H]olding the prejudiced party to too strict a

The Honorable Vaughn R. Walker
3/20/2023
Page 27

because Irico had been served with Complaints detailing Plaintiffs' claims and had received detailed instructions from counsel that it ignored. Thus, Irico was on notice that the evidence was potentially relevant to this case before it was destroyed.[115]

The requirements for sanctions under both Rule 37(b)(2)(A) and Rule 37(e) are also satisfied. Defendants' willful failure to impose a litigation hold and to locate and preserve potentially relevant evidence violated PTO No. 1 and Irico's common-law duties, including its duty to locate and ensure the preservation of ESI. That evidence was lost because Irico failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery. Irico's failure to produce Mr. Su for his Court-ordered deposition and its lack of candor with Plaintiffs and the Court have exacerbated the harm to Plaintiffs. Irico's improper withdrawal from the case, its violations of other orders, and its repeated misrepresentations to the Court also support the issuance of sanctions.

## A.      Irico Acted With Intent To Deprive Plaintiffs Of Relevant Evidence

Abundant evidence supports a finding that Irico's failure to take reasonable measures to preserve documents and ESI, and its other conduct, was intentional within the meaning of Rule 37(e). By not adopting prompt and reasonable measures to put potentially relevant evidence "on hold"—by not searching for it and not preserving it—Irico acted with the intent to deny that evidence to Plaintiffs.

The strongest evidence of Irico's intent is the gross inadequacy of its efforts. Irico waited *eight months* to do anything at all despite being instructed by Pillsbury as early as February 15, 2008 and on several occasions thereafter to preserve "any potentially relevant evidence." Then, instead of implementing a robust program to identify, locate and preserve relevant evidence, all Irico (allegedly) did was give Pillsbury's August 2008 Instructions to members of the "Litigation Committee." And there, for all we know, the matter was dropped. There is no evidence that anything was done to identify, find or preserve relevant documents or ESI. The auto-deletion of emails continued unabated—clear evidence of intent, under the caselaw[116]—resulting in the wholesale destruction of all Irico emails from the relevant period. To make such a tardy and transparently inadequate attempt to identify

---

standard of proof regarding the likely contents of the destroyed evidence would subvert the prophylactic and punitive purposes of the adverse inference, and would allow parties who have intentionally destroyed evidence to profit from that destruction."); *Gutman v. Klein*, No. 03 CV 1570 (BMC) (RML), 2008 WL 4682208, at *7 (E.D.N.Y. Oct. 15, 2008) ("bad faith alone is sufficient circumstantial evidence from which a reasonable fact finder could conclude that the missing evidence was unfavorable to that party.") (internal quotation marks and citation omitted).

[115] *Leon*, 464 F.3d at 959.

[116] Failure to disable auto-delete functionality ***itself*** satisfies the intent requirement of Rule 37(e)(2). *See Glaukos Corp. v. Ivantis, Inc.*, No. SACV18620JVSJDEX, 2020 WL 10501850, at *4 (C.D. Cal. June 17, 2020); *WeRide*, 2020 WL 1967209, at *15–16.

The Honorable Vaughn R. Walker
3/20/2023
Page 28

evidence and save it from destruction, Irico cannot have been seriously trying to find the evidence and preserve it. Irico's conduct was "so stunningly derelict as to evince intentionality."[117] Moreover, the insufficiency of Irico's efforts was not a result of a "misunderstanding," because we now know its counsel instructed it—as early as February, 2008, if not earlier—precisely how to satisfy its legal duties, and even wrote out instructions to be transmitted to Irico's employees.

The *magnitude* of the failure to preserve evidence also militates in favor of a finding of intent. That *all* of the key players' emails and other relevant documents and ESI were destroyed or lost suggests a thoroughness indicative of intent. Irico's misrepresentations regarding its evidence preservation efforts also bespeaks a desire to dissemble and conceal what happened, which itself is circumstantial evidence of intent and bad faith.[118] That the decision to disregard its obligation to preserve evidence was made by a Litigation Committee dominated by the very people who participated in the alleged conspiracy also demonstrates that Irico's conduct was intended to deprive Plaintiffs of evidence. As explained above, there is also little question that Irico's failure to produce Mr. Su, its withdrawal from the case, and its repeated violations of the Courts' orders were intentional.

### B.    Plaintiffs Have Suffered Severe Prejudice

Although a finding of prejudice is not necessary to support severe sanctions where a party has despoiled evidence with intent to deny an opposing party the use of that evidence, the loss of entire categories of critical evidence—and Irico's other conduct—has substantially prejudiced Plaintiffs here.

*First,* in the absence of any Irico-produced documents regarding its participation in anticompetitive meetings, communications and agreements, Plaintiffs will have to rely on documents from the files of other defendants to prove Irico's involvement. Almost all of those documents were not only *produced* by other defendants but also *authored* by them. Only a very limited number of documents authored by Irico were produced by the other defendants. And while the other defendants' meeting minutes provide strong evidence of Irico's participation in the conspiracy, Irico-authored documents would be stronger, because they would include direct admissions by Irico personnel.

*Second,* Irico has indicated that it intends to rely on the purported defense that the Chinese government compelled it to charge the prices it charged. But Irico has produced

---

[117] *Moody*, 271 F. Supp. 3d at 432. *See also John v. Cty. of Lake*, No. 18-cv-06935-WHA (SK), 2020 WL 3630391, at *7 (N.D. Cal. July 3, 2020) (intent found where, as here, the court had expressly instructed defendants to put in place policies to preserve evidence and to stop any policy of destruction, but defendants did not do so; "even without that warning, Defendants' failure to comply with the basic rules requiring that they preserve evidence after the claim shows their intent.").

[118] *Internmatch,* 2016 WL 491483 at *11; *Torgersen*, 2021 WL 2072151, at *5.

The Honorable Vaughn R. Walker
3/20/2023
Page 29

virtually no documents from the relevant period showing how it priced its CRTs.[119] If the files and emails of those responsible for pricing decisions had been preserved and produced instead of being destroyed, and Su Xiaohua had been produced for deposition, Plaintiffs might have been able to discover evidence showing that pricing was based on other factors, not on government compulsion. Likewise, Irico intends to assert that Plaintiffs claims are barred on jurisdictional grounds or because its conduct was neither directed to nor affected purchasers in the U.S. If Irico's internal communications and communications with its customers had been preserved and produced, and Su Xiaohua had been produced for deposition, Plaintiffs would likely have direct evidence showing that Irico knew its price-fixed CRTs were impacting the U.S. market.[120] Because Irico willfully failed to preserve documents relevant to these affirmative defenses and did not produce Mr. Su, Plaintiffs have been denied the opportunity to properly test them. The absence of this evidence makes it much more difficult for Plaintiffs to "prove a negative."[121]

*Finally*, Irico's spoliation of evidence, its failure to produce Mr. Su for a deposition, and its lack of candor about both of those instances of discovery misconduct, especially when considered in light of its prior manipulative and dilatory conduct in this litigation, has impeded the forward progress of this case and has materially postponed its fair and just resolution. The trial date is currently set for January 2024—more than *sixteen years* after this case was filed. The vast majority of that delay is attributable to Irico's misconduct. As this Court held in *Bernstein v. Virgin America, Inc.*, No. 15-cv-02277-JST, 2018 WL 6199679, at *5 (N.D. Cal Nov. 28, 2018), "[d]isruption to the schedule of the court and other parties . . . is not harmless." (citations, internal quotation marks and ellipsis omitted).

## IV.   Irico's Misconduct Warrants Terminating Sanctions

As this Court has explained, the Court's power under its inherent authority, Rule 37(b), and Rule 37(e), includes imposing terminating sanctions. *See., e.g., Internmatch, Inc.*, 2016 WL 491483, at *4 (reciting standard and collecting cases). Irico's long-running campaign to obstruct and delay this proceeding warrants a terminating sanction.

---

[119] *See, e.g.,* Capurro Decl. ¶ __, Ex. Y (Irico's Sixth Suppl. Objs. & Resps. to DPPs' First Set of Interrogs., Suppl. Resp. to Interrog. No. 6) at 14 (listing only eight documents in response to interrogatory about pricing); Ex. X (Irico's Fourth Suppl. Objs. & Resps. To IPPs' First Set of Interrogs., Suppl. Resp. to Interrog. No. 7) at 12–14 (listing primarily documents produced by other defendants, and non-contemporaneous documents from the internet and government documents rather than Irico's own documents from the relevant period as support for Irico's affirmative defenses, including its defense that its "pricing-related conduct was compelled by the Chinese government").

[120] As noted, some of the Irico sales and marketing reports found in Chunghwa's files show that Irico was aware that its customers were manufacturing televisions containing its CRTs for the U.S. market. *See* fn. 56, *supra*, and Capurro Decl., Exs. HH–JJ.

[121] *Williams v. Russ*, 167 Cal. App. 4th 1215, 1222 (2008) ("How do we know what was destroyed? How do you prove a negative?")

The Honorable Vaughn R. Walker
3/20/2023
Page 30

Irico's wholesale destruction of entire categories of important evidence in direct and knowing violation of this Court's order to preserve relevant evidence is sufficient by itself to justify a terminating sanction.[122] In addition, Irico refused to produce Mr. Su in violation of this Court's orders, has unreasonably delayed proceedings, has lied to Plaintiffs and the Court about critical matters, and attempted to cover up its misdeeds. In sum, Irico has "willfully deceived the Court and engaged in conduct utterly inconsistent with the orderly administration of justice." *See Wyle,* 709 F. 2d at 589. Such conduct also justifies striking Irico's answers.

The factors the Ninth Circuit has enunciated for the imposition of terminating sanctions supports such a sanction. Those factors are:

> (1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions.

*Internmatch*, 2016 WL 491483, at *4.

The first two factors, as several courts have noted, weigh in favor of terminating sanctions where, as here, the circumstances involve the violation of court orders.[123] These factors weigh even more heavily in favor of terminating sanctions in this case given the years' long delays occasioned by Irico's conduct, the multiple orders Irico has violated, and its attempts to cover up its misconduct with misrepresentations.[124]

The third factor—prejudice to the opposing party—is the "'most critical [factor] for case-dispositive sanctions,' because it goes to 'whether the discovery violations

---

[122] *See, e.g., WeRide*, 2020 WL 1967209, at *10, *12; *Facebook,* 2022 WL 2289067, at *1; *Jones v. Riot Hosp. Grp. LLC*, 2022 WL 3682031, at *10–13 (D. Ariz. Aug. 24, 2022) ("*Jones*").

[123] *See, e.g., Fair Hous. of Marin v. Combs*, 285 F.3d at 906 (affirming imposition of default judgment sanction where defendant repeatedly flouted basic discovery obligations and violated court orders); *WeRide,* 2020 WL 1967209 at *10 (terminating sanctions were required to remedy prejudice to plaintiff and to address defendant's demonstrated disregard for the court's orders); *Jones*, 2022 WL 3682031, at *10–13 (terminating sanctions for intentional destruction of text messages and concluding that lesser sanctions would be ineffective given plaintiff's disregard of court orders and undermining of the evidentiary record).

[124] Irico's conduct during the jurisdictional phase of this case confirms its improper intent to delay the case. Among other things, Irico submitted no new arguments in support of immunity after the completion of one and a half years of jurisdictional discovery. *See* FSIA Order at 12 (Court did not invite "a belated motion for reconsideration."). Its appeal of the Court's order denying immunity also appears to have been instituted solely for delay inasmuch as it was dismissed shortly before oral argument. *See* ECF No. 5861.

The Honorable Vaughn R. Walker
3/20/2023
Page 31

threaten to interfere with rightful decision of the case.'" *WeRide*, 2020 WL 1967209, at *10 (citing *Valley Engineers Inc. v. Elec. Eng'g Co.*, 158 F.3d 1051, 1057 (9th Cir. 1998)). This factor also weighs heavily in favor of terminating sanctions. While Plaintiffs possess strong evidence of Irico's liability, Plaintiffs' ability to rebut Irico's defenses herein, as in *WeRide,* has been "irredeemably" compromised by the egregious destruction and loss of virtually all of the documentary evidence in Irico's possession, including virtually all of the witnesses with knowledge of the core issue in this case.

Irico contends that despite its attendance at numerous allegedly conspiratorial meetings, it never ***agreed*** to fix CRT prices; that the meetings themselves were, to the extent anyone can even remember, primarily social occasions; and that whatever information was exchanged was false.[125] Irico also seizes on a handful of statements in the voluminous meeting notes to assert that, even to the extent the other attendees fixed prices, Irico was a "disruptor" and fierce competitor. *Id.* There is no question that Irico has destroyed, improperly lost or put beyond the reach of discovery a vast amount of evidence that is not only unquestionably relevant to these contentions but would also likely disprove them. It would be a gross injustice if the factfinder herein were to credit any of them due to the absence of that evidence.

Irico's misconduct, moreover, goes directly to the core issue in the case. Again, Irico disregarded the Court's preservation order and destroyed virtually all of its records relating to the over 100 competitor meetings the evidence shows it attended. Its improper withdrawal from the case facilitated the destruction of these records and also resulted in the "unavailability" for deposition of virtually all of the Irico meeting attendees. Indeed, the Court has already found "inarguabl[e] prejudice" resulting from Irico's "decision to disappear from the case" *See* Default Order at 15.[126] Its misrepresentations about its intentions to produce Mr. Su and failure to compel his attendance at deposition resulted in the further loss of testimony of one of only two remaining meeting attendees.

The fourth factor—public policy favoring disposition of cases on their merits—weighs against terminating sanctions. But this is true in every case, and it cannot outweigh the other factors by itself. *See, e.g., Internmatch*, 2016 WL 491483, at *12. Courts granting terminating sanctions have found such sanctions appropriate where, as here, the loss of evidence brings into question whether a decision "on the merits" is even possible. *See, e.g., WeRide*, 2020 WL 1967209, at *11 ("AllRide's destruction of evidence was so sweeping that this case cannot be resolved on its merits"). As noted, the Court has already suggested

---

[125] *See, e.g.,* Capurro Decl. ¶ 59, Ex. CCC (Irico's Response to Plaintiffs' Conspiracy Proffer, dated Apr. 11, 2022) at 3–5.

[126] The close relationship between Irico's wrongful conduct and the core issues in the case amply satisfies any "due process" issues associated with terminating sanctions. *See Internmatch*, 2016 WL 491483 at *4.

The Honorable Vaughn R. Walker
3/20/2023
Page 32

that the absence of testimony from Irico attendees at the competitor meetings "is highly detrimental to resolution of this litigation on its merits." Su Order at 12.

The fifth factor—the availability of less severe sanctions—also weighs heavily in favor of terminating sanctions. As this Court has explained:

> To evaluate this factor, the Court examines: "(1) whether the district court explicitly discussed the feasibility of less drastic sanctions and explained why such alternate sanctions would be appropriate; (2) whether the district court implemented alternative sanctions before ordering dismissal; and (3) whether the district court warned the party of the possibility of dismissal before ordering dismissal."

*Internmatch*, 2016 WL 491483, at *12. In *Internmatch*, a trademark infringement case, the Court declined to enter terminating sanctions in favor of an evidentiary sanction precluding any evidence of the apparently dispositive issue of prior use. *Id.* at *13–14. The sanctioned party's conduct, moreover, was apparently confined to that issue. *Id.* Plaintiffs respectfully submit that an alternative sanction—short of deeming Irico's liability established—would be insufficient here.

This case requires proof of Irico's participation in a conspiracy to fix prices over a 12-year period. Plaintiffs' proof is strong, but it is also voluminous and complex and Irico will attack every piece of it. As in *WeRide,* "any jury instruction or exclusion of evidence would be inappropriate here because the spoliation occurred on such a massive scale." 2020 WL 1967209, at *11. A jury instruction requiring a presumption "would leave [Plaintiffs] helpless to rebut any material that [Irico] would use to overcome that presumption." *Id.* To the extent Irico is able to exploit any potential gap in Plaintiffs' proof, exclude evidence, or deny or reduce its liability in any way would be a grave injustice given that Irico has destroyed or denied access to evidence that would likely rebut its arguments. Indeed, it would reward Irico for its wrongful conduct.

Other considerations also weigh heavily in favor of terminating sanctions. Unlike in *Internmatch,* Irico has repeatedly and intentionally defied Court Orders, including the Order to preserve evidence. *WeRide*, 2020 WL 1967209, at *11. Terminating sanctions would fulfill the important policy of deterring similar conduct. *See, e.g., Internmatch*, 2016 WL 491483, at *4. Additionally, alternative sanctions cannot rectify the years of delay caused by Irico's wrongful conduct—it has been over 12 years since Irico "disappeared" from this litigation. Irico had also been warned that its conduct could lead to severe sanctions. Among other things, Pillsbury notified Irico in 2008 that "***[i]f some potentially relevant information is lost or destroyed, this could have very serious consequences for Irico.***" Capurro Decl., Ex ___ (IRI-SUPP-000012E).

Finally, a default judgment is appropriate because it would directly remedy the fact that Irico obtained the lifting of the defaults herein under false pretenses. In *Google LLC v. Starovikov*, No. 21cv10260-DLC, 2022 WL 16948296, at *6 (S.D.N.Y. Nov. 15, 2022),

The Honorable Vaughn R. Walker
3/20/2023
Page 33

after lifting a default, the Court imposed a default judgment sanction where defendants acted with an intent to deprive plaintiff of discoverable information and abused the court system and discovery rules.  Like Irico, defendants used the default to facilitate the loss of evidence and misrepresented key facts in connection with their application to lift the default. *Id.* at *6, *10.  The court concluded the default judgment sanction was "particularly appropriate" given that the original default was lifted based on false representations. *Id*. at *12.

## V.  If the Court Does Not Grant Terminating Sanctions, It Should Impose Severe Alternative Sanctions on Irico

If the Court decides not to impose terminating sanctions, it should grant alternative relief that attempts to fully remedy the prejudice Irico's misconduct has caused and is commensurate with the seriousness of Irico's misconduct. Several separate and distinct alternative sanctions are both necessary and appropriate.

*First*, the Court should:

(1) Deem Irico's participation in the alleged conspiracy, and the other activities of the alleged conspiracy as set forth in the other defendants' meeting notes as established as against Irico, as the Special Master suggested as a sanction at the hearing held on May 13, 2021;

(2) Order that all documents produced by the Irico Defendants are deemed authentic under FRE 901, and are admissible as business records pursuant to FRE 803(6); and

(3) Order that all meeting notes produced by other defendants are deemed authentic and admissible. The meeting notes and other documents that the Court should deem admissible, should include, but not be limited to, (a) those that the Special Master, in his Report & Recommendation Re: Admissibility of Coconspirator Documents and Statements, ECF No. 6074, adopted by the Court by Order entered October 14, 2022 (ECF No. 6093) (the "Admissibility R&R"), recommended should be admitted for purposes of summary judgment, as well as (b) those considered by the Special Master in his Admissibility R&R but not yet admitted pending the submission of additional information specified by the Special Master, where Plaintiffs later proffer the additional information requested and the Special Master concludes that it is sufficient to demonstrate their admissibility.

Because Irico spoliated nearly all of its documents and ESI, there are very few Irico-produced documents on which Plaintiffs could rely to establish Irico's participation in the conspiracy, the authenticity of the few documents Irico produced, and the admissibility of meeting notes and documents produced by other Defendants. Moreover, Irico's wrongful failure to produce Messrs. Su and Guo, and other witnesses with contemporaneous knowledge, has left Plaintiffs unable to elicit testimony from Irico witnesses regarding

The Honorable Vaughn R. Walker
3/20/2023
Page 34

these matters. An order granting these sanctions would therefore help to cure the prejudice Plaintiffs have suffered due to Irico's misconduct.

*Second*, the Court should instruct the jury that it must infer that, had the documentary and electronic evidence been preserved and introduced at trial, and the witnesses had testified, it would have been unfavorable to Irico, and the Court should make a similar finding insofar as it acts as the factfinder.

Courts have imposed a strong adverse inference jury instruction where a party has engaged in intentional spoliation. This Court granted such relief in *Internmatch*, where, as here, defendants, ignoring their counsel's instructions, took no steps to preserve relevant information, and did not instruct their employees to do so.[127] Similarly, in *Torgersen*, where the plaintiff deleted his Facebook page, which might have shown him engaging in physical activities he claimed were no longer possible due to his alleged injuries, the court held it would instruct the jury that plaintiff had spoliated the evidence despite having been requested to produce it and having been instructed by counsel to preserve it, and that the evidence must be presumed to have been adverse to him had it been retained and produced. *Id.* at *6.[128]

The harshness of the instruction should be determined based on the nature of the spoliating party's conduct—the more egregious the conduct, the harsher the instruction. "In its most harsh form, when a spoliating party has acted willfully or in bad faith, a jury can be instructed that certain facts are deemed admitted and must be accepted as true. At the next level, when a spoliating party has acted willfully or recklessly, a court may impose a mandatory presumption."[129]

Because Irico's conduct here has been egregious, a strong adverse inference and a jury instruction that imposes a mandatory presumption is appropriate. Such a remedy would deter future spoliation, and it would place the risk of an erroneous judgment caused by the absence of the spoliated evidence on the parties that caused it to be destroyed or lost. Most importantly, an adverse inference and instruction would protect Plaintiffs from the

---

[127] *Internmatch*, 2016 WL 491483, at *4.

[128] *See also BenShot, LLC* v. *2 Monkey Trading LLC*, 2022 U.S. Dist. LEXIS 77422, *2 (E.D. Wisc. Apr. 28, 2022) (adverse inference instruction imposed where a party intentionally failed to preserve the emails of an important employee); *Fast*, 340 F.R.D. at 337 (adverse inference instruction given where plaintiff failed to preserve Facebook posts, emails, and text messages with intent to deprive defendants of their use in the litigation); *see also Sec. & Exch. Comm'n v. Hong*, No. CV2004080MCSRAOX, 2021 WL 4803497, at *7 (C.D. Cal. Sept. 17, 2021), *report and recommendation adopted*, No. 220CV04080MCSRAO, 2021 WL 4923310 (C.D. Cal. Oct. 21, 2021) (where defendants failed to appear for deposition, the court held, *inter alia*, it would instruct the jury that had they testified, their testimony would have been harmful to them).

[129] *Pension Comm.*, 685 F. Supp. 2d at 470.

The Honorable Vaughn R. Walker
3/20/2023
Page 35

prejudice caused by the unavoidable fact that their proof at trial will be almost completely devoid of any Irico witnesses, or any Irico-*produced* documents or Irico-*authored* documents (except for the handful of such documents produced by other defendants) that address Irico's participation in conspiratorial meetings and agreements. Because that evidence is missing, Plaintiffs will be severely handicapped in proving their case. It is not possible to reconstruct what the missing evidence might have said, thus there is no satisfactory way to compensate for its absence.[130] Moreover, without a strong adverse inference instruction, the jury might wonder why so few Irico documents demonstrating its attendance at meetings and participation in the conspiracy are offered in evidence. An adverse inference instruction would explain to the jury members why so little Irico evidence has been shown to them.

*Finally*, the Court should strike Irico's affirmative defenses, but especially those as to which it identified Su Xiaohua as knowledgeable. In addition to preventing Plaintiffs from questioning Mr. Su regarding these defenses, Irico has spoliated documentary evidence relating to them, denying Plaintiffs the opportunity to fully discover the facts relating to them. To allow Irico to assert these defenses when it has destroyed the evidence Plaintiffs would need to rebut them would be fundamentally unfair. Courts have ordered similar issue sanctions in comparable situations. For example, in *Bernstein v. Virgin America, Inc.*, this Court held that merely excluding the withheld documents but allowing defendant Virgin America, Inc. to litigate its affirmative defense of waiver "would be an insufficient sanction, because Plaintiffs were not permitted to fully discover[] the facts of that defense during the discovery period."[131] Accordingly, the Court struck Virgin America's waiver defense. Similarly, in *Glaukos v. Invantis,* where, as here, Defendant failed to turn off the autodeletion of emails, the court granted not only an adverse inference instruction but also an issue sanction.[132] This Court should grant an issue sanction here and strike Irico's affirmative defenses.

---

[130] *See, e.g., id.* at 479–480 (holding that a rebuttable presumption arose that responsive, relevant documents were lost or destroyed, and that prejudice resulted, where parties failed to institute a timely written litigation hold, failed to adequately collect or preserve ESI, did not request documents from key players, delegated search efforts without any supervision from management, destroyed backup data and submitted misleading or inaccurate declarations).

[131] 2018 WL 6199679, at *5 (footnote omitted).

[132] 2020 WL 10501850, at *4; *see also Est. of Boyles v. Gree USA, Inc.,* No. 1:20-CV-276, 2021 WL 3570413, at *3 (M.D.N.C. Aug. 12, 2021) (where defendants violated order to produce witnesses for remote depositions in Hong Kong, the court precluded them from calling any corporate fact witnesses, struck their affirmative defenses, and prohibited them from introducing any evidence at trial beyond the cross-examination of plaintiffs' witnesses).

The Honorable Vaughn R. Walker
3/20/2023
Page 36

## CONCLUSION

In sum, Irico's spoliation of all ESI and almost every document relevant to the key issues in this case, its failure to produce Su Xiaohua in violation of Court Orders, its failure to make key discovery available in violation of numerous Court orders, its blatant attempts to conceal its misconduct, and its egregious delays of the case, have subjected Plaintiffs to severe prejudice. This is the rare case in which terminating sanctions are warranted. Alternatively, a strong adverse inference instruction and issue sanctions precluding Irico from asserting its affirmative defenses and the other relief requested herein would level the playing field for trial and impose appropriate punishment on Irico for its deliberate derelictions of duty.

Very truly yours,

*/s/ Lauren C. Capurro*

Lauren C. Capurro
Lead Counsel for Indirect Purchaser Plaintiffs

*/s/ R. Alexander Saveri*

R. Alexander Saveri
Lead Counsel for Direct Purchaser Plaintiffs

Cc:    Jay Weil (jay.weil@fedarb.com)
       John M. Taladay (john.taladay@bakerbotts.com)
       Evan J. Werbel (evan.werbel@bakerbotts.com)
       Thomas E. Carter (tom.carter@bakerbotts.com)
       Andrew L. Lucarelli (drew.lucarelli@bakerbotts.com)
       Kaylee Yang (kaylee.yang@nortonrosefulbright.com)

# Exhibit 2

1   BAKER BOTTS L.L.P.
    John M. Taladay (*pro hac vice*)
2   Evan J. Werbel (*pro hac vice*)
    Thomas E. Carter (*pro hac vice*)
3   Andrew L. Lucarelli (*pro hac vice*)
    700 K Street, N.W.
4   Washington, D.C. 20001
    (202)-639-7700
5   (202)-639-7890 (fax)
    Email: john.taladay@bakerbotts.com
6           evan.werbel@bakerbotts.com
            tom.carter@bakerbotts.com
7           drew.lucarelli@bakerbotts.com

8   Jonathan Shapiro (State Bar No. 257199)
    101 California Street, Suite 3600
9   San Francisco, California 94111
    (415) 291-6200
10  (415) 291-6300 (fax)
    Email: jonathan.shapiro@bakerbotts.com
11

12   *Attorneys for Defendants*
     *IRICO GROUP CORP. and*
13   *IRICO DISPLAY DEVICES CO., LTD.*

14

15                  **UNITED STATES DISTRICT COURT**

16                 **NORTHERN DISTRICT OF CALIFORNIA**

                          **OAKLAND DIVISION**
17

18

19  IN RE: CATHODE RAY TUBE (CRT)       Master File No. 4:07-cv-05944-JST
    ANTITRUST LITIGATION                (N.D. Cal.)
20
                                        MDL No. 1917
21
    This Document Relates to:          **IRICO DEFENDANTS' OBJECTIONS**
22                                     **AND RESPONSES TO INDIRECT**
    ALL INDIRECT PURCHASER ACTIONS     **PURCHASER PLAINTIFFS' THIRD**
23                                     **SET OF INTERROGATORIES TO**
                                       **IRICO GROUP CORPORATION AND**
24                                     **IRICO DISPLAY DEVICES CO., LTD.**

25

26  PROPOUNDING PARTY:        Indirect Purchaser Plaintiffs

27  RESPONDING PARTIES:       Irico Group Corporation
                              Irico Display Devices Co., Ltd.
28
    SET NUMBER:               Third (3)

---

1    Pursuant to Federal Rules of Civil Procedure 26 and 33, Irico Group Corporation and Irico

2 Display Devices Co, Ltd. (collectively, "Irico" or "Irico Defendants") hereby provides these

3 responses to the Indirect Purchaser Plaintiffs' ("Plaintiff") Third Set of Interrogatories to Irico

4 Group Corporation and Irico Display Devices Co., Ltd., dated July 7, 2021 ("Interrogatories").

5 Irico reserves the right to amend or supplement these Objections and Responses (the

6 "Responses") to the extent allowed by the Federal Rules of Civil Procedure and the Local Rules

7 of Practice in Civil Proceedings before the United States District Court for the Northern District

8 of California ("Local Rules"). Subject to and without waiving any of Irico's General and Specific

9 Objections as set forth below, Irico is willing to meet and confer with Plaintiff regarding such

10 General and Specific Objections.

11    The following Responses are made only for purposes of this case. The Responses are

12 subject to all objections as to relevance, materiality and admissibility, and to any and all

13 objections on any ground that would require exclusion of any response if it were introduced in

14 court. All evidentiary objections and grounds are expressly reserved.

15    These Responses are subject to the provisions of the Stipulated Protective Order issued by

16 the Court on June 18, 2008 ("Protective Order"). Irico's Responses are hereby designated

17 "Confidential" in accordance with the provisions of the Protective Order.

18    **GENERAL OBJECTIONS**

19    Irico makes the following General Objections to Plaintiff's Interrogatories:

20    1.    Irico's Responses are based upon information available to and located by Irico as

21 of the date of service of these Responses. In responding to Plaintiff's Interrogatories, Irico states

22 that it has conducted, or will conduct, a diligent search, reasonable in scope, of those files and

23 records in its possession, custody, or control believed to likely contain information responsive to

24 Plaintiff's Interrogatories.

25    2.    No express, incidental, or implied admissions are intended by these Responses and

26 should not be read or construed as such.

27    3.    Irico does not intend, and its Responses should not be construed as, an agreement

28 or acquiescence with any characterization of fact, assumption, or conclusion of law contained in

---

IRICO'S OBJECTIONS AND RESPONSES TO          1          Master File No. 4:07-cv-05944-JST
IPP'S THIRD SET INTERROGATORIES                              MDL No. 1917

1   or implied by the Requests.

2         4.      To the extent that Irico responds to Plaintiff's Interrogatories by stating that Irico

3   will produce or make available for examination responsive information or documents, Irico does

4   not represent that any such information or documents exist. Irico will make a good faith and

5   reasonable attempt to ascertain whether information responsive to Plaintiff's Interrogatories exists

6   and is properly producible, and will produce or make available for examination non-privileged

7   responsive materials to the extent any are located during the course of a reasonable search.

8         5.      Irico objects to Plaintiff's Interrogatories to the extent that they are overly broad,

9   unduly burdensome, oppressive, and duplicative to the extent that they seek information or

10   documents that are already in the possession, custody, or control of Plaintiff.

11         6.      Irico objects to Plaintiff's Interrogatories to the extent that they seek to impose

12   obligations on Irico beyond those of the Federal Rules of Civil Procedure, the Local Rules, or any

13   Order of this Court.

14         7.      Irico objects to Plaintiff's Interrogatories to the extent that they request duplicative

15   discovery in violation of the Order Re Discovery And Case Management Protocol, ECF No.

16   1128. *See* Order Re Plaintiffs' Motions To Compel Supplemental Discovery From Toshiba And

17   Panasonic, ECF No. 4128, at 4 ("The Discovery Protocol (ECF No 1128), requires parties to

18   coordinate discovery and not file duplicative discovery. . . . The benefit redounds to all parties on

19   both sides of the litigation, by conserving the efforts required by plaintiffs and protecting

20   defendants against unnecessary duplication of effort.") (Report and Recommendation adopted in

21   full at ECF No. 4256).

22         8.      Irico objects to Plaintiff's Interrogatories to the extent they seek information that is

23   not relevant or disproportionate to the needs of the case.

24         9.      Irico objects to Plaintiff's Interrogatories to the extent that they are vague,

25   ambiguous, or susceptible to more than one interpretation. Irico shall attempt to construe such

26   vague or ambiguous Interrogatories so as to provide for the production of responsive information

27   that is proportionate to the needs of the case. If Plaintiff subsequently asserts an interpretation of

28   any Interrogatory that differs from Irico's understanding, Irico reserves the right to supplement or

1  amend its Responses.

2      10.    Irico objects to Plaintiff's Interrogatories to the extent that they contain terms that

3  are insufficiently or imprecisely defined. Irico shall attempt to construe such vague or ambiguous

4  Interrogatories so as to provide for the production of responsive information that is proportionate

5  to the needs of the case.

6      11.    Irico objects to Plaintiff's Interrogatories to the extent that they seek information

7  that is protected from disclosure by the attorney-client privilege, work product doctrine, joint

8  defense or common interest privilege, self-evaluative privilege, or any other applicable privilege

9  or immunity. Irico will provide only information that it believes to be non-privileged and

10  otherwise properly discoverable. Nothing in Irico's responses is intended nor should be construed

11  as a waiver of any such privilege or immunity. The inadvertent or mistaken provision of any

12  information or responsive documents subject to any such doctrine, privilege, protection or

13  immunity from production shall not constitute a general, inadvertent, implicit, subject-matter,

14  separate, independent or other waiver of such doctrine, privilege, protection or immunity from

15  production.

16      12.    Irico objects to Plaintiff's Interrogatories to the extent that they call for

17  information that is not in the possession, custody, or control of Irico. Irico also objects to the

18  extent that any of Plaintiff's Interrogatories seek information from non-parties or third parties,

19  including but not limited to any of Irico's subsidiary or affiliated companies.

20      13.    Irico objects to Plaintiff's Interrogatories to the extent that responding would

21  require Irico to violate the privacy and/or confidentiality of a third party or confidentiality

22  agreement with a third party.

23      14.    Irico objects to Plaintiff's Interrogatories to the extent that they seek information

24  that is publicly available, already in Plaintiffs' possession, custody, or control, or more readily

25  available from other sources.

26      15.    Irico objects to Plaintiff's Interrogatories to the extent that they seek information

27  or documents concerning transactions outside the United States. Such Requests are unduly

28  burdensome and disproportionate to the needs of the case as Plaintiffs' class definition is confined

1  to "individuals and entities that indirectly purchased Cathode Ray Tube Products . . . in the United

2  States" (see Indirect Purchaser Plaintiffs' Fifth Consolidated Amended Complaint ("Complaint")

3  dated September 19, 2019).

4        16.    Irico objects to Plaintiff's Interrogatories to the extent that compliance would

5  require Irico to violate the laws, regulations, procedures, or orders of a judicial or regulatory body

6  of foreign jurisdictions.

7        17.    Irico's responses, whether now or in the future, pursuant to Plaintiff's

8  Interrogatories should not be construed as either (i) a waiver of any of Irico's general or specific

9  objections or (ii) an admission that such information or documents are either relevant or

10  admissible as evidence.

11        18.    Irico objects to Plaintiff's Interrogatories to the extent that they are compound

12  and/or contain discrete subparts in violation of Federal Rule of Civil Procedure 33(a)(1).

13        19.    Irico objects to Plaintiff's Interrogatories to the extent that they state and/or call for

14  legal conclusions.

15        20.    Irico objects to the Interrogatories to the extent that they contain express or implied

16  assumptions of fact or law with respect to the matters at issue in this case.

17        21.    Irico objects to the Interrogatories to the extent they seek information or

18  documents that cannot be removed or transmitted outside China without violating the laws and

19  regulations of that country, including but not limited to restrictions on the transmission of state

20  secrets or trade secrets as those terms are defined under Chinese law.

21        22.    Irico reserves the right to assert additional General and Specific Objections as

22  appropriate to supplement these Responses.

23        These General Objections apply to each Interrogatory as though restated in full in the

24  responses thereto. The failure to mention any of the foregoing General Objections in the specific

25  responses set forth below shall not be deemed as a waiver of such objections or limitations.

26        **GENERAL OBJECTIONS TO DEFINITIONS AND INSTRUCTIONS**

27        1.    Irico objects to the definition of "DPPs' Written Discovery" (Definition No. 1) on

28  the grounds that it is vague, ambiguous and overly broad.

1        2.      Irico objects to the definition of "IPPs' Written Discovery" (Definition No. 2) on

2  the grounds that it is vague, ambiguous and overly broad.

3        3.      Irico objects to the definition of "Document" (Definition No. 3) to the extent it

4  seeks to impose requirements that are beyond those imposed by the Federal Rules of Civil

5  Procedure, the Local Rules, any Order of this Court, or any other applicable laws.

6        4.      Irico objects to the definitions of "Including" and "Relating" (Definition No. 4) on

7  the grounds that it calls for a legal conclusion and is otherwise vague, ambiguous, and overly

8  broad. Irico further objects to this definition to the extent that it attempts to impose burdens on

9  Irico beyond those imposed by the Federal Rules of Civil Procedure. Irico further objects to this

10  definition to the extent that it seeks information protected by the attorney client or other

11  applicable privilege, attorney work product doctrine, or otherwise seeks to violate rights of

12  privacy under U.S. or foreign law.

13        5.      Irico objects to the definitions of "You" and "Your" (Definition No. 5) to the

14  extent that Plaintiff defines those terms to include the Irico's "present and former members,

15  officers, agents, employees, and all other persons acting or purporting to act on their behalf,

16  including all present and former members, officers, agents, employees, and all other persons

17  exercising or purporting to exercise discretion, making policy, and make decisions." This

18  definition is overbroad, unduly burdensome, vague, and ambiguous. In particular, Irico objects to

19  this definition to the extent it purports to request information beyond the possession, custody, or

20  control of Irico Group or Irico Display, including but not limited to information in the possession

21  of non-parties and third parties where Irico lacks any duty to obtain or otherwise search for the

22  information and for whom the Court lacks personal jurisdiction. Irico also objects to the inclusion

23  of all "present or former employees, officers, directors, agents . . . or any other person acting on

24  [the] behalf [of]" Irico within this definition to the extent it purports to encompass information

25  that is protected by attorney-client privilege, work product protection or any other applicable

26  doctrine, privilege, protection or immunity or otherwise calls for a legal conclusion.

27        6.      Irico objects to Instruction No. 1 (related to disclosure of additional information) to

28  the extent it purports to impose burdens or obligations broader than, inconsistent with, or not

1  authorized under the Federal Rules of Civil Procedure, including, without limiting the generality
2  of the foregoing, Rule 26(e).

3      7.     Irico objects to Instruction No. 2 (related to production of business records) to the
4  extent that it purports to impose burdens or obligations broader than, inconsistent with, or not
5  authorized under the Federal Rules of Civil Procedure, including, without limiting the generality
6  of the foregoing, Rule 33(d), Rule 26(b). Irico further objects to this Instruction to the extent that
7  it purports to impose burdens or obligations broader than, inconsistent with, or not authorized
8  under, the Local Rules and any Orders of the Court.

9      8.     Irico objects to Instruction No. 3 (related to privileged information) to the extent
10  that it purports to impose burdens or obligations broader than, inconsistent with, or not authorized
11  under the Federal Rules of Civil Procedure, including, without limiting the generality of the
12  foregoing, Rule 33(d), Rule 26(b)(5)(A) and Rule 26(e)(1). Irico further objects to this Instruction
13  to the extent that it purports to impose burdens or obligations broader than, inconsistent with, or
14  not authorized under, the Local Rules and any Orders of the Court, and on the grounds that it is
15  vague, ambiguous, and inconsistent with common usage. Irico further objects to this Instruction to
16  the extent it seeks information that would disclose personal confidential information and/or
17  violate any and all rights of privacy under the United States Constitution or Article I of the
18  Constitution of the State of California, or any other applicable law or state constitution, or that is
19  otherwise prohibited from disclosure because to do so would cause Irico to violate legal and/or
20  contractual obligations to any other persons or entities.

21  **SPECIFIC RESPONSES TO INTERROGATORIES**
22  **INTERROGATORY NO. 1**

23      State whether any Documents or information responsive to DPPs' Written Discovery
24  and/or IPPs' Written Discovery were destroyed, discarded, erased, deleted, purged, or otherwise
25  lost. If your answer is in any way in the affirmative:
26      (a) describe in detail the contents of each such document or information and the date it
27          was destroyed, discarded, erased, deleted, purged or lost;
28      (b) identify each person or document custodian whose documents or information was

1    destroyed, discarded, erased, deleted, purged or lost;

2    (c) state the date on which each responsive document or information was destroyed,

3    discarded, erased, deleted, purged or lost;

4    (d) identify each person or document custodian who had any role or responsibility in

5    destroying, discarding, erasing, purging, deleting, or losing of each such document or

6    information; and

7    (e) describe in detail the circumstances under which each such document or information

8    was destroyed, discarded, erased, deleted, purged, or lost.

9    **RESPONSE TO INTERROGATORY NO. 1**

10    Irico reasserts and incorporates each of the General Objections and Objections to the

11    Definitions and Instructions set forth above. Irico further objects that this interrogatory is

12    duplicative and cumulative of other requests served on Irico, including but not limited to:

13    Interrogatory No. 16 of Direct Purchaser Plaintiffs' First Set of Interrogatories; Instruction Nos. 8

14    and 9 of Direct Purchaser Plaintiffs' First, Second, and Third Sets of Requests for Production of

15    Documents; Instruction No. 8 of Indirect Purchaser Plaintiffs' First Request for Production of

16    Documents from Defendants; and, Instruction Nos. 10 and 11 of Indirect Purchaser Plaintiffs'

17    Second Request for Production of Documents from Defendants. Such duplicative and cumulative

18    requests violate the Order Re Discovery And Case Management Protocol, ECF No. 1128. *See*

19    Order Re Plaintiffs' Motions To Compel Supplemental Discovery From Toshiba And Panasonic,

20    ECF No. 4128, at 4 ("The Discovery Protocol (ECF No 1128), requires parties to coordinate

21    discovery and not file duplicative discovery. . . . The benefit redounds to all parties on both sides

22    of the litigation, by conserving the efforts required by plaintiffs and protecting defendants against

23    unnecessary duplication of effort.") (Report and Recommendation adopted in full at ECF No.

24    4256).

25    Subject to and without waiving the objections stated above, Irico refers Plaintiff to the

26    following discovery responses previously served on Plaintiff: Irico's Supplemental Objections

27    and Responses to Interrogatory No. 16 as stated in Irico Defendants' Fourth Supplemental

28    Objections and Responses to Direct Purchaser Plaintiffs' First Set of Interrogatories; and, Irico's

1   Second Supplemental Objections and Responses to Interrogatory No. 16 as stated in Irico

2   Defendants' Fifth Supplemental Objections and Responses to Direct Purchaser Plaintiffs' First

3   Set of Interrogatories.

4   **INTERROGATORY NO. 2**

5        State whether Irico implemented a litigation hold to preserve potentially discoverable

6   evidence relating to the alleged misconduct in this litigation. If your answer is in the affirmative:

7        (a) state the date (or dates) that the litigation hold notice was issued;

8        (b) state the date when the litigation hold was implemented;

9        (c) describe in detail the scope of the litigation hold, including the categories of

10          documents, electronically stored information (ESI), or other tangible evidence that are

11          subject to the litigation hold;

12       (d) identify the recipients of the litigation hold notice; and

13       (e) describe any steps taken to ensure compliance with the litigation hold.

14   **RESPONSE TO INTERROGATORY NO. 2**

15       Irico reasserts and incorporates each of the General Objections and Objections to the

16   Definitions and Instructions set forth above. Irico further objects that this interrogatory to the

17   extent that it requests the disclosure of information protected by the attorney-client privilege or

18   attorney work product doctrine.

19       Subject to and without waiving the objections stated above, Irico responds that, in summer

20   2008, the company orally instructed key employees to preserve documents related to sales of CRT

21   to the United States. It was determined that Irico possessed no such documents. As discussed in

22   more detail below, all documents required to be maintained under Chinese law were preserved at

23   that time. Around September 2017, when Irico reentered the litigation for the purposes of

24   contesting jurisdiction and asserting a foreign sovereign immunity defense, Irico confirmed the

25   need to preserve existing documents relevant to the litigation from the time period 1995 to 2007

26   with managers from each operational department, including finance and accounting, legal, HR,

27   and sales. The managers conveyed this message orally to relevant employees under their

28   supervision.

1    In addition to the preservation efforts described above, and as Irico has explained in other

2  discovery responses, *see* Irico's Supplemental Objections and Responses to Interrogatory No. 16

3  as stated in Irico Defendants' Fourth Supplemental Objections and Responses to Direct Purchaser

4  Plaintiffs' First Set of Interrogatories, pursuant to Chinese law, the Ministry of Finance and State

5  Archives Administration requires companies like Irico to maintain and preserve certain

6  documents and materials, including but not limited to original invoices for sales, accounting

7  books, general ledgers, financial accounting reports, and bank statements. *See* IRI-CRT-

8  00000900. Irico is not aware of such archived records from 1995-2007 being destroyed given the

9  retention periods required by the Chinese government. In addition, Irico's internal practices

10  included the maintenance of additional archives of material related to operational documents,

11  administrative documents, technical records and communications with agencies of the PRC

12  government and Chinese Communist Party.[1] Irico is not aware of any such records from the 1995

13  to 2007 time period that were preserved in the various archives being destroyed.

14  **INTERROGATORY NO. 3**

15    State whether Irico had any document retention policies in place during the period

16  between 1995 and 2008. If your answer is in the affirmative, for each such policy:

17    (a) state whether it is a formal written policy;

18    (b) state when the policy was put in place;

19    (c) describe how the policy has changed over time if applicable; and

20    (d) provide a summary of the policy, including the length of required retention, categories

21    of documents and ESI covered by the policy, and departments and/or employees to

22    which the policy applied.

23  **RESPONSE TO INTERROGATORY NO. 3**

24    Irico reasserts and incorporates each of the General Objections and Objections to the

25  Definitions and Instructions set forth above. Irico further objects that this interrogatory is

26  duplicative and cumulative of other requests served on Irico, including but not limited to: Request

27  No. 3 of Direct Purchaser Plaintiffs' Second Set of Requests for Production of Documents and

28  _____

[1] Additional information regarding the documents maintained in Irico's archives can be found in Irico's December 18, 2020 letter to Plaintiffs regarding discovery issues.

1    Request No. 3 of Indirect Purchaser Plaintiffs' Second Request for Production of Documents

2    from Defendants. Such duplicative and cumulative requests violate the Order Re Discovery And

3    Case Management Protocol, ECF No. 1128. *See* Order Re Plaintiffs' Motions To Compel

4    Supplemental Discovery From Toshiba And Panasonic, ECF No. 4128, at 4 ("The Discovery

5    Protocol (ECF No 1128), requires parties to coordinate discovery and not file duplicative

6    discovery. . . . The benefit redounds to all parties on both sides of the litigation, by conserving the

7    efforts required by plaintiffs and protecting defendants against unnecessary duplication of

8    effort.") (Report and Recommendation adopted in full at ECF No. 4256).

9        Subject to and without waiving the objections stated above, Irico responds that it believes

10   it had a written document retention policy in place during the period 1995 through 2008, although

11   Irico has not been able to locate a copy of the policy in effect during that time. Neither has Irico

12   been able to determine at what points in time the policy changed. Irico further believes that the

13   document retention policy would apply company wide as to the relevant categories of documents

14   required to be maintained.

15       Irico believes that its document retention policy during the period of 1995 to 2008 called

16   for the maintenance and preservation of hard-copy documents within Irico's corporate archives.

17   Pursuant to Chinese law, the Ministry of Finance and State Archives Administration requires

18   companies like Irico to maintain and preserve certain accounting archives, including but not

19   limited to original invoices for sales, accounting books, general ledgers, financial accounting

20   reports, and bank statements. *See* IRI-CRT-00000900. These documents were generally required

21   to be kept for a period of not less than thirty (30) years. Irico followed and continues to follow

22   these requirements.

23       In addition, Irico's internal practices included the maintenance of additional archives of

24   material related to operational documents, administrative documents, technical records, and

25   communications with agencies of the PRC government and Chinese Communist Party, including

26   the following:

27       •   Documents related to engineering, scientific and technological inventions and

28           research projects, project development, and implementation of new designs.

---

IRICO'S OBJECTIONS AND RESPONSES TO        10        Master File No. 4:07-cv-05944-JST
IPP'S THIRD SET INTERROGATORIES                                 MDL No. 1917

1              • Documents related to health, safety, and environmental policies.

2              • Documents related to party committee work, political activities and implemental of

3                 policy, and awards issued at the national, ministerial, provincial, and municipal

4                 levels.

5       Irico is not aware of records from the 1995 to 2008 time period that were preserved in the

6   various archives being destroyed. During the period 1995 through 2008, Irico did not have a

7   retention policy regarding or applicable to electronic documents or data.

8   **INTERROGATORY NO. 4**

9       State when and how You first learned of potential anticompetitive conduct concerning the

10   pricing of Cathode Ray Tubes.

11   **RESPONSE TO INTERROGATORY NO. 4**

12       Irico reasserts and incorporates each of the General Objections and Objections to the

13   Definitions and Instructions set forth above. Irico further objects to the undefined terms

14   "potential," "concerning" and "pricing" as they render the interrogatory vague and ambiguous.

15   Irico also objects to the undefined term "anticompetitive conduct" on the grounds that it calls for

16   a legal conclusion and is otherwise vague, ambiguous, and overbroad.

17       Subject to and without waiving the objections stated above, Irico responds that it first

18   learned of the allegations in Plaintiff's Complaint on December 25, 2007, when it received a

19   summons from the United States District Court for the Northern District of California in the matter

20   *Figone v. L.G. Electronics, Inc.*, 07-cv-6381.

21   **INTERROGATORY NO. 5**

22       For each of the following individuals who You no longer employ, state (1) the date s/he

23   ceased to be employed by You; (2) the reason for separation, (3) the Date his or her Documents

24   (electronic and separately, hard copy) were destroyed, (4) a description of how the Documents

25   were destroyed; (5) Your efforts to determine if the Documents can be retrieved, including the

26   Dates of any such efforts and; (6) the individual's last known address as reflected in Your

27   records:

28                 a. 陈德智(Chen Di Zhi)

b. 段诚(Duan Cheng)

c. 方良军(Fang Liang-Jun)

d. 符九全(Fu Jiuquan)

e. 葛迪(Ge Di)

f. 郭盟权(Guo Mengquan)

g. 李卫生(Li Wei-Sheng)

h. 梁援(Liang Yuan)

i. 刘宏武(Liu Hongwu)

j. Liu Linghai

k. 刘晓东(Liu Xiaodong)

l. 龙涛(Long Tao)

m. 马金泉(Ma Jinquan)

n. 牛新安(Niu Xinan)

o. 沙涛(Shan or Sa Tao)

p. 申小琳(Shen Xiaolin)

q. 宋世振(Song Shi-Zhen)

r. 陶魁(Tao Kui)

s. 王大明(Wang Da-Ming)

t. 王李广(Wang Li Guang)

u. 王平权(Wang Ping-Quan)

v. 王西民(Wang Ximin)

w. 魏建社(Wei Jian-She)

x. 魏致远(Wei Zhiyuan)

y. 文海洋(Wen Haiyang)

z. 奚建生(Xi Jiansheng)

aa. 许高文(Xu Gao-Wen)

bb. 姚军(Yao Jun)

cc. 张少文(Zhang Shaowen)

1              dd. 张虎山(Zhang Hushan)

2              ee. 甄小红(Zhen Xiao-Hong)

3              ff. 竺简(Zhu Jian)

4              gg. 邢道钦(Xing Daoqin)

5 **RESPONSE TO INTERROGATORY NO. 5**

6       Irico reasserts and incorporates each of the General Objections and Objections to the

7 Definitions and Instructions set forth above. Irico further objects to this interrogatory to the extent

8 the undefined term "destroy" renders the interrogatory ambiguous and vague, and therefore

9 overbroad and unduly burdensome. Irico also objects to this interrogatory as Plaintiff has not

10 demonstrated how the benefit of such information outweighs the significant burden to Irico of

11 requiring the company to search through historical records. Irico also objects to this interrogatory

12 to the extent that it purports to request information protected by the attorney-client and/or attorney

13 work product privileges.

14       Subject to and without waiving the objections stated above, Irico responds as follows:

15           a. 陈德智 (Chen Di Zhi): Chen Dizhi resigned from Irico as of April 2002. Irico has

16                no address available for Chen Dizhi in its records.

17           b. 段诚 (Duan Cheng): Duan Cheng retired from Irico as of June 2015. Duan

18                Cheng's last known address is 咸阳市人民路彩虹新区 152#-2-6-11 邮编 710021.

19           c. 方良军 (Fang Liang-Jun): Fang Liangjun retired from Irico as of June 2012. Fang

20                Liangjun's last known address is 咸阳市人民路彩虹新区 113#-2-4-7 邮编

21                710021.

22           d. 符九全 (Fu Jiuquan): Fu Jiuquan retired from Irico as of March 2011. Irico has

23                no address available for Fu Jiuquan in its records.

24           e. 葛迪 (Ge Di): Ge Di resigned from Irico as of May 2016. Ge Di's last known

25                address is 咸阳市秦都区渭滨街道阳光小区 10 号楼 邮编 710021.

26           f. 郭盟权 (Guo Mengquan): Guo Mengquan retired from Irico as of May 2017. Irico

27                has no address available for Guo Mengquan in its records.

28           g. 李卫生 (Li Wei-Sheng): Li Weisheng resigned from Irico as of January 2002.

---

1    Irico has no address available for Li Weisheng in its records.

2    h.   梁援 (Liang Yuan): Liang Yuan resigned from Irico as of March 2014.  Liang

3    Yuan's last known address is 咸阳市人民路彩虹小区 5-1-3-5 邮编 710021.

4    i.   刘宏武 (Liu Hongwu): Liu Hongwu resigned from Irico as of January 2014.  Irico

5    has no address available for Liu Hongwu in its records.

6    j.   Liu Linghai: Irico has no information regarding this individual in its records.

7    k.   刘晓东 (Liu Xiaodong): Liu Xiaodong resigned from Irico as of May 2010.  Irico

8    has no address available for Liu Xiaodong in its records.

9    l.   龙涛 (Long Tao): Long Tao resigned from Irico in May 2021.  Long Tao's last

10    known address is 陕西省咸阳市秦都区彩虹一路一号彩虹小区.

11    m.   马金泉 (Ma Jinquan): Ma Jinquan retired from Irico as of February 2005.  Ma

12    Jinquan's last known address is 咸阳市人民路/彩虹新区 115#-1-5-10 邮编

13    710021.

14    n.   牛新安 (Niu Xinan): Niu Xinan resigned from Irico as of December 2015.  Niu

15    Xinan's last known address is 咸阳市人民路彩虹新区 115#-2-5-东户 邮编

16    710021.

17    o.   沙涛 (Shan or Sa Tao): Sha Tao resigned from Irico as of December 2002.  Irico

18    has no address available for Sha Tao in its records.

19    p.   申小琳 (Shen Xiaolin): Shen Xiaolin retired from Irico as of October 2015.  Shen

20    Xiaolin's last known address is 咸阳市人民路彩虹新区 115#-1-5-10 邮编

21    710021.

22    q.   宋世振 (Song Shi-Zhen): Song Shizhen retired from Irico as of November 2004.

23    Song Shizhen's last known address is 咸阳市彩虹一路彩虹老区 52#-4-3-6 邮编

24    710021.

25    r.   陶魁 (Tao Kui): Tao Kui retired from Irico as of March 2014.  Irico has no

26    address available for Tao Kui in its records.

27    s.   王大明 (Wang Da-Ming): Wang Daming resigned from Irico as of July 2004.

28    Irico has no address available for Wang Daming in its records.

1       t.   王李广 (Wang Li Guang): Wang Liguang resigned from Irico as of April 2002.

2           Irico has no address available for Wang Liguang in its records.

3       u.   王平权 (Wang Ping-Quan): Wang Pingquan retired from Irico as of March 2012.

4           Wang Pingquan's last known address is 咸阳市人民路彩虹新区 137#-6-2-3 邮编

5           710021.

6       v.   王西民 (Wang Ximin): Wang Ximin retired from Irico as of November 2013.

7           Wang Ximin's last known address is 陕西省咸阳市秦都区彩虹一路一号彩虹小

8           区.  Wang Ximin was interviewed in 2021 and reported that, at the time of his

9           departure and after submitting any documents required to be maintained in Irico's

10          archives, *see generally* Irico's Response to Interrogatory No. 3, he discarded his

11          remaining working files.  Wang Ximin did not believe that any such documents

12          were from the time period 1995 to 2007.

13       w.   魏建社 (Wei Jian-She): Wei Jianshe retired from Irico as of April 2018.  Wei

14          Jianshe's last known address is 珠海番溪庄 27-1-405 邮编 519000.

15       x.   魏致远 (Wei Zhiyuan): Wei Zhiyuan resigned from Irico as of September 2006.

16          Irico has no address available for Wei Zhiyuan in its records.

17       y.   文海洋 (Wen Haiyang): Wen Haiyang resigned from Irico as of September 2017.

18          Wen Haiyang's last known address is 咸阳市彩虹一路彩虹新家园 B 座 1 单元

19          六层 12 号 邮编 710021.

20       z.   奚建生 (Xi Jiansheng): Xi Jiansheng resigned from Irico as of April 2006.  Irico

21          has no address available for Xi Jiansheng in its records.

22      aa. 许高文 (Xu Gao-Wen): Xu Gaowen resigned from Irico as of October 2014.  Xu

23          Gaowen's last known address is 咸阳市彩虹一路彩虹小区 85#-3-3-5 邮编

24          710021.

25      bb. 姚军 (Yao Jun): Yao Jun resigned from Irico as of April 2018.  Yao Jun's last

26          known address is 咸阳市建设路彩虹北家属区 70 号楼 邮编 710021.

27      cc. 张少文 (Zhang Shaowen): Zhang Shaowen retired from Irico as of March 2016.

28          Irico has no address available for Zhang Shaowen in its records.

dd. 张虎山 (Zhang Hushan): Zhang Hushan retired from Irico as of May 2018. Zhang Hushan's last known address is 咸阳市人民西路彩虹劳司 E-1-8-16 邮编 710021.

ee. 甄小红 (Zhen Xiao-Hong): Zhen Xiaohong resigned from Irico as of February 2014.  Irico has no address available for Zhen Xiaohong in its records.

ff. 竺简 (Zhu Jian): Zhu Jian resigned from Irico as of December 1998.  Irico has no address available for Zhu Jian in its records.

gg. 邢道钦 (Xing Daoqin): Xing Daoqin passed away in December 2011 and was no longer employed by Irico as of that date.

Irico has been unable to locate the requested, detailed information regarding the disposition of each former employee's records.  Irico notes that some of these employees departed Irico over 20 years ago and many before this litigation began.  Based on Irico's records practices for departing employees, Irico believes that any documents required to be maintained in Irico's archives as detailed in Irico's Response to Interrogatory No. 3 were collected from departing employee prior to their departure from Irico and preserved in the archives.  As plaintiffs are aware, Irico has conducted an extensive review of its archives to identify materials responsive to this request and plaintiffs' other requests as well as discussed these discovery requests with available personnel, including but limited to archivists and IT personnel, in an attempt to identify responsive information.  *See also* Irico's Supplemental Objections and Responses to Interrogatory No. 16 as stated in Irico Defendants' Fourth Supplemental Objections and Responses to Direct Purchaser Plaintiffs' First Set of Interrogatories; Irico's Second Supplemental Objections and Responses to Interrogatory No. 16 as stated in Irico Defendants' Fifth Supplemental Objections and Responses to Direct Purchaser Plaintiffs' First Set of Interrogatories.

**INTERROGATORY NO. 6**

State whether any relationship has existed (e.g., by Your providing any type of payments such as severance or retirement pay or by Your providing any other form of benefit, including medical benefits or reemployment with a company that is affiliated with You) between You and each of the individuals listed in Interrogatory No. 5, letters (a) – (gg). If so, please state the type

1  of benefit and its duration.

2  **RESPONSE TO INTERROGATORY NO. 6**

3      Irico reasserts and incorporates each of the General Objections and Objections to the

4  Definitions and Instructions set forth above. Irico further objects to this interrogatory as

5  overbroad and unduly burdensome, as Plaintiff has not demonstrated how the benefit of such

6  information outweighs the significant burden to Irico of requiring the company to search through

7  historical records for such information. Irico also objects to this interrogatory to the extent it

8  purports to request information beyond the possession, custody, or control of Irico Group or Irico

9  Display, including but not limited to information in the possession of non-parties where Irico

10  lacks any duty to obtain or otherwise search for the information and for whom the Court lacks

11  personal jurisdiction.

12      Subject to and without waiving the objections stated above, Irico responds that no such

13  relationship exists with the identified former employees. Irico further responds that when an

14  employee ends his employment with Irico, his/her employment files are transferred to the archive

15  management agency of the government of the People's Republic of China, and his/her pension

16  and other benefits are paid directly by the government of the People's Republic of China.

17

18

19  Dated:  August 13, 2021                BAKER BOTTS L.L.P.

20

21                                         */s/ John M. Taladay*

22                                         John M. Taladay (*pro hac vice*)
                                           Evan J. Werbel (*pro hac vice*)
23                                         Thomas E. Carter (*pro hac vice*)
                                           Andrew L. Lucarelli (*pro hac vice*)
24                                         700 K Street, N.W.
                                           Washington, D.C. 20001
25                                         (202)-639-7700
                                           (202)-639-7890 (fax)
26                                         Email: john.taladay@bakerbotts.com
                                                  tom.carter@bakerbotts.com
27                                                drew.lucarelli@bakerbotts.com

28                                         Jonathan Shapiro (State Bar No. 257199)
                                           101 California Street, Suite 3600

---

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

San Francisco, California 94111
(415) 291-6200
(415) 291-6300 (fax)
Email: jonathan.shapiro@bakerbotts.com

*Attorneys for Defendants*
*IRICO GROUP CORP. and*
*IRICO DISPLAY DEVICES CO., LTD.*

1

**CERTIFICATE OF SERVICE**

2

**In re: Cathode Ray Tube (CRT) Antitrust Litigation - MDL No. 1917**

3

I declare that I am employed in Washington, District of Columbia.  I am over the age of

4

eighteen years and not a party to the within case; my business address is:  Baker Botts L.L.P., 700

5

K Street, N.W., Washington, D.C. 20001.

6

On August 13, 2021, I served the following document(s) described as:

7

**IRICO DEFENDANTS' OBJECTIONS AND RESPONSES
TO INDIRECT PURCHASER PLAINTIFFS' THIRD SET
OF INTERROGATORIES TO IRICO GROUP CORPORATION
AND IRICO DISPLAY DEVICES CO., LTD.**

8

9

on the following interested parties in this action:

10

11

| | |
|---|---|
| Guido Saveri (guido@saveri.com) | Mario N. Alioto (malioto@tatp.com) |
| R. Alexander Saveri (rick@saveri.com) | Lauren C. Capurro (laurenrussell@tatp.com) |
| Geoffrey C. Rushing (grushing@saveri.com) | TRUMP ALIOTO TRUMP & PRESCOTT LLP |
| Matthew D. Heaphy (mheaphy@saveri.com) | 2280 Union Street |
| SAVERI & SAVERI, INC. | San Francisco, CA 94123 |
| 706 Sansome St # 200 | |
| San Francisco, CA 94111 | |

12

13

14

15

*Lead Counsel for the Direct Purchaser
Plaintiffs*

*Lead Counsel for the Indirect Purchaser
Plaintiffs*

16

17

| | |
|---|---|
| Joseph Goldberg (jg@fbdlaw.com) | Dan Birkhaeuser |
| FREEDMAN BOYD HOLLANDER | (dbirkhaeuser@bramsonplutzik.com) |
| GOLDBERG URIAS & WARD P.A. | BRAMSON, PLUTZIK, MAHLER & |
| 20 First Plaza, Suite 700 | BIRKHAEUSER, LLP |
| Albuquerque, NM 87102 | 2125 Oak Grove Rd, Suite 125 |
| D (505) 305-1263 | Walnut Creek, CA 94598 |

18

19

20

*Counsel for the Indirect Purchaser
Plaintiffs*

*Counsel for the Indirect Purchaser
Plaintiffs*

21

22

[X]     (BY ELECTRONIC MAIL) I caused such documents to be sent to the persons at the email
addressed listed above.  I did not receive, within a reasonable time after the transmission,
any electronic message or other indication that the transmission was unsuccessful.

23

24

I declare under penalty of perjury that the foregoing is true and correct.  Executed on

25

August 13, 2021, in Rockville, Maryland.

26

27

*/s/ Andrew L. Lucarelli*
Andrew L. Lucarelli

28

# Exhibit 3

BAKER BOTTS L.L.P.
John M. Taladay (*pro hac vice*)
Evan J. Werbel (*pro hac vice*)
Thomas E. Carter (*pro hac vice*)
Andrew L. Lucarelli (*pro hac vice*)
700 K Street, N.W.
Washington, D.C. 20001
(202)-639-7700
(202)-639-7890 (fax)
Email: john.taladay@bakerbotts.com
        evan.werbel@bakerbotts.com
        tom.carter@bakerbotts.com
        drew.lucarelli@bakerbotts.com

Jonathan Shapiro (State Bar No. 257199)
101 California Street, Suite 3600
San Francisco, California 94111
(415) 291-6200
(415) 291-6300 (fax)
Email: jonathan.shapiro@bakerbotts.com

*Attorneys for Defendants*
*IRICO GROUP CORP. and*
*IRICO DISPLAY DEVICES CO., LTD.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Master File No. 4:07-cv-05944-JST (N.D. Cal.) |
| | MDL No. 1917 |
| This Document Relates to:<br><br>ALL INDIRECT PURCHASER ACTIONS | **IRICO DEFENDANTS' SUPPLEMENTAL OBJECTIONS AND RESPONSES TO INDIRECT PURCHASER PLAINTIFFS' THIRD SET OF INTERROGATORIES TO IRICO GROUP CORPORATION AND IRICO DISPLAY DEVICES CO., LTD.** |

PROPOUNDING PARTY:     Indirect Purchaser Plaintiffs

RESPONDING PARTIES:     Irico Group Corporation
                         Irico Display Devices Co., Ltd.

SET NUMBER:     Third (3)

---

1    Pursuant to Federal Rules of Civil Procedure 26 and 33, Irico Group Corporation ("Irico
2  Group") and Irico Display Devices Co, Ltd. ("Irico Display," collectively, "Irico" or "Irico
3  Defendants") hereby provide these supplemental responses to the Indirect Purchaser Plaintiffs'
4  ("Plaintiff") Third Set of Interrogatories to Irico Group Corporation and Irico Display Devices
5  Co., Ltd., dated July 7, 2021 ("Interrogatories"), as modified by the Special Master's December
6  22, 2021 Order Re DPPs' Motion to Compel Interrogatory Further Answers (ECF No. 5978).
7  Irico reserves the right to amend or supplement these Supplemental Objections and Responses
8  (the "Responses") to the extent allowed by the Federal Rules of Civil Procedure and the Local
9  Rules of Practice in Civil Proceedings before the United States District Court for the Northern
10  District of California ("Local Rules"). Subject to and without waiving any of Irico's General and
11  Specific Objections as set forth below, Irico is willing to meet and confer with Plaintiff regarding
12  such General and Specific Objections.

13    The following Responses are made only for purposes of this case. The Responses are
14  subject to all objections as to relevance, materiality and admissibility, and to any and all
15  objections on any ground that would require exclusion of any response if it were introduced in
16  court. All evidentiary objections and grounds are expressly reserved.

17                              **GENERAL OBJECTIONS**

18    Irico makes the following General Objections to Plaintiff's Interrogatories:

19    1.    Irico's Responses are based upon information available to and located by Irico as
20  of the date of service of these Responses. In responding to Plaintiff's Interrogatories, Irico states
21  that it has conducted a diligent search, reasonable in scope, of those files and records in its
22  possession, custody, or control believed to likely contain information responsive to Plaintiff's
23  Interrogatories.

24    2.    No express, incidental, or implied admissions are intended by these Responses and
25  should not be read or construed as such.

26    3.    Irico does not intend, and its Responses should not be construed as, an agreement
27  or acquiescence with any characterization of fact, assumption, or conclusion of law contained in
28  or implied by the Requests.

4.      Irico objects to Plaintiff's Interrogatories to the extent that they are overly broad, unduly burdensome, oppressive, and duplicative to the extent that they seek information or documents that are already in the possession, custody, or control of Plaintiff.

5.      Irico objects to Plaintiff's Interrogatories to the extent that they seek to impose obligations on Irico beyond those of the Federal Rules of Civil Procedure, the Local Rules, or any Order of this Court.

6.      Irico objects to Plaintiff's Interrogatories to the extent that they request duplicative discovery in violation of the Order Re Discovery And Case Management Protocol, ECF No. 1128. *See* Order Re Plaintiffs' Motions To Compel Supplemental Discovery From Toshiba And Panasonic, ECF No. 4128, at 4 ("The Discovery Protocol (ECF No 1128), requires parties to coordinate discovery and not file duplicative discovery. . . . The benefit redounds to all parties on both sides of the litigation, by conserving the efforts required by plaintiffs and protecting defendants against unnecessary duplication of effort.") (Report and Recommendation adopted in full at ECF No. 4256).

7.      Irico objects to Plaintiff's Interrogatories to the extent they seek information that is not relevant or disproportionate to the needs of the case.

8.      Irico objects to Plaintiff's Interrogatories to the extent that they are vague, ambiguous, or susceptible to more than one interpretation. Irico shall attempt to construe such vague or ambiguous Interrogatories so as to provide for the production of responsive information that is proportionate to the needs of the case. If Plaintiff subsequently asserts an interpretation of any Interrogatory that differs from Irico's understanding, Irico reserves the right to supplement or amend its Responses.

9.      Irico objects to Plaintiff's Interrogatories to the extent that they contain terms that are insufficiently or imprecisely defined. Irico shall attempt to construe such vague or ambiguous Interrogatories so as to provide for the production of responsive information that is proportionate to the needs of the case.

10.      Irico objects to Plaintiff's Interrogatories to the extent that they seek information that is protected from disclosure by the attorney-client privilege, work product doctrine, joint

1    defense or common interest privilege, self-evaluative privilege, or any other applicable privilege

2    or immunity. Irico will provide only information that it believes to be non-privileged and

3    otherwise properly discoverable. Nothing in Irico's responses is intended nor should be construed

4    as a waiver of any such privilege or immunity. The inadvertent or mistaken provision of any

5    information or responsive documents subject to any such doctrine, privilege, protection or

6    immunity from production shall not constitute a general, inadvertent, implicit, subject-matter,

7    separate, independent or other waiver of such doctrine, privilege, protection or immunity from

8    production.

9          11.    Irico objects to Plaintiff's Interrogatories to the extent that they call for

10   information that is not in the possession, custody, or control of Irico. Irico also objects to the

11   extent that any of Plaintiff's Interrogatories seek information from non-parties or third parties,

12   including but not limited to any of Irico's subsidiary or affiliated companies.

13         12.    Irico objects to Plaintiff's Interrogatories to the extent that responding would

14   require Irico to violate the privacy and/or confidentiality of a third party or confidentiality

15   agreement with a third party.

16         13.    Irico objects to Plaintiff's Interrogatories to the extent that they seek information

17   that is publicly available, already in Plaintiffs' possession, custody, or control, or more readily

18   available from other sources.

19         14.    Irico objects to Plaintiff's Interrogatories to the extent that they seek information

20   or documents concerning transactions outside the United States. Such Requests are unduly

21   burdensome and disproportionate to the needs of the case as Plaintiffs' class definition is confined

22   to "individuals and entities that indirectly purchased Cathode Ray Tube Products . . . in the United

23   States" (see Indirect Purchaser Plaintiffs' Fifth Consolidated Amended Complaint ("Complaint")

24   dated September 19, 2019).

25         15.    Irico objects to Plaintiff's Interrogatories to the extent that compliance would

26   require Irico to violate the laws, regulations, procedures, or orders of a judicial or regulatory body

27   of foreign jurisdictions.

28

16.     Irico's responses, whether now or in the future, pursuant to Plaintiff's Interrogatories should not be construed as either (i) a waiver of any of Irico's general or specific objections or (ii) an admission that such information or documents are either relevant or admissible as evidence.

17.     Irico objects to Plaintiff's Interrogatories to the extent that they are compound and/or contain discrete subparts in violation of Federal Rule of Civil Procedure 33(a)(1).

18.     Irico objects to Plaintiff's Interrogatories to the extent that they state and/or call for legal conclusions.

19.     Irico objects to the Interrogatories to the extent that they contain express or implied assumptions of fact or law with respect to the matters at issue in this case.

20.     Irico objects to the Interrogatories to the extent they seek information or documents that cannot be removed or transmitted outside China without violating the laws and regulations of that country, including but not limited to restrictions on the transmission of state secrets or trade secrets as those terms are defined under Chinese law.

21.     Irico reserves the right to assert additional General and Specific Objections as appropriate to supplement these Responses.

These General Objections apply to each Interrogatory as though restated in full in the responses thereto. The failure to mention any of the foregoing General Objections in the specific responses set forth below shall not be deemed as a waiver of such objections or limitations.

**GENERAL OBJECTIONS TO DEFINITIONS AND INSTRUCTIONS**

1.     Irico objects to the definition of "DPPs' Written Discovery" (Definition No. 1) on the grounds that it is vague, ambiguous and overly broad.

2.     Irico objects to the definition of "IPPs' Written Discovery" (Definition No. 2) on the grounds that it is vague, ambiguous and overly broad.

3.     Irico objects to the definition of "Document" (Definition No. 3) to the extent it seeks to impose requirements that are beyond those imposed by the Federal Rules of Civil Procedure, the Local Rules, any Order of this Court, or any other applicable laws.

4.     Irico objects to the definitions of "Including" and "Relating" (Definition No. 4) on

1  the grounds that it calls for a legal conclusion and is otherwise vague, ambiguous, and overly

2  broad. Irico further objects to this definition to the extent that it attempts to impose burdens on

3  Irico beyond those imposed by the Federal Rules of Civil Procedure. Irico further objects to this

4  definition to the extent that it seeks information protected by the attorney client or other

5  applicable privilege, attorney work product doctrine, or otherwise seeks to violate rights of

6  privacy under U.S. or foreign law.

7       5.    Irico objects to the definitions of "You" and "Your" (Definition No. 5) to the

8  extent that Plaintiff defines those terms to include the Irico's "present and former members,

9  officers, agents, employees, and all other persons acting or purporting to act on their behalf,

10  including all present and former members, officers, agents, employees, and all other persons

11  exercising or purporting to exercise discretion, making policy, and make decisions." This

12  definition is overbroad, unduly burdensome, vague, and ambiguous. In particular, Irico objects to

13  this definition to the extent it purports to request information beyond the possession, custody, or

14  control of Irico Group or Irico Display, including but not limited to information in the possession

15  of non-parties and third parties where Irico lacks any duty to obtain or otherwise search for the

16  information and for whom the Court lacks personal jurisdiction. Irico also objects to the inclusion

17  of all "present or former employees, officers, directors, agents . . . or any other person acting on

18  [the] behalf [of]" Irico within this definition to the extent it purports to encompass information

19  that is protected by attorney-client privilege, work product protection or any other applicable

20  doctrine, privilege, protection or immunity or otherwise calls for a legal conclusion.

21       6.    Irico objects to Instruction No. 1 (related to disclosure of additional information) to

22  the extent it purports to impose burdens or obligations broader than, inconsistent with, or not

23  authorized under the Federal Rules of Civil Procedure, including, without limiting the generality

24  of the foregoing, Rule 26(e).

25       7.    Irico objects to Instruction No. 2 (related to production of business records) to the

26  extent that it purports to impose burdens or obligations broader than, inconsistent with, or not

27  authorized under the Federal Rules of Civil Procedure, including, without limiting the generality

28  of the foregoing, Rule 33(d), Rule 26(b). Irico further objects to this Instruction to the extent that

it purports to impose burdens or obligations broader than, inconsistent with, or not authorized under, the Local Rules and any Orders of the Court.

8.      Irico objects to Instruction No. 3 (related to privileged information) to the extent that it purports to impose burdens or obligations broader than, inconsistent with, or not authorized under the Federal Rules of Civil Procedure, including, without limiting the generality of the foregoing, Rule 33(d), Rule 26(b)(5)(A) and Rule 26(e)(1). Irico further objects to this Instruction to the extent that it purports to impose burdens or obligations broader than, inconsistent with, or not authorized under, the Local Rules and any Orders of the Court, and on the grounds that it is vague, ambiguous, and inconsistent with common usage. Irico further objects to this Instruction to the extent it seeks information that would disclose personal confidential information and/or violate any and all rights of privacy under the United States Constitution or Article I of the Constitution of the State of California, or any other applicable law or state constitution, or that is otherwise prohibited from disclosure because to do so would cause Irico to violate legal and/or contractual obligations to any other persons or entities.

## SPECIFIC RESPONSES TO INTERROGATORIES

### INTERROGATORY NO. 2

State whether Irico implemented a litigation hold to preserve potentially discoverable evidence relating to the alleged misconduct in this litigation. If your answer is in the affirmative:

(a) state the date (or dates) that the litigation hold notice was issued;

(b) state the date when the litigation hold was implemented;

(c) describe in detail the scope of the litigation hold, including the categories of documents, electronically stored information (ESI), or other tangible evidence that are subject to the litigation hold;

(d) identify the recipients of the litigation hold notice; and

(e) describe any steps taken to ensure compliance with the litigation hold.

### RESPONSE TO INTERROGATORY NO. 2

Irico reasserts and incorporates each of the General Objections and Objections to the Definitions and Instructions set forth above. Irico further objects that this interrogatory to the

1   extent that it requests the disclosure of information protected by the attorney-client privilege or

2   attorney work product doctrine.

3        Subject to and without waiving the objections stated above, Irico responds that, in summer

4   2008, the company orally instructed key employees to preserve documents related to sales of CRT

5   to the United States. It was determined that Irico possessed no such documents. As discussed in

6   more detail below, all documents required to be maintained under Chinese law were preserved at

7   that time. Around September 2017, when Irico reentered the litigation for the purposes of

8   contesting jurisdiction and asserting a foreign sovereign immunity defense, Irico confirmed the

9   need to preserve existing documents relevant to the litigation from the time period 1995 to 2007

10  with managers from each operational department, including finance and accounting, legal, HR,

11  and sales. The managers conveyed this message orally to relevant employees under their

12  supervision.

13       In addition to the preservation efforts described above, and as Irico has explained in other

14  discovery responses, *see* Irico's Supplemental Objections and Responses to Interrogatory No. 16

15  as stated in Irico Defendants' Fourth Supplemental Objections and Responses to Direct Purchaser

16  Plaintiffs' First Set of Interrogatories, pursuant to Chinese law, the Ministry of Finance and State

17  Archives Administration requires companies like Irico to maintain and preserve certain

18  documents and materials, including but not limited to original invoices for sales, accounting

19  books, general ledgers, financial accounting reports, and bank statements. *See* IRI-CRT-

20  00000900. Irico is not aware of such archived records from 1995-2007 being destroyed given the

21  retention periods required by the Chinese government. In addition, Irico's internal practices

22  included the maintenance of additional archives of material related to operational documents,

23  administrative documents, technical records and communications with agencies of the PRC

24  government and Chinese Communist Party.[1] Irico is not aware of any such records from the 1995

25  to 2007 time period that were preserved in the various archives being destroyed.

26  ///

27  ///

28  

---

[1] Additional information regarding the documents maintained in Irico's archives can be found in Irico's December 18, 2020 letter to Plaintiffs regarding discovery issues.

IRICO'S SUPP. OBJS. AND RESPS. TO IPP'S        7        Master File No. 4:07-cv-05944-JST
THIRD SET INTERROGATORIES                                MDL No. 1917

1  **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 2**

2      On December 22, 2021, the Special Master issued the Order Re DPPs' Motion to Compel

3  Interrogatory Further Answers, ECF No. 5978, directing Irico to "to furnish supplemental

4  responses to Interrogatory No 2 as set forth below" and listing eleven (11) enumerated

5  paragraphs. In this Supplemental Response, Irico repeats below each issue identified by the

6  Special Master, corresponding to the enumerated paragraphs, and responds as follows:

7      **ISSUE NO. 1**

8      With respect to the communications or work product that Irico objected to identifying in

9  its response to Interrogatory No 2, Irico is directed to identify the dates of any such

10  communications or work product, the parties thereto, the subjects thereof and sufficient

11  information to enable the PPs and the undersigned to determine whether a claim of privilege or

12  protection is warranted.

13      **RESPONSE TO ISSUE NO. 1**

14      With respect to Irico's objection to discovery of any privileged communications or work

15  product requested by Interrogatory No. 2, Irico responds that it is not objecting to or withholding

16  any information on such a basis and therefore is not identifying any information in response to

17  Issue No. 1.

18      **ISSUE NO. 2**

19      Identify by names and positions at Irico at all times from 2007 to the present the "key

20  employees" referred to in Irico's response to Interrogatory No 2.

21      **RESPONSE TO ISSUE NO. 2**

22      Irico provides the following information about known "key employees" referenced in

23  response to Interrogatory No. 2.

24  - Tao Kui
25      ○ 05/2001 – 09/2013
      ■ Irico Group, Party Secretary and Deputy General Manager
26      ○ 03/2013
      ■ Member of the Party Leading Group of China Electronics Information
27          Industry Group Co., Ltd.
    ○ 05/2013 – approx. 2014
28        ■ Irico Group, Party Secretary and Director (*retired*)

- Wang Ximin
  - 2007 – 09/2011
    - Irico Display, General Manager
  - 09/2011 – 09/2013
    - Irico Group, General Economist and General Manager of Shaanxi Branch (*retired*)

- Shen Xiaolin
  - 08/2004 – 11/2007
    - Irico Group, Sales Company, General Manager
  - 11/2007 – 01/2009
    - Irico Display, Assistant to General Manager and General Manager of Sales Department
  - 01/2009 – 09/2013
    - Irico Display, Deputy General Manager, and General Manager of Sales Department
  - 09/2013 – 10/2015
    - Zhuhai Caizhu Limited Company, Managing Director (*retired*)

- Liu Maihai
  - Title as of June 2008
    - Irico Group Electronics Co., Ltd., Sales Director
  - Irico has been unable to confirm employment information for Liu Maihai, other than his title in June 2008 when the 2008 Litigation Committee was formed (see Response to Issue No. 3). Irico believes that Liu Maihai left Irico within several years of the filing of the lawsuit.

- Liang Yuan
  - Title as of June 2008
    - Irico Group Electronics Co., Ltd., Head of Overseas Department and Assistant to the General Manager of the Marketing Department
  - Irico has been unable to confirm employment information for Liang Yuan, other than her title in June 2008 when the 2008 Litigation Committee was formed (see Response to Issue No. 3). Irico believes that Liang Yuan left Irico within several years of the filing of the lawsuit.

Irico has conducted a search for more detailed employment information for Liu Maihai and Liang Yuan, including a review of Irico's HR files, but has not been able to find information beyond that listed above. Likewise, Irico cannot confirm the exact date that Tao Kui retired from Irico but, based on the best recollection of its available employees, believes that it is around 2014.

As discussed below in Irico's Response to Issue No. 4, each of these employees also communicated with employees under their supervisions in an effort to identify and preserve documents related to potential Irico sales of CRTs to the United States, if any such records existed.

**ISSUE NO. 3**

State how Irico determined that the persons identified in Irico's response to No 2, above, were determined to be "key employees."

**RESPONSE TO ISSUE NO. 3**

The Irico employees identified in Irico's Response to Issue No. 2, above, were members of a group of Irico employees appointed to oversee Irico's response to the litigations in the above referenced action (the "2008 Litigation Committee") in June 2008. The other members of the committee were Gao Rongguo, Director, Corporate Management Department, Irico Group, and Yan Yunlong, Legal Affairs Manager, Corporate Management Department, Irico Group. The employees identified in Irico's Response to Issue No. 2 were those with managerial responsibility for the departments at Irico that Irico believed would have documents related to potential Irico sales of CRTs to the United States, if any such records existed.  Each of these individuals then selected the employees under their supervision who might have information regarding Irico sales of CRTs to United States, if any.

**ISSUE NO. 4**

Explain how the 2008 "oral instruction" referred to in Irico's response to Interrogatory No 2 was conveyed; specifically, Irico is required to identify by name and position all persons who conveyed the "oral instruction," the dates each such person conveyed the "oral instruction," the persons by names and positions at the time to whom the "oral instruction" was conveyed, the offices, facilities or other locations at which the "oral instruction" was conveyed, the content of the "oral instruction" and all reasons upon which Irico contends the "oral instruction" was effective if Irico so contends.

**RESPONSE TO ISSUE NO. 4**

The 2008 Litigation Committee held a meeting in August 2008 at Irico Group's headquarters building in Xianyang City during which the instructions to preserve documents were discussed. The instructions were conveyed to the employees identified in Irico's Response to Interrogatory No. 2 at this and subsequent meetings. At that time Irico understood that, given the instant litigation arose under the antitrust laws of the United States, the focus of the litigation was

1   on sales of CRTs to the United States. The individuals identified in the Response to Issue No. 2

2   were tasked to search for documents and to identify other employees under their supervision and

3   instruct them to search for documents that might relate to the Irico sales in the United States and

4   to preserve such documents, if any existed. Irico believes that these efforts to search for and

5   preserve documents would have occurred immediately after the above-referenced meetings of the

6   2008 Litigation Committee in August or September 2008.

7        Irico has conducted a thorough search for additional information requested by the Court in

8   Issue No. 4 but has been unable to find additional information. Specifically, it cannot find

9   documents detailing the specific information and its answers are based on the recollections of Yan

10  Yunlong, the only remaining Irico employee with knowledge of the dissemination of the oral

11  instruction in 2008. All of the members of the 2008 Litigation Committee other than Yan

12  Yunlong have retired or otherwise departed the company.

13       Yan Yunlong recalls that the employees identified in the Response to Issue No. 2

14  contacted relevant employees and searched for documents, but that no documents relevant to the

15  sales of CRTs by Irico to the United States were identified at that time. Despite best efforts, Irico

16  has been unable to identify the specific individuals contacted by the employees identified in

17  Response to Issue No. 2.

18       Irico believes that the oral instructions provided at the time were sufficient to preserve

19  documents related to potential sales by Irico to the United States. Irico acknowledges that at the

20  time it misunderstood the scope of document preservation in connection with the litigation in the

21  United States and cannot be certain that all documents related to Irico's global sales of CRTs

22  were preserved.

23  **ISSUE NO. 5**

24       Identify the information that confirms, or the basis to believe, that the "oral instruction"

25  referred to in Irico's response to Interrogatory No 2 was adequate to prevent the destruction of

26  evidence that otherwise would have been preserved in compliance with an otherwise adequate

27  litigation hold.

28

1    **RESPONSE TO ISSUE NO. 5**

2        Irico does not contend that the oral instruction in 2008 was effective in preserving all

3    documents related to its global sales of CRTs, however, because Irico did not sell CRTs to the

4    United States, Irico's search at the time did not identify any documents concerning Irico's sales of

5    CRTs to the United States and thus no documents on this topic were lost or destroyed.

6    **ISSUE NO. 6**

7        If the summer 2008 "oral instruction" referred to in Irico's response to Interrogatory No 2

8    had not been limited to "sales of CRT to the United States," but rather to sales of CRT without

9    regard to location, identify all documents and information that otherwise would been preserved.

10   **RESPONSE TO ISSUE NO. 6**

11       Irico has made best efforts to identify specific documents and information that might have

12   been preserved if the "oral instruction" in 2008 had not been limited to the United States. Nearly

13   all of the employees knowledgeable about what types of documents related to Irico's sales of

14   CRTs were created and/or maintained during the relevant time period are no longer employed by,

15   and are not available to, Irico. Identifying such specific documents that existed in 2008 is nearly

16   impossible given the time that has elapsed and the lack of employees with knowledge of these

17   issues. As discussed, Irico regularly preserved documents and information in its archives pursuant

18   to Chinese law and its internal practices so extensive information regarding Irico's global sales of

19   CRTs was preserved regardless of the oral instruction provided in 2008. These categories of

20   preserved documents are detailed in Irico's Response to Issue Nos. 7 and 11 and include several

21   categories of documents related to sales of CRTs, including but not limited to accounting records,

22   invoices, planning documents, some production and sales reports, and travel and entertainment

23   reimbursements. In terms of documents that would not have been preserved in the archives, Irico

24   identifies the following types of documents regarding Irico's global sales of CRTs that are more

25   likely to have existed in the summer of 2008:

26       • Sales reports containing general CRT market information;

27       • CRT sales contracts with customers;

28       • Recent correspondence with customers regarding CRT sales; and,

---

1    • Handwritten working notes regarding recent internal and customer meetings

2       attended by members of Irico's sales team.

3    Irico has not been able to verify that specific documents in these categories existed in

4  summer of 2008. As noted above, there may have been other categories of documents that existed

5  at the time of the oral litigation hold in 2008, but Irico cannot identify those documents at this

6  time.

7    **ISSUE NO. 7**

8    Identify by type all documents and information related to sales of CRT without regard to

9  location during the period 1997 to 2007 that were required to be preserved in accordance with

10  applicable Chinese law.

11    **RESPONSE TO ISSUE NO. 7**

12    During the period 1997 to 2007 Chinese law required companies such as Irico to retain

13  hard-copy documents that contained financial information derived from Irico's sales of CRTs

14  such as accounting books, general ledgers, and financial accounting reports, however, the only

15  documents directly related to sales of CRTs that were required to be maintained under Chinese

16  law were original invoices for sales of CRTs.

17    **ISSUE NO. 8**

18    Identify by type all documents related to sales of CRT without regard to location during

19  the period 1997 to 2007 that Irico generated, but was not required by Chinese authorities to

20  preserve, and describe the information that such documents contained.

21    **RESPONSE TO ISSUE NO. 8**

22    Irico has attempted to locate information regarding the types of documents related to the

23  sales of CRTs that Irico would have generated during the period 1997 to 2007 that were not

24  required to be preserved by Chinese authorities. As discussed above, nearly all of the employees

25  knowledgeable about what types of documents related to Irico's sales of CRTs were created

26  and/or maintained during the period 1997 to 2007 are no longer employed by, and are not

27  available to, Irico. Consistent with its retention practices, Irico believes that most of those

28  documents would not have been retained in the ordinary course of business and were unlikely to

1   have existed at the end of 2007. Identifying such specific documents, let alone their contents, is

2   nearly impossible given the time that has elapsed and the lack of employees with knowledge of

3   these issues. The information found by Irico regarding regularly prepared materials is detailed

4   below. Irico believes that it is likely that other categories of documents were generated but not

5   retained due to changes in Irico's business over the course of the relevant time period. For

6   example, Irico exited CDT production around 2002, and believes that it may not have retained

7   materials related to the sales of CDTs through 2007. Additionally, Irico stopped production of

8   various types of CPTs during the relevant time period, and re-deployed that space for other uses.

9   Finally, there may have been periodic or "one off" materials prepared during this time period, but

10   Irico is not aware of such materials today.

11          Sales reports containing general CRT market information

12          The sales department prepared weekly- and monthly-summaries of information collected

13   by its employees. Irico has been unable to determine whether such reports were created during the

14   period 1997 to 2004. The reports focused on Irico's customers, who were primarily Chinese

15   television manufacturers. Both the weekly- and monthly-reports generally included information

16   regarding customers, competitors and general market information. It is not clear how long those

17   materials were kept after their creation, and Irico is unable to determine whether such materials

18   would have existed at the time of the instruction to preserve.

19          CRT sales contracts with customers

20          Irico entered into sales contracts with some customers regarding its sales of CRTs. Some

21   contracts pertained to general terms for sales to that customer, including post-sale issues such as

22   shipping terms and procedures. Others pertained to specific transactions and included information

23   such as product description, product quantity, unit price, and invoice total. Irico believes that it is

24   unlikely that many of these documents existed at the end of 2007 because Irico exited CDT

25   production around 2002, and stopped production of various types of CPTs during the relevant

26   time period.

27   ///

28   ///

---

1     Correspondence with customers regarding CRT sales

2          Although Irico primarily communicated with customers face-to-face or over the phone, it

3   believes that some communications with customers would have taken place via facsimile.  The

4   contents of these facsimiles varied but generally contained information related to a customer's

5   purchase of CRTs that would be captured in the original sales invoice such as type, quantity, and

6   price. Facsimiles were not required to be maintained under Chinese law and were routinely

7   discarded in the ordinary course of Irico's business. Irico believes that it is unlikely that many of

8   these documents existed at the end of 2007 because Irico exited CDT production around 2002 and

9   stopped production of various types of CPTs during the relevant time period.

10     Handwritten working notes

11          Irico understands that individual employees may have taken handwritten notes while

12   performing their job functions. Irico believes that these were regularly discarded by the

13   employees during the course of their employment.  For example, Wang Zhaojie and Wang Ximin

14   regularly discarded such notes during the course of their employment but cannot recall any

15   specifics regarding those instances. The notes most likely covered the employees' regular

16   activities as members of Irico's sales department including notes of internal meetings, customer

17   contacts, and customer meetings. Wang Zhaojie also recalls taking notes related to individual

18   sales transactions (such as customer, quantity, and price) but discarded those notes shortly after

19   the sales documents were prepared. Irico believes that it is unlikely that many of these notes

20   existed at the end of 2007 because Irico exited CDT production around 2002, and stopped

21   production of various types of CPTs during the relevant time period. Additionally, by 2008 many

22   employees connected to Irico's sales were no longer employed by Irico, some of whom left much

23   earlier in the relevant time period.

24     Emails

25          Although Irico did not begin to use email until toward the end of the relevant time period,

26   many employees did not have their own email account at any time during the relevant time

27   period, and the company did not rely on email as a primary form of communication during any

28   point in the relevant time period. Irico is aware of emails sent or received on the following topics:

1        • Notices from Irico regarding corporate policies.

2        • Notices from the Chinese Communist Party.

3        • CRT manufacturing—Irico understands that its manufacturing plants sent periodic

4            emails related to the production of CRTs that may have discussed the quantity of

5            CRTs produced for a given time period, quality issues, and problems or incidents

6            that affected the production output. Irico understands that these were not sent on a

7            routine basis (i.e., daily, weekly, or monthly), but rather more sporadically because

8            as an organization Irico made no effort to routinize its use of email in the regular

9            course of business.

10       • Planning for Meetings of the China CPT Industry Association—Irico understands

11           that emails were exchanged between Irico and other Chinese CRT manufacturers

12           regarding the scheduling and planning of meetings of the China CPT Industry

13           Association, a trade organization for manufacturers of CPTs.

14   As noted in its prior discovery responses, Irico's email storage capacity was very limited during

15   the relevant time period, and each individual account had limited capacity as well. This meant that

16   the users of the accounts had to constantly delete emails in order to continue receiving new

17   emails. In addition to the account-level limitations, Irico's central email server likewise had

18   limited email storage and Irico was forced to routinely delete emails from the server in order to

19   create sufficient storage capacity for the company to continue to receive emails. During regular

20   working periods emails were deleted from the server three to five days after they were sent or

21   received on average, depending on the volume of email traffic. During periods of lower email

22   activity, such as during Chinese holidays, emails would be deleted less frequently and it is

23   possible that email for up to a fourteen day period would be retained on the company's return

24   from the holiday before Irico needed to resume a more regular schedule as business activities

25   returned to normal. For these reasons, and Irico's exit from many segments of the CRT market

26   prior to 2008, Irico is not able to determine whether email created during the relevant time period

27   existed at the end of 2007, or the volume or type of such email.

28   ///

Sales Data

Irico did not utilize electronic databases to store information related to sales of CRTs in a systematic or routine manner, but between 1999 and 2002 Irico Group's finance department sporadically entered information utilizing a database software called Newgrand. Specifically, during those years Irico entered partial revenue information from its sales of CRTs. During the period April 2006 through end of the 2007, Irico Display's finance department utilized a database program called Kingdee to track revenue and other accounting data related to sales of CRTs. All of these Newgrand and Kingdee data were produced to Plaintiffs during FSIA discovery. Irico does not believe that either database was, or is, a complete dataset for the period of time that those data were entered, as electronic databases are not among the categories of information required to be maintained under Chinese accounting laws and therefore were not considered important sources of information to Irico. But Irico is not aware of any Newgrand or Kingdee data that existed from the time period 1997 to 2007 but has not been provided to Plaintiffs.

Corporate Archives

As described previously and in the below Response to Issue No. 11, Irico also preserved various documents in its archives pursuant to its internal practices, some of which also related to sales of CRTs, including but not limited to planning documents, financial reports and some production and sales reports, which have not been detailed here.

**ISSUE NO. 9**

With respect to the 2017 "oral instruction" referred to in Irico's response to Interrogatory No 2, Irico is required to identify by name and position all persons who conveyed the "oral instruction," the dates each such person conveyed the "oral instruction," the persons by names and positions at the time to whom the "oral instruction" was conveyed, the offices, facilities or other locations at which the "oral instruction" was conveyed, the content of the "oral instruction" and all reasons upon which Irico contends the "oral instruction" was effective if Irico so contends.

**RESPONSE TO ISSUE NO. 9**

The 2017 oral instruction was conveyed by Zhang Wenkai, Deputy Director, Legal Affairs Department for Irico Group. The oral instruction asked the employees to preserve all existing and

identified information related to Irico's CRTs from 1995 to 2007 (without a geographic limitation, i.e., not solely related to sales of CRTs to the United States), and to preserve any newly found materials. The instruction was conveyed in meetings or discussions that occurred in September and October 2017; Irico has reviewed its available files but has been unable to determine the exact dates of the meetings. Mr. Zhang separately communicated the oral instruction to the following employees:

- Zhong Yuming: Business Manager, Human Resources Department, Irico Group.
  - Mr. Zhang met with Mr. Zhong in person in the offices of the Human Resources Department located at Irico Group's headquarters, 1 Caihong Road, Qindu District, Xianyang City, Shaanxi Province, People's Republic of China.

- Yang Hua: Director, Finance Department, Irico Group.
  - Mr. Zhang met with Ms. Yang in person in the offices of the Finance Department located at Irico Group's headquarters, 1 Caihong Road, Qindu District, Xianyang City, Shaanxi Province, People's Republic of China.

- Wang Zhaojie: General Manager, Irico Group New Energy Co., Ltd.  Formerly Mr. Wang was Director of Sales, Irico Sales Company and Irico Sales Department.
  - Mr. Zhang called Mr. Wang, who was not in his office at the time of the call. Mr. Zhang believes that Mr. Wang was traveling in Hefei, Anhui Province, People's Republic of China.

- Su Xiaohua: Vice General Manager of Xianyang Irico Photovoltaic Technology Company; Vice General Manager of Irico Photoelectric Materials Company. Formerly Mr. Su was the Vice General Manager, Planning, Irico Sales Company and Irico Sales Department.
  - Mr. Zhang and Mr. Su both recall that the instruction occurred during a phone call, but neither can recall where Mr. Su was at the time of the call. Mr. Su recalls that he was away from his office because his office was in Irico Group's headquarters building, as was Mr. Zhang's, and he would

1        have met directly with Mr. Zhang if he had been in the office.

2    • Li Mei: Head of Archives, Irico Group.

3        ○ Mr. Zhang met with Ms. Li in person in the offices of the Archives

4            Department, located in the Information Center building on Irico Group's

5            main campus, 1 Caihong Road, Qindu District, Xianyang City, Shaanxi

6            Province, People's Republic of China.

7    • Gao Xiangfeng: Director, Information Center, Irico Group.

8        ○ Mr. Zhang met with Mr. Gao in person in the offices of the Information

9            Center, located in the Information Center building on Irico Group's main

10            campus, 1 Caihong Road, Qindu District, Xianyang City, Shaanxi

11            Province, People's Republic of China.

12        The 2017 oral instruction was effective because the employees identified above were the

13   remaining employees that Irico determined were likely to have access to, or were designated

14   representatives of departments that maintained, documents from 1995 to 2007 that existed at the

15   time that the instruction was communicated in September or October 2017. Furthermore, Irico is

16   not aware of any potentially responsive documents from the time period 1995 to 2007 that were

17   lost or destroyed after September 2017.

18        **ISSUE NO. 10**

19        Inasmuch as Irico's response to Interrogatory No 2 states that Irico is not aware of the

20   destruction of "original invoices for sales, accounting books, general ledgers, financial accounting

21   reports, and bank statements" from 1995 to 2007, Irico shall state whether it is prepared to

22   produce all such materials to the PPs? If not, why not?

23        **RESPONSE TO ISSUE NO. 10**

24        By agreement between the parties, Irico has produced the identified, responsive materials

25   from accounting books, general ledgers, financial reports, and bank statements, and will be

26   producing Excel files summarizing the information contained in original invoices for sales

27   pursuant to a forthcoming stipulation between the parties.

28        As Irico has previously explained to the Court and to Plaintiffs, Irico's accounting

1   archives as described in its Response to Interrogatory No. 2 are voluminous and contain

2   significant amounts of information unrelated to its production or sales of CRTs, including

3   information related to the public functions entrusted to Irico by the Chinese government,

4   including the provision of primary and secondary public schools, the local police department, a

5   hospital, public transportation, and public recreational facilities (*see* Irico Group Corp.'s Mot. to

6   Dismiss for Lack of Subject Matter Jur. at 5, ECF No. 5312), and other non-CRT business

7   interests. Irico and Plaintiffs have been meeting and conferring throughout the discovery period

8   regarding these documents regarding the burden of production outweighing the benefits of

9   producing all of these materials, including for Plaintiffs as said production would require

10  Plaintiffs to review and analyze a large volume of non-responsive information. As discussed

11  above, the Parties have agreed on the scope of production of these materials.

12          **ISSUE NO. 11**

13          Irico is directed to describe its "internal practices" for the maintenance of "material related

14  to operational documents, administrative documents, technical records and communications with

15  agencies of the PRC government and Chinese Communist Party."

16          **RESPONSE TO ISSUE NO. 11**

17          As discussed in more detail below and previously described in its initial response to

18  Interrogatory No. 2, Irico preserves documents within its corporate archives related to four main

19  categories: operational documents, administrative documents, technical records and

20  communications with agencies of the PRC government and Chinese Communist Party.

21  Documents preserved in these categories apply not only to the portion of Irico's business

22  concerning production and sales of CRTs, but also those related to the public functions entrusted

23  to Irico by the Chinese government, including the provision of primary and secondary public

24  schools, the local police department, a hospital, public transportation, and public recreational

25  facilities (*see* Irico Group Corp.'s Mot. to Dismiss for Lack of Subject Matter Jur. at 5, ECF No.

26  5312), and also other non-CRT business interests. Once a document is passed to the archives

27  department of Irico, a member of the archives team enters the document into the archives. The

28  documents are physically placed into bound-books, or into folders within bound books, and the

1    books are stored in the archives department at Irico's headquarters. Once placed in the archives,

2    the documents may not be damaged or destroyed without specific authorization.

3        Within each of the four categories described above, Irico maintains the following types of

4    documents in its corporate archives:

5        • Operational documents:

6            ○ Documents related to business decisions, including:

7                ▪ Strategic planning and long-term forecasting.

8                ▪ Development plans.

9                ▪ Work plans.

10               ▪ Changes in management.

11               ▪ Communications to or from government agencies regarding the

12                 above topics.

13           ○ Documents related to accounting and finance, including:

14               ▪ Financial reports.

15               ▪ Financial planning.

16               ▪ Audited financial statements.

17               ▪ Loan applications.

18               ▪ Accounting policies.

19               ▪ Transfers of financial interests in other companies.

20               ▪ Communications to or from government agencies regarding any of

21                 the above topics.

22           ○ Annual production and sales reports from 1995 to 2004.

23           ○ Status reports for procurement of raw materials.

24           ○ Communications to or from governmental entities regarding enterprise

25             decisions.

26           ○ Adjustments to corporate form, including subsidiaries.

27       • Administrative documents:

28           ○ Documents related to administrative matters, including:

1    ▪   Year-end summaries of work completed in the prior year.

2    ▪   Work plans for the coming year.

3    ▪   Award notices.

4    ▪   The minutes of annual administrative meetings and board of

5        directors' meetings.

6    ▪   Requests for approval of corporate development initiatives, changes

7        to corporate form, and capital expenditures.

8    ▪   Decisions on requests for approval of corporate development

9        initiatives, changes to corporate form, and capital expenditures by

10       governmental entities, including the State-owned Assets

11       Supervision and Administrative Commission of the State Council

12       (SASAC), and the Shaanxi provincial government.

13   o   Documents related to HR matters, including:

14       ▪   Notices of the appointment to, or removal from, positions issued by

15           various departments within the Chinese government including the

16           Department of Personnel and Education, the Ministry of

17           Information and Industry, the Economy and Trade Commission.

18       ▪   Notices of the appointment to, or removal from, positions issued by

19           Shaanxi provincial authorities.

20       ▪   Notices of the appointment to, or removal from, positions issued by

21           the government of the city of Xianyang.

22       ▪   Notices of the appointment to, or removal from, positions issued by

23           Irico.

24       ▪   Policies issued by Irico and its subdivisions regarding HR matters.

25   o   Documents related to Irico's provision of educational facilities.

26   o   Documents related to environmental issues.

27   •   Technical records:

28   o   Quality management.

---

IRICO'S SUPP. OBJS. AND RESPS. TO IPP'S          22          Master File No. 4:07-cv-05944-JST
THIRD SET INTERROGATORIES                                    MDL No. 1917

1   o   Labor-related matters.

2   o   Energy-related matters.

3   o   Production security.

4   o   Technology.

5   o   Environmental protection.

6   o   Metering work.

7   o   Standardization.

8   o   File information.

9   • Chinese Communist Party-related matters:

10   o   Meeting minutes and plans of the Party.

11   o   Administrative matters.

12   o   Public relations matters.

13   o   Discipline and inspection matters.

14   o   Labor union matters.

15   o   Communist Youth League matters.

16   o   Association matters.

17   **INTERROGATORY NO. 4**

18   State when and how You first learned of potential anticompetitive conduct concerning the

19   pricing of Cathode Ray Tubes.

20   **RESPONSE TO INTERROGATORY NO. 4**

21   Irico reasserts and incorporates each of the General Objections and Objections to the

22   Definitions and Instructions set forth above. Irico further objects to the undefined terms

23   "potential," "concerning" and "pricing" as they render the interrogatory vague and ambiguous.

24   Irico also objects to the undefined term "anticompetitive conduct" on the grounds that it calls for

25   a legal conclusion and is otherwise vague, ambiguous, and overbroad.

26   Subject to and without waiving the objections stated above, Irico responds that it first

27   learned of the allegations in Plaintiff's Complaint on December 25, 2007, when it received a

28   summons from the United States District Court for the Northern District of California in the matter

1   *Figone v. L.G. Electronics, Inc.*, 07-cv-6381.

2   **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 4**

3          Pursuant to the Special Master's December 22, 2021 Order Re DPPs' Motion to Compel

4   Interrogatory Further Answers, ECF No. 5978, the Court has ordered Irico to respond to the

5   following request:

6                      State when Irico had reason to believe that manufacturers or

7                      distributors of CRT had at any time after 1997 communicated with

8                      one another about prices or output of CRT and how Irico came to

9                      this belief.

10         Subject to and without waiving any of the objections as stated in its original response,

11  Irico is not aware of any evidence or testimony that Irico learned of competitor communmications

12  discussing prices or output of CRTs prior to August 1998. Irico further responds that one of its

13  employees may have learned of competitor communications regarding pricing of CRTs in early-

14  August 1998.  The documents of an alleged co-conspirator, Chunghwa Picture Tubes, indicate

15  that Irico was invited to participate in a meeting with other manufacturers of CDTs on August 5,

16  1998 in Shenzhen, People's Republic of China. Irico has not been able to determine its

17  employees' actual knowledge or understanding of the communications at that meeting, or the

18  extent to which they may have involved communications about prices or output of CRTs, because

19  the Irico employee who was alleged to have attended the August 5 meeting (again, based on a

20  document produced by Chunghwa Picture Tubes), Wang Zhaojie does not remember attending

21  the meeting or any details of the meeting. All other known employees of the Sales Company from

22  that time period are no longer employed by, and no longer available to, Irico.

23

24

25  Dated:  January 21, 2022                      BAKER BOTTS L.L.P.

26

27                                              */s/ John M. Taladay*
    _____

28                                              John M. Taladay (*pro hac vice*)
                                                Evan J. Werbel (*pro hac vice*)

Thomas E. Carter (*pro hac vice*)
Andrew L. Lucarelli (*pro hac vice*)
700 K Street, N.W.
Washington, D.C. 20001
(202)-639-7700
(202)-639-7890 (fax)
Email: john.taladay@bakerbotts.com
        tom.carter@bakerbotts.com
        drew.lucarelli@bakerbotts.com

Jonathan Shapiro (State Bar No. 257199)
101 California Street, Suite 3600
San Francisco, California 94111
(415) 291-6200
(415) 291-6300 (fax)
Email: jonathan.shapiro@bakerbotts.com

*Attorneys for Defendants*
*IRICO GROUP CORP. and*
*IRICO DISPLAY DEVICES CO., LTD.*

1

**CERTIFICATE OF SERVICE**

2

**In re: Cathode Ray Tube (CRT) Antitrust Litigation - MDL No. 1917**

3

I declare that I am employed in Washington, District of Columbia.  I am over the age of

4

eighteen years and not a party to the within case; my business address is:  Baker Botts L.L.P., 700

5

K Street, N.W., Washington, D.C. 20001.

6

On January 21, 2022, I served the following document(s) described as:

7

**IRICO DEFENDANTS' SUPPLEMENTAL OBJECTIONS AND
RESPONSES TO INDIRECT PURCHASER PLAINTIFFS'**

8

**THIRD SET OF INTERROGATORIES TO IRICO GROUP
CORPORATION AND IRICO DISPLAY DEVICES CO., LTD.**

9

on the following interested parties in this action:

10

11

R. Alexander Saveri (rick@saveri.com)
Geoffrey C. Rushing (grushing@saveri.com)

Mario N. Alioto (malioto@tatp.com)
Lauren C. Capurro (laurenrussell@tatp.com)

12

Matthew D. Heaphy (mheaphy@saveri.com)
SAVERI & SAVERI, INC.

TRUMP ALIOTO TRUMP & PRESCOTT LLP
2280 Union Street

13

706 Sansome St # 200
San Francisco, CA 94111

San Francisco, CA 94123

14

15

*Lead Counsel for the Direct Purchaser
Plaintiffs*

*Lead Counsel for the Indirect Purchaser
Plaintiffs*

16

17

Dan Birkhaeuser
(dbirkhaeuser@bramsonplutzik.com)

18

BRAMSON, PLUTZIK, MAHLER &
BIRKHAEUSER, LLP

19

2125 Oak Grove Rd, Suite 125
Walnut Creek, CA 94598

20

*Counsel for the Indirect Purchaser
Plaintiffs*

21

22

[X]    (BY ELECTRONIC MAIL) I caused such documents to be sent to the persons at the email
addressed listed above.  I did not receive, within a reasonable time after the transmission,

23

any electronic message or other indication that the transmission was unsuccessful.

24

I declare under penalty of perjury that the foregoing is true and correct.  Executed on

25

January 21, 2022, in Rockville, Maryland.

26

27

*/s/ Andrew L. Lucarelli*

28

Andrew L. Lucarelli

# Exhibit 4

Page 1

```
 1              IN THE UNITED STATES DISTRICT COURT
                 NORTHERN DISTRICT OF CALIFORNIA
 2                   San Francisco Division

 3    - - - - - - - - - - - - - - - - - -
      IN RE:                            )
 4                                      )
      CATHODE RAY TUBE (CRT)            )Master File No.
 5    ANTITRUST LITIGATION              )07-CV-5944-JST
                                        )
 6                                      )MDL No. 1917
                                        )
 7                                      )
                                        )
 8    - - - - - - - - - - - - - - - - - -

 9              DEPOSITION OF WANG ZHAOJIE

10                 HIGHLY CONFIDENTIAL

11                      VOLUME I

12             Wednesday, March 6th, 2019

13                   AT:  9.08 am

14                    Taken at:

15                 Kobre & Kim
                   6/F ICBC Tower
16                 3 Garden Road
                     Central
17                 Hong Kong

18

19

20

21

22

23   Court Reporter:

24   Bron Williams
     Accredited Real-time Reporter
25
```

**Page 6**

```
1           invoice
2  Exhibit 8411 Bates number ..........................103
            IRI-CRT-00003588 - Export
3           invoice
4  Exhibit 8412  Bates number .........................105
            IRI-CRT-00003594 - Export
5           invoice
6  Exhibit 8413 Bates number ..........................109
            IRI-CRT-00003546 - Material
7           from a database file
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

**Page 7**

```
1        VIDEOGRAPHER:  Good morning.  Here begins
2  volume I, media number 1 in the deposition of Wang Zhaojie
3  in the matter of In Re Cathode Ray Tube (CRT) Antitrust
4  Litigation, in the United States District Court, Northern
5  District of California, San Francisco division.  Master file
6  number 07-CV-5944-JST.  MDL No. 1 917.
7        Today's date is  March 6, 2019.  The time on the
8  video monitor is 9.08 a.m.
9        The certified video operator today is Inga Kornev,
10 contracted by US Legal Support.  This video deposition is
11 taking place at Kobre & Kim, ICBC Tower, 3 Garden Road,
12 Central, Hong Kong.  Counsel, please voice identify
13 yourselves and state whom you represent.
14       MR. BENZ:  Steven Benz from the law firm Kellogg,
15 Hansen PLLC, Washington DC, for the direct purchaser
16 Plaintiffs.
17       MR. HWU:  David Hwu from the law firm of
18 Saveri & Saveri in San Francisco on behalf of the direct
19 purchaser Plaintiffs.
20       MS. FU:  Qianwei Pu, Zelle LLP on behalf of the
21 indirect purchaser Plaintiffs.
22       MS. CAPURRO:  Lauren Capurro from Trump, Alioto,
23 Trump & Prescott for the indirect purchaser plaintiffs.
24       MR. MARGO:  Benjamin Margo, the Kellogg Hansen law
25 firm, for the direct purchaser plaintiffs.
```

**Page 8**

```
1        MR MONTANO:  Michael Montano, Cotchett, Pitre &
2  McCarthy on behalf of the direct purchaser plaintiffs.
3        MR. PLUNKETT:  Stuart Plunkett from Baker Botts on
4  before of the Irico defendants and the witness.
5        MS. YANG:  Kaylee Yang from Baker Botts llP on
6  behalf of the Irico defendants.
7        MR. JACOBSMEYER:  Brian Jacobsmeyer from Baker
8  Botts LLP on behalf of the Irico defendants and the witness.
9        VIDEOGRAPHER:  Would all others please state your
10 name for the record.
11       MS. GUO:  Guo Xiao Yan.
12       MS. SHANG:  Ting Shang.
13       INTERPRETER:  Kuang-Shai Chao.  I am the
14 interpreter.
15       VIDEOGRAPHER:  The court reporter today is Bron
16 Williams on behalf of US Legal Support.  Would the reporter
17 swear in the interpreters and the witness.
18       INTERPRETER - Kuang-Shai Chao (affirmed)
19   QIANWEI FU - (affirmed) - acting as a check interpreter
20   DAVID HWU - (affirmed) - acting as a check interpreter
21            WANG ZHAOJIE
22 having been duly affirmed testified as follows:
23   (All answers were given through the interpreter unless
24                  otherwise indicated)
25       MR. HWU:  I hate to interrupt, but the live screen
```

**Page 9**

```
1  for our check interpreter is not working.  So could we go
2  off the record to fix this really quick?
3        VIDEOGRAPHER:  Going off -- this marks the end of
4  media number 1 of the deposition of Wang Zhaojie.  Going off
5  the record.  The time is 9.11.
6            (Break taken.)
7        VIDEOGRAPHER:  We are back on the record.  Here
8  begins media 2 in the deposition of Wang Zhaojie, the time
9  is 9.12.
10  BY MR. BENZ:
11       Q.  Good morning, Mr. Wang.  My name is Steven
12 Benz and I represent the direct purchaser plaintiffs in this
13 litigation.
14       Can you please state your full name and spell it
15 for the record.
16       A.  (Chinese spoken).
17       INTERPRETER:  (Chinese spoken).
18       A.  My name is Wang Zhaojie, spelled as W-A-N-G,
19 Z-H-A-O-J-I-E.
20  BY MR. BENZ:
21       Q.  Have you ever gone by any other name?
22       A.  No.
23       Q.  Do you have a nickname?
24       A.  What do you mean by that nickname?
25       Q.  A name that your friends call that you is not
```

Page 34

1 period?
2     A.  I cannot remember exactly.
3     Q.  Can you give me an approximation?
4     A.  Around 100.
5     Q.  From 1993 to 2003, did you work with Liang
6 Yuan?
7     A.  No.
8     Q.  Did you work with Li Weisheng?
9     MS. FU:  Li Weisheng.
10     A.  Li Weisheng?  I worked with Li Weisheng, but
11 I'm not quite sure it is within that time frame.
12 BY MR. BENZ:
13     Q.  Did you work with Wei Jianshe?
14     A.  Yes.  But again, I'm not quite sure it is
15 within that particular time frame.
16     Q.  Between 1993 and March 2003 did you work with
17 Yao Jun?
18     MS. FU:  Yao Jun.
19     A.  Yes, but again I'm not quite sure it is within
20 that time frame.
21     Q.  Between 1993 and 2003, did you work with Sha
22 Tao?
23     A.  No.
24     Q.  Did you work with Gao Rong-guo?
25     A.  No.

Page 35

1     Q.  Did you work with Fang Liang Jun?
2     A.  Who is this person?
3     MS. FU:  Fang Liang Jun?
4     A.  I'm not quite sure.
5 BY MR. BENZ:
6     Q.  Okay.  From 1993 to 2003 did you work with Li
7 Weisheng?
8     A.  No, I don't know this person.
9     Q.  Did you work with --
10     MS. FU:  Wei Jianshe.
11 BY MR. BENZ:
12     Q.  From 1993 to 2003 did you work with Wei
13 Jianshe?
14     A.  Yes, I worked with Wei Jianshe, but I'm not
15 sure during what time frame.
16     THE COURT REPORTER:  I will ask one of the counsel
17 to give me the spellings during the break.
18 BY MR. BENZ:
19     Q.  Where was the sales department located from
20 1993 to 2003?
21     A.  It is -- the address is number 1, Caihong
22 road, Shenyang City, Shaanxi province.
23     Q.  Did the sales department have the same
24 location as the CNEICC building?
25     A.  No.

Page 36

1     Q.  Do you know where CNEICC was located from 1993
2 to 2003?
3     A.  I don't know.
4     Q.  From 1993 to 2003, did you have any management
5 responsibilities with respect to Irico Display?
6     A.  No.
7     Q.  Then from March 2003 to May 2010 you were, as
8 you said, a director in the sales department of Irico Group.
9 Correct?
10     A.  Yes.
11     Q.  Did your responsibilities change when you
12 became a director?
13     A.  (Chinese spoken).
14     INTERPRETER:  The witness is asking the
15 interpreter to repeat the question.
16     (Chinese spoken).
17     A.  I don't quite understand about this question.
18 I was always in the sales department, and previously I was
19 a sales rep, and then I became the director of the
20 department.
21 BY MR. BENZ:
22     Q.  And I'm asking did your responsibilities
23 change when you became a director?
24     A.  When I was a sales rep I just conduct the
25 sales business, and then when I became the director,

Page 37

1 I became the manager, to manage all the sales-related
2 business.
3     Q.  Did your responsibilities as director go
4 beyond CPTs and CDTs?
5     A.  No.
6     Q.  How many salespersons did you supervise as
7 director?
8     A.  Between 20 to 30 sales reps.
9     Q.  Did the sales rep submit reports to you?
10     A.  (Chinese spoken).
11     INTERPRETER:  The witness is asking the
12 interpreter to repeat the question.
13     (Chinese spoken).
14     A.  Yes.  They have -- they report to me.
15 BY MR. BENZ:
16     Q.  Did they submit reports to you?  Sales
17 reports?
18     A.  We have teleconference, they did report their
19 sales to me.
20     Q.  Did the sales reps submit written reports to
21 you?
22     A.  Sometimes.
23     Q.  Where were the reports kept?
24     A.  I think this question belongs to the topic for
25 Mr. Zhang Wenkai, not for me.

Page 114

1  and recontinuing tomorrow, at 9 a.m.

2         MR. PLUNKETT:  Agreed.

3         VIDEOGRAPHER:  This is the end of media number 9,

4  and volume I of the deposition of Wang Zhaojie.  Going off

5  the record.  The time is 5.55.

6         (Whereupon, the deposition adjourned at 5.55 pm)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 116

1

2              CERTIFICATE OF DEPONENT

3

4    I, Wang Zhaojie, hereby certify that I have read the

     foregoing pages, numbered 1through 115, of my deposition of

5    testimony taken in these proceedings on Wednesday, March

     6th, 2019 and, with the exception of the changes listed on

6    the next page and/or corrections, if any, find them to be a

     true and accurate transcription thereof.

7

8

9

10

11   Signed:  ......................

12   Name:   Wang Zhaojie

13   Date:   ......................

14

15

16

17

18

19

20

21

22

23

24

25

Page 115

1              CERTIFICATE OF COURT REPORTER

2

3    I, Bron Williams, an Accredited Real-time Reporter, hereby

4    certify that the testimony of the witness Wang Zhaojie in

5    the foregoing transcript, numbered pages 1 through 115,

6    taken on this 6th day of March, 2019 was recorded by me in

7    machine shorthand and was thereafter transcribed by me; and

8    that the foregoing transcript is a true and accurate

9    verbatim record of the said testimony.

10

11

12   I further certify that I am not a relative, employee,

13   counsel or financially involved with any of the parties to

14   the within cause, nor am I an employee or relative of any

15   counsel for the parties, nor am I in any way interested in

16   the outcome of the within cause.

17

18

19   Signed:  *Bron Williams*

20   Name:   Bron Williams

21   Date:   ......................

22

23

24

25

Page 117

1

2                ERRATA SHEET

3    Case Name:        In Re Cathode Ray Tube Antitrust
     Litigation

4    Witness Name:     Wang Zhaojie
     Date:    03/06/2019

5    Page/Line         From              To

6    ____/_____

7    ____/_____

8    ____/_____

9    ____/_____

10   ____/_____

11   ____/_____

12   ____/_____

13   ____/_____

14   ____/_____

15   ____/_____

16   ____/_____

17   ____/_____

18   Subscribed and sworn to before

19   me this 6th day of March, 2019.

20        _____

21        Wang Zhaojie

22

23

24

25

# Exhibit 5

Page 1

1              IN THE UNITED STATES DISTRICT COURT
                  NORTHERN DISTRICT OF CALIFORNIA
2

    - - - - - - - - - - - - - - - - - -
3   IN RE:                             )
                                       )
4   CATHODE RAY TUBE (CRT)             )
    ANTITRUST LITIGATION               )Master File No.:
5                                      )07-CV-5944-JST
                                       )
6                                      )MDL No. 1917
                                       )
7                                      )
                                       )
8   - - - - - - - - - - - - - - - - - -

9          VIDEOTAPED DEPOSITION OF ZHANG WENKAI

10                  HIGHLY CONFIDENTIAL

11                      VOLUME I

12                MONDAY, MARCH 4, 2019

13                AT:  09.00 a.m.

14                   Taken at:

15                 Kobre & Kim
                   6/F ICBC Tower
16                 3 Garden Road
                      Central
17                 Hong Kong

18

19  Court Reporter:

20  Amanda Tolton
    Accredited Real-time Reporter
21

22

23

24

25

Page 6

```
1              P R O C E E D I N G S
2    (09.03 a.m.)
3         VIDEOGRAPHER:  Good morning.  Here begins
4    Volume 1, Media No. 1 in the deposition of
5    Wenkai Zhang in the matter of In Re Cathode Ray Tube
6    (CRT) Antitrust Litigation in the United States
7    District Court, Northern District of California,
8    San Francisco Division, Master File No.
9    07-cv-5944-JST, MDL No.:1917.
10        Today's date is March 4, 2019, and the time
11   on the video monitor is 9:04 a.m.  The certified
12   video operator today is Inga Kornev contracted by
13   U.S. Legal Support.  This video deposition is taking
14   place at Kobre & Kim, ICBC Tower, 3 Garden Road,
15   Central, Hong Kong.
16        Counsel, please voice identify yourselves
17   and state whom you represent.
18        MR. BENZ:  Steven Benz of the law firm
19   Kellog, Hansen, PLLC, in Washington, D.C., for the
20   Direct Purchaser Plaintiffs.
21        MR. HWU:  David Hwu of the law firm
22   Saveri & Saveri from San Francisco for
23   Direct Purchaser Plaintiffs.
24        MS. FU:  Qianwei Fu from Zelle LLP in
25   San Francisco for the Indirect Purchaser Plaintiffs.
```

Page 7

```
1         MR. MARGO:  Benjamin Margo of the law firm
2    Kellog Hansen for the Direct Purchaser Plaintiffs.
3         MR. MONTANO:  Michael Montano of the law
4    firm Cotchett, Pitre & McCarthy in Burlingame,
5    California, on behalf of Direct Purchaser Plaintiffs.
6         MR. LUCARELLI:  Andrew Lucarelli,
7    Baker Botts, on behalf of Irico defendants and the
8    witness.
9         MR. ZHANG:  Yan Zhang, Baker Botts, on
10   behalf of defendant, Irico defendant.
11        VIDEOGRAPHER:  Would all others please state
12   your name for the record.
13        MR. WU:  Wu Xiao Juen.
14        VIDEOGRAPHER:  Could you say it loudly
15   please?
16        MR. WU:  Wu Xiao Juen.
17        MS. SHAO:  Shao Tin-tin.
18        VIDEOGRAPHER:  One more time, please.
19        MS. SHAO:  Shao Tin-tin.
20        VIDEOGRAPHER:  Thank you.
21        INTERPRETER:  Kuang-Shai Chao.  I'm the
22   interpreter.
23        MR. BENZ:  All set?
24        VIDEOGRAPHER:  No.  Just waiting for her to
25   catch up.
```

Page 8

```
1         The court reporter today is Amanda Tolton,
2    representing U.S. Legal.
3         Would the reporter please swear in the
4    interpreters and the witness.
5         Interpreter (Kuang-Shai Chao) sworn
6              ZHANG WENKAI
7    having been duly sworn testified as follows:
8    EXAMINATION BY MR. BENZ:
9         Q.  Good morning, Mr. Zhang.  My name is Steven
10   Benz and I represent the Direct Purchaser Plaintiffs
11   in this litigation.
12        Can you please state your full name and
13   state it for the record?
14        A.  Zhang Wenkai.  Z-H-A-N-G, W-E-N-K-A-I.
15        Q.  Have you ever gone by any other name or
16   nickname?
17        A.  This is the only name I have.
18        Q.  Are you presently employed?
19        A.  Yes.
20        Q.  What is the name of your employer?
21        A.  Irico Group.
22        Q.  What is your job title?
23        A.  Manager of Legal Affairs.
24        Q.  What is your work address?
25        A.  Shaanxi Province in China.  Shaanxi.
```

Page 9

```
1    S-H-A-A-N-X-I.  Province.  And Xianyang City.
2    X-I-A-N-Y-A-N-G, City.  And Cai Hong Road, No. 1.
3         Q.  What is your work telephone number?
4         A.  86102933332358.
5         Q.  What is your cell phone number?
6         A.  18009297807.
7         Q.  Is your cellular phone provided to you by
8    your employer?
9         A.  No, this is my private cell phone number.
10        Q.  How long have you had this cell phone
11   number?
12        A.  Maybe around June or July of 2012.
13        Q.  Okay.  Please state your work email address.
14        A.  So my office email address is my name,
15   zhangwenkai0713@ch.com.
16        Q.  Do you have a personal email address?
17        A.  No, I didn't use it.
18        Q.  Have you ever had your deposition --
19        A.  I'm sorry, I have one personal email
20   address, which I seldom use, I only use it
21   occasionally.
22        Q.  Do you use your personal -- do you ever use
23   your personal email address for work purposes?
24        A.  Very rarely.  Occasionally, I will use it.
25        Q.  Okay.  What is your personal email address?
```

Page 74

1    Q. What was the previous question?
2    A. So the question is regarding -- with regard
3  to whether we have produced a original financial
4  record as a discovery for this litigation.
5    Q. What kind of clarification would you like to
6  make?
7    A. The correct answer should be because of the
8  difficult situation, in a practical difficult
9  situation, we didn't provide original record.
10    Q. Can you explain what kind of difficult
11  situation that prevented you from providing the
12  original documents to counsel?
13    A. Because there are a large amount of the
14  records. Plus that it lasts for a very, very long
15  period, whereas the forms are not consistent.
16  Because that record not only just cover our sales
17  record, it also cover many receipts regarding the
18  expenses. And also the record of our cost. So
19  there's no way we can differentiate those record. It
20  is beyond our capacity to have a comprehensive screen
21  of every document. That's it.
22    Q. I want to step back a little bit.
23    A. Okay.
24    Q. Mr. Zhang, we met earlier today. My name is
25  Qianwei Fu and I represent the Indirect Purchaser

Page 75

1  Plaintiffs. I'm going to ask you some questions this
2  afternoon. Is it okay?
3      Yes.
4    A. My question is was your question was in the
5  limit of the 8390, yes, then it's okay.
6    Q. Do you understand you're still under oath
7  today right now with regard to the questions that I'm
8  going to ask you and your answers to my questions?
9    A. Yes.
10    Q. Can you turn to Exhibit 8390? That's the
11  amended notice of deposition of
12  Irico Group Corporation and Irico Display Devices
13  pursuant to Federal Rule of Civil Procedure 30(b)(6).
14    A. Yes.
15    Q. Can you take a look at topics No. 6 and
16  Topic No. 18.
17      Are you -- are you prepared and qualified to
18  testify those topics?
19    A. Yes.
20    Q. I'm going to ask you some questions about
21  document preservation, which is Topic 6.
22      During the time period between 1995 and
23  2008, did Irico have a standard document retention
24  policy in place?
25    A. Are you referring to hard copy or any other

Page 76

1  form of the document?
2    Q. Do you understand what a retention policy
3  is?
4    A. In China, the term "retention" referred to
5  the hard copy, which means a printed or paper
6  document.
7    Q. During the time period between 1995 through
8  2008, did Irico have an established protocol for
9  retaining information or documents for operational or
10  regulatory compliance needs?
11    A. I'm not quite sure I follow your question.
12  If you are referring to the hard copy or the paper
13  printed copy, based on our -- the regulatory
14  compliance for the accounting and the documents, we
15  do have a protocol. With regard to the term
16  "information," I'm not quite sure whether those
17  information are printed on the paper or non-paper
18  information, I'm not quite sure.
19    Q. I'm referring to anything in writing.
20    A. Because when you say -- because when you say
21  "writing," so when regarding so the document or the
22  form, if it is writing or printed on the paper, then,
23  yes, we do have a protocol. However, if the writing
24  is through computer which is a digital form, then
25  there's no rules about the government require us to

Page 77

1  maintain or retain those documents.
2    Q. So are you saying Irico, during the time
3  period between 1995 to 2008, have a retention policy
4  regarding hard copy documents?
5    A. Yes, for hard copy or paper printed, we do
6  have a policy.
7    Q. What about electronically stored information
8  or electronic records?
9    A. No, we don't have that system, because the
10  government don't ask us to do that.
11    Q. And let's talk about the policy regarding
12  hard copy documents.
13      Is that a formal written policy?
14    A. Yes, we do have a so-called document
15  retention system.
16    Q. And is that in writing?
17    A. You mean the system? Yes, we do have that
18  system or policy.
19    Q. Do you have a copy of that policy?
20    A. I saw that document before, but I don't have
21  it with me right now.
22    Q. But you have it somewhere in the company?
23    A. Yes.
24    Q. Can you -- strike that.
25      When was that policy put in place?

Page 102

BY MS. FU:

Q. Are you aware that Irico produced some documents related to US sales from CNEIECC's archives?

MR. LUCARELLI: Object to form.

A. Are you asking that we have -- I mean, that Irico produced certain document, which we obtained from the archive room from CNEIECC?

BY MS. FU:

Q. I'm asking if Irico has produced any documents related to US sales from CNEIECC's archives?

A. What subject are you referring to with regard to the US sales? I mean, who asked -- who export the product to the State?

Q. Either Irico or CNEIECC?

A. So are you referring to the document retrieved from the archive room at CNEIECC?

Q. Did Irico produce any CNEIECC documents?

A. Under the request from the plaintiff, we did produce a certain document from CNEIECC.

Q. How did Irico locate those CNEIECC documents?

A. CNEIECC has their own archive room. And the fact it's after 2014, Irico become the holding

Page 103

company to the CNEIECC, so we have the access to their archive room.

Q. So those documents kept in CNEIECC's archives room, were these documents created by CNEIECC during its regular course of business?

MR. LUCARELLI: Object to form.

A. I'm not quite sure I follow your question. Could you repeat your question?

BY MS. FU:

Q. What kind of documents were kept in CNEIECC's archive room?

A. They have a room reserved for original financial records. And part of that is sales related original documents. So their own sales -- their own original sales record. Another room is for archive and documents. I wouldn't say that is like official archive room. They just store certain documents in that particular room. They just use it as a document storeroom, because they don't have the system like Irico Group where we have a very comprehensive archive retention system. That's so much about it.

Q. Am I correct that CNEIECC created those original sales records during the regular course of its business?

A. That's beyond my scope, because we have no

Page 104

manage or no control regarding their business during the class period. As to how they keep their financial record or maintain their archive, I have no idea.

Q. Do you have any reason to believe that CNEIECC did not follow its ordinary business protocol in creating those original sales records?

MR. LUCARELLI: Object to form.

A. CNEIECC -- CNEIECC was transferred to the Irico in 2014 without any transfer cost. And the class period is between 1995 to 2007. During -- there is no way we can -- will understand how they manage those sales record during the class period.

MS. FU: Let's take a five-minute break.

VIDEOGRAPHER: This marks the end of media No. 8 in the deposition of Zhang Wenkai. Going off the record. The time is 5:15.

(5.15 p.m.)

(Break taken.)

(5.45 p.m.)

VIDEOGRAPHER: We are back on the record. Here begins Media No. 9 in the deposition of Zhang Wenkai. The time is 5:45 p.m.

BY MS. FU:

Q. Mr. Zhang, you testified earlier today you

Page 105

have a working email address, correct?

MR. LUCARELLI: Object to form.

A. Yes, I do have an email address for working.

BY MS. FU:

Q. Does everyone at Irico have a work address?

A. I'm only aware that all the employee from the Irico Group do have a working email address. I'm not sure about the other subsidiaries.

Q. So you don't know if the employees at Display have working addresses or not?

A. I have no knowledge regarding how they access the email accounts.

Q. Do Irico Display employees have work email addresses?

A. Are you talking about the Irico Display?

Q. Correct.

A. I have no knowledge whether there is an employee who have the working email address. Only the staff from IT center will aware of that.

Q. When did Irico Group employees start to use emails?

A. Could you repeat the question one more time, please?

Q. When did Irico Group employees start to use emails?

Page 106

1    A.  Are you referring to the access to the free
2  Internet access or using our intranet or our own --
3  our own server?
4    Q.  Let's start with the email address that's
5  connected with your own server.
6    A.  I did check with the IT people regarding
7  when we started to use the email account with CH on
8  it.  So they told me it's around 2004 and 2005.
9  However, it is not distributed to each individual but
10  to a department, so everybody in the department know
11  the password, they share one computer back then.
12    Q.  When did every employee at Irico Group start
13  to use work email addresses?
14    A.  There is no fixed time frame.  In other
15  words -- in other words, it is a gradual process.
16  Whenever we upgrade our server, we will expand the
17  access of Internet to more employees.
18    Q.  As part of your search for documents and
19  information responsive to plaintiff's discovery
20  request, did you ask about what types of electronic
21  information the current or former employees would
22  have had that no longer exist?
23    MR. LUCARELLI:  Object to form.
24    A.  Are you referring to emails?
25

Page 107

1  BY MS. FU:
2    Q.  Any kind of electronic information,
3  including emails.
4    A.  Well, I did check with former employees
5  regarding the electronic information they have.  They
6  all transfer those information to other colleagues.
7  So, as I said earlier, there's no regulation in China
8  with regarding to the retention of those digital or
9  electronic informations.  So when the computer
10  expired or obsoleted, those data would be discarded.
11  And with regard to the email, like I said, in early
12  days, in the beginning, the department share one
13  email account, so the limitation of or several for
14  individual departments around four gigabyte.  Because
15  of the limitation of the server capacity, so the new
16  data were cover or were overload on their previous
17  data.  This is the reason sometimes we lost earlier
18  emails because of the limitation of the server, new
19  email will override the old emails.  I joined Irico
20  in January 2017.  The capacity for my email box when
21  I joined Irico is about 100 gigabyte.  By the end of
22  2017, we did have several upgrade.  And then my
23  personal email account has -- has been upgrade to 1G.
24  So this is why I say, when we lost those early
25  emails, this is because a limit size of the server

Page 108

1  back then.
2    Q.  Do any back-up tapes exist that could
3  contain copies of those overridden files?
4    A.  Well, like I said, I also check with IT
5  people regarding the issue you just raised, because
6  there is no rule or requirement regarding the
7  detention of electronic files, so we never kept those
8  files, never backed up those files.
9    Q.  Why were electronic records deemed
10  unimportant such that they were not kept by Irico?
11    MR. LUCARELLI:  Object to form.
12    MR. HWU:  Can I ask the interpreter to try
13  rendering the question one more time.
14    INTERPRETER:  Okay.
15    MS. FU:  I think the court reporter made a
16  typo.  I'll ask the question again.
17  BY MS. FU:
18    Q.  Why were the electronic records deemed any
19  important such that they were not kept by Irico?
20    MS. FU:  I'll ask the question again.
21  BY MS. FU:
22    Q.  Why were the electronic records deemed not
23  important such that they were not kept by Irico?
24    A.  It is the Chinese culture.  Even at this
25  moment we do not consider electronic files are

Page 109

1  important files.  Even back to the period of actual
2  period or at this moment, there is no government
3  policy or no government regulation to retain those
4  electronic documents.
5    Q.  What type of information was transmitted
6  electronically at Irico?
7    MR. LUCARELLI:  Object to form.
8  BY MS. FU:
9    Q.  Correct.
10    A.  You mean the action period?
11    Q.  Correct.
12    A.  Yes, correct.  With regard to this issue, I
13  did ask Mr. Long Tao and Mr. Wang Zhaojie, they both
14  told me they forgot what kind of or what type of
15  information was transmitted during the time that each
16  department shared one email account.  Plus the fact
17  that those early emails were -- or early transmission
18  were overwritten by the following datas.
19    Q.  Other than the shared computer, did Irico
20  use a centralized system to keep its electronic data
21  or records?
22    A.  Only electronic -- only information or das
23  would be kept in our server.  Like I said earlier,
24  during the actual period, the capacity of server is
25  very limited or very small.  So IT people told me

Page 110

1  those data created would be covered after three to
2  five days by the more updated informations or data.
3      Q.  Are you saying during the class period,
4  emails records were only kept for three -- for five
5  days?
6      A.  Where I did obtain that information from the
7  IT people, they told me it's all depends on the --
8  how many people are using our access email.  For
9  example, if Chinese New Year or May 1 or October 1
10  long weekend, then a lot of data would be accumulated
11  and then the earlier data would be covered by the
12  incoming datas.  However, this figure, three to five
13  days, is just a roughly estimation by the IT people.
14      Q.  And during the class period, Irico Group
15  never backed up its email in any way, correct?
16      A.  Yes.
17      Q.  So at Irico Group, employees never printed
18  out employee emails so they can find them later?
19      MR. LUCARELLI:  Object to form.
20      A.  From the Irico Group's perspective, we never
21  asked the employee to print out their email.  With
22  regard to whether any individual employee print out
23  their own email, I have no knowledge about that.
24  However, the person are interviewed, including
25  current employee as well as former employee, none of

Page 111

1  them have access of or have the print-out email
2  available.
3  BY MS. FU:
4      Q.  Did Irico investigate if Irico has any
5  print-out from this employee files?
6      MR. LUCARELLI:  Object to form.
7      A.  Employee files?
8  BY MS. FU:
9      Q.  Let me rephrase.
10      Did Irico investigate if Irico, within its
11  corporation, has any print-outs of those current or
12  former employees' emails?
13      A.  We never found any email being printed out
14  during the period of the action, the action period.
15      Q.  Did Group -- strike that.
16      Did Group's former or current employees back
17  up their emails with any storage media?
18      A.  We never identify any former employee who
19  back up their emails on the hard -- hard drive.
20  However, for the current employee, there is one
21  person who is a Director of the Legal Affair,
22  Mr. Yunglong, who owns a hard drive and he did back
23  up his emails on that particular hard drive.  But
24  with regard to the time frame, I have no knowledge.
25  We also have produced that evidence.

Page 112

1      Q.  Did Irico Sales Department share one email
2  address during the class period?
3      A.  I don't know about this issue.  I think
4  discussion should be addressed to Mr. Wang Zhaojie,
5  because he's from Sales Department.
6      Q.  So you did not investigate whether Irico
7  Sales Department shared one email address during the
8  class period in connection with your searches?
9      A.  No, that's not what I mean.  Actually, I did
10  consult with Mr. Wang Zhaojie and he told me that
11  there's a case like where people share one email
12  account from the department.  But for further
13  detailed information, you should check with Mr. Wang.
14      Q.  Did Irico produce any email files from this
15  shared email account at the Sales Department?
16      A.  There are no such data or evidence to
17  produce.  Like I said earlier, because of the
18  limitation of the server during the action period, so
19  those data were override by the incoming information.
20      Q.  Did Irico ever searched for -- did Irico
21  ever search for fax records?
22      A.  Yes.  We did conduct the search and those --
23  so because the fax machine in the Group is within the
24  Group's office, so we didn't find any fax during the
25  action period.  We also ask Long Tao and then he did

Page 113

1  a search and didn't find any fax during the action
2  period from the Display.
3      Q.  So Irico did not preserve its fax records?
4      MR. LUCARELLI:  Object, assumes facts not in
5  evidence.
6      A.  Because to us, this information or document
7  is very important, we will enter that document into
8  the archive room.  If it is not important, so we do
9  not intentionally keep those files.
10  BY MS. FU:
11      Q.  So fax records and electronic records are
12  deemed not important to Irico?
13      A.  No.  If the content within a particular fax
14  is very important, then it would be forward into
15  archive room.  If it is not important, then we will
16  not keep it.  And also normally we would not send
17  info -- important information via fax.  For the
18  important emails or important electronic files, we
19  will have two version -- one is electronic version;
20  the other one is hard copy version -- and we would
21  keep our -- maintain those hard copy.  Therefore, to
22  us, electronic files are not very important, because
23  we will keep those hard copy, plus the fact that the
24  government never asked us to maintain those
25  electronic files.

Page 118

```
 1              CERTIFICATE OF COURT REPORTER

 2

 3     I, Amanda Tolton, an Accredited Real-time Reporter,

 4     hereby certify that the testimony of the witness

 5     Zhang Wenkai in the foregoing transcript, numbered

 6     pages 1 through 116, taken on this 4th day of March,

 7     2019 was recorded by me in machine shorthand and was

 8     thereafter transcribed by me; and that the foregoing

 9     transcript is a true and accurate verbatim record of

10     the said testimony.

11

12     I further certify that I am not a relative, employee,

13     counsel or financially involved with any of the

14     parties to the within cause, nor am I an employee or

15     relative of any counsel for the parties, nor am I in

16     any way interested in the outcome of the within

17     cause.

18

19

20     Signed:   Amanda Tolton

21     Name:   Amanda Tolton

22     Date:   ........................

23

24

25
```

Page 119

```
 1                ERRATA SHEET

 2     Case Name:        In Re Cathode Ray Tube Antitrust
       Litigation

 3     Witness Name:     Zhang Wenkai
       Date:             03/04/2019

 4     Page/Line         From              To

 5     ____/_____       _____

 6     ____/_____       _____

 7     ____/_____       _____

 8     ____/_____       _____

 9     ____/_____       _____

10     ____/_____       _____

11     ____/_____       _____

12     ____/_____       _____

13     ____/_____       _____

14     ____/_____       _____

15     ____/_____       _____

16     ____/_____       _____

17     ____/_____       _____

18     ____/_____       _____

19     ____/_____       _____

20     ____/_____       _____

21     Subscribed and sworn to before

22     me this            day of             ,

23     2019

24     _____

25         Zhang Wenkai
```

# Exhibit 6

```
 1              UNITED STATES DISTRICT COURT
 2            NORTHERN DISTRICT OF CALIFORNIA
 3                   OAKLAND DIVISION
 4
 5   IN RE: CATHODE RAY TUBE (CRT) ) MASTER FILE NO.
     ANTITRUST LITIGATION          ) CV-07-5944 JST
 6   _____)
                                    )
 7   THIS DOCUMENT RELATES TO:      )
                                    )
 8   ALL INDIRECT PURCHASER ACTIONS )
     ALL DIRECT PURCHASER ACTIONS   )
 9                                  )
             DEFENDANTS.            )
10   _____)
11
12
13        VIDEOTAPED DEPOSITION OF WANG ZHAOJIE
14                     VOLUME I
15            TUESDAY, SEPTEMBER 20, 2022
16               MACAU S.A.R., CHINA
17
18
19
20   JOB NO. 5436453
21
22   REPORTED BY  MARK McCLURE, CRR
23             CAL CSR 12203
24
25
```

Page 1

1       TUESDAY, SEPTEMBER 20, 2022, 8:08 A.M.

2

3       THE VIDEOGRAPHER:  Good morning.          08:08:00

4       We are on the record at 8:08 a.m. on          08:08:01

5   September 20, 2022.          08:08:05

6       This is the videorecorded deposition of          08:08:07

7   Mr. Wang Zhaojie, In Re: Cathode Ray Tube Antitrust          08:08:09

8   litigation.          08:08:15

9       This case was filed in the United States          08:08:16

10  District Court, Northern District of California, Oakland          08:08:18

11  Division, Case No. CH-07-5944 JST.          08:08:22

12      Please note that this deposition is being          08:08:27

13  recorded visually, and quality of the recording depends          08:08:31

14  on the quality of camera and internet connection of          08:08:34

15  participants.          08:08:36

16      Audio and video recording will take place          08:08:38

17  unless all parties have agreed to go off the record.          08:08:40

18      My name is Ramon Peraza, here with our court          08:08:43

19  reporter, Mark McClure, and the interpreter Michelle          08:08:46

20  Tan.  We're here from Veritext Legal Solutions at the          08:08:49

21  request of counsel for the plaintiff.          08:08:52

22      At this time, counsel, please identify          08:08:55

23  yourselves for the record and state whom you represent.          08:08:56

24      MS. CAPURRO:  Good morning.  My name is Lauren          08:09:01

25  Capurro, of Trump, Alioto, Trump & Prescott and I          08:09:04

Page 6

1   represent for All Indirect Purchaser plaintiffs.          08:09:08

2       Also with me in the room is Daniel          08:09:11

3   Birkhaeuser, of Bramson, Plutzik, Mahler & Birkhaeuser,          08:09:14

4   also on behalf of All Indirect Purchaser plaintiffs.          08:09:17

5       MR. SAVERI:  Rick Saveri, on behalf of All          08:09:20

6   Direct Purchaser plaintiffs.          08:09:25

7       MR. HWU:  Good morning.  David Hwu, on behalf          08:09:30

8   of the Direct Purchaser plaintiffs.          08:09:33

9       MR. HEAPHY:  Matthew Heaphy, of Saveri &          08:09:37

10  Saveri, for Direct Purchaser plaintiffs.          08:09:39

11      MR. LUCARELLI:  Good morning.  This is Andrew          08:09:49

12  Lucarelli, Baker Botts, LLP, on behalf of the Irico          08:09:51

13  defendants and the witness.          08:09:56

14      MS. YANG:  Good morning.  This is Kaylee Yang,          08:09:57

15  from Norton Rose Fulbright LLP, on behalf of Irico          08:10:00

16  defendant and the witness.          08:10:05

17      THE VIDEOGRAPHER:  The court reporter may now          08:10:09

18  swear in the witness and the interpreter.          08:10:11

19          08:10:11

20      MICHELLE TAN and KAYLEE YANG          08:10:11

21  were sworn to interpret the Chinese language.          08:10:11

22          08:11:01

23      WANG ZHAOJIE,          08:11:01

24      having been sworn, was examined          08:11:01

25      and testified as follows:          08:11:02

Page 7

1       MS. CAPURRO:  This is Lauren Capurro.          08:11:02

2       Mr. Court Reporter, we have a check          08:11:04

3   interpreter on the plaintiff's side as well, who needs          08:11:06

4   to be sworn in.          08:11:09

5

6       DAVID HWU

7       was sworn to interpret the Chinese language.

8

9           EXAMINATION

10  BY MS. CAPURRO:

11      Q.  Good morning, Mr. Wang.  Nice to see you          08:11:32

12  again.  Thank you for traveling all of this way.          08:11:35

13      Can you please state your full name for the          08:11:38

14  record.          08:11:41

15      A.  Okay, earlier, I was instructed not to touch          08:12:05

16  the settings or anything, but right now there's          08:12:09

17  something just showed up on the screen.          08:12:13

18      Do I need to tap on that?          08:12:15

19      Q.  No, not yet.  I'll tell you when you need to          08:12:21

20  tap on something.          08:12:23

21      A.  Right now, I'm continuously being reminded by          08:12:33

22  the prompt on the screen telling me that, right now, the          08:12:43

23  host of the meeting is hosting the meeting currently.          08:12:47

24      Do I want to stay in the meeting, or something          08:12:50

25  else?          08:12:53

Page 8

1       Q.  I think you have to consent to being recorded.          08:12:54

2   I think that's what the message is that you're receiving          08:12:57

3   on your screen.          08:13:00

4       A.  That's correct.          08:13:09

5       MS. CAPURRO:  So I think he needs to click          08:13:10

6   "Yes," he consents to being recorded.          08:13:14

7       I don't know, does it say "Yes" or something          08:13:17

8   else?          08:13:19

9       MS. YANG:  Can I say something?          08:13:29

10      Because I used the Chinese version of Zoom          08:13:29

11  before, so I know where he can click.          08:13:31

12      THE INTERPRETER:  Okay.  Thank you.          08:13:31

13      (Speaking Chinese.)          08:13:31

14      MS. YANG:  So he's no longer seeing the          08:14:08

15  message on his screen.  We can proceed.          08:14:11

16      THE WITNESS:  Correct, I can.  Thank you.          08:14:13

17  BY MS. CAPURRO:          08:14:13

18      Q.  Okay.  Mr. Wang, I would like to start out by          08:14:22

19  going through some of the ground rules for the          08:14:26

20  deposition.          08:14:27

21      First, you must answer my questions audibly.          08:14:28

22  You cannot shake your head "yes" or "no."  You must say          08:14:31

23  the words "yes" or "no."          08:14:35

24      And you must wait until I finish speaking and          08:14:37

25  the translator has finished translating the question so          08:14:40

Page 9

3 (Pages 6 - 9)

1 those expenses, is that correct?                10:03:26
2       MR. LUCARELLI: Object to form.           10:03:28
3       THE WITNESS: At any rate, I'm not sure what   10:04:15
4 you're saying, but at any rate, I would go out of the   10:04:17
5 town for business. When I come back, I would apply for   10:04:21
6 reimbursement. When I do that, I would have to attach   10:04:24
7 evidences of the expenses, and then that would require   10:04:32
8 signature from relevant supervisors.           10:04:38
9 BY MS. CAPURRO:                                 10:04:38
10    Q.  Is it fair to say that you would always submit   10:04:46
11 accurate reimbursement requests and receipts to ensure   10:04:49
12 that you received full reimbursement for your travel   10:04:52
13 expenses?                                      10:04:55
14    A.  What was the question?                   10:04:57
15    Q.  In submitting the travel reimbursement     10:05:20
16 requests, you would always be accurate in making those   10:05:23
17 requests, correct?                             10:05:25
18    A.  Are you referring to the receipts?        10:05:26
19    Q.  The receipts and the requests for         10:05:44
20 reimbursement, assuming there was a form that you had to   10:05:47
21 fill out. I think that's what you testified previously.   10:05:50
22       MR. LUCARELLI: Object to form.           10:05:53
23       THE WITNESS: Your question is convoluted, but   10:06:23
24 at any rate, I just applied for the reimbursement and   10:06:26
25 then get the signature and get the reimbursement based   10:06:29

Page 42

1 on actual expenses.                            10:06:35
2 BY MS. CAPURRO:                                 10:06:43
3    Q.  How soon after you return from your business   10:06:43
4 trips would you submit your requests for reimbursement?   10:06:45
5    A.  I'm not sure.                            10:07:01
6    Q.  And since you were traveling so much as part   10:07:08
7 of your job for Sales Company, this financial           10:07:10
8 reimbursement procedure would have been something you   10:07:13
9 did on a regular basis, correct?               10:07:15
10       MR. LUCARELLI: Object to form.           10:07:31
11       THE WITNESS: Correct.                    10:07:32
12 BY MS. CAPURRO:                                10:07:32
13    Q.  Mr. Wang, during the relevant time period, did   10:07:46
14 you have your own personal work computer?      10:07:49
15    A.  You mean during this period?            10:08:08
16    Q.  Yes.                                    10:08:12
17    A.  No.                                     10:08:14
18    Q.  So you never had a laptop computer that you   10:08:15
19 would take with you on your business trips?    10:08:18
20    A.  No.                                     10:08:21
21    Q.  And you didn't have a desktop computer in your   10:08:32
22 office that you would use to work -- or for work?   10:08:36
23    A.  Since I went out of town for business often,   10:08:39
24 but the office had computers.                  10:09:02
25    Q.  How did you conduct business when you were   10:09:08

Page 43

1 traveling without a computer?                  10:09:10
2    A.  Well, first of all, I went out of town for   10:09:12
3 business quite often, so without a computer. I could do   10:10:06
4 business just the same because we had regular customers   10:10:11
5 and we would communicate over the phone. So once we   10:10:19
6 met, the deal would be sealed. So without a computer,   10:10:24
7 we would conduct the business just as well.    10:10:30
8    Q.  When did you start using email, Mr. Wang?   10:10:38
9    A.  I cannot remember clearly.              10:10:41
10    Q.  Did you not use email at all during the   10:10:51
11 relevant period?                               10:10:53
12    A.  I cannot remember clearly. I really cannot   10:10:57
13 because it has been such a long time. I started to use   10:11:11
14 email much later.                              10:11:15
15    Q.  So you would keep your business documents in   10:11:37
16 hard copy in your office, is that correct?     10:11:40
17       MR. LUCARELLI: Object to form.           10:11:42
18       THE WITNESS: Please repeat this question.   10:11:56
19       MS. CAPURRO: Would the court reporter read   10:12:14
20 back the question.                             10:12:18
21 (Record read by reporter:                      10:12:19
22       "QUESTION: So you would keep your           10:11:38
23       business documents in hard copy in your     10:11:39
24       office, is that correct?")                 10:11:41
25       THE WITNESS: I don't know specifically what   10:12:28

Page 44

1 you're referring to. However, for the most part,   10:12:34
2 documents would be printed out.                10:12:38
3 BY MS. CAPURRO:                                 10:12:38
4    Q.  Printed out from a computer, then, correct?   10:12:41
5    A.  Correct.                                10:12:44
6    Q.  But not your computer, is that right?    10:12:50
7    A.  Correct, only the company's office had the   10:12:55
8 printer.                                       10:13:06
9    Q.  I asked about the computer, not about the   10:13:11
10 printer.                                       10:13:14
11       Was there one central computer that the entire   10:13:14
12 Sales Company used and printed documents from?   10:13:19
13    A.  Based on my knowledge, that is not the case.   10:13:23
14    Q.  Well, what was the case, then, Mr. Wang,   10:13:50
15 which -- how did you print documents if there was no   10:13:53
16 computer?                                      10:13:57
17       MR. LUCARELLI: Object to form.           10:13:59
18       THE WITNESS: In the big general office that I   10:14:49
19 worked in, there were many desks. There was a computer   10:14:52
20 on one of the desks, so the documents were printed out   10:14:57
21 from that computer.                            10:15:00
22 BY MS. CAPURRO:                                10:15:05
23    Q.  Do you remember leaving an instruction in the   10:15:15
24 summer of 2008 to search for and preserve documents   10:15:16
25 relating to this case?                         10:15:21

Page 45

12 (Pages 42 - 45)

| | |
|---|---|
| 1   MS. CAPURRO:  Seven hours?          17:52:08 | 1        Certificate of Person Reading |
| 2   THE VIDEOGRAPHER:  Yes.          17:52:10 | 2           Deposition to Deponent |
| 3   MS. CAPURRO:  Okay.  Let's go off the record.    17:52:11 | 3 |
| 4  We can take this up tomorrow.          17:52:14 | 4   I, _____, whose address is |
| 5   MR. LUCARELLI:  Before we go off the record,    17:52:17 | 5  _____, |
| 6  I'd like to designate this transcript as highly    17:52:18 | 6   a person who speaks the language of the deponent, |
| 7  confidential under the protective order.    17:52:22 | 7  namely, _____, do hereby certify that on |
| 8   THE VIDEOGRAPHER:  This is the end of today's    17:52:42 | 8   the _____ day of _____, |
| 9  deposition of Mr. Wang Zhaojie.  We are off the record    17:52:44 | 9  20____, I did translate the within deposition from English |
| 10  at 5:52 p.m.  The total number of media used was 13 and    17:52:47 | 10  into the _____ language, reading same |
| 11  will be retained by Veritext.  Thank you.    17:52:53 | 11  to the deponent in his/her native tongue to the best of my |
| 12   (The deposition concluded at 5:52 p.m.,, | 12  ability; that all corrections and changes requested by |
| 13   China Standard Time.) | 13  the deponent were made and initialed by the deponent; |
| 14   --oOo-- | 14   That upon completion of said reading the |
| 15 | 15  deponent did confirm to me that he/she had understood |
| 16 | 16   the reading. |
| 17 | 17 |
| 18 | 18   _____ |
| 19 | 19   Reader/Interpreter |
| 20 | 20 |
| 21 | 21 |
| 22 | 22 |
| 23 | 23 |
| 24 | 24 |
| 25                                 Page 158 | 25                                 Page 160 |

| | |
|---|---|
| 1        DEPONENT'S DECLARATION | 1  STATE OF CALIFORNIA        ) |
| 2 | 2  COUNTY OF SANTA BARBARA  )  ss. |
| 3   I, WANG ZHAOJIE, hereby declare: | 3 |
| 4   I have read the foregoing deposition | 4   I, Mark McClure, C.S.R. No. 12203, in and for |
| 5  transcript and identify it as my own and approve same. | 5  the State of California, do hereby certify: |
| 6   I declare under penalty of perjury under the | 6   That prior to being examined, the witness |
| 7  laws of the State of California that the foregoing | 7  named in the foregoing deposition was by me duly sworn |
| 8  testimony is true and correct. | 8  to testify to the truth, the whole truth, and nothing |
| 9   Dated this _____ day of _____, 2022, | 9  but the truth; |
| 10  at _____, California. | 10   That said deposition was taken down by me in |
| 11 | 11  shorthand at the time and place therein named and |
| 12 | 12  thereafter reduced to typewriting under my direction, |
| 13   _____ | 13  and the same is a true, correct, and complete transcript |
| 14   WANG ZHAOJIE | 14  of said proceedings; |
| 15 | 15   That if the foregoing pertains to the original |
| 16 | 16  transcript of a deposition in a Federal Case, before |
| 17 | 17  completion of the proceedings, review of the transcript |
| 18 | 18  { } was {X} was not required. |
| 19 | 19   I further certify that I am not interested in |
| 20 | 20  the event of the action. |
| 21 | 21   Witness my hand this 3rd day of October, 2022. |
| 22 | 22 |
| 23 | 23 |
| 24 | 24   Certified Shorthand Reporter |
| 25                                 Page 159 | 25   State of California |
| | 25   CSR No. 12203                     Page 161 |

41 (Pages 158 - 161)

# Exhibit 7

1              UNITED STATES DISTRICT COURT
2             NORTHERN DISTRICT OF CALIFORNIA
3                   OAKLAND DIVISION
4
5  IN RE: CATHODE RAY TUBE (CRT)  ) MASTER FILE NO.
   ANTITRUST LITIGATION           ) CV-07-5944 JST
6  _____)
                                   )
7  THIS DOCUMENT RELATES TO:       )
                                   )
8  ALL INDIRECT PURCHASER ACTIONS  )
   ALL DIRECT PURCHASER ACTIONS    )
9                                  )
              DEFENDANTS.          )
10 _____)
11
12
13
14
15        VIDEOTAPED DEPOSITION OF YAN YUNLONG
16                     VOLUME I
17            TUESDAY, SEPTEMBER 27, 2022
18              MACAU S.A.R., CHINA
19
20
21
   FILE NO.  SF 5436473
22
   REPORTED BY  MARK McCLURE, CRR
23            CAL CSR 12203
24
25

                                              Page 1

```
 1    with Baker Botts, LLP, representing Irico defendants and      08:07

 2    the witness.                                                  08:07

 3            MS. YANG:  This is Kaylee Yang.  I'm having          08:07

 4    some connection issues with my video, and I'm with           08:07

 5    Norton Rose Fulbright, on behalf of the defendants,          08:07

 6    Irico defendants and the witness.                            08:07

 7

 8            AMANDA LIN, KAYLEE YANG and DAVID HWU

 9         were sworn to interpret the Chinese language.

10                                                                 08:08

11                       YAN YUNLONG                               08:08

12              having been sworn, was examined

13                  and testified as follows:

14

15                       EXAMINATION

16    BY MR. BIRKHAEUSER:

17        Q.   Good morning, again, at least your time,           08:08

18    Mr. Yan.                                                     08:08

19            And again, my name is Dan Birkhaeuser and I'm       08:08

20    going to be asking you some questions first.                08:08

21        A.   Okay.                                               08:09

22        Q.   I would like to begin by asking you what you       08:09

23    did to prepare for this deposition.                          08:09

24            Can you tell me what you did to prepare?            08:09

25        A.   My attorney or attorneys did a brief               08:09
```

Page 9

| | | |
|---|---|---|
| 1 | Q.   Did the company use any sort of networked | 11:12 |
| 2 | instant message system to communicate? | 11:12 |
| 3 | A.   No. | 11:12 |
| 4 | Q.   So employees would communicate with each other | 11:12 |
| 5 | by email but not through any other program? | 11:13 |
| 6 | MR. CARTER:  Object to form. | 11:13 |
| 7 | THE WITNESS:  Usually, we would communicate | 11:13 |
| 8 | face-to-face or over the phone, because in 2008, email | 11:13 |
| 9 | was quite a new communication tool and people were not | 11:13 |
| 10 | used to using it, so email communication would be rare. | 11:13 |
| 11 | Also, at that time, computers were often seen, | 11:14 |
| 12 | and we were not able to issue one computer to one | 11:14 |
| 13 | employee. | 11:14 |
| 14 | BY MR. BIRKHAEUSER: | |
| 15 | Q.   What was the purpose of the collection of data | 11:14 |
| 16 | that you were doing at the Enterprise Management | 11:14 |
| 17 | Department? | 11:14 |
| 18 | A.   First of all, I was not responsible for | 11:14 |
| 19 | collecting such data and information. | 11:14 |
| 20 | Q.   I apologize. | 11:14 |
| 21 | When I said "you" in that question, I really | 11:14 |
| 22 | meant the Enterprise Management Department, so let me | 11:15 |
| 23 | rephrase. | 11:15 |
| 24 | What was the purpose of having the Enterprise | 11:15 |
| 25 | Management Department collect the data that you | 11:15 |

Page 65

```
1    the complaint other than this report by the person that       15:21

2    Irico contracted with?                                        15:21

3          MR. CARTER:  Object to form.                            15:21

4          THE WITNESS:  No.                                       15:22

5    BY MR. BIRKHAEUSER:                                           15:22

6       Q.   At the time you were investigating the facts          15:22

7    of the complaint, did any Irico employee tell you that        15:22

8    they had attended meetings with Irico's competitors?          15:22

9       A.   They did.                                             15:22

10      Q.   And what kind of investigation did you do as           15:23

11   to the meetings that Irico had with its competitors?          15:23

12      A.   We did not conduct any special investigation.          15:23

13   We simply confirmed whether or not there was such a           15:23

14   fact.                                                         15:23

15      Q.   Who told you that Irico employees attended            15:23

16   meetings with Irico's competitors?                            15:23

17      A.   At that time, it was Liu Maihai, Shen Xiaolin,         15:23

18   and there was another person who used to work for CEIEC,      15:24

19   and that person's name was Liang Yuan.  That's it.            15:24

20      Q.   Did Shen Xiaolin tell you that Mr. Shen had            15:25

21   attended a meeting of CEOs and presidents of CRT              15:25

22   competitors in Shanghai in November of 2006?                  15:25

23          MR. CARTER:  Object to form.                            15:25

24          THE WITNESS:  It was not as detailed as to             15:25

25   exactly which meeting.                                        15:25
```

Page 117

```
 1    BY MR. BIRKHAEUSER:
 2         Q.   Did anyone tell you how many meetings that        15:25
 3    Irico employees had had with Irico's competitors?           15:25
 4         A.   No.                                                15:26
 5         Q.   Were you preliminary responsible for gathering    15:26
 6    information to give to Pillsbury after you were served      15:26
 7    with the complaint?                                         15:26
 8              MR. CARTER:   Object to form.                      15:26
 9              THE WITNESS:   No.  Actually, after we were        15:27
10    served the complaint, we did several things.                15:27
11              The first one was -- we formed an internal        15:27
12    working group to lead the work of conducting the            15:28
13    investigation with respect to this litigation.  It was a    15:28
14    task force working group.                                   15:28
15              Secondly, we engaged Pillsbury as the counsel     15:28
16    to represent us, but at that time several law firms were    15:28
17    pitching us for the case, and we later talked with them     15:28
18    and engaged Pillsbury as our outside counsel.               15:28
19              The third one we did -- the third thing we did    15:28
20    was that we conducted an investigation to see if we         15:28
21    actually sold any products in the U.S. market, and the      15:28
22    information we got was no.  So we asked Pillsbury to try     15:28
23    to talk and reason with the plaintiffs that it was a        15:28
24    mistake to sue Irico, and we asked them to remove us        15:28
25    from the defendants.                                        15:28
```

Page 118

| | | |
|---|---|---|
| 1 | The fourth thing that we did was to notify all | 15:29 |
| 2 | the relevant people based on the request from Pillsbury, | 15:29 |
| 3 | and those people were asked to preserve all the | 15:29 |
| 4 | information and documents related to the case. | 15:29 |
| 5 | During that process, Pillsbury related a very | 15:30 |
| 6 | important piece of information to us.  It told us that | 15:30 |
| 7 | it was actually a class action and the plaintiffs in the | 15:30 |
| 8 | case were trying to form a group of plaintiffs to | 15:30 |
| 9 | conduct the litigation, and the defendants were also | 15:30 |
| 10 | trying to form a group, and Pillsbury's advice to us was | 15:30 |
| 11 | that we join the defendants group.  So, internally, in | 15:30 |
| 12 | the company, we also held some discussions on that | 15:30 |
| 13 | advice. | 15:30 |
| 14 | And the company held several rounds of | 15:31 |
| 15 | discussions on that issue in order to understand the | 15:31 |
| 16 | situation, but the situation with Irico is different | 15:31 |
| 17 | from that with other companies in the defendants' group. | 15:31 |
| 18 | Those other companies were big multinational companies | 15:31 |
| 19 | and the U.S. market was their main market.  They not | 15:31 |
| 20 | only had CRT products in the U.S. market, they also had | 15:31 |
| 21 | the TV whole sets in the U.S. market, and Irico, at that | 15:31 |
| 22 | time, had neither, so it was to the disadvantage of | 15:32 |
| 23 | Irico to join and form the defendants group. | 15:32 |
| 24 | And also, at that time, the U.S. government | 15:32 |
| 25 | was conducting, actually, criminal investigations in the | 15:32 |

Page 119

```
 1    antitrust litigation proceeding against those companies.      15:33

 2    Some of them already even pleaded guilty, and Irico           15:33

 3    conducted some self-evaluation, and we believed that we       15:33

 4    have not done anything to violate the antitrust law in        15:33

 5    the U.S.                                                      15:33

 6           So for us to join and form the defendants             15:33

 7    group would be what the Chinese would say "down the          15:33

 8    drain with them," and we rejected the proposal or            15:33

 9    suggestion from Pillsbury.                                   15:33

10           We also knew that it would be a long process          15:33

11    for the plaintiffs and the defendants to form the           15:34

12    litigation groups and to actually go through the            15:34

13    proceeding, so we were waiting for the plaintiffs to        15:34

14    file an independent, separate lawsuit against Irico, and    15:34

15    we wanted to wait until that time before we conducted       15:34

16    any relevant investigation.                                 15:34

17           It would be unnecessary or pointless for us to       15:34

18    conduct any investigation before a separate or             15:34

19    independent lawsuit was filed against us by the            15:34

20    plaintiffs.                                                 15:35

21           That's it.                                           15:35

22           MR. BIRKHAEUSER:  Okay.  I'm going to move to         15:35

23    strike that answer.                                         15:35

24    BY MR. BIRKHAEUSER:

25       Q.   Let me ask my question again, and if you could      15:35
```

Page 120

1    STATE OF CALIFORNIA        )

2    COUNTY OF SANTA BARBARA  )    ss.

3

4        I, Mark McClure, C.S.R. No. 12203, in and for

5    the State of California, do hereby certify:

6            That prior to being examined, the witness

7    named in the foregoing deposition was by me duly sworn

8    to testify to the truth, the whole truth, and nothing

9    but the truth;

10           That said deposition was taken down by me in

11   shorthand at the time and place therein named and

12   thereafter reduced to typewriting under my direction,

13   and the same is a true, correct, and complete transcript

14   of said proceedings;

15           That if the foregoing pertains to the original

16   transcript of a deposition in a Federal Case, before

17   completion of the proceedings, review of the transcript

18   { } was { } was not required.

19           I further certify that I am not interested in

20   the event of the action.

21           Witness my hand this 12 day of October,

22   2022.

23

24           Certified Shorthand Reporter
             State of California

25           CSR No. 12203

                                                    Page 146

```
 1              UNITED STATES DISTRICT COURT
 2             NORTHERN DISTRICT OF CALIFORNIA
 3                   OAKLAND DIVISION
 4
 5   IN RE: CATHODE RAY TUBE (CRT)  ) MASTER FILE NO.
     ANTITRUST LITIGATION           ) CV-07-5944 JST
 6   _____)
                                    )
 7   THIS DOCUMENT RELATES TO:      )
                                    )
 8   ALL INDIRECT PURCHASER ACTIONS )
     ALL DIRECT PURCHASER ACTIONS   )
 9                                  )
             DEFENDANTS.            )
10   _____)
11
12
13
14
15        VIDEOTAPED DEPOSITION OF YAN YUNLONG
16                     VOLUME II
17           WEDNESDAY, SEPTEMBER 28, 2022
18               MACAU S.A.R., CHINA
19
20
21
22   FILE NO.  SF 5436476
23   REPORTED BY  MARK McCLURE, CRR
24              CAL CSR 12203
25
```

Page 150

```
 1              WEDNESDAY, SEPTEMBER 28, 2022, 8:06 A.M.

 2                                                      08:06

 3              THE VIDEOGRAPHER:  We're on the record.   08:06

 4              It's 8:06 a.m., China time, on September 28,   08:07

 5     2022.                                            08:07

 6              This is the deposition of Yan Yunlong, Volume   08:07

 7     II.  We're here in the CRT Antitrust Litigation.   08:07

 8              I'm John McDonell, the videographer with   08:07

 9     Veritext.  Before the court reporter swears the   08:07

10     witness -- or actually, I'll hand it to the reporter now   08:07

11     to deal with the instructions.                   08:07

12

13              AMANDA LIN, KAYLEE YANG and DAVID HWU

14           were sworn to interpret the Chinese language.

15

16                      YAN YUNLONG,

17              having been sworn, was examined

18                 and testified as follows:

19

20              THE VIDEOGRAPHER:  Would you like to begin   08:08

21     with appearances?                                08:08

22              MR. BIRKHAEUSER:  For the plaintiffs, my name   08:08

23     is Dan Birkhaeuser.  I'm with Bramson, Plutzik &   08:08

24     Birkhaeuser, and I represent the Indirect Purchaser   08:07

25     plaintiffs in this case.                         08:08
```

Page 156

1    STATE OF CALIFORNIA        )

2    COUNTY OF SANTA BARBARA  )   ss.

3

4        I, Mark McClure, C.S.R. No. 12203, in and for

5    the State of California, do hereby certify:

6        That prior to being examined, the witness

7    named in the foregoing deposition was by me duly sworn

8    to testify to the truth, the whole truth, and nothing

9    but the truth;

10       That said deposition was taken down by me in

11   shorthand at the time and place therein named and

12   thereafter reduced to typewriting under my direction,

13   and the same is a true, correct, and complete transcript

14   of said proceedings;

15       That if the foregoing pertains to the original

16   transcript of a deposition in a Federal Case, before

17   completion of the proceedings, review of the transcript

18   { } was {X} was not required.

19       I further certify that I am not interested in

20   the event of the action.

21       Witness my hand this 12th day of October,

22   2022.

23

24            Certified Shorthand Reporter
              State of California

25            CSR No. 12203

                                        Page 310

# Exhibit 8

1              UNITED STATES DISTRICT COURT

2            NORTHERN DISTRICT OF CALIFORNIA

3                   OAKLAND DIVISION

4

5   IN RE: CATHODE RAY TUBE (CRT)  ) MASTER FILE NO.

    ANTITRUST LITIGATION           ) CV-07-5944 JST

6   _____)

                                   )

7   THIS DOCUMENT RELATES TO:      )

                                   )

8   ALL INDIRECT PURCHASER ACTIONS )

    ALL DIRECT PURCHASER ACTIONS   )

9                                  )

10            DEFENDANTS.          )

    _____)

11

12          VIDEOTAPED DEPOSITION OF LI MIAO

13                    VOLUME I

14              TUESDAY, MARCH 7, 2023

15               HONG KONG SAR, CHINA

16

17

18

19

20

21

22

23   JOB NO.   5759542

24   REPORTED BY  MARK McCLURE, CRR

25            CAL CSR 12203

                                        Page 1

```
 1              I N D E X
 2            E X H I B I T S
 3 NUMBER        DESCRIPTION        PAGE
 4 EXHIBIT 8636 MEMO RE: UPCOMING VISIT TO      107
   MITSUBISHI ELECTRIC BY IRICO
 5 GROUP DEPUTY GENERAL MANAGER
   ZHANG SHAOWEN - HDP-CRT00047436
 6 - HDP-CRT00047437 - 8 PAGES
 7 EXHIBIT 8637 IRICO VISIT AND MEETING REQUEST  110
   - HDP-CRT00047436 -
 8 HDP-CRT00047437 - 8 PAGES
 9 EXHIBIT 8638 MEETING IN THE CONFERENCE ROOM   120
   OF IRICO IMPORT AND EXPORT CO.,
10 LTD. WITH MITSUBISHI - RE:
   DISPUTE OVER DEFECTIVE ELECTRON
11 GUNS - ME00001413 - ME00001419 -
   9 PAGES
12
13
14     PREVIOUSLY MARKED EXHIBIT
15          NUMBER   PAGE
16          8564    116
17
18
19
20
21
22
23
24
25
```
Page 6

---

```
 1 behalf of the Direct Purchaser plaintiffs.         15:56:23
 2     MR. SAVERI:  Rick Saveri, on behalf of the     15:56:27
 3 Direct Purchaser plaintiffs.                        15:56:31
 4     MR. HEAPHY:  Matthew Heaphy, Saveri & Saveri,   15:56:34
 5 on behalf of Direct Purchaser plaintiffs.           15:56:35
 6     MR. BIRKHAEUSER:  I'm Dan Birkhaeuser,          15:56:37
 7 Bramson, Plutzik, Mahler & Birkhaeuser, on behalf of the  15:56:40
 8 Indirect Purchaser plaintiffs.                      15:56:42
 9     MS. CAPURRO:  Good morning.  This is Lauren     15:56:45
10 Capurro, Trump, Alioto, Trump & Prescott, for the   15:56:46
11 Indirect Purchaser plaintiffs.                      15:56:49
12     MR. CARTER:  Good morning.  Tom Carter, from    15:56:53
13 Baker Botts LLP, for Irico defendants and the witness.   15:56:54
14     MR. WERBEL:  Evan Werbel, from Baker Botts      15:56:59
15 LLP, for Irico defendants and the witness.          15:57:02
16     MS. YANG:  Good morning.  Kaylee Yang, from     15:57:09
17 Norton, Rose, Fulbright, LLP, on behalf of Irico    15:57:11
18 defendants and the witness.                         15:57:14
19     VIDEOGRAPHER:  The court reporter may swear     15:57:20
20 the witness and the interpreter.                    15:57:22
21                                                     15:58:00
22          AMANDA LIN                                 15:58:00
23 was sworn to interpret the Chinese language.        11:04:08
24                                                     11:04:08
25                                                     11:06:32
```
Page 8

---

```
 1     TUESDAY, MARCH 7, 2023, 7:55 A.M.
 2        HONG KONG SAR, CHINA
 3
 4     VIDEOGRAPHER:  Good morning.  We're on the      15:55:02
 5 record at 7:55 a.m., on March 7th, 2023.            15:55:04
 6     This is the videorecorded deposition of         15:55:10
 7 Mr. Miao Li, In Re: Cathode Ray Tube (CRT) Antitrust  15:55:13
 8 Litigation.  This case was filed in the United States   15:55:19
 9 District Court for the Northern District of California,  15:55:23
10 Oakland Division.  Master File No. CV-07-5944 JST.  15:55:27
11     Please note that this deposition is being       15:55:33
12 recorded remotely.  Quality of the recording depends on  15:55:36
13 the quality of the camera and internet connection of   15:55:39
14 participants.                                       15:55:43
15     Audio and video recording will continue to      15:55:44
16 take place unless all parties agree to go off the   15:55:46
17 record.                                             15:55:49
18     My name is Ramon Peraza, here with our court    15:55:49
19 reporter Mark McClure and our interpreter Amanda Lin.   15:55:52
20 We're here from Veritext Legal Solutions.           15:55:57
21     At this time, counsel, please identify          15:56:01
22 yourselves for the record, and state whom you represent.  15:56:01
23     MR. RUSHING:  Good morning.  Geoff Rushing on   15:56:06
24 behalf of the Direct Purchaser plaintiffs.          15:56:09
25     MR. HWU:  David Hwu, from Saveri & Saveri, on   15:56:21
```
Page 7

---

```
 1           LI MIAO,
 2     having been previously sworn, was examined
 3          and testified as follows:
 4
 5          EXAMINATION
 6 BY MR. RUSHING:
 7   Q.  Thank you, Mr. Li.                            15:58:04
 8       I hope I'm addressing you properly.  If not,  15:58:07
 9 please correct me and I'll do my best to address you  15:58:15
10 properly.                                           15:58:19
11   A.  Okay.                                         15:58:31
12   Q.  So I'll begin by just giving a brief          15:58:34
13 description of this process.  I assume that you are  15:58:36
14 somewhat familiar with it, but it's better for me to do  15:58:40
15 it quickly on the record as well.                   15:58:44
16       Have you ever had your deposition taken       15:58:47
17 before?                                             15:58:51
18   A.  No.                                           15:58:52
19   Q.  Okay.  It's fairly straightforward.  I ask the  15:59:10
20 questions today -- there may be other attorneys who ask  15:59:16
21 questions as well -- and you answer them.           15:59:21
22       Do you understand that?                       15:59:39
23   A.  I somewhat don't quite understand.            15:59:41
24   Q.  Okay.  What don't you understand?             15:59:49
25   A.  I don't know the identity of the attorney who  15:59:51
```
Page 9

---

3 (Pages 6 - 9)

1 other -- a diary, some other means of keeping track of     21:58:12
2 your appointments?     21:58:17
3     MR. CARTER:  Object to form.     21:58:33
4     THE WITNESS:  I'm a lazy person.  I don't     21:58:51
5 quite take notes.     21:58:53
6 BY MR. RUSHING:     21:58:54
7   Q.  So the answer is "no"?     21:58:54
8     MR. CARTER:  Object to form.     21:58:59
9     THE WITNESS:  That's correct.     21:59:02
10 BY MR. RUSHING:     21:59:02
11   Q.  So how did you keep track of your     21:59:03
12 appointments?     21:59:05
13   A.  The office workers will follow up on those.     21:59:16
14   Q.  So the office workers, then, kept a calendar     21:59:21
15 for you.     21:59:24
16     Is that your testimony?     21:59:25
17     MR. CARTER:  Object to form.     21:59:32
18     THE WITNESS:  I'm not sure.     21:59:36
19 BY MR. RUSHING:     21:59:36
20   Q.  But if you had made an appointment to meet     21:59:56
21 someone on a certain day, you relied on your office     22:00:08
22 workers to tell you in advance of that so that you would     22:00:14
23 remember to go to that meeting, is that correct?     22:00:18
24   A.  Correct.     22:00:22
25   Q.  And how did they keep track of your     22:00:39
Page 94

1 appointments?     22:00:44
2     MR. CARTER:  Object to form.     22:00:48
3     THE WITNESS:  I never asked them.     22:00:59
4 BY MR. RUSHING:     22:00:59
5   Q.  But it was -- did they -- was it part of their     22:01:08
6 job to do that for you, though?     22:01:26
7     MR. CARTER:  Object to form.     22:01:28
8     THE WITNESS:  Yes.     22:01:41
9 BY MR. RUSHING:     22:01:41
10   Q.  And so, when you got a new assistant or,     22:01:48
11 excuse me, office worker, did you explain to that person     22:01:52
12 their responsibility to keep track of your appointments     22:01:58
13 for you?     22:02:01
14     MR. CARTER:  Object to form.     22:02:02
15     THE WITNESS:  I've never reminded them.     22:02:21
16 BY MR. RUSHING:     22:02:21
17   Q.  And how did they advise you, when you were     22:02:34
18 vice president of Electronics, of your upcoming     22:02:38
19 appointments?     22:02:42
20   A.  Face-to-face.     22:02:42
21   Q.  Did you have a computer -- did you have your     22:02:59
22 own office when you were vice president of Electronics?     22:03:03
23   A.  Yes.     22:03:07
24   Q.  Did you have a computer in your office that     22:03:13
25 you used for work?     22:03:15
Page 95

1   A.  I had a computer.     22:03:16
2   Q.  In your office?     22:03:26
3   A.  Yes.     22:03:31
4   Q.  And could you receive emails on that computer?     22:03:32
5   A.  I've never reviewed emails on that computer.     22:03:44
6   Q.  Did you review your emails on some other     22:03:51
7 computer at that time?     22:03:53
8   A.  I rarely review emails.     22:03:54
9   Q.  When you say -- are you talking about that     22:04:12
10 time frame or are you talking about now?     22:04:14
11   A.  From the past until now, I rarely review     22:04:16
12 emails.     22:04:41
13   Q.  Can you get emails on your phone right now?     22:04:48
14   A.  I've never checked emails on my phone.     22:04:51
15   Q.  Do you use texts?     22:05:25
16   A.  I use texts.     22:05:26
17   Q.  Did you use texts when you were vice president     22:05:33
18 of Irico Electronics?     22:05:36
19   A.  I think I used texts at that time.     22:05:38
20   Q.  Did your office workers ever use texts to     22:05:51
21 communicate with you about your schedule?     22:05:55
22   A.  Yes.     22:05:56
23   Q.  And so, you testified that sometimes they told     22:06:08
24 you face-to-face about your appointments, but in     22:06:16
25 addition, you're now saying they also used texts, is     22:06:20
Page 96

1 that correct?     22:06:23
2     MR. CARTER:  Object to form.     22:06:42
3     THE WITNESS:  Yes, but for the majority of the     22:06:47
4 time, they would tell me face-to-face.     22:06:48
5 BY MR. RUSHING:     22:06:48
6   Q.  Did they ever do both?     22:06:52
7   A.  It depends on their own judgment.     22:07:05
8   Q.  Do you have any of those texts from your     22:07:08
9 office workers about your schedule from the time you     22:07:12
10 were vice president of Irico Electronics?     22:07:16
11     MR. CARTER:  Object to form.     22:07:33
12     THE WITNESS:  Are you asking me if I still     22:07:41
13 have those texts from before?     22:07:42
14 BY MR. RUSHING:     22:07:42
15   Q.  Yes.     22:07:45
16   A.  No.  I don't even remember how many phones     22:07:54
17 I've had since then.     22:07:56
18   Q.  So what happened to the texts?     22:08:03
19   A.  What do you mean by "what happened to the     22:08:11
20 texts"?     22:08:14
21   Q.  I mean, where did they go?     22:08:15
22     MR. CARTER:  Object to form.     22:08:27
23     THE WITNESS:  Those texts were on my past     22:08:28
24 phones, so if I scrapped them, they are gone.     22:08:31
25 BY MR. RUSHING:     22:08:35
Page 97

25 (Pages 94 - 97)

DEPONENT'S DECLARATION

1

2

3      I, LI MIAO, hereby declare:

4      I have read the foregoing deposition

5  transcript and identify it as my own and approve same.

6      I declare under penalty of perjury under the

7  laws of the State of California that the foregoing

8  testimony is true and correct.

9      Dated this _____ day of _____, 2023,

10  at _____, California.

11

12

13  _____

14  LI MIAO

15

16

17

18

19

20

21

22

23

24

25

Page 122

---

1  Mr. Rick Saveri, Esq.

2  RICK@SAVERI.COM

3              March 17, 2023

4  IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION

5  March 7, 2023, Li Miao, Volume I (JOB NO. 5759542)

6  The above-referenced transcript has been

7  completed by Veritext Legal Solutions and

8  review of the transcript is being handled as follows:

9  __ Per CA State Code (CCP 2025.520 (a)-(e)) – Contact Veritext

10  to schedule a time to review the original transcript at

11  a Veritext office.

12  __ Per CA State Code (CCP 2025.520 (a)-(e)) – Locked .PDF

13  Transcript - The witness should review the transcript and

14  make any necessary corrections on the errata pages included

15  below, notating the page and line number of the corrections.

16  The witness should then sign and date the errata and penalty

17  of perjury pages and return the completed pages to all

18  appearing counsel within the period of time determined at

19  the deposition or provided by the Code of Civil Procedure.

20  __ Waiving the CA Code of Civil Procedure per Stipulation of

21  Counsel - Original transcript to be released for signature

22  as determined at the deposition.

23  __ Signature Waived – Reading & Signature was waived at the

24  time of the deposition.

25

Page 124

---

1  STATE OF CALIFORNIA        )

2  COUNTY OF SANTA BARBARA  )  ss.

3

4      I, Mark McClure, C.S.R. No. 12203, in and for

5  the State of California, do hereby certify:

6      That prior to being examined, the witness

7  named in the foregoing deposition was by me duly sworn

8  to testify to the truth, the whole truth, and nothing

9  but the truth;

10      That said deposition was taken down by me in

11  shorthand at the time and place therein named and

12  thereafter reduced to typewriting under my direction,

13  and the same is a true, correct, and complete transcript

14  of said proceedings;

15      That if the foregoing pertains to the original

16  transcript of a deposition in a Federal Case, before

17  completion of the proceedings, review of the transcript

18  { } was {X} was not required.

19      I further certify that I am not interested in

20  the event of the action.

21      Witnessed this 17th day of March, 2023.

22

23

24      Certified Shorthand Reporter

        State of California

25      CSR No. 12203

Page 123

---

1  __ Federal R&S Requested (FRCP 30(e)(1)(B)) – Locked .PDF

2  Transcript - The witness should review the transcript and

3  make any necessary corrections on the errata pages included

4  below, notating the page and line number of the corrections.

5  The witness should then sign and date the errata and penalty

6  of perjury pages and return the completed pages to all

7  appearing counsel within the period of time determined at

8  the deposition or provided by the Federal Rules.

9  _X_ Federal R&S Not Requested - Reading & Signature was not

10  requested before the completion of the deposition.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 125

32 (Pages 122 - 125)

# Exhibit 9

1  BAKER BOTTS L.L.P.
   John M. Taladay (*pro hac vice*)
2  Evan J. Werbel (*pro hac vice*)
   Thomas E. Carter (*pro hac vice*)
3  Andrew L. Lucarelli (*pro hac vice*)
   700 K Street, N.W.
4  Washington, D.C. 20001
   (202)-639-7700
5  (202)-639-7890 (fax)
   Email: john.taladay@bakerbotts.com
6          evan.werbel@bakerbotts.com
           tom.carter@bakerbotts.com
7          drew.lucarelli@bakerbotts.com

8  Jonathan Shapiro (State Bar No. 257199)
   101 California Street, Suite 3600
9  San Francisco, California 94111
   (415) 291-6200
10 (415) 291-6300 (fax)
11 Email: jonathan.shapiro@bakerbotts.com

12 *Attorneys for Defendants*
   *IRICO GROUP CORP. and*
13 *IRICO DISPLAY DEVICES CO., LTD.*

14

15              **UNITED STATES DISTRICT COURT**

16            **NORTHERN DISTRICT OF CALIFORNIA**

17                  **OAKLAND DIVISION**

18

19 IN RE: CATHODE RAY TUBE (CRT)      Master File No. 4:07-cv-05944-JST
   ANTITRUST LITIGATION               (N.D. Cal.)
20
                                      MDL No. 1917
21
   This Document Relates to:         **IRICO DEFENDANTS' FIFTH**
22                                    **SUPPLEMENTAL OBJECTIONS**
   ALL DIRECT PURCHASER ACTIONS      **AND RESPONSES TO DIRECT**
23                                    **PURCHASER PLAINTIFFS' FIRST**
                                      **SET OF INTERROGATORIES**
24

25 PROPOUNDING PARTY:      Direct Purchaser Plaintiffs

26 RESPONDING PARTIES:     Irico Group Corporation
                           Irico Display Devices Co., Ltd.
27
   SET NUMBER:             One
28

1    Pursuant to Federal Rules of Civil Procedure 26 and 33, Irico Group Corporation and Irico
2    Display Devices Co, Ltd. (collectively, "Irico" or "Irico Defendants") hereby provides this
3    supplemental response to the Direct Purchaser Plaintiffs' ("Plaintiff") First Set of Interrogatories,
4    dated March 12, 2010 ("Interrogatories"). Irico reserves the right to amend or supplement these
5    Objections and Responses (the "Responses") to the extent allowed by the Federal Rules of Civil
6    Procedure and the Local Rules of Practice in Civil Proceedings before the United States District
7    Court for the Northern District of California ("Local Rules"). Subject to and without waiving any
8    of Irico's General and Specific Objections as set forth below, Irico is willing to meet and confer
9    with Plaintiff regarding such General and Specific Objections.

10    The following Responses are made only for purposes of this case. The Responses are
11    subject to all objections as to relevance, materiality and admissibility, and to any and all
12    objections on any ground that would require exclusion of any response if it were introduced in
13    court. All evidentiary objections and grounds are expressly reserved.

14    These Responses are subject to the provisions of the Stipulated Protective Order issued by
15    the Court on June 18, 2008 ("Protective Order"). Irico's Responses are hereby designated
16    "Confidential" in accordance with the provisions of the Protective Order.

17                              **GENERAL OBJECTIONS**

18    Irico makes the following General Objections to Plaintiff's Interrogatories:

19    1.    Irico's Responses are based upon information available to and located by Irico as
20    of the date of service of these Responses. In responding to Plaintiff's Interrogatories, Irico states
21    that it has conducted, or will conduct, a diligent search, reasonable in scope, of those files and
22    records in its possession, custody, or control believed to likely contain information responsive to
23    Plaintiff's Interrogatories.

24    2.    No express, incidental, or implied admissions are intended by these Responses and
25    should not be read or construed as such.

26    3.    Irico does not intend, and its Responses should not be construed as, an agreement
27    or acquiescence with any characterization of fact, assumption, or conclusion of law contained in
28    or implied by the Interrogatories.

4.      To the extent that Irico responds to Plaintiff's Interrogatories by stating that Irico will produce or make available for examination responsive information or documents, Irico does not represent that any such information or documents exist. Irico will make a good faith and reasonable attempt to ascertain whether information responsive to Plaintiff's Interrogatories exists and is properly producible, and will produce or make available for examination non-privileged responsive materials to the extent any are located during the course of a reasonable search.

5.      Irico objects to Plaintiff's Interrogatories to the extent that they are overly broad, unduly burdensome, oppressive, and duplicative to the extent that they seek information or documents that are already in the possession, custody, or control of Plaintiff.

6.      Irico objects to Plaintiff's Interrogatories to the extent that they seek to impose obligations on Irico beyond those of the Federal Rules of Civil Procedure, the Local Rules, or any Order of this Court.

7.      Irico objects to Plaintiff's Interrogatories to the extent they seek information that is not relevant or disproportionate to the needs of the case.

8.      Irico objects to Plaintiff's Interrogatories to the extent that they are vague, ambiguous, or susceptible to more than one interpretation. Irico shall attempt to construe such vague or ambiguous Interrogatories so as to provide for the production of responsive information that is proportionate to the needs of the case. If Plaintiff subsequently asserts an interpretation of any Interrogatory that differs from Irico's understanding, Irico reserves the right to supplement or amend its Responses.

9.      Irico objects to Plaintiff's Interrogatories to the extent that they contain terms that are insufficiently or imprecisely defined. Irico shall attempt to construe such vague or ambiguous Interrogatories so as to provide for the production of responsive information that is proportionate to the needs of the case.

10.     Irico objects to Plaintiff's Interrogatories to the extent that they seek information that is protected from disclosure by the attorney-client privilege, work product doctrine, joint defense or common interest privilege, self-evaluative privilege, or any other applicable privilege or immunity. Irico will provide only information that it believes to be non-privileged and

otherwise properly discoverable. Nothing in Irico's responses is intended nor should be construed as a waiver of any such privilege or immunity. The inadvertent or mistaken provision of any information or responsive documents subject to any such doctrine, privilege, protection or immunity from production shall not constitute a general, inadvertent, implicit, subject-matter, separate, independent or other waiver of such doctrine, privilege, protection or immunity from production.

11. Irico objects to Plaintiff's Interrogatories to the extent that they call for information that is not in the possession, custody, or control of Irico. Irico also objects to the extent that any of Plaintiff's Interrogatories seek information from non-parties or third parties, including but not limited to any of Irico's subsidiary or affiliated companies.

12. Irico objects to Plaintiff's Interrogatories to the extent that responding would require Irico to violate the privacy and/or confidentiality of a third party or confidentiality agreement with a third party.

13. Irico objects to Plaintiff's Interrogatories to the extent that they seek information that is publicly available, already in Plaintiffs' possession, custody, or control, or more readily available from other sources.

14. Irico objects to Plaintiff's Interrogatories to the extent that they seek information or documents concerning transactions outside the United States. Such Interrogatories are unduly burdensome and irrelevant to this pending action as Plaintiffs' purported class definition is confined to "all persons . . . who directly purchased a Cathode Ray Tube Product . . . in the United States" (see Direct Purchaser Plaintiffs' Consolidated Amended Complaint dated March 16, 2009).

15. Irico objects to Plaintiff's Interrogatories to the extent that compliance would require Irico to violate the laws, regulations, procedures, or orders of a judicial or regulatory body of foreign jurisdictions.

16. Irico's responses, whether now or in the future, pursuant to Plaintiff's Interrogatories should not be construed as either (i) a waiver of any of Irico's general or specific

1  objections or (ii) an admission that such information or documents are either relevant or
2  admissible as evidence.

3      17.    Irico objects to Plaintiff's Interrogatories to the extent that they are compound
4  and/or contain discrete subparts in violation of Federal Rule of Civil Procedure 33(a)(1).

5      18.    Irico objects to Plaintiff's Interrogatories to the extent that they state and/or call for
6  legal conclusions.

7      19.    Irico objects to the Interrogatories to the extent that they contain express or
8  implied assumptions of fact or law with respect to the matters at issue in this case.

9      20.    Irico objects to the Interrogatories to the extent they seek information or
10  documents that cannot be removed or transmitted outside China without violating the laws and
11  regulations of that country, including but not limited to restrictions on the transmission of state
12  secrets or trade secrets as those terms are defined under Chinese law.

13      21.    Irico reserves the right to assert additional General and Specific Objections as
14  appropriate to supplement these Responses.

15      These General Objections apply to each Interrogatory as though restated in full in the
16  responses thereto. The failure to mention any of the foregoing General Objections in the specific
17  responses set forth below shall not be deemed as a waiver of such objections or limitations.

18  **GENERAL OBJECTIONS TO DEFINITIONS AND INSTRUCTIONS**

19      1.    Irico objects to the definitions of "Defendant," "You," "Your," and "Yourself"
20  (Definition Nos. 1 and 3) to the extent that Plaintiff defines those terms to include the Irico's
21  "present or former employees, officers, directors, agents, predecessors, successors, parents,
22  subsidiaries, affiliates, joint ventures or any other person acting on their behalf." This definition is
23  overbroad, unduly burdensome, vague, and ambiguous. Irico also objects to the inclusion of all
24  "present or former employees, officers, directors, agents . . . or any other person acting on [the]
25  behalf [of]" Irico within this definition to the extent it purports to encompass information that is
26  protected by attorney-client privilege, work product protection or any other applicable doctrine,
27  privilege, protection or immunity or otherwise calls for a legal conclusion.

28      2.    Irico objects to the definition of "Document" (Definition No. 4) to the extent it

---

IRICO'S FOURTH SUPP. OBJECTIONS AND        4        Master File No. 4:07-cv-05944-JST
RESPONSES TO DPP'S FIRST SET                               MDL No. 1917
INTERROGATORIES

1   seeks to impose requirements that are beyond those imposed by the Federal Rules of Civil

2   Procedure, the Local Rules, or any other applicable laws.

3       3.      Irico objects to the definition of "Employee" (Definition No. 5) on the grounds

4   that it calls for a legal conclusion and is otherwise vague, ambiguous, and overly broad. Irico

5   further objects to this definition to the extent that it attempts to impose burdens on Irico beyond

6   those imposed by the Federal Rules of Civil Procedure. Irico further objects to this definition to

7   the extent that it seeks information protected by the attorney client or other applicable privilege,

8   attorney work product doctrine, or otherwise seeks to violate rights of privacy under U.S. or

9   foreign law.

10      4.      Irico objects to the definitions of "CRT" and "CRT Product" (Definition No. 6) on

11  the grounds that they are vague, ambiguous and overly broad. Irico further objects to the use of

12  the term "CRT Products" to the extent that it is inconsistent with the definition of "CRT

13  Products" as set forth in Plaintiff's pleadings.

14      5.      Irico objects to the definition of the "Relevant Time Period" (Definition No. 7) as

15  overbroad, unduly burdensome, and beyond the applicable statute of limitations.

16      6.      Irico objects to the definition of "Communication" (Definition No. 8) on the

17  grounds that it is vague, ambiguous, and overly broad. Irico further objects to this definition to the

18  extent that it attempts to impose burdens on Irico beyond those imposed by the Federal Rules of

19  Civil Procedure.

20      7.      Irico objects to the definition of "Meeting" (Definition No. 10) on the grounds that

21  the definition is overly broad, unduly burdensome, and seeks information that is neither relevant

22  nor proportionate to the needs of the case.

23      8.      Irico objects to Instruction No. 1 (related to identification of persons) to the extent

24  that it purports to impose burdens or obligations broader than, inconsistent with, or not authorized

25  under the Federal Rules of Civil Procedure, including, without limiting the generality of the

26  foregoing, Rule 26(b)(5)(A) and Rule 26(e)(1). Irico further objects to this Instruction to the

27  extent that it purports to impose burdens or obligations broader than, inconsistent with, or not

28  authorized under, the Local Rules and any orders of the Court, and on the grounds that it is vague,

1   ambiguous, and inconsistent with common usage. Irico further objects to this Instruction to the

2   extent it seeks information that would disclose personal confidential information and/or violate

3   any and all rights of privacy under the United States Constitution or Article I of the Constitution

4   of the State of California, or any other applicable law or state constitution, or that is otherwise

5   prohibited from disclosure because to do so would cause Irico to violate legal and/or contractual

6   obligations to any other persons or entities.

7   9.   Irico objects to Instruction No. 2 (related to identification of an entity other than a

8   natural person) to the extent that it purports to impose burdens or obligations broader than,

9   inconsistent with, or not authorized under the Federal Rules of Civil Procedure or other applicable

10  rule or Order of this Court.

11  10.  Irico objects to Instruction No. 3 (related to the production of business records in

12  response to an interrogatory pursuant to Federal Rule of Civil Procedure 33(d)) on the grounds

13  that it is unduly burdensome and purports to impose burdens and obligations upon Irico beyond

14  those required by the Federal Rules of Civil Procedure or other applicable rule or Order of this

15  Court.

16  ## SPECIFIC RESPONSES AND OBJECTIONS TO INTERROGATORIES

17  ## INTERROGATORY NO. 16

18  State whether any documents or information responsive to this set of interrogatories were

19  destroyed, discarded, erased, deleted, purged, or otherwise lost. If Your answer is in any way in

20  the affirmative:

21  (a)   describe in detail the contents of each such document or information and the date it

22  was destroyed, discarded, erased, deleted, purged or lost;

23  (b)   identify each person who had any role or responsibility in destroying, discarding,

24  erasing, purging, deleting or losing of each such document or information; and

25  (c)   describe in detail the circumstances under which each such document or

26  information was destroyed, discarded, erased, deleted, purged, or lost.

27  ## RESPONSE TO INTERROGATORY NO. 16

28  Irico reasserts and incorporates each of the General Objections and Objections to the

1    Definitions and Instructions set forth above.

2         Subject to and without waiving the objections stated above, Irico responds that it will

3    conduct a reasonable search for information responsive to this Interrogatory, if any, and

4    supplement its response as necessary.

5    **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 16**

6         Irico reasserts and incorporates each of the General Objections, Objections to the

7    Definitions and Instructions, and specific objections to Interrogatory No. 16 set forth above.

8         Subject to and without waiving the foregoing objections, Irico states as follows:

9                                   **Hard-Copy Documents**

10        Pursuant to Chinese law, the Ministry of Finance and State Archives Administration

11   requires companies like Irico to maintain and preserve certain accounting archives, including but

12   not limited to original invoices for sales, accounting books, general ledgers, financial accounting

13   reports, and bank statements.  *See* IRI-CRT-00000900.  Irico followed and continues to follow

14   these requirements.  In addition, Irico's internal practices included the maintenance of additional

15   archives of material related to operational documents, administrative documents, technical

16   records and communications with agencies of the PRC government and Chinese Communist

17   Party.[1]  Irico is not aware of records from the 1995 to 2007 time period that were preserved in the

18   various archives being destroyed.  Irico understands that hard copy documents not preserved in

19   the archives were not required to be maintained in the ordinary course of business during the

20   period 1995 to 2007.  Irico does not have records regarding the specific hard copy documents that

21   would have existed at the time the complaint was served on Irico and were not preserved in the

22   archives during the time of 1995 to 2007.

23        In its search for potentially responsive, hard copy files outside of the archives, Irico has

24   learned of a few possible circumstances in which certain Irico hard copy files may have been

25   unintentionally lost or destroyed.  Irico is not aware whether any of the documents lost in the

26   events described below were: a) created in the time period 1995 through 2007, or b) relevant or

27

28   _____

[1] Additional information regarding the documents maintained in Irico's archives can be found in
Irico's December 18, 2020 letter to Plaintiffs regarding discovery issues.

1   responsive to any of the discovery requests issued to Irico during the course of this litigation.   The

2   specific instances at issue include:

3       • A warehouse fire at the headquarters of Irico Group in 2017, which is believed to

4           have resulted in the loss of some financial documents;

5       • The 2012 move of the offices of the Irico Sales Company[2] from the Irico CRT

6           Plant No. 1 to other offices at Irico Group's headquarters during which certain

7           hard copy files may not have been transferred; and,

8       • A subsequent renovation of the offices housing the disbanded Irico Sales Company

9           in 2014 in which historical records may have been lost.

10   Irico is continuing to review its hard copy files and will update its response to this

11   interrogatory if it identifies additional responsive information.

12                                **Electronic Documents**

13   Based on its present knowledge, Irico understands that electronic documents were not

14   regularly maintained in an electronic format by the company in the ordinary course of business

15   during the period 1995 to 2007.   There was no obligation under Chinese law to preserve

16   electronic documents or data.   Because no such obligation existed and Irico had limited electronic

17   storage capacity, any documents required to be maintained under Chinese law, including original

18   invoices for CRT sales, accounting books, general ledgers, financial accounting reports, and bank

19   statements, or in the Corporate Archives of Irico, were printed and transferred to the archives.

20   Irico further understands that it regularly overwrote existing electronic data due to limited storage

21   capacity during that time period.    For example, Irico believes that its servers overwrote email

22   data every three to five days on average due to storage limits for the period including and prior to

23   2007.

24   Irico has reviewed and produced all responsive data from relevant and available

25   computers from the time period 1995 to 2007.   Irico is aware that computers of departed

26   employees and/or older versions of computers were recycled.    Irico is not aware of whether any

27

28   _____

[2] Although the translated name of this unit is Irico Sales Company, it was not a separately
incorporated entity.

of the recycled computers contained: a) any data whatsoever; b) any documents created in the time period 1995 through 2007, or c) any documents relevant or responsive to any of the discovery requests issued to Irico during the course of this litigation.

**SECOND SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 16**

Irico reasserts and incorporates each of the General Objections, Objections to the Definitions and Instructions, and specific objections to Interrogatory No. 16 set forth above.

Subject to and without waiving the foregoing objections, Irico states as follows:

Irico is no longer in the CRT business and most employees and management from that line of business have since left the company.  Identifying specific documents that might have existed between 1995 and 2007 is not always possible given the limited knowledge of available resources.  Irico has provided information, and now provides additional information, some of which is beyond the scope of the specific requests in Interrogatory 16 to provide additional context regarding the available responsive information.

**Hard-Copy Documents**

Irico has not identified any specific, responsive hard-copy documents from the 1995 to 2007 period that were lost or destroyed after the complaint was served on Irico.  Based on its further investigation, Irico has determined that the following types of documents may have been created between 1995 to 2007 and not preserved in Irico's archives, but Irico is unable to determine whether any individual documents in these categories may have been responsive, whether or how individual documents were lost or destroyed, or the date of such loss, if it occurred:

- Sales reports containing general CRT market information (*see* Wang Zhaojie Mar. 6, 2019 Dep. Tr. 37:20-38:18);
- CRT sales contracts with customers;
- Correspondence with customers regarding CRT sales; and
- Handwritten working notes taken by individual employees during the course of performing their job functions, including Wang Zhaojie and Wang Ximin.

Since the above categories of documents were not required to be preserved under the

1   Chinese regulations nor under Irico's own internal practices, Irico does not believe that these

2   records were maintained in any systematic format and employees have confirmed that they

3   regularly discarded these materials.

4          Based on its further investigation, Irico has also determined the following regarding

5   previously disclosed incidents of unintentional loss of hard copy documents:

6          •   The warehouse fire at Irico headquarters occurred in August 2017 and resulted

7              only in the loss of accounting receipts from transactions occurring between 2016

8              and 2017; and

9          •   The 2012 office move and subsequent 2014 renovation of the Irico Sales Company

10             offices did not result in the loss of any documents required to be preserved under

11             Chinese law or Irico's internal practices, including any original copies of sales

12             invoices or expense receipts.  The Irico Sales Company was closed in 2004.  At

13             that time, records required to be preserved under Chinese regulations or Irico's

14             internal practices were stored in the archives, pursuant to previously discussed

15             practices. Records of the Irico Sales Company that were not required to be

16             maintained under Chinese regulations or Irico's internal practices were likely not

17             preserved from the period preceding the closure of the Company in 2004, as Irico

18             began a reduction in sales and administrative staff at that time and transitioned

19             remaining staff to selling on behalf of Irico Electronics and Display.  If such

20             records existed and were not destroyed in or soon after 2004, they may not have

21             been maintained upon the office move in 2012.  At present, Irico has no way of

22             knowing exactly what records, if any, might have remained in the former offices of

23             Irico Sales Company, since several years had passed at the time of the office move

24             since any such records were reviewed or utilized.

25         Irico is continuing to review its hard copy files and will update its response to this

26   interrogatory if it identifies additional responsive information.

27                                      **Email Systems**

28         Irico began using email in approximately the 2004-2005 time period. At first, Irico issued

---

IRICO'S FOURTH SUPP. OBJECTIONS AND             10          Master File No. 4:07-cv-05944-JST
RESPONSES TO DPP'S FIRST SET                                MDL No. 1917
INTERROGATORIES

1  email addresses only at the departmental level rather than to individual employees. Thus, for

2  example, the Sales Department personnel would share a single email address issued to that

3  department. Over time, Irico expanded the issuance of individual emails according to business

4  need and consistent with the available email storage capacity at that time.

5  At the time that Irico first introduced email through at least the end of 2007, electronic

6  documents generally, and email specifically, were not widely used. At that time, the company had

7  limited storage available to an individual user, whose accounts typically allowed for storage of

8  only 1-2 MB of email. As a result of this limited storage, email users, depending on the volume of

9  email received, would need to delete emails frequently in order to allow for the delivery of

10  additional email.

11  In addition to limited individual account capacity, Irico's email server likewise had

12  limited storage capacity. Due to this limited capacity, the server itself would need to overwrite the

13  oldest emails in order to keep the server from reaching its storage capacity. The frequency of this

14  process varied depending on the volume of email that the company received. During periods of

15  higher email activity, email would be overwritten every 3-5 days on average. During periods of

16  lower activity, such as during the Chinese New Year holiday, emails over a longer period may be

17  stored, for example closer to 14 days. In any event, Irico had a back-end server policy to delete all

18  emails older than 20 days from the time that Irico started using email through at least the end of

19  2007.

20  **Other Electronic Systems**

21  Irico did not use a networked computer system during the period 1995 – 2007. Likewise,

22  Irico did not have any centralized storage systems for electronic documents.

23  **Handheld Devices**

24  Irico did not issue electronic handheld devices to its employees, nor did Irico reimburse

25  employees for a personal cell phone or expenses related to it. If an employee chose to use a

26  personal cell phone for business, Irico had no control or oversight regarding that device, and Irico

27  did not deploy any enterprise software related to handheld devices. Irico has asked remaining

28  current employees who may be relevant to the issues raised by DPPs whether they have any cell

phone invoices from the 1995 to 2007 timeframe, but no such documents have been located.

Dated:  July 7, 2021                          BAKER BOTTS L.L.P.


                                              /s/ John M. Taladay

                                              John M. Taladay (*pro hac vice*)
                                              Evan J. Werbel (*pro hac vice*)
                                              Thomas E. Carter (*pro hac vice*)
                                              Andrew L. Lucarelli (*pro hac vice*)
                                              700 K Street, N.W.
                                              Washington, D.C. 20001
                                              (202)-639-7700
                                              (202)-639-7890 (fax)
                                              Email: john.taladay@bakerbotts.com
                                                         evan.werbel@bakerbotts.com
                                                         tom.carter@bakerbotts.com
                                                         drew.lucarelli@bakerbotts.com

                                              Jonathan Shapiro (State Bar No. 257199)
                                              101 California Street, Suite 3600
                                              San Francisco, California 94111
                                              (415) 291-6200
                                              (415) 291-6300 (fax)
                                              Email: jonathan.shapiro@bakerbotts.com


                                              *Attorneys for Defendants*
                                              *IRICO GROUP CORP. and*
                                              *IRICO DISPLAY DEVICES CO., LTD.*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

**In re: Cathode Ray Tube (CRT) Antitrust Litigation - MDL No. 1917**

I declare that I am employed in Washington, District of Columbia.  I am over the age of eighteen years and not a party to the within case; my business address is:  Baker Botts L.L.P., 700 K Street, N.W., Washington, D.C. 20001.

On July 7, 2021, I served the following document(s) described as:

**IRICO DEFENDANTS' FIFTH SUPPLEMENTAL OBJECTIONS
AND RESPONSES TO DIRECT PURCHASER
PLAINTIFFS' FIRST SET OF INTERROGATORIES**

on the following interested parties in this action:

| | |
|---|---|
| Guido Saveri (guido@saveri.com)<br>R. Alexander Saveri (rick@saveri.com)<br>Geoffrey C. Rushing (grushing@saveri.com)<br>Matthew D. Heaphy (mheaphy@saveri.com)<br>SAVERI & SAVERI, INC.<br>706 Sansome St # 200<br>San Francisco, CA 94111 | Mario N. Alioto (malioto@tatp.com)<br>Lauren C. Capurro (laurenrussell@tatp.com)<br>TRUMP ALIOTO TRUMP & PRESCOTT LLP<br>2280 Union Street<br>San Francisco, CA 94123 |
| *Lead Counsel for the Direct Purchaser Plaintiffs* | *Lead Counsel for the Indirect Purchaser Plaintiffs* |
| Joseph Goldberg (jg@fbdlaw.com)<br>FREEDMAN BOYD HOLLANDER<br>GOLDBERG URIAS & WARD P.A.<br>20 First Plaza, Suite 700<br>Albuquerque, NM 87102<br>D (505) 305-1263 | Dan Birkhaeuser<br>(dbirkhaeuser@bramsonplutzik.com)<br>BRAMSON, PLUTZIK, MAHLER &<br>BIRKHAEUSER, LLP<br>2125 Oak Grove Rd, Suite 125<br>Walnut Creek, CA 94598 |
| *Counsel for the Indirect Purchaser Plaintiffs* | *Counsel for the Indirect Purchaser Plaintiffs* |

[X]    (BY ELECTRONIC MAIL) I caused such documents to be sent to the persons at the email addressed listed above.  I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

I declare under penalty of perjury under the laws of the District of Columbia that the foregoing is true and correct.  Executed on July 7, 2021, in Washington, D.C.

*/s/ Thomas E. Carter*
Thomas E. Carter

# Exhibit 10



January 24, 2023

**Certification**

**Welocalize Translations**

**TRANSLATOR'S DECLARATION:**

I, **Samuel Chong**, hereby declare:

That I possess advanced knowledge of the Chinese and English languages. The attached Chinese into English translation has been translated by me and to the best of my knowledge and belief, it is a true and accurate translation of: P-00000004

*(Digital or printed signature here above the line)*

**Samuel Chong**

**Project Number: BBLLP_2301_P0001**

15 W. 37th Street 4th Floor
New York, NY 10018
212.581.8870

From:          Chan, Joseph W.K <joseph.chan@pillsburylaw.com> on behalf of Chan, Joseph W.K
Sent:          Friday, February 15, 2008 1:30AM
To:            yan
Cc:            Secretary Tao; Mr. Gao; Callan, Terrence A; Tiffany, Joseph R; Chan, Joseph W.K
Subject:       RE:CRT Litigation

Dear Mr. Yan.

Your February 4 email has been received, thank you. We hope you had a pleasant Spring Festival holiday.



Finally, it is essential that Irico does not destroy or dispose of any potentially relevant documents, whether in paper, electronic or any other form. We recommend that you issue written instructions to the members of your company to retain all such documents as soon as possible. We would be pleased to advise on appropriate written instructions.

We very much look forward to working with you on this matter.

Best regards!

Yongjian Chen

1

Yongjian Chen | Managing Partner
<span style="color:red">Pillsbury Winthrop Shaw Pittman LLP</span>
━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━
Direct. 86.21.6335.1128 | Tel. 86.21.6335.1166
Fax. 86.21.6335.1178 | Cell. 86.13917040385
Room 4305, Bund Center | 222 East Yan'an Road, Shanghai, China | 200002

Email: joseph.chan@pillsburylaw.com
www.pillsburylaw.com



CONFIDENTIAL                    Translation                    IRI-SUPP-000002E



3



4



- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

The contents of this message, together with any attachments, are intended only for the use of the individual or entity to which they are addressed and may contain information that is legally privileged, confidential and exempt from disclosure. If you are not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this message, or any attachment, is strictly prohibited. If you have received this message in error, please notify the original sender or the Pillsbury Winthrop Shaw Pittman Help Desk at Tel: 800-477-0770 x4860 immediately by telephone or by return E-mail and delete this message, along with any attachments, from your computer. Thank you.
* Internal Revenue Service regulations generally provide that, for the purpose of avoiding federal tax penalties, a taxpayer may rely only on formal written advice meeting specific requirements. Any tax advice in this message does not meet those requirements. Accordingly, any such tax advice was not intended or written to be used, and it cannot be used, for the purpose of avoiding federal tax penalties that may be imposed on you or for the purpose of promoting, marketing or recommending to another party any tax-related matters.

| From: | Chan, Joseph W. K. <joseph.chan@pillsburylaw.com> on behalf of Chan, Joseph W. K. |
|---|---|
| Sent: | Friday, February 15, 2008 1:30 AM |
| To: | yan |
| Cc: | 陶书记; 高总; Callan, Terrence A.; Tiffany, Joseph R.; Chan, Joseph W. K. |
| Subject: | RE: CRT诉讼 |

尊敬的闫先生：

您2月4日邮件已收悉，谢谢。希望您度过了愉快的春节假期。

████████████████████████████ ███████████████████████████
████████████████████████

████████████████████████████ ███████████████████████████
███████████████████

████████████████████████████ ███████████████████████████
████████████████████████████████████████████████████████
███████ ██ ██████████████████████████████████

████████████████████████████ ███████████████████████████
████ ██ ████████████████████████████████████████████████
█████████████████ █████ ██████████████████████ ████ ██████
███ █ ███████████ ██ ███████████████████████
██ █████████████████████████████████

████████████████████████████ ███████████████████████████
████████ ██ ████████████████████████████

████████████████████████████ ███████████████████████████
███ ██ ██████████████████ ██ ████████████ ██ ████████████
████████████████████████████████████████████████████████
████████████████ ██ ██████████████████

████████████████████████████ ███████████████████████████
███████████████████████████████████████████████ 最后，Irico请勿损毁或处置任何书面、电子或任何其他
形式的潜在相关文件，这点十分必要。我们建议贵方尽快向公司成员发出保留所有该等文件的书面指示。我们将
非常乐意就适当的书面指示提出建议。

████████████████████████████ ███ ███████ █ ███████ ███████████
████████████████████████ 我们非常期待就此事项与贵方合作。

顺颂商祺！

陈永坚

CONFIDENTIAL                                                          IRI-SUPP-000001

陈永坚 | 主管合伙人
**美国必百瑞律师事务所**
———————————————————————————

直线. 86.21.6335.1128 | 电话. 86.21.6335.1166
传真. 86.21.6335.1178 | 手机. 86.13917040385
外滩中心4305室 | 中国上海延安东路222 | 200002

电子邮件: joseph.chan@pillsburylaw.com
www.pillsburylaw.com



CONFIDENTIAL                                    IRI-SUPP-000002



CONFIDENTIAL
IRI-SUPP-000003



CONFIDENTIAL                                                                                         IRI-SUPP-000004



- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

The contents of this message, together with any attachments, are intended only for the use of the individual or entity to which they are addressed and may contain information that is legally privileged, confidential and exempt from disclosure. If you are not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this message, or any attachment, is strictly prohibited. If you have received this message in error, please notify the original sender or the Pillsbury Winthrop Shaw Pittman Help Desk at Tel: 800-477-0770 x4860 immediately by telephone or by return E-mail and delete this message, along with any attachments, from your computer. Thank you.
* Internal Revenue Service regulations generally provide that, for the purpose of avoiding federal tax penalties, a taxpayer may rely only on formal written advice meeting specific requirements. Any tax advice in this message does not meet those requirements. Accordingly, any such tax advice was not intended or written to be used, and it cannot be used, for the purpose of avoiding federal tax penalties that may be imposed on you or for the purpose of promoting, marketing or recommending to another party any tax-related matters.

CONFIDENTIAL                    IRI-SUPP-000005

# Exhibit 11



January 24, 2023

**Certification**

<div align="center">

**Welocalize Translations**

</div>

**TRANSLATOR'S DECLARATION:**

I, **Samuel Chong**, hereby declare:

That I possess advanced knowledge of the Chinese and English languages. The attached Chinese into English translation has been translated by me and to the best of my knowledge and belief, it is a true and accurate translation of: P-00000006

*(Digital or printed signature here above the line)*

**Samuel Chong**

**Project Number: BBLLP_2301_P0001**

(Ruixing Alert - This may be a spam)

**From:**      yan <yanyunlong@ch.com.cn> on behalf of yan
**Sent:**      Monday, June 23, 2008 4:35 AM
**To:**        Secretary Tao; Maihai Liu; Yuan Liang; Xiaolin; Shen Mr. Gao
**Subject:**   Fw: (Ruixing Alert - This may be a spam) CRT Litigation Progress

----- Original Message -----
**From:** Xi, Kevin
**To:** yan
**Cc:** Chan, Joseph W. K.
**Sent:** Monday, June 23, 2008 4:16 PM
**Subject:** (Ruixing Alert - This may be a spam) CRT Litigation Progress

Attorney Yan,

Hello!



5. The court issued its first pretrial order on April 4, 2008, with Article 13 being the most critical to Irico, which sets out the court's requirements for preservation of evidence (including information in electronic form). As we have discussed with Irico, this is an extremely important statutory requirement. If some potentially relevant information is lost or destroyed, this could have very serious consequences for Irico. The pretrial order is attached for your review. We have also attached a Chinese translation of Article 13 for your reference.



1



Regards!

Best wishes!

**Kevin Xi** | PRC Legal Consultant
Pillsbury Winthrop Shaw Pittman LLP
——————————————————————————————————
Tel: 86.21.6335.1108 | Fax: 86.21.6335.1178
Suite 4305, Bund Center 222 Yan An Road East | Shanghai 2000002
Email: kevin.xi@pillsburylaw.com
www.pillsburylaw.com

2

CONFIDENTIAL                Translation                IRI-SUPP-000013E

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

In Re: Cathode Ray Tube (CRT)          )    Case No. 07-5944 SC
Antitrust Litigation                   )    MDL No. 1917
                                       )
_____)    PRETRIAL ORDER NO. 1
                                       )
This Document Relates to:              )
                                       )
     ALL ACTIONS                       )
                                       )
_____)

On April 4, 2008, the Court conducted a status conference in this multidistrict litigation ("MDL") proceeding.  After considering the materials submitted by the parties at the conference and good cause appearing, the Court hereby establishes the following pretrial procedures.

**PRACTICE AND PROCEDURE ORDER UPON TRANSFER PURSUANT TO §
1407(a) (REVISED)**

1.  This order shall govern the practice and procedure in those actions transferred to this Court by the Judicial Panel on Multidistrict Litigation (MDL Panel) pursuant to its order of February 15, 2008, as well as all related actions originally filed in this Court or transferred or removed to this Court.  This order shall also govern the practice and procedure in any tag-along actions transferred to this Court by the MDL Panel pursuant to Rule 7.4 of the Rules of Procedure of the MDL Panel subsequent to

United States District Court
For the Northern District of California

the filing of the final transfer order by the Clerk of this Court and any related actions subsequently filed, transferred or removed to this Court.

2.  The actions described in paragraph 1 of this Order are consolidated for pretrial purposes.

**ESTABLISHMENT OF MASTER DOCKET AND FILE**

3.  The files of all direct purchaser actions and indirect purchaser actions shall be maintained in the master file, Case No. C-07-5944 SC MDL No. 1917.  Every pleading filed in direct purchaser actions and indirect purchaser actions shall bear the above caption.  When a pleading or paper is intended to be applicable to all actions, the words "All Actions" shall appear immediately after the words "This Document Relates to:" in the caption above.  When a pleading or paper is intended to be applicable only to all direct purchaser actions, the words "All Direct Purchaser Actions" shall appear in the caption.  When a pleading or paper is intended to be applicable only to all indirect purchaser actions, the words "All Indirect Purchaser Actions" shall appear in the caption.

4.  All pleadings and submissions in these actions shall be e-filed both in the master docket and in the individual case docket(s) of any individual case(s) to which the submission pertains.  All submissions filed in these actions shall bear the identification "Case No. C-07-5944 SC MDL No. 1917," and when such a submission relates to all of these actions, following "Case No. C-07-5944 SC MDL No. 1917," shall be the notation "ALL CASES."  If a submission does not relate to all of these actions, the docket

2

1    number of the individual action or actions assigned by the Clerk

2    of the Court shall follow "Case No. C-07-5944 SC MDL No. 1917."

3    The chambers copy of each document e-filed in these cases must

4    clearly indicate the docket number assigned by the electronic case

5    filing system to each such document.

6         **APPEARANCES**

7         5.  Counsel who have not yet entered an appearance shall

8    electronically file a Notice of Appearance in the master docket

9    and in the individual case docket(s) of any individual case(s).

10   Counsel who appeared in a transferor court prior to their case

11   being transferred to this Court need not enter an additional

12   appearance before this Court.

13        6.  Attorneys admitted to practice and in good standing in

14   any United States District Court are admitted pro hac vice in this

15   litigation.  Pursuant to Rule 1.4 of the Rules of Procedure of the

16   Judicial Panel on Multidistrict Litigation, association of local

17   counsel is not required.

18        **COMMUNICATIONS WITH THE COURT AND COUNSEL**

19        7.  Unless otherwise ordered by the Court, all substantive

20   communications with the Court shall be e-filed.

21        8.  The Court recognizes that cooperation by and among

22   plaintiffs' counsel and by and among defendants' counsel is

23   essential for the orderly and expeditious resolution of this

24   litigation.  The communication of information among and between

25   plaintiffs' counsel and among and between defendants' counsel

26   shall not be deemed a waiver of the attorney-client privilege or

27   the protection afforded attorney work-product.  Nothing contained

28                                   3

**United States District Court**
For the Northern District of California

1    in this provision shall be construed to limit the rights of any

2    party or counsel to assert the attorney-client privilege or

3    attorney work-product doctrine.

4         **FILING AND SERVICE OF PAPERS AND PLEADINGS**

5         9.   These cases are subject to Electronic Case Filing

6    ("ECF"), pursuant to General Order 45, Section VI, which requires

7    that all documents in such a case be filed electronically.

8    General Order, Section IV(A) provides that "[e]ach attorney of

9    record is obligated to become an ECF User and be assigned a user

10   ID and password for access to the system upon designation of the

11   action as being subject to ECF." If he or she has not already done

12   so, counsel shall register forthwith as an ECF User and be issued

13   an ECF User ID and password.  Forms and instructions can be found

14   on the Court's website at

15   https://ecf.cand.uscourts.gov/cand/index.html.  All documents can

16   be e-filed in the master file, Case No. C-07-5944 SC MDL No. 1917.

17        10.  Papers that are filed electronically through the Court's

18   ECF system are deemed served on all parties as of the date of

19   filing.  All other service of papers shall be governed by the

20   Federal Rules of Civil Procedure unless otherwise agreed by the

21   parties.

22        11.  Permission to file briefs in excess of the page limits

23   set forth in Rule 7 of the Local Rules will not be routinely

24   granted in these cases.  Stipulations allowing oversized briefs

25   will not be approved unless submitted at least five (5) court days

26   before the first brief addressed in the stipulation is due.

27        12.  All parties are to make best efforts to resolve

28                                    4

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

1   scheduling and other procedural issues by conferring with opposing

2   counsel in the case(s) before contacting the court.

3       **EVIDENCE PRESERVATION**

4       13.  All parties and their counsel are reminded of their duty

5   to preserve evidence that may be relevant to this action.  The

6   duty extends to documents, data and tangible things in the

7   possession, custody and control of the parties to this action, and

8   any employees, agents, contractors, carriers, bailees, or other

9   non-parties who possess materials reasonably anticipated to be

10   subject to discovery in this action.  "Documents, data, and

11   tangible things" shall be interpreted broadly to include writings,

12   records, files, correspondence, reports, memoranda, calendars,

13   diaries, minutes, electronic messages, voicemail, e-mail,

14   telephone message records or logs, computer and network activity

15   logs, hard drives, backup data, removable computer storage media

16   such as tapes, discs and cards, printouts, document image files,

17   Web pages, databases, spreadsheets, software, books, ledgers,

18   journals, orders, invoices, bills, vouchers, check statements,

19   worksheets, summaries, compilations, computations, charts,

20   diagrams, graphic presentations, drawings, films, charts, digital

21   or chemical process photographs, video, phonographic, tape or

22   digital recordings or transcripts thereof, drafts, jottings and

23   notes, studies or drafts of studies or other similar such

24   material.  Information that serves to identify, locate or link

25   such material, such as file inventories, file folders, indices,

26   and metadata, is also included in this definition.  Until the

27   parties reach an agreement on a preservation plan or the Court

28

5

United States District Court

For the Northern District of California

orders otherwise, each party shall take reasonable steps to
preserve all documents, data, and tangible things containing
information potentially relevant to the subject matter of this
litigation.  In addition, counsel shall exercise all reasonable
efforts to identify and notify parties and non-parties of their
duties, including employees of corporate or institutional parties,
to the extent required by the Federal Rules of Civil Procedure.

**PROTECTIVE ORDER**

14.  The parties shall meet and confer regarding a protective
order for this proceeding.  Within 30 days of the entry of an
Order appointing interim lead class counsel, the parties shall
present a stipulated protective order, or in the event a
stipulation cannot be reached, their respective proposals.

**DISCLOSURES**

15.  Within 30 days of the entry of this Order, the parties
shall complete a Rule 26(f) conference and shall make initial
disclosures within 14 days thereafter.

**ALTERNATIVE DISPUTE RESOLUTION**

16.  Within 30 days of the entry of an Order appointing
interim lead class counsel, the parties shall discuss the
selection of an alternative dispute resolution process.

**FURTHER CASE MANAGEMENT CONFERENCE**

17.  The Court shall conduct a Status Conference on July 11,
2008 at 10:00 A.M.  The parties shall electronically file a Joint
Case Management Statement ten (10) court days prior thereto.

///

///

6

**APPLICABILITY OF ORDER**

18. This Order shall apply to all actions subsequently filed in, or transferred to, this district that are related to this MDL proceeding. Any party objecting to the application of this Order to a subsequently filed or transferred case shall file a motion for relief supported by good cause within 30 days of the case being added to the master docket.

DATED: April 4, 2008

_____
UNITED STATES DISTRICT JUDGE

CONFIDENTIAL          Translation          IRI-SUPP-000020E

Article 13      Preservation of Evidence

The parties to the litigation and their agents were informed of their duty to preserve evidence that may be relevant to this case. This liability extends to documents, data and tangible things in the possession, custody or control of the parties to this action and any employee, agent, contractor, carrier or custodian, or other outsider in possession of material reasonably expected to be within the scope of the factual inquiry in this case. "Documents, data and tangible things" shall be interpreted broadly to include handwriting, records, archives, newsletters, reports, memos, calendars, diaries, minutes, electronic messages, voice mail, e-mail, telephone message records or logs, computer and network activity logs, hardware drives, data backups, removable computer storage media such as tapes, disks and cards, printouts, image files of text, Web pages, databases, spreadsheets, software, books, ledgers, ledger books, orders, invoices, bills, vouchers, check statements, worksheets, summaries, compilations, calculations, diagrams, charts, diagrams, drawings, films, sketches, digital or chemically manipulated photographs, videos, tape or digitally recorded recordings or copies thereof, drafts , notes or notebooks, papers or draft papers, or other similar materials. Any information for the purpose of discovering, locating, or linking the above material, such as file lists, folders, directories, and metadata, is also included in this definition. Unless the parties agree on a preservation plan or the court orders otherwise, each party shall take reasonable steps to preserve all documents, data, and tangible objects containing information that may be relevant to the subject matter of the case. In addition, the agent shall make reasonable efforts to determine and inform the parties and outsiders, including employees of the company or entity, of their relevant responsibilities, to the extent required by federal civil procedure law.

| | |
|---|---|
| **From:** | yan <yanyunlong@ch.com.cn> on behalf of yan |
| **Sent:** | Monday, June 23, 2008 4:35 AM |
| **To:** | 陶书记; 刘麦海; 梁援; 申小琳; 高总 |
| **Subject:** | Fw: (瑞星提示-此邮件可能是垃圾邮件)CRT诉讼进展情况 |

----- Original Message -----
**From:** Xi, Kevin
**To:** yan
**Cc:** Chan, Joseph W. K.
**Sent:** Monday, June 23, 2008 4:16 PM
**Subject:** (瑞星提示-此邮件可能是垃圾邮件)CRT诉讼进展情况

闫律师，

您好！ ███████████████████████████████████████████
███████████████████████████████████████████████████
████████████████████████████

█   ███████████████████████████████████████████████
     ███████████████████████████████████████

     ███████████████████████████████████████████████
     ███████████████████████████████████████████████
     ████████████████████████

     ███████████████████████████████████████████████
     ███████████████████████████████████████████████
     ███████████████████████████████████████████████
     █████████████████████████████████████
     ████████████████████

     ███████████████████████████████████████████████
     ███████████████████████████████████████████████
     █████████████████████████████████

5.  法院在2008年4月4日发布了首个预审令，其中第13条对彩虹最为关键，其规定了法庭对证据保全的要求（包括电子形式的信息）。正如我们与彩虹所讨论的，这是一项极为重要的法定要求。若一些潜在的相关信息丢失或毁损，这会对彩虹产生非常严重的后果。这里附上预审令供您查阅。同时我们也附上第13条的中文翻译，供您参考。

     ███████████████████████████████████████████████
     ███████████████████████████████████████████████
     ███████████████████████████████████████████████
     █

     ███████████████████████████████████████████████
     ███████████████████████████████████████████████

CONFIDENTIAL                                                                 IRI-SUPP-000012

███████████████████████████████
███████████████████████████████
███████████████████████████████
██████████████████

██████████████████████████████

████████████████████████████████████
████████████████████████████

顺颂

百务顺遂！

**Kevin Xi |** PRC Legal Consultant
**Pillsbury Winthrop Shaw Pittman LLP**
——————————————————————————————
Tel: 86.21.6335.1108 **|** Fax: 86.21.6335.1178
Suite 4305, Bund Center 222 Yan An Road East **|** Shanghai 2000002
Email: kevin.xi@pillsburylaw.com
**www.pillsburylaw.com**

CONFIDENTIAL                                                                IRI-SUPP-000013

1
2
3
4
5               UNITED STATES DISTRICT COURT

6              NORTHERN DISTRICT OF CALIFORNIA

7

8  In Re: Cathode Ray Tube (CRT)    )  Case No. 07-5944 SC
    Antitrust Litigation           )  MDL No. 1917
                             )

9  _____)  PRETRIAL ORDER NO. 1
                             )

10  This Document Relates to:     )
                             )

11     ALL ACTIONS           )
                             )

12  _____)

13

14       On April 4, 2008, the Court conducted a status conference in

15  this multidistrict litigation ("MDL") proceeding.  After

16  considering the materials submitted by the parties at the

17  conference and good cause appearing, the Court hereby establishes

18  the following pretrial procedures.

19       **PRACTICE AND PROCEDURE ORDER UPON TRANSFER PURSUANT TO §**
        **1407(a) (REVISED)**

20

21       1.  This order shall govern the practice and procedure in

22  those actions transferred to this Court by the Judicial Panel on

23  Multidistrict Litigation (MDL Panel) pursuant to its order of

24  February 15, 2008, as well as all related actions originally filed

25  in this Court or transferred or removed to this Court.  This order

26  shall also govern the practice and procedure in any tag-along

27  actions transferred to this Court by the MDL Panel pursuant to

28  Rule 7.4 of the Rules of Procedure of the MDL Panel subsequent to

United States District Court
For the Northern District of California

1   the filing of the final transfer order by the Clerk of this Court

2   and any related actions subsequently filed, transferred or removed

3   to this Court.

4       2.   The actions described in paragraph 1 of this Order are

5   consolidated for pretrial purposes.

6       **ESTABLISHMENT OF MASTER DOCKET AND FILE**

7       3.   The files of all direct purchaser actions and indirect

8   purchaser actions shall be maintained in the master file, Case No.

9   C-07-5944 SC MDL No. 1917.  Every pleading filed in direct

10  purchaser actions and indirect purchaser actions shall bear the

11  above caption.  When a pleading or paper is intended to be

12  applicable to all actions, the words "All Actions" shall appear

13  immediately after the words "This Document Relates to:" in the

14  caption above.  When a pleading or paper is intended to be

15  applicable only to all direct purchaser actions, the words "All

16  Direct Purchaser Actions" shall appear in the caption.  When a

17  pleading or paper is intended to be applicable only to all

18  indirect purchaser actions, the words "All Indirect Purchaser

19  Actions" shall appear in the caption.

20      4.   All pleadings and submissions in these actions shall be

21  e-filed both in the master docket and in the individual case

22  docket(s) of any individual case(s) to which the submission

23  pertains.  All submissions filed in these actions shall bear the

24  identification "Case No. C-07-5944 SC MDL No. 1917," and when such

25  a submission relates to all of these actions, following "Case No.

26  C-07-5944 SC MDL No. 1917," shall be the notation "ALL CASES."  If

27  a submission does not relate to all of these actions, the docket

28

2

United States District Court
For the Northern District of California

1 number of the individual action or actions assigned by the Clerk

2 of the Court shall follow "Case No. C-07-5944 SC MDL No. 1917."

3 The chambers copy of each document e-filed in these cases must

4 clearly indicate the docket number assigned by the electronic case

5 filing system to each such document.

6 **APPEARANCES**

7 5.  Counsel who have not yet entered an appearance shall

8 electronically file a Notice of Appearance in the master docket

9 and in the individual case docket(s) of any individual case(s).

10 Counsel who appeared in a transferor court prior to their case

11 being transferred to this Court need not enter an additional

12 appearance before this Court.

13 6.  Attorneys admitted to practice and in good standing in

14 any United States District Court are admitted pro hac vice in this

15 litigation.  Pursuant to Rule 1.4 of the Rules of Procedure of the

16 Judicial Panel on Multidistrict Litigation, association of local

17 counsel is not required.

18 **COMMUNICATIONS WITH THE COURT AND COUNSEL**

19 7.  Unless otherwise ordered by the Court, all substantive

20 communications with the Court shall be e-filed.

21 8.  The Court recognizes that cooperation by and among

22 plaintiffs' counsel and by and among defendants' counsel is

23 essential for the orderly and expeditious resolution of this

24 litigation.  The communication of information among and between

25 plaintiffs' counsel and among and between defendants' counsel

26 shall not be deemed a waiver of the attorney-client privilege or

27 the protection afforded attorney work-product.  Nothing contained

28 3

1  in this provision shall be construed to limit the rights of any

2  party or counsel to assert the attorney-client privilege or

3  attorney work-product doctrine.

4              **FILING AND SERVICE OF PAPERS AND PLEADINGS**

5       9.   These cases are subject to Electronic Case Filing

6  ("ECF"), pursuant to General Order 45, Section VI, which requires

7  that all documents in such a case be filed electronically.

8  General Order, Section IV(A) provides that "[e]ach attorney of

9  record is obligated to become an ECF User and be assigned a user

10 ID and password for access to the system upon designation of the

11 action as being subject to ECF." If he or she has not already done

12 so, counsel shall register forthwith as an ECF User and be issued

13 an ECF User ID and password.  Forms and instructions can be found

14 on the Court's website at

15 https://ecf.cand.uscourts.gov/cand/index.html.  All documents can

16 be e-filed in the master file, Case No. C-07-5944 SC MDL No. 1917.

17      10.  Papers that are filed electronically through the Court's

18 ECF system are deemed served on all parties as of the date of

19 filing.  All other service of papers shall be governed by the

20 Federal Rules of Civil Procedure unless otherwise agreed by the

21 parties.

22      11.  Permission to file briefs in excess of the page limits

23 set forth in Rule 7 of the Local Rules will not be routinely

24 granted in these cases.  Stipulations allowing oversized briefs

25 will not be approved unless submitted at least five (5) court days

26 before the first brief addressed in the stipulation is due.

27      12.  All parties are to make best efforts to resolve

28                                  4

**United States District Court**
For the Northern District of California

1  scheduling and other procedural issues by conferring with opposing

2  counsel in the case(s) before contacting the court.

3      **EVIDENCE PRESERVATION**

4      13.  All parties and their counsel are reminded of their duty

5  to preserve evidence that may be relevant to this action.  The

6  duty extends to documents, data and tangible things in the

7  possession, custody and control of the parties to this action, and

8  any employees, agents, contractors, carriers, bailees, or other

9  non-parties who possess materials reasonably anticipated to be

10 subject to discovery in this action.  "Documents, data, and

11 tangible things" shall be interpreted broadly to include writings,

12 records, files, correspondence, reports, memoranda, calendars,

13 diaries, minutes, electronic messages, voicemail, e-mail,

14 telephone message records or logs, computer and network activity

15 logs, hard drives, backup data, removable computer storage media

16 such as tapes, discs and cards, printouts, document image files,

17 Web pages, databases, spreadsheets, software, books, ledgers,

18 journals, orders, invoices, bills, vouchers, check statements,

19 worksheets, summaries, compilations, computations, charts,

20 diagrams, graphic presentations, drawings, films, charts, digital

21 or chemical process photographs, video, phonographic, tape or

22 digital recordings or transcripts thereof, drafts, jottings and

23 notes, studies or drafts of studies or other similar such

24 material.  Information that serves to identify, locate or link

25 such material, such as file inventories, file folders, indices,

26 and metadata, is also included in this definition.  Until the

27 parties reach an agreement on a preservation plan or the Court

28

5

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

1  orders otherwise, each party shall take reasonable steps to

2  preserve all documents, data, and tangible things containing

3  information potentially relevant to the subject matter of this

4  litigation.  In addition, counsel shall exercise all reasonable

5  efforts to identify and notify parties and non-parties of their

6  duties, including employees of corporate or institutional parties,

7  to the extent required by the Federal Rules of Civil Procedure.

8        **PROTECTIVE ORDER**

9        14.  The parties shall meet and confer regarding a protective

10  order for this proceeding.  Within 30 days of the entry of an

11  Order appointing interim lead class counsel, the parties shall

12  present a stipulated protective order, or in the event a

13  stipulation cannot be reached, their respective proposals.

14        **DISCLOSURES**

15        15.  Within 30 days of the entry of this Order, the parties

16  shall complete a Rule 26(f) conference and shall make initial

17  disclosures within 14 days thereafter.

18        **ALTERNATIVE DISPUTE RESOLUTION**

19        16.  Within 30 days of the entry of an Order appointing

20  interim lead class counsel, the parties shall discuss the

21  selection of an alternative dispute resolution process.

22        **FURTHER CASE MANAGEMENT CONFERENCE**

23        17.  The Court shall conduct a Status Conference on July 11,

24  2008 at 10:00 A.M.  The parties shall electronically file a Joint

25  Case Management Statement ten (10) court days prior thereto.

26  ///

27  ///

28                                    6

**APPLICABILITY OF ORDER**

18.  This Order shall apply to all actions subsequently filed in, or transferred to, this district that are related to this MDL proceeding.  Any party objecting to the application of this Order to a subsequently filed or transferred case shall file a motion for relief supported by good cause within 30 days of the case being added to the master docket.

DATED:  April 4, 2008



                UNITED STATES DISTRICT JUDGE

7

CONFIDENTIAL                                                    IRI-SUPP-000020

第 13 条　　　　证据保全

诉讼各方及其代理人被告知其保全证据之责任可能与本案有关。该责任及于本案中诉讼各方以及任何雇员、代理、订约人、运送人或者保管人或者其他占有经过合理预期属于本案事实调查范围之材料的案外人所占有、保管或控制的文件、数据和有形物。"文件、数据和有形物"应被扩大解释为包括手迹、记录、存档、通讯、报告、备忘录、日历、日记、纪要、电子讯息、语音邮件、电子邮件、电话留言记录或日志、计算机和网络活动日志、硬件驱动器、数据备份、可移除的计算机存储介质例如磁带、盘片和卡,打印输出、文本的图像文件、网页、数据库、电子表格、软件、书、分类帐、分录簿、订单、发票、帐单、凭证、支票对帐单、工作表、摘要、编撰、计算、示意图、图表、图示、图画、胶片、草图、数字或化学处理的照片、视频、磁带或者数字记录的录音或其副本、草稿、便条或笔记、论文或者论文草稿或其他类似材料。为了发现、定位或者联系上述材料的任何信息,例如文件清单、文件夹、目录和元数据,也包括在此定义中。除非各方就保全计划达成协议或者法庭另有命令,每一方均应当采取合理措施保全含有和本案的标的可能有关系的所有文件、数据和有形物。此外,代理人应当在联邦民事程序法要求的范围内,尽合理努力确定并告知各方和案外人,包括公司或单位之雇员其相关责任。

IRI-SUPP-000021

# Exhibit 12



January 24, 2023

**Certification**

**Welocalize Translations**

**TRANSLATOR'S DECLARATION:**

I, **Samuel Chong**, hereby declare:

That I possess advanced knowledge of the Chinese and English languages. The attached Chinese into English translation has been translated by me and to the best of my knowledge and belief, it is a true and accurate translation of: P-00000007

*(Digital or printed signature here above the line)*

**Samuel Chong**

**Project Number: BBLLP_2301_P0001**

15 W. 37th Street 4th Floor
New York, NY 10018
212.581.8870

| | |
|---|---|
| **From:** | Xi, Kevin <kevin.xi@pillsburylaw.com> on behalf of Xi, Kevin |
| **Sent:** | Monday, August 18, 2008 3:47 AM |
| **To:** | yan |
| **Cc:** | Tiffany, Joseph R.; Simpkins, Philip A.; Chan, Joseph W. K.; Callan, Terrence A. |
| **Subject:** | (Reuixing Alert - This may be a spam) CRT Antitrust Litigation - Information Retention Notice |

Attorney Yan.

Hello. As stated on the phone, attached is a memorandum and notice of information retention from the U.S. Court regarding the preservation of evidence requirements.

      Best regards!

**Kevin Xi** | PRC Legal Consultant
**Pillsbury Winthrop Shaw Pittman LLP**
━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━
Tel: 86.21.6335.1108 | Fax: 86.21.6335.1178
Suite 4305, Bund Center 222 Yan An Road East | Shanghai 2000002
Email: kevin.xi@pillsburylaw.com
**www.pillsburylaw.com**

1

| | |
|---|---|
| **From:** | Xi, Kevin <kevin.xi@pillsburylaw.com> on behalf of Xi, Kevin |
| **Sent:** | Monday, August 18, 2008 3:47 AM |
| **To:** | yan |
| **Cc:** | Tiffany, Joseph R.; Simpkins, Philip A.; Chan, Joseph W. K.; Callan, Terrence A. |
| **Subject:** | (瑞星提示-此邮件可能是垃圾邮件)显像管反垄断诉讼一信息保存通知 |

闫律师，

您好。如电话中所述，随函附上美国法院对于证据保全要求的备忘录和信息保存通知。

                        顺颂
商琪！

**Kevin Xi | PRC Legal Consultant**
**Pillsbury Winthrop Shaw Pittman LLP**
——————————————————————————————
Tel: 86.21.6335.1108 | Fax: 86.21.6335.1178
Suite 4305, Bund Center 222 Yan An Road East | Shanghai 2000002
Email: kevin.xi@pillsburylaw.com
www.pillsburylaw.com

1



February 22, 2023

**Certification**

**Welocalize Translations**

**TRANSLATOR'S DECLARATION:**

I, **Samuel Chong**, hereby declare:

That I possess advanced knowledge of the Chinese and English languages. The attached Chinese into English translation has been translated by me and to the best of my knowledge and belief, it is a true and accurate translation of: P-00000008

*(Digital or printed signature here above the line)*

**Samuel Chong**

**Project Number: BBLLP_2301_P0001**

15 W. 37th Street 4th Floor
New York, NY 10018
212.581.8870

**pillsbury**

Pillsbury Winthrop Shaw Pittman LLP

2475 Hanover Street | Palo Alto, CA 94304-1114 | tel 650.233.4500 | fax 650.233.4545

Memorandum

To: Mr. Yunlong Yan

From:  Joseph R. Tiffany II

Cc: Terrence A. Callan
     Philip A. Simpkins

Sent: August 7, 2008

C/M#: 043250-0000001

Subject: CRT Antitrust Litigation - Notice of Information Retention

Based on our prior communications and the Court Order on Preservation of Evidence (see Attachment I), we believe that Irico Group Corporation and Irico Display Devices Co., Ltd. (collectively, "Irico") have notified the appropriate Irico personnel regarding the retention of information potentially relevant to the subject matter of the CRT Antitrust Litigation at issue. The purpose of this memorandum is to advise Irico to distribute forms and documents to employees in addition to the notifications already previously made, which are intended to remind Irico personnel of the importance of complying with U.S. law requiring the preservation of potentially relevant information.

The "Notice of Information Retention" (the "Notice") in Annex II shall be distributed to all Irico personnel who may reasonably obtain any information and documents described in the Notice. In identifying the specific Irico personnel who should receive this notice, you should start with the "persons most knowledgeable" that we asked you to identify in our July 14, 2008, memorandum entitled "Request for Information Regarding the CRT Antitrust Litigation." In addition to the "persons most knowledgeable " described above, this notice shall be distributed to any employee (including directors, officers, executives, managers and other employees) who may reasonably have documents or electronic information relating to any of the subjects identified in the notice. Finally, this notice shall also be distributed to the appropriate Irico personnel responsible for information technology and records management. The above individuals in charge should be aware of the requirements described in this notice and should consider what steps to take to avoid the loss of any potentially relevant information in the course of the CRT antitrust litigation. The retention of all potentially relevant documents is extremely important, and we recommend that you provide this notice to an employee if you are in doubt as to whether he or she may have potentially relevant documents. Please contact us if you have any questions or would like to discuss who may have custody of potentially relevant documents.

For your convenience, we have created documents in the same format for distribution to Irico Group Corporation and Irico Display Devices Co., Ltd. employees. You may also amend this notice into two different document formats to be sent to the personnel of each of the two Irico companies as defendants if you wish to do so. You will find a space on the last page of this notice that requires each Irico employee receiving the notice to fill in his or her signature and title. By signing this notice, each employee acknowledges that he or she has read and will comply with this notice. The purpose of requiring employee signatures is to emphasize to employees the importance of complying with this notice and to provide written evidence that Irico has taken appropriate steps to comply with its information retention obligations in the proceeding. One copy of this notice is for each employee to keep and another copy is for the employee to sign and return. Please also provide us with a copy of the employee's signed notice, and we recommend that Irico retain a copy as well. We recommend that you create a list of all employees who received this notice so that you can identify each employee who received it. This list may also be used to

CONFIDENTIAL                              Translation                              IRI-SUPP-000023E

pillsbury

periodically remind each employee of his or her obligation to maintain documents and information, and may be updated to include new employees who will join Irico in the future and who will also receive this notice. Please send us this list for our records.

As mentioned above, this notice identifies the specific types of information that we believe we need to preserve at this stage. As the litigation progresses and we learn more about Irico's business, we may notify you of additional types of information that need to be retained. Subsequent developments in the litigation (including subsequent court decisions) will also result in certain types of information described in the notice no longer being required to be retained. However, please be sure to consult with us when you take any steps to release any of the types of information listed in the notice from retention.

We are still awaiting a response from Irico to the initial request for information we sent to you on July 22, 2008. Your response will provide us with the necessary information to help us determine if additional measures are needed for information retention. In addition, we have stated that it is important for us to obtain this information in order to try to convince plaintiff's counsel to remove Irico from the lawsuit. We hope to receive this information from you as soon as possible.

Please contact us if you have any questions regarding this Notice or any other aspect of the CRT antitrust litigation.

pillsbury

Annex I

Preservation of Evidence

The parties to the litigation and their agents were informed of their duty to preserve evidence that may be relevant to this case. This liability extends to documents, data and tangible things in the possession, custody or control of the parties to this action and any employee, agent, contractor, carrier or custodian, or other outsider in possession of material reasonably expected to be within the scope of the factual inquiry in this case. "Documents, data and tangible things" shall be interpreted broadly to include handwriting, records, archives, newsletters, reports, memos, calendars, diaries, minutes, electronic messages, voice mail, e-mail, telephone message records or logs, computer and network activity logs, hardware drives, data backups, removable computer storage media such as tapes, disks and cards, printouts, image files of text, Web pages, databases, spreadsheets, software, books, ledgers, ledger books, orders, invoices, bills, vouchers, check statements, worksheets, summaries, compilations, calculations, diagrams, charts, diagrams, drawings, films, sketches, digital or chemically manipulated photographs, videos, tape or digitally recorded recordings or copies thereof, drafts , notes or notebooks, papers or draft papers, or other similar materials. Any information for the purpose of discovering, locating, or linking the above material, such as file lists, folders, directories, and metadata, is also included in this definition. Unless the parties agree on a preservation plan or the court orders otherwise, each party shall take reasonable steps to preserve all documents, data, and tangible objects containing information that may be relevant to the subject matter of the case. In addition, the agent shall make reasonable efforts to determine and inform the parties and outsiders, including employees of the company or entity, of their relevant responsibilities, to the extent required by federal civil procedure law.

Annex II

Information Retention Notice

As you may already know, Irico Group Corporation and Irico Display Devices Co., Ltd. ("Irico") have been sued in the United States in connection with their sales of CRTs and products containing CRT ("CRT Products "). This lawsuit is known as the CRT Antitrust Lawsuit. Plaintiffs claim that Irico and several other companies that sell CRT and CRT products conspired to artificially inflate the prices of CRT and CRT products sold in the U.S. Irico denies that it engaged in any unlawful conduct and believes it will prevail in its case.

Irico, as a defendant in the CRT antitrust litigation, must ensure that all potentially relevant information regarding Irico's CRT business is retained. This Information Retention Notice is intended to confirm and emphasize our prior instructions regarding record retention.

All documents and information (in physical and electronic form) described below must be retained until the termination of this Information Retention Notice. This Information Retention Notice applies to information and documents stored in personal offices, shared file cabinets, and outside locations. It also includes digital or electronic information retained in all locations (including desktop computers, laptops, home computers, personal digital assistants, server files, removable devices, cell phones, etc.). Please read the attached instructions for retaining electronic information. If you have any questions or problems with compliance instructions, please contact [insert name and contact information of the Irico employee answering the question].

Any information covered by this Information Retention Notice shall not be destroyed. Irico's normal retention/destruction procedures for such information will be discontinued. **Destruction of any document or information subject to this Information Retention Notice is strictly prohibited.**

In order to clarify the information and documents that you must keep, we are providing the following list. You may not hold some or most of the types of documents listed below, and we provide you with a complete list here so that if you or any other Irico employee you supervise holds information or documents that fall into any of the categories listed below, you will understand the scope of documents that are subject to this Information Retention Notice.

**Information and documents that meet the following three criteria must be preserved and not discarded or deleted, unless otherwise notified:**

1. Period: a document or information created from January 1, 1995 to the present, or relating to or about this period; and
2. Product: relating to or concerning (a) CRT or (b) semi-finished and finished products containing CRT, such as televisions containing CRT, ("CRT Products"); and
3. Subject matter: documents or information relating to or concerning one or more of the following twelve areas:
   (a) Marketing and pricing data - revenue, sales, customer lists, dealer lists, sales agent or broker lists, prices, pricing guidelines, pricing policies, pricing strategies, quotations, offers, discounts, rebates, market shares, profits, marketing, marketing plans, market forecasts, or other business plans discussing any of

CONFIDENTIAL                    Translation                    IRI-SUPP-000026E

pillsbury

the foregoing subjects with respect to CRTs or CRT Products shipped to or sold in the United States;

(b) <u>Sales and transaction data</u> - invoices, orders, sales or supply contracts, sales and transaction data, and databases regarding CRTs or CRT Products shipped to or sold in the United States;

(c) <u>Production and Costs</u> - production, capacity, facility, inventory, costs or expenses relating to CRTs or CRT Products shipped to or sold in the United States;

(d) <u>Market research</u> - market studies or reports discussing the sale, price, competition, competitors or production of CRTs or CRT Products in the United States or worldwide, whether provided by Irico, consultants or other third parties;

(e) <u>Communications</u>, Agreements or Meetings with Competitors - Communications, agreements, understandings or meetings between Irico employees, agents or representatives, and employees, agents or representatives of Irico competitors (or between Irico competitors) regarding CRTs or CRT products sold in the United States or worldwide;

(f) <u>Distributor and Buyer Communications</u> - Communications, agreements or understandings between two or more distributors or resellers of CRTs or CRT products or two or more buyers of CRTs or CRT Products for sale in the United States or worldwide.

(g) <u>Internal or external communications and telephone and facsimile records</u> - documents that certify, reflect, or relate to communications with Irico or with third parties relating to any of the subjects in (a) through (f) above (e.g., emails, faxes, facsimile records, telephone messages, telephone bills, recorded or voicemail messages, telephone or meeting notes, memoranda, meeting summaries, or meeting notes);

(h) <u>Calendars and diaries</u> - calendars, journals, daily business schedules, trip reports, notepads, phone books, appointment planners and task lists;

(i) <u>Expense reports and travel documents</u> - expense reports and receipts, and travel-related documents, including itineraries, passports and visas;

(j) <u>Corporate financial information</u> - annual and quarterly financial reports, shareholder reports and financial statements;

(k) <u>Personnel records</u> - personnel records or data for current or former employees involved with CRTs or CRT Products in the U.S. or worldwide; or

(l) <u>Document Retention</u> – Document retention policies and procedures.

Irico takes its responsibility to preserve information related to litigation and government investigations very seriously. Failure to preserve evidence may subject Irico or its employees to potentially severe sanctions. You should be aware that your failure to comply with this Information Retention Notice may subject you to disciplinary action by Irico, including dismissal.

CONFIDENTIAL                          Translation                          IRI-SUPP-000027E

**pillsbury**

If you are in possession of any documents or electronic information covered by this information retention notice, or if you are aware of a shared space where such documents or information are stored, please retain such documents or information until further notice and notify [insert Irico contact list] of the existence and location of such documents or information. If you have any questions or are unsure whether this information retention notice applies to you or to documents or information in your possession, please contact [insert Irico contact list].

U.S. law firm Pillsbury Winthrop Shaw Pittman LLP has been retained as an external counsel to represent Irico in this matter. A representative of the firm may be in touch with you.

We would like you to confirm that you have read this Information Retention Notice and will comply with the instructions regarding the retention of information. Please sign this information retention notice in the space provided below and return it to [insert Irico contact name] before [date].

Thank you for your cooperation.

I have read and will comply with this information retention notice.

_____
Signature

_____
Name

_____
Title

_____
Date

CONFIDENTIAL                    Translation                    IRI-SUPP-000028E



Pillsbury Winthrop Shaw Pittman LLP
2475 Hanover Street | Palo Alto, CA 94304-1114 | tel 650.233.4500 | fax 650.233.4545

**备忘录**

至：　　闫云龙先生

发件人：Joseph R. Tiffany II

抄送：　Terrence A. Callan
　　　　Philip A. Simpkins

日期：　2008 年 8 月 7 日

C/M#: 043250-0000001

主题：　显像管反垄断诉讼—信息保存通知
_____

基于我们的先前通讯和证据保存法院令（见附件一），我们相虹彩虹集团公司和彩虹显示器件股份有限公司（以下合称"彩虹"）已经就保留与显像管反垄断诉讼争议标的潜在相关的信息通知适当的彩虹人员。本备忘录旨在建议彩虹在先前已进行的通知外，再向员工分发格式文件，旨在提醒彩虹人员遵守美国法律要求保存潜在相关信息的重要性。

附件二中的"信息保存通知"（"通知"）应向所有可能合理获得通知中描述的任何信息和文件的彩虹人员进行分发。在确定应收取本通知的具体彩虹人员时，贵方应从"最知悉人员"着手，在我们 2008 年 7 月 14 日题为"关于显像管反垄断诉讼信息请求"的备忘录中，我们已要求贵方进行确定。除上述"最知悉人员"外，还应将本通知向任何可能合理拥有与通知中确定的任何主题相关的文件或电子信息的员工（包括董事、高管、行政主管、经理和其他员工）进行分发。最后，本通知还应向负责信息技术和记录管理的适当彩虹人员分发。上述负责人应知悉本通知所述的要求并应考虑采取何种措施来避免在显像管反垄断诉讼进行过程中丢失任何潜在相关信息。保存所有潜在相关文件极为重要，若贵方对某位员工是否可能拥有潜在相关文件存有疑问时，我们建议贵方向其提供本通知。若贵方有任何问题，或想就潜在相关文件的保管人选进行讨论，请与我们联系。

为贵方方便起见，我们制作了相同格式的文件供您分发给彩虹集团公司和彩虹显示器件股份有限公司员工。若贵方希望将本通知修改成两份不同的文件格式分别向作为被告的两家彩虹公司的人员发送，也是可以的。您会发现，本通知最后一页留有要求收到通知的每位彩虹员工填写其签名和职务的空格。各员工通过签署本通知确认其已经阅读并将遵守本通知。要求员工签名旨在向员工强调遵守本通知的重要性，并提供彩虹已经采取适当措施履行其在诉讼中的信息保存义务的书面证据。本通知一份供每位员工用以留存，另一份供员工签署并归还。也请向我们提供一份员工签名的通知，我们也建议彩虹保留一份。我们建议贵方制作一份记录所有收到本通知的员工名单，以便确认每位收到通知的员工。此名单

# pillsbury

还可以用以定期提醒每位员工保存文件和信息的义务，并可进行更新以添加将来加入彩虹的新员工，这些新员工也将收到本通知。请将这份名单发送给我们供我们存档。

如上所提到的，本通知确定了我们认为在现阶段需要保存的信息的具体种类。随着诉讼的推进以及我们对彩虹业务的进一步了解，我们可能会通知贵方需要保留的其他信息种类。诉讼的后续发展（包括后续法院裁定）还将导致通知中描述的某些信息种类无需再进行保留。但是，贵方在对通知中所列的任何信息种类采取任何措施解除保存时，请务必向我们进行咨询。

我们还在等待彩虹就我们在 2008 年 7 月 22 日向贵方发送的初步信息请求作出回复。贵方的回复将为我们提供必要的信息，以帮助我们确定是否还需采取其他措施进行信息保存。此外，我们曾指出过，我们必须获得这些信息以便尽力说服原告律师将彩虹从诉讼中取消。我们希望能尽快从贵方收到这些信息。

若贵方就本通知或显像管反垄断诉讼的任何其他方面有任何疑问，请与我们联系。



附件一

<div align="center">证据保全</div>

诉讼各方及其代理人被告知其保全证据之责任可能与本案有关。该责任及于本案中诉讼各方以及任何雇员、代理、订约人、运送人或者保管人或者其他占有经过合理预期属于本案事实调查范围之材料的案外人所占有、保管或控制的文件、数据和有形物。"文件、数据和有形物"应被扩大解释为包括手迹、记录、存档、通讯、报告、备忘录、日历、日记、纪要、电子讯息、语音邮件、电子邮件、电话留言记录或日志、计算机和网络活动日志、硬件驱动器、数据备份、可移除的计算机存储介质例如磁带、盘片和卡,打印输出、文本的图像文件、网页、数据库、电子表格、软件、书、分类帐、分录簿、订单、发票、帐单、凭证、支票对帐单、工作表、摘要、编撰、计算、示意图、图表、图示、图画、胶片、草图、数字或化学处理的照片、视频、磁带或者数字记录的录音或其副本、草稿、便条或笔记、论文或者论文草稿或其他类似材料。为了发现、定位或者联系上述材料的任何信息,例如文件清单、文件夹、目录和元数据,也包括在此定义中。除非各方就保全计划达成协议或者法庭另有命令,每一方均应当采取合理措施保全含有和本案的标的可能有关系的所有文件、数据和有形物。此外,代理人应当在联邦民事程序法要求的范围内,尽合理努力确定并告知各方和案外人,包括公司或单位之雇员其相关责任。

CONFIDENTIAL                                                    IRI-SUPP-000025

**pillsbury**

附件二

<div align="center">信息保存通知</div>

你可能已经知道，彩虹集团公司和彩虹显示器件股份有限公司（"彩虹"）就其销售显像管和包含显像管的产品（"显像管产品"）在美国被起诉。本诉讼称为显像管反垄断诉讼。原告主张彩虹和其他几家销售显像管和显像管产品的公司共谋人为地抬高在美国销售的显像管和显像管产品的价格。彩虹否认其参与过任何非法行为，并相信其会胜诉。

彩虹作为显像管反垄断诉讼中的被告，必须确保对关于彩虹显像管业务的所有潜在相关信息进行保存。本信息保存通知旨在确认和强调我们先前对保存记录作出的指示。

必须保存以下描述的所有文件和信息（有形和电子形式），直至本信息保存通知终止。本信息保存通知适用于存放在个人办公室、共享文档柜和外部场所的信息和文件。还包括保留在所有地方（包括台式电脑、笔记本电脑、家用电脑、个人数字助理、服务器文档、可移动设备、手机等）的数字或电子信息。请阅读附件中保存电子信息的说明。若你对遵守说明有任何疑问或问题，请联系<mark>【插入回答问题的彩虹员工的姓名和联系信息。】</mark>

不得销毁本信息保存通知中涉及的任何信息。彩虹对上述信息的正常保留/销毁程序即告中止。**严格禁止损毁受限于本信息保存通知的任何文件或信息。**

为了使你明确必须保存的信息和文件，我们现提供以下清单。你可能并不持有如下所列的某些或多数文件种类，我们在此向你提供完整清单，这样在你或你监督的任何其他彩虹员工持有属于任何如下种类的信息或文件时，你就会明白受限于本信息保存通知的文件范围。

**符合以下三项标准的信息和文件必须进行保存，不得丢弃或删除，除非另有通知：**

1.　　期间：自 1995 年 1 月 1 日至今创建的，文件或信息，或涉及或关于此期间的文件或信息；且

2.　　产品：涉及或关于(a)显像管或(b)包含显像管的半成品和成品，如包含显像管的电视机，（"显像管产品"）；且

3.　　标的：涉及或关于以下十二个领域中一个或多个的文件或信息：

　　(a)　　营销和价格数据 – 关于运往美国或在美国销售的显像管或显像管产品的收入、销售额、客户名单、经销商名单、销售代理或经纪商名单、价格、定价方针、定价政策、定价战略、报价、发盘、折扣、回扣、

IRI-SUPP-000026

pillsbury

市场份额、利润、营销、营销计划、市场预测、或其他讨论任何上述主题的商业计划；

(b) <u>销售和交易数据</u> – 关于运往美国或在美国销售的显像管或显像管产品的发票、订单、销售或供应合同、销售和交易数据、以及数据库；

(c) <u>生产和成本</u> – 关于运往美国或在美国销售的显像管或显像管产品的产量、产能、设备、存货、成本或费用；

(d) <u>市场研究</u> – 讨论美国或全球显像管或显像管产品销售、价格、竞争、竞争者或生产的市场研究或报告，无论是由彩虹、顾问或其他第三方提供；

(e) <u>与竞争者的通讯、协议或会议</u> – 彩虹员工、代理人或代表，与彩虹竞争者员工、代理人或代表（或彩虹竞争者间的）之间的关于在美国或全球销售的显像管或显像管产品的通讯、协议、谅解或参与的会议；

(f) <u>经销商和买方通讯</u> – 两个以上显像管或显像管产品的经销商或转销商或两个以上买方间关于在美国或全球销售的显像管或显像管产品的通讯、协议或谅解；

(g) <u>内部或外部通讯及电话和传真记录</u>–证明、反映、或涉及与彩虹进行通讯或与第三方通讯的与上述(a)至(f)中的任何主题相关的文件（如电子邮件、传真、传真记录、电话留言、电话帐单、录音或语音邮件、电话或会议记录、备忘录、会议摘要或会议记要）；

(h) <u>日历和日记</u> – 日历、日记、日常商务时间表、旅行报告、记事本、电话簿、约会计划本和任务表；

(i) <u>费用报告和旅行文件</u> – 费用报告和收据，及旅行相关文件，包括行程表、护照和签证；

(j) <u>公司财务信息</u> – 年度和季度财务报告、股东报告和财务报表；

(k) <u>人员记录</u> – 涉及美国或全球显像管或显像管产品的在职或离职员工的人员记录或数据；或

(l) <u>文件保留</u> – 文件保留政策和程序。

彩虹非常重视其保存与诉讼和政府调查相关的信息的责任。若未能保存证据，彩虹或其员工会被潜在地施加严厉制裁。你应意识到若你不能遵守本信息保存通知，彩虹会对你进行纪律处罚，包括开除。

# pillsbury

若你持有本信息保存通知中涉及的任何文件或电子信息，或你知悉存放该等文件或信息的共享区域，请在得到进一步通知前保存该等文件或信息并就该等文件或信息的存在和处所通知【插入彩虹联系人名单】。若你有任何问题或者无法确定本信息保存通知是否适用于你或你所持有的文件或信息，请联系【插入彩虹联系人名单】。

美国必百瑞律师事务所已被聘为外部顾问在此事项中代表彩虹。该所的代表可能会联系你。

我们希望你确认你已经阅读本信息保存通知并将遵守关于信息保存的说明。请在以下空白处签署本信息保存通知并于【日期】前归还【插入彩虹联系人姓名】。

谢谢你的配合。


我已经阅读并将遵守本信息保存通知。


_____

签名

_____

姓名

_____

职务

_____

日期

CONFIDENTIAL                                                                IRI-SUPP-000028

# Exhibit 13

1   BAKER BOTTS L.L.P.
    John M. Taladay (*pro hac vice*)
2   Evan J. Werbel (*pro hac vice*)
    Thomas E. Carter (*pro hac vice*)
3   Andrew L. Lucarelli (*pro hac vice*)
    700 K Street, N.W.
4   Washington, D.C. 20001
    (202) 639-7700
5   (202) 639-7890 (fax)
    Email: john.taladay@bakerbotts.com
6           evan.werbel@bakerbotts.com
            tom.carter@bakerbotts.com
7           drew.lucarelli@bakerbotts.com

8   *Attorneys for Defendants*
    *Irico Group Corp. and*
9   *Irico Display Devices Co., Ltd.*

10

                  **UNITED STATES DISTRICT COURT**
11
            **FOR THE NORTHERN DISTRICT OF CALIFORNIA**
12
                       **OAKLAND DIVISION**
13

14   IN RE: CATHODE RAY TUBE (CRT)      )   Master File No. 07-cv-05944-JST
     ANTITRUST LITIGATION,              )
15                                      )   MDL No.: 1917
                                        )
16   THIS DOCUMENT RELATES TO:          )
                                        )
17   *ALL DIRECT PURCHASER ACTIONS*     )   **DECLARATION OF YAN**
                                        )   **YUNLONG RE DEPOSITION**
18   *ALL INDIRECT PURCHASER ACTIONS*   )   **TESTIMONY AND IRICO**
                                        )   **DEFENDANTS' INTERROGATORY**
19                                      )   **RESPONSES**
                                        )
20

21

22

23

24

25

26

27

28

     DECL. OF YAN YUNLONG RE DEPOSITION                    MASTER FILE NO. 07-CV-05944-JST
     TESTIMONY & INTERROGATORY RESPS.                                      MDL No. 1917

1

2

I, Yan Yunlong, declare as follows:

本人，闫云龙，声明如下：

3

4

1.      I am a citizen of the People's Republic of China and reside in Shaanxi Province, People's Republic of China.

5

本人是中华人民共和国公民，居住地为中华人民共和国陕西省。

6

7

8

9

10

11

12

2.      I am currently the General Counsel of Irico Group Corp. ("Irico Group") and the Director of Irico Group's Legal Affairs Department. I have been involved in the management of this litigation since 2008. I was a member of a Litigation Committee established by Irico Group Corp. in June 2008 to coordinate Irico Group Corp. and Irico Display Devices Co., Ltd.'s ("Irico Display," collectively "Irico") response to this litigation.  At the time the Litigation Committee was formed, I served as Legal Affairs Manager for Irico Group's Enterprise Management Department.

13

14

15

16

17

本人目前是彩虹集团公司（"彩虹集团"）的总法律顾问和彩虹集团法务部部长。本人自2008年以来一直参与此诉讼的管理工作。彩虹集团公司于2008年为了协调彩虹集团公司和彩虹显示器件股份有限公司（"彩虹显示"，统称"彩虹"）对此案的应诉而成立了诉讼委员会，本人是诉讼委员会的成员之一。诉讼委员会成立时，我担任彩虹集团企业管理部法务经理。

18

19

20

3.      I was deposed in this matter from September 27 through September 29, 2022.  I also provided input for Irico's responses to Indirect Purchaser Plaintiffs' 3rd and 4th Sets of Interrogatories served by Irico on August 13, 2021, January 21, 2022, and February 23, 2022.

21

22

23

本人于2022年9月27日至9月29日期间就此案作证。我还为彩虹于 2021 年 8 月 13 日、2022 年 1 月 21 日和 2022 年 2 月 23 日就间接购买者原告对彩虹的第三和第四组质询的回复提供了意见。

24

25

26

27

28

4.      In the process of reviewing the transcript of my deposition testimony and the interrogatory responses, I realized that I was confused regarding some questions and gave inaccurate testimony contained within pages 123 through 139 of the transcript, as well as inaccurate input for the interrogatory responses listed above.  This information related to certain events in 2008 following the formation of the Litigation Committee, specifically

relating to Irico's efforts to preserve documents for the litigation.

在审阅我的证词笔录和质询回答的过程中，我意识到我对一些问题没弄清楚，并在证词笔录的第 123 页至 139 页中提供了一些不准确的证词，同时上述质询回复中也存在错误。该信息与 2008 年诉讼委员会成立后的某些情况有关，特别是有关彩虹为诉讼保存文件所做的努力。

5.    I submit this Declaration to clarify and correct my testimony and recollections regarding these events.

我提交本声明以澄清和纠正我对这些情况的证词和回忆。

6.    In August 2008, I received an email from Irico's outside counsel at the time, Pillsbury Winthrop Shaw Pittman LLP ("Pillsbury"), attaching a document containing Pillsbury's privileged legal advice to Irico regarding preservation of documents for the litigation.

2008 年 8 月，我收到了彩虹当时的外部律师 Pillsbury Winthrop Shaw Pittman LLP（"Pillsbury"）的一封电子邮件，其附件包含了 Pillsbury 就此诉讼的文件保存问题向彩虹提供的享有律师客户特权的法律建议。

7.    In a subsequent meeting of the Litigation Committee in August 2008, I printed and provided copies of the privileged document from Pillsbury to each of the Litigation Committee members. The Litigation Committee members reviewed the document and discussed the legal advice provided by Pillsbury.

在之后2008年8月的诉讼委员会会议上，我打印出向其他所有诉讼委员会的成员们出示了这份享有律师客户特权的文件的副本。诉讼委员会的成员们审阅了此文件并讨论了Pillsbury提供的法律意见。

8.    Following this discussion, the Litigation Committee members were tasked with the responsibility of identifying any relevant documents in their possession and preserving any such materials, as well as notifying subordinates who might have any relevant documents to preserve those materials, if any existed.  This instruction was given orally.

在讨论之后，交给诉讼委员会成员的任务是，如存在相关材料，则确认他
们已掌握的相关材料并予以保存，同时通知可能拥有任何相关文件的下属去保存这些资
料。该指示是口头给出的。

9.    While the Litigation Committee members did receive copies of and discuss the
privileged document from Pillsbury, I do not recall whether the Litigation Committee members
discussed the specific categories of documents that each Litigation Committee member would
preserve and instruct other employees to preserve.   It is my understanding that each Litigation
Committee member determined independently which subordinates should be contacted
regarding the preservation efforts and what information regarding preservation should be
relayed to each employee.  Any statement to the contrary in my testimony or Irico's
interrogatory responses is inaccurate.

虽然诉讼委员会的成员们的确收到了Pillsbury具有律师客户特权的文件的
副本，并进行了讨论，但我不记得诉讼委员会成员是否讨论过每位诉讼委员会成员将保
存和指示其他员工保存的文件的特定类别。据我了解，每位诉讼委员会成员都独立确定
应就保全工作联系哪些下属，以及应将哪些保全的相关信息传达给员工。在我证词中或
彩虹的质询回复中的任何相反陈述都是不准确的。

10.    I do not recall further discussion with the Litigation Committee members in
2008 on the issue of document preservation after this meeting.

我不记得在2008年这次会议后诉讼委员会成员还就文件保存问题进行过进
一步的讨论。

Executed this 18th day of November, 2022, in Xianyang, Shaanxi Province, People's Republic
of China.

于 2022 年 11 月  18 日在中华人民共和国陕西省咸阳市签署。

Mr. Yan Yunlong
闫云龙先生

DECL. OF YAN YUNLONG RE DEPOSITION
TESTIMONY & INTERROGATORY RESPS.

3

MASTER FILE No. 07-cv-05944-JST
MDL No. 1917

# Exhibit 14

1    BAKER BOTTS L.L.P.
     John M. Taladay (*pro hac vice*)
2    Evan J. Werbel (*pro hac vice*)
     Thomas E. Carter (*pro hac vice*)
3    Andrew L. Lucarelli (*pro hac vice*)
     700 K Street, N.W.
4    Washington, D.C. 20001
     (202)-639-7700
5    (202)-639-7890 (fax)
     Email: john.taladay@bakerbotts.com
6          evan.werbel@bakerbotts.com
           tom.carter@bakerbotts.com
7          drew.lucarelli@bakerbotts.com

8     *Attorneys for Defendants*
     *IRICO GROUP CORP. and*
9    *IRICO DISPLAY DEVICES CO., LTD.*

10

11                    **UNITED STATES DISTRICT COURT**

12                   **NORTHERN DISTRICT OF CALIFORNIA**

13                          **OAKLAND DIVISION**

14

15   IN RE: CATHODE RAY TUBE (CRT)            Master File No. 4:07-cv-05944-JST
     ANTITRUST LITIGATION                     (N.D. Cal.)
16
                                              MDL No. 1917
17   _____
     This Document Relates to:              **IRICO DEFENDANTS' THIRD**
18                                          **SUPPLEMENTAL OBJECTIONS AND**
     ALL INDIRECT PURCHASER ACTIONS         **RESPONSES TO INDIRECT**
19                                          **PURCHASER PLAINTIFFS' THIRD**
                                            **SET OF INTERROGATORIES TO**
20                                          **IRICO GROUP CORPORATION AND**
                                            **IRICO DISPLAY DEVICES CO., LTD.**
21   _____

22      PROPOUNDING PARTY:    Indirect Purchaser Plaintiffs

23      RESPONDING PARTIES:    Irico Group Corporation; Irico Display Devices Co., Ltd.

24      SET NUMBER:      Third (3)

25

26

27

28

1        Pursuant to Federal Rules of Civil Procedure 26 and 33, Irico Group Corporation ("Irico

2  Group") and Irico Display Devices Co, Ltd. ("Irico Display," collectively, "Irico" or "Irico

3  Defendants") hereby provides its third supplemental responses to the Indirect Purchaser Plaintiffs'

4  ("Plaintiff") Third Set of Interrogatories to Irico Group Corporation and Irico Display Devices

5  Co., Ltd., dated July 7, 2021 ("Interrogatories"), as modified by the Special Master's December

6  22, 2021 Order Re DPPs' Motion to Compel Interrogatory Further Answers (ECF No. 5978).

7  Irico is supplementing these responses pursuant to its obligations under Rule 26(e) of the Federal

8  Rules of Civil Procedure and based upon newly discovered facts. Irico reserves the right to amend

9  or supplement these Supplemental Objections and Responses (the "Responses") to the extent

10  allowed by the Federal Rules of Civil Procedure and the Local Rules of Practice in Civil

11  Proceedings before the United States District Court for the Northern District of California ("Local

12  Rules"). Subject to and without waiving any of Irico's General and Specific Objections as set

13  forth below, Irico is willing to meet and confer with Plaintiff regarding such General and Specific

14  Objections.

15        The following Responses are made only for purposes of this case. The Responses are

16  subject to all objections as to relevance, materiality and admissibility, and to any and all

17  objections on any ground that would require exclusion of any response if it were introduced in

18  court. All evidentiary objections and grounds are expressly reserved.

19                          **GENERAL OBJECTIONS**

20        Irico makes the following General Objections to Plaintiff's Interrogatories:

21        1.        Irico's Responses are based upon information available to and located by Irico as

22  of the date of service of these Responses. In responding to Plaintiff's Interrogatories, Irico states

23  that it has conducted a diligent search, reasonable in scope, of those files and records in its

24  possession, custody, or control believed to likely contain information responsive to Plaintiff's

25  Interrogatories.

26        2.        No express, incidental, or implied admissions are intended by these Responses and

27  should not be read or construed as such.

28        3.        Irico does not intend, and its Responses should not be construed as, an agreement

or acquiescence with any characterization of fact, assumption, or conclusion of law contained in or implied by the Requests.

4.     Irico objects to Plaintiff's Interrogatories to the extent that they are overly broad, unduly burdensome, oppressive, and duplicative to the extent that they seek information or documents that are already in the possession, custody, or control of Plaintiff.

5.     Irico objects to Plaintiff's Interrogatories to the extent that they seek to impose obligations on Irico beyond those of the Federal Rules of Civil Procedure, the Local Rules, or any Order of this Court.

6.     Irico objects to Plaintiff's Interrogatories to the extent that they request duplicative discovery in violation of the Order Re Discovery And Case Management Protocol, ECF No. 1128. *See* Order Re Plaintiffs' Motions To Compel Supplemental Discovery From Toshiba And Panasonic, ECF No. 4128, at 4 ("The Discovery Protocol (ECF No 1128), requires parties to coordinate discovery and not file duplicative discovery. . . . The benefit redounds to all parties on both sides of the litigation, by conserving the efforts required by plaintiffs and protecting defendants against unnecessary duplication of effort.") (Report and Recommendation adopted in full at ECF No. 4256).

7.     Irico objects to Plaintiff's Interrogatories to the extent they seek information that is not relevant or disproportionate to the needs of the case.

8.     Irico objects to Plaintiff's Interrogatories to the extent that they are vague, ambiguous, or susceptible to more than one interpretation. Irico shall attempt to construe such vague or ambiguous Interrogatories so as to provide for the production of responsive information that is proportionate to the needs of the case. If Plaintiff subsequently asserts an interpretation of any Interrogatory that differs from Irico's understanding, Irico reserves the right to supplement or amend its Responses.

9.     Irico objects to Plaintiff's Interrogatories to the extent that they contain terms that are insufficiently or imprecisely defined. Irico shall attempt to construe such vague or ambiguous Interrogatories so as to provide for the production of responsive information that is proportionate to the needs of the case.

10.     Irico objects to Plaintiff's Interrogatories to the extent that they seek information that is protected from disclosure by the attorney-client privilege, work product doctrine, joint defense or common interest privilege, self-evaluative privilege, or any other applicable privilege or immunity. Irico will provide only information that it believes to be non-privileged and otherwise properly discoverable. Nothing in Irico's responses is intended nor should be construed as a waiver of any such privilege or immunity. The inadvertent or mistaken provision of any information or responsive documents subject to any such doctrine, privilege, protection or immunity from production shall not constitute a general, inadvertent, implicit, subject-matter, separate, independent or other waiver of such doctrine, privilege, protection or immunity from production.

11.     Irico objects to Plaintiff's Interrogatories to the extent that they call for information that is not in the possession, custody, or control of Irico. Irico also objects to the extent that any of Plaintiff's Interrogatories seek information from non-parties or third parties, including but not limited to any of Irico's subsidiary or affiliated companies.

12.     Irico objects to Plaintiff's Interrogatories to the extent that responding would require Irico to violate the privacy and/or confidentiality of a third party or confidentiality agreement with a third party.

13.     Irico objects to Plaintiff's Interrogatories to the extent that they seek information that is publicly available, already in Plaintiffs' possession, custody, or control, or more readily available from other sources.

14.     Irico objects to Plaintiff's Interrogatories to the extent that they seek information or documents concerning transactions outside the United States. Such Requests are unduly burdensome and disproportionate to the needs of the case as Plaintiffs' class definition is confined to "individuals and entities that indirectly purchased Cathode Ray Tube Products . . . in the United States" (see Indirect Purchaser Plaintiffs' Fifth Consolidated Amended Complaint ("Complaint") dated September 19, 2019).

15.     Irico objects to Plaintiff's Interrogatories to the extent that compliance would require Irico to violate the laws, regulations, procedures, or orders of a judicial or regulatory body

1  of foreign jurisdictions.

2      16.    Irico's responses, whether now or in the future, pursuant to Plaintiff's

3  Interrogatories should not be construed as either (i) a waiver of any of Irico's general or specific

4  objections or (ii) an admission that such information or documents are either relevant or

5  admissible as evidence.

6      17.    Irico objects to Plaintiff's Interrogatories to the extent that they are compound

7  and/or contain discrete subparts in violation of Federal Rule of Civil Procedure 33(a)(1).

8      18.    Irico objects to Plaintiff's Interrogatories to the extent that they state and/or call for

9  legal conclusions.

10      19.    Irico objects to the Interrogatories to the extent that they contain express or implied

11  assumptions of fact or law with respect to the matters at issue in this case.

12      20.    Irico objects to the Interrogatories to the extent they seek information or

13  documents that cannot be removed or transmitted outside China without violating the laws and

14  regulations of that country, including but not limited to restrictions on the transmission of state

15  secrets or trade secrets as those terms are defined under Chinese law.

16      21.    Irico reserves the right to assert additional General and Specific Objections as

17  appropriate to supplement these Responses.

18      These General Objections apply to each Interrogatory as though restated in full in the

19  responses thereto. The failure to mention any of the foregoing General Objections in the specific

20  responses set forth below shall not be deemed as a waiver of such objections or limitations.

21  ## **GENERAL OBJECTIONS TO DEFINITIONS AND INSTRUCTIONS**

22      1.    Irico objects to the definition of "DPPs' Written Discovery" (Definition No. 1) on

23  the grounds that it is vague, ambiguous and overly broad.

24      2.    Irico objects to the definition of "IPPs' Written Discovery" (Definition No. 2) on

25  the grounds that it is vague, ambiguous and overly broad.

26      3.    Irico objects to the definition of "Document" (Definition No. 3) to the extent it

27  seeks to impose requirements that are beyond those imposed by the Federal Rules of Civil

28  Procedure, the Local Rules, any Order of this Court, or any other applicable laws.

4.      Irico objects to the definitions of "Including" and "Relating" (Definition No. 4) on the grounds that it calls for a legal conclusion and is otherwise vague, ambiguous, and overly broad. Irico further objects to this definition to the extent that it attempts to impose burdens on Irico beyond those imposed by the Federal Rules of Civil Procedure. Irico further objects to this definition to the extent that it seeks information protected by the attorney client or other applicable privilege, attorney work product doctrine, or otherwise seeks to violate rights of privacy under U.S. or foreign law.

5.      Irico objects to the definitions of "You" and "Your" (Definition No. 5) to the extent that Plaintiff defines those terms to include the Irico's "present and former members, officers, agents, employees, and all other persons acting or purporting to act on their behalf, including all present and former members, officers, agents, employees, and all other persons exercising or purporting to exercise discretion, making policy, and make decisions." This definition is overbroad, unduly burdensome, vague, and ambiguous. In particular, Irico objects to this definition to the extent it purports to request information beyond the possession, custody, or control of Irico Group or Irico Display, including but not limited to information in the possession of non-parties and third parties where Irico lacks any duty to obtain or otherwise search for the information and for whom the Court lacks personal jurisdiction. Irico also objects to the inclusion of all "present or former employees, officers, directors, agents . . . or any other person acting on [the] behalf [of]" Irico within this definition to the extent it purports to encompass information that is protected by attorney-client privilege, work product protection or any other applicable doctrine, privilege, protection or immunity or otherwise calls for a legal conclusion.

6.      Irico objects to Instruction No. 1 (related to disclosure of additional information) to the extent it purports to impose burdens or obligations broader than, inconsistent with, or not authorized under the Federal Rules of Civil Procedure, including, without limiting the generality of the foregoing, Rule 26(e).

7.      Irico objects to Instruction No. 2 (related to production of business records) to the extent that it purports to impose burdens or obligations broader than, inconsistent with, or not authorized under the Federal Rules of Civil Procedure, including, without limiting the generality

1    of the foregoing, Rule 33(d), Rule 26(b). Irico further objects to this Instruction to the extent that

2    it purports to impose burdens or obligations broader than, inconsistent with, or not authorized

3    under, the Local Rules and any Orders of the Court.

4        8.       Irico objects to Instruction No. 3 (related to privileged information) to the extent

5    that it purports to impose burdens or obligations broader than, inconsistent with, or not authorized

6    under the Federal Rules of Civil Procedure, including, without limiting the generality of the

7    foregoing, Rule 33(d), Rule 26(b)(5)(A) and Rule 26(e)(1). Irico further objects to this Instruction

8    to the extent that it purports to impose burdens or obligations broader than, inconsistent with, or

9    not authorized under, the Local Rules and any Orders of the Court, and on the grounds that it is

10   vague, ambiguous, and inconsistent with common usage. Irico further objects to this Instruction to

11   the extent it seeks information that would disclose personal confidential information and/or

12   violate any and all rights of privacy under the United States Constitution or Article I of the

13   Constitution of the State of California, or any other applicable law or state constitution, or that is

14   otherwise prohibited from disclosure because to do so would cause Irico to violate legal and/or

15   contractual obligations to any other persons or entities.

16                    **SPECIFIC RESPONSES TO INTERROGATORIES**

17   **INTERROGATORY NO. 2**

18       State whether Irico implemented a litigation hold to preserve potentially discoverable

19   evidence relating to the alleged misconduct in this litigation. If your answer is in the affirmative:

20       (a) state the date (or dates) that the litigation hold notice was issued;

21       (b) state the date when the litigation hold was implemented;

22       (c) describe in detail the scope of the litigation hold, including the categories of

23           documents, electronically stored information (ESI), or other tangible evidence that are

24           subject to the litigation hold;

25       (d) identify the recipients of the litigation hold notice; and

26       (e) describe any steps taken to ensure compliance with the litigation hold.

27   **RESPONSE TO INTERROGATORY NO. 2**

28       Irico reasserts and incorporates each of the General Objections and Objections to the

1   Definitions and Instructions set forth above. Irico further objects that this interrogatory to the

2   extent that it requests the disclosure of information protected by the attorney-client privilege or

3   attorney work product doctrine.

4       Subject to and without waiving the objections stated above, Irico responds that, in summer

5   2008, the company orally instructed key employees to preserve documents related to sales of CRT

6   to the United States. It was determined that Irico possessed no such documents. As discussed in

7   more detail below, all documents required to be maintained under Chinese law were preserved at

8   that time. Around September 2017, when Irico reentered the litigation for the purposes of

9   contesting jurisdiction and asserting a foreign sovereign immunity defense, Irico confirmed the

10  need to preserve existing documents relevant to the litigation from the time period 1995 to 2007

11  with managers from each operational department, including finance and accounting, legal, HR,

12  and sales. The managers conveyed this message orally to relevant employees under their

13  supervision.

14      In addition to the preservation efforts described above, and as Irico has explained in other

15  discovery responses, *see* Irico's Supplemental Objections and Responses to Interrogatory No. 16

16  as stated in Irico Defendants' Fourth Supplemental Objections and Responses to Direct Purchaser

17  Plaintiffs' First Set of Interrogatories, pursuant to Chinese law, the Ministry of Finance and State

18  Archives Administration requires companies like Irico to maintain and preserve certain

19  documents and materials, including but not limited to original invoices for sales, accounting

20  books, general ledgers, financial accounting reports, and bank statements. *See* IRI-CRT-

21  00000900. Irico is not aware of such archived records from 1995-2007 being destroyed given the

22  retention periods required by the Chinese government. In addition, Irico's internal practices

23  included the maintenance of additional archives of material related to operational documents,

24  administrative documents, technical records and communications with agencies of the PRC

25  government and Chinese Communist Party.[1] Irico is not aware of any such records from the 1995

26  to 2007 time period that were preserved in the various archives being destroyed.

27  ///

28

---

[1] Additional information regarding the documents maintained in Irico's archives can be found in Irico's December 18, 2020 letter to Plaintiffs regarding discovery issues.

1 **FIRST SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 2**

2 On December 22, 2021, the Special Master issued the Order Re DPPs' Motion to Compel

3 Interrogatory Further Answers, ECF No. 5978, directing Irico to "to furnish supplemental

4 responses to Interrogatory No 2 as set forth below" and listing eleven (11) enumerated

5 paragraphs. In this Supplemental Response, Irico repeats below each issue identified by the

6 Special Master, corresponding to the enumerated paragraphs, and responds as follows:

7 **ISSUE NO. 1**

8 With respect to the communications or work product that Irico objected to identifying in

9 its response to Interrogatory No 2, Irico is directed to identify the dates of any such

10 communications or work product, the parties thereto, the subjects thereof and sufficient

11 information to enable the PPs and the undersigned to determine whether a claim of privilege or

12 protection is warranted.

13 **RESPONSE TO ISSUE NO. 1**

14 With respect to Irico's objection to discovery of any privileged communications or work

15 product requested by Interrogatory No. 2, Irico responds that it is not objecting to or withholding

16 any information on such a basis and therefore is not identifying any information in response to

17 Issue No. 1.

18 **ISSUE NO. 2**

19 Identify by names and positions at Irico at all times from 2007 to the present the "key

20 employees" referred to in Irico's response to Interrogatory No 2.

21 **RESPONSE TO ISSUE NO. 2**

22 Irico provides the following information about known "key employees" referenced in

23 response to Interrogatory No. 2.

24 - Tao Kui
25   - 05/2001 – 09/2013
     - Irico Group, Party Secretary and Deputy General Manager
26   - 03/2013
     - Member of the Party Leading Group of China Electronics Information
27       Industry Group Co., Ltd.
   - 05/2013 – approx. 2014
28     - Irico Group, Party Secretary and Director (*retired*)

- Wang Ximin
  - 2007 – 09/2011
    - Irico Display, General Manager
  - 09/2011 – 09/2013
    - Irico Group, General Economist and General Manager of Shaanxi Branch (*retired*)

- Shen Xiaolin
  - 08/2004 – 11/2007
    - Irico Group, Sales Company, General Manager
  - 11/2007 – 01/2009
    - Irico Display, Assistant to General Manager and General Manager of Sales Department
  - 01/2009 – 09/2013
    - Irico Display, Deputy General Manager, and General Manager of Sales Department
  - 09/2013 – 10/2015
    - Zhuhai Caizhu Limited Company, Managing Director (*retired*)

- Liu Maihai
  - Title as of June 2008
    - Irico Group Electronics Co., Ltd., Sales Director
  - Irico has been unable to confirm employment information for Liu Maihai, other than his title in June 2008 when the 2008 Litigation Committee was formed (see Response to Issue No. 3). Irico believes that Liu Maihai left Irico within several years of the filing of the lawsuit.

- Liang Yuan
  - Title as of June 2008
    - Irico Group Electronics Co., Ltd., Head of Overseas Department and Assistant to the General Manager of the Marketing Department
  - Irico has been unable to confirm employment information for Liang Yuan, other than her title in June 2008 when the 2008 Litigation Committee was formed (see Response to Issue No. 3). Irico believes that Liang Yuan left Irico within several years of the filing of the lawsuit.

Irico has conducted a search for more detailed employment information for Liu Maihai and Liang Yuan, including a review of Irico's HR files, but has not been able to find information beyond that listed above. Likewise, Irico cannot confirm the exact date that Tao Kui retired from Irico but, based on the best recollection of its available employees, believes that it is around 2014.

As discussed below in Irico's Response to Issue No. 4, each of these employees also communicated with employees under their supervisions in an effort to identify and preserve documents related to potential Irico sales of CRTs to the United States, if any such records existed.

1   **ISSUE NO. 3**

2       State how Irico determined that the persons identified in Irico's response to No 2, above,

3   were determined to be "key employees."

4       **RESPONSE TO ISSUE NO. 3**

5       The Irico employees identified in Irico's Response to Issue No. 2, above, were members

6   of a group of Irico employees appointed to oversee Irico's response to the litigations in the above

7   referenced action (the "2008 Litigation Committee") in June 2008. The other members of the

8   committee were Gao Rongguo, Director, Corporate Management Department, Irico Group, and

9   Yan Yunlong, Legal Affairs Manager, Corporate Management Department, Irico Group. The

10   employees identified in Irico's Response to Issue No. 2 were those with managerial responsibility

11   for the departments at Irico that Irico believed would have documents related to potential Irico

12   sales of CRTs to the United States, if any such records existed.  Each of these individuals then

13   selected the employees under their supervision who might have information regarding Irico sales

14   of CRTs to United States, if any.

15       **ISSUE NO. 4**

16       Explain how the 2008 "oral instruction" referred to in Irico's response to Interrogatory No

17   2 was conveyed; specifically, Irico is required to identify by name and position all persons who

18   conveyed the "oral instruction," the dates each such person conveyed the "oral instruction," the

19   persons by names and positions at the time to whom the "oral instruction" was conveyed, the

20   offices, facilities or other locations at which the "oral instruction" was conveyed, the content of

21   the "oral instruction" and all reasons upon which Irico contends the "oral instruction" was

22   effective if Irico so contends.

23       **RESPONSE TO ISSUE NO. 4**

24       The 2008 Litigation Committee held a meeting in August 2008 at Irico Group's

25   headquarters building in Xianyang City during which the instructions to preserve documents were

26   discussed. The instructions were conveyed to the employees identified in Irico's Response to

27   Interrogatory No. 2 at this and subsequent meetings. At that time Irico understood that, given the

28   instant litigation arose under the antitrust laws of the United States, the focus of the litigation was

1   on sales of CRTs to the United States. The individuals identified in the Response to Issue No. 2

2   were tasked to search for documents and to identify other employees under their supervision and

3   instruct them to search for documents that might relate to the Irico sales in the United States and

4   to preserve such documents, if any existed. Irico believes that these efforts to search for and

5   preserve documents would have occurred immediately after the above-referenced meetings of the

6   2008 Litigation Committee in August or September 2008.

7         Irico has conducted a thorough search for additional information requested by the Court in

8   Issue No. 4 but has been unable to find additional information. Specifically, it cannot find

9   documents detailing the specific information and its answers are based on the recollections of Yan

10  Yunlong, the only remaining Irico employee with knowledge of the dissemination of the oral

11  instruction in 2008. All of the members of the 2008 Litigation Committee other than Yan

12  Yunlong have retired or otherwise departed the company.

13        Yan Yunlong recalls that the employees identified in the Response to Issue No. 2

14  contacted relevant employees and searched for documents, but that no documents relevant to the

15  sales of CRTs by Irico to the United States were identified at that time. Despite best efforts, Irico

16  has been unable to identify the specific individuals contacted by the employees identified in

17  Response to Issue No. 2.

18        Irico believes that the oral instructions provided at the time were sufficient to preserve

19  documents related to potential sales by Irico to the United States. Irico acknowledges that at the

20  time it misunderstood the scope of document preservation in connection with the litigation in the

21  United States and cannot be certain that all documents related to Irico's global sales of CRTs

22  were preserved.

23  **ISSUE NO. 5**

24        Identify the information that confirms, or the basis to believe, that the "oral instruction"

25  referred to in Irico's response to Interrogatory No 2 was adequate to prevent the destruction of

26  evidence that otherwise would have been preserved in compliance with an otherwise adequate

27  litigation hold.

28

1

**RESPONSE TO ISSUE NO. 5**

2        Irico does not contend that the oral instruction in 2008 was effective in preserving all

3  documents related to its global sales of CRTs, however, because Irico did not sell CRTs to the

4  United States, Irico's search at the time did not identify any documents concerning Irico's sales of

5  CRTs to the United States and thus no documents on this topic were lost or destroyed.

6        **ISSUE NO. 6**

7        If the summer 2008 "oral instruction" referred to in Irico's response to Interrogatory No 2

8  had not been limited to "sales of CRT to the United States," but rather to sales of CRT without

9  regard to location, identify all documents and information that otherwise would been preserved.

10       **RESPONSE TO ISSUE NO. 6**

11       Irico has made best efforts to identify specific documents and information that might have

12  been preserved if the "oral instruction" in 2008 had not been limited to the United States. Nearly

13  all of the employees knowledgeable about what types of documents related to Irico's sales of

14  CRTs were created and/or maintained during the relevant time period are no longer employed by,

15  and are not available to, Irico. Identifying such specific documents that existed in 2008 is nearly

16  impossible given the time that has elapsed and the lack of employees with knowledge of these

17  issues. As discussed, Irico regularly preserved documents and information in its archives pursuant

18  to Chinese law and its internal practices so extensive information regarding Irico's global sales of

19  CRTs was preserved regardless of the oral instruction provided in 2008. These categories of

20  preserved documents are detailed in Irico's Response to Issue Nos. 7 and 11 and include several

21  categories of documents related to sales of CRTs, including but not limited to accounting records,

22  invoices, planning documents, some production and sales reports, and travel and entertainment

23  reimbursements. In terms of documents that would not have been preserved in the archives, Irico

24  identifies the following types of documents regarding Irico's global sales of CRTs that are more

25  likely to have existed in the summer of 2008:

26            •   Sales reports containing general CRT market information;

27            •   CRT sales contracts with customers;

28            •   Recent correspondence with customers regarding CRT sales; and,

---

IRICO'S 3rd SUPP. OBJS. AND RESPS. TO          12          Master File No. 4:07-cv-05944-JST
IPP'S THIRD SET INTERROGATORIES                            MDL No. 1917

1       • Handwritten working notes regarding recent internal and customer meetings

2           attended by members of Irico's sales team.

3       Irico has not been able to verify that specific documents in these categories existed in

4   summer of 2008. As noted above, there may have been other categories of documents that existed

5   at the time of the oral litigation hold in 2008, but Irico cannot identify those documents at this

6   time.

7       **ISSUE NO. 7**

8       Identify by type all documents and information related to sales of CRT without regard to

9   location during the period 1997 to 2007 that were required to be preserved in accordance with

10  applicable Chinese law.

11      **RESPONSE TO ISSUE NO. 7**

12      During the period 1997 to 2007 Chinese law required companies such as Irico to retain

13  hard-copy documents that contained financial information derived from Irico's sales of CRTs

14  such as accounting books, general ledgers, and financial accounting reports, however, the only

15  documents directly related to sales of CRTs that were required to be maintained under Chinese

16  law were original invoices for sales of CRTs.

17      **ISSUE NO. 8**

18      Identify by type all documents related to sales of CRT without regard to location during

19  the period 1997 to 2007 that Irico generated, but was not required by Chinese authorities to

20  preserve, and describe the information that such documents contained.

21      **RESPONSE TO ISSUE NO. 8**

22      Irico has attempted to locate information regarding the types of documents related to the

23  sales of CRTs that Irico would have generated during the period 1997 to 2007 that were not

24  required to be preserved by Chinese authorities. As discussed above, nearly all of the employees

25  knowledgeable about what types of documents related to Irico's sales of CRTs were created

26  and/or maintained during the period 1997 to 2007 are no longer employed by, and are not

27  available to, Irico. Consistent with its retention practices, Irico believes that most of those

28  documents would not have been retained in the ordinary course of business and were unlikely to

---

1   have existed at the end of 2007. Identifying such specific documents, let alone their contents, is

2   nearly impossible given the time that has elapsed and the lack of employees with knowledge of

3   these issues. The information found by Irico regarding regularly prepared materials is detailed

4   below. Irico believes that it is likely that other categories of documents were generated but not

5   retained due to changes in Irico's business over the course of the relevant time period. For

6   example, Irico exited CDT production around 2002, and believes that it may not have retained

7   materials related to the sales of CDTs through 2007. Additionally, Irico stopped production of

8   various types of CPTs during the relevant time period, and re-deployed that space for other uses.

9   Finally, there may have been periodic or "one off" materials prepared during this time period, but

10  Irico is not aware of such materials today.

11          Sales reports containing general CRT market information

12          The sales department prepared weekly- and monthly-summaries of information collected

13  by its employees. Irico has been unable to determine whether such reports were created during the

14  period 1997 to 2004. The reports focused on Irico's customers, who were primarily Chinese

15  television manufacturers. Both the weekly- and monthly-reports generally included information

16  regarding customers, competitors and general market information. It is not clear how long those

17  materials were kept after their creation, and Irico is unable to determine whether such materials

18  would have existed at the time of the instruction to preserve.

19          CRT sales contracts with customers

20          Irico entered into sales contracts with some customers regarding its sales of CRTs. Some

21  contracts pertained to general terms for sales to that customer, including post-sale issues such as

22  shipping terms and procedures. Others pertained to specific transactions and included information

23  such as product description, product quantity, unit price, and invoice total. Irico believes that it is

24  unlikely that many of these documents existed at the end of 2007 because Irico exited CDT

25  production around 2002, and stopped production of various types of CPTs during the relevant

26  time period.

27  ///

28  ///

1    Correspondence with customers regarding CRT sales

2    Although Irico primarily communicated with customers face-to-face or over the phone, it

3    believes that some communications with customers would have taken place via facsimile.  The

4    contents of these facsimiles varied but generally contained information related to a customer's

5    purchase of CRTs that would be captured in the original sales invoice such as type, quantity, and

6    price. Facsimiles were not required to be maintained under Chinese law and were routinely

7    discarded in the ordinary course of Irico's business. Irico believes that it is unlikely that many of

8    these documents existed at the end of 2007 because Irico exited CDT production around 2002 and

9    stopped production of various types of CPTs during the relevant time period.

10    Handwritten working notes

11    Irico understands that individual employees may have taken handwritten notes while

12    performing their job functions. Irico believes that these were regularly discarded by the

13    employees during the course of their employment.  For example, Wang Zhaojie and Wang Ximin

14    regularly discarded such notes during the course of their employment but cannot recall any

15    specifics regarding those instances. The notes most likely covered the employees' regular

16    activities as members of Irico's sales department including notes of internal meetings, customer

17    contacts, and customer meetings. Wang Zhaojie also recalls taking notes related to individual

18    sales transactions (such as customer, quantity, and price) but discarded those notes shortly after

19    the sales documents were prepared. Irico believes that it is unlikely that many of these notes

20    existed at the end of 2007 because Irico exited CDT production around 2002, and stopped

21    production of various types of CPTs during the relevant time period. Additionally, by 2008 many

22    employees connected to Irico's sales were no longer employed by Irico, some of whom left much

23    earlier in the relevant time period.

24    Emails

25    Although Irico did not begin to use email until toward the end of the relevant time period,

26    many employees did not have their own email account at any time during the relevant time

27    period, and the company did not rely on email as a primary form of communication during any

28    point in the relevant time period. Irico is aware of emails sent or received on the following topics:

- Notices from Irico regarding corporate policies.

- Notices from the Chinese Communist Party.

- CRT manufacturing—Irico understands that its manufacturing plants sent periodic emails related to the production of CRTs that may have discussed the quantity of CRTs produced for a given time period, quality issues, and problems or incidents that affected the production output. Irico understands that these were not sent on a routine basis (i.e., daily, weekly, or monthly), but rather more sporadically because as an organization Irico made no effort to routinize its use of email in the regular course of business.

- Planning for Meetings of the China CPT Industry Association—Irico understands that emails were exchanged between Irico and other Chinese CRT manufacturers regarding the scheduling and planning of meetings of the China CPT Industry Association, a trade organization for manufacturers of CPTs.

As noted in its prior discovery responses, Irico's email storage capacity was very limited during the relevant time period, and each individual account had limited capacity as well. This meant that the users of the accounts had to constantly delete emails in order to continue receiving new emails. In addition to the account-level limitations, Irico's central email server likewise had limited email storage and Irico was forced to routinely delete emails from the server in order to create sufficient storage capacity for the company to continue to receive emails. During regular working periods emails were deleted from the server three to five days after they were sent or received on average, depending on the volume of email traffic. During periods of lower email activity, such as during Chinese holidays, emails would be deleted less frequently and it is possible that email for up to a fourteen day period would be retained on the company's return from the holiday before Irico needed to resume a more regular schedule as business activities returned to normal. For these reasons, and Irico's exit from many segments of the CRT market prior to 2008, Irico is not able to determine whether email created during the relevant time period existed at the end of 2007, or the volume or type of such email.

///

Sales Data

Irico did not utilize electronic databases to store information related to sales of CRTs in a systematic or routine manner, but between 1999 and 2002 Irico Group's finance department sporadically entered information utilizing a database software called Newgrand. Specifically, during those years Irico entered partial revenue information from its sales of CRTs. During the period April 2006 through end of the 2007, Irico Display's finance department utilized a database program called Kingdee to track revenue and other accounting data related to sales of CRTs. All of these Newgrand and Kingdee data were produced to Plaintiffs during FSIA discovery. Irico does not believe that either database was, or is, a complete dataset for the period of time that those data were entered, as electronic databases are not among the categories of information required to be maintained under Chinese accounting laws and therefore were not considered important sources of information to Irico. But Irico is not aware of any Newgrand or Kingdee data that existed from the time period 1997 to 2007 but has not been provided to Plaintiffs.

Corporate Archives

As described previously and in the below Response to Issue No. 11, Irico also preserved various documents in its archives pursuant to its internal practices, some of which also related to sales of CRTs, including but not limited to planning documents, financial reports and some production and sales reports, which have not been detailed here.

**ISSUE NO. 9**

With respect to the 2017 "oral instruction" referred to in Irico's response to Interrogatory No 2, Irico is required to identify by name and position all persons who conveyed the "oral instruction," the dates each such person conveyed the "oral instruction," the persons by names and positions at the time to whom the "oral instruction" was conveyed, the offices, facilities or other locations at which the "oral instruction" was conveyed, the content of the "oral instruction" and all reasons upon which Irico contends the "oral instruction" was effective if Irico so contends.

**RESPONSE TO ISSUE NO. 9**

The 2017 oral instruction was conveyed by Zhang Wenkai, Deputy Director, Legal Affairs Department for Irico Group. The oral instruction asked the employees to preserve all existing and

identified information related to Irico's CRTs from 1995 to 2007 (without a geographic

limitation, i.e., not solely related to sales of CRTs to the United States), and to preserve any newly

found materials. The instruction was conveyed in meetings or discussions that occurred in

September and October 2017; Irico has reviewed its available files but has been unable to

determine the exact dates of the meetings. Mr. Zhang separately communicated the oral

instruction to the following employees:

- Zhong Yuming: Business Manager, Human Resources Department, Irico Group.
    - Mr. Zhang met with Mr. Zhong in person in the offices of the Human Resources Department located at Irico Group's headquarters, 1 Caihong Road, Qindu District, Xianyang City, Shaanxi Province, People's Republic of China.
- Yang Hua: Director, Finance Department, Irico Group.
    - Mr. Zhang met with Ms. Yang in person in the offices of the Finance Department located at Irico Group's headquarters, 1 Caihong Road, Qindu District, Xianyang City, Shaanxi Province, People's Republic of China.
- Wang Zhaojie: General Manager, Irico Group New Energy Co., Ltd.  Formerly Mr. Wang was Director of Sales, Irico Sales Company and Irico Sales Department.
    - Mr. Zhang called Mr. Wang, who was not in his office at the time of the call. Mr. Zhang believes that Mr. Wang was traveling in Hefei, Anhui Province, People's Republic of China.
- Su Xiaohua: Vice General Manager of Xianyang Irico Photovoltaic Technology Company; Vice General Manager of Irico Photoelectric Materials Company. Formerly Mr. Su was the Vice General Manager, Planning, Irico Sales Company and Irico Sales Department.
    - Mr. Zhang and Mr. Su both recall that the instruction occurred during a phone call, but neither can recall where Mr. Su was at the time of the call. Mr. Su recalls that he was away from his office because his office was in Irico Group's headquarters building, as was Mr. Zhang's, and he would

1        have met directly with Mr. Zhang if he had been in the office.

2      • Li Mei: Head of Archives, Irico Group.

3          ○ Mr. Zhang met with Ms. Li in person in the offices of the Archives

4              Department, located in the Information Center building on Irico Group's

5              main campus, 1 Caihong Road, Qindu District, Xianyang City, Shaanxi

6              Province, People's Republic of China.

7      • Gao Xiangfeng: Director, Information Center, Irico Group.

8          ○ Mr. Zhang met with Mr. Gao in person in the offices of the Information

9              Center, located in the Information Center building on Irico Group's main

10             campus, 1 Caihong Road, Qindu District, Xianyang City, Shaanxi

11             Province, People's Republic of China.

12     The 2017 oral instruction was effective because the employees identified above were the

13 remaining employees that Irico determined were likely to have access to, or were designated

14 representatives of departments that maintained, documents from 1995 to 2007 that existed at the

15 time that the instruction was communicated in September or October 2017. Furthermore, Irico is

16 not aware of any potentially responsive documents from the time period 1995 to 2007 that were

17 lost or destroyed after September 2017.

18     **ISSUE NO. 10**

19     Inasmuch as Irico's response to Interrogatory No 2 states that Irico is not aware of the

20 destruction of "original invoices for sales, accounting books, general ledgers, financial accounting

21 reports, and bank statements" from 1995 to 2007, Irico shall state whether it is prepared to

22 produce all such materials to the PPs? If not, why not?

23     **RESPONSE TO ISSUE NO. 10**

24     By agreement between the parties, Irico has produced the identified, responsive materials

25 from accounting books, general ledgers, financial reports, and bank statements, and will be

26 producing Excel files summarizing the information contained in original invoices for sales

27 pursuant to a forthcoming stipulation between the parties.

28     As Irico has previously explained to the Court and to Plaintiffs, Irico's accounting

---

IRICO'S 3rd SUPP. OBJS. AND RESPS. TO          19          Master File No. 4:07-cv-05944-JST
IPP'S THIRD SET INTERROGATORIES                              MDL No. 1917

1    archives as described in its Response to Interrogatory No. 2 are voluminous and contain

2    significant amounts of information unrelated to its production or sales of CRTs, including

3    information related to the public functions entrusted to Irico by the Chinese government,

4    including the provision of primary and secondary public schools, the local police department, a

5    hospital, public transportation, and public recreational facilities (*see* Irico Group Corp.'s Mot. to

6    Dismiss for Lack of Subject Matter Jur. at 5, ECF No. 5312), and other non-CRT business

7    interests. Irico and Plaintiffs have been meeting and conferring throughout the discovery period

8    regarding these documents regarding the burden of production outweighing the benefits of

9    producing all of these materials, including for Plaintiffs as said production would require

10    Plaintiffs to review and analyze a large volume of non-responsive information. As discussed

11    above, the Parties have agreed on the scope of production of these materials.

12        **ISSUE NO. 11**

13        Irico is directed to describe its "internal practices" for the maintenance of "material related

14    to operational documents, administrative documents, technical records and communications with

15    agencies of the PRC government and Chinese Communist Party."

16        **RESPONSE TO ISSUE NO. 11**

17        As discussed in more detail below and previously described in its initial response to

18    Interrogatory No. 2, Irico preserves documents within its corporate archives related to four main

19    categories: operational documents, administrative documents, technical records and

20    communications with agencies of the PRC government and Chinese Communist Party.

21    Documents preserved in these categories apply not only to the portion of Irico's business

22    concerning production and sales of CRTs, but also those related to the public functions entrusted

23    to Irico by the Chinese government, including the provision of primary and secondary public

24    schools, the local police department, a hospital, public transportation, and public recreational

25    facilities (*see* Irico Group Corp.'s Mot. to Dismiss for Lack of Subject Matter Jur. at 5, ECF No.

26    5312), and also other non-CRT business interests. Once a document is passed to the archives

27    department of Irico, a member of the archives team enters the document into the archives. The

28    documents are physically placed into bound-books, or into folders within bound books, and the

1   books are stored in the archives department at Irico's headquarters. Once placed in the archives,

2   the documents may not be damaged or destroyed without specific authorization.

3          Within each of the four categories described above, Irico maintains the following types of

4   documents in its corporate archives:

5   • Operational documents:

6          o   Documents related to business decisions, including:

7                 ▪   Strategic planning and long-term forecasting.

8                 ▪   Development plans.

9                 ▪   Work plans.

10                ▪   Changes in management.

11                ▪   Communications to or from government agencies regarding the

12                     above topics.

13         o   Documents related to accounting and finance, including:

14                ▪   Financial reports.

15                ▪   Financial planning.

16                ▪   Audited financial statements.

17                ▪   Loan applications.

18                ▪   Accounting policies.

19                ▪   Transfers of financial interests in other companies.

20                ▪   Communications to or from government agencies regarding any of

21                     the above topics.

22         o   Annual production and sales reports from 1995 to 2004.

23         o   Status reports for procurement of raw materials.

24         o   Communications to or from governmental entities regarding enterprise

25              decisions.

26         o   Adjustments to corporate form, including subsidiaries.

27   • Administrative documents:

28         o   Documents related to administrative matters, including:

1  ▪ Year-end summaries of work completed in the prior year.

2  ▪ Work plans for the coming year.

3  ▪ Award notices.

4  ▪ The minutes of annual administrative meetings and board of

5  directors' meetings.

6  ▪ Requests for approval of corporate development initiatives, changes

7  to corporate form, and capital expenditures.

8  ▪ Decisions on requests for approval of corporate development

9  initiatives, changes to corporate form, and capital expenditures by

10  governmental entities, including the State-owned Assets

11  Supervision and Administrative Commission of the State Council

12  (SASAC), and the Shaanxi provincial government.

13  o Documents related to HR matters, including:

14  ▪ Notices of the appointment to, or removal from, positions issued by

15  various departments within the Chinese government including the

16  Department of Personnel and Education, the Ministry of

17  Information and Industry, the Economy and Trade Commission.

18  ▪ Notices of the appointment to, or removal from, positions issued by

19  Shaanxi provincial authorities.

20  ▪ Notices of the appointment to, or removal from, positions issued by

21  the government of the city of Xianyang.

22  ▪ Notices of the appointment to, or removal from, positions issued by

23  Irico.

24  ▪ Policies issued by Irico and its subdivisions regarding HR matters.

25  o Documents related to Irico's provision of educational facilities.

26  o Documents related to environmental issues.

27  • Technical records:

28  o Quality management.

1        ○  Labor-related matters.

2        ○  Energy-related matters.

3        ○  Production security.

4        ○  Technology.

5        ○  Environmental protection.

6        ○  Metering work.

7        ○  Standardization.

8        ○  File information.

9     •  Chinese Communist Party-related matters:

10        ○  Meeting minutes and plans of the Party.

11        ○  Administrative matters.

12        ○  Public relations matters.

13        ○  Discipline and inspection matters.

14        ○  Labor union matters.

15        ○  Communist Youth League matters.

16        ○  Association matters.

17  **SECOND SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 2**

18      Pursuant to the meet and confers with Plaintiffs regarding its Supplemental Response to

19  Interrogatory No. 2, Irico provides the following further supplemental response to Interrogatory

20  No. 2. Irico has agreed to provide such further responses to clarify the record, even though it

21  believes that its Supplemental Response properly addressed the Issues identified in the Special

22  Master's December 22, 2021 Order.

23      **SUPPLEMENTAL RESPONSE TO ISSUE NO. 2**

24  •  Liang Yuan
    ○  Title as of June 2008

25         ■  Irico Group Electronics Co., Ltd., Head of Overseas Department and
         Assistant to the General Manager of the Marketing Department

26      ○  March 2014
       ■  Left Irico.

27      ○  Irico has been unable to confirm employment information for Liang Yuan, other
       than her title in June 2008 when the 2008 Litigation Committee was formed (see

28

Response to Issue No. 3). Irico has likewise not been able to confirm Liang Yuan's titles or positions between June 2008 and March 2014.

**SUPPLEMENTAL RESPONSE TO ISSUE NO. 8**

Sales reports containing general CRT market information

Irico clarifies that the "[t]he . . . weekly- and monthly-summaries of information collected by its employees" described in its Response to Issue No. 8 were created during the period 2005 to 2007.

Emails

Irico clarifies that its corporate email system described in its Repose to Issue No. 8 came online around 2004 or 2005. As stated in prior discovery responses, Irico has been unable to determine the exact date that it began using a corporate email system.

In addition, Irico has recently discovered that the company conducted a limited pilot email test utilizing a Microsoft Exchange server in the early-2000s. As with its corporate email system described above, this test utilized the domain @ch.com.cn. Irico has been unable to determine the exact timeline of the test or the number or identity of users who participated in the test. Irico understands that the test ended prior to Irico's launch of corporate email in the 2004/2005 time period. Irico also understands that no data was retained or transferred when the pilot email test ended.

**THIRD SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 2**

Irico provides the following supplemental information to amend its response to this Interrogatory served on August 13, 2021, followed by supplemental responses to certain of the eleven (11) enumerated issues included in the Special Master's Order Re DPPs' Motion to Compel Interrogatory Further Answers, ECF No. 5978.

In August 2008, Irico undertook efforts to preserve potentially discoverable evidence relating to Plaintiffs' allegations.  Irico's 2008 Litigation Committee met in August 2008 to review and discuss, among other topics, privileged legal advice received from its former counsel, Pillsbury Winthrop Shaw & Pittman, LLP ("Pillsbury") on August 18, 2008 regarding document preservation.  At this August 2008 meeting, the 2008 Litigation Committee was provided with a copy of the Pillsbury legal advice and was orally instructed to identify and preserve documents

1   relevant to the litigation, and to instruct their subordinates who may have possessed documents

2   relevant to the litigation to identify and preserve such documents.  The list of members of the

3   2008 Litigation Committee who received this instruction, including all known information

4   regarding their work history from 2007 to present, has been provided in Irico's prior responses to

5   Issue Nos. 2 and 3 on January 21 and March 18, 2022.  Each Litigation Committee member

6   determined independently which subordinates should be contacted regarding preservation efforts

7   and what information regarding preservation efforts should be relayed to each employee.  Irico

8   has conducted a thorough search for additional information regarding the scope of these oral

9   instructions, including the specific subordinates contacted by the 2008 Litigation Committee

10  Members and the specific scope of the instructions conveyed to any such subordinates, but has

11  not been able to find information beyond that listed above.

12          **SUPPLEMENTAL RESPONSE TO ISSUE NO. 1**

13          Irico directs Plaintiff to Irico Defendants' Log of Privileged Documents served on

14  February 23, 2022, Identifier Nos. P-00000007 and P-00000008, for the requested details

15  surrounding privileged information responsive to Issue No. 1. Copies of the privileged document

16  identified as P-00000008 were provided to each member of the 2008 Litigation Committee and

17  discussed at the 2008 Litigation Committee's August 2008 meeting, as described above.

18          **SUPPLEMENTAL RESPONSE TO ISSUE NO. 2**

19          The key employees that received instructions in August 2008 to preserve documents

20  relevant to the litigation, and to instruct any subordinates who may have relevant documents to

21  preserve those documents, were comprised of all members of the 2008 Litigation Committee.  In

22  addition to the employees identified in Irico's prior responses to Issue No. 2, this included Gao

23  Rongguo, Director, Corporate Management Department, Irico Group, and Yan Yunlong, Legal

24  Affairs Manager, Corporate Management Department, Irico Group.

25          **SUPPLEMENTAL RESPONSE TO ISSUE NO. 3**

26          As described in Irico's supplemental response to Issue No. 2 above, instructions to

27  preserve documents relevant to the litigation, and to convey such instructions to subordinates,

28  were given to all members of the 2008 Litigation Committee.  These members were determined to

1    be "key employees" for purposes of document preservation due to their membership on the 2008

2    Litigation Committee and because they included individuals with managerial responsibility for

3    the departments at Irico that Irico believed may have had documents relevant to the litigation, if

4    any such documents existed.

5              **SUPPLEMENTAL RESPONSE TO ISSUE NO. 4**

6         The 2008 Litigation Committee held a meeting in August 2008 at Irico Group's

7    headquarters building in Xianyang City during which the instructions to preserve documents were

8    discussed. The 2008 Litigation Committee gave oral instructions to its members, identified by

9    name and position in Irico's prior responses to Issue Nos. 2 and 3, to preserve documents relevant

10   to the litigation at this meeting. The 2008 Litigation Committee members were also tasked with

11   identifying other employees under their supervision who might have documents relevant to the

12   litigation, and instructing them to preserve any such documents, if any existed. Irico believes that

13   any such instructions from members of the 2008 Litigation Committee to their subordinates

14   would have occurred shortly after the above-referenced meeting of the 2008 Litigation Committee

15   in August or September 2008.

16        Irico has conducted a thorough search for additional information requested by the Court in

17   Issue No. 4, including the specific individuals contacted by the 2008 Litigation Committee

18   members with instructions to preserve documents, and information regarding the effectiveness of

19   these instructions to preserve documents, but has been unable to find additional information.

20   Specifically, it has been unable to locate any documents reflecting the employees who received

21   further instruction.  Irico's answers are based on the recollections of Yan Yunlong, the only

22   remaining Irico employee with knowledge of Irico's document preservation efforts in 2008. All of

23   the members of the 2008 Litigation Committee other than Yan Yunlong have retired or otherwise

24   departed the company.

25              **SUPPLEMENTAL RESPONSE TO ISSUE NO. 5**

26        Irico no longer contends that its initial efforts to preserve documents in August 2008 were

27   limited solely to documents regarding sales of CRTs to the United States, but Irico reiterates its

28   initial Response in all other respects.

1    **<u>SUPPLEMENTAL RESPONSE TO ISSUE NO. 6</u>**

2         Irico no longer contends that its initial efforts to preserve documents in August 2008 were

3    limited solely to documents regarding sales of CRTs to the United States.  Irico otherwise

4    reiterates its initial Response regarding the categories of additional documents that might possibly

5    have existed in the summer of 2008 but for which Irico has not been able to confirm.

6

7

8    Dated:  November 23, 2022              BAKER BOTTS L.L.P.

9

10                                         */s/ John M. Taladay*

11                                         John M. Taladay (*pro hac vice*)
                                           Evan J. Werbel (*pro hac vice*)
12                                         Thomas E. Carter (*pro hac vice*)
                                           Andrew L. Lucarelli (*pro hac vice*)
13                                         700 K Street, N.W.
                                           Washington, D.C. 20001
14                                         (202)-639-7700
                                           (202)-639-7890 (fax)
15                                         Email: john.taladay@bakerbotts.com
                                                   tom.carter@bakerbotts.com
16                                                 drew.lucarelli@bakerbotts.com

17                                         *Attorneys for Defendants*
                                           *IRICO GROUP CORP. and*
18                                         *IRICO DISPLAY DEVICES CO., LTD.*

19

20

21

22

23

24

25

26

27

28

---
IRICO'S 3rd SUPP. OBJS. AND RESPS. TO         27         Master File No. 4:07-cv-05944-JST
IPP'S THIRD SET INTERROGATORIES                          MDL No. 1917

# Exhibit 15

# BAKER BOTTS LLP

700 K STREET, NW
WASHINGTON, D.C.
20001-5736

TEL +1 202.639.7700
FAX +1 202.639.7890
BakerBotts.com

AUSTIN          MOSCOW
BRUSSELS        NEW YORK
DALLAS          PALO ALTO
DUBAI           RIYADH
HOUSTON         SAN FRANCISCO
LONDON          **WASHINGTON**

March 10, 2022

Evan Werbel
TEL: 202.639.1323
FAX: 202.585.4077
evan.werbel@bakerbotts.com

VIA E-MAIL (RICK@SAVERI.COM,
LAURENRUSSELL@TATP.COM)

R. Alexander Saveri
Saveri & Saveri, Inc.
706 Sansome Street
San Francisco, CA 94111

Lauren C. Capurro
Trump Alioto Trump & Prescott LLP
2280 Union Street
San Francisco, CA 94123

> Re:   In re Cathode Ray Tube (CRT) Antitrust Litigation, MDL No. 1917, Master File
>        No. 07-CV-944-JST

Dear Rick and Lauren:

   Irico writes in response to your February 15, 2022 letter regarding the Irico Defendants'
Supplemental Objections and Responses to Indirect Purchaser Plaintiffs' Third Set of
Interrogatories to Irico Group Corporation and Irico Display Devices Co., Ltd., served on
January 21, 2022 ("Supplemental Responses"), as required by Judge Walker's December 22,
2021 Order (ECF No. 5978) ("Order") (the "Feb. 15 Letter").  Irico disagrees that its
Supplemental Responses were inadequate or failed to respond to the Order given the information
available to Irico—as we have explained numerous times, including in the Supplemental
Responses.  Accordingly, and as discussed in greater detail below, Irico stands on its responses
regarding several issues that you raised in the Feb. 15 Letter.  However, in the interests of
avoiding further motions practice regarding Irico's discovery, Irico will provide some
supplementation of its responses.  Irico addresses each of your points as follows:

   1.   Identification of "All Documents" in Judge Walker's Issue No. 6

   Irico does not agree with Plaintiffs' tortured parsing of Judge Walker's language in Issue
No. 6. Order at 7-8.  It was Judge Walker who wrote the detailed questions to which Irico needed
to reply.  He specifically ordered Irico to provide the enumerated information on "sales" and
Irico provided that information as required.  If Plaintiffs object to the language of the Order, they
should have raised the issue with the Court.

**BAKER BOTTS** LLP

R. Alexander Saveri                                    - 2 -                                    March 10, 2022
Lauren C. Capurro

Regardless, Irico's answers provided all available information, and Plaintiffs' suggestion that Irico somehow circumvented any obligation to provide otherwise responsive information is wrong. For example, Plaintiffs statement that Irico's responses made "no mention of documents reflecting or memorializing meetings or other communications with competitors," (Feb. 15 Letter at 1), assumes that Irico read some improper limitation into the Order. Rather, Irico's response did not include such documents because, based on its present knowledge, it has no reason to believe that such documents existed in Irico's files in the summer of 2008. Moreover, Plaintiffs' assertions that Irico did not acknowledge any communications with other CRT manufacturers is false. As explained in its response to No. 3 below, Irico has acknowledged that it exchanged emails with other members of the China CPT Industry Association regarding meetings of the trade association. *See* Supplemental Responses at 16. However, as Irico has stated repeatedly, it does not believe that any such emails were likely to have existed even at the end of 2007 due to Irico's email storage issues, let alone in the summer of 2008. The focus of Issue No. 6 was to identify "all documents . . . that would have been preserved" in the summer of 2008 had Irico's preservation efforts not been limited to sales of CRTs in the United States, and Irico believes that it has done so to the best of its present knowledge.

2. Sales Reports identified in Issue No. 8

Plaintiffs' arguments about Irico's response to Issue No. 8 concerning sales reports, (Feb. 15 Letter at 2), are pure sophistry. Issue No. 8 required Irico to "[i]dentify by type all documents . . . during the period 1997 to 2007." Order at 8. By listing "Sales reports containing general CRT market information," (Supplemental Responses at 14), Irico was necessarily identifying that these reports existed at some point during the period 1997 to 2007, but further clarified that it could not confirm whether such reports were created during the period 1997 to 2004. By simple logic, that means that Irico acknowledged that the reports were created during the period 2005 to 2007.

In the interests of avoiding any additional and unnecessary debate over this issue, Irico is willing to supplement its response to include language that such reports were created during the period 2005 to 2007. Irico states for the record, and will state in any supplemental response, that its original response was proper and needed no clarification.

3. Emails

First, contrary to Plaintiffs statement, (Feb. 15 Letter at 2), nowhere in Irico's responses, let alone its Response to Issue No. 8, did Irico state that "most employees did have personal email." Irico has no idea why Plaintiffs are making that claim. To the extent that Irico employees used personal email addresses in the course of their duties, Irico was not responsible for creating or maintaining those email addresses and does not have information regarding who used personal email addresses and when they were used beyond the limited circumstances addressed in Irico's most recent discovery responses. *See* Responses to Interrogatory Nos. 1 and 8 in Irico Defendants' Objections and Responses to Indirect Purchaser Plaintiffs' Fourth Set of Interrogatories to Irico Group Corporation and Irico Display Devices Co., Ltd., February 23, 2022.

Active 79246374.1.DOCX

**BAKER BOTTS** LLP

R. Alexander Saveri                                    - 3 -                                    March 10, 2022
Lauren C. Capurro

Second, Irico has been unable to determine the exact date that it started using email as repeated many times.  To the best of its present knowledge, Irico's corporate email system came online around 2004 or 2005.  In addition, Irico has recently discovered that the company conducted a limited pilot email test utilizing a Microsoft Exchange server in the early-2000s.  As with its subsequent launch of corporate email, this test utilized the domain @ch.com.cn.  Irico has been unable to determine the exact timeline of the test, or the number or identity of users who participated in the test.  Irico understands that the test ended prior to Irico's launch of corporate email in the 2004/2005 time period.  Irico understands that no information from the test was transferred to the new email system or was otherwise retained.  Irico will supplement its responses to reflect this information.

Third, Irico believes that Plaintiffs' reference to the "reality that employees could print emails" is yet another attempt to create an issue where one does not otherwise exist.  Irico reviewed its archives and produced responsive materials.  If employees had printed emails and sent them to the archives, Irico would have produced them.  The fact that emails could have been printed does not mean that there were any printed (or electronic) emails that could have been preserved at the end of 2007.  Similarly, Irico never stated that *all* communications regarding "Notices from the Chinese Communist Party" were *required* to be preserved.  As an entity, Irico received these notices in a variety of ways, including by mail and at meetings of the Chinese government and Chinese Communist Party, and it was these original notices that were subject to potential preservation under the policies described in Irico's Response to Issue No. 11.

Fourth, Plaintiffs also are wrong when they say, (Feb. 15 Letter at 2-3), that Irico made "no mention" of "emails related to meetings of the Chinese Color Tube Industry."  The final bullet under the subheading "Emails" is titled "Planning for Meetings of the China CPT Industry Association" and states that "emails were exchanged between Irico and other Chinese CRT manufacturers regarding the scheduling and planning of meetings of the China CPT Industry Association, a trade organization for manufacturers of CPTs."  Supplemental Responses at 15.  Irico is not aware that any of these emails or those referenced by Plaintiffs still existed in Irico's files or other sources accessed by Irico's employees at the end of 2007.  Irico has also explained "[w]hat happened to these emails" by describing in numerous responses, including the Supplemental Responses, Irico's near constant need to overwrite email due to limited storage capacity.  *See, e.g.*, Supplemental Responses at 16.  Plaintiffs even cite to these facts earlier in their letter.  *See* Feb. 15 Letter at 2 ("[T]his section of the Supplemental Responses goes on to assert that Irico's email storage capacity was limited and that each individual account had limited capacity as well. It continues that 'the users of the accounts had to constantly delete emails in order to continue receiving new emails.'").

4.   Customer Correspondence and Handwritten Working Notes

It is not even clear to Irico what Plaintiffs are arguing, in this section.  Feb. 15 Letter at 3.  Again, by listing the categories "Correspondence with customers regarding CRT sales" and "Handwritten working notes" under this section, Irico stated that it believes that such materials were "regularly prepared" and existed during the period 1997 to 2007 as required by Judge Walker in Issue No. 8.  Plaintiffs' suggestion to the contrary is false.  Irico's responses provided

**BAKER BOTTS** LLP

R. Alexander Saveri                              - 4 -                         March 10, 2022
Lauren C. Capurro

the known information about the documents in these categories and clarified its present
understanding about how those documents were handled in the ordinary course of business.

     5.  <u>Liang Yuan</u>

     As requested, Irico has investigated this issue and understands that Liang Yuan left Irico
in March 2014.  Irico will supplement its Supplemental Responses to reflect this information.

     Irico will provide supplemental responses as outlined above by Friday, March 18, 2022.


               Sincerely,


               */s/ Evan Werbel*
               Evan Werbel


cc:    Geoffrey C. Rushing
       Matthew D. Heaphy
       Mario N. Alioto
       Daniel E. Birkhauser

# Exhibit 16
# FILED UNDER SEAL

# Exhibit 17

1  BAKER BOTTS L.L.P.
   John M. Taladay (*pro hac vice*)
2  Evan J. Werbel (*pro hac vice*)
   Thomas E. Carter (*pro hac vice*)
3  Andrew L. Lucarelli (*pro hac vice*)
   700 K Street, N.W.
4  Washington, D.C. 20001
   (202)-639-7700
5  (202)-639-7890 (fax)
   Email: john.taladay@bakerbotts.com
6          evan.werbel@bakerbotts.com
           tom.carter@bakerbotts.com
7          drew.lucarelli@bakerbotts.com

8  Jonathan Shapiro (State Bar No. 257199)
   101 California Street, Suite 3600
9  San Francisco, California 94111
   (415) 291-6200
10 (415) 291-6300 (fax)
   Email: jonathan.shapiro@bakerbotts.com
11

12 *Attorneys for Defendants*
   *IRICO GROUP CORP. and*
13 *IRICO DISPLAY DEVICES CO., LTD.*

14

15                    **UNITED STATES DISTRICT COURT**

16                   **NORTHERN DISTRICT OF CALIFORNIA**

17                           **OAKLAND DIVISION**

18

19 IN RE: CATHODE RAY TUBE (CRT)          Master File No. 4:07-cv-05944-JST
   ANTITRUST LITIGATION                   (N.D. Cal.)
20
                                          MDL No. 1917
21 _____
   This Document Relates to:             **IRICO DEFENDANTS' SIXTH**
22                                        **SUPPLEMENTAL OBJECTIONS AND**
   ALL DIRECT PURCHASER ACTIONS          **RESPONSES TO DIRECT**
23                                        **PURCHASER PLAINTIFFS' FIRST**
                                          **SET OF INTERROGATORIES**
24 _____

25 PROPOUNDING PARTY:        Direct Purchaser Plaintiffs

26 RESPONDING PARTIES:       Irico Group Corporation
                             Irico Display Devices Co., Ltd.
27
   SET NUMBER:               One
28

   IRICO'S 6TH SUPPLEMENTAL OBJECTIONS        Master File No. 4:07-cv-05944-JST
   AND RESPONSES TO DPP'S FIRST SET           MDL No. 1917
   INTERROGATORIES

1    Pursuant to Federal Rules of Civil Procedure 26 and 33, Irico Group Corporation and Irico

2 Display Devices Co, Ltd. (collectively, "Irico" or "Irico Defendants") hereby provides its sixth

3 supplemental responses to the Direct Purchaser Plaintiffs' ("Plaintiff") First Set of

4 Interrogatories, dated March 12, 2010 ("Interrogatories"). Irico reserves the right to amend or

5 supplement these Objections and Responses (the "Responses") to the extent allowed by the

6 Federal Rules of Civil Procedure and the Local Rules of Practice in Civil Proceedings before the

7 United States District Court for the Northern District of California ("Local Rules"). Subject to

8 and without waiving any of Irico's General and Specific Objections as set forth below, Irico is

9 willing to meet and confer with Plaintiff regarding such General and Specific Objections.

10    The following Responses are made only for purposes of this case. The Responses are

11 subject to all objections as to relevance, materiality and admissibility, and to any and all

12 objections on any ground that would require exclusion of any response if it were introduced in

13 court. All evidentiary objections and grounds are expressly reserved.

14    These Responses are subject to the provisions of the Stipulated Protective Order issued by

15 the Court on June 18, 2008 ("Protective Order"). Irico's Responses are hereby designated

16 "Confidential" in accordance with the provisions of the Protective Order.

17                              **GENERAL OBJECTIONS**

18    Irico makes the following General Objections to Plaintiff's Interrogatories:

19    1.    Irico's Responses are based upon information available to and located by Irico as

20 of the date of service of these Responses. In responding to Plaintiff's Interrogatories, Irico states

21 that it has conducted, or will conduct, a diligent search, reasonable in scope, of those files and

22 records in its possession, custody, or control believed to likely contain information responsive to

23 Plaintiff's Interrogatories.

24    2.    No express, incidental, or implied admissions are intended by these Responses and

25 should not be read or construed as such.

26    3.    Irico does not intend, and its Responses should not be construed as, an agreement

27 or acquiescence with any characterization of fact, assumption, or conclusion of law contained in

28 or implied by the Interrogatories.

4.      To the extent that Irico responds to Plaintiff's Interrogatories by stating that Irico will produce or make available for examination responsive information or documents, Irico does not represent that any such information or documents exist. Irico will make a good faith and reasonable attempt to ascertain whether information responsive to Plaintiff's Interrogatories exists and is properly producible, and will produce or make available for examination non-privileged responsive materials to the extent any are located during the course of a reasonable search.

5.      Irico objects to Plaintiff's Interrogatories to the extent that they are overly broad, unduly burdensome, oppressive, and duplicative to the extent that they seek information or documents that are already in the possession, custody, or control of Plaintiff.

6.      Irico objects to Plaintiff's Interrogatories to the extent that they seek to impose obligations on Irico beyond those of the Federal Rules of Civil Procedure, the Local Rules, or any Order of this Court.

7.      Irico objects to Plaintiff's Interrogatories to the extent they seek information that is not relevant or disproportionate to the needs of the case.

8.      Irico objects to Plaintiff's Interrogatories to the extent that they are vague, ambiguous, or susceptible to more than one interpretation. Irico shall attempt to construe such vague or ambiguous Interrogatories so as to provide for the production of responsive information that is proportionate to the needs of the case. If Plaintiff subsequently asserts an interpretation of any Interrogatory that differs from Irico's understanding, Irico reserves the right to supplement or amend its Responses.

9.      Irico objects to Plaintiff's Interrogatories to the extent that they contain terms that are insufficiently or imprecisely defined. Irico shall attempt to construe such vague or ambiguous Interrogatories so as to provide for the production of responsive information that is proportionate to the needs of the case.

10.      Irico objects to Plaintiff's Interrogatories to the extent that they seek information that is protected from disclosure by the attorney-client privilege, work product doctrine, joint defense or common interest privilege, self-evaluative privilege, or any other applicable privilege or immunity. Irico will provide only information that it believes to be non-privileged and

otherwise properly discoverable. Nothing in Irico's responses is intended nor should be construed as a waiver of any such privilege or immunity. The inadvertent or mistaken provision of any information or responsive documents subject to any such doctrine, privilege, protection or immunity from production shall not constitute a general, inadvertent, implicit, subject-matter, separate, independent or other waiver of such doctrine, privilege, protection or immunity from production.

11.     Irico objects to Plaintiff's Interrogatories to the extent that they call for information that is not in the possession, custody, or control of Irico. Irico also objects to the extent that any of Plaintiff's Interrogatories seek information from non-parties or third parties, including but not limited to any of Irico's subsidiary or affiliated companies.

12.     Irico objects to Plaintiff's Interrogatories to the extent that responding would require Irico to violate the privacy and/or confidentiality of a third party or confidentiality agreement with a third party.

13.     Irico objects to Plaintiff's Interrogatories to the extent that they seek information that is publicly available, already in Plaintiffs' possession, custody, or control, or more readily available from other sources.

14.     Irico objects to Plaintiff's Interrogatories to the extent that they seek information or documents concerning transactions outside the United States. Such Interrogatories are unduly burdensome and irrelevant to this pending action as Plaintiffs' purported class definition is confined to "all persons . . . who directly purchased a Cathode Ray Tube Product . . . in the United States" (see Direct Purchaser Plaintiffs' Consolidated Amended Complaint dated March 16, 2009).

15.     Irico objects to Plaintiff's Interrogatories to the extent that compliance would require Irico to violate the laws, regulations, procedures, or orders of a judicial or regulatory body of foreign jurisdictions.

16.     Irico's responses, whether now or in the future, pursuant to Plaintiff's Interrogatories should not be construed as either (i) a waiver of any of Irico's general or specific

objections or (ii) an admission that such information or documents are either relevant or admissible as evidence.

17.     Irico objects to Plaintiff's Interrogatories to the extent that they are compound and/or contain discrete subparts in violation of Federal Rule of Civil Procedure 33(a)(1).

18.     Irico objects to Plaintiff's Interrogatories to the extent that they state and/or call for legal conclusions.

19.     Irico objects to the Interrogatories to the extent that they contain express or implied assumptions of fact or law with respect to the matters at issue in this case.

20.     Irico objects to the Interrogatories to the extent they seek information or documents that cannot be removed or transmitted outside China without violating the laws and regulations of that country, including but not limited to restrictions on the transmission of state secrets or trade secrets as those terms are defined under Chinese law.

21.     Irico reserves the right to assert additional General and Specific Objections as appropriate to supplement these Responses.

These General Objections apply to each Interrogatory as though restated in full in the responses thereto. The failure to mention any of the foregoing General Objections in the specific responses set forth below shall not be deemed as a waiver of such objections or limitations.

## GENERAL OBJECTIONS TO DEFINITIONS AND INSTRUCTIONS

1.     Irico objects to the definitions of "Defendant," "You," "Your," and "Yourself" (Definition Nos. 1 and 3) to the extent that Plaintiff defines those terms to include the Irico's "present or former employees, officers, directors, agents, predecessors, successors, parents, subsidiaries, affiliates, joint ventures or any other person acting on their behalf." This definition is overbroad, unduly burdensome, vague, and ambiguous. Irico also objects to the inclusion of all "present or former employees, officers, directors, agents . . . or any other person acting on [the] behalf [of]" Irico within this definition to the extent it purports to encompass information that is protected by attorney-client privilege, work product protection or any other applicable doctrine, privilege, protection or immunity or otherwise calls for a legal conclusion.

2.     Irico objects to the definition of "Document" (Definition No. 4) to the extent it

1    seeks to impose requirements that are beyond those imposed by the Federal Rules of Civil

2    Procedure, the Local Rules, or any other applicable laws.

3          3.      Irico objects to the definition of "Employee" (Definition No. 5) on the grounds

4    that it calls for a legal conclusion and is otherwise vague, ambiguous, and overly broad. Irico

5    further objects to this definition to the extent that it attempts to impose burdens on Irico beyond

6    those imposed by the Federal Rules of Civil Procedure. Irico further objects to this definition to

7    the extent that it seeks information protected by the attorney client or other applicable privilege,

8    attorney work product doctrine, or otherwise seeks to violate rights of privacy under U.S. or

9    foreign law.

10         4.      Irico objects to the definitions of "CRT" and "CRT Product" (Definition No. 6) on

11   the grounds that they are vague, ambiguous and overly broad. Irico further objects to the use of

12   the term "CRT Products" to the extent that it is inconsistent with the definition of "CRT

13   Products" as set forth in Plaintiff's pleadings.

14         5.      Irico objects to the definition of the "Relevant Time Period" (Definition No. 7) as

15   overbroad, unduly burdensome, and beyond the applicable statute of limitations.

16         6.      Irico objects to the definition of "Communication" (Definition No. 8) on the

17   grounds that it is vague, ambiguous, and overly broad. Irico further objects to this definition to the

18   extent that it attempts to impose burdens on Irico beyond those imposed by the Federal Rules of

19   Civil Procedure.

20         7.      Irico objects to the definition of "Meeting" (Definition No. 10) on the grounds that

21   the definition is overly broad, unduly burdensome, and seeks information that is neither relevant

22   nor proportionate to the needs of the case.

23         8.      Irico objects to Instruction No. 1 (related to identification of persons) to the extent

24   that it purports to impose burdens or obligations broader than, inconsistent with, or not authorized

25   under the Federal Rules of Civil Procedure, including, without limiting the generality of the

26   foregoing, Rule 26(b)(5)(A) and Rule 26(e)(1). Irico further objects to this Instruction to the

27   extent that it purports to impose burdens or obligations broader than, inconsistent with, or not

28   authorized under, the Local Rules and any orders of the Court, and on the grounds that it is vague,

1   ambiguous, and inconsistent with common usage. Irico further objects to this Instruction to the

2   extent it seeks information that would disclose personal confidential information and/or violate

3   any and all rights of privacy under the United States Constitution or Article I of the Constitution

4   of the State of California, or any other applicable law or state constitution, or that is otherwise

5   prohibited from disclosure because to do so would cause Irico to violate legal and/or contractual

6   obligations to any other persons or entities.

7           9.     Irico objects to Instruction No. 2 (related to identification of an entity other than a

8   natural person) to the extent that it purports to impose burdens or obligations broader than,

9   inconsistent with, or not authorized under the Federal Rules of Civil Procedure or other applicable

10   rule or Order of this Court.

11           10.   Irico objects to Instruction No. 3 (related to the production of business records in

12   response to an interrogatory pursuant to Federal Rule of Civil Procedure 33(d)) on the grounds

13   that it is unduly burdensome and purports to impose burdens and obligations upon Irico beyond

14   those required by the Federal Rules of Civil Procedure or other applicable rule or Order of this

15   Court.

16   **SPECIFIC RESPONSES TO INTERROGATORIES**

17   **INTERROGATORY NO. 1**

18       State the name, address, and relationship to You of each person who prepared or assisted

19   in the preparation of the responses to these interrogatories. (Do not identify anyone who simply

20   typed or reproduced the responses.)

21   **RESPONSE TO INTERROGATORY NO. 1**

22       Irico reasserts and incorporates each of the General Objections and Objections to the

23   Definitions and Instructions set forth above. Irico also objects to the extent that this request calls

24   for information and documents that are privileged under the attorney-client privilege and work

25   product doctrine.

26       Subject to and without waiving the objections stated above, Irico responds that the

27   following employees assisted in the preparation of these responses:

28          • Wenkai Zhang

---

IRICO'S 6TH SUPPLEMENTAL OBJECTIONS    6    Master File No. 4:07-cv-05944-JST
AND RESPONSES TO DPP'S FIRST SET           MDL No. 1917
INTERROGATORIES

1  Irico will supplement its response to this interrogatory with any additional individuals who assist
2  with preparation of supplemental responses.

3  **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 1**

4  Irico reasserts and incorporates each of the General Objections, Objections to the
5  Definitions and Instructions, and specific objections to Interrogatory No. 1 set forth above.

6  Subject to and without waiving the foregoing objections, Irico states as follows: Irico
7  responds that the following additional employees assisted in the preparation of these responses:

8  • Yan Yunlong

9  **INTERROGATORY NO. 3**

10  Identify each employee with pricing authority who attended any trade association during
11  the Relevant Time Period relating to CRT and/or CRT Products and state with respect to each
12  employee:

13  (a)  the trade association attended;

14  (b)  the dates of attendance;

15  (c)  any offices, chairs or committee positions held in each of the trade associations;
16  and

17  (d)  the dates which those offices, chairs or committee positions were held.

18  **RESPONSE TO INTERROGATORY NO. 3**

19  Irico reasserts and incorporates each of the General Objections and Objections to the
20  Definitions and Instructions set forth above.

21  Subject to and without waiving the objections stated above, Irico responds that it will
22  conduct a reasonable search for information responsive to this Interrogatory, if any, and
23  supplement its response as necessary.

24  **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 3**

25  Irico reasserts and incorporates each of the General Objections, Objections to the
26  Definitions and Instructions, and specific objections to Interrogatory No. 3 set forth above.

27  Subject to and without waiving the foregoing objections, Irico states as follows:  Irico has
28  been able to confirm the attendance of the specific individuals listed below at trade association

1  meetings during the Relevant Period.

2      Wang Zhaojie attended meetings of the China CPT Industry Association on the following

3  dates: November 6, 1998; April 2, 1999; December 9, 1999; April 6, 2000; and September 14,

4  2000.  Mr. Wang recalls attending other meetings of the China CPT Industry Association during

5  the Relevant Period but cannot recall any specific dates.  Wang Zhaojie did not hold any offices,

6  chairs or committee positions in the China CPT Industry Association.

7      Wang Ximin attended meetings of the China CPT Industry Association during the

8  Relevant Period but cannot recall any specific dates.  Wang Ximin did not hold any offices, chairs

9  or committee positions in the China CPT Industry Association.

10  **INTERROGATORY NO. 5**

11      Identify any meeting or communication between You and other producers of CRT and/or

12  CRT Products during the Relevant Time Period, including the named Defendants in this

13  coordinated proceeding, regarding CRT and/or CRT Product pricing, price increase

14  announcements, terms or conditions of sales, profit margins or market share, production levels,

15  inventory, customers, auctions, reverse auctions, dynamic bidding events, or sales, and for each

16  such meeting or communication:

17      (a)    provide the date and location of the meeting or communication;

18      (b)    identify the person(s) who initiated, called, organized, attended or participated in

19  the meeting or communication;

20      (c)    describe the subject matter discussed and any information you provided or

21  received;

22      (d)    describe every action taken by you as a result of the meeting or communication;

23  and

24      (e)    identify all persons with knowledge relating to the meeting or communication.

25  **RESPONSE TO INTERROGATORY NO. 5**

26      Irico reasserts and incorporates each of the General Objections and Objections to the

27  Definitions and Instructions set forth above.  Irico also objects that this interrogatory is

28  duplicative and cumulative of other requests served on Irico, including during jurisdictional

1    discovery.

2          Subject to and without waiving the objections stated above, Irico responds that it has

3    already provided information responsive to this interrogatory to Plaintiff in its responses to

4    jurisdictional discovery, including Irico's response to Request No. 10 of Direct Purchaser

5    Plaintiff Studio Spectrum, Inc's First Set of Requests for Production.  Irico will conduct a

6    reasonable search for additional information responsive to this interrogatory, if any, and

7    supplement its response as necessary.

8    **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 5**

9          Irico reasserts and incorporates each of the General Objections, Objections to the

10   Definitions and Instructions, and specific objections to Interrogatory No. 5 set forth above. Irico

11   also objects to this interrogatory to the extent it purports to require Irico to respond beyond the

12   scope of the modification to Interrogatory No. 5 removing CRT Products from the scope of this

13   interrogatory, as stated in the February 5, 2021 letter from R. Alexander Saveri to John Taladay.

14          Subject to and without waiving the foregoing objections, Irico states as follows: Wang

15   Zhaojie identifies the following meetings or communications with other producers of CRTs:

16          •   November 6, 1998 meeting in Xi'an, People's Republic of China to discuss China

17              CDT market information attended by Wang Zhaojie.

18          •   April 2, 1999 meeting in Nanjing, People's Republic of China to discuss China

19              CDT market information attended by Wang Zhaojie.

20          •   April 6, 2000 meeting in Xiamen, People's Republic of China to discuss China

21              CDT market information attended by Wang Zhaojie.

22          •   A meeting taking place on an unknown date at a SEG Hitachi factory in Shenzhen,

23              People's Republic of China, attended by Wang Zhaojie.

24          Wang Zhaojie believes that he may have attended additional meetings with other

25   producers of CRTs between 1998-2000, but he cannot recall the specifics of those meetings.

26   Such meetings may have occurred in Beijing and Changsha, People's Republic of China.  Wang

27   Zhaojie did not attend any meetings outside of China.  Wang Zhaojie believes he met with one or

28   more representatives of the following Chinese CRT producers: Shenzhen or Tianjin Samsung

IRICO'S 6TH SUPPLEMENTAL OBJECTIONS          9          Master File No. 4:07-cv-05944-JST
AND RESPONSES TO DPP'S FIRST SET                              MDL No. 1917
INTERROGATORIES

1    SDI, Shanghai Yongxin, Changsha LG, Fuzhou Chunghwa, Beijing Matsushita, Shenzhen SEG

2    Hitachi, and/or Dongguan Fudi.  He could not recall the specific entities that participated in each

3    individual meeting.  Wang Zhaojie could not recall the names of the individual(s) from the

4    various entities who attended each meeting, but believes the various attendees included Wong

5    Lian (Changsha LG), Yang Guojun (Shenzhen SEG Hitachi), Li Mingzhi (either Shenzhen or

6    Tianjin Samsung SDI), and/or J.S. Lu (Fuzhou Chunghwa).  The subject matter of these

7    communications and meetings involved information on Chinese CRT issues and market

8    conditions.  Irico believes these meetings were largely connected to the China CPT Industry

9    Association.

10        In addition, Su Xiaohua, then the Deputy General Manager for Planning in the Irico Sales

11   Company, recalls attending an event, with an unknown Irico employee, hosted by Skyworth, a

12   Chinese television manufacturer and customer of Irico, at which he interacted with other CRT

13   manufacturers.  This event was organized by Skyworth and involved companies from throughout

14   Skyworth's supply chain, not just CRT manufacturers.  Irico is not aware of any discussions with

15   other CRT manufacturers at this meeting regarding pricing, price increase announcements, terms

16   or conditions of sales, profit margins or market share, production levels, inventory, other

17   customers, auctions, reverse auctions, dynamic bidding events, or sales.

18        Irico continues to conduct a reasonable search for information responsive to Interrogatory

19   No. 5 as reflected in the March 31, 2021 Special Master's Order re DPPs' Motion to Compel

20   Responses to Interrogatory Nos. 4 & 5, ECF No. 5919. Irico will provide an additional

21   supplemental response by May 10, 2021.

22   **SECOND SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 5**

23        Irico reasserts and incorporates each of the General Objections, Objections to the

24   Definitions and Instructions, and specific objections to Interrogatory No. 5 set forth above.

25        Subject to and without waiving the foregoing objections, Irico states as follows: Wang

26   Ximin believes that he attended no more than a few meetings with other producers of CRTs

27   during the relevant period but cannot recall the specifics of those meetings.  Such meetings may

28   have occurred in Xianyang or Dongguan, People's Republic of China.  Wang Ximin did not

1   attend any meetings outside of China.  Wang Ximin believes he met with one or more

2   representatives of the following Chinese CRT producers during these few meetings but cannot

3   recall specifically: Shenzhen Samsung SDI, Shanghai Yongxin, Changsha LG, Fuzhou

4   Chunghwa, Beijing Matsushita, Shenzhen SEG Hitachi, Nanjing LG Philips and/or Dongguan

5   Fudi. Wang Ximin could not recall the names of the individual(s) from the various entities who

6   attended each meeting or who attended each of the few meetings, but he believes the various

7   attendees would have included Yang Guojun (SEG Hitachi), Zhu Danlin (Shanghai Yongxin),

8   Fang Wenqiang (Beijing Matsushita), Qian Xiaolan (Dongguan Fudi), and/or Yang Xiangjie

9   (Fuzhou Chunghwa).  Wang Ximin also believes he may have spoken with some of these

10   representatives of other Chinese CRT producers by phone on a few occasions during the relevant

11   period but cannot recall the specifics of any such phone calls.  The subject matter of these

12   communications and meetings involved information on Chinese CRT issues and market

13   conditions.  Irico believes these meetings were largely connected to the China CPT Industry

14   Association.

15   **THIRD SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 5**

16        Irico reasserts and incorporates each of the General Objections, Objections to the

17   Definitions and Instructions, and specific objections to Interrogatory No. 5 set forth above.

18        Subject to and without waiving the foregoing objections, Irico states as follows: Irico

19   identifies the following additional meetings or communications with other producers of CRTs:

20        •   December 9, 1999 meeting in Suzhou, People's Republic of China attended by

21            Wang Zhaojie.  Mr. Wang does not recall the content of the meeting but recalls

22            that Song Shizhen accompanied him on this trip.

23        •   January 13, 2000 meeting in Xi'an, People's Republic of China.  Irico's records

24            indicate that Yao Jun incurred a fee related to a CDT industry meeting at the Hotel

25            Royal Xi'an on January 13, 2000.  Following a reasonable search for other

26            responsive information, Irico could not ascertain any details of this meeting.

27        •   September 14, 2000 meeting in Changsha, People's Republic of China attended by

28            Wang Zhaojie.  Mr. Wang does not recall the content of the meeting but recalls

IRICO'S 6TH SUPPLEMENTAL OBJECTIONS     11     Master File No. 4:07-cv-05944-JST
AND RESPONSES TO DPP'S FIRST SET     MDL No. 1917
INTERROGATORIES

1   that it was organized by LG and also attended by Yang Zhen, a representative of

2   another CRT producer.

3   Irico also provides the following information based on its review of its travel

4   reimbursement records from the Relevant Period:

5   • Irico understands that Plaintiff alleges that a meeting between CRT producers took

6   place in Fuzhou, People's Republic of China on October 9, 1998.  Irico's records

7   indicate that Wei Jianshe traveled to Fuzhou on or around this date.  Following a

8   reasonable search for other responsive information, Irico could not confirm that

9   Mr. Wei met with competitors during this trip, nor could it confirm the details of

10   the meeting as alleged by plaintiffs.

11   • Irico understands that Plaintiff alleges that meetings between CRT producers took

12   place in Beijing, People's Republic of China on December 8 through 10, 1998.

13   Irico's records indicate that Li Weisheng and Ma Jinquan traveled to Beijing on or

14   around these dates.   Following a reasonable search for other responsive

15   information, Irico could not confirm that Li Weisheng or Ma Jinquan met with

16   competitors during this trip, nor could it confirm the details of the meeting as

17   alleged by plaintiffs.

18   • Irico understands that Plaintiff alleges that a meeting between CRT producers took

19   place on June 22, 1999.  Irico's records indicate that Li Weisheng traveled to

20   Shanghai, People's Republic of China on or around this date.  Following a

21   reasonable search for other responsive information, Irico could not confirm that

22   Mr. Li met with competitors during this trip, nor could it confirm the details of the

23   meeting as alleged by plaintiffs.

24   • Irico understands that Plaintiff alleges that a meeting between CRT producers took

25   place in Nanjing, People's Republic of China on August 5, 1999.  Irico's records

26   indicate that Wang Zhaojie traveled to Nanjing on or around this date.  Mr. Wang

27   did not recall attending this alleged meeting.  Following a reasonable search for

28   other responsive information, Irico could not confirm that Mr. Wang met with

1    competitors during this trip, nor could it confirm the details of the meeting as

2    alleged by plaintiffs.

3    • Irico understands that Plaintiff alleges that a meeting between CRT producers took

4    place in Tianjin, People's Republic of China on October 12, 1999. Irico's records

5    indicate that Wang Zhaojie traveled to Tianjin on or around this date. Mr. Wang

6    did not recall attending this alleged meeting. Following a reasonable search for

7    other responsive information, Irico could not confirm that Mr. Wang met with

8    competitors during this trip, nor could it confirm the details of the meeting as

9    alleged by plaintiffs.

10    • Irico understands that Plaintiff alleges that a meeting between CRT producers took

11    place in Nanjing, People's Republic of China on November 9, 2000. Irico's

12    records indicate that Zhang Hushan traveled to Nanjing on or around this date.

13    Following a reasonable search for other responsive information, Irico could not

14    confirm that Zhang Hushan met with competitors during this trip, nor could it

15    confirm the details of the meeting as alleged by plaintiffs.

16    • Irico understands that Plaintiff alleges that a meeting between CRT producers took

17    place in Shanghai, People's Republic of China on November 21, 2006. Irico's

18    records indicate that Shen Xiaolin traveled to Shanghai on or around this date.

19    Following a reasonable search for other responsive information, Irico could not

20    confirm that Shen Xiaolin met with competitors during this trip, nor could it

21    confirm the details of the meeting as alleged by plaintiffs.

22    **<u>INTERROGATORY NO. 6</u>**

23    Identify each instance during the Relevant Time Period in which You or any other

24    producer of CRT and/or CRT Products, including the named defendants in this coordinated

25    proceeding, instituted a price increase or decrease for CRT and/or CRT Products, and for each

26    such instance:

27    (a)    when such price increase or decrease was announced publicly;

28    (b)    when such price increase or decrease was implemented;

(c)     the amount of the price increase or decrease;

(d)     whether such price increase or decrease was withdrawn;

(e)     each person with responsibility for implementing such price increase or decrease or its withdrawal; and

(f)     any explanation given for such price increase or decrease or withdrawal.

**RESPONSE TO INTERROGATORY NO. 6**

Irico reasserts and incorporates each of the General Objections and Objections to the Definitions and Instructions set forth above. Irico also objects to the extent that this interrogatory calls for information regarding "any other producer" and thus seeks information outside of Irico's possession, custody or control.

Subject to and without waiving the objections stated above, Irico responds that it will conduct a reasonable search for information responsive to this Interrogatory, if any, and supplement its response as necessary.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 6**

Irico reasserts and incorporates each of the General Objections, Objections to the Definitions and Instructions, and specific objections to Interrogatory No. 6 set forth above.

Subject to and without waiving the foregoing objections, Irico states as follows: Irico has not identified any systematic tracking of its CRT prices or information on the announcement, implementation, withdrawal, or explanations for CRT price changes during the Relevant Period. Irico refers Plaintiff to the forthcoming spreadsheet(s) summarizing its original CRT and CRT Product sales records.  Irico further directs Plaintiff to documents IRI-CRT-00004295-303; IRI-CRT-00005349-400; IRI-CRT-00005401-515; IRI-CRT-00008843-880 IRI-CRT-00010133-204; IRI-CRT-00028958-964; IRI-CRT-00030226-241; and IRI-CRT-00030462-503 for the answer to this Interrogatory under Federal Rule of Civil Procedure 33(d).  Irico has conducted a reasonable search for other information responsive to this Interrogatory and has located no additional information beyond that described above.

**INTERROGATORY NO. 7**

Identify and describe all joint ventures, partnerships or other cooperative business

1   relationships, during the Relevant Time Period, relating to CRT and/or CRT Products between

2   You and any other CRT or CRT Products producer.

3   **RESPONSE TO INTERROGATORY NO. 7**

4         Irico reasserts and incorporates each of the General Objections and Objections to the

5   Definitions and Instructions set forth above.  Irico also objects that this interrogatory is

6   duplicative and cumulative of other requests served on Irico, including during jurisdictional

7   discovery.

8         Subject to and without waiving the objections stated above, Irico responds that it has

9   already provided information responsive to this interrogatory to Plaintiff in its responses to

10  jurisdictional discovery, including documents produced in response to Request No. 2 of Direct

11  Purchaser Plaintiff Studio Spectrum, Inc.'s First Set of Requests for Production.  Irico will

12  conduct a reasonable search for additional information responsive to this interrogatory, if any, and

13  supplement its response as necessary.

14  **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 7**

15        Irico reasserts and incorporates each of the General Objections, Objections to the

16  Definitions and Instructions, and specific objections to Interrogatory No. 7 set forth above.

17        Subject to and without waiving the foregoing objections, Irico states as follows:

18        **Shenzhen Irico-Huangqi Information Electronics Co. Ltd.**

19        Shenzhen Irico-Huangqi Information Electronics Co. Ltd. ("Irico Huangqi") was formed

20  on July 2, 1996 as a joint venture between Irico Group and Hong Kong Riyili Co., Ltd.  From

21  July 2, 1996 to August 15, 2002, Irico Group held 60% of the equity of Irico Huangqi and Hong

22  Kong Riyili Co., Ltd. held 40%.  From August 15, 2002 until Irico Huangqi's dissolution in 2006,

23  Irico Group held 33.13% of the company's equity, Gansu Languang Technology Corp. held

24  41.37%, and Hexin Technology Co., Ltd. held 25%.  Irico Huangqi was formally dissolved in

25  2006 and its remaining assets sold at auction.

26        Irico Huangqi's approved scope of business included the research, development,

27  manufacture, and sale of monitors, peripheral equipment, and other electronic devices.  Irico

28  Huangqi's primary business was the manufacture and sale of computer monitors, at least some of

1  which were manufactured using CDTs sold by Irico to Irico Huangqi.  Irico Huangqi did not sell

2  CRTs (except as integrated into monitors) and to Irico's knowledge did not export any products

3  outside of China.

4  <center>**Irico (USA) Inc.**</center>

5  Irico (USA) Inc. ("Irico USA") was incorporated in California on July 5, 1995 as a joint

6  venture between Irico (Hong Kong) Co. ("Irico Hong Kong"), China National Electronics Import

7  & Export Caihong Co. ("CNEIECC"), an independent state-owned entity, and two U.S.

8  individuals named Xueli Huang and Mike Huang.  Irico Hong Kong held a 45.7% stake in Irico

9  USA, while CNEIECC held at 34.3% stake and Xueli and Mike Huang each held 10%.  On

10 February 26, 1998, Xueli and Mike Huang divested from Irico USA, leaving Irico Hong Kong

11 and CNEIECC as the sole owners.  In 1999, CNEIECC sold its ownership stake to Irico Group.

12 On March 9, 2000, Irico Group authorized Liu Feng, General Manager of Irico USA, to sell Irico

13 USA and return the resulting funds to Irico Group.  However, on April 10, 2001, Irico

14 understands that Liu Feng sold the entire company to California-based INB Co. and absconded

15 with the proceeds.  At the time of the transaction, Liu Feng was listed as the operator of INB Co.

16 Then, on May 7, 2001, shortly after the transfer, Sun Xiaolin replaced Liu Feng as the registered

17 operator of INB Co.  Irico USA was dissolved on February 28, 2003.

18 According to the Shaanxi Province People's Government decree establishing Irico USA,

19 the purpose of establishing Irico USA was to expand provincial exports of electromechanical

20 products to North America and to develop trade, investment, and cooperation between China and

21 the United States.  (*See* IRI-CRT-00003498.)  Irico understands from CNEIECC invoice records

22 produced during jurisdictional discovery that CNEIECC sold small volumes of Irico CRTs to

23 Irico USA on several occasions between 1996 and 1999.  However, the invoices indicate that all

24 such sales were shipped to countries other than the United States, including South Africa, Egypt,

25 and China (*see* IRI-CRT-00003561 through -597) with no products delivered to the United States

26 or any United States customer.  Irico is not aware of Irico USA ever manufacturing, marketing,

27 selling, or distributing any CRTs or CRT Products in the United States.

28 Irico further directs Plaintiff to document IRI-CRT-00003490 for the answer to this

1    Interrogatory under Federal Rule of Civil Procedure 33(d).

2    **INTERROGATORY NO. 8**

3        Identify every channel used by You to sell, market, or distribute CRT and/or CRT

4    Products during the Relevant Time Period. If You used different channels at different points

5    within the Relevant Time Period, identify when You used each channel to sell, market, or

6    distribute CRT and/or CRT Products.

7    **RESPONSE TO INTERROGATORY NO. 8**

8        Irico reasserts and incorporates each of the General Objections and Objections to the

9    Definitions and Instructions set forth above.  Irico further objects to the undefined term "channel"

10   as vague, ambiguous, and subject to multiple interpretations.  Irico also objects that this

11   interrogatory is duplicative and cumulative of other requests served on Irico, including during

12   jurisdictional discovery.

13       Subject to and without waiving the objections stated above, Irico responds that it has

14   already provided information responsive to this interrogatory to Plaintiff in its responses to

15   jurisdictional discovery, including Irico's response to Interrogatory No. 18 of Indirect Purchaser

16   Plaintiff's First Set of Interrogatories.  Irico will conduct a reasonable search for additional

17   information responsive to this interrogatory, if any, and supplement its response as necessary.

18   **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 8**

19       Irico reasserts and incorporates each of the General Objections, Objections to the

20   Definitions and Instructions, and specific objections to Interrogatory No. 8 set forth above.

21       Subject to and without waiving the foregoing objections, Irico states as follows:  From

22   1995 to 2004, Irico Group and Irico Display sold CRTs through the Irico Sales Company, an

23   entity within Irico Group that was responsible at that time for sales of all companies under Irico

24   Group.  Sales during this period were made almost exclusively in China (99.2%) and negotiated

25   by the Irico Sales Company and recorded under the name of the specific company that produced

26   the CRT, *i.e.*, Irico Group or Irico Display.  Neither Irico Group nor Irico Display exported any

27   products to North America.

28       Following a corporate restructuring in 2004 that included the formation of Irico Group

1    Electronics Co. Ltd. ("Irico Electronics"), the Irico Sales Company transitioned to a sales

2    department responsible for the sales of Irico Display and Irico Electronics, and Irico Group

3    ceased the sale of CRTs under its own name.  Starting at that time and continuing through the

4    remainder of the Relevant Period, sales by Irico Display and Irico Electronics were made directly

5    by each company.  During this period, Irico Display and Irico Electronics also sold some CRTs

6    internally to Xi'an Caihui Display Technology Co. Ltd. ("Xi'an Caihui") and Xi'an Cairui

7    Display Technology Co. Ltd. ("Xi'an Cairui"), subsidiaries of Irico Display and Irico Group,

8    respectively, located within the Xi'an Export Processing Zone for the purpose of enjoying

9    preferential tax policies on their exports.  Neither Xi'an Caihui nor Xi'an Cairui exported any

10   products to the United States during the Relevant Period.

11   **INTERROGATORY NO. 9**

12       Identify every channel used by you to purchase CRT and/or CRT Products during the

13   Relevant Time Period. If You used different channels at different points within the Relevant Time

14   Period, identify when You used each channel to purchase CRT or CRT Products.

15   **RESPONSE TO INTERROGATORY NO. 9**

16       Irico reasserts and incorporates each of the General Objections and Objections to the

17   Definitions and Instructions set forth above. Irico further objects to the undefined term "channel"

18   as vague, ambiguous, and subject to multiple interpretations.

19       Subject to and without waiving the objections stated above, Irico responds that it will

20   conduct a reasonable search for information responsive to this Interrogatory, if any, and

21   supplement its response as necessary.

22   **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 9**

23       Irico reasserts and incorporates each of the General Objections, Objections to the

24   Definitions and Instructions, and specific objections to Interrogatory No. 9 set forth above.

25       Subject to and without waiving the foregoing objections, Irico states as follows: Irico has

26   conducted a reasonable search for information responsive to this Interrogatory and has located no

27   information regarding purchases by Irico of CRTs or CRT Products.

28

1

**INTERROGATORY NO. 10**

2      Identify the CRT and/or CRT Products that You manufactured or produced for each

3  month within the Relevant Time Period, including the brand name, product number, and intended

4  use.

5  **RESPONSE TO INTERROGATORY NO. 10**

6      Irico reasserts and incorporates each of the General Objections and Objections to the

7  Definitions and Instructions set forth above.  Irico also objects that this interrogatory is

8  duplicative and cumulative of other requests served on Irico, including during jurisdictional

9  discovery.

10      Subject to and without waiving the objections stated above, Irico responds that it has

11  already provided information responsive to this interrogatory to Plaintiff in its responses to

12  jurisdictional discovery, including Irico's response to Interrogatory No. 16 of Indirect Purchaser

13  Plaintiffs' First Set of Interrogatories.  Irico will conduct a reasonable search for additional

14  information responsive to this interrogatory, if any, and supplement its response as necessary.

15  **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 10**

16      Irico reasserts and incorporates each of the General Objections, Objections to the

17  Definitions and Instructions, and specific objections to Interrogatory No. 10 set forth above.

18      Subject to and without waiving the foregoing objections, Irico states as follows:  Irico

19  refers Plaintiff to the forthcoming spreadsheet(s) summarizing its original CRT sales records,

20  which contain information on specific sizes and types of CRTs sold by Irico at specific times

21  during the Relevant Period.  Irico further directs Plaintiff to documents IRI-CRT-00031179

22  through -31215 for the answer to this Interrogatory under Federal Rule of Civil Procedure 33(d).

23  **INTERROGATORY NO. 11**

24      Identify the CRT and/or CRT Products You sold, marketed, or distributed for each month

25  within the Relevant Time Period, including the brand name, product number, and intended use.

26  **RESPONSE TO INTERROGATORY NO. 11**

27      Irico reasserts and incorporates each of the General Objections and Objections to the

28  Definitions and Instructions set forth above.  Irico also objects that this interrogatory is

1    duplicative and cumulative of other requests served on Irico, including during jurisdictional

2    discovery.

3           Subject to and without waiving the objections stated above, Irico responds that it has

4    already provided information responsive to this interrogatory to Plaintiff in its responses to

5    jurisdictional discovery, including Irico's response to Interrogatory No. 17 of Indirect Purchaser

6    Plaintiffs' First Set of Interrogatories.  Irico will conduct a reasonable search for additional

7    information responsive to this interrogatory, if any, and supplement its response as necessary.

8    **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 11**

9           Irico reasserts and incorporates each of the General Objections, Objections to the

10   Definitions and Instructions, and specific objections to Interrogatory No. 11 set forth above.

11          Subject to and without waiving the foregoing objections, Irico states as follows:  Irico

12   refers Plaintiff to the forthcoming spreadsheet(s) summarizing its original CRT sales records,

13   which contain information on specific sizes and types of CRTs sold by Irico at specific times

14   during the Relevant Period.  Irico has conducted a reasonable search for other information

15   responsive to this Interrogatory and has located no additional information beyond that

16   summarized in the spreadsheet.

17   **INTERROGATORY NO. 12**

18          Provide Your sales of CRT and/or CRT Products to the United States and globally for

19   each month from January 1, 1991 to the present. For each month during this period, state the

20   volume of sales, the U.S. dollar value of sales, the unit sale price, the per unit cost to produce

21   CRT and/or CRT Products, the per unit cost to distribute CRT and/or CRT Products (including

22   overseas freight, tariff, customs, duties, inland freight, storage, insurance, dealer commissions),

23   and the per unit profit earned.

24   **RESPONSE TO INTERROGATORY NO. 12**

25          Irico reasserts and incorporates each of the General Objections and Objections to the

26   Definitions and Instructions set forth above. Irico further objects to this interrogatory as

27   overbroad and unduly burdensome as it requests information outside of Plaintiff's purported

28   "Relevant Time Period."  Irico also objects that this interrogatory is duplicative and cumulative of

1    other requests served on Irico, including during jurisdictional discovery.

2           Subject to and without waiving the objections stated above, Irico responds that it has

3    already provided information responsive to this interrogatory to Plaintiff in its responses to

4    jurisdictional discovery, including Irico's responses to Request No. 9 of Direct Purchaser Plaintiff

5    Studio Spectrum, Inc.'s Requests for Production and Interrogatories No. 1 and 3 of Indirect

6    Purchaser Plaintiffs' Second Set of Interrogatories.  Irico will conduct a reasonable search for

7    additional information responsive to this interrogatory, if any, and supplement its response as

8    necessary.

9    **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 12**

10          Irico reasserts and incorporates each of the General Objections, Objections to the

11   Definitions and Instructions, and specific objections to Interrogatory No. 12 set forth above.

12          Subject to and without waiving the foregoing objections, Irico states as follows: Irico

13   refers Plaintiff to the forthcoming spreadsheet(s) summarizing its original CRT and CRT Product

14   sales records.  Irico has conducted a reasonable search for other information responsive to this

15   Interrogatory and has located no additional information beyond that summarized in the

16   spreadsheet(s).

17   **INTERROGATORY NO. 13**

18          If You offered different prices to different markets, or on a spot market versus contract

19   basis, during the Relevant Time Period, so indicate in the statistical data supplied in response to

20   Interrogatory No. 6.

21   **RESPONSE TO INTERROGATORY NO. 13**

22          Irico reasserts and incorporates each of the General Objections and Objections to the

23   Definitions and Instructions set forth above.  Irico further objects to the terms "markets," "spot

24   markets" and "contract basis" as vague, ambiguous, and subject to multiple interpretations.

25          Subject to and without waiving the objections stated above, Irico responds that it will

26   conduct a reasonable search for information responsive to this Interrogatory, if any, and

27   supplement its response as necessary.

28   **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 13**

1    Irico reasserts and incorporates each of the General Objections, Objections to the

2    Definitions and Instructions, and specific objections to Interrogatory No. 13 set forth above.

3    Subject to and without waiving the foregoing objections, Irico states as follows: Irico

4    refers Plaintiff to the forthcoming spreadsheet(s) summarizing its original CRT and CRT Product

5    sales records.  Irico has conducted a reasonable search for other information responsive to this

6    Interrogatory and has located no additional information beyond that summarized in the

7    spreadsheet(s).

8    **INTERROGATORY NO. 14**

9    Provide Your aggregate purchases (in both number of units and revenue in U.S. dollars) of

10   CRT and/or CRT Products for each month from January 1, 1991 to the present.

11   **RESPONSE TO INTERROGATORY NO. 14**

12   Irico reasserts and incorporates each of the General Objections and Objections to the

13   Definitions and Instructions set forth above. Irico further objects to this interrogatory as

14   overbroad and unduly burdensome as it requests information outside of Plaintiff's purported

15   "Relevant Time Period."

16   Subject to and without waiving the objections stated above, Irico responds that it will

17   conduct a reasonable search for information responsive to this Interrogatory, if any, and

18   supplement its response as necessary.

19   **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 14**

20   Irico reasserts and incorporates each of the General Objections, Objections to the

21   Definitions and Instructions, and specific objections to Interrogatory No. 14 set forth above.

22   Subject to and without waiving the foregoing objections, Irico states as follows: Irico has

23   conducted a reasonable search for information responsive to this Interrogatory and has located no

24   information regarding purchases by Irico of CRTs or CRT Products.

25   **INTERROGATORY NO. 15**

26   Provide Your aggregate purchases (in units and U.S. dollars) of CRT or CRT Products

27   from each of the other named defendants in this coordinated proceeding, for the purpose of resale,

28   for each month during from January 1, 1991 to the present.

1  **RESPONSE TO INTERROGATORY NO. 15**

2       Irico reasserts and incorporates each of the General Objections and Objections to the

3  Definitions and Instructions set forth above. Irico further objects to this interrogatory as

4  overbroad and unduly burdensome as it requests information outside of Plaintiff's purported

5  "Relevant Time Period."

6       Subject to and without waiving the objections stated above, Irico responds that it will

7  conduct a reasonable search for information responsive to this Interrogatory, if any, and

8  supplement its response as necessary.

9  **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 15**

10      Irico reasserts and incorporates each of the General Objections, Objections to the

11 Definitions and Instructions, and specific objections to Interrogatory No. 15 set forth above.

12      Subject to and without waiving the foregoing objections, Irico states as follows: Irico has

13 conducted a reasonable search for information responsive to this Interrogatory and has located no

14 information regarding purchases by Irico of CRTs or CRT Products.

15

16

17 Dated:  January 7, 2022                    BAKER BOTTS L.L.P.

18

19                                           */s/ John M. Taladay*

20                                           John M. Taladay (*pro hac vice*)
                                             Evan J. Werbel (*pro hac vice*)
21                                           Thomas E. Carter (*pro hac vice*)
                                             Andrew L. Lucarelli (*pro hac vice*)
22                                           700 K Street, N.W.
                                             Washington, D.C. 20001
23                                           (202)-639-7700
                                             (202)-639-7890 (fax)
24                                           Email: john.taladay@bakerbotts.com
                                                    evan.werbel@bakerbotts.com
25                                                  tom.carter@bakerbotts.com
                                                    drew.lucarelli@bakerbotts.com
26
                                             Jonathan Shapiro (State Bar No. 257199)
27                                           101 California Street, Suite 3600
                                             San Francisco, California 94111
28                                           (415) 291-6200

---

1

(415) 291-6300 (fax)
Email: jonathan.shapiro@bakerbotts.com

2

3

*Attorneys for Defendants*
*IRICO GROUP CORP. and*
*IRICO DISPLAY DEVICES CO., LTD.*

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
## <u>CERTIFICATE OF SERVICE</u>

2
**In re: Cathode Ray Tube (CRT) Antitrust Litigation - MDL No. 1917**

3
I declare that I am employed in Washington, District of Columbia.  I am over the age of

4
eighteen years and not a party to the within case; my business address is:  Baker Botts L.L.P., 700

5
K Street, N.W., Washington, D.C. 20001.

6
On January 7, 2022, I served the following document(s) described as:

7
**IRICO DEFENDANTS' SIXTH SUPPLEMENTAL OBJECTIONS AND RESPONSES
TO DIRECT PURCHASER PLAINTIFFS'**

8
**FIRST SET OF INTERROGATORIES**

9
on the following interested parties in this action:

10

11
R. Alexander Saveri (rick@saveri.com)          Mario N. Alioto (malioto@tatp.com)
Geoffrey C. Rushing (grushing@saveri.com)      Lauren C. Capurro (laurenrussell@tatp.com)
Matthew D. Heaphy (mheaphy@saveri.com)         TRUMP ALIOTO TRUMP & PRESCOTT LLP

12
SAVERI & SAVERI, INC.                          2280 Union Street
706 Sansome St # 200                           San Francisco, CA 94123

13
San Francisco, CA 94111

14
*Lead Counsel for the Direct Purchaser
Plaintiffs*                                    *Lead Counsel for the Indirect Purchaser*

15
                                               *Plaintiffs*

16

17
Joseph Goldberg (jg@fbdlaw.com)                Dan Birkhaeuser
FREEDMAN BOYD HOLLANDER                        (dbirkhaeuser@bramsonplutzik.com)

18
GOLDBERG URIAS & WARD P.A.                     BRAMSON, PLUTZIK, MAHLER &
20 First Plaza, Suite 700                      BIRKHAEUSER, LLP

19
Albuquerque, NM 87102                          2125 Oak Grove Rd, Suite 125
D (505) 305-1263                               Walnut Creek, CA 94598

20
*Counsel for the Indirect Purchaser
Plaintiffs*                                    *Counsel for the Indirect Purchaser*
                                               *Plaintiffs*

21

22
[X]     (BY ELECTRONIC MAIL) I caused such documents to be sent to the persons at the
        email addressed listed above.  I did not receive, within a reasonable time after the

23
        transmission, any electronic message or other indication that the transmission was
        unsuccessful.

24
        I declare under penalty of perjury under the laws of the District of Columbia that the

25
foregoing is true and correct.  Executed on January 7, 2022, in Washington, D.C.

26

27
                                        */s/ Thomas E. Carter*
                                        Thomas E. Carter

28

# Exhibit 18

BAKER BOTTS L.L.P.
John M. Taladay (*pro hac vice*)
Evan J. Werbel (*pro hac vice*)
Thomas E. Carter (*pro hac vice*)
Andrew L. Lucarelli (*pro hac vice*)
700 K Street, N.W.
Washington, D.C. 20001
(202)-639-7700
(202)-639-7890 (fax)
Email: john.taladay@bakerbotts.com
        evan.werbel@bakerbotts.com
        tom.carter@bakerbotts.com
        drew.lucarelli@bakerbotts.com

Jonathan Shapiro (State Bar No. 257199)
101 California Street, Suite 3600
San Francisco, California 94111
(415) 291-6200
(415) 291-6300 (fax)
Email: jonathan.shapiro@bakerbotts.com

 *Attorneys for Defendants*
*IRICO GROUP CORP. and*
*IRICO DISPLAY DEVICES CO., LTD.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Master File No. 07-cv-05944-JST (N.D. Cal.) |
| | MDL No. 1917 |
| This Document Relates to: | **IRICO DEFENDANTS' OBJECTIONS AND RESPONSES TO INDIRECT PURCHASER PLAINTIFFS' FOURTH SET OF INTERROGATORIES TO IRICO GROUP CORPORATION AND IRICO DISPLAY DEVICES CO., LTD.** |
| *ALL INDIRECT PURCHASER ACTIONS* | |

PROPOUNDING PARTY:      Indirect Purchaser Plaintiffs

RESPONDING PARTIES:      Irico Group Corporation
                         Irico Display Devices Co., Ltd.

SET NUMBER:      Four

| | |
|---|---|
| IRICO'S OBJECTIONS AND RESPONSES TO IPP'S FOURTH SET INTERROGATORIES | Master File No. 07-cv-05944-JST MDL No. 1917 |

1        Pursuant to Federal Rules of Civil Procedure 26 and 33, Irico Group Corporation and Irico

2   Display Devices Co, Ltd. (collectively, "Irico" or "Irico Defendants") hereby provides these

3   responses to the Indirect Purchaser Plaintiffs' ("Plaintiffs") Fourth Set of Interrogatories to Irico

4   Group Corporation and Irico Display Devices Co., Ltd., dated December 14, 2021

5   ("Interrogatories"). Irico reserves the right to amend or supplement these Objections and

6   Responses (the "Responses") to the extent allowed by the Federal Rules of Civil Procedure and

7   the Local Rules of Practice in Civil Proceedings before the United States District Court for the

8   Northern District of California ("Local Rules"). Subject to and without waiving any of Irico's

9   General and Specific Objections as set forth below, Irico is willing to meet and confer with

10  Plaintiffs regarding such General and Specific Objections.

11       The following Responses are made only for purposes of this case. The Responses are

12  subject to all objections as to relevance, materiality and admissibility, and to any and all

13  objections on any ground that would require exclusion of any response if it were introduced in

14  court. All evidentiary objections and grounds are expressly reserved.

15       These Responses are subject to the provisions of the Stipulated Protective Order issued by

16  the Court on June 18, 2008 ("Protective Order"). Irico's Responses are hereby designated

17  "Confidential" in accordance with the provisions of the Protective Order.

18                              **GENERAL OBJECTIONS**

19       Irico makes the following General Objections to Plaintiffs' Interrogatories:

20       1.      Irico's Responses are based upon information available to and located by Irico as

21  of the date of service of these Responses. In responding to Plaintiffs' Interrogatories, Irico states

22  that it has conducted a diligent search, reasonable in scope, of those files and records in its

23  possession, custody, or control believed to likely contain information responsive to Plaintiffs'

24  Interrogatories.

25       2.      No express, incidental, or implied admissions are intended by these Responses and

26  should not be read or construed as such.

27       3.      Irico does not intend, and its Responses should not be construed as, an agreement

28  or acquiescence with any characterization of fact, assumption, or conclusion of law contained in

---

IRICO'S OBJECTIONS AND RESPONSES TO          1          Master File No. 07-cv-05944-JST
IPP'S FOURTH SET INTERROGATORIES                                      MDL No. 1917

1   or implied by the Requests.

2        4.      Irico has made a good faith and reasonable attempt to ascertain whether

3   information responsive to Plaintiffs' Interrogatories exists and is properly producible, and has

4   produced or made available for examination non-privileged responsive materials located during

5   the course of that reasonable search.

6        5.      To the extent that Irico refers to any pleading, expert report, or other filing in its

7   Specific Responses, Irico incorporates by reference all exhibits and/or evidence cited therein.

8        6.      Irico objects to Plaintiffs' Interrogatories to the extent that they are overly broad,

9   unduly burdensome, oppressive, and duplicative to the extent that they seek information or

10  documents that are already in the possession, custody, or control of Plaintiffs.

11       7.      Irico objects to Plaintiffs' Interrogatories to the extent that they seek to impose

12  obligations on Irico beyond those of the Federal Rules of Civil Procedure, the Local Rules, or any

13  Order of this Court.

14       8.      Irico objects to Plaintiffs' Interrogatories to the extent that they request duplicative

15  discovery in violation of the Order Re Discovery And Case Management Protocol, ECF No.

16  1128. *See* Order Re Plaintiffs' Motions To Compel Supplemental Discovery From Toshiba And

17  Panasonic, ECF No. 4128, at 4 ("The Discovery Protocol (ECF No 1128), requires parties to

18  coordinate discovery and not file duplicative discovery. . . . The benefit redounds to all parties on

19  both sides of the litigation, by conserving the efforts required by Plaintiffs and protecting

20  defendants against unnecessary duplication of effort.") (Report and Recommendation adopted in

21  full at ECF No. 4256).

22       9.      Irico objects to Plaintiffs' Interrogatories to the extent they seek information that is

23  not relevant or disproportionate to the needs of the case.

24       10.     Irico objects to Plaintiffs' Interrogatories to the extent that they are vague,

25  ambiguous, or susceptible to more than one interpretation. Irico has attempted to construe such

26  vague or ambiguous Interrogatories so as to provide for the production of responsive information

27  that is proportionate to the needs of the case. If Plaintiffs subsequently asserts an interpretation of

28  any Interrogatory that differs from Irico's understanding, Irico reserves the right to supplement or

1    amend its Responses.

2         11.    Irico objects to Plaintiffs' Interrogatories to the extent that they contain terms that

3    are insufficiently or imprecisely defined. Irico shall attempt to construe such vague or ambiguous

4    Interrogatories so as to provide for the production of responsive information that is proportionate

5    to the needs of the case.

6         12.    Irico objects to Plaintiffs' Interrogatories to the extent that they seek information

7    that is protected from disclosure by the attorney-client privilege, work product doctrine, joint

8    defense or common interest privilege, self-evaluative privilege, or any other applicable privilege

9    or immunity. Irico provides only information that it believes to be non-privileged and otherwise

10   properly discoverable. Nothing in Irico's responses is intended nor should be construed as a

11   waiver of any such privilege or immunity. The inadvertent or mistaken provision of any

12   information or responsive documents subject to any such doctrine, privilege, protection or

13   immunity from production shall not constitute a general, inadvertent, implicit, subject-matter,

14   separate, independent or other waiver of such doctrine, privilege, protection or immunity from

15   production.

16        13.    Irico objects to Plaintiffs' Interrogatories to the extent that they call for

17   information that is not in the possession, custody, or control of Irico. Irico also objects to the

18   extent that any of Plaintiffs' Interrogatories seek information from non-parties or third parties,

19   including but not limited to any of Irico's subsidiary or affiliated companies.

20        14.    Irico objects to Plaintiffs' Interrogatories to the extent that responding would

21   require Irico to violate the privacy and/or confidentiality of a third party or confidentiality

22   agreement with a third party.

23        15.    Irico objects to Plaintiffs' Interrogatories to the extent that they seek information

24   that is publicly available, already in Plaintiffs' possession, custody, or control, or more readily

25   available from other sources.

26        16.    Irico objects to Plaintiffs' Interrogatories to the extent that they seek information

27   or documents concerning transactions outside the United States. Such Requests are unduly

28   burdensome and disproportionate to the needs of the case as Plaintiffs' class definition is confined

1    to "individuals and entities that indirectly purchased Cathode Ray Tube Products . . . in the United

2    States" (see Indirect Purchaser Plaintiffs' Fifth Consolidated Amended Complaint ("Complaint")

3    dated September 19, 2019).

4         17.    Irico objects to Plaintiffs' Interrogatories to the extent that compliance would

5    require Irico to violate the laws, regulations, procedures, or orders of a judicial or regulatory body

6    of foreign jurisdictions.

7         18.    Irico's responses pursuant to Plaintiffs' Interrogatories should not be construed as

8    either (i) a waiver of any of Irico's general or specific objections or (ii) an admission that such

9    information or documents are either relevant or admissible as evidence.

10        19.    Irico objects to Plaintiffs' Interrogatories to the extent that they are compound

11   and/or contain discrete subparts in violation of Federal Rule of Civil Procedure 33(a)(1).

12        20.    Irico objects to Plaintiffs' Interrogatories to the extent that they state and/or call for

13   legal conclusions.

14        21.    Irico objects to the Interrogatories to the extent that they contain express or implied

15   assumptions of fact or law with respect to the matters at issue in this case.

16        22.    Irico objects to the Interrogatories to the extent they seek information or

17   documents that cannot be removed or transmitted outside China without violating the laws and

18   regulations of that country, including but not limited to restrictions on the transmission of state

19   secrets or trade secrets as those terms are defined under Chinese law.

20        23.    Irico objects to the Interrogatories to the extent that they are premature and/or

21   implicate expert analysis and disclosures. *See Young v. Regis Corp.*, No. C 10-02634 SI, 2011 Wl

22   9558055 (N.D. Cal. May 19, 2011). Irico further objects to each Interrogatory to the extent that it:

23   (a) conflicts with obligations that are imposed by the Federal Rules of Civil Procedure, the Civil

24   Local Rules of this Court, and/or any other applicable rule; (b) seeks information that is the

25   subject of expert testimony; and/or (c) seeks information that is dependent on depositions and

26   documents of third-parties that have not been discovered.

27        24.    Irico reserves the right to assert additional General and Specific Objections as

28   appropriate to supplement these Responses.

These General Objections apply to each Interrogatory as though restated in full in the responses thereto. The failure to mention any of the foregoing General Objections in the specific responses set forth below shall not be deemed as a waiver of such objections or limitations.

**GENERAL OBJECTIONS TO DEFINITIONS AND INSTRUCTIONS**

1.       Irico objects to the definitions of "Including" and "Relating" (Definition No. 1) on the grounds that it calls for a legal conclusion and is otherwise vague, ambiguous, and overly broad. Irico further objects to this definition to the extent that it attempts to impose burdens on Irico beyond those imposed by the Federal Rules of Civil Procedure. Irico further objects to this definition to the extent that it seeks information protected by the attorney client or other applicable privilege, attorney work product doctrine, or otherwise seeks to violate rights of privacy under U.S. or foreign law.

2.       Irico objects to the definitions of "You," "Your," and "Irico" (Definition No. 2) to the extent that Plaintiffs defines those terms to include the Irico's "present and former members, officers, agents, employees, and all other persons acting or purporting to act on their behalf, including all present and former members, officers, agents, employees, and all other persons exercising or purporting to exercise discretion, making policy, and make decisions." This definition is overbroad, unduly burdensome, vague, and ambiguous. In particular, Irico objects to this definition to the extent it purports to request information beyond the possession, custody, or control of Irico Group or Irico Display, including but not limited to information in the possession of non-parties and third parties where Irico lacks any duty to obtain or otherwise search for the information and for whom the Court lacks personal jurisdiction. Irico also objects to the inclusion of all "present or former employees, officers, directors, agents . . . or any other person acting on [the] behalf [of]" Irico within this definition to the extent it purports to encompass information that is protected by attorney-client privilege, work product protection or any other applicable doctrine, privilege, protection or immunity or otherwise calls for a legal conclusion.

3.       Irico objects to the definition of "Identify" (Definition No. 3) on the grounds that the definition is overly broad, unduly burdensome, and seeks information that is neither relevant nor proportionate to the needs of the case.

4. Irico objects to the definition of "Document" (Definition No. 5) to the extent it seeks to impose requirements that are beyond those imposed by the Federal Rules of Civil Procedure, the Local Rules, any Order of this Court, or any other applicable laws.

5. Irico objects to the definition of "CRT" (Definition No. 6) on the grounds that it is vague, ambiguous and overly broad.

6. Irico objects to Instruction No. 1 (related to disclosure of additional information) to the extent it purports to impose burdens or obligations broader than, inconsistent with, or not authorized under the Federal Rules of Civil Procedure, including, without limiting the generality of the foregoing, Rule 26(e).

7. Irico objects to Instruction No. 2 (related to production of business records) to the extent that it purports to impose burdens or obligations broader than, inconsistent with, or not authorized under the Federal Rules of Civil Procedure, including, without limiting the generality of the foregoing, Rule 33(d), Rule 26(b). Irico further objects to this Instruction to the extent that it purports to impose burdens or obligations broader than, inconsistent with, or not authorized under, the Local Rules and any Orders of the Court.

8. Irico objects to Instruction No. 3 (related to privileged information) to the extent that it purports to impose burdens or obligations broader than, inconsistent with, or not authorized under the Federal Rules of Civil Procedure, including, without limiting the generality of the foregoing, Rule 33(d), Rule 26(b)(5)(A) and Rule 26(e)(1). Irico further objects to this Instruction to the extent that it purports to impose burdens or obligations broader than, inconsistent with, or not authorized under, the Local Rules and any Orders of the Court, and on the grounds that it is vague, ambiguous, and inconsistent with common usage. Irico further objects to this Instruction to the extent it seeks information that would disclose personal confidential information and/or violate any and all rights of privacy under the United States Constitution or Article I of the Constitution of the State of California, or any other applicable law or state constitution, or that is otherwise prohibited from disclosure because to do so would cause Irico to violate legal and/or contractual obligations to any other persons or entities.

1        <u>**SPECIFIC RESPONSES TO INTERROGATORIES**</u>

2        <u>**INTERROGATORY NO. 1**</u>

3              Identify all individuals or Departments within Irico that used or maintained each of

4        the following email addresses during the Relevant Period:

5         A.   jingyuan@irico.com.cn

6         B.   Jill-yy@163.com

7         C.   yliang6699@163.com

8         D.   yliang@hotmail.com

9         E.   yliang@irico.com.cn

10        F.   pqwang@irico.com.cn

11       G.  xsgsyxb@ch.com.cn

12       H.  yht@ch.com.cn

13       I.   yj-xs@ch.com.cn

14       J.   ryz@ch.com.cn

15       K.  zhangjing@ch.com.cn

16       L.  fanxj@ch.com.cn

17       M.  rggao@irico.com.cn

18       N.  xjhao@irico.com.cn

19       O.  ly-xs@ch.com.cn

20       P.  lg@chyg.com

21       Q.  shatao@irico.com.cn

22       R.  lumimate@public.xa.sn.cn

23       S.  sxl-xs@ch.com.cn

24       T.  shs-xs@ch.com.cn

25       U.  Is7071@sina.com

26       V.  hywen@irico.com.cn

27       W.  dqxing@ch.com.cn

28       X.  hdyang@irico.com.cn

1    Y.  wjp7858@sina.com

2    Z.  zhsw@ch.com.cn

3    AA.        ZLM-XS@ch.com.cn

4    BB.        chks@chinairico.com

5    CC.        zcf@ch.com.cn

6    **RESPONSE TO INTERROGATORY NO. 1**

7            In addition to Irico's General Objections, which Irico incorporates by reference, Irico

8    specifically objects to this Interrogatory on the grounds that it is overbroad, unduly burdensome,

9    not proportional to the needs of the case, and seeks information that is maintained by and equally

10   available to Plaintiffs or stated in publicly available documents. Irico objects to this Interrogatory

11   on the grounds that it calls for a legal conclusion. Irico objects that the terms "used" or

12   "maintained" is vague and ambiguous, rendering this Interrogatory overbroad, unduly

13   burdensome, and not proportionate to the needs of the case.

14           Subject to and without waiving the foregoing objections, Irico responds as follows:

15           INTERROGATORY NO. 1A

16           This email address was not used by an Irico employee during the course of their

17   employment with Irico, nor was the email domain "@irico.com.cn" maintained by Irico during

18   the Relevant Period. Irico understands that this email domain (@irico.com.cn) was used by

19   another company, China National Electronics Import & Export Caihong Co. ("CNEIECC").

20           INTERROGATORY NO. 1B

21           This email address, which was not issued or managed by Irico, appears to have been used

22   by Liang Yuan.

23           INTERROGATORY NO. 1C

24           This email address, which was not issued or managed by Irico, appears to have been used

25   by Liang Yuan.

26           INTERROGATORY NO. 1D

27           This email address, which was not issued or managed by Irico, appears to have been used

28   by Liang Yuan.

1    INTERROGATORY NO. 1E

2    This email address was not used by an Irico employee during the course of their

3    employment with Irico, nor was the email domain "@irico.com.cn" maintained by Irico during

4    the Relevant Period. Irico understands that this email domain (@irico.com.cn) was used by

5    another company, China National Electronics Import & Export Caihong Co. ("CNEIECC").

6    INTERROGATORY NO. 1F

7    This email address was not used by an Irico employee during the course of their

8    employment with Irico, nor was the email domain "@irico.com.cn" maintained by Irico during

9    the Relevant Period. Irico understands that this email domain (@irico.com.cn) was used by

10   another company, China National Electronics Import & Export Caihong Co. ("CNEIECC").

11   INTERROGATORY NO. 1G

12   After conducting a reasonable search, Irico acknowledges that it issued and maintained

13   email addresses with the "@ch.com.cn" domain, however Irico cannot identify a specific Irico

14   employee who used this email address during the Relevant Period.

15   INTERROGATORY NO. 1H

16   After conducting a reasonable search, Irico acknowledges that it issued and maintained

17   email addresses with the "@ch.com.cn" domain, however Irico cannot identify a specific Irico

18   employee who used this email address during the Relevant Period.

19   INTERROGATORY NO. 1I

20   This email address was used by Yao Jun.

21   INTERROGATORY NO. 1J

22   After conducting a reasonable search, Irico acknowledges that it issued and maintained

23   email addresses with the "@ch.com.cn" domain, however Irico cannot identify a specific Irico

24   employee who used this email address during the Relevant Period.

25   INTERROGATORY NO. 1K

26   After conducting a reasonable search, Irico acknowledges that it issued and maintained

27   email addresses with the "@ch.com.cn" domain, however Irico cannot identify a specific Irico

28   employee who used this email address during the Relevant Period.

1    INTERROGATORY NO. 1L

2        After conducting a reasonable search, Irico acknowledges that it issued and maintained

3    email addresses with the "@ch.com.cn" domain, however Irico cannot identify a specific Irico

4    employee who used this email address during the Relevant Period.

5    INTERROGATORY NO. 1M

6        This email address was not used by an Irico employee during the course of their

7    employment with Irico, nor was the email domain "@irico.com.cn" maintained by Irico during

8    the Relevant Period. Irico understands that this email domain (@irico.com.cn) was used by

9    another company, China National Electronics Import & Export Caihong Co. ("CNEIECC").

10    INTERROGATORY NO. 1N

11        This email address was not used by an Irico employee during the course of their

12    employment with Irico, nor was the email domain "@irico.com.cn" maintained by Irico during

13    the Relevant Period. Irico understands that this email domain (@irico.com.cn) was used by

14    another company, China National Electronics Import & Export Caihong Co. ("CNEIECC").

15    INTERROGATORY NO. 1O

16        This email address was used by Liang Yuan.

17    INTERROGATORY NO. 1P

18        This email address, which was not issued or managed by Irico, appears to be associated

19    Kunshan Caihong Yingguang Electronics Co., Ltd. Irico does not have additional detail regarding

20    that company's use of this email address or who within the company used the email address.

21    INTERROGATORY NO. 1Q

22        This email address was not used by an Irico employee during the course of their

23    employment with Irico, nor was the email domain "@irico.com.cn" maintained by Irico during

24    the Relevant Period. Irico understands that this email domain (@irico.com.cn) was used by

25    another company, China National Electronics Import & Export Caihong Co. ("CNEIECC").

26    INTERROGATORY NO. 1R

27        This email address, which was not issued or managed by Irico, appears to be associated

28    with Shaanxi IRICO Phosphor Material Co. Ltd. Irico does not have additional detail regarding

that company's use of this email address or who within the company used the email address.

INTERROGATORY NO. 1S

This email address was used by Shen Xiaolin.

INTERROGATORY NO. 1T

After conducting a reasonable search, Irico acknowledges that it issued and maintained email addresses with the "@ch.com.cn" domain, however Irico cannot identify a specific Irico employee who used this email address during the Relevant Period.

INTERROGATORY NO. 1U

After conducting a reasonable search, Irico cannot determine whether this address was used by an Irico employee during the Relevant Period. This email domain was not maintained by Irico, who issued and maintained email addresses with the "@ch.com.cn" domain.

INTERROGATORY NO. 1V

This email address was not used by an Irico employee during the course of their employment with Irico, nor was the email domain "@irico.com.cn" maintained by Irico during the Relevant Period. Irico understands that this email domain (@irico.com.cn) was used by another company, China National Electronics Import & Export Caihong Co. ("CNEIECC").

INTERROGATORY NO. 1W

This email address was used by Xing Daoqin.

INTERROGATORY NO. 1X

This email address was not used by an Irico employee during the course of their employment with Irico, nor was the email domain "@irico.com.cn" maintained by Irico during the Relevant Period. Irico understands that this email domain (@irico.com.cn) was used by another company, China National Electronics Import & Export Caihong Co. ("CNEIECC").

INTERROGATORY NO. 1Y

After conducting a reasonable search, Irico cannot determine whether this address was used by an Irico employee during the Relevant Period. This email domain was not maintained by Irico, who issued and maintained email addresses with the "@ch.com.cn" domain.

INTERROGATORY NO. 1Z

1    This email address was used by Zhang Shaowen.

2    INTERROGATORY NO. 1AA

3    After conducting a reasonable search, Irico acknowledges that it issued and maintained

4    email addresses with the "@ch.com.cn" domain, however Irico cannot identify a specific Irico

5    employee who used this email address during the Relevant Period.

6    INTERROGATORY NO. 1BB

7    After conducting a reasonable search, Irico cannot determine whether this address was

8    used by an Irico employee during the Relevant Period. This email domain was not maintained by

9    Irico, who issued and maintained email addresses with the "@ch.com.cn" domain.

10    INTERROGATORY NO. 1CC

11    This email address was used by Zou Changfu.

12    **INTERROGATORY NO. 2**

13    Identify all email addresses used or maintained by Irico employees during the Relevant

14    Period that are not set forth in Interrogatory No. 1 above.

15    **RESPONSE TO INTERROGATORY NO. 2**

16    In addition to Irico's General Objections, which Irico incorporates by reference, Irico

17    specifically objects to this Interrogatory on the grounds that it is overbroad, unduly burdensome,

18    not proportional to the needs of the case, and seeks information that is maintained by and equally

19    available to Plaintiffs or stated in publicly available documents. Irico objects to this Interrogatory

20    on the grounds that it calls for a legal conclusion. Irico objects that the terms "used" and

21    "maintained" are vague and ambiguous, rendering this Interrogatory overbroad, unduly

22    burdensome, and not proportionate to the needs of the case.

23    Subject to and without waiving the foregoing objections, Irico responds that it does not

24    maintain a comprehensive list of email addresses used or maintained by Irico employees during

25    the Relevant Period in the normal course of its business. Irico further responds that its

26    departments or employees used email addresses with the domain @ch.com.cn during the Relevant

27    Period. For addresses assigned to individual employees, the email address typically consisted of

28    parts of the first and last name of the employee.

---

1   Irico has been able to identify the following email addresses that were used or maintained

2   by Irico employees during the Relevant Period that are not set forth in Interrogatory No. 1 above:

3   antx@ch.com.cn; bjjtbgs@ch.com.cn; blbgs@ch.com.cn; chlj@ch.com.cn; chltb@ch.com.cn;

4   chrdbgs@ch.com.cn; chtw@ch.com.cn; chuntao@ch.com.cn; chuxh@ch.com.cn;

5   chxning@ch.com.cn; chyy@ch.com.cn; cq-bgs@ch.com.cn; crgs@ch.com.cn; cwc@ch.com.cn;

6   cwccpl@ch.com.cn; cwcyh@ch.com.cn; dlcbgs@ch.com.cn; dongj@ch.com.cn;

7   dongzf@ch.com.cn; dwxcb@ch.com.cn; dwzzb@ch.com.cn; Dzqbgs@ch.com.cn;

8   fdcsyb@ch.com.cn; fmq@ch.com.cn; fzghb@ch.com.cn; gcgs@ch.com.cn; gechao@ch.com.cn;

9   gfbgs@ch.com.cn; gfoffice@ch.com.cn; gfzjb@ch.com.cn; ghswb@ch.com.cn; gmq@ch.com.cn;

10  hansheng@ch.com.cn; hrj@ch.com.cn; jcma@ch.com.cn; jtbgs@ch.com.cn; jtfls@ch.com.cn;

11  jtgzb@ch.com.cn; jtjszx@ch.com.cn; ksbgs@ch.com.cn; lgm@ch.com.cn; limiao@ch.com.cn;

12  liuxi@ch.com.cn; liuyw@ch.com.cn; lsbgs@ch.com.cn; lsk@ch.com.cn; luhb@ch.com.cn;

13  lwd@ch.com.cn; nanying@ch.com.cn; office@ch.com.cn; pjc@ch.com.cn; psg@ch.com.cn;

14  pxzx@ch.com.cn; qdf@ch.com.cn; rggao@ch.com.cn; rjc@ch.com.cn; rsnn@ch.com.cn;

15  scbgs@ch.com.cn; sjb@ch.com.cn; stock@ch.com.cn; sungzh@ch.com.cn; sxh@ch.com.cn; sxl-

16  xs@ch.com.cn; szhybgs@ch.com.cn; taokui@ch.com.cn; tlj@ch.com.cn; tohaobo@ch.com.cn;

17  txh@ch.com.cn; wanglm@ch.com.cn; wangxf@ch.com.cn; wbcbgs@ch.com.cn;

18  weixj@ch.com.cn; wjp@ch.com.cn; wxm@ch.com.cn; wyq@ch.com.cn; wzbgs@ch.com.cn;

19  wzj-xs@ch.com.cn; yanyunlong@ch.com.cn; yczgw@ch.com.cn; Ygf_bgs@ch.com.cn;

20  yws@ch.com.cn; yzl@ch.com.cn; zccwc@ch.com.cn; zcgac@ch.com.cn; zcgh@ch.com.cn;

21  zcjcc@ch.com.cn; zcn@ch.com.cn; zhangw@ch.com.cn; zhc@ch.com.cn; zhczbgs@ch.com.cn;

22  zlbbgs@ch.com.cn; and Zx.office@ch.com.cn.

23  **INTERROGATORY NO. 3**

24  State the date that You retained Pillsbury Withrop Shaw & Pittman, LLP ("Pillsbury") to

25  represent You in this case.

26  **RESPONSE TO INTERROGATORY NO. 3**

27  Irico incorporates its General Objections as set forth above. Irico further objects to the

28  Interrogatory to the extent that it purports to seek information protected under the attorney-client

---

IRICO'S OBJECTIONS AND RESPONSES TO        13        Master File No. 07-cv-05944-JST
IPP'S FOURTH SET INTERROGATORIES                                 MDL No. 1917

1    privilege or the attorney work product doctrine.

2          Subject to and without waiving the foregoing objections, Irico responds that it retained

3    Pillsbury to represent Irico in this case on or about January 24, 2008.

4    **INTERROGATORY NO. 4**

5          Identify all Persons who communicated with Pillsbury attorneys on Your behalf regarding

6    this case after You were served with the IPPs' complaint on December 25, 2007.

7    **RESPONSE TO INTERROGATORY NO. 4**

8          Irico incorporates its General Objections as set forth above. Irico further objects to the

9    Interrogatory to the extent that it purports to seek information protected under the attorney-client

10   privilege or the attorney work product doctrine.

11         Subject to and without waiving the foregoing objections, Irico identifies the following

12   individuals who communicated with Pillsbury attorneys on Irico's behalf regarding this case after

13   Irico was served with the IPPs' complaint on December 25, 2007: Yan Yunlong.

14   **INTERROGATORY NO. 5**

15         State whether any of Your communications with Pillsbury attorneys regarding this case

16   were in writing, and if so, whether those Documents have been preserved. If any such

17   communications have not been preserved:

18         a.     Identify each Person or document custodian whose communications with Pillsbury

19                were destroyed, discarded, erased, deleted, purged or lost;

20         b.     State the date on which each responsive document was destroyed, discarded,

21                erased, deleted, purged or lost;

22         c.     Identify each person or document custodian who had any role or responsibility in

23                destroying, discarding, erasing, purging, deleting, or losing of each such document

24                or information; and

25         d.     Describe in detail the circumstances under which each such document was

26                destroyed, discarded, erased, deleted, purged, or lost.

27   **RESPONSE TO INTERROGATORY NO. 5**

28         Irico incorporates its General Objections as set forth above. Irico further objects to the

---

IRICO'S OBJECTIONS AND RESPONSES TO          14          Master File No. 07-cv-05944-JST
IPP'S FOURTH SET INTERROGATORIES                                MDL No. 1917

1  Interrogatory to the extent that it purports to seek information protected under the attorney-client
2  privilege or the attorney work product doctrine.

3      Subject to and without waiving the foregoing objections, Irico responds that it did
4  occasionally communicate with Pillsbury Winthrop Shaw & Pittman, LLP in writing and that, to
5  the best of its knowledge, those documents have been preserved either in Irico's files or in the
6  files of counsel.

7  **INTERROGATORY NO. 6**

8      State whether You consulted with Your former counsel, Pillsbury Withrop Shaw &
9  Pittman, LLP ("Pillsbury"), in determining to preserve only "documents related to sales of CRTs
10 to the United States" in mid-2008?

11 **RESPONSE TO INTERROGATORY NO. 6**

12     Irico incorporates its General Objections as set forth above. Irico further objects to the
13 Interrogatory to the extent that it purports to seek information protected under the attorney-client
14 privilege or the attorney work product doctrine.

15     Subject to and without waiving the foregoing objections, Irico responds that it consulted
16 with its former counsel, Pillsbury Winthrop Shaw & Pittman, LLP, regarding document
17 preservation, but not on the specific decision in determining to preserve only documents related to
18 sales of CRTs to the United States in mid-2008.

19 **INTERROGATORY NO. 7**

20     As to each of the Defenses set forth in Your Answers to IPPs' Fifth Consolidated
21 Complaint (ECF Nos. 5873, 5875):

22     a.      State all facts that You rely on to support Your contention;
23     b.      Identify each Person You contend has knowledge of facts that support Your
24             contention; and
25     c.      Identify each Document You contend supports Your contention

26 **RESPONSE TO INTERROGATORY NO. 7**

27     In addition to Irico's General Objections, which Irico incorporates by reference, Irico
28 specifically objects to this Interrogatory on the grounds that it is overbroad, unduly burdensome,

1  not proportional to the needs of the case, and seeks information that is maintained by and equally

2  available to Plaintiffs or stated in publicly available documents. Irico objects to this Interrogatory

3  on the grounds that it calls for a legal conclusion. Irico objects that the term "support" is vague

4  and ambiguous, rendering this Interrogatory overbroad, unduly burdensome, and not

5  proportionate to the needs of the case. Irico also objects to this Interrogatory on the grounds that it

6  contains impermissible subparts as Irico has identified forty-one defenses in its Answer to the

7  Plaintiffs' Complaint. Irico also objects to this Interrogatory to the extent it improperly tries to

8  shift the evidentiary burden that Plaintiffs alone carry to Irico. Irico further objects to Plaintiffs'

9  Interrogatories to the extent that they request duplicative discovery in violation of the Order Re

10  Discovery And Case Management Protocol, ECF No. 1128. *See* Order Re Plaintiffs' Motions To

11  Compel Supplemental Discovery From Toshiba And Panasonic, ECF No. 4128, at 4 ("The

12  Discovery Protocol (ECF No 1128), requires parties to coordinate discovery and not file

13  duplicative discovery. . . . The benefit redounds to all parties on both sides of the litigation, by

14  conserving the efforts required by Plaintiffs and protecting defendants against unnecessary

15  duplication of effort.") (Report and Recommendation adopted in full at ECF No. 4256). Plaintiffs'

16  request is duplicative, in part or in whole, of the following discovery requests: Interrogatory No. 7

17  of Indirect Purchaser Plaintiffs' First Set of Interrogatories; Interrogatory Nos. 17-20 of Direct

18  Purchaser Plaintiffs' First Set of Interrogatories; and, Interrogatory Nos. 16-23 of Direct

19  Purchaser Plaintiffs Arch Electronics, Inc.'s First Set of Interrogatories to Irico Group

20  Corporation and Irico Display Devices Co., Ltd.

21      Subject to and without waiving the foregoing objections, Irico responds as follows:

22  **INTERROGATORY RESPONSE AS TO IRICO'S FIRST DEFENSE**

23      The Complaint fails to state a claim upon which relief can be granted.

24  **RESPONSE**

25      Subject to and without waiving the objections stated above, and based on its present

26  knowledge, Irico responds by stating that Irico withdraws its First Defense.

27

28

1

**INTERROGATORY RESPONSE AS TO IRICO'S SECOND DEFENSE**

2       Plaintiffs' claims for any foreign purchases, if any, should be dismissed to the extent that

3   they are barred, in whole or in part, because Plaintiffs have failed to allege facts sufficient to

4   support a claim under the Foreign Trade Antitrust Improvements Act, 15 U.S.C. § 6a.

5       **RESPONSE**

6       Irico further objects that this Interrogatory is premature given that no Irico witnesses have

7   been deposed relating to merits issues and expert analysis and disclosures have not yet begun. *See*

8   *Young v. Regis Corp.*, No. C 10-02634 SI, 2011 WL 9558055 (N.D. Cal. May 19, 2011). Irico

9   also objects to this interrogatory on the ground that it calls for a legal argument or legal

10  conclusion. Irico further objects to this interrogatory to the extent that it improperly tries to shift

11  the pleading and evidentiary burden that Plaintiffs alone carry to Irico.

12      Subject to and without waiving the objections stated above, Irico contends that Plaintiffs

13  have failed to allege facts sufficient to support a claim under the Foreign Trade Antitrust

14  Improvements Act ("FTAIA"), 15 U.S.C. § 6a. At all relevant times, the North American CRT

15  market was unique and separate from other foreign markets, including China. In supporting its

16  claims, Plaintiffs rely on alleged meetings and communications that occurred outside the United

17  States that discuss and relate to CRTs sold outside the United States. Plaintiffs have not

18  established how it is entitled to any relief under FTAIA based on their purchases of either CRT

19  products outside of the United States or their purchase of CRT products containing CRTs

20  manufactured and/or purchased outside the United States. Irico also identifies the following

21  evidence under FRCP 33(d): Irico Group Corporation's Amended Motion to Dismiss Claims of

22  Indirect Purchaser Plaintiffs for Lack of Subject Matter Jurisdiction (Fed. R. Civ. P. 12(b)(1)),

23  March 19, 2019; Irico Display Devices Co., Ltd.'s Amended Motion to Dismiss Claims of

24  Indirect Purchaser Plaintiffs for Lack of Subject Matter Jurisdiction (Fed. R. Civ. P. 12(b)(1)),

25  March 19, 2019; Irico Defendants' Reply in Support of Amended Motions to Dismiss Claims of

26  Indirect Purchaser Plaintiffs for Lack of Subject Matter Jurisdiction (Fed. R. Civ. P. 12(b)(1)),

27  May 13, 2019.

28

1     **INTERROGATORY RESPONSE AS TO IRICO'S THIRD DEFENSE**

2         Plaintiffs' claims and the claims of any putative class members are barred, in whole or in

3 part, because the alleged conduct of [Group or Display] that is the subject of the Complaint either

4 occurred outside the jurisdiction of the Court or was neither directed to nor affected persons,

5 entities, trade or commerce in the United States, or both.

6     **RESPONSE**

7         Irico further objects that this Interrogatory is premature given that no Irico witnesses have

8 been deposed relating to merits issues and expert analysis and disclosures have not yet begun.

9 *See Young v. Regis Corp.*, No. C 10-02634 SI, 2011 WL 9558055 (N.D. Cal. May 19, 2011).

10 Irico also objects to this interrogatory on the ground that it calls for a legal argument or legal

11 conclusion. Irico further objects to this interrogatory to the extent that it improperly tries to shift

12 the pleading and evidentiary burden that Plaintiffs alone carry to Irico.

13         Subject to and without waiving the objections stated above, and despite the Interrogatory's

14 demand for proof of facts and evidence of events that did not take place, Irico asserts no evidence

15 has been brought in the above captioned matter that indicates that Irico manufactured, sold, or

16 distributed CRTs in the United States during the class period. In particular, Irico will be

17 producing compilations of its sales records that demonstrate that Irico did not sell CRTs to the

18 United States. Irico also identifies the following evidence under FRCP 33(d): Direct Purchaser

19 Plaintiffs' Supplemental Objections and Responses to Defendants Irico Group Corp. and Irico

20 Display Devices Co., Ltd.'s First Set of Interrogatories to Direct Purchaser Plaintiffs, July 14,

21 2021; Irico Defendants' Sixth Supplemental Objections and Responses to Direct Purchaser

22 Plaintiffs' First Set of Interrogatories, January 7, 2022; Irico Defendants' Third Supplemental

23 Objections and Responses to Indirect Purchaser Plaintiffs' First Set of Interrogatories, January 7,

24 2022; Irico Defendants' Supplemental Objections and Responses to Indirect Purchaser Plaintiffs'

25 Third Set of Interrogatories to Irico Group Corporation and Irico Display Devices Co., Ltd.,

26 January 21, 2022; Rule 30(b)(6) Deposition of Irico Group Corp. and Irico Display Devices Co.,

27 Ltd., March 6-8, 2019.

28         Irico identifies the following persons with knowledge regarding this Interrogatory: Wang

1  Zhaojie and Su Xiaohua.

2  **INTERROGATORY RESPONSE AS TO IRICO'S FOURTH DEFENSE**

3        Plaintiffs' claims should be dismissed for uncertainty and vagueness and because their

4  claims are ambiguous, and/or unintelligible. [Group or Display] avers that Plaintiffs' claims do

5  not describe the events or legal theories with sufficient particularity to permit [Group or Display]

6  to ascertain what other defenses may exist. [Group or Display] therefore reserves the right to

7  amend its Answer to assert additional defenses and/or supplement, alter, or change its Answer

8  and/or defenses upon the discovery of more definitive facts upon the completion of its

9  investigation and discovery.

10       **RESPONSE**

11        Irico further objects to this interrogatory on the ground that it calls for a legal argument or

12  legal conclusion.

13        Subject to and without waiving the objections stated above, Irico contends that Plaintiffs'

14  Complaint names the following entities under the title "Irico:" Irico Group Corporation, Irico

15  Display Devices Co., Ltd., and Irico Group Electronics Co., Ltd. Despite naming these three

16  corporate entities, Plaintiffs throughout their complaint make allegations against "Irico" that

17  purportedly refer to all three corporate entities collectively. For example, Plaintiffs make

18  allegations in its Complaint that use the term "Irico" in the following paragraphs: 2, 150, and 185.

19  Plaintiffs attempt to use a single term to refer to one, several, or all of the "Irico Entities" makes

20  every such instance ambiguous and unintelligible regarding any specific allegation for Irico

21  Group's or Irico Display's conduct.

22  **INTERROGATORY RESPONSE AS TO IRICO'S FIFTH DEFENSE**

23        Plaintiffs' claims should be dismissed to the extent that they are barred, in whole or in

24  part, because Plaintiffs have failed to allege fraud or fraudulent concealment with sufficient

25  particularity.

26       **RESPONSE**

27        Irico further objects to this interrogatory on the ground that it calls for a legal argument or

28  legal conclusion. Irico also objects to this interrogatory to the extent that it improperly tries to

1    shift the pleading and evidentiary burden that Plaintiffs alone carry to Irico.

2            Subject to and without waiving the objections stated above, and based on its present

3    knowledge, Irico responds by stating that Irico withdraws its Fifth Defense.

4                **INTERROGATORY RESPONSE AS TO IRICO'S SIXTH DEFENSE**

5            Plaintiffs' claims should be dismissed to the extent that they are barred, in whole or in

6    part, because Plaintiffs have failed to allege conspiracy with sufficient particularity.

7            **RESPONSE**

8            Irico further objects to this interrogatory on the ground that it calls for a legal argument or

9    legal conclusion. Irico also objects to this interrogatory to the extent that it improperly tries to

10   shift the pleading and evidentiary burden that Plaintiffs alone carry to Irico.

11           Subject to and without waiving the objections stated above, and based on its present

12   knowledge, Irico responds by stating that Irico withdraws its Sixth Defense.

13              **INTERROGATORY RESPONSE AS TO IRICO'S SEVENTH DEFENSE**

14           Plaintiffs' claims should be dismissed to the extent that they are barred, in whole or in part,

15   by the applicable statute(s) of limitations.

16           **RESPONSE**

17           Subject to and without waiving the objections stated above, and based on its present

18   knowledge, Irico responds by stating that it affirms its prior response. *See* Irico Defendants'

19   Second Supplemental Objections and Responses to Indirect Purchaser Plaintiffs' First Set of

20   Interrogatories, June 25, 2021.

21              **INTERROGATORY RESPONSE AS TO IRICO'S EIGHTH DEFENSE**

22           Plaintiffs' claims and the claims of any putative class members are barred, in whole or in

23   part, because the actions or practices of [Group or Display] that are the subject of the Complaint

24   were undertaken unilaterally for legitimate business reasons and in pursuit of [Group or

25   Display]'s independent interests and those of its customers, and were not the product of any

26   contract, combination or conspiracy between Group and any other person or entity.

27           **RESPONSE**

28

1  Irico further objects that this Interrogatory is premature given that no Irico witnesses have

2  been deposed relating to merits issues and expert analysis and disclosures have not yet begun. *See*

3  *Young v. Regis Corp.*, No. C 10-02634 SI, 2011 WL 9558055 (N.D. Cal. May 19, 2011). Irico

4  also objects to this interrogatory on the ground that it calls for a legal argument or legal

5  conclusion.

6  Subject to and without waiving the objections stated above, Irico contends that its acts or

7  practices were undertaken unilaterally for legitimate business reasons and in pursuit of Irico's

8  independent interests. In addition, Irico asserts no evidence has been brought in the above

9  captioned matter that indicates that its actions were not undertaken unilaterally for legitimate

10  business reasons and in pursuit of Irico's independent interests. Pursuant to Rule 33(d) of the

11  Federal Rules of Civil Procedure, Irico relies on the following evidence to support its contention

12  that at all times its acts or practices were undertaken unilaterally for legitimate business reasons

13  and in pursuit of Irico's independent interests: Reply Brief of Irico In Support of Motion to Set

14  Aside Default at 10-11, ECF No. 5229; Exs. A – F to the Declaration of Stuart C. Plunkett in

15  Support of Motion to Set Aside Default, ECF Nos. 5229-02 through -07; IRI-CRT-00010133;

16  IRI-CRT-00010449; IRI-CRT-00010468; IRI-CRT-00026812; IRI-CRT-00030226; IRI-CRT-

17  00030865; IRI-CRT-00031457; BMCC-CRT000002761; BMCC-CRT000002762;

18  CHU00029175E; CHU00029179E; CHU00029259E; CHU00030067E; CHU00030777E;

19  CHU00030941E; CHU00030973E; CHU00031018E; CHU00031032; CHU00031044E; and,

20  CHU00031070E.

21  Irico further contends that Irico's pricing-related conduct was compelled by the Chinese

22  government and based on duly enacted laws and/or regulations of the People's Republic of China.

23  Irico relies on the following evidence to support this contention:

24  • The State Planning Commission and the State Economic and Trade Commission

25  issued the "Regulations on Preventing Unfair Price Behavior of Low-Priced

26  Dumping of Industrial Products" – effective as of Nov. 25, 1998. *See* Ex. A to the

27  Declaration of Stuart C. Plunkett in Support of Motion to Set Aside Default, ECF

28  No. 5229-02.

1

- Notice of the State Planning Commission on Issuing the "Measures for the

2

Determination of the Cost of Dumping Industrial Products at Low Prices (for Trial

3

Implementation)" – effective as of March 1, 1999. *See*

4

https://law.lawtime.cn/d448076453170.html.

5

- Notice of the State Planning Commission and the Ministry of Information Industry

6

on the Trial Measures to Stop Unfair Price Competition of Color Picture Tubes and

7

Color TVs – effective as of April 1, 1999. *See* IRI-CRT-00031457 at 1460-64; Ex.

8

B to the Declaration of Stuart C. Plunkett in Support of Motion to Set Aside

9

Default, ECF No. 5229-03.

10

- Notice on submitting cost information of color TV and color tube industry issued

11

by the Ministry of Information Industry in 1999. *See* Ex. D to the Declaration of

12

Stuart C. Plunkett in Support of Motion to Set Aside Default, ECF No. 5229-05.

13

- Notice on the issuance of the average production cost of some types of color

14

picture tubes and color TV industries issued by the Ministry of Information

15

Industry on April 2, 1999. *See* IRI-CRT-00031457 at 1459-60, 1466-67; Ex. C to

16

the Declaration of Stuart C. Plunkett in Support of Motion to Set Aside Default,

17

ECF No. 5229-04.

18

- Notice on the issuance of the average production cost of certain types of color TV

19

industries issued by the Ministry of Information Industry on August 25, 2000. *See*

20

Ex. E to the Declaration of Stuart C. Plunkett in Support of Motion to Set Aside

21

Default, ECF No. 5229-06.

22

- Notice on the issuance of the average production cost of some industries of color

23

picture tubes issued by the Ministry of Information Industry on September 14,

24

2000. *See* Ex. F to the Declaration of Stuart C. Plunkett in Support of Motion to

25

Set Aside Default, ECF No. 5229-07.

26

Irico identifies the following employees as having knowledge regarding this Interrogatory:

27

Wang Zhaojie and Su Xiaohua.

28

---

IRICO'S OBJECTIONS AND RESPONSES TO        22        Master File No. 07-cv-05944-JST
IPP'S FOURTH SET INTERROGATORIES                              MDL No. 1917

1    **INTERROGATORY RESPONSE AS TO IRICO'S NINTH DEFENSE**

2        Plaintiffs' claims and claims of any putative class members are barred, in whole or in part,

3    because Plaintiffs and/or certain members of the putative classes have failed to allege "antitrust

4    injury" – i.e., injury that is of the type the antitrust laws were intended to remedy.

5        **RESPONSE**

6        Irico further objects that this Interrogatory is premature given that no Irico witnesses have

7    been deposed relating to merits issues and expert analysis and disclosures have not yet begun. *See*

8    *Young v. Regis Corp.*, No. C 10-02634 SI, 2011 WL 9558055 (N.D. Cal. May 19, 2011). Irico

9    also objects to this interrogatory on the ground that it calls for a legal argument or legal

10   conclusion. Irico further objects to this interrogatory to the extent that it improperly tries to shift

11   the pleading and evidentiary burden that Plaintiffs alone carry to Irico.

12       Subject to and without waiving the objections stated above, Irico asserts that Plaintiffs

13   have not established facts that demonstrate that they were actually or proximately injured by

14   reason of any act or omission by Irico. Irico further states that Plaintiffs were not actually or

15   proximately injured by reason of any act or omission by Irico because Irico did not conspire or

16   enter into any agreements regarding the price of CRTs in the United States market, and did not

17   violate any of the laws set forth in the Plaintiffs' Amended Complaint.

18       Irico states that because Plaintiffs seek to recover for purchases of CRT products as

19   indirect purchasers, Plaintiffs have failed to meet their burden of demonstrating they were injured

20   in a way that the antitrust laws were enacted to prevent. The Ninth Circuit has established that in

21   the absence of a direct relationship with the defendants, a Plaintiffs must be a participant in the

22   allegedly restrained market in order to have suffered "antitrust injury." *See Am. Ad. Mgmt., Inc. v.*

23   *General Tel. Co.*, 190 F.3d 1051, 1057 (9th Cir. 1999) ("Antitrust injury requires the Plaintiffs to

24   have suffered its injury in the market where competition is being restrained. Parties whose

25   injuries, though flowing from that which makes the defendant's conduct unlawful, are

26   experienced in another market do not suffer antitrust injury"); see also *Assoc. Gen. Contractors of*

27   *Cal. v. Cal. State Council of Carpenters* ("*AGC*"), 549 U.S. 519, 538 (1983) (antitrust laws are

28   designed to "protect[] the economic freedom of participants in the relevant market").

1    Additionally, Irico states that Plaintiffs have not come forward with a reliable

2    methodology to prove the existence of the amount, if any, of pass-through injury to all members

3    of the class. Although not limited to the following, Irico relies on the information contained in the

4    Expert Report of Janusz A. Ordover, Ph.D., August 5, 2014 (IPP Action) at 14-36, and the Expert

5    Report of Janusz A. Ordover, Ph.D., August 5, 2014 (Various DAP Actions) at 14-30.

6    Irico further states that various retailers have testified that they did not uniformly pass

7    through any price increases in CRT Products to consumers. This evidence further establishes that

8    Plaintiffs have not and cannot show which members, if any, of the indirect purchaser class have

9    suffered any alleged injury. Although not limited to the following, Irico relies on the following

10   information: Deposition Tr. of Brian Stone, Dec. 3, 2012 ("Stone Dep. Tr."), at 117:4-22 ("Cost

11   increases that a manufacturer is intending to push across may not be reflected in the overall

12   pricing for the end consumer based upon Best Buy's company's strategy, intent of that product

13   category, the product availability, and the overall competitive nature of the . . . space."); id. at

14   167:21-169:1 ("There could be instances where due to competitive pricing forces costs could go

15   up, but retail pricing may not be able to go up based upon in-country availability of products,

16   competitive forces, seasonality."); Rule 30(b)(6) Deposition of Office Depot July 24, 2014

17   ("Office Depot 30(b)(6) Dep. Tr."), at 147:16-148:7 ("[W]e will look at the market, we will look

18   at what's in the market, look at the competitive intelligence of what people are carrying, what

19   they are selling production for, what's in our current assortment, what we're charging for that, and

20   in most cases you cannot increase and pass, the customers just won't buy it because it will be

21   overpriced."); Rule 30(b)(6) Deposition Tr. of Interbond Corp. of America, d/b/a Brandsmart

22   USA (through witness Larry Sinewitz), Feb. 6, 2014 ("Interbond 30(b)(6) Dep. Tr."), at 287:13-

23   20; Deposition Tr. of Aimee Fields, June 4, 2014 ("Fields Dep. Tr."), at 125:12-126:3; Rule

24   30(b)(6) Deposition Tr. of Fry's Electronics (through witness Raj Seth) (rough transcript), Aug.

25   27, 2014 ("Fry's 30(b)(6) Dep. Tr."), at 182:6-184:10; Rule 30(b)(6) Deposition Tr. of

26   TigerDirect, Inc. (through witness George Ali) (rough transcript), Aug. 28, 2014 ("TigerDirect

27   30(b)(6) Dep. Tr.").

28

1   **INTERROGATORY RESPONSE AS TO IRICO'S TENTH DEFENSE**

2       Plaintiffs' claims and claims of any putative class members are barred, in whole or in part,

3   because any acts or practices of [Group or Display] that are the subject of the Complaint were

4   cost justified or otherwise economically justified and resulted from a good faith effort to meet

5   competition or market conditions.

6       **RESPONSE**

7       Irico further objects that this Interrogatory is premature given that no Irico witnesses have

8   been deposed relating to merits issues and expert analysis and disclosures have not yet begun. *See*

9   *Young v. Regis Corp.*, No. C 10-02634 SI, 2011 WL 9558055 (N.D. Cal. May 19, 2011). Irico

10  also objects to this interrogatory on the ground that it calls for a legal argument or legal

11  conclusion.

12      Subject to and without waiving the objections stated above, Irico contends that its acts or

13  practices were cost justified or otherwise economically justified, and resulted from a good faith

14  effort to meet competition or market conditions. In addition, Irico asserts no evidence has been

15  brought in the above captioned matter that indicates any action or practice of Irico was not cost

16  justified, otherwise economically justified, or did not result from a good faith effort to meet

17  competition or market conditions. Pursuant to Rule 33(d) of the Federal Rules of Civil Procedure,

18  Irico relies on the following evidence to support its contention that at all times its acts or practices

19  were cost justified or otherwise economically justified, and resulted from a good faith effort to

20  meet competition or market conditions: Reply Brief of Irico In Support of Motion to Set Aside

21  Default at 10-11, ECF No. 5229; Exs. A – F to the Declaration of Stuart C. Plunkett in Support of

22  Motion to Set Aside Default, ECF Nos. 5229-02 through -07; IRI-CRT-00010133; IRI-CRT-

23  00010449; IRI-CRT-00010468; IRI-CRT-00026812; IRI-CRT-00030226; IRI-CRT-00030865;

24  IRI-CRT-00031457; BMCC-CRT000002761; BMCC-CRT000002762; CHU00029175E;

25  CHU00029179E; CHU00029259E; CHU00030067E; CHU00030777E; CHU00030941E;

26  CHU00030973E; CHU00031018E; CHU00031032; CHU00031044E; and, CHU00031070E.

27      Irico identifies the following employees as having knowledge regarding this Interrogatory: Wang

28  Zhaojie and Su Xiaohua.

1      **INTERROGATORY RESPONSE AS TO IRICO'S ELEVENTH DEFENSE**

2           Plaintiffs' claims are barred, in whole or in part, because the alleged conduct of [Group or

3      Display] that is the subject of the Complaint was caused by, due to, based upon, or in response to

4      directives, laws, regulations, policies, and/or acts of governments, governmental agencies and

5      entities, and/or regulatory agencies, and such is non-actionable or privileged.

6      **RESPONSE**

7           Irico further objects that this Interrogatory is premature given that no Irico witnesses have

8      been deposed relating to merits issues and expert analysis and disclosures have not yet begun. *See*

9      *Young v. Regis Corp.*, No. C 10-02634 SI, 2011 WL 9558055 (N.D. Cal. May 19, 2011). Irico

10     also objects to this interrogatory on the ground that it calls for a legal argument or legal

11     conclusion.

12          Subject to and without waiving the objections stated above, Irico contends that Irico's

13     pricing-related conduct was compelled by the Chinese government and based on duly enacted

14     laws and/or regulations of the People's Republic of China. Irico relies on the following evidence

15     to support this contention:

16          • The State Planning Commission and the State Economic and Trade Commission

17            issued the "Regulations on Preventing Unfair Price Behavior of Low-Priced

18            Dumping of Industrial Products" – effective as of Nov. 25, 1998. *See* Ex. A to the

19            Declaration of Stuart C. Plunkett in Support of Motion to Set Aside Default, ECF

20            No. 5229-02.

21          • Notice of the State Planning Commission on Issuing the "Measures for the

22            Determination of the Cost of Dumping Industrial Products at Low Prices (for Trial

23            Implementation)" – effective as of March 1, 1999. *See*

24            https://law.lawtime.cn/d448076453170.html..

25          • Notice of the State Planning Commission and the Ministry of Information Industry

26            on the Trial Measures to Stop Unfair Price Competition of Color Picture Tubes and

27            Color TVs – effective as of April 1, 1999. *See* IRI-CRT-00031457 at 1460-64; Ex.

28

1          B to the Declaration of Stuart C. Plunkett in Support of Motion to Set Aside

2          Default, ECF No. 5229-03.

3        •   Notice on submitting cost information of color TV and color tube industry issued

4          by the Ministry of Information Industry in 1999. *See* Ex. D to the Declaration of

5          Stuart C. Plunkett in Support of Motion to Set Aside Default, ECF No. 5229-05.

6        •   Notice on the issuance of the average production cost of some types of color

7          picture tubes and color TV industries issued by the Ministry of Information

8          Industry on April 2, 1999. *See* IRI-CRT-00031457 at 1459-60, 1466-67; Ex. C to

9          the Declaration of Stuart C. Plunkett in Support of Motion to Set Aside Default,

10          ECF No. 5229-04.

11        •   Notice on the issuance of the average production cost of certain types of color TV

12          industries issued by the Ministry of Information Industry on August 25, 2000. *See*

13          Ex. E to the Declaration of Stuart C. Plunkett in Support of Motion to Set Aside

14          Default, ECF No. 5229-06.

15        •   Notice on the issuance of the average production cost of some industries of color

16          picture tubes issued by the Ministry of Information Industry on September 14,

17          2000. *See* Ex. F to the Declaration of Stuart C. Plunkett in Support of Motion to

18          Set Aside Default, ECF No. 5229-07.

19      Irico identifies the following employees as having knowledge regarding this Interrogatory: Wang

20 Zhaojie and Su Xiaohua.

21      **INTERROGATORY RESPONSE AS TO IRICO'S TWELFTH DEFENSE**

22      Plaintiffs' claims are barred, in whole or in part, because the alleged conduct of [Group or

23 Display] that is the subject of the Complaint was caused by or in response to duly enacted laws

24 and/or regulations of the People's Republic of China and is therefore protected under the foreign

25 sovereign compulsion doctrine, the act of state doctrine, and international comity.

26      **RESPONSE**

27      Irico further objects that this Interrogatory is premature given that no Irico witnesses have

28 been deposed relating to merits issues and expert analysis and disclosures have not yet begun. *See*

1  *Young v. Regis Corp.*, No. C 10-02634 SI, 2011 WL 9558055 (N.D. Cal. May 19, 2011). Irico

2  also objects to this interrogatory on the ground that it calls for a legal argument or legal

3  conclusion.

4        Subject to and without waiving the objections stated above, Irico contends that Irico's

5  pricing-related conduct was compelled by the Chinese government and based on duly enacted

6  laws and/or regulations of the People's Republic of China. Irico relies on the following evidence

7  to support this contention:

8        •  The State Planning Commission and the State Economic and Trade Commission

9          issued the "Regulations on Preventing Unfair Price Behavior of Low-Priced

10         Dumping of Industrial Products" – effective as of Nov. 25, 1998. *See* Ex. A to the

11         Declaration of Stuart C. Plunkett in Support of Motion to Set Aside Default, ECF

12         No. 5229-02.

13       •  Notice of the State Planning Commission on Issuing the "Measures for the

14         Determination of the Cost of Dumping Industrial Products at Low Prices (for Trial

15         Implementation)" – effective as of March 1, 1999. *See*

16         https://law.lawtime.cn/d448076453170.html.

17       •  Notice of the State Planning Commission and the Ministry of Information Industry

18         on the Trial Measures to Stop Unfair Price Competition of Color Picture Tubes and

19         Color TVs – effective as of April 1, 1999. *See* IRI-CRT-00031457 at 1460-64; Ex.

20         B to the Declaration of Stuart C. Plunkett in Support of Motion to Set Aside

21         Default, ECF No. 5229-03.

22       •  Notice on submitting cost information of color TV and color tube industry issued

23         by the Ministry of Information Industry in 1999. *See* Ex. D to the Declaration of

24         Stuart C. Plunkett in Support of Motion to Set Aside Default, ECF No. 5229-05.

25       •  Notice on the issuance of the average production cost of some types of color

26         picture tubes and color TV industries issued by the Ministry of Information

27         Industry on April 2, 1999. *See* IRI-CRT-00031457 at 1459-60, 1466-67; Ex. C to

28

1  the Declaration of Stuart C. Plunkett in Support of Motion to Set Aside Default,

2  ECF No. 5229-04.

3  • Notice on the issuance of the average production cost of certain types of color TV

4  industries issued by the Ministry of Information Industry on August 25, 2000. *See*

5  Ex. E to the Declaration of Stuart C. Plunkett in Support of Motion to Set Aside

6  Default, ECF No. 5229-06.

7  • Notice on the issuance of the average production cost of some industries of color

8  picture tubes issued by the Ministry of Information Industry on September 14,

9  2000. *See* Ex. F to the Declaration of Stuart C. Plunkett in Support of Motion to

10  Set Aside Default, ECF No. 5229-07.

11  Irico identifies the following employees as having knowledge regarding this Interrogatory: Wang

12  Zhaojie and Su Xiaohua.

13  **INTERROGATORY RESPONSE AS TO IRICO'S THIRTEENTH DEFENSE**

14  Plaintiffs' claims should be dismissed to the extent that they are barred, in whole or in

15  part, because no Plaintiffs has been injured in its business or property by reason of any action of

16  Group.

17  **RESPONSE**

18  Irico further objects that this Interrogatory is premature given that no Irico witnesses have

19  been deposed relating to merits issues and expert analysis and disclosures have not yet begun. *See*

20  *Young v. Regis Corp.*, No. C 10-02634 SI, 2011 WL 9558055 (N.D. Cal. May 19, 2011). Irico

21  also objects to this interrogatory on the ground that it calls for a legal argument or legal

22  conclusion. Irico further objects to this interrogatory to the extent that it improperly tries to shift

23  the pleading and evidentiary burden that Plaintiffs alone carry to Irico.

24  Subject to and without waiving the objections stated above, Irico asserts that Plaintiffs

25  have not established facts that demonstrate that they were actually or proximately injured by

26  reason of any act or omission by Irico. Irico further states that Plaintiffs were not actually or

27  proximately injured by reason of any act or omission by Irico because Irico did not conspire or

28  enter into any agreements regarding the price of CRTs in the United States market, and did not

---

1    violate any of the laws set forth in the Plaintiffs' Amended Complaint.

2            Irico states that because Plaintiffs seek to recover for purchases of CRT products as

3    indirect purchasers, Plaintiffs have failed to meet their burden of demonstrating they were injured

4    in a way that the antitrust laws were enacted to prevent. The Ninth Circuit has established that in

5    the absence of a direct relationship with the defendants, a Plaintiffs must be a participant in the

6    allegedly restrained market in order to have suffered "antitrust injury." *See Am. Ad. Mgmt., Inc. v.*

7    *General Tel. Co.*, 190 F.3d 1051, 1057 (9th Cir. 1999) ("Antitrust injury requires the Plaintiffs to

8    have suffered its injury in the market where competition is being restrained. Parties whose

9    injuries, though flowing from that which makes the defendant's conduct unlawful, are

10   experienced in another market do not suffer antitrust injury"); see also *Assoc. Gen. Contractors of*

11   *Cal. v. Cal. State Council of Carpenters* ("*AGC*"), 549 U.S. 519, 538 (1983) (antitrust laws are

12   designed to "protect[] the economic freedom of participants in the relevant market").

13           Additionally, Irico states that Plaintiffs have not come forward with a reliable

14   methodology to prove the existence of the amount, if any, of pass-through injury to all members

15   of the class. Although not limited to the following, Irico relies on the information contained in the

16   Expert Report of Janusz A. Ordover, Ph.D., August 5, 2014 (IPP Action) at 14-36, and the Expert

17   Report of Janusz A. Ordover, Ph.D., August 5, 2014 (Various DAP Actions) at 14-30.

18           Irico further states that various retailers have testified that they did not uniformly pass

19   through any price increases in CRT Products to consumers. This evidence further establishes that

20   Plaintiffs have not and cannot show which members, if any, of the indirect purchaser class have

21   suffered any alleged injury. Although not limited to the following, Irico relies on the following

22   information: Deposition Tr. of Brian Stone, Dec. 3, 2012 ("Stone Dep. Tr."), at 117:4-22 ("Cost

23   increases that a manufacturer is intending to push across may not be reflected in the overall

24   pricing for the end consumer based upon Best Buy's company's strategy, intent of that product

25   category, the product availability, and the overall competitive nature of the . . . space."); id. at

26   167:21-169:1 ("There could be instances where due to competitive pricing forces costs could go

27   up, but retail pricing may not be able to go up based upon in-country availability of products,

28   competitive forces, seasonality."); Rule 30(b)(6) Deposition of Office Depot July 24, 2014

1   ("Office Depot 30(b)(6) Dep. Tr."), at 147:16-148:7 ("[W]e will look at the market, we will look

2   at what's in the market, look at the competitive intelligence of what people are carrying, what

3   they are selling production for, what's in our current assortment, what we're charging for that, and

4   in most cases you cannot increase and pass, the customers just won't buy it because it will be

5   overpriced."); Rule 30(b)(6) Deposition Tr. of Interbond Corp. of America, d/b/a Brandsmart

6   USA (through witness Larry Sinewitz, Feb. 6, 2014 ("Interbond 30(b)(6) Dep. Tr."), at 287:13-

7   20; Deposition Tr. of Aimee Fields, June 4, 2014 ("Fields Dep. Tr."), at 125:12-126:3; Rule

8   30(b)(6) Deposition Tr. of Fry's Electronics (through witness Raj Seth) (rough transcript), Aug.

9   27, 2014 ("Fry's 30(b)(6) Dep. Tr."), at 182:6-184:10; Rule 30(b)(6) Deposition Tr. of

10   TigerDirect, Inc. (through witness George Ali) (rough transcript), Aug. 28, 2014 ("TigerDirect

11   30(b)(6) Dep. Tr.").

12   ## INTERROGATORY RESPONSE AS TO IRICO'S FOURTEENTH DEFENSE

13       Plaintiffs' claims and claims of any putative class members are barred, in whole or in part,

14   because any alleged injuries and/or damages were not legally or proximately caused by any acts

15   or omissions of [Group or Display] and/or were caused, if at all, solely and proximately by the

16   conduct of third parties including, without limitations, the prior, intervening or superseding

17   conduct of such third parties.

18       **RESPONSE**

19       Irico further objects that this Interrogatory is premature given that no Irico witnesses have

20   been deposed relating to merits issues and expert analysis and disclosures have not yet begun. *See*

21   *Young v. Regis Corp.*, No. C 10-02634 SI, 2011 WL 9558055 (N.D. Cal. May 19, 2011). Irico

22   also objects to this interrogatory on the ground that it calls for a legal argument or legal

23   conclusion.

24       Subject to and without waiving the objections stated above, Irico contends that Irico's

25   pricing-related conduct was compelled by the Chinese government and based on duly enacted

26   laws and/or regulations of the People's Republic of China. Irico relies on the following evidence

27   to support this contention:

28

1      • The State Planning Commission and the State Economic and Trade Commission
2        issued the "Regulations on Preventing Unfair Price Behavior of Low-Priced
3        Dumping of Industrial Products" – effective as of Nov. 25, 1998. *See* Ex. A to the
4        Declaration of Stuart C. Plunkett in Support of Motion to Set Aside Default, ECF
5        No. 5229-02.

6      • Notice of the State Planning Commission on Issuing the "Measures for the
7        Determination of the Cost of Dumping Industrial Products at Low Prices (for Trial
8        Implementation)" – effective as of March 1, 1999. *See*
9        https://law.lawtime.cn/d448076453170.html.

10     • Notice of the State Planning Commission and the Ministry of Information Industry
11       on the Trial Measures to Stop Unfair Price Competition of Color Picture Tubes and
12       Color TVs – effective as of April 1, 1999. *See* IRI-CRT-00031457 at 1460-64; Ex.
13       B to the Declaration of Stuart C. Plunkett in Support of Motion to Set Aside
14       Default, ECF No. 5229-03.

15     • Notice on submitting cost information of color TV and color tube industry issued
16       by the Ministry of Information Industry in 1999. *See* Ex. D to the Declaration of
17       Stuart C. Plunkett in Support of Motion to Set Aside Default, ECF No. 5229-05.

18     • Notice on the issuance of the average production cost of some types of color
19       picture tubes and color TV industries issued by the Ministry of Information
20       Industry on April 2, 1999. *See* IRI-CRT-00031457 at 1459-60, 1466-67; Ex. C to
21       the Declaration of Stuart C. Plunkett in Support of Motion to Set Aside Default,
22       ECF No. 5229-04.

23     • Notice on the issuance of the average production cost of certain types of color TV
24       industries issued by the Ministry of Information Industry on August 25, 2000. *See*
25       Ex. E to the Declaration of Stuart C. Plunkett in Support of Motion to Set Aside
26       Default, ECF No. 5229-06.

27     • Notice on the issuance of the average production cost of some industries of color
28       picture tubes issued by the Ministry of Information Industry on September 14,

2000. *See* Ex. F to the Declaration of Stuart C. Plunkett in Support of Motion to Set Aside Default, ECF No. 5229-07.

Irico identifies the following employees as having knowledge regarding this Interrogatory: Wang Zhaojie and Su Xiaohua.

### INTERROGATORY RESPONSE AS TO IRICO'S FIFTEENTH DEFENSE

To the extent that any actionable conduct occurred, Plaintiffs claims and the claims of any putative class members against [Group or Display] are barred because all such conduct would have been committed by individuals acting *ultra vires*.

### RESPONSE

Subject to and without waiving the objections stated above, and based on its present knowledge, Irico responds by stating that it affirms its prior response. *See* Irico Defendants' Second Supplemental Objections and Responses to Indirect Purchaser Plaintiffs' First Set of Interrogatories, June 25, 2021.

### INTERROGATORY RESPONSE AS TO IRICO'S SIXTEENTH DEFENSE

Plaintiffs' claims should be dismissed to the extent they are barred, in whole or in part, because any injury or damage alleged in the Complaint, which [Group or Display] specifically denies, was passed on to persons or entities other than the Plaintiffs and/or was passed on by Plaintiffs to other parties.

### RESPONSE

Irico further objects that this Interrogatory is premature given that no Irico witnesses have been deposed relating to merits issues and expert analysis and disclosures have not yet begun. *See Young v. Regis Corp.*, No. C 10-02634 SI, 2011 WL 9558055 (N.D. Cal. May 19, 2011). Irico also objects to this interrogatory on the ground that it calls for a legal argument or legal conclusion. Irico further objects to this interrogatory to the extent that it improperly tries to shift the pleading and evidentiary burden that Plaintiffs alone carry to Irico.

Subject to and without waiving the objections stated above, Irico asserts that Plaintiffs have not established facts that demonstrate that they were actually or proximately injured by reason of any act or omission by Irico. Irico further states that Plaintiffs were not actually or

---

IRICO'S OBJECTIONS AND RESPONSES TO          33          Master File No. 07-cv-05944-JST
IPP'S FOURTH SET INTERROGATORIES                                            MDL No. 1917

1   proximately injured by reason of any act or omission by Irico because Irico did not conspire or

2   enter into any agreements regarding the price of CRTs in the United States market, and did not

3   violate any of the laws set forth in the Plaintiffs' Amended Complaint.

4       Irico states that because Plaintiffs seek to recover for purchases of CRT products as

5   indirect purchasers, Plaintiffs have failed to meet their burden of demonstrating they were injured

6   in a way that the antitrust laws were enacted to prevent. The Ninth Circuit has established that in

7   the absence of a direct relationship with the defendants, a Plaintiffs must be a participant in the

8   allegedly restrained market in order to have suffered "antitrust injury." *See Am. Ad. Mgmt., Inc. v.*

9   *General Tel. Co.*, 190 F.3d 1051, 1057 (9th Cir. 1999) ("Antitrust injury requires the Plaintiffs to

10  have suffered its injury in the market where competition is being restrained. Parties whose

11  injuries, though flowing from that which makes the defendant's conduct unlawful, are

12  experienced in another market do not suffer antitrust injury"); see also *Assoc. Gen. Contractors of*

13  *Cal. v. Cal. State Council of Carpenters* ("*AGC*"), 549 U.S. 519, 538 (1983) (antitrust laws are

14  designed to "protect[] the economic freedom of participants in the relevant market").

15      Irico further states that various retailers have testified that they did not uniformly pass

16  through any price increases in CRT Products to consumers. This evidence further establishes that

17  Plaintiffs have not and cannot show which members, if any, of the indirect purchaser class have

18  suffered any alleged injury. Although not limited to the following, Irico relies on the following

19  information: Deposition Tr. of Brian Stone, Dec. 3, 2012 ("Stone Dep. Tr."), at 117:4-22 ("Cost

20  increases that a manufacturer is intending to push across may not be reflected in the overall

21  pricing for the end consumer based upon Best Buy's company's strategy, intent of that product

22  category, the product availability, and the overall competitive nature of the . . . space."); id. at

23  167:21-169:1 ("There could be instances where due to competitive pricing forces costs could go

24  up, but retail pricing may not be able to go up based upon in-country availability of products,

25  competitive forces, seasonality."); Rule 30(b)(6) Deposition of Office Depot July 24, 2014

26  ("Office Depot 30(b)(6) Dep. Tr."), at 147:16-148:7 ("[W]e will look at the market, we will look

27  at what's in the market, look at the competitive intelligence of what people are carrying, what

28  they are selling production for, what's in our current assortment, what we're charging for that, and

1   in most cases you cannot increase and pass, the customers just won't buy it because it will be

2   overpriced."); Rule 30(b)(6) Deposition Tr. of Interbond Corp. of America, d/b/a Brandsmart

3   USA (through witness Larry Sinewitz), Feb. 6, 2014 ("Interbond 30(b)(6) Dep. Tr."), at 287:13-

4   20; Deposition Tr. of Aimee Fields, June 4, 2014 ("Fields Dep. Tr."), at 125:12-126:3; Rule

5   30(b)(6) Deposition Tr. of Fry's Electronics (through witness Raj Seth) (rough transcript), Aug.

6   27, 2014 ("Fry's 30(b)(6) Dep. Tr."), at 182:6-184:10; Rule 30(b)(6) Deposition Tr. of

7   TigerDirect, Inc. (through witness George Ali) (rough transcript), Aug. 28, 2014 ("TigerDirect

8   30(b)(6) Dep. Tr.").

9         **INTERROGATORY RESPONSE AS TO IRICO'S SEVENTEENTH DEFENSE**

10        Plaintiffs' claims are barred, in whole or in part, to the extent they are based on alleged

11   acts, conduct or statements that are specifically permitted by law.

12        **RESPONSE**

13        Irico further objects that this Interrogatory is premature given that no Irico witnesses have

14   been deposed relating to merits issues and expert analysis and disclosures have not yet begun. *See*

15   *Young v. Regis Corp.*, No. C 10-02634 SI, 2011 WL 9558055 (N.D. Cal. May 19, 2011). Irico

16   also objects to this interrogatory on the ground that it calls for a legal argument or legal

17   conclusion.

18        Subject to and without waiving the objections stated above, Irico contends that Irico's

19   pricing-related conduct was compelled by the Chinese government and based on duly enacted

20   laws and/or regulations of the People's Republic of China. Irico relies on the following evidence

21   to support this contention:

22          • The State Planning Commission and the State Economic and Trade Commission

23            issued the "Regulations on Preventing Unfair Price Behavior of Low-Priced

24            Dumping of Industrial Products" – effective as of Nov. 25, 1998. *See* Ex. A to the

25            Declaration of Stuart C. Plunkett in Support of Motion to Set Aside Default, ECF

26            No. 5229-02.

27          • Notice of the State Planning Commission on Issuing the "Measures for the

28            Determination of the Cost of Dumping Industrial Products at Low Prices (for Trial

---

1    Implementation)" – effective as of March 1, 1999. *See*

2    https://law.lawtime.cn/d448076453170.html.

3    • Notice of the State Planning Commission and the Ministry of Information Industry

4    on the Trial Measures to Stop Unfair Price Competition of Color Picture Tubes and

5    Color TVs – effective as of April 1, 1999. *See* IRI-CRT-00031457 at 1460-64; Ex.

6    B to the Declaration of Stuart C. Plunkett in Support of Motion to Set Aside

7    Default, ECF No. 5229-03.

8    • Notice on submitting cost information of color TV and color tube industry issued

9    by the Ministry of Information Industry in 1999. *See* Ex. D to the Declaration of

10    Stuart C. Plunkett in Support of Motion to Set Aside Default, ECF No. 5229-05.

11    • Notice on the issuance of the average production cost of some types of color

12    picture tubes and color TV industries issued by the Ministry of Information

13    Industry on April 2, 1999. *See* IRI-CRT-00031457 at 1459-60, 1466-67; Ex. C to

14    the Declaration of Stuart C. Plunkett in Support of Motion to Set Aside Default,

15    ECF No. 5229-04.

16    • Notice on the issuance of the average production cost of certain types of color TV

17    industries issued by the Ministry of Information Industry on August 25, 2000. *See*

18    Ex. E to the Declaration of Stuart C. Plunkett in Support of Motion to Set Aside

19    Default, ECF No. 5229-06.

20    • Notice on the issuance of the average production cost of some industries of color

21    picture tubes issued by the Ministry of Information Industry on September 14,

22    2000. *See* Ex. F to the Declaration of Stuart C. Plunkett in Support of Motion to

23    Set Aside Default, ECF No. 5229-07.

24    Irico identifies the following employees as having knowledge regarding this Interrogatory: Wang

25    Zhaojie and Su Xiaohua.

26

27

28

1    **INTERROGATORY RESPONSE AS TO IRICO'S EIGHTEENTH DEFENSE**

2            Plaintiffs' claims should be dismissed, in whole or in part, because Plaintiffs and/or

3    certain members of the putative class failed to take all necessary, reasonable, and appropriate

4    actions to mitigate their alleged damages, if any.

5            **RESPONSE**

6            Subject to and without waiving the objections stated above, and based on its present

7    knowledge, Irico responds by stating that it affirms its prior response. *See* Irico Defendants'

8    Second Supplemental Objections and Responses to Indirect Purchaser Plaintiffs' First Set of

9    Interrogatories, June 25, 2021.

10    **INTERROGATORY RESPONSE AS TO IRICO'S NINETEENTH DEFENSE**

11            Plaintiffs' claims should be dismissed to the extent that they are barred, in whole or in

12    part, because Plaintiffs and/or certain members of the putative class would be unjustly enriched if

13    they were allowed to recover any part of the damages alleged in the Amended Complaint.

14            **RESPONSE**

15            Subject to and without waiving the objections stated above, and based on its present

16    knowledge, Irico responds by stating that it affirms its prior response. *See* Irico Defendants'

17    Second Supplemental Objections and Responses to Indirect Purchaser Plaintiffs' First Set of

18    Interrogatories, June 25, 2021.

19    **INTERROGATORY RESPONSE AS TO IRICO'S TWENTIETH DEFENSE**

20            Without admitting that Plaintiffs are entitled to recover damages in this matter, Group is

21    entitled to set off from any recovery Plaintiffs may obtain against Group any amount paid to

22    Plaintiffs by any other Defendants who have settled, or do settle, Plaintiffs' claims in this matter.

23            **RESPONSE**

24            Irico further objects to this interrogatory on the ground that it calls for a legal argument or

25    legal conclusion.

26            Subject to and without waiving the objections stated above, Irico states that a Plaintiffs

27    who recovers damages from one co-conspirator, whether by verdict or settlement, may not

28    recover those same damages again from another co-conspirator. *See* Order Granting Final

1    Approval, ECF No. 5786 (approving IPP settlements with Philips, Panasonic, Hitachi, Toshiba,

2    Samsung, and Thomson/TDA); *see also Zenith Radio Corp. v. Hazeltine Research, Inc.,* 401 U.S.

3    321, 348 (1971); *Seymour v. Summa Vista Cinema, Inc.,* 809 F.2d 1385, 1389 (9th Cir. 1987);

4    *Husky Refining Co. v. Barnes,* 119 F.2d 715, 716 (9th Cir. 1941); *In re Piper Aircraft,* 792 F.

5    Supp. 1189, 1190-91 (N.D. Cal. 1992). While Irico maintains that the evidence does not prove

6    that it conspired or entered into any agreements regarding the price of CRTs in the United States

7    market, or violated any of the laws set forth in IPPs' Complaint, if it were proven that Irico

8    conspired or agreed to fix prices, as alleged, any recovery would need to be reduced by

9    settlements with other defendants in this or related matters.

10        Additionally, Irico states that applicable state law prohibits duplicative recovery by

11   multiple direct or indirect purchasers. *See, e.g.,* N.Y. Gen. Bus. Law § 340(6) ("In actions where

12   both direct and indirect purchasers are involved, a defendant shall be entitled to prove as a partial

13   or complete defense to a claim for damages that the illegal overcharge has been passed on to

14   others who are themselves entitled to recover so as to avoid duplication of recovery of

15   damages."); *Clayworth v. Pfizer, Inc.,* 49 Cal. 4th 758, 787 (2010) (holding that under California

16   law, "[i]n instances where multiple levels of purchasers have sued, or where a risk remains they

17   may sue . . . if damages must be allocated among the various levels of injured purchasers, the bar

18   on consideration of the pass-on evidence must necessarily be lifted . . . ."); Haw. Rev. Stat. § 480-

19   13 (2011) ("In class actions or de facto class actions where both direct and indirect purchasers are

20   involved, or where more than one class of indirect purchasers are involved, a defendant shall be

21   entitled to prove as a partial or complete defense to a claim for compensatory damages that the

22   illegal overcharge has been passed on or passed back to others who are themselves entitled to

23   recover so as to avoid the duplication of recovery of compensatory damages."); Neb. Rev. Stat. §

24   59-821.01 (2012) ("A defendant may prove, as a partial or complete defense to a claim for

25   damages under sections 59-801 to 59-831 and this section, that the illegal overcharge or

26   undercharge has been passed on to others who are themselves entitled to recover so as to avoid

27   duplication of recovery of such damages . . . ."); N.D. Cent. Code § 51-08.1-08 ("In any action for

28   damages under this section, any defendant, as a partial or complete defense against a claim for

1    damages, is entitled to prove that the Plaintiffs purchaser, or seller in the chain of manufacture,

2    production, or distribution, who paid any overcharge or received any underpayment passed on all

3    or any part of the overcharge or underpayment to another purchaser or seller in that action.").

4         **INTERROGATORY RESPONSE AS TO IRICO'S TWENTY-FIRST DEFENSE**

5         To the extent that any actionable conduct occurred for which [Group or Display] is liable,

6    some or all of Plaintiffs' claims against [Group or Display] are barred because [Group or Display]

7    withdrew from and/or abandoned any alleged conspiracy and thus Plaintiffs cannot establish

8    liability or compensable damages as a matter of law on the basis that, among other things, [Group

9    or Display] withdrew and/or abandoned any alleged conspiracy prior to the commencement of the

10   limitations period set forth in applicable statutes of limitations.

11        **RESPONSE**

12        Irico further objects that this Interrogatory is premature given that no Irico witnesses have

13   been deposed relating to merits issues and expert analysis and disclosures have not been

14   completed. *See Young v. Regis Corp.*, No. C 10-02634 SI, 2011 WL 9558055 (N.D. Cal. May 19,

15   2011). Irico also objects to this interrogatory on the ground that it calls for a legal argument or

16   legal conclusion.

17        Subject to and without waiving the objections stated above, and based on its present

18   knowledge, Irico responds as follows: Based on further investigation, Irico renews its Twenty-

19   First Defense.  Irico understands that Plaintiff has alleged a single global conspiracy

20   encompassing all CRTs, including both color picture tubes ("CPTs") and color display tubes

21   ("CDTs") sold during the Relevant Period.  Irico denies participating in any such conspiracy, and

22   also contends that the conspiracy as alleged by plaintiffs is inappropriately broad as it includes

23   multiple categories of CRTs, including different sizes and types, that are not functional substitutes

24   in use.  *See* Heiser (Hitachi) Dep. 46:24-47:23; Michael Son (SDI) Dep. 318:20-319:9; Jae In Lee

25   (SDI) Dep. 212:1-213:2; Chih Chun Liu (Chunghwa) Dep. 502:2-19; Phillip Johnson Dep. 27:6-

26   28:6.  Irico contends that, if any CRT-related conspiracy existed, as a matter of economic

27   feasibility it could not encompass both CPTs and CDTs.

28        Irico contends that it ceased production and sale of CDTs no later than 2004 and thus

1  could not have participated in any conspiracy to fix prices or restrain production of CDTs, if any

2  such conspiracy existed, after that time. Irico identifies the following evidence in support of its

3  Twenty-First Defense: IRI-CRT-00031179 through -31215; witnesses Wang Zhaojie and Su

4  Xiaohua.  Irico further refers Plaintiff to the forthcoming spreadsheet(s) summarizing its original

5  CRT sales records.

6  **INTERROGATORY RESPONSE AS TO IRICO'S TWENTY-SECOND DEFENSE**

7  Plaintiffs' claims should be dismissed to the extent that they are barred, in whole or in part,

8  by the doctrines of waiver and/or estoppel.

9  **RESPONSE**

10  Subject to and without waiving the objections stated above, and based on its present

11  knowledge, Irico responds by stating that it affirms its prior response. *See* Irico Defendants' Second

12  Supplemental Objections and Responses to Indirect Purchaser Plaintiffs' First Set of

13  Interrogatories, June 25, 2021.

14  **INTERROGATORY RESPONSE AS TO IRICO'S TWENTY-THIRD DEFENSE**

15  Plaintiffs' claims should be dismissed to the extent that they are barred, in whole or in part,

16  by the equitable doctrine of laches.

17  **RESPONSE**

18  Subject to and without waiving the objections stated above, and based on its present

19  knowledge, Irico responds by stating that it affirms its prior response. *See* Irico Defendants' Second

20  Supplemental Objections and Responses to Indirect Purchaser Plaintiffs' First Set of

21  Interrogatories, June 25, 2021.

22  **INTERROGATORY RESPONSE AS TO IRICO'S TWENTY-FOURTH DEFENSE**

23  Plaintiffs' claims should be dismissed to the extent that they are barred, in whole or in part,

24  by the equitable doctrine of unclean hands.

25  **RESPONSE**

26  Subject to and without waiving the objections stated above, and based on its present

27  knowledge, Irico responds by stating that it affirms its prior response. *See* Irico Defendants' Second

28

Supplemental Objections and Responses to Indirect Purchaser Plaintiffs' First Set of Interrogatories, June 25, 2021.

### INTERROGATORY RESPONSE AS TO IRICO'S TWENTY-FIFTH DEFENSE

Plaintiffs' claims should be dismissed to the extent that they are barred, in whole or in part, by Plaintiffs' and/or certain members of the putative class acquiescence and/or confirmation of any and all conduct and/or omissions alleged as to [Group or Display].

**RESPONSE**

Subject to and without waiving the objections stated above, and based on its present knowledge, Irico responds by stating that it affirms its prior response. *See* Irico Defendants' Second Supplemental Objections and Responses to Indirect Purchaser Plaintiffs' First Set of Interrogatories, June 25, 2021.

### INTERROGATORY RESPONSE AS TO IRICO'S TWENTY-SIXTH DEFENSE

Plaintiffs' claims are barred, in whole or in part, by the doctrine of accord and satisfaction.

**RESPONSE**

Subject to and without waiving the objections stated above, and based on its present knowledge, Irico responds by stating that it affirms its prior response. *See* Irico Defendants' Second Supplemental Objections and Responses to Indirect Purchaser Plaintiffs' First Set of Interrogatories, June 25, 2021.

### INTERROGATORY RESPONSE AS TO IRICO'S TWENTY-SEVENTH DEFENSE

The Amended Complaint should be dismissed on the grounds of forum non conveniens.

**RESPONSE**

Subject to and without waiving the objections stated above, and based on its present knowledge, Irico responds by stating that Irico withdraws its Twenty-Seventh Defense.

### INTERROGATORY RESPONSE AS TO IRICO'S TWENTY-EIGHTH DEFENSE

Plaintiffs' claims and claims of any putative class members against Group are barred to the extent that they have agreed to arbitration or chosen a different forum for the resolution of their claims.

**RESPONSE**

1    Subject to and without waiving the objections stated above, and based on its present

2    knowledge, Irico responds by stating that Irico withdraws its Twenty-Eighth Defense.

3    **INTERROGATORY RESPONSE AS TO IRICO'S TWENTY-NINTH DEFENSE**

4    Plaintiffs' claims for injunctive relief should be dismissed because Plaintiffs and/or certain

5    members of the putative class have available an adequate remedy at law.

6    **RESPONSE**

7    Irico further objects to this interrogatory on the ground that it calls for a legal argument or

8    legal conclusion. Irico also objects to this interrogatory to the extent that it improperly tries to

9    shift the pleading and evidentiary burden that Plaintiffs alone carry to Irico.

10   Subject to and without waiving the objections stated above, Irico contends that Plaintiffs'

11   claims for injunctive relief should be dismissed because Plaintiffs have an available adequate

12   remedy at law. *See Walters v. Reno*, 145 F.3d 1032, 1048 (9th Cir. 1998) ("Injunctive relief is

13   proper only if monetary damages or other legal remedies will not compensate the Plaintiffs for

14   their injuries."). To be entitled to an injunction, Plaintiffs must establish that there is a threat of

15   injury. However, there is no continuing harm or continuing injury that could be enjoined.

16   Plaintiffs also do not allege that there was a continuing conspiracy after 2007. Therefore, there are

17   no grounds for an injunction. Although not limited to the following, Irico relies on the following

18   evidence to support the contention that Plaintiffs' claims for injunctive relief should be dismissed:

19   Defendants' Motion to Dismiss the State of Florida's Complaint, July 3, 2012 (ECF No. 1248)

20   and Stipulation and Order Dismissing the Claims of Plaintiffs State of Florida, December 10,

21   2012 (ECF No. 1480).

22   **INTERROGATORY RESPONSE AS TO IRICO'S THIRTIETH DEFENSE**

23   Plaintiffs' claims should be dismissed to the extent that they are barred, in whole or in part,

24   for failure to join indispensable parties.

25   **RESPONSE**

26   Subject to and without waiving the objections stated above, and based on its present

27   knowledge, Irico responds by stating that it affirms its prior response. *See Irico Defendants'*

28   *Second Supplemental Objections and Responses to Indirect Purchaser Plaintiffs' First Set of*

1  Interrogatories, June 25, 2021.

2  **INTERROGATORY RESPONSE AS TO IRICO'S THIRTY-FIRST DEFENSE**

3  Plaintiffs' claims and claims of any putative class members are barred, in whole or in part,

4  to the extent they seek an improper multiple punitive award for a single wrong because such an

5  award would violate [Group or Display]'s rights guaranteed by the Due Process clause of the

6  Fifth Amendment of the United States Constitution.

7  **RESPONSE**

8  Irico further objects to this interrogatory on the ground that it calls for a legal argument or

9  legal conclusion. Irico also objects to this interrogatory on the grounds that it is premature at this

10  stage in the proceedings as damages have not been awarded.

11  Subject to and without waiving the objections stated above, Irico states that a Plaintiffs

12  who recovers damages from one co-conspirator, whether by verdict or settlement, may not

13  recover those same damages again from another co-conspirator. *Zenith Radio Corp. v. Hazeltine*

14  *Research, Inc.*, 401 U.S. 321, 348 (1971); *Seymour v. Summa Vista Cinema, Inc.*, 809 F.2d 1385,

15  1389 (9th Cir. 1987); *Husky Refining Co. v. Barnes*, 119 F.2d 715, 716 (9th Cir. 1941); *In re*

16  *Piper Aircraft*, 792 F. Supp. 1189, 1190-91 (N.D. Cal. 1992). While Irico maintains that the

17  evidence does not prove that it conspired or entered into any agreements regarding the price of

18  CRTs in the United States market, or violated any of the laws set forth in Plaintiffs' Complaint, if

19  it were proven that Irico conspired or agreed to fix prices, as alleged, any recovery would need to

20  be reduced by settlements with other defendants in this or related matters.

21  Additionally, Irico states that applicable state law prohibits duplicative recovery by

22  multiple direct or indirect purchasers. *See, e.g.*, N.Y. Gen. Bus. Law § 340(6) ("In actions where

23  both direct and indirect purchasers are involved, a defendant shall be entitled to prove as a partial

24  or complete defense to a claim for damages that the illegal overcharge has been passed on to

25  others who are themselves entitled to recover so as to avoid duplication of recovery of

26  damages."); *Clayworth v. Pfizer, Inc.*, 49 Cal. 4th 758, 787 (2010) (holding that under California

27  law, "[i]n instances where multiple levels of purchasers have sued, or where a risk remains they

28  may sue . . . if damages must be allocated among the various levels of injured purchasers, the bar

1   on consideration of the pass-on evidence must necessarily be lifted . . . ."); Haw. Rev. Stat. § 480-

2   13 (2011) ("In class actions or de facto class actions where both direct and indirect purchasers are

3   involved, or where more than one class of indirect purchasers are involved, a defendant shall be

4   entitled to prove as a partial or complete defense to a claim for compensatory damages that the

5   illegal overcharge has been passed on or passed back to others who are themselves entitled to

6   recover so as to avoid the duplication of recovery of compensatory damages."); Neb. Rev. Stat. §

7   59-821.01 (2012) ("A defendant may prove, as a partial or complete defense to a claim for

8   damages under sections 59-801 to 59-831 and this section, that the illegal overcharge or

9   undercharge has been passed on to others who are themselves entitled to recover so as to avoid

10  duplication of recovery of such damages . . . ."); N.D. Cent. Code § 51-08.1-08 ("In any action for

11  damages under this section, any defendant, as a partial or complete defense against a claim for

12  damages, is entitled to prove that the Plaintiffs purchaser, or seller in the chain of manufacture,

13  production, or distribution, who paid any overcharge or received any underpayment passed on all

14  or any part of the overcharge or underpayment to another purchaser or seller in that action.").

15          **INTERROGATORY RESPONSE AS TO IRICO'S THIRTY-SECOND DEFENSE**

16          Plaintiffs' claims and claims of any putative class members are barred, in whole or in part,

17  to the extent they seek an improper multiple punitive award for a single wrong because such an

18  award would violate [Group or Display]'s rights guaranteed by the Due Process provision of the

19  Fourteenth Amendment of the United States Constitution.

20          **RESPONSE**

21          Irico further objects to this interrogatory on the ground that it calls for a legal argument or

22  legal conclusion. Irico also objects to this interrogatory on the grounds that it is premature at this

23  stage in the proceedings as damages have not been awarded.

24          Subject to and without waiving the objections stated above, Irico states that a Plaintiffs

25  who recovers damages from one co-conspirator, whether by verdict or settlement, may not

26  recover those same damages again from another co-conspirator. *Zenith Radio Corp. v. Hazeltine*

27  *Research, Inc.*, 401 U.S. 321, 348 (1971); *Seymour v. Summa Vista Cinema, Inc.*, 809 F.2d 1385,

28  1389 (9th Cir. 1987); *Husky Refining Co. v. Barnes*, 119 F.2d 715, 716 (9th Cir. 1941); *In re*

1   *Piper Aircraft*, 792 F. Supp. 1189, 1190-91 (N.D. Cal. 1992). While Irico maintains that the

2   evidence does not prove that it conspired or entered into any agreements regarding the price of

3   CRTs in the United States market, or violated any of the laws set forth in Plaintiffs' Complaint, if

4   it were proven that Irico conspired or agreed to fix prices, as alleged, any recovery would need to

5   be reduced by settlements with other defendants in this or related matters.

6          Additionally, Irico states that applicable state law prohibits duplicative recovery by

7   multiple direct or indirect purchasers. See, e.g., N.Y. Gen. Bus. Law § 340(6) ("In actions where

8   both direct and indirect purchasers are involved, a defendant shall be entitled to prove as a partial

9   or complete defense to a claim for damages that the illegal overcharge has been passed on to

10  others who are themselves entitled to recover so as to avoid duplication of recovery of

11  damages."); *Clayworth v. Pfizer, Inc.*, 49 Cal. 4th 758, 787 (2010) (holding that under California

12  law, "[i]n instances where multiple levels of purchasers have sued, or where a risk remains they

13  may sue . . . if damages must be allocated among the various levels of injured purchasers, the bar

14  on consideration of the pass-on evidence must necessarily be lifted . . . ."); Haw. Rev. Stat. § 480-

15  13 (2011) ("In class actions or de facto class actions where both direct and indirect purchasers are

16  involved, or where more than one class of indirect purchasers are involved, a defendant shall be

17  entitled to prove as a partial or complete defense to a claim for compensatory damages that the

18  illegal overcharge has been passed on or passed back to others who are themselves entitled to

19  recover so as to avoid the duplication of recovery of compensatory damages."); Neb. Rev. Stat. §

20  59-821.01 (2012) ("A defendant may prove, as a partial or complete defense to a claim for

21  damages under sections 59-801 to 59-831 and this section, that the illegal overcharge or

22  undercharge has been passed on to others who are themselves entitled to recover so as to avoid

23  duplication of recovery of such damages . . . ."); N.D. Cent. Code § 51-08.1-08 ("In any action for

24  damages under this section, any defendant, as a partial or complete defense against a claim for

25  damages, is entitled to prove that the Plaintiffs purchaser, or seller in the chain of manufacture,

26  production, or distribution, who paid any overcharge or received any underpayment passed on all

27  or any part of the overcharge or underpayment to another purchaser or seller in that action.").

28

**INTERROGATORY RESPONSE AS TO IRICO'S THIRTY-THIRD DEFENSE**

Plaintiffs' claims and claims of any putative class members are barred, in whole or in part, to the extent they seek an improper multiple punitive award for a single wrong because such an award would violate [Group or Display]'s rights guaranteed by the Equal Protection provision of the Fourteenth Amendment of the United States Constitution.

**RESPONSE**

Irico further objects to this interrogatory on the ground that it calls for a legal argument or legal conclusion. Irico also objects to this interrogatory on the grounds that it is premature at this stage in the proceedings as damages have not been awarded.

Subject to and without waiving the objections stated above, Irico states that a Plaintiffs who recovers damages from one co-conspirator, whether by verdict or settlement, may not recover those same damages again from another co-conspirator. *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 348 (1971); *Seymour v. Summa Vista Cinema, Inc.*, 809 F.2d 1385, 1389 (9th Cir. 1987); *Husky Refining Co. v. Barnes*, 119 F.2d 715, 716 (9th Cir. 1941); *In re Piper Aircraft*, 792 F. Supp. 1189, 1190-91 (N.D. Cal. 1992). While Irico maintains that the evidence does not prove that it conspired or entered into any agreements regarding the price of CRTs in the United States market, or violated any of the laws set forth in Plaintiffs' Complaint, if it were proven that Irico conspired or agreed to fix prices, as alleged, any recovery would need to be reduced by settlements with other defendants in this or related matters.

Additionally, Irico states that applicable state law prohibits duplicative recovery by multiple direct or indirect purchasers. See, e.g., N.Y. Gen. Bus. Law § 340(6) ("In actions where both direct and indirect purchasers are involved, a defendant shall be entitled to prove as a partial or complete defense to a claim for damages that the illegal overcharge has been passed on to others who are themselves entitled to recover so as to avoid duplication of recovery of damages."); *Clayworth v. Pfizer, Inc.*, 49 Cal. 4th 758, 787 (2010) (holding that under California law, "[i]n instances where multiple levels of purchasers have sued, or where a risk remains they may sue . . . if damages must be allocated among the various levels of injured purchasers, the bar on consideration of the pass-on evidence must necessarily be lifted . . . ."); Haw. Rev. Stat. § 480-

13 (2011) ("In class actions or de facto class actions where both direct and indirect purchasers are involved, or where more than one class of indirect purchasers are involved, a defendant shall be entitled to prove as a partial or complete defense to a claim for compensatory damages that the illegal overcharge has been passed on or passed back to others who are themselves entitled to recover so as to avoid the duplication of recovery of compensatory damages."); Neb. Rev. Stat. § 59-821.01 (2012) ("A defendant may prove, as a partial or complete defense to a claim for damages under sections 59-801 to 59-831 and this section, that the illegal overcharge or undercharge has been passed on to others who are themselves entitled to recover so as to avoid duplication of recovery of such damages . . . ."); N.D. Cent. Code § 51-08.1-08 ("In any action for damages under this section, any defendant, as a partial or complete defense against a claim for damages, is entitled to prove that the Plaintiffs purchaser, or seller in the chain of manufacture, production, or distribution, who paid any overcharge or received any underpayment passed on all or any part of the overcharge or underpayment to another purchaser or seller in that action.").

## INTERROGATORY RESPONSE AS TO IRICO'S THIRTY-FOURTH DEFENSE

Plaintiffs' claims and claims of any putative class members are barred, in whole or in part, to the extent they seek an improper multiple punitive award for a single wrong because such an award would violate [Group or Display]'s rights guaranteed by the Double Jeopardy Clause of the Fifth Amendment of the United States Constitution.

## RESPONSE

Irico further objects to this interrogatory on the ground that it calls for a legal argument or legal conclusion. Irico also objects to this interrogatory on the grounds that it is premature at this stage in the proceedings as damages have not been awarded.

Subject to and without waiving the objections stated above, Irico states that a Plaintiffs who recovers damages from one co-conspirator, whether by verdict or settlement, may not recover those same damages again from another co-conspirator. *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 348 (1971); *Seymour v. Summa Vista Cinema, Inc.*, 809 F.2d 1385, 1389 (9th Cir. 1987); *Husky Refining Co. v. Barnes*, 119 F.2d 715, 716 (9th Cir. 1941); *In re Piper Aircraft*, 792 F. Supp. 1189, 1190-91 (N.D. Cal. 1992). While Irico maintains that the

1    evidence does not prove that it conspired or entered into any agreements regarding the price of

2    CRTs in the United States market, or violated any of the laws set forth in Plaintiffs' Complaint, if

3    it were proven that Irico conspired or agreed to fix prices, as alleged, any recovery would need to

4    be reduced by settlements with other defendants in this or related matters.

5         Additionally, Irico states that applicable state law prohibits duplicative recovery by

6    multiple direct or indirect purchasers. See, e.g., N.Y. Gen. Bus. Law § 340(6) ("In actions where

7    both direct and indirect purchasers are involved, a defendant shall be entitled to prove as a partial

8    or complete defense to a claim for damages that the illegal overcharge has been passed on to

9    others who are themselves entitled to recover so as to avoid duplication of recovery of

10   damages."); *Clayworth v. Pfizer, Inc.*, 49 Cal. 4th 758, 787 (2010) (holding that under California

11   law, "[i]n instances where multiple levels of purchasers have sued, or where a risk remains they

12   may sue . . . if damages must be allocated among the various levels of injured purchasers, the bar

13   on consideration of the pass-on evidence must necessarily be lifted . . . ."); Haw. Rev. Stat. § 480-

14   13 (2011) ("In class actions or de facto class actions where both direct and indirect purchasers are

15   involved, or where more than one class of indirect purchasers are involved, a defendant shall be

16   entitled to prove as a partial or complete defense to a claim for compensatory damages that the

17   illegal overcharge has been passed on or passed back to others who are themselves entitled to

18   recover so as to avoid the duplication of recovery of compensatory damages."); Neb. Rev. Stat. §

19   59-821.01 (2012) ("A defendant may prove, as a partial or complete defense to a claim for

20   damages under sections 59-801 to 59-831 and this section, that the illegal overcharge or

21   undercharge has been passed on to others who are themselves entitled to recover so as to avoid

22   duplication of recovery of such damages . . . ."); N.D. Cent. Code § 51-08.1-08 ("In any action for

23   damages under this section, any defendant, as a partial or complete defense against a claim for

24   damages, is entitled to prove that the Plaintiffs purchaser, or seller in the chain of manufacture,

25   production, or distribution, who paid any overcharge or received any underpayment passed on all

26   or any part of the overcharge or underpayment to another purchaser or seller in that action.").

27

28

1    **INTERROGATORY RESPONSE AS TO IRICO'S THIRTY-FIFTH DEFENSE**

2    Plaintiffs' claims and claims of any putative class members are barred, in whole or in part,

3    to the extent they seek an improper multiple punitive award for a single wrong because such an

4    award would violate [Group or Display]'s rights guaranteed by the Excessive Fines provision of

5    the Eighth Amendment of the United States Constitution.

6    **RESPONSE**

7    Irico further objects to this interrogatory on the ground that it calls for a legal argument or

8    legal conclusion. Irico also objects to this interrogatory on the grounds that it is premature at this

9    stage in the proceedings as damages have not been awarded.

10    Subject to and without waiving the objections stated above, Irico states that a Plaintiffs

11    who recovers damages from one co-conspirator, whether by verdict or settlement, may not

12    recover those same damages again from another co-conspirator. *Zenith Radio Corp. v. Hazeltine*

13    *Research, Inc.*, 401 U.S. 321, 348 (1971); *Seymour v. Summa Vista Cinema, Inc.*, 809 F.2d 1385,

14    1389 (9th Cir. 1987); *Husky Refining Co. v. Barnes*, 119 F.2d 715, 716 (9th Cir. 1941); *In re*

15    *Piper Aircraft*, 792 F. Supp. 1189, 1190-91 (N.D. Cal. 1992). While Irico maintains that the

16    evidence does not prove that it conspired or entered into any agreements regarding the price of

17    CRTs in the United States market, or violated any of the laws set forth in Plaintiffs' Complaint, if

18    it were proven that Irico conspired or agreed to fix prices, as alleged, any recovery would need to

19    be reduced by settlements with other defendants in this or related matters.

20    Additionally, Irico states that applicable state law prohibits duplicative recovery by

21    multiple direct or indirect purchasers. See, e.g., N.Y. Gen. Bus. Law § 340(6) ("In actions where

22    both direct and indirect purchasers are involved, a defendant shall be entitled to prove as a partial

23    or complete defense to a claim for damages that the illegal overcharge has been passed on to

24    others who are themselves entitled to recover so as to avoid duplication of recovery of

25    damages."); *Clayworth v. Pfizer, Inc.*, 49 Cal. 4th 758, 787 (2010) (holding that under California

26    law, "[i]n instances where multiple levels of purchasers have sued, or where a risk remains they

27    may sue . . . if damages must be allocated among the various levels of injured purchasers, the bar

28    on consideration of the pass-on evidence must necessarily be lifted . . . ."); Haw. Rev. Stat. § 480-

1   13 (2011) ("In class actions or de facto class actions where both direct and indirect purchasers are

2   involved, or where more than one class of indirect purchasers are involved, a defendant shall be

3   entitled to prove as a partial or complete defense to a claim for compensatory damages that the

4   illegal overcharge has been passed on or passed back to others who are themselves entitled to

5   recover so as to avoid the duplication of recovery of compensatory damages."); Neb. Rev. Stat. §

6   59-821.01 (2012) ("A defendant may prove, as a partial or complete defense to a claim for

7   damages under sections 59-801 to 59-831 and this section, that the illegal overcharge or

8   undercharge has been passed on to others who are themselves entitled to recover so as to avoid

9   duplication of recovery of such damages . . . ."); N.D. Cent. Code § 51-08.1-08 ("In any action for

10  damages under this section, any defendant, as a partial or complete defense against a claim for

11  damages, is entitled to prove that the Plaintiffs purchaser, or seller in the chain of manufacture,

12  production, or distribution, who paid any overcharge or received any underpayment passed on all

13  or any part of the overcharge or underpayment to another purchaser or seller in that action.").

14  **INTERROGATORY RESPONSE AS TO IRICO'S THIRTY-SIXTH DEFENSE**

15       To the extent any recovery by Plaintiffs or members of the putative class would be

16  duplicative of recovery by other Plaintiffs and other lawsuits, subjecting [Group or Display]  to

17  the possibility of multiple recoveries, such recovery is barred by the Fifth and Eighth

18  Amendments to the United States Constitution.

19  **RESPONSE**

20       Irico further objects to this interrogatory on the ground that it calls for a legal argument or

21  legal conclusion. Irico also objects to this interrogatory on the grounds that it is premature at this

22  stage in the proceedings as damages have not been awarded.

23       Subject to and without waiving the objections stated above, Irico states that a Plaintiffs

24  who recovers damages from one co-conspirator, whether by verdict or settlement, may not

25  recover those same damages again from another co-conspirator. *Zenith Radio Corp. v. Hazeltine*

26  *Research, Inc.*, 401 U.S. 321, 348 (1971); *Seymour v. Summa Vista Cinema, Inc.*, 809 F.2d 1385,

27  1389 (9th Cir. 1987); *Husky Refining Co. v. Barnes*, 119 F.2d 715, 716 (9th Cir. 1941); *In re*

28  *Piper Aircraft*, 792 F. Supp. 1189, 1190-91 (N.D. Cal. 1992). While Irico maintains that the

1   evidence does not prove that it conspired or entered into any agreements regarding the price of

2   CRTs in the United States market, or violated any of the laws set forth in Plaintiffs' Complaint, if

3   it were proven that Irico conspired or agreed to fix prices, as alleged, any recovery would need to

4   be reduced by settlements with other defendants in this or related matters.

5          Additionally, Irico states that applicable state law prohibits duplicative recovery by

6   multiple direct or indirect purchasers. See, e.g., N.Y. Gen. Bus. Law § 340(6) ("In actions where

7   both direct and indirect purchasers are involved, a defendant shall be entitled to prove as a partial

8   or complete defense to a claim for damages that the illegal overcharge has been passed on to

9   others who are themselves entitled to recover so as to avoid duplication of recovery of

10  damages."); *Clayworth v. Pfizer, Inc.*, 49 Cal. 4th 758, 787 (2010) (holding that under California

11  law, "[i]n instances where multiple levels of purchasers have sued, or where a risk remains they

12  may sue . . . if damages must be allocated among the various levels of injured purchasers, the bar

13  on consideration of the pass-on evidence must necessarily be lifted . . . ."); Haw. Rev. Stat. § 480-

14  13 (2011) ("In class actions or de facto class actions where both direct and indirect purchasers are

15  involved, or where more than one class of indirect purchasers are involved, a defendant shall be

16  entitled to prove as a partial or complete defense to a claim for compensatory damages that the

17  illegal overcharge has been passed on or passed back to others who are themselves entitled to

18  recover so as to avoid the duplication of recovery of compensatory damages."); Neb. Rev. Stat. §

19  59-821.01 (2012) ("A defendant may prove, as a partial or complete defense to a claim for

20  damages under sections 59-801 to 59-831 and this section, that the illegal overcharge or

21  undercharge has been passed on to others who are themselves entitled to recover so as to avoid

22  duplication of recovery of such damages . . . ."); N.D. Cent. Code § 51-08.1-08 ("In any action for

23  damages under this section, any defendant, as a partial or complete defense against a claim for

24  damages, is entitled to prove that the Plaintiffs purchaser, or seller in the chain of manufacture,

25  production, or distribution, who paid any overcharge or received any underpayment passed on all

26  or any part of the overcharge or underpayment to another purchaser or seller in that action.").

27

28

1    **INTERROGATORY RESPONSE AS TO IRICO'S THIRTY-SEVENTH DEFENSE**

2         Plaintiffs' claims are barred, in whole or in part, because Plaintiffs may not recover

3    damages, if any, based on sales outside of the United States.

4         **RESPONSE**

5         Irico further objects that this Interrogatory is premature given that no Irico witnesses have

6    been deposed relating to merits issues and expert analysis and disclosures have not yet begun. *See*

7    *Young v. Regis Corp.*, No. C 10-02634 SI, 2011 WL 9558055 (N.D. Cal. May 19, 2011). Irico

8    also objects to this interrogatory on the ground that it calls for a legal argument or legal

9    conclusion.

10        Subject to and without waiving the objections stated above, Irico contends that Plaintiffs'

11   claims are barred in whole or in part to the extent that they are based on sales outside of the

12   United States. Irico contends that a certain unknown percentage of the CRTs contained within the

13   CRT products that Plaintiffs purchased were purchased from other countries. This contention is

14   based on the fact that Plaintiffs cannot identify which company manufactured the CRT within the

15   relevant CRT products. In the absence of knowing who manufactured the CRTs within its

16   products, Plaintiffs likewise cannot identify whether those CRTs were purchased from outside the

17   United States. Whether the CRTs themselves were purchased outside of the United States is

18   relevant in determining if Plaintiffs' claims are barred because Plaintiffs alleged that it was

19   injured on account of a price fixing conspiracy regarding CRTs as opposed to CRT products.

20        Although not limited to the following, Irico relies on the following evidence to support

21   that Plaintiffs' claims are barred to the extent that they are based on sales outside of the United

22   States: Expert Report of Janusz A. Ordover, Ph.D., (IPP Report), August 5, 2014; Expert Report

23   of Robert D. Willig, August 5, 2014; Expert Report of Margaret E. Guerin-Calvert, August 5,

24   2014; and Expert Report of Prof. Dennis W. Carlton, August 5, 2014.

25   **INTERROGATORY RESPONSE AS TO IRICO'S THIRTY-EIGHTH DEFENSE**

26        Plaintiffs' claims should be dismissed because the alleged damages sought are too

27   speculative and uncertain, and cannot be practicably ascertained or allocated.

28        **RESPONSE**

1    Irico further objects to this interrogatory on the ground that it calls for a legal argument or

2    legal conclusion. Irico also objects to this interrogatory to the extent that it improperly tries to

3    shift the pleading and evidentiary burden that Plaintiffs' alone carry to Irico.

4    Subject to and without waiving the objections stated above, Irico responds by stating that

5    Plaintiffs' alleged damages are speculative and uncertain because Irico did not conspire or enter

6    into any agreements regarding the price of CRTs in the United States market, and did not violate

7    any of the laws set forth in Plaintiffs' Complaint.

8    Irico further states that because Plaintiffs seek to recover for purchases of CRT Products

9    as indirect purchasers, Plaintiffs' alleged damages are inherently speculative and/or uncertain due

10   to a number of factors – such as the cost of other components that collectively make up CRT

11   Products – that would have influenced the price that Plaintiffs paid for a CRT Product. Any

12   apportionment of damages in this case will be exceedingly complex given the multi-layered and

13   complex distribution, manufacturing and retail channels that existed in the market. Indeed, the

14   different layers between Plaintiffs' allegations of injury and any alleged constraints in the CRT

15   market inject levels of uncertainty in the price ultimately paid by the consumer for the

16   downstream product, even if Plaintiffs could prove up an alleged overcharge for one component

17   therein. See, e.g., Expert Report of Janusz A. Ordover, Ph.D., August 5, 2014 at 7–9; see also

18   Defs.' Mem. in Opp'n to Mot. of Plaintiffs for Class Certification 12–13, ECF No. 1538; Decl. of

19   Dr. Janet S. Netz 29–33, ECF No. 1527; Decl. of Robert D. Willig ¶¶ 120–21, ECF No. 1615.

20   Irico further states that the testimony of numerous retailers – that they did not uniformly pass

21   through any price increases in CRT Products to consumers – makes the proof of such injury to

22   specific class members inherently speculative. See, e.g., Stone Dep. Tr. at 117:4-22, 167:21-

23   169:1; Office Depot Dep. Tr. at 147:16-148:7; Interbond 30(b)(6) Dep. Tr. at 287:13-20; Fields

24   Dep. Tr. at 125:12-126:3; Fry's 30(b)(6) Dep. Tr. at 182:6-184:10; TigerDirect 30(b)(6) Dep. Tr.

25   at 114:5-115:13.

26   **INTERROGATORY RESPONSE AS TO IRICO'S THIRTY-NINTH DEFENSE**

27   Any award of restitution or monetary recovery pursuant to California Business and

28   Professions §§ 17200, et seq. would constitute a taking of property without just compensation in

1  violation of the Takings Clause of the U.S. Constitution and of Article 1, Section 19 of the

2  California Constitution.

3      **RESPONSE**

4      Irico further objects to this interrogatory on the ground that it calls for a legal argument or

5  legal conclusion. Irico also objects to this interrogatory on the grounds that it is premature at this

6  stage in the proceedings as damages have not been awarded.

7      **INTERROGATORY RESPONSE AS TO IRICO'S FORTIETH DEFENSE**

8      Plaintiffs' claims are barred, in whole or in part, to the extent Plaintiffs have failed to plead

9  special damages with specificity as required by the laws of the various States cited.

10     **RESPONSE**

11     Irico further objects to this interrogatory on the ground that it calls for a legal argument or

12  legal conclusion. Irico also objects to this interrogatory to the extent that it improperly tries to

13  shift the pleading and evidentiary burden that Plaintiffs alone carry to Irico.

14     **INTERROGATORY RESPONSE AS TO IRICO'S FORTY-FIRST DEFENSE**

15     Plaintiffs' claims should be dismissed to the extent they are barred, in whole or in part,

16  because any injury or damage alleged in the Complaint was not incurred by or passed on to

17  Plaintiffs, or was incurred by or passed on to persons or entities other than Plaintiffs.

18     **RESPONSE**

19     Irico further objects that this Interrogatory is premature given that no Irico witnesses have

20  been deposed relating to merits issues and expert analysis and disclosures have not yet begun. *See*

21  *Young v. Regis Corp.*, No. C 10-02634 SI, 2011 WL 9558055 (N.D. Cal. May 19, 2011). Irico

22  also objects to this interrogatory on the ground that it calls for a legal argument or legal

23  conclusion. Irico further objects to this interrogatory to the extent that it improperly tries to shift

24  the pleading and evidentiary burden that Plaintiffs alone carry to Irico.

25     Subject to and without waiving the objections stated above, Irico states that Plaintiffs have

26  not come forward with a reliable methodology to prove the existence of the amount, if any, of

27  pass-through injury to all members of the class, and expressly incorporates by reference the

28  information contained in the Expert Report of Janusz A. Ordover, Ph.D., August 5, 2014 (IPP

---

1   Action) at 14-36, and the Expert Report of Janusz A. Ordover, Ph.D., August 5, 2014 (Various

2   DAP Actions) at 14-30.

3        Irico further states that numerous retailers have testified that they did not uniformly pass

4   through any price increases in CRT Products to consumers, and this evidence further

5   demonstrates that Plaintiffs have not and cannot show which members, if any, of the indirect

6   purchaser class have suffered any alleged injury. See, e.g., Deposition Tr. of Brian Stone, Dec. 3,

7   2012 ("Stone Dep. Tr."), at 117:4-22 ("Cost increases that a manufacturer is intending to push

8   across may not be reflected in the overall pricing for the end consumer based upon Best Buy's

9   company's strategy, intent of that product category, the product availability, and the overall

10  competitive nature of the . . . space."); id. at 167:21-169:1 ("There could be instances where due

11  to competitive pricing forces costs could go up, but retail pricing may not be able to go up based

12  upon in-country availability of products, competitive forces, seasonality."); Deposition Tr. of

13  Randall Wick, July 24, 2014 ("Wick Dep. Tr."), at 147:16-148:7 ("[W]e will look at the market,

14  we will look at what's in the market, look at the competitive intelligence of what people are

15  carrying, what they are selling production for, what's in our current assortment, what we're

16  charging for that, and in most cases you cannot increase and pass, the customers just won't buy it

17  because it will be overpriced."); Rule 30(b)(6) Deposition Tr. of Interbond Corp. of America,

18  d/b/a Brandsmart USA (through witness Larry Sinewitz), Feb. 6, 2014 ("Interbond 30(b)(6) Dep.

19  Tr."), at 287:13-20; Deposition Tr. of Aimee Fields, June 4, 2014 ("Fields Dep. Tr."), at 125:12-

20  126:3; Rule 30(b)(6) Deposition Tr. of Fry's Electronics (through witness Raj Seth) (rough

21  transcript), Aug. 27, 2014 ("Fry's 30(b)(6) Dep. Tr."), at 182:6-184:10; Rule 30(b)(6) Deposition

22  Tr. of TigerDirect, Inc. (through witness George Ali) (rough transcript), Aug. 28, 2014

23  ("TigerDirect 30(b)(6) Dep. Tr."), at 114:5-115:13.

24  **INTERROGATORY NO. 8**

25       If Your response to any of the IPPs' Requests for Admissions served concurrently

26  herewith is anything other than an unqualified admission:

27       a.   State all facts supporting Your denial;

28       b.   Identify each Person who provided facts relating to Your response;

1        c.      Identify each Document You consulted to formulate Your response

2    **RESPONSE TO INTERROGATORY NO. 8**

3        Irico reasserts and incorporates each of the General Objections and Objections to the

4    Definitions and Instructions set forth above. Irico also reasserts and incorporates each of the

5    General Objections, Objections to the Definitions and Instructions, and objections in each of its

6    Specific Responses to Requests for Admission as set forth in Irico Defendants' Objections and

7    Responses to Indirect Purchaser Plaintiffs' First Set of Requests for Admission, served herewith.

8    Irico further objects to this interrogatory as overbroad and unduly burdensome, as Plaintiffs has

9    not demonstrated how the benefit of such information outweighs the significant burden to Irico of

10    responding to each denial of the 119 RFAs (including subparts) propounded by Plaintiffs.

11        Subject to and without waiving the foregoing objections, Irico responds as follows:

12    **RESPONSE RE: REQUEST FOR ADMISSION NO. 1A**

13        Irico further objects to this Interrogatory on the grounds that it is overbroad, unduly

14    burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and seeks

15    information that is maintained by and equally available to Plaintiffs or stated in publicly available

16    documents. Irico also objects to this Interrogatory on the grounds that it calls for a legal argument

17    or legal conclusion. Irico further objects to the use of the terms "unqualified" and "supporting"

18    because they are vague and ambiguous, rendering this Interrogatory overbroad, unduly

19    burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Irico

20    also objects to this Interrogatory to the extent it improperly tries to shift the evidentiary burden

21    that Plaintiffs alone carry to Irico. Irico further objects to this Interrogatory as it requests Irico to

22    provide facts and evidence of events that did not take place.

23        Subject to and without waiving its foregoing objections, Irico responds that this email

24    address was not used by an Irico employee during the course of their employment with Irico, nor

25    was the email domain "@irico.com.cn" maintained by Irico during the Relevant Period. Irico

26    issued and maintained email addresses with the domain @ch.com.cn during the Relevant Period.

27    Irico understands that this email domain (@irico.com.cn) was used by another company, China

28    National Electronics Import & Export Caihong Co. ("CNEIECC"), which was an independent

1   company that was not owned or controlled by Irico during the Relevant Period.

2   **RESPONSE RE: REQUEST FOR ADMISSION NO. 1B**

3       Irico further objects to this Interrogatory on the grounds that it is overbroad, unduly

4   burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and seeks

5   information that is maintained by and equally available to Plaintiffs or stated in publicly available

6   documents. Irico also objects to this Interrogatory on the grounds that it calls for a legal argument

7   or legal conclusion. Irico further objects to the use of the terms "unqualified" and "supporting"

8   because they are vague and ambiguous, rendering this Interrogatory overbroad, unduly

9   burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Irico

10  also objects to this Interrogatory to the extent it improperly tries to shift the evidentiary burden

11  that Plaintiffs alone carry to Irico. Irico further objects to this Interrogatory as it requests Irico to

12  provide facts and evidence of events that did not take place.

13      Subject to and without waiving its foregoing objections, Irico responds that this email

14  address was not maintained by Irico during the Relevant Period. Irico issued and maintained

15  email addresses with the domain @ch.com.cn during the Relevant Period. Irico did not authorize

16  its employees to use non-Irico email addresses to conduct business, and Irico did not control this

17  email address in any way. Based on the foregoing, Irico cannot confirm that this email address

18  was used by an Irico "officer or employee."

19  **RESPONSE RE: REQUEST FOR ADMISSION NO. 1C**

20      Irico further objects to this Interrogatory on the grounds that it is overbroad, unduly

21  burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and seeks

22  information that is maintained by and equally available to Plaintiffs or stated in publicly available

23  documents. Irico also objects to this Interrogatory on the grounds that it calls for a legal argument

24  or legal conclusion. Irico further objects to the use of the terms "unqualified" and "supporting"

25  because they are vague and ambiguous, rendering this Interrogatory overbroad, unduly

26  burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Irico

27  also objects to this Interrogatory to the extent it improperly tries to shift the evidentiary burden

28  that Plaintiffs alone carry to Irico. Irico further objects to this Interrogatory as it requests Irico to

1  provide facts and evidence of events that did not take place.

2        Subject to and without waiving its foregoing objections, Irico responds that this email

3  address was not maintained by Irico during the Relevant Period. Irico issued and maintained

4  email addresses with the domain @ch.com.cn during the Relevant Period. Irico did not authorize

5  its employees to use non-Irico email addresses to conduct business, and Irico did not control this

6  email address in any way. Based on the foregoing, Irico cannot confirm that this email address

7  was used by an Irico "officer or employee."

8        **RESPONSE RE: REQUEST FOR ADMISSION NO. 1D**

9        Irico further objects to this Interrogatory on the grounds that it is overbroad, unduly

10  burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and seeks

11  information that is maintained by and equally available to Plaintiffs or stated in publicly available

12  documents. Irico also objects to this Interrogatory on the grounds that it calls for a legal argument

13  or legal conclusion. Irico further objects to the use of the terms "unqualified" and "supporting"

14  because they are vague and ambiguous, rendering this Interrogatory overbroad, unduly

15  burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Irico

16  also objects to this Interrogatory to the extent it improperly tries to shift the evidentiary burden

17  that Plaintiffs alone carry to Irico. Irico further objects to this Interrogatory as it requests Irico to

18  provide facts and evidence of events that did not take place.

19        Subject to and without waiving its foregoing objections, Irico responds that this email

20  address was not maintained by Irico during the Relevant Period. Irico issued and maintained

21  email addresses with the domain @ch.com.cn during the Relevant Period. Irico did not authorize

22  its employees to use non-Irico email addresses to conduct business, and Irico did not control this

23  email address in any way. Based on the foregoing, Irico cannot confirm that this email address

24  was used by an Irico "officer or employee."

25        **RESPONSE RE: REQUEST FOR ADMISSION NO. 1E**

26        Irico further objects to this Interrogatory on the grounds that it is overbroad, unduly

27  burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and seeks

28  information that is maintained by and equally available to Plaintiffs or stated in publicly available

1   documents. Irico also objects to this Interrogatory on the grounds that it calls for a legal argument

2   or legal conclusion. Irico further objects to the use of the terms "unqualified" and "supporting"

3   because they are vague and ambiguous, rendering this Interrogatory overbroad, unduly

4   burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Irico

5   also objects to this Interrogatory to the extent it improperly tries to shift the evidentiary burden

6   that Plaintiffs alone carry to Irico. Irico further objects to this Interrogatory as it requests Irico to

7   provide facts and evidence of events that did not take place.

8       Subject to and without waiving its foregoing objections, Irico responds that this email

9   address was not used by an Irico employee during the course of their employment with Irico, nor

10  was the email domain "@irico.com.cn" maintained by Irico during the Relevant Period. Irico

11  issued and maintained email addresses with the domain @ch.com.cn during the Relevant Period.

12  Irico understands that this email domain (@irico.com.cn) was used by another company, China

13  National Electronics Import & Export Caihong Co. ("CNEIECC"), which was an independent

14  company that was not owned or controlled by Irico during the Relevant Period.

15  **RESPONSE RE: REQUEST FOR ADMISSION NO. 1F**

16      Irico further objects to this Interrogatory on the grounds that it is overbroad, unduly

17  burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and seeks

18  information that is maintained by and equally available to Plaintiffs or stated in publicly available

19  documents. Irico also objects to this Interrogatory on the grounds that it calls for a legal argument

20  or legal conclusion. Irico further objects to the use of the terms "unqualified" and "supporting"

21  because they are vague and ambiguous, rendering this Interrogatory overbroad, unduly

22  burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Irico

23  also objects to this Interrogatory to the extent it improperly tries to shift the evidentiary burden

24  that Plaintiffs alone carry to Irico. Irico further objects to this Interrogatory as it requests Irico to

25  provide facts and evidence of events that did not take place.

26      Subject to and without waiving its foregoing objections, Irico responds that this email

27  address was not used by an Irico employee during the course of their employment with Irico, nor

28  was the email domain "@irico.com.cn" maintained by Irico during the Relevant Period. Irico

IRICO'S OBJECTIONS AND RESPONSES TO         59         Master File No. 07-cv-05944-JST
IPP'S FOURTH SET INTERROGATORIES                              MDL No. 1917

1   issued and maintained email addresses with the domain @ch.com.cn during the Relevant Period.

2   Irico understands that this email domain (@irico.com.cn) was used by another company, China

3   National Electronics Import & Export Caihong Co. ("CNEIECC"), which was an independent

4   company that was not owned or controlled by Irico during the Relevant Period.

5            **RESPONSE RE: REQUEST FOR ADMISSION NO. 1G**

6            Irico further objects to this Interrogatory on the grounds that it is overbroad, unduly

7   burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and seeks

8   information that is maintained by and equally available to Plaintiffs or stated in publicly available

9   documents. Irico also objects to this Interrogatory on the grounds that it calls for a legal argument

10  or legal conclusion. Irico further objects to the use of the terms "unqualified" and "supporting"

11  because they are vague and ambiguous, rendering this Interrogatory overbroad, unduly

12  burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Irico

13  also objects to this Interrogatory to the extent it improperly tries to shift the evidentiary burden

14  that Plaintiffs alone carry to Irico. Irico further objects to this Interrogatory as it requests Irico to

15  provide facts and evidence of events that did not take place.

16           Subject to and without waiving the objections stated above, Irico refers Plaintiffs to its

17  response to Request for Admission No. 1G, which contains a complete basis for its response to

18  this Interrogatory.

19           **RESPONSE RE: REQUEST FOR ADMISSION NO. 1H**

20           Irico further objects to this Interrogatory on the grounds that it is overbroad, unduly

21  burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and seeks

22  information that is maintained by and equally available to Plaintiffs or stated in publicly available

23  documents. Irico also objects to this Interrogatory on the grounds that it calls for a legal argument

24  or legal conclusion. Irico further objects to the use of the terms "unqualified" and "supporting"

25  because they are vague and ambiguous, rendering this Interrogatory overbroad, unduly

26  burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Irico

27  also objects to this Interrogatory to the extent it improperly tries to shift the evidentiary burden

28  that Plaintiffs alone carry to Irico. Irico further objects to this Interrogatory as it requests Irico to

1  provide facts and evidence of events that did not take place.

2      Subject to and without waiving the objections stated above, Irico refers Plaintiffs to its

3  response to Request for Admission No. 1H, which contains a complete basis for its response to

4  this Interrogatory.

5      **RESPONSE RE: REQUEST FOR ADMISSION NO. 1J**

6      Irico further objects to this Interrogatory on the grounds that it is overbroad, unduly

7  burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and seeks

8  information that is maintained by and equally available to Plaintiffs or stated in publicly available

9  documents. Irico also objects to this Interrogatory on the grounds that it calls for a legal argument

10 or legal conclusion. Irico further objects to the use of the terms "unqualified" and "supporting"

11 because they are vague and ambiguous, rendering this Interrogatory overbroad, unduly

12 burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Irico

13 also objects to this Interrogatory to the extent it improperly tries to shift the evidentiary burden

14 that Plaintiffs alone carry to Irico. Irico further objects to this Interrogatory as it requests Irico to

15 provide facts and evidence of events that did not take place.

16     Subject to and without waiving the objections stated above, Irico refers Plaintiffs to its

17 response to Request for Admission No. 1J, which contains a complete basis for its response to this

18 Interrogatory.

19     **RESPONSE RE: REQUEST FOR ADMISSION NO. 1K**

20     Irico further objects to this Interrogatory on the grounds that it is overbroad, unduly

21 burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and seeks

22 information that is maintained by and equally available to Plaintiffs or stated in publicly available

23 documents. Irico also objects to this Interrogatory on the grounds that it calls for a legal argument

24 or legal conclusion. Irico further objects to the use of the terms "unqualified" and "supporting"

25 because they are vague and ambiguous, rendering this Interrogatory overbroad, unduly

26 burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Irico

27 also objects to this Interrogatory to the extent it improperly tries to shift the evidentiary burden

28 that Plaintiffs alone carry to Irico. Irico further objects to this Interrogatory as it requests Irico to

1   provide facts and evidence of events that did not take place.

2       Subject to and without waiving the objections stated above, Irico refers Plaintiffs to its

3   response to Request for Admission No. 1K, which contains a complete basis for its response to

4   this Interrogatory.

5           **RESPONSE RE: REQUEST FOR ADMISSION NO. 1L**

6       Irico further objects to this Interrogatory on the grounds that it is overbroad, unduly

7   burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and seeks

8   information that is maintained by and equally available to Plaintiffs or stated in publicly available

9   documents. Irico also objects to this Interrogatory on the grounds that it calls for a legal argument

10   or legal conclusion. Irico further objects to the use of the terms "unqualified" and "supporting"

11   because they are vague and ambiguous, rendering this Interrogatory overbroad, unduly

12   burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Irico

13   also objects to this Interrogatory to the extent it improperly tries to shift the evidentiary burden

14   that Plaintiffs alone carry to Irico. Irico further objects to this Interrogatory as it requests Irico to

15   provide facts and evidence of events that did not take place.

16       Subject to and without waiving the objections stated above, Irico refers Plaintiffs to its

17   response to Request for Admission No. 1L, which contains a complete basis for its response to

18   this Interrogatory.

19           **RESPONSE RE: REQUEST FOR ADMISSION NO. 1M**

20       Irico further objects to this Interrogatory on the grounds that it is overbroad, unduly

21   burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and seeks

22   information that is maintained by and equally available to Plaintiffs or stated in publicly available

23   documents. Irico also objects to this Interrogatory on the grounds that it calls for a legal argument

24   or legal conclusion. Irico further objects to the use of the terms "unqualified" and "supporting"

25   because they are vague and ambiguous, rendering this Interrogatory overbroad, unduly

26   burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Irico

27   also objects to this Interrogatory to the extent it improperly tries to shift the evidentiary burden

28   that Plaintiffs alone carry to Irico. Irico further objects to this Interrogatory as it requests Irico to

1  provide facts and evidence of events that did not take place.

2        Subject to and without waiving its foregoing objections, Irico responds that this email

3  address was not used by an Irico employee during the course of their employment with Irico, nor

4  was the email domain "@irico.com.cn" maintained by Irico during the Relevant Period. Irico

5  issued and maintained email addresses with the domain @ch.com.cn during the Relevant Period.

6  Irico understands that this email domain (@irico.com.cn) was used by another company, China

7  National Electronics Import & Export Caihong Co. ("CNEIECC"), which was an independent

8  company that was not owned or controlled by Irico during the Relevant Period.

9        **RESPONSE RE: REQUEST FOR ADMISSION NO. 1N**

10        Irico further objects to this Interrogatory on the grounds that it is overbroad, unduly

11  burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and seeks

12  information that is maintained by and equally available to Plaintiffs or stated in publicly available

13  documents. Irico also objects to this Interrogatory on the grounds that it calls for a legal argument

14  or legal conclusion. Irico further objects to the use of the terms "unqualified" and "supporting"

15  because they are vague and ambiguous, rendering this Interrogatory overbroad, unduly

16  burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Irico

17  also objects to this Interrogatory to the extent it improperly tries to shift the evidentiary burden

18  that Plaintiffs alone carry to Irico. Irico further objects to this Interrogatory as it requests Irico to

19  provide facts and evidence of events that did not take place.

20        Subject to and without waiving its foregoing objections, Irico responds that this email

21  address was not used by an Irico employee during the course of their employment with Irico, nor

22  was the email domain "@irico.com.cn" maintained by Irico during the Relevant Period. Irico

23  issued and maintained email addresses with the domain @ch.com.cn during the Relevant Period.

24  Irico understands that this email domain (@irico.com.cn) was used by another company, China

25  National Electronics Import & Export Caihong Co. ("CNEIECC"), which was an independent

26  company that was not owned or controlled by Irico during the Relevant Period.

27        **RESPONSE RE: REQUEST FOR ADMISSION NO. 1P**

28        Irico further objects to this Interrogatory on the grounds that it is overbroad, unduly

1  burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and seeks

2  information that is maintained by and equally available to Plaintiffs or stated in publicly available

3  documents. Irico also objects to this Interrogatory on the grounds that it calls for a legal argument

4  or legal conclusion. Irico further objects to the use of the terms "unqualified" and "supporting"

5  because they are vague and ambiguous, rendering this Interrogatory overbroad, unduly

6  burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Irico

7  also objects to this Interrogatory to the extent it improperly tries to shift the evidentiary burden

8  that Plaintiffs alone carry to Irico. Irico further objects to this Interrogatory as it requests Irico

9  provide facts and evidence of events that did not take place.

10       Subject to and without waiving the objections stated above, Irico refers Plaintiffs to its

11  response to Request for Admission No. 1P, which contains a complete basis for its response to

12  this Interrogatory.

13       **RESPONSE RE: REQUEST FOR ADMISSION NO. 1Q**

14       Irico further objects to this Interrogatory on the grounds that it is overbroad, unduly

15  burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and seeks

16  information that is maintained by and equally available to Plaintiffs or stated in publicly available

17  documents. Irico also objects to this Interrogatory on the grounds that it calls for a legal argument

18  or legal conclusion. Irico further objects to the use of the terms "unqualified" and "supporting"

19  because they are vague and ambiguous, rendering this Interrogatory overbroad, unduly

20  burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Irico

21  also objects to this Interrogatory to the extent it improperly tries to shift the evidentiary burden

22  that Plaintiffs alone carry to Irico. Irico further objects to this Interrogatory as it requests Irico

23  provide facts and evidence of events that did not take place.

24       Subject to and without waiving its foregoing objections, Irico responds that this email

25  address was not used by an Irico employee during the course of their employment with Irico, nor

26  was the email domain "@irico.com.cn" maintained by Irico during the Relevant Period. Irico

27  issued and maintained email addresses with the domain @ch.com.cn during the Relevant Period.

28  Irico understands that this email domain (@irico.com.cn) was used by another company, China

1    National Electronics Import & Export Caihong Co. ("CNEIECC"), which was an independent

2    company that was not owned or controlled by Irico during the Relevant Period.

3              **RESPONSE RE: REQUEST FOR ADMISSION NO. 1T**

4              Irico further objects to this Interrogatory on the grounds that it is overbroad, unduly

5    burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and seeks

6    information that is maintained by and equally available to Plaintiffs or stated in publicly available

7    documents. Irico also objects to this Interrogatory on the grounds that it calls for a legal argument

8    or legal conclusion. Irico further objects to the use of the terms "unqualified" and "supporting"

9    because they are vague and ambiguous, rendering this Interrogatory overbroad, unduly

10   burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Irico

11   also objects to this Interrogatory to the extent it improperly tries to shift the evidentiary burden

12   that Plaintiffs alone carry to Irico. Irico further objects to this Interrogatory as it requests Irico to

13   provide facts and evidence of events that did not take place.

14             Subject to and without waiving the objections stated above, Irico refers Plaintiffs to its

15   response to Request for Admission No. 1T, which contains a complete basis for its response to

16   this Interrogatory.

17             **RESPONSE RE: REQUEST FOR ADMISSION NO. 1U**

18             Irico further objects to this Interrogatory on the grounds that it is overbroad, unduly

19   burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and seeks

20   information that is maintained by and equally available to Plaintiffs or stated in publicly available

21   documents. Irico also objects to this Interrogatory on the grounds that it calls for a legal argument

22   or legal conclusion. Irico further objects to the use of the terms "unqualified" and "supporting"

23   because they are vague and ambiguous, rendering this Interrogatory overbroad, unduly

24   burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Irico

25   also objects to this Interrogatory to the extent it improperly tries to shift the evidentiary burden

26   that Plaintiffs alone carry to Irico. Irico further objects to this Interrogatory as it requests Irico to

27   provide facts and evidence of events that did not take place.

28             Subject to and without waiving the objections stated above, Irico refers Plaintiffs to its

1   response to Request for Admission No. 1U, which contains a complete basis for its response to

2   this Interrogatory.

3   **RESPONSE RE: REQUEST FOR ADMISSION NO. 1V**

4   Irico further objects to this Interrogatory on the grounds that it is overbroad, unduly

5   burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and seeks

6   information that is maintained by and equally available to Plaintiffs or stated in publicly available

7   documents. Irico also objects to this Interrogatory on the grounds that it calls for a legal argument

8   or legal conclusion. Irico further objects to the use of the terms "unqualified" and "supporting"

9   because they are vague and ambiguous, rendering this Interrogatory overbroad, unduly

10  burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Irico

11  also objects to this Interrogatory to the extent it improperly tries to shift the evidentiary burden

12  that Plaintiffs alone carry to Irico. Irico further objects to this Interrogatory as it requests Irico to

13  provide facts and evidence of events that did not take place.

14  Subject to and without waiving its foregoing objections, Irico responds that this email

15  address was not used by an Irico employee during the course of their employment with Irico, nor

16  was the email domain "@irico.com.cn" maintained by Irico during the Relevant Period. Irico

17  issued and maintained email addresses with the domain @ch.com.cn during the Relevant Period.

18  Irico understands that this email domain (@irico.com.cn) was used by another company, China

19  National Electronics Import & Export Caihong Co. ("CNEIECC"), which was an independent

20  company that was not owned or controlled by Irico during the Relevant Period.

21  **RESPONSE RE: REQUEST FOR ADMISSION NO. 1X**

22  Irico further objects to this Interrogatory on the grounds that it is overbroad, unduly

23  burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and seeks

24  information that is maintained by and equally available to Plaintiffs or stated in publicly available

25  documents. Irico also objects to this Interrogatory on the grounds that it calls for a legal argument

26  or legal conclusion. Irico further objects to the use of the terms "unqualified" and "supporting"

27  because they are vague and ambiguous, rendering this Interrogatory overbroad, unduly

28  burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Irico

1  also objects to this Interrogatory to the extent it improperly tries to shift the evidentiary burden

2  that Plaintiffs alone carry to Irico. Irico further objects to this Interrogatory as it requests Irico to

3  provide facts and evidence of events that did not take place.

4        Subject to and without waiving its foregoing objections, Irico responds that this email

5  address was not used by an Irico employee during the course of their employment with Irico, nor

6  was the email domain "@irico.com.cn" maintained by Irico during the Relevant Period. Irico

7  issued and maintained email addresses with the domain @ch.com.cn during the Relevant Period.

8  Irico understands that this email domain (@irico.com.cn) was used by another company, China

9  National Electronics Import & Export Caihong Co. ("CNEIECC"), which was an independent

10  company that was not owned or controlled by Irico during the Relevant Period.

11                **RESPONSE RE: REQUEST FOR ADMISSION NO. 1Y**

12        Irico further objects to this Interrogatory on the grounds that it is overbroad, unduly

13  burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and seeks

14  information that is maintained by and equally available to Plaintiffs or stated in publicly available

15  documents. Irico also objects to this Interrogatory on the grounds that it calls for a legal argument

16  or legal conclusion. Irico further objects to the use of the terms "unqualified" and "supporting"

17  because they are vague and ambiguous, rendering this Interrogatory overbroad, unduly

18  burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Irico

19  also objects to this Interrogatory to the extent it improperly tries to shift the evidentiary burden

20  that Plaintiffs alone carry to Irico. Irico further objects to this Interrogatory as it requests Irico to

21  provide facts and evidence of events that did not take place.

22        Subject to and without waiving the objections stated above, Irico refers Plaintiffs to its

23  response to Request for Admission No. 1Y, which contains a complete basis for its response to

24  this Interrogatory.

25                **RESPONSE RE: REQUEST FOR ADMISSION NO. 1AA**

26        Irico further objects to this Interrogatory on the grounds that it is overbroad, unduly

27  burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and seeks

28  information that is maintained by and equally available to Plaintiffs or stated in publicly available

1   documents. Irico also objects to this Interrogatory on the grounds that it calls for a legal argument

2   or legal conclusion. Irico further objects to the use of the terms "unqualified" and "supporting"

3   because they are vague and ambiguous, rendering this Interrogatory overbroad, unduly

4   burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Irico

5   also objects to this Interrogatory to the extent it improperly tries to shift the evidentiary burden

6   that Plaintiffs alone carry to Irico. Irico further objects to this Interrogatory as it requests Irico to

7   provide facts and evidence of events that did not take place.

8       Subject to and without waiving the objections stated above, Irico refers Plaintiffs to its

9   response to Request for Admission No. 1AA, which contains a complete basis for its response to

10   this Interrogatory.

11   **RESPONSE RE: REQUEST FOR ADMISSION NO. 1BB**

12       Irico further objects to this Interrogatory on the grounds that it is overbroad, unduly

13   burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and seeks

14   information that is maintained by and equally available to Plaintiffs or stated in publicly available

15   documents. Irico also objects to this Interrogatory on the grounds that it calls for a legal argument

16   or legal conclusion. Irico further objects to the use of the terms "unqualified" and "supporting"

17   because they are vague and ambiguous, rendering this Interrogatory overbroad, unduly

18   burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Irico

19   also objects to this Interrogatory to the extent it improperly tries to shift the evidentiary burden

20   that Plaintiffs alone carry to Irico. Irico further objects to this Interrogatory as it requests Irico to

21   provide facts and evidence of events that did not take place.

22       Subject to and without waiving the objections stated above, Irico refers Plaintiffs to its

23   response to Request for Admission No. 1BB, which contains a complete basis for its response to

24   this Interrogatory.

25   **RESPONSE RE: REQUEST FOR ADMISSION NO. 2A**

26       Irico further objects to this Interrogatory on the grounds that it is overbroad, unduly

27   burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and seeks

28   information that is maintained by and equally available to Plaintiffs or stated in publicly available

1  documents. Irico also objects to this Interrogatory on the grounds that it calls for a legal argument

2  or legal conclusion. Irico further objects to the use of the terms "unqualified" and "supporting"

3  because they are vague and ambiguous, rendering this Interrogatory overbroad, unduly

4  burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Irico

5  also objects to this Interrogatory to the extent it improperly tries to shift the evidentiary burden

6  that Plaintiffs alone carry to Irico. Irico further objects to this Interrogatory as it requests Irico

7  provide facts and evidence of events that did not take place.

8      Subject to and without waiving its foregoing objections, Irico responds that this email

9  address was not used by an Irico employee during the course of their employment with Irico, nor

10  was the email domain "@irico.com.cn" maintained by Irico during the Relevant Period. Irico

11  issued and maintained email addresses with the domain @ch.com.cn during the Relevant Period.

12  Irico understands that this email domain (@irico.com.cn) was used by another company, China

13  National Electronics Import & Export Caihong Co. ("CNEIECC"), which was an independent

14  company that was not owned or controlled by Irico during the Relevant Period.

15  **RESPONSE RE: REQUEST FOR ADMISSION NO. 2B**

16      Irico further objects to this Interrogatory on the grounds that it is overbroad, unduly

17  burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and seeks

18  information that is maintained by and equally available to Plaintiffs or stated in publicly available

19  documents. Irico also objects to this Interrogatory on the grounds that it calls for a legal argument

20  or legal conclusion. Irico further objects to the use of the terms "unqualified" and "supporting"

21  because they are vague and ambiguous, rendering this Interrogatory overbroad, unduly

22  burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Irico

23  also objects to this Interrogatory to the extent it improperly tries to shift the evidentiary burden

24  that Plaintiffs alone carry to Irico. Irico further objects to this Interrogatory as it requests Irico

25  provide facts and evidence of events that did not take place.

26      Subject to and without waiving its foregoing objections, Irico responds that this email

27  address was not maintained by Irico during the Relevant Period. Irico issued and maintained

28  email addresses with the domain @ch.com.cn during the Relevant Period. Irico did not authorize

1   its employees to use non-Irico email addresses to conduct business, and Irico did not control this

2   email address in any way. Based on the foregoing, Irico cannot confirm that this email address

3   was used by an Irico "officer or employee."

4   **RESPONSE RE: REQUEST FOR ADMISSION NO. 2C**

5   Irico further objects to this Interrogatory on the grounds that it is overbroad, unduly

6   burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and seeks

7   information that is maintained by and equally available to Plaintiffs or stated in publicly available

8   documents. Irico also objects to this Interrogatory on the grounds that it calls for a legal argument

9   or legal conclusion. Irico further objects to the use of the terms "unqualified" and "supporting"

10  because they are vague and ambiguous, rendering this Interrogatory overbroad, unduly

11  burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Irico

12  also objects to this Interrogatory to the extent it improperly tries to shift the evidentiary burden

13  that Plaintiffs alone carry to Irico. Irico further objects to this Interrogatory as it requests Irico to

14  provide facts and evidence of events that did not take place.

15  Subject to and without waiving its foregoing objections, Irico responds that this email

16  address was not maintained by Irico during the Relevant Period. Irico issued and maintained

17  email addresses with the domain @ch.com.cn during the Relevant Period. Irico did not authorize

18  its employees to use non-Irico email addresses to conduct business, and Irico did not control this

19  email address in any way. Based on the foregoing, Irico cannot confirm that this email address

20  was used by an Irico "officer or employee."

21  **RESPONSE RE: REQUEST FOR ADMISSION NO. 2D**

22  Irico further objects to this Interrogatory on the grounds that it is overbroad, unduly

23  burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and seeks

24  information that is maintained by and equally available to Plaintiffs or stated in publicly available

25  documents. Irico also objects to this Interrogatory on the grounds that it calls for a legal argument

26  or legal conclusion. Irico further objects to the use of the terms "unqualified" and "supporting"

27  because they are vague and ambiguous, rendering this Interrogatory overbroad, unduly

28  burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Irico

1   also objects to this Interrogatory to the extent it improperly tries to shift the evidentiary burden

2   that Plaintiffs alone carry to Irico. Irico further objects to this Interrogatory as it requests Irico to

3   provide facts and evidence of events that did not take place.

4        Subject to and without waiving its foregoing objections, Irico responds that this email

5   address was not maintained by Irico during the Relevant Period. Irico issued and maintained

6   email addresses with the domain @ch.com.cn during the Relevant Period. Irico did not authorize

7   its employees to use non-Irico email addresses to conduct business, and Irico did not control this

8   email address in any way. Based on the foregoing, Irico cannot confirm that this email address

9   was used by an Irico "officer or employee."

10        **RESPONSE RE: REQUEST FOR ADMISSION NO. 2E**

11        Irico further objects to this Interrogatory on the grounds that it is overbroad, unduly

12   burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and seeks

13   information that is maintained by and equally available to Plaintiffs or stated in publicly available

14   documents. Irico also objects to this Interrogatory on the grounds that it calls for a legal argument

15   or legal conclusion. Irico further objects to the use of the terms "unqualified" and "supporting"

16   because they are vague and ambiguous, rendering this Interrogatory overbroad, unduly

17   burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Irico

18   also objects to this Interrogatory to the extent it improperly tries to shift the evidentiary burden

19   that Plaintiffs alone carry to Irico. Irico further objects to this Interrogatory as it requests Irico to

20   provide facts and evidence of events that did not take place.

21        Subject to and without waiving its foregoing objections, Irico responds that this email

22   address was not used by an Irico employee during the course of their employment with Irico, nor

23   was the email domain "@irico.com.cn" maintained by Irico during the Relevant Period. Irico

24   issued and maintained email addresses with the domain @ch.com.cn during the Relevant Period.

25   Irico understands that this email domain (@irico.com.cn) was used by another company, China

26   National Electronics Import & Export Caihong Co. ("CNEIECC"), which was an independent

27   company that was not owned or controlled by Irico during the Relevant Period.

28        **RESPONSE RE: REQUEST FOR ADMISSION NO. 2F**

1   Irico further objects to this Interrogatory on the grounds that it is overbroad, unduly

2   burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and seeks

3   information that is maintained by and equally available to Plaintiffs or stated in publicly available

4   documents. Irico also objects to this Interrogatory on the grounds that it calls for a legal argument

5   or legal conclusion. Irico further objects to the use of the terms "unqualified" and "supporting"

6   because they are vague and ambiguous, rendering this Interrogatory overbroad, unduly

7   burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Irico

8   also objects to this Interrogatory to the extent it improperly tries to shift the evidentiary burden

9   that Plaintiffs alone carry to Irico. Irico further objects to this Interrogatory as it requests Irico to

10  provide facts and evidence of events that did not take place.

11  Subject to and without waiving its foregoing objections, Irico responds that this email

12  address was not used by an Irico employee during the course of their employment with Irico, nor

13  was the email domain "@irico.com.cn" maintained by Irico during the Relevant Period. Irico

14  issued and maintained email addresses with the domain @ch.com.cn during the Relevant Period.

15  Irico understands that this email domain (@irico.com.cn) was used by another company, China

16  National Electronics Import & Export Caihong Co. ("CNEIECC"), which was an independent

17  company that was not owned or controlled by Irico during the Relevant Period.

18  **<u>RESPONSE RE: REQUEST FOR ADMISSION NO. 2G</u>**

19  Irico further objects to this Interrogatory on the grounds that it is overbroad, unduly

20  burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and seeks

21  information that is maintained by and equally available to Plaintiffs or stated in publicly available

22  documents. Irico also objects to this Interrogatory on the grounds that it calls for a legal argument

23  or legal conclusion. Irico further objects to the use of the terms "unqualified" and "supporting"

24  because they are vague and ambiguous, rendering this Interrogatory overbroad, unduly

25  burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Irico

26  also objects to this Interrogatory to the extent it improperly tries to shift the evidentiary burden

27  that Plaintiffs alone carry to Irico. Irico further objects to this Interrogatory as it requests Irico to

28  provide facts and evidence of events that did not take place.

1       Subject to and without waiving the objections stated above, Irico refers Plaintiffs to its

2  response to Request for Admission No. 2G, which contains a complete basis for its response to

3  this Interrogatory.

4      **RESPONSE RE: REQUEST FOR ADMISSION NO. 2H**

5       Irico further objects to this Interrogatory on the grounds that it is overbroad, unduly

6  burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and seeks

7  information that is maintained by and equally available to Plaintiffs or stated in publicly available

8  documents. Irico also objects to this Interrogatory on the grounds that it calls for a legal argument

9  or legal conclusion. Irico further objects to the use of the terms "unqualified" and "supporting"

10  because they are vague and ambiguous, rendering this Interrogatory overbroad, unduly

11  burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Irico

12  also objects to this Interrogatory to the extent it improperly tries to shift the evidentiary burden

13  that Plaintiffs alone carry to Irico. Irico further objects to this Interrogatory as it requests Irico to

14  provide facts and evidence of events that did not take place.

15       Subject to and without waiving the objections stated above, Irico refers Plaintiffs to its

16  response to Request for Admission No. 2H, which contains a complete basis for its response to

17  this Interrogatory.

18      **RESPONSE RE: REQUEST FOR ADMISSION NO. 2J**

19       Irico further objects to this Interrogatory on the grounds that it is overbroad, unduly

20  burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and seeks

21  information that is maintained by and equally available to Plaintiffs or stated in publicly available

22  documents. Irico also objects to this Interrogatory on the grounds that it calls for a legal argument

23  or legal conclusion. Irico further objects to the use of the terms "unqualified" and "supporting"

24  because they are vague and ambiguous, rendering this Interrogatory overbroad, unduly

25  burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Irico

26  also objects to this Interrogatory to the extent it improperly tries to shift the evidentiary burden

27  that Plaintiffs alone carry to Irico. Irico further objects to this Interrogatory as it requests Irico to

28  provide facts and evidence of events that did not take place.

1    Subject to and without waiving the objections stated above, Irico refers Plaintiffs to its

2    response to Request for Admission No. 2J, which contains a complete basis for its response to this

3    Interrogatory.

4         **RESPONSE RE: REQUEST FOR ADMISSION NO. 2K**

5    Irico further objects to this Interrogatory on the grounds that it is overbroad, unduly

6    burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and seeks

7    information that is maintained by and equally available to Plaintiffs or stated in publicly available

8    documents. Irico also objects to this Interrogatory on the grounds that it calls for a legal argument

9    or legal conclusion. Irico further objects to the use of the terms "unqualified" and "supporting"

10   because they are vague and ambiguous, rendering this Interrogatory overbroad, unduly

11   burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Irico

12   also objects to this Interrogatory to the extent it improperly tries to shift the evidentiary burden

13   that Plaintiffs alone carry to Irico. Irico further objects to this Interrogatory as it requests Irico to

14   provide facts and evidence of events that did not take place.

15   Subject to and without waiving the objections stated above, Irico refers Plaintiffs to its

16   response to Request for Admission No. 2K, which contains a complete basis for its response to

17   this Interrogatory.

18        **RESPONSE RE: REQUEST FOR ADMISSION NO. 2L**

19   Irico further objects to this Interrogatory on the grounds that it is overbroad, unduly

20   burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and seeks

21   information that is maintained by and equally available to Plaintiffs or stated in publicly available

22   documents. Irico also objects to this Interrogatory on the grounds that it calls for a legal argument

23   or legal conclusion. Irico further objects to the use of the terms "unqualified" and "supporting"

24   because they are vague and ambiguous, rendering this Interrogatory overbroad, unduly

25   burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Irico

26   also objects to this Interrogatory to the extent it improperly tries to shift the evidentiary burden

27   that Plaintiffs alone carry to Irico. Irico further objects to this Interrogatory as it requests Irico to

28   provide facts and evidence of events that did not take place.

1    Subject to and without waiving the objections stated above, Irico refers Plaintiffs to its

2    response to Request for Admission No. 2L, which contains a complete basis for its response to

3    this Interrogatory.

4    **RESPONSE RE: REQUEST FOR ADMISSION NO. 2M**

5    Irico further objects to this Interrogatory on the grounds that it is overbroad, unduly

6    burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and seeks

7    information that is maintained by and equally available to Plaintiffs or stated in publicly available

8    documents. Irico also objects to this Interrogatory on the grounds that it calls for a legal argument

9    or legal conclusion. Irico further objects to the use of the terms "unqualified" and "supporting"

10   because they are vague and ambiguous, rendering this Interrogatory overbroad, unduly

11   burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Irico

12   also objects to this Interrogatory to the extent it improperly tries to shift the evidentiary burden

13   that Plaintiffs alone carry to Irico. Irico further objects to this Interrogatory as it requests Irico to

14   provide facts and evidence of events that did not take place.

15   Subject to and without waiving its foregoing objections, Irico responds that this email

16   address was not used by an Irico employee during the course of their employment with Irico, nor

17   was the email domain "@irico.com.cn" maintained by Irico during the Relevant Period. Irico

18   issued and maintained email addresses with the domain @ch.com.cn during the Relevant Period.

19   Irico understands that this email domain (@irico.com.cn) was used by another company, China

20   National Electronics Import & Export Caihong Co. ("CNEIECC"), which was an independent

21   company that was not owned or controlled by Irico during the Relevant Period.

22   **RESPONSE RE: REQUEST FOR ADMISSION NO. 2N**

23   Irico further objects to this Interrogatory on the grounds that it is overbroad, unduly

24   burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and seeks

25   information that is maintained by and equally available to Plaintiffs or stated in publicly available

26   documents. Irico also objects to this Interrogatory on the grounds that it calls for a legal argument

27   or legal conclusion. Irico further objects to the use of the terms "unqualified" and "supporting"

28   because they are vague and ambiguous, rendering this Interrogatory overbroad, unduly

1   burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Irico

2   also objects to this Interrogatory to the extent it improperly tries to shift the evidentiary burden

3   that Plaintiffs alone carry to Irico. Irico further objects to this Interrogatory as it requests Irico

4   provide facts and evidence of events that did not take place.

5        Subject to and without waiving its foregoing objections, Irico responds that this email

6   address was not used by an Irico employee during the course of their employment with Irico, nor

7   was the email domain "@irico.com.cn" maintained by Irico during the Relevant Period. Irico

8   issued and maintained email addresses with the domain @ch.com.cn during the Relevant Period.

9   Irico understands that this email domain (@irico.com.cn) was used by another company, China

10  National Electronics Import & Export Caihong Co. ("CNEIECC"), which was an independent

11  company that was not owned or controlled by Irico during the Relevant Period.

12       **RESPONSE RE: REQUEST FOR ADMISSION NO. 2P**

13       Irico further objects to this Interrogatory on the grounds that it is overbroad, unduly

14  burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and seeks

15  information that is maintained by and equally available to Plaintiffs or stated in publicly available

16  documents. Irico also objects to this Interrogatory on the grounds that it calls for a legal argument

17  or legal conclusion. Irico further objects to the use of the terms "unqualified" and "supporting"

18  because they are vague and ambiguous, rendering this Interrogatory overbroad, unduly

19  burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Irico

20  also objects to this Interrogatory to the extent it improperly tries to shift the evidentiary burden

21  that Plaintiffs alone carry to Irico. Irico further objects to this Interrogatory as it requests Irico

22  provide facts and evidence of events that did not take place.

23       Subject to and without waiving the objections stated above, Irico refers Plaintiffs to its

24  response to Request for Admission No. 2P, which contains a complete basis for its response to

25  this Interrogatory.

26       **RESPONSE RE: REQUEST FOR ADMISSION NO. 2Q**

27       Irico further objects to this Interrogatory on the grounds that it is overbroad, unduly

28  burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and seeks

---

1  information that is maintained by and equally available to Plaintiffs or stated in publicly available

2  documents. Irico also objects to this Interrogatory on the grounds that it calls for a legal argument

3  or legal conclusion. Irico further objects to the use of the terms "unqualified" and "supporting"

4  because they are vague and ambiguous, rendering this Interrogatory overbroad, unduly

5  burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Irico

6  also objects to this Interrogatory to the extent it improperly tries to shift the evidentiary burden

7  that Plaintiffs alone carry to Irico. Irico further objects to this Interrogatory as it requests Irico to

8  provide facts and evidence of events that did not take place.

9       Subject to and without waiving its foregoing objections, Irico responds that this email

10  address was not used by an Irico employee during the course of their employment with Irico, nor

11  was the email domain "@irico.com.cn" maintained by Irico during the Relevant Period. Irico

12  issued and maintained email addresses with the domain @ch.com.cn during the Relevant Period.

13  Irico understands that this email domain (@irico.com.cn) was used by another company, China

14  National Electronics Import & Export Caihong Co. ("CNEIECC"), which was an independent

15  company that was not owned or controlled by Irico during the Relevant Period.

16       **RESPONSE RE: REQUEST FOR ADMISSION NO. 2R**

17       Irico further objects to this Interrogatory on the grounds that it is overbroad, unduly

18  burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and seeks

19  information that is maintained by and equally available to Plaintiffs or stated in publicly available

20  documents. Irico also objects to this Interrogatory on the grounds that it calls for a legal argument

21  or legal conclusion. Irico further objects to the use of the terms "unqualified" and "supporting"

22  because they are vague and ambiguous, rendering this Interrogatory overbroad, unduly

23  burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Irico

24  also objects to this Interrogatory to the extent it improperly tries to shift the evidentiary burden

25  that Plaintiffs alone carry to Irico. Irico further objects to this Interrogatory as it requests Irico to

26  provide facts and evidence of events that did not take place.

27       Subject to and without waiving the objections stated above, Irico refers Plaintiffs to its

28  response to Request for Admission No. 2R, which contains a complete basis for its response to

1   this Interrogatory.

2   **RESPONSE RE: REQUEST FOR ADMISSION NO. 2T**

3       Irico further objects to this Interrogatory on the grounds that it is overbroad, unduly

4   burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and seeks

5   information that is maintained by and equally available to Plaintiffs or stated in publicly available

6   documents. Irico also objects to this Interrogatory on the grounds that it calls for a legal argument

7   or legal conclusion. Irico further objects to the use of the terms "unqualified" and "supporting"

8   because they are vague and ambiguous, rendering this Interrogatory overbroad, unduly

9   burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Irico

10  also objects to this Interrogatory to the extent it improperly tries to shift the evidentiary burden

11  that Plaintiffs alone carry to Irico. Irico further objects to this Interrogatory as it requests Irico to

12  provide facts and evidence of events that did not take place.

13      Subject to and without waiving the objections stated above, Irico refers Plaintiffs to its

14  response to Request for Admission No. 2T, which contains a complete basis for its response to

15  this Interrogatory.

16  **RESPONSE RE: REQUEST FOR ADMISSION NO. 2U**

17      Irico further objects to this Interrogatory on the grounds that it is overbroad, unduly

18  burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and seeks

19  information that is maintained by and equally available to Plaintiffs or stated in publicly available

20  documents. Irico also objects to this Interrogatory on the grounds that it calls for a legal argument

21  or legal conclusion. Irico further objects to the use of the terms "unqualified" and "supporting"

22  because they are vague and ambiguous, rendering this Interrogatory overbroad, unduly

23  burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Irico

24  also objects to this Interrogatory to the extent it improperly tries to shift the evidentiary burden

25  that Plaintiffs alone carry to Irico. Irico further objects to this Interrogatory as it requests Irico to

26  provide facts and evidence of events that did not take place.

27      Subject to and without waiving the objections stated above, Irico refers Plaintiffs to its

28  response to Request for Admission No. 2U, which contains a complete basis for its response to

1    this Interrogatory.

2    **RESPONSE RE: REQUEST FOR ADMISSION NO. 2V**

3    Irico further objects to this Interrogatory on the grounds that it is overbroad, unduly

4    burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and seeks

5    information that is maintained by and equally available to Plaintiffs or stated in publicly available

6    documents. Irico also objects to this Interrogatory on the grounds that it calls for a legal argument

7    or legal conclusion. Irico further objects to the use of the terms "unqualified" and "supporting"

8    because they are vague and ambiguous, rendering this Interrogatory overbroad, unduly

9    burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Irico

10   also objects to this Interrogatory to the extent it improperly tries to shift the evidentiary burden

11   that Plaintiffs alone carry to Irico. Irico further objects to this Interrogatory as it requests Irico to

12   provide facts and evidence of events that did not take place.

13   Subject to and without waiving its foregoing objections, Irico responds that this email

14   address was not used by an Irico employee during the course of their employment with Irico, nor

15   was the email domain "@irico.com.cn" maintained by Irico during the Relevant Period. Irico

16   issued and maintained email addresses with the domain @ch.com.cn during the Relevant Period.

17   Irico understands that this email domain (@irico.com.cn) was used by another company, China

18   National Electronics Import & Export Caihong Co. ("CNEIECC"), which was an independent

19   company that was not owned or controlled by Irico during the Relevant Period.

20   **RESPONSE RE: REQUEST FOR ADMISSION NO. 2X**

21   Irico further objects to this Interrogatory on the grounds that it is overbroad, unduly

22   burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and seeks

23   information that is maintained by and equally available to Plaintiffs or stated in publicly available

24   documents. Irico also objects to this Interrogatory on the grounds that it calls for a legal argument

25   or legal conclusion. Irico further objects to the use of the terms "unqualified" and "supporting"

26   because they are vague and ambiguous, rendering this Interrogatory overbroad, unduly

27   burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Irico

28   also objects to this Interrogatory to the extent it improperly tries to shift the evidentiary burden

1  that Plaintiffs alone carry to Irico. Irico further objects to this Interrogatory as it requests Irico to

2  provide facts and evidence of events that did not take place.

3        Subject to and without waiving its foregoing objections, Irico responds that this email

4  address was not used by an Irico employee during the course of their employment with Irico, nor

5  was the email domain "@irico.com.cn" maintained by Irico during the Relevant Period. Irico

6  issued and maintained email addresses with the domain @ch.com.cn during the Relevant Period.

7  Irico understands that this email domain (@irico.com.cn) was used by another company, China

8  National Electronics Import & Export Caihong Co. ("CNEIECC"), which was an independent

9  company that was not owned or controlled by Irico during the Relevant Period.

10  **RESPONSE RE: REQUEST FOR ADMISSION NO. 2Y**

11        Irico further objects to this Interrogatory on the grounds that it is overbroad, unduly

12  burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and seeks

13  information that is maintained by and equally available to Plaintiffs or stated in publicly available

14  documents. Irico also objects to this Interrogatory on the grounds that it calls for a legal argument

15  or legal conclusion. Irico further objects to the use of the terms "unqualified" and "supporting"

16  because they are vague and ambiguous, rendering this Interrogatory overbroad, unduly

17  burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Irico

18  also objects to this Interrogatory to the extent it improperly tries to shift the evidentiary burden

19  that Plaintiffs alone carry to Irico. Irico further objects to this Interrogatory as it requests Irico to

20  provide facts and evidence of events that did not take place.

21        Subject to and without waiving the objections stated above, Irico refers Plaintiffs to its

22  response to Request for Admission No. 2Y, which contains a complete basis for its response to

23  this Interrogatory.

24  **RESPONSE RE: REQUEST FOR ADMISSION NO. 2AA**

25        Irico further objects to this Interrogatory on the grounds that it is overbroad, unduly

26  burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and seeks

27  information that is maintained by and equally available to Plaintiffs or stated in publicly available

28  documents. Irico also objects to this Interrogatory on the grounds that it calls for a legal argument

1  or legal conclusion. Irico further objects to the use of the terms "unqualified" and "supporting"

2  because they are vague and ambiguous, rendering this Interrogatory overbroad, unduly

3  burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Irico

4  also objects to this Interrogatory to the extent it improperly tries to shift the evidentiary burden

5  that Plaintiffs alone carry to Irico. Irico further objects to this Interrogatory as it requests Irico

6  provide facts and evidence of events that did not take place.

7         Subject to and without waiving the objections stated above, Irico refers Plaintiffs to its

8  response to Request for Admission No. 2AA, which contains a complete basis for its response to

9  this Interrogatory.

10        **RESPONSE RE: REQUEST FOR ADMISSION NO. 2B**

11        Irico further objects to this Interrogatory on the grounds that it is overbroad, unduly

12  burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and seeks

13  information that is maintained by and equally available to Plaintiffs or stated in publicly available

14  documents. Irico also objects to this Interrogatory on the grounds that it calls for a legal argument

15  or legal conclusion. Irico further objects to the use of the terms "unqualified" and "supporting"

16  because they are vague and ambiguous, rendering this Interrogatory overbroad, unduly

17  burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Irico

18  also objects to this Interrogatory to the extent it improperly tries to shift the evidentiary burden

19  that Plaintiffs alone carry to Irico. Irico further objects to this Interrogatory as it requests Irico

20  provide facts and evidence of events that did not take place.

21        Subject to and without waiving the objections stated above, Irico refers Plaintiffs to its

22  response to Request for Admission No. 2B, which contains a complete basis for its response to

23  this Interrogatory.

24        **RESPONSE RE: REQUEST FOR ADMISSION NO. 5A**

25        Irico further objects to this Interrogatory on the grounds that it is overbroad, unduly

26  burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and seeks

27  information that is maintained by and equally available to Plaintiffs or stated in publicly available

28  documents. Irico also objects to this Interrogatory on the grounds that it calls for a legal argument

---

1    or legal conclusion. Irico further objects to the use of the terms "unqualified" and "supporting"

2    because they are vague and ambiguous, rendering this Interrogatory overbroad, unduly

3    burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Irico

4    also objects to this Interrogatory to the extent it improperly tries to shift the evidentiary burden

5    that Plaintiffs alone carry to Irico. Irico further objects to this Interrogatory as it requests Irico to

6    provide facts and evidence of events that did not take place.

7        Subject to and without waiving its foregoing objections, Irico responds that this business

8    card was not used by an Irico employee during the course of their employment with Irico during

9    the Relevant Period. These business cards appear to have been issued by another company, China

10   National Electronics Import & Export Caihong Co. ("CNEIECC"), which was an independent

11   company that was not owned or controlled by Irico during the Relevant Period.

12   **RESPONSE RE: REQUEST FOR ADMISSION NO. 5B**

13       Irico further objects to this Interrogatory on the grounds that it is overbroad, unduly

14   burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and seeks

15   information that is maintained by and equally available to Plaintiffs or stated in publicly available

16   documents. Irico also objects to this Interrogatory on the grounds that it calls for a legal argument

17   or legal conclusion. Irico further objects to the use of the terms "unqualified" and "supporting"

18   because they are vague and ambiguous, rendering this Interrogatory overbroad, unduly

19   burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Irico

20   also objects to this Interrogatory to the extent it improperly tries to shift the evidentiary burden

21   that Plaintiffs alone carry to Irico.

22       Subject to and without waiving the objections stated above, Irico refers Plaintiffs to its

23   response to Request for Admission No. 5B, which contains a complete basis for its response to

24   this Interrogatory.

25   **RESPONSE RE: REQUEST FOR ADMISSION NO. 5C**

26       Irico further objects to this Interrogatory on the grounds that it is overbroad, unduly

27   burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and seeks

28   information that is maintained by and equally available to Plaintiffs or stated in publicly available

1   documents. Irico also objects to this Interrogatory on the grounds that it calls for a legal argument

2   or legal conclusion. Irico further objects to the use of the terms "unqualified" and "supporting"

3   because they are vague and ambiguous, rendering this Interrogatory overbroad, unduly

4   burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Irico

5   also objects to this Interrogatory to the extent it improperly tries to shift the evidentiary burden

6   that Plaintiffs alone carry to Irico. Irico further objects to this Interrogatory as it requests Irico to

7   provide facts and evidence of events that did not take place.

8          Subject to and without waiving its foregoing objections, Irico responds that this business

9   card was not used by an Irico employee during the course of their employment with Irico during

10  the Relevant Period. These business cards appear to have been issued by another company, China

11  National Electronics Import & Export Caihong Co. ("CNEIECC"), which was an independent

12  company that was not owned or controlled by Irico during the Relevant Period.

13  **<u>RESPONSE RE: REQUEST FOR ADMISSION NO. 5D</u>**

14         Irico further objects to this Interrogatory on the grounds that it is overbroad, unduly

15  burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and seeks

16  information that is maintained by and equally available to Plaintiffs or stated in publicly available

17  documents. Irico also objects to this Interrogatory on the grounds that it calls for a legal argument

18  or legal conclusion. Irico further objects to the use of the terms "unqualified" and "supporting"

19  because they are vague and ambiguous, rendering this Interrogatory overbroad, unduly

20  burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Irico

21  also objects to this Interrogatory to the extent it improperly tries to shift the evidentiary burden

22  that Plaintiffs alone carry to Irico. Irico further objects to this Interrogatory as it requests Irico to

23  provide facts and evidence of events that did not take place.

24         Subject to and without waiving its foregoing objections, Irico responds that this business

25  card was not used by an Irico employee during the course of their employment with Irico during

26  the Relevant Period. These business cards appear to have been issued by another company, China

27  National Electronics Import & Export Caihong Co. ("CNEIECC"), which was an independent

28  company that was not owned or controlled by Irico during the Relevant Period.

1    **<u>RESPONSE RE: REQUEST FOR ADMISSION NO. 6A</u>**

2         Irico further objects to this Interrogatory on the grounds that it is overbroad, unduly

3    burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and seeks

4    information that is maintained by and equally available to Plaintiffs or stated in publicly available

5    documents. Irico also objects to this Interrogatory on the grounds that it calls for a legal argument

6    or legal conclusion. Irico further objects to the use of the terms "unqualified" and "supporting"

7    because they are vague and ambiguous, rendering this Interrogatory overbroad, unduly

8    burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Irico

9    also objects to this Interrogatory to the extent it improperly tries to shift the evidentiary burden

10   that Plaintiffs alone carry to Irico. Irico further objects to this Interrogatory as it requests Irico to

11   provide facts and evidence of events that did not take place.

12        Subject to and without waiving its foregoing objections, Irico responds that this business

13   card was not used by an Irico employee during the course of their employment with Irico during

14   the Relevant Period. These business cards appear to have been issued by another company, China

15   National Electronics Import & Export Caihong Co. ("CNEIECC"), which was an independent

16   company that was not owned or controlled by Irico during the Relevant Period.

17   **<u>RESPONSE RE: REQUEST FOR ADMISSION NO. 6C</u>**

18        Irico further objects to this Interrogatory on the grounds that it is overbroad, unduly

19   burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and seeks

20   information that is maintained by and equally available to Plaintiffs or stated in publicly available

21   documents. Irico also objects to this Interrogatory on the grounds that it calls for a legal argument

22   or legal conclusion. Irico further objects to the use of the terms "unqualified" and "supporting"

23   because they are vague and ambiguous, rendering this Interrogatory overbroad, unduly

24   burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Irico

25   also objects to this Interrogatory to the extent it improperly tries to shift the evidentiary burden

26   that Plaintiffs alone carry to Irico. Irico further objects to this Interrogatory as it requests Irico to

27   provide facts and evidence of events that did not take place.

28        Subject to and without waiving its foregoing objections, Irico responds that this business

1   card was not used by an Irico employee during the course of their employment with Irico during

2   the Relevant Period. These business cards appear to have been issued by another company, China

3   National Electronics Import & Export Caihong Co. ("CNEIECC"), which was an independent

4   company that was not owned or controlled by Irico during the Relevant Period.

5   **RESPONSE RE: REQUEST FOR ADMISSION NO. 6D**

6         Irico further objects to this Interrogatory on the grounds that it is overbroad, unduly

7   burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and seeks

8   information that is maintained by and equally available to Plaintiffs or stated in publicly available

9   documents. Irico also objects to this Interrogatory on the grounds that it calls for a legal argument

10  or legal conclusion. Irico further objects to the use of the terms "unqualified" and "supporting"

11  because they are vague and ambiguous, rendering this Interrogatory overbroad, unduly

12  burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Irico

13  also objects to this Interrogatory to the extent it improperly tries to shift the evidentiary burden

14  that Plaintiffs alone carry to Irico. Irico further objects to this Interrogatory as it requests Irico to

15  provide facts and evidence of events that did not take place.

16        Subject to and without waiving its foregoing objections, Irico responds that this business

17  card was not used by an Irico employee during the course of their employment with Irico during

18  the Relevant Period. These business cards appear to have been issued by another company, China

19  National Electronics Import & Export Caihong Co. ("CNEIECC"), which was an independent

20  company that was not owned or controlled by Irico during the Relevant Period.

21  **RESPONSE RE: REQUEST FOR ADMISSION NO. 7**

22        Irico further objects to this Interrogatory on the grounds that it is overbroad, unduly

23  burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and seeks

24  information that is maintained by and equally available to Plaintiffs or stated in publicly available

25  documents. Irico also objects to this Interrogatory on the grounds that it calls for a legal argument

26  or legal conclusion. Irico further objects to the use of the terms "unqualified" and "supporting"

27  because they are vague and ambiguous, rendering this Interrogatory overbroad, unduly

28  burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

1    Subject to and without waiving its foregoing objections, Irico responds that it has already

2    detailed its efforts to discover the status of documents around the time that Irico received

3    Plaintiffs' Complaint on December 25, 2007 and refers Plaintiffs to the Irico Defendants'

4    Supplemental Responses to Indirect Purchaser Plaintiffs Third Set of Interrogatories, January 21,

5    2022.

6    **RESPONSE RE: REQUEST FOR ADMISSION NO. 8**

7    Irico further objects to this Interrogatory on the grounds that it is overbroad, unduly

8    burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and seeks

9    information that is maintained by and equally available to Plaintiffs or stated in publicly available

10   documents. Irico also objects to this Interrogatory on the grounds that it calls for a legal argument

11   or legal conclusion. Irico further objects to the use of the terms "unqualified" and "supporting"

12   because they are vague and ambiguous, rendering this Interrogatory overbroad, unduly

13   burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

14   Subject to and without waiving its foregoing objections, Irico responds that it has already

15   detailed its efforts to discover the status of documents in mid-2008 and refers Plaintiffs to the

16   Irico Defendants' Supplemental Responses to Indirect Purchaser Plaintiffs Third Set of

17   Interrogatories, January 21, 2022.

18   **RESPONSE RE: REQUEST FOR ADMISSION NOS. 10-15**

19   Irico further objects to this Interrogatory on the grounds that it is overbroad, unduly

20   burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and seeks

21   information that is maintained by and equally available to Plaintiffs or stated in publicly available

22   documents. Irico also objects to this Interrogatory on the grounds that it calls for a legal argument

23   or legal conclusion. Irico further objects to the use of the terms "unqualified" and "supporting"

24   because they are vague and ambiguous, rendering this Interrogatory overbroad, unduly

25   burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Irico

26   also objects to this Interrogatory to the extent it improperly tries to shift the evidentiary burden

27   that Plaintiffs alone carry to Irico. Irico further objects to this Interrogatory as it requests Irico to

28   provide facts and evidence of events that did not take place.

1    Subject to and without waiving the objections stated above, Irico refers Plaintiffs to its

2   responses to Request for Admission Nos. 10 through 15, which contain a complete basis for its

3   response to this Interrogatory.

4    **RESPONSE RE: REQUEST FOR ADMISSION NO. 16**

5    Irico further objects to this Interrogatory on the grounds that it is overbroad, unduly

6   burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and seeks

7   information that is maintained by and equally available to Plaintiffs or stated in publicly available

8   documents. Irico also objects to this Interrogatory on the grounds that it calls for a legal argument

9   or legal conclusion. Irico further objects to the use of the terms "unqualified" and "supporting"

10  because they are vague and ambiguous, rendering this Interrogatory overbroad, unduly

11  burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Irico

12  also objects to this Interrogatory to the extent it improperly tries to shift the evidentiary burden

13  that Plaintiffs alone carry to Irico. Irico further objects to this Interrogatory as it requests Irico to

14  provide facts and evidence of events that did not take place.

15    Subject to and without waiving its foregoing objections, Irico refers Plaintiffs to the

16  following evidence under FRCP 33(d): Irico Defendants' Sixth Supplemental Objections and

17  Responses to Direct Purchaser Plaintiffs' First Set of Interrogatories, January 7, 2022; Irico

18  Defendants' Third Supplemental Objections and Responses to Indirect Purchaser Plaintiffs' First

19  Set of Interrogatories, January 7, 2022; Irico Defendants' Supplemental Objections and

20  Responses to Indirect Purchaser Plaintiffs' Third Set of Interrogatories to Irico Group Corporation

21  and Irico Display Devices Co., Ltd., January 21, 2022; Rule 30(b)(6) Deposition of Irico Group

22  Corp. and Irico Display Devices Co., Ltd., March 6-8, 2019.

23    Irico identifies the following persons with knowledge regarding this Interrogatory: Wang

24  Zhaojie and Su Xiaohua.

25    **RESPONSE RE: REQUEST FOR ADMISSION NOS. 17-26**

26    Irico further objects to this Interrogatory on the grounds that it is overbroad, unduly

27  burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and seeks

28  information that is maintained by and equally available to Plaintiffs or stated in publicly available

1    documents. Irico also objects to this Interrogatory on the grounds that it calls for a legal argument

2    or legal conclusion. Irico further objects to the use of the terms "unqualified" and "supporting"

3    because they are vague and ambiguous, rendering this Interrogatory overbroad, unduly

4    burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Irico

5    also objects to this Interrogatory to the extent it improperly tries to shift the evidentiary burden

6    that Plaintiffs alone carry to Irico. Irico further objects to this Interrogatory as it requests Irico to

7    provide facts and evidence of events that did not take place.

8         Subject to and without waiving the objections stated above, Irico refers Plaintiffs to its

9    responses to Request for Admission Nos. 17 through 26, which contain a complete basis for its

10   response to this Interrogatory.

11        **RESPONSE RE: REQUEST FOR ADMISSION NOS. 27-32**

12        Irico further objects to this Interrogatory on the grounds that it is overbroad, unduly

13   burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and seeks

14   information that is maintained by and equally available to Plaintiffs or stated in publicly available

15   documents. Irico also objects to this Interrogatory on the grounds that it calls for a legal argument

16   or legal conclusion. Irico further objects to the use of the terms "unqualified" and "supporting"

17   because they are vague and ambiguous, rendering this Interrogatory overbroad, unduly

18   burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Irico

19   also objects to this Interrogatory to the extent it improperly tries to shift the evidentiary burden

20   that Plaintiffs alone carry to Irico. Irico further objects to this Interrogatory as it requests Irico to

21   provide facts and evidence of events that did not take place.

22        Subject to and without waiving the objections stated above, Irico refers Plaintiffs to its

23   responses to Request for Admission Nos. 27 through 32, which contain a complete basis for its

24   response to this Interrogatory.

25

26   Dated:  February 23, 2022                    BAKER BOTTS L.L.P.

27

28                                               */s/ John M. Taladay*

---

John M. Taladay (*pro hac vice*)
Evan J. Werbel (*pro hac vice*)
Thomas E. Carter (*pro hac vice*)
Andrew L. Lucarelli (*pro hac vice*)
700 K Street, N.W.
Washington, D.C. 20001
(202)-639-7700
(202)-639-7890 (fax)
Email: john.taladay@bakerbotts.com
        evan.werbel@bakerbotts.com
        tom.carter@bakerbotts.com
        drew.lucarelli@bakerbotts.com

Jonathan Shapiro (State Bar No. 257199)
101 California Street, Suite 3600
San Francisco, California 94111
(415) 291-6200
(415) 291-6300 (fax)
Email: jonathan.shapiro@bakerbotts.com


*Attorneys for Defendants*
*IRICO GROUP CORP. and*
*IRICO DISPLAY DEVICES CO., LTD.*

# Exhibit 19

BAKER BOTTS L.L.P.
John M. Taladay (*pro hac vice*)
Evan J. Werbel (*pro hac vice*)
Thomas E. Carter (*pro hac vice*)
Andrew L. Lucarelli (*pro hac vice*)
700 K Street, N.W.
Washington, D.C. 20001
(202) 639-7700
(202) 639-7890 (fax)
Email: john.taladay@bakerbotts.com
        evan.werbel@bakerbotts.com
        tom.carter@bakerbotts.com
        drew.lucarelli@bakerbotts.com

*Attorneys for Defendants*
*Irico Group Corp. and*
*Irico Display Devices Co., Ltd.*

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION, | Master File No. 07-cv-05944-JST |
| | MDL No.: 1917 |
| THIS DOCUMENT RELATES TO: | |
| *ALL DIRECT PURCHASER ACTIONS* | **DECLARATION OF ZHANG WENKAI IN SUPPORT OF DEFENDANTS IRICO GROUP CORP. AND IRICO DISPLAY DEVICES CO., LTD.'S EMERGENCY MOTION FOR RELIEF FROM SCHEDULING ORDER (CIV. L.R. 16-2(d))** |
| *ALL INDIRECT PURCHASER ACTIONS* | |

I, Zhang Wenkai, declare as follows:

1.      I am a citizen of the People's Republic of China and reside in Shaanxi Province, People's Republic of China.

2.      I make this declaration in support of the Motion for Relief from Scheduling Order filed by Irico Group Corp. ("Irico Group") and Irico Display Devices Co., Ltd.'s ("Irico Display," collectively, the "Irico Defendants").

3.      I am currently the Deputy General Counsel for Irico Group Corp. and have been involved in the day-to-day management of this litigation since I started with the company in September 2017. I have also been involved with the coordination of the depositions for Irico witnesses Wang Zhaojie and Su Xiaohua since August 2021, and the deposition of Yan Yunlong since December 2021.

4.      I understand that, until earlier this week, under the pandemic protection requirements of the health department of Shaanxi Province, People's Republic of China, where the Irico Defendants are headquartered, any witnesses returning from Macau would have been subject to quarantine obligations consisting of a minimum of twenty-one days in a government-run facility and an additional seven days of home confinement ("21+7 Day Policy"). I further understand that on June 27, 2022, based on a recent change in the national pandemic prevention policy, the Shaanxi provincial authorities updated their quarantine provisions to require a minimum of fourteen days in a government-run facility and an additional seven days of home confinement ("14+7 Day Policy"). It is also my understanding that these times can be increased at the sole discretion of the Shaanxi Province authorities.

5.      I worked with Wang Zhaojie, Su Xiaohua, and Yan Yunlong during the process of applying for the visas necessary to travel to Macau in May 2022. All three witnesses cooperated during this process, including providing all necessary information and documentation required to obtain the visas.

6.      Su Xiaohua formally resigned from Irico on May 25, 2022. I contacted Mr. Su and learned that Mr. Su resigned because he refused to travel to Macau for a deposition given the severe quarantine requirements that he would face upon his return to mainland China (21+7

Policy) and his ongoing care of his elderly mother.

7.     On June 8, 2022, Irico received visas authorizing Wang Zhaojie, Su Xiaohua, and Yan Yunlong to travel to Macau for the depositions.

8.     After Irico obtained the travel visas, Wang Zhaojie informed me that he would not agree to travel to Macau for his deposition. Mr. Wang cited concerns about the 21+7 Day Policy and the resulting impacts to his family and ongoing work obligations as reasons for his refusal. The recent change to the 14+7 Day Policy has not changed Mr. Wang's decision regarding the travel for the deposition at this time. Mr. Wang informed me that he was willing to travel to Macau once the quarantine restrictions had been lifted.

9.     Additionally, Yan Yunlong informed me that he would not agree to travel to Macau for his deposition after the visas were obtained. Mr. Yan cited similar concerns about the 21+7 Day Policy and how that would impact Mr. Yan's ability to care for his elderly father who is currently hospitalized. Mr. Yan has been regularly traveling to the hospital to assist in his father's care. Mr. Yan also cited concerns about the impact to the company given his role as General Counsel. The recent change to the 14+7 Day Policy has not changed Mr. Yan's decision regarding the travel for the deposition at this time. Mr. Yan informed me that he was willing to travel to Macau once the quarantine restrictions had been lifted.

10.     After Mr. Wang and Mr. Yan initially refused to travel to Macau, Irico made assurances to Mr. Wang and Mr. Yan that their work obligations will be covered by other employees, that Irico will cover all quarantine-related expenses for 21 days, that Irico will compensate the witnesses at double their normal pay rate, and that Irico will give the witnesses a bonus financial incentive as a result of the over one-month continuous period that the witness will be required to be separated from their families. Mr. Wang and Mr. Yan still refuse to travel to Macau at this time.

Executed this 30th day of June, 2022, in Xianyang, Shaanxi Province, People's Republic of China.

_____

Mr. Zhang Wenkai

# Exhibit 20
# FILED UNDER SEAL

# Exhibit 21
# FILED UNDER SEAL

# Exhibit 22
# FILED UNDER SEAL

# Exhibit 23
# FILED UNDER SEAL

# Exhibit 24
# FILED UNDER SEAL

# Exhibit 25
# FILED UNDER SEAL

# Exhibit 26



info@certifiedtranslate.com
www.certifiedtranslate.com

2425 Olympic Blvd., Suite 4000W
Santa Monica, CA 90404

usa 1-888-856-2228
int +1-310-684-3153
fax +1-310-564-1944



**A member of the American
Translators Association
ATA Member Number: 248719**

# CERTIFIED TRANSLATION

*Description of Document(s):*

| |
|---|
| **CHAT MESSAGES** |
| |
| **IRI-SU-000199, IRI-SU-000165** |
| |

| Source Language: **CHINESE** | Target Language: **ENGLISH** |
|---|---|

WITH REFERENCE TO THE ABOVE MENTIONED MATERIALS/DOCUMENTS, we at Language Fish LLC (doing business as www.certifiedtranslate.com), a professional document translation company, attest that the language translation completed by Language Fish's certified professional translators, represents, to the best of our judgment, an accurate and correct interpretation of the terminology/content of the source document(s). **This is to certify the correctness of the translation only.** We do not guarantee that the original is a genuine document or that the statements contained in the original document(s) are true.

IN WITNESS WHEREOF, Language Fish LLC has caused the Certificate to be signed by its duly authorized officer(s).

**By:**   Sean Kirschenstein, Director            **Date:**   November 14, 2023

A copy of the translated version(s) is attached to this statement of certification.





**Su Xiaohua**

**Su Xiaohua**: ... Enjoy the Mid-Autumn Festival. I wish you happiness and good health!

**You**: Happy Mid-Autumn Festival (a greeting image)

**September 20, 2022, 09:09 AM**

**You**: Draft Reply for the South China Region.zip 473.8KB

　　*WeChat desktop version

**September 20, 2022, 10:37 AM**

**Su Xiaohua**: Received, thank you!

CONFIDENTIAL

IRI-SU-000199E_TRANSLATION





**Su Xiaohua**

**September 20, 2022, 10:37 AM**

**Su Xiaohua**: Received. Thanks!

You:

**September 20, 2022, 12:31 PM**

**Su Xiaohua**:   Situation Explanation (1).docx 16.3KB

*WeChat desktop version

**Su Xiaohua**: Check if that's okay.

You:

**You**: Very good



CONFIDENTIAL

IRI-SU-000199



CONFIDENTIAL

IRI-SU-000165

# Exhibit 27
# FILED UNDER SEAL

# Exhibit 28

# Trump Alioto Trump & Prescott

ATTORNEYS LLP
2280 Union Street
San Francisco, California 94123
(415) 563-7200
FAX (415) 346-0679

June 30, 2023

**VIA EMAIL**

John M. Taladay
BAKER BOTTS L.L.P.
700 K Street, N.W.
Washington, D.C. 20001

**Re**:   *In re Cathode Ray Tube* (*CRT*) *Antitrust Litigation*, U.S. District Court, N.D. Cal.,
Master File No. 4:07-cv-05944-JST

Dear Counsel:

Pursuant to the Court's May 19, 2023 Stipulation and Order Re Case Schedule
(ECF No. 6198), attached please find the current version of the Indirect Purchaser
Plaintiffs' ("IPPs") Trial Exhibit List, Deposition Designations, and Witness List.  Please
note that the Trial Exhibit List and Deposition Designations consist of two Excel files
each.  (There are separate Excel files for Class Representative Related Exhibits and
Designations.)

The Trial Exhibit List, Deposition Designations and Witness List are based on the
current state of IPPs' knowledge and the current state of this litigation and all of IPPs'
rights are expressly reserved.  For example, the IPPs reserve all rights to amend,
supplement or modify their exhibit list, witness list and deposition designations in
response to the Irico Defendants' exhibit list, witness list, and deposition designations.
The IPPs further reserve the right to introduce written responses to plaintiffs' discovery
requests and declarations that may be deemed to be admissions by Irico.

The IPPs also reserve all rights to amend, supplement or modify their exhibit list,
witness list and deposition designations, including in response to a change in the trial
structure, any further discovery that is produced in this case, settlements between parties,
any motions filed by the parties, including motions for summary judgment and motions in
limine, and any rulings by the Court.

The IPPs also reserve all rights to amend, supplement or modify their exhibit list,
witness list and deposition designations in response to changes made by the Irico
Defendants to their exhibit list, witness list and deposition designations.

The IPPs reserve the right to call any witness on the parties' witness lists either
live or by video deposition, and to designate any resulting testimony.  The IPPs also
reserve the right to introduce any exhibit on the parties' exhibit lists.

John Taladay et al.
June 30, 2023
Page 2 of 2

        The IPPs also reserve the right to designate additional testimony, witnesses and exhibits in rebuttal.

        The inclusion of a witness on the witness list, an exhibit on the exhibit list, and the designation of deposition testimony are not intended as and shall not be construed as an admission that the witness will be called, that the exhibit will be introduced or that the deposition testimony will be shown at trial.

        Please do not hesitate to contact me if you have any questions.

                        Sincerely,

                        /s/ Mario N. Alioto
                        Mario N. Alioto
                        Lead Counsel for the Indirect Purchaser Class


cc.     *Via email*
        Evan J. Werbel
        Thomas E Carter
        Andrew L. Lucarelli
        Kaylee Yang
        Joseph Goldberg
        Gerard Dever
        Mario N. Alioto
        Daniel E. Birkhaeuser
        Geoffrey C. Rushing
        Matthew D. Heaphy
        R. Alexander Saveri

| Temporary Trial Ex. No. | Deposition Ex. No. | Beg Bates | End Bates | Production Beg Bates |
|---|---|---|---|---|
| 158 | 158 | CHU00660408 | CHU00660418 | |
| 162 | 162 1223 | CHU00660671 | CHU00660680 | |
| 265 | 265 | MTPD-0468623 | MTPD-0468631 | |
| 326 | 326 | PHLP-CRT-073705 | PHLP-CRT-073708 | |
| 327 | 327 | Notice of Deposition Pursuant to Rule 30(b)(6)) | | |
| 328 | 328 | EIN0080542 | EIN0080549 | EIN0080519 |
| 329 | 329 | EIN0012176 | EIN0012318 | |
| 330 | 330 | EIN0045706 | EIN0045729 | EIN0045304 |
| 331 | 331 | EIN0080611 | EIN0080618 | EIN0080519 |
| 332 | 332 | EIN0080660 | EIN0080665 | EIN0080519 |
| 333 | 333 | EIN0003793 | EIN0003798 | |
| 334 | 334 | EIN0080667 | EIN0080675 | EIN0080519 |
| 335 | 335 | EIN0104437 | EIN0104506 | |
| 336 | 336 | PHLP-CRT-001690 | PHLP-CRT-001694 | PHLP-CRT-001557 |
| 630 | 630 | KFTC Decision (Decision No. 2011-019) | | |
| 631 | 631 | SDCRT-0087953 | SDCRT-0087962 | SDCRT-0087790 |
| 633 | 633 | SDCRT-0006043 | SDCRT-0006044 | |
| 635 | 635 | SDCRT-0006041 | SDCRT-0006042 | |
| 644 | 644 | SDCRT-0090350 | SDCRT-0090353 | SDCRT-0090233 |
| 648 | 648 | SDCRT-0091715 | SDCRT-0091718 | SDCRT-0091027 |
| 650 | 650 | SDCRT-0091656 | SDCRT-0091659 | SDCRT-0091027 |
| 651 | 651 3361 | Samsung SDI's Supplemental Responses to DPP's First set of Interrogatories, Nos. 4 and 5. | | |
| 652 | 652 | SDCRT-0086208 | SDCRT-0086210 | |
| 656 | 656 | SDCRT-0086245 | SDCRT-0086246 | SDCRT-0086230 |
| 660 | 660 | CHU00029316 | CHU00029320 | |
| 665 | 665 5608 | SDCRT-0086487 | SDCRT-0086488 | |
| 670 | 670 | SDCRT-0086551 | SDCRT-0086553 | SDCRT-0086256 |
| 675 | 675 | SDCRT-0007585 | SDCRT-0007587 | |
| 677 | 677 | SDCRT-0087934 | SDCRT-0087937 | SDCRT-0087790 |
| 679 | 679 | SDCRT-0006510 | SDCRT-0006512 | |
| 680 | 680 1925 | SDCRT-0088732 | SDCRT-0088733 | SDCRT-0088635 |
| 685 | 685 | SDCRT-0090180 | SDCRT-0090185 | SDCRT-0089426 |
| 686 | 686 | SDCRT-0091351 | SDCRT-0091352 | SDCRT-0091027 |
| 688 | 688 1325 | CHU00028809 | CHU00028810 | |
| 689 | 689 1174 | CHU00036414 | CHU00036415 | |
| 705 | 705 5609 | SDCRT-0086541 | SDCRT-0086544 | |

| Temporary Trial Ex. No. | Deposition Ex. No. | Beg Bates | End Bates | Production Beg Bates |
|---|---|---|---|---|
| 706 | 706 1262 | CHU00029144 | CHU00029146 | |
| 708 | 708 | CHU00021262 | CHU00021263 | |
| 709 | 709 | CHU00029116 | CHU00029123 | |
| 710 | 710 1282 | CHU00029131 | CHU00029137 | |
| 713 | 713 | SDCRT-0005830; SDCRT-0005831 | SDCRT-0005830; SDCRT-0005842 | |
| 717 | 717 | CHU00029152 | CHU00029154 | |
| 718 | 718 | PHLP-CRT-080623 | PHLP-CRT-080626 | |
| 719 | 719 1252 | CHU00029179 | CHU00029184 | |
| 800 | 800 | MTPD-0042010 | MTPD-0042012 | |
| 801 | 801 | MTPD-0038856 | MTPD-0038862 | |
| 802 | 802 6073 | MTPD-0035375 | MTPD-0035376 | |
| 805 | 805 | MTPD-0025531 | MTPD-0025532 | |
| 808 | 808 1765 | MTPD-0492286 | MTPD-0492289 | |
| 810 | 810 | SDCRT-0005645 | SDCRT-0005646 | |
| 813 | 813 | LGE00089844 | LGE00089849 | |
| 814 | 814 | MTPD-0042034 | MTPD-0042035 | |
| 815 | 815 | MTPD-0426017 | MTPD-0426018 | |
| 817 | 817 | Toshiba's Verified Interrogatory Responses page 56. Toshiba Corporation's Supplemental Objections and Responses to Interrogatory Nos. 4 and 5 | | |
| 818 | 818 | MTPD-0426066 | MTPD-0426067 | |
| 904 | 904 | MTPD-0223790 | MTPD-0223792 | |
| 905 | 905 1769 | MTPD-0094874 | MTPD-0094880 | |
| 914 | 914 | MTPD-0209617; MTPD-0209618 | MTPD-0209617; MTPD-0209618 | MTPD-0209617 |
| 917 | 917 5832 | MTPD-0576483 | MTPD-0576483 | |
| 920 | 920 | MTPD-0025720 | MTPD-0025720 | |
| 1014 | 1014 1114 | CHU00028400 | CHU00028401 | |
| 1015 | 1015 1121 | CHU00028393 | CHU00028393 | |
| 1016 | 1016 1123 | CHU00028725 | CHU00028727 | |
| 1017 | 1017 1116 1233 | CHU00028398 | CHU00028399 | |

| Temporary Trial Ex. No. | Deposition Ex. No. | Beg Bates | End Bates | Production Beg Bates |
|---|---|---|---|---|
| 1102 | 1102 | CHU00167398 | CHU00167398 | |
| 1104 | 1104 | CHU00028396 | CHU00028397 | |
| 1105 | 1105 | CHU00028752 | CHU00028754 | |
| 1106 | 1106 | CHU00028730 | CHU00028733 | |
| 1107 | 1107 | CHU00021289 | CHU00021289 | |
| 1108 | 1108 | CHU00029191 | CHU00029194 | |
| 1109 | 1109 | CHU00028873 | CHU00028873 | |
| 1110 | 1110 | CHU00028311 | CHU00028313 | |
| 1111 | 1111 | CHU00028558 | CHU00028558 | |
| 1112 | 1112 | CHU00028930 | CHU00028931 | |
| 1113 | 1113 | CHU00028300 | CHU00028301 | |
| 1115 | 1115 1525 | CHU00028803 | CHU00028804 | |
| 1117 | 1117 | CHU00028760 | CHU00028762 | |
| 1118 | 1118 | CHU00028746 | CHU00028748 | |
| 1119 | 1119 | CHU00028283 | CHU00028285 | |
| 1120 | 1120 | CHU00028740 | CHU00028743 | |
| 1122 | 1122 | CHU00028734 | CHU00028735 | |
| 1124 | 1124 | CHU00028707 | CHU00028710 | |
| 1125 | 1125 | CHU00028701 | CHU00028703 | |
| 1126 | 1126 | CHU00028689 | CHU00028690 | |
| 1127 | 1127 | CHU00028687 | CHU00028688 | |
| 1128 | 1128 | CHU00028490 | CHU00028492 | |
| 1129 | 1129 | CHU00028674 | CHU00028676 | |
| 1130 | 1130 | CHU00028955 | CHU00028957 | |
| 1131 | 1131 1285 | CHU00028252 | CHU00028253 | |
| 1132 | 1132 | CHU00028952 | CHU00028954 | |
| 1133 | 1133 | CHU00028463 | CHU00028464 | |
| 1134 | 1134 6152 | CHU00029259 | CHU00029261 | |
| 1135 | 1135 | CHU00028385 | CHU00028387 | |
| 1136 | 1136 | CHU00030698 | CHU00030700 | |
| 1137 | 1137 | CHU00030701 | CHU00030704 | |
| 1138 | 1138 | CHU00030713 | CHU00030716 | |
| 1139 | 1139 | CHU00030720 | CHU00030727 | |
| 1140 | 1140 | CHU00029245 | CHU00029247 | |
| 1141 | 1141 1210 | CHU00030731 | CHU00030733 | |
| 1142 | 1142 | CHU00029235 | CHU00029237 | |
| 1143 | 1143 | CHU00030749 | CHU00030751 | |
| 1144 | 1144 | CHU00029228 | CHU00029230 | |
| 1145 | 1145 | CHU00030757 | CHU00030762 | |
| 1146 | 1146 | CHU00029189 | CHU00029190 | |
| 1147 | 1147 | CHU00030787 | CHU00030794 | |
| 1148 | 1148 | CHU00030809 | CHU00030814 | |

| Temporary Trial Ex. No. | Deposition Ex. No. | Beg Bates | End Bates | Production Beg Bates |
|---|---|---|---|---|
| 1149 | 1149 | CHU00030807 | CHU00030815 | |
| 1150 | 1150 | CHU00030835 | CHU00030838 | |
| 1151 | 1151 | CHU00030846 | CHU00030850 | |
| 1152 | 1152 | CHU00030855 | CHU00030868 | |
| 1153 | 1153 | CHU00029175 | CHU00029178 | |
| 1154 | 1154 | CHU00030888 | CHU00030893 | |
| 1155 | 1155 | CHU00030899 | CHU00030903 | |
| 1156 | 1156 | CHU00030904 | CHU00030909 | |
| 1157 | 1157 | CHU00029163 | CHU00029170 | |
| 1158 | 1158 | CHU00030960 | CHU00030962 | |
| 1159 | 1159 | CHU00030979 | CHU00030984 | |
| 1160 | 1160 | CHU00030995 | CHU00030997 | |
| 1161 | 1161 | CHU00028209 | CHU00028210 | |
| 1162 | 1162 | CHU00031028 | CHU00031030 | |
| 1163 | 1163 1284 1309 | CHU00031010 | CHU00031012 | |
| 1164 | 1164 | CHU00031013 | CHU00031014 | |
| 1165 | 1165 | CHU00028376 | CHU00028376 | |
| 1166 | 1166 | CHU00029105 | CHU00029107 | |
| 1167 | 1167 | CHU00031075 | CHU00031087 | |
| 1168 | 1168 | CHU00028976 | CHU00028976 | |
| 1169 | 1169 | CHU00028374 | CHU00028375 | |
| 1170 | 1170 | CHU00031111 | CHU00031112 | |
| 1171 | 1171 | CHU00031113 | CHU00031114 | |
| 1172 | 1172 | CHU00028203 | CHU00028203 | |
| 1173 | 1173 | CHU00031136 | CHU00031136 | |
| 1175 | 1175 | CHU00031142 | CHU00031147 | |
| 1176 | 1176 | CHU00031150 | CHU00031152 | |
| 1177 | 1177 | CHU00036412 | CHU00036413 | |
| 1178 | 1178 | CHU00036410 | CHU00036411 | |
| 1179 | 1179 | CHU00660366 | CHU00660367 | |
| 1180 | 1180 1519 | CHU00028589 | CHU00028590 | |
| 1181 | 1181 | CHU00031172 | CHU00031173 | |
| 1182 | 1182 | CHU00031178 | CHU00031179 | |
| 1183 | 1183 | CHU00036392 | CHU00036393 | |
| 1184 | 1184 | CHU00031182 | CHU00031182 | |
| 1185 | 1185 | CHU00030406 | CHU00030407 | |
| 1186 | 1186 | CHU00031804 | CHU00031804 | |
| 1187 | 1187 | CHU00031194 | CHU00031201 | |
| 1188 | 1188 | CHU00031209 | CHU00031213 | |
| 1189 | 1189 | CHU00031214 | CHU00031220 | |
| 1190 | 1190 | CHU00031227 | CHU00031231 | |
| 1191 | 1191 | CHU00030036 | CHU00030039 | |
| 1193 | 1193 | CHU00031240 | CHU00031247 | |

| Temporary Trial Ex. No. | Deposition Ex. No. | Beg Bates | End Bates | Production Beg Bates |
|---|---|---|---|---|
| 1195 | 1195 | CHU00031262 | CHU00031267 | |
| 1196 | 1196 | CHU00031268 | CHU00031269 | |
| 1197 | 1197 | CHU00031272 | CHU00031273 | |
| 1198 | 1198 1225 | CHU00660717 | CHU00660727 | |
| 1199 | 1199 | CHU00031274 | CHU00031277 | |
| 1200 | 1200 | CHU00031279 | CHU00031282 | |
| 1201 | 1201 | CHU00608095 | CHU00608105 | |
| 1202 | 1202 | CHU00031180 | CHU00031181 | |
| 1203 | 1203 1265 | CHU00031051 | CHU00031055 | |
| 1205 | 1205 | CHU00028215 | CHU00028216 | |
| 1206 | 1206 | CHU00029039 | CHU00029041 | |
| 1207 | 1207 | CHU00028302 | CHU00028304 | |
| 1208 | 1208 | CHU00028791 | CHU00028793 | |
| 1209 | 1209 | CHU00032057 | CHU00032058 | |
| 1211 | 1211 | CHU00031254 | CHU00031254 | |
| 1212 | 1212 | CHU00030839 | CHU00030840 | |
| 1213 | 1213 | CHU00028263 | CHU00028264 | |
| 1214 | 1214 | CHU00029293 | CHU00029297 | |
| 1216 | 1216 | CHU00660395 | CHU00660407 | |
| 1217 | 1217 | CHU00660383 | CHU00660394 | |
| 1218 | 1218 | CHU00660454 | CHU00660463 | |
| 1220 | 1220 | CHU00660373 | CHU00660382 | |
| 1221 | 1221 | CHU00660606 | CHU00660615 | |
| 1222 | 1222 | CHU00660626 | CHU00660632 | |
| 1224 | 1224 | CHU00660709 | CHU00660716 | |
| 1226 | 1226 | CHU00660729 | CHU00660735 | |
| 1227 | 1227 | CHU00647932 | CHU00647943 | |
| 1228 | 1228 1236 | CHU00028277 | CHU00028278 | |
| 1229 | 1229 | CHU00028768 | CHU00028770 | |
| 1230 | 1230 1238 | CHU00028670 | CHU00028671 | |
| 1231 | 1231 1256 | CHU00028441 | CHU00028446 | |
| 1234 | 1234 | CHU00028503 | CHU00028504 | |
| 1235 | 1235 | CHU00028711 | CHU00028712 | |
| 1237 | 1237 | CHU00028691 | CHU00028693 | |
| 1240 | 1240 | CHU00028654 | CHU00028655 | |
| 1241 | 1241 | CHU00028645 | CHU00028646 | |
| 1242 | 1242 | CHU00028642 | CHU00028644 | |
| 1243 | 1243 1274 | CHU00028651 | CHU00028652 | |
| 1244 | 1244 | CHU00028632 | CHU00028632 | |
| 1245 | 1245 | CHU00028638 | CHU00028638 | |

| Temporary Trial Ex. No. | Deposition Ex. No. | Beg Bates | End Bates | Production Beg Bates |
|---|---|---|---|---|
| 1246 | 1246 | CHU00028889 | CHU00028892 | |
| 1247 | 1247 | CHU00028887 | CHU00028887 | |
| 1248 | 1248 | CHU00028606 | CHU00028608 | |
| 1250 | 1249 1250 | CHU00029185 | CHU00029188 | |
| 1251 | 1251 | CHU00028240 | CHU00028240 | |
| 1253 | 1253 | CHU00028438 | CHU00028438 | |
| 1254 | 1254 | CHU00028656 | CHU00028657 | |
| 1255 | 1255 | CHU00029065 | CHU00029067 | |
| 1257 | 1257 | CHU00028228 | CHU00028228 | |
| 1258 | 1258 | CHU00028229 | CHU00028230 | |
| 1259 | 1259 | CHU00029059 | CHU00029061 | |
| 1260 | 1260 | CHU00029155 | CHU00029162 | |
| 1261 | 1261 | CHU00028224 | CHU00028225 | |
| 1263 | 1263 | CHU00028424 | CHU00028424 | |
| 1264 | 1264 | CHU00029108 | CHU00029109 | |
| 1266 | 1266 | CHU00031123 | CHU00031125 | |
| 1267 | 1267 | CHU00030414 | CHU00030418 | |
| 1268 | 1268 307 | CHU00030559 | CHU00030562 | |
| 1269 | 1269 | CHU00020660 | CHU00020660 | |
| 1270 | 1270 | CHU00030060 | CHU00030063 | |
| 1271 | 1271 | CHU00030058 | CHU00030059 | |
| 1272 | 1272 | CHU00030064 | CHU00030065 | |
| 1273 | 1273 | CHU00030051 | CHU00030051 | |
| 1274 | 1274 | CHU00028648 | CHU00028650 | |
| 1275 | 1275 1412 | CHU00030449 | CHU00030457 | |
| 1276 | 1276 | CHU00123358 | CHU00123361 | |
| 1277 | 1277 | CHU00036390 | CHU00036391 | |
| 1278 | 1278 8624 | CHU00040992 | CHU00040993 | |
| 1279 | 1279 | CHU00123742 | CHU00123745 | |
| 1280 | 1280 1417 | CHU00030530 | CHU00030532 | |
| 1281 | 1281 | CHU00030495 | CHU00030496 | |
| 1283 | 1283 | CHU00030056 | CHU00030057 | |
| 1286 | 1286 | C.V. of J.S. Lu | | |
| 1287 | 1287 | CHU00028933 | CHU00028945 | |
| 1288 | 1288 | CHU00028869 | CHU00028872 | |
| 1289 | 1289 | CHU00028841 | CHU00028843 | |
| 1290 | 1290 | CHU00028524 | CHU00028525 | |
| 1291 | 1291 | CHU00028912 | CHU00028914 | |
| 1292 | 1292 | CHU00028295 | CHU00028296 | |
| 1293 | 1293 | CHU00028786 | CHU00028788 | |
| 1295 | 1295 | CHU00028723 | CHU00028724 | |

| Temporary Trial Ex. No. | Deposition Ex. No. | Beg Bates | End Bates | Production Beg Bates |
|---|---|---|---|---|
| 1296 | 1296 | CHU00028501 | CHU00028502 | |
| 1297 | 1297 | CHU00028273 | CHU00028274 | |
| 1298 | 1298 | CHU00020779 | CHU00020781 | |
| 1299 | 1299 | CHU00028613 | CHU00028614 | |
| 1300 | 1300 | CHU00029262 | CHU00029264 | |
| 1301 | 1301 | CHU00030695 | CHU00030697 | |
| 1302 | 1302 | CHU00030799 | CHU00030800 | |
| 1303 | 1303 8622 | CHU00030688 | CHU00030691 | |
| 1304 | 1304 | CHU00031176 | CHU00031176 | |
| 1305 | 1305 8621 | CHU00030819 | CHU00030822 | |
| 1306 | 1306 | CHU00030992 | CHU00030994 | |
| 1307 | 1307 | CHU00031006 | CHU00031009 | |
| 1308 | 1308 | CHU00031015 | CHU00031016 | |
| 1310 | 1310 | CHU00031822 | CHU00031822 | |
| 1311 | 1311 | CHU00033227 | CHU00033228 | |
| 1312 | 1312 8424 | CHU00030679 | CHU00030683 | |
| 1313 | 1313 | CHU00030766 | CHU00030767 | |
| 1314 | 1314 | CHU00030777 | CHU00030780 | |
| 1315 | 1315 | CHU00029050 | CHU00029051 | |
| 1316 | 1316 | CHU00030985 | CHU00030990 | |
| 1317 | 1317 | CHU00030998 | CHU00030998 | |
| 1318 | 1318 | CHU00028877 | CHU00028878 | |
| 1319 | 1319 | CHU00014218 | CHU00014218 | |
| 1320 | 1320 | CHU00031138 | CHU00031139 | |
| 1321 | 1321 | CHU00125849 | CHU00125858 | |
| 1322 | 1322 | CHU00125895 | CHU00125899 | |
| 1324 | 1324 | CHU00607732 | CHU00607735 | |
| 1326 | 1326 | CHU00028968 | CHU00028969 | |
| 1327 | 1327 | CHU00014232 | CHU00014232 | |
| 1328 | 1328 | CHU00014227 | CHU00014229 | |
| 1406 | 1406 | SDCRT-0007282 | SDCRT-0007296 | |
| 1407 | 1407 | MTPD-0016566 | MTPD-0016567 | |
| 1413 | 1413 | PHLP-CRT-084315 | PHLP-CRT-084332 | |
| 1414 | 1414 | MTPD-0479721 | MTPD-0479723 | |
| 1415 | 1415 1428 | MTPD-0543148 | MTPD-0543150 | |
| 1416 | 1416 | MTPD-0497049 | MTPD-0497053 | |
| 1418 | 1418 | MTPD-0479660 | MTPD-0479661 | |
| 1421 | 1421 | SDCRT-0006670 | SDCRT-0006673 | |
| 1422 | 1422 7549 | MTPD-0486917 | MTPD-0486919 | |
| 1424 | 1424 | MTPD-0517734 | MTPD-0517737 | |
| 1426 | 1426 | MTPD-0400555 | MTPD-0400558 | |

| Temporary Trial Ex. No. | Deposition Ex. No. | Beg Bates | End Bates | Production Beg Bates |
|---|---|---|---|---|
| 1500 | 1500 | CHU00028789 | CHU00028790 | CHU00028789.01 |
| 1502 | 1502 | SDCRT-0086247 | SDCRT-0086247 | SDCRT-0086230 |
| 1503 | 1503 | CHU00028737 | CHU00028737 | |
| 1505 | 1505 | SDCRT-0086532 | SDCRT-0086536 | SDCRT-0086256 |
| 1506 | 1506 | SDCRT-0087206 | SDCRT-0087208 | SDCRT-0087007 |
| 1507 | 1507 | SDCRT-0087107 | SDCRT-0087110 | SDCRT-0087007 |
| 1508 | 1508 | SDCRT-0087177 | SDCRT-0087178 | SDCRT-0087007 |
| 1509 | 1509 | SDCRT-0087464 | SDCRT-0087466 | SDCRT-0087441 |
| 1510 | 1510 | SDCRT-0087467 | SDCRT-0087469 | SDCRT-0087441 |
| 1511 | 1511 | SDCRT-0089031 | SDCRT-0089035 | SDCRT-0088990 |
| 1512 | 1512 | SDCRT-0089073 | SDCRT-0089076 | SDCRT-0088990 |
| 1513 | 1513 | SDCRT-0089057 | SDCRT-0089060 | SDCRT-0088990 |
| 1514 | 1514 | SDCRT-0089087 | SDCRT-0089095 | SDCRT-0088990 |
| 1515 | 1515 | SDCRT-0091737 | SDCRT-0091742 | SDCRT-0091027 |
| 1516 | 1516 | SDCRT-0091844 | SDCRT-0091852 | SDCRT-0091027 |
| 1517 | 1517 | SDCRT-0090328 | SDCRT-0090338 | SDCRT-0090233 |
| 1518 | 1518 | SDCRT-0091605 | SDCRT-0091615 | SDCRT-0091027 |
| 1520 | 1520 | SDCRT-0007539 | SDCRT-0007553 | |
| 1521 | 1521 | SDCRT-0090319 | SDCRT-0090321 | SDCRT-0090233 |
| 1522 | 1522 | SDCRT-0091643 | SDCRT-0091647 | SDCRT-0091027 |
| 1523 | 1523 | Amended Plea Agreement - USA v. Samsung SDI | | |
| 1524 | 1524 | CHU00028865 | CHU00028867 | |
| 1526 | 1526 | SDCRT-0086270 | SDCRT-0086270 | SDCRT-0086256 |
| 1527 | 1527 | SDCRT-0086419 | SDCRT-0086420 | SDCRT-0086256 |
| 1528 | 1528 | SDCRT-0086557 | SDCRT-0086560 | SDCRT-0086256 |
| 1529 | 1529 | SDCRT-0086373; SDCRT-0086331; SDCRT-0086269; SDCRT-0086318; SDCRT-0086351 | SDCRT-0086378; SDCRT-0086335; SDCRT-0086274; SDCRT-0086320; SDCRT-0086355 | SDCRT-0086256 |
| 1530 | 1530 | SDCRT-0086831 | SDCRT-0086887 | SDCRT-0086256 |
| 1533 | 1533 | HDP-CRT00025646 | HDP-CRT00025647 | |
| 1534 | 1534 | HDP-CRT00025612 | HDP-CRT00025616 | |
| 1535 | 1535 | HDP-CRT00025568 | HDP-CRT00025569 | |
| 1539 | 1539 | HDP-CRT00025985 | HDP-CRT00025985 | |
| 1540 | 1540 | HDP-CRT00051354 | HDP-CRT00051355 | |
| 1544 | 1544 | HDP-CRT00035179 | HDP-CRT00035180 | |
| 1560 | 1560 | HDP-CRT00023436 | HDP-CRT00023443 | |

| Temporary Trial Ex. No. | Deposition Ex. No. | Beg Bates | End Bates | Production Beg Bates |
|---|---|---|---|---|
| 1561 | 1561 | Defendant Hitachi Display, LTD's Supplemental Response to DPP's First set of Interrogatories, Interrogatory No. 2) | | |
| 1562 | 1562 | HDP-CRT00029343 | HDP-CRT00029344 | |
| 1563 | 1563 | HDP-CRT00023416 | HDP-CRT00023420 | |
| 1564 | 1564 | HDP-CRT00049280 | HDP-CRT00049280 | |
| 1565 | 1565 | HDP-CRT00026082 | HDP-CRT00026083 | |
| 1566 | 1566 | HDP-CRT00019426 | HDP-CRT00019426 | |
| 1567 | 1567 | HDP-CRT00056186 | HDP-CRT00056187 | |
| 1568 | 1568 | HDP-CRT00048694 | HDP-CRT00048695 | |
| 1569 | 1569 | HDP-CRT00048797 | HDP-CRT00048798 | |
| 1570 | 1570 | HDP-CRT00026180 | HDP-CRT00026181 | |
| 1571 | 1571 | HDP-CRT00026189 | HDP-CRT00026191 | |
| 1572 | 1572 | HDP-CRT00004468 | HDP-CRT00004468 | |
| 1573 | 1573 | HDP-CRT00026197 | HDP-CRT00026198 | |
| 1574 | 1574 | HDP-CRT00026193 | HDP-CRT00026194 | |
| 1575 | 1575 | HDP-CRT00049440 | HDP-CRT00049440 | |
| 1576 | 1576 | HDP-CRT00056170 | HDP-CRT00056171 | |
| 1577 | 1577 | HDP-CRT00049201 | HDP-CRT00049202 | |
| 1578 | 1578 | HDP-CRT00026077 | HDP-CRT00026078 | |
| 1579 | 1579 | HDP-CRT00026313 | HDP-CRT00026315 | |
| 1580 | 1580 | HDP-CRT00049270 | HDP-CRT00049272 | |
| 1581 | 1581 | HDP-CRT00023360 | HDP-CRT00023361 | |
| 1583 | 1583 | HDP-CRT00022911 | HDP-CRT00022912 | |
| 1585 | 1585 | HDP-CRT00023625 | HDP-CRT00023626 | |
| 1586 | 1586 | HDP-CRT00049348 | HDP-CRT00049349 | |
| 1587 | 1587 | HDP-CRT00026234 | HDP-CRT00026235 | |
| 1590 | 1590 | HDP-CRT00049231 | HDP-CRT00049232 | |
| 1592 | 1592 | HDP-CRT00023467 | HDP-CRT00023468 | |
| 1670 | 1670 | CHU00660306 | CHU00660311 | |
| 1671 | 1671 | CHU00660337 | CHU00660340 | |
| 1673 | 1673 | CHU00660487 | CHU00660500 | |
| 1674 | 1674 | SDCRT-0090253 | SDCRT-0090254 | SDCRT-0090233 |
| 1676 | 1676 | CHU00645156 | CHU00645156 | |
| 1678 | 1678 | CHU00645176 | CHU00645176 | |
| 1679 | 1679 | CHU00645177 | CHU00645209 | |
| 1680 | 1680 | CHU00644987 | CHU00644987 | |
| 1681 | 1681 | CHU00644988 | CHU00644994 | |
| 1682 | 1682 | CHU00735283 | CHU00735286 | |
| 1691 | 1691 | CHU00735249 | CHU00735249 | |
| 1710 | 1710 | SDCRT-0104771 | SDCRT-0104772 | |
| 1755 | 1755 | TSB-CRT-00035348 | TSB-CRT-00035349 | |

| Temporary Trial Ex. No. | Deposition Ex. No. | Beg Bates | End Bates | Production Beg Bates |
|---|---|---|---|---|
| 1756 | 311 1756 3304 7542 | TSB-CRT-00035350 | TSB-CRT-00035352 | |
| 1757 | 1757 | TSB-CRT-00042493 | TSB-CRT-00042495 | |
| 1760 | 1760 | TSB-CRT-00041870 | TSB-CRT-00041871 | |
| 1761 | 1761 | CHU00020661 | CHU00020662 | |
| 1763 | 1763 | MTPD-0490549 | MTPD-0490550 | |
| 1764 | 1764 | MTPD-0490551 | MTPD-0490552 | |
| 1770 | 1770 | MTPD-0494876 | MTPD-0494880 | |
| 1771 | 1771 | MTPD-0400554 | MTPD-0400554 | |
| 1773 | 1773 | TAEC-CRT-00068992 | TAEC-CRT-00068992 | |
| 1776 | 1776 | TAEC-CRT-00081255 | TAEC-CRT-00081257 | |
| 1777 | 1777 | MTPD-0419572 | MTPD-0419573 | |
| 1782 | 1782 | TAEC-CRT-00084530 | TAEC-CRT-00084530 | |
| 1783 | 1783 | MTPD-0092115 | MTPD-0092115 | |
| 1784 | 1784 | CHU00028291 | CHU00028292 | |
| 1785 | 1785 | TSB-CRT-00041721 | TSB-CRT-00041724 | |
| 1786 | 1786 | TSB-CRT-00041746 | TSB-CRT-00041747 | |
| 1787 | 1787 7545 | TSB-CRT-00041862 | TSB-CRT-00041863 | |
| 1788 | 1788 | TAEC-CRT-00088054 | TAEC-CRT-00088055 | |
| 1789 | 1789 | TAEC-CRT-00088715 | TAEC-CRT-00088716 | |
| 1790 | 1790 | TAEC-CRT-00089968 | TAEC-CRT-00089969 | |
| 1791 | 1791 1802 | TSB-CRT-00039414 | TSB-CRT-00039414 | |
| 1792 | 1792 | TSB-CRT-00039415 | TSB-CRT-00039415 | |
| 1793 | 1793 | MTPD-0517540 | MTPD-0517542 | |
| 1794 | 1794 | MTPD-0517543 | MTPD-0517543 | |
| 1795 | 1795 | MTPD-0479738 | MTPD-0479738 | |
| 1796 | 1796 | MTPD-0479739 | MTPD-0479741 | |
| 1797 | 1797 7553 | MTPD-0410018 | MTPD-0410018 | |
| 1798 | 1798 7553 | MTPD-0410020 | MTPD-0410021 | |
| 1800 | 1800 | MTPD-0493551 | MTPD-0493551 | |
| 1801 | 1801 | MTPD-0493552 | MTPD-0493554 | |
| 1803 | 1803 | MTPD-0166775 | MTPD-0166776 | |
| 1804 | 1804 | MTPD-0291761 | MTPD-0291762 | |
| 1853 | 1853 | PHLP-CRT-098241 | PHLP-CRT-098243 | |
| 1854 | 1854 | PHLP-CRT-014816 | PHLP-CRT-014818 | |
| 1855 | 1855 | CHU00028851 | CHU00028852 | |
| 1857 | 1857 | CHU00028755 | CHU00028756 | |
| 1858 | 1858 | MTPD-0613379 | MTPD-0613380 | |
| 1860 | 1860 | PHLP-CRT-007891 | PHLP-CRT-007891 | |
| 1864 | 1864 | CHU00030437 | CHU00030438 | |

| Temporary Trial Ex. No. | Deposition Ex. No. | Beg Bates | End Bates | Production Beg Bates |
|---|---|---|---|---|
| 1865 | 1865 2272 | PHLP-CRT-024736 | PHLP-CRT-024738 | |
| 1866 | 1866 | PHLP-CRT-014272 | PHLP-CRT-014274 | |
| 1866 | 1866 | PHLP-CRT-014272 | PHLP-CRT-014274 | |
| 1871 | 1871 | CHU00578883 | CHU00578885 | |
| 1873 | 1873 | CHU00649654 | CHU00649657 | |
| 1879 | 1879 | CHU00014223 | CHU00014226 | |
| 1885 | 1885 | SDCRT-0086416 | SDCRT-0086418 | SDCRT-0086256 |
| 1886 | 1886 | SDCRT-0086427 | SDCRT-0086428 | SDCRT-0086256 |
| 1887 | 1887 | SDCRT-0086440 | SDCRT-0086441 | SDCRT-0086256 |
| 1888 | 1888 | SDCRT-0086561 | SDCRT-0086562 | SDCRT-0086256 |
| 1889 | 1889 | SDCRT-0086563 | SDCRT-0086566 | SDCRT-0086256 |
| 1890 | 1890 | CHU00021268 | CHU00021271 | |
| 1891 | 1891 | SDCRT-0086577 | SDCRT-0086578 | SDCRT-0086256 |
| 1892 | 1892 | SDCRT-0086584 | SDCRT-0086585 | SDCRT-0086256 |
| 1893 | 1893 | SDCRT-0086593 | SDCRT-0086596 | SDCRT-0086256 |
| 1894 | 1894 | SDCRT-0086605 | SDCRT-0086606 | |
| 1895 | 1895 | SDCRT-0086632 | SDCRT-0086633 | SDCRT-0086256 |
| 1896 | 1896 | SDCRT-0086641 | SDCRT-0086645 | SDCRT-0086256 |
| 1897 | 1897 | SDCRT-0086700 | SDCRT-0086702 | |
| 1898 | 1898 | SDCRT-0086703 | SDCRT-0086705 | SDCRT-0086256 |
| 1899 | 1899 | SDCRT-0086722 | SDCRT-0086732 | SDCRT-0086256 |
| 1900 | 1900 | SDCRT-0086733 | SDCRT-0086737 | |
| 1901 | 1901 | SDCRT-0086751 | SDCRT-0086753 | SDCRT-0086256 |
| 1902 | 1902 | SDCRT-0087371 | SDCRT-0087372 | SDCRT-0087007 |
| 1903 | 1903 | SDCRT-0087381 | SDCRT-0087383 | SDCRT-0087007 |
| 1904 | 1904 | SDCRT-0087393 | SDCRT-0087398 | SDCRT-0087007 |
| 1905 | 1905 | SDCRT-0087405 | SDCRT-0087407 | |
| 1906 | 1906 | SDCRT-0087412 | SDCRT-0087422 | SDCRT-0087007 |
| 1907 | 1907 | SDCRT-0087427 | SDCRT-0087429 | SDCRT-0087007 |
| 1908 | 1908 | SDCRT-0002585 | SDCRT-0002587 | |
| 1909 | 1909 5602 | SDCRT-0002588 | SDCRT-0002589 | |
| 1910 | 1910 | SDCRT-0091692 | SDCRT-0091701 | |
| 1911 | 1911 | SDCRT-0091687 | SDCRT-0091691 | SDCRT-0091027 |
| 1913 | 1913 | SDCRT-0139342 | SDCRT-0139343 | |
| 1914 | 1914 | MTPD-0260906 | MTPD-0260909 | |
| 1915 | 1915 | SDCRT-0090322 | SDCRT-0090324 | SDCRT-0090233 |
| 1916 | 1916 | SDCRT-0086586 | SDCRT-0086587 | SDCRT-0086256 |
| 1922 | 1922 | SDCRT-0088705 | SDCRT-0088712 | |
| 1926 | 1926 | SDCRT-0006632 | SDCRT-0006633 | |
| 1928 | 1928 | SDCRT-0048512 | SDCRT-0048516 | |
| 1929 | 1929 | SDCRT-0008688 | SDCRT-0008690 | |

| Temporary Trial Ex. No. | Deposition Ex. No. | Beg Bates | End Bates | Production Beg Bates |
|---|---|---|---|---|
| 1930 | 1930 | SDCRT-0078439 | SDCRT-0078440 | |
| 1931 | 1931 | SDCRT-0051456 | SDCRT-0051459 | |
| 1932 | 1932 | MTPD-0423675 | MTPD-0423677 | |
| 1939 | 1939 3403 1799 | MTPD-0493549 | MTPD-0493554 | |
| 1942 | 1942 | MTPD-0024384 | MTPD-0024384 | |
| 1945 | 1945 | MTPD-0438871 | MTPD-0438873 | |
| 1946 | 1946 | MTPD-0042738 | MTPD-0042740 | |
| 1947 | 1947 | MTPD-0214546 | MTPD-0214548 | |
| 1949 | 1949 | MTPD-0222756 | MTPD-0222757 | |
| 1950 | 1950 | SDCRT-0007276 | SDCRT-0007276 | |
| 1993 | 1993 | CHU00030916 | CHU00030916 | |
| 1995 | 1995 | SDCRT-0067998 | SDCRT-0067998 | |
| 1996 | 1996 | SDCRT-0067999 | SDCRT-0067999 | |
| 2011 | 2011 | MTPD-0455847 | MTPD-0455850 | |
| 2012 | 2012 | MTPD-0521744 | MTPD-0521747 | |
| 2013 | 2013 3300 | TSB-CRT-00041620 | TSB-CRT-00041623 | |
| 2018 | 2018 | MTPD-0637815 | MTPD-0637815 | |
| 2019 | 2019 | MTPD-0303228 | MTPD-0303228 | |
| 2023 | 2023 | TAEC-CRT-00090127 | TAEC-CRT-00090128 | |
| 2024 | 2024 | TAEC-CRT-00069157 | TAEC-CRT-00069158 | |
| 2025 | 2025 | TAEC-CRT-00087223 | TAEC-CRT-00087224 | |
| 2026 | 2026 | TAEC-CRT-00088432 | TAEC-CRT-00088434 | |
| 2027 | 2027 | TAEC-CRT-00089342 | TAEC-CRT-00089344 | |
| 2028 | 2028 | TAEC-CRT-00093312 | TAEC-CRT-00093313 | |
| 2029 | 2029 | TAEC-CRT-00096166 | TAEC-CRT-00096168 | |
| 2030 | 2030 | TAEC-CRT-00096935 | TAEC-CRT-00096937 | |
| 2067 | 2067 | SDCRT-0011363 | SDCRT-0011363 | |
| 2068 | 2068 | SDCRT-0011573 | SDCRT-0011574 | |
| 2069 | 2069 | SDCRT-0005813 | SDCRT-0005813 | |
| 2070 | 2070 | SDCRT-0079381 | SDCRT-0079382 | |
| 2071 | 2071 | SDCRT-0063870 | SDCRT-0063871 | |
| 2072 | 2072 | SDCRT-0068870 | SDCRT-0068878 | SDCRT-0068870 |
| 2073 | 2073 | SDCRT-0006287 | SDCRT-0006295 | |
| 2074 | 2074 | SDCRT-0007145 | SDCRT-0007146 | |
| 2076 | 2076 | SDCRT-0007277 | SDCRT-0007278 | |
| 2077 | 2077 | SDCRT-0007280 | SDCRT-0007281 | |
| 2078 | 2078 | SDCRT-0006903 | SDCRT-0006904 | |
| 2079 | 2079 5603 | SDCRT-0007173 | SDCRT-0007173 | |
| 2080 | 2080 | SDCRT-0002423 | SDCRT-0002423 | SDCRT-0002417 |
| 2081 | 2081 | SDCRT-0006868 | SDCRT-0006869 | |
| 2082 | 2082 | SDCRT-0005818 | SDCRT-0005818 | |

| Temporary Trial Ex. No. | Deposition Ex. No. | Beg Bates | End Bates | Production Beg Bates |
|---|---|---|---|---|
| 2083 | 2083 | SDCRT-0091364 | SDCRT-0091366 | SDCRT-0091027 |
| 2084 | 2084 | SDCRT-0007609 | SDCRT-0007610 | |
| 2085 | 2085 | SDCRT-0190375 | SDCRT-0190376 | |
| 2086 | 2086 | SDCRT-0002514 | SDCRT-0002514 | |
| 2087 | 2087 | SDCRT-0093913 | SDCRT-0093914 | SDCRT-0092630 |
| 2088 | 2088 | SDCRT-0031594 | SDCRT-0031595 | |
| 2089 | 2089 | SDCRT-0002448 | SDCRT-0002448 | SDCRT-0002417 |
| 2090 | 2090 | SDCRT-0085141 | SDCRT-0085145 | |
| 2091 | 2091 | SDCRT-0076953 | SDCRT-0076953 | |
| 2092 | 2092 | SDCRT-0076954 | SDCRT-0076954 | |
| 2093 | 2093 | SDCRT-0007237 | SDCRT-0007237 | |
| 2094 | 2094 | LPD-00000279 | LPD-00000279 | |
| 2095 | 2095 | LPD-00000280 | LPD-00000280 | |
| 2096 | 2096 | SDCRT-0085535 | SDCRT-0085540 | |
| 2097 | 2097 | SDCRT-0007538 | SDCRT-0007538 | |
| 2098 | 2098 | SDCRT-0022048 | SDCRT-0022048 | |
| 2099 | 2099 | SDCRT-0006442 | SDCRT-0006452 | |
| 2100 | 2100 | SDCRT-0193053 | SDCRT-0193056 | |
| 2102 | 2102 | PHLP-CRT-067782 | PHLP-CRT-067782 | |
| 2103 | 2103 | SDCRT-0075055 | SDCRT-0075058 | |
| 2104 | 2104 | SDCRT-0005949 | SDCRT-0005949 | |
| 2105 | 2105 | SDCRT-0008729 | SDCRT-0008730 | |
| 2106 | 2106 | SDCRT-0008901 | SDCRT-0008902 | |
| 2107 | 2107 | SDCRT-0072527 | SDCRT-0072528 | |
| 2108 | 2108 | SDCRT-0084985 | SDCRT-0084985 | SDCRT-0084976 |
| 2111 | 2111 | SDCRT-0085394 | SDCRT-0085395 | |
| 2112 | 2112 | SDCRT-0007239 | SDCRT-0007239 | |
| 2113 | 2113 2782 | SDCRT-0006927 | SDCRT-0006927 | |
| 2114 | 2114 2783 | SDCRT-0006928 | SDCRT-0006928 | |
| 2122 | 2122 | SDCRT-0007615 | SDCRT-0007615 | |
| 2123 | 2123 | SDCRT-0199834 | SDCRT-0199836 | |
| 2126 | 2126 | SDCRT-0170843 | SDCRT-0170843 | |
| 2127 | 2127 | SDCRT-0066803 | SDCRT-0066804 | |
| 2250 | 2250 | SDCRT-0086690 | SDCRT-0086690 | |
| 2251 | 2251 | SDCRT-0086675 | SDCRT-0086681 | SDCRT-0086256 |
| 2252 | 2252 | PHLP-CRT-089512 | PHLP-CRT-089518 (handwritten on second page; pages that follow are not Bates numbered) | |
| 2253 | 2253 | LPD-NL00031186 | LPD-NL00031206 | |
| 2254 | 2254 | CHU00021272 | CHU00021278 | |
| 2255 | 2255 2625 | PHLP-CRT-081748 | PHLP-CRT-081750 | |

| Temporary Trial Ex. No. | Deposition Ex. No. | Beg Bates | End Bates | Production Beg Bates |
|---|---|---|---|---|
| 2256 | 2256 | PTC-00009040 | PTC-00009045 | |
| 2257 | 2257 | PHLP-CRT-010963 | PHLP-CRT-010964 | |
| 2258 | 2258 | PHLP-CRT-010965 | PHLP-CRT-010965 | |
| 2259 | 2259 | PTC-00007239 | PTC-00007239 | |
| 2260 | 2260 | CHU00029110 | CHU00029115 | |
| 2261 | 2261 | CHU00031056 | CHU00031057 | |
| 2262 | 2262 | PHLP-CRT-010948 | PHLP-CRT-010948 | |
| 2263 | 2263 2787 | PHLP-CRT-010945 | PHLP-CRT-010947 | |
| 2264 | 2264 | PHLP-CRT-131584 | PHLP-CRT-131590 | |
| 2265 | 2265 | PHLP-CRT-081982 | PHLP-CRT-081985 | |
| 2266 | 2266 | EIN0109841 | EIN0109843 | |
| 2267 | 2267 | PTC-00006474 | PTC-00006483 | |
| 2271 | 2271 | PHLP-CRT-023911 | PHLP-CRT-023915 | |
| 2273 | 2273 | PHLP-CRT-008117 | PHLP-CRT-008119 | |
| 2283 | 2283 | PHLP-CRT-012615 | PHLP-CRT-012615 | |
| 2284 | 2284 | PHLP-CRT-014085 | PHLP-CRT-014089 | |
| 2285 | 2285 | PHLP-CRT-015923 | PHLP-CRT-015925 | |
| 2287 | 2287 | PHLP-CRT-027718 | PHLP-CRT-027721 | |
| 2288 | 2288 | PHLP-CRT-023189 | PHLP-CRT-023191 | |
| 2289 | 2289 | PHLP-CRT-023137 | PHLP-CRT-023138 | |
| 2306 | 2306 | PHLP-CRT-024274 | PHLP-CRT-024275 | |
| 2317 | 2317 | TAEC-CRT-00070960 | TAEC-CRT-00070967 | |
| 2318 | 2318 | TAEC-CRT-00065518 | TAEC-CRT-00065521 | |
| 2319 | 2319 | TAEC-CRT-00009116 | TAEC-CRT-00009181 | |
| 2322 | 2322 | TAEC-CRT-00056158 | TAEC-CRT-00056167 | |
| 2323 | 2323 | TAEC-CRT-00091750 | TAEC-CRT-00091751 | |
| 2324 | 2324 | TAEC-CRT-00095236 | TAEC-CRT-00095237 | |
| 2327 | 2327 | TAEC-CRT-00071142 | TAEC-CRT-00071143 | |
| 2328 | 2328 | PTC-00001802 | PTC-00001832 | |
| 2329 | 2329 | PTC-00002381 | PTC-00002381 | |
| 2331 | 2331 | PHLP-CRT-034414 | PHLP-CRT-034414 | |
| 2332 | 2332 | PHLP-CRT-034415 | PHLP-CRT-034415 | |
| 2333 | 2333 | PHLP-CRT-089651 | PHLP-CRT-089652 | |
| 2334 | 2334 | FOX00207286 | FOX00207286 | |
| 2335 | 2335 | PTC-00007637 | PCT-00007639 | |
| 2336 | 2336 | PHLP-CRT-089918 | PHLP-CRT-089918 | |
| 2337 | 2337 | PHLP-CRT-094860 | PHLP-CRT-094861 | |
| 2338 | 2338 | JLJ-00005511 | JLJ-00005513 | |
| 2339 | 2339 | JLJ-00005514 | JLJ-00005514 | |
| 2340 | 2340 | PTC-00007204 | PTC-00007204 | |
| 2341 | 2341 | PTC-00007205 | PTC-00007205 | |
| 2342 | 2342 | PHLP-CRT-090221 | PHLP-CRT-090221 | |
| 2343 | 2343 | SDCRT-0005170 | SDCRT-0005176 | |
| 2344 | 2344 | PTC-00006569 | PFTC-00006570 | |
| 2345 | 2345 | FOX00207394 | FOX00207398 | |

| Temporary Trial Ex. No. | Deposition Ex. No. | Beg Bates | End Bates | Production Beg Bates |
|---|---|---|---|---|
| 2346 | 2346 | PHLP-CRT-026590 | PHLP-CRT-026593 | |
| 2347 | 2347 | PHLP-CRT-090993 | PHLP-CRT-090993 | |
| 2348 | 2348 | PHLP-CRT-091458 | PHLP-CRT-091460 | |
| 2349 | 2349 | PHLP-CRT-091465 | PHLP-CRT-091470 | |
| 2351 | 2351 | JLJ-00004807 | JLJ-00004807 | |
| 2352 | 2352 | PHLP-CRT-033585 | PHLP-CRT-033590 | |
| 2354 | 2354 | CHU00036394 | CHU00036395 | |
| 2356 | 2356 | PHLP-CRT-007892 | PHLP-CRT-007892 | |
| 2357 | 2357 | CHU00030499 | CHU00030499 | |
| 2359 | 2359 | PHLP-CRT-028391 | PHLP-CRT-028393 | |
| 2360 | 2360 | JLJ-00003191 | JLJ-00003193 | |
| 2361 | 2361 | MTPD-0015858 | MTPD-0015858 | |
| 2362 | 2362 | PHLP-CRT-093813 | PHLP-CRT-093813 | |
| 2363 | 2363 | JLJ-00004606 | JLJ-00004606 | |
| 2364 | 2364 | PHLP-CRT-087304 | PHLP-CRT-087308 | |
| 2365 | 2365 | JLJ-00001899 | JLJ-00001904 | |
| 2367 | 2367 | MTPD-0483335 | MTPD-0483337 | |
| 2368 | 2368 | PHLP-CRT-016424 | PHLP-CRT-016425 | |
| 2369 | 2369 | PHLP-CRT-026464 | PHLP-CRT-026464 | |
| 2370 | 2370 | MTPD-0209557 | MTPD-0209557 | |
| 2371 | 2371 | PHLP-CRT-091703 | PHLP-CRT-091705 | |
| 2372 | 2372 | LPD-NL00174797 | LPD-NL00174805 | |
| 2388 | 2388 | HDP-CRT00042019 | HDP-CRT00042023 | |
| 2445 | 2445 | SDCRT-0180438 | SDCRT-0180438 | |
| 2449 | 2449 | SDCRT-0051317 | SDCRT-0051354 | |
| 2450 | 2450 3361 | Samsung SDI Defendants' Second Supplemental Responses to DPPs' First Set of Interrogatories Nos. 4 & 5 | | |
| 2456 | 2456 | SDCRT-0007266 | SDCRT-0007273 | |
| 2466 | 2466 | SDCRT-0088431 | SDCRT-0088432 | |
| 2472 | 2472 | SDCRT-0185053 | SDCRT-0185053 | |
| 2473 | 2473 | SDCRT-0008963 | SDCRT-0008964 | |
| 2506 | 2506 | HDP-CRT00025993 | HDP-CRT00025996 | |
| 2600 | 2600 | CHU00028521 | CHU00028523 | |
| 2601 | 2601 | CHU00028516 | CHU00028518 | |
| 2604 | 2604 | CHU00028495 | CHU00028496 | |
| 2611 | 2611 | CHU00028427 | CHU00028429 | |
| 2612 | 2612 | CHU00030965 | CHU00030970 | |
| 2613 | 2613 | CHU00028425 | CHU00028426 | |
| 2656 | 2656 | HEDUS-CRT00158204 | HEDUS-CRT00158205 | |
| 2657 | 2657 | HEDUS-CRT00158744 | HEDUS-CRT00158745 | |
| 2658 | 2658 | HEDUS-CRT00152622 | HEDUS-CRT00152624 | |

| Temporary Trial Ex. No. | Deposition Ex. No. | Beg Bates | End Bates | Production Beg Bates |
|---|---|---|---|---|
| 2680 | 2680 | SDCRT-0007599 | SDCRT-0007600 | |
| 2681 | 2681 | SDCRT-0105131 | SDCRT-0105134 | |
| 2682 | 2682 | SDCRT-0199136 | SDCRT-0199139 | |
| 2683 | 2683 | SDCRT-0023249 | SDCRT-0023265 | |
| 2684 | 2684 | SDCRT-0005946 | SDCRT-0005948 | |
| 2685 | 2685 | SDCRT-0005819 | SDCRT-0005819 | |
| 2686 | 2686 | SDCRT-0005820 | SDCRT-0005820 | |
| 2687 | 2687 | SDCRT-0191510 | SDCRT-0191512 | |
| 2688 | 2688 | SDCRT-0081019 | SDCRT-0081020 | |
| 2689 | 2689 | SDCRT-0198856 | SDCRT-0198857 | |
| 2691 | 2691 | SDCRT-0066708 | SDCRT-0066709 | |
| 2693 | 2693 | SDCRT-0066930 | SDCRT-0066934 | |
| 2694 | 2694 | SDCRT-0049375 | SDCRT-0049376 | |
| 2695 | 2695 | SDCRT-0051252 | SDCRT-0051255 | |
| 2697 | 2697 | BMCC-CRT000142063 | BMCC-CRT000142063 | |
| 2698 | 2698 | SDCRT-0104690 | SDCRT-0104690 | |
| 2700 | 2700 | SDCRT-0104692 | SDCRT-0104692 | |
| 2701 | 2701 | SDCRT-0129743 | SDCRT-0129743 | |
| 2702 | 2702 | SDCRT-0105118 | SDCRT-0105118 | |
| 2750 | 2750 | PHLP-CRT-091072 | PHLP-CRT-091073 | |
| 2751 | 2751 | PHLP-CRT-090413 | PHLP-CRT-090414 | |
| 2752 | 2752 | PHLP-CRT-090140 | PHLP-CRT-090140 | |
| 2753 | 2753 | PHLP-CRT-090248 | PHLP-CRT-090249 | |
| 2754 | 2754 | JLJ-00004273 | JLJ-00004273 | |
| 2755 | 2755 | PHLP-CRT-095739 | PHLP-CRT-095740 | |
| 2756 | 2756 2790 | PHLP-CRT-097351 | PHLP-CRT-097352 | |
| 2757 | 2757 | FOX00232869 | FOX00232870 | |
| 2758 | 2758 | PHLP-CRT-087420 | PHLP-CRT-087422 | |
| 2759 | 2759 | PHLP-CRT-094627 | PHLP-CRT-094644 | |
| 2760 | 2760 | PHLP-CRT-084661 | PHLP-CRT-084665 | |
| 2763 | 2763 | PHLP-CRT-092571 | PHLP-CRT-092574 | |
| 2764 | 2764 | LPD-0000280 | LPD-0000280 | |
| 2765 | 2765 | PTC-00004295 | PTC-00004297 | |
| 2766 | 2766 | PHLP-CRT-087780 | PHLP-CRT-087781 | |
| 2767 | 2767 | JLJ-00001928 | JLJ-00001928 | |
| 2768 | 2768 | MTPD-0197518 | MTPD-0197519 | |
| 2769 | 2769 | MTPD-0218782 | MTPD-0218784 | |
| 2770 | 2770 | MTPD-0198889 | MTPD-0198890 | |
| 2771 | 2771 | MTPD-0226478 | MTPD-0226480 | |
| 2772 | 2772 | MTPD-0011040 | MTPD-0011045 | |
| 2773 | 2773 | JLJ-00005805 | JLJ-00005809 | |
| 2774 | 2774 | PHLP-CRT-090322 | PHLP-CRT-090323 | |
| 2775 | 2775 | PHLP-CRT-084363 | PHLP-CRT-084365 | |
| 2776 | 2776 | PHLP-CRT-024924 | PHLP-CRT-024925 | |
| 2777 | 2777 | MTPD-0276153 | MTPD-0276154 | |

| Temporary Trial Ex. No. | Deposition Ex. No. | Beg Bates | End Bates | Production Beg Bates |
|---|---|---|---|---|
| 2778 | 2778 | MTPD-0016475 | MTPD-0016476 | |
| 2779 | 2779 | MTPD-0276234 | MTPD-0276237 | |
| 2780 | 2780 | MTPD-0183877 | MTPD-0183878 | |
| 2781 | 2781 | MTPD-0014013 | MTPD-0014016 | |
| 2784 | 2784 | MTPD-0024653 | MTPD-0024653 | |
| 2785 | 2785 | MTPD-0027781 | MTPD-0027783 | |
| 2789 | 2789 | PHLP-CRT-086017 | PHLP-CRT-086018 | |
| 2924 | 2924 | CHU00028514 | CHU00028514 | |
| 2924 | 2924 | EIN0108252 | EIN0108266 | |
| 2925 | 2925 | CHU00028505 | CHU00028506 | |
| 2925 | 2925 | FOX00106672 | FOX00106672 | |
| 2926 | 2926 | SDCRT-0002562 | SDCRT-0002562 | |
| 2927 | 2927 | SDCRT-0002582 | SDCRT-0002582 | |
| 2928 | 2928 | PHLP-CRT-012074 | PHLP-CRT-012075 | |
| 3305 | 3305 | MTPD-0027035 | MTPD-0027037 | |
| 3319 | 3319 | PHLP-CRT-091383; PHLP-CRT-096371 | PHLP-CRT-091388; PHLP-CRT-096388 | |
| 3320 | 3320 | PHLP-CRT-084379 | PHLP-CRT-084388 | |
| 3321 | 3321 | PHLP-CRT-096369 | PHLP-CRT-096370 | |
| 3322 | 3322 | PHLP-CRT-014431 | PHLP-CRT-014448 | |
| 3323 | 3323 | PHLP-CRT-014413 | PHLP-CRT-014415 | |
| 3325 | 3325 | PHLP-CRT-019930 | PHLP-CRT-019942 | |
| 3327 | 3327 | PHLP-CRT-022244 | PHLP-CRT-022245 | |
| 3328 | 3328 | PHLP-CRT-024999 | PHLP-CRT-025000 | |
| 3329 | 3329 | PHLP-CRT-015346 | PHLP-CRT-015348 | |
| 3330 | 3330 | PHLP-CRT-031617 | PHLP-CRT-031618 | |
| 3331 | 3331 | PHLP-CRT-033503 | PHLP-CRT-033504 | |
| 3332 | 3332 | PHLP-CRT-009599 | PHLP-CRT-009599 | |
| 3336 | 3336 | SDCRT-0006799 | SDCRT-0006801 | |
| 3337 | 3337 | SDCRT-0090100 | SDCRT-0090101 | SDCRT-0089426 |
| 3339 | 3339 | SDCRT-0088635 | SDCRT-0088660 | SDCRT-0088635 |
| 3340 | 3340 | SDCRT-0090102 | SDCRT-0090112 | SDCRT-0089426 |
| 3341 | 3341 | PHLP-CRT-020159 | PHLP-CRT-020162 | |
| 3342 | 3342 | PHLP-CRT-036200 | PHLP-CRT-036202 | |
| 3343 | 3343 | PHLP-CRT-030092 | PHLP-CRT-030092 | |
| 3344 | 3344 | PHLP-CRT-028034 | PHLP-CRT-028035 | |
| 3345 | 3345 | PHLP-CRT-033435 | PHLP-CRT-033436 | |
| 3346 | 3346 | PHLP-CRT-010267 | PHLP-CRT-010268 | |
| 3347 | 3347 | PHLP-CRT-034139 | PHLP-CRT-034142 | |
| 3348 | 3348 | PHLP-CRT-011458 | PHLP-CRT-011459 | |
| 3349 | 3349 | PHLP-CRT-027540 | PHLP-CRT-027541 | |
| 3350 | 3350 | PHLP-CRT-037126 | PHLP-CRT-037135 | |
| 3352 | 3352 | PHLP-CRT-019008 | PHLP-CRT-019009 | |
| 3353 | 3353 | PHLP-CRT-015909 | PHLP-CRT-015910 | |

| Temporary Trial Ex. No. | Deposition Ex. No. | Beg Bates | End Bates | Production Beg Bates |
|---|---|---|---|---|
| 3355 | 3355 | PHLP-CRT-031643; PHLP-CRT-031644 PHLP-CRT-037136 | PHLP-CRT-037143; PHLP-CRT-031644 PHLP-CRT-037136 | |
| 3356 | 3356 | PHLP-CRT-028048 | PHLP-CRT-028050 | |
| 3357 | 3357 | PHLP-CRT-035906 | PHLP-CRT-035907 | |
| 3358 | 3358 | PHLP-CRT-026556 | PHLP-CRT-026558 | |
| 3359 | 3359 | PHLP-CRT-009416 | PHLP-CRT-009417 | |
| 3360 | 3360 | PHLP-CRT-014485 | PHLP-CRT-014493 | |
| 3362 | 3362 | PHLP-CRT-031189 | PHLP-CRT-031190 | |
| 3401 | 3401 | MTPD-0423651 | MTPD-0423651 | |
| 3402 | 3402 | MTPD-0576449 | MTPD-0576452 | |
| 3404 | 3404 | MTPD-0483334 | MTPD-0483338 | |
| 3804 | 3804 | HDP-CRT00052643 | HDP-CRT00052643 | |
| 3811 | 3811 | Subpoena to Testify at a Deposition in a Civil Action - Woong Rae Kim (Mar 20, 2014). | | |
| 3812 | 3812 | SDCRT-0008147 | SDCRT-0008148 | |
| 3813 | 3813 | SDCRT-0050694 | SDCRT-0050694 | |
| 3814 | 3814 | SDCRT-0050691 | SDCRT-0050691 | |
| 3815 | 3815 | SDCRT-0050692 | SDCRT-0050692 | |
| 3816 | 3816 | SDCRT-0050693 | SDCRT-0050693 | |
| 3817 | 3817 | SDCRT-0049872 | SDCRT-0049873 | |
| 3818 | 3818 | SDCRT-0049874 | SDCRT-0049874 | |
| 3819 | 3819 | SDCRT-0006285 | SDCRT-0006286 | |
| 3820 | 3820 | SDCRT-0073747 | SDCRT-0073748 | |
| 3821 | 3821 | SDCRT-0085464 | SDCRT-0085464 | |
| 3822 | 3822 | MTPD-0320255 | MTPD-0320256 | |
| 3824 | 3824 | MTPD-0260253 | MTPD-0260253 | |
| 3825 | 3825 | SDCRT-0002593 | SDCRT-0002594 | |
| 3826 | 3826 | MTPD-0297036 | MTPD-0297036 | |
| 3827 | 3827 | MTPD-0305615 | MTPD-0305616 | |
| 3829 | 3829 | MTPD-0009521 | MTPD-0009521 | |
| 3830 | 3830 | FOX00069472 | FOX00069507 | |
| 3831 | 3831 | FOX00069440 | FOX00069471 | |
| 3832 | 3832 | FOX00069536 | FOX00069571 | |
| 3833 | 3833 | FOX00069392 | FOX00069413 | |
| 3834 | 3834 | FOX00069284 | FOX00069307 | |
| 3835 | 3835 | FOX00069260 | FOX00069283 | |
| 3836 | 3836 | FOX00069216 | FOX00069235 | |
| 3837 | 3837 | FOX00069178 | FOX00069201 | |
| 3838 | 3838 | SDCRT-0084195 | SDCRT-0084198 | |
| 3839 | 3839 | SDCRT-0085666 | SDCRT-0085668 | |
| 3841 | 3841 | SDCRT-0002488 | SDCRT-0002489 | |
| 3842 | 3842 | SDCRT-0199804 | SDCRT-0199805 | |

| Temporary Trial Ex. No. | Deposition Ex. No. | Beg Bates | End Bates | Production Beg Bates |
|---|---|---|---|---|
| 3843 | 3843 | SDCRT-0199847 | SDCRT-0199850 | |
| 4002 | 4002 | PHLP-CRT-052781 | PHLP-CRT-052781 | |
| 4007 | 4007 | PHLP-CRT-051982 | PHLP-CRT-052085 | |
| 5202 | 5202 | PHLP-CRT-081079 | PHLP-CRT-081081 | |
| 5206 | 5206 | HEDUS-CRT00166472 | HEDUS-CRT00166472 | |
| 5207 | 5207 | PHLP-CRT-088299 | PHLP-CRT-088305 | |
| 5208 | 5208 | JLJ-00003477 | JLJ-00003477 | |
| 5209 | 5209 | SDCRT-0002506 | SDCRT-0002510 | |
| 5209 | 5209 | SDCRT-0002506 | SDCRT-0002510 | |
| 5211 | 5211 | JLJ-00003823 | JLJ-00003824 | |
| 5213 | 5213 | JLJ-00003898 | JLJ-00003898 | |
| 5214 | 5214 | JLJ-00003899 | JLJ-00003899 | |
| 5216 | 5216 | PHLP-CRT-093302 | PHLP-CRT-093303 | |
| 5217 | 5217 | PHLP-CRT-093375 | PHLP-CRT-093377 | |
| 5219 | 5219 | JLJ-00003116 | JLJ-00003116 | |
| 5220 | 5220 | JLJ-00001259 | JLJ-00001260 | |
| 5221 | 5221 | PHLP-CRT-091088 | PHLP-CRT-091089 | |
| 5222 | 5222 | JLJ-00003167 | JLJ-00003168 | |
| 5223 | 5223 | TSB-CRT-00035366 | TSB-CRT-00035366 | TSB-CRT-00035350 |
| 5224 | 5224 | PHLP-CRT-094019 | PHLP-CRT-094023 | |
| 5225 | 5225 | PHLP-CRT-091584 | PHLP-CRT-091585 | |
| 5226 | 5226 | PHLP-CRT-033754 | PHLP-CRT-033754 | |
| 5600 | 5600 | CHU00024560 | CHU00024563 | |
| 5601 | 5601 | SDCRT-0002584 | SDCRT-0002584 | |
| 5604 | 5604 | JLJ-00003328 | JLJ-00003329 | |
| 5605 | 5605 | GICHOI-0005219 | GICHOI-0005219 | |
| 5606 | 5606 | GICHOI-0005334 | GICHOI-0005334 | |
| 5607 | 5607 | GICHOI-0008763 | GICHOI-0008763 | |
| 5611 | 5611 | SDCRT-0086512 | SDCRT-0086513 | SDCRT-0086256 |
| 5841 | 5841 | TCE-CRT 0005196 | TCE-CRT 0005196 | |
| 5845 | 5845 | TCE-CRT 0007012 | TCE-CRT 0007013 | |
| 5847 | 5847 | TCE-CRT 0007339 | TCE-CRT 0007340 | |
| 6015 | 6015 | PHLP-CRT-052964 | PHLP-CRT-052965 | |
| 6096 | 6096 | PHLP-CRT-023515 | PHLP-CRT-023521 | |
| 6103 | 6103 | CHU00028548 | CHU00028550 | |
| 6111 | 6111 | ME00109911 | ME00109911 | |
| 6112 | 6112 | ME00109690 | ME00109694 | |
| 6151 | 6151 | PHLP-CRT-014141 | PHLP-CRT-014143 | |
| 6204 | 6204 8064 | SDCRT-0086511 | SDCRT-0086511 | SDCRT-0086256 |
| 6205 | 6205 | CHWA00226236 | CHWA00226269 | |
| 7202 | 7202 | PHLP-CRT-158085 | PHLP-CRT-158086 | |
| 7206 | 7206 | PHLP-CRT-149827 | PHLP-CRT-149829 | |
| 7206 | 7206 | PHLP-CRT-149827 | PHLP-CRT-149829 | |
| 7411 | 7411 | TAEC-CRT-00096971 | TAEC-CRT-00097007 | |
| 7413 | 7413 | TAEC-CRT-00066846 | TAEC-CRT-00066848 | |

| Temporary Trial Ex. No. | Deposition Ex. No. | Beg Bates | End Bates | Production Beg Bates |
|---|---|---|---|---|
| 7537 | 7537 | TSB-CRT-00042334 | TSB-CRT-00042336 | |
| 7538 | 7538 | TSB-CRT-00036875 | TSB-CRT-00036875 | |
| 7547 | 7547 | TSB-CRT-00036521 | TSB-CRT-00036522 | |
| 8047 | 8047 | SDCRT-0005858 | SDCRT-0005859 | |
| 8048 | 8048 | SDCRT-0091371 | SDCRT-0091371 | SDCRT-0091207 |
| 8049 | 8049 | SDCRT-0079526 | SDCRT-0079528 | |
| 8050 | 8050 | SDCRT-0088872 | SDCRT-0088872 | SDCRT-0088635 |
| 8055 | 8055 | MTPD-0426046 | MTPD-0426047 | |
| 8057 | 8057 | CHU00036388 | CHU00036389 | |
| 8058 | 8058 | SDCRT-0087547 | SDCRT-0087547 | SDCRT-0087441 |
| 8059 | 8059 | SDCRT-0087768 | SDCRT-0087769 | SDCRT-0087705 |
| 8068 | 8068 | SDCRT-0009387 | SDCRT-0009392 | |
| 8389 | 8389 | Amended Deposition Notice of Wenkai Zhang | | |
| 8390 | 8390 | Amended 30(b)(6) Notice of Irico Defendants | | |
| 8392 | 8392 | IRI-CRT-00003490 | IRI-CRT-00003497 | |
| 8393 | 8393 | IRI-CRT-00003498 | IRI-CRT-00003499 | |
| 8394 | 8394 | IRI-CRT-00000956 | IRI-CRT-00001010 | |
| 8395 | 8395 | IRI-CRT-00000779 | IRI-CRT-00000785 | |
| 8396 | 8396 | www.people.com.cn - Irico won the anti-dumping case - Reporter Ding Gang | | |
| 8397 | 8397 | IRI-CRT-00003669 | IRI-CRT-00003669 | |
| 8398 | 8398 | Amended Deposition Notice of Wang Zhaojie | | |
| 8400 | 8400 | Response of Irico Group Corporation and Irico Display Devices Company Limited to Plaintiffs' Information Requests | | |
| 8401 | 8401 | IRI-CRT-00002041 | IRI-CRT-00002105 | |
| 8402 | 8402 | Excerpts from Irico Annual Report (2005) | | |
| 8403 | 8403 | IRI-CRT-00001154 | IRI-CRT-00001154 | |
| 8404 | 8404 | IRI-CRT-00003568 | IRI-CRT-00003569 | |
| 8405 | 8405 | IRI-CRT-00003566 | IRI-CRT-00003567 | |
| 8406 | 8406 | IRI-CRT-00003570 | IRI-CRT-00003571 | |
| 8407 | 8407 | IRI-CRT-00003576 | IRI-CRT-00003577 | |
| 8408 | 8408 | IRI-CRT-00003578 | IRI-CRT-00003579 | |

| Temporary Trial Ex. No. | Deposition Ex. No. | Beg Bates | End Bates | Production Beg Bates |
|---|---|---|---|---|
| 8409 | 8409 | IRI-CRT-00003584 | IRI-CRT-00003585 | |
| 8410 | 8410 | IRI-CRT-00003586 | IRI-CRT-00003587 | |
| 8411 | 8411 | IRI-CRT-00003588 | IRI-CRT-00003589 | |
| 8412 | 8412 | IRI-CRT-00003594 | IRI-CRT-00003595 | |
| 8413 | 8413 | IRI-CRT-00003546 | IRI-CRT-00003546 | |
| 8416 | 8416 | IRI-CRT-00001026 | IRI-CRT-00001067 | |
| 8418 | 8418 | IRI-CRT-00000232 | IRI-CRT-00000321 | |
| 8420 | 8420 | CHU00030684 | CHU00030687 | |
| 8421 | 8421 | CHU00030734 | CHU00030737 | |
| 8422 | 8422 | CHU00030752 | CHU00030755 | |
| 8423 | 8423 | CHU00030769 | CHU00030770 | |
| 8425 | 8425 | SDCRT-0091524 | SDCRT-0091530 | |
| 8557 | 8557 | IRI-CRT-00004769 | IRI-CRT-00004773 | |
| 8558 | 8558 | IRI-CRT-00004817 | IRI-CRT-00004823 | |
| 8559 | 8559 | BMCC-CRT000113389 | BMCC-CRT000113391 | |
| 8561 | 8561 | IRI-CRT-00008236 | IRI-CRT-00008239 | |
| 8562 | 8562 | IRI-CRT-00008241 | IRI-CRT-00008245 | |
| 8563 | 8563 | IRI-CRT-00020490; IRI-CRT-00020501 | IRI-CRT-00020490; IRI-CRT-00020502 | |
| 8564 | 8564 | CHU00124779 | CHU00124785 | |
| 8565 | 8565 | CHU00124663 | CHU00124674 | |
| 8566 | 8566 | CHU00123502 | CHU00123517 | |
| 8567 | 8567 | CHU00505497 | CHU00505513 | |
| 8568 | 8568 8641 | CHU00102751 | CHU00102764 | |
| 8569 | 8569 8620 | CHU00102864 | CHU00102865 | |
| 8570 | 8570 | CHU00047657 | CHU00047674 | |
| 8571 | 8571 | CHU00124396 | CHU00124399 | |
| 8572 | 8572 | CHU00124400 | CHU00124402 | |
| 8573 | 8573 | CHU00124417 | CHU00124419 | |
| 8574 | 8574 | CHU00016089 | CHU00016090 | |
| 8575 | 8575 | CHU00016537 | CHU00016538 | |
| 8576 | 8576 | CHU00016621 | CHU00016622 | |
| 8577 | 8577 | CHU00030196 | CHU00030197 | |
| 8578 | 8578 | CHU00016563 | CHU00016564 | |
| 8579 | 8579 | CHU00016609 | CHU00016610 | |

| Temporary Trial Ex. No. | Deposition Ex. No. | Beg Bates | End Bates | Production Beg Bates |
|---|---|---|---|---|
| 8580 | 8580 | CHU00016153 | CHU00016154 | |
| 8581 | 8581 | CHU00016137 | CHU00016138 | |
| 8582 | 8582 | CHU00016099 | CHU00016100 | |
| 8583 | 8583 | CHU00016193 | CHU00016194 | |
| 8584 | 8584 | CHU00030303 | CHU00030304 | |
| 8585 | 8585 | IRI-CRT-00032472; IRI-CRT-00032477 | IRI-CRT-00032472; IRI-CRT-00032477 | |
| 8586 | 8586 | IRI-CRT-00023923 | IRI-CRT-00023924 | |
| 8587 | 8587 | CHU00016169 | CHU00016170 | |
| 8588 | 8588 | IRI-CRT-00033205 | IRI-CRT-00033205 | |
| 8589 | 8589 | IRI-CRT-00033206 | IRI-CRT-00033209 | |
| 8590 | 8590 | BMCC-CRT000306758 | BMCC-CRT000306758 | |
| 8591 | 8591 | IRI-CRT-00024837; IRI-CRT-00024877 | IRI-CRT-00024843; IRI-CRT-00024880 | |
| 8597 | 8597 | IRI-CRT-00029848; IRI-CRT-00029853; IRI-CRT-00029858 | IRI-CRT-00029848; IRI-CRT-00029853; IRI-CRT-00029859 | IRI-CRT-00029848 |
| 8598 | 8598 | IRI-CRT-00033400 | IRI-CRT-00033402 | |
| 8599 | 8599 | IRI-CRT-00025756 | IRI-CRT-00025765 | |
| 8601 | 8601 | Baker Botts Letter to Plaintiffs' Counsel re: | | |
| 8602 | 8602 | IRI-CRT-00005996 | IRI-CRT-00005996 | |
| 8603 | 8603 | IRI-CRT-00005995 | IRI-CRT-00005995 | |
| 8604 | 8604 | Class Action Complaint | | |
| 8605 | 8605 | Irico Second Supplmental Responses to Third Set of Rogs. | | |
| 8606 | 8606 | PreTrial Order No. 1 | | |
| 8610 | 8610 | Pilsbury Law Firm Letter to Plaintiffs' Counsel | | |
| 8611 | 8611 | IRI-CRT-00025698 | IRI-CRT-00025701 | |
| 8612 | 8612 | IRI-CRT-00025753 | IRI-CRT-00025754 | |
| 8618 | 8618 | IRI-CRT-00030226 | IRI-CRT-00030232 | |
| 8619 | 8619 | CHU00123502 | CHU00123517 | |
| 8623 | 8623 | CHU00031092 | CHU00031093 | |
| 8625 | 8625 | SDCRT-0091569 | SDCRT-0091572 | |
| 8626 | 8626 | CHU00102752 | CHU00102754 | |
| 8627 | 8627 | Color photos; 3 pages | | |
| 8628 | 8628 | Color photos; 2 pages | | |
| 8629 | 8629 | TSB-CRT-00065943 | TSB-CRT-00065944 | |
| 8630 | 8630 | IRI-CRT-00007179 | IRI-CRT-00007181 | |
| 8631 | 8631 | IRI-CRT-00024269 | IRI-CRT-00024271 | |
| 8632 | 8632 | IRI-CRT-00010265 | IRI-CRT-00010267 | |
| 8633 | 8633 | CHU00728198 | CHU00728198 | |
| 8634 | 8634 | CHU00597088 | CHU00597088 | |
| 8635 | 8635 | ME 00035743 | ME 00035744 | |
| 8636 | 8636 | ME 00035644 | ME 00035644 | |
| 8637 | 8637 | HDP-CRT00047436 | HDP-CRT00047437 | |

| Temporary Trial Ex. No. | Deposition Ex. No. | Beg Bates | End Bates | Production Beg Bates |
|---|---|---|---|---|
| 8638 | 8638 | ME 00001413 | ME 00001419 (Pages ME 00001414 & ME 00001416 not included.) | |
| 8639 | 8639 | SDCRT-0091465 | SDCRT-0091467 | SDCRT-0091027 |
| 8642 | 8642 | CHU00447509 | CHU00447512 | |
| 8643 | 8643 | CHU00032940 | CHU00032947 | |
| 8644 | | BMCC-CRT000105586 | BMCC-CRT000105590 | |
| 8645 | 8645 | News article - CRT Industry Stops Production to Save Itself News article dated February 3, 2007 | | |
| 8646 | 8646 | IRI-CRT-00009364 | IRI-CRT-00009365 | |
| | | BBYCRT053101 | BBYCRT053101 | |
| | | BMCC-CRT000001186 | BMCC-CRT000001186 | |
| | | BMCC-CRT000001186 | BMCC-CRT000001186 | |
| | | BMCC-CRT000004263; BMCC-CRT000004264 | BMCC-CRT000004263; BMCC-CRT000004273 | |
| | | BMCC-CRT000004919 | BMCC--CRT000004923 | |
| | | BMCC-CRT000006910 | BMCC-CRT000006910 | |
| | | BMCC-CRT000105538 | BMCC-CRT000105542 | |
| | | BMCC-CRT000109390 | BMCC-CRT000109390 | |
| | | BMCC-CRT000109392 | BMCC-CRT000109392 | |
| | | BMCC-CRT000109395 | BMCC-CRT000109395 | |
| | | BMCC-CRT000110314 | BMCC-CRT000110314 | |
| | | BMCC-CRT000110668 | BMCC-CRT000110668 | |
| | | BMCC-CRT000110698 | BMCC-CRT000110698 | |
| | | BMCC-CRT000110717 | BMCC-CRT000110717 | |
| | | BMCC-CRT000110730 | BMCC-CRT000110731 | |
| | | BMCC-CRT000110766 | BMCC-CRT000110766 | |
| | | BMCC-CRT000110782 | BMCC-CRT000110782 | |
| | | BMCC-CRT000110853 | BMCC-CRT000110853 | |
| | | BMCC-CRT000117860 | BMCC-CRT000117866 | |
| | | BMCC-CRT000124825 | BMCC-CRT000124825 | BMCC-CRT000124822 |
| | | BMCC-CRT000127966 | BMCC-CRT000127969 | |
| | | BMCC-CRT000134418 | BMCC-CRT000134419 | BMCC-CRT000134412 |
| | | BMCC-CRT000138925 | BMCC-CRT000138929 | |
| | | BMCC-CRT000139497 | BMCC-CRT000139500 | |
| | | BMCC-CRT000206621 | BMCC-CRT000206621 | |
| | | BMCC-CRT000209947 | BMCC-CRT000209986 | |
| | | BMCC-CRT000247407 | BMCC-CRT000247409 | |
| | | BMCC-CRT000296385 | BMCC-CRT000296385 | |
| | | BMCC-CRT000540532 | BMCC-CRT000540536 | |
| | | CC0118601 | CC0118619 | |
| | | CHU00005963 | CHU00005963 | |
| | | CHU00005997 | CHU00006001 | |
| | | CHU00006004 | CHU00006006 | |

| Temporary Trial Ex. No. | Deposition Ex. No. | Beg Bates | End Bates | Production Beg Bates |
|---|---|---|---|---|
| | | CHU00011820 | CHU00011981 | |
| | | CHU00014198 | CHU00014199 | |
| | | CHU00014200 | CHU00014201 | |
| | | CHU00014202 | CHU00014206 | |
| | | CHU00017037 | CHU00017045 | |
| | | CHU00017076 | CHU00017090 | |
| | | CHU00017115 | CHU00017119 | |
| | | CHU00022696 | CHU00022696 | |
| | | CHU00023392 | CHU00023394 | |
| | | CHU00028221 | CHU00028223 | |
| | | CHU00028248 | CHU00028249 | |
| | | CHU00028286 | CHU00028286 | |
| | | CHU00028297 | CHU00028298 | |
| | | CHU00028377 | CHU00028379 | |
| | | CHU00028532 | CHU00028533 | |
| | | CHU00028565 | CHU00028566 | |
| | | CHU00028685 | CHU00028686 | |
| | | CHU00028749 | CHU00028751 | |
| | | CHU00028758 | CHU00028759 | |
| | | CHU00028763 | CHU00028767 | |
| | | CHU00028776 | CHU00028780 | |
| | | CHU00028813 | CHU00028814 | |
| | | CHU00028848 | CHU00028850 | |
| | | CHU00029046 | CHU00029047 | |
| | | CHU00029048 | CHU00029049 | |
| | | CHU00029138 | CHU00029143 | |
| | | CHU00029171 | CHU00029174 | |
| | | CHU00029214 | CHU00029220 | |
| | | CHU00029238 | CHU00029240 | |
| | | CHU00029248 | CHU00029258 | |
| | | CHU00029944 | CHU00029955 | |
| | | CHU00029977 | CHU00029984 | |
| | | CHU00029985 | CHU00029986 | |
| | | CHU00030008 | CHU00030009 | |
| | | CHU00030067 | CHU00030067 | |
| | | CHU00030071 | CHU00030078 | |
| | | CHU00030085 | CHU00030086 | |
| | | CHU00030472 | CHU00030473 | |
| | | CHU00030526 | CHU00030529 | |
| | | CHU00030661 | CHU00030663 | |
| | | CHU00030664 | CHU00030664 | |
| | | CHU00030665 | CHU00030667 | |
| | | CHU00030668 | CHU00030669 | |
| | | CHU00030670 | CHU00030674 | |
| | | CHU00030705 | CHU00030708 | |
| | | CHU00030745 | CHU00030747 | |

| Temporary Trial Ex. No. | Deposition Ex. No. | Beg Bates | End Bates | Production Beg Bates |
|---|---|---|---|---|
| | | CHU00030756 | CHU00030756 | |
| | | CHU00030763 | CHU00030765 | |
| | | CHU00030797 | CHU00030798 | |
| | | CHU00030827 | CHU00030830 | |
| | | CHU00030831 | CHU00030834 | |
| | | CHU00030843 | CHU00030845 | |
| | | CHU00030869 | CHU00030871 | |
| | | CHU00030872 | CHU00030874 | |
| | | CHU00030881 | CHU00030884 | |
| | | CHU00030910 | CHU00030911 | |
| | | CHU00030917 | CHU00030919 | |
| | | CHU00030941 | CHU00030943 | |
| | | CHU00030946 | CHU00030947 | |
| | | CHU00030953 | CHU00030956 | |
| | | CHU00030973 | CHU00030975 | |
| | | CHU00031002 | CHU00031005 | |
| | | CHU00031018 | CHU00031020 | |
| | | CHU00031032 | CHU00031035 | |
| | | CHU00031040 | CHU00031043 | |
| | | CHU00031044 | CHU00031046 | |
| | | CHU00031067 | CHU00031069 | |
| | | CHU00031070 | CHU00031074 | |
| | | CHU00031088 | CHU00031091 | |
| | | CHU00031101 | CHU00031104 | |
| | | CHU00031105 | CHU00031106 | |
| | | CHU00031107 | CHU00031109 | |
| | | CHU00031183 | CHU00031185 | |
| | | CHU00031190 | CHU00031193 | |
| | | CHU00031202 | CHU00031208 | |
| | | CHU00032948 | CHU00032959 | |
| | | CHU00036378 | CHU00036380 | |
| | | CHU00036382 | CHU00036383 | |
| | | CHU00036398 | CHU00036401 | |
| | | CHU00036406 | CHU00036407 | |
| | | CHU00040988 | CHU00041361 | |
| | | CHU00041192 | CHU00041193 | CHU00040988 |
| | | CHU00043925 | CHU00043926 | |
| | | CHU00047657 | CHU00047657 | |
| | | CHU00047658 | CHU00047662 | |
| | | CHU00047663 | CHU00047674 | |
| | | CHU00071480 | CHU00071482 | |
| | | CHU00082243 | CHU00082243 | |
| | | CHU00082244 | CHU00082286 | |
| | | CHU00082287 | CHU00082291 | |
| | | CHU00082292 | CHU00082295 | |
| | | CHU00093512 | CHU00093519 | |

| Temporary Trial Ex. No. | Deposition Ex. No. | Beg Bates | End Bates | Production Beg Bates |
|---|---|---|---|---|
| | | CHU00102755 | CHU00102764 | |
| | | CHU00108395 | CHU00108407 | |
| | | CHU00113999 | CHU00113999 | |
| | | CHU00122400 | CHU00122408 | |
| | | CHU00123274 | CHU00123287 | |
| | | CHU00123393 | CHU00123397 | |
| | | CHU00124024 | CHU00124026 | |
| | | CHU00124396 | CHU00124399 | |
| | | CHU00124413 | CHU00124416 | |
| | | CHU00124675 | CHU00124683 | |
| | | CHU00124779 | CHU00124785 | |
| | | CHU00124993 | CHU00124994 | |
| | | CHU00125157 | CHU00125161 | |
| | | CHU00125190 | CHU00125191 | |
| | | CHU00126131 | CHU00126133 | |
| | | CHU00247507 | CHU00247507 | |
| | | CHU00303245 | CHU00303245 | |
| | | CHU00376141 | CHU00376142 | |
| | | CHU00483976 | CHU00483976 | |
| | | CHU00505502 | CHU00505513 | |
| | | CHU00552252 | CHU00552253 | |
| | | CHU00564355 | CHU00564355 | |
| | | CHU00564356 | CHU00564369 | |
| | | CHU00571301 | CHU00571302 | |
| | | CHU00572096 | CHU00572097 | |
| | | CHU00572098 | CHU00572098 | |
| | | CHU00572996; CHU00572998; CHU00573026; CHU00573034 | CHU00572997; CHU00572998; CHU00573026; CHU00573035 | |
| | | CHU00578887 | CHU00578894 | |
| | | CHU00608767 | CHU00608773 | |
| | | CHU00624682 | CHU00624682 | |
| | | CHU00628898 | CHU00628952 | |
| | | CHU00633824 | CHU00633826 | |
| | | CHU00633905 | CHU00633909 | |
| | | CHU00635116 | CHU00635116 | |
| | | CHU00636165 | CHU00636165 | |
| | | CHU00646093 | CHU00646093 | |
| | | CHU00656174 | CHU00656174 | |
| | | CHU00660200 | CHU00660201 | |
| | | CHU00660217 | CHU00660220 | |
| | | CHU00660298 | CHU00660301 | |
| | | CHU00660350 | CHU00660352 | |
| | | CHU00660501 | CHU00660514 | |
| | | CHU00660539 | CHU00660548 | |

| Temporary Trial Ex. No. | Deposition Ex. No. | Beg Bates | End Bates | Production Beg Bates |
|---|---|---|---|---|
| | | CHU00660561 | CHU00660574 | |
| | | CHU00660699 | CHU00660708 | |
| | | CHU00660728 | CHU00660735 | |
| | | CHU00661917 | CHU00661928 | |
| | | CHU00689067; CHU00689069 | CHU00689068; CHU00689193 | |
| | | CHU00690421 | CHU00690421 | |
| | | CHU00725770 | CHU00725772 | |
| | | CHU00732798 | CHU00732799 | |
| | | CHU00734336 | CHU00734336 | |
| | | CHU00734728 | CHU00734728 | |
| | | CHU00735375 | CHU00735377 | |
| | | CHWA00010847 | CHWA00010849 | |
| | | CRT001134 | CRT001175 | |
| | | CRT001176 | CRT001190 | |
| | | CRT001191 | CRT001237 | |
| | | CRT001238 | CRT001260 | |
| | | CRT001261 | CRT001308 | |
| | | CRT001309 | CRT001309 | |
| | | CRT001310 | CRT001351 | |
| | | CRT001352 | CRT001394 | |
| | | EIN0003750 | EIN0003798 | |
| | | EIN0051144 | EIN0051170 | EIN0051143 |
| | | EIN0093375 | EIN0093398 | EIN0093371 |
| | | EIN0107841 | EIN0107844 | |
| | | FOX00034021 | FOX00034082 | |
| | | FOX00034352 | FOX00034364 | |
| | | FOX00106898 | FOX00106898 | |
| | | HDP-CRT00002269 | HDP-CRT00002282 | |
| | | HDP-CRT00026806 | HDP-CRT00026811 | |
| | | HDP-CRT00030227 | HDP-CRT00030229 | |
| | | HDP-CRT00030776 | HDP-CRT00030776 | |
| | | HDP-CRT00033906 | HDP-CRT00033914 | |
| | | HDP-CRT00046004 | HDP-CRT00046005 | |
| | | HDP-CRT00046006 | HDP-CRT00046006 | |
| | | HDP-CRT00046594; HDP-CRT00046595 | HDPT-CRT0046594; HDP-CRT00046600 | |
| | | HDP-CRT00047354 | HDP-CRT00047360 | |
| | | HDP-CRT00051172 | HDP-CRT00051172 | |
| | | HDP-CRT00056062 | HDP-CRT00056063 | |
| | | HEDUS-CRT00000578 | HEDUS-CRT00000578 | |
| | | HEDUS-CRT00001714 | HEDUS-CRT00001714 | |
| | | HEDUS-CRT00018407 | HEDUS-CRT00018470 | |
| | | HEDUS-CRT00044346 | HEDUS-CRT00044371 | |
| | | HEDUS-CRT00049395 | HEDUS-CRT00049396 | |
| | | HEDUS-CRT00062277 | HEDUS-CRT00062278 | |

| Temporary Trial Ex. No. | Deposition Ex. No. | Beg Bates | End Bates | Production Beg Bates |
|---|---|---|---|---|
| | | HEDUS-CRT00104763 | HEDUS-CRT00104768 | |
| | | HEDUS-CRT00126016 | HEDUS-CRT00126021 | |
| | | HEDUS-CRT00155212 | HEDUS-CRT-00155213 | |
| | | HEDUS-CRT00164378 | HEDUS-CRT00164379 | |
| | | HEDUS-CRT00189334 | HEDUS-CRT00189346 | |
| | | IRI-CRT-00000046 | IRI-CRT-00000080 | |
| | | IRI-CRT-00000406; IRI-CRT-00000413; IRI-CRT-00000486 | IRI-CRT-00000406; IRI-CRT-00000414; IRI-CRT-00000486 | IRI-CRT-00000406 |
| | | IRI-CRT-00000487 | IRI-CRT-00000487 | |
| | | IRI-CRT-00000530 | IRI-CRT-00000532 | |
| | | IRI-CRT-00000721 | IRI-CRT-00000729 | |
| | | IRI-CRT-00000744 | IRI-CRT-00000751 | |
| | | IRI-CRT-00000773 | IRI-CRT-00000778 | |
| | | IRI-CRT-00002847 IRI-CRT-00002885 | IRI-CRT-00002847 IRI-CRT-00002889 | IRI-CRT-00002811 |
| | | IRI-CRT-00003199; IRI-CRT-00003201; IRI-CRT-00003223 | IRI-CRT-00003199; IRI-CRT-00003202; IRI-CRT-00003224 | IRI-CRT-00003199 |
| | | IRI-CRT-00003544 | IRI-CRT-00003544 | |
| | | IRI-CRT-00003545 | IRI-CRT-00003545 | |
| | | IRI-CRT-00003545 | IRI-CRT-00003545 | |
| | | IRI-CRT-00003546 | IRI-CRT-00003546 | |
| | | IRI-CRT-00003547 | IRI-CRT-00003547 | |
| | | IRI-CRT-00003547 | IRI-CRT-00003547 | |
| | | IRI-CRT-00003561; IRI-CRT-00003565 | IRI-CRT-00003561; IRI-CRT-00003565 | |
| | | IRI-CRT-00003574 | IRI-CRT-00003575 | |
| | | IRI-CRT-00003580 | IRI-CRT-00003581 | |
| | | IRI-CRT-00003582 | IRI-CRT-00003583 | |
| | | IRI-CRT-00003592 | IRI-CRT-00003593 | |
| | | IRI-CRT-00003598 | IRI-CRT-00003598 | |
| | | IRI-CRT-00003630 | IRI-CRT-00003631 | |
| | | IRI-CRT-00004177 | IRI-CRT-00004187 | IRI-CRT-00004169 |
| | | IRI-CRT-00004213; IRI-CRT-00004214; IRI-CRT-00004231; IRI-CRT-00004244 | IRI-CRT-00004213; IRI-CRT-00004214; IRI-CRT-00004231; IRI-CRT-00004244 | |
| | | IRI-CRT-00004248; IRI-CRT-00004249; IRI-CRT-00004251; IRI-CRT-00004256; IRI-CRT-00004259; IRI-CRT-00004267 | IRI-CRT-00004248; IRI-CRT-00004249; IRI-CRT-00004251; IRI-CRT-00004257; IRI-CRT-00004260; IRI-CRT-00004267 | IRI-CRT-00004248 |
| | | IRI-CRT-00004268 | IRI-CRT-00004292 | IRI-CRT-00004248 |
| | | IRI-CRT-00004420 | IRI-CRT-00004437 | IRI-CRT-00004417 |

| Temporary Trial Ex. No. | Deposition Ex. No. | Beg Bates | End Bates | Production Beg Bates |
|---|---|---|---|---|
| | | IRI-CRT-00004757 | IRI-CRT-00004764 | IRI-CRT-00004673 |
| | | IRI-CRT-00004769 | IRI-CRT-00004773 | IRI-CRT-00004673 |
| | | IRI-CRT-00004776 | IRI-CRT-00004783 | IRI-CRT-00004673 |
| | | IRI-CRT-00004791 | IRI-CRT-00004803 | IRI-CRT-00004673 |
| | | IRI-CRT-00004824 | IRI-CRT-00004830 | IRI-CRT-00004673 |
| | | IRI-CRT-00005651; IRI-CRT-00005654; IRI-CRT-00005661 | IRI-CRT-00005651; IRI-CRT-00005656; IRI-CRT-00005662 | |
| | | IRI-CRT-00006827 | IRI-CRT-00006830 | |
| | | IRI-CRT-00008176 | IRI-CRT-00008184 | |
| | | IRI-CRT-00008191 | IRI-CRT-00008239 | |
| | | IRI-CRT-00008194 | IRI-CRT-00008196 | |
| | | IRI-CRT-00008205 | IRI-CRT-00008208 | |
| | | IRI-CRT-00008272 | IRI-CRT-00008280 | |
| | | IRI-CRT-00008316 | IRI-CRT-00008332 | |
| | | IRI-CRT-00008418 | IRI-CRT-00008424 | IRI-CRT-00008248 |
| | | IRI-CRT-00008425 | IRI-CRT-00008432 | |
| | | IRI-CRT-00008626 | IRI-CRT-00008643 | IRI-CRT-00008624 |
| | | IRI-CRT-00008730 | IRI-CRT-00008736 | IRI-CRT-00008664 |
| | | IRI-CRT-00008773 | IRI-CRT-00008776 | |
| | | IRI-CRT-00008843 | IRI-CRT-00008859 | |
| | | IRI-CRT-00009083 | IRI-CRT-00009086 | |
| | | IRI-CRT-00009335; IRI-CRT-00009366; IRI-CRT-00009371 | IRI-CRT-00009335; IRI-CRT-00009367; IRI-CRT-00009373 | IRI-CRT-00009232 |
| | | IRI-CRT-00010053; IRI-CRT-00010063; IRI-CRT-00010065; IRI-CRT-00010081 | IRI-CRT-00010054; IRI-CRT-00010063; IRI-CRT-00010065; IRI-CRT-00010082 | IRI-CRT-00010053 |
| | | IRI-CRT-00010705 | IRI-CRT-00010712 | |
| | | IRI-CRT-00012210; IRI-CRT-00012219 | IRI-CRT-00012210; IRI-CRT-00012220 | |
| | | IRI-CRT-00012340; IRI-CRT-00012344; IRI-CRT-00012445; IRI-CRT-00012760 | IRI-CRT-00012340; IRI-CRT-00012347; IRI-CRT-00012446; IRI-CRT-00012760 | IRI-CRT-00012340 |
| | | IRI-CRT-00012910; IRI-CRT-00013067; IRI-CRT-00013070 | IRI-CRT-00012910; IRI-CRT-00013067; IRI-CRT-00013070 | IRI-CRT-00012910 |
| | | IRI-CRT-00012910; IRI-CRT-00013067; IRI-CRT-00013070 | IRI-CRT-00012910; IRI-CRT-00013068; IRI-CRT-00013070 | IRI-CRT-00012910 |
| | | IRI-CRT-00013325; IRI-CRT-00013330; IRI-CRT-00013379 | IRI-CRT-00013325; IRI-CRT-00013331; IRI-CRT-00013379 | IRI-CRT-00013325 |

| Temporary Trial Ex. No. | Deposition Ex. No. | Beg Bates | End Bates | Production Beg Bates |
|---|---|---|---|---|
| | | IRI-CRT-00013520;<br>IRI-CRT-00013569;<br>IRI-CRT-00013570;<br>IRI-CRT-00013580 | IRI-CRT-00013520;<br>IRI-CRT-00013569;<br>IRI-CRT-00013570;<br>IRI-CRT-00013582 | IRI-CRT-00013520 |
| | | IRI-CRT-00014246;<br>IRI-CRT-00014266 | IRI-CRT-00014246;<br>IRI-CRT-00014269 | IRI-CRT-00014246 |
| | | IRI-CRT-00014376;<br>IRI-CRT-00014426;<br>IRI-CRT-00014435;<br>IRI-CRT-00014456 | IRI-CRT-00014376;<br>IRI-CRT-00014429;<br>IRI-CRT-00014435;<br>IRI-CRT-00014456 | IRI-CRT-00014376 |
| | | IRI-CRT-00014508 | IRI-CRT-00014510 | IRI-CRT-00014508 |
| | | IRI-CRT-00014545;<br>IRI-CRT-00014555;<br>IRI-CRT-00014562 | IRI-CRT-00014545;<br>IRI-CRT-00014556;<br>IRI-CRT-00014562 | IRI-CRT-00014545 |
| | | IRI-CRT-00014661;<br>IRI-CRT-00014664;<br>IRI-CRT-00014671 | IRI-CRT-00014661;<br>IRI-CRT-00014667;<br>IRI-CRT-00014671 | IRI-CRT-00014661 |
| | | IRI-CRT-00017691;<br>IRI-CRT-00017693;<br>IRI-CRT-00017669;<br>IRI-CRT-00017712 | IRI-CRT-00017691;<br>IRI-CRT-00017696;<br>IRI-CRT-00017669;<br>IRI-CRT-00017712 | IRI-CRT-00017691 |
| | | IRI-CRT-00019577;<br>IRI-CRT-00019635;<br>IRI-CRT-00019637 | IRI-CRT-00019579;<br>IRI-CRT-00019635;<br>IRI-CRT-00019637 | IRI-CRT-00019577 |
| | | IRI-CRT-00019809;<br>IRI-CRT-00019823 | IRI-CRT-00019811;<br>IRI-CRT-00019826 | IRI-CRT-00019809 |
| | | IRI-CRT-00022324;<br>ITI-CRT-00022330 | IRI-CRT-00022325;<br>IRI-CRT-00022330 | IRI-CRT-00022324 |
| | | IRI-CRT-00022410 | IRI-CRT-00022418 | |
| | | IRI-CRT-00023474 | IRI-CRT-00023479 | |
| | | IRI-CRT-00023943 | IRI-CRT-00023943 | IRI-CRT-00023893 |
| | | IRI-CRT-00024207 | IRI-CRT-00024209 | IRI-CRT-00024204 |
| | | IRI-CRT-00024212 | IRI-CRT-00024215 | |
| | | IRI-CRT-00024356 | IRI-CRT-00024361 | |
| | | IRI-CRT-00024628 | IRI-CRT-00024633 | IRI-CRT-00024613 |
| | | IRI-CRT-00024768 | IRI-CRT-00024776 | IRI-CRT-00024613 |
| | | IRI-CRT-00024837;<br>IRI-CRT-00024970 | IRI-CRT-00024837;<br>IRI-CRT-00024974 | IRI-CRT-00024837 |
| | | IRI-CRT-00024885 | IRI-CRT-00024889 | |
| | | IRI-CRT-00024898 | IRI-CRT-00024900 | |
| | | IRI-CRT-00024967 | IRI-CRT-00024969 | IRI-CRT-00024837 |
| | | IRI-CRT-00024975 | IRI-CRT-00024978 | IRI-CRT-00024837 |
| | | IRI-CRT-00024979 | IRI-CRT-00024981 | IRI-CRT-00024837 |
| | | IRI-CRT-00025252 | IRI-CRT-00025256 | IRI-CRT-00025037 |
| | | IRI-CRT-00025698;<br>IRI-CRT-00025756 | IRI-CRT-00025698;<br>IRI-CRT-00025765 | IRI-CRT-00025698 |

| Temporary Trial Ex. No. | Deposition Ex. No. | Beg Bates | End Bates | Production Beg Bates |
|---|---|---|---|---|
| | | IRI-CRT-00025700 | IRI-CRT-00025701 | IRI-CRT-00025698 |
| | | IRI-CRT-00025937 | IRI-CRT-00025948 | IRI-CRT-00025930 |
| | | IRI-CRT-00026141 | IRI-CRT-00026177 | IRI-CRT-00026139 |
| | | IRI-CRT-00026170 | IRI-CRT-00026177 | IRI-CRT-00026139 |
| | | IRI-CRT-00026588; IRI-CRT-00026590; IRI-CRT-00026601 | IRI-CRT-00026588; IRI-CRT-00026591; IRI-CRT-00026601 | |
| | | IRI-CRT-00027161 | IRI-CRT-00027188 | IRI-CRT-00027156 |
| | | IRI-CRT-00027558 | IRI-CRT-00027571 | |
| | | IRI-CRT-00029848; IRI-CRT-00029853 | IRI-CRT-00029848; IRI-CRT-00029855 | IRI-CRT-00029848 |
| | | IRI-CRT-00030258 | IRI-CRT-00030263 | |
| | | IRI-CRT-00030462 | IRI-CRT-00030477 | IRI-CRT-00030462 |
| | | IRI-CRT-00032261 | IRI-CRT-00032323 | |
| | | IRI-CRT-00033420 | IRI-CRT-00033420 | IRI-CRT-00033400 |
| | | IRI-CRT-00033427 | IRI-CRT-00033427 | IRI-CRT-00033400 |
| | | IRI-CRT-00033451 | IRI-CRT-00033451 | IRI-CRT-00033400 |
| | | IRI-CRT-00033460 | IRI-CRT-00033460 | IRI-CRT-00033400 |
| | | IRI-SU-000052 | IRI-SU-000054 | |
| | | IRI-SU-000137 | IRI-SU-000140 | |
| | | IRI-SU-000141 | IRI-SU-000141 | |
| | | IRI-SUPP-000001 | IRI-SUPP-000005 | |
| | | IRI-SUPP-000006 | IRI-SUPP-000011 | |
| | | IRI-SUPP-000012 | IRI-SUPP-000021 | |
| | | IRI-SUPP-000022; IRI-SUPP-000023 | IRI-SUPP-000022; IRI-SUPP-000028 | |
| | | IRI-SUPP-000029 | IRI-SUPP-000030 | |
| | | IRI-SUPP-000031 | IRI-SUPP-000033 | |
| | | IRI-SUPP-000034 | IRI-SUPP-000036 | |
| | | JLJ0000879 | JLJ00000915 | |
| | | LGE00065495 | LGE00065497 | |
| | | LPD_00013423 | LPD_00013423 | |
| | | LPD-NL00202015 | LPD-NL00202022 | |
| | | ME 00031376 | ME 00031379 | |
| | | ME 00036451 | ME 00036454 | |
| | | MTPD0087619 | MTPD0087620 | |
| | | MTPD-0164692 | MTPD-0164693 | |
| | | MTPD-0176541 | MTPD-0176541 | |
| | | MTPD-0202360 | MTPD-0202360 | |
| | | MTPD-0203441 | MTPD-0203443 | |
| | | MTPD-0223728 | MTPD-0223728 | |
| | | MTPD-0231300 | MTPD-0231306 | |
| | | MTPD-0319105 | MTPD-0319105 | |
| | | MTPD-0336313 | MTPD-0336331 | |
| | | MTPD-0400021 | MTPD-0400021 | |
| | | MTPD-0421914 | MTPD-0421914 | |

| Temporary Trial Ex. No. | Deposition Ex. No. | Beg Bates | End Bates | Production Beg Bates |
|---|---|---|---|---|
| | | MTPD-0423668 | MTPD-0423669 | |
| | | MTPD-0425627 | MTPD-0425627 | |
| | | MTPD-0427254 | MTPD-0427259 | |
| | | MTPD-0436378 | MTPD-0436396 | |
| | | MTPD-0523073 | MTPD-0523079 | |
| | | MTPD-0573273 | MTPD-0573273 | |
| | | MTPD-0575746 | MTPD-0575746 | |
| | | MTPD-0576311 | MTPD-0576311 | |
| | | MTPD-0580572 | MTPD-0580572 | |
| | | MTPD-0580795 | MTPD-0580795 | |
| | | MTPD-0581157; MTPD-0581175 | MTPD-0581157; MTPD-0581176 | |
| | | MTPD-0599556 | MTPD-0599556 | |
| | | MTPDA_SEC-0225499 | MTPDA_SEC-0225499 | |
| | | PHLP-CRT-006657 | PHLP-CRT-006657 | |
| | | PHLP-CRT-012076 | PHLP-CRT-012076 | Native attachment to Dep. Ex. 2928 was shown at deposition, but not included in transcript. |
| | | PHLP-CRT-022741 | PHLP-CRT-022744 | |
| | | PHLP-CRT-026915 | PHLP-CRT-026916 | |
| | | PHLP-CRT-027432 | PHLP-CRT-027434 | |
| | | PHLP-CRT-029020 | PHLP-CRT-029021 | |
| | | PHLP-CRT-053164 | PHLP-CRT-053165 | |
| | | PHLP-CRT-081053 | PHLP-CRT-081054 | |
| | | PHLP-CRT-081128 | PHLP-CRT-081137 | |
| | | PHLP-CRT-090388 | PHLP-CRT-090388 | |
| | | PHLP-CRT-093280 | PHLP-CRT-093280 | |
| | | PHLP-CRT-116754 | PHLP-CRT-116757 | |
| | | PHLP-CRT-124781 | PHLP-CRT-124785 | |
| | | PHLP-CRT-148085 | PHLP-CRT-148086 | |
| | | PHLP-CRT-153515 | PHLP-CRT-153517 | |
| | | PHLP-CRT-153887 | PHLP-CRT-153889 | |
| | | PHLP-CRT-154896 | PHLP-CRT-154898 | |
| | | PHLP-CRT-155234 | PHLP-CRT-155236 | |
| | | PHLP-CRT-156380 | PHLP-CRT-156380 | |
| | | PHLP-CRT-167050 | PHLP-CRT-167050 | |
| | | PHLP-CRT-170276 | PHLP-CRT-170277 | |
| | | PHLP-CRT-172663 | PHLP-CRT-172667 | |
| | | PHLP-CRT-175011 | PHLP-CRT-175013 | |
| | | PTC-00001149 | PTC-00001178 | |
| | | SCRT-0002416 | SCRT-0002416 | |
| | | SDCRT-0000039 | SDCRT-0000081 | |
| | | SDCRT-0002283 | SDCRT-0002362 | |

| Temporary Trial Ex. No. | Deposition Ex. No. | Beg Bates | End Bates | Production Beg Bates |
|---|---|---|---|---|
| | | SDCRT-0002526 | SDCRT-0002528 | |
| | | SDCRT-0002805 | SDCRT-0002860 | |
| | | SDCRT-0005180 | SDCRT-0005189 | |
| | | SDCRT-0005854 | SDCRT-0005855 | |
| | | SDCRT-0006674 | SDCRT-0006674 | |
| | | SDCRT-0006675 | SDCRT-0006677 | |
| | | SDCRT-0007588 | SDCRT-0007594 | |
| | | SDCRT-0012333 | SDCRT-0012333 | |
| | | SDCRT-0023367 | SDCRT-0023367 | |
| | | SDCRT-0029337 | SDCRT-0029337 | |
| | | SDCRT-0069086 | SDCRT-0069086 | |
| | | SDCRT-0080694 | SDCRT-0080696 | |
| | | SDCRT-0083117 | SDCRT-0083117 | |
| | | SDCRT-0086219 | SDCRT-0086219 | |
| | | SDCRT-0086256 | SDCRT-0087004 | |
| | | SDCRT-0086599 | SDCRT-0086601 | SDCRT-0086256 |
| | | SDCRT-0086672 | SDCRT-0086674 | SDCRT-0086256 |
| | | SDCRT-0086698 | SDCRT-0086699 | SDCRT-0086256 |
| | | SDCRT-0086706 | SDCRT-0086721 | SDCRT-0086256 |
| | | SDCRT-0087312 | SDCRT-0087313 | |
| | | SDCRT-0087340 | SDCRT-0087342 | |
| | | SDCRT-0087667 | SDCRT-0087669 | SDCRT-0087441 |
| | | SDCRT-0087694 | SDCRT-0087698 | SDCRT-0087441 |
| | | SDCRT-0087700 | SDCRT-0087702 | SDCRT-0087441 |
| | | SDCRT-0087705 | SDCRT-0087707 | SDCRT-0087705 |
| | | SDCRT-0088635 | SDCRT-0088674 | SDCRT-0088635 |
| | | SDCRT-0088661 | SDCRT-0088674 | SDCRT-0088635 |
| | | SDCRT-0088738 | SDCRT-0088739 | |
| | | SDCRT-0088763 | SDCRT-0088779 | SDCRT-0088635 |
| | | SDCRT-0088846 | SDCRT-0088851 | SDCRT-0088635 |
| | | SDCRT-0090215 | SDCRT-0090224 | SDCRT-0089426 |
| | | SDCRT-0090225 | SDCRT-0090230 | SDCRT-0089426 |
| | | SDCRT-0090233 | SDCRT-0090247 | |
| | | SDCRT-0090355 | SDCRT-0090359 | SDCRT-0090233 |
| | | SDCRT-0091027 | SDCRT-0091852 | |
| | | SDCRT-0091409 | SDCRT-0091416 | SDCRT-0091027 |
| | | SDCRT-0091477 | SDCRT-0091479 | |
| | | SDCRT-0091537 | SDCRT-0091545 | SDCRT-0091027 |
| | | SDCRT-0091573 | SDCRT-0091583 | |
| | | SDCRT-0091584 | SDCRT-0091588 | SDCRT-0091027 |
| | | SDCRT-0091589 | SDCRT-0091598 | SDCRT-0091027 |
| | | SDCRT-0091599 | SDCRT-0091604 | SDCRT-0091027 |
| | | SDCRT-0091634 | SDCRT-0091639 | SDCRT-0091027 |
| | | SDCRT-0091858 | SDCRT-0091859 | SDCRT-0091855 |

| Temporary Trial Ex. No. | Deposition Ex. No. | Beg Bates | End Bates | Production Beg Bates |
|---|---|---|---|---|
| | | SDCRT-0091860 | SDCRT-0091860 | SDCRT-0091855 |
| | | SDCRT-0091942 | SDCRT-0091949 | |
| | | SDCRT-0091950 | SDCRT-0091956 | |
| | | SDCRT-0091957 | SDCRT-0091960 | |
| | | SDCRT-0091980; SDCRT-0091925 | SDCRT-0092002; SDCRT-0091941 | SDCRT-0091855 |
| | | SDCRT-0093922 | SDCRT-0093923 | |
| | | SDCRT-0093924 | SDCRT-0093925 | |
| | | SDCRT-0093926 | SDCRT-0093938 | SDCRT-0091855 |
| | | SDCRT-0093953 | SDCRT-0093964 | |
| | | SDCRT-0093977 | SDCRT-0093991 | SDCRT-0093349 |
| | | SDCRT-0202827 | SDCRT-0202827 | |
| | | SDCRT-0204090 | SDCRT-0204090 | |
| | | TAEC-CRT-00010351 | TAEC-CRT-00010410 | |
| | | TAEC-CRT-00041353 | TAEC-CRT-00041353 | |
| | | TAEC-CRT-00046070 | TAEC-CRT-00046102 | |
| | | TAEC-CRT-00071173 | TAEC-CRT-00071189 | |
| | | TAEC-CRT-00071432 | TAEC-CRT-00071433 | |
| | | TAEC-CRT-00071724 | TAEC-CRT-00071734 | |
| | | TAEC-CRT-00084530 | TAEC-CRT-00084530 | |
| | | TAEC-CRT-00085506 | TAEC-CRT-00085515 | |
| | | TAEC-CRT-00087508 | TAEC-CRT-00087508 | |
| | | TAEC-CRT-00089144 | TAEC-CRT-00089144 | |
| | | TAEC-CRT-00122577 | TAEC-CRT-00122577 | |
| | | TET-CRT-00002295 | TET-CRT-00002300 | |
| | | TSA-CRT00033173 | TSA-CRT00033173 | |
| | | TSA-CRT00156223 | TSA-CRT00156223 | |
| | | TSA-CRT00216188 | TSA-CRT00216189 | |
| | | TSB-CRT-00007798 | TSB-CRT-00007873 | |
| | | TSB-CRT-00039099 | TSB-CRT-00039101 | |
| | | TSB-CRT-00039194 | TSB-CRT-00039196 | |
| | | TSB-CRT-00039670 | TSB-CRT-00039672 | |
| | | TSB-CRT-00042440 | TSB-CRT-00042443 | |
| | | TSB-CRT-00045123 | TSB-CRT-00045126 | |
| | | 02/13/23 Letter from Irico's Counsel Evan Werbel re: English litigation hold documents | | |
| | | 05/04/218 Irico Objections and Responses to DPP Studio Spectrum's First Set of Interrogatories | | |
| | | 08/07/18 Irico Supplemental Objection and Responses to IPP First Set of Interrogatories | | |

| Temporary Trial Ex. No. | Deposition Ex. No. | Beg Bates | End Bates | Production Beg Bates |
|---|---|---|---|---|
| | | 08/7/2018 Irico Supplemental Objection and Responses to IPP First Set of Requests for Production | | |
| | | 08/24/18 Irico Second Supplemental Objections and Responses to DPP Studio Spectrum's First Set of Interrogatories | | |
| | | 09/21/18 Irico Objections and Responses to IPP Second Set of Requests for Production | | |
| | | 10/12/18 Irico Second Supplemental Objections and Responses to IPP First Set of Requests for Production | | |
| | | 01/18/19 Irico Third Supplemental Objections and Responses to IPP First Set of Requests for Production | | |
| | | 02/06/19 Irico Fourth Supplemental Objections and Responses to IPP First Set of Interrogatories | | |
| | | 04/11//19 Irico Corrected Supplemental Objections and Responses to IPP Second Set of Interrogatories | | |
| | | 1/26/2021 Irico Objections and Responses to DPP First Set of Requests for Production | | |
| | | 1/26/2021 Irico Objections and Responses to DPP First Set of Interrogatories | | |
| | | 1/26/2021 Irico Objections and Responses to DPP Second Set of Requests for Production | | |
| | | 1/26/2021 Irico Objections and Responses to Plaintiff Hawel. A. Hawel's, d/b/a City Electronics, Second Set of Interrogatories | | |
| | | 1/26/2021 Irico Objections and Responses to DPP Third Set of Requests for Production | | |
| | | 1/26/2021 Irico Objections and Responses to IPP First Requests for Production | | |
| | | 1/26/2021 Irico Objections and Responses to IPP First Set of Interrogatories | | |

| Temporary Trial Ex. No. | Deposition Ex. No. | Beg Bates | End Bates | Production Beg Bates |
|---|---|---|---|---|
| | | 1/26/2021 Irico Objections and Responses to IPP Second Request for Production | | |
| | | 03/15/21 Irico First Supplemental Objections and Responses to Interrogatory No. 2 of DPP First Set of Interrogatories | | |
| | | 05/03/21 Irico Second Supplemental Objections and Responses to DPP First Set of Interrogatories | | |
| | | 05/10/23 Irico Third Supplemental Objections and Responses to DPP First Set of Interrogatories | | |
| | | 05/24/21 Irico Fourth Supplemental Objections and Responses to DPP First Set of Interrogatories | | |
| | | 05/24/21 Irico Supplemental Objections and Responses to Plaintiff Hawel A. Hawel's, d/b/a City Electronics, Second Set of Interrogatories | | |
| | | 05/24/21 Irico Supplemental Objections and Responses to IPP First Set of Interrogatories | | |
| | | 07/07/21 Irico Fifth Supplemental Objections and Responses to DPP First Set of Interrogatories | | |
| | | 08/13/21 Irico Objections and Responses to IPP Third Set of Interrogatories to Irico Group Corporation and Irico Display Devices | | |
| | | 01/007/22 Irico Sixth Supplemental Objections and Responses to DPP First Set of Interrogatories | | |
| | | 01/07/22 Irico Third Supplemental Objections and Responses to IPP First Set of Interrogatories | | |
| | | 02/23/22 Irico Second Supplemental Objections and Responses to Plaintiff Hawel A. Hawel's, d/b/a/City Electronics, Second Set of Interrogatories | | |
| | | 02/23/22 Irico Fourth Supplemental Objections and Responses to IPP First Set of Interrogatories | | |
| | | 02/23/22 Irico Privilege Log | | |
| | | 02/23/22 Irico Objections and Responses to DPP Arch Electronics' First Set of Requests for Admissions to Irico Group Corporation and Irico Display Devices | | |

| Temporary Trial Ex. No. | Deposition Ex. No. | Beg Bates | End Bates | Production Beg Bates |
|---|---|---|---|---|
| | | 02/23/22 Irico Objections and Responses to DPP Arch Electronics' First Set of Requests for Production to Irico Group Corporation and Irico Display Devices | | |
| | | 02/23/22 Irico Objections and Responses to DPP Arch Electronics' First Set of Interrogatories to Irico Group Corporation and Irico Display Devices | | |
| | | 02/23/22 Irico Objections and Responses to IPP First Set of Requests for Admission to Irico Group Corporation and Irico Display Devices | | |
| | | 02/23/22 Irico Objections and Responses to IPP Third Request for Production to Irico Group Corporation and Irico Display Devices | | |
| | | 02/23/22 Irico Objections and Responses to IPP Fourth Set of Interrogatories to Irico Group Corporation and Irico Display Devices | | |
| | | 03/18/22 Irico Second Supplemental Objections and Responses to IPP Third Set of Interrogatories to Irico Group Corporation and Irico Display Devices | | |
| | | 09/01/22 Irico Supplemental Objections and Responses to Plaintiff Arch Electronics' First Set of Interrogatories to Irico Group Corporation and Irico Display Devices | | |
| | | 09/01/22 Irico Supplemental Objections and Responses to IPP Fourth Set of Interrogatories to Irico Group Corporation and Irico Display Devices | | |
| | | 09/01/22 Irico Supplemental Objections and Responses to IP First Set of Requests for Admission to Irico Group Corporation and Irico Display Devices | | |
| | | 11/23/22 Irico Second Supplemental Objections and Responses to IPP Fourth Set of Interrogatories to Irico Group Corporation and Irico Display Devices | | |
| | | 11/23/22 Irico Third Supplemental Objections and Responses to IPP Third Set of Interrogatories to Irico Group Corporation and Irico Display Devices | | |
| | | 12/17/12 Expert Report of Robert D. Willig | | |
| | | 03/25/13 Rebuttal Declaration of Professor Robert D. Willig In Support of Defendants' Motion to Strike The Proposed Testimony of Dr. Janet S. Netz | | |

| Temporary Trial Ex. No. | Deposition Ex. No. | Beg Bates | End Bates | Production Beg Bates |
|---|---|---|---|---|
| | | 08/05/14 Expert Report of Margaret E. Guerin-Calvert | | |
| | | 08/05/14 Expert Report of Robert D. Willig | | |
| | | 08/05/14 Expert Report of Janusz A. Ordover, | | |
| | | 08/05/14 Expert Report of Dr. Darrell Williams | | |
| | | 09/10/14 Errata to The Expert Report of Robert D. Willig | | |
| | | 09/23/14 Errata to the Expert Report of Margaret E. Guerin-Calvert | | |
| | | 09/23/14 Errata to The Expert Report of Robert D. | | |
| | | 11/06/14 Expert Surrebuttal Report of Margaret E. Guerin-Calvert | | |
| | | 11/06/14 Expert Surrebuttal Report of Robert D. | | |
| | | 03/16/22 Supplemental Expert Report of Margaret E. Guerin-Calvert | | |
| | | 03/16/22 Expert Report of Donald Clarke | | |
| | | 03/21/22 Errata to the Supplemental Expert Report of Margaret E. Guerin-Calvert | | |
| | | 02/15/23 Declaration of Margaret E. Guerin-Calvert in Support of Motion by Irico Group Corp. and Irico Display Devices Co., Ltd. to Exclude Testimony of Dr. Janet Netz | | |
| | | 04/05/23 Declaration of Margaret E. Guerin-Calvert in Response to Declaration of Dr. Janet Netz Opposing Motion to Partially Exclude the Testimony of Dr. Netz | | |
| | | 03/24/05 Irico Group Electronics Co. Ltd.'s 2004 Annual Report | | |
| | | 04/12/07 Irico Group Electronics Co. Ltd.'s 2006 Annual Report | | |
| | | 04/24/08 Irico Group Electronics Co. Ltd.'s 2007 Annual Report | | |
| | | 11/02/18 Irico Defendants' Supplemental Objections and Responses to Indirect Purchaser Plaintiffs' Second Set of Interrogatories | | |
| | | 04/11/19 Irico Defendants' Corrected Supplemental Objections and Responses to Indirect Purchaser Plaintiffs' Second Set of Interrogatories | | |

| Temporary Trial Ex. No. | Deposition Ex. No. | Beg Bates | End Bates | Production Beg Bates |
|---|---|---|---|---|
| | | 12/08/04 Irico Group Electronics Co. Ltd. Global Offering Prospectus | | |
| | | 03/18/11 Samsung SDI Information in United States v. Samsung SDI Co., Ltd, 3:11-cr-00162-WHA | | |
| | | 08/08/11 Amended Plea Agreement in *United States v. Samsung SDI Co., Ltd,* 3:11-cr-00162-WHA | | |
| | | 08/19/11 Judgment in *United States v. Samsung SDI Co., Ltd.* , No. 3:11-cr-00162-WHA | | |
| | | 08/11/Judgment in *United States v. Samsung SDI Co., Ltd.* , No. 3:11-cr-00162-WHA | | |
| | | 10/01/12 Declaration of Janet S. Netz, Ph.D., in Support of Motion of Indirect-Purchaser Plaintiffs for Class Certification, Ex. 1 (Worldwide CRT Production Shares) | | |
| | | 10/01/12 Declaration of Janet S. Netz, Ph.D., in Support of Motion of Indirect-Purchaser Plaintiffs for Class Certification, Ex. 2 (Cartel Meetings Resulting in Target Price Agreements) | | |
| | | 10/01/12 Declaration of Janet S. Netz, Ph.D., in Support of Motion of Indirect-Purchaser Plaintiffs for Class Certification, Ex. 3 (CRT Capacity Data Sources) | | |
| | | 10/01/12 Declaration of Janet S. Netz, Ph.D., in Support of Motion of Indirect-Purchaser Plaintiffs for Class Certification, Ex. 4 (Production Lines, by Type) | | |
| | | 10/01/12 Declaration of Janet S. Netz, Ph.D., in Support of Motion of Indirect-Purchaser Plaintiffs for Class Certification, Ex. 5 (Worldwide CDT Production Shares) | | |
| | | 10/01/12 Declaration of Janet S. Netz, Ph.D., in Support of Motion of Indirect-Purchaser Plaintiffs for Class Certification, Ex. 6 (Worldwide CPT Production Shares) | | |

| Temporary Trial Ex. No. | Deposition Ex. No. | Beg Bates | End Bates | Production Beg Bates |
|---|---|---|---|---|
| | | 10/01/12 Declaration of Janet S. Netz, Ph.D., in Support of Motion of Indirect-Purchaser Plaintiffs for Class Certification, Ex. 7 (HHI Over Time, Cartelized CPT Production vs. Non-Cartelized CPT Production) | | |
| | | 10/01/12 Declaration of Janet S. Netz, Ph.D., in Support of Motion of Indirect-Purchaser Plaintiffs for Class Certification, Ex. 8 (HHI Over Time, Cartelized CDT Production vs. Non-Cartelized CDT Production) | | |
| | | 10/01/12 Declaration of Janet S. Netz, Ph.D., in Support of Motion of Indirect-Purchaser Plaintiffs for Class Certification, Ex. 9 (HHI Over Time, Cartelized CRT Production vs. Non-Cartelized CRT Production) | | |
| | | 10/01/12 Declaration of Janet S. Netz, Ph.D., in Support of Motion of Indirect-Purchaser Plaintiffs for Class Certification, Ex. 10 (Total Worldwide CRT Production by Tube Type) | | |
| | | 10/01/12 Declaration of Janet S. Netz, Ph.D., in Support of Motion of Indirect-Purchaser Plaintiffs for Class Certification, Ex. 11 (CRT Distribution Diagram) | | |
| | | 10/01/12 Declaration of Janet S. Netz, Ph.D., in Support of Motion of Indirect-Purchaser Plaintiffs for Class Certification, Ex. 12 (Shares of Worldwide CRT Capacity) | | |
| | | 10/01/12 Declaration of Janet S. Netz, Ph.D., in Support of Motion of Indirect-Purchaser Plaintiffs for Class Certification, Ex. 13 (CRT Tube Sales Data) | | |
| | | 10/01/12 Declaration of Janet S. Netz, Ph.D., in Support of Motion of Indirect-Purchaser Plaintiffs for Class Certification, Ex. 14 (Average Difference Between Sales Price and Cartel Target Price) | | |
| | | 10/01/12 Declaration of Janet S. Netz, Ph.D., in Support of Motion of Indirect-Purchaser Plaintiffs for Class Certification, Ex. 15 (Differences Between Sales Prices and Cartel Target Prices) | | |

| Temporary Trial Ex. No. | Deposition Ex. No. | Beg Bates | End Bates | Production Beg Bates |
|---|---|---|---|---|
| | | 10/01/12 Declaration of Janet S. Netz, Ph.D., in Support of Motion of Indirect-Purchaser Plaintiffs for Class Certification, Ex. 16 (Differences Between Sales Prices and Cartel Target Prices) | | |
| | | 10/01/12 Declaration of Janet S. Netz, Ph.D., in Support of Motion of Indirect-Purchaser Plaintiffs for Class Certification, Ex. 17 (Differences Between Sales Prices and Cartel Target Prices) | | |
| | | 10/01/12 Declaration of Janet S. Netz, Ph.D., in Support of Motion of Indirect-Purchaser Plaintiffs for Class Certification, Ex. 18 (Price Differentials Set by Cartel) | | |
| | | 10/01/12 Declaration of Janet S. Netz, Ph.D., in Support of Motion of Indirect-Purchaser Plaintiffs for Class Certification, Ex. 19 (Target Price Data Hedonics Results - All CPT Data) | | |
| | | 10/01/12 Declaration of Janet S. Netz, Ph.D., in Support of Motion of Indirect-Purchaser Plaintiffs for Class Certification, Ex. 20 (Target Price Data Hedonics Results - All CDT Data) | | |
| | | 10/01/12 Declaration of Janet S. Netz, Ph.D., in Support of Motion of Indirect-Purchaser Plaintiffs for Class Certification, Ex. 21 (Defendant Data Hedonics Results - All Defendant CDT Data) | | |
| | | 10/01/12 Declaration of Janet S. Netz, Ph.D., in Support of Motion of Indirect-Purchaser Plaintiffs for Class Certification, Ex. 22 (Defendant Data Hedonics Results - All Defendant CPT Data) | | |
| | | 10/01/12 Declaration of Janet S. Netz, Ph.D., in Support of Motion of Indirect-Purchaser Plaintiffs for Class Certification, Ex. 23 (Panasonic and Samsung Data Hedonics Results - CDT Data) | | |
| | | 10/01/12 Declaration of Janet S. Netz, Ph.D., in Support of Motion of Indirect-Purchaser Plaintiffs for Class Certification, Ex. 24 (Panasonic and Samsung Data Hedonics Results - CPT Data) | | |
| | | 10/01/12 Declaration of Janet S. Netz, Ph.D., in Support of Motion of Indirect-Purchaser Plaintiffs for Class Certification, Ex. 25 (Monitor Brand Market Shares, 2004-2006) | | |

| Temporary Trial Ex. No. | Deposition Ex. No. | Beg Bates | End Bates | Production Beg Bates |
|---|---|---|---|---|
| | | 10/01/12 Declaration of Janet S. Netz, Ph.D., in Support of Motion of Indirect-Purchaser Plaintiffs for Class Certification, Ex. 26 (TV Brand Market Shares, 2005-2006) | | |
| | | 10/01/12 Declaration of Janet S. Netz, Ph.D., in Support of Motion of Indirect-Purchaser Plaintiffs for Class Certification, Ex. 27 (Intense Competition Leads to Low Profit Rates) | | |
| | | 10/01/12 Declaration of Janet S. Netz, Ph.D., in Support of Motion of Indirect-Purchaser Plaintiffs for Class Certification, Ex. 28 (High Degree of Competition in the Production of CRT Products) | | |
| | | 10/01/12 Declaration of Janet S. Netz, Ph.D., in Support of Motion of Indirect-Purchaser Plaintiffs for Class Certification, Ex. 29 (Defendants Indicate that Pass-Through Occurs) | | |
| | | 10/01/12 Declaration of Janet S. Netz, Ph.D., in Support of Motion of Indirect-Purchaser Plaintiffs for Class Certification, Ex. 30 (Industry Participants Indicate that Pass-Through Occurs) | | |
| | | 10/01/2012 Declaration of Janet S. Netz, Ph.D., in Support of Motion of Indirect-Purchaser Plaintiffs for Class Certification, Ex. 31 (CRT Makers Monitor Street Prices) | | |
| | | 10/01/2012Declaration of Janet S. Netz, Ph.D., in Support of Motion of Indirect-Purchaser Plaintiffs for Class Certification, Ex. 32 (Market Research Firms Monitor and Publish Street Pricing Data) | | |
| | | 10/01/2012 Declaration of Janet S. Netz, Ph.D., in Support of Motion of Indirect-Purchaser Plaintiffs for Class Certification, Ex. 33 (Toshiba Top-to-Bottom Pass-Through Rate: 102%) | | |
| | | 10/01/2012 Declaration of Janet S. Netz, Ph.D., in Support of Motion of Indirect-Purchaser Plaintiffs for Class Certification, Ex. 34 (Pass-Through Study Summary Results) | | |
| | | 10/01/2012 Declaration of Janet S. Netz, Ph.D., in Support of Motion of Indirect-Purchaser Plaintiffs for Class Certification, Ex. 35 (Pass-Through Study Explanatory Variable List) | | |

| Temporary Trial Ex. No. | Deposition Ex. No. | Beg Bates | End Bates | Production Beg Bates |
|---|---|---|---|---|
| | | 10/01/2012 Declaration of Janet S. Netz, Ph.D., in Support of Motion of Indirect-Purchaser Plaintiffs for Class Certification, Ex. 36 (Pass-Through Stata File List) | | |
| | | 10/01/2012 Declaration of Janet S. Netz, Ph.D., in Support of Motion of Indirect-Purchaser Plaintiffs for Class Certification, Ex. 37 (Monitor Pass-Through) | | |
| | | 10/01/2012 Declaration of Janet S. Netz, Ph.D., in Support of Motion of Indirect-Purchaser Plaintiffs for Class Certification, Ex. 38 (Television Pass-Through) | | |
| | | 10/01/2012 Declaration of Janet S. Netz, Ph.D., in Support of Motion of Indirect-Purchaser Plaintiffs for Class Certification, Ex. 39 (Tubes Pass-Through) | | |
| | | 10/01/2012 Declaration of Janet S. Netz, Ph.D., in Support of Motion of Indirect-Purchaser Plaintiffs for Class Certification, Ex. 40 (Pass-Through Studies Channel Coverage) | | |
| | | 10/01/2012 Declaration of Janet S. Netz, Ph.D., in Support of Motion of Indirect-Purchaser Plaintiffs for Class Certification, Ex. 41 (Pass-Through Data by Year Retailers) | | |
| | | 10/01/2012 Declaration of Janet S. Netz, Ph.D., in Support of Motion of Indirect-Purchaser Plaintiffs for Class Certification, Ex. 42 (Pass-Through Data by Year Product Manufacturers and Product Distributors) | | |
| | | 10/01/2012 Declaration of Janet S. Netz, Ph.D., in Support of Motion of Indirect-Purchaser Plaintiffs for Class Certification, Ex. 43 (Pass-Through Data by Year Top-and-Bottom and Top-to-Bottom Studies) | | |
| | | 10/01/2012 Declaration of Janet S. Netz, Ph.D., in Support of Motion of Indirect-Purchaser Plaintiffs for Class Certification, Ex. 44 (CRT Production and Market Shares Data Sources) | | |
| | | 10/01/2012 Declaration of Janet S. Netz, Ph.D., in Support of Motion of Indirect-Purchaser Plaintiffs for Class Certification, Ex. 45 (General Data Sources) | | |

| Temporary Trial Ex. No. | Deposition Ex. No. | Beg Bates | End Bates | Production Beg Bates |
|---|---|---|---|---|
| | | 10/08/2012 Errata to Declaration of Janet S. Netz, Ph.D., in Support of Motion of Indirect-Purchaser Plaintiffs for Class Certification, Ex. ER-5 (Worldwide CDT Production Shares) | | |
| | | 10/08/2012 Errata to Declaration of Janet S. Netz, Ph.D., in Support of Motion of Indirect-Purchaser Plaintiffs for Class Certification, Ex. ER-13 (CRT Tube Sales Data) | | |
| | | 10/08/2012 Errata to Declaration of Janet S. Netz, Ph.D., in Support of Motion of Indirect-Purchaser Plaintiffs for Class Certification, Ex. ER-14 (Average Difference Between Sales Price and Cartel Target Price) | | |
| | | 10/08/2012 Errata to Declaration of Janet S. Netz, Ph.D., in Support of Motion of Indirect-Purchaser Plaintiffs for Class Certification, Ex. ER-18 (Price Differentials Set by Cartel) | | |
| | | 10/08/2012 Errata to Declaration of Janet S. Netz, Ph.D., in Support of Motion of Indirect-Purchaser Plaintiffs for Class Certification, Ex. ER-19 (Target Price Data Hedonics Results - All CPT Data) | | |
| | | 10/08/2012 Errata to Declaration of Janet S. Netz, Ph.D., in Support of Motion of Indirect-Purchaser Plaintiffs for Class Certification, Ex. ER-20 (Target Price Data Hedonics Results - All CDT Data) | | |
| | | 10/08/2012 Errata to Declaration of Janet S. Netz, Ph.D., in Support of Motion of Indirect-Purchaser Plaintiffs for Class Certification, Ex. ER-36 (Pass-Through Stata File List) | | |
| | | 02/15/2013 Rebuttal Declaration of Janet S. Netz, Ph.D., in Support of Motion of Indirect-Purchaser Plaintiffs for Class Certification, Ex.1 (Professor Willig's Exhibit 1A: Dispersion in Monthly Prices Across All CRT Models and All Customers) | | |
| | | 02/15/2013 Rebuttal Declaration of Janet S. Netz, Ph.D., in Support of Motion of Indirect-Purchaser Plaintiffs for Class Certification, Ex. 2 (Distribution of CRT Sales for All CRTs Sold in August 2001) | | |

| Temporary Trial Ex. No. | Deposition Ex. No. | Beg Bates | End Bates | Production Beg Bates |
|---|---|---|---|---|
| | | 02/15/2013 Rebuttal Declaration of Janet S. Netz, Ph.D., in Support of Motion of Indirect-Purchaser Plaintiffs for Class Certification, Ex.3 (Distribution of CPT Sales for All CPTs Sold in August 2001) | | |
| | | 02/15/2013 Rebuttal Declaration of Janet S. Netz, Ph.D., in Support of Motion of Indirect-Purchaser Plaintiffs for Class Certification, Ex. 4 (Distribution of 14-Inch CPT Sales in August 2001) | | |
| | | 02/15/2013 Rebuttal Declaration of Janet S. Netz, Ph.D., in Support of Motion of Indirect-Purchaser Plaintiffs for Class Certification, Ex. 5 (Distribution of 14-Inch CPT Sales by Finish in August 2001) | | |
| | | 02/15/2013 Rebuttal Declaration of Janet S. Netz, Ph.D., in Support of Motion of Indirect-Purchaser Plaintiffs for Class Certification, Ex. 6 (Distribution of 20 and 21-Inch CPT Sales in August 2001) | | |
| | | 02/15/2013 Rebuttal Declaration of Janet S. Netz, Ph.D., in Support of Motion of Indirect-Purchaser Plaintiffs for Class Certification, Ex. 7 (Distribution of 20 and 21-Inch CPT Sales by Shape in August 2001) | | |
| | | 02/15/2013 Rebuttal Declaration of Janet S. Netz, Ph.D., in Support of Motion of Indirect-Purchaser Plaintiffs for Class Certification, Ex. 8 (Distribution of 29-Inch CPT Sales in August 2001) | | |
| | | 02/15/2013 Rebuttal Declaration of Janet S. Netz, Ph.D., in Support of Motion of Indirect-Purchaser Plaintiffs for Class Certification, Ex. 9 (Distribution of 29-Inch CPT Sales by Shape in August 2001) | | |
| | | 02/15/2013 Rebuttal Declaration of Janet S. Netz, Ph.D., in Support of Motion of Indirect-Purchaser Plaintiffs for Class Certification, Ex. 10 (Distribution of CDT Sales for All CDTs Sold in August 2001) | | |

| Temporary Trial Ex. No. | Deposition Ex. No. | Beg Bates | End Bates | Production Beg Bates |
|---|---|---|---|---|
| | | 02/15/2013 Rebuttal Declaration of Janet S. Netz, Ph.D., in Support of Motion of Indirect-Purchaser Plaintiffs for Class Certification, Ex. 11 (Distribution of 14-Inch CDT Sales in August 2001) | | |
| | | 02/15/2013 Rebuttal Declaration of Janet S. Netz, Ph.D., in Support of Motion of Indirect-Purchaser Plaintiffs for Class Certification, Ex. 12 (Distribution of 15-Inch CDT Sales in August 2001) | | |
| | | 02/15/2013 Rebuttal Declaration of Janet S. Netz, Ph.D., in Support of Motion of Indirect-Purchaser Plaintiffs for Class Certification, Ex. 13 (Distribution of 17-Inch CDT Sales in August 2001) | | |
| | | 02/15/2013 Rebuttal Declaration of Janet S. Netz, Ph.D., in Support of Motion of Indirect-Purchaser Plaintiffs for Class Certification, Ex. 14 (Total Yearly Share of CRT Unit Sales by Top 5 Design Families) | | |
| | | 02/15/2013 Rebuttal Declaration of Janet S. Netz, Ph.D., in Support of Motion of Indirect-Purchaser Plaintiffs for Class Certification, Ex. 15 (Share of LGE 21-Inch CPT Purchases, by Vendor and Month) | | |
| | | 02/15/2013 Rebuttal Declaration of Janet S. Netz, Ph.D., in Support of Motion of Indirect-Purchaser Plaintiffs for Class Certification, Ex. 16 (Prices for a Specific 21-Inch CDT and 29-Inch CPT in USD as Shown in Willig's Exhibit 1A) | | |
| | | 02/15/2013 Rebuttal Declaration of Janet S. Netz, Ph.D., in Support of Motion of Indirect-Purchaser Plaintiffs for Class Certification, Ex. 17 (Price Changes for a Specific 21-Inch CDT and 29-Inch CPT in USD as Shown in Professor Willig's Exhibit 2A) | | |
| | | 02/15/2013 Rebuttal Declaration of Janet S. Netz, Ph.D., in Support of Motion of Indirect-Purchaser Plaintiffs for Class Certification, Ex. 18 (Prices for a Specific 21-Inch CDT and 29-Inch CPT in Local Currency (Yen)) | | |

| Temporary Trial Ex. No. | Deposition Ex. No. | Beg Bates | End Bates | Production Beg Bates |
|---|---|---|---|---|
| | | 02/15/2013 Rebuttal Declaration of Janet S. Netz, Ph.D., in Support of Motion of Indirect-Purchaser Plaintiffs for Class Certification, Ex. 19 (Panasonic USD Price Changes When Local Prices Are Constant) | | |
| | | 02/15/2013 Rebuttal Declaration of Janet S. Netz, Ph.D., in Support of Motion of Indirect-Purchaser Plaintiffs for Class Certification, Ex. 20 (January 1998 Month-to-Month Changes in USD and Local Currencies) | | |
| | | 02/15/2013 Rebuttal Declaration of Janet S. Netz, Ph.D., in Support of Motion of Indirect-Purchaser Plaintiffs for Class Certification, Ex. 21 (December 1998 Month-to-Month Changes in USD and Local Currencies) | | |
| | | 02/15/2013 Rebuttal Declaration of Janet S. Netz, Ph.D., in Support of Motion of Indirect-Purchaser Plaintiffs for Class Certification, Ex. 22 (December 2000 Month-to-Month Changes in USD and Local Currencies) | | |
| | | 02/15/2013 Rebuttal Declaration of Janet S. Netz, Ph.D., in Support of Motion of Indirect-Purchaser Plaintiffs for Class Certification, Ex. 23 (17-Inch ITC CDTs) | | |
| | | 02/15/2013 Rebuttal Declaration of Janet S. Netz, Ph.D., in Support of Motion of Indirect-Purchaser Plaintiffs for Class Certification, Ex. 24 (14-Inch CPTs: Bare and ITC) | | |
| | | 02/15/2013 Rebuttal Declaration of Janet S. Netz, Ph.D., in Support of Motion of Indirect-Purchaser Plaintiffs for Class Certification, Ex. 25 (20-Inch CPTs: Bare and ITC) | | |
| | | 02/15/2013 Rebuttal Declaration of Janet S. Netz, Ph.D., in Support of Motion of Indirect-Purchaser Plaintiffs for Class Certification, Ex. RR-15 (Differences Between Sales Prices and Cartel Target Prices) | | |
| | | 02/15/2013 Rebuttal Declaration of Janet S. Netz, Ph.D., in Support of Motion of Indirect-Purchaser Plaintiffs for Class Certification, Ex. 26 (Differences Between Sales Prices and Cartel Target Prices of CRTs Sold in NAFTA Region) | | |

| Temporary Trial Ex. No. | Deposition Ex. No. | Beg Bates | End Bates | Production Beg Bates |
|---|---|---|---|---|
| | | 02/15/2013 Rebuttal Declaration of Janet S. Netz, Ph.D., in Support of Motion of Indirect-Purchaser Plaintiffs for Class Certification, Ex. 27 (Differences Between Sales Prices and Cartel Target Prices of CRTs Manufactured in NAFTA Region) | | |
| | | 02/15/2013 Rebuttal Declaration of Janet S. Netz, Ph.D., in Support of Motion of Indirect-Purchaser Plaintiffs for Class Certification, Ex. 28 (Target Price Ranges Used by Professor Willig in Exhibit 19 for 21-Inch Chunghwa ITC CPTs) | | |
| | | 02/15/2013 Rebuttal Declaration of Janet S. Netz, Ph.D., in Support of Motion of Indirect-Purchaser Plaintiffs for Class Certification, Ex. 29 (15-Inch CDTs: Samsung and All Others) | | |
| | | 02/15/2013 Rebuttal Declaration of Janet S. Netz, Ph.D., in Support of Motion of Indirect-Purchaser Plaintiffs for Class Certification, Ex. 30 (Creation of Artificial Target Price Changes Through Averaging) | | |
| | | 02/15/2013 Rebuttal Declaration of Janet S. Netz, Ph.D., in Support of Motion of Indirect-Purchaser Plaintiffs for Class Certification, Ex. RR-19 (Target Price Data Hedonics Results - All CPT Data) | | |
| | | 02/15/2013 Rebuttal Declaration of Janet S. Netz, Ph.D., in Support of Motion of Indirect-Purchaser Plaintiffs for Class Certification, Ex. RR-20 (Target Price Data Hedonics Results - All CDT Data) | | |
| | | 02/15/2013 Rebuttal Declaration of Janet S. Netz, Ph.D., in Support of Motion of Indirect-Purchaser Plaintiffs for Class Certification, Ex. 31 (Share of Observations with Gap Between Actual and Predicted Prices Above Threshold (CDTs): Alternative Model and Thresholds) | | |

| Temporary Trial Ex. No. | Deposition Ex. No. | Beg Bates | End Bates | Production Beg Bates |
|---|---|---|---|---|
| | | 02/15/2013 Rebuttal Declaration of Janet S. Netz, Ph.D., in Support of Motion of Indirect-Purchaser Plaintiffs for Class Certification, Ex. 32 (Share of Observations with Gap Between Actual and Predicted Prices Above Threshold (CPTs): Alternative Model and Thresholds) | | |
| | | 02/15/2013 Rebuttal Declaration of Janet S. Netz, Ph.D., in Support of Motion of Indirect-Purchaser Plaintiffs for Class Certification, Ex. RR-34 (Pass-Through Study Summary Results) | | |
| | | 02/15/2013 Rebuttal Declaration of Janet S. Netz, Ph.D., in Support of Motion of Indirect-Purchaser Plaintiffs for Class Certification, Ex. RR-35 (Pass-Through Study Explanatory Variable List) | | |
| | | 02/15/2013 Rebuttal Declaration of Janet S. Netz, Ph.D., in Support of Motion of Indirect-Purchaser Plaintiffs for Class Certification, Ex. RR-36 (Pass-Through Stata File List) | | |
| | | 02/15/2013 Rebuttal Declaration of Janet S. Netz, Ph.D., in Support of Motion of Indirect-Purchaser Plaintiffs for Class Certification, Ex. RR-37 (Monitor Pass-Through) | | |
| | | 02/15/2013 Rebuttal Declaration of Janet S. Netz, Ph.D., in Support of Motion of Indirect-Purchaser Plaintiffs for Class Certification, Ex. RR-38 (Television Pass-Through) | | |
| | | 02/15/2013 Rebuttal Declaration of Janet S. Netz, Ph.D., in Support of Motion of Indirect-Purchaser Plaintiffs for Class Certification, Ex. RR-39 (Tubes Pass-Through) | | |
| | | 02/15/2013 Rebuttal Declaration of Janet S. Netz, Ph.D., in Support of Motion of Indirect-Purchaser Plaintiffs for Class Certification, Ex. RR-40 (Pass-Through Studies Channel Coverage) | | |
| | | 02/15/2013 Rebuttal Declaration of Janet S. Netz, Ph.D., in Support of Motion of Indirect-Purchaser Plaintiffs for Class Certification, Ex. RR-41 (Pass-Through Data by Year Retailers) | | |

| Temporary Trial Ex. No. | Deposition Ex. No. | Beg Bates | End Bates | Production Beg Bates |
|---|---|---|---|---|
| | | 02/15/2013 Rebuttal Declaration of Janet S. Netz, Ph.D., in Support of Motion of Indirect-Purchaser Plaintiffs for Class Certification, Ex. RR-42 (Pass-Through Data by Year Product Manufacturers and Product Distributors) | | |
| | | 02/15/2013 Rebuttal Declaration of Janet S. Netz, Ph.D., in Support of Motion of Indirect-Purchaser Plaintiffs for Class Certification, Ex. RR-43 (Pass-Through Data by Year Top-and-Bottom and Top-to-Bottom Studies) | | |
| | | 02/15/2013 Rebuttal Declaration of Janet S. Netz, Ph.D., in Support of Motion of Indirect-Purchaser Plaintiffs for Class Certification, Ex. 33 (Amazon Pass-Through Rates by CRT Monitor Model) | | |
| | | 02/15/2013 Rebuttal Declaration of Janet S. Netz, Ph.D., in Support of Motion of Indirect-Purchaser Plaintiffs for Class Certification, Ex. 34 (Amazon Pass-Through Rates by CRT Monitor Model) | | |
| | | 02/15/2013 Rebuttal Declaration of Janet S. Netz, Ph.D., in Support of Motion of Indirect-Purchaser Plaintiffs for Class Certification, Ex. 35 (Best Buy CRT Product Unit Sales and Weighted Average Unit Price) | | |
| | | 02/15/2013 Rebuttal Declaration of Janet S. Netz, Ph.D., in Support of Motion of Indirect-Purchaser Plaintiffs for Class Certification, Ex. 36 (Best Buy's May 2005 Prices for Product #7027415) | | |
| | | 4/15/2014 Expert Report of Janet S. Netz, Ph.D, Ex. 1 (Cartel Meetings Resulting in Target Price Agreements) | | |
| | | 4/15/2014 Expert Report of Janet S. Netz, Ph.D, Ex. 2 (CRT Capacity Data Sources) | | |
| | | 4/15/2014 Expert Report of Janet S. Netz, Ph.D, Ex. 3 (Production Lines, by Type) | | |
| | | 4/15/2014 Expert Report of Janet S. Netz, Ph.D, Ex. 4 (Worldwide CDT Production Shares) | | |

| Temporary Trial Ex. No. | Deposition Ex. No. | Beg Bates | End Bates | Production Beg Bates |
|---|---|---|---|---|
| | | 4/15/2014 Expert Report of Janet S. Netz, Ph.D, Ex. 5 (Worldwide CPT Production Shares) | | |
| | | 4/15/2014 Expert Report of Janet S. Netz, Ph.D, Ex. 6 (HHI Over Time, Cartelized CPT Production vs. Non- Cartelized CPT Production) | | |
| | | 4/15/2014 Expert Report of Janet S. Netz, Ph.D, Ex. 7 (HHI Over Time, Cartelized CDT Production vs. Non-Cartelized CDT Production) | | |
| | | 4/15/2014 Expert Report of Janet S. Netz, Ph.D, Ex. 8 (HHI Over Time, Cartelized CRT Production vs. Non-Cartelized CRT Production) | | |
| | | 4/15/2014 Expert Report of Janet S. Netz, Ph.D, Ex. 9 (Total Worldwide CRT Production by Tube Type) | | |
| | | 4/15/2014 Expert Report of Janet S. Netz, Ph.D, Ex. 10 (CRT Distribution Diagram) | | |
| | | 4/15/2014 Expert Report of Janet S. Netz, Ph.D, Ex. 11 (Worldwide CRT Production Shares) | | |
| | | 4/15/2014 Expert Report of Janet S. Netz, Ph.D, Ex. 12 (Shares of Worldwide CRT Capacity) | | |
| | | 4/15/2014 Expert Report of Janet S. Netz, Ph.D, Ex. 13 (Worldwide Monitor Share by Technology) | | |
| | | 4/15/2014 Expert Report of Janet S. Netz, Ph.D, Ex. 14 (Worldwide TV Share by Technology) | | |
| | | 4/15/2014 Expert Report of Janet S. Netz, Ph.D, Ex. 15 (CDT Prices and Compound Annual Growth Rates) | | |
| | | 4/15/2014 Expert Report of Janet S. Netz, Ph.D, Ex. 16 (CPT Prices and Compound Annual Growth Rates) | | |
| | | 4/15/2014 Expert Report of Janet S. Netz, Ph.D, Ex. 17 (15" Monitor Price by Technology) | | |
| | | 4/15/2014 Expert Report of Janet S. Netz, Ph.D, Ex. 18 (17" Monitor Price by Technology) | | |

| Temporary Trial Ex. No. | Deposition Ex. No. | Beg Bates | End Bates | Production Beg Bates |
|---|---|---|---|---|
| | | 4/15/2014 Expert Report of Janet S. Netz, Ph.D, Ex. 19 (19" Monitor Price by Technology) | | |
| | | 4/15/2014 Expert Report of Janet S. Netz, Ph.D, Ex. 20 (10" - 14" TV Price by Technology) | | |
| | | 4/15/2014 Expert Report of Janet S. Netz, Ph.D, Ex. 21 (20" - 21" TV Price by Technology) | | |
| | | 4/15/2014 Expert Report of Janet S. Netz, Ph.D, Ex. 22 (25" - 29" TV Price by Technology) | | |
| | | 4/15/2014 Expert Report of Janet S. Netz, Ph.D, Ex. 23 (Worldwide Quantity of LCD Monitors Sold) | | |
| | | 4/15/2014 Expert Report of Janet S. Netz, Ph.D, Ex. 24 (Worldwide Quantity of LCD TVs Sold) | | |
| | | 4/15/2014 Expert Report of Janet S. Netz, Ph.D, Ex. 25 (Gain in CPT Sales Necessary for 5% Price Decline to be Profitable) | | |
| | | 4/15/2014 Expert Report of Janet S. Netz, Ph.D, Ex. 26 (Gain in CDT Sales Necessary for 20% Price Decline to be Profitable) | | |
| | | 4/15/2014 Expert Report of Janet S. Netz, Ph.D, Ex. 27 (Glass Meeting Attendees) | | |
| | | 4/15/2014 Expert Report of Janet S. Netz, Ph.D, Ex. 28 (Cartel Meetings Resulting in Capacity or Production Control) | | |
| | | 4/15/2014 Expert Report of Janet S. Netz, Ph.D, Ex. 29 (Cartel Agreements to Reduce CDT Capacity by Shutting Down Production Lines) | | |
| | | 4/15/2014 Expert Report of Janet S. Netz, Ph.D, Ex. 30 (Price of 15-Inch CDTs) | | |
| | | 4/15/2014 Expert Report of Janet S. Netz, Ph.D, Ex. 31 (Price of 17-Inch CDTs) | | |
| | | 4/15/2014 Expert Report of Janet S. Netz, Ph.D, Ex. 32 (Price of 19-Inch CDTs) | | |
| | | Expert Report of Janet S. Netz, Ph.D, Ex. 33 (Price of 14-Inch CPTs) | | |
| | | 4/15/2014 Expert Report of Janet S. Netz, Ph.D, Ex. 34 (Price of 20-Inch CPTs) | | |

| Temporary Trial Ex. No. | Deposition Ex. No. | Beg Bates | End Bates | Production Beg Bates |
|---|---|---|---|---|
| | | 4/15/2014 Expert Report of Janet S. Netz, Ph.D, Ex. 35 (Price of 21-Inch CPTs) | | |
| | | 4/15/2014 Expert Report of Janet S. Netz, Ph.D, Ex. 36 (Price of 29-Inch CPTs) | | |
| | | 4/15/2014 Expert Report of Janet S. Netz, Ph.D, Ex. 37 (Target Price Regression Results - CDTs) | | |
| | | 4/15/2014 Expert Report of Janet S. Netz, Ph.D, Ex. 38 (Target Price Regression Results - CPTs) | | |
| | | 4/15/2014 Expert Report of Janet S. Netz, Ph.D, Ex. 39 (Price Differentials Set by Cartel) | | |
| | | 4/15/2014 Expert Report of Janet S. Netz, Ph.D, Ex. 40 (CDT Hedonic Regression Results) | | |
| | | 4/15/2014 Expert Report of Janet S. Netz, Ph.D, Ex. 41 (CPT Hedonic Regression Results) | | |
| | | 4/15/2014 Expert Report of Janet S. Netz, Ph.D, Ex. 42 (CDT Price Indices) | | |
| | | 4/15/2014 Expert Report of Janet S. Netz, Ph.D, Ex. 43 (CPT Price Indices) | | |
| | | 4/15/2014 Expert Report of Janet S. Netz, Ph.D, Ex. 44 (Target Price Index Regression Results - CDTs) | | |
| | | 4/15/2014 Expert Report of Janet S. Netz, Ph.D, Ex. 45 (Target Price Index Regression Results - CPTs) | | |
| | | 4/15/2014 Expert Report of Janet S. Netz, Ph.D, Ex. 46 (Regional Shares of Worldwide CRT Monitor Consumption) | | |
| | | 4/15/2014 Expert Report of Janet S. Netz, Ph.D, Ex. 47 (Regional Shares of Worldwide CRT TV Consumption) | | |

| Temporary Trial Ex. No. | Deposition Ex. No. | Beg Bates | End Bates | Production Beg Bates |
|---|---|---|---|---|
| | | 4/15/2014 Expert Report of Janet S. Netz, Ph.D, Ex. 48 (Regional Shares of Worldwide CDT Production) | | |
| | | 4/15/2014 Expert Report of Janet S. Netz, Ph.D, Ex. 49 (Regional Shares of Worldwide CDT Capacity) | | |
| | | 4/15/2014 Expert Report of Janet S. Netz, Ph.D, Ex. 50 (Regional Shares of Worldwide CRT Monitor Production) | | |
| | | 4/15/2014 Expert Report of Janet S. Netz, Ph.D, Ex. 51 (Regional Shares of Worldwide CPT Production) | | |
| | | 4/15/2014 Expert Report of Janet S. Netz, Ph.D, Ex. 52 (Regional Shares of Worldwide CRT TV Production) | | |
| | | 4/15/2014 Expert Report of Janet S. Netz, Ph.D, Ex. 53 (Intense Competition Leads to Low Profit Rates) | | |
| | | 4/15/2014 Expert Report of Janet S. Netz, Ph.D, Ex. 54 (High Degree of Competition in the Production of CRT Products) | | |
| | | 4/15/2014 Expert Report of Janet S. Netz, Ph.D, Ex. 55 (Monitor Brand Worldwide Market Shares, 2004-2006) | | |
| | | 4/15/2014 Expert Report of Janet S. Netz, Ph.D, Ex. 56 (TV Brand Worldwide Market Shares, 2005-2006) | | |
| | | 4/15/2014 Expert Report of Janet S. Netz, Ph.D, Ex. 57 (Defendants Indicate that Pass-Through Occurs) | | |
| | | 4/15/2014 Expert Report of Janet S. Netz, Ph.D, Ex. 58 (Industry Participants Indicate that Pass-Through Occurs) | | |
| | | 4/15/2014 Expert Report of Janet S. Netz, Ph.D, Ex. 59 (Tube Manufacturers Monitor Street Prices of CRT Products) | | |
| | | 4/15/2014 Expert Report of Janet S. Netz, Ph.D, Ex. 60 (Market Research Firms Monitor and Publish Street Price Data) | | |

| Temporary Trial Ex. No. | Deposition Ex. No. | Beg Bates | End Bates | Production Beg Bates |
|---|---|---|---|---|
| | | 4/15/2014 Expert Report of Janet S. Netz, Ph.D, Ex. 61 (Defendants in TFT-LCD Antitrust Litigation Acknowledge Pass-through Occurred) | | |
| | | 4/15/2014 Expert Report of Janet S. Netz, Ph.D, Ex. 62 (Pass-Through Study Summary Results) | | |
| | | 4/15/2014 Expert Report of Janet S. Netz, Ph.D, Ex. 63 (Pass-Through Study Explanatory Variable List) | | |
| | | 4/15/2014 Expert Report of Janet S. Netz, Ph.D, Ex. 64 (CRT Tube Sales Data) | | |
| | | 4/15/2014 Expert Report of Janet S. Netz, Ph.D, Ex. 65 (Direct Overcharge Models and Sensitivity Checks) | | |
| | | 4/15/2014 Expert Report of Janet S. Netz, Ph.D, Ex. 66 (Top-to-Bottom Pass-Through Method) | | |
| | | 4/15/2014 Expert Report of Janet S. Netz, Ph.D, Ex. 67 (Top-and-Bottom Pass-Through Method) | | |
| | | 4/15/2014 Expert Report of Janet S. Netz, Ph.D, Ex. 68 (Top-and-Bottom Pass-Through Study Results) | | |
| | | 4/15/2014 Expert Report of Janet S. Netz, Ph.D, Ex. 69 (Top-to-Bottom Pass-Through Study Results) | | |
| | | 4/15/2014 Expert Report of Janet S. Netz, Ph.D, Ex. 70 (Multi-Level Pass-Through Study Results) | | |
| | | 4/15/2014 Expert Report of Janet S. Netz, Ph.D, Ex. 71 (Pass-Through Stata File List) | | |
| | | 4/15/2014 Expert Report of Janet S. Netz, Ph.D, Ex. 72 (Monitor Pass-Through) | | |
| | | Expert Report of Janet S. Netz, Ph.D, Ex. 73 (Television Pass-Through) | | |
| | | 4/15/2014 Expert Report of Janet S. Netz, Ph.D, Ex. 74 (Tubes Pass-Through) | | |
| | | 4/15/2014 Expert Report of Janet S. Netz, Ph.D, Ex. 75 (Pass-Through Studies Channel Coverage) | | |
| | | 4/15/2014 Expert Report of Janet S. Netz, Ph.D, Ex. 76 (Pass-Through Data by Year Retailers) | | |

| Temporary Trial Ex. No. | Deposition Ex. No. | Beg Bates | End Bates | Production Beg Bates |
|---|---|---|---|---|
| | | 4/15/2014 Expert Report of Janet S. Netz, Ph.D, Ex. 77 (Pass-Through Data by Year Product Makers and Product Distributors) | | |
| | | 4/15/2014 Expert Report of Janet S. Netz, Ph.D, Ex. 78 (Pass-Through Data by Year Top-and-Bottom, Top-to-Bottom, and Multi-Level Studies) | | |
| | | 4/15/2014 Expert Report of Janet S. Netz, Ph.D, Ex. 79 (Class Share of Worldwide CRT Revenues) | | |
| | | 4/15/2014 Expert Report of Janet S. Netz, Ph.D, Ex. 80 (Class CRT Expenditures by Product Type and Defendant Status) | | |
| | | 4/15/2014 Expert Report of Janet S. Netz, Ph.D, Ex. 81 (Nominal Damages Suffered by Class Members) | | |
| | | 4/15/2014 Expert Report of Janet S. Netz, Ph.D, Ex. 82 (CRT Production and Market Shares Data Sources) | | |
| | | 4/15/2014 Expert Report of Janet S. Netz, Ph.D, Ex. 83 (Direct Overcharge Data Sources) | | |
| | | 4/15/2014 Expert Report of Janet S. Netz, Ph.D, Ex. 84 (Total Damages Data Sources) | | |
| | | 07/03/2014 Errata to the Expert Report of Janet S. Netz, Ph.D, Ex. ER-81 (Nominal Damages Suffered by Class Members) | | |
| | | 08/05/2014 Reply Expert Report of Janet S. Netz, Ph.D., on Affirmative Defenses, Ex. 1 (KPNV Losses if CRT Price Were 5% Lower) | | |
| | | 08/05/2014 Reply Expert Report of Janet S. Netz, Ph.D., on Affirmative Defenses, Ex. 2 (KPNV Losses if CRT Price Were 10% Lower) | | |
| | | 08/05/2014 Reply Expert Report of Janet S. Netz, Ph.D., on Affirmative Defenses, Ex. 3 (KPNV Losses if CRT Price Were 15% Lower) | | |
| | | 08/05/2014 Reply Expert Report of Janet S. Netz, Ph.D., on Affirmative Defenses, Ex. 4 (KPNV Losses if CRT Price Were 20% Lower) | | |
| | | 09/24/2014 Rebuttal Expert Report of Janet S. Netz, Ph.D., Ex. RR-62 (Pass-Through Study Summary Results) | | |
| | | 09/26/2014 Rebuttal Expert Report of Janet S. Netz, Ph.D., Ex. RR-63 (Pass-Through Study Explanatory Variable List) | | |
| | | 09/26/2014 Rebuttal Expert Report of Janet S. Netz, Ph.D., Ex. RR-71 (Pass-Through Stata File List) | | |

| Temporary Trial Ex. No. | Deposition Ex. No. | Beg Bates | End Bates | Production Beg Bates |
|---|---|---|---|---|
| | | 09/26/2014 Rebuttal Expert Report of Janet S. Netz, Ph.D., Ex. RR-73 (Television Pass-Through) | | |
| | | 09/26/2014 Rebuttal Expert Report of Janet S. Netz, Ph.D., Ex. RR-75 (Pass-Through Studies Channel Coverage) | | |
| | | 09/26/2014 Rebuttal Expert Report of Janet S. Netz, Ph.D., Ex. RR-76 (Pass-Through Data by Year Retailers) | | |
| | | 09/26/2014 Rebuttal Expert Report of Janet S. Netz, Ph.D., Ex. RR-85 (1995 - 1996 Cartel Meetings/Communications) | | |
| | | 09/26/14 Rebuttal Expert Report of Janet S. Netz, Ph.D., Ex. RR-86 (Pre-MTPD Panasonic (Matsushita) and BMCC Cartel Meetings/Communications) | | |
| | | 09/26/14 Rebuttal Expert Report of Janet S. Netz, Ph.D., Ex. RR-87 (Pre-MTPD Toshiba Cartel Meetings/Communications) | | |
| | | 09/26/14 Rebuttal Expert Report of Janet S. Netz, Ph.D., Ex. RR-88 (Hitachi Cartel Meetings/Communications) | | |
| | | 09/26/14 Rebuttal Expert Report of Janet S. Netz, Ph.D., Ex. RR-89 (Meetings with Quarterly Target Prices) | | |
| | | 09/26/14 Rebuttal Expert Report of Janet S. Netz, Ph.D., Ex. RR-90 (Meeting Notes Showing Network of Communication Between Cartel Members) | | |
| | | 09/26/14 Rebuttal Expert Report of Janet S. Netz, Ph.D., Ex. RR-91 (Examples of Meeting Notes Discussing Large CPTs Before 2003) | | |
| | | 09/26/14 Rebuttal Expert Report of Janet S. Netz, Ph.D., Ex. RR-92 (Target Price Regression Results - Small CPTs) | | |
| | | 09/26/14 Rebuttal Expert Report of Janet S. Netz, Ph.D., Ex. RR-93 (Target Price Regression Results - Large CPTs) | | |
| | | 09/26/14 Rebuttal Expert Report of Janet S. Netz, Ph.D., Ex. RR-94 (Time Series of Price Levels (Simulated Data)) | | |
| | | 09/26/14 Rebuttal Expert Report of Janet S. Netz, Ph.D., Ex. RR-95 (Differences in Actual v. Target Prices (Simulated Data)) | | |

| Temporary Trial Ex. No. | Deposition Ex. No. | Beg Bates | End Bates | Production Beg Bates |
|---|---|---|---|---|
| | | 09/26/14 Rebuttal Expert Report of Janet S. Netz, Ph.D., Ex. RR-96 (Target Price Regression Results - CPTs) | | |
| | | 09/26/14 Rebuttal Expert Report of Janet S. Netz, Ph.D., Ex. RR-97 (Target Price Index Regression Results - CPTs) | | |
| | | 09/26/14 Rebuttal Expert Report of Janet S. Netz, Ph.D., Ex. RR-98 (Correlation Between Panasonic, MTPD Price Indices and Other Defendants' Price Indices) | | |
| | | 09/26/14 Rebuttal Expert Report of Janet S. Netz, Ph.D., Ex. RR-99 (Alternative Overcharge Model Specifications) | | |
| | | 03/20/23 Declaration of Janet S. Netz, PhD. In Response to Irico Defendants' Motion to Partially Exclude Testimony, Ex. A (Curriculum Vitae) | | |
| | | 09/17/14 J. Sanders Ltr to P. Iovieno (Sept. 17, 2014) | | |
| | | 1/21/2022 Irico's Supplemental Objections and Responses to IPPs' 3rd Set of ROGs. | | |
| | | 03/01/19 Declaration of Wang Zhaojie ISO Mot to Dismiss | | |
| | | 03/01/19 Declaration of Guo Mengquan ISO Mot to Dismiss | | |
| | | 05/02/19 Amended Declaration of Wang Zhaojie ISO Mot to Dismiss | | |
| | | 08/21/03 McWilliams, Gary,  Dell Price Cuts Put a Squeeze On Rival H-P, Wall Street Journal, Eastern Edition, pg. B.1 08/21/2003 | | |
| | | Expert Exhibits | | |
| | | Class Plaintiffs' documents (including receipts, invoices, product manuals, pictures, and other forms of proof of ownership) | | |
| | | Financial Reports of the defendants and co-conspirators, their subsidiaries and affiliates during the relevant period. | | |

| TEMPORARY EX. NUMBER | DEPO EX. NUMBER | BATES START | BATES END | Production Beg Bates |
|---|---|---|---|---|
| | 106 | Luscher's Verification | N/A | |
| | 108 | CRT000014 | CRT000014 | |
| | 109 | Luscher's Interrogatory Responses | N/A | |
| | | Declaration of Proposed Class Representative Brian Luscher (Ex. 13 to the Declaration of Mario N Alioto) | N/A | |
| | | CRT001813 | CRT001813 | |
| | | CRT001737 | CRT001748 | |
| | | LPD_00019519 | LPD_00019519 | |
| | 69 | CRT000240 | CRT000240 | |
| | 70 | CRT000241 | CRT000243 | |
| | 74 | CRT000244 | CRT000246 | |
| | 71 | CRT000247 | CRT000294 | |
| | 75 | CRT000298 | CRT000371 | |
| | | Declaration of Proposed Class Representative Steven Ganz (Ex. 1 to the Declaration of Mario N Alioto) | N/A | |
| | 66 | Ganz Amended Interrogatory Responses | N/A | |
| | 68 | Ganz Verification | N/A | |
| | 72 | Ganz Interrogatory Responses | N/A | |
| | 73 | CRT000239 | CRT000239 | |
| | 505 | Figone's Further Amended Interrogatory Responses | N/A | |
| | 506 | CRT000166 | CRT000167 | |
| | | CRT001749 | CRT001772 | |
| | | CHU00516814 | CHU00516814 | |
| | 507 | CRT000157 | CRT000165 | |
| | | CRT001815 | CRT001815 | |
| | | CRT001620 | CRT001736 | |
| | | CRT001816 | CRT001816 | |
| | 367 | CRT000907 | CRT000909 | |
| | 371 | Lawyer's Choice's Verification | N/A | |
| | 373 | Lawyer's Choice's Interrogatory Responses | N/A | |
| | 368 | CRT000910 | CRT000910 | |
| | 369 | CRT000911 | CRT000911 | |

| TEMPORARY EX. NUMBER | DEPO EX. NUMBER | BATES START | BATES END | Production Beg Bates |
|---|---|---|---|---|
| | | CRT001494 | CRT001543 | |
| | | CRT001433 | CRT001493 | |
| | 595 | CRT000912 | CRT000914 | |
| | 597 | Rook's Verification | N/A | |
| | | Rooks Interrogatory Responses | N/A | |
| | | PAN0000031 | PAN0000369 | |
| | | MTPD-0132012 | MTPD-0132014 | |
| | | CRT001814 | CRT001814 | |
| | | CRT001544 | CRT001619 | |
| | | Indirect Purchaser Plaintiff Sandra Riebow's Objection and Responses to Defendant Irico Group Corp. and Irico Display Devices Co., Ltd.'s First Set of Interrogatories | N/A | |
| | 95 | Daniel Riebow's Interrogatory Responses | N/A | |
| | 98 | Daniel Riebow's Verification | N/A | |
| | 100 | CRT000063 | CRT000063 | |
| | 101 | CRT000064 | CRT000069 | |
| | | CRT001130 | CRT001130 | |
| | | CRT001132 | CRT001133 | |
| | 172 | CRT000372 | CRT000372 | |
| | 170 | Burau's Interrogatory Response | N/A | |
| | 173 | Pictures of Burau's CRT | N/A | |
| | 354 | Southern Office's Amended Interrogatory Responses | N/A | |
| | 356 | CRT000222 | CRT000237 | |
| | 360 | 923 | 924 | |
| | 361 | 925 | 928 | |
| | 362 | 929 | 930 | |
| | 363 | 931 | 935 | |
| | 364 | 936 | 937 | |
| | 365 | 938 | 942 | |
| | 355 | Picture of monitor and CRT | N/A | |
| | 357 | Picture of monitor and CRT | N/A | |

| TEMPORARY EX. NUMBER | DEPO EX. NUMBER | BATES START | BATES END | Production Beg Bates |
|---|---|---|---|---|
| | 358 | Pictire of monitor and CRT | N/A | |
| | 542 | Picture of Jenkins' Packard Bell monitor | N/A | |
| | 55 | CRT000512 | CRT000512 | |
| | 61 | Hall's Verification | N/A | |
| | 62 | Hall's Interrogatory Response | N/A | |
| | | Attached as Ex. 7 to the Declaration of Mario N Alioto In Support of Reply Brief in Support of Motion of Indirect-Purchaser Plaintiffs for Class Certification | N/A | |
| | | CRT001817 | CRT001817 | |
| | | PHLP-CRT-067904 | PHLP-CRT-067904 | |
| | | Declaration of Proposed Class Lisa Reynolds (Ex. 8 to the Declaration of Mario N Alioto) | N/A | |
| | 87 | CRT000520 | CRT000523 | |
| | 85 | CRT000518 | CRT000518 | |
| | 84 | New IPP responses to Samsung SDI's 1st set of Interrogatories | N/A | |
| | | Reynolds verification for Samsung SDI first set of Interrogatories | N/A | |
| | | Reynolds verification of supplemental responses to Samsung SDI's Interrogatories | N/A | |
| | | TACP-CRT-00021819 | TACP-CRT-00021835 | |
| | | MTPD_0251941 | MTPD_0251944 | |
| | | CRT000373 | CRT000374 | |
| | 18 | CRT000381 | CRT000496 | |
| | 17 | CRT000416 | CRT000416 | |
| | 16 | Photo of Philips TV label | N/A | |

| TEMPORARY EX. NUMBER | DEPO EX. NUMBER | BATES START | BATES END | Production Beg Bates |
|---|---|---|---|---|
| | | Declaration of Proposed Class Representative Barry Kushner (Ex. 2 to the Declaration of Mario N Alioto) | N/A | |
| | 14 | Photo of Toshiba television label | N/A | |
| | 28 | Interrogatory Responses Samsung Ex. B28 | N/A | |
| | 442 | CRT000015 | CRT000016 | |
| | 442 | CRT000071 | CRT000072 | |
| | 439 | Norby Verification | N/A | |
| | 438 | Samsung Exs. A13, B13, D13, and E13 | N/A | |
| | 443 | Photo of TV | N/A | |
| | 444 | Photo of CRT | N/A | |
| | 533 | Jenkins' Interrogatory Response | N/A | |
| | 534 | CRT000036 | CRT000036 | |
| | 535 | CRT000037 | CRT000038 | |
| | 536 | CRT000039 | CRT000040 | |
| | 537 | CRT000041 | CRT000041 | |
| | 538 | Picture of Jenkins' Durabrand television | N/A | |
| | 539 | Picture of Jenkins' Durabrand television | N/A | |
| | 540 | Picture of the inside of Jenkins' Durabrand television | N/A | |
| | 541 | Picture of the CRT inside Jenkins' Durabrand television | N/A | |
| | 542 | CRT000042 | CRT000043 | |
| | 543 | CRT000044 | CRT000044 | |
| | 544 | CRT000045 | CRT000045 | |
| | 546 | Picture of the inside of Jenkins' Packard Bell monitor | N/A | |
| | 547 | Picture of the CRT inside of Jenkins' Packard Bell monitor | N/A | |
| | 524 | CRT000844 | CRT000845 | |
| | 525 | CRT000830 | CRT000835 | |
| | 527 | CRT000846 | CRT000846 | |
| | 530 | Andrews Verification | N/A | |

| TEMPORARY EX. NUMBER | DEPO EX. NUMBER | BATES START | BATES END | Production Beg Bates |
|---|---|---|---|---|
| | 521 | Andrews Interrogatory Responses | N/A | |
| | 124 | CRT000154 | CRT000154 | |
| | 125 | CRT000155 | CRT000156 | |
| | 128 | CRT000497 | CRT000499 | |
| | 129 | CRT000500 | CRT000504 | |
| | 130 | Photos of Dell monitor | N/A | |
| | 131 | Photos of Toshiba TVs | N/A | |
| | 123 | Hanson Interrogatory Responses | N/A | |
| | | Hanson Verification | N/A | |
| | 583 | Fink's Interrogatory Response | N/A | |
| | 584 | Fink's Verification | N/A | |
| | 589 | CRT000902 | CRT000902 | |
| | 590 | CRT000903 | CRT000906 | |
| | 115 | Stephenson's Interrogatory Responses | N/A | |
| | 119 | CRT000051 | CRT000051 | |
| | 120 | CRT000052 | CRT0000523 | |
| | 121 | Photos of CRT | N/A | |
| | | N/A | N/A | |
| | | Indirect Purchaser Plaintiff Mary Ann Stephenson's Objection and Responses to Defendant Irico Group Corp. and Irico Display Devices Co., Ltd.'s First Set of Interrogatories | N/A | |
| | | Stephenson verification- Samsung | N/A | |
| | | Stephenson verification- SDI | N/A | |
| | | Stephenson verification- SEA | N/A | |
| | | Indirect Purchaser Plaintiff Gregory Painter's Objection and Responses to Defendant Irico Group Corp. and Irico Display Devices Co., Ltd.'s First Set of Interrogatories | N/A | |
| | | CRT001128 | CRT001128 | |
| | | CRT1000 | CRT1127 | |

| TEMPORARY EX. NUMBER | DEPO EX. NUMBER | BATES START | BATES END | Production Beg Bates |
|---|---|---|---|---|
| | 382 | CRT000919 | CRT000919 | |
| | 383 | CRT000919 | CRT000919 | |
| | 391 | Samsung Exhibit B37 | N/A | |
| | 394 | Woods Verification | N/A | |
| | | CRT001773 | CRT001812 | |
| | | MTPD-0642663 | MTPD-0642664 | |
| | | Indirect Purchaser Plaintiff Donna Ellingson-Mack's Objection and Responses to Defendant Irico Group Corp. and Irico Display Devices Co., Ltd.'s First Set of Interrogatories | N/A | |
| | | CRT000075 | CRT000075 | |
| | | CRT000078 | CRT000078 | |
| | | CRT000079 | CRT000086 | |
| | | CRT000525 | CRT000525 | |
| | | CRT000526 | CRT000561 | |
| | | 2012.11.28 12_98 - 3_01 CRT Purchase Data_Replacement.xlsx | N/A | |
| | 511 | Crigler's Interrogatory Response | N/A | |
| | 512 | CRT000002 | CRT000005 | |
| | 513 | Pictures of Crigler's CRT | N/A | |
| | | FOX00051317 | N/A | |
| | | Declaration of Zsolt Tolgyesi (Ex. 4 to the Declaration of Mario N Alioto) | N/A | |
| | 49 | CRT000505 | CRT000505 | |
| | 50 | Photos of Sylvania TV | N/A | |
| | 51 | Photos of Magnavox TV | N/A | |
| | 52 | Slagel Interrogatory Responses | N/A | |
| | | Slagel Verification | N/A | |
| | 429 | CRT000017 | CRT000018 | |
| | 429 | CRT000073 | CRT000074 | |
| | 429 | CRT000563 | CRT000564 | |
| | 431 | Photo of Toshiba CRT | N/A | |
| | 425 | Terry Interogatory Responses | N/A | |
| | 426 | Terry Verification | N/A | |

| TEMPORARY EX. NUMBER | DEPO EX. NUMBER | BATES START | BATES END | Production Beg Bates |
|---|---|---|---|---|
| | 433 | Photo of Toshiba TV label | N/A | |
| | 435 | Photo of CRT | N/A | |
| | 146 | CRT000171 | CRT000171 | |
| | 147 | CRT000172 | CRT000172 | |
| | 145 | Larch's Interrogatory Response | N/A | |
| | 149 | Picture of Larch's CRT | N/A | |
| | 150 | Picture of Larch's CRT label | N/A | |
| | | Stipulation and Order substituting named Plaintiff for New Mexico (Marylou Hilberg for Estate of Craig Stephenson) | N/A | |
| | | Declaration of Mario N. Alioto in Support of Reply Brief in Support of Motion of Indirect-Purchaser Plaintiffs for Class Certification | N/A | |
| | | Indirect Purchaser Plaintiffs Sandra Riebow, Gregory Painter, Mary Ann Stephenson, and Donna Ellingson-Mack's Objection and Responses to Defendant Irico Group Corp. and Irico Display Devices Co., Ltd.'s First Set of Request for Production of Documents | N/A | |

# Exhibit 29

MARIO N. ALIOTO, ESQ. (56433)
LAUREN C. CAPURRO, ESQ. (241151)
TRUMP, ALIOTO, TRUMP & PRESCOTT, LLP
2001 Union Street, Suite 482
San Francisco, CA 94123
Telephone: (415) 563-7200
Facsimile: (415) 346-0679
E-mail: malioto@tatp.com
laurenrussell@tatp.com

*Lead Counsel for the Indirect-Purchaser Plaintiffs*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| IN RE CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Master File No. 4:07-cv-5944-JST |
| | MDL No. 1917 |
| This Document Relates to: | |
| Indirect-Purchaser Class Action | **INDIRECT PURCHASER PLAINTIFFS' WITNESS LIST (JUNE 30, 2023)** |
| | The Honorable Jon S. Tigar |

Pursuant to the Court's May 19, 2023 Stipulation and Order Re Case Schedule (ECF No. 6198), the Indirect Purchaser Plaintiffs ("IPPs") hereby provide notice of witnesses they may call in their case-in-chief at trial, either live or through deposition designations.  In addition to the witnesses listed below, IPPs reserve the right to call witnesses listed on the witness lists of all other parties, and to designate additional witnesses as trial preparations continue, included, but not limited to, designating additional witnesses (i) for purposes of authenticating documents or establishing that documents are business records; (ii) in response to any amendments or revisions by Defendants of their initial witness list(s), exhibit list(s), written discovery designations, or deposition designations; (iii) in response to Defendants' exhibits and deposition designations; (iv) as necessary should any party settle or be removed from the trial for any reason; and (v) in response to the Court's resolution of any pending or future motions.  IPPs also reserve the right to call custodians of records and witnesses to summarize voluminous writings or recordings.  In addition, IPPs reserve the right to identify as witnesses any persons yet to be deposed in this action, but who are deposed prior to trial.  IPPs also reserve the right to move into evidence previous trial testimony regarding subjects relevant to trial.  The identification of a witness on this list is not an indication or representation that IPPs control the witness or can compel his or her attendance at trial.

**Name:**

Ahn, Joon Seog

Andrews, Patricia

Bond, Clayton Eugene

Burau, Travis

Canavan, Patrick

Choi, Kyu In Quin

Chu, Hun Sul

Crigler, Albert Sidney

De Lombaerde, Jan

De Moor, Roger

| | |
|---|---|
| 1 | Ellingson-Mack, Donna |
| 2 | Figone, Jeffrey |
| 3 | Fink, Steven |
| 4 | Fujita, Norio |
| 5 | Ganz, Steven |
| 6 | Hall, Kerry Lee |
| 7 | Hanson, Gary |
| 8 | Heiser, L. Thomas |
| 9 | Hirai, Kazumasa |
| 10 | Hsu, Chih-Yen |
| 11 | Iwamoto, Shinichi |
| 12 | Jenkins, Charles |
| 13 | Johnson, Jeffrey L. |
| 14 | Jung, Jin Kang |
| 15 | Killen, Joseph |
| 16 | Kim, Deok-Yun |
| 17 | Kim, Woong Rae |
| 18 | Kinoshita, Ayumu |
| 19 | Kobayashi, Nobuhiko |
| 20 | Kumazawa, Yuuichi |
| 21 | Kushner, Barry |
| 22 | Larch, John |
| 23 | Lawyers' Choice Suites, Inc. |
| 24 | Lee, Dae Eui |
| 25 | Lee, Jae In |
| 26 | Lee, Pil Jae |
| 27 | Liu, Chih Chun (C.C.) |
| 28 | Lu, Jing Song (Jason) |

INDIRECT PURCHASER PLAINTIFFS' WITNESS LIST
Master File No. 4:07-cv-5944-JST; MDL No. 1917

1   Luscher, Brian

2   Miao, Li

3   Mortier, Kris

4   Muramatsu, Masashi

5   Netz, Janet S.

6   Nishimaru, Kazuhiro

7   Nishimura, Kazutaka

8   Nishiyama, Hirokazu

9   Norby, David G.

10   O'Brien, Robert

11   Oh, Kyung Chul

12   Painter, Gregory

13   Park, Sang-Kyu

14   Reynolds, Lisa

15   Riebow, Daniel (now by Sandy Riebow)

16   Rooks, David

17   Ryan, Daniel

18   Ryu, Duk Chul

19   Sakashita, Kazuhiro

20   Sanogawaya, Masaki

21   Slagle, Margaret

22   Smith, Jim

23   Son, Michael

24   Song, In Hwan

25   Southern Office Supply, Inc.

26   Spaargaren, Franciscus

27   Stephenson, Craig (now by Marylou Hilberg)

28   Sung, Sung Kook

1  Terry, Brigid

2  Toyama, Noboru

3  Tsukamoto, Hitoshi

4  Tsuruta, Shinichiro

5  Vaartjes, Wiebo Jan

6  Wang, Zhaojie

7  Witnesses to be identified from LG

8  Witnesses to be identified from Hitachi

9  Witnesses to be identified from Samsung SDI

10  Witnesses to be identified from Thomson

11  Witnesses to be identified from Toshiba

12  Wood, Louise

13  Xue, Shouwen

14  Yamamoto, Yasuki

15  Yan, Yunlong

16  Yang, Sheng-Jen

17  Youn, Jun Yeol

18  Zhang, Wenkai

19  Zhang, Yu-Hao (aka Allen Chang)

20

21  Dated:  June 30, 2023              By:  _/s/ Mario N. Alioto_____
                                       Mario N. Alioto (56433)
22                                     Lauren C. Capurro (241151)
                                       TRUMP, ALIOTO, TRUMP & PRESCOTT LLP
23                                     2001 Union Street, Suite 482
                                       San Francisco, CA 94123
24                                     Telephone:     (415) 563-7200
                                       Facsimile:     (415) 346-0679
25                                     Email:  malioto@tatp.com
                                       Email:  laurenrussell@tatp.com
26
                                       *Lead Counsel for Indirect Purchaser Plaintiffs*
27

28

INDIRECT PURCHASER PLAINTIFFS' WITNESS LIST
Master File No. 4:07-cv-5944-JST; MDL No. 1917

# Exhibit 30

*Trump Alioto Trump & Prescott*
ATTORNEYS LLP
2001 Union Street, Suite 482
San Francisco, California 94123
(415) 563-7200
FAX (415) 346-0679

August 18, 2023

**VIA EMAIL**

John M. Taladay
Evan J. Werbel
Thomas E Carter
Andrew L. Lucarelli
BAKER BOTTS L.L.P.
700 K Street, N.W.
Washington, D.C. 20001

**Re**:     *In re Cathode Ray Tube* (*CRT*) *Antitrust Litigation*, U.S. District Court, N.D. Cal.,
Master File No. 4:07-cv-05944-JST

Dear Counsel:

Pursuant to the Court's August 10, 2023 Stipulation and Order Re Case Schedule
(ECF No. 6236), attached please find the current version of the Indirect Purchaser
Plaintiffs' ("IPPs") objections and counters to the initial deposition designations that the
Irico Defendants served on June 30, 2023.  Please note that, for the sake of efficiency, we
are serving today objections as well as counters despite the extension of time until August
30, 2023 to serve objections to initial deposition designations.  Although we do not
anticipate this, we reserve the right to modify or supplement objections before the new
August 30th deadline.

The counters and objections that we are serving today are based on the current
state of IPPs' knowledge and the current state of this litigation and all of IPPs' rights are
expressly reserved.  For example, the IPPs reserve all rights to amend, supplement or
modify their objections and counters in response to the Irico Defendants' objections and
counters.

The IPPs also reserve all rights to amend, supplement or modify their objections
and counters, including in response to a change in the trial structure, any further
discovery that is produced in this case, settlements between parties, any motions or
responses filed by the parties, including responses to pending motions for summary
judgment and motions in limine, and any rulings by the Court.

The IPPs also reserve all rights to amend, supplement or modify their objections
and counters in response to changes made by the Irico Defendants to their exhibit list,
witness list, deposition designations or objections or counter-designations.

John Taladay et al.
August 18, 2023
Page 2 of 2

    The inclusion of a counter-designation is not intended as and shall not be construed as an admission that the counter-designation will be shown at trial.

    Please do not hesitate to contact me if you have any questions.

                Sincerely,

                _/s/ Lauren C. Capurro_____
                Lauren C. Capurro
                Lead Counsel for the Indirect Purchaser Class


cc.    Kaylee Yang
       Mario N. Alioto
       Joseph Goldberg
       Jerry Dever
       Dennis Stewart
       Daniel E. Birkhaeuser
       Alan R. Plutzik
       Geoffrey C. Rushing
       Matthew D. Heaphy
       R. Alexander Saveri

# Exhibit 31

**NORTON ROSE FULBRIGHT**

August 29, 2023

**VIA E-MAIL**

The Honorable Vaughn R. Walker
Law Office of Vaughn R. Walker
Four Embarcadero Center, Suite 2200
San Francisco, CA 94111
vrw@judgewalker.com

Norton Rose Fulbright US LLP
1301 McKinney, Suite 5100
Houston, Texas 77010-3095
United States of America

Direct line +1 713 651 5437
geraldine.young@nortonrosefulbright.com

Tel +1 713 651 5151
Fax +1 713 651 5246

Re:   In re Cathode Ray Tube (CRT) Antitrust Litigation, MDL No. 1917, Master File, No. 07-
      CV-0944-JST

Dear Judge Walker:

Defendants Irico Group Corp. and Irico Display Devices Co., Ltd. (collectively, "Irico") respectfully submit this letter regarding Irico's efforts to comply with your Interim Order on Plaintiffs' Motion for Discovery Sanctions (ECF Nos. 6233, 6264) ("Order"). The purpose of this letter is to inform Your Honor of the steps that Irico is taking to comply with the Order's September 1, 2023 requirements, and confirm that these steps will comply with one of the requirements of the Order.

By the first deadline of September 1, 2023 in the Order, Irico is working to complete the required *in camera* production to Your Honor (Order at 9) and each of the nine required searches by its counsel (*id.* at 7-8). Irico anticipates that it will be able to meet this first deadline for those requirements and that it will be able to produce non-privileged documents responsive to those searches and a privilege log, if any, by the second deadline of September 22, 2023.

Regarding the Order's separate requirement for "Irico to identify and produce to its counsel, Baker Botts, for forensic analysis and recovery, all of Su's electronic devices he used during his employment at Irico, including computer(s), laptops, hard drives, phones, for information and documents responsive to the Su Order and this order, with receipt of those electronic devices by Baker Botts no later than September 1, 2023" (Order at 9), Irico provides the following update on the steps it has taken to date and that it proposes to take to comply with the above requirement by September 1:

- Irico has identified Mr. Su's former laptop computer, including the laptop's hard drive, as a device that Mr. Su used during his employment, that Irico issued to Mr. Su, and that is in Irico's possession. As Irico will attest to in a declaration to be submitted by the September 22, 2023 deadline, Irico has not identified any other responsive devices in Irico's possession, custody, or control, and Irico has confirmed that Mr. Su's phone is a personal device that was not issued by Irico or within Irico's possession, custody, or control.

The Honorable Vaughn R. Walker
August 29, 2023
Page 2

NORTON ROSE FULBRIGHT

- Irico has produced for forensic imaging Mr. Su's identified laptop computer to Irico's outside counsel in China, who is working with Irico's U.S. counsel of record Norton Rose Fulbright, and to a forensics technology vendor in China, who is retained by and acting under the supervision of Irico's U.S. and Chinese outside counsel. The vendor has completed its forensic imaging and recovery of the laptop's contents and returned the device to Irico. Irico's Chinese outside counsel will conduct the required searches thereafter for any documents responsive under the Order, and the vendor will process and transfer any responsive documents to Irico's U.S. counsel.

Irico believes that this process complies with the forensic analysis and recovery goals of the Order and provides a methodology to search for documents responsive to the Order that allows Irico to comply with the current deadlines set in the Order.

If Your Honor requires Irico to produce Mr. Su's former laptop directly to Irico's U.S. counsel Baker Botts by September 1 in the United States, Irico will require an extension of time for this requirement.

Because Mr. Su's laptop computer could potentially contain other, non-responsive information that could be construed as a state secret in China (including information belonging to other Irico employees), Irico, its Chinese counsel, and the vendor will not be able to produce or transfer Mr. Su's laptop computer or its contents *outside of China* to Irico's U.S. counsel at Baker Botts by September 1, 2023. To comply with the Chinese laws governing state secrets, the vendor will need to first conduct a complete state secrets review of the laptop device and its contents before transferring the device outside of China. Based on the amount of data on the laptop, the vendor currently estimates that a complete state secrets review of the laptop may take up to 2 months' time.

By contrast, Irico's proposed plan would allow for faster production of responsive materials because, as outlined above, Irico proposes to conduct the required forensic analysis and recovery, as well as outside counsel searches for responsive documents, within China (and not outside of China in the United States) and because Irico's proposed plan does not require a complete state secrets review of the laptop's contents before the searches can be conducted.

Irico, therefore, respectfully asks Your Honor to confirm whether Irico's proposed plan, outlined above, meets the requirements of the Order. If Your Honor does not believe the proposal is sufficient, Irico will reach out to Plaintiffs, who have received advanced notice of this update, to discuss an appropriate extension of the deadlines and provide you with a specific plan.

Sincerely,

*Geraldine Young*

Geraldine W. Young

NORTON ROSE FULBRIGHT

The Honorable Vaughn R. Walker
August 29, 2023
Page 3

cc:     Mario N. Alioto
        Lauren C. Capurro
        Daniel E. Birkhaeuser
        R. Alexander Saveri
        Geoffrey C. Rushing
        Matthew D. Heaphy

        Other Counsel for the Irico Defendants

# Exhibit 32

John M. Taladay *(pro hac vice)*
Evan J. Werbel *(pro hac vice)*
Thomas E. Carter *(pro hac vice)*
Andrew L. Lucarelli *(pro hac vice)*
BAKER BOTTS L.L.P.
700 K Street, N.W.
Washington, D.C. 20001
202.639.7700
202.639.7890 (fax)
Email: john.taladay@bakerbotts.com
         evan.werbel@bakerbotts.com
         tom.carter@bakerbotts.com
         drew.lucarelli@bakerbotts.com

*Attorneys for Defendants Irico Group Corp. and
Irico Display Devices Co., Ltd.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Master File No. 07-CV-5944-JST |
| | MDL No. 1917 |
| This Document Relates to: | **DECLARATION OF JOHN M. TALADAY REGARDING COMPLIANCE WITH INTERIM ORDERS ON PLAINTIFFS' MOTION FOR DISCOVERY SANCTIONS** |
| *ALL INDIRECT PURCHASER ACTIONS ALL DIRECT PURCHASER ACTIONS* | |
| | Judge:      Honorable Jon S. Tigar |

I, John M. Taladay, declare as follows:

1.     I am a member of the bar of the District of Columbia and admitted to practice before this Court *pro hac vice*.  I am an attorney with Baker Botts L.L.P., which represents Defendants Irico Group Corporation ("Irico Group") and Irico Display Devices Co., Ltd. ("Irico Display," collectively, "Irico" or the "Irico Defendants") in this action.  I make this Declaration in support of Irico Defendants' Submission in Response to the Orders Adopting the Special Master's First and Second Interim Reports and Recommendations on Plaintiffs' Motion for Discovery Sanctions.  *See* ECF Nos. 6264 ("First Interim Order"); 6324 ("Second Interim Order," collectively the "Orders"). If called as a witness, I could and would testify to the matters set forth in this declaration of my own personal knowledge.

2.     As directed by the Special Master in the Second Interim Order, I submit this declaration to describe the steps taken under my direction and control to comply with the Special Master's Orders requiring discovery into certain matters regarding Su Xiaohua as well as to detail other tasks completed as required by the Orders.

**Su Laptop, Other Devices and Documents**

3.     At my direction, Thomas Carter, a Baker Botts attorney of record for Irico, traveled to China on September 10, 2023, along with Eric Chuang, a bilingual U.S.-based forensic collection specialist from BDO, a U.S. discovery vendor experienced in discovery of electronically stored information. *See Forensic Technology Services*, BDO USA, P.C. (last accessed Oct. 23, 2023), https://www.bdo.com/services/advisory/forensics-investigations/forensics-technology.

4.     Mr. Carter took physical custody of Mr. Su's former laptop on September 12, 2023, and personally oversaw BDO's imaging of the complete content of the laptop's solid-state drive. BDO utilized Forensic Falcon Neo, a digital forensic imaging hardware device manufactured by Logicube, a well-known product in the forensic industry, to duplicate the solid-state drive, which is the same imaging equipment and software as is typically used for BDO's U.S. forensic collections in litigation matters.

5.     Mr. Carter then oversaw BDO's forensic analysis of all recovered files from Mr. Su's former laptop.  BDO utilized Encase Forensic Software manufactured by Guidance Software,

a well-known product in the forensic industry, for the data recovery procedure, which is typically used for BDO's U.S. forensic collections in litigation matters.

6.    Until leaving his position at Irico, Mr. Su most recently served as the General Manager of Irico (Foshan) Flat Panel Display Co., Ltd. ("Irico Foshan") located in the city of Foshan, China, where Mr. Su's former office was located. Based on information provided by Irico, we understand that Mr. Su's laptop was issued to him by Irico Foshan around the time he was first employed by that company beginning on December 31, 2019. BDO's analysis showed that the solid-state drive of Mr. Su's laptop had been reformatted on June 15, 2022 and a new copy of Microsoft Windows was installed at that time.[1] Based on Baker Botts' investigation this was done in connection with the repurposing of Mr. Su's laptop for use by his successor as General Manager, Zhang Jiming, who took possession of Mr. Su's former laptop when he assumed Mr. Su's former position. Based on interviews with Irico employees, we understand that Zhang Dongling, the Operations and Management Director for Irico Foshan, was responsible for repurposing the laptop for use by Zhang Jiming.

7.    A report detailing the results of BDO's forensic analysis is attached as Exhibit 1. BDO recovered a total of 28,555 files with metadata dates within the time period in which Mr. Su potentially had use of the laptop, the vast majority of which were system files. Following de-duplication and removal of non-user created system files, approximately 9,000 files remained, prior to application of search terms. These files were transferred by BDO to a China-based Relativity server so that BDO could process and apply search terms to the data and to enable a state secret review before any materials were released to Baker Botts as described below.

8.    I also instructed BDO to collect data from corporate servers containing Mr. Su's emails and internal text messages.

9.    Also under my direction, Baker Botts and BDO investigated whether Mr. Su had any other company-issued or company-controlled devices other than his former laptop and determined that he did not.

---

[1] We note that, at that time, the laptop and its contents were not subject to any discovery order.

10.     Baker Botts and BDO also investigated whether there were any remaining hard copy files in or from Mr. Su's office and determined no such files existed.  Mr. Su's successor, Zhang Jiming, had moved into Mr. Su's office more than a year ago, and he informed Mr. Carter that the office was empty when he moved in.   Other Irico Foshan employees also confirmed that Mr. Su had removed any files from his office prior to his departure.

**Efforts to Contact Mr. Su**

11.     I have been informed, and medical records indicate, that Mr. Su suffered a stroke on January 7, 2023, and that he has been in and out of the hospital, or in recovery hospitals, since that time.  *See* Ex. 2 (IRI-SU-000219E).  In August, after the issuance of the First Interim Order but prior to the Second Interim Order, Zhang Wenkai, Irico's Assistant General Counsel, contacted Mr. Su by phone on a few occasions to seek his cooperation with responding the Orders.  Mr. Su spoke briefly to Mr. Zhang, but on the final occasion, citing his deteriorated health condition, Mr. Su insisted that that he not be contacted any further regarding this litigation.  Mr. Zhang recorded this call, and we have attached a transcript of that discussion.  *See* Ex. 3 (IRI-SU-000202E).

12.     Despite Mr. Su's explicit request, pursuant to the Second Interim Order, Baker Botts attempted to contact Mr. Su on October 3, 2023, by sending a message through Mr. Zhang to Mr. Su via WeChat, a commonly used communication app in China, requesting to speak with Mr. Su regarding the issues raised in the Orders.  Mr. Su did not respond to that request.  *See* Ex. 4 (IRI-SU-000229E).  Thus, we were not able to secure any cooperation by Mr. Su in connection with the current discovery initiative under the First and Second Interim Orders.

**Interviews of Other Irico Employees**

13.     Under my direction and based on their positions or other information suggesting a potential connection to Mr. Su, Mr. Carter, together with bilingual BDO staff, interviewed 23 current or former employees of Irico Group and its subsidiaries.  These individuals included: (1) human resources staff and department heads at Irico Group, Xianyang Irico Group Industrial Co., Ltd. ("Irico Industrial," the Irico subsidiary that directly managed Mr. Su's management appointments), and Irico Foshan; (2) top management at Irico Group, Irico Industrial, and Irico Foshan, including the four individuals whose names are set forth in the April 7, 2022, meeting

minute approving Mr. Su's resignation request; (3) former subordinates of Mr. Su at Irico Foshan; (4) personnel at Irico Group and Irico Industrial responsible for ministerial drafting and approving official personnel paperwork; (5) members of the Irico Group legal department; and (6) information technology personnel at Irico Group.

14.     These interviews covered topics relevant to the Orders, including interviewees' knowledge of Mr. Su's deposition, Mr. Su's departure from Irico, Mr. Su's current employment, any ongoing relationship between Irico and Mr. Su, communications with Mr. Su, information regarding other individuals who may have relevant knowledge, and potential locations of responsive documents.  Mr. Carter reported to me regarding relevant information learned in these interviews.

**Collection of Materials from Interviewees and Relevant Departments**

15.     In each interview described above, on my instruction, Mr. Carter also inquired and attempted to determine whether the employee had any documents or personal communications responsive to the Orders that were not preserved on the corporate servers.   As detailed below, Mr. Carter and BDO determined that emails and internal text messages would be preserved on corporate servers.   If any interviewee indicated that they had responsive company documents not preserved on these corporate servers, all of those materials were collected by BDO. In some cases, the interviewees indicated that they had WeChat communications that might be responsive to the Orders on individual employee-owned phones (over which the company has no control) rather than on company devices or servers.  Though none of interviewees would agree to provide their personal phones for forensic imaging and not all employees still had copies of their potentially relevant WeChat messages, those interviewees who stated that they still had relevant WeChat messages provided screen shots of those messages to BDO.  All materials provided by these witnesses were given to BDO, and BDO loaded the documents to the China-based Relativity server.

16.     Other specific materials required by the Orders were also collected directly (on a "go get" basis) from relevant departments such as human resources (e.g., Mr. Su's employment

contract) and accounting (i.e., payment records).  BDO loaded these materials onto the China-based Relativity server.

**Collection of Emails and Internal Text Messages from Corporate Servers**

17.   After consultation with Mr. Carter regarding his interviews, I identified 15 custodians (14 interviewees and Mr. Su) who appeared reasonably likely to have responsive electronic communications.[2]  I then instructed BDO to collect all emails and internal text messages in the relevant time frame from the corporate servers for those custodians for further review. *See* Ex. 5 (Oct. 9, 2023, Letter Request to Special Master), Attachment A.

18.   BDO worked with relevant information technology personnel responsible for maintaining the company servers to execute on this instruction.  Email data and internal text message data were stored on different servers, so this effort required separate collections by BDO.

19.   Regarding the emails, only 14 of the 15 custodians had mailboxes on the corporate server.  Xu Jinmei, the Administration and HR Director at Irico Foshan, did not have a company email address.  In addition, the email box of Wang Jijun, while it existed on the server, was empty.  The email box of Mr. Su was maintained on the server and data was collected.

20.   Date filters were applied prior to collection based on the role of each custodian: January 1, 2021, through September 1, 2023 (or the last day of their employment with any Irico company), for any custodian with potential knowledge or involvement regarding Mr. Su's requested deposition; and January 1, 2022, through September 1, 2023 (or the last day of their employment with any Irico company), for all other custodians, i.e., those custodians who were identified only because of potential knowledge or involvement relating to Mr. Su's departure.  The data from the 13 available email boxes were transferred from the server to an external hard drive by BDO.

21.   Regarding the internal text messages, data was identified for all 15 custodians, including Mr. Su.  The same date filters described above regarding the email collection also were

---

[2] The other nine individuals interviewed had incidental information or de minimis roles regarding Mr. Su's departure or application to travel for deposition.

applied to the internal text message data.  The internal text message data was transferred from the server to an external hard drive by BDO.

22.    BDO loaded the data from the external hard drives onto the China-based Relativity server.   The available data for the 15 custodians gathered by BDO totaled 16,409 email files (including attachments) and 56,325 internal text message files (including attachments), a total of 72,734 files.

**Application of Search Terms**

23.    BDO, at my direction, applied search terms to the server data to attempt to narrow the materials to those most likely to be responsive to the Orders.  BDO utilized standard search methodologies regularly utilized in the forensic searching in the US, pursuant to instructions from Baker Botts.  To determine the search terms to apply, Baker Botts utilized the search terms that it identified, combined with the generic and unqualified search terms provided by Plaintiffs on September 7, 2023.  As noted in our letter request submitted to the Special Master on October 9, 2023, Plaintiffs' search terms omitted any requirement that the search terms be related in any way to Mr. Su: i.e., they failed to include any "Su qualifier" such as a variation of his name, employee ID number, citizen ID number or email address. For example, Plaintiffs' unqualified search terms hit on all documents sent or received by all custodians over a 20 to 32-month period that mention the word "leadership" irrespective of whether the document had any mention of, or relevance to, Mr. Su.  As a result, the initial application of all of Plaintiffs' search terms resulted in hits on over 40,000 documents – 55% of every message or document sent or received by every custodian during this 20 to 32-month period – a clear sign that the unqualified search terms were grossly overbroad in the context of a specific search that is wholly and solely directed at the circumstances of Mr. Su's departure and deposition.  Moreover, reviewing all documents hitting on the unqualified search terms could not conceivably be accomplished in the required time frame for production, even with the extension sought by Irico in its letter request of October 9, 2023.

24.    I then instructed BDO to again apply Baker Botts' and Plaintiffs' combined search terms, but this time applying the "Su qualifiers" to target those documents with some potential relevance to Mr. Su.  *See* Ex. 5 (Oct. 9, 2023, Letter Request to Special Master) at 4-6,

Attachments C-F.  However, for the data collected from Mr. Su's laptop, BDO applied all of Plaintiffs' search terms and Baker Botts' search terms without the application of any "Su qualifiers."  In total, this effort resulted in approximately 9,400 files, which BDO then processed for further review.[3]

25.     Irico and the Plaintiffs have disagreed on the use of "Su qualifiers" to narrow the collection of relevant materials, and in its letter request of October 9, 2023, Baker Botts asked the Special Master to approve the use of the "Su qualifiers" as a modification to Plaintiffs' search terms.   Consistent with and in compliance with the Second Interim Order, BDO, at my direction, has collected and preserved the additional disputed documents that hit on Plaintiffs' search terms without "Su qualifiers," and they remain on the China-based Relativity server awaiting the Special Master's decision.

**State Secret Review**

26.     I understand from Irico as well as independent Chinese legal counsel by whom I was advised, that Irico and its employees are bound by Chinese legal requirements preventing the disclosure of Chinese state secrets.[4]

27.     To ensure that all Chinese regulations regarding state secrets were followed here, BDO retained the AnJie Broad Law Firm ("AnJie"), a large and reputable Chinese law firm with whom Baker Botts has worked in the past, to conduct a review of the materials before releasing materials to the United States to be reviewed for responsiveness to the Orders.  *See About AnJie Broad*, AnJie Broad (last accessed Oct. 23, 2023), https://www.anjielaw.com/more/aboutus.html.  Counsel from AnJie informed me that Article 9 of the Chinese Law on Guarding State Secrets precludes the transmission of materials that contain state secrets, including but not limited to information that that could cause damage to the national security and interests of politics, economy, national defense or foreign affairs, to other countries or regions without the express permission of the relevant competent authorities.  *See* Law on Guarding State Secrets (promulgated by the

---

[3] Of these approximately 9,400 files, only 22 originated from Mr. Su's former laptop, a likely result of the reformatting.

[4] I have been informed by Irico that documents previously collected and considered in response to discovery on the merits did not contain state secrets and that no such materials were withheld on state secret grounds.

1   Standing Comm. Nat'l People's Cong., Sept. 5, 1988, rev'd Apr. 29, 2010, effective Oct. 1, 2010),

2   art. 9, 2010 P.R.C. Laws 71.75 (China).

3          28.    To respect these requirements while facilitating Irico's compliance with the Orders,

4   counsel from AnJie reviewed the following sets of documents (i.e., all that had been identified by

5   Baker Botts as potentially relevant):

6          •  all of the individual "go get" documents collected by BDO directly from

7             interviewees or Irico departments;

8          •  all of the documents from Mr. Su's laptop that hit on Plaintiffs' search terms and

9             Baker Botts' search terms without applying any "Su qualifiers"; and

10         •  all of the emails and internal text messages collected for the 15 custodians that hit

11            on all of the search terms with "Su qualifiers."

12  This state secret review occurred before the documents were released to Baker Botts to be reviewed

13  for responsiveness to the Orders.  Thus, to be clear, AnJie did not withhold any documents on the

14  basis that the documents were not responsive to the Orders.  Their review was limited to evaluating

15  the documents for state secret content, except as described in the following paragraph.   AnJie did

16  not identify any documents from Mr. Su's former laptop or from the direct "go get" materials from

17  interviewees or Irico departments as containing state secrets.  AnJie determined that 177 email files

18  and 818 internal text message files, 995 files in total, could not be provided to Baker Botts for

19  further review because of state secret content.  Given AnJie's determination, these documents

20  could not be released to the US or reviewed by US-based lawyers.

21         29.    However, to further evaluate whether, and how many of, these documents were

22  responsive to the Orders, I instructed Mr. Carter to train a lawyer from the AnJie firm who is a

23  U.S.-barred and licensed attorney regarding the scope of the requirements of the Orders, and to

24  provide him a copy of the Orders for his review and understanding.  Mr. Carter reviewed the

25  Orders with Cui Wei from AnJie, a member of the New York state bar, and Mr. Cui then reviewed

26  the set of documents determined to contain state secrets for responsiveness.  Based on Mr. Cui's

27  review, it was determined that 21 of the 995 files withheld were responsive to the Orders.  A log of

28

the 21 responsive documents withheld under AnJie's determination of state secret content has been provided to Plaintiffs as part of the production.

30.     I also understand from Irico as well as independent Chinese legal counsel by whom I was advised, that Irico is prohibited from disclosing personally identifiable information relating to individual employees.   Such information is protected from disclosure by the China Personal Information Protection Law (promulgated by the Standing Comm. Nat'l People's Cong., Aug. 20,2021, effective Nov. 1, 2021), art. 11, 2021 P.R.C. Laws 1117.1125 (China).  In light of this requirement, AnJie and BDO also reviewed the following sets of documents to ensure that they did not contain any personally identifiable information:

- all of the individual "go get" documents collected by BDO directly from interviewees or Irico departments;
- all of the documents from Mr. Su's laptop that hit on Plaintiffs' search terms and the Baker Botts search terms without applying any "Su qualifiers"; and
- the emails and internal text messages collected for the 15 custodians that hit on all of the search terms with "Su qualifiers."

No documents responsive to the Orders were withheld on the basis of such personal information. If such personal information was identified, per my instructions, AnJie or BDO applied solid black redactions only as to that personal information, which is clearly identified in the documents produced to the plaintiffs.

31.     At my direction, BDO transferred all of the documents that it reviewed that did not contain state secrets, including those documents that contained redactions for personal information, from the China-based Relativity server to a US-managed Relativity service.  Also at my direction, Mr. Carter trained a team of U.S.-barred attorneys fluent in Mandarin (since the subject documents were in Chinese) on the requirements of the Orders, and supervised their review of these documents for responsiveness.   An initial production of responsive, non-privileged materials was made to Plaintiffs on October 13, 2023.  This initial production included over 80% of responsive email files (excluding those that required privilege redactions) as well as over 80% of responsive files obtained through "go get" collections from interviewees or Irico departments.  All remaining

responsive, non-privileged materials from the files transferred to the US-based server are being produced to the Plaintiffs today, October 23, 2023.  Documents withheld for privilege have been identified on a privilege log provided to Plaintiffs.

**Submission of Letter to the Special Master under First Interim Order**

32.     Along with this submission, Baker Botts is producing a letter to the Special Master, as required by the First Interim Order, providing "the names of Irico personnel involved in communicating with Mr. Su about: (a) his deposition, resignation and end of employment from January 2021 to the present and (b) information about his participation and knowledge of competitor contacts and communications."

I declare under penalty of perjury that the foregoing is true and correct.  Executed this 23rd day of October, 2023, in Washington, D.C.

_/s/ John M. Taladay_

John M. Taladay (*pro hac vice*)
BAKER BOTTS L.L.P.
700 K Street, N.W.
Washington, D.C. 20001
202.639.7700
202.639.7890 (fax)
Email:John.Taladay@bakerbotts.com

*Attorney for Defendants Irico Group Corp.*
*and Irico Display Devices Co., Ltd.*

# Exhibit 33

**Alex Cummings**

| | |
|---|---|
| **From:** | Matthew Heaphy <mheaphy@saveri.com> |
| **Sent:** | Thursday, May 16, 2024 1:25 PM |
| **To:** | Geraldine W. Young; LaurenRussell |
| **Cc:** | Jeffrey Margulies; JG; MAlioto; Gerard Dever; David Hwu; dstewart; Lori Ann Benjey; Kaylee Yang; john.taladay; evan.werbel; rick; geoff; Alex Cummings; Dewey J. Gonsoulin III |
| **Subject:** | RE: CRT |

Geraldine:

Thank you for your message. It is Plaintiffs' understanding that the objection and review procedures described in paragraphs 6(b) and 6(c) of the Order Appointing Special Master for Discovery "**shall** govern **any** action on the Special Master's orders, reports and/or recommendations." ECF No. 2272 ¶ 6(a) (emphases added). Paragraph 6(b) of the Order refers specifically to Civil Local Rule 72-2. We are available to discuss if necessary.

Best,
Matt

Matthew Heaphy
Saveri & Saveri, Inc.
706 Sansome Street
San Francisco, CA 94111
mheaphy@saveri.com
Telephone: (415) 217-6810
Facsimile: (415) 217-6813

**From:** Geraldine W. Young <geraldine.young@nortonrosefulbright.com>
**Sent:** Wednesday, May 15, 2024 3:17 PM
**To:** Matthew Heaphy <mheaphy@saveri.com>; LaurenRussell <LaurenRussell@TATP.com>
**Cc:** Jeffrey Margulies <jeff.margulies@nortonrosefulbright.com>; JG <JG@fbdlaw.com>; MAlioto <MAlioto@TATP.com>; Gerard Dever <gdever@finekaplan.com>; David Hwu <dhwu@saveri.com>; dstewart <dstewart@gustafsongluek.com>; Lori Ann Benjey <lab@fbdlaw.com>; Kaylee Yang <kaylee.yang@nortonrosefulbright.com>; john.taladay <john.taladay@bakerbotts.com>; evan.werbel <evan.werbel@bakerbotts.com>; Rick Saveri <rick@saveri.com>; Geoff Rushing <geoff@saveri.com>; Alex Cummings <alex.cummings@nortonrosefulbright.com>; Dewey J. Gonsoulin III <dewey.gonsoulin@nortonrosefulbright.com>
**Subject:** RE: CRT

Counsel:

We understand that Irico has 14 days from yesterday to object to the Special Master's Sanctions R&R and 25-pages for its objection brief pursuant to Civil Local Rules 72-3 and 7-2. Given the severity, complexity, and length of the R&R and the relevant procedural history, Irico will be seeking leave for an extension to file its objections 30 days from yesterday (June 13) and for an additional 10 pages (35 pages total) for its objection brief. Please let us know whether the IPP and DPP Plaintiffs are unopposed or opposed to the requested relief.

We would like to get something on file with the Court as soon as possible, so appreciate a prompt response.

Thank you, Geraldine

**From:** Matthew Heaphy <mheaphy@saveri.com>
**Sent:** Thursday, April 11, 2024 5:01 PM
**To:** Geraldine W. Young <geraldine.young@nortonrosefulbright.com>; Lauren Russell <LaurenRussell@TATP.com>
**Cc:** Jeffrey Margulies <jeff.margulies@nortonrosefulbright.com>; Joe Goldberg <JG@fbdlaw.com>; Mario Alioto <MAlioto@TATP.com>; Gerard A. Dever <gdever@finekaplan.com>; David Hwu <dhwu@saveri.com>; Dennis Stewart <dstewart@gustafsongluek.com>; Lori Ann Benjey <lab@fbdlaw.com>; Kaylee Yang <kaylee.yang@nortonrosefulbright.com>; John <john.taladay@bakerbotts.com>; Evan <evan.werbel@bakerbotts.com>; Rick Saveri <rick@saveri.com>; Geoff Rushing <geoff@saveri.com>; Alex Cummings <alex.cummings@nortonrosefulbright.com>; Dewey J. Gonsoulin III <dewey.gonsoulin@nortonrosefulbright.com>
**Subject:** RE: CRT

Geraldine:

Attached are the final versions of DPPs' and IPPs' sections for the joint statement. There appears to be a missing cite for the footnote in the IPPs' section. We tried to reach IPPs' counsel prior to the 3pm exchange regarding this omission but were unsuccessful.

Thank you for handling the filing of the joint statement. Please circulate the final version of the document prior to filing for our authorization.

Best,
Matt

**From:** Geraldine W. Young <geraldine.young@nortonrosefulbright.com>
**Sent:** Thursday, April 11, 2024 12:08 PM
**To:** Matthew Heaphy <mheaphy@saveri.com>; Lauren Russell <LaurenRussell@TATP.com>
**Cc:** Jeffrey Margulies <jeff.margulies@nortonrosefulbright.com>; Joe Goldberg <JG@fbdlaw.com>; Mario Alioto <MAlioto@TATP.com>; Gerard A. Dever <gdever@finekaplan.com>; David Hwu <dhwu@saveri.com>; Dennis Stewart <dstewart@gustafsongluek.com>; Lori Ann Benjey <lab@fbdlaw.com>; Kaylee Yang <kaylee.yang@nortonrosefulbright.com>; John <john.taladay@bakerbotts.com>; Evan <evan.werbel@bakerbotts.com>; Rick Saveri <rick@saveri.com>; Geoff Rushing <geoff@saveri.com>; Alex Cummings <alex.cummings@nortonrosefulbright.com>; Dewey J. Gonsoulin III <dewey.gonsoulin@nortonrosefulbright.com>
**Subject:** RE: CRT

Matt – We are fine with that language and agree to the proposed MSJ briefing schedule.  We can also file the statement after the next exchange.  Thanks, Geraldine

**From:** Matthew Heaphy <mheaphy@saveri.com>
**Sent:** Thursday, April 11, 2024 2:51 PM
**To:** Lauren Russell <LaurenRussell@TATP.com>; Geraldine W. Young <geraldine.young@nortonrosefulbright.com>
**Cc:** Jeffrey Margulies <jeff.margulies@nortonrosefulbright.com>; Joe Goldberg <JG@fbdlaw.com>; Mario Alioto <MAlioto@TATP.com>; Gerard A. Dever <gdever@finekaplan.com>; David Hwu <dhwu@saveri.com>; Dennis Stewart <dstewart@gustafsongluek.com>; Lori Ann Benjey <lab@fbdlaw.com>; Kaylee Yang <kaylee.yang@nortonrosefulbright.com>; John <john.taladay@bakerbotts.com>; Evan <evan.werbel@bakerbotts.com>; Rick Saveri <rick@saveri.com>; Geoff Rushing <geoff@saveri.com>; Alex Cummings <alex.cummings@nortonrosefulbright.com>; Dewey J. Gonsoulin III <dewey.gonsoulin@nortonrosefulbright.com>
**Subject:** RE: CRT

Geraldine:

Following up on our meet and confer call yesterday, please let us know before 3pm today whether Irico is agreeable to the dispositive motion briefing deadlines set forth DPPs' draft statement. Specifically, please let us know if you are comfortable with the highlighted bracketed text in DPPs' draft statement:

> DPPs and Irico have met and conferred on deadlines for filing and briefing dispositive motions in the DPP actions[, and have agreed on and propose the following]:

We are available to discuss if needed.

Thank you.

Best,
Matt

---

**From:** Lauren Russell <LaurenRussell@TATP.com>
**Sent:** Thursday, April 11, 2024 9:15 AM
**To:** Geraldine W. Young <geraldine.young@nortonrosefulbright.com>
**Cc:** Jeffrey Margulies <jeff.margulies@nortonrosefulbright.com>; Joe Goldberg <JG@fbdlaw.com>; Mario Alioto <MAlioto@TATP.com>; Gerard A. Dever <gdever@finekaplan.com>; David Hwu <dhwu@saveri.com>; Dennis Stewart <dstewart@gustafsongluek.com>; Lori Ann Benjey <lab@fbdlaw.com>; Kaylee Yang <kaylee.yang@nortonrosefulbright.com>; John <john.taladay@bakerbotts.com>; Evan <evan.werbel@bakerbotts.com>; Rick Saveri <rick@saveri.com>; Geoff Rushing <geoff@saveri.com>; Matthew Heaphy <mheaphy@saveri.com>; Alex Cummings <alex.cummings@nortonrosefulbright.com>; Dewey J. Gonsoulin III <dewey.gonsoulin@nortonrosefulbright.com>
**Subject:** RE: CRT

Counsel:

Here is Plaintiffs' draft statement. Please send us Irico's statement. We will exchange final drafts at 3pm.

We would appreciate it if Irico could handle the filing. Thank you.

Lauren

Lauren C. Capurro (Russell)
Attorney at Law
Trump, Alioto, Trump & Prescott, LLP
Telephone: (415) 860-5051
E-mail: laurenrussell@tatp.com

This message is sent by a law firm and may contain information that is privileged or confidential. If you received this transmission in error, please notify the sender by email and delete the message and any attachments.

---

**From:** Geraldine W. Young <geraldine.young@nortonrosefulbright.com>
**Sent:** Wednesday, April 10, 2024 11:07 AM
**To:** Lauren Russell <LaurenRussell@TATP.com>
**Cc:** Jeffrey Margulies <jeff.margulies@nortonrosefulbright.com>; Joe Goldberg <JG@fbdlaw.com>; Mario Alioto <MAlioto@TATP.com>; Gerard A. Dever <gdever@finekaplan.com>; David Hwu (dhwu@saveri.com) <dhwu@saveri.com>; Dennis Stewart <dstewart@gustafsongluek.com>; Lori Ann Benjey <lab@fbdlaw.com>; Kaylee Yang <kaylee.yang@nortonrosefulbright.com>; John <john.taladay@bakerbotts.com>; Evan <evan.werbel@bakerbotts.com>; rick@saveri.com; geoff@saveri.com; Matthew Heaphy (mheaphy@saveri.com)

<mheaphy@saveri.com>; Alex Cummings <alex.cummings@nortonrosefulbright.com>; Dewey J. Gonsoulin III
<dewey.gonsoulin@nortonrosefulbright.com>
**Subject:** RE: CRT

Counsel,

Thanks for the call this morning.  As discussed, memorializing that we'll have our first simultaneous exchange at 9 am PT
tomorrow, followed by final exchange at 3 pm PT tomorrow.  Please confirm that one of the plaintiffs will file the joint
statement after that, or let us know if you need us to file.

Geraldine

---

**From:** Lauren Russell <LaurenRussell@TATP.com>
**Sent:** Wednesday, April 10, 2024 10:28 AM
**To:** Geraldine W. Young <geraldine.young@nortonrosefulbright.com>
**Cc:** Jeffrey Margulies <jeff.margulies@nortonrosefulbright.com>; Joe Goldberg <JG@fbdlaw.com>; Mario Alioto
<MAlioto@TATP.com>; Gerard A. Dever <gdever@finekaplan.com>; David Hwu (dhwu@saveri.com)
<dhwu@saveri.com>; Dennis Stewart <dstewart@gustafsongluek.com>; Lori Ann Benjey <lab@fbdlaw.com>; Kaylee
Yang <kaylee.yang@nortonrosefulbright.com>; John <john.taladay@bakerbotts.com>; Evan
<evan.werbel@bakerbotts.com>; rick@saveri.com; geoff@saveri.com; Matthew Heaphy (mheaphy@saveri.com)
<mheaphy@saveri.com>; Alex Cummings <alex.cummings@nortonrosefulbright.com>
**Subject:** RE: CRT

Got it, thanks.

Lauren C. Capurro (Russell)
Attorney at Law
Trump, Alioto, Trump & Prescott, LLP
Telephone: (415) 860-5051
E-mail: laurenrussell@tatp.com

This message is sent by a law firm and may contain information that is privileged or confidential.  If you received
this transmission in error, please notify the sender by email and delete the message and any attachments.

---

**From:** Geraldine W. Young <geraldine.young@nortonrosefulbright.com>
**Sent:** Wednesday, April 10, 2024 6:51 AM
**To:** Lauren Russell <LaurenRussell@TATP.com>
**Cc:** Jeffrey Margulies <jeff.margulies@nortonrosefulbright.com>; Joe Goldberg <JG@fbdlaw.com>; Mario Alioto
<MAlioto@TATP.com>; Gerard A. Dever <gdever@finekaplan.com>; David Hwu (dhwu@saveri.com)
<dhwu@saveri.com>; Dennis Stewart <dstewart@gustafsongluek.com>; Lori Ann Benjey <lab@fbdlaw.com>; Kaylee
Yang <kaylee.yang@nortonrosefulbright.com>; John <john.taladay@bakerbotts.com>; Evan
<evan.werbel@bakerbotts.com>; rick@saveri.com; geoff@saveri.com; Matthew Heaphy (mheaphy@saveri.com)
<mheaphy@saveri.com>; Alex Cummings <alex.cummings@nortonrosefulbright.com>
**Subject:** RE: CRT

Apologies – I sent one for 7:30 am PT and copied others on this email but did not get your email, just added you to
invite.  Let me know if you did not receive.

---

**From:** Lauren Russell <LaurenRussell@TATP.com>
**Sent:** Wednesday, April 10, 2024 9:49 AM
**To:** Geraldine W. Young <geraldine.young@nortonrosefulbright.com>

**Cc:** Jeffrey Margulies <jeff.margulies@nortonrosefulbright.com>; Joe Goldberg <JG@fbdlaw.com>; Mario Alioto <MAlioto@TATP.com>; Gerard A. Dever <gdever@finekaplan.com>; David Hwu (dhwu@saveri.com) <dhwu@saveri.com>; Dennis Stewart <dstewart@gustafsongluek.com>; Lori Ann Benjey <lab@fbdlaw.com>; Kaylee Yang <kaylee.yang@nortonrosefulbright.com>; John <john.taladay@bakerbotts.com>; Evan <evan.werbel@bakerbotts.com>; rick@saveri.com; geoff@saveri.com; Matthew Heaphy (mheaphy@saveri.com) <mheaphy@saveri.com>; Alex Cummings <alex.cummings@nortonrosefulbright.com>
**Subject:** Re: CRT

Thanks, Geraldine. I haven't seen a call-in yet. Are we getting on at 7?


Sent from my iPhone


> On Apr 10, 2024, at 5:16 AM, Geraldine W. Young <geraldine.young@nortonrosefulbright.com> wrote:

> Thank you Lauren.  We are confirming on our end, but think 7 am PT should work.  If so, will circulate an invite.

> **From:** Lauren Russell <LaurenRussell@TATP.com>
> **Sent:** Wednesday, April 10, 2024 1:23 AM
> **To:** Geraldine W. Young <geraldine.young@nortonrosefulbright.com>
> **Cc:** Jeffrey Margulies <jeff.margulies@nortonrosefulbright.com>; Joe Goldberg <JG@fbdlaw.com>; Mario Alioto <MAlioto@TATP.com>; Gerard A. Dever <gdever@finekaplan.com>; David Hwu (dhwu@saveri.com) <dhwu@saveri.com>; Dennis Stewart <dstewart@gustafsongluek.com>; Lori Ann Benjey <lab@fbdlaw.com>; Kaylee Yang <kaylee.yang@nortonrosefulbright.com>; John <john.taladay@bakerbotts.com>; Evan <evan.werbel@bakerbotts.com>; rick@saveri.com; geoff@saveri.com; Matthew Heaphy (mheaphy@saveri.com) <mheaphy@saveri.com>; Alex Cummings <alex.cummings@nortonrosefulbright.com>
> **Subject:** Re: CRT

> Plaintiffs can talk between 7am and 9am Pacific tomorrow.

> Regards,

> Lauren

> Sent from my iPhone


>> On Apr 9, 2024, at 7:46 PM, Geraldine W. Young
>> <geraldine.young@nortonrosefulbright.com> wrote:

>> Counsel,

>> We are following up on the below email to see if you all are available to confer tomorrow.  We read the Court's order as requiring us to confer ahead of the Thursday joint statement deadline.

>> Thanks, Geraldine

**From:** Geraldine W. Young
**Sent:** Monday, April 8, 2024 1:36:20 PM
**To:** Lauren Russell <LaurenRussell@TATP.com>; Jeffrey Margulies
<jeff.margulies@nortonrosefulbright.com>; Joe Goldberg <JG@FBDLAW.com>
**Cc:** Mario Alioto <MAlioto@TATP.com>; 'Gerard A. Dever' <gdever@finekaplan.com>;
'David Hwu (dhwu@saveri.com)' <dhwu@saveri.com>; 'Dennis Stewart'
<dstewart@gustafsongluek.com>; Lori Ann Benjey <lab@fbdlaw.com>; Kaylee Yang
<kaylee.yang@nortonrosefulbright.com>; 'John' <john.taladay@bakerbotts.com>;
'Evan' <evan.werbel@bakerbotts.com>; 'rick@saveri.com' <rick@saveri.com>;
'geoff@saveri.com' <geoff@saveri.com>; 'Matthew Heaphy (mheaphy@saveri.com)'
<mheaphy@saveri.com>; Alex Cummings <alex.cummings@nortonrosefulbright.com>
**Subject:** RE: CRT

Counsel,

We are reaching out to set up a meet and confer in compliance with the Court's order
from last Thursday, to discuss the parties' positions on "whether the IPP or DPP action
proceeds first," as ordered by the Court, and the joint statement that is due this
Thursday.

We are available for that meet and confer tomorrow, between 7-9 am PT and 11-11:30
am PT.  Let us know if any of those times work or we can find other times as well.

Thanks, Geraldine

**From:** Lauren Russell <LaurenRussell@TATP.com>
**Sent:** Monday, February 26, 2024 1:08 PM
**To:** Geraldine W. Young <geraldine.young@nortonrosefulbright.com>; Jeffrey Margulies
<jeff.margulies@nortonrosefulbright.com>; Joe Goldberg <JG@FBDLAW.com>
**Cc:** Mario Alioto <MAlioto@TATP.com>; 'Gerard A. Dever' <gdever@finekaplan.com>;
'David Hwu (dhwu@saveri.com)' <dhwu@saveri.com>; 'Dennis Stewart'
<dstewart@gustafsongluek.com>; Lori Ann Benjey <lab@fbdlaw.com>; Kaylee Yang
<kaylee.yang@nortonrosefulbright.com>; 'John' <john.taladay@bakerbotts.com>;
'Evan' <evan.werbel@bakerbotts.com>; 'rick@saveri.com' <rick@saveri.com>;
'geoff@saveri.com' <geoff@saveri.com>; 'Matthew Heaphy (mheaphy@saveri.com)'
<mheaphy@saveri.com>; Alex Cummings <alex.cummings@nortonrosefulbright.com>
**Subject:** RE: CRT

Hi Geraldine,

That would be great if you could submit the list of attendees to the Court.

The list for IPPs is as follows:

Mario N. Alioto, malioto@tatp.com
Joseph Goldberg, jg@fbdlaw.com
Lauren C. Capurro, laurenrussell@tatp.com

Thank you.

Lauren

Lauren C. Capurro (Russell)
Attorney at Law
Trump, Alioto, Trump & Prescott, LLP
Telephone: (415) 860-5051
E-mail: laurenrussell@tatp.com

This message is sent by a law firm and may contain information that is privileged or confidential.  If you received this transmission in error, please notify the sender by email and delete the message and any attachments.

---

**From:** Geraldine W. Young <geraldine.young@nortonrosefulbright.com>
**Sent:** Monday, February 26, 2024 1:40 PM
**To:** Lauren Russell <LaurenRussell@TATP.com>; Jeffrey Margulies <jeff.margulies@nortonrosefulbright.com>; Joe Goldberg <JG@FBDLAW.com>
**Cc:** Mario Alioto <MAlioto@TATP.com>; 'Gerard A. Dever' <gdever@finekaplan.com>; 'David Hwu (dhwu@saveri.com)' <dhwu@saveri.com>; 'Dennis Stewart' <dstewart@gustafsongluek.com>; Lori Ann Benjey <lab@fbdlaw.com>; Kaylee Yang <kaylee.yang@nortonrosefulbright.com>; 'John' <john.taladay@bakerbotts.com>; 'Evan' <evan.werbel@bakerbotts.com>; 'rick@saveri.com' <rick@saveri.com>; 'geoff@saveri.com' <geoff@saveri.com>; 'Matthew Heaphy (mheaphy@saveri.com)' <mheaphy@saveri.com>; Alex Cummings <alex.cummings@nortonrosefulbright.com>
**Subject:** RE: CRT

Counsel,

The Court's notice filed Friday requires us to send in one email a list of counsel who will appear at the CMC tomorrow, by 2 pm PT today.  Below are the counsel for the Irico Defendants who will appear.  Let us know if you want us to send the email and, if so, please provide the names of counsel for your side.

    For the Irico Defendants:

    Jeffrey Margulies,  Norton Rose Fulbright US LLP
    Geraldine Young, Norton Rose Fulbright US LLP
    John Taladay, Baker Botts L.L.P.
    Evan Werbel, Baker Botts L.L.P.

Thanks, Geraldine

---

**From:** Lauren Russell <LaurenRussell@TATP.com>
**Sent:** Tuesday, February 20, 2024 4:04 PM
**To:** Geraldine W. Young <geraldine.young@nortonrosefulbright.com>; Jeffrey Margulies <jeff.margulies@nortonrosefulbright.com>; Joe Goldberg <JG@FBDLAW.com>
**Cc:** Mario Alioto <MAlioto@TATP.com>; 'Gerard A. Dever' <gdever@finekaplan.com>; 'David Hwu (dhwu@saveri.com)' <dhwu@saveri.com>; 'Dennis Stewart' <dstewart@gustafsongluek.com>; Lori Ann Benjey <lab@fbdlaw.com>; Kaylee Yang <kaylee.yang@nortonrosefulbright.com>; 'John' <john.taladay@bakerbotts.com>; 'Evan' <evan.werbel@bakerbotts.com>; 'rick@saveri.com' <rick@saveri.com>; 'geoff@saveri.com' <geoff@saveri.com>; 'Matthew Heaphy (mheaphy@saveri.com)' <mheaphy@saveri.com>; Alex Cummings <alex.cummings@nortonrosefulbright.com>
**Subject:** RE: CRT

Thank you.

Lauren C. Capurro (Russell)
Attorney at Law
Trump, Alioto, Trump & Prescott, LLP
Telephone: (415) 860-5051
E-mail: laurenrussell@tatp.com

This message is sent by a law firm and may contain information that is privileged or confidential. If you received this transmission in error, please notify the sender by email and delete the message and any attachments.

---

**From:** Geraldine W. Young <geraldine.young@nortonrosefulbright.com>
**Sent:** Tuesday, February 20, 2024 12:51 PM
**To:** Lauren Russell <LaurenRussell@TATP.com>; Jeffrey Margulies <jeff.margulies@nortonrosefulbright.com>; Joe Goldberg <JG@FBDLAW.com>
**Cc:** Mario Alioto <MAlioto@TATP.com>; 'Gerard A. Dever' <gdever@finekaplan.com>; 'David Hwu (dhwu@saveri.com)' <dhwu@saveri.com>; 'Dennis Stewart' <dstewart@gustafsongluek.com>; Lori Ann Benjey <lab@fbdlaw.com>; Kaylee Yang <kaylee.yang@nortonrosefulbright.com>; 'John' <john.taladay@bakerbotts.com>; 'Evan' <evan.werbel@bakerbotts.com>; 'rick@saveri.com' <rick@saveri.com>; 'geoff@saveri.com' <geoff@saveri.com>; 'Matthew Heaphy (mheaphy@saveri.com)' <mheaphy@saveri.com>; Alex Cummings <alex.cummings@nortonrosefulbright.com>
**Subject:** RE: CRT

Thanks Lauren – see attached for our blocks inserted, and you have our authorization to file this document.

---

**From:** Lauren Russell <LaurenRussell@TATP.com>
**Sent:** Tuesday, February 20, 2024 1:53 PM
**To:** Jeffrey Margulies <jeff.margulies@nortonrosefulbright.com>; Geraldine W. Young <geraldine.young@nortonrosefulbright.com>; Joe Goldberg <JG@FBDLAW.com>
**Cc:** Mario Alioto <MAlioto@TATP.com>; 'Gerard A. Dever' <gdever@finekaplan.com>; 'David Hwu (dhwu@saveri.com)' <dhwu@saveri.com>; 'Dennis Stewart' <dstewart@gustafsongluek.com>; Lori Ann Benjey <lab@fbdlaw.com>; Kaylee Yang <kaylee.yang@nortonrosefulbright.com>; 'John' <john.taladay@bakerbotts.com>; 'Evan' <evan.werbel@bakerbotts.com>; 'rick@saveri.com' <rick@saveri.com>; 'geoff@saveri.com' <geoff@saveri.com>; 'Matthew Heaphy (mheaphy@saveri.com)' <mheaphy@saveri.com>; Alex Cummings <alex.cummings@nortonrosefulbright.com>
**Subject:** RE: CRT

All:

Here is the joint statement for filing. I had to change some of the formatting to make it 24 pt (instead of double) and fix some squirrely issues with the headings. Also, I need Irico's counsel to please insert your signature block and send it back to me.

Please confirm that I have your authorization to file. Thank you.

Lauren

Lauren C. Capurro (Russell)
Attorney at Law
Trump, Alioto, Trump & Prescott, LLP
Telephone: (415) 860-5051
E-mail: laurenrussell@tatp.com

This message is sent by a law firm and may contain information that is privileged or confidential.  If you received this transmission in error, please notify the sender by email and delete the message and any attachments.

---

**From:** Jeffrey Margulies <jeff.margulies@nortonrosefulbright.com>
**Sent:** Tuesday, February 20, 2024 8:25 AM
**To:** Geraldine W. Young <geraldine.young@nortonrosefulbright.com>; Joe Goldberg <JG@FBDLAW.com>
**Cc:** Lauren Russell <LaurenRussell@TATP.com>; Mario Alioto <MAlioto@TATP.com>; 'Gerard A. Dever' <gdever@finekaplan.com>; 'David Hwu (dhwu@saveri.com)' <dhwu@saveri.com>; 'Dennis Stewart' <dstewart@gustafsongluek.com>; Lori Ann Benjey <lab@fbdlaw.com>; Kaylee Yang <kaylee.yang@nortonrosefulbright.com>; 'John' <john.taladay@bakerbotts.com>; 'Evan' <evan.werbel@bakerbotts.com>; 'rick@saveri.com' <rick@saveri.com>; 'geoff@saveri.com' <geoff@saveri.com>; 'Matthew Heaphy (mheaphy@saveri.com)' <mheaphy@saveri.com>; Alex Cummings <alex.cummings@nortonrosefulbright.com>
**Subject:** RE: CRT

Joe, just confirming that you will file the joint statement today? Thanks.

---

**From:** Geraldine W. Young <geraldine.young@nortonrosefulbright.com>
**Sent:** Monday, February 19, 2024 4:58 PM
**To:** Joe Goldberg <JG@FBDLAW.com>; Jeffrey Margulies <jeff.margulies@nortonrosefulbright.com>
**Cc:** 'Lauren Russell' <LaurenRussell@TATP.com>; 'Mario Alioto' <MAlioto@TATP.com>; 'Gerard A. Dever' <gdever@finekaplan.com>; 'David Hwu (dhwu@saveri.com)' <dhwu@saveri.com>; 'Dennis Stewart' <dstewart@gustafsongluek.com>; Lori Ann Benjey <lab@fbdlaw.com>; Kaylee Yang <kaylee.yang@nortonrosefulbright.com>; 'John' <john.taladay@bakerbotts.com>; 'Evan' <evan.werbel@bakerbotts.com>; 'rick@saveri.com' <rick@saveri.com>; 'geoff@saveri.com' <geoff@saveri.com>; 'Matthew Heaphy (mheaphy@saveri.com)' <mheaphy@saveri.com>; Alex Cummings <alex.cummings@nortonrosefulbright.com>
**Subject:** RE: CRT

All – Attached is Irico's Statement.  Under your proposal, we understand this to be the last exchange and that Plaintiffs will file the parties' respective statements, exchanged tonight with no changes, in one filing tomorrow.

Thanks, Geraldine

---

**From:** Joe Goldberg <JG@FBDLAW.com>
**Sent:** Monday, February 19, 2024 11:21 AM
**To:** Jeffrey Margulies <jeff.margulies@nortonrosefulbright.com>
**Cc:** 'Lauren Russell' <LaurenRussell@TATP.com>; 'Mario Alioto' <MAlioto@TATP.com>; 'Gerard A. Dever' <gdever@finekaplan.com>; 'David Hwu (dhwu@saveri.com)'

<[dhwu@saveri.com](mailto:dhwu@saveri.com)>; 'Dennis Stewart' <[dstewart@gustafsongluek.com](mailto:dstewart@gustafsongluek.com)>; Lori Ann Benjey <[lab@fbdlaw.com](mailto:lab@fbdlaw.com)>; Geraldine W. Young <[geraldine.young@nortonrosefulbright.com](mailto:geraldine.young@nortonrosefulbright.com)>; Kaylee Yang <[kaylee.yang@nortonrosefulbright.com](mailto:kaylee.yang@nortonrosefulbright.com)>; 'John' <[john.taladay@bakerbotts.com](mailto:john.taladay@bakerbotts.com)>; 'Evan' <[evan.werbel@bakerbotts.com](mailto:evan.werbel@bakerbotts.com)>; 'rick@saveri.com' <[rick@saveri.com](mailto:rick@saveri.com)>; 'geoff@saveri.com' <[geoff@saveri.com](mailto:geoff@saveri.com)>; 'Matthew Heaphy ([mheaphy@saveri.com](mailto:mheaphy@saveri.com))' <[mheaphy@saveri.com](mailto:mheaphy@saveri.com)>; Joe Goldberg <[JG@FBDLAW.com](mailto:JG@FBDLAW.com)>
**Subject:** CRT

**[External Email – Use Caution]**

**Jeff,**

**Just confirming that we will exchange any edits at 5 pm, pst, this afternoon.**

*Joseph Goldberg*

<image001.jpg>
PO Box 25236, Albuquerque, NM  87125
Direct: 1.505.244.7520 ; cell : 1.505.362.0186
Email:  jg@fbdlaw.com

**CONFIDENTIALITY NOTICE:** This email, including any attachments, is confidential and may be privileged. If you are not the intended recipient please notify the sender immediately, and please delete it; you should not copy it or use it for any purpose or disclose its contents to any other person. Norton Rose Fulbright entities reserve the right to monitor all email communications through their networks.

Norton Rose Fulbright Australia, Norton Rose Fulbright LLP, Norton Rose Fulbright Canada LLP, Norton Rose Fulbright South Africa Inc and Norton Rose Fulbright US LLP are separate legal entities and all of them are members of Norton Rose Fulbright Verein, a Swiss verein. Norton Rose Fulbright Verein helps coordinate the activities of the members but does not itself provide legal services to clients. Details of each entity, with certain regulatory information, are available at nortonrosefulbright.com.

This email message and any attachments are for the sole use of the intended recipient(s). Any unauthorized review, use, disclosure, copying or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message and any attachments.

To reply to our email administrator directly, send an email to [nrfus.postmaster@nortonrosefulbright.com](mailto:nrfus.postmaster@nortonrosefulbright.com).

Norton Rose Fulbright US LLP, Norton Rose Fulbright LLP, Norton Rose Fulbright Australia, Norton Rose Fulbright Canada LLP and Norton Rose Fulbright South Africa Inc are separate legal entities and all of them are members of Norton Rose Fulbright Verein, a Swiss verein. Norton Rose Fulbright Verein helps coordinate the activities of the members but does not itself provide legal services to clients. Details of each entity, with certain regulatory information, are available at nortonrosefulbright.com.

# Exhibit 34

**SAVERI & SAVERI, INC.**
706 SANSOME STREET
SAN FRANCISCO, CALIFORNIA 94111
TELEPHONE: (415) 217-6810
TELECOPIER: (415) 217-6813

*Trump Alioto Trump & Prescott*
ATTORNEYS LLP
2280 Union Street
San Francisco, California 94123
(415) 563-7200
FAX (415) 346-0679

March 21, 2022

*VIA EMAIL*

The Honorable Vaughn R. Walker
Law Office of Vaughn R. Walker
Four Embarcadero Center, Suite 2200
San Francisco, CA 94111
vrw@judgewalker.com

> Re:   <u>*In re Cathode Ray Tube (CRT) Antitrust Litigation*</u> – MDL No. 1917,
> <u>Master File No. 07-CV-5944-JST</u>
>
> ***CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER***

Dear Judge Walker:

**I.      Introduction**

        Pursuant to the Special Master's Order re Admissibility of Conspirator
Documents & Statements dated February 21, 2022, and adopted by the Court on March 3,
2022 (ECF No. 5992) (the "Order"), Indirect Purchaser Plaintiffs ("IPPs") and Direct
Purchaser Plaintiffs ("DPPs") (together, "Plaintiffs") submit this letter brief in support of
the admissibility under the "Co-Conspirator Rule" of 82 meeting notes and other
documents produced by Chunghwa Picture Tubes, Ltd. ("Chunghwa"), Samsung SDI
Co., Ltd. ("Samsung SDI"), and several other defendants that Plaintiffs first submitted to
Your Honor on May 27, 2021 ("Binder Documents").

        In the Order, Your Honor directed Plaintiffs to make a proffer, independent of the
documents themselves, to establish:

    a.   The existence of the agreement ("conspiracy") alleged herein;
    b.   The purpose of the agreement;
    c.   The parties to the agreement; and
    d.   The approximate duration of the agreement.

Order at 5. The Order also directs Plaintiffs, following that proffer, to make a further
showing that Irico became a party to the agreement. *Id.* The requested analysis follows.

The Honorable Vaughn R. Walker
3/21/2022
Page 2

## II.    Argument

### A.    Application of the Co-Conspirator Rule to the Court's Analysis

Under Federal Rule of Evidence 801(d)(2)(E) (the "Co-Conspirator Rule"), statements offered against Irico that were "made by [Irico's] coconspirator during and in furtherance of the conspiracy" are not hearsay. The Co-Conspirator Rule applies if Plaintiffs show, by a preponderance of the evidence that:

- "a conspiracy existed at the time the statement was made";
- "the defendant had knowledge of, and participated in, the conspiracy"; and
- "the statement was made in furtherance of the conspiracy."

*U.S. v. Bowman*, 215 F.3d 951, 960–61 (9th Cir. 2000).

Your Honor has directed Plaintiffs to make a proffer as to the existence of the conspiracy "[i]ndependent of the documents themselves." Order at 5. That proffer follows. However, it is important to note that Your Honor is not so constrained in determining whether the Co-Conspirator Rule applies. Your Honor may consider the documents themselves as long as there is additional evidence demonstrating a conspiracy beyond the statements contained therein. *See Bourjaily v. U.S.*, 483 U.S. 171, 176-81 (1987) ("[A] court, in making a preliminary factual determination under Rule 801(d)(2)(E), may examine the hearsay statements sought to be admitted."); *In re Coordinated Pretrial Proc. in Petroleum Prod. Antitrust Litig.*, 906 F.2d 432, 459 (9th Cir. 1990) ("[A] judge may consider the statements themselves in deciding whether these prerequisites have been met," but "the offering party must present '*some* evidence aside from the proffered co-conspirator's statements [to] show that the [nonoffering party] knowingly participated in the alleged conspiracy.'"); *In re Korean Ramen Antitrust Litig.*, 281 F. Supp. 3d 892, 933–34 (N.D. Cal. 2017) (finding conspiracy established for purposes of the Co-Conspirator Rule where internal evidence of conspiracy in out-of-court statements was corroborated by defendants' own conduct and expert economic analyses).

### B.    The Existence of the CRT Conspiracy

The evidence establishing the existence of the conspiracy here is overwhelming. It begins with findings by the District Court itself: "Upon its own inquiry, the Court is satisfied that the quantity and quality of the evidence supports by a preponderance of the evidence that there was a price-fixing scheme and its existence and operations would be a question common to all class members." *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 308 F.R.D. 606, 625 (N.D. Cal. 2015) ("DPP Class Cert. Order"). In addition, Irico's co-

The Honorable Vaughn R. Walker
3/21/2022
Page 3

conspirators—whose employees authored most of the Binder Documents[1]—have admitted to the existence of the conspiracy, and have testified in this litigation as to its existence, as well as their and Irico's participation in it. Furthermore, expert testimony supports this conclusion. In addition, the December 16 Letter Brief discusses the evidence establishing the existence of the conspiracy. *See* Plaintiffs' Letter Brief in Support of Authentication and Admissibility of Defendants' Documents re: Irico Competitor Contacts at 7–12 ("Dec. 16 Brief").

**Irico's Co-Conspirators Have Admitted to the Conspiracy:** The Chunghwa Defendants admitted to the existence of the conspiracy and their participation in it as part of the DOJ's leniency program and cooperated with the DOJ and Plaintiffs pursuant to the requirements of that program. DPP Class Cert. Order, 308 F.R.D. at 611; *see also* Chunghwa Settlement Agreement, ¶ F.24 (ECF No. 1115-1, Ex. 1). Samsung SDI admitted participation in the conspiracy as part of a plea agreement with the U.S. Department of Justice. *See* Declaration of Geoffrey C. Rushing in Support of Plaintiffs' Letter Brief in Support of Their Proffer of Evidence of the CRT Conspiracy and Irico's Participation in It ("Rushing Decl."), Ex. A (Amended Plea Agreement dated May 17, 2011). In this Plea Agreement, Samsung SDI admitted that it "participated in a conspiracy among major CDT producers, the primary purpose of which was to fix prices, reduce output, and allocate market shares of CDTs sold in the United States and elsewhere." *Id.* at 3. Furthermore, it admitted that, "through its officers and employees," it "engaged in discussions and attended meetings with representatives of other major CDT producers," and "[d]uring these discussions and meetings, agreements were reached to fix prices, reduce output, and allocate market shares of CDTs to be sold in the United States and elsewhere." *Id.*

**The U.S. Department of Justice Indicted Six Individuals for Their Participation in the Conspiracy:** The DOJ indicted six former executives of Samsung SDI, Chunghwa, LGE, and LPD alleging, *inter alia,* agreements on prices, output, and market allocation; exchange of sales, production, market share, and pricing data; auditing to verify compliance with conspiratorial agreements; and active concealment of the conspiracy. Rushing Decl., Exs. B–E (Indictments of Cheng Yuan Lin, Chung Cheng Yeh, Wen Jun Cheng, Seung-Kyu Lee, Yeong-Ug Yang, and Jae-Sik Kim). Three former executives of Samsung SDI were "specifically carved out" of Samsung SDI's Amended Plea Agreement because they "are the most culpable individuals identified by the government after extensive investigation." *United States v. Samsung SDI Co., Ltd.*, No. 3:11-cr-00162-WHA (N.D. Cal. Apr. 15, 2011) (ECF No. 15) (United States

---

[1] Your Honor inquired why Plaintiffs' revised chart sometimes lists two document numbers under a single tab and requested that Plaintiffs "straighten out these duplications with a revised chart, so each tab number lists one and only one document." Order at 2–3. Plaintiffs have done so. In instances where there is more than one meeting note documenting the same meeting, Plaintiffs have created separate tabs for each, listing documents as, for example, new Tab 27a and new Tab 27b.

The Honorable Vaughn R. Walker
3/21/2022
Page 4

Memorandum in Response to Notice Regarding Issues for April 19 Hearing) (Rushing Decl., Ex. F).

**Other International Government Investigations Confirm the Existence of the CRT Conspiracy:** Following an investigation into the CRT industry that began in November 2007, the European Commission ("EC") announced its findings in a December 5, 2012 Press Release and Report. *See* Rushing Decl., Ex. G. The EC levied record fines of €1.47 billion ($1.93 billion) against many of Irico's co-conspirators, and described the CRT cartel as "among the most organised cartels that the Commission has investigated." *Id.*

The Japan Fair Trade Commission ("JFTC") found that 11 CRT manufacturers had violated Article 3 of Japan's Antimonopoly law, by conspiring to fix the prices of CPTs, tubes used in the manufacture of televisions. Fines imposed on 7 of the 11 companies totaled approximately JPY 3.32 billion (USD 37 million). *See* Rushing Decl., Ex. H (JFTC's Press Release, *Cease-and-Desist Order and Surcharge Payment Orders against Manufacturers of Cathode Ray Tubes for Televisions*, dated October 7, 2009).

**Irico's Co-Conspirators Have Testified in This Litigation to the Existence of the Conspiracy**: Chunghwa executives who participated in the conspiracy, including the authors of meeting notes, testified to the existence of the conspiracy (*see* Depositions of C.C. Liu, J.S. "Jason" Lu, and S.J. Yang). For example, Chunghwa's Senior Manager, Jason Lu, affirmed the conspiratorial nature of the meetings and the attendance of Irico:

> Q. Okay, Mr. Lu, my question goes beyond whether prices were just discussed, but whether at the meetings you attended during this time period the competitors actually agreed upon certain CDT prices to be charged?
> [. . .]
> THE WITNESS: Almost every meeting reached such an agreement. The point is whether these agreements were actually executed. Every time, in every meeting, price agreement was reached.
> Q. Can you describe for me, in your own words, the types of price agreements that were reached in these meetings?
> [. . .]
> THE WITNESS: For different sizes, there would be one bottom price for one size. You could offer to your major customers the lowest price, the bottom price, but for those non-major customers the price could go up $1.00 or $2.00. Agreements were generally of such a nature.

Rushing Decl., Ex. I at 62:2–24 ("J.S. Lu Dep. Tr. (Day 1)"). Mr. Lu further testified:

> Q. Now, Mr. Lu, you'll recall that you testified earlier about China CD[T] maker meetings in mainland China through a number of meeting reports, correct?

The Honorable Vaughn R. Walker
3/21/2022
Page 5

> A. Yes.
> Q. Now, I wanted to ask you a couple of general questions regarding those meetings, okay?
> A. Okay.
> Q. From about when to when did those meetings last?
> A. As far as I can remember, I arrived Fuzhou in November 1998, those meetings had started prior to my arrival. I don't know whether my memory is precise, those meetings might have ended in 2001.
> Q. Thank you. Now, to the best of memory, who participated in those meetings?
> A. Major — major participating companies were Chunghwa, SED (later SDI), Philips mainly Huang Fei, Orion, LPD — LG, called LG before they were merged. Irico and Matsushita Beijing.
> [. . .]
> Q. Did Chunghwa inform the other participants at these meetings about CDT glass meetings that were held outside of China?
> A. I remember that at meetings it was Philips who — which was briefing the group meeting status. Philips was the leader, that was that is my memory.

Rushing Decl., Ex. J at 238:3–240:1 ("J.S. Lu Dep. Tr. (Day 2)").

Chunghwa's Director of Sales and Marketing, S.J. Yang, also testified that the companies met to reach agreements on price:

> Q. Did the companies attending these working-level CPT meetings try to set prices for the CPT marketplace?
> [. . .]
> THE WITNESS: We would — we would hope to reach a price agreement.

Rushing Decl., Ex. K at 62:15–21 ("S.J. Yang Dep. Tr. (Day 1)").

Similarly, Chunghwa's former Vice President, C.C. Liu, explained that the purpose of the meetings was to set prices through group meetings:

> Right from one-on-one meetings, we hoped to see whether the prices could remain stable in order to keep our businesses and our career and the company's life going on. In order to prevent serious losses, to maintain long-term stability in the industry, the best way is for everyone to maintain a price. The most effective way will be through group meetings.

Rushing Decl., Ex. L at 51:9–17 ("C.C. Liu Dep. Tr. (Day 1)").

> Q. So it was your intent when you went to the monthly meetings to exchange price information?

The Honorable Vaughn R. Walker
3/21/2022
Page 6

>A. Yes
>Q. And when you went to the monthly meetings, you expected to receive
>price information from the participants; is that correct?
>[. . .]
>THE WITNESS: Yes.
>Q. At the monthly group meetings, did you come to an understanding of
>what prices you would charge customers?
>[. . .]
>THE WITNESS: That would be the purpose of our meeting. Of course we
>did it.
>Q. Okay. So, is it your understanding then that you came to an agreement
>with the participants on the prices to be charged for CRTs during this
>period of time?
>[. . .]
>THE WITNESS: Yes.

*Id.* at 55:1–56:2.

>Q. So during the group meetings that you attended with Samsung, is it
>your belief that you came to a common understanding with Samsung as to
>the prices that would be charged to customers for CRTs?
>[. . .]
>THE WITNESS: Not only Samsung, all the participants I believe reached
>somewhat consensus. We all — we, who were present there, developed a
>common understanding.

*Id.* at 56:14–24. Mr. Liu also explained the comprehensive nature of the pricing
agreements:

>Q. Let's assume for a moment that you were to raise the price of 15-inch
>color picture tubes, without changing the price of the 17-inch color picture
>tubes. Do you have an understanding, based upon your years of experience
>in the CRT business, what effect, if any, that would have on the relative
>mix of sales of 15-inch and 17-inch CPT tubes?
>A. This question is not difficult. We are professionals in this industry. We
>are selling tubes like professionals if not experts. How could we only
>change the price of a 15 inches tubes without changing the prices for [17]
>inches of tubes? Of course, we would consider the overall market structure
>and the market acceptance and the reasonable cost gaps. We would
>certainly raise the prices at the same time.

Rushing Decl., Ex. M at 296:3–24 ("C.C. Liu Dep. Tr. (Day 2)").

The Honorable Vaughn R. Walker
3/21/2022
Page 7

Philips employee James (Jim) Smith also admitted that he met with Philips'
competitors on a regular basis and entered into agreements on future CRT prices, and that
he was the Chairman of the Glass Meetings in Asia during this period:

> Q. And what were the proposals, what types of proposals were they
> seeking approval from the senior people?
> A. They would try to hold prices at this kind of level on each product type.
> Q. And would the meetings result in the CEOs providing their approval or
> not approving the proposals made by management?
> A. They always approved, they never disapproved, and there was no
> contention. So it wasn't really a meeting where there was contentious
> views.
> Q. There was agreement?
> A. There was agreement.
> Q. And you said that one of the topics would be setting prices at certain
> levels, correct?
> A. It would be a conclusion. The regional managers would in this
> consolidated document be informing the senior management of what the
> price levels would be and in the absence of objection from the senior
> managers that was taken as approval.
> Q. When you're talking about what the price levels would be, you
> mean future prices?
> A. Future prices.
>
> * * *
>
> Q. There's a reference at the bottom. The last line that says, "A new
> chairman was selected. Mr. Jim Smith was selected by Phillips." Do you
> see that?
> A. Yes, I do.
> Q. Do you have any understanding what that means?
> A. I was asked by the Korean members particularly to take over the
> chairmanship of the meeting from David Chang.
> Q. And this was at the first meeting you attended, correct?
> A. Correct.
> Q. Who asked you?
> A. Mr. Inn Kim.
> Q. Did you accept?
> A. I did.

Rushing Decl., Ex. N at 59:20–60:21; 193:1–18 ("Jim Smith Dep. Tr. (Day 1)").

As Plaintiffs demonstrate above, there is abundant sworn deposition testimony
from Irico's co-conspirators demonstrating the existence of the conspiracy.

The Honorable Vaughn R. Walker
3/21/2022
Page 8

**Expert Analysis Supports the Existence of the Conspiracy:** Plaintiffs' expert witnesses concluded that the meeting notes and statistical and other economic evidence were consistent with the existence of the conspiracy. *See* Expert Report of Janet S. Netz, Ph.D. (ECF No. 3281-9 & 10). DPPs' expert Dr. Leslie Marx performed an extensive analysis of the conspiracy evidence and concluded, among other things, that "the economic evidence during the Class Period is consistent with coordinated conduct by the Alleged Co-Conspirators," including the Irico Defendants. ECF No. 5191-2, Ex. A at 3; *see also, e.g., id.* at 38, 21 n.105, 42 fig. 7. Dr. Marx also concluded that "[t]he structure of the CRT industry is consistent with effective collusion" and that the structure and operation of the conspiracy was "consistent with the economics literature's view of effective cartels and with effective cartels in other products." *Id.* at 3; *see also id.* at 68–72.

DPPs' expert Dr. Jeffrey Leitzinger, upon whom the Court relied in entering the DPP Class Cert. Order, concluded that "there is evidence . . . sufficient to prove widespread impact" of the global conspiracy to fix the price of CRTs and CRT products, specifically including higher prices in the United States. ECF No. 5191-2, Ex. D at ¶¶ 6, 49 & figs. 8 & 9. Dr. Leitzinger concluded with a "high degree of statistical confidence" that the "target prices" set by the conspirators—which, taken as a group, accounted for up to 100 percent of the industry's capacity—"resulted in higher CRT prices . . . in North America and in the rest of the world." *Id.* ¶ 49 & figs. 8 & 9. DPPs' current expert, Dr. Johnson, reached similar conclusions. *See, e.g.*, ECF No. 5971-2 ¶¶ 8, 53–56, figs. 10 & 11.

IPPs' expert, Dr. Janet Netz, likewise concluded after extensive analysis of the evidence that the CRT cartel was successful in raising prices for CRTs, that the price increases impacted all direct purchasers of CRTs, and that those direct purchasers passed on the increases to indirect purchasers in the United States. *See In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. C-07-5944-SC, 2013 WL 5391159, at *3–7 (N.D. Cal. Sept. 24, 2013) (IPP class certification order describing the evidence and Dr. Netz's findings).

C.    **The Purpose of the Conspiracy**

The purpose of the conspiracy was to raise and maintain the prices of Cathode Ray Tubes:

Q. And what was the purpose of the group meetings?
[…]
A. Right from one-on-one meetings, we hoped to see whether the prices could remain stable in order to keep our businesses and our career and the company's life going on. In order to prevent serious losses, to maintain long-term stability in the industry, the best way is for everyone to maintain a price. The most effective way will be through group meetings.

Rushing Decl., Ex. L at 50:23–51:17 (C.C. Liu Dep. Tr. (Day 1)).

The Honorable Vaughn R. Walker
3/21/2022
Page 9

Because tubes were sold according to their size in inches, the parties reached agreement on the price at which each tube size was to be sold. *See* Rushing Decl., Ex. I at 62:2–24 (J.S. Lu Dep. Tr. (Day 1)) ("For different sizes, there would be one bottom price for one size. You could offer to your major customers the lowest price, the bottom price, but for those non-major customers the price could go up $1.00 or $2.00. Agreements were generally of such a nature.").

### D.   The Parties to the Conspiracy

Chunghwa's executives also testified that the parties to the conspiracy were as follows:

Chunghwa;[2]
SDI (previously called SDD);[3]
Philips;[4]
Orion;[5]
LPD;[6]
LG;[7]
Irico; and

---

[2] "Chunghwa" refers to defendant Chunghwa Picture Tubes, Ltd., which was also sometimes referred to in the meeting reports as the acronym "CPT." During the relevant period, Chunghwa had a Chinese subsidiary called Chunghwa Picture Tubes (Fuzhou), Ltd. that met regularly with Irico.

[3] "SDI" refers to defendant Samsung SDI Co., Ltd. or one of its subsidiaries. During the relevant period, SDI had two Chinese subsidiaries that met regularly with Irico: Tianjin Samsung SDI Co., Ltd., and Shenzhen Samsung SDI Co., Ltd. Samsung SDI was also sometimes referred to in the meeting reports as "SDD," an acronym for its former name, Samsung Display Devices.

[4] Philips refers to defendant Koninklijke Philips Electronics N.V. or one of its subsidiaries. During the relevant period, Philips had a Chinese subsidiary called "Nanjing Hua Fei Color CRT Co., Ltd." that met regularly with Irico.

[5] Orion refers to defendant Orion Electric Company, which was a Korean CRT manufacturer with subsidiaries all over the world. Orion went bankrupt before this litigation began in 2007 and has never been an active defendant.

[6] LPD refers to defendant LG.Philips Displays Co., Ltd., which was a joint venture formed in 2001 by defendants Philips and LG Electronics, Inc. During the relevant period LPD had two Chinese subsidiaries—Nanjing Hua Fei and Changsha—that met regularly with Irico.

[7] LG refers to defendant LG Electronics, Inc. or one of its subsidiaries. During the relevant period, LG had a subsidiary in Changsha that met regularly with Irico.

The Honorable Vaughn R. Walker
3/21/2022
Page 10

       Matsushita Beijing.[8]

Rushing Decl., Ex. J at 238:3–240:1 (J.S. Lu Dep. Tr. (Day 2)). J.S. Lu began working
for Chunghwa's Fuzhou subsidiary in November 1998 and was a regular attendee of the
group meetings in China with Irico. *Id.*

       Chunghwa's S.J. Yang also identified Toshiba, Matsushita (and later their joint
venture MT Picture Display Co., Ltd., often referred to as "MTPD"), Thai CRT, and
Hitachi as participants that reached common understandings on CRT prices with
Chunghwa. *See* Rushing Decl., Ex. K at 61:12–62:10 (S.J. Yang Dep. Tr. (Day 1)).

       Likewise, Chunghwa's former Vice President of Sales, C.C. Liu, identified these
same companies as the participants in the conspiracy. Rushing Decl., Ex. L at 57:16–67:7
(C.C. Liu Dep. Tr. (Day 1)) (also identifying LG, Philips, LPD, Orion, Thai CRT, and
MTPD, as attendees of the group "glass" meetings from 1995 to 2005 who reached
common understandings on CRT prices); *id.*, Ex. M at 329:10–330:17 (C.C. Liu Dep. Tr.
(Day 2)) (identifying Hitachi, Irico, Toshiba, and Matsushita as "companies that
Chunghwa reached out to who were not participants in the group meetings").

### E.      The Conspiracy's Duration

       C.C. Liu also testified clearly and extensively about the genesis of the CRT
conspiracy. He testified that the "one-on-one meetings" started "a very, very long time
ago[,]" with Samsung SDI "pay[ing] visits" to competitors including Chunghwa, Philips
and Toshiba "for exchange of opinions." *See id.*, Ex. L at 46:23–47:7 (C.C. Liu Dep. Tr.
(Day 1)). According to Mr. Liu, the group meetings began after 1995:

> Q. And what is your understanding about when Chunghwa first began having
> group meetings?
> [. . .]
> A. After those one-on-one meetings, it changed into two-on-two or two-on-three.
> After 1995 they -- such meetings turned into group meetings.
> [. . .]
> A. It will be very difficult to define group meetings. At that time many chairmen
> or CEOs of brand factories get together and such meetings included members who
> later become formal members. In 1997 David Chang of Philips came up with
> some kind of a mechanism, then we had more formal group meetings.
> Q. But prior to David Chang of Philips in 1997 coming up with more formal
> group meetings, were there group meetings prior to 1997 and, just for clarity, I

---

[8] Matsushita Beijing refers to defendant Beijing-Matsushita Color CRT Company, Ltd.,
which was also often referred to as "BMCC." BMCC was a Chinese joint venture, 50%
of which was held by defendants Matsushita Electric (n/k/a Panasonic Corporation) and
later MT Picture Display Co., Ltd. The other 50% was held by several Chinese, state-
owned companies.

The Honorable Vaughn R. Walker
3/21/2022
Page 11

> think you defined group meetings of more than two companies talking, so it
> would be three or more?
> [. . .]
> A. You could put it that way. In 1995 those who should have appeared actually
> appeared and joined already. Certainly more than three.
> [. . .]
> From 1995 or specifically 1997 we met at least one time a month. The figures
> could be a little fewer because there could be some delay or some engagement of
> the attendees. There were times that we meet every one and a half months.

*Id*. at 46:23–49:15; *see also id.* at 52:14–16 ("After 1995, almost all the CEOs of all the
CRT manufacturers began to meet regularly.").

As for the group meetings in China, Chunghwa's Senior Manager J.S. Lu testified
that he arrived Fuzhou in November 1998 and that meetings had started prior to his
arrival. Rushing Decl., Ex. J at 238:3–240:1 (J.S. Lu Dep. Tr. (Day 2)).

Consistent with Mr. Lu's understanding that meetings occurred before his arrival
in China in 1998, Plaintiffs have recently uncovered evidence that Irico joined the
conspiracy at or around its inception in 1995. Documents produced by defendant Beijing
Matsushita Color CRT Co., Ltd. ("BMCC" or "Matsushita Beijing") contain tables dated
February 1995 and March 14, 1995 detailing the CRT production data of various CRT
manufacturers including Irico (referred to as "4400"[9]), for the period from 1993-1998.
*See* Rushing Decl., Exs. P, Q (BMCC-CRT000134418–19, BMCC-CRT000113394).[10]
Minutes of an internal Irico Group Corporation meeting on July 10, 1995 state that Wu
Yingzhong referenced a "preparatory meeting" for the "CRT Industry Association" to be
held on July 17, and that the "founding meeting will be held in early August." Rushing
Decl., Ex. R (IRI-CRT-00004817–23 at IRI-CRT-00004821E). Another BMCC
document dated November 30, 1995, is entitled "December CRT Industry Meeting
exchange" and was authored by "Irico Group Sales Company." Rushing Decl., Ex. S
(BMCC-CRT000113389–91). The document contains detailed figures showing Irico's
CRT output, sales, and inventory from January-November 1995, as well as Irico's
planned production of CRTs for 1996. The evidence shows that the conspiracy lasted
over 12 years. An email produced by LG refers to conspiratorial communications
between its joint venture, LPD, and SDI as late as November 13, 2007. Rushing Decl.,
Ex. T (LGE00080007–10).

Thus, the evidence demonstrates that the duration of the conspiracy was from at
least March 1995 until no earlier than November 2007, i.e. the entire class period.

---

[9] *See, e.g.,* Rushing Decl. Ex. O (IRI-CRT-00023478–79) (Irico internal document
referring to Irico's CRT factory in "State-run Plant 4400 Form for Official Document.").

[10] None of the documents cited in this, and the following paragraph are among those
Plaintiffs presently seek to have deemed admissible pursuant to these proceedings.

The Honorable Vaughn R. Walker
3/21/2022
Page 12

### F.   Irico's Participation in the CRT Conspiracy

The analysis of Irico's participation in the CRT conspiracy again begins with findings of the District Court. Order Setting Aside Default at 16 (Feb. 1, 2018) (ECF No. 5240) (noting that "there is evidence of the Irico Defendants' participation in 'a single, overarching conspiracy'"). As to the showing that Irico participated, "[i]n this Circuit, the prosecution need only show *slight evidence* connecting the defendant to the conspiracy, and this evidence may be circumstantial." *USA v. Chen*, No. 17-cr-00603-BLF-1, 2021 WL 2936731, at *2 (N.D. Cal. July 13, 2021) (quoting *U.S. v. Mason*, 658 F.2d 1263, 1269 (9th Cir. 1981)) (emphasis added). *See* Dec. 16 Brief at 5. In addition, the December 16 Letter Brief discusses the documents demonstrating Irico's participation in the conspiracy. *See id.* at 12–16.

Testimonial evidence from depositions taken in this case also establishes Irico's participation the conspiracy. First, Irico's co-conspirators testified to Irico's attendance at meetings and agreements to raise prices. Chunghwa co-conspirator Jason Lu testified that he attended meetings with Irico representatives and that they reached agreements to raise prices. Rushing Decl., Ex. J at 238:3–240:1 (J.S. Lu Dep. Tr. (Day 2)). For example, referring to his notes of a June 22, 1999 meeting[11] attended by Chunghwa, Orion, and Irico (Tab 10), Mr. Lu confirmed that the meeting occurred, that it was "primarily for discussion about CPT prices," and that Irico agreed to fix prices. *Id*. at 184:4–185:14. He testified that Irico "said it is willing to cooperate as I wrote it in this report" to "increase the overall price beginning in August." *Id*. at 187:22–188:25.

Indeed, Irico itself has confirmed its participation in these meetings. Irico's corporate representative, Zhaojie Wang, admitted attending "many, many such meetings" with competitors. Rushing Decl., Ex. U at 92:19–24 ("Wang Dep. Tr. (Day 3)"). He confirmed that meetings occurred in Xian, Shenzhen, Nanjing, Changsha and Beijing. *Id.* at 42:1–43:4. He confirmed that Irico hosted a meeting in Xi'an. *Id*. at 42:1–4. He testified that Irico "frequently contact[s]" its domestic competitors. *Id*. at 44:16–20. Irico also admitted in its (otherwise wholly inadequate) interrogatory responses to attending three of these meetings (Tabs 2, 6, and 15), and said that it likely attended other meetings but could not be more specific. In its Sixth Supplemental Response to DPP's First Set of Interrogatories served on January 7, 2022, Irico admitted that it attended the following additional meetings with co-conspirators:

- December 9, 1999 meeting in Suzhou, People's Republic of China attended by Wang Zhaojie;
- January 13, 2000 meeting in Xi'an, People's Republic of China; and
- September 14, 2000 meeting in Changsha, People's Republic of China attended by Wang Zhaojie that was organized by LG.

---

[11] Mr. Lu was referring to one of the documents at issue in this proceeding that can be found at Tab 10.

The Honorable Vaughn R. Walker
3/21/2022
Page 13

Rushing Decl., Ex. V at 11–12 (Irico Defs.' Sixth Suppl. Objs. & Resps. to DPPs' First
Set of Interrogs., No. 5 (Jan. 7, 2022)). In addition, Irico also confirmed its travel and
expense records showed that on at least seven occasions, its employees traveled to cities
on dates when other defendants' meeting records showed those Irico employees attended
conspiratorial meetings. *Id.* at 12–13.

  Irico has also offered no reason to believe that the meetings at issue did *not* occur
as described in the meeting notes. Mr. Wang, specifically designated to testify as Irico's
corporate representative as to the meetings described in Tabs 1–26, never disputed that
these meetings occurred. To the contrary, he accepted that the meetings, as reflected in
meeting notes, happened. Rushing Decl., Ex. U at 45:22–48:6 (Wang Dep. Tr. (Day 3))
("Q. In your capacity as a representative of Irico Group, can you tell me whether Irico
hosted this meeting? A. The document speaks for itself. If it says so, then it is."). He
confirmed that he attended meetings described in notes indicating his attendance. *Id.* at
62:3–63:1 ("Q. Do you recall attending this meeting on behalf of Irico with your
competitors in Nanjing China in April 1999? A. It was too long ago, so I don't remember
whether I have participated in this meeting. However, if my name is on the list, yeah, I
was there then."). There are 18 meeting notes indicating his attendance.[12]

  Similarly, Mr. Wang, despite being asked about nine meetings (Tabs 1, 2, 6, 7, 8,
9, 10, 15, 22) never took material issue with the accuracy of the meeting notes.[13] Again,
to the contrary, he accepted their truth. *See, e.g., id.* at 47:10–48:6 (regarding Chunghwa
meeting note at Tab 2: "A. This report, as you say, is produced by Chunghwa, so
whatever is written here, that's how it is. . . . The document speaks for itself. If it says so,
then it is."); 93:13–94:21, 102:13–23 (regarding Chunghwa meeting note at Tab 1: "You
have no basis to doubt the accuracy of this meeting report, correct? . . . A. I have no
doubt about this report. Q. Thank you, that's all I have. A. Can I make one more
comment? I just want to say that I indicate that I have no doubt about the truth of this
document. However, I have no comment regarding the content of this report.").

  Finally, Irico admits that over a dozen sales and marketing reports—including
many marked confidential—found in the files of other defendants were authored by Irico
employees. *See* Rushing Decl., Ex. W at 13–14 (Irico Defs.' Objs. and Resps. to IPPs
First Set of RFAs, No. 4) (Feb. 23, 2022); *see also id.*, Exs. X, Y (CHU00124396–99T,
CHU00124400–02T) (Irico weekly sales and marketing meetings). Irico also admits that
at least one email used to share these reports with competitors belonged to an Irico
employee during the class period. *See id.*, Ex. W at 5–6 (Irico Defs.' Objs. and Resps. to
IPPs First Set of RFAs, No. 1B).

---

[12] *See* Tab numbers 2, 4, 5, 6, 7, 11, 12, 13, 15, 27, 28, 30, 31, 38, 42, 46, 48, 55.

[13] Except for a generalized and vague assertion that it was his "understanding" that Irico
never agreed to fix prices. *See* Rushing Decl., Ex. U at 60:3–61:13 (Wang Dep. Tr. (Day
3)).

The Honorable Vaughn R. Walker
3/21/2022
Page 14

## III.   Conclusion

For the foregoing reasons, Plaintiffs respectfully request that the Court deem the documents identified in the accompanying chart admitted into evidence for all purposes.

Very truly yours,

*s/ Lauren C. Capurro*

Lauren C. Capurro
Lead Counsel for Indirect Purchaser Plaintiffs

*s/ R. Alexander Saveri*

R. Alexander Saveri
Lead Counsel for Direct Purchaser Plaintiffs

Cc:    Jay Weil (jay.weil@fedarb.com)
       John M. Taladay (john.taladay@bakerbotts.com)
       Evan J. Werbel (evan.werbel@bakerbotts.com)
       Thomas E. Carter (tom.carter@bakerbotts.com)
       Andrew L. Lucarelli (drew.lucarelli@bakerbotts.com)
       Kaylee Yang (kaylee.yang@bakerbotts.com)
       Daniel E. Birkhaeuser (dbirkhaeuser@bramsonplutzik.com)
       Alan Plutzik (aplutzik@bramsonplutzik.com)

# Exhibit 35

1  BAKER BOTTS L.L.P.
   John M. Taladay (*pro hac vice*)
2  Evan J. Werbel (*pro hac vice*)
   Thomas E. Carter (*pro hac vice*)
3  Andrew L. Lucarelli (*pro hac vice*)
   700 K Street, N.W.
4  Washington, D.C. 20001
   (202)-639-7700
5  (202)-639-7890 (fax)
   Email: john.taladay@bakerbotts.com
6          evan.werbel@bakerbotts.com
           tom.carter@bakerbotts.com
7          drew.lucarelli@bakerbotts.com

8  Jonathan Shapiro (State Bar No. 257199)
   101 California Street, Suite 3600
9  San Francisco, California 94111
   (415) 291-6200
10 (415) 291-6300 (fax)
   Email: jonathan.shapiro@bakerbotts.com
11

12 *Attorneys for Defendants*
   *IRICO GROUP CORP. and*
13 *IRICO DISPLAY DEVICES CO., LTD.*

14

15                UNITED STATES DISTRICT COURT

16              NORTHERN DISTRICT OF CALIFORNIA

17                      OAKLAND DIVISION

18

19 IN RE: CATHODE RAY TUBE (CRT)          Master File No. 4:07-cv-05944-JST
   ANTITRUST LITIGATION                   (N.D. Cal.)
20
                                          MDL No. 1917
21 ─────────────────────────────
   This Document Relates to:              **IRICO DEFENDANTS' THIRD**
22                                        **SUPPLEMENTAL OBJECTIONS**
   ALL DIRECT PURCHASER ACTIONS           **AND RESPONSES TO DIRECT**
23                                        **PURCHASER PLAINTIFFS' FIRST**
                                          **SET OF INTERROGATORIES**
24

25 PROPOUNDING PARTY:        Direct Purchaser Plaintiffs

26 RESPONDING PARTIES:       Irico Group Corporation
                             Irico Display Devices Co., Ltd.
27
   SET NUMBER:               One
28

   IRICO'S THIRD SUPP. OBJECTIONS AND              Master File No. 4:07-cv-05944-JST
   RESPONSES TO DPP'S FIRST SET                                        MDL No. 1917
   INTERROGATORIES

Pursuant to Federal Rules of Civil Procedure 26 and 33, Irico Group Corporation and Irico Display Devices Co, Ltd. (collectively, "Irico" or "Irico Defendants") hereby provides this supplemental response to the Direct Purchaser Plaintiffs' ("Plaintiff") First Set of Interrogatories, dated March 12, 2010 ("Interrogatories"). Irico reserves the right to amend or supplement these Objections and Responses (the "Responses") to the extent allowed by the Federal Rules of Civil Procedure and the Local Rules of Practice in Civil Proceedings before the United States District Court for the Northern District of California ("Local Rules"). Subject to and without waiving any of Irico's General and Specific Objections as set forth below, Irico is willing to meet and confer with Plaintiff regarding such General and Specific Objections.

The following Responses are made only for purposes of this case. The Responses are subject to all objections as to relevance, materiality and admissibility, and to any and all objections on any ground that would require exclusion of any response if it were introduced in court. All evidentiary objections and grounds are expressly reserved.

These Responses are subject to the provisions of the Stipulated Protective Order issued by the Court on June 18, 2008 ("Protective Order"). Irico's Responses are hereby designated "Confidential" in accordance with the provisions of the Protective Order.

## **GENERAL OBJECTIONS**

Irico makes the following General Objections to Plaintiff's Interrogatories:

1.      Irico's Responses are based upon information available to and located by Irico as of the date of service of these Responses. In responding to Plaintiff's Interrogatories, Irico states that it has conducted, or will conduct, a diligent search, reasonable in scope, of those files and records in its possession, custody, or control believed to likely contain information responsive to Plaintiff's Interrogatories.

2.      No express, incidental, or implied admissions are intended by these Responses and should not be read or construed as such.

3.      Irico does not intend, and its Responses should not be construed as, an agreement or acquiescence with any characterization of fact, assumption, or conclusion of law contained in or implied by the Interrogatories.

4. To the extent that Irico responds to Plaintiff's Interrogatories by stating that Irico will produce or make available for examination responsive information or documents, Irico does not represent that any such information or documents exist. Irico will make a good faith and reasonable attempt to ascertain whether information responsive to Plaintiff's Interrogatories exists and is properly producible, and will produce or make available for examination non-privileged responsive materials to the extent any are located during the course of a reasonable search.

5. Irico objects to Plaintiff's Interrogatories to the extent that they are overly broad, unduly burdensome, oppressive, and duplicative to the extent that they seek information or documents that are already in the possession, custody, or control of Plaintiff.

6. Irico objects to Plaintiff's Interrogatories to the extent that they seek to impose obligations on Irico beyond those of the Federal Rules of Civil Procedure, the Local Rules, or any Order of this Court.

7. Irico objects to Plaintiff's Interrogatories to the extent they seek information that is not relevant or disproportionate to the needs of the case.

8. Irico objects to Plaintiff's Interrogatories to the extent that they are vague, ambiguous, or susceptible to more than one interpretation. Irico shall attempt to construe such vague or ambiguous Interrogatories so as to provide for the production of responsive information that is proportionate to the needs of the case. If Plaintiff subsequently asserts an interpretation of any Interrogatory that differs from Irico's understanding, Irico reserves the right to supplement or amend its Responses.

9. Irico objects to Plaintiff's Interrogatories to the extent that they contain terms that are insufficiently or imprecisely defined. Irico shall attempt to construe such vague or ambiguous Interrogatories so as to provide for the production of responsive information that is proportionate to the needs of the case.

10. Irico objects to Plaintiff's Interrogatories to the extent that they seek information that is protected from disclosure by the attorney-client privilege, work product doctrine, joint defense or common interest privilege, self-evaluative privilege, or any other applicable privilege or immunity. Irico will provide only information that it believes to be non-privileged and

otherwise properly discoverable. Nothing in Irico's responses is intended nor should be construed as a waiver of any such privilege or immunity. The inadvertent or mistaken provision of any information or responsive documents subject to any such doctrine, privilege, protection or immunity from production shall not constitute a general, inadvertent, implicit, subject-matter, separate, independent or other waiver of such doctrine, privilege, protection or immunity from production.

11.    Irico objects to Plaintiff's Interrogatories to the extent that they call for information that is not in the possession, custody, or control of Irico. Irico also objects to the extent that any of Plaintiff's Interrogatories seek information from non-parties or third parties, including but not limited to any of Irico's subsidiary or affiliated companies.

12.    Irico objects to Plaintiff's Interrogatories to the extent that responding would require Irico to violate the privacy and/or confidentiality of a third party or confidentiality agreement with a third party.

13.    Irico objects to Plaintiff's Interrogatories to the extent that they seek information that is publicly available, already in Plaintiffs' possession, custody, or control, or more readily available from other sources.

14.    Irico objects to Plaintiff's Interrogatories to the extent that they seek information or documents concerning transactions outside the United States. Such Interrogatories are unduly burdensome and irrelevant to this pending action as Plaintiffs' purported class definition is confined to "all persons . . . who directly purchased a Cathode Ray Tube Product . . . in the United States" (see Direct Purchaser Plaintiffs' Consolidated Amended Complaint dated March 16, 2009).

15.    Irico objects to Plaintiff's Interrogatories to the extent that compliance would require Irico to violate the laws, regulations, procedures, or orders of a judicial or regulatory body of foreign jurisdictions.

16.    Irico's responses, whether now or in the future, pursuant to Plaintiff's Interrogatories should not be construed as either (i) a waiver of any of Irico's general or specific

1    objections or (ii) an admission that such information or documents are either relevant or

2    admissible as evidence.

3        17.    Irico objects to Plaintiff's Interrogatories to the extent that they are compound

4    and/or contain discrete subparts in violation of Federal Rule of Civil Procedure 33(a)(1).

5        18.    Irico objects to Plaintiff's Interrogatories to the extent that they state and/or call for

6    legal conclusions.

7        19.    Irico objects to the Interrogatories to the extent that they contain express or

8    implied assumptions of fact or law with respect to the matters at issue in this case.

9        20.    Irico objects to the Interrogatories to the extent they seek information or

10   documents that cannot be removed or transmitted outside China without violating the laws and

11   regulations of that country, including but not limited to restrictions on the transmission of state

12   secrets or trade secrets as those terms are defined under Chinese law.

13       21.    Irico reserves the right to assert additional General and Specific Objections as

14   appropriate to supplement these Responses.

15       These General Objections apply to each Interrogatory as though restated in full in the

16   responses thereto. The failure to mention any of the foregoing General Objections in the specific

17   responses set forth below shall not be deemed as a waiver of such objections or limitations.

18   **<u>GENERAL OBJECTIONS TO DEFINITIONS AND INSTRUCTIONS</u>**

19       1.    Irico objects to the definitions of "Defendant," "You," "Your," and "Yourself"

20   (Definition Nos. 1 and 3) to the extent that Plaintiff defines those terms to include the Irico's

21   "present or former employees, officers, directors, agents, predecessors, successors, parents,

22   subsidiaries, affiliates, joint ventures or any other person acting on their behalf." This definition is

23   overbroad, unduly burdensome, vague, and ambiguous. Irico also objects to the inclusion of all

24   "present or former employees, officers, directors, agents . . . or any other person acting on [the]

25   behalf [of]" Irico within this definition to the extent it purports to encompass information that is

26   protected by attorney-client privilege, work product protection or any other applicable doctrine,

27   privilege, protection or immunity or otherwise calls for a legal conclusion.

28       2.    Irico objects to the definition of "Document" (Definition No. 4) to the extent it

---

IRICO'S THIRD SUPP. OBJECTIONS AND          4          Master File No. 4:07-cv-05944-JST
RESPONSES TO DPP'S FIRST SET                            MDL No. 1917
INTERROGATORIES

1    seeks to impose requirements that are beyond those imposed by the Federal Rules of Civil

2    Procedure, the Local Rules, or any other applicable laws.

3            3.      Irico objects to the definition of "Employee" (Definition No. 5) on the grounds

4    that it calls for a legal conclusion and is otherwise vague, ambiguous, and overly broad. Irico

5    further objects to this definition to the extent that it attempts to impose burdens on Irico beyond

6    those imposed by the Federal Rules of Civil Procedure. Irico further objects to this definition to

7    the extent that it seeks information protected by the attorney client or other applicable privilege,

8    attorney work product doctrine, or otherwise seeks to violate rights of privacy under U.S. or

9    foreign law.

10           4.      Irico objects to the definitions of "CRT" and "CRT Product" (Definition No. 6) on

11   the grounds that they are vague, ambiguous and overly broad. Irico further objects to the use of

12   the term "CRT Products" to the extent that it is inconsistent with the definition of "CRT

13   Products" as set forth in Plaintiff's pleadings.

14           5.      Irico objects to the definition of the "Relevant Time Period" (Definition No. 7) as

15   overbroad, unduly burdensome, and beyond the applicable statute of limitations.

16           6.      Irico objects to the definition of "Communication" (Definition No. 8) on the

17   grounds that it is vague, ambiguous, and overly broad. Irico further objects to this definition to the

18   extent that it attempts to impose burdens on Irico beyond those imposed by the Federal Rules of

19   Civil Procedure.

20           7.      Irico objects to the definition of "Meeting" (Definition No. 10) on the grounds that

21   the definition is overly broad, unduly burdensome, and seeks information that is neither relevant

22   nor proportionate to the needs of the case.

23           8.      Irico objects to Instruction No. 1 (related to identification of persons) to the extent

24   that it purports to impose burdens or obligations broader than, inconsistent with, or not authorized

25   under the Federal Rules of Civil Procedure, including, without limiting the generality of the

26   foregoing, Rule 26(b)(5)(A) and Rule 26(e)(1). Irico further objects to this Instruction to the

27   extent that it purports to impose burdens or obligations broader than, inconsistent with, or not

28   authorized under, the Local Rules and any orders of the Court, and on the grounds that it is vague,

ambiguous, and inconsistent with common usage. Irico further objects to this Instruction to the extent it seeks information that would disclose personal confidential information and/or violate any and all rights of privacy under the United States Constitution or Article I of the Constitution of the State of California, or any other applicable law or state constitution, or that is otherwise prohibited from disclosure because to do so would cause Irico to violate legal and/or contractual obligations to any other persons or entities.

9.      Irico objects to Instruction No. 2 (related to identification of an entity other than a natural person) to the extent that it purports to impose burdens or obligations broader than, inconsistent with, or not authorized under the Federal Rules of Civil Procedure or other applicable rule or Order of this Court.

10.     Irico objects to Instruction No. 3 (related to the production of business records in response to an interrogatory pursuant to Federal Rule of Civil Procedure 33(d)) on the grounds that it is unduly burdensome and purports to impose burdens and obligations upon Irico beyond those required by the Federal Rules of Civil Procedure or other applicable rule or Order of this Court.

## SPECIFIC RESPONSES AND OBJECTIONS TO INTERROGATORIES
## INTERROGATORY NO. 5

Identify any meeting or communication between You and other producers of CRT and/or CRT Products during the Relevant Time Period, including the named Defendants in this coordinated proceeding, regarding CRT and/or CRT Product pricing, price increase announcements, terms or conditions of sales, profit margins or market share, production levels, inventory, customers, auctions, reverse auctions, dynamic bidding events, or sales, and for each such meeting or communication:

(a)      provide the date and location of the meeting or communication;

(b)      identify the person(s) who initiated, called, organized, attended or participated in the meeting or communication;

(c)      describe the subject matter discussed and any information you provided or received;

1        (d)     describe every action taken by you as a result of the meeting or communication;

2  and

3        (e)     identify all persons with knowledge relating to the meeting or communication.

**RESPONSE TO INTERROGATORY NO. 5**

Irico reasserts and incorporates each of the General Objections and Objections to the Definitions and Instructions set forth above.  Irico also objects that this interrogatory is duplicative and cumulative of other requests served on Irico, including during jurisdictional discovery.

Subject to and without waiving the objections stated above, Irico responds that it has already provided information responsive to this interrogatory to Plaintiff in its responses to jurisdictional discovery, including Irico's response to Request No. 10 of Direct Purchaser Plaintiff Studio Spectrum, Inc's First Set of Requests for Production.  Irico will conduct a reasonable search for additional information responsive to this interrogatory, if any, and supplement its response as necessary.

**FIRST SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 5**

Irico reasserts and incorporates each of the General Objections, Objections to the Definitions and Instructions, and specific objections to Interrogatory No. 5 set forth above. Irico also objects to this interrogatory to the extent it purports to require Irico to respond beyond the scope of the modification to Interrogatory No. 5 removing CRT Products from the scope of this interrogatory, as stated in the February 5, 2021 letter from R. Alexander Saveri to John Taladay.

Subject to and without waiving the foregoing objections, Irico states as follows: Wang Zhaojie identifies the following meetings or communications with other producers of CRTs:

- November 6, 1998 meeting in Xi'an, People's Republic of China to discuss China CDT market information attended by Wang Zhaojie.

- April 2, 1999 meeting in Nanjing, People's Republic of China to discuss China CDT market information attended by Wang Zhaojie.

- April 6, 2000 meeting in Xiamen, People's Republic of China to discuss China CDT market information attended by Wang Zhaojie.

IRICO'S THIRD SUPP. OBJECTIONS AND      7        Master File No. 4:07-cv-05944-JST
RESPONSES TO DPP'S FIRST SET                           MDL No. 1917
INTERROGATORIES

1          • A meeting taking place on an unknown date at a SEG Hitachi factory in Shenzhen,

2          People's Republic of China, attended by Wang Zhaojie.

3        Wang Zhaojie believes that he may have attended additional meetings with other

4 producers of CRTs between 1998-2000, but he cannot recall the specifics of those meetings.

5 Such meetings may have occurred in Beijing and Changsha, People's Republic of China.  Wang

6 Zhaojie did not attend any meetings outside of China.  Wang Zhaojie believes he met with one or

7 more representatives of the following Chinese CRT producers: Shenzhen or Tianjin Samsung

8 SDI, Shanghai Yongxin, Changsha LG, Fuzhou Chunghwa, Beijing Matsushita, Shenzhen SEG

9 Hitachi, and/or Dongguan Fudi.  He could not recall the specific entities that participated in each

10 individual meeting.  Wang Zhaojie could not recall the names of the individual(s) from the

11 various entities who attended each meeting, but believes the various attendees included Wong

12 Lian (Changsha LG), Yang Guojun (Shenzhen SEG Hitachi), Li Mingzhi (either Shenzhen or

13 Tianjin Samsung SDI), and/or J.S. Lu (Fuzhou Chunghwa).  The subject matter of these

14 communications and meetings involved information on Chinese CRT issues and market

15 conditions.  Irico believes these meetings were largely connected to the China CPT Industry

16 Association.

17        In addition, Su Xiaohua, then the Deputy General Manager for Planning in the Irico Sales

18 Company, recalls attending an event, with an unknown Irico employee, hosted by Skyworth, a

19 Chinese television manufacturer and customer of Irico, at which he interacted with other CRT

20 manufacturers.  This event was organized by Skyworth and involved companies from throughout

21 Skyworth's supply chain, not just CRT manufacturers.  Irico is not aware of any discussions with

22 other CRT manufacturers at this meeting regarding pricing, price increase announcements, terms

23 or conditions of sales, profit margins or market share, production levels, inventory, other

24 customers, auctions, reverse auctions, dynamic bidding events, or sales.

25        Irico continues to conduct a reasonable search for information responsive to Interrogatory

26 No. 5 as reflected in the March 31, 2021 Special Master's Order re DPPs' Motion to Compel

27 Responses to Interrogatory Nos. 4 & 5, ECF No. 5919. Irico will provide an additional

28 supplemental response by May 10, 2021.

IRICO'S THIRD SUPP. OBJECTIONS AND       8       Master File No. 4:07-cv-05944-JST
RESPONSES TO DPP'S FIRST SET                  MDL No. 1917
INTERROGATORIES

1  **SECOND SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 5**

2       Irico reasserts and incorporates each of the General Objections, Objections to the

3  Definitions and Instructions, and specific objections to Interrogatory No. 5 set forth above.

4       Subject to and without waiving the foregoing objections, Irico states as follows: Wang

5  Ximin believes that he attended no more than a few meetings with other producers of CRTs

6  during the relevant period but cannot recall the specifics of those meetings.  Such meetings may

7  have occurred in Xianyang or Dongguan, People's Republic of China.  Wang Ximin did not

8  attend any meetings outside of China.  Wang Ximin believes he met with one or more

9  representatives of the following Chinese CRT producers during these few meetings but cannot

10  recall specifically: Shenzhen Samsung SDI, Shanghai Yongxin, Changsha LG, Fuzhou

11  Chunghwa, Beijing Matsushita, Shenzhen SEG Hitachi, Nanjing LG Philips and/or Dongguan

12  Fudi. Wang Ximin could not recall the names of the individual(s) from the various entities who

13  attended each meeting or who attended each of the few meetings, but he believes the various

14  attendees would have included Yang Guojun (SEG Hitachi), Zhu Danlin (Shanghai Yongxin),

15  Fang Wenqiang (Beijing Matsushita), Qian Xiaolan (Dongguan Fudi), and/or Yang Xiangjie

16  (Fuzhou Chunghwa).  Wang Ximin also believes he may have spoken with some of these

17  representatives of other Chinese CRT producers by phone on a few occasions during the relevant

18  period but cannot recall the specifics of any such phone calls.  The subject matter of these

19  communications and meetings involved information on Chinese CRT issues and market

20  conditions.  Irico believes these meetings were largely connected to the China CPT Industry

21  Association.

22

23  Dated:  May 10, 2021             BAKER BOTTS L.L.P.

24

25                     */s/ John M. Taladay*

26                     John M. Taladay (*pro hac vice*)
   Evan J. Werbel (*pro hac vice*)

27                     Thomas E. Carter (*pro hac vice*)
   Andrew L. Lucarelli (*pro hac vice*)

28                     700 K Street, N.W.

IRICO'S THIRD SUPP. OBJECTIONS AND      9      Master File No. 4:07-cv-05944-JST
RESPONSES TO DPP'S FIRST SET                          MDL No. 1917
INTERROGATORIES

1    Washington, D.C. 20001
     (202)-639-7700
2    (202)-639-7890 (fax)
     Email: john.taladay@bakerbotts.com
3            evan.werbel@bakerbotts.com
             tom.carter@bakerbotts.com
4            drew.lucarelli@bakerbotts.com

5    Jonathan Shapiro (State Bar No. 257199)
     101 California Street, Suite 3600
6    San Francisco, California 94111
     (415) 291-6200
7    (415) 291-6300 (fax)
     Email: jonathan.shapiro@bakerbotts.com

8

9    *Attorneys for Defendants*
     *IRICO GROUP CORP. and*
10   *IRICO DISPLAY DEVICES CO., LTD.*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# <u>CERTIFICATE OF SERVICE</u>

**In re: Cathode Ray Tube (CRT) Antitrust Litigation - MDL No. 1917**

I declare that I am employed in Washington, District of Columbia.  I am over the age of eighteen years and not a party to the within case; my business address is:  Baker Botts L.L.P., 700 K Street, N.W., Washington, D.C. 20001.

On May 10, 2021, I served the following document(s) described as:

**IRICO DEFENDANTS' SECOND SUPPLEMENTAL OBJECTIONS
AND RESPONSES TO DIRECT PURCHASER
PLAINTIFFS' FIRST SET OF INTERROGATORIES**

on the following interested parties in this action:

| | |
|---|---|
| Guido Saveri (guido@saveri.com)<br>R. Alexander Saveri (rick@saveri.com)<br>Geoffrey C. Rushing (grushing@saveri.com)<br>Matthew D. Heaphy (mheaphy@saveri.com)<br>SAVERI & SAVERI, INC.<br>706 Sansome St # 200<br>San Francisco, CA 94111 | Mario N. Alioto (malioto@tatp.com)<br>Lauren C. Capurro (laurenrussell@tatp.com)<br>TRUMP ALIOTO TRUMP & PRESCOTT LLP<br>2280 Union Street<br>San Francisco, CA 94123 |
| *Lead Counsel for the Direct Purchaser<br>Plaintiffs* | *Lead Counsel for the Indirect Purchaser<br>Plaintiffs* |

Joseph Goldberg (jg@fbdlaw.com)
FREEDMAN BOYD HOLLANDER
GOLDBERG URIAS & WARD P.A.
20 First Plaza, Suite 700
Albuquerque, NM 87102
D (505) 305-1263

*Counsel for the Indirect Purchaser
Plaintiffs*

[X]     (BY ELECTRONIC MAIL) I caused such documents to be sent to the persons at the email addressed listed above.  I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

I declare under penalty of perjury under the laws of the District of Columbia that the foregoing is true and correct.  Executed on May 10, 2021, in Washington, D.C.

*/s/ Thomas E. Carter*
Thomas E. Carter