R. Alexander Saveri (173102)
   *rick@saveri.com*
Geoffrey C. Rushing (126910)
   *grushing@saveri.com*
Matthew D. Heaphy (227224)
   *mheaphy@saveri.com*
David Y. Hwu (281780)
   *dhwu@saveri.com*
SAVERI & SAVERI, INC.
706 Sansome Street
San Francisco, California 94111
Telephone: (415) 217-6810
Facsimile: (415) 217-6813

*Lead Counsel for Direct Purchaser Plaintiffs*

MARIO N. ALIOTO (56433)
LAUREN C. CAPURRO (241151)
TRUMP, ALIOTO, TRUMP & PRESCOTT, LLP
2001 Union Street, Suite 482
San Francisco, CA 94123
Telephone: (415) 563-7200
Facsimile: (415) 346-0679
E-mail: malioto@tatp.com
         laurenrussell@tatp.com

*Lead Counsel for the Indirect Purchaser Plaintiffs*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Master File No. 07-CV-5944-JST |
| | MDL No. 1917 |
| This Document Relates to: | **DIRECT PURCHASER PLAINTIFFS' AND INDIRECT PURCHASER PLAINTIFFS' RESPONSE TO DEFENDANTS IRICO GROUP CORP. AND IRICO DISPLAY DEVICES CO., LTD.'S OBJECTIONS TO SPECIAL MASTER'S REPORT & RECOMMENDATION ON PLAINTIFFS' MOTION FOR TERMINATING SANCTIONS** |
| *ALL DIRECT PURCHASER ACTIONS* | |
| *ALL INDIRECT PURCHASER ACTIONS* | |
| | Date:   September 5, 2024 |
| | Time:   2:00 p.m. |
| | Judge:  Hon. Jon S. Tigar |
| | Ctrm:   6, 2nd Floor (via Zoom) |

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................. i

TABLE OF AUTHORITIES ...................................................................................... iii

INTRODUCTION .......................................................................................................... 1

THE R&R ...................................................................................................................... 3

    I.   Irico Intentionally Failed To Implement A Litigation Hold And Destroyed Virtually All Evidence Relating To Its Participation In The Alleged Conspiracy ...................................... 3

    II.  Irico Improperly Withdrew From The Case And Induced The Court To Lift The Default Based On False Statements ..................................................................... 4

    III. Irico Lied About Mr. Su's "Resignation" To Justify Failing To Produce Him For Deposition In Violation Of Court Orders .......................................................... 5

    IV. The R&R Recommends Terminating Sanctions ................................................. 8

STANDARD OF REVIEW ........................................................................................... 8

ARGUMENT .................................................................................................................. 9

    I.   The R&R Correctly Finds That Irico Intentionally Failed to Implement A Litigation Hold And Destroyed Virtually All Relevant Evidence In Violation Of A Court Order ................ 9

        A.  Irico Deliberately Defied Its Counsel's Instructions And Failed To Implement A Litigation Hold ................................................................... 9

        B.  Irico Has Intentionally Spoliated Entire Categories Of Critical Evidence .................... 13

    II.  The R&R Correctly Found That Irico Made False Statements About Its Culpability To Induce The Court To Set Aside Its Prior Default .................................................... 16

        A.  Yan's Testimony Is Sufficient To Support The Special Master's Finding That Irico Lied To The Court .................................................................... 16

        B.  The R&R Properly Considered The "Yan Document" ................................................. 17

        C.  Irico's Misrepresentations To The Court Support Terminating Sanctions ................... 18

    III. The R&R Correctly Found That Irico Acted In Bad Faith In Failing To Produce Su Xiaohua For Deposition And Violated Multiple Court Orders ........................................... 19

        A.  Substantial Evidence Supports The R&R's Finding That Irico Intentionally Violated Two Court Orders In Failing To Produce Mr. Su .......................................... 20

           1.  Irico Granted Mr. Su Early Retirement To Avoid Being Deposed ......................... 20

           2.  Mr. Su Continued To Work For Irico After May 25, 2022 ................................... 22

        B.  Irico Intentionally Violated Two Additional Court Orders Relating To Mr. Su ........... 24

i

IV. The R&R Correctly Found Terminating Sanctions Are Warranted Given Irico's Bad Faith, Intentional Misconduct In Violation Of Multiple Court Orders ........................................... 25

    A.  The R&R's Legal Analysis Is Correct ............................................................................ 25

    B.  The R&R's Findings Establish Irico's Intent And Bad Faith .......................................... 27

    C.  The *Anheuser-Busch* Factors Support Terminating Sanctions ..................................... 28

        1.  The First Two Factors Strongly Favor Default ......................................... 28

        2.  The Risk Of Prejudice Strongly Favors Default ....................................... 28

        3.  The Availability Of Less Drastic Sanctions ............................................ 32

    D.  A Trial On Damages, Or Irico's Defenses, Is Not Required Or Appropriate ................ 35

CONCLUSION ................................................................................................................................. 35

ii

PLS.' RESP. TO IRICO DEFS.' OBJS. TO SPECIAL MASTER'S R&R ON PLS.' MOT. FOR TERMINATING SANCTIONS; Master File No. 07-CV-5944-JST

# TABLE OF AUTHORITIES

## CASES

*Adriana Int'l Corp. v. Thoeren,*
    913 F.2d 1406 (9th Cir. 1990) ........................................................................ 26, 28, 35

*AdvantaCare Health Partners v. Access IV,*
    No. C 03-04496 JF, 2004 WL 1837997 (N.D. Cal. Aug. 17, 2004) ......................... 34

*Al Otro Lado v. Wolf,*
    No. 3:17-cv-02366-BAS-KSC, 2021 WL 631789 (S.D. Cal. Feb. 18, 2021) ), *report and recommendation adopted sub nom. Al Otro Lado, Inc. v. Mayorkas*, No. 19-CV-01344-BAS-MSB, 2021 WL 1170212 (S.D. Cal. Mar. 29, 2021) ......................................... 34

*Am. Career Coll. Inc. v. Medina,*
    673 F. Supp. 3d 1139 (C.D. Cal. 2023) .................................................................. 27

*Anheuser-Busch, Inc. v. Nat. Beverage Distributors,*
    69 F.3d 337 (9th Cir. 1995) ........................................ 18, 19, 25, 26, 28, 31, 33, 35

*Apple Inc. v. Samsung Elecs. Co.,*
    888 F. Supp. 2d 976 (N.D. Cal. 2012) ..................................................................... 34

*Beijing Choice Elec. Tech. Co. v. Contec Med. Sys. USA Inc.,*
    No. 18-CV-0825, 2021 WL 9184385 (N.D. Ill. Dec. 17, 2021), *report and recommendation adopted*, No. 18-CV-0825, 2022 WL 3053550 (N.D. Ill. May 12, 2022) ...................................................................................................................... 22

*Bruser v. Bank of Hawaii,*
    No. CV 14-00387 LEK-WRP, 2020 WL 4043316 (D. Haw. July 17, 2020) ............... 8

*Cardinal v. Lupo,*
    No. 18-cv-00272-JCS, 2019 WL 4450859 (N.D. Cal. Sept. 17, 2019) ..................... 15

*Chith v. Haynes,*
    No. C18-5342 BHS, 2021 WL 4744596 (W.D. Wash. Oct. 12, 2021) ........................ 8

*Computer Task Grp., Inc. v. Brotby,*
    364 F.3d 1112 (9th Cir. 2004) ................................................................................. 27

*Connecticut Gen. Life Ins. Co. v. New Images of Beverly Hills,*
    482 F.3d 1091 (9th Cir. 2007) ........................................................................... 31, 35

*Dreith v. Nu Image, Inc.,*
    648 F.3d 779 (9th Cir. 2011) ................................................................................... 26

*Facebook, Inc. v. OnlineNIC Inc.,*
    No. 19-CV-07071-SI, 2022 WL 17371092 (N.D. Cal. Oct. 17, 2022) ........................ 8

*Fair Hous. of Marin v. Combs,*
    285 F.3d 899 (9th Cir. 2002) ................................................................................... 27

*Fjelstadt v. Am. Honda Motor Co.,*
    762 F.2d 1334 (9th Cir. 1985) ........................................................................... 19, 34

iii

PLS.' RESP. TO IRICO DEFS.' OBJS. TO SPECIAL MASTER'S R&R ON PLS.' MOT. FOR TERMINATING
SANCTIONS; Master File No. 07-CV-5944-JST

*Google LLC v. Starovikov*,
    No. 21CV10260 (DLC), 2022 WL 16948296 (S.D.N.Y. Nov. 15, 2022),
    *reconsideration denied*, No. 21CV10260 (DLC), 2022 WL 17414352 (S.D.N.Y. Dec. 5,
    2022) ........................................................................................................................... 19

*Hester v. Vision Airlines, Inc.*,
    687 F.3d 1162 (9th Cir. 2012) .............................................................................. 32, 33

*In re Google Play Store Antitrust Litig.*,
    664 F. Supp. 3d 981 (N.D. Cal. 2023) ......................................................................... 34

*In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*,
    460 F.3d 1217 (9th Cir. 2006) ..................................................................................... 26

*In re: Cathode Ray Tube (Crt) Antitrust Litig.*,
    No. C-07-5944 JST, 2016 WL 945981 (N.D. Cal. Mar. 14, 2016) ................................ 9

*Internmatch, Inc. v. Nxtbigthing, LLC*,
    No. 14-CV-05438-JST, 2016 WL 491483 (N.D. Cal. Feb. 8, 2016), *vacated on other
    grounds*, No. 14-CV-05438-JST, 2017 WL 8944065 (N.D. Cal. Nov. 17, 2017) .................... 13

*Jones v. Riot Hosp. Grp. LLC*,
    95 F.4th 730 (9th Cir. 2024) ...................................................................... 26, 27, 30, 32

*McCulloch v. Tharratt*,
    No. 16CV457-LAB (DHB), 2017 WL 6398611 (S.D. Cal. Dec. 15, 2017) ..................... 8

*Micron Tech., Inc. v. Rambus Inc.*,
    645 F.3d 1311 (Fed. Cir. 2011) .................................................................................... 29

*Nat'l Hockey League v. Metro. Hockey Club, Inc.*,
    427 U.S. 639 (1976) ..................................................................................................... 33

*Nursing Home Pension Fund v. Oracle Corp.*,
    254 F.R.D. 559 (N.D. Cal. 2008) ................................................................................. 34

*Perez v. U.S. Postal Serv.*,
    No. C12-00315 RSM, 2014 WL 10726125 (W.D. Wash. July 30, 2014) ..................... 29

*Phoceene Sous-Marine, S.A. v. U.S. Phosmarine, Inc.*,
    682 F.2d 802 (9th Cir. 1982) ....................................................................................... 19

*Reinsdorf v. Skechers U.S.A., Inc.*,
    296 F.R.D. 604 (C.D. Cal. 2013) ................................................................................. 34

*Ruelas v. Alameda Cnty.*,
    No. 19-CV-07637-JST, 2023 WL 8173675 (N.D. Cal. Apr. 14, 2023) ..................... 27, 30

*Rundquist v. Vapiano SE*,
    277 F.R.D. 205 (D.D.C. 2011) ..................................................................................... 23

*Sali v. Corona Reg'l Med. Ctr.*,
    884 F.3d 1218 (9th Cir. 2018) ................................................................................ 20, 23

*Shenzhenshi Haitiecheng Sci. & Tech. Co. v. Rearden LLC*,
    No. 15-CV-00797-JST, 2016 WL 5930289 (N.D. Cal. Oct. 11, 2016) ......................... 35

iv

*Transamerica Life Ins. Co. v. Arutyunyan*,
  93 F.4th 1136 (9th Cir. 2024)........................................................... 26, 28, 30, 32

*U.S. for Use & Ben. Of Wiltec Guam, Inc. v. Kahaluu Const. Co.*,
  857 F.2d 600 (9th Cir. 1988)........................................................................ 19

*United States v. Sanmina Corp.*,
  968 F.3d 1107 (9th Cir. 2020)...................................................................... 18

*Valley Engineers Inc. v. Elec. Eng'g Co.*,
  158 F.3d 1051 (9th Cir. 1998)...................................................................... 35

*Walker v. Carnival Cruise Lines*,
  107 F. Supp. 2d 1135 (N.D. Cal. 2000)....................................................... 17

*Ward v. Maritz Inc.*,
  156 F.R.D. 592 (D.N.J. 1994) ...................................................................... 18

*WeRide Corp. v. Kun Huang*,
  No. 5:18-CV-07233-EJD, 2020 WL 1967209 (N.D. Cal. Apr. 24, 2020) .................... 13, 27, 28

## **RULES**

Civil Local Rule 72-3 ........................................................................................ 9

Rule 35(a) , Federal Rules of Civil Procedure ................................................. 20

Rule 37(b), Federal Rules of Civil Procedure .................................... 20, 25, 35

Rule 37(e), Federal Rules of Civil Procedure .................................... 26, 27, 32

Rule 37, Federal Rules of Civil Procedure ......................................... 26, 27

Rule 54(b), Federal Rules of Civil Procedure ................................................. 17

Rule 55(b), Federal Rules of Civil Procedure ................................................. 35

Rule 72(b), Federal Rules of Civil Procedure ................................................. 8

Direct Purchaser Plaintiffs ("DPPs") and Indirect Purchaser Plaintiffs ("IPPs") (together, "Plaintiffs") respond to Irico Group Corporation and Irico Display Devices Co., Ltd.'s ("Irico") Objections to the Report & Recommendation on Plaintiffs' Motion for Terminating Sanctions (ECF No. 6389) ("Objection" or "Obj.").

## INTRODUCTION

The Report and Recommendation on Plaintiffs' Motion for Terminating Sanctions (ECF No. 6382) ("R&R") recommends that the Court impose terminating sanctions based on Irico's serious and pervasive misconduct throughout this case: "The relief plaintiffs seek is extraordinary. No less extraordinary are the facts and circumstances giving rise to plaintiffs' motion." R&R at 2.

While Irico's extraordinary misconduct has been documented in previous Court Orders, the R&R paints a devastating picture. First, in 2008, in direct violation of the Court's Pre-Trial Order Number One ("PTO No. 1") and established law, Irico—through a Litigation Committee comprised mostly of senior executives who participated in conspiracy meetings—chose not to issue a litigation hold or take any steps to search for or preserve relevant documents, directly defying its experienced attorneys' clear and repeated instructions. As a result, Irico destroyed virtually all documents and electronic material relating to the conspiracy, its pricing, production and sales to the United States.

Second, the Litigation Committee fired Irico's lawyers and abandoned its duty to defend the case, not because it believed Irico was immune as it claimed in 2017, but because it believed it would gain a tactical advantage by litigating separately from the other defendants. This "malign strategy" (R&R at 8) further ensured that all relevant documents would be destroyed, and virtually all of those who attended conspiracy meetings on Irico's behalf would have left its employ, rendering them unavailable for deposition. When Irico returned to the litigation in 2017, its goals had been achieved.

Third, Irico resumed its dishonest and contemptuous conduct. It induced the Court to lift the default against it by lying about why it abandoned the case, falsely claiming it did so because it believed it was immune. Next, Irico falsely insisted that its failure to preserve documents was the innocent result of a good faith misunderstanding of its obligations. Then, it fought to prevent the depositions of the few remaining personnel who participated in the alleged conspiracy. After many months of negotiations and multiple Orders requiring Irico to produce Su Xiaohua—one of only two

1

remaining employees who attended competitor meetings—it failed to do so, falsely claiming he had suddenly retired and was beyond Irico's control.

Finally, after years of work by Plaintiffs and the Court, the truth about Irico's dishonest conduct came to light:

- In September 2022, Irico General Counsel Yan Yunlong, a member of the Litigation Committee, testified that Irico's 2008 abandonment of the case was a tactical maneuver designed to obtain litigation advantage—*i.e.*, not due to a belief in its immunity. Mr. Yan also disclosed the existence of a long-concealed document (the "Yan Document") confirming that Irico had lied to the Court.

- In January 2023, after over a year of motion practice, the Court ordered Irico to produce its communications with its counsel Pillsbury Winthrop Shaw Pittman LLP ("Pillsbury") regarding document preservation. These unequivocally showed that Irico's claims of good faith misunderstanding were false. Pillsbury had provided repeated and clear verbal and written instructions to preserve documents; drafted and translated a litigation hold notice; and had emphasized that failure to preserve documents would have dire consequences.

- In October 2023, after Irico had falsely claimed to have produced all documents relating to Mr. Su's purported retirement, Irico produced additional documents (pursuant to Court order) showing that its claims that Mr. Su had suddenly and unexpectedly retired and no longer had any relationship with Irico were false. In truth, Mr. Su remained a senior Irico manager through the summer of 2022 and continued to work for and be paid by Irico long afterwards, and his purported sudden "retirement" had been engineered by senior management months before Irico informed the Court of his refusal to appear.

Irico's Objection fails to meaningfully address the R&R's findings, much less provide a reason to reject them. Irico's main position is straight-up denial. It claims it did nothing wrong and essentially continues its campaign of deception. But the R&R's findings of Irico's extensive intentional misconduct are well-supported. Irico cannot take meaningful issue with the core facts—namely, that it deliberately destroyed documents, abandoned the case, failed to produce a key witness, repeatedly misled the Court, and violated multiple Court Orders. Irico's feeble claims of mistake are contrary to the evidence, were litigated extensively below, and were emphatically rejected.

Irico's second line of defense is to claim "no harm, no foul." But again, its assertion that few relevant documents existed when its preservation obligations commenced, and that Mr. Su had no significant information, is contrary to the evidence. Irico admits that it performed no search for documents in 2008 and so cannot have any idea what existed in the files of its 14,000 employees. Similarly, the Court already found that Mr. Su—a senior sales executive who met with competitors and was identified by Irico as one of only two people with knowledge of those meetings—was an

2

essential witness. The R&R's finding that Irico's intentional failure to preserve documents and withhold witnesses resulted in massive document destruction and loss of testimony is unassailable.

Finally, Irico's claim that terminating sanctions are inappropriate because its co-conspirators produced evidence of its participation in the conspiracy is also baseless and cynical. Irico intends to present a vigorous defense at trial as to both liability and damages. It will falsely claim that it never agreed to fix prices or reduce production and went to meetings and charged the prices it charged because it was compelled to do so by the Chinese government. It will falsely claim it is an inexperienced small player in a distant market who never sold to the U.S. Yet every aspect of its defense is made possible only because of the absence of the documents and testimony Irico wrongfully destroyed. It is indisputable that if Irico's defenses were to succeed to any meaningful degree, it would be a grave injustice and Irico would have profited through its extraordinary wrongdoing.

In sum, the record compels the conclusion that the Special Master's thoughtful and considered recommendation of terminating sanctions is correct. The Court should adopt the R&R in full.

## THE R&R

### I. Irico Intentionally Failed To Implement A Litigation Hold And Destroyed Virtually All Evidence Relating To Its Participation In The Alleged Conspiracy

First, the Special Master found that Irico intentionally failed—directly contrary to PTO No. 1 and the "detailed, written advice of its counsel"—to collect and preserve all potentially relevant evidence, including evidence of its participation in the conspiracy, and its production, sales, and pricing records. R&R at 29, 33, 62. General Counsel Yan admitted Irico conducted no investigation, and neither searched for nor preserved any relevant documents. *Id.* at 27–28. Irico also admitted in interrogatory responses that it failed to issue a litigation hold or preserve any documents. *Id.* at 29.

The R&R rejects Irico's claim that it misunderstood the requirements of American litigation as "false." *Id.* at 30. The decision was made by a "Litigation Committee" comprised primarily of those who participated in the conspiracy for Irico with knowledge of Pillsbury's advice and PTO No. 1. *Id.* at 24. Pillsbury's advice was clear and communicated repeatedly. It included emails and memoranda regarding the types of documents to search for and preserve and questions to ask personnel, a proposed "hold notice" and a Chinese translation of PTO No. 1. *Id. at* 19-30. There were also verbal

3

PLS.' RESP. TO IRICO DEFS.' OBJS. TO SPECIAL MASTER'S R&R ON PLS.' MOT. FOR TERMINATING SANCTIONS; Master File No. 07-CV-5944-JST

communications with Pillsbury which Mr. Yan explained to the Committee. *Id.* at 22–26. Irico also represented to Pillsbury that it was complying with its advice. *Id.* at 19 n.24; *see also id.* at 21.

The R&R finds "the Pillsbury communications revealed Irico had no basis for claiming that from 2008 onward, it misunderstood its duty to preserve potentially relevant documents[.]" *Id.* at 29. The R&R also rejects Irico's attempted disavowal of its damning admissions in late 2022: "Irico's blatant attempt to change its discovery responses and Yan Yunlong's sworn deposition testimony [are] disrespectful of the court and the integrity of these proceedings." *Id.* at 30.

The R&R finds that Irico spoliated massive amounts of relevant evidence. Irico produced only 33,462 pages compared to 598,701 pages produced by "a smaller Chinese CRT manufacturer." *Id.* at 38. Irico "failed to produce entire categories of relevant documents," including no emails, no electronic or hard copy documents from employee files, "virtually no documents" relating to competitor meetings, no customer correspondence or sales contracts, "no weekly or monthly sales and marketing reports that Irico admitted generating on a regular basis," no production reports, and "virtually no" documents reflecting how Irico set its prices. *Id.* at 38–39. "Irico's failure to preserve and spoliation of ESI and other information, as well as its long absence from this litigation, has resulted in loss of virtually all relevant documents bearing on the claims at issue." *Id.* at 39; *id.* at 33 (Irico admits "sales reports containing CRT market information, CRT sales contracts, correspondence with customers regarding CRT sales and handwritten working notes by individual employees" likely existed but not preserved); *id.* at 63 (documents admittedly destroyed were "highly relevant").

Irico also admits that it did nothing to preserve electronically stored information: no searches were performed, no backup copies or "mirror images" of such data were made; auto delete functions were not disabled; electronic data were routinely "overwritten"; and employee computers were routinely "wiped" or discarded. R&R at 54–55. The R&R also finds that Irico failed to support its claims that its email and electronic systems were rudimentary and little used. *Id.* at 65.

## II.    Irico Improperly Withdrew From The Case And Induced The Court To Lift The Default Based On False Statements

The R&R also finds that Irico improperly abandoned the case in 2008, returning only when DPPs filed a motion for a default judgment. R&R at 33–35. Then, by falsely representing its reasons

4

PLS.' RESP. TO IRICO DEFS.' OBJS. TO SPECIAL MASTER'S R&R ON PLS.' MOT. FOR TERMINATING SANCTIONS; Master File No. 07-CV-5944-JST

for abandoning the case, it induced the Court to lift the default. *Id.* at 36–37, 67–68.

Based on Mr. Yan's testimony, the R&R finds that Irico's "abandonment" of the case was tactical. *Id.* at 3. Irico believed it would be to its advantage to wait to defend the case until it had been resolved against the other defendants. *See id.* at 3–7. And, in fact, Irico did obtain an advantage via this "malign strategy." *Id.* at 8. "The litigation proceeded against the other defendants while the evidence of Irico's participation in the conspiracy grew stale and Irico's witnesses disappeared behind a veil of 'off duty and rest.'" *Id.* at 7–8.

Further, the R&R finds Irico's assertion that it abandoned the case because it believed it was immune was "a false representation to the Court." *Id.* at 36. This falsehood was an essential part of Irico's successful effort to lift the default because it was required to show that its failure to answer was not "culpable." *Id.* at 35–36 & n.94. Irico's deceit succeeded. *Id.* at 37; ECF No. 5240 at 18–19 (finding Irico not culpable).

The R&R also relies on the "Yan Document," drafted by Mr. Yan to memorialize the Litigation Committee's decision to abandon the case, R&R at 36 n.95, which confirms its finding. *Id.* at 67. Irico concealed the Yan Document until Mr. Yan revealed its existence at deposition in September 2022. *Id.* The Special Master recommends the Court reverse its prior ruling that the Yan Document was protected "work product" (*id.* at 67 n.162), because it is the only contemporaneous record of Irico's reasons for abandoning the case and contradicts Irico's representations to the Court. *Id.* at 67.

**III.    Irico Lied About Mr. Su's "Resignation" To Justify Failing To Produce Him For Deposition In Violation Of Court Orders**

The R&R finds that Irico (1) willfully failed to produce Mr. Su for deposition in violation of two Court orders; (2) misrepresented and concealed facts regarding his availability, his employment status and Irico's purported lack of authority over him; and (3) violated two more Court orders requiring it to produce documents along the way. R&R at 52–53, 68. When Irico finally produced the documents, its claimed inability to produce Mr. Su was exposed as a lie. *Id.* at 47–50.

Mr. Su held high-level positions during the class period, including Irico Group Sales Deputy Manager (April 2005 to March 2007). *Id.* at 39. He also met with competitors. *Id.* at 50; *see also* ECF No. 6101-1, Ex. A. Irico identified Mr. Su as one of only two remaining employees with knowledge

5

PLS.' RESP. TO IRICO DEFS.' OBJS. TO SPECIAL MASTER'S R&R ON PLS.' MOT. FOR TERMINATING SANCTIONS; Master File No. 07-CV-5944-JST

of Irico's participation in the alleged conspiracy. *Id.* at 39–40; *see also id.* at 53 (describing Wang Zhaojie, the only other witness who attended competitor meetings, as "extremely evasive").

After months of negotiations and multiple orders setting and extending the deadline for Mr. Su's deposition, the last order, entered on May 25, 2022, set a deadline of June 30, 2022. *Id.* at 40. However, "[o]n June 7, 2022, . . . Irico informed plaintiffs that Mr. Su had resigned and 'Irico has no ability to require Mr. Su to travel to Macau for the deposition.'" *Id.* at 41. On the June 30, 2022 deadline, Irico filed an "Emergency Motion" to excuse its failure to produce Mr. Su based on its (false) representation of his sudden resignation on May 25, 2022. *Id.* at 41. The Court denied the motion and ordered Irico to produce Mr. Su by September 9, 2022 or face "legal consequences." *Id.* After Mr. Su failed to appear, Irico claimed "it did not know in advance that Mr. Su planned to resign" and that it tried "to convince Mr. Su to reverse his decision." *Id.* at 43.

As a result of "Irico's failure to support with evidence its argument that Su Xiaohua was outside of Irico's control or has no ongoing relationship with Irico," the Court ordered Irico to produce "all documents" relating to Mr. Su's deposition, his "resignation," his employment status, his relationship with Irico or related companies, and Irico's control over him. *Id.* at 43; ECF No. 6115 ("Su Order") at 12–13. In response, Irico produced only 32 documents (141 pages), only two of which "shed[] light on when Irico first knew of Su's resignation . . . ." *Id.* at 43–44. One showed that on April 7, 2022, Irico's leadership approved his "request to leave his position 'ahead of schedule'"— two months before Irico notified Plaintiffs of Mr. Su's "surprise" retirement, and over a month before Irico obtained the May 25, 2022 extension of the deposition deadline. *Id.* at 44.

In opposition to Plaintiffs' sanctions motion, Irico doubled down on its false representations, asserting that Mr. Su "***resigned – months earlier than anticipated – and terminated all relationships with Irico. At that point, Mr. Su became a former employee outside of Irico's control, and Irico's determined efforts to convince him to appear for deposition were unavailing.***" *Id.* at 48 (emphasis in original). When the Special Master questioned Irico's counsel at the hearing, it became clear their assertions that all responsive documents had been produced were "based exclusively on asking Irico for such documents. . . ." *Id.* at 44. Counsel also continued to insist that Mr. Su's purported "resignation and departure on May 25, 2022" was a "huge surprise." *Id. See also* ECF No. 6264 at 7.

6

On August 4, 2023, the Special Master found that Irico's "curated" production had failed to comply with the Su Order and ordered another search under the direct supervision of lead counsel Baker Botts. R&R at 44–45. The Special Master warned Irico that "its continuing failure to comply with discovery orders risks terminating sanctions as well as less severe sanctions." *Id.* at 45. Consistent with its behavior from the start of this case, Irico disregarded this warning.

On August 29, 2023—just two days before its deadline, Irico informed the Special Master that it had "devised an alternative plan to have [Mr. Su's] laptop analyzed by unknown individuals with unknown qualifications." *Id.* at 46. The Court emphatically rejected Irico's "proposal," again warning that its repeated violations of Court orders risked terminating sanctions. *Id.* at 45; ECF No. 6324 at 6.

Irico finally produced additional documents responsive to the Su Order in late October 2023. R&R at 45. They proved that Irico's explanation for its failure to produce Mr. Su was false. "Irico willfully and in bad faith violated the Su Order (ECF 6115) and the First Interim Order (ECF 6264) with the intention of concealing the truth from the court and plaintiffs." *Id.* at 46. Irico's repeated assertions that Mr. Su had "retired" or "resigned" as of May 25, 2022 were false: "Su was not only employed by Irico past his scheduled deposition date in June of 2022, but he was within Irico's control." *Id.* at 49.[1] The R&R found that Mr. Su remained in his position until July 28, 2022, that he continued to work for Irico in September 2022, that he was a director for an affiliated company in August 2023, and that Irico considered Mr. Su to be "in-service" and continued to pay him a salary and bonuses until at least August 2023. *Id.* at 52, 53. As for Irico's purported "surprise" and "determined efforts" to convince Su to testify, the Special Master found that "Irico's top executives knew full well that they would allow Su to 'resign' early and had no intention of requiring him to be deposed" and that Irico did nothing to compel him to appear. *Id.* at 49–50. The R&R concludes: "Irico's bad faith misconduct deprived plaintiffs of the testimony of an important Irico witness whose testimony would have provided information regarding Irico's CRT sales and attendance at competitor

---

[1] Irico's senior leaders granted Mr. Su early approval to go "off-duty and rest"—and continue to be paid—a program for which he was not eligible until December 2022. *Id.* at 49. Moreover, Irico frequently delayed granting such requests for eligible executives. *See* Argument Section III.A.1, *infra*.

7

PLS.' RESP. TO IRICO DEFS.' OBJS. TO SPECIAL MASTER'S R&R ON PLS.' MOT. FOR TERMINATING SANCTIONS; Master File No. 07-CV-5944-JST

meetings during the class period, which go to the heart of the claims here." *Id.* at 50.[2]

## IV.  The R&R Recommends Terminating Sanctions

In accordance with its findings of Irico's wide-ranging misconduct, the R&R recommends the imposition of terminating sanctions (*id.* at 54):

> Irico's many delays, misrepresentations, and spoliation or concealment of relevant documents have frustrated the entire litigation process, to Irico's benefit. There are no Irico documents or witnesses available to shed light on Irico's participation in many meetings with competitors during the class period. The undersigned finds that given Irico's ongoing, systematic spoliation of documents, failures to search for relevant documents, misrepresentations to the court, unnecessary and inappropriate delays and repeated violations of court orders, Irico's litigation misconduct renders a fair trial in this case impossible.

## **STANDARD OF REVIEW**

Irico's multiple assertions that the R&R is entitled to "no deference" because it recommends "dispositive" sanctions is highly misleading. While the Court may reconsider and change any part of a report of a Special Master or Magistrate Judge, *de novo* review under Fed. R. Civ. P. 72(b)(3) is required only as to portions of the report "that ha[ve] been properly objected to." *See also Facebook, Inc. v. OnlineNIC Inc.*, No. 19-CV-07071-SI, 2022 WL 17371092, at *5 (N.D. Cal. Oct. 17, 2022).

Absent a proper objection, the District Court may simply accept the findings of the Special Master. *See, e.g., Bruser v. Bank of Hawaii*, No. CV 14-00387 LEK-WRP, 2020 WL 4043316, at *3 (D. Haw. July 17, 2020) ("Thus, an objection to findings 'without any analysis as to why [they are] inaccurate' is 'insufficient to trigger review of those findings.'") (alteration in original); *McCullock v. Tharratt*, No. 16CV457-LAB (DHB), 2017 WL 6398611, at *1 (S.D. Cal. Dec. 15, 2017) (rules "require specific written objections; generalized or blanket objections do not trigger the *de novo* review requirement") (citing Fed. R. Civ. P. 72(b)(2)). Courts may also reject objections that simply rehash arguments rejected by the Magistrate Judge because "[o]bjections to a[n] R&R are not a vehicle to relitigate the same arguments carefully considered and rejected by the Magistrate Judge." *Chith v. Haynes*, No. C18-5342 BHS, 2021 WL 4744596, at *1 (W.D. Wash. Oct. 12, 2021). The Court may also review such objections for "clear error." *Facebook*, 2022 WL 17371092, at *5.

---

[2] As the Court is aware, Irico's misconduct extends well beyond the above. *See, e.g.*, Su Order at 2–7 (describing behavior); AR Doc. 1 at 3–21 (same); AR Doc. 10 (same).

8

PLS.' RESP. TO IRICO DEFS.' OBJS. TO SPECIAL MASTER'S R&R ON PLS.' MOT. FOR TERMINATING SANCTIONS; Master File No. 07-CV-5944-JST

The Court may but need not consider arguments not presented to the Special Master. *In re: Cathode Ray Tube (Crt) Antitrust Litig.*, No. C-07-5944 JST, 2016 WL 945981, at *2 (N.D. Cal. Mar. 14, 2016) (considering new arguments defeats purpose of Special Master and should be done "rarely and cautiously"). Likewise, Civil L.R. 72-3(c) limits this Court's review to the record before the Special Master, unless the Court grants a motion to augment the record. *See* Civ. L.R. 72-3(c) (review "shall be upon the record of the proceedings before the Magistrate Judge"); ECF No. 2272 ¶ 6(c). The objecting party also must file the complete record. *Id.* ¶ 6(c) ("Failure to provide the record" grounds "to overrule the objection or deny the motion."). *See also* ECF No. 6093 at 2 (overruling objection).

Irico's Objection violates these requirements. In particular, Irico failed to file a motion to augment the record as required by Civil L.R. 72-3(b) despite making several new arguments (*see* Section II.B, *infra*; n.31) based on new evidence not in the record. In addition, Irico failed to submit the Yan Document. The R&R recommends reversing the Court's prior order and finding it discoverable. R&R at 67 n.162. Irico's failure to submit the Yan Document is grounds to overrule Irico's objection to the R&R's recommendation "because Irico failed to provide the necessary record for review." ECF No. 6093 at 2. The Court should overrule Irico's Objection on these grounds as well.

## ARGUMENT

**I.     The R&R Correctly Finds That Irico Intentionally Failed to Implement A Litigation Hold And Destroyed Virtually All Relevant Evidence In Violation Of A Court Order**

### A.  Irico Deliberately Defied Its Counsel's Instructions And Failed To Implement A Litigation Hold

First, the R&R's finding that Irico "fail[ed] to issue a written litigation hold to all key employees and fail[ed] to implement a litigation hold of appropriate scope to include global sales of Irico's CRTs" (R&R at 55) is indisputable. Irico admits it never implemented a litigation hold in 2008, and that it never searched for or preserved potentially relevant documents or electronic data. R&R at 22–24, 26–28; AR Doc. 3, Ex. E at 129, 138.[3] The only action it purports to have taken was an oral hold to preserve documents relating to U.S. sales *over eight months* after service of the complaint, and

---

[3] "AR Doc. ___" refers to individual numbered documents in the Appendix of Record Regarding Special Master's Report and Recommendation of Plaintiffs' Motion for Terminating Sanctions, ECF No. 6391, as well as redacted and sealed versions refiled at ECF Nos. 6401-1, 6401-2 and 6401-3.

9

PLS.' RESP. TO IRICO DEFS.' OBJS. TO SPECIAL MASTER'S R&R ON PLS.' MOT. FOR TERMINATING SANCTIONS; Master File No. 07-CV-5944-JST

six months after hiring counsel. R&R at 24; AR Doc. 3, Ex. E at 130, 136. But Irico admits no documents were preserved because, it claims, there were none. R&R at 24–25; AR Doc. 3, Ex. A at 6–7. Moreover, there is no evidence this purported oral hold was communicated to any of Irico's over 14,000 employees beyond the Litigation Committee. R&R at 24; AR Doc. 3, Ex. E at 129–30. Irico's Objection does not take material issue with any of the foregoing. *See, e.g.*, Obj. at 6.

Mr. Yan's attempt to change his testimony and Irico's revision of its interrogatory responses, which the Special Master correctly rejected (R&R at 25–26) do not help Irico. Even if Mr. Yan did provide Pillsbury's written communications to the Litigation Committee, there is no evidence they instructed anyone else to search for or preserve anything. Indeed, it paints the Litigation Committee members in a worse light—even with the full benefit of Pillsbury's instructions, they preserved *nothing* and failed to instruct others to do so. R&R at 24; AR Doc. 3, Ex. E at 138.

Second, the R&R's finding that Irico "intentionally, and in bad faith rejected its outside counsel's advice to preserve evidence [and] rejected the court's Pretrial Order No 1" is compelled by even a cursory review of Pillsbury's communications. R&R at 55–56 ("Irico's repeated claims of lack of understanding of United States discovery obligations are belied by the clear, written instructions of its counsel in 2008"). Beginning at least by February 15, 2008, Pillsbury explained Irico's obligations to preserve evidence in writing at least four times, three of which—February 15, 2008, June 23, 2008 and August 18, 2008—are in the record. R&R at 19–22.[4] The writings also show, and Mr. Yan confirmed, ongoing verbal communications. *See, e.g.*, AR Doc. 3, Ex. F at '012E ("[a]s we have discussed with Irico . . ."); *id.*, Ex. H at '022E ("[a]s stated on the phone . . ."); *id.*, Ex. E at 132–33.

Pillsbury repeatedly emphasized the importance of preserving documents. *See, e.g.*, AR Doc. 3, Ex. C at '001E (Feb. 15, 2008 email: "it is essential that Irico does not destroy or dispose of any potentially relevant documents, whether in paper, electronic or any other form"); *id.*, Ex. F (June 23, 2008 email enclosing PTO No. 1: "As we have discussed with Irico, this is an extremely important statutory requirement. If some potentially relevant information is lost or destroyed, this could have

---

[4] The August 7, 2008 memorandum references a July 14, 2008 memorandum entitled 'Request for Information Regarding the CRT Antitrust Litigation" and a July 22, 2008 information request which were not produced. AR Doc. 3, Ex. H at IRI-SUPP-000023–24E.

very serious consequences for Irico"); *id.*, Ex. H at '026–28E ("Information Retention Notice"). The notice was in Chinese and Pillsbury instructed Irico to send it to all employees to sign to highlight the importance of retaining such information. *Id*., Ex. H at '023E.

Pillsbury also explained in detail specific categories of "potentially relevant" information relating to Irico's "worldwide" CRT business that should be preserved for the period beginning January 1, 1995, including, *inter alia,* "communications, agreements, or meetings with competitors . . . relating to CRTs or CRT Products sold in the U.S. or worldwide." *Id.* at '027E; *see also* Information Retention Notice. Pillsbury also specified the types of employees who needed to preserve relevant evidence and where documents are likely to be found. *Id.* at '023E (describing "persons most knowledgeable"); '026E ("computers, laptops . . . server files, removable devices, cell phones, etc.").

In addition, Pillsbury gave detailed instructions about electronically stored evidence ("ESI"). AR Doc. 3, Ex. J at '035. It instructed Irico to suspend automatic deletion of ESI and, again, warned of severe penalties for failing to preserve ESI. *Id.* It also notes that Pillsbury "will need to have a thorough understanding of IRICO's computer system" and references a separate memorandum it would provide on the subject. *Id.*; AR Doc. 3, Ex. H at '023E (instruction to provide Information Retention Notice to "personnel responsible for information technology and records management").

Despite the clear and repeated nature of Pillsbury's instructions, Irico persists with its false claim that its executives did not understand them. Obj. at 6, 18. It still cites no support for this claim, however. To the contrary, Mr. Yan testified he read Pillsbury's instructions and advised the Litigation Committee to preserve competitor meeting documents and other documents beyond United States sales. AR Doc. 3, Ex. E at 136:25–138:21.[5] In addition, Irico revised its interrogatory responses to remove its claim that it "misunderstood" its preservation obligations.[6] There is also no Irico communication with Pillsbury questioning its responsibilities. Indeed, Irico informed Pillsbury that it was complying with its advice. R&R at 20–21 (citing AR Doc. 3, Ex. H at '023E).

Irico also resorts to misrepresenting the Pillsbury communications. Obj. at 6. It omits Mr.

---

[5] Thus, Irico's argument that its search for U.S. sales shows its good faith (Obj. at 18) is absurd.

[6] AR Doc. 3, Ex. S (*compare* Irico's Third Suppl. Objs. And Resps. To IPPs' Third Set of Interrogs. No. 2 at 24–27, *with* Irico's First Suppl. Resp. to Interrog. No. 2 at 11 (Issue No. 4)).

Yan's verbal contacts with Pillsbury entirely, understates the number of written communications, and ignores Pillsbury's repeated emphasis of the importance of preserving documents and detailed explanations of what needed to be preserved. *Id.* In addition, its portrayal of its executives as "unsophisticated" is implausible and contrary to the evidence. Irico executives oversaw a very large and sophisticated corporate group of companies with a substantial export business. *See* AR Doc. 10 at 6 n.9 (18% of business for export). They also had significant experience with foreign litigation. *Id.* at 7. Moreover, most Litigation Committee members attended conspiratorial meetings, R&R at 24 & n.25, and therefore were well aware of the types of documents that would prove their liability. Thus, Irico's assertion that they "had [no] idea what the unelaborated phrase 'potentially relevant evidence' meant" is preposterous. Obj. at 18. Pillsbury told Irico exactly what documents were "relevant." AR Doc. 3, Ex. H at '025E. Irico's claimed belief that it would soon be dismissed is also unsupported, and in any event, fails to justify defiance of PTO No. 1.

Irico also misrepresents its contacts with the United States. Obj. at 2 & 4. Irico had a U.S. subsidiary, Irico USA, Inc., from 1995 to 2001 (AR Doc. 3, Ex. Y at 16–17) to which it sold millions of dollars of CRTs. ECF No. 5640 at 13–14. In addition, the Irico weekly reports found in other defendants' files confirm that Irico knew its foreign customers were selling televisions containing its CRTs in the U.S. AR Doc. 2 ¶¶ 37–39 (describing weekly reports); AR Doc. 4, Exs. HH–JJ.

Finally, Irico's shameless characterization of its conduct as a "run of the mill failure to properly implement a litigation hold" (Obj. at 19) is disingenuous and misses the point. Irico's only evidence of its retention policy in 2007 is the testimony of Mr. Zhang, who lacks knowledge and credibility. *See, e.g.*, R&R at 36, 47, 63. Moreover, the whole purpose of the Court's PTO No. 1 and Pillsbury's instructions was to alter Irico's standard practices—and ensure relevant evidence was preserved and produced—precisely because "business as usual" inevitably results in the loss of evidence. Irico's purposeful choice to wipe and discard its key employees' computers, destroy *all* their hard copy documents, and allow *all* ESI to be deleted *"throughout the pendency of this litigation,"* ensured the wholesale destruction of relevant evidence so it would be unavailable to Plaintiffs or the Court. R&R at 64. Such conduct shows an intent to deprive Plaintiffs of evidence. *Id.* Indeed, the sheer scope of the loss of evidence also supports a finding of intent. *See WeRide Corp. v. Kun Huang*, No. 5:18-CV-

12

07233-EJD, 2020 WL 1967209 (N.D. Cal. Apr. 24, 2020). Likewise, Irico's years-long effort to conceal its failure to preserve relevant evidence before the Pillsbury communications saw the light of day also demonstrates that its spoliation was intentional. *See, e.g.*, *Internmatch, Inc. v. Nxtbigthing, LLC*, No. 14-CV-05438-JST, 2016 WL 491483, at *8–10 (N.D. Cal. Feb. 8, 2016), *vacated on other grounds*, No. 14-CV-05438-JST, 2017 WL 8944065 (N.D. Cal. Nov. 17, 2017).

In sum, the R&R's finding that Irico intentionally destroyed documents is correct.

**B.  Irico Has Intentionally Spoliated Entire Categories Of Critical Evidence**

Irico fails to meaningfully dispute the R&R's findings that its intentional failure to search for and preserve documents resulted in the destruction of "entire categories of highly relevant documents." R&R at 56. Irico has conceded widespread destruction of ESI and hard-copy documents, that many highly relevant hard copy documents likely existed in 2008, and that whole categories of critical evidence were not produced. Irico persists with its claim that "little or no relevant ESI existed at the time" of PTO No. 1 (Obj. at 17). But this claim was correctly rejected. R&R at 65.

First, Irico ignores the R&R's findings based on its own admissions that it destroyed "highly relevant" documents after its duty to preserve was triggered. R&R at 27 (describing Irico's admissions and identifying several types of documents "regarding Irico's global sales of CRTs that are more likely to have existed in the summer of 2008[,]" including sales reports, CRT sales contracts with customers, recent correspondence with customers, and handwritten notes regarding recent meetings).[7]

Second, Irico also admits that it generated large volumes of relevant documents during the class period, including weekly and monthly sales reports containing "information regarding customers, competitors and general market information," weekly production reports, and emails regarding CRT production and "the scheduling and planning of the China CPT Industry Association, a trade organization for manufacturers of CPTs."[8] Examples of these documents were produced by other defendants, including reports from 2005 and 2006 containing confidential Irico business plans, and referencing agreements on CRT prices and production levels, as well as sales to the U.S.[9] Given

---

[7] AR Doc. 3, Ex. S at 11–12 (Issue Nos. 4 & 5), 12–13 (Issue No. 6).

[8] AR Doc. 3, Ex. S at 13–17 (Issue No. 8).

[9] AR Doc. 2 ¶ 32; AR Doc. 4, Ex. CC (RFA No. 4); *see also* AR Doc. 2 ¶ 41; AR Doc. 4, Ex. LL at 119:7–120:9 (Wang Zhaojie 9/20/22 Depo. Tr. authenticating minutes of a sales/marketing meeting);

13

that the reports were produced on a weekly and monthly basis, it is likely that many existed in December 2007 and were stored in hard copy due to their importance and Irico's "rudimentary" computer system. Yet, Irico does not dispute that it neither searched for nor produced *any* of these highly relevant documents. R&R at 38–39, 61–62.

Third, Irico has also admitted that it never turned off automatic deletion of emails;[10] it recycled and discarded the computers of departing employees "throughout the pendency of this litigation" (R&R at 64);[11] and, none of its "key employees"—namely, its high-level employees, including the Litigation Committee members and others who attended conspiratorial meetings—"maintained any additional electronic or paper documents from the relevant period" other than what was preserved pursuant to Chinese law.[12] Nor does it dispute that it produced virtually no documents relating to the conspiratorial meetings Irico attended, as reflected by other defendants' meeting notes, and virtually no documents reflecting how it determined its CRT prices.[13] R&R at 62 (finding that some meeting notes "must have existed in Irico's files in December 2007 because it was so close to the relevant class period"). Irico's speculation that its employees' files may not have contained competitor meeting minutes (Obj. at 22 n.4) is undermined by its failure to conduct *any* search for such documents. R&R at 32–33, 62. Moreover, other defendants have produced meeting minutes that appear to have been authored by Irico. *See, e.g.*, AR Doc. 2 ¶¶ 29, 31; AR Doc. 3, Ex. Z; AR Doc 4, Ex. BB.

Irico's sole defense to its wholesale destruction of relevant evidence is its implausible and self-serving claim that because of its "primitive" electronic systems and limited email and computer use, there was virtually no ESI left to preserve when it received notice of this lawsuit. Obj. at 2, 4–5, 17. This claim was thoroughly examined and rejected by the Special Master. R&R at 65 (finding the claim

---

AR Doc. 3, Ex. S at 14 (Issue No. 8: stating that Irico's "sales department prepared weekly-and monthly-summaries of information collected by its employees"); AR Doc. 2 ¶¶ 37–39; AR Doc. 4, Exs. DD, HH–JJ.

[10] AR Doc. 3, Ex. B at 165:2–23.

[11] AR Doc. 3, Ex. W at 8.

[12] AR Doc. 2 ¶ 26; AR Doc. 3, Ex. X at 9 (Resp. to RFP No. 9).

[13] AR Doc. 2 ¶ 27. For example, in response to DPPs' interrogatory about CRT prices, Irico identified only *eight* Irico documents. *Id.* ¶ 28; AR Doc. 3, Ex. Y at. Moreover, the documents are voluminous collections of internal "Administrative Meetings," containing only sporadic references to CRT prices.

"was never supported with any credible evidence"); *id*. at 62 (Irico "never bothered to search the computer files of its employees"); *id*. at 64 (Irico admits to wiping and discarding computers of departing employees "throughout the pendency of this litigation"). It is also contrary to this Court's prior findings, to which Irico failed to object. ECF No. 6146 at 9 ("Irico presents no information about investigating custodial files of 'key employees' who may have printed relevant emails, forwarded emails to their personal email accounts or downloaded emails to their computers or to portable hard drives."). Irico ignores these findings and recycles its rejected arguments.

Irico's assertions that computer use was minimal, and email was not introduced until "2004 or 2005" and was little used even in 2007 are based primarily on its own interrogatory responses, which are inadmissible hearsay. *See Cardinal v. Lupo*, No. 18-cv-00272-JCS, 2019 WL 4450859, at *2 (N.D. Cal. Sept. 17, 2019). The anecdotal accounts of Irico's witnesses are equally infirm. They lack both knowledge and credibility[14] and do not provide evidence of a company-wide practice. Moreover, their testimony is belied by the Irico emails and other documents produced by other defendants, *all* of which were computer generated.[15] For example, documents produced by BMCC show that Irico used email to communicate with customers as early as 2001.[16] Irico business cards exchanged at conspiracy meetings in 2003 bear email addresses, including the card of Gao Rongguo who was a General Manager at Irico Group in 2003.[17] Further, as the Court already found, other defendants have produced Irico emails from 2006-07 regarding conspiratorial business (ECF No. 6146 at 9), and Mr. Yan used email to communicate with Pillsbury and the Litigation Committee in 2008. R&R at 24. Li Miao testified that he had a personal computer in 2004, as a Deputy Manager in the production department. Margulies Decl., Ex. 8 at 95:25–96:3. Mr. Yan also testified that he had a computer during the class period. AR Doc. 3, Ex. B at 212:8–10. And Irico admits that each "department" shared a computer as early as 2004. AR Doc. 8, Ex. A at 106:6–11. Thus, the R&R's finding that computers and email were in use at Irico during the class period and likely held relevant evidence (R&R at 61–66), is amply

---

[14] *See, e.g.*, R&R at 28–29, 36, 47, 63 (Messrs. Zhang and Yan repeatedly provided false testimony).

[15] *See* AR Doc. 1 at 13–14.

[16] *See* AR Doc. 11, Ex. 6–8 (emails sent to @irico.com.cn addresses in 2001, 2002 and 2003).

[17] *See* AR Doc. 11, Ex. 9 at CHU00030303 (first col., second row), CHU00030304 (same, dated).

15

supported by the record.

Finally, Irico's assertion that emails were deleted from its server every "four to five days" (or perhaps 20 days) (Obj. at 5) is not the "get out of jail free card" it imagines. Again, it relies entirely on its own interrogatory responses. *Id.*; AR Doc. 3, Ex. W at 11. Irico's failure to submit a sworn account of its electronic systems from its IT professionals speaks volumes. *See* AR Doc. 10 at 10–11. But even if true, it proves only that Irico employees would have stored important emails and other documents in hard copy files or on computer hard drives, as Mr. Yan admitted he did. AR Doc. 3, Ex. E at 93:15–95:13. Given that one computer can store thousands of documents, there can be no doubt that large quantities of relevant evidence existed in key employees' computers that Irico wiped and discarded throughout the pendency of this litigation. R&R at 65.

The evidence compels the R&R's conclusion that "Irico's failure to preserve and spoliation of ESI and other documents as well as its long absence from this litigation has resulted in loss of virtually all relevant documents bearing on the claims at issue." R&R at 39.

## II.     The R&R Correctly Found That Irico Made False Statements About Its Culpability To Induce The Court To Set Aside Its Prior Default

### A.  Yan's Testimony Is Sufficient To Support The Special Master's Finding That Irico Lied To The Court

Irico's assertion that "[n]o evidence" supports the R&R's finding that it lied about its "initial decision to withdraw from this lawsuit in 2008," Obj. at 23, ignores and mischaracterizes Mr. Yan's testimony. He candidly explained that Irico abandoned the case because the Litigation Committee believed "it was to the disadvantage of Irico" to litigate with the other defendants, and that Irico's abandonment was intended to allow it to defend the case on its own. R&R at 6. Thus, the decision was a tactical maneuver unrelated to a belief in immunity. Mr. Yan did not even mention immunity. *Id.*

Irico's suggestion that Mr. Yan forgot to include a belief in immunity in his answer is implausible. Obj. at 23–24. To the contrary, Mr. Yan indicates that he has given a full accounting of the reasons for Irico's abandonment when he concludes, "That's it." R&R at 6, 64. In addition, he indicates that Irico intended to eventually defend the case after "the plaintiffs . . . file[d] an independent, separate lawsuit against Irico." *Id.* This is inconsistent with a belief in Irico's immunity; such immunity would obviously apply to the later lawsuit as well. Irico ignores these statements.

Mr. Yan's failure to attest that Irico believed it was immune is also strong evidence that it did not so believe. Mr. Yan did not supplement his testimony when examined by his own counsel. Nor has he attempted to change or supplement his testimony as he did regarding the litigation hold. R&R at 25–26. Mr. Yan's silence compels the conclusion that he cannot truthfully so testify. *Id.* at 67.

Finally, apart from its tortured reading of Mr. Yan's testimony, there is no evidence in the record that contradicts the R&R's findings. *Id.* at 34, 67–68. The only evidence that Irico believed it was immune is the declaration of Mr. Zhang. But Mr. Zhang testified that he had no knowledge of events in 2007 and 2008, thus he lacks personal knowledge. ECF No. 5240 at 6; R&R at 35–36. Irico offers no other credible evidence supporting Mr. Zhang's statements.

In short, the evidence compels the conclusion that Irico lied about its "culpability" in its motion to lift the default, even without considering the Yan Document.

**B.  The R&R Properly Considered The "Yan Document"**

Irico does not dispute the R&R's finding that the Yan Document confirms Irico's lies to the Court (R&R at 67), that it is the only contemporaneous document relating to its abandonment of the case, and that it wrongfully concealed it. *Id.* Instead, Irico baselessly asserts that the Special Master engaged in serious misconduct in even considering it, such that he should be dismissed and the R&R disregarded, without consideration of the merits of the R&R's recommendation. Obj. at 26.

First, the Court should overrule Irico's objection for failing to address the R&R's finding that the Yan Document is discoverable. Obj. at 27 (requesting supplemental briefing). The question is key to its arguments and its privilege concerns should have been addressed by redactions and filing under seal. There is no basis for Irico's request for supplemental briefing and further delay. Irico also failed to file a copy of the Yan Document with the Court with its objection. It is part of the record because Irico submitted it to the Special Master for *in camera* review. ECF 6215 at 7. Irico's failure "to provide the necessary record" is also grounds to overrule its objection. ECF No. 6093 at 2.

Second, it is unassailably correct that, "A court has inherent power to reverse its nonfinal orders in the proper administration of justice." R&R at 67 n.162. *See also* Fed. R. Civ. P. 54(b) ("any order or other decision . . . may be revised at any time before the entry of a judgment"); *Walker v. Carnival Cruise Lines*, 107 F. Supp. 2d 1135, 1137 (N.D. Cal. 2000) (same).

17

PLS.' RESP. TO IRICO DEFS.' OBJS. TO SPECIAL MASTER'S R&R ON PLS.' MOT. FOR TERMINATING SANCTIONS; Master File No. 07-CV-5944-JST

Third, the R&R correctly finds that the Yan Document is discoverable and should be produced. Irico does not dispute that the Yan Document is the only remaining contemporaneous record of Irico's "true reasons" for abandoning the case. R&R at 7, 67. It is also indisputable that Irico placed its mental state at issue when it asserted that it believed it was immune from suit in 2008. *Id.* at 7, 67 n.162. The R&R's finding that Irico's representations to the Court are contradicted by the Yan Document, which Irico does not expressly deny, is likewise correct.[18] *Id.* at 7 ("true reasons" for abandonment); *id.* at 67 ("inconsistent statements to Court"). These findings establish both the waiver and the "compelling need" required to overcome protection for opinion work product. ECF No. 6215 at 9; *United States v. Sanmina Corp.*, 968 F.3d 1107, 1125 (9th Cir. 2020). Finally, Irico's concealment of the Yan Document and its lies also vitiate work product protection. R&R at 67. *See also Ward v. Maritz Inc.*, 156 F.R.D. 592, 594 (D.N.J. 1994).[19]

**C. Irico's Misrepresentations To The Court Support Terminating Sanctions**

Irico's characterization of its motion to lift the default as a mere procedural matter and therefore peripheral "by definition" is also incorrect. *See Anheuser-Busch, Inc. v. Nat. Beverage Distributors*, 69 F.3d 337, 348 (9th Cir. 1995) (due process requires "a relationship between the sanctioned party's misconduct and the matters in controversy such that the transgression 'threaten[s] to interfere with the rightful decision of the case'") (alteration in original). Irico's lies meet this standard because they were part of its "overall strategy" to subvert the litigation process to its advantage. R&R at 68. The R&R found that: "This misconduct is directly related to the issues in this case because it led to an eight-year delay and loss of relevant ESI, hard copy documents and percipient witnesses within Irico's possession and control in 2008-18." *Id.* This finding identifies a "nexus" to "matters in controversy" and is consistent with cases imposing terminating sanctions for widespread document destruction, deception and violations of court orders. *Anheuser-Busch*, 913 F.3d at 348–54.

Further, Irico's motion to lift the default was inextricably intertwined with the merits. Its lies about its "culpability" falsely supported the potential validity of one of its asserted defenses—i.e., that

---

[18] Plaintiffs have not seen the document and therefore rely on the R&R.

[19] Mr. Yan's testimony also waived work product protection for those aspects of the Yan Document he describes. *Sanmina Corp.*, 968 F.3d at 1119 (disclosure of work product waives protection); R&R at 67 n.162. The same is true as to discussion of Irico's business decisions. *Id.* at 7, 67 n.162.

it believed it was immune. R&R at 35–36; ECF No. 5240 at 2. The motion to lift the default was potentially dispositive; success was essential for Irico to receive the benefits of its campaign to destroy documents and deny access to witnesses. Irico's convoluted "causation" argument ignores that the main consequences of its misconduct would be felt in the case only upon the lifting of the default.[20]

Irico also ignores *Google LLC v. Starovikov*, No. 21CV10260 (DLC), 2022 WL 16948296, at *12 (S.D.N.Y. Nov. 15, 2022), *reconsideration denied*, No. 21CV10260 (DLC), 2022 WL 17414352 (S.D.N.Y. Dec. 5, 2022), where a court granted terminating sanctions based on falsehoods in a motion to lift a default as well as discovery violations. Such a sanction was "particularly appropriate" because it would "'restore the prejudiced party to the same position [it] would have been in'" absent the misconduct. *Id.* (alteration in original). The same is true here.

Finally, even if Irico's lies would be insufficient alone to justify terminating sanctions, it is appropriate to consider them along with Irico's other misconduct. *See Anheuser-Busch*, 913 F.3d at 348 (court should consider "all incidents" of a party's "alleged misconduct").[21]

### III. The R&R Correctly Found That Irico Acted In Bad Faith In Failing To Produce Su Xiaohua For Deposition And Violated Multiple Court Orders

The R&R's findings relating to Irico's failure to produce Su Xiaohua for deposition are as extensive as they are damning, including violating *four* Court Orders. R&R at 39–54, 68–70. Irico fails to meaningfully address the Special Master's key findings that: (1) Mr. Su was employed by Irico and his visa had issued in June 2022 and it was therefore within Irico's power to produce him for deposition; (2) Irico submitted no evidence of any attempt to persuade Mr. Su to attend his deposition; and (3) Irico lied about Mr. Su's unavailability and wrongfully withheld documents in service of those lies. As to the rest, Irico yet again rehashes rejected arguments without addressing the evidence or the

---

[20] Irico's assertion that "delay alone" may not justify terminating sanctions is incorrect. *U.S. for Use & Ben. Of Wiltec Guam, Inc. v. Kahaluu Const. Co.*, 857 F.2d 600 (9th Cir. 1988) explicitly noted that delay could justify dismissal. *Id.* at 603–04 ("serious disruptions" of trial schedule warrant dismissal). Moreover, the R&R does not rely on delay alone in recommending terminating sanctions.

[21] The cases Irico cites also do not support its argument. *Phoceene Sous-Marine, S.A. v. U.S. Phosmarine, Inc.*, 682 F.2d 802, 806 (9th Cir. 1982) involved a misrepresentation of a party's unavailability resulting in a short delay of trial "wholly unrelated to the matters in controversy." *Fjelstadt v. Am. Honda Motor Co.*, 762 F.2d 1334 (9th Cir. 1985), involved conduct by a party before it joined the litigation which "did not deceive the court about the issues in controversy or threaten to interfere with the correct decision of this case.'" *Id.* at 1338.

19

PLS.' RESP. TO IRICO DEFS.' OBJS. TO SPECIAL MASTER'S R&R ON PLS.' MOT. FOR TERMINATING SANCTIONS; Master File No. 07-CV-5944-JST

R&R's reasoning. Irico's objections lack merit and should be overruled.

**A.  Substantial Evidence Supports The R&R's Finding That Irico Intentionally Violated Two Court Orders In Failing To Produce Mr. Su**

"Rule 37(b)(2)(B) provides for sanctions '[i]f a party fails to comply with an order under Rule 35(a) requiring it to produce another person for [physical or mental] examination.'" *Sali v. Corona Reg'l Med. Ctr.*, 884 F.3d 1218, 1223 (9th Cir. 2018) (alterations in original). Irico concedes that such an order "compels the party to use its best efforts to secure the nonparty's attendance at the deposition." *Id.* at 1224. Following extensive proceedings before this Court and the Special Master from June 2022 through April 2024, the R&R concludes that in failing to produce Mr. Su for deposition, Irico violated two Court Orders—(1) the May 25, 2022 Order requiring Irico produce Mr. Su by June 30, 2022 (ECF No. 6027), and (2) the August 11, 2022 Order requiring Irico produce Mr. Su by September 9, 2022 (ECF No. 6047). *See* R&R at 41–42, 51, 68–70. The R&R further found that Irico's violations were intentional and in bad faith. *Id.* at 51 (failure to produce Su violates two orders and is "yet another example of Irico's bad faith strategy to obstruct plaintiffs' ability to discover key underlying facts necessary to prove their case"). These findings are well supported.

Significantly, Irico does not expressly dispute that it violated these Court Orders. *See* Obj. at 29–32. Rather, Irico argues it should escape sanction because (1) it "had no control over Mr. Su's failure to appear," (2) it "had no advance warning that Mr. Su would refuse to travel for deposition," (3) it made efforts to get Mr. Su a travel visa for Macau, (4) Covid-19 delays and restrictions were outside of its control, and (5) there was no prejudice to Plaintiffs because Mr. Su was not a key witness and was never going to travel anyway. *Id.* Several of these assertions are demonstrably false, showing Irico's continuing lack of candor. All repeat arguments considered and rejected by the Special Master.

**1.  Irico Granted Mr. Su Early Retirement To Avoid Being Deposed**

The R&R rejected as false Irico's claims that it lacked control over Mr. Su and could not compel his attendance at deposition because he resigned "months earlier than anticipated" on May 25, 2022 and "terminated all relationships with Irico." R&R at 47–48 (citing various filings by Irico in which it made these false claims). Relying upon Irico's internal documents—which were produced in October 2023 only after "multiple court orders and extensions of time" (*id.* at 48)—the Special Master

20

PLS.' RESP. TO IRICO DEFS.' OBJS. TO SPECIAL MASTER'S R&R ON PLS.' MOT. FOR TERMINATING SANCTIONS; Master File No. 07-CV-5944-JST

found that Irico not only knew that Mr. Su planned to resign to avoid being deposed, its top executives made it possible by "approv[ing] on April 7, 2022, Su's request for early retirement ('ahead of schedule') before December 2022[.]"[22] These were the very same executives who also approved Mr. Su's travel abroad for his deposition. R&R at 49–50 & n.133. Thus, "Irico's top executives knew full well that they would allow Su to 'resign' early and had no intention of requiring him to be deposed." *Id.* at 50. Irico fails to mention these findings, much less attempt to square them with its false claim that "Irico had no advance warning that Mr. Su would refuse to travel for deposition." Obj. at 30.

Irico's late-produced documents also confirmed that Mr. Su did not "resign" or "retire." Rather, Irico granted Mr. Su early approval to go "off-duty and rest"—and continue to be paid—a program for which he was not eligible until December 2022. *See* AR Doc. 25, Exs. B & C. Moreover, this was not Irico's normal practice; Irico frequently delayed granting such requests by a year or more after its executives were eligible. AR Doc. 25, Ex. G at '0416E. In short, Irico controlled Mr. Su's request for "off-duty and rest" and could have required him to appear for his deposition. R&R at 52.

Further, Irico's claim that its in-house counsel, Messrs. Yan and Zhang, were unaware of Mr. Su's intentions is contrary to the record. Mr. Yan testified that "[a]t some point ***in April***, he [Su] informed us that he was going to leave Irico, and he told us that he was not able to make time to be deposed in this case as a witness." Su Order at 9 (citing AR Doc. 3, Ex. B at 230:16–230:22) (emphasis added; second alteration in original). Irico's attempt to change this testimony to "*after* April," is improper and not credible. *See* AR Doc. 10 at 15–16. The only evidence of what Mr. Zhang knew are his two declarations, ECF Nos. 6027-3 & 6036-1, which the Court found were not "reliable evidence." Su Order at 9. Neither attests that Mr. Zhang did not know of Mr. Su's intentions or that he believed Mr. Su would appear. ECF No. 6027-3. Irico's documents also show that many at Irico were aware of Mr. Su's pending status change because approvals were required from multiple parties. Indeed, on May 5, 2023—weeks before his surprise "resignation" on May 25, 2022—he submitted a virtually

---

[22] R&R at 49 & n.132 (citing AR Doc. 4, Ex. TT, IRI-SU-0000137–40E: Apr. 7, 2022 meeting mins.). After falsely insisting this approval meant Mr. Su would not leave his position until December 2022 (AR Doc. 6 at 31), Irico was forced to admit that "ahead of schedule" meant "before December 2022" after the Special Master required a proper search for relevant documents. *See* AR Doc. 26 at 1. Despite the Court's Orders, however, Irico has never produced evidence showing when he first requested to leave his position, or the date Irico agreed that he could do so.

21

PLS.' RESP. TO IRICO DEFS.' OBJS. TO SPECIAL MASTER'S R&R ON PLS.' MOT. FOR TERMINATING
SANCTIONS; Master File No. 07-CV-5944-JST

identical request. AR Doc. 25, Exs. H, I & B. Thus, even if Messrs. Yan and Zhang did not know Mr. Su's plans, the evidence shows "Irico" not only knew but facilitated them. R&R at 52–53.

Nowhere does Irico explain why its top executives granted Mr. Su permission to enter an "off-duty and rest" program for which he was not eligible while Irico was under a Court Order to produce him for deposition. Nor does Irico acknowledge that it did not inform Plaintiffs of Mr. Su's impending "resignation," and also induced Plaintiffs to agree to *a third* extension of time to produce him (ECF No. 6015), and then falsely informed Plaintiffs and the Court that he had "formally resigned" on May 25, 2022. Contrary to Irico's claims (Obj. at 30), the R&R's reliance on *Beijing Choice Elec. Tech. Co. v. Contec Med. Sys. USA Inc.*, No. 18-CV-0825, 2021 WL 9184385 (N.D. Ill. Dec. 17, 2021), *report and recommendation adopted*, No. 18-CV-0825, 2022 WL 3053550 (N.D. Ill. May 12, 2022) (R&R at 68-69) is well placed. Indeed, "[t]he facts here are worse." *Id*. at 69.

### 2.   Mr. Su Continued To Work For Irico After May 25, 2022

Irico claims the R&R's finding that it "lied about Mr. Su's resignation" is "baseless." Obj. at 30. But Irico fails to meaningfully address the overwhelming evidence supporting the finding that he "did not resign and terminate all relationships with Irico on May 25, 2022[,]" R&R at 48, as Irico claimed. "Instead, Su continued his work at Irico . . . in June and July 2022. It was not until June 17, 2022, that Irico identified Su's successor and July 28, 2022, when the Shareholders' Meeting of Irico (Foshan) Flat Panel Display Co, Ltd resolved 'to dismiss Su Xiaohua from his position as a company director.'" *Id*. at 48–49 (citation omitted): *id.* at 48 n.127 (discussing AR Doc. 25, Exs. R, P, Q). Mr. Su continued to send and receive work-related text messages as late as September 20, 2022 (R&R at 49 & n.129)—over a week *after* the September 9, 2022 deadline for Irico to produce him. *See* ECF No. 6047 at 13:10–14. *See also* AR Doc. 25, Exs. O, S, T (more examples of his continued work).

Nor does Irico address the other late produced documents showing that Irico continued to pay Mr. Su at least through August 2023, and paid him bonuses, awards and other payments in late 2022 and 2023. *Id*. at 52 & n.142–43; s*ee also* AR Doc. 25, Ex. G. Irico's human resources department still considered Mr. Su "in service" as of February 2023. R&R at 52 & n.141 (citing AR Doc. 25, Ex. F). In addition, as of August 18, 2023, Su was serving on the Board of Directors of Sichuan Century Shuanghong Display Devices Co., Ltd., an Irico joint venture. R&R at 52 & n.144 (citing AR Doc.

22

25, Ex. S). He also served on the Board of Directors of Orion Co., owned by Century Shuanghong and Irico, with General Counsel Yan until at least October 2022. AR Doc. 25, Ex. T at '236E.

Irico's feeble attempt to wave off this evidence as simply "respond[ing] to a few housekeeping items[,]" is absurd. Its assertion that Irico's payments of salary and bonuses as "a standard government-mandated living expense stipend" is unsupported. Moreover, Irico omits that Mr. Su *was not eligible* for the company's "off-duty and rest" program under which he continues to be paid, or that it often denied its executives access to the program even when they were eligible. Thus, the Special Master's conclusion that Mr. Su "was within Irico's control" is plainly correct. R&R at 49.

In addition to being contrary to the above evidence, Irico's assertion that "Mr. Su did not continue to act as a managing agent of Irico after his resignation" (Obj. at 30) is also irrelevant. Where, as here, a court order compels a witness's attendance at a deposition, a party must "use its best efforts to secure the nonparty's attendance at the deposition," regardless of whether the witness qualifies as a managing agent under the party's control at the time of the deposition. *Sali*, 884 F.3d at 1223–24 (affirming sanctions against a party for failing to produce its non-party expert witness).[23]

Finally, Irico fails to demonstrate that it made any effort to convince Mr. Su to attend his deposition, much less its "best efforts." As the R&R finds (at 49), the evidence that Mr. Zhang worked with Mr. Su to prepare his visa application falls far short of demonstrating that "Irico tried to convince Mr. Su to reverse his decision" and appear for his deposition.[24] Irico does not dispute the R&R's finding that "[t]here are no documents requesting Su to appear for his deposition or offering any incentives or bonuses for Su to appear for his deposition, such as those Irico offered to its two other witnesses." R&R at 49. Instead, Irico attempts to distract by arguing that the delays and restrictions caused by Covid-19 were not its fault. While some of the delays caused by the pandemic may have

---

[23] Thus, *Rundquist v. Vapiano SE*, 277 F.R.D. 205 (D.D.C. 2011) (Obj. at 29–30) is inapposite. *Rundquist* also recognizes exceptions to the general rule where, as here, "'[t]he timing and circumstances of [defendant's] reassignment or termination of its employees render the true status of the proposed deponents highly suspect, and allow for a strong inference that [the defendant] is moving its employees around like chessmen, conveniently shielding them from [ ] access.'" *Id.* at 208 (alterations in original).

[24] ECF No. 6101 at 9 ("When Irico's in-house counsel learned of Mr. Su's resignation on May 31, 2022, Irico tried to convince Mr. Su to reverse his decision . . ."); AR Doc. 7 at 32 (claiming that "Irico's determined attempts to convince [Mr. Su] to appear for deposition were unavailing").

been unavoidable, they are irrelevant. There is no doubt that Mr. Su was under Irico's control in June 2022, had a visa for travel to Macau and could have appeared for deposition. R&R at 51.[25]

In sum, the evidence that Irico granted Mr. Su early retirement and then lied about it compels the conclusion that Irico did not merely fail to use its best efforts to secure Mr. Su's appearance at his deposition; it facilitated his nonappearance. R&R at 52–53.

**B. Irico Intentionally Violated Two Additional Court Orders Relating To Mr. Su**

The R&R also correctly concludes that Irico violated the Su Order by improperly withholding documents proving its assertions about Mr. Su's employment status were false, and violated the First Interim Order by proceeding for almost a month in direct violation of it. R&R at 46. Irico's assertions to the contrary lack merit. Obj. at 31–32.

As to the Su Order, Irico does not dispute that its "curated" production of a mere 32 documents totaling 141 pages in December 2022 included *only two* which shed any light on the core question of when Irico first knew that Mr. Su intended to resign. R&R at 43. Nor does Irico dispute that all the documents it produced in October 2023 were responsive to the Su Order. Rather, it relies solely on the plainly incorrect assertion that the First Interim Order required a broader search. Even a cursory comparison of the orders shows that they require production of the same categories of information; the First Interim Order merely includes instructions on what a proper search would entail. *Compare* Su Order at 12–13 (requiring production of "all documents . . . relating or referring to" seven broad categories of information), *with* First Interim Order at 7–9. Further, this Court has found in the First Interim Order that Irico violated the Su Order with its "curated" document production and warned Irico that its "continuing failure to comply with discovery orders risks terminating sanctions as well as less severe sanctions." R&R at 45–46. Irico failed to object to this finding.

The R&R also correctly concluded that Irico violated the First Interim Order. *Id.* It explicitly instructed Irico's U.S. counsel to take control of Mr. Su's electronic devices. *Id.* at 44–45. However, Irico informed the Special Master two days before its deadline that it had "ignored that order and

---

[25] Irico also delayed Su's visa application. Irico's documents show that after the Court ordered Irico on March 18, 2022 to produce Mr. Su and the other witnesses in Macau by May 31, 2022 (ECF No. 5999), Irico's Legal Department did not seek approval from Irico's leadership to apply for visas to Macau until May 6, 2022. *See* AR Doc. 8, Ex. J. *See further* AR Doc. 10 at 19–21.

devised its alternative plan to have the laptop analyzed by unknown individuals [in China] with unknown qualifications." *Id.* at 46. Irico's defiance of the order is clear, and the Court's Second Interim Order (ECF No. 6324) was necessary to ensure (at least partial) compliance with it.

Finally, despite Irico's contrary assertions, Irico's violations of these orders prejudiced Plaintiffs. *See, e.g.*, Obj. at 32 ("there is no suggestion that any relevant documents were lost during the supposed delay"). Counsel's declaration submitted with the October 2023 document production admits that—in the midst of the dispute about his availability—Irico wiped Mr. Su's laptop on June 15, 2022, and only 22 documents were retrieved. *See* AR Doc. 23 ¶¶ 6–7, 24 n.3. Nor did Irico search Mr. Su's current computer, *see* AR Doc. 23, Ex. 3, or his cell phone, which he continued to use for work after June 2022. AR Doc. 25, Ex. O. Unsurprisingly, there are still gaping holes in Irico's story. For example, Irico failed to produce any document specifying when Mr. Su was to leave his position. It is unlikely that Irico would have granted Mr. Su permission to leave his position "ahead of schedule" but fail to specify when. Irico has destroyed this evidence or is withholding it.

### IV. The R&R Correctly Found Terminating Sanctions Are Warranted Given Irico's Bad Faith, Intentional Misconduct In Violation Of Multiple Court Orders

Despite failing to object to most of the R&R's factual findings regarding its "extraordinary" misconduct, Irico insists that the Court should issue no sanctions. Obj. at 3, 32. Irico's arguments continue to evince its disregard for the Court's authority and must be rejected.

#### A. The R&R's Legal Analysis Is Correct

Irico does not dispute the R&R's thorough explication of well-settled law. As the R&R explains, a district court has three sources of authority for terminating sanctions. Under its "inherent authority," such sanctions are proper where "a party has willfully deceived the court and engaged in conduct utterly inconsistent with the orderly administration of justice." R&R at 9 (quoting *Anheuser-Busch*, 69 F.3d at 348). Under Rule 37(b), they may issue for violating discovery orders. R&R at 11. Terminating sanctions under each requires a finding of "willfulness, bad faith and fault." *Id.* at 15.

Rule 37(e) is an independent basis for sanctions "when ESI 'that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery.'" *Jones v. Riot Hosp.*

*Grp. LLC*, 95 F.4th 730, 734–35 (9th Cir. 2024) (citing Rule 37(e)). "Under Rule 37(e)(2), only if [a] court finds that a party 'acted with the intent to deprive another party of the information's use in the litigation,' may it enter a default judgment." R&R at 13; *see also Jones*, 95 F.4th at 735 (same).

The issuance of terminating sanctions requires consideration of five factors: (1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions. R&R at 16 (citing *Dreith v. Nu Image, Inc.*, 648 F.3d 779, 788 (9th Cir. 2011)). *See also Anheuser-Busch*, 69 F.3d at 348. The Ninth Circuit "may affirm a dismissal where at least four factors support dismissal, or where at least three factors strongly support dismissal." *Dreith*, 648 F.3d at 788. *See also Transamerica Life Ins. Co. v. Arutyunyan*, 93 F.4th 1136, 1147 (9th Cir. 2024).

As the R&R recognized, however, "[t]here is no requirement that the court find prejudice to the non-spoliating party under Rule 37(e)(2)." R&R at 13; *see also Jones*, 95 F.4th at 736 (same). To issue terminating sanctions "under Rule 37(e)(2), a district court need only find that the Rule 37(e) prerequisites are met, the spoliating party acted with the intent required under Rule 37(e)(2), and lesser sanctions are insufficient to address the loss of the ESI." *Id.* at 735 (citing Fed. R. Civ. P. 37 Advisory Committee's Note to 2015 Amendment).[26]

The imposition of terminating sanctions is discretionary and will not be overturned absent a "definite and firm conviction that it was clearly outside the acceptable range of sanctions." R&R at 9 (citing *In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 460 F.3d 1217, 1226 (9th Cir. 2006). "In evaluating whether sanctions are proper, a court looks 'at all incidents of a party's misconduct.'" R&R at 12 (quoting *Adriana Int'l Corp. v. Thoeren*, 913 F.2d 1406, 1411–12 (9th Cir. 1990).

The R&R's recommendation of terminating sanctions relies on all these sources. R&R at 12 n.13 ("Due to the adequacy of Rule 37, there is no need to rely on the court's inherent authority in this analysis of spoliation of ESI and violations of court discovery orders. But for litigation misconduct that does not fit squarely under Rule 37, the court's inherent power applies.").

---

[26] Irico fails to address Rule 37(e) or the R&R's finding that its prerequisites are met (R&R at 61–62), focusing solely on intent, prejudice, and lesser sanctions.

The R&R's extensive discussion of the case law (R&R at 8–17) shows that terminating sanctions have been issued in a variety of circumstances, including in cases involving similar, but less extreme misconduct. *See, e.g.*, R&R at 10 ("for abusive litigation tactics"); *Ruelas v. Alameda Cnty.*, No. 19-CV-07637-JST, 2023 WL 8173675, at *4 (N.D. Cal. Apr. 14, 2023) (failure to produce a witness for deposition); *WeRide*, 2020 WL 1967209, at *16 (spoliation of documents); *Am. Career Coll. Inc. v. Medina*, 673 F. Supp. 3d 1139, 1148–49 (C.D. Cal. 2023) (violation of orders). Where, as here, the R&R correctly finds that Irico did *all* these things, terminating sanctions are appropriate.

## B.  The R&R's Findings Establish Irico's Intent And Bad Faith

The R&R's findings that Irico's misconduct was intentional and in bad faith and warrant the imposition of terminating sanctions are compelled by the evidence. *See, e.g.*, R&R at 64–70. Irico's contrary assertions ignore the evidence and mis-state the law.[27] "Disobedient conduct not shown to be outside the litigant's control" demonstrates willfulness. *Fair Hous. of Marin v. Combs*, 285 F.3d 899, 905 (9th Cir. 2002). In addition, intent can be inferred from the nature of the misconduct at issue. *See, e.g., Jones*, 95 F.4th at 735 ("Because intent can rarely be shown directly, a district court may consider circumstantial evidence in determining whether a party acted with the intent required for Rule 37(e)(2) sanctions."); *Computer Task Grp., Inc. v. Brotby*, 364 F.3d 1112, 1115 (9th Cir. 2004) (willfulness found due to defendant consistently and intentionally obstructing discovery, not complying with repeated court orders and not heeding multiple court warnings).

Here, Irico chose to defy Pillsbury's instructions and PTO No. 1, and chose not to implement a litigation hold, chose not to search for or preserve relevant evidence, and chose to destroy virtually *all* relevant ESI and other evidence. Irico's lies about "misunderstanding" its obligations to preserve evidence also show intent. Likewise, Irico's abandonment of the case for over eight years and its failure to produce Mr. Su were also willful as demonstrated by its lies about its purported belief in immunity, its lies about Mr. Su's "resignation," and its withholding of documents to facilitate those lies in violation of multiple Court Orders. Many courts have inferred the requisite intent and imposed terminating sanctions under less egregious circumstances. Indeed, intent and bad faith may be inferred

---

[27] *See* Obj. at 19 (mis-quoting *WeRide*, 2020 WL 1967209, at *12, by excising from the quote the phrase that intent may also be inferred).

from lies alone. R&R at 15 (citing *Adriana Int'l*, 913 F.2d at 1411–12). Similarly, it is well-established that bad faith can be inferred from the violation of court orders. *Id.*; *see Anheuser-Busch*, 69 F.3d at 348. The numerous orders violated by Irico amply show willfulness and bad faith.

In *WeRide*, the court imposed terminating sanctions, inferring intent from "the totality of circumstances," including the failure to disable auto-deletion of emails, wiping laptops of former employees, massive destruction of documents, misrepresentations to the court, and violation of a court order. *See* 2020 WL 1967209, at *12–13. All these circumstances are present here, as the R&R found. R&R at 64–65. Plaintiffs here cannot show exactly *when* Irico deleted its ESI because, unlike in *WeRide*, Irico discarded its computers and servers, foreclosing forensic examination. AR Doc. 3, Ex. W at 8–9. But Irico has admitted that it wiped and/or discarded its key employees' computers—as in *WeRide*—*during the pendency of this litigation*. R&R at 64. That Irico destroyed *all* of its emails and electronic documents *and* all of its key employees' hard copy files evinces a thoroughness indicative of intent. It would have been impossible to destroy everything through mere negligence.

### C.  The *Anheuser-Busch* Factors Support Terminating Sanctions

Irico's objection fails to address the R&R's analysis of the *Anheuser-Busch* factors finding that four "weigh strongly" in favor terminating sanctions. R&R at 77. Where four factors support default, or three factors strongly support default, terminating sanctions are appropriate. *See Transamerica Life Ins.*, 93 F.4th at 1147. Irico fails to refute the R&R's careful analysis.

#### 1.  The First Two Factors Strongly Favor Default

Irico does not object to the R&R's findings as to the first two factors. Where, as here, violations of court orders are at issue, the first two factors support terminating sanctions. *See Adriana Int'l*, 913 F.3d at 1412. Given Irico's violation of at least *five* Court Orders and the delays its misconduct has occasioned, the Special Master's finding that these factors "strongly" weigh in favor of default is correct. *See, e.g.*, R&R at 70–72 (describing Irico's "bad faith strategy to frustrate" discovery).

#### 2.  The Risk Of Prejudice Strongly Favors Default

The R&R's finding that the third factor—prejudice—strongly favors terminating sanctions is likewise correct. Explaining that, "[t]he grist for rightful decisions in civil litigation comprise documents and witnesses," the R&R finds that Irico's destruction of "perhaps all of its own documents

28

that bear on its conduct during the relevant time"; its failure to preserve ESI resulting in the "wide-scale loss" of critical documents that "cannot be restored or replaced through additional discovery"; and its actions to render unavailable virtually all of Irico's "first-hand witnesses" have "substantially impaired plaintiffs' ability to prove their case and interfere with the rightful decision of this case." *Id*. R&R at 62, 72–73.

The R&R also notes that this Court has already found "'inarguabl[e] prejudice' resulting from Irico's decision to disappear from the case for eight years." *Id.* at 73 (alteration in original). It finds that since its return, Irico "has made discovery and pretrial preparation in the normal course impossible," and that absent Irico's misrepresentations about its belief, the Court would not have lifted the default and "plaintiffs would not have had to spend the next six years attempting to obtain discovery from and otherwise litigating against" it. *Id.* Finally, it reiterates the Court's finding that the loss of Mr. Su's testimony and related delays caused Plaintiffs significant prejudice. *Id.* at 73–74.

These findings are manifestly correct. As explained above, Irico's assertions that few important documents were lost and that Mr. Su was an unimportant witness are baseless.[28] Plaintiffs have "come forward with plausible, concrete suggestions as to what the destroyed evidence might have been." *Micron Tech., Inc. v. Rambus Inc.*, 645 F.3d 1311, 1328 (Fed. Cir. 2011) ("[a] party who is guilty of . . . intentionally shredding documents . . . should not easily be able to excuse the misconduct by claiming that the vanished documents were of minimal import") (alterations in original)." *See also Perez v. U.S. Postal Serv.*, No. C12-00315 RSM, 2014 WL 10726125, at *3 (W.D. Wash. July 30, 2014) ("Where emails and documents are missing entirely due to a party's failure to preserve and their relevance cannot be directly ascertained, a party can hardly assert any presumption of irrelevance to the destroyed documents.") (internal quotation marks and citations omitted).

Irico's arguments also depend on its persistent misstatement of the law—that this factor favors default only if the Court finds it is "impossible" to have a fair trial. Obj. at 22, 32, 34. That is not the

---

[28] This Court has already found Mr. Su was an important witness, that Irico designated him as knowledgeable about the conspiracy and its key defenses, and that its failure to produce him "is highly detrimental to resolution of this litigation on its merits." Su Order at 12; *see also* ECF Nos. 6101 at 2–3; 6047 at 12:24–13:1 (finding the delay in producing Mr. Su "unquestionably causes injury to the plaintiffs and also injury and inconvenience to the Court"). Irico failed to object to these findings.

law. Rather, the relevant question is "the extent to which the recalcitrant parties' conduct creates a risk of either '*impair[ing]* the [opposing party's] ability to go to trial' or '*interfer[ing] with the rightful decision of the case*.'" *Transamerica Life Ins.*, 93 F.4th at 1147 (emphases added; alterations in original); *Jones*, 95 F.4th at 736 (same). *See also Ruelas*, 2023 WL 8173675, at *4 (dismissal appropriate where conduct threatens "to interfere with the rightful decision of the case"). The R&R used the correct standard. R&R at 72.

Irico also cynically points to evidence of the existence of the conspiracy produced by its co-conspirators—evidence which it has strenuously argued elsewhere is inadmissible hearsay—to argue that a trial on the merits is still possible. Obj. at 20–23. But the Special Master, an experienced former Chief Judge of this Court, thoroughly examined and rejected this argument. *See, e.g.*, R&R at 73 (finding documents from other defendants "are far less compelling than if they had come from Irico's files with Irico's witnesses able to testify regarding them"). Indeed, as noted, Irico's defenses depend on the gaps in the evidence caused by its wrongful destruction of evidence. For example:

- Irico denies attending conspiratorial meetings it is shown to have attended in other defendants' notes, and objects to their admissibility on hearsay grounds. Plaintiffs could not depose the authors of all these documents or authenticate them because Irico was not a defendant at the time and there were hundreds of meetings and limited deposition time. Irico produced virtually no evidence relevant to these meetings and claimed lack of memory in its interrogatory responses requiring a list of all competitor meetings. Mr. Su, identified as knowledgeable about Irico's competitor meetings, refused to testify.[29]

- Irico denies ever agreeing to fix prices or limit production. *See, e.g.*, ECF No. 5874 (Irico Group Answer to DPPs' Consolidated Am. Compl.) ¶ 138; ECF No. 5875 (Irico Group Answer to IPPs' 5th Consolidated Am. Compl.) ¶ 142 and again, relies on a lack of evidence or institutional memory in its responses to interrogatories requiring it to list all such agreements. AR Doc. 11, Ex. 23 at 7–8.

- Irico denies ever implementing conspiratorial price increases. *See, e.g.*, ECF No. 5874 ¶ 138; ECF No. 5875 ¶ 142. Irico has not produced pricing reports, internal communications relating to pricing or other relevant evidence. Nor has it produced a single witness identified as possessing pricing authority during the class period, except Mr. Wang, who disclaimed knowledge. *See* AR Doc. 11, Ex. 24 at 67:18–69:7. Again, Mr. Su—identified as being knowledgeable, refused to testify.[30]

---

[29] *See* ECF No. 6032-1 ¶ 11, Ex. J (describing Irico's interrogatory responses identifying Mr. Su as knowledgeable about Irico's competitor meetings and communications and attaching responses).

[30] *See* ECF No. 6032-1 ¶ 2, Ex. A (Mr. Su is identified as one of only two witnesses knowledgeable about Irico's Eighth and Tenth Affirmative Defenses, which relate to Irico's pricing), & *id.* ¶ 11, Ex.

30

- Irico denies ever implementing conspiratorial production cuts. *See, e.g.*, ECF No. 5874 ¶ 138; ECF No. 5875 ¶ 201. The only witness it has produced with percipient knowledge (Li Miao) claims a lack of recall. AR Doc. 11, Ex. 25 at 157:22–164:4. Irico has not produced production reports or other relevant evidence. R&R at 39.

- Irico asserts that the Chinese Government implemented price floors that prevented lower prices and has moved for summary judgment on that basis. ECF No. 6377 at 5–6, 7–20. It has produced no contemporaneous internal pricing documents, internal communications about pricing or testimony that such issues were considered or were a material part of its pricing. AR Doc. 1 at 31–32. Mr. Su, identified as being knowledgeable, refused to testify. ECF No. 6032-1 ¶ 2, Ex. A.

- Irico claims it did not sell CRTs to U.S. customers directly or indirectly. ECF No. 6377 at 2–3. It has produced no customer communications, internal communications regarding CRT sales to customers, sales contracts, or its weekly and monthly sales and marketing reports. R&R at 38–39. But Irico has strenuously attacked Plaintiffs' evidence to the contrary produced by other defendants as inauthentic and inadmissible hearsay and continues to deny that it sold CRTs to the United States. ECF No. 6231 at 5–9.

Thus, the prejudice to Plaintiffs caused by Irico's destruction of evidence and failure to produce witnesses is not just threatened, it is palpable.  Plaintiffs' use of the word "overwhelming" to refer to the other defendants' meeting reports in a different context proves nothing, just as Irico's description of Plaintiffs' evidence as "scant" in their summary judgment motion (ECF No. 6377 at 22) is not proof of prejudice. For the most part, the other defendants' documents do not address Irico's defenses.

Given the magnitude of Irico's spoliation, it is likely the true extent of Irico's participation in the conspiracy will never be known. R&R at 60–61. Nevertheless, the evidence of Irico's attendance at conspiracy meetings supports the imposition of terminating sanctions because it "demonstrates that terminating sanctions and an award of relief to plaintiffs are entirely consistent with "the rightful decision of the case." *Id.* at 77 (citing *Anheuser-Busch*, 69 F.3d at 348; *Connecticut Gen. Life Ins. Co. v. New Images of Beverly Hills*, 482 F.3d 1091, 1097 (9th Cir. 2007)). Irico's suggestion that it should still be allowed to ask a jury (and the Court) to ignore that evidence and exonerate it while reaping the benefits of its misconduct is untenable. Again, if Irico's "malign strategy" succeeds in reducing Plaintiffs' verdicts in any material way, it would be an undeniable injustice.

Finally, Irico's claim that the parties' expert discovery and trial preparations support its argument that this case can still be fairly tried (Obj. at 12–13, 33) should be rejected because Irico

---

J (Mr. Su knowledgeable about competitor meetings and communications). Irico asserts similar affirmative defenses as to DPPs.

never made this argument or presented its supporting documents to the Special Master.[31] That IPPs engaged in required trial preparation with the hand Irico dealt them, also falls far short of rebutting the R&R's finding that Irico's spoliation of evidence and failure to produce witnesses threatens the rightful decision in this case. A party's *willingness* to go to trial even though its ability to do so has been "impaired" by the malfeasance of the opposing party proves nothing.

In sum, the Special Master's conclusion that Irico's misconduct impairs Plaintiffs' ability to go to trial and threatens the rightful decision in this case is correct. Thus, "the factor of prejudice to plaintiffs weighs strongly in favor of granting terminating sanctions." R&R at 74.

### 3.   The Availability Of Less Drastic Sanctions

The fifth factor concerns the availability of less drastic sanctions. The Ninth Circuit has identified "three additional considerations . . . 'to assess whether a district court had adequately considered less drastic sanctions: (1) whether it 'explicitly discussed the alternative of lesser sanctions and explained why it would be inappropriate,' (2) whether it had 'implemented lesser sanctions before ordering [entry of a default judgment]', and (3) whether the district court had 'warned the offending party of the possibility [of a default judgment].'" *Transamerica Life Ins.*, 93 F.4th at 1147–48; *see also Jones*, 95 F.4th at 736 (less drastic sanctions should also be considered under Rule 37(e)).

First, the R&R discusses the availability of less drastic sanctions at length and determined that "none of the lesser sanctions would suffice to remedy the consequences of Irico's systematic and egregious spoliation, violations of court orders and dilatory and bad faith litigation tactics." R&R at 76 (considering and rejecting monetary sanctions, an adverse jury instruction, and issue or fact preclusion as inadequate). Thus, the first consideration is satisfied.

Second, the R&R correctly found that "the fact that the court has not implemented alternative sanctions before striking the answer is of minor consequence." *Id.* (citing *Hester v. Vision Airlines, Inc.*, 687 F.3d 1162, 1170 (9th Cir. 2012)). This is particularly true where, as here, the court explained why less drastic sanctions are insufficient and warned the offending party of the possibility of

---

[31] These documents—Exhibits 28–30 to Margulies Declaration—are not properly in the record. In addition, Margulies Exhibits 2, 4 (pages 36–38 thereof), 5 (pages 105–106 & 108 thereof), 7 (page 65 thereof), 31, 33 and 34 are not properly in the record.

32

PLS.' RESP. TO IRICO DEFS.' OBJS. TO SPECIAL MASTER'S R&R ON PLS.' MOT. FOR TERMINATING SANCTIONS; Master File No. 07-CV-5944-JST

dismissal. *Hester*, 687 F.3d at 1170. Moreover, the Court has issued multiple Orders criticizing Irico's discovery misconduct. *See* ECF Nos. 5944, 6074 (adopted by ECF No. 6093), 6115, 6146, 6264 & 6324. In addition, the Orders relating to the admissibility of other defendants' meeting reports (ECF Nos. 5944, 6074) were, in effect, a sanction against Irico because they resulted from the determination that it was "fruitless" to order further interrogatory answers regarding Irico's participation in the conspiracy because Irico was "willfully ignorant of its discovery obligations." ECF No. 5944 at 2.

Finally, the Court has forcefully warned Irico that its "continuing failure to comply with discovery orders risks terminating sanctions as well as less severe sanctions." ECF No. 6264 at 7; *see also* ECF No. 6324 at 6 (same). In addition, after describing Irico's misconduct throughout the litigation, the Court invited Plaintiffs to file a motion for sanctions. Su Order at 13. Thus, Irico was on notice in December 2022 that severe sanctions were possible given its wholesale spoliation of evidence and violations of two Court Orders in failing to produce Mr. Su. Yet, Irico flagrantly violated the Su Order, producing a mere 32 documents, and deliberately curating its response to exclude highly relevant documents revealing its claims regarding Mr. Su's "resignation" to be false. In other words, even after the Court's stern warnings, Irico did not change its dishonest behavior.

In sum, the Special Master's conclusion that "the imposition of a lesser sanction earlier would have been pointless" because "there is no reason to expect Irico to change course[,]" is well supported by the record. R&R at 76–77. *See also Hester*, 687 F.3d at 1170 ("'[i]t is appropriate [for a district court] to reject lesser sanctions where the court anticipates continued deceptive misconduct'") (quoting *Anheuser-Busch*, 69 F.3d at 352) (alterations in original). In such cases, "the most severe in the spectrum of sanctions provided by statute or rule must be available to the district court . . . , not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent." *Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 643 (1976).

The cases on which Irico relies to argue terminating sanctions are unwarranted (Obj. at 20–23; 33–34) are inapposite. None involved a party's willful destruction of virtually all its evidence relevant to the core issues in the case. Nor do any of them involve an antitrust conspiracy, thus they provide no support for Irico's novel claim that lesser sanctions are appropriate because its co-conspirators

33

PLS.' RESP. TO IRICO DEFS.' OBJS. TO SPECIAL MASTER'S R&R ON PLS.' MOT. FOR TERMINATING SANCTIONS; Master File No. 07-CV-5944-JST

have produced some evidence of its participation in the conspiracy. *See, e.g., Nursing Home Pension Fund v. Oracle Corp.*, 254 F.R.D. 559, 561, 564 (N.D. Cal. 2008) (denying terminating sanctions because Oracle had preserved the files of 30 percipient witnesses, and "plaintiffs have received a large quantity of materials through the discovery process[,]" thus they could not demonstrate the requisite prejudice); *Al Otro Lado v. Wolf*, No. 3:17-cv-02366-BAS-KSC, 2021 WL 631789, at *7 (S.D. Cal. Feb. 18, 2021) ), *report and recommendation adopted sub nom. Al Otro Lado, Inc. v. Mayorkas*, No. 19-CV-01344-BAS-MSB, 2021 WL 1170212 (S.D. Cal. Mar. 29, 2021) (declining an adverse inference instruction because defendants produced "hundreds of thousands" of other documents and plaintiffs deposed "dozens of witnesses," thus, "the spoliated meeting notes . . . are certainly not the only source of evidence in support of plaintiff's claims"); *Apple Inc. v. Samsung Elecs. Co.*, 888 F. Supp. 2d 976, 994 (N.D. Cal. 2012) (rejecting severe adverse inference instruction because "evidence of Apple's resulting prejudice is not particularly strong. Here, Samsung produced over 12 million pages of documents[,]" including "over 70,000 pages . . . from the very custodians whose documents Apple identified as having been likely destroyed.").

*In re Google Play Store Antitrust Litig.*, 664 F. Supp. 3d 981 (N.D. Cal. 2023) (Obj. at 20), is also distinguishable. There, the court found that Google had intentionally failed to turn off the auto-delete function for its internal "Chat" messages. *Id.* at 993–94. The court declined to order terminating sanctions, however, because Google had implemented a proper legal hold for 360 employees and had produced relevant employee emails and other documents for 40 custodians. *Id.* at 986.[32]

The facts of these cases stand in stark contrast to Irico's wholesale destruction of relevant evidence, its eight-year disappearance from the case which put virtually all Irico witnesses beyond the power of this Court, its failure to produce *one of only two* remaining percipient witnesses, its repeated (and continuing) misrepresentations to the Court about the foregoing, and its violation of "at least five

---

[32] *See also AdvantaCare Health Partners v. Access IV*, No. C 03-04496 JF, 2004 WL 1837997, *6 (N.D. Cal. Aug. 17, 2004) (an adverse inference instruction "would restore Plaintiffs to the position in which they would have been had Defendants not engaged in misconduct," because which files defendants copied "goes to the heart of Plaintiffs' claims."); *Fjelstad*, 762 F.2d at 1343 (defendants' "single willful violation" of a discovery order was not sufficiently egregious to warrant terminating sanctions, and the violation did not prejudice plaintiffs); *Reinsdorf v. Skechers U.S.A., Inc.*, 296 F.R.D. 604, 631–32 (C.D. Cal. 2013) (no sanction imposed; terminating sanctions not sought or considered).

34

PLS.' RESP. TO IRICO DEFS.' OBJS. TO SPECIAL MASTER'S R&R ON PLS.' MOT. FOR TERMINATING SANCTIONS; Master File No. 07-CV-5944-JST

court orders." R&R at 56–57. Irico's misconduct "'make[s] it impossible for a court to be confident that the parties will ever have access to the true facts.'" *Shenzhenshi Haitiecheng Sci. & Tech. Co. v. Rearden LLC*, No. 15-CV-00797-JST, 2016 WL 5930289, at *10 (N.D. Cal. Oct. 11, 2016) (quoting *Connecticut Gen. Life Ins.*, 482 F.3d at 1097). The breadth, severity, and repeated nature of Irico's dishonesty requires terminating sanctions:

> There is no point to a lawsuit, if it merely applies law to lies. True facts must be the foundation for any just result. Sometimes, as in *Anheuser-Busch*, a party's discovery violations make it impossible for a court to be confident that the parties will ever have access to the true facts. The district court found that to be so in this case. The magistrate judge found that 'EEC's conduct in the litigation has cast such a pall upon EEC's integrity and upon a fair and just resolution on the merits that no alternative sanction could be effective.' The district judge expressly found this to be 'a perfect expression' of the risk of prejudice and the inappropriateness of lesser sanctions.

*Valley Engineers Inc. v. Elec. Eng'g Co.*, 158 F.3d 1051, 1058 (9th Cir. 1998).

### D.  A Trial On Damages, Or Irico's Defenses, Is Not Required Or Appropriate

Irico argues that even if terminating sanctions are granted, due process and the Seventh Amendment require a jury trial on damages. Opp. at 34–35. Not so. The Ninth Circuit holds there is no right to a jury trial on damages following default. "[A]fter a default judgment has been entered under Fed. R. Civ. P. 37(b)(2), a party has no right to jury trial under either Fed. R. Civ. P. 55(b)(2), which authorizes a district court to hold an evidentiary hearing to determine the amount of damages, or the Seventh Amendment." *Adriana Int'l*, 913 F.2d at 1414. Irico's similar request regarding the defenses it has asserted in its summary judgment motion also lacks merit. The loss of evidence and testimony due to Irico's misconduct precludes a fair trial on Irico's defenses, all of which are intertwined with liability. *See supra* at 31; AR Doc. 14.

### CONCLUSION

For all the foregoing reasons, the Court should adopt the R&R's findings and recommendations in their entirety and enter a default judgment against Irico. Irico does not object to the recommendation that the Court award monetary sanctions to Plaintiffs, thus Plaintiffs request that the Court adopt that recommendation as well.

35

PLS.' RESP. TO IRICO DEFS.' OBJS. TO SPECIAL MASTER'S R&R ON PLS.' MOT. FOR TERMINATING SANCTIONS; Master File No. 07-CV-5944-JST

1

Dated: July 18, 2024

Respectfully submitted,

2

/s/ R. Alexander Saveri

3

R. Alexander Saveri (173102)
Geoffrey C. Rushing (126910)
Matthew D. Heaphy (227224)
David Y. Hwu (281780)
SAVERI & SAVERI, INC.
706 Sansome Street
San Francisco, CA 94111
Telephone: (415) 217-6810
Facsimile: (415) 217-6813

4

5

6

7

8

*Lead Counsel for Direct Purchaser Plaintiffs*

9

/s/ Mario N. Alioto

10

Mario N. Alioto (56433)
Lauren C. Capurro (241151)
TRUMP, ALIOTO, TRUMP & PRESCOTT
LLP
2001 Union Street, Suite 482
San Francisco, CA 94123
Telephone: (415) 563-7200
Facsimile: (415) 346-0679

11

12

13

14

*Lead Counsel for Indirect Purchaser Plaintiffs*

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLS.' RESP. TO IRICO DEFS.' OBJS. TO SPECIAL MASTER'S R&R ON PLS.' MOT. FOR TERMINATING
SANCTIONS; Master File No. 07-CV-5944-JST