Mario N. Alioto (56433)
Lauren C. Capurro (241151)
TRUMP, ALIOTO, TRUMP & PRESCOTT LLP
2001 Union Street, Suite 483
San Francisco, CA 94123
Telephone: 415-563-7200
Facsimile: 415- 346-0679
Email: malioto@tatp.com
        laurenrussell@tatp.com

*Lead Counsel for the*
*Indirect Purchaser Plaintiffs*

Robert J. Gralewski, Jr. (196410)
KIRBY McINERNEY LLP
1420 Kettner Boulevard, Suite 100
San Diego, CA 92101
Telephone: 858-834-2044
Email: BGralewski@kmllp.com

*Additional Counsel for the*
*Indirect Purchaser Plaintiffs*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | MASTER FILE NO. 4:07-cv-5944-JST<br>Case No. 4:17-cv-04067-JST |
| This Document Relates to:<br><br>*Luscher, et al. v. Mitsubishi Electric Corp.*, No. 4:17-cv-04067-JST | MDL NO. 1917<br><br>**INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR ORDER AUTHORIZING DISTRIBUTION OF SETTLEMENT FUNDS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Hearing Date: September 26, 2024<br>Time:          2:00 p.m.<br>Courtroom:   6, 2nd Floor<br>Judge:        Hon. Jon S. Tigar |

# TABLE OF CONTENTS

Page

I. INTRODUCTION .................................................................................................... 4

II. STATEMENT OF RELEVANT FACTS ................................................................. 5

    A. The Settlement and Settlement Approval ................................................... 5

    B. Notice to Class Members Regarding the Settlement and Filing Claims ................. 5

    C. The Plan of Distribution ............................................................................. 6

    D. Claims Administration ................................................................................ 7

        1. Summary of Settlement Administrators' Receipt and Review
           of Claims ............................................................................... 7

        2. The Settlement Administrator's Audit Criteria and Results ...................... 10

        3. Proposal for Payment of Late Claims ......................................... 11

    E. The Net Settlement Fund Available for Distribution ................................. 12

        1. The Amount Available for Distribution ....................................... 12

        2. Amounts Owed to the Settlement Administrator and Projected
           Future Expenses ................................................................. 12

    F. Distribution of the Net Settlement Fund .................................................... 13

III. ARGUMENT ......................................................................................................... 13

    A. The Court Should Approve the Settlement Administrator's
        Recommendations Regarding Acceptance and Rejection of Claims ..................... 14

    B. The Court Should Adopt the Settlement Administrator's and Lead
        Counsel's Recommendation Regarding Late Claims ............................ 14

    C. The Court Should Authorize Payment of the Settlement Administrator's
        Unpaid Fees and Expenses and Authorize the Reserve for Future Expenses ......... 16

    D. The Court Should Adopt the Settlement Administrator's Proposal for
        Distribution of Residual Funds ................................................... 18

    E. The Court Should Release the 10% Remainder of Attorney's Fees
        Previously Withheld by the Court ................................................ 18

IV. CONCLUSION ....................................................................................................... 19

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Anthem, Inc. Data Breach Litig.*,
    327 F.R.D. 299 (N.D. Cal. 2018) ...................................................................................... 14

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
    No. 07-cv-5944-JST, 2016 WL 3648478 (N.D. Cal. July 7, 2016) ............................................. 6

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
    No. 02-MD-1486 (N.D. Cal. 2016) .................................................................................... 15

*In re Gypsum Antitrust Cases*,
    565 F.2d 1123 (9th Cir. 1977) ........................................................................................... 15

*In re Int'l Air Transp. Surcharge Antitrust Litig.*,
    No. M 06-01793, 2011 WL 6337625 (N.D. Cal. Dec. 19, 2011),
    *aff'd*, 577 F. App'x 711 (9th Cir. 2014) .......................................................................... 14

*In re Orthopedic Bone Screw Prods. Liab. Litig.*,
    246 F.3d 315 (3d Cir. 2001) .............................................................................................. 15

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
    No. 07-MD-01827 (N.D. Cal. 2014) ................................................................................ 15

*In re Valdez*,
    289 F. App'x 204 (9th Cir. 2008) ..................................................................................... 15

*Welch & Forbes, Inc. v. Cendant Corp.* (*In re Cendant Corp. Prides Litig.*),
    233 F.3d 188 (3d Cir. 2000) .............................................................................................. 15

*Zients v. LaMorte*,
    459 F.2d 628 (2d Cir.1972) ............................................................................................... 15

**Other Authorities**

4 William B. Rubenstein, *Newberg on Class Actions*, § 12:15 (5th ed.) (Westlaw 2018) ............. 15

4 William B. Rubenstein, *Newberg on Class Actions*, § 12:19 (5th ed.) (Westlaw 2018) ............. 13

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on September 26, 2024, at 2:00 p.m., or as soon thereafter as the matter may be heard, before the Honorable Jon S. Tigar, United States District Judge, Oakland Courthouse, located at 1301 Clay Street, Courtroom 6, 2nd Floor, Oakland, California, the Indirect Purchaser Plaintiffs ("IPPs") will and hereby do move the Court for an Order authorizing the distribution of settlement proceeds to class members who submitted valid claims.

IPPs request that the Court enter an Order approving the distribution of settlement funds in accordance with the Plan of Distribution previously approved by the Court (ECF No. 6335) to members of the Indirect Purchaser Class whose claims have been approved by the Court-appointed Settlement Administrator, The Notice Company. In addition, IPPs seek an Order: (1) authorizing payment to the Settlement Administrator for unreimbursed costs and expenses; and (2) releasing the 10% remainder of attorney's fees previously withheld by the Court.

This Motion is based on this Notice of Motion, the following Memorandum of Points and Authorities in support thereof, the accompanying Declaration of Joseph M. Fisher, the pleadings and papers on file in this action and such other matters as may be presented to the Court at or prior to the hearing on the Motion.

Dated: July 19, 2024

s/ Mario N. Alioto
Mario N. Alioto (56433)
Lauren C. Capurro (241151)
TRUMP, ALIOTO, TRUMP & PRESCOTT, LLP
2001 Union Street, Suite 483
San Francisco, CA 94123
Telephone: (415) 563-7200
Facsimile: (415) 346-0679
Email: malioto@tatp.com
        laurenrussell@tatp.com

**Lead Counsel for the Indirect Purchaser Plaintiffs**

Robert J. Gralewski, Jr. (196410)
KIRBY McINERNEY LLP
1420 Kettner Boulevard, Suite 100
San Diego, CA 92101
Telephone: (858) 834-2044
Email: BGralewski@kmllp.com

**Counsel for the Indirect Purchaser Plaintiffs**

2

## **STATEMENT OF ISSUES TO BE DECIDED**

1.      Whether to authorize payment of all claims as approved by the Settlement Administrator from the Net Settlement Fund according to the weighted pro rata Plan of Distribution approved by the Court and set forth in Exhibit B to the Fisher Declaration.

2.      Whether to adopt and approve IPPs Lead Counsel's recommendation that the Court pay "Late Claims" to the extent, and in the manner, set forth herein.

3.      Whether to authorize the payment to the Settlement Administrator of fees, costs, and expenses incurred, but as yet unpaid, in the amount of $668,022.

4.      Whether to authorize reserving $345,475 for future payment to the Settlement Administrator and accountants for projected future fees and expenses.

5.      Whether to release the 10% remainder of attorney's fees previously withheld by the court pursuant to its November 6, 2023 Order Granting in Part Motion for Attorney's Fees, Expenses, and Incentive Awards for Class Representatives (ECF No. 6337).

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

The Indirect Purchaser Plaintiffs ("IPPs") have settled this action with Defendant Mitsubishi Electric Corporation ("Mitsubishi Electric"), resulting in a settlement totaling $33,000,000. The Court's Order granting final approval to IPPs' settlement with Mitsubishi Electric and entering its Final Judgment was entered on November 6, 2023 (ECF No. 6335).

As explained below and in the Declaration of Joseph M. Fisher (the "Fisher Decl."), filed herewith, all the prerequisites to a prompt distribution of funds to claimants have been satisfied. The funds to be distributed are already in hand, having been deposited in escrow by Mitsubishi Electric. The Court has adopted a Plan of Distribution that governs the distribution of funds. ECF No. 6335 ¶ 5. Class member participation in the claims process has been robust. The Notice Company, the Court-appointed Settlement Administrator for the indirect purchaser settlement, has processed and approved a total of 252,015 Timely Claims (defined herein) accounting for 107,616,288 CRT Weighted Units consisting of the following: (i) 134,006 previously-submitted claims representing 71,657,744 CRT Weighted Units, (ii) 3,367 newly-submitted claims consisting of updates to previously-submitted claims accounting for 11,404,483 CRT Weighted Units, and (iii) 114,642 claims from new claimants accounting for 24,554,061 CRT Weighted Units. Fisher Decl. ¶ 9.

IPPs request that the Court enter the Proposed Order submitted herewith, which authorizes payment of all approved claims from the Net Settlement Fund according to the weighted pro rata Plan of Distribution previously approved by the Court. The Proposed Order also incorporates IPPs' proposal that the Court approve payments to late claimants (who filed their claims after the Court-ordered deadline, but before September 13, 2023 (three months after the Court-ordered deadline)) in the same amount they would have received had they timely filed their claims.

In conjunction with the distribution of funds, IPPs further request that the Court: (1) authorize payment to the Settlement Administrator for unreimbursed fees and expenses; (2) approve the hold back of $345,475 for future fees and expenses; and (3) release the 10% remainder of

4

1    attorney's fees previously withheld by the Court.

2    **II.     STATEMENT OF RELEVANT FACTS**

3         **A.     The Settlement and Settlement Approval**

4         The Settlement Fund was created as a result of IPPs' settlement with Mitsubishi Electric,

5    which the Court approved and entered its Final Judgment on November 6, 2023 (ECF No. 6335).

6         **B.     Notice to Class Members Regarding the Settlement and Filing Claims**

7         Dissemination of notice to the Settlement Class began in February 2023, affording Class

8    Members the opportunity to submit claims and to object to or request exclusion from the

9    settlement. ECF No. 6192-2 ¶¶ 6, 9 (Declaration of Joseph M. Fisher re: Mitsubishi Electric

10   Notice Program and Claims Administration).

11        Print notices appeared in *People Magazine*, *Us Weekly*, and *Readers Digest*; press releases

12   in English and Spanish were distributed through *PR Newswire* and were picked up and

13   posted/published by 457 media outlets; notices were posted online in both English and Spanish at

14   www.CRTclaims.com resulting in approximately 5.4 million page views; notice was disseminated

15   via paid digital media through *Google Display Network, Yahoo!, Facebook, YouTube, LinkedIn,*

16   and *AARP* as well as search ads on *Google.com*; notice was disseminated through the digital

17   newsletter publications of *Dotdash Meredith* (magazine titles include *Better Homes & Gardens*

18   and *Southern Living*), *Golf Magazine*, and *Kiplinger*; and notice via television ads was circulated

19   on cable TV networks including MSNBC, Hallmark, The Weather Channel, COMET, and The

20   Action Channel, among others. *Id.* ¶¶ 6-15.

21        In addition to the digital and print media program, notice was sent by email or first-class

22   mail to representatives from third-party claim submission companies or law firms that had

23   contacted the Settlement Administrator in connection with the Prior Settlements;[1] to persons and

24

25   ---

[1] "Prior Settlements" refer to the previous nine settlements reached with Defendants Chunghwa,
26   LG, Philips, Panasonic, Hitachi, Toshiba, Samsung SDI, Thomson, and Technologies Displays
     America. *See* Detailed Notice of Settlement (ECF No. 6104-1).

27

28   INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR ORDER AUTHORIZING
     DISTRIBUTION OF SETTLEMENT FUNDS
     Case No. 4:17-cv-04067-JST; Master File No. 4:07-cv-5944-JST

businesses who submitted indirect purchaser claims in the Prior Settlements; to every Fortune 500 Company for each of the class years (1995 to 2007); to the largest private colleges, universities and private secondary schools in the United States; and to the 48 largest hospitals in the United States. Further, approximately 12.9 million notices were delivered by email to consumers and small businesses selected based on demographic characteristics consistent with the Class definition. All notices identified the Court-approved deadline of June 13, 2023, for the submission of claims. ECF No. 6192-2 ¶¶ 16-19.

As part of the notice program described above, The Notice Company established and maintained a dedicated website, toll-free phone line, and Post Office address where potential Class Members could access or request additional documents and information relating to the settlement, including copies of the notices, claim forms, and other Court documents. *Id.* ¶¶ 6-8, 21-24.

The Court's Order of Final Approval filed November 6, 2023, recognized that "[t]he notice given to the Class . . . was the best notice practicable under the circumstances. Said notice . . . fully satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure, the requirements of due process, and all applicable state laws." ECF No. 6335 ¶ 8.

C.      The Plan of Distribution

The Court-approved Plan of Distribution uses "the same weighted pro-rata plan of distribution that this Court has approved for the prior settlements in this case." *Id.* ¶ 3(d). Settlement Class members who filed valid claims are eligible to receive their pro rata share of the net Mitsubishi Electric settlement fund based on the total number of valid claims filed, and the number and type of CRT Products each claimant purchased.[2] Class members who filed valid claims against the Prior Settlements will automatically receive their pro-rata share of the

---

[2] Claims for Standard CRT Televisions (televisions with a screen size of less than 30 inches) will receive a weight of 1; Large CRT Televisions (televisions with a screen size of 30 inches or larger) will receive a weight of 4.3; and CRT Computer Monitors will receive a weight of 3. *See In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. 07-cv-5944-JST, 2016 WL 3648478, at *18 (N.D. Cal. July 7, 2016).

Mitsubishi Electric settlement without having to re-file their claim.[3] All other class members who submit valid claim forms will be entitled to recover.

**D.    Claims Administration**

**1.  Summary of Settlement Administrators' Receipt and Review of Claims**

The Settlement Administrator received a total of 3,087,094 claims through June 13, 2023. Fisher Decl. ¶ 9. The Settlement Administrator conducted an extensive review and audit of those claims. *Id.* ¶¶ 7-22. As a result of that process, the Settlement Administrator is recommending acceptance of 252,015 Timely Claims accounting for 107,616,288 CRT Weighted Units consisting of the following: (i) 134,006 previously-submitted claims representing 71,657,744 CRT Weighted Units, (ii) 3,367 newly-submitted claims consisting of updates to previously-submitted claims accounting for 11,404,483 CRT Weighted Units, and (iii) 114,642 claims from new claimants accounting for 24,554,061 CRT Weighted Units. *Id.* ¶ 9.

Timely Claims consisted of: (i) eligible End-User claimants from the Prior Settlements that were automatically entered into the Mitsubishi Electric settlement; and (ii) newly-submitted claims that were submitted or postmarked by June 13, 2023. Claims were submitted either directly by the claimant ("non-represented claimant") or by a third-party representative, attorney, or agent ("Claims Aggregator") on behalf of a claimant ("represented claimant"). *Id.*

As described in the Detailed Notice of Settlement and Summary Notice of Settlement (ECF No. 6195), all eligible End-User claimants from the Prior Settlements were automatically entered into the Mitsubishi Electric settlement. There were 137,373 End-User claims that were initially entered into the Mitsubishi Electric settlement accounting for 83,062,227 CRT Weighted Units. These claims consisted of 83,278 non-represented prior claims accounting for 5,456,352 CRT Weighted Units and 54,095 represented prior claims accounting for 77,605,875 CRT

---

[3] All claims processed and approved as part of the Prior Settlements, including late claims, will be considered valid, timely claims for the Mitsubishi Electric settlement and therefore, eligible to automatically receive a full pro-rata share of the Mitsubishi Electric settlement without having to re-file their claim.

INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR ORDER AUTHORIZING DISTRIBUTION OF SETTLEMENT FUNDS
Case No. 4:17-cv-04067-JST; Master File No. 4:07-cv-5944-JST

Weighted Units. Updated claims were submitted by 3,114 non-represented claimants totaling 126,521 CRT Weighted Units and 253 represented claimants totaling 11,277,962 CRT Weighted Units. These updated claims were treated as newly-submitted claims and are reported below. The final number of previously-submitted claims entered into the Mitsubishi Electric settlement, excluding updated claims as described above, was 134,006 representing 71,657,744 CRT Weighted Units. Fisher Decl. ¶ 9(A).

The Settlement Administrator received a total of 2,953,088 newly-submitted Timely Claims through June 13, 2023, including 3,367 claims that were updates of previously-submitted claims and 2,949,721 claims from new claimants. Claims from new claimants consisted of 485 claims that were submitted as paper claims with a timely postmark, and 2,949,236 claims submitted online. New non-represented claimants submitted 111,564 Timely Claims with CRT Weighted Units claimed totaling10,866,383. New represented claimants submitted 3,078 Timely Claims with CRT Weighted Units claimed totaling 13,687,678. *Id.* ¶ 9(B).

In total, there were 3,087,094 Timely Claims received representing 289,218,810 CRT Weighted Units. *Id.* ¶ 9. As discussed further herein, the Settlement Administrator conducted an extensive review and audit process to verify these claims.

After the June 13, 2023 Court-approved deadline for the submission of Timely Claims, the Settlement Administrator discontinued the online process for submitting claims but continued to receive Late Claims by mail. The Settlement Administrator received 18 Late Claims for 56,160 CRT Products representing 167,455 CRT Weighted Units. *Id.* ¶ 10, Ex. A. A total of 15 Late Claims were postmarked within 16 days of the claims deadline. The latest of the Late Claims was postmarked September 5, 2023, less than three months after the claims deadline. *Id.* ¶ 10.

The Settlement Administrator reviewed each Claim form received for compliance with the settlement's requirements. Some claims were found to be deficient or incomplete. Among the various types of deficiencies found were the following:

- claims submitted by a Claims Aggregator who failed to provide purchase quantities

8

for CRT Products on the Claim Form or only partially completed this information so that the Claim Form showed "N/A" or "TBD" or "0" or was blank or some combination thereof (referred to as "Placeholder Claims");

- non-represented claimants who submitted incomplete claim forms, including missing name and/or contact information, missing claim eligibility information, missing purchase quantities, or failure to sign the Proof of Claim form;

- claims for ineligible purchases, such as purchases of CRT Products made directly from any of the Defendants, purchases of non-CRT Products, purchases of Sony-branded products, purchases made outside of the Class Period, purchases made outside of the United States, purchases made in a state that is not one of the 30 eligible states under the settlement or the District of Columbia, or multi-state purchases where central purchasing of all CRT Products in one of the eligible states was asserted but not properly documented;

- claims submitted by a Claims Aggregator on behalf of a claimant without an agreement demonstrating the authority of the Claims Aggregator to act as the claimant's agent or representative;

- duplicate claims submitted by the same corporate claimant; for example, a parent corporation submitting a claim that was inclusive of the CRT purchases of a subsidiary, where the subsidiary had already submitted its own claim for those purchases;

- duplicate claims submitted by the same individuals, where all identifying information available (name, address, phone and/or email) are the same, that appeared to represent duplicate purchases of CRT Products;

- duplicate claims submitted by the same entity or individual that filed in the Prior Settlement. As noted above, all eligible End-User claimants from the Prior Settlements were automatically entered into the Mitsubishi Electric settlement. The

9

Settlement Administrator sent direct notice to these claimants and informed them of their previously-approved quantities. If a claimant had additional units to add to their claim, they were instructed to submit a new claim with a full report of all units claimed for the New Settlement. The Settlement Administrator identified claimants from the Prior Settlement who submitted claims in the New Settlement. Each of those claims from the Prior Settlement was flagged as a duplicate claim and the newly-submitted claim was given priority;

- "Competing Claims" submitted by Claims Aggregators, where more than one Claims Aggregator each submitted a claim on behalf of the same claimant;

- potentially invalid claims that appear to have been programmatically generated and submitted by computer-created "bots" (short for robots) or by other scam-generating sources and not by legitimate claimants (collectively "bot-scam" claims).

*Id.* ¶ 11. A detailed description of the Settlement Administrator's procedures for addressing these different categories of deficient claims is set forth in the Fisher Declaration. *Id.* ¶¶ 12-16.

## 2.  The Settlement Administrator's Audit Criteria and Results

All claims were subject to review and/or audit by the Settlement Administrator. For claims submitted directly by Class Members, the Settlement Administrator set an audit threshold at purchases of 120 CRT Products for individual claims, 100 CRT Products for small businesses, 250 CRT Products for medium businesses, and 1,000 CRT Products for large businesses, where business size was based on the number of employees as reported by the claimant. Where business size could not be determined, the audit threshold was set at the purchase of 50 CRT Products. Claimants were selected and placed into an audit pool consisting of 760 individuals and 55 businesses. For claims submitted by Claims Aggregators, the Settlement Administrator began by auditing large claims consisting of the top 5% of claims submitted by each Claims Aggregator. The Settlement Administrator also selected additional claims for audit based on comparisons of

10

claim submissions by comparable companies. *Id.* ¶ 18.

Considering all newly-submitted claims, including claims that were updates of previously-submitted claims, reviews and audits were performed on claims that accounted for over 90% of claimed CRT Weighted Units. The audit process involved reviewing voluminous purchase data and multiple sources of documentation for numerous claims, including when appropriate vetting through publicly-available records and other third-party data sources. The Settlement Administrator reviewed and evaluated the claimed purchases of CRT Products by performing direct audits and, in appropriate cases, working with Claim Aggregators to confirm their adherence to the Settlement Administrator's reporting requirements. *Id.* ¶ 19.

Audit notices were sent to all audited claims, providing instructions to claimants or their representatives on how to respond to the audit and the deadline for responses. The audit notices informed the claimant that if no response was received, then claimed purchases of numerous CRT Products would be reduced to a claim for a $10 minimum payment. When the Settlement Administrator received responses with sufficient support for the originally claimed units, or for revised purchase quantities submitted by the claimant or its authorized representative, the claims were accepted or revised, and the audit was closed. For those audits where questions remained after audit responses were received and more information was required, the Settlement Administrator pursued follow-up communications until the audit was resolved with the claimant. *Id.* ¶ 20.

The detailed results of the Settlement Administrator's audit, by category of claim, are set forth in the Fisher Declaration filed herewith. *Id.* ¶¶ 21-22.

### 3.  Proposal for Payment of Late Claims

Lead Counsel and the Settlement Administrator have devised a fair and balanced proposal for the payment of Late Claims. Lead Counsel and the Settlement Administrator recommend that the Court adopt the following approach:

- Late Claims submitted within three months of the claims deadline will be treated

11

1    and paid equivalently to Timely Claims.[4]

2    • Late Claims submitted later than three months after the claims deadline will not be

3      processed or paid.

4    Fisher Decl. ¶ 28.

5    **E.      The Net Settlement Fund Available for Distribution**

6        **1.  The Amount Available for Distribution**

7        Mitsubishi paid a total of $33,000,000 in settlement of this case. There have been a series

8    of deductions from this amount for Court approved attorney's fees, expenses, and incentive

9    awards paid to the class representatives. *See*, *e.g.*, Order Awarding Attorney's Fees, Expenses, and

10   Incentive Awards for Class Representatives (ECF No. 6337). Interest has also accrued on the

11   settlement funds and taxes have been paid. The projected balance of these monies is $25,415,892.

12   Fisher Decl. ¶ 23.

13       **2.  Amounts Owed to the Settlement Administrator and Projected Future**
             **Expenses**
14
15       The Settlement Administrator has unpaid invoices for claims administration through June

16   2024 in the amount of $608,522. In addition, the Settlement Administrator incurred fees and costs

     of $59,500 to implement the bot-scam verification process as authorized by the Court. Fisher Decl.
17
     ¶ 24. The Settlement Administrator's costs and fees incurred through June 2024 total $668,022.
18
         Ongoing costs, not yet incurred, include projected administrative costs of $330,475 and
19
     accounting fees of $15,000. *Id.* ¶ 25. Total costs and fees of claims administration not yet incurred
20
     are projected to sum to $345,475.
21
         Class Counsel has reviewed these claims administration expenses and has determined them
22
     to be reasonable and necessary for the claims administration in this case. By this motion, IPPs
23
     Counsel seeks authorization to: (i) pay the amount of costs and fees incurred through June 2024
24

25   _____

26   [4] The last Late Claim was postmarked September 5, 2023, which is less than three months from
     the claims deadline. *See* Fisher Decl. ¶¶ 10, 28, Ex. A.
27
28   INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR ORDER AUTHORIZING
        DISTRIBUTION OF SETTLEMENT FUNDS
        Case No. 4:17-cv-04067-JST; Master File No. 4:07-cv-5944-JST

1    from the Net Settlement Fund, as further detailed below, and (ii) reserve $345,475 for payment of

2    ongoing costs, not yet incurred.

3         **F.    Distribution of the Net Settlement Fund**

4         The distribution formula requires a weighted *pro rata* distribution to all members of the 30

5    eligible states and the District of Columbia Classes that filed valid claims, subject to a minimum

6    payment of $10 per claimant and a maximum payment of three times the estimated money

7    damages per claimant. The minimum payment will be achieved by first calculating payments by

8    allocating funds based on each claimant's CRT Weighted Units, identifying those claims that

9    would receive less than $10, and then going through a process of recalculating payments so that all

10   claims are grossed up to a $10 minimum payment. Payments will be issued by check or

11   electronically. *Id.* ¶ 27.

12        The Settlement Administrator has already determined the approved CRT Weighted Units

13   for each claim. *Id*. ¶ 29, Ex. B. The Settlement Administrator has also calculated the approximate

14   settlement value of a single CRT Weighted Unit (approximately $0.20 subject to a $10 minimum

15   payment per claimant). *Id*. ¶ 29.

16   **III.   ARGUMENT**

17        IPPs request an Order authorizing the distribution of the Net Settlement Fund to the

18   approved claimants based on the approved CRT Weighted Units set forth in Exhibit B to the

19   Fisher Declaration. Entry of an Order permitting a distribution of the Net Settlement Fund to all

20   approved claimants is proper and appropriate at this time because final judgment has been entered.

21   *See* 4 William B. Rubenstein, *Newberg on Class Actions*, § 12:19 (5th ed.) (Westlaw 2018). As set

22   forth above, the Court has approved the Plan of Distribution that allocates the Net Settlement Fund

23   on a weighted pro rata basis based on each claimant's approved CRT Weighted Units as a

24   percentage of the total CRT Weighted Units claimed. Distribution of the Net Settlement Fund, as

25   set forth in Exhibit B to the Fisher Declaration, will give effect to the Court-approved pro rata

26   Plan of Distribution, which compensates class members based on the extent of their injuries. *See*

27

28

13

INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR ORDER AUTHORIZING
DISTRIBUTION OF SETTLEMENT FUNDS
Case No. 4:17-cv-04067-JST; Master File No. 4:07-cv-5944-JST

*In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 332 (N.D. Cal. 2018) ("A plan of allocation that reimburses class members based on the type and extent of their injuries is generally reasonable." (citation omitted)).

      **A.**    **The Court Should Approve the Settlement Administrator's Recommendations Regarding Acceptance and Rejection of Claims**

      The Court should adopt the Settlement Administrator's recommendations regarding the acceptance or rejection of claims submitted on or before the applicable Claims Deadline. As set forth above, the Settlement Administrator has conducted a thorough review of claims. Fisher Decl. ¶¶ 11-16. Where it found claims that were incomplete or deficient, it gave the claimants a fair opportunity to correct or supplement them. *Id*. ¶¶ 12-16. Furthermore, its review of claims included an audit to confirm the eligibility of purchases. *Id*. ¶¶ 18-22. The Settlement Administrator processed late claims. *Id.* ¶ 10. Additionally, where possible, the Settlement Administrator used publicly available data to help audit certain claims. *Id.* ¶ 19. Based on this process, the Settlement Administrator has determined that there are 252,015 Timely Claims that merit acceptance and payment. *Id*. ¶ 9, Ex. B.

      A class action settlement administrator's decision regarding class members' eligibility to participate in a distribution of settlement funds merits deference from the Court. *In re Int'l Air Transp. Surcharge Antitrust Litig.*, No. M 06-01793, 2011 WL 6337625, at *2 (N.D. Cal. Dec. 19, 2011), *aff'd*, 577 F. App'x 711 (9th Cir. 2014) ("The Settlement Administrator, who was involved in the mediation and negotiation of the settlement agreements, and has been administering the funds for three years, has direct and extensive knowledge of this case. . .. Thus, the Court must give some deference to his recommendation as to factual matters.").

      **B.**    **The Court Should Adopt the Settlement Administrator's and Lead Counsel's Recommendation Regarding Late Claims**

      There are 18 Late Claims in this case. Lead Counsel's recommended approach—under which Late Claims submitted within three months of the claims deadline will be treated and paid equivalently to Timely Claims, and Late Claims submitted thereafter will not be processed or

14

1   paid—is fair and reasonable. Lead Counsel's approach is designed to avoid the delay and expense

2   of continuing litigation over Late Claims and to compensate all claimants.

3       "Settlement administration in a complex class action often requires courts to use their

4   equitable powers under Rule 23 to manage the disparate interests competing over a finite pool of

5   assets with which to satisfy the class. . .. A primary use of these equitable powers is balancing the

6   goals of expedient settlement distribution and the consideration due to late-arriving class

7   members. . .. Integral to this balancing, however, is the court's responsibility and inherent power

8   and duty to protect unnamed, but interested persons." *In re Orthopedic Bone Screw Prods. Liab.*

9   *Litig.*, 246 F.3d 315, 321 (3d Cir. 2001) (internal quotation marks and citations omitted).

10  Ultimately, "[t]he goal of any distribution method is to get as much of the available damages

11  remedy to class members as possible and in as simple and expedient a manner as possible." 4

12  William B. Rubenstein, *Newberg on Class Actions*, § 12:15 (5th ed.) (Westlaw 2018).

13      The Court has discretion to allow claims submitted after its Claims Deadline. *In re Gypsum*

14  *Antitrust Cases*, 565 F.2d 1123, 1128 (9th Cir. 1977). Judicial discretion in that regard flows from

15  the court's traditional equity powers to protect interested parties and class members. *Welch &*

16  *Forbes, Inc. v. Cendant Corp.* (*In re Cendant Corp. Prides Litig.*), 233 F.3d 188, 194-97 (3d Cir.

17  2000) (quoting *Zients v. LaMorte*, 459 F.2d 628, 630 (2d Cir.1972)) ("'Until the fund created by

18  the settlement is actually distributed, the court retains its traditional equity powers ... to protect

19  unnamed, but interested persons.' [] A Court may assert this power to allow late-filed proofs of

20  claim and late-cured proofs of claim."). In the exercise of that discretion, courts have allowed late

21  claims in some circumstances and denied them in others. *See, e.g.*, *In re Valdez*, 289 F. App'x 204,

22  206 (9th Cir. 2008). In many cases, courts approve the full payment of late claims.[5]

---

[5] *See, e.g.*, *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 07-MD-01827, ECF Nos. 9217, 9273
(N.D. Cal. 2014) (approving class counsel's recommendation to pay late claims submitted over 18
months after the deadline the same as timely claims); *In re Dynamic Random Access Memory
(DRAM) Antitrust Litig.*, No. 02-MD-1486, ECF Nos. 2273, 2283 (N.D. Cal. 2016) (class counsel
recommended and the court approved the payment of late claims filed up to approximately one
year after the deadline be paid in full).

INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR ORDER AUTHORIZING
DISTRIBUTION OF SETTLEMENT FUNDS
Case No. 4:17-cv-04067-JST; Master File No. 4:07-cv-5944-JST

Lead Counsel submits that paying Late Claims filed through September 13, 2023 equivalently with Timely Claims, while denying claims filed after that date, strikes the proper balance. It gives late claimants sufficient compensation for their injuries, limits the dilution to Timely Claims, and avoids further litigation. IPPs submit that this proposal is reasonable and urge the Court to adopt it.

### C.   The Court Should Authorize Payment of the Settlement Administrator's Unpaid Fees and Expenses and Authorize the Reserve for Future Expenses

The Settlement Administrator has provided Lead Counsel with invoices detailing the additional $668,022 in fees and expenses it has incurred through June 2024 to administer and audit claims submitted by the Class Members, prepare for the filing of this motion, and prepare to distribute the settlement funds to Class Members. Fisher Decl. ¶ 24. Class Counsel has reviewed these invoices. Lead Counsel also has first-hand knowledge of the work performed by the Settlement Administrator. Based on this, Lead Counsel recommends that the Court approve the payment of the Settlement Administrator's unpaid fees and expenses as fair, reasonable and necessary for the administration of claims in this complex case.

Additionally, the Settlement Administrator projects that it will incur further administrative costs and accounting fees totaling $345,475. *Id.* ¶ 25. Lead Counsel recommends that the Court reserve this amount for future payment as fair, reasonable and necessary for the administration of claims in this complex case.

The Settlement Administrator's work in this case has required a high level of skill, dedication, and effort. The Settlement Administrator had to process and track over 2,900,000 claims, over 450 of which were filed in paper form and had to be manually entered in a database. Fisher Decl. ¶ 9(B). In addition, the Settlement Administrator audited over 90% of claimed CRT Weighted Units, some requiring the review of voluminous purchase data and multiple sources of documentation for numerous claims, including when appropriate vetting through publicly-available records and other third-party data sources. *Id.* ¶ 19.

Furthermore, factual issues arose with regard to certain claims. For example, some

16

claimants sought to recover for purchases of CRT Products in states that were not included in the settlement class, or for foreign purchases of CRT Products, by asserting that their company purchased from a central office in one of the 30 eligible states or the District of Columbia. Such claims required the Settlement Administrator to investigate and procure data regarding the types and frequency of CRT Product purchases by certain types of business during the Class Period. In addition, they required investigation as to whether the claimant did, in fact, purchase their CRT Products from a central office located in one of the 30 States or the District of Columbia. *Id.* ¶ 16. This involved numerous communications with the claimant or its representative to substantiate their claims. *Id.*

Additionally, the Settlement Administrator identified 2,793,839 online claim submissions that appeared to be bot-scam claims and not submitted by legitimate claimants. A motion for approval of procedures and costs for processing bot-scam claims was submitted to the Court outlining the detailed procedures associated with handling the large number of bot-submitted claims (ECF No. 6365). The Settlement Administrator implemented the plan for claim verification as outlined and approved by the Court (ECF No. 6367). The Settlement Administrator worked with the selected third-party vendor to conduct a detailed email address verification analysis. In accordance with the claim verification notice instructions sent in response to these online submissions, the claims of the 1,665,742 claimants who did not respond or did not provide verification documentation were deemed deficient and ineligible for payment. In order to determine the authenticity of those claimants who did respond, the Settlement Administrator reviewed a combination of criteria associated with identifying ineligible claims. *Id.* ¶ 14.

In sum, the Settlement Administrator substantially increased eligible claimants' pro rata recoveries by investigating and reducing inflated claims. The Settlement Administrator should be appropriately compensated for this work. IPPs request that the Court authorize the payment of $668,022, and reserve $345,475 for future payment.

17

**D.      The Court Should Adopt the Settlement Administrator's Proposal for Distribution of Residual Funds**

The Settlement Administrator contemplates that some claimant checks may not be cashed and that some electronic payments to claimants may not be received. In that case, there will be monies remaining in the fund. The Settlement Administrator proposes that he be vested with the authority to distribute this money in his discretion at the conclusion of the claims process. The amount of this money will then be known, and the Settlement Administrator will be able to fashion a plan for the distribution of this remaining money.

**E.      The Court Should Release the 10% Remainder of Attorney's Fees Previously Withheld by the Court**

In its Order granting in part Class Counsel's motion for attorney's fees, the Court ordered that 10% of the attorney's fees awarded should be withheld until the post-distribution accounting had been filed. ECF No. 6337 ¶ 6. Since then, IPPs Counsel has continued to devote full attention to this case, including claims processing. Accordingly, IPPs Counsel request that the 10% holdback be released at this time.

Upon approval of this motion, the Settlement Administrator will immediately begin the distribution process. The vast majority of the Net Settlement Fund will be distributed to claimants within a matter of months. However, there are always issues in cases such as this, involving a large number of individual claimants and large claimants represented by third parties, which can prolong the final distribution of all funds. As noted by the Claims Administrator, there will also be follow-up distributions to claimants and likely a second-round distribution of funds not originally claimed. This process will take at least a year, *see* Fisher Decl. ¶ 30, and is wholly beyond the control of IPPs Counsel.

IPPs Counsel has every incentive to conclude this distribution as soon as possible. IPPs Counsel continues to spend time and incur expenses during the distribution process. They want to finalize this process as soon as possible and will do so.

For the foregoing reasons, IPPs Counsel request that the Court release the 10% remainder

18

1    of the attorney's fees at this time.

2    **IV.      CONCLUSION**

3          IPPs respectfully request that the Court grant this motion and enter an Order: (1)

4    authorizing payment of all claims based on the CRT Weighted Units approved by the Settlement

5    Administrator and according to the Court-approved pro rata Plan of Distribution, as set forth in

6    Exhibit B to the Fisher Declaration; (2) adopting the Settlement Administrator's and Lead

7    Counsel's recommendation regarding Late Claims; (3) authorizing payment of the Settlement

8    Administrator's unpaid fees and expenses and authorizing the reserve for future expenses; (4)

9    adopting the Settlement Administrator's proposal for distribution of residual funds; and (5)

10   releasing the 10% remainder of attorney's fees previously withheld by the Court.

11
     Dated: July 19, 2024                          _s/ Mario N. Alioto_____
12                                                 Mario N. Alioto (56433)
                                                   Lauren C. Capurro (241151)
13                                                 TRUMP, ALIOTO, TRUMP & PRESCOTT, LLP
                                                   2001 Union Street, Suite 483
14                                                 San Francisco, CA 94123
                                                   Telephone: (415) 563-7200
15                                                 Facsimile: (415) 346-0679
                                                   Email: malioto@tatp.com
16                                                        laurenrussell@tatp.com

17
                                                   **Lead Counsel for the Indirect Purchaser Plaintiffs**
18
                                                   Robert J. Gralewski, Jr. (196410)
19                                                 KIRBY McINERNEY LLP
                                                   1420 Kettner Boulevard, Suite 100
20                                                 San Diego, CA 92101
                                                   Telephone: (858) 834-2044
21                                                 Email: BGralewski@kmllp.com

22
                                                   **Counsel for the Indirect Purchaser Plaintiffs**
23

24

25

26

27
                                             19
28   ────────────────────────────────────────────────────────────
     INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR ORDER AUTHORIZING
                        DISTRIBUTION OF SETTLEMENT FUNDS
              Case No. 4:17-cv-04067-JST; Master File No. 4:07-cv-5944-JST

1

## <u>CERTIFICATE OF SERVICE</u>

2      I, Robert J. Gralewski, Jr., certify that on July 19, 2024 the foregoing document entitled

3  **INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR**

4  **ORDER AUTHORIZING DISTRIBUTION OF SETTLEMENT FUNDS;**

5  **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** was filed

6  electronically in the Court's ECF; thereby upon completion the ECF system automatically

7  generated a "Notice of Electronic Filing" as service through CM/ECF to registered e-mail

8  addresses of parties of record in this case.

9

10                    *s/ Robert J. Gralewski, Jr.*
                       Robert J. Gralewski, Jr.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR ORDER AUTHORIZING
DISTRIBUTION OF SETTLEMENT FUNDS
Case No. 4:17-cv-04067-JST; Master File No. 4:07-cv-5944-JST