Mario N. Alioto (56433)
Lauren C. Capurro (241151)
TRUMP, ALIOTO, TRUMP & PRESCOTT LLP
2001 Union Street, Suite 483
San Francisco, CA 94123
Telephone: 415-563-7200
Facsimile: 415- 346-0679
Email: malioto@tatp.com
laurenrussell@tatp.com

*Lead Counsel for the
Indirect Purchaser Plaintiffs*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | MASTER FILE NO. 4:07-cv-5944-JST<br>Case No.: 4:17-cv-04067-JST |
| | MDL NO. 1917 |
| This Document Relates to:<br><br>Luscher, et al. v. Mitsubishi Electric Corp., No. 4:17-cv-04067-JST | **DECLARATION OF JOSEPH M. FISHER RE: NOTICE, CLAIMS PROCESSING AND DISTRIBUTION OF SETTLEMENT FUNDS**<br><br>Judge: Honorable Jon S. Tigar |

I, Joseph M. Fisher, declare:

**INTRODUCTION**

1. <u>Identification</u>. I am the president of The Notice Company, Inc., a Massachusetts corporation with offices at 94 Station Street, Hingham, MA 02043 ("The Notice Company" or "Settlement Administrator"). The Notice Company is principally engaged in the administration of class action settlements and lawsuits pending in courts around the United States, including the dissemination of notice to class members, administering the claims process, and distributing the proceeds of the litigation to the class. I have over 20 years of experience assisting attorneys with class action notices and claims administration. I am also a member in good standing of the bars of the Commonwealth of Massachusetts, the District of Columbia, and the Commonwealth of Virginia. I am over 21 years of age and not a party to this action. I have personal knowledge of the facts set forth herein and, if called as a witness, could and would testify thereto under oath.

2. I make this declaration to report on the following for the settlement with Mitsubishi Electric Corporation ("Mitsubishi Electric"): (a) a summary of Notice Procedures; (b) The Notice Company's processing and validating the claims received; (c) calculating the total qualifying indirect purchases of "CRT Products"; and (d) providing the methodology for calculating the *pro rata* share of the Net Settlement Funds to be distributed to approved claimants.

**SUMMARY OF NOTICE PROCEDURES**

3. I previously reported on the implementation of the notice program for the settlement with Mitsubishi Electric in my declarations filed with the Court as follows:

\*ECF No. 6192-2: Declaration of Joseph M. Fisher Re Mitsubishi Electric Notice Program and Claims Administration, filed on May 11, 2023; and

\*ECF No. 6365-1: Declaration of Joseph M. Fisher Re Mitsubishi Electric Claims Processing and Bot Claim Verification, filed on February 29, 2024.

4. The Notice Company implemented the notice program for the indirect purchaser settlement with Mitsubishi Electric (the "Settlement"), including notice of the claims process, in a comprehensive manner that included print media, an online program and television ads. The Notice

1

DECLARATION OF JOSEPH M. FISHER RE: NOTICE, CLAIMS PROCESSING AND DISTRIBUTION OF SETTLEMENT FUNDS – Master File No. 4:07-cv-5944-JST

Company established and maintained a dedicated website, toll-free phone line, and Post Office address where potential Class Members could access or request additional documents and information relating to the Settlement, including copies of the notices, claim forms, and other Court documents.

5. The Court's Order of Final Approval filed November 6, 2023, stated: "The notice given to the Class . . . was the best notice practicable under the circumstances. Said notice . . . fully satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure, the requirements of due process, and all applicable state laws." ECF No. 6335 ¶ 8.

**REQUESTS FOR EXCLUSION**

6. Class Members were afforded the opportunity to request exclusion (opt out) from the Settlement. Exclusion from the Prior Settlements[1] did not preclude Class Members from participating in this settlement with Mitsubishi Electric. The Notice Company received one (1) request for exclusion from the Settlement. On November 6, 2023, the Court granted the exclusion request. ECF No. 6335 ¶ 9.

**SUMMARY OF THE CLAIMS PROCESS**

7. Eligible Class Members were urged to submit a claim online at www.CRTclaims.com. The claim form, substantially in the form as approved by the Court in the Order of Preliminary Approval filed October 31, 2022, ECF No. 6104 ¶ 14 ("Claim Form"), could be found and completed or downloaded at www.CRTclaims.com. Class Members could also obtain a copy of the Claim Form by calling the Settlement Administrator toll free at 1-800-649-0963. The Claim Form, which was available in both English and Spanish, requested Class Members to verify their eligibility under the Class Settlement, to provide purchase data and contact information, and included a declaration of accuracy to be signed under penalty of perjury. The deadline for submission of online claims was June 13, 2023. Claim Forms submitted by mail were required to be postmarked by June 13, 2023. "Timely Claims" means claims submitted on or before June 13, 2023. Claims submitted after the Court-ordered deadline are "Late Claims."

---

[1] "Prior Settlements" refer to the previous nine settlements reached with Defendants Chunghwa, LG, Philips, Panasonic, Hitachi, Toshiba, Samsung SDI, Thomson, and Technologies Displays America. *See* Detailed Notice of Settlement, ECF No. 6104-1.

2

DECLARATION OF JOSEPH M. FISHER RE: NOTICE, CLAIMS PROCESSING AND DISTRIBUTION OF SETTLEMENT FUNDS – Master File No. 4:07-cv-5944-JST

8. Notices to Class Members clearly explained that CRT Products were being categorized as Standard CRT Televisions (screen size of less than 30 inches), Large CRT Televisions (screen size of 30 inches or larger), or CRT Computer Monitors. Based on data obtained during the course of the litigation, the plan for distribution assigned weights to different types of CRT Products based on the overcharge evidence for each. Weights were assigned as follows: Claims for purchases of Standard CRT Televisions were weighted as 1; Claims for purchases of Large CRT Televisions were weighted as 4.3; and Claims for purchases of CRT Computer Monitors were weighted as 3. These weightings, and the plans of allocation in which they were included, were approved by the Court in the Prior Settlements in this case and the same weighted pro-rata plan of distribution was approved by the Court in its Final Approval Order, ECF No. 6335 ¶ 3d. "CRT Weighted Units" refers to the number of CRT Products calculated using the weights as described in this paragraph.

9. Timely Claims consisted of (A) eligible End-User claimants from the Prior Settlements that were automatically entered into the Mitsubishi Electric Settlement and (B) newly-submitted claims that were submitted or postmarked by June 13, 2023. Claims were submitted either directly by the claimant ("non-represented claimant") or by a third-party representative, attorney or agent ("Claims Aggregator") on behalf of a claimant ("represented claimant").

(A) As described in the Detailed Notice of Settlement and Summary Notice of Settlement (ECF No. 6195), all eligible End-User claimants from the Prior Settlements were automatically entered into the Mitsubishi Electric Settlement. There were 137,373 End-User claims that were initially entered into the Mitsubishi Electric Settlement accounting for 83,062,227 CRT Weighted Units. These claims consisted of 83,278 non-represented prior claims accounting for 5,456,352 CRT Weighted Units and 54,095 represented prior claims accounting for 77,605,875 CRT Weighted Units. Updated claims were submitted by 3,114 non-represented claimants totaling 126,521 CRT Weighted Units and 253 represented claimants totaling 11,277,962 CRT Weighted Units. These updated claims were treated as newly-submitted claims and are reported below. The final number of previously-submitted

claims entered into the Mitsubishi Electric Settlement, excluding updated claims as described above, was 134,006 representing 71,657,744 CRT Weighted Units.

(B)  The Settlement Administrator received a total of 2,953,088 newly-submitted Timely Claims through June 13, 2023, including 3,367 claims that were updates of previously-submitted claims and 2,949,721 claims from new claimants. Claims from new claimants consisted of 485 claims that were submitted as paper claims with a timely postmark, and 2,949,236 claims submitted online. New non-represented claimants[2] submitted 111,564 Timely Claims with CRT Weighted Units claimed totaling 10,866,383. New represented claimants submitted 3,078 Timely Claims with CRT Weighted Units claimed totaling 13,687,678.

In total, there were 3,087,094 Timely Claims received representing 289,218,810 CRT Weighted Units. As discussed below, the Settlement Administrator conducted an extensive review and audit process to verify these claims. The Settlement Administrator is recommending acceptance of 252,015 Timely Claims accounting for 107,616,288 CRT Weighted Units consisting of the following: (i) 134,006 previously-submitted claims representing 71,657,744 CRT Weighted Units, (ii) 3,367 newly-submitted claims consisting of updates to previously-submitted claims accounting for 11,404,483 CRT Weighted Units, and (iii) 114,642 claims from new claimants accounting for 24,554,061 CRT Weighted Units.

10.  Subsequent to the Court-approved deadline of June 13, 2023, for the submission of Timely Claims, the Settlement Administrator discontinued the online process for submitting claims but continued to receive Late Claims that were submitted by mail. The Settlement Administrator received 18 Late Claims submitted for 56,160 CRT Products representing 167,455 CRT Weighted Units, all as described on Exhibit A attached hereto.  A total of 15 Late Claims were postmarked within 16 days of the claims deadline. The latest of the Late Claims was postmarked September 5, 2023, which is less than three months from the claims deadline.

---

[2] "Bot"-submitted claims are discussed below at ¶ 17.

4

11. The Settlement Administrator reviewed each Claim form received for compliance with the Settlement's requirements. Some claims were found to be deficient or incomplete. Among the various types of deficiencies found were the following:

- claims submitted by a Claims Aggregator who failed to provide purchase quantities for CRT Products on the Claim Form or only partially completed this information so that the Claim Form showed "N/A" or "TBD" or "0" or was blank or some combination thereof (referred to as "Placeholder Claims");

- non-represented claimants who submitted incomplete claim forms, including missing name and/or contact information, missing claim eligibility information, missing purchase quantities, or failure to sign the Proof of Claim form;

- claims for ineligible purchases, such as purchases of CRT Products made directly from any of the Defendants, purchases of non-CRT Products, purchases of Sony-branded products, purchases made outside of the Class Period, purchases made outside of the United States, purchases made in a state that is not one of the 30 eligible states under the Settlement or the District of Columbia, or multi-state purchases where central purchasing of all CRT Products in one of the eligible states was asserted but not properly documented;

- claims submitted by a Claims Aggregator on behalf of a claimant without an agreement demonstrating the authority of the Claims Aggregator to act as the claimant's agent or representative;

- duplicate claims submitted by the same corporate claimant; for example, a parent corporation submitting a claim that was inclusive of the CRT purchases of a subsidiary, where the subsidiary had already submitted its own claim for those purchases;

- duplicate claims submitted by the same individuals, where all identifying information available (name, address, phone and/or email) are the same, that appeared to represent duplicate purchases of CRT Products;

- duplicate claims submitted by the same entity or individual that filed in the Prior Settlement. As noted above, all eligible End-User claimants from the Prior Settlements were automatically entered into the Mitsubishi Electric Settlement. The Settlement Administrator sent direct notice to these claimants and informed them of their previously-approved quantities. If a claimant had additional units to add to their claim, they were instructed to submit a new claim with a full report of all units claimed for the New Settlement. The Settlement Administrator identified claimants from the Prior Settlement who submitted claims in the New Settlement. Each of those claims from the Prior Settlement was flagged as a duplicate claim and the newly-submitted claim was given priority;

- "Competing Claims" submitted by Claims Aggregators, where more than one Claims Aggregator each submitted a claim on behalf of the same claimant;

- potentially invalid claims that appear to have been programmatically generated and submitted by computer-created "bots" (short for robots)[3] or by other scam-generating sources and not by legitimate claimants (collectively "bot-scam" claims).

12. When the Settlement Administrator identified ineligible purchases in a claim submission, it contacted the claimant or its authorized representative, identified the issue and provided an opportunity for the claim to be corrected. In some cases, when data were available that would allow the Settlement Administrator to correct the problem (for example, excluding a portion of the CRT purchases identified as being made in an ineligible state), the Settlement Administrator would inform the claimant of a proposed adjustment to the submitted claim that would be applied in the absence of any further response from the claimant.

13. When the Settlement Administrator identified exact match duplicate new claim submissions, where all identifying information available (name, address, phone and/or email) are the

---

[3] "Bot" is defined as "A computer connected to the Internet that has been surreptitiously / secretly compromised with malicious logic to perform activities . . .". Further, "botnet" is defined as "A collection of computers compromised by malicious code and controlled across a network." https://niccs.cisa.gov/cybersecurity-career-resources/vocabulary (last visited July 12, 2024).

1   same, the Settlement Administrator removed the duplicate claim, leaving the most recent submission
2   as the remaining claim.

3         14.    The Settlement Administrator identified 2,793,839 online claim submissions that appeared to be bot-scam claims and not submitted by legitimate claimants. A motion for approval of procedures and costs for processing bot-scam claims was submitted to the Court outlining the detailed procedures associated with handling the large number of bot-submitted claims (ECF No. 6365). The Settlement Administrator implemented the plan for claim verification as outlined and approved by the Court (ECF No. 6367). The Settlement Administrator worked with the selected third-party vendor to conduct a detailed email address verification analysis that identified 853,388 email addresses, or approximately 31% of the total, as invalid or not sendable.[4] The 906,086 claims received from those email addresses were deemed invalid and not sent a verification notice. The remaining email addresses associated with 1,887,753 claims were sent a claim verification notice. Timely verification responses and documentation were received from 222,018 claimants; from those responses only 123 verification submissions were approved as being valid and reasonably identified as a submission from a legitimate claimant. In accordance with the claim verification notice instructions that were sent in response to these online submissions, the claims of these 1,665,735 claimants who did not respond or did not provide verification documentation were deemed deficient and ineligible for payment. In order to determine the authenticity of those claimants who did respond, the Settlement Administrator reviewed a combination of the following criteria:

    (a) the verification document submitted did not match the claimant's name and address as shown on their submitted claim form;

    (b) the same verification document was submitted multiple times by multiple claimants with only the name and address appearing to be altered on the document;

---

[4] Emails should not be sent where the address is a "spam trap" (for example, an email address that was artificially created by an Internet service provider to detect spammers), the address cannot be verified (for example, the domain of the email address does not exist or is not functioning) or the address is otherwise invalid. Declaration of Joseph M. Fisher dated February 28, 2024. ECF No. 6365-1 ¶ 11.

(c) online verification submission flagged as hCaptcha[5] verified bot or suspected invalidity;

(d) IP address submissions appeared more than five (5) times; and

(e) verification responses submitted with a document description on the verification form that follows a repeated pattern identified across multiple submissions.

Claim verification submissions received by 221,895 claimants did not pass the authentication criteria described above and their respective claims were not accepted for payment.

15. When the Settlement Administrator identified Competing Claims submitted by two Claims Aggregators, it informed the respective Claims Aggregators of the duplication and requested that they resolve the overlap among themselves and with the claimant. An agreement signed by both Claims Aggregators, or a letter of direction signed by the claimant, or the withdrawal by one of the Claims Aggregators of its competing claim submission, was sufficient to resolve the Competing Claims. If no resolution was received from the Claim Aggregators or the claimant, the Settlement Administrator utilized the most recently-submitted timely claim and informed the Claims Aggregators of its determination. As of the date hereof, all identified Completing Claims have been resolved as described in this paragraph.

16. When the Settlement Administrator identified claims from ineligible states, or claims based on assertions of company purchases made from a central office in one of the 30 eligible states or the District of Columbia, the Settlement Administrator was required to investigate and procure data regarding the types and frequency of CRT Product purchases by certain types of business during the Class Period, or investigate whether the claimant did, in fact, purchase their CRT Products from a central office located in one of the 30 States or the District of Columbia, which required numerous communications with the claimant or its representative to substantiate their claims.

17. The Settlement Administrator issued its notifications to claimants on a rolling basis as claims were received and as warranted by reviews. To the extent multiple claims could be addressed

---

[5] hCaptcha provides the industry's most accurate bot detection through its class-leading adaptive challenge platform and online learning capabilities. Its advanced network of machine learning algorithms ensures that bots are reliably detected and trains in real-time to identify and mitigate the latest threats. *See* www.hcaptcha.com.

8

DECLARATION OF JOSEPH M. FISHER RE: NOTICE, CLAIMS PROCESSING AND DISTRIBUTION OF SETTLEMENT FUNDS – Master File No. 4:07-cv-5944-JST

in a single notice to a Claims Aggregator, the notices were consolidated. All notices regarding the rejection (in whole or in part) of a claim contained a response deadline which could vary based on specific circumstances or discussions with the claimant. To the extent a claimant requested additional time to respond or submitted a response within a reasonable time after a given deadline, the Settlement Administrator considered those responses to be timely if relevant documentation or information was provided.

**AUDIT CRITERIA AND RESULTS**

18. All claims were subject to review and/or audit by the Settlement Administrator. For claims submitted directly by Class Members, the Settlement Administrator set an audit threshold at purchases of 120 CRT Products for individual claims, 100 CRT Products for small businesses, 250 CRT Products for medium businesses, and 1,000 CRT Products for large businesses, where business size was based on the number of employees as reported by the claimant. Where business size could not be determined, the audit threshold was set at the purchase of 50 CRT Products. Claimants were selected and placed into an audit pool consisting of 760 individuals and 55 businesses. For claims submitted by Claims Aggregators, the Settlement Administrator began by auditing large claims consisting of the top 5% of claims submitted by each Claims Aggregator. The Settlement Administrator also selected additional claims for audit based on comparisons of claim submissions by comparable companies.

19. Considering all newly-submitted claims, including claims that were updates of previously-submitted claims, reviews and audits were performed on claims that accounted for over 90% of claimed CRT Weighted Units. The audit process involved reviewing voluminous purchase data and multiple sources of documentation for numerous claims, including when appropriate vetting through publicly-available records and other third-party data sources. The Settlement Administrator reviewed and evaluated the claimed purchases of CRT Products by performing direct audits and, in appropriate cases, working with Claim Aggregators to confirm their adherence to the Settlement Administrator's reporting requirements.

20. Audit notices were sent to all audited claims, providing instructions to claimants or their representatives on how to respond to the audit and the deadline for responses. The audit notices informed the claimant that if no response was received, then claimed purchases of numerous CRT Products would be reduced to a claim for a $10 minimum payment. When the Settlement Administrator received responses with sufficient support for the originally claimed units, or for revised purchase quantities submitted by the claimant or its authorized representative, the claims were accepted or revised and the audit was closed. For those audits where questions remained after audit responses were received and more information was required, the Settlement Administrator pursued follow-up communications until the audit was resolved with the claimant.

21. Timely Claims were resolved as follows:

- 3,087,094 newly-submitted Timely Claims were submitted;
- 41,363 were withdrawn or marked as duplicates;
- 2,793,716 were rejected due to claim deficiencies (for example, bot submissions, direct purchaser claims, purchases made in ineligible states, or otherwise ineligible);
- 134 were accepted with an adjustment in the number of CRT Products claimed;
- 777 were reduced to a minimum claim value of $10;
- 251,104 were accepted with no change from the original number of CRT Products claimed;
- a total of 252,015 claims were accepted, either partially or fully based on original submissions, representing 107,616,288 CRT Weighted Units in the aggregate; and
- an estimated 226,880 claims with relatively low numbers of CRT purchases will have their payment increased to $10 from what would otherwise result from a *pro rata* distribution of funds.[6]

---

[6] The number of minimum payment claims may change as the value of available Settlement Funds changes with ongoing interest accruing. *See* note 7, *infra*.

22. The Settlement Administrator received 18 Late Claims submitted for 56,160 CRT Products representing 167,455 CRT Weighted Units. If Late Claims are accepted for payment, they would represent approximately 0.16% of all CRT Weighted Units eligible for payment.

### NET SETTLEMENT FUND

23. The Settlement Fund available for distribution is calculated in accordance with the approved Settlement Agreement and the Court's Order Awarding Attorney's Fees, Expenses, and Incentive Awards for Class Representatives (ECF No. 6337). Settlement Fund balance available for distribution as of the date hereof is $25,415,892 inclusive of interest.[7]

24. The Settlement Administrator has billed and unpaid invoices for claims administration through June 2024 in the amount of $608,522. In addition, the Settlement Administrator incurred fees and costs of $59,500 to implement the bot-scam verification process as authorized by the Court.[8]

25. Ongoing costs, not yet incurred, include projected administrative costs of $330,475[9] and accounting fees of $15,000.

26. Settlement Funds available for distribution to claimants, after deduction of the above expenses and reserving for projected fees and expenses, is $24,402,395.

### CALCULATION OF APPROVED CLAIM AMOUNTS

27. The distribution formula requires a weighted *pro rata* distribution to all members of the 30 eligible states and the District of Columbia Classes that filed valid claims, subject to a minimum payment of at least $10 per claimant and a maximum payment of three times the estimated money damages per claimant. The minimum payment will be achieved by first calculating payments by allocating funds based on each claimant's CRT Weighted Units, identifying those claims that would

---

[7] Class Counsel reports a T-bill that will mature on September 5, 2024, with a value, inclusive of interest, totaling $25,174,000.00. The Claims Administrator holds claimant funds in the amount of $241,892.58. Interest on funds will continue to accrue, subject to taxes, until a distribution is authorized by the Court and funds are disbursed in accordance with the Court's orders.

[8] The Court's Order of March 5, 2024, authorized the additional payment of up to $100,000 to the Settlement Administrator to implement the bot-verification process. ECF No. 6367 ¶ 3.

[9] Projected costs and fees are associated with distribution of payments to Class Members, reaching claimants who submitted claims in the Prior Settlement, ongoing communications with claimants and their representatives, ongoing account maintenance and preparing a post-distribution accounting.

receive less than $10, and then going through a process of recalculating payments so that all claims are grossed up to a $10 minimum payment. Payments will be issued by check or electronically.

28. The Claims Administrator recommends that Class Counsel seek Court approval of the following proposal for distribution of funds ("Distribution Proposal"): (a) Late Claims submitted within three months of the claims deadline be treated and paid equivalently to Timely Claims;[10] (b) Late Claims submitted later than three months of the claims deadline not be processed or paid;[11] and (c) if any residual remains in the Net Settlement Fund (if checks are not cashed or electronic funds are not received by claimants), such residual will be distributed at the discretion of the Claims Administrator. I believe the proposal properly balances the interests of all claimants.

29. A schedule showing valid claims is attached hereto as Exhibit B. The schedule lists all approved claimants, including Timely Claims and Late Claims, showing the number of CRT Weighted Units approved for each claim. Based on the calculation of the Net Settlement Funds set forth above, a single CRT Weighted Unit has a Settlement value of approximately $0.20 subject to a $10 minimum payment per claimant.[12]

## ESTIMATE OF TIME TO COMPLETE DISTRIBUTION

30. I estimate that a post-distribution accounting will be available no earlier than twelve months from the date that the Court enters an order of distribution. This accounts for the time needed to receive funds from any investment account where Settlement Funds may be invested, to calculate final distribution amounts after earned interest has been accounted for, to obtain final updates of recipient address information, to prepare and distribute checks and electronic forms of payment, to reissue payments as needed, to wait until outstanding checks have expired, and to issue a second round of checks if there are sufficient residual funds.

---

[10] The latest of the Late Claims was postmarked September 5, 2023, which is less than three months from the claims deadline. See Exhibit A and ¶ 10, supra.

[11] As of the date hereof, the Claims Administrator has received no claims that were submitted later than three months from the claims deadline.

[12] For example, an individual claimant with an approved Timely Claim for five Large Televisions (4.3 CRT Weighted Units), five Standard Televisions (1 CRT Weighted Unit), and ten computer monitors (9 CRT Weighted Units) would receive approximately $11.30 based on a total of 56.5 CRT Weighted Units.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed at Hingham, Massachusetts, this 17th day of July, 2024.

_____
JOSEPH M. FISHER