**NORTON ROSE FULBRIGHT US LLP**
JEFFREY MARGULIES (BAR NO. 126002)
KAYLEE YANG (BAR NO. 303464)
555 California Street
Suite 3300
San Francisco, California 94104
Telephone:     (213) 892-9200
Facsimile:      (213) 892-9494
jeff.margulies@nortonrosefulbright.com
kaylee.yang@nortonrosefulbright.com

**NORTON ROSE FULBRIGHT US LLP**
GERALDINE YOUNG (admitted *pro hac vice*)
1301 McKinney, Suite 5100
Houston, Texas 77010
Telephone:     (713) 651-5151
Facsimile:      (213) 651-5246
geraldine.young@nortonrosefulbright.com

Attorneys for Defendants
IRICO GROUP CORP. AND
IRICO DISPLAY DEVICES CO., LTD

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

|  |  |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Case No. 4:07-cv-05944-JST |
|  | MDL No.: 1917 |
|  | **DEFENDANTS IRICO GROUP CORP. AND IRICO DISPLAY DEVICES CO., LTD.'S REPLY IN SUPPORT OF OBJECTIONS TO SPECIAL MASTER'S REPORT & RECOMMENDATION ON PLAINTIFFS' MOTION FOR TERMINATING SANCTIONS** |
| This Documents Relates to:<br><br>ALL ACTIONS | |

DOCUMENT PREPARED ON RECYCLED PAPER

# TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................. 1

ARGUMENT ....................................................................................................... 2

I.     It Is Undisputed That Review Is De Novo. ................................................ 2

II.    The Three Issues The R&R Identifies Do Not Warrant Sanctions. .................... 3

       A.     Plaintiffs Cannot Establish Intent or Prejudice With Respect to Any Lost Evidence, and They Fail to Address the Effects of Their Own Neglect. ............... 3

               1.     Plaintiffs cannot demonstrate intent. ................................................ 3

               2.     Plaintiffs cannot demonstrate that the alleged misconduct would preclude a fair trial on the merits. ................................................ 7

       B.     Plaintiffs Fail to Support the R&R's Conclusion That Irico Lied to the Court. ............................................................................................... 10

               1.     Mr. Yan's deposition does not support the R&R's conclusions. .............. 10

               2.     The R&R's invocation of the Yan Document was facially improper. ....... 12

               3.     Plaintiffs' prejudice arguments depart from the R&R and are meritless. ................................................................................. 13

       C.     Irico's Objections Regarding the Su Deposition Should Be Sustained. ............. 14

               1.     The record does not support Plaintiffs' contention that Irico controlled Mr. Su. ....................................................................... 14

               2.     Plaintiffs cannot establish prejudice sufficient to warrant terminating sanctions. ............................................................... 16

               3.     Any delays in imaging the Su laptop are irrelevant to the issue of terminating sanctions. ............................................................... 18

III.   Plaintiffs All But Ignore The Proportionality Requirement ............................. 19

       A.     Plaintiffs Fail to Address the Possibility of Lesser Sanctions. ...................... 19

       B.     Plaintiffs Fail to Justify Striking Irico's Defenses. .................................. 21

       C.     Plaintiffs Fail to Justify Precluding Irico From Contesting Damages. ............. 21

CONCLUSION ................................................................................................... 21

DOCUMENT PREPARED ON RECYCLED PAPER

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Adriana Int'l Corp. v. Thoeren*,
  913 F.2d 1406 (9th Cir. 1990)................................................................................................ 4

*Ahcom, Ltd. v. Smeding*,
  2011 WL 3443499 (N.D. Cal. Aug. 8, 2011)........................................................................ 9

*Al Otro Lado, Inc. v. Wolf*,
  2021 WL 631789 (S.D. Cal. Feb. 18, 2021), *report & rec'n adopted sub nom.*
  *Al Otro Lado, Inc. v. Mayorkas*, 2021 WL 1170212 (Mar. 29, 2021) ..................................... 7

*Alden v. Mid-Mesabi Assocs. Ltd. P'ship*,
  2008 WL 2828892 (D. Minn. July 21, 2008)........................................................................ 9

*Allen v. Santa Clara Cnty. Corr. Peace Officers Ass'n*,
  38 F.4th 68 (9th Cir. 2022)............................................................................................... 3, 9

*Anheuser-Busch, Inc. v. Nat. Beverage Distribs.*,
  69 F.3d 337 (9th Cir. 1995)........................................................................................... 13, 20

*Apple Inc. v. Samsung Elecs. Co.*,
  888 F. Supp. 2d 976 (N.D. Cal. 2012) ................................................................................. 19

*AtPac, Inc. v. Aptitude Sols., Inc.*,
  2011 WL 13242817 (E.D. Cal. Apr. 13, 2011)...................................................................... 5

*Beijing Choice Elec. Tech. Co. v. Contec Med. Sys. USA Inc.*,
  2021 WL 9184385 (N.D. Ill. Dec. 17, 2021), *report & rec'n adopted* 2022 WL
  3053550 (May 12, 2022)..................................................................................................... 16

*Best Label Co. v. Custom Label & Decal, LLC*,
  2022 WL 1525301 (N.D. Cal. May 13, 2022) ....................................................................... 8

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
  2016 WL 945981 (N.D. Cal. Mar. 14, 2016)........................................................................ 3

*Deerpoint Grp., Inc. v. Agrigenix, Inc.*,
  2022 WL 16551632 (E.D. Cal. Oct. 31, 2022) ...................................................................... 5

*Dish Network L.L.C. v. Jadoo TV, Inc.*,
  2022 WL 11270394 (N.D. Cal. Oct. 19, 2022).................................................................. 4, 8

*Facebook, Inc. v. OnlineNIC Inc.*,
  2022 WL 17371092 (N.D. Cal. Oct. 17, 2022)............................................................. 1, 3, 19

*Faerfers v. Caviar Creator, Inc.*,
  359 F. App'x 739 (9th Cir. 2009) ...................................................................................... 13

*Fjelstad v. Am. Honda Motor Co., Inc.*,
  762 F.2d 1334 (9th Cir. 1985)............................................................................................ 19

DOCUMENT PREPARED
ON RECYCLED PAPER

- iii -

*In re Flash Memory Antitrust Litig.*,
   643 F. Supp. 2d 1133 (N.D. Cal. 2009) ................................................................. 8

*Garcia v. Vitus Energy, LLC*,
   600 F. Supp. 3d 975 (D. Alaska 2022) ................................................................. 15

*Google LLC v. Starovikov*
   2022 WL 16948296 (S.D.N.Y. Nov. 15, 2022) ............................................. 13, 14

*In re Google Play Store Antitrust Litig.*,
   664 F. Supp. 3d 981 (N.D. Cal. 2023) ................................................. 2, 4, 19, 21

*InternMatch, Inc. v. Nxtbigthing, LLC*,
   2016 WL 491483 (N.D. Cal. Feb. 8, 2016), *vacated on other grounds*, 2017
   WL 8944065 (N.D. Cal. Nov. 17, 2017) .................................................................. 4

*Jones v. Riot Hosp. Grp. LLC*,
   5 F.4th 730 (9th Cir. 2024) .................................................................................. 10

*Katzman v. L.A. Cnty. Metro. Transp. Auth.*,
   2015 WL 13861765 (N.D. Cal. Mar. 26, 2015) .............................................. 5, 11

*Laub v. Horbaczewski*,
   2020 WL 9066078 (C.D. Cal. July 22, 2020) ....................................................... 4

*Linde v. Arab Bank, PLC*,
   269 F.R.D. 186 (E.D.N.Y. 2010) .......................................................................... 9

*Med. Lab'y Mgmt. Consultants v. Am. Broad. Cos.*,
   306 F.3d 806 (9th Cir. 2002) ................................................................................ 9

*Meta Platforms, Inc. v. BrandTotal Ltd.*,
   605 F. Supp. 3d 1218 (N.D. Cal. 2022) ............................................................. 4, 8

*Microvention, Inc. v. Balt USA, LLC*,
   2023 WL 7476998 (C.D. Cal. Oct. 5, 2023), *report & rec'n adopted*, 2023 WL
   7634109 (Nov. 13, 2023) ...................................................................................... 9

*Nursing Home Pension Fund v. Oracle Corp.*,
   254 F.R.D. 559 (N.D. Cal. 2008) .......................................................................... 9

*In re Petroleum Prods. Antitrust Litig.*,
   906 F.2d 432 (9th Cir. 1990) ................................................................................. 8

*Phan v. Costco Wholesale Corp.*,
   2020 WL 5074349 (N.D. Cal. Aug. 24, 2020) ...................................................... 4

*Phoceene Sous-Marine, S. A. v. U.S. Phosmarine, Inc.*,
   682 F.2d 802 (9th Cir. 1982) ............................................................................... 19

*Porter v. City & Cnty. of San Francisco*,
   2018 WL 4215602 (N.D. Cal. Sept. 5, 2018) ....................................................... 4

*Quinn v. Robinson*,
   783 F.2d 776 (9th Cir. 1986) ................................................................................. 3

DOCUMENT PREPARED
ON RECYCLED PAPER

*Sali v. Corona Reg'l Med. Ctr.*,
884 F.3d 1218 (9th Cir. 2018) ............................................................................................. 14

*Transamerica Life Insurance Co. v. Arutyunyan*,
93 F.4th 1136 (9th Cir. 2024) ........................................................................................ 20, 21

*United States v. Falstaff Brewing Corp.*,
410 U.S. 526 (1973) .............................................................................................................. 8

*WeRide Corp. v. Huang*,
2020 WL 1967209 (N.D. Cal. Apr. 24, 2020) .................................................................. 4, 5

**Constitutional Provisions**

Article III .................................................................................................................................. 2

**Rules and Statutes**

Rule 30(b)(6) ............................................................................................................................ 7

DOCUMENT PREPARED
ON RECYCLED PAPER

1

## __INTRODUCTION__

2          Seventeen years ago, Plaintiffs named the Irico entities as two of 22 defendants in this

3 action. Almost immediately thereafter, they ceased to prosecute their case against Irico, letting the

4 claims they had brought lay dormant for the better part of a decade. When this Court eventually

5 reminded Plaintiffs of the claims' existence, Plaintiffs told the Court their evidence against Irico

6 was "overwhelming" notwithstanding the delay, ECF 5191 at 12; characterized the fruits of

7 discovery as "massive," ECF 6177 at 5-6; and asserted that they possessed admissions regarding

8 both "the existence of the conspiracy" and Irico's "participation in it." Obj., Ex. 34 at 3.[1]

9          Now that sanctions are the issue, Plaintiffs claim to be missing "virtually all" proof

10 concerning "the core issues in the case." Opp. 33. But they offer no explanation for their change of

11 heart, and their new assertions would not warrant terminating sanctions even if they were true.

12 Plaintiffs let their claims against Irico languish for more than six years while they pursued other

13 defendants, and they cannot—and do not attempt to—refute the simple fact that any evidentiary

14 holes are as much the fault of their own inaction as of anything they claim Irico did. For that core

15 reason, in addition to those set forth below, Plaintiffs cannot establish any right to the multibillion-

16 dollar default judgment they now seek.

17          *First*, Plaintiffs concede that review of the R&R is and must be de novo. Opp. 8. They

18 caveat that concession extensively, *id.* at 8-9, but the caveats are irrelevant. At bottom, it is

19 materially undisputed that this Court must consider the Motion "anew, as if no decision previously

20 had been rendered, and come to its own conclusion" on every issue. *Facebook, Inc. v. OnlineNIC*

21 *Inc.*, 2022 WL 17371092, at *5 (N.D. Cal. Oct. 17, 2022).

22          *Second*, Plaintiffs fail to satisfy the burden—which they do not dispute they shoulder, *e.g.*,

23 Opp. 12—to prove that Irico destroyed evidence with the specific intention of placing it beyond

24 this Court's reach. In fact, Plaintiffs openly concede that to the extent relevant materials were lost,

25 it was merely because during the years in which Plaintiffs neglected to pursue their claims, Irico

26

27

28

---

[1] "Objections," or "Obj." refers to Irico's Objections to the Special Master's Report and Recommendation on the Motion for Terminating Sanctions (ECF 6389). "Opposition," or "Opp." refers to Plaintiffs' response thereto (ECF 6405). All other capitalized terms are used as defined in the Objections.

1    applied the same companywide, "standard," "business as usual" document-retention policies it

2    would have applied if this action had never been brought. *Id.*

3        *Third*, despite calling Irico "liar" roughly 20 times, Plaintiffs again proffer no *evidence* to

4    support the R&R's conclusion that Irico misled the Court by asserting that a belief in immunity

5    was among its reasons for withdrawing from this lawsuit. As Irico has explained—now without

6    any rebuttal—Mr. Yan *was never even asked* at his deposition to catalogue Irico's motivations for

7    withdrawing in 2008, so the fact that he "did not . . . mention immunity," Opp. 16, demonstrates

8    nothing. Nor can Plaintiffs defend the R&R's reliance on the Yan Document, which this Court

9    already determined was privileged work product. Indeed, they hardly even attempt to.

10       *Fourth*, in discussing Su Xiaohua, Plaintiffs rely not on evidence, but instead on erroneous

11   findings of fact contained in the very document that is now on de novo review. That circular strategy

12   fails. The R&R is not evidence, and the evidence does not demonstrate that Irico bore fault for Mr.

13   Su's refusal to appear. *Cf.* Opp. 20-25. Moreover, even if Plaintiffs could demonstrate that Mr. Su's

14   testimony would have offered them something they could not get elsewhere, that does not justify

15   anything near the sanctions they seek. They are the ones who took over a decade to pursue

16   depositions, and it is hardly surprising—much less a basis for sanctions—that other witnesses

17   moved on from Irico and became unavailable during that time.

18       *Fifth*, Plaintiffs fail to address this Court's recent holding that "[p]roportionality"—not

19   punishment—"is the governing concept" when considering sanctions. *In re Google Play Store*

20   *Antitrust Litig.*, 664 F. Supp. 3d 981, 994 (N.D. Cal. 2023). To the extent they respond to the

21   Objections' showing on that issue, it is only via a passing mention that "the R&R discusses" the

22   availability of less drastic sanctions. Opp. 32. But Plaintiffs concede that review is de novo, so that

23   is no answer at all.

24       The relief Plaintiffs seek is extraordinary. The showing they have made in support is

25   anything but. The Objections should be sustained, and the Motion should be denied.

26                                    **ARGUMENT**

27   **I.    It Is Undisputed That Review Is De Novo.**

28       As the Objections explained, Article III, the Federal Rules of Civil Procedure, and the Civil

1   Local Rules all require de novo review on issues of both fact and law. Obj. 15. Plaintiffs

2   unambiguously concede the point. Opp. 8 ("[D]e novo review . . . is required . . . as to portions of

3   the report that have been properly objected to.") (quotation marks omitted).

4        Everything else Plaintiffs say about the standard of review is a distraction. After describing

5   the very point they concede as "highly misleading," they contend that "[a]bsent a proper objection,

6   the District Court may simply accept the findings of the Special Master." Opp. 8. But they make

7   only two, narrow claims regarding supposedly improper objections, and both are wrong. *See infra*

8   at 12, 17. In any event, Plaintiffs' own authority demonstrates that this Court must review even

9   "those portions of the report to which no objection is made." *Facebook*, 2022 WL 17371092, at *5

10  (describing standard of review for unobjected-to portions) (citing *Quinn v. Robinson*, 783 F.2d 776,

11  791 (9th Cir. 1986)).

12       Plaintiffs' contention that arguments not presented *to the Special Master* need not be

13  considered at all, Opp. 9, is also both wrong and irrelevant. A party can forfeit "issues" by failing

14  to raise them, *see, e.g.*, *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2016 WL 945981, at *2

15  (N.D. Cal. Mar. 14, 2016), but "parties are not limited to the precise arguments they made below"

16  on issues they preserved. *E.g.*, *Allen v. Santa Clara Cnty. Corr. Peace Officers Ass'n*, 38 F.4th 68,

17  71 (9th Cir. 2022) (quotation omitted). Nor do Plaintiffs identify any waived argument anyway.

18  *See infra* at 9 n.9. And their repeated suggestion that having properly preserved an issue *bars* Irico

19  from raising it, *e.g.*, Opp. 8, 20, is a transparent, unsupportable Catch-22.

20  **II.**    **The Three Issues The R&R Identifies Do Not Warrant Sanctions.**

21      **A.**    **Plaintiffs Cannot Establish Intent or Prejudice With Respect to Any Lost**

22            **Evidence, and They Fail to Address the Effects of Their Own Conduct.**

23          *1.*  *Plaintiffs cannot demonstrate intent.*

24       Plaintiffs devote pages to establishing that Irico failed to implement a broad U.S. litigation

25  hold despite having been instructed by their U.S. counsel to do so. Opp. 9-11. But the question here

26  is not whether Irico made mistakes. Instead, it is whether Plaintiffs can demonstrate that any loss

27  of evidence was so wrongful, comprehensive, and unilateral as to warrant awarding them a default

28

judgment without regard to the merits. *See, e.g.*, *Google Play*, 664 F. Supp. 3d at 994; *Meta Platforms, Inc. v. BrandTotal Ltd.*, 605 F. Supp. 3d 1218, 1238 (N.D. Cal. 2022).

Nothing Plaintiffs say carries that burden. Despite conceding that they must prove Irico's that any loss of evidence was motivated by a specific desire to place that evidence beyond this Court's reach, they admit that the worst they can allege is a "business as usual" application of Irico's "standard" document-retention policies. Opp. 12. As Irico has explained, *see* Obj. 17-19, such allegations are insufficient as a matter of law to prove the requisite intent.[2]

Plaintiffs cite no authority to the contrary. They largely forsake the precedent the R&R invoked, *cf.* Obj. 19 (distinguishing R&R's cases),[3] and the cases they do cite only confirm the R&R's errors. Their lead authority, *InternMatch*, did not involve retention policies at all, and in fact *rejected* terminating sanctions on facts much worse than anything alleged here. *InternMatch, Inc. v. Nxtbigthing, LLC*, 2016 WL 491483, at *2-3, 6-8, 10-11, 13 (N.D. Cal. Feb. 8, 2016) (party intentionally targeted and destroyed relevant documents, then lied to the Court about their destruction), *vacated on other grounds*, 2017 WL 8944065 (N.D. Cal. Nov. 17, 2017).

Plaintiffs' other case, *WeRide*, also involved targeted destruction—the exact thing Plaintiffs concede is missing in this case. *See WeRide Corp. v. Huang*, 2020 WL 1967209, at *3-8 (N.D. Cal. Apr. 24, 2020).[4] There, while engaged in trade-secret theft, the defendant (among other wrongs)

---

[2] *See, e.g.*, *Meta Platforms*, 605 F. Supp. 3d at 1238 (no intent where party merely "failed to take steps to counteract the automatic deletion process"); *Dish Network L.L.C. v. Jadoo TV, Inc.*, 2022 WL 11270394, at *4 (N.D. Cal. Oct. 19, 2022) (party's "delayed instruction to preserve" documents and ultimate "failure to preserve" those documents "was negligent or perhaps grossly negligent," but could not establish intent); *Phan v. Costco Wholesale Corp.*, 2020 WL 5074349, at *4 (N.D. Cal. Aug. 24, 2020) ("sloppiness" in preservation insufficient to prove "intent"); *Laub v. Horbaczewski*, 2020 WL 9066078, at *6 (C.D. Cal. July 22, 2020) (no intent where party "did not take affirmative steps to destroy the ESI at issue," and instead merely "fail[ed] to change" preexisting "default settings"); *Porter v. City & Cnty. of San Francisco*, 2018 WL 4215602, at *4 (N.D. Cal. Sept. 5, 2018) (no intent where materials were deleted pursuant to ESI retention policy).

[3] The lone exception, *Adriana International*, which Plaintiffs cite repeatedly, did not involve retention policies and is not remotely on point. *See Adriana Int'l Corp. v. Thoeren*, 913 F.2d 1406, 1411-12 (9th Cir. 1990) (party unexplainedly refused to produce documents and appear for depositions, made "misrepresentations regarding the depositions," and "fail[ed] to provide accurate information" in response to Special Master's orders).

[4] Plaintiffs' claim that the Objections "misquot[ed]" *WeRide*, *cf.* Opp. 27 n.27, is false. Obj. 19.

DOCUMENT PREPARED ON RECYCLED PAPER

*changed its email server's default settings* to delete emails more quickly; destroyed email accounts; wiped employees' laptops; and *adopted new software* to make its internal communications impossible to retrieve. *Id.* In this case, by contrast, Plaintiffs concede that Irico's only deviations from its standard practices were in the direction of preserving *more*. *See, e.g.*, Obj. 6-7, 18-19.

Plaintiffs' efforts to walk back their factual concessions are insubstantial. Citing only the R&R now on de novo review, they inaccurately accuse Irico of "wip[ing] and discard[ing]" computers; "destroy[ing] *all* . . . hard copy documents," and "allow[ing] *all* ESI to be deleted," then claim without further explanation that such conduct proves the requisite intent. Opp. 12. But Plaintiffs do not even dispute that the findings they quote are wrong. Irico *produced* reams of hard copy documents and ESI, as the Objections explained. Obj. 8-9, 18. And hyperbole aside, Plaintiffs are just describing the very same "standard," lawful, and innocuous document-retention practices in which Irico and other responsible companies routinely engage. It is hardly surprising that during the yearslong period in which Plaintiffs did not pursue their case—a period in which, according to Plaintiffs, "Irico *was not a defendant*," Opp. 30 (emphasis added)—data-security needs and other innocent factors led to the deletion of business records, including whatever small amounts of ESI may have at one time existed.[5]

Plaintiffs also half-heartedly question whether Irico maintained document-retention policies at all. *See* Opp. 13 (citing R&R 65). But their arguments on that point lack evidentiary support; attempt to assign to Irico a burden of proof that indisputably rests on Plaintiffs, *e.g.*, *Katzman v. L.A. Cnty. Metro. Transp. Auth.*, 2015 WL 13861765, at *14 (N.D. Cal. Mar. 26, 2015); depend on the incorrect notion that the Federal Rules of Evidence apply with full force here, *cf. Deerpoint Grp., Inc. v. Agrigenix, Inc.*, 2022 WL 16551632, at *10 (E.D. Cal. Oct. 31, 2022); *AtPac, Inc. v. Aptitude Sols., Inc.*, 2011 WL 13242817, at *1 (E.D. Cal. Apr. 13, 2011); and merely parrot the

---

[5] Plaintiffs' mention of certain business cards, email addresses, and personal computers, *cf.* Opp. 15, does not "belie[]" the Objections' discussion of the nascency of Irico's electronic systems during the relevant period. Irico has never contended there was *no* computer use. And Irico has explained without rebuttal that the addresses in question "w[ere] not used by an Irico employee during the course of their employment with Irico, nor was the email domain '@irico.com.cn' maintained by Irico during the Relevant Period," but rather "was used by another company, [CNEIECC]." AR Doc. 3, Ex. P at 7-11.

DOCUMENT PREPARED
ON RECYCLED PAPER

R&R's contradictory suggestion that the very same document-retention policies the R&R faulted Irico for maintaining, R&R 30-33, did not actually exist, R&R 65. *See, e.g.*, Opp. 13-14 (suggesting that the R&R "correctly rejected" the notion that Irico automatically deleted ESI, yet suggesting that Irico should be faulted for "never turn[ing] off automatic deletion of emails"). In all events, it would be farfetched to suggest that Irico *never* cleared ESI, and the R&R makes no finding about what its retention period actually was.

Plaintiffs also ignore the weighty evidence refuting the R&R's conclusions. As the Objections explained (and Plaintiffs nowhere rebut), Irico would have lacked motivation to engage in the pervasive wrongdoing Plaintiffs claim occurred, because by the time any preservation obligation arose, Irico's standard, lawful, and neutral data-retention policies would have left little or no relevant ESI in existence. *E.g.*, Obj. 17. Plaintiffs' principal response is to hypothesize that despite Irico's standard practices, some stray printouts may still have existed at pertinent times. *Cf.* Opp. 14-15; R&R 62-65. Perhaps that is true. But again, Irico *collected and produced* many hard-copy documents, including potentially inculpatory ones that any conscious wrongdoer would have destroyed. Obj. 8-9, 18; *infra* at 7. Plaintiffs cannot account for that undisputed fact, which refutes the notion that any failure to collect additional hard-copy documents was malicious.

Plaintiffs also fail to rebut the ample evidence of Irico's *good* faith. Most notably, they do not dispute that when Irico came to appreciate that evidence of any U.S. CRT sales would have been relevant, it went to substantial lengths to determine whether such evidence existed, with the precise aim of preserving it. Obj. 6-7; Obj., Ex. 3 at 10-11. Nor do Plaintiffs point to any *evidence* refuting Mr. Yan's testimony that upon concluding there were no U.S. sales, Irico determined (perhaps wrongly, but in all events genuinely) that no further search was necessary. *See* Obj. 18 (citing Ex. 7 at 111:12-112:10).[6] Instead, Plaintiffs merely assert that "Irico's claimed belief that it would soon be dismissed" based on that lack of sales did not "justify" its failure to search and

---

[6] Plaintiffs' various arguments about Irico's sophistication and exports, Opp. 11-12, in no way contradict Mr. Yan's direct testimony. Many are also factually incorrect. For instance, Irico (USA) Inc. never undertook U.S. business, was sold in 2001, and was in all events a separate corporate entity from Irico. *See* ECF 6225 at 3; *cf.* Opp. 12. Plaintiffs' contention that Irico sold CRTs to Irico USA is also inaccurate. *See* ECF 6225 at 7 n.1.

DOCUMENT PREPARED
ON RECYCLED PAPER

preserve more broadly. Opp. 12. Again, however, the issue is not whether Irico was "justif[ied]," *id.*; it is whether *Plaintiffs have shown* that Irico *acted with specific intent* to place evidence beyond this Court's reach. *See supra* at 4. Plaintiffs cannot make that showing when they fail to rebut the fact that Irico believed it would promptly be dismissed without any further document production. *See* Obj. 23-24. That is likely why they ultimately resort to the farfetched, contending that this Court can presume intent solely because Irico contests the issue, *cf.* Opp. 27-28, or because Irico initially declined to produce communications *from its own lawyers*, *cf.* Opp. 13.

### 2. Plaintiffs cannot demonstrate that the alleged misconduct would preclude a fair trial on the merits.

Even if Plaintiffs could demonstrate intent, they cannot escape their own repeated characterizations regarding the supposedly "overwhelming" strength of their case. As the Objections explained, Obj. 20-23 (citing precedent Plaintiffs ignore), those concessions are independently dispositive.[7]

Plaintiffs' effort to walk back their numerous admissions also fails. They do not dispute that, as the Objections set forth, they have accessed or obtained *from Irico*, and among other things: accounting records; sales invoices (for CRTs and other products); a full data summary of all Irico's CRT sales for the entire relevant period; and expense records that they allege corroborate evidence of Irico's attendance at competitor meetings. Nor do they deny that they have deposed five Irico employees, three of whom worked at Irico during the relevant period, one of whom was a Rule 30(b)(6) corporate representative, and one of whom worked for a CRT competitor of Irico at the relevant time. Obj. 8-9.[8]

---

[7] Plaintiffs' *ipse dixit* that their statements to this Court "prove[] nothing," Opp. 31, is erroneous, and they fail to address the cases so confirming. *See* Obj. 21 & n.3 (citing, *inter alia*, *Al Otro Lado, Inc. v. Wolf*, 2021 WL 631789, at *7 (S.D. Cal. Feb. 18, 2021), *report & rec'n adopted sub nom. Al Otro Lado, Inc. v. Mayorkas*, 2021 WL 1170212 (Mar. 29, 2021)).

[8] Plaintiffs fail to show any parallel between their admissions and Irico's statements that it possesses dispositive defenses on the merits. *Cf.* Opp. 31. The fact that Irico has viable defenses comes nowhere close to establishing that Irico wrongfully withheld documents that would have overcome them.

DOCUMENT PREPARED
ON RECYCLED PAPER

Plaintiffs fail to acknowledge the vast majority of what they have obtained, choosing instead to make generalized accusations about what might still be missing. But courts routinely acknowledge that in the context of alleged price-fixing conspiracies, the evidence Plaintiffs say they wish they had hardly ever exists in the first place. *See, e.g.*, *In re Flash Memory Antitrust Litig.*, 643 F. Supp. 2d 1133, 1147 (N.D. Cal. 2009) ("The Ninth Circuit has aptly observed that 'direct evidence will rarely be available' to prove the existence of a price fixing conspiracy. It is for that reason that 'circumstantial evidence is the lifeblood of antitrust law.'") (quoting *United States v. Falstaff Brewing Corp.*, 410 U.S. 526, 534 n.13 (1973); *In re Petroleum Prods. Antitrust Litig.*, 906 F.2d 432, 439 (9th Cir. 1990)). Nor, again, do Plaintiffs meaningfully refute that even if those hypothesized materials existed at one time, they would have been innocently deleted long before any preservation obligation arose. *See supra* at 5-6.

It would be impossible within the context of this filing to combat every misstatement or inaccuracy Plaintiffs proffer to suggest material evidence was destroyed. But none of Plaintiffs' claims can be taken at face value. For instance, they assert that "other defendants have produced meeting minutes that *appear to have been authored* by Irico." *Cf.* Opp. 14 (emphasis added). But by "appear to have been authored by Irico," Plaintiffs really mean "were once sent or forwarded by a *non-Irico* email address that belonged to an Irico employee." *See* AR Doc. 3, Ex. Z; AR Doc. 4, Ex. BB. The minutes *do not even list that employee as an attendee* (much less the author), and there is no evidence that she was. Moreover, the fact that the email address was not even an Irico one both reinforces that Irico made little use of email and confirms that even comprehensive preservation of Irico ESI would not have resulted in retention of the document in question.

Ultimately, it was incumbent on *the Plaintiffs* to demonstrate that Irico generated and wrongfully destroyed relevant evidence to a degree that would have interfered with a fair trial. *E.g.*, *Dish Network*, 2022 WL 11270394, at *4; *Meta Platforms*, 605 F. Supp. 3d at 1238. Plaintiffs failed to carry that burden, and they cannot excuse that failure through implausible, piecemeal attacks on Irico's rebuttal evidence. *Cf.* Opp. 14-16 (quoting R&R 65). Nor does their argument that Irico's collection efforts were inadequate, *id.*, do anything to prove that documents or ESI existed in the first place. *See, e.g.*, *Best Label Co. v. Custom Label & Decal, LLC*, 2022 WL 1525301, at *5 (N.D.

Cal. May 13, 2022). And like the R&R, Plaintiffs entirely fail to address the elephant in the room: that Plaintiffs' own delay substantially exacerbated any effect they might otherwise be able to prove. *Cf.* Opp. 16 (citing R&R's finding that Irico's "long absence from this litigation" contributed to prejudice, while ignoring *this Court*'s finding that *Plaintiffs'* inaction as to Irico contributed to prejudice, *see* Obj. 28).

In all events, Plaintiffs ultimately concede that virtually all of what they claim has been lost was obtained from other sources. That concession is dispositive too. Even in cases involving "reprehensible" failures to produce important documents, terminating sanctions are "excessive" when "secondary sources" exist and can be used to prove the key facts. *Ahcom, Ltd. v. Smeding*, 2011 WL 3443499, at *9 (N.D. Cal. Aug. 8, 2011) (citing *Med. Lab'y Mgmt. Consultants v. Am. Broad. Cos.*, 306 F.3d 806, 825 (9th Cir. 2002)); *see Nursing Home Pension Fund v. Oracle Corp.*, 254 F.R.D. 559, 564 (N.D. Cal. 2008); *see also, e.g.*, *Microvention, Inc. v. Balt USA, LLC*, 2023 WL 7476998, at *28-29 (C.D. Cal. Oct. 5, 2023) (no terminating sanctions where moving party "still ha[d] some evidence relevant to" issue on which evidence was lost), *report & rec'n adopted*, 2023 WL 7634109 (Nov. 13, 2023). Plaintiffs' only answer is to say that Irico has "argued" such materials are inadmissible. *See, e.g.*, Opp. 30-31. But if Irico's admissibility argument is what is causing Plaintiffs' prejudice, the remedy (if one were warranted) would be to reject that argument, not to resolve the entire case against Irico as punishment for making it. *Linde v. Arab Bank, PLC*, 269 F.R.D. 186, 205 (E.D.N.Y. 2010) (deeming third-party documents "authentic and . . . admissible" as sanction); *Alden v. Mid-Mesabi Assocs. Ltd. P'ship*, 2008 WL 2828892, at *25 (D. Minn. July 21, 2008) (rejecting terminating sanctions and instead "deem[ing] admissible at Trial" all "evidence sought in discovery that was not produced by the Plaintiff, and was subsequently obtained by the Defendants from a third party"). Plaintiffs say nothing to refute that common-sense conclusion.[9] Nor do they ever support their false assumption that the source of the materials in question is the sole factor that renders them inadmissible.

---

[9] Plaintiffs' effort to persuade the Court to turn a blind eye to the fact that this case is on the eve of trial, with an extensive evidentiary record, *cf.* Opp. 31-32, is both unsupportable, *see supra* at 3 (citing *Allen*, 38 F.4th at 71), and indicative of the fact that they have no substantive response.

DOCUMENT PREPARED
ON RECYCLED PAPER

As a last-ditch effort, Plaintiffs parrot the R&R's incorrect assertion that they need not demonstrate prejudice at all. Opp. 26 (citing *Jones v. Riot Hosp. Grp. LLC*, 5 F.4th 730, 736 (9th Cir. 2024)). But the case they cite expressly provides that in order for terminating sanctions to be warranted, "lesser sanctions" must be "insufficient to address the loss" of evidence. *Jones*, 95 F.4th at 735-36. That standard, of course, presumes a loss of evidence in the first place. *Id.* at 736 (analyzing whether "less drastic sanctions . . . would likely be effective" given "the nature of the spoliated ESI"). The R&R erred in saying otherwise.

**B.      Plaintiffs Fail to Support the R&R's Conclusion That Irico Lied to the Court.**

### 1.  Mr. Yan's deposition does not support the R&R's conclusions.

Irico stands by its prior, truthful assertions that it abandoned this litigation due in part to its well-founded, genuinely held belief that it was immune from suit. The R&R had no basis to conclude those assertions were false.

As the Objections explained, the R&R was wrong to conclude that if Mr. Yan did not testify at his deposition regarding Irico's belief in immunity, Irico must not have held such a belief. Obj. 23-24. The deposition is neither here nor there: The reason Mr. Yan did not mention immunity is that he was not asked any question that would have called for him to do so. Indeed, the answer the R&R faulted was a response to the unrelated question whether Mr. Yan was "preliminar[il]y responsible for gathering information to give to Pillsbury after [Irico] w[as] served with the complaint." R&R 5. It would have been strange if Mr. Yan *had* mentioned immunity in response to that question, and to rest a multibillion-dollar default judgment on the fact that he did not would be erroneous.[10]

Plaintiffs fail to identify any question that would have called for the answer the R&R said was missing. Instead, they attack arguments Irico never made. Irico has never claimed, for instance, that Mr. Yan "*forgot*" to mention immunity. *Cf.* Opp. 16 (emphasis added). Yet Plaintiffs focus at length on that straw man.

---

[10] For similar reasons, it is irrelevant that "Mr. Yan did not supplement his testimony when examined by his own counsel." *Cf.* Opp. 17. There was nothing to supplement. Nor would there be anything unusual about a defendant's decision not to comprehensively depose its own employee, particularly on a non-merits issue it could not have known would ever become relevant again.

Plaintiffs are also wrong that Mr. Yan's statement that "Irico intended to eventually defend the case after the plaintiffs filed an independent, separate lawsuit against Irico" somehow belies Irico's belief in immunity. Opp. 16. Immunity *is a defense*, and raising it in the later lawsuit would be "defend[ing] the case." In all events, Plaintiffs cannot support a multibillion-dollar default judgment by reading between the lines of a foreign national's translated deposition, then filtering their reading through their own understanding of U.S. law. Similarly, the innocuous, translated phrase "[t]hat's it" cannot bear anything close to the weight Plaintiffs place upon it. *Cf. id.*

Plaintiffs' assertion that "there is no evidence in the record that contradicts the R&R's findings," *cf.* Opp. 17, also fails. Again, the "heavy burden to establish the appropriateness of terminating sanctions" rests on the party seeking them. *E.g.*, *Katzman*, 2015 WL 13861765, at *14 (movant bears the "heavy burden to establish the appropriateness of terminating sanctions"). That means the only "conclusion" that "Mr. Yan's silence compels," *cf.* Opp. 17, is that Plaintiffs have failed to carry their burden. In any event (and as Plaintiffs nowhere address), the Objections explained that the R&R's findings are affirmatively contrary to Mr. Yan's testimony that:

- Irico believed its lack of U.S. connections differentiated it from other defendants who were clearly subject to U.S. jurisdiction;

- in considering whether to abandon the litigation, Irico relied on its observation that all the "other companies were big multinational companies" that "not only had CRT products in the U.S. market," but also had "whole [TV] sets in the U.S. market," while "Irico, at that time, had neither";

- "the U.S. government was conducting . . . criminal investigations in the antitrust litigation proceeding against" those other companies, but not against Irico; and

- Irico abandoned the litigation in part based on a worry that if it formed a group with other defendants, the distinction would go "down the drain."

Obj. 24 (citing testimony); R&R 5-6. Plaintiffs fail to contend with any of that testimony. And their convoluted attack on the Zhang declaration, *cf.* Opp. 17, has nothing to do with whether Irico "lied"; fails to respond to the Objection, *see* Obj. 25-26; misstates the burden of proof yet again; and amounts to little more than a years-too-late effort to relitigate the lift of default.

DOCUMENT PREPARED
ON RECYCLED PAPER

### 2.   The R&R's invocation of the Yan Document was facially improper.

The Objections further explained that the Yan Document cannot form the basis for the R&R's recommendation. Obj. 26-27. Plaintiffs fail to refute that showing also.

To begin, Plaintiffs simply ignore the Objections' showing that the R&R's public quotation and characterization of the Yan Document "contravene[d] this Court's prior ruling." Obj. 26. As the Objections explained, that intentional disclosure was fundamentally improper and warrants withdrawing the referral. *Id.* Plaintiffs do not even address it.

Plaintiffs also do not meaningfully respond to the Objections' showing that reconsideration of this Court's work-product ruling is not warranted. Obj. 26-27. Instead, they assert only that as a general matter, the Court has the *power* to reverse its nonfinal orders. Opp. 17. But the Objections explained the well-settled legal standards that *channel the exercise* of that power, none of which are satisfied here. Obj. 26-27 ("Reconsideration is inappropriate in the absence of clear error or manifest injustice."). Plaintiffs do not address those requirements and have thus waived any claim that they are satisfied.[11]

What little Plaintiffs do say on the issue flagrantly misrepresents the record. According to them, "Irico does not dispute the R&R's finding that the Yan Document confirms Irico's lies." Opp. 17. But Irico expressly stated otherwise, and explained that the sole reason it did not brief the substance of those disagreements was that the R&R's improper disclosure made it impossible to litigate the issue without risking a privilege waiver. Obj. 23, 27.

Plaintiffs' contention that "redactions and filing under seal" would have alleviated the waiver risk, Opp. 17, is also unsupportable. Initiating a dispute over the contents of a document "Plaintiffs have not seen," Opp. 18 n.18, would almost certainly waive the privilege. That is why Irico made no argument about the document's contents and scrupulously avoided discussing them. And because the now-unrebutted arguments Irico did make—that the Yan Document (i) has already been determined to be work-product privileged, and (ii) is not properly in the Motion record—in no way depend on the document's contents, there was no reason to supplement the AR to include

---

[11] The arguments Plaintiffs do make are nonresponsive to—and already addressed in—the Objections. Obj. 27; *cf.* Opp. 18.

DOCUMENT PREPARED
ON RECYCLED PAPER

the document itself. Plaintiffs' suggestion that the Court should base a multibillion-dollar default judgment on the fact that Irico declined to do so, *cf.* Opp. 17, is not credible.

### 3. Plaintiffs' prejudice arguments depart from the R&R and are meritless.

The Objections also demonstrated that Plaintiffs cannot demonstrate prejudice with regard to the set-aside motion, largely because nothing that happened in 2017 *caused* the supposed evidence losses on which the R&R purports to be based, which occurred (if at all) years or a decade earlier. Obj. 28. Plaintiffs' argument to the contrary, Opp. 18, disregards the linear nature of time. Nor do Plaintiffs address the Ninth Circuit precedent holding that unrelated issues cannot be lumped together to support termination. *Faerfers v. Caviar Creator, Inc.*, 359 F. App'x 739, 741-42 (9th Cir. 2009). Instead, Plaintiffs cite a case in which no argument to that effect was even made. Opp. 18 (citing *Anheuser-Busch, Inc. v. Nat. Beverage Distribs.*, 69 F.3d 337, 348 (9th Cir. 1995)).[12]

Ultimately recognizing the R&R's error, Plaintiffs now urge the Court to adopt a simplistic alternative: if Irico obtained the lift of default by lying (which, as explained, it did not), then the default should be reinstated and turned into a default judgment. Opp. 19. But that argument belongs in a motion for reconsideration, not a motion for sanctions. Moreover, it is a stark departure from anything the R&R recommends. The R&R nowhere suggests that the lift-of-default issue alone can support terminating sanctions standing. And any such suggestion would place even more undue weight on a single, at-worst-ambiguous deposition answer than the R&R did. *See supra* at 11.

The unpublished, out-of-circuit case Plaintiffs accuse Irico of "ignor[ing]," Opp. 19, was not cited in the R&R. Nor does it support Plaintiffs' position. There, the defendants made repeated false statements regarding objective matters of fact that were within their personal knowledge, leading the court to conclude that they engaged in "a willful attempt to defraud the Court and resist discovery." *Google LLC v. Starovikov* 2022 WL 16948296, at *6 (S.D.N.Y. Nov. 15, 2022). Further, the court found the very prejudice that is missing here, because the lies in question impeded discovery on the merits. *Id.* *6-7. Even then, the court considered lesser sanctions, but determined that because the discovery misconduct was so comprehensive, "[a]n adverse inference" remedying

---

[12] Plaintiffs are wrong to dispute whether "delay alone" can support terminating sanctions, but they render the issue irrelevant by conceding that it does not do so here. *See* Opp. 19 n.20; Opp. 28.

DOCUMENT PREPARED ON RECYCLED PAPER

it "would . . . result in the functional equivalent of a judgment." *Id.* at *12. Only then did the Court deem termination appropriate. *Starovikov* thus refutes Plaintiffs' argument that there is some *per se* rule requiring termination any time misconduct pertains to a motion to lift default.

## C. Irico's Objections Regarding the Su Deposition Should Be Sustained.

### 1. The record does not support Plaintiffs' contention that Irico controlled Mr. Su.

Mr. Su's failure to attend his scheduled deposition was not attributable to Irico. Obj. 29-31. Though Plaintiffs argue that it is irrelevant whether Mr. Su was under Irico's control, Opp. 23, the lone case they cite on this issue says otherwise. That case makes clear that the Rules do not "demand the impossible," such as production of witnesses who are outside a party's control. *Sali v. Corona Reg'l Med. Ctr.*, 884 F.3d 1218, 1223-24 (9th Cir. 2018) (upholding a small monetary sanction on a party that failed to produce for deposition its own expert witness). The general rule, which *Sali* does not purport to alter, is that a nonparty witness's failure to appear cannot be attributed to a party unless the witness is under the party's control.

As the Objections explained, Irico lacked control over Mr. Su at all relevant times. The dispute over that point is far narrower than Plaintiffs imply. For instance, Plaintiffs abandon the R&R's suggestion that Irico can be faulted for the "four extensions of time, a change of venue and extensive negotiations due to COVID-19 quarantine restrictions" that occurred before Mr. Su left Irico and thus became unavailable. *Cf.* R&R 41; *see, e.g.*, Opp. 23-24. Nor do they dispute the Objections' showing that Irico undertook substantial, good-faith efforts to arrange depositions of four other Irico witnesses in foreign jurisdictions, or that Mr. Su's deposition was the only deposition that Plaintiffs noticed that did not ultimately occur. *See* Obj. 10-12, 29-30. Finally, Plaintiffs do not dispute that Mr. Su was *never* going to travel because the severe quarantine requirements upon his return would have prevented him from caring for his elderly mother—whom, indeed, he resigned in order to care for. *See* Obj. 30; AR Doc. 26, attachs. F & G (resignation request and letter mentioning elderly mother).

Ignoring these facts, Plaintiffs argue that "substantial evidence" supports the R&R's contradictory alternative explanation, which posits that Irico (i) granted Mr. Su early retirement to

DOCUMENT PREPARED ON RECYCLED PAPER

avoid his deposition, and (ii) nevertheless retained control over him thereafter and could have forced him to appear. Opp. 20, 22. But to begin, Plaintiffs' argument rests on yet another misstatement of their burden, which requires far more than "substantial evidence." *E.g.*, *Garcia v. Vitus Energy, LLC*, 600 F. Supp. 3d 975, 983 (D. Alaska 2022) (terminating sanctions require "clear and convincing evidence" of bad-faith conduct). Moreover, Plaintiffs overwhelmingly rely not on record evidence, but instead on characterizations contained in the R&R, the very document now under review. As Irico explained in its Objections, the actual record fails to support—and in fact refutes—every significant aspect of the story Plaintiffs tell:

- Plaintiffs argue that Mr. Su's early resignation was a departure from Irico's "normal practice." Opp. 21. But to the extent early-rest applications were occasionally denied, the record makes clear why Mr. Su's request was granted: his need to care for his aging mother. AR Doc. 26, attachs. E-H.

- Plaintiffs argue that Irico's legal department had notice of Mr. Su's departure prior to May 31, based entirely on the fact that Mr. Yan's translated deposition transcript initially stated that he learned of it "in" April. Opp. 21. But Mr. Yan's deposition errata clarified that he never actually said that. *Id.* It is not "improper" or "not credible," *id.*, to submit an erratum to correct a preposition inaccurately translated from Chinese. To the contrary, what is doubtful is that Plaintiffs can satisfy their burden through such skepticism alone.

- Plaintiffs argue that Irico had advance notice because Mr. Su began the process of applying for early rest in April. *Cf.* Opp. 21-22. But the uncoordinated knowledge of a handful of Irico employees cannot be ipso facto attributed to the entity as a whole and converted into wrongful intent. Although a committee did approve Mr. Su's resignation two months after giving routine approval to his deposition travel, meeting minutes confirm that the committee was unaware of any connection between the two. AR Doc. 25, Ex. E.

- Plaintiffs argue that Mr. Su had not "retired" or "resigned," but was "in-service" and paid by Irico through August 2023. Opp. 22. To the contrary, Mr. Su did resign, AR

DOCUMENT PREPARED
ON RECYCLED PAPER

Doc. 26, attach. L, and his legal classification as "not retired" related only to his entitlement to a living expense stipend paid by Irico, AR Doc. 25, Ex. F. This post-resignation stipend was government-mandated, and Irico had no authority to wield it as a tool to control Mr. Su. *See* Obj. 11; AR Doc. 27, attach. 1, art. 9 (Chinese law governing Mr. Su's right to living expense stipend).

- Plaintiffs argue that Mr. Su was still somehow working for Irico after his replacement was appointed on June 17, 2022. *Cf.* Opp. 22-23. But there is nothing surprising about shareholders ratifying a personnel change after the fact, a former employee helping log into a corporate bank account, or a departure audit. *See* Obj. 11, 30-31.

- Plaintiffs argue that Mr. Su remained on the boards of two Irico-related entities even after his resignation. *Cf.* Opp. 22-23. But Irico does not control every board member of its affiliates, and was not obliged to seek Mr. Su's instantaneous removal from its affiliates' boards in order to punish him for resigning.

In sum, Plaintiffs seize on stray threads to weave a narrative bearing little relation to the mundane reality: Mr. Su resigned to avoid burdensome deposition travel, and there is no evidence that anyone at Irico realized that this was his plan until it was too late.

Plaintiffs also fail to rehabilitate the R&R's misplaced reliance on *Beijing Choice Elec. Tech. Co. v. Contec Med. Sys. USA Inc.*, 2021 WL 9184385 (N.D. Ill. Dec. 17, 2021), *report & rec'n adopted* 2022 WL 3053550 (May 12, 2022). As the Objections explained (and Plaintiffs do not rebut), *Beijing Choice* is inapposite because the party there failed timely to inform opposing counsel despite knowing that the deponent would refuse to travel. *Id.* at *4. By contrast, Irico's counsel timely notified Plaintiffs once they learned that (contrary to previous indications) Mr. Su did not intend to cooperate. Obj. 30. And *Beijing Choice* cannot support the R&R anyway, because it *did not impose terminating sanctions*. 2021 WL 9184385 at *4.

### 2. Plaintiffs cannot establish prejudice sufficient to warrant terminating sanctions.

The Objections explained in detail that the loss of Mr. Su's deposition did not cause

DOCUMENT PREPARED
ON RECYCLED PAPER

prejudice sufficient to warrant terminating sanctions. Obj. 9-10, 31. Plaintiffs conclusorily describe that discussion as "baseless," but do not address its substance. Opp. 29. They also fail to dispute that the R&R made clear, material factual errors regarding Mr. Su's position at Irico. Obj. 9-10, 31.

Instead, Plaintiffs claim in a footnote that the prejudice issue is dead because the Special Master once, in an unobjected-to recommendation relating to Plaintiffs' requests for additional discovery, characterized Mr. Su as "important." *Cf.* Opp. 29 n.28. But not even the R&R endorsed that gotcha argument. Contrary to Plaintiffs' repeated suggestions, *cf., e.g.*, *id.* at 2-3, Irico's decision not to object to that then-insignificant mischaracterization embedded in a minor discovery R&R applying a different standard, *see* ECF 6115, obviously did not waive Irico's right to contest (much less bind this Court to order) termination of the entire case based on Mr. Su's refusal to appear. Indeed, even if Irico had objected and the Special Master's characterization had been upheld on the clear-error review this Court has applied to non-dispositive recommendations, *see, e.g.*, ECF 6093, this Court would still be obliged to revisit it now that terminating sanctions are on the line and this Court's review is de novo.

As the record shows, and as Irico explained, Obj. 9-10, 31, Mr. Su is not the key witness the R&R makes him out to be. Mr. Su was included in Irico's interrogatory responses not because he had extensive relevant knowledge, but because he was one of the few remaining persons at the company with *any* relevant knowledge.[13] That circumstance is not part of some "malign strategy," Opp. 31, but is instead attributable principally to *Plaintiffs*' failure to diligently prosecute their claims. Moreover, it is implausible that, if deposed in 2022, Mr. Su would have provided meaningful detail on matters such as supposed "competitor meetings," pricing details, Government-implemented price floors, or the other issues about which Plaintiffs claim he would have testified. *Cf.* Opp. 31-32. To the contrary, Plaintiffs concede that witnesses' lack of recall about such alleged events—many almost a quarter century old—has been a persistent challenge (which, again, is

---

[13] Plaintiffs' claim that Mr. Su was "identified as knowledgeable about Irico's competitor meetings," Opp. 30, is misleading. As Plaintiffs do not dispute, Mr. Su recalls having attended a single, *customer*-sponsored meeting at which competitors were merely present, and neither CRT prices nor production levels were discussed there. Obj. 9. Plaintiffs further fail to dispute that the R&R erred in describing that meeting otherwise. *Id.* at 9, 31.

DOCUMENT PREPARED
ON RECYCLED PAPER

largely Plaintiffs' own fault). *Id.* And as with the ESI issue discussed above, *see supra* at 8, the unlikelihood that Mr. Su would have provided material evidence further refutes the notion that Irico engaged in some grand scheme to hide him.

### 3. Any delays in imaging the Su laptop are irrelevant to the issue of terminating sanctions.

Plaintiffs wrongly claim that Irico was noncompliant with two orders requiring document collection relating to Mr. Su's resignation. *Cf.* Opp. 24. In fact, the Objections extensively catalogue why the conduct the R&R faulted was blameless. *See* Obj. 31-32. Plaintiffs fail to refute that showing.

*First*, Plaintiffs suggest that Irico violated the December 2022 Su Order by producing insufficient documents. *Cf.* Opp. 24. Plaintiffs reason that Irico must have violated that order because Irico produced additional documents in response to a later order (the First Interim Order), which purportedly required "the same" production. *Id.* But the Su Order required a "targeted" collection on an expedited, two-week production timeline, ECF 6115 at 12-13, while the First Interim Order required "further searches," specified a forensic collection, and correspondingly allowed an extended production timeline, ECF 6264 at 7-9; *see* Obj. 31. It is in no way inculpatory that the later order resulted in a larger production. That was the entire point.

*Second*, Plaintiffs argue that Irico "ignored" the First Interim Order's instructions in favor of an "alternative plan to have [Mr. Su's] laptop analyzed by unknown individuals in China with unknown qualifications." Opp. 24. But as this Court recognized, Irico did not *ignore* that order; it sought "clarification" of how to comply with it given the requirements of Chinese law. ECF 6275; *see* Obj., Ex. 31 at 2 (letter proposing use of "a forensics technology vendor in China, who is retained by and acting under the supervision of Irico's U.S. and Chinese outside counsel"). Plaintiffs do not dispute that Irico's ability to comply with the August 2022 order was hampered by its obligation to comply with Chinese state secret laws. *See* Obj. 31-32. It was not discovery misconduct, let alone grounds for terminating sanctions, for Irico to propose in good faith a procedure for complying with both. *Id.*

In all events, Plaintiffs cannot establish the necessary prejudice resulting from any delays

DOCUMENT PREPARED
ON RECYCLED PAPER

1    in document collection. Indeed, Plaintiffs' explanation of the prejudice they purportedly suffered

2    is incoherent. They claim they were prejudiced by Irico's noncompliance with an order *issued in*

3    *December 2022* because "Irico wiped Mr. Su's laptop on *June 15, 2022*." Opp. 25 (emphasis

4    added). Plaintiffs also fault Irico for not searching Mr. Su's personal devices when it had no

5    authority or ability to do so (there is no dispute that by *August 2023* Mr. Su was no longer in Irico's

6    employ). *Id.* Ultimately, it is undisputed that Irico conducted multiple rounds of significant

7    document review as to the Su deposition issues, including Chinese-law-required state-secrets

8    review and responsiveness review of close to 40,000 documents. Irico produced all responsive,

9    non-privileged, non-state-secret documents from those reviews. AR Doc. 30 at 2.

10      Still further, the Su document collection concerned a "peripheral," discovery-regarding-

11    discovery matter that is "wholly unrelated to" the merits. *Phoceene Sous-Marine, S. A. v. U.S.*

12    *Phosmarine, Inc.*, 682 F.2d 802, 806 (9th Cir. 1982). As the Objections explained, such claims of

13    prejudice are "far too attenuated" to support termination. Obj. 32. Plaintiffs do not dispute the point.

14    **III.**    **Plaintiffs All But Ignore The Proportionality Requirement.**

15      **A.**    **Plaintiffs Fail to Address the Possibility of Lesser Sanctions.**

16      As noted, the "governing concept" when it comes to sanctions is "proportionality." *Google*

17    *Play*, 664 F. Supp. 3d at 994; *see also, e.g.*, *Fjelstad v. Am. Honda Motor Co., Inc.*, 762 F.2d 1334,

18    1338 (9th Cir. 1985) (termination may not be imposed "for punishment of an infraction that did not

19    threaten to interfere with the rightful decision of the case"); *Apple Inc. v. Samsung Elecs. Co.*, 888

20    F. Supp. 2d 976, 992-93 (N.D. Cal. 2012) ("Courts should choose the least onerous sanction

21    corresponding to the willfulness of the [party's conduct] and the prejudice suffered by the victim.").

22    Yet Plaintiffs fail to even address the Objections' showing that if any misconduct warranting a

23    remedy is found, lesser sanctions would adequately address it. Obj. 33-35. Instead, without

24    mentioning a single lesser sanction, Plaintiffs contend that as long as *the R&R* analyzed some

25    possibilities, its recommendation can be rubber-stamped. *Cf.* Opp. 32-33. But this Court's review

26    is de novo, and it would be improper to impose terminating sanctions without first determining,

27    based on *this Court's* independent analysis, that no lesser sanction was adequate. *See, e.g.*,

28    *Facebook*, 2022 WL 17371092, at *5.

Plaintiffs make no showing whatsoever on that issue. And even if they could prove the prejudice they claim, the adequacy of lesser sanctions would be obvious. For instance, if (as Plaintiffs repeatedly assert) Irico's authentication and admissibility challenges are the source of Plaintiffs' prejudice, *cf.* Opp. 3, 30-31, that could easily be remedied (if a remedy were necessary, which it is not) by rejecting Irico's arguments and permitting third-party documents to be introduced at trial. *See supra* at 9 (citing cases). Despite the Objections' discussion of this lesser sanction, Obj. 33, Plaintiffs offer no reason why it would not provide a comprehensive remedy.

Similarly, to the extent the Court determines that Mr. Su's failure to appear for deposition warrants a remedy, it could bar Irico from calling him at trial, award fees and costs associated with Plaintiffs' Motion, or even give an adverse-inference instruction regarding what he would have said. Obj. 33-34. The Objections explained that each of those possibilities would provide a more than adequate remedy if one were warranted. *Id.* Plaintiffs do not respond.

To the extent Plaintiffs claim any broader prejudice, their claims are unsupportable. They imply, for instance, that they are prejudiced because Irico has not handed them documents that almost never exist in *any* case, such as "agree[ments] to fix prices or limit production," documents showing "conspiratorial price increases," and documents showing "conspiratorial production cuts." Opp. 30-31. As Plaintiffs concede, their burden is to come forward with "plausible, concrete suggestions as to what the destroyed evidence might have been," Opp. 29, not a wish list. And the likelihood that such documents ever existed in Irico's files is essentially zero, as the Supreme Court, the Ninth Circuit, and this Court have repeatedly recognized. *See supra* at 8.

Plaintiffs' lengthy invocation of the *Anheuser-Busch* factors, *cf.* Opp. 28-35, is also not to the contrary. The first three factors—violations of court orders, the need to manage dockets, and the risk of prejudice—do not favor terminating sanctions where, as here, the alleged violations of court orders were technical, non-prejudicial, and in no way reflective of ongoing disregard for this Court's authority. *See supra* at 4, 6-7, 14, 16-17, 18-19. And the remaining two factors—public policy favoring disposition on the merits and the availability of less drastic sanctions—weigh heavily against terminating sanctions, for reasons already explained. Nor does *Transamerica Life Insurance Co. v. Arutyunyan*, 93 F.4th 1136 (9th Cir. 2024), remotely support Plaintiffs' suggestion

DOCUMENT PREPARED
ON RECYCLED PAPER

1   that terminating sanctions can be awarded where lesser sanctions would constitute a sufficient

2   remedy. That case discussed at length the "measured and gradual approach" the district court took,

3   and—like every other terminating-sanctions case Plaintiffs cite—involved facts far beyond

4   anything alleged here. *Id.* at 1139-40, 1148 (defendants "repeatedly failed to obey court orders

5   related to the discovery process," and "when called upon to defend [their] disregard of the district

6   court's orders," made "multiple blatantly false statements" to Ninth Circuit).

7       **B.     Plaintiffs Fail to Justify Striking Irico's Defenses.**

8       The Objections explained why any lost evidence is irrelevant to various complete defenses

9   Irico will raise at trial. Obj. 34. Plaintiffs fail to address the issue, except to baldly assert that the

10   defenses are "intertwined with liability." Opp. 35. But Plaintiffs have nowhere made any showing

11   as to what evidence might have borne on Irico's international comity defense, its lack of contacts

12   with certain U.S. states, and the lack of intrastate conduct, among other defenses. *Cf.* Obj. 34. At

13   minimum, therefore, proportionality requires that Irico be permitted to raise those defenses and the

14   others as to which Plaintiffs have failed to show prejudice.

15       **C.     Plaintiffs Fail to Justify Precluding Irico From Contesting Damages.**

16       The Objections also explained that there is no basis to foreclose a trial on damages. Obj.

17   34-35. Plaintiffs concede that the conduct on which the R&R relied is irrelevant to their damages

18   case. *See* Obj. 35. Instead, they merely argue that a damages trial can generally be dispensed with

19   when a default judgment is entered. *Cf.* Opp. 35. But again, "[p]roportionality is the governing

20   concept" when choosing a sanction. *Google Play*, 664 F. Supp. 3d at 994. Plaintiffs nowhere

21   explain how it could be proportional to enter judgment on issues unaffected by the alleged conduct.

22                              **<u>CONCLUSION</u>**

23       For the foregoing reasons and those set forth in the Objections, Irico respectfully requests

24   that the Court deny the Motion and decline to adopt the R&R.

25

26

27

28

DOCUMENT PREPARED
ON RECYCLED PAPER

- 21 -

Dated: August 1, 2024

**NORTON ROSE FULBRIGHT US LLP**

/s/ *Jeffrey B. Margulies*
JEFFREY B. MARGULIES (BAR NO. 126002)
KAYLEE YANG (BAR NO. 303464)
Norton Rose Fulbright US LLP
555 California Street, Suite 3300
San Francisco, California 94104
Telephone: (213) 892-9200
Facsimile: (213) 892-9494
jeff.margulies@nortonrosefulbright.com
kaylee.yang@nortonrosefulbright.com

GERALDINE YOUNG (admitted *pro hac vice*)
1301 McKinney, Suite 5100
Houston, Texas 77010
Telephone: (713) 651-5151
Facsimile: (213) 651-5246
geraldine.young@nortonrosefulbright.com

*Attorneys for Defendants Irico Group Corp. and*
*Irico Display Devices Co., Ltd.*