*[Submitting Parties and Counsel Listed on Signature Page]*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# OAKLAND DIVISION

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Master File No.: 07-cv-05944 JST<br><br>MDL No. 1917 |
| This document relates to:<br><br>*ALL INDIRECT PURCHASER ACTIONS*<br><br>*ALL DIRECT PURCHASER ACTIONS* | **JOINT STATEMENT REGARDING MAY 13, 2025 PRE-HEARING CONFERENCE**<br><br>Date: May 13, 2025<br>Time: 10:00 a.m.<br>Courtroom: 6, 2nd Fl.<br>Judge: Honorable Jon S. Tigar |

Pursuant to this Court's Order Setting Additional Deadlines Re: Damages Hearing, ECF No. 6466 ("Order"), Indirect Purchaser Plaintiffs ("IPPs"), Direct Purchaser Plaintiffs ("DPPs") (together "Plaintiffs"), and Defendants Irico Group Corporation ("Group") and Irico Display Devices Co., Ltd. ("Display") (together, the "Irico Defendants" or "Irico")), by and through the undersigned counsel, hereby submit this Joint Statement setting forth the issues the parties seek to discuss at the May 13, 2025 pre-hearing conference:

## JOINT STATEMENT

The parties respectfully request that the Court address the following issues at the May 13, 2025 pre-hearing conference.

**1.    The sequence of witness testimony:** The parties would like to amend the sequence of witness testimony from what was previously proposed to the Court (*see* ECF No. 6445 at 21-22) and discuss whether the parties may reserve some of their time for re-direct, re-cross or rebuttal. The parties propose that their witnesses testify at the hearing in the following sequence:

| Day 1 | Day 2 | Day 3 |
|---|---|---|
| 1.5 hour – IPP/Netz Direct | 0.5 – DPP/Johnson Direct (cont.) | 1.0 – Irico/Guerin-Calvert Direct (cont.) |
| 1.5 - IPP/Netz Cross | | |
| | 1.5 - DPP/Johnson Cross | 3.0 - Irico/Guerin-Calvert Cross (1.5 by IPP, 1.5 by DPP) |
| 1.0 – DPP/Johnson Direct | | |
| | 2.0 – Irico/Guerin-Calvert Direct | |

The parties further propose that a party may reserve time from their 1.5 hour direct (3.0 hour direct for Irico) or cross examination to re-direct or re-cross, and that the IPPs and DPPs may reserve time for rebuttal from their 1.5 hour direct of their respective witness.

**2.    Regulation of time by the Court:** The parties would like to discuss how the Court prefers or plans to regulate time during the hearing.

**3.    What time the parties may enter the courtroom before the hearing:** The parties wish to discuss what time they may enter the courtroom on May 19, 2025 before the hearing starts.

**4.  Resolution of evidentiary objections to exhibits:** Pursuant to the Court's Order Setting Additional Deadlines Re: Damages Hearing (ECF No. 6466), the parties exchanged exhibit lists on May 1, 2025 and served their objections to exhibits on May 7, 2025. After these exchanges, the parties met and conferred extensively in "a good faith effort to stipulate to exhibits' admissibility." Standing Order for Civil Bench Trial Before District Judge Jon S. Tigar at p. 3. The parties successfully resolved their objections regarding the majority of their exhibits; however, some objections remain. To avoid unnecessary interruptions and delays during the damages hearing, the parties respectfully request that the Court resolve the parties' objections to exhibits at the May 13, 2025 conference. The parties set forth their respective positions regarding the objections to exhibits in separate sections below.

**5.  Whether issues relating to duplicative damages and trebling can be handled post-hearing:** IPPs and Irico propose that the question of whether "duplicative damages" should be apportioned between IPPs and DPPs (Issue No. 3, ECF No. 6459 at 2) and the question of whether Irico's conduct was "flagrant and/or willful" such that treble damages are appropriate or can be awarded under certain state laws (*id*., Issue No. 4), be addressed by the Court in a separate proceeding after the amount of damages are determined.[1] Both the duplicative damages and the trebling issues require that the Court determine the amount of damages before they can be addressed, and they are traditionally addressed in post-trial proceedings. Therefore, given the limited time for the damages hearing, the parties submit that these issues should be deferred. The parties are prepared to address these issues at the damages hearing, however, if that is the Court's preference.

**6.  Post-trial Briefing:** The Court's Order Re: Damages Hearing provides that the parties may file post-trial briefs on June 4, 2025 "of no more than 15 pages per side[.]" ECF No. 6459 at 3. The parties request that the Court amend this Order to provide that IPPs and DPPs may file post-trial briefs on June 4, 2025 of 15-pages each, and Irico may file a post-trial brief of 25 pages.

---

[1] The IPPs have agreed to not object to the admission of Irico's Exhibit 400 to Irico's Trial Brief on Damages, Declaration of Margaret Guerin-Calvert, or argue that Irico has waived duplicative damages arguments if the issue is deferred.

The IPPs also wish to alert the Court of the following issue:

**IPPs' Damages:** IPPs' total damages have been adjusted downward to $2,697,957,236 from the $2,768,613,903 reported in Dr. Netz's Reports. *See* IPPs' Trial Brief (ECF No. 6471) at 2 n.4, & 10-12. This is to account for the shortened class periods for Hawaii, Nebraska and Nevada, whose antitrust statutes were enacted after the cartel was formed. *See id.* at 2, n.4 (citing IPPs' Complaint ¶ 245). The shortened class periods reduce the estimated CRT revenue attributable to purchasers in those states, which reduces the CRT revenue attributable to the 22 States during the Class Period from $17.5 billion to $17.1 billion, resulting in a lower damages estimate than previously reported by Dr. Netz. *Id.; see also id.* at 10-12. All other elements of Dr. Netz's equation for calculating the damages to the indirect purchaser class members remain the same. *Id.* The lower revenue and damages figures are used in IPPs' Trial Brief and IPPs' Findings of Fact and Conclusions of Law (ECF No. 6472).

## IPP STATEMENT RE: EVIDENTIARY OBJECTIONS

Irico objects to IPPs' Exhibits 45-59, which support IPPs' complaint allegations and their expert's opinion regarding Irico's participation in the conspiracy prior to 1998,[2] and rebut Irico's contention that IPPs cannot recover pre-1998 damages. Irico objects based on relevance under Fed. R. Evid. 401 claiming that these exhibits are outside the scope of the damages hearing. Irico also raises authenticity and hearsay objections to many of these documents. The disputed exhibits and the objections raised as to each are identified below.[3]

### 1. Irico's Relevance Objections Lack Merit

Irico objects to IPPs' Exhibits 45-59 on relevance grounds. These documents fall within the scope of IPPs' Complaint allegations and demonstrate that Irico participated in the conspiracy prior to August 1998. *See* IPPs' Trial Brief at 22-23 (describing complaint allegations).

---

[2] IPPs intend that their expert, Dr. Janet Netz, will testify regarding her previously disclosed review of the evidence of Irico's participation in the conspiracy prior to 1998 and her opinions based on that evidence. *See* ECF No. 6306-6 at 7-8 (Janet S. Netz, Ph.D. Rebuttal to Suppl. Expert Rpt. of Margaret E. Guerin-Calvert and Expert Rpt. of Donald Clarke, dated April 27, 2022).

[3] The documents are also discussed in IPPs' Trial Brief (ECF No. 6471) at 22-26, and are described in the Alioto Declaration in Support (ECF No. 6471-1), ¶¶ 46-60, and attached as Exhibits 45-59.

When Irico filed its statement regarding the scope of the damages hearing in January 2025, Irico stated that, "Plaintiffs' argument that the amount of damages against Irico should include damages before 1998 . . . falls squarely within the category of unpled facts and damages-related facts that cannot be taken as true and *that must be proven*[.]" ECF No. 6445 at 14 (emphasis added). Yet, Irico now claims that this Court excluded evidence of its pre-1998 conduct when it stated that the "start-date" issue "may be argued but [will] depend on what is contained in the pleadings." *Id.* at 2.

Irico's interpretation of the Order is different from IPPs' interpretation. The Court's Order did not bar evidence of Irico's pre-1998 conduct; it stated that such evidence "is not required" (*id.*), recognizing the well-established principle that, given Irico's default, IPPs' well-pleaded allegations, "and all inferences that may reasonably be drawn from those allegations [are] deemed to be true." *Freeman v. Giuliani*, 732 F. Supp. 3d 30, 37 (D.D.C. 2024). Therefore, if the Court determines that IPPs' Complaint alleges Irico participated in the conspiracy before 1998[4]—which Irico acknowledged in its July 2023 summary judgment motion[5]—this issue will be resolved against Irico.

If, however, the Court concludes that documentary evidence of Irico's pre-1998 conduct would assist it in deciding this issue, the Court is free to consider such evidence. Federal Rule of Civil Procedure 55(b) governs the damages hearing and gives the Court "considerable leeway" to determine how the hearing will be conducted and what evidence or arguments "it may require as a prerequisite to the entry of a default judgment." *TeleVideo Systems, Inc. v. Heidenthal*, 826 F.2d 915, 917 (9th Cir. 1987) (affirming default judgment against as a sanction, including the district court's admission of documentary evidence in support of liability and damages); *see also Domanus v. Lewicki*, 742 F.3d 290, 303 (7th Cir. 2014) (emphasizing the court's "broad latitude in quantifying damages, especially when the defendant's own conduct impedes quantification.…") (internal quotation marks and citation omitted).

---

[4] IPPs' Complaint does so allege. *See* IPPs' Trial Brief at 22-26 (describing allegations).

[5] *See* ECF No. 6225 at 12 ("Plaintiffs allege that Irico's participation in the conspiracy began at the start of the conspiracy period in March 1995.").

For example, in *Freeman v. Giuliani*, the Court held that plaintiffs were not limited to proving damages based only on the specific defamatory statements in their complaint where the defaulting defendant was on notice via discovery and expert reports that plaintiffs were seeking damages based on additional violations. *Freeman,* 732 F. Supp. 3d at 48. Here, Irico is not only on notice that IPPs' Complaint alleges Irico's participation in the CRT conspiracy from 1995-2007, but IPPs have also made it clear throughout the litigation that they are seeking to hold Irico liable for damages for the entire class period.[6] Indeed, as noted, Irico acknowledged this in its summary judgment motion. *See* ECF No. 6225 at 12.

Irico argues it would be unfair to permit IPPs to introduce documentary evidence regarding its pre-1998 conduct when the Court has forbidden Irico from doing so—a contention to which it refers as a "sword-shield situation." Irico Trial Brief at 13. But Irico and the IPPs are not similarly situated. The Court imposed terminating sanctions on Irico based on its willful misconduct and dishonest and manipulative tactics that seriously prejudiced IPPs and made a fair trial impossible. By contrast, IPPs are entitled to "all reasonable inferences" that may be drawn not only from the allegations of the Complaint but also from the evidence. *In re Consolidated Pretrial Proceedings in Air West Sec. Litigation*, 436 F. Supp. 1281, 1286 (N. D. Cal. 1977) ("[T]he party in whose favor a default has been entered is entitled to the benefit of all reasonable inferences from the evidence tendered."). The Court should admit the limited documentary evidence IPPs proffer to be able to draw "reasonable inferences" from it, as the law requires, and reject Irico's relevance and out-of-scope objections to IPPs' Exhibits 45-59.

### 2. Irico's Authenticity Objections Lack Merit

Irico also argues IPPs' Exhibit 53 is inadmissible because the only witness IPPs will call at trial is their expert witness, Dr. Netz, who cannot authenticate this document. *See* Irico Trial Br. at 13. Irico misunderstands the law of authentication. "There is no freestanding 'sponsoring witness'

---

[6] *See, e.g.,* ECF No. 6306-6 at 7-8 (Netz 2022 Rebuttal); ECF No. 6226-1 at 10 (IPPs' Objections and Responses to the Irico Defendants' Second Set of Interrogs., Resp. to Interrog. No. 2, Feb. 23, 2022); and, ECF No. 6319 at 4 (IPPs' Opp. to Irico Group Corporation and Irico Display Devices Co., Ltd.'s Motion for Summary Judgment).

requirement in the Federal Rules of Evidence." *TEK Global, S.R.L. v. Sealant Systems International, Inc.*, No. 11-cv-00774-VC, 2017 WL 952955, at *1 (N.D. Cal. March 12, 2017) (citing Fed. R. Evid. 901). "[A] proper foundation need not be established through personal knowledge but can rest on any manner permitted by Federal Rule of Evidence 901(b) or 902. *Orr v. Bank of Am.*, 285 F.3d 764, 774 (9th Cir. 2002).

IPPs' Exhibit 53 was produced in discovery by defendant Beijing Matsushita Color CRT Co., Ltd. ("BMCC") in this action. Production in discovery by a party to the action is conclusive evidence of authenticity. *See Orr,* 285 F.3d at 776 n.20; *Snyder v. Whittaker Corp.,* 839 F.2d 1085, 1089 (5th Cir. 1988). Thus, the governing law compels the rejection of Irico's objections on grounds of lack of authentication.

In addition, the document is admissible under Fed. R. Ev. 901(b)(4), which provides that authentication sufficient for admissibility can be satisfied by a document's "'[a]ppearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances.'" *Las Vegas Sands, LLC v. Nehme*, 632 F.3d 526, 533 n. 6 (9th Cir. 2011); *see also Orr,* 285 F.3d at 777 n. 24 ("documents . . . could be authenticated [under Rule 901(b)(4)] by review of their contents if they appear to be sufficiently genuine."). Where, as here, there is nothing in Exhibit 53 that suggests it is not what IPPs claim it to be, the Court must consider whether it can be authenticated pursuant to Fed. R. Ev. 901(b)(4). *See Las Vegas Sands*, 632 F.3d at 533. "Once the trial judge determines that there is *prima facie* evidence of genuineness, the evidence is admitted. . . ." *Orr,* 285 F.3d at 773 n. 6. Exhibit 53 passes that test.[7]

IPPs' Exhibit 53 is authentic not only because it was produced by Irico's Chinese co-defendant BMCC, but also because its "distinctive characteristics" establish a *prima facie* case for its genuineness and authenticity. The document comprises the minutes of a "CPT Industry Meeting"

---

[7] Indeed, Irico has stipulated, and the Court has ordered, that a significant number of the documents IPPs seek to introduce at trial are authentic without a sponsoring witness. *See* ECF No. 6268 (the "8/25/2023 Stipulated Order"). Significantly, Irico does not assert authenticity objections that are inconsistent with the 8/25/2023 Stipulated Order. Nor does it challenge the authenticity of documents that Irico produced. Irico only objects to the authenticity of documents relating to its participation in, or knowledge of, the conspiracy prior to 1998.

that took place on January 4, 1996, in the "BMCC Business Meeting Room."[8] It is similar in format to countless other minutes of the Chinese CPT Industry Meetings in that the same CRT manufacturers are in attendance, statements are attributed to each attendee in turn, the attendees discuss CRT production, capacity, pricing and market conditions, and conclude the meeting with the agreements reached. *See e.g.*, ECF No. 6471-1 (Alioto Decl.) Exs. 28, 48, 49.

Finally, the Court should reject Irico's authenticity objection because Irico should not be permitted to benefit from evidentiary issues it created by its default and spoliation of evidence. As a result of Irico's misconduct, IPPs were denied the opportunity to develop and authenticate the evidence against Irico while its co-conspirators were still part of the litigation. Moreover, the prejudice to IPPs is compounded by Irico's near-total spoliation of its own documents, forcing IPPs to rely on documents authored by witnesses who are no longer subject to this Court's jurisdiction, and produced by entities that are no longer parties to the litigation and some of which no longer exist. Irico should not be permitted to benefit from this misconduct and further prejudice IPPs by excluding relevant evidence.

### 3. Irico's Hearsay Objections Lack Merit

Irico also objects to IPPs' Exhibits 46, 47, 48, 49, 51, 52 and 53 on hearsay grounds. These documents are admissible under Fed. R. Ev. 801(d)(2)(E) (the "Co-Conspirator Rule"). Under that Rule, statements offered against an opposing party and "made by the party's coconspirator during and in furtherance of the conspiracy" do not constitute hearsay. The Co-Conspirator Rule applies if the proponent of the statement "shows by a preponderance of the evidence that a conspiracy existed at the time the statement was made; the defendant had knowledge of, and participated in, the conspiracy; and the statement was made in furtherance of the conspiracy." *U.S. v. Bowman*, 215 F.3d 951, 960–61 (9th Cir.2000).

As to the first requirement, co-conspirator statements may be considered as long as there is additional evidence demonstrating a conspiracy beyond the statements themselves. *Bourjaily v. U.S.*, 483 U.S. 171, 181 (1987). As to the second requirement, only "slight evidence" is required linking

---

[8] *See* Alioto Decl. (ECF No. 6471-1) ¶ 54 (describing IPPs' Ex. 53 and attaching a copy).

defendant to the conspiracy, and circumstantial evidence will suffice. *USA v. Chen*, No. 17-cr-00603-BLF-1, 2021 WL 2936731, at *2 (N.D. Cal. July 13, 2021) (quoting *U.S. v. Mason*, 658 F.2d 1263, 1269 (9th Cir. 1981)). Finally, the "in furtherance" element can be satisfied by a wide variety of statements including "expressions of future intent or statements that 'further the common objectives of the conspiracy or set in motion transactions that are an integral part of the conspiracy.'" *Bowman*, 215 F.3d at 961 (quoting *U.S. v. Yarbrough*, 852 F.2d 1522, 1535 (9th Cir. 1988)).

Here, the Co-Conspirator Rule is satisfied by the Court's Sanctions Order and entry of default against Irico, which established as true the complaints' allegations that Irico and its co-conspirators participated in a conspiracy to fix the prices of CRTs over a more than 12-year period. In addition, the documents themselves memorialize conspiratorial meetings or communications between the co-conspirators, or relate to such meetings and communications. All documents reflect, on their face, that the statements made therein were in furtherance of the parties' conspiracy.

As to IPPs' Exhibit 51, which was produced by Irico, the statements contained therein are also admissible as admissions of a party, as well as statements against interest since they exposed Irico and those personnel to criminal and civil liability. Irico's own statements are not hearsay. FRE 801(d)(2); *United States v. Perez*, 658 F.2d 654, 659 (9th Cir. 1981) ("[D]efendant's own statements are admissions wholly apart from the coconspirator exception and as such are admissible as nonhearsay.").

Finally, for the same reasons set forth above regarding Irico's authenticity objection, the Court should also reject Irico's hearsay objections because Irico should not be permitted to benefit from evidentiary issues it created by its default and spoliation of evidence. For example, if Irico had not defaulted and disappeared from the litigation, IPPs would have been able to depose witnesses from the producing parties and establish that these documents satisfy the business record exception to the hearsay rule, Fed. R. Evid. 803(6).

For all the foregoing reasons, Irico's hearsay objections should be rejected.

//

**DPP STATEMENT RE: EVIDENTIARY OBJECTIONS**

As set forth in DPPs' Trial Brief, ECF No. 6469 at 29–30, DPPs understand that the Court will decide issue of Irico's participation in the conspiracy on the pleadings. *See* ECF No. 6459 at 2:15–17. However, if the Court resolves the issue against DPPs, DPPs submit that they be allowed to submit evidence of Irico's pre-1998 involvement in the conspiracy. The law allows such proof, as Irico has acknowledged (see Further Joint Statement at 14), and it would be unjust to preclude it.

As DPPs noted in their trial brief, despite Irico's destruction of evidence, there is evidence sufficient to demonstrate its participation in the conspiracy from the outset, especially in light of its destruction of evidence and other misconduct. DPPs will be prepared to participate in any discussion of Irico's objections to this evidence at the pre-hearing conference, as follows:

1. Irico's sole objection to the documents it has produced in the case – i.e., those with bates numbers beginning "IRI-CRT" – is "relevance/scope" which appears to be based entirely on Irico's argument that any evidentiary consideration of the pre-1998 issue should not be allowed. However, if the Court allows consideration of the issues, these documents demonstrate Irico's attendance at so-called "Industry Association" meetings with other Chinese subsidiaries of its co-conspirators, including one which documents a price fixing agreement, and are plainly relevant. [Exhibits nos. 50, 55, 56, 59, 88, 214]

2. Irico's sole objection to its interrogatory responses is also "relevance/scope." These responses demonstrate Irico's attendance at Industry meetings and its claimed lack of knowledge regarding its pre-1998 conduct. They are also therefore clearly relevant if the Court allows evidence on the pre-1998 issue. [Exhibits nos. 45 & 215]

3. Irico's sole objection to the Chunghwa meeting note of an August 5, 1998 conspiracy meeting attended by Irico is "relevance/scope." Again, if the Court allows consideration of the pre-1998 issue, this document is plainly relevant. Irico claims this is the earliest evidence of its participation in the conspiracy. *See, e.g.*, ECF No. 6377 at 20–24. Among other things, this document demonstrates that Irico knew it was joining an ongoing

conspiracy. Not only does it show that the conspiracy by this time was highly organized, it also reflects discussion of illegal agreements reached at previous meetings.

4. The documents produced by BMCC – i.e., bearing bates numbers beginning "BMCC" – also document Irico's participation in Industry Meetings, and show that these meetings were conspiratorial. These documents are admissible under the co-conspirator rule. DPPs join in IPPs' discussion of these documents and authenticity. [Exhibits Nos. 52 & 53]

5. The deposition testimony of J.S. Lu is relevant to show that the so-called Industry Meetings were conspiratorial.

## **IRICO'S STATEMENT RE: EVIDENTIARY OBJECTIONS**

Plaintiffs have represented that, in addition to their expert reports which the parties have already agreed to admit into evidence, they have designated exhibits that fall into two categories: (1) documents and deposition testimony to support their experts' testimony about the effectiveness of the alleged CRT conspiracy (Issue No. 5, ECF No. 6459 at 2); and (2) documents and deposition testimony that relate to the appropriate start-date for calculating damages or whether DPPs and IPPs can recover pre-1998 damages from the Irico Defendants ("Pre-1998 Issue").

On the first category, despite having grounds to object to the exhibits and as part of good faith efforts to resolve exhibit disputes, the Irico Defendants have agreed to not object to evidence if used for the limited purpose of supporting Plaintiffs' expert testimony about the effectiveness of the alleged CRT conspiracy (Issue No. 5, ECF No. 6459 at 2). Plaintiffs have agreed that they will not object to Irico evidence used for the same purpose. Irico maintains all objections if Plaintiffs attempt to offer that evidence for any other purpose, including with respect to liability and the Pre-1998 Issue.

On the second category related to the Pre-1998 Issue, the Irico Defendants continues to object to the admission and Plaintiffs' presentation of any evidence at the upcoming damages hearing on the Pre-1998 Issue.[9] Contrary to IPPs' assertion, Irico has not taken a different position. The Irico

---

[9] In their exhibit objections, Irico asserted objections on the specific grounds of out-of-scope (ECF No. 6459), relevancy (Fed. R. Evid. 401, 402), and for certain documents, authenticity (Fed. R. Evid.

10
**JOINT STATEMENT RE: MAY 13, 2025 PRE-HEARING CONFERENCE
MASTER FILE NO. 07-CV-5944-JST; MDL NO. 1917**

1  Defendants have briefed this issue in their Trial Brief on Damages (ECF No. 6467 at 9-14), which
2  they incorporate by reference herein.[10]  In short, Plaintiffs should not be permitted to present any
3  evidence on the Pre-1998 Issue at the hearing for multiple reasons.

4        First, the law of default and the Court's Order on the scope of the hearing both recognize that
5  the Pre-1998 Issue "may be argued but depend[s] on what is contained in the pleadings." ECF No.
6  6459 at 2.  Upon default, only those "factual allegations of the complaint, except those relating to
7  the amount of damages, will be taken as true" because a default "establishe[s] … liabilities, but not
8  the extent of the damages to the plaintiff class." *Geddes v. Un. Fin. Grp.*, 559 F.2d 557, 560 (9th
9  Cir. 1977).  That is, "a plaintiff can obtain from a default judgment equivalent relief to but not
10 greater than that it would obtain in a contested proceeding assuming it prevailed on all of its factual
11 allegations." *Henry v. Oluwole*, 108 F.4th 45, 55 n.5 (2d Cir. 2024).  The *Freeman v. Guiliani* case
12 cited by Plaintiffs, a defamation case brought by election workers against Rudi Giuliani, does not
13 change the legal standard, where the Court there started its analysis by stating that "[a]t the outset,
14 Giuliani does not identify what specific statements presented to the jury constitute 'unpleaded
15 conduct,'" *Freeman v. Giuliani*, 732 F. Supp. 3d 30, 47 (D.D.C. 2024).  There, the court was not
16 deciding the start-date of liability and whether unpleaded allegations could expand liability beyond
17 that pleaded; instead, the court was dealing with cursory arguments about additional defamatory
18 statements on top of those specifically alleged in a complaint. *Id.*.

19       There are no factual allegations in either DPPs' or IPPs' live amended pleadings that the
20 Irico Defendants participated in any alleged conspiracy meetings before 1998 or that the Irico
21 Defendants had the requisite knowledge of a pre-1998 conspiracy.  Plaintiffs cannot rely on
22 conclusory allegations, not specific to Irico, or impermissible inferences beyond their pleadings.  By
23 trying to argue documents outside of the pleadings on this issue, IPPs effectively concede their
24 pleadings are not enough to establish Irico's participation in the conspiracy before 1998.  Moreover,

---

901) and hearsay (Fed. R. Evid. 801, 802).  Irico will be prepared to argue its objections as to specific documents at the pre-hearing conference.

[10] The Irico Defendants will also, and reserve the right to, further brief this issue in their post-hearing briefing.

IPPs filed their live complaint in September 2019, when they had long been in possession of most, if not all, of the documents they seek to admit on this issue; they could have amended their complaint to add factual allegations but did not. DPPs, for their part, acknowledge that the Court has decided this issue will be decided on the pleadings. In any event, this issue can be and has been argued in the briefs and should be decided on the pleadings alone.

Second, Plaintiffs cannot authenticate and admit into evidence, via their experts (the only hearing witnesses), the bates-stamped documents and deposition testimony on Plaintiffs' exhibit lists that relate to the Pre-1998 issue. That evidence was produced by Irico and other former co-defendants. Plaintiffs conducted discovery with those other co-defendants and had the opportunity to request their documents, take their depositions, and authenticate any documents. Indeed, IPPs, chose not to update their expert's damages report when conducting discovery with Irico, resting on the data and documents it collected from the other former defendants. Regardless of whether their experts cite such documents in their reports, their experts cannot sponsor them. The factual question of when Irico joined the alleged conspiracy (that is the subject of the factual allegations in the Plaintiffs' complaints, which only allege 1998) and the legal question of the date on which Irico's liability begins are not within the expertise and certainly not within the personal knowledge of IPPs' expert Dr. Netz or the DPPs' expert. The Court was correct at the past Case Management Conference to "doubt very much that these expert witnesses are in a position to authenticate the documents, sponsor them in any kind of meaningful way. These are expert witnesses. And someone sent them a bunch of documents to their office." Ex. 413 to Irico Trial Brief on Damages, Feb 5, 2025 CMC Tr. 11:10-12:14.

Finally, Plaintiffs' introduction of documentary and testimonial evidence on the Pre-1998 issue would raise an impermissible sword-shield situation, where Irico is barred from presenting Irico-specific evidence at the damages stage pursuant to the Court's orders (*see* ECF No. 6459 at 1). Indeed, the evidence shows that Irico did not attend any alleged conspiracy meetings until August 1998, while the evidence Plaintiffs proffer are unrelated to the alleged conspiracy. *See* ECF No. 6377 at 14, 30 (Irico's prior arguments and evidence related to the start-date issue). But Irico intends

to comply with the Court's ordered limitations and not submit Irico-specific evidence at the damages stage pursuant to the Court's orders, and Plaintiffs should not be allowed to use that unfairly to their advantage. *See* Ex. 413, Feb 5, 2025 CMC Tr. 19:13-22 ("So when I look at these issues that Irico has listed, the first thing I ask myself is, do I think that plaintiffs' inability to get full information would have prevented them from having a complete and accurate understanding of this issue. And if I think that they would, that -- that it would have had that preventive effect, then presumptively *I'm not going to hear argument or evidence on that issue* because to do otherwise would undermine the effect of the Court's sanctions order." (emphasis added)). Plaintiffs should not be allowed to admit evidence when Irico is barred from admitting counter-evidence. Liability upon default in their favor has already been established based on their pleadings, but there is no one-sided right for them to present extraneous evidence while barring Irico from presenting evidence on the same issue.

Respectfully submitted,

Dated: May 9, 2025

**TRUMP, ALIOTO, TRUMP & PRESCOTT LLP**

*/s/ Mario N. Alioto*
Mario N. Alioto (56433)
Lauren C. Capurro (241151)
TRUMP, ALIOTO, TRUMP & PRESCOTT LLP
2001 Union Street, Suite 482
San Francisco, CA 94123
Telephone: 415-563-7200
Facsimile: 415- 346-0679
Email: malioto@tatp.com
laurenrussell@tatp.com

*Lead Counsel for the
Indirect Purchaser Plaintiffs*

| | | |
|---|---|---|
| 1 | Dated: May 9, 2025 | **SAVERI & SAVERI, INC.** |
| 2 | | */s/ R. Alexander Saveri* |
| 3 | | R. Alexander Saveri (173102) |
| | | Geoffrey C. Rushing (126910) |
| 4 | | Matthew D. Heaphy (227224) |
| 5 | | David Y. Hwu (281780) |
| | | SAVERI & SAVERI, INC. |
| 6 | | 1016 Lincoln Boulevard, Suite 306 |
| 7 | | San Francisco, CA 94129 |
| | | Telephone: (415) 217-6810 |
| 8 | | ***Lead Counsel for Direct Purchaser Plaintiffs*** |

Dated: May 9, 2025                              **NORTON ROSE FULBRIGHT US LLP**

*/s/ Jeffrey B. Margulies*
JEFFREY B. MARGULIES (BAR NO. 126002)
KAYLEE YANG (BAR NO. 303464)
NORTON ROSE FULBRIGHT US LLP
555 California Street, Suite 3300
San Francisco, California 94104
Telephone: (213) 892-9200
Facsimile: (213) 892-9494
jeff.margulies@nortonrosefulbright.com
kaylee.yang@nortonrosefulbright.com

GERALDINE YOUNG (admitted *pro hac vice*)
1550 Lamar Street, Suite 2000
Houston, Texas 77010
Telephone: (713) 651-5151
Facsimile: (213) 651-5246
geraldine.young@nortonrosefulbright.com

*ATTORNEYS FOR DEFENDANTS IRICO GROUP CORP. AND IRICO DISPLAY DEVICES CO., LTD.*

**ATTESTATION**

I, Lauren C. Capurro, hereby attest, pursuant to United States District Court, Northern District of California Civil Local Rule 5-1(i)(3), that concurrence in the filing of this document has been obtained from the Signatories hereto.

By: /s/    *Lauren C. Capurro*
Lauren C. Capurro