*[Submitting Parties and Counsel Listed on Signature Page]*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Master File No.: 07-cv-05944 JST |
| | MDL No. 1917 |
| This document relates to: | **JOINT CASE MANAGEMENT STATEMENT PURSUANT TO ORDER ADOPTING DAMAGES MODEL (ECF No. 6516)** |
| *ALL INDIRECT PURCHASER ACTIONS* | |
| *ALL DIRECT PURCHASER ACTIONS* | |
| | Judge:      Honorable Jon S. Tigar |

**JOINT CASE MANAGEMENT STATEMENT
PURSUANT TO ORDER ADOPTING DAMAGES MODEL (ECF NO. 6516)
MASTER FILE NO. 07-CV-5944-JST; MDL NO. 1917**

# TABLE OF CONTENTS

AREAS OF AGREEMENT OR NO DISPUTE ...................................................................1

DPPS' STATEMENT .........................................................................................................2

I.      DPPs Are Entitled to Total Damages of $1.177 Billion as Calculated by Dr. Johnson .................................................................................................................2

II.     The Court Should Enter Judgment Promptly .................................................................4

IPPS' STATEMENT ..........................................................................................................5

I.      Introduction ..................................................................................................................5

II.     Application of Court's Adopted Damages Model to IPPs' Commerce .............................6

III.    Enhanced Damages Are Appropriate Under The Laws Of Certain States ........................7

IV.     IPPs In Certain States Are Entitled to Prejudgment Interest ..........................................12

V.      IPPs' Damages Should Not Be Reduced Based on DPPs' Recovery ...............................17

        A.      State Law Duplicative Recovery Provisions Do Not Apply ...............................17

        B.      Pass-On Is Irrelevant Here. ...........................................................................20

        C.      No Federal Policy Precludes IPP From Recovering Full Damages ......................21

        D.      Awarding Full Damages to DPPs and IPPs is Constitutional .............................21

VI.     Conclusion ..................................................................................................................24

IPP AND DPP JOINT STATEMENT ................................................................................25

IRICO'S STATEMENT .....................................................................................................28

I.      Irico's positions as to the final damages calculation for each class ...............................28

II.     Damages should be apportioned between IPPs and DPPs, and any remaining dispute over this issue may require further briefing and proceedings. ..............................29

        A.      The IPPs' and DPPs' damages calculations overlap, meaning the total IPP and DPP damage calculations exceed 100% of the alleged overcharge ..............29

        B.      Awarding IPPs and DPPs overlapping, trebled or partially trebled class damages would violate due process. ................................................................30

**JOINT CASE MANAGEMENT STATEMENT**
**PURSUANT TO ORDER ADOPTING DAMAGES MODEL (ECF NO. 6516)**
**MASTER FILE NO. 07-CV-5944-JST; MDL NO. 1917**

C.    Applicable state laws recognize the need for apportionment and avoidance of duplicative damages, providing further independent grounds for apportionment. ...................................................................................34

D.    IPPs' arguments and authorities do not overcome the due process and state law grounds for apportioning damages. ................................................38

E.    Irico previously provided, and sets forth here again, a well-reasoned and feasible method for apportionment. ....................................................41

III.   Based on the IPPs' pleadings and the applicable statutes, the IPPs are not entitled to treble damages for 14 IPP states. .....................................................43

IV.   IPPs cannot submit an entirely new theory and expert evidence, and recover, for the statutory penalties they seek for Mississippi class members. ..............................50

V.    DPP damages should not exceed the amount and model DPPs claimed at trial. ...............52

VI.   Notwithstanding that there is no judgment yet, IPPs cannot recover all of the prejudgment interest they seek. .............................................................53

VII.   The Court should offset past settlements from DPP and IPP damages. ...........................55

VIII.  Irico agrees to defer the issue of attorneys' fees until after resolution of any appeal and believes the issue should be deferred as to both IPPs' and DPPs' fees. ......................55

IX.   Regarding further proceedings, Plaintiffs are required to move for default judgment and Irico has the right to and will oppose entry of judgment and move to decertify the classes based on evidence adduced at the damages trial. ............................................56

**JOINT CASE MANAGEMENT STATEMENT
PURSUANT TO ORDER ADOPTING DAMAGES MODEL (ECF NO. 6516)
MASTER FILE NO. 07-CV-5944-JST; MDL NO. 1917**

Pursuant to this Court's Order Adopting Damages Model, ECF No. 6516 ("Order"), Indirect Purchaser Plaintiffs ("IPPs"), Direct Purchaser Plaintiffs ("DPPs") (together "Plaintiffs"), and Defendants Irico Group Corporation ("Group") and Irico Display Devices Co., Ltd. ("Display") (together, the "Irico Defendants" or "Irico"), by and through the undersigned counsel, hereby submit this Joint Case Management Statement regarding damages calculations and further proceedings:

## AREAS OF AGREEMENT OR NO DISPUTE[1]

**Calculation of Damages:** Pursuant to the damages model adopted by the Court and subject to the other arguments set forth in each party's respective statement, Irico and DPPs calculate $1.177 billion for the DPP class, and Irico and IPPs calculate $1,846,182,127 for the IPP class.

**Trebling:** DPPs and Irico do not dispute that the Clayton Act, 15 U.S.C. § 15(a) provides for trebled damages. IPPs and Irico do not dispute that the law of the following eight jurisdictions also provide for trebled damages: District of Columbia, Maine, Minnesota, Nevada, North Carolina, South Dakota, West Virginia and Wisconsin. IPPs and Irico agree that there will be no trebling for Florida, Hawaii, Nebraska and Tennessee.

**Setoff:** DPPs and Irico agree that after trebling, Irico is entitled to a setoff in the amount of $212.2 million from prior DPP settlements. IPPs and Irico agree that after trebling, Irico is entitled to a setoff in the amount of $580.75 million from prior IPP settlements.

**Interest:** IPPs and Irico do not dispute that IPPs are entitled to prejudgment interest for Iowa, Minnesota, New York and South Dakota, although IPPs and Irico do dispute the amount to which prejudgment interest should be applied for Iowa and New York because Irico disputes that treble or enhanced damages should be awarded for Iowa and New York. IPPs and Irico agree that prejudgment interest is not available under the law of five of the states at issue: Arizona, Mississippi, Nebraska, West Virginia and Wisconsin under these circumstances.

---

[1] Irico joins in this Section subject to all, and without any waiver, of the reservations, qualifications, arguments, and positions set forth in Irico's Statement below. Irico maintains the position that no damages should be assessed against Irico in this case and does not agree with the damages models and calculations adopted by the Court and the DPPs and IPPs.

**JOINT CASE MANAGEMENT STATEMENT
PURSUANT TO ORDER ADOPTING DAMAGES MODEL (ECF NO. 6516)
MASTER FILE NO. 07-CV-5944-JST; MDL NO. 1917**

**Attorneys' Fees:**  In the interest of judicial economy and efficiency, the parties jointly request that the Court enter an Order suspending the deadlines for filing Plaintiffs' motions for an award of statutory attorneys' fees and expenses and their bills of costs, and deferring consideration of such issues until after any and all merits appeals are resolved (or, if no appeal is filed, after the expiration of time allowed for appeal of the final judgment), at a time to be determined by future Court Order.  *See, e.g., Freeman Inv. Mgmt.  Co., LLC v. Frank Russell Company,* Case No. 13-CV-2856-JLS(RBB), 2017 WL 11420268, at *1 (S.D. Cal. Feb. 9, 2017) ("District courts have widely exercised their discretion to defer ruling on a motion for attorneys' fees or to deny the motion without prejudice pending an appeal on the merits.").[2]

## DPPS' STATEMENT

There is only one issue remaining in the DPP action that needs to be resolved for total damages to be awarded to the DPP class and Judgment to be entered: the calculation of damages according to Dr. Johnson's damage model as modified by the Court.

## I.    DPPs Are Entitled to Total Damages of $1.177 Billion as Calculated by Dr. Johnson

DPPs' expert Dr. Phillip M. Johnson has undertaken the necessary modifications to his damages model in accordance with the Court's Order Adopting Damages Model and determined that the total damages in the DPP action are $1.177 billion. On March 24, 2026, DPPs served on Irico's counsel the Supplemental Damages Report of Phillip M. Johnson, Ph.D. (DPP Exhibit 1) as well as his work materials detailing his modifications and recalculations. DPPs' counsel have met and conferred with Irico and agreed that total damages in the DPP action are $1.177 billion based on the calculations done according to the damages model adopted by the Court.

Although the parties agree that total damages in the DPP action are $1.177 billion, Irico now asks the Court to "decline to award more damages to the DPP[s] than the amount, $1.011 billion, that DPPs sought and presented at the damages trial." In its post-hearing briefing, Irico argued that

---

[2] The parties continue to meet and confer regarding the amount Irico should be required to pay of "Plaintiffs' reasonable attorney's fees and costs incurred as a result of Irico's spoliation of evidence and failure to produce Su for deposition." Sanctions Order (ECF No. 6423) at 38.

Rule 54(c) limited DPPs to the damages claimed in their expert reports. ECF No. 6501 at 14. After the Court pointed out that "Irico has cited no authority that an expert report qualifies as a pleading under this rule," ECF No. 6516 at 17 n.5, it appears that Irico has abandoned that argument and now relies solely on *In re Wolverton Assocs.*, 909 F.2d 1286 (9th Cir. 1990), in its bid to limit total calculated damages of $1.177 billion as unsupported by the record and exceeding Dr. Johnson's testimony at trial.

*Wolverton* does not support Irico's position. In accordance with the Court's Order Adopting Damages Model, Dr. Johnson modified his dynamic model to include separate regressions for CPTs and CDTs.[3] This modification to Dr. Johnson's damage model was in fact introduced ***prior to*** the evidentiary hearing on damages, specifically in Dr. Johnson's September 1, 2023 rebuttal report. *See* Ex. 203 ¶ 95 & fig. 10 (admitted into evidence by stipulation, ECF No. 6465, and subsequently filed at ECF No. 6501-10).[4] Dr. Johnson also testified at the evidentiary hearing that DPPs' claimed damages would be ***greater*** if Irico's suggested changes were implemented. H'rg Tr. at pp. 122–123 ("the overcharges were higher by separating them out" as Irico's expert suggested). Regardless, a factfinder's damages calculation is afforded "substantial deference" and will not be disturbed "unless it is clearly unsupported by the evidence." *See In re Exxon Valdez*, 270 F.3d 1215, 1247–48 (9th Cir. 2001) (footnotes omitted) ("Reasonable jurors need not accept the views of one side's expert or the other's, but may make their own reasonable judgment on the evidence, accepting part, all, or none of any witness's testimony.").

---

[3] Paragraph 5 of Dr. Johnson's Supplemental Damages Report served on Irico on March 24, 2026 also pointed out that his September 1, 2023 rebuttal report "already presented the estimated overcharges for my model with the modifications requested by the court."

[4] Paragraph 95 of Dr. Johnson's September 1, 2023 rebuttal report states: "Moreover, if my overcharge model is modified to estimate effects of supply and demand factors on CDT and CPT prices separately (in a manner proposed by Ms. Guerin-Calvert), it still finds substantial overcharges (indeed the estimates are higher than in my model). These results are shown in Figure 10. The average class-wide overcharge estimate from this modified model is 17.3% for CDTs (compared to my baseline model of 10.7%) and 6.5% for CPTs (compared to my baseline model of 6.1%). See Figure 10.[FN 152:] Full regressions are included in my backup."

**JOINT CASE MANAGEMENT STATEMENT**
**PURSUANT TO ORDER ADOPTING DAMAGES MODEL (ECF NO. 6516)**
**MASTER FILE NO. 07-CV-5944-JST; MDL NO. 1917**

Here, the Court's damages calculation is well supported by Dr. Johnson's testimony and expert reports. That was not the case in *Wolverton* where the Ninth Circuit concluded that:

> there is insufficient evidence to support the court's determination that this portion had a value of 10.5 cents per foot per month. Fisk's testimony on cross-examination did not provide evidence that a valuation of 10.5 cents per foot was warranted. ***All he did was put figures into a calculator upon the request of the Committee's lawyer.***

909 F.2d at 1296.

The parties agree that prior settlements of $212.2 million should offset the final award of damages after trebling. *See William Inglis & Sons Baking Co. v. Continental Baking Co., Inc.*, 981 F.2d 1023, 1024 (9th Cir. 1992) ("settlement payments should be deducted from the damages after they have been trebled").

For the foregoing reasons, the DPPs should be awarded damages of $1.177 billion, as calculated by Dr. Johnson in accordance with the Court's Order Adopting Damages Model, and trebled to $3.531 billion pursuant to 15 U.S.C. § 15 less $212.2 million from prior DPP settlements, for a final damage award of $3,318,800,000.00. DPPs are entitled to post judgment interest from the date of the entry of the judgment pursuant to 28 U.S.C. § 1961.[5]

## II. The Court Should Enter Judgment Promptly

Pursuant to Rule 58(b)(2), DPPs respectfully request that the Court promptly enter DPPs' proposed Judgment (attached hereto as DPPs' Exhibit 2). Because the Direct Purchaser Class is entitled to post judgment interest pursuant to 28 U.S.C. § 1961, it is to the Class's benefit that interest start accruing as soon as possible. This will also start the procedure for resolving any appeals which may delay the Class's recovery.

---

[5] The issue of the appropriate apportionment of duplicative damages between DPPs and IPPs is not relevant to the Direct Purchaser Actions. As Irico conceded in its Trial Brief, "federal law does not permit reducing *DPP* damages to account for double recoveries under the *Illinois Brick* doctrine" and thus Irico argues only that "due process and the applicable state laws require reducing ***IPP damages*** by all amounts that overlap with the DPP damages." ECF No. 6467 at 31, 34 (bolded emphasis added). Also, DPPs do not seek prejudgment interest.

**JOINT CASE MANAGEMENT STATEMENT**
**PURSUANT TO ORDER ADOPTING DAMAGES MODEL (ECF NO. 6516)**
**MASTER FILE NO. 07-CV-5944-JST; MDL NO. 1917**

## IPPS' STATEMENT

### I.    Introduction

The Court's Order (ECF No. 6516) adopted a damages model, directed counsel to calculate the amount of damages consistent with the model and to meet and confer regarding further proceedings.  Pursuant to the Court's Order, the parties have met and conferred and have agreed on certain matters, as further detailed below. IPPs believe that the remaining issues are legal issues and associated calculations that can be determined by the Court without additional proceedings.

First, pursuant to the Order, IPPs' expert Dr. Joshua L. Palmer, Ph.D[6], applied the modified version of Dr. Johnson's damages model adopted by the Court to the IPPs' volume of commerce. Because Dr. Johnson's overcharge estimates were calculated on a quarterly basis and IPPs' volume of commerce data is calculated on an annual basis, Dr. Palmer calculated a weighted average overcharge rate by year using the revenues in Dr. Johnson's overcharge dataset as weights. After calculating the overall IPP damages estimate of $1,846,182,128.83, which Irico does not dispute, Dr. Palmer apportioned it by state.  Section II below.

Second, the State Class damage awards should be trebled where appropriate as established by relevant state law. Irico does not dispute that trebling is mandatory in eight jurisdictions.  IPPs do not seek trebling in four others.  Thus, there are nine jurisdictions where trebling is at issue. In addition, the Parties disagree about the application of Mississippi's antitrust statute, which provides for a $500 penalty "in each instance of injury."[7] As outlined in Section III below, IPPs respectfully request that trebling be applied to damages in seventeen states and that the Court award this $500 penalty to each Mississippi class member.

---

[6] IPPs' expert, Dr. Janet Netz, was unavailable to assist with these damages calculations. Dr. Joshua Palmer, a partner at applEcon, LLC and Dr. Netz's senior economist who has been involved in this case since 2011, oversaw the damages calculations. *See* IPP Ex. 1 (Expert Report of Joshua L. Palmer Ph.D. Regarding the Calculation of the Indirect Purchaser Plaintiffs' Damages dated April 15, 2026 ("Palmer Damages Rpt."), ¶¶ 1-12.

[7] Miss. Code Ann. § 75-21-9.

Third, prejudgment interest is appropriate under the laws of seventeen states as is detailed in Section IV below.  The other five states at issue do not provide for prejudgment interest under these circumstances.  IPPs seek prejudgment interest in those seventeen states that allow it.

Finally, the Court should deduct the $580.75 million in prior settlements from each State Class award after trebling on a *pro rata* basis. There need not be any other deductions. Irico's arguments relating to deductions for "duplicative" damages are unfounded as is explained in Section V below.

## II.    Application of Court's Adopted Damages Model to IPPs' Commerce

The Court adopted Dr. Johnson's model, with certain modifications.  Order at 13, 16. IPPs and Irico agree that when that model is applied to IPPs' volume of commerce, the total IPP damages are $1,846,182,129.  To calculate that number, Dr. Palmer made limited, necessary adjustments to Dr. Johnson's previous work in this case, which Dr. Palmer explains in detail in his Report. IPP Ex. 1, Palmer Damages Report ¶¶ 13-19.

Next and consistent with Dr. Netz's approach in all her work in this case[8], Dr. Palmer apportioned the IPPs' damages among the 22 State Classes using U.S. Census data. *Id*. ¶ 19, Ex. 1-A, Column C.  For example, because California had 27.09% of the classes' population during the damages period, Dr. Palmer allocated 27.09% of the damages award to California. *See Allred v. Kellogg Co*., No. 17-cv-1354-AJB-BLM, 2018 WL 332904, at *2 (S.D. Cal. Jan. 9, 2018) ("The Court finds it reasonable to assume that if California has 12.5% of the nation's population, it may also have at least 12.5% of Kellogg's sales."); *Jackson v. Grupo Indus. Hotelero, S.A*., No. 07-22046-CIV, 2009 WL 8634834, at *13 n.12 (S.D. Fla. Apr. 29, 2009) (estimating damages in Florida using census data and "taking the ratio of Florida's population to that of the total population of the United States").  IPPs request that the Court grant total damages to the IPP class in the amount of $1,846,182,128.83, and allocate the award to the relevant states per Dr. Palmer's calculations, as set forth in IPP Exhibit 1-A, Column C.

---

[8] *See, e.g.,* IPPs' Trial Brief, ECF No. 6471, at 11-12.

### III.    **Enhanced Damages Are Appropriate Under The Laws Of Certain States**

IPPs seek treble damages for seventeen states and statutory penalties for class members in the State of Mississippi. Irico does not dispute that the laws of the following eight jurisdictions mandate treble damages: District of Columbia, Maine, Minnesota, Nevada, North Carolina, South Dakota, West Virginia and Wisconsin. *See* Ex. 2, Table 1. And IPPs do not seek treble damages under the laws of Florida, Hawaii, Nebraska, and Tennessee. *See* Ex. 2. Thus, there are nine jurisdictions in dispute with respect to trebling, and the parties also disagree about the application of Mississippi's statutory penalty.

**California and Kansas.** IPPs and Irico disagree about whether treble damages are mandatory or discretionary under California and Kansas law. California's Cartwright Act states that "[a]ny person who is injured in his or her business or property by reason of anything forbidden or declared unlawful by this chapter, may sue therefor . . . and to recover three times the damages sustained by him or her . . . ." Cal. Bus. & Prof. Code § 16750(a). The word "may" relates to the word "sue" and not to the award of treble damages. Indeed, courts have held that "[u]nder [California's] Cartwright Act, the award of treble damages is 'mandatory.'" *Optronic Techs., Inc. v. Ningbo Sunny Elec. Co*., No. 5:16-CV-06370-EJD, 2019 WL 5269018, at \*2 (N.D. Cal. Oct. 17, 2019) (citation omitted) *aff'd*, 20 F.4th 466 (9th Cir. 2021); *Uneedus v. California Shoppers, Inc*., 150 Cal. Rptr. 596, 601-02 (Cal. Ct. App. 1978) (concluding that treble damages are mandatory under the Cartwright Act because the Act "is one of our state antitrust laws and analogous to the federal Sherman Act"). The Kansas antitrust statute, like the California statute, provides that plaintiffs "may sue" to recover treble damages, and should be interpreted the same way. Further, with certain exceptions (including a right of action for indirect purchasers), the Kansas Restraint of Trade Act (KRTA) "shall be construed in harmony with ruling judicial interpretations of federal antitrust law by the United States supreme court." Kan. Stat. Ann. § 50-163(b); *see Reorganized FLI, Inc. v. Williams Companies, Inc.,* 1 F.4th 1214, 1224 (10th Cir. 2021) (noting purposes of 2013 amendments to KRTA include 'harmoniz[ing]' the KRTA with federal antitrust law which does not allow for recovery of full consideration damages"). Treble damages are mandatory under federal

7

antitrust law, and, like the Cartwright Act, the KRTA should be interpreted in harmony with this federal law. *See Uneedus*, 150 Cal. Rptr. at 601-02.

**New York.** Treble damages are mandatory under the Donnelly Act. "[A]ny person who shall sustain damages by reason of any violation of this section, shall recover three-fold the actual damages sustained thereby . . . ." N.Y. Gen. Bus. Law § 340(5). While Irico argues that "litigants may not obtain treble damages under the Donnelly Act when proceeding as a class," the opinion they cite was issued by a state court in 2007. That state court relied on New York Civil Practice Law and Rules (CPLR) Section 901(b), which generally prohibits class certification in actions seeking penalties. In 2010, the United States Supreme Court held that New York's Section 901(b) conflicted with Federal Rule of Civil Procedure 23, and therefore could not apply in diversity suits. *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 396 (2010); *see In re Static Random Access Memory (SRAM) Antitrust Litig.*, No. C 07-01819 CW, 2010 WL 3069329, at *1 (N.D. Cal. Aug. 4, 2010) (allowing indirect purchaser plaintiffs class to amend complaint to assert a claim under the Donnelly Act in light of *Shady Grove* decision); *see also In re Wellbutrin XL Antitrust Litig.,* 756 F. Supp. 2d 670, 679 (E.D. Pa. 2010) ("Lower courts have . . . concluded that § 901(b) does not survive after *Shady Grove* as applied to the Donnelly Act and other New York provisions.").

**New Mexico and Vermont.** IPPs and Irico agree that treble damages are discretionary under the relevant New Mexico and Vermont statutes. *See* Ex. 2, Table 2. Here, the Court should exercise its discretion to award treble damages for Irico's egregious antitrust violations. *See* fns. 8 & 9, *infra.*

**Arizona, Iowa, Michigan, and North Dakota.** IPPs and Irico agree that enhanced damages are appropriate if the Court determines that Irico's conduct was willful and flagrant. *See* Ex. 2, Table 3. As explained below, Irico's conduct was indeed willful and flagrant, as employed by these statutes.

In *Western Waste Serv. Sys. v. Superior Court*, 584 P.2d 554 (Ariz. 1978), the court defined "flagrant," in the context of the Arizona antitrust statute at issue here, as "glaring, rank, shocking or outrageous." *Id.* at 556. The Merriam-Webster online dictionary,    https://www.merriam-

**JOINT CASE MANAGEMENT STATEMENT**
**PURSUANT TO ORDER ADOPTING DAMAGES MODEL (ECF NO. 6516)**
**MASTER FILE NO. 07-CV-5944-JST; MDL NO. 1917**

webster.com, defines "flagrant" as "conspicuously offensive" or "so obviously inconsistent with what is right or proper as to appear to be a flouting of law or morality," and "willful" as "1. obstinately and often perversely self-willed, … 2.  done deliberately: intentional." Whatever definitions are adopted, intentional conduct to accomplish an anticompetitive purpose and effect meets the standard of "flagrancy" and "willfulness." *See, e.g., Pfiffner v. Roth*, 379 N.W.2d 357, 361 (Iowa 1985) (affirming finding that city's conduct was "wilful [sic] and flagrant" where it knowingly created and preserved a monopoly and "the injurious consequences to the Plaintiffs would be obvious."); *In re Elec. Books Antitrust Litig.*, No. 11 MD 2293 (DLC), 2014 WL 2535112, *5-6, (S.D.N.Y. June 5, 2014) (finding participation in a price-fixing conspiracy was "willful or flagrant").

Here, IPPs' well-pleaded allegations readily support a finding that Irico acted "flagrantly" and "willfully." Irico conspired to fix prices, restrict output and allocate customers and markets for CRTs sold in the U.S. over a twelve-year period. Fifth Amended Class Action Complaint, ECF 5589 (hereinafter "CAC") ¶¶ 1, 142, 249-251. The conspiracy adversely affected every TV and computer monitor customer nationwide, including the class members from the four states in question, by raising prices to supra-competitive levels. *Id*. ¶¶ 10, 11, 242, 253, 258 [Arizona], 262 [Iowa], 265 [Michigan] and 273 [North Dakota]). Moreover, Irico and the other Defendants **knew** and **intended** that it would have that effect. *Id*. ¶¶ 12, 157, 226, 240. To effectuate the conspiracy, Irico and other Defendants repeatedly met with each other, exchanged sensitive internal information and entered into anticompetitive agreements. *Id.* ¶¶ 2, 150, 154, 158, 185, 249-252. A complete list of allegations supporting a willful and flagrant finding was provided in Appendix B to IPPs' Trial Brief.  ECF 6471 at 45-51.

Because the Court must accept these factual allegations as true, there is no need to consider **any** testimonial and documentary evidence on this issue. Nevertheless, abundant evidence confirms the complaint's allegations, including, for example, the minutes of multiple group and bilateral

meetings attended by Irico representatives at which the participants agreed to raise or maintain prices of CRTs and/or control output.[9] The deposition testimony is similarly damning.[10]

In short, the Court should treble its damage award in all seventeen states where such trebling is permissible under state law.  Dr. Palmer calculated the trebling for these seventeen State Classes in IPP Exhibit 1-A, Column D.

Finally, a $500 statutory penalty for "each instance of injury" is appropriate for Mississippi class members under the Mississippi antitrust statute. *See* Miss. Code Ann. §75-21-9 ("Any person, natural or artificial, injured or damaged by a trust and combine as herein defined, or by its effects direct or indirect, may recover all damages of every kind sustained by him or it **and in addition a penalty of five hundred dollars ($500.00),** by suit in any court of competent jurisdiction. . . . **Such penalty may be recovered in each instance of injury**. . . .") (emphasis added). Mississippi courts have held that imposition of the $500 penalty is appropriate where, as here, the defendant has engaged in a "willful and intentional wrong." *Jim Hood ex rel. Miss*., 2006 Miss. Trial Order LEXIS 1, *26-27 (Chancery Ct. of Miss., Jan. 17, 2006) ("[P]unitive damages must be available for antitrust violations so the statute can suppress all trust and combines. If the only punishment of a violation of the antitrust statute is the five-hundred-dollar statutory penalty, there will be no deterrent to multibillion dollar corporations like BASF not to violate Mississippi's antitrust act.").

There are two ways to measure "each instance of injury" in this case. The first is that each purchase of a price-fixed product constitutes an "instance of injury," such that the $500 penalty

---

[9] *See* TX  65 (Irico agreed in Oct. 1998 to increase CDT prices and limit output, and to exercise "utmost caution" because "MONITOR customers (especially IN USA) are quite sensitive to price monopolies."); TX 66 (Nov. 1998 meeting hosted by Irico at which the co-conspirators agreed to fix CDT prices); TX 67 (Irico told its competitors it was "willing to cooperate with the move to increase the price" of 14" CPTs in June 1999 meeting); TX 68 (Irico agreed on Chinese domestic and export prices in July 1999 meeting); TX  28 (Irico entered into written agreement to fix CPT prices and limit production, and agreed to detailed penalty plan at Aug. 2001 meeting).

[10] For example, Chunghwa employee, Jing Song Lu, testified that agreements were reached at almost every China CDT meeting he attended, and that Irico attended meetings with him and agreed to raise prices. TX 235. Chunghwa's C.C. Liu also testified that in sending representatives to such meetings, the conspirators intended to and did fix prices. TX 234.

would be based on the total number of CRT purchases in Mississippi in the damages period. The second is the $500 penalty would be based on the number of CRT purchasers in Mississippi during the damages period.

In *Mississippi ex rel. Fitch v. People's Republic of China*, No. 1:20-CV-168-TBM-RPM, 2025 WL 3252405, at *1 (S.D. Miss. Nov. 14, 2025), the court imposed a $500 penalty under Mississippi's antitrust statute for each death of a Mississippian from COVID-19, which the court found was caused by China's hoarding of Personal Protective Equipment ("PPE") during the pandemic. *Id*. at * 28 (imposing $2,075,000 penalty for 4,150 deaths). In *Delmas v. Pascagoula St. Ry. & Power Co.*, 60 So. 210, 211 (Miss. 1912), a Mississippi court interpreted an earlier version of the antitrust statute containing similar language[11] to mean that "the injured party is given the right of action against the person violating the provisions of this chapter for all actual damages sustained, and, in addition thereto, that he can recover the sum of five hundred dollars." *Id*. The *Delmas* court rejected the plaintiff's claim that he should recover $500 for each day the defendant sold ice at below market rates. *Id*. ("Appellant claims to have been damaged by reason of appellee's alleged violation of the statute; and, if true, then that is the instance of injury or damage which he could recover for, and, being one injury or damage, he would only be permitted to recover the penalty of five hundred dollars once.").

Consistent with these cases, IPPs seek one $500 penalty for each Mississippi class member in addition to their actual damages. IPPs have estimated the number of Mississippi class members by estimating the number of purchasing households using consumer expenditure data, and data regarding the share of purchases attributable to CRT versus LCD technology during the damages period. *See* IPP Ex. 1, Palmer Damages Decl. ¶¶ 27-38. Under this approach, the estimated number of class members is 586,643 assuming 1.0 purchaser per household. *Id.* ¶ 38. This approach is conservative because there were likely many households that had more than one purchaser, and there

---

[11] "Section 5007, Code of 1906, provide[d] that any person injured or damaged by a trust and combine may, in each instance of such injury or damage, recover the sum of five hundred dollars, and all actual damages." *Id*.

were Mississippi businesses that purchased CRT products during the Class Period. This approach is also conservative when compared to the amount the statutory penalties would be if based on the total number of CRT purchases in Mississippi.[12] Thus, IPPs request that the Court award statutory penalties to Mississippi class members totaling $293,321,500.

## IV.   IPPs In Certain States Are Entitled to Prejudgment Interest

IPPs and Irico agree that because IPPs assert state law claims, state law applies to the provision of prejudgment interest. *See In re Exxon Valdez,* 484 F.3d 1098, 1101 (9th Cir. 2007) ("It is well settled that prejudgment interest is a substantive aspect of a plaintiff's claim, rather than a merely procedural mechanism."). IPPs and Irico also agree that IPPs are entitled to prejudgment interest for Iowa, Minnesota, New York, and South Dakota claims. *See* Ex. 3.

In addition, prejudgment interest is mandatory for Florida, Michigan, Nevada, and North Carolina claims. *See id.*

- **Florida.** Under Florida law, "prejudgment interest is a matter of right under the prevailing 'loss theory' of recovery for pecuniary damages, *i.e.*, damages for economic or tangible losses." *Bosem v. Musa Holdings, Inc*., 46 So. 3d 42 (Fla. 2010). In *Flack v. Graham*, 461 So. 2d 82, 83 (Fla. 1984), upon which Irico relies, the court held that the *state government* did not have to pay prejudgment interest. The court reasoned that, "[a]s a general rule, a government is not liable for interest in the absence of an express statutory provision or a stipulation by the government that interest will be paid." *Id.* at 83. The court noted, "[i]n choosing between innocent victims the Court found it would not be equitable to put the burden of paying interest on the public." *Id.* at 84. *Flack* is inapposite because Irico is not a state government entitled to immunity from prejudgment interest under Florida law. And in

---

[12] To estimate the number of indirect CRT purchases in Mississippi, Dr. Palmer divided annual expenditures attributable to class members in Mississippi by the annual price per tube. *See* IPP Ex. 1, Palmer Damages Rpt. ¶¶ 23-25. Dr. Palmer estimates that there were approximately 4,707,818 indirect CRT purchases in Mississippi over the Class Period. *Id*. ¶ 26. Thus, if the statute were interpreted to mean that the $500 penalty applied to every CRT purchase, the enhancement would be $2,353,909,000.

**JOINT CASE MANAGEMENT STATEMENT**
**PURSUANT TO ORDER ADOPTING DAMAGES MODEL (ECF NO. 6516)**
**MASTER FILE NO. 07-CV-5944-JST; MDL NO. 1917**

*Broward County v. Finlayson*, 555 So. 2d 1211, 1213 (Fla. 1990), the court recognized that equitable considerations could affect the period of time for which prejudgment interest is awarded. Thus, the court held that prejudgment interest in *Finlayson* was proper from "the date of the first demand for overtime compensation," rather than at the time the wages accrued. *Id.* at 1214. Here, IPPs' request for prejudgment interest from the time of filing of the complaint is a reasonable time period.

- **Michigan.** The Michigan antitrust statute states that an injured person "may bring an action for appropriate injunctive or other equitable relief against immediate irreparable harm, actual damages sustained by reason of a violation of this act, and, as determined by the court, interest on the damages from the date of the complaint, taxable costs, and reasonable attorney's fees. If the trier of fact finds that the violation is flagrant, it may increase recovery to an amount not in excess of 3 times the actual damages sustained by reason of a violation of this act." Mich. Comp. Laws Ann. § 445.778(2). Thus, the statute provides that interest is mandatory, but that the court is to determine the proper amount.

- **Nevada.** Nevada Revised Statutes 17.130(2) states, "When no rate of interest is provided by contract or otherwise by law, or specified in the judgment, the judgment draws interest from the time of service of the summons and complaint until satisfied, except for any amount representing future damages . . . ." The Nevada Supreme Court has held that this statute "mandates prejudgment interest" and "contains no apparent exception." *Restroom Facilities, Ltd. v. Kaufman*, 381 P.3d 655 (Nev. 2012) (table), 2012 WL 6013432, at *2 (holding district court erred by failing to award prejudgment interest on plaintiff's recovery for fraud and misrepresentation). *M.C. Multi-Fam. Dev., L.L.C. v. Crestdale Assocs., Ltd.*, 193 P.3d 536 (Nev. 2008), cited by Irico, is inapposite because it addresses a different statute, Nev. Rev. Stat. 99.040. Section 99.040 applies to contract cases, and thus is not applicable here. *See Wilson v. Pac. Maxon, Inc.*, 714 P.2d 1001, 1002 (Nev. 1986) (holding NRS 99.040 applies to "a suit arising out of a contract").

- **North Carolina.** "In an action other than contract, any portion of a money judgment designated by the fact finder as compensatory damages bears interest from the date the action is commenced until the judgment is satisfied." N.C. Gen. Stat. Ann. § 24-5(b). This provision is "mandatory and not discretionary on the part of the trial court." *Hamby v. Williams*, 676 S.E.2d 478, 481 (N.C. App. 2009). The case Irico cites addresses a different part of the interest statute, which applies in contract actions and is irrelevant here. *See Farmah v. Farmah*, 484 S.E.2d 96, 97 (N.C. App. 1997) (discussing N.C. Gen. Stat. § 24-5(a)), *rev'd*, 500 S.E.2d 662 (N.C. 1998). Moreover, in *Farmah,* the North Carolina Supreme Court, applying § 24-5(b) because this was a non-contract action, held that the trial court must "award interest from the date the action was instituted until the judgment is satisfied." *Farmah*, 500 S.E.2d at 663.

**Maine.** "The prejudgment interest statute entitles the prevailing party to interest as a matter of right, which right is defeasible only when the prevailing party obtains a continuance of longer than thirty days or when the nonprevailing party petitions and shows good cause that it should be waived altogether." *Brown v. Habrle*, 1 A.3d 401, 404 (Me. 2010) (internal quotation marks and citation omitted). Thus, IPPs are entitled to prejudgment interest unless Irico shows good cause why it should not be awarded. Irico has made no such showing.

**California, District of Columbia, Hawaii, Kansas, New Mexico, North Dakota, Tennessee, and Vermont.** Irico does not appear to dispute that the court may award prejudgment interest in its discretion pursuant to the antitrust statutes of California and the District of Columbia, as well as under the general law of Hawaii, Kansas, New Mexico, North Dakota, Tennessee, and Vermont. *See* Ex. 3. An award of prejudgment interest is especially appropriate where, as here, Irico's egregious misconduct has significantly delayed the resolution of this litigation for many years. "Pre-judgment interest is designed to allow the court to designate the commencement date of interest in order to correct injustice when a judgment is delayed for a long period of time for any reason, including litigation delays." *Metcalf v. Voluntary Employees' Ben. Ass'n of Hawaii*, 52 P.3d 823, 831 (Haw. 2002). In determining whether an award of interest is just, the California and District

of Columbia statutes instruct courts to consider whether any party or the representative of a party (a) "made motions or asserted claims or defenses so lacking in merit as to show that the party or representative acted intentionally for delay, or otherwise acted in bad faith;" (b) during the litigation, "violated any applicable rule, statute, or court order providing for sanctions for dilatory behavior or otherwise providing for expeditious proceedings;" and (c) "engaged in conduct primarily for the purpose of delaying the litigation or increasing the cost thereof." Cal. Bus. & Prof. Code § 16761; D.C. Code Ann. § 28-4508(b).

In this case, considering the factors enumerated by the California and the District of Columbia statutes and the Court's discretion under the general laws of Hawaii, Kansas, New Mexico, North Dakota, Tennessee, and Vermont, prejudgment interest is appropriate for the entire period from IPPs' filing (December 13, 2007) or service of the complaint upon Irico (December 25, 2007) through the date judgment is entered depending on the particular state. Irico indisputably delayed this litigation by (1) deciding "not to answer and defend against the claims against it, resulting in many years of delay, entry of default and motion practice to set aside the default[;]" (2) filing an appeal of "the court's denial of its motion to dismiss for lack of jurisdiction under the FSIA, which Irico dropped weeks before oral argument was to be heard;" and (3) failing to respond to discovery requests and orders and misleading class counsel and the Court. *See In re Cathode Ray Tube (CRT) Antitrust Litig.,* No. 07-cv-05944-JST, 2024 WL 4823938, at *2 (N.D. Cal. Nov. 15, 2024) (quoting Special Master's Report). While Irico protests that it has already been penalized for the delays it caused, prejudgment interest is not a penalty but rather is "an element of compensation that serves to compensate for the loss of use of money due as damages . . . , thereby achieving full compensation for the injury those damages are intended to redress." *Cnty. of Hawaii v. C & J Coupe Fam. Ltd. P'ship*, 242 P.3d 1136, 1165 (Haw. 2010).

**Amount to which prejudgment interest applies.** IPPs and Irico disagree as to the amount subject to prejudgment interest under the laws of Iowa, Michigan and New York. IPPs submit that prejudgment interest applies to the entire amount of the judgment in these jurisdictions.

15
**JOINT CASE MANAGEMENT STATEMENT**
**PURSUANT TO ORDER ADOPTING DAMAGES MODEL (ECF NO. 6516)**
**MASTER FILE NO. 07-CV-5944-JST; MDL NO. 1917**

- **Iowa.** *See Cedar Rapids Lodge & Suites, LLC v. JFS Dev., Inc.*, No. 09-CV-175-LRR, 2012 WL 5269015, at \*5 (N.D. Iowa Oct. 24, 2012) (awarding prejudgment interest on treble damages in RICO action).

- **Michigan**. "Interest under this subsection is calculated on the **entire amount of the money judgment**, including attorney fees and other costs." Mich. Comp. Laws Ann. § 600.6013(8) (emphasis added); *see Thompson v. Paasche*, 950 F.2d 306, 308 n.1 (6th Cir. 1991) (noting that trial court awarded prejudgment interest on trebled RICO damages, "calculated pursuant to M.C.L. § 600.6013(4)").

- **New York.** "Interest shall be recovered upon the **total sum awarded**, including interest to verdict, report or decision, in any action, from the date the verdict was rendered or the report or decision was made to the date of entry of final judgment." N.Y. C.P.L.R. 5002 (emphasis added).

In short, prejudgment interest should be awarded to seventeen of the twenty-two State Classes at issue. Attached as Exhibit 3 is a chart setting forth the legal authority of each state; the applicable interest rate and the damages to which the rate should apply.  The start date for the running of prejudgment interest is either the filing date of the complaint naming the Irico Defendants (December 13, 2007), or the date of service of this complaint (December 25, 2007) for all states except for New York.[13] Prejudgment interest figures cannot be calculated at this time because any prejudgment interest awarded would run through the date of judgment and, thus, are not part of the calculations performed by Dr. Palmer in Exhibit 1-A.

---

[13] *See Figone v. LG Electronics, Inc.,* 07-cv-06331-JST, (N.D. Cal., filed Dec. 13, 2007); *In re CRT*, 2024 WL 4823938, at \*2 (stating Irico was served on December 25, 2007). New York law provides for prejudgment interest starting with the date of the verdict or report or decision to the date of entry of judgment.  N.Y. C.P.L.R. § 5002.  Thus, prejudgment interest should be calculated for New York beginning with this Court's Order adopting the Special Master's Report and Recommendation of November 15, 2024 (ECF 6423).  *See, e.g., Quigley v. Coco's Water Cafe, Inc.*, 926 N.Y.S. 2d 584 (N.Y. App. 2011) (prejudgment interest appropriate from date of default judgment even though damages were determined several years later); *In re Kovler*, 253 B.R. 592 (Bankr. S.D.N.Y. 2000) (under New York law, prejudgment interest should run from the date of the court's merits decision even though damages were reserved for further submissions and an evidentiary hearing).

**JOINT CASE MANAGEMENT STATEMENT**
**PURSUANT TO ORDER ADOPTING DAMAGES MODEL (ECF NO. 6516)**
**MASTER FILE NO. 07-CV-5944-JST; MDL NO. 1917**

**V.    IPPs' Damages Should Not Be Reduced Based on DPPs' Recovery**

1.        The only reduction of the IPPs' damage award should be to account for IPPs' prior settlements totaling $580.75 million.  The offset for these prior settlements should be made after trebling.  *See, e.g., William Inglis & Sons Baking Co. v. Continental Baking Co., Inc.*, 981 F.2d 1023, 1024 (9th Cir. 1992) (holding that in antitrust actions, "settlement payments should be deducted from the damages after they have been trebled."). Dr. Palmer calculated the pro rata reductions to each State Class based on the prior settlements in Exhibit 1-A, Column E.

There is no legal basis for Irico's position that IPPs' damages should be reduced because they are "duplicative" of DPPs' damages. Under the Sherman Act, direct purchasers' damages cannot be reduced by the overcharge passed on to indirect purchasers. Thus, the only way for Irico to reduce its liability based on its "duplicative" damages arguments would be to reduce IPPs' damages. This would unjustly punish the plaintiffs who suffered most. *See Lorix v. Crompton Corp.*, 736 N.W.2d 619, 631 (Minn. 2007) (noting end users are "the party most likely to be injured by an anticompetitive overcharge because [they are] the only party in the chain of purchaser who cannot pass on part or all of that overcharge"). Such a reduction is not justified and would negate the states' repealer statutes. The Supreme Court has long recognized that state law may "impos[e] state liability in addition to that imposed by federal law." *California v. ARC Am. Corp.,* 490 U.S. 93, 105 (1989). Allowing direct purchasers to recover damages under federal law and indirect purchasers to recover their damages under state law does not violate any statute, policy, or the Constitution and is consistent with how antitrust cases have proceeded for nearly half a century.  Simply put, there is no federal law or policy supporting Irico's claim that IPPs' recovery should be reduced as duplicative of DPPs' damages.

**A.    State Law Duplicative Recovery Provisions Do Not Apply.**

There is no statutory basis for awarding IPPs less than full compensation where, as here, DPPs assert federal claims and IPPs assert state law claims. *See In re HIV Antitrust Litig*., No. 19-cv-02573-EMC, 2023 WL 3011624, at * 3 (N.D. Cal. Apr. 18, 2023); *see also In re Lidoderm*

*Antitrust Litig.,* No. 14-MD-02521-WHO, 2018 WL 7814761, at *4 (N.D. Cal. Feb. 7, 2018) ("Given the structure of the federal and state antitrust and unlawful competition laws, the DPPs are entitled to recover the full amount of the overcharges (if proved) and the EPPs are entitled to recover the amount of the overcharges they paid (consistent with the underlying state laws). **Assessment of these damages is not unlawfully 'duplicative**.'") (footnote omitted, emphasis added); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. C 11-5765-SI, 2013 WL 257148, at *1 (N.D. Cal. Jan. 23, 2013) ("Duplicative recovery is, in many if not all cases alleging a nationwide conspiracy with both direct and indirect purchaser classes, a necessary consequence that flows from indirect purchaser recovery.") (citation omitted); *In re Zetia (Ezetimibe) Antitrust Litig.* No. CV 2:18-MD-2836-DEM, 2023 WL 3064462, at *4 (E.D. Va. Apr. 18, 2023) ("EPPs are entitled to recover damages under state law free from any offset for the damages recovered by the DPPs and Retailers under federal law.").

As the *HIV* court explained, to interpret state law provisions regarding apportioning damages "to apply where direct purchasers assert a federal claim would effectively negate the purpose of the repealer statute, denying the remedy to indirect purchasers the states expressly provide by law." 2023 WL 3011624, at *2 (quoting plaintiffs' brief with approval). "States . . . which have repealed *Illinois Brick* and allowed indirect purchasers to sue for antitrust violations, have necessarily made the policy decision that duplicative recovery may permissibly occur. Duplicative recovery is, in many if not all cases alleging a nationwide conspiracy with both direct and indirect purchaser classes, a necessary consequence that flows from indirect purchaser recovery." *Id.* at *3 (quoting *In re Flash Memory Antitrust Litig.*, 643 F. Supp. 2d 1133, 1156 (N.D. Cal. 2009)).[14]

---

[14] *See also In re Propranolol Antitrust Litig.*, 249 F. Supp. 3d 712, 726 (S.D.N.Y. 2017) ("[T]he Court agrees with the general view among district courts that [s]tates . . . which have repealed *Illinois Brick* and allowed End–Payors to sue for antitrust violations, have necessarily made the policy decision that duplicative recovery may permissibly occur.") (internal quotation marks and citation omitted).

**JOINT CASE MANAGEMENT STATEMENT**
**PURSUANT TO ORDER ADOPTING DAMAGES MODEL (ECF NO. 6516)**
**MASTER FILE NO. 07-CV-5944-JST; MDL NO. 1917**

Irico points to the "duplicative recovery" and "pass-on defense" provisions in certain state antitrust statutes,[15] but the statutory context of those provisions clearly demonstrates that they were intended to apply only where both direct and indirect purchasers sue under state law. *See HIV*, 2023 WL 3011624, at *3-4 and n.4 (analyzing state statutes and noting that they provide for transfer to state court and for a pass-on defense, but federal claims cannot be transferred to state court, and a pass-on defense cannot be invoked where direct purchasers assert federal claims and indirect purchasers are end users).

Moreover, several of the jurisdictions Irico highlights do not have duplicative recovery or pass on defense provisions in their antitrust statutes. Instead, Irico relies on cases that do not address the relevant issue here.[16] *FTC v. Mylan Laboratories, Inc.*, 62 F. Supp. 2d 25 (D.D.C. 1999) involved actions by the Federal Trade Commission and thirty-two states. The court found that the Maine antitrust statute did not authorize the state to bring an antitrust claim on behalf of indirect purchasers. *Id.* at 48. The court dismissed West Virginia's claim for restitution under the state Antitrust Act because "neither the Act nor state case law expressly authorizes such relief." *Id.* at 53. However, the court did not dismiss West Virginia's claim for "damages on behalf of direct and indirect purchasers." *Id. In re Packaged Seafood Prods. Antitrust Litig.,* 332 F.R.D. 308 (S.D. Cal. 2019) is also inapposite. In *Packaged Seafood*, the court addressed state law regarding a pass-on defense, which "allows defendants to defeat antitrust claims when they can show the plaintiffs suffered no damages as a result of the plaintiffs 'passing-on' any overcharges to their customers." *Id.* at 338. As discussed below, the pass-on defense is inapplicable here, where the IPPs, by definition, purchased CRT products "for their own use and not for resale." CAC ¶ 245.

Irico also relies upon *Humana Inc. v. Bausch Health Companies, Inc.*, 2023 WL 4552005, at * 7 (Cal. Super. Ct. July 5, 2023), in which a *state trial court* disagreed with *HIV.* The *Humana* court

---

[15] *See* Irico Trial Br. (ECF No. 6467) at 31-33.

[16] Since filing its trial brief (ECF No. 6467), Irico has added to the list of states it claims address duplicative damages. In its earlier brief, Irico did not discuss Maine, Mississippi, Nevada, North Carolina, South Dakota, or West Virginia. *See id.* at 31-34.

**JOINT CASE MANAGEMENT STATEMENT**
**PURSUANT TO ORDER ADOPTING DAMAGES MODEL (ECF NO. 6516)**
**MASTER FILE NO. 07-CV-5944-JST; MDL NO. 1917**

did not appreciate the important distinction between state and federal claims, as set forth above.[17] In *Humana*, the court misinterpreted *Clayworth* v. *Pfizer*, *Inc.*, 233 P.3d 1066, 1086 (Cal. 2010), a case involving indirect resellers suing under California law, where the California Supreme Court suggested that a pass-on defense could be asserted where multiple levels of purchasers sued under state law. Indeed, the court in *Clayworth* explicitly stated that while a "pass-on defense" is precluded under federal law and generally unavailable under California law, it is available when multiple levels of purchasers sue under California law.  *Id.*

## B.      Pass-On Is Irrelevant Here.

Irico does not dispute that it cannot assert a pass-on defense to DPPs' federal claims. Nor can Irico dispute that it cannot assert a pass-on defense to IPPs' claims because IPPs purchased CRT products "for their own use and not for resale." CAC ¶ 245. Thus, the issue of pass-on is irrelevant here. *See HIV*, 2023 WL 3011624, at *7 (finding New Mexico provision which "relates to the pass-on defense only and obviously applies to state claims" did not support Defendant's argument for "using a direct purchaser's damages as a set-off against an indirect purchaser's damages").[18]

Nevertheless, in arguing that IPPs' damages should be reduced here, Irico relies largely on authorities providing for a pass-on defense in cases involving multiple levels of indirect purchasers. Irico Trial Br. at 31-34. *See Clayworth v. Pfizer, Inc.* 233 P.3d 1066 (Cal. 2010) (opining, in an indirect purchaser reseller case, that a pass-on defense could be asserted where multiple levels of purchasers sue under state law); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. C 09-4997 SI, 2012 WL 6709621, at *4 (N.D. Cal. Dec. 26, 2012) , *aff'd*, 637 F. App'x 981 (9th Cir. 2016) (finding

[17] Notably, the *Humana* Court did not rule that defendants were entitled to a duplicative recovery set off.  *Id.* at *11.  Instead, it held that there was not enough information to make that determination in the context of a motion to dismiss.  *Id.*

[18] Irico's attempt to distinguish *HIV* fails. *See* Irico Trial Br. at 33 n.13. While the products in *HIV* differ from the products in this case, that distinction is irrelevant to the issue here. In addition to discussing whether a pass-on defense could be asserted based on increased insurance premiums, the court in *HIV* also explained that a state law pass-on defense was not relevant to the same duplicative recovery argument Irico makes here. 2023 WL 3011624, at *7. Moreover, Irico cannot dispute that a pass-on defense to IPPs' claims does not make sense here, given that IPPs are end users of the products.

**JOINT CASE MANAGEMENT STATEMENT**
**PURSUANT TO ORDER ADOPTING DAMAGES MODEL (ECF NO. 6516)**
**MASTER FILE NO. 07-CV-5944-JST; MDL NO. 1917**

pass-on defense could be asserted in case involving indirect purchaser resellers and end users suing under state law); *Packaged Seafood*, 332 F.R.D. at 338 (assuming, for purposes of motion regarding choice of law, that pass-on defense applies to California law); D.C. Code § 28-4509(b) (pass-on defense); N.M. Stat. Ann. § 57-1-3 (allowing pass on defense in "any action under this section"); N.D. Cent. Code Ann. § 51-08.1-08(5) (allowing pass-on defense). These authorities are inapposite and do not advance Irico's "duplicative" damages argument.[19]

### C.    No Federal Policy Precludes IPP From Recovering Full Damages.

No federal policy prohibits indirect purchasers from recovering damages in accordance with state laws. "It is one thing to consider the congressional policies identified in *Illinois Brick* and *Hanover Shoe* in defining what sort of recovery federal antitrust law authorizes; it is something altogether different, and in our view inappropriate, to consider them as defining what federal law allows States to do under their own antitrust law." *ARC Am. Corp.*, 490 U.S. at 103. In *Los Angeles Mem'l Coliseum  Comm'n v. Natl' Football League*, 791 F.2d 1356 (9th Cir. 1986) and In *In re: Cathode Ray Tube (CRT) Antitrust Litig.*, 911 F. Supp. 2d 857 (N.D. Cal. 2012), on which Irico relied (Trial Br. at 30), only federal law was at issue. Moreover, in *Los Angeles Memorial Coliseum*, the court held that it would not be proper to award a single plaintiff damages (before trebling) that exceeded its actual injury.  791 F.2d at 1374.

### D.    Awarding Full Damages to DPPs and IPPs is Constitutional.

Awarding full overcharges to both DPPs and IPPs who have proven a 100% pass through does not offend Due Process. "While double liability for the same conduct does, in the abstract, offend a certain sense of fairness, our system tolerates it and, at times, even requires it." *Jones v. S.E.C.*, 115 F.3d 1173, 1181 (4th Cir. 1997). Indeed, reducing IPPs' damages based on DPPs'

---

[19] *In re Vitamins Antitrust Litig.*, 259 F. Supp. 2d 1 (D.D.C. 2003) is likewise inapposite.  Applying Michigan law, the court denied plaintiffs' motion *in limine* and held that evidence of pass through was relevant to the question of whether indirect purchasers suffered damages. *Id.* at *9.  Pass through is not an issue here since Dr. Netz "concluded that all of the overcharges were passed on to IPPs— a conclusion that Irico does not oppose."  Order at 3.

**JOINT CASE MANAGEMENT STATEMENT**
**PURSUANT TO ORDER ADOPTING DAMAGES MODEL (ECF NO. 6516)**
**MASTER FILE NO. 07-CV-5944-JST; MDL NO. 1917**

recovery would improperly usurp the role of state legislatures that chose to provide a remedy for indirect purchasers. *See Wakefield v. ViSalus, Inc.*, 51 F.4th 1109, 1123-24 (9th Cir. 2022) (stressing that courts should "only very rarely" reduce damages award authorized by statute, and must not "overstep the role of the judiciary and usurp the power of the legislature").

Irico's conduct violated both state and federal laws, and it must be held accountable. *See Heath v. Alabama*, 474 U.S. 82, 88 (1985) ("[W]hen a defendant in a single act violates the 'peace and dignity' of two sovereigns by breaking the laws of each, he has committed two distinct 'offences.'"); *Bartkus v. People of State of Ill.*, 359 U.S. 121, 132 (1959) (explaining that punishment by both state and federal governments for the same acts does not violate Due Process). Irico's conduct "violated both the Sherman Act and state civil statutes. It is within the power of both sovereigns to enforce their own laws." *In re Elec. Books Antitrust Litig.*, 11-MD-2293-DLC; 2014 WL 2535112, at *9-11 (S.D.N.Y. June 5, 2014) (imposing civil penalties under state laws and awarding treble damages under Clayton Act would not violate Due Process); *see Zetia*, 2023 WL 3064462, at *3 (finding, in *Illinois Brick* repealer states, indirect purchasers "are entitled to recover for their own damages under state law at the end-payor level <u>separate and distinct from</u> damages recovered by DPPs . . . under federal law.").

Irico's argument that a party should not pay the same debt twice is irrelevant because this case does not involve debts. *See* Irico Trial Br. at 29-30. A debt is a "sum certain. . . due to the plaintiff." *Hepner v. United States*, 213 U.S. 103, 106 (1909). Debt is "quite distinct from damages, where the sum of money involved is 'at large' until determined by a [factfinder.]." Tim Kaye, *A Sound Taxonomy of Remedies*, 36 Quinnipiac L. Rev. 79, 123 (2017); *see Ballinger v. City of Oakland*, 24 F.4th 1287, 1295 (9th Cir. 2022) (distinguishing a "general obligation to pay money" from a "specific fund of money"). Thus, the "debt" cases in Irico's trial brief are inapposite.

Nor would awarding full damages to DPPs and IPPs impose a double "penalty" on Irico; rather, it would serve to compensate each group. The authority on which Irico relies is inapposite. *See In re N. Dist. of Cal. Dalkon Shield IUD Prods. Liab. Litig.*, 526 F. Supp. 887, 898-99 (N.D. Cal. 1981) (addressing punitive damages in mass tort context); *John Mohr & Sons, Inc. v. Jahnke*,

198 N.W.2d 363, 364 (Wis. 1972) (finding a single plaintiff should not recover both treble damages and punitive damages); *In re Trans Union Corp. Priv. Litig.*, 211 F.R.D. 328, 342 (N.D. Ill. 2002) (holding statutory damages provision was not punitive, and therefore plaintiffs could recover both statutory and punitive damages); *Marathon Petroleum Corp. v. Sec'y of Fin. for Delaware*, 876 F.3d 481, 494 (3d Cir. 2017) (discussing Supreme Court's priority rules for state escheat of abandoned intangible property).

Further, awarding treble damages to DPPs and IPPs does not result in "grossly excessive or arbitrary" punitive damages. *See State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 416 (2003). First, treble damages are distinguishable from punitive damages, and Irico cites no case where a court applied *State Farm* to treble damages. *See Morse Diesel Int'l, Inc. v. United States,* 79 Fed. Cl. 116, 126 (Fed. Cl. 2007) (holding *State Farm* was not applicable to treble damages); *United States v. Bourseau*, No. 03CV907 BENWMC, 2006 WL 3949169, at *2 (S.D. Cal. Dec. 1, 2006) ("In view of the mixed compensatory and punitive nature of False Claims Act trebled damages, the Court finds that the damages imposed . . . in this case do not offend the Due Process Clause."), *aff'd*, 531 F.3d 1159 (9th Cir. 2008). The reason for limiting punitive damages awards, to give people "fair notice . . . of the severity of the penalty that a State may impose," *State Farm* 538 U.S. at 417, does not apply to treble damages, which are expressly provided for by statute, and hence provide notice of the imposition of the damages and the amount. *See Cook Cnty., Ill. v. U.S. ex rel. Chandler*, 538 U.S. 119, 132 (2003) ("Treble damages certainly do not equate with classic punitive damages, which leave the jury with open-ended discretion over the amount . . . .").

Even if the *State Farm* analysis applied here, awarding treble damages to both DPPs and IPPs would not offend due process. *State Farm* directs courts to consider three factors: "(1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases." *State Farm*, 538 U.S. at 418. "[T]he most important [factor] is the degree of reprehensibility of the defendant's conduct." *Id.* at 419 (citation omitted).

**JOINT CASE MANAGEMENT STATEMENT**
**PURSUANT TO ORDER ADOPTING DAMAGES MODEL (ECF NO. 6516)**
**MASTER FILE NO. 07-CV-5944-JST; MDL NO. 1917**

Irico's conduct was reprehensible. "[T]rickery and deceit are more reprehensible than negligence." *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 576 (1996) (internal quotation marks and citation omitted). "[I]nfliction of economic injury, especially when done intentionally through affirmative acts of misconduct . . . can warrant a substantial penalty." *Id.* Further, "repeated misconduct is more reprehensible than an individual instance of malfeasance." *Id.* at 577. Irico's deceitful, intentional, repeated conduct warrants a substantial penalty. *See In re Elec. Books*, 2014 WL 2535112, at *11 (noting "'reprehensibility' of Apple's participation in the price fixing conspiracy"); *see also Verizon Commc'ns, Inc. v. Trinko*, 540 U.S. 398, 408 (2004) (price-fixing is the "supreme evil of antitrust").

The second and third *State Farm* factors also support awarding treble damages to both IPPs and DPPs. As to the second factor, "[s]ingle-digit multipliers are more likely to comport with due process . . . than awards with ratios in range of 500 to 1." *State Farm,* 538 U.S. at 425. Finally, the penalties available for price-fixing do not suggest that the damages requested in this case are grossly excessive. Many states authorize monetary penalties for antitrust violations. *See, e.g.*, N.Y. Gen. Bus. Law §§ 341, 342-a (up to $1 million civil penalty for corporation). If the *State Farm* factors applied, an award of treble damages to both IPPs and DPPs would not be "grossly excessive."

Finally, *Wakefield v. ViSalus, Inc.*, 51 F.4th 1109 (Irico Trial Br. at 31) and *Montera v. Premier Nutrition Corp.*, 111 F.4th 1018 (9th Cir. 2024) are inapposite because they involved an aggregate award of <u>statutory</u> damages "awarded as a matter of strict liability." *Wakefield,* 51 F.4th at 1120.

## VI.    Conclusion

There is no need for additional extensive briefing or proceedings.  The parties have agreed on many issues, and those that remain may be decided by the Court as a matter of law.  Thus, based on the foregoing, IPPs respectfully submit that the Court enter judgment for the IPPs in the full amount of the determined damages plus trebling in those states as set forth in Exhibit 1. IPPs further

request that the Court determine that prejudgment interest is appropriate in seventeen of the twenty-two states as outlined in Section IV and Exhibit 3.

Pursuant to the agreement of the parties IPPs further request that the Court enter an Order suspending the deadlines for filing their motion for an award of statutory attorney's fees and expenses and their bill of costs, and deferring consideration of such issues until after any and all merits appeals are resolved (or, if no appeal is filed, after the expiration of time allowed for appeal of the final judgment), at a time to be determined by future Court Order.

A proposed form of judgment for the IPP case is attached as IPP Exhibit 4.

### IPP AND DPP JOINT STATEMENT

Irico asserts that Federal Rule of Civil Procedure 55 requires that Plaintiffs move for a default judgment under Fed. R. Civ. P. 55(b)(2). Irico Stmt., Section IX. But Irico cites no law providing that a motion for entry of a default judgment under Rule 55(b)(2) is required where, as here, the Court has already found that Plaintiffs have satisfied the more stringent standards for a default judgment under Rule 37 (Sanctions Order at 32-37) and has already determined the amount of damages. ECF No. 6516.

Both Rules 37(b) and 37(e) provided this Court the authority to enter "default judgment" against Irico. *See* Fed. R. Civ. P. 37(b)(2)(A) (listing a range of sanctions, including "rendering a default *judgment* against the disobedient party.") (emphasis added); Fed. R. Civ. P. 37(e)(2)(C) (the court may "dismiss the action or enter a default *judgment*.") (emphasis added). The Court (and the Special Master) thoroughly considered the *Malone*[20] factors and concluded that a default judgment under Rules 37(b) and (e) was appropriate. Sanctions Order at 33-37*; see also Adriana Intl. Corp. v. Lewis & Co.,* 913 F.2d 1406, 1410 (9th Cir. 1990) (affirming default judgment as an evidentiary sanction under Rule 37(b) and (d)). The only issue left was the amount of damages, which has now also been determined. There is no basis to require Plaintiffs to file motions for default judgment under Rule 55(b)(2) and justify entry of a default judgment once again under *Eitel v. McCool*, 782

---

20 *Malone v. U.S. Postal Serv.*, 833 F.2d 128, 132 (9th Cir. 1987).

F.2d 1470, 1471-72 (9th Cir. 1986). The *Eitel* factors are duplicative of the analysis the Court has already conducted. As the court in *Dreith v. Nu Image*, Inc., No. CV 05-4146 SVW (MANx), 2007 WL 9658786 (C.D. Cal. Mar. 1, 2007), found, "it would either be redundant or inconsistent to apply *Eitel*'s discretionary factors where default is imposed as a sanction; *Eitel* is ordinarily invoked when a defendant fails to file a timely pleading. . . . If the *Eitel* factors could somehow compel this Court to deny default judgment despite having already concluded that the entry of default was proper, the result would defy common sense." *Id*. at *6.

In contrast to Rule 37, which clearly applies to the circumstances of this case, Rule 55 applies, "when a party against whom a judgment for affirmative relief is sought has *failed to plead or otherwise defend* . . . ." Fed. R. Civ. P. 55(a) (emphasis added). The case law relating to Rule 55 is inconsistent, and there is a split in the circuits regarding the meaning of "otherwise defend" and whether Rule 55 applies post-pleading. *See* Moore's Federal Practice, § 55.11 (concluding that "the better view is that Rule 55(a)'s 'otherwise defend' language may not be extended to justify a default once there has been an initial responsive pleading"); *id.* at § 55.03 ("In post-pleading situations, Rules 16 and 37 impose procedural requirements and safeguards that guide and limit a court's exercise of its discretion to impose a default judgment as a sanction; and the simpler Rule 55 procedure should not be used when a court imposes a default judgment as a sanction for post-pleading conduct.").

In *Giampaoli v. Califano,* 628 F.2d 1190, 1193-94 (9th Cir. 1980), the Ninth Circuit affirmed the entry of judgment against the government as a sanction even though the district court did not proceed under Rule 55. The Court examined the genesis of Rule 55 and held that it did not apply because the government had extensively litigated the case on the merits:

> By its plain terms the rule applies only to a 'default judgment,' a term of art ordinarily referring to a judgment entered because of a defendant's failure to respond to a complaint. Fed.R.Civ.P. 55(a). Obviously, this is not such a case. . . . Thus, it appears that rule 55(e) was directed at defaults in the narrow sense of the government's failure to answer or otherwise move against a complaint, and was not intended to preclude the imposition, at a late stage in the proceeding, of sanctions or other court action which prevent the government from presenting further evidence or otherwise augmenting the record.

**JOINT CASE MANAGEMENT STATEMENT
PURSUANT TO ORDER ADOPTING DAMAGES MODEL (ECF NO. 6516)
MASTER FILE NO. 07-cv-5944-JST; MDL NO. 1917**

*Id.* at 1193-94. The court noted that this interpretation "comports with the overall scheme and purpose of the Federal Rules of Civil Procedure," which distinguish between default judgments entered under Rule 55 for failure to respond to the complaint, and default judgments and other sanctions entered under Rule 37. *Id.* at 1194. Likewise, in *Globaltranz Enters. v. Shippers Choice Glob. LLC*, No. CV-16-04038-PHX-ROS, 2017 WL 2841224, at *1–2 (D. Ariz. June 2, 2017), the court analyzed the split in authorities and agreed with *Giampaoli* and "multiple treatises" to find that Rule 55 only applies where a defendant has failed to respond to the complaint, and that Rule 37 should apply where a party refuses to cooperate with discovery.[21]

In sum, motions for default judgment pursuant to Rule 55(b)(2) are not required because the Court has already determined that a default judgment is justified under Rule 37(b) and (e). They would be duplicative of the proceedings on sanctions and damages, and would further delay the resolution of this matter and waste the resources of the parties and the Court. Plaintiffs respectfully submit that the Court may enter judgment in the IPP and DPP actions once the amount of damages is determined in each action in accordance with the Order Adopting Damages Model. Should the Court direct Plaintiffs to file motions for default judgment pursuant to Rule 55(b)(2), however, Plaintiffs respectfully request that the Court order that the parties need not address the *Eitel* factors.

---

[21] While the Ninth Circuit and other circuit courts have applied Rule 55 post-pleading, many of those courts did so without analysis of whether it was more appropriate to proceed under Rule 37 or Rule 16. *See, e.g., Ringgold Corp. v. Worrall,* 880 F.2d 1138, 1141 (9th Cir. 1989) (affirming default judgment under Rule 55 where defendants failed to attend trial, but acknowledging "this is not a typical default judgment," and holding that Rule 55(b)(2)'s notice requirements were inapplicable); *City of N.Y. v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 129-31 (2d Cir. 2011) (addressing split in authority but affirming Rule 55 default judgment under a broad interpretation of the phrase "otherwise defend"). Other cases acknowledge that the default judgment could have been entered under Rule 37 but affirm the Rule 55 default judgment on the grounds that discovery misconduct can also constitute "a failure to otherwise defend" the lawsuit. *See, e.g., Hoxworth v. Blinder, Robinson & Co.,* 980 F.2d 912, 918-19 (3d Cir. 1992) ("[I]n arguing for the default counsel for plaintiffs discussed the procedures set forth in Rule 55, . . .[thus] we cannot rule out the possibility that the court may have relied on the pending Rule 37 sanction motion in imposing the default. . . . Thus, . . . Rule 37 provides an alternate basis to support the district court's sanction order."); *Home Port Rentals, Inc. v. Ruben*, 957 F.2d 126, 133 (4th Cir. 1992) (affirming default judgment even though "[t]he district court did not recite whether it was issuing its default judgment pursuant to Rule 37 or Rule 55.").

**IRICO'S STATEMENT**

Irico sets forth below its positions on each of the issues, in the order raised by the Court in its Order Adopting Damages Model (Order at 16–17), as well as additional issues based on IPPs' and DPPs' statements.

Irico sets forth its below positions with full reservation and preservation, and without any waiver or concession, of all rights to challenge and appeal issues decided in this case, including but not limited to all rights to challenge and appeal the Court's Order Adopting Damages Model, the entry of default, and all orders related to the damages determination, default, and default judgment, among other issues. For instance, Irico continues to vigorously dispute that Irico Group and Irico Display should be jointly and severally liable for the alleged conspiracy, as well as for any damages, based in part on undisputed facts such as both Irico Defendants' minimal market shares, particularly in the CDT market where a large portion of the damages arise from but where Irico Group ceased production in 2002 and where Irico Display had no production at all.

## I.    Irico's positions as to the final damages calculation for each class.

Irico maintains the position that no damages should be assessed against Irico in this case and does not agree with the damages models and calculations adopted by the Court and the DPPs and IPPs.

According to the damages model adopted by the Court, the mathematical calculations are listed as follows:

- **DPP Class:** Irico calculates the same amount as DPPs of $1.177 billion, although, as set forth below, Irico objects to any damages award to the DPPs above the amount requested by the DPPs at the damages trial.

- **IPP Class:** Irico calculates the same amount as IPPs of $1,846,182,127, although, as set forth below, any damages awarded the IPPs must be apportioned or reduced to account for duplicative damages that duplicate or overlap with any damages awarded to DPPs.

**JOINT CASE MANAGEMENT STATEMENT**
**PURSUANT TO ORDER ADOPTING DAMAGES MODEL (ECF NO. 6516)**
**MASTER FILE NO. 07-CV-5944-JST; MDL NO. 1917**

It should be emphasized that Irico's response to the final damages calculations does not mean that Irico agrees with the damages model and the calculation results. Irico disputes any reference or implication in the DPPs' and IPPs' statement and any proposed judgments, including DPPs' proposed judgment, that Irico "agreed" or "agrees" with their damages calculations.

## II. Damages should be apportioned between IPPs and DPPs, and any remaining dispute over this issue may require further briefing and proceedings.

As shown below, because the damages calculation for the IPP class overlaps and duplicates the damages calculation for the DPP class, both constitutional due process and the respective state laws require the Court to apportion damages and reduce any IPP class damages by the duplicative amounts.

### A. The IPPs' and DPPs' damages calculations overlap, meaning the total IPP and DPP damage calculations exceed 100% of the alleged overcharge.

As the Court has found, the IPPs and DPPs both claim damages based on CPT and CDT overcharges paid first by direct purchasers and then, for IPPs, passed on 100% to indirect purchasers. Order at 7–8. For that reason, the Court "adopt[ed] a single model for estimating the overcharges because it would not make sense to determine that one set of overcharges was the most reasonable estimate for the DPP class but a completely different set was the most reasonable estimate of the same overcharges for the IPP class." Order at 8.

By that same token, apportionment of any overcharge damages between the IPP and DPP classes also makes economic sense, in addition to being required under constitutional due process principles and the relevant state laws. As explained below and in the declaration previously filed by Irico (ECF No. 6467-1 and reattached here as Irico Exhibit 400 for ease of reference), data indicates that IPPs were the end customers for a substantial fraction of CRTs and CRT finished products purchased directly by DPPs in the United States. Thus, the IPPs' and DPPs' volumes of commerce and resulting damages calculations measure and seek to recover duplicative damages. If both classes are awarded the full damages calculated under the Court's adopted model, then the total damages would exceed 100% of any actual overcharge and amount to duplicative recoveries against Irico.

Indeed, the known risk of duplicative damages between IPPs and DPPs led in part to the *Illinois Brick* doctrine, barring IPPs from bringing federal antitrust claims. *See In re Coordinated Pretrial Proc. in Petroleum Prods. Antitrust Litig.*, 691 F.2d 1335, 1339, 1342 (9th Cir. 1982) ("In *Illinois Brick* … the Court noted the possibility of duplicative recovery if both direct and indirect purchasers could claim damages resulting from a single overcharge by an antitrust defendant … [and] the Court expressly found unacceptable the risk of duplicative recovery created by allowing direct and indirect purchasers to claim damages resulting from a single transaction that violated the antitrust laws."). The Ninth Circuit has also advised, in an instance of double antitrust recovery to a single plaintiff, that "it is beyond dispute that the Sherman Act was not intended to provide recoveries, before trebling, in excess of the injuries that were actually caused by an antitrust violation," and any "double recovery must be corrected before trebling; to do otherwise would in effect treble an incorrect measure of relief." *Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League*, 791 F.2d 1356, 1374-75 (9th Cir. 1986).

**B.    Awarding IPPs and DPPs overlapping, trebled or partially trebled class damages would violate due process.**

A damages award in this case where total damages exceed 100% of the actual overcharge would violate due process. *See W. Union Tel. Co v. Commonwealth of Penn.*, 368 U.S. 71, 76-77 (1961) (holding that forcing a defendant "to pay a single debt more than once" is a taking of property "without due process of law").

In the Ninth Circuit and other courts, "[t]here is a strong Constitutional policy against requiring the double payment of the same debt," under the Due Process clause of the Fifth Amendment. *Bank of Marin v. England*, 352 F.2d 186, 192-93 (9th Cir. 1965), *rev'd on other grounds*, 385 U.S. 99 (1966); *see also Harris v. Balk*, 198 U.S. 215, 226 (1905) ("It ought to be and it is the object of courts to prevent the payment of any debt twice over"); *Cities Serv. Co. v. McGrath*, 342 U.S. 330, 334-35 (1952) (noting that double recovery is a 'taking' of property within the meaning of the Takings Clause); *In re Northern District Of California "Dalkon Shield" IUD Products Liability Litig.*, 526 F. Supp. 887, 899 (N.D. Cal. 1981) (*vacated on other grounds by* 693

F.2d 847 (9th Cir. 1982 ("A defendant in a civil action has a right to be protected against double recoveries not because they violate 'double jeopardy' but simply because overlapping damage awards violate that sense of 'fundamental fairness' which lies at the heart of constitutional due process."); *John Mohr & Sons, Inc. v. Jahnke*, 55 Wis.2d 402, 198 N.W.2d 363, 367 (1972) ("double recovery of a penalty . . . violate[s] the basic fairness of a judicial proceeding required by the due process clause of the Fourteenth Amendment to the federal constitution."); *In re Trans Union Corp. Privacy Litig.*, 211 F.R.D. 328, 341 (N.D. Ill. 2002) ("Plaintiffs do not contest the basic notion that a double penalty for the same act violates due process."); *Marathon Petroleum Corp. v. Sec. of Finance for Del.*, 876 F.3d 481, 494 (3d Cir. 2017) ("[S]ubjecting individuals to the risk of 'double liability' would violate the Due Process Clause.").[22]

Awarding damages for CPT and CDT overcharges to both IPPs and DPPs, without apportionment, would force Irico to pay the same debt or damages for the same injuries twice, once to the DPPs, and again to the IPPs, in violation of due process.[23]

---

[22] IPPs' citation to *Jones v. S.E.C.* misses the mark because this is precisely the kind of case where "our system" ***does not*** "require . . . double liability." 115 F.3d 1173, 1181 (4th Cir. 1997). The *Illinois Brick* repealer statutes, and the caselaw construing them, allow for apportionment to solve for the "certain sense of fairness" that "double liability" offends. *Heath v. Alabama*, 474 U.S. 82, 88 (1985) is inapposite because it addresses the Double Jeopardy Clause of the Fifth Amendment, not due process as embodied by the Fifth Amendment. *See IUD Products Liability Litig.*, 526 F. Supp. at 899 ("A defendant in a civil action has a right to be protected against double recoveries ***not because they violate 'double jeopardy'*** but simply because overlapping damage awards violate that sense of 'fundamental fairness' which lies at the heart of constitutional due process.") (emphasis added). Similarly, *Bartkus v. People of State of Ill.,* is distinguishable because that case considered whether multiple prosecutions for the same crime violated "fundamental principles of our society" as embodied by the Fourteenth Amendment, 359 U.S. 121, 128 (1959), not the unique problem here: that the federal government cannot take the same property twice under the Due Process Clause of the Fifth Amendment.

[23] The distinction that IPPs attempt to draw between debt and damages, as articulated in *Hepner v. United States*, 213 U.S. 103 (1909) is irrelevant here, where the ultimate result is the same: duplicative recovery for the same alleged wrong. The caselaw makes no such distinction. *See, e.g. Jahnke* at 367 ("***double recovery of a penalty*** . . . violate[s] the basic fairness of a judicial proceeding required by the due process clause" (emphasis added); *In re Trans Union Corp. Privacy Litig.*, 211 F.R.D. at 341 ("Plaintiffs do not contest the basic notion that a ***double penalty for the same act*** violates due process.") (emphasis added).

31

**JOINT CASE MANAGEMENT STATEMENT**
**PURSUANT TO ORDER ADOPTING DAMAGES MODEL (ECF NO. 6516)**
**MASTER FILE NO. 07-CV-5944-JST; MDL NO. 1917**

Furthermore, permitting multiple *trebled* recoveries of the same alleged overcharges, once under federal antitrust law and then again under certain state laws, would subject Irico to excessive punitive damages—also in violation of due process. *See State Farm Mutual Automobile Insurance Co. v. Campbell*, 538 U.S. 408, 429 (2003) (holding that excessive punitive damages awards violate a defendant's due process rights). As the Court in this case has recognized in discussing the *Illinois Brick* doctrine, "the Ninth Circuit has explained that 'allowing every person along a chain of distribution to claim damages arising from a single violation of the antitrust laws would create a risk of duplicative recovery against the violator unintended by Congress.' This risk is especially severe in light of the availability of treble damages." *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 911 F. Supp. 2d 857, 864–65 (N.D. Cal. 2012) (quoting *Arizona v. Shamrock Foods Co.*, 729 F.2d 1208, 1212 (9th Cir. 1984)) (internal citations omitted).

Due process sets the outer limits of punitive damage awards, and as recognized by the Ninth Circuit, trebled antitrust damages are punitive in nature. *See Bateman v. Am. Multi-Cinema, Inc.*, 623 F.3d 708, 715 (9th Cir. 2010) ("[T]he treble damages provisions in the Clayton and Sherman Acts act as statutory punitive measures in which two thirds of the recovery is not remedial and inevitably presupposes a punitive purpose." (internal quotations omitted)).[24] While assessed on a

---

[24] IPPs' discussion of the difference between trebled and punitive damages stands in stark contrast to the legion of cases likening the two remedies. *See, e.g. Central Telecommunications v. TCI Cablevision*, 610 F. Supp. 891, 910 (W.D. Mo. 1985) ("[P]unitive damages have a similar purpose [as treble damages under the Sherman Act]"); *Green v. Kanazawa*, No. 16-cv-00054, No. 16-cv-00055, 2018 WL 1278185, at *1 (D. Haw. Mar. 12, 2018) ("treble damages are similar in nature to punitive damages"); *Lexton–Ancira Real Estate Fund, 1972 v. Heller*, 826 P.2d 819, 822 (Colo. 1992) ("[T]reble and punitive damages serve similar purposes"); *Hale v. Basin Motor Co.*, 795 P.2d 1006, 1012 (N.M. 1990) ("Multiplication of damages pursuant to statutory authority is a form of punitive damages."); *Sperry v. Crompton Corp.,* 8 N.Y.3d 204, 214 (2007) (observing that treble damages are considered a penalty under the New York state law). IPPs' argument regarding the inapplicability of *State Farm* to treble damages, and its citation to *Morse Diesel Int'l, Inc. v. United States*, 79 Fed. Cl. 116 (Fed. Cl. 2007), *U.S. v. Bourseau*, No. 03-cv-907, 2006 WL 3949169, and *Cook Cnty., Ill. v. U.S. ex rel. Chandler*, 538 U.S. 119, 132 (2003) (all False Claims Act cases) ignores the critical fact that IPPs are requesting treble damages under state laws. Unlike the False Claims Act, trebling (or, in the case of Iowa, doubling) is not mandatory in eight of the seventeen state laws under which IPPs seek treble damages. Thus, the concerns driving the court in *State Farm*—that would-be defendants did not have fair notice of the severity of the penalty that the state might impose—are present here. *State Farm* is controlling.

case-by-case basis, punitive damage awards that are more than four times the amount of harm caused, with harm typically measured by compensatory damages, likely violate due process particularly in situations where actual damages are already "substantial" or in the range of millions of dollars, which is far exceeded by the damages calculated here. *Ramirez v. TransUnion LLC,* 951 F.3d 1008, 1036-38 (9th Cir. 2020), *rev'd and remanded on other grounds*, 594 U.S. 413 (2021).

Moreover, punitive damage awards are more likely to violate due process when the harm done is "purely economic"—like the overcharge damages sought by the IPPs and DPPs in this case. *BMW of North America, Inc. v. Gore,* 517 U.S. 559, 576 (1996); *see also Southern Union Co. v. Irvin*, 563 F.3d 788, 791-92 (9th Cir 2009) (high punitive damage award more likely to violate due process if the defendant neither physically harmed the plaintiff nor recklessly disregarded the safety of others); *Great West Capital, LLC v. Payne*, No. 3:22-cv-00768, *7, *14 (D. Or. Aug. 27, 2025) ("reduc[ing] the award of punitive damages . . . to comply with constitutional limits on punitive damages award[s]" because, for among other reasons, the harm was economic and not physical).

The class nature of the sought damages further compounds the due process concerns. In *Wakefield v. ViSalus*, a class action brought under the Telephone Consumer Protection Act, the Ninth Circuit held that statutory damage awards of $500 per violation (not trebled), even when constitutional on their own, will violate due process when, on a class-wide basis, the aggregated "penalty prescribed is so severe and oppressive as to be wholly disproportionate to the offense and obviously unreasonable." 51 F.4th 1109, 1121, 1123, 1125 (9th Cir. 2022). More recently, in *Montera v. Premier Nutrition Corp*., the Ninth Circuit directed the trial court to re-assess statutory damages awarded to a consumer class in light of *Wakefield*. 111 F.4th 1018, 1043 (9th Cir. 2024). On remand, Chief Judge Seeborg decreased a statutory damage award to $8,312,450 from $83,124,500 "given the due process concerns with such a large award." No. 16-cv-06980, 2025 WL 751542, *7 (N.D. Cal. Mar. 10, 2025). That reduction was required even though a jury had found the defendant liable under a New York statute that, by "its plain text," entitled each class member to $500, or $83,124,500 class-wide. *Id.* at *1, *2.

In sum, under multiple, independent due process grounds—barring duplicative actual and trebled damages, as well as excessive class damages—the total damages awarded the IPPs and DPPs should not exceed 100% of the determined overcharge and should not be doubly trebled.[25]

**C.    Applicable state laws recognize the need for apportionment and avoidance of duplicative damages, providing further independent grounds for apportionment.**

While federal law does not permit reducing *DPP* damages to account for double recoveries under the *Illinois Brick* doctrine, the state laws under which the *IPPs* bring their antitrust claims recognize that courts can and should apportion IPP damages to protect against duplicative damages. That is, in addition to mandatory due process principles, nearly all of the applicable state laws and cases applying them also provide grounds for the Court to reduce the IPPs' damages to avoid duplicative damages:

- **Arizona**: *Bunker's Glass Co. v. Pilkington PLC*, 75 P.3d 99, 108 (Ariz. 2003) ("The risk of multiple liability for Defendants…is a legitimate concern. It is not, however, a problem that our trials courts are incompetent to handle. Indeed, most of the *Illinois Brick* repealer states leave the solution to the double recovery problem to the courts.").

- **California**: "In instances where multiple levels of purchasers have sued, … defendants may assert a pass-on defense as needed to avoid duplication in the recovery of damages." *Clayworth v. Pfizer, Inc.*, 49 Cal. 4th 758, 787 (2010); *In re TFT-LCD (Flat Panel) Antitrust Litigation*, M 07-1827, 2012 WL 6709621, at *2 (N.D. Cal. Dec. 26, 2012), *aff'd*, 637 F. App'x 981 (9th Cir. 2016) (citing *Clayworth* and "conclude[ing] that defendants have demonstrated that it is appropriate under the circumstances of this MDL to permit defendants to assert a pass-on defense as to the California claims"); *see also Humana Inc. v. Bausch Health Companies Inc.*, 2023 WL 4552005, at *7 (Cal. Super. July 5, 2023) ("if multiple levels of a distribution chain are plaintiffs, actual damages (as distinct from treble damages) should be apportioned. . . . There is no reason why this should change if, as here, the direct purchasers are in federal court and the indirect purchasers in state court[.]").

- **District of Columbia**: "In actions where both direct and indirect purchasers are involved, a defendant shall be entitled to prove as a partial or complete defense to a claim for damages that the illegal overcharge has been passed on to others who are themselves entitled to recover so as to avoid duplication of recovery of damages." D.C. Code § 28-4509(b); *Goda v. Abbott Labs*, No. 01445-cv-96, 1997 WL 156541, at *2 (D.C. Super. Ct. Feb. 3, 1997) ("[T]he District of Columbia legislature opted . . . **in favor of apportionment** among the *de facto* victims of the overcharge . . . Safeguards against the risk of multiple liability are set forth in sections 28-4509(b) & (c), thus greatly reducing if not entirely eliminating the apprehensions of *Illinois Brick*."); *Holder v. Archer Daniels Midland Co.* No. 96-cv-2975, 1998 WL

---

[25] IPPs can cite no authority in support of their argument that Irico must locate a "federal policy" favoring apportionment of damages as to their *state law* antitrust claims. As demonstrated above, though, the Fifth Amendment's Due Process Clause requires apportionment of damages.

1469620, at *5 (D.C. Super. Ct. Nov. 4, 1998) (quoting *Goda* at *2) ("Sections 28-4509(b) & (c) provide further safeguards for defendants by permitting them to avoid duplication of recovery of damages, thereby 'greatly reducing if not entirely eliminating' one of the concerns that motivated the *Illinois Brick* decision."); *In re Vitamins Antitrust Litigation*, 259 F. Supp. 2d 1, 3–4, 9 (D.D.C. 2003) (denying plaintiff's motion to exclude evidence of pass through of defendants' overcharges, in part, because twelve *Illinois Brick* repealers, including D.C. Code § 28-4509(b), either allow for pass through defenses or prohibit double recovery).

- **Florida**: *Mack v. Bristol-Myers Squibb Co.*, 673 So.2d 100, 108 (Fla. Dist. Ct. App. 1996) (acknowledging that the "possibility of multiple liability for defendants, and the prospects of inconsistent and duplicative federal and state judgments" are "valid policy considerations under state antitrust or deceptive trade practices"); *FTC v. Mylan Laboratories, Inc.*, 62 F. Supp. 2d 25, 45 (D.D.C. 1999) (noting that indirect purchaser actions under the FDUTPA "increases the risk of duplicative recovery").

- **Hawaii**: "In any lawsuit or lawsuits in which claims are asserted by both direct purchasers and indirect purchasers, the court is authorized to exercise its discretion in the apportionment of damages, and in the transfer and consolidation of cases to avoid the duplication of the recovery of damages and the multiplicity of suits, and in other respects to obtain substantial fairness" Haw. Rev. Stat. § 480-13(c)(5).

- **Iowa**: "[D]istrict courts are fully capable of ensuring antitrust defendants are not forced to pay more in damages than amounts to which the injured parties are entitled." *Comes v. Microsoft Corp.*, 646 N.W.2d 440, 449-50 (Iowa 2002); *see also Team Cent., Inc. v. Teamco, Inc.*, 271 N.W.2d 914, 925 (Iowa 1978) ("The purpose of damages is to restore an injured party to the position he enjoyed before his injury. Duplicative or overlapping damages are to be avoided.").

- **Maine**: *Mylan Labs*, 62 F. Supp. 2d at 43, 48 (dismissing Maine attorney general's suit on behalf of indirect purchasers under Maine's *Illinois Brick* repealer statute because, *inter alia*, allowing the suit to proceed would "increase the risk of duplicative recovery").

- **Michigan**: "[T]he Court is persuaded that Michigan law only permits the recovery of 'actual damages' for antitrust claims. As such, … the Court finds that defendants can challenge plaintiff's damage estimates with a pass through defense." *In re Vitamins Antitrust Litigation*, 259 F. Supp. 2d 1, 8–9 (D.D.C. 2003); *In re TFT-LCD (Flat Panel) Antitrust Litigation*, M 07-1827, 2012 WL 6709621, at *4 (N.D. Cal. Dec. 26, 2012), *aff'd*, 637 F. App'x 981 (9th Cir. 2016) ("The Court agrees with Judge Hogan's reasoning [construing Michigan antitrust law in *In re Vitamins*], and holds that defendants may present evidence of downstream pass-on."); *In re Niaspan Antitrust Litig.*, No. 13-md-2460, 2018 U.S. Dist. LEXIS 55298, at *4 (E.D. Pa. Mar. 20, 2018) (agreeing with and adopting *In re Vitamins* and *In re TFT-LCD*'s above interpretation of Michigan state antitrust law).

- **Minnesota**: "In any subsequent action arising from the same conduct, the court may take any steps necessary to avoid duplicative recovery against a defendant." Minn. Stat. § 325D.57 *In re TFT-LCD*, 2012 WL 6709621 at *2 (internal quotations omitted) ("The Court concludes that allowing a pass-on defense is consistent with the Minnesota Antitrust Act because plaintiffs will recover their 'actual damages sustained.' The statute expressly permits the court to 'take any steps necessary to avoid duplicative recovery against a defendant.' Here, where multiple levels of purchasers have sued defendants alleging identical and/or overlapping claims, consideration of pass-on is necessary to avoid duplicative recovery.");

**JOINT CASE MANAGEMENT STATEMENT**
**PURSUANT TO ORDER ADOPTING DAMAGES MODEL (ECF NO. 6516)**
**MASTER FILE NO. 07-CV-5944-JST; MDL NO. 1917**

- **Mississippi**: *In re Packaged Seafood Antitrust Litig.*, 332 F.R.D. 308, 338 (S.D. Cal. 2019) (noting that litigants have located only two states (not Mississippi) with *Illinois Brick* repealer statutes where state courts have blocked defendants from asserting pass-on defenses against indirect purchaser plaintiffs);

- **Nebraska**: "The court may transfer and consolidate such claims, apportion damages, and delay disbursement of damages to avoid multiplicity of suits and duplication of recovery of damages and to obtain substantial fairness" Neb. Rev. Stat. § 59-821(2).

- **Nevada**: *In re Packaged Seafood*, 332 F.R.D. at 338 (noting that litigants can only locate two states (not Nevada) with *Illinois Brick* repealer statutes where state courts have blocked defendants from asserting pass-on defenses against indirect purchaser plaintiffs);

- **New Mexico**: "In any action under this section, any defendant, as a partial or complete defense against a damage claim, may, in order to avoid duplicative liability, be entitled to prove that the plaintiff purchaser or seller in the chain of manufacture, production, or distribution who paid any overcharge or received any underpayment, passed on all or any part of such overcharge or underpayment to another purchaser or seller in such chain." N.M. Stat. Ann. § 57-1-3; ABA Section of Antitrust Law, STATE ANTITRUST PRACTICE AND STATUTES (4th ed. 2009) § 34-14 ("The amendment . . . provides that a defendant, to avoid duplicative liability, is entitled to prove that the plaintiff passed on all or any part of an overcharge to purchasers.").

- **New York**: "[I]n any action in which claims are asserted against a defendant by both direct and indirect purchasers, the court shall take all steps necessary to avoid duplicate liability[.]" N.Y. Gen. Bus. Law § 340(6); *In re TFT-LCD (Flat Panel) Antitrust Litigation*, M 07-1827, 2012 WL 6709621, at *3 (N.D. Cal. Dec. 26, 2012), *aff'd*, 637 F. App'x 981 (9th Cir. 2016) (permitting defendants to assert pass-on defense against IPP claims under New York state law to avoid duplicative recovery).

- **North Carolina**: *In re Packaged Seafood*, 332 F.R.D. at 338 (noting that litigants can only locate two states (not North Carolina) with *Illinois Brick* repealer statutes where state courts have blocked defendants from asserting pass-on defenses against indirect purchaser plaintiffs);

- **North Dakota**: "In any action for damages under this section, any defendant, as a partial or complete defense against a claim for damages, is entitled to prove that the plaintiff purchaser, or seller in the chain of manufacture, production, or distribution, who paid any overcharge or received any underpayment passed on all or any part of the overcharge or underpayment to another purchaser or seller in that action." N.D.C.C. § 51-08.1-08(5).

- **South Dakota**: *Mylan Labs*, 62 F. Supp. 2d at 43, 48 (noting that "providing monetary relief to indirect purchasers increases the risk of duplicative recovery" in suit where, *inter alia*, South Dakota attorney general is pursuing action under the state's *Illinois Brick* repealer statute on behalf of indirect purchasers); *In re Packaged Seafood*, 332 F.R.D. at 338 (noting that litigants can locate only two states (and not South Dakota) with *Illinois Brick* repealer statutes where state courts have blocked defendants from asserting pass-on defenses against indirect purchaser plaintiffs);

- **Tennessee**: *Freeman Indus., LLC v. Eastman Chem. Co.*, 172 S.W.3d 512, 517 (Tenn. 2005) (noting that "[o]ur trial courts . . . are capable to handle such a problem [of multiple liability[,]" in part, because "many *Illinois Brick Co.* repealer statutes leave the risk of multiple liability to the trial courts.").

- **Vermont**: "The court shall take all necessary steps to avoid duplicate liability." 9 Vt. Stat. Ann. § 2465(b).
- **West Virginia**: *Mylan Labs*, 62 F. Supp. 2d at 43, 48 ("providing monetary relief to indirect purchasers increases the risk of duplicative recovery" in suit where, *inter alia*, West Virginia attorney general is pursuing action under the state's *Illinois Brick* repealer statute on behalf of indirect purchasers); *In re Packaged Seafood*, 332 F.R.D. at 338 (noting that litigants could locate only two states with *Illinois Brick* repealer statutes where state courts have blocked defendants from asserting pass-on defenses against indirect purchaser plaintiffs);

By contrast, other authorities do not support allowing the IPPs to recover duplicative damages against Irico. For instance, in *In re HIV Antitrust Litigation*, where the court granted motions to *limine* the defendants' pass-on and duplicative-recovery defenses, the court acknowledged that its decision did not decide the due process issues—"*i.e.*, that there could be a due process violation if Defendants were subject to treble damages under federal law for the direct purchasers' claims and then treble damages under state law for the indirect purchasers' claims"— because the defendants had not timely raised that argument. No. 19-CV-02573, 2023 WL 3011624, at *4 (N.D. Cal. Apr. 18, 2023).[26] *HIV* thus does not resolve the due process issues that preclude the award of duplicative damages in this case, where Irico has timely raised the argument in its past damages brief and here again.[27] As other courts have recognized, the *HIV* court's analysis is also neither controlling nor correct. A California court outrightly rejected the *HIV* court's analysis, holding that a defendant cannot "be required to pay duplicative actual damages;" otherwise, under

---

[26] The products and transactions in that case also meaningfully differed in nature: the IPPs in that case were third-party payors who had paid for prescription drugs and the pass-on issue was "whether an antitrust defendant can claim a pass-on of an overcharge via a premium." 2023 WL 3011624, at *1. Unlike the claimed passed-on overcharges in this case, the court agreed with other courts that "insurance premiums are not a pass on of alleged overcharges because premiums are set by anticipating future projected costs, not to recover money that insurers paid in the past." *Id.* (quoting *In re Asacol Antitrust Litig.*, No. 15-12730, 2017 53695 (D. Mass. Jan. 4, 2017)).

[27] Nor does *Crown Oil Corp. v. Superior Court*, where defendants argued that the Cartwright Act, by providing a cause of action to indirect purchasers for price-fixed overcharges, "violates due process" because "antitrust overcharges and penalties result in one common fund [and] if that common fund is distributed to direct purchasers in federal actions, a subsequent award to indirect consumers in state actions raises the specter of double recovery." (1986) 177 Cal.App.3d 604, 613, 223 Cal.Rptr. 164. Because the litigation was at the pleadings stage, "the potential for multiple liability" was "sheer speculation." Thus, the could not find—and therefore left open the possibility— that a "federal award may be used to offset a state award"

**JOINT CASE MANAGEMENT STATEMENT**
**PURSUANT TO ORDER ADOPTING DAMAGES MODEL (ECF NO. 6516)**
**MASTER FILE NO. 07-CV-5944-JST; MDL NO. 1917**

*HIV*'s "theory, others, representing multiple layers of intermediaries [in addition to IPPs and DPPs], could also collect the entirety of the overcharge," which is clearly contrary to controlling California law, under which IPPs also bring a claim here. *Humana Inc. v. Bausch Health Companies Inc.*, No. HG21087971, 2023 WL 4552005, at *7 (Cal. Super. July 05, 2023).

This case is, instead, much closer to *In re TFT-LCD (Flat Panel) Antitrust Litigation*. Factually, the two cases are comparable; both deal with the alleged price fixing of electronic components. In *In re TFT-LCD*, the court permitted the defendants to assert a pass-on defense against IPPs seeking antitrust damages under California state law given the "very real prospect of duplicative recovery because defendants have been sued by multiple levels of purchasers alleging overlapping and/or identical claims. . . . For example, Dell has sued defendants alleging direct purchaser claims over its purchases of LCD panels that Dell incorporated into notebook computers; Best Buy alleges indirect purchaser claims against defendants regarding its purchases of notebook computers from Dell." *TFT-LCD*, 2012 WL 67096212 at *2 & *2 fn. 3; *see also In re Packaged Seafood Products Antitrust Litig.*, 332 F.R.D. 308, 338 (S.D. Cal. 2019) (because "[m]ultiple levels of purchasers—direct purchasers, indirect commercial foods purchasers, and end-payer purchasers—have sued in this case[,] [d]amages may be required to be allocated among the various levels of injured purchasers.").

**D.    IPPs' arguments and authorities do not overcome the due process and state law grounds for apportioning damages.**

Contrary to IPPs' arguments, apportioning damages to solve for duplicative recovery does not "negate" the repealer statutes. As noted above, *HIV*, the one case that IPPs cite for this proposition, *id.*, was rejected by *Humana* and did not decide the due process issues that Irico has timely raised here because the due process issues were not timely raised in that case.[28] The *Illinois*

---

[28] *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 11-cv-5765, 2013 WL 257148 (N.D. Cal. Jan. 23, 2013), which the IPPs cite for the proposition that duplicative recovery is inevitable, *supra* at 9–10, is inapposite for the simple reason that, unlike Irico, the defendant there had "not provided a legal basis, under federal or state law" for its duplicative recovery defense. *In re TFT-LCD*, 2013 WL 257148 at *1. In *In re Propranolol Antitrust Litig.*, which IPPs cite for the same proposition, *supra* at 10 n.9, the court was simply making the point that the prospect of duplicative recovery would not

38

**JOINT CASE MANAGEMENT STATEMENT**
**PURSUANT TO ORDER ADOPTING DAMAGES MODEL (ECF NO. 6516)**
**MASTER FILE NO. 07-CV-5944-JST; MDL NO. 1917**

*Brick* repealer statutes themselves recognize that the dual system of state and federal antitrust laws post-*Illinois Brick* "necessarily" creates the prospect of duplicative recovery and, in response, expressly provide recourse to avoid duplicative recovery and that courts should apportion damages precisely so that indirect purchasers can prosecute claims without subjecting defendants to multiple liability.

*In Re Lidoderm Antitrust Litig.*, which IPPs cite, makes this point by referencing the state laws themselves: "DPPs are entitled to recover the full amount of the overcharges (if proved) and the EPPs are entitled to recover the amount of the overcharges they paid *(consistent with the underlying state laws).*" No. 14-MD-02521-WHO, 2018 WL 7814761, at *4 (N.D. Cal. Feb. 7, 2018) (emphasis added).  IPPs are entitled to the amount of the alleged overcharges they paid, consistent with *Illinois Brick* repealer statutes that, either expressly or as interpreted through caselaw, instruct the courts to apportion damages so as to avoid duplicative recovery.  *In re Zetia (Ezetimibe) Antitrust Litig.*, also cited by IPPs, does not stand for the proposition that apportionment is never appropriate.  Rather, it makes the same observation that Irico observes here: "many of the cited statutes . . . confer authority on the court to use its discretion to take steps it finds necessary to prevent duplicative recoveries." No. 2:18-md-2836, 2023 WL 3064462, at *4 (E.D. Va. Apr. 18, 2023).

Despite IPPs' assertions to the contrary, there is no meaningful distinction between the apportionment of damages between direct and indirect purchasers when the direct purchasers sue under federal law, versus when the direct purchasers sue under state law. *See In re Vitamins*, 259 F.

---

be a bar to plaintiffs' standing to prosecute state antitrust lawsuits.  249 F. Supp. 3d 712 (S.D.N.Y. 2017).  The issue here is not standing.  The question presented here is different: whether the damages awarded to IPPs should be apportioned to avoid duplicative recovery.  IPPs' citation to *Lorix v. Crompton Corp.,* 736 N.W.2d 619, 631 (Minn. 2007), including the *Lorix* court's observation about the purportedly unique position of end users, is misplaced for the same reason as their citation to *Propranolol*, as the *Lorix* court was also adjudicating antitrust standing under state law.  Antitrust standing cases—and, for that matter, cases like *California v. ARC Am. Corp.*, which stands for the general proposition that *Illinois Brick* did not preempt indirect purchaser suits under state law, 490 U.S. 93, 103-04  (1989)—address distinct issues and do not control the issue of apportioning for duplicative damages.

**JOINT CASE MANAGEMENT STATEMENT**
**PURSUANT TO ORDER ADOPTING DAMAGES MODEL (ECF NO. 6516)**
**MASTER FILE NO. 07-CV-5944-JST; MDL NO. 1917**

Supp.at 2, 3–4, 9 (D.D.C. 2003) (denying plaintiff's motion to exclude evidence of pass through of defendants' overcharges in action involving direct purchaser claims under federal law, and indirect purchaser claims under state law).  The *HIV* court's policy-driven interpretation of the phrase "direct purchaser" in D.C. Code § 28-4509(b) is unpersuasive. *Supra* (citing *HIV*,  2023 WL 3011624, at \*3–4).  The statute uses the phrase "direct purchasers," *not* "direct purchasers *pursuing claims under this statute*."

The *Humana* Court had it right. The appropriateness of apportionment does not depend on whether the direct purchasers have sued under state or federal law.  It is to accommodate "the general rule that prohibits duplicative payment for causing the same injury." *Humana*, 2023 WL 4552005 at \*7.

Courts applying *Illinois Brick* repealer statutes can apportion damages to accommodate damages awarded to purchasers both up and down the chain.  This is because there is no material distinction, under state law, between pass-on defenses to accommodate indirect purchasers lower in the chain and apportionment to accommodate damages awarded to direct purchasers.

Neither *Clayworth v. Pfizer* nor *In re TFT-LCD*,  2012 WL 6709621), both of which IPPs cite to advance their argument here, foreclose the possibility of apportionment to accommodate damages awarded to direct purchasers.  The issue, in both instances, is duplicative recovery. *See Bunker's Glass*, 75 P.3d at 108 ("The risk of ***multiple liability*** for Defendants…is a legitimate concern") (emphasis added); *Mack*, 673 So.2d at 108 (acknowledging that the "***possibility of multiple liability*** for defendants") (emphasis added); Haw. Rev. Stat. § 480-13(c)(5) (allowing apportionment to "to avoid the ***duplication of the recovery*** of damages") (emphasis added); N.Y. Gen. Bus. Law § 340(6) "[I]n any action in which claims are asserted against a defendant by both direct and indirect purchasers, the court shall take all steps necessary to ***avoid duplicate liability***[.]" (emphasis added);  9 Vt. Stat. Ann. § 2465(b) ("The court shall take all necessary steps to ***avoid duplicate liability***.") (emphasis added).

In sum, here, due process and the applicable state laws require reducing IPP damages by all amounts that overlap with the DPP damages.

**E.**       <u>Irico previously provided, and sets forth here again, a well-reasoned and feasible method for apportionment.</u>

There are two aspects of both the IPPs' and DPPs' damages calculations: (1) the overcharge percentage and (2) the volume of purchases or commerce. Both aspects are duplicative in nature between the IPPs and DPPs, but in differing ways. The Court has decided to account for duplication on the overcharge percentage by adopting a single model for both classes.

The second half of the equation—the volume of purchases—is also directly impacted by the duplicative damages issue discussed above, where the IPPs and DPPs seek overlapping overcharge damages for the same purchases. The Court can apportion IPP damages to avoid duplicative damages in accord with due process and the applicable state laws, by deducting all overlapping DPP damages from IPP damages. In a previously filed declaration (ECF No. 6467-1 and reattached here as <u>Irico Exhibit 400</u> for ease of reference), Irico's expert provided a methodology, based on public data, that should be used to estimate the magnitude of overlapping DPP and IPP damages. ECF No. 6467-1, Irico Ex. 400, Guerin-Calvert Decl. ¶¶ 9-15.

This methodology includes two steps. IPPs are not claiming damages on exported CRTs, and on this basis there would be no overlap for such products. Thus, in the first step, Irico's expert relied on Census data[29] to estimate the share of CRTs purchased directly in the U.S. by DPPs that were ultimately sold to consumers **outside** the U.S. (*i.e.*, exported). This step yields estimates that at most 34.4% of CDTs and CRT monitors and at most 7.2% of CPTs and CRT TVs that were purchased directly in the U.S. by DPPs were exported. This results in estimates that at least 65.6% of CDTs and CRT monitors and at least 92.8% of CPTs and CRT TVs, purchased directly in the U.S. by DPPs, were ultimately sold **inside** the U.S. Some of these CRTs (including in finished products) may not have been ultimately sold to IPPs. Thus, in the second step, Guerin-Calvert estimates the share of such CRTs that *were* ultimately sold to IPPs using share estimates previously

---

[29] As part of the Parties' Stipulated Undisputed Facts regarding Damages Hearing, the Parties have stipulated to data from the Census Bureau and U.S. Bureau of Economic Analysis. ECF No. 6460 ¶¶ 2-3.

**JOINT CASE MANAGEMENT STATEMENT**
**PURSUANT TO ORDER ADOPTING DAMAGES MODEL (ECF NO. 6516)**
**MASTER FILE NO. 07-CV-5944-JST; MDL NO. 1917**

prepared by IPP expert Netz. This estimate is 42%. These share estimates can be combined to yield the following baseline general formulas for the estimated duplicative damages.

$$CDTs: Estimated\ Duplicative\ Damages\ = 27.6\% * DPP\ Damages$$

$$CPTs: Estimated\ Duplicative\ Damages\ = 39.0\% * DPP\ Damages$$

Irico Ex. 400, Guerin-Calvert Decl. ¶ 14. While they dispute apportionment, IPPs do not dispute these formulas.

Pursuant to due process and the applicable state laws, any estimated duplicative damages should then be deducted from any IPP damages, before any trebling. Those deductions result in the following IPP damages, calculated for both DPP damages figures (first, the DPPs' claimed damages at trial of $1.011B and second, the DPPs' currently claimed damages of $1.177B):

| | Formula | CDTs | CPTs | Total |
|---|---|---|---|---|
| IPP Estimated Damages | [A] | $1,330,995,310 | $515,186,819 | $1,846,182,129 |
| DPP Estimated Damages based on DPP Damages of $1.011B | [B] | $381,949,903 | $629,512,222 | $1,011,462,125 |
| Estimated Duplicative Damages Share | [C] | 27.6% | 39.0% | - |
| Estimated IPP Duplicative Damages based on DPP Damages of $1.011B | [D] = [B] * [C] | $105,250,412 | $245,351,063 | $350,601,474 |
| IPP Reduced Damages after Deducting Duplicative Damages from Calculation of $1.846B in IPP Damages | [E] = [A] - [D] | $1,225,744,898 | $269,835,757 | **$1,495,580,655** |
| IPP Estimated Damages | [F] | $1,330,995,310 | $515,186,819 | $1,846,182,129 |
| DPP Estimated Damages based on DPP Damages of $1.177B | [G] | $515,922,948 | $661,522,899 | $1,177,445,848 |
| Estimated Duplicative Damages Share | [H] | 27.6% | 39.0% | - |
| Estimated IPP Duplicative Damages based on DPP Damages of $1.177B | [I] = [G] * [H] | $142,168,128 | $257,827,157 | $399,995,285 |
| IPP Reduced Damages after Deducting Duplicative Damages from Calculation of $1.846B in IPP Damages | [J] = [F] - [I] | $1,188,827,182 | $257,359,663 | **$1,446,186,844** |

**JOINT CASE MANAGEMENT STATEMENT**
**PURSUANT TO ORDER ADOPTING DAMAGES MODEL (ECF NO. 6516)**
**MASTER FILE NO. 07-CV-5944-JST; MDL NO. 1917**

Based on this well-reasoned and feasible methodology, the Court should reduce the pre-trebled IPP damages as set forth above. Should the base damages figures change, the duplicative damages amounts may also change, and further briefing may be required to clarify and modify the duplicative damages figures for the Court.

**III.    Based on the IPPs' pleadings and the applicable statutes, the IPPs are not entitled to treble damages for 14 IPP states.**

IPPs concede that they cannot recover treble damages under the laws of five of its IPP states, with which Irico agrees. Irico addresses further below IPPs' argument that it should recover penalties in one of those states, Mississippi. IPPs, instead, seek treble damages in 17 states. Irico disputes IPPs' ability to recover treble damages in 9 of those 17 states, as set forth below and also in the chart attached as Irico Exhibit A. In total, IPPs cannot recover treble damages under the laws of 14 states (5 undisputed plus 9 disputed).

Not all state laws, under which IPP bring claims, provide for automatic trebling of antitrust damages. Instead, some laws either: (a) do not provide for treble damages at all; (b) require an additional fact-finding of "flagrant" and/or "willful" conduct for treble damages; (c) leave it to the discretion of the court or factfinder; or (d) in the case of New York law, prohibit treble damages for antitrust classes.

On the first category, the following five states do not provide for treble damages or limit punitive damages:

- **Florida:** "In any action brought by a person who has suffered a loss … such person may recover actual damages, plus attorney's fees and court costs," with no provision for trebled, exemplary or punitive damages. Fla. Stat. Ann. § 501.211(2).[30] *See, e.g. Applya Corp. v. TBG Tech Co.*, 1:23-cv-21290, 2024 WL 3636624, at *3 (S.D. Fla. Aug. 2, 2024) (*vacated on other grounds* by 2025 WL 40821 (N.D. Cal. Jan. 7, 2025)) (denying plaintiff's request for treble damages because "the remedies provision of FDUTPA does not mention treble damages; nor has [plaintiff] provided authority to support an award of treble damages on this basis."); *Davis v. Avoo, Inc.* No. 8:10–cv–2352, 2011 WL 4063282, at *4 n.12 (M.D. Fla. Sept. 13, 2011) (noting that the FDUTPA does not allow individuals to recovery discretionary treble damages).

_____

[30] The IPPs only bring a claim under Florida's consumer protection statute and do not bring a Florida antitrust claim. *See* ECF No. 5589 at ¶ 282.

- **Hawaii:** "[I]ndirect purchasers injured by an illegal overcharge shall recover only compensatory damages …." Haw. Rev. Stat. § 480-13.

- **Mississippi:** "Any person … may recover all damages of every kind sustained by him and in addition **a penalty of five hundred dollars** . . . such penalty may be recovered in each instance of injury." Miss. Code. Ann. §75-21-9 (emphasis added); *see also* ABA Section of Antitrust Law, STATE ANTITRUST PRACTICE AND STATUTES (4th ed. 2009) § 27-16 ("Thus, it could be argued that a party can recover only actual, and not treble, damages under this provision.").

- **Nebraska:** "Any person … shall recover actual damages or liquidated damages in an amount which bears a reasonable relation to the actual damages which have been sustained … including a reasonable attorney's fee," with no provision for trebled, exemplary or punitive damages. Nebraska Rev. Stat. § 59-821; *see also* Neb. Rev. Stat. §59-1609 ("any person who is injured … may bring a civil action … to recover the actual damages … costs of the suit, including a reasonable attorney's fee, and the court may in its discretion, increase the award of damages to an amount which bears a reasonable relation to the actual damages … except that such increased award … **shall not exceed one thousand dollars.**" (emphasis added)); STATE ANTITRUST PRACTICE AND STATUTES § 30-16 ("Treble damages . . . are no longer available to private plaintiffs [under Nebraska's antitrust law].").

- **Tennessee:** "Any person who is injured by any such arrangement, contract, agreement, trust … may sue for and recover … the full consideration of sum paid by the person for any goods, wares, merchandise, or articles, the sale of which is controlled by such combination or trust," with no provision for trebled, exemplary or punitive damages for private causes of action. Tennessee Code Ann. §47-25-106(a).[31]

On the second category, the Court has already found that, upon default and the Court's bar of evidence implicated by the Court's ordered sanctions, the issue of "whether Irico's conduct was flagrant and/or willful, as relevant to the award of non-automatic trebled damages under certain state laws underlying the IPPs' claims … may be argued but ***depend[s] on what is contained in the pleadings***." ECF No. 6459 at 2 (emphasis added); *see also* Ex. 413, Feb 5, 2025 CMC Tr. at 28:9-16 ("On the -- on the willful and flagrant, I believe the complaint alleges willful but doesn't allege flagrant. … THE COURT: Okay. And that's an allegations of the complaint issue. That's not an evidentiary issue."); *id.* at 35:20-36:5 ("Based on Mr. Margulies's comments, this seems to me to be a very simple -- perhaps consequential but nonetheless simple question for the Court, and that is, I read the complaint, and I -- and I look again at the legal standard in a default proceeding, and I decide

---

[31] By way of contrast, the Tennessee Trade Practices Act permits treble damages in *parens patriae* suits. Tennessee Code Ann. §47-25-106(b).

whether your complaint satisfies that standard. And if Mr. Margulies wants to say, no, it doesn't, and you want to -- you know, that seems to me not to be in any way implicated by whatever the sanction order was. MR. ALIOTO: I agree with that analysis, Your Honor. It's certainly not an expert issue.").

Although IPPs attempt to cite evidence outside of their pleadings, that purported evidence cannot be the basis for awarding any treble damages under the governing standard.

Under that standard, to recover treble damages, the IPPs must have pleaded that the Irico Defendants' conduct was "willful" or "flagrant" under the following five state laws.[32] *See, e.g. In re HIV Antitrust Litig.* No. 19-cv-02573, 2022 WL 22609107, at *15 (N.D. Cal. Sept. 27, 2022) (noting that some "states' antitrust laws limit damages to actual damage or only allow for enhanced damages based on a higher showing (such as flagrant or willful conduct)"). As shown below, the IPPs in all of the below states ***have not*** so alleged and, thus, cannot be awarded treble damages for those claims. *See* IPP Compl. ¶¶ 258 (Arizona), 262 (Iowa), 265 (Michigan), 285 (New Mexico), 273 (North Dakota). In fact, the term "flagrant" does not appear at all in the IPPs' live complaint and "willful" appears twice, but for claims that do not require such finding[33]—showing that the IPPs could have but failed to make that allegation for claims that require it.

---

[32] Notably, Arizona is the only state listed that mandates treble damages upon an additional "flagrant" finding; all of the other states provide that treble damages remain optional and discretionary, even after the additional finding.

[33] The IPPs allege "willful" conduct for only their claims under New York (IPP Compl. ¶ 286(m)) and Vermont (IPP Compl. ¶ 288(e)) laws. But Vermont does not require a willful showing, instead leaving it to the court's discretion. Vermont Stat. Ann. 9 § 2465(a). The New York antitrust statute likewise does not have that requirement and the IPPs do not seek treble damages under New York's consumer protection statute, which does require a "willful" finding. IPP Compl. ¶ 286(m).

**JOINT CASE MANAGEMENT STATEMENT**
**PURSUANT TO ORDER ADOPTING DAMAGES MODEL (ECF NO. 6516)**
**MASTER FILE NO. 07-CV-5944-JST; MDL NO. 1917**

| IPP State | Relevant Statute | "Willful" or "Flagrant" Pleaded? |
|---|---|---|
| Arizona | "If the trier of fact finds that the violation is flagrant, it shall increase recovery to an amount not in excess of three times the damages sustained." Ariz. Rev. Stat. §44-1408(B); *see also Western Waste Serv. Sys. v. Superior Ct. in and for Maricopa County*, 584 P.2d 554, 556 (Ariz. 1978) (defining "flagrant," as used in Ariz. Rev. Stat. §44-1408(B), as "conduct which is shocking, outrageous, or outstandingly bad."). | NO |
| Iowa | "A person who is injured may bring suit to … recover, at the court's discretion, exemplary damages which do not exceed twice the actual damages … if all of the following apply: a) the trier of fact determines that the prohibited conduct is willful or flagrant. b) the person bringing suit is not the state …." Iowa Code Ann. §553.12(3).<br><br>IPPs purport to ask for treble damages under Iowa state law.  But under Iowa law, even if IPPs were to have pled willful or flagrant conduct, which they did not, IPPs could "recover, at the court's discretion, *exemplary damages which do not exceed twice the actual damages*." Iowa Code Ann. §553.12(3) (emphasis added). Treble damages are unavailable under the relevant statute. | NO |
| Michigan | "If the trier of fact finds that the violation is flagrant, it may increase recovery to an amount not in excess of 3 times the actual damages." Michigan Antitrust Reform Act §445.778(2); *see also In re Vitamins Antitrust Litigation*, 259 F. Supp. 2d 1, 7-8 (D.D.C. 2003) (finding that this statutory provision is an "indication that the Michigan Legislature intended to limit damages and to impose damages beyond actual damage only in limited circumstances."). | NO |
| New Mexico[34] | "Any person who suffers any loss … may bring an action to recover actual damages or the sum of one hundred dollars ($100), whichever is greater. Where the trier of fact finds that the party charged … has willfully engaged in the trade practice, the court may award up to three times actual damages or three hundred dollars ($300), whichever is greater." New Mexico Stat. § 57-12-10(B). | NO |
| North Dakota | "If the trier of fact finds that the violation is flagrant, it may increase recovery to an amount not in excess of three times the damages sustained." North Dakota Cent. Code §51-08.1-08(3). | NO |

---

[34] In addition to this consumer protection claim, the IPPs have also brought a claim under New Mexico's state antitrust statute, which leaves the award of treble damages to the court's discretion, as cited below.  Irico challenges IPPs' ability to recover treble damages under both New Mexico statutes.

**JOINT CASE MANAGEMENT STATEMENT**
**PURSUANT TO ORDER ADOPTING DAMAGES MODEL (ECF NO. 6516)**
**MASTER FILE NO. 07-CV-5944-JST; MDL NO. 1917**

IPPs nonetheless argue that they have otherwise alleged that Irico acted "flagrantly" and/or "willfully." But their allegations as to *Irico* tell a different story. As to IPPs' substantive allegations, Irico specifically appears in only two paragraphs in IPPs' complaint of 296 paragraphs. And those allegations as to Irico consist of recitations that Irico attended meetings and agreed on prices and supply levels, but nothing more than that. ECF No. 5589 ¶¶ 150a–b, 185. If, as IPPs argue, agreeing to prices and being found liable for the underlying antitrust violation are enough to satisfy the heightened findings under those state laws for treble damages, then that completely nullifies the required heightened findings under those state laws, which is not a permissible reading or application of those laws. The Court should, therefore, deny IPPs' request to treble damages for these states because IPPs have not alleged "willful" or "flagrant" conduct by Irico and IPPs' pleadings do not otherwise establish that Irico's alleged conduct was either flagrant and/or willful.

On the next category, treble damages "may" but are not required to be awarded under the following four state laws:

- **California**: "Any person … may sue … to recover three times the damages sustained by him or her, interest on his or her actual damages … and shall be awarded a reasonable attorneys fee together with the costs of the suit." California Business and Professions Code § 16750(a).

- **Kansas:** "[P]laintiff in any action … may sue for and recover treble the actual damages sustained … the plaintiff may be allowed reasonable attorney fees and costs." Kan. Stat. Ann. §50-161(b).[35]

- **New Mexico**: "[A]ny person … may bring an action for … up to threefold the damages sustained and costs and reasonable attorneys' fees. If the trier of fact finds that the facts so justify, damages may be awarded in an amount less than requested, but not less than the damages actually sustained." New Mexico Stat. Ann. § 57-1-3(A).

- **Vermont:** "Any person who sustains damages or injury … may sue and recover … the amount of his or her damages … reasonable attorney's fees, and exemplary damages, not exceeding three times the value of the consideration given or damages sustained by the aggrieved person." Vermont Stat. Ann. 9 § 2465(a).

In arguing that California and Kansas law mandate treble damages, IPPs incorrectly construe the plain text of both the Cartwright Act and the Kansas Restraint of Trade Act, neither of which

---

[35] Thus, IPPs' assertion in this Joint Case Management Statement that trebling is "mandatory" under the laws of California and Kansas is untrue.

**JOINT CASE MANAGEMENT STATEMENT**
**PURSUANT TO ORDER ADOPTING DAMAGES MODEL (ECF NO. 6516)**
**MASTER FILE NO. 07-CV-5944-JST; MDL NO. 1917**

require treble damages; that a litigant "may sue" for treble damages has no bearing on what a court must then do. IPPs can point to no authority, binding or even persuasive, holding that treble damages are mandatory under the Cartwright Act. In *Uneedus v. California Shoppers, Inc*., the Court explicitly couched its commentary on treble damages under the Cartwright Act as dicta. 150 Cal. Rptr. 596, 601-02 (Cal. Ct. App. 1978) ("[B]ecause defendant cites no authority in support of its interpretation of section 16750 and also because ***the issue of its interpretation is not presently before us***, ***we decline to consider it*** and hence decline to consider any argument by way of analogy deriving from such interpretation.") (emphasis added). Similarly, the court in *Optronic Tech. v. Ningbo Sunny Elec. Co., Ltd.* was deliberating the unrelated issue of whether evidence or arguments related to punitive damages should be allowed at trial, not the altogether different issue of whether treble damages are mandatory under the Cartwright Act. 5:16-cv-06370, 2019 WL 5269018, at *2.

That the Kansas Restraint of Trade Act "shall be construed in harmony with ruling judicial interpretations of federal antitrust law by the United States supreme court," Kan. Stat. Ann. § 50-163(b), has no bearing on treble damages where, as here, the section of the Kansas Restraint of Trade Act providing for discretionary treble damages explicitly veers from the language of the Clayton Act. *Compare* Kan. Stat. Ann. §50-161(b) ("[P]laintiff in any action … may sue for and recover treble the actual damages" with 15 U.S.C. § 15(a) ("[A]ny person who shall be injured . . . shall recover threefold the damages by him sustained . . ."). In any event, Kan. Stat. Ann. § 50-163(b) speaks of judicial interpretations of federal antitrust law, not the plain text of the Clayton Act. Treble damages are discretionary in California and Kansas, just as they are in Vermont and New Mexico.

Based on the IPPs' pleadings— which do not allege willful or flagrant conduct by Irico as to these states either and which instead allege Irico's late entry (3 years after the alleged conspiracy began) and minor role in the alleged conspiracy, where Irico is specifically alleged in just two paragraphs in the IPPs' entire complaint yet is being held liable for the entire damages award on a joint-and-several basis—discretionary treble damages are not warranted. The expert reports from both sides also confirm the Irico Defendants' minimal CPT and CDT market shares, in both markets but particularly the CDT market where Irico Group ceased production in 2002 and Irico Display had

48

**JOINT CASE MANAGEMENT STATEMENT**
**PURSUANT TO ORDER ADOPTING DAMAGES MODEL (ECF NO. 6516)**
**MASTER FILE NO. 07-CV-5944-JST; MDL NO. 1917**

no CDT production (at minimum, Irico Display should bear no liability for treble damages),[36] and the Irico Defendants' minimal participation in the alleged conspiracy meetings where issues of Irico's low quality and low prices were discussed. *See* ECF No. 6467 at 5-6. Moreover, as shown above, the duplicative trebled damages concerns, which would violate due process, likewise warrant no trebling of these state law claims.

Finally, IPPs are not entitled to treble or enhanced damages under New York state law because litigants may not obtain treble damages under the Donnelly Act when proceeding as a class. *See Sperry v. Crompton Corp.*, 8 N.Y.3d 204, 214 (2007) (finding that, because treble damages would be considered a penalty under the New York state law—and the New York state equivalent to Federal Rule 23 does not permit actions for penalties to be maintained as a class action—plaintiff class cannot recover treble damages under the Donnelly Act). The New York State Court of Appeals' decision to limit class damages under the Donnelly Act is controlling here. IPPs, litigating as a class, are not entitled to treble damages under the Donnelly Act as a matter of New York substantive law. Despite IPPs' assertion to the contrary, the question on this issue is not, as in *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393 (2010) and other cited cases, whether a class action can be maintained. The question, rather, is whether the Donnelly Act, as interpreted by New York caselaw adjudicating class actions, allows certified classes to access treble damages. IPPs also cannot recover treble damages for violations under New York law from a time period before that state's repealer law was enacted. New York passed its repealer law in 1998. See N.Y. Gen. Bus. § 340(6). The Court previously agreed with a line of cases holding that retroactive claims are not permitted under the 1998 revisions. See In re Cathode Ray Tube (CRT) Antitrust Litig., No. 07-md-5944-JST, 2013 WL 4505701, at *13 (N.D. Cal. Aug. 21, 2013); see also In re TFT-LCD (Flat Panel) Antitrust Litig., 2011 WL 3738985, *4 (N.D. Cal. Aug. 24, 2011); In re Vitamins Antitrust Litig., Misc. No. 99-197 (TFH), 2000 WL 1511376, at *5 (D.D.C. Oct. 6, 2000);

---

[36] Irico has consistently maintained its position that, at minimum, Irico Display should bear no joint and several liability for any damages and otherwise related to CDTs because it did not manufacture CDTs.

Lennon v. Philip Morris Cos., 734 N.Y.S.2d 374, 382 (N.Y. Sup. Ct. 2001) ("[C]ourts interpreting provisions of the General Business Law have rejected retroactive application of amendments creating new private rights of action . . . . Without allegations of events that postdate the 1998 amendment, the plaintiffs' complaint fails to sufficiently state a claim."). The Court should apply that decision in this action and preclude treble damages before December 3, 1998.

In sum, no trebled damages should be awarded the IPPs for 14 of the IPP states: (a) Florida, Hawaii, Mississippi, Nebraska, and Tennessee, based on no treble damages provided for by the relevant statutes; (b) Arizona, Iowa, Michigan, New Mexico (1 of 2 statutes), and North Dakota, based on their statutory requirements and the IPPs' failure to plead "willful" or "flagrant;" (c) California, Kansas, New Mexico, and Vermont, which do not mandate treble damages; and (d) New York, where treble damages are unavailable under the Donnelly Act to the IPP class.

## IV. IPPs cannot submit an entirely new theory and expert evidence, and recover, for the statutory penalties they seek for Mississippi class members.

The issue of statutory penalties under Mississippi law is entirely new to this case as of the last few weeks and was not raised prior to or even during the May 2025 evidentiary hearing on damages. *See* ECF No. 6459 (setting for the "scope of hearing"). IPPs' Mississippi penalty theory is also not alleged in IPPs' complaint, nor does it appear in IPPs' past damages brief either. In fact, IPPs' damages brief stated "Not available" for enhanced damages in Mississippi, its only reference to that IPP state. ECF No. 6471 at 41. The parties only previously agreed to defer the separate issue of trebled damages, and, as the Court recognized, the trebled damages issues "depend on what is contained in the pleadings" and not on "[e]vidence." ECF No. 6459 at 2.

Further, mid-day on the day of this filing on April 15, 2026, IPPs served for the first time a draft of a purported "damages report" from a new, never-designated expert John Palmer to support their newly disclosed theory and purported expert evidence and calculation of Mississippi statutory penalties. IPPs served the final version later on the filing day and have attached that "report" to their statement as IPP Exhibit 1. Irico objects to IPPs' reliance on that "report" to support their claims for penalties under Mississippi law. IPPs' disclosure of the Palmer "report " is untimely on many

fronts, including the long-expired expert disclosure deadlines in this case, and goes well beyond the mathematical damages calculations directed by the Court and the data and methods disclosed in the prior expert reports. The time for expert evidence, beyond mere calculations, was during the May 2025 evidentiary hearing on damages, where all parties' experts testified and the other side had the opportunity to cross-examine the experts. Irico has not had the chance to cross-examine IPPs' new expert Palmer on his opinions, methodology, data, and application of methodology to the data. Indeed, having only received the report on the day of the filing deadline of this statement, Irico has not even had a meaningful opportunity to review and respond to Palmer's asserted data and opinions as to the Mississippi penalty issue. Allowing this new, untimely expert evidence would not only be improper but also incredibly unfair and inequitable on a number of grounds. On these grounds alone, the Court should deny IPPs' request for penalties under Mississippi law.

But, even if the Court considered the merits of IPPs' new theory and asserted evidence, it should deny the penalty request. IPPs concede that they cannot seek treble damages under the Mississippi antitrust statute. Instead, the IPPs seek a $500 statutory penalty "for each Mississippi class member." Based on Palmer's new "damages report" and opinions, they estimate the number of Mississippi class members based on data and assumptions that Irico has had no opportunity to test or verify. By multiplying $500 and the estimated 586,643 class members in Mississippi, IPPs seek a total of $293,321,500 in penalties for class members from the single state of Mississippi alone. That claimed Mississippi penalty amount is ***more than seven times*** the actual damages they seek for Mississippi class members ($41,858,634). IPPs' untimely claim for this amount of statutory penalties under Mississippi law fails on multiple grounds and should be rejected.

First, as an initial matter, the penalty under the Mississippi statute is not automatic or required. *See* Miss. Code Ann. §75-21-9 ("Such penalty ***may*** be recovered in each instance of injury. . . .") (emphasis added). For the reasons set forth above that discretionary treble damages should not be awarded as a result of the scant specific allegations as to Irico and Irico's minimal role in the alleged conspiracy, the Court should not award any penalties under Mississippi law on this ground alone.

51

**JOINT CASE MANAGEMENT STATEMENT**
**PURSUANT TO ORDER ADOPTING DAMAGES MODEL (ECF NO. 6516)**
**MASTER FILE NO. 07-CV-5944-JST; MDL NO. 1917**

Second, even if the Court awarded penalties (which it should not), the amount IPPs seek—more than seven times their claimed actual, purely economic damages for Mississippi class members—unquestionably violates constitutional due process. In the Ninth Circuit and elsewhere, even penalty awards that are more than four times the amount of harm caused likely violate due process, particularly in situations where actual damages are already "substantial" or in the range of millions of dollars as is IPPs' claimed damages here; More than seven times the amount of harm caused certainly violates due process. *See Ramirez v. TransUnion LLC*, 951 F.3d 1008, 1036-38 (9th Cir. 2020), *rev'd and remanded on other grounds*, 594 U.S. 413 (2021). Palmer's and the IPPs' alternative calculation of $2,353,909,000 in their footnote would amount to ***more than 56 times*** the actual damages they seek for Mississippi class members ($41,858,634), and also clearly violates due process.

In sum, the Court should decline to award the statutory penalties IPPs seek for Mississippi class members on multiple, independent bases. They are based on entirely new theories and untimely-disclosed expert opinions that should be disregarded and rejected on those grounds alone, and they are also not required or warranted here, they unquestionably violate due process, and they are not based on any substantiated factual or evidentiary basis.

**V.   DPP damages should not exceed the amount and model DPPs claimed at trial.**

While the Court decided it was necessary to choose one model for both classes given the same underlying CRT overcharges asserted, the resulting increased damages to the DPP class—$166 million more than and in excess of the amount sought and presented by the DPPs and their expert at the damages trial—should be rejected as unsupported by the record and also independently as unfair and inequitable, particularly in this default case where among other aspects, Irico was prohibited from litigating its liability. *See In re Wolverton Assocs.*, 909 F.2d 1286, 1296 (9th Cir. 1990) (reversing and remanding the lower court's award of damages that exceeded experts' testimony at trial). Notwithstanding Irico's calculation of DPPs' damages pursuant to the revised Johnson model

**JOINT CASE MANAGEMENT STATEMENT**
**PURSUANT TO ORDER ADOPTING DAMAGES MODEL (ECF NO. 6516)**
**MASTER FILE NO. 07-CV-5944-JST; MDL NO. 1917**

adopted by the Court, the Court should, therefore, decline to award more damages to the DPP than the amount, $1.011 billion, that DPPs sought and presented at the damages trial.

**VI.    Notwithstanding that there is no judgment yet, IPPs cannot recover all of the prejudgment interest they seek.**

IPPs assert their position on prejudgment interest, yet recognize there is no judgment yet and thus no interest can be decided or awarded until post-judgment.  To the extent the Court takes up this issue pre-judgment, Irico sets forth its positions here and more fully in the chart in Irico Exhibit A. Because prejudgment interest is inherently a post-judgment issue, Irico fully reserves, without any waiver, the right to engage in further proceedings on this issue.

As more fully outlined in Irico Exhibit A, IPPs are not entitled to any prejudgment interest for their claims under thirteen of the seventeen states or jurisdictions in which they ask for it: (1) California; (2) the District of Columbia; (3) Florida; (4) Hawaii; (5) Kansas; (6) Maine; (7) Michigan; (8) Nevada; (9) New Mexico; (10) North Carolina; (11) North Dakota; (12) Tennessee; and (13) Vermont.  And to the extent that IPPs request prejudgment interest on their trebled, not actual, damages for their claims under Iowa, Michigan, and New York law, prejudgment interest must be limited to their actual damages. *Cedar Rapids Lodge & Suites, LLC v. JFS Dev., Inc.*—which IPPs cite in support of assessing prejudgment interest on treble damages—is distinguishable because, in that case, the court was assessing prejudgment interest under the federal RICO statute, not state law.  No. 09-cv-175-LRR, 2012 WL 5269015, at *5 (N.D. Iowa Oct. 24, 2012).  But "Iowa rules on prejudgment interest apply" when a federal court is assessing prejudgment interest with respect to Iowa causes of action.  *EFCO Corp. v. Symons Corp.*, 219 F.3d 734, 743 (8th Cir. 2000).

IPPs are wrong to assert that prejudgment interest is mandatory under Florida, Michigan, Nevada, and North Carolina law:

- For Florida, *see Flack v. Graham*, 461 So.2d 82, 84 (Fla. 1984) ("[I]nterest is not recovered according to a rigid theory of compensation for money withheld, but is given in response to considerations of fairness. It is denied when its exaction would be inequitable."); *Broward Cnty.*

*v. Finlayson,* 555 So.2d 1211, 1213 (Fla. 1990) (the "loss theory" used to establish prejudgment interest under Florida law is "not absolute").

- For Michigan, *see* Mich. Comp. Laws Ann. § 445.778(2) ("Any other person . . . injured directly or indirectly in his or her business or property by a violation of this act may bring an action for . . . actual damages sustained by reason of a violation of this act, and, ***as determined by the court***, interest on the damages from the date of the complaint[.]") (emphasis added).  The statute thus makes prejudgment interest—both the rate at which it should be assessed *and* whether it should be assessed in the first instance—discretionary.

- For Nevada, *see M.C. Multi-Fam. Dev., L.L.C. v. Crestdale Assocs., Ltd.*, 193 P.3d 536, 541 (Nev. 2008) (approving denial of prejudgment interest under Nevada law when amount of money due was "neither definite nor readily ascertainable until judgment.").

- And for North Carolina, *see Farmah v. Farmah*, 126 N.C.App. 210, 484 S.E.2d 96 (1997), *rev'd on different grounds by* 348 N.C. at 588, 500 S.E.2d at 663 (awarding prejudgment interest on quasi-contract claim because, inter alia, market value was "never seriously disputed by the parties" and, as such, was "clearly ascertainable").  *Farmah v. Farmah*, 348 N.C. at 588, 500 S.E.2d, the case reversing the intermediate court's decision above, includes no commentary on ascertainability. Thus, it does not help IPPs.

For these states, as well as nine states where IPPs must admit that prejudgment interest is discretionary, prejudgment interest should not be awarded.  IPPs base their arguments for pre-judgment interest on the same allegations of delay and discovery abuses that the Court found to be the bases for the terminating sanctions and default judgment against Irico.  That is, Irico has already been severely penalized by the entered default and complete inability to challenge liability.  Assessing non-required pre-judgment interest on those same bases would doubly penalize Irico and be inequitable and unfair, among other grounds.  Beyond that, IPPs base their "delay" argument on proceedings, like the FSIA motion and appeal, that were not in fact unreasonable delays but instead were good faith motion practice and litigation efforts.  *See United States v. Fidelity and Deposit Ins. Co. of Maryland,* 986 F.2d 1110, 1122 (7th Cir. 1993) (for purposes of prejudgment interest

**JOINT CASE MANAGEMENT STATEMENT**
**PURSUANT TO ORDER ADOPTING DAMAGES MODEL (ECF NO. 6516)**
**MASTER FILE NO. 07-CV-5944-JST; MDL NO. 1917**

"[n]either an honest dispute regarding the existence of a legal obligation nor the good faith defense of a lawsuit can be deemed as unreasonable and vexatious delays of payment"). IPPs have, therefore, stated no basis for pre-judgment interest for those states.

## VII.     The Court should offset past settlements from DPP and IPP damages.

Under well-established Ninth Circuit law and principles and now undisputed by the parties, $212.2 million must be deducted from DPP trebled damages, and $580.75 million must be deducted from IPP damages, after any trebling. *See* ECF Nos. 5168, 5116, 6335, 6192; *William Inglis & Sons Baking Co. v. Cont'l Baking Co.*, 981 F.2d 1023, 1024 (9th Cir. 1992) ("settlement payments should be deducted from the damages after they have been trebled."); *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 348 (1971) ("It is settled that ... a plaintiff who has recovered any item of damage from one coconspirator may not again recover the same item from another conspirator*");* *Flintkote Co. v. Lysfjord*, 246 F.2d 368, 398 (9th Cir. 1957) ("Irrespective of the nature of the cause of action, a plaintiff is entitled to one full satisfaction of his claim in an action against joint defendants); *BUC Int'l Corp. v. Int'l Yacht Council, Ltd.*, 517 F.3d 1271, 1276 n.5 (11th Cir. 2008) (distinguishing between the offsets invoked as counter demands and offsets invoked as an application of the one-satisfaction rule); *Uthe Technology Corp. v. Aetrium*, 808 F.3d 755, 759-760 (9th Cir. 2015) ("The one satisfaction rule reflects the equitable principle that a plaintiff who has received full satisfaction of its claims from one tortfeasor generally cannot sue to recover additional damages corresponding to the same injury from the remaining tortfeasors").

## VIII.    Irico agrees to defer the issue of attorneys' fees until after resolution of any appeal and believes the issue should be deferred as to both IPPs' and DPPs' fees.

Fully reserving and without waiving any arguments in response to and challenging Plaintiffs' future motions for attorneys' fees, Irico agrees at this time with IPPs' and DPPs' proposal to defer the consideration of fee issues until after any and all appeals are resolved at a time to be determined by future Court Order *only if* both IPPs and DPPs' fees are deferred, *but not if* IPPs' fees are deferred and DPPs' fees are not. While it would make sense and be efficient to defer both or litigate both classes' claimed fees at the same time, it does not make sense and would be inefficient and wasteful

of judicial and party resources to litigate them at different times, given, among other reasons, that IPPs and DPPs worked together and separately on similar tasks for which they may claim fees.  It appears that all parties agree to defer the issue of fees until after appeal as outlined above but, if one set of plaintiffs does not agree to defer until after appeal, Irico reserves the right to agree to defer the other plaintiffs' fees only.

**IX.    Regarding further proceedings, Plaintiffs are required to move for default judgment and Irico has the right to and will oppose entry of judgment and move to decertify the classes based on evidence adduced at the damages trial.**

Plaintiffs take the position that they are not required to move for default judgment or satisfy certain Ninth Circuit requirements for moving for default judgment.  They also take the position that the Court should promptly enter judgment as to both classes.  Irico disagrees and objects to any entry of default judgment without the required application for it.  First, contrary to Plaintiffs' arguments, the Court and the parties have already been operating for the last year and more under Federal Rule of Civil Procedure 55(b)(2), which provides for both a motion or application for default judgment *and* a court hearing to "determine the amount of damages," which occurred in May 2025.  Fed. R. Civ. P. 55(b)(2).  Rule 37 does not address damages for a default judgment.  Rule 55 does.  Thus, as the Court and parties have done, Rules 37 and 55 must be read together, and Rule 55 expressly provides the procedure for "Entering a Default Judgment," including a motion and a damages hearing.  *Id.*  Accordingly, in the Court's Sanctions Order, the Court itself references a "motion for default judgment."  ECF No. 6423 at 38.  None of the authorities cited by Plaintiffs clearly or otherwise do away with the requirement that they move for default judgment.  The decision in *Giampaoli v. Califano,* 628 F.2d 1190, 1193-94 (9th Cir. 1980), addressed the now-defunct Rule 55(e)'s application to a federal agency.  *Giampaoli* did not address the broader Rule 55(b), which addresses the entering of a default judgment.  And the other case cited by Plaintiffs, *Globaltranz Enters. v. Shippers Choice Glob. LLC*, No. CV-16-04038-PHX-ROS, 2017 WL 2841224 (D. Ariz. June 2, 2017), recognizes subsequent Ninth Circuit authority that is contrary to *Giampaoli* and applied Rule 55 beyond mere failures to answer a complaint.  *Id.* at *1 (*Ringgold Corp. v. Worrall*,

880 F.2d 1138 (9th Cir. 1989); *United States v. High Country Broad. Co.*, 3 F.3d 1244, 1245 (9th Cir. 1993)). Because the Court and the parties have already been proceeding under Rule 55(b)(2)'s requirements, as is proper and required, Plaintiffs are likewise required to apply or move for a default judgment under Rule 55(b)(2) and Ninth Circuit requirements for moving for default judgment.

The Court should also wait to enter any judgment until after Irico files its opposition to entry of default judgment and motion to decertify, which Irico will get on file by May 15, 2026. Rule 55 requires that Plaintiffs "must apply to the court for a default judgment," which then provides Irico the right to oppose that application. Fed. R. Civ. P. 55(b)(2). Moreover, as Plaintiffs acknowledge, Irico has the right to appeal, and entering any final judgment at different times for the DPPs and IPPs will create disconnects in the related appellate proceedings governing mostly the same appellate issues. Irico, therefore, requests that the Court require Plaintiffs to move for default judgment and satisfy all requirements, which Irico can oppose, and enter any final judgment as to the DPPs and IPPs at the same time.[37]

Irico has and reserves the right to oppose entry of default judgment on all available grounds, including opposing judgment based on class members' lack of Article III injury and moving to decertify the IPP and DPP classes on that and other grounds based on evidence adduced at the damages trial. Because Article III injury implicates the Court's subject matter jurisdiction, it cannot be waived or struck or nullified by the default entered in this case. *See Yakima Valley Mem'l Hosp. v. Washington State Dep't of Health*, 654 F.3d 919, 932 n.17 (9th Cir. 2011) (" … Article III standing is jurisdictional and can neither be waived by the parties nor ignored by the court ….").

As Irico will show, not only have Plaintiffs failed their burden to show that each class member has suffered a cognizable Article III injury in fact, but their evidence at trial demonstrates that the classes include persons who have suffered no injury. A judgment awarding class-wide damages to those persons would violate Article III, as articulated by the U.S. Supreme Court in *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021), where the Court held unequivocally that, at trial

---

[37] Irico reserves all rights, without any waiver, to challenge post-judgment interest and the date it runs from depending on when and how any judgment may be entered, among other circumstances.

57

**JOINT CASE MANAGEMENT STATEMENT**
**PURSUANT TO ORDER ADOPTING DAMAGES MODEL (ECF NO. 6516)**
**MASTER FILE NO. 07-cv-5944-JST; MDL NO. 1917**

and post-trial, "[e]very class member must have Article III standing in order to recover individual damages." *Id.* at 431. Recently, the Ninth Circuit not only endorsed *Transunion* but also extended its holding to summary judgment, requiring each and every class member to prove Article III standing at that pre-trial juncture. *Healy v. Milliman, Inc.*, 164 F.4th 701, 705 (9th Cir. 2026) ("We conclude that the logic of *TransUnion* … requires unnamed members of a certified class for money damages to demonstrate standing at summary judgment."). The failure of both Plaintiffs' class damages models to measure individual class members' injury and damages—through their reliance on average overcharges extended over a 13-year period in ways that mask undisputed and known variability—likewise requires decertification under Rule 23's predominance and other requirements. *See Comcast Corp. v. Behrend*, 569 U.S. 27, 35 (2013) ("[A]t the class-certification stage (as at trial), any model supporting a 'plaintiff's damages case must be consistent with its liability case, particularly with respect to the alleged anticompetitive effect of the violation.'"); *Bowerman v. Field Asset Servs., Inc.*, 60 F.4th 459, 469 (9th Cir. 2023) (reversing class certification order where any common questions of liability were "outweighed by the individual questions going to injury and damages").

Irico, therefore, intends to file an opposition to entry of default judgment and motion to decertify the classes on these and any other available grounds.

**JOINT CASE MANAGEMENT STATEMENT**
**PURSUANT TO ORDER ADOPTING DAMAGES MODEL (ECF NO. 6516)**
**MASTER FILE NO. 07-CV-5944-JST; MDL NO. 1917**

Respectfully submitted,

Dated: April 15, 2026               **TRUMP, ALIOTO, TRUMP & PRESCOTT LLP**

                                     */s/ Mario N. Alioto*
                                     Mario N. Alioto (56433)
                                     Lauren C. Capurro (241151)
                                     TRUMP, ALIOTO, TRUMP & PRESCOTT LLP
                                     2001 Union Street, Suite 482
                                     San Francisco, CA 94123
                                     Telephone: 415-563-7200
                                     Facsimile: 415- 346-0679
                                     Email: malioto@tatp.com
                                     laurenrussell@tatp.com

                                     ***Lead Counsel for the***
                                     ***Indirect Purchaser Plaintiffs***

Dated: April 15, 2026               **SAVERI & SAVERI, INC.**

                                     */s/ R. Alexander Saveri*
                                     R. Alexander Saveri (173102)
                                     Geoffrey C. Rushing (126910)
                                     Matthew D. Heaphy (227224)
                                     David Y. Hwu (281780)
                                     SAVERI & SAVERI, INC.
                                     1016 Lincoln Boulevard, Suite 306
                                     San Francisco, CA 94129
                                     Telephone: (415) 217-6810

                                     ***Lead Counsel for Direct Purchaser Plaintiffs***

**JOINT CASE MANAGEMENT STATEMENT
PURSUANT TO ORDER ADOPTING DAMAGES MODEL (ECF NO. 6516)
MASTER FILE NO. 07-cv-5944-JST; MDL NO. 1917**

Dated: April 15, 2026

**NORTON ROSE FULBRIGHT US LLP**

*/s/ Jeffrey B. Margulies*
JEFFREY B. MARGULIES (BAR NO. 126002)
KAYLEE YANG (BAR NO. 303464)
NORTON ROSE FULBRIGHT US LLP
555 California Street, Suite 3300
San Francisco, California 94104
Telephone: (213) 892-9200
Facsimile: (213) 892-9494
jeff.margulies@nortonrosefulbright.com
kaylee.yang@nortonrosefulbright.com

GERALDINE YOUNG (admitted *pro hac vice*)
1550 Lamar Street, Suite 2000
Houston, Texas 77010
Telephone: (713) 651-5151
Facsimile: (213) 651-5246
geraldine.young@nortonrosefulbright.com

*ATTORNEYS FOR DEFENDANTS IRICO GROUP CORP. AND IRICO DISPLAY DEVICES CO., LTD.*

60
**JOINT CASE MANAGEMENT STATEMENT**
**PURSUANT TO ORDER ADOPTING DAMAGES MODEL (ECF NO. 6516)**
**MASTER FILE NO. 07-CV-5944-JST; MDL NO. 1917**

**ATTESTATION**

I, Geraldine W. Young, hereby attest, pursuant to United States District Court, Northern District of California Civil Local Rule 5-1(i)(3), that concurrence in the filing of this document has been obtained from the Signatories hereto.

By:    */s/ Geraldine W. Young*
Geraldine W. Young

**JOINT CASE MANAGEMENT STATEMENT**
**PURSUANT TO ORDER ADOPTING DAMAGES MODEL (ECF NO. 6516)**
**MASTER FILE NO. 07-CV-5944-JST; MDL NO. 1917**