# IPP

# Exhibit 1

MARIO N. ALIOTO (56433)
LAUREN C. CAPURRO (241151)
TRUMP, ALIOTO, TRUMP & PRESCOTT, LLP
2001 Union Street, Suite 482
San Francisco, CA  94123
Telephone: (415) 563-7200
Facsimile: (415) 346-0679
E-mail: malioto@aliotolaw.net
laurencapurro@aliotolaw.net

*Lead Counsel for the Indirect Purchaser Plaintiffs*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| In re: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Master File No. 4:07-cv-05944-JST<br><br>MDL No. 1917 |
| This Document Relates to:<br><br>ALL INDIRECT PURCHASER ACTIONS | **Expert Report of Joshua L. Palmer, Ph.D. Regarding the Calculation of the Indirect Purchaser Plaintiffs' Damages**<br><br><br>Judge: Hon. Jon S. Tigar |

## I. Introduction, Assignment and Qualifications

1. I, Joshua Palmer, am a partner at applEcon, LLC.

2. Counsel has asked that I explain how the Court's order to modify Dr. Johnson's overcharge model was applied to arrive at the modified IPP class damages.

3. Counsel has also asked that I provide an estimate on the quantity of cathode ray tube ("CRT") product purchases in Mississippi during the class period and the number of class members in Mississippi.

4. I received a B.A. (2000) from the University of Michigan in Economics and Psychology and a Ph.D. (2011) from the University of California, Berkeley. My doctoral fields were industrial organization, which focuses on firms and markets, including competition between firms, and behavioral economics, which focuses on the psychological influences on economic decision-making.

5. My professional experience has focused on the economic analysis of complex antitrust issues. Since 2011, I have served as a Senior Economist at applEcon, LLC. In this capacity, I have directed economic analysis in dozens of matters requiring an analysis of competition, including claims of monopolization and cartelization. I have directed research on defining relevant markets, assessing harm to competition and consumers, evaluating causation in fact, and determining damages. I have done so in named plaintiff, collective actions, and class actions.

6. I have also been retained as an expert in multiple matters. My assignments in these matters have included (or are to include) developing statistical sampling techniques, assessing causation, calculating damages and explaining the concept of economic competition. I have testified by deposition in Shepler's Inc. and Mackinac Island Ferry Company v. City of Mackinac Island.

7. Beyond my consulting work, I taught Industrial Organization and Public Policy to undergraduate students at the University of California, Berkeley. My practical experience is further informed by my time as an intern with the Federal Trade Commission's Bureau of Economics, where I conducted empirical research on the competitive effects of business practices in the pharmaceutical industry. For this work, I was part of the team that received the 2009 Janet Steiger Award.

8. I have also presented economic analysis in mediation settings to both counsel and mediators. Further, I have presented on antitrust economics in speaking engagements and have published on competition in internet markets.

9. I also have direct knowledge in this matter as I have been Dr. Janet Netz's senior economist overseeing the damages calculations for the IPPs since 2011, including the calculation of IPP class damages according to Dr. Johnson's damages model as modified by the Court.[1]

---

[1] 11 March 2026, Order Adopting Damages Model, In re: Cathode Ray Tube (CRT) Antitrust Litigation (United States District Court Northern District of California San Francisco Division).

10.    A full account of my professional and academic experience is detailed in my curriculum vitae, Exhibit B.

11.    In this report, I describe how the Court's instructions were applied to arrive at the modified IPP class damages amount of $1,846,182,129. I also explain that 4,707,818 is a reasonable estimate of the quantity of CRT products purchased in Mississippi during the class period and that 586,643 is a reasonable estimate of the number of IPP class members in Mississippi.

12.    applEcon is compensated for my time on this case at a rate of $525 per hour. My and applEcon's compensation is independent of my opinions or the outcome of the case.

## II. Calculating Damages According to Dr. Johnson's Damages Model as Modified by the Court Results in IPP Class Damages of $1,846,182,129.

13.    The IPP Class damages using Dr. Johnson's damages model as modified by the Court were calculated as follows:

14.    Dr. Johnson's code for calculating overcharges was modified by separating it into two overcharge models,[2] one for CPTs and one for CDTs.

15.    Each of these models were applied to Dr. Johnson's overcharge data,[3] which yielded the quarterly overcharge rates for each tube type.

16.    The quarterly overcharge rates, which the model estimates as relative to but-for prices, were converted to be relative to actual prices.

17.    To obtain annual overcharge rates for each tube type, the quarterly overcharge rates (relative to actual prices) were averaged using (actual) revenues in the overcharge data as weights. The weighted average annual overcharge rates ranged from 4.09% to 15.17% for CDTs and from 2.29% to 7.22% for CPTs.

18.    Each product's weighted average annual overcharge rate was applied to the IPP class volume of at-issue commerce for that product and year.[4]

19.    The resulting damages amounts were summed over products and years, which yielded a single-damages estimate of $1,846,182,129. Next, the single damages were apportioned amongst the 22 IPP State Classes using U.S. Census data so that each state receives its pro rata share of the total according to its population during the damages period. The results are shown in Exhibit A, Column C.

20.    The data and computer code required to reproduce these results were produced to Irico.

21.    I understand from counsel that Irico accepts this calculation.

22.    Exhibit A, Column D calculates the enhanced or treble damages for each state according to state law, and Column E calculates each state's pro rata share of the $580.75 million

---

[2] Dr. Johnson's original code is found in "Figure 3-6.do" in the backup to Dr. Johnson's Expert Report dated May 26, 2023.

[3] Dr. Johnson's overcharge data is called "overcharge_data4reg.dta" and is found in the backup to Dr. Johnson's Expert Report dated May 26, 2023.

[4] See the calculations done in "Total damages with modified Johnson model overcharges.do," previously produced to Irico.

offset for the prior IPP settlements. Column F provides the total damages for each state after the offset amount is deducted.

## III.    Mississippi CRT Quantities and Class Members Estimates

### A.  4,707,818 is a reasonable estimate of the quantity of CRT products purchased in Mississippi

23.    I estimate the number of CRTs purchased in the state of Mississippi during the damages period as follows:

24.    I replicated the steps described in ¶¶121-134 of the April 28, 2025 Indirect Purchaser Plaintiffs' Proposed Findings of Fact and Conclusions of Law.[5]

25.    I divided the annual expenditures attributable to class members in Mississippi by the annual prices per tube described in ¶125.[6]

26.    By doing so, I estimate that, during the class period, there were 2,449,760 CDT products and 2,258,058 CPT products purchased in Mississippi, which amounts to 4,707,818 CRT products.[7]

### B.  586,643 Is a Reasonable Estimate of the Number of IPP Class Members in Mississippi

27.    I estimate the number of individuals in Mississippi who purchased at least one product containing a CRT during the period 1995 through 2007. The approach proceeds in two steps: first, estimating the probability that a household purchased a CRT-containing product during the class period; and second, applying those probabilities to the number of households in Mississippi to obtain counts of purchasing households and class members.

28.    The analysis uses Consumer Expenditure Survey ("CEX") Interview Survey microdata from 1995 through 2007, including the FMLI (household characteristics) and MTBI (expenditures) files.[8] Household income, sampling weights, and expenditure records are taken from these files. The analysis also uses American Community Survey ("ACS") 2010 Table B19001 to obtain the distribution of households in Mississippi by income.[9] Finally, a dataset from Netz's backup is used to estimate the share of purchases attributable to CRT versus LCD technology by year and product type.[10]

29.    The unit of observation is the CEX "consumer unit," which corresponds to a household. For each year, the FMLI quarterly files are combined to construct a household-year dataset. The analysis is restricted to households in the South region (Census Region 3),

---

[5] 28 April 2025, Indirect Purchaser Plaintiffs' Proposed Findings of Fact and Conclusions of Law, In re: Cathode Ray Tube (CRT) Antitrust Litigation (United States District Court Northern District of California San Francisco Division).

[6] 28 April 2025, Indirect Purchaser Plaintiffs' Proposed Findings of Fact and Conclusions of Law, In re: Cathode Ray Tube (CRT) Antitrust Litigation (United States District Court Northern District of California San Francisco Division).

[7] See "Mississippi quantities.do" and "Mississippi quantities.xlsx" in the backup to this report.

[8] Bureau of Labor Statistics, Consumer Expenditure Survey (CEX), Interview Survey Microdata, 1995–2007 (FMLI and MTBI files).

[9] U.S. Census Bureau, American Community Survey (ACS), 2010, Table B19001 (Household Income Distribution).

[10] See "estimation_size.dta" previously produced in Netz's backup files.

which includes Mississippi and nearby states. Household income is measured using pre-tax income variables available in the CEX.

30.    Households are grouped into five income categories: less than $15,000; $15,000 to $29,999; $30,000 to $49,999; $50,000 to $74,999; and $75,000 and above. These categories are used consistently throughout the analysis and later aligned with Census household counts.

31.    Expenditure records from the MTBI files are used to identify purchases of televisions and computer monitors, based on Universal Classification Codes (UCCs). These products are the primary categories that contained CRT technology during the relevant period.[11]

32.    Beginning in the mid-2000s, a portion of television and monitor purchases reflect LCD rather than CRT technology. To account for this, each qualifying purchase is assigned a probability of being a CRT purchase based on year- and product-specific CRT shares. Each observed purchase is treated as a CRT purchase with probability equal to the estimated CRT share for that year and product type.

33.    For each household and year, a purchase indicator is constructed equal to one if the household makes at least one CRT purchase in that year (after applying the LCD adjustment), and zero otherwise. This yields a household-year indicator of CRT purchasing activity.

34.    Within each income category and year, the annual purchase rate is computed as the weighted mean of the household purchase indicator, using CEX sampling weights. This produces the annual probability that a household in a given income group purchases a CRT-containing product.

35.    Because CRT purchases are infrequent durable goods purchases, annual probabilities are combined across years to estimate the probability that a household makes at least one purchase over the full period. For each income group, the probability of no purchase in each year is multiplied across all years from 1995 to 2007, and the result is subtracted from one to obtain the cumulative probability of at least one purchase.

36.    Household counts for Mississippi are obtained from ACS 2010 Table B19001. The detailed ACS income categories are aggregated to match the five income groups used in the CEX analysis. For each income group, the number of purchasing households is estimated by multiplying the number of households by the corresponding cumulative purchase probability.

37.    Because purchases are observed at the household level, an assumption is required to translate purchasing households into individual class members. The baseline assumption is one purchaser per household. Alternative assumptions are considered to allow for multiple purchasers per household.

38.    The number of class members is calculated by multiplying the number of purchasing households by an assumed number of purchasers per household. Under this approach, the estimated number of class members is 586,643 assuming 1.0 purchaser per household,

---

[11] UCC classification codes used for this estimate include 310110, 310120, 310130, 310140 and 690111.

879,965 assuming 1.5 purchasers per household, and 1,173,287 assuming 2.0 purchasers per household.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief. This declaration was executed on the 15th day of April 2026, at Ann Arbor, Michigan.

JOSHUA L. PALMER, PH.D.

**CRT IRICO - CALCULATION OF DAMAGES BY STATE**

| State | Statute(s) | C<br>Single Damages By State Population During Class Period | D<br>Enhanced or Treble Damages | E<br>Offset for $580.75m in Prior Settlements | F<br>Total Damages By State After Offset |
|---|---|---|---|---|---|
| Arizona | Ariz. Rev. Stat. §§ 44-1401 et seq. | $ 73,884,549 | $ 221,653,648 | $ 23,241,722 | $ 198,411,926 |
| California | Cartwright Act<br>Cal. Bus. And Prof. Code § 16720 et seq. | $ 500,213,212 | $ 1,500,639,635 | $ 157,351,118 | $ 1,343,288,516 |
| District of Columbia | D.C. Code Ann. §§ 28-4501 et seq. | $ 8,262,506 | $ 24,787,519 | $ 2,599,121 | $ 22,188,398 |
| Florida | Florida Deceptive and Unfair Trade Practices Act (FDUTPA)<br><br>Fla. Stat. § 501.201 et seq. | $ 232,646,167 | | $ 73,183,062 | $ 159,463,105 |
| Hawaii | Haw. Rev. Stat. § 480-1 et seq. | $ 3,131,772 | | $ 985,155 | $ 2,146,616 |
| Iowa | Iowa Code §§ 553.1 et seq. | $ 43,396,986 | $ 130,190,959 | $ 13,651,307 | $ 116,539,652 |
| Kansas | Kan. Stat. Ann. §§ 50-101 et seq. | $ 39,932,711 | $ 119,798,133 | $ 12,561,557 | $ 107,236,576 |
| Maine | 10 Me. Rev. Stat. Ann. §§ 1101 et seq. | $ 18,999,463 | $ 56,998,390 | $ 5,976,625 | $ 51,021,765 |
| Michigan | Mich. Comp. Laws Ann. §§ 445.771 et seq. | $ 148,453,515 | $ 445,360,545 | $ 46,698,740 | $ 398,661,805 |
| Minnesota | Minn. Stat. Ann. §§ 325D.50 et seq. | $ 72,428,224 | $ 217,284,672 | $ 22,783,609 | $ 194,501,063 |
| Mississippi | Mississippi Antitrust Act<br>Miss. Code Ann. §§ 75-21-1 et seq. | $ 41,858,634 | $ 335,180,133.82 | $ 13,167,391 | $ 322,012,743 |
| Nebraska | Junkin Act<br>Neb. Rev. Stat. §§ 59-801 et seq. | $ 4,248,862 | | $ 1,336,557 | $ 2,912,306 |
| Nevada | Nevada Unfair Trade Practice Act<br>Nev. Rev. Stat. Ann. §§ 598A.010 et seq. | $ 16,190,776 | $ 48,572,329 | $ 5,093,102 | $ 43,479,227 |
| New Mexico | N.M. Stat. Ann. §§ 57-1-1 et seq. | $ 26,639,513 | $ 79,918,538 | $ 8,379,941 | $ 71,538,597 |
| New York | Donnelly Act<br>N.Y. Gen. Bus. Law § 340 et seq. and N.Y. G.B.L. § 349 | $ 278,916,774 | $ 579,430,621 | $ 87,738,319 | $ 491,692,302 |
| North Carolina | N.C. Gen. Stat. §§ 75-1 et seq. | $ 116,979,030 | $ 350,937,090 | $ 36,797,871 | $ 314,139,219 |
| North Dakota | North Dakota Antitrust Act<br>N.D. Cent. Code §§ 51-08.1-01 et seq. | $ 9,597,356 | $ 28,792,069 | $ 3,019,022 | $ 25,773,047 |
| South Dakota | S.D. Codified Laws Ann. §§ 37-1 et seq. | $ 11,186,044 | $ 33,558,132 | $ 3,518,773 | $ 30,039,360 |
| Tennessee | Tenn. Code Ann. §§ 47-25-101 et seq. (TTPA) | $ 83,401,492 | | $ 26,235,449 | $ 57,166,043 |
| Vermont | Vt. Stat. Ann. 9 §§ 2453 et seq. | $ 9,001,406 | $ 27,004,219 | $ 2,831,555 | $ 24,172,664 |
| West Virginia | W.Va. Code §§ 47-18-1 et seq. | $ 27,208,507 | $ 81,625,521 | $ 8,558,928 | $ 73,066,592 |
| Wisconsin | Wis. Stat. §§ 133.01 et seq. | $ 79,604,628 | $ 238,813,883 | $ 25,041,076 | $ 213,772,807 |
| **TOTALS:** | | **$ 1,846,182,129** | | **$ 580,750,000** | **$ 4,263,224,330** |

Exhibit A



**Joshua L. Palmer, Ph.D.**

**Contact Information**

applEcon, LLC
123 N. Ashley Street
Suite 300
Ann Arbor, MI 48104

Office:   (734) 214-2216
E-mail: jlpalmer@applecon.com
Web: www.applecon.com

**Education**

Ph. D. Economics, University of California, Berkeley, 2011; specialization in industrial organization and behavioral economics

B.A. Economics and Psychology, University of Michigan, 2000

**Academic Experience**

Instructor at University of California, Berkeley

- Industrial Organization and Public Policy, Department of Economics, U.C. Berkeley, June 2010 - August 2010

Graduate Student Instructor at University of California, Berkeley

- Introduction to Probability and Statistics, Department of Statistics, U.C. Berkeley, January 2007 - May 2007
- Microeconomic Analysis, Department of Economics, U.C. Berkeley, January 2010 - May 2010

**Antitrust and Other Litigation Consulting Work Experience**
**Expert Experience, applEcon, LLC, April 2015 – Present**

Shepler's Inc. and Mackinac Island Ferry Company v. City of Mackinac Island, 2025 – Present
Retained as testifying expert for defendant/counter-claim plaintiff in a contract dispute and antitrust counterclaim.

(Confidential Client (State Attorney General)), 2025 – Present
Retained as testifying expert on measuring economic harm and penalties in a consumer protection matter.

JILL PATT, D.V.M., and LITTLE CRITTERS VET, LLC v. ANTECH DIAGNOSTICS INC., 2020 – 2021 (case settled prior to reports being filed)
*United States District Court, Central District of California*, No. 8:18-cv-01689-JLS-DFM
Retained as testifying damages expert for plaintiffs.

(Confidential Client), 2021 – Present (on hold)
Retained as testifying expert on a proposed class action regarding class certification issues, harm to competition, antitrust injury, and damages in the casino gaming industry.

(Confidential Client), 2016 – 2021 (case settled prior to reports being filed)
Retained as testifying expert on a Fair Labor Standards Act action seeking lost wages.
- Retained to evaluate scope of impact for potential collective and class action claims
- Retained to develop damages approaches

(Confidential Client), 2016 (case settled prior to reports being filed)
Retained as consulting expert on a Fair Labor Standards Act collective action seeking lost wages.
- Audited and revised counsel's proposed damages methodology

(Confidential Client), 2015 (case settled prior to trial)
Retained as consulting expert on a case regarding lost profits due to negative publicity.
- Developed preliminary causation arguments
- Developed preliminary damages approaches

**Senior Economist Case Experience, applEcon, LLC, June 2011 – Present**

Confident client (direct purchaser opt outs), Antitrust analysis in the healthcare industry, 2023 – Present
Project Director:
- Competitive effects analysis
- Antitrust injury analysis
- Direct overcharge estimate
- Total damages estimate
Mediation Presenter:
- Summarize to mediators and opposing counsel evidence on economic incentives underlying challenged conduct
- Summarize to mediators and opposing counsel evidence supporting economic impact of challenged conduct

Tamara Moore, et al. v. Mars Petcare US, Inc., et al., 2022 – Present
*United States District Court Northern District of California*, No. 3:16-cv-7001-MMC
Project Director:
- Common impact to end purchasers
- Direct overcharge methods
- Total end-purchaser damages methods

Vanzant, et al. v. Hill's Pet Nutrition, Inc., and PetSmart, Inc., 2022 – Present
*United States District Court Northern District of Illinois Eastern Division*, No. 1:17-cv-2535
Project Director:
- Economic impact to end purchasers
- Direct overcharge estimate
- Total end-purchaser damages estimate

Confidential client (indirect purchaser class action), Antitrust analysis in the automobile industry, 2021 – Present
Project Director:
- Alternative dispute resolution negotiations
- Antitrust injury analysis
- Direct overcharge estimate
- Total damages estimate

Insignia Systems Inc. v. News America Marketing Inc., 2020 – 2021

*United States District Court, District of Minnesota*, No. 19-cv-1820 MJD/BRT
Senior Economist, antitrust market definition analysis

<u>Confidential client (indirect purchaser class action), Antitrust analysis in the consumer energy industry, 2019 – 2022</u>
Project Director:
- Alternative dispute resolution negotiations (settlement reached with one defendant)
- Market definition analysis
- Direct overcharge estimate
- Total damages estimate

<u>Confidential client, Antitrust analysis in the pharmaceutical industry, 2019 – Present</u>
Project Director:
- Direct overcharge estimate
- Total damages estimate

<u>Confidential client, Antitrust analysis regarding various cellular phone components, 2019 – Present</u>
Project Director:
- Direct overcharge estimate
- Total damages estimate

<u>(Confidential) Named plaintiff in aerospace industry v. aerospace materials supplier, 2019 (case settled prior to trial)</u>
Project Director:
- Monopolization, attempted monopolization, and tying research
- Lost sales profits damages

<u>In re Malden Transportation, Inc. et al., v. Uber Technologies, Inc., 2018 – 2019</u>
*United States District Court, District of Massachusetts*, No. 1:16-cv-12538-NGM
Project Director:
- Potentially unfair competitive acts and economic effects research
- Mediation statement on defendant's at-issue conduct and its effects on plaintiffs' economic position

<u>In re Automotive Parts Antitrust Litigation, 2012 – Present</u>
*United States District Court, Eastern District of Michigan Southern Division*, No. 2:12-cv-02311
Project Director (Direct overcharges, volume of indirect purchasers' affected commerce and total damages calculations)
- In re Occupant Safety Systems, No. 2:12-cv-00603
- In re Heater Control Panels, No. 2:12-cv-00403
- In re Anti-Vibrational Rubber Parts, No. 2:13-cv-00803-MOB-MKM
- In re Bearings, No. 2:12-cv-00500
- In re Automotive Wire Harness Systems Antitrust Litigation, No.12-md-00101
- In re Shock Absorbers Cases, No. 2:16-cv-0332, 2015-

<u>Alarm Detection Systems, Inc. v. Orland Fire Protection District, et al., 2016 – 2019</u>
*United States District Court, Northern District of Illinois, Eastern Division*, No. 14-cv-00876
Project Director:
- Monopoly and attempted monopolization liability research
- Direct overcharge estimate
- Volume of affected commerce and total damages calculations
- Defendants' Motion to Strike (Defendants' motion denied)
- Trial (bench) preparation

<u>In re Korean Ramen Antitrust Litigation, 2015 – 2019</u>
*United States District Court, Northern District of California, San Francisco Division,* No. 13-cv-04115-WHO
Project Director:
- Indirect Purchaser Plaintiffs' Motion for Class Certification (Plaintiffs' motion granted)
- Opposition to Defendants' Motion to Strike (Defendants' motion denied)
- Cartelization liability research
- Direct overcharge estimate
- Pass-through estimate
- Volume of affected commerce and total damages calculations

<u>Confidential client, Antitrust analysis regarding various cellular phone components, 2017 – 2018</u>
Project Director:
- Direct overcharge estimate
- Total damages estimate

<u>In re Cathode Ray Tube (CRT) Antitrust Litigation, 2012 – Present</u>
*United States District Court, Northern District of California, San Francisco Division,* No. CV-07-5944-SC
Project Director:

- Opposition to Defendants' Motion to Strike (Defendants' motion denied)
- Direct overcharge estimate
- Volume of affected commerce and total damages calculations

Assisted Plaintiff Counsel at Class Certification Hearing (class certification granted)

Assisted Plaintiff Counsel with settlement voucher valuations

Served as opposing economic expert in mock trial exercises during trial preparation

<u>Confidential engagement, 2012</u>
Regulatory proceeding regarding efficient pricing of asymmetric digital subscriber line (ADSL) services

<u>LCD Cartel Indirect Purchaser Class Action, 2011</u>
In re TFT-LCD (Flat Panel) Antitrust Litigation
*United States District Court, Northern District of California, San Francisco Division,* No. M:07-cv-01827
Project Director:

- Depositions of opposing expert witnesses
- Opposition to Defendants' Motion to Strike (Defendants' motion denied)

<u>LCD Cartel States Case, 2011</u>
In re TFT-LCD (Flat Panel) (State of Missouri et al. v. AU Optronics et al. and State of Florida et al. v. AU Optronics et al.)
*United States District Court for the Northern District of California, San Francisco Division,* No. 3:07-MD-1827 SI
Project Director:

- Direct overcharge estimate
- Volume of affected commerce and total damages calculation

<u>Indirect Purchaser Class Action Against News America Marketing Inc., 2011</u>
*United States District Court Southern District of New York,* No. 13-CV-06802 (WHP)
Project Director:
- Data management
- Econometric pricing model estimation

**<u>Staff Analyst Case Experience, applEcon, LLC, May 2002 – July 2005</u>**
<u>Class Action Cases Against Microsoft</u>
- Lingo et al. v. Microsoft (California)
- Joe Comes et al. v. Microsoft (Iowa)
- Daniel Gordon et al. v. Microsoft (Minnesota)
- In re New Mexico Indirect Purchaser Microsoft Corp. Antitrust Litigation

<u>Compuware v. IBM</u>
*United States District Court for the Eastern District of Michigan, No. 02-70906*

<u>Class Action Against NCAA (Student-Athletes)</u>
Jason White et al. v. NCAA
*United States District Court Central District of California, No. CV 06-0999 RGK (MANx)*

<u>Morelock Enterprises, Inc. v. Weyerhaeuser Co.</u>
*United States District Court District of Oregon, No. 3:04-cv-00583-PA*

<u>Class Action Against Unocal</u>
In re Reformulated Gasoline (RFG) Antitrust and Patent Litigation
*United States District Court for the Central District of California*, No. 05-1671 CAS VBK

**<u>*Federal Trade Commission, Bureau of Economics, Intern, June 2009 – August 2009*</u>**
Conducted empirical research on the competitive effects of reverse-payment patent settlements in the pharmaceutical industry.
- Received 2009 Janet Steiger Award (with David Schmidt, Ph.D. and Elizabeth Schneirov, Ph.D.)

**Published Articles**
Josh Palmer, *IT'S HIGH TIDE AGAIN IN INTERNET MARKETS*, 30 Competition: J. Anti., UCL & Privacy Sec. Cal. L. Assoc. 70 (2020).

**Referee**
Journal of Sports Economics

**Invited Speaking Engagements**
- Panelist, The Knowledge Group, Trends and Developments in Antitrust Class Certification: Best Strategies in Light of Recent Court Rulings, April 2020
- Panelist, California Law Association, Antitrust Economics: Fundamental Concepts Practitioners Need to Know, Webinar, January 2020
- University of Michigan Econ 108, Economics at Work, Winter 2012 and Winter 2014
- University of Michigan Public Policy 564, Government Regulation of Industry and the Environment (Masters in Public Policy), Fall 2011