**NORTON ROSE FULBRIGHT US LLP**
JEFFREY MARGULIES (BAR NO. 126002)
KAYLEE YANG (BAR NO. 303464)
One Embarcadero Center, Suite 1050
San Francisco, California 94111
Telephone:     (213) 892-9200
Facsimile:      (213) 892-9494
jeff.margulies@nortonrosefulbright.com
kaylee.yang@nortonrosefulbright.com

**NORTON ROSE FULBRIGHT US LLP**
GERALDINE YOUNG (admitted *pro hac vice*)
1550 Lamar Street, Suite 2000
Houston, Texas 77010
Telephone:     (713) 651-5151
Facsimile:      (213) 651-5246
geraldine.young@nortonrosefulbright.com

Attorneys for Defendants
IRICO GROUP CORP. AND
IRICO DISPLAY DEVICES CO., LTD

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| IN RE: CATHODE RAY TUBE (CRT) ANTITRUST LITIGATION | Master File No.: 07-cv-05944 JST<br><br>MDL No. 1917 |
| This document relates to:<br><br>*ALL INDIRECT PURCHASER ACTIONS*<br><br>*ALL DIRECT PURCHASER ACTIONS* | **DEFENDANTS IRICO GROUP CORP. AND IRICO DISPLAY DEVICES CO., LTD.'S MOTION TO DECERTIFY THE IPP AND DPP CLASSES AND RULE 55(C) MOTION TO VACATE THE ENTRY OF DEFAULT AGAINST IRICO**<br><br>**Date:        July 16, 2026**<br>**Time:       2:00 p.m.**<br>**Courtroom: 6, Second Floor**<br>**Judge:      Honorable Jon S. Tigar** |

TO ALL PARTIES AND THEIR COUNSEL OF RECORD

PLEASE TAKE NOTICE that on July 16, 2026 at 2:00 p.m., or as soon thereafter as the matter may be heard, before Judge Jon S. Tigar, U.S. District Judge of the Northern District of California, Oakland Courthouse, 1301 Clay Street, Oakland, California, Courtroom 6, Second Floor, Irico Group Corporation ("Irico Group") and Irico Display Devices Co., Ltd. ("Irico Display," and together with Irico Group, "Irico" or "the Irico entities"), by and through their undersigned counsel, will and hereby do move to Decertify the Indirect Purchaser ("IPP") and Direct Purchaser ("DPP") Classes under Rule 23 and to Vacate Entry of Default Against Irico under Rule 55(c) (the "Motion").

This Motion is advanced on the ground that the IPP and DPP experts' models do not exclude class members who have suffered no Article III injury, thus requiring the Court to vacate the default in favor of the classes and to decertify them. This Motion is based on this Notice of Motion, the following memorandum of points and authorities in support thereof, the record and materials cited, along with the argument of counsel and such other matters as the Court may consider.

**ISSUES TO BE DECIDED**

1.    Whether heightened requirements and developments in governing law emphasizing the need to prove that each class member has Article III standing—*e.g.*, *TransUnion, LLC v. Ramirez*, 594 U.S. 413 (2021), and *Healy v. Milliman*, 164 F.4th 701 (9th Cir. 2026)—plus factual developments in this stage of the case provide "good cause" for this Court to reconsider class certification?

2.    Whether the IPP and DPP classes must be decertified because, at this trial stage, class members failed to meet their burden to present evidence that they were each individually overcharged for CRT products and thus cannot be awarded classwide damages and because common questions no longer predominate over the required individual standing inquiries?

3.    Whether this Court should vacate the entry of default against Irico under Rule 55(c) for class members who have not proven  they suffered concrete injury and therefore lack Article III standing to seek damages from Irico?

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ...............................................................................................................1

II.  RELEVANT BACKGROUND .........................................................................................2

III.  LEGAL STANDARDS ......................................................................................................3

IV.  ARGUMENT......................................................................................................................3

   A.  The Court must decertify the DPP and IPP classes because plaintiffs failed to prove that all class members suffered individual injury, as *TransUnion* requires...................................................................................................................3

      1.  The DPP and IPP classes must be decertified because the DPPs and IPPs cannot prove that each individual class member was injured in fact.................4

      2.  Heightened requirements in governing law emphasizing the need to prove Article III standing for class action plaintiffs, plus factual developments in this stage of the case, supply good cause to revisit both certification orders. ..........................................................................................10

      3.  The DPPs' and IPPs' evidentiary deficiencies at the trial stage warrant decertification. .................................................................................................11

      4.  Plaintiffs' inability to prove Article III standing also means common questions do not predominate, as required by Rule 23(b)(3), further requiring decertification....................................................................................13

   B.  The Court should vacate the entry of default against Irico under Rule 55(c)........16

V.  CONCLUSION.................................................................................................................17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Apple iPod iTunes Antitrust Litig.*,
No. 05-CV-0037 YGR, 2014 WL 6783763 (N.D. Cal. Nov. 25, 2014)...........................12, 15

*Aristocrat Techs., Inc. v. High Impact Design & Entm't*,
642 F. Supp. 2d 1228 (D. Nev. 2009)...............................................................................16, 17

*Bankers Life & Cas. Co. v. Mallin*,
808 F. Supp. 3d 1062 (N.D. Cal. 2025) ..................................................................................17

*Braik v. Southwest Airlines, Co.*,
No. 25-cv-10083, 2026 WL 1081205, at *1 (N.D. Cal. Apr. 21, 2026 ......................................3

*Chambers v. Knight*,
No. 20-56141, 2021 WL 4811360 (9th Cir. Oct. 15, 2021) ....................................................17

*Dinerstein v. Google*,
73 F.4th 502 (7th Cir. 2023) ...................................................................................................10

*Forehand v. Florida State Hosp. at Chattahoochee*,
89 F.3d 1562 (11th Cir. 1996) .................................................................................................12

*Franchise Holding II v. Huntington Rests. Group, Inc.*,
375 F.3d 922 (9th Cir. 2004) .....................................................................................................3

*Healy v. Milliman*,
164 F.4th 701 (9th Cir. 2026) .......................................................1, 2, 3, 4, 6, 7, 8, 11, 12, 16

*Huber v. Simon's Agency, Inc.*,
84 F.4th 132 (3d Cir. 2023) .....................................................................................................12

*Lao v. H&M Hennes & Mauritz, L.P.*,
No. 16-cv-00333, 2019 WL 7312623 (N.D. Cal. Dec. 30, 2019)............................................10

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992)..............................................................................................................4, 14

*In re MacBook Keyboard Litig.*,
No. 5:18-CV-02813-EJD, 2023 WL 3688452 (N.D. Cal. May 25, 2023).........................12, 15

*Maldonado v. Apple*,
No. 3:16-cv-04067, 2021 WL 1947512 (N.D. Cal. May 14, 2021)......................................3, 10

*Marlo v. United Parcel Serv., Inc.*,
639 F.3d 942 (9th Cir. 2011) ......................................................................................3, 10, 12, 16

*Mazzei v. Money Store*,
829 F.3d 260 (2d Cir. 2016).............................................................................11, 12, 13, 15

*Munoz v. PHH Mortgage Corp.*,
478 F. Supp. 3d 945 (E.D. Cal. 2020)...............................................................................10

*O'Connor v. State of Nev.*,
27 F.3d 357 (9th Cir. 1994) ..............................................................................................16

*Olean Wholesale Grocery Cooperative v. Bumble Bee Foods*,
31 F.4th 651 (9th Cir. 2022) (en banc) ......................................................................14, 15

*Perry v. Newsom*,
18 F.4th 622 (9th Cir. 2021) ...............................................................................................3

*Rodriguez v. West Publ'g Corp.*,
563 F.3d 948 (9th Cir. 2009) .........................................................................................3, 10

*TransUnion, LLC v. Ramirez*,
594 U.S. 413 (2021).......................................1, 2, 3, 4, 5, 6, 7, 8, 10, 11, 12, 13, 14, 15, 16, 17

*In re Tuli*,
172 F.3d 707 (9th Cir. 1999) ........................................................................................3, 17

*U.S. v. Signed Personal Check No. 730*,
615 F.3d 1085 (9th Cir. 2010) .............................................................................................3

*UnitySCC v. Cody*,
No. 5:22-cv-01019, 2025 WL 1474757 (N.D. Cal. May 21, 2025).......................................10

*Van v. LLR, Inc.*,
61 F.4th 1053 (9th Cir. 2023) ...........................................................................5, 6, 13, 14, 15

*Wal-Mart v. Dukes*,
564 U.S. 338 (2011)..........................................................................................................15

**Rules and Statutes**

FED. R. CIV. P. 23...............................................................................2, 3, 4, 5, 6, 10, 13, 15, 16

FED. R. CIV. P. 55(c) ..............................................................................................2, 3, 16, 17, 18

## I.    INTRODUCTION

This Court must decertify the IPP and DPP classes because the damages methodology they presented at the damages hearing—the equivalent of trial in this case—failed to establish that each class member purchased a CRT product at an inflated price, meaning they have not proven each class member has Article III standing. Relying on the more relaxed standards applied at the class certification stage, over similar objections related to predominance, (ECF No. 1660 at 22-24; ECF No. 5984 at 14-25), this Court held certification was proper and methodology issues should be addressed on the merits. (ECF Nos. 1950 at 12, 6042 at 11.) In the meantime, the Supreme Court in *TransUnion, LLC v. Ramirez*, 594 U.S. 413 (2021), and the Ninth Circuit in *Healy v. Milliman*, 164 F.4th 701 (9th Cir. 2026), held class members must satisfy heightened evidentiary standards after class certification. Crucially, these cases clarify that class members' burden to prove standing increases as the case progresses, such that, at the damages trial stage, class representatives must present evidence that adequately supports each class member's concrete injury and standing.  *See generally TransUnion*, 594 U.S. at 431, 442; *Healy*, 164 F.4th at 706-10.

The plaintiff classes presented their damages case in 2025. (ECF No. 6489-91.) Yet, despite their heightened burden to prove that each class member has standing under *TransUnion*'s 2021 holding, neither the DPPs nor the IPPs adjusted their methodology to prove that each class member actually overpaid for CRTs. Instead, they made the tactical decision to present a case based on alleged average overcharges over a thirteen-year period. This evidence fails to meet the heightened burden of proof that the Supreme Court and Ninth Circuit have imposed to prove individual injury for each class member. *E.g.*, *TransUnion*, 594 U.S. at 431, 442; *Healy*, 164 F.4th at 706-10.

Nor can class members blame Irico or use entry of default to overcome their flawed strategic decisions. They alone chose to use an average-overcharge model, rather than attempt to demonstrate that every class member was injured. They alone chose to define the classes as they did, rather than to exclude those members that did not overpay for CRTs. Now they must face the consequences: decertification of the classes and denial of a default judgment that would award classwide damages to members who failed to prove they have Article III standing to collect such damages.

These significant developments in governing law concerning class members' standing, the escalating burden to establish that all class members have standing at this stage under *TransUnion* and *Healy*, and the evidence actually presented at the damages hearing provide good cause for this Court to reconsider certification and decertify the classes. Further, the inability of either expert's damages methodology to provide a basis for measuring individual class member damages on a classwide basis or through common proof requires decertification of the IPP and DPP classes because Plaintiffs cannot establish that common questions continue to predominate over individual inquiries under Rule 23(b)(3).

Regardless, this Court cannot enter a default judgment awarding damages to individual class members who have not demonstrated injury and over whom this Court lacks jurisdiction. *Cf. TransUnion*, 594 U.S. at 431 ("'Article III does not give federal courts the power to order relief to any uninjured plaintiff, class action or not.'"). Irico therefore moves under Rule 55(c) to vacate the entry of default against Irico on behalf of those classes.

## II.   RELEVANT BACKGROUND

The Court certified the IPP class more than a decade ago on September 24, 2013 (ECF No. 1950), before Irico reentered the case, and certified the DPP class on August 1, 2022 (ECF No. 6042). After the Court adopted the Special Master's recommendation and granted Plaintiffs' motion for terminating sanctions, the Clerk of the Court entered default against Irico on November 22, 2024, with respect to the IPPs (ECF No. 6429) and on November 25, 2024, with respect to the DPPs (ECF No. 6431). The Court then held an evidentiary hearing on the issue of damages from May 19 through May 21, 2025. (ECF No. 6489-94.) On March 11, 2026, the Court issued its Order Adopting Damages Model (ECF No. 6516). Pursuant to that Order, the parties filed a Joint Case Management Statement (ECF No. 6519), with which Plaintiffs submitted proposed judgments (ECF Nos. 6519-2, 6219-6). Irico objected to both proposed judgments and noted it planned to file this Motion. (ECF Nos. 6520 & n.2, 6521 & n.2.) Irico now files this Motion requesting decertification because the chosen methodology is incapable of proving each class member has Article III standing and moves to vacate the entry of default under Rule 55(c).

## III.    LEGAL STANDARDS

Courts have an affirmative and ongoing duty to assess whether they have jurisdiction over the parties and subject matter of the case. *See generally In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999); *Braik v. Southwest Airlines, Co.*, No. 25-cv-10083, 2026 WL 1081205, at \*1 (N.D. Cal. Apr. 21, 2026).  One "essential ingredient" of subject matter jurisdiction is that Plaintiffs have Article III standing. *See Perry v. Newsom*, 18 F.4th 622, 630 (9th Cir. 2021). In a class action, "[e]very class member must have Article III standing in order to recover individual damages," *TransUnion*, 594 U.S. at 431, 442, and class members' burden to prove individual injury and standing escalates as the case proceeds to trial, *id.*; *e.g.*, *Healy*, 164 F.4th at 706-10.

"A district court may decertify a class at any time." *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009).  Decertification is a two-step process. After defendants have shown good cause to revisit the certification question, the burden shifts to the plaintiff to "demonstrate that the class action should be 'maintained' under Federal Rule of Procedure 23." *Maldonado v. Apple*, No. 3:16-cv-04067, 2021 WL 1947512, at \*2 (N.D. Cal. May 14, 2021) (quoting *Marlo v. United Parcel Serv., Inc.*, 639 F.3d 942 (9th Cir. 2011)).

Pursuant to Rule 55(c), a court may set aside an entry of default for "good cause." FED. R. CIV. P. 55(c). Good cause may exist where a party has a meritorious defense, considering the prejudice to plaintiffs and culpability of the defendant. *See generally U.S. v. Signed Personal Check No. 730*, 615 F.3d 1085, 1091 (9th Cir. 2010) (quoting *Franchise Holding II v. Huntington Rests. Group, Inc.*, 375 F.3d 922, 925-26 (9th Cir. 2004)).

## IV.    ARGUMENT

### A.    The Court must decertify the DPP and IPP classes because plaintiffs failed to prove that all class members suffered individual injury, as *TransUnion* requires.

The Court should decertify the DPP and IPP classes because, at the trial stage, when the burden to prove standing for each class member is highest under *TransUnion*, they relied on a damages methodology that cannot prove each class member was overcharged for CRTs. Over similar objections related to predominance, (ECF No. 1660 at 22-24; ECF No. 5984 at 14-25), this Court held that any methodological flaws did not prevent certification at that stage of the case, (ECF No.

IRICO'S MOTION TO DECERTIFY
AND VACATE DEFAULT                         - 3 -          MASTER FILE NO.: 07-CV-05944-JST
                                                                              MDL NO. 1917

1950 at 13-14, 17-18, 23; ECF No. 6042 at 10-12). Yet, the IPPs and DPPs made the strategic decision *not* to adjust their model or class definitions to satisfy significant developments in governing law. *TransUnion* and the Ninth Circuit's recent decision in *Healy* clarified that "***[e]very class member*** must have Article III standing in order to recover individual damages"—"'Article III does not give federal courts the power to order relief ***to any uninjured plaintiff, class action or not***.'" *TransUnion*, 594 U.S. at 431 (emphases added, citation omitted); *cf. Healy*, 164 F.4th at 706-10 (noting absent class members must demonstrate evidence of Article III standing at summary judgment). Moreover, when Plaintiffs seeking damages "proceed[] to trial," as they did here through the evidentiary damages hearing, the facts Plaintiffs allege to support standing "'must be supported adequately by the evidence adduced at trial.'" *TransUnion*, 594 U.S. at 431, 442 (citation omitted).

As discussed throughout this Motion, the evidence adduced at the trial stage in this case simply does not prove each class member was overcharged for a CRT product. The Court therefore cannot award the requested classwide damages because it lacks jurisdiction over class members that do not have Article III standing. *See TransUnion*, 594 U.S. at 431, 442. These heightened requirements and developments in governing law emphasizing the need to prove that each class member has Article III standing, plus factual developments in this stage of the case, provide more than sufficient good cause to reexamine certification—especially since lack of standing affects this Court's jurisdiction. Moreover, decertification is appropriate here under *TransUnion*, *Healy*, and similar precedents and for lack of predominance under Rule 23(b)(3).

### 1. The DPP and IPP classes must be decertified because the DPPs and IPPs cannot prove that each individual class member was injured in fact.

*TransUnion* and recent Ninth Circuit precedent recently clarified the "manner and degree of evidence" with which both named and unnamed class plaintiffs must demonstrate standing at each successive stage of a lawsuit, including at trial. *Id*. at 431, 442 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)). Moreover, *TransUnion* demonstrates that a damages model which may have supported class certification at an earlier stage of the case does not satisfy Article III standing for each individual class member ***at trial*** if it does not provide evidence of individual injury. *Id. TransUnion* involved a certified class pursuing damages against TransUnion for, among

other things, failing to use reasonable procedures to assure maximum possible accuracy in consumer reports, in violation of the Fair Credit Reporting Act ("FCRA"). *Id.* at 421. Following a six-day jury trial, the district court awarded the class $60 million in damages, an award affirmed in relevant part by the Ninth Circuit. *Id.* at 422.

The Supreme Court reversed the Ninth Circuit's holding that certain class members could seek damages when they failed to prove individual injury. *Id*. at 442. The class included all people in the United States to whom the defendant had sent a mailing indicating that their name purportedly matched that of a specially designated national who threatened American security. *Id*. at 419, 421. Before trial, the parties stipulated: (1) that the class contained 8,185 members: and (2) that, of the 8,185 class members, only 1,853 had had their credit reports disseminated to potential creditors during the class period. *Id*. at 421. Because the parties stipulated that TransUnion did not provide the credit information of the remaining 6,332 class members to potential creditors during the class period, only 1,853 class members suffered a "concrete" injury. *Id*. at 418, 433, 442.

The Court put it plainly: "***No concrete harm, no standing.***" *Id.* at 442 (emphasis added). *TransUnion* therefore reversed the Ninth Circuit's decision that all 8,185 class members had standing to pursue the reasonable-procedure claim and remanded for further proceedings. *Id.*

Along the way, the Supreme Court clarified several Article III standing requirements that directly apply here, to class actions litigated through the trial stage:

1) **Plaintiffs' burden.** Plaintiffs bear the burden of demonstrating that they and all absent class members have Article III standing. *Id*. at 430-31.

2) **Adequate support required at trial for standing.** Trial evidence must adequately support "the specific facts set forth by the plaintiff to support standing." *Id*. at 431 (citation omitted).

3) **Individual harm for each class member.** ***Each class member*** must demonstrate that they have standing before they can recover damages—including both the named plaintiff(s) and absent class members. *Id*. at 431 ("***Every class member*** must have Article III standing in order to recover individual damages." (emphasis added, citation omitted)).

Ninth Circuit law following *TransUnion* further clarifies that standing-related issues of individual harm can prevent certification under Rule 23(b)(3). In *Van v. LLR, Inc.*, the Ninth Circuit

concluded that courts must assess the workability under Rule 23 of models that require "a class-member-by-class-member assessment" to prove individual injury. 61 F.4th 1053, 1067-69 (9th Cir. 2023).

The IPPs and DPPs therefore had to prove that each class member purchased CRT Product(s) at an inflated price. *See TransUnion*, 594 U.S. at 431, 442; *see also Healy*, 164 F.4th at 706-10 (observing *TransUnion* "therefore, examined the trial record for evidence of injury to not just the named plaintiff, but also unnamed class members"). The evidence at the trial stage here fails to meet that burden, and shows IPP and DPP class members ***cannot*** do so.

The Court adopted a modified version of the damages model of DPP expert Dr. Johnson for both the DPP and IPP classes. (ECF No. 6516.) Dr. Johnson's damages model is unquestionably based on *aggregate averages for all CDTs and all CPTs sold by all of the alleged cartel members* over multiple years (which themselves varied from year to year) and nothing more specific—it certainly cannot calculate individual class members' damages. *E.g.*, (ECF No. 6469-1 at 168, Ex. 202, Expert Report of Phillip M. Johnson, Ph.D., May 26, 2023 ("Johnson Merits Report") ¶ 54). Specifically, when calculating damages for the DPPs, Dr. Johnson assumed that each direct purchaser paid an overcharge by multiplying a weighted average per-unit overcharge by the total number of estimated sales to the class. *Id.* at 197-98 ¶ 99 & Figure 22.

But Dr. Johnson was unable to establish that each DPP class member paid an overcharge. *See* (ECF No. 6469-1 at 62-65, Ex. 200, Expert Report of Phillip M. Johnson, Ph.D., November 19, 2021 ¶¶ 82-86 ("[T]he data for many customers are limited and do not allow for precise identification of impact on a customer-specific basis.")). Instead, Dr. Johnson used interaction variables to check whether the data for specific customers tended to merely ***suggest*** that those customers' purchases were not affected by the alleged conspiracy. *Id.* at 62-63 ¶ 82. Showing the speculative and imprecise nature of that approach, Dr. Johnson admitted that he could not calculate interaction variables accounting for approximately ***13% of relevant purchases*** during the Class period. *Id.* at 62-63 ¶¶ 82-83. Dr. Johnson explained that "there are customers with relatively little purchases outside of the conspiracy period and there are many customers who don't have purchases both before and after the conspiracy period." *Id.* at 64-65 ¶ 86. Dr. Johnson also acknowledged the reality of price variation,

for instance, that "may have been due to 'cheating'" (i.e., alleged conspirators selling products below the purportedly agreed-upon price) and that "some cheating occurs even in successful cartels." *See* (ECF No. 6469-1 at 246-47, Ex. 203, Expert Rebuttal Report of Phillip M. Johnson, Ph.D., September 1, 2023 ¶ 38).

This simply does not suffice to prove individual damages for every class member under *TransUnion* and *Healy*. Those cases do not allow uninjured class members to recover simply because imprecision is "expected." DPPs have not and cannot prove that every DPP class member purchased an overcharged product as a result of the purported conspiracy, as required.

Unlike Dr. Johnson, Dr. Netz did not describe an individualized analysis into **any** portion of the indirect purchaser class.[1] *See, e.g.*, (ECF No. 6471-2 at 78, Decl. of Janet S. Netz, PhD, in Support of Motion of Indirect-Purchaser Plaintiffs for Class Certification, October 1, 2012 ("2012 Netz Declaration) at 71). Like Dr. Johnson, Dr. Netz therefore also failed to establish that each indirect purchaser paid an overcharge. And while Dr. Netz sought to show that 100% of overcharges would have been passed on to end purchasers, that does not prove Article III injury for each of the actual class members, as she did not prove that every class member paid for a product that was subject to an overcharge.[2] *See, e.g.*, (ECF No. 6471-5 at 123-24 & 358, April 15, 2014 Netz Report at 116-17 & Ex.. 62 (listing result for each pass-through rate calculated by Dr. Netz)). Instead, Dr. Netz's methodology was likewise highly generalized and aggregate in nature, with no specific proof as to any individual class member, and analysis limited to two time periods. She opined that there was a "common pricing structure" in the CRT market and concluded that the presence of a "common

---

[1] Dr. Johnson was not retained to do any analysis of the IPP class but, as the Court and all parties recognized, both Dr. Johnson and Dr. Netz attempted to calculate the same overcharge for CPT and CDTs sold by the alleged cartel members using regression models that estimated the overcharge at an average over an extended time period. *See* (ECF No. 6516 at 7-8).

[2] In any event. Dr. Netz's pass-through studies did not account for every purchase that IPPs use to calculate damages. First, Dr. Netz did not study every direct purchaser's pass-through. *See, e.g.*, (ECF No. 6471-5 at 124 & 358, Expert Report of Janet S. Netz, Ph.D., April 15, 2014 ("April 15, 2014 Netz Report") at 117, Ex. 62 (listing result for each pass-through rate calculated by Dr. Netz)). Second, Dr. Netz's studies often began late into the purported conspiracy period and do not analyze whether a distributor passed overcharges to customers during the entire conspiracy period. *Id.* at 358, Ex. 62 (showing "begin dates" starting several years into the purported conspiracy).

IRICO'S MOTION TO DECERTIFY
AND VACATE DEFAULT                    - 7 -            MASTER FILE NO.: 07-CV-05944-JST
                                                                          MDL NO. 1917

pricing structure" meant that prices were not "driven primarily by individual factors." (ECF No. 6471-2 at 78, 2012 Netz Declaration at 71.) However, that analysis does not preclude the possibility that individual factors affected the purported overcharges paid by each direct purchaser. And it leaves the IPPs without evidence that each class member paid an overcharge and suffered harm, as *TransUnion* requires at this stage.

In their opposition to the IPPs' class certification motion, defendants pointed out several instances where Dr. Netz acknowledged limitations to her model which prevented class members from calculating classwide damages. (ECF No. 1660 at 20-39.) Dr. Netz acknowledged that there were "anomal[ie]s" where some transactions by individual class members had no pass-through, (ECF No. 1660-3, Ex 2, Netz Tr. 334:2-6, 346:13-18), that her theoretical approaches may not be capable of measuring damages when applied to the record (*Id.* at 249:13-17), that calculating average target prices could result in concluding that transactions notably below the target price were at the target price (*Id.* at 158:5-159:24), and that it could be rational for a CRT company to participate in a cartel if the cartel was effective at raising prices for some customers but not others, (*Id.* at 153:22-154:9.). Defendants similarly pointed out that Dr. Johnson's methodology relied on averaged results that ignore substantial variation across CRTs. (ECF No. 5984 at 21-26, Irico's Opp. at 17-22).

Rather than address those objections with changes to methodology or class definitions, the IPPs and DPPs made the tactical decision to try the case with models that mask variability in overcharges by extending average overcharges over a thirteen-year period. *See* (ECF No. 6469-1 at 169, Johnson Merits Report at 31 & Figure 3). This Court adopted Dr. Johnson's model at the DPPs' request. (ECF No. 6516.) The IPPs' and DPPs' chosen damages model is therefore in final form, as is the proof they offered at the evidentiary damages hearing. Yet, the IPPs and DPPs still have not proven that every class member paid CRT overcharges and therefore has standing at this stage, as *TransUnion* and *Healy* require. Nor can the IPPs and DPPs prove classwide impact given the presence of uninjured class members.

Indeed, the evidence at trial demonstrates that many IPPs may have not been injured, based on the timing of their CRT purchases. The parties presented evidence at trial that the introduction of Windows 95 increased demand for CDTs in 1995 and 1996. *See* (ECF No. 6493 at 76-77, Reporter's

Transcript of Proceedings, May 20, 2025 ("May 20, 2025 Damages Hearing Tr.") 242:13-243:7). Dr. Johnson acknowledged that his model's but-for price assumes CDT prices increased substantially during that period and testified that he was not aware of any reason for that increase other than the introduction of Windows 95. *Id*. at 22-24, Tr. 188:21-190:17. IPP Expert Dr. Netz acknowledged that the introduction of Windows 95 would have led to increased demand for CDT monitors and that, all things being equal, an increase in demand for CDT monitors would increase the price of CDT monitors.  (ECF No. 6492 at 91-92, Reporter's Transcript of Proceedings, May 19, 2025 ("May 19, 2025 Damages Hearing Tr.") 91:22-92:17). Dr. Netz did not conduct any tests to determine whether overcharges during these periods differed from overcharges between 1997 and 2006. *Id*. at 92, Tr. 92:18-92:23.  While Dr. Johnson testified that he tested the effect of adding a variable for desktop sales to his model and found no significant impact on his overall overcharge estimates, *see id*. at 122-23, 162-63, Tr. 122:22-123:9, 162:14-23, he did not test whether overcharges were different in 1995 and 1996, *see, e.g.*, *id*. at 155, Tr. 155:18-155:21, and did not prove that his model controls for whatever factors caused CDT prices to increase in 1995 and 1996, *see, e.g.*, (ECF No. 6493 at 22-24, May 20, 2025 Damages Hearing Tr. 188:21-190:17).

These methodological flaws were not caused by Irico's purported discovery deficiencies, for which the default was entered against Irico. Dr. Johnson's model is based on other defendants' data, and Dr. Johnson's model already incorporates Irico's sales data for CRTs from 1995 to 2007. *See, e.g.*, (ECF No. 6469-1 at 202, Johnson Merits Report ¶¶ 101-103). The DPPs' and IPPs' failure to prove individual injury stems from their strategic decision to use flawed methodology, including incomplete analysis of direct and indirect purchasers—not from any discovery conduct by Irico.

Dr. Johnson's model's inflexibility prevents it from distinguishing between class members who purchased CRT products in different years—including those who only purchased CRTs during years when the purported conspiracy did not raise the price of some CRT products.

Because neither the IPPs nor the DPPs proved that every IPP and DPP purchased an overcharged product during the period where that product was affected by a purported conspiracy, decertification is warranted here. *See infra* Parts A.3 & A.4.

**2.    Heightened requirements in governing law emphasizing the need to prove Article III standing for class action plaintiffs, plus factual developments in this stage of the case, supply good cause to revisit both certification orders.**

A federal court may decertify a class at any point before final judgment is entered. FED. R. CIV. P. 23(c)(1)(C) ("An order that grants or denies class certification can be altered or amended before final judgment."); *Rodriguez*, 563 F.3d at 966 ("A district court may decertify a class at any time.").

Decertification is a two-step process. First, the defendant must show "good cause" to revisit the certification question. *UnitySCC v. Cody*, No. 5:22-cv-01019, 2025 WL 1474757, at *2 (N.D. Cal. May 21, 2025). "Good cause" can include, but is not limited to: "discovery of new facts or changes in the parties or in the substantive or procedural law." *Lao v. H&M Hennes & Mauritz, L.P.*, No. 16-cv-00333, 2019 WL 7312623, at *2 (N.D. Cal. Dec. 30, 2019). Once good cause is established, the burden shifts to the plaintiff to "demonstrate that the class action should be 'maintained' under Federal Rule of Procedure 23." *Maldonado v. Apple*, 2021 WL 1947512, at *2 (quoting *Marlo*, 639 F.3d at 946). Again, the burden at step two falls squarely on the plaintiff. *Munoz v. PHH Mortgage Corp.*, 478 F. Supp. 3d 945, 984-85 (E.D. Cal. 2020) ("Although plaintiffs are the non-moving party, as the party seeking to *maintain* class certification, they nonetheless 'bear the burden of demonstrating that the requirements of Rules 23(a) and (b) are met.'" (emphasis in original) (quoting *Marlo*, 639 F.3d at 947)).

Here, the escalating showing needed to sustain standing from the time of class certification to the time of judgment, and the failure of any of the plaintiff class representatives to demonstrate that all members of those classes had Article III standing, provide "good cause" to revisit both this Court's September 24, 2013 order granting the IPPs' motion for class certification (ECF No. 1950), and its August 1, 2022 order granting the DPPs' motion for class certification, (ECF No. 6042).

The Court first granted IPPs' motion for class certification **thirteen years** ago. (ECF No. 6042.) Much has changed since then. *TransUnion*'s "watershed"[3] holding on class member standing at trial was followed by *Healy*'s application of *TransUnion* at the summary judgment stage earlier

---

[3] *Dinerstein v. Google*, 73 F.4th 502, 522 (7th Cir. 2023) (describing *TransUnion* as watershed).

this year. *See TransUnion*, 594 U.S. at 431, 442; *Healy*, 164 F.4th at 706-10. Both cases clarified that, as the case progresses, class members face an increasing burden to prove facts establishing individual injury and standing. And *TransUnion* flatly prohibits class members from recovering damages on a classwide basis when they cannot meet this increased burden at trial with evidence demonstrating that each class member suffered concrete injury. *TransUnion,* 594 U.S. at 431, 442 ("Every class member must have Article III standing in order to recover individual damages" and "'Article III does not give federal courts the power to order relief to any uninjured plaintiff, class action or not.'"); *Healy*, 164 F.4th at 706-10 (affirming class members face an escalating evidentiary burden to provide evidence of Article-III individual injury after class certification).

This Court's decision to grant certification to IPPs predates *TransUnion*. At **the class certification stage**, the Court declined to require the IPPs or DPPs to show individual injury for each class member:

> Defendants' argument on this point is essentially that the IPPs must be able to prove at the class certification stage that every single (or basically every single) class member was injured by Defendants' conduct. This contention is wrong. The Court's job **at this stage** is simple: determine whether the IPPs showed that there is a reasonable method for determining, on a classwide basis, the antitrust impact' effects on the class members.

(ECF No. 1950 at 12 (emphasis added)); *see also* (ECF No. 6042 at 10-11 ("the question **at this stage** is whether the 'evidence [is] **capable** of showing classwide impact'" (quoting (ECF No. 1950 at 12) (emphases added)))); *cf.* (ECF No. 1660 at 22-24 (making similar objections related to predominance)); (ECF No. 5984 at 14-25 (same)).

There is good cause for this Court to decertify the classes. Namely, developing case law demonstrating that plaintiffs' showing on absent class member standing at the time the classes were certified is insufficient to justify a judgment in favor of the classes following the trial of damages.

### 3. The DPPs' and IPPs' evidentiary deficiencies at the trial stage warrant decertification.

When class members proceed to trial, but "fail[] to prove through classwide evidence" an essential element of their claims or right to recover, courts hold decertification is appropriate. *E.g.*, *Mazzei v. Money Store*, 829 F.3d 260, 265-70 (2d Cir. 2016) (upholding decertification of class after

jury trial because plaintiffs' evidence failed to demonstrate that each class member was in privity with defendant as breach of contract claim required); *cf. In re MacBook Keyboard Litig.*, No. 5:18-CV-02813-EJD, 2023 WL 3688452, at *8 (N.D. Cal. May 25, 2023) (citing *Mazzei* as showing "a court can decertify even after a jury verdict in favor of a certified class").

Additionally, courts both within and outside the Ninth Circuit have acknowledged that decertification may be appropriate when evidence—or lack thereof—casts doubt on unnamed class members' standing or suggests individualized inquiries into that standing or other issues may become necessary. *See, e.g.*, *Huber v. Simon's Agency, Inc.*, 84 F.4th 132, 156-57 (3d Cir. 2023) (remanding for district court to reconsider class certification "owing to the lack of evidence in the record indicating how many members of [the] class are likely to have standing and how burdensome that showing will be for both the District Court and the parties"); *Marlo*, 639 F.3d at 946-49 (concluding district court's decertification of class for lack of predominance did not abuse its discretion after it assessed "changes that had occurred since its certification order" and the lack of "common proof to support a class-wide judgment" (citations and internal marks omitted)); *Forehand v. Florida State Hosp. at Chattahoochee*, 89 F.3d 1562, 1566-67 (11th Cir. 1996) (affirming district court's order decertifying class following bench trial, a decade after case began, because trial evidence showed class treatment was inappropriate); *In re Apple iPod iTunes Antitrust Litig.*, No. 05-CV-0037 YGR, 2014 WL 6783763, at *6 (N.D. Cal. Nov. 25, 2014) (noting that if "evidence adduced at trial warrants a new motion to decertify" the class, the court would "review [it] in light of that additional evidence").

Neither *TransUnion* nor *Healy* directly addressed what must occur after a court determines class members lack standing. But *TransUnion* ordered remand for further proceedings and made clear that those members of the class who could not prove individual injury could not recover damages. 594 U.S. at 431, 442. *Healy* examined evidence at the less onerous summary-judgment stage, but likewise ordered the district court to consider the plaintiff's evidence and whether there was "class-wide standing" in that context. 164 F.4th at 710. Though not directly addressed, these outcomes also support decertification here.

Similar to *Mazzei*, the IPPs' and DPPs' trial-stage evidence failed to prove an essential element they had the burden to prove at this stage. 829 F.3d at 265-70. Instead of privity, here there was no showing that each class member was overcharged for a CRT product and thus has Article III standing to seek damages from Irico as part of each class. Irico therefore requests that the Court decertify the IPP and DPP classes.

**4.      Plaintiffs' inability to prove Article III standing also means common questions do not predominate, as required by Rule 23(b)(3), further requiring decertification.**

Rule 23(b)(3) requires "that the questions of law or fact common to class members predominate over any questions affecting only individual members." In applying *TransUnion*, the Ninth Circuit has made clear that the significant individualized inquiry required to determine whether each class member has standing can fail to meet Rule 23(b)(3)'s predominance requirements, also counseling against certification. *See Van v. LLR, Inc.*, 61 F.4th at 1069. In *Van*, there was evidence that at least some of the plaintiff class members, suing a multilevel-marketing company for improperly assessing sales taxes, did not suffer an Article III injury because they were provided with discounts to offset the taxes. *Id*. at 1068 n.12. Specifically:

> [Defendant] invoked an individualized issue—that the retailer discounts left some class members uninjured—and provided evidence that at least some class members lack meritorious claims because of this issue, thus summoning the spectre of class-member-by-class-member adjudication. 13680 discounts were provided to class members. LuLaRoe's evidence, even though it consisted only of a small number of invoices, was sufficient to prove that an inquiry into the circumstances and motivations behind each of the 13,680 discounts might be necessary. The inquiry, which could potentially involve up to 13,680 depositions and months of trial, certainly cannot be described as de minimis.

*Id*. at 1069. Facing this standing issue, the Ninth Circuit ordered the district court to vacate its order granting class certification and reassess whether plaintiffs could prove that common issues predominated over questions affecting only individual members. *Id*. Just so here.

Because the IPPs and DPPs had the opportunity to, but did not, provide evidence confirming that each class member was individually injured and has standing, common issues do not predominate here—instead, a class-member-by-class-member assessment would be required to

IRICO'S MOTION TO DECERTIFY
AND VACATE DEFAULT                              - 13 -                    MASTER FILE NO.: 07-CV-05944-JST
                                                                                                    MDL NO. 1917

confirm classwide standing. Dr. Johnson's model applies an average overcharge on every purchase and cannot establish individual injury and damages. *See generally* (ECF No. 6492 at 157, May 19, 2025 Damages Hearing Tr. 157:4-157:10). Dr. Johnson's damages model is thus incapable of establishing that each class member suffered concrete injury and has Article III standing to recover classwide damages under *TransUnion*. *See supra* Part A.1. Moreover, even if each class member could somehow submit individualized proof of harm as required, that would unquestionably entail the kind of "class-member-by-class-member assessment" the Ninth Circuit cautioned against in *Van*, 61 F.4th at 1069.

The burden is particularly significant here because of the large number of IPP and DPP class members and the variation in purported overcharges over a lengthy, decade-plus period of time. *See supra* Part A.1. The IPP class includes individuals located in 22 different States who purchased televisions and monitors containing CRTs at different times, and the DPP class is nationwide. IPPs must not only establish that every direct purchaser paid at least one overcharge, but also that every ***indirect*** purchaser likewise paid an overcharge. Consumers with limited purchases of CRT products may have been uninjured if they purchased CRT products only during periods when the purported conspiracy was ineffective at raising prices. *See supra* Part A.1. Given the limitations in Dr. Johnson's damages model, which is incapable of varying overcharges by year to exclude class members who did not pay any overcharges, the only way for class members to establish Article III standing for its class members would be to conduct thousands of mini-trials.

The DPPs and IPPs may argue that, rather than applying *Van*, this Court should reject Irico's predominance arguments under *Olean Wholesale Grocery Cooperative v. Bumble Bee Foods*, 31 F.4th 651, 669 (9th Cir. 2022) (en banc). Not so. True, *Olean* held that, "***at the class certification stage***," a district court can certify a class "that potentially includes more than a de minimis number of uninjured class members." *Id.* at 669, 680-85 (emphasis added). But *Olean*'s holding was just that—expressly limited to "the class certification stage." *Id. Olean* correctly recognized plaintiffs' heightened burden to prove standing as a case progresses. *Id.* at 682 ("A plaintiff is required to establish the elements necessary to prove standing 'with the manner and degree of evidence required at the successive stages of the litigation.'" (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. at 561)).

Critically, *Olean* also explicitly left open the possibility that, at a later stage of the case, the evidence can more fully develop and cast doubt on whether all class members have standing. *See id.* at 682, 685. Just so here. Following class certification and an evidentiary damages hearing, with their evidence in final form before the Court, the DPPs and IPPs still have not proven that all class members were overcharged. At this stage of the case and given that evidentiary record, *Olean* does not prevent decertification here.

Though neither *Van* nor *Olean* addressed this precise situation, case law makes clear that a class should be decertified if the evidence presented at trial demonstrates that the elements of Rule 23 can no longer be met. For instance, in *Mazzei*, the Second Circuit both (1) affirmed the district court's decision to decertify a class following a jury verdict and (2) held, in the clearest possible terms, that "a district court has power . . . to decertify a class after a jury verdict and before the entry of final judgment." 829 F.3d at 263, 268-73 (affirming that plaintiff's lack of "class-wide evidence" of privity between unnamed class member and defendant meant Rule 23's predominance and typicality requirements were not met). Channeling *Wal-Mart v. Dukes*, 564 U.S. 338 (2011), the court observed that, when a proceeding cannot generate common answers able to drive a lawsuit to resolution, plaintiffs can no longer litigate as a class. *Id*. at 272 (citing *Dukes*, 564 U.S. at 351).

On the broader point that a district court can decertify a class after a jury verdict and before the entry of final judgment, the Second Circuit cited due process issues:

> [B]ecause the results of class proceedings are binding on absent class members, the district court has the affirmative 'duty of monitoring its class decisions in light of the evidentiary development of the case.' . . . 'The Due Process Clause of course requires that the named plaintiff *at all times* adequately represent the interests of the absent class members.' The power to decertify a class after trial is not only authorized by Rule 23 but is a corollary [of due process].

*Id.* at 266-67 (internal citations omitted) (emphasis in original); *see also In re MacBook Keyboard Litig.*, 2023 WL 3688452, at \*8 (citing *Mazzei*, noting courts can decertify classes even after jury verdicts in their favor); *cf. In re Apple iPod iTunes Antitrust Litig*., 2014 WL 6783763, at \*6 (noting trial evidence may affect certification and that decertification might be proper after trial).

The same is true of the evidentiary damages hearing in this case, where the IPPs and DPPs were unable to come forward with classwide evidence of Article III standing that, under *TransUnion*

and *Healy*, is a necessary prerequisite to awarding damages on a classwide basis. *Cf. TransUnion*, 594 U.S. at 431, 442; *Healy*, 164 F.4th at 706-10; *Marlo*, 639 F.3d at 946-49 (recognizing that decertification may be appropriate as case develops if plaintiffs fail to continue to satisfy their burdens under Rule 23).

### B. The Court should vacate the entry of default against Irico under Rule 55(c).

On November 22 and 25, 2024, the Clerk of the Court entered default against Irico with respect to both the IPPs (ECF No. 6429), and DPPs (ECF No. 6431), based on the Court's conclusions that Irico committed discovery abuses, (ECF No. 6423). That default should be vacated under Rule 55(c) to the extent that it is employed to hold Irico liable to uninjured named plaintiffs or absent class members, as *TransUnion* forbids. *See TransUnion*, 594 U.S. at 431, 442. The fact that the IPPs and DPPs failed to demonstrate that each class member now seeking damages purchased an overcharged CRT and therefore may seek damages under Article III, as explained throughout this Motion, provides sufficient good case to vacate the entry of default. *See* FED. R. CIV. P. 55(c) ("The court may set aside an entry of default for good cause[.]").

In considering whether to set aside default when the movant has a meritorious defense, "doubt, if any, should be resolved in favor of the motion to set aside default so that cases may be decided on the merits." *Aristocrat Techs., Inc. v. High Impact Design & Entm't*, 642 F. Supp. 2d 1228, 1233-34 (D. Nev. 2009) (explaining the standard for setting aside default) (citing *O'Connor v. State of Nev.*, 27 F.3d 357, 364 (9th Cir. 1994)). In considering whether to set aside default, courts consider "whether: (1) the plaintiff would be prejudiced by setting aside the default; (2) the defendant has a meritorious defense; and (3) the defendant's culpable conduct led to the default." *Id.* at 1233 (citing *O'Connor*, 27 F.3d at 364) (setting aside entry of default, concluding challenge to court's subject matter jurisdiction is a meritorious defense providing required good cause to vacate default).

This Court previously agreed that potential lack of subject matter jurisdiction presents a meritorious defense, when it vacated the default against Irico for failure to participate in the litigation. *See* Order Setting Aside Default at 14-20 (ECF No. 5240). Here, class members' lack of standing to obtain the classwide damages they seek through the IPPs' and DPPs' proposed judgments is not just a "meritorious defense." Article III standing is a non-waivable jurisdictional requirement

IRICO'S MOTION TO DECERTIFY
AND VACATE DEFAULT                                      - 16 -                    MASTER FILE NO.: 07-CV-05944-JST
                                                                                                        MDL NO. 1917

that the Court must independently determine to be satisfied. *E.g.*, *In re Tuli*, 172 F.3d at 712 ("When entry of default is sought . . . a district court has an affirmative duty to look into its jurisdiction over both the subject matter and the parties."); *Chambers v. Knight*, No. 20-56141, 2021 WL 4811360, at *1 (9th Cir. Oct. 15, 2021) (holding district court properly granted defendant relief from default judgment because court lacked subject matter jurisdiction); *see also Bankers Life & Cas. Co. v. Mallin*, 808 F. Supp. 3d 1062, 1073 (N.D. Cal. 2025) (court must assure itself of subject matter jurisdiction before entering default judgment and is not limited to the pleadings).

Rule 55(c) supports setting aside the default here. No amount of culpability for purported discovery misconduct can override the lack of subject matter jurisdiction. Moreover, even if this Court concluded that culpability weighs against Irico, as it did in ultimately ordering default, the IPPs and DPPs cannot conceivably suffer prejudice from vacating any default that would result in damages awarded to class members who lack standing under *TransUnion*. These uninjured class members cannot lose a claim they do not possess. *See generally TransUnion*, 594 U.S. at 431, 442. Further, "detriment in the sense that plaintiff will be required to establish the merit of its claim does not constitute prejudice in this context," *Aristocrat Techs.*, 642 F. Supp. 2d at 1233 (citation omitted) (internal quotations omitted). Here, Irico simply requests that each plaintiff establish that each class member satisfy the most basic element of any meritorious claim in federal court: individual injury and standing.

*TransUnion* unequivocally prevents awarding damages to class members who have not proven individual injury, as the IPP and DPP class members have not; yet they seek to use the default to improperly recover classwide damages here. That provides ample good cause to vacate that default for lack of jurisdiction under Rule 55(c), and Irico so requests.[4]

## V.    CONCLUSION

For the reasons argued above, Irico respectfully requests that this Court decertify the IPP and DPP classes, decline to grant default judgment against Irico because this Court cannot award

---

[4] Irico continues to believe entry of default was incorrect, and incorporates by reference its arguments opposing default as additional grounds for vacating the default here. *E.g.*, (ECF Nos. 5185, 5214, 6389, 6408) Irico understands, of course, that the Court rejected those arguments in ultimately entering default, (ECF No. 6423), and therefore Irico will not belabor them here.

IRICO'S MOTION TO DECERTIFY
AND VACATE DEFAULT                          - 17 -                    MASTER FILE NO.: 07-CV-05944-JST
                                                                                  MDL NO. 1917

classwide damages when Plaintiffs have not established that each class member suffered concrete injury, and vacate entry of default against Irico under Rule 55(c) for lack of jurisdiction. Irico further requests that the Court decline to enter the Plaintiffs' proposed judgments against Irico for the reasons argued here and in Irico's objections to each judgment (ECF Nos. 6520-21). Irico also requests any just and further relief to which it is entitled.

Dated: May 21, 2026

Respectfully submitted,

*/s/ Jeffrey B. Margulies*
JEFFREY B. MARGULIES (Bar No. 126002)
KAYLEE YANG (BAR NO. 303464)
Norton Rose Fulbright US LLP
One Embarcadero Center, Suite 1050
San Francisco, California 94111
Telephone: (213) 892-9200
Facsimile: (213) 892-9494
jeff.margulies@nortonrosefulbright.com
kaylee.yang@nortonrosefulbright.com

GERALDINE YOUNG (admitted *pro hac vice*)
1550 Lamar Street, Suite 2000
Houston, Texas 77010
Telephone: (713) 651-5151
Facsimile: (213) 651-5246
Geraldine.young@nortonrosefulbright.com

*Attorneys for Defendants Irico Group Corp. and Irico Display Devices Co., Ltd.*

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing document was filed via CM/ECF on May 21, 2026, and as a result has been served on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

By: */s/ Jeffrey B. Margulies*
Jeffrey B. Margulies